# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

---

**UNITED STATES,** *et al.,*

                              *Plaintiffs*,

          - against -

**GOOGLE LLC,**

                          *Defendant*.

Civil Action No. 1:23-cv-00108 (LMB) (IDD)

---

## DEFENDANT GOOGLE LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
202-777-4500

*Counsel for Defendant Google LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 4

    I. This Case and the Cases Pending in the Southern District of New York Share a Common Set of Facts ...................................................................................................................... 4

    II. The First State and Private Ad Tech Complaints Were Filed in 2020. ................................ 6

    III. Judge Castel Has Efficiently Directed the S.D.N.Y. Cases. ................................................ 8

    IV. The DOJ Files Its Own Version of the Texas Case in This Court .................................... 10

ARGUMENT ..................................................................................................................... 12

    I. The Analysis Under 28 U.S.C. § 1404(a) Overwhelmingly Favors Transfer. ................... 12

        A. The Interest of Justice Favors Transfer. ........................................................................ 13

            1. The Risk of Inconsistent Judgments Favors Transfer. ............................................... 15

            2. Judicial Economy Favors Transfer. .......................................................................... 16

        B. The Convenience of Witnesses Favors Transfer. ............................................................. 17

        C. The Convenience of the Parties Favors Transfer. ........................................................... 20

        D. The DOJ's Choice of Forum Should Be Afforded Only Limited Weight. .................. 22

    II. Google Is Not Seeking Consolidation Under 28 U.S.C. § 1407. ....................................... 23

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Agilent Techs., Inc. v. Micromuse, Inc.*,
  316 F. Supp. 2d 322 (E.D. Va. 2004) .............................................................................12, 21

*A. J. Indus., Inc. v. U.S. Dist. Ct.*,
  503 F.2d 384 (9th Cir. 1974) ..........................................................................................24

*Bluestone Innovations, LLC v. LG Elecs., Inc.*,
  940 F. Supp. 2d 310 (E.D. Va. 2013) ..............................................................................15

*Byerson v. Equifax Info. Servs., LLC*,
  467 F. Supp. 2d 627 (E.D. Va. 2006) ...........................................................................2, 13

*Cont'l Grain Co. v. The FBL-585*,
  364 U.S. 19 (1960) ...........................................................................................................4

*Coors Brewing Co. v. Oak Beverage, Inc.*,
  549 F. Supp. 2d 764 (E.D. Va. 2008) ..............................................................................21

*Devaney v. Google LLC*,
  No. 5:20-cv-04130 (N.D. Cal.) .........................................................................................6

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*,
  273 U.S. 359 (1927) ........................................................................................................12

*Ex parte Collett*,
  337 U.S. 55 (1949) ..........................................................................................................23

*F.T.C. v. Cephalon, Inc.*,
  551 F. Supp. 2d 21 (D.D.C. 2008) .......................................................................16, 23, 24

*F.T.C. v. Illumina, Inc.*,
  2021 WL 1546542 (D.D.C. Apr. 20, 2021) ......................................................................23

*F.T.C. v. Watson Pharm., Inc.*,
  611 F. Supp. 2d 1081 (C.D. Cal. 2009) ...........................................................................24

*Gen. Tire & Rubber Co. v. Watkins*,
  373 F.2d 361 (4th Cir. 1967) ..........................................................................................16

*Grand Atlas Tours v. Google LLC*,
  No. 5:20-cv-03556 (N.D. Cal.) .........................................................................................6

*Hengle v. Curry*,
    2018 WL 3016289 (E.D. Va. June 15, 2018).................................................................16

*Hoefer v. U.S. Dep't of Commerce*,
    2000 WL 890862 (N.D. Cal. June 28, 2000) ...............................................................21

*In re Google Dig. Advert. Antitrust Litig.*,
    No. 1:21-md-03010 (S.D.N.Y.).................................................................... *passim*

*In re Google Dig. Advert. Antitrust Litig.*,
    --- F. Supp. 3d ---, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022)..................................... *passim*

*In re Google Dig. Advert. Antitrust Litig.*,
    No. 5:20-cv-03556 (N.D. Cal.) ...................................................................................6

*In re Google Dig. Publisher Antitrust Litig.*,
    No. 5:20-cv-08984 (N.D. Cal.) ...................................................................................6

*In re Mid-Atl. Toyota Antitrust Litig.*,
    1982 WL 1797 (D. Md. Jan. 18, 1982) .......................................................................24

*In re: Dig. Advert. Antitrust Litig.*,
    555 F. Supp. 3d 1372 (J.P.M.L. 2021) ........................................................... *passim*

*JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*,
    960 F. Supp. 2d 383 (E.D.N.Y. 2013)........................................................................13

*LG Elecs. Inc. v. Advance Creative Comput. Corp.*,
    131 F. Supp. 2d 804 (E.D. Va. 2001) .........................................................................17

*Lycos, Inc. v. TiVo, Inc.*,
    499 F. Supp. 2d 685 (E.D. Va. 2007) .........................................................................18

*Mitcheson v. Harris*,
    955 F.2d 235 (4th Cir. 1992)....................................................................................17

*Moore v. Sirounian*,
    2020 WL 5791090 (E.D. Va. July 20, 2020) ...............................................................22

*Newbauer v. Jackson-Hewitt Tax Serv., Inc.*,
    2019 WL 1398172 (E.D. Va. Mar. 28, 2019) ..............................................................21

*Original Creatine Pat. Co. v. Met-Rx USA, Inc.*,
    387 F. Supp. 2d 564 (E.D. Va. 2005).........................................................................22

*Palaxar Grp., LLC v. Williams*,
    2014 WL 2002214 (E.D. Va. May 14, 2014)................................................................22

*Pizarro v. McDonald's Rest.*,
   2012 WL 2675442 (D.S.C. June 20, 2012) ................................................................13

*Pragmatus AV, LLC v. Facebook, Inc.*,
   769 F. Supp. 2d 991 (E.D. Va. 2011) ..........................................................2, 12, 23

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) .....................................................................................13

*Samsung Elecs. Co. v. Rambus, Inc.*,
   439 F. Supp. 2d 524 (E.D. Va. 2006) .......................................................................13

*Texas v. Google LLC*,
   4:20-cv-00957 (E.D. Tex.) ..........................................................................................6

*U.S. Fidelity & Guar. Co. v. Lawrenson*,
   334 F.2d 464 (4th Cir. 1964) .....................................................................................13

*U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*,
   357 F. Supp. 2d 924 (E.D. Va. 2005) ................................................................17, 23

*United States v. Johnson*,
   726 F.2d 1018 (4th Cir. 1984) ...................................................................................13

*United States v. Microsemi Corp.*,
   2009 WL 577491 (E.D. Va. Mar. 4, 2009) ...................................................... *passim*

*United States v. Nat'l City Lines, Inc.*,
   337 U.S. 78 (1949) .....................................................................................................23

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ...................................................................................................15

*Williams v. Long*,
   585 F. Supp. 2d 679 (D. Md. 2008) ..........................................................................13

*Wright v. Jackson*,
   505 F.2d 1229 (4th Cir. 1974) ...................................................................................17

**Statutes**

15 U.S.C. § 2 ...................................................................................................................6

15 U.S.C. § 22 ...............................................................................................................12

28 U.S.C. § 1404 ..................................................................................... *passim*

28 U.S.C. § 1407 ..................................................................................... *passim*

Act of April 29, 1968,
   Pub. L. No. 90-296, 82 Stat. 109 (codified as amended at 28 U.S.C. § 1407)..........................23

Consolidated Appropriations Act, 2023,
   Pub. L. No. 117-328, 136 Stat. 4459 (2023) ......................................................................23, 24

## PRELIMINARY STATEMENT

The Department of Justice's ("DOJ's") Complaint in this case is just another in a series of copycat complaints challenging the size and success of Google's advertising technology ("ad tech") business under the Sherman Antitrust Act. Only two aspects of the DOJ Complaint distinguish it from the many cases preceding it:

- *First*, the DOJ's case lags far behind other pending ad tech antitrust cases. It arrives before this Court more than two years after a substantively identical challenge was filed by a coalition of State Attorneys General, led by Texas, in December 2020 (the "Texas Case"). And it is more than two-and-a-half years behind the first private ad tech antitrust case. What makes this late filing notable, however, is that it adds nothing of substance to those earlier-filed cases.

- *Second*, the DOJ's case is the only ad tech challenge pending outside of the Southern District of New York. In August 2021, the Judicial Panel on Multidistrict Litigation ("JPML") transferred all nineteen then-pending state and private ad tech antitrust cases to the Southern District of New York and assigned them to the Honorable P. Kevin Castel for coordinated or consolidated pretrial proceedings. By filing suit in another district, the DOJ does not merely risk the prospect of inconsistent judgments, it actively courts it.

Pursuant to 28 U.S.C. § 1404(a), Google respectfully requests that the Court transfer this action to the Southern District of New York for coordination with *In re Google Digital Advertising Antitrust Litigation* ("the S.D.N.Y. Cases"), both in the interest of justice and for the convenience of the parties and witnesses.

*       *       *

1

Section 1404(a) permits the Court, in its discretion, to transfer this case to the Southern District of New York for coordination with the other ad tech antitrust challenges pending there if it determines that "the interest of justice and convenience of the parties and witnesses justify transfer." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011) (Brinkema, J.). That is so even when the case is an antitrust suit brought by the DOJ. *See United States v. Microsemi Corp.*, 2009 WL 577491 (E.D. Va. Mar. 4, 2009) (granting § 1404(a) motion to transfer antitrust suit brought by the DOJ).

Courts in this district consider the plaintiff's choice of venue, the convenience of the parties and witnesses, and the interest of justice, where the interest of justice alone may be "dispositive." *See, e.g.*, *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635-37, 637 n.7 (E.D. Va. 2006). As to the interest of justice, the "[m]ost prominent" considerations include the risk of inconsistent judgments and whether the transfer would serve judicial economy. *Id.* at 635.

Both of those considerations loom large here: Several sets of state and private plaintiffs have been litigating antitrust challenges to Google's display advertising business for over two years. Those cases are being coordinated by Judge Castel in the Southern District of New York. The DOJ now brings this action (the "DOJ Case") challenging the same alleged conduct, under the same laws, seeking the same remedies, but in a different court. The DOJ Case even shares a common core of pre-suit investigation materials. The judicial economies to be gained by having the DOJ Case before the same district court judge as the existing ad tech cases—and the attendant risks of inconsistent judgments if they are *not* managed together—overwhelmingly favor transfer.

Moreover, the DOJ Case has no unique, meaningful ties to this forum, and—like the cases consolidated by the JPML—transfer to New York would be convenient for Google and for the industry participants likely to be witnesses. *See In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp.

2

3d 1372, 1375 (J.P.M.L. 2021) ("[C]entralization in the Southern District of New York will serve the convenience of the parties and witnesses[.]").

While the multidistrict litigation ("MDL") statute, 28 U.S.C. § 1407, does not apply to this case, the findings of the JPML squarely address many of the issues now before the Court under § 1404(a).  The JPML consolidated the cases underlying *In re: Digital Advertising Antitrust Litigation* because each of those actions—just like the DOJ Case—"present common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law, whether that market is described singly as all display advertising services, as components of display advertising, or as some larger spectrum of digital advertising."  *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375.  Common factual issues found by the JPML included (1) "defining the relevant market;" (2) "identifying the competitors in the market;" (3) "the design and operation of Google's ad tech products and services;" (4) "assessing the alleged anticompetitive effects of Google's conduct;" (5) "Google's response to a competitive threat to its ad exchange known as 'header bidding;'" (6) "Google's acquisitions of other digital ad tech companies;" and (7) "alleged tying arrangements between, *inter alia*, Google's publisher ad server and Google's ad exchange."  *Id.*  As detailed below, each and every one of these common factual issues is not only included in, but is core to, the DOJ's Complaint here.  *Infra* at 10-12, 14-15.  Likewise, the DOJ and the S.D.N.Y. plaintiffs seek the same relief: damages, as well as injunctive and structural remedies aimed at the divestiture of portions of Google's ad tech business.  *Infra* at 10 note 25, 15.

In the nearly eighteen months since consolidation, Judge Castel has imposed a procedural framework on this sprawling litigation.  Following that framework, he has ruled on the Rule 12 sufficiency of the parties' federal antitrust claims (which are the same as those raised by the DOJ

here).  Having dismissed certain of Texas' federal antitrust claims, Judge Castel has permitted the parties to begin fact discovery while he addresses Google's motions to dismiss other plaintiffs' claims.  And to put all plaintiffs on equal footing, one of the first actions Judge Castel took was to order Google to produce the roughly two million documents it had previously produced to the DOJ and Texas to all the private S.D.N.Y. plaintiffs, meaning that already the DOJ and the S.D.N.Y. plaintiffs are operating with a common core set of documents (and the S.D.N.Y. plaintiffs have requested all documents produced to the DOJ since then, too).

In response to this motion, the DOJ presumably will explain why it chose to launch a parallel, competing ad tech litigation challenging the same conduct, under the same law, seeking the same relief in a different court.  But the Supreme Court held long ago that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that 28 U.S.C. § 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).  And the DOJ's choice of forum cannot trump the interest of justice and considerations of convenience that clearly dictate that this case should be transferred to the district in which it should have been filed in the first place, the Southern District of New York.

## BACKGROUND

### I.   This Case and the Cases Pending in the Southern District of New York Share a Common Set of Facts.

In September 2019, the attorneys general of forty-eight States, the District of Columbia, and Puerto Rico announced an investigation into Google's ad tech business, led by Texas Attorney General Ken Paxton.[1]  At the same time, the DOJ opened its own antitrust investigation into

---

[1] *See* Harper Neidig, *50 attorneys general launch antitrust investigation into Google*, The Hill (Sept. 9, 2019), https://thehill.com/policy/technology/460550-states-launch-antitrust-investigation-into-google/.

Google's ad tech business.[2]  In October 2019, the DOJ issued a Civil Investigative Demand to Google calling for production of documents relating to Google's ad tech business, along with a host of other topics.

These two investigations of the same Google ad tech business proceeded in parallel.  The DOJ and Texas both made expansive requests for production of documents concerning Google's ad tech.  These covered Google's ad tech strategy and product offerings, use of data, responses to competitive threats in the ad tech space, acquisitions in the ad tech space, and Google's Network Bidding Agreement with Facebook.  As these investigations proceeded, Google gave Texas access to roughly two million documents that the DOJ had assembled,[3] and, prior to filing suit, Texas participated in the DOJ's depositions of Google ad tech witnesses.[4]  In addition to both investigations following from the same factual basis, Texas Attorney General Ken Paxton met with top DOJ officials at least once, in February 2020, to discuss their parallel investigations and share their views on Google's ad tech business.[5]

---

[2] Sara Forden & David McLaughlin, *DOJ Scrutinizes Google Advertising, Search in Antitrust Probe*, Bloomberg Law (Aug. 8, 2019),
https://www.bloomberglaw.com/bloomberglawnews/antitrust/XF6V15CS000000.
[3] *See* Letter from J. Sessions to Castel, J., *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Oct. 13, 2021), ECF No. 145 ("Google . . . produced 2 million documents to the State of Texas" which "includes documents that Google produced to the Department of Justice in addition to the approximately 152,000 documents that Google produced in response to the Texas AG's civil investigative demand (CID) concerning ad tech issues.").
[4] The DOJ deposed eleven Google employees prior to December 16, 2020 (when the Texas Case was filed) as part of its ad tech investigation.  The Office of the Texas Attorney General attended ten of those depositions, and other investigating states (members of the Tennessee and Nebraska attorney general's offices) attended the eleventh deposition.
[5] Jon Porter, *Google's US antitrust worries could be entering a more serious phase: State attorneys general are reportedly meeting with the Justice Department*, The Verge (Jan. 27, 2020), https://www.theverge.com/2020/1/27/21083341/google-antitrust-state-investigation-federal-investigation-general-justice-department ("At least seven state attorneys general are meeting with US Justice Department attorneys next week in what could be the first step toward the two groups working together to investigate Google.").

## II.     The First State and Private Ad Tech Complaints Were Filed in 2020.

In May 2020, a group of advertisers filed a putative class action in the Northern District of California, challenging the size and success of Google's ad tech business under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and seeking damages for alleged overcharges under the same theories advanced by the DOJ in this case.[6]  In June 2020, another set of advertisers sued, challenging the same conduct and advancing the same theories of harm.[7]  In addition, from December 15, 2020, to February 2, 2021, a number of private class action suits were filed by publisher plaintiffs.  The Northern District of California consolidated the advertiser suits as *In re Google Digital Advertising Antitrust Litigation*[8] and the publisher suits as *In re Google Digital Publisher Antitrust Litigation*.[9]  In all, in the twelve months following the filing of the first ad tech complaint in May 2020, some eighteen additional copycat actions were filed by different groups of private publisher, advertiser, and newspaper plaintiffs across the country.[10]

During that same period, on December 16, 2020, Texas and a coalition of nine other state attorneys general filed the Texas Case in the Eastern District of Texas.[11]  Additional states have since joined, and the States' operative Third Amended Complaint now includes seventeen state plaintiffs.[12]

---

[6] Class Action Compl., *Grand Atlas Tours v. Google LLC*, No. 5:20-cv-03556 (N.D. Cal. May 27, 2020), ECF No. 1.

[7] Class Action Compl., *Devaney v. Google LLC*, No. 5:20-cv-04130 (N.D. Cal. June 22, 2020), ECF No. 1.

[8] Joint Stipulation & Order for Consolidation & Setting Deadlines, *In re Google Dig. Advert. Antitrust Litig.*, No. 5:20-cv-03556 (N.D. Cal. Aug. 11, 2020), ECF No. 26.

[9] Order Consolidating Cases, *In re Google Dig. Publisher Antitrust Litig.*, No. 5:20-cv-08984 (N.D. Cal. Mar. 10, 2021), ECF No. 49.

[10] *See* Mem. in Support of Google Defs.' Mot. for Transfer & Centralization Pursuant to 28 U.S.C. § 1407 at 3-8, *In re: Dig. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L. Apr. 30, 2021), ECF No. 1-1.

[11] Compl., *Texas v. Google LLC*, No. 4:20-cv-00957 (E.D. Tex. Dec. 16, 2020), ECF No. 1.

[12] *See* Third Am. Compl., *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Jan. 14, 2022), ECF No. 195 [hereinafter "Texas TAC"].

On April 30, 2021, Google moved under 28 U.S.C. § 1407 to centralize the nineteen ad tech antitrust actions pending in sixteen judicial districts across the United States.[13]   In August 2021, the JPML created MDL No. 3010 (renamed *In re Google Digital Advertising Antitrust Litigation*) and centralized those nineteen actions in the Southern District of New York for pretrial coordination.   *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d. at 1380.   The JPML placed the S.D.N.Y. Cases under the supervision of Senior District Judge P. Kevin Castel because of their "confiden[ce] that [Judge Castel] will steer [the] litigation on a prudent course" given his proven "willingness and ability to manage . . . litigation efficiently."   *Id.*

The JPML's decision was based on its findings that:

> [T]hese actions involve common questions of fact, and that centralization in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.   All actions present common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law, whether that market is described singly as all display advertising services, as components of display advertising, or as some larger spectrum of digital advertising.   Common factual issues in all actions include: (1) defining the relevant market for online display advertising services; (2) identifying the competitors in the market and their market shares; (3) the design and operation of Google's ad tech products and services, including alleged barriers to interoperability with competitors' products; (4) assessing the alleged anticompetitive effects of Google's conduct on market participants; and (5) Google's response to a competitive threat to its ad exchange known as "header bidding," which allegedly enabled publishers to use non-Google exchanges more effectively.   Moreover, the 17 actions asserting Section 2 monopolization claims raise additional common factual questions, principally (1) Google's acquisitions of other digital ad tech companies, such as DoubleClick, and the competitive impacts of those acquisitions; and (2) alleged tying arrangements between, *inter alia*, Google's publisher ad server and Google's ad exchange.   Sixteen of the 19 actions additionally assert that Google and alleged competitor Facebook entered into a secret agreement in 2018 to suppress the alleged "header bidding" threat to Google's market position.

*Id.* at 1375.   On the basis of those findings, the JPML concluded that:

---

[13] *See supra* note 10.

Centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, *Daubert* issues, and dispositive motions.  All actions, whether brought as putative class actions, individual actions, or governmental actions, will require common discovery from Google, which is the principal and common defendant.  In addition, all cases will require discovery from Facebook because of the questions surrounding Facebook's status as a competitor; in at least 16 actions, discovery also will cover the Google-Facebook agreement.  Third-party discovery will be significant, as the record indicates that there will be discovery concerning other alleged competitors, such as Amazon, as well as federal, state, and international investigations into Google's online display advertising practices.  Few of the actions have commenced discovery, and those that have done so remain at a preliminary stage, making now an optimal time to structure the litigation to maximize efficiencies.

*Id.* at 1375-76.

## III.    Judge Castel Has Efficiently Directed the S.D.N.Y. Cases.

The S.D.N.Y. Cases have marched forward under the supervision of Judge Castel.  Soon after consolidation, Judge Castel established a process for evaluating the sufficiency of the parties' claims, addressing Texas' federal antitrust claims first, before addressing the private plaintiffs' federal antitrust claims, and then all plaintiffs' state law claims.[14]  In a comprehensive ninety-two page opinion, Judge Castel dismissed Texas' claim of a conspiratorial agreement between Google and Facebook and narrowed the Section 2 claims, pruning many allegations as implausibly anticompetitive.[15]  In doing so, Judge Castel emphasized repeatedly his obligation under Rule

---

[14] Pre-Trial Order No. 1, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Aug. 13, 2021), ECF No. 4.

[15] *In re Google Digital Advertising Antitrust Litigation*, --- F. Supp. 3d ---, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022); *see id.* at *12-18 (dismissing Facebook agreement), *22-24 (dismissing encryption of user IDs), *30-32 (dismissing Reserve Price Optimization), *32-34 (dismissing Exchange Bidding), *36-37 (dismissing Accelerated Mobile Pages), *37-38 (Privacy Sandbox claims not yet ripe), *40-41 (dismissing injunctive relief for Dynamic Allocation and Dynamic Revenue Share), *25-30 (finding Dynamic Allocation, Enhanced Dynamic Allocation, and Dynamic Revenue Share each were not plausibly anticompetitive in the publisher ad server or advertising buying tools markets).

8

12(b)(6) to accept Texas' allegations as true,[16] but observed that "[e]xperience teaches that cases often look very different when evidence from both sides is considered."[17]

After ruling on Google's motion to dismiss Texas' federal antitrust claims, Judge Castel allowed private plaintiffs to amend their complaints (encouraging that their amendments conform to his motion to dismiss opinion), and set a briefing schedule (concluding in March 2023) for Google to seek dismissal of any "nonconforming" claims.[18]

Judge Castel has also created an efficient and fast-moving structure for discovery. Over a year ago, in November 2021, he ordered Google to produce "the documents that [had] been produced by Google to the state of Texas" in its investigation—the same two million or so documents Google had produced to the DOJ and made available to Texas and the other states—so that all S.D.N.Y. plaintiffs have equal access to all documents.[19] He has ordered that each witness shall be deposed only once, that all of the S.D.N.Y. plaintiffs must coordinate their discovery efforts, and that all discovery be shared across the actions in the S.D.N.Y. Cases.[20] And he has ordered the parties to substantially complete their production of documents responsive to initial

---

[16] *See id.* at *3, *9, *11 n.8, *24, *28, *31, *32, and *35.

[17] *Id.* at *3.

[18] Pre-Trial Order No. 2, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Sept. 14, 2022), ECF No. 309; Pretrial Order No. 4, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Nov. 18, 2022), ECF No. 392.

[19] Tr. of Conference at 30:16-21, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Oct. 12, 2021), ECF No. 142; *see also* Order, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Nov. 5, 2021), ECF No. 168. The S.D.N.Y. plaintiffs have since requested in discovery that Google produce all documents it produced to the DOJ. *See* Letter from E. Mahr to Castel, J. at 2, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Feb. 1, 2023), ECF No. 441 (discussing Request No. 274).

[20] Pre-Trial Order No. 5 ¶ 6.7, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Nov. 21, 2022), ECF No. 394 [hereinafter "PTO No. 5"] ("Duplicative questioning of witnesses is not permitted and, absent a finding of good cause by the Court, no fact witness may be examined more than once."); Pre-Trial Order No. 3 ¶ 3, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Sept. 16, 2022), ECF No. 311 (directing the plaintiffs' Discovery Steering Committee to "draft a common set of Rule 34 requests and common set of interrogatories . . . and a common set of non-party discovery requests").

requests within four months (by the end of May 2023).[21]  Given that fact discovery just began in January 2023, and will remain open until June 2024, the DOJ Case is well-positioned to be folded into Judge Castel's discovery timeline.[22]

## IV.   The DOJ Files Its Own Version of the Texas Case in This Court.

On January 24, 2023—more than two years after the Texas Case was filed, and more than 17 months after it was centralized with the other S.D.N.Y. Cases—the DOJ and eight states filed suit in this Court.[23]  Like the Texas Case and the other S.D.N.Y. Cases, the DOJ Case alleges that Google violated the Sherman Act by monopolizing the markets for publisher ad servers, ad exchanges, and ad buying tools.[24]  The DOJ's assertions of allegedly anticompetitive conduct mirror the conduct alleged in the Texas Case and the other S.D.N.Y. Cases, *see infra* at 14, as does the relief sought by the DOJ.[25]

Judge Castel's motion to dismiss ("MTD") Opinion reveals that the allegations at issue in the Texas Case are essentially the same as those now presented to this Court.  For example, the table below compares the DOJ's allegations concerning the tying of Google ad server (known as

---

[21] PTO No. 5 ¶ 6.1.

[22] *See id.* ¶¶ 4-6.

[23] Compl., ECF No. 1 [hereinafter "DOJ Compl."].

[24] *Id.* ¶¶ 310-41.  Ad buying tools for small advertisers are termed "advertiser ad networks" in the DOJ Complaint. *Compare* Texas TAC ¶¶ 161-86, *with* DOJ Compl. ¶¶ 297-303.

[25] *Compare* DOJ Compl. ¶ 342(6) (seeking "the divestiture of, at minimum, the Google Ad Manager suite, including both Google's publisher ad server, DFP, and Google's ad exchange, AdX, along with any additional structural relief as needed to cure any anticompetitive harm"), *with* Texas TAC ¶ 683(d) (seeking "structural relief to restore competitive conditions in the relevant markets") and First Am. Consol. Class Action Compl. ¶ 423(D), *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Dec. 5, 2022), ECF No. 408 [hereinafter "Publisher Compl."] (seeking "[t]hat the Court order Defendants to fully divest their publisher Ad Server line of business").  And, like the S.D.N.Y. advertiser class plaintiffs, the DOJ is seeking damages on behalf of itself (the United States) as an injured buyer of web display advertising.  *Compare* DOJ Compl. ¶ 341, *with* Consol. Advertiser Class Action Compl. ¶¶ 302, 406(D), *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Dec. 2, 2022), ECF No. 399 [hereinafter "Advertiser Compl."].

DoubleClick for Publishers, or "DFP") to Google's ad exchange ("AdX") with Judge Castel's

analysis of the parallel claim in the Texas Case:

| DOJ Complaint: Tying Claim | MTD Opinion: Tying Claim |
|---|---|
| • "Google coerce[d] publishers to license DFP" in order to "access real-time competition between AdX and other demand sources." DOJ Compl. ¶ 338. | • Google "coerc[ed]" publishers by "only allowing publishers that license [DFP] to receive live . . . bids from AdX." *In re Google Dig. Advert. Antitrust Litig.*, 2022 WL 4226932, at *11. |
| • DFP is "[t]he only viable economic option for many publishers." *Id.* | • "[P]ublishers' revenue would decline by between 20% and 40%" if they did not use DFP. *Id.* |

To take another example, the DOJ's allegations concerning a specific ad tech product

design known as "Dynamic Allocation" closely mirror those same issues in the Texas Case:

| DOJ Complaint: Dynamic Allocation | MTD Opinion: Dynamic Allocation |
|---|---|
| • Gave AdX a "'first look'" at inventory. DOJ Compl. ¶ 114. | • Gave AdX "a right of first refusal." *In re Google Dig. Advert. Antitrust Litig.*, 2022 WL 4226932, at *24. |
| • Used Google's superior access to data to advantage AdX by allowing AdX to win if it could beat the "highest *average* price of a rival ad exchange." *Id.* ¶ 115. | • Used exclusive "information obtained through its DFP ad server" to allow AdX to win if it "return[ed] a live bid for just a penny more" than the highest of rivals' "average historical bids." *Id.* at *24-25. |
| • "[D]ivert[ed] bidding opportunities and transactions to Google's ad exchange and away from rivals who did not have a chance to compete at all or to compete on the same terms." *Id.* ¶ 117. | • "Guarantee[d] that transactions were made on AdX" as opposed to "rivals of AdX [who] never had the opportunity to receive bids." *Id.* at *25. |
| • Effect was AdX "win[ning] high-value impressions without paying the price advertisers on other ad exchanges were actually willing to pay." *Id.* ¶ 115. | • Effect was "wall[ing] off exchange competition" over a publisher's "more valuable impressions" from rival exchanges that "might have returned a higher bid" than AdX. *Id.* at *24-25. |

The DOJ Case filed in this Court is strikingly similar to the Texas Case (and the other

S.D.N.Y. Cases). They allege the same facts, relevant markets, and claims, and seek the same

relief. They stem from investigations into Google's alleged conduct in the same industry and share

11

the same factual nucleus of shared documents.  And they will implicate the same or similar documents, data, party witnesses, and third parties as they progress through discovery.

## ARGUMENT

### I.  The Analysis Under 28 U.S.C. § 1404(a) Overwhelmingly Favors Transfer.

Under 28 U.S.C. § 1404(a), the Court may, in its discretion, transfer "any civil action to any other district or division where it might have been brought."  The DOJ could have brought this case in the Southern District of New York, where the other cases regarding Google's ad tech business are pending,[26] and where Google maintains and runs its ad tech business.  *See* Reshetar Decl. ¶¶ 3-4.[27]  The only relevant question, then, is "'whether the interest of justice and convenience of the parties and witnesses justify transfer.'"  *Pragmatus*, 769 F. Supp. 2d at 994 (quoting *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004)).  To address that question, the Court weighs: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice."  *Pragmatus*, 769 F. Supp. 2d at 994-95.

The interest of justice—and one of its most important components, the risk of inconsistent judgments—is dispositive here.  Even if that were not so, the convenience of witnesses and the parties also weigh decisively in favor of transfer because most have a connection to the Southern District of New York while very few have any connection to this forum.  *See infra* at 17-22.  The only factor which arguably weighs in the DOJ's favor is their choice of forum.  But that choice is

---

[26] DOJ alleges (correctly) that Google transacts business throughout the country, DOJ Compl. ¶ 309, making the Southern District of New York a proper venue under the antitrust laws.  15 U.S.C. § 22; *see Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 372-73 (1927).  And as the S.D.N.Y. Cases illustrate, Google is subject to personal jurisdiction in Manhattan for nearly identical claims.

[27] In support of its Motion, Google submits the Declaration of Yvonne Reshetar, dated February 17, 2023 (the "Reshetar Decl.").

not entitled to substantial deference "when the controversy itself had no meaningful ties to that forum." *Microsemi*, 2009 WL 577491, at *7.

In weighing these factors, the Court may take judicial notice of the proceedings before Judge Castel[28] and the location of likely non-party witnesses named in the DOJ Case.[29]  The Court may also rely upon the evidence set forth in the Reshetar Declaration filed contemporaneously with this Motion, *supra* note 27.

### A.  The Interest of Justice Favors Transfer.

Of the factors to be weighed in the transfer analysis, the "interest of justice" alone can be "the dispositive consideration in the transfer calculus." *Byerson*, 467 F. Supp. 2d at 635, 637 n.7.[30] The core considerations under this factor are the risk of inconsistent judgments and whether the transfer would serve judicial economy.  *Id.* at 635.  Both weigh heavily in favor of transfer here because the S.D.N.Y. Cases and the DOJ Case are essentially the same.

At the heart of the S.D.N.Y. Cases and the DOJ Case are allegations that Google has violated Section 2 of the Sherman Act by monopolizing the same relevant markets and pointing to

---

[28] "[T]he Fourth Circuit has held that it is appropriate for courts to take judicial notice of [other courts'] records, upon considerations of efficiency and justice, where the prior case is brought into the pleadings or where the two cases represent related litigation."  *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 537 n.7 (E.D. Va. 2006) (citing *U.S. Fidelity & Guar. Co. v. Lawrenson*, 334 F.2d 464, 467 (4th Cir. 1964)), *vacated on other grounds*, 523 F.3d 1374 (Fed. Cir. 2008).

[29] "Geographical information is especially appropriate for judicial notice."  *United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984).  Courts likewise find postings on government websites as "inherently authentic."  *Williams v. Long*, 585 F. Supp. 2d 679, 687-89 (D. Md. 2008); *see also Pizarro v. McDonald's Rest.*, 2012 WL 2675442, at *4 n.3 (D.S.C. June 20, 2012) (taking judicial notice of corporate filings to state government agency).

[30] *See also Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."); *JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*, 960 F. Supp. 2d 383, 400 (E.D.N.Y. 2013) ("Issues of judicial economy and avoiding inconsistent results in related actions can be 'decisive,' even when 'most [other] factors would ordinarily sustain a plaintiff's choice of forum.'" (citation omitted)).

nearly identical categories of alleged conduct.  Like the S.D.N.Y. Cases, the DOJ Case alleges that the relevant markets are various components of the ad tech stack—publisher ad servers, ad exchanges, and ad buying tools.[31]  We summarize the commonalities between the conduct challenged by the DOJ Case and the S.D.N.Y. Cases in the table below.

| Anticompetitive Conduct Alleged in DOJ Compl. | DOJ Compl. ¶¶ | Texas TAC ¶¶ | Publisher Compl. ¶¶ | Advertiser Compl. ¶¶ | Newspaper Compl. ¶¶ | Daily Mail Compl. ¶¶ |
|---|---|---|---|---|---|---|
| Acquisition of DoubleClick (2008) | 79-84, 88 | 19 | 94-98 | 167-171 | -- | -- |
| Restriction of Google Ads bids to AdX | 89-103 | 248-250 | 165-167, 202 | 78, 89 | -- | 92-93 |
| Restriction of live AdX bids to DFP | 104-108, 154-160 | 246-252 | 199-204, 226-230 | -- | 259-267 | 95-101 |
| Dynamic Allocation | 113-119, 121-125 | 267-281 | 252-268 | 201-208 | 199-208, 220 | 42-44, 47-48 |
| "Last Look" | 164, 200 | 376-378 | 264 | -- | 225 | 114-124 |
| Acquisition of AdMeld (2011) | 87-88, 146-153 | 56 | 97-98 | 167-171 | -- | -- |
| Project Bell | 161-162 | 311 | 282-285 | 224-228 | 233-234 | 136-137 |
| Dynamic Revenue Share | 198-207 | 318-330 | 286-295 | 229-238 | 235-239 | 139-146 |
| Project Poirot | 208-230 | 395-402 | 315-318, 322-323 | 267-270, 273-274 | 244-248 | 171-173, 176 |
| Unified Pricing Rules | 231-247 | 451-469 | 324-331 | 254-266 | 249-256 | 188-200 |

---

[31] *Compare* DOJ Compl. ¶ 279 (publisher ad servers, ad exchanges, and advertiser ad networks), *with* Texas TAC ¶ 92 (including all three products), Publisher Compl. ¶¶ 112, 125 (same), Am. Compl. ¶ 176, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Dec. 2, 2022), ECF No. 401 [hereinafter "Newspaper Compl."] (including two: publisher ad servers and ad exchanges), Am. Compl. ¶¶ 55, 67, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Dec. 2, 2022), ECF No. 400 [hereinafter "Daily Mail Compl."] (same), and Advertiser Compl. ¶ 54 (including two: ad exchanges and ad buying tools); *see also supra* note 24 (the DOJ refers to ad buying tools for small advertisers as "advertiser ad networks").

The parallels between these suits further extend to the relief sought.  Both the S.D.N.Y. Cases and the DOJ Case seek damages, as well as declaratory, injunctive, and structural relief related to Google's ad tech business. *Compare* Texas TAC ¶ 683(a)-(d), Publisher Compl. ¶ 423 (B)-(E), (H), Advertiser Compl. ¶ 406 (C), (D), (F), Newspaper Compl. ¶ 117 (B), (C), (F), and Daily Mail Compl. ¶ 274 (a)-(e), *with* DOJ Compl. ¶ 342(1)-(4), (6), (7).  Moreover, if any of that injunctive or classwide relief were granted, it would have nationwide effect, further exacerbating the prospect of conflicting or inconsistent judgments.

### 1.  The Risk of Inconsistent Judgments Favors Transfer.

Given these similarities, the DOJ's choice of venue creates the serious risk of inconsistent judgments.  *See Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 320 (E.D. Va. 2013) ("[T]rying these cases separately creates the serious risk of inconsistent results. . . . Even if this were the only factor in favor of transfer it might be sufficiently weighty to justify transferring these actions.").

At issue in both cases is the market definition in the same industry, for the same time period, and for the same products.  Also at issue is the correct application of the same antitrust laws to the same conduct by the same defendant.  The risk of inconsistent judgments is further heightened here because Section 2 features few bright-line rules; instead, even "[u]nder the best of circumstances, applying the requirements of § 2 'can be difficult' because 'the means of illicit exclusion, like the means of legitimate competition, are myriad.'"  *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 414 (2004) (citation omitted).  And inconsistencies resulting in "false condemnations 'are especially costly, because they chill the very conduct the antitrust laws are designed to protect.'"  *Id.* (citation omitted).

The risk of inconsistent judgments is not just limited to the application of antitrust law.  Judge Castel has already issued rulings regarding the application of the attorney-client privilege

and attorney work product doctrine to documents produced to the DOJ during its investigation that were reproduced to Texas and to the private plaintiffs in the S.D.N.Y. Cases.[32]   The JPML specifically considered "the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, *Daubert* issues, and dispositive motions," *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375, and held that "informal coordination appears inadequate to address the risk of inconsistent rulings in this factually and legally complex litigation," *id.* at 1376-77.

Further, should Google need to appeal conflicting court orders, doing so would necessitate seeking relief in both the Second and Fourth Circuits and may ultimately lead to a circuit split— hardly an efficient or economic result.   "There is ample authority to support the conclusion that the interest of justice dictates that transfer is appropriate to avoid subjecting a defendant to the grave risk of inconsistent judgments deriving from the same conduct." *F.T.C. v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 29 (D.D.C. 2008); *see also Hengle v. Curry*, 2018 WL 3016289, at *11 (E.D. Va. June 15, 2018) ("Allowing related cases to proceed simultaneously on separate tracks creates a 'prospect of inconsistent outcomes' that does not exist when the same court manages both cases. . . . 'The interest of justice weighs heavily in favor of transfer when related actions are pending in the transferee forum.'" (citations omitted)).

### 2.   Judicial Economy Favors Transfer.

In addition to risking inconsistent results, proceeding in this district invites an "extravagantly wasteful and useless duplication of the time and effort of the federal courts." *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967) (en banc).  When "'two cases are intimately related and 'hinge upon the same factual nucleus,'" allowing them to proceed before a

---

[32] *See* Order Regarding Clawback Docs. at 6, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Jan. 17, 2023), ECF No. 438 (ruling on the application of the attorney-client privilege and work product doctrine for documents bearing Bates numbers GOOG-DOJ-11698798, GOOG-DOJ-12866023, and GOOG-DOJ-08154428).

single court "facilitates efficient, economic and expeditious pre-trial proceedings and discovery." *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937-38 (E.D. Va. 2005) (citation omitted).

The S.D.N.Y. Cases have been proceeding before Judge Castel for over eighteen months. Having established a structure for the efficient management of these cases, *supra* at 8-10, and having resolved Google's motion to dismiss and other pretrial disputes, Judge Castel has "invested substantial time and energy" to become familiar with the factual and legal issues underpinning this case. *U.S. Ship Mgmt*, 357 F. Supp. 2d at 938; *see also LG Elecs. Inc. v. Advance Creative Comput. Corp.*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001) ("As a matter of judicial economy, such familiarity is highly desirable.").

Even apart from the substance of the cases, Google anticipates that many of the same discovery disputes or procedural issues will arise—like privilege disputes on documents produced in both cases, *see supra* note 32. "[H]aving two separate decrees from two separate courts" on the very same issues would be "an intolerable waste of judicial effort and imposition on both courts when the entire issue can be resolved by the formulation of a single decree by one of the District Courts that will apply system-wide." *Wright v. Jackson*, 505 F.2d 1229, 1232 (4th Cir. 1974).

The Fourth Circuit counsels that "[i]t hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). Yet that is what the DOJ's choice of forum invites this Court to do. As a result, the interest of justice overwhelmingly favors transfer.

### B.  The Convenience of Witnesses Favors Transfer.

"When considering the convenience of witnesses, this court draws a distinction between party-witnesses and non-party witnesses and affords greater weight to the convenience of non-

party witnesses." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). The S.D.N.Y. Cases and the DOJ Case allege monopolization of the same markets, and participants in those alleged markets will likely feature as third-party witnesses. Not only do "the advertising and publishing industry around which these actions revolve have a strong presence in New York," *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1379, but discovery from Google's display advertising competitors will also be critical to its defense. *See id.* at 1376, 1380 (acknowledging the "anticipated breadth of third-party discovery" and that "third party discovery will pose a[n] . . . obstacle to informal coordination" between courts).

In addition to the advertising and publishing industry being present in New York, as set forth in the table below, three of the eight third parties specifically identified in the DOJ Complaint are headquartered in New York. None are headquartered in or near this district.

| Third Party | Headquarters | DOJ Complaint ¶¶ |
| --- | --- | --- |
| Meta (Facebook)[33] | Menlo Park, CA[34] | 172 Fig. 15, 187-95 |
| Amazon | Seattle, WA[35] | 172 Fig. 15, 195-96 |
| Xandr (AppNexus) | New York, NY[36] | 172 Fig. 15, 228 |

---

[33] Meta is a named defendant in the advertiser class complaint, *see* Advertiser Compl. ¶ 36. However, Judge Castel dismissed all claims related to the Network Bidding Agreement between Google and Facebook in the Texas Case, *see In re Google Dig. Advert. Antitrust Litig.*, 2022 WL 4226932, at *12-18. Meta has since moved to dismiss all claims against it in the S.D.N.Y. Cases. *See* Meta Mot. to Dismiss Counts III & IV of Advertisers' Consol. Am. Compl., *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Feb. 3, 2023), ECF No. 460; Meta Mot. to Dismiss Newspapers' Consol. Am. Compl., *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Feb. 3, 2023), ECF No. 462.

[34] Meta Platforms, Inc., Current Report (Form 8-K) (Jan. 27, 2023), https://www.sec.gov/ix ?doc=/Archives/edgar/data/0001326801/000132680123000015/meta-20230127.htm.

[35] Amazon.com, Inc., Current Report (Form 8-K) (Jan. 5, 2023), https://www.sec.gov/ix ?doc=/Archives/edgar/data/1018724/000119312523003621/d441973d8k.htm.

[36] *Office Locations*, Xandr (captured Dec. 1, 2022), https://web.archive.org/web/20221201192730/https://www.xandr.com/about/office-locations/; *see also Xandr*, LinkedIn (accessed Feb. 15, 2023), https://www.linkedin.com/company/xandr/ (Xandr is a part of Microsoft Advertising and is located in New York).

| Third Party | Headquarters | DOJ Complaint ¶¶ |
|---|---|---|
| OpenX | Pasadena, CA[37] | 172 Fig. 15, 228-29 |
| Magnite (Rubicon) | New York, NY[38] | 172 Fig. 15, 228 |
| The Trade Desk | Ventura, CA[39] | 172 Fig. 15 |
| MediaMath | New York, NY[40] | 172 Fig. 15 |
| Criteo | Paris, France[41] | 172 Fig. 15 |

All of these third parties have offices in New York,[42] while only Amazon has an office in Virginia.[43]  And Meta has already stated to the JPML that it prefers ad tech cases to be located in New York, as have other interested third parties.[44]

---

[37] OpenX Software Ltd, Notice of Exempt Offering of Securities (Form D) (May 13, 2011), https://www.sec.gov/Archives/edgar/data/1520718/000152071811000001/xslFormDX01/primary_doc.xml; *see also OpenX Locations*, OpenX (accessed Feb. 15, 2023), https://www.openx.com/contact-us/.

[38] Magnite, Inc., Current Report (Form 8-K) (Jan. 19, 2023), https://www.sec.gov/ix?doc=/Archives/edgar/data/1595974/000159597423000002/mgni-20230119.htm.

[39] The Trade Desk, Inc., Current Report (Form 8-K) (Nov. 9, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/1671933/000115752322001565/a52963375.htm.

[40] MediaMath, Inc., Notice of Exempt Offering of Securities (Form D) (June 3, 2014), https://www.sec.gov/Archives/edgar/data/1469591/000146959114000001/xslFormDX01/primary_doc.xml; *see also Contact Us*, MediaMath (accessed Feb. 15, 2023), https://www.mediamath.com/contact-us/.

[41] Criteo S.A., Current Report (Form 8-K) (Dec. 7, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/1576427/000157642722000126/crto-20221207.htm.

[42] *See Offices*, Meta (accessed Feb. 15, 2023), https://about.meta.com/media-gallery/offices-around-the-world/; Karen Weise & Matthew Haag, *Amazon Sticks With Office Expansion Plans in New York and Elsewhere*, New York Times (Aug. 18, 2020), https://www.nytimes.com/2020/08/18/technology/amazon-office-expansion.html; *OpenX Locations*, OpenX (accessed Feb. 15, 2023), https://www.openx.com/contact-us/; *Our Offices*, Magnite (accessed Feb. 15, 2023), https://www.magnite.com/contact-us/; *Office Locations*, theTradeDesk (accessed Feb. 15, 2023), https://www.thetradedesk.com/us/office-locations; *Working at Criteo*, Criteo (accessed Feb. 15, 2023), https://careers.criteo.com/working-at-criteo.

[43] *Corporate Offices*, Amazon (accessed Feb. 15, 2023), https://www.aboutamazon.com/workplace/corporate-offices.

[44] *See In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1374 ("Defendant Facebook supports centralization of all actions in the Northern District of California, or, alternatively, the Southern District of New York."); *id.* at 1375 ("[T]wo non-party trade organizations representing news entities and other online content providers—News Media Alliance and Digital Content

Given the cases already pending before Judge Castel, the issue is not whether the Eastern District of Virginia would be more or less convenient for third parties than the Southern District of New York.  That relevant third parties will be subject to discovery in the S.D.N.Y. Cases is now a given.  The question is whether it would be more convenient for third parties to be subjected to discovery once in the S.D.N.Y. Cases, or twice, in both the S.D.N.Y. Cases and this case.  Responding to coordinated discovery in a single district once is more convenient.  Consequently, this factor too weighs strongly in favor of transferring the DOJ Case to the Southern District of New York to be coordinated with the other ad tech cases before Judge Castel.[45]

### C.  The Convenience of the Parties Favors Transfer.

Transfer to the Southern District of New York would be more convenient for Google, and no less convenient for DOJ Case plaintiffs.  While this district may be home to the Commonwealth of Virginia, the Southern District of New York is home to the State of New York, another plaintiff in this action, and is likely to be at least equally convenient for all other plaintiffs in the DOJ Case; indeed, plaintiffs Rhode Island, Connecticut, and New Jersey are all closer to the Southern District of New York than to this Court.  And the DOJ's Antitrust Division maintains an office in New York City, just blocks from Judge Castel's courtroom.[46]  *See also Microsemi*, 2009 WL 577491, at *7 & n.11 (noting the Antitrust Division's office in the transferee district and according "little weight to the Government's choice of this district").

---

Next—filed interested party briefs supporting a separate publisher MDL in the Southern District of New York.").

[45] The DOJ may argue that government employees from U.S. departments and agencies in this district will serve as their witnesses in this proceeding.  *See* DOJ Compl. ¶ 278.  But party witnesses are less significant than non-party witnesses in analyzing this factor, as the government may "persuade its employees to appear at trial anywhere."  *Microsemi*, 2009 WL 577491, at *10.

[46] *See Antitrust Division Leadership, Section, and Office Directory*, U.S. Dep't of Justice (accessed Feb. 15, 2023), https://www.justice.gov/atr/antitrust-division-leadership-section-and-office-directory#sections.

While convenience of the parties is afforded less weight than convenience of third parties, courts nonetheless consider the parties' convenience, particularly when—as here—only one out of a number of plaintiffs resides in the district. *See Newbauer v. Jackson-Hewitt Tax Serv., Inc.*, 2019 WL 1398172, at *13 (E.D. Va. Mar. 28, 2019) (finding that this factor favored transfer where "only one of the plaintiffs resides in the Eastern District of Virginia"); *Hoefer v. U.S. Dep't of Commerce*, 2000 WL 890862, at *2 (N.D. Cal. June 28, 2000) (finding that this factor favored transfer where only one of several plaintiffs resided in the transferor district).

The Southern District of New York is clearly more convenient for Google. Outside of its Mountain View, California headquarters, Google's second-largest corporate presence is in New York (where much of its ad tech business is located), in stark contrast to its much smaller presence in Virginia. Reshetar Decl. ¶¶ 3-5. Many witnesses who will likely be able to speak to the common issues presented by the DOJ Case and the S.D.N.Y. Cases are located in New York. Indeed, eight of the twenty-eight individuals that Google disclosed in the S.D.N.Y. Case—and thirty-nine of the 157 current or former Google employees that S.D.N.Y. plaintiffs disclosed—are (or were last) based in New York, and none are (or were last) based in Virginia. Reshetar Decl. ¶¶ 6-7. New York is also where Judge Castel is supervising all of the S.D.N.Y. Cases, which claim substantially the same harm based on substantially the same allegations. *Supra* at 10-12, 14-15. Parallel proceedings threaten the prospect that Google will face conflicting case schedules (in addition to inconsistent judgments) and duplicative discovery, and increase the unjustified disruption that the lawsuits will cause to its business. Reshetar Decl. ¶ 8.

Because the Southern District of New York is more convenient for Google and equally convenient for the DOJ Case plaintiffs, this factor favors transfer. *See Coors Brewing Co. v. Oak Beverage, Inc.*, 549 F. Supp. 2d 764, 773 (E.D. Va. 2008) (granting transfer where "[t]ransfer

would not 'shift the balance of inconvenience' from Defendants to Plaintiff but only increase the convenience for Defendants" without effect on plaintiffs' convenience); *see also Agilent Techs.*, 316 F. Supp. 2d at 328-29 (finding that party convenience favored transfer where the transferee forum was more convenient for the defendant and equally convenient for the plaintiff).

### D.  The DOJ's Choice of Forum Should Be Afforded Only Limited Weight.

The DOJ Case does not have any meaningful connection to this forum.  In its 343 paragraph Complaint spanning 140 pages, the DOJ only mentions Virginia to list it as a plaintiff, *see* DOJ Compl. ¶ 305, to assert jurisdiction and venue in this District, *id.* ¶ 307, and to allege that certain "departments and agencies" in this district, among others elsewhere, have been injured, *id.* ¶ 278. But "courts are not solicitous of plaintiffs claiming substantial weight for their forum choice where the connection with the forum is limited to sales activity without more," particularly where, as here, sales are also "nationwide."  *Original Creatine Pat. Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005); *see also Palaxar Grp., LLC v. Williams*, 2014 WL 2002214, at *5-7 (E.D. Va. May 14, 2014) (granting transfer despite injury in the transferor district when a similar case was pending in the transferee district).

Had the DOJ chosen to file suit in a forum with a meaningful connection to this dispute, then its decision to do so might bear slightly more on the transfer analysis.[47]  But "[t]his Court [should not] stand as a willing repository for cases which have no real nexus to this district." *Moore v. Sirounian*, 2020 WL 5791090, at *5 (E.D. Va. July 20, 2020) (Brinkema, J.) (citations omitted).  And so the DOJ's choice of venue is not entitled to substantial deference "when the controversy itself had no meaningful ties to that forum."  *Microsemi*, 2009 WL 577491, at *7.

---

[47] The DOJ's investigation of these issues was—as far as Google is aware—run out of its District of Columbia and San Francisco offices.  The DOJ has declined to proceed in either of those home fora.

Indeed, "allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads, unfairly slowing the cases for parties with genuine connections to this district." *Pragmatus*, 769 F. Supp. 2d at 997.

In the absence of any real nexus to this forum, this factor in the transfer analysis can be accorded little weight. That is especially so when, as set forth above, all of the other factors favor transfer. *See U.S. Ship Mgmt.*, 357 F. Supp. 2d at 937 ("[T]he presumption favoring plaintiff's chosen forum should be accorded little weight if the other factors favor transfer.").

## II. Google Is Not Seeking Consolidation Under 28 U.S.C. § 1407.

For the avoidance of doubt, Google is ***not*** seeking consolidation under the MDL statute, 28 U.S.C. § *1407*. Since 1968, the DOJ has been statutorily immune from consolidation by the JPML.[48] In recent weeks, Congress has amended that statute to afford the states that same immunity in future antitrust cases.[49] But the federal government—and the states—have ***always*** been subject to transfer when the criteria of 28 U.S.C. § *1404* are met. *United States v. Nat'l City Lines, Inc.*, 337 U.S. 78, 83-84 (1949) (holding that § 1404(a) applies to antitrust suits and affirming grant of transfer of antitrust suit brought by the United States); *Cephalon*, 551 F. Supp. 2d at 32 (granting transfer of FTC antitrust action under § 1404, noting "the question of multidistrict transfer and consolidation is simply not before this Court"); *Microsemi*, 2009 WL 577491 (granting motion to transfer antitrust suit brought by DOJ under § 1404(a)); *F.T.C. v. Illumina, Inc.*, 2021 WL 1546542 (D.D.C. Apr. 20, 2021) (granting motion to transfer antitrust suit brought by the FTC under § 1404(a)); *see also Ex parte Collett*, 337 U.S. 55, 58 (1949) ("The

---

[48] Act of April 29, 1968, Pub. L. No. 90-296, 82 Stat. 109 (codified as amended at 28 U.S.C. § 1407) (providing for consolidated pretrial purposes in multidistrict litigation).
[49] *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 301, 136 Stat. 4459, 5970 (2023).

reach of 'any civil action' [under 28 U.S.C. § 1404(a)] is unmistakable.  The phrase is used without qualification, without hint that some should be excluded.").

Transfer under § 1404(a) may be ordered even when, as here, consolidation would not be possible.  *See A. J. Indus., Inc. v. U.S. Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974) ("To hold that the pendency of an action between the parties in another district could not be considered unless the action could be consolidated would unnecessarily limit the factors that should be considered in making a transfer determination."); *Cephalon*, 551 F. Supp. 2d at 32 (granting transfer despite FTC's argument that it was exempt from consolidation, noting:  "The short answer to FTC's contention is that consolidation is not the sole efficiency associated with transferring this case.  In fact, the most compelling reason to grant this transfer—the need to avoid the risk of inconsistent judgments—is entirely independent from the prospect of consolidation.").

Even the most recent amendments to § 1407 made no changes to § 1404.  *See* Consolidated Appropriations Act § 301.  Section 1404(a) has always applied and continues to apply to federal and state antitrust suits.  *See, e.g.*, *F.T.C. v. Watson Pharm., Inc.*, 611 F. Supp. 2d 1081 (C.D. Cal. 2009) (granting motion to transfer antitrust suit brought by the FTC and the State of California under § 1404(a)); *In re Mid-Atl. Toyota Antitrust Litig.*, 1982 WL 1797 (D. Md. Jan. 18, 1982) (granting motion to transfer antitrust case brought by the District of Columbia under § 1404(a)).

## CONCLUSION

The analysis under § 1404(a) overwhelmingly favors transfer.  The DOJ has sued in a district with no unique nexus to the alleged conduct.  Remaining in this district would risk inconsistent judgments, waste judicial resources, and cause inconvenience to Google and third-party witnesses.  Google respectfully requests that this Court grant its motion to transfer venue to the Southern District of New York.

Dated: February 17, 2023                    Respectfully Submitted,


                                             /s/ Tyler Garrett
                                            Eric Mahr (*pro hac vice*)
                                            Tyler Garrett, Virginia Bar No. 94759
                                            FRESHFIELDS BRUCKHAUS
                                            DERINGER US LLP
                                            700 13th Street NW, 10th Floor
                                            Washington, DC 20005
                                            Telephone: (202) 777-4500
                                            Facsimile: (202) 777-4555
                                            eric.mahr@freshfields.com
                                            tyler.garrett@freshfields.com

                                            *Counsel for Defendant Google LLC*