**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

UNITED STATES, et al.,      )
                       )
         Plaintiffs,    )
     v.                )     No. 1:23-cv-00108-LMB-IDD
                       )
GOOGLE LLC,          )
                       )
        Defendant.    )

**THE GOVERNMENT PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

This case concerns Google's monopoly across the digital advertising technology ("ad tech") industry, an industry essential to the viability of the modern internet. *See* Complaint, ECF 1 ("Compl."). The United States, along with the Commonwealth of Virginia, and the States of California, Colorado, Connecticut, New Jersey, New York, Rhode Island, and Tennessee (the "State Plaintiffs" and, collectively with the United States, the "Government Plaintiffs") have brought this action against Google for its violations of the Sherman Act. Compl.

Google's anticompetitive conduct across the ad tech industry has caused private plaintiffs, and one group of state plaintiffs, to file more than two dozen separate antitrust cases across the country. *See In re Digital Adver. Antitrust Litig.*, MDL No. 3010 (ECF Report of Associated Cases). In August 2021, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated these cases for pretrial proceedings into a single multidistrict litigation in the U.S. District Court for the Southern District of New York before the Honorable P. Kevin Castel (the "MDL").

Google now asks this Court to exercise its discretion to transfer this case, for which there is proper venue in this District, to the Southern District of New York ("S.D.N.Y.") where it can be coordinated with the MDL. Google's request should be denied because it subverts the unambiguous intent behind the Government Plaintiffs' statutory exemption from MDL

consolidation. When Congress first created the multidistrict litigation statute in 1968, it expressly exempted claims brought by the United States pursuant to the Sherman Act. 28 U.S.C. § 1407(f)-(g). The exemption sensibly allows the United States, acting on behalf of the American people, to avoid the "substantial[] delay[]" that inevitably would arise if the United States were forced to coordinate with private litigants in MDL proceedings. *See* H.R. Rep. No. 90-1130 (1968) (statement of Ramsey Clark, Deputy Att'y Gen. of the United States). In December 2022, Congress further amended the MDL statute to ensure that other sovereign plaintiffs that are enforcing federal antitrust laws, like the State Plaintiffs here, are also exempt from involuntary consolidation in MDLs. Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459, 5970 (2023) (amending 28 U.S.C. § 1407(g)-(h)).

Because MDL consolidation is expressly forbidden by 28 U.S.C. §1407, Google seeks to sidestep this clear Congressional directive by asking the Court to exercise its discretion to transfer this matter pursuant to 28 U.S.C § 1404(a). Yet Google's arguments in support of transfer to the S.D.N.Y. largely turn on the presence of the MDL there. Google points to purported efficiencies that may flow from forcing the United States to "coordinate" if not consolidate, with the MDL. Def. Mot., ECF 44, at 2-3. While consolidation of multiple private actions into an MDL may provide some efficiencies, Congress made the decision to subordinate any such efficiencies in favor of providing the United States, and now state attorneys general, the ability to vindicate antitrust matters expeditiously, and in their chosen forum.

The Government Plaintiffs respectfully request that the Court deny Google's motion. While the MDL involves related claims and facts, "Congress' declared policy" of expeditious governmental enforcement of the antitrust laws supports keeping this case in this District, unencumbered by inclusion in an MDL or coordination with private actions. *See United States v.*

*Nat'l City Lines*, 334 U.S. 573, 589 (1948); 28 U.S.C. § 1407(f)-(g), *as amended by* Pub. L. No. 117-328, 136 Stat. 4459, 5970. Transferring this action to the S.D.N.Y. for coordination with the MDL is contrary to the will of Congress and risks expeditious resolution of the Government Plaintiffs' Complaint, which alleges serious and pervasive harms from Google's anticompetitive conduct.

Even in the absence of clear Congressional intent, Google otherwise fails to meet its burden to establish that transfer is appropriate under Section 1404(a). The Complaint properly alleges venue and provides a meaningful nexus to this forum. This District is the home forum for Plaintiff Commonwealth of Virginia, and the Complaint alleges that a federal agency based in this District suffered monetary and other damages from Google's conduct. These reasons alone justify substantial deference to the Government Plaintiffs' choice of forum, and Google has failed to establish that any other factor, alone or in combination, necessitates transfer of this case to the S.D.N.Y.

## **BACKGROUND**

Since May 2020, cases challenging Google's anticompetitive conduct in the ad tech arena have been filed in seventeen federal courts around the country.[1] In August 2021, the JPML consolidated these cases for pretrial proceedings in the S.D.N.Y. before Judge Castel. *In re Digital Adver. Antitrust Litig.*, 555 F. Supp. 3d at 1380. In doing so, the JPML concluded, as required by the MDL statute, that consolidation for pretrial purposes would "promote the just and

---

[1] These districts include: the Northern District of California, the District of Delaware, the District of Columbia, the Northern District of Georgia, the Southern District of Indiana, the District of Maryland, the Northern and Southern Districts of Mississippi, the District of New Jersey, the Southern District of New York, the Southern District of Ohio, the Western District of Pennsylvania, the Eastern and Southern Districts of Texas, the Northern and Southern Districts of West Virginia, and the Eastern District of Wisconsin. *In re Digital Adver. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1380 sched. A (J.P.M.L. 2021); *In re Digital Adver. Antitrust Litig.*, 1:21-md-03010-PKC (S.D.N.Y. Feb. 1, 2023), ECF 441.

efficient conduct of the litigation." *Id.* at 1379. Pursuant to the MDL statute, after pretrial proceedings are concluded, each of these plaintiffs may request transfer back to its home district for trial. David F. Herr, *Annotated Manual for Complex Litig.* § 20.132 (4th ed. 2022).

All but one of the actions consolidated in the MDL were brought by private plaintiffs. The sole non-private action is a case filed in December 2020 by a group of governmental plaintiffs led by the State of Texas ("Texas AG Plaintiffs"). *Texas, et al. v. Google, LLC*, 4:20-cv-00957-SDJ (E.D. Tex. Dec. 16, 2020), ECF 1 (the "Texas AG case"). Google discusses the Texas AG case in its motion but omits from its factual recitation that Google originally moved, pursuant to Section 1404(a), to transfer the Texas AG case away from the Eastern District of Texas. Google now seeks to do the same by requesting transfer away from this forum. The material difference between Google's first bid for transfer and this attempt is what forum Google believes is most convenient. Initially, Google argued that the most appropriate forum was the Northern District of California, Google's own home forum. *Id.*, ECF 121, at 3. The District Court in Texas denied Google's motion to transfer in a thorough decision that rejected Google's arguments pursuant to 1404(a), just as this Court should. *Id.* The Court then set the Texas AG case for trial in June 2023. *Id.*, ECF 123.

While Google was pursuing its Section 1404 motion to transfer the Texas AG case to the Northern District of California, Google filed a separate motion to consolidate the Texas AG case into an MDL it sought under Section 1407. As noted above, the JPML ultimately granted Google's motion a few months later. *See In re Digital Adver. Antitrust Litig.*, 555 F. Supp. 3d at 1372. (The JPML-ordered transfer occurred before Congress exempted from MDL consolidation state enforcement actions arising under federal antitrust laws. *See* 28 U.S.C. § 1407(f)-(g), *as amended by* Pub. L. No. 117-328, 136 Stat. 4459, 5970. Once the Texas AG case was

consolidated into the MDL, the Texas AG case lost its June 2023 trial date in the Eastern District of Texas. The Texas AG Plaintiffs have spent the last eighteen months in the MDL Court opposing Google's motion to dismiss and waiting for discovery to begin in earnest. This type of delay, at the expense of the American people, is exactly what animated Congress to exempt the United States and state plaintiffs from MDL consolidation.

Additional private actions continue to be consolidated into the MDL case before Judge Castel, including as recently as last month. *In re Digital Adver. Antitrust Litig.*, 1:21-md-03010-PKC (S.D.N.Y. Feb. 1, 2023), ECF 441. In September 2022, Judge Castel issued an 87-page opinion largely denying Google's motion to dismiss the Third Amended Complaint filed by the Texas AG Plaintiffs. Google's motions to dismiss the multiple private action complaints are currently being briefed. *Id.*, ECF 446-63.

In November 2022, Judge Castel issued a scheduling order in the MDL. *Id.*, ECF 394. Among other things, it required the parties to exchange initial disclosures by January 13, 2023. It also required the parties to submit a joint proposal for the exchange of electronically-stored information ("ESI") by that same date, so that document production could commence. *Id.*

It is now March; no such ESI protocol is in place and no documents have been produced. The MDL parties' difficulties in reaching consensus on a basic ESI protocol is a fitting example of the type of delay and distraction that can plague MDL practice. According to a letter Google submitted to Judge Castel last month, the MDL parties have spent over *sixteen months* negotiating what should be a "routine order" regarding the format for production of electronic documents, leading Google's counsel to refer in the same letter to the MDL plaintiffs' "dysfunction" and "intransigence." *Id.*, ECF 434. The failure of the parties to agree on these basic issues persists. After a status conference on February 22, 2023 (and the submission of more than 71 pages of

letters and 117 pages of attachments), *id.*, ECF 434-35, 439-41, the Court ordered the parties to "further meet and confer" and return to the Court in 14 days with another proposal for the exchange of ESI. *Id.* (Minute Entry, Feb. 22, 2023). The ESI protocol that had already been delayed to January 2023 is now further deferred until March. Document production therefore has not yet begun.

Judge Castel's scheduling order requires that fact and expert discovery in the MDL be complete by June 2024 and December 2024, respectively. *Id.*, ECF 394. Despite the Texas AG case originally being set for trial in the Eastern District of Texas in June 2023, now there is no date set for trial. This development demonstrates that Congress' concern about the delay of government-brought antitrust actions forced into MDL consolidation is real, not conjectural. Even with the best intentions and efforts, coordination of multiple individual actions and the blending of governmental actions with private actions comes at a real cost to the ability of sovereigns to vindicate antitrust harms efficiently.

On February 27, 2023, the Texas AG Plaintiffs filed a motion with the JPML to return to their original choice of forum, the Eastern District of Texas. *In re Digital Adver. Antitrust Litig.*, MDL No. 3010 (J.P.M.L. Feb. 27, 2023), ECF 229. If granted, the Texas AG case will return to Texas for pretrial proceedings as well as trial. The Texas AG Plaintiffs indicated that if their motion to return is denied, they may voluntarily dismiss their case and re-file it in Texas, so that the statutory MDL exemption would unequivocally apply. *Id.*, ECF 229-1, at 10.

## ARGUMENT

### I.   Transfer Contravenes Congressional Intent.

In 1968, Congress passed a law authorizing the "temporary transfer to a single district for coordinated or consolidated pretrial proceedings of civil actions pending in different districts which involve one or more common questions of fact." Multidistrict Litigation Act of 1968, Pub.

L. No. 90-296, 82 Stat. 109-10 (1968). The statute permitted a newly-created "judicial panel on multidistrict litigation" to determine whether a civil action "involving one or more common questions of fact" should be transferred to another district for "the convenience of parties and witnesses" and to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

The statute contained one notable exemption: antitrust enforcement actions brought by the United States. As Google acknowledges, Section 1407(g) provides that: "Nothing in this section shall apply to any action in which the United States is a complainant arising under the antitrust laws." Def. Mot. 23; 28 U.S.C. § 1407(g). In December of 2022, Congress expanded this exemption from MDL participation to antitrust enforcement actions brought by state attorneys general. Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459, 5970 (2023).[2]

Congress enacted this exemption out of concern that it would not be fair or efficient for government antitrust enforcement actions to be saddled with participation in multidistrict litigations. As Deputy Attorney General Ramsey Clark described to Congress before the passage of the original MDL statute, subjecting the federal government's antitrust enforcement cases to multidistrict litigation would cause them to "almost certainly be substantially delayed, often to the disadvantage of injured competitors who are awaiting the outcome of the Government suit upon which to predicate their damage actions." H.R. Rep. No. 90-1130 (1968).

Deputy Attorney General Clark acknowledged that "exempting the [federal] Government from this legislation may occasionally burden defendants because they may have to answer

---

[2] The amended statute also repealed a previous provision allowing antitrust damages claims brought by the United States or any state to be subject to MDL treatment. Consolidated Appropriations Act, 2023. Pub. L. No. 117-328, 136 Stat. 4459, 5970 (2023) (amending 28 U.S.C. § 1407(g) and striking 28 U.S.C. § 1407(h)).

similar questions posed both by the Government and by private parties," but he argued, "this is justified by the importance to the public of securing relief in antitrust cases as quickly as possible." *Id.* The policy justifications for this exemption are clear: antitrust actions brought by government plaintiffs serve the critical purpose of protecting the nation's economy from harm brought about by anticompetitive behavior. Allowing these cases to be mired in an MDL impedes civil law enforcement's ability to seek relief from anticompetitive conduct that harms the American people.

Congress' recent decision to amend the statutory exemption to apply to state plaintiffs as well only further evidences Congressional intent contrary to the relief Google seeks here. Specifically, before passing the recent amendment, Congress noted that "[t]he resolution of a state's antitrust claim . . . may be delayed because it is redirected to another venue, or the state may be required to coordinate or consolidate its case with slower-moving private antitrust litigation." H.R. Rep. No. 117-494, at 2-3 (2022). In such a situation, the Committee concluded, "current law undermines the ability of a state to litigate cases in federal court in its home state, even when that court is an appropriate venue and has clear jurisdiction." *Id.* at 3.

This Complaint is brought by eight State Plaintiffs alongside the United States, all of whom oppose transfer to the S.D.N.Y. The State Plaintiffs also include the Commonwealth of Virginia, which has sued Google in a federal court in its home State. Google's request to transfer away from this forum is therefore not only contrary to the intent of the statutory exemption in favor of the United States' chosen forum, but also the exemption in favor of state plaintiffs.

To be clear, Government Plaintiffs are not arguing they are categorically exempt from transfer under 28 U.S.C. § 1404(a). Rather, the reason that the purpose and history of 28 U.S.C. § 1407 matter here is because the only purported efficiency Google offers to justify transfer to the

S.D.N.Y. is the existence of a related MDL there. Depriving Government Plaintiffs of their chosen forum on this basis contravenes Congressional intent and would subject Government Plaintiffs to all of the scheduling and logistical complications of the MDL that Congress sought to avoid when it passed these statutes. For this reason, Google's motion to transfer should be denied.

## II.   Google Fails to Satisfy the Section 1404(a) Standard Because There Is a Meaningful Factual Nexus to This Forum and the Remaining Factors Are, at Best for Google, Neutral.

A party seeking transfer under Section 1404(a) bears a "heavy burden" of showing that transfer is proper.[3] *USA Labs., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 2009 WL 1227867, at *2 (E.D. Va. May 4, 2009). The moving party must show "that the circumstances of the case are *strongly* in favor of transfer." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (emphasis in original). It is within the trial court's discretion to decide whether a movant has met this burden, after a consideration of: (1) the plaintiffs' choice of venue; (2) the convenience of parties; (3) witness convenience and access; and (4) the interests of justice. *E.g.*, *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. T.L. Servs., Inc.*, 2000 WL 1923515, at *1 (E.D. Va. Sept. 27, 2000) (Brinkema, J.). Google has not met its burden here because the first factor strongly favors the Government Plaintiffs. As described below, the remaining factors are also arguably in favor of Government Plaintiffs, but even when viewed in a light most favorable to Google, they are neutral. *See, e.g.*, *Intranexus, Inc.*

---

[3] The Government Plaintiffs and Google agree that this District and the Southern District of New York are both proper venues under the antitrust laws, as Google transacts business in every district across the United States. Def. Mot. 12, n.26 (citing 15 U.S.C. § 22). Google agrees that it is subject to personal jurisdiction in the Southern District of New York, *id.*, and does not contest that it is subject to personal jurisdiction in this District.

*v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 585-86 (E.D. Va. 2002) (denying motion under Section 1404(a) "despite the fact that some factors favor[ed] transfer").

### A.    The Government Plaintiffs' Forum Choice Is Entitled to Substantial Deference.

The Government Plaintiffs' choice of this District weighs strongly against transfer. A plaintiff's forum choice is "typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (Brinkema, J.) (quoting *Heinz Kettler*, 750 F. Supp. 2d at 667). Both requirements are satisfied here.

First, this District is a home forum for the Commonwealth of Virginia; substantial weight applies to Virginia's choice to litigate here. This District's proximity to Washington, D.C. also makes it a convenient location for the United States and any federal agencies whose testimony will be necessary to support the United States' claim for damages.[4] The State of New York, also a Plaintiff here, has made a purposeful decision to litigate in this District because the complexities and risk of delay from coordination in the S.D.N.Y. far outweigh any convenience of litigating in its home forum.[5]

---

[4] The Alexandria courthouse is less than ten miles from the Antitrust Division's Washington, D.C. office and approximately the same distance from the offices of Google's Washington, D.C.-based outside counsel.

[5] Contrary to Google's suggestion, the presence of multiple plaintiffs with multiple home fora does not reduce the deference due plaintiffs' choice. "[I]t would not have been possible for plaintiffs to select one forum where they all reside." *See Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1313 (N.D. Okla. 2011) (rejecting defendant's argument that plaintiffs' forum choice was not entitled to deference because only three out of eight plaintiffs resided in Oklahoma, reasoning that "Oklahoma does have an interest in providing a forum for its residents" while defendant had not shown otherwise). Google suggests otherwise, but the two cases it cites are inapposite. In *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, 2019 WL 1398172, at *12 (E.D. Va. March 28, 2019), the only plaintiff at home in this District was "added after the lawsuit was originally filed." In *Hoefer v. U.S. Dep't of Commerce*, 2000 WL 890862, at *2 (N.D. Cal. June

Second, this District bears a meaningful relationship to the underlying cause of action. The Complaint alleges that "United States departments and agencies, including ones *in this district* such as the Army, purchase open web display advertising using Google and non-Google ad tech tools," and that "the United States has incurred monetary damages as a result of Google's anticompetitive conduct" relating to its control of online advertising transactions. Compl. ¶ 278 (emphasis added). The United States Army, and indeed the entire U.S. Department of Defense, are headquartered in the City of Arlington in the Eastern District of Virginia, roughly five miles from this District's Alexandria courthouse. *See Irby v. United States, Dep't of Army*, 245 F. Supp. 2d 792, 796 (E.D. Va. 2003) (noting this District's "unique position as home to numerous military command headquarters," including the Pentagon). Accordingly, harm from Google's anticompetitive conduct both occurred in this District and impacted an agency of the United States that also is headquartered in this District. These are meaningful factual connections to the Eastern District of Virginia, and sets this case apart from actions lacking a "legitimate connection to the district" such as this Court's ruling in *Pragmatus*, 769 F. Supp. 2d at 995.[6]

Google notes that because the word "Virginia" appears only a few times throughout the Complaint, this case has "no meaningful ties" to the forum. Def. Mot. 22 (quoting *United States v. Microsemi*, 2009 WL 577491, at *7 (E.D. Va. March 4, 2009)). Google's word count is correct, but its argument is not. The Commonwealth of Virginia is a plaintiff in this action and its connection to and stake in this case are apparent from the first page of the Complaint, whether it appears in the Complaint once or 100 times.

_____

28, 2000), the plaintiffs sought to represent a nationwide class. This case is not a class action, and the Commonwealth of Virginia was one of the original plaintiffs.

[6] Certainly, the Complaint alleges that Google's conduct has had worldwide effects such that many venues would have a substantial relationship to the action, but the Eastern District of Virginia is no less one such venue.

Google also cites *Original Creatine Pat. Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005) and *Palaxar Grp., LLC v. Williams*, 2014 WL 2002214, at *5-7 (E.D. Va. May 14, 2014), for the proposition that sales activity alone—here, the sale of digital advertising in the District—is insufficient to establish sufficient ties to a particular district. Def. Mot. 22. That argument understates the factual connection between the Department of Defense and this District. Not only does the Complaint allege that harm occurred in this District, but it also, unlike *Original Creatine* and *Palaxar*, alleges that harm was suffered by an agency headquartered in the chosen forum.

Apart from the factual nexus to this District, the fact that this is an antitrust enforcement action also warrants substantial deference to the Government Plaintiffs' forum choice. "[T]he Congressional decision that claimants be given a wide choice of forum in antitrust cases implies that where the choice is within reasonable limits, it should not be disturbed." *Lanier Bus. Prods. v. Graymar Co.*, 355 F. Supp. 524, 528 (D. Md. 1973); *accord United States v. Brown Univ.*, 772 F. Supp. 241, 242 (E.D. Pa. 1991) ("[M]any courts, pointing to the liberal venue requirements for the government bringing an antitrust suit, have held that in such suits, plaintiffs' choice of forum is entitled to heightened respect."); *United States v. U.S. Sugar Corp.*, 2022 WL 354228, at *3 (Slip Op.) (D. Del. Jan. 11, 2022) ("The Court agrees that the Government's choice of forum should be given great deference."). Antitrust matters generally, and this case specifically, seek to vindicate systemic conduct with national impact. The fact that there may be additional fora in which Government Plaintiffs could have filed an action with as far-reaching consequences as this case does not provide a meaningful basis to the disturb the substantial deference afforded to venue selection in antitrust matters.

**B.      The Convenience of the Parties and Witnesses Does Not Favor Transfer.**

Where, as here, the Government Plaintiffs have chosen a home forum, the party seeking

transfer must show that "the balance of convenience among the parties and witnesses is *strongly*

in favor of the forum to which transfer is sought." *Virginia Innovation Scis., Inc. v. Samsung*

*Elecs. Co.*, 928 F. Supp. 2d 863, 870 (E.D. Va. 2013) (quoting *Nationwide Mut. Ins. Co. v. The*

*Overlook, LLC*, 2010 WL 2520973, at *3 (E.D. Va. June 17, 2010)) (emphasis in original).

Google has not, and cannot, make such a showing here. "[W]hen plaintiffs file suit in their home

forum, convenience to parties rarely, if ever, operates to justify transfer." *JTH Tax, Inc. v. Lee*,

482 F. Supp. 2d 731, 738 (E.D. Va. 2007) (quoting *Bd. of Trustees, Sheet Metal Workers Nat'l*

*Fund v. Baylor Hearing & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988)).

The party convenience analysis includes consideration of "the ease of access to sources of

proof, the cost of obtaining [the attendance of] witnesses, and the availability of compulsory

process," *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005);

*comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 688 (E.D. Va. 2013). Even if this

District were not a home forum, nothing about the above favors the S.D.N.Y. over this District.

**1.      The Location of Documents Does Not Favor Transfer.**

"The location of relevant documents is largely a neutral factor in today's world of faxing,

scanning, and emailing documents." *Am. Steamship Owners Mut. Protection & Indem. Ass'n, Inc.*

*v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007); *Trinity Christian Ctr. of*

*Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 1322, 1327 (M.D. Fla. 2010)

(noting that the significance of the location of relevant documents and ease of access to sources of

proof "is reduced because technological advancements in electronic document imaging and

retrieval minimize the burden of document production"). There is every reason to think that

document and data productions by parties and non-parties alike will occur electronically in this case, such that the location of the courthouse relative to office space or data storage sites will be largely irrelevant.[7]

### 2.    Nor Does the Cost of Securing Witness Attendance Favor Transfer.

To the extent that Google contends that it will be costly for the Government Plaintiffs to secure the attendance of New York-based Google employees for depositions in this District, the Government Plaintiffs (including personnel at the Manhattan branch of the Office of the New York Attorney General) are ready and willing to travel to New York to conduct those depositions or to conduct them remotely when necessary. Indeed, as a technical matter, Google witnesses (other than officers), residing in New York have the ability to insist on sitting for depositions within 100 miles of their residence regardless of whether this case remains in this District or not. *See* Fed. R. Civ. P. 45(c)(1)(A); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (noting that a party "now has the option to depose the non-party witness near that witness's residence or regular place of business"). The cost of securing witness attendance—a distinct consideration from witness convenience—does not support transfer.

Regardless of where this case is ultimately tried, witness travel is inevitable. As Google admits, a certain number of Google witnesses will need to travel to the East Coast from California to testify at trial. If the case remains in this District, New York-based witnesses will need to travel

---

[7] Even if these data and documents need to be obtained via compulsory process, the actual physical storage location is irrelevant. Subpoenas seeking production of documents electronically or by mail are not limited geographically within the United States as long as the holder of the documents is not required to appear personally at a location outside the 100-mile boundary set forth in Rule 45(c)(2). The Government Plaintiffs have no need to require a personal appearance in connection with the production of data or documents in this case, so the venue for this action will not affect the availability of compulsory process for such productions. *See, e.g.*, *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 712-13 (D.S.C. 2017) ("A number of courts have held that Rule 45(c)(2)(A)'s 100-mile boundary does not apply where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents.").

here either at the Government Plaintiffs' or Google's expense. If the case is transferred, government agency witnesses based in this District, Washington, D.C., or elsewhere, will need to travel to New York. Given the scope and scale of this case, any marginal difference between the amount of travel that needs to occur between the two venues is not dispositive for the well-resourced parties in this case, particularly when the difference in costs under consideration relates to travel between the Washington, D.C. and the New York metropolitan areas—two areas that are well connected by road, rail, and air.

**3.    The Availability of Compulsory Process Likewise Does Not Favor Transfer.**

15 U.S.C. § 23 governs the issuance of subpoenas for cases arising under federal antitrust laws and allows for the issuance of subpoenas requiring witnesses to testify beyond the 100-mile boundary set in Rule 45(c), provided that the court permits such issuance. *See, e.g.*, *United States v. Energy Solutions, Inc.*, 2016 WL 7387069, at *5 (D. Del. Dec. 21, 2016) ("[15 U.S.C.] § 23 ensures that third-party witnesses will be available in either th[e] District [of Delaware] or the Western District of Texas."). Witness attendance for trial can be secured either in Virginia or New York and there is no meaningful difference in such attendance that merits transfer to Google's preferred forum.

**4.    In Any Event, Google Is No Stranger to This District.**

This District is familiar to Google, which has a data center in Loudon County, and offices in Sterling and Reston, Virginia.[8] Google concedes that it has 875 full-time employees here. Def. Mot., Reshetar Decl. ¶ 5. While only a small percentage of its U.S. workforce, 875 people is not

---

[8] Data Centers, Locations, https://www.google.com/about/datacenters/locations/loudoun-county/ (last visited Feb. 20, 2023); Our Locations, https://careers.google.com/locations/ (last visited Feb. 20, 2023).

an insignificant presence.[9] Further, in April 2022, Google announced "plans to invest more than $300 million in the Commonwealth [of Virginia] in 2022," with news coverage of the investment referencing Google's 115,000 square feet of office space in Reston, Virginia.[10] Google also did not seek to transfer venue away from the nearby District of Columbia, where a separate antitrust case brought by the United States is currently pending and scheduled for trial in September 2023. *See United States, et al. v. Google LLC*, 1:20-cv-03010-APM (D.D.C. Dec. 18, 2020) (Minute entry without docket number). The fact that Google may prefer the S.D.N.Y. does not mean that Google itself does not have a meaningful connection to this District.

### 5. Securing Party Witness Attendance Will Be No Easier in New York Than in This District.

In its transfer motion, Google relies on the parties' exchange of initial disclosure documents in the MDL proceeding to gauge the relative burden of securing witness attendance in this District versus the S.D.N.Y. Google's purported evidence falls short. Google claims that 8 of 28 (or 29%) of the then-current Google employees that Google included on its own initial disclosures to the MDL Plaintiffs are located in New York, while 39 of the 157 (or 25%) of the current or former Google employees disclosed by the plaintiffs in the MDL are located in New York. Def. Mot. 20-21; Reshetar Decl. ¶¶ 6-7. According to Google, none of these Google employees "are (or were last) based in in Virginia." Def. Mot. 20-21; Reshetar Decl. ¶¶ 6-7. This conclusory showing is not enough; Google has to do more than recite numbers of its own chosen witnesses and where they are located. *See comScore*, 924 F. Supp. 2d at 688. It also must provide

---

[9] Indeed, with 875 full-time employees based in Virginia, Google has more employees located in this District than the entire U.S. Department of Justice, Antitrust Division, employs nationwide. Teitelbaum Decl. ¶ 3.

[10] Google announces plan to invest millions in Virginia home base, giving thousands to local nonprofit, https://www.wusa9.com/article/news/local/virginia/virginia-google-announces-plan-to-invest-300-million-computer-science-local-nonprofit/65-fd7331b9-2339-4dbe-9bb7-5c4e88d92922 (last visited Feb. 20, 2023).

sufficient detail for the Court to assess "how each witness's testimony will be material and non-cumulative." *See Virginia Innovation Scis.*, 928 F. Supp. 2d at 871.

Even taking Google's numbers at face value, the numbers are not compelling. That a majority of Google's employee witnesses reside *outside* of New York does little to establish that New York is a better venue for this case. At best, Google has shown that a non-negligible contingent of its own party witnesses are New York-based, based entirely on the contents of initial disclosures Google filed in a separate (albeit similar) action. Presumably, a substantial number of the remaining Google witnesses disclosed by the MDL plaintiffs or by Google reside in California, from which travel to this District is no harder than travel to the S.D.N.Y.

Most important, though, many of the 185 witnesses cited in Google's declaration are current employees or, even if former employees, still effectively party witnesses, and thus are entitled to reduced weight in the Court's analysis. *See, e.g.*, *Rambus*, 386 F. Supp. 2d at 718. Party witnesses "are presumed to be more willing to testify in a different forum" than non-party witnesses. *See comScore*, 924 F. Supp. 2d at 688 (quoting *Rambus*, 386 F. Supp. 2d at 718). Google has not asserted that any of these witnesses "would not travel to this District, if the parties requested them to do so and paid their expenses." *See id.*

> Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process. When the 'appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important.

*Rambus*, 386 F. Supp. 2d at 719 (quoting *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002)).[11]

---

[11] To the extent that the asserted inconvenience to Google's own New York witnesses is entitled to any remaining weight, it is worth noting that the corridor between the New York and Washington D.C. metropolitan areas (including Alexandria, Virginia) is one of the most well-traveled, well-connected sections of the United States. If this action remains in this District, as it should,

Finally, while the legal standards governing discretionary transfer are not predicated on simple mathematical computations, it bears mention that the inconvenience of travel is not a one-sided inquiry. Transfer to the S.D.N.Y. would require witnesses from the Army as well as witnesses from several agencies of the United States Government located in Virginia and Washington, D.C. to travel to New York. Thus, while witnesses with relevant knowledge about federal agency advertising may also be found elsewhere in the country, the allegations of harm to federal agencies is yet another reason why the S.D.N.Y. is not substantially more convenient for party witnesses than this forum.[12]

### 6.    The Convenience of Non-Party Witnesses Does Not Favor Transfer.

To suggest that the S.D.N.Y. is more convenient than this District, Google identifies general information about non-party witnesses, including corporate headquarters and office locations, coupled with the venue preferences of certain non-parties that were expressed before the JPML. Def. Mot. 18-19. Yet vague references to the purportedly strong presence of particular industries in the S.D.N.Y. is not the kind of specific showing required to justify a venue transfer under Section 1404(a). *See comScore*, 924 F. Supp. 2d at 688. It is also speculative to assume that third parties would have the same preference for this action to be transferred to the S.D.N.Y. that they expressed nearly two years before when the matter was under consideration by the JPML.

---

Google's New York witnesses face—at most—a brief trip to Alexandria to testify at trial, at Google's or the Government Plaintiffs' expense. And even that assumes that (1) the parties determine that the testimony of these witnesses is in fact necessary at trial—an entirely speculative proposition on this record; and (2) the parties do not agree to use videotaped depositions as a substitute for live testimony in appropriate circumstances. *See* Rambus, 386 F. Supp. 2d at 719; *Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 149 (D.N.H. 1996) ("[L]oss of live testimony of less central witnesses is not so great a price for honoring plaintiff's choice [of forum].").

[12] For the purposes of this motion only, Government Plaintiffs assume for the sake of argument that federal agency witnesses are the functional equivalent of United States party witnesses. Government Plaintiffs reserve the right to argue otherwise at later stages of this litigation.

This action did not exist at that time and it is unknown whether, given the proximity of this District to New York, those third parties would still strongly prefer New York. Certainly, preferences expressed at a different time, in a different posture, with a different plaintiff are not enough to disturb Government Plaintiffs' choice of forum.

Google also argues that three of the eight non-parties identified in the Complaint are headquartered in New York, with none headquartered in this District, and only one—Amazon—having an office in Virginia. Def. Mot. 18-19. Google does not explain how the headquarters of the non-parties identified in the Complaint are a useful proxy for which non-party individual witnesses will have relevant evidence for this action, as there is no requirement that all or even most relevant third parties be identified by name in a complaint. And, in any event, the data cited by Google indicates that less than half of the non-parties have offices in New York, with the rest on the West Coast or in France—two locations for which travel to New York and this District is roughly comparable.

The Government Plaintiffs have reviewed the 33 sets of initial disclosures served by the parties in the MDL.[13] After removing witnesses identified as current or former Google employees, the Government Plaintiffs identified 267 non-duplicative third-party witnesses disclosed by the parties in the MDL, and were able to determine the geographic location of 180 of those witnesses based on the disclosures themselves or based on independent research. An

---

[13] The Government Plaintiffs do not suggest that the initial disclosures exchanged in the MDL are a reliable indicator of the location of specific non-party witnesses in this case. Rather, to the extent that Google seeks to rely on witness locations in *its* initial disclosures in the MDL in its discussion of party witness location, *see* Def. Mot. 20-21; Reshetar Decl. ¶¶ 6-7, the Court should consider the full picture of what those initial disclosures reveal about non-party witness locations. Namely, this case has a nationwide scope and is therefore likely to draw witnesses from across the country, even if there are clusters of witnesses in New York, California, Washington D.C., and elsewhere.

19

analysis of the geographic dispersion of those 180 non-party witnesses reveals that they are spread across 25 states, the District of Columbia, and five countries. Teitelbaum Decl. ¶ 4 & Table. Only 37 (21%) of the potential non-party witnesses identified in the MDL initial disclosures are actually located in New York, *id.*, meaning that even if the case were transferred to New York, 79% of the potential non-party witnesses will be required to travel outside their home district if their in-person testimony is needed for trial. No state has more than 21% of these non-party witnesses, and most have less than 7%. *See id.* For most of these individuals, travel to the Eastern District of Virginia is no more inconvenient than travel to New York.

When witnesses are geographically dispersed across multiple districts, the witness convenience factor is neutral in the transfer analysis. *See Robinson v. Eli Lilly and Co.*, 535 F. Supp. 2d 49, 52 (D.D.C. 2008); *accord Calabrese v. Teoco Corp.*, 637 F. Supp. 2d 160, 165 (S.D.N.Y. 2009) ("Because the key witnesses identified appear to be dispersed across the United States, the court holds that Defendant has not shown that the convenience of witnesses is a factor weighing in favor of transfer."). In *Robinson*, the court rejected a motion to transfer where, as here, witnesses were dispersed, with "no single forum convenient to all or a majority of identified or critical witnesses." 535 F. Supp. 2d at 52. The court noted that "[p]otential key fact and expert witnesses resid[ed] in several states along the East Coast from Massachusetts to Florida and elsewhere." *Id.* Also like here, there was no indication that certain evidence or witnesses would be unavailable in one forum or the other. *Id.* at 53. The *Robinson* court thus concluded that the moving party had "not made a convincing case" that the District for the District of Columbia was inappropriate. *Id.*

Like *Robinson*, it is unlikely that either the S.D.N.Y. or this District will have a majority of trial witnesses within its borders. Certain key trial witnesses will no doubt reside outside this

District, and the same is true for the S.D.N.Y. Ultimately, a practical assessment of witness availability and location based on the current record reveals that no single district is ideal from a witness convenience standpoint, and there is no district that is likely to be home to even a bare majority of witnesses. Some witnesses will be located in or near this District; others will be on the West Coast; still others will be in or near the S.D.N.Y., with the remainder spread throughout the country and possibly overseas. Thus, the witness convenience factor is neutral and does not warrant transfer. *See Robinson*, 535 F. Supp. 2d at 52.

###### C.     Transfer Does Not Obviate the Risk of Inconsistent Judgments.

Under Section 1404(a), the interests of justice factor encompasses "public interest factors aimed at systemic integrity and fairness." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 669 (E.D. Va. 2010) (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)).

> The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments. Fairness is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law.

*Id.* at 669-70. Despite Google's arguments, transfer of this action to the MDL will not preserve judicial economy or avoid inconsistent judgments. Indeed, fairness considerations weigh strongly against such a transfer.

###### 1.     Transfer Will Not Prevent Inconsistent Judgments Because MDLs Are for Pretrial Purposes Only and Cases Can Be Transferred to Home Jurisdictions for Trial, Judgment, and Appeal.

Google argues that transfer to the S.D.N.Y. is necessary for judicial economy and to avoid the risk of inconsistent judgments. Def. Mot. 12-17. But the MDL currently before Judge Castel is limited to "coordinated or consolidated *pretrial* proceedings," but not necessarily trial. *In re Digital Adver. Antitrust Litig.*, 555 F. Supp. 3d at 1380 (emphasis added). The MDL statute

"unconditionally commands the [JPML] to remand, at the end of pretrial proceedings, each action transferred by the Panel that has not been terminated in the transferee district." *Annotated Manual for Complex Litigation* § 20.132 (cleaned up); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35-36 (1998). It thus remains to be seen how many of the actions consolidated before Judge Castel remain there for trial, given that only one action originated in that district. *In re Digital Adver.*, 555 Supp. 3d at 1379-80, sched. A; *Annotated Manual for Complex Litig.* § 20.132. If the MDL plaintiffs elect to return to their home districts, as is their right, numerous federal courts around the country will render the ultimate judgments in these cases, with appeals, if necessary, to various circuit courts. In that regard, nothing this Court will do with respect to this motion can prevent the possibility of inconsistent trial judgments or appellate rulings in these matters.

As to the possibility of inconsistent pretrial rulings,[14] that concern led to the passage of the MDL statute in the first place. *In re Auto. Refinishing Paint*, 229 F.R.D. 482, 486 (E.D. Pa. 2005) (examining the legislative history of § 1407 and observing "[the statute's] remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings."). Even still, as described above, Congress exempted antitrust actions by Governmental Plaintiffs from MDL proceedings because it believed that a higher priority was at stake. Further, if the Texas AG Plaintiffs are successful in having their action removed from the MDL and sent back to the Eastern District of Texas in light of the recent change to the MDL statute,[15] the possibility of

---

[14] Google fails to mention that two separate district courts have already issued two different pretrial rulings on Google's motions to dismiss, with no demonstrable harm to Google or the parties. *Compare In re Digital Adver. Antitrust Litig.*, 21-md-03010-PKC (S.D.N.Y. Sept. 13, 2022), ECF 308 (largely denying Google's motion to dismiss), *with In re Digital Adver. Antitrust Litig.*, 5:20-cv-03556-BLF (N.D. Cal. May 13 2021), ECF 143 (granting Google's motion to dismiss with leave to amend).

[15] *See* 28 U.S.C. § 1407(f)-(g), *as amended by* P.L. 117-328, 136 Stat. 4459.

inconsistent pretrial rulings will exist, even if this case is transferred to New York.[16] Indeed, the Texas AG Plaintiffs have indicated that even if their motion is denied, they may decide to dismiss their case voluntarily and re-file a new case in Texas, so that the recently enacted State Venue Enforcement Act will unambiguously apply. Further, even within the confines of the MDL's pretrial proceedings, the possibility of varying rulings remains, even before the same judge, because the MDL plaintiffs are not all similarly situated, and may advance different legal theories that will be met by varying responses from Google.

Moreover, as a technical matter, while this case can be transferred to the S.D.N.Y., it cannot actually be consolidated with the MDL under Rule 42(a), because "for a court to effect a consolidation pursuant to Rule 42, the actions to be consolidated must both be pending before the court for all purposes." *In re Penn Cent. Com. Paper Litig.*, 62 F.R.D. 341, 344 (S.D.N.Y. 1974). Because the MDL is, for the moment at least, limited to pretrial proceedings, this case would have to proceed as a separate action in the same court. *See id.*; *In re Prempro Products Liability Litigation*, 2008 WL 5274323, *2 (E.D. Ark. Dec. 18, 2008). Indeed, even if consolidation were technically available, "Congress has articulated a strong public policy against combining antitrust complaints brought by the Government with private antitrust damages suits." *See United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 144 (D. Del. 1999). The *Dentsply* court reasoned that Congress already forbade consolidation of federal antitrust enforcement actions through 28 U.S.C. § 1407(g), in an effort to ensure that federal antitrust enforcement actions would not be

---

[16] If Google's motion is granted, the Government Plaintiffs will be required to stay in New York, including through trial, while the private action and Texas AG cases will be allowed to return to their home districts for trials and any associated appeals. The Government Plaintiffs' case will thus have a lengthier stay before the MDL court than virtually all other MDL plaintiffs, despite Congress' express desire to allow Government Plaintiffs to choose where they enforce the nation's antitrust laws.

delayed through combination with private antitrust actions. *Id.* at 144-45. Allowing consolidation under Rule 42(a)[17] would "circumvent § 1407(g)" by allowing private litigants to seek transfer to a forum with a pending federal action and then seek consolidation under Rule 42(a). *Id.* at 144.

The MDL and this action would therefore likely remain separate proceedings even if they both were pending before Judge Castel. This action would still have to be resolved as a stand-alone case even if it were transferred to New York. For this reason, the presence of a related matter in another district "need not be given significant weight, or even any weight . . . if there is no realistic possibility of consolidating the pending litigation with the related cases, as might be the situation when the parties or issues do not overlap extensively or the actions are at different stages of development." 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3854 (4th ed. 2022); *see also Bd. of Trustees,* 702 F. Supp. at 1261 (noting that the "pendency of a related action in the transferee forum favors transfer where it would be both feasible and beneficial to consolidate the actions," but rejecting transfer where consolidation was "unlikely"); *Cent. States, Se. and Sw. Areas Pension Fund v. Davidson*, 2007 WL 722889, *3 (N.D. Ill. March 8, 2007) (denying transfer motion despite related action pending in Michigan because of strong presumption in favor of ERISA plaintiff's forum choice, "issues and parties [were] not the same" as in related action, and "consolidation [was] unlikely" due to cases being at different stages).

---

[17] Federal Rule of Civil Procedure 42(a) provides, "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

It also bears noting that transfer is not a necessary condition to achieve judicial economy. This Court, of course, possesses the authority to order coordination of depositions, interrogatories, and requests for production. *Annotated Manual for Complex Litigation* § 20.14.

### 2. Fairness and Efficiency Considerations Counsel in Favor of Keeping this Action in this District.

This Court and others in the District are appropriately cautious about giving docket conditions significant weight in the Section 1404 transfer analysis, given that the "rocket docket" is a potential magnet that could lead this District to be "swamped" with cases. *See Pragmatus AV,* 769 F. Supp. 2d at 997. Still, docket congestion merits some consideration, particularly where, as here, the plaintiff has "significant connections to the Eastern District of Virginia," *see id.*; *comScore,* 924 F. Supp. 2d at 690-91. This is not a case where, as discussed above, "the other convenience and justice factors weigh in favor transfer." *Cf. Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 696 (E.D. Va. 2007).

If this action is transferred to the S.D.N.Y. for coordination with the MDL, expert discovery will not conclude until December 2024, almost two years after filing this action. Trial would presumably occur in 2025 at the earliest. By contrast, courts in this District have achieved an average time from filing to trial in civil cases of 18.1 months for the year ending on September 30, 2022.[18]

As discussed above, Congress clearly contemplated deference to government plaintiffs in their choice of forum and the most efficient prosecution of their civil enforcement cases. Deputy Attorney General Ramsey Clark sought—and obtained—the MDL exemption because of the "importance to the public of securing relief in antitrust cases as quickly as possible." H.R. Rep.

---

[18] Table N/A—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (September 30, 2022), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2022.pdf (last visited Feb. 21, 2023).

No. 90-1130 (1968) (arguing for exemption now codified at 28 U.S.C. § 1407(g)). Transferring this action to the S.D.N.Y. for coordination with the MDL is contrary to the policy objectives manifested in 28 U.S.C. § 1407(g). *See Nat'l City Lines*, 334 U.S. at 589 (noting "Congress' declared policy of expediting [antitrust] . . . litigation").

The need for swift action is particularly pronounced in this case given the pace of change in technology and the dynamic nature of Google's anticompetitive conduct across the ad tech industry. As the ad tech industry has attempted to innovate around Google's anticompetitive conduct, Google has adopted new anticompetitive strategies to meet new threats. (*See, e.g.*, Compl. ¶¶ 163-197) (describing Google's anticompetitive responses to the threat of header bidding). Absent prompt judicial action, Google has the opportunity to continue to adapt its anticompetitive practices to evade any self-help remedies the market attempts, and market participants and the public at large will continue to be injured by Google's conduct.

For all of these reasons, fairness considerations strongly favor denying Google's motion.[19]

---

[19] The remaining fairness factors are neutral or inapplicable here. This case has a nationwide—indeed, worldwide—scope, so this District has the same interest in having this controversy decided here as any other District. Knowledge of the law is ample in both districts, and this case has sufficient ties to this District to justify the use of jurors here. Finally, conflict of laws will not be an issue in either district.

## **CONCLUSION**

The Government Plaintiffs were entitled to choose this forum for this action, and that choice is entitled to deference. Google has failed to demonstrate why its preference to litigate this case in the S.D.N.Y. should disturb the deference accorded to Government Plaintiffs' forum choice. Government Plaintiffs' respectfully request that the Court deny Google's motion.


Dated: March 3, 2023

Respectfully submitted,

FOR THE UNITED STATES:

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
Jamieson Avenue
Alexandria, VA 22046
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ Aaron M. Teitelbaum
AARON M. TEITELBAUM
  *Senior Litigation Counsel*

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

FOR THE PLAINTIFF STATES:

JASON S. MIYARES
Attorney General of Virginia

/s/ Andrew N. Ferguson
ANDREW N. FERGUSON
Solicitor General
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of
Virginia and local counsel for the
States of California, Colorado,
Connecticut, New Jersey, New York,
Rhode Island, and Tennessee