IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**UNITED STATES**, *et al.*,

                    *Plaintiffs*,

    - against -

**GOOGLE LLC**,

                    *Defendant*.

Civil Action No. 1:23-cv-00108 (LMB) (IDD)

**DEFENDANT GOOGLE LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
202-777-4500

*Counsel for Defendant Google LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 4

    I.    The Analysis Under 28 U.S.C. § 1404(a) Overwhelmingly Favors Transfer...................... 4

        A.    The Interest of Justice Favors Transfer. ............................................................................ 4

            1.    The Risk of Inconsistent Judgments Favors Transfer. .................................................. 5

            2.    Judicial Economy Favors Transfer. ............................................................................... 7

        B.    The Convenience of the Parties Favors Transfer. ........................................................... 10

        C.    The Convenience of Third-Party Witnesses Favors Transfer. ....................................... 11

        D.    Because Plaintiffs Have Engaged In Forum Shopping, Their Choice of Forum Should Not Be Afforded Any Weight At All. ................................................................... 12

    II.    Google Is Not Seeking Consolidation Under 28 U.S.C. § 1407. .................................... 14

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Agilent Techs., Inc. v. Micromuse, Inc.*,
   316 F. Supp. 2d 322 (E.D. Va. 2004) ...................................................................................2

*A. J. Indus., Inc. v. U.S. Dist. Ct.*,
   503 F.2d 384 (9th Cir. 1974) ..................................................................................................7

*AT&T v. MCI Commc'ns Corp.*,
   736 F. Supp. 1294 (D.N.J. 1990) ..........................................................................................14

*Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*,
   2009 WL 2448519 (S.D. Ill. July 22, 2009) ............................................................................6

*Byerson v. Equifax Info. Servs., LLC*,
   467 F. Supp. 2d 627 (E.D. Va. 2006) ....................................................................................4

*Calabrese v. Teoco Corp.*,
   637 F. Supp. 2d 160 (S.D.N.Y. 2009) ..................................................................................11

*Carter v. Wilson*,
   2019 WL 13242563 (D.D.C. Mar. 25, 2019) .......................................................................13

*Cont'l Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960) ..................................................................................................................7

*D2L Ltd. v. Blackboard, Inc.*,
   671 F. Supp. 2d 768 (D. Md. 2009) .......................................................................................6

*Dietrick v. Apex Sys., LLC*,
   2019 WL 1745994 (D. Md. Apr. 18, 2019) .........................................................................11

*In re: Dig. Advert. Antitrust Litig.*,
   555 F. Supp. 3d 1372 (J.P.M.L. 2021) ...................................................................................9

*F.T.C. v. Cephalon*,
   2:08-cv-02141-MSG (E.D. Pa.) ...........................................................................................10

*F.T.C. v. Cephalon*,
   551 F. Supp. 2d 21 (D.D.C. 2008) ...............................................................................4, 6, 10

*F.T.C. v. Graco Inc.*,
   2012 WL 3584683 (D.D.C. Jan. 26, 2012) ..........................................................................13

*F.T.C. v. Illumina, Inc.*,
   2021 WL 1546542 (D.D.C. Apr. 20, 2021) .........................................................................14

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990) ..................................................................................................... 14

*Forsburg v. Wells Fargo & Co.*,
   596 F. Supp. 3d 572 (W.D. Va. 2022) .......................................................................... 12

*In re Funeral Consumers Antitrust Litig.*,
   2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) ............................................................. 11

*Gen. Tire & Rubber Co. v. Watkins*,
   373 F. 2d 361 (4th Cir. 1967) ................................................................................... 2, 12

*In re Google Dig. Advert. Antitrust Litig.*,
   No. 1:21-md-03010 (S.D.N.Y.) ....................................................................................... 8

*Hengle v. Curry*,
   2018 WL 3016289 (E.D. Va. June 15, 2018) ................................................................. 6

*Moore v. Sirounian*,
   2020 WL 5791090 (E.D. Va. July 20, 2020) .................................................................. 1

*Netlist, Inc. v. Smart Modular, Inc.*,
   2013 WL 12128691 (C.D. Cal. Nov. 26, 2013) ........................................................... 12

*Original Creatine Pat. Co., Ltd. v. Met–Rx USA, Inc.*,
   387 F. Supp. 2d 564 (E.D. Va. 2005) ............................................................................. 1

*Pierce v. Coughlin*,
   806 F. Supp. 426 (S.D.N.Y. 1992) ................................................................................ 12

*Pragmatus AV, LLC v. Facebook, Inc.*,
   769 F. Supp. 2d 991 (E.D. Va. 2011) ......................................................................... 1, 2

*Robinson v. Eli Lilly and Co.*,
   535 F. Supp. 2d 49 (D.D.C. 2008) ................................................................................ 11

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) .......................................................................................... 5

*United States ex rel. Salomon v. Wolff*,
   268 F. Supp. 3d 770 (D. Md. 2017) .............................................................................. 13

*Spack v. Trans World Ent. Corp.*,
   2017 WL 6209218 (D.N.J. Dec. 8, 2017) ..................................................................... 13

*Telepharmacy Sols., Inc. v. Pickpoint Corp.*,
   238 F. Supp. 2d 741 (E.D. Va. 2003) ............................................................................. 7

*Texas v. Penguin Grp. (USA) Inc.*,
    2013 WL 1759567 (S.D.N.Y. Apr. 24, 2013) ........................................................................10

*United States v. Apple, Inc.*,
    1:12-cv-02826-DLC (S.D.N.Y.) ...........................................................................................10

*United States v. Nat'l City Lines*,
    334 U.S. 573 (1948) ................................................................................................................3

*United States v. Nat'l City Lines*,
    337 U.S. 78 (1949) ..................................................................................................4, 14, 15

*Valerino v. Holder*,
    2014 WL 11512352 (E.D. Va. Apr. 4, 2014) .......................................................................13

**Statutes**

28 U.S.C. § 1404 ............................................................................................................... *passim*

28 U.S.C. § 1407 ............................................................................................................... *passim*

Act of April 29, 1968,
    Pub. L. No. 90-296, 82 Stat. 109 (codified as amended at 28 U.S.C. § 1407) .....................14

Consolidated Appropriations Act, 2023,
    Pub. L. No. 117-328, 136 Stat. 4459 (2022) ........................................................................14

Hart-Scott-Rodino Antitrust Improvements Act of 1976,
    Pub. L. No. 94-435, 90 Stat. 1383 (1976) ............................................................................14

## PRELIMINARY STATEMENT

"When a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'" *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) (Brinkema, J.) (citing *Original Creatine Pat. Co., Ltd. v. Met–Rx USA, Inc.*, 387 F. Supp. 2d 564, 572 (E.D. Va. 2005)). And while this Court's "'rocket docket' certainly attracts plaintiffs," it must not "stand as a willing repository for cases which have no real nexus to this district." *Moore v. Sirounian*, 2020 WL 5791090, at *5 (E.D. Va. July 20, 2020) (Brinkema, J.). Although Plaintiffs concede that access to this Court's "rocket docket" is not a proper consideration under § 1404, ECF No. 47 ("Opp.") at 25, they nevertheless stake much of their argument against transfer on just that: their claimed need for access to the speed and efficiency for which courts in this District are known.

Plaintiffs concede that they were motivated by the desire for "expeditious resolution" of their case through "swift" and "prompt judicial action," Opp. at 3, 26, and that they made a "purposeful decision to litigate in this District because of the complexities and risk of delay" had they proceeded in the Southern District of New York ("S.D.N.Y."). *Id.* at 10. These concessions make clear that Plaintiffs' primary reason for filing in this District is their hope to leapfrog the substantively identical cases pending before the Honorable P. Kevin Castel in the S.D.N.Y. and thereby make up for their own delay. But Plaintiffs' desire to outpace the S.D.N.Y. cases should be given no weight, and so cannot possibly outweigh the interest of justice and convenience factors under 28 U.S.C. § 1404 that plainly support transfer.

Plaintiffs admit that venue in the S.D.N.Y. is proper, Opp. at 9 n.3, so the only issue presented under § 1404 is "'whether the interest of justice and convenience of the parties and

1

witnesses justify transfer.'" *Pragmatus*, 769 F. Supp. 2d at 994 (quoting *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004)). That question asks the Court to weigh: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Pragmatus*, 769 F. Supp. 2d at 994-95.

Of these factors, Plaintiffs focus on their choice of forum, as it is the only factor that even arguably weighs in their favor. But in doing so, Plaintiffs manufacture a connection to Virginia that simply does not exist and greatly overstate the weight their choice should be afforded. Plaintiffs place unwarranted significance on the presence of the Commonwealth of Virginia as a plaintiff and ask the Court to focus on the alleged injuries of just a handful of the massive number of display advertising customers across the country. But the Eastern District of Virginia has no substantial or unique connection to the conduct at issue in this case. Instead, Plaintiffs filed in this District for reasons of speed. *See* Opp. at 10, 25-26. As a result, Plaintiffs' choice of forum is not entitled to any weight at all. *Gen. Tire & Rubber Co. v. Watkins*, 373 F. 2d 361, 369 (4th Cir. 1967) (en banc) (granting mandamus and ordering transfer where "[t]he evidence indicates a high degree of forum shopping . . . [which] must not be indulged in the face of multiple litigation especially where, as here, the shopper is offered an equally convenient forum").

In their overemphasis on their choice of forum, Plaintiffs fail to grapple with what, in this case, should be the primary driver of the transfer analysis under § 1404: the interest of justice and, specifically, the risk of inconsistent rulings and judgments. Instead of addressing whether those risks weigh in favor of transfer, Plaintiffs incorrectly focus on whether transfer will "Obviate the Risk of Inconsistent Judgments" *entirely*. Opp. at 21. But that is not the test. Even if the risk of inconsistent judgments *at trial* cannot be avoided entirely through coordinated pretrial proceedings,

Plaintiffs ignore the manifold risks of inconsistent judgments in the pretrial phase, including rulings on attorney-client privilege, *Daubert* issues, and—most significantly—summary judgment. Moreover, Plaintiffs fail to address the inevitable waste and inefficiency that would result from a *second* federal court investing time and resources managing this extraordinarily complex case, as well as the massive waste that would occur if appeals of inconsistent rulings had to funnel through the courts of appeals in two different circuits.

As for the convenience of the parties and witnesses, Plaintiffs concede that the S.D.N.Y. cases involve "related claims and facts" to this case, Opp. at 2, and even use the initial disclosures served in the S.D.N.Y. cases as a proxy for the third-party witnesses that will be relevant in this case, *id*. at 19-20. What is even more telling, Plaintiffs fail to identify a single legal issue that distinguishes this case from the S.D.N.Y. cases or a single witness who would be required for this case who will not also be required in the S.D.N.Y. cases. Even their mention of the U.S. military presence in Virginia does not tie that presence to the military's purchase of display advertising technology or services from Google. And, finally, in acknowledging that this District is no more convenient for third parties than the S.D.N.Y. would be, *id.* at 20-21, Plaintiffs overlook that their own analysis shows that more third-party witnesses are in New York than anywhere else, with *twelve times more* witnesses in New York than in Virginia. ECF No. 47-1 ("Teitelbaum Decl."), ¶ 4.

Perhaps recognizing that the transfer analysis under 28 U.S.C. § *1404* does not weigh in their favor, Plaintiffs instead ground their Opposition in a congressional intent argument based on a different statute, 28 U.S.C. § *1407*, and the Supreme Court's pre-§ 1404 decision in *United States v. Nat'l City Lines*. Opp. at 2-3 (citing 334 U.S. 573, 589 (1948)). But Plaintiffs rely upon the wrong *National City Lines* decision. The Supreme Court revisited the 1948 decision cited by

3

Plaintiffs the very next year—following the adoption of § 1404—and held that § 1404 *does* apply to government antitrust suits. *See United States v. Nat'l City Lines*, 337 U.S. 78, 84 (1949). And moreover, when, as here, transfer under § *1404* is at issue, "the question of multidistrict transfer and consolidation is simply not before this Court." *F.T.C. v. Cephalon*, 551 F. Supp. 2d 21, 32 (D.D.C. 2008).

Even if that were not so, the congressional intent argument that permeates Plaintiffs' Opposition is undermined by their explicit concession that *they do not contend they are exempt from transfer under 28 U.S.C. § 1404*. Opp. at 8. Read in light of that concession, Plaintiffs' Opposition boils down to a generalized and unsupported assertion that the transfer analysis should be informed by policy concerns that animated amendments to § 1407 instead of the governing principles that apply to § 1404—which Congress chose *not* to amend.

Accordingly, Google respectfully requests that the Court transfer this case to the Southern District of New York where it can be coordinated by Judge Castel with the cases already before him.

## ARGUMENT

I.  **The Analysis Under 28 U.S.C. § 1404(a) Overwhelmingly Favors Transfer.**

    A.  **The Interest of Justice Favors Transfer.**

In a case like this, where essentially identical cases[1] are pending in another district, the interest of justice alone can justify transfer. *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633-37, 637 n.7 (E.D. Va. 2006) (interest of justice was the "dispositive consideration" in

---

[1] Demonstrating the overlap between the cases, Texas Attorney General Ken Paxton told the Texas Senate on February 3, 2023 that "the U.S. Government just filed a copy of our [ad tech] case . . . you know what they say about plagiarism, it's a form of flattery." *S. Comm. on Fin.* at 2:07:44-2:08:12, 2023 Leg., 88th Sess. (Tex. 2023) (statement of Ken Paxton, Att'y Gen. of Texas), https://tlcsenate.granicus.com/MediaPlayer.php?view_id=53&clip_id=17183.

4

granting transfer, even though plaintiff's choice of venue received "significant weight" and convenience of parties and witnesses weighed against transfer).[2] The "[m]ost prominent" considerations include the risk of inconsistent judgments and whether transfer would serve judicial economy. *Id.* at 635. Plaintiffs, in their Opposition, assert that "fairness considerations" weigh against transfer, Opp. at 21, 26, but then proceed to advocate for an outcome that would unfairly subject Google to duplicative litigation and that would waste the time and resources of the parties, nonparty witnesses, and this Court.

### 1. The Risk of Inconsistent Judgments Favors Transfer.

Plaintiffs' choice of venue actively courts the risk of inconsistent judgments. Both the S.D.N.Y. cases and this case seek damages, as well as declaratory, injunctive, and structural relief, based on the same legal theories and the same alleged conduct involving the same Google products and services, relying on many of the same documents collected in parallel investigations. ECF No. 44 ("Google Br.") at 10-12, 14-15.

In their Opposition, Plaintiffs do not address these risks and instead misstate the applicable test under § 1404. Rather than addressing whether this factor weighs in favor of transfer, Plaintiffs instead query whether the risk of inconsistent judgments in an MDL can *ever* be obviated altogether. Opp. at 21. The thrust of Plaintiffs' argument seems to be that, because the S.D.N.Y. cases have been centralized only for pre-trial purposes (and thus *may* eventually return to their home districts for trial), the risk of inconsistent judgments cannot be avoided entirely and so this Court should ignore this critical (and often dispositive) factor. *See id.* at 22 ("[N]othing this Court

---

[2] *See also Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The interest of justice may be determinative . . . even where the convenience of the parties and witnesses points toward the opposite result."). Here, convenience of the parties and witnesses also supports transfer.

5

will do with respect to this motion can prevent the possibility of inconsistent trial judgments or appellate rulings in these matters.").

Plaintiffs' analysis is wrong because it ignores the risks of inconsistent rulings in the pre-trial phase, including rulings on attorney-client privilege, *Daubert* issues, and, most critically, summary judgment. *See* Google Br. at 15-16.[3] Transfer is favored under § 1404 when it would avoid the "'prospect of inconsistent outcomes' that does not exist when the same court manages both cases." *Hengle v. Curry*, 2018 WL 3016289 at *11 (E.D. Va. June 15, 2018).

Plaintiffs further argue that the presence of related cases in the transferee forum is given less weight when consolidation is not possible. Opp. at 24. But courts can and do transfer cases even when consolidation is not possible. As Judge Bates explained in *Cephalon*, "[t]he short answer to FTC's contention is that consolidation is not the sole efficiency associated with transferring this case. In fact, the most compelling reason to grant this transfer—the need to avoid the risk of inconsistent judgments—is entirely independent from the prospect of consolidation." 551 F. Supp. 2d at 32. Moreover, "even where consolidation is not feasible, transfer is appropriate given that it is 'a significant waste of judicial economies for two separate courts to adjudicate [the same] issues.'" *Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, 2009 WL 2448519, at *5 (S.D. Ill. July 22, 2009); *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783 (D. Md. 2009) ("Transfer is favored even if it is uncertain whether the transferred case will be consolidated with the related pending case."). Indeed, "[t]o hold that the pendency of an action between the parties in another district could not be considered unless the action could be consolidated would unnecessarily limit

---

[3] Plaintiffs speculate that "even within the confines of the MDL's pre-trial proceedings, the possibility of varying rulings remains, even before the same judge." Opp. at 23. Contrary to Plaintiffs' implication, however, Google is confident that Judge Castel can ably rule on the same issues across his cases without creating inconsistencies.

the factors that should be considered in making a transfer determination." *A. J. Indus., Inc. v. U.S. Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974).

### 2. Judicial Economy Favors Transfer.

By filing suit in this District, Plaintiffs invite a second federal court to unnecessarily expend its limited resources to manage and adjudicate an extraordinarily complex case when another federal district court has already invested significant time in grappling with the very same issues and will continue to do so regardless of the outcome of this motion. The Supreme Court has ruled that such duplication of judicial effort leads to the very "wastefulness of time, energy and money that 28 U.S.C. § 1404 was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

Plaintiffs also confuse and conflate the desire for judicial economy under § 1404—which focuses on the efficient resolution of *all* claims in the federal judicial system—with Plaintiffs' own interest in advancing *this case* quickly. But Plaintiffs' various appeals for the need for "expeditious resolution" of their case and "prompt judicial action" in light of the "pace of change in technology," Opp. at 3, 26, have nothing to do with judicial economy under § 1404 and are difficult to reconcile with the DOJ's own delay in bringing this case. *See* Google Br. at 10. Plaintiffs filed suit here seeking to make up for lost time, but "[t]he interests of justice are not served by such blatant forum shopping." *Telepharmacy Sols., Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (granting transfer when "docket considerations [were] the primary reason that [plaintiff sought] to be heard" in the Eastern District of Virginia).

Having waited to file a full two years after everyone else, Plaintiffs' asserted need for speed rings hollow. *See, e.g.*, Opp. at 5-10, 25-26. The DOJ began its ad tech investigation in 2019, issued its first CID dedicated to ad tech topics on October 7, 2019, and took its last deposition of

7

a Google ad tech witness over one year ago, *see* Garrett Decl. Ex. A.[4]  Even more remarkably, Plaintiffs' case challenges acquisitions that closed in 2008 and 2011, *see* Compl. ¶¶ 16, 87, 312, and respectively were cleared to proceed by the FTC and the DOJ Antitrust Division itself.[5] Having done nothing in the intervening 10 to 15 years, Plaintiffs now ask this Court to duplicate the efforts of Judge Castel and risk the prospect of conflicting or inconsistent rulings based on Plaintiffs' sudden claim of urgency.

The DOJ has never explained why it has waited so long to file this lawsuit.  Public reporting suggests that the DOJ's choice to sue now is driven by the recent January 2023 clearance of the Assistant Attorney General ("AAG") for the Antitrust Division, Jonathan Kanter, to work on the case after a one-year recusal period.[6]  AAG Kanter previously represented Google's ad tech rivals in Texas's ad tech investigation—another illustration of the overlap in these two cases.[7]

Judicial economy clearly favors transfer here.  The MDL is already ahead of this case: Judge Castel has entered a Scheduling Order[8] and discovery has commenced.  Nine days ago, Google served its Responses and Objections to initial requests for production, in which Google agreed to produce additional documents that were previously produced to the DOJ in its ad tech investigation and to run additional searches for documents based on custodians and search terms

---

[4] In support of its Motion, Google submits the Declaration of Tyler Garrett, dated March 8, 2023 (the "Garrett Decl.").

[5] Press Release, Fed. Trade Comm'n, Federal Trade Commission Closes Google/DoubleClick Investigation (Dec. 20, 2007); Press Release, U.S. Dep't of Justice, Statement of the Department of Justice's Antitrust Division on Its Decision to Close Its Investigation of Google Inc.'s Acquisition of Admeld Inc. (Dec. 2, 2011).

[6] Josh Sisco, *DOJ Antitrust Chief Cleared to Oversee Google Probes*, POLITICO (Jan. 13, 2023), https://www.politico.com/news/2023/01/13/doj-antitrust-chief-cleared-to-oversee-google-probes-00077966.

[7] *Id.*  AAG Kanter also continues to be listed in the State of Texas' initial disclosures as counsel for two of Google's competitors and for a consortium that includes a number of private plaintiffs in the S.D.N.Y., but presumably that is a mistake.

[8] Pre-Trial Order No. 5, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Nov. 21, 2022), ECF No. 394 [hereinafter "PTO No. 5"].

that were agreed with the DOJ and Texas. Garrett Decl. ¶ 3. Fact discovery is set to last through mid-2024, but production of documents must be substantially completed by the end of May of this year, and expert discovery is set to close within twenty-one months. PTO No. 5 ¶¶ 6.1, 7. That is not far off from this District's average time to trial of eighteen months, Opp. at 25—and this case is more complex by orders of magnitude than the average case. *See In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1377 (J.P.M.L. 2021) (noting the "factually and legally complex" nature of the ad tech actions). And so, despite Plaintiffs' decision to wait almost a year from taking its last deposition of a Google witness before bringing this action, *see* Garrett Decl. Ex. A, Plaintiffs' case is well-positioned for Judge Castel to coordinate its pre-trial matters with the S.D.N.Y. cases.[9]

Although Plaintiffs nod to the possibility of informal coordination between this Court and the MDL, Opp. at 25, Plaintiffs' concerns about the pace of the MDL betray that they have no interest in coordinating discovery should this case remain here. Coordination requires similar events to follow similar timelines; that would be impossible if this case proceeds through discovery more quickly than the MDL. Uncoordinated discovery periods would only serve to multiply the inefficiencies and inconvenience of having essentially the same claims proceed in front of two different courts.

Indeed, coordination between government and private antitrust suits located in the same district is commonplace and has led to efficient use of party, witness, and judicial resources. For example, in *Cephalon*, the District Court for the District of Columbia granted Cephalon's § 1404 motion to transfer the FTC's antitrust suit against it to the Eastern District of Pennsylvania because

---

[9] That Plaintiffs are the Government and that this is an antitrust case does not make a second, duplicative lawsuit more "efficient," as Plaintiffs seem to suggest. Opp. at 25. Courts can and do transfer government antitrust cases under § 1404, including when there are related private cases in the transferee forum. *See supra* at 4, 6-7.

several plaintiffs' actions concerning the same alleged conduct had already been pending for two years in that district. 551 F. Supp. 2d at 29-33 & n.8. Thereafter, all parties—including the FTC—submitted a joint Discovery Coordination Order that was entered by Judge Goldberg and provided for coordinated written discovery, depositions, and expert discovery. *See* Joint Mot. for Entry of Disc. Coordination Order, *F.T.C. v. Cephalon*, 2:08-cv-02141-MSG (E.D. Pa. Aug. 20, 2010), ECF No. 76.[10] Likewise, in the Apple eBooks antitrust litigation, the private plaintiffs' actions predated the DOJ's and State Attorneys General's suits, and the court overseeing all of the DOJ, States, and the private actions set a schedule for coordinated fact and expert discovery once the DOJ filed its suit. *See Texas v. Penguin Grp. (USA) Inc.*, 2013 WL 1759567, at *1-3 (S.D.N.Y. Apr. 24, 2013) (describing case procedural history).[11] This is precisely the type of coordination that is not barred by § 1407 but is in fact enabled and encouraged by § 1404.

### B. The Convenience of the Parties Favors Transfer.

Plaintiffs do not assert that the convenience of the parties weighs against transfer—only that it is neutral. *See* Opp. at 13-18. But while Google has provided this Court with detail concerning the number and locations of party witnesses, Plaintiffs have failed to do so. Google provided a declaration identifying each of the Google witnesses who are or were last located in New York based on the initial disclosures in the S.D.N.Y. cases. Google Br. at 21.[12] In contrast,

---

[10] In fact, in addition to coordinating pre-trial matters, the FTC initially stated that "in the interest of judicial economy" it was "willing to consent to a joint trial on liability." Letter from FTC to Goldberg, J. at 7, *F.T.C. v. Cephalon*, 2:08-cv-02141-MSG (E.D. Pa. July 31, 2013), ECF No. 205.

[11] Notably, the DOJ, States, and private plaintiffs agreed to: (i) have the DOJ and States produce their investigative files to the private plaintiffs, (ii) share all discovery with all parties, (iii) enter joint Confidentiality and ESI Orders, and (iv) impose the same discovery and deposition limitations on all parties. Joint Initial Report, *United States v. Apple, Inc.*, 1:12-cv-02826-DLC (S.D.N.Y. July 6, 2012), ECF No. 76.

[12] Plaintiffs overstate Google's burden of proof, Opp. at 16-17. When a party moves for transfer early in a case, as Google did here in filing mere weeks after the Complaint was filed, "the Court can reasonably infer" from the evidence that Google provided—namely, the significant presence of its ad tech business and employees in New York, *see* Reshetar Decl. ¶¶ 3-7—that many party

Plaintiffs merely mention an unspecified number of Army and "federal agency witnesses" who have "knowledge about federal agency advertising." Opp. at 18 & n.12. But Army civilian personnel are employed in all 50 states,[13] and Plaintiffs have not identified any specific witness that is based in Virginia. In the absence of any detail provided by Plaintiffs, this Court cannot assume that the relevant witnesses are located in Virginia. *See* Opp. at 18 ("[W]itnesses with relevant knowledge about federal agency advertising may also be found elsewhere in the country.").

### C. The Convenience of Third-Party Witnesses Favors Transfer.

Though Plaintiffs also claim that the convenience of third parties is neutral at best for them, Opp. at 21, their brief and supporting declaration confirm that the S.D.N.Y. is a far more convenient venue for third parties than this District. Indeed, Plaintiffs tacitly concede that there are more relevant third-party witnesses located in New York (thirty-seven) than in any other state, and that at least *twelve times* more relevant third-party witnesses reside in New York than reside in Virginia (where there are just three). *Id.* at 19-20 (citing Teitelbaum Decl. ¶ 4 & Table). And although Plaintiffs point out that many other likely witnesses are dispersed around the country, *id.* at 20-21, they cite no cases that support their contention that this factor makes convenience neutral where, as here, a strong plurality of third parties are located in the proposed transferee district.[14]

---

witnesses "will be in or near the transferring jurisdiction." *See Dietrick v. Apex Sys., LLC*, 2019 WL 1745994, at *3 (D. Md. Apr. 18, 2019). In any event, to leave no doubt that Google has in fact met its burden, Google has added additional detail concerning the names and testimonial relevance of these Google witnesses in another declaration. Garrett Decl. ¶¶ 5-6 & Ex. B.

[13] *Military and Civilian Personnel by Service/Agency by State/Country*, Def. Manpower Data Ctr. (Sept. 2022), https://dwp.dmdc.osd.mil/dwp/app/dod-data-reports/workforce-reports.

[14] Plaintiffs' cited cases, Opp. at 20-21, are distinguishable. *Calabrese* involved three witnesses from three different states, none of which were the proposed transferee forum. *See Calabrese v. Teoco Corp.*, 637 F. Supp. 2d 160, 164 (S.D.N.Y. 2009). And Plaintiffs overread *Robinson v. Eli Lilly and Co.*, 535 F. Supp. 2d 49, 52 (D.D.C. 2008), to require that "all or a majority" of witnesses be in any one district in order for convenience to have weight in the transfer calculus; there is no such rule. *See In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *2, *5 (N.D. Cal.

Moreover, if Plaintiffs were permitted to proceed in this District, this would subject third-party witnesses to duplicative discovery and depositions in two separate districts. This kind of unnecessary duplication is precisely the type of witness inconvenience that § 1404 is designed to alleviate. *See, e.g.*, *Forsburg v. Wells Fargo & Co.*, 596 F. Supp. 3d 572, 585-86 (W.D. Va. 2022) ("The convenience of the parties and witnesses clearly favors transfer in this case since each pending case would likely have some or all of the same witnesses, and transfer would prevent these witnesses from having to travel back and forth across the country to testify in multiple courts."); *Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *6 (C.D. Cal. Nov. 26, 2013) ("[F]orcing witnesses to testify to the same set of facts in [different districts] on different occasions would be highly inconvenient and costly.").

### D. Because Plaintiffs Have Engaged In Forum Shopping, Their Choice of Forum Should Not Be Afforded Any Weight At All.

While a plaintiff's choice of forum may receive some deference, *see* Google Br. at 12-13, Plaintiffs' choice here is not entitled to *any* deference because "forum shopping must not be indulged." *Gen. Tire & Rubber*, 373 F.2d at 369 (granting mandamus and ordering transfer). That is particularly so "in the face of multiple litigation especially where, as here, the shopper is offered an equally convenient forum," *id.*, or when "the selected forum has little or no connection with the parties or the subject matter." *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992) (giving forum-shopping plaintiff's choice of forum "no weight whatever"). Plaintiffs concede that they made a "purposeful decision to litigate in this District" to avoid delay, Opp. at 10, and to access this Court's speedy docket, *id.* at 25-26. Because they admit to forum shopping, Plaintiffs' choice of forum deserves no weight.

---

Sept. 23, 2005) (granting transfer because plurality of witnesses identified in initial disclosures were in transferee district).

The Court also need not credit Plaintiffs' assertions that their choice of forum deserves "substantial weight" because this District is the Commonwealth of Virginia's home forum and because it bears a "substantial relation" to the cause of action. Opp. at 10. Any weight derived from those attributes assumes that there is a single home forum and a locally concentrated cause of action (or at least some substantial nexus between the forum and the underlying facts). Here, that is simply not the case. Plaintiffs (via the State of New York) are equally at home in the S.D.N.Y. *See Spack v. Trans World Ent. Corp.*, 2017 WL 6209218, at *7 (D.N.J. Dec. 8, 2017) (holding transferee district is the "more favorable venue" where plaintiffs reside in both original and transferee district and defendant is not at home in original district).[15] And nationwide sales activity does not create the connection with the forum necessary to warrant deference to a plaintiff's forum choice. Google Br. at 22. Though Plaintiffs contend that Google's position "understates the factual connection between the Department of Defense and this District," Opp. at 12, Plaintiffs do not assert any factual connection other than alleged injury from nationwide sales activity.[16] *See F.T.C. v. Graco Inc.*, 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012) (finding that the FTC's "broad assertion" of nationwide markets and effects established that government's chosen forum had "no meaningful connection to this action").

---

[15] *See also Valerino v. Holder*, 2014 WL 11512352, at *1 (E.D. Va. Apr. 4, 2014) ("[C]hoice of forum is entitled to less weight where, as here, plaintiff's home forum is the transferee forum.").

[16] That the harm was suffered by a government agency is a non-factor. *See Carter v. Wilson*, 2019 WL 13242563, at *4 (D.D.C. Mar. 25, 2019) (that the Air Force conducted some business in the District of Columbia was not sufficient to sustain venue because "'[t]he mere involvement . . . on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative of whether the plaintiff['s] choice of forum [in the District of Columbia] receives deference.'" (citation omitted) (alterations in original)). Claiming government exceptionalism is simply another attempt to distract this Court from facts which genuinely impact a § 1404 transfer analysis. If anything, a government plaintiff receives less deference to its choice of venue. *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 775 (D. Md. 2017) (citing cases).

13

Recognizing the lack of any meaningful connection to this forum, Plaintiffs assert that substantial deference is granted to government antitrust actions. Opp. at 12. But while antitrust plaintiffs benefit from liberal venue requirements by being able to file in many fora, that does not entitle their ultimate choice of forum to greater deference. *See Ferens v. John Deere Co.*, 494 U.S. 516, 522 (1990) (explaining Congress enacted § 1404 as a response to plaintiffs using "broad venue provisions in federal Acts" to file in inconvenient fora). And deference is not warranted where, as here, "there is an insubstantial factual nexus between the case and the plaintiff's chosen forum," *F.T.C. v. Illumina, Inc.*, 2021 WL 1546542, at *6 (D.D.C. Apr. 20, 2021) (internal quotation marks omitted), or where it "result[s] in duplicative litigation," *AT&T v. MCI Commc'ns Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990) (internal quotation marks omitted).

## II.   Google Is Not Seeking Consolidation Under 28 U.S.C. § 1407.

Plaintiffs' primary argument is that transfer under 28 U.S.C. § 1404 "Contravenes Congressional Intent." Opp. at 6. But Plaintiffs' argument focuses exclusively on the legislative history of a different statute, 28 U.S.C. § 1407, authorizing transfer via centralization by the JPML. Opp. at 6-9. They ignore the fact that Congress *refused* to exempt the DOJ Antitrust Division from § 1404, the statute at issue here. *See Nat'l City Lines*, 337 U.S. at 83-84.

Plaintiffs note that § 1407(g) has recently been amended to expand its effect beyond the United States to encompass the states. Opp. at 8. As a result of those amendments, § 1407 has received more congressional scrutiny in recent months than it has at any other time since its enactment in 1968.[17] Amid that scrutiny, Congress was silent regarding § 1404, which does not

---

[17] Act of April 29, 1968, Pub. L. No. 90-296, 82 Stat. 109 (codified as amended at 28 U.S.C. § 1407). Other than one 1976 amendment, *see* Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub. L. No. 94-435, § 303, 90 Stat. 1383, 1396 (1976), § 1407 had not been altered until December 2022. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 301, 136 Stat. 4459, 5970 (2022).

14

exempt government plaintiffs in antitrust cases from transfer and consolidation. *Nat'l City Lines*, 337 U.S. at 83-84. In leaving § 1404 unaltered, Congress' intent was made clear: the federal and state governments' exemption to transfer was meant to apply only in the context of a § 1407 transfer via consolidation in an MDL.

In the end, Plaintiffs concede that their arguments about § 1407 are beside the point because they "are not arguing they are categorically exempt from transfer under 28 U.S.C. § 1404(a)." Opp. at 8. As explained above, proper application of the relevant § 1404 principles shows that this case should be transferred to the Southern District of New York.

## CONCLUSION

Defendant Google LLC respectfully requests that the Court order transfer to the Southern District of New York, for the convenience of parties and witnesses and in the interest of justice, given the substantively identical actions proceeding before Judge Castel in that district.

Dated: March 8, 2023                                 Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　 /s/ Tyler Garrett
　　　　　　　　　　　　　　　　　　　　　　　　Eric Mahr (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　　Tyler Garrett, Virginia Bar No. 94759
　　　　　　　　　　　　　　　　　　　　　　　　FRESHFIELDS BRUCKHAUS
　　　　　　　　　　　　　　　　　　　　　　　　DERINGER US LLP
　　　　　　　　　　　　　　　　　　　　　　　　700 13th Street NW, 10th Floor
　　　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 777-4500
　　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 777-4555
　　　　　　　　　　　　　　　　　　　　　　　　eric.mahr@freshfields.com
　　　　　　　　　　　　　　　　　　　　　　　　tyler.garrett@freshfields.com

　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Google LLC*