**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **UNITED STATES, *et al.*,** | |
| *Plaintiffs*, | |
| - against - | **Civil Action No. 1:23-cv-00108 (LMB) (IDD)** |
| **GOOGLE LLC,** | |
| *Defendant.* | |

**DECLARATION OF TYLER GARRETT IN SUPPORT OF DEFENDANT**
**GOOGLE LLC'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

I, TYLER GARRETT, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an attorney at Freshfields Bruckhaus Deringer US LLP and counsel for Defendant Google LLC ("Google").

2.      I respectfully submit this Declaration in support of Google's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), dated February 17, 2023, ECF No. 44, and in response to Plaintiffs' opposition to Google's Motion to Transfer, filed on March 3, 2023, ECF No. 47. This declaration is based on my personal knowledge and investigation. If called as a witness in this matter, I could and would testify competently to all of the information contained in this Declaration.

3.      On February 27, 2023, Google served its responses and objections to the first set of requests for production of documents from plaintiffs in the S.D.N.Y. cases. I reviewed Google's responses and accompanying cover letter, in which Google agreed to produce certain documents that Google had produced to the DOJ in connection with the DOJ's ad tech investigation and that

have not yet been produced in the S.D.N.Y. cases.  Google also agreed to produce additional documents in response to the S.D.N.Y. case plaintiffs' requests for production, based on custodians and search terms previously negotiated by the DOJ and by the Texas Office of the Attorney General ("OAG") in their ad tech investigations.

4.      Between September 25, 2020 and when the DOJ filed this case on January 24, 2023, the DOJ noticed thirty-one Google depositions in connection with its ad tech investigation.  I reviewed the transcripts of those depositions.  A list of the dates of the thirty-one depositions and the regulator(s) in attendance at each is attached hereto as Exhibit A.

5.      The Reshetar Declaration, filed in support of Google's Opening Brief, declared that eight then-current Google employees who are or were last located in New York were listed in Google's initial disclosures served to plaintiffs in the S.D.N.Y. cases.   *See* Decl. of Yvonne Reshetar in Supp. of Def. Google LLC's Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ¶ 6, *United States v. Google LLC*, 1:23-cv-00108-LMB (E.D. Va. Feb. 17, 2023), ECF No. 44-3. The Reshetar Declaration also declared that thirty-nine current or former Google employees disclosed by plaintiffs in the S.D.N.Y. cases are or were last located in New York. *See id.* ¶ 7.  I have reviewed the Reshetar Declaration and the work product created by Ms. Reshetar that identified the most recent assigned work office location of the current or former Google employees listed in the S.D.N.Y. case initial disclosures.

6.      Collectively, the parties' initial disclosures in the S.D.N.Y. cases identify forty-one current or former Google employees who, based upon the individual's most recent assigned work office using Google's internal directory, are or were last located in New York.  The names of these forty-one individuals, the location where they are or were last located when working for Google,

and the general subject matter of their potential testimony (as described by the parties in their respective initial disclosures) are attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 8, 2023, in Washington, DC.

/s/ Tyler Garrett
Tyler A. Garrett

3

**EXHIBIT A**

| Deposition Date | Noticed By | Regulator Attendees |
|---|---|---|
| September 25, 2020 | DOJ | DOJ; Texas |
| October 2, 2020 | DOJ | DOJ; Texas |
| October 16, 2020 | DOJ | DOJ; Texas |
| October 20, 2020 | DOJ | DOJ; Texas |
| October 26, 2020 | DOJ | DOJ; Texas |
| November 2, 2020 | DOJ | DOJ; Texas |
| November 6, 2020 | DOJ | DOJ; Texas |
| November 9, 2020 | DOJ | DOJ; Texas |
| November 10, 2020 | DOJ | DOJ; Texas |
| November 19, 2020 | DOJ | DOJ; Texas |
| March 30, 2021 | DOJ | DOJ |
| March 31, 2021 | DOJ | DOJ |
| April 2, 2021 | DOJ | DOJ |
| April 22, 2021 | DOJ | DOJ |
| May 17, 2021 | DOJ | DOJ |
| July 20, 2021 | DOJ | DOJ |
| July 21, 2021 | DOJ | DOJ |
| July 22, 2021 | DOJ | DOJ |
| August 10, 2021 | DOJ | DOJ |
| August 11, 2021 | DOJ | DOJ |
| August 12, 2021 | DOJ | DOJ |
| September 17, 2021 | DOJ | DOJ |
| September 17, 2021 | DOJ | DOJ |
| September 28, 2021 | DOJ | DOJ |
| October 6, 2021 | DOJ | DOJ |
| October 19, 2021 | DOJ | DOJ |
| October 28, 2021 | DOJ | DOJ |
| October 28, 2021 | DOJ | DOJ |
| December 9, 2021 | DOJ | DOJ |
| February 3, 2022 | DOJ | DOJ |
| February 28, 2022 | DOJ | DOJ |

**EXHIBIT B**

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| ██████ | New York | Daily Mail; SPX Total Body Fitness LLC | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*SPX:* Information relevant to their claims as Head of Product Marketing at Google. |
| ██████ | New York | Google; Daily Mail; Newspaper Plaintiffs; SPX Total Body Fitness LLC | *Google:* AdSense; Google Ad Manager<br><br>*Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the |

---

[1] Location is based upon the individual's most recent assigned work office using Google's internal directory.  Reshetar Decl. ¶¶ 6, 7.  In addition, I conducted internet searches on March 7, 2023, using results from the professional networking website www.linkedin.com. The only two instances where the individual's LinkedIn profile demonstrated a possible location outside of New York—meaning that neither the city and/or state location under their profile name nor their employment location were in New York—were ██████ (per LinkedIn, possibly located in Berlin, Germany) and ██████ (per LinkedIn, possibly located in Montclair, New Jersey).

[2] This column contains the description of the witnesses' potential subject matter of testimony, as described in the initial disclosures exchanged by the parties in the S.D.N.Y. cases.

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." <br><br> *SPX:* Information relevant to their claims as Director, Product Management, Publisher Ad Platforms at Google. |
| ▇▇▇▇ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▇▇▇▇ | New York | Google; Daily Mail; Newspaper Plaintiffs | *Google:* Display & Video 360; Google Ad Manager <br><br> *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | *Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|------|----------|--------------|----------------------------------------|
| ██████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ██████ | New York | Daily Mail; Newspaper Plaintiffs | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▆▆ ▆▆▆ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▆▆ ▆▆▆ | New York | Google | Customer partnerships with advertisers, including with respect to Display & Video 360 and Google Ads. |
| ▆▆ ▆▆▆ | New York | Newspaper Plaintiffs | The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| ████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ████ | New York | Newspaper Plaintiffs | The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through |

6

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▬▬ ▬▬ | New York | Daily Mail; Newspaper Plaintiffs | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▆▆ ▆▆ | New York | Google; Daily Mail; Newspaper Plaintiffs | *Google:* AdMob; Google Ad Manager<br><br>*Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▇▇▇▇▇▇▇ | New York | Daily Mail; Newspaper Plaintiffs | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ███████ | New York | Daily Mail; Newspaper Plaintiffs; SPX Total Body Fitness LLC | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | *SPX:* Information relevant to their claims as Director of Global Programmatic Sell-Side Solutions at Google. |
| ■■■ | New York | Google; Daily Mail; Newspaper Plaintiffs | *Google:* Google Ad Manager<br><br>*Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| ████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ████ | New York | Daily Mail; Newspaper Plaintiffs | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. *Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▮▮▮ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▮▮ | New York | Daily Mail; Newspaper Plaintiffs | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▆▆▆ ▆▆▆▆ | New York | Daily Mail | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▆▆▆ ▆▆ | New York | Google; Daily Mail; Newspaper Plaintiffs | *Google:* AdSense; Google Ad Manager<br><br>*Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▇▇▇▇▇ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▇▇▇ | New York | Daily Mail; Newspaper Plaintiffs | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ▬▬ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▬▬ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▬▬ | New York | Google | AdMob; AdSense; Google Ad Manager |
| ▬▬ | New York | Daily Mail; SPX Total Body Fitness LLC | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*SPX:* Information relevant to their claims as Product Lead, Google Sheets Product Lead, Google Sheets at Google. |
| ▬▬ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's fraudulent |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ▄▄▄ | New York | Google; Daily Mail; Newspaper Plaintiffs | *Google:* Customer partnerships with publishers, including with respect to AdMob, AdSense, and Google Ad Manager<br><br>*Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ████████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ████████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ████████ | New York | SPX Total Body Fitness LLC | Information relevant to their claims as Global Product Lead at Google. |
| ████████ | New York | Newspaper Plaintiffs | The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats in the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
| | | | publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |
| ███████ | New York | Daily Mail | The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct. |
| ███████ | New York | Daily Mail; Newspaper Plaintiffs | *Daily Mail:* The markets for advertising exchanges, publisher ad servers and general search services; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; the anticompetitive effects of Google's exclusionary conduct; Google's fraudulent representations to/concealment from Daily Mail; and damages suffered by Daily Mail resulting from Google's conduct.<br><br>*Newspaper Plaintiffs:* The following general categories of information: (i) the markets for digital advertising technology, including the markets for publisher ad servers, ad exchanges, in-app display ad networks and mediation tools for in-app inventory and general search services (hereinafter, the "Markets"); (ii) the competitors and potential competitors in the Markets; (iii) Defendants' share(s) of the Markets; (iv) the competitive threats with the Markets; (v) Google's acquisitions of DoubleClick, AdMeld, Invite Media, AdMob; (vi) the corporate organization and structure of each of Defendants' digital publishing and advertising businesses; (vii) the products and services offered by Defendants' in the Markets, as well as the pricing of those products and services; (viii) the operation of header bidding and the effect of Google's digital advertising products on publishers' ability to receive bids through header bidding; (ix) the investigations and findings by United States or foreign governmental authorities concerning Defendants' digital advertising products and services; (x) Google's development and implementation of dynamic allocation, enhanced dynamic allocation and last look features; (xi) Google's Project Bernanke; (xii) Google's |

| Name | Location[1] | Disclosed By | Potential Subject Matter(s) of Testimony[2] |
|---|---|---|---|
|  |  |  | dynamic revenue sharing program; (xiii) Google's practice of withholding auction records from publishers; (xiv) Google's Projects Poirot and Elmo; (xv) any price floors Google required publishers to set in order to use its ad server; (xvi) Google's implementation of an audience fee through its ad server; (xvii) Google's tying or bundling of its DFP ad server with its AdX exchange products; and/or (xviii) the negotiation, existence, terms, scope, and implementation of the Network Bidding Agreement between Google and Facebook, codenamed "Jedi Blue." |