```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
 2                    ALEXANDRIA DIVISION

 3   --------------------------x
     UNITED STATES, et al.,      :    Civil Action No.:
 4                               :    1:23-cv-108
                 Plaintiffs,     :
 5        versus                 :    Friday, March 10, 2023
                                 :
 6   GOOGLE LLC,                 :
                                 :
 7                 Defendant.    :
     --------------------------x
 8

 9        The above-entitled motions hearing was heard before
     the Honorable Leonie M. Brinkema, United States District
10   Judge.  This proceeding commenced at 10:10 a.m.

11                    A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:    GERARD MENE, ESQUIRE
                            OFFICE OF THE UNITED STATES ATTORNEY
13                          2100 Jamieson Avenue
                            Alexandria, Virginia  22314
14                          (703) 299-3700

15                          AARON TEITELBAUM, ESQUIRE
                            JULIA WOOD, ESQUIRE
16                          UNITED STATES DEPARTMENT OF JUSTICE
                            ANTITRUST DIVISION
17                          450 Fifth Street, NW
                            Washington, D.C.  20530
18                          (202) 894-4266

19                          ANDREW FERGUSON, ESQUIRE
                            OFFICE OF THE ATTORNEY GENERAL
20                          OFFICE OF THE SOLICITOR GENERAL
                            202 North Ninth Street
21                          Richmond, Virginia  23219
                            (804) 786-7704

22   FOR THE DEFENDANT:     ERIC MAHR, ESQUIRE
                            TYLER GARRETT, ESQUIRE
23                          FRESHFIELDS BRUCKHAUS DERINGER, LLP
                            700 13th Street, NW
24                          10th Floor
                            Washington, D.C.  20005
25                          (202) 777-4500
```

1

```
 1   COURT REPORTER:         STEPHANIE M. AUSTIN, RPR, CRR
                             Official Court Reporter
 2                           United States District Court
                             401 Courthouse Square
 3                           Alexandria, Virginia  22314
                             (571) 298-1649
 4                           S.AustinReporting@gmail.com

 5        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                          2
```

```
 1                    P R O C E E D I N G S

 2          THE DEPUTY CLERK:  Civil Action 23-108, United

 3    States, et al. versus Google LLC.

 4          Would counsel please note their appearances for

 5    the record.

 6          MR. MENE:  Good morning, Your Honor.  Gerard Mene

 7    with the U.S. Attorney's Office.  Your Honor,

 8    Aaron Teitelbaum and Julia Wood from the United States

 9    Department of Justice Antitrust Division are also here with

10    me.  Julia Wood will argue for the United States.

11          Your Honor, as you know, there are a number of

12    co-plaintiff states.  The Commonwealth of Virginia is here;

13    they will introduce themselves shortly.  But they will ask

14    you for permission if they could also present a bit today as

15    well.

16          THE COURT:  I'm not sure we're going to need that,

17    but I understand it.  All right.

18          MR. MENE:  Thank you, Your Honor.

19          THE COURT:  So, Ms. Wood.

20          MS. WOOD:  Good morning, Your Honor.

21          THE COURT:  Good morning.

22          MS. WOOD:  Julia Wood for the United States.

23          THE COURT:  All right.  Mr. Teitelbaum, you're ...

24          MR. FERGUSON:  Andrew Ferguson for the

25    Commonwealth and the other plaintiff states, Your Honor.
```

3

```
1              THE COURT:  All right, Mr. Ferguson.
2              MR. TEITELBAUM:  Aaron Teitelbaum for the United
3    States.  Good morning, Your Honor.
4              THE COURT:  Good morning.  All right.  And for the
5    defendant.
6              MR. MAHR:  Good morning, Your Honor.  Eric Mahr,
7    Freshfields Bruckhaus Deringer, for Google Incorporated.
8    I'm here with my colleague, Tyler Garrett, also from my
9    firm.
10             THE COURT:  Good morning.
11             MR. MAHR:  Good morning.
12             THE COURT:  All right.  We have two motions before
13   the Court.  First is the motion to transfer this case to the
14   Southern District of New York where Judge Castel is
15   overseeing the multidistrict litigation, and then we also
16   have a motion to seal.  So obviously we're going to address
17   the motion to transfer first.
18             We've had a chance to read your pleadings, so I
19   fully understand the issue here.  This is a motion to
20   transfer under Section 1404 of the federal code, but there's
21   also the very interesting aspect of this case which is
22   rather unique, and that is that there are sort of special
23   consideration that Congress has certainly expressed in terms
24   of federal government antitrust litigation, which would seem
25   to be a significant factor that the Court has to consider
```

4

1    here.

2            But with a 1404 transfer motion, which of course

3    is always left to the discretion of the Court, the Court

4    first has to determine whether or not the case could be

5    heard in the transferee court, and there's no question this

6    case could be heard in the Southern District of New York,

7    and nobody's disputing that; correct?

8            MS. WOOD:  That's correct, Your Honor.

9            THE COURT:  And so then the Court looks at a

10   series of other factors and has to weigh those factors in

11   determining whether or not it's appropriate to transfer the

12   case.  And the first factor, of course, is the weight that

13   one accords to the choice of forum by the plaintiff.

14           Now, this Court, in the *Pragmatus* case, has always

15   expressed a strong concern about forum shopping, because

16   although we have slipped slightly in rank -- and that's due

17   to COVID, not to the judges -- we are still one of the

18   fastest courts in the country in terms of resolving civil

19   cases and, frankly, I'm certainly pushing for us to go back

20   to Number 1.  And that being the case, it is a concern when

21   we find that cases are filed here primarily because of

22   arguments about docket congestion in other courts and

23   because of the speed of the docket.  So I'm sensitive to

24   that.

25           On the other hand, we do have the Commonwealth of

5

```
1    Virginia as one of the plaintiffs here, and this case does
2    involve, among other claims, that the Department of Defense
3    is an actual victim, and so there are some legitimate
4    connections between this case and this district, so that the
5    forum shopping concern that I might otherwise have I don't
6    feel is present here.
7            So that factor, because the plaintiff chose --
8    some of the plaintiffs -- and, of course, it's sort of
9    ironic that New York is a plaintiff in this case and would
10   rather litigate here than in its home jurisdiction, but I
11   think that that first factor weighs in favor of not granting
12   the transfer.
13           The second and third factors, in my view, are
14   absolutely neutral.  That is, the convenience of the
15   witnesses and access to the witnesses and the convenience of
16   the parties.  The distance between the Southern District of
17   New York and Washington, D.C. is, you know, basically, what,
18   a two- or three-hour train ride?  A one-hour flight?  You
19   know, both are major metropolitan areas with excellent
20   transportation.  And you've got witnesses and parties from
21   all over the country, so I don't think that's a factor that
22   weighs in either direction.
23           So the real issue here is the fourth issue, and
24   that is in the interests of justice, which addresses issues
25   such as efficiency and also the concern about overlapping or
```

1    inconsistent decisions.  And I'm certainly sensitive to

2    that.

3            Under normal circumstances, my practice would be

4    where there's ongoing related litigation, to transfer.  But

5    this is not an ordinary situation.  Because of the very

6    strong language and the public policy behind Section 1407(g)

7    of the MDL statute, which clearly shows that Congress felt

8    it was extremely important to allow a prioritization of this

9    type of litigation, and this court is the court that the

10   plaintiffs have chosen to litigate what is a very

11   significant antitrust case.

12           So having given you that preamble, I'll turn to

13   the defendant, it's your motion, and you've got the burden,

14   to see how you overcome what I think is a very strong

15   congressional statement as to how this matter should be

16   resolved.  Okay.

17           MR. MAHR:  Thank you, Your Honor.

18           I will start with that issue, but with your

19   indulgence, I'd like to go back and just make a couple

20   points on some of the earlier points that you made as well.

21           But on the 1407 issue, we don't contest that what

22   the plaintiffs spend most of their brief addressing, which

23   is the congressional decision that antitrust enforcement

24   cases by the federal government should not be involuntary

25   consolidated in MDLs under Section 1407(g).  That's clear.

                                                                7

1    The problem is, they're fighting the wrong war under the

2    wrong statute.  We are not seeking MDL transfer of the --

3    this case; we are not seeking consolidation of this case

4    under either 1407 or 1404, the statute that we're actually

5    moving under.  We're seeking transfer under 1404.

6             In fact, the Department of Justice has run this --

7    or the federal government antitrust enforcers have run this

8    argument before in front of Judge Bates in the *Cephalon*

9    case.  Exact same argument where the FTC in that case

10   argued, as plaintiffs do here, that in passing the MDL

11   statute, Congress expressed a strong public interest in

12   exempting government antisuits from involuntary

13   consolidation.  And the argument went before Judge Bates and

14   goes here, that without consolidation, there are no judicial

15   efficiencies to gain.

16            Judge Bates, I think, correctly and strongly,

17   forcefully, rejected both parts of that argument.  First, he

18   held that consolidation isn't the sole efficiency that's

19   associated with transfer under 1407.  In fact, he wrote:

20   "The most compelling reason to grant this transfer, the need

21   to avoid the risk of inconsistent judgments, is entirely

22   independent from the prospect of consolidation."  That

23   factor, the avoidance of inconsistent judgments and rulings,

24   is at the very heart of our motion.

25            And I think it's important to note, you'll recall

8

1    from our opening brief, we went through quite an effort with

2    charts and graphs and comparing language to show that this

3    case is exactly substantively identical to the cases that

4    have been pending before Judge Castel for 18 months now, and

5    there was not a word of the opposition contesting that.

6            So the question here is not whether the -- there's

7    a risk of inconsistent judgments or whether there is a risk

8    of two different judges in two different circuits handling

9    the same case, under the same legal theories, with the same

10   allegations, concerning the same Google products and

11   services, at the same time.  That's contested.  So the only

12   question is whether we do it twice and invite the risk of

13   inconsistent judgments, or we do it once.

14           And that takes me to the other two points I wanted

15   to make.  The first was that convenience factors I don't

16   think are neutral in this case, because it's not a question,

17   as the plaintiffs present in their brief, of well, should we

18   do this case once in the Eastern District of Virginia or

19   once in the Southern District of New York?  The Southern

20   District of New York litigation is happening.  So it's a

21   question of do we do this once in the Southern District of

22   New York, or twice.  Once in the Southern District of

23   New York and once in the Eastern District of Virginia.

24           And I think it's quite clear that the convenience

25   of the parties, the judicial system, and any third-party

9

```
 1    witnesses are better served by trying these issues,

 2    litigating these issues once.  One set of depositions.  One

 3    set of document productions.  One set of summary judgment

 4    motions.  And one, if it goes to trial, testimony at trial,

 5    instead of doing that twice.

 6              I think this also kind of speaks to the forum

 7    shopping issue.  Because the plaintiffs, first of all, I

 8    think, in their brief admit to forum shopping.  They admit

 9    that they made "a purposeful decision to litigate in this

10    district."  You've said -- you remarked that it's ironic

11    that the Southern District of New York is down here looking

12    for this court in order to delay -- avoid what they say is

13    the delay in Judge Castel's court, that he's not going fast

14    enough.

15              First of all, I would contest that he's not going

16    fast enough.  Secondly, I would say, that's just the flip

17    side of saying we want the speed of the rocket docket.

18    Instead of saying we want to go fast in the Eastern District

19    of Virginia, they just say we don't want to go slow in the

20    Southern District of New York.  Again, I think they're wrong

21    about the Southern District of New York, but I also think

22    that that's just a plea for the rocket docket.

23              And, secondly, I think they've been literally

24    forum shopping, literally window shopping, watching the

25    Southern District of New York case for 18 months.  All these
```

                                                              10

1   cases were filed two years before the Department of Justice

2   took any action.  And they clearly -- they've had access to

3   the initial disclosures that were only exchanged between the

4   parties, but apparently the plaintiffs in those cases shared

5   them with the Department of Justice.

6           They've been literally sitting in the well of the

7   courtroom watching Judge Castel handle argument on motions

8   to dismiss, dealing with the substantive issues.  And

9   apparently, after 18 months, they decided, we don't like

10  this court as much, we want to try another judge, in another

11  court, in another circuit.  And I think that's really the

12  essence of forum shopping.  I think that's a question of

13  strategy, not urgency, here.

14          Two other points on the 1407 argument, Your Honor.

15  One is that with respect to 1407(g), Judge Bates made clear

16  also in *Cephalon* that the animating concerns there were

17  tag-along actions.  The concern was -- and this used to be

18  the case not ten years ago -- that the Department of Justice

19  was the leader in filing antitrust cases, and then all kinds

20  of private cases would come along behind them with tag-along

21  cases and copycat complaints.  And those could drag back the

22  speed with which the Department of Justice's case got

23  resolved.

24          This is the exact opposite case.  Here, by

25  two years, the Department of Justice is the copycat

11

1    complaint, the tag-along action.  And they're asking you to

2    risk inconsistent judgments, conflicting and overlapping

3    judgments, and to do damage to the judicial economy of the

4    entire -- the systemic concerns that animate the interests

5    of justice here so that they can leapfrog Judge Castel's

6    court where he's dealing with these same issues.

7           They cite for this this notion that the Court

8    should recognize a general policy exempting federal

9    antitrust actions.  They cite the *United States v. National*

10   *City Lines*, a 1948 case.  That case held, indeed, that forum

11   non conveniens, the common law doctrine, did not apply to

12   antitrust enforcement actions by the federal government.

13   The problem is, that same year 1948, 1404 was passed, and it

14   amended the judicial code to add 1404.

15          And the next year, 1949, in the same litigation,

16   the *National City Lines* case, the Supreme Court again

17   visited the issue of transfer of that case.  And that time

18   they said now that we have 1404, it's clear that Congress

19   intended 1404 to reach federal government antitrust

20   enforcement actions like the one in that case and the one

21   before the bar here.

22          Finally, they raised the Venue Act, which we think

23   is just another red herring.  Congress did, indeed, amend

24   1407(g) not to change anything with respect to the federal

25   government, but to add state enforcers to the carveout

                                                              12

1    against consolidation under the MDL statute.

2              I think, if anything, Congress's decision to amend

3    that other statute, 1407(g), but not to do anything with

4    respect to 1404, is more a reaffirmation that 1404 should

5    continue to be applied as it has been by this court for

6    decades in well-established law.  Congress has paid more

7    attention to the transfer and the venue of antitrust

8    enforcement actions by state and federal governments in the

9    last 18 months than it has in decades, and it made the

10   decision, we're going to change the MDL statute, but we're

11   going to leave 1404 exactly as it has always been.

12             And that's with the knowledge that there are cases

13   like *Microsemi*, in this very court, where -- and *Cephalon*

14   and *Illumina/Grail* where antitrust enforcement actions

15   brought by the United States Department of Justice had been

16   transferred under 1404, and yet Congress didn't touch it.

17             I think that plaintiffs' suggestion that you

18   should transpose the intent expressed under 1407(g) on to

19   1404 is wrong and you should reject it.

20             THE COURT:  All right.  Ms. Wood, do you want to

21   respond?

22             MS. WOOD:  Thank you, Your Honor.

23             I appreciate your opening comments, Your Honor,

24   and so I'll try to be as brief as possible.  I just want to

25   highlight a few points from the United States' perspective.

                                                         13

1    And then my colleague, Solicitor General Ferguson, is also

2    here to represent the Commonwealth of Virginia briefly if

3    your -- if your Court would allow it.

4            A few brief points on behalf of the United States.

5    Forum selection is not forum shopping.  The Government

6    plaintiffs in this action rightly made the valid and

7    appropriate choice to sue Google in this district in a case

8    that has nationwide impact.  Google concedes both that venue

9    is proper here, as well as personal jurisdiction.  There's

10   no question about that.  Indeed, Google has a substantial

11   presence in this very district with the data center in

12   Loudoun, offices in Sterling and Reston, and 875 employees

13   that work in this district.

14           So there's no question that the type of conduct

15   here is completely different than what Your Honor found in

16   *Pragmatus* where inappropriate machinations led to forum

17   shopping.  Here, the plaintiff is the Commonwealth of

18   Virginia, one of the plaintiffs at home in this forum, and

19   as Your Honor alluded to, federal agencies have been harmed

20   by Google's conduct in this district, which separates that

21   case, as well as the other cases cited by Google, in

22   numerous respects.

23           Second, I'd like to suggest here that this is not

24   an instance where a tie goes to the runner.  This is a case

25   where Google, as the entity seeking transfer, has to meet

                                                          14

1   the heavy burden, particularly where the plaintiff is at

2   home and where there's a meaningful factual nexus to the

3   district.

4           Google has to meet a heavy burden to show that

5   it's materially more convenient for this court -- for this

6   case to be transferred to a different court.  It is not

7   about whether Google would have chosen this forum for

8   itself, or even whether other districts might fare better.

9   It is a question of whether Google can demonstrate

10  overwhelming facts and circumstances that justify removing

11  plaintiffs' right to choose an appropriate forum for itself.

12          Google has not met that burden.  They have not

13  shown that inconvenience would justify a transfer.  They

14  have not shown that witnesses, documents or other evidence

15  will be unavailable if the case remains here.

16          Google does talk about the purported

17  inefficiencies of having this case litigated here while a

18  related case is litigated in New York.  The Government

19  plaintiffs would offer, Your Honor, that those

20  inefficiencies run in both directions, and those should be

21  considered as well.

22          There would be significant inefficiencies for the

23  Government plaintiffs here to be required to litigate with

24  no fewer than 32 different plaintiff groups that are now

25  consolidated before the MDL in front of Judge Castel.

15

1           What Google is attempting to do is shift the

2    burden of those inefficiencies on behalf of the Government

3    plaintiffs.  And we, again, maintain they have not met their

4    burden to do that, and, in any event, shifting of the

5    inefficiencies to the Government plaintiffs would very much

6    fly in the face of the congressional spirit of 1407(g).

7    Google should not be allowed to use 1404 to do what it

8    acknowledges it cannot do under 1407(g), which is to

9    transfer this action to New York.

10          On the question briefly, the arguments counsel

11   raised about this supposedly identical nature of this case

12   with the cases in New York, that is simply not factually

13   accurate.  We concede fully that there are certainly an

14   underlying quantum of facts that relate to both cases, and

15   we don't deny that; however, there are meaningful

16   differences between the complaint here in this court and the

17   complaints that are proceeding before Judge Castel.

18          Obviously Judge Castel has multiple class actions

19   that will require class certification.  The plaintiffs in

20   that case have not all had the benefit of an investigation

21   prior to filing of the complaint.  And even with respect to

22   the Texas AG plaintiffs that are pursuing litigation in that

23   court, but may not ultimately remain there as we noted in

24   our papers, there are differences between the way that the

25   plaintiffs here have framed this complaint versus the way

16

1   the Texas AG plaintiffs have framed their complaint.  There

2   are meaningful differences.

3           Furthermore, it is not just a question about the

4   delay that would ensue if this case were transferred to the

5   Southern District of New York and would be required to

6   litigate in parallel with dozens of private plaintiffs, it's

7   also about maintaining some modicum of control over the

8   litigation, and that was something that was recognized in

9   the 1968 legislative history, the 1407(g), where Congress

10  wrote that the Government should not be required to

11  "relinquish the control of a consolidated discovery

12  proceeding to a private plaintiff's attorney."  And we

13  believe that's a factor that this Court should also

14  consider.

15          As to the question of whether we're somehow

16  leapfrogging.  Your Honor, respectfully, if this is a

17  leapfrog, then I believe that's what Congress absolutely

18  intended when it passed 1407(g), and also when it reinforced

19  that policy choice in December of last year and extended

20  that exemption to apply to state AG plaintiffs as well.

21          The legislative history in December of 2022

22  provided "the bill eliminates delays, inefficiencies and

23  associated higher costs that states face enforcing the

24  antitrust laws under the current JPML process."

25          That was the purpose of the December statute, and

17

```
1    that was the purpose of the original statute in 1968.  And
2    what Google tries to do here would fly in the face of that.
3              I would be remiss if I didn't say we certainly do
4    recognize that this case would add to this Court's full
5    docket.  We're cognizant of the burden of a large nationwide
6    antitrust case, but we respectfully request the Court retain
7    jurisdiction, both in the interests of justice and to follow
8    the spirit of what Congress intended.
9              THE COURT:  All right.  Thank you.
10             Mr. Ferguson.
11             MS. WOOD:  Thank you.
12             MR. FERGUSON:  Good morning, Your Honor.
13   Andrew Ferguson for the Commonwealth and the plaintiff
14   states.
15             I just want to make one point about Congress's
16   recent amendment to Section 1407.  My friend on the other
17   side I think is effectively arguing that 1407 isn't
18   implicated here because they're not asking for formal
19   consolidation under the MDL.
20             And I just want to propose that I think that
21   Congress's amendment to 1407 should balance in the way that
22   this Court calculates the interests of justice for
23   Section 1404.  Because, effectively, what we have here is an
24   argument that's kind of like empty formalism where they say,
25   well, we should send it up to the Southern District of
```

18

```
 1    New York, notwithstanding that the Commonwealth is trying to
 2    litigate in the courts of its own state, so that it can be
 3    coordinated alongside an MDL.
 4            But as my colleague from the United States just
 5    said, the whole point of the amendment to 1407 is to allow
 6    the sovereigns, when they're enforcing the antitrust laws,
 7    to enforce them more swiftly than MDLs often allow for, and
 8    to retain control.
 9            Even if we aren't formally consolidated with the
10    MDL in the Southern District of New York, we will have to
11    move at the pace of that MDL.  We'll have to be at least
12    somewhat mindful and deferential to what the judge needs to
13    do with regard to private plaintiffs' schedules.
14            I just don't know what is left of Congress's
15    December amendment of 1407 if states can be required to
16    transfer their cases that they filed in the courts of their
17    home state to a state that has an MDL pending to go
18    alongside the MDL, but will get all the disadvantages that
19    Congress recognized can inhere in an MDL for the sovereign
20    when the sovereign is enforcing the antitrust laws, but none
21    of the benefits.  Because we will be stuck in the Southern
22    District of New York for trial, whereas the MDL plaintiffs
23    can return to their home courts for the actual trial.
24            And so I think that's kind of the worst of all
25    worlds, where the Commonwealth is not going to be able to go
```

1   to trial in the courts of its home state, but is still going

2   to suffer all the disadvantages of the sovereign litigating

3   at an MDL pace.

4           Thank you, Your Honor.

5           THE COURT:  Thank you.  All right.  Did Google

6   want to respond briefly to that?

7           MR. MAHR:  Briefly, Your Honor.

8           First, on the statutory argument that my colleague

9   from Virginia argued, I think that this -- 1407, the recent

10  amendments, didn't change anything.  There has always

11  existed, for the federal government, the federal

12  government's antitrust cases may not be consolidated in kind

13  of a cattle call by the JPML.

14          At the same time, for decades, Congress has left

15  open and the courts have exercised 1404 to say, all right,

16  well, they're not going to go over in a cattle call through

17  the JPML, but we are going to leave over 1404, because there

18  are critical interests of justice, like the avoidance of

19  overlapping and conflicting judgments, that are important,

20  and we want to leave that open for courts to manage their

21  dockets for the judiciary to avoid two trials, two appeals,

22  and the chaos that will arise from that.

23          THE COURT:  But, you know, as a practical matter,

24  if this Court were to move ahead, and let's say we resolve

25  this case and there is a judgment, you don't think that that

                                                            20

1    judgment would dramatically affect what would happen in the

2    Southern District of New York?  If, for example, we wind

3    up -- a jury hears this case and they find in favor of

4    Google, you don't think that that would have a huge impact

5    on what's going on in any other court that's looking at

6    these cases?  Of course it would.

7              MR. MAHR:  It could.  It's only a one-way ratchet,

8    though, because if they find in favor of us, that's not

9    binding on any other court.

10             THE COURT:  It's not binding, of course not.  But,

11   I mean, courts are not, you know, blind as to what's going

12   on among their colleagues.  Or the same way, if the

13   Government were to win.

14             I mean, again, I think it's a fascinating argument

15   that you've made.  I am going to rule against you, I am

16   going to deny the motion to transfer, because I am satisfied

17   that there are just enough differences between this

18   complaint and the complaints that are pending in New York.

19             I'm also satisfied that the serious significant

20   policy concerns expressed by Congress in how they have

21   handled the MDL statute, 1407(g), that those factors are so

22   significantly involved in this case, that it is appropriate

23   that the Court exercise its discretion and keep the case

24   here.

25             Now, having said that -- and you can have a seat

                                                              21

```
1    for a second -- let me tell you about what to expect.
2    Neither side may be happy about this.  I'm going to issue a
3    scheduling order today to get this case moving.
4            Now, my understanding is there's a ton of
5    discovery that's already occurred in this case.  The
6    Government's been investigating this case for two years or
7    so.  There was a discussion in your papers about, what,
8    2 million documents or pages that have been exchanged
9    already.  Frankly, I think there have been more depositions
10   taken in this case than we would normally allow.  I mean, in
11   other words, this case, in terms of the amount of prefiling
12   discovery, there's a whole lot that's been done, and,
13   therefore, I'm not convinced you need all that much more
14   time for discovery.
15           So we're issuing a scheduling order today.  That
16   means you need to put your running shoes on.  Even though I
17   don't know whether we're going to get a motion to dismiss,
18   because the defendant has a couple of weeks yet to file
19   their response.  But I want to also tell both sides that I
20   am going to be very respectful of what Judge Castel has
21   already done.  In fact, I'm planning to give him a phone
22   call today just as a courtesy to let him know that I've
23   denied the motion to transfer.
24           And to the extent that I find that I can live with
25   decisions that he's made, even though I might have done
```

                                                                    22

```
 1    something different, I'm very mindful of the concern about

 2    judicial inefficiency, and I therefore don't expect Google

 3    to file a motion -- if you do file a motion to dismiss,

 4    don't repeat the same arguments that he has already

 5    definitively resolved.  I feel that that's something that I

 6    will not be very favorably inclined to consider.

 7          At the same time, I'm hoping that both sides --

 8    and I think you will, you're good professionals -- will work

 9    well together.  I don't expect there to be long delay fights

10    about the electronic evidence.  I mean, I was very concerned

11    when I read there's this delay.  I think part of the problem

12    may be there's so many lawyers, both from private and state

13    sectors, that are holding things up like that.  But, in this

14    district, we don't countenance those types of disputes.  If

15    parties can't work it out, you'll get an order from the

16    magistrate judge.

17          And I believe, even though it looks -- I'm going

18    to have this case reassigned to Judge Anderson as the

19    magistrate judge to conduct discovery.  He knows how to

20    crack the whip, and he will keep everybody in line.  So I'm

21    hoping that we don't have a lot of discovery disputes.  And,

22    frankly, is there much discovery left that you all need?

23          MS. WOOD:  Your Honor, may we be heard?

24          THE COURT:  Yes.

25          MS. WOOD:  Thank you, Your Honor.
```

                                                              23

1          There is meaningful discovery that we do need in

2     the terms of refreshing a lot of the documents that were

3     produced.  The documents have not proceeded fully up to the

4     filing of the complaint, so we do need additional documents.

5     And there is extensive third-party discovery that I think

6     both sides anticipate being important here.

7          I understand Your Honor's desire to issue a

8     scheduling order today.  I know that we can also promptly

9     confer and see if we can reach an agreed-upon schedule if

10    Your Honor would prefer that.  I know that's something the

11    parties have talked about doing at some point.

12          THE COURT:  Well, this is where your local counsel

13    are going to be invaluable.  Mr. Mene from the U.S.

14    Attorney's Office knows how we operate.  And I, frankly,

15    don't know if defense counsel have someone who's practiced

16    here extensively in this court.

17          But, for example, you all requested to bring three

18    cell phones into court today.  That doesn't happen in my

19    courtroom or in this court.  And that suggests that perhaps

20    local counsel may not be as familiar with the nitty-gritty

21    practice in this court.  So you need to make -- both sides

22    will make their lives much easier if you're fully familiar

23    with how we operate.

24          MS. WOOD:  We have relied on Mr. Mene.  We thank

25    him very much for his assistance.

                                                            24

```
 1            THE COURT:  All right.

 2            MR. MAHR:  Your Honor, if I may respond on your

 3    question about discovery.

 4            THE COURT:  Yeah.

 5            MR. MAHR:  Discovery has been one way.  The

 6    Department of Justice has had years of discovery, including

 7    third-party discoveries with subpoena power and CIDs and

 8    document requests and interviews.  Google has not.  So there

 9    is definitely a three-year advantage here to the Government.

10    We have not been able to go out and talk to third parties

11    about market definition about effects of the --

12            THE COURT:  Well, what's been going on in the

13    New York case?

14            MR. MAHR:  Third-party -- discovery just began in

15    January.

16            THE COURT:  I thought -- who's taken all the

17    depositions?

18            MR. MAHR:  Those are depositions that the

19    Department of Justice in the State of Texas took during

20    their investigation.  They're investigative depositions.

21            THE COURT:  You were not party to those?

22            MR. MAHR:  We had to show up with our witnesses,

23    but we didn't get to choose who they talked to.

24            THE COURT:  All right.

25            MR. MAHR:  We didn't get to participate in their
```

                                                                25

1    third-party witnesses.  The Texas investigation, for

2    example, had 60 third parties; we have had zero.

3              THE COURT:  All right.  Well, that's something

4    you'll have to work out with Judge Anderson.  All right.

5              MR. MAHR:  Well, I will kind of reinforce

6    Ms. Wood's request.  We have been discussing, in the event

7    you denied the motion, a proposal to the Court, and we can

8    make it to Magistrate Judge Anderson if you'd like, that we

9    propose for moving forward, and we would like the

10   opportunity to do that.

11             THE COURT:  I'll punt that issue to him.  I'll

12   give him a call today, too, and let him know it's coming.

13   All right.

14             MR. MAHR:  Thank you.

15             THE COURT:  But be mindful of how we operate here.

16   All right.  Again, this is a problem that, frankly, the

17   Government's going to have because you chose to be here, and

18   I'm not joking when I say you need to have your running

19   shoes on.  All right.

20             MS. WOOD:  Understood, Your Honor.

21             THE COURT:  All right.  You know, everything in

22   life is finite.  We have a finite lifespan, we have all

23   sorts of limits, and I think the same thing applies to

24   litigation.  You might like to take 50 depositions but,

25   guess what, you aren't going to get 50.  You might like to

26

1    have, you know, a year and a half to complete discovery, but

2    you're not going to get that in this court.  It forces

3    lawyers to have to focus with laser efficiency on what are

4    the core issues you need to get to resolve a case.

5             So having said that, the last matter I want to

6    just very briefly address is there is this pending motion to

7    seal.  I just want to put, again, both sides on notice about

8    this.  I would not normally have granted that motion to seal

9    if it came to me fresh, because I don't think just the names

10   alone of people, unless they work for the CIA or something

11   like that, is something that's appropriate to be sealed.

12   But Judge Castel did grant that.  And, again, this is an

13   example of where if it's a close call, I'm going to go with

14   what he's already done to reduce this problem with

15   inefficiencies and with inconsistent rulings.  I may not

16   always be able to agree with him.  I would be surprised if

17   I'm unable to because he's a colleague, and he's an

18   experienced colleague.  Nevertheless, I am going to grant

19   that motion.

20            But I want both sides to understand that I'm one

21   of the judges in this court that looks very seriously at my

22   obligation to make sure that court proceedings are

23   transparent.  What you do in the exchange of discovery

24   before you come to court, if you want to mark things as

25   confidential, although I wish it wasn't done as much as it

                                                              27

```
1   is, sobeit, because we want to keep the discovery process
2   going.  But the problem with overclassifying things as
3   confidential then creates this problem when parties go to
4   file things in open court and they have to use materials
5   that were during discovery marked as confidential, we get
6   into this long rigmarole about having to file motions to
7   seal or unseal, whatever.
8           If I find that parties have put a confidential
9   stamp on materials that really do not justify being sealed,
10  I'm getting to the point now where I just say you've lost
11  your right to seal anything.  So I warn you to be careful
12  about what you initially mark as confidential.
13          But even more so, when the other side wants to
14  introduce some of that information in a public filing,
15  immediately agree to unseal it so there isn't a fight about
16  it.  Because if I have to start reviewing in camera things
17  and I find that the seal is not appropriate, I'm not going
18  to spend my time on other matters, I will just unseal
19  everything.  Okay.  So I hope we can get off to a good start
20  in that respect.
21          All right.  Are there any other matters I need to
22  address with this case at this time?
23          MS. WOOD:  Not from the United States, Your Honor.
24          THE COURT:  How about for the defense?
25          MR. MAHR:  No, Your Honor.
```

28

```
 1              THE COURT:  All right.  Very good.  You're all

 2    free to go.

 3              MS. WOOD:  Thank you, Your Honor.

 4              (Proceedings adjourned at 10:44 a.m.)

 5              ---------------------------------

 6    I certify that the foregoing is a true and accurate

 7    transcription of my stenographic notes.

 8                               Stephanie Austin

 9                         Stephanie M. Austin, RPR, CRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649