IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>et al.</u>,    ) | |
|    ) | |
|         Plaintiffs,    ) | |
|    ) | |
|      v.    ) | 1:23-cv-108 (LMB/JFA) |
|    ) | |
| GOOGLE LLC,    ) | |
|    ) | |
|         Defendant.    ) | |

<u>MEMORANDUM OPINION</u>

Defendant Google LLC ("Google") has moved to transfer this antitrust action brought by the United States of America and eight state plaintiffs (collectively, "plaintiffs"), including the Commonwealth of Virginia and the State of New York, to the Southern District of New York, where over two dozen antitrust actions relating to Google's presence in the online advertising technology industry have been transferred and consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") for pretrial proceedings. The issue before the Court is whether this civil action should be transferred pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York to be litigated as a separate civil action, alongside the consolidated actions, despite clear congressional intent to exempt antitrust suits brought by the United States and state governments from multidistrict litigation ("MDL") consolidation under 28 U.S.C. § 1407(g). For the reasons stated in open court and as further explained in this opinion, Google's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [Dkt. No. 44] is denied.

I. BACKGROUND

The United States and eight state plaintiffs—Virginia, California, Colorado, Connecticut, New Jersey, New York, Rhode Island, Tennessee—have filed this antitrust enforcement action to

challenge Google's alleged monopoly and anticompetitive practices in the digital advertising technology ("ad tech") industry.  [Dkt. No. 1].

The Complaint alleges that Google has monopolized or attempted to monopolize three core markets of the ad tech industry: (1) publisher ad servers, (2) ad exchanges, and (3) advertiser ad networks.  Specifically, the Complaint alleges that Google has eliminated or diminished any threat to its dominance in the ad tech industry by (a) neutralizing and eliminating ad tech competitors through acquisitions, and (b) using its market power and dominance in these three ad tech markets to force publishers and advertisers to use its products exclusively while disrupting their ability to use competing ad servers, ad exchanges, or ad-buying tools.  [Dkt. No. 1] ¶ 5.

### A.  **Related Actions**

In 2019, the United States Department of Justice and the attorneys general of dozens of states and territories began investigating Google's ad tech business.  [Dkt. No. 44] at 4-5.  In May 2020, a group of advertisers filed the first civil action, a putative class action, in the Northern District of California challenging Google's alleged anticompetitive conduct in the ad tech industry.  Other private suits were filed by advertisers challenging the same conduct, and putative class actions also were filed by publisher plaintiffs.  The Northern District of California consolidated the advertiser suits and the publisher suits in two civil actions.  See In re Google Digital Adver. Antitrust Litig., No. 5:20-cv-3556 (N.D. Cal. Aug. 11, 2020); In re Google Digital Publisher Adver. Litig., No. 5:20-cv-8984 (N.D. Cal. Mar. 10, 2021).  Similar private actions were filed by private plaintiffs across the country.

On December 16, 2020, Texas and a group of nine other states[1] brought an action in the Eastern District of Texas against Google alleging that its digital advertising practices violated the Sherman Act and various state laws (the "Texas Case").  See State of Texas v. Google, LLC, No. 4:20-cv-957-SDJ (E.D. Tex. Dec. 16, 2020).  Google moved to transfer that civil action to the Northern District of California, Google's own home forum, under 28 U.S.C. § 1404(a) because of the pending private actions in that district.  The Eastern District of Texas denied the motion to transfer on May 20, 2021 and issued a scheduling order setting a trial for June 5, 2023.[2]

In the interim, on April 30, 2021, Google moved under 28 U.SC. § 1407 to consolidate 19 pending ad tech antitrust actions, including the Texas Case, in a multidistrict litigation in the Northern District of California for pretrial proceedings.  See In re: Digital Adver. Antitrust Litig., 555 F. Supp. 3d 1372 (J.P.M.L. 2021).  On August 10, 2021, the JPML granted the motion to consolidate the actions in an MDL proceeding but assigned them to Judge P. Kevin Castel in the Southern District of New York after concluding that the cases presented "common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law," and that "[c]entralization

---

[1] Since the Texas Case was initiated, more states and territories have joined that civil action, which now includes the following plaintiffs: Texas, Alaska, Arkansas, Florida, Idaho, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nevada, North Dakota, Puerto Rico, South Carolina, South Dakota, and Utah.

[2] Specifically, the court found that ease-of-access to sources of proof weighed against transfer (because most of the documentary evidence was in Texas as a result of the attorney general's pre-suit investigation), the availability of compulsory process to secure the attendance of unwilling witnesses was neutral (because neither party had demonstrated beyond speculation the unwillingness of nonparty witnesses to attend trial), and the cost of attendance for non-willing witnesses weighed against transfer.  The court also concluded that judicial economy would not necessarily be preserved by transfer because the Texas Case involved claims, parties, defenses, damages, and procedural frameworks that "differ[ed] materially" from the actions then pending in the Northern District of California.  Finally, the court found that docket congestion weighed against transfer.  See Texas v. Google, LLC, No. 4:20-cv-957-SDJ (E.D. Tex. May 20, 2021).

will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, <u>Daubert</u> issues, and dispositive motions." <u>Id.</u> at 1375.  There are four categories of MDL plaintiffs: the state plaintiffs litigating the Texas Case, the putative advertiser class, the putative publisher class, and various individual private plaintiffs.

On September 13, 2022, Judge Castel ruled on Google's motion to dismiss the Texas Case plaintiffs' Third Amended Complaint, granting the motion as to some claims and denying it as to other claims.  <u>See</u> <u>In re: Google Digital Advert. Antitrust Litig.</u>, -- F. Supp. 3d --, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022).  After that decision issued, the private plaintiffs were permitted to seek leave to amend their complaints to conform them with the court's rulings on the allegations in the Texas Case, and a briefing schedule was set for Google to seek dismissal of any remaining nonconforming claims that will conclude at the end of March 2023.  <u>See</u> Pre-Trial Order No. 2, <u>In re: Google Digital Advert. Antitrust Litig.</u>, No. 1:21-md-3010-PKC (Sept. 14, 2022); Pre-Trial Order No. 4, <u>In re: Google Digital Advert. Antitrust Litig.</u>, No. 1:21-md-3010-PKC (Nov. 18, 2022).  The court also ordered that the plaintiffs designate a Discovery Steering Committee consisting of five lawyers to draft common discovery requests and coordinate discovery on behalf of all MDL plaintiffs.  <u>See</u> Pre-Trial Order No. 3, <u>In re: Google Digital Advert. Antitrust Litig.</u>, No. 1:21-md-3010-PKC (Sept. 16, 2022).

On November 21, 2022, Judge Castel issued a scheduling order setting the following deadlines:

- Agreed-upon proposed stipulation on Electronically Stored Information or respective positions to be submitted by January 13, 2023.
- Initial Rule 26(a)(1) disclosures to be served by January 13, 2023.
- Initial requests for document productions and interrogatories to be served by January 27, 2023.

- Fact discovery to be completed by June 28, 2024 (with 15 fact-witness depositions per side and no duplicative questioning of witnesses permitted).
- Expert discovery to be completed by December 27, 2024.
- Motions for class certification to be filed within 30 days after the close of expert discovery.
- Summary judgment motions to be filed only after the close of expert discovery.

See Pre-Trial Order No. 5, Scheduling Order, In re: Google Digital Adver. Antitrust Litig., No. 1:21-md-3010-PKC (S.D.N.Y. Nov. 21, 2022). As of March 10, 2023, the MDL plaintiffs and Google had not agreed as to a protocol for the discovery of Electronically Stored Information, and as a result, document productions have not yet begun.

On February 27, 2023, the Texas Case plaintiffs filed a motion with the JPML to remand their antitrust action to the transferor court, the Eastern District of Texas, in light of the enactment in December 2022 of the State Antitrust Enforcement Venue Act of 2021 (the "Venue Act"), which excludes state antitrust enforcement actions from MDL consolidation. See Motion to Remand, In re: Digital Adver. Antitrust Litig., MDL No. 3010 (J.P.M.L. Feb. 27, 2023). Because it is unclear whether the Venue Act is retroactive, the Texas Case plaintiffs have indicated in their motion that should the JPML deny their motion to remand, they or some state plaintiffs may dismiss their suits pending in the Southern District of New York and file new actions in the Eastern District of Texas. Id. at 10. If that were to occur, parallel litigation would result. Because the JPML declined to impose expedited briefing and consideration, the motion to remand will not be fully briefed until March 29, 2023.

### B.  Procedural History

On January 24, 2023, plaintiffs filed this five-count civil action (the "DOJ Action") alleging monopolization of the publisher ad server market in violation of Section 2 of the Sherman Act (Count I), monopolization or attempted monopolization of the ad exchange market

in violation of Section 2 of the Sherman Act (Count II), monopolization of the advertiser ad network market in violation of Section 2 of the Sherman Act (Count III), unlawful tying of Google's AdX and DoubleClick for Publishers in violation of Sections 1 and 2 of the Sherman Act (Count IV), and a claim for damages incurred by the United States as a result of Google's antitrust violations under 15 U.S.C. § 15a (Count V).  Plaintiffs do not dispute that the DOJ Action largely shares a common set of facts and claims as the consolidated MDL actions but point out that there are a number of differences between this action and the Texas Case, such as the federal government's damages claim.

Because Google waived service, its responsive pleading to the Complaint is due on March 27, 2023; however, on February 17, 2023, Google filed the pending Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) seeking transfer of this civil action to the Southern District of New York.  [Dkt. No. 44].  Plaintiff has filed an opposition to which Google has replied, and oral argument has been held.

## II. DISCUSSION

**A. <u>Standard of Review</u>**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The district court makes two inquiries under § 1404.  First, the court determines whether the claims might have been brought in the transferee forum.  <u>Pragmatus AV, LLC v. Facebook, Inc.</u>, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011).  If the claims could be brought in the transferee district, the court considers four factors in deciding whether to exercise its discretion to grant a transfer: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  <u>Trs. of</u>

Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436 (4th Cir.

2015).  The movant in this case, Google, bears the burden of establishing the propriety of the

transfer request, and the "ultimate decision is committed to the sound discretion of the district

court."  Pragmatus AV, 769 F. Supp. 2d at 994.

### B. Analysis

The parties agree that venue in the transferee forum, the Southern District of New York,

would be proper under the federal antitrust venue provision, 15 U.S.C. § 22.  As to the four

transfer factors, Google argues that plaintiff's choice of forum should be afforded limited weight

because of the lack of a nexus to this district, the Southern District of New York is more

convenient for the parties and witnesses, and transfer would reduce the risk of inconsistent

judgments and serve judicial economy because of the factual and legal overlap between the

pending MDL in the Southern District of New York and the DOJ Action.  In opposing transfer,

plaintiffs argue their choice of forum is entitled to substantial deference given the meaningful

connections that exist between the DOJ Action and this district, the remaining § 1404(a) factors

do not necessitate transfer, and, most of all, that transfer would contravene congressional intent

to ensure expeditious enforcement of antitrust laws.

1. Congressional Intent in 28 U.S.C. § 1407(g)

Plaintiffs agree that the DOJ Action is not "categorically exempt" from transfer under 28

U.S.C. § 1404(a), [Dkt. No. 47] at 8; however, their primary argument against transfer is that

transfer would contravene the congressional intent expressed in 28 U.S.C. § 1407(g), which

exempts antitrust actions brought by the federal government (and recently, state governments)

from MDL consolidation.

The Multidistrict Litigation Act of 1968 provides for transfer of civil actions pending in

different districts "involving one or more common questions of fact . . . for coordinated or

consolidated pretrial proceedings" in a single district, upon a finding by the JPML that "transfers

for such proceedings will be for the convenience of parties and witnesses and will promote the

just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  The statute explicitly exempts

from MDL jurisdiction "any action in which the United States is a complainant arising under the

antitrust laws."  Id. § 1407(g).  In December 2022, Congress enacted the Venue Act, which

expanded the exemption to include antitrust enforcement actions brought by states and repealed a

provision allowing damages claims brought by the United States to be subject to MDL treatment.

See Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, 136 Stat. 4459, 5970 (2023).

        As plaintiffs correctly point out, the legislative history of the Multidistrict Litigation Act

shows that Congress exempted federal antitrust enforcement actions from MDL treatment to

avoid the delays that might be caused by consolidation with private suits.  The Multidistrict

Litigation Act was enacted in the wake of a flurry of private antitrust litigation stemming from

the government's prosecution of electrical equipment manufacturers for antitrust violations, after

which more than 1,800 separate damages actions were filed in 33 federal district courts.

See H.R. Rep. 90-1130, at 2 (1968).  The primary purpose of MDL consolidation was to promote

judicial economy and efficiency, see S. Rep. 90-454, at 2-3 (1967); however, from the statute's

inception, antitrust actions brought by the federal government were exempt from its ambit, see

id. at 6.  As the House Report explained, the exemption in § 1407(g) was

>       requested by the Department of Justice and concurred in by the Coordinating
> Committee and the Judicial Conference of the United States, on the basis that
> consolidation might induce private plaintiffs to file actions merely to ride along on the
> Government's cases.  Government suits would then almost certainly be delayed, often
> to the disadvantage of those injured competitors who would predicate damage actions
> on the outcome of the Government's suit.

H.R. Rep. 90-1130, at 5; see S. Rep. 90-454, at 6 (same); 90 Cong. Rec. 4926 (Mar. 4, 1968)

(statement of Rep. Emanuel Celler) (same).  The House and Senate Reports show that Congress

8

prioritized concerns about delay of government antitrust suits above the goals of efficiency and judicial economy.  See United States v. Dentsply Int'l, Inc., 190 F.R.D. 140, 145 (D. Del. 1999) (holding that 28 U.S.C. § 1407(g) "express[es] a clear public policy of prioritizing prompt resolution of Government antitrust claims to provide expeditious relief to the public over possible efficiencies to be gained from consolidation with private antitrust damages actions").

The exclusion was included at the suggestion of the Department of Justice in a letter addressed to the Chairman of the House Judiciary Committee from Deputy Attorney General Ramsey Clark ("Clark letter").  The Clark letter acknowledged that the statutory exclusion "may occasionally burden defendants because they may have to answer similar questions posed both by the Government and by private parties," but argued that "this is justified by the importance to the public of securing relief in antitrust cases as quickly as possible."  H.R. Rep. 90-1130, at 8 (letter from Deputy Attorney General Ramsey Clark, January 7, 1966).  The Clark letter observed that treating the government differently was not arbitrary, because "the purpose of the governmental suit normally differs from that of a private suit; the Government seeks to protect the public from competitive injury, while private parties are primarily interested in recovering damages for injuries already suffered."  Id.; see A Proposal to Provide Pretrial Consolidation of Multidistrict Litigation: Hearing Before the Subcomm. on Improvements in Judicial Machinery of the S. Comm. on the Judiciary, 89 Cong. 17 (1966) (Statement of Hon. William H. Becker, Chief Judge of the United States District Court for the Western District of Missouri) (expressing that judges who are members of the Coordinating Committee for Multiple Litigation agree that the exclusion proposed by the Clark letter is "proper and desirable").  The language proposed by the Department of Justice for the exemption was adopted in the bill.

The recent expansion of the exclusion to antitrust actions brought by states further supports the conclusion that Congress's intent was to prioritize efficient and expeditious adjudication of government antitrust enforcement actions and minimize delay.  See H.R. Rep. 117-494, at 2-4 (Sept. 26, 2022) (explaining that the Venue Act "ensures that a state is afforded deference when selecting the appropriate venue to file its antitrust claim and eliminates the delay, inefficiency, and associated higher cost that a state may encounter under the existing law" and "[r]educing the length of antitrust litigation, including by eliminating unnecessary delays that are the result of the JPML process, may strengthen enforcement of the antitrust laws").

Few courts have considered the relationship between § 1407(g) and § 1404(a) and whether the purpose and policy considerations underlying § 1407(g) may preclude the transfer of a civil action under § 1404(a) to the forum of a pending MDL.  During oral argument, Google relied heavily on FTC v. Cephalon, Inc., 551 F. Supp. 2d 21 (D.D.C. 2008), a case in which the district court granted a motion to transfer over the Federal Trade Commission's ("FTC") protest that the policy considerations of § 1407(g) precluded its case from being consolidated under Fed. R. Civ. P. 42(a) with private antitrust actions pending in the transferee district.  The district court held that the FTC's arguments about consolidation were premature because there was no pending multidistrict litigation in the transferee forum, nor was there an indication that the defendant would move for consolidation with the pending private antitrust actions post-transfer pursuant to Rule 42(a).  Id. at 32-33.  In addition, the district court observed that consolidation was not the sole efficiency associated with transfer, and concluded that the need to avoid the risk of inconsistent judgments weighed in favor of transfer.  Id. at 32.

Google points to Cephalon to support its position that transfer under § 1404(a) outweighs the policy considerations in § 1407(g); however, Cephalon is distinguishable because the district

10

court did not consider the importance of avoiding delays, which is a significantly greater concern in the DOJ Action given the number of private actions involved in the MDL pending in the Southern District of New York. Moreover, plaintiffs' concerns about coordination with an MDL are not premature and are directly at issue given the pending MDL. By contrast, in United States v. Dentsply International, Inc., which considered whether to consolidate the government's antitrust case with private antitrust damages suits under Fed. R. Civ. P. 42(a), the district court found that the public policy underlying § 1407(g) of "prioritizing prompt resolution of [g]overnment antitrust claims" and providing "expeditious relief to the public" outweighed standard efficiency considerations that favored consolidation under Rule 42(a)—specifically, overlapping parties, claims based on common facts, and discovery. 190 F.R.D. at 145-46. As in Dentsply, the public policy concerns of § 1407(g) apply with similar force to the DOJ Action.

Even though Google is not seeking transfer and consolidation pursuant to § 1407(g) or Rule 42(a), the purpose and public policy considerations animating the exemption are persuasive and weigh in favor of denying Google's Motion to Transfer, notwithstanding concerns about judicial economy, duplicative litigation, and the risk of inconsistent judgments. The legislative history of the exclusion shows that Congress made the decision to subordinate concerns about judicial economy to the government and public's interest in efficient resolution of antitrust enforcement actions without delay and the need to prevent such suits from becoming bogged down with related private suits. The inclusion of the Clark letter in the legislative materials, in which the Department of Justice acknowledged the possible burden to defendants caused by exclusion from MDL treatment, indicates that Congress considered the possibility that defendants would be subjected to defending parallel actions, but the exclusion was nonetheless adopted as proposed. As plaintiffs point out, granting Google's Motion to Transfer the DOJ

11

Action for coordination with the pending MDL actions, even as a standalone civil action without consolidation in the MDL, would effectively circumvent the exclusion in § 1407(g) and would subvert Congress's intent to eliminate unnecessary delay caused by coordination with private antitrust litigation.

On the record before this Court, there is no question that transfer of the DOJ Action to the Southern District of New York would result in significant delays and prevent the government plaintiffs from expeditiously obtaining relief for the public. Discovery is not scheduled to conclude in the MDL until the end of 2024, and pretrial discovery proceedings have already been delayed due to the parties' inability to agree on a protocol for Electronically Stored Information. Just as the House Judiciary Committee observed in passing the Venue Act, it is likely that much of the "pretrial discovery proceedings" ongoing in the MDL cases are "superfluous" for the DOJ Action, given that the United States has already conducted substantial pre-suit investigation into Google's ad tech business. H.R. Rep. 117-494, at 3 (explaining that state antitrust enforcers, like the federal government, "have powerful tools to investigate antitrust violations"). As Google points out in its Motion to Transfer, Google has already produced 2 million documents to the Department of Justice, which has conducted 31 depositions. See [Dkt. No. 44-2] at 5; [Dkt. No. 50-1] ¶ 4. Because there is so much overlap between issues raised in the DOJ Action and the MDL actions, even as a standalone action, the DOJ Action would be subject to coordination on pretrial proceedings including fact discovery, expert discovery, and summary judgment. Given the number of plaintiffs involved in the MDL actions, delays from coordination with the MDL would be unavoidable.

These very policy considerations underlying 28 U.S.C. § 1407(g) inform the Court's analysis of the § 1404(a) factors and are encompassed in the public-interest elements of the

"interest of justice." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991). In the absence of a strong showing of other factors that support the transfer of venue, the Court will not override the legislative intent behind 28 U.S.C. § 1407(g) and the clear public policy favoring the expeditious resolution of government antitrust enforcement actions.

2. Plaintiffs' Choice of Forum

With the § 1407(g) policy considerations in mind, the Court has evaluated the § 1404(a) factors. Turning to plaintiffs' choice of forum, this factor weighs against transfer. The plaintiff's choice of forum "is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action"; however, "[t]he level of deference to a plaintiff's forum choice 'varies with the significance of the contacts between the venue chosen by [the] plaintiff and the underlying cause of action.'" Pragmatus AV, 769 F. Supp. 2d at 995 (first quoting Heinz Kettler GMBH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010), then quoting Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1256 (E.D. Va. 1988)).

Plaintiffs argue that their choice of the Eastern District of Virginia is entitled to substantial deference because (1) it is the home forum for the Commonwealth of Virginia, (2) its proximity to Washington, D.C. makes it a convenient location for the United States, and (3) the State of New York has made a "purposeful decision" to litigate in this district because of the complexities and risk of delay from coordinating with the MDL in the Southern District of New York. [Dkt. No. 47] at 10. Plaintiffs also contend that this district bears a "meaningful relationship" to the underlying causes of action because the Complaint alleges that federal departments and agencies, including agencies in this district, have been harmed by Google's anticompetitive conduct in the ad tech industry and have suffered monetary damages. Id. at 11. Plaintiffs point out that courts have afforded greater deference to government plaintiffs' forum

13

choice in antitrust enforcement actions in light of the liberal venue requirements for government antitrust suits under 15 U.S.C. § 22. See United States v. Microsemi Corp., No. 1:08-CV-1311 (AJT/JFA), 2009 WL 577491, at *6-7 (E.D. Va. Mar. 4, 2009) ("Where venue is proper, a plaintiff[']s choice of forum is entitled to substantial weight, particularly where the plaintiff's choice of forum is authorized by the more liberal antitrust venue provision."); Lanier Bus. Prods. v. Graymar Co., 355 F. Supp. 524, 527-28 (D. Md. 1973).

This Court is mindful of forum shopping concerns, and a plaintiff's choice to litigate in the Eastern District of Virginia should not be afforded weight where ties to the district are lacking and this district is sought out primarily because of its reputation as the "rocket docket." See Pragmatus, 769 F. Supp. 2d at 995-97. In this case, the factual connections to the Eastern District of Virginia due to injuries allegedly sustained by federal agencies and departments distinguish the DOJ Action from civil actions that lack a "legitimate connection" to the district, id. at 995, or have "little or no relation to that forum," Moore v. Sirounian, No. 1:19-cv-1018, 2020 WL 5791090, at *4 (E.D. Va. July 20, 2020) (finding a de minimis connection with the district where plaintiff asserted only that the defendants' server is located in Virginia). Nonetheless, the Court recognizes that the meaningfulness of connections of the DOJ Action to this district is somewhat weakened given that the vast majority of the factual allegations in the Complaint are not alleged to have occurred in Virginia, Google's ad tech businesses are not based in Virginia, and seven of the other state plaintiffs have no connection to Virginia. These considerations warrant placing slightly less weight on plaintiffs' choice of forum.

Nevertheless, in light of the greater deference afforded to the federal government's forum choice in antitrust actions and the connection to this district due to the United States' damages claim, this factor ultimately weighs against transfer.

14

3. Convenience of the Parties and Witnesses

The convenience of the parties and witnesses is neutral and neither favors nor disfavors transfer. Google argues that transfer to the Southern District of New York would be more convenient for it, because its second-largest corporate presence outside of California is in New York and much of its ad tech business is located there. See [Dkt. No. 44-2] at 21. Google asserts that eight of the 28 individuals that Google disclosed as potential witnesses in the MDL and 39 of the 157 current or former Google employees that the MDL plaintiffs disclosed as potential witnesses are based in New York. Id. Google maintains that New York would not be less convenient for plaintiffs because the Department of Justice's antitrust division maintains an office in Manhattan and many of the state plaintiffs are located closer to New York. Id. at 20. Google further argues that transfer would be more convenient for witnesses, particularly third-party witnesses, because three of the eight third parties identified in the Complaint are headquartered in New York. Id. at 18.

In response, plaintiffs contend that party and non-party witness inconvenience can be mitigated because plaintiffs are willing to travel to New York to conduct depositions or conduct them remotely. [Dkt. No. 47] at 14. Plaintiffs also maintain that some witness travel is inevitable, because some Google or third-party witnesses will need to travel to the east coast from California or other locations, and if the DOJ Action is transferred, government witnesses will need to travel from Washington, DC to New York. Id. at 15. Moreover, plaintiffs point out that Google's reference to the number of employee witnesses is misleading in that most of them reside outside of New York, which does not establish that New York is a better location for this civil action. Id. at 17. As for non-party witnesses, plaintiffs state that 267 non-duplicative third-party witnesses have been disclosed by the parties in the MDL, and of the 180 witnesses for

15

whom they were able to determine a location, 21% are located in New York and the rest are dispersed across 24 other states, the District of Columbia, and five countries. Id. at 19-20.

Because party and witness convenience points in both directions and the "impermissible result to be avoided is simply to shift the balance of inconvenience from the plaintiff to the defendant," Microsemi, 2009 WL 577491 at *6, the Court finds this factor neutral.

4.   Interests of Justice: Risk of Inconsistent Judgments and Judicial Economy

Google focuses on § 1404(a)'s requirement that a court consider the "interest of justice," which "encompasses public interest factors aimed at 'systemic integrity and fairness.'" Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988)). "Judicial economy and the avoidance of inconsistent judgments are prominent among the principal elements of systemic integrity." Id. Google stresses that transfer of this civil action to the Southern District of New York is necessary to avoid the risk of inconsistent judgments and to facilitate judicial economy; however, as previously discussed, the policy considerations underlying § 1407(g) ultimately outweigh these concerns.

a.   Risk of Inconsistent Judgments

Google correctly points out that keeping the DOJ Action in this district poses a risk of inconsistent rulings between the Southern District of New York and this Court in pretrial proceedings, discovery disputes, and the application of federal antitrust law.  [Dkt. No. 4402] at 15-16.  Plaintiffs do not dispute that the DOJ Action involves issues of fact and law that largely overlap with the MDL actions; however, they argue that transfer will not prevent inconsistent judgments because the MDL actions have only been consolidated for pretrial proceedings, not trial, and the Multidistrict Litigation Act provides for remand at the end of pretrial proceedings to the transferor district.  [Dkt. No. 47] at 21-22; see 28 U.S.C. § 1407(a).  As for the risk of

16

inconsistent pretrial rulings, plaintiffs maintain that although that concern motivated Congress to enact the Multidistrict Litigation Act, Congress still exempted government antitrust actions from MDL consolidation, showing that avoiding delay was a higher congressional priority than the risk of inconsistent pretrial rulings.

Congressional intent underlying § 1407(g) is persuasive in the § 1404(a) analysis. Moreover, to some extent, the risk of inconsistent rulings will be minimized by this Court giving very deferential attention to Judge Castel's decisions as to issues of fact or law similar to those subsequently raised in the DOJ Action. And given this district's rocket docket, many discovery issues as well as summary judgment will likely be resolved by this Cout before the Southern District of New York, which will enable that court to take those decisions into consideration.

Should this Court enter a final judgment or decree in the DOJ Action, such judgment or decree will impact related private antitrust suits under the Clayton Act, which provides that, after "testimony has been taken," "[a] final judgment or decree . . . rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto . . . ." 15 U.S.C. § 16(a); see Minnesota Min. & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 316 (1965). If this Court is the first to reach a final judgment, the applicability of 15 U.S.C. § 16(a) may minimize the risk of inconsistent judgments.

Therefore, although there is some risk of inconsistent rulings, that risk can be mitigated, and Congress's intent and the strong public policy interest in expeditious resolution of government antitrust enforcement actions outweighs such concerns.

### b. Judicial Economy

Google also argues that judicial economy favors transfer because the MDL has been pending in the Southern District of New York for over 18 months, the court has invested substantial time and energy to become familiar with the factual and legal issues underpinning the ad tech antitrust allegations, and the court has resolved Google's motion to dismiss the Texas Case. [Dkt. No. 44-2] at 17. Google also points out that having two judges decide similar discovery disputes or procedural issues wastes judicial resources. Id.

Google is correct that there will be some duplication of effort and use of judicial resources between the Southern District of New York and the Eastern District of Virginia; however, this concern is outweighed by Congress's clear intent to prioritize speedy and efficient resolution of government antitrust suits over facilitating judicial economy as reflected by its enactment of 28 U.S.C. § 1407(g) and reiterated by the recent expansion of that exception to state governments.

### c. Docket Congestion

Docket conditions are also relevant in evaluating the interests of justice, see Pragmatus AV, 769 F. Supp. 2d at 996, and plaintiffs argue that the relative docket conditions between this district and the Southern District of New York weigh against transfer. There is no doubt that docket congestion and the likelihood of swift resolution of the DOJ Action in this district militate against transfer to the Southern District of New York. Moreover, as explained above, because of the connections between the DOJ Action and this district, venue in the Eastern District of Virginia does not present concerns about forum shopping.

### III. CONCLUSION

In sum, given the strong public policy and congressional intent evinced in § 1407(g) to prioritize expeditious enforcement of antitrust laws by federal and state governments and the

balance of the remaining § 1404(a) factors, Google's Motion to Transfer [Dkt. No. 44] will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 14th day of March, 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

19