IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| *Defendant*. ) | |

**DEFENDANT GOOGLE LLC'S RULE 16(b) SCHEDULING BRIEF**

The United States and eight state plaintiffs—California, Colorado, Connecticut, New Jersey, New York, Rhode Island, Tennessee, and Virginia—(collectively "Plaintiffs") have filed this antitrust enforcement action challenging the size and success of Google's digital advertising technology ("ad tech") business. The Complaint alleges that, over the past fifteen years, Google has monopolized or attempted to monopolize three alleged ad tech "relevant markets": (1) "publisher ad servers," (2) "ad exchanges," and (3) "advertiser ad networks." Plaintiffs allege that Google has monopolized these alleged markets by engaging in a range of conduct, most of which boils down to Google either refusing to deal with its competitors on terms those competitors might prefer, or declining to design its products and services to advantage its rivals. Google vigorously contests Plaintiffs' allegations under both the law and the facts. Google's ad tech success has been based on its innovation, investments, and superior products.

Despite deep differences over the substance of the litigation, all parties recognize that this is a complex case which, respectfully, is not appropriate for a routine Rocket Docket discovery schedule.[1] Consequently, the parties have jointly proposed a schedule that they recognize is

---

[1] By way of comparison, in two recent prominent Section 2 antitrust cases brought by the United States against a single defendant, both courts initially ordered a fact discovery period of a year or greater, with bifurcated fact and expert discovery periods where the expert discovery closed six

1

somewhat longer than schedules typically entered by this Court. However, Google respectfully submits that good cause exists for the Court to enter the parties' jointly-proposed schedule, including, among other things: the scope and importance of this case; the benefit to both parties and the Court of a longer discovery period; the current imbalance in discovery; the special issues presented in this antitrust case; the damages claim asserted by the United States; and the need for coordination with the parallel litigation before Judge Castel in the Southern District of New York ("SDNY Cases").

***Case Scope and Importance.*** This case presents complex[2] and extremely consequential issues, the resolution of which will affect businesses across the United States. The size of the ad tech industry in the United States runs in the billions of dollars annually, with approximately thirteen billion individual transactions occurring every day. Compl. ¶ 2. Plaintiffs' Complaint challenges some fifteen years of alleged conduct across three different alleged markets, and at least ten different allegedly anticompetitive acts, *id.* ¶¶ 312, 319, 326.

Google's ad tech products and features are critical to the "open, vibrant internet" that Plaintiffs agree is "indispensable to American life." *Id.* ¶ 1. As Plaintiffs allege, "the viability of many of these websites depends on their ability to sell digital advertising." *Id.* Thus, the Supreme Court's warning that in monopolization cases "[m]istaken inferences and the resulting

---

months following the close of fact discovery. In *United States v. Google* (Search), the complaint was filed on October 10, 2020. The court entered its initial Scheduling Order on December 21, 2020, which ordered fact discovery to close 456 days later, on March 22, 2022, and expert discovery to close six months thereafter on September 23, 2022. *See* Scheduling & Case Management Order, 1:20-cv-03010-APM (D.D.C.), ECF No. 85. In *United States v. American Express*, an amended complaint was filed on December 21, 2010. The court entered its initial Scheduling Order on March 2, 2011, which ordered fact discovery to close one year later on March 2, 2012, and expert discovery to close six months thereafter on September 2, 2022. *See* Scheduling Order, 1:10-cv-04496-NGG (E.D.N.Y.), ECF No. 93.

[2] Antitrust actions have been specifically identified as "complex litigation" for which special pretrial scheduling procedures are appropriate. *See* ANNOTATED MANUAL FOR COMPLEX LITIGATION, § 30, at 610 *et seq.* (4th ed. 2022) [hereinafter, "MANUAL"].

2

false condemnations 'are especially costly, because they chill the very conduct the antitrust laws are designed to protect'" is especially apt in this case. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 414 (2004) (citations omitted).

***The Proposed Schedule Benefits Both Parties.*** Granting the jointly-proposed discovery schedule would benefit both parties as well as the Court. At the transfer hearing on March 10, 2023, counsel for the United States explained that, from Plaintiffs' perspective:

> There is meaningful discovery that we do need in the terms of refreshing a lot of the documents that were produced. The documents have not proceeded fully up to the filing of the complaint, so we do need additional documents. And there is extensive third-party discovery that I think both sides anticipate being important here.

ECF No. 59, at 23:23-24:6. The United States expressed this need for additional discovery after an investigation that lasted more than three years. For Google, which did not have the benefit of a three-year investigation with the federal government's subpoena power, the need is much greater. Thus, both parties would benefit from the proposed discovery period. Google respectfully suggests that the Court will also benefit from giving the parties' additional time to develop the kind of robust factual record on which the Court can rely.

***Current Imbalance of Discovery.*** Because Plaintiffs' Complaint challenges fifteen years of Google's activity in a dynamic and complex industry, Google must rely on this Court to protect its right to develop the evidence necessary to defend itself against Plaintiffs' misguided claims. Plaintiffs' far-reaching investigatory tools and subpoena power have given them a three-and-a-half-year head-start on discovery. Due process fairness dictates that Google be allowed the opportunity to prepare its defense against these claims and to catch up to at least some degree on the Plaintiffs' massive head-start, especially with respect to third-party discovery.

While Google has been compelled to produce close to three million of its own documents to Plaintiffs, and its employees have had to sit for thirty-one depositions taken by the DOJ, it has

3

been unable to propound any document requests or notice any depositions of its own in response. Even more critically, Plaintiffs alone have had the ability to request and review what Google has just recently learned amounts to close to five million documents from relevant third parties, and Plaintiffs alone have had the ability to take third-party depositions.[3] Google has not had the same opportunity: it could not begin to request documents from third parties in the SDNY Cases until January 27, 2023, when discovery opened in those cases, and to date has received fewer than 10,000 documents from a total of six non-parties (despite issuing requests on January 27, 2023).[4] Thus, a fact discovery period of even eight months would grant Google just a quarter of the time that Plaintiffs apparently required to conduct their third-party discovery—and Google's competitors may well prove far less willing to cooperate with Google than they were to cooperate with Plaintiffs.

***Special Antitrust Considerations: Market Definition.*** Discovery, in particular third-party discovery, is especially important in antitrust cases because of the need to define the relevant markets in order to properly evaluate Google's alleged conduct. In monopolization cases in particular, "[t]he definition of the relevant geographic and product market may be critical, and it may determine the existence of market power requisite to prove liability and may also determine the scope of relevant evidence." MANUAL, § 30.1 at 611. The relevant product market comprises the alleged violator's product and "effective substitutes" for it, which may be very broad, combining "a number of different [substitute] products ... where that combination reflects commercial realities." *United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966). Here, Plaintiffs

---

[3] Google and Plaintiff United States have separately agreed that the United States will produce its investigative file to Google by May 5, 2023, and so it will take Google an additional month-and-a-half to even begin the process of materially catching up to Plaintiffs.

[4] Google and Plaintiffs have yet to coordinate with the parties in the SDNY Cases on the use of discovery in this case with the SDNY cases, and vice-versa, but intend to craft protective orders that allow efficient coordination of discovery where possible.

have alleged three product markets.  Compl. ¶¶ 282-303.  Given the central role market definition will play in this case, Google respectfully requests that it be allowed the opportunity to develop its own evidence regarding the relevant antitrust markets on which this case should be evaluated, as well as evidence regarding its competitors on those markets, their products and services, and their relative market shares.  Most of this information—which is likely to include voluminous data productions—must be obtained through Rule 45 subpoenas.  The nationwide scope of the relevant markets in this case means that will entail discovery (and likely extensive motions practice) with multiple third parties which, again, we expect to be far less cooperative with Google than they were with the Plaintiffs.

*Special Antitrust Considerations: Expert Discovery.*  Like many antitrust cases, this case is likely to rely heavily on expert analysis.  Experts in antitrust cases often analyze the relevant geographic and product markets, as well as "the concentration of economic power, pricing structures, elasticity of demand, barriers to entry, marginal costs, and the effect of the challenged practices on competition."  MANUAL, § 30.2, at 612.  The parties agree that it is critical to complete fact discovery before undertaking expert analyses of the relevant markets, as that factual discovery will necessarily provide the basis for the experts' analysis.  Rule 26 "vests the district court with broad discretion ... to dictate the sequence of discovery."  *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998).  Sequencing fact and expert discovery is appropriate and, indeed, necessary here.

*Special Antitrust Considerations: Standing and Damages.*  The United States purports to seek money damages, which implicates its standing as a purchaser, which is yet another fact-intensive antitrust inquiry.  The nature and extent of the United States' damages also is a proper subject for discovery and, like the other topics outlined above, to date has been one-sided.

5

***Coordination With the SDNY Cases.*** The jointly-proposed discovery schedule is also necessary to allow some minimal level of coordination with discovery proceedings in the SDNY Case, while at the same time avoiding undue delay. Google has already begun prioritizing which third parties it plans to seek depositions of so that these depositions may occur only once for potential use in both cases. In order to conduct effective depositions of these third parties, Google needs time to access and sufficiently review the documents already produced to Plaintiffs as well as additional responsive documents that will be collected from these and other third parties once discovery begins here. Likewise, Google employees should sit for just a single deposition that can be used in both this case and the SDNY Cases. Consequently, the discovery period in this case should be long enough to permit at least that minimal level of coordination to take place.

\*   \*   \*

Rule 1 of the Federal Rules of Civil Procedures provides that those rules should be applied to secure the "just, speedy, and inexpensive determination" of each action on the merits. FED. R. CIV. P. 1. Google readily acknowledges that speed is important, but it is just one of these three principal goals. An "exceptional case requires different treatment." *Freehill v. Lewis*, 355 F.2d 46, 48 (4th Cir. 1966). Google submits, and Plaintiffs agree in proposing the joint schedule, that this case is not routine—rather, it is "exceptional"—and the "spirit of the rules does not require that completeness in the exposure of the issues in the pretrial discovery proceedings be sacrificed to speed in reaching the ultimate trial on the merits." *Id.*

Counsel experienced in antitrust litigation and in this Division's local rules, practices, and procedures are appearing on both sides of this case, ensuring that pretrial proceedings will be efficient, effective, and reasonably speedy under the circumstances presented. The proposed schedule is the result of the parties' meet and confer negotiations. Accordingly, Google

respectfully requests that the Court approve the agreed-upon schedule that the parties have jointly presented.

Dated: March 23, 2023            Respectfully submitted,

/s/ Craig C. Reilly
CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: Craig.reilly@ccreillylaw.com

Eric Mahr (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

*Counsel for Google LLC*