```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3   --------------------------x
     UNITED STATES, et al.,      :    Civil Action No.:
 4                               :    1:23-cv-108
              Plaintiffs,        :
 5        versus                 :    Friday, March 24, 2023
                                 :
 6   GOOGLE LLC,                 :
                                 :
 7              Defendant.       :
     --------------------------x
 8

 9        The above-entitled motions hearing was heard before
     the Honorable John F. Anderson, United States District
10   Judge.  This proceeding commenced at 11:02 a.m.

11               A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:   GERARD MENE, ESQUIRE
                           OFFICE OF THE UNITED STATES ATTORNEY
13                         2100 Jamieson Avenue
                           Alexandria, Virginia  22314
14                         (703) 299-3700

15                         AARON TEITELBAUM, ESQUIRE
                           JULIA WOOD, ESQUIRE
16                         UNITED STATES DEPARTMENT OF JUSTICE
                           ANTITRUST DIVISION
17                         450 Fifth Street, NW
                           Washington, D.C.  20530
18                         (202) 894-4266

19                         TYLER HENRY, ESQUIRE
                           OFFICE OF THE ATTORNEY GENERAL
20                         OFFICE OF THE SOLICITOR GENERAL
                           202 North Ninth Street
21                         Richmond, Virginia  23219
                           (804) 786-7704
22

23

24

25
                                                               1
```

```
1                     A P P E A R A N C E S:

2   FOR THE DEFENDANT:    CRAIG REILLY, ESQUIRE
                          LAW OFFICE OF CRAIG C. REILLY
3                         209 Madison Street
                          Suite 501
4                         Alexandria, Virginia  22314
                          (703) 549-5354
5
                          ERIC MAHR, ESQUIRE
6                         TYLER GARRETT, ESQUIRE
                          FRESHFIELDS BRUCKHAUS DERINGER, LLP
7                         700 13th Street, NW
                          10th Floor
8                         Washington, D.C.  20005
                          (202) 777-4500
9
    COURT REPORTER:       STEPHANIE M. AUSTIN, RPR, CRR
10                        Official Court Reporter
                          United States District Court
11                        401 Courthouse Square
                          Alexandria, Virginia  22314
12                        (571) 298-1649
                          S.AustinReporting@gmail.com
13

14       COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

15

16

17

18

19

20

21

22

23

24

25
                                                              2
```

```
 1                    P R O C E E D I N G S

 2            THE DEPUTY CLERK:  United States of America, et

 3   al. versus Google LLC, Civil Action Number 23-cv-108.

 4            MR. MENE:  Good morning, Your Honor.  Gerard Mene

 5   with the U.S. Attorney's Office.  Your Honor,

 6   Aaron Teitelbaum and Julia Wood for the Department of

 7   Justice Antitrust Division are here as well.  Julia Wood

 8   will present for the Government, Your Honor.

 9            THE COURT:  Okay.  Thank you.

10            MS. WOOD:  Good morning, Your Honor.

11            THE COURT:  Good morning.

12            MR. REILLY:  Good morning, Your Honor.

13   Craig Reilly here for Google, together with my co-counsel,

14   Eric Mahr and Tyler Garrett.  And Mr. Mahr will address the

15   Court this morning.

16            THE COURT:  Okay.  Thank you.

17            MR. REILLY:  Thank you.

18            THE COURT:  Well, I appreciate you all being here.

19   As you all are aware, Judge -- go ahead and have a -- I'm

20   sorry.  Go ahead.

21            MR. HENRY:  Good morning, Your Honor.  Ty Henry

22   from the Virginia Attorney General's Office on behalf of

23   plaintiff states.

24            THE COURT:  Thank you.  Anyone else?  Okay.

25            Well, as you know, Judge Brinkema has taken care
```

3

1    of the issues relating to the dispositive motions deadline

2    and briefing on that, and so my role is to talk to you a

3    little bit more about the discovery schedule that you all

4    have proposed and to give you the guidelines of what you

5    need to do in addressing the joint discovery plan that

6    you're supposed to have to me by Tuesday, I think, next

7    week, March 28th.

8              You know, before we get into that, if we could,

9    I'd like to go ahead and just get an outline from the

10   parties.  And I'll have, Ms. Wood, you address it first

11   since obviously the United States has done more discovery

12   than Google has at this point.

13             But I just want to get a sense as to what has

14   actually been done already on the discovery phase.  I mean,

15   my understanding, from reading the pleadings and things, is

16   that at least 2 million documents have been obtained from

17   Google, that -- I think I've learned last night that there

18   are 5 million documents that have been obtained from third

19   parties that are now available, and that 30-some depositions

20   have already been taken.

21             Is that generally accurate?

22             MS. WOOD:  So, Your Honor, let me address that.

23             It is generally accurate that, in the combined

24   investigation, which once included matters not specific to

25   the ad tech industry that we're here on a complaint today,

                                                              4

1    that in the combined investigation over time, there have

2    been that volume of materials produced and depositions

3    taken.

4           However, Your Honor, at its inception, the

5    investigation was very broad, and there's been a substantial

6    funneling of the investigation over the course of its

7    development.  It initially included, as I indicated,

8    materials, documents, depositions concerning the *Search* case

9    that is pending in the District of Columbia.  And it also

10   included other markets that ultimately did not find their

11   way into the complaint the United States filed here.

12          So it is true that there have been a large amount

13   of documents produced, both from Google, as well as from

14   third parties, but it would be unfair to characterize those

15   documents as all relevant to this lawsuit that has been

16   brought.  A meaningful portion of those documents relate to

17   things that are outside the scope of the complaint.

18          So there will be additional discovery.  We do

19   benefit from the discovery that was taken, and we have every

20   intention to proceed expeditiously to fill in the gaps that

21   remain.

22          For example, from a temporal perspective, there

23   are -- approximately two years have passed since the last

24   meaningful document productions have taken place, from

25   either third parties or from Google, so there will be a

                                                              5

1   natural refreshing of document productions.  There have been

2   additional custodians that have been added, people who have

3   left Google, new custodians who joined Google in certain key

4   positions that are relevant to the facts of the lawsuit.

5   And there are additional third-party materials that will be

6   needed.

7          But I, again, want to emphasize that we don't

8   intend to duplicate the efforts that have already occurred

9   during the investigation phase, and we will be as efficient

10  as possible in seeking third-party requests and seeking a

11  moderate amount of refreshing of data from Google as well.

12          THE COURT:  What has been done as far as getting

13  that additional information in the New York action, if

14  you're aware of that?  I mean, obviously you're following

15  the New York action, so I'm just ...

16          MS. WOOD:  We are following the New York action.

17  I am not aware -- and my colleague will let me know.  I'm

18  not aware whether documents have been produced.  I learned

19  for the first time in the brief they filed last night that

20  they actually have received documents from third parties

21  there.  We don't have access to those documents.  I don't

22  know what's in those documents.

23          I think we will certainly work together to make

24  sure there's no duplication of efforts vis-a-vis the

25  Southern District of New York action.  And to the extent

6

```
1    Google or other third parties have produced material there,
2    we will not seek those same materials through process in
3    this litigation.
4              THE COURT:  Okay.
5              MS. WOOD:  And, Your Honor, just to emphasize also
6    with respect to the 30 depositions, again, those
7    30 depositions, many of them did cover, or parts of the
8    deposition did cover the content at issue in this case, but
9    certainly many of those depositions were on other topics
10   that are not relevant to the allegations we've brought here.
11             So, again, I don't want to leave the misimpression
12   that we've taken 30, you know, seven-hour depositions that
13   all exclusively related to the facts of this case.  That's
14   not an accurate presentation of what happened.
15             THE COURT:  Mr. Mahr, let me hear what Google's
16   position is as far as what's been done, both in the
17   investigative stage and, more specifically, what's been done
18   in New York.  I mean, you've been -- discovery has been open
19   in New York since sometime in January, I take it; is that
20   right?
21             MR. MAHR:  Yes, Your Honor.  January 27th.
22             And in terms of what's been done outside of
23   New York is quite easy.  We've been giving a lot, and we've
24   got nothing.  No depositions, nothing.  Obviously in the
25   Department of Justice's investigation.
```
                                                              7

1          In New York, discovery was just, as I say, opened

2     on January 27th, I think.

3          THE COURT:  That's almost two months, so that

4     isn't nothing.

5          MR. MAHR:  Well, we've been waiting for documents,

6     and we've -- fewer than 10,000 have come in, and those have

7     come in from state agencies who are agencies of the states

8     that are plaintiffs in that case, so they're not real

9     relevant to this case.  In terms of third-party discovery,

10    we've received nothing in the -- in that litigation yet.

11         THE COURT:  Well, tell me what it is that you

12    think you're going to need to do in this case.

13         MR. MAHR:  Well, there are two aspects to any

14    Section 2 monopolization case.  One is the existence of a

15    monopoly, which, by itself, is not illegal under U.S. law.

16    And then there's anticompetitive conduct combined with that.

17    We are going to have to address both in this case.

18         I think one of the biggest issues will be the

19    existence of a monopoly or not.  What is the market that we

20    are alleged to have monopolized.  The Government has

21    presented three different markets compared to other cases

22    across the river in the *Search* case, which is just one

23    market.  But three markets --

24         THE COURT:  Well, the case -- the case in New York

25    involves three markets.

                                                              8

```
1              MR. MAHR:  The same three alleged markets, yes.

2              THE COURT:  Right.  So you've been working on that

3    issue for a while.

4              MR. MAHR:  We have.  And -- but, by our count on

5    the demand side of that market, advertisers, there are at

6    least 20 other companies that do what Google does on the

7    demand side.

8              On the sell side, which is the advertise- -- the

9    publishers of the websites, there are five to ten major

10   competitors on that side.  And then in the middle, the

11   exchange that actually mediates and matches the two, there

12   are over 30 of those kind of exchange and mediation

13   companies.  That's just under the Government's market

14   definitions.  That excludes what we think should be

15   included, companies like Amazon, TikTok, Facebook and others

16   who also provide a place for advertisers to seek a return on

17   their advertising dollars by reaching people through the

18   Internet in advertising.

19             All that is in the context of advertising in

20   general which, again, advertisers, we contend, seek the best

21   return on their investment.  They don't care whether it's on

22   the Internet, on television, on radio or any other method,

23   and there are a lot of case law that talks about the

24   exchangeability.  All those issues will have to be addressed

25   by experts in the fact -- in the data and the inputs to that
```

```
 1    will have to come through fact discovery.  We're not
 2    proposing to depose every single one of those competitors,
 3    but there are quite a lot out there.
 4            When you go to the conduct side, there's also a
 5    great deal.  The defendant -- I mean the plaintiffs hardly
 6    have a rifle shot complaint here.  They have basically and
 7    literally laid out the history of Google's ad tech business
 8    going back 15 years to our first entry and said any major
 9    event, any major new product, any major new service is
10    anticompetitive.
11            So we're faced with going back 15 years, and I
12    think ten separate, either product innovations,
13    optimizations, new services that the Government is
14    challenging.  So that's also a great deal of conduct
15    evidence.
16            Again, we'll have a lot of that ourselves, but the
17    customers will also be probative in getting kind of
18    admissible evidence as to what the effect of those
19    optimizations and features were on customers.
20            THE COURT:  So Google made some strong arguments
21    that the arguments in this case are very similar to the
22    arguments in New York.  And I'm a little confused because
23    I'm looking at things that are going on in New York, and if
24    I understand it right, there's a substantial completion of
25    document production in New York that is to be done by May;
```

                                                            10

```
 1   is that right?

 2            MR. MAHR:  By the parties, yes, Your Honor.

 3            THE COURT:  Okay.  How different do you think that

 4   the documents and information you're going to be getting in

 5   New York is going to be from the plaintiffs in this case?  I

 6   mean, the issues are all the same --

 7            MR. MAHR:  I think --

 8            THE COURT:  -- according to what you say, and, you

 9   know, there are going to be some variations of what the

10   arguments are, some emphasis here or there.  But, you know,

11   if the markets are the same -- obviously you have competent

12   counsel dealing with the issues on behalf of the plaintiffs

13   in New York -- why is it that, you know, substantial

14   completion of the document production in New York isn't

15   going to give you most of what you're going to get in this

16   case?

17            MR. MAHR:  Well, the substantial document

18   completion is not for the third parties, and that's where

19   we're left behind.  We will do the refresh that Ms. Wood

20   just referred to by that substantial completion date.  We'll

21   get substantial completion from a number of states who

22   aren't in this case.  But as far as our third-party

23   competitors, which are really what goes to the market

24   definition, none of that is related to the substantial

25   completion date.
```

                                                          11

```
 1              That's where we're faced with third-party
 2   discovery in New York that goes over a 17-month period, and
 3   we're proposing here to do it in less than half that.  That
 4   will take some triaging for us in certainly identifying the
 5   most important third-party witnesses and getting after them
 6   in this case, hopefully also to use it in that other case.
 7              THE COURT:  Well, in the two months that you've
 8   had to do discovery in New York, how many third-party
 9   subpoenas have you issued relating to the issues that are
10   the same here and in New York?
11              MR. MAHR:  I don't have that number, Your Honor.
12              THE COURT:  I mean, have you done any?
13              MR. MAHR:  I think -- I think discovery has begun
14   with the focus on the parties that were being -- we're
15   facing, including all the private parties.  I don't know
16   that third-party discovery has gone out yet, Your Honor.
17              THE COURT:  Well --
18              MR. MAHR:  It's not far.
19              THE COURT:  Okay.  Well, you don't have the
20   benefit of having two months of not doing anything in our
21   court.
22              MR. MAHR:  Well understood, Your Honor.
23              THE COURT:  Your discovery is going to be opening
24   up on Monday, and you need to be very active in doing what
25   you say you need to do starting Monday.
```

                                                                12

1          MR. MAHR:  And we are preparing those -- we are

2     preparing those third-party subpoenas.  To the extent they

3     need to be tailored to individual defendants, we're doing

4     that.  And we're doing the triage, because we recognize

5     where we could go to talk to 60 or 70 in New York; we're not

6     going to have that many here, and we understand that.

7          THE COURT:  Okay.  And what I'm planning to do --

8     and go ahead and have a seat, and I think -- unless there's

9     anything else that you want to add on the overall current

10    posture of discovery.

11         MS. WOOD:  No, Your Honor.  Other than we stand

12    ready, and literally people are back at our office now

13    finalizing subpoenas to serve on Monday.  So we absolutely

14    intend to move with great dispatch, Your Honor.

15         THE COURT:  Well, interrogatories and document

16    requests and other things as well, I hope.

17         MS. WOOD:  Yes, Your Honor.

18         THE COURT:  Okay.  You know, there are a lot of

19    moving parts in this case, and I understand that, and so I

20    want to take it a step at a time and talk about what we're

21    going to do today and what we're going to do maybe next week

22    if we're in a position to do it.

23         I'm going to tell you the dates that I have

24    negotiated with Judge Brinkema.  And, I will tell you, it

25    was a bit of a negotiation about the dates that we're

13

1    willing to set out today to give you the framework for what
2    you need to do in order to prepare your joint discovery plan
3    that we will get on Tuesday.
4              I want to talk to you about when we can get
5    together again and talk more about the particulars of that,
6    and if you can have an agreed plan, we can just talk about
7    general case things.  If you don't have an agreed plan, then
8    we'll talk about how we're going to get those issues
9    resolved.  So I don't know how far along you all are on
10   that.  I do want to make sure that we have a fairly short
11   timetable for if we don't have an agreed plan, for you to
12   come back in and we -- you have a plan, whether it's agreed
13   to or not.
14             I mean, there are a lot of things that go into
15   that.  You know, getting the protective order entered in
16   this case is going to be significant.  I assume there's a
17   protective order that's already entered in New York.  I
18   don't know whether the United States has had an opportunity
19   to review it, to modify it or to be in a position to present
20   a stipulated protective order or not.
21             MS. WOOD:  Your Honor, the parties have been
22   working very cooperatively on that front.  We have both a
23   proposed protective order that we've been exchanging and
24   marking up, a proposed ESI order, a proposed stipulation
25   regarding expert discoverability, as well as obviously the

14

1    discovery plan that we'll submit to Your Honor on Tuesday.

2    So we have been working in preparation for this conference

3    to -- and even before to do all of those things, Your Honor.

4           THE COURT:  Well, working and producing are two

5    different things.  And, you know, my understanding was it

6    took an awfully long time to get the ESI plan together in

7    New York.  You don't want me making those decisions, but if

8    we have to, I'll make those decisions.  So, you know, we're

9    not going to wait a long time because the parties have got

10   to get moving along quickly in this matter.

11          So let me go ahead and tell you what the dates are

12   going to be.  In discussing these dates with Judge Brinkema,

13   she instructed me to tell you that these are not going to be

14   modified.  I will tell you that the end date will not be

15   modified.  The dates in between now and the end date I have

16   some authority to give you more time here or there, but, you

17   know, the date in which everything is going to need to be

18   done needs to be done.

19          These will be in an order that I get out later

20   today, so you don't necessarily have to worry too much about

21   it.  And it's kind of comparing the dates that you will be

22   under as compared to what you proposed in your plan.

23          Obviously, fact discovery, we'll have that start

24   on March 27th, as you have indicated in your plan.  I do

25   want you to submit your proposed plan, joint discovery plan

15

1   with me on March 28th.  We'll keep the initial disclosure

2   dates of April 3rd there.  And now we start talking about

3   the modified dates.  We're going to move up the substantial

4   completion of document production date approximately a

5   month.  So that's now going to be July 7th.

6          You know, part of this is that, you know,

7   hopefully the parties will work together to allow whatever

8   has been done in New York here.  I think the investigation

9   file is going to be produced fairly promptly.  Those kinds

10  of things.  And I -- you know, this is a schedule that is

11  substantially longer than what we normally would do, in view

12  of all scheme of things.  And I am agreeing with you all and

13  have gotten the blessing to allow fact discovery and then

14  expert discovery in this case, which is not something that

15  is typical in our court.

16         So we're going to talk about the fact discovery

17  first and then the expert discovery.  But you need to do

18  your substantial completion of your document production by

19  July 7.  Fact discovery is going to need to end by

20  September 8th.  One of the -- and that's -- you know, we're

21  shortening that period between substantial completion and

22  fact discovery ends by a month.  It sort of moves things up

23  by about two months there.

24         The time period between when fact discovery ends

25  and the expert reports are due was substantially too long, I

16

```
1   think, in our view.  I mean, the experts, certainly, I
2   think -- Google has had experts working on this issue for
3   years now.  I mean, I would imagine, given the issues that
4   were presented in the New York case, that process has been
5   underway.  I think the United States has probably, in its
6   investigation, been using experts to help them guide that
7   investigation.  The experts don't have to wait until the end
8   of discovery to start their work in preparing their reports
9   and doing their analysis.
10          So we're going to have the initial expert reports
11  due on October 13.  Any opposing reports will be due on
12  November 17.  Rebuttal reports will be due on December 6th.
13  And expert discovery will end on January 12th, and you will
14  have a conference with Judge Brinkema on January 18th.
15          In most cases, we would call that a final pretrial
16  conference in which you would be, you know, submitting your
17  list of exhibits and list of witnesses and getting your
18  trial date.  I think as this case progresses, that date will
19  probably be more of a scheduling conference with
20  Judge Brinkema than a final pretrial conference.
21          So I don't want you to get too anxious about I'm
22  going to have to have my list of witnesses done within
23  six days after all of the expert discovery ends.  I think,
24  at that point, you will probably be meeting with
25  Judge Brinkema, talking about the schedule for filing
```

17

1    motions for summary judgment, motions in limine, other kinds

2    of motions that you'll want to do, the briefing schedule for

3    that, and then when she may go ahead and set the trial date,

4    but obviously probably will be doing a list of witnesses and

5    exhibits at a later time than then.

6              I know this is an aggressive time for you.  You

7    know, I think you need to make good use of the time that you

8    have, focus your attention on certain things.  You know,

9    you're not going to be able to turn over every grain of

10   sand.  These are important issues, they're big issues, but

11   they're issues that the parties have been contemplating and

12   dealing with in various places for extended periods of time.

13   And this is -- you know, at some point if you can't get them

14   resolved, they need to be resolved, and Judge Brinkema's

15   ready and willing to do the task if need be in this case.

16             So the January 18 date is the date that I tell you

17   I have no authority to change.  If you need weeks difference

18   between, you know, this date and another date in between the

19   substantial completion or even that date, I think I could

20   modify a week or two.  But this is -- discovery is going to

21   have to end -- expert discovery is going to have to end by

22   January 12th, and you'll have to be in a position to meet

23   with Judge Brinkema on the 18th and talk about summary

24   judgment, motions in limine, *Daubert* motion issues and those

25   kinds of things by then.

1            So, in the normal course what I would be doing

2  would be, you know, waiting to have a joint discovery plan

3  and then have an initial conference with the parties.   I

4  think given -- having to give you that timetable of what

5  we're working under, we're having a session now, but I also

6  want to be able to have a session with you all and talk to

7  you more about, you know, briefing and motions and our

8  motions practice.

9            I think everybody here knows that, you know, the

10 magistrate judges -- I will be hearing motions on Fridays,

11 and how we can do expedited hearings and certain things

12 where you can file it on Friday and have it decided the

13 following Friday, and motions that are -- one can consider

14 that being reasonable.  And I will just say I've been

15 involved in some significant cases involving issues that

16 probably shouldn't be resolved on a one-week schedule, and

17 the parties have to have some discretion in using the

18 expedited briefing schedule.

19           Part of that is, you know, under that schedule,

20 you file a motion on Friday, the opposition is due on

21 Wednesday, and the reply has to come in on Thursday.  So if

22 you're the moving party, you've got to be -- take advantage

23 of that expedited briefing schedule.  You know, all hands

24 have to be on deck for getting something to me on Thursday

25 so that I can have an opportunity to read it.  And filing it

                                                              19

1   Friday morning isn't going to work.  My goal -- I don't

2   always accomplish this, but my goal is, you know, when you

3   walk out of here on Friday, you know what the ruling is, and

4   that's the way we keep things moving along.

5          So on the discovery end, if issues come up, you

6   know, you have to have a good faith consultation, it has to

7   be a real good faith consultation, not I called them at 4

8   and I filed it at 5 and never heard back from them.  That

9   really isn't a good faith consultation.  And if we start

10  having a number of issues, I've used some tactics in some

11  cases that, you know, I designate certain people that need

12  to be involved in any discussions to make sure that there's

13  no waiting around, or I couldn't get ahold of this person or

14  that.  But I hope I don't have to take those, what I would

15  consider fairly unusual steps in this case.

16         I would suggest that, you know, we either get

17  together next Friday or at some point the following week.  I

18  mean, I want to have enough time to see what it is.  And if

19  you all have a stipulated protective order, you just file it

20  and I'll enter it.  So I'm not going to wait to have a

21  hearing or anything that you've agreed to or an ESI order or

22  anything like that.

23         But I could meet with you either Friday morning of

24  next week.  I could meet with you -- if you wanted to do

25  something on a more, I would say special time, I could

                                                              20

```
1    probably do it Thursday afternoon of next week or sometime
2    during the week following that.  That will kind of open it
3    up to you all's availability.
4              And I will say, my plan is to have hearings in
5    person, you know, on any kind of motions, certainly anything
6    that is of a substantive nature.  You know, a while back we
7    were doing a lot of Zoom hearings and those kinds of things,
8    but I think given the nature of this case, the parties need
9    to plan on hearings that we have being here in open court.
10             I know I'm kind of hitting you out of the blue
11   with scheduling, and many people don't understand that you
12   can have paper calendars with your schedule, and most people
13   say, well, it's all on my phone, I don't know.  I -- well,
14   what I'm going to do is I'm going to ask you to let me know
15   before the end of the day today whether you would be
16   available next Friday at 10:00 for a follow-up.  And, if
17   not, then what blocks of time you would be available the
18   following week, afternoon or morning time periods, and then
19   I'll pick a time, and then we'll just get together.  But I
20   don't want to force something on the parties that would
21   require you all to rearrange a lot of different schedules.
22             Ms. Wood.
23             MS. WOOD:  Yes, Your Honor.  Thank you, Your
24   Honor.
25             I am available next Friday.  I have -- parts of my
```

21

```
1    schedule are put to memory, so I am available next Friday.
2    However, the following week, I am supposed to be with my
3    family on spring break.  I could certainly do anything
4    telephonically.
5              THE COURT:  The last vacation you get --
6              MS. WOOD:  I think that's probably right.
7              THE COURT:  -- until, you know, probably early --
8    mid January or maybe even later than that.  But enjoy your
9    time.
10             MS. WOOD:  I think that's right.  I'll say goodbye
11   to my kids for a while.
12             THE COURT:  Mr. Mahr.
13             MR. MAHR:  Your Honor, we'll be available on
14   Friday at 10.
15             THE COURT:  You will be available on Friday?
16             MR. MAHR:  To make that work, yes.
17             THE COURT:  Okay.  Well, why don't we go ahead --
18   I'll put in an order that we issue today that I plan to meet
19   with the parties on Friday, March 31st at 10 a.m.  Currently
20   I don't -- I only have one other matter currently scheduled
21   for next Friday, but I won't know for sure until 5:00 today
22   as to what gets filed today and noticed for next Friday.
23   But, you know, if, for one reason or another, it seems -- I
24   may set it for 11:00.
25             As you can tell, we have a court reporter here,
```

```
 1   which is a little bit unusual for the magistrate judges, and
 2   I think we'll probably try and make arrangements to have a
 3   court reporter in any time that we have a session here in
 4   this case.  So instead of 10, I may make it 11 to kind of
 5   coordinate with Judge Brinkema's chambers on that.
 6               So it will be next Friday at either 10 or 11:00.
 7   Okay.  So get me your plan on Tuesday, and we'll see each
 8   other again a week from today.
 9               Any questions or other issues that you want to
10   discuss while we're together?
11               MS. WOOD:  No.  Thank you, Your Honor.
12               THE COURT:  Mr. Mahr, anything else?
13               MR. MAHR:  No, Your Honor.  Thank you.
14               THE COURT:  Thank you.  All right.  Court will be
15   adjourned.  Thank you.
16               (Proceedings adjourned at 11:31 a.m.)
17               ----------------------------------
18   I certify that the foregoing is a true and accurate
19   transcription of my stenographic notes.
20                                    Stephanie Austin
                                    _____
21                                    Stephanie M. Austin, RPR, CRR
22
23
24
25
                                                                  23
```