**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES, *et al.*, )<br> )<br> *Plaintiffs*, )<br> )<br>v. )<br> )<br>GOOGLE LLC, )<br> )<br> *Defendant*. ) | No. 1:23-cv-00108-LMB-JFA |

**DEFENDANT GOOGLE LLC'S BRIEF IN SUPPORT OF DISCOVERY PLAN**

Pursuant to Federal Rules of Civil Procedure 16 and 26(f), and Local Civil Rules 16 and 26, Defendant Google LLC ("Google") submits this brief in support of its proposals in the Joint Proposed Discovery Plan (Dkt. 87, "Discovery Plan"), and in opposition to the proposals made by Plaintiffs the United States of America, the Commonwealth of Virginia, and the States of California, Colorado, Connecticut, New Jersey, New York, Rhode Island, and Tennessee ("Plaintiffs"). Many issues have been resolved, but a few important ones remain.

**I.  Timing for Production of Plaintiffs' Investigative Files (§ 5(B))**

The parties agree that Plaintiffs will complete production of documents, data, depositions, and correspondence that they received from or exchanged with persons other than Google during their pre-complaint investigation (the "Investigative File") no later than May 5, 2023, a date that comes 101 days after Plaintiffs filed their complaint. Google proposes that Plaintiffs complete production of the Investigative File sooner – by fourteen (14) days after entry of a protective order – if that date would arrive before May 5, 2023.[1]

---

[1] The parties are meeting and conferring in good faith over entry of a protective order that would require Plaintiffs to provide third-parties with no more than 10-days' notice that materials they produced during the investigation would be produced in this case. Google anticipates that a proposed protective order will be submitted to the Court by April 3, 2023.

1

While meeting and conferring over what came to be the Joint Motion for Entry of Discovery Schedule, Dkt. 63, Plaintiffs agreed to produce the Investigative File by May 5, 2023. During those negotiations, Google did not insist on an earlier production because the parties also agreed that fact discovery would not conclude until November 10, 2023, *id.* ¶ 4(i), leaving roughly 6 months for Google to formulate and execute a strategy for third-party discovery after receiving the contents of the Investigative File (which contains approximately 5 million documents already produced by third parties). Now that fact discovery will conclude on September 8, 2023, Dkt. 69, each day without the Investigative File takes on added importance for Google, making a delay that would have been manageable with a 6-month period for fact discovery intolerable with a 4-month period. Delaying production of the Investigative File also perpetuates Plaintiffs' advantages over Google in conducting discovery and developing their case.

In other antitrust cases, the United States has been able to produce the investigative file much more quickly after filing its complaint than the 101 days its proposal would provide here.

| Case | Date of Case Filing | Date Production of Investigative File Completed | Days from Filing to Completed Production |
|---|---|---|---|
| *U.S. v. Google LLC*, 1:23-cv-00108 (E.D. Va.) | Jan. 24, 2023 | May 5, 2023 [Plaintiffs' position] | 101 days |
| *U.S. v. AT&T Inc.*, 1:17-cv-02511 (D.D.C.) | Nov. 20, 2017 | Dec. 25, 2017 (Dkt. 55, at 1) | 35 days |
| *U.S. v. Aetna Inc.*, 1:16-cv-01494 (D.D.C.) | July 21, 2016 | Sept. 12, 2016 (Dkt. 55 ¶ 1) | 53 days |
| *U.S. v. AB Electrolux*, 1:15-cv-01039 (D.D.C.) | July 1, 2015 | July 24, 2015 (Dkt. 28, at 1) | 23 days |
| *U.S. v. Apple*, 1:12-cv-02826 (S.D.N.Y.) | Apr. 11, 2012 | June 22, 2012 (Dkt. 64 ¶ 4(c)) | 72 days |

While the investigative file may have taken slightly longer to produce in *United States v. Google*, 1:20-cv-03010 (D.D.C.) ("*Search*"),[2] the Investigative File here appears to contain at least some of the same materials that already were produced there, *see* Mar. 24, 2023 Tr. at 4:22-5:17, Dkt. 70, so the United States should be able to produce those materials again in this case without any delay. And in any event, having chosen to bring this case to the "rocket docket," Plaintiffs cannot rely on the approach adopted by other courts, especially when the 21 additional days in the Search case pales in comparison to the disparity in the fact-discovery period between the cases (15 months vs. 4 months).

## II.     Treatment of Executive Branch Agencies (§§ 6(A), 6(G), 13)

The parties disagree about whether most executive branch agencies of the United States are to be treated as parties or non-parties for purposes of discovery. In *United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978), the court held that all executive branch agencies should be treated as parties, rejecting "the limited theory of the nature of the 'plaintiff' advanced by the Department of Justice" as "unacceptable." *Id.* at 1333. Using words that apply equally well to this case, the court explained that:

> [The case against AT&T] was brought not on behalf of the Department of Justice but on behalf of the United States of America. Civil enforcement proceedings pursuant to section 4 of the Sherman Act have traditionally been so instituted, presumably because the antitrust laws are of quasi-constitutional breadth and significance, and constitute a means for protecting the economic interests of the citizens of this country, not infrequently on a national scale. In the vindication of broad economic policy, it simply makes no sense to hold that the Department of Justice, which essentially is a law office, alone comprises the United States.
>
> . . .

---

[2] The Search case was filed on October 20, 2020, and production of the investigative file was completed 122 days later, on February 19, 2021. *See Search*, Dkt. 111, at 2. When the court ordered production of the Investigative File in the *Search* case, fact discovery was scheduled to last 15 months. *See Search*, Dkt. 85 ¶ 5.

> Insofar as this case is concerned, it takes little speculation to conclude that it would not have been brought without consultation with government executives involved in economic policy and possibly with the White House itself, or without prior inquiry into the relationship between defendants and various government departments. Where that is true, it hardly seems reasonable to insulate the entire government, other than the Attorney General's Office, from the direct discovery process of Rule 34.
>
> . . .
>
> The theory of the government's case and the relief requested are national in scope and they are likely to involve the documents and the activities of a great number of government departments. . . . While the Court, of course, has not ruled on the relevance of specific requests or categories of requests for documents, it is apparent that defendants will need access to the records of many government agencies, and that fairness to them requires that such access be as unencumbered as the Federal Rules will allow.

*Id.* at 1333-34. As a result, the court concluded that executive branch agencies (though not independent agencies) were subject to party discovery, including Federal Rule of Civil Procedure 34. *See id.* at 1330-37. Other courts have reached similar holdings. *See, e.g.*, *North Dakota v. United States*, 2021 WL 6278456, at *4 (D.N.D. Mar. 24, 2021) ("Even if North Dakota's recovery is limited to negligent acts of USACE employees, that would not foreclose North Dakota from seeking discovery from other federal agencies who possess relevant information."); *United States v. UBS Sec. LLC*, 2020 WL 7062789, at *2-7 (E.D.N.Y. Nov. 30, 2020) (rejecting United States's argument to exclude two executive branch agencies from party discovery); *United States v. Atrium Vill. Assocs.*, 1988 WL 2778, at *1 (N.D. Ill. Jan. 12, 1988) (following *AT&T* and concluding that two executive branch agencies must respond to party discovery).

Google's proposed language for Section 6(A) of the Discovery Plan recognizes these principles and would treat all executive branch agencies of the United States as parties. For example, it would obligate the Department of Justice to respond on behalf of all executive branch agencies to the requests for production of documents and interrogatories that Google has already served on the United States.

4

Without offering any contrary authority, Plaintiffs have taken the position that only eight specific agencies should be treated as parties and that all other agencies should be treated as non-parties. If Plaintiffs "complain[] that a ruling equating all executive departments with the United States will complicate their task," it should be "[o]bvious[]" that Google has "even less influence over the agencies, and as the entit[y] which ha[s] been sued, [it is] entitled to [its] discovery rights irrespective of the effect on inter-departmental relationships." *AT&T*, 461 F. Supp. at 1334 n.58.

Plaintiffs cannot sidestep the bulk of their discovery obligations with arguments that they are seeking damages on behalf of only eight agencies. First, while Plaintiffs may currently be seeking damages on behalf of only eight agencies, they have reserved the right to seek damages on behalf of additional agencies. *See* Compl. ¶¶ 278, 341 (not limiting damages claim to those eight agencies). Google should not be foreclosed from party discovery on agencies that may still seek damages at some point in the future. Second, Google should not be limited to party discovery on only the eight agencies chosen by Plaintiffs. That limitation would create the risk that Plaintiffs cherry-picked these particular agencies because they are the most supportive of their case.

Google's proposed language for Section 6(G) would treat all current and former employees of executive branch agencies as party witnesses for purposes of depositions, while Plaintiffs would treat only current and former employees of the eight specific agencies as party witnesses. Google's proposed Section 13 would allow for service on any executive branch agency to be effected by service on counsel of record, whereas Plaintiffs' proposal would have them accept service on behalf of only the eight identified agencies. For all of the reasons explained with respect to Section 6(A), Google's proposals for Sections 6(G) and 13 should also be adopted.

### III. Plaintiffs' Document Requests (§ 6(C))

On the first day of discovery, Plaintiffs served a "first set" of requests for production of documents on Google that contains 56 requests and that, on its face, appears to seek the production of many millions of documents. There should be no need for Plaintiffs to demand such extensive document discovery because Google already has produced millions of documents during Plaintiffs' three-year investigation. And having chosen to litigate their claims in the "rocket docket," Plaintiffs should not be permitted the same breadth of discovery that other courts might allow. *See* Mar. 10, 2023 Tr. at 26:16-17 (noting that "this is a problem that, frankly, the Government's going to have because you chose to be here"), Dkt. 59. Google has offered to refresh its prior productions by applying the same search terms to the same group of custodians to which Plaintiffs agreed during their investigation. No more should be required.

### IV. Re-Deposition of Witnesses (§ 6(F))

During their extensive investigation, Plaintiffs took 31 depositions of current and former Google employees. In each of those depositions, Plaintiffs had the opportunity to question Google witnesses for hours using the mountain of documents that had already been produced. With so much other party and non-party discovery to complete during the 4-month fact discovery period in this case, Plaintiffs should not be permitted to take second depositions of individuals whom they have already deposed.

### V. Limits on Party and Non-Party Depositions (§ 6(G)(i), (ii))

Section 6(G) of the Discovery Plan would set presumptive limits on the number of party and non-party fact witness depositions.[3] Although Plaintiffs propose to take up to 15 party fact

---

[3] The parties would be able to seek leave to take depositions of additional witnesses. Dkt. 87 § 6(G).

witness depositions, they should have no need for so many additional party depositions after having already taken 31 Google depositions during their three-year investigation. *See* Mar. 10, 2023 Tr. at 22:9-10 ("Frankly, I think there have been more depositions taken in this case than we would normally allow."), Dkt. 59. Nor should they be allowed to cram that many fact witness depositions into the short period between substantial completion of document production (July 7, 2023) and the close of fact discovery (September 8, 2023), Dkt. 69, while simultaneously seeking to deny Google the opportunity to depose more than a handful of non-party witnesses, none of whom Google has ever had a chance to depose before. Google proposes a presumptive limit of 10 party fact witness depositions per side. That approach would more readily accommodate unique non-party depositions in the "rocket docket" that Plaintiffs have chosen for this case, and it would still result in Plaintiffs having more than 40 total Google depositions.

Google proposes a presumptive limit of 20 non-party fact witness depositions per side, while Plaintiffs propose to all but preclude non-party depositions by limiting them to 5 per side. While 5 non-party depositions may be appropriate for an ordinary case, this case is far from ordinary. To start, Plaintiffs themselves have served document subpoenas on 57 non-parties to enlarge the record of nearly 5 million documents that they already collected from non-parties during their three-year investigation.

This case requires such extensive non-party discovery because Plaintiffs allege that Google has monopolized three distinct relevant markets. *See* Compl. ¶¶ 282-303, 310-35. Google disputes that those are valid markets, *see* Dkt. 73, at 6-15, and resolving that dispute will require evidence about what customers in each of those markets consider to be reasonable substitutes.[4] Beyond

---

[4] *See United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956) ("In considering what is the relevant market for determining the control of price and competition, no more definite

market definition, the parties also dispute the effect of Google's alleged conduct on rivals in each of the three allegedly relevant markets. *See, e.g.*, Compl. ¶ 269 ("Google's conduct had the purpose and effect of depriving rivals of sufficient scale to meaningfully compete in the ad exchange, publisher ad server, and advertiser ad network demand markets."). Plaintiffs' proposal would allow Google to depose only a *single* customer and a *single* rival in each of the allegedly relevant markets.[5] Their proposal would limit Google to deposing *fewer than one-tenth* of the non-parties that Plaintiffs have themselves subpoenaed. In short, the proposal is a thinly disguised effort to preclude Google from defending itself by denying it access to non-party testimony that could undermine Plaintiffs' claims. While Google may need to ask for additional non-party fact witness depositions beyond the 20 that it is currently seeking,[6] Google respectfully submits that its proposal is far more realistic and reasonable than what Plaintiffs have proposed.

## VI. Evidentiary Cut-Off (§ 8)

With Section 8, Plaintiffs have proposed to preclude Google from relying at trial on documents and data that were not produced before the close of fact discovery (September 8, 2023), other than a few narrow categories of documents. Significantly, Plaintiffs' proposal would bar Google's experts from supporting their opinions with materials that were not produced before the close of fact discovery. But Federal Rule of Civil Procedure 26(a)(2)(B) contemplates the disclosure of facts and data relied upon by expert witnesses at the time that expert reports are

---

rule can be declared than that commodities reasonably interchangeable by consumers for the same purposes make up that 'part of the trade or commerce,' monopolization of which may be illegal.").
[5] The same publisher could be a customer in the alleged publisher ad server and ad exchange markets.
[6] Google does not yet know how many non-parties produced documents during the pre-complaint investigation or how many non-parties will be identified on Plaintiffs' initial disclosures. As this and other information becomes known during the course of discovery, a need for additional depositions could arise.

exchanged; the Rules do not require a party to pre-disclose unrequested information months in advance, as Plaintiffs are now demanding.

The unfairness of Plaintiffs' proposal becomes clear when considered in the context of the broader schedule for the case. Google will not receive Plaintiffs' expert reports until October 13, 2023. Only then will Google understand, for example, how Plaintiffs expect to prove that their alleged relevant markets are economically valid or what economic evidence they intend to use to try to show that Google's conduct harmed competition in those markets. Before then, Google will have no way of anticipating all of Plaintiffs' arguments and, thus, no way of knowing all of the evidence it would use to rebut them. Nevertheless, under Plaintiffs' proposal, Google would be prohibited from offering expert opinions based on anything other than evidence that happened to have been produced more than a month before Plaintiffs ever revealed their arguments. In effect, Google would lose the right to defend itself fully if it could not read Plaintiffs' (and their experts') minds.

Plaintiffs cannot demonstrate any need for their extreme proposal. First, they have already received voluminous amounts of information from Google during their investigation, with more to come in response to their pending discovery requests. Second, they will receive all of the evidence on which Google's experts base their opinions when expert reports are disclosed. Third, if they can prove at that time that Google unjustifiably failed to comply with its discovery obligations and that the failure substantially harmed them, then Plaintiffs can exercise their rights under Federal Rule of Civil Procedure 37. There is no need to decide today, in the absence of any concrete set of facts, how to fairly resolve a future dispute that may never arise.

The manifest unfairness and lack of need for Plaintiffs' approach may explain why this Court does not include "evidentiary cut-offs" in typical discovery plans. They also likely explain

why Judge Mehta rejected a similar approach when the United States suggested it in the *Search* case. There, the United States asked the court to enter a proposed order that would preclude "Google (including Google's experts)" from relying on documents and data that were not produced during fact discovery. *See* [Proposed] Order Amending Scheduling and Case Management Order, *Search*, Dkt. 352-1 (attached hereto as Exhibit A); *see also* Joint Status Report, *Search*, Dkt. 352, at 7-11 (attached hereto as Exhibit B) (arguing for entry of proposed order). In response, Google pointed out that the proposed order "could be read to preclude Google's reliance on documents and data that . . . should be produced *following the service of expert reports, rather than at an earlier date*." Ex. B at 15 (emphasis added). Recognizing this issue, the court declined to enter the United States' proposed order and instead issued its own Order that included a carve-out from the evidentiary cut-off for materials relied upon by expert witnesses. *See* Order Regarding Production Deadline, Motion to Compel Deadline, and Evidentiary Cut-Off Date, *Search*, Dkt. 357 ¶ 3(a) (attached hereto as Exhibit C).

Google's proposed Section 8 for the Discovery Plan in this case very closely tracks the Order in *Search*. *Compare* Dkt. 87 § 8, *with* Ex. C ¶ 3. By contrast, Plaintiffs' proposal departs from the *Search* Order (and Google's proposal) in several material ways:

- Plaintiffs' proposal precludes reliance on all "documents," while the *Search* Order precludes reliance on only "non-public documents," *compare* Dkt. 87 § 8, *with* Ex. C ¶ 3.

- Plaintiffs' proposal includes an additional exception to the evidentiary cut-off for materials "in connection with the Court's determination of an appropriate equitable remedy, if any," *see* Dkt. 87 § 8(A).

- As described above, Plaintiffs' proposal does not include an exception for materials relied upon by experts, *see* Dkt. 87 § 8(B).

- Plaintiffs' proposal removes the exception for commercially available data, *see* Ex. C ¶ 3(e).

There is no basis for any of these departures, so the Court should enter Google's proposed language for section 8 of the Discovery Plan, which closely tracks Judge Mehta's Order in *Search*.[7]

## VII. Conclusion

For the foregoing reasons, Google respectfully requests that the Court adopt its proposals in the Discovery Plan.

Dated: March 30, 2023

Respectfully submitted,

/s/ Craig C. Reilly
CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: craig.reilly@ccreillylaw.com

Eric Mahr (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

*Counsel for Google LLC*

---

[7] Alternatively, the Court could determine that Section 8 is entirely unnecessary and decline to enter any evidentiary cut-off.