IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES**, *et al.*,<br><br>       *Plaintiffs*,<br><br>  - against -<br><br>**GOOGLE LLC**,<br><br>       *Defendant*. | Civil Action No. 1:23-cv-00108-LMB-JFA |

**GOOGLE LLC's FIRST SET OF INTERROGATORIES
TO THE UNITED STATES**

Pursuant to Federal Rules of Civil Procedure 26 and 33 ("Federal Rules"), Defendant Google LLC hereby requests that Plaintiff United States respond to the Interrogatories set forth below.

**INSTRUCTIONS**

1. In addition to the specific instructions set forth below, these Interrogatories incorporate the instructions set forth in Federal Rules 26 and 33, the Local Rules of the United States District Court for the Eastern District of Virginia ("Local Rules"), the Stipulation and Order Regarding Discovery Procedure ("ESI Order") (to be entered), and the Confidentiality Order (to be entered), or the operative version of those Orders in place at the time responses are served.

2. These Interrogatories seek information available to You, or to which You may gain access through reasonable effort, including information in the possession of Your past and present attorneys, investigators, consultants, agents, representatives, or other persons directly or indirectly

employed or retained by You, or anyone else otherwise subject to Your control who maintains records on Your behalf, in Your name, or otherwise under Your control.

3. Unless otherwise specified, these Interrogatories each require a separate response.

4. If You cannot provide a full and complete response to any Interrogatory, You should respond to the Interrogatory to the extent possible, specifying the portion of the Interrogatory You are unable to answer and providing whatever information You have regarding the unanswered portion.

5. If You object to, or otherwise decline to answer, any portion of any Interrogatory, please provide all information called for by the Interrogatory to which You do not object or do not decline to answer. For those portions of any Interrogatory to which You object or otherwise decline to answer, state the reason for such objection or declination. For example, if You object to any Interrogatory on the ground that it is too broad, please provide such information as You concede to be not overly broad. If You object to any Interrogatory on the ground that it would constitute an undue burden to provide an answer, please provide such requested information as can be supplied without undertaking such undue burden.

6. If You perceive any ambiguity in an Interrogatory, provide a brief statement of the nature of the perceived ambiguity and the interpretation You used to resolve it.

7. Pursuant to Federal Rule 26(b)(5), if You believe that any Interrogatory calls for information subject to a claim of privilege, then answer all parts of the Interrogatory to which You do not object; explain the basis for Your claim of privilege as to each part of the Interrogatory to which You object; and identify the general nature of the information withheld.

8. None of the Definitions or Interrogatories shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the Definitions or the Interrogatories.

9. These Interrogatories are continuing in nature. In the event that You become aware of responsive information in addition to, or in any way inconsistent with, that which You previously have provided, prompt supplementation of Your responses is required.

10. Google reserves the right to seek supplementary responses to the Interrogatories before trial.

11. Unless otherwise stated, the Interrogatories call for responsive information from the Relevant Period.

12. In construing the Interrogatories:

   a. Terms not specifically defined shall be given their ordinary meaning as You understand them to be used in the trade;

   b. The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, whenever necessary, to bring within the scope of any Interrogatory all information that might otherwise be construed to be outside its scope;

   c. The use of the singular form of any word includes the plural and vice versa;

   d. Words in the masculine, feminine, or neutral gender shall include each of the other genders;

   e. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope;

  f. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

## DEFINITIONS

1. To the extent the terms defined below are used in the Interrogatories, they should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules and the Local Rules. These Definitions are provided solely for the purposes of these Interrogatories.

2. The term "**Action**" refers to the above-captioned litigation, *United States, et al. v. Google LLC*, No. 1:23-cv-00108 (E.D. Va.).

3. The term **"Ad Buying Tool"** shall mean any third-party or In-House software, application, service, tool, or other interface (including DSPs and Ad Networks) through which an Advertiser Purchased or can Purchase Inventory.

4. The terms **"Ad Exchange"** or **"Supply-Side Platform"** or **"SSP"** shall mean a third-party or In-House product or service through which two or more Ad Buying Tools (at least one of which is not owned or controlled by the entity operating the Ad Exchange) placed or can place Bids in real-time auctions for Inventory offered for sale by or on behalf of two or more Publishers (at least one of which is not owned or controlled by the entity operating the Ad Exchange).

5. The term **"Ad Network"** shall mean a third-party or In-House product or service (other than an Ad Exchange) through which two or more Advertisers (at least one of which is unaffiliated with the entity operating the Ad Network) Purchased or can Purchase Inventory offered for sale by two or more Publishers (at least one of which is unaffiliated with the entity operating the Ad Network).

6.  The term **"Ad Selling Tool"** shall mean any third-party or In-House software, application, service, tool, or other interface (including Publisher Ad Servers, Ad Exchanges, Ad Networks, SSPs, Header Bidding, or Header Bidding Wrappers) through which a Publisher sold or can sell Inventory.

7.  The terms "**Ad Tech**" or "**Ad Tech Product**" shall mean a product, service, application, tool, solution or other interface that facilitates or is involved in the Purchase or sale of Inventory, including but not limited to a Publisher Ad Server, Ad Exchange, Ad Network, Header Bidding, Header Bidding Wrapper, DSP, SSP, other Ad Buying Tool, or other Ad Selling Tool. For the avoidance of doubt, this term includes In-House Ad Tech Products, as well as products or services offered by social media outlets (including but not limited to, for example, Facebook.com and Twitter.com) and certain other Publishers that enable the Purchase of Inventory on their Properties via their own In-House Ad Tech Products. This term does not include general-purpose software or systems on which an Ad Tech Product relies.

8.  The term "**Ad Tech Provider**" shall mean a person, firm, association, or other entity selling, reselling, licensing, or otherwise providing at least one Ad Tech Product, whether or not for a fee or other compensation.

9.  The term **"Advertiser"** shall mean a person or entity that, directly or through one or more intermediaries, places one or more Display Advertisements intended to advertise or promote a good or service offered by that person or entity, or otherwise convey such person or entity's desired message, on a Publisher's Property so that it is viewed by at least one User visiting such Property. For the avoidance of doubt, Advertisers typically, but need not, pay for the placement of such Display Advertisements.

10. The term **"Agency"** shall mean an advertising agency or similar consulting firm that is hired by an Advertiser to manage the Purchase of Inventory for one or more Campaigns. For the avoidance of doubt, although an Agency may use DSPs or other tools to manage such Campaigns, an entity operating a DSP shall not, solely on that basis, be deemed an Agency.

11. The term "**Bid**" shall mean an offer, made in response to a Query, to pay a specified amount in exchange for the right to render a Display Advertisement in a unit of Inventory.

12. The term **"Campaign"** shall mean one or more Display Advertisements that are targeted to particular types of Inventory, Users, or objectives.

13. The term **"communication"** shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

14. The term "**concerning**" shall mean relating to, referring to, describing, evidencing or constituting.

15. The term **"Connected Television"** shall mean devices or services that allow Users to watch television content served over the internet on a television screen, such as smart TVs (e.g., Samsung, TCL, Sony), media streaming devices (e.g., Roku Streaming Stick, Apple TV, Chromecast), or video game consoles (e.g., Xbox, PlayStation).

16. The terms **"Demand-Side Platform"** or **"DSP"** shall mean an Ad Buying Tool, that enables an Advertiser to automatically buy Inventory sold via Ad Selling Tools in real-time on an Impression-by-Impression basis. For the avoidance of doubt, an Agency trading desk shall be deemed a DSP for purposes of this definition.

17. The terms "**Display Advertisement**" or "**Display Advertising**" shall mean Online Advertising *other than* Search Advertising, and shall include Native, banner, in-app, or Video advertising, whether social or non-social.

18. The term **"document"** shall be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Federal Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

19. The term "**Feature**" shall mean any design, feature, limitation, policy, mechanism, innovation, improvement, optimization, or strategy related to how Ad Tech Products buy, sell, price, bid, or auction Inventory, how Ad Tech Products improve ad quality or Match Quality, how Ad Tech Products measure, or report on the effectiveness of Display Advertising, or how Ad Tech Products integrate or interoperate with other Ad Tech Products, whether owned or operated by the same entity or different entities.

20. The term "**Fees**" shall mean any money retained by a provider of Ad Tech Products, including via Take Rates, for services related to the purchase of Display Advertisements.

21. The term "**Google**" shall mean Google LLC, any current or former parents, subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents or representatives, and any other person acting on their behalf.

22. The term "**Header Bidding**" shall mean the use by a Publisher of code that is directly or indirectly called during the web browser's processing or rendering of the HTML header of a webpage (and prior to the invocation of a Publisher Ad Server) and that causes Queries to be sent to one or more Ad Exchanges, Ad Networks, DSPs, or other sources of demand.

23. The term **"Header Bidding Wrapper"** shall mean a Header Bidding management system.

24. The term "**identify,**" when referring to a person, shall mean to give, to the extent known, the person's full name, present or last known address, phone number, and e-mail address, and when referring to a natural person, additionally, the present or last known place of

employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

25. The term "**identify,**" when referring to documents, shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

26. The terms "**impact**" and "**effect**" shall include both qualitative and quantitative, direct and indirect meanings of those terms.

27. The term **"Impression"** shall mean the service of a single Display Advertisement to a single User.

28. The term **"In-House Ad Tech Product"** shall mean an Ad Tech Product created for a Publisher's, Advertiser's, or Agency's internal use.

29. The term "**including**" shall mean including but not limited to.

30. The term **"Inventory"** shall mean space offered by Publishers for the sale or placement of Display Advertising.

31. The term **"Investigation"** means Your investigation into Google's Ad Tech Products or Display Advertising business.

32. The term "**Match Quality**" shall mean the effectiveness of matching customer information parameters to a website event.

33. The terms **"Online Advertisement"** or **"Online Advertising"** shall mean advertising via the internet, including on websites, apps, and Connected Television. For example, both Display Advertising and Search Advertising are forms of Online Advertising.

34. The term **"person"** shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

35. The term **"Property"** shall mean a website, mobile application, or other product or service containing space that is sold or offered for sale for the placement of Display Advertising.

36. The term **"Publisher"** shall mean a person or entity operating a Property. For the avoidance of doubt, the owner of the Property shall be deemed the Publisher, even if it has out-sourced the sale of its associated Inventory, in whole or in part, to a third party.

37. The term **"Publisher Ad Server"** shall mean a third-party or In-House product, service, or system that is responsible for selecting (or attempting to select), on behalf of a Publisher, the Display Advertisement (or source from which such Display Advertisement shall be obtained) for a unit of Inventory. For the avoidance of doubt, a Publisher Ad Server may be owned and/or operated by a third-party Ad Tech Provider, or may be owned, developed, or operated by the Publisher or by a third party on behalf of or under contract with the Publisher. For the further avoidance of doubt, a system that creates or manages mediation chains constitutes a Publisher Ad Server for purposes of these Interrogatories.

38. The term **"Purchase,"** when used in connection with Inventory or Impressions, shall mean to obtain, directly or indirectly through one or more intermediaries, the right to render or display a Display Advertisement in a unit of Inventory, typically but not necessarily in exchange for a monetary payment.

39. The term **"Query"** shall mean a request to provide, or Bid to provide, a Display Advertisement to be rendered in a unit of Inventory, whether denominated as an "ad request," "Bid request," or otherwise. A Query may, but need not, request a Bid that will be considered before awarding the right to actually display a Display Advertisement to a particular Advertiser.

9

40. The term **"Relevant Period"** shall mean January 1, 2013 to present.

41. The term **"Search Advertising"** shall mean Online Advertising that is displayed in response to a User's search intent or search terms.

42. The term "**Take Rate**" shall mean the proportion of total revenue generated from Purchased Inventory that an Ad Tech Provider collects as part of its fee arrangement in connection with the Purchased Inventory.

43. The term "**User**" shall mean an end user visiting or using a Property, or a proxy for that end user (including, but not limited to, cookie identifiers or mobile ad identifiers).

44. The terms **"You"** and **"Your"** refer to "the United States and its various agencies and departments" that "are buyers of open web display advertising," as alleged in Paragraph 341 of Your complaint, or have used Ad Tech Products or Display Advertising during the Relevant Period, and all agents and representatives of the foregoing.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all agencies and departments of the United States that are "buyers of open web display advertising," as alleged in Paragraph 341 of Your complaint.

**INTERROGATORY NO. 2:** Identify all agencies and departments of the United States that Purchase Display Advertising that the United States does not consider to be "open web display advertising" (as alleged in Paragraph 341 of Your complaint), whether on Facebook or other Properties.

**INTERROGATORY NO. 3:** Identify all persons other than Google with whom You communicated as part of the Investigation, including the person's title, employer or affiliation, and the date(s) of Your communication(s).

**INTERROGATORY NO. 4:** Separately for each agency and department of the United States that is a "buyer[] of open web display advertising" (as alleged in Paragraph 341 of Your complaint) or has used Ad Tech Products or Display Advertising during the Relevant Period, provide the following information about each Ad Tech Product (whether provided by Google or any other Ad Tech Provider) that the agency or department used:

    a. the type of Ad Tech Product used;

    b. the Ad Tech Provider;

    c. the amount of ad spend by month;

    d. the amount of Fees or Take Rate by month;

    e. the dates during which the Ad Tech Product was used;

    f. all reasons for using and/or switching from one Ad Tech Product to another; and

    g. if applicable, all reasons for ceasing use of the Ad Tech Product.

**INTERROGATORY NO. 5:** Separately for each agency and department of the United States that is a "buyer[] of open web display advertising" (as alleged in Paragraph 341 of Your complaint) or has used Ad Tech Products or Display Advertising during the Relevant Period, identify each account associated with each Ad Tech Product used and provide:

    a. the dates during which each account was in use;

    b. all entities associated with each account;

    c. all account IDs (e.g., Google Customer IDs) associated with each account; and

    d. the individuals and entities, including external advertising Agencies, that had responsibility for and access to each account and the contact information for each individual and entity.

**INTERROGATORY NO. 6:** Separately for each agency and department of the United States that is a "buyer[] of open web display advertising" (as alleged in Paragraph 341 of Your complaint) or has used Ad Tech Products or Display Advertising during the Relevant Period, describe how each agency and department determines return on investment or return on advertising spend.

**INTERROGATORY NO. 7:** Separately for each agency and department of the United States that is a "buyer[] of open web display advertising" (as alleged in Paragraph 341 of Your complaint) or has used Ad Tech Products or Display Advertising during the Relevant Period, describe the impact of Header Bidding on its Display Advertising strategy or the cost effectiveness of its Display Advertising.

**INTERROGATORY NO. 8:** Separately for each agency and department of the United States that is a "buyer[] of open web display advertising" (as alleged in Paragraph 341 of Your complaint) or has used Ad Tech Products or Display Advertising during the Relevant Period, describe the Properties on which Display Advertisements have been placed, including any restrictions on the placement of Display Advertisements and any applicable criteria, settings, or parameters, or any instructions given to Agencies or Ad Tech Providers regarding the placement of Display Advertisements.

**INTERROGATORY NO. 9:** Provide a computation of the damages You seek in Paragraph 342(5) of Your complaint, including the names of and key contacts at each agency or department of the United States to which the damages computation applies, and the date range for the computation.

**INTERROGATORY NO. 10:** Identify all persons with relevant knowledge concerning Your claims and Your request for relief in this Action.

**INTERROGATORY NO. 11:** Identify all persons who supplied information to assist in responding to these Interrogatories and all documents relied upon by You in responding to these Interrogatories.

**INTERROGATORY NO. 12:** For each agency and department identified in response to Interrogatory No. 1, identify all persons employed by the agency or department who are involved in the purchase of Display Advertising, all advertising Agencies used by the agency or department in connection with the purchase of Display Advertising, and all employees of such advertising Agencies involved in the agency or department's purchase of Display Advertising.

**INTERROGATORY NO. 13:** For each agency and department identified in response to Interrogatory No. 2, identify all persons employed by the agency or department who are involved in the purchase of Display Advertising, all advertising Agencies used by the agency or department in connection with the purchase of Display Advertising, and all employees of such advertising Agencies involved in the agency or department's purchase of Display Advertising.

Dated: March 27, 2023                              Respectfully Submitted,

*/s/ Tyler Garrett*
_____
Eric Mahr (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

>CRAIG C. REILLY (VSB # 20942)
>209 Madison Street
>Alexandria, VA 22314
>Telephone: (703) 549-5354
>Facsimile: (703) 549-5355
>Email: Craig.reilly@ccreillylaw.com
>
>*Counsel for Google LLC*