```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3   --------------------------x
     UNITED STATES, et al.,      :    Civil Action No.:
 4                               :    1:23-cv-108
               Plaintiffs,       :
 5        versus                 :    Friday, March 31, 2023
                                 :
 6   GOOGLE LLC,                 :
                                 :
 7               Defendant.      :
     --------------------------x
 8

 9        The above-entitled hearing was heard before the
     Honorable John F. Anderson, United States Magistrate Judge.
10   This proceeding commenced at 10:35 a.m.

11                    A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:   GERARD MENE, ESQUIRE
                           OFFICE OF THE UNITED STATES ATTORNEY
13                         2100 Jamieson Avenue
                           Alexandria, Virginia  22314
14                         (703) 299-3700

15                         JULIA WOOD, ESQUIRE
                           MICHAEL WOLIN, ESQUIRE
16                         UNITED STATES DEPARTMENT OF JUSTICE
                           ANTITRUST DIVISION
17                         450 Fifth Street, NW
                           Washington, D.C.  20530
18                         (202) 894-4266

19                         TYLER HENRY, ESQUIRE
                           OFFICE OF THE ATTORNEY GENERAL
20                         OFFICE OF THE SOLICITOR GENERAL
                           202 North Ninth Street
21                         Richmond, Virginia  23219
                           (804) 786-7704

22

23

24

25
                                                              1
```

```
 1                     A P P E A R A N C E S:

 2   FOR THE DEFENDANT:    CRAIG REILLY, ESQUIRE
                           LAW OFFICE OF CRAIG C. REILLY
 3                         209 Madison Street
                           Suite 501
 4                         Alexandria, Virginia  22314
                           (703) 549-5354
 5
                           ERIC MAHR, ESQUIRE
 6                         TYLER GARRETT, ESQUIRE
                           ANDREW EWALT, ESQUIRE
 7                         FRESHFIELDS BRUCKHAUS DERINGER, LLP
                           700 13th Street, NW
 8                         10th Floor
                           Washington, D.C.  20005
 9                         (202) 777-4500

10   COURT REPORTER:       STEPHANIE M. AUSTIN, RPR, CRR
                           Official Court Reporter
11                         United States District Court
                           401 Courthouse Square
12                         Alexandria, Virginia  22314
                           (571) 298-1649
13                         S.AustinReporting@gmail.com

14        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

15

16

17

18

19

20

21

22

23

24

25
                                                         2
```

```
 1                    P R O C E E D I N G S

 2            THE DEPUTY CLERK:  United States of America, et

 3    al. versus Google LLC, Civil Action Number 23-cv-108.

 4            MR. MENE:  Good morning, Your Honor.  May it

 5    please the Court.  Gerard Mene with the U.S. Attorney's

 6    Office.  Your Honor, Julia Wood and Mike Wolin from the

 7    Department of Antitrust Division are here as well.

 8    Julia Wood will argue for the Government.

 9            THE COURT:  Thank you.  Good morning.

10            MS. WOOD:  Good morning, Your Honor.

11            THE COURT:  Thank you.

12            MR. HENRY:  Good morning, Your Honor.  Tyler Henry

13    from the Office of the Attorney General of Virginia on

14    behalf of the plaintiff states.

15            THE COURT:  Thank you.

16            MR. WOLIN:  And good morning, Your Honor.

17    Michael Wolin for the United States.

18            THE COURT:  Good morning.

19            MR. MAHR:  Good morning, Your Honor.  Eric Mahr,

20    Freshfields Bruckhaus Deringer, on behalf of Google.  I'm

21    here with our local counsel, Craig Reilly, and my

22    colleagues, Andrew Ewalt and Tyler Garrett.  Mr. Ewalt will

23    be handling the argument today.

24            THE COURT:  Well, before we get to the argument,

25    to the extent that it's necessary, I just want to ask a few
```

                                                              3

```
 1    questions about the status of certain things.  I also want

 2    to just make sure that you are clear that in any proceedings

 3    that we have in open court, unless you warn me and I agree,

 4    it is of the public record, and anyone who orders the

 5    transcripts or whatever is going to be entitled to get the

 6    transcripts.  So if at any point in time you think you're

 7    going to be treading on ground that you don't want disclosed

 8    immediately, we have people who have made orders for

 9    transcripts on expedited bases and things like that, you

10    need to let me know.  Okay.

11              MS. WOOD:  Understood.

12              THE COURT:  And we'll address that.  Okay.

13              What is the status of the protective order and the

14    ESI order?

15              MS. WOOD:  Your Honor, we are very, very close to

16    a protective order.  I think we have perhaps one final issue

17    we need to try to think through, which we were just talking

18    about in the hall before we came in.  But we're hopeful that

19    we could file that shortly.

20              THE COURT:  Is that both the protective order and

21    the ESI protocol?

22              MS. WOOD:  The ESI protocol, we've been exchanging

23    drafts.  I think that might follow by a few days behind the

24    protective order, but it is also very close.

25              THE COURT:  Okay.  The expert stipulation that
```

                                                                    4

```
 1    there was a reference to in the joint discovery plan, what
 2    is that, and just give me a heads-up as to what that is and
 3    when you may be anticipating getting that to the Court.
 4              MS. WOOD:  We also want to get that to the Court
 5    very soon in the next week or so.  That is a stipulation --
 6              THE COURT:  You're on spring break next week, if I
 7    remember that right.  It sounds like you have others that
 8    are going to be helping you do this?
 9              MS. WOOD:  That is correct, Your Honor.  That is
10    correct, Your Honor.  I suspect I'll probably be working a
11    few of those hours, but maybe somewhere warmer.
12              But we -- the expert stipulation is an agreement
13    among the parties as to how to treat materials relied upon
14    by the expert, what, in terms of disclosures, are exchanged,
15    materials that back up the expert reports.  Things like
16    that.
17              THE COURT:  Okay.  All right.  There was some
18    other issues in the discovery plan relating to experts, and
19    I just didn't know how that may or may not impact --
20              MS. WOOD:  And that would impact, Your Honor.  I
21    think your guidance on the dispute that we've teed up
22    vis-a-vis the experts in the discovery plan will be helpful
23    to resolving the final issues on the expert stip.
24              THE COURT:  Well, it may not be, but --
25              MS. WOOD:  Or it may not.
```

```
 1              THE COURT:  -- we'll get to that point at some
 2    point this morning.
 3              MS. WOOD:  Okay.
 4              THE COURT:  You know, I've reviewed the joint
 5    discovery plan that was submitted and the submissions that I
 6    got yesterday afternoon from both sides.  Obviously Google's
 7    submission was a little bit more expansive in dealing with
 8    each and every issue that there was some argument with the
 9    parties.
10              MS. WOOD:  Yes, Your Honor.  I had assumed that --
11    for things other than legal briefing, that we would address
12    those disputes in court.  If Your Honor would prefer that we
13    brief those in advance, I'll be mindful of that going
14    forward.  I just -- the only reason that we briefed that one
15    issue is because it was a legal issue with case law that we
16    thought Your Honor might benefit from.  The other things we
17    intend to rely primarily on argument here today.  But we'd
18    be happy to submit additional papers if that would be
19    helpful to the Court.
20              THE COURT:  Well, at this point I think I'm going
21    to be prepared to go ahead and rule on most of these without
22    any further argument or discussion, and then once we get
23    through the joint discovery plan, I want to take a few
24    minutes and just talk about some housekeeping and procedural
25    issues as well.
```

6

```
 1              MS. WOOD:  All right.

 2              THE COURT:  So if you have it in front of you, we

 3    can follow it page by page, and I will tell you what my

 4    rulings are going to be and the rationale behind some of

 5    those rulings.  I am going to need to have some further

 6    discussion on at least one of the issues when we get to it.

 7              But looking at the joint discovery -- the plan in

 8    paragraph 5B relating to the time period in doing the

 9    substantial completion of -- the production of the documents

10    that were done in the pre-complaint investigation, I am

11    going to modify that date, but it's going to be 14 days --

12    it's going to be 21 days after the entry of the protective

13    order.  You know, I am hearing that the protective order --

14    and, again, I haven't seen it -- has a time period to

15    providing notice to the parties and those kinds of things.

16    So I think 21 days is probably more reasonable than 14 if

17    you have to give notice, and then it takes time to give

18    people notice and those kind of things.  So I think the

19    21-day time period.

20              I don't want to make it -- if I made it 14, there

21    may be some delay in getting the protective order to me to

22    start doing that.  So I don't want to disincentivize the

23    parties in getting the protective order to me sooner rather

24    than later.  So for that paragraph, it's going to be that

25    the earlier of 21 days after the entry of the protective
```

1  order, or May 5, 2023.

2      MS. WOOD:  And, Your Honor, just to clarify, the

3  protective order that both sides have agreed to as of now, I

4  believe, would provide for two-days' notice to give the

5  third parties notice of the protective order, and then

6  10 days.  So 12 days of the 21 will be spent waiting on the

7  third party.  That would leave us 9 days to complete the

8  production.  And we will do our absolute best endeavor to

9  get that done.  If we have any problems with that, we'll

10 come back to the Court, Your Honor.

11     THE COURT:  All right.  You know, at this point,

12 everything will be produced unless you get an objection.

13     MS. WOOD:  Absolutely, Your Honor.

14     THE COURT:  Okay.  That should be the process

15 going forward.

16     You know, and I -- I think the issue in 6(A)

17 obviously is a very significant one that the parties have

18 briefed fully for me, and I've reviewed everything that

19 you've submitted there.

20     You know, I think the plaintiffs' position is the

21 more persuasive one, to be honest with you.  I think

22 requiring -- any discovery request to require the plaintiff

23 in this case to go to every agency within the custody or

24 control of the executive branch is overbroad.  I just -- I

25 don't see practically how that could be done, to be honest

8

1    with you.  I think limiting it to the agencies -- as they

2    describe it, the Federal Agency Advertisers, is an

3    appropriate way to deal with the situation given the limited

4    time period that the parties are going to have.

5            I will tell you, though, that this is not going to

6    be a revolving door.  And, I don't know, this reference to,

7    you know, if we lose on a damages issue, we're going to try

8    and supplement it and have somebody else come in and do

9    things, I mean, these are the eight, six or eight, or

10   however you want to count them.  This is not going to be you

11   can bring somebody in, and then you're not going to oppose

12   them to do discovery as to anybody new.  You're not going to

13   have enough time to do that.  You're going to have to deal

14   with, you know, the ones that you have set out here today.

15           If, for one reason or another, one or two of them

16   fall by the wayside, they fall by the wayside, and you go

17   with the remaining ones.  So, you know, they're the ones

18   that you decided to pursue, the ones you've named, you've

19   represented that they're the ones you're seeking damages on,

20   so I'm going to adopt the plaintiffs' position as to 6(A) on

21   the limitations of discovery.

22           6(C).  Again, while I think, in theory, that may

23   have some -- Google's position may make sense in theory, I

24   think, as a practical matter, I can't limit them.  I mean,

25   it is -- if you think they're going overbroad, if you think

                                                              9

1    they're asking for way too much, then you object and discuss

2    it.  But having a bar for only asking for the same

3    custodians that were done before and only refreshing certain

4    documents I think is too restrictive under the circumstances

5    of the case, so I'm not going to be including, in

6    paragraph C, 6(C) when I issue my Rule 16 scheduling order.

7          The same with F.  Again, you know, I think the

8    parties are going to be limited in the number of depositions

9    that they can take, and so hopefully they will use them

10   judiciously.  But, you know, having a complete bar as to an

11   individual who is deposed in his or her capacity during a

12   pre-complaint investigation, you know, isn't going to be

13   appropriate, so I'm not going to include paragraph F.

14          On G, the number of depositions.  You know, I

15   think Google's position on both of these, the (i) and (ii),

16   are probably the appropriate way to -- there are going to be

17   a lot of non-party fact witnesses.  Maybe not for the

18   Government, but certainly for Google.  And I understand

19   that, and I don't want to tie your hands too tight behind

20   your back.  I think 20 is a lot, obviously.  Your vague

21   reference to you may need more than that, we'll have to see,

22   but, you know, don't count on it.  So when you start

23   counting 20, get your best 20 in there, because there may

24   not be any more after that.

25          So I do think 20 -- I think 10, obviously, for

                                                              10

 1   party fact witnesses really should be enough.  Again, all of
 2   this is, you know, subject to me reconsidering upon a real
 3   showing of good cause, showing how you've used the limits
 4   judiciously and why you would really need to do any more
 5   than that.  But, for G, I'm adopting Google's position as to
 6   (i) for 10 depositions of party fact witnesses and 20
 7   depositions of non-party fact witnesses.
 8        Going down further in G having to do with the
 9   current and former employees of any executive branch agency
10   of the United States or only current and former employees of
11   the Federal Agency Advertisers.  Again, I think, given that
12   I have allowed up to 20 non-party fact witnesses and my
13   concern that that could be abused, to be honest with you, by
14   the defendant in this case by just launching tons of
15   discovery that then would be the obligation of the plaintiff
16   to then distribute to any and all federal agencies, I think
17   it's just probably too hard to deal with.  So I'm going to
18   deal with -- I'm going to adopt plaintiffs' position.  As to
19   the current and former employees, the Federal Agency
20   Advertisers will be the party witnesses for the purposes of
21   this paragraph going forward.  So you'll have that there.
22        I'm going to get -- I'm going to hold off on 8,
23   and we're going to deal with that one at the end because
24   that's the one I really need to have some substantial
25   discussion with the parties about.

                                                              11

1          Turning then to 13 -- if you skip 8, and I think
2     paragraph 13 is the only other one that I need to deal with
3     here.
4          And, again, this one -- I think the plaintiffs'
5     position here -- and, again, this kind of relates a little
6     bit more to what I was talking about earlier about potential
7     for abuse -- that requiring the plaintiff to accept service
8     as to any executive branch agency really could be difficult
9     to deal with.  So I am going to adopt the plaintiffs'
10    position as to 13, that service on any agency of the United
11    States that is not a Federal Agency Advertiser must be
12    effected by service in accordance with the applicable state
13    and federal law.
14         If you start running into problems -- and I know
15    sometimes serving the federal agencies can be difficult --
16    you can come back and we can talk about expediting that
17    procedure or other things there.  But I think under the
18    circumstances, that's what I'm going to do in the joint
19    discovery -- or in my Rule 16 order dealing with the joint
20    discovery plan.
21         Now, let's talk about paragraph 18, and the
22    evidentiary cutoff date.  You know, as I have tried to look
23    through and see what the various differences are in what you
24    have proposed, and then stepping back and trying to figure
25    out what is the problem that you all are trying to address

12

```
 1    and whether this does or doesn't do it and whether it is or

 2    isn't necessary is what I'm still struggling with, to some

 3    part.

 4            It appears that the parties can't agree on the

 5    initial part of this paragraph and that Google has

 6    non-public documents, and the plaintiff talks about

 7    information created or produced as opposed to data or

 8    information produced by any party.  That's what I see there.

 9    It looks like you all have agreed on subparagraphs C, D

10    and -- C, D, E and F, but the remaining ones were not able

11    to be agreed to.

12            Let me just hear briefly, first from you,

13    Ms. Wood, and then from you, Mr. Ewalt, about what is the

14    issue that you're trying to deal with, and why is it that

15    the Court needs to address that now.

16            MS. WOOD:  I appreciate that, Your Honor.

17            The issue we're trying to deal with is to find a

18    mutually-agreed time horizon on which the trial of this case

19    will be presented.  The changes in the tech industry and, in

20    particular, the ad tech industry happen at a rapid speed.

21    And, because of that, there could be -- in theory, the

22    defense could continually update the information including

23    and up to the trial itself.  And so we want to make sure

24    that --

25            THE COURT:  Isn't there an obligation to
```

                                                              13

1   supplement your discovery responses, though?

2          MS. WOOD:  Often, the discovery responses are --

3   by agreement of the parties, the time horizon is as of the

4   date from whatever the start date is until the date of

5   filing of the complaint.  That is a very standard practice

6   in many civil cases.

7          In this case, we have agreed to extend it to the

8   end of fact discovery instead.  That was also the order that

9   was entered by the district court in the Google *Search* case.

10  Because to allow it to continue through trial puts a

11  necessary -- it's an asymmetrical data advantage that Google

12  has.  As it's running the business, it is continually

13  adopting and adapting its behavior.  And so you can have a

14  deposition that locks in testimony on a particular subject

15  matter, or documents on a particular subject matter, and

16  then three days before the trial, something changes and the

17  witnesses or the documents can be produced that are brand

18  new and provide new information.  There is a very practical

19  problem with respect to the expert report exchange here as

20  well.

21         THE COURT:  Well, help me understand.  You know,

22  you're going to be trying this case at some point, probably.

23         MS. WOOD:  Yes, Your Honor.

24         THE COURT:  And, at that point, you will be

25  looking at historical information.

                                                            14

1          MS. WOOD:  Yes, Your Honor.

2          THE COURT:  And whether they did something up

3   until last week, just because they're not doing it today,

4   doesn't mean it isn't wrong; right?

5          MS. WOOD:  Correct, Your Honor.

6          THE COURT:  So why -- I mean, I'm just trying to

7   figure out how that really impacts your ability.

8          MS. WOOD:  Because if they are able to continually

9   produce new documents and new information about new

10  practices that, in their view, change the landscape or the

11  legal theories that the Government has provided, that's not

12  information we were ever able to obtain.  It evades the fact

13  discovery cutoff all together.

14          And, again, the parties are in agreement about

15  this principle.  There are only two areas principally where

16  we disagree.  They want -- they want to agree to that rule

17  vis-a-vis documents, data and information having evidentiary

18  cutoff at the close of fact discovery, but they want their

19  experts to be able to rely on documents we've never seen

20  when they oppose our experts.  We have 17 days to respond.

21          THE COURT:  Their expert has to rely on documents

22  they've never seen because they're going to be looking at

23  and analyzing your expert reports that they won't see until

24  after the fact discovery period ends.

25          MS. WOOD:  And that's why the document -- and

                                                          15

1   you'll see B in our position, a specific carveout to this

2   are the expert reports, including any analysis contained

3   therein and supporting materials provided in connection

4   therewith.  So that is carved out.

5           THE COURT:  It says:  "Provided, however, that the

6   expert witnesses may not rely on documents, data or

7   information that was not otherwise produced before the close

8   of fact discovery."

9           MS. WOOD:  Right.  So what I'm saying is, the

10  experts have a universe of factual information upon which

11  they can rely to support their expert opinion.  That

12  universe is delineated and contained as of the fact

13  discovery cutoff.  What they would like is for that -- and

14  so with that information, they may do analysis --

15          THE COURT:  That's assuming that the parties asked

16  for everything.  And, again, I mean, you only have an

17  obligation to produce what was asked for in discovery absent

18  your expert report, who then has to give his or her -- the

19  basis for his or her opinions.

20          MS. WOOD:  Well, I believe you'll find that both

21  sides have requested documents and information that the

22  other side intends to rely on, and that would apply to their

23  experts as well.  So if their expert is going to rely on

24  material that they haven't yet produced, that is one of our

25  document requests, and they should produce that before the

                                                          16

1    end of fact discovery so that we're not seeing it for the

2    first time when we have 17 days to respond to their expert

3    report.

4             It also, to allow an expert exception, would allow

5    the case to continue to have new -- the entire purpose of a

6    fact discovery cutoff and to have a universe of agreed

7    factual information from which the trial proceeds would be

8    eviscerated if we were unable to have some finite period of

9    time that both experts have to rely on.

10            So if we have material that our experts are going

11   to rely on, our expert reports aren't due until whenever

12   they're due on the schedule, October, but we're going to

13   have to produce that by September, because if our experts

14   are going to rely on it, they're entitled to see it.

15            But I think the same should be for them, because

16   they have an asymmetric data advantage because they are the

17   ones running the ad exchange, they are the ones running the

18   ad server.  They have log-level data.  They have a

19   tremendous data advantage that we can't overcome.  We can't

20   say, oh, they made this argument in their opposition report,

21   let's look at the data that would rebut that, because we

22   don't have access to that data.  We're stuck with what we

23   got during discovery.  And, otherwise, we would need to seek

24   additional discovery of the material that they produce in

25   response to the expert reports, and that, again, is counter

                                                              17

1    to the whole point of having a fact discovery cutoff.

2              Similarly, with respect to the

3    commercially-available information point that is in our --

4              THE COURT:  Subparagraph F.

5              MS. WOOD:  Yes.  Thank you, Your Honor.

6              Our only point there is, first of all, the term is

7    ambiguous.  To the extent it means subscriptions to industry

8    information that we don't have, sometimes it's behind a

9    paywall, sometimes governments are not even entitled to

10   access that, it may be available only to participants in the

11   industry.  Again, we would be handicapped because we

12   wouldn't be able to get that same information for ourselves

13   to respond to their complaint.

14             So the entire purpose of this provision is to make

15   sure we're on a level playing field, both sides produce what

16   they intend to rely on at trial, both sides produce what

17   they intend their experts to rely on.  And, yes, you can do

18   different things -- when they see our expert report and the

19   type of analysis that our expert does, they can figure out

20   how they want to do it, but they still have to do it within

21   the same evidentiary pot of information.  They're not

22   entitled to cherry-pick and bring new things in that we

23   don't have access to and we don't have the time or the

24   ability to rebut.

25             THE COURT:  Well, why doesn't their subparagraph B

                                                              18

1    address that appropriately?  "Documents or data (including

2    documents or data relied upon by an expert witness in his or

3    her report) produced by any party pursuant to the disclosure

4    obligations set forth in the scheduling order relating to

5    expert discovery or in any other agreement or order."

6         MS. WOOD:  I can tell you, Your Honor, that as I

7    understand -- if by B they mean to suggest that their

8    experts are not going to rely on material that was not

9    produced in fact discovery, then I agree, that takes care of

10   it.  In our meet-and-confer, we've had multiple sessions

11   about this.  That is not my understanding of their position,

12   but they can clarify that.

13        But if by B they mean they do not intend for their

14   experts to rely on material outside the fact discovery

15   cutoff, then I think our only agreement is about

16   commercially-available data.

17        The one other thing I should add just for

18   completeness, but I think this could be, you know, taken up

19   at a different date, is there may come a time, if there is a

20   liability finding here, that the Court would need to

21   consider appropriate equitable remedies.

22        We acknowledge that the scope of material that

23   might need to be reviewed for equitable remedy purposes

24   might need to reflect more current data.  And so we're not

25   taking the position that they're precluded forever from

                                                           19

```
 1    producing new material in that regard.  That was really
 2    honestly more for their benefit and for the Court's benefit.
 3    We didn't want the Court -- we wanted the Court to
 4    understand that we were sympathetic -- would be sympathetic
 5    to that concern.
 6              If they don't want that provision, I think we can
 7    deal with that when and if that occurs, but I think we are
 8    most concerned that experts not be allowed to rely on
 9    material outside the fact discovery cutoff.
10              THE COURT:  Okay.
11              MS. WOOD:  Thank you, Your Honor.
12              THE COURT:  Mr. Ewalt, let me have you address --
13    and I think it's a valid concern.  I mean, you know, in our
14    typical cases, the discovery cutoff date is both for fact
15    and expert discovery, so we don't have to deal with this
16    issue very often.  But the idea that fact discovery sets the
17    parameters upon which this case will end up being tried has
18    some appeal to me.  I mean, there has to be an end to it at
19    some point.  And, you know, if fact discovery has been
20    set -- we've set a date for when all the fact discovery
21    needs to be done.  Obviously if there's a motion to compel,
22    and something has to be done after that, that will, you
23    know, have to get swept into that.  But, you know, giving
24    someone the unfettered ability to continue to go out and
25    gather new facts and to do further fact-finding efforts or
```

                                                                 20

```
 1    whatever after the discovery cutoff date seems to be
 2    difficult to deal with.
 3            So help me understand why it is that you think
 4    something that has been outlined by Ms. Wood wouldn't be
 5    appropriate.
 6            MR. EWALT:  Thank you, Your Honor.
 7            So fact discovery is incredibly important, as is
 8    expert discovery in an antitrust case, and we will not have
 9    any information about the precise opinions and the ways that
10    the Government is supporting those opinions about how --
11            THE COURT:  Well, sure you will.  You're going to
12    get all the -- as Ms. Wood has indicated, you're going to
13    get all the facts upon which their expert is going to rely
14    by the end of fact discovery.
15            MR. EWALT:  Yes, Your Honor.
16            THE COURT:  You've got smart people, you've got
17    smart experts.  You know, they're as smart, probably, as the
18    plaintiffs' experts, as knowledgeable on these issues.  You
19    know, they'll know what their experts are going to say;
20    aren't they?
21            MR. EWALT:  Well, we hope they're smart, Your
22    Honor, but they're not clairvoyant.  And, as you
23    acknowledged, the plaintiffs are going to have top-shelf
24    experts.  We expect they're going to be creative.  The
25    Government's entire theory of liability in this case,
```

                                                              21

```
 1    frankly, is extremely creative, unprecedented in many ways.
 2    So we can't foresee until we see what's in those expert
 3    reports that the Government puts out in October exactly how
 4    they're going to try and prove some of these novel theories.
 5            So we need -- we, for sure, will be complying with
 6    all of the discovery, and we'll live up to our obligations
 7    there to provide things by the fact discovery deadline, but
 8    we need to have the ability -- if there is an unforeseen
 9    development from the plaintiffs' expert reports, we need to
10    have the ability to put on a defense to that, to make sure
11    that we can use additional documents or additional data if
12    necessary to fully defend ourselves from these theories that
13    we will not have any information about until October, a
14    month after the fact discovery cutoff.
15            If I may --
16            THE COURT:  Well, help me understand how that's
17    going to come up.  I mean -- and I have not studied the
18    document -- or the discovery that you all attached to some
19    of the pleadings that I got yesterday, but it appears
20    expansive.  It would be somewhat surprising that there would
21    be any significant data that would be out there that
22    wouldn't have already been produced.  You know, massaging
23    the data or running a different report, but having the basic
24    data there seems to be not an issue because it's only what
25    your expert is going to be doing with the data that has
```

1    already been produced.

2         MR. EWALT:  So there is a tremendous amount of

3    data.  In fact, this entire industry is data-driven.  And

4    some of that data has been requested, and some will be

5    produced.  Frankly, you know, so much has been requested

6    that it's just not possible to produce every piece of data

7    that's been requested.  But there will be a very large set

8    of data that is provided before the close of fact discovery

9    in this case, but what we don't know is how it's going to be

10   analyzed.  From this massive amount of data, what are the

11   facts that the plaintiffs' experts are going to pull out of

12   it, and what significance are they going to draw from those

13   facts?

14        Once we know that, once we see that in their

15   reports, we can understand whether those inferences are

16   appropriate, whether the analysis is appropriate, or whether

17   there's some additional facts that need to be provided to

18   put that into context to really understand the full picture.

19        THE COURT:  Where are you going to get those

20   additional facts?  That's the part I'm trying to understand.

21   You're not going to be able to do third-party discovery

22   because fact discovery is over.  So it's only facts that you

23   have that would be something that you could then go out and

24   try and, you know, one, that wasn't produced in discovery,

25   so it wouldn't have been responsive to a discovery request

                                                          23

1    that had been sent because, as you well know in our court,

2    if you have been served with a discovery request and you

3    don't provide that information in response to a discovery

4    request, your ability to use that information at trial --

5    for possibly other than impeachment purposes -- is almost

6    non-existent.  I don't want to say impossible, but it would

7    be very difficult for you to try and do.

8            So, I mean, what you're saying is that you would

9    only then be able and go out and find new facts after you

10   get their expert report, that is facts that were not

11   produced in discovery, to have your expert deal with and

12   provide some response in an expert report.  And I'm just

13   trying to figure out what kind of a fact would it be that

14   you wouldn't have produced in your responses to their

15   discovery request?

16           MR. EWALT:  Well, Your Honor, it's a great

17   question, and I understand you don't have a crystal ball

18   either here.

19           And so this is one point I wanted to make is that

20   this provision, paragraph 8 or Section 8 of the proposed

21   discovery plan here is one that I haven't seen in my career

22   before.  I haven't seen, at the very outset of a case, this

23   kind of cutoff.  It's my understanding this is very -- this

24   is not typical in this Court's experience either.

25           The one example that we've seen of this is the

24

1   *Search* case that the Government gave us.  And if Your Honor

2   compares the language that we've proposed in paragraph 8 to

3   what the language is that Judge Mehta ordered in the *Search*

4   case, you'll see that it's very, very close, if not

5   verbatim, in almost all respects.  Certainly all material

6   respects.

7           And I would say that the Government raised these

8   same arguments before Judge Mehta.  They were argued there,

9   they were briefed there.  The Government tried the same

10  playbook there, and Judge Mehta rejected it.  He entered the

11  order that he did, and that's the language that we've

12  proposed in paragraph 8.

13          THE COURT:  Well --

14          MS. WOOD:  Your Honor, may I respond to that?

15          THE COURT:  Well, I mean, I -- I'm looking, and

16  you're talking about the order amending scheduling and case

17  management?  I'm not as comfortable with the statement that

18  everything that you have put in your paragraph 8 suggestions

19  is what was done in the D.C. court.

20          I mean, it said:  At trial, you shall not rely

21  upon data or documents created after so-and-so or that came

22  in your possession after so-and-so unless they were produced

23  in response to one of plaintiffs' discovery requests

24  produced pursuant to a court order or otherwise agreed to or

25  for impeachment purposes.

                                                              25

    1              MR. EWALT:  It's paragraph 3, Your Honor, of Judge

    2    Mehta's order.

    3              THE COURT:  Paragraph 3?

    4              MR. EWALT:  Yes, Your Honor.

    5              MS. WOOD:  Your Honor, if I may assist.  There are

    6    two separate orders that issued from the *Search* case.

    7              THE COURT:  Maybe I'm looking at the --

    8              MS. WOOD:  I think you're looking at the amended

    9    scheduling and case management order.

   10              THE COURT:  Right.  Yeah.

   11              MS. WOOD:  And then -- that was from February of

   12    2021.  In May of 2022, there was an order regarding

   13    production deadline, motion to compel deadline and

   14    evidentiary cutoff.

   15              And, again, the procedure or posture there was

   16    different.  Fact discovery had already closed.  Expert

   17    discovery had already begun.  And Judge Mehta chose an

   18    evidentiary cutoff that was in the middle of expert

   19    discovery.  It was before the close of fact discovery, but

   20    it was after fact discovery when the issue was brought to

   21    Judge Mehta's attention, which is different than the

   22    position that we're in now.

   23              MR. EWALT:  And with respect, Your Honor, the

   24    position the Government is taking out here is even more

   25    extreme.  At the very beginning of the case before we've

                                                              26

1    seen any of this developed, you know, to say that we're

2    going to cut off what our experts can do at such an early

3    stage is more extreme than what was done in the *Search* case.

4    It is a different procedural posture, but that cuts in our

5    favor.

6              THE COURT:  Well, your expert is not going to be

7    able to rely on information that was requested in discovery

8    and not produced.

9              MR. EWALT:  Understood, Your Honor.

10             THE COURT:  And that goes for both sides, you

11   know, for the plaintiff and the defendant.

12             So, you know, that's where I'm looking at it in a

13   very broad-based view of, you know, that's the rule and why

14   is there -- everybody arguing about, you know, what's going

15   to happen here, what's going to happen there.

16             But, you know, I mean, I -- to be honest with you,

17   coming in, I was inclined to just say we're not going to

18   have a paragraph 8 at this time.  You know, I appreciate the

19   parties trying to work things out at this point, but, you

20   know, I think the golden rule is if you're going to use it,

21   you've got to produce it in discovery.  And, you know,

22   that's going to apply in this case.  And, you know, if it's

23   factual information and the party asks for it and it wasn't

24   produced, it's not going to be evidence in the case if the

25   party tries to come in and use it.

                                                          27

1          So I think, at this point, I'm going to not adopt

2     either side's paragraph 8.  I think if -- I'll let you

3     continue to have some discussions.  If you can focus the

4     issues a little bit more and want to raise this more as a

5     one-off issue to be maybe more fulsome briefing and really

6     oral argument on the issue, then I'll consider it.  But I'm

7     going to enter a Rule 16 scheduling order that adopts your

8     joint discovery plan in part.  It will outline which --

9     Google's, plaintiffs', whatever, positions as to certain

10    things, but it's not going to include -- I'm not adopting

11    either one of the party's suggested positions for

12    paragraph 8 on the evidentiary cutoff.

13         Again, if you want to continue to have those

14    discussions, since you are sort of in agreement in some

15    ways, but, you know, the overarching rule is factual

16    information requested in discovery has to be produced.  You

17    know, it's not -- as you've already, both sides, complained

18    about a little bit, not a whole lot of time between fact

19    discovery and expert discovery either, so there shouldn't be

20    a whole lot of new facts that get generated or anything like

21    that in theory.  So take that as some sort of guidance, and

22    if you want to continue to have some discussions, we can do

23    that.

24         All right.  So I think that takes care of the --

25         MS. WOOD:  Your Honor, may I ask one point of

                                                          28

```
 1  clarification?

 2            THE COURT:  Sure.

 3            MS. WOOD:  So if you look at our position 8(B).

 4            THE COURT:  Okay.

 5            MS. WOOD:  Just for purposes of clarity, that

 6  would be what we would intend to provide or outline in the

 7  expert stipulation that we're trying to get to, Your Honor.

 8  And I think it might be helpful to the parties if you could

 9  tell us if that 8(B) would be appropriate in the context of

10  our expert stipulation, consistent with what Your Honor just

11  said.

12            MR. EWALT:  And, Your Honor, I'm not sure it is

13  consistent with what Your Honor just said.  I heard Your

14  Honor talk about an obligation to produce documents that

15  were requested --

16            THE COURT:  Right.

17            MR. EWALT:  -- and that if documents are not

18  requested -- or, excuse me.  I took Your Honor's statement

19  to mean that if a document was requested and not produced,

20  it would not be usable by the experts usable at trial.

21            THE COURT:  Right.

22            MR. EWALT:  What this statement 8(B) doesn't cover

23  is documents that were not requested.

24            THE COURT:  Right.

25            MS. WOOD:  But if we request all documents that
```

                                                              29

1    your experts intend to rely upon -- which I believe we have,

2    but if we haven't, we certainly will -- then that would

3    cover it.

4         In other words, I don't want to play a game where,

5    oh, you forget to word it the right way.  Or, as Mr. Ewalt

6    just correctly said, we're going to have -- we've requested

7    very broad data.  If they say that's too voluminous, I can't

8    get you that broad data and we agree, okay, we'll take some

9    subset, and then their expert relies on material beyond the

10   subset we agreed to, I don't think that should be used

11   against us to say that was never requested.

12        THE COURT:  Well, I'm not ruling on any discovery

13   requests now.  But if there is a discovery request about

14   producing all documents on which your expert relies and they

15   respond to that and they don't produce documents -- they

16   produce new documents that the expert's relying on facts,

17   then we'll deal with that issue as to whether that can be

18   done or not.

19        MS. WOOD:  Thank you, Your Honor.

20        THE COURT:  And, again, you know, this typically

21   comes up in the context of reviewing both fact and expert

22   discovery at the same time, but you convinced me that we

23   should bifurcate, so we need to figure out, you know, the

24   appropriate way to do that.  But, you know, we'll defer on

25   that issue at this point.  But, you know, the theory is that

30

```
 1    if it's asked for, not produced, it can't be used.  Okay.

 2              Let me just take a couple of minutes and run

 3    through some housekeeping or procedural things and just make

 4    sure we're all on the same page going forward.

 5              I will be getting out today a Rule 16 scheduling

 6    order.  It will sort of be a little bit more complicated

 7    than some of mine, in that it will address adopting this

 8    paragraph, this paragraph, whatever.

 9              You know, I really want you to have everyone who's

10    working on this case -- and I don't know that it grows by

11    the day with people making notices of appearances left and

12    right.  It's really important that everybody who's working

13    on this case have it and read it.  You know, I know there

14    will be a lot of people doing different things and all that

15    kind of stuff, but, you know, it's not going to take that

16    long for somebody to read it, make sure they understand it

17    and know what we are expecting in this case.

18              When I say "everybody," I don't just mean the

19    lawyers, I mean your support staff, too, to be honest with

20    you.  I think it's as significant that they have the

21    opportunity to look at it and understand when they file

22    things, what -- that isn't necessarily the end of it.

23    Things have to be done to follow on to that.

24              Let me just go over a few things and make sure

25    that we're all understanding this.  There is, and I enforce,
```

                                                                31

```
1    the good-faith consultation requirement.  And that really
2    means a good-faith attempt to resolve issues.  And, in the
3    past, I've run into issues about people not being responsive
4    or, you know, six different people dealing with six
5    different issues and those kinds of things like that.  I
6    hope I don't have to do this in this case, but, if
7    necessary, I will appoint -- have you designate a person who
8    is the one person of contact for each side.  You all can
9    talk about whether you want to do that or not.  But, you
10   know, it can't be I'll get back to you in a couple weeks.
11   It's, you know, okay, thank you, I need to talk to my
12   client, or I need to deal with -- you need to be responsive
13   with that.  It can't be sending an email at, you know,
14   1 p.m. and filing a motion at 5 when you didn't get a
15   response.
16          But, again, the counter to that is, you can't let
17   it go on forever either.  At some point you've got to bring
18   a motion.  And don't get yourself in a situation where
19   everybody is kicking the can down the road and then it gets
20   too late.  So you have to try -- you have to certify that in
21   your pleadings that you've done that.
22          I will -- on occasion I get motions to compel and
23   other motions that don't have that on a Friday afternoon.
24   On a Monday, I'll enter an order, you know, denying it
25   without prejudice, saying it hasn't met the requirements of
```

32

```
 1    the local rules.  So make sure you check that box, okay,

 2    that it's a substantive check and not just an off-the-hand

 3    check.

 4            You will see, and it probably has been shared in

 5    other cases, that we will -- I will be having what we call

 6    an expedited briefing schedule for motions that I will be

 7    hearing.  Again, this is my schedule, not Judge Brinkema's

 8    schedule.  Judge Brinkema will be deciding dispositive

 9    issues which require the full briefing of the 14/6 or

10    whatever you agree to on those kinds of timetables.

11            The expedited briefing schedule that's set out in

12    the scheduling order is an option; it's not a requirement.

13    I suggest that in some instances it is very appropriate, you

14    know, three or four interrogatories, four or five document

15    requests, you know, do we take this deposition, not take

16    that deposition, those kinds of things.

17            If it is a very complicated matter or one

18    involving a lot of different issues, it is in your interest

19    and my interest to not necessarily do this on what I would

20    call the expedited schedule.  Just to let you know, what

21    that means is, the expedited schedule that you can file

22    something by 5:00 on Friday.  And that isn't an aspiration,

23    that's a rule, it's 5:00 on Friday.  The oppositions are

24    then due on 5:00 Wednesday.  And the replies can be filed on

25    Thursday as quickly as you can get them.
```

                                                                33

1          You know, if you're going to choose to do an

2     expedited briefing schedule, you need to prepare -- be

3     prepared to, you know, get the opposition.  And if you want

4     to file a reply, you know, get it, analyze it and prepare a

5     reply in time for me to get it and read it.  As you saw

6     today, you know, I'm not just waiting around for people to

7     give me stuff on Thursday afternoon to deal with you as my

8     only motion on Friday.  We have a number of different cases,

9     and this is not my only case.  So take that into

10    consideration.  But if you're going to, you know, take

11    advantage of that, be prepared to take advantage of it.  And

12    I typically will have the arguments and will hopefully rule

13    from the bench in doing all those kinds of motions.

14          And that is kind of a complicated schedule.  If

15    you want to do it two weeks out, everybody gets a little bit

16    more time.  If you do it three weeks out, it will be

17    outlined in there.  It's a little bit more complicated, but

18    it will give you the sense as to what that is.  But, again,

19    the point is, you don't have to use it, be judicious when

20    you use it, make sure you understand what the issues are.

21          There is a requirement that a copy of anything

22    that gets filed electronically needs to be delivered to my

23    chambers or delivered to the courthouse for me.  Paper copy.

24    So if it gets filed on Friday, I need it on Monday; if it

25    gets filed on Wednesday, I need it on Thursday.  If you're

34

1  filing your reply brief, it makes a lot of sense for you to

2  try to get it to me on Thursday since I'm going to be, you

3  know, hearing a motion on Friday morning at 10:00.  So think

4  about that.

5          Motions to seal.  Again, we mentioned earlier

6  about everything in the public record is going to be open to

7  the public.  We have a fairly cumbersome process in our

8  Local Civil Rule 5 for parties filing things under seal.  I

9  suspect, at some point in this case, there will be the need

10 for a party to want to file something under seal.  I would

11 encourage you that if you think there's going to be a lot of

12 information that you want to file under seal, that you

13 designate somebody to deal with those issues.  Okay.

14         I have found in the larger cases that things go

15 more smoothly if you have a person who is the motion-to-seal

16 person, and he or she knows what the process is and can get

17 it done quickly and appropriately under the circumstances.

18 Again, I'm not trying to run your case for you; I'm just

19 giving you the experience of what I've seen in big cases and

20 how it helps things go more smoothly.

21         Just to sort of remind you of what our local rule

22 says, that if you're going to file something under seal, you

23 file it electronically under seal.  So it's not like you're

24 delivering a paper copy to the Court with an envelope and,

25 you know, to-be-filed-under-seal kind of thing, as in the

                                                          35

1  old days.

2          You file it electronically under seal.  At the

3  same time, you need to file a motion to file under seal, a

4  memorandum in support of that motion to file the document

5  under seal.  And that memorandum, the local rule describes

6  what it has to include in it.  You have to include, you

7  know, the rationale behind what it is that you want to file

8  under seal, and it has to address the appropriate standard

9  to be applied.

10          The Fourth Circuit has set out two different

11  standards for filing material under seal.  Discovery-related

12  issues that are typically ones that I would hear, it's the

13  common law standard where there has to be, you know, an

14  interest that is strong enough to overcome the burden for

15  public access.

16          The more stringent standard in filing any type of

17  dispositive issues, whether it be a motion to dismiss or a

18  motion for summary judgment, is the First Amendment standard

19  where there has to be a compelling governmental interest.

20  And you have to not only address that standard, but how --

21  what you are filing is narrowly tailored to that specific

22  compelling governmental interest.

23          So you've got to file the motion, the memorandum,

24  the proposed order, and then a separate notice of filing

25  under seal.  If you don't file it, you don't file a notice

                                                          36

1   of a hearing for motions to seal.  You just file this notice

2   of filing under seal.  That is to give the public notice

3   that you've now filed this request to have some information

4   with restricted access.

5          You should be filing a redacted version.  And,

6   again, if this is, you know, a 20-page brief and you need to

7   file certain sections and certain paragraphs, you need to

8   redact that information and file the redacted version in the

9   public record.  So you have the redacted brief, the under

10  seal brief, the notice, the motion, the memorandum and the

11  proposed order.

12         The process that then gets followed, and the

13  notice requires, that anybody will have seven days to file a

14  response to the notice.  So the document will remain under

15  seal until further order of the Court.  I typically calendar

16  those, and after seven or eight days comes, I then will look

17  at that and decide whether, you know, the motion to seal is

18  appropriate or not and then enter the orders in chambers.

19         I will alert you to the fact that Judge Brinkema

20  is very sensitive about information being filed under seal.

21  Some of our district judges are more sensitive than others;

22  she is one that pays a lot of attention to this.  So I, in

23  turn, pay a lot of attention to this in the cases that are

24  in front of Judge Brinkema, because you don't want to and I

25  don't want to be in the position of filing something or

1  allowing something to be filed under seal and then at some
2  point later on she determines why was that.  And typically,
3  in some instances, you can meet the lesser standard, but you
4  may not be able to meet the higher standard.  So just
5  because I may allow something to be filed under seal in a
6  discovery motion, one, does not mean that she will allow it
7  to be filed under seal or to remain under seal in a
8  dispositive issue.  And even if she does that, that at any
9  time in trial that there would be any ability to keep that
10  information restricted access.  So that's a sensitive issue
11  for the parties, but it needs to be, you know, followed and
12  addressed.
13        If you are filing something under seal, there will
14  be a document or an information.  And you're doing that
15  because the other side designated it as confidential.  You
16  know, you need to follow the same procedure, that as you
17  file the complete version, the redacted version, a notice, a
18  motion, a memorandum of proposed order.
19        The memorandum typically is pretty brief.  It says
20  I'm doing it because I have to under the terms of the
21  protective order, you know, either I agree or I don't agree
22  or I don't take a position on whether it should or shouldn't
23  be filed under seal.  You can -- if you disagree, you can
24  put it in there, you know, you don't think it meets the
25  appropriate standard, but you're doing it as required.

38

1            In those instances, the designating party, that is

2    the party that marked it confidential or is requiring to

3    file a motion, has to file something within the 7-day time

4    period to support it.  Again, having somebody who's paying

5    attention to these issues is significant because there have

6    been times where the eight days has run and somebody files a

7    motion and said, you know, I don't care, I did it because

8    they designated it and nobody came in to support it and I

9    unsealed it.  And sometimes they didn't care; sometimes they

10   did care and forgot about it.  So try and make sure

11   everybody's paying attention to that.

12           You know, I will say, our clerk's office is very,

13   very good about if a mistake is made.  If you contact them,

14   they will help you remedy that situation.  And, you know, I

15   will say, obviously when you're filing anything under seal,

16   you want to make sure that, you know, someone who knows what

17   they're doing is involved in the process.  But there have

18   been times where things inadvertently get filed in the

19   public record that were intended to be filed under seal.  If

20   that happens, call the clerk's office.  They will probably

21   contact me and say is it okay if I just, you know, seal it

22   right now, and then we'll deal with the paperwork later, and

23   typically I allow that, and then we'll figure out what to do

24   afterwards.

25           So, you know, it's -- you want to avoid that

 1  having to happen, but it's not the end of the world if it

 2  happens.  Just contact the clerk's office, and they will

 3  help you address that issue pretty quickly in that regard.

 4         We have this Friday motions day, and so, you know,

 5  again, you know what the expedited schedule or current

 6  briefing schedule is.  There are three Fridays between now

 7  and the end of the year that I know that I am not hearing

 8  motions.  There may be others, but these are the ones that I

 9  already know, and so I just want to give you a heads-up on

10  that so that you don't make plans or file motions and set it

11  for these dates and then I have to move them.

12         I will not be hearing motions on April 21 or 28 or

13  June 30th.  So, you know, I'm hopeful that you will get all

14  the -- you will be starting your process of discovery and

15  not in a position to where you're going to need my time and

16  attention until early May.  But, you know, just keep that in

17  mind.  Probably the first time I will be able to hear any

18  substantive motions and objections or other things relating

19  to discovery that has now been served probably isn't going

20  to be until, I guess it's May 4th, whatever that Friday is,

21  the first Friday in May.

22         Okay.  What other issues would be helpful for us

23  to discuss while we're together today?  Ms. Wood, anything?

24         MS. WOOD:  No, Your Honor.  I think -- I think

25  that covers it for today.  We may have some things that we

                                                              40

```
 1    need to tee up, but they -- the parties will work out an
 2    agreement on that and --
 3              THE COURT:  Yeah.
 4              MS. WOOD:  -- get to you promptly.
 5              THE COURT:  Well, and I -- well, I don't want to
 6    get ahead of myself, but, you know, if issues get -- I
 7    just -- as some of you may know, the magistrate judges here
 8    in our court, there's a week a month that we are on criminal
 9    duty, and those are very busy times on the criminal side and
10    allow very limited time on the civil side.  I will just
11    alert you that there may be a Friday that you notice
12    something on that, if I'm the duty judge that Friday, that I
13    may continue the hearing until Monday just because I may not
14    be prepared to rule on Friday.  I hope that isn't the case,
15    you know, but don't be shocked if on a -- you notice
16    something for a Friday and I reach out and say, you know,
17    it's going to be tough for me to do it, but I'll try and do
18    it the following Monday, you'd be -- prepare it over the
19    weekend to be able to deal with it on Monday, but we'll see
20    how it plays out.  Okay.
21              MS. WOOD:  Thank you, Your Honor.
22              THE COURT:  Mr. Mahr, Mr. Ewalt, is there anything
23    from --
24              MR. MAHR:  Nothing further for Google.  We'll try
25    to get the protective order out to you today and the other
```
                                                                    41

1  documents next week.

2          THE COURT:  That's great.  I will act upon them

3  quickly.  I will review them and then, if appropriate, act

4  upon them quickly.  So if you get it to me either later

5  today or tomorrow -- or Monday, I'll get it entered

6  certainly by Monday.  Okay.

7          MS. WOOD:  Thank you, Your Honor.

8          THE COURT:  You all have a nice weekend.

9            (Proceedings adjourned at 11:34 a.m.)

10          -----------------------------------

11  I certify that the foregoing is a true and accurate

12  transcription of my stenographic notes.

13                          *Stephanie Austin*

14                          Stephanie M. Austin, RPR, CRR

15

16

17

18

19

20

21

22

23

24

25

                                                            42