IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| *Defendant*. ) | |

**DEFENDANT GOOGLE LLC'S BRIEF IN SUPPORT OF COORDINATION ORDER**

Defendant Google LLC ("Google") submits this brief in support of its proposals set forth in the proposed Order Regarding Coordination of Discovery ("Coordination Order") attached hereto as Exhibit A. The Coordination Order would establish procedures for more efficient coordination of discovery in the above-captioned case and the parallel multidistrict litigation pending before Judge P. Kevin Castel in the Southern District of New York. *See In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (S.D.N.Y.) (the "MDL"). Google will also be filing today a pre-motion letter requesting entry of an order with the same provisions in the MDL. Under paragraph 10,[1] the Coordination Order would not come into effect unless and until it has been entered in both this case and the MDL.

**I.   Background**

Following a three-plus year investigation of Google's ad tech business, the United States Department of Justice ("DOJ") and certain states (together with DOJ, the "Virginia Plaintiffs") brought antitrust claims against Google in the Eastern District of Virginia on January 24, 2023.

---

[1] Unless otherwise indicated, references to "paragraphs" correspond to provisions in the Coordination Order.

They did so despite the existence of a group of substantially similar cases concerning the same alleged conduct pending in the Southern District of New York.

Substantial progress had been made in the MDL. Of relevance to the Coordination Order, in September 2022, Judge Castel dismissed MDL State Plaintiffs' claim that Google's Network Bidding Agreement ("NBA") with Meta Platforms Inc. ("Meta") (formerly known as Facebook) violated Section 1 of the Sherman Act and pruned allegations related to other federal antitrust claims. *See* MDL Dkt. 308.[2] Judge Castel subsequently stayed discovery related to the NBA. MDL Dkt. 394 at 1. Since then, other plaintiffs in the MDL have filed amended complaints containing similar NBA-related claims, and Google has moved to dismiss them all. *See* MDL Dkt. 446, 449, 451, 453, 455, 457, 460, 462.[3]

Google sought transfer of this case to the Southern District of New York so that discovery could be most efficiently coordinated and to avoid the risk of inconsistent rulings presented by substantially similar cases being litigated in two different courts. Virginia Plaintiffs opposed that motion, arguing that the United States should be "unencumbered by inclusion in an MDL or coordination with private actions," EDVA Dkt. 47 at 2. They prevailed, and so this case is now proceeding in parallel with the MDL, but on a faster schedule. Fact discovery will close on September 8, 2023, expert discovery will conclude on January 12, 2024, and a pretrial conference will be held on January 18, 2024. EDVA Dkt. 69.

In the six weeks since the Court denied Google's transfer motion, Google and Virginia Plaintiffs have negotiated and submitted a Joint Discovery Plan, a Protective Order, an Expert

---

[2] Docket entries in the MDL are referred to as "MDL Dkt." and docket entries in this case are referred to as "EDVA Dkt."
[3] Meta also moved to dismiss NBA-related claims in cases where it was named as a defendant. *See* MDL Dkt. 460, 462.

Stipulation, and an ESI Order. EDVA Dkt. 87, 98, 106, 142. As a condition of stipulating to the Protective Order, Virginia Plaintiffs insisted that Google meet and confer regarding "how to coordinate this action and the related actions now pending in the U.S. District Court for the Southern District of New York," "mak[e] good faith efforts to complete a meet and confer process with the parties in the MDL," and present its position to this Court by today. EDVA Dkt. 96 ¶ 5.[4]

The Coordination Order represents the culmination of that process. Google and Virginia Plaintiffs were able to reach agreement on many aspects of coordination to increase efficiency and minimize the burdens on party and non-party witnesses, but a few important differences remain. Google and Virginia Plaintiffs also met and conferred with MDL Plaintiffs and Meta. Although MDL Plaintiffs indicated a superficial willingness to coordinate, they did not propose any specific language to include in the Coordination Order. *See* Ex. B. Meta made specific proposals, but only today, too late in the process for Google to take a position on its requests. *See* Exs. C, D.

## II.    Google's Proposed Coordination Order

Google and Virginia Plaintiffs have largely agreed on procedures for coordinating discovery across the cases. Although the Coordination Order may appear at first glance to contain many contested issues, there are only three main areas of dispute.

- First, should a party be able to question witnesses at a deposition when it has not noticed or cross-noticed the deposition and when it is not a party in the case for which the deposition has been noticed?

- Second, should Google witnesses be subjected to 14-hour depositions, when coordination should allow all parties to develop the record in 12 hours?

- Third, should Virginia Plaintiffs be able to use discovery that was produced in the MDL after the close of fact discovery in this case to impeach witnesses at trial, while preventing all other uses of that evidence?

---

[4] Virginia Plaintiffs likewise agreed to present their position today, EDVA Dkt. 96 ¶ 5, but they have informed Google that they now intend to file a responsive brief on Wednesday, May 3.

The Court should answer all of these questions in the negative and adopt the language that Google has proposed in the Coordination Order.

### A. Right to Question at Depositions

Paragraphs 4 and 5 of the Coordination Order identify which parties may question witnesses at depositions and establish time limits for questioning. Google's proposals allow any party to question a witness, as long as that party either (a) notices or cross-notices the deposition; or (b) is a party in the case(s) in which the deposition is noticed or cross-noticed. That approach is consistent with the joint discovery plan in this case (EDVA Dkt. 87 ¶ 6.H), which allows questioning by a noticing party and other parties *to that case*.

Virginia Plaintiffs propose to expand the number of parties that may question witnesses at a deposition to include parties that choose not to notice or cross-notice the deposition and that are not even parties to the case in which the deposition was noticed. For instance, if Google noticed the deposition of one of the named members of the publisher class in the MDL, then Virginia Plaintiffs claim the right to question the witness, even though doing so would limit the time available to other parties *in that case* (i.e., MDL Plaintiffs and Meta) to question the witness. *See* ¶ 4(a).

The effect of Virginia Plaintiffs' proposal would be to evade the limits on depositions that have been established in both this case and the MDL because parties would be able to participate in depositions without having them count against their total number of depositions. *See* ¶ 3(d). Having chosen to litigate in the Eastern District of Virginia, Virginia Plaintiffs should not be permitted to go beyond the deposition limits set in this case. Nor should they get free rein to

4

participate in discovery in the MDL after electing to bring their case in another district.[5] By the same token, MDL Plaintiffs should not gain the advantage of questioning witnesses in this case without it counting against their deposition limit merely because Virginia Plaintiffs brought their case outside of the Southern District of New York.

Although Google's proposal would allow it to question witnesses at every deposition, Google would have that right even without a coordination order because it is a party in both this case and the MDL. There is nothing unfair about allowing Google to participate in every deposition in every case where it is a defendant. And Google's proposal allows every other party the same opportunity: to participate in every deposition in every case where it is a plaintiff or a defendant.

Virginia Plaintiffs' proposal is unfair to Google not only because it would give them unjustified advantages, but also because it would force Google to share limited time at non-party depositions with MDL Plaintiffs and Meta. For example, if Virginia Plaintiffs noticed the deposition of one of Google's ad exchange competitors, then in the absence of a coordination order, Google would be able to question that competitor for one hour. EDVA Dkt. 87 ¶ 6.H. Under Virginia Plaintiffs' proposal, however, Google would have to share that single hour with both MDL Plaintiffs and Meta. *See* Ex. A ¶ 5(a).[6]

### B. Time Limits for Google Depositions

Paragraph 4 specifies how much longer (beyond the 7-hour default) depositions of a Google employee may be extended when they are noticed in both this case and the MDL. Google has compromised and proposed that those depositions could be extended to 12 hours, and Virginia

---

[5] To the extent that a deposition taken in the MDL is important to their case, Virginia Plaintiffs would be able to question the witness by cross-noticing the deposition. *See* ¶ 3(a), (c).

[6] Meta would not be able to question the witness while discovery related to the NBA is stayed, ¶ 1(bb) (excluding Meta from definition of "Party" while stay is in effect), but MDL Plaintiffs would be able to cut into Google's questioning time in all circumstances.

Plaintiffs demand 14 hours. *See* ¶ 4(b), (c), (e). Although Virginia Plaintiffs seem to believe that Google's proposal would prejudice them, they would actually benefit from having 5 more hours of testimony from a Google witness than they would have absent coordination. *See* Fed. R. Civ. P. 30(d)(1). And given the substantial overlaps between this case and the MDL, there is no reason why 12 hours with any Google witness would not allow ample time to explore all of the relevant issues if Virginia Plaintiffs and MDL Plaintiffs avoid duplicative questioning.

      C.      **Use of Discovery Produced After Fact Discovery Closes in This Case**

Fact discovery is scheduled to end on September 8, 2023 in this case, EDVA Dkt. 94 ¶ 1, and on June 28, 2024 in the MDL, MDL Dkt. 394 ¶ 5. Due to that divergence, it is likely that documents will be produced and that depositions will be taken in the MDL after fact discovery closes in this case. Virginia Plaintiffs propose that none of that evidence—however probative it may be—should be available for any purpose in this case, except for impeachment at trial. *See* ¶¶ 2(e), 6(d). Google's proposal would allow that evidence to be used not only for impeachment, but also for any other purpose permissible under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. *See id.*

Google's approach advances the truth-seeking function of litigation because it erects no obstacles to probative evidence being used. By contrast, Virginia Plaintiffs' proposal would exclude Google documents and testimony when it could undermine their claims, while still allowing them to use Google documents and testimony to try to impeach Google witnesses at trial. Such one-sided procedures would not promote the just resolution of these matters.

In addition, Virginia Plaintiffs' proposal would exacerbate the risk of inconsistent rulings that arose from their decision to avoid bringing their case in the Southern District of New York.

They now seek to compound that risk by insisting that the cases be decided on different evidentiary records.

Google's proposal respects the established schedule for this case. That schedule requires fact discovery in that case to be completed by September 8, 2023, and nothing in Google's proposal would change that. The parties would not be able to serve any further document requests or interrogatories in this case after that deadline. Nor would they be able to take additional depositions in this case. To be sure, discovery would continue in the MDL, but Google has not tried to limit Virginia Plaintiffs' access to that discovery, *see* ¶¶ 2, 3(f), 6(b)-(d), even though they would have no right to it absent coordination.[7]

### III.   MDL Plaintiffs' Claims of Prejudice Are Overblown

Google and Virginia Plaintiffs met and conferred with MDL Plaintiffs about discovery coordination. Although Google and Virginia Plaintiffs provided drafts of the Coordination Order to MDL Plaintiffs, MDL Plaintiffs declined to propose edits to those drafts. Instead, they voiced general concerns about coordination, which they memorialized in an April 26, 2023 letter (attached hereto as Exhibit B).

In a nutshell, MDL Plaintiffs are amenable to coordinating discovery—but only insofar as it benefits them. For example, they would be ready to receive easy access to all discovery from this case. Ex. B at 2. But MDL Plaintiffs do not agree to any coordination that might minimize the burdens that discovery places on Google and third parties because they believe that they have not

---

[7] Apart from the three main areas of dispute discussed in text, Google and Virginia Plaintiffs also disagree about whether Google should be required to provide Virginia Plaintiffs with a copy of any expert report that they serve in the MDL before the due date for expert reports in the MDL. *See* ¶ 7. Virginia Plaintiffs insist that the Court should impose that requirement. Google would be prejudiced by sharing expert reports across the cases, but there is no reason why the Court needs to address that issue now, especially when it is highly unlikely that Google would serve expert reports before they are due.

yet had "a fair opportunity to develop the party and third-party discovery [they] need to participate meaningfully and appropriately in [depositions of Google witnesses] or even choose whether to participate in such deposition." *Id*. at 3.  Put another way, MDL Plaintiffs would prefer that Google's witnesses be deposed first in this case and that MDL Plaintiffs would then retain the option to depose the same witnesses again in the MDL—with the benefit of a transcript from this case.  Aside from being inefficient and manifestly unfair to Google and third parties, as set forth below, the arguments that MDL Plaintiffs have advanced in support of their position lack factual basis and strain credulity.

*First*, MDL Plaintiffs' claims of "significant prejudice" are overblown and belied by the fact that they have been the beneficiaries of an enormous amount of discovery that is not typically available to civil litigants at the outset of a lawsuit.  Beginning in 2019, the DOJ and the Texas Attorney General's Office ("Texas OAG") both made expansive demands for documents concerning Google's ad tech business as part of their respective investigations.  Google gave the Texas OAG, which is leading a coalition of state plaintiffs in the MDL, access to roughly two million documents that the DOJ had assembled.[8]  EDVA Dkt. 44-2 at 11.  When resisting centralization by the JPML, the MDL State Plaintiffs advocated for an accelerated trial schedule on the basis of the "two years" of "pretrial work" they had done.  *In re: Dig. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L July 29, 2021), ECF No. 110 at 25:6-10.  Judge Castel ordered Google to produce that same population of documents to the other MDL Plaintiffs, so they, too, would have access to all of the materials that Google produced to the Texas OAG.  *See* MDL Dkt. 168.  MDL

---

[8] *See* MDL Dkt. 145 ("Google . . . produced 2 million documents to the State of Texas" which "includes documents that Google produced to the Department of Justice in addition to the approximately 152,000 documents that Google produced in response to the Texas AG's civil investigative demand (CID) concerning ad tech issues.").

Plaintiffs have now had access to those documents for well over a year. As a result of that substantial production, MDL Plaintiffs have had more than enough factual material for more than enough time to choose their deponents and meaningfully participate in depositions. And to the extent that they can demonstrate a true need for a second deposition, the Coordination Order allows for them to seek it. *See* ¶ 3(e) (allowing second deposition for "good cause shown").

*Second*, MDL Plaintiffs will soon receive the remainder of the discovery that they complain they have been denied. Far from "delaying" any discovery in the MDL, Ex. B at 2, as part of its response to the 301 Requests for Production of Documents that MDL Plaintiffs served on Google, Google agreed to produce the remaining approximately 800,000 documents that were produced to the DOJ in its ad tech investigation in advance of the May 30, 2023 deadline for substantial completion of production of documents and data in the MDL. As a result, in addition to the more than two million Google documents they have had for over a year, MDL Plaintiffs will soon have the additional 800,000 Google documents they seek—a full three months before the close of fact discovery in this case. Google respectfully submits that the more than 20 law firms (and more than 100 counsel of record) representing the MDL Plaintiffs will be able to review that additional production in advance of depositions in this case, which Google anticipates will commence in July 2023.

*Third*, MDL Plaintiffs' decision to delay discovery is a problem of their own making. At a September 24, 2021 conference, Judge Castel invited MDL Plaintiffs to prepare and submit consolidated document requests and stated that, if MDL Plaintiffs did so, "Google will not be able to say, My God, I just got this on Tuesday and it's going to take me months to figure out what's within the scope of this." MDL Dkt. 142 at 33:13-15. Although MDL Plaintiffs represented that they would send document requests, MDL Dkt. 141, they delayed a full *eighteen months*—until the

9

very last day permitted under MDL Pre-Trial Order No. 5—to serve their initial 301 Requests for Production. Then, after Google made a comprehensive proposal for responding to those requests, MDL Plaintiffs waited over a month to demand that Google search over 170 custodians using a byzantine array of new search strings—a demand that is unreasonable on its face. And they continue to concoct improper discovery-on-discovery questions as ostensible prerequisites to real negotiations over the scope of discovery. Against that backdrop, it is difficult to seriously credit MDL Plaintiffs' complaints that Google has delayed in producing documents that MDL Plaintiffs were invited to request much earlier.

*Finally*, MDL Plaintiffs' approach to third-party depositions would expose non-parties to multiple depositions if they do not produce documents on MDL Plaintiffs' accelerated schedule. *See* Ex. B at 3. Google has issued more than 100 third-party subpoenas in both the MDL and this case. MDL Plaintiffs have issued none—even though discovery has been open for more than three months. Google has already produced to MDL Plaintiffs the documents it has received in response to more than 30 subpoenas issued in the MDL and will continue to do so promptly. And if the Coordination Order is entered, Google will produce documents responsive to subpoenas issued in this case to the MDL Plaintiffs at the same time they are produced to the Virginia Plaintiffs, so all Plaintiffs would be on an equal footing.

### IV.    Meta's Proposals

Google and Virginia Plaintiffs also met and conferred with Meta. Unlike MDL Plaintiffs, Meta made specific proposals to include in the Coordination Order. *See* Ex. C (April 28, 2023 letter from Meta); Ex. D (draft coordination order including Meta's proposals). Unfortunately, those proposals came only today. As a result, Google was not able to complete meeting and conferring with Meta about its proposals, and it does not take a position on them at this time.

10


## V.   Conclusion

For all of the foregoing reasons, Google respectfully requests that the Court adopt Google's proposed language in the Coordination Order and then enter the Order.

Dated: April 28, 2023

Respectfully submitted,

/s/ Tyler Garrett
Eric Mahr (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: craig.reilly@ccreillylaw.com

*Counsel for Google LLC*