**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR *IN CAMERA* INSPECTION AND TO COMPEL PRODUCTION OF DOCUMENTS WRONGFULLY WITHHELD AS PRIVILEGED**

In light of evidence calling into question the breadth of Google's privilege assertions, Plaintiffs request *in camera* review of twenty-one (21) documents that they believe Google has improperly withheld or redacted on the basis of the attorney-client privilege or other protections.[1]  These documents are identified in the Appendix attached to Plaintiffs' motion. Plaintiffs respectfully request that the Court instruct Google to provide—directly to the Court— unredacted copies of these 21 documents to facilitate *in camera* review. Plaintiffs believe these documents contain information highly relevant to Plaintiffs' claims and/or Google's anticipated defenses. They were selected because they are representative of fundamental areas of disagreement between Plaintiffs and Google concerning the proper assertion of privileges.[2] The parties have met and conferred about this issue and were unable to reach resolution.

---

[1] For ease of reference, Plaintiffs will refer to the attorney-client privilege and work product protection or other privileges collectively as "privileges."

[2] Plaintiffs believe the Court's ruling on this subset of representative documents will facilitate more productive meet and confer discussions regarding other outstanding privilege disputes. To the extent those discussions are not fruitful, and if warranted, Plaintiffs may return to the Court for any additional necessary relief.

## BACKGROUND

During the multi-year investigation of Google's conduct that preceded the filing of this lawsuit, the United States became concerned about Google's invocation of the attorney-client and other privileges to shield documents and information from discovery. This concern resulted in extensive discussion and correspondence between the parties about Google's privilege assertions.[3] Google withheld from production—in whole or in part—hundreds of thousands of responsive documents purportedly on the basis of privileges. Google also engaged in a series of belated, and sometimes inconsistent, clawbacks of purportedly privileged documents, at times on the eve, or in the middle, of depositions. After the United States confronted Google's witnesses with certain documents at investigative depositions, Google clawed back and reproduced the documents a second or third time with additional redactions.

Two examples of Google's prior privilege assertions during the pre-complaint investigation are indicative of the problem. *First*, ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████[4] Only *after* the United States challenged this patently overbroad application of the privilege did Google produce the relevant documents three months later. *Second*, ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[3] The outstanding privilege issues as of the time Plaintiffs filed suit are summarized in a letter from B. Nakamura to J. Elmer dated Jan. 18, 2023, and the letters referenced therein. (Ex. 1.)

[4] Ex. 2, Ltr. from J. Hogan, Apr. 6, 2021.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████.[5] Once again, only *after* the United States objected to the withholding of these clearly unprivileged documents did Google produce *some* of them.

Given this prior troubling experience with Google's invocation of the privilege to shield unprivileged documents from discovery during the pre-complaint investigation, when discovery commenced in this action on March 27, 2023, Plaintiffs served Google with written discovery requests, including Request for Production ("RFP") No. 1 which seeks:

> All documents already produced by Google in response to Civil Investigative Demand Nos. 30092, 30120, 30121, and 30471, including all documents responsive to those Civil Investigative Demands and all documents wrongfully withheld as privileged or on the basis of work product protection as set forth in the January 18, 2023 letter from Brent K. Nakamura to Julie Elmer, the June 6, 2022, letter from David Teslicko to Julie Elmer, and the letters referenced therein.

RFP No. 2 seeks:

> All documents relating to any plans of, interest in, or efforts undertaken by the Company or any other person for any acquisition, divestiture, joint venture, alliance, or merger of any kind involving the sale of any Relevant Product or

---

[5] Ex. 3, Dep. of ████████████████████████████████████████████

████████████████████████████████████████████████████████

Service. For the avoidance of doubt, this includes all documents relating to Project ███, Project ███, Project ███, Project ███, Project ███, and communications with third-party Lazard Frères & Co. LLC.[6]

Following the parties' April 17, 2023, meet and confer to discuss these RFPs, on April 26, 2023, Google served its responses. As to RFP No. 1, Google declined to produce any new documents and indicated it "stands on the claims of privilege and work product protection it has asserted with respect to certain documents within the scope of the enumerated investigative requests." As to RFP No. 2, "Google stands on the claims of privilege and/or work product protection it has asserted with respect to documents relating to Project ███, Project ███, Project ███, [and] Project ███." Google's decision to persist with its prior claims of privilege for RFP Nos. 1 and 2 renders the parties' privilege disputes ripe, as Plaintiffs made clear during the parties' meet and confers on May 10 and May 12, 2023.

For purposes of this motion for *in camera* inspection and to compel production, Plaintiffs have selected exemplars of three categories of documents for which Google has failed to substantiate the scope of its privilege claims: (1) documents written pursuant to Google's corporate "Communicate with Care" policy that seeks to shield from production documents containing "sensitive" business information; (2) documents related to certain code-named, business-led projects; and (3) documents clawed back by Google where Plaintiffs believe Google is unlikely to be able to sustain its claim of privilege.[7]

---

[6] As explained in more detail below, Google used code names for a number of specialized projects and initiatives within its digital advertising business.

[7] These documents are identified by Bates number in the Appendix along with certain fields contained in Google's privilege logs.

## LEGAL STANDARD

Because the Amended Complaint seeks to vindicate federal antitrust laws, federal common law governs claims of privilege. *See* Fed. R. Evid. 501. "A party asserting a privilege has the burden of showing that it applies." *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 251 (E.D. Va. 2012); *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 2010 U.S. Dist. LEXIS 36530, at *10 (E.D. Va. Apr. 13, 2010). "In the Fourth Circuit, work product and attorney-client privilege are construed 'quite narrowly' [and] . . . are recognized 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *ePlus*, 280 F.R.D. at 251.

### I.    The Attorney-Client Privilege Is Narrowly Construed.

Because the attorney-client privilege "impedes the full and free discovery of the truth . . . [it] is to be narrowly construed." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (cleaned up). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Id.* (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)). In order to meet that burden, the proponent must show:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers *(c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding*, and not (d) for the purpose of

committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (emphasis added).

"[T]he attorney-client privilege does not apply simply because documents were sent to an attorney." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011); *see Fed. Election Com'n v. Christian Coalition*, 178 F.R.D. 456, 469 (E.D. Va. 1998) (A "party must do more than merely sending a document to his or her attorney in order to take advantage of the attorney client privilege."). While the privilege extends to certain communications involving in-house counsel "in order for the privilege apply to those communications, the attorney must be acting in a legal capacity, and not merely as a business advisor." *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 2020 WL 12862960, at *2 (E.D. Va. Aug. 21, 2020). "A communication is not privileged simply because one of the parties is an attorney" and "simply copying an attorney on a communication . . . [does not] cloak that communication with the attorney-client privilege." *Id*.

"To determine whether an attorney is acting in a legal capacity, courts look to whether the 'primary purpose' of the communication is to 'solicit[] legal, rather than business, advice.'" *Id*.; *see also Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 411 (D. Md. 2005) ("Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected."). In doing so, courts in this district "cautiously and narrowly apply the privilege in cases involving corporate staff counsel lest the mere participation of an attorney be used to seal off disclosure." *CSX Transp.*, 2020 WL 12862960, at *2; *see also Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 295 (D.D.C. 2000) ("[D]ocuments prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel . . . are generally not privileged since they are not communications made primarily for legal advice."). Additionally, even if a particular communication is found to

be privileged, "[t]he attorney client privilege 'protects only the communications themselves, not underlying facts.'" *Sharer v. Tandberg, Inc.*, 2007 U.S. Dist. LEXIS 22391, at *4 (E.D. Va. Mar. 27, 2007).

## II.    *Attorney Work Product Protection Does Not Shield All Business Documents Written While a Company Is in Litigation or Under Investigation*

Google appears to believe that the work product doctrine can shield from scrutiny major business projects simply because they were undertaken while the company was under government investigation. That is not the law. Originally defined by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work product doctrine was later partially codified in Fed. R. Civ. P. 26(b)(3): "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). As with the attorney-client privilege, "the party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine." *Solis v. Food Employers Labor Relations*, 644 F.3d 221, 232 (4th Cir. 2011).

To determine whether a document was "prepared in anticipation of litigation" and potentially qualifies as protected work product, this Circuit applies the "because of" test: "[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Importantly, "materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)." *Id.* Even "documents created by or at the direction of lawyers in the ordinary course of business [are] distinguished

from documents created in anticipation of litigation. . . . Unless documents are created because of the prospect of litigation, work product protection does not apply." *E.I. du Pont*, 2010 U.S. Dist. LEXIS 36530, at *10-11 (internal quotation marks and citations omitted).

Even where litigation is reasonably anticipated, work product protection does not shield from discovery business discussions simply because they account for or may become relevant to a potential lawsuit. The Fourth Circuit has recognized that "because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind . . . [y]et, '[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials' with work product immunity." *Nat'l Union*, 967 F.2d at 984; *see RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 747 (E.D. Va. 2007) ("The preparation of work merely because an attorney 'anticipates the contingency' of litigation is not sufficient to qualify the work for the protection afforded by the work-product doctrine.").[8] Instead, anticipated litigation must be the "driving force" behind the document. *Nat'l Union*, 967 F.2d at 984.

"The party asserting the work product doctrine must establish that the document at issue was prepared at the direction of an attorney in anticipation of litigation." *ePlus Inc.*, 280 F.R.D.

---

[8] In *In re Capital One Consumer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 91736, at *11-12 (E.D. Va. May 26, 2020), this Court further articulated the exacting standard a company must meet to demonstrate work product applies:

> As recognized in *RLI*, the party requesting protection under the work product doctrine bears the burden of showing how it would have investigated the incident differently if there was no potential for litigation. The hiring of outside counsel does not excuse a company from conducting its duties and addressing the issues at hand. As in *RLI*, the fact that the investigation was done at the direction of outside counsel and the results were initially provided to outside counsel, does not satisfy the "but for" formulation. For the reasons discussed below, [the company] has not presented sufficient evidence to show that the incident response services performed by [a consultant] would not have been done in substantially similar form even if there was no prospect of litigation. (internal citations omitted).

at 251. In doing so, it must make a "specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." *E.I. du Pont.*, 2010 U.S. Dist. LEXIS 36530, at \*11-12 (internal quotation marks omitted); *see also Hempel v. Cydan Dev., Inc.*, 2020 U.S. Dist. LEXIS 153208, at \*12-13 (D. Md. Aug. 24, 2020) (recognizing a party "cannot simply rely on conclusory statements in its memoranda," but rather must provide "specific factual support" for its work product claim). Courts in this district construe the proponent's "factual assertions within the narrowest possible limits consistent with the logic of the 'because of' principle." *RLI*, 477 F. Supp. 2d at 749.

Applying the "because of" standard serves two objectives. First, it protects materials "created because of litigation when that litigation is a real likelihood" but not those created "when that litigation is merely a possibility." *Id.* at 747. Second, it "protect[s] only work that was conducted because of [] litigation, not work that would have been done in any event." *Id.* For example, "where regulations or other 'non-litigation' responsibilities compel a party to produce 'work product,' that product is made 'in the ordinary course of business, and does not receive work product immunity.'" *Id.* at 747-48 (explaining work product extends only to documents that "would not have been prepared in substantially similar form but for the prospect of that litigation").

Companies may not simply funnel business communications and decision-making through in-house counsel in order to shield those materials from discovery as protected work product. As this court has explained, "litigants cannot escape their obligations to disclose underlying facts by communicating them to an attorney or having an attorney direct the fact investigation." *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 193-94 (E.D. Va. 2019) (finding work product did not apply where documents were "used for a

range of non-litigation purposes" notwithstanding statement of work indicating the project was completed "under the direction of Counsel"). While non-attorneys may generate protected work product, whether a business person rather than an attorney created a document and the relative level of attorney involvement are important considerations. *See Nat'l Union*, 967 F.2d at 984. When non-lawyers take a leading role in drafting documents or leading projects within the scope of their ordinary course business functions, it is more likely that the "driving force" behind the document was the operation of the business rather than anticipated litigation.

The party asserting work product doctrine must support its claims on a document by document basis, identifying the particular litigation for which specific documents were prepared. *See Solis*, 644 F.3d at 232. Even where a document contains material protected by the work product protection, "[i]f opinions and theories about the litigation are only part of a document otherwise discoverable, the court may require production of a redacted copy." *Nat'l Union*, 967 F.2d at 985; *see also Asghari–Kamrani v. United Servs. Auto. Ass'n*, 2017 WL 553402, at *6 (E.D. Va. Jan. 20, 2017).

### III.   *In Camera Inspection is Appropriate to Assess Google's Claims of Privilege*

Consistent with paragraph 12(c) of the parties Protective Order (Dkt. 98),[9] Plaintiffs seek the Court's determination on Google's privilege claims based on *in camera* review. "[C]ourts are generally thought to have broad discretion to determine whether a privilege is properly asserted." *Christian Coalition*, 178 F.R.D. at 461. In exercising that discretion, a court may conduct *in camera* review where it would be helpful "for the Court correctly to apply the Fourth Circuit's attorney-client privilege law, including the limitations that are inherent in that body of law." *F.T.C.*

---

[9] Under paragraph 12 of the Protective Order, following a clawback of a document, a party challenging a claim of privilege "may promptly present the information to the court under seal for a determination of the claim in camera."

*v. Reckitt Benckiser Pharm., Inc.*, 2015 WL 1062062, at *8 (E.D. Va. Mar. 10, 2015); *see also Morrison v. Cty. of Fairfax*, 2014 U.S. Dist. LEXIS 189528, at *6 (E.D. Va. June 19, 2014) (Clearly not all communications involving an attorney are subject to the attorney-client privilege and those communications must be reviewed individually to see if they satisfy the above requirements."); *Asghari–Kamrani*, 2017 WL 553402, at *6 (noting courts typically "must determine, from an examination of the documents or their circumstances, whether they were prepared in anticipation of litigation or for trial"). At most, some courts in this district have required a party requesting *in camera* inspection to make "an adequate factual showing that at least some of the information contained in the documents may be subject to disclosure." *Brown Univ. v. Tharpe*, 2012 U.S. Dist. LEXIS 194805, at *9 (E.D. Va. Mar. 30, 2012). Where the parties' disagreement over clawed back documents is "sufficiently narrow," courts in this district have engaged in *in camera* inspection "notwithstanding the strength of [the proponent's] privilege claims." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *5 (E.D. Va. July 16, 2019); *see Harrison v. Shanahan*, 2019 U.S. Dist. LEXIS 86589, at *7 (E.D. Va. May 22, 2019) (*in camera* review of representative sample of 32 documents). As detailed below, Plaintiffs easily satisfy the minimal showing required to justify review of the 21 exemplar documents in the Appendix.

## ARGUMENT

### I.   *Google's Corporate Policy of Labeling Ordinary Business Communications with Pretextual Indicia of Privilege Should Not Shield Such Documents from Discovery*

Google encourages its employees to shield from potential production documents with "sensitive" business information by instructing its employees to (i) label documents discussing "sensitive" business issues as "privileged"; (ii) include the name of an attorney; and (iii) ask the

11

lawyer a question.[10] Google's internal name for this policy is "Communicate with Care." "Communicate with Care" was described briefly in Judge Donato's recent order sanctioning Google in *In re Google Play Store Antitrust Litig.*, 2023 U.S. Dist. LEXIS 53218, at *18 (N.D. Cal. Mar. 28, 2023): "The 'Communicate with Care' training gave specific instructions to Google employees about strategies for seeking to make their emails and other communications 'protected by the attorney-client privilege.'"

Google has produced some—but appears to have withheld many more—documents that confirm Google's digital advertising employees engaged in this practice, without genuinely seeking or receiving legal advice on the subjects in question. For example, in one email chain, when a group of business employees were discussing their concerns about ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████[12]

Similarly, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

[10] *See* Ex. 4, GOOG-DOJ-06890329 at -363.

[11] Ex. 5, GOOG-DOJ-AT-01132905 at -905.

[12] Ex. 5, GOOG-DOJ-AT-01132905 at -905.



▆▆"[14] The email request was not an attorney-client communication seeking legal advice, nor did it even suggest the threat of litigation. Rather, it ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Likewise, in an email discussing potential changes to product pricing, a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆[15]

Additional documents reflect the same systemic practice. For example, when a Google employee branded an email ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆[16]

---

[13] *See* Ex. 6, GOOG-DOJ-07804118 at -119.

[14] Ex. 6, GOOG-DOJ-07804118 at -118.

[15] Ex. 7, GOOG-DOJ-04425135 at -135.

[16] Ex. 8, GOOG-DOJ-04426627 at -627-628.

Another email branded 

[18]

Collectively, these emails reflect Google employees' view that the best way to keep sensitive business information private is to label documents "privileged and confidential" even when no legal advice is being sought or received. Such communications do not qualify as privileged. *See Hopeman Bros. Inc. v. Cont'l Cas. Co.*, 2017 U.S. Dist. LEXIS 228210, at *4 (E.D. Va. Nov. 6, 2017) ("Thus, the practice of carbon copying individuals who are identified as 'attorneys' in Defendants' Privilege Log to emails or other transmissions does not automatically render such documents protected by the attorney-client privilege."); *CSX Transp.*, 2020 WL 12862960, at *2 ("cautiously and narrowly apply[ing] the privilege in cases involving corporate staff counsel lest the mere participation of an attorney be used to seal off disclosure."). While it is likely that several of the documents in the Appendix are examples of this corporate strategy in practice, Plaintiffs believe document 4 is a particularly illustrative example.[19] It is an email discussion among

Plaintiffs respectfully request the Court review *in*

---

[17] Ex. 9, GOOG-DOJ-15157183 at -184-187.

[18] Ex. 9, GOOG-DOJ-15157183 at -183.

[19] Ex. 10, GOOG-DOJ-AT-01019463.

*camera* this document and the others in the Appendix through the lens of Google's Communicate

with Care policy and order Google to produce those documents unredacted, except for portions

that contain a bona fide request for legal advice.

## II. *Google's Blanket Claims of Privilege Over Code-Named Business Projects Are Improper*

Google has applied blanket claims of privilege over documents concerning certain code-

named business-led projects discussing 

After initially allowing limited testimony on some of these

projects at depositions taken during the United States' pre-complaint investigation, in later

depositions Google's counsel began instructing its witnesses not to testify about these code-

named business projects or the context in which they arose on the purported grounds of privilege.

Google's counsel then sent a letter, requesting the United States

.[20]

Since then, Google has asserted blanket attorney-client privilege and/or work product protection

claims over virtually all documents and information related to these projects.

Even where in-house counsel was involved in communications related to these projects,

given the prominent role of business employees and the clear nexus to ordinary-course strategic

business decisions for each project, Plaintiffs are concerned Google has broadly swept into its

privilege claims instances of in-house counsel providing business advice.

For example, Google's privilege logs contain entries where in-house counsel opined on

"               ,"[21] where business advice—not legal advice—may well have been the

---

[20] Ex. 11, Ltr. from J. Elmer, Aug. 19, 2021 at 1 (emphasis added).

[21] Appendix, privilege log entries for documents 7, 20, and 21.

*only*—let alone primary—purpose of the communication. Google previously refused during a pre-complaint investigative deposition to provide nearly any testimony on the scope and nature of the projects and the role of individual team members. This has left Google without sufficient evidence to support its broad privilege claims, even assuming *some* communications related to *some* projects involved a request for or provision of legal advice. Google bears the burden to establish that the provision of legal advice was the *primary* or predominant purpose of each portion of each individual communication withheld on the basis of attorney-client privilege. *See CSX Transp.*, 2020 WL 12862960, at *2; *Neuberger*, 230 F.R.D. at 411. It has not done so here, and therefore its claims of attorney-client privilege over the project-related documents identified in the Appendix should be rejected or substantially narrowed during *in camera* review.

Google similarly has failed to put forward sufficient evidence to substantiate its claims of work product protection. It has pointed generally to several regulatory investigations into its business, contending that each project was "an analysis of potential remedies undertaken because of and in response to active government investigations into, and in anticipation of litigation concerning, Google's ad tech business." Even in its revised privilege logs, Google references generally "active government investigations" and "anticipated litigation."[22]

During the pre-complaint investigation, when the United States repeatedly sought to probe further into Google's privilege claims to assess the extent to which business reasons, non-lawyer business people, and pre-existing ordinary course business analyses drove these projects—as opposed to specifically anticipated litigation—Google refused to respond, let alone produce competent evidence to support its assertions. Based on the limited evidence available to Plaintiffs, it appears many, if not all of, the identified projects also would have been undertaken

---

[22] *See, e.g.*, Appendix, privilege log entries for documents 5, 6, 8, 11, 12, 14-19.

in substantially similar form irrespective of any litigation. *See RLI*, 477 F. Supp. 2d at 747-48; *Capital One*, 2020 U.S. Dist. LEXIS 91736, at *11-12. Google's view of work product protection would allow large companies that are often in litigation or under investigation to shield substantial portions of their key business discussions and decisions from discovery.

The Appendix includes an exemplary sample of fourteen documents concerning these code-named business projects that have been withheld based on purported privileges despite the fact the subject matter of the documents go to the heart of the anticompetitive business structures and practices described in the amended complaint.[23] Notwithstanding Google's attempts to shield from discovery information about these projects, Plaintiffs have pieced together some understanding of each from the documents produced and deposition testimony taken during the pre-complaint investigation.[24] That evidence undermines Google's broad claims of privilege.

---

[23] *See* Appendix, documents identified as related to code-named projects.

[24] In an attempt to obtain additional information concerning these projects and provide Google a further opportunity to put forward evidence supporting its assertions of privilege and work product protection, the United States issued a 30(b)(6)-style civil investigative demand for testimony on these topics. Google initially refused to provide a corporate representative to testify to these issues under oath, even as to general project information that Google should have included in its privilege logs. Ex. 12, Ltr. from J. Elmer, Sept. 14, 2021. Later, Google's counsel offered some cursory details concerning the projects in a letter, which it subsequently revised. *See, e.g.* Ex. 13, Ltr. from J. Elmer, Oct. 4, 2021 at 8 (amending the relevant dates for certain projects). Google ultimately agreed to have a corporate representative sit for the 30(b)(6)-style deposition, but strikingly, Google's representative then refused to adopt counsel's representations in the letters or to confirm their accuracy and completeness. Ex. 14, 30(b)(6) Dep. of Alphabet at 61:20-62:7 (discussing 30(b)(6) Ex. 5, a September 14, 2021 letter sent from Alphabet's counsel to the Division); Ex. 15, Karr Ltr. to Elmer, Oct. 18, 2021; Ex. 16, Elmer Ltr. to Karr, Oct. 28, 2021 at 1 (identifying withheld documents "█████████████████ ████████████████████████████████████"); Ex. 17 Elmer Ltr. to Karr, Nov. 15, 2021 at 1 (identifying redacted documents "████████████████ ████████████████").

*Project* ████████ *and Project* ████████

Based on the limited information available to Plaintiffs, Project ████████ appears to involve Google's consideration of (1) ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████.[25] According to deposition testimony, ████████████████████ ████████████████████████████████."[26]

Project ████████ appears to be a related project. According to the limited set of related, unredacted documents produced to date, Project ████████ involved "████████████ ████████████████████████████████ ████████████."[27] Apparently the project considered a variety of ████████ ████████████████████████████████ ████████████."[28] The project also considered a potential ████████ ████████████████████████████ ████████████████████████.[29] Other documents explain that Project ████████ members discussed "████████████ ████████████████████████████████

---

[25] *See* Ex. 14, 30(b)(6) Dep. of Alphabet at 237:3-239:15; Ex. 18, Dep. of ████████ at 197:10-23.

[26] *See* Ex. 19, Dep. of ████████ at 298:14-25 (identifying ████████████████████ ████).

[27] Ex. 20, GOOG-DOJ-AT-01021632 at -633.

[28] Ex. 20, GOOG-DOJ-AT-01021632 at -633.

[29] Ex. 20, GOOG-DOJ-AT-01021632 at -634.

███████████████████████████████████████████████████████████████

████████ ." Notably, Google has not asserted privilege over ██████████████████

█████████████████████████████████████████████████████████

According to Google, █████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████ .[31]

    To the extent these projects assessed ███████████████████████████████

█████████████████████████████████████ these types of discussions occur every

day at businesses like Google, as confirmed by Google employees at deposition.[32] They also go

to the heart of much of the anticompetitive conduct alleged in the Amended Complaint, and

therefore are highly relevant to Plaintiffs' claims and Google's anticipated defenses.

Accordingly, the Court should reject or substantially narrow Google's privilege claims for the

challenged documents that relate to Projects █████████ and █████████.[33]

---

[30] Ex. 21, GOOG-DOJ-10963552 at -552-001.

[31] Ex. 14, 30(b)(6) Dep. of Alphabet at 146:11-13.

[32] *See* Ex. 14, 30(b)(6) Dep. of Alphabet at 237:3-239:25.

[33] *See, e.g.*, Appendix, document 1. Although Judge Castel denied a privilege challenge by the MDL plaintiffs to a single redaction in a single ████████-related document that is not within the scope of this motion, the SDNY court certainly did not rule that every document referencing ████████ is privileged in whole. *See In re Google Digit. Advert. Antitrust Litig.,* 2023 U.S. Dist. LEXIS 7865, at *36. Judge Castel also did not have the benefit of the evidentiary record concerning ████████ (including relevant deposition testimony) discussed above. Moreover, with respect to document GOOG-DOJ-12766025 in particular, Google previously allowed portions of the document to be read into the record at deposition without objection, thereby voluntarily and intentionally waiving any privilege as to that document. Ex. 18, Dep. of ███████████████ at 196:16-201:13. In the six months following that deposition, Google and its counsel did nothing to attempt to clawback, redact, or otherwise address the testimony, and when confronted directly with that fact in the 30(b)(6)-style deposition, Google's counsel still did nothing to protect the confidentiality of that information. Ex. 14, Alphabet 30(b)(6) Dep. at 179:23-191:8.

*Project* ███ *and Project* ███

Project ███, and its follow-on Project ███, appear to have considered ███ ████████████████████████████.[34] The projects incorporated ██████████

██████████████████████████████████████████

██████████████████████████████████████████ At

depositions, Google employees █████████████████████

██████████████████████████████████████████

██████████████████████████████."[35]

Project ████████████████████████████████████

██████████████████████████████████

██████.[36]

The Court should reject Google's overbroad work product claims for Projects ███ and

███.[37] Google's consideration ████████████████████████

███████████████████████████████████████

██████████████████████████████

██████████. In one of the few instances where Google allowed testimony on the nature of

these projects, ████████████, a Google executive and the top leader of Google's display

---

[34] *See* Ex. 22, LAZARD-DOJ-00000044 at -044 (███████████████████████

██████████████████████████████); Ex. 14, 30(b)(6) Dep. of Alphabet 116:12-117:13.

[35] *See, e.g.*, Ex. 19, Dep. of ██████ at 296:18-297:15.

[36] Ex. 14, 30(b)(6) Dep. of Alphabet at 122:10-11.

[37] *See, e.g.*, Appendix, documents 5 and 6.

advertising business, who purportedly initiated Project ██████ confirmed that lawyers played, at most, a very limited role.[38] At his deposition, he admitted ████████████████████████

████████████████████████████████████████████████████

████████████████.[39] Given this testimony, the burden on Google of establishing work product protection for these projects should be heightened.

Project ██████

Project ██████ is a ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. Specifically, it concerned ████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████,"[40] The project appears to have been ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████.[41] Project ██████ addressed such

issues as ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████



---

[38] Ex. 30, Dep. of ████████████████ at 243:4-248:25; Ex. 13, Ltr. from J. Elmer, Oct. 4, 2021 at 3 (████████████████████████████████).

[39] Ex. 30, Dep. of ████████████████ at 260:6-261:9.

[40] Ex. 23, GOOG-DOJ-07837658 at -659; Ex. 24 GOOG-DOJ-15563771 (expanded comments on GOOG-DOJ-07837658); *see also* Ex. 25 GOOG-DOJ-AT-01508261.

[41] Ex. 14, 30(b)(6) Dep. of Alphabet at 201:1-7.



[42] The project appears to have been part of Google's further attempt to ███████████████.[43] ████████████

████████████████████████.[44] ██████

████████████████████████████████

████████████████████████████████████

████████████████████████████████.[45]

████████████████████████████████

████████████████████████████████████

███████.[46]

Google's broad assertions of work product and privilege with respect to Project ██████ fare no better than its claims for other project documents.[47] Even Google concedes that the project (under the same code name) existed well before any potential litigation was anticipated;[48] the "privileged" version of the project for which Google now asserts work product protection is a continuation of those earlier business discussions. The company's expansive view of work product would effectively wall off from inquiry any major business decision a company

---

[42] Ex. 23, GOOG-DOJ-07837658 at -659.

[43] Ex. 26, GOOG-DOJ-10306681 at -685.

[44] Ex. 27, GOOG-DOJ-AT-01045132 at -137 (discussing ████████████████████████████████ ████████").

[45] Ex. 28, Dep. of ████████ at 170:14-18.

[46] Ex. 28, Dep. of ████████ at 179:2-4. *Id.*

[47] *See* Appendix, documents 13 and 20.

[48] Ex. 29, Ltr. from J. Elmer, Feb. 25, 2022.

considers once under investigation by the government. No legal authority extends the scope of the protection so far.

For each code-named project document identified in the Appendix, the Court should find Google has failed to put forward sufficient evidence to substantiate its withholding or substantial redactions on the basis of privilege. To the extent the Court determines certain claims are substantiated, Plaintiffs respectfully request that the Court order the production of any portions of the documents that do not contain privileged material.

### III.   The Court Should Review In Camera Certain Documents Google Has Improperly Clawed Back as Privileged

Additionally, Plaintiffs request that the Court review the remaining documents in the Appendix,[49] all of which were produced previously by Google and later clawed back.

#### A.   Google Habitually Engages in Clawbacks of Responsive Documents, Often Multiple Times for the Same Document

Throughout the pre-complaint investigation, Google clawed back many documents it had produced. In certain cases, this occurred only after the evidentiary value of the documents became clear to Google, such as during depositions. In total, Google has clawed back over 4900 documents. Nine clawbacks occurred during pre-complaint investigative depositions, when witnesses were pressed on the substance of the documents. Seven of the documents identified in the Appendix[50] have been clawed back by Google at least twice and reproduced with different degrees of redactions.

Extending its pre-complaint practices to this litigation, just last week, Google requested Plaintiffs sequester or destroy over 1500 documents, almost all of which Google produced to the

---

[49] *See,* Appendix, documents 2, 3, 7, 10, 16, 21.

[50] *See* Appendix, identifying documents clawed back multiple times.

United States in 2020 or 2021. This recent round of clawbacks included a document quoted in the Amended Complaint,[51] as well as a document used (without objection) as an exhibit in a deposition that occurred more than eighteen months ago.[52]

B.   *The Court Should Review the Sample of Clawed Back Documents Identified in the Appendix*

As all of the documents identified in the Appendix have been clawed back at one time or another, Plaintiffs' ability to articulate fully their challenge to Google's claims of privilege is limited. Suffice it to say, however, that Plaintiffs believe that *in camera* review would allow the Court to quickly assess Google's claims, consistent with the procedure set forth in paragraph 12 of the Protective Order and this Court's practices. *Cf. Harrison*, 2019 U.S. Dist. LEXIS 86589, at *7 (describing *in camera* review of an exemplar set of 32 purportedly privileged documents).

Notably, while many of the privilege log entries for these documents include claims of attorney-client privilege, no lawyer is identified in the metadata of these documents as an author or recipient. Additionally, several of Google's privilege log descriptions for these documents appear materially deficient or call into question Google's assertion of privilege. For example, Google asserts substantial redactions to █████████████████████████████ based on a purported attorney-client privilege or work product protection.[53] Other privilege log entries claim attorney-client privilege for presentations and emails seeking or revealing legal advice "████████████████████████."[54] Yet another claim of attorney-client

---

[51] GOOG-DOJ-05782415 (quoted in ████████ of the Amended Complaint (Dkt. 120)).

[52] GOOG-DOJ-AT-00682026; Ex. 31, Dep. of ████████████████, Ex. 4. Plaintiffs are continuing to meet and confer with Google concerning the most recent set of clawbacks, and as a result, these documents are not within the scope of the present motion.

[53] *See* Appendix, privilege log entries for documents 13 and 17.

[54] *See* Appendix, privilege log entries for documents 7, 20, and 21.

24

privilege is based on an ███████████████████████████████████████████████

████" without a claim that the email communication in fact sought or reflected legal advice

provided to Google employees with a need to know such advice.[55] Especially when placed

within the overall context of Google's corporate practices and prior broad assertions of privilege,

these red flags in Google's privilege logs suggest "that at least some of the information contained

in the documents may be subject to disclosure," justifying *in camera* inspection. *Brown Univ.*,

2012 U.S. Dist. LEXIS 194805, at *9. At a minimum, Plaintiffs believe Google's redactions of

these documents are likely overbroad, such that the Court should exercise its "broad discretion to

determine whether a privilege is properly asserted" via *in camera* review. *Christian Coalition*,

178 F.R.D. at 461. Plaintiffs believe such review will allow the Court to expeditiously evaluate

Google's claims of privilege and issue an order requiring the production of the non-privileged

portions of the Appendix documents.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court review *in camera*

the documents identified in the Appendix and order Google to produce each document, with

appropriate redactions only if necessary.

---

[55] *See* Appendix, privilege log entry for document 1.

Dated: May 19, 2023

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ David M. Teslicko
DAVID M. TESLICKO
ALVIN H. CHU
AARON M. TEITELBAUM

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Andrew N. Ferguson
ANDREW N. FERGUSON
Solicitor General
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of
Virginia and local counsel for the
States of Arizona, California,
Colorado, Connecticut, Illinois,
Michigan, Minnesota, Nebraska, New
Hampshire, New Jersey, New York,
North Carolina, Rhode Island,
Tennessee, Washington, and West
Virginia