# EXHIBIT 1

# to Plaintiffs' Motion to Compel

# (filed on May 26, 2023)



U.S. Department of Justice

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20530*

May 25, 2023

**CONFIDENTIAL**

**Via Email**

Robert McCallum, Esq.
Freshfields Bruckhaus Deringer LLP
700 13th Street, NW
Washington DC 20005-3950

      Re:    *United States, et al. v. Google LLC*, No. 1:23-cv-108 (E.D. Va.)

Dear Counsel:

    We are writing to summarize our efforts to reach resolution on a number of outstanding discovery requests in this litigation.

    **Source code and related explanatory documents.** On March 27, 2023, the first day of fact discovery in this litigation, Plaintiffs served Plaintiffs' First Set of Requests for Production of Documents ("RFPs"), which included requests for source code repositories, pseudocode, explanatory manuals, Product Requirements Documents (PRDs), and related materials describing the operation of features described in detail in the Complaint. On April 11, 2023, Google served its Objections to the RFPs. The parties met and conferred to discuss Google's Objections, and discussed RFPs 39–43 (the "Source Code RFPs") on April 20, 2023.

    During our initial meet and confer on these issues, Plaintiffs explained that the Source Code RFPs seek information necessary to allow our experts to analyze and explain to a jury features that are set forth in the Complaint. We noted that Google expressed concerns in its written Objections that ███████████████████████████████████████████████████████████.[1] But we reminded you that the parties' Protective Order, which was approved by the Court on April 4, 2023, provided for a detailed process under which source code could be made available to a limited number of Plaintiffs' experts under highly restrictive conditions. This procedure was jointly crafted, with significant input by Google, to ensure substantial and sufficient protection for any Google source code. Plaintiffs then explained that, if Google believed something short of source code (*e.g.*, pseudocode and explanatory manuals) could provide sufficient information to allow our experts to analyze the relevant features and explain the challenged conduct to a jury, Plaintiffs were open to discussing an alternative

---

[1] Defendant Google LLC's Objections to Plaintiffs' First Set of Requests for Production of Documents, Apr. 11, 2023 at 44, 46.

1

approach that might allow Google to sufficiently respond to the Source Code RFPs. We recommended a proposal that included the production of a full set of responsive pseudocode, which we understand was not produced during the investigation, but may contain sufficient detail showing how the relevant features worked. You agreed to take this information back to Google for Google's consideration.

On April 26, 2023, Google filed its Responses to the RFPs, including the following response to the Source Code RFPs: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[2] The following week, Plaintiffs requested a May 3, 2023 meet and confer to discuss the Source Code RFPs. Counsel did not respond to this email, but we raised the issue at our next scheduled meet and confer on May 5, 2023. Counsel explained that Google was still working through how to respond to our Source Code RFPs. On that call, we offered a concrete proposal: If Google agreed to produce a full set of relevant pseudocode by a reasonable date, Plaintiffs' experts would work expeditiously to review the pseudocode. Specifically, within two weeks of Google's production of this set of pseudocode, Plaintiffs would agree to tell Google whether the production was a sufficient response to the Source Code RFPs, and if not, Plaintiffs would agree to provide details on what additional information we believed we needed from Google and what source code Plaintiffs no longer needed. You agreed to take this proposal back to Google for Google's consideration.

The following week, on May 9, we asked for an update on whether Google was willing to agree to our proposal. Counsel explained that Google appreciated the proposal, but that it was not immediately clear that our proposal would expedite matters. We asked how much time Google believed it would need to compile a full set of pseudocode. Counsel explained that Counsel did not yet know whether a full set of relevant pseudocode exists. Plaintiffs explained that, if there is no full set of pseudocode and our proposal is not workable, we needed to know soon. We asked for a final answer from Google as soon as possible.

We did not receive any response. Two weeks later, after we had not heard back from you regarding our proposal to respond to the Source Code RFPs, Plaintiffs sent an email asking that Google agree to produce (*i.e.*, make available under the terms set forth in the Modified Protective Order) source code repositories, as well as produce all relevant pseudocode, manuals, and other explanatory documents. We asked for a substantive response to our request by no later than Tuesday, May 23 at 5:00 p.m. On Tuesday, May 23, Counsel responded: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[3]

On May 24, the parties met and conferred a final time to discuss Google's response to our Source Code RFPs. Counsel shared that Google was attempting to craft a solution that would work for both Plaintiffs and the MDL Plaintiffs, and that Google expected an update on May 30 because that is a compliance deadline in the MDL. We explained that Counsel's offer to provide an update by May 30 would not work for Plaintiffs. We also explained that we have legitimate concerns that May 30 would come and go without the parties reaching resolution on these issues. We also provided detailed explanations about the importance of source code, its

---

[2] Defendant Google LLC's Responses to Plaintiffs' First Set of Requests for Production of Documents, Apr. 26, 2023 at 50-54.
[3] May 23, 2023 email from R. McCallum to K. Garcia, "RE: Source Code // Request for M&C."

relevance to our claims and Google's defenses, and the importance of discovery of the source code to resolve central issues in this litigation. We explained that our experts need access to sufficient information to describe to a jury how Google's ad tech features work. We noted that Google's Answer, including its denial of Complaint paragraphs 218 and 219 (in which Plaintiffs describe how Project Poirot operates) makes clear that how these algorithms work will be a disputed issue in this case. We explained that our experts need sufficient time with these materials and that we could not wait any longer to hear Google's proposal.

We explained that we believe Google's lack of a substantive response up to this point puts us at an impasse and makes this issue ripe for a motion to compel, which we intend to file Friday, May 26. You disagreed that we were at an impasse and suggested that your proposal to MDL plaintiffs should satisfy our requests. We noted that we still did not have any concrete proposal from Google, but that we would be willing to continue discussions to try to reach resolution. Given the importance of the information sought, the protocols that must be followed before experts are granted access to this information, and the lack of information currently available to Plaintiffs, however, we could not wait any longer to file our motion.

**Successor custodians.** Google's April 11, 2023 letter, served contemporaneously with Google's Objections to the RFPs, included [4] [5] [6].

In response, Plaintiffs raised concerns about relying on a set of custodians negotiated years ago as part of the DOJ's investigation. These custodians were negotiated in an effort to identify documents responsive to a Civil Investigative Demand issued in October 2020. Plaintiffs sought additional information on whether Google's proposed custodians remained in their roles during the October 2020 through January 2023 time period. To facilitate discussions, we asked that Google provide a list of successors to the ▮▮▮ that had changed roles after October 2020.

We made this request in our April 14 letter and raised it on our April 17 meet and confer, at which time Counsel explained that they had conveyed the request to Google. On May 1, Plaintiffs sent a letter requesting an update, and on May 5, Counsel told Plaintiffs that our request for a list of successors was in and of itself "too burdensome." Counsel stated that Google could not obtain information about successors without conducting "dozens of interviews," and thus, Google would not pursue our request for more information unless we provided a narrower list of employees.

On May 10, Plaintiffs sent Counsel an email with information about certain Google employees on Google's ▮▮▮ list who, based on publicly-available information and internet searches, appeared to have left the roles they held in October 2020. We also identified Google employees from Google's ▮▮▮ list with titles, roles, and responsibilities that made them highly likely to have relevant information,

---

[4] J. Elmer Ltr. to J. Wood and A. Teitelbaum, Apr. 11, 2023 at 1.
[5] *Id.* at 2.
[6] *Id.*

3

asking that Google confirm these individuals were still employed by Google and still held their previous roles during the October 2020 through January 2023 time period.

After a week passed without hearing back from Counsel, Plaintiffs followed up on May 18 to request that Google provide a response, including whether Google would agree to add successor custodians described in our May 10 email (to the extent they were not already on the custodian list), by no later than Tuesday, May 23, at 5:00 p.m. On May 23, Counsel replied that "Google is working in good faith to assess your May 10 email and we expect to be in a position to provide an update by the end of this week."[7]

On May 24, during another meet and confer, Counsel provided a partial update. Counsel explained that Google had confirmed four employees were still in the role that they held in 2020, and two of the employees had been succeeded by individuals that were already custodians. Fifty-seven additional employees were listed on our May 10 request for additional information, and we do not know how many of those remaining employees are still in the roles that they held in 2020.

We expressed appreciation for the updates, but noted our concern that the substantial compliance deadline was fast approaching. We explained that we intended to file a motion to compel on Friday, May 26. You asked for clarification on the relief we would be seeking, and we explained that we have requested and would request that successor employees described in our May 10 email be added to Google's custodian list, if they are not on the list already. Again, we explained that we would be willing to continue discussions to try to reach resolution, even after the motion is filed, but that we needed to resolve these issues promptly.

**Document retention practices employed by potential witnesses.** On April 13, 2023, Plaintiffs served their Second Set of RFPs, which included Request for Production No. 58 ("RFP 58"), a request for documents that address or reference Google's "Communicate with Care" policy, Google's auto-deletion of Google Chat messages, and "history off" or "off the record" conversations. Google's April 28, 2023 Objections to Plaintiffs Second Set of RFPs claimed ████████████████████████████████████████████[8]

On May 9, Plaintiffs met and conferred with counsel and explained why Plaintiffs believe information sought in RFP 58 is relevant. As discussed, RFP 58 seeks information about potential witnesses' efforts to evade their obligation to preserve documents concerning the issues presented in Plaintiffs' Complaint. We explained that, to the extent Google employees involved in digital advertising insisted on discussing business decisions "off the record," that fact could be evidence of anticompetitive intent. We explained that the jury, when asked to evaluate whether Plaintiffs have met their burden of proof, should be allowed to consider evidence that relevant chats have been destroyed. We also explained that RFP 58 sought information that would be relevant to the credibility of Google's trial witnesses, who we expect Google will call to testify about factual issues. Plaintiffs proposed that Google respond to this request by running targeted search terms through the files of Google employees who have already been identified as likely to have relevant information in this case (i.e., the agreed-upon custodians).

---

[7] May 23, 2023 email from R. McCallum to K. Garcia, "RE: Source Code // Request for M&C."
[8] Defendant Google LLC's Objections to Plaintiffs' Second Set of Requests for Production of Documents, Apr. 28, 2023 at 9.

4

On May 12, the parties met and conferred again. Plaintiffs explained that public filings in the *Play Store* litigation and Judge Donato's related orders[9] suggested that several Google employees engaged in efforts to avoid creating a discoverable record. RFP 58 seeks information that would reveal whether or not the potential witnesses in this litigation engaged in similar conduct. Plaintiffs suggested running search terms identified in Judge Donato's order (e.g., "off the record," "history off," etc.) through custodial files. We explained that, as described in Judge Donato's order, it would be appropriate to run search terms through a broader population of documents—not just documents that were responsive to other search terms—to ensure Google captured and produced documents that would reveal employee abuse of certain policies, if it exists in this case. You agreed to take this proposal back to Google for Google's consideration. We made clear that we needed to know whether Google would agree to run search terms responsive to this request as soon as possible.

On May 17, Counsel sent Plaintiffs an email explaining that Google was "continuing to diligently work on these issues and aim to respond tomorrow with more information."[10] We asked for a substantive response to our proposal by no later than noon on Thursday, May 18. On May 18, Counsel sent Plaintiffs an email that included the following note: "We expect to get you a substantive response on RFP 58 later today. Apologies for the delay."[11] On May 19, 2023, Counsel sent us an email explaining that Counsel had discussions with Google about this request and would come back Plaintiffs with a response as soon as possible that day. We did not hear from you about this request, and on Monday, May 22, we requested a meet and confer. You proposed times for a meet and confer on May 24, and suggested you wanted to discuss RFP 58 further.

On May 24, during our meet and confer, Plaintiffs requested an update on this issue. You explained that you tested our search terms and found this hit on a high volume of documents. You asked that we consider, instead, a production of a subset of materials already produced in the *Play Store* litigation, but only for overlapping custodians (between the *Play Store* litigation and this litigation). We asked how many custodians overlapped, and you said that you have identified seven overlapping custodians. We asked whether Google's proposal was to run search terms through the seven overlapping custodians, and you stated that Google was instead willing to produce documents already produced in the *Play Store* litigation for those seven custodians.

Plaintiffs explained that we were nearing the substantial compliance deadline. Given the limited overlap between the two cases of only seven of the approximately 150 Google custodians with knowledge of the relevant issues in this case, we would not be inclined to agree to Google's proposal. You noted that Judge Donato's order limited searches to chats, rather than running search terms across all documents, and that Google was interested in reaching a compromise. We explained that we would consider an alternative proposal from Google, if Google would be willing to agree to run the search terms through chats of all custodians in this litigation. We made clear that, even if we moved to compel a response to RFP 58, we would be willing to continue discussions and consider Google's counterproposals

---

[9] *E.g.*, *In re Google Play Store Antitrust Litig.*, No. 21-md-2981-JD (N.D. Cal. Mar. 28, 2023) ECF No. 469 at 8, 10 ("[a]n abundance of evidence establishes that Google employees routinely used Chat to discuss substantive business topics, including matters relevant to this antitrust litigation" and "[o]verall, the record demonstrates that Google employees who received a litigation hold in this case were unable or unwilling to follow the Chat preservation instructions, and sometimes disregarded the instructions altogether.").
[10] May 17, 2023 email from R. McCallum to K. Garcia, "RFPs 44 and 58."
[11] May 18, 2023 email from R. McCallum to K. Garcia, "RE: RFPs 44 and 58."

5

if and when they offered them. Plaintiffs intend to file a motion to compel Google's response to RFP 58 on Friday, May 26, 2023.

*   *   *

Please contact me at (202) 262-3719 or kelly.garcia@usdoj.gov if you have any questions regarding this letter.

Sincerely,

*/s/ Kelly D. Garcia*

Kelly D. Garcia
Trial Attorney
Antitrust Division
U.S. Department of Justice