IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
SUCCESSOR-CUSTODIAN DOCUMENTS AND RELEVANT SOURCE CODE**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Civil Rule 37(A), Plaintiffs, the United States and Co-Plaintiff States, respectfully submit this memorandum of law in support of Plaintiffs' motion to compel discovery from Defendant Google in the above-captioned action. Plaintiffs respectfully request that the Court compel Defendant Google to: (1) search and produce relevant materials from the files of successor custodians in key positions at Google between October 2020 and January 2023; and (2) produce source code and related explanatory documents concerning the algorithms and other computer code utilized by Google's ad tech tools that are at the heart of this action. The parties discussed these topics at length at several meet and confers, during which Plaintiffs described the relevance and importance of the information sought and proposed reasonable compromises for Google's consideration. Google rejected Plaintiffs' proposals, failed to timely offer additional information to facilitate discussions, and made insufficient counterproposals, rendering all three issues ripe for court intervention.

## BACKGROUND

**A. Google's Proposed Document Custodian List is Out-of-Date and Should Be Revised to Include Any New Custodians Who Have Assumed Key Positions at Google Since October 2020.**

On April 11, in response to Plaintiffs' March 27, 2023 initial requests for production of documents ("RFPs"), Google provided a list of proposed custodians whose documents would be searched for relevant material. Google's list of proposed custodians was based largely on custodians that had been agreed-upon during the United States' pre-complaint investigation of Google's conduct in approximately October 2020. Plaintiffs promptly requested that Google supplement its proposed custodian list to add a limited set of targeted custodians, including successors of the employees identified by Google as relevant custodians in its April 11 letter (the "Successor Custodians"), to ensure that Google's search for relevant documents included documents from the files of Google employees in key positions across Google's ad tech business, including any employees who may have come into those key positions after October 2020.

From the start of this case, Plaintiffs have made clear that while Google produced a substantial number of documents during the United States' pre-complaint investigation of Google's conduct, Plaintiffs would need to supplement this information with more recent relevant documents.[1] Plaintiffs made a reasonable proposal to add additional custodians who had assumed the same key positions in Google's digital advertising business, the very same positions at Google that had warranted inclusion in the custodian list back in October 2020.

---

[1] At the first Scheduling Hearing, Plaintiffs explained that a refreshed production would require the addition of "new custodians who joined Google in certain key positions that are relevant to the facts of the lawsuit." Mar. 24, 2023, Sch. Hearing at 6:1-4.

Well over a month passed after Plaintiffs requested the addition of these Successor Custodians, and despite frequent meetings to discuss the issue,[2] Google has yet to confirm that it will add Successor Custodians to its Custodian List. On May 5, Google represented that compiling a list of Successor Custodians—a list of its own employees serving in key positions across the ad tech stack—was too burdensome. To address this surprising claim of burden, on May 10, Plaintiffs provided Google a list of 63 individuals who Plaintiffs believed, based solely on public records searches, no longer held the titles they had held on or before October 2020, or where it was unclear who held those positions. All Google had to do was consult with its own employees to determine who the relevant Successor Custodians were, and agree to add those individuals to the list.

On May 26, at 2:30 p.m. ET, Google sent additional information about 45 of the 63 Google employees identified in Plaintiffs' May 10 email. Google confirmed that many of the individuals Plaintiffs inquired about have already been added to the list of agreed-upon custodians in this litigation. Yet, with respect to at least ten of these individuals, Google identified successors without any indication of whether or not Google would agree to add the narrower set of Successor Custodians to its custodian list. Plaintiffs still have no information about the remaining 18 Google employees identified in our May 10 email.

Given that the July 7, 2023 deadline for substantial completion of document production is quickly approaching, Plaintiffs are concerned that Google has not yet confirmed whether it will agree to include these Successor Custodians in its search for relevant documents. For that reason, Plaintiffs regrettably feel compelled to seek the Court's assistance in resolving the issue. To that end, we respectfully request that the Court compel Google to complete its search for and produce

---

[2] Exhibit 1, attached to this motion, sets out Plaintiffs' efforts to reach resolution on these topics.

3

relevant materials from the custodial files of successor employees described in Plaintiffs' May 10 correspondence, or otherwise confirm that the employees are already included on Google's custodian list.

### B. Plaintiffs are Entitled to the Relevant Source Code and Associated Explanatory Documents That Are at the Heart of This Case.

Plaintiffs' first set of requests for production, served April 27, 2023, included requests 39 through 43 (the "Source Code RFPs"), which sought the production of source code from the products and ad tech features described in Plaintiffs' complaint,[3] as well as data and documents explaining that source code. Specifically, Request for Production No. 39 ("RFP 39") requests:

> Source code repositories and related repositories, including training data, launch or release dates, pseudocode, and the implementation status or roll-out associated with that source code, relating to the following features and any successors or updates to those features: (1) Project Bernanke (including Global Bernanke and Project Bell); (2) Project Poirot (also known as optimized fixed CPM bidding and Automated Bidding); (3) AdX's (sellside) dynamic revenue share; (4) AdX's predicted highest other bidder (pHOB) algorithm; (5) Smart Bidding, including any inputs to and outputs from the feature or program, including but not limited to minimum bid to win; (6) Dynamic Allocation; (7) Enhanced Dynamic Allocation; (8) Project Bell; (9) Reserve Price Optimization (RPO); (10) any curation function for the Related Products that determine which exchanges, DSPs, and Ad Networks to call; (11) any bid, price floor, or auction optimization algorithm, product, or feature; and (12) any automated means or manner of bidding, whether on individual bids or on a campaign-level basis.

Requests for Production Nos. 40 and 41 also requested documents and data related to RFP 39. The two subsequent requests also ask for source code:

> **REQUEST NO. 42.** Source code repositories and related repositories, including training data, launch or release dates,

---

[3] In the parties' Modified Protective Order, "source code" is described as "computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs . . . ." ECF No. 203, at 7-8.

pseudocode, and the implementation status or roll-out associated with that source code, generated since January 1, 2010, related to: (1) how bids are selected and submitted in any product that generates, alters, or submits a bid to purchase an impression in any Relevant Product or in AdMeld; (2) the way or method by which Relevant Products and AdMeld determine or determined the winners of any real-time auction, waterfall bidding, and any sales of impressions.

**REQUEST NO. 43.** All documents created since January 1, 2005, related to plain language explanations, code repositories, pseudocode, design documents, A/B or comparison testing, and any other manuals or resources explaining the features, functions, and operation of the source code used to: (1) determine the selection of bids into or sent from any Relevant Product or in AdMeld; and (2) determine the winners of any real-time auction, waterfall bidding, and any sales of impressions.

The parties have had numerous meetings to discuss the production of source code and related materials, and Plaintiffs have explained repeatedly why access to source code and related materials is crucial to allow Plaintiffs a fair opportunity to prosecute their case and understand Google's potential defenses.

To address Google's stated concerns about the burden and/or risks associated with producing source code information, Plaintiffs alternatively offered to accept "pseudocode" – descriptions of the steps in an algorithm or other software program in plain and natural language – and related documentation instead, provided that Plaintiffs' experts be given an opportunity to review such pseudocode and determine whether it would be a sufficient substitute for the source code itself. Yet, after waiting weeks to get back to Plaintiffs, on the parties' May 24 meet and confer, counsel for Google stated that it could not agree to the proposal because Google did not have a "complete" set of such pseudocode. Instead, Google told Plaintiffs that it was preparing a counterproposal to provide on May 30, which is when Google expected to offer MDL plaintiffs its proposed response to similar RFPs served in that litigation.

On May 26, at 2:30 p.m. ET, Google finally sent a concrete proposal, indicating that it was prepared to search for and make available, if located, certain but not all of the source code requested by Plaintiffs. Google's proposal is silent with respect to the production of available pseudocode. Plaintiffs do not know whether Google will produce relevant manuals, design documents, or any other resources necessary for Plaintiffs' experts to understand the relevant Source Code. Plaintiffs do not know when to expect Google to have located the relevant Source Code—their proposal suggests it may not be able to be located and, in fact, may not exist.

Without further progress on this issue, and in light of the limited time available to review and analyze such intricate and complex source code that goes to the heart of the complaint's allegations, Plaintiffs respectfully request Court intervention to resolve this issue once and for all. Of course, Plaintiffs will continue to meet and confer with Google while this motion is pending and if further progress can be made on this issue in the interim, Plaintiffs will happily table this aspect of the motion.

## ARGUMENT

The Federal Rules of Civil Procedure provide a broad baseline for discovery as a party is entitled "to discover any material that is relevant to any party's claim or defense, is nonprivileged, and is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citing Fed. R. Civ. P. 26(b)(1)). This right to relevant discovery includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Tube-Mac Indus., Inc. v. Campbell*, No. 2:20CV197, 2021 WL 6332354, at *1 (E.D. Va. June 10, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Federal Rule of Civil Procedure 37 and Local Civil Rule 37(A) allow parties to seek a

court order to compel responses to discovery requests. The party refusing discovery "generally bears the burden to prove why the requested evidence is not discoverable." *BASF Plant Sci.*, 2019 WL 8108060, at *2. As discussed below, Plaintiffs have requested custodial documents and carefully-tailored requests for production that are both highly relevant to their allegations and Google's defenses.

### A. Google's Burden Objections to Plaintiffs' Request for Successor Custodian Documents Are Unpersuasive.

Plaintiffs have made a simple request: Google should collect documents from custodians who have occupied roles relevant to this litigation for the entire relevant time period—including the most recent, post-October 2020 time period. Despite this straightforward request, Google has claimed that identifying Google employees who have held these roles during recent years is itself too burdensome of a request. In an attempt to understand the burden, Plaintiffs asked whether Google would be willing to make a few phone calls to its Human Resources (or equivalent) departments to track down the relevant information. Plaintiffs were told Google would have to conduct "dozens and dozens of interviews," and Google could not just "press a button" for this information. Plaintiffs then made efforts to lessen Google's burden by running searches on social media sites and other publicly available sources to begin to identify individuals who have left the company since October 2020. Despite Plaintiffs' best efforts to assist Google in this process, Plaintiffs are not in a position to determine and verify a list of relevant custodians covering the post-October 2020 time period—only Google has access to its own employment records and databases, and it does not seem a burdensome task for a company with multiple law firms representing it to do what is necessary to ensure that its document custodian list reflects current employees in relevant positions.

7

After nearly two months of negotiations and with barely more than a month remaining before the substantial completion deadline—two and a half hours before Plaintiffs' deadline to file this motion—Google provided information about forty-five Google employees, including the names of eleven successors not yet on Google's custodian list. Google has not said whether Google would agree to add any of the eleven newly-identified successors to its custodian list. And there are still *eighteen* employees identified by Plaintiffs who hold job titles that suggest their documents would be highly relevant and responsive to Plaintiffs' discovery requests but who nonetheless may or may not already be included on Google's list of custodians.[4] Google's May 26 letter says nothing about these eighteen employees. Plaintiffs respectfully request that the Court order Google to promptly identify any new custodians necessary to add to its custodian list in order to cover the post-October 2020 time period and promptly produce responsive documents from those employees' custodial files.

### B. Plaintiffs' Experts Need the Opportunity to Examine the Source Code and Related Documents That Are at the Heart of Plaintiffs' Allegations.

Courts routinely order the production of source code where it is deemed relevant. *See Trustees of Columbia Univ. v. Symantec Corp.*, 2014 WL 12979655, at *1 (E.D. Va. Apr. 22, 2014) (ordering patent infringer to produce source code for its accused product, rejecting burden argument); *see also Spendlove v. RapidCourt, LLC*, 2019 WL 7143664, at *7-8 (E.D. Va. Dec. 23, 2019) (finding Plaintiffs' need for source code outweighed harm to Defendants, whose interests could be protected by an appropriate order). Even though source code may be competitively sensitive, "[t]here is, however, no source code exception to the production

---

[4] It is possible that a substantial portion of these identified custodians are already on Google's custodian list, which would substantially diminish any purported burden on Google from adding these names to the custodian list.

8

requirements of Fed. R. Civ. P. 34." *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *1 (N.D. Cal. 2012) (sanctioning defendant for failing to produce source code pursuant to order). While Google claimed in its responses to Plaintiffs' first requests for production that Plaintiffs must make a showing that it is "necessary" to receive source code, the standard to produce source code is not one of necessity, but of relevance. *Spendlove*, 2019 WL 7143664 at *7 (finding that "courts have required [parties] to produce source code and/or algorithm information demonstrating how their software works when relevant to the litigation at issue.").

 Source code and the documents that supplement and explain the workings of source code, are highly relevant to Plaintiffs' claims and Google's defenses. How the algorithms and products work, including how bids are curated and auction winners are chosen, are central disputed issues in this case. Indeed, throughout the complaint, Plaintiffs allege that Google's algorithms and features were developed to give Google an unfair anticompetitive advantage. Many of the anticompetitive acts alleged are, at a very basic level, Google's development and implementation of source code by engineers and project managers. For that reason, accessing and understanding the source code is imperative. Plaintiffs' experts must be given a full and fair opportunity to verify, analyze, and describe to a jury precisely what Google did that allowed it to obtain an unfair competitive advantage.

 Plaintiffs' experts intend to use Google's source code (along with the documents and data explaining this source code) to explain how the central products and features in this case operate. This information will allow Plaintiffs' experts to explain the operation of Google's features and algorithms to the jury, as well as enable Plaintiffs' experts to develop accurate models of Google's conduct.

During the investigation, the United States attempted to understand key functions of Google's products through its investigative depositions of Google employees. But those efforts were thwarted by witnesses that disclaimed specific knowledge about the products and their precise features.[5]

In making the requested source code available, Google has the benefit of a Protective Order that it helped draft and prepare and which specifically contemplates the production of source code. *See* ECF No. 203. This Protective Order specifically mentions and defines "Source Code"; lists "Source Code" in its bucket of "Highly Confidential" information; and provides a detailed ten-page "Source Code Protocol" for the step-by-step production of source code. *Id*. at App. C. As another court has held: "There are often protections put in place for the disclosure and viewing of such sensitive information. With such protections in place, *there is no elevated standard when seeking the discovery of source code*; a party need only satisfy the general provisions of RCFC 26(b)(1) when seeking the 'discovery of the source code as relevant to its claims.'" *Thales Visionix, Inc. v. United States*, 149 Fed. Cl. 38, 48 (Fed. Cl. 2020) (quoting *Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913 n.9 (Fed. Cir. 2013)) (emphasis added). Here, Google has all the protections it needs and has advocated for, and its claims of "substantial risk of serious harm" cannot be permitted to prevent the production of essential source code where Google has sought, and agreed to, detailed and onerous protections in a Protective Order.

---

[5] Google argues in its responses to Plaintiffs' first requests for production that the materials received in discovery during the investigation should be adequate for Plaintiffs' needs. But as the United States has stated to Google on multiple meet and confers, the United States did not receive a full and complete production of source code and source code-related documents during the investigation.

Nonetheless, Plaintiffs attempted to find a reasonable way to respond to Google's concerns while maintaining Plaintiffs' ability to obtain necessary information through discovery. But in light of Google's failure to promptly provide any workable counterproposal, Plaintiffs must request relief from this Court. As with the previous request, Plaintiffs will continue to meet and confer with Google while this motion is pending in the hopes that an agreement on this important question can be reached promptly.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Google to produce documents from the files of Successor Custodians and to make full and complete responses to Plaintiffs' RFPs 39-43.

Dated: May 26, 2023

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Andrew N. Ferguson<br>ANDREW N. FERGUSON<br>Solicitor General<br>STEVEN G. POPPS<br>Deputy Attorney General<br>TYLER T. HENRY<br>Assistant Attorney General |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>/s/ Michael J. Freeman<br>MICHAEL J. FREEMAN<br>/s/ Kelly D. Garcia<br>KELLY D. GARCIA<br>/s/ Amanda M. Strick<br>AMANDA M. STRICK<br>/s/ Aaron M. Teitelbaum<br>AARON M. TEITELBAUM | Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Kelly.Garcia@usdoj.gov | Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |
| Attorneys for the United States | |