**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

UNITED STATES, *et al.*,

                              *Plaintiffs*,

    vs.

GOOGLE LLC,

                              *Defendant*.

No: 1:23-cv-00108-LMB-JFA

**GOOGLE LLC'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF**
**SUCCESSOR CUSTODIAN DOCUMENTS AND SOURCE CODE**

The Court should deny Plaintiffs' Motion to Compel (the "Motion") production of documents that they now describe as key to their claims but which the DOJ failed to request during its three-year-plus investigation of Google. Having failed to seek these documents when they had the opportunity to do so, Plaintiffs now demand them within the compressed timeframe for fact discovery. Plaintiffs should not be allowed to use this Court's well-earned reputation for speed and efficiency to unduly burden Google with discovery concerning information they did not see fit to seek during their investigation.

Plaintiffs' request that Google be compelled to add successor custodians in addition to the 31 custodians that Google has already agreed to conditionally add should be denied.[1] Plaintiffs represented to the Court that they "don't intend to duplicate the efforts that have

---

[1] As described below, Google's agreement to add the 31 custodians was conditional on the collection process resulting in a reasonable and proportionate universe of additional documents to review.

1

already occurred during the investigation phase, and we will be as efficient as possible in seeking third-party requests and seeking a moderate amount of refreshing of data from Google as well," March 24, 2023 Tr. at 6:7-11, Dkt. 70, but Plaintiffs' requests to date require Google to review two million additional documents beyond what was already reviewed and produced in Plaintiffs' pre-complaint investigation.   For the 31 custodians Google has voluntarily agreed to add, Plaintiffs were able to articulate their connection to the claims and defenses in the case.   But for the successor custodians, Plaintiffs have not articulated how these individuals are relevant or proportional to the needs of the case.   Plaintiffs' request should therefore be denied.

As for Plaintiffs' motion to compel source code, Google has already agreed to search for and make available (to the extent it exists) source code for the specific features and algorithms at issue.   Specifically, Google has agreed to make available nine of the twelve categories of source code requested.[2]   Google has also proposed to conduct broad searches for technical explanatory materials that Plaintiffs seek, and Plaintiffs have not challenged the sufficiency of those proposals.   The remaining three categories of source code identified by Plaintiffs do not relate to any specific feature or algorithm.   They are ill-defined, catch-all categories of source code that are not susceptible to a reasonable search, and Plaintiffs have not explained how they are relevant or necessary—much less proportional to the needs of the case.

## BACKGROUND

This case comes on the heels of an expansive three-year-plus investigation into several of Google's businesses—including digital advertising—led by the United States Department of Justice Antitrust Division ("DOJ").   From August 2019 to October 2020, the DOJ issued five Civil Investigative Demands ("CID") containing 73 requests.   Following its filing of a lawsuit

---

[2] Google has agreed to make source code available pursuant to the procedures described in Appendix C of the Protective Order, Dkt. 203.

regarding Google's Search business in October 2020,[3] DOJ continued its ad tech investigation with another CID containing 37 broad requests related to Google's advertising technology products.   During that time, the DOJ had tremendous leverage over Google to demand documents and information.  In response to the DOJ's CIDs, Google produced nearly 3 million documents and the DOJ deposed at least 30 Google employees.

Plaintiffs filed their lawsuit in this case on January 24, 2023.  On March 27, 2023, Plaintiffs issued their First Set of Requests for Production (the "Requests").  Google timely served its Objections on April 11, 2023 and its Responses on April 26, 2023.  The parties have since met and conferred on six separate occasions to discuss Plaintiffs' Requests, including Plaintiffs' Requests for successor custodians and source code.

**Plaintiffs' Request for Successor Custodians**

Along with its Objections, on April 11, 2023, Google provided Plaintiffs with a comprehensive plan to meet its discovery obligations (the "Discovery Proposal").  Google's Discovery Proposal involved searching the files of 119 custodians over a ten year period—more than had been negotiated and agreed to during the course of the DOJ's expansive ad tech investigation.  As a result, Google is in the process of reviewing more than 2 million additional documents to respond to Plaintiffs' Requests.

On April 14, 2023, Plaintiffs responded to Google's Discovery Proposal and requested that Google: (1) add 15 identified custodians for specific reasons that DOJ provided, (2) identify and add custodians with information relevant to Plaintiffs' Federal Agency Advertiser claims, (3) identify and add custodians from Google's publisher partnership group, and (4) identify successors to all of the 119 custodians proposed by Google.

---

[3] *See* Compl., *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Oct 20, 2020), ECF No. 1.

Google agreed to the vast majority of Plaintiffs' requests and, as a result, is currently in the process of adding more than 30 custodians in response to Plaintiffs' specific requests. Google made clear to Plaintiffs that the addition of each incremental custodian is a time-consuming process that can materially increase the population of over 2 million documents already being reviewed by Google.  But despite that burden, Google: (1) conditionally agreed to add all 15 of the custodians specifically identified by Plaintiffs,[4] (2) identified and conditionally agreed to add 14 custodians likely to have relevant information on the sale of digital advertising to Federal Agency Advertisers, and (3) identified and conditionally agreed to add 5 custodians from Google's publisher partnership group.  In each case, Google's agreement to add the identified custodians was conditional on the collection process resulting in a reasonable and proportionate universe of additional documents to review.

Given Google's agreement to make a substantial custodial production, that leaves only Plaintiffs' fourth request—that Google identify post-October-2020 successors to all 119 custodians included in Google's Discovery Proposal—which is the subject of the instant Motion. Google told Plaintiffs that their request to identify 119 successors is burdensome because Google does not systematically maintain information on successors in the ordinary course of business, and so the only way to address the request is through individualized manual inquiries.  That is because roles and responsibilities at Google are not static, reorganizations happen with some frequency, and teams often redistribute work or direct reports as employees change teams or depart the company.  Given this fluidity, there is no centralized system tracking successor information.

---

[4] Google intends to add one of those custodians for a limited time period because he left his role in the pertinent business in 2014.

In light of the burdensome nature of this request and the fact that the conduct at issue occurred over a long period of time before 2020, Google asked Plaintiffs to narrow their request and identify a priority set of custodians who are likely to have relevant information post October-2020.  Plaintiffs responded with a list of 63 custodians, but still did not explain why post-October 2020 documents for these 63 individuals would be relevant to Plaintiffs' claims.

Despite Plaintiffs' failure to address relevance and the burden involved in responding, on May 24, Google provided successor information for six senior employees that were the focus of Plaintiffs' queries, and stated that it would provide further information by the end of the week. As promised, on May 26, Google provided additional information for about 39 of the 63 Google employees identified in Plaintiffs' May 10 email.[5]  This included confirming that either no equivalent successor existed or the successor was already captured in the existing custodian list for the vast majority of employees.  Google also confirmed that it was continuing to investigate other possible successors.

Just two hours later, and without further meet and confer, Plaintiffs filed the instant Motion to "compel Google to complete its search for and produce relevant materials from the custodial files of successor employees . . . or otherwise confirm that the employees are already included on Google's custodian list."  Mtn. at 3-4.  The Motion does not assess relevance or narrow the relief sought in light of the successor information that Google had already provided prior to the Motion being filed.

**Plaintiffs' Requests for Source Code**

Plaintiffs also requested source code and associated explanatory materials, which they now characterize as being "at the Heart of This Case" and "crucial to allow Plaintiffs a fair

---

[5] An anonymized version of the successor information Google provided on May 26 is provided in Exhibit A to protect the privacy of non-party employees.  Google has already provided Plaintiffs with the non-anonymized information in its May 26, 2023 letter to K. Garcia.

opportunity to prosecute their case and understand Google's potential defenses."  Mtn. at 4-5. But the DOJ never included similar requests for this "crucial" information during its three-year-plus investigation.

Google timely served its Objections on April 11, 2023 and its Responses on April 26, 2023.  Notwithstanding its Objections, Google agreed to meet and confer with Plaintiffs regarding all five Requests that are the subject of the instant Motion.

At the outset of the meet and confer process, Google told Plaintiffs that it was considering Plaintiffs' belated demands for source code in good faith, but explained that Google's source code is extremely sensitive, and that identifying code potentially responsive to the Plaintiffs' requests, some of which spans over 15 years, would be a burdensome process that could take weeks to resolve.  Google also explained that the process of identifying potentially responsive lines of code (out of a much larger universe of source code) involved speaking with multiple employees across Google.

To complicate matters further, Plaintiffs' Requests for source code have been a moving target.  After initially demanding both source code and pseudocode, on May 5 Plaintiffs proposed that, in lieu of a production of source code, Google could instead produce a "complete repository" of pseudocode, which Plaintiffs proposed to evaluate over a two-week period and then inform Google whether (and to what extent) they would continue to press their request for source code.

Google worked diligently to address Plaintiffs' newly-revised Requests.  On May 23 Google informed Plaintiffs that it had been unable to identify any such "complete repository" of pseudocode requested by Plaintiffs.  In the same meet and confer, Google told Plaintiffs that it was nearing the end of its inquiries regarding production of the source code itself and anticipated

giving Plaintiffs a substantive response by May 30, 2023.  Plaintiffs said that they would not wait and planned to file a motion to compel.

Google asked that Plaintiffs refrain from filing any motion because the parties were not at an impasse.   Providing further context, Google explained to Plaintiffs that May 30 was the deadline for substantial completion of production in the parallel proceedings in the Southern District of New York and that Google was working diligently to respond in tandem to similar requests for source code made by the MDL plaintiffs.  Google specifically asked that—consistent with the Coordination Order negotiated by the parties across the two cases (and agreed to by the DOJ)—it be allowed to respond to these requests at the same time to make the process more efficient.  Plaintiffs refused.

On May 26, 2023, Google sent Plaintiffs a letter intended to resolve all remaining disputes as to source code.  Google explained that, subject to the provisions of the governing Protective Order and associated Source Code Protocol, Google is prepared to search for and make available source code sufficient to describe the following features, to the extent it exists and can be located: Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Minimum Bid to Win aka Highest Other Bid, Smart Bidding, Poirot, and Bernanke (including Global Bernanke and Bell).

That letter concluded:

In light of Google's extensive good faith cooperation in discovery, we think that litigating these issues would be a waste of judicial resources.  The fact that your letter contemplates further meeting and conferring on these issues *after* the filing of a motion to compel supports our view that the parties are not at an impasse and that the disputes set forth in your letter are manufactured.  Google remains willing to meet and confer.

Plaintiffs did not meet and confer and instead filed this Motion.

**ARGUMENT**

Given the schedule, and the DOJ's commitment, made before this Court, to focus its discovery requests on a refresh of the productions made during its investigation, the DOJ should not be permitted now to leverage the speed and efficiency of this Court, impose burdensome requests, and then prematurely request judicial intervention. Google has agreed to produce responsive information consistent with the Court's discovery deadlines, just not on the timetable demanded.

Plaintiffs' request for the additional successor custodians should be denied because Plaintiffs have not tethered the roles of post-2020 successors to the pre-2020 conduct alleged in the Complaint. Google has already agreed to add 31 more custodians at Plaintiffs' specific request when Plaintiffs were able to explain the relevance of the requested custodians. Plaintiffs have already amassed nearly 3 million of Google's documents and Google has agreed to review over 2 million more drawn from the files of 150 custodians. Plaintiffs' unsubstantiated assertion that every possible successor must be "key" and added as a custodian is insufficient to show that the discovery they demand is "proportional to the needs of the case." Fed. R. Civ. P. 26. What the DOJ described to this Court as a mere "refresh" cannot amount to detailed discovery on a scale equal to or exceeding the 3-year pre-filing review already conducted.

Plaintiffs' request for source code should also be denied. Source code is extremely sensitive, and Plaintiffs are required to show that its production is both relevant *and* necessary to the claims and defenses in the case. Notwithstanding this standard, Google has agreed to make available source code for the specific features and algorithms that Plaintiffs have requested. Google has also proposed comprehensive searches to capture the related explanatory material sought by Plaintiffs, and Plaintiffs have not challenged the sufficiency of those searches. The

only remaining categories of source code sought by Plaintiffs' Motion are an ill-defined selection of catch-alls as to which Plaintiffs made no effort to discharge their burden of showing relevance and necessity.  The Court should deny Plaintiffs' Motion as it pertains to those sundry categories.

In filing their Motion two hours after Google sent a letter intended to put to rest all of these issues, Plaintiffs have acted prematurely.  This Court has set an "aggressive" schedule in this case and encouraged the parties "make good use of the time that [they] have" and to "focus [their] attention on certain things" because it will not be possible to "turn over every grain of sand."  March 24, 2023 Tr. at 18:6-10, Dkt. 70.  Plaintiffs' Motion ignores that guidance.

## I.   Plaintiffs Have Not Met Their Burden to Compel the Addition of Successor Custodians

In its Discovery Proposal, Google identified 119 custodians that would form the basis of its document review responding to Plaintiffs' Requests.[6]  Those 119 custodians comprised over 100 that were negotiated and agreed with the DOJ during the course of its investigation, plus additional custodians that Google identified to respond to Plaintiffs' Requests.  As noted above, through the meet and confer process, Google has conditionally agreed to add—at Plaintiffs' explicit request—31 further custodians for which Plaintiffs were able to articulate a concrete nexus to the claims and defenses in the case.  For any additional custodians, the burden rests with

---

[6] It is a basic tenet of discovery that the responding party—here, Google—bears the initial responsibility for determining which custodians should be searched for relevant documents.  This Court, like most around the United States, has endorsed the Sedona Principles. *See Brink's Co. v. Chubb Eur. Grp. Ltd.*, No. 3:20-cv-520, 2021 WL 5083335, at *4 n.2 (E.D. Va. Feb. 24, 2021) (citing the Sedona principles favorably in discussing Rule 26's proportionality standard).  Under Sedona Principle 6, the "responding party is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals." *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS) (JCF), 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017); *see also F.D.I.C. v. Baldini*, No. 12-7050, 2014 WL 1302479, at *8 (S.D.W. Va. Mar. 28, 2014) (Noting that Rule 34 "plainly contemplates that [the responding party] must take[] steps initially to locate ESI responsive to each of [the] requests" where the requesting party has "no familiarity or working knowledge respecting the ESI's responsiveness").

Plaintiffs to "demonstrate that the additional requested custodians would provide *unique* relevant information by providing . . . evidence that there are unique responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians." *Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17 Civ. 7417 (VM) (SLC), 2020 WL 7383940, at *6 (S.D.N.Y. Dec. 16, 2020) (internal quotation marks and citation omitted); *accord In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 4501794, at *1 (N.D. Fla. Aug. 5, 2020).

Plaintiffs have not met that burden.  Their Motion does nothing to tie the successor-custodians to the allegations in their Complaint beyond the blanket assertion that they must be "key" simply because they took over a role that may have been relevant to an allegation of historical conduct.  *See* Mtn at 2.  That is insufficient under Federal Rule of Civil Procedure 26(b)(1), because "[r]elevance is . . . the foundation for any request for production." *Cook v. Howard,* 484 Fed. App'x. 805, 812 (4th Cir. 2012)*; see also Blankenship v. Fox News Network*, No. 19-cv-00236, 2020 WL 9718873, at *18 (S.D. W.Va. Sept. 21, 2020) (denying in part plaintiff's motion to compel discovery from individuals organized by job titles because plaintiff failed to demonstrate relevance of those individuals to their claims).

## II.    Google Had Already Agreed to Search For and Provide All Relevant Source Code Prior to Plaintiffs Filing Their Motion

Plaintiffs' Motion should be denied as moot to the extent that it seeks to compel production of source code regarding specific features and algorithms referenced in the Complaint.  That is because Google had (prior to Plaintiffs filing their Motion) agreed to search for and make available that source code to the extent that it exists.  Plaintiffs' Motion should be denied to the extent that it seeks other broad and ill-defined categories of source code because

Plaintiffs have failed to make the required showing of necessity (in addition to relevance) for those broad, catch-all requests.

Federal Rule of Civil Procedure 26(c)(1)(G) allows the court, for good cause, to issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." In order for the court to apply the rule, two criteria must exist. *First*, the material sought to be protected must be "a trade secret or other confidential research, development, or commercial information." *Id.* That condition is satisfied here because it is well settled that source code constitutes a trade secret. *See, e.g.*, *SDSE Networks, Inc. v. Mathur*, 2022 WL 18539944, at *4-5 (E.D. Va. Dec. 28, 2022) (finding that source code qualifies as a trade secret); *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 663 (4th Cir. 1993) ("[S]ource code can and does qualify as a trade secret."). Google's source code is no exception.

*Second*, there must be a "good cause" basis for granting the request for disclosure. Fed. R. Civ. P. 26. "[D]isclosure [of trade secrets] will be required" if "the information sought is relevant and necessary." *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1185-87 (D.S.C. 1975) (noting that "courts are loath to order disclosure of trade secrets absent a clear showing of an immediate need"); *see also Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008) (discussing the required showing by plaintiffs seeking production of source code "before disclosure of so valuable and vulnerable an asset is compelled"). If confidential or trade secret information is not clearly relevant, it is not an abuse of discretion to deny access altogether. *See, e.g.*, *Keyes v. Lenoir Rhyne Coll.*, 552 F.2d 579 (4th Cir. 1977) (affirming denial of access and noting that the district court must use discretion to balance one party's need for discovery against the other party's need for confidentiality).

Plaintiffs' Motion seeks to compel production of documents, including source code, responsive to the following Requests.

**Plaintiffs' Requests 39, 40, and 41**

Requests 39 seeks "[s]ource code repositories and related repositories, including training data, launch or release dates, pseudocode, and the implementation status or roll-out associated with that source code," relating to twelve purported "features and any successors or updates to those features."   Mtn at 4.   Of those twelve "features" listed in Request 39, the first nine implicate specific features or algorithms identified in Plaintiffs' Complaint, namely:  "(1) Project **Bernanke** (including **Global Bernanke** and Project **Bell**); (2) Project **Poirot** (also known as optimized fixed CPM bidding and Automated Bidding); (3) AdX's (sellside) **dynamic revenue share**; (4) AdX's **predicted highest other bidder** (pHOB) algorithm; (5) **Smart Bidding**, including any inputs to and outputs from the feature or program, including but not limited to minimum bid to win; (6) **Dynamic Allocation**; (7) **Enhanced Dynamic Allocation**; (8) Project **Bell**; (9) **Reserve Price Optimization** (RPO)."  *Id*. (emphasis added).[7]

*Source Code*

Prior to Plaintiffs filing their Motion, Google informed Plaintiffs that it would agree to search for and make available source code sufficient to describe the following features, to the extent it exists and can be located: **Bernanke** (including **Global Bernanke** and **Bell**), **Poirot**, **Dynamic Revenue Share**, Minimum Bid to Win aka **Highest Other Bid**, **Smart Bidding**, **Dynamic Allocation, Enhanced Dynamic Allocation, and Reserve Price Optimization**. Plaintiffs' motion should be denied as moot as to those categories because Google has agreed to search for and make available this source code to the extent that it exists.  *See Romfo v.*

---

[7] Google does not understand the difference between Plaintiffs' categories (1) and (8) to the extent that they both refer to "Project Bell."  As set forth below, Google has agreed to search for and provide source code for "Bell" to the extent that it exists.

*Scottsdale Ins. Co.*, No. 5:17-CV-422-D, 2019 WL 1210105, at *3 (E.D.N.C. Mar. 13, 2019) (denying in part a motion to compel as moot where the responding party had "agreed to produce" responsive documents "but had not done so at the time the motion was filed").

By contrast, the remaining three categories of "features" in Plaintiffs' Request 39 are not features, but are ill-defined catch-alls that do not pertain to any specific feature or algorithm. Rather, they seek "(10) **any** curation function for the Related Products that determine which exchanges, DSPs, and Ad Networks to call; (11) **any** bid, price floor, or auction optimization algorithm, product, or feature; and (12) **any** automated means or manner of bidding, whether on individual bids or on a campaign-level basis." Mtn. at 4. Plaintiffs have never articulated what, specifically, they are seeking through these catch-all requests and their Motion provides no further clues.[8]

As to these three remaining categories, Plaintiffs' Motion fails because Plaintiffs have not made the requisite showing of relevance *and* necessity. *See*, *e.g.*, *Keyes*, 552 F.2d at 581 (noting that district court must use discretion to balance one party's need for discovery against the other party's need for confidentiality); *see also In re Apple & AT & TM Antitrust Litig.,* No. C–07–05152 JW (PVT), 2010 WL 1240295, at *3 (N.D. Cal. Mar. 26, 2010) (denying motion to compel source code where plaintiffs had not established that the source code they sought was "relevant and necessary" and observing that "[p]laintiffs only speculate that the additional source code may be relevant"). What Google has already offered to produce is more than sufficient for Plaintiffs' purposes—Plaintiffs are "not entitled to the whole universe of source code . . . at issue because . . . there are many functions within the relevant [programs] which have no bearing on

---

[8] Plaintiffs assert that Google agreed to produce "certain but not all of the source code requested by Plaintiffs." Mtn. at 6. It is unclear what Plaintiffs believe they are missing, but to the extent they believe something was omitted from the first nine categories of specific features or algorithms, Google remains willing to meet and confer regarding the production of specific identifiable source code in response to Plaintiffs' requests.

this case." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, No. 00-1412 (ADM/RLE), 2001 WL 37130770, at *7 (D. Minn. Dec. 14, 2001).

The need to make a clear showing of relevance is not relaxed, as Plaintiffs suggest, simply because a protective order has been entered. *See* Mtn. at 10. A "protective order is not a substitute for establishing relevance or need. Its purpose here is to prevent harm by limiting disclosure of *relevant* and *necessary* information." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990). As courts have recognized in analyzing the special protections afforded to source code, "the protections set forth in [a] stipulated confidentiality order are careful and extensive, but nevertheless not as safe as nondisclosure." *Viacom*, 253 F.R.D. at 260.

*Other Explanatory Materials*

In addition to source code repositories, Request 39 also seeks "related repositories, including training data, launch or release dates, pseudocode, and the implementation status or roll-out associated with that source code." Mtn. at 4. Similarly, Requests 40 and 41 seek the following by reference to Request 39:

> Request 40: All documents created since January 1, 2008, related to language explanations, pseudocode, code repositories, design documents, A/B or comparison testing, and any other manuals or resources explaining the features, functions, and operation of the source code used to operate the features delineated in Request No. 39 and any updates to or successors of those features.

> Request 41: Documents sufficient to show the inputs and outputs, including but not limited to a list of any variable fields, categories of data, or Product Requirements Documents (PRDs), to the source code and algorithms that are used in operating the features delineated in Request No. 39 or successors or updates to those features.

Google has already agreed to conduct comprehensive searches to identify explanatory documents responsive to Plaintiffs' Requests 39-41. As summarized in the tables below, Google has already proposed (and Plaintiffs have agreed to) expansive searches intended to capture explanatory materials and other documents that relate to these Requests. In addition to the 80

comprehensive search terms originally proposed by Google, Plaintiffs proposed 23 additional search strings, and Google agreed to all of them.[9]   The tables below summarize agreed-upon searches that  address Plaintiffs' Requests 39-41.[10]

| Subcategory of Plaintiffs' Requests 39-41 | Searches Capturing Plaintiffs' Request |
|---|---|
| (1) Project **Bernanke** (including Global Bernanke and **Project Bell**) | All documents that hit on "**Bernanke**" and "**Project Bell**." |
| (2) Project Poirot (also known as optimized fixed CPM bidding and Automated Bidding) | All documents that hit on "**Poirot**" or the misspelling "**Poriot**." |
| (3) AdX's (sellside) **dynamic revenue share** | All documents that hit on "**DRS**" as well as documents concerning **Dynamic Revenue Share** with appropriate modifiers. |
| (4) AdX's predicted highest other bidder (**pHOB**) algorithm | All documents that hit on "**pHOB**" or "**HOB**." |
| (5) **Smart Bidding**, including any inputs to and outputs from the feature or program, including but not limited to minimum bid to win | All documents that hit on "**SmartBid**" or similar variations. |
| (6) **Dynamic Allocation** | Documents concerning **dynamic allocation** with appropriate modifiers. |
| (7) **Enhanced Dynamic Allocation** | Documents concerning **enhanced dynamic allocation** with appropriate modifiers. |
| (8) **Project Bell** | All documents that hit on "**Project Bell**." |
| (9) Reserve Price Optimization (**RPO**) | Documents concerning **RPO** with appropriate modifiers. |

---

[9] In its Objections to Requests 39-40, Google stated that Plaintiffs had failed to show that production of source code was necessary "particularly given the extensive document production made and contemplated in the MDL Expanded Investigation Materials describing the operation of Google's ad tech products."  In its Objections to Request 41, Google also pointed Plaintiffs to its Discovery Proposal, which contemplates extensive custodial searches that will capture these related materials.

[10] The agreed searches are voluminous and we have summarized them here for the Court's convenience.  Google can provide full text of the search terms if the Court would find them helpful.

| Subcategory of Plaintiffs' Requests 39-41 | Searches Capturing Plaintiffs' Request |
|---|---|
| (10) Any curation function for the Related Products that determine which exchanges, DSPs, and Ad Networks to call | Documents concerning which products bid into auctions, including which exchanges, DSPs, and ad networks publishers could choose to call. |
| (11) Any bid, price floor, or auction optimization algorithm, product, or feature | Documents concerning the design or effect of bid, price floor, or auction optimizations, including documents on Poirot, Elmo, Marple, DA, EDA, DRS, Bernanke, Alchemist, Bell, RPO, UPR, Smart Bidding, and pHOB. |
| (12) Any automated means or manner of bidding, whether on individual bids or on a campaign-level basis | Documents concerning bidding algorithms, including documents on Poirot, Elmo, Marple, Bernanke, Alchemist, Smart Bidding, and pHOB. |

Plaintiffs' Motion should be denied as to explanatory materials because Plaintiffs'
Motion does not challenge the sufficiency of Google's expansive proposed searches that target
the specific materials sought in Requests 39-41.

**Plaintiffs' Request 42**

Plaintiffs' Motion should also be denied as to Request 42 for the same reasons.  Like
Request 39, Request 42 seeks production of "Source code repositories and related repositories,
including training data, launch or release dates, pseudocode, and the implementation status or
roll-out associated with that source code."  Mtn. at 4-5.  But in contrast to the first nine
subcategories of Request 39, Request 42 does not target any specific feature, but is instead an
ambiguous, catch-all request that seeks production of "source code . . . related to: (1) how bids
are selected and submitted in any product that generates, alters, or submits a bid to purchase an
impression in any Relevant Product or in AdMeld; (2) the way or method by which Relevant
Products and AdMeld determine or determined the winners of any real-time auction, waterfall
bidding, and any sales of impressions."  *Id.*  As to source code, for the same reasons as noted

above in connection with Request 39, Plaintiffs have failed to make the requisite showing of relevance *and* necessity. *Supra* at 13-14.

With respect to explanatory materials, notwithstanding its objections, Google's Discovery Proposal already includes the following extremely broad searches targeting documents responsive to Request 42:

| Subcategory of Plaintiffs' Request 42 | Searches Capturing Plaintiffs' Request |
|---|---|
| (1) how bids are selected and submitted in any product that generates, alters, or submits a bid to purchase an impression in any Relevant Product or in AdMeld | Documents concerning bidding algorithms, bid selection, and bid submission by exchanges, DSPs, or ad networks (i.e., including documents on Awbid, Poirot, Elmo, Marple, Bernanke, Alchemist, Smart Bidding, and pHOB). |
| (2) the way or method by which Relevant Products and AdMeld determine or determined the winners of any real-time auction, waterfall bidding, and any sales of impressions. | Documents concerning AdMeld, and documents concerning the method of sales of impressions in Relevant Products and Admeld, including direct sales and sales by real-time auction, Exchange Bidding, header bidding, and waterfall bidding. |

Plaintiffs' Motion should be denied as to non-source code explanatory materials because Plaintiffs' Motion does not challenge the sufficiency of Google's expansive proposed searches that target the specific materials sought in Request 42.

**Plaintiffs' Request 43**

Plaintiffs' Motion fails with respect to Request 43 for the same reasons as the prior Requests. Request 43 seeks production of "All documents created since January 1, 2005, related to plain language explanations, code repositories, pseudocode, design documents, A/B or comparison testing, and any other manuals or resources explaining the features, functions, and operation of the source code used to: (1) determine the selection of bids into or sent from any

Relevant Product or in AdMeld; and (2) determine the winners of any real-time auction, waterfall bidding, and any sales of impressions."

With respect to source code, Request 43 does not identify any specific feature or algorithm, and so Plaintiffs have failed to show that production of source code is both relevant *and* necessary. *Supra* at 13-14. As to searches for related documents, Google objected to this Request because it "purports to require Google to produce information from Ariane and RASTA beyond the approximately 40,000 documents from Ariane that were produced to the U.S. Department of Justice, many of which include summaries of the results of RASTA experiments." Plaintiffs' Motion does not address those comprehensive productions of responsive material.

With respect to explanatory materials, notwithstanding its Objections, Google's Discovery Proposal contemplates extensive custodial searches that will capture responsive information. Specifically, Google's Discovery Proposal already includes the following searches targeting responsive materials:

| Subcategory of Plaintiffs' Request 43 | Searches Capturing Plaintiffs' Request |
|---|---|
| (1) determine the selection of bids into or sent from any Relevant Product or in AdMeld; | Documents concerning bidding algorithms, bid selection, and bid submission by exchanges, DSPs, or ad networks (i.e., including documents on Awbid, Poirot, Elmo, Marple, Bernanke, Alchemist, Smart Bidding, and pHOB). |
| (2) determine the winners of any real-time auction, waterfall bidding, and any sales of impressions. | Documents concerning the determination of winners of sales of impressions, including winners of direct sales and sales by real-time auction, Exchange Bidding, header bidding, and waterfall bidding. |

Plaintiffs' Motion should be denied as to non-source code explanatory materials because Plaintiffs' Motion does not challenge the sufficiency of Google's expansive proposed searches that target the specific materials sought in Request 43.

*  *  *

Plaintiffs filed this Motion prematurely, after they were on notice that Google had agreed to provide almost all of the relevant information that they were seeking, and without making any attempt to justify their Requests for the limited information that Google did not agree to provide. The Federal Rules of Civil Procedure and this Court's Local Civil Rules require parties, through counsel, to meaningfully meet and confer before filing a discovery motion in an effort to resolve disputes without judicial intervention.  *See* Fed. R. Civ. P. 37(a)(1).  And Local Civil Rule 37(E) requires that counsel "confer to decrease, in every way possible the filing of unnecessary discovery motions."

Plaintiffs' Motion is a waste of judicial resources.  Google has complied with its responsibility under the rules, having met and conferred with Plaintiffs in good faith on multiple occasions to resolve any disputes regarding successor custodians and source code.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated: May 31, 2023                          Respectfully submitted,

                                             */s/ Craig C. Reilly*
                                             CRAIG C. REILLY (VSB # 20942)
                                             209 Madison Street
                                             Alexandria, VA 22314
                                             Telephone: (703) 549-5354
                                             Facsimile: (703) 549-5355
                                             Email: Craig.reilly@ccreillylaw.com

                                             Eric Mahr (*pro hac vice*)
                                             Julie S. Elmer (*pro hac vice*)
                                             Andrew J. Ewalt (*pro hac vice*)
                                             Lauren Kaplin (*pro hac vice*)
                                             Jeanette Bayoumi (*pro hac vice*)
                                             Sara Salem (*pro hac vice*)
                                             FRESHFIELDS BRUCKHAUS

DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

Karen L. Dunn (*admitted pro hac vice*)
Jeannie Rhee (*admitted pro hac vice*)
William Isaacson (*admitted pro hac vice*)
Joseph Bial (*admitted pro hac vice*)
Byron Becker (VSB # 93384)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
jrhee@paulweiss.com
wisaacson@paulweiss.com
jbial@paulweiss.com
bpbecker@paulweiss.com

Meredith Dearborn (*admitted pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

Daniel S. Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus
Koren Wong-Ervin (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036

Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com
kwongervin@axinn.com

*Counsel for Google LLC*