**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

UNITED STATES, *et al.*,

　　　　　　　　　　*Plaintiffs*,

　　vs.

GOOGLE LLC,

　　　　　　　　　　*Defendant*.

No. 1:23-cv-00108-LMB-JFA

**GOOGLE LLC'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR *IN CAMERA* INSPECTION AND
<u>TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED</u>**

Plaintiffs' Motion fails to satisfy the standard required for *in camera* inspection in this District.  Where, as here, Google has provided Plaintiffs both a detailed privilege log and 30(b)(6) deposition testimony that establishes the factual basis for each of its claimed assertions of privilege, Plaintiffs do not have a right to an *in camera* review.  Plaintiffs can obtain *in camera* review only if they present "'a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged.'"  *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *4 (E.D. Va. July 16, 2019).  Nor should this Court reward Plaintiffs' delay in challenging Google's privilege and work product claims of which they have been aware for almost two years, particularly given that the United States had the opportunity over a year ago to ask about the basis for Google's privilege claims regarding the Remedy Projects when they deposed a Google 30(b)(6) witness for a full day on this very topic.  Plaintiffs' assertion that the Court should now spend its time to inspect *in camera* an initial sample set of 21 documents lacks support in

REDACTED VERSION

the record and fails because Plaintiffs have not met their burden to come forward with a sufficient factual basis to challenge Google's privilege assertions.

*First*, 17 of the 21 documents at issue are either fully protected from disclosure or properly contain redactions based on, at a minimum, the work-product doctrine, because they relate to or reveal the substantive details of projects Google undertook in direct response to then-active government investigations and with a view to possibly resolving those investigations or, if not, to resolving anticipated litigation.[1]  Each of those projects involved specific efforts to explore a range of potential remedies that could resolve the active investigations and avoid litigation.  This is classic work product.

*Second*, two of the remaining four documents are protected from disclosure by the attorney-client privilege because they involve either requests for or the provision of legal advice.[2]  Plaintiffs' primary basis for questioning Google's claims of privilege is their allegation, imported from news reports and allegations in other cases, that the documents are possibly being withheld on the basis of a "Communicate with Care training" that Google employees received.[3]  Such speculation does not constitute a factual basis sufficient to support

---

[1] Google has in good faith re-reviewed these 17 documents and determined that it could narrow its assertions of privilege over an identical redaction in two of the documents.  Google has reproduced these two documents to Plaintiffs.

[2] Google has in good faith re-reviewed these four documents and determined that it could narrow its assertions of privilege over two of the documents and produce the other two in full.  Google has reproduced these four documents to Plaintiffs.

[3] The United States made a similar "Communicate with Care" argument in its search case against Google, and Judge Mehta not only denied the United States' motion to compel and for sanctions; he mentioned Google's "good-faith effort" to consider any challenges to entries on its log. *See* Transcript of Status Conf. at 62, *United States v. Google LLC*, 1:20-cv-03010-APM (D.D.C. May 12, 2022), ECF No. 353 (rejecting DOJ's request for mass production of challenged documents because "there was no way I was going to . . . turn over those kind of records en masse to an adversary, given what seems to us to have been a good-faith effort by Google to go back and look at these records and produce them, re-review them, re-categorize them, de-privilege those that need to be de-privileged, and produce them to the plaintiffs").  And Plaintiffs' reference to sanctions in *In re Google Play Store Antitrust Litigation* is a red herring:  although the opinion mentioned "Communicate with Care," 2023 WL 2673109, at

REDACTED VERSION

*in camera* inspection.  Whether or not the document contained phrases such as "privileged and confidential" or "communicate with care," Google reviewed each and every document to make a separate privilege determination.  An exhibit Plaintiffs cite in their Motion illustrates this very point:  Google produced the document, despite the fact that it had been labeled "privileged" by the participants in the communication, because of the independent privilege review Google undertook.  *See* Mot. Ex. 5.

*Finally*, Plaintiffs' request for an *in camera* inspection of 21 documents that they claim are only a "sample" and, based on the Court's review, may warrant further *in camera* inspections, has no basis in the law.  It is tantamount to an improper request for an advisory opinion.  Privilege is determined on a document-by-document basis.  Yet Plaintiffs seek to bypass the required document-by-document determination by presenting to the Court a cherry-picked collection of documents.  The Court should decline to make any broad pronouncements about Google's approach to privilege and instead decide only the privilege claims relating to the particular documents that are the subject of the Motion.  As demonstrated below, the documents still at issue are protected by the attorney-client privilege or the work-product doctrine (or both), and Plaintiffs' Motion should be denied.

## BACKGROUND

Google's ad tech business has been the subject of regulatory investigations since early 2019.[4]  Several of the investigations have since ripened into litigation, including this case, while

---

\*2-3 (N.D. Cal. Mar. 28, 2023), the sanctioned conduct there involved an entirely separate issue, *id.* at \*7-10 (preservation of chat communications)—one that is not before this Court.

[4] These include investigations by the U.K. Information Commissioner's Office (initiated February 2019); the Irish Data Protection Commission (initiated May 2019); the French Competition Authority (initiated July 2019); the U.K. Competition and Markets Authority (initiated July 2019); the State of Texas, leading a coalition of state attorneys general (initiated September 2019); the Antitrust Division of the United States Department of Justice (initiated October 2019); and the European Commission (initiated November 2019).  *See* Opp. Ex. A, Declaration of Theodore Lazarus ¶ 5 ("Lazarus Decl.");  Mot. Ex. 29, Ltr. from J. Elmer, Feb.

REDACTED VERSION

others have concluded with settlements based on remedies packages offered by Google and accepted by the regulator.[5]  Complying with numerous requests for information and Civil Investigative Demands ("CIDs") on the aggressive timetables demanded by multiple government authorities was a huge undertaking, with Google producing nearly three million documents to the DOJ Antitrust Division alone.

The present dispute arises from Google's production of documents pursuant to multiple CIDs issued by the Antitrust Division during its lengthy investigation.  Google devoted immense resources to reviewing for privilege when producing documents in response to the CIDs.  The process involved first- and second-level reviews, re-reviews, and various levels of quality assurance, the latter of which resulted in post-production clawbacks and throwbacks, as is not uncommon in document productions of this size.  Google's outside counsel and contract attorneys have spent more than 42,000 hours in privilege-related work, and Google has updated and supplemented its privilege logs as it continued to produce more documents. The resulting privilege log identified roughly 180,000 documents as privileged—approximately 6% of Google's total production. Of the nearly three million documents produced to DOJ, Google clawed back 4,900.  *See* Mot. 23.  Google's privilege reviews were hardly a rote, box-checking exercise.  On the contrary, Google produced many documents labeled "privileged and confidential" and even communications involving attorneys, based on

---

25, 2022 at 3; *see also* Opp. Ex. B, Google 30(b)(6) Dep. 71:19-20 ("Google's position is consistent with everything that's contained in this Feb. 25 letter.").

[5] *See, e.g.*, *The Autorité de la Concurrence Hands Out a €220 Millions Fine to Google for Favouring Its Own Services in the Online Advertising Sector*, Autorité de la Concurrence (June 7, 2021), https://shorturl.at/oquL2.

REDACTED VERSION

its document-by-document review in light of applicable law, as Plaintiffs themselves acknowledge, *see* Mot. 12.[6]

In response to numerous active government investigations of its ad tech business and anticipated litigation, Google considered potential remedies in order to resolve those investigations and avoid litigation.  Beginning in late 2019, Google initiated a number of projects to develop and evaluate those potential remedies: Projects SingleClick, Stonehenge, Sunday, Monday, and Banksy (the "Remedy Projects").  Plaintiff United States has known about these Remedy Projects, and their asserted privileged nature, at least since August 19, 2021, when outside counsel for Google sent a letter to DOJ identifying materials created as part of these projects as being protected by the attorney-client privilege and work-product doctrine.  *See* Mot. Ex. 11, Ltr. from J. Elmer, Aug. 19, 2021.  That letter began a lengthy period of correspondence, lasting through July 2022, between Google and DOJ regarding Google's privilege claims over the Remedy Projects.  During this period, on February 28, 2022, DOJ deposed a Google corporate representative regarding the company's privilege and work-product assertions with respect to the Remedy Projects.  *See* Opp. Ex. B, 30(b)(6) Dep. of Alphabet at 61:8-62:7, 69:16-71:22 ("Google 30(b)(6) Dep."); *see also* Mot. Ex. 29, Ltr. from J. Elmer, Feb. 25, 2022; Opp. Ex. B, Google 30(b)(6) Dep. 71:19-20 ("Google's position is consistent with everything that's contained in this Feb. 25 letter.  And I am also here to ask [sic] any additional questions that you may have.").

As Google's corporate representative testified, each Remedy Project was an analysis of potential remedies undertaken because of and in response to active government investigations by regulators and in anticipation of litigation concerning Google's ad tech business.  *See* Opp.

---

[6] In fact, when it came to Google's attention that some of the redactions in six of the documents at issue here were overbroad, Google promptly provided Plaintiffs with complete or less redacted versions of the affected documents.  *See supra* nn.1-2.

REDACTED VERSION

Ex. B, Google 30(b)(6) Dep. 109:2-6, 153:7-11 (Project SingleClick); *id.* at 149:13-25, 188:24-189:4 (Project Stonehenge); *id.* at 72:17-22, 94:6-12 (Project Sunday); *id.* at 121:6-13, 132:10-24 (Project Monday); *id.* at 201:5-7, 201:17-204:20, 211:5-6 (Project Banksy); Opp. Ex. A, Lazarus Decl. ¶¶ 5-9. Accordingly, the Remedy Projects and the documents associated with them are classic work product.

Following Google's 30(b)(6) deposition, the United States took no steps—such as the filing of a CID enforcement action, as was its prerogative under 15 U.S.C. § 1314—to challenge Google's assertion of privilege, and largely stopped corresponding with Google over these claims for nearly a year.[7] Yet only now—nearly two years after having been notified of Google's privilege claims over these documents—have Plaintiffs moved to compel production of these documents.

## ARGUMENT

The Court should see Plaintiffs' Motion for what it is: an improper attempt to use a narrow set of cherry-picked documents as a key to unlock a much broader swathe of documents reflecting Google's strategic legal thinking about how to respond to active regulatory investigations (and potential litigation) regarding its ad tech business—including remedies that Google considered to possibly settle those investigations and anticipated litigation. This is classic work product, to which Plaintiffs are not entitled. Plaintiffs' Motion for *in camera* inspection lacks merit for the reasons set forth below. The Court should deny the Motion.

## I. Plaintiffs Fail to Justify *In Camera* Review

Google—through its detailed privilege logs and correspondence, as well as its 30(b)(6) deposition—has carried its initial burden of demonstrating that the attorney-client privilege

---

[7] DOJ tried to revive its long-abandoned challenge to Google's privilege and work-product assertions by sending a letter to counsel for Google a week before filing suit, *see* Mot. Ex. 1, Ltr. from B. Nakamura, Jan. 18, 2023, but then filed suit less than a week after doing so, without giving Google any meaningful chance to respond.

6

REDACTED VERSION

and/or work product doctrine apply to the documents at issue.  *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).  Because Google has carried that burden, Plaintiffs now must come forth with evidence to rebut Google's showing.  *Zetia,* 2019 WL 6122012, at *4 ("Plaintiffs must make a threshold 'showing of a factual basis adequate to support a good faith belief by a reasonable person' that an exception to the privilege may apply."); *accord NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) ("Once a prima facie showing of a privilege has been made, an opposing party can justify *in camera* inspection of the documents by advancing 'a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged.'" (citation omitted)); *Allstate Ins. Co. v. Warns*, 2013 WL 1310556, at *2 (D. Md. Mar. 28, 2013) (same); *Brown Univ. v. Tharpe*, 2012 WL 12894480, at *3 (E.D. Va. Mar. 30, 2012) (same).

For three reasons, Plaintiffs lack an adequate factual basis:

*First*, Google has established that it initiated the Remedy Projects in anticipation of litigation stemming from multiple active and ongoing regulatory investigations—a straightforward application of the work-product doctrine.  In addition to its privilege logs, Google has supported its privilege and work-product claims regarding the Remedy Projects through other extrinsic evidence, including a 30(b)(6) deposition and a declaration submitted with this Opposition.  Plaintiffs try to sidestep the issue by arguing that because some of the Remedy Projects bore a "nexus" to "strategic business decisions," the Remedy Projects were "business projects," whether or not they were initiated and conducted in anticipation of litigation.  Mot. 15.  But as discussed below, *infra* pp. 9, 11-13, that is not the law.

*Second,* Plaintiffs' general discussion of Google's "Communicate with Care" training fails to support their contention that the documents at issue in their Motion are not privileged. Mot. 14-15 (inviting the Court to review the documents "through the lens of Google's Communicate with Care policy").  Google's privilege determinations are based on the

REDACTED VERSION

substance of each document as part of its document-by-document review, and it is not claiming privilege on the basis of any "Communicate with Care" policy or training. Google's production of documents labeled "privileged" proves as much and illustrates the flimsiness of Plaintiffs' argument. Plaintiffs' speculation that documents may not be privileged does not justify *in camera* review. *In re NC Swine Farm Nuisance Litig.*, 2017 WL 2313470, at *6 (E.D.N.C. May 26, 2017) ("[M]ere speculation that the purpose was business and not legal does not justify *in camera* review.").

*Third*, the fact that Google has clawed back documents, as permitted by both the Federal Rules and the governing Protective Order in this case, does not warrant *in camera* review. *See* Fed. R. Evid. 502(b); Modified Prot. Order ¶ 12, ECF No. 203. Given the size and speed of the document productions it was required to make during the DOJ's investigation, Google's production process and its clawbacks have been manifestly reasonable. Courts in the Fourth Circuit and across the country recognize that, in electronic document reviews of this size and complexity—ranging in the millions of documents—perfection is impossible and privileged material will slip through a reasonable review. *See, e.g.*, *Zetia*, 2019 WL 6122012, at *10 (reasoning that "Rule 502 was intended to permit . . . relative efficiencies" in privilege review "while preserving privilege protections in the event of isolated disclosure"); *In re Grand Jury Investigation*, 142 F.R.D. 276, 280 (M.D.N.C. 1992) (recognizing that "perfect precaution" is not "required" in conducting privilege reviews (emphasis omitted)). In fact, clawing back only 4,900 documents out of a production volume of roughly 2.9 million (a clawback rate of 0.17%) reflects a robust and thorough privilege review. *See Zetia*, 2019 WL 6122012, at *9 (clawback rate of 0.003% reflected "an entirely reasonable error rate" compared to an unreasonable rate of approximately 30%). Google has also reasonably and promptly pursued its clawbacks. For example, in its clawback efforts over the Remedy Projects at issue in this Motion, once Google's outside counsel learned of the privileged nature of the projects in August 2021,

REDACTED VERSION

Google promptly sent letters to DOJ on a rolling basis to identify and claw back the inadvertently disclosed documents relating to those projects.[8]

Plaintiffs' mere suspicion or, quite frankly, distrust of Google's work product and privilege determinations does not provide a basis to burden this Court with *in camera* review. *Glaxo, Inc. v. Novopharm Ltd.*, 148 F.R.D. 535, 540 n.3 (E.D.N.C. 1993) ("If this court were to review each and every document withheld as privileged in litigation . . . for no reason other than counsel's distrust of his adversary, this courthouse could hardly function.").

## II.    Documents Relating to the Remedy Projects Are Work Product.

The work-product doctrine protects documents or tangible things prepared (i) in anticipation of litigation or for trial (ii) by or for a party (i.e., by or for a party or a party's representative).  Fed. R. Civ. P. 26(b)(3).  Documents created as part of the Remedy Projects or that describe or reveal the substance of the Remedy Projects satisfy both elements.[9]

---

[8] *See, e.g.*, Mot. Ex. 11, Ltr. from J. Elmer, Aug. 19, 2021.  Although Plaintiffs speculate that Google has clawed back documents only after realizing their "evidentiary value," Mot. 23, the facts say otherwise.  Google has engaged in multiple privilege re-reviews, which has led it not only to claw back 4,900 documents but also to throw back (i.e., de-privilege or lift redactions for) over 79,000 more.  Google does not deny that some of its 4,900 clawbacks were instigated after Google's counsel scrutinized the document when Plaintiffs sought to introduce it at a deposition.  There is nothing improper with clawing back a document after becoming aware of its privileged nature when the opposing party places the document at issue.  In fact, Rule 502(b) exists for this precise reason: to allow parties to remedy "inadvertent" disclosures without waiving their claims of privilege.  Fed. R. Civ. P. 502(b).  Any other holding would effectively require producing parties to meticulously re-review every single produced document for fear of waiver if the opposing party brings it up first.  And furthermore, this scenario accounts for a small minority of the clawbacks that Google has requested.

[9] Google is defending 17 of the 21 challenged documents on the basis of work-product protection. These 17 include Appendix Documents 1 (GOOG-DOJ-12766025), 2 (GOOG-DOJ-15231660), 5 (GOOG-DOJ-AT-01106088), 6 (GOOG-DOJ-AT-01106174), 8 (GOOG-DOJ-AT-01498627), 9 (GOOG-DOJ-AT-01514569), 10 (GOOG-DOJ-AT-01692081), 11 (GOOG-DOJ-AT-01887780), 12 (GOOG-DOJ-AT-01895607), 13 (GOOG-DOJ-AT-01914586), 14 (GOOG-DOJ-AT-02099758), 15 (GOOG-DOJ-AT-00660900), 16 (GOOG-DOJ-AT-00205841), 17 (GOOG-DOJ-AT-00030150), 18 (GOOG-DOJ-AT-00660895), 19 (GOOG-DOJ-AT-01007207), and 20 (GOOG-DOJ-AT-01687296).  Google has in good faith removed an identical redaction in Documents 15 (GOOG-DOJ-AT-00660900) and 18 (GOOG-DOJ-AT-00660895), because the material related to the non-

REDACTED VERSION

***In anticipation of litigation.***   The Remedy Project documents meet the first element, which asks whether the document was "prepared *because of* the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation."   *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); *accord, e.g.*, *Sher v. Barclays Cap. Inc.*, 2013 WL 3279801, at *3 (D. Md. June 26, 2013).[10]   This element, at its core, distinguishes "materials prepared in the ordinary course of business or pursuant to regulatory requirements or for another non-litigation purpose" from those prepared "in anticipation of litigation."   *Nat'l Union*, 967 F.2d at 984.

As Google's corporate representative testified, each of the five challenged Remedy Projects was initiated because of active and ongoing government investigations that could ripen into litigation, satisfying the anticipation-of-litigation requirement.   *See* Opp. Ex. B, Google 30(b)(6) Dep. 109:2-5, 144:13-145:5, 146:11-13, 151:5-17 (Project SingleClick was initiated by a Google in-house attorney and a Google manager in December 2019, supervised by Google in-house counsel, and "would never have been undertaken if [Google] did not anticipate litigation"); *id.* at 160:6-18, 188:20-23, 190:22-191:2 (Project Stonehenge was undertaken "to

---

privileged "Banksy" as opposed to the work-product-protected Project Banksy, *see infra* n.16, and has provided revised versions of these documents to Plaintiffs.   *See supra* n.1.

[10] Courts construe "litigation" broadly and include active regulatory investigations as equating to anticipated litigation.   For instance, a district court in this Circuit has found material to be work product when the material was created because of *anticipated* regulatory investigations. *See Adair v. EQT Prod. Co.*, 294 F.R.D. 1, 5-6 (W.D. Va. 2013).   Courts outside of this Circuit are in accord.   *See, e.g.*, *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, 2012 WL 12342816, at *3 (D.N.M. May 16, 2012) ("[O]nce a government investigation is begun, many courts concede that litigation may not be far behind.   And therefore documents that are prepared after a government investigation is already underway may well be accorded work-product protection"); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 147 (D. Mass. 2004) (finding "once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement"); *Galvin v. Hoblock*, 2003 WL 22208370, at *3-4 (S.D.N.Y. Sept. 24, 2003) ("[T]he term 'litigation' encompasses not only litigation in court, but also quasi-judicial proceedings before a government agency.").

REDACTED VERSION

be prepared in case of any litigation" resulting from identified regulatory investigations, and supervised by Google in-house counsel and involved U.S. and European outside counsel); *id.* at 73:7-11, 76:13-14, 88:14-15, 89:11-12, 96:16-98:3 (Project Sunday was initiated by a Google-in house attorney,[11] involved Google employees working "as specifically directed by legal," and undertaken to "start mapping out analyses" of remedy options in order "[t]o understand the implications of [Google's] potential responses to regulatory actions" that Google was "very concerned" would ripen into litigation); *id.* at 121:6-13, 123:3-14, 124:15-18 (Project Monday "was an analysis for a particular remedy to be undertaken due to . . . anticipated litigation" and included a small number of businesspeople working "[i]n conjunction with legal counsel [to] author[] a potential remedy"); *id.* at 200:22-201:7, 204:9-16, 205:6-17, 209:1-19, 211:5-6 (Project Banksy was undertaken because of the French Competition Authority's investigation as "a potential settlement with a regulatory authority," was part of remedies package French Competition Authority ultimately accepted, and was led and supervised by Google in-house counsel).  Because "the driving force behind the preparation of" the Remedy Project documents was anticipated litigation, the work-product doctrine shields them from disclosure.  *Nat'l Union*, 967 F.2d at 984.

---

[11] Plaintiffs' reliance on the individual deposition of ████████████ in claiming that lawyers were not involved in Project Sunday, *see* Mot. 20-21 (citing Ex. 30, Dep. of ████████ at 243:4-248:25), is misplaced for several reasons.  *First*, ████████████ himself testified that Ted Lazarus, an in-house Google attorney, was one of the members in charge of the "day-to-day" direction of Project Sunday.  *See* Mot. Ex. 30, Dep. of ████████████ at 249:1-5.  *Second*, DOJ requested, and Google put forward, a 30(b)(6) corporate representative specifically to give testimony on the Remedy Projects at issue, including Project Sunday.  That corporate representative testified that Ted Lazarus, the same in-house attorney ████████████ mentioned, initiated Project Sunday, Opp. Ex. B, Google 30(b)(6) Dep. 88:14-15, and that ████████████'s role in Project Sunday was in fact fairly limited, *see id.* at 85:12-86:13.  While the testimony of ████████████ and Google's corporate representative are not inconsistent, any marginal discrepancy between the two should be read in light of, and defer to, the 30(b)(6) testimony as representing Google's official position, which is also corroborated by the Declaration of Mr. Lazarus himself.  *See* Opp. Ex. A, Lazarus Decl. ¶ 7.

REDACTED VERSION

Courts in this District and elsewhere routinely reach the same conclusion in analogous contexts involving materials generated as part of a settlement analysis. In *Zetia*, for example, the court held that settlement analyses performed by financial analysts at a company embroiled in litigation was entitled to work-product protection. 2019 WL 6122012, at *3-4. It did not matter that the documents "reflect[ed] the kind of business analysis the company would perform irrespective of pending litigation." *Id.* at *2, *4. The work-product doctrine still applied, since the company undertook the analyses only to evaluate the effect of settling a litigation. *Id.* at *3-4 ("[H]ad counsel 'not requested this analysis in order to evaluate a potential settlement, the [document] and the analysis within it would not have been created.'"). Similarly, work-product materials do not lose their work-product status because they incorporate ordinary-course analyses or content. *See id.* at *5 (finding financial data incorporated into work-product document was entitled to the same work product protection afforded to the entire document because the data was "integral to the privileged purpose of the document" even when the data, standing alone, would not have otherwise been privileged); *Jud. Watch, Inc. v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("[F]actual material is itself privileged when it appears within documents that are attorney work product.").[12] Accordingly, the fact that a preexisting analysis by an investment banking firm (over which Google is not claiming work-product protection) was incorporated as a factual input into Project Sunday materials, *see* Opp. Ex. B, Google 30(b)(6) Dep. 116:12-117:6, does not undermine the work-product nature of the Project Sunday materials. *See* Mot. 16, 20.

---

[12] *See also, e,g.*, *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2019 WL 4929930, at *3 (E.D. Cal. Oct. 7, 2019) (denying *in camera* review where it was "arguable that the [document] as a whole was entitled to protection even if every fact or number it contained was not independently privileged."); *CFPB v. Ocwen Fin. Corp.*, 2019 WL 1119788, at *3 (S.D. Fla. Mar. 12, 2019) (preexisting ordinary-course Powerpoint slides were privileged where "the specific factual information was curated and reformulated by attorneys" and reflected legal strategy).

REDACTED VERSION

Plaintiffs' argument that the Remedy Projects are not work product because they bear a "clear nexus to ordinary-course strategic business decisions," Mot. 15, misstates the applicable legal standard.  The anticipation-of-litigation element hinges on *why* a document was created, *see Nat'l Union*, 967 F.2d at 984, not on whether it has a "nexus" to business decisions.  Under the "because of" test—which applies in this Circuit, *id.*, as well as the D.C. and Second Circuits—"material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status."  *United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010); *see also United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998) ("[A] document . . . does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation.").  As a result, courts in circuits that apply the "because of" test consistently hold that settlement-evaluation materials are work product, even if they also inform or lead to business decision-making.[13]

In the related MDL proceeding pending in the Southern District of New York, Judge Castel has already deemed references to the substance of one of the Remedy Projects—Project SingleClick—as protected work product.  He credited a declaration from a Google

---

[13] *See FTC v Boehringer* (*Boehringer I*), 778 F.3d 142, 150 (D.C. Cir. 2015) ("We find no merit in the proposition that any settlement term that has some independent economic value to both parties must always be treated as an ordinary (non-litigation) business transaction for purposes of work product protection. Common sense and practical experience teach that settlement deals routinely include arrangements that could be isolated from the overall agreement and stand on their own but were nonetheless crafted for the purpose of settling litigation."); *FTC v Boehringer* (*Boehringer II*), 892 F.3d 1264, 1268 (D.C. Cir. 2018) (holding that business analysis prepared to assist counsel in evaluating a settlement was work product even though evaluating the settlement "ultimately was a business decision as well as a legal decision"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2018 WL 1162552, at *6-11 (E.D.N.Y. Feb. 26, 2018) (holding that settlement workstream documents "created to assess business implications of the litigation or settlement" and drafted by non-lawyer at the direction of counsel were opinion work product); *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, at *6 (S.D.N.Y. Dec. 5, 2002) (finding litigation strategy document was still protected by work product doctrine even where it referred to potential business decisions resulting from the litigation).

REDACTED VERSION

businessperson that Project SingleClick was an analysis of actions undertaken in response to active regulatory investigations, and involved the "subject of liability avoidance" which reflected the "'mental impressions, conclusions, opinions, or legal theories of an attorney' prepared 'in anticipation of litigation.'" *In re Google Digit. Advert. Antitrust Litig.*, 2023 WL 196146, at *3 (S.D.N.Y. Jan. 17, 2023) (quoting Fed. R. Civ. P. 26(b)(3). Judge Castel did not have access to the Google 30(b)(6) deposition testimony regarding the Remedy Projects; however, the Google declaration that he reviewed explained the project just as the 30(b)(6) deposition did. *Compare id.* (citing the declaration as explaining that Project SingleClick was "an analysis of certain actions undertaken 'in response to active investigations into, and in anticipation of litigation concerning, Google's AdTech business'"), *with* Opp. Ex. B, Google 30(b)(6) Dep. 144:19-24 (describing Project SingleClick as "an analysis of potential remedies to some anticipated regulatory actions . . . undertaken in anticipation of litigation concerning Google's ad tech business"). And while Judge Castel did not rule that every document referring to the work of Project SingleClick was categorically protected—as he properly limited his ruling to the specific documents before him—his reasoning that the work-product doctrine protects projects undertaken because of anticipated litigation and reflecting legal settlement strategy applies with equal force here.

***By or for a party.*** The Remedy Project documents also meet the work-product doctrine's second element, which asks whether the document was prepared "by or for [the withholding] party or its representative (including the … party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). Plaintiffs cannot dispute that the Remedy Project documents were created by or for Google.

Instead, Plaintiffs attempt to graft an additional element onto the work-product doctrine: that the document be prepared "at the direction of an attorney." Mot. 8 (quoting *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 251 (E.D. Va. 2012)). But nowhere does Rule

26(b)(3) require that the document be prepared by or at the direction of an attorney.  *See Hempel v. Cydan Dev., Inc.*, 2020 WL 4933634, at *4 (D. Md. Aug. 24, 2020) ("[T]he statutory text of Rule 26 does not require that documents be 'prepared by, for, or at the request of [a] lawyer' in order to be protected as work product.").  The work-product doctrine, as the Fourth Circuit has recognized, protects documents prepared in anticipation of litigation "whether the material was actually prepared by [an] attorney or by another 'representative' of the [withholding] party."  *Nat'l Union*, 967 F.2d at 984.[14]

       As explained in the accompanying Lazarus Declaration, each of the Remedy Project documents was either prepared in response to active regulatory investigations or reveals substantive details of the Remedy Projects.  *See* Opp. Ex. A, Lazarus Decl. ¶¶ 5-9.  And as explained in that Declaration, Google's in-house counsel initiated, oversaw, and/or played a key role in each of the Remedy Projects.  *See id.*; *see also* Opp. Ex. B, Google 30(b)(6) Dep. 74:19-75:5, 88:14-15, 122:16-123:18, 128:11-129:9, 146:11-13, 149:7-12, 151:5-17, 182:16-

---

[14] As this Court and others have recognized, work product extends to materials beyond those prepared by, or at the direction of, attorneys.  *See Dunston v. Cecil Huang*, 2010 WL 11698098, at *1 (E.D. Va. May 5, 2010) (Anderson, M.J.) (holding that material "created by a representative of the defendants" in anticipation of litigation was "protected by the work product protection"); *see also, e.g.*, *Williams v. AT&T Mobility*, 2022 WL 2821922, at *5 (E.D.N.C. July 19, 2022) (rejecting argument that "since the documents were created by non-lawyers, they cannot be privileged [as work product]"); *Coffey v. Tyler Staffing Servs., Inc.*, 2020 WL 1307233, at *3 (W.D. Va. Mar. 19, 2020) ("The fact that these materials were not prepared by an attorney does not, by itself, disqualify them from falling under the work product doctrine."); *Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 46 (W.D. Va. 2000) (finding materials that party itself "prepared, or commissioned the preparation of" constituted work product); *Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1356-58 (E.D. Va. 1987) (rejecting defendants' argument that tape recordings were not work product because they were made absent attorney direction, explaining that "Defendants are living in the past, and are presenting a pre-1970 argument"—i.e., from before Rule 26(b)(3) was amended).  To the extent that *ePlus* suggests otherwise, Mot. 8, it contradicts the plain language of Rule 26(b)(3).  Relying solely on *Hickman v. Taylor*, 329 U.S. 495 (1947), *see ePlus*, 280 F.R.D. at 257, the *ePlus* court failed to consider that the amendments to Rule 26(b)(3) expanded the work-product doctrine.  *Moore v. Tri-City Hosp. Auth.*, 118 F.R.D. 646, 649 (N.D. Ga. 1988) ("Rule 26(b)(3) . . . preserves the essential portions of the doctrine as announced in *Hickman*, but also notably expands the doctrine by extending discovery protection to the work product of a *party* as well as that party's attorneys.").

REDACTED VERSION

183:1, which further corroborates that the Remedy Projects were undertaken in anticipation of litigation and reflect legal strategy.  This is analogous to *Zetia*, where the court found potential settlement analyses to be work product in part because they were initiated by and overseen by in-house counsel.  *See* 2019 WL 6122012, at *3.

Plaintiffs mischaracterize Google's work-product assertions over Remedy Project documents as shielding "major business projects simply because they were undertaken while the company was under government investigation."  Mot. 7.  But Google has consistently made clear, through extensive correspondence with DOJ,[15] the February 28, 2022 deposition of its corporate representative, and a meet-and-confer with DOJ in May of that year, that the basis for its assertion of work-product protection for the Remedy Project documents is that they were created *because of* active government investigations and anticipated litigation.[16]  This is exactly what the law requires for the work-product protection to apply.  Each of the 17 Remedy Project documents was either created as part of or reveals the substance of at least one of the Remedy

---

[15] *See, e.g.*, Mot. Ex. 29, Ltr. from J. Elmer, Feb. 25, 2022.

[16] Although one of the Remedy Projects—Project Banksy—involved the analysis, for the purpose of potentially settling a regulatory investigation, of a concept sourced in a non-privileged, prior workstream referred to simply as "Banksy," that does not preclude Project Banksy from receiving work-product protection.  Project Banksy involved the analysis and eventual execution of some of the ideas from non-privileged "Banksy" in the specific context of the French Competition Authority and other regulators' investigations.  *See* Opp. Ex. C, Dep. of ▮▮▮▮▮▮▮▮ at 168:1-172:10 (describing "Banksy"); Opp. Ex. B, Google 30(b)(6) Dep. 200:22-201:7 (explaining Project Banksy as emerging from "Banksy" in response to the French Competition Authority's investigation).  That analysis and execution may not have been undertaken at all, and certainly would not have been undertaken in substantially similar form, but for the French Competition Authority investigation and Google's legal strategy to identify settlement options in response to that investigation. *See* Opp. Ex. B, Google 30(b)(6) Dep. 210:15-211:6.  Moreover, Google has asserted privilege over only Project Banksy materials, but not prior "Banksy" materials, which underscores that Google has properly claimed work-product protection over only those documents reflecting the company's legal strategy and where the active regulatory investigations and anticipated litigation were the driving force behind the documents' creation.

REDACTED VERSION

Projects, in whole or in part, *see* Opp. Ex. A, Lazarus Decl. ¶¶ 11-15, and has therefore been properly redacted or withheld.

**III.    Google Has Properly Redacted or Withheld Attorney-Client Privileged Documents**

The remaining two documents at issue concern the attorney-client privilege.[17]   The singular basis for Plaintiffs' challenge to these documents is Google's "Communicate with Care" training.   According to Plaintiffs, this training caused some Google employees to label communications privileged and confidential and include an attorney even when the communication was not privileged.   Mot. 11-12.   From there, Plaintiffs speculate that some of the documents Google has withheld in this case must have been the product of "Communicate with Care," rather than of good-faith privilege determinations.   There is no basis for such speculation.   As Google has explained to Plaintiffs, Google has not claimed privilege based on "Communicate with Care," nor has Google withheld documents on the basis of privilege simply because they contain the words "Privileged and Confidential."   Google has reviewed documents one by one and has made good faith privilege determinations based on the substance of each document even within a voluminous and fast paced production.   A document Plaintiffs appended as an exhibit to their Motion, *see* Mot. Ex. 5, underscores Google's focus on a document's substance—and not whether it is labeled privileged.   *See* Mot. 12 (observing produced document appended as Exhibit 5 contained a privilege legend, but lacked "any request for legal advice").

Plaintiffs' challenges to these two documents do not reflect any pervasive issues with Google's privilege log or Google's application of the attorney-client privilege:

---

[17] These two documents—excluding the ones that Google has thrown back, *see supra* n.2—are Documents 3 (GOOG-DOJ-AT-00029680) and 7 (GOOG-DOJ-AT-01139556).

REDACTED VERSION

***Document 3 (GOOG-DOJ-AT-00029680).*** Google has in good faith lifted the second redaction at -685 and the redaction at -686. The document now contains a single redaction at -685, containing feedback on the deal terms from "Legal," which "contain[s] legal advice of ███████ ESQ regarding contract terms," as noted in the privilege log.

***Document 7 (GOOG-DOJ-AT-01139556).*** This is a 47-page presentation titled "Streamline programmatic buying doors on AdMob and Ad Manager," containing redactions at -564, -569, 570, -579, -589, and -602.[18] The redacted portions on -564, -579, and -602 are comments seeking, containing, and responding to legal advice given by Google's in-house counsel ███████ about information on the previous slide (-563, and duplicated at -578 and -601), detailing revenue share scenarios for AdMob and Ad Manager. The redaction at -569 contains "[f]eedback from legal"—plainly facially privileged material—and the redacted rows on -570 convey "[r]egulatory [r]isk" and potential mitigating actions reflecting legal advice of ███████. In addition, while Plaintiffs take issue with the privilege-log description for these redactions, they do not explain why that description—"seeking and revealing legal advice of ███████ ESQ regarding legal aspects of product development"—is "materially deficient." Mot. 24.[19]

Regarding the redaction at -589, after re-reviewing this document in good faith, Google has removed this redaction of a single slide within a 47-page presentation and has provided Plaintiffs with a replacement copy of this document, *see supra* n.2.

---

[18] The three pages -564, -579, and -602 are exact copies of each other and the redactions were identical except for a portion at the bottom of -564, which had been inadvertently left unredacted. Google has taken steps to conform the redactions on -564 to the redactions on -579 and -602 and has reproduced the document to Plaintiffs accordingly.

[19] Plaintiffs claim that no lawyer appears in the metadata for this document. That claim is incorrect, as there are eight attorneys in the presentation's metadata, including ███████ and outside counsel.

REDACTED VERSION

**Documents 4 (GOOG-DOJ-AT-01019463) and 21 (GOOG-DOJ-06588656).** Google has reviewed these two documents and has in good faith opted to drop its claims of privilege over these two documents. As with the voluntarily lifted targeted redactions in Documents 3, 7, 15, and 18, lifting the redactions from Documents 4 and 21 reflects Google's consistent and ongoing good faith and reasonable efforts to balance the production of relevant material with zealously protecting material that is legally privileged. *See* Transcript of Status Conf. at 62, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Oct. 20, 2020), ECF No. 353 (viewing Google's throwbacks as part of a "good-faith effort to . . . re-review [withheld documents], re-categorize them, de-privilege those that need to be de-privileged, and produce them to the plaintiffs"); *Google Digit. Advert.*, 2023 WL 196146, at *3 (Castel, J.) ("The Court declines to ascribe any nefarious motive to [Google's] change of position" by no longer asserting privilege over a challenged document); *see also Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 870, 879 (7th Cir. 2005) (defendant "exhibited good faith throughout the privilege log proceedings [by] among other acts," re-reviewing and throwing back documents as necessary).

IV.     **Plaintiffs Improperly Seek an Advisory Opinion**

The Court should decline to grant Plaintiffs the advisory opinion they seek. Although Plaintiffs contend that they have selected a "representative" sample of documents, Mot. 1, they have cherry-picked 21 documents out of nearly 180,000 documents withheld or redacted over the course of a three-year investigation, each dissimilar and covering a range of issues, from the millions of documents produced by Google. From this small and cherry-picked sample, it is not possible to extrapolate any conclusions about Google's overall production and privilege log.

Plaintiffs' request that the Court treat a review of 21 documents as "exemplars of three categories of documents," Mot. 4, is not how privilege determinations work. Rather, privilege

REDACTED VERSION

review involves "a document-by-document privilege analysis." *Interbake*, 637 F.3d at 503 ("[E]ach e-mail within a particular line of discussion must be analyzed separately for privilege purposes."); *see also In re Rivastigmine Pat. Litig.*, 2005 WL 2319005, at *5 (S.D.N.Y. Sept. 22, 2005) (declining to rule on privilege not tied to "specific documents" because "privilege determination is fact-sensitive").   In the parallel MDL proceeding, Judge Castel rejected a similar request by those plaintiffs to "clarify" how the attorney-client privilege would apply to documents not submitted for *in camera* review, concluding that it was "essentially a request for an advisory opinion on legal principles."  *Google Digit. Advert.*, 2023 WL 196146, at *1. The same reasoning applies equally here.

## V.   Google's Exercise of Its Clawback Rights Does Not Justify *In Camera* Review

Plaintiffs try to use the fact that Google clawed back documents to argue that the Court should review the 21 documents *in camera*.  But the fact that Google has exercised its right to claw back inadvertently produced privileged material has no bearing on whether *in camera* review is appropriate.  *See supra* Point I.  Plaintiffs cite no case law suggesting otherwise.[20]

## VI.   Google Has Not Waived Privilege over Document 1 (GOOG-DOJ-12766025).

Plaintiffs contend that Google has waived privilege over one document (GOOG-DOJ-12766025),[21] by failing to object or claw back material read into the record during a Google

---

[20] Plaintiffs cannot use the fact that Google has clawed back documents as a backdoor to *in camera* review.  Plaintiffs say that because "all of the documents identified in the Appendix have been clawed back at one time or another," *in camera* review will help them "articulate fully their challenge to Google's claims of privilege." Mot. 24.  Not only is that not the standard for *in camera* review, *see supra* Point I, but it also makes little sense.  It is, of course, true across *all* privilege challenges—whether privilege was asserted along with an initial production or asserted by clawback—that the opposing party has a limited ability to understand the withheld content and make arguments against privilege.  But if the challenging party could force *in camera* review simply by claiming that it needed to see materials withheld as privileged in order to challenge even more withheld materials, then the *in camera* standard would be meaningless.

[21] In Document 1 (GOOG-DOJ-12766025), Google redacted communications revealing the substance of Projects SingleClick and Stonehenge.  Because Projects SingleClick and Stonehenge refer to Remedy Projects initiated because of anticipated litigation, and producing

REDACTED VERSION

employee's August 10, 2021 deposition.  *See* Mot. 19 n.33.  But Plaintiffs mischaracterize the record.  Google did not allow portions of the document to be read into the record at the deposition without objection.  Instead, DOJ read a portion of the document into the record as part of a question, and before counsel could instruct the witness not to answer and claw back the document, the witness responded.  *See* Mot. Ex. 18, Dep. of ███████████████ at 197:17-23.  When DOJ sought to clarify the witness's answer, counsel for Google objected. *Id.* at 197:24-198:8.  After a short break, DOJ restated its question, and counsel for Google instructed the witness not to answer on the basis of privilege.  *Id.* at 198:16-199:3.  The document read into the record was then immediately clawed back as privileged during the deposition.  *Id.* at 199:4-11, 201:22-202:2.

These facts make it clear that Google did not waive privilege.  On the contrary, Google's counsel immediately informed DOJ during the deposition that the exhibit contained privileged material with respect to Projects Stonehenge and SingleClick, and promptly took steps to rectify the disclosure by clawing back the document and instructing the witness not to answer additional questions.  These were reasonable steps to protect privilege in light of an inadvertent production.  *See, e.g.*, *King Pharm., Inc. v. Purdue Pharma, L.P.*, 2010 WL 2243872, at *2 (W.D. Va. June 2, 2010) ("Purdue clearly acted promptly in taking reasonable steps to rectify the error" when it clawed back, during a deposition, "one of millions of documents produced by the parties in [a] complex [] case.").[22]  Moreover, the Google employee, in his individual capacity, could not waive privilege or work-product protection on

---

the document unredacted would reveal Google settlement strategy and analysis, the material is properly redacted as work product.  *See supra* Point II.

[22] *See also Karma Auto. LLC v. Lordstown Motors Corp.*, 2021 WL 4147007, at *3 (C.D. Cal. June 16, 2021) (holding that privilege was not waived where counsel "object[ed] on the record at [witness's] deposition and request[ed] that [non-disclosing party] destroy and refrain from further use of the document").

REDACTED VERSION

behalf of the company by answering a question before the company's counsel had time to object.  "[T]he issue of waiver in the case of the testimony of a corporation's agent is whether the *corporation* has acted deliberately in disclosing privileged information, not whether the *witness* acted deliberately."  *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 504-05 (S.D.N.Y. 2019) (emphases added).  And nothing in the record suggests that *Google* intended to waive privilege.  Google has consistently taken the position that documents relating to the Remedy Projects are protected work product.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.


Dated: June 2, 2023

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
Koren Wong-Ervin (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street, NW

Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
CRAIG C. REILLY, ESQ.
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie H. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Joseph Bial (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB #93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
kdunn@paulweiss.com

Meredith Dearborn (*pro hac vice*)

22

REDACTED VERSION

Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

*Counsel for Defendant Google LLC*

REDACTED VERSION