IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CLARIFY SCHEDULING ORDER

The Plaintiffs respectfully move for an order clarifying the scope of this Court's Rule 16(B) Scheduling Order (ECF No. 94) ("Scheduling Order"). The Court's Scheduling Order provides a schedule for the liability and damages phases of this case. The Scheduling Order is silent as to what will occur after the jury renders a verdict on liability and damages. To the extent that the jury finds Defendant liable on any one of Plaintiffs' claims, Plaintiffs may elect to pursue equitable remedies against the Defendant, and those equitable remedies are in the sole discretion of the Court. When and if the jury finds liability and the Plaintiffs pursue equitable remedies, the Court at that time can determine what further appropriate orders should govern the scope and timing of any additional procedures regarding equitable remedies, including, to the extent necessary, any fact or expert discovery relevant to the equitable remedies then sought by Plaintiffs.

Plaintiffs bring this Motion to Clarify now because, after lengthy meet and confers with Google over the last month, Google has taken the position that all equitable-remedies-related fact or expert discovery should happen now, before the jury renders a verdict on liability or damages and before Plaintiffs have formulated a precise equitable remedy tailored to that liability verdict. Respectfully, Plaintiffs suggest that requiring the parties to engage in extensive fact and expert

discovery regarding a proposed equitable remedy that has not yet even been precisely articulated (because no liability finding has yet been made) would not only be backwards and inefficient, but also would be inconsistent with settled case law and practice, including in other cases involving this same Defendant.

**I.   The Court Must Hold an Evidentiary Hearing to Resolve Disputed Facts Regarding a Divestiture Remedy Following a Liability Verdict.**

   **A.   The Court Can Only Determine Appropriate Equitable Relief After the Jury Rules on Plaintiffs' Legal Claims.**

The law is clear that where, as here, a plaintiff seeks both legal and equitable relief, the jury trial proceeds first, and the court decides equitable relief second.

> When both legal and equitable remedies are demanded, the appropriate method of proceeding requires submission of the case first to the jury to resolve liability and all legal damages. Thereafter, the court conducts a trial in equity to resolve all issues of equitable relief. *See Ross v. Bernhard,* 396 U.S. 531, 537–38, 90 S.Ct. 733, 737–38, 24 L.Ed.2d 729 (1970) ("[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed...."); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) ("[O]nly under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims.").

*Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1422 (4th Cir. 1991). *See also Scott v. Neely*, 140 U.S. 106, 109-10, 11 S. Ct. 712, 714 (1891) ("In the Federal courts this (jury) right cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency."). Importantly, the court cannot rule on injunctive relief until it knows "the wrong creating the occasion for the remedy." *United States v. Microsoft Corp.*, 253 F.3d 34, 107 (D.C. Cir. 2001).

   **B.   The Court Must Resolve Disputed Facts Before Ordering Equitable Relief.**

2

It is well-settled that a court must resolve disputed facts on a motion for equitable relief, and that resolution will usually require an evidentiary hearing. *See Associated Press v. United States,* 326 U.S. 1, 22, 65 S. Ct. 1416, 1425 (1945) (citations omitted) ("The fashioning of a decree in an Antitrust case in such way as to prevent future violations and eradicate existing evils, is a matter which rests largely in the discretion of the Court. A full exploration of facts is usually necessary in order properly to draw such a decree."); *United States v. Ward Baking Co.*, 376 U.S. 327, 330-31 (1964) (stating that a remedies decree must be vacated whenever there is "a bona fide disagreement concerning substantive items of relief which could be resolved only by trial"); *Blackwelder Furniture Co. v. Sielig Manuf. Co.*, 550 F.2d 189, 192 n. 1 (4th Cir. 1977), *overruled on other grounds by Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009) (noting that if "everything turns on what happened and that is in sharp dispute," the court should ordinarily hold an evidentiary hearing and require live testimony, rather than rely on the parties' submissions)).

In *United States v. Microsoft,* following a verdict that Microsoft had violated Sections 1 and 2 of the Sherman Act, the district court issued an order requiring Microsoft to submit a plan of divestiture that would split the company into two independent companies. 97 F. Supp. 2d 59, 64 (D.D.C. 2000). The Court of Appeals for the District of Columbia vacated the divestiture order on multiple grounds, including that the district court had failed to hold an evidentiary hearing to resolve disputed facts, including those proffered in declarations by expert and lay witnesses who were prepared to testify both for and against divestiture. *See id.* at 101-02 ("courts must hold evidentiary hearings when they are confronted with disputed facts"). Indeed, the court observed that Microsoft had a "basic procedural right to have disputed facts resolved through an evidentiary hearing." *Id.* at 103.

Similarly, in *Steves and Sons, Inc. v. Jeld-Wen, Inc.,* Case No. 3:16-CV-545-REP, 345 F. Supp. 3d 614, 629 (E.D. Va. 2018), the court ordered a separate remedial phase after a jury had found that the merger violated Section 7 of the Clayton Act and awarded plaintiff treble damages. The court observed, "[i]n making the decision about equitable relief, it is necessary to respect and apply the jury's findings which are binding factual findings and <u>then</u> for the Court to make factual findings based on the trial record and the record at the Remedies Hearing." *Id.* at 626 (emphasis added).

Indeed, this practice of separating the liability phase from the equitable remedy phase is consistent not only with binding case law, but also with standard practice. Indeed, Google itself has agreed to bifurcation of legal and injunctive relief in other pending cases. In the Google Search case pending in the District of Columbia, Google stipulated to an order bifurcating proceedings on liability and remedy. *United States et al. v. Google LLC,* Case No. 1:20-cv-03010-APM (D.D.C.), ECF No. 264. Likewise, in *In re Google Play Store Antitrust Litigation*, Case No. 3:21-MD-02981 (N.D. Cal.), Google agreed to a procedure whereby *after* the jury verdict on liability, the parties would agree to meet and confer regarding any issues and evidence that may be necessary to resolve any requests for injunctive or equitable relief, and submit a joint statement to the Court within 10 days of the jury verdict. ECF No. 505. A similar procedure could easily be followed here.

## II. It Would Be Inefficient and Potentially Wasteful To Conduct Fact and Expert Discovery Regarding Equitable Remedies Before There is a Liability Verdict.

In the event that liability is established in this case, Plaintiffs have requested, among other things, equitable relief in the form of a divestiture of one or more parts of Google's ad tech business. Compl. ¶ 342 (requesting the Court "[o]rder the divestiture of, at minimum, the Google Ad Manager suite, including both Google's publisher ad server, DFP, and Google's ad exchange,

4

AdX, along with any additional structural relief as needed to cure any anticompetitive harm"). That said, in the event that Plaintiffs prevail on one or more of their claims, the scope of the issues to be heard at an evidentiary hearing on remedies will necessarily depend on the precise liability verdict that is obtained. Before a liability verdict is handed down, it would be premature to speculate on the precise nature of the equitable relief sought by Plaintiffs based on that liability verdict, and therefore premature to guess what additional fact or expert discovery, if any, would be needed to assist the Court in assessing those issues at that time.

Discovery concerning the technical feasibility of a divestiture or other equitable remedy, for example, will need to be specifically tailored to the remedy sought. Plaintiffs cannot (and should not have to) articulate that precise equitable remedy would be appropriate at this stage, given that the equitable remedy must in all instances be narrowly tailored to the precise harms found by the jury. *United States v. Microsoft Corp.*, 253 F.3d 34, 105 (D.C. Cir. 2001) (remanding case for new remedy determination based on fact that certain liability rulings were overturned on appeal); *See United States v. U.S. Gypsum Co.,* 340 U.S. 76, 88 (1950) (an antitrust remedy must, "so far as practicable, cure the ill effects of the illegal conduct, and assure the public freedom from its continuance"). As one court explained it well, with reference to U.S. Supreme Court precedent:

> ". . . Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. [Citation omitted.] Power is thereby resident in the District Court, in exercising this jurisdiction, 'to do equity and to mould each decree to the necessities of the particular case.' Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S. Ct. 587, 88 L. Ed. 754. It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the

5

> court so that their rights in the subject matter may be determined and enforced. In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice. *Camp* v. *Boyd*, 229 U.S. 530, 551-552, 33 S. Ct. 785, 57 L. Ed. 1317.

*United States* v. *Coca-Cola Bottling Co.*, 575 F.2d 222, 228-229 (9th Cir. 1978).

For these reasons, evidence and arguments specific to divestiture or other tailored equitable relief have no role to play in the liability and jury-damages portion of this case. Such evidence cannot and will not be presented to the jury, and for efficiency's sake, the discovery into matters unique to potential equitable remedies should await a liability finding. Requiring disclosure and discovery into experts' opinions and conclusions before the liability trial even begins would be inefficient, costly, and unlikely to be narrowly focused on remedying the specific harms found by the jury.

To take a few examples, to assist the Court in crafting an equitable remedy catered to the specific findings of harm found by the jury, Plaintiffs anticipate they may seek discovery of, among other things, certain source code from Google (beyond the source code that Plaintiffs have already sought that is relevant to issues of liability), the hardware on which that source code resides, and any Application Programming Interface ("API") calls that are made among and within Google's systems to determine how feasible it would be for Google to divest certain aspects of its ad technology business. The precise contours of that discovery will depend on the jury's liability verdict; requiring Google to produce all possible permutations of that information now, before Plaintiffs even know whether certain equitable remedies would be sought, would be needlessly wasteful.

Moreover, in the event that liability is established on Plaintiffs' claims, Plaintiffs' experts would need access to source code and related information as it exists *at the time the Court is*

*determining appropriate equitable relief*. As the Court described in *Microsoft,* crafting appropriate structural relief requires updated and expanded information, particularly where "innovation to a large degree has already rendered the anticompetitive conduct obsolete (although by no means harmless)." *Microsoft Corp.*, 253 F.3d at 49. A Court, considering how best to go about "*restoring* competition to a dramatically changed, and constantly changing, marketplace," must have access to the latest information on the relevant products and the markets in which these products compete. *Id.* That is why, back in March, counsel for the United States, expressly raised the point that while an evidentiary cutoff date would make the liability phase of the proceedings more equitable, no such evidentiary cutoff date should apply to any subsequent hearing on equitable relief, because that is inconsistent with case law that cautions courts to narrowly tailor equitable relief to the precise circumstances of the moment. Ex. A, Mar. 31, 2023 Hr'g Tr. at 19:17-20:5.

As in *Microsoft,* Plaintiffs expect the parties to proffer significant expert testimony from economists, financial experts, and others to opine on the feasibility and effect of any proposed remedy involving a divestiture. Microsoft's two orders of proof submitted after a finding of liability offer some foresight into what this might look like and how a defendant in Google's position may challenge a proposed divestiture. As the *Microsoft* opinion summarized, "where plaintiffs' economists testified that splitting Microsoft in two would be socially beneficial, the company offered to prove that the proposed remedy would 'cause substantial social harm by raising software prices, lowering rates of innovation and disrupting the evolution of Windows as a software development platform.'. . . And where plaintiffs' investment banking experts proposed that divestiture might actually increase shareholder value, Microsoft proffered evidence that

7

structural relief 'would inevitably result in a significant loss of shareholder value,' a loss that could reach 'tens—possibly hundreds—of billions of dollars.'" *Id.* at 102.

Similarly, in this case, Plaintiffs expect Google will raise complex issues regarding the potential harm that would result if the Court were to Court order divestiture of any part of Google's ad technology systems after a jury liability verdict. Plaintiffs' experts will have to address those arguments at an appropriate time, and doing so will likely require expert review of schematics and design specifications for specific systems that would be implicated by any proposed divestiture. Reviewing those materials now would be a waste of time because they would simply have to be re-reviewed at a later time to reflect the current state of the market at the time of the Court's consideration of the equitable remedy. To require the parties and their experts to delve into this complex material now, before a liability verdict has been rendered, and before a specific proposal for equitable remedy has been made, would be premature and potentially wasteful of the time and resources of the both the parties and the Court.

Furthermore, at the remedies phase, the Court may hear the parties' views on whether it should appoint a special master to assist with divestiture, as a court in this district did in *Steves and Sons,* 345 F. Supp. 3d at 668-69. Federal Rule of Civil Procedure 53 instructs that a special master may be appropriate "when a complex decree requires complex policing, particularly when a party has proved resistant or intransigent[.]" Fed. R. Civ. P. 53(a)(1) advisory committee note to 2003 amendments. Plaintiffs anticipate that Google will resist divestiture, and that involvement by a special master may be necessary to ensure that the divestiture proceeds in a way that respects the court order and restores competition to ad tech markets. Yet again, the need for a potential special master is a matter that is simply not ripe for the Court's consideration at this time.

8

For all these reasons, Plaintiffs respectfully request that the Court issue an order clarifying that its Rule 16(B) Scheduling Order governs the liability and damages phase of this case, but that a separate order, if necessary, concerning equitable remedies will await the jury's verdict on liability.

Dated: June 30, 2023

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Andrew N. Ferguson<br>ANDREW N. FERGUSON<br>Solicitor General<br>STEVEN G. POPPS<br>Deputy Attorney General<br>TYLER T. HENRY<br>Assistant Attorney General |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>/s/ Kelly D. Garcia<br>KELLY D. GARCIA<br>/s/ Aaron M. Teitelbaum<br>AARON M. TEITELBAUM<br>/s/ Craig Briskin<br>CRAIG BRISKIN<br>/s/ Michael J. Freeman<br>MICHAEL J. FREEMAN | Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Kelly.Garcia@usdoj.gov | Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |
| Attorneys for the United States | |