# EXHIBIT 1



*U.S. Department of Justice*

Antitrust Division

*Phillip Burton Federal Building*
*450 Golden Gate Avenue*
*Room 10-0101*
*San Francisco, CA 94102-3478*

January 18, 2023

**Via email** (julie.elmer@freshfields.com)

Julie Elmer, Esq.
Freshfields Bruckhaus Deringer LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005

      Re:    Civil Investigative Demand Nos. 30120, 30471, and 30769

Dear Julie:

      I write again regarding Alphabet, Inc.'s ("Alphabet") deficient document production and privilege log entries. Alphabet's continued reliance on unsupported privilege assertions has adversely impacted the Division's investigation of Alphabet's conduct with respect to advertising technology.

      As you know, the Division has challenged over 180,000 deficient privilege log entries and improperly clawed back documents through multiple communications over a period of more than a year. Underscoring the deficiencies in Alphabet's privilege review process, Alphabet has produced more than 50,000 documents that were previously withheld, in whole or in part, on the basis of privilege or work product claims in response to those challenges. While we appreciate Alphabet's initial efforts to address the substantial deficiencies with Alphabet's privilege assertions, Alphabet should not have withheld those documents in the first place, and Alphabet should not continue to withhold documents for which Alphabet does not have a proper basis to assert privilege or work product protection.

      The Division reiterates its requests that Alphabet withdraw all unsupported privilege assertions and correct both its productions and privilege logs.

**Alphabet's Repeated Clawbacks**

Alphabet has produced, clawed back as inadvertently produced, produced again, and clawed back again as "inadvertently produced" 31 documents.[1] For example:

- *GGPL-AT-0026669*: Alphabet's purported justification for a second clawback was: "When the document was clawed back the first time, the review team was unaware that Project Banksy was a remedy analysis undertaken in response to an active government investigation and in anticipation of litigation."[2] That Alphabet's privilege review team could have been "unaware" of the status of Project Banksy—a project over which Alphabet has made broad and sweeping privilege and work product claims—is belied by Alphabet's written representations and its representative's sworn confirmation that nine outside counsel and nine in-house counsel worked on or were aware of the project.[3] That Alphabet's privilege review team was not aware—not merely at the time of production but "[w]hen the document was clawed back the first time"—of a remedies project of which eighteen attorneys were aware is strong evidence of the unreasonableness of Alphabet's privilege review process.

- *GGPL-AT-0026991*: Alphabet claims that its privilege review team "was unaware that Project Stonehenge and Project SingleClick were remedy analyses undertaken in response to active government investigations and in anticipation of litigation."[4] Alphabet's written representations to the Division about these two projects as confirmed by its representative's sworn testimony state that ten outside counsel and nine in-house counsel were involved in Project Stonehenge and that eight outside counsel and nine in-house counsel were involved in Project SingleClick.[5] It cannot be the case that Alphabet took "reasonable steps to prevent disclosure" of this and related clawed back documents when nineteen attorneys were involved in Project Stonehenge and seventeen attorneys were involved in Project SingleClick yet Alphabet's privilege review team was left "unaware" that the projects were "in response to active government investigations and litigation."

---

[1] GGPL-1050011529, GGPL-1050011567, GGPL-2022042095, GGPL-2022042258, GGPL-3070514376, GGPL-AT-0000499, GGPL-AT-0012057, GGPL-AT-0013688, GGPL-AT-0014895, GGPL-AT-0022013, GGPL-AT-0026596, GGPL-AT-0026647, GGPL-AT-0026669, GGPL-AT-0026713, GGPL-AT-0026716, GGPL-AT-0026766, GGPL-AT-0026829, GGPL-AT-0026920, GGPL-AT-0026959, GGPL-AT-0026991, GGPL-AT-0027179, GGPL-AT-0027180, GGPL-AT-0027226, GGPL-AT-0027272, GGPL-AT-0027316, GGPL-AT-0027361, GGPL-AT-0029550. In addition, Alphabet has made multiple clawbacks of documents with Bates numbers GOOG-DOJ-03329973, GOOG-DOJ-06588656, GOOG-DOJ-12949396, and GOOG-DOJ-15215193 for which the Division is unable to identify a corresponding privilege log number.
[2] J. Elmer Ltr. to B. Nakamura, May 18, 2021 Attachment at 3.
[3] J. Elmer Ltr. to B. Nakamura and J. Hogan, Feb. 25, 2022 at 4-5; Alphabet 30(b)(6) Dep. 201:17-202:13, Feb. 28, 2022.
[4] J. Elmer Ltr. to B. Nakamura, May 18, 2021 Attachment at 17.
[5] J. Elmer Ltr. to B. Nakamura and J. Hogan, Feb. 25, 2022 at 2-3; Alphabet 30(b)(6) Dep. 181:15-22, 145:6-19.

Alphabet has waived any arguable claim of privilege with respect to each of these documents that were repeatedly clawed back.

### Waiver Documents

The Division previously identified a set of documents as to which Alphabet had not sufficiently established a claim of privilege (the "Waiver Documents").[6] Alphabet has not met its burden of showing that it "took reasonable steps to prevent disclosure."[7] For example, Alphabet's written representation as to the document described in privilege log entry GGPL-AT-0026520 claims that when the document was initially produced "the review team was unaware that Project Stonehenge was a remedy analysis undertaken in response to active government investigations and in anticipation of litigation."[8] As explained above, nineteen attorneys working for or retained by Alphabet were involved with Project Stonehenge and the disclosure of that document for the single reason that the privilege review team was simply "unaware" of the status of Project Stonehenge is flatly unreasonable.[9] In addition, Alphabet claims with respect to the document with Bates number GOOG-DOJ-AT-02116313 that its privilege review team was "unaware" at the time of production that "Project Quantize was a request for legal advice and in-house counsel's response."[10] Yet, as Alphabet represented to the Division in writing, ten of its in-house counsel were involved in or aware of the project, which purportedly related to "privacy concerns and GDPR."[11] More troublingly, for all of the Wavier Documents that were clawed back once, Alphabet had represented to the Division at the time of their initial production that the documents at issue were "not fully privileged" or "reassessed for privilege."[12] That Alphabet specifically examined these documents for privileged content and nevertheless produced them confirms that Alphabet failed to take reasonable steps to prevent disclosure. These are just a few examples of the inadequacy of Alphabet's justifications for its clawbacks and the lack of reasonable steps Alphabet has taken to prevent disclosure of privileged and work product materials.

---

[6] B. Nakamura Ltr. to J. Elmer, Apr. 4, 2022 at 4-5.
[7] *Williams v. D.C.*, 806 F. Supp. 2d 44, 49 (D.D.C. 2011).
[8] J. Elmer Ltr. to B. Nakamura, May 18, 2021 Attachment at 13.
[9] Notably, Alphabet claims that "the Division was on notice that documents relating to Project Stonehenge are produced by the work product doctrine and/or attorney-client privilege," J. Elmer Ltr. to B. Nakamura, May 18, 2021 Attachment at 13, but that claim is inconsistent with the testimony provided by Alphabet employee ▬▬ ▬▬▬▬▬▬▬▬▬ on August 11, 2021, about the scope of Project Stonehenge and the fact that one aspect of the project is related to potential pricing changes, ▬▬▬▬▬ Dep. 197:1-23, Aug. 11, 2021. Alphabet has waived privilege and work product claims over ▬▬▬▬▬▬ testimony and thus at least part of Project Stonehenge by failing to even attempt to claw back or address this part of ▬▬▬▬▬▬ testimony, which proceeded during the deposition without objection or instruction not to answer. The Division made Alphabet aware of this waiver on February 28, 2022, seven months later, and Alphabet's counsel claimed "we'll just have to take that up at a later time," but has failed, in the ten months since that statement, to do so.
[10] J. Elmer Ltr. to B. Nakamura, May 18, 2021 Attachment at 7.
[11] J. Elmer Ltr. to B. Nakamura and J. Hogan, Feb. 25, 2022 at 5.
[12] *E.g.*, Elmer Ltr., July 6, 2021 ("The .zip file contains 2,240 documents from Group D custodians that were reassessed for privilege"); Elmer Ltr, Aug. 9, 2021 (detailing "replacement productions" of those "inadvertently disclosed" and "documents that were determined not to be fully privileged"); Elmer Ltr. Aug. 9, 2021 (detailing "[c]ertain Group A-C custodians' documents that were determined not to be fully privileged during the privilege log process").

3

### Alphabet Must Remedy Significant and Systematic Defects in Alphabet's Privilege Logs

Alphabet's privilege logs continue to have significant and systematic defects. Alphabet should either correct its inadequate privilege logs or correct its production to include the documents for which adequate privilege log entries were not provided.

Nearly a year ago, as part of its challenges to more than 100,000 individual privilege log entries, the Division noted systematic deficiencies in Alphabet's privilege log descriptions.[13] The Division provided many examples of entries that suffered from the same category of deficiency such as: boilerplate and cursory descriptions about "legal advice of" an unnamed "counsel regarding business development" or "regarding AdTech";[14] failure to identify the specific litigation or regulatory investigation underlying a privilege or work product claim as required by CID Instruction 10(a);[15] and improperly redacted business information.[16]

Rather than revising its privilege log entries suffering from these specifically identified, often boilerplate, deficiencies, Alphabet chose to "decline[] to identify other log entries not listed" by privilege log number "that purportedly suffer from the deficiencies alleged," and refused to re-review or revise these categories of log entries.[17]

### Privilege Log Deficiencies Remain in Recent New Productions

Alphabet's recent productions continue to have inadequate privilege logs and unsupported privilege assertions. CID Instruction 10(a) requires each privilege log entry to contain, among other things, the "date of the document," "the anticipated litigation for any work-product claim and the underlying privilege claim if subject to a joint-defense or common-interest agreement," and "a description of the document's subject matter sufficiently detailed to enable the Department to assess the privilege claim and the facts relied upon to support that claim." In addition, as Alphabet has acknowledged,[18] CID Instruction 10(c) requires "[o]n the log and the legend" a "list [of] all attorneys acting in a legal capacity with the designation ESQ after their name."

Disappointingly, Alphabet's latest privilege log fails to even provide the "date of the document" withheld or identify the "competition counsel" whose purported legal advice the redacted portion of a 2,003 page spreadsheet would "reveal[]."[19] The omission of these basic details impede the Division's ability to assess the validity of Alphabet's privilege and work

---

[13] B. Nakamura Ltr. to J. Elmer, Jan 18, 2022 at 7-15.
[14] *Id.* at 8-9.
[15] *Id.* at 10; notably, this problem continues in many entries; for example, GGPL-AT-0010619, GGPL-AT-0010955, GGPL-AT-0010956, GGPL-AT-0010957, GGPL-AT-0011492, GGPL-AT-0012549, GGPL-AT-0013488, GGPL-1370153654, GGPL-AT-0021806, GGPL-AT-0026356 (notably, this entry fails to identify the outside counsel who provided legal advice and does not identify the category of legal advice provided).
[16] *Id.* at 11-12.
[17] J. Elmer Ltr. to B. Nakamura, Feb. 8, 2022 at 6.
[18] J. Elmer Ltr. to B. Nakamura, Mar. 8, 2022 at 2.
[19] Alphabet Inc. Privilege Log, Vol. 20, Dec. 22, 2022 (GGPL-AT-0034623).

product claims and run afoul of not only CID Instructions 10(a) and 10(c) but also well-settled caselaw.[20] Indeed, Alphabet's vague reference to "product reporting requirements," which omit mention of any specific regulation, statute, anticipated or actual litigation, or even legal doctrine, cannot support a valid privilege assertion. This is just one example of many systemic problems. Many of Alphabet's recently produced privilege log entries suffer from these types of deficiencies.[21]

### Alphabet Has Impeded the Division's Investigation

Alphabet's improper privilege and work product claims have impeded the Division's investigation.

*Alphabet's Belated Productions and Improper Instructions Not to Answer*

Alphabet belatedly produced tens of thousands of previously withheld and redacted documents after the completion of all investigative depositions. This deprived the Division of the ability to question certain Alphabet employees about critical documents. Alphabet has added to the burden of its delayed productions by repeatedly preventing the Division from learning crucial, unprivileged facts with improper instructions not to answer questions during depositions, including refusing to permit a top executive, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, to respond to a question about a basic unprivileged fact during ▇ deposition: the identities of regulatory inquires that form the basis for a broad work product claim over a single project.[22] By preventing the Division from taking sworn testimony on ▇▇▇▇▇▇▇▇ awareness and understanding of the specific regulatory inquires that justified a project for which ▇ was one of only two Alphabet employees "who initiated the project,"[23] Alphabet has improperly prevented the Division from assessing the validity of its privilege claims. As another example, Alphabet's counsel improperly instructed Alphabet's corporate representative not to answer a question about the mere existence of an Alphabet project that was related to Project Banksy on the basis of scope, which is in direct contravention of 15 U.S.C. § 1312(i)(7).[24]

*Alphabet's Representations*

Alphabet has also repeatedly made representations to the Division that were not accurate. For example, Alphabet withheld hundreds of documents on the basis of its representation that

---

[20] *E.g.*, *Alexander v. FBI*, 186 F.R.D. 102, 106 (D.D.C. 1998), *Loftin v. Bande*, 258 F.R.D. 31, 35 (D.D.C. 2009), *Kettell v. Hall*, No. 08CIV.0052HBDFE, 2008 WL 2971802, at *1 (S.D.N.Y. July 31, 2008); *see also Transito Miranda v. Mahard Egg Farm, Inc.*, No. 4:19-CV-00092, 2019 WL 5190685, at *5 (E.D. Tex. Oct. 15, 2019).
[21] *E.g.*, GGPL-AT-0034602 (omitting the name of the attorney who purportedly provided the "legal strategy" "reflect[ed]" in the document and failing to explain how "contract pricing" was not merely a business issue); GGPL-AT-0034603 (failing to identify the specific anticipated litigation at issue and explain how a "[f]inancial model" was properly withheld in full).
[22] Dep. of ▇▇▇▇▇▇▇▇▇▇▇▇ 243:4-243:14, Oct. 28, 2021 (Alphabet's counsel taking the position that "the names of these specific regulatory inquiries are privileged information for which ▇▇▇▇▇▇▇▇ has a right to refuse to answer any question."
[23] J. Elmer Ltr. to R. Karr, Oct. 24, 2021 at 3.
[24] Alphabet 30(b)(6) Dep. 225:18-226:16, Feb. 28, 2022 (issuing an instruction not to answer on the basis that a business project was, in Alphabet's counsel's view, "beyond the scope of the CID.").

5

███████████████████████████████████████████████████████████████████ was a practicing attorney whose sole involvement supported withholding those documents, in whole or in part. The Division had to confirm, under oath, that ████████ had not been a practicing attorney and that █ knew—and so did Alphabet's "internal legal team"—that ████████ had not "practiced law since 2011."[25] Compounding the unreasonableness and flaws in Alphabet's privilege review process, despite Alphabet's legal department's awareness of the non-practicing status of ████████ a high-level Alphabet employee who reports directly to Alphabet's Senior Vice President and Chief Business Officer, Philippe Schindler,[26] it was the Division's efforts alone that led to the realization ████████ was not a practicing attorney. Multiplying the frustration to the Division's investigation, Alphabet did not produce any documents it had falsely claimed were withheld on the basis of ████████ status as a practicing, active attorney until after the Division sent a letter requesting the production of these documents. These improperly withheld documents were not available for ████████ CID deposition and the Division was unable to depose █ on these documents.

As further evidence of the unreasonableness of Alphabet's privilege review process, in correcting the privilege log entries relating to documents withheld on the sole basis of █ ████████ legal advice, Alphabet revised certain privilege log entries by substituting the name ████████ for ████████ but leaving the remainder of each entry, word-for-word, the same.[27] In attempting to explain its misrepresentation, Alphabet claimed only that "these appear to mistakenly attribute the legal advice (or request for legal advice)" to ████████ but provided no explanation of how its privilege review team could have failed to list ████████ despite █ name being listed directly in the documents.[28] Despite all of the Division's efforts regarding ████████ there appear to still be documents that have not been produced that list ████████ as a basis for the privilege or work product claim.[29]

Alphabet's counsel also provided incorrect information on several important projects about which the Division sought information and testimony and about which Alphabet had raised broad, and in some cases absolute, privilege and work product claims. On September 14, 2021, Alphabet's counsel provided a letter in response to certain specifications of CID No. 30769 that contained incomplete and inaccurate information as confirmed under oath by Alphabet's corporate representative.[30] On October 4, 2021, Alphabet's counsel provided another letter in response to the same CID that also contained inaccurate information as confirmed under oath by Alphabet's corporate representative.[31] More than four months after that letter, and only three days before the deposition of its corporate representative, Alphabet's counsel provided a letter that purported to "correct counsel's letters of September 14, 2021 and October 4, 2021."[32]

---

[25] G. Nierlich Ltr. to J. Elmer, Nov. 9, 2021 (quoting Dep. of ████████, 83:13-17, 244:17-245:4, Oct. 19, 2021).
[26] Dep. of ████████ 86:12-15, Oct. 19, 2021.
[27] B. Nakamura Ltr. to J. Elmer, Jan. 18, 2022 (citing GGPL-AT-0018120, GGPL-AT-0018097, GGPL-AT-0018054).
[28] J. Elmer Ltr. to B. Nakamura, Mar. 8, 2022 at 3.
[29] *E.g.*, GGPL-1060025882, GGPL-1080064567, GGPL-1100066597, GGPL-1100126801, GGPL-1100142572, GGPL-1100155831.
[30] J. Elmer Ltr. to R. Karr, Sept. 14, 2021; Alphabet 30(b)(6) Dep. 61:8-21, Feb. 28, 2022.
[31] J. Elmer Ltr. to R. Karr, Oct. 4, 2021; Alphabet 30(b)(6) Dep. 67:14-68:4, Feb. 28, 2022.
[32] J. Elmer Ltr. to J. Hogan & B. Nakamura, Feb. 25, 2022 at 1.

Despite the Division's CID specification asking about a narrow set of projects for which Alphabet had withheld documents and for which its employees were instructed not to provide testimony on the basis of privilege and work product claims, Alphabet provided inaccurate information to the Division for months, impeding its investigation.

### Further Privilege Log Deficiencies

Alphabet frequently cites a "Privacy Working Group"[33] and other multi-member groups—without identifying any individual attorneys—in support of its privilege claims. As non-attorneys, such as administrative staff or business employees may work in those groups, Alphabet must provide more detailed entries and identify the attorney(s) whose legal advice adequately supports a privilege or work product assertion. Notably, in your March 8, 2022, letter, Alphabet agreed to conduct "further investigation to determine the source of the legal advice, e.g., through interviews of the author of the document or statement, to the extent possible."[34] If Alphabet has still failed to provide replacement privilege log entries identifying the individual attorney whose legal advice supports privilege and work product claims, the Division must conclude that Alphabet is unable to identify any such attorney. If this is not the case—for example, if Alphabet's further investigation is ongoing—please state that in writing and specifically identify any relevant privilege log entries.

There appear to be several documents that have been produced with redactions but for which no corresponding privilege log entry exists.[35] Please identify the privilege log entries for these documents and confirm that privilege log entries have been provided for all redacted documents.

There are several privilege log entries that correspond to documents that appear to relate to business, not legal, issues and advice that are improperly redacted.[36] Other documents appear to have pretextual requests for legal advice and do not involve the provision of any legal advice.[37]

\* \* \*

---

[33] *E.g.*, GGPL-AT-0020956, GGPL-1050142607, GGPL-1400122100, GGPL-1390108529, GGPL-1390123333.
[34] J. Elmer Ltr. to B. Nakamura, Mar. 8, 2022 at 2-3.
[35] GOOG-DOJ-AT-02640381, GOOG-DOJ-00012843, GOOG-DOJ-AT-02113022, GOOG-DOJ-AT-02640381.
[36] GGPL-1050011529, GGPL-1120936990, GGPL-1050010833, GGPL-1151612661, GGPL-AT-0034573, GGPL-AT-0021215, GGPL-AT-0026829.
[37] GGPL-1090313688, GGPL-1120936990.

The Division reiterates its requests that Alphabet withdraw all unsupported privilege assertions and correct both its productions and privilege logs, without further delay.

Sincerely,

*/s/ Brent K. Nakamura*

Brent K. Nakamura
Trial Attorney
Antitrust Division
U.S. Department of Justice