**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR *IN CAMERA* INSPECTION AND TO COMPEL PRODUCTION OF DOCUMENTS WRONGFULLY WITHHELD AS PRIVILEGED**

In response to Plaintiffs' motion to compel, Google withdrew or narrowed its privilege claims for six of the twenty-one documents (nearly 30%) challenged by Plaintiffs. While Plaintiffs welcome the production of these documents, Google's reversal of its prior privilege determinations underscores the overbreadth of Google's claims of privilege in the first place. It also highlights the pervasiveness of the company's Communicate with Care policy, designed to shield from discovery important business discussions through improper assertions of privilege.

Google continues to assert privilege claims for nineteen documents within the sample of documents identified in Plaintiffs' initial motion, but it has failed to meet its burden to substantiate those claims. Resting primarily on a conclusory, boilerplate declaration from in-house counsel and an earlier 30(b)(6) deposition where its corporate representative repeatedly refused to answer proper questions, Google asks this Court to simply trust its blanket assertions of privilege, forgoing *in camera* review. But Google's arguments and factual support for its claim fall short of what is required to substantiate claims of privilege over broad swaths of documents created by non-lawyers, that serve obvious business purposes, and which appear to be merely new iterations of prior ordinary course business analyses. At a minimum, Google's

response does not explain why *in camera* review would not be helpful "for the Court correctly to apply the Fourth Circuit's attorney-client privilege law, including the limitations that are inherent in that body of law," *F.T.C. v. Reckitt Benckiser Pharm., Inc.*, 2015 WL 1062062 at *8 (E.D. Va. Mar. 10, 2015), such that this Court should decline to exercise its "broad discretion to determine whether a privilege is properly asserted" via *in camera* inspection. *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 456, 461 (E.D. Va. 1998). Accordingly, the Court should review *in camera* the documents Google continues to withhold[1] and order the production of any portion of those documents for which Google has failed to support its claims of privilege.

**ARGUMENT**

***I. Google's Communicate with Care Policy Has Been Used To Shield Documents from Discovery and Its Privilege Assertions Have Been Pervasively Overbroad and Internally Inconsistent.***

In its Opposition, Google claims Plaintiffs' challenges to its claims of attorney-client privilege are based on mere "speculation" that do not provide "a factual basis sufficient to support *in camera* inspection." Op. at 2-3. The challenged documents for which Google has abandoned or narrowed its claims of privilege suggest otherwise.

*First*, Google claims that it has "in good faith opted to drop its claim of privilege" over Document 4 (GOOG-DOJ-AT-01019463), which Plaintiffs had highlighted in their motion as a likely exemplar of Google's Communicate with Care policy in action. The unredacted version of that document, which Google recently produced, confirms that Plaintiffs' concerns were not mere "speculation" and are, instead, fully warranted.[2]

[1] Attached as Appendix A is a revised version of the appendix attached to Plaintiffs' motion to compel that reflects the recent production by Google of certain challenged documents.

[2] Attached as Ex. 1 is the redacted version of GOOG-DOJ-AT-01019463 as of the time the Motion to Compel was filed. Attached as Ex. 2 is the unredacted version of GOOG-DOJ-AT-01019463, which Google produced to Plaintiffs on the evening of June 2, 2023.

In the email chain, [redacted] [redacted], wrote:

> On Thu, Dec 20, 2018 at 10:26 AM [redacted]@google.com> wrote:
> ATTORNEY CLIENT PRIVILEGED & CONFIDENTIAL -- bringing Ted into this for the legal PoV because we're now talking more in depth about pricing. Best practice is to always get the legal PoV on pricing discussions, not to just have them in email.

Although [redacted] copied in-house counsel into the email chain and labelled the email privileged and confidential—consistent with Google's Communicate with Care policy, [redacted] does not raise any legal questions or seek legal advice. Rather, [redacted] raises important commercial points about market segmentation, pricing strategy, and Google's public fee disclosures. Unsurprisingly, no lawyer ever responds on the chain. Nonetheless, for nearly two years, Google withheld [redacted] email and most of the subsequent responses in the email chain, all from non-lawyer business employees. Contrary to Google's privilege log, none of the previously redacted content was "seeking and containing legal advice of Ted Lazarus ESQ regarding regulatory issues." Google had no basis for its privilege claim, which it persisted in maintaining despite the United States bringing the document to Google's attention many months before moving to compel. Notably, because Google redacted non-privileged material in this document throughout the United States' pre-complaint investigation, the United States was not permitted to ask Google witnesses about the redacted portions of the document during the investigative depositions of several of the email participants.

*Second,* Google recently produced a less redacted version of Document 3 (GOOG-DOJ-AT-00029680), which raises similar concerns about the breadth of Google's privilege

assertions.[3] Document 3 is a deal review document prepared for Google's Business Council—the most senior decision-making body in Google's digital advertising business—discussing potential commercial terms for a new contract with one of Google's publisher customers. According to Google's privilege log, the document was redacted because it reflected "legal advice of [REDACTED] [REDACTED] ESQ regarding contract terms." However, like Document 4, the previously-redacted portions of Document 3 contain no legal advice at all. Instead, the redacted portions contain commentary from Google's finance and corporate strategy personnel explaining, *inter alia*, that the proposed contract terms were justified by the publisher's agreement to "withdraw regulatory complaints" and to participate in a "escalation process to attempt to address any future complaints before they are filed" with regulators. Notably, [REDACTED] is not listed as a stakeholder for either section where redactions were lifted; he only appeared as a stakeholder in the separate "legal function" section of the document, which remains redacted.

*Third*, Google's inconsistent application of its privilege claims is apparent in its decision not to remove any redactions from Plaintiffs' other exemplar documents. This includes several exemplars that share similar characteristics to the six documents for which Google removed some or all of its prior redactions. For example, Google did not remove any redactions from Documents 16 (GOOG-DOJ-AT-00205841) and 19 (GOOG-DOJ-AT-01007207), claiming both are protected by attorney-client privilege and work product protection. Both, however, are email threads involving only Google business people discussing strategic business issues without any apparent attorney presence or involvement.

[3] Attached as Ex. 3 is the redacted version of GOOG-DOJ-AT-00029680 as of the time the Motion to Compel was filed. Attached as Ex. 4 is the less-redacted version of GOOG-DOJ-AT-00029680, which Google produced to Plaintiffs on the evening of June 2, 2023.

Google's belated, selective removal of redactions from several of Plaintiffs' exemplar documents are indicative of Google's inconsistent and overbroad approach to privilege; collectively, they demonstrated ample factual basis to support *in camera* inspection of the other exemplar documents identified in Plaintiffs' motion. Further, in light of Google's withdrawn privilege claims for two documents initially challenged by Plaintiffs, which reduced the sample of documents for the Court to review *in camera*, Plaintiffs respectfully request that the Court also review *in camera* the two following additional documents that are similar to the withdrawn documents, but where Google persists in asserting privilege. GOOG-DOJ-12949396; GOOG-DOJ-15088294.[4]

## *II. The Court Has Broad Discretion to Review Documents* **In Camera.**

Google argues that its privilege claims are exempt from *in camera* review because it has submitted a single declaration parroting the general legal standard for work product protection and provided limited testimony in response to certain questions posed to its corporate representative at a 30(b)(6) deposition. Op. at 7-8. However, the cases cited by Google demonstrate that courts regularly exercise their discretion to conduct *in camera* inspection based on a more minimal showing than has made been here, and even where privilege claims appear on their face to be strong. *See* Op. at 7. Courts take this conservative approach to account for the

[4] Google's strategy of narrowing its privilege claims only when responding to a motion to compel is not new. *See* Dkt. No. 335 at 3, *United States v. Google*, No. 20-cv-03010 (D.D.C. Apr. 7, 2022) (describing Google's production of approximately 9,000 erroneously withheld emails after the United States sought sanctions). Although Google's recent production mooted Plaintiffs' challenge to two of the original twenty-one documents for which Plaintiffs sought *in camera* inspection, Google's belated production of previously-withheld documents only once its privilege determinations were brought to the Court's attention does not give Plaintiffs much comfort about the remaining documents Google is withholding from production, especially where Google has redacted apparent business discussions despite the lack of any indication that a lawyer has provided legal advice.

inherent difficulty any challenging party—without access to the documents at issue—has in presenting detailed evidence to challenge the withholding party's privilege claims. This is why the showing necessary to seek *in camera* review is minimal. Indeed, Plaintiffs need only provide "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *4 (E.D. Va. July 16, 2019); *see also NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 503 (4th Cir. 2011) (directing district court to conduct *in camera* review of email chain involving non-lawyers where defendant's privilege log made a prima facie showing the privilege applied but defendant had "not presented a document-by-document privilege analysis"); *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992) (remanding for *in camera* review where district court relied solely upon privilege log to uphold claims); *cf. United States v. Zolin*, 491 U.S. 554, 572 (1989) (explaining in the crime-fraud context that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege" and the "threshold we set, in other words, need not be a stringent one"). Plaintiffs easily meet the required threshold to justify *in camera* review of the exemplar documents here.

For example, in *Zetia*—a case cited repeatedly by Google in its Opposition—the court conducted *in camera* review of a set of documents analyzing a potential patent litigation settlement notwithstanding defendants' submission of multiple declarations from both business and legal employees asserting that the materials were created in anticipation of litigation, at the direction of counsel, served solely a legal purpose, and would not have been created otherwise. 2019 WL 6122012, at *1-2. There, "notwithstanding the strength of [the defendant's] privilege claims, the parties' disagreement over the claw back documents [was] sufficiently narrow that

the court agreed to *in camera* inspection." *Id.* at *5. For the reasons identified below, Google has put forward far less support for its privilege claims than the defendant in *Zetia*, and therefore *in camera* review of the limited set of documents at issue is appropriate.

***III. Google's Work Product Protection Claims Fail Because the Prospect of Litigation Alone Is Insufficient to Protect Otherwise Inevitable Business Discussions.***

In its Opposition, Google argues that because Google has been under investigation by multiple antitrust enforcers since early 2019, and because the code-named projects involve potential changes to Google's business practices that might mitigate or alleviate regulators' concerns, all documents discussing any aspect of the business practice reviews should be withheld as privileged. The law in this Circuit does not sweep so broadly. *See ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 251 (E.D. Va. 2012) ("Thus, the application of the privilege laws serves an important purpose in our legal system, but that application can also 'remove otherwise pertinent information from the fact finder, thereby impeding the full and free discovery of the truth.' Because of this adverse result, in the Fourth Circuit, work product and attorney-client privilege are construed 'quite narrowly.'" (citations omitted)).

Google's brief and supporting declaration highlight the involvement of counsel in the projects, but the mere involvement of counsel does not as a bright-line rule confer privilege over the projects. Google suggests that neither the extensive involvement of non-lawyers in the code-named projects nor the use of pre-existing business analyses in the projects vitiates its broad privilege claims. While neither factor is dispositive, courts regularly consider the individuals involved in a project and the business purposes for which the related analyses were used when considering claims of privilege.[5] *See, e.g.*, *In re Dominion Dental Servs. USA, Inc. Data Breach*

[5] Google argues that its work product claim "hinges on *why* a document was created" and "not on whether it has a 'nexus' to business decisions." Op. at 13. The cases Google cites for this

*Litig.*, 429 F. Supp. 3d 190, 193-94 (E.D. Va. 2019) (finding that project completed "under the direction of Counsel" nonetheless was not privileged where analyses were "used for a range of non-litigation purposes"). For example, in *In re Capital One Consumer Data Sec. Breach Litig.*, 2020 WL 2731238, at *4, 7 (E.D. Va. May 26, 2020), this Court rejected defendant's claim of privilege over work performed by a cybersecurity vendor "at the direction of counsel" in the face of "substantial claims" following a data breach. In doing so, the Court concluded that the analyses "would have been prepared in substantially similar form but for the prospect of that litigation," in part because similar analyses had been performed in the past and used by the defendant for business purposes. *Id.* at *4-5 (observing that the report was used by defendant for "various business and regulatory purposes"). The court properly placed the burden on the defendant to "show[] how it would have investigated the incident differently if there was no potential for litigation." *Id.*

To evaluate whether a document prepared by business people is substantially similar to those the business would have prepared in the ordinary course, courts typically examine the substance of the documents *in camera*. This allows the court to order production of a redacted copy, "[i]f opinions and theories about the litigation are only part of a document otherwise discoverable." *Nat'l Union*, 967 F.2d at 985; *see also Asghari–Kamrani v. United Servs. Auto. Ass'n*, 2017 WL 553402, at *6 (E.D. Va. Jan. 20, 2017). In order to ensure that a party's assertion of work product is not overbroad, courts typically "must determine, from an

---

proposition make clear, however, that even if "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the [document]," work product protection "really turns on whether it would have been prepared irrespective of the expected litigation" in "substantially similar form." *United States v. Adlman*, 134 F.3d 1194, 1203-04 (2d Cir. 1998). Such a determination necessarily requires an assessment of the nexus between the document at issue and ordinary course business analyses.

examination of the documents or their circumstances, whether they were prepared in anticipation of litigation or for trial." *Asghari–Kamrani*, 2017 WL 553402, at *6.

Conclusory affidavits and declarations merely reciting the legal standard are insufficient. *See Dominion Dental*, 429 F. Supp. 3d at 194 (declining to credit defendants' affidavit that "makes the bare assertion that 'without the threat of litigation . . . the Mandiant Report would not have been prepared in a substantially similar form and may not have been necessary at all'"). Courts require the party asserting work product protection to make a "specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 2010 WL 1489966, at *3 (E.D. Va. Apr 13, 2010) (internal quotation marks omitted). Google "cannot simply rely on conclusory statements" but rather must provide "specific factual support" for its work product claim.[6] *Hempel v. Cydan Dev., Inc.*, 2020 WL 4933634, at *5-6 (D. Md. Aug. 24, 2020).

In support of its opposition, Google relies upon a single declaration from an in-house counsel[7] to substantiate its work product assertions over the code-named business projects. *See* Mot. to Compel at 18-22 (describing the business nature of each project). The declaration is light on facts and falls far short of the level of detail required to support a work product claim here, where the projects involve potential business changes to Google products, pricing and strategy. By simply parroting the legal standard for work product in the declaration and asserting the

[6] For example, in *Adair v. EQT Prod. Co.*, 294 F.R.D. 1, 6 (W.D. Va. 2013), a case relied upon by Google, the declarant provided a detailed explanation of their role with respect to the challenged documents and specific information on the nature, origin, and purpose of the privileged documents. *See* Dkt. No. 432-1, *Adair v. EQT Prod. Co.*, No. 10-cv-00037 (W.D. Va. 2013).

[7] The declaration is submitted by the same counsel copied into the Communicate-With-Care email chain in Document 4 (at 3) for which Google has withdrawn its claim of privilege.

protection applies to every document that discloses the "substance" of one of the projects, Google has failed to meet its burden.

- For each of the five code-named projects, the declarant states that he has general personal knowledge of the project based on "supervision or guidance" he provided. Decl. ¶ 5-9. He does not specify precisely *when* or *how* he was involved in each project, nor does he attest to any personal knowledge of the particular documents raised in the present motion.
- Except for Project Banksy, the declarant generally asserts each code-named project was a "remedies" project undertaken because of and in response to several government investigations. But the declarant fails to identify the specific investigation or potential litigation that purportedly prompted the code-named project, or even when the investigations were initiated in relation to the code-named project. *Id.*
- The declarant identifies certain outside counsel "involved" in each project, but he does not explain the extent of their involvement or whether the lawyers were involved in the creation of the particular documents at issue in the present motion. *Id.* Tellingly, the declaration says nothing about the identities and roles of the non-lawyer business people involved in each project, or how those business people contributed to the creation of the documents at issue here.
- The declarant generically asserts, with respect to each of the code-named projects, that the "analyses and work done" on the projects "would not have occurred in substantially similar form," *id.*, but he critically makes no such representation with respect to the specific documents at issue, *id.* ¶ 10-15. As to the particular documents,

he simply asserts they "reveal the substance," or were "created as part," of the projects. *Id.* ¶ 11-13. But that is not the standard for work product protection.

- The declarant provides no additional information about the purpose, use, or nature of any specific document, which would allow the Court to assess independently whether the document—or portions thereof—would have been prepared in substantially the same form but for reasonably-anticipated litigation. Indeed, the declarant does not describe the documents in any detail whatsoever.

At best, the declaration confirms that the documents were created at a time when Google was subject to multiple governmental investigations, some of which could potentially lead to litigation. But the Fourth Circuit has warned that the mere possibility of litigation is insufficient to cloak ongoing business analyses and decision-making in a blanket claim of privilege. As the Fourth Circuit has explained, "because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind . . . [y]et, '[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials' with work product immunity." *Nat'l Union*, 967 F.2d at 984. The rule Google seeks to advance ignores these concerns. It would provide greater work product protection over the business documents of large companies that frequently face the threat of litigation while affording less protection to smaller companies that draw fewer suits. This is why courts look beyond the mere prospect of litigation at the time a document is created and instead consider the document's nature, content, and purpose.

The omissions from Google's declaration are not oversights. Rather, they are consistent with the positions taken by Google's counsel during the pre-complaint 30(b)(6) deposition on the code-name projects. During that deposition, Google restricted its witness from answering basic

questions concerning the nature, purpose, or business use of the challenged documents. In fact, Google's corporate representative refused to answer numerous questions that sought basic information needed to assess Google's assertion that no portion of any of the project documents would have been created in substantially the same form but for litigation.

For example, Google's corporate designee refused to identify what data sources Google's non-lawyer business employees drew upon in their work on the projects or whether the projects incorporated any pre-existing business analyses, which might suggest the code-name projects were continuations of ordinary course business analysis. *See, e.g.*, Ex. 5, 30(b)(6) Tr. at 119:3-14; Tr. 158:14-159:10.[8] Likewise, Google's designee refused to say whether any financial forecasts were created as part of the code-name projects, including whether those forecasts might be used in Google's ordinary course of business operations.[9] Ex. 5, 30(b)(6) Tr. 136:11-140:1. Google's representative also refused to answer questions about whether there were any successor projects, notwithstanding the fact that Google has taken the position that some predecessor or successor projects are not privileged, such as the predecessor project for Project Banksy that bore the same name.[10] Ex. 5, 30(b)(6) Tr. 143:18-144:2; Op. at 16 n.16. As Google's counsel

---

[8] In its Opposition, Google argues that "work-product materials do not lose their work-product status because they incorporate ordinary-course analyses or content," Op. at 12, but whether the materials substantially incorporate or rely upon ordinary-course business analyses is relevant to whether the document would have been created in substantially the same form but for litigation as a continuation of the prior business workstream. Likewise, any "stand-alone forecasts or financial data" contained in the documents "would not be subject to a claim of privilege" and must be separately produced if responsive to Plaintiffs' discovery requests. *See Zetia*, 2019 WL 6122012, at *5.

[9] Notably, during the course of the deposition, Google's non-lawyer corporate representative often declined to answer on the basis of privilege even before counsel objected. *See, e.g.*, Ex. 5, 30(b)(6) Tr. 136:11-13.

[10] In response to Plaintiffs' motion, Google removed its redactions in Documents 15 (GOOG-DOJ-AT-00660900) and 18 (GOOG-DOJ-AT-00660895) because it had incorrectly contended the document "related to the non-privileged Banksy" project instead of the "work-product-

explained during that deposition, "We're here to provide, you know, a verbal privilege log," while taking the position the United States was not allowed to ask about any "substantive details" of the projects. Ex. 5, 30(b)(6) Tr. 136:11-140:1. Without such information, and absent *in camera* review, it is difficult to assess Google's blanket assertion that none of the documents would have been created in a similar form but for litigation.

To be clear, Plaintiffs do not seek any portions of the documents that discuss litigation strategy or counsel's mental impressions of Plaintiffs' potential or actual claims. Plaintiffs are entitled, however, to non-privileged business analyses by Google's business employees relating to business operations and decisions that are relevant to Plaintiffs' claims and/or Google's defenses. Simply because Google is subject to investigation or litigation, and has been for years, it should not be allowed to shield this non-privileged business information on relevant topics from discovery.

### *IV. Plaintiffs' Motion to Compel Is Timely and Appropriate.*

Google cannot deny that the United States promptly raised its concerns with Google's privilege claims during the course of the pre-complaint investigation or that the parties had extensive communications on these issues during the pre-complaint investigation. (Indeed, as a result of those extensive discussions, Google produced over 50,000 documents it had previously withheld on purported privilege grounds.) Nonetheless, Google now claims Plaintiffs' motion is untimely and that Plaintiffs seek an improper advisory opinion. Both suggestions are wrong.

*First*, Plaintiffs sought the documents at issue in this Motion via their first two Requests for Production ("RFPs"), which were issued on the opening day of discovery in this case. When

---

protected Project Banksy," Op. at 9-10 n.9. This confusion further illustrates the arbitrariness of the line drawn by Google in its privilege claims for the code-name projects.

Plaintiffs first pressed Google on its response to those RFPs, Google contended any privilege dispute was not yet ripe, and would not ripen until Google produced revised privilege logs much later in discovery. Yet, in an apparent reversal, Google now claims Plaintiffs should have filed their motion even earlier in discovery. The truth is that Plaintiffs filed the instant motion in a timely manner, soon after an impasse was confirmed by the parties, and any delay in filing the motion was attributable solely to ongoing conferences with Google to attempt to resolve these issues.

*Second*, Google goes a step further and suggests that the United States should have invoked 15 U.S.C. § 1314 to initiate a pre-complaint litigation for the sole purpose of raising these privilege concerns with a separate court back then. However, nothing in the statute Google cites requires the United States to file a miscellaneous action seeking to enforce its Civil Investigative Demand prior to the filing of a substantive suit. Indeed, State Plaintiffs, who brought this motion with the United States, could not have done so under the federal statute. Google cites no authority for the proposition that the United States or State Plaintiffs abandoned their privilege challenge by failing to file a pre-suit subpoena enforcement action. It is clearly within the United States' discretion to determine whether such an approach is necessary in the exercise of its investigative authority.

*Third*, Google's suggestion that Plaintiffs seek an advisory opinion is false. This motion seeks to compel production of specifically-identified documents withheld in whole or in part by Google on the basis of privilege. Such relief is discrete and based on a ripe dispute between the parties; it also is fully consistent with Judge Castel's decision in the MDL to rule on challenges to a discrete sample of documents withheld by Google on the basis of privilege. *In re Google Digital Advert. Antitrust Litig.*, 2023 WL 196146, at *1 (S.D.N.Y. Jan. 17, 2023). Nothing about

Plaintiffs' proposed order compelling production of a discrete set of documents would amount to an improper advisory opinion. While Plaintiffs hope that the Court's analyses of these particular documents will lead to more fruitful future discussions among the parties on privilege issues, Plaintiffs do not seek an advisory ruling on any other privilege claim asserted by Google. Plaintiffs merely previewed in their opening brief (Mot. to Compel at 1 n.2), that, while hopefully unnecessary, Plaintiffs may ultimately need to return to the Court for additional assistance should an impasse on similar privilege claims arise later in discovery.

**V. *Google Has Waived Privilege over Document 1 (GOOG-DOJ-12766025).***

In its Opposition, Google argues it did not waive any applicable privilege with respect to Document 1 despite failing to object to the use of that document at a deposition nearly two years ago. Typically, privilege is waived where a party allows a privileged document to be marked as an exhibit at a deposition and permits its witness to answer questions about the document. *See Martin v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1297819, at *5 (S.D.W. Va. Apr. 1, 2011). Although that is precisely what happened here, Google contends that it did not have sufficient opportunity to object to the use of the document before its employee answered questions. The transcript belies such an assertion.

As is standard practice at depositions, the Google employee witness—and Google's counsel—were given time to review the document in full, and the witness confirmed his review was complete before any question was posed. Ex. 6, [REDACTED] Tr. 196:16-24. Six questions were asked about the now-clawed-back portion of the four-page email before Google's counsel objected. Google counsel's failure to object in a timely manner to either the introduction of the exhibit or the associated testimony—both of which referenced by name one of the code-name projects— amounted to waiver of the privilege on behalf of his client. *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) ("But

under both state and federal law, if a privileged document is used at a deposition, and the privilege holder fails to object immediately, the privilege is waived.”).

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court review *in camera* the documents identified in the Appendix and order Google to produce each document, with appropriate redactions only if necessary.

Dated: June 8, 2023

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ David M. Teslicko
DAVID M. TESLICKO
ALVIN H. CHU
AARON M. TEITELBAUM

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Andrew N. Ferguson
ANDREW N. FERGUSON
Solicitor General
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia