# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| **UNITED STATES,** *et al.,* | |
| *Plaintiffs*, | |
| - against - | Civil Action No. 1:23-cv-00108 (LMB) (JFA) |
| **GOOGLE LLC,** | |
| *Defendant*. | |

## GOOGLE LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' RULE 30(B)(6) DEPOSITION NOTICE

The Department of Justice Antitrust Division, along with many of the State Plaintiffs, have conducted a years-long investigation that afforded them one-way access to voluminous discovery from Google. Duly complying with the government's requests, Google produced nearly two million documents and 31 witnesses for deposition during the investigation alone. After nearly three and a half years of gathering information, Plaintiffs filed a complaint initiating the instant action on January 24, 2023.

Discovery in this litigation began on March 27, 2023 and is set to close on September 8, 2023 according to the joint discovery plan submitted by the parties. *See* Jt. Proposed Discovery Plan at 1-2 (March 28, 2023), ECF No. 87; Rule 16(b) Scheduling Or. (Mar. 31, 2023), ECF No. 94 (ordering parties' joint discovery plan). Before entering the parties' joint discovery plan, this Court instructed the parties to "focus [their] attention on certain things" and emphasized that "[parties are] not going to be able to turn over every grain of sand," observing that the case's issues

1

were ones that "the parties have been contemplating and dealing with in various places for extended periods of time."  Hearing Tr. (Mar. 24, 2023), ECF No. 70 at 18:7-12.  In response to Plaintiffs' discovery requests in this litigation, Google has produced nearly two million additional documents and agreed to produce nine additional current and former employees for deposition.

Yet, despite a nearly three-and-a-half-year investigation and over four months of discovery in this case, Plaintiffs waited until a month before the close of fact discovery to serve Google with a sprawling 30(b)(6) deposition notice with over 200 (including subparts) broad and detailed topics (the "Notice"), attached hereto as Exhibit A. Google served its objections to the Notice on Plaintiffs August 14, 2023.

Google met and conferred with Plaintiffs on August 16, 2023 and twice on August 17, 2023 in an effort to narrow the scope of the Notice.  The parties were able to reach an agreement as to the total number of hours of 30(b)(6) deposition testimony on both sides, but they were not able to reach agreement with respect to the number and scope of topics in the Notice, other than the elimination of Topic Nos. 28-30.

Even taking into account the limited agreements Google and Plaintiffs were able to reach with respect to hours and topics, the Notice taken in its entirety is unduly burdensome and disproportionate to the needs of the case because it is duplicative of Plaintiffs' other discovery requests, overly broad, and not stated with sufficient particularity to permit Google to identify corporate designees to provide the testimony requested.  This is particularly the case in light of the limited time remaining for fact discovery.  To be clear, Google does not categorically refuse to provide discovery in response to the Notice. However, by demanding that Google prepare corporate designees to testify in detail concerning approximately 200 different topics and subtopics, Plaintiffs at the eleventh hour are seeking discovery in the most burdensome and

unreasonable manner possible.  Google seeks relief from this Court in the form of a protective order requiring Plaintiffs to withdraw their Notice without prejudice to reissue a Notice that is proportional to the needs of the case. Independently, Google requests a protective order with respect to the portions of the Notice that seek expert analysis[1] or information protected by the attorney client privilege or work product doctrine.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, litigants may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, discovery in federal litigation is not limitless.  Any discovery sought must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* A court "must limit the frequency or extent of discovery otherwise allowed" if: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) provides relief from discovery that exceeds the scope permitted by Rule 26(b)(1).  Courts have broad discretion, for good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ.

---

[1] The parties' joint discovery plan (approved by the Court) provides a schedule for exchanging expert reports. Jt. Proposed Disc. Plan, ECF No. 87.

P. 26(c)(1); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (holding the courts have "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required"). This discretion includes orders forbidding the requested discovery altogether, as well as orders modifying the requested discovery. Fed. R. Civ. P. 26(c)(1)(A); *Fonner v. Fairfax Cnty.*, 415 F.3d 325, 331 (4th Cir. 2005) (holding that district court did not abuse its discretion in issuing a protective order precluding an individual's deposition); *Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2014 WL 3895698, at *1 (E.D. Va. Aug. 8, 2014) (striking overbroad or duplicative 30(b)(6) deposition topics).

## ARGUMENT

Taken as a whole, the Notice does not pass muster under Rule 26. Putting aside the massive amount of discovery collected during their multi-year investigation, Plaintiffs have had months in this litigation to obtain the discovery sought in the Notice, and many of the topics in the Notice are cumulative of existing discovery DOJ already has. By flouting this Court's instructions to be efficient in discovery, Plaintiffs now seek to foist on Google the undue burden of preparing numerous corporate representatives to testify about hundreds of topics in the waning days of fact discovery. Given the voluminous discovery Google has already produced (or is in the process of producing) regarding the topics in the Notice and Plaintiffs' ample opportunity to obtain discovery on those topics in this litigation alone (including 9 depositions of current and former Google employees, 76 requests for production, 17 interrogatories, and 28 requests for admission), the burden of the Notice goes far beyond what is proportional to the needs of the case.

### I. The Court Should Require Plaintiffs to Withdraw their Notice.

With a total of four years of investigative and litigation discovery now under their belts, Plaintiffs' Notice – which seeks detailed 30(b)(6) testimony on approximately 200 different complex topics and subtopics, with three weeks remaining in fact discovery – is unduly

4

burdensome and disproportionate to the needs of the case. *Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004) (granting protective order for overbroad 30(b)(6) topics and ordering that plaintiffs "wipe the slate clean" to arrive at "a mutually agreeable listing of topics"). In its breadth and detail, the Notice imposes an incredible burden on Google, and would require the preparation of many different witnesses, in some cases on a single topic. In light of how much discovery DOJ has already conducted in this case, a 30(b)(6) notice should be tailored to what is actually necessary. *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009) ("sufficient discovery has been produced in this case to allow [plaintiff] to narrow the focus of this inquiry.").

For example, Topic 8 seeks testimony on data sourced from 13 separate databases. Responding to this topic alone would require Google to prepare and defend multiple designees, who themselves will have to canvas and interview dozens of engineers. *See* Declaration of Alexander Bergersen ("Bergersen Decl."), ¶ 6, attached hereto as Exhibit B. Similarly, Topic 9 seeks testimony on each of the log-level datasets "produced or that will be produced in this Litigation" and during the Investigation, including "the use of the information and data," the "sources of information from which data was pulled," the "process of pulling" the data, and "the definition of each field, variable, column, and/or value." This topic would require Google to prepare multiple witnesses on the entirety of the log-level data produced in the case, and including every piece of associated minutiae. That is especially challenging because those datasets were created to respond to requests for production from DOJ and are not maintained in the ordinary course, which increases the burden of preparing a witness to testify.

By way of further illustration, Topic 17 requests testimony for the gamut of conduct alleged in Plaintiffs' complaint, potentially requiring a different designee for each of the 14 subtopics—most of which Plaintiffs have already covered in their nearly 40 individual depositions of current

and former Google employees. Between Topics 8, 9, and 17 alone, Google would need to gather information from dozens of individuals in order to prepare multiple witnesses to provide testimony as corporate representatives. *See, e.g.*, Bergersen Decl., ¶ 6-7.

Other topics present yet additional challenges. Topic 1 contains a total of 37 subtopics and sub-subtopics seeking testimony concerning completely disparate categories of information. For example, Topic 1 purportedly seeks information regarding "accounting policies and procedures," but subtopic 1(j) has nothing to do with accounting policies and procedures, as it seeks testimony about "AdX direct, Yavin, Ad Connector dual/hybrid ad server setups, and any other means through which AdX submits bids to publishers that do not use DFP as their Publisher Ad Server." Similarly, topic 1(i) seeks broad testimony regarding Google's performance forecasts and evaluations for its display advertising products, including the "individuals or business units involved, key metrics and goals, and financial targets." Not only is this subtopic not about "accounting policies and procedures," but it would also require Google to prepare multiple personnel responsible for each product. *See* Bergersen Decl., ¶ 3. The nine-year time period covered by this Topic is also an issue: As Google has already explained in its supplemental response to Plaintiffs' Interrogatory No. 3, current Google Finance personnel lack familiarity with product-level financial metrics covering the 2014-2016 period. Therefore, it is unlikely that Google could, for instance, adequately prepare a witness to respond to Topics 1(g)-(i), and (l), especially in light of the short window before the close of fact discovery. *See id.* Topic 1(k) does not even specify the information sought, but merely seeks "information contained in the following documents" and lists 11 Bates numbers corresponding to complex spreadsheets, which themselves contain a multitude of data. It would be a monumental task to prepare multiple witnesses to testify just regarding Topic 1, let alone the rest of the Notice.

Topic 10 may appear on its face to be more focused because it seeks testimony regarding a dataset for Google Ad Manager (GAM), but that is not the case. Google agreed to produce this custom dataset, which does not exist in the ordinary course of business, in response to Plaintiffs' Requests for Production. Plaintiffs requested that Google provide worldwide bid-level data covering GAM auction queries received during the 35th, 36th, 37th, 38th, and 39th seconds of each minute of the month of June 2023, as well as a second set of data covering queries received on June 28, 2023. This dataset includes data associated with approximately 55 billion queries from that time period. In order to prepare a witness for Topic 10(b), which requests "the percentages of impressions in the dataset for which line items are ineligible to compete in GAM auctions for the reasons listed…", Google would need to analyze potentially thousands of line items associated with *each* of these 55 billion queries and the reasons why they were ineligible to compete in the GAM auction.

Topics 13 and 14 seek to require testimony on "Google's measurement, evaluation and understanding of the value of *any data*" and "Google's processes for measuring and evaluating the impact of the collection of *data of any type* on its business performance or processes." These topics fail to place any bounds on the data or business at issue. For example, the Notice does not specify the type of data at issue, the sources of such data within Google, or the purpose for which Google uses this data. The data in these topics are not even limited to the relevant products in this litigation. Topic 13, for example, explicitly sweeps in other products like "Search, GMail, YouTube, signed in with Google, etc." And while Topic 14 lists some specific allegations, like dynamic allocation and dynamic revenue share, the phrase "data of any type" and the word "including" which the Notice defines as "including but not limited to" makes clear that this topic

is not limited in any way. The breadth of subjects at issue is completely untethered from the claims in this litigation.

Topics 15 and 16 seek to require testimony on how data is and has been passed between any of Google's products that facilitate display advertising—including but not limited to GAM, DV360, and Google Ads—as well as testimony on "any datasets" accessible to or accessed by those products. Other than the connection to display advertising, the Notice provides no discernible link to the conduct alleged in the complaint. Merely identifying and describing such data—as Topics 15(a) and 16(a) seek—would be a tremendous burden for Google's deponent. But the topics seek further testimony on "[h]ow Google's products, employees, and executive use that data in the ordinary course of Google's business," which would itself require Google's deponent to investigate how Googlers past and present have designed and used products spanning the 13-year period requested for Topics 15 and 16.

The Notice burdens Google with not only identifying, preparing, and defending numerous corporate representatives to address its many overbroad topics, but also properly educating those representatives so that they are able to respond to the many detailed subtopics. It is well established that a corporation has an affirmative duty to "make a good-faith effort to designate persons with knowledge of the the matter sought by the opposing party and to adequately prepare the corporate representative[s] so that they may give complete, knowledgeable, and non-evasive answers in deposition," including beyond the designee's personal knowledge. *United States v. B.C. Enterprises, Inc.*, No. 2:08CV590, 2010 WL 11699777, at *1 (E.D. Va. Feb. 19, 2010). As demonstrated above, that is simply not possible for Google to adequately do for this Notice as currently drafted.

On balance, these massive burdens are vastly disproportionate to Plaintiffs' need for the testimony sought in the Notice. Plaintiffs already have four years worth of discovery from Google amounting to millions of documents and testimony from 40 current and former employees (including one 30(b)(6) representative).[2] As discussed below, *see infra* § III, much of the discovery Plaintiffs seek now is duplicative of the discovery Google has already provided or is in the process of providing. Given the additional fact that Plaintiffs waited over four months into the discovery period to issue such a burdensome Notice, the Court should find the Notice disproportionate to the needs of the case and order Plaintiffs to withdraw it, or in the alternative modify it. *See, e.g.*, *St. John Haney v. Kavoukjian*, No. CV 2:19-2098-RMG, 2020 WL 12762510, at *5 (D.S.C. Dec. 17, 2020) (granting protective order against 30(b)(6) deposition because plaintiffs had "ample opportunity" to obtain information by discovery despite plaintiffs realizing new information based on internet searches).

## II. Google Seeks a Protective Order Against Producing 30(b)(6) Testimony In Response to Topics Not Stated With Reasonable Particularity.

Federal Rule of Civil Procedure 30 requires the noticing party to "include in its notice a description with reasonable particularity [of] the matters for examination," so that the other party could "adequately prepare deponents." *B.C. Enterprises*, 2010 WL 11699777, at *1; *see also* Fed. R. Civ. P. 30(b)(6) (the party noticing the deposition must "describe with reasonable particularity the matters for examination."). Plaintiffs have not met this burden, because many of the topics in the Notice are so vague, ambiguous, and broad that it is impossible for Google to identify witnesses to properly prepare for and respond to the topics. *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) ("If the noticing party

---

[2] Upon completion of the individual depositions of current and former Google employees noticed in this action.

does not describe the topics with sufficient particularity or if the topics are overly broad, the responding party is subject to an impossible task.").

Some of the data-related topics in the Notice are particularly egregious. For example, Topic 13 seeks testimony regarding "Google's measurement, evaluation, and understanding of the value, whether expressed as dollar amounts or some other metric, whether monetary or non-monetary and whether measured by the quality, utility, or usefulness of any data, its bid, pricing, audience, targeting, or related data by its executives, engineers, product managers, and employees." Aside from being nearly impossible to understand, Topic 13 appears to be seeking testimony on the "value" of "any data" used for any purpose by Google. While the next sentence of Topic 13 attempts to explain "for clarity," the request is no less confusing or broad, as it states, "this includes Google's measurement, evaluation, and understanding of *the value of any data*, whether considered alone or in conjunction with the other datasets…" (emphasis added). This request is so broad as to be absurd. There could be hundreds of individuals that Google would need to consult in order to prepare a witness (or witnesses) to testify to the "measurement, evaluation, and understanding" of *any* data. *See, e.g.*, *Banks*, 222 F.R.D. at 18–19 (finding a topic requesting "the sum and substance of all conversations" with an employee impermissibly broad); *Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 684 (N.D. Ga. 2010) (sustaining objection to 30(b)(6) topic that sought "the existence, description, nature, custody, condition, and location of any documents or other tangible things that are relevant or are reasonably calculated to lead to the discovery of admissible evidence."); *Trustees of Bos. Univ.*, 2014 WL 5786492, at *3 (holding topic seeking "all facts related to the relationship" between two companies, among others, were overbroad and did "not provide a basis upon which an individual or entity can reasonably determine what information may or may not be responsive.").

Nor do the subparts provide any clarification. Because Topic 13 uses inclusive language such as "whether considered alone or in conjunction with other datasets with the following considerations," the subparts do not limit the topic. In addition, the subparts themselves are worded extremely broadly. For example, subpart 13(a) states "whether the joining, simultaneous use, or *any* other linkage or association of the data with *any* other data or dataset increases, decreases, or causes *any* change in the value, whether considered on a monetary or non-monetary basis." (emphasis added). Courts have found similar language "sufficiently broad and amorphous as to run afoul" of Rule 30. *Fed. Ins. Co. v. Delta Mech. Contractors, LLC*, No. 11-048ML, 2013 WL 1343528, at *4 (D.R.I. Apr. 2, 2013) ("'including but not limited to' language in Rule 30(b)(6) notices are patently overbroad and impossible to comply with.") (internal citations omitted); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005) ("Listing several categories and stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all.").

Similarly, Topic 14 seeks testimony regarding "Google's processes for measuring and evaluating the impact of the collection of *data of any type* on its business performance…" (emphasis added). It is impossible to prepare a witness regarding the "impact" of "data of any type" on a topic as broad as "business performance." There are infinite ways to interpret the phrase "impact" and "business performance," let alone the purposefully overbroad inclusion of "data of *any* type." Topic 17 seeks testimony regarding the "nature, function, and operations" of 14 different Ad Tech features, "including any data and algorithms utilized." The phrase "nature, function, and operations" fail to meet the reasonable particularity standard required by Rule 30(b)(6), as it encompasses nearly every aspect of these features. *See, e.g.*, *Kmart*, 255 F.R.D. at 506 (defendant "could not reasonably designate and properly prepare a corporate representative"

for a "broad line of inquiry" that included topics regarding "the corporate history" and "corporate relationship" of four entities, and "the bankruptcy of [the parent company]").

Given the overbreadth of these topics, it is not Google's responsibility to guess or interpret what Plaintiffs mean. *See E3 Biofuels, LLC v. Biothane, LLC,* No. 8:11CV44, 2013 WL 4400506, at *3 (D. Neb. Aug. 15, 2013) ("Plaintiff cannot be left to guess about the information [noticing party] wishes to obtain, and then open itself up to complaints that it failed to produce appropriate individuals to testify."); *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009) ("[I]t hardly seems fair to expect [defendant] to interpret" an overbroad deposition topic.) (internal quotation marks omitted). Google has met with Plaintiffs in an attempt to narrow or drop these topics, but Plaintiffs so far have not modified any of them.

### III. Plaintiff's Notice Includes Topics Duplicative of Other Discovery or Inappropriate for Oral Testimony

Given the fast-approaching fact discovery deadline, the parties do not have time to waste on inefficient and unproductive discovery. *See, e.g.*, *Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 126 (holding that a 30(b)(6) deposition, "which by its nature can be time-consuming and inefficient, be productive, and not simply an excuse to seek information that is already known"). Courts have ruled against deposition topics that are inappropriate or inefficient for oral testimony, such as topics that would require the deponent to catalog and memorize voluminous information. *See, e.g.*, *Trustees of Bos. Univ.*, 2014 WL 5786492, at *4 ("Topic 22 asks the designated witness to state, for each accused product, from 2006 to the present, the costs, expenses on an itemized basis, gross profit margin, operating profit margin, incremental profit margin, and revenues. It also asks the witness to identify all supporting documents. It is not reasonable to expect one or more witnesses to remember and testify about every one of these facts.")

Many of the topics appear to be seeking information that are not appropriate and overly burdensome for oral testimony because they would require Google witnesses to study and remember voluminous and detailed information. These topics seek testimony identifying numerous individuals, identifying documents, and explaining all aspects of voluminous datasets. For example, Topic 1(h) seeks "[t]he identity (by Bates number or file numbers) of all final versions of P&L statements." Topic 6(b) seeks the "identification and operation of any algorithms, processes, or source code." Topic 7(e) seeks "[t]he identities, including by name and/or title, of any Google employees or executives." Topic 8 seeks the "definitions and topics regarding datasets produced by Google in this Litigation" for 17 datasets. Topic 9(b) seeks "[t]he individual sources of information from which data was pulled, extracted, copied." Topic 9(d) seeks "[t]he definition of each field, variable, column, and/or value in each dataset." Topic 15(a) seeks the "[i]dentification or description of the contents of [Google's] data." Topic 16 seeks the "identification of any datasets." And Topic 22 seeks the "identification and Google's understanding of terms of contracts, agreements, or arrangements."

It would be impossible and inefficient for Google to prepare witnesses to testify regarding such voluminous records, data, and be prepared on the identities of particular individuals and executives. *See, e.g.*, *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prod. Liab. Litig.*, No. CV 17-MD-2775, 2018 WL 3079699, at *3 (D. Md. June 20, 2018) (holding it is "hard to see how subpoenaing testimony from someone who can identify those people is any more efficient than interrogatory requests to the same end."); *Parsons v. Columbia Gas Transmission, LLC*, No. 2:19-CV-00649, 2021 WL 5413675, at *2 (S.D.W. Va. Sept. 10, 2021) (granting protective order as to topics seeking testimony about "the extent to which CGT has data" and "data compilations"); *U.S. ex rel. Smith v. Boeing Co.*, No. 05-1073-WEB, 2009 WL 2777278,

at *8 n.16 (D. Kan. Aug. 27, 2009) ("Requiring Boeing to designate a corporate representative to appear for a deposition to provide the names and addresses of witnesses is a waste of time and money.").

Moreover, none of these topics meet the "reasonable particularity" standard of 30(b)(6). Merely listing documents or datasets Plaintiffs are interested in does not help Google understand the topic, or how to prepare a witness about those voluminous documents and datasets. DOJ's deposition does not provide any information, for example, on how Google is to prepare witnesses on Topics 1(k), 2(g), 3(b), or 5(c), which simply lists Bates numbers of various large, and complex datasets or financial documents, with nothing more than the bare statement that DOJ is seeking "information" about these documents. Further, some of these documents were produced in DOJ's *Search* case against Google. *See Boeing*, 2009 WL 2777278, at *8 n.16 (holding "when voluminous documents extending over years are involved, an entity preparing Rule 30(b)(6) witnesses must understand what is being requested" and "simply asking a party to provide testimony concerning a 390-page contract or a 190-page manual does not satisfy the requirement of reasonable particularity").

Plaintiffs have had ample opportunity to seek, in more efficient and less burdensome ways, the information they now request in the Notice. Including so many impractical and burdensome topics in a 30(b)(6) deposition notice would require Google to prepare numerous witnesses regarding various lists, data, and minutiae, who would not possibly be able to recite the information accurately during a deposition. *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255, 263 (M.D.N.C. 2010) (noticing party "had ample opportunity to obtain the information by discovery in the action" including through interrogatory).

Moreover, Plaintiffs already have much of the information requested. For example, Topic 11 seeks, among other things, "a list of the fields and types of data available" in certain datasets produced by Google. Google has already provided such lists in its data productions. Top 10(a) seeks testimony on why "one cannot infer that a remnant line item competed in the GAM auction based solely on information in the inventory key value for a given ad query." This highly technical issue regarding data was answered by Google in a letter dated July 14. Having already provided the information, Google should not have to also designate a witness to memorize and be able to recite lists or the technical requirements of data. *See, e.g., Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2014 WL 3895698, at *1 (E.D. Va. Aug. 8, 2014) (striking certain deposition topics because they are "covered" by interrogatories and requests for production); *Banks*, 222 F.R.D. at 19 (ordering plaintiff to re-draft 30(b)(6) topics to ensure that they are "meaningful exercises in ascertaining information that has not been previously discovered or are necessary"); *Kinetic Concepts*, 268 F.R.D. at 263 (finding a deposition topic unwarranted given the noticed party's interrogatory responses).

### IV. The Court Should Protect Google from Topics that Are Protected Under the Attorney Work Product Doctrine and Attorney-Client Privilege or that Seek Legal Conclusions or Expert Analysis.

Many of the topics in the Notice also pose privilege and work product issues, or appear to seek testimony regarding legal conclusions or expert analysis. Such topics are improper. *See Novartis Pharms. Corp. v. Abbott Lab'ys*, 203 F.R.D. 159, 163 (D. Del. 2001) (denying motion to compel Rule 30(b)(6) deposition because topic regarding testing "done at the request of its counsel" and "conducted in anticipation of identifiable litigation"); *Boeing*, 2009 WL 2777278, at *7 (granting protective order regarding topic that requested information on "retrieval, search, investigation, disclosure, and production of [defendant's] records in this litigation"). Similarly,

here, Topics 9(c) and 11(b) seek testimony about "[t]he process of pulling, assembling, and quality-checking" datasets which were created for this litigation and do not exist in the ordinary course of business. Topic 22 seeks information regarding "Google's understanding of terms of contracts, agreements, or arrangements" with the Federal Agency Advertisers. It would be burdensome and infeasible for Google to prepare witnesses to testify regarding these topics without divulging privileged information, at least without more targeted information regarding what DOJ intends to ask on these topics.

In addition, other topics improperly seek testimony regarding legal conclusions and matters requiring expert testimony. *See In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective order from 30(b)(6) topics asking "about facts supporting numerous paragraphs of Xerox's denials and affirmative defenses" as legal conclusions or expert testimony); *Parsons v. Columbia Gas Transmission, LLC*, No. 2:19-CV-00649, 2021 WL 5413675, at *1 (S.D.W. Va. Sept. 10, 2021) (A "Rule 30(b)(6) deposition is not an appropriate vehicle to ascertain a corporate party's litigation positions."). For example, Topic 18, seeks "all procompetitive justifications" for each conduct alleged in the Complaint. "Procompetitive justifications" is a legal term in antitrust law. *See United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001). To the extent that DOJ seeks Google's legal position regarding what constitutes procompetitive justifications for the alleged conduct, it is not appropriate questioning for 30(b)(6) designees.

## CONCLUSION

For these reasons, Google requests that the Court enter a protective order requiring Plaintiffs to withdraw their 30(b)(6) deposition notice.

| | |
|---|---|
| Dated: August 18, 2023 | Respectfully submitted, |
| | |
| | /s/ Craig C. Reilly |
| Eric Mahr (*pro hac vice*) | CRAIG C. REILLY (VSB # 20942) |
| Julie S. Elmer (*pro hac vice*) | 209 Madison Street |
| Andrew J. Ewalt (*pro hac vice*) | Alexandria, VA 22314 |
| Justina Sessions *(pro hac vice)* | Telephone: (703) 549-5354 |
| Lauren Kaplin (*pro hac vice*) | Facsimile: (703) 549-5355 |
| Jeanette Bayoumi (*pro hac vice*) | Email: Craig.reilly@ccreillylaw.com |
| Claire Leonard (*pro hac vice*) | |
| Sara Salem (*pro hac vice*) | Karen L. Dunn (*admitted pro hac vice*) |
| Scott Eisman (*pro hac vice*) | Jeannie Rhee (*admitted pro hac vice*) |
| Tyler Garrett (VSB # 94759) | William Isaacson (*admitted pro hac vice*) |
| FRESHFIELDS BRUCKHAUS DERINGER US LLP | Joseph Bial (*admitted pro hac vice*) |
| 700 13th Street NW, 10th Floor | Amy J. Mauser (admitted *pro hac vice*) |
| Washington, DC 20005 | Martha L. Goodman (admitted *pro hac vice*) |
| Telephone: (202) 777-4500 | Bryon Becker (VSB # 93384) |
| Facsimile: (202) 777-4555 | Erica Spevack (admitted *pro hac vice*) |
| Email: eric.mahr@freshfields.com | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| | 2001 K Street NW |
| Daniel S. Bitton (*pro hac vice*) | Washington, DC 20006 |
| AXINN, VELTROP & HARKRIDER LLP | Telephone: (202) 223-7300 |
| 55 2nd Street | Facsimile: (202) 223-7420 |
| San Francisco, CA 94105 | kdunn@paulweiss.com |
| Telephone: (415) 490-2000 | jrhee@paulweiss.com |
| Facsimile: (415) 490-2001 | wisaacson@paulweiss.com |
| dbitton@axinn.com | jbial@paulweiss.com |
| | amauser@paulweiss.com |
| | mgoodman@paulweiss.com |
| Bradley Justus | bpbecker@paulweiss.com |
| David Pearl (*pro hac vice*) | espevack@paulweiss.com |
| Allison Vissichelli (*pro hac vice*) | |
| AXINN, VELTROP & HARKRIDER LLP | Meredith Dearborn (*admitted pro hac vice*) |
| 1901 L Street NW | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| Washington, DC 20036 | 535 Mission Street, 24th Floor |
| Telephone: (202) 912-4700 | San Francisco, CA 94105 |
| Facsimile: (202) 912-4701 | Telephone: (646) 432-5100 |
| bjustus@axinn.com | Facsimile: (202) 330-5908 |
| dpearl@axinn.com | mdearnborn@paulweiss.com |
| avissichelli@axinn.com | |
| | *Counsel for Google LLC* |