**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, A PROTECTIVE ORDER**

This motion concerns two legally and factually deficient affirmative defenses that Google is using to distract from the merits of this action. The U.S. Department of Justice (the "Department") conducted a thorough, multi-year investigation of Google's conduct in the digital advertising technology ("ad tech") industry. Ultimately, the Department, along with the Attorneys General of 17 sovereign states, filed an enforcement action against Google alleging pervasive and ongoing violations of the federal antitrust laws. The Amended Complaint details how Google's long-running monopolization scheme has resulted in higher prices, decreased innovation, and harm to competition and the competitive process, all to the detriment of advertisers, publishers, and market participants.

Google seeks to divert attention away from its alleged illegal conduct by asserting in its Answer two affirmative defenses that are both legally and factually deficient on their faces. Answer, ECF No. 208, at 54 (tenth affirmative defense asserting, without elaboration, "improper selective enforcement of antitrust laws"); *id.* at 55 (thirteenth affirmative defense asserting, without elaboration, violations of Constitution's Due Process Clause and "federal ethics laws and regulations"). Google purports to use these affirmative defenses as a basis to issue unusual,

invasive, and irrelevant discovery requests on the United States and numerous third parties. These requests include records related to advocacy and prior attorney-client relationships involving, and public comments made by, the Assistant Attorney General of the Antitrust Division, Jonathan Kanter ("AAG Kanter"). For the reasons outlined below, Plaintiffs seek partial judgment on the pleadings, or to strike, these affirmative defenses, or, in the alternative, a protective order restricting Google from engaging in its improper discovery campaign related to these purported defenses.[1]

*First,* Google's purported selective enforcement defense is insufficient as a matter of law in a civil antitrust enforcement action such as this one. Google suggests that it has been unlawfully singled out for enforcement while similarly situated corporations have been spared under similar circumstances. That assertion is untenable. Google has not identified any similarly situated company, much less one engaging in similar behavior, against whom Plaintiffs have declined to enforce the nation's antitrust laws. And any suggestion that the instant lawsuit was motivated by bias rather than the facts of Google's own conduct is belied by the fact that the United States' investigation of Google's conduct has spanned the tenure of two Assistant Attorneys General, appointed in 2017 and 2021 respectively, as well as two Acting Assistant Attorney Generals. Such an allegation also ignores the leadership and assistance of dozens of career prosecutors employed by the Antitrust Division. Moreover, as the Court knows, the Department of Justice is not the only plaintiff moved to act in the face of Google's conduct.

---

[1] Plaintiff States join this motion insofar as it seeks judgment on the pleadings or to strike Google's affirmative defenses, as Google's tenth and thirteenth affirmative defenses are asserted generally to "Plaintiffs," without identifying whether they are applicable to all Plaintiffs' claims or just those claims asserted by the United States.  Plaintiff States do not join in this motion insofar as it seeks a protective order, since no discovery related to these affirmative defenses has been sought from Plaintiff States.

Indeed, Google's anticompetitive conduct has generated a wave of enforcement actions across the country, with at least 42 state attorneys general suing Google for antitrust violations,[2] and two international competition authorities investigating Google's conduct, as well.[3] For all these reasons, it is not credible to suggest that Google has been unfairly singled out for prosecution, much less that such a thin allegation could justify the scope and breadth of the far-flung discovery campaign Google is waging.[4]

*Second,* Google's professed due process defense, which arises from purported violations of government ethics regulations, is no defense to antitrust liability at all. Even if Google could establish the facts to support its claim (which it cannot), the appropriate remedy for such a violation would be disqualification of any conflicted individuals, not judgment in favor of the defendant. For this reason too, the Court should grant Plaintiffs' motion for partial judgment on the pleadings.

*Third*, even if these two defenses were legally plausible, Google has not pled sufficient facts to support them. Under any interpretation of a fair notice standard, Google has failed to adequately plead that it has been selectively prosecuted for its conduct or that any ethics rules

---

[2] *E.g.*, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-3010-PKC (S.D.N.Y.) (16 state attorneys general and the Commonwealth of Puerto Rico suing Google for monopolization in ad tech markets); *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.) (United States and 38 state attorneys general suing Google for monopolization of internet search and related advertising markets in consolidated cases)); *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.) (36 states and the District of Columbia litigating Google's alleged monopoly maintenance in the sale of Android apps).
[3] *Investigation into suspected anti-competitive conduct by Google in ad tech*, Competition and Markets Authority, (May 26, 2022) https://www.gov.uk/cma-cases/investigation-into-suspected-anti-competitive-conduct-by-google-in-ad-tech; *Antitrust: Commission sends Statement of Objections to Google over abusive practices in online advertising technology* (June 14, 2023) https://ec.europa.eu/commission/presscorner/detail/en/ip_23_3207
[4] *See United States v. Rodella*, 59 F. Supp. 3d 1331, 1367 (D.N.M. 2014) (discussing disqualification as the remedy for a prosecutorial conflict of interest).

have been breached in connection with this case. While an opportunity to amend might be appropriate under some circumstances, here amendment would be futile for all the reasons explained below.

*Finally*, allowing Google to continue to pursue unfounded affirmative defenses in this fashion comes at a steep cost. Doing so will divert public resources away from litigation on the merits, and toward a discovery campaign that will likely require continuing intervention of the Court to resolve the myriad privilege and other discovery disputes that are implicated by these requests. Thus, if the Court is not inclined to grant judgment on the pleadings, the United States respectfully requests that the Court issue a protective order foreclosing discovery on these supposed defenses. *See* Fed. R. Civ. P. 26(c)(1). Factual discovery into such defenses intrudes on the public enforcers' ability to enforce the laws and also facilitates defendants' *carte blanche* ability to investigate their investigators. That is why the law requires a heightened standard for obtaining such discovery. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996); *United States v. AT&T, Inc.*, 290 F. Supp. 3d 1, 3-4 (D.D.C. Feb. 20, 2018). Google cannot meet this heightened burden. For this additional reason as well, the Court should enter an order precluding Google from further pursuing this discovery.

Plaintiffs have met and conferred with Google's counsel about this Motion. Google opposes the relief sought herein.

## I.   FACTUAL BACKGROUND[5]

On November 16, 2021, the United States Senate confirmed Jonathan Kanter to be the Assistant Attorney General of the Justice Department's Antitrust Division.[6] Three days later, Google sent a letter, and released public statements, calling on the Department to recuse AAG Kanter from matters involving Google.[7] At that time, the Department was already litigating another monopolization case against Google, which is pending in the District of Columbia, and focuses on Google's unlawful monopoly in internet search and related markets.[8] As was known to Google, the Antitrust Division was also actively pursuing an investigation, initiated by the Antitrust Division's prior leadership, into Google's ad tech business.

Pursuant to 5 C.F.R. § 2635.502(b)(1)(iv), AAG Kanter initially recused himself from both the search and ad tech matters because he had, while in private practice, represented third parties in connection with the investigations of Google's search and ad tech businesses. Supervision of the matter was delegated to the Antitrust Division's Principal Deputy Assistant Attorney General ("PDAAG") who is authorized to make enforcement decisions when AAG Kanter is recused. During that time, career prosecutors advised Google of the Antitrust

---

[5] Plaintiffs are not asking the Court to rely on any matters outside the Amended Complaint and Answer with respect to their motion for partial judgment on the pleadings, except for judicially noticeable facts that can be considered without converting this motion to a motion for summary judgment. *See Jones v. Penn Nat'l Ins. Co.*, 835 F. Supp. 2d 89, 95 (W.D.N.C. 2011). Rather, this background information is provided primarily for transparency, as well as in support of the United States' motion for a protective order.

[6] *Senate Confirms Jonathan Kanter as Assistant Attorney General at DOJ Antitrust Division*, U.S. Senate Committee on the Judiciary (Nov. 16, 2021), https://www.judiciary.senate.gov/press/dem/releases/senate-confirms-jonathan-kanter-as-assistant-attorney-general-at-doj-antitrust-division.

[7] *Google questions if the new justice Department antitrust boss can be impartial*, New York Times (Nov. 19, 2021), https://www.nytimes.com/2021/11/19/technology/jonathan-kanter-google.html.

[8] Complaint, *United States et al. v. Google*, 1:20-cv-03010-APM (D.D.C. Oct. 20, 2020), ECF No.1.

Division's significant competition concerns. On October 3, 2022, Google met with the PDAAG

and other senior officials in the Antitrust Division, as well as career staff regarding their

competition concerns. On November 7, 2022, AAG Kanter was authorized, pursuant to the same

regulation, to participate in the ad tech matter, after the one-year "cooling off" period had

elapsed from the time AAG Kanter had represented private third-party clients in Google-related

matters. Google was advised of the change in decisionmaker and offered an opportunity to meet

with AAG Kanter, which it accepted.

On January 24, 2023, the United States and eight state co-plaintiffs brought this action

against Google for violations of the antitrust laws. ECF No. 1. AAG Kanter and several senior

officials of the Antitrust Division, including the PDAAG, signed the Complaint.

On April 17, 2023, the United States amended the Complaint to add nine additional state

co-plaintiffs. ECF No. 120. The Amended Complaint was authorized and signed by, among

others, the PDAAG. AAG Kanter did not authorize or sign the Amended Complaint because the

day the Amended Complaint was filed, attorneys from Paul, Weiss, Rifkind, Wharton &

Garrison LLP ("Paul, Weiss"), AAG Kanter's former law firm, appeared for the first time in

correspondence on Google's behalf.[9] Paul, Weiss' appearance on behalf of the defendant caused

AAG Kanter to recuse himself once again in order to abide by Executive Order 13989, which

imposes heightened ethics obligations on political appointees in the Executive Branch (the

"Ethics Pledge").[10] In particular, the Ethics Pledge requires AAG Kanter to refrain from

---

[9] On April 17, 2023, a Paul, Weiss attorney was cc'd on an email related to the matter from Google's counsel. Out of an abundance of caution, the United States treated that email as if it were a formal notice of appearance on Google's behalf. Paul, Weiss did not actually file a formal notice of appearance on Google's behalf until May 6, 2023. ECF Nos. 177-86.

[10] *See* Exec. Order No. 13989, 86 Fed. Reg. 7029 (Jan. 20, 2021) (requiring pledge from executive branch officials to refrain from participating in matters "directly and substantially related to" a "former employer" for **two years** from the date the executive takes office).

participating, for two years from the date of his appointment, in any matter in which his former employer (Paul, Weiss) appeared on behalf of a party (Google), unless a waiver is obtained. For that reason, AAG Kanter has not participated in this case since becoming aware that Google retained his former law firm in this matter.[11]

On May 12, 2023, having failed in their attempts to have the matter transferred or dismissed, Google filed an Answer. ECF No. 208. In it, Google asserted the following as its tenth affirmative defense:

> Plaintiffs' claims are barred, in whole or in part, as an improper selective enforcement of antitrust laws.

Answer at 54. Google asserted a thirteenth affirmative defense stating:

> Plaintiffs' claims are barred, in whole or in part, because the initiation and maintenance by the Department of Justice of this investigation and litigation against Google violates the Due Process Clause of U.S. Const. amend. V and federal ethics laws and regulations, *see, e.g.*, 5 C.F.R. § 2635.101(b)(8).

*Id.* at 55.

Google's tenth and thirteenth affirmative defenses fail to identify any Department or state officials by name. Indeed, they do not allege *any* factual basis for the assertions that Google has been the target of "improper selective enforcement" or that a violation of the federal ethics laws (or the due process clause) has occurred.

Yet, with little more than the thin hook of these defenses, Google has propounded expansive, burdensome, and inappropriate discovery requests on the United States, AAG Kanter, and third parties regarding Mr. Kanter's legal work as a private citizen and his participation in

---

[11] AAG Kanter will continue to be recused from this matter under the Ethics Pledge until November 2023, absent a waiver authorizing his participation before that time.

this matter as AAG. In particular, Google has sought this information through a variety of methods served at a variety of times, including:

- a request for production of documents concerning AAG Kanter's "(a) prior representation of providers of Ad Tech Products and/or organizations connected to Display Advertising; or (b) actual or perceived adversity to Google";[12]

- a wide-ranging Rule 30(b)(6) deposition of the United States seeking testimony on a variety of topics including, in substance, communications with Congress, internal Department of Justice communications, and matters related to ethics and recusal guidance, waivers, and authorizations concerning AAG Kanter's participation in "matters involving Google's Display Advertising business";[13]

- a supposed "non-party" document subpoena and deposition notice to AAG Kanter himself,[14] as well as the Antitrust Division's Chief Economist, who Google has been advised has never participated in this matter since joining the Antitrust Division;

- at least eight separate document subpoenas to AAG Kanter's former clients, asking for their communications with AAG Kanter, both before and after he was confirmed; and

- a Rule 30(b)(6) deposition subpoena on a major media organization that is a third-party to this litigation seeking testimony concerning "Work performed by Jonathan Kanter on Your behalf."

In contrast to Google's legal theories, which are predicated on little more than conjecture, the facts on this matter are clear: (i) AAG Kanter has no financial interest in the outcome of this

---

[12] *See* Google's Request for Production ("RFP") No. 40, attached to the accompanying motion as Exhibit 1.

[13] *See* Google Rule 30(b)(6) Dep. Notice to United States at 16-17 (topics 31, 37, and 38) attached to the accompanying motion as Exhibit 2. During a meet-and-confer, Google's counsel explained that the purpose of Topic 31 (regarding communications with Congress) was in part to determine if this action was "politically motivated."

[14] *See* Deposition Notice and Document Subpoena, attached to the accompanying motion as Exhibit 3. The deposition notice also purported to seek documents, pursuant to Rule 45, related to communications about Google, including with AAG Kanter's former clients, that predated AAG Kanter's confirmation. The United States has informed Google that it is unable to accept service of that subpoena as it pertained to matters unrelated to AAG Kanter's work at the Department of Justice.

matter; (ii) AAG Kanter has never represented the defendant, Google, in this or any matter; (iii) AAG Kanter was recused, pursuant to 5 C.F.R. § 2635.502(b)(1)(iv), for more than a year from the time that he represented a handful of the scores of companies that complained to the Department about Google's conduct;[15] (iv) the Department investigation that led to this enforcement action was initiated by a different AAG serving under a prior administration; (v) the original Complaint was signed by multiple Antitrust Division officials, including longtime career prosecutors and the PDAAG for the Antitrust Division, who is authorized to make enforcement decisions when AAG Kanter is recused; (vii) AAG Kanter is currently recused from the matter and did not sign the operative Amended Complaint that was filed on April 17, 2023; and (vii) 34 state attorney generals have also sued Google for related conduct (while two international authorities continue to investigate Google's underlying conduct), underscoring that Google is before this Court and others as a result of its own conduct and actions and not because of any personal bias. These facts make it implausible that Google could ever plead sufficient facts or obtain sufficient evidence to make out a selective prosecution defense or due process defense.

Notwithstanding the infirmities with both affirmative defenses at issue here, in an effort to bring resolution to Google's discovery demands, the United States has offered to produce, as a compromise to resolve this dispute, the internal Department of Justice document that authorized AAG Kanter to participate in this matter, pursuant to 5 C.F.R. § 2635.502(b)(1)(iv), along with a multi-page memorandum that memorializes the reasons for that decision.[16] The United States

---

[15] The ad tech industry includes thousands of buyers, sellers, and other participants, from publishers to advertisers to ad tech tool providers. Indeed, Google's own Rule 26 initial disclosures contain the names of over 200 third parties with knowledge or information about the ad tech industry.

[16] Because these internal Department of Justice memoranda implicate multiple potential privileges of the Department, the United States would only be prepared to produce these documents under an order pursuant to Federal Rule of Evidence 502(d).

made this offer without waiving any rights to challenge the two affirmative defenses at issue in this Motion or its right to challenge any and all discovery requests. Google has refused this offer.

Because Google uses these affirmative defenses to justify unfounded discovery, the time has come to remove them from this case. There is no basis in law or fact to suggest that this enforcement action is the result of anything other than a considered and deliberate investigation. Accordingly, Plaintiffs seek intervention from the Court to dispose of these two affirmative defenses, or at a minimum, the United States seeks a protective order against the expansive and improper discovery Google is seeking.

## II.   MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OR TO STRIKE GOOGLE'S TENTH AND THIRTEENTH AFFIRMATIVE DEFENSES

### A.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[17] "When deciding a Rule 12(c) motion for judgment on the pleadings, the Court must apply the same standard that is applied when ruling on a motion to dismiss pursuant to Rule 12(b)(6)." *Smurfit-Stone Container Enters., Inc. v. Nat'l Interstate Ins. Co.*, 2008 WL 4153762, *4 (E.D. Va. Sept. 5, 2008). "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).[18]

---

[17] Consideration of this motion will not delay trial, as several months remain before the close of all discovery in January 2024, and a ruling in Plaintiffs' favor would reduce the scope of relevant discovery, further streamlining this litigation.

[18] Partial judgment on the pleadings is also available where, as here, individual claims or defenses can be resolved as a matter of law. *See Greensill Capital (Uk) Ltd. v. Tempus Intermediate Holdings, LLC*, 2018 WL 1937063, at *6 (E.D. Va. April 24, 2018); *Asilonu v. Asilonu*, 550 F. Supp. 3d 282, 294 (M.D.N.C. 2021).

As an alternative to granting partial judgment on the pleadings, the Court may choose to construe this motion as an out-of-time motion to strike Google's tenth and thirteenth affirmative defenses. Motions to strike must ordinarily be made by a party "within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). The Court, however, may strike material from a pleading "on its own" without regard to timeframe. 5C Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1380 (3d ed. 2004).[19]

"[W]hen affirmative defenses are stricken, the defendant should normally be granted leave to amend." *Bradshaw v. Hilco Receivables, LLC*, 725 F. Supp. 2d 532, 535 (D. Md. 2010) (citing *Banks v. Realty Mgmt. Serv.*, 2010 WL 420037, *1, (E.D. Va. Jan. 29, 2010) and Wright & Miller, *supra* § 1381). But where, as here, the defenses fail as a matter of law, leave to amend should not be granted. *See Villa v. Ally Fin., Inc.*, 2014 WL 800450, at *4 (M.D.N.C. Feb. 28, 2014) (declining to grant leave to amend laches defense as it would not constitute valid defense in the case).

**B.**   **ARGUMENT**

    **1.**   **A Selective Enforcement Defense Is Improper in This Complex Civil Antitrust Enforcement Action.**

Google is a multinational corporation facing several antitrust enforcement actions from the federal government and over 40 state attorneys general. It is not a criminal defendant or part of a protected class. *See United States v. Venable*, 769 F. Supp. 2d 976, 990 (E.D. Va. 2011).

---

[19] "This judicial discretion is appropriate since in many instances a motion to strike redundant, impertinent, immaterial, or scandalous matter is designed to eliminate allegations from the pleadings that might cause prejudice at some later point in the litigation." Wright & Miller, *supra* § 1380. "In light of this, the time limitations set out in Rule 12(f) should not be applied strictly when the motion to strike seems to have merit." *Id.*; *see also Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 86 (S.D.N.Y. 1974).

Moreover, the facts of this case are complex and unique. *Cf. AT&T*, 290 F. Supp. 3d at 4. These factors generally foreclose a plausible selective enforcement defense.

A "presumption of regularity supports [the Justice Department's] prosecutorial decisions." *Armstrong*, 517 U.S. at 464. A litigant seeking relief based on a claim of selective enforcement must show that the enforcement activity "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Cent. Radio Co.  v. City of Norfolk, Va.*, 811 F.3d 625, 634-35 (4th Cir. 2016). The litigant "must show not only that similarly situated individuals were treated differently, but that there was 'clear and intentional discrimination.'" *Id.* (quoting *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 825 (4th Cir.1995)).

Selective enforcement[20] is a defense "normally applied in criminal cases," not civil enforcement actions like this one. *See United States v. Snepp*, 595 F.2d 926, 933 (4th Cir. 1979), *rev'd on other grounds*, *Snepp v. United States*, 444 U.S. 507 (1980); *accord SEC v. Christian Stanley, Inc.*, 2012 WL 13012479, at *3 (C.D. Cal. June 4, 2012). On the limited occasions that private plaintiffs raise selective enforcement as an issue in civil cases, the claims typically involve some sort of challenge to governmental ordinances or governmental approval processes, not an affirmative defense to liability in a civil antitrust or other enforcement action. *See, e.g.*, *Bruce & Tanya Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Va.*, 355 F. Supp. 3d 386, 413-15 (E.D. Va. 2018) (Brinkema, J.), *aff'd* 854 F. App'x 521 (4th Cir. May 10, 2021) (affirming dismissal of selective enforcement claim in challenge to statutory scheme governing highway signs).

---

[20] While the terms "selective enforcement" and "selective prosecution" are sometimes used interchangeably, one defense relates to the arrest or investigative phase, while the other relates to the actual filing of a case in court. *See United States v. Washington*, 869 F. 3d 193, 214 (3d Cir. 2017). In the Fourth Circuit, the standard of proof is the same for both defenses. *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016).

Here, selective enforcement is not raised as a *claim*, but is instead pled as a blanket *defense* to all liability arising from the conduct alleged in the Amended Complaint. This distinction is important because, as a gating matter, there is uncertainty about the availability of selective enforcement as a defense in a civil enforcement case brought by the government. *E.g.*, *Snepp*, 595 F.2d at 933 ("Defendant has cited, and we have found, no authority suggesting that the defense of selective enforcement . . . should be extended to civil actions."); *Att'y Gen. of the United States v. Irish People, Inc.*, 684 F.2d 928, 932 n.8 (D.C. Cir. 1982) ("We need not reach the question of to what extent the selective prosecution defense may be inappropriate in a civil suit context . . . ."); *Ciechon v. City of Chicago*, 686 F.2d 511, 523 n.16 (7th Cir. 1982) (declining to opine on whether selective prosecution is a defense in civil cases); *Stanley,* 2012 WL 13012479, at *3 ("Defendant has made no argument for why [selective prosecution] should apply in . . . a civil enforcement action—nor is it clear to us that it does.").[21]

Putting aside the question of whether a selective enforcement defense is available in a civil antitrust enforcement action brought by the United States and many sovereign states, Google cannot plead, let alone prove, that this civil antitrust action had both "a discriminatory effect and that it was motivated by a discriminatory purpose." *Cent. Radio Co.*, 811 F.3d at 634-35. To establish a discriminatory effect, a defendant must show that it has been "'singled out' while others similarly situated have not been prosecuted." *See United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986). "[D]efendants are similarly situated when their circumstances

---

[21] Despite the skepticism about the availability of a selective enforcement defense in civil cases, at least one Circuit Court and several district courts outside the Fourth Circuit have found that the defense is available in civil cases under some limited circumstances. *See, e.g.*, *Church of Scientology of Cal. v. C.I.R.*, 823 F.2d 1310, 1320 (9th Cir. 1987) (analyzing the actions of the IRS under selective prosecution standards but noting that the standard "is arguably too stringent for review of a mere revocation of tax-exempt status"); *City of Chicago v. DoorDash, Inc.*, 636 F. Supp. 3d 916, 921-22 (N.D. Ill. 2022).

present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

Given the complexities of antitrust law generally and the factors involved in making enforcement decisions, the district court in *United States v. AT&T Inc.*, 290 F. Supp. 3d 1, 4 (D.D.C. 2018) observed that it is "difficult to even conceptualize how a selective enforcement claim applies in the antitrust context." In that case, an antitrust enforcement action challenging the merger between AT&T/Direct TV and Time Warner, the defendants sought discovery regarding their selective enforcement defense. *Id.* The district court rejected the defendant's efforts to obtain discovery because they fell "far short of establishing that this enforcement action was selective." *Id.* at 5. The court also granted a motion to strike at a time when "trial date in this was [was] fast approaching," indicating that the Rule 12(f)(2) deadline for filing a motion to strike had likely passed. *See id.* at 3.

The *AT&T* court's reasoning is instructive. Google has failed to suggest any other similarly situated corporation, in circumstances similar to this case, that Plaintiffs have treated differently, nor is there reason to believe that the discovery Google seeks would remedy this defect such that leave to amend should be granted. Without showing that a similarly situated entity evaded enforcement, Google's selective prosecution defense fails at the first step. Granting Google leave to amend to add hypothetical comparators would also be futile because it is implausible that Google could ever point to a similarly situated defendant—one that "present[s] no distinguishable legitimate prosecutorial factors" from Google—that is not the subject of antitrust enforcement action. *See Olvis*, 97 F.3d at 744. Given the extensive conduct laid out in the Amended Complaint and the ways pled in which different aspects of Google's conduct

14

interacted, Google cannot cure this defect by pointing to a similarly situated potential defendant who has evaded antitrust enforcement.

Nor can Google plausibly plead that a civil enforcement action was brought against it with a discriminatory purpose. Discriminatory purpose requires proof that the decision to prosecute was "invidious or in bad faith." *Venable*, 666 F.3d at 903. No such showing has been, or could be, made here. At best, Google suggests that AAG Kanter's prior representation of clients who might have interests adverse to Google is indicative of bias. But "[a]s Chief Justice Roberts explained during his confirmation hearing, the settled understanding 'that you don't identify the lawyer with the particular views of the client, or the views that the lawyer advances on behalf of a client, is critical to the fair administration of justice.'" *United States v. Westmoreland*, 419 F. Supp. 3d 1277, 1279 (D. Utah 2019).

The court in *SEC v. W. Int'l Sec., Inc.*, 2023 WL 2480732, at *8 (C.D. Cal. March 13, 2023), faced an allegation that the SEC had engaged in selective enforcement when it brought its first-ever enforcement action under a newly promulgated rule. *Id.* at *2-4, 8. Pointing to 145 similarly situated broker dealers, the defendant complained that it was being singled out arbitrarily. *Id.* at 9. While this particular district court agreed that a civil defendant was permitted to raise the selective enforcement defense, it also granted the SEC's motion to strike the defense without leave to amend. *Id.* The court noted that, like Google here, the defendant was not "a member of a protected class" or alleging "retaliation for exercising its constitutional rights." The court explained that the defendant's only path to success on this defense was to show that there was "no rational basis for the SEC's decision to single it out." *Id.* "Thus, a claim that a government agency abused its discretion in selectively enforcing a regulation against a class of

one is generally available only 'in truly horrendous situations.'" *Id.* (quoting *Baker v. Coxe*, 230 F.3d 470, 474-75 (1st Cir. 2000)).[22]

It strains belief that Google could demonstrate, based on these factors, that it has been "irrationally or arbitrarily treated differently from similarly situated parties." *See Bruce & Tanya Assocs.*, 355 F. Supp. 3d at 415 (quoting *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 440 (4th Cir. 2002)). Even construing the allegations in the light most favorable to Google, Google has not pled, and could not show, that it is part of an identifiable group against whom the nation's antitrust laws are being selectively enforced in some instances but not others. Google also has not pled, nor could it, that there is no rational basis to pursue such an enforcement action. That failure is evident from the fact that multiple complaints against Google have survived numerous motions to dismiss from multiple disinterested Article III judges. There is no basis in law or fact for Google to claim it is before the Court for any reason other than its own conduct. That is why judgment on the pleadings should be entered rejecting Google's tenth affirmative defense.

### 2. Google's Purported Affirmative Defense Based on Alleged Ethics Violations Does Not Resolve the Fundamental Matters at Issue in This Case.

Google's thirteenth affirmative defense cites the Due Process Clause and a regulation referring to Executive Branch employees' responsibility to "act impartially and not give preferential treatment to any private organization or individual." 5 C.F.R. § 2635.101(b)(8). Even

---

[22] The *Baker* court did not explain what would constitute a "truly horrendous situation[s]," but it explained that the "arbitrary denial of a permit in violation of state law—even in bad faith" would not qualify. *Baker v. Coxe*, 230 F.3d 470, 474 (1st Cir. 2000); *see also United States v. Am. Electric Power Serv. Corp.*, 258 F. Supp. 2d 804, 807 (S.D. Ohio 2003) (rejecting selective enforcement defense based on assertion that the EPA was singling out coal-fired power plants for Clean Air Act enforcement).

if Google could adequately allege actionable prosecutorial bias, Google does not explain how such a defense completely or even partially vitiates liability in this case.

The Court should grant Plaintiffs' request for judgment on the pleadings and/or strike Google's thirteenth defense, without leave to amend, for two reasons. *First*, this purported "defense" is not really a defense at all because it is irrelevant to any issues to be decided by the jury (or the Court) in this case. *See* Fed. R. Civ. P. 12(f). Even if all doubts were resolved in Google's favor and the Court found that Google met its factual burden, that finding would, at most, result in the remedy of disqualification for any conflicted party. *See, e.g.*, *United States v. Rodella*, 59 F. Supp. 3d 1331, 1348 (D.N.M. 2014) (collecting cases evaluating whether disqualification was warranted based on perceived conflict of interest of government counsel); *Facebook*, 581 F. Supp. 3d at 64.[23]

*Second*, appointees to high-level law enforcement positions, including AAG Kanter, are entitled to have viewpoints and prior experiences with an industry and doing so is not disqualifying. *See id.* This conclusion is consistent with the general principle that due process is concerned with "direct, personal, substantial pecuniary interest[s]." *See Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927); *see also Dugan v. State of Ohio*, 277 U.S. 61, 65 (1928). Prosecutors' salaries are "fixed by law," so "[n]o government official stands to profit economically from

---

[23] Moreover, permitting Google to seek discovery regarding AAG Kanter is not likely to lead to the discovery of admissible evidence. It is the province of the Court, not the jury, to determine whether AAG Kanter's participation somehow violates Google's due process rights such that the Court would consider the extraordinary remedy of preventing AAG Kanter's further participation in this matter. Google would have no basis to present any such evidence to the jury because the United States' motivations for bringing this action are irrelevant as long as the claims are well pled and evidence is adduced to support them. *See Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 414 (M.D.N.C. 1992) ("It is well-established that in ordinary litigation, not involving the clean hands defense, the plaintiff's motive in bringing suit is not relevant to the subject matter of the litigation and is not a matter for discovery.")

vigorous enforcement" of the antitrust laws. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250 (1980).[24] Here, Google has articulated no theory of financial interest that AAG Kanter would have in bringing this case, and that is for good reason: he has none. Hence, while Google is entitled to a prosecutor who enforces the law fairly, which they have here, Google is not entitled to a prosecutor devoid of any experience or perspective about Google. "If honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged, to be deeply interested in urging that view by any fair means." *Wright v. United States*, 732 F.2d 1048, 1056 (2d Cir. 1984); *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987); *Marshall,* 446 U.S. at 248.

The court's decision in *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 62-64 (D.D.C. 2022) is instructive. When Facebook sought to recuse the FTC Chair from participating in an enforcement action against it, the court acknowledged that the FTC Chair "has worked extensively on matters relating to antitrust and technology, including expressing views about Facebook's market dominance." 581 F. Supp. 3d at 65. It recognized, though, that there was nothing wrong with the FTC Chair having opinions about Facebook pre-dating her time at the FTC, and that she "was presumably chosen to lead the FTC in no small part because of published views." *Id.* The FTC Chair's prior statements did not suggest the type of "personal animosity or financial conflict of interest that has disqualified prosecutors in the past." *Id.* The same applies here.

---

[24] Tenuous or speculative theories of pecuniary interest do not amount to a violation of due process. *See id.* at 251-52 (rejecting notion that desire for potential future agency funding increase from increased collection of civil penalties was sufficient to show due process violation).

**3.**    **Even If Not Defective as a Matter of Law, Google's Answer Does Not Provide Fair Notice of the Basis for These Two Defenses.**

Even if the Court does not strike these defenses without leave to amend, the Court should require Google to adhere to minimally acceptable pleading standards and allege sufficient facts to make these defenses plausible. "The majority of district courts have extended the *Tombly-Iqbal* standard to a defendant's pleading of affirmative defenses." *Francisco v. Verizon S., Inc.*, 2010 WL 2990159, at *6 (E.D. Va. July 29, 2010). The judicial officer presiding over this matter adopted the majority view in *Rolls-Royce plc v. United Tech. Corp.*, No. 1:10-cv-457-LMB, ECF No. 157 (E.D. Va. Dec. 17, 2010) (Brinkema, J.). Under this standard, a defendant must allege sufficient facts in support of an affirmative defense to "permit the court to infer more than the mere possibility of misconduct," *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 931 (E.D. Va. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), and to "raise a right of relief above the speculative level," *id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Even outside of the *Iqbal*/*Twombly* framework, an affirmative defense must be pled to provide the plaintiff with "fair notice of the defense." *Inf. Planning and Mgmt. Serv. Inc. v. Dollar Gen. Corp.*, 2016 WL 69902, at *4 (E.D. Va. Jan 5, 2016). An affirmative defense that "merely lists code sections and fails to provide any facts" does not provide fair notice. *See id.* (granting motion to strike affirmative defense of invalidity in patent case).

Google's tenth and thirteenth defenses do not even meet this more forgiving notice pleading standard. On its selective enforcement defense, Google says nothing about how or why it has been singled out and fails to identify any similarly situated defendant not facing enforcement. *See, e.g.*, *Olvis*, 97 F.3d at 744. These errors are fatal. *See FTC v. Meta Platforms Inc.*, 2022 WL 16637996, at *7 (N.D. Cal. Nov. 2, 2022) (striking selective enforcement defense from the answer).While the court in *Meta Platforms* opted to grant Meta leave to amend, it also

"echoe[d] the observation made by" the court in *AT&T*, 290 F. Supp. 3d at 4, that it was "difficult to even conceptualize how a selective enforcement claim applies in the antitrust context." *Id.* at *8 & n.5 (quoting *AT&T*, 290 F. Supp. 3d at 4). Tellingly, Meta did not amend its answer to re-plead its selective enforcement defense.

For its alleged due process/federal ethics laws (thirteenth) defense, Google cites a single federal ethics regulation, and otherwise provides no explanation for how or why the "initiation and maintenance" of this action violates the Constitution or any law or regulation. *See Cvent*, 739 F. Supp. At 931. And based on the documents that the United States has offered to produce to resolve this dispute, it is clear that AAG Kanter has, in fact, complied with applicable ethics regulations. In this context, Google's failure to provide any factual basis whatsoever for its thirteenth defense speaks volumes. Plaintiffs should not have to cobble together the substance of Google's defenses based on material outside the pleadings, even if they could do so. S*ee* Fed. R. Civ. P. 11(b). Google should be forced to submit signed pleadings attesting to the facts they claim would support such an accusation. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013); *First Fin. Savings Bank, Inc. v. Am. Bankers Ins. Co. of Fla., Inc.*, 783 F. Supp. 963, 966 (E.D.N.C. 1991).

### 4.    Plaintiffs Are Prejudiced by These Legally Speculative and Factually Unsupported Affirmative Defenses.

"[A] defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2016). On this basis alone, the Court should grant judgment on the pleadings as to the tenth and thirteenth defenses or strike them.

To the extent that some courts have suggested that a moving party also should show prejudice before prevailing on a motion to strike an insufficient defense, Plaintiffs meet that

burden here. *See e.g.*, *Khadka v. Rajamani*, 2009 WL 910849, at *1 (E.D. Va. Apr. 1, 2009). Google's discovery campaign is a transparent attempt to deflect attention away from Google's own conduct and instead turn this matter into an investigation of the investigators. Allowing these tactics to continue prejudices Plaintiffs for at least two reasons.

*First*, "irrelevant affirmative defenses prejudice plaintiffs where they 'result in increased time and expense of trial, including the possibility of extensive and burdensome discovery.'" *Staton v. N. State Acceptance, LLC*, 2013 WL 3910153, at *2 (M.D.N.C. July 29, 2013) (internal quotations omitted); *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999). As the court recognized in *Western International Securities* when striking Western's selective enforcement defense without leave to amend, "significant prejudice' results when a public law enforcement agency is "'required to conduct expensive and potentially unnecessary and irrelevant discovery' on a 'legally unsustainable affirmative defense.'" 2023 WL 2480732, at *9.

Allowing these deficient defenses to prop up overbroad and inappropriate discovery requests will divert the Court's and the parties' attention away from the merits of this case – Google's anticompetitive conduct – and instead result in protracted disputes about collateral issues that do not bear on Google's liability. Indeed, Google's strategy is already working, as Antitrust Division resources have been diverted from taking and defending merits depositions to instead engaging with Google's requests for more documents and testimony on this topic. Due to the nature of Google's requests, its continued pursuit of discovery on these topics will almost certainly generate multiple different privilege disputes relating to attorney client, work product, and deliberative process privileges pertaining to multiple different entities, including but not limited to, privileges maintained by the Department of Justice in connection with its law enforcement responsibilities. *See Meta Platforms*, 2022 WL 16637996, at *7 ("[T]he FTC

would likely be prejudiced by permitting Defendants' bias-related defenses to stand, as they would 'threaten to shift litigation attention and discovery towards the FTC's actions, rather than Defendant's actions.'") (quoting *FTC v. Am. Tax Relief, LLC,* 2011 WL 13135578, at *1 (C.D. Cal. Oct. 19, 2011)).

*Second,* a separate source of potential prejudice stems from the impact that a denial of this motion could have on future enforcement actions. In the context of criminal selective prosecution cases, the Supreme Court has recognized that "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *United States v. Armstrong,* 517 U.S. 456, 465 (1996). Allowing Google's tenth and thirteenth defenses to remain would incentivize future targets of civil enforcement actions to assert selective enforcement and conflict of interest defenses, devoid of a sufficient factual basis, to divert government resources from litigating on the merits, confuse the issues, and delay legitimate enforcement proceedings. The Court should decline Google's invitation to open the door to fishing expeditions on matters unrelated to the merits and substance of enforcement actions.

## III.   MOTION FOR A PROTECTIVE ORDER

### A.   LEGAL STANDARD

If the Court is not inclined to grant judgment on the pleadings as to the tenth and thirteenth affirmative defenses or strike them, the United States respectfully requests that the Court enter a protective order prohibiting or, at a minimum, significantly limiting discovery—both in writing and by oral testimony—related to those defenses. "The court may, for good cause, issue an order to protect a party . . . from annoyance, . . . oppression, or undue burden or

expense," by "forbidding inquiry into certain matters, or limiting the scope of disclosure or

discovery to certain matters." Fed. R. Civ. P. 26(c)(1), (c)(1)(D). "Ordinarily, good cause [to

issue a protective order] exists 'when a party shows that disclosure will result in a clearly

defined, specific and serious injury.'" *In re Terrorist Attacks on September 11, 2001*, 454 F.

Supp. 2d 220, 222 (S.D.N.Y. 2006); *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561,

565 (E.D. Va. 2010) ("The party seeking a protective order has the burden of establishing 'good

cause' by demonstrating that 'specific prejudice or harm will result if no protective order is

granted.'") (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)).

**B.      ARGUMENT**

Here, good cause exists to issue a protective order for two reasons: (1) Google has not

met the elevated threshold for discovery into law enforcement decision-making; and (2) even if it

had, the discovery sought is not proportional to the needs of this case.

**1.      Google has not made the "credible showing" needed to obtain
discovery on its tenth and thirteenth affirmative defenses.**

In *Armstrong*, the Supreme Court explained the stakes for ordering discovery into the

exercise of prosecutorial discretion:

> If discovery is ordered, the Government must assemble from its own files
> documents which might corroborate or refute the defendant's claim [of selective
> prosecution]. Discovery thus imposes many of the costs present when the
> Government must respond to a prima facie case of selective prosecution. It will
> divert prosecutors' resources and may disclose the Government's prosecutorial
> strategy. The justifications for a rigorous standard for the elements of a selective
> prosecution claim thus require a correspondingly rigorous standard for discovery
> in aid of such a claim.

517 U.S. at 468. The Fourth Circuit has not squarely addressed whether the standard for

obtaining discovery on a selective enforcement defense is the same as for selective prosecution.

*United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016). The Court need not resolve that question

here because Google's tenth affirmative defense is really a selective prosecution defense, based on the filing of an action as opposed to an arrest or other out-of-court event. *See, e.g.*, *AT&T*, 290 F. Supp. 3d at 5 (applying *Armstrong* "credible showing" standard in civil antitrust enforcement action when evaluating AT&T's request for discovery on defense labeled as "selective enforcement"). Accordingly, cases setting the standard for discovery on selective prosecution cases, *see, e.g.*, *Olvis*, 97 F.3d at 743, control the outcome here.

To counsel's knowledge, no court has squarely addressed the standard for obtaining discovery based on a claim of prosecutorial bias, but the Fourth Circuit's analysis in *United States v. Sanders*, 211 F.3d 711, 717 (4th Cir. 2000), explains why the standard should be the same as that required for selective prosecution. *See also United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) ("[E]ven before a court allows a defendant to have discovery on the government's prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct."). The *Sanders* court's reasoning applies to a defense of prosecutorial bias as well, because investigating that defense necessarily involves probing the basis and motivation for law enforcement decisions, raising the same separation of powers concerns articulated in *Armstrong*, *Wilson*, and other selective prosecution cases, *see, e.g.*, 517 U.S. at 465. Permitting discovery to proceed based on a lower standard for an allegation of prosecutorial bias would also frustrate the rationale of *Armstrong*, as any defendant inclined to allege selective prosecution could easily repackage such an allegation into one of prosecutorial bias.

Thus, a defendant seeking discovery on selective enforcement or prosecution "must produce 'some evidence' making a 'credible showing' of both discriminatory effect and discriminatory intent." *Olvis*, 97 F.3d at 743 (quoting *Armstrong*, 517 U.S. at 468, 470). Indeed,

24

the Supreme Court intended that "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* (quoting *Armstrong*, 517 U.S. at 464).

### a. Google has not made a "credible showing" of discriminatory intent or discriminatory effect.

For many of the same reasons that Google's selective enforcement defense fails as a matter of law, Google has not made the "credible showing" of discriminatory intent or discriminatory effect necessary to obtain discovery. On discriminatory intent, Google ignores the bevy of antitrust enforcement actions filed against Google by state attorneys general or by the Department of Justice under prior administrations and prior assistant attorneys general. Against that backdrop, and considering that AAG Kanter did not even sign the operative Complaint in this case, it is implausible that the Department is prosecuting this enforcement action because AAG Kanter irrationally or arbitrarily singled out Google for antitrust enforcement.

Google also has not made a credible showing of discriminatory effect. As explained at length above, Google has not identified any similarly situated company, that having engaged in similar anticompetitive conduct, could have been the subject of antitrust enforcement action but was not. That is unsurprising, given the breadth of Google's businesses and the widespread criticisms of Google's anticompetitive practices in the ad tech industry and elsewhere. Google has not, and cannot, identify a putative defendant that presents "no distinguishable legitimate prosecutorial factors" from Google that is not the subject of antitrust enforcement action. *See Olvis*, 97 F.3d at 744.

### b. Google has not made a "credible showing" of prosecutorial bias.

To show actionable prosecutorial bias, Google would have to show an "'axe to grind' based on personal animosity or financial conflict of interest that has disqualified prosecutors in

the past." *Facebook*, 581 F. Supp. 3d at 64 (quoting *Wright*, 732 F.2d at 1055). Here, Google

questions the fact that in his prior private practice, AAG Kanter represented clients who may

have had interests adverse to Google, or that AAG Kanter may have encouraged governmental

antitrust enforcement action against Google while also making public statements about Google's

dominance in the ad tech industry. As stated previously, these allegations do not support a

finding of actionable prosecutorial bias, but rather reflect an enforcer with experience in the

relevant industry. *See Westmoreland*, 419 F. Supp. 3d at 1279; *Facebook,* 581 F. Supp. 3d at 62-

64.

### 2. The discovery sought by Google on these defenses is not proportional to the needs of the case.

Even if the Court were persuaded that Google has made a "credible showing" sufficient

to obtain discovery on selective prosecution or prosecutorial bias, its requests violate the

proportionality standards of Rule 26. Permissible discovery must be relevant and

> proportional to the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the discovery outweighs its likely
> benefit.

Fed. R. Civ. P. 26(b)(1). "The proportionality concept seeks to 'eliminate unnecessary or

wasteful discovery' and to impose 'careful and realistic assessment of actual need.'" *Gross v.

Chapman*, 2020 WL 4336062, at *3 n.1 (N.D. Ill. July 28, 2020) (quoting Chief Justice Roberts

in the 2015 Year-End Report on the Federal Judiciary). The proportionality principle prevents

litigants from using discovery "to engage in a scattershot, burdensome, or speculative fishing

expedition." *Elgindy v. Aga Serv. Co.*, 2021 WL 5083761, at *3 (N.D. Cal. Nov. 2, 2021). As

this Court stated when rejecting a discovery request that would have required "a [costly] search

through the policy files of thousands of non-party insureds" followed by additional attorney

review, the proportionality calculus should be resolved in favor of rejecting the discovery when "the relevance of the requested information [was] hovering at the outer boundary of Rule 26." *See Brinks Co. v. Chubb European Gr. Ltd.*, 2021 WL 5083335, at \*13 (E.D. Va. Feb. 24, 2021).

The discovery Google seeks in connection with these affirmative defenses fails any meaningful proportionality test, particularly considering what the United States has already produced. As part of its investigative file production, the United States has already produced to Google over 120,000 pages of communications between the Antitrust Division and third parties related to the substance of this litigation. Despite Google's inability to meet the standard for such discovery, the United States has even offered to produce, on a no-waiver, basis internal memoranda memorializing its ethics determinations on these matters. Considering the serious weaknesses in both the legal theories and factual bases for Google's tenth and thirteenth affirmative defenses, the "burden or expense" on the United States resulting from any additional discovery related to those defenses far "outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1).

Google's tenth and thirteenth affirmative defenses are too thin to require the United States to conduct additional discovery on these issues. The likelihood of any benefit to Google from this exercise—other than the drain on resources that otherwise could be focused on the merits of this case— is conjectural and infinitesimal, while the burden on the United States is certain and substantial.

## **CONCLUSION**

The United States and the seventeen state Plaintiffs respectfully request that the Court

grant judgment on the pleadings as to Google's tenth and thirteenth affirmative defenses or strike

them without leave to amend. In the alternative, the United States asks the Court to enter a

protective order precluding, or at a minimum significantly constraining, Google from continuing

to pursue discovery into these affirmative defenses from Plaintiffs and third parties.

Dated: August 18, 2023

Respectfully submitted,

<table>
<tr>
<td>

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ Aaron Teitelbaum
AARON M. TEITELBAUM

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

Attorneys for the United States

</td>
<td>

JASON S. MIYARES
Attorney General of Virginia

/s/ Andrew N. Ferguson
ANDREW N. FERGUSON
Solicitor General
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of
Virginia and local counsel for the
States of Arizona, California,
Colorado, Connecticut, Illinois,
Michigan, Minnesota, Nebraska, New
Hampshire, New Jersey, New York,
North Carolina, Rhode Island,
Tennessee, Washington, and West
Virginia

</td>
</tr>
</table>