# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES,** *et al.*,<br><br>　　　　　　　　　　*Plaintiffs*,<br><br>　　- against -<br><br>**GOOGLE LLC,**<br><br>　　　　　　　　　　*Defendant*. | **Civil Action No. 1:23-cv-00108-LMB-JFA** |

### GOOGLE LLC's NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) TO THE UNITED STATES

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 26 and 30(b)(6), Defendant Google, LLC, will take the oral deposition of the United States ("Plaintiff") at a date and time to be agreed upon by the parties. The deposition shall occur at the offices of Freshfields Bruckhaus Deringer US LLP, located at 700 13th Street NW, Washington, DC 20005, or as otherwise agreed to by the parties.

PLEASE TAKE FURTHER NOTICE that, in accordance with Rule 30 of the Federal Rules of Civil Procedure, the deposition will be taken before an officer authorized to administer oaths, and will be recorded by stenographic means and on videotape. Defendants reserve the right to use the videotape of the deposition at trial.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff shall designate and produce for deposition one or more officers, directors, employees, agents or other persons to testify on its behalf regarding the topics and subject areas set forth in Exhibit A attached hereto. If the designated representative or representatives do not have such knowledge,

they are required under Rule 30(b)(6) to acquire such knowledge through whatever reasonable investigation may be necessary.

Dated: July 20, 2023

                                                        _/s/ Eric Mahr_____
Eric Mahr (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Scott A. Eisman (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Craig.reilly@ccreillylaw.com

*Counsel for Google LLC*

## EXHIBIT A

**I. DEFINITIONS AND INSTRUCTIONS**

1. Definitions and instructions are provided solely for the purpose of this notice.

2. The term "**Action**" shall mean the civil action captioned *United States et al.* v. *Google LLC*, Case No. 1:23-cv-00108-LMB-JFA.

3. The term "**Ad Selling Tool**" shall mean any third-party or In-House software, application, service, tool, or other interface (including Publisher Ad Servers, Ad Exchanges, Ad Networks, SSPs, Header Bidding, or Header Bidding Wrappers) through which a Publisher sold or can sell Inventory.

4. The term "**Ad Tech Provider**" shall mean a person, firm, association, or other entity selling, reselling, licensing, or otherwise providing at least one Ad Tech Product, whether or not for a fee or other compensation.

5. The term "**Ad Blocking Tool**" shall mean any browser extension or software that prevents ads from being displayed to Users through their web browser.

6. The term "**Ad Buying Tool**" shall mean any third-party or In-House software, application, service, tool, or other interface (including DSPs and Ad Networks) through which an Advertiser Purchased or can Purchase Inventory.

7. The terms "**Ad Exchange**" or "**Supply-Side Platform**" or "**SSP**" shall mean a third-party or In-House product or service through which two or more Ad Buying Tools (at least one of which is not owned or controlled by the entity operating the Ad Exchange) placed or can place Bids in real-time auctions for Inventory offered for sale by or on behalf of two or more Publishers (at least one of which is not owned or controlled by the entity operating the Ad Exchange).

8. The term "**Ad Network**" shall mean a third-party or In-House product or service (other than an Ad Exchange) through which two or more Advertisers (at least one of which is unaffiliated with the entity operating the Ad Network) Purchased or can Purchase Inventory offered for sale by two or more Publishers (at least one of which is unaffiliated with the entity operating the Ad Network).

9. The terms "**Ad Tech**" or "**Ad Tech Product**" shall mean a product, service, application, tool, solution, or other interface that facilitates or is involved in the Purchase or sale of Inventory, including but not limited to a Publisher Ad Server, Ad Exchange, Ad Network, Header Bidding, Header Bidding Wrapper, DSP, SSP, other Ad Buying Tool, or other Ad Selling Tool. For the avoidance of doubt, this term includes In-House Ad Tech Products, as well as products or services offered by social media outlets (including but not limited to, for example, Facebook.com and Twitter.com) and certain other Publishers that enable the purchase of Inventory on their Properties via their own In-House Ad Tech Products. This term does not include general-purpose software or systems on which an Ad Tech Product relies.

10. The term "**Advertiser**" shall mean a person or entity that, directly or through one or more intermediaries, places one or more Display Advertisements intended to advertise or promote a good or service offered by that person or entity, or otherwise convey such person or entity's desired message, on a Publisher's Property so that it is viewed by at least one User visiting such Property. For the avoidance of doubt, Advertisers typically, but need not, pay for the placement of such Display Advertisements.

11. The term "**Advertising Agency**" shall mean an advertising agency or similar consulting firm that is hired by an Advertiser to manage the Purchase of Inventory for one or more

Campaigns. For the avoidance of doubt, although an Agency may use DSPs or other tools to manage such Campaigns, an entity operating a DSP shall not, solely on that basis, be deemed an Agency.

12. "**All**," "**Any**" and "**Each**," shall mean any and all, and should be construed to include the collective as well as the singular.

13. "**And**" and "**Or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Subject Areas set forth below all responses that might otherwise be construed to be outside the scope of the Subject Areas.

14. The term "**Attributed Clicks**" shall mean the number of Clicks determined or estimated by an Advertiser, DSP, Ad Network, Ad Exchange, or other person or entity, in the ordinary course of its business, to have resulted from the display of one or more given Impressions to Users.

15. The term "**Bid**" shall mean an offer, made in response to a Query, to pay a specified amount in exchange for the right to render a Display Advertisement in a unit of Inventory.

16. The terms "**Bidder**" or "**Buyer**" shall mean an Advertiser submitting a Bid directly to an Ad Exchange or Publisher Ad Server (without an intermediary), or shall mean a DSP, Ad Network, or other person or entity submitting a Bid to an Ad Exchange or Publisher Ad Server on behalf of an Advertiser, whether known at the time or to be subsequently determined. For the avoidance of doubt, an Ad Exchange shall not be deemed a Buyer even if it forwards a Bid it received on to another Ad Exchange or Publisher Ad Server.

17. The term "**Campaign**" shall mean a set of advertisements that focus on a single message.

18. The term "**Communications**" means any and all written, oral, telephonic, or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any

"Person(s)", including, but not limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, emails, faxes, notations, telegrams, advertisements, interviews, and all other "Documents" as herein defined.

19. The term "**Complaint**" shall mean the Amended Complaint filed on April 17, 2023 in this Action (Dkt. No. 120).

20. The term "**Concerning**" is to be given the broadest possible interpretation, such that it includes "relating or related to," "describing," "containing," "identifying," or "pertaining to" the subject matter in the deposition subject.

21. The term **"Connected Television"** shall mean devices or services that allow Users to watch television content served over the internet on a television screen, such as smart TVs (e.g., Samsung, TCL, Sony), media streaming devices (e.g., Roku Streaming Stick, Apple TV, Chromecast), or video game consoles (e.g., Xbox, PlayStation).

22. The terms "**Demand-Side Platform**" or "**DSP**" shall mean an Ad Buying Tool, that enables an Advertiser to automatically buy Inventory sold via Ad Selling Tools in real-time on an Impression-by-Impression basis. For the avoidance of doubt, an Agency trading desk shall be deemed a DSP for purposes of this definition.

23. The terms "**Display Advertisement**" or "**Display Advertising**" shall mean Online Advertising other than Search Advertising, and shall include Native, banner, in-app or Video advertising, whether social or non-social.

24. The term "**Direct Transaction**" shall mean a sale or placement of Display Advertising the price of which was determined through a contractual agreement between an Advertiser (or an Advertising Agency acting on an Advertiser's behalf) and a Publisher (without an

intervening Ad Tech intermediary), including for the avoidance of doubt an agreement to set such price through an auction conducted by the Publisher itself or an affiliate thereof.

25. The term **"Document"** shall be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Federal Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

26. The term "**Feature**" shall mean any design, feature, limitation, policy, mechanism, innovation, improvement, optimization, or strategy related to how Ad Tech Products buy, sell, price, bid, or auction Inventory, how Ad Tech Products improve ad quality or Match Quality, how Ad Tech Products measure, or report on the effectiveness of Display Advertising, or how Ad Tech Products integrate or interoperate with other Ad Tech Products, whether owned or operated by the same entity or different entities.

27. The term "**Federal Agency Advertiser**" shall mean the United States Army, the United States Navy, the United States Air Force, the Census Bureau, the Department of Veterans Affairs, the Centers for Medicare and Medicaid Services, the National Highway Traffic Safety Administration, or the United States Postal Service.

28. The term "**Google**" shall mean Google LLC, any current or former parents, subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents or representatives, and any other person acting on their behalf.

29. The term "**Header Bidding**" shall mean the use by a Publisher of code that is directly or indirectly called during the web browser's processing or rendering of the HTML header of a webpage (and prior to the invocation of a Publisher Ad Server) and that causes Queries to be sent to one or more Ad Exchanges, Ad Networks, DSPs, or other sources of demand.

30. The term "**Header Bidding Wrapper**" shall mean a Header Bidding management system.

31. "**Includes**" and "**including**" shall mean "including but not limited to."

32. The term "**Indirect Transaction**" shall mean a sale or placement of Display Advertising other than a Direct Transaction, including an Open Auction Transaction or Private Auction Transaction conducted by an Ad Exchange or a purchase of Inventory by an Ad Network for resale to one or more Advertisers.

33. The term "**Inventory**" shall mean space offered by Publishers for the sale or placement of Display Advertising.

34. The term "**Investigation**" shall mean the Department of Justice Antitrust Division and Plaintiff States' Investigation of Google concerning the subject of this Action.

35. The term "**Impression**" shall mean the service of a single Display Advertisement to a single User.

36. The term "**Linear Television**" shall mean television delivered in a live broadcast, as opposed to Connected Television.

37. The term "**Match Quality**" shall mean the effectiveness of matching customer information parameters to a website event.

38. The terms "**Online Advertisement**" or "**Online Advertising**" shall mean advertising via the internet, including on websites, apps, and Connected Television. For example, both Display Advertising and Search Advertising are forms of Online Advertising.

39. The term "**Open Auction Transaction**" shall mean an Indirect Transaction for which all, or substantially all, of the Buyers eligible to bid on the relevant Ad Exchange are or were eligible to submit Bids.

40. The term **"Person"** shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

41. The term "**Plaintiff States**" shall mean the states and commonwealth of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Jersey, New Hampshire, New York, North Carolina, Rhode Island, Tennessee, Virginia, Washington, and West Virginia, who are prosecuting this Action.

42. The term "**Private Auction Transaction**" shall mean an Indirect Transaction for which only a set of Buyers expressly identified by the Publisher (or an agent or employee thereof) are or were eligible to submit Bids.

43. The term "**Programmatic Transaction**" shall mean a Display Advertising transaction, other than a Publisher-Automated Transaction, that is or was negotiated, transacted, or finalized through Ad Tech Products.

44. The term **"Property"** shall mean a website, mobile application, or other product or service containing space that is sold or offered for sale for the placement of Display Advertising.

45. The term **"Publisher"** shall mean a person or entity operating a Property. For the avoidance of doubt, the owner of the Property shall be deemed the Publisher, even if it has outsourced the sale of its associated Inventory, in whole or in part, to a third party.

46. The term "**Publisher-Automated Transaction**" shall mean a Direct Transaction that is or was negotiated, transacted, or finalized through one or more automated services, whether or not auction-based, that is controlled by the Publisher or an affiliate thereof (other than an Ad Network, Ad Exchange, or SSP). This would include, for example, the Publisher's self-service website for Advertisers to create Campaigns or place advertisements, such as that described at https://facebook.com/business/ads. For the avoidance of doubt, the mere fact that the Impression

associated with a Direct Transaction was served by, or that information with respect to such transaction was entered into, a Publisher Ad Server (including one operated by the Publisher) shall not be sufficient to render such transaction a Publisher-Automated Transaction.

47. The term "**Publisher Ad Server**" shall mean a third-party or In-House product, service, or system that is responsible for selecting (or attempting to select), on behalf of a Publisher, the Display Advertisement (or source from which such Display Advertisement shall be obtained) for a unit of Inventory. For the avoidance of doubt, a Publisher Ad Server may be owned and/or operated by a third-party Ad Tech Provider, or may be owned, developed, or operated by the Publisher or by a third party on behalf of or under contract with the Publisher. For the further avoidance of doubt, a system that creates or manages mediation chains constitutes a Publisher Ad Server for purposes of this notice.

48. The term "**Purchase**," when used in connection with Inventory or Impressions, shall mean to obtain, directly or indirectly through one or more intermediaries, the right to render or display a Display Advertisement in a unit of Inventory, typically but not necessarily in exchange for a monetary payment.

49. The term "**Query**" shall mean a request to provide, or Bid to provide, a Display Advertisement to be rendered in a unit of Inventory, whether denominated as an "ad request," "bid request," or otherwise. A Query may, but need not, request a Bid that will be considered before awarding the right to actually display a Display Advertisement to a particular Advertiser.

50. The term **"Search Advertising"** shall mean Online Advertising that is displayed in response to a User's search intent or search terms.

51. The term "**User**" shall mean an end user visiting or using a Property, or a proxy for that end user (including, but not limited to, cookie identifiers or mobile ad identifiers).

52. The terms "**You**" and "**Your**" in these Requests refer individually to the Antitrust Division of the Department of Justice, each Federal Agency Advertiser, and all employees, agents and representatives of the foregoing.

53. Each subject area is to be construed independently, and no subject area is to be viewed as limiting the scope of any other subject area.

54. Unless otherwise specified, the time period applicable for each subject area is January 1, 2013 to present.

## II. SUBJECT AREAS

### A. Purchase and Sale History

1. Where and how You spend Your advertising budget.

2. The forms of Online Advertising that You use, or that You considered but did not use. For each form of Online Advertising, this topic includes:

   a. the reasons for Your use or decision not to use that form of advertising or marketing, including the costs and benefits to You from using or not using that form of advertising or marketing, and any assessment by You of any individual or organizational usage, perceptions, or preferences towards that form of advertising;

   b. the security reasons for Your use or decision not to use that form of advertising or marketing, including cybersecurity proficiency and reputation of the providers for each form of Online Advertising with respect to anti-malware capabilities and malware, adware, and malvertising scanning and prevention technologies;

   c. How and why You shift, substitute and/or reallocate Your advertising spending across Ad Tech Products (including but not limited to Google's Ad Tech Products)

       and, to the extent You use multiple Ad Tech Products of the same type (e.g., multiple DSPs), your rationale for doing so;

    d. How and why You shift, substitute and/or reallocate Your advertising spending across various forms of advertising, including Display Advertising, Search Advertising, Linear or Connected Television advertising, email, print, radio advertising, and/or any other form of advertising;

    e. How and why You shift, substitute, and/or reallocate Your spending on Display Advertising, including in reaction to changes in the relative return on investment and/or return on advertising spend, between (a) social and non-social properties, (b) different ad environments (e.g., desktop web browser, mobile web browser, mobile app, and Connected TV), (c) different ad formats (e.g., native, instream video, outstream video, mobile app-specific (e.g., rewarded ads), and static image advertising), and (d) different transaction types (e.g., Open Auction, Private Auction, Preferred Deals, Programmatic Guaranteed, and Programmatic Direct), and (e) Indirect Transactions and Direct Transactions;

    f. The identification and Your understanding of terms of contracts, agreements, or arrangements involving You and any Advertising Agencies; Publishers; Ad Tech Providers; and

    g. The percentage of Your overall advertising budget allotted to that form of Online Advertising.

3. The identification of all individuals with responsibility for or decision-making authority concerning Online Advertising, and their roles.

4. The tracking and assessment of Your Online Advertising purchases or campaigns.

5. The process by which You consider and decide what form of Online Advertising to purchase, including Your consideration, evaluation, or comparison of Ad Tech Products or Ad Tech Providers and their Features, effectiveness, and pricing, and the role of Advertising Agencies in such decisions. This includes the process by which You determine the objectives for a Campaign, and how You consider and decide what form of Online Advertising to purchase in light of the objectives for a Campaign.

6. The Advertising Agencies and Ad Buying Tools You use to place Display Advertisements.

7. Your processes and procedures for considering and selecting (or switching among) Advertising Agencies and Ad Tech Products.

8. The specifications, technical requirements, and product characteristics that You considered in purchasing Online Advertising.

9. The means by which You purchase Online Advertising, including any intermediaries such as Advertising Agencies who purchase Online Advertising on Your behalf.

10. Your proposed, attempted, and actual purchases of Online Advertising from any entity, including Advertising Agencies or through Advertising Agencies, including the dates, quantities, types, price quotes, actual prices, and terms and conditions of these purchases.

11. Any requests for proposals or quotes made by You to any entity concerning the purchase of Online Advertising, and responses to those requests.

12. Your knowledge of the prices that any entity You engaged to purchase Online Advertising paid for that Online Advertising, including prices of conversions, actions, clicks, or impressions.

13. Your perception, knowledge, and/or monitoring of the supply, demand, market or industry conditions, pricing, and discounting of Online Advertising, including your budgets, forecasts, or strategies with respect to Your purchases of any Online Advertising.

14. Your knowledge or perception of Header Bidding's functionality, benefits, advantages, disadvantages, drawbacks, and/or popularity.

15. The impact of Header Bidding and/or Ad Blocking Tools, including but not limited to its impact on Your Online Advertising strategy and the cost effectiveness of Your Online Advertising.

16. Any complaints You made to any person, including any Ad Tech Provider or Advertising Agency, related to the price or quality of Online Advertising.

17. Your purchase and procurement of any form of advertising that You consider to be a reasonable substitute for, or reasonably interchangeable with, Online Advertising.

18. How Display Advertising affects the performance of Your Campaigns.

19. The advantages or disadvantages of integration or interoperability of different Ad Tech Products.

20. How You calculate or assess return on advertising spend, return on investment, and other Campaign objectives (such as views, Attributed Clicks, downloads, conversions, actions, etc.).

21. Your costs, profits, return on investment, or return on advertising spend associated with Your purchase of Online Advertising, including via or by Direct Transactions or Indirect Transactions, Programmatic or non-Programmatic Transactions, an Ad Exchange or Ad Network, or a Private Auction marketplace.

22. How the availability of User identifiers or proxy identifiers (e.g. Apple Identifier for Advertisers (IDFA), Android ADID, Third-Party Cookies, logged-in account, etc.) or other User tracking mechanisms affects Your Online Advertising Strategy and the revenue resulting from Your Online Advertising.

23. All receipts, invoices, purchase orders, evidencing Your purchase of Online Advertising, including the amounts paid by You and the entity to whom You paid those amounts.

### B. Organizational Structure and Operations

24. The organization and structure of each Federal Agency Advertiser, including the departments, divisions, or individuals with responsibilities that relate to advertising and marketing. This topic includes:

   a. the identity of and hierarchical or lateral relationships among those departments, divisions, or individuals; and

   b. groups and individuals within Your organization that have authority to make advertising or marketing-related decisions within those departments or divisions.

25. Your email, chat or other messaging systems policies, and Your document retention policies.

### C. Federal Agency Advertisers' Alleged Damages

26. The prices paid or shared, in each specific instance, by You for any Online Advertising that You contend was higher than You would have paid absent the alleged anticompetitive conduct alleged in the Complaint, the specifications of those purchases, the amounts by which You contend those prices or shares were higher, the specific injury that You allege You suffered because of the conduct alleged in the Complaint, and the basis for Your contention.

27. All damages You allege in the Complaint that You suffered as a result of the alleged anticompetitive conduct, the amount of revenues subject to the alleged anticompetitive conduct, the amount of damages as a result of the alleged anticompetitive conduct, how the damages were calculated, all facts that You contend support the damages that You are claiming, and any steps You have taken or considered taking to mitigate any damages, including the costs and benefits of taking each such step.

### D. Your Role in This Lawsuit

28. All documents You produced in the above-referenced litigation.

29. Your involvement and communications with any third parties concerning the Investigation and/or this Action.

30. The circumstances that led You to be involved in this lawsuit, including any efforts You undertook to investigate Your claims.

31. Your involvement and communications with any member of the United States Congress or anyone working for a member of the United States Congress concerning the Investigation and/or this Action.

32. Any facts of which You have knowledge regarding Defendant's alleged monopolization, other than those learned uniquely through interactions with counsel for the United States.

33. Your responses to Google's Interrogatories.

34. Your responses to Google's Requests for Admission.

35. All communications, including written, oral, face-to-face, telephonic, videoconference, or otherwise with any potential witness in this litigation concerning the Investigation or this Action.

36. All communications, including written, oral, face-to-face, telephonic, videoconference, or otherwise with any representative of the European Commission concerning the Investigation or this Action.

37. Communications with any individual currently employed in the Department of Justice Antitrust Division, where such communications occurred prior to the individual's employment as a member of the Antitrust Division, regarding antitrust matters concerning Google, including Google's Display Advertising business.

38. Any ethics and/or recusal guidance, advice, recommendations, waivers, authorizations, or decisions concerning Jonathan Kanter and the issue of his participation in the Department of Justice's matters involving Google's Display Advertising business.

### E. Your Allegations

39. Your market share calculations as alleged in the Complaint for the alleged publisher ad server market, ad exchange alleged market, and alleged market for advertiser ad networks for open web Display Advertising.

40. The equitable remedies You seek, including any coordination or communications between You and the European Commission regarding such remedies.

41. The identity of all persons with knowledge of the subjects identified in this Notice of Deposition.

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of Google's Notice of 30(b)(6) Deposition of Plaintiff via email to all counsel of record in the above-captioned action on July 20, 2023.

Dated: July 20, 2023

                                                           */s/ Tyler Garrett*
                                                           Tyler Garrett  (VSB # 94759)
                                                           FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                                           700 13th Street NW, 10th Floor
                                                           Washington, DC 20005
                                                           Telephone: (202) 777-4500
                                                           Facsimile: (202) 777-4555