**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO**
**GOOGLE'S MOTION FOR A PROTECTIVE ORDER**
**REGARDING PLAINTIFFS' RULE 30(B)(6) DEPOSITION NOTICE**

As previewed in the United States' Motion for Protective Order and accompanying Memorandum, ECF Nos. 321-22, Google's motion for a protective order is premature; the parties were engaged in productive negotiations regarding the mutual Rule 30(b)(6) notices at the time Google filed its motion. But given that the motion is now before the Court, the Court should deny it for two overarching reasons.

First, Google's motion for a protective order concerns the Rule 30(b)(6) notice as served, but does not reflect the state of the parties' negotiations, even as of the time Google filed its motion. In the course of negotiations thus far, Plaintiffs have indicated a willingness to substantially narrow the scope of their Rule 30(b)(6) notice, including by agreeing to accept written discovery in satisfaction of certain topics and subtopics. The notice as originally served on Google is not what was under discussion at the time that Google filed this motion.

Second, the information that Plaintiffs *are* seeking through a Rule 30(b)(6) deposition is reasonable in light of Google's refusal to produce this information through other means. In that sense, Google has it backwards when it claims that deposition testimony is inappropriate because written discovery has preceded it. *Cf.* Google Mem. Supp. Mot. Protective Order ("Google

Mem."), ECF No. 312, at 9, 12-15. Plaintiffs seek certain information through a Rule 30(b)(6) deposition precisely *because* efforts to obtain the same information from Google through written discovery have failed. *See Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 56 (S.D.W. Va. 2016) ("In regard to the Rule 30(b)(6) deposition, if Defendants had properly responded to the interrogatory requests, Plaintiff may not have required a Rule 30(b)(6) deposition to explain the relevance of the documents."). That chronology also explains why Plaintiffs are seeking this deposition testimony now rather than earlier; Plaintiffs in many instances tried other methods of discovery first, before resorting to a Rule 30(b)(6) deposition.

Consistent with the Court's order at ECF No. 326 granting Plaintiffs' motion to continue, that negotiation, and not litigation, should be able to resolve the parties' differences.[1] Accordingly, Google's motion for a protective order should be denied.

## BACKGROUND

The history of the parties' negotiations is not worth revisiting here, as it is already summarized in the United States' memorandum in support of its motion for a protective order, ECF No. 322, at 1-6. More pertinent for the resolution of this motion is a brief summary of Plaintiffs' *actual, live position*, at the time of filing, as to what deposition testimony it is seeking, and what written discovery has come before.

---

[1] Google criticizes Plaintiffs for the breadth of certain of its Rule 30(b)(6) topics, but it is Google that has included in *its* Rule 30(b)(6) notice topics such as "All documents . . . produced in the above-referenced litigation," United States. Mem. Supp. Protective Order, ECF No. 322, Ex. 1, Subject Area ¶ 28, and "The circumstances that led You to be involved in the lawsuit, including any efforts You undertook to investigate Your claims," *id.* ¶ 30. And it was Google that sought to obtain Rule 30(b)(6) testimony from eight different Federal Agency Advertisers plus the Department of Justice through a single Rule 30(b)(6) notice. *See id.*, Definitions ¶ 52. The upshot of all of this is that further negotiation and compromise, and not a race to the courthouse, is the appropriate course of action here.

| Topic No(s). | Brief Summary of Subject Matter | Related Discovery Attempts | Scope of Rule 30(b)(6) Testimony |
|---|---|---|---|
| 1-6 | Financial and accounting data; pricing policies and practices | Requests for Production ("RFPs") 25, 61, 68-72; Interrogatories 3, 11-12, 14-15, 17 | Plaintiffs have been unable to obtain certain information about Google's specific accounting practices through review of documents produced to date or through interrogatories specifically asking for this information. Google's written objections to Interrogatories 11, 12, 14, 15, and 17 suggest Google is not willing to provide any information in response to these interrogatories. Plaintiffs are willing to accept written responses to narrow the scope of 30(b)(6), but deposition testimony is appropriate to ensure Plaintiffs have an accurate and complete understanding of materials that Plaintiffs' experts expect to rely upon. |
| 7 | Product changes and experiments | RFPs 17, 44 | Plaintiffs are willing to accept a written response for multiple subparts, including declarations from Google employees attesting to the finality and authenticity of materials that Plaintiffs' experts expect to rely upon. Oral 30(b)(6) testimony is an appropriate vehicle for gaining insight into Google's business decisions as they relate to the outcome of these experiments, as described in Topic 7(d). |
| 8-11 | Data interpretation and definitions | RFPs 40, 43, 50, 59; Interrogatory 16 | Plaintiffs have not received data dictionaries or other explanatory documents that would facilitate Plaintiffs' understanding of the data produced in this litigation, but have followed up with Google's counsel via letter. Plaintiffs believe full and complete responses to questions posed by counsel in prior communications would obviate the need for specific 30(b)(6) questions, and would accept written responses |

| | | | in lieu of live testimony, provided these responses are sufficient to ensure Plaintiffs have an accurate and complete understanding of materials that Plaintiffs' experts expect to rely upon. |
|---|---|---|---|
| 12 | Policies and practices regarding header bidding | RFPs 18, 29, 45; Interrogatories 5, 6, 16 | Plaintiffs are willing to accept written responses to narrow the scope of 30(b)(6), and would be willing to consider a proposal if Google believes these issues can be addressed in full via written submission. Oral 30(b)(6) testimony is an appropriate vehicle for gaining insight into Google's analyses and use of header bidding data, as described in Topic 12. |
| 13-14 | Google's valuation of data collected through the relevant products, and processes for measuring the impact of access to certain data on Google's ad tech products | RFPs 17, 21, 22, 23, 24, 32, 33 | Plaintiffs believe company testimony is appropriate but would be willing to consider a proposal if Google believes these issues can be addressed via written submission. |
| 15-16 | Data exchange, sharing, and use between DVAA products | RFPs 20, 23, 24, 46, 47 | Plaintiffs have been unable to determine this information through review of documents produced in response to RFPs. Plaintiffs believe company testimony is therefore appropriate. |
| 17-18 | [Withdrawn] | N/A | Plaintiffs are prepared to forgo these topics as part of a negotiated resolution. |
| 19-22 | Google's relationship with Federal Agency Advertisers ("FAAs") | RFPs 4, 12–15, 22, 23, 24, 30, 60, 76; Interrogatory 2 | Plaintiffs are willing to accept a narrowing of these topics to be specific to FAAs and the advertising agencies that work directly with FAAs, per discussion with Google. |
| 23-24 | Factual issues pertaining to potential divestiture remedy | RFPs 2, 6, 16, 17, 19, 20, 21, 74 | Google objected to RFP 2 on the basis that projects undertaken by the company to assess a potential divestiture were protected by attorney work product. Google |

| | | | objected to RFP 74 and has not provided an answer to date (due on August 23, 2023). Nonetheless, Plaintiffs are willing to defer discovery on this topic until after a liability finding has been reached and there is a concrete proposal for divestiture. |
|---|---|---|---|
| 25-27 | Chat and document retention practices and policies | RFP 58; Depositions | Plaintiffs are willing to accept a written response as part of a negotiated resolution. |
| 28-30 | [Withdrawn] | N/A | Plaintiffs are prepared to forgo these topics as part of a negotiated resolution. |

As explained below, this summary table illustrates the benefits of the parties engaging in further negotiation and shows why Plaintiffs are properly continuing to pursue a narrowed subset of their Rule 30(b)(6) deposition topics, in light of the obstacles encountered in written discovery and the unique benefits of oral testimony on some subjects.

## ARGUMENT

### A.   Legal Standard

The Federal Rules of Civil Procedure provide for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This right to relevant discovery includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Tube-Mac Indus., Inc. v. Campbell*, 2021 WL 6332354, at *1 (E.D. Va. June 10, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

In connection with that broad right to discovery, parties may, under Federal Rule 30(b)(6), "name as the deponent a public or private corporation, a partnership,…or other entity and must describe with reasonable particularity the matters for examination…" Federal R. Civ.

P. 30(b)(6). In turn, "[t]he corporation must make a good-faith effort to designate people with knowledge of the matter sought by the opposing party and to adequately prepare its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition." *Humanscale Corp. v. CompX Int'l, Inc.*, 2009 WL 5091648, at *1 (E.D. Va. Dec. 24, 2009).

Discovery is not limitless, however, and "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, . . . oppression, or undue burden or expense," by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1), (c)(1)(D). "Ordinarily, good cause [to issue a protective order] exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006); *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) ("The party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'") (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)). Importantly, though, "[t]he fact that preparation for a 30(b)(6) deposition requires many hours of work and review of voluminous documents does not relieve the corporation of its responsibility to adequately prepare." *Humanscale,* 2009 WL 5091648, at *2.

### B. Plaintiffs' Rule 30(b)(6) deposition notice—tailored through negotiations—describes the topics with reasonable particularity and takes into account the discovery already undertaken.

The Rule 30(b)(6) testimony that Plaintiffs are seeking from Google is reasonable and specific, particularly when considered in the full context how fact discovery has progressed, and Plaintiffs' expressed willingness to narrow the scope of its notice during the course of

6

negotiations. Google faults Plaintiffs for issuing a 30(b)(6) on topics that Plaintiffs have asked about through other means, such as requests for production and interrogatories. But Plaintiffs seek testimony specifically to address deficient responses to Plaintiffs' requests, including to address Google's apparent refusal to respond to timely interrogatories.

Nor is it unreasonable to seek to validate or understand documents or data produced by a company by seeking a 30(b)(6) on those same topics, especially when that company is the entity most likely to be able to translate and understand those same documents and data and where the information is complex. "Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." *See Market v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) (also noting that "[n]othing in the Federal Rules of Civil Procedure gives a party the right to not respond or inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request and elect to supply the answers in a written response to an interrogatory").

To aid the Court in understanding the propriety of Plaintiffs' Rule 30(b)(6) notice, Plaintiffs address the topics in turn, grouping them where appropriate.

    **1.   Topics 1-6 regarding Google's finances and margins are stated with particularity and are reasonable and proportional.**

Topics 1-6 relate primarily to understanding Google's financial documents and accounting processes, and pricing policies. Such understanding is important for Plaintiffs' assessment and quantification of Google's monopolistic behavior and its ability to charge supracompetitive rates to users of its ad tech. *See* ECF No. 120 ¶¶ 122-25; 296. Understanding the financial documents produced by Google, and how Google internal and external accounting operates is foundational to Plaintiffs' expert reports, damages calculations, and any possible remedies. To assist Google in understanding what aspects of Google's accounting policies and

procedures are at issue, Plaintiffs' topics are divided into specific subparts.[2] It is not unreasonable, contrary to what Google appears to argue, for Plaintiffs to seek information concerning the financial metrics that Google employs to prepare its public accounts or financial statements, or otherwise relies on in the ordinary course of business.

While a certain number of Plaintiffs' sub-topics concerning finances and margins could be narrowed if Google satisfactorily answers certain financial interrogatories and requests for production, Plaintiffs cannot simply hope that additional supplements made by Google will be sufficient such that Plaintiffs can forgo examination on these topics altogether.

To take an appropriate example, Plaintiffs sent their third interrogatory to Google on the first day of fact discovery. The interrogatory requests "For each Relevant Product, state its booked revenue, net revenue, gross margin, and operating profit, on a United States-only and worldwide basis, for each year from 2008 to the present, and explain Google's methodology for allocating expenses to each Relevant Product." Google's initial response was plainly deficient. Google failed to explain its methodology for allocating expenses and limited its statement of its revenue to 2021 and 2022 only. After repeated negotiations and a specific request from Plaintiffs to supplement Interrogatory 3 in light of Plaintiffs' review of materials obtained through subsequent document requests, and after Plaintiffs sent its 30(b)(6) notice, Google eventually sent a supplemental interrogatory response that responded to Interrogatory 3 but failed to sufficiently explain its methodologies for revenue and cost accounting for years prior to 2021.

---

[2] As an example, Topic 1(i) asks for Google's "processes for calculating, evaluating, and forecasting its DVAA and product-level margins for display advertising products, including the individuals or business units involved, key metrics and goals, and financial targets for each year between 2014 through 2023." Ex. 1 at 13. Google's argument that this is not a question about accounting methodology is incorrect and beside the point.  It is reasonable for Plaintiffs to assume that Google, as a public company, has methodologies for calculating its margins that are sufficiently rigorous to delineate among key entities and business units.

Plaintiffs are prepared, in light of Google's supplemental response to Interrogatory 3, to further narrow certain portions of Topic 1.

### 2. Topics 7-12 concern discrete questions aimed at understanding highly relevant data.

Plaintiffs have already suggested that Google provide written submissions regarding Topics 7 to 9 as a way of addressing Google's burden arguments. That said, these topics are both highly relevant and narrowly targeted. They concern data and related materials produced by Google in response to several RFPs. The information sought directly pertains to disputes at the core of this case: product changes related to the anticompetitive conduct in the Complaint, the effects of these product changes on Google's customers and competitors, Google's pricing and margins, and Google's development and implementation of its Display network, as well as the experiments Google ran to determine the benefits to Google of implementation of these product changes. Plaintiffs' 30(b)(6) questions on this topic would be designed to ensure Plaintiffs have an accurate and complete understanding of materials that Plaintiffs' experts expect to rely upon, including which datasets are authentic, final, and were relied upon by Google in the ordinary course of its business.

Similarly, Topics 10-12 concern discrete questions about datasets produced by Google relating to log-level and header bidding activity. These datasets are likely to inform expert analyses of auctions for open web display advertising, which are at the center of this case. Plaintiffs seek testimony to authenticate and further understand these datasets. Over the course of discovery, Google has produced additional data that could aid in significantly narrowing the scope of the notice. Google's most recent production, which Google's counsel represented via letter addresses these topics, was produced to Plaintiffs last night.  With an opportunity to review

what has been produced, Plaintiffs are hopeful that the information provided will allow Plaintiffs to narrow the scope of Topics 10-12.

### 3. Topics 13-14 Google's valuation of data derived from and used to enhance Google's ad tech products.

As discussed with Google's counsel before Google filed its motion, Topic 13 seeks company testimony about how Google values its own data assets, and would include questions about Google's own valuation of its assets and the bases for these valuations. Topic 14 addresses whether Google's financial reporting indicates the value of Google's data. Oral testimony is an appropriate vehicle for gaining additional insight into data that has already been produced. *See Market*, 125 F.R.D. at 126. Plaintiffs would, however, be willing to consider a proposal if Google believes these issues can be fully addressed via written submission.

### 4. Topics 15-16 concern what data is shared among Google's products.

Topics 15 and 16 concern questions of data sharing between Google businesses. While Google claims these do not relate to the Complaint, Google's use of data in furtherance of its alleged monopolies is a key part of Plaintiffs' Complaint. *See* ECF No. 120 ¶¶ 35-37; 66-70. Questions of how Google shares its data through the ad tech stack is therefore relevant to the ways in which Google uses its power in one ad tech market to reinforce its power in another ad tech market. *See id.* at ¶ 268-73. Plaintiffs have previously sought information about Google's data sharing practices through RFPs 46 and 47, but those requests have not proven fruitful. Google refused to provide substantive responses to questions designed to narrow these requests, posed by Plaintiffs in written correspondence in April 2023, and instead offered to produce materials identified via a reasonable search. To date, Plaintiffs have not been able to identify documents in Google's document productions that explain how data is shared by and among the relevant products.

**5.  Topic 22 concerns plaintiffs' damages claims and defenses.**

Plaintiffs' Topic 22 is one of several topics concerning the United States' damages and the effects of Google's conduct on the Federal Agency Advertisers at issue in this case. During a meet and confer last week, Google suggested that it could prepare a designee limited to the FAA advertisers at issue in the case. The United States was considering this compromise when Google filed its motion seeking a protective order. The United States is willing to accept a narrowing of these topics to be specific to FAAs and the ad agencies that work directly with FAAs.

## <u>CONCLUSION</u>

Google's motion for a protective order should be denied.

Dated: August 23, 2023

Respectfully submitted,

JESSICA D. ABER                                    JASON S. MIYARES
United States Attorney                             Attorney General of Virginia

/s/ Gerard Mene                                    /s/ Andrew N. Ferguson
GERARD MENE                                        ANDREW N. FERGUSON
Assistant U.S. Attorney                            Solicitor General
2100 Jamieson Avenue                               STEVEN G. POPPS
Alexandria, VA 22314                               Deputy Attorney General
Telephone: (703) 299-3777                          TYLER T. HENRY
Facsimile: (703) 299-3983                          Assistant Attorney General
Email: Gerard.Mene@usdoj.gov
                                                   Office of the Attorney General of Virginia
/s/ Julia Tarver Wood                              202 North Ninth Street
JULIA TARVER WOOD                                  Richmond, VA 23219
/s/ Kelly D. Garcia                                Telephone: (804) 692-0485
KELLY D. GARCIA                                    Facsimile: (804) 786-0122
/s/ Amanda M. Strick                               Email: thenry@oag.state.va.us
AMANDA M. STRICK
/s/ Aaron M. Teitelbaum                            Attorneys for the Commonwealth of
AARON M. TEITELBAUM                                Virginia and local counsel for the
                                                   States of Arizona, California,
United States Department of Justice                Colorado, Connecticut, Illinois,
Antitrust Division                                 Michigan, Minnesota, Nebraska, New
450 Fifth Street NW, Suite 7100                    Hampshire, New Jersey, New York,
Washington, DC 20530                               North Carolina, Rhode Island,
Telephone: (202) 307-0077                          Tennessee, Washington, and West
Fax: (202) 616-8544                                Virginia
Email: Julia.Tarver.Wood@usdoj.gov

Attorneys for the United States