**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| Defendant. | ) | |

## UNITED STATES' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL AND FOR *IN CAMERA* REVIEW

This dispute arises from Google's attempts to obtain three categories of material exempt from discovery under the work-product doctrine, attorney-client privilege, and/or deliberative-process privilege. Google's discovery requests are improper under controlling law, and nothing in its papers supports the production of these protected documents on the basis of substantial need.

The first category is composed of inter-agency e-mail communications between the United States Department of Justice and other federal agencies, including the Federal Agency Advertisers ("FAAs") that are plaintiffs in this case, regarding their purchases of digital advertising. Those communications were made in anticipation of this litigation, for the purpose of providing legal advice regarding the United States' potential claims under Section 4A of the Clayton Act, and conducted in the course of Department of Justice staff providing opinions and recommendations in connection with decisions on the filing of this litigation, including the scope and content of its damages claims on behalf of those federal agencies. These documents are not, as Google glibly suggests, similar to the "intake that a plaintiff firm does on potential clients." Dkt. 305 ("Mot. to Compel") at 1-2. On their face, they are communications between federal agencies (actual, not potential clients) and attorneys from the Department of Justice (the agencies' actual, not potential,

1

attorneys).  These are confidential documents protected under the work-product doctrine, attorney-client privilege, and deliberative-process privilege.

The second category of documents is composed of intra-agency e-mail communications between the FAAs' internal counsel and employees of those FAAs containing legal advice or requests for legal advice, as well as work product prepared by the FAAs at the request of the Antitrust Division to assess claims in this litigation.  Those, too, are protected from discovery. Discussions between agency counsel and agency employees regarding an ongoing legal investigation have long been held to be protected attorney-client communications, *see Boundy v. U.S. Patent & Trademark Office*, 2023 WL 2567350, at *9 (E.D. Va. Mar. 17, 2023) (emails in which government attorneys "seek information to assist them" in evaluating "the subject of [the] litigation . . . fall squarely within the attorney-client privilege"), and documents prepared for the specific purpose of assisting attorneys in investigating legal claims are protected work product that would not have existed in the same form absent the litigation.

The third category of documents is composed of: (i) e-mail communications between federal agencies and the advertising agencies that purchase digital ads on the federal agencies' behalf, reflecting requests for information sought by attorneys from the Department of Justice in anticipation of the instant litigation; and (ii) deposition testimony from two federal agency employees regarding the nature of inquiries they made to these advertising agencies at the direction of attorneys from the Department of Justice.  Following the inadvertent production of those communications, and Google's improper elicitation of that testimony from these individuals, Plaintiffs clawed back that material because it improperly revealed protected attorney work-product.  Google now asks the Court to compel their re-production.

The Court should deny Google's motion to compel these three categories of material, Dkt. 305, and its attendant motion for *in camera* review of the deposition transcripts, Dkt. 301. Google's motions would subject to discovery the "focus of [an opposing attorney's] investigation," *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) (internal quotation marks and citation omitted), revealing the processes underlying its opposing party's investigation of relevant facts and its incorporation of those facts into claims in litigation. The Court should decline to order the production of these materials that are protected, for good reason, under well-established law.

## BACKGROUND

### I.    Category 1: Inter-Agency Communications Between the Department of Justice and Federal Agencies Concerning the Litigation

Google's first set of Requests for Production, served on March 27, 2023, requested, *inter alia*, "[a]ll correspondence with any person concerning the [ad tech] Investigation or subject matter of this Action." Plaintiffs produced millions of pages of documents responsive to that request, including documents from the United States' investigative file, on April 25, 2023 and June 20, 2023.

Because Google's request could be read to encompass privileged communications between the Antitrust Division and its federal agency clients concerning the investigation period, the United States also produced a privilege log on June 26, 2023, detailing its basis for withholding 57 such documents from production of the Antitrust Division's investigatory file.[1] The June 26 privilege log, an excerpt of which is attached to Google's Motion to Compel as Exhibit 4, details the senders and recipients of each document, and establishes that each communication occurred between

---

[1] Section V.8.e of the Court's ESI Order (Dkt. 142) provides that communications between *counsel* for the government and *counsel* for any federal agency advertiser need not be logged; accordingly, the June 26 privilege log contained only entries reflecting communications between the Department of Justice and non-lawyer employees of its client federal agencies.

Department of Justice attorneys working on this case and agency employees regarding [legal advice or information necessary to provide legal advice concerning] "potential violation[s] of Section 4A of the Clayton Act related to purchases of digital advertising by agencies and divisions of the United States government." *See, e.g.*, Exhibit 4, Mot. to Compel.  The United States also withheld, or inadvertently produced and clawed back, these types of communications from productions of FAA files.  96 of these documents were clawed back on August 4, 2023.[2]

Google has challenged these privilege assertions, and seeks that Plaintiffs (i) produce all of the documents listed in its June 26 privilege log; (ii) provide a list of Antitrust Division custodians whose files were searched for purposes of responding to Google's Request for Production; and (iii) prepare a privilege log for all communications between the Department of Justice and counsel for any federal agency advertiser (which the ESI Order expressly excludes from logging), which Google has indicated it would use to challenge privilege claims over those communications as well.

## II.      Category 2: Intra-Agency Communications Concerning the Litigation

Plaintiffs also withheld documents from productions of FAA files that contain communications between the FAAs' internal counsel and employees of those FAAs containing legal advice or requests for legal advice, as well as work product prepared at the request of the Antitrust Division to assess claims in this litigation.  Because these documents reflect privileged communications with counsel and protected work product, several of these documents which had

---

[2] In so doing, Plaintiffs noted that the production of privileged or work-product protected Documents, electronically stored information ("ESI"), or information, whether in advertent or otherwise, is not a waiver of the privilege or protection from discovery in this case.  *See* Dkt. 203 (Modified Protective Order) ¶ 12(a).

been inadvertently disclosed were clawed back by Plaintiffs, by their letters dated August 4, August 14, and August 17, 2023.[3]

### III.   Category 3: Communications Between Federal Agencies and their Advertising Contractors, Directed by Counsel, to Gather Information Maintained by Contractors about Federal Purchases Related to this Litigation

Plaintiffs have also withheld or clawed back communications between federal agencies and their advertising agencies made at the direction of counsel, which are subject to protection under the work-product doctrine.  Relatedly, by their letter dated August 18, 2023, Plaintiffs clawed back portions of the depositions of the Executive Director of Brand Marketing for USPS, and the Director of Marketing for the Navy Recruiting command during the relevant period.  The portions of the USPS transcript that were clawed back involved testimony elicited through the use of inadvertently-produced documents that the United States had clawed back, including questions informed by information in those documents that counsel persisted in asking despite Plaintiffs' repeated objections.  The portions of the Navy transcript that were clawed back involved testimony in which the witness inadvertently disclosed protected attorney work product in response to Google's questioning.

Plaintiffs did not, as Google incorrectly asserts, "claw[] back the entirety of both" deposition transcripts, Mot. to Compel 8-9; rather, the United States made clear that it was clawing back only specifically-identified portions of those transcripts, and acknowledged its obligation to provide replacement copies with the required redactions, Ex. 1, Mot. to Compel.

---

[3] The United States provided a privilege log to these documents on August 8, 2023 and August 23, 2023, attached as Exhibits A and B, with names redacted because they are not material to the Court's decision.

**ARGUMENT**

I.    **All of the Documents at Issue Are Subject to Work-Product Protection.**

The work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). All of the documents at issue here—(i) communications between the Department of Justice and certain other federal agencies regarding the extent to which those agencies had cognizable claims for damages to be asserted in this case; (ii) intra-agency communications, including documents to and from agency counsel concerning the litigation; and (iii) communications between federal agencies and their advertising agencies, conducted at the direction of counsel and concerning specific requests for information from the Department of Justice relating to this case—fall within the heartland of Rule 26 protection. They are quintessential work product representing the "preparatory work of the other side." *See* Advisory Comm. Notes on Fed. R. Civ. P. 26. Google's attempt to compel their disclosure and seek witness testimony on their substance and purpose is manifestly improper.

A.    Inter-Agency Communications Between DOJ and Federal Agencies and Intra-Agency Communications Within FAAs Regarding this Litigation Are Protected Work-Product.

The work-product doctrine applies when actual or anticipated litigation is "the driving force behind the preparation of the requested documents." *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 193 (E.D. Va. 2019) (internal quotation marks and citation omitted). Accordingly (and as Google has previously acknowledged in this case), whether a document is protected work product hinges on the purpose for which it was created. *See* Dkt. 245 (Google Opp. To Pls. Motion to Compel) at 5 (work product protection applies to analysis "undertaken because of and in response to active government investigations"). The work-product doctrine safeguards documents "prepared *because of* the prospect of litigation when the preparer

6

faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis in original).

Pre-complaint communications between the DOJ and other federal agencies regarding the prosecution of this action amply satisfy this standard. In the communications at issue, DOJ attorneys sought, and federal agencies provided, information directly intended to aid the Antitrust Division in formulating and prosecuting the damages claims in this lawsuit. *See E.I. Dupont De Nemours and Co. v. Kolon Indus., Inc.*, 2010 WL 11432920, at *1 (E.D. Va. Aug. 13, 2010) (documents prepared "for the purpose of showing loss in one case and damages in another" are "protected under the work product doctrine"). The information exchanged in these communications included the nature and extent of purchases of digital advertising by those agencies, which—as Google itself appears to acknowledge, *see* Mot. to Compel 14-15—bears directly on the United States' decisions as to the scope and content of the present case. Intra-agency communications concerning the FAAs' responses to the Department of Justice's investigational requests are no different. *See Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976) (work product immunity "applies equally to lawyers and non-lawyers alike," as long as the relevant document was prepared "in anticipation of litigation"); *United States v. Berkeley Heartlab, Inc.*, 2017 WL 11673309, at *2 (D.S.C. Dec. 1, 2017) (document prepared by government non-attorney "at the direction of counsel to provide counsel with information needed to provide legal advice" was "protected work product"). Given that these communications were *about* this case, they would not have been "created in essentially the same form in the absence of litigation." *Dominion*, 429 F. Supp. 3d at 193. Indeed, they would not have been created at all.

Tellingly, Google does not suggest that these communications "would have been done in any event."[4] *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 747 (E.D. Va. 2007).  Instead, Google's only argument as to why these communications should be disclosed is a bald assertion that the "driving force" of these communications was merely to understand "how federal agencies purchase digital advertising" generally, Mot. to Compel 13—*i.e.*, without relation to the formulation of Plaintiffs' complaint that was already in draft form and was filed just weeks later on the same subject, featuring damages claims on behalf of many of the same agencies included in these communications.  Google's assertion strains credulity and would require the Court to ignore both common sense and the United States' privilege log, which states the purpose of the communications.  Courts evaluate the applicability of the work-product protection by reference to "the nature of the document and the factual situation in the particular case." *Rotunda v. Zengerle*, 2010 WL 11695254, at *2 (E.D. Va. Apr. 30, 2010) (citing 8 Wright & Miller, Federal Practice & Procedure § 2024).  Here, "objective facts" relating to the substance and timing of the communications plainly establish "an identifiable resolve to litigate prior to the . . . events and efforts reflected in the document," *id.*, as well as a clear nexus between the communications and "an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation," *Nat'l Union*, 967 F.2d at 984.[5]

---

[4] Indeed, Google concedes that the purpose of these communications was to aid the United States in formulating the damages claims in this litigation.  *See* Mot. to Compel 2 (describing communications as "reach[ing] out to . . . FAAs to try to construct a damages claim").

[5] Google also appears to suggest that the work-product doctrine should not apply because many of the agencies with whom the Department of Justice communicated "are not even parties to this case." Mot. to Compel 13.  They do not need to be.  The strategic litigation decision *not* to bring claims on behalf of those agencies derives from the very same work product that would reveal DOJ strategy and opinions in advising those agencies.  In addition, Rule 26, by its plain language, protects materials prepared "by *or for* another party or for another party's representative." Fed. R. Civ. P. 26(b)(3) (emphasis added); *see also Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 410 (E.D. Va. 1975) ("In essence, if *anyone* prepares documents for

B. Communications Between Federal Agencies and their Advertising Agencies at the Direction of Counsel, as well as Deposition Testimony Regarding Those Communications, Are Protected Under the Work-Product Doctrine.

The communications at issue between federal agencies and their advertising agencies are also classic work product. In those documents, representatives of federal agencies—*acting under direction of counsel*—reached out to advertising agencies with whom they worked that maintained information on their behalf to gather information for the specific purpose of formulating this litigation. Courts in this Circuit have plainly and consistently held that such communications "fall squarely within the work product doctrine." *Peters v. Aetna Inc.*, 2018 WL 3616923, at *11 (W.D.N.C. July 27, 2018); *see also, e.g.*, *Allen*, 106 F.3d at 608 ("information [attorney] gained from [third party]" was protected opinion work product because it "tend[ed] to indicate the focus of her investigation, and hence, her theories and opinions regarding this litigation"); *Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 258-59 (W.D. Va. 1999) (statements by a third party "taken by an independent investigator at the direction of counsel" were protected under the work-product doctrine); *Temporary Servs., Inc. v. AIG, Inc.*, 2012 WL 13005977, at *2 (D.S.C. Jan. 18, 2012) ("Defendants argue that because Nowak and Gaillard were directed by AIG's counsel to investigate and report about facts relating to the premium report, the results of these investigations are protected by the work product doctrine. The court agrees that the results of the investigations performed by Nowak and Gaillard at the direction of counsel are protected under the work product doctrine.").

---

a party in anticipation or for trial, documents so prepared are not discoverable . . . .") (emphasis added). The case cited by Google on this point, *Spilker v. Medtronic, Inc.*, 2015 WL 12851391, at *2-3 (E.D.N.C. Jan. 6, 2005), speaks only to whether non-parties may *invoke* Rule 26(b)(3)— an entirely inapposite proposition given that the party invoking the privilege here is the United States.

Google declines to even acknowledge this blackletter principle in its motion, instead hinging its position on an irrelevant contention that "[t]he advertising agencies are independent third-parties that do not work at the direction of ATR." Mot. to Compel 11. That misleading framing obfuscates two key points—first, that the *federal agencies* who communicated with the advertising agencies were representatives of the United States, acting under direction of counsel to gather information relevant to the United States' specific or potential claims on behalf of the federal agencies relating to the work the advertising agencies were contracted to perform; and second, that Rule 26 expressly provides that the work product doctrine applies to material prepared "*for* any party *or its representative*," Fed. R. Civ. P. 26(b)(3) (emphasis added), *i.e.*, including material produced by advertising agencies *for* a federal agency, in response to a request for information issued at the direction of counsel.

The cases Google cites—all of which involve discovery material lacking the crucial element of having been developed for a party's representative at the specific request of counsel— come nowhere close to rebutting the applicability of work-product protection on these facts.[6] For example, Google points to *In re Grand Jury Proceedings*, 102 F.3d 748, 752 (4th Cir. 1996), an inapposite case in which a report prepared by a bank's consultant—prepared without any attorney's involvement or request—was disclosed in discovery. *Echavarria v. Roach*, 2019 WL 6893034, at *3 (D. Mass. Dec. 17, 2019), likewise permitted the disclosure of documents that had been prepared by a third party without any attorney involvement or request. *See also Goff v. U.S. Rentals (N. Am.), Inc.*, 2017 WL 1179158, at *2-3 (E.D. Va. Mar. 28, 2017) (same); *Addi v. Corvias Mgmt.-Army, LLC*, 339 F.R.D. 594, 598 (D. Md. 2021) (same). *Burwell v. Peyton*, 2014

---

[6] Indeed, some concede precisely the United States' point. *See* Mot. to Compel at 12 (citing *In re Lumber Liquidator*, 2015 WL 9474286, at *2 (E.D. Va. Dec. 28, 2015) (communications with client's agents that "related to legal rather than business matters" are privileged)).

10

WL 12717390, at *3 (D. Vt. Apr. 17, 2014), is even further afield—there, the court permitted disclosure of a therapist's notes regarding a conversation that happened to include a discussion of ongoing litigation. *Id.* The only proposition that these cases support is Google's right to seek ordinary-course discovery from the individuals on these communications regarding the underlying facts of how they conduct their business, including the business relationship between federal agencies and advertising agencies. But none of these cases in any way supports Google's brazen suggestion that a communication made *for the purpose of responding to a request for information directed by counsel* must be disclosed notwithstanding the work-product doctrine.

Google also appears to contend that the DOJ has waived work-product protection by communicating, through the federal agencies, with advertising agencies that are "no different than any other third parties," such as "The Trade Desk, or Microsoft, or Meta." Mot. to Compel 12 (citing *Johnson v. Baltimore Police Dep't*, 2021 WL 1985014 (D. Md. May 18, 2018), and *SEC v. Gupta*, 281 F.R.D. 169, 173 (S.D.N.Y. 2012), two waiver cases). That premise is equally wrong. The advertising agencies here are not unrelated third parties simply because they are not the federal agencies' legal consultants; they work directly with the federal agencies on the subject of this litigation and maintain information regarding the federal agencies' purchases necessary to the evaluation of those purchases by counsel. As Google's own cited case explains, "[d]isclosure to a person with an interest common to that of the attorney or the client generally will not result in waiver," which includes communications between a plaintiff's "collaborators" (as distinguished from a plaintiff's "agent"). *Johnson*, 2021 WL 1985014, at *2-3; *see also In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) ("actions effectuating the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule"); *Maxtena, Inc. v. Marks*, 2014 WL 4384551, at *23 (D. Md. Sept. 2, 2014) ("mere disclosure to a

third party" is not tantamount to waiver); *In re Smith & Nephew*, 2019 WL 2330863, at *4-5 (D. Md. May 31, 2019) (no waiver by sharing documents with consultant because "[t]here was no indication that [the consultant's] interests departed from Smith & Nephew's").

C.  Google Cannot Establish a Substantial Need and Undue Hardship to Overcome the Work-Product Doctrine.

Unable to contest the applicability of the work-product doctrine to these categories of communications, Google turns to insisting that these documents "reflect purely factual information," and that it has a "substantial need" to obtain these documents which cannot be obtained "by alternate means without undue hardship."  Mot. to Compel 14.  To compel disclosure of these communications, Google bears the burden of satisfying both of these requirements.  *See In re Grand Jury*, 102 F.3d at 750; *see also Sanford v. Virginia*, 2009 WL 2947377, at *2 (E.D. Va. Sept. 14, 2009).  It has satisfied neither.

*First*, contrary to Google's characterizations, the communications at issue reflect opinion work product that is "absolutely protected from discovery."  *Sanford*, 2009 WL 2947377, at *2. Opinion work product reflects the "mental impressions, conclusions, opinions, and legal theories concerning the litigation," *id.*, and courts "carefully guard opinion work product from disclosure to an opposing party, fearing that otherwise '[a]n attorney's thoughts, heretofore inviolate, would not be his own,'" *Allen*, 106 F.3d at 607 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). *Allen* made clear the bedrock principle that a document which tends to "indicate the focus of [an attorney's] investigation, and hence, her theories and opinions regarding this litigation," represents opinion work product "absolutely immune from discovery."  106 F.3d at 608.  Crucially, that principle extends to documents that reveal an attorney's *selection* of underlying facts or issues— even if the underlying facts are themselves discoverable—because the "selection and compilation

12

of particular documents reveals [an] attorney's thought processes and theories regarding this litigation." *Id.*; *see also, e.g.*, *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) (attorney's "selective review" of certain underlying facts "was based on her professional judgment of the issues and defenses involved in this case").

In its motion, Google repeatedly asserts that the communications involve requests for "factual" information.  Mot. to Compel 14, 20, 21.  But that conflates the issues at play: Google's motion to compel does not seek only that factual information; it seeks disclosure of *the communications themselves*, which necessarily reflect the government's thinking as to the litigation, in plain contravention of *Allen* and its progeny.  Google's last-minute suggestion that these documents may be redacted to exclude "protected information (attorney impressions, for example)," Mot. to Compel 17, does not save its motion.[7]  The communications at issue—internal discussions regarding the government's damages on the one hand, and requests for information relevant to a specific element of the government's liability claim on the other—plainly reflect requests for "specific documents tending to prove a specific legal theory," *GMS Indus. Supply, Inc. v. G&S Supply, Inc.*, 2021 WL 2492473, at *4 (E.D. Va. May 5, 2021), which cannot be redacted without rendering the documents meaningless.

**Second**, regardless of whether the communications are fact or opinion work product, Google has failed to show a "substantial need" for these communications, and has likewise failed to show that their "substantial equivalent" cannot be obtained without undue hardship.  In sum, Google's argument boils down to an assertion that it should be able to obtain these documents because the "commercial realities of how industry participants define the market for available

---

[7] Google's questioning at depositions regarding the purpose for which FAAs gathered particular information belies this contention.

advertising" are relevant to its argument on market definition.  Mot. to Compel 14-15.  Yet this argument has anything to do with the government's inter-agency communications regarding the United States' damages claims; Google's proffered justifications concern only federal agencies' communications with their advertising agencies.

Even as to the federal agencies' communications with their advertising agencies, Google offers no real explanation—other than its strategic interest in not having to use its "ten party depositions, and twenty non-party depositions," *id.* at 16—for why it cannot simply depose purchasers of digital advertising, including these very ad agencies, as to their views on the market.  Indeed, Google has already arranged to take the depositions of ad agencies on this very question.  Under these circumstances, courts, in their discretion, have consistently rejected movants' tactical decisions not to take certain discovery in the hopes of obtaining it through protected work product.  *See Sanford*, 2009 WL 2947377, at *2 (work-product doctrine "forbids" disclosure where "a party does not make any showing that other witnesses were unknown to it or unavailable to testify") (citing *In re Grand Jury Subpoena*, 622 F.2d 933, 935 (6th Cir. 1980)); *Arugu v. City of Plantation*, 2010 WL 11515702, at *9 (S.D. Fla. Oct. 26, 2010).

Recognizing that its position would improperly reduce the "substantial need" inquiry "to a simple question of relevance," *Sanford*, 2009 WL 2947377, at *3, Google attempts to reframe the protected communications as being uniquely "contemporaneous," citing two cases dealing with eyewitness accounts of automobile accidents and accidental fires, *see* Mot. to Compel 15.  But those cases have no relevance here, where the issue on which Google claims substantial need (advertising purchasers' views on the market) is amply documented, rather than consigned to a witness's memory compromised by the "passage of time."  *See Coogan v. Cornet Transp. Co., Inc.*, 199 F.R.D. 166, 167 (D. Md. 2001).  Google's twin assertion that any potential witness would

later give compromised, undetailed testimony tainted by "attorney-education," Mot. to Compel 15-16, fares no better.  Nothing in the record suggests, much less substantiates, Google's rank speculation that a witness would give incomplete or false testimony under oath on these questions.[8] At bottom, Google has failed to make the showing necessary to obtain otherwise protected documents.

## II.     The Inter- and Intra-Agency Communications at Issue Are Subject to the Attorney-Client Privilege.

### A.  The Inter-Agency Communications at Issue Are Privileged Attorney-Client Communications.

In addition to being protected work product, the inter-agency communications at issue are also protected by attorney-client privilege.  That set of documents is composed entirely of communications between the DOJ and federal agencies for the purpose of aiding DOJ attorneys in forming and providing legal advice as to whether those same federal agencies were injured by Google's conduct, and therefore whether the United States has cognizable claims for damages under Section 4A of the Clayton Act.  Accordingly, these documents represent privileged communications between an attorney (the DOJ attorneys working on this case) and its client (the federal agencies), for the purpose of furnishing legal advice (the damages claims asserted in this lawsuit).  *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (asserting privilege requires both attorney-client relationship and request or provision of legal advice); *see also In re*

---

[8] Google's citation to *United States v. Booz Allen Hamilton, Inc.*, 2022 WL 3921019, at *2-3 (D. Md. Aug. 31, 2022), is also inapposite.  That case, as Google acknowledges, dealt with a situation where a deposition could not substitute for protected work product because the deposition's usefulness "may be limited . . . without the requested documents." *Id.* at *4.  There, the protected documents themselves ("an employee's detailed timeline") would have served as key exhibits to the witness's testimony during a deposition. *Id.*  Here, there is no reason why the federal agencies' *requests* for certain information would be a necessary referent for advertising agencies' testimony regarding the underlying facts requested.

*Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005) ("The government attorney requires candid, unvarnished communication from those employed by the office he serves so that he may better discharge his duty to that office.").

    ***Attorney-Client Relationship.***  Just as the purpose of a general counsel's office is to handle litigation on behalf of a company, the DOJ is statutorily charged with acting as the attorney of the United States and its agencies.  *See* 28 U.S.C. § 516 ("[T]he conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, acting under the direction of the Attorney General.").[9]  By statute, the DOJ is specifically and exclusively authorized— indeed, required—to enforce the antitrust laws, including through damages claims on behalf of the United States when it is injured in its business or property.  15 U.S.C. § 4; 15 U.S.C. § 15a.

    The thrust of Google's argument is that this Court should treat the Department of Justice's communications with its agency clients as identical to "the discoverable intake that a plaintiff does on potential clients or claims before any attorney-client relationship is formed."  Mot. to Compel 1-2; *see also id.* at 18 (characterizing communications as being similar to "letters to potential plaintiffs or class representatives").  That extraordinary assertion is both factually and legally meritless.  Courts have overwhelmingly held that "an attorney-client relationship exists between [federal agencies] and the [Department of Justice] in connection with anticipated litigation."  *Town of Norfolk v. U.S. Army Corps of Engr's*, 968 F.2d 1438, 1457-58 (1st Cir. 1992); *see also, e.g.*, *Hall & Assocs. v. EPA*, 633 F. Supp. 3d 35, 53 (D.D.C. 2022) ("[T]he agency is typically the 'client' and the agency's lawyers (or lawyers at the Department of Justice) are typically the

---

[9] *See also* 28 U.S.C. § 519 (prohibiting any "Executive department or military department" from "employ[ing] an attorney or counsel for the conduct of litigation," and requiring such agency to instead "refer the matter to the Department of Justice").

'attorneys' for purposes of the attorney-client privilege."); *United States v. Acquest Transit LLC*, 319 F.R.D. 83, 99 (W.D.N.Y. 2017) (disclosure improper "because attorney-client relationship exists between the Department of Justice and the agencies"); *N.Y. Times Co. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 234, 239-40 (D.D.C. 2017) (distinguishing the attorney-client relationship between NSA and DOJ from other relationships involving a "true third party"); *LSB Indus., Inc. v. C.I.R.*, 556 F. Supp. 40, 42 (W.D. Ok. 1982) ("The privilege applies where the client is a corporation and the attorney is in-house counsel, or whether the client is the United States and its administrators and the attorney is either in the agency or in the Department of Justice."). The law speaks directly to the communications at issue, where the DOJ was advising the United States and its agencies—*for which it was already an attorney charged by statute with identifying and pursuing antitrust damages claims on behalf of*—regarding the availability and propriety of bringing damages claims in imminently-anticipated litigation.

Google cites no support to the contrary. Indeed, the single case it identifies that so much as mentions a claim for attorney-client privilege between the Department of Justice and its agency clients is *Stonehill v. U.S. Department of Justice Tax Division*, 2022 WL 407145, at *23 (D.D.C. Feb. 10, 2022), where the attorney-client privilege was denied solely for its claimant's "lack of detail" in describing why it applied. There, the court considered a document identified as "one e-mail between DOJ-Tax attorney and an Internal Revenue Service employee," and found that without any further information about the "subject matter of the email," it could not conclude that the "communication was confidential or even legal in nature." *Id.* Here, by contrast, the government has specifically identified the legal context of the communications in its privilege log,

*see* Mot. to Compel 5, clearly denoting that the communications dealt with the DOJ's agency clients in the context of developing a damages claim under Section 4A of the Clayton Act.[10]

   ***Legal Advice.***   In addition, the communications at issue—including both the DOJ's requests for information necessary to evaluate damages claims brought on behalf of certain federal agencies and those federal agencies' responses to these requests—were made for the purpose of securing legal advice.  The key question in the Fourth Circuit in determining whether investigative communications are protected under the attorney-client privilege is "whether this investigation was related to the rendition of legal services."  *Allen*, 106 F.3d at 603.  As recounted in detail above, communications intended to develop the United States's damages claims amply satisfy this criterion.  *See Boundy*, 2023 WL 2567350, at *9 (emails in which government attorneys "seek information to assist them" in evaluating "the subject of [the] litigation . . . fall squarely within the attorney-client privilege").

   Google does not dispute that these communications were made for the sole purpose of developing the damages claims brought in this lawsuit.  *See* Mot. to Compel 2 (relevant correspondence was made to "construct a damages claim").  Instead, it entreats this Court to find that communications "requesting *factual* information" are categorically excluded from the attorney-client privilege.  Mot. to Compel 20 (emphasis in original).  The lack of any citation for this assertion is telling—the law holds the precise opposite.  *See Allen*, 106 F.3d at 603 (in the Fourth Circuit, "fact finding which pertains to legal advice counts as professional legal services");

---

[10] To the extent that Google suggests that there is a difference between the federal agencies on whose behalf the United States asserted claims in the complaint and the federal agencies on whose behalf damages claims ultimately were not asserted, such a distinction does not alter the existence of an attorney-client relationship. The attorney-client privilege applies to communications even with potential clients. *See Stradtman v. Republic Servs., Inc.*, 2015 WL 2451850, at *2 (E.D. Va. May 21, 2015).

*In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979) (factual investigation by law firm for the purpose of providing legal advice based on that investigation "trigger[s] the attorney-client privilege"); *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 30 (D.D.C. 2016) ("For the attorney-client privilege . . . facts collected at counsel's request for later use in providing legal advice are protected.").

Google's cherry-picked quotations from two depositions, *see* Mot. to Compel 19-20, cannot rescue its argument. In portions of those depositions that Google declines to highlight, both deponents make clear that they had been asked to provide information relevant to the DOJ's claims, and that they could not testify further as to the nature of those requests because they contained privileged information.[11] Considering these deposition excerpts in their proper context, Google has shown nothing other than the fact that certain agency employees had not themselves reached out to the Antitrust Division to initiate a claim, and did not ordinarily interact with the Antitrust Division in the scope of their ordinary duties. That is neither surprising nor relevant. None of this changes the fact that the communications at issue involved requests coming from the Department of Justice—the counsel of the United States—in aid of a specific legal investigation. That is all the law requires. *See Upjohn*, 449 U.S. at 394 (requests that identify the requesting party as an attorney and which explain the applicability of requested facts to an existing legal investigation protected under attorney-client privilege).

---

[11] *See* Ex. 14, Mot. to Compel at 57:10-58:4 ("Q. And do you know why Department of Commerce was asking about Google ads and digital advertising for the 2020 -- 2020 census in January of 2023? . . . If you can answer that question without relying on privileged communications -- on communications between yourself and lawyers for the Department of Commerce, that's what I am asking for in your answer. A. I can't answer. Q. Is that because you only have an understanding based on privileged communications? A. Yes."); Ex. 15, Mot. to Compel at 3 ("Q. To what extent has anybody at the Department of Justice ever asked you to provide information about the Army's advertising business? MR. MCBIRNEY: Objection. Privileged. Instruct the witness not to answer. Q. Are you going to follow that instruction, sir? A. Yes.").

B.  The Intra-Agency Communications at Issue Are Subject to the Attorney-Client Privilege.

The intra-agency communications here—*i.e.*, communications between the FAAs' internal counsel and employees of those FAAs containing legal advice or requests for legal advice, as well as work product prepared at the request of the Antitrust Division to assess claims in this litigation— are privileged for much of the same reasons discussed in Section II.A, *supra*.  Google does not dispute that, for the subset of these documents representing discussions between agency counsel and agency employees, those communications are definitional attorney-client communications. *See Rein*, 553 F.3d at 376 ("An agency can be a client and agency lawyers can function as attorneys within the relationship contemplated by the privilege.") (internal quotation marks omitted); *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 n.24 (D.C. Cir. 1977) (the attorney-client privilege extends to "communications between attorneys and all . . . employees of the organization who are authorized to speak for the organization in relation to the subject matter of the communication).  And even for those communications between non-lawyers within the agencies responding to the Department of Justice's requests for information, the attorney-client privilege attaches because they were "transmitted . . . to relay information requested by attorneys." *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993); *see also Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (privilege extends to communications between non-lawyers relating to the "giving of information to the lawyer to enable him to give sound and informed advice").

III.  **Inter-Agency Communications Between the DOJ and Federal Agencies for the Purpose of Formulating Its Legal Strategy in this Lawsuit Are Subject to the Deliberative-Process Privilege.**

The documents reflected on Plaintiffs' June 26 privilege log are likewise exempt from disclosure under the deliberative-process privilege.  The privilege protects interagency documents

that are both "predecisional" and "deliberative." *City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993). Google makes no attempt to contest that the communications at issue are "predecisional," as they were indisputably conducted prior to an agency's decision: the content of the complaint filed in this case. *See* Mot. to Compel 21-23; *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (deliberative-process exemption applies to an agency's thinking regarding the filing of a civil enforcement action). Thus, the only contested issue is whether the communications are also "deliberative." The relevant documents satisfy this standard.

A document is "deliberative" if it was "prepared to help the agency formulate its position." *U.S. Fish & Wildlife Serv. v. Sierra Club, Ind.*, 141 S. Ct. 777, 786 (2021). Yet again, Google attempts to circumvent the fact that these communications were prepared to help the Department of Justice "formulate its position" in the operative complaint by characterizing those documents as predominantly factual in nature, rather than reflective of deliberation relating to the agency's opinions. Mot. to Compel 22. But one of the cases that Google itself cites, *Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982), explains exactly why that position is untenable. There, the D.C. Circuit, discussing its prior decision in *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974), explained that the "factual versus deliberative distinction" was "inadequate to resolve the difficult question" of whether the gathering of facts should be exempt from disclosure under the deliberative-process privilege. The court explained that whereas the communication of factual material was *not* protected where it was "prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress," the communication of factual material *was* protected where it was "prepared for the sole purpose of assisting the [requesting agency] to make a complex decision" in a legal proceeding. *Playboy*

21

*Enters.*, 677 F.2d at 936; *see also Rein*, 553 F.3d at 371 n.26 (factual material is subject to deliberative-process privilege if it would "indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process").[12]

By the standard set forth in Google's own cited precedent, the deliberative-process inquiry hinges on whether the factual material communicated was the predicate for a later decision, such that its disclosure would "permit[] inquiry into the mental processes of the [agency] by revealing what materials [it] considered significant in reaching a proper decision," *Playboy Enters.*, 677 F.2d at 936, rather than "lend[ing] no more than inferences that are essentially similar to the findings which preceded it," *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore*, 508 F.2d 945, 948 (4th Cir. 1974). The communications at issue fall cleanly in the former category. It is not merely the facts themselves, but Plaintiffs' undisputed purpose in gathering them (incorporation into a broader, discretionary agency decision as to how to formulate its antitrust claims), reflected in their contents and context, that renders the deliberative-process privilege applicable here.

Thus, the deliberative-process privilege shields from disclosure the Department of Justice's communications with other federal agencies regarding the nature and extent of their damages claims. And although Google contends that the Court should nevertheless order their disclosure because of its substantial need to probe their relevance to the "market definition" inquiry in this

---

[12] Google also describes *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1250 (4th Cir. 1994), in an explanatory parenthetical, as holding that the "deliberative process privilege ***does not*** protect the exchange of facts and information in the course of an investigation." Mot. to Compel at 22 (emphasis in original). The suggestion that *Ethyl Corp.* stated such a categorical rule is misleading. *Ethyl Corp.* held that a Vaughn index (the equivalent of a privilege log in the FOIA context) that "fail[ed] to identify either the author or its recipient" for a certain tranche of documents could not support a deliberative-process claim for documents whose authors' "relationships to the decisionmaking process cannot be identified." 25 F.3d at 1250. Unlike in *Ethyl Corp.*, where "little information [was] provided . . . for testing the [government]'s deliberative process privilege claims," those key facts are plainly present in the United States's June 26 privilege log.

case, the Court should reject its bid for the same reason as discussed *supra* in Section I.C.  *See* § I.C (no showing of substantial need nor inability to obtain substantial equivalent).  There is no reasonable means of producing redacted versions of these documents to limit them to their factual content; in this context, the facts provided illuminate the government's thinking behind the questions asked, and reveal the factual predicates found appropriate (or not appropriate) for inclusion in this lawsuit.  If Google believes that agency employees' underlying views—divorced from the deliberative process—are crucial to its market definition argument, it has every opportunity to explore those views in the standard course of discovery.

## IV.    Neither *In Camera* Review Nor Modification of Section V.8.e of the ESI Order Is Warranted.

Through its detailed privilege logs and correspondence, Plaintiffs have satisfied their initial burden of establishing the applicability of the work-product doctrine, the attorney-client privilege, and the deliberative-process privilege to the various categories of documents and testimony at issue here.  *See Jones*, 696 F.2d at 1072.  Requesting *in camera* review does not obviate a movant's responsibility to sustain a legally and factually tenable position on why certain protected documents should be disclosed; instead, the moving party must make a "showing of a factual basis adequate to support a good faith belief by a reasonable person that an exception to the privilege may apply."  *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *4 (E.D. Va. July 16, 2019); *see also Glaxo, Inc. v. Novopharm Ltd.*, 148 F.R.D. 535, 540 n.3 (E.D.N.C. 1993) ("If this court were to review each and every document withheld as privileged in litigation . . . for no reason other than counsel's distrust of his adversary, this courthouse could hardly function.").

Google's request that the Court review *in camera* the documents at issue, as well as the entirety of two deposition transcripts, fails at the threshold.  The only facts it can point to in support of *in camera* review are the "[e]xhibits and testimony of FAA witnesses," Mot. to Compel 24, but

for the reasons discussed *supra*, none of those proffered "facts"—even taken as presented—undermine any of the key reasons why the various privileges apply here.  They do not, for instance, suggest that litigation was merely a theoretical possibility (rather than the driving force behind these communications), nor does anything in Google's brief contradict that the purpose of those communications was to inform the legal advice or decision-making of the United States.  *In camera* review is not appropriate in these circumstances.

This Court should likewise decline Google's invitation to modify Section V.8.e of the ESI Order, which excludes from the parties' privilege log obligations any "[d]ocuments or communications sent solely between counsel for the United States (or persons employed by the United States Department of Justice) and counsel for any Federal Agency Advertiser."  Dkt. 142 § V.8.e.  Although the ESI Order provides for modification upon "good cause" shown, *id.* at n.5, Google has not made any such showing.  For the reasons discussed above, neither the June 26 privilege log nor the "testimony adduced in FAA depositions" imply any attempt to conceal "improper privilege assertions."  Mot. to Compel 25.  Those assertions are amply supported in fact and in law, leaving no "good cause" to modify the ESI Order, to which Google agreed and the Court ordered.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny in full Google's Motion to Compel Documents and Testimony Withheld as Privileged (Dkt. 305), and Google's Motion for *In Camera* Review (Dkt. 301).

Dated: August 23, 2023

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ Aaron Teitelbaum
AARON M. TEITELBAUM

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

Attorneys for the United States