**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**UNITED STATES,** *et al.,*

                      *Plaintiffs*,

      - against -

**GOOGLE LLC,**

                      *Defendant*.

**Civil Action No. 1:23-cv-00108
(LMB) (JFA)**

### GOOGLE LLC'S REPLY MEMORANDUM IN SUPPORT OF
### MOTION FOR A PROTECTIVE ORDER REGARDING
### PLAINTIFFS' RULE 30(B)(6) DEPOSITION NOTICE

As the Court recently explained, Rule 30(b)(6) deposition "topics must describe with reasonable particularity the matters of examination and they must take into account the discovery that has been undertaken and issues of proportionality." Order at 2, ECF No. 326. Plaintiffs' Notice of Deposition to Google fails to clear that bar. Some parts of their Notice rehash topics that have already been explored exhaustively through other discovery methods. Others seek information that even Plaintiffs now concede should more properly be provided in writing than via testimony. And still others—such as topics vaguely referencing any "data" that Google uses, collects, shares, or accesses—fail to describe issues with sufficient particularity for a technology company like Google to prepare a witness to testify.

Rather than confront the deficiencies in their Notice, Plaintiffs attempt to paint Google's motion as a premature "race to the courthouse," when the history of the parties' negotiations shows that Plaintiffs repeatedly rebuffed Google's attempts to engage in productive negotiations. Despite their claim that they had "indicated a willingness to substantially narrow the scope of their Rule

1

30(b)(6) notice," Pls.' Resp. to Google's Mot. for a Protective Order ("Opp.") at 1, ECF No. 327, Plaintiffs declined multiple requests from Google for a written proposal so that the parties could actually engage in productive negotiations. Instead, Plaintiffs chose to negotiate through court filings, using their response brief to make their *first proposal* touching all Topics in their Notice. Google replies here to correct the record and to help further narrow the issues before the Court.

## BACKGROUND

### I.  The Notice and Early Meet and Confers

On Wednesday, August 9, Plaintiffs served Google with a Notice of Deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Notice") that identified 30 topics, which included approximately 170 sub-topics. Ex. A to Mot., ECF No. 312-1. Plaintiffs noticed the deposition for Wednesday, August 30, leaving Google with only three weeks to prepare numerous corporate designees on a mountain of issues.

Google served formal written objections to the Notice on Monday, August 14. *See* Ex. A. Those objections identified in detail and with precision the many ways that the Notice was vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. The objections also offered to meet and confer with Plaintiffs in an attempt to narrow areas of dispute. Google reiterated its objections and asked for Plaintiffs to propose ways to narrow the Notice in three meet-and-confer sessions held on August 16 and 17.

### II.  Proposals for a "Standstill" Agreement

During the meet-and-confer sessions, Google made clear that, if the parties did not reach agreement quickly, Google would—consistent with the Rule 16(b) Scheduling Order for this case—be forced to file a motion for a protective order on Friday, August 18, so that the motion could be heard on August 25, the last Friday before the noticed date of the deposition. *See* Rule

16(b) Scheduling Order, ECF No. 94 ¶ 18(e). Rather than propose ways to narrow the Notice, at 6:11 pm on August 17, Plaintiffs proposed a one-sided "standstill" agreement that would prevent only Google from moving for a protective order until August 25. Ex. B at 9. At 9:49 pm, Google responded with a counter-proposal that would have prevented both sides from seeking protective orders until August 25, allowing negotiations to continue without disadvantaging either side. *Id.* at 7-8.

On August 18, the parties met-and-conferred about the standstill agreement. During that meeting, Plaintiffs' gambit became clear: rather than actually negotiating to narrow the scope of the parties' 30(b)(6) notices, Plaintiffs wanted one-sided relief. Plaintiffs revealed that they would not accept Google's counter-proposal of a mutual standstill agreement because they intended to file, later that day, a motion for judgment on the pleadings and, in the alternative, a protective order that would preclude Google from obtaining discovery into topics that Plaintiffs are eager not to have explored. The meet-and-confer was the first time that Plaintiffs indicated they would move for judgment on the pleadings and a protective order, while they simultaneously sought to delay Google's motion for a protective order.

Google responded to the sudden news by requesting that Plaintiffs describe in writing how they would propose for their motion for judgment on the pleadings to affect timing of the parties' negotiations over the Notice. At 1:41 pm, Plaintiffs proposed that Google should not file any motion for a protective order before August 25, while Plaintiffs would move for a protective order of their own. Ex. B at 6-7. Google rejected Plaintiffs' self-serving proposal at 4:16 pm, informed them that it was preparing to move for a protective order, and once again urged Plaintiffs to accept the reciprocal standstill agreement that it had proposed the night before—one which would have simply removed the time pressure of motion practice related to the discovery deadlines and

3

allowed the parties to continue negotiations. *Id.* at 5. Plaintiffs did not accept that offer. Accordingly, Google had to file its motion for a protective order. ECF No. 311. Plaintiffs filed their motion for judgment on the pleadings or, in the alternative, a protective order, later that evening. ECF No. 317.

Unlike Plaintiffs' selective recitation of these events, the parties' correspondence shows that Google did not reject a "mutual standstill" (as Plaintiffs now claim, *see* Pls.' Mem. in Supp. of Mot. for Protective Order at 6, ECF No. 322); Google was always willing to defer filing a motion for a protective order, as long as Plaintiffs would do the same. *See* Ex. B at 8. Even when Plaintiffs sprung on Google their plan to seek judgment on the pleadings mere hours before filing the motion—and only when Google's proposed reciprocal standstill forced them to disclose their plans—Google held out an option for the parties to agree to defer their filing of motions for protective orders. It remains unclear why that was unacceptable to Plaintiffs, as Google's offer would not have delayed them from seeking judgment on the pleadings.[1] And it is ironic indeed for Plaintiffs now to accuse Google of making a "premature" motion for a protective order, *see* Opp. at 1, when they rejected Google's offer that both sides delay filing such motions, and when Google waited until the last possible day to seek a protective order that could take effect before a deposition noticed for August 30.

---

[1] Google's offer would have prevented Plaintiffs from seeking a protective order on August 18 "in the alternative" to their motion for judgment on the pleadings, *cf.* Pls.' Mem. of L. in Supp. of Mot. for Part. J. on the Pleadings, ECF No. 318 at 23-27, but Plaintiffs still could have moved for judgment on the pleadings on August 18 and later moved for a protective order. The contrary claim in their motion to continue Google's motion for a protective order is false. *See* Pls.' Mot. to Continue Hr'g, ECF No. 324 ¶ 2 ("Google informed Plaintiffs . . . that it was not agreeable to a standstill as long as Plaintiffs were planning to proceed with filing their motion for partial judgment on the pleadings or a protective order.").

4

### III. The Continuance

On Monday, August 21, Plaintiffs informed Google that they intended to file their own additional motion for a protective order and separately to move to continue the hearing on Google's motion for a protective order from August 25 to September 1. Ex. B at 3-4. On Tuesday, August 22 at 12:14 pm, Google reported that it was not inclined to continue the hearing because a continuance would prevent it from gaining timely clarity about the scope of its obligations to prepare witnesses for 30(b)(6) testimony, *id.* at 2-3, given fact discovery closes on September 8.

On a separate phone call on August 22, Google resumed the meet-and-confer process by proposing ways that Plaintiffs could narrow the Notice. To better inform the negotiations and to confirm the parties' respective positions, Google requested that Plaintiffs provide a written proposal, which they had yet to do. Soon after that conversation, at 12:41 pm, Plaintiffs stated that they would consider Google's suggestions, but also pressed Google to confirm its position on the motion to continue by 2:30 pm. Ex. B at 1-2. At 1:44 pm on August 22, Google confirmed that it would oppose a motion to continue if it were to be filed that afternoon, while holding out the possibility that it would agree to a continuance if Plaintiffs responded to "the ideas for narrowing Plaintiffs' 30(b)(6) notice that we discussed earlier today." *Id.* at 1. Plaintiffs proceeded to file their motion and offered no suggestions for narrowing their 30(b)(6) notice. Pls.' Mot. to Continue Hr'g, ECF No. 324.

### IV. The Briefing Schedule

After the motion was granted on August 22, *see* Order, ECF No. 326, the parties discussed the briefing schedule in light of the hearing moving from August 25 to September 1. Plaintiffs indicated that, despite the new date, they intended to file their response to Google's motion for a protective order on August 23 (the original, pre-continuance deadline). Plaintiffs also proposed

that the parties agree to ask the Court to adjust the briefing schedules not only for Google's motion (so that the deadline for Plaintiffs' response would be *deferred* until noon on August 28 and Google's reply would be due at 9 pm on August 30), but also for Plaintiffs' motion (so that the deadline for Google's response would be *accelerated* to August 28).

Google rejected the idea that Plaintiffs should have more time for their response, while Google should have less for its response. Ex. C at 3-5. Google also reiterated its request that Plaintiffs "make a comprehensive written proposal describing what information from their 30(b)(6) notice they actually need from Google, 'tak[ing] into account the discovery that has been undertaken to date and issues of proportionality,' as well as the requirement that topics be described with reasonable particularity," consistent with the Court's guidance. *Id.* at 4 (quoting Order at 2, ECF No. 326). If Plaintiffs agreed to make that written proposal by noon on August 23, Google committed to "join in a motion to extend the deadlines" related to Google's motion for a protective order. *Id.* And Google did not stop there. In a further showing of good faith, Google made its own significant, unilateral accommodations to address concerns that the United States had raised with respect to Google's 30(b)(6) notice to the United States. *Id.* at 4-5.

At 1:15 pm on August 23, Plaintiffs again declined to provide a proposal to narrow the Notice because doing so would "not provide *plaintiffs* with any meaningful benefit" after they were close to completing their "multi-day process" of drafting a response to Google's motion. Ex. C at 2-3 (emphasis added). Despite Plaintiffs' continued refusal to propose any narrowing of the Notice, with the parties stating that they intended to negotiate, Google "anticipate[d] that *the Court* will find it more helpful to review briefs that address the parties' positions closer in time to next Friday's hearing (rather than briefs that reflect positions taken before Plaintiffs have made a substantive proposal)" and accordingly offered to join a motion to extend the time for Plaintiffs to

6

respond to Google's motion for a protective order. *Id.* at 1-2 (emphasis added). Plaintiffs again declined to delay their filing. *Id.* at 1.

In light of their repeated insistence on filing briefs and their delay in offering a written proposal to narrow their Notice, Plaintiffs' complaints about Google's "premature" motion ring hollow. *See* Opp. at 1. That is all the more so when the table in their brief (*see* Opp. at 3-5)—the product of a "multi-day" drafting process—is just the type of written proposal that Google asked them to make and that easily could have been the basis for a negotiated extension of the briefing schedule if Plaintiffs had any interest in reaching a deal.[2]

## V.   Google Has Produced Substantial Discovery

To justify their overbroad Notice, Plaintiffs wrongly accuse Google of "refus[ing] to produce" the information that Plaintiffs are seeking through a 30(b)(6) deposition. Opp. at 1. Plaintiffs issued their initial Requests for Production on March 27, 2023, and Google timely served Objections. After a series of meet and confers, the parties agreed that Google would search the files of more than 150 custodians and would apply more than 100 search strings to those files. This process has already led to the production of almost one million Google documents in this litigation (on top of the approximately 3 million documents produced during the investigation phase). At Plaintiffs' request, Google has also conducted—and continues to conduct—a series of burdensome manual searches for additional documents that are hyperlinked within Google's already expansive production.

---

[2] Plaintiffs overstep when they argue that Google's motion "does not reflect the state of the parties' negotiations, even as of the time Google filed its motion." Opp. at 1. They offer no evidence to support that claim, and the history of the parties' negotiations to this point makes plain that Plaintiffs consistently resisted making written offers to narrow the Notice, until they filed their response brief.

7

Google has also produced 28 different sets of aggregated data, plus custom-built compilations of log-level data drawn from Google Ad Manager, Google Ads, and DV360. The Google Ad Manager log-level dataset alone includes information about 78.2 billion queries, and the data productions collectively consist of more than 183 terabytes.[3] In response to Plaintiffs' sweeping requests for source code, Google has made available for inspection over 38 gigabytes of code, as well as more than 2 million change logs relating to that code. Google has already responded to 10 Interrogatories, and its responses to 7 additional Interrogatories (not counting their sub-parts) will be due in the coming days. Plaintiffs have noticed depositions of 9 current and former Google employees—in addition to the 30(b)(6) deposition that is the subject of Google's motion (and in addition to the more than 30 Google depositions taken during the three-and-a-half-year pre-complaint investigation). In short, Plaintiffs already have access to an enormous collection of information.

## ARGUMENT

Plaintiffs' brief suggests where the parties' disputes remain. For some Topics, the parties agree that Google need not provide any 30(b)(6) testimony, or have reached agreement on the scope of testimony. For others, Plaintiffs recognize that Google's prior discovery responses contain much of the information that they seek, and their brief fails to identify any specific deficiencies, let alone sufficient need to justify the additional burden of a 30(b)(6) deposition during the crowded days near the end of fact discovery. Similarly, Plaintiffs signal that they would be willing to narrow other Topics and accept written responses in lieu of live testimony. There are some Topics, however, that remain hopelessly vague, ambiguous, overbroad, and lacking in the

---

[3] One terabyte has been estimated to be the equivalent of approximately 220 million pages of printed text. *See McNulty v. Reddy Ice Holdings, Inc.*, 271 F.R.D. 569, 571 n.1 (E.D. Mich. 2011) (granting motion for protective order).

reasonable particularity necessary to allow Google to prepare corporate designees without undue burden.  Google has repeatedly raised these problems with Plaintiffs, but they have failed to correct them or suggest ways that they could be narrowed.  The Court should enter a protective order excusing Google from needing to respond to this last category of Topics at all.

**I.  The Court Need Not Address Topics That Plaintiffs Have Withdrawn, Deferred, or Narrowed.**

Plaintiffs' brief suggests that the parties agree on how to proceed with respect to 10 of the 30 Topics in the Notice.  Plaintiffs have explicitly "Withdrawn" Topics 17-18 and 28-30.  *See* Opp. at 4-5.  Similarly, Plaintiffs "are willing to defer discovery" on Topics 23-24 (which relate to a potential divestiture remedy) "until after a liability finding has been reached and there is a concrete proposal for divestiture." *Id.* at 5.  During the parties' negotiations, Google proposed that Plaintiffs narrow Topics 19-22 to apply only to the Federal Agency Advertisers ("FAAs").  Plaintiffs are now "willing to accept a narrowing of these topics," but they propose broader coverage to include not only the FAAs, but also "the ad agencies that work directly with FAAs." *Id.* at 11.  Google is willing to accept Plaintiffs' counter-proposal and produce a corporate designee to testify about their narrowed version of Topics 19-22 for up to 2 hours.[4]  As Google does not understand there to be any dispute among the parties as to Topics 17-24 or 28-30, the Court need not address them in a protective order.

**II.  The Court Should Not Require Google to Provide Any Further Response to Topics Already Comprehensively Addressed Through Other Discovery.**

As described above, over the last four years, Google has already provided Plaintiffs with a wealth of information through document productions and other sources of discovery.  *See supra*

---

[4] Plaintiffs previously indicated that they could complete their questioning on Topics 19-22 in two hours.  Ex. B at 14-15.  Plaintiffs should not be permitted to force a witness to testify for longer than that.

9

at 7-8. Plaintiffs recognize that such prior productions make it unnecessary for Google to produce a 30(b)(6) witness on Topics 1-2, 10-12, and 25-27, at least as long as Google provides a written response to narrower versions of those topics. But in light of Google's production of so much material, it would be unduly burdensome and disproportionate to the needs of this case to require Google to produce a corporate designee to provide duplicative information by deposition or to compile duplicative information in a written response, particularly when Plaintiffs have not specified what information they believe is missing from the prior discovery responses.

Topics 1-2. Plaintiffs concede that they are "prepared, in light of Google's supplemental response to Interrogatory 3, to . . . narrow certain portions of Topic 1." Opp. at 9. The supplemental response to Interrogatory 3 also includes information sought by Topic 2, and Plaintiffs' brief expresses a "willing[ness] to accept written responses to narrow the scope of" that topic (as well as other topics related to accounting issues). *Id.* at 3. Plaintiffs received the supplemental response to Interrogatory 3 on August 16, 2023, yet they fail to explain *what portions* of Topics 1 and 2 they believe Google has not answered. Without such an explanation, there is no basis to require Google to provide any further information in response to Topics 1 or 2.

Topics 10-12. Similarly, Plaintiffs recognize that, "[o]ver the course of discovery, Google has produced . . . data that could aid in significantly narrowing the scope of" Topics 10-12. Opp. at 9. Google produced portions of that data on July 28 and August 10, with the final portion delivered to Plaintiffs on August 22. *See* July 28, 2023 Ltr. from D. Pearl to M. Freeman; Aug. 10, 2023 Ltr. from D. Pearl to M. Freeman; Aug. 22, 2023 Ltr. from D. Pearl to M. Freeman. "Plaintiffs are hopeful that the information provided will allow Plaintiffs to narrow the scope of Topics 10-12." Opp. at 10. But having not identified any portions of Topics 10-12 that they

believe the produced data fails to answer, Plaintiffs cannot reasonably demand for Google to do any more.

Topics 25-27. According to Plaintiffs' table, Google should provide "a written response" to Topics 25-27 because Google has not adequately responded to Plaintiffs' Request for Production No. ("RFP") 58 or answered deposition questions. *See* Opp. at 5. But Plaintiffs *accepted* Google's proposed response to RFP 58 almost three months ago. Ex. D (June 5, 2023 E-mail from K. Garcia to R. McCallum). Moreover, Plaintiffs have asked every Google witness deposed in this case (and many of the Google witnesses deposed during the pre-complaint investigation) about Topics 25-27, and no deponent has refused to answer those questions. In light of these facts, Plaintiffs have no basis for demanding that a corporate designee testify on Topics 25-27.

In light of the discovery that Google has already provided in response to Topics 1-2, 10-12, and 25-27, it would be disproportionate to the needs of the case to require Google also to to prepare and produce corporate designees to testify on those topics.

### III. The Court Should Not Require Google to Prepare a Corporate Designee on Topics for Which a Written or Documentary Response Will Suffice.

In their brief, Plaintiffs confirmed for the first time that they are willing to accept written answers in lieu of deposition testimony on Topics 5 through 9. *See* Opp. at 3, 9. Now having the benefit of Plaintiffs' position, Google describes below the types of information that it is willing to provide in response to each topic. Because Plaintiffs are willing to accept written answers, and Google is willing to provide them, there is no need for 30(b)(6) testimony.

Topic 5. Topic 5 calls for the same type of information about long-range plans as Interrogatory 14, which Plaintiffs only served on August 2, 2023 and so Google's response is not due until September 1, 2023. The parties are actively negotiating the scope of Google's response

11

to Interrogatory 14, and that response will provide the written response that Plaintiffs concede should be sufficient.

Topic 6. Topic 6 seeks "policies and practices" regarding Google's use of non-CPM-based pricing. Plaintiffs are "willing to accept written responses to narrow the scope" of this topic, Opp. at 3, and Google is willing to provide an appropriately tailored written response.

Topic 7. Like Topic 7, RFP 44 seeks information about Google's Ariane and RASTA systems, and the parties have already come to an agreement in principle on a written response to RFP 44. Specifically, the parties agreed that Google will "(1) produce, on a rolling basis and by the close of fact discovery, RASTA, REMH, and statslink linked data for the documents Plaintiffs have identified that can be located after a reasonable manual search by the RASTA engineers; and (2) conduct an additional manual search for available latest in time launch description documents associated with the launch IDs included in Plaintiffs' letters and produce any responsive documents that are identified." Aug. 19, 2023 Ltr. from K. Barry to R. McCallum.[5] Plaintiffs' demands for more are emblematic of their proclivity to "turn over every grain of sand," which this Court has already warned the parties not to do. *See* Hr'g Tr. 18:7-12 (Mar. 24, 2023), ECF No. 70. The additional productions that Google offered on August 19 should obviate any need for 30(b)(6) testimony on Topic 7.

Topic 8. On August 1, 2023, Plaintiffs posed a litany of detailed questions about various Google data productions. *See* Aug. 1, 2023 Ltr. From M. Freeman to D. Pearl, App'x A. Before

---

[5] These productions will be in addition to the already expansive discovery that Google has provided on these issues. During the pre-suit investigation, Google negotiated and agreed with DOJ on the scope of a search for Ariane-related materials, which led to the collection and production of over 40,000 documents over the course of 6 months. Then, as part of this litigation, Google agreed to add multiple Ariane-related custodians on the understanding that the production of documents from their files would discharge Google's obligations to respond further to RFP 44. Since then, Google has also generated other information related to Ariane and is in the process of responding to a third tranche of requests for hyperlinked documents.

Google could respond substantively, Plaintiffs incorporated—and expanded upon—those questions in Topic 8. Google is willing to provide written answers to the questions posed in Plaintiffs' August 1 letter, despite there being far more questions than interrogatories that Plaintiffs would be allowed to serve. *See* ECF No. 87 ¶ 6.B (limiting each side to 30 interrogatories); ECF No. 94 (approving Joint Discovery Plan at ECF No. 87).

Topic 9. Google is willing to provide written answers to Topic 9(a), (b), and (d). As explained in Google's opening brief, Topic 9(c) calls for information protected by the attorney-client privilege and work-product doctrine, *see* Google's Mem. in Supp. of Mot. for Prot. Or. at 15-16, ECF No. 312, and Plaintiffs do not even bother to address those issues in their response.

## IV. The Court Should Not Require Google to Designate a Witness to Respond to Vague, Amorphous, and Overbroad Topics.

Given the amount of time that Plaintiffs have spent investigating Google's alleged conduct and the enormous amount of information that Google has already produced, Plaintiffs should be able to draft topics that describe with reasonable particularity the issues to be covered during any 30(b)(6) deposition. *See* Order at 2, ECF No. 326 ("[T]he topics must describe with reasonable particularity the matters of examination and they must take into account the discovery that has been undertaken to date and issues of proportionality."); *Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004) (30(b)(6) depositions should be "meaningful exercises in ascertaining information that has not been previously discovered or are necessary"). Because several of Plaintiffs' topics are so vague and amorphous as to fail to clear Rule 30's "reasonable particularity" threshold, Google should not be required to designate any 30(b)(6) witness or provide any written response on those topics.

Topics 13-14. Topics 13 and 14 are so vague and broad that it would be impossible for Google to prepare witnesses to testify about them. Topic 13 seeks testimony about "Google's

measurement, evaluation, and understanding of the value of . . . any data," without providing any limitation on what kinds of data are relevant. Google is a technology company, so preparing witnesses to testify regarding "any data" is simply not feasible. And to make matters worse, Topic 13 does not include any limitation on the concept of "value" either. To the contrary, Topic 13 encompasses value, "whether expressed as dollar amounts or some other metric, whether monetary or non-monetary and whether measured by the quality, utility, or usefulness." Nor could Google comply with Topic 13 by preparing a witness to testify about every conception of value for every kind of data; "[f]or clarity," the topic also requires Google to repeat the exercise for "any data whether considered alone or in conjunction with other datasets." And then sub-Topics 13(a), (b), and (c) seek even more details about the "linkage or association of the data with any other data," the source of the data (even if it comes from "third-parties"), and Google's use of the data "for any . . . purpose." Topic 14 suffers from similar defects, as it seeks "Google's processes for measuring and evaluating the impact of the collection of data of any type on its business performance or processes." The "impact" of "data of any type" on Google's "business performance or processes" is simply too broad a subject to be appropriate for oral testimony.

While Plaintiffs state that they "would be willing to consider a proposal if Google believes these issues can be addressed via written submission," Opp. at 4, insisting on a written response does nothing to correct the gross vagueness and overbreadth of Topics 13 and 14. Plaintiffs cannot simply evade their responsibility to draft topics with reasonable particularity by implying that Google should come up with a proposal to fix their Notice. *See Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2014 WL 3895698, at *1 (E.D. Va. Aug. 8, 2014) (the noticing party must describe topics "with reasonable particularity," or "designating a representative in compliance with

the deposition notice becomes impossible" because the responding party "is unable to identify the outer limits of the areas of inquiry noticed").

Finally, Plaintiffs' citation to *Marker v. Union Fid. Life Ins. Co.* does not help their cause because the plaintiffs in *Marker* were seeking a corporate witness "to answer *specific* questions" concerning a specific set of data. 125 F.R.D. 121, 125-26 (M.D.N.C. 1989) (emphasis added). That is the opposite of what Plaintiffs have sought to do here.

Topics 15-16. Topic 15 seeks information about "how data is passed, shared, or exchanged among or between" any of Google's digital display advertising products, and Topic 16 covers "any datasets accessible to and accessed" by any of those products. Like Topics 13 and 14, Topics 15 and 16 sweep in ill-defined, but massive amounts of data. And Topics 15 and 16 are even broader in that they reach back for historical information about how data was "shared" or "accessed" throughout the period from 2010 to the present. Having failed to describe with reasonable particularity the kinds of data and data sharing in which they are interested, Plaintiffs should not be allowed to obligate Google to provide 30(b)(6) testimony on Topics 15-16.

Topics 3-4. Topics 3 and 4 seek testimony regarding "economies of scale" and "economies of scope," respectively. These areas are more properly the province of expert witnesses, and Google should not be required to educate a corporate designee about those technical concepts and their application (if any) to Google. Beyond that, Topics 3 and 4 appear to seek to require Google to conduct multiple, complex economic studies in preparation for a 30(b)(6) deposition. For instance, Topic 3(a) refers to "[t]he extent to which increases in volumes . . . lead to higher margins via proportionate cost savings, both over the short run . . . and long run," apparently expecting Google to study at least volumes, margins, and costs over at least two different time horizons. To make matters worse, Plaintiffs would have Google repeat those analyses "[s]eparately for AdX,

AdSense, DFP, GAM, GDN, DV360, and successor and predecessor products and services," vastly multiplying the preparation required. Topics 4(a) and 4(b) likewise require analysis of "[a]ny proportionate cost saving gained by combining two or more" Google services and "[a]ny increase in sales facilitated by producing two or more" Google services. In light of the number of different Google services, and the number of potentially different ways that "two or more" of them could be "combined," there is no feasible way to prepare a witness to testify about Topic 4. Having failed with Topics 3 and 4 to describe the matters for examination with reasonable particularity, the Court should not obligate Google to provide any response to those topics, especially when Plaintiffs have received profit-and-loss statements that should allow their experts to conduct the studies that they deem pertinent.

## CONCLUSION

For these reasons, Google respectfully requests that the Court enter an order that (1) protects Google from any obligation to provide responses to Topics 1-2, 10-12, and 25-27 beyond those already provided; (2) authorizes Google to make the written submissions and provide the materials described above in lieu of testimony on Topics 5-9; and (3) protects Google from any obligation to provide testimony or a written response on Topics 3-4 and 13-16.

| | |
|---|---|
| Dated: August 24, 2023 | Respectfully submitted, |
| | |
| Eric Mahr (*pro hac vice*) | */s/ Craig C. Reilly* |
| Julie S. Elmer (*pro hac vice*) | CRAIG C. REILLY (VSB # 20942) |
| Andrew J. Ewalt (*pro hac vice*) | 209 Madison Street |
| Justina Sessions *(pro hac vice)* | Alexandria, VA 22314 |
| Lauren Kaplin (*pro hac vice*) | Telephone: (703) 549-5354 |
| Jeanette Bayoumi (*pro hac vice*) | Facsimile: (703) 549-5355 |
| Claire Leonard (*pro hac vice*) | Email: Craig.reilly@ccreillylaw.com |
| Sara Salem (*pro hac vice*) | |
| Scott Eisman (*pro hac vice*) | Karen L. Dunn (*admitted pro hac vice*) |
| Tyler Garrett (VSB # 94759) | Jeannie Rhee (*admitted pro hac vice*) |
| FRESHFIELDS BRUCKHAUS | William Isaacson (*admitted pro hac vice*) |
| DERINGER US LLP | Joseph Bial (*admitted pro hac vice*) |
| 700 13th Street NW, 10th Floor | Amy J. Mauser (admitted *pro hac vice*) |
| Washington, DC 20005 | Martha L. Goodman (admitted *pro hac vice*) |
| Telephone: (202) 777-4500 | Bryon Becker (VSB # 93384) |
| Facsimile: (202) 777-4555 | Erica Spevack (admitted *pro hac vice*) |
| Email: eric.mahr@freshfields.com | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| Daniel S. Bitton (*pro hac vice*) | 2001 K Street NW |
| AXINN, VELTROP & HARKRIDER LLP | Washington, DC 20006 |
| 55 2nd Street | Telephone: (202) 223-7300 |
| San Francisco, CA 94105 | Facsimile: (202) 223-7420 |
| Telephone: (415) 490-2000 | kdunn@paulweiss.com |
| Facsimile: (415) 490-2001 | jrhee@paulweiss.com |
| dbitton@axinn.com | wisaacson@paulweiss.com |
| | jbial@paulweiss.com |
| | amauser@paulweiss.com |
| Bradley Justus | mgoodman@paulweiss.com |
| David Pearl (*pro hac vice*) | bpbecker@paulweiss.com |
| Allison Vissichelli (*pro hac vice*) | espevack@paulweiss.com |
| AXINN, VELTROP & HARKRIDER LLP | |
| 1901 L Street NW | Meredith Dearborn (*admitted pro hac vice*) |
| Washington, DC 20036 | PAUL, WEISS, RIFKIND, WHARTON & |
| Telephone: (202) 912-4700 | GARRISON LLP |
| Facsimile: (202) 912-4701 | 535 Mission Street, 24th Floor |
| bjustus@axinn.com | San Francisco, CA 94105 |
| dpearl@axinn.com | Telephone: (646) 432-5100 |
| avissichelli@axinn.com | Facsimile: (202) 330-5908 |
| | mdearnborn@paulweiss.com |
| | |
| | *Counsel for Google LLC* |