# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>       *Plaintiffs*,<br><br>  **v.**<br><br>GOOGLE LLC,<br><br>       *Defendant*. | Civil Action No. 1:23-cv-00108-LMB-JFA |

**DEFENDANT GOOGLE LLC'S OBJECTIONS TO
PLAINTIFFS' NOTICE OF DEPOSITION PURSUANT
TO RULE 30(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Rules of the United States District Court for the Eastern District of Virginia (the "Local Rules"), Defendant Google LLC ("Google") hereby objects to Plaintiffs' Notice of Deposition ("Notice") and the Topics set forth in Schedule A ("Topics") as follows (the "Objections").

**GENERAL OBJECTIONS**

1.  Google objects to the Notice on the grounds that the Topics are so broad and vague that it is not practicable for Google to prepare a corporate witness or witnesses to testify as to any and all matters encompassed within them.

2.  Google objects to the Notice as cumulative, duplicative, unduly burdensome, and disproportionate to the needs of the case given the more than ample discovery that Plaintiffs have already obtained from Google. The Court has instructed the parties to "focus [their] attention on

- 1 -

certain things" and emphasized that "[parties are] not going to be able to turn over every grain of sand," observing that the case's issues were ones that "the parties have been contemplating and dealing with in various places for extended periods of time."   ECF No. 70, March 24, 2023, Hearing Tr., 18:7-12.   Over the course of its nearly three-and-a-half year pre-suit investigation of Google, the DOJ conducted more than 30 depositions of Google employees regarding Google's display advertising business, during which deponents were asked, and answered, questions that are cumulative and duplicative of the Topics. Plaintiffs have since noticed the depositions of nine additional current and former Google employees. The DOJ also required Google to produce almost 3 million documents in its pre-suit investigation, and Google has produced more than a million additional documents in this litigation, as well as approximately 100 terabytes of data (with another 100-plus terabytes of data slated to be produced this month), more than 38 gigabytes of source code, and more than 2 million change logs.

3.     Google objects to the Notice as unduly burdensome and disproportionate to the needs of the case because discovery on the noticed Topics is available through less burdensome means, including written responses.   Google objects to the Notice as an improper use of Rule 30(b)(6) on the grounds that the breadth of the Notice and the breadth of inquiry that would be required to prepare multiple witnesses to testify in response to all of the Topics and their subparts set forth in the Notice (which was not served until August 9, 2023, less than a month before the close of fact discovery) renders it overbroad, unduly burdensome, and disproportionate to the needs of the case.   The Notice seeks a wide and detailed range of financial, data, preservation, experimental, behavioral, and retention information over a period of up to 13 years.

4.     Google objects to the Notice to the extent the Topics seek testimony or information protected by the attorney-client privilege, the work product doctrine, the common interest

privilege, or any other applicable privilege, immunity, or restriction on discovery.

## <u>OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>

For purposes of concision and to avoid the need to repeat these objections across numerous specifications, Google has compiled here its objections to the Definitions set forth in the Notice. When Google does not object to a defined term or responds to Topics containing a defined term, regardless of whether Google has objected to that definition, Google's response should not be taken as a concession or agreement by Google that the defined term is factually accurate or legally sufficient for any evidentiary purposes. When Google objects to any of Plaintiffs' defined terms below, Google incorporates by reference those objections wherever such definition is used in the Topics.

1. Google objects to that portion of Definition No. 5, for the term "AdX," that refers to "the display advertising exchange offered by Google" as vague and ambiguous because Google operates multiple products or services that could be described as providing "display advertising exchange" functionality, depending on how that functionality is defined, including Google Ad Manager, AdSense for Content, and AdMob. For purposes of these Topics, and consistent with what Google takes to be the best reading of Definition 5 in the context of Plaintiffs' Amended Complaint, Google will construe the term "AdX" to refer to the ad exchange functionality of Google Ad Manager and Google Ad Manager 360 and their predecessor products, including the DoubleClick Ad Exchange.

2. Google objects to Definition No. 9, for the term "allocation processes" as vague and ambiguous because it limits the definition to "external income statement classification," and fails to define "system." Google further objects to the definition as assuming facts not in evidence, seeking a legal conclusion, and improperly seeking expert analysis.

3.      Google objects to that portion of Definition No. 10, for the term "booked revenue," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

4.      Google objects to that portion of Definition No. 12, for the term "Cloud," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

5.      Google objects to that portion of Definition No. 13, for the term "Contra Revenues," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many

documents in the limited time remaining for fact discovery.

6.      Google objects to that portion of Definition No. 15, for the term "contribution margin," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced.

7.      Google objects to that portion of Definition No. 17, for the term "Core DVAA Product Group Set," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

8.      Google objects to that portion of Definition No. 23, for the term "DBM-Non_Google," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

9.      Google objects to that portion of Definition No. 24, for the term "direct cost," that

refers to a cost that can be "identified with . . . the activities of a particular product area" as vague and ambiguous" because it is unclear what "identified with" means.

10.     Google objects to Definition 25, "Display Advertising Business Components," as vague, ambiguous, overbroad, and unduly burdensome because it includes an undefined number of products and services for an unspecified time period and potentially encompasses products not mentioned in or relevant to Plaintiffs' claims, including non-display products.

11.     Google objects to that portion of Definition No. 26, for the term "DoubleClick for Publishers," that refers to "Google's Publisher Ad Server" as vague and ambiguous because Google operates multiple products or services that could be described as providing "publisher ad server" functionality, depending on how that is defined, including Google Ad Manager, Google Ad Manager 360, AdSense for Content, and AdMob (in addition to various proprietary ad servers that Google uses in its capacity as a publisher, such as YouTube's in-house ad server). For purposes of this Notice, and consistent with what Google takes to be the best reading of Definition 26 in the context of Plaintiffs' Amended Complaint, Google will construe the term "DoubleClick for Publishers" or "DFP" to refer to the ad server functionality of Google Ad Manager and Google Ad Manager 360 and their predecessor products, including the products previously marketed as DoubleClick for Publishers (including its "small business" edition).

12.     Google objects to that portion of Definition No. 27, for the term "DV360," that refers to "the Demand Side Platform ('DSP') operated by Google" as vague and ambiguous because Google operates multiple products or services that could be described as providing "demand side platform" functionality, depending on how that is defined, including Display & Video 360 and Google Ads. For purposes of these Topics, and consistent with what Google takes to be the best reading of Definition 8 in the context of Plaintiffs' Amended Complaint, Google

will construe the term "DV360" to refer to its Display & Video 360 service.

13.    Google objects to that portion of Definition No. 28, for the term "DVAA," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

14.    Google objects to that portion of Definition No. 31, for the term "EngPM," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

15.    Google objects to Definition No. 32, for the term "Exchange Bidding" as inaccurate.  Google will interpret the terms "Exchange Bidding" and "Open Bidding" to mean  the Google product or Feature on DFP, GAM and AdMob that enables Google and third-party Ad Networks and Ad Exchanges to compete in Google-run real-time auctions for Publisher Inventory.

16.    Google objects to that portion of Definition 33, for the term "Federal Agency Advertiser," that refers to an unspecified "components" of the agencies expressly listed in

Definition 33 as vague, ambiguous, and unduly burdensome because the best information about what constitutes a "component" of Plaintiffs' agencies and which such "components" are relevant to this Litigation is in Plaintiffs' possession, not Google's. For purposes of these Topics, Google has used reasonable efforts to identify customers of Google Ads and DV360 that appear to be top-level components of the listed agencies—U.S. Census Bureau, Centers for Medicare and Medicaid Services, U.S. Air Force, U.S. Army, U.S. Navy, National Highway Traffic Safety Administration, U.S. Postal Service, and U.S. Department of Veterans Affairs—and will construe the term "Federal Agency Advertiser" as referring to those agencies.

17.     Google objects to that portion of Definition No. 39, for the term "GBO," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced.

18.     Google objects of Definition No. 36, of the term "Google," on the grounds that it is vague and ambiguous, overbroad and unduly burdensome to the extent it extends to entities beyond Google LLC. Google further objects to this definition to the extent that it seeks to impose an obligation to consult with or make inquiry of directors, officers, employees, agents, and representatives of Google LLC or any of the other entities listed in Plaintiffs' definition. Subject to the foregoing objections, Google will construe the terms "Google" to refer to "Google LLC."

19.     Google objects to that portion of Definition No. 40, for the term "Google Ad Manager," that refers to "a suite of Google ad tech products that includes DFP and AdX" as vague and ambiguous because there are multiple potential sets of Google ad-tech products that could "include[]" DFP and AdX. For purposes of these Topics, and consistent with what Google takes

to the be the best reading of Definition No. 39 in the context of Plaintiffs' Amended Complaint, Google will construe the term "Google Ad Manager" to refer to its product of that name (including without limitation Google Ad Manager 360), including "DFP" and "AdX" as construed herein.

20.     Google objects to that portion of Definition No. 41, for the term "GDN" or "Google Ads," that refers to "Google's advertiser ad network, formerly known as AdWords and Google Display Network ('GDN')" as vague and ambiguous because "Google Display Network" is not a product or service offered by Google, but is instead a term used by Google to describe a collection of inventory made available for purchase by publishers using certain Google products or services, including Google Ad Manager, AdSense for Content, and AdMob. For purposes of these Topics, and consistent with what Google takes to be the best reading of Definition 41 in the context of Plaintiffs' Amended Complaint, Google will construe the term "Google Ads" to refer to that portion of its Google Ads service (previously known as AdWords) that allows advertisers to purchase display advertising inventory, whether or not that inventory is part of the "Google Display Network" (but not, for the avoidance of doubt, any portion of such service relating to the purchase of search advertising).

21.     Google objects to Definition No. 45, of "Investigation," as overbroad and unduly burdensome because it is defined to include inquiries unrelated to any party's claim or defense.

22.     Google objects to Definition No. 47, of "Long Range Plans," as vague, ambiguous, and misleading, as not all forward-looking plans are "Long Range."

23.     Google objects to that portion of Definition No. 48, for the term "Marketing," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has

produced and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

24.     Google objects to that portion of Definition No. 52, for the term "met revenue margins," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

25.     Google objects to that portion of Definition No. 53, for the term "operating costs," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

26.     Google objects to Definition No. 58, of "principal-agent considerations" as irrelevant to the claims and defenses in this litigation, misleading, and assuming facts not in evidence.

27.     Google objects to that portion of Definition No. 59, for the term "Product Area," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

28.     Google objects to that portion of Definition No. 60, for the term "Product Groups," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

29.     Google objects to that portion of Definition No. 61, for the term "Product Group Set," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced,and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many

documents in the limited time remaining for fact discovery.

30.     Google objects to that portion of Definition No. 63, for the term "Profit Center," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

31.     Google objects to that portion of Definition No. 71, for the term "Search," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

32.     Google objects to that portion of Definition No. 73, for the term "served revenue," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the

Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

33.     Google objects to Definition No. 75, of "third-party ad exchanges," as vague, ambiguous, and misleading.

34.     Google objects to that portion of Definition No. 76, for the term "TI," that purports to give the term a meaning "as otherwise used in Google documents" as unduly burdensome, vague, and ambiguous because it requires Google's designated representative to know how a term is used in an unspecified and potentially large number of documents Google has produced, and for a Google representative to know how a term is used in a document the representative may not have authored or previously seen. Given the breadth and detail of the Notice, it is not practicable for Google to prepare designees to testify with such detail on so many documents in the limited time remaining for fact discovery.

## OBJECTIONS TO SPECIFIC TOPICS

**Topic No. 1**

Collectively and for each individual product within the DVAA and Core DVAA product areas or groups, including AdX, AdSense, AFC, DFP, GAM, GDN, DBM, DBM-Non-Google, Ad Serving, Exchange Bidding, and DV360 and successor and predecessor products and services, Google's accounting policies and procedures, including how Google calculates profits and margins, including:
  (a) Definitions of Served Revenue, Booked Revenue, Gross Revenue, and Net Revenue
  (b) Revenue recognition policies and the relationship among and between the following categories of revenue:
       i. Served Revenue;
       ii. Booked Revenue;
       iii. Gross Revenue; and
       iv. Net Revenue.
  (c) Google's treatment of TAC including but not limited to:
       i. what expenditures or costs are included in TAC;
       ii. how such expenditures or costs are measured and/or calculated;
       iii. its impact on profits and margins; and
       iv. any and all principal-agent considerations.

(d) Definition of Cost of Goods Sold (COGS) and explanation of each component category within COGS, including:

    i. whether or to what extent each is a fixed or variable cost;

    ii. whether or to what extent each is a direct or allocated cost; and

    iii. how each is allocated to and/or between different products, product areas, or any other business, reporting, or accounting unit.

(e) Derivation of Contribution Margin, Marginal Cost, Gross Profit, Gross Margin, and Variable Margin;

(f) Definition of Operating Expense and explanation of each component category (such as EngPM, GBO, Marketing, G&A, and TI) within Operating Expenses, including:

    i. whether or to what extent each is a fixed or variable cost;

    ii. whether or to what extent each is a direct or allocated cost; and

    iii. how each is allocated to and/or between different products, product areas, or any other business, reporting, or accounting unit.

(g) Methodology or process of calculating Operating Profit and Operating Margin;

(h) The identity (by bates number or file names) of all final versions of P&L statements, from 2014 through 2023;

(i) Google's processes for calculating, evaluating, and forecasting its DVAA and product-level margins for display advertising products, including the individuals or business units involved, key metrics and goals, and financial targets for each year between 2014 through 2023;

(j) AdX direct, Yavin, Ad Connector dual/hybrid ad server setups, and any other means through which AdX submits bids to publishers that do not use DFP as their Publisher Ad Server, including (a) the extent to which these products/services are available to, marketed to, or used by U.S. publishers, (b) which publishers use these products/services, (c) what types of impressions these products/services bid on, (d) the % of U.S. and worldwide AdX open web display impressions accounted for by these products/services (including broken down by transaction type, e.g., open auction, programmatic guaranteed, programmatic direct, private marketplace), (f) the extent to which these products/services are growing or declining over time, and (g) any plans to deprecate or degrade any of these products and services.;

(k) The information contained in the following documents:

    i. GOOG-DOJ-AT-02647840

    ii. GOOG-DOJ-09731684

    iii. GOOG-DOJ-03156193

    iv. GOOG-AT-MDL-001064910

    v. GOOG1-00005900, which Google produced in the Search Litigation and has agreed to reproduce in this Litigation in original or updated form.

    vi. GOOG-DOJ-AT-02641400

    vii. GOOG-AT-MDL-004326981

    viii. GOOG-DOJ-11869565

    ix. GOOG-DOJ-03736622

    x. GOOG-AT-MDL-000991610

    xi. GOOG-DOJ-AT-02649874

(l) Any changes made to Google's accounting policies and procedures regarding any shift from Combined P&Ls to Stand-Alone P&Ls, including the components, categories, or

inputs included in any buyside lens (including whether that includes any sell-side products) and any sellside lens (including whether that includes any buyside products) and the time period of those changes and the personnel responsible for implementing and approving any changes.

**Objection to Topic No. 1**

Google objects to Topic No. 1 and each of its subparts as vague, ambiguous, overbroad and unduly burdensome, and therefore the Notice does not describe with reasonable particularity the matters for examination. Google further objects to Topic No. 1 on the grounds that it contains multiple separate sub-parts that, to the extent understandable, are more appropriately addressed through written responses. Google further objects to Topic No. 1 and its subparts as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding subject matters, such as "Google's treatment of TAC," "Methodology or process of calculating Operating Profit and Operating Margin," and identification of P&L statements, duplicative of Plaintiffs' other discovery requests, including Plaintiffs' Interrogatories Nos. 11, 12 and 17 served on Google on August 2, 2023.

Google further objects to Topic No. 1 and its subparts as overbroad and unduly burdensome because it seeks testimony concerning multiple discrete subtopics for a multitude of products over an approximately 9-year period.

Google further objects to Topic No. 1(j) as vague and ambiguous as to the undefined terms "dual/hybrid ad server setups" and "these products/services."

Google further objects to Topic No. 1(j) as unduly burdensome and disproportionate to the needs of the case because it seeks duplicative and cumulative testimony regarding subject matters already asked and answered in prior depositions of Google employees. DOJ has conducted more than 30 depositions of current and former Google employees in its pre-suit investigation of Google, and has noticed nine more in this litigation.

Google further objects to Topic No. 1(k) as duplicative, cumulative, and unduly burdensome because it calls for information contained in documents that are already in the possession of Plaintiffs, and Plaintiffs have failed to specify what additional "information" they seek.

Google further objects to Topic No. 1 and its subparts as overly broad, unduly burdensome, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested. The scope and detail of Topic No. 1 and its subparts is not appropriate for a 30(b)(6) deposition and is more properly addressed through written responses.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic 1, including about alternative methods for providing information sought by Topic No. 1(a)-(i) and 1(l), including providing written responses.

**Topic No. 2**

Cost allocations, including:
  (a) How allocated costs are allocated among:
      i. Google product areas such as DVAA, Search, Search Advertising, YouTube, and
      ii. Google reporting segments such as Google Services, Google Cloud, and Other Bets;
  (b) How allocated costs are allocated within Display Advertising Business Components to products and services, including AdX, AdSense, AFC, DFP, GAM, GDN, DBM, DBM-Non-Google, Ad Serving, Exchange Bidding, and DV360 and successor and predecessor products and services;
  (c) How allocation processes have changed over time;
  (d) How changes to allocation processes are made, including whether revised allocation processes are applied in a backward-looking manner (e.g., applied to recast or recalculate P&L and other reporting documents after the current and forward-looking allocation processes have been changed), and the nature and scope of that change;
  (e) Why changes to allocation processes were made, including the availability of systems to allocate all costs of business to specific product areas (or any lower- or higher-level), any new systems including any system-generated product area- specific P&Ls or any other P&Ls, whether used for or in support of internal or management reporting or external reporting;
  (f) Who is and was responsible for making such changes for the period 2014-2023; and
  (g) Information contained in the following documents:

      i. GOOG-DOJ-9731684
      ii. GOOG-DOJ-32223507, which Google produced in the Search Litigation and has agreed to reproduce in this Litigation in original or updated form.
      iii. GOOG-DOJ-12508183
      iv. GOOG-AT-MDL-003565808
      v. GOOG-AT-MDL-004326981
      vi. GOOG-DOJ-AT-02643848
      vii. GOOG-DOJ-03736622
      viii. GOOG1-00005951, which Google produced in the Search Litigation and has agreed to reproduce in this Litigation in original or updated form.
      ix. GOOG1-00005939, which Google produced in the Search Litigation and has agreed to reproduce in this Litigation in original or updated form.

**Objection to Topic No. 2**

Google objects to Topic No. 2 and its subparts as are vague, ambiguous, overbroad and unduly burdensome, and therefore the Notice does not describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 2 on the grounds that it contains multiple separate sub-parts that, to the extent understandable, are more appropriately addressed through written responses.

Google further objects to Topic No. 2 as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding subject matter duplicative of Plaintiffs' other discovery requests, including Interrogatory No. 3, served on March 27, 2023, which requested an explanation of "Google's methodology for allocating expenses," and Interrogatory No. 15 served on August 2, 2023, regarding "cost allocations."

Google further objects to Topic. No. 2(a) as overbroad and unduly burdensome because it calls for information concerning Product Areas other than DVAA.

Google further objects to Topic No. 2(g) as duplicative, cumulative, and unduly burdensome because it calls for information contained in documents that are already in the

possession of Plaintiffs, and Plaintiffs have failed to specify what additional "information" they seek.

Google further objects to Topic No. 2 because it is overbroad, unduly burdensome, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested. The scope of Topic No. 2 is not appropriate for a 30(b)(6) deposition and is more properly addressed through an interrogatory and a written response.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic 2, including about alternative methods for providing information sought by Topic No. 2(a)-(f), including providing written responses.

## Topic No. 3

Separately for AdX, AdSense, DFP, GAM, GDN, DV360, and successor and predecessor products and services, economies of scale, including:

    (a) The extent to which increases in volumes, both over the short run (less than 12 months) and long run (longer than 12 months), lead to higher margins via proportionate cost savings, as revenues grow faster than costs.

    (b) Information contained in the following documents:

        i. GOOG-DOJ-AT-02643848

        ii. GOOG-DOJ-32223507, which Google produced in the Search Litigation and which Google has agreed to reproduce in this Litigation.

## Objection to Topic No. 3

Google objects to Topic No. 3 and each of its subparts as improperly seeking a legal conclusion and expert analysis.

Google further objects to Topic No. 3 and its subpart (a) as vague, ambiguous, overbroad and unduly burdensome, and therefore the Notice does not describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 3 because it is overbroad, unduly burdensome, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested.

Google further objects to Topic No. 3(b) as duplicative, cumulative, and unduly burdensome because it calls for information contained in documents that are already in the possession of Plaintiffs, and Plaintiffs have failed to specify what additional "information" they seek.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 3.

## Topic No. 4

Economies of scope between AdX, AdSense, DFP, GAM, GDN, DV360, and successor and predecessor products and services, as well as other components of Google Services, including:
> (a) Any proportionate cost saving gained by combining two or more of the above products and services;
> (b) Any increase in sales facilitated by producing two or more of the above products and services;
> (c) The extent to which strategic or operational decisions are made at the DVAA level rather than the level of an individual product or service;
> (d) Whether Google aims to individually maximize the profits of each product and service, or maximize the value of the collection of DVAA products and services as a whole; and
> (e) Any assessment Google or its employees or executive made of the revenue or profits attributable to AdX, AdSense, DFP, GAM, GDN, DV360, either individually or in combination.

## Objection to Topic No. 4

Google objects to Topic No. 4 as improperly seeking a legal conclusion and expert analysis.

Google further objects to Topic No. 4 and its subpart(a) as vague, ambiguous, overbroad and unduly burdensome, and therefore the Notice does not describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 4 because it is overbroad, unduly burdensome, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 4.

**Topic No. 5**

Collectively and for each individual product within the DVAA and Core DVAA product groups, including AdX, AdSense, AFC, DFP, GAM, GDN, DBM, DBM-Non-Google, Ad Serving, Exchange Bidding, and DV360 and successor and predecessor products and services, any Long-Range Plans or Forecasts, including:
(a) Key performance indicators or key operating metrics such as revenue, profit, gross margin, operating margin, and market share, and growth rates of each;
(b) Evaluation of key performance indicators or key operating metrics compared against Long-Range Plans or Forecasts; and
(c) Information contained in the document GOOG-DOJ-AT-02647840.

**Objection to Topic No. 5**

Google objects to Topic No. 5 and its subparts as vague, ambiguous, overbroad and unduly burdensome, and therefore the Notice does not describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 5 as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding subject matter duplicative of Plaintiffs' Interrogatory No. 14 served on Google on August 2, 2023, such as "key performance indicators or key operating metrics" for "DVAA and Core DVAA product groups."

Google further objects to Topic No. 5 as vague and ambiguous because the phrase "key performance indicators" and "key operating metrics" are not defined.

Google further objects to Topic No. 5 because it is overbroad, unduly burdensome, and disproportionate to the needs of the case for a designated representative to acquire the knowledge

requested. The scope of Topic No. 5 is not appropriate for a 30(b)(6) deposition and should properly be addressed through written responses.

Google further objects to Topic No. 5(c) as duplicative, cumulative, and unduly burdensome because it calls for information contained in a document already in the possession of Plaintiffs, and Plaintiffs have failed to specify what additional "information" they seek.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 5.

**Topic No. 6**

Google's policies and practices regarding its use and implementation of non-CPM-based pricing in its display advertising business components including:

(a) Google's determination on whether to use non-CPM-based pricing including any risks and benefits considered in determining whether to use non-CPM-based pricing, including any product, business, accounting, partnership, technical, or other considerations;

(b) Identification and operation of any algorithms, processes, or source code used by any of Google's display advertising business components to implement or evaluate whether to use non-CPM-based pricing in any of its display advertising business components;

(c) Google's accounting policies and practices regarding non-CPM-based pricing including how Google determines its allocation processes, any principal-agent considerations, and how it measures any contra revenues, contribution margin, gross profit, gross margin, marginal costs, net revenue margins, operating costs, operating expenses, ROIC, revenue recognition, and TAC;

(d) Whether any impressions purchased and priced by non-CPM-based pricing go unsold and the subsequent disposition, if any, of those impressions;

(e) The implementation, including the calculation, of non-CPM-based pricing by any of Google's display advertising products, including AdX, AdSense, GDN, Google Ads, DFP, DBM, and DV360;

(f) Google's policies and procedures regarding any reconciliation, adjustments to charges, or amounts paid (including discounts or rebates) regarding non-CPM-based pricing that are made after an impression is won at auction;

(g) Whether non-CPM-based pricing is a differentiating factor between ad networks and DSPs.

**Objection to Topic No. 6**

Google objects to Topic No. 6 and its subparts as vague, ambiguous, overbroad and unduly burdensome, and therefore the Notice does not describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 6 on the grounds that it contains multiple separate sub-parts that, to the extent understandable, are more appropriately addressed through written responses.

Google further objects to Topic No. 6 as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding subject matter duplicative of Plaintiffs' other discovery requests, including expansive requests for source code, such as the "algorithms, processes, or source code used by any of Google's display advertising business components to implement or evaluate whether to use non-CPM-based pricing in any of its display advertising business components."

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 6.

**Topic No. 7**

For Google's Ariane and RASTA databases, Google's policies and practices regarding:
(a) The recording, storage, and retention of any experiments, evaluations, results, or analyses in or directly related to those databases.
(b) The selection of what data, whether generated directly from any display advertising business component at the log-level, aggregate level, in any proto-buffer, or any other form, to store in those databases and for any experiments, evaluations, results, or analyses that use, analyze, or access data from either database.
(c) The criteria for selection and sampling of data, including for statistical significance, representativeness, reliability, completeness, and any considerations of statistical or other bias, for those databases and for any experiments, evaluations, results, or analyses that use, analyze, or access data from either database.
(d) Use of the results, data, and analyses from those databases by Google's employees and executives including the evaluation or analysis of the following on Google's display advertising business components: (i) the impact or likely impact of proposed changes; (ii)

whether to make any changes to those components; (iii) the result or impact of any changes made; and (iv) the performance or operation of any of those components.
(e) The identities, including by name and/or title, of any Google employees or executives who approve any experiments, launch reports, or other analyses from those databases.

## Objection to Topic No. 7

Google objects to Topic No. 7 and its subparts as so broad and vague that it is not practicable for Google to prepare a corporate witness or witnesses to testify as to the matters encompassed within it. The Notice therefore fails to describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 7 as misleading and assuming facts not in evidence, to the extent it assumes that RASTA and Ariane are "databases" used for the "recording, storage, and retention" of data.

Google further objects to Topic No. 7 and its subparts as vastly overbroad, unduly burdensome, and disproportionate to the needs of the case because it is not limited to the products, claims, and defenses at issue in this Litigation.

Google further objects to Topic No. 7(a) as seeking improper discovery-on-discovery. Plaintiffs have no right to discovery of information that is not relevant to a party's claims or defenses, particularly when the discovery sought is collateral to the relevant issues. *See* Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 7.

## Topic No. 8

The definitions and topics regarding datasets produced by Google in this Litigation and the preceding Investigation:
(a) For the "Google Ads" dataset Google produced in this Litigation in response to Plaintiffs' RFP No. 7:

   i. The definitions of fields and of values within fields, as well as any numerical interrelations between fields;

(b) For the "DV360" dataset produced by Google in this Litigation in response to Plaintiffs' RFP No. 7:

   i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

   ii. Whether the values "auction_type_name" are mutually exclusive;

   iii. How certain fields may be used to calculate the net revenue retained by Google;

(c) For the "XP Daily" dataset produced by Google in this Litigation in response to Plaintiffs' RFP No. 7

   i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

   ii. How the field "product" relates to the field "pub_product" in other datasets;

   iii. Which values in the "product" field indicate that buyside product was used to make a purchase through AdX;

(d) For the "DV360 XBridge" dataset produced by Google in this Litigation in response to Plaintiff's RFP No. 7:

   i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

(e) For the "AdX/Open Bidding" dataset produced by Google in this Litigation in response to Plaintiff's RFP No. 7:

   i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

   ii. Which column contains information about the "(viii) ad buying tool used in AdX (e.g., The Trade Desk) or ad exchange used in Open Bidding (e.g., Index Exchange)" as described in the July 7, 2023, letter from David Pearl to Kelly D. Garcia;

   iii. Which column contains information about the "(vi) publisher (i.e., a DFP publisher ID and/or a web property ID)." as described in the July 7, 2023, letter from David Pearl to Kelly D. Garcia;

   iv. Whether and how to distinguish video, display, and audio ads within the field "creative_ad_format" or a combination of fields;

(f) For datasets "GOOG-AT-EDVA-DATA-000000002.csv" and "GOOG-AT-EDVA-DATA-000000007.xlsx" produced by Google in this Litigation:

   i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

   ii. Whether publishers may be uniquely identified by using these fields;

(g) For datasets "GOOG-AT-EDVA-DATA-000000005.xlsx" and "GOOG-AT-EDVA-DATA-000000007.csv" produced by Google in this Litigation:

   i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

   ii. Whether the figures the information in those datasets cover information worldwide or information restricted to the United States.

(h) For dataset "GOOG-AT-EDVA-DATA-000000006.xlsx" produced in this Litigation:

   i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

ii. Any actual or likely explanations Google has for missing network name, network parent name, and reservation type values;

(i) For dataset "GOOG-AT-EDVA-DATA-000000012":

i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

ii. Whether the "DISPLAY_OTHER" and "DISPLAY_IMAGE" values under the "ad_type" variable represent all display advertising in the data;

(j) For the data produced by Google in this Litigation and contained in the range GOOG-AT-EDVA-DATA-000000175 to -00385:

i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

ii. The interpretation of the "<undefined>" values in the fields that define the GDN publisher names;

iii. Whether there were any reporting or measurement changes during the time period contained in the dataset related to the "instream" indicator;

(k) For the dataset "GOOG-AT-EDVA-DATA-000000386" and any related data produced by Google in this Litigation in response to Plaintiffs' RFP No. 55:

i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

ii. The composition of fees in the "DV360_platform_fees" field and whether any operating costs, take rate, or other pricing information is included in the values provided for that variable;

(l) For the datasets "GOOG-AT-EDVA-DATA-000000002" and "GOOG-AT-EDVA-DATA-000000007" and any related data produced by Google in this Litigation in response to Plaintiffs' RFP No. 55:

i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

ii. Any explanation of any blank values in the "transaction_type" field, especially with respect to any relationship between those blank values and any open auction transaction;

iii. Any relationship those fees in the "total_queries" and "matched_queries" fields have to any impressions sold or purchased and any Google revenues;

iv. The 'Interpretation of zero and negative values in the variables "total_queries," "matched_queries," "impression," and "sellside_revenue_usd"'.

(m) For the datasets "GOOG-AT-EDVA-DATA-000000387" and "GOOG-AT-EDVA-DATA-000000388" and any related data produced by Google in this Litigation in response to Plaintiffs' RFP No. 55:

i. The definitions of fields and of values within fields, as well as numerical interrelations between fields;

ii. Costs included in the "google_net_revenue_usd" field and any relationship of that field to take rates, operating costs, or any other costs or revenues.

## **Objection to Topic No. 8**

Google objects to Topic No. 8 on the grounds that it contains multiple separate sub-parts

that, to the extent understandable, are more appropriately addressed through written responses.

Google further objects to Topic Nos. 8(a), 8(b), 8(c), 8(d), 8(e), 8(f)(ii), 8(g)(ii), 8(h)(ii), 8(i)(ii), 8(j), 8(k), 8(l)(ii), 8(l)(iii), and 8(m)(ii) as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding subject matters specifically addressed in Appendix A to Michael Freeman's August 1, 2023 letter to David Pearl.

Google further objects to Topic No. 8 because it would be unduly burdensome and disproportionate to the needs of the case to require Google to identify and prepare one or more corporate representatives to testify about the 14 different datasets identified in Topic No. 8, especially in light of the short time remaining before the close of fact discovery.

Google further objects to Topic No. 8 because the phrase "numerical interrelations between" that is contained within each subpart is vague and ambiguous in that it is undefined and it is unclear how the phrase differs in meaning from the phrase "relationship[s] between."

Google further objects to Topic No. 8(g) because the phrase "Whether the figures the information in those datasets cover information worldwide or information restricted to the United States" is vague and ambiguous in that the words "the figures" appear to have been included as a typographical error. Google will interpret this portion of Topic No. 8(g) as seeking testimony on "Whether the information in those datasets cover information worldwide or information restricted to the United States."

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 8, including about alternative methods for providing information sought by Topic No. 8, including providing a written response to Michael Freeman's letter of August 1, 2023.

**Topic No. 9**

For the data provided in the Google Ads, GAM, and DV360 log-level datasets listed in the July 28, 2023, letter from David Pearl to Michael J. Freeman that have been produced or that will be

produced in this Litigation and the GAM log-level data set that was produced in response to a CID issued by the United States that preceded this Litigation:

    (a) The use of the information and data contained in each dataset by Google's employees and executives in the ordinary course of Google's business;

    (b) The individual sources of information from which data was pulled, extracted, copied, or otherwise derived from each dataset including whether all fields and data from those individual sources of information were included in the log-level data sets;

    (c) The processes of pulling, assembling, and quality-checking these datasets as described in part in the July 28, 2023, letter from David Pearl to Michael J. Freeman; and

    (d) The definition of each field, variable, column, and/or value in each dataset including examples of ad formats contained in the data.

### **Objection to Topic No. 9**

Google objects to Topic No. 9 and each of its subparts as vague, ambiguous, overbroad and unduly burdensome, and therefore the Notice does not describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 9 and each of its subparts as unduly burdensome and disproportionate to the needs of the case, because they seek testimony about fields in GAM log-level data the United States has had in its possession since March 31, 2022, yet Plaintiffs waited until less than a month before the close of fact discovery to request information about those fields.

Google further objects to Topic No. 9(a) as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding the use by Google employees and executives of information and data contained in log-level datasets "in the ordinary course of Google's business" when Google has indicated in its responses and objections to RFPs 50 and 59 and letters dated May 26, 2023, June 9, 2023 and July 28, 2023 that such datasets do not exist in the ordinary course of business.

Google further objects to Topic No. 9(c) because it is irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information about Google's process for responding to Requests for Production 50 and 59 as opposed to any party's claims or defenses.

Google further objects to Topic No. 9(c) because it calls for information protected from discovery by the work product doctrine.

Google further objects to Topic No. 9(d) as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding subject matters specifically addressed in Appendix A to Michael Freeman's August 1, 2023 letter to David Pearl.

Google further objects to Topic No. 9(d) as unduly burdensome and disproportionate to the needs of the case, as evidenced by the fact that Plaintiffs waited until August 9, 2023 (less than one month before the close of fact discovery) to demand testimony about field definitions and related information, when they could have sought those details anytime after May 10, 2023 (the date when Google agreed to provide the log-level data sets) if it were truly important to their claims.

Google further objects to Topic No. 9(d) as duplicative of the information about the fields in the GAM log-level data set that Google previously provided in Laura Onken's August 12, 2021 email to John Hogan; Julie Elmer's October 7, 2021, March 31, 2022, and August 19, 2022 letters to John Hogan; and Julie Elmer's October 14, 2022 and November 30, 2022 letters to George Nierlich.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 9, including about alternative methods for providing information sought by Topics No. 9(a), 9(b), and 9(d).

**Topic No. 10**

For the GAM log-level bid dataset referenced in the July 14, 2023, letter from David Pearl to Michael J. Freeman:

> (a) Any reasons, including those listed in the letter, that "one cannot infer that a remnant line item competed in the GAM auction based solely on information in the inventory key-value for a given ad query."

(b) The percentages of impressions in the dataset for which line items are ineligible to compete in GAM auctions for the reasons listed on pages 2 and 3 of the July 14, 2023, letter.

**Objection to Topic No. 10**

Google objects to Topic No. 10(a) as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding subject matters specifically addressed in David Pearl's July 14, 2023 letter to Michael Freeman.

Google further objects to Topic No. 10(b) as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to analyze potentially thousands of line items within billions of Google Ad Manager (GAM) auctions to assess whether each line item was ineligible to compete for that auction and also determine the reason that each line item was ineligible.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 10, including about alternative methods for providing information sought by Topic No. 10(b).

**Topic No. 11**

For the Header Bidding Monitor datasets listed and referenced in the July 14, 2023, letter from David Pearl to Kelly D. Garcia:
(a) The individual sources of information from which data was pulled, extracted, copied, or otherwise derived for each dataset (or version thereof) including whether all fields and data from those individual sources of information were included in the datasets;
(b) The processes of pulling and assembling and, if applicable, quality-checking, the Header Bidding Monitor datasets;
(c) A list of the fields and types of data available in the "DRX-Internal-Stats" datasets referenced in that July 14, 2023, letter;
(d) The ways Google employees and executives use the "DRX-Internal-Stats" datasets referenced that July 14, 2023, letter in the ordinary course of business;
(e) A list of the fields and types of data available in the "Header-Bidding-Detection" datasets referenced in that July 14, 2023, letter;
(f) The ways Google employees and executives use the "Header-Bidding-Detection" datasets referenced that July 14, 2023, letter in the ordinary course of business;

- 29 -

(g) Explanations of the cause(s), whether actual or likely causes, of missing network name and/or network parent name information in these datasets;

(h) Explanations of the cause(s), whether actual or likely causes, of missing reservation type information in these datasets; and

(i) The ways Google employees and executives use the Header Bidding Monitor datasets, or any subset thereof, or the sources of data or information contained in these datasets in the ordinary course of Google's business.

**Objection to Topic No. 11**

Google objects to Topic Nos. 11(c) and 11(e) as duplicative, unduly burdensome, and disproportionate to the needs of the case because they seek testimony regarding subject matters duplicative of Plaintiffs' other discovery requests to which Google has already responded or is in the process of responding—namely, the header rows in GOOG-AT-EDVA-DATA-000000389 to -506 and GOOG-AT-EDVA-DATA-000012507 to -606, respectively.

Google further objects to Topic No. 11(b) because it is irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information about Google's process for responding to RFP 51 as opposed to any party's claims or defenses.

Google further objects to Topic No. 11(b) because it calls for information protected from discovery by the work product doctrine.

Google further objects to Topics No. 11(c) and (e) as duplicative, unduly burdensome, and disproportionate to the needs of the case because Google provided with the July 14, 2023 letter referenced in Topic No. 11 sample data sets for both "DRX-Internal_Stats" and "Header-Bidding-Detection," from which Plaintiffs can readily ascertain "the fields and types of data available" in these two datasets.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 11, including about alternative methods for providing information sought by Topic Nos. 11(a), 11(d), and 11(f)-(i).

**Topic No. 12**

Google's policies, procedures, and practices regarding the tracking of the frequency or prevalence of header bidding, including winning, losing, and ineligible bids, for or in relation to any of its display advertising business components including:

> (a) The processes and systems used by Google to identify those header bidding bids;
> (b) Google's estimates or measurements of the frequency, proportion, or prevalence of header bidding bids in any auctions run by or bid into by Google's display advertising business components; and
> (c) The use of information about header bidding, including measurements, analyses, and studies of the prevalence or proportion of header bidding, by Google employees and executives.

**Objection to Topic No. 12**

Google objects to Topic No. 12 and each of its subparts as vague, ambiguous, overbroad and unduly burdensome in that it seeks information "in relation to any of [Google's] display advertising business components," without describing with reasonable particularity the "components" to be covered during the examination.

Google further objects to Topic No. 12 as seeking information outside Google's custody and control because it seeks testimony regarding "Google's estimates or measurements of the frequency, proportion, or prevalence of header bidding bids in *any* auctions . . . bid into by Google's display advertising business components."

Google further objects to Topic No. 12(a) as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding "[t]he processes and systems used by Google to identify" header bidding bids, which Google previously described in Julie Elmer's November 18, 2021 letter to George Nierlich.

Google further objects to Topic No. 12(b) as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding "Google's estimates or measurements of the frequency, proportion, or prevalence of header bidding bids in any auctions

run by or bid into by Google's display advertising business components," information included, to the extent it exists, in the Header Bidding Monitor data set produced on July 7, 2023 in this litigation as GOOG-AT-EDVA-DATA-000000006.

Google further objects to Topic No. 12(c) as duplicative, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony regarding the "measurements, analyses, and studies of the prevalence or proportion of header bidding, by Google employees and executives," documents that would have been captured by Google's response to specifications in the Department of Justice's CID 30120 and CID 30471, as well as Request for Production of Documents No. 29, which seeks "All documents created, altered, sent, or received after October 20, 2019 relating to Header Bidding, the PreBid Standard, and proprietary implementations of Header Bidding."

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 12.

**Topic No. 13**

Google's measurement, evaluation, and understanding of the value, whether expressed as dollar amounts or some other metric, whether monetary or non-monetary and whether measured by the quality, utility, or usefulness of any data, its bid, pricing, audience, targeting, or related data by its executives, engineers, product managers, and employees. For clarity, this includes Google's measurement, evaluation, and understanding of the value of any data whether considered alone or in conjunction with other datasets with the following considerations:

    (a) Whether the joining, simultaneous use, or any other linkage or association of the data with any other data or dataset increases, decreases, or causes any change in the value, whether considered on a monetary or non-monetary basis;

    (b) The source of data or datasets, including from display advertising customers (publisher and advertisers), end users, third-parties and third-party competitors (e.g., non-Google exchanges, ad networks, etc.), Google's other products and services (e.g., Search, GMail, YouTube, signed in with Google, etc.); and

    (c) Google's use of the data or datasets, including for ad targeting, audience identification, impression pricing, arbitrage, dynamically varying and calculating optimal prices or revenue shares, diagnostic purposes, ad and impression quality, spam and fraud considerations, and for any other purpose.

**Objection to Topic No. 13**

Google objects to Topic No. 13 and its subparts as so broad and vague that it is not practicable for Google to prepare a corporate witness or witnesses to testify as to the matters encompassed within it. The Notice therefore fails to describe with reasonable particularity the matters for examination.

Google objects to Topic No. 13 as vague, ambiguous, unduly broad, overly burdensome, disproportionate to the needs of the case, and failing to describe with reasonable particularity the matters for examination because it seeks information about "any data," without (i) any further identification of the types of data; (ii) any limitation on the "source" of such data (as sub-part (b) "includ[es]" data "from display advertising customers (publisher and advertisers), end users, third-parties and third-party competitors (e.g., non-Google exchanges, ad networks, etc.), Google's other products and services (e.g., Search, GMail, YouTube, signed in with Google, etc.)"); or (iii) any limitation on how Google may use such data (as sub-part (c) "includ[es]" data used for numerous specific purposes and "for any other purpose").

Google further objects to Topic No. 13 as vague, ambiguous, unduly broad, overly burdensome, disproportionate to the needs of the case, and failing to describe with reasonable particularity the matters for examination because it seeks information about (i) all kinds of "value," explicitly encompassing all "monetary and "non-monetary" measures of value, and without specifying the perspective from which measures of "quality, utility, or usefulness" are to be assessed or the manner in which those metrics are to be assessed; and (ii) the value of data "considered alone or in conjunction with other datasets," even though there are virtually infinite combinations of ways that data can be combined.

Subject to the foregoing objections, Google is willing to meet and confer about Topic No. 13.

## Topic No. 14

Google's processes for measuring and evaluating the impact of the collection of data of any type on its business performance or processes including the operation and optimization of auctions, dynamic allocation, dynamic revenue share, bid predictions, smart bidding, impression pricing, and spam, fraud, and ad quality whether as an absolute measure or relative measure (including with respect to any competitors).

## Objection to Topic No. 14

Google objects to Topic No. 14 as so broad and vague that it is not practicable for Google to prepare a corporate witness or witnesses to testify as to the matters encompassed within it. The Notice therefore fails to describe with reasonable particularity the matters for examination.

Google objects to Topic No. 14 as vague, ambiguous, unduly broad, overly burdensome, disproportionate to the needs of the case, and failing to describe with reasonable particularity the matters for examination because it seeks information about Google's processes for measuring and evaluating the impact of the collection of data of "any type" on its business performance or processes, without any limitation on the types of data at issue.

Google further objects to Topic No. 14 as vague, ambiguous, unduly broad, overly burdensome, disproportionate to the needs of the case, and failing to describe with reasonable particularity the matters for examination because it seeks information about all data "on its business performance or processes," without specifying what type of performance or processes Plaintiffs believe are relevant.

Google further objects to Topic No. 14 as vague, ambiguous, unduly broad, overly burdensome, disproportionate to the needs of the case, and failing to describe with reasonable particularity the matters for examination because it seeks information about Google's processes

for measuring and evaluating "the impact" of the collection of data without any limitation on types

of impacts at issue or on which individuals or entities Plaintiffs believe the impacts are relevant.

Subject to the foregoing objections, Google is willing to meet and confer about Topic No.

14.

**Topic No. 15**

From January 1, 2010 to the present, how data is passed, shared, or exchanged among or between
Google Ad Manager, Google Display & Video 360, Google Ads, and any other product offered by
Google that facilitates the sale or purchase of digital display advertising, and all subsidiary
products and predecessor products (including DoubleClick for Publishers or DFP, AdX,
DoubleClick Bid Manager or DBM, AdWords, AdMeld, and AdSense for Content) and:
    (a) Identification or descriptions of the contents of that data;
    (b) How Google's products, employees, and executives use that data in the ordinary course
    of Google's business; and
    (c) How these data differ from data transmitted from Google products to third-party ad tech
    products.

**Objection to Topic No. 15**

Google objects to Topic No. 15 and its subparts as so broad and vague that it is not

practicable for Google to prepare a corporate witness or witnesses to testify as to the matters

encompassed within it. The Notice therefore fails to describe with reasonable particularity the

matters for examination.

Google further objects to Topic No. 15 and its subparts as overbroad, unduly burdensome,

and disproportionate to the needs of the case because it seeks testimony covering a period of more

than 13 years.

Google further objects to Topic No. 15 as duplicative, overbroad, unduly burdensome, and

disproportionate to the needs of the case because it seeks the same type of information covered by

Request for Production of Documents No. 46 and Plaintiffs previously "agree[d] to Google's

proposed method of identifying and producing documents in response to" that Request, while reserving rights (see Kelly Garcia's May 22, 2023 email to David Pearl).

Google further objects to Topic No. 15 as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony related to "how data is passed, shared, or exchanged among or between . . . any [] product offered by Google that facilitates the sale or purchase of digital display advertising," regardless of the relevance of any such data to any party's claims or defenses in these Actions and regardless of how tenuous the connection between the data and the "product offered by Google that facilitates the sale or purchase of digital display advertising." For instance, Topic No. 15 seeks testimony describing each type of data-related interaction between Google Display & Video 360 and AdSense for Content as they currently operate, no matter how small or insignificant the interaction, but also information describing every possible variation of those interactions over the last 13+ years.

If Topic No. 15 seeks testimony concerning products other than Google Ad Manager, AdSense for Content, Google Ads, and DV360, Google objects to the request as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.

Subject to the foregoing objections, Google is willing to meet and confer about Topic No. 15, including about alternative methods for providing information sought by Topic No. 15, including identifying and producing documents in response to Request for Production of Documents No. 46, as previously agreed.

**Topic No. 16**

From January 1, 2010 to the present, identification of any datasets accessible to and accessed by the following products (including those accessible to multiple products): Google Ad Manager, Google Display & Video 360, Google Ads, and any other product offered by Google that facilitates the sale or purchase of digital display advertising, and all subsidiary products and predecessor

products (including DoubleClick for Publishers or DFP, AdX, DoubleClick Bid Manager or DBM, AdWords, AdMeld, and AdSense for Content) and:

      (a) Descriptions of the contents of that data; and

      (b) How Google's products, employees, and executives use that data in the ordinary course of Google's business.

## Objection to Topic No. 16

Google objects to Topic No. 16 and its subparts as so broad and vague that it is not practicable for Google to prepare a corporate witness or witnesses to testify as to the matters encompassed within it. The Notice therefore fails to describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 16 and its subparts as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony covering a period of more than 13 years.

Google further objects to Topic No. 16 as duplicative, overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks the same type of information covered by Request for Production of Documents No. 47 and Plaintiffs previously "agree[d] to Google's proposed method of identifying and producing documents in response to" that Request, while reserving rights (see Kelly Garcia's May 22, 2023 email to David Pearl).

Google further objects to Topic No. 16 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to produce testimony about "any datasets accessible to and accessed by" Google Ad Manager, Google Display & Video 360, Google Ads, and "any other product offered by Google that facilitates the sale or purchase of digital display advertising" regardless of the relevance of any such data to any party's claims or defenses in these Actions and regardless of how tenuous the connection between the data and the Google product that "facilitates the sale or purchase of digital display advertising."

Google further objects to Topic No. 16 as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide testimony about "any datasets accessible and accessed by" the Google products that "facilitates the sale or purchase of digital display advertising" but provides no discernible limit on what makes a dataset "accessible" (as opposed to accessed) by the Google product that "facilitates the sale or purchase of digital display advertising."

Google further objects to Topic No. 16 as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks testimony about "data and datasets" that customers themselves upload into Google's products and the burden of educating a designee about such data and datasets, which may be used by only one or a small number of customers, is not proportionate to the relevance of such information to any party's claims or defenses in this litigation.

If Topic No. 16 seeks testimony concerning products other than Google Ad Manager, AdSense for Content, Google Ads, and DV360, Google objects to the request as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.

Subject to the foregoing objections, Google is willing to meet and confer about Topic No. 16, including about alternative methods for providing information sought by Topic No. 16, including identifying and producing documents in response to Request for Production of Documents No. 47, as previously agreed.

**Topic No. 17**

The nature, function, and operation of each of the following, including any data and algorithms utilized:
    (a) Google's incorporation of DoubleClick products into any of its existing products;
    (b) Google Ads' bidding and buying of digital display advertising impressions on AdX, other ad exchanges, and any other of digital display advertising;

(c) AdX's bidding and buying of digital display advertising impressions from publishers including any restrictions, limitations, or distinctions when AdX bids for or buys digital advertising impressions from publishers utilizing DFP versus publishers utilizing another Publisher Ad Server;

(d) Dynamic Allocation, including any contractual or technical limitations imposed by Google on the ability of any ad exchange to utilize dynamic allocation or bid in real-time for digital display advertising impressions;

(e) Any contractual or technical limitation on a publisher's ability to utilize technology that dynamically or programmatically allocates ad calls based on actual or estimated real-time pricing information;

(f) DFP's transmission of information to AdX prior to AdX conducting an auction for a digital display advertising impression, including information related to price floors or the price of any line item in DFP;

(g) Google's incorporation of AdMeld products and technology into its existing products, and the discontinuation of any AdMeld product, technology, or research/development project;

(h) Project Bell;

(i) Sell-side Dynamic Revenue Share;

(j) Project Poirot, including (i) the bases by which it lowers bids, (ii) how Poirot applies to AdX; (iii) how Poirot applies to other exchanges; and (iv) how predicted highest other bid works, including how predicted highest other bid interacts with Poirot and how predicted highest other bid affects the bids submitted by AdX;

(k) Project Bernanke;

(l) Project Alchemist;

(m) Unified Pricing Rules; and

(n) Smart Bidding.

## **Objection to Topic No. 17**

Google objects to Topic No. 17 and each of its subparts as unduly burdensome and disproportionate to the needs of the case because it seeks duplicative and cumulative testimony regarding subject matters already asked and answered in prior depositions of Google employees. DOJ has conducted more than 30 depositions of current and former Google employees in its pre-suit investigation of Google, and has noticed nine more in this litigation. Many of those deponents provided testimony about Topic No. 17.

Google further objects to Topics No. 17 and each of its subparts as seeking duplicative and cumulative testimony regarding subject matters set forth in the engineer declarations Google produced to Plaintiffs on August 7, 2023.

Google further objects to Topic No. 17 and each of its subparts as vague and ambiguous because the term "nature" is undefined and it is unclear how the term differs in meaning from "function" and "operation."

Google further objects to Topic No. 17(e) as vague and ambiguous because the phrase "ad calls" is undefined.

Google further objects to Topic Nos. 17(c), 17(d), and 17(e) as misleading, assuming facts not in evidence, and seeking a legal conclusion to the extent they assume "contractual or technical limitation[s]."

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 17.


**Topic No. 18**

All procompetitive justifications or benefits for each of the following:
    (a) Google's acquisition of DoubleClick;
    (b) Google's restriction of Google Ads' advertiser demand exclusively to AdX;
    (c) Google's restriction of effective real-time access to AdX exclusively to DFP;
    (d) Google's limitation of dynamic allocation bidding techniques exclusively to AdX;
    (e) Google's providing AdX with a "last look" auction advantage over rival exchanges;
    (f) Google's acquisition of AdMeld;
    (g) Google's use of Project Bell;
    (h) Google's deployment of sell-side Dynamic Revenue Share;
    (i) Google's use of Project Poirot; and
    (j) Google's introduction of Unified Pricing Rules.

**Objection to Topic No. 18**

Google objects to Topic No. 18 and each of its subparts as improperly seeking a legal conclusion and expert analysis.

Google further objects to Topic Nos. 18(b), 18(c), 18(d), and 18(e) as misleading, assuming facts not in evidence, and seeking a legal conclusion to the extent they assume "restrictions," "limitations," or an "advantage over rival exchanges."

Google further objects to Topic No. 18 and each of its subparts as overbroad, unduly burdensome, disproportionate to the needs of the case, and failing to describe with reasonable particularity the matters for examination because it seeks "*all* procompetitive justifications or benefits" for each item listed. Google cannot practicably designate and produce a reasonable number of corporate representatives within the designated time period who will be knowledgeable of all justifications or benefits.

Google objects to Topic No. 18 and each of its subparts as unduly burdensome and disproportionate to the needs of the case because it seeks duplicative and cumulative testimony regarding subject matters already asked and answered in prior depositions of Google employees. DOJ has conducted more than 30 depositions of current and former Google employees in its pre-suit investigation of Google, and has noticed nine more in this litigation. Many of those deponents provided testimony about Topic No. 18.

Google further objects to Topics No. 18 and each of its subparts as seeking duplicative and cumulative testimony regarding subject matters set forth in the engineer declarations Google produced to Plaintiffs on August 7, 2023.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 18.

**Topic No. 19**

Google's business relationships with advertisers and advertising agencies, including the Federal Agency Advertisers.

**Objection to Topic No. 19**

Google objects to Topic No. 19 as overbroad, unduly burdensome, not stated with reasonable particularity, and disproportionate to the needs of the case, because it purports to require

the designated representative to acquire knowledge and testify regarding Google's business relationships with an unspecified and potentially vast number of firms.

Google further objects to Topic No. 19 as vague and ambiguous with respect to the term "business relationships."

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 19.

**Topic No. 20**

Google's marketing efforts directed towards advertisers, including the Federal Agency Advertisers.

**Objection to Topic No. 20**

Google objects to Topic No. 20 as overbroad, unduly burdensome, not stated with reasonable particularity, and disproportionate to the needs of the case, because it purports to require the designated representative to acquire knowledge and testify regarding an unspecified and potentially vast number of advertisers.

Google further objects to Topic No. 20 as vague and ambiguous with respect to the term "marketing efforts."

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 20.

**Topic No. 21**

Communications with advertising agencies involving advertising campaigns for the Federal Agency Advertisers.

**Objection to Topic No. 21**

Google objects to Topic No. 21 as overbroad, unduly burdensome, not stated with reasonable particularity, and disproportionate to the needs of the case because it purports to require the designated representative to acquire knowledge and testify regarding "communications" with an unspecified and potentially large number of firms.

Google objects to Topic No. 21 as so broad and vague as to the undefined term "communications" that it is not practicable for Google to prepare a corporate witness or witnesses to testify as to the matters encompassed within it. The Notice therefore fails to describe with reasonable particularity the matters for examination.

Google further objects to Topic No. 21 as vague and ambiguous as to the phrase "involving advertising."

Google further objects to Topic No. 21 as duplicative, overbroad, and unduly burdensome because it purports to require Google's designated representative to acquire knowledge or information regarding communications with advertising agencies that are equally accessible to Plaintiffs.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 21.

**Topic No. 22**

The identification and Google's understanding of terms of contracts, agreements, or arrangements involving purchases of display advertising by or on behalf of the Federal Agency Advertisers.

**Objection to Topic No. 22**

Google objects to Topic No. 22 as seeking a legal conclusion and information protected by the attorney-client privilege and work product doctrine.

Google further objects to Topic 22 as vague, ambiguous, and failing to describe with reasonable particularity the matters for examination with respect to the undefined terms "identification," "understanding" and "arrangements."

Google further objects to Topic No. 22 as overbroad, unduly burdensome, not stated with reasonable particularity, and disproportionate to the needs of the case because it purports to require Google's designated representative to acquire knowledge or information regarding topics equally or more accessible to Plaintiffs.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 22.

## Topic No. 23

Any justifications or facts Google has that divestiture or other separation, whether by firewalls or any internal separations within Google or its parent company, Alphabet, Inc., of any of its display advertising business components, would be harmful to its products, consumers, publishers, advertisers, competitors, or users who visit web pages.

## Objection to Topic No. 23

Google objects to Topic No. 23 as premature and speculative given the Court's ruling on Plaintiffs' motion to bifurcate discovery and defer discovery regarding remedies. *See* ECF No. 283.

Google further objects to Topic No. 23 as seeking information protected by the attorney-client privilege and the work product doctrine.

Google further objects to Topic No. 23 as improperly seeking expert analysis.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 23.

## Topic No. 24

Identification of any technical infrastructure that Google contends cannot be separated from or used to support any of its display advertising business components if Google were ordered to divest any of its products. In addition, any justifications or facts supporting Google's positions regarding the inability or infeasibility of separating any technical infrastructure.

**Objection to Topic No. 24**

Google objects to Topic No. 24 as premature and speculative given the Court's ruling on Plaintiffs' motion to bifurcate discovery and defer discovery regarding remedies. *See* ECF No. 283.

Google further objects to Topic No. 24 as seeking information protected by the attorney-client privilege and the work product doctrine.

Google further objects to Topic No. 24 as improperly seeking expert analysis.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 24.

**Topic No. 25**

Google's document retention policies, including (a) its preservation policies and practices for instant messages or chats; (b) any litigation hold(s) that Google issued with respect to this Investigation or Litigation; and (c) whether, when, and in what circumstances Google suspended its 24-hour auto-delete policy for chat messages for chat messages related to this Investigation or Litigation and/or other ongoing or reasonably-anticipated litigations and/or investigations.

**Objection to Topic No. 25**

Google objects to Topic No. 25 as seeking improper discovery-on-discovery.  Plaintiffs have no right to discovery of information that is not relevant to a party's claims or defenses, particularly when the discovery sought is collateral to the relevant issues.  *See* Fed. R. Civ. P. 26(b)(1).

Google further objects to Topic No. 25 as seeking information protected by the attorney-client privilege and the work product doctrine.

Google further objects to Topic No. 25 because it is overbroad, unduly burdensome, not stated with reasonable particularity, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested, which calls for discovery-on-discovery concerning topics unrelated to the claims and defenses in this Litigation.

Google further objects to Topic No. 25 as unduly burdensome and disproportionate to the needs of the case because it seeks duplicative and cumulative testimony regarding subject matters already asked and answered in prior depositions of Google employees. DOJ has conducted more than 30 depositions of current and former Google employees in its pre-suit investigation of Google, and has noticed nine more in this litigation. Many of those deponents provided testimony about Topic No. 25.

Google further objects to Topic No. 25 because it is overbroad, unduly burdensome, not stated with reasonable particularity, an unsuitable topic for a 30(b)(6) deposition, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested, which calls for discovery-on-discovery concerning potentially every employee at the company.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 25.

**Topic No. 26**

The extent to which any document custodian in this case conducted chats with the default "history off" setting enabled, including: (a) each employee subject to a litigation hold that may have conducted or did conduct "history off" chats regarding matters potentially relevant to this Investigation or Litigation, and the extent to which they did so; and (b) any direction or statements that Google provided to its employees about conducting chats with the "history off" or "off the record."

**Objection to Topic No. 26**

Google objects to Topic No. 26 as seeking improper discovery-on-discovery.  Plaintiffs have no right to discovery of information that is not relevant to a party's claims or defenses, particularly when the discovery sought is collateral to the relevant issues.  *See* Fed. R. Civ. P. 26(b)(1).

Google further objects to Topic No. 26 as seeking information protected by the attorney-client privilege and the work product doctrine.

Google further objects to Topic No. 26 as unduly burdensome and disproportionate to the needs of the case because it seeks duplicative and cumulative testimony regarding subject matters already asked and answered in prior depositions of Google employees. DOJ has conducted more than 30 depositions of current and former Google employees in its pre-suit investigation of Google, and has noticed nine more in this litigation. Many of those deponents provided testimony about Topic No. 26.

Google further objects to Topic No. 26 because it is overbroad, unduly burdensome, not stated with reasonable particularity, an unsuitable topic for a 30(b)(6) deposition, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested, which calls for discovery-on-discovery concerning more than 150 individual custodians.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 26.

**Topic No. 27**

Google's efforts, if any, to monitor or audit whether document custodians in this case turned their chat history "on" when discussing matters potentially relevant to this Litigation and the preceding Investigation.

**Objection to Topic No. 27**

Google objects to Topic No. 27 as seeking information protected by the attorney-client privilege and the work product doctrine.

Google further objects to Topic No. 27 as seeking improper discovery-on-discovery. Plaintiffs have no right to discovery of information that is not relevant to a party's claims or defenses, particularly when the discovery sought is collateral to the relevant issues. *See* Fed. R. Civ. P. 26(b)(1).

Google further objects to Topic No. 27 because it is overbroad, unduly burdensome, not stated with reasonable particularity, an unsuitable topic for a 30(b)(6) deposition, and disproportionate to the needs of the case for a designated representative to acquire the knowledge requested, which calls for discovery-on-discovery concerning more than 150 individual custodians.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 27.

**Topic No. 28**

The factual basis for Google's Tenth and Thirteenth Affirmative Defenses.

**Objection to Topic No. 28**

Google objects to Topic No. 28 to the extent it seeks information protected by the attorney-client privilege and the work product doctrine.

Google further objects to Topic No. 28 because it seeks testimony regarding the basis or scope of Google's legal claims or defenses. The scope of Topic No. 28 is not appropriate for a 30(b)(6) deposition and is more properly addressed through written response.

Google further objects to Topic No. 28 as cumulative and duplicative of Interrogatory Nos.

7 and 8 and Request for Production Nos. 62 and 63 to which Google has already responded.

Subject to and without waiving these objections, Google is willing to meet and confer about

Topic No. 28.

**Topic No. 29**

The factual basis for Google's affirmative defenses of laches, waiver, and estoppel as set forth in its Answer.

**Objection to Topic No. 29**

Google objects to Topic No. 29 to the extent it seeks information protected by the attorney-

client privilege and the work product doctrine.

Google further objects to Topic No. 29 because it seeks testimony regarding the basis or

scope of Google's legal claims or defenses. The scope of Topic No. 29 is not appropriate for a

30(b)(6) deposition and is more properly addressed through written response.

Google further objects to Topic No. 29 as cumulative and duplicative of Interrogatory No.

10 and Request for Production No. 73 to which Google has already responded.

Subject to and without waiving these objections, Google is willing to meet and confer about

Topic No. 29.

**Topic No. 30**

The factual basis for the interrogatory responses provided in Google's Response to Plaintiff States' Fourth Set of Interrogatories.

**Objection to Topic No. 30**

Google objects to Topic 30 as unduly burdensome because it is duplicative and cumulative

of Topic No. 29. Google incorporates herein its objections to Topic 29.

- 49 -

Google further objects to Topic No. 30 as seeking information protected by the attorney-client privilege and the work product doctrine.

Subject to and without waiving these objections, Google is willing to meet and confer about Topic No. 30.

Dated: August 14, 2023                    Respectfully submitted,

                                          */s/ Julie S. Elmer*
                                          Eric Mahr (*pro hac vice*)
                                          Julie S. Elmer (*pro hac vice*)
                                          Justina Sessions (*pro hac vice*)
                                          Andrew J. Ewalt (*pro hac vice*)
                                          Lauren Kaplin (*pro hac vice*)
                                          Jeanette Bayoumi (*pro hac vice*)
                                          Sara Salem (*pro hac vice*)
                                          Tyler Garrett (VSB # 94759)
                                          FRESHFIELDS BRUCKHAUS
                                          DERINGER US LLP
                                          700 13th Street NW, 10th Floor
                                          Washington, DC 20005
                                          Telephone: (202) 777-4500
                                          Facsimile: (202) 777-4555
                                          Email: eric.mahr@freshfields.com

                                          Jeannie H. Rhee (*pro hac vice*)
                                          Karen L. Dunn (*pro hac vice*)
                                          William A. Isaacson (*pro hac vice*)
                                          Joseph Bial (*pro hac vice*)
                                          Amy J. Mauser (*pro hac vice*)
                                          Martha L. Goodman (*pro hac vice*)
                                          Bryon Becker (VSB #93384)
                                          Erica Spevack (*pro hac vice*)
                                          PAUL, WEISS, RIFKIND, WHARTON &
                                          GARRISON LLP
                                          2001 K Street, NW
                                          Washington, DC 20006-1047
                                          Telephone: (202) 223-7300
                                          Facsimile: (202) 223-7420
                                          Email: jrhee@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
Email: mdearborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: ejmorgan@paulweiss.com

Daniel S. Bitton (*pro hac vice*)
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
Email: bjustus@axinn.com
kwongervin@axinn.com

CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: Craig.reilly@ccreillylaw.com

*Counsel for Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on August 14, 2023, I served the foregoing to all counsel of record via email.

*/s/ Sara Salem*

                               Sara Salem
                               FRESHFIELDS BRUCKHAUS
                               DERINGER US LLP
                               700 13th Street NW, 10th Floor
                               Washington, DC 20005