IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| UNITED STATES, et al., | ) |
| | ) |
|       Plaintiffs, | ) |
|  v. | )   No. 1:23-cv-00108-LMB-JFA |
| | ) |
| GOOGLE LLC, | ) |
| | ) |
|       Defendant. | ) |

**PLAINTIFF UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA RESPONSIVE TO REQUESTS FOR PRODUCTION 60 AND 76**

The United States seeks an order compelling production of transaction and invoice information related to federal agency purchases that is essential to the United States' damages claim and is currently in Google's possession and control in a far more convenient and manageable format than that information is accessible to the United States. The end of fact discovery is imminent, and despite the United States' best efforts to decipher transaction data produced by Google in response to Plaintiffs' Request for Production No. 60 ("RFP 60"), it cannot do so without additional information from Google. Beyond what has been produced in response to RFP 60, the United States issued timely requests for invoice data through Plaintiffs' Request for Production No. 76 ("RFP 76"). The additional information requested through follow ups with counsel and through the issuance of RFP 76 is necessary to ensure the United States has access to the best and most comprehensive available evidence to allow its experts to compute overcharges resulting from Google's anticompetitive conduct and to validate and confirm purchase information collected from dozens of different sources, including FAAs and their advertising agency contractors, in a multitude of different forms, including scanned documents. The United States respectfully requests that the Court compel Defendant Google to produce the

1

requested data with sufficient fields to allow for a complete understanding of Google's earnings from Federal Agency Advertisers ("FAAs"), or in the alternative, to submit declarations from Google employees familiar with the data attesting to the fact that the requested information does not exist.

## BACKGROUND

**1. Request for Production 60 Seeks Transaction Datasets Regarding Federal Agency Advertiser ("FAA") Purchases of Ads Using Google Products.**

The United States served its fourth set of requests for production on May 5, 2023, including Request for Production 60 ("RFP 60"), which asks for monthly aggregate transaction data reflecting FAA purchases of ads using Google products that will allow the United States to compute overcharges resulting from Google's anticompetitive conduct:

> To the extent not already produced in response to Request No. 56, for all advertising purchased or won by any Federal Agency Advertiser since January 1, 2019, separately for Google Ads, DV360, and AdX, monthly aggregate data on the number of impressions served, attributed clicks, attributed conversions, completed video views, the gross and net revenue associated with any transactions, traffic acquisition costs, any fees, whether basic or additional, collected by Google, any discounts provided by Google, and any other items that are used to calculate net revenue, broken down by advertiser name, advertiser ID, ad agency name, campaign ID, DSP or advertiser ad network, ad exchange, publisher ad server, advertiser ad server, end-user location (e.g., US or non-US), publisher location (e.g., US or non-US), type of inventory (e.g., open web, mobile app, connected TV, etc.), ad format (e.g., static display, instream video, native, etc.), and type of ad transaction or deal (e.g., open auction, open bidding, exchange bidding programmatic guaranteed, programmatic direct, direct).

Google served objections to Plaintiffs' fourth requests for production on May 22, 2023, and it served responses on June 5, 2023. Following meet and confers to discuss Plaintiffs' requests, Google agreed to produce, for the period January 2014 to December 2022, monthly aggregate data reflecting open web display transactions through Google products including

2

Google Ads, DV360, AdX, and Open Bidding. Google agreed to produce monthly aggregate data including total impressions, total clicks, total amount paid by customers, and total amount paid to publishers or third-party exchanges. Google also agreed to investigate whether alternative sources from Google's Finance group might include monthly aggregated data for earlier periods of time.

After reviewing the data Google produced in response to RFP 60, the United States responded by letter on August 4, 2023. First, the United States asked that Google produce sufficient fields in the datasets to allow matching transactions across the several datasets it had produced in response to RFP 60. The United States proposed potential solutions to match the transactions across the datasets, noting that Plaintiffs have limited visibility into the fields available to Google in its own data. The United States explained that it could not match transactions between the AdX and XP datasets, AdX and DV360 datasets, or the AdX and Google Ads datasets without certain unproduced fields. Alternatively, the United States asked Google to identify the fields in the XP datasets that would allow the United States to calculate gross and net revenues. Given that the end of fact discovery was approaching, the United States asked Google to respond by close of business on August 11, 2023. The United States was not able to meaningfully discuss the issue with counsel until August 25. The United States reiterated via email ahead of the meet and confer that the United States sought sufficient fields to match transactions between the various datasets produced in response to RFP 60.

The parties met and conferred on August 25, 2023, to discuss RFP 60 and 76. Ahead of that discussion, Plaintiffs provided Google with a concrete proposal in writing. The United States requested again that Google reproduce the RFP 60 datasets with fields that would allow for matching transactions between datasets. In response to counsel's representations that

3

Google's own data may not contain the information requested, the United States asked Google to provide a declaration from a Google employee with knowledge of these systems attesting to the fact that the requested information does not exist. The United States also provided the names of multiple fields they believed could match transactions between datasets, and again reiterated their request regarding production or a declaration, either of which would allow the United States' experts to move forward with their analyses.

2. **Request for Production 76 Seeks Invoice Data and Actual Amounts Paid after Adjustments Regarding Federal Agency Advertiser Purchases of Ads from Google.**

The United States served its eleventh set of requests for production on August 7, 2023, which included Request for Production 76 ("RFP 76") regarding all invoicing data issued by Google to any entity for purchases of display advertising made by or on behalf of any FAA:

> For all advertising purchased or won by any Federal Agency Advertiser since January 1, 2019, all invoicing data reflecting invoices issued by Google to any entity (e.g., Federal Agency Advertiser, ad agency, media buying vendor) for purchases of display advertising made by or on behalf of any Federal Agency Advertiser and monthly aggregate data from Campaign Manager showing all fields reflecting information about FAA purchases including but not limited to the number of impressions served, attributed clicks for such impressions, attributed conversions for such impressions, attributed sales for such impressions, completed video views, any other attributed activity for such impressions, all financial fields, such as gross and net purchases, traffic acquisition costs, any fees and the identity of the recipient of such fees, any discounts, all description fields, and any other fields in Campaign Manager with particular campaigns or purchases associated with any FAA, broken down by advertiser name (including information necessary to map advertiser parent, company, and division to other Google data sets), advertiser ID, ad agency name, campaign ID, DSP or advertiser ad network, ad exchange, publisher ad server, advertiser ad server, end-user location (e.g., US or non-US), publisher location (e.g., US or non-US), type of inventory (e.g., open web, mobile app, connected TV, etc.), ad format (e.g., static display, instream video, native, etc.), and type of ad transaction or deal (e.g., open auction, open bidding, exchange bidding

>programmatic guaranteed, programmatic direct, direct). Include any identifiers that would enable data produced under this request to be linked to each other and to datasets Google has produced or will produce from Google Ads, DV360, AdX and XP Daily.

Google served objections to Plaintiffs' eleventh requests for production on August 22, 2023. Regarding RFP 76, Google objected on grounds of vagueness, overbreadth, and that the request was duplicative of RFP 60, but not on relevance grounds. As discussed with Google via email, the United States had reason to believe that Google was in possession of invoicing data that would reflect discounts and other billing reductions, as well as account ID, account name, billing ID, and billing name. Full and complete responses to RFP 76 would allow Plaintiffs to determine the actual amounts Google billed, after they adjusted for invalid traffic, discounts, or other deviations. Google's invoicing data that the United States seeks in RFP 76 is the best—if not the only—comprehensive source of information about what FAAs actually paid, net of any fees and charges, thus it is necessary for an accurate computation of damages. The data in Google's systems is also standardized and can be compared across FAAs and ad agencies, where the information FAAs and their agencies receive containing this information in the ordinary course of business is in the form of documents, some of which are scanned papers that may not always have been maintained in the same format across FAAs and their agencies, creating data validation and aggregation issues for the United States' experts.

In response to Google's objections, the United States promptly followed up with a request to meet and confer. Ahead of the meet and confer, the United States sent a list of combined advertiser and ad agency IDs for both DV360 and Google Ads, derived from the information Google produced in response to RFP 60. When Google responded that those IDs were insufficient to link to invoice data, the United States reviewed Google's production and found documents that indicated that the IDs the United States had sent could be linked to invoice data, and identified

5

those document for Google on their August 25, 2023 meet and confer on RFP 60 and 76. The United States requested that Google agree to search for the FAA invoice data as requested, and produce that data (with all relevant fields, including any fields that would facilitate the matching of this information to data produced in response to RFP 60, to the extent such fields exist) before the end of the fact discovery period. If Google was unable to provide this invoice data with sufficient fields to link the data to the information produced in response to RFP 60, or was otherwise unable to produce a complete set of FAA invoice data with the relevant fields specifically requested, the United States asked that Google agree to provide a declaration from a Google employee with knowledge of these systems attesting to the fact that the requested information does not exist. Again, this would allow the United States' experts to move forward with their damages analyses, using the best available data.

As of the time of this filing, the United States believes the parties are at an impasse, necessitating this motion to compel.

## ARGUMENT

### A. Legal Standard

The Federal Rules of Civil Procedure entitle a party "to discover any material that is relevant to any party's claim or defense, is nonprivileged, and is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019). This right to relevant discovery includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Tube-Mac Indus., Inc. v. Campbell*, No. 2:20CV197, 2021 WL 6332354, at *1 (E.D. Va. June 10, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Federal Rule of Civil Procedure 37 and Local Civil Rule 37(A) allow parties to seek a court order to compel responses to discovery requests. The party refusing

discovery "generally bears the burden to prove why the requested evidence is not discoverable." *BASF Plant Sci.*, 2019 WL 8108060, at *2.

Rule 34(a) allows a party to request production of documents or electronically stored information "stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a *reasonably usable form*[.]" (emphasis added). The Advisory Committee Notes to Rule 34 explain, "Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information." *See Heredia v. Sunrise Senior Living LLC*, 2020 WL 4390378, *2-3 (C.D. Cal. July 20, 2020) (considering Rule 37 sanctions against producing party that ignored requests to schedule telephone call to discuss issues raised concerning the accessibility of electronic document production, citing Advisory Committee Notes).

On April 20, 2023, the Court entered an Order Regarding Electronically Stored Information ("ESI") (Dkt. No. 142), which states, "the parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter to promote the just, speedy, and inexpensive determination' of this action, as required by Fed. R. Civ. P. 1. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1)." *See Baker v. Curtis W. Key Plumbing Contractors, Inc*., No. 2:15-CV-565, 2016 WL 11672046, at *8 (E.D. Va. Dec. 8, 2016) (finding that a party acted in bad faith for refusing to cooperate in the course of discovery); *see also Garcia v. Stemlit Ag Services, LLC*, 2022 WL 2900633, at *13 (E.D. Wash. Mar. 25, 2022) (emphasizing the parties' "significant obligations to work in good faith under the ESI agreement").

### B. RFP 60 and 76 are Non-Duplicative, Relevant to the United States Damages Case, and the Requested Production Is Not Burdensome to Google

The United States alleges that Google's violations of the Sherman Act have caused the United States to incur monetary damages. Dkt. No. 1 at ¶¶ 340-41. To prove these damages, the United States has sought transaction and invoice data that would allow for the tracking of FAA purchases and calculation of the fees and charges that Google assessed. Google does not contest that the transaction information the United States requested is relevant to their claims. Google objected to RFP 60 on other grounds, including vagueness and proportionality, and it agreed to produce monthly aggregate data that would allow the United States to calculate overcharges. The problem, as the United States explained in its communications with Google, is that the data is incomplete.  Alternative sources of this information available to the United States are in formats that are much more difficult to work with, incomplete, inconsistent across FAAs, and unclear as to all of Google's fees, necessitating production of this data from the best and most reliable source: Google's own systems.

The United States explained the differences between RFP 60 and RFP 76 in discussions with Google, and has explained the need for each aspect of its request for additional information beyond what Google has produced. The United States also provided additional information and identified documents from Google's productions showing how Google could use information provided by Plaintiffs to identify additional sources of information, not yet in Plaintiffs' possession.  Without invoice data, the United States will be unable to determine the exact amounts billed to the FAAs and would have to model the amounts using other sources.

The United States' experts have a clear need to match transactions between and among the DV360, Google Ads, AdX and XP datasets, and they need information that will allow them to calculate gross and net revenues with those transactions. There is no dispute that this

information is relevant to computing the amounts that FAAs were charged. Google is the only comprehensive source of this information.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court compel Google to do the following: (1) reproduce the transaction datasets that Google produced in response to RFP 60 with fields allowing the United States to link the transactions; and (2) produce the requested invoice data described in RFP 76.

Dated: August 25, 2023

Respectfully submitted,

JESSICA D. ABER
United States Attorney

s/ Dennis C. Barghaan, Jr.
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3891
Facsimile: (703) 299-3983
Email: dennis.barghaan@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ Kelly D. Garcia
KELLY D. GARCIA
/s/ Amanda M. Strick
AMANDA M. STRICK
/s/ Craig L. Briskin
CRAIG L. BRISKIN
/s/ Kaitlyn E. Barry
KAITLYN E. BARRY
/s/ Michael J. Freeman
MICHAEL J. FREEMAN

United States Department of Justice
Antitrust Division

450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Kaitlyn.barry@usdoj.gov

Attorneys for the United States