**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| UNITED STATES, *et al.*,<br><br>        *Plaintiffs*,<br><br>  v.<br><br>GOOGLE LLC,<br><br>        *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**GOOGLE LLC'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO COMPEL PRODUCTION OF**
**DOCUMENTS AND TESTIMONY WRONGLY WITHHELD AS PRIVILEGED**

Plaintiff United States ("Plaintiff" or "the government") is withholding two categories of evidence based on improper assertions of work product, attorney-client privilege, and/or deliberative process privilege, thereby depriving Google of factual information crucial to its defense in this case:

The first category of improperly withheld evidence consists of pre-litigation communications reflecting outreach by the Antitrust Division of the Department of Justice ("ATR") to federal agencies, including non-party agencies with which ATR has no attorney-client relationship and on whose behalf it is not seeking damages. Plaintiff has improperly asserted work product, attorney-client privilege, and deliberative process privilege over these communications. Yet these pre-litigation communications with federal agencies for fact gathering purposes are no different from the discoverable intake that a plaintiff firm does on potential clients or claims before

REFILED UNREDACTED VERSION

any attorney-client relationship is formed.  They are also no different from ATR's pre-litigation communications with any other non-party to this case, which ATR has produced as part of its investigative file.  There is no basis to treat these communications with federal agencies any differently from communications with other non-parties.

The second category of wrongfully withheld evidence consists of pre-litigation communications between non-lawyers at federal agencies and their advertising agencies relating to this lawsuit, over which Plaintiff asserts work product protection.  The communications between federal agencies and their advertising agencies are likewise not protected from disclosure.  There is no attorney-client relationship between a federal agency and its advertising agency, and the communications likewise cannot be considered work product because the advertising agencies are not ATR's agents.  The advertising agencies were retained by federal agencies in the ordinary course of business—not by the ATR for litigation purposes.  There is therefore no agency relationship between ATR and the advertising agencies, a prerequisite for work product protection to apply.

The withheld documents are significant because they show that the way that Plaintiffs have defined the relevant antitrust markets in this case—markets for products relating to "open web display advertising"—is entirely contrary to the commercial realities of how federal agencies purchase advertising, including the federal agencies on whose behalf ATR is seeking damages, the Federal Agency Advertisers ("FAAs").  The withheld documents also show that the damages claims that Plaintiffs have asserted were an afterthought; the motivation behind ATR's case was not to recoup costs on behalf of any FAAs.  Although ATR conducted a sweeping investigation for over three years, its pre-litigation communications with FAAs show that it was not until the eleventh hour that it even bothered to reach out to any FAAs to try to construct a damages claim

REFILED UNREDACTED VERSION

(presumably as a basis to seek a jury trial).

Plaintiff has desperately sought to shield this non-privileged information from discovery—and disclosure to the public—under the cloak of privilege.  Google had planned to include in this motion the deposition testimony from two FAA witnesses which establishes that there is absolutely no factual predicate for Plaintiff's privilege claims.  But, on the day that Google was finalizing its motion for filing, ATR sent Google a letter clawing back not just portions of the deposition transcripts, but both transcripts in their entirety—even though one deposition took place eight days ago and another three days ago with an ATR attorney present at each.  Ex. 1 (August 18, 2023 Letter from J. McBirney to E. Mahr, *et al.*).  Because Google disagrees that ATR has any basis to claw back any portion of the deposition transcripts, much less the entirety of the transcripts, Google is submitting for the Court's *in camera* inspection the transcripts with the relevant portions highlighted.

Accordingly, Google respectfully requests that the Court order Plaintiff (1) to produce the communications listed on ATR's June 26, 2023 privilege log between ATR and non-attorney employees of federal agencies; (2) to produce an itemized privilege log for all pre-litigation documents reflecting communications between ATR and counsel for any FAA that are responsive to Google's Requests for Production; (3) to produce documents wrongly clawed back during the deposition of an FAA witness and in recent letters, and (4) to permit Google to examine FAA deponents on their communications with advertising agencies related to this lawsuit.

I.      **BACKGROUND**

    A.      **Plaintiffs Are Withholding Pre-Litigation Communications Between ATR and Federal Agencies, Including Federal Agencies ATR Does Not Represent.**

On March 27, 2023, Google served its first set of Requests for Production.  Request No. 5 seeks:

REFILED UNREDACTED VERSION

> All documents, aside from documents produced by Google during the Investigation, concerning the Investigation or the subject matter of this Action, including . . . c. all informal requests for documents, data, or information to any person . . . [and] f. all correspondence with any person concerning the Investigation or the subject matter of this Action.

Request No. 12 seeks data relating to each FAA's purchase of "open web display advertising" and use of Ad Tech Products. Plaintiff served objections on April 11, 2023, and the parties met and conferred throughout April and May to reach agreement on search terms, custodians, and the overall scope of production. With respect to the data sought by Request No. 12, Plaintiff maintained that it did not have the requested data in its possession, custody or control, and that because "the FAAs do not control the actions of the advertising agencies, which are independent companies," Plaintiff was using "Rule 45 subpoenas" to obtain any documents or data from the advertising agencies who worked on behalf of the FAAs. Ex. 2 (June 12, 2023 Letter from K. Clemons to M. Goodman at 12). Plaintiff did not object or even suggest that communications between the FAAs and the "independent" advertising agencies were privileged or protected work product.

On June 9, 2023, Plaintiff requested that it be able to provide a categorical privilege log for "communications within the federal government but not 'solely between counsel for the United States . . . and counsel for any Federal Agency Advertiser,'" claiming "the burden of individually logging such communications is not reasonable or proportionate to the needs of the case." Ex. 3 (June 9, 2023 Letter from M. Wolin to M. Goodman at 1). Such pre-litigation communications dated between December 23, 2022 and January 23, 2023 from the government's investigative file are responsive to Google's Request No. 5, and—as acknowledged by the government—are not within the exemptions from privilege logging under Paragraph V.8 of the ESI Order (Dkt. No. 142). *Id.* Accordingly, Google declined Plaintiff's request and asked that Plaintiff provide an individualized log, which it provided on June 26, 2023. Ex. 4 ("June 26 privilege log").

REFILED UNREDACTED VERSION

The June 26 privilege log contains 57 entries listing pre-litigation communications between ATR and non-attorney employees of federal agencies—including agencies for which the government is *not* claiming damages—during the time period December 23, 2022 to January 23, 2023. The subject lines for the majority of the logged communications are "Inquiry *from* Department of Justice, Antitrust Division," "Inquiry *from* Antitrust Division re DOJ Digital Advertising," "Request for Information *from* DOJ Antitrust," or reflect follow-up communications from the federal agencies in response to ATR's initial outreach.

Plaintiff claims attorney-client, work-product, and deliberative-process privileges for each communication based on one of two boilerplate and conclusory descriptions, depending on whether ATR is the recipient or sender of the email.

> **Non-ATR Sender**: "Confidential communication **to counsel** **for United States** providing legal advice regarding potential violation of Section 4A of the Clayton Act related to purchases of digital advertising by agencies and divisions of the United States government; made in anticipation of litigation against Google for violations of Sections 1 and 2 of the Sherman Act and Section 4A of the Clayton Act; and made in the course of Antitrust Division staff providing opinions and recommendations in connection with decision on whether to file a case against Google for violations of Sections 1 and 2 of the  Sherman Act and Section 4A of the Clayton Act."

> **ATR Sender**: "Confidential communication **from counsel** **for United States** made in the course of their providing legal advice regarding potential violation of Section 4A of the Clayton Act related to purchases of digital advertising by agencies and divisions of the United States government; made in anticipation of litigation against Google for violations of Sections 1 and 2 of the Sherman Act and Section 4A of the Clayton Act; and made in the course of Antitrust Division staff providing opinions and recommendations in connection with decision on whether to file a case against Google for violations of Sections 1 and 2 of the Sherman Act and Section 4A of the Clayton Act."

Google explained during the meet and confer process and in related correspondence that the privilege assertions are improper, and requested that Plaintiff (1) produce without redaction all documents on its June 26, 2023 log; (2) provide a list of custodians at ATR whose files were searched for purposes of responding to Google's Request No. 5; and (3) prepare a privilege log for

REFILED UNREDACTED VERSION

documents over which ATR is asserting a privilege pursuant to Section V.8.e of the ESI Order (Dkt. 142), i.e., communications prior to the filing of the Complaint between counsel for the government and counsel for any Federal Agency Advertiser.[1]  Ex. 5 (July 31, 2023 Letter from M. Goodman to M. Wolin at 3–4).  Google explained that although Section V.8.e exempts logging of the last category of documents, Google has serious concerns that Plaintiff is wrongly asserting a blanket privilege over ATR's pre-complaint communications with any FAA lawyers before any lawyer-client relationship was established, particularly in light of ATR counsel asserting during the meet and confer that its client is "the United States" or, at a minimum, "large portions of the executive branch."[2]  Ex. 5 (July 31, 2023 Letter from M. Goodman to M. Wolin at 2).

Plaintiff's August 5, 2023 response failed to provide the requested information.  Instead, Plaintiff put forward no legal or factual support for the assertion that all communications between DOJ attorneys and federal agencies (attorneys and non-attorneys alike)—regardless of whether DOJ is seeking damages on the agencies' behalf—are privileged, and cited only DOJ's statutory authority to conduct litigation and enforce the antitrust laws.  Ex. 6 (August 5, 2023 Letter from M. Wolin to M. Goodman).  Plaintiff  claimed in its letter that because the communications were close in time to the complaint's filing, they are attorney work product.[3]  And Plaintiff's letter did

---

[1] Section V.8.e states: "Exclusions. To the extent any of the following Documents are privileged or otherwise protected from disclosure by Federal Rule of Civil Procedure 26(b)(3)-(4), they may be excluded from privilege logs: . . . e. Documents or communications sent solely between counsel for the United States (or persons employed by the United States Department of Justice) and counsel for any Federal Agency Advertiser." Dkt. 142 at § V.8.e.

[2] The ESI Order states expressly that "Nothing in this order precludes any party from moving, upon a showing of good cause, to modify these exclusions with respect to specific requests for production." Dkt. 142 at n.5.

[3] ATR's letter indicated that ATR has concerns with respect to Google's compliance with paragraph 12(d) of the Modified Protective Order.  Google has been diligent in providing notice to the United States pursuant to Paragraph 12(d) of the Modified Protective Order, Dkt. 203, of potentially privileged documents in the FAAs' productions and in promptly complying with

REFILED UNREDACTED VERSION

not even address its assertion of deliberative process privilege.  While the parties met and conferred again on August 16, 2023, they were not able to reach agreement.[4]

> **B.  Plaintiff Clawed Back Communications Between FAA Employees and Their Advertising Agencies and Instructed Deponents Not to Answer Questions Regarding Such Communications.**

Five days after Plaintiff stood on its privilege assertions, on August 10, 2023, Google took its second deposition of an FAA witness, Christopher Karpenko, the Executive Director of Brand Marketing for the USPS during the Damages Period.  During the deposition, Plaintiff improperly clawed back two documents reflecting Mr. Karpenko's pre-litigation communications with USPS's contracted advertising agency, Universal McCann.  Despite permitting testimony on these documents initially, counsel for the government prohibited the witness from answering further questions about those documents or communications, claiming that the communications were at the request of counsel.  Counsel also instructed the witnesses not to answer questions relevant to whether any assertion of privilege or work product was substantiated.  (Karpenko Tr. 80:8-84:8). Counsel for the government instructed Mr. Karpenko not to answer nearly a dozen questions on this basis.  (Karpenko Tr. 72:16-93:12, 109:11-109:21, 126:20-127:10, 131:15-132:5).

Similarly, at the August 15, 2023 deposition of Allen Owens, the Deputy Director and then Director of Marketing for the Navy Recruiting Command during the Damages Period, counsel for

---

paragraph 12(c) upon receiving claw-back notices from the United States.  *See, e.g.*, Exs. 7–9 (July 31, August 1, and August 6, 2023 emails from M. Goodman to M. Wolin *et al.*).

[4] On August 4, 2023, Plaintiff issued a claw-back notice for 96 documents from FAA files. Plaintiff issued a second claw-back notice on August 14 for 6 documents, including the 2 documents it improperly clawed back during Mr. Karpenko's deposition.  On August 17, 2023, Plaintiff issued another claw-back notice for 8 additional documents from FAA files, on the basis that they "reflect[] requests for information and responses that were directed by DOJ relating to Army digital advertising."  Ex. 10 (August 17, 2023 Letter from D. Grossman to E. Mahr *et al.*). Google promptly complied with the Protective Order, but expects that many of the listed documents have been improperly withheld for the same reasons articulated in this brief.

REFILED UNREDACTED VERSION

the government instructed the witness seven times not to answer questions regarding the witness's communications with employees of VMLY&R or Wavemaker, advertising agencies with whom the Navy contracted for advertising services, where such communications were asserted to have been made at the request of counsel.  (Owens Tr. at 22:11-23:8, 25:21-26:17, 30:19-31-12, 259:8-14, 274:2-23).  In both depositions, counsel for the government described these communications as privileged work product because they resulted from communications with counsel.  (Karpenko Tr. 80:16-20; Owens Tr. 30:25-31:7).[5]  In other words, Plaintiff takes the unsupported position that any communication that follows sequentially from communications with counsel is protected work product, even when those communications do not include any attorneys, are not directed by any attorney, and are with percipient witnesses in this case who are neither agents of ATR nor agents of the FAAs for purposes of this litigation.  (Karpenko Tr. 120:5-121:21).[6]  As the government's lawyers have represented to counsel for Google, the agencies are "independent." Ex. 2 (June 12, 2023 Letter from K. Clemons to M. Goodman at 12).

Google met and conferred with the government on all of these privilege assertions again on August 16, 2023, but did not reach agreement.

### C. Plaintiff Clawed Back the Entirety of Deposition Transcripts Relevant to This Motion on the Morning of Filing.

At 8:14 am on Friday, August 18, 2023—knowing this Motion was being filed that same day pursuant to the parties' meet and confers—the government clawed back the entirety of both Mr. Karpenko's and Mr. Owens' deposition transcripts.  Ex. 1 (August 18, 2023 Letter from J.

---

[5] Initially, counsel also asserted attorney-client privilege over the documents, (Karpenko Tr 110:3-111:1), but later stated that the only protection being asserted was work product, and not the attorney-client or deliberative process privileges.  (Karpenko Tr.117:8-16, 119:8-20).

[6] Plaintiff took this position after the witness provided testimony indicating he was not aware that he would in any way be involved in this lawsuit.  (Karpenko Tr. 49:7-50:5, 50:18-51:4, 53:5-9, 67:3-68:2).

REFILED UNREDACTED VERSION

McBirney to E. Mahr, *et al.*).  The basis for the clawback of the entirety of the transcript of Mr. Karpenko's deposition is that it reflects questioning and testimony as to the documents that were clawed back.  *Id.* ("we are also clawing back related deposition testimony that Google obtained through its use of protected documents, including questions informed by information in those documents that counsel persisted in asking even after we objected on privilege grounds").  Similarly, the basis for the clawback of the entire transcript of Mr. Owens' deposition is that he "briefly became confused as to the meaning of the term 'interrogatory' as used by counsel when being question about the Navy's interrogatory responses without a copy of those responses being provided to him."  *Id.*  Notwithstanding that Plaintiff identified very limited portions of the transcripts over which they claimed privilege, they requested "that Google return, sequester, or destroy all copies of the deposition transcripts."  *Id.*

## II.   APPLICABLE LEGAL STANDARD

"In the Fourth Circuit, work product and attorney-client privilege are construed 'quite narrowly,'" and are "recognized 'only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'"  *ePlus Inc.* v. *Lawson Software, Inc.*, 280 F.R.D. 247, 251 (E.D. Va. 2012).  Likewise, the deliberative process privilege "is to be construed narrowly, and the burden rests upon the government to be precise and conservative" in asserting such claims.  *Ethyl Corp.* v. *E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994).

"A party asserting a privilege has the burden of showing that it applies." *ePlus*, 280 F.R.D. at 251; *E.I. du Pont de Nemours & Co.* v. *Kolon Indus.*, 2010 U.S. Dist. LEXIS 36530, at *10 (E.D. Va. Apr. 13, 2010).  A privilege log therefore must set forth "specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Bowne of*

REFILED UNREDACTED VERSION

*N.Y.C., Inc.* v. *AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993). "Once the claims of privilege/protection have been challenged by the requesting party, the producing party must then establish an evidentiary basis to support the privilege/protection claim." *Victor Stanley, Inc.* v. *Creative Pipe, Inc.*, 250 F.R.D. 251, 254 n.2 (D. Md. 2008). As explained below, Plaintiff has not, and cannot, meet its burden of establishing that any of these privileges apply to the documents and testimony at issue.

## III.    ARGUMENT

### A.    FAA Employees' Communications With Ad Agency Representatives and ATR's Information-Seeking Outreach To Federal Agencies Are Not Entitled to Work Product Protection.

Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, which defines what constitutes work product, provides that "a party may not discover documents and tangible things that are prepared in anticipation if litigation or for trial by another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). With respect to the work-product privilege, courts distinguish facts from opinion. Facts may be obtained "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996).

#### 1.    Communications Between Non-Lawyer FAA Employees and Non-Lawyer Ad Agency Employees Are Not Protected Work Product Because the Ad Agencies Are Not Agents Working At the Direction of Counsel.

Work product protection does not typically extend to third parties who are "not hired by any attorney" and who do not "work[ ] for any attorney." *In re Grand Jury Proceedings*, 102 F.3d at 752 (declining to apply work product protection to work created by consultant hired by bank subject to investigation "before any lawyer was involved in representing the Bank and [who]

REFILED UNREDACTED VERSION

reported the results of his investigation to the Bank itself"); *Echavarria* v. *Roach*, 2019 WL 6893034, at *3 (D. Mass. Dec. 17, 2019) (memos prepared by independent institution where institution was not an attorney's agent or representative are not work product); *Burwell* v. *Peyton*, 2014 WL 12717390, at *3 (D. Vt. Apr. 17, 2014) (written summary of a telephone conversation involving plaintiff, his uncle, his attorney, and his therapist not work product because there was "no evidence" the therapist "was acting as an agent of" the plaintiff's attorney or acting "at the behest" of the plaintiff's attorney). Accordingly, facts gathered by a non-lawyer FAA employee from their non-lawyer ad agency contacts are not protected by the work product doctrine.

The advertising agencies are independent third-parties that do not work at the direction of ATR. Counsel for the government has represented time and again during discovery conferrals that the FAAs "do not control the actions of the advertising agencies, which are independent companies." Ex. 2 (June 12, 2023 Letter from K. Clemons to M. Goodman at 12). Thus, Plaintiff had to, like Google, resort to seeking data or information from the ad agencies "via Rule 45 subpoenas." *Id.*[7] It therefore defies Plaintiff's own representations throughout the course of discovery to claim during depositions of FAA witnesses, and with respect to documents exchanged between FAA non-attorneys and ad agency personnel, that such communications or documents are protected work product. The relationship between the federal agencies and their advertising agencies is a business relationship for advertising services—not litigation services, as the FAAs' interrogatory responses make clear. *See, e.g.*, Ex. 11 (Plaintiff's Responses to Google's First Set

---

[7] The circumstances here are unlike *United States* v. *Kovel*, 296 F.2d 918, 922 (2d Cir. 1961), and the cases following it, where the attorney-client privilege applied to exchanges between a client and accountant when the accountant is "necessary" for "the effective consultation *between the client and the lawyer*." Here, the advertising agencies were not retained by ATR; nor did the advertising agencies "interpret" complex concepts so that the FAAs could obtain legal advice from ATR. *Id.* ("If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.").

REFILED UNREDACTED VERSION

of Interrogatories, Appendices C, D, and G (April 26, 2023)).[8]  Nor is there any contractual or agency relationship between ATR and ad agencies such that the ad agencies are working at the direction of counsel.  *E.g.*, *In re Lumber Liquidator S Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2015 WL 9474286, at *2 (E.D. Va. Dec. 28, 2015) (client's "agents are generally, and presumptively, not within the protected circle of privileged attorney-client communications"); *Goff* v. *United Rentals (North America), Inc.*, 2017 WL 1179158, at *2–3 (E.D. Va. Mar. 28, 2017) (communications between party and insurer were "ordinary course" communications, not protected work product); *Addi* v. *Corvias Mgmt.-Army, LLC*, 339 F.R.D. 594, 598 (D. Md. 2021) (requiring production of "raw information" collected by contractors of a party in the ordinary course because they were not protected work product).

As independent companies, the advertising agencies are no different than any other third parties Plaintiff has identified on its initial disclosures as having relevant information.  For example, if an FAA or other federal agency reached out to The Trade Desk, or Microsoft, or Meta, that communication would be discoverable.  Communications that the FAAs and other federal agencies have had with advertising agencies are no different.  The advertising agencies—just like The Trade Desk, Microsoft, and Meta—are independent third parties, and communications that the FAAs and other federal agencies had with them are discoverable, regardless of whether they were as a result of communication with counsel.  *See Johnson* v. *Baltimore Police Dep't*, 2021 WL 1985014, at *4 (D. Md. May 18, 2018) (holding that documents and discussions with third-party prior to his deposition were not work product); *S.E.C.* v. *Gupta*, 281 F.R.D. 169, 173 (S.D.N.Y. 2012) ("Although work product protection applies more broadly than the strict

---

[8] Google does not concede that the ad agencies are "agents" of the FAAs for any purpose whatsoever, and reserves all rights to argue no principal-agent relationship exists between them.

REFILED UNREDACTED VERSION

requirements of attorney-client privilege, the type of disclosure to a non-party witness presented

here falls beyond the 'zone of privacy' protection an attorney needs to prepare his case.").

> ### 2.   ATR's Pre-Litigation Outreach to Federal Agencies for Fact Gathering Is Not Work Product.

ATR's pre-suit communications with federal agencies regarding their display advertising

purchasing practices does not qualify as work product.  As the subject lines of the emails listed on

the June 26 privilege log demonstrate, these communications were for the purpose of fact gathering

and, as such, belong in ATR's investigative file, which is discoverable.  The "driving force" behind

these communications was to understand how federal agencies purchase digital advertising.  *Nat'l*

*Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th

Cir. 1992).  These communications are no different from DOJ's communications with any third

party from which it solicited information related to its investigation and the subject matter of this

lawsuit, and Plaintiff has provided no basis to distinguish ATR's communications with third

parties, which it has produced, *see, e.g.*, Ex. 12 (DOJ-ADS-B-0000026658), and its

communications with federal agencies, which it has withheld.  Many of the logged documents

appear to seek or relay information from departments and/or agencies that are *not* even parties to

this case.  *Spilker* v. *Medtronic, Inc.*, 2015 WL 12851391, at *2 (E.D.N.C. Jan. 6, 2015) ("several

courts have denied non-parties work product protection") (collecting cases); *see also Gupta*, 281

F.R.D. at 173.[9]

---

[9] At Plaintiff's request, the Court ruled that discovery from agencies on whose behalf the government does not seek damages constitutes *non-party* discovery.  U.S. Br. re the Scope of Fed. Agency Discovery in the Parties Joint Proposed Discovery Plan at 2 (Dkt. 92) ("The United States does not seek damages on behalf of the entire federal government writ large, and for that reason, if Google seeks, for its own purposes, to obtain discovery from other federal agencies on whose behalf the United States is not seeking damages, it should do so through standard means of non-party discovery."); Rule 16(b) Scheduling Order ¶ 8 (Dkt. 94) (adopting plaintiffs' proposal for Section 6.G(iii), which states that "Current and former employees of the Federal Agency Advertisers will be considered party witnesses . . . but current and former employees of any other

REFILED UNREDACTED VERSION

**3.     Even If Plaintiff's Work Product Assertions Were Proper, the Withheld Information Constitutes Only Factual Information for Which Google Has a Substantial Need and Cannot Otherwise Obtain Without Undue Hardship.**

The documents and testimony Plaintiff seeks to shield from discovery reflect purely factual information in communications involving non-parties.  Google should be able to discover them because it has a "substantial need," and is unable "to secure the substantial equivalent of the materials by alternate means without undue hardship."  *Duck* v. *Warren*, 160 F.R.D 80, 82 (E.D. Va. 1995); *In re Grand Jury Proceedings*, 102 F.3d at 750.

*First*, substantial need has been found where materials sought relate to the government's ability to "define the 'relevant market' to prevail."  *United States* v. *Booz Allen Hamilton, Inc.*, 2022 WL 3921019 at *2-3 (D. Md. Aug. 31, 2022) (disclosure of factual information compelled over work product assertion).  FAA employees' unvarnished views and reactions to ATR's inquiries regarding the FAAs' purchases of digital advertising is critical evidence that could contradict Plaintiff's gerrymandered, overly narrow market definition, as could other information provided by FAAs and other federal agencies in connection with ATR's investigation.

The significance of the requested information is underscored by a document introduced during the deposition of USPS' Mr. Karpenko and his related testimony.  After the Office of Inspector General ("OIG") asked Mr. Karpenko whether USPS "purchased any advertising on the open web in third-party websites," Mr. Karpenko asked for clarity on what the OIG was seeking because he—a long-time marketing and advertising industry veteran for the USPS—did not understand what OIG was asking.  Ex. 13 at 2 (USPS-ADS-0000140586); (Karpenko Tr. at 57:14-58:18).  The OIG employee acknowledged that his use of the term "advertising on the open web

---

executive branch agency of the United States will be considered non-party witnesses." *See* Joint Proposed Discovery Plan (Dkt. 87)).

REFILED UNREDACTED VERSION

in third-party websites" is "probably" "different[] than what you is [*sic*] commonly used in advertising." Ex. 13 at 2 (USPS-ADS-0000140586). This exchange is just one illustration of how Plaintiff's use of the term "open web display advertising," the government's proffered market definition, defies the commercial realities of how industry participants define the market for available advertising. Google has a substantial need for other similar communications reflecting exchanges between ATR and federal agencies in the context of ATR's outreach, and between federal agencies and their ad agencies, as well as testimony regarding such communications in order to demonstrate that Plaintiff's alleged antitrust markets were manufactured solely for purposes of this litigation and do not "correspond to the commercial realities of the industry." *Lansdowne on the Potomac Homeowners Ass'n, Inc.* v. *OpenBand at Lansdowne LLC*, 2011 WL 5872885, at *4 (E.D. Va. Nov. 22, 2011) (quoting *Brown Shoe Co.* v. *United States*, 370 U.S. 294, 336 (1962)).

Moreover, in evaluating substantial need, the "Fourth Circuit has recognized the special value of contemporaneous statements." *Coogan* v. *Cornet Transp. Co., Inc.*, 199 F.R.D. 166, 167-68 (D. Md. 2001) (finding that party had demonstrated "substantial need" for statement which captured the defendant's "immediate perceptions," and was "uninfluenced by the passage of time or his present status as a" party). These percipient fact witnesses' immediate reactions to what they perceived as routine, ordinary-course requests for information is vital discovery untainted by any attorney-education of these witnesses. Ex. 14 (Oliphant Tr. 65:14-66:16). *Nat'l Union*, 967 F.2d at 985 (party seeking discovery has substantial need for "[s]tatements of either the parties or witnesses taken immediately after the accident and involving a material issue in an action" because they are "unique catalysts in the search for truth").

15

**Second**, Google is unable "to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings*, 102 F.3d at 750. Google has ten party depositions, and twenty non-party depositions. Given the deposition limits in this case, Google cannot depose each of the federal employees ATR communicated with or each of the twenty ad agencies relevant to this case, which worked for eight different FAAs. Given the breakneck speed of this case, limited discovery available, and scores of witnesses listed on Plaintiff's initial disclosures, substantial need is more than satisfied to overcome the government's work product claim with respect to the communications at issue. *Booz Allen Hamilton, Inc.*, 2022 WL 3921019 at *2, 4 (finding substantial need where "the breakneck speed of this litigation has diminished the availability of alternative sources for this information" and a "deposition's usefulness may be limited in this context without the requested documents"). Even if it were possible to depose every federal employee ATR communicated with and every ad agency relevant to this case, they "might not be able to recall sufficient detail" regarding the facts Google seeks to discover. *Fed. Elec. Comm'n* v. *Christian Coal.*, 178 F.R.D. 456, 466 (E.D. Va. 1998); *e.g.*, *APL Corp.* v. *Aetna Cas. & Sur. Co.*, 91 F.R.D. 10, 13–14 (D. Md. 1980) ("it is not unlikely that the documents from Aetna's files reflecting its investigation of plaintiffs' claim will themselves be capable of establishing in the most effective way what information Aetna had in its possession when Aetna decided to deny plaintiffs' claim"); *see also* Fed. R. Civ. P. 26(b)(3), Adv. Cmte. note (recognizing the need for discovery of witness statements from an investigative file giving a "fresh and contemporaneous account").[10]

---

[10] Moreover, substantial need exists, where—as here—"the documents sought contain statements that might impeach a witness." *Duck*, 160 F.R.D. at 83. Plaintiff has asserted a claim for damages on the basis that various government agencies "are buyers of open web display advertising" and have incurred "monetary damages." Am. Compl. ¶ 341 (Dkt. 120). Communications demonstrating that ATR embarked on a beat-the-clock search for federal agencies who may have been damaged, especially those that demonstrate agencies were not damaged or otherwise

REFILED UNREDACTED VERSION

*Third*, to the extent they contain protected information (attorney impressions, for example), the documents should be produced with those portions redacted.  *See In re Royal Ahold N.V. Secs. & ERISA Litig.*, 230 F.R.D. 433, 437 (D. Md. 2005).

### B.    Pre-Suit Communications Between ATR and Federal Employees Are Not Protected by the Attorney-Client Privilege.

Because the attorney-client privilege "impedes the full and free discovery of the truth . . . [it] is to be narrowly construed." *Hawkins* v. *Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (cleaned up).  To establish that the privilege applies, the proponent must show that:

> (1) the ***asserted holder of the privilege is or sought to become a client***; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) ***for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding***, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (citation omitted) (emphasis added). This test applies equally to attorney-client privilege within the government as it does outside the government.  *Stonehill* v. *U.S. Dep't of Justice Tax Division*, 2022 WL 407145, at *23 (D.D.C. Feb. 10, 2022) (citations omitted).

The June 26 privilege log demonstrates that beginning in late December 2022 and through mid-January 2023, ATR reached out to a number of federal government employees with requests for information. Neither ATR's outreach, nor the responses by federal agency employees, are privileged because (1) there was no attorney-client relationship between ATR and the agencies; and (2) the communications were not for the purpose of seeking legal advice.

---

undermine Plaintiff's factual assertions throughout the complaint, are "invaluable" information and therefore satisfy the "'substantial need' required to overcome the work product immunity." *Duck*, 160 F.R.D. at 83.

REFILED UNREDACTED VERSION

1.      **At the Time of the Communications, the Federal Agencies Were Not, and Were Not Seeking to Become, ATR's Clients.**

There is no factual or legal basis for ATR to assert that when it sent unsolicited emails to federal agencies there was any attorney-client relationship between ATR and the agencies.  *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 (4th Cir. 2005) (the attorney client relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice").  ATR does not automatically have an attorney-client relationship with all federal agencies; instead, ATR must meet the same burden as any party that seeks to claim the attorney-client privilege.  *Stonehill*, 2022 WL 407145, at *23 (government did not meet its burden of establishing privilege where "there is nothing indicating that the IRS employee was a client or the attorneys were acting in their capacity as lawyers, or that the communication was confidential or even legal in nature").  Just as a lawyer cannot create an attorney-client relationship by sending letters to potential plaintiffs or class representatives, ATR cannot create an attorney-client relationship with any employee in the federal government by sending them an email.  *U.S. E.E.O.C.* v. *ABM Indus. Inc*., 261 F.R.D. 503, 508 (E.D. Cal. 2009) (sending letters to potential members of a class action does not create an attorney-client relationship).  "At its core," Plaintiff's "argument regarding the existence of an attorney-client relationship relies solely on the fact that it" reached out to the federal agencies "in order to further develop the group of claimants on whose behalf it sued.  That is not enough." *Id.*  Importantly, that argument is also contrary to Plaintiff's position that non-FAA federal agencies are not parties for purposes of discovery.  *See infra* note 9.

REFILED UNREDACTED VERSION

### 2. The Communications Were Not Made for the Purpose of the Federal Agencies Securing Legal Advice.

Even if there were a preexisting attorney-client relationship between ATR and any of the federal agencies reflected on the June 26, 2023 log, there is no evidence that any of these agencies were seeking legal advice from ATR.  Affirmative testimony from the FAA deponents to date demonstrates exactly the opposite—that they were *not* seeking legal advice from ATR.  The FAAs responded to DOJ's requests for information, but witnesses testified they did not seek legal advice from DOJ.  Ex. 14 (Oliphant Tr. at 64:3-12, 332:16-335:22) ("Q. Have you ever sought . . . legal advice from an attorney at the antitrust division of the Department of Justice? . . . A. No. . . . Q. Do you consider the lawyers for the antitrust division to be lawyers for the [C]ensus [B]ureau? . . . A. I do not."); Ex. 15 (Horning Rough Tr. at 2-3) ("Q. Have you ever requested legal advice from the Department of Justice Antitrust Division?" "A. No.")[11]; (Owens Tr. at 46:3-14, 89:4-7). Rather, the FAA witnesses had no reason to seek legal advice from antitrust attorneys, as they have uniformly testified they were not aware of any anticompetitive conduct by Google.  Ex. 14 (Oliphant Tr. at 63:6-11), (Owens Tr. at 210:22-2:11:4; Karpenko Tr. at 139:3-8).[12]

---

[11] The privilege assertions reflected in the rough transcript of the deposition of Mr. Horning, taking place on the day on which this Motion is being filed, reflect the breadth and impropriety of Plaintiff's privilege assertions.  *E.g.*, Ex. 15 (Horning Rough Tr. at 2-19) (instructing witness not to answer questions regarding *his understanding* of the reason for his conversations with ATR, whether ATR ever "requested information about digital advertising purchases" (a yes or no question), whether ATR lawyers present at the deposition explained to Mr. Horning the purpose of a previous interview (a yes or no question), *Mr. Horning's understanding* of the purpose of that interview, *Mr. Horning's understanding* as to the possibility of litigation during the time he was having pre-suit discussions with ATR, and regarding communications between Mr. Horning and individuals at the advertising agency DDB, who provide services for the Army).

[12] Google originally intended to quote portions of the transcripts from the depositions of Mr. Karpenko and Mr. Owens in support of this argument.  Given Plaintiff's last-minute clawback of these transcripts, Google has not quoted from these transcripts, and has submitted them for *in camera* review.

REFILED UNREDACTED VERSION

Exhibit 13—a January 9, 2023 email exchange between Matthew Gardner, a USPS OIG investigator, and Mr. Karpenko—illustrates exactly why Plaintiff's privilege assertions are improper. This document, which appears to be similar to documents listed on Plaintiff's privilege log, is clearly an inquiry requesting *factual* information, not a request for or provision of legal advice. Mr. Gardner states that he is:

> gathering information that pertains to an inquiry we are currently conducting. We are trying to determine whether the U.S. Postal Service purchased any advertising on the open web in third-party websites such as nytimes.com, cnn.com, or bloomberg.com. . . . We are hoping to learn how these advertising services are purchased, which platforms are used to go about making these purchases, and approximately how much money the USPS has spent on this type of advertising over the past four years.

Ex. 13 at 2 (USPS-ADS-0000140586). In response, Mr. Karpenko informs Mr. Gardner that "coincidentally, we have a meeting with DOJ tied to something very simila[r]." Ex. 13 at 2 (USPS-ADS-0000140586). Mr. Karpenko also testified that he suspected that OIG and ATR may have been working in tandem given that DOJ was also making similar inquiries. (Karpenko Tr. 67:3-68:2. ).[13]

The subject line of the emails in Exhibit 13, "OIG Request for Assistance," is just like the June 26 privilege log entries where DOJ requests information, over which Plaintiff has asserted attorney-client privilege, work product, and deliberative process privilege. Further, OIG itself appears on the June 26 privilege log in eight entries, all of which were sent either the same day as the email in Exhibit 13, or one day later. *See* Ex. 4 (June 26 privilege log) Rows 38, 44-50. The only difference between the OIG email to which Mr. Karpenko testified and the OIG emails over which ATR asserts privilege is that an ATR attorney is on them. But as Plaintiff knows, "[a]

---

[13] Other documents produced by USPS reveal that ATR contacted USPS around the very same time and regarding the same topic. For example, employees of USPS, including Chris Karpenko, and attorneys from ATR met by Zoom on January 11, 2023. Ex. 16 (USPS-ADS-0000031693). The subject of the conversation was: "Discussion with DOJ Regarding Digital Advertising." *Id.*

REFILED UNREDACTED VERSION

communication is not privileged simply because one of the parties is an attorney" and "simply copying an attorney on a communication . . . [does not] cloak that communication with the attorney-client privilege." *CSX Transp., Inc.* v. *Norfolk S. Ry. Co.*, 2020 WL 12862960, at *2 (E.D. Va. Aug. 21, 2020).

Far from revealing any federal agency's request for legal advice, the communications in question—as evidenced by the subject lines on the privilege log—only reflect DOJ seeking and receiving factual information from the federal agencies, and facts are not privileged. The communications should not reflect confidential information relayed by the FAA to ATR for the purpose of the FAA seeking, or ATR providing, legal advice based on FAA witnesses' express denial that they were seeking legal advice from ATR. Ex. 14 (Oliphant Tr. at 64:3-66:9); Ex. 15 (Horning Rough Tr. at 2-3); (Karpenko Tr. at 49:7-51:4, 139:3-8; Owens Tr. at 46:3-24, 88:25-89:7). Nor has ATR shown that it was providing legal advice to any federal agency based on such communications. *See Stonehill*, 2022 WL 407145, at *23. Because "DOJ was simply exploring the factual background" underlying its potential damages claim, "its correspondence with the [agencies] may not be protected by attorney-client privilege." *United States* v. *Booz Allen Hamilton, Inc.*, 2022 WL 3921019 at *3 (D. Md. Aug. 31, 2022).

### C.    Plaintiff Fails To Show The Deliberative Process Privilege Applies To Fact-Gathering Communications With Federal Employees.

The deliberative-process privilege is not a blanket protection for all inter-agency communications—it only protects inter-agency communications or documents that are both "predecisional" (i.e., "generated before the agency's final decision on the matter") and "deliberative" (i.e., "they were prepared to help the agency formulate its position"). *U.S. Fish & Wildlife Serv.* v. *Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021); *Dipace* v. *Goord*, 218 F.R.D. 399, 403 (S.D.N.Y. 2003); *Ethyl Corp.* v. *E.P.A.*, 25 F.3d 1241, 1248-49 (4th Cir. 1994) ("When

REFILED UNREDACTED VERSION

material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.") Further, the deliberative process privilege "protects advice and opinions," not "facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process." *Rein* v. *U.S. Pat. & Trademark Off.*, 553 F.3d 353, 371 n.26 (4th Cir. 2009); *see Ethyl Corp.*, 25 F.3d at 1250 (deliberative process privilege ***does not*** protect the exchange of facts and information in the course of an investigation).

As reflected in Exhibit 13, which, as explained above, Google believes is representative of the documents on the June 26 privilege log, emails ATR is withholding do not reflect advice or opinions, but instead show ATR reaching out to agencies for factual information; the emails do not reveal any decision being made. Likewise, both Ms. Oliphant's and Mr. Karpenko's deposition testimony confirms that the communications in question reflect a fact-gathering mission, as opposed to a decisional process. Ex. 14 (Oliphant Tr. at 64:3-66:9); (Karpenko Tr. at 49:7-51:4, 54:17-55:10, 136:3-9, 139:3-8). Nothing in these fact-gathering communications reflects "advice, opinions, [or] evaluations," and therefore it does not qualify as "deliberative." *Rein*, 553 F.3d at 371 n.26; *Moore-McCormack Lines, Inc.* v. *I.T.O. Corp. of Balt.*, 508 F.2d 945, 948 (4th Cir. 1974) (a document that "neither expressed an opinion nor made a recommendation," but instead "contains no more than inferences that are essentially similar to the findings which preceded it" does not reflect "the deliberative processes of decision or policymaking"); *Playboy Enters., Inc.* v. *Dep't of Justice*, 677 F.2d 931, 935-36 (D.C. Cir. 1982) (report not protected by deliberative process privilege where it reflected task force's mission "to investigate the facts surrounding

REFILED UNREDACTED VERSION

certain events").

Even if the privilege did apply, the Court should still order these documents produced because they are evidence going to, among other things, Plaintiff's ability to prove its contrived market definition, a core issue in the case, and the need for this highly relevant evidence far outweighs any arguable deliberative process protection. *Supra*, § III.A.3; *see NAACP* v. *Bureau of Census*, 401 F. Supp. 3d 608, 617 (D. Md. 2019) (validity of deliberative process depends "upon a balancing of the public interest in nondisclosure with the need for the information as evidence," including by considering "the relevance of the evidence to the lawsuit" and "the government's role (if any) in the litigation"); *Booz Allen Hamilton, Inc.*, 2022 WL 3921019 at *2-3 (disclosure of factual information compelled over deliberative process assertion where materials were relevant to DOJ's ability to define "relevant market," availability of alternative sources for information was diminished by virtue of speed of litigation, and government was a party to the case).

Moreover, when "the government is a party to a case, it has a 'more central role in the litigation' which 'weighs in favor of disclosure.'" *Booz Allen Hamilton*, 2022 WL 3921019, at *2. Here, disclosure is appropriate because ATR and the FAAs are parties to the action and the documents are "of the nature that a non-governmental entity . . . would have to produce during discovery." *F.D.I.C.* v. *Hatziyannis*, 180 F.R.D. 292, 294 (D. Md. 1998); *United States* v. *Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998) (when government seeks affirmative relief it should be required to turn over any documents that a private person would).

### D.    In the Alternative, Google Requests that the Court Conduct an *In Camera* Review.

Because Plaintiff's assertions of privilege for the 57 documents on its June 26 log—based on the log entries alone—and the documents clawed back at deposition and through Plaintiff's recent letters are improper, Plaintiff should be required to produce them.  To the extent the Court

REFILED UNREDACTED VERSION

needs additional information to assess Plaintiff's privilege assertions, Google requests that the Court conduct an *in camera* inspection of a sample of the withheld documents as well as the two documents clawed back at Mr. Karpenko's deposition.  A court may conduct *in camera* review where it would be helpful "for the Court correctly to apply the Fourth Circuit's attorney-client privilege law, including the limitations that are inherent in that body of law."  *F.T.C* v. *Reckitt Benckiser Pharm., Inc.*, 2015 WL 1062062, at *8 (E.D. Va. Mar. 10, 2015); *see also Morrison* v. *Cty. of Fairfax*, 2014 U.S. Dist. LEXIS 189528, at *6 (E.D. Va. June 19, 2014) ("Clearly not all communications involving an attorney are subject to the attorney-client privilege and those communications must be reviewed individually to see if they satisfy the above requirements."); *Asghari–Kamrani* v. *United Servs. Auto. Ass'n*, 2017 WL 553402, at *6 (E.D. Va. Jan. 20, 2017) (noting courts typically "must determine, from an examination of the documents or their circumstances, whether they were prepared in anticipation of litigation or for trial").

Here, Plaintiff has failed to carry its initial burden of demonstrating that the attorney-client privilege, the work product doctrine, and/or the deliberative process privilege apply to the documents at issue.  But even if it had, Google has come forth with sufficient evidence to justify *in camera* inspection of the documents.  Where the party asserting the privileges have established the factual basis for each of its claimed assertions, the party seeking *in camera* review must present "a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *4 (E.D. Va. July 16, 2019) (internal quotations omitted). Exhibits and testimony of FAA witnesses, as explained above, demonstrate exactly why Plaintiff's privilege assertions are improper.

REFILED UNREDACTED VERSION

**E.   There Is Good Cause to Modify Section V.8.e. of the Protective Order and Require ATR to Provide an Individualized Log of Pre-Complaint Communications with FAA Counsel.**

The ESI Order states expressly: "Nothing in this order precludes any party from moving, upon a showing of good cause, to modify these exclusions with respect to specific requests for production." Dkt. 142 at n.5. The June 26 privilege log, along with the testimony adduced in FAA depositions thus far, calls into question whether Plaintiff is using the ESI order to conceal the fact of Plaintiff's improper privilege assertions from Google, providing "good cause" for modification of Section V.8.e. Google therefore requests that Section V.8.e be amended to require Plaintiff to produce an individualized privilege log for pre-litigation communications between ATR personnel and FAA attorneys prior to January 24, 2023. The incremental burden to Plaintiff should be marginal as the June 26 privilege log shows that ATR's communications with federal agencies—including some FAAs—related to the subject matter of the investigation began around December 23, 2022–just a month before it filed its Complaint. Moreover, Google has acted promptly and in good faith in bringing this motion. Plaintiff informed Google on August 5, 2023 that it would not produce an individualized privilege log for communications between DOJ personnel and FAA attorneys prior to January 24, 2023 that are responsive to RFP 5, the parties met and conferred on August 16, 2023, and Google filed its motion two days later.[14]

---

[14] As a close analog to the instant request, the factors to be considered under the good cause standard in Fed. R. Civ. P. 16(b)(4) and E.D. Va. Loc. Civ. R. 16(b) "include t*he danger of prejudice to the non-moving party*, the length of delay and its potential impact on judicial proceedings, the reason for the delay, *and whether the movant acted in good faith*." *Roe* v. *Howard*, 2017 WL 3709088, at *1 (E.D. Va. June 30, 2017) (citing *Guerrero* v. *Deane*, 2012 WL 3068767, at *2 (E.D. Va. July 27, 2012) (emphasis added).

REFILED UNREDACTED VERSION

IV.     **<u>CONCLUSION</u>**

Google respectfully requests that the Court grant this motion and order Plaintiff to produce the 57 documents listed on the June 26 privilege log and the documents clawed back during Mr. Karpenko's deposition and through Plaintiff's August 4, 2023 and August 17, 2023 letters.  Google also requests that the Court order Plaintiff to permit questioning of FAA witnesses on all communications between the witness and employees of the FAA's advertising agency contractor(s).

Alternatively, Google seeks an *in camera* review of a sample of those documents by the Court to assess Plaintiff's privilege claims.  In addition, Google requests that the Court modify Section V.8.e. of the ESI Order to require Plaintiff to log communications between the ATR and FAA counsel that predate January 24, 2023 and are responsive to Google's Fifth Request for Production or were part of the DOJ's Investigative File.

REFILED UNREDACTED VERSION

Dated: August 18, 2023

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Scott A. Eisman (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*Counsel for Defendant Google LLC*

Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
 CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie H. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Joseph Bial (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB #93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
kdunn@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3387
Facsimile:  (212) 492-0387
ejmorgan@paulweiss.com

REFILED UNREDACTED VERSION

REFILED UNREDACTED VERSION