# EXHIBIT 2
# FILED UNDER SEAL

FILED PURSUANT TO COURT ORDER DOC. 354



U.S. Department of Justice

Antitrust Division

---

*Liberty Square Building*

*450 5th Street, N.W.*

CONFIDENTIAL

Martha L. Goodman
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, NW
Washington, DC  20006
mgoodman@paulweiss.com

     Re: United States, et al. v. Google LLC, No. 1:23-cv-00108-LMB-JFA

Dear Counsel:

     I write in reply to your June 6, 2023 letter regarding the ongoing negotiations with respect to the United States' discovery responses related to FAAs, as well as your June 9, 2023 email memorializing our June 9, 2023 meet and confer.

     As a preliminary matter, we write to address the comments in your June 6 letter concerning the timing of the United States' productions.  As discussed during our June 9 meet and confer, the United States is diligently working to process, review, and prepare documents for production.  In addition to the millions of investigatory file documents we produced in April, which included over 67,000 pages from internal Antitrust Division files, we produced an initial set of FAA documents on May 31.  We anticipate being able to make substantial weekly productions following that FAA production, including one last Friday and another today containing collectively over 15,000 documents (140,000 pages) from Census and Air Force, and an additional volume containing ~20,000 documents from USPS in the next few days.  We note that as of May 31, Google, despite having had the United States' specific custodian and search term proposals since early in the discovery period, had produced zero documents in response to the United States' document requests and had clawed back over a thousand documents produced years earlier.

## FAA Custodians

     With respect to the summary laid out in your June 6 letter of the United States' May 26 custodian proposal, we confirm that your understanding is correct with a few clarifications: we intend to search custodial emails for the January 1, 2018-January 24, 2023 period, using search terms in the United States' May 13 letter (plus revised Search String No. 19, as set out below), for the period(s) that the individual custodian was in a relevant role at the FAA.  Where the

custodian was not in a relevant role (i.e., one involving digital advertising, or contracting related to digital advertising, for the FAA), we do not intend to search those files, if they exist.

Regarding your questions concerning non-email custodial files, we respond to each below:

1. **Will the United States agree to search chats, instant messages, or other ephemeral communications of the Appendix A custodians using the United States' proposed May 13 search terms?**
   - As a preliminary note, we do not agree with Google's characterization of chats and instant messages as "ephemeral communications" in this question, as an ephemeral communication is one that is set up to be or is by its nature temporary and/or auto-deleting across all senders and recipients. It is also a designation that is agnostic to the form of communication (e.g., Gmail confidential mode emails qualify as ephemeral or quasi-ephemeral messaging under Sedona Conference guidance, whereas messages sent via many common instant messaging platforms do not, *see* The Sedona Conference, *Commentary on Ephemeral Messaging*, 22 SEDONA CONF. J. 435, 449-52 (2021)).
   - Following a reasonable inquiry, we are not aware of any of the individuals in Appendix A to your June 6 letter (or the additional custodians proposed below) having used ephemeral messaging systems for business purposes.
   - The United States will search available sources containing chats, instant messages, or other forms of communication for each agreed upon custodian that the United States is aware, based on reasonable inquiry, are likely to contain responsive non-duplicative documents or communications based on the individual custodian's usage of messaging applications for business purposes, if any.
   - We note that the United States already indicated in our prior letters that we intended to search Microsoft Teams documents and chats where applicable, e.g., as part of Army's central and custodial files. We are conducting a reasonably diligent inquiry with respect to the documents maintained by the individual custodians listed in Appendix A and do not intent to exclude from our search any sources likely to contain non-duplicative responsive documents, including chats and instant messages. Until the search terms have been applied and the document reviewed for all custodians, we do not know which custodians or FAAs will have responsive chats or instant messages, but if we have reason to believe a custodian engages in substantive communications regarding advertising via chat or instant message, we are collecting those materials that exist and will include them in our search. As of now, we have not identified responsive chats or instant messages outside of Army central and custodial files.

2. **For the custodians in Appendix A, please confirm that each custodian was in a role involving "primary responsibility for decision-making and analysis regarding digital advertising strategy, liaising with contractors related to open**

**web display advertising, and/or contracting for advertising services," over the 2019-2023 period, as reflected in the United States' Interrogatory 12 responses. If any particular custodian was not in such role for the entirety of the 2019-2023 period, please confirm the dates of their employment in such role and confirm that you will identify their predecessor or successor and conduct the same search, collection, and review of predecessor or successor custodial documents.**

- For many of the custodians in Appendix A, we have already included predecessors or successors where applicable. Michael Bottenberg, for example, succeeded Brian Pasco in the role of Digital Marketing Specialist at USPS, and neither was in a relevant role at USPS during the period that the other held the position, but together they cover the entire damages period.
- Army:
  - For Army, as previously noted, the legacy recruiting and marketing organization that existed prior to August 2019 was dismantled and a team of new personnel was assembled to form the current Army Enterprise Marketing Organization (AEMO) with little carryover from the previous organization.
  - As part of this reorganization effort, Army created new roles that had previously not existed, and there is very little institutional knowledge remaining about the legacy organization. As such, there is no custodian or set of custodians capable of covering the entire period from January 2019 to January 2023.
  - As previously discussed, however, AEMO personnel routinely use shared workspaces and file storage to communicate and work, and the United States will be searching those central files, which will also include any documents transferred over from the legacy organization. We continue to take the position that these central files will provide more than enough of the types of documents and communications Google is seeking.
  - In the interest of reaching an agreement on custodians swiftly to allow us to reallocate resources currently devoted to these negotiations to meeting our discovery obligations in a timely manner, however, we propose to add two custodians to our search of Army files if doing so, along with the other compromises and agreements set forth in this letter, will facilitate swift resolution of these negotiations. Specifically, the United States will agree to search the custodial files of Col. Matt Weinrich, AEMO Chief of Staff, and Maj. Austin Dziengelewski, Data and Performance Branch Chief. As Chief of Staff, Col. Weinrich coordinates the work of AEMO's various units. Prior to his retirement last month, Maj. Dziengelewski reported to John Horning, one of the original two custodians. Those four custodians collectively will cover the period from August 2019 through January 2023 with respect to internal and external email communications on a broad range of strategic and operational substantive advertising topics, which are further covered by AEMO's robust central files.

FILED PURSUANT TO COURT ORDER DOC. 354

- Veterans Affairs:
    - Veterans Affairs is a bit different from the other FAAs in that it does not have a centralized communications or recruiting organization for which a primary function is coordinating advertising strategy and outreach efforts, advertising campaigns, and advertising contractor relationships.  Rather, Veterans Affairs campaigns and advertising contracts are managed directly by the program managers for the overarching programming initiatives to provide services to veterans, which encompass far more than advertising and communications.
    - As such, many of the listed individuals were only in a relevant role with respect to advertising during the periods in which their programs ramped up and executed an ad campaign and had an active contract with an ad agency for the campaign.  It is for this reason that while the key custodians for other FAAs are communications and marketing professionals, many of the custodians for Veterans Affairs are doctors of medicine and public health.  Their primary role is to run public health initiatives to deliver services to veterans, and the advertising campaigns underlying the United States' damages claims for Veterans Affairs are incidental to that broader role.
    - For these reasons, it is not reasonable to search most of the Veterans Affairs custodial files outside of the period in which they were acting as program manager for an advertising campaign and/or contract task order involving digital advertising, because doing so would be searching their files during a time period in which their role was not sufficiently related to the issues in this case.  Nor is it reasonable to identify predecessors or successors who served in those roles during periods in which they were not responsible for any aspect of digital advertising for Veterans Affairs.  Therefore, the United States will search these custodians' files during the period in which they were in a relevant role with respect to advertising, and will only search predecessors' and successors' files to the extent that those processors and/or successors were in a relevant role with respect to advertising.
    - It is our understanding that the Veterans Affairs custodians listed below, with two additional predecessors not previously listed in Appendix A, cover the entire periods of contract task orders/campaigns associated with the listed programs during the damages period, in addition to the entire damages period with respect to the Director of National Veteran Outreach Office role.
- The period during which the proposed custodians, including eight individuals from Appendix B that the United States is proposing to add as part of a final compromise to address Google's stated concerns, were in a relevant role at the FAA is included in the table below.

| Name | FAA | Title | Period in Relevant Role(s) |
|---|---|---|---|
| Barry Dickey | Air Force | Chief of Strategic Marketing, Air Force Recruiting Services | Pre-2019-Present |
| Roberta Hatch | Air Force | Contracting Officer, Air Force Recruiting Services | Dec. 2021-Present (all predecessors during damages period were in ministerial role, all for only 6-12 months each) |
| Clay Hawkins | Air Force | Deputy for Strategic Marketing – Air Force Reserve (former) | 2021-post-Jan. 2023 This was a new position, no predecessor; successor started after litigation commenced. |
| Lennox Morris | Army | National Media Branch Chief, Army Enterprise Marketing Office | June 2021-Present |
| John Horning | Army | Director of Strategy, Innovation, and Data, Army Enterprise Marketing Office | ~May 2021-Present |
| Matt Weinrich | Army | Chief of Staff, AEMO | Aug. 2019-Present |
| Austin Dziengelewski | Army | Data and Performance Branch Chief | ~Aug. 2019-May 2023 |
| Allen Owens | Navy | Chief Marketing Officer, Navy Recruiting Command | Pre-2019-Present The person who was in his current role until Feb 2021 has retired, but Owens has been in a relevant role the entire time performing the same functions, and he is the best source for documents, as he was the Director of Marketing Operations, Deputy CMO, and then CMO, and has substantively performed a similar role with respect to advertising during the damages period. |
| Adelina Lozzi | Navy | Contract Specialist | Pre-2019-Present |
| Kendall Johnson | Census Bureau | Executive Director for 2020 Integrated Communications Campaign | Pre-2019-present |

FILED PURSUANT TO COURT ORDER DOC. 354

| Name | Agency | Role | Dates |
|---|---|---|---|
| James Cole | Census Bureau | Contract Officers' Representative for Order 8 (national recruiting) | Pre-2019-present (campaign/contract task order ended in late 2021) |
| Christopher Koepke | CMS | Director of the Strategic Marketing Group, Office of Communications | Pre-2019-present |
| Barbara Johanson | CMS | Division Director, Division of Campaign Management, Strategic Marketing Group, Office of Communications | Jan. 2019-May 2019 (acting); May 2020-present |
| Susan McMeen | NHTSA | Director, Office of Communications and Consumer Information | Pre-2019-present |
| Julie Vallese | NHTSA | Associate Administrator, Communications and Consumer Information | May 2020-present |
| Susan Gorcowski | NHTSA | Associate Administrator, Communications and Consumer Information (former) | Pre-2019-May 2020 (retired) (emails have been preserved) |
| Chris Karpenko | USPS | Executive Director, Brand Marketing | Pre-2019-present |
| Michael Bottenberg | USPS | Digital Marketing Specialist | 2021-present |
| Brian Pasco | USPS | Senior Media/Digital Marketing Specialist and Contracting Officer's Representative (former) | Pre-2019-2022 (succeeded by Michael Bottenberg) |
| Michael A. Taylor | Veterans Affairs | Director of National Veteran Outreach Office, OPIA; and Program Manager for ChooseVA Outreach and Strategic Communication Contract/Task Order (Feb. 2020 – Feb. 2024) | Jan. 2022-Present Has access to a shared file with important documents with respect to advertising oversight used/accessed by his predecessor in the National Veteran Outreach Office, Joseph Curtin. Mr. Taylor's previous role was the Director of VA Homeless Veterans Outreach & Strategic Communications. He was not involved in digital advertising between 2019 and January 2022. |

| Joseph Curtin | Veterans Affairs | Director of National Veteran Outreach Office, OPIA (former) | Pre-2019-Dec. 2021 (retired) (emails were preserved) |
|---|---|---|---|
| Lyndon Johnson | Veterans Affairs | Program Manager (former) for ChooseVA Outreach and Strategic Communication Contract/Task Order (Feb. 2020 – Feb. 2024) | Feb. 2020 (start of contract)-Dec. 2021 (succeeded by Michael Taylor) |
| Koby South | Veterans Affairs | Program Manager for VHA General Mental Health and Suicide Prevention Awareness and Education Outreach Support Services Contract/Task Order (Sept. 2017 – Mar. 2023)<br><br>Program Manager for Office of Mental Health and Suicide Prevention Corporate Communications Contract/Task Order (Oct. 2019 - end of conractOct. 2020) | Pre-2019-present |
| Aimee Johnson (former employee) | Veterans Affairs | Program Manager for Office of Mental Health and Suicide Prevention Corporate Communications Contract/Task Order (Sept. 2018 – Sept. 2019) | Sept. 2018 (start of contract)-Sept. 2019 (end of contract) |
| Juliana Hallows | Veterans Affairs | Program Manager for PREVENTS Contract/Task Order (Sept. 2019 – Nov. 2021) | Sept. 2019 (start of contract)-Nov. 2021 (end of contract) |
| Dr. Susan Strickland | Veterans Affairs | Program Manager for "Keep it Secure" Contract/Task Order (June 2022 – June 2023) | June 2022 (start of contract)-present |
| James David Leamon (former employee) | Veterans Affairs | Program Manager for "Keep it Secure" Contract/Task Order (Dec. 2021 – Apr. 2022) | Dec. 2021 (start of contract)-April 2022 (end of contract) |

FILED PURSUANT TO COURT ORDER DOC. 354

| Dr. Todd Burnett | Veterans Affairs | Program Manager for Suicide Prevention Communications Support Contract/Task Order (Oct. 2022 – June 2023) | Oct. 2022-present |
| Dr. Eric Shuping | Veterans Affairs | Program Manager for Airborne Hazards and Open Burn Pit Registry Contract/Task Order (Sept. 2019 – Mar. 2021) | Sept. 2019 (start of contract)- Mar. 2021 (end of contract) |
| Darren Sherrard | Veterans Affairs | Program Manager for VHA Recruitment Marketing & Advertising Campaign | Pre-2019-present |

3. **For former-employee custodians listed in Appendix A, please confirm the end dates of their employment and confirm that you will identify their successor and conduct the same search, collection, and review of their successor custodial documents.**
The successors for the former personnel in the relevant roles listed in Appendix A are already listed (or have been added above), where they exist, as explained in more detail above.

## Google's Proposed Additional Custodians

With respect to Appendix B, as discussed in our May 26 letter, these custodians are generally either likely to have documents that are largely duplicative of a proposed custodian, have a role that is primarily non-substantive in nature with respect to digital advertising, or are being proposed as custodians above.

| Name | FAA | Comments |
|---|---|---|
| Rico Lane | Air Force | Would not have unique documents that would not also be in Dickey's files. Between Mr. Dickey's and Ms. Hatch's emails and the Air Force central files, Mr. Lane appears in over 19,000 documents already proposed to be searched. |
| Clay Hawkins | Air Force | Proposed to add. |
| Matt Weinrich | Army | Proposed to add. |
| Austin Dziengelewski | Army | Proposed to add. |
| Glenna Wood | Army | She is in the business management directorate for AEMO, which handles back office functions. Financial/invoicing documents are being collected separately and her central files are included in the AEMO central files. Including |

FILED PURSUANT TO COURT ORDER DOC. 354

| | | |
|---|---|---|
| | | Teams, which they use routinely. Reports to Weinrich, who we have proposed to add. |
| Daniel Flynn | Army | Reports to Morris, would have many duplicative documents, would also be reflected in central communications. |
| LeeAnn Craig | Army | Reports to Morris, would have many duplicative documents, would also be reflected in central communications. |
| Tom Bazemore | Army | Reported to Maj. Dziengelewski until he retired last month, and regularly communicated with Maj. Dziengelewski via email and Teams. As such, Maj. Dziengelewski's files, along with AEMO central files, which will include communications from Maj. Bazemore, should provide significant files for Maj. Bazemore. |
| Dean Stewart-Curry | Navy | Has a largely administrative/financial role without substantive involvement in advertising. When there is a procurement work statement, Dean and his team (including Cheryl Aimes-Tillman) handle internal routing documents that validate whether there is money to support the request. Approves financial documents before submission to the comptroller. Invoices and supporting documents are being searched as central files. |
| Cheryl Aimes-Tillman | Navy | Role is related to billing and invoicing, and any relevant documents related to that would be in the central files already being searched. Any correspondence with the contractor is not substantive but is with their government contracts director and finance team. |
| Adelina Lozzi | Navy | Proposed to add. |
| Kevin Clauson | Navy | He is Adelina Lozzi's supervisor's supervisor, in a government contracting role without substantive involvement in advertising, has no direct contact with the contractor, and supervises many contracts that have nothing to do with advertising. Any documents he might have would be duplicative of Adelina Lozzi's files. |
| Stacey Jordon | Census Bureau | Deputy to Kendall Johnson working on Order 15, routinely uses central files, and is unlikely to have significant unique content in her custodial files. |
| James Cole | Census Bureau | Proposed to add. |
| Laura Salerno | CMS | Reports up to Chris Koepke, supervises Barbara Johanson, and uses central files, so her |

FILED PURSUANT TO COURT ORDER DOC. 354

| | | |
|---|---|---|
| | | documents are unlikely to contain unique responsive content. |
| Seth Edlavitch | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Natalie Barg | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Antoinette Bramlett | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Jessica Beauchemin | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Maya Owens | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Arlene Jimenez | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Cameron Smith | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Maria (Jimena) Abreu | CMS | Reports up to Barbara Johanson, whose custodial files are being searched, and routinely uses central files, which are being searched. |
| Amy Bedsaul | CMS | Does not have knowledge or information about a campaign or contract underlying The United States' damages claims. |
| Shelly Ray | CMS | Does not have knowledge or information about a campaign or contract underlying The United States' damages claims. |
| Elizabeth Nilsson | NHTSA | Reports up to and regularly communicates with Susan McMeen, whose custodial files are being searched, and uses central files, which are being searched, including a central folder labeled "Elizabeth Nilsson" containing thousands of documents. |
| Kil-Jae Hong | NHTSA | Reports up to and regularly communicates with Susan McMeen, whose custodial files are being searched, and uses central files, which are being searched, including a central folder labeled "Kil-Jae Hong" containing thousands of documents. |
| Mike Joyce | NHTSA | Reports up to and regularly communicates with Susan McMeen, whose custodial files are being |

FILED PURSUANT TO COURT ORDER DOC. 354

|  |  |  |
|---|---|---|
|  |  | searched, and uses central files, which are being searched, including a central folder labeled "Mike Joyce" containing thousands of documents. |
| Lori Millen | NHTSA | Reports up to and regularly communicates with Susan McMeen, whose custodial files are being searched, and uses central files, which are being searched, including a central folder labeled "Lori.Millen" containing hundreds of documents. Over 50,000 documents in Susan McMeen's email files were sent to or from Lori Millen. |
| Shalene Starr | USPS | Reports up to Chris Karpenko and supervises Michael Bottenberg, so her documents are unlikely to contain unique responsive content. |
| Kim Workinger | USPS | Responsible for the USPS.com website. Her knowledge of display advertising is with respect to coordinating creative and brand continuity so that it aligns with USPS.com. |
| Dr. Barbara Van Dahlen | Veterans Affairs | Former employee. She was a co-program manager with Juliana Hallows on the PREVENTS contract/task order, who was responsible for managing files related to the PREVENTS program, and so Dr. Van Dahlen's documents are unlikely to provide enough unique content to justify collection and review. |
| Lyndon Johnson | Veterans Affairs | Proposed to add. |
| Lauren Grover | Veterans Affairs | Does not have knowledge or information about a campaign or contract underlying the United States' damages claims. |
| Rhett Herrera | Veterans Affairs | Contents of custodial files related to relevant role are likely to be duplicative of Koby South's documents, as all contract task orders/campaigns on which he worked were also managed by Koby South, and both would be included on almost all responsive communications (over 200,000 documents in Koby South's email files were sent to or from Rhett Herrera). |
| Christina Graham | Veterans Affairs | Was responsible for contract maintenance or financial contract matters without substantive involvement in digital advertising. |
| Lindi Sylvester | Veterans Affairs | Was responsible for contract maintenance or financial contract matters without substantive involvement in digital advertising. |

FILED PURSUANT TO COURT ORDER DOC. 354

### Search Terms

As explained in our meet and confer on June 9, the United States agrees to run the following revised Search String No. 19 on agreed upon custodial and central files:

(Adsmovil OR Cisneros OR Aptive OR Brunet OR Tombras OR CVP OR "Customer Value Partners" OR Edelman OR Dentsu OR Elevation OR HCN OR "Hispanic Communications" OR "Hispanic Comms" OR IPG OR Interpublic OR Reingold OR JRR OR MiQ OR "Media iQ" OR Omnicom OR GMMB OR "Fleishman Hilliard" OR FleishmanHilliard OR Stratacomm OR AdCouncil OR "Advertising Council" OR "District Communications" OR "District Comms" OR DCG OR Trilogy OR DXTRA OR "IW Group" OR IWG OR McCann OR UMWW OR Matterkind OR Cadreon OR Kinesso OR Mindshare OR OMD OR Wavemaker OR DDB OR "GSD&M" OR GSDM OR Ketchum OR "Porter Novelli" OR Novelli OR "VMLY&R" VMLYR OR WPP OR "Young & Rubicam" OR "Y&R" OR "Weber Shandwick" OR (GSA w/3 schedule)) AND (digital or web* OR online OR internet) AND display

### RFP 12

With respect to RFP 12, which asks for documents sufficient to show certain data related to advertising purchases, we have explained that the FAAs do not maintain data in structured databases that can be pulled in the format the Google is requesting, and instead has such information, if at all, in the form of documents provided over time by their ad agency contractors. The exception to this is Army, which has contractual rights to data maintained on its behalf by its ad agency contractor, DDB. With respect to your request that we direct the ad agencies to produce such data to Google, as we explained in our email on June 2, 2023, there is a contractual relationship between the FAAs and their advertising agencies whereby the advertising agencies purchase digital advertising on behalf of each FAA. Outside of that contractual relationship, the FAAs do not control the actions of the advertising agencies, which are independent companies that the United States has also served with Rule 45 subpoenas. We also confirmed that (1) we have not asked any ad agency used by an FAA not to produce documents pursuant to Google's subpoenas, and (2) if any specific ad agency states it cannot comply with Google's subpoena due confidentiality or other obligations owed to an FAA, we would address the situation expeditiously upon learning of it.

Your request in your June 9 email that "the United States specify what contractual or other prohibitions preclude the FAAs from directing their ad agencies to produce the responsive data" appears to ask the same question, which merits the same answer. We have asked ad agencies to produce data via Rule 45 subpoenas, and where we have a contractual right to "direct" production of such data, we are seeking it via the government contracting process.

FILED PURSUANT TO COURT ORDER DOC. 354

\*\*\*

  Please contact me at (202) 476-0293 or katherine.clemons@usdoj.gov if you have any questions regarding this letter.

                Sincerely,

                */s/ Katherine Clemons*
                Katherine Clemons
                Trial Attorney
                Antitrust Division
                U.S. Department of Justice

FILED PURSUANT TO COURT ORDER DOC. 354