# EXHIBIT 15
# FILED UNDER SEAL

FILED PURSUANT TO COURT ORDER DOC. 354

.
     Q.    .
     Q.    .
     Q.    .
     Q.    .
     Q.   {KWRA*UPD/} {KWRO*PB/} .
     Q.    .
     Q.   {PHRORPBG/} {PHRORPBG/} {PHRORPBG/} coloring
coloring coloring I can't remember I can't remember I can't
remember {KWROEURPL/} {KWROEURPL/} {KWROEURPL/} Colonel
Horning {KRORPBG/} {KRORPBG/} {KRORPBG/} {O/} {KWRO*EUPL/}
{KWRO*EUPL/}



             I had
             THE VIDEOGRAPHER:  Good morning.  We're going on
the record at 9:  34 on August 18th, 2023.  Please
note that the microphones are sensitive and may pick up
whispering and private conversations.  Please mute your
phones at this time.
             Audio and video recording will continue to take
place unless all parties agree to go off the record.  This
is Media Unit 1 of the video-recorded deposition of colonel
John {HORPBG/} in the matter of United States et al.  V
Google LLC.  The location of the deposition is Paul
Weiss.  My name is Glenn Fortner representing Veritext and
I'm the videographer.
             The court reporter is Ryan Black from the firm
Veritext.
             I'm not related to any party in this action, nor
am I financially interested in the outcome.  If there are
any objections to proceeding, please state them at the
time of your appearance.  Counsel and all present,
including remotely will now state their appearances
and affiliations for the record beginning with the
noticing attorney.
             MS. GOODMAN:  Martha Goodman from the law firm
Paul Weiss on behalf of Google LLC.  I'm joined by
my colleague Leah {HEUB/} letter.
             MR. MCBIRNEY:  Jimmy Mc birth I with the
{KWROUTS/}.  {KHAOEUS/} Prichard on pee {HAFT/} of the
United States.  Alvin chew on behalf of the United States.
Mark {SOS/} now ski on behalf of the United States:    Mow
Alder son any.  United States Army.  {HRO*EUPBZ/} United
States.
             THE VIDEOGRAPHER:  With her sworn.  Al al also
just to let you know I have cath lien Clemons from the DOJ
also joining in and out.

BY MS. GOODMAN:

    Q.   Good morning, {KRORPBG/}?

    A.   Good morning.

    Q.   Have you been deposed before?

    A.   I have not.

    Q.   Do you understand your purpose here today is to provide truthful and accurate testimony to the best of your testimony and knowledge?

    A.   I do.

    Q.   Is there any reason you cannot do that today?

    A.   No.

    Q.   Okay.  Because the court reporter is writing everything down, it's important that we not talk over one another so please let me finish my question before you begin your answer.  Okay?

    A.   Okay.

    Q.   And because he's again taking a written transcript, the -- you have to speak verbally as oppose {20D/} with sounds like uh-huh or huh-uh so that it can be accurately reflected in the transcript.  Okay?

    A.   I understand.

    Q.   If you don't understand my question, please let me know.  Okay?

    A.   Yes.

    Q.   Otherwise I assume you'll understand.  Okay?

    A.   Yes.

    Q.   In the normal course of your work do you consider the Department of Justice Antitrust Division to be your counsel?

    A.   I'm not sure that I'm qualified to answer within the legal constructs of the US government who our actual counsel is or is not.

    Q.   I'm not asking for you to provide a legal opinion. I'm asking for your personal understanding and your considerations, your personal opinions, so do you consider the Department of Justice Antitrust Division to be your counsel in the normal course of your work?

    A.   I don't believe that I have a personal opinion on who our counsel is.  I only know what's -- yeah.  I -- I don't have an opinion on that.

    Q.   Have you ever requested legal advice from the Department of Justice Antitrust Division?

             MR. MCBIRNEY:  Objection.  Calls for privileged information.  Instruct the witness not to answer.

             MS. GOODMAN:  You're asking him -- the information that would appear on a privilege log with a request for legal advice that's required for you as the privilege -- the party asserting a privilege to establish the proprietary of the priv {HREPBL/} and meet your burden of proof and persuasion that the privilege applies, you're

instructing him not to answer that question.

       MR. MCBIRNEY:  You are asking the witness whether he has requested legal advice from the Department of Justice Antitrust Division?

       MS. GOODMAN:  Yeah.

       MR. MCBIRNEY:  You can answer that yes or no.

       ==THE WITNESS:==  ==No.==

BY MS. GOODMAN:

    Q.  To what extent has anybody at the Department of Justice ever asked you to provide information about the Army's advertising business?

       MR. MCBIRNEY:  Objection.  Privileged.  Instruct the witness not to answer.

BY MS. GOODMAN:

    Q.  Are you going to follow that instruction, sir?

    A.  Yes.

    Q.  Okay.  When did you first have any conversations with anybody at the Department of Justice Antitrust Division?

    A.  As best that I can recall, our first interaction would have been in early spring of 2023 or late winter.  I -- I can't recall the specific date.

    Q.  So sometime between late winter of what year?

    A.  2023.

    Q.  Okay.  And early spring of 2023?

    A.  Correct.

    Q.  Okay.  What was your understanding of the reason for your conversations with the Department of Justice Antitrust Division?

       MR. MCBIRNEY:  Objection.  Calls for privileged information.  Instruct the witness not to answer.

BY MS. GOODMAN:

    Q.  Are you following that instruction?

    A.  Yes.

    Q.  Has the Department of Justice ever requested information about digital advertising purchases by the United States Army?

       MR. MCBIRNEY:  Objection.  Calls for privileged information.  Instruct the witness not to answer.

BY MS. GOODMAN:

    Q.  Are you following that instruction?

    A.  Yes.

    Q.  Do you -- in the course of your work, do you routine -- do you field requests for information from the Department of Justice on an ordinary basis?

    A.  I do not.

    Q.  Are you aware of anybody else within the AEMO who re -- regularly fields requests for information from the Department of Justice?

```
     A.   I'm not personally aware of anything like that
          (Exhibit No. {}, was introduced electronically.).

BY MS. GOODMAN:
     Q.   I'm marking Exhibit 61, a privilege log dated June
26th, 2023 provided by the United States in this
litigation.  I'm handing it to the witness.
          Now, {KRORPBG/}, this is not a document I would
normally show a percipient witness, but I'm essentially
ham strung and must do so here today for reasons that don't
pertain to you, per se.  But I would like you to turn to
Page 11 of this document.
          Let me know when you're there?
     A.   Okay.  I am on Page 11.
     Q.   Okay.  And if you look back at Page 1, actually,
you see there is a heading at the top that indicate what
each of the columns are?
     A.   Okay.
     Q.   Okay.  So you see in a in the, one, two, three,
four, five -- fifth column over on Page 23, which is the
to column, your name is listed --?
     A.   On, I'm sorry, could you say what page again.
I thought you said Page 23.
     Q.   I'm sorry.  I meant Page 11?
     A.   Okay.
     Q.   It's line entry 23 on Page 11?
     A.   Okay.
     Q.   So one two three four five columns over you're
listed in the to column, do you see that?
     A.   I do.
     Q.   And do you see the date in the few-more columns
over of January 5th, 2023?
     A.   Okay.
     Q.   Does that refresh your recollection of the time
period where you first had conversations with the
Department of Justice Antitrust Division?
     A.   Can you help me understand what it is I'm actually
looking at here.
     Q.   Yeah.  So this is what's called a privilege log?

     A.   I'm not familiar with one 67 those are.
     Q.   A priv {HREPBL/} log is a document that it parties
are required to provide to the opposing side when they're
asserting attorney work product over communications
--?
     A.   Okay.
     Q.   -- that they are not providing to the other side
in litigation so that's what a privilege log is and so by
virtue of this entry online 23 the United States is assert
a privilege as described in the last column --?
```

A.   Okay.

Q.   -- over your communication with Mr. Wes sells and others --?

A.   Okay.

Q.   -- listed on this page?

A.   Okay.

Q.   Do you understand now?

MR. MCBIRNEY:  Objection.  Assumes facts not in evidence.  Form of the question.

BY MS. GOODMAN:

Q.  Do you understand -- do you have an appropriate understanding now of what a privilege log is?

A.   I do understand what this document is now.

Q.   Okay.  So having now looked at this document and understanding what it is, does it refresh your memory at all that -- as to the timing of your conversations with the Antitrust Division?

MR. MCBIRNEY:  Objection; foundation, and to form.

THE WITNESS:  It does not refresh my recollection, but I have no reason to believe this is not true.

BY MS. GOODMAN:

Q.  Okay.  And you see in the column next to the date, which is the subject, if you look back at Page 1, you can see that that is the subject column?

A.   Yes.

Q.   Okay.  Can you read the subject to me here?

A.   The subject on item 23 of the privilege log says {PWRABG/} eliminates external DOJ-enArmy interview on Google-meta advertising products used by DOD.

Q.   Okay.  Do you recall who was interviewed -- who at the Army was interviewed on Google meta advertising products used by DOD on or around this date of January 5th, 2023.

MR. MCBIRNEY:  You can answer that yes or no.

THE WITNESS:  I do not recall.

BY MS. GOODMAN:

Q.  Okay.  Do you recall yourself being interviewed on this topic?

A.   I recall being interviewed, but I do not recall that this was the date for it.

Q.   Okay.  Do you recall who interviewed you?

A.   I only recall -- I didn't -- there was likely more than one person.  I only recall one by name.

Q.   Who do you recall by name?

A.   Mr. Chase Pritchett.

Q.   Okay.  How long did the interview last?

A.   I can't be certain.  I think it was, likely, 6 0 to 90 minutes, perhaps.

Q.   And this is a yes or no question:   Did the
United States Antitrust Division lawyers present explain to
you the purpose of the interview?
       MR. MCBIRNEY:  Objection.  Calls for privileged
communication.  Instruct the witness not to answer.
BY MS. GOODMAN:
   Q.  Are you following that instruction?
   A.   Yes.
   Q.   What was your understanding of the purpose of the
interview.
       MR. MCBIRNEY:  Objection.  Calls for priv
{HREPLD/} information.  Instruct the witness not to answer.

BY MS. GOODMAN:
   Q.   Are you following that instruction?
   A.   Yes.
   Q.   What facts -- strike that.  At the time reflected
here on this log --?
   A.   Mm-hmm.
   Q.   -- January 5th, 2023, were you aware of any
anticompetitive conduct on the part of Google affecting
the Army's advertising.
       MR. MCBIRNEY:  Objection.
BY MS. GOODMAN:
   Q.  Purposes?
       MR. MCBIRNEY:  Objection.  Calls for a legal
conclusion.
BY MS. GOODMAN:
   Q.  You may answer?
   A.   I'm not sure that I have -- am qualified to know
or would have been made available information information
-- or would have had any information available to me on
that topic.
   Q.   Around this time of January 5th, 2023, were you
aware of any conduct on the part of Google that was causing
the Army to pay prices for advertising that were too high?

   A.   I had not been made aware of anything like that at
the time frame that you're asking.
   Q.   Okay.  How about prior to the time frame that I'm
asking?
   A.   Not that I can recall, no.
   Q.   Okay.  What's your understanding of the word
anticompetitive?
       MR. MCBIRNEY:  Objection.  Calls for legal
conclusion and foundation.
       THE WITNESS:  I only know the common language
terminology.  I don't understand the actual legal
definitions or implications.  Anti {SKPET/} ive:
Not competitive.

FILED PURSUANT TO COURT ORDER DOC. 354

BY MS. GOODMAN:
    Q.  So what is your common language understanding of
the word anticompetitive?
    A.   I understand it in the context of business
practices meaning not adhering to a competitive, fair
practice.
    Q.   Okay.  So using your definition of
anticompetitive, which is in the context of business
practicing -- prac {TEUBGS/}s meaning not adhering to a
competitive fair practice, at this time January 5th of
2023, were you aware of any anticompetitive practices on
the part of Google affecting the Army's advertising?

        MR. MCBIRNEY:  Object to the form of the question.

        THE WITNESS:  I was not aware.
BY MS. GOODMAN:
    Q.  At the time of this discussion with the DOJ, what
was your understanding, if any, as to the possibility of
litigation?
        MR. MCBIRNEY:  Objection.  Calls for privileged
information.  You can answer that question if you can
answer it without divulging any privileged information.
If you cannot, then I'll instruct you not to answer.
        THE WITNESS:  Can you repeat the question.
BY MS. GOODMAN:
    Q.  At the time of the discussion with DOJ on or around
January 5th, 2023, what was your understanding, if any,
as to the possibility of litigation?
        MR. MCBIRNEY:  Same instruction.  If you can
answer that without disclosing privileged information, you
may.  Otherwise instruct you not to answer.
        THE WITNESS:  None.
BY MS. GOODMAN:
    Q.  Around the time of this meeting -- strike that.
        Around the time of these communications with
the Department of Justice about Google-meta advertising
products used by DOD, what were your personal views on
having to participate in those discussions?
        MR. MCBIRNEY:  Objection; vague.
        THE WITNESS:  Can you clarify the question to the
extent what was my personal view of being involved in a
meeting?
BY MS. GOODMAN:
    Q.  Yes.  What was your personal view of being
involved in a meeting or discussions with the Antitrust
Division about Google advertising -- meta advertising
products used by DOD?
        MR. MCBIRNEY:  Same objection.  And caution the
witness not to divulge confidential information in your

FILED PURSUANT TO COURT ORDER DOC. 354

answer.
          MS. GOODMAN:  Confidential information.
          MR. MCBIRNEY:  I'm sorry, priv {HREPLD/}
information.
          THE WITNESS:  I have no personal feeling about .
BY MS. GOODMAN:
    Q.  Okay from whom did you receive an order if anyone?


    A.  From AMO leadership.
    Q.  Who in AMO leadership?
    A.  As best as I re -- can recall, the AMO
chief of staff.
    Q.  Who's that?
    A.  Colonel Matt wine racemic {HRO*EUPBZ/}.
    Q.  Why did Mr. Wine Rick -- I'm sorry, colonel wine
Rick order you to participate in this meeting?
          MR. MCBIRNEY:  Objection.  Calls for speculation.


          THE WITNESS:  Yeah.  I -- I can't answer as to
why he chose me.
BY MS. GOODMAN:
    Q.  Okay.  Did he explain to you why he chose you?
    A.  No.
    Q.  When did he order you to -- to participate in
these discussions?
    A.  I can't recall a -- a specific date.  As best as
I can recall, it was via an email saying that there was
going to be individuals who needed to ask questions and I
should make myself available, but I don't remember when.


    Q.  Okay.  Anything else you remember about that
email and what it says?
    A.  No, I don't.
    Q.  Did you have any discussions outside of email with
colonel wine Rick about this request?
    A.  No.
    Q.  And setting aside the fact that you received an
order to participate in discussions with the Department of
Justice on this topic, is it your testimony you had no
personal view whatsoever as to your participation in such
meetings?
          MR. MCBIRNEY:  Object to the form and asked and
answered.
          THE WITNESS:  Yeah.  I have no personal opinion
on -- on attending the meeting.
BY MS. GOODMAN:
    Q. Do you have any personal opinion about your
involvement in this -- in discussions -- setting aside
just a meeting, but throughout the month of January, 20
{23-RBGS/} did you have any personal opinion about your

FILED PURSUANT TO COURT ORDER DOC. 354

involvement in discussions or information gathering with
the Department of Justice at that time?
      MR. MCBIRNEY:  Object to form.
      THE WITNESS:  No.
      MR. MCBIRNEY:  Make sure you give me time to
object.
BY MS. GOODMAN:
    Q.  Was anybody else, to your knowledge, involved in
discussions with the Department of Justice in and around
March -- sorry, June -- January 5th, 2023 about the Army's
use of advertising products from Google or meta?
    A.  Yes.
    Q.  Who else?
    A.  The only other individual that I can recall by
name is lieutenant colonel Lennox Morris.
    Q.  And what was his involvement?
      MR. MCBIRNEY:  Objection.  Calls for .
      THE WITNESS:  Yeah.  I wasn't in the room during
his discussion, so I don't know.
BY MS. GOODMAN:
    Q.  Did environment separate discussions with the
Department of Justice, to your knowledge?
    A.  They were separate from any discussion that I had.

    Q.  And were these discussions that you had, were
they over email, by phone, by Zoom, by Teams, what
was the mode of communication?
    A.  Face-to-face.
    Q.  Face-to-face.
      And where face-to-face?  In what town or city or
--?
    A.  In Chicago.
    Q.  Okay.  And were they at AMOHQ?
    A.  That's correct.
    Q.  And did Department of Justice lawyers travel to
Chicago to attend?
    A.  Yes.
    Q.  Okay.  What's your best recollection of when that
-- when a meeting at AMO, HQ took place?
    A.  Late winter.
    Q.  In 2023?
    A.  In 2023.
    Q.  Any other in-person meetings that you recall?

    A.  No.
    Q.  So from January 5th as we're seeing on this
privilege log to the present, how many in-person
face-to-face meetings have you had with any lawyers from
the Department of Justice?
    A.  I'm sorry.  Could you repeat the modes once again

or the methods.
    Q.   .
    Q.   This specific is in person specific to
face-to-face meetings {HRO*EUPBZ/}?
    A.   Okay.  The one that we just mentioned and then
not again until yesterday.
    Q.   Okay.  How about video conferences?  How many
video conferences do you recall having with lawyers from
the Antitrust Division of the Department of Justice in the
year 2023?
    A.   Two.
    Q.   When did those take place?
    A.   Within the last two weeks.
    Q.   Who attended those meetings -- those video
conferences?
    A.   Myself, Mr. Pritchett, Mr. CHU, major al
{TKAR/} son any.  And there might have been another one or
two in or out of the meeting at a particular time, but I
don't recall particularly who that was.
    Q.   Okay.  How long did the video conferences last?

    A.   Maybe two hours.
    Q.   So -- so am I correct that you've had two video
conferences in the last two weeks that lasted
approximately two hours with attorneys from the Department
of Justice?  Is that a fair summary?
    A.   Yes.
    Q.   Okay.  Was that in connection with preparing for
your deposition in this case?
    A.   Yes.
    Q.   Did it cover topics related to this litigation --
and this is a yes or no question -- did it cover topics
related to this litigation other than your deposition?

    MR. MCBIRNEY:  I'm going to object to that as
privileged and instruct the witness not to answer.
    MS. GOODMAN:  Why is he permitted to answer about
whether he had a meeting with you for his deposition but
not about the high-level whether there were any other
topics of the same kind that would appear on a privilege
log.
    MR. MCBIRNEY:  I probably could have object the toed
last question too I'm trying to be excessively reasonable
but you're going beyond what I will follow him to answer
{HRO*EUPBZ/}.
BY MS. GOODMAN:
    Q.  Are you going to {TPOBG/} that instruction, sir?

    A.   Yes.
    Q.   Yesterday you said you had an in-person meeting;

```
is that correct?
     A.   Yes.
     Q.   How long did that last?
     A.   Maybe five hours.
     Q.   Who was present?
     A.   Mr. Chase, Mr. CHU by video conference.  One or
two other individuals that I don't recall names and Jimmy.

     Q.   The two other individuals that you don't recall
names --?
     A.   Can I make a correction, as well.
     Q.   Please?
     A.   Also major al {TKAR/} son any.
     Q.   Okay.  So for the two individuals whose names you
don't recall, what organization f any, were they
affiliated with?
     A.   I can't state for sure that I know.  I can only
make an assumption.
     Q.   What's your assumption?
     A.   That they are also employees of the Department of
Justice.
     Q.   What's that assumption based on?
     A.   That they were invited into the meeting.
     Q.   Okay.  But you didn't ask for their affiliation?

     A.   I did not.
     Q.   Was that meeting for preparation -- in preparation
for this deposition?
     A.   Yes.
     Q.   Okay.  How many conversations -- strike that.
          How many communications, whether by phone,
email, in-person, video conference, have you had with
major al {TKAR/} son any with respect to the Army's
involvement in this litigation?
     A.   I'm -- I'm not certain that I've ever had a direct
communication to major al {TKAR/} son any with respect to
this.
     Q.   And when you say direct communication, are you
recollecting -- recollecting any indirect
communications?  I just want to understand if you're
making a distinction by the use of the term directly ?
     A.   I can recall email exchanges in which he was also
one of the recipients of the email.
     Q.   Okay.  And who were the other recipient of the
email that you're recalling on which major al {TKAR/} son
any was also a participant?
     A.   As best I can recall, there would have been the
individuals from the Department of Justice.
     Q.   Okay.  So is it accurate to say that outside of
communications also involving attorneys from the
```

Department of Justice, you have not had any conversations
with the Army's attorney, major al {TKAR/} son any
about this litigation?
    A.   I have not.
    Q.   And major al {TKAR/} son any is an attorney,
correct?
    A.   Yes.
    Q.   Okay.  In 2023, have you asked anybody at the
advertising agency DDB to provide you information on
the Army's advertising purchases?
        MR. MCBIRNEY:  I'm going to object to the extent
it calls for privileged communications.  If you are
able to answer that question yes or no without disclosing
privileged information, you may do so.  Otherwise I
instruct the witness not to answer.
        THE WITNESS:  Can you be more specific in the
question?
BY MS. GOODMAN:
    Q.   In the year 2023, have you personally asked
anybody at the advertising agency DDB to provide you
information, data, facts, dates, prices, any kinds of
information related to the Army's advertising purchases?

        MR. MCBIRNEY:  Again, I'm going to instruct the
witness if you can answer that question without disclosing
privileged information, you may answer the question.
Otherwise, I'd instruct you not to answer.
        THE WITNESS:  I've had a number of routine
exchanges with the agency over the course of the time
period, and by the nature of our relationship,
advertising is always discussed.  I don't think I can
answer your question, because it's still kind of broad as
in are you discussing ads.  And I -- I certainly -- I
can't recall a specific instance that would answer your
question without it being a little more specific.
BY MS. GOODMAN:
    Q.   Okay.  Have you asked anybody at the advertising
agency DDB to give you volume of ads purchased,
cost, cost of such ads, dates of such purchases, vendors,
whether it be Google or some other vendor through which the
ads were purchased, as to the Army's -- and I'll narrow
it further -- digital advertising purchases?
        MR. MCBIRNEY:  Again, I'm going to instruct the
witness if you're able to answer that question without
disclosing privileged communications from counsel, you
may do so.  If you are not, then I instruct you not to
answer.
        THE WITNESS:  Okay.  On the advice of counsel,
I'm not going to answer that question.
BY MS. GOODMAN:

Q.  Okay.  To your knowledge, has anybody at AMO,
so not yourself, but anybody else with whom you work or
know, to your knowledge has anybody else at AMO
asked the advertising agency DDB to give you -- to
give AMO volumes of ad purchased, cost, dates,
vendors or other information in that nature regarding
the Army's digital advertising purchases?
        MR. MCBIRNEY:  I object to the form of the
question and instruct the witness that if you can answer
the question without disclosing privileged information,
you may do so.  If you cannot, then I instruct you not to
answer.
        THE WITNESS:  To the best of my knowledge, yes.

Q.  Okay.  Who at AMO, to your knowledge,
has asked DDB for such information?
        MR. MCBIRNEY:  Again, I'm going to instruct the
witness if you can answer that question without disclosing
privileged information, you may do so, otherwise instruct
the witness not to answer.
        THE WITNESS:  Okay.  On the advice of counsel,
I'm not going to answer that question.
BY MS. GOODMAN:
Q.  To your knowledge -- well, strike that.
        Has anybody at DDB provided you personally
with information about the Army's digital advertising
purchases of the kind that we just described dates, cost,
vendor?
        MR. MCBIRNEY:  Again, I'm going to instruct the
witness if he can answer that without disclosing privileged
information, you may do so.  Otherwise, I would instruct
you not to answer.
        THE WITNESS:  Can you repeat the question?
BY MS. GOODMAN:
Q.  Has anybody at DDB provided you personally
with any information about the Army's digital
advertising purchases of the kind that we just described,
such as dates of purchase, cost, vendor?
        MR. MCBIRNEY:  Same instruction.
        THE WITNESS:  Not that I can recall.
BY MS. GOODMAN:
Q.  Okay.  To your knowledge, has anybody at DDB
provided anybody else, other than yourself at AMO,
with information about the Army's digital advertising
purchases of the kind that we just described, such as
dates of purchase, cost or vendor?
        MR. MCBIRNEY:  Object to the form of the question.
Calls for speculation.  And instruct the witness that if
you can answer the question without disclosing privileged
information, you may do so.  If not, I would instruct

you not to answer.
          THE WITNESS:  I have no personal knowledge of that
occurring.
BY MS. GOODMAN:
    Q.  Okay.  Do you have knowledge other than personal
knowledge that have occurring?
          MR. MCBIRNEY:  Objection; foundation.  Calls for
speculation and same instruction.
          THE WITNESS:  I don't know what knowledge other
than personal means.
BY MS. GOODMAN:
    Q.  Okay.  At the time that you first became involved
in discussions with the Department of Justice in the late
winter 2023 time period, did you consider their inquiries
to be a routine request for information?
          MR. MCBIRNEY:  Objection; vague.
          THE WITNESS:  At the time I first became aware, I
had no indication the purpose at all.
BY MS. GOODMAN:
    Q.  Okay.  Did you have a -- did you have a view -- so
setting aside the department's purpose, which I'm not
asking about, I'm asking about your personal reactions
to receiving an inquiry -- inquiry from the Department of
Justice, how did you view it?  As a routine request for
information?  As fact-gathering?  What was your
personal view of the nature of the inquiry?
          MR. MCBIRNEY:  Object to the form of the question
and vague.
          THE WITNESS:  I viewed it as a routine request for
information.
BY MS. GOODMAN:
    Q.  Okay.  Has the Department of Justice asked you to
get information from the advertising agency DDB?
Yes or no.
          MR. MCBIRNEY:  Ob -- objection.  Calls for
privileged information.  I instruct the witness not to
answer.
          THE WITNESS:  Hime not going to answer the
question on advice of question.
          MS. GOODMAN:  That question is completely properly
because it goes to proof and percent situation as to your
claim of privilege.
          MR. MCBIRNEY:  You are asking the witness to
disclose communications of a particularized
nature from counsel which is clearly work product so that
instruction is entirely proper and I'm instructing the
witness not to answer {HRO*EUPBZ/}.
BY MS. GOODMAN:
    Q.  Okay.  Has the Department of Justice, anybody at
the Department of Justice asked you to participate in any

FILED PURSUANT TO COURT ORDER DOC. 354

conversations with your advertising agency?
          MR. MCBIRNEY:  Same objection.  Instruct the
witness not to answer.  You are asking the witness for
particular communications from counsel.
          MS. GOODMAN:  No, they're very general criesed
communications we've talked about the term information
being very generalized {*689/} even if they're
general criesed their communications from counsel.
          MS. GOODMAN:  Of the kind that appear on privilege
log.  This is exactly what you have to put on a privilege
log.
BY MS. GOODMAN:
    Q.  So, Colonel Horning, I'll ask you again so that I
can get an answer or your -- get a clean record, I should
say.
          Has anybody at the Department of Justice asked you
to get any information from your advertising agency DDB?

          MR. MCBIRNEY:  Objection.  Calls for privileged
communication.  Instruct the witness not to answer.
BY MS. GOODMAN:
    Q.  Are you following that instruction?
    A.  Yes.
    Q.  Okay.  Has anybody at the Department of Justice
asked you to have any conversations with any person from
your advertising agency DDB?
          MR. MCBIRNEY:  Objection.  Calls for privileged
information.  Instruct the witness not to answer.
BY MS. GOODMAN:
    Q.  Are you following that instruction?
    A.  Yes.
    Q.  Okay.  To your knowledge, has anybody at the
Department of Justice asked any other employee of AMO
to obtain information from the advertising agency DDB?

          MR. MCBIRNEY:  Objection.  Calls for privileged
information.  Instruct the witness not to answer.
BY MS. GOODMAN:
    Q.  Are you following that instruction?
    A.  Yes.
    Q.  To your knowledge, has anybody at the Department
of Justice asked any other employee of AMO to have
any conversations with any person from the advertising
agency DDB?
          MR. MCBIRNEY:  Objection.  Calls for privileged
information and instruct the witness not to answer.
BY MS. GOODMAN:
    Q.  Are you following that instruction?
    A.  Yes.
    Q.  Are you aware of any investigation by the

FILED PURSUANT TO COURT ORDER DOC. 354

Department of Justice into Google?
        MR. MCBIRNEY:  You can answer that yes or no.
        THE WITNESS:  Yes.
BY MS. GOODMAN:
    Q.  When did you first become aware that have
investigation?
        MR. MCBIRNEY:  I'm going to instruct the witness
that if you can answer that question without disclosing
privileged information you may do so.  If you cannot,
then I instruct you not to answer.
        THE WITNESS:  I'm not going to answer that
question on the advice of counsel.
BY MS. GOODMAN:
    Q.  Okay.  Prior to late winter 2023, as we've
discussed, had anybody from anyone within the government
reached out to you inquiring about the Army's
digital advertising purchases?
        MR. MCBIRNEY:  Objection; vague and instruct the
witness that if you can answer that question without
disclosing privileged information, you may do so.  If you
cannot, then I instruct the witness not to answer.
        THE WITNESS:  I don't recall any communication
previous to what we already discussed.
BY MS. GOODMAN:
    Q.  Okay.  And how about prior to late winter 2023 did
you have any outreach from anybody within the United States
government about any anticompetitive conduct on the part of
Google affecting the United States Army?  And when I
use the word anticompetitive, I'm using your definition?

        MR. MCBIRNEY:  Objection; vague.  Instruct the
witness that if you can answer that question without
disclosing privileged communication you may do so.  If not
I instruct the witness not to answer.
        THE WITNESS:  I cannot recall a trial prior to
then when anyone from the US government reached out to
me on any topic related to any practice of any vendor or
company involved in advertising .
BY MS. GOODMAN:
    Q.  And that includes Google?
        MR. MCBIRNEY:  Objection; vague .
        THE WITNESS:  My recollection as previously stated
would include Google.
BY MS. GOODMAN:
    Q.  Okay.  Have you received a litigation hold?
        MR. MCBIRNEY:  Objection.  Calls for privileged
information.  Instruct the witness not to answer.
BY MS. GOODMAN:
    Q.  Are you following that instruction?
    A.   Yes.

FILED PURSUANT TO COURT ORDER DOC. 354

        Q.   When did you receive a litigation hold, if any.

            MR. MCBIRNEY:  Objection.  Assumes facts not in
    evidence and calls for privileged information.  Instruct
    the witness not to answer.
    BY MS. GOODMAN:
        Q.  Are you following that instruction?
        A.   Yes.
        Q.   Who sent you a litigation hold, if any?
            MR. MCBIRNEY:  Same objections.  Instruct the
    witness not to answer.
    BY MS. GOODMAN:
        Q.  Are you following that instruction?
        A.   Yes.
        Q.   When did you first become aware that your
    participation in this lawsuit would be re -- necessary?

            MR. MCBIRNEY:  Objection.  Assumes facts not in
    evidence.  Vague.  I first became aware that I would be a
    participant within the last two weeks.
        Q.   Prior to the last two weeks, had you assisted
    anybody in the Department of Justice with gathering
    information related to this litigation?
            MR. MCBIRNEY:  Objection; vague and calls for
    privileged information.  Instruct the witness not to
    answer.
    BY MS. GOODMAN:
        Q.  Have you gathered any information in order to
    provide discovery to Google in this litigation?
            MR. MCBIRNEY:  You can answer that yes or no.

            THE WITNESS:  No.
    BY MS. GOODMAN:
        Q.  Are you aware one way or another if your emails
    have been searched or produced to Google?
        A.
            MR. MCBIRNEY:  You can answer --.
            THE WITNESS:  I'm not aware if it has or has not
    occurred.
    BY MS. GOODMAN:
        Q.  Okay.  Do you recall providing any information for
    the purpose of answering written questions called
    interrogatories in this litigation?
            MR. MCBIRNEY:  Ob -- you can answer that question
    if you can do so without disclosing privileged information.
    If not, I instruct the witness not to answer.
            THE WITNESS:  Can you reTate the question.
    BY MS. GOODMAN:
        Q.  Do you recall providing any information for the
    purpose of answering written questions, called

interrogatories, in this litigation?
    A.   I do not recall.
    Q.   Okay.  What's your understanding of what this
lawsuit is about?
        MR. MCBIRNEY:  Objection; vague.  Instruct the
witness you can answer that question if you can do so
without disclosing privileged information.  Otherwise I'd
instruct you not to answer.
        THE WITNESS:  I don't know that I have a full
legal understanding of -- of the issues at play to say that
I know what the lawsuit is actually about.
BY MS. GOODMAN:
    Q.  Okay.  Do you have any understanding of the issues
in play to have any level of understanding whatsoever about
what the lawsuit is about?
        MR. MCBIRNEY:  Objection; vague and same
instruction.  You can answer if you can do so without
disclosing privileged information.
        THE WITNESS:  I can only make assumptions.
BY MS. GOODMAN:
    Q.  What do you mean by that?
    A.   I can make an assumption based on your inquiry to
me if I understand the word anticompetitive and I make an
assumption based on the information that's been presented
and that the Department of Justice Antitrust Division is
involved.
    Q.  Okay.  Have you read any documents filed in this
case -- documents filed with the court?
    A.   I'm not sure that I can answer that, because I
don't know what has been filed.
    Q.  Okay.  Well, there's a document called the
complaint that initiates a lawsuit.  Have you read that
document?
    A.   I have not.
    Q.   Is there a reason why you have not read it?
        MR. MCBIRNEY:  Objection.  Calls for speculation.

        THE WITNESS:  It's not part of my normal duties.
I'm not a -- I'm not a lawyer.  I'm not normally involved
in legal matters.
BY MS. GOODMAN:
    Q.  Okay.  {PWHAS/} your understanding of the Army's
role in this lawsuit?
        MR. MCBIRNEY:  Objection; vague.  You can answer
the question if you can do so without disclosing privileged
information.  If you cannot, then I instruct you not to
answer.
        THE WITNESS:  I'm not sure that I understand
within the context of how these lawsuits may or may not
work what the Army's role actually is other than I'm

here providing a deposition.
BY MS. GOODMAN:
    Q.   Okay.  Is there any other -- other than your role
in providing a deposition, is there any other purpose to
your understanding for the Army's involvement in this
lawsuit?
        MR. MCBIRNEY:  Again, objection; vague.  If you
can answer that question without disclosing privileged
information, you may do so.  If you cannot, I instruct
you not to answer.
        THE WITNESS:  I'm sorry.  The question was a
little bit hard for me to understand.  Can you -- can you
restate it?
BY MS. GOODMAN:
    Q.   Sure, other than you're providing a deposition,
are you aware of any other role that the Army has in this
lawsuit?
        MR. MCBIRNEY:  Same objection.  Same instruction.

        THE WITNESS:  I'm not aware.
BY MS. GOODMAN:
    Q.   Okay.  How did you learn of a lawsuit being filed?

        MR. MCBIRNEY:  Objection.  Again, if you can
answer that question without disclosing privileged
information, you may do so.  Otherwise I'd instruct not
to answer.
        THE WITNESS:  I'm -- I'm not a lawyer so I don't
know what the steps of a lawsuit being filed are and you
talking about the complaint is the first time that I might
assume that I know a lawsuit has now been filed.
BY MS. GOODMAN:
    Q.   So is it fair to say prior to the questions that
I've asked you --?
    A.   Mm-hmm.
    Q.   -- you had no understanding one way or another if
a lawsuit had been filed?
    A.   That is correct.
    Q.   Okay .  Who if anybody have you discussed your
participation in this lawsuit with?
    A.   My supervisors and peers at the office, the
Department of Justice team, and one individual from my ad
agency.
    Q.   Let's start at the top.  Who -- which
supervisors and peers at the office have you
discussed your participation in this lawsuit with?
    A.   Mr. {PHAF/} {RAO*EDZ/}, the current acting
chief, colonel wine Rick, the chief of staff; sergeant
major Alexander, the command sergeant major, colonel
Shannon Johnson.  Certainly Eric Iverson; and, perhaps,

another personal that I don't -- I can't recall if they may
have been in a room or in a meeting at the time or not.
     Q.   And who is the other person that --?
     A.   I -- I -- I can't recall.
     Q.   Oh you don't know their name?
     A.   I don't want to state that they were and perhaps
they were not.  I can't remember.  Those are the
individuals that I can't recall specifically {HRO*EUPBZ/}.

     Q.   Mr. {PHAF/} reads, the acting {KHAOEFP/},
what did you discuss with him?
     A.   That I would be out of the office TDY in
order to be here today.
     Q.   What is TDY?
     A.   Temporary duty.
     Q.   What else, if anything, did you discuss with him
about your --?
     A.   That's -- that's the full extent.
     Q.   Okay.  What did he say in response?
     A.   I can't recall a specific response other than
probably to acknowledge that I would be out of office.
     Q.   Okay.  How about -- well, Mr. {PHAF/} reads is
the acting chief.  He's the acting chief of what
does that title mean?
     A.   Chief Army enterprise marketing.  That's the
leader position in our organization, our former chief has
just retired, and the incoming has not arrived yet.
     Q.   Okay?
     A.   Mr. {PHAF/} reads is the acting chief in the
interim.
     Q.   Who is the former who retired?
     A.   Major general Alex Fink.
     Q.   And who is the incoming who has not yet arrived?

     A.   Brigadier general Gant.
     Q.   Okay.  Colonel wine Rick, what did you discuss
with him about this lawsuit .
          MR. MCBIRNEY:  Cause the witness in all of these
responses not to disclose privileged information.
          THE WITNESS:  The same as with Mr. {PHAF/} reads
as it was all the attendees at the same meeting essentially
that I was going to need to be traveling on temporary duty
to attend these proceedings .
BY MS. GOODMAN:
     Q.   Okay.  Any other conversations you had with Mr.
Ryan -- wine Rick about -- sorry colonel wine Rick about
this lawsuit?
     A.   No.
     Q.   Any conversations you recall with Mr. -- colonel
wine Rick about the Department of Justice's

investigation?
    A.    I don't recall having any conversations about that
with him.
    Q.    Okay.  How about with Mr. {PHAF/} reads, any
conversations with him about the DOJ's investigation?
    A.    None that I can recall.
    Q.    Okay.  Command sergeant major Alexander, what
conversations, if any, about your participation in this
lawsuit have you had with that individual?
    A.    Again, only that I would be out of office
traveling to participate in these proceedings.
    Q.    Okay.  How about with respect to the Department
of Justice's investigation
    Q.    Any conversations with that individual on that
topic?
    A.    None that I recall.
    Q.    Okay.  Colonel Johnson, what conversations with
that individual had you had about your participation in
this lawsuit?
    A.    Only that I would be traveling and be out of
office for a few days to participate in these proceedings.

    Q.    Okay.  What conversations, if any, have you had
with colonel Johnson about the Department of Justice's
investigation?
    A.    None that I recall.
    Q.    Okay.  Colonel Iverson, what conversations, if
any, have you had with this individual about your
participation this this lawsuit?
    A.    Only that I would be traveling to Washington, D.C.
For these because she's stations here and we might get
together following proceedings.
    Q.    Was she in the meeting that you described earlier
where this was -- your -- your needing to be on TDY
was discussed?
    A.    It's possible, but I don't recall specifically.

    Q.    Okay.  So do you have a -- a separate
recollection of a conversation with colonel Iverson on your
participation in this lawsuit?
    A.    I do.
    Q.    Okay.  When did that occur?
    A.    Within the last week.
    Q.    Okay.  Have you seen colonel Iverson while you've
been here in Washington?
    A.    Not yet.
    Q.    Are you planning to?
    A.    Yes.
    Q.    Okay.  Do you plan to discuss your participation
in this lawsuit when you meet with colonel Iverson?

        MR. MCBIRNEY:  Objection.  Calls for speculation.

        THE WITNESS:  Don't have any plans to talk about
it.
BY MS. GOODMAN:
    Q.  Okay.  Have you had any conversations with colonel
Iverson about the Department of Justice's investigation?

    A.  None that I recall.
    Q.  Do you recall having any conversations with any
other individual within AMO about the Department of
Justice's investigation?
        MR. MCBIRNEY:  You can answer that yes or no.

        THE WITNESS:  Yes.
BY MS. GOODMAN:
    Q.  Who have you had conversations with within AMO
about the Department of Justice's investigation?
    A.  The only individual that I can recall would have
been lieutenant colonel Morris.
    Q.  Okay.  And what did you discuss with lieutenant
colonel Morris about the Department of Justice's
investigation?
        MR. MCBIRNEY:  You can answer that question if you
can do so without disclosing privileged information.  If
not, I instruct you not to answer.
        THE WITNESS:  The only conversation that I can
recall would have been on or around the time of the email
and/or meetings as described on Page 11 of this privilege
log where we both shared with each other that we would be
participating in a discussion with Department of Justice.

BY MS. GOODMAN:
    Q.  Okay.  Anything else you recall about that
conversation?
    A.  No.
    Q.  How about with Glenna wood, have you had any
conversations with her about the Department of Justice's
investigation?
    A.  No.
    Q.  Have you had any conversations with Glenna wood
about your participation in this lawsuit?
    A.  No.
    Q.  Have you had any conversations with major Austin DZ
who's last name I will not attempt to pronounce about the
Department of Justice's investigation?
    A.  No.
    Q.  Have you had any conversations with major DZ
about your participate -- your participation in this
lawsuit?

A.   None that I can recall.
Q.   Have you had any conversations with Heather green
true blood about the Department of Justice's
investigation?
A.   No.
Q.   Have you had any conversations with Heather green
true blood about your participation in this lawsuit?
A.   No.
Q.   Have you had any conversations with Richard Stan
forth about the Department of Justice's investigation?

A.   No.
Q.   Have you had any conversations -- have you had any
communications with Richard Stan forth about the
department -- about your involvement in this lawsuit?
A.   No.
Q.   Have you had any communications with major
Daniel Flynn about the Department of Justice's
investigation?
A.   No.
Q.   Have you had any communications with major
Daniel Flynn about your participation in this lawsuit?
A.   Only that I would be traveling TDY.  Major
Flynn now is one of the individuals that reports to me, so
to let him know I would be out of office.
Q.   And was he in the meeting that --?
A.   He was not.
Q.   Okay.  When did he let him know you would be out
of office?
A.   As best I can recall, {-S/} late last week or
early this week.
Q.   Have you had any conversations with major Leanne
Craig about the Department of Justice's investigation?

A.   No.
Q.   Have you had any conversation -- communications
with major Leanne Craig about your participation in this
lawsuit?
A.   No.
Q.   Of the individuals that we've gone over --?
A.   Mm-hmm.
Q.   -- who -- at AMO, have you had any could
be {SRER/} -- communications with any of them about the
Army's purchases of digital advertising from Google in
2023 ?
MR. MCBIRNEY:  You can answer that question if you
can do so without disclosing privileged information.  If
not, then I instruct you not to answer.
THE WITNESS:  None that I can recall.
BY MS. GOODMAN:

Q.  Okay.  You mentioned that you've spoken or
communicated with an individual at DDB about
your participation in this lawsuit.  Do you recall that?

A.  Yes.
Q.  Who is that individual?
A.  Ms. Holly Springer.
Q.  What did you dis -- what did you and Ms. Springer
communicate about ?
A.  That I would be --.
MR. MCBIRNEY:  Caution the witness you can answer
that question if you can do so without disclosing
privileged communication.
THE WITNESS:  That I would be traveling and would
not be able to attend our typical weekly director's
meeting.
BY MS. GOODMAN:
Q.  How did you let her know that?
A.  I don't recall.  I don't recall the exact means
now.
Q.  Okay.  Any conversations with Ms. Springer --
strike that.  Any communications with Ms. Springer
about the Department of Justice's investigation?
A.  No.
Q.  Any converse -- communications with Ms.
Springer about the Army's digital advertising purchases
using Google products or services?
A.  None that I can recall.
Q.  Have you spoken with Chris poll tore {ABG/} at DDB
about your participation in this lawsuit?
A.  No.
Q.  Have you spoken with Maria -- or have you
communicated with Maria stucco about your participation in
this lawsuit?
A.  No.
Q.  Have you communicated with Ron Davis about your
participation in this lawsuit?
A.  No.
Q.  Have you communicated with any of those three
individuals about the Department of Justice's
investigation?
A.  No.
Q.  Have you communicated with any of those three
individuals about the Army's purchases of digital ads
using Google products or services?
A.  No.
Q.  Are there any other individuals at DDB who
you communicated with about your participation in this
lawsuit?
A.  I'm sorry, can -- can you say that again.  I --

I didn't quite make out the first part of the question.
    Q.   Can you recall any other individual at DDB
with whom you've communicated about your participation in
this lawsuit?
    A.   No.
    Q.   Can you think of any other individual at DDB
who you have communicated with about the Department of
Justice's investigation?
    A.   I cannot.
    Q.   Are there any other individuals at DDB who
you recall communicating with about the Army's purchases
of digital ads using Google products or as much ass?
    A.   I don't recall any.
    Q.   Okay.  If you had a {SKHOEUS/}, would you be
participating in this lawsuit?
        MR. MCBIRNEY:  Objection; vague.  And calls for
speculation.
        THE WITNESS:  I -- I don't have a choice.
BY MS. GOODMAN:
    Q.  Okay.  I'm asking if you had a choice, would you
personally wish to be here today?
        MR. MCBIRNEY:  Objection.  Calls for speculation
and vague.
        THE WITNESS:  Yeah.  I don't -- I don't know that
I have an -- an answer to that.  I can't speculate what
would happen if I had the option, as I don't have the
option.
BY MS. GOODMAN:
    Q.  What's your understanding as to why you don't have
the option?
    A.   Because I'm in the Army and the government has
directed me to participate in this and that's my duty.
    Q.   And when you say, the government has directed you
to participate in this, who in the government has directed
your participation?
    A.   I don't know that I can answer that specifically.

    Q.   Can you answer it generally ?
        MR. MCBIRNEY:  Objection; vague.
        THE WITNESS:  No.
BY MS. GOODMAN:
    Q.  Do you have any knowledge of who within the Army
agreed to participate in this litigation ?
    A.   I don't have any knowledge of that.
    Q.   Okay.  And you have no knowledge of who in the
government has directed your participation in this
litigation.  Is that a fair summary?
        MR. MCBIRNEY:  Objection.  Asked and answered.
        THE WITNESS:  Yeah.  I personally do not know.
BY MS. GOODMAN:

        Q.  Okay.  So you don't know -- nobody -- nobody came
to you and said, you're required to participate?  No
human did that?
           MR. MCBIRNEY:  Object to form.
           THE WITNESS:  My best recollection is receiving a
notice from Mr. Chase that Google had requested me, and my
understanding of the communication was that the government
was required to produce me because of the request.  And so
I'm not aware of there being either a need tore a specific
someone ordering me.  Understood my duty as to comply
and make myself available to -- to Google's request that
I be here.
BY MS. GOODMAN:
        Q.  Okay.  And in providing that answer, are you
relying on communications that you had with the
Department of Justice?
        A.  I am.
        Q.  So those communications he can testify to but
none other?
           MR. MCBIRNEY:  That he was told to comply he had
to comply with a deposition notice?  Sure.
           MS. GOODMAN:  You're --.
BY MS. GOODMAN:
        Q.  If -- to your knowledge, will the United States
request your attendance at any trial in this matter?
           MR. MCBIRNEY:  Objection.  Calls for speculation.

           THE WITNESS:  I don't know the answer to that.
BY MS. GOODMAN:
        Q.  Have you had any discussions with anybody about
your participation at a trial in this matter?
           MR. MCBIRNEY:  Objection.  You can answer that if
it does not disclose communications with counsel.
           THE WITNESS:  I have not.
BY MS. GOODMAN:
        Q.  Okay.  Have you discussed this lawsuit with any
individual from a state attorney general office?
        A.  I have not.
        Q.  Have you discussed an investigation of Google's
digital advertising business with any individual from a
state attorney general office?
        A.  I have not.
        Q.  Have you discussed the Army's purchases of
digital ads using Google products or services with any
individual from a state attorney general office?
        A.  I have not.
           MS. GOODMAN:  Shall we take a break.
           MR. MCBIRNEY:  Sure
           THE VIDEOGRAPHER:  Going off record the time is
{10E/} 10:  47

FILED PURSUANT TO COURT ORDER DOC. 354

(Recess taken.)