**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES,** *et al.,*<br><br>        *Plaintiffs*,<br><br>  - against -<br><br>**GOOGLE LLC,**<br><br>        *Defendant*. | Civil Action No. 1:23-cv-00108 (LMB) (JFA) |

**GOOGLE LLC'S BRIEF IN OPPOSITION TO
THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER**

  Plaintiff United States seeks to preclude Google LLC ("Google") from "conducting a Rule 30(b)(6) deposition of a representative of the Department of Justice, Antitrust Division in this matter." United States' Mem. ISO Mot. for a Protective Order 15, ECF No. 322. DOJ cites the "*Shelton* rule" to argue that Google is improperly trying to depose the United States' "litigation counsel." Mot. 1. That is wrong, and ignores the simple principle that when the government brings an enforcement action, it too is subject to a Rule 30(b)(6) deposition. Google served its Rule 30(b)(6) notice on the United States seeking to obtain facts about the government's investigatory meetings and communications, which ostensibly formed part of the factual basis for Plaintiffs' case. Such facts, discoverable and relevant on that basis alone, are also likely to reveal material bearing heavily on any or all of five pivotal issues in this case, including (i) the effects of Google's conduct on consumers; (ii) Google's legitimate business justifications for its alleged conduct; (iii) witness credibility and bias; (iv) the definition of the relevant markets at issue and Google's market share in those markets; and (v) the remedies sought by the United States. DOJ

is inappropriately and prematurely attempting to avoid responding to factual discovery on these pivotal issues.

At bottom, this civil antitrust enforcement action is governed by the discovery rules that apply to all civil litigation, including cases where the United States is a litigant. Because the information sought is relevant and non-privileged, the Court should allow Google to depose DOJ about the factual underpinnings of this lawsuit or to obtain equivalent discovery by another feasible method.

## BACKGROUND

*Google's Rule 30(b)(6) Notice to the United States:* Google served a Rule 30(b)(6) notice on the United States with 41 topics directed to a variety of relevant factual issues. *See* ECF No. 321-1. The United States did not serve objections to that notice, but did engage in extensive meet-and-confer negotiations with Google on refining, defining, and narrowing the topics. The topics fall into three broad categories:

*First*, numerous topics are directed to the eight "Federal Agency Advertisers" ("FAAs"), and are not at issue in this motion.[1] These topics have been refined and narrowed through the parties' continuing meet-and-confer negotiations, and a Rule 30(b)(6) deposition of the Centers for Medicare and Medicaid Services went forward on August 25 without issue.

*Second*, three topics are directed to affirmative defenses concerning the role of Assistant Attorney General Jonathan Kanter in conceiving and initiating this action: Topics 31, 37, and 38. Those topics are the subject of another motion by Plaintiffs, which will be heard by the District Judge on September 8. *See* ECF Nos. 317 & 319. That motion seeks a merits ruling on two of

---

[1] These topics largely focus on whether each FAA satisfies the "direct purchaser" rule of federal antitrust law. *See, e.g.*, *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 745-48 (1977) (only "direct purchasers" have standing to sue); *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) ("Those who purchase indirectly or through intermediaries are barred from recovering for antitrust injuries.").

Case 1:23-cv-00108-LMB-JFA   Document 359   Filed 08/30/23   Page 3 of 16 PageID# 5377

Google's affirmative defenses, which purportedly would moot the need for that discovery. In the alternative, Plaintiffs seek a protective order on Topics 31, 37, and 38, as well as other pending discovery. *See* ECF No. 318 at 8 n.13 & 22-27. Because those topics are already at issue before the District Judge, this Court need not—and should not—consider them as part of this motion.

*Third*, in addition to Topics 31 and 37-38, Topics 25, 28-29, 33-36, and 39-41 were also directed to the United States' Antitrust Division at the Department of Justice. Of these, Google has already dropped Topics 28, 35, and 41 during the meet-and-confer process, and now agrees to also withdraw Topic 25. That leaves only six topics at issue in this motion:

> **Topic 29:** Your involvement and communications with any third parties concerning the Investigation and/or this Action.
>
> **Topic 33:** Your responses to Google's Interrogatories.
>
> **Topic 34:** Your responses to Google's Requests for Admission.
>
> **Topic 36:** All communications, including written, oral, face-to-face, telephonic, videoconference, or otherwise with any representative of the European Commission concerning the Investigation or this Action.
>
> **Topic 39:** Your market share calculations as alleged in the Complaint for the alleged publisher ad server market, ad exchange alleged market, and alleged market for advertiser ad networks for open web Display Advertising.
>
> **Topic 40:** The equitable remedies You seek, including any coordination or communications between You and the European Commission regarding such remedies.

*Meet-and-Confer Negotiations:* After Google served its Rule 30(b)(6) notice on the United States on July 20, the parties engaged in several meet-and-confer negotiations and exchanged letters. Negotiations progressed, but were complicated after the United States served its expansive Rule 30(b)(6) notice upon Google on August 9—almost three weeks after Google served its Rule 30(b)(6) notice on the United States. *See* ECF No. 312-1.

On August 18—as the parties were negotiating over their dueling Rule 30(b)(6) notices, and after they had already discussed agreement to a standstill on motion practice concerning the

parties' respective notices—DOJ abruptly informed Google that it would instead file a motion for judgment on the pleadings or to strike certain affirmative defenses to which those topics pertained, or move for a protective order. Based on DOJ's changed position, Google understood there to be an impasse in what had seemingly been productive negotiations, and both sides filed motions on August 18. Then, on August 22, DOJ went a step further and filed this *second* motion for a protective order, which overlaps in part with its earlier-filed motion for judgment on the pleadings or for a protective order.

Since those motions have been filed, the parties have resumed their meet-and-confer discussions in an effort to narrow areas of disagreement with respect to their Rule 30(b)(6) notices. While the parties have made progress on other topics, DOJ continues to steadfastly refuse to present a witness to testify on behalf of the United States on these topics, absent a court order.

## ARGUMENT

The Court should deny the United States' motion for three reasons. *First*, although this is a civil antitrust enforcement action, the discovery rules apply to the United States as to any other private litigant. No exception or limitation in the Federal Rules of Civil Procedure or the Local Civil Rules gives the United States a free pass under Rule 30(b)(6) or forecloses discovery into the topics now at issue. And case law recognizes that a defendant in an enforcement action has a right to a Rule 30(b)(6) deposition of the enforcer, even if the designee is an attorney. *Second*, the topics at issue seek relevant discovery. *Third*, the United States' arguments about privileged and protected information are conclusory, overblown, and premature—and certainly do not justify a blanket protective order precluding deposition discovery. Rather, assertions of privilege should be handled on a question-by-question basis.

Alternatively, if the Court is inclined to grant any part of the United States' motion, it should instead enter an order under Rule 26(c)(1)(C) "prescribing a discovery method other than the one selected" by Google for certain topics, which may be answered by written responses or satisfied by further document productions, instead of through designee testimony. Indeed, Google sought to obtain written interrogatory responses on many of the at-issue topics, but to date, DOJ has not provided complete answers. Simply granting the United States' motion outright, however, would unjustly preclude Google from pursuing relevant factual discovery from the DOJ on these topics by any means.

## I. GOVERNING PRINCIPLES OF PROCEDURAL LAW SUPPORT DENYING THE UNITED STATES' MOTION.

Despite the United States' rhetoric about "harassing" discovery practices, Google is using ordinary discovery tools in the ordinary way. Generally, the parties in a civil action "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The parties are free to use the discovery tools in "any sequence" that suits the needs of the case. Fed. R. Civ. P. 26(d)(3)(A). Subject to the limitations in the Federal Rules and Local Civil Rules, the parties may also choose which discovery tools to use and how to use them, unless the Court "determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). One of those routine discovery tools is deposition under Rule 30(b)(6), which allows a party to serve a deposition notice on an organization, including a governmental litigant, to provide deposition testimony on specific topics stated in the notice.

These rules apply to this civil antitrust enforcement action as they do to any other civil action.  "The government as a litigant is, of course, subject to the rules of discovery"—including in civil antitrust enforcement actions.  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) (civil antitrust enforcement action); *accord, e.g.*, *Doe v. Mast*, 2023 WL 4492466, at *4 (W.D. Va. July 12, 2023) (quoting *Procter & Gamble*'s statement of this rule).  Thus, in civil antitrust enforcement actions, as in any other civil action, the "instruments of discovery serve a useful purpose [of making] a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *Procter & Gamble*, 356 U.S. at 682 (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  The United States' requested relief would thwart this "useful purpose."

In suggesting that Google should resort to third-party discovery instead of using the ordinary tools of party discovery, Mot. 14, the United States flips the process on its head.  For starters, "if the party seeking discovery can obtain the information from another party in the litigation, it must do so rather than burden a nonparty."  *Sziber v. Dominion Energy, Inc.*, 2021 WL 6332784, at *2 (E.D. Va. Sept. 14, 2021).[2]  That principle applies even more forcefully here: it would be more efficient and less burdensome in the aggregate for DOJ, the *party* common to communications with over 300 industry participants, to provide a single set of testimony about those meetings than it would for Google to seek similar discovery from over 300 *nonparties*.  And even if Google could (or already had) efficiently gathered such information from nonparties, this does not justify protection from Rule 30(b)(6), because Rule 30(b)(6) testimony is uniquely "designed to bind the corporation or agency."  *SEC v. Merkin*, 283 F.R.D. 689, 697 (S.D. Fla.)

---

[2] *See also, e.g.*, Sherrill v. DIO Transp., Inc., 317 F.R.D. 609, 615 (D.S.C. 2016) ("'If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness.'" (quoting 8A Charles Alan Wright, et al., Federal Practice and Procedure § 2204 at 365 (2d ed. 1994))).

6

(citing *New Jersey v. Sprint Corp.*, 2010 WL 610671, at *2-3 (D. Kan. Feb. 19, 2010)), *objections overruled*, 283 F.R.D. 699 (S.D. Fla. 2012).

Moreover, because the United States has voluntarily filed a civil enforcement action, it is subject to a Rule 30(b)(6) designee deposition on factual issues in its capacity as an investigator—even if the designee will be an attorney. That follows from the rule that when an agency "voluntarily br[ings] an action against [a] [d]efendant," that defendant "is entitled to broad discovery to understand and prepare a defense against [the agency's] allegations." *SEC v. McCabe*, 2015 WL 2452937, at *4 (D. Utah May 22, 2015).

In providing that broad discovery, the agency must comply with Rule 30(b)(6), which "expressly applies to a government agency and provides neither an exemption from Rule 30(b)(6) nor special consideration concerning the scope of discovery, especially when [the agency] voluntarily initiates an action." *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011) (quotation marks omitted); *Merkin*, 283 F.R.D. at 694 ("[J]ust like any party litigating in federal court, Merkin has the right to take a [Rule] 30(b)(6) deposition from the SEC."). Applying that principle, courts reject government efforts to "defeat the provisions of [Rule] 30(b)(6)" merely by claiming that the agency's designee will be someone "with an 'esq.' after his name." *McCabe*, 2015 WL 2452937, at *4. Courts thus require government agencies to designate Rule 30(b)(6) deponents to testify "about non-privileged, pre-litigation factual matters," rather than "litigation strategy." *United States v. Newman*, 531 F. Supp. 3d 181, 192-93 (D.D.C. 2021) (quotation marks omitted); *see also EEOC v. McCormick & Schmick's Seafood Rests., Inc.*, 2010 WL 2572809, at *5 (D. Md. June 22, 2010) (observing that courts allow Rule 30(b)(6) testimony by agency designees "as to the facts the investigator learned during her investigation," and specifically

require deponents to answer questions concerning interviews conducted during the agency's investigation).[3]

The plain rule that "the work product doctrine does not extend to protect underlying facts, [or] the persons from whom that party has learned such facts," *Gualtieri v. TD Bank, Nat'l Ass'n*, 2011 WL 13302505, at *2 (M.D. Fla. Mar. 10, 2011), applies equally to the government as to any other civil plaintiff. The Court should accordingly rebuff the United States' effort to sidestep the normal discovery process.

## II. THE TOPICS ARE RELEVANT AND TYPICAL OF RULE 30(b)(6) DISCOVERY.

Each of the topics at issue seeks relevant information. The United States does not attempt to show otherwise. Instead, the United States makes only a process objection (that "litigation counsel" should not be deposed) and a premature and overbroad privilege objection (that all questions on all topics will seek work product). Neither objection warrants a protective order as to any testimony of these topics.

> ***Topic 29:*** *Your involvement and communications with any third parties concerning the Investigation and/or this Action.*

Google seeks information about non-privileged, pre-litigation factual matters and the DOJ's communications with nonparties about this litigation. In a civil enforcement action, pre-litigation communications and interviews with third parties who are actual or potential witnesses are permissible subjects for discovery and are a proper topic for a Rule 30(b)(6) deposition. *See supra* pp. 6-8; *see also EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005)

---

[3] In *McCormick & Schmick's*, the court ultimately granted the EEOC's motion for a protective order because the EEOC had already produced its investigative file, "including all witness statements contained therein." 2010 WL 2572809, at *6. Here, the vast majority of communications with third parties produced as part of DOJ's investigative materials are basic logistical/scheduling communications, and do not contain the substance of the third parties' statements to DOJ.

(compelling answers to interrogatories seeking the identities of persons who had made statements relating to claims in the case and detailing the substance of information those third parties possessed, because such "factual information that a lawyer obtains when investigating a case" does not constitute work product). Thus, there are no procedural or substantive grounds for precluding Google from obtaining testimony through a Rule 30(b)(6) deposition on this topic.

  ***Topic 33:*** *Your responses to Google's Interrogatories.*

Google seeks testimony about the factual basis for, or further explanation of, certain interrogatory answers served by DOJ. A Rule 30(b)(6) deposition may be sought to follow up on a party's interrogatory answers. *See FDIC v. Brudnicki*, 2013 WL 5814494, at *3 (N.D. Fla. Oct. 29, 2013). Google is willing to narrow this topic to Interrogatories No. 3 ("Identify all persons other than Google with whom You communicated as part of the Investigation, including the person's title, employer or affiliation, and the date(s) of Your communication(s)") and No. 21 ("From the start of Your Investigation until August 25, 2023, Identify each and every Communication between the Department of Justice on the one hand, and any Potential Witness or the European Commission on the other hand, related to the subject matters of the Investigation or of the Action.").[4] Like Topic 29, these interrogatories and the follow-up Rule 30(b)(6) deposition seek permissible fact discovery.

  ***Topic 34:*** *Your responses to Google's Requests for Admission.*

On behalf of all FAAs, DOJ served one-size-fits-all responses to Google's Requests for Admission ("RFAs"). The first set of RFAs were aimed at ascertaining whether the FAAs were direct purchasers entitled to seek antitrust damages. *See* ECF Nos. 291 & 292 (Google's motion

---

[4] Google expects to reach an agreement with the United States whereby both parties either (i) withdraw their respective topics concerning prior responses to discovery requests or (ii) accept written responses in lieu of Rule 30(b)(6) designee testimony on such topics.

to compel RFA responses); *supra* p. 2 & n.1 (discussing direct-purchaser rule).  Based on the response to the first set of RFAs, Google served a second set of RFAs, the responses to which are due September 6, 2023.  As with DOJ's interrogatory answers, Google seeks to follow up on these issues through a Rule 30(b)(6) deposition, which appears to be the most efficient method to clarify the United States' admissions and bind the United States to them.[5]

> **Topic 36:** *All communications, including written, oral, face-to-face, telephonic, videoconference, or otherwise with any representative of the European Commission concerning the Investigation or this Action.*

DOJ's communications with foreign enforcement agencies are not privileged.  *Ctr. for Int'l Env't L. v. Off. of U.S. Trade Rep.*, 237 F. Supp. 2d 17, 23-31 (D.D.C. 2002) (communications between United States agency and foreign government are not protected by FOIA Exemption 5, which includes legal privileges).  Further, by communicating with or disclosing materials to the European Commission, DOJ has waived any privilege over such communications and materials.  DOJ recognizes as much, having already produced email communications between itself and the EC.  Although both DOJ and the European Commission were investigating Google's ad tech business at the time of the communications or disclosures, a shared target is not a sufficient basis to warrant common-interest protection: "[t]he common interest rule does not apply merely because one party has an interest in a litigation involving another party" or because there exists a "common problem."  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 434 (S.D.N.Y. 2013).  Instead, the interests of the parties must be "identical."  *Glynn v. EDO Corp.*, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010); *see also Bank of Am. N.A. v. Terra Nova Ins. Co.*, 211 F. Supp. 2d 493, 496-98 (S.D.N.Y. 2002) ("Because the interests of the parties were not identical, the common interest

---

[5] As with Topic 33, Google expects to reach an agreement with the United States whereby both parties either (i) withdraw their respective topics concerning prior responses to discovery requests or (ii) accept written responses in lieu of Rule 30(b)(6) designee testimony on such topics.

doctrine does not apply."). Because DOJ and the European Commission are separate sovereign regulators applying different sets of laws with different legal standards for liability in potentially different geographic markets, their interests are nowhere near "identical."

> ***Topic 39:*** *Your market share calculations as alleged in the Complaint for the alleged publisher ad server market, ad exchange alleged market, and alleged market for advertiser ad networks for open web Display Advertising.*

In antitrust litigation, "definition of the relevant geographic and product market may be critical, and it may determine the existence of market power requisite to prove liability and may also determine the scope of relevant evidence." Annotated Manual for Complex Litigation § 30.1, at 521 (4th ed. 2023). Determining the relevant markets and the alleged market shares within each relevant market is a fact-intensive inquiry involving "factual question[s]," *McWane, Inc. v. FTC*, 783 F.3d 814, 825 (11th Cir. 2015), rather than questions of law. Courts thus do not force defendants to wait until expert reports are exchanged, but instead regularly allow Rule 30(b)(6) testimony on the facts on which a plaintiff based its market-share allegations. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 2015 WL 3635422, at *2 (D. Colo. June 11, 2015) (Rule 30(b)(6) deposition of plaintiff ordered to "identify with specificity the facts that support its market control/share claims"); *see also Balt. Aircoil Co. v. SPX Cooling Techs. Inc.*, 2016 WL 4426681, at *21 (D. Md. Aug. 22, 2016) (plaintiff provided Rule 30(b)(6) designee "on the topic of market share," including the sources behind its 'market share assumptions'"); *All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund*, 887 F. Supp. 2d 448, 456-57 (E.D.N.Y. 2012) (plaintiff provided Rule 30(b)(6) designee "to substantiate [its] contentions as to market share[s]" and identify the factual sources of alleged market shares).

The Court should do the same here. Plaintiffs have alleged three separate, intricately defined product markets, *see* Am. Compl. ¶¶ 282-289 (publisher ad servers), 290-296 (ad exchanges), 297-303 (advertiser ad networks), and two alternative geographic markets: nationwide and worldwide,

*id.* ¶¶ 280-281. Plaintiffs allege that Google's market share in one of the alleged relevant markets is as much as 90%. *Id.* ¶ 285. Google disagrees: it contends that the alleged relevant markets do not reflect "commercial realities," *United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966), but were instead contrived to target Google. This factual dispute is at the center of the case.

Google also served written interrogatories on the United States seeking to understand the basis for the market share allegations in the Complaint. Ex. A (Interrogatory Nos. 18, 19, 20). To date, the United States has not provided a complete answer to these interrogatories, saying that pre-complaint investigatory materials support their calculations. That answer does not comply with the United States' obligations under the Federal Rules of Civil Procedure.

Given the detailed factual inquiries involved in market definition, which is a necessary predicate for determining market share, Google must be able to gather information concerning the United States' evidentiary basis for its market share allegations. As in *Lenox*, *Baltimore Aircoil*, and *All Star Carts*, Rule 30(b)(6) designee testimony on such matters is proper. Alternatively, Google would accept supplemental written responses to its Interrogatory Nos. 18, 19, and 20 that actually answer the questions as posed.

> **Topic 40:** *The equitable remedies You seek, including any coordination or communications between You and the European Commission regarding such remedies.*

Rule 26(b)(1) allows discovery relevant to "any party's claim." That provision allows for discovery of damages and other remedies, just "as it [allows discovery] of other facts essential" to the case. *Sinclair Refin. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 693 (1933). The United States seeks damages and equitable relief, such as divestiture of certain Google services. Discovery about potential equitable remedies is therefore relevant and may be pursued. And the testimony Google seeks on this topic—involving communications with foreign regulators—is not privileged. *See supra* pp. 10-11.

On Plaintiffs' motion, the Court has ordered that "*additional* discovery as to equitable remedies" may be sought following a finding of liability. ECF No. 283 (emphasis added). Given that order, Google anticipates the parties will agree that deposition testimony on equitable remedies sought by either party will be deferred until later, if necessary, following findings of liability.

### III.   THE *SHELTON* RULE DOES NOT APPLY

In *Shelton v. American Motors Corp.*, the Eighth Circuit held that the deposition of opposing counsel should be "limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." 805 F.2d 1323, 1327 (8th Cir. 1986) (citation omitted). This is a rigid, preemptive rule: opposing counsel or in-house counsel who is assisting with trial *shall not be deposed unless* the three-part showing has been made.

The United States errs in seeking protection under *Shelton*, for two reasons. *First*, the Fourth Circuit has not adopted the *Shelton* rule. Nor has *Shelton* been universally adopted. In fact, the Second Circuit has rejected the rigid *Shelton* presumption in favor of "a flexible approach." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003). And while other Judges in this District and elsewhere have applied *Shelton* in specific circumstances, many courts have expressly declined to apply that rigid, preemptive rule in the circumstances of the case before them. *See*, *e.g.*, *id.*; *Qad.inc. v. ALN Assocs.*, 132 F.R.D. 492, 495 (N.D. Ill. 1990); *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Sols., LLC*, 2015 WL 3631692, at *2 (S.D. Ind. June 10, 2015) (citing cases). These courts found the *Shelton* rule is overly protective of counsel and unnecessarily suppresses facts. *Second*, the *Shelton* rule is particularly inappropriate where the noticed topics do

not seek litigation strategy, but instead seek facts obtained in a pre-litigation investigatory phase. *See Buyer's Direct Inc. v. Belk, Inc.*, 2012 WL 3278928, at *3 (E.D.N.C. Aug. 10, 2012) (finding *Shelton* inapplicable where deposition sought non-privileged facts known to counsel because *Shelton* "is applicable only where . . . the subject matter of the deposition *concerns litigation strategy*" (emphasis added)).

Rejecting *Shelton*'s blanket proscription for a more balanced approach makes perfect sense here. As courts have recognized, prospectively barring an attorney deposition "on the ground that any information sought is subject to the attorney-client privilege" is "improper and premature." *Scovill Mfg. Co. v. Sunbeam Corp.*, 61 F.R.D. 598, 603 (D. Del. 1973). Indeed, "[t]he circumstances are rare which justify an order that a deposition not be taken at all, and the existence of privilege is not one of those circumstances." *Id*. Rather than precluding the deposition, courts allow the deposition to go forward and instruct the defending attorneys to "object to questions [they] consider[] improper and advise [the deponent] not to answer." *Id*; *accord Smith v. City of Greensboro*, 2021 WL 10280229, at *4 (M.D.N.C. Aug. 2, 2021) (recognizing that any "danger of invasion of . . . privilege . . . can be sufficiently managed via objection during questioning" and was remote when deponent was "an experienced attorney," who "undoubtedly understands the reach of the attorney-client privilege and is unlikely to inadvertently disclose privileged information or litigation strategy").[6] Privilege objections should be made in response to individual questions, not preemptively in a vacuum.

---

[6] *See also, e.g.*, *Appvion, Inc. v. P.H. Glatfelter Co.*, 2016 WL 1261090, at *1 (E.D. Wis. 2016) ("To the extent some of the information sought would be privileged, the attorney being deposed (themselves also represented by counsel) will be equipped to navigate those waters."); *Kaiser v. Mut. Life Ins. Co. of N.Y.*, 161 F.R.D. 378, 380 (S.D. Ind. 1994) ("[D]eponents are expected . . . to assert their objections during the deposition and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection."); *Cooper v. Welch Foods, Inc.*, 105 F.R.D. 4, 6 (W.D.N.Y. 1984) (finding that deposition of attorney should be taken and privileges should be asserted as appropriate at the

DOJ cannot avoid that reality by claiming that all questions on certain topics would necessarily seek opinion work product, while all questions on other topics would necessarily seek fact work product. *See* Mot. 11-14. That assertion is not even speculation; it is simply wrong. *See supra* pp. 8-12 (explaining how the topics seek non-privileged facts). Yet even if some questions would elicit protected information, the proper time to address that is at the deposition—a fact DOJ knows full well given that it deposed a Google witness on work-product-related topics to effectively elicit a "verbal privilege log," *see* ECF No. 245-2, Ex. B at 136:24 (Rule 30(b)(6) Dep. of Alphabet), with counsel for Google raising privilege objections on a question-by-question basis if a question sought protected information.

As in *Scovill*, *Smith*, and other cases, the Court should not wield a meat cleaver now to bar the deposition. Google has no intention of attempting to elicit privileged information in this deposition, and will take great care to elicit only facts. The Court should thus require DOJ to wield a scalpel at the deposition to object to any question it reasonably believes calls for privileged information, despite Google's best efforts not to pose such questions.

## CONCLUSION

For these reasons, the Court should deny the United States' motion for a protective order. In the alternative, the Court should allow Google to pursue this relevant discovery through methods other than deposition testimony, such as via written responses, including supplementation of existing discovery responses.

---

deposition itself); *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 429, 437-38 (E.D. Pa. 1981) ("If the questions to be asked of Mr. Griffin delve into privileged areas then his recourse will be to object and refuse to answer. Such an objection and refusal to answer should of course be predicated upon a sufficient demonstration that the matter inquired into is privileged. . . . In any event, the Court cannot rule in a vacuum, prior to the deposition, that every question to be asked will seek to elicit privileged information.").

Dated: August 30, 2023                              Respectfully submitted,

Eric Mahr (*pro hac vice*)                         */s/ Craig C. Reilly*
Andrew Ewalt (*pro hac vice*)                      Craig C. Reilly (VSB # 20942)
Julie Elmer (*pro hac vice*)                       THE LAW OFFICE OF
Lauren Kaplin (*pro hac vice*)                     CRAIG C. REILLY, ESQ.
Scott A. Eisman (*pro hac vice*)                   209 Madison Street, Suite 501
Jeanette Bayoumi (*pro hac vice*)                  Alexandria, VA 22314
Claire Leonard (*pro hac vice*)                    Telephone: (703) 549-5354
Sara Salem (*pro hac vice*)                        Facsimile: (703) 549-5355
Tyler Garrett (VSB # 94759)                        craig.reilly@ccreillylaw.com
FRESHFIELDS BRUCKHAUS
DERINGER US LLP                                    Karen L. Dunn (*pro hac vice*)
700 13th Street, NW, 10th Floor                    Jeannie H. Rhee (*pro hac vice*)
Washington, DC 20005                               William A. Isaacson (*pro hac vice*)
Telephone: (202) 777-4500                          Joseph Bial (*pro hac vice*)
Facsimile: (202) 777-4555                          Amy J. Mauser (*pro hac vice*)
eric.mahr@freshfields.com                          Martha L. Goodman (*pro hac vice*)
                                                   Bryon P. Becker (VSB #93384)
Daniel Bitton (*pro hac vice*)                     Erica Spevack (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP                     PAUL, WEISS, RIFKIND, WHARTON &
55 2nd Street                                      GARRISON LLP
San Francisco, CA 94105                            2001 K Street, NW
Telephone: (415) 490-2000                          Washington, DC 20006-1047
Facsimile: (415) 490-2001                          Telephone: (202) 223-7300
dbitton@axinn.com                                  Facsimile (202) 223-7420
                                                   kdunn@paulweiss.com
Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER LLP                     Meredith Dearborn (*pro hac vice*)
1901 L Street, NW                                  PAUL, WEISS, RIFKIND, WHARTON &
Washington, DC 20036                               GARRISON LLP
Telephone: (202) 912-4700                          535 Mission Street, 24th Floor
Facsimile: (202) 912-4701                          San Francisco, CA 94105
bjustus@axinn.com                                  Telephone: (646) 432-5100
                                                   Facsimile: (202) 330-5908
                                                   mdearnborn@paulweiss.com

                                                   *Counsel for Defendant Google LLC*