# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES,** *et al.*,<br><br>*Plaintiffs*,<br><br>- against -<br><br>**GOOGLE LLC,**<br><br>*Defendant*. | Civil Action No. 1:23-cv-00108-LMB-JFA |

### GOOGLE LLC's THIRD SET OF INTERROGATORIES TO THE UNITED STATES

Pursuant to Federal Rules of Civil Procedure 26 and 33 ("Federal Rules"), Defendant Google LLC hereby requests that Plaintiff United States respond to the Interrogatories set forth below.

### INSTRUCTIONS

1. In addition to the specific instructions set forth below, these Interrogatories incorporate the instructions set forth in Federal Rules 26 and 33, the Local Rules of the United States District Court for the Eastern District of Virginia ("Local Rules"), the Stipulation and Order Regarding Discovery Procedure ("ESI Order") (ECF No. 142), and the Protective Order (ECF No. 203), or the operative version of those Orders in place at the time responses are served.

2. These Interrogatories seek information available to You, or to which You may gain access through reasonable effort, including information in the possession of Your past and present attorneys, investigators, consultants, agents, representatives, or other persons directly or indirectly

1

employed or retained by You, or anyone else otherwise subject to Your control who maintains records on Your behalf, in Your name, or otherwise under Your control.

3. Unless otherwise specified, these Interrogatories each require a separate response.

4. If You cannot provide a full and complete response to any Interrogatory, You should respond to the Interrogatory to the extent possible, specifying the portion of the Interrogatory You are unable to answer and providing whatever information You have regarding the unanswered portion.

5. If You object to, or otherwise decline to answer, any portion of any Interrogatory, please provide all information called for by the Interrogatory to which You do not object or do not decline to answer. For those portions of any Interrogatory to which You object or otherwise decline to answer, state the reason for such objection or declination. For example, if You object to any Interrogatory on the ground that it is too broad, please provide such information as You concede to be not overly broad. If You object to any Interrogatory on the ground that it would constitute an undue burden to provide an answer, please provide such requested information as can be supplied without undertaking such undue burden.

6. If You perceive any ambiguity in an Interrogatory, provide a brief statement of the nature of the perceived ambiguity and the interpretation You used to resolve it.

7. Pursuant to Federal Rule 26(b)(5), if You believe that any Interrogatory calls for information subject to a claim of privilege, then answer all parts of the Interrogatory to which You do not object; explain the basis for Your claim of privilege as to each part of the Interrogatory to which You object; and identify the general nature of the information withheld.

8. None of the Definitions or Interrogatories shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the Definitions or the Interrogatories.

9. These Interrogatories are continuing in nature. In the event that You become aware of responsive information in addition to, or in any way inconsistent with, that which You previously have provided, prompt supplementation of Your responses is required.

10. Google reserves the right to seek supplementary responses to the Interrogatories before trial.

11. Unless otherwise stated, the Interrogatories call for responsive information from the Relevant Period.

12. In construing the Interrogatories:

   a. Terms not specifically defined shall be given their ordinary meaning as You understand them to be used in the trade;

   b. The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, whenever necessary, to bring within the scope of any Interrogatory all information that might otherwise be construed to be outside its scope;

   c. The use of the singular form of any word includes the plural and vice versa;

   d. Words in the masculine, feminine, or neutral gender shall include each of the other genders;

   e. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope;

  f. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

## DEFINITIONS

1. To the extent the terms defined below are used in the Requests, they should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules and the Local Rules. These Definitions are provided solely for the purposes of these Requests. To the extent these Interrogatories quote from the Amended Complaint, the definitions used in the Amended Complaint apply.

2. The term **"Ad Buying Tool"** shall mean any third-party or In-House software, application, service, tool, or other interface (including DSPs and Ad Networks) through which an Advertiser Purchased or can Purchase Inventory.

3. The terms **"Ad Exchange"** or **"Supply-Side Platform"** or **"SSP"** shall mean a third-party or In-House product or service through which two or more Ad Buying Tools (at least one of which is not owned or controlled by the entity operating the Ad Exchange) placed or can place Bids in real-time auctions for Inventory offered for sale by or on behalf of two or more Publishers (at least one of which is not owned or controlled by the entity operating the Ad Exchange).

4. The term **"Ad Network"** shall mean a third-party or In-House product or service (other than an Ad Exchange) through which two or more Advertisers (at least one of which is unaffiliated with the entity operating the Ad Network) Purchased or can Purchase Inventory offered for sale by two or more Publishers (at least one of which is unaffiliated with the entity operating the Ad Network).

4

5. The term **"Ad Selling Tool"** shall mean any third-party or In-House software, application, service, tool, or other interface (including Publisher Ad Servers, Ad Exchanges, Ad Networks, SSPs, Header Bidding, or Header Bidding Wrappers) through which a Publisher sold or can sell Inventory.

6. The term **"Advertiser"** shall mean a person or entity that, directly or through one or more intermediaries, places one or more Display Advertisements intended to advertise or promote a good or service offered by that person or entity, or otherwise convey such person or entity's desired message, on a Publisher's Property so that it is viewed by at least one User visiting such Property. For the avoidance of doubt, Advertisers typically, but need not, pay for the placement of such Display Advertisements.

7. The term **"Agency"** shall mean an advertising agency or similar consulting firm that is hired by an Advertiser to manage the Purchase of Inventory for one or more Campaigns. For the avoidance of doubt, although an Agency may use DSPs or other tools to manage such Campaigns, an entity operating a DSP shall not, solely on that basis, be deemed an Agency.

8. The term **"Bid"** shall mean an offer, made in response to a Query, to pay a specified amount in exchange for the right to render a Display Advertisement in a unit of Inventory.

9. The term **"Connected Television"** shall mean devices or services that allow Users to watch television content served over the internet on a television screen, such as smart TVs (e.g., Samsung, TCL, Sony), media streaming devices (e.g., Roku Streaming Stick, Apple TV, Chromecast), or video game consoles (e.g., Xbox, PlayStation).

10. The terms **"Demand-Side Platform"** or **"DSP"** shall mean an Ad Buying Tool, that enables an Advertiser to automatically buy Inventory sold via Ad Selling Tools in real-time on an Impression-by-Impression basis. For the avoidance of doubt, an Agency trading desk shall be deemed a DSP for purposes of this definition.

11. The terms **"Display Advertisement"** or **"Display Advertising"** shall mean Online Advertising other than Search Advertising, and shall include Native, banner, in-app or Video advertising, whether social or non-social.

12. The term **"Google"** shall mean Google LLC, any current or former parents, subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents or representatives, and any other person acting on their behalf.

13. The term **"Google Ads"** shall mean Google's Ad Buying Tool described on https://ads.google.com/home/, inclusive of all prior iterations or naming conventions, including AdWords.

14. The term **"Header Bidding"** shall mean the use by a Publisher of code that is directly or indirectly called during the web browser's processing or rendering of the HTML header of a webpage (and prior to the invocation of a Publisher Ad Server) and that causes Queries to be sent to one or more Ad Exchanges, Ad Networks, DSPs, or other sources of demand.

15. The term **"Impression"** shall mean the service of a single Display Advertisement to a single User.

16. The term **"Inventory"** shall mean space offered by Publishers for the sale or placement of Display Advertising.

17. The term **"Native Advertising"** shall mean Online Advertising that follows the natural form and function of the User experience in which it is placed (such as sponsored ads within a User's Facebook feed).

18. The terms **"Online Advertisement"** or **"Online Advertising"** shall mean advertising via the internet, including on websites, apps, and Connected Television. For example, both Display Advertising and Search Advertising are forms of Online Advertising.

19. The term **"Property"** shall mean a website, mobile application, or other product or service containing space that is sold or offered for sale for the placement of Display Advertising.

20. The term **"Publisher"** shall mean a person or entity operating a Property. For the avoidance of doubt, the owner of the Property shall be deemed the Publisher, even if it has out-sourced the sale of its associated Inventory, in whole or in part, to a third party.

21. The term **"Publisher Ad Server"** shall mean a third-party or In-House product, service, or system that is responsible for selecting (or attempting to select), on behalf of a Publisher, the Display Advertisement (or source from which such Display Advertisement shall be obtained) for a unit of Inventory. For the avoidance of doubt, a Publisher Ad Server may be owned and/or operated by a third-party Ad Tech Provider, or may be owned, developed, or operated by the Publisher or by a third party on behalf of or under contract with the Publisher. For the further avoidance of doubt, a system that creates or manages mediation chains constitutes a Publisher Ad Server for purposes of these interrogatories.

22. The term **"Purchase,"** when used in connection with Inventory or Impressions, shall mean to obtain, directly or indirectly through one or more intermediaries, the right to render or display a Display Advertisement in a unit of Inventory, typically but not necessarily in exchange for a monetary payment.

23. The term **"Query"** shall mean a request to provide, or Bid to provide, a Display Advertisement to be rendered in a unit of Inventory, whether denominated as an "ad request," "bid request," or otherwise. A Query may, but need not, request a Bid that will be considered before awarding the right to actually display a Display Advertisement to a particular Advertiser.

24. The term **"User"** shall mean an end user visiting or using a Property, or a proxy for that end user (including, but not limited to, cookie identifiers or mobile ad identifiers).

## INTERROGATORIES

**INTERROGATORY NO. 18:** Explain if, and how, you calculated that "Google's share of the [alleged] publisher ad server market in the United States has remained above 90% for many years" as alleged in paragraph 285 of the Amended Complaint, explaining specifically: (a) what the numerator is, how you determined the numerator, the dates for which the numerator was calculated, how the scope of the numerator was determined, what was included in the numerator, and what was excluded; (b) what the denominator is, how you determined the denominator, the dates for which the denominator was calculated, how the scope of the denominator was determined, what was included in the denominator (including the specific companies and their specific products), and what was excluded (including the specific companies and their specific products); and (c) the sources and bases for every aspect of your explanation.

**INTERROGATORY NO. 19:** Explain if, and how, you calculated that Google's share of the alleged "ad exchange market" is "more than 50%" as alleged in paragraph 292 of the Amended Complaint, explaining specifically: (a) what the numerator is, how you determined the numerator, the date for which the numerator was calculated, how the scope of the numerator was determined, what was included in the numerator, and what was excluded; (b) what the denominator is, how you determined the denominator, the date for which the denominator was calculated, how the scope of the denominator was determined, what was included in the denominator (including the specific companies and their specific products), and what was excluded (including the specific companies and their specific products); and (c) the sources and bases for every aspect of your explanation.

**INTERROGATORY NO. 20:** Explain if, and how, you calculated that Google Ads' share of the alleged "market for advertiser ad networks for open web display advertising has not dropped below 70% (measured by impressions) since 2015; it currently stands at around 80%" as alleged in paragraph 301 of the Amended Complaint, explaining specifically: (a) what the numerator(s) is/are, how you determined the numerator(s), the dates for which the numerator(s) was/were calculated, how the scope of the numerator(s) was/were determined, what was included in the numerator(s), and what was excluded; (b) what the denominator(s) is/are, how you determined the denominator(s), the dates for which the denominator(s) was/were calculated, how the scope of the denominator(s) was determined, what was included in the denominator(s) (including the specific companies and their specific products), and what was excluded (including the specific companies and their specific products); and (c) the sources and bases for every aspect of your explanation.

Dated: July 5, 2023

Karen L. Dunn (*pro hac vice*)
Jeannie Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Joseph Bial (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon Becker (VSB # 93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street NW Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
jrhee@paulweiss.com
wisaacson@paulweiss.com
jbial@paulweiss.com

amauser@paulweiss.com
mgoodman@paulweiss.com
bpbecker@paulweiss.com
espevack@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
535 Mission Street, 24th Floor San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

Eric Mahr (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: Craig.reilly@ccreillylaw.com

*Counsel for Google LLC*

10