**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 1:23-cv-00108-LMB-JFA |
| GOOGLE LLC, | |
| *Defendant*. | |

**GOOGLE LLC'S REPLY IN SUPPORT OF ITS**
**MOTION TO COMPEL PRODUCTION OF**
**DOCUMENTS AND TESTIMONY WRONGLY WITHHELD AS PRIVILEGED**

Plaintiff's position in this case would establish a sweeping application of privilege–attorney-client, work product, and deliberative process–never before applied in any case, and entirely at odds with the Fourth Circuit's prescription that privilege "must be narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003). The Plaintiff proffers this unprecedented application of privilege because the facts withheld and clawed back imperil their alleged market definition–and request for damages–in this case. Plaintiff has not met its burden and Google is allowed to discover these facts.

First, Plaintiff's attorney-client privilege claim depends on the Department of Justice having an attorney-client relationship with *every* employee in *every* federal agency. But that is not the law, nor does it make any sense. While the Department of Justice *can* represent federal agencies, that alone does not establish an attorney-client relationship. To establish such a

1

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

relationship, the normal rules for attorney-client privilege apply.  At the time lawyers from the Antitrust Division of the Department of Justice ("ATR") reached out to employees at federal agencies, no attorney-client relationship had been formed.  Nor were the Federal Agency Advertiser ("FAA") employees seeking legal advice in responding to ATR's outreach.  Accordingly, those communications are discoverable.

Second, Plaintiff does not dispute that it is required to produce to Google its investigation file, or that the documents it is withholding on the basis of privilege and work product are part of that file.  Opp. 3.  In withholding these investigatory documents, which reflect the facts and information provided by key industry participants–federal agencies who are buyers of advertising and whose knowledge of the industry and how ad buying works are directly relevant to market definition–Plaintiff is denying Google access to key factual evidence.  Google is entitled to the full investigatory file in order to defend itself, not just the portions that Plaintiff selectively chooses to provide.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 531-32 (S.D.N.Y. 1996) (applicable DOJ regulations enabling antitrust defendants to "obtain CID information relevant to their defense" were "intended to afford Defendants in government antitrust actions a full and fair opportunity to defend against such actions"); *United States* v. *Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (under the fairness doctrine "selective disclosure" of privileged communications "for tactical purposes waives the privilege").

Contrary to Plaintiff's claim that any document created by any individual "in direct response to" an ATR attorney's "questions" constitutes work product, Wolin Dec. ¶¶ 10, 12, 13, 14, that is not the law.  If it were, Plaintiff would be able to withhold the entirety of its investigative file.  Plaintiff does not take the position that it is entitled to do so, and has produced communications, including communications with ATR attorneys, from its investigation with all

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

third parties other than federal agencies and their ad agencies.  That alone eviscerates a claim of work product, which does not hinge on an attorney-client relationship; if communications with some third parties are not work product (as Plaintiff concedes), communications with other third parties are also not work product.   Plaintiff's argument is also untenable because it attempts to insulate all FAA-related communications, including those between non-attorneys at federal agencies and non-attorneys at ad agencies, as attorney work product even where no participant on the communication is acting as an agent of an attorney or anticipates litigation.  This is not a close case like, for example, cases where courts consider communications with an investigator, accountant, or PR firm directly hired by counsel expressly to assist a lawyer in litigation; here, Plaintiff has insisted throughout this lawsuit that they "do not control" the ad agencies.

Third, the deliberative process privilege does not apply because the facts gathered in the course of ATR's investigation do not reflect employees' personal views or policy-oriented judgment, and therefore cannot hinder frank and independent discussion, a necessary precondition for the deliberative process to apply.  Tellingly, Plaintiff all but ignores a recent case squarely on point where ATR made many of the same arguments it makes here and lost.  *United States* v. *Booz Allen Hamilton Inc.*, 2022 WL 3921019 (D. Md. Aug. 31, 2022); *see also Ethyl Corp.* v. *U.S. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994).

Finally, the only evidence Plaintiff offers in support of its sweeping and novel privilege claims is a self-serving attorney declaration, proffering that single attorney's "beliefs"–rather than any actual facts–establishing privilege.  Such declaration is insufficient to meet Plaintiff's burden.   In any event, the declaration is also directly contradicted by the sworn testimony of FAA employees who disavow all necessary bases for Plaintiff's privilege assertions. Accordingly, Google respectfully requests its motion be granted.

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

I.     **PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING THAT THE DOCUMENTS AND TESTIMONY AT ISSUE ARE SUBJECT TO ATTORNEY-CLIENT PRIVILEGE.[1]**

A.     **Plaintiff's Contention that There Is at All Times an Attorney-Client Relationship Between the Department of Justice and Every Employee at Every Federal Agency Is Both Legally and Factually Incorrect.**

Plaintiff argues that ATR's statutory authority to bring antitrust claims on behalf of the United States creates an attorney-client relationship with every agency within the executive branch. Opp. 16.  That is not the law.  While the statutory provisions cited by Plaintiff provide that ATR *can* represent a federal agency in litigation, the provisions do not establish that ATR *was* representing the agencies in question at the time of the communications at issue. *Cayuga Nation* v. *U.S. Dep't of Interior*, 2022 WL 888178, at *8 (D.D.C. March 25, 2022) (rejecting assertion that DOJ "is the legal representative" of federal agencies "whenever the Interest of the United States are at issue" and denying claim of privilege because statutes providing that DOJ "*can* represent" agencies in litigation "do not establish that the U.S. Attorneys *were* representing" agency employees "in a legal capacity or providing privileged legal advice").

Plaintiff has not presented any facts establishing the existence of an attorney-client relationship with the federal agencies in question.  Plaintiff advocates that a different standard for the attorney-client privilege should apply to them.  But that is not the case.  *Stonehill* v. *U.S. Dep't of Justice Tax Division*, 2022 WL 407145, at *23 (D.D.C. Feb. 10, 2022) (agency "must

---

[1] Plaintiff's August 7, 2023 Privilege log, Ex. 17 (excerpt showing 96 documents clawed back on August 4, 2023 and highlighting entries over which Plaintiff has improperly asserted privilege), asserts attorney-client privilege over 3 intra-agency communications that were clawed back on August 4, 2023, which do not involve any lawyer from either ATR or the agency, asserting that they are "confidential communications to counsel for United States."  Plaintiff appears to be taking an inconsistent position given that it has only asserted attorney work product over similar documents reflected on its August 23, 2023 privilege log–i.e., communications between Army employees that do not involve any attorney, but were purportedly "prepared at the request of an attorney."  Ex. 18 (Aug. 23, 2023 Privilege Log).  Because the communications do not involve counsel, Google requests that the Court find that such communications are not protected by the attorney-client privilege.  *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003).

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

show" the standard for attorney-client privilege has been met). For purposes of determining whether the privilege applies, it is the specific context of the communications that matters. *Cayuga Nation*, 2022 WL 888178, at *8.  Here, that context demonstrates the privilege does not attach.  FAA witnesses testified that they did not view lawyers at ATR to be their lawyers.  Ex. 14 (Oliphant Dep. at 334:22-335:22) ("Q. Do you consider the lawyers for the antitrust division to be lawyers for the census bureau? A. I do not."); Ex. 19 (Horning Dep. at 7:11-8:23) (claiming not to "have a personal opinion on who our counsel is" but that he has never "requested legal advice from the Department of Justice Antitrust Division").[2]  Certainly, if the FAAs who are parties to this lawsuit do not view ATR lawyers to be their lawyers, federal agencies on whose behalf ATR is *not* asserting claims would not either. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 (4th Cir. 2005) (the attorney-client relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice") (quoting *United States* v. *Evans*, 113 F.3d 1457, 1465 (7th Cir. 1997)).  Plaintiff has not presented any facts to meet their burden of establishing an attorney-client relationship.

In *Booz Allen*, a case entirely on-point which Plaintiff all but ignores, DOJ similarly asserted attorney-client privilege protection over "the great majority of the documents," claiming that the NSA was its client.  2022 WL 3921019, at *3.  DOJ later "changed the basis for many of its privilege designations . . . . draw[ing] a line between the DOJ's *initial inquiries* with the NSA, where DOJ first played the role of an investigator." *Id.*  The court stated that this line was "consistent" with its views on attorney-client privilege. *Id.*  The communications at issue here, like in *Booz Allen*, do not go beyond initial inquiries to agencies for the purpose of investigation.

---

[2] Contrary to Plaintiff's assertion, Google is *not* seeking to compel intra-agency communications on which agency counsel appears, i.e., "communications between the FAAs' internal counsel and employees of those FAAs containing legal advice or requests for legal advice."  Opp. 4.

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

**B.      The FAA and non-FAA Agencies Were Not Seeking Legal Advice.**

Plaintiff's unsolicited emails, questions, and requests for information do not reveal any confidential information provided by the federal agencies.  The *Mead* case cited in Plaintiff's brief makes clear that outreach from an attorney to a client is only privileged to the extent it includes or "is based on confidential information provided by the client."  *Mead Data Cent., Inc.* v. *United States Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977) (cited at Opp. 20); *see also Zander* v. *Dep't of Justice*, 885 F. Supp. 2d 1, 17 (D.D.C. 2012) ("Because it is an attorney's communication to his clients, the email falls within *Mead Data*'s additional limitation and is only privileged if it rests on confidential information obtained from the clients. This email generally does not rest on such information, and is hence subject to disclosure.").  Plaintiff's claim that the federal agencies were seeking legal advice when communicating with ATR is undermined by the sworn testimony of the FAA witnesses.  *E.g.*, Ex. 14 (Oliphant Dep. 63:13-64:9) ("Q. And did you ever seek the legal advice of the antitrust division with respect to any anticompetitive conduct on the part of Google? A. No."); Ex. 20 (Owens Dep. 88:25-89:7) ("Q. Prior to this lawsuit, have you ever requested legal advice from the Department of Justice Antitrust Division? A. No. Q. Prior to learning about this lawsuit, have you ever requested legal advice from the Department of Justice Antitrust Division? A. No."); Ex. 19 (Horning Dep. 8:2-23) ("Q. Have you ever requested legal advice from the Department of Justice Antitrust Division?" "A. No.").

Their testimony further demonstrates that the FAAs had no reason to seek legal advice from ATR relating to the issues in this case, as none of them believed that Google acted anticompetitively or caused them any harm.  Ex. 14 (Oliphant Dep. at 63:5-11) ("Q. In the course of your work as the COR for Order 15, did you ever form a view that Google was engaging in anticompetitive conduct? A. No, I did not."); Ex. 20 (Owens Dep. 210:22-211:4) ("Prior to the

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

filing of this lawsuit in January of 2023, were you aware of any anticompetitive conduct on the part of Google affecting Navy's advertising?" "A. To my knowledge, No."); Ex. 21 (Karpenko Dep. 139:3-8) ("I was unaware of any anticompetitive conduct from Google."); Ex. 22 (Koepke Dep. 221:20-222:3) ("Q. Prior to having any conversation with any lawyer with respect to Google Ads, any lawyer from the government, did you ever have any concerns that Google was engaging in anticompetitive conduct related to display advertising? A. No."); Ex. 19 (Horning Dep. 17:11-18:9) ("Q. So using your definition of anticompetitive, which is in the context of business practic[es] – practices meaning 'not adhering to a competitive, fair practice,' at this time, January 5th of 2023, were you aware of any anticompetitive practices on the part of Google affecting the Army's advertising? A. I was not aware.").

Rather, multiple FAA witnesses testified Google provided them with benefits.  Ex. 20 (Owens Dep. 212:11-12) ("We have found lots of value in many of the Google buys that we've done."); Ex. 21 (Karpenko Dep. 314:11-315:5) ("We have used Google because they do provide a value for the postal services"); Ex. 22 (Koepke Dep. 116:18-117:4) (Google increased the effectiveness of CMS's display ads); Ex. 19 (Horning Dep. 190:3-191:11) (Google hosted an educational event for Army marketers that was "helpful to the marketing team").

## II. PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF DEMONSTRATING THE DOCUMENTS AT ISSUE ARE PROTECTED WORK PRODUCT.

### A. Communications Between ATR and Federal Agencies Are Not Protected Work Product.

Plaintiff concedes that the 57 documents it is withholding are from "the Antitrust Division's investigatory file."  Opp. 3.  Plaintiff has produced the rest of its investigatory file, including the same kinds of communications as those being withheld here with ATR attorneys–communications with industry participants about the case. But the same work product legal standard applies whether the industry participant is a federal agency or not.  By Plaintiff's

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

logic, it could have, and should have, asserted work product over communications with every other third party that "were *about* this case." Opp. 7. Plaintiff did not because Google is entitled to facts within ATR's investigatory file–facts that are necessary for Google to adequately defend itself.[3] Plaintiff's concession that communications with non-FAA third parties are not work product and discoverable is fatal to its claim that FAA-related communications are work product. Moreover, fundamental fairness dictates that all communications in the investigatory file be produced so Google is on a level playing field with Plaintiff. *Jones,* 696 F.2d at 1072 (under fairness doctrine "selective disclosure" of privileged communications "for tactical purposes waives the privilege"); *Williams* v. *Big Picture Loans, LLC*, 2019 1983048, at *10 (E.D. Va. May 3, 2019) ("Selective disclosure occurs . . . when a party reveals one beneficial communication but fails to reveal another, less helpful, communication on the same matter.").

An illustration of Plaintiff's false dichotomy is its tortured attempt to distinguish between OIG and DOJ communications with USPS witness Mr. Karpenko. At his deposition, Plaintiff's counsel took the position that fact-finding communications between ATR and USPS employees were privileged, but the same fact-finding inquiries between OIG lawyers and USPS employees were not: "So there were two separate requests that the witness had. There's a request from OIG, which we are not claiming privilege over, but there is also a request from DOJ, and that–for that we are claiming privilege because the–when he came out and when he did work on–culled

---

[3] *See* H.R. Rep. No. 94-1343, at 15 (1976) (legislative history to amendment to Antitrust Civil Process Act: "if a civil action based on the CID information is subsequently commenced the defendants in the civil action may invoke their full discovery rights under the Federal Rules of Civil Procedure, and obtain CID information relevant to their defense . . . . They will thus be fully able to protect their rights at trial by interrogating, cross-examining, and impeaching CID witnesses, both during pre-trial discovery, and at the trial itself"); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 531-32 ("The plain language" of the Antitrust Division Manual, which cites the House Report, "indicates that this regulation was intended to afford Defendants in government antitrust actions a full and fair opportunity to defend against" civil actions commenced upon information obtained by CID).

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

up and gathered information, that would be work product."    Ex. 21 (Karpenko Dep. 122:17-123:5). There is no principled basis to treat these communications differently.

Setting Plaintiff's false distinctions aside, application of the legal standard dictates that the communications at issue are not attorney work product.  The Government acknowledges that it is "witholding" the 57 documents at issue "from production of the Antitrust Division's investigatory file."  Opp. 3.  "The work product doctrine withholds protection from documents that would have been created in essentially similar form irrespective of the litigation."  *In re Capital One Consumer Data Security Breach Litig.*, 2020 WL 2731238, at *3 (E.D. Va. 2020) (rejecting declaration that a report "would not have been prepared in a substantially similar form and may not have been necessary at all without the threat of litigation").  Mr. Wolin's conclusory sworn statement is insufficient to demonstrate that these communications get special work-product protection because ATR is now seeking damages on behalf of some of the agencies ATR was communicating with as part of its investigation.  Each of the FAA witnesses that participated in ATR's fact-finding investigation understood that they were gathering factual information *as part of an investigation*.  *E.g.*, Ex. 14 (Oliphant Dep. 61:6-12) ("Q. did you anticipate participating in litigation on behalf of the United States against Google?" A: "I did not.");  *id.* (Oliphant Dep. 64:13-66:16) (stating she thought the "litigation hold" "was information seeking"; "We get asked questions all the time," following up with an ad agency after receiving a request is "standard procedures" because "if I am unsure of the answer, I go back to the media buyers to clarify before I provide an answer to whoever is requesting that information"); Ex. 19 (Horning Dep. 18:22-19:5; 33:23-34:10) (answering "none" to the question, "at the time of the discussion with DOJ on or around January 5th, 2023, what was your understanding, if any, as to the possibility of litigation?" and testifying that he viewed the inquiry

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

"as a routine request for information").  Nor is there any evidence in the record, including in Mr. Wolin's Declaration, that ATR informed federal agencies that it anticipated filing a lawsuit against Google on their behalf.  The federal agencies were simply responding to a fellow agency's information request.

None of Plaintiff's cited cases support its claim to work-product protection over communications with industry participants within the federal government. Plaintiff's cases all involve substantive documents prepared by a party or a party's representative prepared in anticipation of litigation or at the direction of counsel. *See E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 2010 WL 11432920, at *1 (E.D. Va. Aug. 13, 2010) (denying motion to compel materials "prepared by a professional accounting consultant" at the direction of counsel); *Duplan Corp.* v. *Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976) (documents at issue involve those prepared by a "patent representative" and "former general house counsel").[4]

Plaintiff has failed to provide any factual predicate for its work product claims.  The conclusory assertion in Mr. Wolin's sworn statement that it is his belief that these communications "would not have been created in the same form in the absence of anticipated litigation," is both speculative and unsupported by the facts.  Wolin Decl. ¶¶ 10, 12, 13, 14.  No witness has testified that he or she anticipated litigation when they first spoke to ATR; each witness who has been permitted to testify to any degree on these questions viewed the outreach from Plaintiff as fact gathering requests *as part of an investigation*.  *E.g.*, Ex. 19 (Horning Dep. 18:22-19:5; 33:23-34:10) (had no understanding "at the time of the discussion with DOJ on or around January 5th, 2023" "as to the possibility of litigation" and viewed the inquiry "as a

---

[4] In another of Plaintiff's cases, *United States* v. *Berkeley Heartlab, Inc.*, the court ordered the production of a draft memorandum prepared at the direction of counsel where the government failed to assert work product protections over a "substantially identical final version." 2017 WL 11673309, at *2 (D.S.C. Dec. 1, 2017).

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

routine request for information"); Ex. 14 (Oliphant Dep. 61:6-12) ("Q. So as of January 17, 2023, that we – that you sent this email to Mr. Benson, at this time, did you anticipate participating in litigation on behalf of the United States against Google?" A: "I did not."); Ex. 21 (Karpenko Dep. 50:18-51:4) ("Q: Before you learned of the lawsuit through a news feed that came through your iPhone, did you know a lawsuit would be coming?" A: "I only knew of the complaint as a complaint. I did not know if postal would be involved nor if I would be involved in any of the complaint.").

Further, Plaintiff cannot meet its burden because when Google tried to test the factual predicate for Plaintiff's privilege claim–the factual predicate missing from Mr. Wolin's declaration–Plaintiff's counsel blocked Google from answering the following yes-or-no questions by instructing the witnesses not to answer:

- "[D]id you make this request to Lisa Catucci and Mr. Knopf at UM at the direction of your lawyer?" Ex. 21 (Karpenko Dep. 75:4-76:2)

- "Was there a meeting that prompted you to reach out to Universal McCann for a list of third-party sites with attorneys for the United States Postal Service?" Ex. 21 (Karpenko Dep. 93:2-9).

- "Has the Department of Justice ever requested information about digital advertising purchases by the United States Army?" Ex. 19 (Horning Dep. 10:6-14).

- "Did the United States Antitrust Division lawyers present explain to you the purpose of the interview?" Ex. 19 (Horning Dep. 15:16-25).

These examples are only illustrative; there are several more. *E.g.,* Ex. 19 (Horning Dep. 35:9-36:12, 37:23-38:6); Ex. 22 (Koepke Dep. 256:5-16, 256:18-257:2, 259:6-262:18). Plaintiff, who bears the burden, cannot on the one hand rely exclusively on the Government's directives and on the other, instruct witnesses not to answer questions establishing the existence of those directives.

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

**B.     Communications Between Federal Agencies and Their Advertising Agencies Are Not Protected Work Product.**

Google does not—as Plaintiff suggests—contend that ATR waived work product by communicating with the ad agencies.  Instead, communications between the FAAs and their ad agencies are not attorney work product because the ad agencies are not the FAAs' agents for the purpose of this litigation, and the FAAs did not reach out to them as their agents in anticipation of litigation. *See Burwell* v. *Peyton*, 2014 WL 12717390, at *3 (D. Vt. Apr. 17, 2014) (finding that plaintiff's therapists notes were not protected work product because there "was no evidence that" the therapist "was acting as an agent of [plaintiff's] attorney at the time" nor any legal basis "to conclude that a doctor would be considered an attorney's agent in these circumstances").[5]

Plaintiff claims that "the advertising agencies here are not unrelated third parties" because "they work directly with the federal agencies on the subject of this litigation and maintain information regarding the federal agencies' purchases necessary to the evaluation of those purchases by counsel."  Opp. 11.  But this assertion does not make the ad agencies "representatives" of a party for purposes of Rule 26's work product protections.

Throughout discovery it has been Plaintiff's position that the ad agencies are *not* representatives of the FAAs or ATR for purposes of this litigation. Mot. 4, 8, 11.  When Google requested data related to the FAAs' advertising purchases, Plaintiff "explained that the FAAs do not maintain" the data, and "instead has such information, if at all, in the form of documents provided over time by their ad agency contractors."  Ex. 2 at 12.  When Google requested that Plaintiff direct the ad agencies to produce the data, Plaintiff responded that although "there is a

---

[5] Plaintiff's attempts to distinguish *Burwell* fail. Opp. 11.  Plaintiff fails to acknowledge that the therapist's notes recorded a conversation between the plaintiff and his attorney to discuss the plaintiff's decision regarding whether to move forward with a lawsuit, which the court concluded was "clearly" prepared in anticipation of litigation. *Burwell*, 2014 WL 12717390, at *2.  Even so, the court found the notes were not protected.

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

contractual relationship between the FAAs and their advertising agencies *whereby the advertising agencies purchase digital advertising on behalf of each FAA*," "[o]utside of that contractual relationship, *the FAAs do not control the actions of the advertising agencies, which are independent companies that the United States has also served with Rule 45 subpoenas.*" *Id.* Plaintiff fails to address this point in its opposition.  Plaintiff cannot have it both ways–they cannot decline to produce documents requested because they are in the custody of the ad agencies, who "the FAAs do not control," *id.*, and then claim that outreach from FAAs to ad agencies constitutes work product because the ad agencies are the FAAs' agents and representatives in the context of this litigation.

For these reasons, the cases Plaintiff cites are inapposite. Opp. 9.  None of the cases involve situations where, as here, the work product doctrine is being used to shield the fact-gathering efforts of a *third party* who was not retained by counsel.  *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997), involves the opinion work product of an *attorney's* typewritten summary of a witness interview, a scenario clearly not at issue here. *Front Royal Ins. Co.* v. *Gold Players, Inc.*, 187 F.R.D. 252, 258-59 (W.D. Va. 1999), concerns the application of the work product doctrine to the notes of an investigator *hired by counsel and directed by counsel to conduct witness interviews*; here, the ad agencies were not hired nor directed by counsel. Id. at 259.[6]

### C.   Internal FAA Non-Lawyer Communications Are Not Protected Work Product.

Plaintiff claims work product protection over communications among U.S. Army employees on which no attorney is the sender, recipient, or copyee, on the basis that these

---

[6] *Temporary Services, Inc.* v. *AIG, Inc.*, 2012 WL 13005977, at *2 (D.S.C. Jan. 18, 2012), also cited by Plaintiffs, involves an investigation conducted by employees of defendant, at the direction of defendant's counsel, in connection with ongoing litigation and regulatory proceedings. *Id.* at *1-2.

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

documents were "prepared at the request of an attorney in connection with gathering information at request of and as directed by Department of Justice Antitrust Division." Ex. 18 (Aug. 23, 2023 Privilege Log, entries 2903-2910). But again these claims fail because the declaration that Plaintiff has submitted based on Mr. Wolin's "belief" fails to set forth any factual predicate for a privilege claim, and Plaintiff precluded Google from testing whether there is any factual privilege for a work product claim. *Supra* section II.A; *S.E.C.* v. *Nodurft*, 2010 WL 11508139, at *3 (M.D. Fla. Apr. 28, 2010) (an adversary "is entitled " to "test the sufficiency of the privilege asserted"). For example, counsel at Mr. Horning's deposition refused to let the witness answer the yes or no question, "Has the Department of Justice ever requested information about digital advertising purchases by the United States Army?" Ex. 19 (Horning Dep. 10:6-14).

### D. Testimony Is Not Work Product.

Plaintiff's attempt to claw back testimony as work product is not supported by law. Opp. 5. "Work product extends only to 'documents and tangible things.'" *Equal Rights Ctr.* v. *Lion Gables Residential Trust*, 2010 WL 2483613, at *9 (D. Md. June 15, 2010) (quoting Fed. R. Civ. P. 26(b)(3)). Thus, Plaintiff "cannot invoke work product protection as a basis for withholding the underlying facts identified in the allegedly protected documents" during depositions. *Id.* Plaintiff's claim of work product over Mr. Karpenko's and Mr. Owens's deposition testimony must be rejected outright.

### E. Plaintiff's Distinction Between Opinion Work Product and Factual Information Would Swallow the Distinction.

"Opinion work product includes the mental impressions, conclusions, opinions, and legal theories of a party's attorney." *Galloway* v. *Sunbelt Rentals, Inc.*, 2015 WL 176615, at *2 (W.D. Va. Jan 14, 2015). In contrast, information is factual in nature–not opinion work product–when it involves "statements, interviews, chronologies, and correspondence." *Id.*

14

Plaintiff has not met its burden of supporting its sweeping argument that the communications at issue reflect opinion work product.  Opp. 12.  Plaintiff's brief makes clear these communications reflect facts, not opinions: "The information exchanged in these communications included the nature and extent of purchases of digital advertising by those agencies."  Opp. 7.  Further, Mr. Wolin's declaration says nothing about the documents on the ATR privilege log which he reviewed reflecting any "mental impressions, conclusions, opinions, or legal theories concerning the litigation." *Id*. His declaration establishes just the opposite, explaining that the communications were "undertaken to *gather information* about digital advertising purchases to aid in the Antitrust Division's investigation of Google's digital advertising practices."  Wolin Decl. ¶ 8.  No evidence supports any claim that these documents in their entirety reflect opinion work product. As Google stated in its opening brief, to the extent a document contains "mental impressions, conclusions, opinions, or legal theories" of Plaintiff's counsel, that information may be redacted.

**F.    Google Has a Substantial Need for the Documents and Testimony at Issue, and Cannot Secure the Substantial Equivalent without Undue Hardship.**

Google has a substantial need for the unvarnished facts as to how buyers of digital ads view the industry, and how the purchasing of advertising works from the perspective of the FAAs on whose behalf Plaintiff claims to be suing.  Based on the few documents Google has been able to question witnesses about in deposition and the surrounding testimony, Google has every reason to believe that the improperly withheld documents will demonstrate that commercial realities defy Plaintiff's alleged antitrust markets, as limited to "open web display advertising."

The OIG-USPS email which Plaintiff completely ignores in its opposition, Ex. 13, and the related text message thread between USPS and its ad agency, Universal McCann, make this point.  Mr. Karpenko exchanged text messages with a Universal McCann employee asking, "do

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

we do much advertising on third-party web sites, not Twitter/FB?"  Ex. 24 (Karpenko Dep. Ex. 35).  Mr. Karpenko asks the UM employee to give an example of a "third party site" because, as he testified, "I didn't necessarily understand what third-party site would mean to everyone and was looking from the perspective of what UM might consider the term third-party site."  *Id*.  Mr. Karpenko testified he was "looking for more of an educational perspective from someone in the media world of what they felt third party might mean."  Ex. 21 (Karpenko Dep. 98:1-5).  The UM employee also did not know what the term meant, stating, "Funny I don't really know what that term refers to?"  Ex. 24 (Karpenko Dep. Ex. 35).[7]  These exchanges are evidence that industry participants–whose views matter for purposes of defining the relevant antitrust market–do not view the relevant antitrust markets in the way Plaintiff has alleged.

Further, in Exhibit 33 to the Karpenko deposition, the witness explains that their advertising is "acquired through our media agency through USPS."  Ex. 13.  This unvarnished explanation, untainted by any lawyer preparation, is highly relevant to whether the FAAs are indirect purchasers foreclosed from recovering damages under federal antitrust law.  Google therefore has reason to believe that other emails wrongly withheld as privileged contain similar, unvarnished views of how digital ads are purchased—i.e., not directly from Google—which directly undermines Plaintiff's claim to be direct purchasers under the antitrust laws.  Google has a substantial need for these unvarnished views, untainted by attorney preparation; there is no substantial equivalent.  Subsequent to attorney preparation, witnesses have offered far different answers than the plain admission of the kind reflected in Mr. Karpenko's email.  *See, e.g.*, Ex. 20

---

[7] In the very same text message thread, Mr. Karpenko writes, "I will send an email to you and Michael.  I won't really provide the why for context."  Ex. 24 (Karpenko Dep. Ex. 35). The government has clawed back the very email that Mr. Karpenko sent to the UM employees referenced in his text during the deposition, and which the Court should readily determine through *in camera* review is not privileged, just as Google lawyers determined when selecting the document for use in deposition.

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

(Owens Tr. 221:20-222:2) (Q: "Did the navy purchase any display advertising directly from Google?" McBirney: "Objection. Asked and answered. Calls for a legal conclusion. Lack of foundation." A: "The Navy purchased advertising from Google via our contract with VMLY&R.").

Google has no way to obtain these documents or this testimony without undue hardship. Plaintiff fails to appreciate that the limitation on the number of depositions in this case and the expedited fact discovery period are precisely why Google is unable "to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings*, 102 F.3d at 750.

*Booz Allen*, which Plaintiff relegates to a footnote, is directly on point. There, the court acknowledged that the party seeking discovery of documents over which the government asserted work product had the opportunity to take depositions, but noted that "a deposition's usefulness may be limited in this context without the requested documents," and stated that "the breakneck speed of this litigation has diminished the availability of alternative sources for this information." *Booz Allen*, 2022 WL 3921019, at *2.[8] Multiple witnesses deposed to date have failed to recall the time, place, or manner of relevant communications with government lawyers absent any documents that could potentially aid in their recollection.

Likewise, *Federal Election Commission* supports Google's arguments, and that is why Plaintiff fails to address it. There, the court affirmed that a party was "unable without undue hardship to obtain the substantial equivalent of the materials by other means," in light of the "limit on depositions in the D.C. litigation combined with the potential that the deponents might

---

[8] Plaintiff's claim that this case is distinguishable because the documents would have served as key exhibits to the witness's testimony undermines Plaintiff's claim. Google is challenging the clawback of documents that did serve as key exhibits during deposition examinations, and were relevant to the testimony that Plaintiff has also improperly clawed back. *E.g., Lion Gables Residential Trust*, 2010 WL 2483613, at *9 (testimony cannot be protected work product).

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

not be able to recall sufficient detail regarding meetings that took place at least five years ago." *Fed. Elec. Comm'n* v. *Christian Coal.*, 178 F.R.D. 456, 466-67 (E.D. Va. 1998).  In that case, the parties were "allowed to take up to fifty depositions in the underlying litigation," which is almost double the number of depositions each party may take in this case.

Moreover, FAA witnesses have already demonstrated their inability to recall with sufficient detail communications that took place during the late 2022 - early 2023 time period. *E.g.*, Ex. 14 (Oliphant Dep. 60:2-14, 62:10-17, 69:4-9 (claiming not to recall any conversations with DOJ or whether she was aware of any investigation the antitrust division was doing prior to January 2023); *id.* at 71:8-18 (claiming not to recall receiving any requests to collect documents from the antitrust division)); Ex. 21 (Karpenko Dep. 69:3-7 (claiming not to recall having conversations with anyone from OIG with respect to digital ad spend by the postal service after January 9, 2023); *id.* at 130:4-13 (claiming not to recall whether he had other conversations with his ad agency contact, but suggesting such conversations may have been produced).

### III.   PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING THE COMMUNICATIONS AT ISSUE ARE PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE.

#### A.   Plaintiff Has Not Demonstrated that the Communications At Issue Reflect Any Agency Employee's Expression of Their Opinion.

Plaintiff fails to support with any evidence its claim of deliberative process privilege. Nothing in the declaration of Mr. Wolin suggests that anything in the documents that Google seeks "contains an employee's personal views or explain how disclosure of the requested factual information would hinder frank and independent discussion regarding any decision" on whether to file suit or what the complaint should say.  *Booz Allen*, 2022 WL 3921019 at *2.  Again, just the opposite: Mr. Wolin's sworn statement is that these communications "were relevant inputs into the decisional process within the Antitrust Division as to the scope and contents of our

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

complaint against Google." Wolin Decl. ¶ 8. In other words, the facts gathered in the course of

ATR's investigation from the FAAs played a role in the ultimate decision making, but those facts

are not in and of themselves any employee's "personal views" and those facts in and of

themselves would not "hinder frank and independent discussion." Simply stated, the deliberative

process privilege does not protect "relevant inputs" that are not an agency employee's

"policy-oriented judgment." *Ethyl Corp.*, 25 F.3d at 1248 ("the privilege does not protect a

document which is merely peripheral to actual policy formulation; the record must bear on the

formulation or exercise of policy-oriented judgment").

### B.  Plaintiff Incorrectly Treats the Deliberative Process Privilege as an Absolute Privilege.

Plaintiff treats deliberative process as an absolute privilege, but it is not. A "court may

order disclosure after balancing 'the public interest in nondisclosure with the need for the

information as evidence," and finding defendants showed a compelling need for disclosure even

"assuming without deciding the Government has the right to assert the privilege." *Booz Allen*,

2022 WL 3921019 at *2. In applying this test, courts consider four factors: (1) relevance of

evidence; (2) availability of alternative evidence on the same matters; (3) government's role in

the litigation; and (4) the extent to which disclosure would hinder frank and independent

discussion regarding contemplated policies and decisions. *Id.* And Plaintiff ignores that where,

as here, the government is a party to the litigation in which disclosure of the requested

information is sought, the balance tips in favor of disclosure. *E.g.*, *id.* ("Where the government

is a party to a case, it has a more central role in the litigation which weighs in favor of disclosure.

Here, the Department of Justice is not just a party but the plaintiff, which weakens the strength of

its privilege claim.").

Plaintiff does not support legally or factually that, based on the balancing test, ATR's

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

interest in nondisclosure outweighs the public interest in disclosure.  Plaintiff simply argues that Google could get the same information by deposing agency employees "in the standard course of discovery."  Opp. at 23.  This is the precise argument that ATR made and the court rejected in *Booz Allen*.  In that very recent case (ignored by Plaintiffs) involving this same Antitrust Division, the court ordered disclosure of information relevant to market definition because there, like here, the requested communications contain facts, as opposed to any employee's "personal views," was relevant, "the breakneck speed of the litigation diminished the availability of alternative sources for this information," and "the Department of Justice is not just a party, but the plaintiff, which weakens the strength of the privilege claim."  2022 WL 3921019, at *2. And, the final factor–whether frank and independent discussions would be hindered–weighed in favor of disclosure because the documents at issue were "unmoored from any given employee's personal views."  *Id.* at *3.

## CONCLUSION

For the foregoing reasons, Google's motion to compel should be granted.

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362

Dated: August 24, 2023

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Scott A. Eisman (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*Counsel for Defendant Google LLC*

Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
 CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie H. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Joseph Bial (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB #93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
kdunn@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3387
Facsimile:  (212) 492-0387
ejmorgan@paulweiss.com

UNREDACTED VERSION FILED PURSUANT TO COURT ORDER DOC. 362