IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
OR, IN THE ALTERNATIVE, A PROTECTIVE ORDER**

The Justice Department, alongside the Attorneys General of 17 sovereign states, filed this civil antitrust enforcement action to hold Google accountable for unlawfully maintaining its monopoly in certain digital advertising technologies and to restore competition to the digital advertising industry that, as a practical matter, funds the creation and expansion of a vibrant, open internet. As it does in every enforcement action, the Justice Department, along with the Plaintiff States, filed this lawsuit because the facts and the law, evaluated through a multi-year investigation, compelled it to do so in the public interest. Contrary to what Google suggests, this case is not merely an effort to recover damages suffered by federal agencies that rely on digital advertising technologies. Rather, this case spotlights Google's sustained course of anticompetitive conduct and reflects the considered judgment of antitrust enforcers.

In Google's telling, though, this lawsuit, notwithstanding its detailed allegations of wrongdoing and similar inquiries by class action plaintiffs and myriad additional state and international enforcers, is the result of "personal or financial" biases or alleged selective prosecution against Google. That supposition strains credulity and fails to make out any legally cognizable affirmative defense.

Plaintiffs do not seek this Court's intervention lightly. This Motion comes only after it became clear that Google sought to wield its tenth and thirteenth affirmative defenses to obtain expansive and unfounded discovery against the United States. As detailed in the Opening Brief, These affirmative defenses carry a significant cost and prejudice Plaintiffs' ability to focus on the merits.

None of the facts set forth in Google's opposition brief—even if they had been included in Google's Answer—show any actionable prosecutorial bias that the Assistant Attorney General or any other Department of Justice official holds against Google, nor do they show that the Assistant Attorney General or any other Department of Justice official has any financial interest in the outcome of this lawsuit. Indeed, the Assistant Attorney General did not even sign the operative Amended Complaint.

The authority to prosecute is "one of the core powers of the Executive Branch of the Federal Government," *United States v. Armstrong*, 517 U.S. 456, 457 (1996), and for that reason, prosecutorial decisions are entitled to a "presumption of regularity," *see United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926); *Armstrong*, 517 U.S. at 464. None of the factual assertions contained in Google's Response (even if they had been duly pled) merit disturbing that presumption of regularity. To the extent that selective enforcement defenses have been recognized as valid in the civil antitrust context at all, the defendant must establish both a discriminatory intent and a discriminatory effect, neither of which Google can establish here. *United States v. AT&T Inc.*, 290 F. Supp. 3d 1, 3-4 (D.D.C. 2018).

As for Google's purported due process affirmative defense, it is not a defense at all, as it would not excuse Google from a judgment in this action. In any event, Google does not allege a failure to follow federal government ethics processes with respect to the Assistant Attorney

General, or a failure to obtain authorization for him to participate in this action. ECF Nos. 368-69, Resp. Mot. Part. J. Pldg. ("Resp. Br.") 9-18. Google's suggestion that the Assistant Attorney General violated the White House Ethics Pledge is similarly incorrect. *See* page 16, *infra*. Last, Google's assertion that the discovery it seeks is relevant to assess the credibility of witnesses is implausible and speculative. The Court should not deny the United States' Motion for a protective order on that basis. For all these reasons, and as further described below and in the Opening Brief, Plaintiffs' Motion for Partial Judgment on the Pleadings, or, in the alternative, a Protective Order, should be granted.

## ARGUMENT

**I.  Partial judgment on the pleadings is timely and appropriate.**

Google asserts two procedural objections to Plaintiffs' Rule 12(c) Motion: (1) that the Motion is untimely because it was brought during discovery, and (2) that Rule 12(c) is an improper vehicle for challenging Google's affirmative defenses. The Court should reject these contentions.

**A.  Plaintiffs' Rule 12(c) Motion is timely.**

Google first asks for a categorical ruling that a motion under Rule 12(c) is "untimely when filed near the close of fact discovery." [1] Resp. Br. 20-21. That blanket rule—asserted without reference to whether discovery has occurred *as to Google's affirmative defenses*—has no support in law. *See Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762, 768 n.3 (D. Md. 2017) ("mere fact that discovery has commenced" not enough to render Rule 12(c) motion

---

[1] The United States filed this Motion three weeks before the designated close of all fact discovery. At last Friday's hearing Magistrate Judge Anderson, the day after Google filed its Response, Google notified the Court that it will not be able to comply with this deadline, as it will be producing a "substantial number of additional documents in this case." This disclosure raises uncertainty about whether this case is now, in fact, "near the close of fact discovery."

3

untimely). Google complains that Plaintiffs considered moving to strike these affirmative defenses earlier. As explained above, Plaintiffs brought this Motion only after the prejudice and distraction of allowing these defenses to remain in the case became clear.[2] *See* page 2, *supra*. Regardless of whether discovery has commenced on other issues, the concern about Rule 12(c) motions brought when the end of discovery is near is not present here. Neither affirmative defense has yet independently generated substantial discovery, so the Motion is timely.

*Grajales v. P.R. Ports Authority*, 682 F.3d 40, 46 (1st Cir. 2012)—cited by Google—illustrates exactly this point. In *Grajales*, the court held that a Rule 12(c) motion filed at the close of discovery made little sense because it would not serve the "main goal" of resolving a case at the pleading stage: "the avoidance of unnecessary discovery." *Id.* Here, Plaintiffs have produced communications between the Antitrust Division and third parties that occurred during their investigation—including those identified in Google's Response Brief. But the United States has not produced any written or testimonial discovery sought specifically or uniquely in connection with the affirmative defenses at issue here. Indeed, the United States has taken the consistent position that Google is not entitled to discovery of these materials.[3] Thus, unlike in *Grajales*, Plaintiffs are not asking the Court to engage in an "artificial evaluation" of Google's affirmative defenses by "[i]gnoring the entire panoply of facts developed during discovery." *Id.* at 45-46. Instead, Plaintiff's motion strikes at what *Grajales* described as the "core purpose" of the

---

[2] For that same reason, it would be appropriate to strike the affirmative defenses even though more than 21 days have passed since filing of the Answer. ECF No. 318, Mem. Supp. Mot. Part. J. Pldg. ("Op. Br.") 11 & n.11.

[3] The United States produced its investigative file—as it does in every antitrust case—earlier in the fact discovery period, which contained over 120,000 pages of communications with third parties and over one million pages of documents related to third parties. But the United States and others have not yet provided testimony or documents in response to Google's RFP, subpoenas, or deposition notices directed specifically at these affirmative defenses.

4

plausibility standard inherent in Rule 12(c): preventing an improper fishing expedition based on facially implausible allegations. *Id.*[4]

### B. Plaintiffs' Rule 12(c) Motion Is a Proper Vehicle to Challenge Google's Affirmative Defenses.

Google also asserts that its affirmative defenses should not be decided on a Rule 12(c) motion because their resolution depends on a "fact-intensive inquiry." Resp. Br. 22-23. For the reasons discussed in Parts II and III, *infra*, that premise is incorrect; both affirmative defenses are deficient as a matter of *law*, and this Court has repeatedly held that a Rule 12(c) motion is a permissible means of challenging such legally deficient defenses. *See, e.g.*, *Moskowitz v. Jacobson Holman, PLLC*, 2015 WL 6830266, at *2 (E.D. Va. Nov. 6, 2015) (Rule 12(c) challenge to affirmative defense to be evaluated under "the same standard as [the Court] applies to Rule 12(b)(6) motions," and will be granted where the "claim may be resolved as a matter of law"); *Smithfield Foods, Inc. v. United Food & Comm. Workers Intern. Union*, 593 F. Supp. 2d 840, 848 (E.D. Va. 2008) (granting Rule 12(c) motion as a matter of law on four affirmative defenses); *see also Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 86 (S.D.N.Y. 1974) (motions to dispose of affirmative defenses as a matter of law may alternatively be considered under a court's *sua sponte* authority, regardless of timing, under Fed. R. Civ. P. 12(f)).[5]

---

[4] The other cases on which Google relies—*Herring v. Lapolla Indus., Inc.*, 2013 WL 12148769, at *1 (D.S.C. Aug. 30, 2013), and *Biniaris v. Hansel Union Consulting, PLLC*, 382 F. Supp. 3d 467, 471 (E.D. Va. 2019)—fare no better. Like *Grajales*, *Herring* merely stands for the proposition that judgment on the pleadings is more appropriate before significant discovery has occurred, 2013 WL 12148769 at *1, making the instant Motion reasonable where no focused discovery has occurred on the issues on which judgment on the pleadings is sought. *Biniaris* is even further afield—there, despite acknowledging in dicta that discovery had commenced, the court went on to evaluate the merits of the pleading, *granting* the Rule 12(c) motion in part. 382 F. Supp. 3d at 474.

[5] Google's reliance on *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007), is inapposite. *Goodman* held a Rule 12(b)(6) movant could not *offensively* leverage an affirmative defense in support of dismissal. *Id.* at 464. It did not in any way hold (or imply) that a Rule 12(c) motion could not be used to challenge the legal sufficiency of an affirmative defense.

5

The instant Motion is also a proper vehicle for challenging affirmative defenses that are insufficiently pled. Despite pointing to an intra-district split as to the applicable pleading standard, Google does not contest that this Court explicitly adopted the majority view in *Rolls-Royce plc v. United Tech. Corp.*, No. 1:10-cv-457-LMB, ECF No. 157 (E.D. Va. Dec. 17, 2010), that "*Iqbal* and *Twombly* do apply equally to affirmative defenses and counterclaims." *Id.* at 5:9-5:15; *see also Beasley v. Red Rock Fin. Servs., LLC*, 2015 WL 13049994, at *1 (E.D. Va. Feb. 2, 2015) (Anderson, M.J.). Google's insistence on circumventing the appropriate pleading standard is unsurprising, as its affirmative defenses lack even a bare-minimum statement of the "ultimate facts underlying the defense." *Francisco v. Verizon South, Inc.*, 2010 WL 2990159, at *7 (E.D. Va. July 29, 2010).

Even under the less-demanding notice pleading standard, Google does not dispute its obligation to provide "sufficient factual support" for its affirmative defenses beyond "merely list[ing] code sections." *Inf. Planning and Mgmt. Serv. Inc. v. Dollar Gen. Corp.*, 2016 WL 69902, at *5 (E.D. Va. Jan. 5, 2016). Instead, it suggests that the Court should interpret this Motion as proof that Plaintiffs were able to guess at the content of those defenses, and implies that its subsequent RFPs obviate the need to provide notice at the outset. Resp. Br. 22. That is not the law—and Google's simultaneous attempt to backfill its deficient defenses with an 18 page-long chain of fanciful assertions proves it. Even considering those facts as if they were alleged in the Answer, all Google has demonstrated is that amendment would be futile, as none of those facts suggest that discovery would reveal anything capable of overcoming the *legal* insufficiency of its selective prosecution and due process defenses.

6

**II.     Google's selective enforcement affirmative defense fails as a matter of law.**

Google's Response underscores why the district court in *United States v. AT&T Inc.*, 290 F. Supp. 3d 1, 4 (D.D.C. 2018), observed that it is "difficult to even conceptualize how a selective enforcement claim applies in the antitrust context." Neither the Fourth Circuit nor any court in this district have found such an affirmative defense viable in the antitrust context, because the assessment of alleged anticompetitive conduct against the backdrop of market realities is inherently fact and context dependent. *See id.* at 4. The allegations in the Amended Complaint reflect that reality.

This is why Google's strained attempt to identify any similarly situated company —not to mention the lack of a theory of discriminatory intent—reinforces the futility and cost of allowing Google's "selective enforcement" defense to remain in this action. *See* Resp. Br. 26-29. The Court should dismiss this defense without leave to amend because an enforcement an enforcement decision predicated upon facts that demonstrate a defendant has violated the law is not "discriminatory intent," much like vague observations about the current "big tech" enforcement landscape do not make out "discriminatory effect."

**A.     Google is before the Court for its own conduct, not any viable theory of discriminatory intent or purpose.**

To show discriminatory intent, Google must show that the decision to bring this action was "invidious or in bad faith." *See United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012). No protected classification such as race or religion is at issue here, so "the question is simply whether there is a rational basis"—"the most deferential level of scrutiny"— for the government to bring this action against Google. *See Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 820-21 (4th Cir. 1995); *Bruce & Tanya Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty, Va.*, 355 F. Supp. 3d 386, 414 (E.D. Va. 2018) (Brinkema, J.). On rational basis review, a finding of

discriminatory intent is reserved for "truly horrendous situations." *See SEC v. W. Int'l Sec., Inc.*, 2023 WL 2480732, at *8 (C.D. Cal. March 13, 2023) (quoting *Baker v. Coxe*, 230 F.3d 470, 474-75 (1st Cir. 2000)). In *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 44 (1st Cir. 1992), for example, the court found that the withholding of a land use permit, *even in bad faith*, in retaliation for the applicant's political views, did not violate equal protection.

Google tries to shoehorn what it calls the Assistant Attorney General's "long history of critical comments of Google and advocacy on behalf of third parties critical to this litigation," Resp. Br. at 28 – into a motivation that lacks a rational basis. The Assistant Attorney General's work and statements during his time in private practice, or his articulation of his policy priorities as Assistant Attorney General, even if properly alleged in Google's answer (they are not), are insufficient as a matter of law to satisfy the "demanding" standard for discriminatory intent. *Armstrong*, 517 U.S. at 463. Even construing Google's alleged bias by a single official in the light most favorable to Google, Google seems to ignore, for example, that the Assistant Attorney General did not sign the operative Amended Complaint precisely because he was complying with the applicable ethics regulations, and that dozens of state and international competition enforcers are separately litigating or investigating Google's conduct in the ad tech industry. These other actions have been initiated by independent sovereigns, have spanned many years and geographies, and have been, or are currently being reviewed by independent tribunals. *See, e.g.*, Op. Br. 3 n.2. Surely, Google acknowledges that these other actions are not also instigated because of some alleged bias or discriminatory intent against Google by a single person.

**B.     Google cannot state a cognizable theory of discriminatory effect.**

To establish discriminatory effect, Google must show that similarly situated parties were not prosecuted despite "no distinguishable legitimate prosecutorial factors." *See United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996). That one entity or individual is prosecuted, while

8

another is not, is insufficient as a matter of law because inherent in the concept of prosecutorial discretion is the fact that prosecutors must make choices as to how, when, and against whom an enforcement action is brought. *Oyler v. Boles*, 368 U.S. 448, 456 (1962) ("[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation."). Google was required at a bare minimum to identify a putative defendant that has violated the antitrust in the same ways, with the same degree of culpability. *See Olvis*, 97 F.2d at 744 (discussing, among other factors, "relative culpability," the "strength of the evidence," and "prosecutorial priorities for addressing specific types of illegal conduct"). Google has not done so in its Answer or in its 30-page Response, underscoring that granting leave to amend its insufficiently pled affirmative defense would be futile.

Google initially appears to contend that any "big tech" company that has not been sued by the Antitrust Division is similarly situated, but it provides nearly no explanation for how or why that is so. *See* Resp. Br. 27. It does not assert (and did not allege) whether those companies have engaged in a course of anticompetitive conduct similar to Google's in order to attain or maintain monopolies in multiple ad tech markets like Google. *See id.* at 27-28. Then Google targets its rival, Microsoft, and urges the Court to surmise that because Microsoft is (i) a "big tech" company and (ii) acquired an ad tech company in 2022, it is similarly situated. *Id.* But that comparison fails to establish discriminatory effect for at least two reasons.

*First*, although Google suggests the acquisition of ad tech company Xandr left Microsoft with "an ad tech stack strikingly similar to the Google ad tech stack," *Id.* at 27, it does not contend Microsoft's market share across the ad tech stack is in any way comparable to Google's. *E.g.*, Am. Compl. ¶ 18 (noting Google's 90% share of the publisher ad server market in 2015). Nor could it. As a simple matter of mathematics, Microsoft cannot come close to Google's level

of market dominance. As alleged in the Amended Complaint, Google is a unique player in the ad tech industry because it has the largest market share in *every* layer of the ad tech stack, with control over "(1) the technology used by nearly every major website publisher to offer advertising space for sale; (2) the leading tools used by advertisers to buy that advertising space; and (3) the largest ad exchange that matches publishers with advertisers each time that ad space is sold." Am. Compl. ¶ 6. Even if, post-acquisition Microsoft had *a presence* in each relevant market, its overall market position certainly would not be "similar" by any definition. Public reporting shows that Microsoft purchased Xandr's ad tech business—which purportedly was losing tens of millions of dollars each year—for $1 billion;[6] this purchase price amounts to less than 3% of the *annual revenue* of Google's display ad tech businesses. *See* Am. Compl. ¶ 308. At bottom, it is unremarkable that Google is a single defendant to this monopolization case. This is consistent with the nature and theory of most monopolization cases: they tend to arise when one dominant firm has unlawfully monopolized a market and engaged in exclusionary or anticompetitive conduct.

      *Second*, leaving aside the striking difference in the relative market positions of these two companies, Google fails to identify any *violation of the antitrust laws* that would have justified pursuing an enforcement action against Microsoft or Xandr. *See* Resp. Br. 27. All that Google has done is identify a single merger that the Justice Department did not challenge, without any explanation why the circumstances of the Xandr acquisition are similar to Google's sustained conduct here. And it certainly has not identified another company that engaged in conduct

---

[6] Bloomberg News, *AT&T Sells Xandr Ad Business to Microsoft for $1 Billion* (Dec. 21, 2021), https://www.bloomberg.com/news/articles/2021-12-21/at-t-sells-xandr-to-microsoft-in-retreat-from-digital-ad-market#xj4y7vzkg; Google Finance, https://www.google.com/finance/quote/GOOGL:NASDAQ; AT&T selling ad tech unit Xandr to Microsoft (axios.com).

approximating what is set forth in the Amended Complaint. Google instead implies that the Justice Department has not been even-handed because it has not brought similar actions against other "big tech" companies or numerous ad tech companies, regardless of whether there might be any legal or factual basis for those cases.

If Google's assertions of discriminatory effect were enough to state a viable affirmative defense for selective enforcement and obtain discovery on that basis, virtually every defendant in an antitrust enforcement action could establish discriminatory effect any time an antitrust enforcer brought a case against one market participant, but not another. More broadly, if Google's argument were viable, then it would open for unusual, invasive, and harassing discovery and litigation any case where the Executive Branch makes a judgment about prosecutorial priorities, relative culpability, or any other legitimate prosecutorial factor. Fourth Circuit and Supreme Court precedent is aimed at preventing this exact outcome. *See Olvis*, 97 F.3d at 743 (observing that "the Supreme Court recently admonished in *Armstrong* [that] 'the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims.'"(quoting *Armstrong*, 517 U.S. at 464)).

Google's reliance on *United States v. McGraw-Hill*, 2014 WL 1647385 (C.D. Cal. April 15, 2014) demonstrates the weakness of its legal position. There, in an action alleging misconduct by S&P in its credit ratings of mortgage-backed securities, the court found it plausible that defendant S&P was impermissibly singled out from other identically situated credit rating agencies because S&P downgraded the United States' credit rating. *Id.* at *12-13. One day after the downgrade, S&P alleged that the Treasury Secretary made statements that S&P's conduct would be "looked at very carefully," which S&P viewed as retaliatory for the downgrade. *Id.* at 12. In its motion to compel seeking discovery on selective prosecution, S&P

11

also noted that "[t]he United States has not disputed that its theory of liability here would apply as well to other rating agencies that made the same representations about their independence and objectivity [with respect to ratings of mortgage-backed securities]." *United States v. McGraw-Hill*, No. 2:13-cv-00779-DOC-JCG (C.D. Cal. Jan. 20, 2014), ECF No. 100-1, at 17 (S&P's motion to compel). Here, Google has not even identified a similarly situated company that engaged in the same course of anticompetitive conduct with the same detrimental effect on competition.

Google's attempted reliance on *United States v. American Electric Power Service Corp.*, 218 F. Supp. 2d 931, 940-41 (S.D. Ohio 2002) is similarly misplaced, because Google omitted the case's subsequent procedural history. The district court originally denied the motion to strike the defendants' selective prosecution "at this stage" and gave the defendants 30 days to file briefing explaining how they satisfied the "threshold showing outlined in *Armstrong*, that would justify discovery on the selective prosecution defense." *Id.* at 941. The district court then *granted* the government's motion to strike in a later ruling because it was "not at all clear" that the defendants "sufficiently alleged selective civil enforcement in violation of their equal protection rights," and the court was unpersuaded that it was a violation of equal protection for defendants to be "singled out" on the basis of being "coal-fired electronic power generation plants in the Midwest and South." 258 F. Supp. 2d 804, 807-08 (S.D. Ohio 2003). Google's effort to advance a selective prosecution defense for allegedly being "singled out" from other "big tech" companies is similarly unpersuasive.

This Court need not express a view on whether selective prosecution is *ever* available in any type of civil enforcement case.[7] Rather, the weakness of Google's proffered legal theory of

---

[7] The Court would nevertheless have legal support for reaching that conclusion. Op. Br. 12-16.

12

discriminatory intent and discriminatory effect supports the determination, as a matter of law, that Google cannot sustain a selective prosecution defense in this complex antitrust enforcement matter. *Cf. United States v. AT&T Inc.*, 290 F. Supp. 3d 1, 4 (D.D.C. 2018); *FTC v. Meta Platforms Inc.*, 2022 WL 16637996, at *7 (N.D. Cal. Nov. 2, 2022).

### III.     Google cannot articulate a cognizable theory of a due process violation.

Of the three pages Google devotes to its due process argument, approximately two pages recite undisputed principles regarding prosecutorial neutrality and disinterest. Resp. Br. 23-25. Google then concludes—without explanation—that there is a sound legal basis to assert a due process challenge here. *See id.* at 25 ("Through its due process defense, Google will show the influence that [the Assistant Attorney General's] anti-Google bias—shared by former clients of [the Assistant Attorney General] while he was in private practice—has had on the filing of this case."). Google makes these prefatory (and conclusory) assertions about what it "will show," but nowhere in its Response does Google articulate a legal theory of constitutionally actionable bias here. (Nor does Google explain or account for the myriad other legal actions challenging Google's conduct that have been brought by actors other than the Department of Justice.)

Google's defective legal theory of a due process violation proceeds from two flawed premises: (1) that the Assistant Attorney General's prior work and statements somehow evince the sort of bias that would implicate the constitutional protections of due process; and (2) that the Antitrust Division failed to follow relevant ethical regulations, in a manner that also implicates the Constitution. Viewed separately or together, both contentions fail as a matter of law, and amendment cannot save these infirmities.

First, Google's allegations about the Assistant Attorney General's prior work and statements do not allege a due process violation because they do not reflect a "direct, personal,

13

substantial" pecuniary interest in the outcome of this case. *See Wards Corner Beauty Academy v. Nat'l Accrediting Comm'n of Career Arts & Sci.*, 922 F.3d 568, 574 (4th Cir. 2019) (holding that member of state licensing board did not have conflict of interest violating due process clause); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250 (holding that child labor law enforcement regime did not violate due process because "[t]he salary of the [enforcement official] was fixed by law," and therefore "no government official stands to profit economically from vigorous enforcement."). Google's implicit reliance on *Wright v. United States*, 732 F.2d 1048, 1056 (2d Cir. 1984) to summon a non-monetary "axe to grind" against Google that violates due process is similarly misplaced. There, the prosecutor's wife

> was not merely a political opponent [of the criminal defendant] but a lawyer who had on two occasions brought complaints to federal authorities that could have resulted in criminal charges against him, who had actively petitioned various federal, state and local agencies to investigate [the defendants] alleged misdeeds, who had allegedly been assaulted by [the defendant's] minions, and who almost certainly harbored personal animosity against [the defendant].

*Id.* at 1055. Here, by contrast, the Assistant Attorney General has no *personal* relationship with Google. Rather, he has engaged in prior representations and made prior statements solely in his capacity as an attorney and antitrust expert. Google has not alleged anything close to the type of vindictive personal vendetta present in *Wright*. Nor could it. There is no dispute that the Assistant Attorney General was an experienced antitrust lawyer at the time he assumed leadership of the Antitrust Division. It is also undisputed that the Assistant Attorney General identified conduct he believed suggested Google was engaged in anticompetitive behavior, and that he also advanced those views on behalf of certain clients in private practice. Google has yet to explain how this set of circumstances gives rise to a constitutional violation of due process.

*FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 62-64 (D.D.C. 2022), is instructive here and this Court should reject Google's attempt to distinguish that case from this one. In *Facebook*, the

court rejected Facebook's effort to disqualify the Chair of the FTC based on her comments expressing "views about Facebook's monopoly power," expressed before she joined the FTC. *Id.* at 61, 64. The court found that "these views do not suggest the type of 'axe to grind' based on personal animosity or financial conflict of interest that has disqualified prosecutors in the past." *Id.* (quoting *Wright*, 732 F.2d at 1055). Google is making substantially similar allegations here. It has not alleged—nor could it, in good faith—a financial conflict of interest or personal vendetta rising to the level of a constitutional violation. Google does not have a constitutional right to an enforcer with a friendly predisposition towards it, or to an enforcer with no opinions about it whatsoever. *Wright*, 732 F.2d at 1056; *Facebook,* 581 F. Supp. 3d at 62-64. It is entitled to a fair prosecutor and its day in court before a finder of fact who will ultimately decide whether Google has violated the Sherman Act, both of which it has here.

  Second, to the extent Google is arguing that various ethics and professional conduct rules supply the link to a constitutional due process violation, Google is incorrect. Google does not even assert that anyone has violated any rule of professional conduct or applicable ethics regulation, nor does it cite any precedent for the proposition that perspectives informed through, *inter alia*, experience and prior work automatically render that perspective unconstitutionally biased. There is also no legal refuge for Google in the White House Ethics Pledge. As an initial matter, Google provides no support to suggest that the White House Ethics Pledge has a constitutional dimension. Indeed, the language of the Ethics Pledge says otherwise. *See* Exec. Order No. 13989, 86 Fed. Reg. 7029 (Jan. 20, 2021) ("This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."). The fact that the government may choose to hold itself to higher

15

standards than those required by the rules of professional conduct and ethical regulations does not imbue a constitutional entitlement to that choice. There is likewise no private right of action to enforce internal Department of Justice guidelines. *See, e.g.*, *United States v. Blackley*, 167 F.3d 543, 548-49 (D.C. Cir. 1999) (holding that "violations of [U.S. Attorney's Manual] policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights"). Google cannot secure for itself that private right of action merely by invoking "due process."

Moreover, Google has not accurately alleged a violation of the Ethics Pledge. The two-year bar refers only to matters where a "former employer or client is a party or represents a party to the matter"—a threshold requirement that was absent here (until the Assistant Attorney General's former law firm Paul, Weiss surfaced as Google counsel), Op. Br. 6, absent here. *See* U.S. Office of Government Ethics, *Ethics Pledge: Revolving Door Ban--All Appointees Entering Government*, at 3 (March 26, 2009) (defining the term "directly and substantially related to");[8] U.S. Office of Government Ethics, Comparison of Ethics Pledge Commitments in Executive Order 13989 to Past Ethics Pledges, at Attachment p. 2 (Feb. 23, 2021) (confirming that 2009 definition of "directly and substantially related to" applies to Biden Administration Ethics Pledge).[9]

Notably, Google does not allege that no reasonable prosecutor would have recommended an enforcement action based on the facts and theories developed in the underlying investigation. Instead, Google starts from the erroneous conclusion that because Google may choose to make

---

[8] *Available at* https://www.oge.gov/Web/OGE.nsf/0/D13BCBEB4F01ED67852585BA005BECBB/$FILE/DO-09-011.pdf.
[9] *Available at* https://www.oge.gov/Web/OGE.nsf/0/DD9C58B2C02A3B0C85258686004AAAA3/$FILE/LA-21-05.pdf.

arguments to a trier of fact about why Google is not liable here,[10] it can then work backwards from that conclusion to suggest that this case must have been brought due to the Assistant Attorney General's alleged bias. Google effectively asks the Court to presuppose the legal and factual legitimacy of its arguments so that it can advance an otherwise invalid affirmative defense. But Google has it backwards. *See Domingo v. Dep't of the Army*, 2018 WL 3762999, *2 (N.D. W. Va. Aug. 8, 2018) ("If recusal [of the presiding judge] was required each time a party disagreed with the Court's rulings, recusal would become a matter of course."). Google may test the merits of Plaintiffs' claims as any litigant would, and ultimately a finder of fact will decide whether Google is liable under the Sherman Act, not Plaintiffs. But if every defendant who disagreed with the merits of a government action or the Executive Branch's staffing decisions could allege a due process violation, then every defendant would be entitled to harassing discovery on alleged prosecutorial bias merely by pointing to evidence it believes undermines the merits of the government's case. *See id.*

**IV.     Google's hypothesizing about the possible impeachment value of otherwise inappropriate discovery does not support denial of a protective order.**

Even if the Court is not inclined to dismiss or strike these two affirmative defenses, it should still issue a protective order to protect the United States, its officials, and third parties from wasteful and disproportionate discovery. Regardless of whether Google has—or could, with leave to amend—sufficiently alleged selective prosecution or due process defenses, it has not made the elevated "credible showing" standard necessary to gain access to discovery. *See Olvis*, 97 F.3d at 743 (quoting *Armstrong*, 517 U.S. at 468, 470).

---

[10] Google's suggestion, even if true, that "industry participants—who were not represented by the Assistant Attorney General—view the marketplace as competitive," Resp. Br. 25, is beside the point and offers no support to Google's tenth and thirteenth affirmative defenses. Google's similar assertion about certain federal agency witnesses, *id.*, is likewise irrelevant.

This conclusion is bolstered by the fact that Google already has the United States' investigative file, containing over 120,000 pages of communications with third parties and over one million pages of document productions from third parties. Considering the materials already produced and the proportionality principles enshrined in Rule 26, Google should not be permitted to pursue additional wasteful, distracting discovery—including against senior Justice Department officials—into matters that are at the very most, "hovering at the outer boundary of Rule 26." *See Brinks Co. v. Chubb European Gr. Ltd.*, 2021 WL 5083335, at *13 (E.D. Va. Feb. 24, 2021).

Google resists this result by positing that discovery into these defenses could yield evidence relevant to (potential) witness credibility,[11] so discovery should go forward in any event. Resp Br. 29-30. Google is wrong for two reasons. First, this argument would nullify Fourth Circuit and Supreme Court precedent ensuring that "the showing necessary to obtain discovery [on selective prosecution] should itself be a significant barrier to the litigation of insubstantial claims." *Olvis*, 97 F.3d at 743 (quoting *Armstrong*, 517 U.S. at 464). If a defendant seeking to probe internal prosecutorial decision-making could obtain this discovery by asserting an interest in investigating witness credibility, then the "significant barrier" raised by the Fourth Circuit and the Supreme Court would be no barrier at all.[12]

---

[11] Google does not explain how the requested documents and testimony—even categorically—might be used to test witness credibility in this case, or at least how it would do so beyond the materials it already has in its possession. The answer is not obvious.

[12] Google's citation to the Advisory Committee notes on Rule 26, Resp. Br. 29, supports the United States' position and not Google's because Google omitted key context. The Advisory Committee observed that "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, *might be properly discoverable.*" Advisory Committee Notes, Federal Rules of Civil Procedure, 192 F.R.D. 340, 389 (2000) (emphasis added). Crucially, the Committee went on to say, "In each instance, whether such information is discoverable . . . depends on the circumstances of the pending action." *Id.* This complete citation

Second, "courts 'have required parties to establish good cause where discovery is sought solely to unearth potential impeachment material and have not found such cause where the request is speculative.'" *Alvarado v. GC Dealer Servs. Inc.*, 2018 WL 6322188, at *4 (E.D.N.Y. Dec. 3, 2018) (quoting *Dzanis v. JPMorgan Chase & Co.,* 2011 WL 5979650, at *6 (S.D.N.Y. Nov. 30, 2011)); *Chestnut v. Kincaid*, 2022 WL 358170, at *3 (D. Md. Feb. 7, 2022) ("Individual Defendants are not entitled to cast a wide net fishing expedition for any possible record that may show impeachment of a nonparty, based solely on speculation and with no evidence to suggest it even exists."). Speculation is all that Google has offered here, *see* Resp. Br. 29-30, so the Court should issue a protective order if it is not inclined to remove these defenses from this action.[13]

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant their Motion for Partial Judgment on the Pleadings. Alternatively, the United States respectfully requests that the Court issue a protective order precluding discovery into these defenses from Plaintiffs or third parties.

Dated: September 6, 2023

Respectfully submitted,

---

to the Committee Notes reinforces the Court's discretion to prevent an unwarranted fishing expedition under the guise of searching for impeachment evidence.

[13] If the Court is inclined to dismiss the affirmative defenses but not issue a protective order, the United States would also ask for confirmation from the Court that it would not permit discovery into the same subject matter to proceed on the alternative basis of searching for evidence on witness credibility.

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Andrew N. Ferguson<br>ANDREW N. FERGUSON<br>Solicitor General<br>STEVEN G. POPPS<br>Deputy Attorney General<br>TYLER T. HENRY<br>Assistant Attorney General |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>/s/ Aaron Teitelbaum<br>AARON M. TEITELBAUM<br><br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Julia.Tarver.Wood@usdoj.gov<br><br>Attorneys for the United States | Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us<br><br>Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |