**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| UNITED STATES, *et al.*,<br><br>                              *Plaintiffs*,<br><br>        vs.<br><br>GOOGLE LLC,<br><br>                              *Defendant*. | No: 1:23-cv-00108-LMB-JFA |

**GOOGLE LLC'S MEMORANDUM IN RESPONSE TO PLAINTIFFS'**
**MOTION FOR INTERIM MODIFICATIONS TO THE DISCOVERY PLAN**

Plaintiffs' Motion concerns an unfortunately-timed but honest discovery mistake that can be and is in the process of being remedied. Google will expediently produce all responsive, non-privileged documents inadvertently not yet reviewed, and recognizes that Plaintiffs will need some accommodations. Google and Plaintiffs have been in near-daily communication about this issue since Google affirmatively brought it to Plaintiffs' attention on August 28. Google agrees, with some modifications, to much of the relief set forth in Plaintiffs' Motion. In brief, Google agrees that the fact discovery period should be extended to allow for the production of these additional documents and that Plaintiffs be allowed to withdraw and re-notice five party depositions of individuals of their choosing; to re-open, upon a showing of cause and for this specific purpose, the four party depositions already taken; and to issue additional interrogatories and requests for admission, subject to the Federal Rules of Civil Procedure.

## BACKGROUND

Starting in 2019, the Department of Justice Antitrust Division ("DOJ") conducted a three-and-a-half year investigation in which Google produced nearly three million documents and over 30 Google witnesses[1] for deposition.  The DOJ also developed a substantial investigative file amounting to approximately five million documents obtained from third parties.

At the same time, Google was responding to parallel requests for information from a coalition of State Attorneys General, led by the Texas Office of the Attorney General ("Texas OAG").  Those investigations—in which governmental bodies have tremendous leverage to demand discovery—led to iterative document collections, as Google responded to requests to collect documents from an increasing number of custodians over an expanding date range.  Multiple databases, called "ingestion sites," were required to house these collections. *See* Ex. A ¶¶ 4-5.

In December 2020, the Texas OAG filed suit (the "Texas Case").  The Texas Case was transferred, along with multiple private ad tech antitrust cases, into a multidistrict litigation ("MDL") in the Southern District of New York and assigned to the Honorable P. Kevin Castel for coordinated or consolidated pretrial proceedings.  Judge Castel ordered that fact discovery would remain open for 18 months and noted the "substantial document production" that Google had already made to the DOJ and provided to plaintiffs in the MDL.[2]

---

[1] Specifically, during the investigation, the DOJ deposed more than 30 Ad Tech Custodians.  This number does not include additional depositions the DOJ took of non-Ad Tech Custodians.  Except where otherwise defined in this memorandum, Google incorporates the terms defined in the accompanying Declaration in Support of Google's Memorandum in Response to Plaintiffs' Motion for Interim Modifications to the Discovery Plan (attached hereto as Exhibit A).

[2] Pre-Trial Order No. 5 Scheduling Order at 2, *In re Google Dig. Advert. Antitrust Litig.*, No. 21-md-3010-PKC (S.D.N.Y. Nov. 21, 2022), ECF No. 394.

More than two years into the Texas Case, Plaintiffs filed a substantially identical suit in this Court.  ECF No. 1.  After this Court denied Google's motion to transfer for coordination with the MDL, ECF Nos. 60, 61, the parties filed a joint motion for entry of a discovery schedule.  ECF No. 63.  "In light of the complexity of this case," Plaintiffs and Google jointly requested approximately seven and a half months for fact discovery (to be completed by November 11, 2023) and a final pre-trial conference on July 18, 2024.  ECF No. 63 at 1-2.  The Court denied that proposal and granted the parties approximately five and a half months to conduct fact discovery (to be completed by September 8, 2023).  ECF No. 69 at 1.

In setting that schedule, the Court instructed the parties to "focus with laser efficiency" on the core issues in the case.  ECF No. 59 at 26:21-27:4.  Plaintiffs acknowledged that they had received the "benefit from the discovery that was taken" in the pre-suit investigation and that they would "proceed expeditiously to fill in the gaps that remain."  ECF No. 70 at 5:18-21.

Plaintiffs then demanded the addition of 53 custodians, 29 new search terms, 15 extended date range custodians, and production of everything produced in the MDL (which adds another 100 search strings).  Along with the "refresh" collection, these additional custodians and new search terms led to a review population of nearly six million documents.  Ex. A ¶ 11.  Those documents yielded a production of more than one million documents by September 8, on top of the nearly three million Google documents produced during the investigation.  Google has also made available for inspection nearly 80 gigabytes of source code and over two million change logs pertaining to that code.  And Google has produced over 200 terabytes of data, much of which has necessitated the construction of bespoke pipelines created by Google engineers to provide to Plaintiffs data that is not maintained in the ordinary course.

In mid-August 2023, Google discovered that the ingestion sites over which the Litigation Search Terms had been run did not contain all documents for an upcoming deponent—the remainder was stored in other ingestion sites over which the Litigation Search Terms were not run.  Google immediately began scoping the issue, which is a lengthy process that still is not complete due to the volume of documents involved and the substantial processing time required to prepare documents for review and deduplicate them against documents already included in the review platform.  Ex. A ¶¶ 12-16.

On August 28, when it became clear that Google would not have a complete sense of the scope of the issue in the immediate future, Google notified Plaintiffs of a document production issue that could impact document productions for deponents.  Ex. A ¶ 17.  As Google continued to scope the problem, it became clear that Google would have a substantial number of additional documents to produce and that the issue could impact the fact discovery deadline.  Ex. A ¶ 19.  Google informed Plaintiffs of this on the morning of September 1, and informed the Court on the same day.[3]  Ex. A ¶ 19.

Google has been diligently working to address the issue from the date on which it was discovered.  In addressing the issue, Google is ensuring that, for each of the 172 Ad Tech Custodians, the Litigation Search Terms have been run across documents for the entire Agreed Time Period.  Ex. A ¶ 22.  Those searches yielded a raw total of nearly 16 million documents, but of the nearly 9.4 million that have been fully processed and de-duplicated so far, roughly 6.3 million are duplicates.  Ex. A ¶¶ 22-23.  Google is working as quickly as possible to identify the final, de-duplicated review population.

---

[3] Plaintiffs assert that Google's disclosure came "the day before a witness was deposed," Mot. at 3, but that witness' custodial documents are not affected by the ingestion site issue.

## GOOGLE'S PROPOSAL FOR REMEDIES AND MODIFICATIONS TO THE DISCOVERY SCHEDULE

To address this issue, Google offers the following proposal, which incorporates many of the proposed remedies set forth in Plaintiffs' Motion, with some modifications.  Google opposes Plaintiffs' proposed remedies only to the extent that they are disproportionate to the needs of the case or punitive in nature.

### A.     Google Has Provided a Declaration Addressing the Ingestion Site Issue

Contemporaneous with this Response, Google files a sworn declaration addressing the ingestion site issue.  *See* Ex. A.  In summary: (1) the ingestion site issue was an inadvertent mistake, (2) the ingestion site issue is specific to this case (and distinct from an issue since remedied in *United States v. Google*, No. 1:20-cv-3010 (D.D.C.), and (3) Google first learned about the ingestion site issue in mid-August and—once the impact of the issue came into focus—promptly brought it to the attention of Plaintiffs in this case, Plaintiffs in the MDL, and the Court and is taking steps to remedy it.

### B.     Google Will Expeditiously Produce Documents

Google consents to Plaintiffs' request for expeditious production of the additional responsive, non-privileged documents.  As Google has explained to Plaintiffs during a series of near-daily meet and confers, it has retained an additional vendor and substantially increased its review team (now approximately 700 reviewers) in order to expedite review and production. Based on those good faith estimates, deduplication rates to date, and the currently available information, Ex. A ¶ 23, Google proposes to produce any additional non-privileged responsive documents on a rolling basis with at least weekly productions, with production to be complete by November 8, 2023.

### C.        Changes to the Discovery Schedule

Google proposes that the fact discovery period should be extended to allow for the production of these additional documents and for Plaintiffs to complete their depositions and discovery requests during that time frame, as if all had taken place before September 8.  This is a simple solution that allows for nearly all of the relief Plaintiffs request individually, while avoiding nested exceptions and caveats.

#### 1.        *Coordination Period*

Google agrees with Plaintiffs that the period of "Coordinated Discovery" under the governing Discovery Coordination Order issued by this Court should be extended.  Google proposes to extend the period of Coordinated Discovery concurrent with any extension of the fact discovery period.  *See* Coordination Order, ECF No. 251, ¶¶ 1(c), (k) (setting "the conclusion of fact discovery" as the end of the "Coordinated Discovery Period").  Following this approach, discovery materials produced before any new fact discovery cutoff ordered by the Court will automatically be treated as if produced by the close of the current fact discovery cut-off of September 8.

#### 2.        *Number of Depositions*

Google proposes that the fact discovery period should be extended to allow Plaintiffs to complete their ten party depositions.  Plaintiffs have taken four depositions of current and former Google employees so far.  Of the six that remain, one is a 30(b)(6) deposition that Google understands Plaintiffs intend to pursue.  Plaintiffs now request that they be allowed to: (1) withdraw, at Plaintiffs' discretion, deposition notices to the five remaining Google deponents, and issue new deposition notices to up to five other Google deponents, based on the information contained in the newly-produced documents, (2) reopen depositions of the four Google witnesses

whose depositions already have been taken if additional documents concerning those witnesses are produced, and (3) notice four additional Google depositions.  Mot. at 8.

Google agrees that Plaintiffs may withdraw their deposition notices to the remaining five Google deponents.  And Google does not oppose reopening up to four depositions for good cause.  Google submits that the time permitted for any additional deposition testimony should be limited to and commensurate with any good cause shown.[4]

But it is an overreach for Plaintiffs to demand *both* the reopening of four depositions *and* four new depositions.  Relief must be tethered to the discovery issue before the court—here, that is the unexpected production of additional documents following the substantial completion deadline.  Had these documents been produced on the originally contemplated timeline, Plaintiffs would not have had cause to seek additional depositions.

Plaintiffs have asserted that they selected their deponents "based on incomplete information," Mot. at 8, but the relief proposed by Google addresses this issue, by allowing Plaintiffs to choose up to 5 new deponents and to reopen completed depositions for good cause.  Moreover, Plaintiffs gloss over the fact that Plaintiffs investigated Google for over three years before filing this lawsuit.[5]  Plaintiffs obtained nearly three million documents from Google before filing suit—from the very corpus of documents Google is currently exporting—and

---

[4]   Google should also be permitted to complete those depositions that it has held open as a result of Plaintiffs' failure to produce documents in advance of a deposition should there be cause to do so based on Google's further review of the documents.  The night before the deposition of an employee of the Department of Veterans Affairs, Plaintiffs informed Google that thousands of the deponent's custodial documents had not been produced.  Google proceeded with the deposition but reserved its rights to reopen.

[5] Similar to Plaintiffs' contention that they may have made different strategic decisions in their selection of deponents had they had access to the additional documents, Google likewise would have attempted to negotiate more circumscribed terms if it had been aware of how many documents would be implicated by running the agreed search terms across all of the ingestion sites.  And given the numbers involved, Google may have sought a protective order from the Court had Plaintiffs pressed for application of those terms, despite the increased volume.

Google has since produced well over a million more documents.  Of the four Google depositions Plaintiffs have taken so far, 18 of the 23 exhibits were previously produced at the investigation stage, suggesting, as Plaintiffs told the Court at the outset of this case, that they merely needed to "fill in the gaps that remain."  ECF No. 70 at 5:18-21.

In support of their claims of prejudice, Plaintiffs advance production metrics that appear to be overstated.  Specifically, they assert that Google in this litigation produced only 11,000 documents for one deponent, but they ignore the 66,000 documents for that same witness that Google produced in pre-suit discovery (and which formed the basis of all of the exhibits from that witness's deposition).  In reality, prior to the deposition, Plaintiffs had access to more than 77,000 of the witness' custodial files.[6]

### 3.    Deposition Timing and Logistics

Plaintiffs' conflicting proposals regarding deposition timing and logistics are unworkable.[7]  Google cannot guarantee that, in every case, it will be possible to seat a deponent within ten business days given Google does not know whom Plaintiffs intend to depose, what commitments he or she may have, or whether each witness will be in a position to fly across the country to this District, as Plaintiffs request.  That is especially so for former employees over whom Google has no control.

Moreover, the Discovery Coordination Order entered in both this litigation and the MDL

---

[6] For context, it has been the practice of both sides in this case to take depositions without each and every document with the deponent's name on it, or even all of their custodial files.

[7] Plaintiffs request that Google be required to: (1) seat deponents for depositions within ten business days of any new deposition notice, (2) present their witnesses for deposition in or near the Eastern District of Virginia or other location convenient to Plaintiffs, and (3) provide written verification for each noticed deponent that the deponent's documents have been loaded and reviewed, and responsive, non-privileged documents concerning those witnesses be produced within five business days of the deponent's deposition.  Mot. at 9.

requires that 21 days' notice be given,[8] and Plaintiffs have requested, and Google agrees, that these depositions be treated as though they are taken inside the Discovery Coordination Period. If the Court Orders that deponents must be seated on a shorter timetable, MDL Plaintiffs would need to be prepared to cross-notice and participate on that constrained timetable.  And in the event that Plaintiffs choose to notice a deposition before document production is complete, it will not be possible for Google to complete and verify production of that deponent's documents five days before a deposition noticed for only ten business days in the future.

Google proposes to address these conflicting requests by agreeing to use best efforts to produce deposition witnesses expeditiously in the Eastern District of Virginia if possible or remotely if not and Plaintiffs cannot travel.

Google also agrees to accommodate Plaintiffs' request that Google provide a written verification within five business days of a deposition.  But it is important to clarify what it means to produce "the deponent's documents," as Plaintiffs request.  Mot. at 9.  Until now, the parties have been using best efforts to produce a deponent's entire "custodial file" in advance of a deposition.  *See* ECF No. 142 Appendix I, ¶ D (defining the "All Custodian" and "Custodian" metadata fields).  Consistent with standard ediscovery practice and how Google understands Plaintiffs have been producing their own documents, Google has been prioritizing deponent's productions based on the "All Custodian" and "Custodian" metadata fields and proposes to continue that practice.

### 4.    *Additional Party and Third-Party Discovery*

Plaintiffs request that (1) the Court grant Plaintiffs leave to issue additional interrogatory requests and requests for admission to Google based on the newly produced documents, and (2)

---

[8] ECF No. 251 ¶ 3(b); Order Regarding Coordination of Discovery ¶ 3(b), *In re Google Dig. Advert. Antitrust Litig.*, No. 21-md-3010-PKC (S.D.N.Y. Nov. 21, 2022), ECF No. 564.

Plaintiffs be allowed to seek, for good cause shown, additional third-party depositions.[9]  Google addresses those points below.

Google does not oppose Plaintiffs' request to issue interrogatory requests and requests for admission to the extent that: (1) Plaintiffs do not exceed their limit of 25 interrogatories, and (2) the new requests target truly new topics not previously addressed in investigation or litigation productions or in Plaintiffs' previously served interrogatories and requests for admission.

To the extent Plaintiffs require additional time to complete third-party discovery not already addressed by the Court,[10] Google agrees that any extension of the fact discovery period would apply similarly to third-party discovery.  Google does not agree that Plaintiffs are entitled to *additional* third-party discovery beyond what is contemplated by the existing Rule 16(B) Scheduling Order.  ECF No. 94 ¶ 7 (referencing and incorporating Paragraph 6(G)(ii) of the Joint Discovery Plan, ECF No. 87).  Plaintiffs have not articulated why the production of additional documents from Google would require them to seek discovery from additional third parties.  Plaintiffs collected approximately 5 million documents from third parties prior to filing this lawsuit and issued another 152 third-party document subpoenas and 20 third-party deposition subpoenas in this litigation.  To the extent that Plaintiffs seek additional third-party discovery, they should be required to show good cause.  And to the extent that the Court permits that additional discovery, Google should be entitled to examine those third parties for one hour as

---

[9] Plaintiffs also seek an Order that Google be prohibited from seeking further discovery.  Mot. at 9.  Google has no present intention of seeking further discovery at this time but reserves its rights under the Federal Rule of Civil Procedure to do so.

[10] The Court has granted the parties' requests to allow certain third-party discovery to proceed after September 8, and to be treated as if it occurred prior to the close of fact discovery.  *See* ECF Nos. 338, 340, 345, 381 (motions to extend deadlines regarding specified third-party depositions and data production); ECF No. 363, 383 (orders granting).  On September 8, 2023, the parties filed a joint motion requesting an extension for certain third-party document discovery.  ECF No. 414.  The Court has not yet ruled on that motion.

provided in the Joint Discovery Plan.  ECF No. 87 ¶ 6.H; ECF No. 94 ¶ 3.  Plaintiffs already have had over five months to build their case (in addition to their three-year investigation), and it would be prejudicial and disproportional to the instant discovery issue and needs of the case to permit additional one-sided discovery of third parties absent a showing of good cause.

### E.   Google's Proposed Schedule

In light of the above, Google proposes the following revised schedule:

| Date | Event |
|---|---|
| November 8, 2023 | Completion of document production |
| December 8, 2023 | Fact discovery concludes |
| January 12, 2024 | Plaintiffs' initial expert reports due |
| January 18, 2024 | Interim status conference before Judge Brinkema |
| February 16, 2024 | Google's expert reports due |
| March 8, 2024 | Plaintiffs' rebuttal reports due |
| April 5, 2024 | Expert discovery concludes |
| April 11, 2024 | Pretrial conference before Judge Brinkema |

The proposed date for completion of document production (November 8, 2023) reflects Google's current best estimate of when it will be able complete review and production of the documents that are in the process of being loaded into the review platform.  Meeting that deadline will require Google to redouble the already substantial efforts made to produce responsive materials in this case, including by expanding the review team to more than 700 attorneys.  And Google has no intention of waiting until the deadline to produce documents to Plaintiffs.  As it has already been doing, Google will continue to make rolling productions of documents, and it will also attempt to accommodate Plaintiffs' reasonable requests to prioritize review of certain custodians' documents (if possible, without imperiling the completion deadline).

The proposed date for the close of fact discovery (December 8, 2023) would afford Plaintiffs a little over four weeks after the last of Google's anticipated supplemental productions to complete depositions.  If Plaintiffs require less time with the documents, then the schedule could be accelerated.

Google's proposed revised schedule otherwise keeps the same spacing between dates that is in the current schedule.  The current schedule already reflects a compressed timeline in comparison to the parties' original joint proposal, ECF No. 87, and it would prejudice the parties to compress the deadlines even further.  That is especially so in light of the importance of experts in antitrust cases.

### F.    Reservation of Rights

Finally, Plaintiffs have asked the Court to preserve their right to seek further appropriate discovery plan modifications, sanctions, or other relief.  Mot. at 7.  No sanctions should be imposed, and Google reserves its rights to oppose any future request that Plaintiffs may make.[11]

---

[11] For the avoidance of doubt, to the extent that Plaintiffs' Motion seeks sanctions (as opposed to a modification of the discovery schedule), on the present record Google respectfully submits that Plaintiffs have no basis for sanctions under the governing test.  *See Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-06 (4th Cir. 1977).

Dated: September 13, 2023          Respectfully submitted,

*/s/ Craig Reilly*
CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: Craig.reilly@ccreillylaw.com

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
Andrew J. Ewalt (*pro hac vice*)
Justina Sessions (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Sara Salem (*pro hac vice*)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

Karen L. Dunn (*admitted pro hac vice*)
Jeannie Rhee (*admitted pro hac vice*)
William Isaacson (*admitted pro hac vice*)
Joseph Bial (*admitted pro hac vice*)
Byron Becker (VSB # 93384)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
jrhee@paulweiss.com
wisaacson@paulweiss.com
jbial@paulweiss.com
bpbecker@paulweiss.com

Meredith Dearborn (*admitted pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor

San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

Daniel S. Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com


*Counsel for Google LLC*