UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GOOGLE LLC, <br><br> *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**GOOGLE LLC'S REPLY IN SUPPORT OF ITS**
**MOTION TO COMPEL RESPONSES TO VARIOUS DISCOVERY REQUESTS**

Plaintiff's supplemental responses to Google's Interrogatories 18, 19, and 20 moot Google's motion as to those requests, but there remain disputes for the Court to resolve. However, Plaintiff's arguments in opposition to Google's motion do not render moot Google's other requests for relief, and Google asks that the Court grant the remainder of Google's motion. In that regard, as explained below, Google satisfied its meet-and-confer obligations prior to bringing this motion.

First, Plaintiff has the duty to supplement discovery responses as fact discovery has progressed. Five months of fact discovery have now passed, and Google still lacks basic information about Plaintiff's claims for damages, as sought by Interrogatories 4, 9, 14, and 17, and RFP 12. Simply because Plaintiff's expert will later provide a report does not excuse its failure to provide damages disclosures that comply with Rule 26(a)(1)(A)(iii), and to answer interrogatories in a way that complies with Rule 33(d). Google is entitled to information responsive to our discovery requests now. Nor can, or does, Plaintiff claim not to have such information. For example, Plaintiff told the Court and Google that it needed "invoice data" from Google (which it

1

sought to compel on August 25) because that data "would *validate and confirm purchase information* collected from dozens of different sources, including FAAs and their advertising agency contractors, in a multitude of different forms, including scanned documents." Dkt. 343 at 1.

Second, the information Google seeks goes beyond whether Plaintiff can satisfy the *Illinois Brick* rule or any exception to it. As to that discovery, the responses to Google's twenty-one relevant discovery requests remain inadequate, and none of Plaintiff's arguments to the contrary resolve these inadequacies (RFAs Nos. 1–12, Interrogatories Nos. 14, 17, 22–29).

Finally, Plaintiff ignores that the Court ordered Plaintiff to produce a 30(b)(6) designee on the same topics for which Google now moves to compel additional responses (Interrogatory No. 21 and RFP No. 44).

## I. Google Remains Entitled to Discovery Responses Regarding the Factual Basis for Plaintiff's Alleged Damages

### A. Plaintiff Must Supplement Its Rule 26(a)(1)(A)(iii) Damages Disclosures.

Plaintiff ignores the patent deficiency of its Rule 26(a)(1)(A)(iii) disclosures, which have remained the same throughout three supplemental disclosures, and state, "Based on preliminary information available at this time, and subject to revision through discovery, the United States estimates that the Federal Agency Advertisers have spent over $300 million on open web display advertising during the relevant time period." Ex. 1.

Plaintiff provides no authority to support its contention that its initial disclosures comply with Rule 26(a)(1)(A)(iii). Plaintiff instead defers to its forthcoming expert analysis, an argument that has been repeatedly rejected. *E.g.*, *Albert S. Smith Co., Inc.* v. *Motes*, 2019 WL 10959830, at *1 (D. Md. May 9, 2019); *Valencell, Inc.* v. *Apple Inc.*, 2017 U.S. Dist. LEXIS 58034, at *3 (E.D.N.C. Apr. 17, 2017) ("[I]t is a proper inquiry into [plaintiff's] current position regarding its damages claim, which is, of course, subject to possible supplementation as discovery progresses.

2

The fact that the information sought may entail contentions and opinions, including expert opinions, does not render it impermissible."). Courts reject this argument because it is inconsistent with the purpose of Rule 26 – to put a defendant on notice of the plaintiff's damages claim so that it may adequately prepare a defense, including by using the disclosures as a baseline for crafting discovery requests and making strategic discovery decisions. *See Silicon Knights, Inc.* v. *Epic Games, Inc.*, 2012 WL 1596722, at \*7 (E.D.N.C. May 7, 2012). That is why the rule is self-executing, and requires a response "without awaiting a discovery request."

Plaintiff states in its Opposition that its damages experts are already "working diligently to prepare their reports." Opp. 3. Other statements make clear that Plaintiff has done substantial work, including with its experts, to develop its damages claim. Plaintiff told Google, in the context of their request for data in response to RFP 76, that it has "reviewed PDF invoices to the extent those were available," and asked for Google's "invoice data to ensure we have a complete understanding and are able to fill any gaps." Aug. 24, 2023 email from K. Garcia (DOJ) to D. Pearl et al. (Axinn). Plaintiff said more in its now-withdrawn motion to compel this data, where it told the Court this data would "validate and confirm purchase information collected from dozens of different sources, including FAAs and their advertising agency contractors, in a multitude of different forms, including scanned documents." Dkt. 343 at 1. Whatever information Plaintiff and its experts are analyzing, Google is entitled to understand the basic contours of that information with a disclosure that complies with Rule 26 at this point in the case. *See* Fed. R. Civ. P. 26(e)(1)(A) (requiring supplementation once a party "learns that in some material respect the disclosure or response is incomplete or incorrect"). Nor must Google be forced to wait for Plaintiff's expert to provide a "final computation of damages." Opp. 3.

Five months of fact discovery have passed, and Google still does not know basic

3

information about Plaintiff's damages claim, including what the core theory of its claim is: is it based on FAAs' purchases of open web display advertising, as suggested in the disclosures? If so, purchases from whom? Is it Google? Or is it based on purchases from competitors of Google, who also use Google's ad tech services?[1] Or is Plaintiff's theory of damages based on allegedly supracompetitive "take rates," as they now suggest in its opposition? Opp. 11. If so, which take rates, imposed by whom, imposed on whom, and at which point in the ad tech stack or advertising process?

Nor has Plaintiff specified the volume of FAAs' "open web display advertising" purchases using Google ad tech services (or other ad tech services that in turn use Google ad tech services); the lump sum amount of Plaintiff's claimed damages (or the amount on a per-FAA basis); the particular Google ad tech products, services, or purchases for each FAA underlying such claims; or the allegedly "supracompetitive fees" or "manipulated advertising prices" that caused Plaintiff's alleged "monetary damages." Am. Compl. (Dkt. 120) ¶ 278; *cf. Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (initial disclosures inadequate in failing to list "lost profits" as a category of damages, where that was the party's theory of damages). These are just some of the questions Google has about Plaintiff's theory of damages, and which a proper Rule 26(a)(1)(A)(iii) disclosure at this point in the case should reveal. Plaintiff must be ordered to supplement.

### B. Google Remains Entitled to Documents or Data Within Plaintiff's Possession, Custody, and Control Responsive to RFP 12.

As to the Army data Google seeks, Plaintiff acknowledges it has a contractual right to such

---

[1] Plaintiff revealed on September 8 that it may be seeking damages based on its ad agencies' use of third-party ad tech tools and providers, who themselves interact with Google ad tech tools such as AdX to facilitate purchases of display advertising. Opp. 14 (referring Google to the United States' responses to Interrogatories 22–29, which "provide information about the types of purchases underlying the United States' claims for damages" which in turn reference the FAA's alleged use of AdX through third-party ad tech tools).

4

data that is responsive to RFP 12, and that the Army "owns" that data. Opp. 5. Instead of providing it, Plaintiff tries to shift again the burden to Google. But it is Plaintiff's obligation to substantiate its damages claims, and also its obligation to produce information in its possession, custody, and control responsive to RFP 12. As Plaintiff notes, Google contends this evidence is important not just to damages, but also to defining the relevant antitrust markets. Opp. 4–5 (citing Pl.'s Ex. 1).

Plaintiff cannot shift the burden to Google by pointing to Google's provision of data in response to RFP 76, and their Opposition makes clear why such an effort must be rejected for three reasons. First, Plaintiff never disclosed multiple facts about its efforts to obtain data from the ad agency that Google now is learning for the first time: Plaintiff never explained its efforts to obtain a contract modification, any meeting with the ad agency, or the ad agency's provision of "sample data" (which at a minimum must be produced, and has not). Opp. 6. Plaintiff also never told Google that the ad agency made a "proposal" for a production timeline, and it was not Plaintiff's unilateral right to make a determination that too much time and expense would be required to produce data that it "owns" in response to Google's RFP 12. *See, e.g.*, *Automated Merch. Systems Inc.* v. *Crane Co.*, 279 F.R.D. 366, 375 (N.D.W. Va. 2011) (finding that "[p]laintiff has a duty to make a good faith effort to obtain responsive documents from its manufacturers, and to produce any documents that are discovered as a result of that effort"); *Younes* v. *7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015) ("The obligation on parties and counsel to come forward with relevant documents requested during discovery is absolute.")

Second, just one month before the close of fact discovery, Plaintiff served RFP 76 seeking data that it had months to determine may be helpful in "computing the amounts that FAAs were charged," as Plaintiff explains in its since-withdrawn motion to compel. Dkt. 343 at 8–9. But Google has made clear from the beginning of discovery that whatever data it has relating to FAAs'

purchases of "open web display advertising" (or of ad tech services, or something else; Google does not know based on Plaintiff's discovery responses, *see* Appendix at 1–3, 7–11), such data is imperfect and dependent on first identifying the accounts associated with any FAAs (itself an imperfect process), and information input by advertisers that is not "verified, curated, or cleaned by Google." Google's Apr. 26, 2023 R&Os to Interrogatory 2, at 14. And Plaintiff is wrong to suggest that Google's data is necessarily the "best data." Opp. 6. As Google has explained, identifying data associated with the FAAs, especially when they use intermediaries like ad agencies, requires a "manual, imperfect process that [would] likely be both over- and under-inclusive." Aug. 29, 2023 Email from D. Pearl (Axinn) to K. Garcia (DOJ). The same is true of the Campaign Manager product Plaintiff refers to in its opposition: Google told Plaintiff that information in Campaign Manager "is at the discretion of advertisers, and the majority of CM360 customers do not provide such data" and that the information "may not reflect actual media cost." Google's Sept. 6, 2023 R&Os to RFP 76, at 15 n.10.

Third, and it bears repeating: it is not Google's burden to identify the transactions underlying Plaintiff's alleged damages. *See Design Strategy*, 469 F.3d at 294–95 (plaintiff cannot shift to the defendant the burden of attempting to determine the amount of plaintiff's alleged damages). Nor is it possible for Google to comb the data it has produced in response to RFP 60 and will produce in response to RFP 76 to isolate whatever data may underlie Plaintiff's alleged damages or use the data—as Plaintiff can—to "validate and confirm purchase information collected from dozens of different sources, including FAAs and their advertising agency contractors, in a multitude of different forms, including scanned documents," Dkt. 343 at 1, because Plaintiff has not sufficiently identified those documents for Google as it must do.

As to the Wavemaker data Google seeks, Google understands that the data may have been

pulled because of an upstream request of counsel, but such request does not render privileged the underlying factual information that is discoverable based on the cases and the Court's order on Google's privilege motion. Sept. 1, 2023 Hr'g Tr. (Dkt. 398) 80:5–10;[2] *Equal Rts. Ctr.* v. *Lion Gables Residential Tr.*, 2010 WL 2483613, at *9 (D. Md. June 15, 2010) (work product is not a "basis for withholding the underlying facts"). Google thus asks this Court to order Plaintiff to produce the Wavemaker data.

### C.  Plaintiff Must Supplement Responses to Interrogatories 4, 9, 14 and 17.

With respect to Interrogatories 4 and 17, Plaintiff invokes Rule 33(d) to explain its designation of hundreds, sometimes thousands of FAA invoices in response to Google's questions. Rule 33(d) may be invoked only where Plaintiff can show that it "would be no more burdensome for [Google] to go through voluminous documents to to pull out answers than for plaintiff." *Sec. & Exch. Comm'n* v. *Elfindepan*, 206 F.R.D. 574, 577 (M.D.N.C. 2002). Plaintiff fails to explain how it would "be no more burdensome" for Google to sift through these invoices, most of which are irrelevant to damages, and involve advertising purchases in places like newspapers, billboards, local TV stations, and determine which transactions Plaintiff is seeking damages for than it would be for Plaintiff. Plaintiff has already done this, and told Google it has done this.[3] *Stillwagon* v. *Innsbrook Golf & Marina, LLC*, 2014 WL 1652562, at *6 (E.D.N.C. Apr. 23, 2014) (finding

---

[2] The Court: "And the information itself is producible, that is, if you ask in another form: I want the same kind of information as asked by the lawyer. You're entitled to get it, but you're just not entitled to get it as a result of a lawyer asking." Further, Plaintiff provided us with a final, redacted transcript of the deposition that did not redact information about this data. Plaintiff "corrected" their redaction error on September 5, after the Court highlighted their error, and 3 weeks after the deposition.

[3] In an August 24, 2023 email correspondence to Google regarding Plaintiff's RFP 76, Plaintiff provided: "Based on our review of RFP 60 data, we understand that additional data is necessary to allow us to determine actual amounts billed by Google, after discounts. We have reviewed PDF invoices to the extent those were available, but need invoice data to ensure we have a complete understanding and are able to fill any gaps."

7

plaintiff's "document dump" in response to defendant's interrogatory insufficient where Plaintiff had "superior familiarity with the documents at issue," including a "working knowledge of the requested information"); *United Oil Co., Inc.* v. *Parts Assocs., Inc.,* 227 F.R.D. 404, 419 (D. Md. 2005) (finding plaintiff's designation of documents pursuant to Rule 33(d) insufficient because the response "requir[ed] the exercise of particular knowledge and judgment on the part of the responding party, and defendant could not derive the answer to its specific questions "even after review of the referenced documents"). Plaintiff does not identify precise page numbers in the invoices either, as it should have in order to comply with Rule 33(d). *E.g., Certain Underwriters at Lloyd's, London Subscribing to Pol'y No. BO823PP1308460* v. *AdvanFort Co.*, 2019 WL 3366103, at *7 (E.D. Va. July 25, 2019) (requiring a party to identify a "specific document and indicat[e] the page and paragraphs that are responsive" rather than a large group of documents" under Rule 33(d)); *Haughton* v. *District of Columbia*, 315 F.R.D. 424 (D.D.C. 2014) (requiring party to provide narrow page ranges where responsive information could be found and finding party's designation of over 1,000 pages of documents insufficient). Similarly, Plaintiff complains it would have to undergo the "tedious scraping of documents," Opp. 13, to collect this information themselves from their own documents, but that is precisely Plaintiff's burden to substantiate its damages case. *See Design Strategy*, 469 F.3d at 294–95 (plaintiff cannot shift to the defendant the burden of attempting to determine the amount of plaintiff's alleged damages).

Plaintiff argues again here that Google's data absolves them of their obligation to answer these interrogatories. If Plaintiff has identified information underlying its claims for damages in Google's massive datasets produced to date and which is responsive to these interrogatories, Plaintiff should identify that data with particularity to Google. In any event, Plaintiff has indicated that has already undergone this "tedious" exercise, so it should not be a burden to provide the

information to Google.

The cases Plaintiff cites are inapposite. In *In re Urethane*, 2006 WL 1895456 (D. Kan. July 7, 2006), the court held that the plaintiffs had properly utilized Rule 33(d), even though in doing so it identified a voluminous amount of documents, because all of the documents identified were necessary to answer the defendant's interrogatories. *Id.* at *4. Here, Plaintiff has identified hundreds, if not thousands of extraneous pages of material for Google to sift through, the vast majority of which does not reveal the basis for Plaintiff's damages claims against Google. *Umbach v. Carrington Inv. Partners (US), LP*, 2009 WL 3287537, at *2 (D. Conn. Oct. 9, 2009) is inapposite because the request was overly broad. Not so here where Google is clearly seeking crucial information regarding the factual basis of Plaintiff's damages claim. *Daniels v. Hyster-Yale Grp., Inc.*, 2020 WL 2334088, at *10 (E.D.N.C. May 11, 2020) (interrogatory seeking evidentiary support for party's damages claim "falls comfortably within the scope of items that are 'relevant to any party's claim'").

With respect to Interrogatory No. 14, Plaintiff ignores that Google asked Plaintiff five times to supplement its response to this request; Plaintiff ignored these requests. Now, Plaintiff claims a response to this interrogatory is "irrelevant" because Google is not a publisher of open web display advertising. Opp. 14. Plaintiff cites no case for the proposition that its own change in litigation strategy absolves it of its obligations to answer the question posed.

It sounds like Plaintiff's current, known information is that no FAA purchased "open web display advertising" directly from Google during the Damages Period. If that is the case, then Plaintiff must state that in a verified supplemental response. *Certain Underwriters,* 2019 WL 3366103, at *7 ("The Court's disenchantment with Defendant's interrogatory responses does not represent an outlier view of a party's duty under Rule 33. Courts have previously insisted that

9

when parties do not know an answer to an interrogatory, they must explicitly state so.") (citing *Transcontinental Fertilizer Co.* v. *Samsung Co. Ltd.,* 108 F.R.D. 650, 652–53 (E.D. Pa. 1985) ("If a party cannot furnish discovery requests, it should state so under oath and state the reasons for its inability to do so together with the efforts used in attempting to obtain the information.").

Interrogatory No. 9 seeks the same information that Plaintiff is required to provide under Rule 26(a)(1)(A)(iii). Google is entitled to factual information pertaining to Plaintiff's damages *now*, even if Plaintiff will produce an expert report regarding the issue later, and even if Plaintiff is still continuing to assess its damages claims. *See* Mot. at 17; *supra*, at 3–4. Moreover, as explained below, Plaintiff's responses to Interrogatories 22–29, which Plaintiff contends "provide information about the types of purchases underlying the United States' claims for damages" are no substitute for a computation of damages, which only Plaintiff can provide.

### D.  Plaintiff's Responses to Google's RFAs Violate Rule 36.

Google asked the Court to order Plaintiff to supplement its responses to RFAs 1–3 because, rather than responding to the pertinent questions asked, Plaintiff rewrote the RFAs so it could answer the questions it would have preferred that Google ask. Mot. 20–21. Plaintiff now claims that its responses suffice because it "provided more detail regarding the facts." Opp. 11. But that is not the purpose of RFAs; that is the purpose of interrogatories (which Plaintiff also does not adequately answer). *Watkins* v. *Lincare, Inc.*, 2023 WL 5490181, at *3 (S.D.W. Va. Aug. 24, 2023) ("Although used during the discovery process, a request for admission is not a true discovery device . . . the purpose of requests for admission is to narrow the issues for trial, not uncover new information."). As explained in Google's Memorandum of Law in support of its Motion to Compel, Plaintiff's failure to answer the pertinent questions has only made the record more unclear and raised additional issues regarding the purchases of any product or service for which it seeks

damages. Mot. 20–22.

The remainder of Plaintiff's arguments in opposition simply rehash the objections that Google conferred about with Plaintiff for weeks through the meet and confer process. Plaintiff is still wrong that RFAs 1–3 call for a "legally conclusive statement." Opp. 8. Whether Plaintiff satisfies the direct-purchaser rule of *Illinois Brick* (or an exception to it) in order to establish antitrust standing is not called for by RFAs 1–3. Rather, RFA 1 asks Plaintiff to admit "the Federal Agency Advertisers did not purchase 'open web display advertising' directly from Google." Put differently, and inserting the OED definition of "directly" into the RFA given Plaintiff objected to that term as a legal one, that "the Federal Agency Advertisers did not purchase 'open web display advertising'" "without intervention of a medium or agent; immediately, by a direct process or mode" from Google. Plaintiff argues that using the English language meaning of "directly" in this request "does not convert a legal conclusion into a factual one." Opp. 10. But Googleis not seeking a legal conclusion. Google is unaware of any way to define the words in the language we all speak, and the language we all use to apply law to facts or facts to law, other than with a dictionary. And any complaints Plaintiff has about "vague use of 'open web display advertising,'" Opp. 10, is because Plaintiff created a term which is, clearly, not commonly understood or used among its own FAAs. *See also* Am. Compl. (Dkt. 120) ¶ 63 (some of Google's ad tech products "allow advertisers to buy [] *open web display advertising* on third-party websites" (emphasis added)).

The same is true for RFAs 2 and 3. Plaintiff's objections to the words "pay" and "purchase" make little sense; Plaintiff recognizes that advertisers "pay" for ads. Am. Compl. (Dkt. 120) ¶ 9 (alleging advertisers "pay more" due to Google's alleged conduct); ¶ 220. Plaintiff also alleges that its departments and agencies "purchase open web display advertising." Am. Compl. (Dkt.

11

120) ¶ 278. Plaintiff's gnarled answers to RFAs 1–3 do not answer the request as posed, which simply ask Plaintiff to admit that it does not "pay" Google directly for open web display advertising (RFA 2) and that instead Plaintiff "paid" their ad agencies (RFA 3). Their responses remain dependent upon multiple objections this Court should overrule.

As to RFAs 4–12, Plaintiff does not address any argument Google made showing why the Court should overrule their objections–which is ripe for the Court's decision. Further, Plaintiff responded to those RFAs "subject to [its] objections." Supp. Appendix at 1–3.[4] Such responses do not comply with Rule 36, which does not allow a party to "serve objections to all of the RFA and '[b]ased on these objections' deny the RFA as a whole." *LKQ Corp.* v. *Kia Motors Am.*, 2023 WL 2429010, at *3 (N.D. Ill. Mar. 9, 2023) (alterations in original). As a practical matter, Plaintiff's blanket denials of RFAs 4–12 "subject to its objections" leaves Google with no understanding of whether the response changes if such objections were overruled.

Google respectfully submits that the Court should overrule those objections now, *Barb* v. *Brown's Buick, Inc.*, 2010 WL 446638, at *1 (E.D. Va. Feb. 2, 2010), and order Plaintiff to amend its responses, which Google has provided for the Court's convenience.

### E. The Court Should Overrule Plaintiff's Objections to Interrogatories Nos. 22–29.

Plaintiff does not address Google's arguments that Plaintiff's objections to Interrogatories No. 22–29 should be overruled. As with RFAs 4–12, that is ripe for the Court's determination.

Instead, Plaintiff asserts that its "responses address the concerns raised in the meet-and-confer process, as well as the concerns raised in Google's motion." Opp. 15. This is not correct.

---

[4] Plaintiff objected to each of RFAs 4–12 with some version of the following: "The United States objects to this request on the grounds that it requires a legal analysis of Google's term 'directly.' The United States further objects to the phrase 'for the use of' because it is vague, ambiguous, and confusing so as not to be susceptible to a reasoned interpretation or response and would require the United States to speculate as to its meaning." Supp. Appendix at 1–3.

12

Plaintiff's responses do *not* address Google's concerns as to Plaintiff's improper objections, and instead raise *additional* concerns because the responses themselves are deficient for many of the same reasons Plaintiff's responses to prior interrogatories seeking the factual basis for Plaintiff's alleged damages and ability to recover those alleged damages under the federal antitrust laws are deficient. *See* Mot. at 16–18. Using Interrogatory No. 22 as an example: the interrogatory asks Plaintiff to, in sum, "identify all purchases of 'ad tech services' (as that term is used in Your Amended Answer to Google's First Request For Admission) that were purchased by Federal Agency Advertisers directly from Google," Plaintiff responds by: a) defining "ad tech services" by reference to its Amended Complaint and stating that FAAs "made payments to Google for those 'ad tech services'" through their ad agencies; b) pointing to its responses to interrogatories 4 and 17, which remain deficient; and c) stating "some of the information requested remains solely in Google's possession and is the subject of our Request for Production Nos. 60 and 76." (citing *Navient Sols., LLC* v. *L. Offs. of Jeffrey Lohman, P.C.*, 2020 WL 3606385 (E.D. Va. July 1, 2020)). Supp. Appendix at 4.

This response is deficient because it fails to answer the question. First, Google is well aware that it is Plaintiff's position that the FAAs paid Google for ad tech services—the entire reason Google propounded these interrogatories was to identify those purchases with particularity. Second, as explained above, Plaintiff's responses to Interrogatories 4 and 17 are themselves deficient and incomplete—by incorporating those responses here Plaintiff further expands those deficiencies. Third, referring Google to unidentified documents and information by unidentified "third-party demand-side platforms" provides no additional information to Google and is not a proper use of Rule 33(d), which requires Plaintiff to specify the records "in sufficient detail" that would enable Google to identify the responsive information as readily as Plaintiff could. *See Sec.*

& *Exch. Comm'n*, 206 F.R.D. at 577. Finally, Plaintiff's response is deficient insofar as it refers Google to Google's own data pursuant to Rule 33(d) when Plaintiff has failed to identify *which* data would show the basis for its alleged damages. *See Ruddy* v. *Bluestream Pro. Serv., LLC*, 2020 WL 13694227, at *4 (E.D. Va. July 16, 2020) (rejecting argument that "defendants should be able to calculate plaintiff's damages for her by reviewing their wage and salary documents and speculating as to what damages plaintiff will claim").

Plaintiff's responses to Interrogatories Nos. 23–29 shed no further light on the purchases underlying Plaintiff's alleged damages claims or its ability to recover for those alleged damages under federal antitrust law. As with the RFAs, Google respectfully requests that the Court to overrule those objections now, and order Plaintiff to provide supplemental responses, or in the alternative, allow the parties to further meet and confer on those responses and should a resolution not be reached, permit Google to move to compel supplemental responses.

### F. Google Satisfied its Meet and Confer Obligations Regarding Interrogatories 18, 19, and 20, And Withdraws Its Motion As to These Requests

Plaintiff served supplemental responses to these interrogatories yesterday. Based on our review of the supplemental responses, Google withdraws its motion as to Interrogatories Nos. 18–20.

Plaintiff contends Google did not satisfy its meet and confer obligations under Local Rule 37(E) for any discovery requests, which Google addresses here because Plaintiff pointed only to Interrogatories 18, 19 and 20, as well as Plaintiff's responses to discovery they had not yet served. (Plaintiff declined to serve those responses two days before they were due.) Ex. 3, 8.

Google sent a letter to DOJ on September 5, 2023 explaining that, based on the deficiencies outlined in its letter, Google would be moving to compel sufficient responses to Interrogatories Nos. 18–20 and the discovery requests at issue in this motion at the end of the week if Plaintiff did

14

not cure those deficiencies in the intervening days. Google confirmed its position the next day and offered to meet and confer if doing so would be helpful to Plaintiff. Plaintiff failed to respond to Google's invitation. This course of action satisfies Local Rule 37(E). *JTH Tax, Inc.* v. *Aime*, 2016 WL 9223926, at *6 (E.D. Va. Dec. 13, 2016). Google could not force Plaintiff to meet and confer, *Thomas* v. *Mars, Inc.*, 2017 WL 11457910, at *1 (D. Md. Sept. 8, 2017), just as it could not wait until after September 8 to bring its motion when Plaintiff declined to serve its responses two days early.

### G. Plaintiff Should Supplement Its Responses to Google's RFP 44 and Interrogatory No. 21.

Plaintiff should produce documents responsive to RFP 44 through August 25, 2023, and further supplement its response to Interrogatory 21; two points show why Plaintiff's arguments against this outcome fail.

First, there is no rule of reciprocity in discovery. Google acknowledges Plaintiff's agreement to produce its communications with "non-parties regarding subpoenas and any modifications thereto, as Google has done (and said it would do in responding to Plaintiff's RFP 4, served months ago. Opp. 18, Ex. 6 thereto. As to other responsive documents and communications responsive to these requests, Plaintiff argues, without support, that because it has agreed to produce the same set of communications that Google has produced, Google is not entitled to ask for the discovery it timely served, and for which it timely moved to compel. The case law and rules of discovery provide no support for its position. *E.g.*, *Zeng* v. *Marshall Univ.*, 2019 WL 164813, at *4 (S.D.W. Va. Jan. 10, 2019) (plaintiff "is not entitled to receive discovery on a tit-for-tat basis. Simply because [defendant's] counsel requests information about [Plaintiff] does not mean that Plaintiff is entitled to similar information . . . . Each party is responsible for developing its own case."); *Precision IBC, Inc.* v. *PCM Capital, LLC*, 2012 WL 750744, at *4 (S.D. Ala. Mar.

15

5, 2012) ("Defendants first contend that if [Plaintiff] is entitled to defendants' tax returns then defendants should be entitled to [Plaintiff's] tax returns. However, tit-for-tat is not a valid basis for discoverable evidence. Just because the court has found it reasonable for Plaintiff to discover the information does not mandate that there is a reasonable basis for defendants' discovery of similar information from plaintiff.").

Second, Plaintiff fails entirely to address Google's argument that these communications are necessary in light of the Court's ordering Plaintiff to produce a designee to testify to them. Dkt. 377. Plaintiff acknowledged, at the hearing on their motion for a protective order, that written discovery of this nature "are open to Google." Sept. 1, 2023 Hr'g Tr. (Dkt. 398) 29:6–26. Even after the Court's order requiring Plaintiff to produce this designee, counsel for Plaintiff asked whether Google would be open to further, additional written discovery on these very same topics contained in Google's 30(b)(6) notice. Plaintiff should be compelled to provide these written responses precisely because they will aid in Google's examination, in particular to avoid questions during the deposition Plaintiff complains would invade their privileges.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant this motion and order Plaintiff to supplement its Rule 26(a)(1)(A)(iii) disclosure; to produce sufficient responses to: Google's RFAs Nos. 1–3; Google's Interrogatories Nos. 4, 9, 14, 17, 21; and Google's RFPs 12 and 44; and to overrule Plaintiff's objections to Google's RFAs 4–12 and Interrogatories 22–29.

Dated: September 14, 2023       Respectfully submitted,

    /s/ Craig Reilly
CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: Craig.reilly@ccreillylaw.com

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
Andrew J. Ewalt (*pro hac vice*)
Justina Sessions (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Sara Salem (*pro hac vice*)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

Karen L. Dunn (*admitted pro hac vice*)
Jeannie Rhee (*admitted pro hac vice*)
William Isaacson (*admitted pro hac vice*)
Joseph Bial (*admitted pro hac vice*)
Byron Becker (VSB # 93384)
Martha L. Goodman (*admitted pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
jrhee@paulweiss.com
wisaacson@paulweiss.com
jbial@paulweiss.com
mgoodman@paulweiss.com
bpbecker@paulweiss.com

Meredith Dearborn (*admitted pro hac vice*)

17

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

Daniel S. Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*Counsel for Google LLC*