---

HIGHLY CONFIDENTIAL

Page 1

```
 1
 2          IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
 3                  ALEXANDRIA DIVISION
 4   _____
 5   UNITED STATES,     )1:23-cv-00108-LMB-JFA
     et al.,            )
 6                      )
         Plaintiffs,    )
 7                      )
     vs.                )
 8                      )
     GOOGLE LLC,        )
 9                      )
         Defendants.    )
10   _____)
11
12
              - HIGHLY CONFIDENTIAL -
13
              VIDEOTAPED DEPOSITION OF
14
                 CHRISTOPHER KARPENKO
15
                   August 10, 2023
16
                     9:35 a.m.
17
18
19
20
21
22   Reported by:  Bonnie L. Russo
     Job No. 6031969
```

---

HIGHLY CONFIDENTIAL

Page 2

```
 1   Videotaped Deposition of Christopher Karpenko
 2   held at:
 3
 4
 5
 6    Paul, Weiss, Rifkind, Wharton & Garrison, LLP
 7              2001 K Street, N.W.
 8               Washington, D.C.
 9
10
11
12
13
14
15
16
17
18    Pursuant to Notice, when were present on behalf
19    of the respective parties:
20
21
22
```

---

HIGHLY CONFIDENTIAL

Page 3

```
 1   APPEARANCES:
 2
 3   On behalf of the Plaintiffs:
 4      JAMES RYAN, ESQUIRE
 5      DAVID GROSSMAN, ESQUIRE
 6      ALVIN CHU, ESQUIRE
 7      UNITED STATES DEPARTMENT OF JUSTICE
 8      450 5th Street, N.W.
 9      Washington, D.C. 20530
10      james.a.ryan@usdoj.gov
11      david.grossman@usdoj.gov
12      alvin.chu@usdoj.gov
13
14   On behalf of the Defendant:
15      MARTHA L. GOODMAN, ESQUIRE
16      ANNELISE CORRIVEAU, ESQUIRE
17      PAUL, WEISS, RIFKIND, WHARTON &
18      GARRISON, LLP
19      2001 K Street, N.W.
20      Washington, D.C. 20006
21      mgoodman@paulweiss.com
22      acorriveau@paulweiss.com
```

---

HIGHLY CONFIDENTIAL

Page 4

```
 1   APPEARANCES (CONTINUED):
 2
 3
 4   Also Present:
 5   Glen Fortner, Videographer
 6   Michael Weaver, United States Postal Service
 7
 8
 9   Also Present Via Remotely:
10   Julia Wood, DOJ
11   Sean Carman, DOJ
12   Katherine Clemens, DOJ
13   Jeannie S. Rhee, Paul, Weiss, Rifkind, Wharton
14   & Garrison, LLP
15
16
17
18
19
20
21
22
```

HIGHLY CONFIDENTIAL

Page 5

```
 1                    I N D E X
 2      EXAMINATION OF CHRISTOPHER KARPENKO        PAGE
 3      BY MS. GOODMAN                              11
 4
 5
 6
                         EXHIBITS
 7
 8      Exhibit 33   E-Mail Chain dated 1-9-23      53
 9                   USPS-ADS-0000140586-588
10
11      Exhibit 34   (CLAWED BACK)                  --
12
13      Exhibit 34A  E-Mail Chain dated 1-11-23    125
14                   USPS-ADS-0000043815-816
15
16      Exhibit 35   Text Messages                  93
17                   USPS-ADS-0000899149-151
18
19      Exhibit 36   (CLAWED BACK)                  --
20
21      Exhibit 36A  E-Mail Chain dated 1-11-23    135
22                   USPS-ADS-0000041965
```

Veritext Legal Solutions
800-567-8658                                          973-410-4098

---

HIGHLY CONFIDENTIAL

Page 6

```
 1      EXHIBITS (CONTINUED):
 2      Exhibit 36B  Attachment to Exhibit 36A     315
 3
 4      Exhibit 37   E-Mail Chain dated 3-8-23     135
 5                   USPS-ADS-0000040943
 6
 7      Exhibit 38   NIC+ZOE August 2023           168
 8                   Advertisement
 9
10      Exhibit 39   The U.S. Postal Service       175
11                   Five-Year Strategic Plan
12                   FY2020-FY2024
13
14      Exhibit 40   E-Mail Chain dated 3-29-22    199
15                   Attachment
16                   USPS-ADS-0000592851-863
17
18      Exhibit 41   Meeting Invite dated 4-30-20  211
19                   Attachment
20                   USPS-ADS-0000661829-869
21
22
```

Veritext Legal Solutions
800-567-8658                                          973-410-4098

---

HIGHLY CONFIDENTIAL

Page 7

```
 1      EXHIBITS (CONTINUED):
 2      Exhibit 42   E-Mail Chain dated 6-18-21    227
 3                   USPS-ADS-0000713476-481
 4
 5      Exhibit 43   E-Mail dated 4-20-20          238
 6                   Attachment
 7                   USPS-ADS-0000492772-780
 8
 9      Exhibit 44   E-Mail Chain dated 2-14-23    245
10                   Attachment
11                   USPS-ADS-0000042055-181
12
13      Exhibit 45   E-Mail Chain dated 4-26-22    262
14                   Attachment
15                   USPS-ADS-0000016395-463
16
17      Exhibit 46   E-Mail Chain dated 9-14-22    280
18                   USPS-ADS-0000620144-145
19
20      Exhibit 47   E-Mail Chain dated 11-16-21   281
21                   USPS-ADS-0000029221-226
22
```

Veritext Legal Solutions
800-567-8658                                          973-410-4098

---

HIGHLY CONFIDENTIAL

Page 8

```
 1      EXHIBITS (CONTINUED):
 2      Exhibit 48   E-Mail dated 6-23-20          287
 3                   USPS-ADS-0000447582-583
 4
 5      Exhibit 49   E-Mail dated 6-15-20          293
 6                   Attachment
 7                   USPS-ADS-000227880-968
 8
 9      Exhibit 50   Order/Solicitation/           299
10                   Offer/Award
11                   12-30-21
12                   USPS-ADS-0000529112-186
13
14      Exhibit 51   Order/Solicitation/           301
15                   Offer/Award
16                   USPS-ADS-0000529380-412
17
18
19
20
21
22      (Exhibits bound separately.)
```

Veritext Legal Solutions
800-567-8658                                          973-410-4098

HIGHLY CONFIDENTIAL

Page 9

P R O C E E D I N G S

(9:36 a.m.)

THE VIDEOGRAPHER: Good morning.

We are going on the record at on August 10, 2023.

Please note that the microphones are sensitive and may pick up whispering and private conversations. Please mute your phones at this time. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit 1 of the video-recorded deposition of Christopher Karpenko in the matter of United States, et al., v. Google LLC. The location of the deposition is Paul Weiss.

My name is Glen Fortner representing Veritext, and I am the videographer. The court reporter is Bonnie Russo from the firm Veritext. I am not related to any party in this action, nor am I financially interested in

HIGHLY CONFIDENTIAL

Page 10

the outcome.

If there are any objections to proceeding, please state them at the time of your appearance.

Counsel and all present, including remotely, will now state their appearances and affiliations for the record beginning with the noticing attorney.

MS. GOODMAN: Martha Goodman from Paul Weiss on behalf of Google LLC, and I am joined by my colleague Annelise Corriveau.

MR. RYAN: Good morning. James Ryan on behalf of the United States and the witness.

MR. GROSSMAN: David Grossman on behalf of the United States.

MR. CHU: Alvin Chu on behalf of the United States.

MR. WEAVER: Michael Weaver for the United States Postal Service.

MR. KARPENKO: Chris Karpenko with the United States Postal Service.

MS. GOODMAN: Is anybody on Zoom who

HIGHLY CONFIDENTIAL

Page 11

needs to state their appearance, please?

MS. WOOD: I don't need to state an appearance, but I'll be in and out throughout the day. Julia Wood from the Department of Justice.

MS. CLEMENS: Same for -- this is Katherine Clemens with the Department of Justice.

MR. CARMAN: And Sean Carman from the Department of Justice.

MS. GOODMAN: We did not hear the last person who spoke. Can you repeat yourself, please.

MR. CARMAN: Yeah. Sean Carman for the Department of Justice, S-E-A-N C-A-R-M-A-N.

MS. GOODMAN: Okay.

CHRISTOPHER KARPENKO,
being first duly sworn, to tell the truth, the whole truth and nothing but the truth, testified as follows:
EXAMINATION BY COUNSEL FOR DEFENDANT

HIGHLY CONFIDENTIAL

Page 12

BY MS. GOODMAN:

Q. Good morning, Mr. Karpenko.

A. Good morning.

Q. Have you been deposed before?

A. I have.

Q. How recently?

A. Possibly within the last two years.

Q. And was that in connection with your work at the U.S. Postal Service?

A. It was.

Q. And what was it regarding?

A. Specifically it was in regards to contested environment for picture permit stamps.

Q. Okay. For -- for purposes of this deposition, I want to make sure that you take a pause before I finish my question so that I can complete my question, allow your counsel to object, and then you can answer the question. Okay?

A. Okay.

Q. And can you also speak up a little

HIGHLY CONFIDENTIAL

Page 13

1  bit.  Sometimes it's a bit hard to hear you,
2  and we want to make sure the court reporter is
3  getting everything down.  Okay?
4     A.   Sure.
5     Q.   Okay.  And if you don't understand
6  my question, please let me know.  Okay?
7     A.   Okay.
8     Q.   Otherwise, I will assume you
9  understand my question.  Sound good?
10    A.   Yes.
11    Q.   And the court reporter cannot really
12 transcribe uh-huh or huh, uh-uhs because they
13 are hard to understand what you mean, so can
14 you please answer a question with a yes or no
15 or another verbal manner.  Okay?
16    A.   Yes.
17    Q.   And is there any reason you cannot
18 provide truthful and accurate testimony today?
19    A.   No.
20    Q.   And what is your current title at
21 the United States Postal Service?
22    A.   As of today, it's senior director

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 14

1  customer marketing.
2     Q.   And for how long have you held the
3  role of senior director for customer marketing?
4     A.   Maybe three months.
5     Q.   And what do you do as the senior
6  director for customer marketing?
7     A.   I'm responsible with my team to
8  represent the postal service to perform
9  marketing initiatives, messaging, and create a
10 positive brand for the United States Postal
11 Service.
12    Q.   And prior to taking on the role of
13 senior director for customer marketing, what
14 was your role at the postal service?
15    A.   Executive director of brand
16 marketing.
17    Q.   And what is the difference between
18 your role of senior director of customer
19 marketing and executive director of brand
20 marketing?
21         MR. RYAN:  I'll object to
22 foundation, but it's fine.

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 15

1         THE WITNESS:  There are several
2  nuances of reporting structure where some of my
3  directs have been moved.  We've elevated those
4  groups as we have grown them to make them more
5  of a larger autonomous group.
6         BY MS. GOODMAN:
7     Q.   How about with respect to your job
8  responsibilities?  Have those changed in the
9  course of moving from the executive director to
10 the senior director position?
11    A.   I don't have specific
12 responsibilities tied to licensing and
13 intellectual property.  The other move -- moved
14 to what we would call our digital group under
15 Kim Workinger.  That encompasses all our -- our
16 own USPS.com site.
17    Q.   So the digital group under Kim
18 Workinger encompasses the USPS.com site.  Am I
19 understanding you correctly?
20    A.   Yes.
21    Q.   And when you were executive director
22 for brand marketing, you had responsibilities

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 16

1  tied to licensing and intellectual property.
2  Am I understanding that correctly?
3     A.   Yes.
4     Q.   How about with respect to
5  advertising?  How, if at all, have your
6  responsibilities changed from being executive
7  director to senior director?
8         MR. RYAN:  Objection.  Form.
9         THE WITNESS:  I still have the
10 responsibilities to develop campaigns and
11 execute them.  We have a marketing operations
12 team that answers under our insights group.
13 That's probably the only other difference that
14 I can think of at the moment --
15        BY MS. GOODMAN:
16    Q.   And --
17    A.   -- other than what you were stating
18 before.
19    Q.   So in your capacity -- in your prior
20 capacity as executive director and in your
21 current capacity as senior director, please
22 describe what your responsibilities are with

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 17

1  respect to advertising.
2          MR. RYAN:  Objection.  Vague.
3          THE WITNESS:  Could you clarify for
4  me.
5          BY MS. GOODMAN:
6      Q.  What do you understand the term
7  "advertising" to mean?
8      A.  Advertising for me is to be able to
9  position messaging in whatever format that
10 might be to our potential customers, whether
11 they be consumer or businesses, and the postal
12 service -- and my role in the postal service is
13 to help place proper messaging for our various
14 campaigns that we are going to be executing for
15 the year.
16     Q.  Okay.  And so with respect to the
17 understanding of advertising that you have just
18 stated for the record, can you please describe
19 what your responsibilities are with respect to
20 advertising.
21     A.  My role is to determine what
22 campaigns to run for the year, take the

HIGHLY CONFIDENTIAL

Page 18

1  insights that are provided to us, take the
2  target audience that we're trying to reach, and
3  make creative and place that creative or
4  content in the appropriate way for our desired
5  outcome.
6      Q.  And when you say "place that
7  creative or content in the appropriate way for
8  our desired outcome," what do you mean?
9      A.  Proper messaging can be placed or
10 positioned in a variety of ways.  We use media,
11 variety of different media types.  We also use
12 materials that we provide to our salespeople.
13     Q.  When you say that you -- you use
14 media in a variety of different media types,
15 can you elaborate on that, please.
16     A.  Can you clarify what you mean by --
17 what you're looking for.
18     Q.  Well, when you say media, that you
19 use a variety of different media types, what do
20 you mean?
21     A.  So we have a variety of different
22 media channels that we use.  Those media

HIGHLY CONFIDENTIAL

Page 19

1  channels are fairly broad, so not all
2  inclusive.  Top of mind you would see the
3  traditional TV, radio, print, direct mail,
4  digital, which would have subsets within that
5  that might fall under social media, banner
6  advertising, e-mail marketing, and then we, of
7  course, have our own messaging that we use
8  within our own postal infrastructure.
9      Q.  And so your role includes then
10 determining the kind of media to use when
11 seeking to get your message out to your target
12 audience; is that correct?
13         MR. RYAN:  Objection.  Foundation.
14         THE WITNESS:  Myself and my group
15 have responsibility for rolling out campaigns
16 that would include a variety of different media
17 types, and we assess what those media types
18 may -- may work in combination with each other
19 to optimize our results.
20         BY MS. GOODMAN:
21     Q.  Okay.  And you have -- do you have a
22 direct role in selecting the variety of

HIGHLY CONFIDENTIAL

Page 20

1  different media types that are used for a
2  particular campaign?
3      A.  Yes.
4      Q.  How long have you been at the United
5  States Postal Service?
6      A.  Over 35 years.
7      Q.  And what -- prior to -- well, strike
8  that.
9          How long -- for what time period
10 were you executive director of brand marketing
11 for the USPS?
12     A.  I was in that role eight-plus years,
13 I believe.
14     Q.  How did you come to be the executive
15 director of brand marketing?
16     A.  I was selected by the chief
17 marketing officer.
18     Q.  Do you report to the chief marketing
19 officer?
20     A.  I report to the VP of marketing
21 today.
22     Q.  And who is the VP of marketing?

HIGHLY CONFIDENTIAL

Page 21

1  A. Sheila Holman, H-O-L-M-A-N.
2  Q. When you were executive director,
3  did you also report to Ms. Holman?
4  A. For a short period of time, yes.
5  Q. What period of time did you report
6  to Ms. Holman?
7  A. I believe she was hired while we
8  were in COVID, so 2021, I believe.
9  Q. And prior to Ms. Holman being hired,
10 to whom did you report while you were executive
11 director of brand marketing?
12 A. The name was Steve Monteith.
13 Q. Is that M-O-N-T-E-I-T-H --
14 A. T-E-I-T-H, yes. With a V, I
15 believe. Steve Monteith.
16 Q. And what -- was Mr. Monteith the VP
17 of marketing?
18 A. He was.
19    MR. RYAN: Objection. Form.
20    THE WITNESS: Sorry.
21    MS. GOODMAN: What is the form
22 objection?

HIGHLY CONFIDENTIAL

Page 22

1    MR. RYAN: Sorry. I meant
2  foundation.
3    BY MS. GOODMAN:
4  Q. And how many direct reports do you
5  have as senior director?
6  A. I have three directors along with an
7  administrative assistant.
8  Q. And while you were executive
9  director, how many direct reports did you have?
10 A. Seven, I believe.
11 Q. How did -- what changed in the
12 structure of the organization where you said at
13 the postal service causing you to go from seven
14 direct reports to three direct reports?
15 A. We have a Postmaster General Louis
16 DeJoy. He has been revamping the organization.
17 We have been working on investing in developing
18 different groups. He has a style that works
19 with a flatter layer of an organization.
20    We have elevated two groups within
21 my former team: The digital team and the IP
22 and licensing. The creative team now falls

HIGHLY CONFIDENTIAL

Page 23

1  under licensing and IP, and we took marketing
2  operations and moved it over to insights.
3     In addition to that, we are going
4  through another restructure, so we are in the
5  midst of having that assessed.
6  Q. Is that stressful?
7  A. That's probably a great question.
8  Not as stressful as the first restructure I
9  went through --
10 Q. Okay.
11 A. -- back in 1992.
12 Q. The digital team you said has been
13 elevated. What's the digital team?
14 A. The digital team encompasses what we
15 do on our dot-com site. It's known as
16 USPS.com. It's our site that most everyone
17 will go to to find information on a variety of
18 different things.
19    It's historically mission based.
20 People go there for purpose, for reason. You
21 can do anything from identifying where your
22 local post office is and their hours, services

HIGHLY CONFIDENTIAL

Page 24

1  that are available, and in some cases, you can
2  conduct transactions such as creating a --
3  creating a label for shipping. You can go to
4  USPS.com store to transact and purchase stamps
5  online, P.O. Box renewal. There are probably
6  30-plus applications one can do within the
7  USPS.com site, track a package so...
8  Q. And prior to the restructuring that
9  came along with your change from executive to
10 senior director, was the digital team reporting
11 to you?
12 A. Yes.
13 Q. And what team within your portfolio
14 of responsibilities is responsible for
15 advertising for the United States Postal
16 Service?
17    MR. RYAN: Objection to foundation.
18    THE WITNESS: All of my team has
19 some level of responsibility for advertising
20 for the postal service.
21    BY MS. GOODMAN:
22 Q. And what team more specifically has

HIGHLY CONFIDENTIAL

Page 25

1   responsibility for disseminating the message to
2   the target audience the postal service is
3   seeking to reach through a variety of media
4   channels?
5           MR. RYAN:  Objection to foundation.
6           THE WITNESS:  All of my team has
7   some role within that.
8           BY MS. GOODMAN:
9       Q.   Okay.  And so when the digital team
10  was within your remit, what role did they have
11  with respect to advertising?
12          MR. RYAN:  Objection.  Vague.
13          THE WITNESS:  The digital team had
14  responsibility for messaging on dot-com.  They
15  also, from a prior restructure probably in
16  2019, 2020, had a senior marketing specialist
17  position taking on COR, contracting officer
18  representative, roles for our media agency of
19  record.
20          BY MS. GOODMAN:
21      Q.   And is that media agency of record
22  Universal McCann?

HIGHLY CONFIDENTIAL

Page 26

1       A.   Yes.
2       Q.   And throughout your tenure as
3   executive director of brand marketing and now
4   while you are a senior director of customer
5   marketing, is Universal McCann the media agency
6   of record?
7       A.   They are the media agency of record,
8   yes.
9       Q.   And they were for the 2019 to -- at
10  least as of 2019, they were also the media
11  agency of record; is that correct?
12      A.   Yes.
13      Q.   Are there any other media agencies
14  of record for the United States Postal Service?
15          MR. RYAN:  Objection to form.
16          MS. GOODMAN:  What's the form
17  objection?
18          MR. RYAN:  That the -- I'm sorry.
19  The foundation.  Sorry.  I get them confused
20  sometimes.  Just the --
21          MS. GOODMAN:  I'll rephrase the
22  question.

HIGHLY CONFIDENTIAL

Page 27

1           BY MS. GOODMAN:
2       Q.   Mr. Karpenko, do you know whether
3   there are any other media agencies of record
4   for the United States Postal Service?
5       A.   We have agencies.  I'm not aware of
6   any other agency specifically as our media
7   agency of record.
8       Q.   Okay.  Do you recall what month you
9   -- your title changed from executive director
10  to senior director?
11      A.   Specifically, no.  I think it was
12  March or April.
13      Q.   So at least for the time period of
14  January 2019 through February of 2023, you were
15  the executive director of brand marketing?
16      A.   Yes.
17      Q.   Okay.  Now, and while you were
18  executive director of brand marketing, what
19  other teams reported up to you?  We talked
20  about the digital team.  We talked about the
21  licensing team.  What other teams were within
22  your remit?

HIGHLY CONFIDENTIAL

Page 28

1       A.   So the digital team.  We had the
2   licensing team, as you stated.  I had the
3   creative art team, creative services team, the
4   same.  I had the brand mail team, the brand
5   shipping team, the brand retail team.  I had a
6   marketing -- marketing operations position.
7   Prior to 2019 it was a team, and an
8   administrative assistant.  I believe that's
9   all.
10      Q.   I'll do my best not to interrupt
11  you.  I'm sorry.
12      A.   No.  That's okay.
13      Q.   What -- what was the
14  responsibilities of the brand mail team?
15      A.   The brand mail team is a group that
16  has a purpose of providing messaging about mail
17  and about mail to a variety of different target
18  audiences and customers.  It primarily focuses
19  on a business environment, commercial use.
20  Those businesses could be independents, small,
21  micro, small, medium, large enterprise as such.
22          We do -- there is some -- there is

HIGHLY CONFIDENTIAL

Page 45

1  MR. RYAN: Objection to this line.
2  I mean, you can't ask questions like this. Are
3  you asking which attorneys he has talked with?
4  MS. GOODMAN: Yes. It's an entirely
5  proper question.
6  BY MS. GOODMAN:
7  Q. So my question to you, Mr. Karpenko,
8  is: What attorneys have you spoken with this
9  year regarding a government investigation of
10 digital advertising and Google?
11 A. Michael Weaver has been my primary
12 contact. There may be others within the law
13 department present. I -- I'm not specifically
14 recalling anyone over another. It was very
15 much just an interaction conversation.
16 Q. And when you say "the law
17 department," is that within the postal service?
18 A. My reference to the law department
19 is the USPS law department.
20 Q. How about any lawyers affiliated
21 with the Department of Justice?
22 MR. RYAN: Objection --

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 46

1  BY MS. GOODMAN:
2  Q. Have you spoken this year with any
3  lawyers from the Department of Justice
4  regarding an investigation of digital
5  advertising and Google?
6  MR. RYAN: Objection to form and
7  foundation.
8  THE WITNESS: Yes.
9  BY MS. GOODMAN:
10 Q. And what lawyers at the Department
11 of Justice have you spoken with regarding an
12 investigation of digital advertising and
13 Google?
14 MR. RYAN: Objection to foundation.
15 MS. GOODMAN: Mr. Karpenko has said
16 that he spoke with Department of Justice
17 lawyers. I have asked the foundation -- I have
18 laid the foundation and now --
19 MR. RYAN: It's not a memory test.
20 MS. GOODMAN: -- I am following on
21 the question.
22 MR. RYAN: It's not a memory test.

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 47

1  MS. GOODMAN: Of course not. If he
2  doesn't recall, he can provide that answer, but
3  the foundation objections are not proper so --
4  MR. RYAN: But you're asking the
5  attorney -- you're asking him to list out all
6  the attorneys he has spoken with and --
7  MS. GOODMAN: If he can do that,
8  yes. I am entitled to ask the question. If he
9  is not able to recall those names from his
10 memory --
11 MR. RYAN: You are getting into
12 communications with counsel, so I just --
13 MS. GOODMAN: No. No, I'm not.
14 MR. RYAN: If -- he can try to
15 answer questions about who he has talked with
16 to the extent he knows or recalls and when
17 those communications -- you're entitled to ask
18 those questions, but I think the questions are
19 going into the line of communications with
20 counsel.
21 MS. GOODMAN: Okay. Well, I am very
22 mindful of that line, and I am -- I am not

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 48

1  intending to impede into privileged
2  conversations. I am asking for the identities
3  of the lawyers as well as the time period. The
4  kind of things that would occur -- appear --
5  appear on a privilege log. So that's what my
6  questions are designed at. Okay.
7  BY MS. GOODMAN:
8  Q. Mr. Karpenko, to the extent you
9  recall, which attorneys at the Department of
10 Justice have you spoken with regarding the
11 government investigation into digital ads and
12 Google?
13 A. I can't recall them all. There are
14 three attorneys representing the Department of
15 Justice here that I have engaged with
16 privileged conversation with.
17 There is one on the Zoom that shows
18 up as the one screen that we have engaged -- I
19 believe I have engaged with.
20 Q. And is that Mr. Carman?
21 A. I believe so.
22 Q. Okay.

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 49

1    A.   There are probably others.  I didn't
2    keep a list of them.  I would have to go back
3    and refer to maybe a meeting invite that people
4    were on, but I wouldn't be able to tell you
5    specifically who off the top of my head, and
6    even some I wouldn't even remember their names.
7         Q.   In what time period do you recall --
8    what was the first time you recall speaking
9    with a lawyer from the Department of Justice
10   regarding a digital -- regarding an
11   investigation into digital ads and Google?
12        A.   The -- it was similar to the time
13   that it became publicly published out into the
14   world.
15        Q.   And when you came across the
16   publication of the lawsuit in the course of
17   your work -- well, strike that.
18             Is that how you came to learn of the
19   lawsuit in the course of your work as executive
20   director of brand marketing?
21        A.   I became aware --
22             MR. RYAN:  Objection to foundation.

Veritext Legal Solutions
800-567-8658                                    973-410-4098

HIGHLY CONFIDENTIAL

Page 50

1             THE WITNESS:  I became aware of --
2    of the complaint through a news feed that came
3    through my iPhone as well as through our
4    lawyers reaching out to us through some
5    contact, I believe, with Department of Justice.
6             BY MS. GOODMAN:
7         Q.   And prior to learning of the
8    complaint through a news feed that came from
9    your iPhone, had you anticipated being involved
10   in a lawsuit regarding Google and digital
11   advertising?
12             MR. RYAN:  Object to the form.
13   Mischaracterizing the witness's prior
14   testimony.
15             THE WITNESS:  Could you clarify that
16   for me.
17             BY MS. GOODMAN:
18        Q.   Sure.  Before you learned of the
19   lawsuit through a news feed that came through
20   your iPhone, did you know a lawsuit would be
21   coming?
22             MR. RYAN:  Object to the form.

Veritext Legal Solutions
800-567-8658                                    973-410-4098

HIGHLY CONFIDENTIAL

Page 51

1             THE WITNESS:  I only knew of the
2    complaint as a complaint.  I did not know if
3    postal would be involved nor if I would be
4    involved in any of the complaint.
5             BY MS. GOODMAN:
6         Q.   And so it was subsequent to the
7    filing of the complaint that you came to be
8    involved in this lawsuit; is that accurate?
9             MR. RYAN:  Objection.  Foundation.
10   Objection.  Form and foundation.
11            THE WITNESS:  I am trying to
12   remember if information was asked for from the
13   postal service tied to our media spend and our
14   media process.
15            BY MS. GOODMAN:
16        Q.   But prior to the filing of the
17   complaint, did you have any knowledge or
18   awareness that the postal service would be
19   involved as an entity for which the United
20   States would seek monetary damages from Google?
21            MR. RYAN:  Objection to form.
22            THE WITNESS:  I wouldn't have

Veritext Legal Solutions
800-567-8658                                    973-410-4098

HIGHLY CONFIDENTIAL

Page 52

1    specific information as to DOJ's specific
2    intent.
3             BY MS. GOODMAN:
4         Q.   So you --
5         A.   I didn't -- I didn't write the
6    complaint.
7         Q.   Have you read the complaint?
8         A.   I have.
9         Q.   And have you seen the United States
10   Postal Service mentioned anywhere in it?
11        A.   I believe so.
12        Q.   Okay.  And when you read the -- did
13   you read the complaint around the time that it
14   was filed?
15        A.   Yes.
16        Q.   Okay.  Did you read it as a result
17   of the news alert that you got?
18            MR. RYAN:  Objection.  Foundation.
19            THE WITNESS:  I believe it was
20   provided under privilege while we were having
21   discussions.
22            MS. GOODMAN:  Okay.  Can I have Tab

Veritext Legal Solutions
800-567-8658                                    973-410-4098

HIGHLY CONFIDENTIAL

Page 53

1  6.
2       (Deposition Exhibit 33 was marked
3  for identification.)
4       BY MS. GOODMAN:
5   Q.  Prior to the filing of the
6  complaint, did you anticipate being a witness
7  in this lawsuit?
8   A.  There was nothing for me to think
9  that I would be a witness for the complaint.
10  Q.  And is that -- strike that.
11      I am handing you Exhibit 33,
12 USPS-ADS-140586 through 588.
13      I will ask you to take a look and
14 see if you recognize this as an e-mail you
15 received in January of 2023.
16      Did you receive this e-mail?
17  A.  Yes.
18  Q.  And it is with an individual at the
19 United States Postal Service, Office of
20 Inspector General; is that right?
21  A.  Yes.
22  Q.  And to the best of your

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 54

1  recollection, was January 9, 2023, the first
2  time you received any outreach with respect to
3  an inquiry that sought to determine whether the
4  U.S. Postal Service purchased any advertising
5  on the open web in third-party websites, such
6  as New York Times.com, CNN.com or
7  Bloomberg.com?
8       MR. RYAN:  Objection to form and
9  foundation.
10      THE WITNESS:  Could you repeat the
11 question again, please.
12      BY MS. GOODMAN:
13  Q.  Sure.  I just want to know if -- and
14 I was reading from Mr. Gardener's e-mail to you
15 on January 9 at the bottom of the document.
16  A.  Yes.
17  Q.  Was that the first outreach you
18 received from anybody within the government
19 about an inquiry, as he uses, to determine
20 whether the postal service purchased any
21 advertising on the open web and third-party
22 websites, such as New York Times.com, CNN.com

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 55

1  or Bloomberg.com?
2       MR. RYAN:  Objection to form.
3       THE WITNESS:  The e-mail above --
4  component above Matthew Gardner does say
5  coincidently we have a meeting with another
6  group, DOJ, tied to something very similar.
7       BY MS. GOODMAN:
8   Q.  And that's you writing; is that
9  right?
10  A.  That is me writing, yes.
11  Q.  To Mr. Gardner.
12      And do you recall when you received
13 any outreach from the DOJ tied to something
14 very similar?
15  A.  I do not.  No.  I do not.
16  Q.  You write to Mr. Gardner:  "Our team
17 really handles the paid media and most of that
18 media is acquired through our media agency for
19 USPS."
20      MR. RYAN:  Martha, can you specify
21 where you are?
22      MS. GOODMAN:  I am reading Mr.

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 56

1  Karpenko's e-mail dated January 9, 11:12 a.m.,
2  in the middle of page Bates ending 87.  First
3  paragraph.
4       BY MS. GOODMAN:
5   Q.  What did you mean that:  "Most of
6  that media is acquired through our media agency
7  through USPS"?
8   A.  I am just looking for it here.
9   Q.  I'm sorry.  Page 2.
10  A.  Page 2.
11  Q.  Middle of the page.
12      MR. RYAN:  I mean, you can take your
13 time to look at the document.
14      MS. GOODMAN:  Yeah.
15      BY MS. GOODMAN:
16  Q.  It's in the same paragraph where
17 you --
18  A.  "Since our team really handles the
19 paid media," about midway on the page.
20  Q.  Yes.
21  A.  Thank you.  We do.  So your question
22 was:  What does that mean?

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 57

1  Q. Yes. You can answer.
2  A. Our team manages a contract, we have
3  a contract with Universal McCann and that we
4  instruct them to help us provide and place
5  media for our initiatives.
6  Q. And Universal McCann purchased that
7  -- purchases that media; is that correct?
8  A. Yes.
9  Q. Now, in your third paragraph, where
10  you say --   when you say "third-party
11  websites."
12     Do you see that?
13  A. Yes.
14  Q. Why were you asking Mr. Gardner the
15  clarifying questions contained within this
16  third paragraph?
17  A. I didn't quite understand what he
18  was asking for. I was looking for clarity.
19  Q. And you see --
20  A. Apologize.
21  Q. At the top of the Page 2, Mr.
22  Gardner responds: "Thank you for the quick

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 58

1  response. I am probably using terms
2  differently than what" you -- "is commonly used
3  in advertising."
4     Do you see that?
5  A. I do.
6  Q. Was he using terms differently than
7  what are commonly used in advertising?
8  A. I don't think he was using uncommon
9  terms. I was looking for clarity though.
10  Q. What was unclear about his request
11  from your point of view?
12  A. Context.
13  Q. What do you mean?
14  A. That's my answer. It seemed to be a
15  general ask and I was unclear of what he was
16  looking -- or trying to look for, and as such,
17  I did ask for clarity so that we could be
18  thorough in his ask for whatever data he may be
19  looking for.
20  Q. And turning to the first page
21  continuing in the e-mail chain, you write that:
22  "Fox, CNBC, Times, et cetera, are platforms to

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 59

1  advertise on for the USPS."
2     Do you see that?
3  A. I do.
4  Q. What did you mean by that?
5  A. Those are areas where we provide
6  content. Fox, CNBC, Times, et cetera, are all
7  potential areas where we put advertising
8  towards.
9  Q. Are there a variety of different
10  ways that the postal service could place
11  advertisements on these platforms?
12     MR. RYAN: Objection to form.
13     THE WITNESS: We might have various
14  ways of advertising with these groups. They
15  could be physical, for example, with the New
16  York Times and their paper. It could be in the
17  form of video, either through, for example, Fox
18  or CNBC's networks, and it could also be put as
19  a digital or digital display on their sites.
20     BY MS. GOODMAN:
21  Q. And could they -- those kinds of
22  advertisements that you described be purchased

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 60

1  through a direct deal with that platform?
2     MR. RYAN: Objection to form.
3     THE WITNESS: The postal service
4  contracts with UM to act as an agent for us to
5  make purchases like this.
6     BY MS. GOODMAN:
7  Q. And could UM then make such a
8  purchase through a direct deal between it and
9  Fox or CNBC?
10     MR. RYAN: Objection to foundation.
11     THE WITNESS: Possibly.
12     BY MS. GOODMAN:
13  Q. And are there other ways that UM
14  could make a purchase to place USPS advertising
15  on these platforms beyond a direct deal?
16     MR. RYAN: Objection to form.
17     THE WITNESS: Possibly.
18     BY MS. GOODMAN:
19  Q. Can you think of any other possible
20  ways beyond a direct deal that UM could make a
21  purchase to place USPS advertising on these
22  platforms?

Veritext Legal Solutions
800-567-8658                                973-410-4098

HIGHLY CONFIDENTIAL

Page 137

1    January of 2023 regarding ad spend?
2        A.    That may be difficult for me to
3    answer because the UM team is about media and
4    ad spend and it could encompass almost anything
5    tied to our advertising efforts.
6        Q.    Is it a normal part of your daily
7    work -- is it a routine part in your work to
8    have a one-on-one conversation with Ms. Catucci
9    about ad spend?
10       A.    It would not be an exception.
11       Q.    Okay.  And subsequent to January of
12   2023, have you requested information from
13   United -- Universal McCann based on a
14   conversation with your counsel?
15       A.    I'm not sure -- I'm not sure about
16   the question.  Could you help me.
17       Q.    Yeah.  After the complaint in this
18   case was filed in January of 2023, have you
19   made requests to Universal McCann for
20   information in order to participate in this
21   lawsuit?
22             MR. RYAN:  Counsel, I'm going to

Veritext Legal Solutions
800-567-8658                               973-410-4098

HIGHLY CONFIDENTIAL

Page 138

1    object.  That's calling for privileged -- it's
2    calling for privileged communication.  I would
3    --
4              MS. GOODMAN:  It is precisely the
5    same kind of testimony you've already permitted
6    him to provide.  I am not asking for an
7    instance --
8              MR. RYAN:  Well, that was a mistake
9    on my part.
10             MS. GOODMAN:  -- I am asking a
11   yes-or-no question, which is whether he has
12   asked -- and I'll restate my question.
13             BY MS. GOODMAN:
14       Q.    Mr. Karpenko, after January of 2023,
15   have you requested information from Universal
16   McCann as a result of a conversation with your
17   counsel?
18       A.    I would say I have requested and
19   received various information from Universal
20   McCann both tied to privilege and not tied to
21   privilege.
22             MS. GOODMAN:  We're going to move to

Veritext Legal Solutions
800-567-8658                               973-410-4098

HIGHLY CONFIDENTIAL

Page 139

1    compel on those communications too.
2              BY MS. GOODMAN:
3        Q.    Prior to January of 2023 in the
4    course of your work at the United States Postal
5    Service, did you ever develop any concerns that
6    Google was engaging in anticompetitive conduct?
7        A.    I was unaware of any anticompetitive
8    conduct from Google.
9        Q.    And in the course of your work as a
10   -- the executive director for brand marketing
11   at the postal service, did you ever develop any
12   concerns that you paid super-competitive prices
13   for Google products?
14       A.    Can you clarify the -- the question.
15       Q.    Yeah.  In the course of your work as
16   executive director for brand marketing and
17   participating as an advertiser in the
18   advertising space, did you ever develop any
19   concerns that the postal service was paying too
20   much money for products or services from
21   Google?
22             MR. RYAN:  Object to the form.

Veritext Legal Solutions
800-567-8658                               973-410-4098

HIGHLY CONFIDENTIAL

Page 140

1              THE WITNESS:  In my role I have a
2    responsibility for hundreds of millions of
3    dollars of budget, so I am always keeping top
4    of mind that we're spending our investments or
5    our moneys appropriately and getting the best
6    value for that.
7              So from a macro perspective, we're
8    always looking at trying to get the best value.
9              BY MS. GOODMAN:
10       Q.    I appreciate that answer.  And my
11   question is a bit more specific.
12             Understanding that context that
13   you're always trying to get the best value for
14   USPS ad spend, my question is:  Did you ever
15   develop any concerns in the course of your work
16   as executive director for brand marketing that
17   the postal service was paying too much money
18   for products or services offered by Google?
19       A.    So --
20             MR. RYAN:  Object to form.
21             THE WITNESS:  So whether it's Google
22   or another entity, we -- ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Veritext Legal Solutions
800-567-8658                               973-410-4098

## Page 141

HIGHLY CONFIDENTIAL



19    BY MS. GOODMAN:
20    Q.    All right.  So based on your prior
21    two answers, I'm understanding your testimony
22    that you never developed a specific concern

## Page 142

HIGHLY CONFIDENTIAL

1    that the postal service was paying too much
2    money for products or services offered by
3    Google.
4        Am I understanding your testimony
5    correctly that you never had such a specific
6    concern as to Google?
7        MR. RYAN:  Objection to form and
8    foundation.
9        THE WITNESS:  So Google offers a lot
10    of products and services.  Our interaction with
11    Google is fairly vast at the postal service.
12    We do things beyond advertising and marketing
13    with them.
14        So when you're asking about products
15    and services it's a pretty broad ask for me.
16    So could you help narrow it down for me.
17        BY MS. GOODMAN:
18    Q.    Yes.  My question is specific to
19    Google products or services relating -- with
20    respect to digital advertising.  Okay.  So I
21    don't care about Gmail or Google Workspace or
22    Google Drive.

## Page 143

HIGHLY CONFIDENTIAL

1        Specific to products and services
2    related to digital advertising, did you, in
3    your capacity as executive director for brand
4    marketing at the postal service, based on your
5    knowledge and experience executing ad
6    campaigns, ever develop a specific concern that
7    the postal service was paying too much money
8    for Google products or services related to
9    digital advertising?
10    A.    So I might refrain that to say we --
11    Q.    Sir, I'm sorry to interrupt you, but
12    my question is my question, and I am asking you
13    to answer it as I have posed it rather than
14    reframing it and answering a different
15    question.
16        So can you please try to --
17        MR. RYAN:  The witness is trying to
18    answer your question, Martha.
19        BY MS. GOODMAN:
20    Q.    -- to answer my question as to any
21    specific concern as to Google specifically and
22    the prices paid for the use of Google products

## Page 144

HIGHLY CONFIDENTIAL

1    or services for digital advertising.
2        MR. RYAN:  I'm going to object to
3    form.  And the witness -- let the witness try
4    to answer the question.
5        THE WITNESS:  The postal service
6    doesn't directly use products from Google such
7    as DV360 for placement of advertising.  We pay
8    to place advertising on Google's environment so
9    that we can reach our customers.  I can't -- I
10    can't evaluate their products that enable one
11    to put media onto the various sites.
12        BY MS. GOODMAN:
13    Q.    And why can't you evaluate Google's
14    products that enable one to put media onto the
15    various sites?
16    A.    The postal service created a
17    contract with UM as a media agency of record
18    for media.
19        UM then places on behalf of the
20    postal service media in various environments,
21    and if they are utilizing Google's products to
22    do that, we don't -- we don't dictate that and

HIGHLY CONFIDENTIAL

Page 305

1    provision does not commit the postal service
2    to, in fact, spend ▮▮▮▮▮▮ on media buys,
3    correct?
4        A.    Correct.
5              MR. RYAN:  Objection to form and
6    foundation.
7              BY MS. GOODMAN:
8        Q.    Okay.  And if you flip to Page 388,
9    do you see that this is attaching -- or
10   including within this contract, the UM SOW
11   contract year 2022.
12             Do you see that?
13       A.    Yes, that's the Universal McCann
14   statement of work, contract year 2022.
15       Q.    And is it accurate to say that the
16   statement of work in the subsequent pages
17   outlines the work that Universal McCann would
18   perform in this contract year on behalf of the
19   postal service?
20             MR. RYAN:  Objection to form.
21             THE WITNESS:  Yes.
22             BY MS. GOODMAN:

Veritext Legal Solutions
800-567-8658                          973-410-4098

HIGHLY CONFIDENTIAL

Page 306

1        Q.    And if you turn to page ending in
2    11411.
3        A.    11411.
4        Q.    Under Item 4:  "Addressable
5    technology."
6              Do you see where I am?
7        A.    Yes.
8        Q.    Do you know what Kinesso is in 4A?
9        A.    Kinesso is another group that UM has
10   used for our marketing efforts.
11       Q.    And are they similar to Matterkind?
12             MR. RYAN:  Objection to form.
13             THE WITNESS:  Similar in the sense
14   that they are another entity that UM works with
15   us to help place media for our effectiveness.
16             BY MS. GOODMAN:
17       Q.    And in No. 5 where it says:
18   "Private marketplace curation and management,"
19   what is that a reference to, to your knowledge?
20       A.    I don't know.
21       Q.    Okay.  And if we go -- I'm sorry.
22             If we turn back to Page 390 in the

Veritext Legal Solutions
800-567-8658                          973-410-4098

HIGHLY CONFIDENTIAL

Page 307

1    chart here where the columns are:  "Assumed
2    efforts, assumed media channels," and assume
3    spend -- "assumed spend."
4              Does this chart reflect at a high
5    level the plans that the postal service had
6    with respect to advertising efforts for this
7    particular contract year?
8              MR. RYAN:  Objection to form.
9              THE WITNESS:  This is more a
10   guidance than an estimate.  We would be firming
11   up our campaigns and budget later in the year.
12             BY MS. GOODMAN:
13       Q.    And under the column:  "Assumed
14   media channels," do you see anywhere listed on
15   Pages 390, 391 or 392, open web display?
16       A.    No.
17       Q.    You can put that to the side.
18             With respect to United States Postal
19   Service's digital advertising efforts, did the
20   postal service purchase any display advertising
21   directly from Google to your knowledge?
22       A.    Not to my knowledge.

Veritext Legal Solutions
800-567-8658                          973-410-4098

HIGHLY CONFIDENTIAL

Page 308

1        Q.    And did the postal service purchase
2    any open web display advertising directly from
3    Google?
4        A.    Not to my knowledge.
5        Q.    Did the postal service pay Google
6    directly for the use of DV360 to your
7    knowledge?
8              MR. RYAN:  Objection to foundation.
9              THE WITNESS:  I don't know if the
10   postal service paid for access to use Google's
11   DV360 tool.
12             BY MS. GOODMAN:
13       Q.    To your knowledge, did the postal
14   service pay Google directly for the use of
15   Google ads?
16             MR. RYAN:  Objection to foundation.
17             THE WITNESS:  I'm unaware of us
18   paying for any Google ads from the postal
19   service.
20             BY MS. GOODMAN:
21       Q.    To your knowledge and in your
22   capacity as the executive director for brand

Veritext Legal Solutions
800-567-8658                          973-410-4098

HIGHLY CONFIDENTIAL

Page 309

1  marketing from 2019 to 2023 time period, did
2  the postal service purchase any ad tech
3  services directly from Google?
4          MR. RYAN:  Objection to form and
5  foundation.
6          THE WITNESS:  I'm unaware of the
7  postal service purchasing any ad tech services
8  from Google.
9          BY MS. GOODMAN:
10     Q.   And are you unaware of the postal
11 service purchasing any ad tech services
12 directly from Google?
13         MR. RYAN:  Objection to form and
14 foundation.
15         THE WITNESS:  I am not aware of it.
16         BY MS. GOODMAN:
17     Q.   Are you aware of any contract
18 between the United States Postal Service and
19 Google related to digital advertising?
20     A.   Not to digital advertising.
21     Q.   Do you know whether any money has
22 been paid to Google through any contract

HIGHLY CONFIDENTIAL

Page 310

1  between the postal service and Universal
2  McCann?
3          MR. RYAN:  Objection to form and
4  foundation.
5          THE WITNESS:  Can you repeat that
6  again.
7          BY MS. GOODMAN:
8      Q.   Do you know whether any money has
9  been paid to Google through funds awarded under
10 the contract between the postal service and
11 Universal McCann?
12         MR. RYAN:  I'll repeat the
13 objection.
14         THE WITNESS:  Yes.
15         BY MS. GOODMAN:
16     Q.   Okay.  And how do you know that
17 money has been paid to Google through those
18 funds?
19     A.   For example, we spend ▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮
22     Q.   And if you were -- how would you

HIGHLY CONFIDENTIAL

Page 311

1  figure out how much money has been paid to
2  Google under the UM USPS contract?
3          MR. RYAN:  Objection to foundation
4  and form.
5          THE WITNESS:  We at least have
6  visibility on investment that we have asked UM
7  to pay or to use for media, the big one is
8  Google Search.  If there are others, it would
9  be a bit more in the weeds and I don't have
10 that visibility.
11         BY MS. GOODMAN:
12     Q.   And does anybody, to your knowledge,
13 in the postal service have that visibility?
14     A.   I don't believe so.
15     Q.   Okay.  Earlier, we were talking
16 about how the postal service helps connect
17 brands with customers, correct?
18         MR. RYAN:  Objection to form.
19         THE WITNESS:  Yes.
20         BY MS. GOODMAN:
21     Q.   And does Google also help connect
22 brands with their customers?

HIGHLY CONFIDENTIAL

Page 312

1          MR. RYAN:  Objection to foundation
2  and form.
3          THE WITNESS:  Google is an
4  organization that offers up a number of
5  products and services that help customers --
6  and reach customers in a variety of ways.
7          BY MS. GOODMAN:
8      Q.   The U.S. Postal Service is also an
9  organization that offers up a number of
10 products and services that help businesses
11 reach customers in a variety of ways; is that
12 accurate?
13         MR. RYAN:  Objection to form.
14         THE WITNESS:  There is value to
15 both.
16         BY MS. GOODMAN:
17     Q.   But it is true that the postal
18 service is also an organization that offers up
19 a number of products and services that help
20 businesses reach customers in a variety of
21 ways?
22         MR. RYAN:  Objection to form.

HIGHLY CONFIDENTIAL

Page 313

1   THE WITNESS:  Yes, with probably
2   some -- some caveats in that.
3          BY MS. GOODMAN:
4      Q.   Okay.  And so with respect to
5   helping businesses reach their customers, does
6   the postal service compete with Google?
7          MR. RYAN:  Objection to form and
8   foundation.
9          THE WITNESS:  I think they offer
10  different products and services.
11         BY MS. GOODMAN:
12     Q.   So is your answer no, that the
13  postal service does not compete with Google
14  with respect to helping businesses reach their
15  customers?
16         MR. RYAN:  Objection to form and
17  foundation.
18         THE WITNESS:  Probably depends on
19  what the customers are wanting or looking for.
20  They have similar approaches.  The postal
21  service has the ability to offer products and
22  services, but doesn't limit who can enter in

Veritext Legal Solutions
800-567-8658                                 973-410-4098

HIGHLY CONFIDENTIAL

Page 314

1   utilizing those products and services, so you
2   could do it as an individual or you could do it
3   as a -- you could have an entity or business do
4   it for you.  Google has products and services
5   that you could do something as an individual
6   potentially, or you are required to use
7   particular -- potential products and tools to
8   be able to accomplish what you need to for
9   them.
10         BY MS. GOODMAN:
11     Q.   So is it at least fair to say that
12  the postal service provides a way for customers
13  -- businesses to reach their customers that is
14  complementary to services that Google offers
15  businesses in order to reach their customers?
16         MR. RYAN:  Objection to form and
17  foundation.
18         THE WITNESS:  I think both entities
19  have value to them and Google has provided
20  value to customers.
21         BY MS. GOODMAN:
22     Q.   And has Google provided value to the

Veritext Legal Solutions
800-567-8658                                 973-410-4098

HIGHLY CONFIDENTIAL

Page 315

1   United States Postal Service from your point of
2   view?
3      A.   We have used Google because they do
4   provide a value for the postal service for
5   certain efforts that we are trying to make.
6      Q.   Okay.
7          MS. GOODMAN:  We can take a break.
8          THE VIDEOGRAPHER:  Going off the
9   record.  The time is 18:50.
10         (A short recess was taken.)
11         THE VIDEOGRAPHER:  Going back on the
12  record.  The time is 19:01.
13         MS. GOODMAN:  For the record, I am
14  ripping off the cover e-mail to Exhibit 36,
15  handing it to opposing counsel since he clawed
16  it back and marking the attachment as 36B.  I
17  will just hand that to the witness but I don't
18  have any questions about it.
19         (Deposition Exhibit 36B was marked
20  for identification.)
21         BY MS. GOODMAN:
22     Q.   Mr. Karpenko, have you had any

Veritext Legal Solutions
800-567-8658                                 973-410-4098

HIGHLY CONFIDENTIAL

Page 316

1   conversations with Brian Pasco about this
2   lawsuit?
3      A.   Brian worked for me, and yes, I did
4   have conversations about the information.
5      Q.   Subsequent to Brian Pasco leaving
6   the postal service, have you had any
7   conversations with him about this lawsuit?
8      A.   I have not spoken to Brian since he
9   left.
10     Q.   And so what conversations have you
11  had with -- did you have with Brian while he
12  was still at the postal service with respect to
13  this lawsuit?
14     A.   To provide any information that
15  might be needed.
16     Q.   Did he provide you any information?
17     A.   He gathered up -- in general, he
18  gathered up all of his information because he
19  was leaving and he put it on a share drive.
20     Q.   And was that for purposes of this
21  lawsuit or because it's a records management?
22     A.   Both.

Veritext Legal Solutions
800-567-8658                                 973-410-4098

HIGHLY CONFIDENTIAL

Page 317

1  Q.  And any other -- did he provide you
2  -- other than putting all of his information on
3  a share drive, did he provide you with any
4  other information in connection with this
5  lawsuit?
6          MR. RYAN:  Just to the extent that
7  it doesn't communicate -- this was not -- did
8  not involve communications with counsel.
9          THE WITNESS:  Nothing more that I'm
10 aware of.
11         BY MS. GOODMAN:
12 Q.  Than putting the information on a
13 share drive before he left; is that accurate?
14 A.  I don't recall him specifically
15 giving me any additional information, other
16 than making sure that he had his information
17 put onto a drive.
18 Q.  Got it.
19         MS. GOODMAN:  I have no further
20 questions for you at this time, Mr. Karpenko.
21 I will reserve the remainder of my time for the
22 questions that I was not permitted to ask the

---

HIGHLY CONFIDENTIAL

Page 318

1  witness based on what we view as improper
2  assertions of privilege.
3          So I'll hold the deposition open for
4  the record and I will pass the witness.
5          MR. RYAN:  Any questions?  I would
6  like to just note at this point, we would like
7  -- it might be automatic, but just for the
8  record, I just want to note that we want to
9  designate the entire transcript -- treat it --
10 have it treated as highly confidential for the
11 time allotted in the protective order, to allow
12 portions of the transcript to be -- the proper
13 portions to be designated and any exhibits that
14 are highly confidential.
15         MS. GOODMAN:  Okay.
16         MR. RYAN:  No questions for the
17 witness.
18         MS. GOODMAN:  Thank you,
19 Mr. Karpenko.
20         THE WITNESS:  Thank you.
21         THE VIDEOGRAPHER:  This marks the
22 end of the deposition of Mr. Karpenko.  Going

---

HIGHLY CONFIDENTIAL

Page 319

1  off the record at 19:05.
2          (Whereupon, the proceeding was
3  concluded at 7:05 p.m.)

---

HIGHLY CONFIDENTIAL

Page 320

1         CERTIFICATE OF NOTARY PUBLIC
2         I, Bonnie L. Russo, the officer before
3  whom the foregoing deposition was taken, do
4  hereby certify that the witness whose testimony
5  appears in the foregoing deposition was duly
6  sworn by me; that the testimony of said witness
7  was taken by me in shorthand and thereafter
8  reduced to computerized transcription under my
9  direction; that said deposition is a true
10 record of the testimony given by said witness;
11 that I am neither counsel for, related to, nor
12 employed by any of the parties to the action in
13 which this deposition was taken; and further,
14 that I am not a relative or employee of any
15 attorney or counsel employed by the parties
16 hereto, nor financially or otherwise interested
17 in the outcome of the action.

                    _____
20                  Notary Public in and for
21                  the District of Columbia
22 My Commission expires:  August 14, 2025

---

HIGHLY CONFIDENTIAL

Page 321

```
 1   Sean Carman
 2   sean.carman@usdoj.gov
 3                   August 11, 2023
 4   RE:   United States, Et Al v. Google, LLC
 5       8/10/2023, Christopher Karpenko (#6031969)
 6       The above-referenced transcript is available for
 7   review.
 8       Within the applicable timeframe, the witness should
 9   read the testimony to verify its accuracy. If there are
10   any changes, the witness should note those with the
11   reason, on the attached Errata Sheet.
12       The witness should sign the Acknowledgment of
13   Deponent and Errata and return to the deposing attorney.
14   Copies should be sent to all counsel, and to Veritext at
15   erratas-cs@veritext.com.
16
17     Return completed errata within 30 days from
18   receipt of testimony.
19      If the witness fails to do so within the time
20   allotted, the transcript may be used as if signed.
21
                         Yours,
22                Veritext Legal Solutions
```

Veritext Legal Solutions
800-567-8658                                            973-410-4098

---

HIGHLY CONFIDENTIAL

Page 322

```
 1   United States, Et Al v. Google, LLC
 2   Christopher Karpenko (#6031969)
 3             E R R A T A   S H E E T
 4   PAGE_____ LINE_____ CHANGE_____
 5   _____
 6   REASON_____
 7   PAGE_____ LINE_____ CHANGE_____
 8   _____
 9   REASON_____
10   PAGE_____ LINE_____ CHANGE_____
11   _____
12   REASON_____
13   PAGE_____ LINE_____ CHANGE_____
14   _____
15   REASON_____
16   PAGE_____ LINE_____ CHANGE_____
17   _____
18   REASON_____
19
20
21   _____   _____
22   Christopher Karpenko                      Date
```

Veritext Legal Solutions
800-567-8658                                            973-410-4098

---

HIGHLY CONFIDENTIAL

Page 323

```
 1   United States, Et Al v. Google, LLC
 2   Christopher Karpenko (#6031969)
 3            ACKNOWLEDGEMENT OF DEPONENT
 4       I, Christopher Karpenko, do hereby declare that I
 5   have read the foregoing transcript, I have made any
 6   corrections, additions, or changes I deemed necessary as
 7   noted above to be appended hereto, and that the same is
 8   a true, correct and complete transcript of the testimony
 9   given by me.
10
11   _____   _____
12   Christopher Karpenko                      Date
13   *If notary is required
14             SUBSCRIBED AND SWORN TO BEFORE ME THIS
15             _____ DAY OF _____, 20___.
16
17
18             _____
19                     NOTARY PUBLIC
20
21
22
```

Veritext Legal Solutions
800-567-8658                                            973-410-4098

---

HIGHLY CONFIDENTIAL

**[& - 2.1]**                                                                                   Page 1

| **&** | **0000899149-...** 5:17 **000227880-9-...** 8:7 **00108** 1:5 | **12-30-21** 8:11 **120** 268:19 **125** 5:13 **127** 205:16 304:9,12 305:2 | **16463** 262:18 **168** 6:7 **16:47** 245:10 **16:54** 245:13 **16:57** 247:22 |
|---|---|---|---|
| **&** 2:6 3:17 4:14 39:10 253:20 254:8 293:6,11 | | **12:23** 115:21 | **16:59** 248:3 |
| **0** | **1** | **12:36** 116:4 | **17** 264:1 |
| **0000016395-...** 7:15 **0000029221-...** 7:21 **0000040943** 6:5 **0000041965** 5:22 **0000042055-...** 7:11 **0000043815-...** 5:14 **0000140586-...** 5:9 **0000447582-...** 8:3 **0000492772-...** 7:7 **0000529112-...** 8:12 **0000529380-...** 8:16 **0000592851-...** 6:16 **0000620144-...** 7:18 **0000661829-...** 6:20 **0000713476-...** 7:3 | **1**  9:13 65:2 187:22 206:7,8 206:11 216:6 296:5 299:19 300:1 303:12 304:1 **1,000**  254:12 **1,465**  255:22 **1,701**  254:13 **1-11-23**  5:13,21 **1-9-23**  5:8 **10**  1:16 9:6 268:15 294:19 295:6,7 298:4 298:10 **10:56**  69:11 **11**  5:3 72:2 219:18 220:1 228:9 321:3 **11-16-21**  7:20 **110**  268:20 **11411**  306:2,3 **11937**  320:19 **11:12**  56:1 **11:17**  69:14 **11:28**  80:1 **11:41**  80:4 **11th**  89:16 90:15 92:3,15 | **12:42** 122:3 **13** 193:21 194:18 251:13 **130** 268:21 **135** 5:21 6:4 **137,021,402** 203:6 **13:39** 122:6 **13:42** 125:10 **13:43** 125:13 **14** 177:6 182:16 320:22 **140** 197:14 **140586** 53:12 **145** 280:3 **14:25** 160:1 **14:38** 160:4 **15** 252:17,19 **15:41** 210:19 **15s** 242:22 **16** 126:22 282:5 **1600** 210:22 **161** 163:7 **162** 162:5 163:7,14 **16395** 262:18 | **17.51** 264:19 **175** 6:10 **17:51** 287:2 **18** 227:14 252:21,22 253:1,1 300:1 302:18 303:5,7 **186** 301:13 **187** 301:8,12 **18:09** 287:5 **18:50** 315:9 **18th** 233:16 **19** 303:17 **199** 6:14 **1992** 23:11 **19:01** 315:12 **19:05** 319:1 **1:23** 1:5 |
| | | | **2** |
| | | | **2**  56:9,10 57:21 70:4 101:9 105:5 106:6 208:5,20 **2-14-23**  7:9 **2.0**  206:7 **2.1**  200:3,17,19 203:6 299:14 302:7 303:1 |

Veritext Legal Solutions
800-567-8658                                            973-410-4098

[witness - world] Page 70

| | | | |
|---|---|---|---|
| 183:12 184:3 | 263:7,18 264:7 | **wood** 4:10 11:2 | 198:9 199:13 |
| 184:22 185:13 | 265:5,13 266:1 | 11:4 | 201:12 202:2 |
| 187:21 190:1 | 267:7 268:2 | **word** 219:1 | 202:18 204:13 |
| 190:14 191:5 | 271:4 272:9,19 | **words** 65:14 | 204:20 205:15 |
| 191:17 192:12 | 274:4,16 275:6 | 128:20 132:17 | 212:3 216:17 |
| 192:19 193:16 | 275:16 277:4 | 134:11 218:18 | 234:17 242:8 |
| 194:12 195:1 | 277:12 278:5 | 218:21 236:21 | 244:6,21 245:6 |
| 195:11,21 | 278:11,22 | 267:16 | 264:9,10 |
| 196:8,16 200:4 | 280:4,21 | **work** 12:9 | 265:16 269:4 |
| 200:6 201:3,16 | 281:21 282:14 | 19:18 29:1 | 285:10 292:1 |
| 202:4,12 | 284:4,21 | 35:5 38:9,12 | 293:4 301:10 |
| 203:13 204:17 | 285:13 286:2 | 39:2 49:17,19 | 305:14,16,17 |
| 205:6,20 | 289:1 290:2,7 | 62:1 66:18 | **worked** 71:21 |
| 206:18 207:5 | 294:17 295:2 | 68:1 71:8 | 226:1 291:22 |
| 207:17 209:14 | 295:12,20 | 72:18 73:12,17 | 316:3 |
| 210:4,11 | 296:12 298:8 | 74:15 76:6 | **working** 22:17 |
| 211:12,21 | 299:12 301:1 | 80:19 83:20,21 | 29:14 67:21,21 |
| 212:16 214:1 | 301:12 302:11 | 84:16 91:2,14 | 67:22 68:16 |
| 214:11 215:19 | 302:20 303:19 | 110:1,7,16,22 | 166:11 167:13 |
| 216:12 218:3 | 304:17 305:21 | 114:10 116:10 | 173:9,21 174:2 |
| 219:15 220:12 | 306:13 307:9 | 117:12,16,19 | 187:19 197:13 |
| 221:6,14,20 | 308:9,17 309:6 | 118:20 119:14 | 198:3 214:7,13 |
| 223:4 224:17 | 309:15 310:5 | 119:18 120:6 | 214:16 215:13 |
| 225:15 227:7 | 310:14 311:5 | 120:13,15 | 253:18 |
| 229:2,20 230:5 | 311:19 312:3 | 122:22 123:2 | **workinger** |
| 232:13 234:14 | 312:14 313:1,9 | 124:14 125:1 | 15:15,18 |
| 235:15 237:10 | 313:18 314:18 | 137:7,7 139:4 | **works** 22:18 |
| 238:4,11 | 315:17 317:9 | 139:9,15 | 97:7 99:15 |
| 240:22 241:11 | 318:1,4,17,20 | 140:15 141:1 | 114:9 218:3 |
| 245:4 246:18 | 320:4,6,10 | 149:8 171:2,9 | 306:14 |
| 247:1,12 | 321:8,10,12,19 | 171:10 182:5 | **workspace** |
| 248:13,22 | **witness's** 50:13 | 183:6 184:4 | 142:21 |
| 249:11 251:10 | **wondering** | 188:19 193:6 | **world** 39:3 |
| 251:19 252:5 | 231:16 | 196:5,10,14,19 | 49:14 98:4,8 |
| 257:5,21 262:9 | | 196:19 198:2,3 | 114:14 167:14 |

Veritext Legal Solutions
800-567-8658   973-410-4098

[world - zoom] Page 71

| | | | |
|---|---|---|---|
| 167:18 174:3 | **x** | **x** 5:1 188:10,11 | 248:15 255:6 |
| 179:21 238:14 | | 188:18 195:4 | 268:4 286:6,7 |
| 256:14 268:17 | | 236:1 253:15 | 302:7 303:1,1 |
| 269:19,21 | | 259:5 268:14 | 303:1 305:11 |
| 275:22 | | | 305:14,18 |
| **worldwide** | | | 307:7,11 |
| 294:2,8 297:20 | **y** | | **years** 12:7 20:6 |
| **worries** 301:16 | | **yahoo** 260:10 | 20:12 106:19 |
| **worry** 256:9 | | 260:16 261:13 | 106:22 166:19 |
| **wrap** 245:22 | | **yeah** 11:14 | 167:19 175:7 |
| 246:3,5 259:11 | | 31:22 36:11 | 195:3,5,7 |
| 259:13 | | 38:21 56:14 | 207:6,7 249:17 |
| **write** 52:5 | | 63:15 107:6 | 297:17 |
| 55:16 58:21 | | 124:9 131:8 | **york** 54:6,22 |
| 76:19 85:8 | | 134:17 137:17 | 59:16 270:14 |
| 95:22 101:8,18 | | 139:15 199:9 | 270:17,19 |
| 105:10 106:5 | | 208:11 214:4 | 271:1 272:3,7 |
| 108:8 152:22 | | 220:6 227:15 | 272:11,14 |
| 228:6 | | 231:16 267:10 | 273:10,10 |
| **writes** 68:18 | | 279:21 | 274:8,10,11,16 |
| 95:12,14 100:8 | | **year** 6:11 17:15 | **z** |
| 105:4 126:8 | | 17:22 42:2 | |
| 233:18 281:4 | | 44:10,11 45:9 | **zoe** 6:7 168:21 |
| 288:2 | | 46:2 94:7 | 169:13 170:7 |
| **writing** 29:2,5 | | 166:19 175:6 | **zoom** 10:22 |
| 55:8,10 70:5 | | 175:12,22 | 48:17 136:4,15 |
| 70:11 149:1 | | 176:14 187:22 | 247:18 |
| 226:21 | | 194:13 196:5,9 | |
| **written** 176:14 | | 196:14,19 | |
| **wrote** 77:5 | | 197:20 198:6 | |
| 107:3,5 126:18 | | 198:18 200:2 | |
| 228:9 280:21 | | 200:17 203:6 | |
| | | 204:21 205:12 | |
| | | 206:22 207:1 | |
| | | 226:22 242:11 | |
| | | 242:12 243:5 | |

Veritext Legal Solutions
800-567-8658   973-410-4098

```
                Federal Rules of Civil Procedure

                            Rule 30


       (e) Review By the Witness; Changes.

       (1) Review; Statement of Changes. On request by the

       deponent or a party before the deposition is

       completed, the deponent must be allowed 30 days

       after being notified by the officer that the

       transcript or recording is available in which:

       (A) to review the transcript or recording; and

       (B) if there are changes in form or substance, to

       sign a statement listing the changes and the

       reasons for making them.

       (2) Changes Indicated in the Officer's Certificate.

       The officer must note in the certificate prescribed

       by Rule 30(f)(1) whether a review was requested

       and, if so, must attach any changes the deponent

       makes during the 30-day period.




       DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES

       ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

       THE ABOVE RULES ARE CURRENT AS OF APRIL 1,

       2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES

       OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.
```

```
                       VERITEXT LEGAL SOLUTIONS

            COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

        Veritext Legal Solutions represents that the

        foregoing transcript is a true, correct and complete

        transcript of the colloquies, questions and answers

        as submitted by the court reporter. Veritext Legal

        Solutions further represents that the attached

        exhibits, if any, are true, correct and complete

        documents as submitted by the court reporter and/or

        attorneys in relation to this deposition and that

        the documents were processed in accordance with

        our litigation support and production standards.

        Veritext Legal Solutions is committed to maintaining

        the confidentiality of client and witness information,

        in accordance with the regulations promulgated under

        the Health Insurance Portability and Accountability

        Act (HIPAA), as amended with respect to protected

        health information and the Gramm-Leach-Bliley Act, as

        amended, with respect to Personally Identifiable

        Information (PII). Physical transcripts and exhibits

        are managed under strict facility and personnel access

        controls. Electronic files of documents are stored

        in encrypted form and are transmitted in an encrypted
```

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.