IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| UNITED STATES, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) No. 1:23-cv-00108-LMB-JFA |
| | ) |
| GOOGLE LLC, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR INTERIM MODIFICATIONS TO THE DISCOVERY PLAN DUE TO GOOGLE'S NON-COMPLIANCE WITH DISCOVERY DEADLINES**

To date, Google has discovered **16 million** relevant documents that Google failed to review or produce to Plaintiffs before the fact discovery cutoff in this case. These documents are undisputedly relevant: they hit on search terms agreed upon by the parties in this litigation; they come from the files of at least 96 agreed-upon custodians; and they cover the relevant time frame in this litigation. Equally concerning, Google is not yet in a position to certify to Plaintiffs or the Court that they have now searched all of the "ingestion sites" where relevant custodial documents may reside. In any event, Plaintiffs must now prepare to review potentially several million new documents to be produced by Google after the fact discovery cutoff. Under these circumstances, there is no dispute that the discovery plan set in this case, which included a July 7, 2023 deadline for the substantial completion of document production, must be adjusted.

Google's suggestion that all this Court need do is adjust the schedule accordingly and restart the discovery clocks as if this never happened is inconsistent with both law and justice. Plaintiffs undertook extraordinary measures to comply with the Court-imposed discovery deadlines in this case. Yet now Plaintiffs are left in the position where they have met their obligations in good faith but have not received the same from Google. There is no question that

Google's discovery failure will require adjustments to the litigation schedule, but adjustments to the schedule are not sufficient to cure the prejudice Plaintiffs have suffered, nor is it a sufficient consequence for Google's conduct. For these reasons, Plaintiffs ask this Court to impose the interim modifications to the Scheduling Order, ECF No. 69, set forth in Plaintiffs' initial motion, and adopt Plaintiffs' proposed schedule, as set forth below.

## BACKGROUND

### A. Plaintiffs Now Know That At Least 16 Million Documents Were Never Processed by Google.

When Plaintiffs filed their motion for interim relief on September 8, Plaintiffs believed that five of seven "ingestion sites" that housed relevant documents were overlooked, and that the raw number of responsive documents from these five missing ingestion sites exceeded 10 million, prior to deduplication. After Plaintiffs submitted that filing, the facts only got worse. During a meet and confer on September 11, Google's counsel informed Plaintiffs that another ingestion site housing 4.7 million responsive documents had been discovered, bringing the total number of responsive documents to approximately 15 million. During subsequent meet and confers with Google's counsel, Plaintiffs asked whether counsel could provide any assurance that additional ingestion sites would not be discovered in the coming weeks or months. Counsel was unable to provide any such assurance.

Despite "near-daily communication" with Google's counsel, Plaintiffs first learned that this "mistake" impacted 16 million documents—not 15 million, as counsel represented on September 11, nor 10 million, as counsel represented on September 7—by reading Google's opposition brief. It now appears that Google has discovered another 1 million documents among their unreviewed set, that should have been but was not processed, reviewed, and produced.

2

Although Plaintiffs believed Google would be in a position, by this time, to provide Plaintiffs and the Court with the number of unique, de-duplicated documents that need to be reviewed and produced, Google has not provided that information.[1]

### B. Google's Reliance on Its Employees to Collect and Search Documents Has Been Proven Prone to Significant Errors.

During meet and confers to discuss the scope of this issue, Google's counsel acknowledged that Google personnel are charged with running agreed-upon search terms across each of the relevant ingestion sites and then providing the resulting hits to Google's e-discovery vendor, where the documents are then processed for review and ultimate production.[2] Plaintiffs have limited visibility into what precisely went wrong this time, and the Sheff Declaration raises as many questions as it answers about Google's protocols for collecting and producing relevant documents in litigation. What is clear is that a system that fails to process millions of responsive documents – indeed, the majority of documents from a majority of the relevant custodians – is not a reliable system.

Google calls what occurred "an inadvertent mistake," and attempts to distinguish this production failure from Google's production failure in the Search litigation. Opp. at 5. At this stage, Plaintiffs have not yet sought remedial sanctions, in large part because Plaintiffs have not been able to ascertain the full scope of this production failure. Plaintiffs nonetheless believe it is important for the Court to consider, in crafting appropriate interim relief, Plaintiffs' concerns that

---

[1] Applying a de-duplication rate of 66 percent (based on representations from Google's counsel) to the 16 million unreviewed documents would result in up to 5 million documents being produced after the court-ordered deadline. To understand the scale of Google's failure, Google produced a total of 2,944,169 documents during the three-year investigation phase and a total of 1,057,745 documents after the complaint was filed.

[2] This is consistent with the Sheff Declaration, submitted as Exhibit A to Google's Opposition Brief.

3

this error was not an isolated incident.  On the contrary, this significant error was made *after* Google's Ad Tech counsel was on notice that Google's in-house discovery systems were error-prone.  Plaintiffs informed Ad Tech counsel in May 2023 that the Department of Justice had been made aware of significant document collection errors, leading to the late production of over 400,000 documents in the Search litigation and Google's counsel provided certain assurances in response.  In addition to production issues that occurred in the Search litigation, public reports indicate that Google has engaged in significant discovery failures in other cases.[3]

### C. Google Waited Almost Two Weeks, during a Critical Period of Fact Discovery, Before Disclosing the Existence of a Significant Discovery Error.

Google first learned that there was a document production failure on or about August 16, 2023, but hid that fact from Plaintiffs until August 28, 2023.  During that time, Plaintiffs now understand that Google prioritized the review of materials from the impacted ingestion sites so that Google could produce previously undisclosed materials from the files of a witness scheduled to be deposed on September 4.  According to the Sheff Declaration, Google "determined on August 16 that the bulk of [the relevant deponent's] document were housed in at least one Other Ingestion Site over which the Litigation Search Terms had not been run."  Sheff Decl. ¶12.  For the next twelve days, during a critical period of fact discovery, Google said nothing to Plaintiffs or the Court.

---

[3] *See, e.g.*, "Google hit with $971,000 sanction for litigation misconduct in privacy suit," Reuters (July 18, 2022), available at https://www.reuters.com/legal/transactional/google-hit-with-971k-sanction-litigation-misconduct-privacy-suit-2022-07-15 (reporting on sanctions granted based on Google's unjustified failure to produce relevant and responsive information during discovery); "U.S. court sanctions Google in privacy case, company's second legal setback in days," Reuters (March 30, 2023), available at https://www.reuters.com/legal/us-court-sanctions-google-privacy-case-companys-second-legal-setback-days-2023-03-30/ (reporting that Google failed to comply with a deadline concerning internal Google evidence and was barred from relying on certain employee witnesses in the case).

Instead, on August 28, the same day that Google produced over 13,000 documents from the files of a witness scheduled to be deposed on September 4, Google sent the first email related to this issue to Plaintiffs. In the email, Google notified Plaintiffs that Google had "recently" discovered custodial documents that were inadvertently omitted from Google's document review. This email left out crucial facts known to Google at this time. The email said nothing about the fact that Google would be producing over 13,000 impacted documents from the files of an upcoming deponent that same day. The email said nothing about the fact that "the bulk" of this witness' materials were not processed or reviewed until mid-August 2023, and not produced until August 28. The email said nothing about the impact of this mistake on the production of documents from a large quantity of custodians.[4]

When considering appropriate interim relief, particularly relief sought with respect to the depositions of Google witnesses, Plaintiffs ask that the Court consider Google's apparent attempt to keep its production error from Plaintiffs for as long as possible, while Plaintiffs continued to push to meet the September 8 deadline.[5]

---

[4] In addition, Google argued in a brief to this Court that Plaintiffs' Motion for Partial Judgment on the Pleadings should be denied in part because of the impending close of fact discovery in the case, knowing full well that it had not disclosed to Plaintiffs or the Court the fact the discovery deadline could not possibly be met because of Google's document production failures. ECF No. 369, at 20 ("A motion for judgment on the pleadings is untimely when filed near the close of fact discovery, when resolution of the claims at issue depends on a fact-intensive inquiry.") (filed August 31, 2023).

[5] To be clear, the Court need not find that a party acted in bad faith before issuing discovery sanctions. Instead, the presence or absence of "bad faith" should be considered when determining what sanctions are appropriate. *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 727 (E.D. Va. 2001) ("[T]he plain language of [Rule 37(c)(1)] contains no requirement for bad faith or callous disregard of the discovery rules. In fact, the rule is rather harsh in that it automatically imposes the preclusion sanction unless the noncomplying party can show that there is substantial justification for the failure to make the disclosure and that the failure to disclose was harmless.").

## PLAINTIFFS' PROPOSAL FOR INTERIM REMEDIES AND MODIFICATIONS TO THE DISCOVERY SCHEDULE

As Plaintiffs made clear in their opening brief, Plaintiffs reserve the right to ask the Court for additional sanctions, or other relief, after the full scope of Google's discovery violations has been determined. At this stage, however, the remedies Plaintiffs seek fall into two categories: (1) modifications to the Court's scheduling order, and (2) limited additional discovery to mitigate prejudice caused by Google's failure to comply with discovery orders. See Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P.37(b)(2)(A).

### A. Google Should Be Ordered to Produce Substantially All Documents on or Before September 29, 2023.

As Plaintiffs explained in their initial motion, Google's inability to complete its document production by the court-mandated deadline impacts several aspects of discovery as well as the case management schedule going forward. Plaintiffs now understand that Google's representation that, as of July 7, 2023, "Google has met the Court-ordered substantial completion deadline," was wrong. Google now asks the Court for an extension through November 8, 2023 to produce documents that should have been produced on or before July 7, 2023. In other words, Google asks this Court for a nearly 18-week extension to the substantial completion deadline, yet expects Plaintiffs to be able to wrap up review and analysis of these documents and depositions of ten Google witnesses within one month. Had Google raised this proposal during one of the parties' "near-daily" communications about this issue, Plaintiffs would have explained how unworkable and prejudicial Google's proposed schedule is to Plaintiffs. But the first time Google suggested this alternative schedule was in their opposition brief.

Plaintiffs have an alternative solution. We ask that the Court order Google to complete its production of responsive documents by September 29, 2023. This amounts to a 12-week

6

extension for Google to complete their document production, which Plaintiffs believe is more than fair and appropriate under these circumstances. Plaintiffs' proposal is feasible. As Google notes in its opposition brief, Google "has retained an additional vendor and substantially increased its review team (now approximately 700 reviewers) in order to expedite review and production." Opp. at 5. If Google estimates that it will take 700 reviewers two more months to complete their review and production of documents, Plaintiffs' solution is simple: Google should hire more reviewers. Google should be ordered to use whatever contract attorneys or other resources – including resources from the no fewer than four separate law firms representing it in this matter – to complete production of these documents by September 29 – more than six weeks after Google learned of the issue and almost a month after it disclosed the issue to the Court.

  To be clear, implementing even this 12-week delay prejudices Plaintiffs' ability to bring this important case to verdict on the schedule originally set by the court and to which Plaintiffs worked assiduously to meet. Plaintiffs do not have anywhere near the kinds of resources available to Google, and Plaintiffs will need appropriate time to review and analyze this massive new production. Google's proposed schedule effectively presumes that the minute the documents are produced by Google, Plaintiffs can virtually instantaneously ingest and review them. That is not a realistic expectation. Google's proposed schedule is inequitable. It would allow Google two additional months from now (four months from the original document production deadline) to complete the document production, but only allow Plaintiffs one month to review that same volume documents, decide who to depose, issue additional written discovery, and notice and take the depositions of all ten Google deponents, with two weeks' (or more) advance notice of each deposition. Respectfully, that proposal is simply not workable, nor does it accord with the

7

equities of the situation, and the fact that Plaintiffs have already met their document discovery deadlines and Google has not.

For that reason, Plaintiffs instead propose the following schedule:

|  | Deadline Set Forth in Scheduling Order | 12-Week Adjustment | Google's Proposed Schedule[6] | **Plaintiffs' Requested Adjustment** |
|---|---|---|---|---|
| Substantial Completion of Document Production | July 7, 2023 | September 29, 2023 | November 8, 2023 | **September 29, 2023** |
| Close of Fact Discovery | September 8, 2023 | December 1, 2023 | December 8, 2023 | **November 17, 2023, extended solely for production of Google documents and depositions and other relief sought in Plaintiffs' motion** |
| Plaintiffs' Expert Reports Due | October 13, 2023 | January 5, 2024 | January 12, 2024 | **December 22, 2023** |
| Defendant's Expert Reports Due | November 17, 2023 | February 9, 2024 | February 16, 2024 | **January 23, 2024** |
| Plaintiffs' Rebuttal Expert Reports Due | December 6, 2023 | February 28, 2024 | March 8, 2024 | **February 13, 2024** |
| Expert Depositions Concluded | January 12, 2024 | April 5, 2024 | April 5, 2024 | **March 8, 2024** |
| Status Conference before Judge Brinkema | January 18, 2024 | April 11, 2024 | April 11, 2024 | **March 15, 2024 [or otherwise at the Court's discretion]** |

Plaintiffs also respectfully request that to honor, to the greatest extent possible, the original trial timeline, the Court order the parties to brief any summary judgment motions

---

[6] Opp. at 11.

immediately following the conclusion of expert discovery on March 8, 2024, and set a trial date for no later than May 28, 2024.

### B. Other Appropriate Remedies

#### 1. Coordination Period

The Court should reject Google's request to treat all discovery materials produced by Google after September 8 "as if produced by the close of the current fact discovery cut-off of September 8." Opp. At 6. While it is appropriate and necessary to allow Plaintiffs to obtain and use discovery materials produced by Google after September 8 as if they had been produced in a timely manner, Plaintiffs reserve the right to request additional sanctions regarding Google's affirmative use of these materials. *See* Fed. R. Civ. P. 37(b)(2) ("If a party . . . fails to obey an order to provide or permit discovery. . . the court where the action is pending may issue just orders" including, "prohibiting the disobedient party. . . from introducing designated matters into evidence."); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.") *See also Rabb v. Amatex Corp.,* 769 F.2d 996, 1000 (4th Cir. 1985) (affirming district court's order granting the defendants' motions for preclusion of the plaintiff's evidence and summary judgment after determining that the plaintiff had unjustifiably disregarded the pre-trial discovery deadline); *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 596 (4th Cir. 2003) ("excluding evidence only when the nondisclosing party acted in bad faith would undermine the basic purpose of Rule 37(c)(1): preventing surprise and prejudice to the opposing party.").

## 2. Number of Depositions

Plaintiffs do not disagree that, "[h]ad these documents been produced on the originally contemplated timeline, Plaintiffs would not have had cause to seek additional depositions." Opp. at 7. Millions of documents were not produced on the originally contemplated timeline. Plaintiffs made strategic decisions (including selecting which Google employees to depose) based on Google's claim that it had complied with the July 7, 2023 substantial completion deadline and therefore Plaintiffs would not be receiving millions of additional documents after this date. Plaintiffs' request for four additional depositions of Google witnesses is well-calibrated to mitigate this particular harm caused by Google's own discovery failures.

## 3. Deposition Timing and Logistics

It is well within the Court's discretion to dictate the timing and location of depositions. *See Addax Energy SA v. M/V Yasa H. Mulla*, No. 2:17CV641, 2018 WL 10470917, at *4 (E.D. Va. Nov. 13, 2018). Plaintiffs ask that the Court reject Google's suggestion that seating deponents within 10 business days is "unworkable," when it is precisely the type of relief required to ensure Google is not the cause of further delays.

## 4. Additional Party and Third-Party Discovery

Google claims that "Plaintiffs have not articulated why the production of additional documents from Google would require them to seek discovery from additional third parties." Opp. at 10. Plaintiffs explained to Google on a September 12 teleconference that, should Plaintiffs learn new, previously undisclosed information upon review of the millions of newly produced documents, it may be appropriate to seek additional third-party depositions, upon good cause shown. In the event Plaintiffs are granted leave to take additional third-party depositions, Plaintiffs disagree that "Google should be entitled to examine those third parties for one hour."

Opp. at 10. This production issue—however Google wants to characterize it—is squarely the result of Google's own errors and failure to comply with the Court's scheduling order. This failure does not "entitle" Google to additional discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that its Motion be granted.

Dated: September 14, 2023

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Deputy Chief, Civil Division<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3891<br>Facsimile: (703) 299-3983<br>Email: gmene@usa.doj.gov | /s/ Andrew N. Ferguson<br>ANDREW N. FERGUSON<br>Solicitor General<br><br>STEVEN G. POPPS<br>Deputy Attorney General<br><br>TYLER T. HENRY<br>Assistant Attorney General<br><br>Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>/s/ Kelly D. Garcia<br>KELLY D. GARCIA<br>/s/ Michael J. Freeman<br>MICHAEL J. FREEMAN<br><br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Julia.Tarver.Wood@usdoj.gov<br><br>Attorneys for the United States | Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |