1

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
                       ALEXANDRIA DIVISION

UNITED STATES, et al.,      )   Case 1:23-cv-108
                            )
            Plaintiffs,     )
                            )
     v.                     )   Alexandria, Virginia
                            )   September 15, 2023
GOOGLE LLC,                 )   9:56 a.m.
                            )
            Defendant.      )
                            )   Pages 1 - 12
```

TRANSCRIPT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PLEADINGS OR TO STRIKE AS TO GOOGLE LLC'S 10th AND 13TH AFFIRMATIVE DEFENSES OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

BEFORE THE HONORABLE LEONIE M. BRINKEMA

UNITED STATES DISTRICT COURT JUDGE

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1  APPEARANCES:

 2  FOR THE PLAINTIFFS:

 3       GERARD J. MENE, ESQUIRE
         OFFICE OF THE UNITED STATES ATTORNEY
 4       2100 Jamieson Avenue
         Alexandria, Virginia   22314
 5       (703) 299-3700

 6       JULIA TARVER WOOD, ESQUIRE
         AARON M. TEITELBAUM, ESQUIRE
 7       UNITED STATES DEPARTMENT OF JUSTICE
         ANTITRUST DIVISION
 8       450 Fifth Street, NW
         Washington, D.C.   20530
 9       (202) 894-4266

10       TYLER T. HENRY, ESQUIRE
         OFFICE OF THE ATTORNEY GENERAL
11       OFFICE OF THE SOLICITOR GENERAL
         202 North 9th Street
12       Richmond, Virginia   23219
         (804) 786-7704
13
    FOR THE DEFENDANT:
14
         CRAIG C. REILLY, ESQUIRE
15       LAW OFFICE OF CRAIG C. REILLY
         209 Madison Street, Suite 501
16       Alexandria, Virginia   22314
         (703) 549-5354
17
         ERIC J. MAHR, ESQUIRE
18       ANDREW J. EWALT, ESQUIRE
         TYLER A. GARRETT, ESQUIRE
19       FRESHFIELDS BRUCKHAUS DERINGER, LLP
         700 13th Street, NW, 10th Floor
20       Washington, D.C.   20005
         (202) 777-4500
21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2             THE COURTROOM DEPUTY:  Civil Action 23-108,
 3   United States of America v. Google, LLC.
 4             Would counsel please note their appearances
 5   for the record.
 6             MR. MENE:  Good morning, Your Honor.  Gerard
 7   Mene from the U.S. Attorney's Office.
 8             THE COURT:  Good morning.
 9             MS. WOOD:  Good morning, Your Honor.  Julia
10   Tarver Wood with the Department of Justice for the
11   United States.
12             THE COURT:  Good morning.
13             MS. WOOD:  My colleague here, Aaron
14   Teitelbaum, will be arguing today.
15             THE COURT:  All right.
16             MR. HENRY:  Good morning, Your Honor.  Tyler
17   Henry from the Attorney General's Office on behalf of
18   the plaintiff states.
19             THE COURT:  All right.  We have the plaintiff
20   team here.
21             Now for the defense.
22             MR. MAHR:  Good morning, Your Honor.  Eric
23   Mahr for Google, and with me is Scott Eisman, Tyler
24   Garrett, Andy Ewalt, and our local counsel, Mr. Craig
25   Reilly.
```

```
 1              THE COURT:  Mr. Mahr, you're going to be
 2   arguing?
 3              MR. MAHR:  I am, Your Honor.
 4              THE COURT:  As you know, the only motion I
 5   have -- I know you have motions with Judge Anderson
 6   when you leave this courtroom -- is the plaintiffs'
 7   motion for judgment as a matter of law on the two
 8   affirmative defenses, 10 and 13, or, in the
 9   alternative, motion to strike or motion for a
10   protective order, the latter of which becomes moot if I
11   grant one of the first two requests.
12              So, Mr. Teitelbaum, you're arguing.  I'll
13   hear from you.  I have obviously read your papers, so I
14   don't need a lot of repetition.
15              MR. TEITELBAUM:  Understood, Your Honor.
16   Thank you.
17              Following a multiyear investigation, the
18   United States and the 17 plaintiff states brought this
19   action against Google because the facts and the law
20   demanded that we do so.
21              Google does not allege that this case is
22   frivolous or that no reasonable prosecutor would have
23   brought this case.  Instead, Google is attempting to
24   elevate its disagreement with the United States'
25   staffing and personnel decisions to the level of a
```

1  constitutional violation, and there is no such
2  violation here.
3       Still, based on Google's dislike of the
4  assistant attorney general's involvement in this
5  matter, Google has propounded improper, invasive, and
6  unduly burdensome discovery requests on the United
7  States and others seeking to probe and second-guess
8  discretionary prosecutorial decision-making that sits
9  at the core of the Executive Branch's unique law
10 enforcement responsibilities.
11      Recognizing that a presumption of regularity
12 attaches to prosecutorial decision-making, the Supreme
13 Court in *Armstrong* and the Fourth Circuit precedent
14 that flows from that case forbid this type of discovery
15 in all but the most extraordinary circumstances.
16      And despite having had an opportunity both in
17 its answer and again in its 30-page response brief,
18 Google has come nowhere close to articulating a viable
19 legal theory either of selective prosecution or of a
20 due process violation.
21      The deficiencies in Google's pleading and its
22 response brief show that the 10th and 13th affirmative
23 defenses fail as a matter of law, and they should be
24 dismissed or stricken without leave to amend.
25      THE COURT:  All right.  Thank you.  Short and

1  succinct, excellent.
2              MR. TEITELBAUM:  Thank you, Your Honor.
3              THE COURT:  Mr. Mahr.
4              MR. MAHR:  Good morning again, Your Honor.
5              From the outset of this case, the central
6  theory of Google's defense has been that this is a case
7  brought on behalf of Google's rivals, not to protect
8  consumers but to protect competitors, rather the
9  competition.
10             Also from the outset of this case, Google has
11 raised concerns that AAG Kanter's lead role in bringing
12 this case deprives Google of its basic right to a fair
13 and just --
14             THE COURT:  But doesn't the record show that
15 the Department of Justice began this investigation back
16 in August of 2019 under the Trump administration and
17 under the a different attorney general?
18             MR. MAHR:  It did begin an investigation but
19 bringing -- investigating is different than bringing a
20 case.
21             THE COURT:  As I read your Affirmative
22 Defense 13, it says you're criticizing both starting
23 the investigation, as well as the prosecution of the
24 case itself.  And you can't argue on this record that
25 the investigation was somehow started by Mr. Kanter.

1          MR. MAHR:  Not at all.  We're focused on the
2   bringing of the case itself.  The Biden administration
3   sat for two years without bringing any case.  The
4   Department of Justice sat for two years without
5   bringing any case after 30 or so other cases had been
6   brought.  And then within 11 weeks or so of Mr. Kanter
7   becoming -- after one year, instead of two under the
8   Biden pledge, to act on this case, they bring a case.
9   They pursue a jury and damages that they did not
10  investigate at all during this three-plus year
11  investigation they had.  And they file a complaint that
12  lines up very closely with all of the allegations that
13  Mr. Kanter both on behalf of his clients in private
14  practice and on behalf of himself as a complainant in
15  this case.
16         I think that's really the extraordinary fact
17  here, is that the little discovery we've been able to
18  pry out of the Department of Justice to date through
19  the investigative file reveals that Mr. Kanter along
20  with the DOJ's chief economist, who at that point was
21  not the chief economist, appeared before the Antitrust
22  Division in his words "on their own behalf," not for
23  any specific client,to lobby the Department of Justice
24  to bring the very case that he then filed within 11
25  weeks of his becoming the lead lawyer and

1  decision-maker in this case.  We think that's an
2  extraordinary fact.  I've never seen that anywhere
3  else.
4           And, in fact, I think, you know, there's an
5  effort in the briefs to say, "Oh, well, the career
6  officials all signed onto it."  I don't think that's
7  the answer:  When the boss comes in, the assistant
8  attorney general says, "We're filing this case even
9  though it hadn't been filed for two years before by the
10 career staff."  Mr. Kanter shouldn't be allowed to hide
11 behind the career staff when he directed them to do
12 that.
13          You know, I've had the pleasure and privilege
14 of working at the Department of Justice myself.  I've
15 been to trial with the career staff.  They hold
16 themselves to the highest standard that I can imagine.
17 What I can't imagine is anybody -- any trial attorney
18 or any AUSA thinking that it would be okay for them to
19 handle a matter where they had previously in private
20 practice handled a complainant in that matter.
21          That's where all the cases about due process
22 go.  It's a disinterested prosecutor that we're --
23          THE COURT:  Well, I might agree with you if
24 Mr. Kanter were the sole prosecutor on this case.  But
25 as pointed out in the plaintiffs' papers, you've got

1  multiple attorneys general from various states.  And I
2  note for the record that these are both from the
3  Republican and Democratic side of the political
4  spectrum.  You have the Virginia attorney general, who
5  is a Republican.  You have Democratic attorney generals
6  from some of the other states.
7           This is not the kind of horrendous case that
8  you're positing where an individual prosecutor or
9  individual government lawyer with a vendetta against
10 your client has brought an enforcement action.  This is
11 an enforcement action that is being brought by the
12 entire Department of Justice.  It has been ongoing for
13 several years.
14          I, frankly, find that this really -- these
15 two affirmative defenses, in my view -- and I've looked
16 at this carefully because it's serious charges that
17 you've raised.  Essentially, it's a red herring
18 defense.
19          Google needs to focus on the essential issue
20 of this case, which is whether or not the way it has
21 structured this advertising series of platforms is, you
22 know, anticompetitive.  That's the case.
23          I understand as an advocate you're trying to
24 do the best you can for your client.  In my view, this
25 is a mistake.  It diverts resources, time and energy

1   that should be focused on the core issues in this case
2   and not on what are essentially *ad hominems*.
3           I am going to grant the plaintiffs' motion
4   and enter a judgment as to Counts 10 and -- not counts,
5   I'm sorry -- Affirmative Defenses 10 and 13.  They will
6   be dismissed.
7           That should alleviate for some of the third
8   parties, who I think also have expressed an interest in
9   this case -- that should to some degree anyway relieve
10  some of the discovery issues that have arisen.
11          I don't know the degree to which this will
12  impact your arguments before Judge Anderson at 11:00,
13  but you need to get this case more focused.  There are
14  huge discovery problems, as I understand it, that are
15  percolating, and getting these issues out of the case
16  should reduce a significant number of those.  That is
17  my decision.
18          Thank you.
19          MR. MAHR:  Your Honor, if I may, may I
20  clarify?
21          THE COURT:  Yes.
22          MR. MAHR:  I understand the ruling on the two
23  affirmative defenses.  We are still seeking discovery
24  on these topics quite apart from the affirmative
25  defense with especially the third parties going to

1  their motivation, their bias.  They are the third-party
2  complainants on whom the Department of Justice has
3  based its complaint.
4            I think we're entitled to ask them:  How long
5  have you been lobbying the government to bring this
6  case?  What benefits will you bring this case?  Those
7  kind of motivations and biases go to the heart of their
8  credibility as witnesses in this case and the
9  government's credibility in bringing this case.  So we
10 would ask leave to continue that discovery.
11           THE COURT:  I am going to let Judge Anderson
12 take a look at that.  He's closer to your day-to-day
13 discovery issues than we are.
14           Certainly, to the extent that any competitor
15 is envisioned to be a witness in the case, you have a
16 right to probe aspects of that witness' possible bias
17 or prejudice.  But just a freewheeling approach to that
18 I'm not going to permit.
19           All right.  Now, the only other thing I will
20 say is I am concerned about whether it would be
21 appropriate for Mr. Kanter to stay out of this case.  I
22 really -- you know, as a judge -- you never want the
23 judge to become an issue in a piece of litigation.  And
24 the same way when I was a prosecutor.  I did not want
25 the prosecutor or the U.S. Attorney's Office to become

1  an issue in an otherwise good prosecution.

2             I think the Department of Justice needs to
3  think very carefully and use some wisdom and continue,
4  as I understand it, the current recusal of Mr. Kanter.
5  I'm not ordering it, but I think it's something that
6  wise counsel should think about.

7             All right.  So that's my ruling for today.
8  Thank you.

9             MR. MAHR:  Thank you, Your Honor.

10            THE COURT:  We'll recess court for today.

11            ------------------------------------
                        Time:  10:08 a.m.

        I certify that the foregoing is a true and
     accurate transcription of my stenographic notes.

                                        /s/
                              Rhonda F. Montgomery, CCR, RPR