# Appendix

## APPENDIX A

### REQUESTS FOR ADMISSIONS

**REQUEST NO. 1:**  Admit that, during the Damages Period, the Federal Agency Advertisers did not purchase "open web display advertising" directly from Google.

**SPECIFIC OBJECTIONS:**  The United States objects to this request on the grounds that it requires a legal analysis of Google's term "directly." The United States further objects to this request as vague and ambiguous, as the difference between "purchase" as used in Request No. 1 and "pay" as used in Request No. 2 is neither specified nor clear.

**RESPONSE:**  As this request improperly calls for a legal conclusion, and Google has provided no clarity regarding how "purchase . . . directly" differs from a legal assessment of what constitutes a "direct purchaser" under antitrust law, the United States stands on its objections. Furthermore, the United States objects to this request as vague and ambiguous with respect to the phrase "purchase 'open web display advertising' directly from Google," as Google is not a publisher of "open web display advertising" as defined in the Complaint.

**AMENDED RESPONSE:**  Subject to and without waiving the foregoing objections, and based on the clarifications in Google's July 11, 2023 letter regarding the use of the Oxford English Dictionary's definitions of the words "purchase" and "directly," the United States responds as follows:

*First,* the United States is unaware of the extent to which Google sells "open web display advertising" inventory on its owned-and-operated websites but, to the extent it does, and to the extent the FAAs purchased such display advertising inventory on Google's owned-and-operated websites, the FAA's practice is for the FAAs' Agencies to purchase such advertising from Google on the FAAs' behalf and for the FAA to fully reimburse the FAAs' Agencies for those purchases. Accordingly, and subject to and without waiving the foregoing objections, the United States admits that it was the FAA's practice for the FAA's Agencies to purchase "open web display advertising" from Google as agents of the FAA, pursuant to a contractual relationship.

*Second*, to the extent that this Request For Admission No. 1 sweeps beyond the purchase of "open web display advertising" sold by Google on its owned-and-operated websites, the United States does not believe, based on the information currently known to it, that Google is a publisher of "open web display advertising." Thus, according to the United States' current understanding of the facts, it would not be possible for anyone to purchase "open web display advertising" from Google outside of its owned-and-operated websites. On that basis alone, the United States admits that Federal Agency Advertisers did not purchase "open web display advertising" directly from Google during the Damages Period, outside of the context of Google's owned-and-operated websites. For the avoidance of doubt, whether a Federal Agency Advertiser purchased "open web display advertising" directly from Google, subject to the Oxford English Dictionary definitions applicable for the purpose of this response, is a wholly distinct question from whether the Federal Agency Advertisers constitute direct purchasers of open web display advertising services under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) and its progeny. As used in this response to this Request

for Admission, the term "open web display advertising" does not include ad tech services that facilitate the purchase of such advertising from publishers.

*

**REQUEST NO. 2:** Admit that, during the Damages Period, the Federal Agency Advertisers did not pay Google directly for "open web display advertising."

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of Google's term "directly." The United States further objects to this request as vague and ambiguous, as the difference between "purchase" as used in Request No. 1 and "pay" as used in Request No. 2 is neither specified nor clear.

**RESPONSE:** As this request improperly calls for a legal conclusion, and Google has provided no clarity regarding how "pay" differs from "purchase" nor how "pay . . . directly" differs from a legal assessment of what constitutes a "direct purchaser" under antitrust law, the United States stands on its objections. Furthermore, the United States objects to this request as vague and ambiguous with respect to the phrase "purchase 'open web display advertising' directly from Google," as Google is not a publisher of "open web display advertising" as defined in the Complaint.

**AMENDED RESPONSE:** The United States is unaware of the extent to which Google sells "open web display advertising" inventory on its owned-and-operated websites but, to the extent it does, and to the extent the FAAs purchased such display advertising inventory on Google's owned-and-operated websites, the FAA's practice is for the FAAs' Agencies to pay Google for any such advertising purchased on the FAAs' behalf and for the FAA to fully reimburse the FAAs' Agencies for those purchases. Accordingly, and subject to and without waiving the foregoing objections, in particular that the request calls for a legal conclusion, the United States, based on the clarification in Google's July 11 Letter, admits that all costs or obligations to pay Google for the purchase of "open web display advertising," are borne by the FAAs, including the fees charged by any ad tech providers, and those costs or obligations are either reimbursed or paid in full by the FAAs even though the FAAs' Agencies may make the initial payment on behalf of the FAAs.

*

**REQUEST NO. 3:** Admit that during the Damages Period, the Federal Agency Advertisers paid Agencies for the use of Ad Tech Products offered by Google.

**SPECIFIC OBJECTIONS:** The United States objects to the phrase "paid for the use of" as vague and ambiguous. Subject to those objections, the United States will respond to this request.

**RESPONSE:** Subject to and without waiving the foregoing objections, the United States denies that the FAAs paid Agencies for the use of Ad Tech Products. The FAAs paid Agencies to develop paid media plans, which the FAAs approved, to meet the FAAs' advertising needs and to execute paid media buys on the FAAs' behalf pursuant to those media plans. The costs of any executed

paid media buys, including the fees charged by any ad tech providers, are borne exclusively by the FAAs.

**AMENDED RESPONSE:** The United States notes that the FAAs' Agencies do not sell ad tech services but that these Agencies may purchase "open web display advertising" on behalf of the FAAs through ad tech tools which impose fees on the FAA's successful bids for advertising purchases. Such purchases are made pursuant to paid media plans, which the Agencies develop and the FAAs approve, to meet the FAAs' advertising needs. The costs of any executed paid media buys, including the fees charged by any ad tech providers, are borne exclusively by the FAAs. Accordingly, and subject to and without waiving the foregoing objections, the United States, based on the definition of "pay" Google provided in its July 11 Letter, denies that the FAAs paid Agencies "for the use of" Ad Tech Products because the Agencies do not sell ad tech services and admits the FAAs paid Agencies for the costs incurred in connection with their use of Ad Tech Products on behalf of the FAAs.

\*

**REQUEST NO. 4:** Admit that, during the Damages Period, the Federal Agency Advertisers did not purchase ad tech services (as that term is used in Your Amended Answer to Google's Request For Admission No. 1) that facilitate the purchase of advertising from publishers directly from Google.

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of Google's term "directly." The United States also objects to Google's purported definition of "ad tech services" by reference to Plaintiff's Amended Answer to Google's First Request for Admission because the United States did not define the term and limited its use to the context of its response to Google's Request for Admission No. 1. The United States further objects to the phrase "facilitate the purchase" because it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or response and would require the United States to speculate as to its meaning. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

\*

**REQUEST NO. 5:** Admit that, during the Damages Period, the Federal Agency Advertisers did not pay Google directly for the use of DV360.

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of Google's term "directly." The United States further objects to the phrase "for the use of" because it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or response and would require the United States to speculate as to its meaning. The United States also objects to the extent this request is duplicative of Request No. 8. Subject to those objections, the United States will respond to this request.

**RESPONSE:** *Due September 8, 2023*

*

**REQUEST NO. 6:** Admit that, during the Damages Period, the Federal Agency Advertisers did not pay Google directly for the use of Google Ads (formerly known as Adwords)

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of  Google's term "directly." The United States further objects to the phrase "for the use of" because  it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or  response and would require the United States to speculate as to its meaning. Subject to those  objections, the United States will respond to this request

**RESPONSE:** *Due September 8, 2023*

*

**REQUEST NO. 7:** Admit that, during the Damages Period, the Federal Agency Advertisers did not pay Google directly for the use of Google Display Network.

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of  Google's term "directly." The United States further objects to the phrase "for the use of" because  it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or  response and would require the United States to speculate as to its meaning. The United States  also objects to the extent this request is duplicative of Request No. 6. Subject to those objections, the United States will respond to this request.

**RESPONSE:** *Due September 8, 2023*

*

**REQUEST NO. 8:** Admit that, during the Damages Period, the Federal Agency Advertisers did not pay Google directly for the use of Google Marketing Platform.

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of  Google's term "directly." The United States further objects to the phrase "for the use of" because  it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or  response and would require the United States to speculate as to its meaning. The United States  also objects to the extent this request is duplicative of Request No. 5. Subject to those objections,  the United States will respond to this request.

**RESPONSE:** *Due September 8, 2023*

*

**REQUEST NO. 9:** Admit that, during the Damages Period, the Federal Agency Advertisers did not pay Google directly for the use of Campaign Manager.

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of  Google's term "directly." The United States further objects to the phrase "for the use of" because  it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or  response and would require the United States to speculate as to its meaning. The United States  also objects to the extent this request is duplicative of Request No. 8. Subject to those objections,  the United States will respond to this request

**RESPONSE:** *Due September 8, 2023*

*

**REQUEST NO. 10:** Admit that, during the Damages Period, the Federal Agency Advertisers  did not pay Google directly for the use of Google Ad Manager (formerly known as DoubleClick  for Publishers or DFP and DoubleClick Ad Exchange or AdX).

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds  that it requires a legal analysis of  Google's term "directly." The United States further objects  to the phrase "for the use of" because  it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or  response and would require the United States to speculate as to its meaning. Subject to those  objections, the United States will respond to this request.

**RESPONSE:** *Due September 8, 2023*

*

**REQUEST NO. 11:** Admit that, during the Damages Period, the Federal Agency Advertisers  did not pay Google directly for the use of AdSense.

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds  that it requires a legal analysis of  Google's term "directly." The United States further objects to the phrase "for the use of" because  it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or  response and would require the United States to speculate as to its meaning. Subject to those  objections, the United States will respond to this request

**RESPONSE:** *Due September 8, 2023*

*

**REQUEST NO. 12:** Admit that, during the Damages Period, the Federal Agency Advertisers  did not pay Google directly for the use of AdMob.

**SPECIFIC OBJECTIONS:** The United States objects to this request on the grounds that it requires a legal analysis of Google's term "directly." The United States further objects to the phrase

5

"for the use of" because it is vague, ambiguous, and confusing as not to be susceptible to a reasoned interpretation or response and would require the United States to speculate as to its meaning. The United States also objects to this request to the extent it seeks irrelevant information, regarding products not implicated by the claims in the Amended Complaint. Subject to those objections, the United States will respond to this request.

**RESPONSE:** *Due September 8, 2023*

## INTERROGATORIES

**INTERROGATORY NO. 4:** Separately for each agency and department of the United States that is a "buyer[] of open web display advertising" (as alleged in Paragraph 341 of Your complaint) or has used Ad Tech Products or Display Advertising during the Relevant Period, provide the following information about each Ad Tech Product (whether provided by Google or any other Ad Tech Provider) that the agency or department used: a. the type of Ad Tech Product used; b. the Ad Tech Provider; c. the amount of ad spend by month; d. the amount of Fees or Take Rate by month; e. the dates during which the Ad Tech Product was used; f. all reasons for using and/or switching from one Ad Tech Product to another; and g. if applicable, all reasons for ceasing use of the Ad Tech Product.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds stated above in paragraph 1. This interrogatory contains seven discrete subparts, and the United States will provide a response to this interrogatory only subject to Google's agreement that it be counted as seven interrogatories. The United States further objects to this interrogatory on the grounds stated above in paragraph 2. The United States also objects to this interrogatory on the grounds that it seeks information not in the possession, custody, or control of the Federal Agency Advertisers. The United States further objects to this interrogatory as seeking information that does not exist in a readily accessible form within the files of the Federal Agency Advertisers or that may be obtained through less burdensome means such as production of documents, including documents from advertising agencies contracted to provide advertising services and expertise to the Federal Agency Advertisers. Subject to those objections, the United States will provide a response to this interrogatory limited to the enumerated Federal Agency Advertisers and the non-privileged information within their possession, custody, or control.

**RESPONSE:** Subject to the foregoing objections, the United States responds to this interrogatory as follows: Information responsive to Interrogatory No. 4 with respect to the Air Force is provided in Appendix A to these Responses. Information responsive to Interrogatory No. 4 with respect to the Army is provided in Appendix B to these Responses. Information responsive to Interrogatory No. 4 with respect to the Navy is provided in Appendix C to these Responses. Information responsive to Interrogatory No. 4 with respect to the Census Bureau is provided in Appendix D to these Responses. Information responsive to Interrogatory No. 4 with respect to CMS is provided in Appendix E to these Responses. Information responsive to Interrogatory No. 4 with respect to NHTSA is provided in Appendix F to these Responses. Information responsive to Interrogatory No. 4 with respect to USPS is provided in Appendix G to these Responses. Information responsive to Interrogatory No. 4 with respect to VA is provided in Appendix H to these Responses. The United States' investigation is on-going, and the United States will supplement this response as it identifies additional responsive information.

**RESPONSE APPENDIX A (AIR FORCE):** Subject to and without waiving the foregoing objections, the Air Force responds as follows. The Air Force relies on its ad agency GSD&M to manage and operate various ad tech platforms to purchase digital media on the Air Force's behalf. To the extent the Air Force has information responsive to these interrogatories, that information would be found in reports GSD&M provides to the Air Force. Plaintiff will supplement this

response as necessary to identify documents responsive to these interrogatories once those documents have been produced.

**RESPONSE APPENDIX B (ARMY):** Subject to and without waiving the foregoing objections, the Army responds as follows. The Army relies on its ad agency to manage and operate various ad tech platforms to purchase digital media on the Army's behalf, including but not limited to DV360. To the extent the Army has information responsive to these interrogatories, that information would be found in reports its agencies provide to the Army. Plaintiff will supplement this response as necessary to identify documents responsive to these interrogatories once those documents have been produced

**RESPONSE APPENDIX C (NAVY):** Subject to and without waiving the foregoing objections, the Navy responds as follows. The Navy relies on its ad agency VMLY&R to manage and operate various ad tech platforms to purchase digital media on the Navy's behalf. To the extent the Navy has information responsive to these interrogatories, that information would be found in reports VMLY&R provides to the Navy. Plaintiff will supplement this response as necessary to identify documents responsive to these interrogatories once those documents have been produced.

**RESPONSE APPENDIX D (CENSUS)**: Subject to and without waiving the foregoing objections, the Census Bureau responds as follows. The Census Bureau relies on its ad agencies' expertise to manage and operate various ad tech platforms in the process of purchasing digital advertising on the Census Bureau's behalf. To the extent the Census Bureau has information responsive to these interrogatories, that information would be found in reports its ad agencies provided to the Census Bureau. Plaintiff will supplement this response as necessary to identify documents responsive to these interrogatories once those documents have been produced.

**RESPONSE APPENDIX E (CMS):** Subject to and without waiving the foregoing objections, CMS responds as follows. CMS relies on its ad agencies' expertise to manage and operate various ad tech platforms to purchase digital media on CMS's behalf, including but not limited to Google Display Network, Google DV360, and The Trade Desk. To the extent that CMS has information responsive to these interrogatories, that information would be found in reports that CMS's ad agencies provide to CMS. Plaintiff will supplement this response as necessary to identify documents responsive to these interrogatories once those documents have been produced.

**RESPONSE APPENDIX F (NHTSA):** Subject to and without waiving the foregoing objections, NHTSA responds as follows. NHTSA relies on its ad agencies' expertise to manage and operate various ad tech providers to purchase digital media on NHTSA's behalf. To the extent NHTSA has information responsive to these interrogatories, that information would be found in reports its ad agencies provide to NHTSA. Plaintiff will supplement this response as necessary to identify documents responsive to these interrogatories once those documents have been produced.

**RESPONSE APPENDIX G (USPS)**: Subject to and without waiving the foregoing objections, USPS responds as follows. USPS relies on its ad agency Universal McCann's expertise to manage and operate various ad tech platforms to purchase digital media on USPS's behalf, including but not limited to DV360, Google Search Ads 360, Google Ads, and The Trade Desk. To the extent USPS has information responsive to these interrogatories, that information would be found in

reports Universal McCann provides to USPS. Plaintiff will supplement this response as necessary to identify documents responsive to these interrogatories once those documents have been produced.

**RESPONSE APPENDIX H (VA):** Subject to and without waiving the foregoing objections, VA responds as follows. VA relies on its ad agencies' expertise to manage and operate various ad tech platforms to purchase digital media on VA's behalf. To the extent VA has information responsive to these interrogatories, that information would be found in reports its ad agencies provide to VA. Plaintiff will supplement this response as necessary to identify documents responsive to these interrogatories once those documents have been produced.

**AMENDED RESPONSE (AIR FORCE):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Moreover, documents responsive to this request have been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 4 have been produced by the Air Force, and include those found in the following Bates range: USAF-ADS0000771208 – USAF-ADS-0000771835. The United States will continue to supplement this response as it becomes aware of additional documents.

**AMENDED RESPONSE (ARMY):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Moreover, documents from Google's files indicate that the information requested in Interrogatory No. 4 is within Google's possession, custody, or control. For example, GOOG-DOJ-11544786, notes that the ███████████████████████████████████████████████████████████████████████ Documents produced by the Army indicate the same. *See, e.g.,* ARMY-ADS-0000261527. Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 4 can be found in the following Bates range: ARMY-ADS-0000504016 – ARMY-ADS-0000541667. The United States will continue to supplement this response as it becomes aware of additional documents.

**AMENDED RESPONSE (NAVY):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 4 have been produced by the Navy, including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 3,566 bates-stamped documents from Navy's production in Appendix A.*

**AMENDED RESPONSE (CENSUS):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Moreover, documents from the Federal Agency Advertisers, including communications with Google employees, indicate that the information requested in Interrogatory No. 4 is within the possession, custody, or control of Google. For example, CMS-ADS-0000077060 is an email from Google to CMS, indicating that the Census Bureau ███████████████████ ███████████████████████████████████████████ Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 4 have been produced by the Census Bureau, including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 41 bates-stamped documents from Census's production in Appendix A.*

**AMENDED RESPONSE (CMS):**[1] For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 4 have been produced by CMS, including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 529 bates-stamped documents from Census's production in Appendix A.*

**AMENDED RESPONSE (NHTSA):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Moreover, documents responsive to this request have been produced by the Federal Agency Advertisers' advertising agencies and by Google itself. Nevertheless, documents containing information responsive to Interrogatory No. 4 have been produced by NHTSA, including those in the following Bates ranges: NHTSA-ADS-0000726216–NHTSA-ADS-0000750379; NHTSA-ADS-0000284419–NHTSA-ADS-0000300953; and NHTSA-ADS-0000718040–NHTSA-ADS-0000723075. The United States will continue to supplement this response as it becomes aware of additional documents.

---

[1] Plaintiff served a supplemental response on behalf of CMS on August 16, 2023 and then another amended supplemental response on August 17, 2023. For the sake of simplicity, only Plaintiff's August 17, 2023 is reproduced in this appendix.

**AMENDED RESPONSE (USPS):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Moreover, documents from the Federal Agency Advertisers, including communications with Google employees, indicate that the information requested in Interrogatory No. 4 is within the possession, custody, or control of Google. For example, USPS-ADS-0000650684 is a document from Google to USPS, indicating that ███████████████████████████████████████████ ███████████ Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 4 have been produced by USPS, including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 105 bates-stamped documents from USPS's production in Appendix A.*

**AMENDED RESPONSE (VA):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 4. Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 4 have been produced by the V.A., including those listed in Appendix A. The United States also incorporates its supplemental response to Interrogatory No. 17 served on August 28, 2023. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 470 bates-stamped documents from the VA's production in Appendix A.*

\*

**INTERROGATORY NO. 9:** Provide a computation of the damages You seek in Paragraph 342(5) of Your complaint, including the names of and key contacts at each agency or department of the United States to which the damages computation applies, and the date range for the computation.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds that it is premature, as discovery has just begun and the United States is still investigating its claims. This interrogatory is also premature because the United States' damages computation will be the subject of expert discovery. The United States will provide its expert disclosures in accordance with the schedule ordered by the Court. The United States also objects to this interrogatory on the grounds that the phrase "key contacts" is vague and ambiguous. Subject to those objections, the United States will provide a response to this interrogatory, including providing the names of individuals with relevant knowledge at each of the Federal Agency Advertisers

**RESPONSE:** Subject to the foregoing objections, the United States responds to this interrogatory as follows: Information responsive to Interrogatory No. 9 with respect to the Air Force is provided in Appendix A to these Responses. Information responsive to Interrogatory No. 9 with respect to the Army is provided in Appendix B to these Responses. Information responsive to Interrogatory No. 9 with respect to the Navy is provided in Appendix C to these Responses. Information responsive to Interrogatory No. 9 with respect to the Census Bureau is provided in Appendix D to these Responses. Information responsive to Interrogatory No. 9 with respect to CMS is provided in Appendix E to these Responses. Information responsive to Interrogatory No. 9 with respect to NHTSA is provided in Appendix F to these Responses. Information responsive to Interrogatory No. 9 with respect to USPS is provided in Appendix G to these Responses. Information responsive to Interrogatory No. 9 with respect to VA is provided in Appendix H to these Responses. The United States' investigation is on-going, and the United States will supplement this response as it identifies additional responsive information.

**RESPONSE APPENDIX A (AIR FORCE):** Subject to and without waiving the foregoing objections, the Air Force responds as follows. Below is a table of the names and email addresses of individuals with relevant knowledge at the Air Force.

| Name | Email | |
|------|-------|---|
| Barry Dickey | | |
| Robbi Hatch | | |
| Rico Lane | | |
| Clay Hawkins | | |
| Tiffany Taylor | | |
| Andrew Charvat | | |

**RESPONSE APPENDIX B (ARMY):** Subject to and without waiving the foregoing objections, the Army responds as follows. Below is a table of the names and email addresses of the names of individuals with relevant knowledge at the Army.

| Name | Email | |
|------|-------|---|
| Colonel Matt Weinrich | | |
| Lieutenant Colonel Lennox Morris | | |
| Colonel John Homing | | |
| Major Austin Dziengelewski | | |
| Glenna Wood | | |
| Heather Green-Trueblood | | |
| Richard Stanforth | | |
| Major Daniel Flynn | | |
| Major LeeAnn Craig | | |

**RESPONSE APPENDIX C (NAVY):** Subject to and without waiving the foregoing objections, the Navy responds as follows. Below is a table of the names and email addresses of individuals with relevant knowledge at the Navy.

| Name | Email |
|------|-------|
| Allen Owens | |

| | |
|---|---|
| Dean Stewart-Curry | |
| Cheryl Aimes-Tillman | |
| Adelina Lozzi | |
| Kevin Clauson | |
| Bridget Blaney | |

**RESPONSE APPENDIX D (CENSUS)**: Subject to and without waiving the foregoing objections, the Census Bureau responds as follows. Below is a table of the names and email addresses of the names of individuals with relevant knowledge at the Census Bureau.

| Name | Email | |
|---|---|---|
| Kendall Johnson | | |
| Stacey Jordan | | |
| James Cole | | |

**RESPONSE APPENDIX E (CMS)**: Subject to and without waiving the foregoing objections, CMS responds as follows. Below is a table of the names and email addresses of individuals with relevant knowledge at CMS.

| Name | Email | |
|---|---|---|
| Chris Koepke | | |
| Barbara Johanson | | |
| Laura Salemo | | |
| Seth Edlavitch | | |
| Natalie Barg | | |
| Antoinette Bramlett | | |
| Jessica Beauchemin | | |
| Maya Owens | | |
| Arlene Jimenez | | |
| Cameron Smith | | |
| Maria (Jimena) Abreu | | |
| Amy Bedsaul | | |
| Heather Robertson | | |
| Jennifer Davis | | |
| Danie Ridgway | | |
| Debbie Lester | | |
| Reagan Holmes | | |
| Nicole Hoey | | |
| Megan Anuszewski | | |
| Shelly Ray | | |
| Deanna Kuehn | | |
| Debra Hoffman | | |
| Joshua Czerski | | |
| Todd Vanderdonck | | |
| Caitlin Koterba | | |
| Kristy Hollobaugh | | |
| Andrea Onniston | | |

**RESPONSE APPENDIX F (NHTSA):** Subject to and without waiving the foregoing objections, NHTSA responds as follows. Below is a table of the names and email addresses of the names of individuals with relevant knowledge at NHTSA.

| Name | Email | |
|---|---|---|
| Julie Vallese | | |
| Susan McMeen | | |
| Elizabeth Nilsson | | |
| Kil-Jae Hong | | |
| Mike Joyce | | |
| Lori Millen | | |
| Ross Jeffries | | |
| Sherese Gray | | |
| David Larson | | |
| Reba Dyer | | |
| Danna Brooks | | |

**RESPONSE APPENDIX G (USPS):** Subject to and without waiving the foregoing objections, USPS responds as follows. Below is a table of the names and email addresses of individuals with relevant knowledge at USPS.

| Name | Email | |
|---|---|---|
| Christopher Karpenko | | |
| Michael Bottenberg | | |
| Steve Chang | | |
| Shalene Starr | | |
| Kimberly Workinger | | |

**RESPONSE APPENDIX H (VA):** Subject to and without waiving the foregoing objections, VA responds as follows. Below is a table of the names and email addresses of individuals with relevant knowledge at VA.

| Name | Email | |
|---|---|---|
| Michael A. Taylor | | |
| Dr. Susan Strickland | | |
| Dr. Todd Burnett | | |
| Koby South | | |
| Dr. Barbara Van Dahlen | | |
| Juliana Hallows | | |
| Lyndon Johnson | | |
| Darren Sherrard | | |
| Lauren Grover | | |
| Rhett Herrera | | |
| Eric Shuping | | |
| Shurhonda Love | | |
| Christina Graham | | |

| Walter Hynson | ███ |
| Marc Bowen | ███ |
| Kurt Tany | ███ |
| Anthony Zibolski | ███ |
| Dante Ruiz | ███ |
| Lindi Sylvester | ███ |
| Carey (Micah) Kauzlarich | ███ |
| Adeitra Jimmison | ███ |
| Todd Snyder | ███ |
| Corey Mann | ███ |

\*

**INTERROGATORY NO. 14:** Separately for each Federal Agency Advertiser, identify all purchases of "open web display advertising" that were purchased by the Federal Agency Advertiser directly from Google during the Damages Period.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory as unduly burdensome as it seeks information within the possession, custody, or control of Google. The United States further objects to this interrogatory on the grounds that it requires a legal analysis of Google's term "directly." The United States further objects to this interrogatory as premature, as relevant discovery is still ongoing. In addition, the United States objects to this interrogatory as seeking information that does not exist in a readily accessible form within the files of the Federal Agency Advertisers or that may be obtained through less burdensome means, such as from advertising agencies contracted to provide advertising services and expertise to the Federal Agency Advertisers. Subject to those objections, the United States will make reasonable good faith efforts to identify purchases of "open web display advertising" purchased by the Federal Agency Advertisers from Google during the Damages Period.

**RESPONSE:** Subject to the foregoing objections, the United States responds to this interrogatory as follows:  The Federal Agency Advertisers (Air Force, Army, Navy, Census Bureau, CMS, NHTSA, USPS, and the VA, collectively "FAAs") pay fees for ad tech services provided by Google that facilitate the FAAs' purchases of open web display advertising from publishers for the advertising campaigns listed in the United States' response to Interrogatory No. 15.

\*

**INTERROGATORY NO. 17:** For each Campaign identified in response to Interrogatory No. 15, identify all amounts paid by (a) the Federal Agency Advertiser to Google or (b) by the Federal Agency Advertiser to any Agency in connection with that Campaign.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds stated above in paragraph 1. This interrogatory contains two discrete subparts, and the United States will provide a response to this interrogatory only subject to Google's agreement that it be counted as two interrogatories. The United States also objects to this interrogatory as seeking premature disclosure of expert opinions or testimony in this case, the grounds stated above in paragraph 3.

The United States further objects to this interrogatory as unduly burdensome as it seeks information within the possession, custody, or control of Google. The United States also objects to this interrogatory on the grounds that it seeks information not in the possession, custody, or control of the Federal Agency Advertisers. The United States further objects to this interrogatory as seeking information that does not exist in a readily accessible form within the files of the Federal Agency Advertisers or that may be obtained through less burdensome means, such as from advertising agencies contracted to provide advertising services and expertise to the Federal Agency Advertisers. Subject to those objections, the United States will provide its expert disclosures in accordance with the schedule ordered by the Court.

**RESPONSE:** Subject to the foregoing objections, the United States responds to this interrogatory as follows: The United States' investigation is on-going, and the United States will supplement this response as it identifies additional responsive information.

**AMENDED RESPONSE (AIR FORCE):** The United States incorporates its supplemental response to Interrogatory No. 4, served to Google on August 25, 2023, as part of the United States' Second Supplemental Responses to Google's First Set of Interrogatories to the United States, for its supplemental response to this Interrogatory No. 17. The United States will continue to supplement this response as it becomes aware of additional documents.

**AMENDED RESPONSE (ARMY):** The United States incorporates its supplemental response to Interrogatory No. 4, served to Google on August 15, 2023, as part of the United States' Second Supplemental Responses to Google's First Set of Interrogatories to the United States, for its supplemental response to this Interrogatory No. 17. The United States will continue to supplement this response as it becomes aware of additional documents.

**AMENDED RESPONSE (NAVY):** The United States incorporates its supplemental response to Interrogatory No. 4, served to Google on August 10, 2023, as part of the United States' Second Supplemental Responses to Google's First Set of Interrogatories to the United States, for its supplemental response to this Interrogatory No. 17. Additional documents containing information responsive to Interrogatory No. 17 have been produced by the Navy, including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 3,439 bates-stamped documents from Navy's production in Appendix A.*

**AMENDED RESPONSE (CENSUS):** The United States incorporates its supplemental response to Interrogatory No. 4, served to Google on August 3, 2023, as part of the United States' Second Supplemental Responses to Google's First Set of Interrogatories to the United States, for its supplemental response to this Interrogatory No. 17. Additional documents containing information responsive to Interrogatory No. 17 have been produced by the Census Bureau, including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 382 bates-stamped documents from Census's production in Appendix A.*

**AMENDED RESPONSE (CMS):[2]** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 17. Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 17 have been produced by CMS, including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 801 bates-stamped documents from CMS's production in Appendix A.*

**AMENDED RESPONSE (NHTSA):** The United States incorporates its supplemental response to Interrogatory No. 4, served to Google on September 5, 2023, as part of the United States' Second Supplemental Responses to Google's First Set of Interrogatories to the United States, for its supplemental response to this Interrogatory No. 17. The United States will continue to supplement this response as it becomes aware of additional documents.

**AMENDED RESPONSE (USPS):** The United States incorporates its supplemental response to Interrogatory No. 4, served to Google on August 3, 2023, as part of the United States' Third Supplemental Responses to Google's First Set of Interrogatories to the United States, for its supplemental response for USPS to this Interrogatory No. 17. The United States will continue to supplement this response as it becomes aware of additional documents.

**AMENDED RESPONSE (VA):** For the reasons stated in the United States' objections and during negotiations with Google regarding the scope of these responses, it is not feasible or proportional for the United States and the Federal Agency Advertisers to undertake the level of inquiry necessary to identify all the information requested in Interrogatory No. 17. Documents responsive to this request have also been produced by the Federal Agency Advertisers' advertising agencies. Nevertheless, documents containing information responsive to Interrogatory No. 17 have been produced by the V.A., including those listed in Appendix A. The United States will continue to supplement this response as it becomes aware of additional documents.

*Amended response appends a list of 1194 bates-stamped documents from the VA's production in Appendix A.*

\*

---

[2]   Plaintiff served a supplemental response on behalf of CMS on August 16, 2023, and then another amended supplemental response on August 17, 2023, and then another amended supplemental response on August 22, 2023. For the sake of simplicity, only Plaintiff's August 22, 2023 is reproduced in this Appendix.

**INTERROGATORY NO. 18** Explain if, and how, you calculated that "Google's share of the [alleged] publisher ad server market in the United States has remained above 90% for many years" as alleged in paragraph 285 of the Amended Complaint, explaining specifically: (a) what the numerator is, how you determined the numerator, the dates for which the numerator was calculated, how the scope of the numerator was determined, what was included in the numerator, and what was excluded; (b) what the denominator is, how you determined the denominator, the dates for which the denominator was calculated, how the scope of the denominator was determined, what was included in the denominator (including the specific companies and their specific products), and what was excluded (including the specific companies and their specific products); and (c) the sources and bases for every aspect of your explanation.

**SPECIFIC OBJECTIONS:** Plaintiffs object to this interrogatory to the extent it seeks premature disclosure of expert opinions or testimony in this case. Plaintiffs will provide their expert disclosures in accordance with the schedule ordered by the Court. Plaintiffs further object to this interrogatory on the grounds that it seeks information and analysis covered by the attorney client privilege, attorney work product protection, common interest doctrine, deliberative process privilege, and/or any other applicable privilege or protection. Subject to and without waiving these objections, the Plaintiffs will respond to this interrogatory by identifying the documents and/or data providing evidentiary support for this allegation of paragraph 285 of the Amended Complaint.

**RESPONSE:** Subject to the foregoing objections, Plaintiffs respond to this interrogatory as follows: In their pre-complaint investigation, Plaintiffs collected documents, data, and information from Google and a variety of third-party industry participants. These materials provided evidentiary support for the allegations in Plaintiffs' Complaint and Amended Complaint. In paragraph 285 of the Amended Complaint, Plaintiffs allege: "Google has maintained a monopoly in publisher ad servers in the United States since at least 2015. As confirmed by Google's internal assessments, Google's share of the publisher ad server market in the United States, measured by either revenue or impressions, has remained above 90% for many years. Its worldwide market share is similar." Materials that provide evidentiary support for this allegation include, but are not limited to:

| Document Bates / File Name | Producing Party |
|---|---|
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00000-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00001-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00002-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00003-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00004-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00005-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |

| | |
|---|---|
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00006-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00007-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00008-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00009-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00010-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00011-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 000012-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00013-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.A.1-2 - DFP Reservations - 00014-of-00014 - HIGHLY CONFIDENTIAL.csv" | Google |
| GOOG-DOJ-03070314 | Google |
| GOOG-TEX-00089237 | Google |
| "Exhibit_21._Supplemental-SellSideDateUpdate_-_Confidential.csv" | Xandr |

Plaintiffs intend to offer expert testimony in support of the allegations in paragraph 285 of the Amended Complaint and will make their expert disclosures in accordance with the Court's orders governing expert discovery. By answering this interrogatory, Plaintiffs do not intend to waive or limit their ability to rely on additional and/or different evidence in expert disclosures or at trial.

\*

**INTERROGATORY NO. 19:**  Explain if, and how, you calculated that Google's share of the alleged "ad exchange market" is "more than 50%" as alleged in paragraph 292 of the Amended Complaint, explaining specifically: (a) what the numerator is, how you determined the numerator, the date for which the numerator was calculated, how the scope of the numerator was determined, what was included in the numerator, and what was excluded; (b) what the denominator is, how you determined the denominator, the date for which the denominator was calculated, how the scope of the denominator was determined, what was included in the denominator (including the specific companies and their specific products), and what was excluded (including the specific companies and their specific products); and (c) the sources and bases for every aspect of your explanation.

**SPECIFIC OBJECTIONS:** Plaintiffs object to this interrogatory to the extent it seeks premature disclosure of expert opinions or testimony in this case. Plaintiffs will provide their expert disclosures in accordance with the schedule ordered by the Court. Plaintiffs further object to this interrogatory on the grounds that it seeks information and analysis covered by the attorney client privilege, attorney work product protection, common interest doctrine, deliberative process

privilege, and/or any other applicable privilege or protection. Subject to and without waiving these objections, the Plaintiffs will respond to this interrogatory by identifying the documents and/or data providing evidentiary support for this allegation of paragraph 292 of the Amended Complaint.

**RESPONSE:** Subject to the foregoing objections, Plaintiffs respond to this interrogatory as follows: In their pre-complaint investigation, Plaintiffs collected documents, data, and information from Google and a variety of third-party industry participants. These materials provided evidentiary support for the allegations in Plaintiffs' Complaint and Amended Complaint. In paragraph 292 of the Amended Complaint, Plaintiffs allege: "Google enjoys substantial and growing market share with respect to ad exchanges in the United States. Google's AdX is the largest ad exchange in the market; it is approximately four times larger than the next largest ad exchange, whether measured by impressions won or by revenue, and has been for at least several years. For open web advertisements sold via open auctions, Google's ad exchange is the direct winner of more than 50% of all ad impressions and revenue. Its worldwide market share is higher." Materials that provide evidentiary support for this allegation include, but are not limited to:

| Document Bates / File Name | Producing Party |
|---|---|
| "2021.06.04 - Priority Refresh Request - III.C.1 and III.C.2 Google Ads   DV360 - HIGHLY CONFIDENTIAL" | Google |
| "2021.06.07 - Priority Refresh Request - III.B.3-4 - AdX - HIGHLY CONFIDENTIAL.csv" | Google |
| "DoJ_Request5_Question_2.csv" | Google |
| "Priority Refresh Request - III.B.3-4 - AdX - HIGHLY CONFIDENTIAL.csv" | Google |
| "Priority Refresh Request - III.C.1 Google Ads _ DV360 - HIGHLY CONFIDENTIAL" | Google |
| "Q2_adx_by_buyer-00000-of-00001" | Google |
| GOOG-DOJ-11794721 | Google |
| GOOG-TEX-00138857 | Google |
| "ADOBE – CID 30473 – 0000002523.csv" | Adobe |
| "ADOBE – CID 30473 – 0000228269-ADOBE – CID 30473 – 0000228269.csv | Adobe |
| "AMZNDOJ0001690 (Spec 8 response).xlsx" | Amazon |
| "Amobee DOJ CID Specification 4 (2017 two sheets) .xlsx" | Amobee |
| "Amobee DOJ CID Specification 4 (2018) .xlsx" | Amobee |
| "Amobee DOJ CID Specification 4 (2019).xlsx" | Amobee |
| "Amobee DOJ CID Specification 4 (2020) .xlsx" | Amobee |
| "Amobee Confidential DOJ CID Specification 4 Updated Re 2021" | Amobee |
| DOJ Revenue Summary File 2017-2019 (Amobee CID supplemental response) .csv | Amobee |
| DOJ Revenue Summary File CY2020 and Q1 2021 (Amobee CID supplemental response).csv | Amobee |
| "CRI-00000407" | Criteo |
| "CRI-00000571" | Criteo |

| "index_US_detail_G.xlsx" | Index Exchange |
| "MEDIAMATH-00000635.xlsx" | MediaMath |
| "OPENX-DOJ-00010648.xlsx" | OpenX |
| "PUBMATIC_DOJ-00013377.xlsx" | PubMatic |
| "ROKU-00030591" | Roku |
| "RUBICON-00004480_US.xlsx" | Rubicon |
| "TTD_0000188-TTD_0000188_(Confidential).xlsx" | The Trade Desk |
| "Updated TTD_0000188 - Global Spend by SSP & Country 2020-04 - 2021-05" | The Trade Desk |
| "TTD_0000091-TTD_0000091.xlsx" | The Trade Desk |
| "TTD_0000092-TTD_0000092.xlsx" | The Trade Desk |
| "VZGGL-CID-AT-00000002.xlsx" | Verizon |
| "Exhibit 21.sellside_Confidential" | Xandr |
| "Exhibit 21._Supplemental-SellSideDateUpdate_-_Confidential" | Xandr |
| "Exhibit 31.a_Confidential" | Xandr |
| "Exhibit 21._Supplemental-BuySideDataUpdate_-_Confidential" | Xandr |

Plaintiffs intend to offer expert testimony in support of the allegations in paragraph 292 of the Amended Complaint and will make their expert disclosures in accordance with the Court's orders governing expert discovery. By answering this interrogatory, Plaintiffs do not intend to waive or limit their ability to rely on additional and/or different evidence in expert disclosures or at trial.

\*

**INTERROGATORY NO. 20:** Explain if, and how, you calculated that Google Ads' share of the alleged "market for advertiser ad networks for open web display advertising has not dropped below 70% (measured by impressions) since 2015; it currently stands at around 80%" as alleged in paragraph 301 of the Amended Complaint, explaining specifically: (a) what the numerator(s) is/are, how you determined the numerator(s), the dates for which the numerator(s) was/were calculated, how the scope of the numerator(s) was/were determined, what was included in the numerator(s), and what was excluded; (b) what the denominator(s) is/are, how you determined the denominator(s), the dates for which the denominator(s) was/were calculated, how the scope of the denominator(s) was determined, what was included in the denominator(s) (including the specific companies and their specific products), and what was excluded (including the specific companies and their specific products); and (c) the sources and bases for every aspect of your explanation.

**SPECIFIC OBJECTIONS:** Plaintiffs object to this interrogatory to the extent it seeks premature disclosure of expert opinions or testimony in this case. Plaintiffs will provide their expert disclosures in accordance with the schedule ordered by the Court. Plaintiffs further object to this interrogatory on the grounds that it seeks information and analysis covered by the attorney client privilege, attorney work product protection, common interest doctrine, deliberative process privilege, and/or any other applicable privilege or protection. Subject to and without waiving these objections, the Plaintiffs will respond to this interrogatory by identifying the documents and/or data providing evidentiary support for this allegation of paragraph 301 of the Amended Complaint.

**RESPONSE:** Response to Interrogatory Subject to the foregoing objections, Plaintiffs respond to this interrogatory as follows: In their pre-complaint investigation, Plaintiffs collected documents, data, and information from Google and a variety of third-party industry participants. These materials provided evidentiary support for the allegations in Plaintiffs' Complaint and Amended Complaint. In paragraph 301 of the Amended Complaint, Plaintiffs allege: "Google Ads' United States and worldwide shares of the market for advertiser ad networks for open web display advertising has not dropped below 70% (measured by impressions) since 2015; it currently stands at around 80%." Materials that provide evidentiary support for this allegation include, but are not limited to:

| Document Bates / File Name | Producing Party |
|---|---|
| "2021.06.04 - Priority Refresh Request - III.C.1 and III.C.2 Google Ads _ DV360 - HIGHLY CONFIDENTIAL" | Google |
| "DoJ_Request5_Question_2.csv" | Google |
| "Priority Refresh Request - III.C.1 Google Ads _ DV360 - HIGHLY CONFIDENTIAL" | Google |
| "CRI-00000407" | Criteo |
| "CRI-00000571" | Criteo |

Plaintiffs intend to offer expert testimony in support of the allegations in paragraph 301 of the Amended Complaint and will make their expert disclosures in accordance with the Court's orders governing expert discovery. By answering this interrogatory, Plaintiffs do not intend to waive or limit their ability to rely on additional and/or different evidence in expert disclosures or at trial.

\*

**INTERROGATORY NO. 21:** From the start of Your Investigation until August 25, 2023, Identify each and every Communication between the Department of Justice on the one hand, and any Potential Witness or the European Commission on the other hand, related to the subject matters of the Investigation or of the Action.

**SPECIFIC OBJECTIONS:** Plaintiffs object to this interrogatory to the extent it is duplicative of Google's Interrogatory No. 3 to the United States and Google's Interrogatory No. 2 to each of the individual Plaintiff States. Plaintiffs incorporate by reference their objections to these interrogatories as if fully set forth herein. Plaintiffs further object to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, attorney work product protection, common interest doctrine, deliberative process privilege, and/or any other applicable privilege or protection. Plaintiffs also object to this interrogatory to the extent it seeks information that is exempted from discovery via any order issued by the Court in this case. For example, to the extent this interrogatory purports to request information stored in "[l]ogs of calls made from cellular phones" or "[v]oicemail messages," the Court ordered that such information "need not be preserved, searched, collected, or reviewed." *See* ESI Order, Dkt. No. 142, ¶¶ II.3.d.- e. Plaintiffs further object to this interrogatory on the grounds that the collection of information and documents required to respond to this interrogatory as written would be unduly burdensome and disproportionate to the needs of this case. Google has asserted that: (1) Google does not intend

to produce documents in this case dated after March 27, 2023; (2) "Google does not agree to produce documents responsive to Plaintiffs' Requests 64 [seeking 'All documents relating to communications with any Potential Witness, during the period from January 1, 2023 to September 7, 2023'] . . . because doing so would be unduly burdensome and disproportionate to the needs of the case"; and (3) Google has "decline[d] to respond to Interrogatory 9 [seeking information about contracts signed with potential witnesses] because . . . responding to Interrogatory 9 would require Google to undertake the same burdensome collection of documents relied upon to prepare the interrogatory response." (7/27/2023 Email from McCallum.) For information sought by this interrogatory after March 27, 2023, Plaintiffs are similarly situated to Google and the same burden and proportionality arguments would apply. Plaintiffs object to providing information where Google has objected to and refused to provide the reciprocal information. Therefore, Plaintiffs intend to limit any response to this interrogatory to information dated on or before March 27, 2023. Subject to and without waiving the foregoing objections, Plaintiffs intend to respond to this interrogatory by producing written communications with Potential Witnesses or the European Commission, dated on or before March 27, 2023, to the extent not already produced. Information sought by this interrogatory may be ascertained by examining or summarizing these records, and the burden of doing so would be substantially the same for either party.

**RESPONSE:** Subject to and without waiving the foregoing objections, the United States responds as follows: The United States incorporates by reference as if fully set forth herein its response to Google's Interrogatory No. 3, dated April 26, 2023. The United States is in the process of producing documents related to the subject matter of this interrogatory. Information sought by this interrogatory can be obtained by compiling and summarizing these documents, and the burden of deriving or ascertaining the information is substantially the same for Google as it would be for the United States. Therefore, the United States responds pursuant to Fed. R. Civ. P. 33(d) by designating the following records: DOJ-ADS-0000069593 through DOJ-ADS-0000072696. The United States' investigation and production is on-going, and the United States will supplement this response as necessary as it identifies additional responsive information and/or produces additional related documents

*

**INTERROGATORY NO. 22:** Separately for each Federal Agency Advertiser, identify all purchases of "ad tech services" (as that term is used in Your Amended Answer to Google's First Request For Admission) that were purchased by the Federal Agency Advertisers directly from Google during the Damages Period.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory because it requires a legal analysis of Google's term "directly." The United States incorporates by reference their objection to this term as set forth in its objections to Google's Interrogatory Nos. 1 and 14. The United States also objects to this Interrogatory on the ground that the term "ad tech services" is vague, ambiguous, and subject to varying interpretations. Specifically, the United States incorporates its objection in paragraph 6 above. The United States objects to this Interrogatory as premature because the facts that could possibly support the contention addressed by this Interrogatory are the subject of ongoing fact discovery and will be a subject of expert discovery, the timing of which is controlled by Federal Rule of Civil Procedure 26(b)(4) and the Court's

March 31, 2023, Scheduling Order. Furthermore, the United States objects to this Interrogatory on the ground that some of the information about purchases made by Federal Agency Advertisers is already in the custody or control of the Google or its counsel. Specifically, some information about purchases made by the Federal Agency Advertisers has already been produced by the United States to Google. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

*

**INTERROGATORY NO. 23:** : For each purchase identified in response to Interrogatory No. 22, identify the specific "ad tech service" purchased.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds set forth in its objection to Interrogatory No. 22 which are equally applicable here. The United States also objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome because it requires the identification of specific "ad tech services" for an unknown number of purchase transactions by each of the eight Federal Agency Advertiser during a four-year period. Google's request for information specific to each purchase effectively turns one purported interrogatory into an unknown and excessive number of interrogatories. *Cf.* Defendant Google LLC's Objections to Plaintiffs' Fifth Set of Interrogatories, ¶ 2 (objecting on the ground seeking discrete information for multiple products through one interrogatory is improper). Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

*

**INTERROGATORY NO. 24:** For each purchase identified in response to Interrogatory No. 22, identify the amount paid by the Federal Agency Advertiser for the "ad tech service."

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds set forth in its objection to Interrogatory No. 22 which are equally applicable here. The United States also objects to this Interrogatory as overly broad and unduly burdensome because it seeks itemization of an unknown number of transactions and calls for evaluation of data, some of which is already available to Google. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

*

**INTERROGATORY NO. 25:** Separately for each Federal Agency Advertiser, identify any payments made to Google by any Federal Agency Advertiser during the Damages Period for "ad tech services" and how such payments were transmitted to Google.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds set forth in its objection to Interrogatory No. 22 which are equally applicable here. The United States also objects to this Interrogatory because it purports to be a single interrogatory but it contains subparts that necessitate separate inquiries: (a) identification of payments and (b) the method of transmission of payments, which render it multiple Interrogatories. Specifically, this Interrogatory is overly broad and unduly burdensome because it seeks itemization of an unknown number of transactions and calls for evaluation of data, some of which is already available to Google. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

*

**INTERROGATORY NO. 26:** Separately for each Federal Agency Advertiser, identify any payments made to Google by firms you contend are agents or intermediaries for any Federal Agency Advertiser during the Damages Period for "ad tech services."

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds set forth in its objection to Interrogatory No. 22 which are equally applicable here. Furthermore, the United States objects on the grounds that the term "agents or intermediates for any Federal Agency Advertiser" is vague and overly broad because it may include agents or intermediaries who made payments to Google for products or services outside of the scope of the Amended Complaint. The United States also objects to this Interrogatory because it purports to be a single interrogatory but it contains subparts that necessitate separate inquiries: (a) identification of payments and (b) the method of transmission of payments, which render it multiple Interrogatories. Specifically, this Interrogatory is overly broad and unduly burdensome because it seeks itemization of an unknown number of transactions and calls for evaluation of data, some of which is already available to Google. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

*

**INTERROGATORY NO. 27:** Separately for each Federal Agency Advertiser, identify any contracts with Google to which any Federal Agency Advertiser was a party for "ad tech services" provided during the Damages Period.

**SPECIFIC OBJECTIONS:** The United States objects to this interrogatory on the grounds set forth in paragraph 6 above. The United States objects on the grounds that the term "agents or intermediates for any Federal Agency Advertiser" is vague and overly broad because it may

25

include agents or intermediaries who have contracts with Google for products or services outside of the scope of the Amended Complaint. Importantly, Google presumably has copies of all its contracts in its possession or control. In addition, some information about contracts with the Federal Agency Advertisers has already been produced by the United States to Google. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

*

**INTERROGATORY NO. 28:** Separately for each Federal Agency Advertiser, identify any contracts between Google and firms you contend are agents or intermediaries for any Federal Agency Advertiser for "ad tech services" provided during the Damages Period.

**SPECIFIC OBJECTIONS:** United States objects to this interrogatory on the grounds set forth in paragraph 6 above. The United States objects on the grounds that the term "agents or intermediates for any Federal Agency Advertiser" is vague and overly broad because it may include agents or intermediaries who have contracts with Google for products or services outside of the scope of the Amended Complaint. Importantly, Google presumably has copies of all its contracts in its possession or control. In addition, some information about relevant contracts has already been produced by the United States to Google. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

*

**INTERROGATORY NO. 29:** Separately for each Federal Agency Advertiser, identify all contracts or agreements to which any Federal Agency Advertiser was a party during the Damages Period that You contend constitute cost-plus or fixed contracts for the purchase of "ad tech services."

**SPECIFIC OBJECTIONS:** United States objects to this interrogatory on the grounds set forth in paragraph 6 above. The United States objects on the grounds that the terms "cost-plus" and "fixed" contracts are not defined and, even if they were, this Interrogatory calls for legal analysis of such contracts. The United States also objects on the grounds that the term "agents or intermediates for any Federal Agency Advertiser" is vague and overly broad because it may include agents or intermediaries who have contracts for products or services outside of the scope of the Amended Complaint. Google presumably has copies of all its contracts in its possession or control. Furthermore, the United States objects to the term "agreements" because it is vague and overly broad and not define such that it may include agreements for products and services outside the scope of this suit. In addition, some information about contracts made with the Federal Agency Advertisers has already been produced by the United States to Google. Subject to and without waiving its objections, the United States is willing to meet and confer about this Interrogatory.

**RESPONSE:** *Due September 8, 2023*

## REQUESTS FOR PRODUCTION

**REQUEST NO. 12:** Separately for each agency and department of the United States that is a "buyer[] of open web display advertising" (as alleged in Paragraph 341 of Your complaint) or has used Ad Tech Products or Display Advertising during the Relevant Period, produce documents and data sufficient to show the (i) Impressions Purchased; (ii) Attributed Clicks for such Impressions; (iii) Attributed Conversions for such Impressions; (iv) Attributed Sales for such Impressions; (v) gross amount paid for such Impressions; (vi) total Fees paid to Ad Tech Providers (net of any discounts or rebates received) for such Impressions; (vii) the return on investment for such Impressions; (viii) the return on advertising spend for such Impressions; and (ix) the name of the Agency (if any) involved in Purchasing such Impressions – all aggregated (at a monthly level for each month since January 1, 2013) separately for each unique combination of the following parameters:

> a. Publisher of the Inventory on which the Impressions were displayed;
> b. Property on which the Impressions were displayed;
> c. Ad Buying Tool (if any) through which the Impressions were Purchased;
> d. Ad Exchange, Ad Network, or Ad Selling Tool through which the Impressions were Purchased;
> e. Transaction Type through which the Impressions were Purchased;
> f. Environment in which the Impressions were displayed;
> g. Format of the Impressions;
> h. whether or not the Impression was a part of a Remarketing Campaign;
> i. Cost Type that was specified for purchasing the Impressions;
> j. account ID; and
> k. Campaign ID associated with the Impressions.

Providing data in a spreadsheet in the format of Exhibit A to these Requests, and consistent with the examples therein will be deemed a sufficient response to this Request. Data and documents produced in response to this Request shall be limited to information pertaining to transactions taking place in the United States. For any data and documents which You are unable to restrict by geography (for example, the geography is ambiguous or unknown), such data and documents shall be treated as responsive to this Request.

**SPECIFIC OBJECTIONS AND RESPONSES:** The United States objects to this request on the grounds stated above in paragraphs 1, 2, and 3. In particular, the United States objects to this request on the grounds that it seeks information that may be more easily obtained, with less burden, from other sources, including Google's own products. The United States also objects to this request to the extent it purports to require production of data not in the format in which it is stored in the ordinary course of business. Subject to these objections and the other "Objections Applicable to All Requests" stated above, the United States is willing to meet and confer to discuss the scope and format of data productions from Federal Agency Advertisers.

*

28

**REQUEST NO. 44:** All communications between You and any non-party, including but not limited to recipients of subpoenas or voluntary requests for production, concerning the Investigation or the subject matter of this Action.

**SPECIFIC OBJECTIONS AND RESPONSES:** The United States objects to this request on the grounds that it is duplicative of Google's Request No. 5. The United States incorporates by reference its objections to Request No. 5, served April 11, 2023, as if fully stated herein. The United States also objects to this request on the grounds that it seeks information covered by the attorney client privilege, attorney work product protection, common interest doctrine, deliberative process privilege, and/or other applicable privileges and protections. The United States further objects to this request on the grounds that it is overly broad, unduly burdensome, and disproportionate to the needs of the case, in particular in that it seeks "[a]ll communications" "concerning" the Antitrust Division's investigation preceding this case or the "subject matter" of this case. This request is further unduly burdensome and disproportionate to the needs of the case to the extent it purports to require collection of entire categories of documents which are shielded by the attorney client privilege, attorney work product protection, common interest doctrine, deliberative process privilege, and/or other applicable privileges and protections. The United States also objects to the undefined term "non-party" as vague, ambiguous, and potentially unlimited in scope. The United States will interpret "non-party" to refer to third party industry participants and foreign or international enforcement agencies, including those who have received subpoenas or voluntary requests issued by the United States. Should Google contend that "non-party" refers to other entities, the United States requests to meet and confer. Subject to the foregoing objections, the United States responds that it has already produced non-privileged documents and communications exchanged between the Antitrust Division and third-party industry participants and foreign or international enforcement agencies regarding the Antitrust Division's investigation preceding this case. The United States is willing to produce documents identified through a reasonable and diligent search for post-complaint communications exchanged between the Antitrust Division and third-party industry participants and foreign or international enforcement agencies related to the subject matter of this case. The United States requests to meet and confer regarding the date range for such a search, and states that the date range should be mutually reciprocal with any search performed by Google to identify similar relevant documents. The United States further responds that, with regards to the Federal Agency Advertisers, the United States is willing to produce responsive, non-privileged documents identified through a reasonable and diligent search, and that the ongoing negotiations regarding custodians and search terms for the Federal Agency Advertisers are sufficient to locate documents responsive to this request. The United States is available to meet and confer regarding this request.