IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:23-cv-108 (LMB/JFA) |
| ) | |
| GOOGLE, LLC, ) | |
| ) | |
| Defendant. ) | |

<u>MEMORANDUM OPINION</u>

Before the Court is plaintiffs' Motion for Partial Judgment on the Pleadings or to Strike as to Google LLC's Tenth and Thirteenth Affirmative Defenses, or in the Alternative for a Protective Order ("Motion") [Dkt. No. 317].[1] Google's tenth and thirteenth defenses state:

> <u>Tenth Defense</u>: Plaintiffs' claims are barred, in whole or in part, as an improper selective enforcement of antitrust laws.
>
> <u>Thirteenth Defense</u>: Plaintiffs' claims are barred, in whole or in part, because the initiation and maintenance by the Department of Justice of this investigation and litigation against Google violates the Due Process Clause of U.S. Const. amend. V and federal ethics laws and regulations, <u>see</u> <u>e.g.</u>, 5 C.F.R. § 2635.101(b)(8).[2]

[Dkt. No. 208] at 54-55. Both affirmative defenses[3] are grounded in Google's claim that Assistant Attorney General of the Department of Justice's ("DOJ") Antitrust Division Jonathan Kanter ("Kanter" or "AAG Kanter") unfairly pursued litigation against Google on behalf of Google's competitors, several of whom he represented as clients while he was in private practice.

---

[1] Plaintiff states do not join in seeking a protective order, "since no discovery related to these affirmative defenses has been sought from [p]laintiff states." [Dkt. No. 318] at 2 n.1.
[2] 5 C.F.R. §2635.101(b)(8) states that "[e]mployees shall act impartially and not give preferential treatment to any private organization or individual."
[3] The magistrate judge overseeing discovery issues has reserved ruling on whether to grant the United States' motion for a protective order to prevent deposition of plaintiff United States' counsel as it relates to this issue. [Dkt. No. 377].

Google argues that plaintiffs, as well as former clients of AAG Kanter, "have tried to block Google from learning more about their roles in orchestrating this lawsuit," and that this information is relevant to Google's defenses and the motives and biases of witnesses the DOJ is likely to call at trial. [Dkt. No. 368] at 2-3. As discussed in open court and further explained in this Memorandum Opinion, these two defenses are not legally supported, are detracting from the core issue in the litigation, and are creating unnecessary discovery issues, much of which involve third parties. As further stated in open court and for the reasons that follow, plaintiffs' Motion is granted.

## I. BACKGROUND

The parties do not dispute that, before his confirmation, AAG Kanter spent over 15 years in private practice, which in part involved trying to encourage antitrust enforcement of Google's anticompetitive practices on behalf of his clients. [Dkt. No. 368] at 3. For example, in 2012, Microsoft paid Kanter to lobby the Federal Trade Commission ("FTC") to investigate Google's search business conduct. Id. at 4. Kanter was also a member of a legal team that filed antitrust complaints against Google on behalf of its competitors, TradeComet and MyTriggers. Id. at 5. And in July 2020, Kanter emailed the DOJ about a presentation that he and Susan Athey, then Microsoft's Chief Economist, had prepared to encourage the DOJ to take antitrust enforcement actions against Google. Id. at 7.

On November 16, 2021, the United States Senate confirmed Kanter to be the Assistant Attorney General of the DOJ's Antitrust Division. [Dkt. No. 318] at 5. Three days later, Google sent a letter and released public statements, calling on the Department to recuse AAG Kanter from matters involving Google. Id. Google does not contest that the DOJ had started actively investigating Google's ad tech business in August 2019 during the Trump Administration, more

2

than two years before Kanter was confirmed as the Antitrust Division's AAG, and it was also litigating another monopolization case against Google involving Google's search-related markets, which remains pending in the District of Columbia. Id.

After Kanter's 2021 appointment during the Biden administration, pursuant to 5 C.F.R. § 2635.502(b)(1)(iv), he initially recused himself from Google-related matters because he had, while in private practice, represented third parties in connection with the investigations of Google's search and ad tech businesses. Id. Supervision of the matter was delegated to the Antitrust Division's Principal Deputy Assistant Attorney General who is authorized to make enforcement decisions when AAG Kanter is recused. Id. at 5-6. After the one-year recusal period elapsed, AAG Kanter became involved in the Google ad tech investigation, and on January 24, 2023, the United States and eight state co-plaintiffs brought this action against Google for violations of the antitrust laws. Id. at 6; [Dkt. No. 1]. AAG Kanter and several senior officials of the Antitrust Division signed the Complaint. Id.

Google alleges that the United States only sued Google after AAG Kanter was able to work on the case, even though it could have sued Google for its ad tech business practices in December 2020, alongside Texas and nine other states, or in any of the 18 additional actions by various plaintiffs that were filed in different courts and consolidated in August 2021. [Dkt. No. 368] at 12-13. As Google characterizes the litigation before this Court, it was only after AAG Kanter was cleared and authorized to lead this action on behalf of the federal government that a complaint was prepared that "asserted the same antitrust theories that AAG Kanter had been paid to press for years on behalf of his private practice clients." Id. at 12. Google further argues that, although the DOJ purports to bring this Complaint on behalf of federal agencies, specifically eight Federal Agency Advertisers ("FAAs"), discovery to date has demonstrated that those

3

FAA's do not believe that they have been harmed by Google's practices, which provides support for Google's theory that the DOJ's clients are actually the companies AAG Kanter represented in the past and not the FAAs. Id. at 16-18.

On April 17, 2023, the United States amended the Complaint to add nine additional state co-plaintiffs, [Dkt. No. 120]; however, the Amended Complaint was not signed by AAG Kanter because the day the Amended Complaint was filed, attorneys from Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), AAG Kanter's former law firm, appeared for the first time on Google's behalf. [Dkt. No. 318] at 6. As a result, AAG Kanter had to recuse himself to abide by Executive Order 13989, which imposes heightened ethics obligations on political appointees in the Executive Branch (the "Ethics Pledge"). Id. The Ethics Pledge requires AAG Kanter to refrain from participating, for two years from the date of his appointment, in any matter in which his former employer appears on behalf of a party, unless a waiver is obtained. Id. at 6-7. AAG Kanter has not participated in this case since becoming aware that Google retained Paul, Weiss in this action, and he will continue to be recused from this matter until November 2023. Id. at 7.

## II. DISCUSSION

Plaintiffs argue that in asserting its tenth and thirteenth affirmative defenses, Google "seeks to divert attention away from its alleged illegal conduct" and is using these defenses "as a basis to issue unusual, invasive, and irrelevant discovery requests on the United States and numerous third parties." [Dkt. No. 318] at 1-2. As such, plaintiffs seek partial judgment on the pleadings or, in the alternative, to strike both affirmative defenses. Id. If that relief is not granted, plaintiff United States seeks a protective order restricting Google from engaging in

discovery related to these defenses. Id.

Plaintiffs claim that Google's tenth, selective enforcement defense is insufficient as a matter of law because Google has not identified any similarly situated company engaged in similar behavior to Google against whom plaintiffs have declined to enforce the nation's antitrust laws, and its thirteenth, due process defense similarly fails because it is not a defense to antitrust liability as it is irrelevant to any issues to be decided by the jury in this action. Id. at. 17. The United States alternatively requests that the Court issue a protective order foreclosing discovery on these defenses because further discovery would "divert public resources away from litigation on the merits, and toward a discovery campaign that will likely require continuing intervention of the Court to resolve the myriad privilege and other discovery disputes that are implicated by these requests." Id. at 2-4.

Google opposes plaintiffs' Motion on the grounds that their challenge to Google's defenses are procedurally improper because a motion for partial judgment under Rule 12(c) is "the wrong procedural vehicle" for plaintiffs' challenge, and their motion to strike under Rule 12(f) is untimely. [Dkt. No. 368] at 21. Google further argues that neither affirmative defense can be resolved on the basis of the pleadings because additional discovery is necessary to determine the viability of those defenses, and discovery to date has already uncovered evidence that AAG Kanter's bias has "infected this entire proceeding." Id. at 25.

A. **Standard of Review**

1. Judgment on the Pleadings (Fed. R. Civ. P. 12(c))

Under Fed. R. Civ. P. 12(c), after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. A party is entitled to judgment on the pleadings only when the pleadings, construing the facts in the light most favorable to the non-

moving party, (1) fail to state any cognizable claim for relief; and (2) the matter can be decided as a matter of law. See Zeran v. Am. Online, Inc., 129 F.3d 327, 329 (4th Cir. 1997).

Like a Rule 12(b)(6) motion, a Rule 12(c) motion "generally cannot reach the merits of an affirmative defense." Goodman v. Prazair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); Sherrod v. Harkleroad, 674 F. App'x 265, 266 (4th Cir. 2017) (explaining that courts use the same standard applied to rule Rule 12(b)(6) motions to Rule 12(c) motions). In the "relatively rare circumstances" where facts sufficient to rule on an affirmative defense are alleged, the defense may be reached under Rule 12(c); however, this principle only applies if "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman, 494 F.3d at 464 (citing Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

### 2. Motion to Strike (Fed. R. Civ. P. 12(f))

Under Fed. R. Civ. P. 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Such a motion must be filed "within 21 days of being served with [a] pleading," or a court may act "on its own." Fed. R. Civ. P. 12(f)(1)-(2). The Fourth Circuit has viewed Rule 12(f) motions with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).

Rule 12(f) "imposes a sizable burden on the movant, and courts typically strike defenses only when they have no possible relation to the controversy." Lopez v. Asmar's Mediterranean Food, Inc., 2011 WL 98573, *1 (E.D. Va. Jan. 10, 2011) (internal quotation marks omitted). "[W]henever granted, the defendant should generally be given leave to amend."

Flame S.A. v. Indus. Carriers, Inc., 2014 WL 2871432, *2 (E.D. Va. June 24, 2014) (citing Palmer v. Oakland Farms, Inc., 2010 WL 2605179, *2 (W.D.Va. June 24, 2010)); however, courts are not required to grant leave to amend an affirmative defense where the relevant defenses fail as a matter of law. See Malibu Media, LLC v. Popp, 2015 WL 10937405, *3 (E.D. Va. Apr. 13, 2015) (striking an affirmative defense and denying leave to amend because it had not been recognized as an affirmative defense); Villa v. Ally Fin. Inc., 2014 WL 800450, *4 (M.D.N.C. Feb. 28, 2014) (declining to grant leave to amend laches defense as it would not constitute valid defense in the case).

### 3. Motion for a Protective Order (Fed. R. Civ. P. 26(c))[4]

A court may, for good cause, "issue an order to protect a party . . . from annoyance, . . . oppression, or undue burden or expense," by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1), (c)(1)(D). Good cause to issue a protective order generally exists when the party seeking the protective order "demonstrate[es] that specific prejudice or harm will result if no protective order is granted." In re Zetia (Ezetimibe) Antitrust Litig., 2022 WL 18109999, *2 (E.D. Va. Feb. 7, 2022). Such orders are "sparingly used and cautiously granted." Id. If this showing is made, the party seeking the materials then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure. In re Wilson, 149 F.3d 249, 252 (4th Cir. 1998).

---

[4] As already explained in open court, and as both parties have recognized, if the Court grants plaintiffs' request for partial judgment on the pleadings or to strike Google's tenth and thirteenth affirmative defenses, the Court's decision would moot most of the issues raised in the DOJ's Motion for a Protective Order. See [Dkt. No. 318] at 22-23.

7

### B. Analysis

#### 1. Timing

As an initial matter, Google argues that plaintiffs' Motion for Judgment on the Pleadings and Motion to Strike are procedurally improper. Rule 12(c) allows a party to file a motion for judgment on the pleadings if brought "early enough not to delay trial." Fed. R. Civ. P. 12(c). Google cites to Biniaris v. Hansel Consulting, PLLC, which denied a Rule 12(c) motion finding that because the plaintiff filed the motion almost four months after defendant filed its Answer, the parties already had a Rule 16(b) conference, and discovery was well underway, the motion was likely not made "early enough not to delay trial." 382 F. Supp. 3d 467, 471 (E.D. Va. 2019).

Although plaintiffs in this action did not file their Motion until August 18, 2023, over three months after Google filed its Answer, and the parties already had a Rule 16(b) scheduling conference, unlike in Biniaris, there is no "potential delay that would arise if" plaintiffs' Motion is granted because, if anything, the Court's ruling would eliminate unnecessary discovery, thereby actually expediting the discovery process. Id.

As to plaintiffs' Motion to Strike, under Rule 12(f)(2) of the Federal Rules of Civil Procedure, Google argues that the Motion is untimely because it was not brought "within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). But as Google admits, this time limit for filing is not dispositive because Rule 12(f)(1) allows a court to strike material from a pleading "on its own" without regard to timeliness if it is satisfied that an affirmative defense is "insufficient" or "immaterial." Lopez, 2011 WL 98573, at *1; Fed. R. Civ. P. 12(f)(1).

#### 2. Tenth Affirmative Defense

Google argues that the success of its selective enforcement defense depends on the resolution of factual issues that should not and cannot be resolved before the completion of discovery, which has not yet been completed. [Dkt. No. 368] at 26. Selective enforcement is a

8

defense "normally applied in criminal cases," not in civil enforcement actions. See United States v. Snepp, 595 F.2d 926, 933 (4th Cir. 1979); rev'd on other grounds, Snepp v. United States, 444 U.S. 507 (1980). Although this Court has recognized selective enforcement as an actionable claim in certain civil contexts, such cases have not involved an affirmative defense to liability in a civil antitrust or other enforcement action. See e.g., Bruce & Tanya Assocs., Inc v. Bd. Of Supervisors of Fairfax Cnty., Va. 355 F. Supp. 3d 386, 413-15 (E.D. Va. 2018), aff'd 854 F. App'x 521 (4th Cir. May 10, 2021) (affirming dismissal of selective enforcement claim in challenge to statutory scheme governing highway signs).

Courts that have grappled with this precise issue have similarly questioned whether selective enforcement "should be extended to civil actions." Snepp, 595 F.2d at 933; Ciechon v. City of Chicago, 686 F.2d 511, 523 n.16 (7th Cir. 1982) (declining to opine on whether selective prosecution is a defense in civil cases); Stanley, 2012 WL 13012479, at *3 ("Defendant has made no argument for why [selective prosecution] should apply in . . . a civil enforcement action—nor is it clear to us that it does."); Att'y Gen. of the United States v. Irish People, Inc., 684 F.2d 928, 932 n.8 (D.C. Cir. 1982) ("We need not reach the question of to what extent the selective prosecution defense may be inappropriate in a civil suit context."). Although the Fourth Circuit has never directly addressed this issue, in Snepp, it highlighted that "we have found[] no authority suggesting that the defense of selective enforcement . . . should be extended to civil actions." 595 F.2d at 933. The only published opinions in this district that have analyzed a defendant's affirmative defense of selective enforcement in the civil context have rejected the defense. Specifically, in United States v. Smithfield Foods, Judge Rebecca Beach Smith precluded defendants from raising a selective enforcement defense at trial, finding that, as an initial matter, defendants never properly raised this defense and that defendants could not

possibly satisfy the requirements for a defense of selective prosecution because they failed to show "governmental vindictiveness." 969 F.Supp. 975, 985 (E.D. Va. 1997). In the more recent United States v. Snowden, Judge Liam O'Grady disallowed a defendant to engage in any discovery related to his selective enforcement defense that alleged the lawsuit against him for breach of security agreements was based upon animus towards him. 611 F. Supp. 3d 206, 211 (E.D. Va. 2019). The Court did not engage with the merits of the selective enforcement defense here because it concluded that the defendant "waived th[at] defense[]." Id.

Although some courts, such as the Ninth Circuit and some other district courts, have recognized selective enforcement as a plausible defense in civil enforcement actions, see, e.g., Church of Scientology of Cal. v. C.I.R., 823 F.2d 1310, 1320 (9th Cir. 1987) (analyzing the actions of the IRS under selective prosecution standards but noting that the standard "is arguably too stringent for review of a mere revocation of tax-exempt status"), the Court finds that Google's affirmative defense still fails as a matter of law because the federal government has "broad discretion" to enforce the laws of this Nation. United States v. Armstrong, 517 U.S. 456, 464 (1996). A "presumption of regularity supports [the United States'] prosecutorial decisions and 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" Id. As the Court has explained, the United States' discretion is subject to constitutional constraints, which "ensures that any decision to prosecute a particular person is not based on unjustifiable standards, such as race, religion, or other arbitrary classifications." Smithfield, 969 F.Supp. at 985.

The requirements for a defense of selective enforcement "are similar to the standards for a violation of equal protection." Id. A prima facie case of selective enforcement requires that a claimant "demonstrate that federal prosecutorial policy 'had a discriminatory effect and that it

was motivated by a discriminatory purpose.'" Id. (quoting Armstrong, 116 S. Ct. at 465). This language has been interpreted to mean that "defendants bear a heavy burden of establishing that (1) defendants have been singled out while other similarly situated violators were left untouched, and (2) that the government selected defendants for prosecution invidiously or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of their constitutional rights." Id. (citing United States v. Production Plated Plastics, Inc., 742 F.Supp. 956, 962 (W.D. Mich. 1990)). Further, "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996).

Plaintiffs argue that their request for judgment on the pleadings or to strike Google's tenth defense should be granted because Google is not part of a protected class and even if a selective enforcement defense were available, Google has not and cannot plead that this civil antitrust action had both "a discriminatory effect and that it was motivated by a discriminatory purpose." [Dkt. No. 318] at 11-12. Moreover, it is "difficult to even conceptualize how a selective enforcement claim applies in the antitrust context." United States v. AT&T, 290 F. Supp. 3d 1, 4 (D.D.C. 2018). In AT&T, the court analyzed whether defendants should be allowed to conduct discovery into a selective enforcement defense in an antitrust enforcement action challenging a merger between AT&T/Direct TV and Time Warner. Id. The district court rejected the defendant's efforts to obtain discovery, and because the defense fell "far short of establishing that this enforcement action was selective," it granted plaintiffs' motion to strike the selective enforcement defense. Id. at 5; see also Smithfield, 969 F.Supp. at 985 (finding that defendant had not put forth any evidence suggesting that the EPA has failed to pursue

11

enforcement actions against similarly situated violators, "nor have they offered any evidence suggesting that the EPA has failed to pursue enforcement actions against similarly situated violators for improper purposes").

In its Opposition, Google alleges that Microsoft is a similarly situated violator and that the DOJ has treated Microsoft differently by not bringing antitrust claims against it. [Dkt. No. 368] at 8-9. Google's assertion that the DOJ has treated Microsoft differently is insufficient to allege a satisfactory selective enforcement defense, and its citation to <u>United States v. McGraw-Hill Companies, Inc.</u> is of little value. 2014 WL 1647385 (C.D. Cal. Apr. 15, 2014). In that case, the district court allowed discovery relating to a selective enforcement defense because, although the "[g]overnment may indeed have many good reasons for its decisions," the defendant was nonetheless "entitled to test the Government's case through discovery." <u>Id.</u> at *12. The district court was careful to emphasize that defendant was only entitled to such discovery because it had presented evidence "tending to show the existence [of] different treatment" of other major credit reporting agencies, but it did not detail the relevant evidence presented. <u>Id.</u>

Here, Google's bare allegation that <u>one</u> prosecutor had distaste for Google's anticompetitive practices, a prosecutor who did not even sign the Amended Complaint and is currently recused from the civil action, fails to satisfy the evidence required to survive plaintiffs' Motion. Considering the wide discretion afforded to the United States in exercising its enforcement powers, coupled with the fact that the Amended Complaint—brought by 17 states in addition to the United States—provides details of Google's alleged anticompetitive conduct at issue in this action, Google cannot cure this defect by pointing to what it believes is a similarly

situated potential defendant who it speculates has evaded antitrust enforcement. [Dkt. No. 318] at 1.

Google has similarly not plausibly pleaded that this civil enforcement action was brought with a discriminatory purpose. Discriminatory purpose requires proof that the decision to file an enforcement action was "invidious or in bad faith." United States v. Venable, 666 F.3d 893, 903 (4th Cir. 2012). Google's allegation that AAG Kanter's past representation of clients who might have interests adverse to Google alone cannot be indicative of bias because Google is not entitled to a prosecutor devoid of any experience or perspective about Google. In SEC v. W. Int'l Sec., Inc., the district court granted the SEC's motion to strike a selective enforcement affirmative defense without leave to amend because defendant, like Google, was "not a member of a protected class" and was not "alleging retaliation for exercising its constitutional rights." 2023 WL 2480732, *8 (C.D. Cal. March 13, 2023). As such, the defendant's only path to success on this defense was to show that there was "no rational basis for the SEC's decision to single it out." Id. As the district court highlighted, "A claim that a government agency abused its discretion in selectively enforcing a regulation against a class of one is generally available only in truly horrendous situations." Id. (quoting Baker v. Coxe, 230 F.3d 470, 474-75 (1st Cir. 2000)).

Google is not part of an identifiable group against whom the nation's antitrust laws are being selectively enforced in some instances but not others, and it similarly cannot show that there is no rational basis for the DOJ to pursue this enforcement action given the number of other plaintiffs from all political persuasions who joined the DOJ's Complaint and the number of other lawsuits brought by other public as well as private entities against Google that "have survived numerous motions to dismiss from multiple disinterested Article III judges." [Dkt. No. 318] at

16. Because there is no basis in law or fact for Google to claim selective enforcement, Google's tenth affirmative defense fails and leave to amend will not be granted.

### 3. Thirteenth Affirmative Defense

In its thirteenth affirmative defense, Google argues that the Due Process Clause prevents a prosecutor from "attempting to serve two masters" and bars a prosecutor from bringing a case to advance personal—rather than public—interests. [Dkt. No. 368] at 23. More specifically, Google explains that, through its due process defense, it will show the influence that AAG Kanter's anti-Google bias has had on the filing of this civil action, which "infected this entire proceeding" and reflects an improper predisposition to find against Google. Id.

Federal ethics laws and regulations do not provide a private right of action, but courts have allowed judicial review of defenses alleging federal ethics violations that, if factually sufficient, would otherwise result in improper litigation against a defendant. See Scherer v. United States, 241 F.Supp.2d 1270, 1283-84 (D. Kans. 2003) (explaining that there is no private right of action for enforcement of federal ethics violations); 5 C.F.R. § 2635.106(c) (stating that a violation of the federal ethics rules "does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person"). Although improper litigation may result in a due process violation, courts have only found such a violation when a prosecutor has brought an action to advance personal, rather than public, interests, and the defendant has presented facts sufficient to show "actual prejudice" flowing from the alleged bias. Avila v. U.S., 153 F.3d 726 (10th Cir. 1998) (finding a defendant's allegation of prosecutorial bias under the Due Process Clause insufficient without demonstrating actual prejudice flowing from the prosecutor's alleged bias).

Google's affirmative defense fails because it is "irrelevant to any issue to be decided by the jury in this case." [Dkt. No. 318] at 17. In all of the cases cited by Google to support this affirmative defense, only one prosecutor was involved in commencing litigation against the defendant. In other words, the decision to prosecute came down to the decision of a single party for whom there was evidence of possible impropriety. That is simply not the case here.

Any anti-Google bias AAG Kanter may have would not support dismissing the Amended Complaint because his bias cannot be imputed to the entire DOJ or to the multiple state attorneys general who have signed the Amended Complaint. The "disqualification of an entire United States Attorney's Office is nearly unprecedented," United States v. Rodella, 59 F. Supp. 3d 1331, 1348 (D.N.M. 2014), and if the disqualification of one government agency could serve as the basis for the disqualification of the DOJ as a whole, "the administration of justice would be irreparably damaged." Grand Jury Subpoena of Ford v. United States, 756 F.2d 249, 254 (2d Cir. 1985); see United States v. Bolden, 353 F.3d 870, 879 (10th Cir. 2003) (finding that "every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification").

The "irreparable damage" would be even more egregious in this case because "disqualifying" the DOJ would ignore the fact that the investigation into Google's anticompetitive conduct has spanned the tenure of two different Assistant Attorneys General, who were appointed during the tenure of two different political administrations, as well as two Acting Assistant Attorneys General, and it involved the leadership and assistance of dozens of career prosecutors employed by the Antitrust Division. Moreover, the DOJ is not the only plaintiff because this action has been joined by 17 different states. Simply put, it is impossible

for Google to show that AAG Kanter's purported anti-Google bias may have infected these proceedings.

In support of its view, plaintiffs cite to FTC v. Facebook in which the court found that even though the FTC chair had previously expressed views about Facebook's market dominance and worked on matters relating to antitrust and technology, the FTC Chair's past statements did not suggest the type of "personal animosity or financial conflict of interest that has disqualified prosecutors in the past." 581 F. Supp. 3d 34, 64 (D.D.C. 2022). Google argues that this case is dissimilar because the FTC Chair had never represented competitors of Facebook and never benefitted financially from such representation. Here, it is uncontested that AAG Kanter dedicated much of his work in private practice to representing Google's rivals, but AAG Kanter's work history is of no moment because government officials do not "stand[] to profit economically from vigorous enforcement" of the antitrust laws. See Marshall v. Jerrico, Inc., 446 U.S. 238, 250 (1980). Moreover, appointees to high-level enforcement positions are entitled to have past experiences with an industry and doing so is neither disqualifying nor a basis for claiming a due process violation. "If honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged, to be deeply interested in urging that view by any fair means." Wright v. United States, 732 F.2d 1048, 1056 (2d Cir. 1984). Because Google cannot show that AAG Kanter's purported bias has "infected the entire proceeding," Google's thirteenth affirmative defense fails as a matter of law.

## III. CONCLUSION

As stated in open court, these two affirmative defenses raise irrelevant matters, cause significant and unnecessary discovery issues, may potentially delay resolution of this litigation, and only detract from the core issue in this litigation—whether Google's ad tech business

violates antitrust laws. Moreover, they are not grounded in strong legal precedent. Accordingly, for the reasons stated in open court and supplemented in this Memorandum Opinion, plaintiffs' Motion has been granted and Google's tenth and thirteenth defenses will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 18th day of September, 2023.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge