**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| UNITED STATES, *et al.*, <br><br>            *Plaintiffs*, <br><br>     v. <br><br> GOOGLE LLC, <br><br>            *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**GOOGLE LLC'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO COMPEL RESPONSES TO VARIOUS DISCOVERY REQUESTS**

Plaintiff United States ("Plaintiff") has cumulatively, across thirteen interrogatories, twelve requests for admission, and two requests for production, stymied and stonewalled Google's ability to discover relevant, non-privileged facts and documents regarding important issues in the case covering four categories—each of which the court has recognized as relevant and discoverable. *See* Apr. 28, 2023 Hr'g Tr. (Dkt. 164) 21:15–23; Sept. 1, 2023 Hr'g Tr. (Dkt. 398) 31:23–33:21, 80:5–23. These categories are as follows:

1. The factual basis for Plaintiff's alleged damages, stemming from the "over $300 million" Federal Agency Advertisers ("FAAs") collectively spent on open web display advertising as stated in Plaintiff's initial disclosures. Google seeks updated initial disclosures which comply with Rule 26(a)(1)(A)(iii); the applicable discovery requests are Google's Interrogatories Nos. 4, 9, 14, and 17, and Google's Request for Production ("RFP") No. 12. Appendix at 7–17, 28.

2. The factual information or admissions regarding whether the United States and the FAAs on whose behalf DOJ is seeking damages are "direct purchasers" under *Illinois Brick*. These requests are Google's Requests for Admission ("RFAs") Nos. 1–3. Appendix at 1–3.

3. The factual basis for DOJ's allegations in the Complaint of Google's alleged share of the alleged "publisher ad server market," "ad exchange market," and "market for advertiser ad networks for open web display advertising." Am. Compl. (Dkt. 120) ¶¶ 285, 292, 301. These requests are Google's Interrogatories Nos. 18, 19, and 20. Appendix at 18–22.

4. The communications exchanged between DOJ and third parties, including the European Commission ("EC"), regarding the subject matter of this case through August 25, 2023, which are topics this Court has determined Google may depose Plaintiff about under Rule 30(b)(6). These requests are Google's Interrogatory No. 21 and RFP 44. Appendix at 22–23, 29.

As to the first two categories, the Amended Complaint seeks some undisclosed amount of damages on behalf of the FAAs. Google is entitled to discovery on what damages Plaintiff is seeking, and on whether such alleged damages are recoverable under *Illinois Brick* (i.e., whether the FAAs are direct purchasers), and if so, what the categories, amounts, or transactions are that underlie those alleged damages. But Plaintiff is doing everything it can to stop Google from obtaining this discovery—including debating the meaning of the words "directly," "pay," and "purchase" and refusing to provide any calculation of damages or inputs into such calculation. Over the last five months, Plaintiff has contorted its objections and responses, declined to provide information, and failed to answer the questions asked on these critical topics. The reasons for Plaintiff's ongoing obstruction appear clear: the discovery Google seeks will reveal

fundamental weaknesses in Plaintiff's case—including that there are no recoverable damages because the FAAs are not direct purchasers.  Further, for some FAAs, discovery to date suggests at least one FAA may not even purchase "open web display advertising" using Google ad tech services and thus has no claim for damages whatsoever.[1]

Moreover, Google patiently awaited supplemental responses to many of the discovery requests as Plaintiff continued to investigate and build its alleged damages case, and Google served new discovery requests as Plaintiff further sought to confuse and obfuscate on simple questions like: did the FAAs purchase any "open web display advertising" directly from Google, and if so, can it identify such purchases.  Now, at the close of fact discovery, Plaintiff's overall responses to this discovery to which Google is entitled remain woefully deficient, just as Plaintiff's initial disclosures, supplemented four times during the fact discovery period, provide essentially no information about Plaintiff's claimed damages.

As to categories three and four, the Court has recognized this information is relevant and discoverable when ordering Plaintiff to produce a 30(b)(6) designee on the same topics; such discovery is important to Google's defenses in showing that the gerrymandered antitrust markets alleged in Plaintiff's complaint are just that and do not pass muster under antitrust law, and that this suit was not brought on behalf of the FAAs.

Accordingly, Google respectfully requests that the Court order Plaintiff to provide sufficient and complete responses to Google's discovery requests listed above within eleven days of the Court's order granting this motion, and allow the parties to use those responses for all purposes as if they had been served on or before September 8, 2023.  In addition, for the reasons

---

[1] Ex. 1 (Owens Tr. 143:14–21) (testifying that the only programmatic display advertising vendor that, to the witness's knowledge, the Navy has used, is The Trade Desk, not Google).

outlined in Section III.B.2., *infra* 22–25, Google respectfully requests that the Court overrule Plaintiff's improper objections to Google's RFAs 4–12 and Interrogatories Nos. 22–29.

## I.   BACKGROUND

### A.   Discovery on Factual Basis for Alleged Damages

Plaintiff brings a claim for "damages incurred by the United States," alleging in its fifth claim that "Google's violations of the Sherman Act have caused the United States to incur monetary damages, as the United States and its various agencies and departments are buyers of open web display advertising." Am. Compl. (Dkt. 120) ¶ 341.  On April 3, 2023, Plaintiff served its initial disclosures, stating that the FAAs "have spent over $300 million on open web display advertising during the relevant time period." Ex. 2 at 29 (4/3/23 Plaintiffs' Initial Disclosures). The initial disclosures served in April have been supplemented four times, including as recently as August 11, 2023, but in none has Plaintiff disclosed "a computation of each category of damages." Fed. R. Civ. P. 26(a)(1)(A)(iii).  In other words, to date, Plaintiff has not stated any amount of damages it seeks, let alone any computation of those damages, and has failed to comply with Rule 26(a)(1)(A)(iii).

To understand the factual basis for Plaintiff's alleged damages—including, for example, the transactions at issue, the dates of those transactions, the money spent on those transactions, what products or services (whether "open web display advertising" or some other "ad tech services") were purchased in those transactions—Google served Interrogatories Nos. 4, 9, 14, and 17, and Request for Production No. 12.[2]  Plaintiff has failed to provide Google with sufficient responses to these requests.

_____

[2] Google's Interrogatories Nos. 22, 23, 24, 25, and 26 also seek factual information underpinning Plaintiff's alleged damages.  Plaintiff's responses to these interrogatories are due today.  Google will promptly advise the Court if Plaintiff's responses narrow the issues on which Google seeks the Court's intervention.

In response to Google's Interrogatory No. 14, which asks the United States to identify purchases of "open web display advertising" purchased directly by the FAA from Google during the Damages Period, Plaintiff stated that the FAAs "pay fees for ad tech services provided by Google that facilitate the FAAs' purchases of open web display advertising from publishers." Appendix at 15.  Plaintiff has refused to supplement its response to Interrogatory 14, despite Google's repeated requests—on August 1, 3, 8, 13 and 28, 2023—that it do so because the response fails to identify any purchases whatsoever, notwithstanding Plaintiff's representation that it will "make reasonable good faith efforts to identify purchases of 'open web display advertising' purchased by the Federal Agency Advertisers from Google during the Damages Period." *Id.*; Ex. 3 (correspondence between M. Goodman and Plaintiff's counsel).

Similarly, in response to Interrogatories 4 and 17, which ask for details about the ad tech products used by the FAAs during the damages period (including things like the type of product used, the amount of fees or take rate by month, the dates during which the product was used) and the amounts paid by the FAA to Google or by the FAA to any advertising agency for campaigns related to its damages claims, Plaintiff points Google to invoices, which often do not specify what purchases, if any, are of "open web display advertising" or "ad tech services provided by Google."[3]  For each FAA, Plaintiff has provided long appendices citing hundreds, and for some FAAs thousands, of invoices prepared by ad agencies and submitted to the FAAs for paid media purchases.  *See* Appendix at 7–11, 15–17.  These invoices and reports—some of which span hundreds of pages—provide little information beyond the names of vendors or subcontractors (which sometimes total more than twenty-five different vendors or subcontractors) and the total amount of money spent with those vendors or subcontractors for a given time period (typically

---

[3] Google has not included with this motion any exemplar invoices at risk of burdening the court with voluminous documents, but should the Court request such examples, Google will of course provide them.

monthly).

Interrogatory No. 9 asks for a computation of the damages sought in the Complaint and the date range for the computation—the same kind of information that DOJ is required to disclose under Rule 26. *Id.* at 11; *see* Fed. R. Civ. P. 26(a)(1)(A)(iii). However, to date, and in response to this interrogatory, Plaintiff has provided only the names of, in total, 90 FAA employees with "relevant knowledge" of the information sought by this interrogatory. Appendix at 11–15.

Request for Production No. 12 similarly seeks facts underpinning Plaintiff's damages claims. *Id.* at 28. The request seeks documents or data sufficient to show, among other things, gross amounts paid for display advertising, fees paid to any ad tech providers for such advertising, and the ad buying tools through which the advertising was purchased. As detailed more fully below, information that Google has obtained during witness depositions of FAA employees has made clear that Plaintiff has not produced certain data responsive to this request.

## B.  Discovery on Purchaser Status

As the Court recognized, Google is entitled to discovery on whether the United States and/or its "agencies and departments" is a "buyer[] of open web display advertising" or any other "ad tech services" directly from Google because, with certain narrow exceptions, only direct purchasers have antitrust standing to sue for damages under the Sherman Act. *See Illinois Brick* v. *State of Illinois*, 431 U.S. 720 (1977). When Google moved to dismiss the Amended Complaint on grounds that Plaintiff lacks antitrust standing under *Illinois Brick*, the Court rejected that argument because it found whether Plaintiff was a direct purchaser was a factual issue. Apr. 28, 2023 Hr'g Tr. (Dkt. 164) 11:16-17, 21:15–23. The Court went on to state:

> I think the only argument that defendants might have down the road—which, again, is a fact situation—is if you all had used a real middleman, then there

might be a problem, or two middlemen. So, unfortunately, that will require discovery. But, I mean, discovery shouldn't be that difficult. You ought to have the data at your hands right now. I would think probably almost a request for admissions and a couple of quickie interrogatories should probably flesh that out rather quickly.

Apr. 28, 2023 Hr'g Tr. (Dkt. 164) 21:15–23.

Google followed up on the Court's very good suggestion and served straightforward RFAs to the United States regarding its departments' and agencies' alleged purchases of open web display advertising from Google. Appendix at 1–6. As Judge Brinkema explained, whether those departments or agencies did, in fact, make direct purchases could be fleshed out in discovery "rather quickly." Apr. 28, 2023 Hr'g Tr. (Dkt. 164) 21:15-23. When the United States refused to respond to RFA 1, which asked Plaintiff to "Admit that, during the Damages Period, the Federal Agency Advertisers did not purchase 'open web display advertising' directly from Google," Appendix at 1, claiming (incorrectly) that it required a legal conclusion, Google moved to compel. A few days later, the United States served an amended response to RFA 1. *Id.*; Ex. 4 (August 7, 2023 email from A. Teitelbaum to M. Goodman and others). The response provides in pertinent part:

> *First*, the United States is unaware of the extent to which Google sells "open web display advertising" inventory on its owned-and-operated websites but, to the extent it does, and to the extent the FAAs purchased such display advertising inventory on Google's owned-and-operated websites, the FAA's [sic] practice is for the FAAs' Agencies to purchase such advertising from Google on the FAAs' behalf and for the FAA to fully reimburse the FAAs' Agencies for those purchases. Accordingly, and subject to and without waiving the foregoing objections, the United States admits that it was the FAA's [sic] practice for the FAA's [sic] Agencies to purchase "open web display advertising" from Google as agents of the FAA, pursuant to a contractual relationship.

> *Second*, to the extent that this Request For Admission No. 1 sweeps beyond the purchase of "open web display advertising" sold by Google on its owned-and-operated websites, the United States does not believe, based on the information currently known to it, that Google is a publisher of "open web display advertising." Thus, according to the United States' current understanding of the

facts, it would not be possible for anyone to purchase "open web display advertising" from Google outside of its owned-and-operated websites. On that basis alone, the United States admits that Federal Agency Advertisers did not purchase "open web display advertising" directly from Google during the Damages Period, outside of the context of Google's owned-and-operated websites. For the avoidance of doubt, whether a Federal Agency Advertiser purchased "open web display advertising" directly from Google, subject to the Oxford English Dictionary definitions applicable for the purpose of this response, is a wholly distinct question from whether the Federal Agency Advertisers constitute direct purchasers of open web display advertising services under *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720 (1977) and its progeny. As used in this response to this Request for Admission, the term "open web display advertising" does not include ad tech services that facilitate the purchase of such advertising from publishers.

Appendix at 1–2. This response does not address the request as it was asked because, as discussed further below, Plaintiff decided to interpret "open web display advertising" (its own manufactured term not used in the advertising industry) to make it impossible for anyone to purchase open web display advertising directly from Google. Plaintiff also carved out "ad tech services that facilitate the purchase of such advertising from publishers" from the response.[4]

Based on this response, Google served another set of RFAs and interrogatories seeking the same type of information, but this time using the terms and phrases used by Plaintiff itself in its answers to Google's first set of RFAs so as to avoid receiving evasive, legalese responses. *Id.* at 23–27. While Plaintiff's responses to Google's second set of RFAs and interrogatories 22 through 29 are due to be served today, Google believes, based on the objections that Plaintiff served, that the responses will, as before, fail to provide the requested information.[5]

---

[4] They do so to avoid the allegation in the Complaint that Plaintiff purchases "open web display advertising using Google and non-Google ad tech tools." Am. Compl. (Dkt. 120) ¶ 278.

[5] Google has included Plaintiff's objections to these discovery requests in the Appendix, and may ask the Court to consider those responses when filing our reply in support of this motion. Google will promptly advise the Court if Plaintiffs' responses narrow the issues or obviate the need for the court intervention on those RFAs. Appendix at 23–27.

### C.  Discovery on Market Share Allegations and Monopoly Power

Google served Interrogatories 18, 19, and 20 in order to understand the factual basis for Plaintiff's three allegations of Google's purported market share in the Amended Complaint.  *Id.* at 18–22.  For example, Interrogatory No. 18 asks the United States to "[e]xplain if, and how, you calculated that 'Google's share of the [alleged] publisher ad server market in the United States has remained above 90% for many years' as alleged in paragraph 285 of the Amended Complaint."  *Id.* at 18.  The request specifically asks the United States to provide the basis for certain values in any calculation underlying the allegation, such as the numerator used and the denominator used.  *Id.*  Google's interrogatories 19 and 20 ask the same as to Google's share of the alleged "ad exchange market," and alleged "market for advertiser ad networks for open web display advertising."  *Id.* at 20–22.

In response, Plaintiff simply restated the allegations from the Amended Complaint and referred Google to a series of files produced during the investigation phase, which purport to "provide evidentiary support for this allegation."  *Id.* at 18–22.  Plaintiff intimated that further disclosures would be forthcoming during the expert discovery period.  Plaintiff failed to provide the information that Google actually requested, including an explanation of the calculation (if any) supporting the market share allegations.

### D.  DOJ's Communications with Third Parties

Google's RFP No. 44 and Interrogatory No. 21 seek information concerning the DOJ's communications with third parties regarding the subject matter of this case through August 25, 2023.  *Id.* at 22, 29.  After DOJ objected to RFP 44 to the extent it sought documents post-dating the filing of the Complaint, Google served Interrogatory 21 on July 26, 2023 asking DOJ to identify "[f]rom the start of [its] Investigation until August 25, 2023," "each and every

Communication between the Department of Justice on the one hand, and any Potential Witness or the European Commission on the other hand, related to the subject matters of the Investigation or of the Action." *Id.* at 29.

Plaintiff's response to Interrogatory 21 is deficient because it designates DOJ's entire investigative file, while also failing to identify responsive documents from other DOJ productions in this case or to identify communications post-dating March 27, 2023, despite the fact that the interrogatory specifically requested information through August 25 2023. *Id.* at 22–23. But as recent testimony from third parties has confirmed, communications through August 25, 2023 are both necessary and relevant because DOJ continued to speak and meet with industry participants after March 27, 2023 to prepare its case. Ex. 5 (Lambert Tr. at 224:20–234:24). Although DOJ indicated that its investigation and production is "ongoing," and that it would supplement its response as it identifies additional information, DOJ has yet to do so, even though it appears they have continued to produce responsive communications, including as recently as September 6, 2023.

### E.  The Court's September 1, 2023 Hearing

On September 1, 2023, Judge Anderson held a hearing on DOJ's Motion for a Protective Order with respect to certain topics noticed in Google's 30(b)(6) Notice to the United States. Recognizing that the United States as a party to the case had an obligation to produce a 30(b)(6) witness on topics relevant to a claim or defense in the case, the Court denied the United States' motion and required the United States to produce a witness to testify on its behalf as to certain topics. Dkt. 377; Sept. 1 Hr'g Tr. (Dkt. 398) 31:23–33:21. Several of these topics, including Topic 29 ("Your involvement and communications with any third parties concerning the Investigation and/or this Action"), Topic 36 ("All communications, including written, oral,

face-to-face, telephonic, videoconference, or otherwise with any representative of the European Commission concerning the Investigation or this Action"), and Topic 39 ("Your market share calculations as alleged in the Complaint for the alleged publisher ad server market, ad exchange alleged market, and alleged market for advertiser ad networks for open web Display Advertising"), pertain to Google's discovery requests at issue in this Motion.

The same day, the Court heard argument on Google's Motion to Compel (Dkt. 304).  Dkt. 375.  Although the Court found that certain documents involving *communications* between the FAAs and their ad agencies related to the FAAs' online advertising purchases were protected work product, the Court nevertheless instructed:

> [T]he information [from ad agencies about their advertising purchases] itself is producible . . . . You're entitled to that information. If you're not getting it, you file a motion to compel. . . . [I]f you want information about how advertising is purchased, obtained, however it's done, about the facts and circumstances of how it's directed and those types of things, that's information that [Google is] entitled to.

Sept. 1 Hr'g Tr. (Dkt. 398) at 80:5–23.

## II.   APPLICABLE LEGAL STANDARD

The Federal Rules of Civil Procedure provide a broad baseline for discovery as a party is entitled "to discover any material that is relevant to any party's claim or defense, is nonprivileged, and is proportional to the needs of the case."  *BASF Plant Sci., LP* v. *Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citing Fed. R. Civ. P. 26(b)(1)).  This right to relevant discovery includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Tube-Mac Indus., Inc.* v. *Campbell*, 2021 WL 6332354, at *1 (E.D. Va. June 10, 2021) (quoting *Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978)).  It is well accepted that "[t]he burden is on the person objecting to the discovery . . . to demonstrate that

such discovery should not be permitted." *Rhodenizer* v. *City of Richmond Police Dep't*, 2009 WL 3334744, at *3 (E.D. Va. Oct. 14, 2009).

**Rule 36** provides that a "party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A).   The Advisory Committee Notes make clear that the purpose of the rule is to "facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."  Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment; *see also Erie Ins. Prop. & Cas. Co.* v. *Johnson*, 272 F.R.D. 177, 183 (S.D.W. Va. 2010) (purpose of requests for admission is to reduce trial time and narrow the scope of issues in dispute).   A party has a duty to conduct a reasonable inquiry in responding to requests for admissions, and Rule 36 requires meaningful responses.  *Id.*; *see also Susko* v. *City of Weirton*, 2010 WL 1881933, at *14 (N.D.W. Va. May 7, 2010) ("Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play.") (citation omitted).   Where a court determines that a response to a request for admission does not comply with the requirements of Rule 36, it may order either that the matter is deemed admitted or that the responding party serve an amended answer.   Fed. R. Civ. P. 36(a)(6). Likewise, Federal Rule of Civil Procedure 37 and Local Civil Rule 37(A) allow parties to seek a court order to compel responses to interrogatories and document requests.

**Rule 33** provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b).   An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]"  Fed. R. Civ. P.

12

33(a)(2); *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 428 (N.D.W. Va. 2006) ("parties may use interrogatories to ask questions regarding: evidence on which an opposing party bases some specific contention; a position taken by a party and an explanation or defense for that position with respect to how the law applies to the facts; and the legal basis for, or theory behind, some specific contention.") (citations and quotations omitted). "Under Federal Rule of Civil Procedure 37, a motion to compel is proper when a party fails to answer an interrogatory, and an evasive or incomplete answer must be treated as a failure to answer." *NewMarket Corp.* v. *Innospec Inc.*, 2011 WL 1306008, at *3 (E.D. Va. Apr. 1, 2011) (citing Fed. R. Civ. P. 37(a)(3)(B), (a)(4)).

**Rule 34** provides that "a party may serve on any other party a request within the scope of Rule 26(b) to produce . . . any designated documents or electronically stored information[.]" Fed. R. Civ. P. 34(a)(1)(A). "When discovery disputes arise, the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Humanscale Corp.* v. *CompX Int'lInc.*, 2009 WL 5091648, at *2 (E.D. Va. Dec. 24, 2009) (citing *Finley* v. *Trent*, 955 F. Supp. 642, 648 (4th Cir. 1997)).

## III.   ARGUMENT

### A. Google Is Entitled to Discovery Responses Regarding The Factual Basis for Plaintiff's Alleged Damages

#### 1.   Plaintiff's Initial Disclosures Fail To Comply With Rule 26(a)(1)(A)(iii).

Plaintiff's Initial Disclosures pertaining to damages are patently deficient under Rule 26(a)(1)(A)(iii). Rule 26(a)(1)(A)(iii) requires a party to disclose "a computation of each category of damages claimed by the disclosing party—who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." Fed. R. Civ. P.

26(a)(1)(A)(iii).  "[A] party's Rule 26(a)(1)(A)(iii) disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations."  *Silicon Knights, Inc.* v. *Epic Games, Inc.*, 2012 WL 1596722, at *1 (E.D.N.C. May 7, 2012).  Further, a party does not fulfill its Rule 26 obligation by providing "'undifferentiated financial statements; it requires a 'computation,' supported by documents.'"  *Id.* (quoting *Design Strategy, Inc.* v. *Davis,* 469 F.3d 284, 295 (2d Cir. 2006)).  If a party fails to timely provide the information required under Rule 26(a) or timely supplement that information under Rule 26(e), "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

First, Plaintiff has only disclosed that the FAAs collectively spent approximately $300,000,000 on "open web display advertising."  This "disclosure" is nothing of the sort: it is not specific to money spent on Google products or services, but extends to any provider of "open web display advertising."  It is not a lump sum damages figure, but rather a gross spend amount across multiple vendors—in other words, not a computation of damages, as Rule 26 requires. *Advanced Training Grp. Worldwide, Inc.* v. *Proactive Techs. Inc*, 2020 WL 4574493, at *4 (E.D. Va. Aug. 7, 2020) ("where a party only discloses a lump sum or merely refers to documents from which the opposing party can presume damages, the disclosing party has not met its obligation" under Rule 26).

Second, Plaintiff does not point to any "documents or other evidentiary material," Fed. R. Civ. P. 26(a)(1)(A)(iii), supporting its claim that the FAAs spent $300 million on "open web display advertising," let alone any documents that support a computation of damages.  This is

patently insufficient; Rule 26 requires that a plaintiff provide a "'computation,' supported by documents." *Silicon Knights, Inc.*, 2012 WL 1596722, at *1 (quoting *Davis*, 469 F.3d at 295).

Third, Plaintiff has no explanation for its failure to provide a damages computation. Instead, Plaintiff suggests that further explanation will be provided later on by experts. But Rule 26(a)(1)(A)(iii) does not have a "wait until expert discovery" safety valve. Google is entitled to this information now, with the specificity that Rule 26 requires. *See Albert S. Smith Co., Inc.* v. *Motes*, 2019 WL 10959830, at *1 (D. Md. May 9, 2019) (rejecting argument that its damages calculation will be the subject of expert disclosure, finding the party "has a duty to provide a calculation of his damages at this stage in the litigation, although it may be subject to further supplementation"). The potential that Plaintiff will obtain additional information concerning damages as expert discovery proceeds does not absolve Plaintiff from its Rule 26 obligations, because Rule 26 requires a party to disclose, "*without awaiting a discovery request*," this damages computation. Fed. R. Civ. P. 26(a)(1)(A) (emphasis added); *see also Dickman* v. *Banner Life Ins. Co.*, 2017 WL 4342064, at *6 (D. Md. Sept. 28, 2017) (response that "the question" regarding the plaintiff's damages calculation "is 'premature at this early stage in the litigation' is a totally inadequate response").

Plaintiff's failure to comply with Rule 26 significantly prejudices Google in its ability to defend itself in a compressed discovery schedule in an extremely complex case. This Court should therefore order Plaintiff to supplement its Rule 26(a)(1)(A)(iii) disclosure, or risk exclusion under Rule 37. *See S. States Rack & Fixture, Inc.* v. *Sherwin–Williams Co.,* 318 F.3d 592, 597 (4th Cir. 2003) (setting forth factors courts consider when exercising their discretion to remedy a Rule 26 violation, including exclusion of evidence at trial).

### 2. Google Is Entitled to Supplemental Responses Which Actually Answer Its Interrogatories.

Interrogatories 4, 9, 14, and 17 seek information regarding the factual basis for Plaintiff's alleged damages, falling "comfortably" within the scope of discoverable information relevant to Plaintiff's claims. *Daniels* v. *Hyster-Yale Grp., Inc.*, 2020 WL 2334088, at \*10 (E.D.N.C. May 11, 2020) (interrogatory seeking evidentiary support for party's damages claim "falls comfortably within the scope of items that are 'relevant to any party's claim'") (quoting Fed. R. Civ. P. 26(b)(1)).

As noted above, these interrogatories seek, among other things:  the types of ad tech products used and the amount of fees paid by month for each ad tech product (Interrogatory No. 4); a computation of damages and the date range for the computation (Interrogatory No. 9); the FAAs' purchases of "open web display advertising" from Google during the damages period (Interrogatory No. 14); and the amounts paid by the FAA to Google or by the FAA to an ad agency in connection with the FAAs' damages claim (Interrogatory No. 17).[6]  Plaintiff's responses to Google's Interrogatories 4, 9, 14, and 17 are plainly deficient because they do not answer the questions asked.  Fed. R. Civ. P. 33(b)(3).  At most, Plaintiff directs Google to hundreds (sometimes even thousands) of invoices to wade through to uncover the basis of Plaintiff's damages claims.  In some cases (*e.g.*, responses to Interrogatory 17), Plaintiff responds by referring Google to *another* prepared interrogatory response which cites to an

---

[6] Google's Interrogatories Nos. 22 through 26 similarly seek: the FAAs purchases of "ad tech services" directly from Google during the damages period (Interrogatory No. 22); the type of "ad tech service" purchased by the FAA in that transaction (Interrogatory No. 23); the amount paid by the FAA for each purchase (Interrogatory No. 24); any FAA payments made to Google for "ad tech services" during the damages period and the method of transmission (Interrogatory No. 25); any payments made to Google by the FAA's alleged agents or intermediaries during the damages period (Interrogatory No. 26).  As noted above, Plaintiff's responses to these interrogatories are due today.  Google will promptly advise the Court if Plaintiff's responses narrow the issues on which Google seeks the Court's intervention.

appendix full of invoices, making it impossible to discern which documents are responsive to which specific interrogatory, let alone identify within those voluminous documents what information is actually responsive to Google's interrogatories.  In doing so, Plaintiff improperly shifts the burden to Google to substantiate Plaintiff's damages claim.  *See Ruddy* v. *Bluestream Pro. Serv.*, *LLC*, 2020 WL 13694227, at *4 (E.D. Va. July 16, 2020) (rejecting argument that "defendants should be able to calculate plaintiff's damages for her by reviewing their wage and salary documents and speculating as to what damages plaintiff will claim").

And under Rule 33(d), Plaintiff's approach does not pass muster; if a party seeks to avail itself of Rule 33(d), it must comply with its mandate to specify the records "in sufficient detail" that would enable Google to identify the responsive information as readily as Plaintiff could.  *See Securities & Exchange Comm'n* v. *Elfindepan*, 206 F.R.D. 574, 577 (M.D.N.C. 2002) (finding Rule 33(d) inapplicable, in part, because plaintiff's interrogatory response was "more in the nature of a document dump than a specification of documents" and plaintiff had "failed to show that it would be no more burdensome for defendants to go through voluminous documents to pull out answers than for plaintiff").

Google is entitled to factual information pertaining to Plaintiff's damages *now*, even if Plaintiff will produce an expert report regarding the issue later, and even if Plaintiff is still continuing to assess its damages claims.  *See, e.g.*, *Bradley* v. *Val-Mejias*, 2001 WL 1249339, at *3 (D. Kan. Oct. 9, 2001) ("The fact that Plaintiff may later supplement his interrogatory response with an expert report does not permit him to refuse to respond at the present time with whatever discoverable information he presently holds."); *Cable & Computer Tech., Inc.* v. *Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997) ("although it is too early for plaintiff to provide expert opinions on the subject of damages, plaintiff may, at this time, answer

17

interrogatory no. 1 based on the information it has to date").

### 3. Google Is Entitled to Documents Or Data Within Plaintiff's Possession, Custody and Control Responsive to RFP 12.

Google's RFP No. 12 asks Plaintiff to produce documents or data sufficient to show information that is pertinent to Plaintiff's basis for alleged damages, including the impressions purchased, the gross amount paid for such impressions, and the total fees paid to ad tech providers. Again, this information is plainly relevant and discoverable, *see Daniels*, 2020 WL 2334088, at *10, but Plaintiff's productions to date have been deficient.

First, Plaintiff has failed to produce data that it had the ability to obtain from the Army's ad agency contractor, as explained during the deposition of Omnicom (parent entity of DDB) on August 29, 2023. As the witness explained, personnel from the ad agency contractor met with Plaintiff twice in a two-week period sometime after May 2023, and offered a template document that would contain "data going back at least three years that show purchases on the Army's behalf for Google's products," but Plaintiff "never even asked" DDB "to fill in that template" or otherwise sought to get that data from the ad agency following those meetings. Ex. 5 (Lambert Dep. Tr. 234:9–12; 238:15–20).

This testimony undermines the assertions in Plaintiff's August 7, 2023 letter, in which counsel for Plaintiff states, "we sought to obtain the data responsive to RFP No. 12 that DDB maintains on Army's behalf through the government contracting process. Despite diligent attempts to obtain this data, we recently have discovered that we will not be able to receive this data prior to the close of fact discovery." Ex. 6 (August 7, 2023 Letter from K. Clemons to M. Goodman). Rather than diligently pursuing data from DDB when DDB was more than willing to provide it to Plaintiff, Plaintiff instead requested it from Google for all FAAs, including on

August 7 when serving an RFP for "all invoicing data issued by Google to any entity for purchases of display advertising made by or on behalf of any FAA." (Dkt. 343 at 4).

As another example, Plaintiff has still not produced the cost and spend data provided to the U.S. Navy by the ad agency Wavemaker.  Google has requested this data, including during the deposition, in follow-up emails, during a meet-and-confer, and by letter, but has not received *any* response from Plaintiff.  This is the type of information to which the Court said Google is entitled.  Sept. 1, 2023 Hr'g Tr. (Dkt. 398) 80:19–23 ("[I]f you want information about how advertising is purchased, obtained, however it's done, about the facts and circumstances of how it's directed and those types of things, that's information that [Google is] entitled to.")

### B. Google is Entitled to Discovery Regarding the FAAs' Status as Direct Purchasers under *Illinois Brick*

Plaintiff continues to stonewall Google's attempts to uncover very basic, yet critical information regarding the purchasing practices at the heart of Plaintiff's claims for damages.  As this Court has recognized, Google is entitled to discovery on the United States' damages claim, including whether the United States is a "buyer[] of open web display advertising" directly from Google because, with certain narrow exceptions, only direct purchasers have antitrust standing to sue for damages under the Sherman Act.  *See Illinois Brick* v. *State of Illinois*, 431 U.S. 720 (1977); Sept. 1 Hr'g Tr. (Dkt. 398) 80:5–23.  Google's RFAs, as well as its Interrogatories Nos. 22–29, seek this very information, using the same terminology that DOJ used in its (deficient) amended response to Google's RFA 1.[7]

---

[7] Plaintiff's responses to RFAs 4–12 and Interrogatories 22–29 are due today.  Google will promptly advise the Court if Plaintiff's responses narrow the issues on which Google seeks the Court's intervention.

**1. Plaintiff Must Be Ordered To Provide Supplemental Responses to RFAs 1 through 3.**

Plaintiff's responses to RFAs 1–3 are deficient because they do not respond to the pertinent questions asked.  These admissions sought to confirm the basics of how the FAAs pay for and purchase actual advertising: not directly to (pay) or from (purchase) Google.  Plaintiff re-wrote the requests to evade this fundamental and basic issue.  Combined with Plaintiff's utter failure to identify any purchases for which it claims damages, as outlined above, Plaintiff has completely stonewalled Google's ability to understand the nature of the transactions underlying the claims for damages.

In RFA 1, Google asks Plaintiff to "[a]dmit that, during the Damages Period, the [FAAs] did not purchase 'open web display advertising' directly from Google."  Appendix at 1.  Rather than admit or deny the request as asked, Plaintiff re-writes it; it responds by stating "[a]s used in this response . . . the term 'open web display advertising' does not include ad tech services that facilitate the purchase of such advertising from publishers."  Appendix at 1–2.  In doing so, Plaintiff capitalizes on its self-made distinction between "open web display advertising," which it claims means "display advertising inventory on Google's owned and operated websites" (i.e. advertising inventory sold to advertisers on Google's websites) and "ad tech services that facilitate the purchase of such advertising from publishers."  Put differently, Plaintiff re-wrote and thereby evaded the RFA to carve out Google's "ad tech services" that help advertisers purchase those advertisements and publishers sell their inventory to advertisers, the very technology at issue in this suit and the subject of Plaintiff's alleged damages.

RFA 3 is a straightforward request to discern whether FAAs used ad agencies (i.e., intermediaries for the purposes of *Illinois Brick*), to purchase advertising.  RFA 3 asks Plaintiff to "[a]dmit that during the Damages Period, the [FAAs] paid Agencies for the use of Ad Tech

Products offered by Google."  Appendix at 2.  After objecting to the phrase "paid for the use of" as vague or ambiguous, Plaintiff responds:

> The United States notes that the FAAs' Agencies do not sell ad tech services but that these Agencies may purchase "open web display advertising" on behalf of the FAAs through ad tech tools which impose fees on the FAA's successful bids for advertising purchases. Such purchases are made pursuant to paid media plans, which the Agencies develop and the FAAs approve, to meet the FAAs' advertising needs. The costs of any executed paid media buys, including the fees charged by any ad tech providers, are borne exclusively by the FAAs. Accordingly, and subject to and without waiving the foregoing objections, the United States, based on the definition of "pay" Google provided in its July 11 Letter, denies that the FAAs paid Agencies "for the use of" Ad Tech Products because the Agencies do not sell ad tech services and admits the FAAs paid Agencies for the costs incurred in connection with their use of Ad Tech Products on behalf of the FAAs.

Appendix at 3.  This response does not admit or deny that the FAAs paid advertising agencies, stating that the costs of the advertising "are borne exclusively by" the FAA (which does not answer Google's request or the fundamental issue under *Illinois Brick*) and then denies that the FAAs paid the Agencies "for the use of" ad tech products.  That is not responsive.

Plaintiff's response to RFA 2 is in the same vein, and also not responsive.  Appendix at 2.

The purpose of requests for admission is to narrow the questions for trial.  *Erie Ins. Property & Casualty Co.* v. *Johnson*, 272 F.R.D. 177, 183 (S.D.W. Va. 2010).  Responses to requests for admission that do not address the pertinent question are evasive and should be supplemented to respond to the actual question raised.  *E.g., ProDox, LLC* v. *Prof'l Document Servs.*, 2021 WL 5370236, at *2 (D. Nev. Nov. 16, 2021) (finding that "[t]he pertinent question is aimed at Defendant's understanding of its obligations. Defendant's response as to entering a settlement agreement is evasive. Accordingly, Defendant must provide a supplemental answer").

Taking the responses to RFAs 1–3 combined, Plaintiff has utterly failed to answer the pertinent questions and has only made the record more unclear with its evasive responses.

Although the Complaint says "Google's violations of the Sherman Act have caused the United States to incur monetary damages, as the United States and its various agencies and departments are buyers of open web display advertising," Am. Compl. (Dkt. 120) ¶ 341, based on Plaintiff's RFA responses, it now appears Plaintiff is differentiating between "ad tech services" to "facilitate" open web display advertising and open web display advertising itself for purposes of its damages claims.  And in so doing, Plaintiff has further obfuscated the purchases of any product or service for which it seeks damages.  Plaintiff runs away from the language in its own pleading in an attempt to avoid a very simple, threshold issue—how it purchases the Google products or services for which it seeks damages.

### 2. Plaintiff's Objections to RFAs 4 through 12 and Interrogatories 22 through 29 Should Be Overruled.

As discussed in Section I.B., *supra* 6–8, in light of Plaintiff's responses to RFAs 1–3, which raised more questions than they answered, and because the United States refused to provide an unequivocal, non-legalese answer to RFA 1 even in the face of a motion to compel, Google chose to serve a another set of RFAs (4–12) and of interrogatories (22–29) seeking the same type of information, but this time using the terms and phrases used by Plaintiff itself in its (non)answers to Google's first set of RFAs.  As for Google's RFAs 4–12 and interrogatories 22–29, none of Plaintiff's objections in response to these requests have merit, and the objections should therefore be overruled for the following reasons:

First,  RFAs 4–12 and Interrogatories Nos. 22–29 do not call "for a legal conclusion that is one of the ultimate issues of the case"—whether the United States has antitrust standing to sue for damages.  *Career Counseling, Inc.* v. *AmeriFactors Fin. Grp., LLC*, 2022 WL 286189, at *8, n.9 (D.S.C. Jan. 31, 2022); *see also Kendrick* v. *Sullivan*, 125 F.R.D. 1, 2–3 (D.D.C. 1989) (distinguishing between permissible interrogatories, which involve application of law to facts,

and impermissible contention interrogatories, which "involve issues of 'pure law'").  Rather, while DOJ's answers may have legal implications under *Illinois Brick*, that is precisely the point: each side can argue whatever legal conclusions may flow from the admission of fact sought by the RFAs and Interrogatories.  *See Simpson* v. *Ocwen Loan Servicing, LLC*, 2020 WL 1465740, at *5 (N.D.W. Va. Mar. 25, 2020) (RFA seeking admission that respondent "became in arrears on your payments" due under a loan did not call for legal conclusion, and was "hardly the legalese often seen in discovery requests"); *Donovan* v. *Porter*, 584 F. Supp. 202, 209–10 (D. Md. 1984) (interrogatory seeking facts on which defendants base their contention that "the loan was not made to a party in interest" were within the "legitimate scope of discovery").

Google's definition of the term "directly" using the Oxford English Dictionary and its explanation that the terms "cost-plus" and "fixed' contracts can be interpreted using the Federal Acquisition Regulations ("FAR") further eliminates any objection that the RFAs and Interrogatories call for any legal analysis or conclusion.  Google defined "directly" according to its ordinary meaning—"without the intervention of a medium or agent; immediately, by a direct process or mode." Ex. 7 at 2 (July 11, 2023 Letter from H. Milligan to K. Clemons).  There is no daylight between the definition of the term "directly" in the Oxford English Dictionary and the Court's practical suggestion of issuing an RFA to determine whether the United States used a middleman to purchase open web display advertising.  Moreover, as the FAA testimony to date has shown, the contract terms "cost-plus" and "fixed" are commonly understood and widely used by non-lawyer FAA employees who are familiar with the FAR in the course of their work.

Second, to the extent that Plaintiff continues to object to the use of the terms "ad tech services," "facilitate the purchase of" and "for the use of" when responding to Google's RFA 4–12 and Interrogatories 22–29, as vague and ambiguous, those objections lack merit and beggar

belief.[8]   As an initial matter, a party must respond to a discovery request where a term has a common meaning capable of common-sense interpretation.  *See United States* v. *Virkutis*, 1987 WL 7806, at *5 (N.D. Ill. Mar. 11, 1987) (addressing RFAs); *Deakins* v. *Pack*, 2012 WL 242859, at *12 (S.D.W. Va. Jan. 25, 2012) (addressing interrogatories).  In addition, and with respect to "ad tech services" and "facilitate the purchase of" in particular, Google adopted these phrases in its requests specifically because they are the exact phrases Plaintiff used in responding to Google's RFA 1.  Google expressly asked Plaintiff to respond to Google's RFAs 4–12 by giving the phrase "ad tech services" the same meaning the United States gave the term in its response to RFA 1.  Plaintiff has used these phrases in responding to additional Google discovery requests, including Interrogatory No. 14.  It is impossible to believe that Plaintiff now cannot understand a term that Plaintiff itself coined in sworn responses to Google's discovery responses.[9]

Third, Google's RFAs 5, 6, 7, 8, and 9, are not "duplicative" of prior interrogatories. "The methods of discovery are complementary, not alternative or exclusive." *Rogers* v. *Tri-State Materials Corp*., 51 F.R.D. 234, 241 (N.D.W. Va. 1970).  RFAs remain distinct because, unlike an interrogatory, they are not "discovery devices" designed to gather information, but instead

---

[8] In its objections to Interrogatories 26, 27, 28, and 29, Plaintiff also objects to the term "agents or intermediaries for any Federal Agency Advertiser" as "vague and overly broad because it may include agents or intermediaries who have contracts with Google for products or services outside the scope of the Amended Complaint."  Appendix at 25–26.  Although the meaning of this phrase is evident from its context, for the avoidance of doubt, Google clarifies that it is only seeking information about agents or intermediaries who have contracts with Google, or make purchases from Google, for products and services *within* the scope of the Amended Complaint.

[9] On September 6, 2023, after receiving Google's letter giving notice that it would be filing this motion, Plaintiff informed Google that it would be "provid[ing] a definition of 'ad tech services' for the purposes of responding to your discovery requests that is consistent with our understanding of that term in the context of our responses to Google's First Set of Requests for Admission; and (2) will apply the applicable FAR definitions to the terms 'cost-plus' and 'fixed contracts' in preparing our responses."  Ex. 8 (Sept. 6, 2023 Letter from J. McBirney to M. Goodman).  Should Plaintiff provide straightforward non-legalese definitions and responses to RFAs 4–12 and Interrogatories 22–29 such that any of the issues raised in this motion are narrowed or resolved, Google will promptly inform the Court.

serve a distinct purpose:  they are "designed to narrow the issues for trial."  *Nguyen* v. *Winter*, 756 F. Supp. 2d 128, 129 (D.D.C. 2010).

Google is entitled to the threshold information it seeks in RFAs 1–3 (as well as 4–12 and Interrogatories 22–29) which seek key factual admissions to inform its *Illinois Brick* defense and narrow this issue.  Google requests that the Court compel Plaintiff to supplement its responses to RFAs 1–3 or deem them admitted.

**C. Google is Entitled to Complete Answers On Plaintiff's Allegations of Google's Alleged Market Share**

Google's Interrogatories 18, 19, and 20 seek the basis for Plaintiff's allegations pertaining to Google's market share of the alleged "publisher ad server market," "ad exchange market," and "market for advertiser ad networks for open web display advertising."  *See* Appendix at 18–21. Google's alleged market share is relevant to whether Google has monopoly power within the markets as Plaintiff has defined them, and is thus plainly relevant and discoverable.  *See Kolon Indus. Inc.* v. *E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173–75 (4th Cir. 2014) (considering defendant's market share in determining whether defendant possesses monopoly power in the relevant market).  As discussed below, Plaintiff's objections and responses to these interrogatories are improper and insufficient, and Plaintiff must be required to supplement them and provide complete answers to the questions asked.

Plaintiff's objections to these requests are improper and should therefore be overruled because they are mere "boilerplate." *Barb* v. *Brown's Buick*, 2010 WL 446638, at *1 (E.D. Va. Feb. 2, 2010).  Plaintiff objects by saying these topics will be the subject of expert testimony. Even so, Google is entitled to a discovery response on the factual basis for DOJ's market share calculations.  Google is also entitled to know if there are no calculations underlying the allegations if they are instead based on some other facts.  DOJ had to have some factual basis for

these market share allegations, and it is that factual basis about which Google seeks discovery. *See Bradley*, 2001 WL 1249339, at \*3.  The Court has recognized as much in ruling that Plaintiff must prepare a designee to testify with respect to Google's 30(b)(6) Topic No. 39: "Your market share calculations as alleged in the Complaint for the alleged publisher ad server market, ad exchange alleged market, and alleged market for advertiser ad networks for open web Display Advertising."  *See* Sept. 1 Hr'g Tr. (Dkt. 398) 31:23–33:21.

Plaintiff's responses to these requests are insufficient because they merely restate the allegations from the Amended Complaint and refer Google to a series of massive raw data files produced to Plaintiff during its investigation by Google and some of Google's competitors, Appendix at 18–22, leaving Google in no better position to understand Plaintiff's market share calculations than it was before receiving this deficient response.  And Plaintiff fails to provide the information that Google *actually* requested, including an explanation of the calculations underlying the alleged market share percentages should such calculations exist.  *See Jones* v. *Varsity Brands, LLC*, 2022 WL 1124951, at \*14 (W.D. Tenn. Apr. 14, 2022) (ordering party to respond to interrogatory seeking information regarding market share to the extent the responding party had "previously made [] market share evaluations or calculations"); *Morley* v. *Square, Inc.*, 2015 WL 6796832, at \*3 (E.D. Mo. Nov. 6, 2015) (noting defendants' "continuing obligations to supplement their . . . responses" to an interrogatory requesting market share calculations to the extent the information exists and was going to be provided to defendants' experts).

### D.  Google Is Entitled to Complete Discovery Of DOJ's Communications With Third-Party Industry Participants and Foreign Regulators

Google asks the Court to compel production of communications exchanged between DOJ and third parties regarding the subject matter of this case through August 25, 2023, as sought by Google's discovery requests.  These documents are responsive to RFP  44 and relevant because

26

the views of third-party industry participants regarding digital advertising is evidence of the "commercial realities" against which relevant antitrust markets are defined, and which could undermine Plaintiff's gerrymandered, alleged relevant markets.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 442 (4th Cir. 2011).  In addition, the Court has ordered Plaintiff to produce a designee to testify on such communications, recognizing their relevance and discoverability.  *See* Sept. 1 Hr'g Tr. (Dkt. 398) 31:23–33:21 (denying DOJ's motion for a protective order as to Topics 29 and 36, among others, by finding that the topics seek information that could "be relevant to a claim or defense and not protected").  Plaintiff has already agreed to produce "post-complaint communications exchanged between the Antitrust Division and third-party industry participants and foreign or international enforcement agencies related to the subject matter of this case" through March 27, 2023.  Appendix at 29.  Google simply asks that Plaintiff supplement that production through August 25, 2023, as Google has done.

Google also asks that the Plaintiff supplement its response to Interrogatory 21—on which the Court ordered Plaintiff to prepare a 30(b)(6) witness at the September 1 hearing.  Sept. 1 Hr'g Tr. at 31:23–33:21.  Plaintiff's current response is both improper and insufficient to the extent it incorporates by reference its response to Interrogatory No. 3.  Appendix at 22.  Incorporating its response to a prior interrogatory response is improper because interrogatory answers "generally should not refer to . . . other interrogatories," *Fint* v. *Brayman Constr. Corp.*, 2018 WL 5116097, at *2–4 (S.D.W. Va. Oct. 19, 2018), and it is insufficient because Plaintiff's response to Google's Interrogatory No. 3 simply lists the names of seven foreign or international enforcement agencies, and 317 "third-party industry participants" contacted by Plaintiff during its investigation.  Ex. 9 at 6–9.  Further, pursuant to Rule 33(d), Plaintiff designated its entire investigative file as responsive—but this response is both over- and under-inclusive.

Designating the entire investigative file does not comply with Rule 33(d) and is thus overinclusive; at the same time, Plaintiff has produced communications with third parties that have not been included among the documents it designated, *e.g.*, Exs. 10–11 (DOJ-ADS-0000067882 and DOJ-ADS-0000068646), thereby making its response incomplete on its face and for failing to provide any communications post-dating March 27, 2023.

To the extent Plaintiff has argued in its discovery responses that Google should also produce communications with third parties through August 25, 2023, complete equality in this regard is not what is required by Rule 26. *See National Acad. of Rec. Arts Sci.* v. *on Pt. Events*, 256 F.R.D. 678, 680 (C.D. Cal. 2009) ("discovery is not conducted on a 'tit-for-tat' basis" and "discovery by one party does not require any other party to delay its discovery"). The parties are differently situated. Plaintiff is the investigator, and Plaintiff continues to have conversations with third parties during the litigation to shore up its claims. Finally, and without conceding that reciprocity as to this request is proper, Google notes that Plaintiff's objections do not accurately reflect the discovery Google has agreed to produce with respect to similar requests; Google is producing its outside counsels' communications with third parties through August 25.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court (1) grant this motion to compel and order Plaintiff United States to supplement its Rule 26(a)(1)(A)(iii) disclosure and to produce sufficient responses to: Google's RFAs Nos. 1–3; Google's Interrogatories Nos. 4, 9, 14, 17–21; and Google's RFPs 12 and 44; and (2) overrule Plaintiff's improper objections to Google's RFAs 4–12 and Interrogatories Nos. 22–29.

Dated: September 8, 2023

Respectfully submitted,

*/s/ Craig C. Reilly*

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Scott A. Eisman (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
 CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie H. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Joseph Bial (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB #93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
kdunn@paulweiss.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3387
Facsimile:  (212) 492-0387
ejmorgan@paulweiss.com

*Counsel for Defendant Google LLC*