# EXHIBIT 13
# PUBLIC REDACTED VERSION

## PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(202) 223-7317

WRITER'S DIRECT FACSIMILE
(202) 204-7359

WRITER'S DIRECT E-MAIL ADDRESS
jkanter@paulweiss.com

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

PARTNERS RESIDENT IN WASHINGTON
JUSTIN ANDERSON
DAVID J. BALL
J. STEVEN BAUGHMAN
CRAIG A. BENSON
JOSEPH J. BIAL
ANDREW J. FORMAN
KENNETH A. GALLO
ROBERTO J. GONZALEZ
JONATHAN S. KANTER
MARK F. MENDELSOHN
JANE B. O'BRIEN
ALEX YOUNG K. OH
JEANNIE S. RHEE
CHARLES F. "RICK" RULE
TERRY E. SCHIMEK
KANNON K. SHANMUGAM

PARTNERS NOT RESIDENT IN WASHINGTON
MATTHEW W. ABBOTT*
EDWARD T. ACKERMAN*
JACOB A. ADLERSTEIN*
ALLAN J. ARFFA*
ROBERT A. ATKINS*
SCOTT A. BARSHAY*
PAUL M. BASTA*
JOHN F. BAUGHMAN*
LYNN B. BAYARD*
MITCHELL L. BERG*
MARK S. BERGMAN
DAVID M. BERNICK*
BRUCE BIRENBOIM*
H. CHRISTOPHER BOEHNING*
ANGELO BONVINO*
ROBERT BRITTON*
DAVID W. BROWN*
SUSANNA M. BUERGEL*
JESSICA S. CAREY*
DAVID CARMONA*
GEOFFREY R. CHEPIGA*
ELLEN N. CHING*
WILLIAM A. CLAREMAN*
LEWIS R. CLAYTON*
YAHONNES CLEARY*
JAY COHEN
KELLEY A. CORNISH*
CHRISTOPHER J. CUMMINGS*
THOMAS V. DE LA BASTIDE III*
ARIEL J. DECKELBAUM*
ALICE BELISLE EATON*
ANDREW J. EHRLICH*
GREGORY A. EZRING*
ROSS A. FIELDSTON*
ANDREW C. FINCH*
BRAD J. FINKELSTEIN*
BRIAN P. FINNEGAN*
ROBERTO FINZI*
PETER E. FISCH*
HARRIS FISCHMAN*
MARTIN FLUMENBAUM*
ANDREW J. FOLEY*
HARRIS B. FREIDUS*
CHRISTOPHER D. FREY*
MANUEL S. FREY*
ANDREW L. GAINES*
MICHAEL E. GERTZMAN*
ADAM M. GIVERTZ*
SALVATORE GOGLIORMELLA*
NEIL GOLDMAN*
MATTHEW B. GOLDSTEIN*
CATHERINE L. GOODALL*
ERIC GOODISON*
CHARLES H. GOOGE, JR.*
ANDREW G. GORDON*
BRIAN S. GRIEVE*
UDI GROFMAN*
NICHOLAS GROOMBRIDGE*
BRUCE A. GUTENPLAN*
ALAN S. HALPERIN*
CLAUDIA HAMMERMAN*
BRIAN S. HERMANN*
MICHELE HIRSHMAN*
DAVID S. HUNTINGTON*
AMRAN HUSSEIN*
LORETTA A. IPPOLITO*
JAREN JANGHORBANI*
BRIAN M. JANSON*
JEH C. JOHNSON*
MEREDITH J. KANE*
BRAD S. KARP*
PATRICK N. KARSNITZ*
JOHN C. KENNEDY*
BRIAN KIM*
KYLE J. KIMPLER*
ALAN W. KORNBERG
DANIEL J. KRAMER*
DAVID K. LAKHDHIR
JOHN E. LANGE*
GREGORY F. LAUFER*
BRIAN C. LAVIN*
XIAOYU GREG LIU*
LORETTA E. LYNCH*
JEFFREY D. MARELL*
MARCO V. MASOTTI*
DAVID W. MAYO*
ELIZABETH R. MCCOLM*
JEAN M. MCLOUGHLIN*
ALVARO MEMBRILLERA*
CLAUDINE MEREDITH-GOUJON*
WILLIAM B. MICHAEL*
JUDIE NG SHORTELL*
CATHERINE NYARADY*
BRAD R. OKUN*
KELLEY D. PARKER*
LINDSAY B. PARKS*
VALERIE E. RADWANER*
JEFFREY J. RECHER*
CARL L. REISNER*
LORIN L. REISNER*
WALTER G. RICCIARDI*
WALTER RIEMAN*
RICHARD A. ROSEN*
ANDREW N. ROSENBERG*
JUSTIN ROSENBERG*
JACQUELINE P. RUBIN*
RAPHAEL M. RUSSO*
ELIZABETH M. SACKSTEDER*
JEFFREY D. SAFERSTEIN*
JEFFREY B. SAMUELS*
KENNETH M. SCHNEIDER*
ROBERT B. SCHUMER*
JOHN M. SCOTT*
BRIAN SCRIVANI*
DAVID R. SICULAR*
AUDRA J. SOLOWAY*
SCOTT M. SONTAG*
SARAH STASNY*
TARUN M. STEWART*
ERIC ALAN STONE*
AIDAN SYNNOTT*
RICHARD C. TARLOWE*
MONICA K. THURMOND*
DANIEL J. TOAL*
CONRAD VAN LOGGERENBERG*
LIZA M. VELAZQUEZ*
MICHAEL VOGEL*
RAMY J. WAHBEH*
LAWRENCE G. WEE*
THEODORE V. WELLS, JR.*
LINDSEY L. WIERSMA*
STEVEN J. WILLIAMS*
LAWRENCE I. WITDORCHIC*
MARK B. WLAZLO*
JULIA TARVER MASON WOOD*
JENNIFER H. WU*
BETTY YAP*
JORDAN E. YARETT*
KAYE N. YOSHINO*
TONG YU*
TRACEY A. ZACCONE*
TAURIE M. ZEITZER*
T. ROBERT ZOCHOWSKI, JR.*

*NOT AN ACTIVE MEMBER OF THE DC BAR

September 25, 2019

By Email: ryan.struve@usdoj.gov

Ryan Struve
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 Fifth Street N.W.
Washington, DC  20530

Re: *Google's new anticompetitive restrictions on publishers' use of data*

Dear Ryan:

We enclose for your reference a copy of a submission that News Corporation made to the United Kingdom's Competition and Markets Authority on September 24, 2019.  The submission reports on a recently announced change to Google's data sharing practices in the ad tech space, in parallel with Google's roll-out of a unified auction.  Google has stated publicly that its unified auction is intended to introduce transparency

Highly Confidential

DOJ-ADS-0000066206

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

and allow third-party exchanges to compete against Google's exchange more fairly.[1]  But Google's newly announced change will undermine any potential benefits from this change and—as described more fully in the submission—harm competition even further by eliminating critical tools for price transparency and competition.

Specifically, Google has informed News Corp that Google will begin imposing restrictions on the Bid Data Transfer File (BDT), a tool that publishers—and News Corp in particular—rely on to evaluate the performance of ad inventory and the bidding behavior of buyers.  Among other things, these restrictions will limit the use BDT as a key tool for publishers to compare the performance of Google relative to its competitors.

Google ignored News Corp's requests for delay and intends to impose these new restrictions as early as this week.  At best, this is yet another example of Google using its market power to reduce price transparency, impose unnecessary competitive friction, and exercise its market power.  At worst, it may also be an example of direct retaliation by Google against News Corp for raising antitrust concerns regarding Google's conduct; News Corp is heavily dependent on the BDT and the forthcoming change may disproportionately harm News Corp relative to other publishers.

\* \* \* \* \*

**Google's changes to the BDT will interfere with the ability of publishers to optimize yield and to use their own data more effectively.**  Publishers use ad serving software to manage their ad inventory and maximize its yield across various competing channels and ad tech providers.  To fully obtain the benefits of competition, publishers must have access to data to make informed decisions about how to best manage, sell, or price their own inventory.

Google's forthcoming change to the BDT will restrict publishers' ability to extract this critical pricing data for ads sold by Google's competitors or sold by publishers themselves.  This not only creates friction in the use of competing exchanges/SSPs, but also makes it more difficult for publishers to rely on header bidding solutions and even their own internal sales department.

---

[1] As we discussed during our most recent call on August 13, 2019, News Corporation remains highly skeptical that Google's change to a unified auction will yield any benefits for publishers and/or undue the substantial harm caused by Google's persistent pattern of anticompetitive conduct.

Highly Confidential
DOJ-ADS-0000066207

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

**Eliminating pricing transparency.** Publishers typically measure the success of their ad tech partners by the incremental revenue driven by that partner. The data Google currently shares with publishers using its ad tech products permits them to link up specific bid information[2] with specific impression information[3] in order to measure performance of ads on their properties. Effectively, this allows publishers to assess the performance of competing SSPs other ad sales channels (e.g., "direct sales and "private marketplaces").

Google's upcoming changes to the BDT, however, will prevent publishers from even doing that. Eliminating this transparency for publishers will not only further handicap publishers from being able to holistically optimize ad yield, but—critically—it also threatens to erode the incentive for any publisher to partner with non-Google SSPs/exchanges.

**Eliminating a check on the auction process.** Publishers will no longer be able to match bid and impression level data, to be able to determine whether Google is running a fair auction and not still giving itself a "last look" or similar arbitrage advantage. It will be impossible, for example, to determine whether AdWords has bought an impression despite the existence of a higher bid from a header bidding bid or a direct deal that had priority. At the same time, Google will still have access to all of the information at both the bid-level and the impression-level, which Google can use to increase its "take rate" (i.e., monopoly rents) to the detriment of publishers and advertisers.

**Devaluing the first-party data of publishers.** The restrictions also entrench Google's data advantage over publishers and thereby increase its market power by limiting the ability of publishers to measure and value their own first-party data. Publishers routinely link their first-party data related to an impression, and then are later able to detect whether or to what extent that first party data may have affected the bids submitted on that impression, relative to others. For instance, when a user goes to Realtor.com (a News Corp property) and searches for homes in "Lincoln, NE", Realtor may send impressions to Google to fulfill, and may pass what the user searched for while on Realtor (in this example, "Lincoln NE") as part of this process. This allows Realtor.com to later understand how prices or bids change based on the addition its own

---

[2]   Bid information includes the name of the bidder, the bid price, and whether the bid was rejected or won.
[3]   Impression information includes the price at which an impression was sold, and to which buyer, as well as the bids of header bidding partners.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

user data (in this case the search for homes in Lincoln, NE) to its raw advertising inventory.

Google's change to the BDT will impede, if not eliminate, the ability of publishers to measure the incremental value of their own first-party data. This removes incentive that publishers have to invest in and grow their own data segments—and to compete or reduce dependence on Google by establishing their own data profiles and offering advertisers effective ad targeting outside the dominant Google ecosystem.

*****

Google has publicly cited privacy justifications for its changes to the BDT. As the attached submission explains, Google's justifications are pretextual and Google has resisted discussing the privacy concerns with ad tech partners. In any event, Google could address any legitimate privacy concerns less restrictive alternatives. Ironically, if Google were truly concerned about privacy, it would curtail its own data collection and use practices. Instead, Google continues to weaponize privacy as a means to harm competition without in any way limiting its ability to use the very same data.

All of these issues are discussed in much more depth in the attached submission. We are happy to answer any questions and to discuss at your convenience.

Yours truly,
/s/
Jonathan Kanter

Attachment