# EXHIBIT F



**CT Corporation**
**Service of Process Notification**
08/08/2023
CT Log Number 544470865

## Service of Process Transmittal Summary

**TO:**       Robert Walden
              News Media Alliance
              4401 Fairfax Dr Ste 300
              Arlington, VA 22203-1622

**RE:**       **Process Served in Virginia**

**FOR:**      News Media Alliance  (Domestic State: VA)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | United States et al vs. Google LLC |
| **CASE #:** | 123CV00108 |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **PROCESS SERVED ON:** | C T Corporation System, Glen Allen, VA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 08/08/2023 at 13:34 |
| **JURISDICTION SERVED:** | Virginia |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780103489971 |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060<br>877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 **Freshfields Bruckhaus Deringer US LLP**

**New York**
601 Lexington Avenue, 31st Floor
New York, NY 10022
(212) 277-4043
jeanette.bayoumi@freshfields.com
www.freshfields.com

News/Media Alliance
c/o CT Corporation System
4701 Cox Road, Suite 285
Glen Allen, VA 23060

August 8, 2023

**Re:**   *United States, et al. v. Google LLC*, No. 1:23-CV-00108 (E.D. Va.)

Dear Sir/Madam,

I am counsel to Defendant Google LLC in the above-captioned litigation. Enclosed is a subpoena for documents that has been served on you. Treatment of discovery materials in this litigation is governed by the Protective Order, the Order regarding Electronically Stored Information, and the Coordination Order entered by the court. A copy of each Order is included with this subpoena.

Please note that the production deadline for the subpoena is August 22, 2023. The subpoena contains instructions for the place of production of responsive documents. If you would like to discuss an alternative method or place of production (such as via email or FTP), feel free to reach out to me at (212) 277-4043 or jeanette.bayoumi@freshfields.com. You can also reach out to me with any other questions that you may have regarding the subpoena.

Yours truly,

Jeanette Bayoumi

Freshfields Bruckhaus Deringer is an international legal practice operating through Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP, Freshfields Bruckhaus Deringer (a partnership registered in Hong Kong), Freshfields Bruckhaus Deringer Law office, Freshfields Bruckhaus Deringer Foreign Law Office, Studio Legale associato a Freshfields Bruckhaus Deringer, Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater PartG mbB, Freshfields Bruckhaus Deringer Rechtsanwälte PartG mbB and other associated entities and undertakings. For further regulatory information please refer to www.freshfields.com/support/legal-notice.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia ▼

| | |
|---|---|
| United States et al | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:23-CV-00108 |
| Google LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    News/Media Alliance
            c/o CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Described in the attached Exhibit A.

| Place: The Office of Craig C. Reilly, Esq., 209 Madison Street, Suite 501, Alexandria, VA 22314 | Date and Time: 08/22/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/08/2023

|  CLERK OF COURT | OR | |
|---|---|---|
| | | *Tyler Garrett* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Google LLC
_____ , who issues or requests this subpoena, are:
Tyler Garrett, 700 13th Street NW, 10th Floor, Washington DC 20005, (202) 777-4511, tyler.garrett@freshfields.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:23-CV-00108

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit A

*United States, et al. v. Google LLC*, No. 1:23-CV-00108 (E.D. Va.)
**Exhibit A to Subpoena**

## INSTRUCTIONS

1.  In addition to the specific instructions set forth below, these Requests incorporate the instructions set forth in Federal Rule of Civil Procedure 45 ("Federal Rules"), the Local Rules of the U.S. District Court for the Eastern District of Virginia ("Local Rules"), the Order Regarding Electronically Stored Information ("ESI Order") (ECF No. 142), and the Protective Order (ECF No. 203), or the operative version of those Orders in place at the time production is made. Subject to a valid claim of privilege, please produce the entire document if any part of that document is responsive.

2.  Please produce all requested documents in Your possession, custody, or control, or available to You, or to which You may gain access through reasonable effort, including information in the possession of Your past and present attorneys, accountants, investigators, consultants, agents, or other persons directly or indirectly employed or retained by You, or anyone else otherwise subject to Your control who maintains records on Your behalf, in Your name, or otherwise under Your control.

3.  Pursuant to Federal Rule 45(e)(1), documents must be produced either: (a) as they are kept in the usual course of business (in which case they must be produced in such fashion as to identify the department, branch, or office in whose possession the document was found or the server or central file in which it was found, and the address of each document's custodian(s)), or (b) segregated as responsive to a specific Request enumerated herein, with such specific Request identified.

4.  If any portion of any document is responsive to any Request, a legible version of the entire document must be produced, together with all non-identical copies, versions, and drafts of that document, including all attachments and enclosures.

5.      You must retain all of the original documents for inspection or copying throughout the pendency of this Action, any appeal(s), and any related proceedings.

6.      You must produce all documents and associated metadata according to the Federal Rules, Local Rules, and, when entered, the governing ESI Order for this Action. Provide instructions and all other materials necessary to use or interpret Your data compilations, such as a data dictionary, with Your production.

7.      Data and materials that are stored electronically or in machine-readable form should be produced in electronic form with sufficient information to allow counsel to readily access or read such data or materials.

8.      If you object to all or any portion of any of the below Requests, you must identify the objectionable Request or portion thereof, and the nature and basis of the objection. Notwithstanding any objection to any portion of any Request, you must produce all documents and information to which such objection does not apply.

9.      If any document responsive to a particular Request no longer exists for reasons other than Your document retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost or destroyed, list the Request to which it was responsive, and list persons with knowledge of the document.

10.     If you are unable to produce a document that is responsive to a Request, describe the document, state why it cannot be produced and, if applicable, state the whereabouts of such document when last in your possession, custody, or control.

11.     If there are no documents or information responsive to all or any portion of any Request, so state in writing.

12.     Other than redactions of privileged information, documents are to be produced in full. If any requested document cannot be produced in full, or if you withhold production of any document or portion of any document responsive to these Requests based upon any

privilege, protection, or immunity, produce it to the extent possible and provide the privilege log information set forth in the governing ESI Order, once entered.

13.    In construing the Requests herein:

    a.  Terms not specifically defined shall be given their ordinary meaning as You understand them to be used in the trade;

    b.  The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, whenever necessary, to bring within the scope of any Request all information that might otherwise be construed to be outside its scope;

    c.  The use of the singular form of any word includes the plural and vice versa;

    d.  Words in the masculine, feminine, or neutral gender shall include each of the other genders;

    e.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope;

    f.  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

14.    None of the Definitions or Requests set forth herein shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the Definitions or the Requests.

15.    These Requests are continuing in nature. In the event that You become aware of responsive documents or information in addition to, or in any way inconsistent with, that which You previously have produced, prompt supplementation of Your responses is required.

16.     Google specifically reserves the right to seek supplementary responses and the additional supplementary production of documents before trial.

17.     Unless otherwise stated, the Requests call for the production of documents from January 1, 2017, to the present.

## DEFINITIONS

1.     To the extent the terms defined below are used in the Requests, they should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules and the Local Rules. These Definitions are provided solely for the purposes of this Subpoena.

2.     The term **"Communication"** shall refer to the transmittal of information (in the form of facts, ideas, inquiries or otherwise) via electronic and non-electronic means, including both written and verbal correspondence, such as, e.g., e-mails, meetings, telephone calls, and letters.

3.     The term **"Document"** shall be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Federal Rule 34(a)(1)(A). For avoidance of doubt, a draft or non-identical copy is a separate document within the meaning of this term, and electronic communications, such as e-mails, are covered within the meaning of this term.

4.     The terms **"You"** or **"Your"** refer to News/Media Alliance, its parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing.

## REQUESTS FOR DOCUMENTS

1.     All Communications that You have had with a third party concerning Google, between January 1, 2019 and the present, where any of (i) Jonathan Kanter, (ii) Brandon Kressin, (iii) Susan Athey, (iv) any employee or agent of the Kanter Law Group, or (v) any

employee or agent of the Kressin Law Group or Kressin Meador, is a sender or recipient (including as a "cc", "bcc", or "copied" recipient).

2.      All Communications that You have had with Jonathan Kanter concerning Google since Jonathan Kanter was nominated as Assistant Attorney General for the Antitrust Division of the U.S. Department of Justice (DOJ) on July 20, 2021, including any such Communications made through other DOJ employees.

3.      All Documents You relied on in preparing Your white paper titled "How Google Abuses Its Position as a Market Dominant Platform", including both the June 2020 and September 2022 versions.

4.      All Communications You had with Your membership concerning the preparation or publication of Your white paper titled "How Google Abuses Its Position as a Market Dominant Platform", including both the June 2020 and September 2022 versions.

5.      Documents sufficient to show Your membership as of (i) June 2020, (ii) September 2022, and (iii) August 2023.

6.      Documents sufficient to show the amount of monetary contributions made to You by each of Your members, monthly, for each month between January 1, 2017 and August 2023.

7.      Documents sufficient to show involvement of Jonathan Kanter in the preparation or publication of Your white paper titled "How Google Abuses Its Position as a Market Dominant Platform", including either and/or both the June 2020 or September 2022 version.

8.      Documents sufficient to show (i) the time period(s) over which work was done by Jonathan Kanter on Your behalf concerning Google; (ii) engagement letters between You and Jonathan Kanter related to any work done by Jonathan Kanter on Your behalf concerning

Google; and (iii) payments made to Jonathan Kanter, such as invoices, bills, or other pay statements to compensate Jonathan Kanter for work done on Your behalf concerning Google.

      9.      Documents sufficient to show (i) the time period(s) over which work was done by Susan Athey on Your behalf concerning Google; (ii) engagement letters between You and Susan Athey related to any work done by Susan Athey on Your behalf concerning Google; and (iii) payments made to Susan Athey, such as invoices, bills, or other pay statements to compensate Susan Athey for work done on Your behalf concerning Google.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA, et al.,       )
                                        )
          Plaintiffs,                   )
                                        )
v.                                      )          No. 1:23-cv-00108-LMB-JFA
                                        )
GOOGLE LLC,                             )
                                        )
          Defendant.                    )

### [~~PROPOSED~~] ORDER REGARDING ELECTRONICALLY STORED INFORMATION ("ESI")

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). The parties' cooperation includes identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues;

NOW THEREFORE, it is hereby ORDERED:

## I.   GENERAL PROVISIONS

1.  Except as specifically set forth herein, this Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Eastern District of Virginia.

2.  The production specifications set forth in this Stipulation and Order apply to Documents and ESI that is to be produced in the first instance in the above-captioned litigation. This Stipulation and Order do not apply to materials previously produced to any Plaintiff as part of a pre-complaint investigation. No Party is obligated to reformat any such prior production in accordance with the production specifications in this Stipulation and Order. The production specifications set forth in this Stipulation and Order do not apply to databases, data sources, logs, and other structured data except as described in paragraph M below.

3.  "Action" means the action filed in this Court under the caption *United States, et al. v. Google LLC*, 23-cv-00108-LMB-JFA, as well as any additional actions subsequently transferred and/or centralized with this Action, including any related discovery, pretrial, trial, post-trial, or appellate proceedings. For the avoidance of doubt, "Action" excludes pre-Complaint investigations by Plaintiffs.

4.  The parties agree to meet and confer to the extent that new plaintiff states are added later to the litigation and those states request reasonable modifications to these production specifications.

5.  The term "Federal Agency Advertisers" ("FAAs") has the meaning set forth in paragraph 6.A of the Joint Proposed Discovery Plan at ECF 87, as adopted by the Court in the Scheduling Order at ECF 94.

## II.   PRESERVATION

1.   Materials To Be Preserved. Each Party will continue its retention practices with regards to all Documents and ESI and will take reasonable and proportionate steps to preserve relevant and discoverable ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Upon mutual agreement of the parties, a party will modify its retention practices to ensure the preservation of potentially responsive Documents and ESI.

2.   To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    a.   Parties shall preserve non-duplicative relevant electronically stored information in their possession, custody, or control.

    b.   Subject to and without waiving any protection described above, the parties agree that:

        i.   The parties will endeavor to agree upon a date limitation for the preservation of ESI;

        ii.   The parties will endeavor to agree upon a list of the types of relevant ESI they believe should be preserved and the custodians for whom they believe relevant ESI should be preserved. The parties shall add or remove custodians as reasonably necessary.

3.   The Court concludes that the following categories of ESI are not reasonably accessible in this litigation and orders that they need not be preserved, searched, collected, or reviewed. The parties will continue to meet and confer regarding any additional categories of information that are not reasonably accessible.

    a.   Back-up systems used for disaster recovery and tapes used for disaster recovery;

    b.   Individual user data subject to routine disposition required by privacy regulations;

    c.   Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

    d.   Logs of calls made from cellular phones;

    e.   Voicemail messages;

    f.   Slack, fragmented, or unallocated data accessible only by forensics;

    g.   Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    h.   Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates;

    i.   Ad logs created prior to April 19, 2023;[1]

    j.   Systems no longer in use that cannot be accessed as of the date the preservation obligation was triggered; and

    k.   Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party that is duplicative of information that resides in a reasonably accessible data source.

4.   Nothing in this Stipulation and Order prevents any party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of Documents or ESI are not reasonably accessible.[2]

5.   The parties agree to preserve ESI in such a way that it can be produced in a reasonably usable form in accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(ii).

---

[1] The parties agree to meet and confer regarding a relevant and proportionate set of ad logs in the May and June 2023 timeframe to be sampled and/or preserved.

[2] The parties have met and conferred and have been unable to reach agreement as to whether the following types of ESI are not reasonably accessible: (a) Online access data such as temporary or cache files, including internet history, web browser cache and cookie files, wherever located, (b) Server, system, or network logs; and (c) Dynamic fields of databases, dashboards, or log files.

6. Preservation Does Not Affect Discoverability or Claims of Privilege. By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## III.   COLLECTION AND REVIEW

1. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2. The parties will meet and confer in good faith regarding search terms or use of technology-assisted review or a similar tool (collectively "TAR") to identify responsive documents. In the event a party elects to use search terms, if a requesting party objects to the sufficiency of the producing party's terms, the requesting Party may propose modifications or a list of additional terms. The parties will meet and confer in good faith regarding any proposed changes. Any disputes over search terms that cannot be resolved between the parties during a meet and confer may be consequently raised with the Court.

3. Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's request. Nothing in this Order precludes a party from using TAR, or some other method to fulfill their document production obligations, provided that the party discloses to the other party the process used and complies with the meet and confer obligations outlined in this Order. However, a producing party that wishes to use TAR in conjunction with search terms must meet and confer with the receiving party before using this method to collect and review documents and prior to negotiation of search terms. Nothing may be construed or interpreted as precluding a producing party from performing a privilege review of documents determined to be relevant by any means. Further, nothing in this Order shall be construed or interpreted as requiring the production

of all documents captured by any search term or TAR if that document is in good faith and reasonably deemed not relevant to the requesting party's request or privileged.

4. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

5. De-Duplication. Each party is required to produce only a single copy of a responsive document. A producing party electing to deduplicate shall deduplicate across Custodians and at the family-level only (i.e., if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document). Each party may de-duplicate responsive ESI (based on Source Hash, MD5 hash values, or other industry standard method) across Custodians. For emails with families, the hash value is generated based on the parent/child document grouping. To the extent that deduplication through hash values is not possible, the parties shall meet and confer to discuss any other proposed method of deduplication. A producing party must make reasonable effort to identify all agreed upon custodians who were in possession of any de-duplicated documents through an appropriate load file field such as All Custodians. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1. In the event of rolling productions of documents or ESI, the producing party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata overlay and will be provided by a producing party on an ongoing basis.

6. Email Threading. Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No document shall be withheld from production solely on the basis that it is included in a produced more-inclusive email.

7. Cooperation. The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of search terms or TAR, or a combination of the search terms and TAR, or some other method, or for documents that cannot be searched electronically.

8. Filtering. If a producing party proposes to apply other filters to limit Documents and ESI that is collected for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the producing party shall advise the requesting party and the requesting and producing parties shall meet and confer regarding such additional proposed filters.

Each Party shall use its institutional knowledge of how its ESI is stored and accessed in the ordinary course of business to identify responsive Documents. This institutional knowledge includes, but is not limited to, a Party's standard practices regarding the storage of ESI, its file organization structure, its usage of group ownership, group accounts, and shared network locations to manage or organize ESI.

## IV.    PRODUCTION FORMAT

1. Subject to paragraph I.2 above, the parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of the documents as part of the document production process.

## V.   PRIVILEGE LOGS

1. Any Producing Party will produce a privilege log within 45 days after each production.[3] Except as provided otherwise below, for any Document withheld or redacted, the Producing Party will produce privilege logs in MS Excel (.xlsx) format.

2. If any member of a produced Document Family is withheld on grounds of privilege or work-product, the Producing Party shall produce a Bates stamped placeholder slipsheet that identifies the Document as withheld as privileged and shall identify the Document in the Privilege Log by the Bates number on the placeholder slipsheet.

3. Privilege logs shall be provided containing the following information, to the extent reasonably available:

   a. A sequential or control number associated with each entry in the privilege log;

   b. Where applicable, BegBates and Parent BegBates;

   c. The Custodian or Custodial or Non-Custodial Data Source from which the Document was collected;

   d. The name of each person who sent, authored, or otherwise prepared the Document;

   e. The identity of each person designated as an addressee or copyee, including CC and BCC (copyees and blind copyees shall appear in separate fields);

   f. The date;

   g. A description, pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii), of the contents of the withheld Document that, without revealing information that is itself privileged or protected, is sufficient to enable other Parties to understand the general subject matter of the Document and assess the basis of the claim of privilege or other protection from disclosure;

---

[3] The parties will meet and confer over an appropriate date for producing a privilege log relating to documents produced by Google prior to the filing of the complaint.

h. To the extent reasonably available, the name of the attorney(s) and legal organization who provided the legal advice at issue, from whom the legal advice at issue is requested, who directed the facilitation of the legal advice at issue, and/or who requested or prepared the Document;

i. The nature of the privilege or protection asserted (i.e., attorney-client privilege, work product doctrine).

4. If a Producing Party contends that all Documents of a particular type or category are privileged, or requiring the creation of an individualized privilege log is not reasonable or proportionate for documents of a particular type or category, they shall meet and confer with the Receiving Party on identifying such Documents on a privilege log by category rather than individually. The Receiving Party shall consider any such request in good faith. The Producing Party's categorical privilege log entry must still provide the Requesting Party, and the Court if necessary, with information sufficient to evaluate the Producing Party's privilege claims.

5. A single document containing multiple email messages (i.e., in an email chain) may be logged as a single entry.

6. Each entry on a privilege log must indicate each person, group, or entity who was acting in a legal capacity with respect to that particular Document.

7. If the Producing Party contends that more than one basis for withholding applies to a single Document, all bases must be asserted in the privilege log.

8. Exclusions. To the extent any of the following Documents are privileged or otherwise protected from disclosure by Federal Rule of Civil Procedure 26(b)(3)-(4), they may be excluded from privilege logs:

a. Documents or communications sent solely between outside counsel for the Defendant (or persons employed by or acting on behalf of such counsel);

b. Documents or communications sent solely between counsel for the United States (or persons employed by the United States Department of Justice);

c. Documents or communications sent solely between counsel for the United States (or persons employed by the United States Department of Justice) and counsel for any state (or persons employed by any the office of the attorney general of any state);

d. Documents or communications sent solely between outside counsel for Defendant and inside counsel for Defendant;

e. Documents or communications sent solely between counsel for the United States (or persons employed by the United States Department of Justice) and counsel for any Federal Agency Advertiser;[4]

f. Documents or communications sent solely between counsel for any state and counsel for another state (or persons employed by the office of the attorney general any state);

g. Documents or communications sent solely between counsel within any state (or persons employed by the office of the attorney general of any state);

h. Documents or communications dated after January 24, 2023 and privileged solely on the basis that they relate to the prosecution or defense of this Action;

i. Documents that are non-discoverable or excluded from privilege log obligations under the Expert Stipulation; and

j. Documents that are not required to be logged under Section V(8)(g) of the ESI Order governing the multidistrict litigation captioned as In re Google Digital Advertising

---

[4] With respect to specific requests for production, the parties agree to meet and confer regarding whether this subsection (e) should apply to documents or communications sent solely between counsel for the United States (or persons employed by the United States Department of Justice) and counsel for federal government agencies other than the FAAs.

Antitrust Litigation that is pending in the U.S. District Court for the Southern District of New York under docket number 21-md-03010-PKC.[5]

9. If a Document contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portion(s) redacted. The redactions shall be narrowly applied so the Receiving Party has the ability to discern to the maximum extent practicable the privilege assertion within the Document and to view all non-privileged communications and material.

10. Redactions based on relevance or responsiveness or confidentiality are disallowed.[6] For the avoidance of doubt, (a) to the extent that any Document contains or reflects Source Code, as defined by the Protective Order, ECF No. 98, such Document will be governed by Appendix C of that Order, and (b) nothing in this Order prevents any party from redacting personal data and personally identifying numbers or sensitive information from produced documents, consistent with the requirements under Federal Rule of Civil Procedure 5.2 and Local Rules. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of Documents.

11. If a Document is produced with redactions, the redactions must not obscure any header information (e.g., from, to, subject, sent date) of any emails or other communications reflected in the Document, except to the extent that information is privileged.

12. A Party who, pursuant to a request under Federal Rule of Civil Procedure 34 or a non-party, pursuant to a request under Federal Rule of Civil Procedure 45, re-produces

---

[5] Nothing in this order precludes any party from moving, upon a showing of good cause, to modify these exclusions with respect to specific requests for production.

[6] The parties agree to meet and confer if one of the FAAs claims that producing certain documents on an unredacted basis would affect national security.

Documents from other matters, may produce privilege logs relating to that production in the manner they were produced in such other matters, so long as the privilege logs comply with Federal Rule of Civil Procedure 26(b)(5)(A). The party shall, however, reproduce these logs in Excel format upon request if reasonably possible to do so.

## VI. MISCELLANEOUS PROVISIONS

1. Motions. The parties shall raise discovery disputes in accordance with this Court's Local Rules.

2. Costs of Document Production. Unless this Court orders otherwise for good cause shown, each party and non-party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

3. Integration/Appendices. The following documents are incorporated herein by reference:

   a. "Appendix 1" is a document describing the production format and fields to be included in the documents produced by each party.

IT IS HEREBY SO ORDERED this 20th day of __April__, 2023.

/s/

John F. Anderson
United States Magistrate Judge

## APPENDIX 1: PRODUCTION FORMAT

A.    **Production Components**. Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

1.  An ASCII delimited data file (.DAT) with ASCII 020 for the comma character and ASCII 254 for the quote character and ASCII174 for new line character, with all values in a multi-value field separated by a semi-colon ASCII 059 (with the use of commas and quotes as delimiters not acceptable using standard delimiters) and encoded in UTF-8;

2.  An image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance). The Image Load File shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT;

3.  TIFF images;

4.  Document level .TXT files for all documents containing extracted full text or OCR text;

5.  Parent-child relationships will be maintained in production and child files should be produced consecutively following parent files and shall be sequentially Bates stamped. The Producing Party shall ensure the metadata fields for BegAttach and EndAttach referenced in Parts D and E of this Appendix A are accurately populated;

6.  Document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) common system files and application executable files pursuant to paragraph III.4 above, and (2) documents that are withheld on the basis of attorney-client privilege or work product protection. For the avoidance of doubt, documents that are linked are not part of the same family for purposes of this Order. Linked documents are governed by Section K below.

If a particular document or category of documents warrants a different production format, for example if it is impractical to produce an entire document family for particular documents, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

**B.** **Production Media and Access Controls.** Documents shall be produced through electronic means, such as the DOJ's secure file sharing method (JEFS) or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

**C.** **Data Load Files/Image Load Files.** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should

match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

**D.** **Metadata Fields—Google and Non-Parties.** With the exception of hard copy paper documents, which are separately addressed in paragraph N below, and except as provided in I.2, Google and non-parties shall produce each of the metadata and coding fields set forth below to the extent that it is reasonably practicable to do so. Google and non-parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) ALLCUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, and (j) TEXTFILEPATH, which should be populated by Google or the non-party, or the respective vendor. Google and non-parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name[7] | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |

---

[7] Field names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| ENDATTACH | Last production Bates number of the last document in a family |
|---|---|
| CUSTODIAN | Individual from whom the document originated |
| ALLCUSTODIAN(S) | Individual(s) whose documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| MD5 HASH VALUE | MD5 hash value of document |
| SOURCE HASH VALUE | Google Drive Source hash value |
| AUTHOR | Any value populated in the Author field of the document and/or Google Drive properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| ATTACHMENT COUNT | Number of Attached Documents |
| ATTACHMENT NAME | File name of the document attachment or embedded document; associate with the parent/email which lists any and all filenames of the children/attachments delimited by a semicolon. The field would be populated for parent documents (not for the children) |
| ATTACHMENTID | The IDs of the documents that are attached to the produced document |
| COMPANIES | Globally populated field containing the name of producing party (not the law firm or vendor name). Not pulled from metadata. |
| DATE CREATED | Date the electronic file was created. Format: MM/DD/YYYY. |
| TIME CREATED | Time the electronic file was created (format: HH:MM:SS) |

| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
|---|---|
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| DATESTART | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. |
| DATEEND | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. |
| DOCUMENT TYPE | The file type for Google files. See https://support.google.com/vault/answer/60994 59#drivexml&zippy=%2Cfile-parameters-in-the-metadata-file. |
| DOC LINK | Metadata tying linked and linking documents, per Section K, below. |
| FILESIZE | The original file size of the produced document |
| ORIGINATING PATH | File path of the file as it resided in its original environment. For email, the full folder path of email within a mail store when collected, including file name; or full folder path of instant message or text message when collected including file name; or Hard Copy folder/binder title/label. Prepend with Custodian Name (sample: Smith, James-Inbox\Active). For other documents, the full absolute original path to the native, including original file name and root directory as they existed in their original environment, such that all information needed to locate the file is in the path. Prepend with recognizable Custodian Name; e.g. Smith, James-C\MyDocuments\Sales Info\ACME\2017-Monthly- Sales.xlsx |
| REDACTIONS | Indicate Yes if a document is redacted. If no leave blank. |
| NATIVE LINK | Native File Link (Native Files only) |

| EMAIL THREAD ID | Unique identification number that permits threading of email conversations. For instance, MS Outlook identification number ("PR CONVERSATION INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. (Microsoft application documents only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| EMAILSUBJECT | Subject Line of email |
| TIMESENT | Time email was sent |
| TIMEZONEUSED | Time zone used to standardize date/time during document processing |
| RECEIVETIME | Time email was received |
| FILENAME | File Name of the edoc or email |
| TITLE | Any value populated in Title field of the document properties |
| SUBJECT | Any value populated in the Subject field of the document properties |
| DOCEXT | File extension of the document |
| WITHHELD PLACEHOLDER | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y". If not applicable leave blank. |
| TECHNICAL ISSUE PLACEHOLDER | To the extent a file is withheld on the basis of a technical issue, this field must be populated with a "Y". If not applicable leave blank. |
| VOLUMENAME | Unique production volume identifier applied (e.g., ABC001-001). |
| PAGECOUNT | For Documents produced in TIFF form, number of pages in the Document. For Documents produced in native, page count will be 1 (for placeholder) |

**E.     Metadata Fields—Plaintiffs**. With the exception of hard copy paper documents, which are separately addressed in paragraph N below, and except as provided in I.2, Plaintiffs shall produce documents containing the following metadata, where such metadata is reasonably available. Plaintiffs are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b)

ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, and (f) FILEPATH, which should be populated by Plaintiffs or the Plaintiffs' vendor. Plaintiffs will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IMs, Texts, Chats |
|---|---|---|---|---|---|---|---|
| DOCID | The unique sequential document control number of the first page of the document. Cannot contain spaces or special characters. | Note Text | ✔ | ✔ | ✔ | ✔ | ✔ |
| ENDDOC | The unique sequential control number of the last page of the document. Cannot contain spaces or special characters. | Note Text | ✔ | ✔ | ✔ | ✔ | ✔ |
| COMPANIES | Globally populated field containing the name of producing party (not the law firm or vendor name). Not pulled from metadata. | Multi-Entry | ✔ | ✔ | ✔ | ✔ | ✔ |
| CUSTODIAN | Name of the individual, or group/department for shared resources, from whose files the document originated. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Note Text | ✔ | ✔ | ✔ | ✔ | ✔ |
| ALLCUSTODIANS | All custodians who were in possession of a deduplicated document, including the person or group identified in the CUSTODIAN field. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Multi-Entry | ✔ | ✔ | ✔ | ✔ | ✔ |
| MEDIAID | The unique identifier applied to each physical piece of media delivered (e.g., ABC001). | Note Text | ✔ | ✔ | ✔ | ✔ | ✔ |
| VOLUMENAME | Unique production volume identifier applied (e.g., ABC001-001). | Note Text | ✔ | ✔ | ✔ | ✔ | ✔ |
| BEGATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the document control number of the parent document. Populated for each child document as well as the parent document. | Note Text | ✔ | ✔ | ✔ | ✔ | ✔ |
| ENDATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the ENDDOC of the last child record in the family group. Populated for each child document as well as the parent document. | Note Text | ✔ | ✔ | ✔ | ✔ | ✔ |

| EPROPERTIES | Indicates record type, privilege, translation and other notations. Include all that apply, only the applicable record type or notation category names should be entered: Record Type: Edoc, Edoc Attachment, Email, Email Attachment, Hard Copy, Calendar, Text Message, Text Attachment, IM, Chat, Chat Attachment, Audio, Video, Voicemail Other Notations: Placeholder, Translation, Translated Privilege Notations: Redacted, Privileged, Family Member of Priv Doc | Multi-Entry | ✔ | ✔ | ✔ | ✔ | ✔ |
|---|---|---|---|---|---|---|---|
| TIMEZONE | The TimeZone in which the custodian is normally located. | Note Text | | ✔ | ✔ | ✔ | ✔ |
| FOLDERLABEL | Full folder path of email within a mail store when collected, including file name; or full folder path of instant message or text message when collected including file name; or Hard Copy folder/binder title/label. Prepend with Custodian Name (sample: Smith, James-Inbox\Active). | Multi-Entry | ✔ | ✔ | | ✔ | ✔ |
| FROM | Sender of the Email, Instant Message, Text Message, Chat, or Calendar item. | Note Text | | ✔ | | ✔ | ✔ |
| TO | Primary recipients of the Email, Instant Message, Text Message, Chat, or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✔ | | ✔ | ✔ |
| CC | Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✔ | | ✔ | ✔ |
| BCC | Blind Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✔ | | ✔ | ✔ |
| SUBJECT | Subject line of the Email, Instant Message, Text Message, Chat, calendar item, or Notes item. | Note Text | | ✔ | | ✔ | ✔ |
| DATEHC | Date of hard copy documents, if coded. Format: MM/DD/YYYY. Leave time segment blank. | Date | ✔ | | | | |
| DATESENT | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was sent. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | ✔ | | ✔ | ✔ |
| DATERECEIVED | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was received. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | ✔ | | ✔ | ✔ |

| Field | Description | Type | | | | |
|---|---|---|---|---|---|---|
| HEADER | The internet header information from each Email. | Note Text | ✔ | | ✔ | |
| INTERNETMSGID | Internet message ID assigned by the outgoing mail server which typically includes messageid and a domain name. Example: 0E6648D558F338179524D555@m1p.innovy.net | Note Text | ✔ | | ✔ | |
| MESSAGEID | Unique identifier of email messages in mail stores. EntryID for Microsoft Outlook, the UniqueID (UNID) for Lotus Notes, or equivalent value for other proprietary mail store formats. | Note Text | ✔ | | ✔ | |
| INREPLYTOID | Internet message ID of the Email being replied to. | Note Text | ✔ | | ✔ | |
| CONVERSATIONINDEX | Conversation index value for Microsoft Exchange emails. | Note Text | ✔ | | ✔ | |
| IMPORTANCE | Indicates priority level set for message. | Note Text | ✔ | | ✔ | ✔ |
| DELIVERYRECEIPT | Delivery receipt request notification for Email messages. | Note Text | ✔ | | ✔ | |
| READRECEIPT | Read Receipt request notification for Email messages. | Note Text | ✔ | | ✔ | |
| SENSITIVITY | Sensitivity field from Email messages or calendar items. | Note Text | ✔ | | ✔ | |
| REVISION | Revision number extracted from metadata of native file. | Note Text | | ✔ | | |
| DATECREATED | Date and time the electronic file was created. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | ✔ | | ✔ |
| DATESAVED | Date and time the electronic file was last modified. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | ✔ | | ✔ |
| EORGANIZATION | "Company" field value pulled from the metadata of a native file. | Note Text | | ✔ | | |
| EAUTHOR | Author field value pulled from the metadata of a native file. | Note Text | | ✔ | | |
| LASTAUTHOR | Last Saved By field value pulled from metadata of a native file. | Note Text | | ✔ | | |

| ESUBJECT | Title or Subject field value pulled from metadata from electronic file. | Note Text | | | ✔ | | |
| FILENAME | Original file name of the native file, including file extension. | Note Text | ✔ | ✔ | ✔ | | ✔ |
| APPLICATION | Application used to create or transmit the original native files, document, message, appointment (e.g., WhatsApp, Excel, Slack, Outlook, Snapchat, Word, Twitter, Gmail, Tango). | Note Text | ✔ | ✔ | ✔ | | ✔ |
| FILEEXTENSI ON | File extension of original native file; e.g. XLSX, PDF, DOCX | Max 5 chars | ✔ | ✔ | ✔ | | |
| FILEPATH | Full qualified original path to the native when collected, including original file name. Prepend with recognizable Custodian Name; e.g. Smith, James-C\My Documents\Sales Info\ACME\2017-Monthly-Sales.xlsx | Multi-Entry | ✔ | ✔ | ✔ | | |
| DOCLINK | File path location to the current native file location on the delivery medium. | Note Text | | | ✔ | | |
| DATESTART | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✔ | ✔ |
| DATEEND | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✔ | ✔ |
| ACCOUNT | Unique account ID | Note Text | | | | | ✔ |
| DURATION | The elapsed time of the audio, video, voice message. Format HH:MM:SS | Note Text | | | ✔ | | |
| DIRECTION | Identifies direction of communication or other routing information; Outgoing, Incoming. | Note Text | | | | | ✔ |
| TXT-CHATROOMN AME | Name of chat room used in the communications. | Note Text | | | | | ✔ |
| TXT-PARTICIPANT S | List of participant names and/or telephone numbers. | Note Text | | | | | ✔ |
| TXT-BODY | Body of text messages, instant messages, notes, or chats. Do not populate for emails or calendar items. | Note Text | | | | | ✔ |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| TXT-STATUS | Indicates whether text was Sent or Read on the device. | Note Text | | | | | ✔ |
| TXT-THREAD-GROUP | Populate with the DOCID of the first text in a conversation or chat. | Note Text | | | | | ✔ |
| HASHMD5 | Document MD5 hash value (used for deduplication or other processing). | Note Text | | ✔ | ✔ | ✔ | ✔ |
| HASHSHA | Document SHA hash value (used for deduplication or other processing). | Note Text | | ✔ | ✔ | ✔ | ✔ |
| SPECNO | Subpoena/request paragraph number to which the document is responsive. | Multi-Entry | ✔ | ✔ | ✔ | ✔ | ✔ |
| SEARCHVALUES | Specific search terms used to identify the record as responsive (if used). | Multi-Entry | ✔ | ✔ | ✔ | ✔ | ✔ |

F.    **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as

TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as

provided below. The imaged data shall retain all attributes of the native or hard-copy file to the

extent reasonably practicable. To the extent reasonably practicable, produced TIFF images will

show all text and images that are visible in the form in which the electronic document was last

saved, with the exception of redacted portions. Hidden content, tracked changes or edits,

comments, notes, and other similar information, shall to the extent reasonably practicable, be

produced in native or Microsoft-equivalent format, or be imaged so that such content is viewable

on the image file.

Where hidden content, tracked changes or edits, comments, notes, or other similar information is

not readable in its produced format, a party that received the document may make reasonable

requests that a more readable version, such as a native or Microsoft-equivalent version, be

produced when helpful to interpret the contents of the relevant document. To the extent a

response to discovery requires production of Document(s) accessible only through proprietary or

enterprise software, the Parties shall meet and confer to finalize the appropriate production

format. Unless excepted below, single page, black and white, Group IV TIFFs should be

provided, at least 300 dots per inch (dpi) for all documents, with corresponding multi-page text and necessary load files. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing party retains the option to produce ESI in alternative formats if so agreed by the requesting party, which may include native format, or a combination of native and TIFF formats. For future productions of documents responsive to properly propounded requests issued pursuant to Fed. R. Civ. P. 34 and 45, the producing party will make reasonable efforts to identify documents with readability issues in advance of production and, where issues are detected, to produce the document(s) in a more readable format (such as in native or Microsoft-equivalent form). The foregoing provisions of Section F do not apply to Investigation Materials (as defined in the governing Confidentiality Order, ECF No. 297) or other cloned discovery. To the extent that Investigation Materials or other cloned discovery contain documents responsive to properly propounded requests issued pursuant to Fed. R. Civ. P. 34 and 45 where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall, when requested and where possible and proportionate, provide a higher quality TIFF image, or the native, Microsoft-equivalent, or original file. The provisions of this Section F apply to any type of document (including emails, presentations, spreadsheets, and other types of documents).

**G.    Color.** A party that received a production may make reasonable requests that color images be produced where color is helpful to interpret the contents of the relevant document. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI).

All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Reasonable requests that a document be produced in color for the reasons set forth in this Paragraph will not be unreasonably denied by the producing party. If a producing party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

**H.      Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions. All Documents shall be produced with a link in the TextLink metadata field.

**I.      Native Files.** Spreadsheets (e.g. MS Excel) will be produced in native format unless redacted. In the event spreadsheets require redactions, they shall be produced in Microsoft-equivalent format (.xls, .xlsx).[8] If a Requesting Party reasonably determines that a redacted file is not reasonably usable, the Requesting Party and the Producing Party will discuss an alternative method to produce the file in a reasonably usable format. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraphs D or E above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

---

[8] If a large number of excels require redaction, the parties agree to meet and confer to agree upon reasonable modifications to this paragraph to facilitate the production of those documents.

**J.   Request for Other Native Files.** Other than as specifically set forth above, a producing

party need not produce documents in native format. If a party would like a particular document

produced in native format and this ESI protocol does not require the production of that document

in its native format, the party making such a request shall explain the reason for its request that

the document be produced in its native format. The requesting party will provide a specific Bates

range for documents it wishes to be produced in native format. The producing party need only

produce such a document in native format if reasonably practicable. Any native files that are

produced should be produced with a link in the Native Link field, along with all extracted text and

applicable metadata fields set forth in Sections D and E of this Appendix 1.

**K.   Linked Files and Collaborative Work Environments.** For documents responsive to

properly propounded requests issued pursuant to Fed. R. Civ. P. 34 or 45, the producing party

shall conduct an automated search across all emails to be produced, where the producing party has

access to a tool capable of performing such an automated search, to identify any emails that

contain links to another document and will conduct a reasonable search for the document

corresponding with each identified link. A receiving party may also make reasonable and

proportionate requests that the producing party conduct a reasonable search for relevant

documents identified via hyperlinks. For each link identified by the receiving party, the producing

party shall conduct a reasonable search for the document corresponding with the link. The

producing party shall process and produce relevant documents corresponding with the links with

reasonably available metadata. For documents produced pursuant to this Section K, the producing

party is not required to conduct any further search of documents corresponding with the links. The

provisions of this Section K apply to any type of document (including emails, presentations,

spreadsheets, and other types of documents). For documents produced pursuant to this Section K,

the producing party shall produce DOC LINK metadata as defined in Sections D and E of this Appendix 1.[9]

**L.    Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**M.    Databases, Data Sources, Logs, and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases, data sources, and logs in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party. To avoid doubt, information will be considered reasonably usable when produced in Parquet or other commonly utilized electronic formats, including CSV format, other character-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting party to view the ESI.

**N.    Paper Documents.** A producing party may make paper documents available for inspection and copying in accordance with Federal Rules of Civil Procedure 34 and 45 or, additionally or alternatively, scan and OCR paper documents. The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) Beg Bates, (b) End Bates, (e) Custodian, (f) Confidentiality, (g) Redacted; (h) BegAttach (if applicable), (i) EndAttach (if applicable), (l) TextLink, (m)

---

[9] Alternatively, for a document where an email has a hyperlink to another document, the producing party may produce the email with the hyperlinked document as an attachment.

HashValue. Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The parties will make reasonable efforts to unitize documents correctly. Where a document or a document group — such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

**O.     Date and Time.** No party shall modify the date or time as contained in any original ESI. This provision does not prevent parties from deleting inaccurate date or time information that arises as an incident of collection or processing.

**P.     Time Zone.** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone and the time zone shall be disclosed to the requesting party.

**Q.     Auto Date/Time Stamps.** To the extent reasonably practicable, ESI items shall be processed so as to preserve the data/time shown in the document as it was last saved, not the date of collection or processing.

**R.     Hidden Text.** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text and fields, worksheets, speaker notes, tracked changes, and comments.

**S.     Bates Numbers.** Bates number must always: (1) contain no special characters or spaces;[10] (2) for TIFF images, be sequential within a given Document; (3) identify the Producing Party; (4) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; and (5) be unique across the entire production. Bates number must also maintain consistent numbering across a family of Documents. Bates numbers shall

---

[10] For the avoidance of doubt, hyphens, dashes, and underscores are permitted and are not "special characters" within the meaning of this provision.

not be applied in a way that causes the text of the original Document to be obscured, deleted, or removed. If the Document contains a Bates number from a prior lawsuit, investigation, or production, the Producing Party shall avoid obscuring the previous Bates number or alternatively, shall provide a metadata overlay allowing the Requesting Party to identify the corresponding Bates number.

**T.**    **Compression Files.** Compression or container file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall, where possible, be decompressed to ensure that a compressed file within a compression or container file are decompressed into the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided that all Documents within the compression or container file are produced in accordance with the specifications of this Order.

**U.**    **Password Protected/Encrypted Files.** To the extent Documents are password-protected or encrypted, the requesting party may make reasonable requests for the producing party to process such Documents for review. To facilitate the identification of such documents, the producing party shall provide a slip-sheet for any document that failed to process because it was password-protected or encrypted. Any slip-sheet produced pursuant to this Appendix U shall indicate that the reason the document failed to process was password-protection or encryption, as applicable. The producing party shall use reasonable efforts to produce such documents where possible and proportionate to do so. The parties shall meet and confer to resolve any disputes arising under this Appendix U.

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA, *et al.*,                )
                                                   )
                          *Plaintiffs*,            )
                                                   )
v.                                                 )    Civil Action No.:  1:23-CV-00108-LMB-JFA
                                                   )
GOOGLE LLC,                                        )
                                                   )
                          *Defendant*.             )
                                                   )

## MODIFIED PROTECTIVE ORDER

In the interests of: (i) ensuring efficient and prompt resolution of this Action;
(ii) facilitating discovery by the Parties litigating this Action; and (iii) protecting certain
information from improper disclosure or use, the Court enters the following Protective Order, as
defined below in Paragraph 1(a). Unless otherwise specified, days will be computed according to
Federal Rule of Civil Procedure 6(a).

The Court, upon good cause shown and pursuant to Fed. R. Civ. P. 26(c)(1), ORDERS as
follows:

### *Definitions*

1. As used herein:

(a)     "Action" means the action filed in this Court under the caption *United States,
et al. v. Google LLC*, 1:23-cv-00108-LMB-JFA, as well as any additional actions
subsequently transferred and/or centralized with this Action, including any related
discovery, pretrial, trial, post-trial, or appellate proceedings. For the avoidance of doubt,

1

"Action" excludes pre-Complaint investigations by one or more Plaintiffs into potential anticompetitive conduct by the Defendant.

(b)     "Confidential Information" or "Confidential" means information (regardless of how it is generated, stored or maintained) or tangible things that constitute a trade secret or other non-public confidential financial, technical, research, sales, marketing, development, or commercial information and that have been so designated, or any Document, transcript, or other material containing such information that has not been published or otherwise made publicly available.[1] In addition, a Designating Party may designate as Confidential any information or items made publicly available in violation of a court order to keep such information confidential, that the Designating Party believes should receive Confidential treatment. Confidential Information includes (i) information copied or extracted, summarized or compiled from Confidential Information, and (ii) testimony, conversations, or presentations by Parties or their Counsel that reveal Confidential Information.

(c)     "Competitive Decision-Making" means the action or process of making a business decision or resolving a non-legal question relating to a competitor, potential competitor, customer, or distribution partner regarding contracts, marketing, pricing, product, service development or design, product, or service offering, research and development, mergers and acquisitions, or licensing, acquisition, funding, or enforcement of intellectual property. It does not include legal advice provided in connection with litigation, potential litigation, or regulatory matters, nor does it include work performed as part of a trial team or to keep management advised on the progress or status of litigation, potential

---

[1] For the avoidance of doubt, the Receiving Party's belief that material designated as Confidential does not meet this standard shall not deprive such material of the protections afforded to Confidential Information. Any challenge to a designation is subject to Paragraph 13.

2

litigation, or regulatory matters.

    (d)    "Defendant" means Google LLC, as well as its parents, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents (including counsel), and representatives of the foregoing.

    (e)    "Designated In-House Counsel" means In-House Counsel designated by Defendant who may be authorized to access Highly Confidential Information pursuant to Paragraph 19 of this Order.

    (f)    "Disclosed" means shown, divulged, revealed, produced, described, transmitted or otherwise communicated, in whole or in part.

    (g)    "Document" means any document or electronically stored information, as the term is used in Fed. R. Civ. P. 34(a).

    (h)    "Highly Confidential Information" or "Highly Confidential," as defined herein, is information that, if disclosed publicly or to a Party, is likely to cause the Producing Party material and significant competitive or commercial harm, and that has been so designated.[2] Subject to the foregoing, Highly Confidential Information may include trade secrets, including algorithms and Source Code; non-public, commercially sensitive customer lists; non-public financial, marketing, or strategic business planning information; current or future non-public information regarding prices, costs, or margins; information relating to research, development testing of, or plans for existing or proposed future products; evaluation of the strengths and vulnerabilities of a Protected Person's product offerings, including non-public pricing and cost information; confidential contractual terms, proposed contractual terms, or

---

[2] For the avoidance of doubt, the Receiving Party's belief that material designated as Highly Confidential does not meet this standard shall not deprive such material of the protections afforded to Highly Confidential Information. Any challenge to a designation is subject to Paragraph 13.

negotiating positions (including internal deliberations about negotiating positions); information relating to pending or abandoned patent applications that have not been made available to the public; personnel files; sensitive personally identifiable information; and communications that disclose any Highly Confidential Information. Highly Confidential Information includes (i) information copied or extracted, summarized or compiled from Highly Confidential Information, and (ii) testimony, conversations, or presentations by Parties or their Counsel that would reveal Highly Confidential Information. A Designating Party may designate as Highly Confidential any information or items made publicly available in violation of a court order to keep such information confidential, that the Designating Party believes should receive Highly Confidential treatment. In addition, if a Protected Person (i) has produced Investigation Materials or (ii) is required by subpoena or court order to produce information that would cause it material and significant competitive or commercial harm, but that information does not specifically fall into one of the categories of information listed in this paragraph, upon a compelling showing, it may seek a court order that such information is Highly Confidential. If a motion is made pursuant to this paragraph and is related to a subpoena or court order, it must be filed no later than the due date to respond to the subpoena or court order. If a Protected Person seeks additional protection pursuant to this paragraph from the Court, the materials for which additional protection has been sought will not be provided to other Persons, aside from outside counsel, until the Court has ruled.

(i)      "In-House Counsel" means any lawyer employed by the Defendant as well as any paralegals, administrative assistants, and clerical and administrative personnel supervised by that lawyer and employed by the Defendant. In-House Counsel, however, does not include: 1) attorneys employed by the Plaintiffs; or 2) Outside Counsel.

4

(j)     "Investigation" means any pre-complaint inquiry by one or more Plaintiffs into potential anticompetitive conduct by the Defendant related to open web display advertising.

(k)     "Investigation Material" means non-privileged documents, testimony or other materials that: (i) any Non-Party provided to any Party, either voluntarily or under compulsory process, relating to the Investigation; (ii) constitute any communication between any Party and any Non-Party in connection with and during the Investigation; (iii) any Party provided to any Non-Party relating to the Investigation; and/or (iv) a Defendant, or affiliated person or entity, provided to a Plaintiff relating to the Investigation. For the avoidance of doubt, the Investigation Materials are governed by the terms of this Order. To the extent that any Investigation Materials are clawed back for any reason, the procedures set forth at Paragraph 12 of this Order shall apply and, as to Plaintiffs, such procedures will supersede any other applicable clawback procedures governing the Investigation Materials. Investigation Materials shall be designated as Highly Confidential by default.

(l)     "Litigation Materials" means non-privileged documents, testimony, or other materials that: (i) any Non-Party provides to any Party, either voluntarily or under compulsory process, in connection with and during the pendency of the Action; (ii) constitute any communication between any Party and any Non-Party in connection with and during the pendency of the Action; (iii) Defendant provides to any Plaintiff in connection with and during the pendency of any of the Action; (iv) any Plaintiff provides to Defendant in connection with and during the pendency of the Action; (v) the Department of Justice provides to any federal governmental agency in connection with and during the pendency of this Action; and/or (vi) any federal governmental agency provides to the Department of

5

Justice in connection with and during the pendency of this Action.

(m) "Non-Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party in the Action.

(n) "Outside Counsel" means the attorneys employed by outside law firms who are retained to represent or advise a Party, as well as any paralegals, administrative assistants, and clerical and administrative personnel supervised by those lawyers and employed by those Outside Counsel. To the extent any Outside Counsel has not filed an appearance in the Action ("Non-Appearing Law Firm"), a Party shall notify the other Parties of the name of the Non- Appearing Law Firm at least seven days before any attorneys of the Non-Appearing Law Firm obtain access to any Investigation Materials and/or Litigation Materials. Attorneys of the Non- Appearing Law Firm who are given access to Investigation Material and/or Litigation Material, shall first complete and execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto.

(o) "Party" means any Plaintiff or Defendant in the Action, and in the case of each State Plaintiff, means the Attorney General's Office of such State Plaintiff. "Parties" collectively means all Plaintiffs and Defendant in the Action.[3]

(p) "Plaintiffs" means the Plaintiffs in the Action, including all of their employees, agents, and representatives.

(q) "Plaintiffs' Counsel" includes: (i) any employee of the Antitrust Division of the U.S. Department of Justice who is assigned to work on this Action and/or any

---

[3] For purposes of this Protective Order, the term "Party" shall be construed in a manner consistent with the Court's ruling on the Joint Proposed Discovery Plan. Dkt. 94.

employee of the U.S. Department of Justice who is responsible for supervising work related to this Action; and (ii) any employee of a State Plaintiffs' Attorney General's Office (including retained attorneys and contract attorneys). For the avoidance of doubt, "employee" as used in this sub-paragraph includes, but is not limited to, attorneys, paralegals, economists, administrative assistants, IT and support staff, and clerical and administrative personnel;

(r)     "Person" means any natural person, corporate entity, business entity, partnership, association, joint venture, governmental entity, or trust.

(s)     "Producing Party" means a Party who produced or produces Investigation Material, Litigation Material, or Source Code.

(t)     "Protected Person" means any Person (including a Party or a Non-Party) that either voluntarily or under compulsory process, has provided or provides: (i) Investigation Materials, (ii) Litigation Materials; or (iii) Source Code.

(u)     "Receiving Party" means a Party who received Investigation Material, Litigation Material, or Source Code.

(v)     "Source Code" means extremely sensitive information or items representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means. To the extent production of Source Code becomes necessary in this case, a Party who produces Source Code may designate it as "Highly Confidential - Source Code." The protocols for Defendant's production of Source Code, and the review of such Source Code,

7

appear in Appendix B to this Order.

    (w)    "State Plaintiffs" means the States of California, Colorado, Connecticut, New Jersey, New York, Rhode Island, and Tennessee, and the Commonwealth of Virginia, and any other state that joins the Action, by and through their respective Attorneys General.

    (x)    "State Plaintiffs' Counsel" means attorneys employed by the State Plaintiffs' Attorney General's Office (including retained attorneys and contract attorneys).

### *Designation of Highly Confidential Information and Confidential Information*

2.  Within two business days of the Court's entry of this Order, each Party shall send by email, facsimile, or overnight delivery a copy of this Order to any Non-Party Protected Person (or, if represented by counsel, the Non-Party Protected Person's counsel) that provided Investigation Materials to that Party.

3.  **Production of Investigation Materials Originating from a Non-Party.** If a non-Party Protected Person determines that this Order does not adequately protect its Confidential Information, it may, within seven days after receipt of a copy of this Order, seek additional protection from the Court for its Confidential information. If a non-Party Protected Person timely seeks additional protection from the Court, the Party's obligation to produce that non-Party Protected Person's documents containing Confidential Information, that is the subject of the motion, is suspended until a decision is rendered by the Court. If the Court orders the production of the non-Party's documents, the Party will have seven days to make the production unless a longer period is ordered by the Court.

4.  **Designation of Investigation Materials as Confidential or Highly Confidential by Protected Persons.** To the extent a Protected Person has already designated Investigation

Materials as Confidential or Highly Confidential, those materials shall retain those existing designations, subject to any later challenge by a Party. To the extent that Investigation Materials are reproduced in the Action, all protections afforded to Litigation Materials pursuant to this Order shall apply.

5.  The identity of a Non-Party submitting Highly Confidential Information or Confidential Information shall also be treated as Highly Confidential Information or Confidential Information for the purposes of this Order where the submitter has requested such confidential treatment.

6.  Any production of documents or testimony not designated as Confidential or Highly Confidential Information will not be deemed a waiver of any future claim of confidentiality concerning such information if it is subsequently designated as Confidential or Highly Confidential Information. If at any time before trial of this Action, a Protected Person realizes that it should have designated as Confidential or Highly Confidential Information any Investigation Materials, Litigation Materials, or Source Code that Person previously produced, it may so designate such Documents, testimony, or other materials by notifying the Parties in writing, and, to the extent the new designations relate to Documents, an overlay file with the new designations shall also be provided in accordance with Paragraph 7(g). The Parties shall thereafter treat the Investigation Materials, Litigation Materials, or Source Code pursuant to the Protected Person's new designation under the terms of this Order. However, the disclosure of any information for which disclosure was proper when made will not be deemed improper regardless of any such subsequent confidentiality designation.

7.  **Designation of Litigation Materials as Highly Confidential or Confidential by Protected Persons.** The following procedures govern the process for Protected Persons to

9

designate as Highly Confidential or Confidential any information that they disclose in this Action, including, but not limited to, information in response to requests under Fed. R. Civ. P. 30, 31, 33, 36, and 45, and Documents disclosed in response to Fed. R. Civ. P. 33(d), 34(b)(2) and (c), or 45:

     (a)    Indiscriminate designations are prohibited.

     (b)    **Testimony.** All transcripts of depositions taken in the Action after entry of this Order will be treated as Highly Confidential Information in their entirety for 45 days after the date of the deposition, or until 5 days before trial, whichever date is earlier. Parties will be responsible for obtaining the deposition transcript for any Party deponents. For Non-Party deponents, if requested by the Non-Party deponent, the Party who noticed the deposition shall, within 5 business days of being provided a final transcript (subject to any errata) of the deposition (or as soon as reasonably possible after the request is made), provide the final transcript (subject to any errata) to the Non-Party deponent (or the Non-Party deponent's counsel, if applicable).

        Within 45 days following the date of the deposition, the deponent, whether a Non-Party or a Party, may designate, subject to the provisions of this Order, Highly Confidential Information or Confidential Information any portion of the deposition transcript, by page(s) and line(s), and any deposition exhibits provided by the deponent or the deponent's employer or its affiliates, or containing the Highly Confidential Information or Confidential Information of the deponent or the deponent's employer or its affiliates (regardless of who provided or produced the Document). To be effective, such designations must be provided in writing to all Parties. All transcripts of depositions taken in this Action after entry of this Order will be treated as Highly Confidential Information in their entirety until the deadline for the

deponent to designate portions of the transcript as Highly Confidential Information has expired. Further, to the extent that a Party's Highly Confidential or Confidential Documents were utilized in the deposition, that Producing Party also has 45 days following the date of the deposition to designate any portion of the deposition testimony as Highly Confidential or Confidential to the extent the deposition testimony discloses or relates to Highly Confidential or Confidential Documents used at the deposition. To be effective, such designations must be provided in writing to all Parties' counsel.

When a Party is entitled under this Order to question a deponent about a Document or information that has been designated by a Non-Party as Highly Confidential or Confidential, and such Non-Party is not in attendance at the deposition, the Party that asked such questions shall designate as Highly Confidential or Confidential the portion of the transcript relating to such Highly Confidential or Confidential Document or information within 45 days following the date of the deposition.

(c) **Documents.** A Protected Person who designates as Highly Confidential Information any Document that it produced in this Action must stamp or otherwise mark each Document containing said information with the designation "HIGHLY CONFIDENTIAL" in a manner that will not interfere with legibility, including page numbering, or audibility unless such Document is produced in native electronic format. A Protected Person who designates as Confidential Information any Document that it produced in this Action must stamp or otherwise mark each Document containing said information with the designation "CONFIDENTIAL" in a manner that will not interfere with legibility, including page numbering, or audibility. Any Document that contains Confidential Information or Highly Confidential Information may be so designated in its entirety. To the extent a Document is

11·

produced in native form, such Documents shall be produced in accordance with Paragraph 7(d) below.

(d) **Electronic Documents and Data.** Where a Protected Person produces Confidential or Highly Confidential Information contained in electronic files and Documents in native electronic format, such electronic files and Documents shall be designated by the Protected Person for protection under this Order by appending to the file names or designators' information indicating whether the file contains Highly Confidential Information or Confidential Information, or by any other reasonable method for appropriately designating such information produced in electronic format, including by including a slip sheet associated with the electronic file or by making such designations in reasonably accessible metadata associated with the files. Where Highly Confidential Information or Confidential Information is produced in electronic format on a disk or other medium that contains exclusively confidential information, the "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" designation may be placed on the disk or other medium. When electronic files or Documents in native form are printed for use at a deposition, in a court proceeding, or for provision in printed form to any person who may receive such files in accordance with this Order, the Party printing the electronic files or Documents shall include the slip sheet identifying the electronic file or Document as "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" along with the production number or Bates number and designation associated with the native file, or shall affix a legend to the printed Document saying "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" and include the production number or Bates number and designation associated with the native file.

(e) Upward Designation of Litigation Materials Produced by Other Parties or Non-

Parties. A Protected Person may upward designate (i.e., change any Litigation Materials produced without a designation to a designation of "Confidential" or "Highly Confidential" or designate any Litigation Materials produced as "Confidential" to a designation of "Highly Confidential") any Litigation Materials produced by another Protected Person, provided that said Litigation Materials contains the upward designating Protected Person's own Confidential Information or Highly Confidential Information.

(f)     Upward designation shall be accomplished by providing written notice to the Parties and the relevant disclosing Protected Person identifying the Litigation Materials to be re- designated within 120 days from the date of the production containing the materials the Protected Person seeks to upwardly designate, or 30 days prior to trial in the Action, whichever is earlier. Such notice must identify (by Bates number, or in the event there is no Bates number, by other individually identifiable information) each Document the Protected Person wishes to upward designate, and include an explanation as to why the Protected Person wishes to upward designate such Documents, and why the existing confidentiality designation is insufficient. The Protected Person shall also provide an overlay file reflecting the new designations in accordance with Paragraph 7(g). Failure to upward designate within 120 days, alone, will not prevent a Protected Person from obtaining the agreement of the disclosing Protected Person to upward designate certain Litigation Materials or from moving the Court for such relief. Any Party may object to the upward designation of Litigation Materials pursuant to the procedures set forth in Paragraph 13 regarding challenging designations.

(g)     **Overlay Files.** To the extent this Order requires a Protected Person to provide an overlay file in connection with a new or altered confidentiality designation, that Protected Person shall have five business days from the date of the changed designation to produce an

13

overlay file. In the interim, the Parties shall take care to treat the Documents at issue as if the new designation applies. For the avoidance of doubt, a Party does not violate this provision where it in good faith attempts to comply with the new designation.

8.  In the event that a Party is required to produce Documents designated by a Non-Party as Confidential or Highly Confidential Information, then the Party shall:

(a)    promptly notify in writing the Party seeking the Highly Confidential Information or Confidential Information that some or all of the information requested is subject to a protective order;

(b)    promptly notify the Non-Party that its Highly Confidential Information or Confidential Information is being requested and make the information requested available for inspection by the Non-Party or Party; and

(c)    promptly provide the Non-Party with a copy of this Order, the relevant discovery request(s), and a reasonably specific description of the information requested.

The purpose of this provision is to alert a Party to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this Court.

9.  If the Non-Party or Party fails to object or seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Non-Party or Party's Highly Confidential Information or Confidential Information responsive to the discovery request may be produced. If the Non-Party or Party timely seeks a protective order, its Highly Confidential Information or Confidential Information shall not be produced before a determination by the Court. Absent an order to the contrary, the Non-Party or Party shall bear the burden and expense of seeking protection in this Court of its Highly Confidential

Information or Confidential Information. The terms of this Order are applicable to information produced by a Non-Party or Party in the Action and designated as Highly Confidential Information or Confidential Information. Such information produced by Non-Parties or Parties in connection with this Action is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party or Party from seeking additional protections.

10. **Unauthorized disclosure of Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code.** In the event of a disclosure of any Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code to any person(s) not authorized to receive such disclosure under this Order, the Party who discovers such unauthorized disclosure shall: (a) promptly notify the Protected Person whose material has been disclosed and provide to such Protected Person all known relevant information concerning the nature and circumstances of the disclosure. If it is readily discernible which Party is responsible for the disclosure, the disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed material and to ensure that no further unauthorized disclosure and/or use thereof is made; (b) inform the Person(s) to whom unauthorized disclosure was made of all the terms of this Order; and (c) request such Person(s) execute the Agreement Concerning Confidentiality in the form of Appendix A attached hereto. If it is not readily discernible which Party is responsible for the disclosure, the Parties shall work together to: (a) promptly take all reasonable measures to retrieve the improperly disclosed material and to ensure that no further unauthorized disclosure and/or use thereof is made; (b) inform the Person(s) to whom unauthorized disclosure was made of all the terms of this Order, and (c) request such Person(s) execute the

15

Agreement Concerning Confidentiality in the form of Appendix A attached hereto.

11. Unauthorized or inadvertent disclosure shall not change the confidential status of any disclosed material or waive the Producing Party's right to maintain the disclosed material as containing Confidential Information, Highly Confidential Information, or Highly Confidential- Source Code.

### Privileged Investigation Materials and Litigation Materials

12. (a)     The production of privileged or work-product protected Documents, electronically stored information ("ESI"), or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Federal Rule of Evidence 502(b) shall not apply to any disputes regarding Investigation Material or Litigation Material.

(b)     Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of Documents, ESI (including metadata), or information for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

(c)     If the Producing Party becomes aware that it has produced information protected by the attorney-client privilege or any other privilege or immunity, the Producing Party will promptly notify each Receiving Party in writing of the production and the basis of the privilege being asserted. After being notified, a Party must promptly return, sequester,[4] or destroy the specified information and any copies or summaries of the information that it has; must not use or disclose the information until the claim is resolved; must take reasonable steps

---

[4] For the avoidance of doubt, sequestration prohibits the Party in possession from further review of the material once a claim of privilege is made except as otherwise provided in this Paragraph.

16

to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim in camera. Any challenge to a claim of privilege contemplated by this Paragraph must be made promptly. The Producing Party must preserve the information until the claim is resolved.

(d)     If a Receiving Party becomes aware that it is in receipt of information or material that it knows or reasonably should know is privileged, counsel for the Receiving Party shall immediately take steps to: (i) stop reading such information or material; (ii) notify counsel for the Producing Party of such information or material; (iii) collect all copies of such information and material; and (iv) return to the Producing Party and/or destroy such information or material (and, in the case of destruction, certify that fact to the Producing Party if requested to do so). Any notes or summaries referring or relating to such material shall be destroyed simultaneously therewith.

(e) This Order is without prejudice to any Protected Person's right to assert that any Investigation Materials or Litigation Materials are subject to any applicable claim of privilege or protection, including, but not limited to, the attorney-client privilege and the work-product doctrine, and it is without prejudice to any Party's right to contest such a claim of privilege or protection.

### *Objections to Confidentiality Designations*

13. Any Party who objects to any confidentiality designation, or part thereof, (the "Objecting Party") may, until 30 days before the trial of its Action, provide a written notice to the Protected Person who made such designation (the "Designating Party") and to all Parties stating with particularity the grounds for the objection. All materials objected to shall continue to be treated as Confidential Information, Highly Confidential Information, or Highly

17

Confidential - Source Code pending resolution of the dispute. Within 10 days of the Objecting Party's written notice, the Objecting Party and the Designating Party shall attempt to confer to discuss their respective positions. If the Objecting Party and Designating Party cannot reach an agreement on the objection within 10 days of the Objecting Party's written notice (or another deadline agreed to by the Objecting Party and the Designating Party), the Objecting Party may raise the dispute to this Court by filing a motion in accordance with the applicable Local Rules. If the Court finds the designation of Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code to have been inappropriate, the challenged designation shall be considered rescinded, and the Designating Party shall reproduce the Documents with the revised designations, along with an overlay file in accordance with Paragraph 7(g). Notwithstanding anything else contained in this Order, the Parties reserve their rights under Fed. R. Civ. P. 37.

### *Disclosure of Highly Confidential Information or Confidential Information*

14. Highly Confidential Information may be disclosed only to the following Persons:

(a)     the Court and all Persons assisting the Court in the Action, including law clerks, court reporters, and stenographic or clerical personnel;

(b)     Outside Counsel for Defendant, except that access by non-attorneys shall be limited to personnel assigned to work on the Action, whose functions require access to the information. Such personnel shall not include any employee of a Party;

(c)     Plaintiffs' Counsel, except that access by non-attorneys shall be limited to personnel assigned to work on the Action, whose functions require access to the information;

(d)     outside vendors or service providers (such as copy-service providers,

18

outside court reporters retained for depositions, document-management consultants, or lawyers or law firms for document review other than Outside Counsel) and agents or independent contractors retained by a Party to assist that Party in the Action provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

(e)    any mediator, arbitrator, or special master that the Parties engage in this Action or that this Court appoints provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

(f)    any Person who the Highly Confidential Information itself indicates, or who the Receiving Party has a good-faith basis to believe, was the author, addressee, recipient, custodian, or source of the Document or Highly Confidential Information.

(g)    any Person who the Highly Confidential Information itself indicates, or who the Receiving Party has a good-faith basis to believe, had lawful access to the Document or the Highly Confidential Information;

(h)    during a deposition, any Person who the Highly Confidential Information itself indicates, or who the Receiving Party has a good-faith basis to believe, had knowledge of the Highly Confidential Information;

(i)    during a deposition, any current employee of the Designating Party;

(j)    any Person retained by a Party to serve as a testifying or consulting expert in this Action,[5] including any employees of the firm with which the expert or consultant is

---

[5] This provision does not apply to any Person retained by a Party to serve as a testifying or consulting expert, where such person is also an employee of a Party.

associated and independent contractors who assist the expert's work in the Action, provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

(k)     outside trial consultants (including, but not limited to, graphics consultants and mock jurors), provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

(l)     any Person as may be authorized by written agreement of the Designating Party, by verbal agreement of the Designating Party on the record at a deposition or Court hearing, or by order of the Court.

15. Confidential Information may be disclosed only to the following Persons:

(a)     the Court and all Persons assisting the Court in the Action, including law clerks, court reporters, and stenographic or clerical personnel;

(b)     Outside Counsel for Defendant, except that access by non-attorneys shall be limited to personnel assigned to work on the Action, whose functions require access to the information. Such personnel shall not include any employee of a Party;

(c)     Plaintiffs' Counsel, except that access by non-attorneys shall be limited to personnel assigned to work on the Action, whose functions require access to the information;

(d)     the officers, directors, and employees (including In-House Counsel) of Defendant to whom disclosure is reasonably necessary for this litigation and who have signed the Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

(e)     outside vendors or service providers (such as copy-service providers, outside

20

court reporters retained for depositions, document-management consultants, or lawyers or law firms for document review other than Outside Counsel) and agents or independent contractors retained by Defendant to assist Defendant in the Action provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

     (f)     any mediator, arbitrator, or special master that the Parties engage in the Action or that this Court appoints provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

     (g)     any Persons who the Confidential Information itself indicates, or who the Receiving Party has a good-faith basis to believe, was the author, addressee, recipient, custodian, or source of the Document or Confidential Information;

     (h)     any Persons who the Confidential Information itself indicates, or who the Receiving Party has a good faith basis to believe had lawful access to the Document or Confidential Information;

     (i)     during a deposition, any Persons who the Confidential Information itself indicates, or who the Receiving Party has a good-faith basis to believe, had knowledge of the Confidential Information;

     (j)     any Person whose statements or communications are quoted, recounted, or summarized in a Party's or Non-Party's Documents or Confidential Information, except that only those portions of the Documents or Confidential Information quoting, recounting, or summarizing a Person's statements or communications may be disclosed to that Person;

     (k)     during a deposition, any current employee of the Designating Party;

21

(l)     outside trial consultants (including, but not limited to, graphics consultants and mock jurors) provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

(m)     any Person retained by a Party to serve as a testifying or consulting expert in these Action,[6] including any employees of the firm with which the expert or consultant is associated and independent contractors who assist the expert's work in the Action, provided that they shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto;

(n)     any Person as may be authorized by written agreement of the Designating Party, by verbal agreement of the Designating Party on the record at a deposition or Court hearing, or by order of the Court.

16. The Parties shall have the right to seek redress from this Court to enforce the provisions of the Agreement Concerning Confidentiality set forth in Appendix A with respect to any Person bound by this Order.

17. Each Person described in Paragraphs 14 and 15 of this Order to whom information designated as Highly Confidential Information or Confidential Information is disclosed must not disclose that Highly Confidential Information or Confidential Information to any other Person, except as permitted in this Order.

18. Nothing in this Order:

(a)     limits a Protected Person's use or disclosure of its own information designated as Highly Confidential Information or Confidential Information;

---

[6] This provision does not apply to any Person retained by a Party to serve as a testifying or consulting expert, where such Person is also an employee of a Party.

22

(b)      prevents disclosure of Highly Confidential Information or Confidential Information with the consent of the Protected Person that designated the material as Confidential or Highly Confidential;

(c)      prevents disclosure by a Party of Highly Confidential Information or Confidential Information: (i) that is or has become publicly known through no fault of that Party; (ii) lawfully acquired by or known to that Party independent of receipt during the Investigation or in discovery in the Action; (iii) previously produced, disclosed and/or provided to that Party without an obligation of confidentiality and not by inadvertence or mistake; or (iv) pursuant to an order of a court or as may be required by regulation;

(d)      prevents counsel from rendering advice to his or her client with respect to this matter or from generally referring to or relying upon Confidential Information or Highly Confidential Information in rendering such advice so long as counsel does not specifically disclose the substance of the Confidential Information or Highly Confidential Information; or

(e)      prevents Plaintiffs' retention, use, or disclosure of Investigation Materials outside the context of the Action to the extent permitted by applicable law or regulation, for law enforcement purposes, as required by law, court order, or regulation, or for the purpose of securing compliance with a Final Judgment in this Action. Any such disclosures shall be limited to those permitted by applicable law or regulation. Plaintiffs will not disclose any Litigation Materials produced only during the pendency of the Action to any Non-Party, except as ordered by a court or as may be required by law or regulation and subject to Paragraph 28. If Investigation Materials or Litigation Materials are requested for disclosure under a state's public information act or the equivalent, this Order prohibits disclosure to the

23

extent the state's public information act or the equivalent provides an exception for disclosure of information protected by court order.

### Disclosure of Highly Confidential Information to Designated In-House Counsel for Parties Based on Need

19. A Party may at any time before the trial of its Action request disclosure of Highly Confidential Information to Designated In-House Counsel by consent of the Designating Party or motion with the Court. Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party seeking to disclose Highly Confidential Information to Designated In-House Counsel must submit in writing to the other Parties and the Designating Person a written statement that: (1) describes with particularity the Highly Confidential Information the Party seeks to disclose to Designated In-House Counsel; (2) sets forth the full name of each Designated In- House Counsel and the city and state of his or her residence, and (3) describes each Designated In-House Counsel's primary job duties and responsibilities in sufficient detail to determine if each Designated In-House Counsel is involved in Competitive Decision-Making. The Party must meet and confer with the Designating Party to try to resolve the matter by agreement within seven days of the written notice. If no agreement is reached, the Party may file a motion with the Court. The other Parties and/or the Designating Party will have seven days to respond to such motion. The Party will not disclose any Highly Confidential Information to Designated In-House Counsel pending resolution of the dispute. If the Court finds that the Designated In-House Counsel has a particularized need for access to the Highly Confidential Information that outweighs the risk of harm to the Designating Party or the public interest, the Party will be permitted to disclose the Highly Confidential Information to the Designated In-House Counsel.

24

*Use of Information Designated Highly Confidential or Confidential in this Action*

20. In the event that any Highly Confidential Information or Confidential Information is contained in any pleading, motion, exhibit, or other paper filed or to be filed with the Court, the Court shall be so informed by the Party filing such papers, and such papers shall be filed under seal, in accordance with this Court's Local Rule 5, as modified by the terms of this Order. The Parties agree to act in good faith to limit the need to seal Documents filed in this Court.

21. **Filing Highly Confidential Information or Confidential Information Under Seal.** The filing of documents designated as Confidential or Highly Confidential under seal will be governed by the provisions of Local Civil Rule 5.

22. Parties shall give the other Parties notice (a minimum of two business days) if they reasonably expect a deposition, hearing, or other proceeding to include Highly Confidential Information so that the other Parties can ensure that only authorized individuals are present during the portions of those proceedings where the Highly Confidential Information may be used. The use of a Document as an exhibit at a deposition shall not in any way affect its designation as Highly Confidential Information or Confidential Information.

*Use of Highly Confidential Information or Confidential Information at Trial*

23. Disclosure at trial or at any evidentiary hearing of any Document, testimony, or other material designated as Highly Confidential Information or Confidential Information will be governed pursuant to a separate court order. Unless otherwise directed by the Court, the Parties shall meet and confer and file a motion accompanied by a proposed order outlining those procedures no later than 30 calendar days before the first day of trial or any evidentiary

hearing. Upon the filing of a motion and proposed order governing the disclosure of Highly Confidential Information or Confidential Information at trial or any evidentiary hearing, the Parties shall provide notice of such order to Non-Parties whose Highly Confidential Information or Confidential Information is expected to be used at trial or any evidentiary hearing.

24. Unless otherwise provided for in this Order, Highly Confidential Information and Confidential Information produced by a Party or a Non-Party in the Action shall be used solely for the conduct of the Action and shall not be used by a Party, Non-Party, or any Person subject to this Order, including counsel for a Party or Non-Party, for any business, commercial, competitive, personal, or other purpose. Such Highly Confidential and Confidential Information may only be disclosed under the conditions described in this Order.

### *Investigation Materials or Litigation Materials Subpoenaed or Ordered Produced in Other Litigation*

25. If a Party is served with a lawful subpoena or a court order issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in the Action as Confidential or Highly Confidential that Party must:

   (a)   promptly notify in writing the Designating Party (such notification shall include a copy of the subpoena or court order);

   (b)   promptly notify in writing the Person or entity who issued the subpoena or caused the order to issue in the other litigation, that some or all of the material covered by the subpoena or order is subject to this Order (such notification shall include a copy of this Order); and

   (c)   cooperate with respect to all reasonable procedures sought to be pursued by

26

the Designating Party whose Highly Confidential or Confidential Information may be affected.[7]

26. If the Designating Party timely[8] seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as Confidential or Highly Confidential before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Confidential Information or Highly Confidential Information—and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in the Action to disobey a lawful directive from another court.

27. If, under any public records or other relevant law, any Investigation Materials or Litigation Materials are subject to any form of compulsory process in a Plaintiff State or is demanded from any Plaintiff, such Plaintiff shall notify in writing the Designating Party whose Investigation Materials or Litigation Materials may be affected at least 10 business days before producing Investigation Materials or Litigation Materials, unless state or federal statute, or court order or other public adjudicatory body requires that the Plaintiff State produce the Investigation Materials or Litigation Materials in a shorter time frame. A Plaintiff shall not produce the Investigation Materials or Litigation Materials in response to such

---

[7] The purpose of imposing these duties is to alert the interested parties to the existence of this Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court or other tribunal from which the subpoena or order issued.

[8] The Designating Party shall have at least 14 days from the service of the notification pursuant to Paragraph 25(a) to seek a protective order, unless the subpoena or order requires a response within a period shorter than 14 days, or unless a shorter period applies under the rules of the court or other tribunal from which the subpoena or order issued, in which case such rules shall apply.

compulsory process or public records request unless the Plaintiff deems that it is required by

law to do so and provides 10 business days' notice of its intent to do so to the Designating

Party, unless state or federal statute, or court order or other public adjudicatory body requires

that the Plaintiff produce the Investigation Materials or Litigation Materials in a shorter time

frame. However, if a Plaintiff denies a public records or similar request and the denial is not

successfully challenged or overruled, the Plaintiff does not need to provide notice pursuant to

this paragraph. If Investigation Materials or Litigation Materials are requested for disclosure

under a state's public information act or the equivalent, this Order prohibits disclosure to the

extent the state's public information act or the equivalent provides an exception for disclosure

of information protected by court order. Nothing contained herein shall alter or limit the

obligations of a Plaintiff State that may be imposed by statute or court order regarding the

disclosure of Documents and information supplied to the state.

### *Procedures upon Termination of this Action*

28. The obligations imposed by this Order survive the termination of this Action unless

the Court, which shall retain jurisdiction to resolve any disputes arising out of this Order,

orders otherwise. Except as otherwise provided by Paragraph 18, within 90 days after the

expiration of the time for appeal of an order, judgment, or decree terminating the Action, all

Persons, other than Plaintiffs, having received information designated as Confidential

Information, Highly Confidential Information) or Highly Confidential - Source Code in such

Action must return all copies thereof to the Protected Person (or the Protected Person's

counsel if represented by counsel) that produced it or destroy or delete all copies of such

Confidential Information, Highly Confidential Information, or Highly Confidential - Source

Code. Within 90 days after the expiration of the time for appeal of an order, judgment, or

decree terminating the Action, all Plaintiffs in such Action having received information designated as Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code must, to the extent permitted by Plaintiffs' retention schedules, either make a good-faith effort to return all copies thereof to the Protected Person (or the Protected Person's counsel if represented by counsel) that produced it or destroy or delete all copies of such Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code. Within 90 days after the expiration of the time for appeal of an order, judgment, or decree terminating this Action, all Persons having received information designated as Confidential Information must certify compliance with this Paragraph 28 in writing to the Party or Protected Person that produced the Confidential Information.

29. Counsel for the Parties will be entitled to retain court papers and exhibits, deposition transcripts and exhibits, hearing transcripts and exhibits, trial transcripts and exhibits, correspondence (including internal correspondence and email) and work product, provided that the Parties and their counsel do not disclose the portions of these materials containing information designated as Highly Confidential Information or Confidential Information to any Person, except pursuant to court order or agreement with the Protected Person that produced the Highly Confidential Information or Confidential Information or as otherwise permitted herein. All Highly Confidential Information and Confidential Information returned to the Parties or their counsel by the Court likewise must be disposed of in accordance with this paragraph. Nothing in this paragraph, however, restricts the rights of the Parties under Paragraphs 14 and 15 of this Order.

### *New Parties to The Action*

30. In the event that additional Persons or entities become parties to the Action,

such new Parties shall not have access to Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code produced by or obtained from any Protected Person until an authorized person executes, on behalf of the new Party, an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto.

### *Non-Parties*

31. Any Party, in conducting discovery from Non-Parties in connection with the Action, shall provide any Non-Party from which it seeks discovery with a copy of this Order so as to inform each such Non-Party of his, her or its rights herein. If a Non-Party provides discovery to any Party in connection with the Action, the provisions of this Order shall apply to such discovery as if such discovery were being provided by a Party. Under such circumstances, if the Non-Party agrees to be bound by the terms of this Order in the form of Appendix A attached hereto, the Non-Party shall have the same rights and obligations under the Order as held by the Parties, except that, other than with leave of court, in no circumstance may a Party's Highly Confidential Information be disclosed to a Non-Party without the consent of that Party. However, a Party's Highly Confidential Information may be shared with a former employee of that Party if the former employee may view the Highly Confidential Information pursuant to Paragraph 14.

### *Reservation of Rights*

32. Nothing contained in this Order or any designation of confidentiality hereunder, or any failure to make such designation, shall be used or characterized by any Party as an admission by a Party or a Party opponent. Nothing in this Order shall be deemed an admission that any particular information designated as Confidential Information, Highly

Confidential Information, or Highly Confidential - Source Code is entitled to protection under the Order, Federal Rule of Civil Procedure 26(c), or any other law. Nothing in this Order shall be construed as granting any Person a right to receive specific Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code where a court has entered an order precluding that Person from obtaining access to that information. The Parties specifically reserve the right to challenge the designation of any particular information as Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code and agree that no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to introduction or use as evidence of any of the Investigation Materials or Litigation Materials covered by this Order.

### *Standard of Care*

33. The recipient of any Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code shall maintain such material in a secure and safe area and shall exercise a standard of due and proper care with respect to the storage, custody, use, and/or dissemination sufficient to safeguard against unauthorized or inadvertent disclosure of such material. Confidential Information, Highly Confidential Information, or Highly Confidential - Source Code shall not be copied, reproduced, extracted or abstracted, except for the purpose of the conduct of the Action or as otherwise provided by this Order. All such copies, reproductions, extractions, and abstractions shall be subject to the terms of this Order and be clearly marked to reflect their designation.

### *Right to Seek Modification*

34. Nothing in this Order limits any Person, including members of the public, a Party, or a

Protected Person, from seeking: (1) further or additional protections of any of its materials, or (2) modification of this Order upon motion duly made pursuant to the Rules of this Court, including, without limitation, an order that certain material not be produced at all or is not admissible evidence in the Action or any other proceeding.

### *The Privacy Act*

35. Any order of this Court requiring the production of any Document, information, or transcript of testimony constitutes a court order within the meaning of the Privacy Act, 5 U.S.C. § 552a (b) (11).

### *Persons Bound by This Order*

36. This Order shall be binding on the Parties to the Action, their attorneys, and their successors, personal representatives, administrators, assigns, parents, subsidiaries, divisions, affiliates, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control, and any Non-Party, to the extent such Non-Party has agreed to be bound by this Order.

37. All persons subject to this Order are reminded that this Order may be enforced by the Court's full powers of criminal and civil contempt.

IT IS HEREBY SO ORDERED this __11^TH__ day of __MAY__, 2023.

_____ /s/ _____
John F. Anderson
United States Magistrate Judge

32

APPENDIX A (NON-PARTY CONFIDENTIALITY AGREEMENT)

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No.: 1:23-CV-00108-LMB-JFA |

## AGREEMENT CONCERNING CONFIDENTIALITY

I,_____, am employed by _____
as_____.

I hereby certify that:

1. I have read the Protective Order ("Order") entered in the above-captioned action (this "Action") and understand its terms.

2. I agree to be bound by the terms of the Order entered in this Action.

3. I agree to use the information provided to me only as permitted in the Order.

4. I understand that my failure to abide by the terms of the Order entered in this Action may subject me to civil and criminal penalties for contempt of court.

5. I submit to the jurisdiction of this Court, and specifically the United States District Court for the Eastern District of Virginia, solely for the purpose of enforcing the terms of the Order entered in the above-captioned action and freely and knowingly waive any right I

may otherwise have to object to the jurisdiction of said court.


_____

Signature


_____

Date

APPENDIX B

| |
|---|
| UNITED STATES OF AMERICA, et al. |
| |
| Plaintiffs, |
| |
| v. |
| |
| GOOGLE LLC, |
| |
| Defendant. |

Civil Action No.: 1:23-CV-00108-LMB-JFA

## PROTECTIVE ORDER: SOURCE CODE PROTOCOL

### *Restrictions on those who may view Source Code*

1. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated Highly Confidential - Source Code only to:

   a)    the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Agreement Concerning Confidentiality" that is attached to the Protective Order as Appendix A;

   b)    Plaintiffs' Counsel, if one or more Plaintiffs is the Receiving Party, except that access by non-attorneys shall be limited to personnel to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Agreement Concerning Confidentiality" that is attached to the Protective Order as Appendix A;

1

c)      up to five Experts[9] (for the avoidance of doubt, the Parties can agree to allow

such disclosure to more than five Experts of the Receiving Party) of the Receiving Party (1) to

whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Agreement

Concerning Confidentiality" (Appendix A), and (3) as to whom the procedures set forth in

Paragraph 2 below and specifically identified as eligible to access Highly Confidential - Source

Code Information or Items, have been followed;

d)      the Court and its personnel;

e)      stenographic reporters, videographers and their respective staff who have signed

the "Agreement Concerning Confidentiality" (Appendix A) and are transcribing or videotaping

a deposition wherein Highly Confidential - Source Code Information or Items are being

discussed, provided that such reporters and videographers shall not retain or be given copies of

any portions of the source code, which if used during a deposition, will not be attached as an

exhibit to the transcript but instead shall be identified only by its production numbers.

f)      while testifying at deposition or trial in this action only: (i) any current officer,

director, or employee of the Producing Party or original source of the information; (ii) any

person designated by the Producing Party to provide testimony pursuant to Rule 30(b)(6) of the

Federal Rules of Civil Procedure; and/or (iii) any person who authored, previously received

(other than in connection with this litigation), or was directly involved in creating, modifying,

---

[9] "Expert" means any Person retained by a Party to serve as a testifying or consulting expert in this Action, including any employees of the firm with which the expert or consultant is associated and independent contractors who assist the expert's work in the Action, provided that any such testifying expert, consulting expert, employee, or independent contractor shall first execute an Agreement Concerning Confidentiality agreeing to be bound by the terms of this Order in the form of Appendix A attached hereto and comply with all provisions of this Source Code Protocol including by supplying the information needed for compliance with the Process for Requesting To Disclose Source Code set forth below.

or editing the Highly Confidential - Source Code Information or Items, as evident from its face or reasonably certain in view of other testimony or evidence. Persons authorized to view Highly Confidential - Source Code Information or Items pursuant to this sub-paragraph shall not retain or be given copies of the Highly Confidential - Source Code Information or Items except while so testifying.

### *Process for Requesting to Disclose Source Code*

2. Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated Highly Confidential - Source Code pursuant to paragraphs 1(b) first must make a written request to the Designating Party that (1) identifies the general categories of Highly Confidential- Source Code information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

3. A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Highly Confidential - Source Code to the identified Expert unless, within 14 days of delivering the request, the Party receives a written

objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

4. A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion in accordance with Local Rules and Individual Practices seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

5. In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

### *Restrictions on those who may see Source Code (Patent and Acquisition Bars)*

6. Absent written consent from the Producing Party, any individual who receives access to information designated Highly Confidential - Source Code by the Producing Party shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents related to the subject matter of this action and any patent or application claiming priority to the patents related to the subject matter of this action, before any foreign or domestic agency, including the United States Patent and Trademark

4

Office ("the Patent Office"). For purposes of this paragraph, "prosecution" means directly or indirectly drafting, amending, or advising others as to the drafting or amending of patent claims. To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging or defending a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination, inter partes reexamination, inter partes review, post grant review or covered business method review). This Prosecution Bar shall begin when access to Source Code information is first received by the affected individual and shall end two (2) years after final termination of this action.

7.   Absent written consent from the Producing Party, any individual who receives access to information designated Highly Confidential - Source Code by the Producing Party shall not (i) participate in the acquisition of patents or patent applications relating to the subject matter of this action for the purposes of assertion against Google LLC; or (ii) advise or counsel clients regarding the same. This Acquisition Bar shall not prohibit counsel from advising clients on other legal matters involving patents, including validity and settlement negotiations. This Acquisition Bar shall begin when access to Source Code information is first received by the affected individual and shall end two (2) years after final termination of this action.

### *Process for Reviewing Source Code*

8.   To the extent production of source code becomes necessary in this case, a Producing Party may designate material as Highly Confidential - Source Code if it comprises, includes, or substantially discloses confidential, proprietary or trade secret source code or algorithms. This material may include, among things, technical design documentation that comprises, includes, or substantially discloses source code or algorithms.

9.   Protected Material designated as Highly Confidential - Source Code shall be subject to all

5

of the protections herein including the Prosecution Bar set forth in Paragraph 6 and the

Acquisition Bar set forth in Paragraph 7, and may be disclosed only as set forth in Paragraph 1.

10. Any source code produced in discovery shall only be made available for inspection, not

produced except as set forth below, in a format allowing it to be reasonably reviewed and

searched, during normal business hours or at other mutually agreeable times, at (1) an office of

the Producing Party or the Producing Party's primary outside counsel of record or (2) another

mutually agreed upon location. The source code shall be made available for inspection on a

secured computer (the "Source Code Computer") in a secured, locked room without Internet

access or network access to other computers, and the Receiving Party shall not copy, remove, or

otherwise transfer any portion of the source code onto any recordable media or recordable

device. The Producing Party will make a good faith effort to provide legitimate review tools to

the Source Code Computer as requested by the Receiving Party. The Receiving Party shall

provide a license to the requested review tools should the Producing Party not already have one.

The secured computer shall have disk encryption and be password protected. Use or possession

of any input/output device (e.g., USB memory stick, mobile phone or tablet, camera or any

camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can

access the Internet or any other network or external system, etc.) is prohibited while accessing

the computer containing the source code. All persons entering the locked room containing the

source code must agree to submit to reasonable security measures to ensure they are not carrying

any prohibited items before they will be given access to the locked room. The computer

containing source code will be made available for inspection during regular business hours (9:00

A.M. to 5:00 P.M. local time), upon reasonable notice to the producing party, which shall not be

less than 3 business days in advance of the requested inspection. The Producing Party may

visually monitor the activities of the Receiving Party's representatives during any source code

review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

11. The Receiving Party may request paper copies of limited portions of source code, but only if and to the extent reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial and except to the extent allowed in Paragraph 16. The Receiving Party shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in Paragraph 10 in the first instance. The Producing Party shall undertake to produce the requested material as soon as possible after it is requested, but in no event more than 5 business days after the request, and the Producing Party will provide the requested material on watermark or colored paper (which shall not prevent the creation of legible copies made only as authorized herein) bearing Bates numbers and the legend Highly Confidential- Source Code unless objected to as discussed below. At the inspecting Party's request or the request of an Expert retained by the inspecting Party to whom disclosure of material designated Highly Confidential - Source Code is permitted, additional sets (or subsets) of printed source code may be requested and provided by the Producing Party within 5 business days of the request. The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 13 of the Protective Order, whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution. Contested printouts do not need to be produced to the Receiving Party until the matter is resolved by the Court.

12. The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all printed portions of the source code in a secured, locked area under the direct control of counsel

7

(or outside experts or consultants who have been approved to access source code) responsible for maintaining the security and confidentiality of the designated materials. Any paper copies designated Highly Confidential - Source Code shall be stored or viewed only at (i) the offices or working locations of outside counsel for the Receiving Party, (ii) the offices or working locations of outside experts or consultants who have been approved to access source code; (iii) the site where any deposition is taken (iv) the Court; or (v) any intermediate location necessary to transport the information to a hearing, trial or deposition. Except as provided in Paragraph 16 of this Appendix, the Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. Any printed pages of source code, and any other documents or things reflecting source code that have been designated by the producing party as Highly Confidential - Source Code may not be copied, digitally imaged or otherwise duplicated, except the Receiving Party may make additional paper copies if such additional copies are necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report) or necessary for deposition, or as provided below in Paragraph 16. Any paper copies used during a deposition shall be retrieved by the Receiving Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

13. The Receiving Party's outside counsel and/or expert shall be entitled to take notes relating to the source code but may not copy any portion of the source code into the notes. No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein. Further, no other written or electronic record of the source code is permitted except as otherwise provided herein.

14. A list of names of persons who will view the source code will be provided to the

8

producing party in conjunction with any written (including email) notice requesting inspection. The Producing Party shall maintain a daily log of the names of persons who enter the locked room to view the source code and when they enter and depart. The Receiving Party shall be entitled to a copy of the log.

15. The Receiving Party's outside counsel shall maintain a log of all copies of the source code in its possession or in the possession of its retained consultants. The log shall include the names of the recipients and reviewers of copies and locations where the copies are stored. Upon request by the Producing Party, the Receiving Party shall provide reasonable assurances and/or descriptions of the security measures employed by the Receiving Party and/or person that receives a copy of any portion of the source code. The Producing Party shall be entitled to a copy of the log.

16. Except as provided in this paragraph, the Receiving Party may not create electronic images, or any other images, of the source code from the paper copy for use on a computer (e.g., may not scan the source code to a PDF, or photograph the code). The Receiving Party may create an electronic copy or image of limited excerpts of source code only to the extent necessary in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts of these documents ("Source Code Documents"). The Receiving Party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the Source Code is used. Images or copies of Source Code shall not be included in correspondence between the parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein. The Receiving Party may create an electronic image of a selected portion of the Source Code only when the electronic file containing such image has been encrypted using commercially

9

reasonable encryption software including password protection. The communication and/or disclosure of electronic files containing any portion of source code shall at all times be limited to individuals who are authorized to see source code under the provisions of this Protective Order. Additionally, all electronic copies must be labeled Highly Confidential - Source Code.

17. To the extent portions of source code are quoted in a Source Code Document, either (1) the entire document will be stamped and treated as Highly Confidential - Source Code or (2) those pages containing quoted Source Code will be separately bound, and stamped and treated as Highly Confidential - Source Code.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>       Defendant. | Civil Action No. 1:23-cv-00108-LMB-JFA |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIG. | Civil Action No. 1:21-md-03010-PKC |

## [PROPOSED] ORDER REGARDING COORDINATION OF DISCOVERY

1. <u>Definitions</u>. For purposes of this Order, the following definitions will apply:

  a. "Confidential Information" means material that qualifies as "Confidential Information" as that term is defined in either paragraph 1(b) of the MDL Confidentiality Order or paragraph 1(b) of the Virginia Protective Order.

  b. "Coordinated Case" means the MDL or the Virginia Case. "Coordinated Cases" means the MDL and the Virginia Case.

1

   c.  "Coordinated Discovery Period" means the time period after the Deadline for Substantial Completion of Document Production in the Virginia Case and before the Fact Discovery Cutoff in the Virginia Case.

   d.  "Counsel" means Outside Counsel, Virginia Plaintiffs' Counsel, and MDL State Plaintiffs' Counsel, provided that "Counsel" shall not include Counsel for any Party that ceases to be part of the MDL (unless and until a further order directs otherwise).

   e.  "Cross Notice" means to send a notice of intent to take a deposition of a Party under Federal Rule of Civil Procedure 30(b)(1) or to serve a subpoena for a Non-Party Deposition under Federal Rule of Civil Procedure 45(a)(1), after another Party has Noticed a deposition of the same witness.

   f.  "Deadline for Substantial Completion of Document Production in the Virginia Case" means the date ordered by the Court for the substantial completion of document production in the Virginia Case.

   g.  "Deposition Limit" means (i) for Parties in the MDL, the fact-deposition limit in the MDL referenced in paragraph 6.5 of Pre-Trial Order Number 5 in the MDL (Dkt. 394), and any changes to that limit that may be made after entry of this Order; and (ii) for Parties in the Virginia Case, the fact-deposition limits in the Virginia Case referenced in paragraph 7 of the Rule 16(b) Scheduling Order in the Virginia Case (Dkt. 94), which references and incorporates paragraph 6(G) of the Joint Discovery Plan in the Virginia Case (Dkt. 87), and any changes to those limits that may be made after entry of this Order.

h.    "Deposition Notice" means a notice of intent to take a deposition of a Party under Federal Rule of Civil Procedure 30(b)(1) or a subpoena for a Non-Party Deposition under Federal Rule of Civil Procedure 45(a)(1).

i.    "District Courts" means the U.S. District Court for the Eastern District of Virginia and the U.S. District Court for the Southern District of New York.

j.    "Expert Discovery" means expert reports in a Coordinated Case, backup materials and other information disclosed in connection with expert reports in a Coordinated Case, and expert testimony (including expert deposition testimony) in a Coordinated Case.

k.    "Fact Discovery Cutoff in the Virginia Case" means the date ordered by the Court for the conclusion of fact discovery in the Virginia Case.

l.    "Google" means Google LLC, as well as its parents, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents (including counsel), and representatives of the foregoing.

m.    "Google Deposition" means any deposition of a current or former employee of Google or of Google's corporate designee under Federal Rule of Civil Procedure 30(b)(6).

n.    "Highly Confidential Information" means material that qualifies as "Highly Confidential Information" as that term is defined in either paragraph 1(h) of the MDL Confidentiality Order or paragraph 1(g) of the Virginia Protective Order.

o.    "MDL" means the multidistrict litigation captioned as *In re Google Digital Advertising Antitrust Litigation* that is currently pending in the U.S. District Court for the Southern District of New York under docket number 21-md-03010-PKC, and all

3

of the cases that are currently part of that multidistrict litigation or that become part of

that multidistrict litigation after entry of this Order, but only for such time as a case is

part of the multidistrict litigation (unless and until a further order directs otherwise).

      p.     "MDL Confidentiality Order" means the Confidentiality Order entered as

docket entry 297 in the MDL.

      q.     "MDL Plaintiff" means a plaintiff in any case made part of the MDL, but

only for such time as that plaintiff's case is part of the MDL (unless and until a further

order directs otherwise).

      r.     "MDL Plaintiffs' Counsel" means any attorney retained to represent or

advise an MDL Plaintiff, as well as any paralegals, administrative assistants, and clerical

and administrative personnel supervised by that attorney, but only for such time as that

MDL Plaintiff's case is part of the MDL (unless and until a further order directs

otherwise).

      s.     "MDL State Plaintiffs" means the States of Texas, Alaska, Arkansas,

Idaho, Indiana, Kentucky, Florida, Louisiana, Mississippi, Montana, Missouri, Nevada,

North Dakota, South Dakota, South Carolina, Utah, the Commonwealth of Kentucky,

Puerto Rico, and any other state that joins the MDL, by and through their respective

Attorneys General, but only for such time as that state's case is part of the MDL (unless

and until a further order directs otherwise).

      t.     "MDL State Plaintiffs' Counsel" means any attorney retained to represent

or advise an MDL State Plaintiff in the MDL, as well as any paralegals, administrative

assistants, and clerical and administrative personnel supervised by that attorney, but only

4

for such time as that MDL State Plaintiff's case is part of the MDL (unless and until a further order directs otherwise).

u.   "Meta" means Meta Platforms, Inc. as well as its parents, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents (including counsel), and representatives of the foregoing.

v.   "NBA Stay" means the stay of discovery relating to the Network Bidding Agreement that was entered in paragraph 3 of Pre-Trial Order No. 5 in the MDL (Dkt. 394).

w.   "Non-Noticing Party" means, with respect to a particular deposition, any Party other than the Noticing Party.

x.   "Non-Party Deposition" means a deposition of an individual who is not a Party or a current or former employee of a Party; a deposition of a current or former employee of an entity that is not a Party; and/or a deposition of a corporate designee under Federal Rule of Civil Procedure 30(b)(6) of an entity that is not a Party.

y.   "Notice" means to send a notice of intent to take a deposition of a Party under Federal Rule of Civil Procedure 30(b)(1) or to serve a subpoena for a Non-Party Deposition under Federal Rule of Civil Procedure 45(a)(1).

z.   "Noticing Party" means, with respect to a particular deposition, the Party that sends a Deposition Notice for that deposition.

aa.   "Outside Counsel" means the attorneys employed by outside law firms who are retained to represent or advise a Party in a Coordinated Case, as well as any paralegals, administrative assistants, and clerical and administrative personnel supervised by those attorneys.

5

bb.    "Party" means any individual or entity that asserts a claim, or against which a claim has been asserted, in the MDL or the Virginia Case, including the MDL Plaintiffs, the Virginia Plaintiffs, Meta, and Google, provided that Meta shall not be considered a "Party" while the NBA Stay is in effect or until sixty (60) days after the NBA stay is lifted.  For the avoidance of doubt, unless and until a further order directs otherwise, an individual or entity ceases to be a "Party" if all of the claims that it asserts or that have been asserted against it in the MDL or the Virginia Case have been dismissed or otherwise adjudicated by a District Court or transferred to a court other than one of the District Courts.

cc.    "Protective Orders" means the MDL Confidentiality Order and the Virginia Protective Order.

dd.    "Shared Discovery" means documents and data produced during fact discovery in a Coordinated Case and does not include Expert Discovery.

ee.    "Transcript" means any recording of testimony, including recordings by stenographic means and by video.

ff.    "Virginia Case" means the case captioned as *United States, et al. v. Google, LLC* that is pending in the U.S. District Court for the Eastern District of Virginia under docket number 1:23-cv-00108-LMB-JFA.

gg.    "Virginia Plaintiffs" means the United States (including the "Federal Agency Advertisers" as defined in ¶ 6(A) of the Joint Discovery Plan in the Virginia Case, Dkt. 87), and the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia and the

6

Commonwealth of Virginia, and any other state that joins the Virginia Case, by and through their respective Attorneys General.

hh.    "Virginia Plaintiffs' Counsel" means "Plaintiffs' Counsel" as that term is defined in ¶ 1(p) of the Virginia Protective Order.

ii.    "Virginia Protective Order" means the Protective Order entered as docket entry 98 in the Virginia Case.

2.    Shared Discovery. Notwithstanding the Protective Orders, Counsel may disclose Shared Discovery to any other Counsel, provided that Shared Discovery may not be disclosed to either (i) any Counsel representing an MDL Plaintiff as to which discovery has been stayed or has not begun; or (ii) Counsel representing Meta while the NBA Stay is in effect.[1]

a.    Shared Discovery that was produced and designated as Confidential Information in the Virginia Case may be used in the MDL only to the extent that Confidential Information may be used under the MDL Confidentiality Order.

b.    Shared Discovery that was produced and designated as Highly Confidential Information in the Virginia Case may be used in the MDL only to the extent that Highly Confidential Information may be used under the MDL Confidentiality Order.

c.    Shared Discovery that was produced and designated as Confidential Information in the MDL may be used in the Virginia Case only to the extent that Confidential Information may be used under the Virginia Protective Order.

d.    Shared Discovery that was produced and designated as Highly Confidential Information in the MDL may be used in the Virginia Case only to the extent that Highly Confidential Information may be used under the Virginia Protective Order.

---

[1] Shared Discovery produced by Meta as a Non-Party in the Virginia Case shall not be made available to MDL Plaintiffs until seven (7) days after the NBA Stay is lifted.

e.    Subject to sub-paragraphs 2(a)-(d), Shared Discovery that was produced in a Coordinated Case may be used in any Coordinated Case for any purpose permissible under the Federal Rules of Evidence and the Federal Rules of Civil Procedure (including for purposes of impeachment at trial), as if the Shared Discovery had been produced in both Coordinated Cases.  Notwithstanding the previous sentence, absent an order of the Court in the Virginia Case, Shared Discovery produced in the MDL case after the Fact Discovery Cutoff in the Virginia Case may not be used by any Party in the Virginia Case, unless (1) the Shared Discovery is produced in the Virginia Case within 14 days of its receipt in the MDL, notwithstanding the close of fact discovery in the Virginia Case; and (2) the Shared Discovery is used in the Virginia Case only for impeachment purposes at trial and may not be admitted into evidence or used in any dispositive motion, pleading, or expert report.

3.    Depositions Taken During Coordinated Discovery Period.  During the Coordinated Discovery Period, the following provisions shall apply:

a.    The Parties in the Coordinated Cases shall serve any Deposition Notice on all Parties in the Coordinated Cases.[2]  No Party may Notice a deposition in a Coordinated Case in which it is not a plaintiff or a defendant.  If a deposition has been Noticed in one of the Coordinated Cases, a Party in the other Coordinated Case may Cross Notice the deposition in the other Coordinated Case.

b.    No Party shall send a Deposition Notice for a deposition to be held fewer than twenty-one (21) days after the date on which the Deposition Notice is sent.

---

[2] For purposes of paragraphs 3, 4, and 5, MDL Plaintiffs collectively will be considered a "Noticing Party" or a "Non-Noticing Party," and the Discovery Steering Committee in the MDL shall act on behalf of all MDL Plaintiffs. In addition, Virginia Plaintiffs collectively will be considered a "Noticing Party" or a "Non-Noticing Party," and the United States shall act on behalf of all Virginia Plaintiffs.

8

c.      If a Non-Noticing Party wishes to Cross Notice a deposition, it must do so within three (3) business days of receiving the Deposition Notice for that deposition. A Non-Noticing Party may not Cross Notice a deposition if doing so would cause that Non-Noticing Party to exceed a Deposition Limit.

d.      If a Non-Noticing Party Cross Notices the deposition within three (3) business days of receiving the Deposition Notice, the deposition will count against any Deposition Limit applicable to that Non-Noticing Party (unless the deposition does not take place). The deposition will also count against any Deposition Limit applicable to the Noticing Party (unless the deposition does not take place). For the avoidance of doubt, if a Party withdraws a previously-served Notice or Cross Notice at least forty-eight (48) hours before the deposition takes place, then that deposition will not count against any Deposition Limit applicable to that Party.

e.      Any witness appearing at a Google Deposition or a Non-Party Deposition taken during the Coordinated Discovery Period cannot be compelled to sit for a second deposition in any Coordinated Case (including a second Rule 30(b)(6) deposition of the same entity on the same or substantially similar topics), absent good cause shown to the Court in the Coordinated Case for which the subsequent deposition of the witness is noticed.

f.      Notwithstanding the Protective Orders, Counsel may disclose Transcripts and exhibits from depositions taken during the Coordinated Discovery Period to any other Counsel, provided that such Transcripts and exhibits may not be disclosed to either (i) any Counsel representing an MDL Plaintiff as to which discovery has been stayed or has not begun; or (ii) Counsel representing Meta while the NBA Stay is in effect. Subject

9

to the Protective Orders, Transcripts and exhibits from depositions taken in a Coordinated Case during the Coordinated Discovery Period may be used in any Coordinated Case for any purpose permissible under the Federal Rules of Evidence and the Federal Rules of Civil Procedure (including for purposes of impeachment at trial).

        g.      Notwithstanding any other provisions of this Order, while the NBA Stay is in effect, (i) Meta may not Notice or Cross Notice a deposition, and Meta may not question a witness at a Google Deposition or a Non-Party Deposition (except at a Non-Party Deposition of a current or former Meta employee); (ii) MDL Plaintiffs may not Cross Notice a deposition of a current or former Meta employee; and (iii) no Transcripts and exhibits from depositions of current and/or former Meta employees may be disclosed to or used by MDL Plaintiffs.

    4.      <u>Time Allocations at Google Depositions Taken During Coordinated Discovery Period</u>. During the Coordinated Discovery Period, the following provisions shall apply:

        a.      If any Party Notices a Google Deposition, and no other Party Cross Notices the deposition, then the Noticing Party will have six (6) hours on the record to examine the witness, and any Non-Noticing Party or Parties in the Coordinated Case to which the Deposition Notice applies will collectively have one (1) hour on the record to examine the witness.

        b.      If Virginia Plaintiffs and MDL Plaintiffs both Notice or Cross Notice a Google Deposition, and no other Party Notices or Cross Notices the deposition, then the deposition will be held for two (2) consecutive days. Virginia Plaintiffs will have seven (7) hours on the record to examine the witness, MDL Plaintiffs will have six (6) hours on the record to examine the witness, and Meta will have one (1) hour on the record to

10

examine the witness, if Meta is deemed a Party (under paragraph 1(bb)) at the time of the deposition.

c.      If Virginia Plaintiffs and Meta both Notice or Cross Notice a Google Deposition, and no other Party Cross Notices the deposition, then the deposition will be held for two (2) consecutive days.  Virginia Plaintiffs will have seven (7) hours on the record to examine the witness, Meta will have six (6) hours on the record to examine the witness, and MDL Plaintiffs will have one (1) hour on the record to examine the witness.

d.      If MDL Plaintiffs and Meta both Notice or Cross Notice a Google Deposition, and no other Party Cross Notices the deposition, then MDL Plaintiffs will have three and one-half (3.5) hours on the record to examine the witness, and Meta will have three and one-half (3.5) hours on the record to examine the witness.

e.      If Virginia Plaintiffs, MDL Plaintiffs, and Meta all Notice or Cross Notice a Google Deposition, then the deposition will be held for two (2) consecutive days. Virginia Plaintiffs will have seven (7) hours on the record to examine the witness, and MDL Plaintiffs and Meta will collectively have seven (7) hours on the record to examine the witness, if Meta is deemed a Party (under paragraph 1(bb)) at the time of the deposition.

5.      Time Allocations at Non-Party Depositions Taken During Coordinated Discovery Period. During the Coordinated Discovery Period, the following provisions shall apply:

a.      If a Party Notices a Non-Party Deposition, and no other Party Cross Notices the deposition, then the Noticing Party will have six (6) hours on the record to examine the witness, and any Non-Noticing Party or Parties in the Coordinated Case to

11

which the Deposition Notice applies will collectively have one (1) hour on the record to
examine the witness.

b.      If two Parties (one of which is Google) Notice or Cross Notice a Non-
Party Deposition, and no other Party Cross Notices the deposition, then Google will have
three (3) hours on the record to examine the witness, the other Party that Noticed or Cross
Noticed the deposition will have three (3) hours on the record to examine the witness, and
any Non-Noticing Party or Parties in the Coordinated Case(s) to which the Deposition
Notice(s) apply will collectively have one (1) hour on the record to examine the witness.

c.      If two Parties (neither of which is Google) Notice or Cross Notice a Non-
Party Deposition, and no other Party Cross Notices the deposition, then each of the
Parties that Noticed or Cross Noticed the deposition will have two and one-half (2.5)
hours on the record to examine the witness, Google will have one (1) hour on the record
to examine the witness, and any Non-Noticing Party in the Coordinated Case(s) to which
the Deposition Notice(s) apply will have one (1) hour on the record to examine the
witness.

d.      If three Parties (one of which is Google) Notice or Cross Notice a Non-
Party Deposition, and no other Party Cross Notices the deposition, then the deposition
will be held for two (2) consecutive days. Each of the Parties that Noticed or Cross
Noticed the deposition will have three (3) hours on the record to examine the witness, and
any Non-Noticing Party in the Coordinated Case(s) to which the Deposition Notice(s)
apply will have one (1) hour on the record to examine the witness.

e.      If three Parties (none of which is Google) Notice or Cross Notice a Non-
Party Deposition, and Google does not Cross Notice the deposition, then the deposition

12

will be held for two (2) consecutive days.  Each of the Parties that Noticed or Cross

Noticed the deposition will have four (4) hours on the record to examine the witness, and

Google will have one (1) hour on the record to examine the witness.

       f.      If Google, Meta, Virginia Plaintiffs, and MDL Plaintiffs all Notice or

Cross Notice a Non-Party Deposition, then the deposition will be held for two (2)

consecutive days.  Google will have three (3) hours on the record to examine the witness,

Meta will have three (3) hours on the record to examine the witness, Virginia Plaintiffs

will have three (3) hours on the record to examine the witness, and MDL Plaintiffs will

have three (3) hours on the record to examine the witness.

     6.    <u>Depositions Taken Outside Coordinated Discovery Period</u>.  Outside the

Coordinated Discovery Period, the following provisions shall apply:

       a.      The Parties in the MDL shall serve any Deposition Notice on Virginia

Plaintiffs.

       b.      Notwithstanding the Protective Orders, Counsel for any Party may obtain

Transcripts and exhibits of Google Depositions and Non-Party Depositions taken in the

MDL after the Fact Discovery Cutoff in the Virginia Case directly from the court

reporters for those depositions.

       c.      Notwithstanding the Protective Orders, Counsel may disclose Transcripts

and exhibits from depositions taken outside the Coordinated Discovery Period to any

other Counsel, provided that such Transcripts and exhibits may not be disclosed to either

(i) any Counsel representing an MDL Plaintiff as to which discovery has been stayed or

has not begun; or (ii) Counsel representing Meta while the NBA Stay is in effect.

13

d.     Subject to the Protective Orders, absent an order of the Court in the Virginia Case, Transcripts and exhibits from depositions taken outside the Coordinated Discovery Period may not be used in the Virginia Case for any purpose other than impeachment at trial. For the avoidance of doubt, absent an order of the Court in the Virginia Case, such Transcripts and exhibits may not be admitted into evidence at trial in the Virginia Case or otherwise used affirmatively by any Party in any dispositive motion, pleading, or expert report in the Virginia Case.

7.     <u>Expert Discovery</u>. Expert Discovery shall not be shared between the Coordinated Cases pending further order. At least ninety (90) days before Google's expert reports are due in the MDL, the Parties shall meet and confer over whether there are circumstances in which Expert Discovery may or should be shared between the Coordinated Cases. Google shall notify Virginia Plaintiffs at least twenty-four (24) hours in advance of serving an expert report in the MDL if Google serves such report before the due date in the MDL.

8.     <u>Notice to Non-Parties</u>. Any Party, in conducting discovery from a non-party in connection with a Coordinated Case, shall provide the non-party from which it seeks discovery with a copy of this Order so as to inform the non-party of his, her, or its rights herein. In addition, within three business days of this Order taking effect, the Parties shall give notice as described in the following sub-paragraphs:

a.     Virginia Plaintiffs shall give notice of this Order to (i) all persons to whom Virginia Plaintiffs provided notice of the Virginia Protective Order under paragraph 2 of that order; and (ii) all recipients of subpoenas that Virginia Plaintiffs have served in the Virginia Case before this Order took effect.

14

b.      MDL Plaintiffs shall give notice of this Order to (i) all persons to whom MDL Plaintiffs provided notice of the MDL Confidentiality Order under paragraph 2 of that order; and (ii) all recipients of subpoenas that MDL Plaintiffs have served in the MDL before this Order took effect.

c.      Google shall give notice of this Order to all recipients of subpoenas that Google has served in the Virginia Case and/or the MDL before this Order took effect.

9.      <u>Departure from MDL</u>. If any case(s) currently part of the MDL are transferred to other venue(s), the Parties in the Coordinated Cases shall meet and confer with the parties to the transferred case(s) regarding whether, and on what conditions, the transferred case(s) should be coordinated with the MDL and the Virginia Case. If all claims brought by an MDL Plaintiff are dismissed, transferred, or remanded, then that MDL Plaintiff shall be treated as a Non-Party for purposes of this Order after such dismissal, transfer, or remand. If all claims brought against Meta in the MDL are dismissed, then Meta shall be treated as a Non-Party for purposes of this Order after such dismissal.

10.     <u>Effective Date</u>. This Order shall not come into effect unless and until it has been entered in both the MDL and the Virginia Case.

IT IS HEREBY SO ORDERED this **5TH** day of _____**June**_____, 2023.

_____ /s/ _____**JFA**___

John F. Anderson
United States Magistrate Judge

15