# EXHIBIT 21
# FILED UNDER SEAL

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 1

1

2              IN THE UNITED STATES DISTRICT COURT

              FOR THE EASTERN DISTRICT OF VIRGINIA

3                  ALEXANDRIA DIVISION

4      _____

5     UNITED STATES,        )1:23-cv-00108-LMB-JFA

      et al.,               )

6                           )

         Plaintiffs,        )

7                           )

      vs.                   )

8                           )

      GOOGLE LLC,           )

9                           )

         Defendants.        )

10     _____)

11

12

                  - HIGHLY CONFIDENTIAL -

13

14              VIDEOTAPED DEPOSITION OF

15                CHRISTOPHER KARPENKO

16                 August 10, 2023

17                   9:35 a.m.

18

19

20

21

22      Reported by:  Bonnie L. Russo

        Job No. 6031969

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

                                              Page 2

1        Videotaped Deposition of Christopher Karpenko

2        held at:

3

4

5

6           Paul, Weiss, Rifkind, Wharton & Garrison, LLP

7                       2001 K Street, N.W.

8                        Washington, D.C.

9

10

11

12

13

14

15

16

17

18        Pursuant to Notice, when were present on behalf

19        of the respective parties:

20

21

22

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 3

```
 1        APPEARANCES:

 2

 3        On behalf of the Plaintiffs:

 4            JAMES RYAN, ESQUIRE

 5            DAVID GROSSMAN, ESQUIRE

 6            ALVIN CHU, ESQUIRE

 7            UNITED STATES DEPARTMENT OF JUSTICE

 8            450 5th Street, N.W.

 9            Washington, D.C. 20530

10            james.a.ryan@usdoj.gov

11            david.grossman@usdoj.gov

12            alvin.chu@usdoj.gov

13

14        On behalf of the Defendant:

15            MARTHA L. GOODMAN, ESQUIRE

16            ANNELISE CORRIVEAU, ESQUIRE

17            PAUL, WEISS, RIFKIND, WHARTON &

18            GARRISON, LLP

19            2001 K Street, N.W.

20            Washington, D.C. 20006

21            mgoodman@paulweiss.com

22            acorriveau@paulweiss.com
```

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 4

1        APPEARANCES (CONTINUED):

2

3

4        Also Present:

5        Glen Fortner, Videographer

6        Michael Weaver, United States Postal Service

7

8

9        Also Present Via Remotely:

10       Julia Wood, DOJ

11       Sean Carman, DOJ

12       Katherine Clemens, DOJ

13       Jeannie S. Rhee, Paul, Weiss, Rifkind, Wharton

14       & Garrison, LLP

15

16

17

18

19

20

21

22

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 5

1                    I N D E X

2       EXAMINATION OF CHRISTOPHER KARPENKO       PAGE

3       BY MS. GOODMAN                            11

4

5

6

                          EXHIBITS

7

8       Exhibit 33  E-Mail Chain dated 1-9-23     53

9                   USPS-ADS-0000140586-588

10

11      Exhibit 34  (CLAWED BACK)                 --

12

13      Exhibit 34A E-Mail Chain dated 1-11-23    125

14                  USPS-ADS-0000043815-816

15

16      Exhibit 35  Text Messages                 93

17                  USPS-ADS-0000899149-151

18

19      Exhibit 36  (CLAWED BACK)                 --

20

21      Exhibit 36A E-Mail Chain dated 1-11-23    135

22                  USPS-ADS-0000041965

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 6

1          EXHIBITS (CONTINUED):

2          Exhibit 36B  Attachment to Exhibit 36A      315

3

4          Exhibit 37   E-Mail Chain dated 3-8-23       135

5                       USPS-ADS-0000040943

6

7          Exhibit 38   NIC+ZOE August 2023             168

8                       Advertisement

9

10         Exhibit 39   The U.S. Postal Service         175

11                      Five-Year Strategic Plan

12                      FY2020-FY2024

13

14         Exhibit 40   E-Mail Chain dated 3-29-22      199

15                      Attachment

16                      USPS-ADS-0000592851-863

17

18         Exhibit 41   Meeting Invite dated 4-30-20    211

19                      Attachment

20                      USPS-ADS-0000661829-869

21

22

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 7

1        EXHIBITS (CONTINUED):

2        Exhibit 42  E-Mail Chain dated 6-18-21    227

3                    USPS-ADS-0000713476-481

4

5        Exhibit 43  E-Mail dated 4-20-20          238

6                    Attachment

7                    USPS-ADS-0000492772-780

8

9        Exhibit 44  E-Mail Chain dated 2-14-23    245

10                   Attachment

11                   USPS-ADS-0000042055-181

12

13       Exhibit 45  E-Mail Chain dated 4-26-22    262

14                   Attachment

15                   USPS-ADS-0000016395-463

16

17       Exhibit 46  E-Mail Chain dated 9-14-22    280

18                   USPS-ADS-0000620144-145

19

20       Exhibit 47  E-Mail Chain dated 11-16-21   281

21                   USPS-ADS-0000029221-226

22

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 8

1        EXHIBITS (CONTINUED):

2        Exhibit 48   E-Mail dated 6-23-20        287

3                     USPS-ADS-0000447582-583

4

5        Exhibit 49   E-Mail dated 6-15-20        293

6                     Attachment

7                     USPS-ADS-000227880-968

8

9        Exhibit 50   Order/Solicitation/        299

10                    Offer/Award

11                    12-30-21

12                    USPS-ADS-0000529112-186

13

14       Exhibit 51   Order/Solicitation/        301

15                    Offer/Award

16                    USPS-ADS-0000529380-412

17

18

19

20

21

22       (Exhibits bound separately.)

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 9

```
 1                  P R O C E E D I N G S
 2                      (9:36 a.m.)
 3
 4              THE VIDEOGRAPHER:  Good morning.
 5              We are going on the record at
 6      on August 10, 2023.
 7              Please note that the microphones are
 8      sensitive and may pick up whispering and
 9      private conversations.  Please mute your phones
10      at this time.  Audio and video recording will
11      continue to take place unless all parties agree
12      to go off the record.
13              This is Media Unit 1 of the
14      video-recorded deposition of Christopher
15      Karpenko in the matter of United States, et
16      al., v. Google LLC.  The location of the
17      deposition is Paul Weiss.
18              My name is Glen Fortner representing
19      Veritext, and I am the videographer.  The court
20      reporter is Bonnie Russo from the firm
21      Veritext.  I am not related to any party in
22      this action, nor am I financially interested in
```

HIGHLY CONFIDENTIAL

Page 10

1      the outcome.

2                  If there are any objections to

3      proceeding, please state them at the time of

4      your appearance.

5                  Counsel and all present, including

6      remotely, will now state their appearances and

7      affiliations for the record beginning with the

8      noticing attorney.

9                  MS. GOODMAN:  Martha Goodman from

10     Paul Weiss on behalf of Google LLC, and I am

11     joined by my colleague Annelise Corriveau.

12                 MR. RYAN:  Good morning.  James Ryan

13     on behalf of the United States and the witness.

14                 MR. GROSSMAN:  David Grossman on

15     behalf of the United States.

16                 MR. CHU:  Alvin Chu on behalf of the

17     United States.

18                 MR. WEAVER:  Michael Weaver for the

19     United States Postal Service.

20                 MR. KARPENKO:  Chris Karpenko with

21     the United States Postal Service.

22                 MS. GOODMAN:  Is anybody on Zoom who

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 45

1          MR. RYAN:  Objection to this line.

2     I mean, you can't ask questions like this.  Are

3     you asking which attorneys he has talked with?

4          MS. GOODMAN:  Yes.  It's an entirely

5     proper question.

6          BY MS. GOODMAN:

7     Q.    So my question to you, Mr. Karpenko,

8     is:  What attorneys have you spoken with this

9     year regarding a government investigation of

10    digital advertising and Google?

11    A.    Michael Weaver has been my primary

12    contact.  There may be others within the law

13    department present.  I -- I'm not specifically

14    recalling anyone over another.  It was very

15    much just an interaction conversation.

16    Q.    And when you say "the law

17    department," is that within the postal service?

18    A.    My reference to the law department

19    is the USPS law department.

20    Q.    How about any lawyers affiliated

21    with the Department of Justice?

22          MR. RYAN:  Objection --

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 46

1           BY MS. GOODMAN:

2      Q.    Have you spoken this year with any

3  lawyers from the Department of Justice

4  regarding an investigation of digital

5  advertising and Google?

6           MR. RYAN:  Objection to form and

7  foundation.

8           THE WITNESS:  Yes.

9           BY MS. GOODMAN:

10     Q.    And what lawyers at the Department

11  of Justice have you spoken with regarding an

12  investigation of digital advertising and

13  Google?

14          MR. RYAN:  Objection to foundation.

15          MS. GOODMAN:  Mr. Karpenko has said

16  that he spoke with Department of Justice

17  lawyers.  I have asked the foundation -- I have

18  laid the foundation and now --

19          MR. RYAN:  It's not a memory test.

20          MS. GOODMAN:  -- I am following on

21  the question.

22          MR. RYAN:  It's not a memory test.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 47

1           MS. GOODMAN:  Of course not.  If he

2      doesn't recall, he can provide that answer, but

3      the foundation objections are not proper so --

4           MR. RYAN:  But you're asking the

5      attorney -- you're asking him to list out all

6      the attorneys he has spoken with and --

7           MS. GOODMAN:  If he can do that,

8      yes.  I am entitled to ask the question.  If he

9      is not able to recall those names from his

10     memory --

11          MR. RYAN:  You are getting into

12     communications with counsel, so I just --

13          MS. GOODMAN:  No.  No, I'm not.

14          MR. RYAN:  If -- he can try to

15     answer questions about who he has talked with

16     to the extent he knows or recalls and when

17     those communications -- you're entitled to ask

18     those questions, but I think the questions are

19     going into the line of communications with

20     counsel.

21          MS. GOODMAN:  Okay.  Well, I am very

22     mindful of that line, and I am -- I am not

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 48

```
 1        intending to impede into privileged
 2        conversations.  I am asking for the identities
 3        of the lawyers as well as the time period.  The
 4        kind of things that would occur -- appear --
 5        appear on a privilege log.  So that's what my
 6        questions are designed at.  Okay.
 7                    BY MS. GOODMAN:
 8            Q.    Mr. Karpenko, to the extent you
 9        recall, which attorneys at the Department of
10        Justice have you spoken with regarding the
11        government investigation into digital ads and
12        Google?
13            A.    I can't recall them all.  There are
14        three attorneys representing the Department of
15        Justice here that I have engaged with
16        privileged conversation with.
17                    There is one on the Zoom that shows
18        up as the one screen that we have engaged -- I
19        believe I have engaged with.
20            Q.    And is that Mr. Carman?
21            A.    I believe so.
22            Q.    Okay.
```

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 49

1          A.    There are probably others.  I didn't

2     keep a list of them.  I would have to go back

3     and refer to maybe a meeting invite that people

4     were on, but I wouldn't be able to tell you

5     specifically who off the top of my head, and

6     even some I wouldn't even remember their names.

7          Q.    In what time period do you recall --

8     what was the first time you recall speaking

9     with a lawyer from the Department of Justice

10    regarding a digital -- regarding an

11    investigation into digital ads and Google?

12         A.    The -- it was similar to the time

13    that it became publicly published out into the

14    world.

15         Q.    And when you came across the

16    publication of the lawsuit in the course of

17    your work -- well, strike that.

18              Is that how you came to learn of the

19    lawsuit in the course of your work as executive

20    director of brand marketing?

21         A.    I became aware --

22              MR. RYAN:  Objection to foundation.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 50

1          THE WITNESS:  I became aware of --

2     of the complaint through a news feed that came

3     through my iPhone as well as through our

4     lawyers reaching out to us through some

5     contact, I believe, with Department of Justice.

6          BY MS. GOODMAN:

7     Q.    And prior to learning of the

8     complaint through a news feed that came from

9     your iPhone, had you anticipated being involved

10    in a lawsuit regarding Google and digital

11    advertising?

12         MR. RYAN:  Object to the form.

13    Mischaracterizing the witness's prior

14    testimony.

15         THE WITNESS:  Could you clarify that

16    for me.

17         BY MS. GOODMAN:

18    Q.    Sure.  Before you learned of the

19    lawsuit through a news feed that came through

20    your iPhone, did you know a lawsuit would be

21    coming?

22         MR. RYAN:  Object to the form.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 51

1            THE WITNESS:  I only knew of the

2     complaint as a complaint.  I did not know if

3     postal would be involved nor if I would be

4     involved in any of the complaint.

5            BY MS. GOODMAN:

6       Q.    And so it was subsequent to the

7     filing of the complaint that you came to be

8     involved in this lawsuit; is that accurate?

9            MR. RYAN:  Objection.  Foundation.

10     Objection.  Form and foundation.

11            THE WITNESS:  I am trying to

12     remember if information was asked for from the

13     postal service tied to our media spend and our

14     media process.

15            BY MS. GOODMAN:

16       Q.    But prior to the filing of the

17     complaint, did you have any knowledge or

18     awareness that the postal service would be

19     involved as an entity for which the United

20     States would seek monetary damages from Google?

21            MR. RYAN:  Objection to form.

22            THE WITNESS:  I wouldn't have

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 52

1          specific information as to DOJ's specific

2          intent.

3                     BY MS. GOODMAN:

4               Q.    So you --

5               A.    I didn't -- I didn't write the

6          complaint.

7               Q.    Have you read the complaint?

8               A.    I have.

9               Q.    And have you seen the United States

10         Postal Service mentioned anywhere in it?

11              A.    I believe so.

12              Q.    Okay.  And when you read the -- did

13         you read the complaint around the time that it

14         was filed?

15              A.    Yes.

16              Q.    Okay.  Did you read it as a result

17         of the news alert that you got?

18                    MR. RYAN:  Objection.  Foundation.

19                    THE WITNESS:  I believe it was

20         provided under privilege while we were having

21         discussions.

22                    MS. GOODMAN:  Okay.  Can I have Tab

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 53

1        6.

2                (Deposition Exhibit 33 was marked

3        for identification.)

4                BY MS. GOODMAN:

5        Q.    Prior to the filing of the

6        complaint, did you anticipate being a witness

7        in this lawsuit?

8        A.    There was nothing for me to think

9        that I would be a witness for the complaint.

10       Q.    And is that -- strike that.

11               I am handing you Exhibit 33,

12       USPS-ADS-140586 through 588.

13               I will ask you to take a look and

14       see if you recognize this as an e-mail you

15       received in January of 2023.

16               Did you receive this e-mail?

17       A.    Yes.

18       Q.    And it is with an individual at the

19       United States Postal Service, Office of

20       Inspector General; is that right?

21       A.    Yes.

22       Q.    And to the best of your

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 66

1       for the United States Postal Service

2       participating in a meeting with the Department

3       of Justice Antitrust Division if you consider

4       the Department of Justice to be your lawyer?

5           A.    I consider our USPS law department,

6       counsel for the postal service.  They represent

7       us in a number of different perspectives.  I

8       think there are maybe close to 400 lawyers at

9       the postal service that handle everything from

10      employment law to IP protection, patent,

11      corporate business, regulatory, I am using

12      layperson's terms so I apologize, and the DOJ

13      also represents the postal service.

14              If the DOJ was to e-mail me

15      directly, I would include representatives from

16      our USPS legal group to be on the call.  To me,

17      it's considered a privileged environment and

18      both -- both groups, DOJ and USPS work

19      together.

20          Q.    So turning -- going up to the next

21      e-mail in the chain, Mr. Gardner says:  "Okay,

22      great, and thank you for the clarification."

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 67

1          Do you see where I am?

2     A.    Yes.

3     Q.    He says:  "Let me get back to you

4     after I speak to DOJ out west.  They may want

5     to deconflict first."

6          Do you know -- what is your

7     understanding of deconflict, what deconflicting

8     means in this context?

9     A.    The understanding I came away from,

10    from this e-mail, was that the OIG was doing

11    some type of analysis or investigation.  It may

12    have been similar to what DOJ, the Department

13    of Justice, was looking at.

14          I can't speak as to what they were

15    looking for, looking at.  Hence, my mention to

16    the office of inspector general contact, that

17    there was a -- another -- there were other

18    inquiries tied around media, and I feel like I

19    merely provided visibility to the OIG and to

20    the other counsels here to clarify what they

21    were working on, whether they were working on

22    something separate or they were working on

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 68

1    something that they need to work on together

2    potentially.

3        Q.    And have you heard of the term

4    "deconflict" before?

5        A.    Yes.

6        Q.    What is your understanding of what

7    that means?

8        A.    Again, in this context, this was

9    interpreted by me that the office of inspector

10   general was doing something, potentially DOJ

11   was doing something, and in order to ensure

12   there were not duplicative efforts or

13   conflicting efforts, they had an opportunity to

14   have conversation with themselves, with each

15   other, and understand just exactly what each

16   side was working on.

17       Q.    And now going to the top e-mail on

18   the chain, Mr. Gardner writes to you that he

19   will be in touch soon.

20            Do you see that?

21       A.    Yes.

22       Q.    And did he get back in touch with

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 69

1    you?

2         A.    I don't recall.

3         Q.    After January 9, 2023, do you have

4    any recollection of any conversations with

5    anybody from the OIG with respect to digital ad

6    spend by the postal service?

7         A.    I don't recall.

8              MS. GOODMAN:   Shall we take a break?

9              MR. RYAN:   Sure.

10             THE VIDEOGRAPHER:   Going off the

11   record.   The time is 10:56.

12             (A short recess was taken.)

13             THE VIDEOGRAPHER:   Going back on the

14   record.   The time is 11:17.

15             BY MS. GOODMAN:

16        Q.    ███████████████████████████

██   ████████████████████████████████████

18        ████████████████████████████████████

██   █████████████████████████

██        █████████████████

██   ██   █████████████████████████████

██   ██████████████████████████████████████

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL



Page 70

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL



Page 71

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL



Page 72

1

22          MR. RYAN:  I think the answer to --

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 73

1          it sounds as if this is as a result of

2          privileged communications.  To the extent that

3          this e-mail was as a result of privileged

4          communications you had with counsel, I would

5          object on privileged grounds.

6                    MS. GOODMAN:  And what is the nature

7          of the attorney-client privilege?

8                    MR. RYAN:  I don't know if this is

9          -- you can ask.  I don't know if this is --

10         that's why I was careful to instruct the

11         witness if this is a result of attorney-client

12         communications, it would be work product.

13                   MS. GOODMAN:  This is not prepared

14         by an attorney.

15                   MR. RYAN:  But if it's at the

16         direction of counsel, it would be, right, it

17         would be work product.

18                   BY MS. GOODMAN:

19             Q.   Was this ask made at the direction

20         of a lawyer?

21                   MR. RYAN:  If you recall.

22                   THE WITNESS:  Specifically to reach

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 74

1      out to UM?

2                 BY MS. GOODMAN:

3             Q.   ███████████████████████████

       ██      ███████████████████████████████

       ██   ███████████████████████████████

6                 MR. RYAN:  Counsel, you are asking

7      -- you're asking -- that's a question -- if you

8      ask it the other way around, it would be not

9      privileged.  Just ask --

10                MS. GOODMAN:  State your objection.

11     State your objection.

12                MR. RYAN:  Privileged

13     communications.

14                MS. GOODMAN:  Okay.

15                MR. RYAN:  And attorney-client work

16     product unless we know otherwise.  Why don't

17     you ask it so it's not -- it does not show up

18     as -- just ask, you know, if there was some

19     reason other than --

20                MS. GOODMAN:  No.  No.  I will ask

21     the question the way I choose.

22                MR. RYAN:  Then I will continue to

HIGHLY CONFIDENTIAL

Page 75

```
 1      object.

 2              MS. GOODMAN:  Okay.

 3              BY MS. GOODMAN:

 4         Q.    Mr. Karpenko, did you make this

 5      request to Lisa Catucci and Mr. Knopf at UM at

 6      the direction of your lawyer?

 7              MR. RYAN:  I am going to object.

 8              BY MS. GOODMAN:

 9         Q.    Yes or no.

10              MR. RYAN:  I am going to -- I am

11      going to instruct the witness not to answer

12      that question because it then reveals

13      communication with counsel.

14              MS. GOODMAN:  No, it doesn't.  It is

15      a yes-or no question.

16              MR. RYAN:  Well, I'm instructing --

17      I am going to instruct the witness not to

18      answer the question.  If you want, we can divvy

19      it out, dish it out later, but for that

20      question, I'm going to instruct the witness not

21      to answer.

22              BY MS. GOODMAN:
```

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 76

1          Q.    Are you following that instruction?

2          A.    I will go with his guidance today.

3               MS. GOODMAN:  Obviously, I reserve

4     our rights to move to compel to get an answer

5     to that question, because it is an improper

6     assertion of the attorney work product --

7               MR. RYAN:  Based on --

8               MS. GOODMAN:  -- privilege.

9               MR. RYAN:  Based on the testimony

10    that the witness has give -- this appears to

11    be, it would be a privileged communication, so

12    we might -- I will just notify you for the

13    record that we might be clawing this document

14    back.

15               MS. GOODMAN:  Okay.  Have fun with

16    that.

17               BY MS. GOODMAN:

18         Q.    Let's go back to Exhibit 33.

19               You write to Mr. Gardner:  "I will

20    look for the list of third parties on our end."

21               On January 9 in the second e-mail in

22    the thread, right?

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 77

1            MR. RYAN:  Counsel, where are you?

2            THE WITNESS:  First page.

3            MR. RYAN:  If you can just --

4            BY MS. GOODMAN:

5      ██        ████████████████████████████

██    ██        ██████████████

██    ██        ███████    ████████████████████

██    ████████████████████████████████████

██    ██████████████████████████████████████████

██    ████

██            ██████████████    ████████████████

██    ████████████████

██            ██████████████    ██████████████████

██    ████████████████████████████████████

██            ██████████████████████████████████

██    ██████████████████████████████████

17            MR. RYAN:  Counsel --

18            MS. GOODMAN:  He is in the middle of

19      an answer.  He needs to finish the answer.  Do

20      not interrupt the witness during his testimony.

21            BY MS. GOODMAN:

22      Q.    You may proceed, Mr. Karpenko.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 78

1              MR. RYAN:  Are you finished

2        answering the question?  I was going to -- I

3        want -- I was going to let the witness proceed

4        with his answer to this question, but then I

5        want to take a brief break to review this

6        document.

7              MS. GOODMAN:  Please do not

8        interrupt the witness in the middle of his

9        testimony.

10              MR. RYAN:  Counsel --

11              MS. GOODMAN:  If you need to make

12        that statement, you wait for him to finish his

13        answer before you do that.

14              MR. RYAN:  Counsel, I was, as a

15        courtesy, I was trying to wait for the witness

16        to finish answering the question, but at this

17        point, I would like to take a break and confer

18        with the witness.

19              MR. CHU:  We need to go off.

20              MS. GOODMAN:  Excuse me.  You don't

21        get to unilaterally determine that we are going

22        off the record.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 91

1      the record, I vehemently disagree with your

2      assertions of attorney work product and

3      attorney-client privilege with respect to this

4      line of communications.

5                  And we will reserve all of our

6      rights to move to compel, and we will be

7      following up with you on these improper

8      objections.

9                  I'm going to move on to another

10      exhibit.

11                  MR. RYAN:  Can you hand back --

12      since we've clawed them back --

13                  MS. GOODMAN:  No.  It has all of my

14      attorney work product over it as well, so I'll

15      destroy it.

16                  MR. RYAN:  Fair enough.

17                  MS. GOODMAN:  For the record, let me

18      just ask this one more time because I

19      misspoke -- misstated the date.

20                  BY MS. GOODMAN:

21          Q.    When you were referencing a meeting

22      with attorneys for the United States Postal

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 92

1       Service, Mr. Karpenko, to the best of your

2       recollection, did that meeting occur some time

3       between January 9th and January 11th of 2023?

4                   MR. RYAN:  Objection to form and

5       foundation.

6                   MS. GOODMAN:  May he answer that

7       question?

8                   THE WITNESS:  Could you repeat it

9       one more time.  Thank you.

10                  BY MS. GOODMAN:

11          Q.   Sure.  When you were referencing a

12      meeting with attorneys for the United States

13      Postal Service, Mr. Karpenko, to the best of

14      your recollection, did that meeting occur some

15      time between January 9th and January 11th of

16      2023?

17                  MR. RYAN:  I'll restate the

18      objection.

19                  THE WITNESS:  I don't know for sure.

20                  BY MS. GOODMAN:

21          Q.   So your best testimony is you don't

22      know whether the meeting that prompted you --

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 93

1       strike that.

2                   Was there a meeting that prompted

3       you to reach out to Universal McCann for a list

4       of third-party sites with attorneys for the

5       United States Postal Service?

6                   MR. RYAN:  I am going to object to

7       that question and instruct the witness not to

8       answer as it would call for privileged

9       communications with counsel.

10                  BY MS. GOODMAN:

11          Q.    Are you following that instruction?

12          A.    I am.

13          Q.    Okay.

14                  MS. GOODMAN:  I am handing you

15      Exhibit 35, USPS-ADS-899149 through 899151.

16                  (Deposition Exhibit 35 was marked

17      for identification.)

18                  BY MS. GOODMAN:

19          Q.    And this is a series of text

20      messages between yourself and the phone number

21      301-437-7574 on January 9th, correct?

22          A.    I do see it, yes.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 94

1          Q.    Okay.  And the person that you're

2     texting with, is that Lisa Catucci at Universal

3     McCann?

4          A.    It is.

5          Q.    Yes.  And to the best of your

6     knowledge, did this series of text messaging

7     take place on January 9th in the year 2023?

8          A.    Yes.

9          Q.    Okay.  And why are you sending text

10    messages to Ms. Catucci asking:  "Do we do much

11    advertising on third-party web sites, not

12    Twitter/FB?"

13         A.    I am looking for information on how

14    UM helps the postal service purchase media.

15         Q.    And why were you looking for that

16    information on January 9th of 2023?

17         A.    So I could understand better what

18    the postal service does.

19         Q.    Why did you want to understand

20    better what the postal service does at this

21    particular moment in time?

22         A.    I had been looking for clarity from

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 95

1      the OIG when we had had a dialogue back and
2      forth, and I also referred to -- third party to
3      our media agency to see if they also understood
4      what third-party web sites might mean.
5          Q.    Okay.  So you see on the first page
6      your texts are on the right-hand side, correct?
7          A.    Yes.
8          Q.    And Ms. -- Ms. Catucci's texts are
9      on the left-hand side; is that right?
10         A.    Yes.
11         Q.    Okay.  And you see Ms. Catucci
12     writes in response to your question:  "Do we do
13     much advertising on third-party web sites, not
14     Twitter/FB?" she writes:  "Like through our
15     programmatic buys?"
16              Do you see that?
17         A.    Yes.
18         Q.    And then she says:  "We have a white
19     list of sites we run on through programmatic."
20              Do you see that?
21         A.    I do.
22         Q.    Okay.  And then you write:  "Maybe.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 96

1      Give me an example of what you think is a

2      third-party site."

3              Do you see that?

4      A.    I do.

5      Q.    Why did you ask her to give you an

6      example of what she thinks is a third-party

7      site?

8      A.    I was looking for clarity of her

9      perspective of what a third-party site is in

10     the eyes of a media agency.

11     Q.    And from your point of view, why was

12     Ms. Catucci's perspective of what a third-party

13     site is important to obtain?

14              MR. RYAN:   Objection to form and

15     foundation.

16              THE WITNESS:   I didn't -- I didn't

17     necessarily understand what third-party site

18     would mean to everyone and was looking from the

19     perspective of what UM might consider the term

20     third-party site.

21              BY MS. GOODMAN:

22     Q.    And Ms. Catucci responds:  "Funny.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 97

1      I don't really know what that term refers to.

2      I would assume in this context just one we

3      don't buy direct."

4                Do you see that?

5           A.    Yes.

6           Q.    And so was it significant to you

7      that Ms. Catucci, who works for the media

8      agency of record for the United States Postal

9      Service, did not know what that term referred

10     to?

11               MR. RYAN:  Objection to form.

12     Vague.

13               THE WITNESS:  I had asked in a

14     general way without specific context.  It

15     appears that she was unsure herself.

16               BY MS. GOODMAN:

17          Q.    Would you have expected Ms. Catucci

18     to understand the term third-party site if it

19     was a commonly used term in the advertising

20     industry?

21               MR. RYAN:  Objection to form.

22               THE WITNESS:  It goes back to

HIGHLY CONFIDENTIAL

Page 98

1      context.  I'm not sure I had the fully --

2      full-known spectrum of what was being asked for

3      and was looking for more of a educational

4      perspective from someone in the media world of

5      what they felt third party might mean.

6                  BY MS. GOODMAN:

7           Q.    And so when somebody in the media

8      world responds as Ms. Catucci did here -- I

9      don't really know what that term refers to --

10     did you draw any conclusion that it is not a

11     term commonly used in the advertising industry?

12                 MR. RYAN:  Objection to form and

13     foundation.

14                 THE WITNESS:  I couldn't answer if

15     she -- I couldn't judge that on her -- her

16     answer.

17                 BY MS. GOODMAN:

18          Q.    So her answer did not -- so did the

19     fact that Ms. Catucci did know not what that

20     term refers to inform in any way your view as

21     to whether that term has any common usage in

22     the advertising industry?

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

1        A.    I'm not sure I was clear on what

2    third party would be as a term in this

3    particular case or instance because I wasn't

4    quite sure what was potentially being asked

5    for.

6        Q.    And so when Ms. Catucci did not

7    really know what that term refers to, was that

8    significant to you?

9            MR. RYAN:  Objection to form.

10           THE WITNESS:  Could you clarify.

11           BY MS. GOODMAN:

12       Q.    Did it matter to you, in terms of

13   attempting to obtain clarity with respect to

14   what the OIG was asking for, that Ms. Catucci,

15   a person who works for the postal service's

16   media agency of record, did not know what that

17   term refers to?

18           MR. RYAN:  Objection to form and

19   foundation.

20           THE WITNESS:  It was a question I

21   asked to someone from the media agency.  There

22   seemed to be some ambiguity to what third party

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 100

1        meant.  I also had that ambiguity of what that

2        might mean.  It validated to me that there was

3        continued ambiguity to the context of what was

4        being asked for.

5                    BY MS. GOODMAN:

6            Q.    And if we turn to the second page --

7        I'm sorry.

8                    Ms. Catucci also writes:  "So

9        Matterkind has the inventory from the site, and

10       we buy through them."

11                   Do you see that?

12           A.    I do.

13           Q.    Okay.  What is Matterkind?

14           A.    Matterkind is a company that helps

15       place media for organizations, people.

16           Q.    And does the postal service have a

17       contract directly with Matterkind?

18           A.    Not that I'm aware of.

19           Q.    Does the postal service, to your

20       knowledge, have -- strike that.

21                   Does Universal McCann, to your

22       knowledge, have a contract with Matterkind?

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 120

1       cover e-mail as well?

2               MR. RYAN:  Yes, but it will be

3       heavily redacted.  I mean, the majority of the

4       document.

5               MS. GOODMAN:  Okay.  And can you

6       explain the basis for your attorney work

7       product privilege assertion over Exhibits 34

8       and 36?

9               MR. RYAN:  Again, it is a

10      communication that resulted -- again, the --

11      it's a communication that results from a

12      request from DOJ as part of -- and so,

13      therefore, it is DOJ work product.

14              MS. GOODMAN:  So are you claiming

15      any protection under the work product doctrine

16      around communications between nonattorneys and

17      media agencies for the federal agency

18      advertisers?

19              MR. RYAN:  I'm going to stop you

20      right there.  How many questions -- how many

21      times do I have to assert the same privilege.

22      We've clawed it back.  I stated the reasons

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 121

1      why.

2                  THE VIDEOGRAPHER:  Can we go off the

3      record for a second so I can fix Mr. Ryan's

4      microphone.

5                  MR. RYAN:  Sorry.  If you want to

6      use your time on this, that's fine, but I think

7      we have stated our reasons for our -- for why

8      we are clawing these documents back.

9                  MS. GOODMAN:  Okay.  I just wanted

10     to give you the opportunity to make your record

11     because we will put it before the Court when we

12     move to compel, and it is your job -- it is the

13     United States's burden of proof and persuasion

14     to invoke this privilege, so I just want to

15     provide you the full opportunity to do that on

16     the record.

17                 MR. RYAN:  Appreciate it.

18                 MS. GOODMAN:  Do you have anything

19     more to say?

20                 MR. RYAN:  I don't have anything

21     more to say, no.

22                 MS. GOODMAN:  Thank you, Mr. Ryan.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 122

1               We can go off the record.

2               THE VIDEOGRAPHER:  Off the record.

3       The time is 12:42.

4               (A short recess was taken.)

5               THE VIDEOGRAPHER:  Going back on the

6       record.  The time is 13:39.

7               (The witness was excused from the

8       conference room.)

9               MR. RYAN:  All right.  Counsel,

10      thank you for giving me a minute just to

11      explain the basis of our privilege claims on 34

12      and -- what was Exhibits 34 and 36 and the

13      e-mails that are contained in them.

14              So 34A, what we've got now are

15      redacted copies of these e-mails, and I just

16      want to clarify the basis of the privilege.

17              So there were two separate requests

18      that the witness had.  There's a request from

19      OIG, which we are not claiming privilege over,

20      but there is also a request from DOJ, and that

21      -- for that we are claiming privilege because

22      the -- when he came out and when he did work on

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 123

1      -- culled up and gathered information, that

2      would be work product.  So we're claiming

3      privilege on DOJ portion.  So that's why there

4      is this sort of distinction why we had to then

5      redact these pages.

6              So -- so 36, what is now marked as

7      36B, we didn't claim the attachment as

8      privilege because it's part of the OIG request.

9      But we just want to clarify that that was the

10     distinction.

11             So that's all I wanted to state on

12     the record.  Thank you.

13             MS. GOODMAN:  And --

14             MR. RYAN:  I am not going to argue

15     or debate the exhibit, you know, the basis of

16     our privilege.  That is the basis of our

17     privilege, and I just want to clarify that for

18     the record.

19             MS. GOODMAN:  I just would like to

20     ask one clarifying question --

21             MR. RYAN:  So I'm not going -- I'm

22     not going -- that will have to come out of your

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 124

```
 1        time then.
 2                    MS. GOODMAN:  My clarifying question
 3        is to make your record better for you --
 4                    MR. RYAN:  I appreciate that, but
 5        I'm not -- I'm not going to engage with you
 6        on -- on -- on this.
 7                    MS. GOODMAN:  We can't talk over one
 8        another because our court reporter needs to --
 9                    MR. RYAN:  Yeah.  I'm not the
10        deponent, but thank you, Martha.
11                    MS. GOODMAN:  You're welcome, Mr.
12        Ryan.
13                    My question is:  Is it remaining the
14        attorney work product privilege, or are there
15        any other --
16                    MR. RYAN:  I'm not going to -- I'm
17        not going to engage further with you on this.
18        Why don't we bring the witness back in and you
19        can resume your examination.
20                    MS. GOODMAN:  All right.  And so you
21        will not let me state for the record my
22        question to you which is:  Is your privilege
```

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 125

```
1          assertion limited to the Attorney Work Product

2          Doctrine?

3                    MR. RYAN:  I'm not going -- yes, but

4          that's -- I'm not going to go any further on

5          this with you.  Okay.

6                    MS. GOODMAN:  That's all I wanted

7          you to make clear.  Thank you, Mr. Ryan.

8                    We can go off the record.

9                    THE VIDEOGRAPHER:  Going off the

10         record.  The time is 13:42.

11                   (A short recess was taken.)

12                   THE VIDEOGRAPHER:  Going back on the

13         record.  The time is 13:43.

14                   (The witness returned to the

15         conference room.)

16                   (Deposition Exhibit 34A was marked

17         for identification.)

18                   MS. GOODMAN:  Mr. Karpenko, I am

19         handing you what is marked as Exhibit 34A,

20         USPS-ADS-43815 through 43816, which has been

21         redacted as a result of the United States

22         clawing back this document.
```

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 126

```
 1          BY MS. GOODMAN:
 2          Q.    And I would like to ask you --
 3     well --
 4          A.    Oh, I'm sorry.
 5          MS. GOODMAN:  I -- I handed the
 6     marked copy to the witness.
 7          BY MS. GOODMAN:
 8          Q.    Mr. Knopf writes to you:  "To be
 9     sure you have the information you need, are you
10     free to share the story behind this ask?"
11          Do you see that in the middle of the
12     page?
13          A.    Yes.
14          Q.    Okay.  And you say:  "Not sure,"
15     correct?
16          A.    That is stated underneath my name in
17     this e-mail copy.
18          Q.    And you wrote that?
19          A.    I believe so.
20          Q.    Okay.  Why were you not sure whether
21     you could share the story behind the ask, which
22     is redacted on Page 16 in the initial e-mail
```

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 137

1      January of 2023 regarding ad spend?

2           A.    That may be difficult for me to

3      answer because the UM team is about media and

4      ad spend and it could encompass almost anything

5      tied to our advertising efforts.

6           Q.    Is it a normal part of your daily

7      work -- is it a routine part in your work to

8      have a one-on-one conversation with Ms. Catucci

9      about ad spend?

10          A.    It would not be an exception.

11          Q.    Okay.  And subsequent to January of

12     2023, have you requested information from

13     United -- Universal McCann based on a

14     conversation with your counsel?

15          A.    I'm not sure -- I'm not sure about

16     the question.  Could you help me.

17          Q.    Yeah.  After the complaint in this

18     case was filed in January of 2023, have you

19     made requests to Universal McCann for

20     information in order to participate in this

21     lawsuit?

22                MR. RYAN:  Counsel, I'm going to

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 138

1        object.  That's calling for privileged -- it's

2        calling for privileged communication.  I would

3        --

4                MS. GOODMAN:  It is precisely the

5        same kind of testimony you've already permitted

6        him to provide.  I am not asking for an

7        instance --

8                MR. RYAN:  Well, that was a mistake

9        on my part.

10               MS. GOODMAN:  -- I am asking a

11       yes-or-no question, which is whether he has

12       asked -- and I'll restate my question.

13               BY MS. GOODMAN:

14       Q.    Mr. Karpenko, after January of 2023,

15       have you requested information from Universal

16       McCann as a result of a conversation with your

17       counsel?

18       A.    I would say I have requested and

19       received various information from Universal

20       McCann both tied to privilege and not tied to

21       privilege.

22               MS. GOODMAN:  We're going to move to

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 139

1      compel on those communications too.

2                BY MS. GOODMAN:

3           Q.    Prior to January of 2023 in the

4      course of your work at the United States Postal

5      Service, did you ever develop any concerns that

6      Google was engaging in anticompetitive conduct?

7           A.    I was unaware of any anticompetitive

8      conduct from Google.

9           Q.    And in the course of your work as a

10     -- the executive director for brand marketing

11     at the postal service, did you ever develop any

12     concerns that you paid super-competitive prices

13     for Google products?

14          A.    Can you clarify the -- the question.

15          Q.    Yeah.  In the course of your work as

16     executive director for brand marketing and

17     participating as an advertiser in the

18     advertising space, did you ever develop any

19     concerns that the postal service was paying too

20     much money for products or services from

21     Google?

22                MR. RYAN:  Object to the form.

HIGHLY CONFIDENTIAL

Page 140

1           THE WITNESS:  In my role I have a

2      responsibility for hundreds of millions of

3      dollars of budget, so I am always keeping top

4      of mind that we're spending our investments or

5      our moneys appropriately and getting the best

6      value for that.

7           So from a macro perspective, we're

8      always looking at trying to get the best value.

9           BY MS. GOODMAN:

10     Q.   I appreciate that answer.  And my

11     question is a bit more specific.

12           Understanding that context that

13     you're always trying to get the best value for

14     USPS ad spend, my question is:  Did you ever

15     develop any concerns in the course of your work

16     as executive director for brand marketing that

17     the postal service was paying too much money

18     for products or services offered by Google?

19     A.   So --

20           MR. RYAN:  Object to form.

21           THE WITNESS:  So whether it's Google

22     or another entity, we -- we have a fixed budget

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 311

1          figure out how much money has been paid to

2          Google under the UM USPS contract?

3                    MR. RYAN:  Objection to foundation

4          and form.

5                    THE WITNESS:  We at least have

6          visibility on investment that we have asked UM

7          to pay or to use for media, the big one is

8          Google Search.  If there are others, it would

9          be a bit more in the weeds and I don't have

10         that visibility.

11                   BY MS. GOODMAN:

12         Q.    And does anybody, to your knowledge,

13         in the postal service have that visibility?

14         A.    I don't believe so.

15         Q.    Okay.  Earlier, we were talking

16         about how the postal service helps connect

17         brands with customers, correct?

18                   MR. RYAN:  Objection to form.

19                   THE WITNESS:  Yes.

20                   BY MS. GOODMAN:

21         Q.    And does Google also help connect

22         brands with their customers?

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 312

```
 1              MR. RYAN:  Objection to foundation
 2      and form.
 3              THE WITNESS:  Google is an
 4      organization that offers up a number of
 5      products and services that help customers --
 6      and reach customers in a variety of ways.
 7              BY MS. GOODMAN:
 8         Q.   The U.S. Postal Service is also an
 9      organization that offers up a number of
10      products and services that help businesses
11      reach customers in a variety of ways; is that
12      accurate?
13              MR. RYAN:  Objection to form.
14              THE WITNESS:  There is value to
15      both.
16              BY MS. GOODMAN:
17         Q.   But it is true that the postal
18      service is also an organization that offers up
19      a number of products and services that help
20      businesses reach customers in a variety of
21      ways?
22              MR. RYAN:  Objection to form.
```

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 313

1              THE WITNESS:  Yes, with probably

2       some -- some caveats in that.

3              BY MS. GOODMAN:

4          Q.    Okay.  And so with respect to

5       helping businesses reach their customers, does

6       the postal service compete with Google?

7              MR. RYAN:  Objection to form and

8       foundation.

9              THE WITNESS:  I think they offer

10      different products and services.

11             BY MS. GOODMAN:

12         Q.    So is your answer no, that the

13      postal service does not compete with Google

14      with respect to helping businesses reach their

15      customers?

16             MR. RYAN:  Objection to form and

17      foundation.

18             THE WITNESS:  Probably depends on

19      what the customers are wanting or looking for.

20      They have similar approaches.  The postal

21      service has the ability to offer products and

22      services, but doesn't limit who can enter in

HIGHLY CONFIDENTIAL

Page 314

1      utilizing those products and services, so you

2      could do it as an individual or you could do it

3      as a -- you could have an entity or business do

4      it for you.  Google has products and services

5      that you could do something as an individual

6      potentially, or you are required to use

7      particular -- potential products and tools to

8      be able to accomplish what you need to for

9      them.

10              BY MS. GOODMAN:

11         Q.    So is it at least fair to say that

12     the postal service provides a way for customers

13     -- businesses to reach their customers that is

14     complementary to services that Google offers

15     businesses in order to reach their customers?

16              MR. RYAN:  Objection to form and

17     foundation.

18              THE WITNESS:  I think both entities

19     have value to them and Google has provided

20     value to customers.

21              BY MS. GOODMAN:

22         Q.    And has Google provided value to the

UNSEALED BY COURT ORDER (DOC. 470)

Page 315

1    United States Postal Service from your point of

2    view?

3         A.    We have used Google because they do

4    provide a value for the postal service for

5    certain efforts that we are trying to make.

6         Q.    Okay.

7              MS. GOODMAN:  We can take a break.

8              THE VIDEOGRAPHER:  Going off the

9    record.  The time is 18:50.

10             (A short recess was taken.)

11             THE VIDEOGRAPHER:  Going back on the

12   record.  The time is 19:01.

13             MS. GOODMAN:  For the record, I am

14   ripping off the cover e-mail to Exhibit 36,

15   handing it to opposing counsel since he clawed

16   it back and marking the attachment as 36B.  I

17   will just hand that to the witness but I don't

18   have any questions about it.

19             (Deposition Exhibit 36B was marked

20   for identification.)

21             BY MS. GOODMAN:

22        Q.    Mr. Karpenko, have you had any

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 316

1      conversations with Brian Pasco about this
2      lawsuit?
3          A.    Brian worked for me, and yes, I did
4      have conversations about the information.
5          Q.    Subsequent to Brian Pasco leaving
6      the postal service, have you had any
7      conversations with him about this lawsuit?
8          A.    I have not spoken to Brian since he
9      left.
10          Q.    And so what conversations have you
11      had with -- did you have with Brian while he
12      was still at the postal service with respect to
13      this lawsuit?
14          A.    To provide any information that
15      might be needed.
16          Q.    Did he provide you any information?
17          A.    He gathered up -- in general, he
18      gathered up all of his information because he
19      was leaving and he put it on a share drive.
20          Q.    And was that for purposes of this
21      lawsuit or because it's a records management?
22          A.    Both.

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 317

1          Q.    And any other -- did he provide you

2     -- other than putting all of his information on

3     a share drive, did he provide you with any

4     other information in connection with this

5     lawsuit?

6               MR. RYAN:  Just to the extent that

7     it doesn't communicate -- this was not -- did

8     not involve communications with counsel.

9               THE WITNESS:  Nothing more that I'm

10    aware of.

11              BY MS. GOODMAN:

12         Q.    Than putting the information on a

13    share drive before he left; is that accurate?

14         A.    I don't recall him specifically

15    giving me any additional information, other

16    than making sure that he had his information

17    put onto a drive.

18         Q.    Got it.

19              MS. GOODMAN:  I have no further

20    questions for you at this time, Mr. Karpenko.

21    I will reserve the remainder of my time for the

22    questions that I was not permitted to ask the

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 318

1    witness based on what we view as improper

2    assertions of privilege.

3            So I'll hold the deposition open for

4    the record and I will pass the witness.

5            MR. RYAN:  Any questions?  I would

6    like to just note at this point, we would like

7    -- it might be automatic, but just for the

8    record, I just want to note that we want to

9    designate the entire transcript -- treat it --

10   have it treated as highly confidential for the

11   time allotted in the protective order, to allow

12   portions of the transcript to be -- the proper

13   portions to be designated and any exhibits that

14   are highly confidential.

15           MS. GOODMAN:  Okay.

16           MR. RYAN:  No questions for the

17   witness.

18           MS. GOODMAN:  Thank you,

19   Mr. Karpenko.

20           THE WITNESS:  Thank you.

21           THE VIDEOGRAPHER:  This marks the

22   end of the deposition of Mr. Karpenko.  Going

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 319

1        off the record at 19:05.

2                      (Whereupon, the proceeding was

3        concluded at 7:05 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 320

1            CERTIFICATE OF NOTARY PUBLIC

2            I, Bonnie L. Russo, the officer before

3       whom the foregoing deposition was taken, do

4       hereby certify that the witness whose testimony

5       appears in the foregoing deposition was duly

6       sworn by me; that the testimony of said witness

7       was taken by me in shorthand and thereafter

8       reduced to computerized transcription under my

9       direction; that said deposition is a true

10      record of the testimony given by said witness;

11      that I am neither counsel for, related to, nor

12      employed by any of the parties to the action in

13      which this deposition was taken; and further,

14      that I am not a relative or employee of any

15      attorney or counsel employed by the parties

16      hereto, nor financially or otherwise interested

17      in the outcome of the action.

18

19

20                  Notary Public in and for

21                  the District of Columbia

22      My Commission expires:  August 14, 2025

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 321

1    Sean Carman

2    sean.carman@usdoj.gov

3                        August 11, 2023

4    RE:    United States, Et Al v. Google, LLC

5        8/10/2023, Christopher Karpenko (#6031969)

6        The above-referenced transcript is available for

7    review.

8        Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12       The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   erratas-cs@veritext.com.

16

17    Return completed errata within 30 days from

18   receipt of testimony.

19     If the witness fails to do so within the time

20   allotted, the transcript may be used as if signed.

21

                        Yours,

22                  Veritext Legal Solutions

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 322

1   United States, Et Al v. Google, LLC

2   Christopher Karpenko (#6031969)

3                  E R R A T A   S H E E T

4   PAGE_____ LINE_____ CHANGE_____

5   _____

6   REASON_____

7   PAGE_____ LINE_____ CHANGE_____

8   _____

9   REASON_____

10  PAGE_____ LINE_____ CHANGE_____

11  _____

12  REASON_____

13  PAGE_____ LINE_____ CHANGE_____

14  _____

15  REASON_____

16  PAGE_____ LINE_____ CHANGE_____

17  _____

18  REASON_____

19

20

21  _____    _____

22  Christopher Karpenko                        Date

UNSEALED BY COURT ORDER (DOC. 470)

HIGHLY CONFIDENTIAL

Page 323

1    United States, Et Al v. Google, LLC

2    Christopher Karpenko (#6031969)

3                ACKNOWLEDGEMENT OF DEPONENT

4       I, Christopher Karpenko, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11    _____    _____

12    Christopher Karpenko                         Date

13    *If notary is required

14                    SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                    _____ DAY OF _____, 20___.

16

17

18                    _____

19                    NOTARY PUBLIC

20

21

22

UNSEALED BY COURT ORDER (DOC. 470)

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

UNSEALED BY COURT ORDER (DOC. 470)

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

UNSEALED BY COURT ORDER (DOC. 470)