**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |
|---|---|
| **United States of America,** *et al.*,<br>                                    *Plaintiffs*,<br><br>**v.**<br><br>**Google LLC,**<br>                                    *Defendant*. | **Civil Action No. 1:23-cv-0108 (LMB)
(JFA)** |

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP'S OPPOSITION
TO NON-PARTIES YELP INC.'S AND NEWS/MEDIA
ALLIANCE'S MOTION TO DISQUALIFY PAUL, WEISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF EXHIBITS ...................................................................................................... iv

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................. 4

    A.      Paul, Weiss's Former Representation of Yelp and NMA ...................... 4

    B.      DOJ Has Filed Separate Cases Relating to Ad Tech and Search. ......... 6

        1.      DOJ's Investigation ..................................................................... 6

        2.      Search Litigation ......................................................................... 7

        3.      Ad Tech Litigation ...................................................................... 7

    C.      Events Leading Up to Paul, Weiss's Representation of Google ............. 9

    D.      Yelp's and NMA's Motion to Disqualify Paul, Weiss ......................... 11

III.    LEGAL STANDARDS ...................................................................................... 12

IV.     ARGUMENT ..................................................................................................... 14

    A.      Yelp/NMA Are Not "Materially Adverse" to Google in This Case ..................... 14

    B.      Yelp and NMA Fail to Show That Paul, Weiss's Representation of Google Is "Substantially Related" to Its Prior Representation of Yelp or NMA .............. 16

    C.      The Conflict Alleged by Yelp and NMA Does Not Justify Paul, Weiss's Disqualification ............................................................................................. 19

V.      CONCLUSION .................................................................................................. 23

i

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Advanced Training Group Worldwide, Inc. v. Proactive Technologies Inc.*, 436 F. Supp. 3d 870 (E.D. Va. 2020) .......................................................................................19, 21

*Aetna Casualty & Surety Co. v. United States*, 570 F.2d 1197 (4th Cir. 1978) ............................21

*Alzheimer's Institute of America, Inc. v. Avid Radiopharmaceuticals*, 2011 WL 6088625 (E.D. Pa. Dec. 7, 2011) .................................................................................23

*Atlantic Diving Supply, Inc. v. Komornik*, 108 Va. Cir. 154 (2021) .............................................14

*Board of Education of New York v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979) ...............................19

*Calamar Enterprises, Inc. v. Blue Forest Land Group*, 222 F. Supp. 3d 257 (W.D.N.Y. 2016) ...............................................................................................20

*Capacchione v. Charlotte-Mecklenburg Board of Education*, 9 F. Supp. 2d 572 (W.D.N.C. 1998) ...............................................................................................20

*Carter v. Virginia Department of Game & Inland Fisheries*, 2017 WL 4413192 (E.D. Va. Sept. 29, 2017) ..................................................................................15

*Centripetal Networks, Inc. v. Palo Alto Networks, Inc.*, 2022 WL 610176 (E.D. Va. Mar. 1, 2022) ...........................................................................................13, 17

*Curtis v. Radio Representatives, Inc.*, 696 F. Supp. 729 (D.D.C. 1988) .....................................15

*Gulf Coast Mktg. Grp., Inc. v. JTH Tax LLC*, 2021 WL 1990175 (E.D. Va. May 18, 2021) ................................................................................................16, 17

*In re Modanlo*, 342 B.R. 230 (D. Md. 2006) ...............................................................................22

*In re National Century Financial Enterprises, Inc. Financial Investment Litigation*, 2010 WL 1257598 (S.D. Ohio Mar. 29, 2010) ...............................................21

*In re Rail Freight Fuel Surcharge Antitrust Litigation*, 965 F. Supp. 2d 104 (D.D.C. 2013) ...................................................................................................21

*In re Wagar*, 2006 WL 3699544 (N.D.N.Y. Dec. 13, 2006) .......................................................15

*Macheca Transport Co. v. Philadelphia Indemnity Co.*, 463 F.3d 827 (8th Cir. 2006) ...............................................................................................................22

*McDonough v. Alpha Construction & Engineering Corp.*, 27 Va. Cir. 50 (1991) .........................3

*Montalvo v. Judge*, 776 N.W.2d 100 (Wisc. Ct. App. 2009) ......................................................22

*Olson Kundig, Inc. v. 12th Avenue Iron, Inc.*, 2022 WL 14664715 (W.D. Wash. Oct. 25, 2022) ........................................................................................21

*Road King Development, Inc. v. JTH Tax LLC*, 540 F. Supp. 3d 554 (E.D. Va. 2021) ........................................................................................12

*Redd v. Shell Oil Co.*, 518 F.2d 311 (10th Cir. 1975) ...................................................21

*Reese v. Virginia International Terminals, Inc.*, 894 F. Supp. 2d 665 (E.D. Va. 2012) ........................................................................13, 19, 20, 21, 22

*Roberts v. Hewlett Packard Computing & Printing, Inc.*, 2021 WL 1985444 (E.D. Va. May 18, 2021) ........................................................................................15

*Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992) ..........................................13

*Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975) ........................................................................................13, 20

*Starkes v. Flechner*, 2012 WL 1156404 (S.D. Fla. Apr. 6, 2012) .................................21

*Sykes v. Matter*, 316 F. Supp. 2d 630 (M.D. Tenn. 2004) ..........................................16

*Tattoo Art, Inc. v. TAT International, LLC*, 2010 WL 11469802 (E.D. Va. Oct. 18, 2010) ........................................................................................12

*Turner v. AIG Domestic Claims, Inc.*, 823 F. Supp. 2d 899 (D. Neb. 2011) ...............................23

*United States v. Dentsply International, Inc.*, 190 F.R.D. 140 (D. Del. 1999) ...............................9

## RULES

Virginia Rules of Professional Conduct
  Rule 1.6 ..........................................................................................5
  Rule 1.7 .....................................................................................14, 15
  Rule 1.9 ................................................................................. *passim*
  Rule 1.10 .............................................................................13, 14, 16, 19

## OTHER AUTHORITIES

ABA Formal Opinion 99-415 (Sept. 8, 1999) .............................................................14

ABA Formal Opinion 21-497 (Feb. 10, 2021) ............................................................15

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Declaration of Elizabeth G. McCabe ("PW Decl.") |
| 2 | Declaration of Lara Kollios ("Google Decl.") |
| 3 | 8/22/23 NMA Responses and Objections to August Subpoena |
| 4 | 6/14/23 Yelp Responses and Objections to May Subpoena |
| 5 | 8/15/23 Yelp Responses and Objections to August Subpoena |

## I.    <u>INTRODUCTION</u>

Yelp Inc. ("Yelp") and News/Media Alliance ("NMA") are non-parties to this case who were represented by Jonathan Kanter and Brandon Kressin, both when they were affiliated with Paul, Weiss, and afterwards when they left the firm and established their own boutique antitrust practice.  When Mr. Kanter and Mr. Kressin left Paul, Weiss in September 2020, Yelp and NMA left the firm with them.  Paul, Weiss has not performed any work for Yelp or NMA from that point forward.  Yelp, NMA, and Mr. Kressin, who continues to represent them, have known of Paul, Weiss's representation of Google for over four months.  If Yelp or NMA had any real concern about prejudice to them, they would have brought this motion months ago.  Instead, it appears they tactically waited until after the Court addressed Google's defenses aimed at the propriety of Jonathan Kanter's participation in this case and the time for enforcing the document subpoenas directed to them expired.  The Court should not countenance such gamesmanship.

There is no basis to deprive Google of its choice of lead trial counsel in this case.  Paul, Weiss has not breached the Rules of Professional Conduct and its disqualification would severely prejudice Google:

***First***, Google's interests in this case are not "materially adverse" to Yelp's or NMA's, as would be required for a breach of Virginia Rule of Professional Conduct ("Virginia Rule") 1.9(a), governing obligations to former clients.  Neither Yelp nor NMA is a party to this case and thus there is no direct adversity.  Under Yelp's and NMA's overly expansive view of the law, Google, and any counsel it selected, would be "adverse" to thousands of other non-parties who may have a generalized financial interest in the outcome of the case.  That is an unsupportable construction of the ethics rules, which would make it virtually impossible for Google to retain *any* counsel.

***Second***, this case is not "substantially related" to any work that Paul, Weiss attorneys ever performed for Yelp and NMA—another requirement of the applicable ethics rules. Paul, Weiss's work for these former clients involved only issues that are not part of this case. The one specific document prepared by Paul, Weiss that Yelp and NMA rely on—a white paper submitted to DOJ on behalf of Yelp—alleges anticompetitive conduct concerning Google's Search product ("Google Search"), which is the subject of a separate case brought by the Department of Justice ("DOJ") in the District Court for the District of Columbia in which Paul, Weiss is not involved. In this case, by contrast, DOJ alleges entirely ***different anticompetitive conduct***, and accordingly seeks completely ***different remedies***, with respect to "ad tech" products, which DOJ describes as "sophisticated technological tools … developed to automate advertising matchmaking between two key groups: website publishers and advertisers" ("Ad Tech"). Dkt. 120 [Amended Complaint] ¶ 3. DOJ alleges that "open web display advertising" is the focus of Ad Tech products and is "distinct from" other digital advertising such as "search ads …, video ads …, and mobile app ads." *Id.* ¶ 43 & n.4.

Moreover, the fact that Yelp and NMA received document subpoenas from Google in this case—served by Google's other counsel, not Paul, Weiss—does not make Paul, Weiss's prior representation of Yelp and NMA "substantially related" to this case. As NMA itself stated in its objections to the subpoena, the documents called for, presumably including any relating to work Paul, Weiss previously did for NMA, are "***all irrelevant to the claims and defenses in this case***" because "this case is about Google's conduct with respect to Ad Tech products." Ex. 3 [NMA Subpoena Resp.] at 2.

***Third***, there is no prejudice to Yelp and NMA. There has been no leakage of Yelp or NMA confidential information to the lawyers representing Google in this case, and there is no risk of any

2

future leakage.  As a factual matter, no Paul, Weiss lawyer representing Google in this case ever received or accessed confidential information about Yelp or NMA relevant to the issues in this case, and they are blocked from accessing Yelp's and NMA's files.  Ex. 1 [PW Decl.] ¶¶ 18-20, 23-24.  With the exception of one lawyer, who billed 36 hours solely on the white paper for Yelp concerning Google's search engine and search ads, no one on the Paul, Weiss Google trial team ever came near these two former clients.  *Id.* ¶¶ 18, 21-22.  The only Paul, Weiss lawyers who could conceivably have confidential information of Yelp or NMA relevant to the case—Jonathan Kanter, Brandon Kressin, and, to a lesser extent, Mr. Kressin's current law partner, Mark Meador—all left Paul Weiss years ago.  For these reasons, there is no actual, real-world risk of prejudice or trial taint, which is the fundamental underlying concern of any motion to disqualify.  *See McDonough v. Alpha Const. & Eng'g Corp.*, 27 Va. Cir. 50 (1991) (explaining that "disqualification" is ordered "only if the attorney's conduct tends to 'taint the underlying trial'" in either of two ways) (quoting *W. T. Grant Co. v. Haines*, 531 F.2d 671, 678 (2d Cir. 1976)).

The disqualification of Paul, Weiss as Google's chosen lead trial counsel at this late date would cause severe prejudice to Google.  Google retained Paul, Weiss as lead trial counsel in this case because of its unparalleled experience in high-stakes antitrust matters like this, including an unusual depth of experience with antitrust jury trials, and Paul, Weiss has already invested thousands of hours preparing Google's defense.  It would be prejudicial in the extreme to deprive Google of the trial counsel of its choice only months away from trial in a case of this complexity and importance.

For all these reasons, the Court should put an end to this tactical detour and permit the parties to "focus[] on the core issues in this case," Dkt. 435, 9:19-10:10, and prepare for trial.  The motion to disqualify Paul, Weiss should be denied.

## II.   FACTUAL BACKGROUND

### A.   Paul, Weiss's Former Representation of Yelp and NMA

Jonathan Kanter led Paul, Weiss's representation of Yelp and NMA, assisted by Yelp's and NMA's current counsel, Brandon Kressin. Ex. 1 [PW Decl.] ¶¶ 4, 10. Yelp and NMA became clients of Paul, Weiss shortly after Mr. Kanter and Mr. Kressin joined the firm in August and September 2016, respectively, and they ceased being clients of Paul, Weiss when Mr. Kanter and Mr. Kressin left in September 2020. *Id.* ¶¶ 2-4, 6. Yelp engaged Mr. Kanter in August 2016, and NMA engaged Mr. Kanter in February 2017. *Id.* ¶¶ 2-3. Mr. Kanter signed both engagement letters. *Id.* ¶ 4. Mr. Kanter's representation of Yelp and NMA focused on various antitrust matters, some related to Google and some not. *Id.* ¶ 11.

Mr. Kanter, Mr. Kressin, and Mark Meador, who was then an associate at Paul, Weiss,[1] performed the overwhelming amount of work for both clients. *Id.* ¶ 10. Their time accounted for 94% of the attorney time billed to Yelp and 84% of the attorney time billed to NMA. *Id.* ¶¶ 12-13. Thus, only Mr. Kanter, Mr. Kressin, and perhaps Mr. Meador know the full scope of work performed for Yelp and NMA while they were at Paul, Weiss. None of the few lawyers remaining at Paul, Weiss who billed any time to Yelp or NMA ever did any work for Yelp or NMA related to Google's Ad Tech business. *Id.* ¶ 18.

Neither Yelp nor NMA contends that Paul Weiss's work for them related to Google's Ad Tech business. Yelp's and NMA's brief, for example, concedes that "***Yelp's past advocacy to DOJ had focused on Internet search, not advertising technology***." Br. 6. Their brief goes on to cite a white paper that Mr. Kanter transmitted on April 14, 2020, "on behalf of Yelp," to several

---

[1] In July 2023, Mr. Meador, who was an associate at Paul, Weiss from August 2016 to July 2019, joined Mr. Kressin's firm, now known as Kressin Meador LLC. Ex. 1 [PW Decl.] ¶ 8. Mr. Kressin represents Yelp and NMA in their disqualification motion. *Id.* ¶ 9.

members of DOJ's Antitrust Division, copying Mr. Kressin and a Yelp lawyer, as a basis for disqualifying Paul, Weiss in this matter.  *See* Br. 10 (citing Dkt. 368, Ex. 9); Ex. 1 [PW Decl.] ¶ 22.   The Yelp White Paper was titled "Google's Vertical Search Abuses[:] How Google's conduct in local search and other search verticals violates the U.S. antitrust laws."[2]  Ex. 1 [PW Decl.] ¶ 22.  The Yelp White Paper concerned only Google's "***search engine, Google Search***," and alleged anticompetitive conduct regarding Google's search results pages.

The only Paul, Weiss lawyer who has billed time to Google in this matter and who also did any work for movants worked on the legal arguments included in this Yelp White Paper for a total of 36 hours over a three-week period in February and March 2020.  *Id.*  None of the other lawyers at Paul, Weiss who represent Google in this matter has received or accessed any confidential information about Yelp or NMA.  *Id.* ¶¶ 19, 23.  And none of the lawyers at Paul, Weiss who represent Google in this matter has received or accessed any confidential information of Yelp or NMA concerning Google's Ad Tech business.  *Id.* ¶¶ 19, 24.

Paul, Weiss's representation of Yelp and NMA ended in September 2020 with Mr. Kanter's and Mr. Kressin's departure to start a new law firm, The Kanter Law Group.  *Id.* ¶ 6.[3]  Several other lawyers who performed work for Yelp and NMA besides Messrs. Kanter, Kressin, and Meador have left Paul, Weiss since September 2020.  *Id.* ¶ 17.  The last date on which Paul, Weiss

---

[2] The April 14, 2020, e-mail from Mr. Kanter to DOJ and the Yelp White Paper were produced by DOJ in this case at DOJ-ADS-B-0000001486 and DOJ-ADS-B-0000001487.  Ex. 1 [PW Decl.] ¶ 22.  Paul, Weiss is permitted to describe the Yelp White Paper under Va. Rule 1.6(b) ("To the extent a lawyer reasonably believes necessary, the lawyer may reveal: … (2) such information to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client … or to respond to allegations in any proceeding concerning the lawyer's representation of the client.").  Out of an abundance of caution, and out of respect for Yelp and NMA, Paul, Weiss is not attaching the Yelp White Paper to this brief, but it is prepared to provide a copy to the Court if requested.

[3] When Mr. Kanter left private practice and joined DOJ in the fall of 2021, Mr. Kressin continued practicing as The Kressin Law Group.  Ex. 1 [PW Decl.] ¶ 7.

performed work for NMA was September 9, 2020.  *Id.* ¶ 14.  The last date on which Paul, Weiss performed work for Yelp—transferring files to Mr. Kanter and Mr. Kressin at their new firm— was September 23, 2020.  *Id.* ¶ 15.  No Paul, Weiss attorney has performed work for Yelp or NMA for over three years.  *Id.* ¶ 16.

Yelp's and NMA's engagement letters with Paul, Weiss both provided that the attorney-client relationship ended when the work was completed:

> Termination - ….  Upon completion of the matter to which this engagement letter applies, … our attorney-client relationship will end unless we agree to continue the representation on other matters.  We shall have no continuing obligation to advise you on any matter unless we otherwise agree in writing.

*See* Ex. 1 [PW Decl.] ¶ 5.  Accordingly, Yelp and NMA have both been former clients of Paul, Weiss since September 2020, when Jonathan Kanter and Brandon Kressin left the firm.  Apparently recognizing that, Yelp and NMA cite Virginia Rule 1.9, which applies to "former client[s]."  Br. 8-9.

## B.    DOJ Has Filed Separate Cases Relating to Ad Tech and Search.

### 1.    DOJ's Investigation

In October 2019, DOJ issued a broad Civil Investigative Demand ("CID") to Google, covering multiple topics and Google product areas—not just Google's Ad Tech business at issue in this case.  Ex. 2 [Google Decl.] ¶ 2.  Google and third-parties produced documents in response to the CID.  *Id.*  While the DOJ's investigation covered many topics, the resulting litigation brought by DOJ was focused on Search and Search Ads.  *See United States, et al. v. Google LLC*, No. 1:20-cv-03010 (D.D.C. Oct. 20, 2020), Dkt. 1.  Following the commencement of that lawsuit, DOJ issued a second CID to Google that was specifically focused on Ad Tech—the subject-matter of the instant case.  Ex. 2 [Google Decl.] ¶ 3.  However, as counsel for the United States in this matter stated at a hearing before Judge Anderson in describing DOJ's investigatory file, "a meaningful

portion of those documents relate to things that are outside the scope of the complaint."  Dkt. 70 [3/24/23 Hr'g Tr.] 5:12-17.

### 2.    Search Litigation

In October 2020, DOJ and eleven state attorneys general filed a complaint against Google in the U.S. District Court for the District of Columbia, alleging that Google unlawfully maintained monopolies in general search services and search advertising by entering into a series of exclusionary agreements that prohibited preinstallation of any competing search service and required Google to be set as the default search engine on mobile devices and computers (hereinafter the "Search Litigation").  Ex. 2 [Google Decl.] ¶ 4.  Thereafter, the attorneys general of thirty-eight states and territories filed a separate complaint, which was centralized with the DOJ action.  *Id.*  In the Search Litigation, currently being tried and expected to last through late November 2023, Google is represented by Williams & Connolly LLP, Ropes & Gray LLP, and Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini")—not Paul, Weiss.  *Id.*

### 3.    Ad Tech Litigation

On December 16, 2020, the Texas Attorney General, along with attorneys general from nine other states, filed an action against Google in the U.S. District Court for the Eastern District of Texas.  *State of Texas, et al. v. Google, LLC*, No. 1:20-cv-00957 (E.D. Tex.), Dkt. 1.[4]  Multiple private parties also filed antitrust cases against Google relating to Ad Tech, resulting in the centralization of 19 separate actions in a multidistrict litigation ("MDL") proceeding in the U.S. District Court for the Southern District of New York before Judge Kevin Castel.  *In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d 1372 (J.P.M.L. 2021).  Since the MDL panel centralized those 19 cases, 17 additional cases have been added to the MDL proceeding.  *In re*

---

[4] Six additional states and Puerto Rico have since joined the lawsuit as plaintiffs.

*Google Digital Advertising Litig.*, No. 1:21-md-03010 (S.D.N.Y.), Dkts. 534, 574.  Plaintiffs in these cases seek expansive relief, including damages as well as equitable relief.  Ex. 2 [Google Decl.] ¶ 5.  Lawyers from Freshfields Bruckhaus Deringer LLP ("Freshfields"), Axinn, Veltrop & Harkrider LLP ("Axinn"), and Wilson Sonsini have entered appearances on behalf of Google in the MDL, where fact discovery is currently ongoing and not set to conclude until June 28, 2024. *In re Google Digital Advertising Litig.*, No. 1:21-md-03010, Dkt. 394.  In addition to discovery matters, Google's MDL counsel have drafted and filed nine motions to dismiss plaintiffs' various complaints this year alone.  *Id.*, Dkts. 446, 449, 451, 453, 455, 457, 592, 623, 625.  The MDL panel recently remanded the Texas Attorney General's lawsuit to the Eastern District of Texas. Ex. 2 [Google Decl.] ¶ 15.  Freshfields and Axinn will be representing Google in the remanded Eastern District of Texas action.  *Id.*

On January 24, 2023, while Google was litigating Ad Tech-related issues in the MDL Proceeding, the United States and eight states commenced the action before this Court, seeking substantial damages on behalf of Federal Agency Advertisers, as well as equitable relief and divestiture of Google's digital advertising business.  Dkt. 1.  Plaintiffs in this case allege that Google "has eliminated or diminished any threat to its dominance in the ad tech industry by (a) neutralizing and eliminating ad tech competitors through acquisitions, and (b) using its market power and dominance in these three ad tech markets to force publishers and advertisers to use its products exclusively while disrupting their ability to use competing ad servers, ad exchanges, or ad-buying tools."  Dkt. 60 [3/14/23 Order] at 2; *see also* Dkt. 120 [Amended Compl.] ¶ 5.  The Freshfields and Axinn firms, also representing Google in the MDL proceeding, entered

appearances in this action.  Ex. 2 [Google Decl.] ¶ 7.[5]

### C.     Events Leading Up to Paul, Weiss's Representation of Google

On February 17, 2023, Google filed a motion seeking to transfer this case to the U.S. District Court for the Southern District of New York to become part of the MDL Proceeding.  Dkt. 44.  On March 10, 2023, this Court denied the motion, Dkt. 59 at 21:14-18, and emphasized that it views this case as a standalone, "very significant antitrust case," *id.* at 7:10-11, for which the parties should "have [their] running shoes on" because the parties are "not going to get" a year and a half to complete discovery, *id.* at 26:15-27:4; *see also* Ex. 2 [Google Decl.] ¶ 10.  The Court made clear that it will fulfill its mandate to "'prioritiz[e] prompt resolution of the [G]overnment's antitrust claims" and "provid[e] expeditious relief," Dkt. 60 at 11 (quoting *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145-146 (D. Del. 1999)).

On March 17, 2023, the parties filed a Joint Motion for Entry of Discovery Schedule and Extension of Deadlines for Response to Complaint.  Dkt. 63.  On March 24, 2023, the Court entered a scheduling order shortening the overall schedule proposed by the parties by six months, setting September 8, 2023, as the deadline for completion of fact discovery, January 12, 2023, as the deadline for expert discovery, and January 18, 2024, for the pretrial conference.  Dkt. 69; Ex. 2 [Google Decl.] ¶ 8.  On March 27, 2023, Google filed a motion to dismiss Plaintiffs' complaint, which the Court denied on April 28, 2023.  Dkts. 72, 163.

Google took seriously the Court's admonition that the parties needed to have "[their]

---

[5] The same lawyers at the Freshfields and Axinn firms who entered appearances on behalf of Google in this action are also representing Google in the MDL Proceeding and the Texas Attorney General's case.  Ex. 2 [Google Decl.] ¶ 7.  The Freshfields lawyers are also coordinating globally on matters concerning Ad Tech, including regulatory investigations and multiple private litigations.  *Id.*  Freshfields and Axinn are also representing Google in connection with a European Commission proceeding against Google.  *Id.* ¶ 15.

running shoes on," Dkt. 59 [3/10/23 Hr'g Tr.] 26:18-19; Ex. 2 [Google Decl.] ¶ 10.  Google also took into consideration the existing litigation team's significant work in other pending cases, such as the Freshfields team's role in document production across multiple cases on a compressed schedule, and its management of the lawsuit led by the Texas Attorney General and of more than 30 U.S. private lawsuits.  Ex. 2 [Google Decl.] ¶ 10.  In light of the significance of the case and the schedule set by this Court, Google retained Paul, Weiss to serve as its lead trial counsel in this case, based on Paul, Weiss's significant trial experience, including antitrust and jury trials, and also including experience in this district.  *Id.* ¶¶ 11-13.  Paul, Weiss attorneys entered appearances for Google on May 6, 2023.  *See, e.g.*, Dkts. 177-186.

From the start of its representation of Google in this case, Paul, Weiss has taken the lead on the development of trial strategy, working closely with the Google in-house legal team to advise Google on affirmative case development, trial preparation, and overall strategy.  Ex. 2 [Google Decl.] ¶ 13.  Paul, Weiss lawyers have become completely immersed in the case, spending considerable energy getting up to speed on complex products and how they have evolved, while refraining from participating in non-party discovery and depositions of certain third parties like Yelp and NMA.  *Id.*  To date, Paul, Weiss attorneys and personnel have devoted substantial time and resources—over 10,000 hours—to Google's defense.  *Id.*; Ex. 1 [PW Decl.] ¶ 26.  Among other things, Paul, Weiss has conducted all of the discovery of the eight Federal Agency Advertisers, taking all of their depositions (both witnesses in their individual capacity and corporate designees) and moving to compel disclosure of further information multiple times.  Ex. 2 [Google Decl.] ¶ 13; Dkts. 291, 304, 406.  Paul, Weiss has also taken the corporate deposition of the United States and depositions of multiple key third parties.  Ex. 2 [Google Decl.] ¶ 13.  In addition, Paul Weiss has taken the lead on multiple defensive discovery issues.  *Id.*

10

### D.      Yelp's and NMA's Motion to Disqualify Paul, Weiss

On May 31, 2023, Google's counsel Axinn served a Rule 45 subpoena for production of documents on non-party Yelp, Dkt. 460, Ex. D at 3 ("May Yelp Subpoena").  Axinn served a second document subpoena on Yelp on August 1, 2023.  Dkt. 460, Ex. E at 3 ("August Yelp Subpoena").  On August 8, 2023, Freshfields served a Rule 45 document subpoena on non-party NMA.  Dkt. 460, Ex. F at 3 ("NMA Subpoena").

The August Yelp and NMA Subpoenas sought certain non-privileged communications, *e.g.*:

> All **communications that You have had with a third party concerning Google**, between January 1, 2019 and the present, where any of (i) Jonathan Kanter, (ii) Brandon Kressin, (iii) Susan Athey [DOJ Antitrust's Chief Economist], (iv) any employee or agent of the Kanter Law Group, or (v) any employee or agent of the Kressin Law Group or Kressin Meador, is a sender or recipient….

August Yelp Subpoena at 4; *see also* NMA Subpoena at 11-12 (same).  In its response to the subpoena, signed by Mr. Kressin, NMA stated, "***None of these communications would be relevant to the claims and defenses in this litigation, which concern whether Google illegally monopolized various Ad Tech product markets***."  Ex. 3 [NMA Subpoena Resp.] at 5, 11; *id.* at 2 ("[T]he information sought by this Subpoena … is all irrelevant to the claims and defenses in this case.  Based on the Plaintiffs' complaint, this case is about Google's conduct with respect to Ad Tech products.").  Yelp likewise objected based on lack of relevancy.  Ex. 5 [Yelp Resp. to August Subpoena] at 2 ("[I]nformation sought … is all irrelevant to the claims and defenses in this case" because "this case is about Google's conduct with respect to Ad Tech products."); *id.* at 5 ("None of these communications are relevant to the claims and defenses in this litigation.").  Neither Yelp nor NMA produced any documents in response to the August Yelp or NMA Subpoenas; fact discovery is over, and Google is no longer seeking any documents from either of them in this case.

The subpoenas called for documents relating to Google's Tenth and Thirteenth Affirmative Defenses, alleging improper selective enforcement by DOJ and violation of the Due Process Clause. Dkt. 208 at 54-55. On September 18, 2023, the Court dismissed those defenses, finding that they "raise irrelevant matters … and only detract from the core issue in this litigation— whether Google's Ad Tech business violates antitrust laws." Dkt. 445 at 16-17; *see also* Dkt. 435 [9/15/23 Hr'g Tr.] 9:19-10:10 (stating that the parties' "time and energy [] should be focused on the core issues in this case" "which is whether or not [Google] has structured [its Ad Tech platforms in an] anticompetitive" manner).

Third-party discovery is now closed. *See* Dkt. 69. On September 8, Google and Plaintiffs filed a joint motion to extend the cut-off for completing discovery from certain third parties, but ***not from Yelp or NMA***. *See* Dkt. 414 at 2-7. The Court granted the motion only as to "the ***specific*** third-party document productions set forth in the motion." Dkt. 436 at 1. It is therefore no longer possible to obtain discovery from either Yelp or NMA. Neither Yelp nor NMA remain subject to the subpoenas that they claim gave rise to Paul, Weiss's conflict of interest.

On September 22, four-and-a-half months after Paul, Weiss lawyers entered their appearances as counsel for Google, Yelp and NMA filed their motion to disqualify Paul, Weiss. Yelp and NMA waited to bring their motion until after the deadline for third-party discovery passed, and after the Court dismissed Google's Tenth and Thirteenth Affirmative Defenses.

## III.   LEGAL STANDARDS

Courts in this District warn that a "motion seeking to disqualify counsel can be used improperly 'for purely strategic purposes,'" so the moving party seeking disqualification "bears a 'high standard of proof,'" *Rd. King Dev., Inc. v. JTH Tax LLC*, 540 F. Supp. 3d 554, 560 (E.D. Va. 2021), and the motion is subject to "'close inspection,'" *Tattoo Art, Inc. v. TAT Int'l, LLC*,

2010 WL 11469802, at *2 (E.D. Va. Oct. 18, 2010); *see also, e.g.*, *Centripetal Networks, Inc. v. Palo Alto Networks, Inc.*, 2022 WL 610176, at *6 (E.D. Va. Mar. 1, 2022) ("The moving party bears a high standard of proof, as a motion to disqualify counsel can be used improperly for tactical advantage."). The moving party's evidence "may not be rested on mere speculation." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992). "Conclusory allegations are not a sufficient basis to grant a motion to disqualify." *Centripetal Networks*, 2022 WL 610176, at *10.

In considering a disqualification motion, courts in this District engage in a two-step analysis. ***First***, the Court must determine whether the lawyer has "violated … the Virginia Rules of Professional Conduct." *Reese v. Va. Int'l Terminals, Inc.*, 894 F. Supp. 2d 665, 673 (E.D. Va. 2012). ***Second***, if there is a violation, "the Court must next determine whether the law firm's disqualification … is the appropriate sanction." *Id.* at 673-674. Disqualification "'is never automatic,'" and "with rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests … undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, thus giving his present client an unfair advantage." *Id.* at 674 (ellipsis in original); *see also Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 757 (2d Cir. 1975) (declining to disqualify counsel where "there is no realistic chance that confidences were disclosed").

Relevant here are Virginia Rules of Professional Conduct 1.9(a) and 1.10(b). Virginia Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in ***the same or a substantially related matter*** in which that person's interests are ***materially adverse*** to the interests of the former client unless both the present and former client consent after consultation.

Virginia Rule 1.10(b) provides:

> When a lawyer has terminated an association with a firm, ***the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer*** and not currently represented by the firm, ***unless***:
>
> (1) ***the matter is the same or substantially related*** to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

## IV.   ARGUMENT

### A.   Yelp/NMA Are Not "Materially Adverse" to Google in This Case

A conflict of interest arises under Virginia Rule 1.9(a) only if the interests of a lawyer's current client are "materially adverse" to those of a former client.  Material adversity requires direct adversity.  *See* Va. Rule 1.9(a), cmt. 1 ("The principles in Rule 1.7 determine whether the interests of the present and former client are adverse."); Va. Rule 1.7, cmt. 6 ("As a general proposition, loyalty to a client prohibits undertaking representation ***directly adverse*** to that client without that client's consent."); *cf. Atl. Diving Supply, Inc. v. Komornik*, 108 Va. Cir. 154 (2021) ("'The principles in Rule 1.7 determine whether the interests of the present and former client are adverse.'" (quoting Virginia Rule 1.9(a), cmt. 1)); ABA Formal Op. 99-415 (Sept. 8, 1999) ("***[O]nly direct adversity*** of interests meets the threshold 'material adversity' sufficient to trigger the prohibitions established in Rule 1.9").  Direct adversity "prohibits representation of ***opposing parties in litigation***" or "by reason of substantial discrepancy in the parties' testimony, ***incompatibility in positions in relation to an opposing party*** or the fact that there are substantially different possibilities of settlement of the claims."  Va. Rule 1.7, cmt. 23.

Here, there is no direct adversity between Google and Yelp and NMA.  Yelp and NMA are not parties to this litigation; the litigation will impose no liabilities on Yelp or NMA; and Yelp and NMA cannot be party to any settlement of this action.  Accordingly, the necessary "squarely

opposed conflict" is lacking.  *Roberts v. Hewlett Packard Computing & Printing, Inc.*, 2021 WL 1985444, at *3 (E.D. Va. May 18, 2021); *see also Carter v. Virginia Dep't of Game & Inland Fisheries*, 2017 WL 4413192, at *9 (E.D. Va. Sept. 29, 2017) (denying disqualification motion because "'the representation **does not involve the assertion** *of a claim* by one client against another client represented by the lawyer in the same litigation'" (original italics, citation omitted)). Yelp's and NMA's *sole* argument regarding adversity—an assertion that "Google views Yelp and NMA as adverse," Br. 4—is both legally insufficient to show direct adversity and, in any event, mistaken.

Yelp's and NMA's generic economic interest in the outcome of this case is shared by virtually every non-party in the Ad Tech space.  Such economic interest in the outcome of a case is not material adversity under Rule 1.9(a).  Va. Rule 1.7, cmt. 6 ("[S]imultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients."); ABA Formal Opinion 21-497 at 1 ("[G]eneral economic or financial adverseness alone does not constitute material adverseness."); *Curtis v. Radio Representatives, Inc*., 696 F. Supp. 729, 736 (D.D.C. 1988) (explaining that "companies that are competitors in the same industry" are not necessarily materially adverse).  Yelp's and NMA's possible preference for a certain outcome in this case is not what Rule 1.9 means by material adversity.

Finally, Yelp's and NMA's receipt of subpoenas from firms other than Paul, Weiss does not establish material adversity.  *See In re Wagar*, 2006 WL 3699544, at *15 (N.D.N.Y. Dec. 13, 2006) (declining to find interests of subpoena issuer to be "materially adverse" to subpoena recipient and noting that having co-counsel conduct the deposition of a subpoenaed third-party witness, who was also a former client of the main defense counsel, is an "efficacious safeguard");

*Sykes v. Matter*, 316 F. Supp. 2d 630, 636 (M.D. Tenn. 2004) (holding potential Rule 1.9 conflict was resolved by the use of conflicts counsel to administer third-party subpoena).[6]

In short, Yelp and NMA have come nowhere near satisfying their high burden to show that Google is "materially adverse" to them in this case. For that reason alone, their motion to disqualify Paul, Weiss fails.

### B.   Yelp and NMA Fail to Show That Paul, Weiss's Representation of Google Is "Substantially Related" to Its Prior Representation of Yelp or NMA

For a conflict of interest to arise under Virginia Rule 1.9(a), a lawyer's work on the matter for the current client must be "*the same or substantially related*" to a matter the lawyer handled for the former client. Similarly, Virginia Rule 1.10(b) provides that when a lawyer leaves a firm, the firm may represent a client even "with interests materially adverse to those of a [former] client represented by the formerly associated lawyer … unless: (1) *the matter is the same or substantially related* to that in which the formerly associated lawyer represented the client." "'Substantially related' has been defined to be 'identical' or 'essentially the same.'" *Gulf Coast Mktg. Grp., Inc. v. JTH Tax LLC*, 2021 WL 1990175, at *5 (E.D. Va. May 18, 2021) (citations omitted). "The substantial relationship test requires a 'virtual congruence of issues', and the relationship between issues in the prior and present case must be 'patently clear.'" *Id.* (citations omitted). "The purpose of the 'substantial relationship' test is to prevent an attorney from appearing against [a] former client" only when there is a "reasonable probability that confidences were disclosed in prior representation which could be used against former client in subsequent litigation." *Id.*

Yelp and NMA fail to show that the work lawyers for Paul, Weiss are doing for Google in

---

[6] Neither Yelp nor NMA asserted any conflict of interest when the subpoenas were served, and the time for their enforcement has expired. *See* Dkt. 389; Dkt. 436 at 1.

this case is the same or substantially related to the work Jonathan Kanter, Brandon Kressin, Mark Meador, and others did prior to September 2020.  Yelp and NMA have not really attempted to make such a showing even though they are now being represented by two of the three lawyers who accounted for the overwhelming majority of time billed by Paul, Weiss before Yelp and NMA ceased being clients of the firm altogether.  Ex. 1 [PW Decl.] ¶¶ 10, 12-13.  In particular:

- None of the sworn declarations submitted in support of the motion avers that Paul, Weiss provided legal advice to, or received confidential information from, Yelp or NMA relating to Ad Tech.[7]

- No one still at Paul, Weiss did any work substantially related to Ad Tech for Yelp or NMA.  Ex. 1 [PW Decl.] ¶ 18.

- No one at Paul, Weiss who represents Google recalls learning any confidential information about Yelp or NMA concerning Ad Tech.  *Id*. ¶¶ 23-24.

Yelp and NMA base their motion largely on "conclusory allegations that are unsupported by relevant details," which is insufficient for disqualification.  *Centripetal Networks*, 2022 WL 610176, at *10.  Without putting forward any detailed facts, Yelp and NMA base their "substantial relationship" argument on (1) misinterpretations and mischaracterizations of Google's Opposition to Plaintiffs' Motion for Judgment on the Pleadings, *see* Br. 10 (citing Dkt. 368), (2) subpoenas served on Yelp and NMA by firms other than Paul, Weiss, *id.* at 10-11, and (3) unspecified documents allegedly sent to Mr. Kressin, *id.* at 11.  All of these efforts fail.

*First*, Plaintiffs have pointed to no evidence that any Paul, Weiss attorney provided Yelp or NMA legal advice concerning Google's Ad Tech business, or received confidential information from Yelp or NMA concerning Google's Ad Tech business.  *See Gulf Coast Mktg*., 2021 WL 1990175, at *5 (denying disqualification where movant did not show a "patently clear connection between the confidential information [former counsel] obtained during his [former representation]

---

[7] The brief also makes factual assertions that are unsupported by the accompanying declarations.

and the issues at bar").  The only information cited by Yelp and NMA is the Yelp White Paper concerning Google's Search product, Ex. 1 [PW Decl.] ¶ 22, which is the subject of an entirely separate suit by DOJ that is not substantially related to this case and is not being litigated by Paul, Weiss.  *See supra* Parts I & II.A.

  ***Second***, the subpoenas that firms other than Paul, Weiss served on Yelp and NMA do not establish that Paul, Weiss's prior representation of Yelp and NMA is substantially related to this case.  Contrary to Yelp's and NMA's suggestion, the May Yelp Subpoena—focused on Ad Tech-related topics—did not seek "information collected by Paul Weiss," Br. 10, and it did not mention Paul, Weiss, Mr. Kanter, Mr. Kressin, Mr. Meador, or any other Paul, Weiss attorneys.  *See* Dkt. 460, Ex. D at 28-32.  Moreover, as to the sole Request that movants identify, Request No. 19 (Br. 10), Yelp unequivocally objected to the subpoena as seeking documents that are "***not relevant to the matters at issue*** in this case."  Ex. 4 [Yelp Resp. to May Subpoena] at 14.

  In August, Google counsel other than Paul, Weiss served subpoenas on Yelp and NMA concerning work that Jonathan Kanter performed on their behalf.  *See supra* Part II.D.  Yelp and NMA asserted in their respective responses and objections that "the information sought by [the] Subpoena … is ***all irrelevant to the claims and defenses in this case***."  Ex. 3 [NMA Resp.] at 2; *see also id.* at 4-5; Ex. 5 [Yelp Resp. to August Subpoena] at 2, 4-5.  Yelp and NMA cannot now claim that such documents in fact establish that the matters are substantially related.  Moreover, neither Yelp nor NMA produced documents responsive to the August subpoenas and, as discussed above, those subpoenas are no longer pending.

  ***Finally***, even if Yelp or NMA transmitted data to Mr. Kressin relevant to this matter—and they have not come forward with anything but unspecific, conclusory statements claiming that they did—no lawyer at Paul, Weiss representing Google has accessed any Yelp or NMA

documents on Paul, Weiss's document management system, and each such lawyer is screened from ever accessing such documents.  Ex. 1 [PW Decl.] ¶¶ 19-20.

### C. The Conflict Alleged by Yelp and NMA Does Not Justify Paul, Weiss's Disqualification

For the reasons set forth above, Paul, Weiss has not violated Virginia Rules 1.9(a) or 1.10(b).  But even a violation of Rules 1.9(a) or 1.10(b) "does not automatically result in disqualification of counsel."  *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, 436 F. Supp. 3d 870, 874 n.5 (E.D. Va. 2020).  The severe sanction of disqualification has, "with rare exceptions[,] … been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests … undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly[,] (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, thus giving his present client an unfair advantage."  *Reese*, 894 F. Supp. 2d at 674 (quoting *Bd. of Educ. of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  Neither prong is satisfied here.

*First*, "[t]here is nothing to suggest" that Paul, Weiss's past representation of Yelp and NMA has "compromised its ability to represent" Google in this case "with vigor."  *Reese*, 894 F. Supp. 2d at 674.  Paul, Weiss has led affirmative case development, trial strategy and preparation, and overall strategy in this case for Google.  Ex. 2 [Google Decl.] ¶ 13.  The team has submitted briefs and argued motions, and the record clearly reflects Paul, Weiss's zealous representation of Google.  *E.g.*, Dkts. 252, 282, 292, 305, 375, 408.  Paul, Weiss attorneys have taken the lead in multiple key areas, including conducting all of the discovery of the eight Federal Agency Advertisers, taking all of their depositions (both witnesses in their individual capacity and corporate designees) and twice moving to compel disclosure of further information.  Ex. 2 [Google Decl.] ¶ 13.  Paul, Weiss has also taken the corporate deposition of the United States and

depositions of multiple key third parties. *Id.* In addition, Paul, Weiss has taken the lead on multiple defensive discovery issues, including those relating to source code and finance-related topics, and it is defending several Google witnesses at deposition, both in their individual and corporate designee capacities. *Id.* In short, nothing about Paul, Weiss's past representation of Yelp or NMA, which ended in 2020 and was almost entirely performed by lawyers who have since left the firm, provides any basis for doubting that Paul, Weiss will continue to represent Google in this case with the utmost vigor. Ex. 1 [PW Decl.] ¶ 26.

**Second**, as discussed above, Yelp and NMA have not claimed, and they cannot claim, any credible risk of trial taint or any credible concern that Paul, Weiss would use Yelp's or NMA's confidential information in this litigation. *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F. Supp. 2d 572, 579 (W.D.N.C. 1998) ("[T]he ultimate purpose of granting a motion to disqualify counsel is to eliminate the threat that the litigation will be tainted."). No one on the Paul, Weiss team representing Google ever did any work for Yelp or NMA related to Google's Ad Tech business or received any confidential information concerning Yelp or NMA relevant to Google's Ad Tech business. Ex. 1 [PW Decl.] ¶¶ 18, 23-24. Thus, there is "nothing to suggest" that Paul, Weiss "has gained an unfair advantage through access to privileged information obtained through its prior representation" of Yelp or NMA. *Reese*, 894 F. Supp. 2d at 675; *see also Silver Chrysler Plymouth*, 518 F.2d at 757 ("To apply the remedy [of disqualification] when there is no realistic chance that confidences were disclosed would go far beyond the purpose of" disqualification cases, where the attorney was only involved "briefly on the periphery for a limited and specific purpose relating solely to legal questions."); Ex. 1 [PW Decl.] ¶¶ 18-25. Mere "'[s]peculation regarding the divulging of client confidences will not suffice to grant a motion to disqualify.'" *Calamar Enters., Inc. v. Blue Forest Land Grp., LLC*, 222 F. Supp. 3d 257, 263 (W.D.N.Y. 2016).

20

***Finally***, a court must take account of various "practical considerations" bearing on disqualification, *Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1201 (4th Cir. 1978), such as whether the motion to disqualify was filed "in a timely manner" and "whether disqualification would result in prejudice to the nonmoving party," *Advanced Training Grp.*, 436 F. Supp. 3d at 875; *Reese*, 894 F. Supp. 2d at 676.

Here, Yelp and NMA unreasonably delayed filing their motion.  Yelp and NMA knew of Paul, Weiss's representation of Google by May 6, 2023, when Paul, Weiss lawyers entered their appearance.  Yelp and NMA were represented not just by sophisticated counsel but by counsel Mr. Kressin, who knew exactly what work Paul, Weiss did for Yelp and NMA before he and Mr. Kanter left the firm in 2020.  The four-and-a-half-month delay in filing this motion has all the hallmarks of a "'procedural weapon[]' to advance purely tactical purposes." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 110 (D.D.C. 2013) (citation omitted); *see also Starkes v. Flechner*, 2012 WL 1156404, at *2 (S.D. Fla. Apr. 6, 2012) (holding that four-month delay constitutes "independent reason to deny" disqualification motion); *Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975) (five-month delay, where motion appeared to be "held in reserve until the most expedient time came along to file it" justified denial of disqualification motion); *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, 2022 WL 14664715, at *3 (W.D. Wash. Oct. 25, 2022) (holding that five-month delay constitutes waiver where parties had engaged in "significant motion practice" and "counsel has devoted significant time to litigating this case and has obtained significant rulings," and finding "the disqualification motion to be a thinly veiled litigation tactic"); *In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*, 2010 WL 1257598, at *10 (S.D. Ohio Mar. 29, 2010) (five-month delay justified denial of disqualification motion);

*Montalvo v. Judge*, 776 N.W.2d 100 (Wisc. Ct. App. 2009) (same); *In re Modanlo*, 342 B.R. 230, 237 (D. Md. 2006) (same).

In an apparent effort to explain their delay, Yelp, NMA, and Mr. Kressin assert that they previously did not appreciate the relevance of the legal work Mr. Kanter and Mr. Kressin did for Yelp and NMA before they left Paul, Weiss in 2020.  Yelp, NMA, and Mr. Kressin knew perfectly well what legal work Mr. Kanter and Mr. Kressin performed, and objected to Google's subpoenas because that work was not relevant to this case.  In any event, instead of explaining that work, they state that they "recently learned through Google's filings and subpoenas Google has issued that Google views Yelp and NMA as adverse to Google in this litigation."  Br. 1.  Again, Yelp and NMA provide no details of work performed by their counsel and why they could not have had any concerns based on such work over four months ago when Paul, Weiss entered its appearance.

Moreover, Google would be severely prejudiced if its lead trial counsel were disqualified at this late stage in this complex, consequential, fast-moving case.  "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary."  *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006).  Here, disqualification would materially harm Google's trial preparation and presentation of its case at trial.  *See* Ex. 2 [Google Decl.] ¶¶ 13-15.  Google retained the Paul, Weiss team because of the team's "unparalleled antitrust trial experience, experience in the Eastern District of Virginia, and experience working with Google—experience that would be extremely difficult, if not impossible, for Google to replicate in the timeframe set for this case."  *Id.* ¶ 12.  Depriving Google of Paul, Weiss's expertise and experience in antitrust litigation and trial practice and its deep familiarity with this case would be highly prejudicial to Google.  *See id.* ¶¶ 12-15; *Reese*, 894 F. Supp. at 676

(finding disqualification "would deprive … a [party] not only of its choice of counsel, but of counsel with specifically relevant experience and expertise").

The fact that Google is represented by other counsel in this case, as well as counsel in separate antitrust cases, would not cure the prejudice to Google from the disqualification of Paul, Weiss. *See Turner v. AIG Domestic Claims, Inc.*, 823 F. Supp. 2d 899, 908 (D. Neb. 2011) (reversing magistrate judge's disqualification of counsel because judge "gave short shrift" to hardship in a "very complex" case where counsel had "invested much time and money understanding and investigating" issues and where "it would be hard and very expensive (not to mention wasteful)" for others "to replicate those efforts"); *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals*, 2011 WL 6088625, at *10 (E.D. Pa. Dec. 7, 2011) (declining to disqualify counsel because it would "disrupt the flow of the litigation" and "new counsel would require several weeks, if not months … to prepare for trial" given "complexity" of issues and "extensive discovery"). The Freshfields and Axinn firms cannot fill the role Paul, Weiss is serving in this matter due to its unique role and Freshfield's and Axinn's active defense of Google in the numerous other pending Ad Tech matters. Ex. 2. [Google Decl.] ¶ 15. Removing Paul, Weiss—Google's lead trial counsel in this case—"would prejudice Google's ability to present a vigorous defense and would put Google at a significant disadvantage" in its defense of a complex and significant antitrust case for the company. *Id.*

## V.   CONCLUSION

For all of these reasons, the motion to disqualify Paul, Weiss should be denied.

Respectfully submitted,

/s/   *Whitney D. Russell*

WHITNEY D. RUSSELL (Va. Bar No. 98872)
HOWARD M. SHAPIRO (*pro hac vice pending*)
BRUCE M. BERMAN (*pro hac vice pending*)
DAVID P. YIN (*pro hac vice pending*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
whitney.russell@wilmerhale.com
howard.shapiro@wilmerhale.com
bruce.berman@wilmerhale.com
david.yin@wilmerhale.com

*Counsel for Paul, Weiss, Rifkind, Wharton &*
*Garrison LLP*

24