**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **United States of America, *et al.*,** ) | |
| Plaintiffs, ) | |
| ) | |
| **v.** ) | **Case No. 1:23cv00108 (LMB-JFA)** |
| ) | |
| **Google LLC,** ) | |
| Defendant. ) | |

**NON-PARTIES YELP INC.'S AND NEWS/MEDIA ALLIANCE'S REPLY
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISQUALIFY
<u>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP</u>**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... iii
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
    I.    Yelp and NMA are Materially Adverse to Google in this Case ........................................... 2
    II.    Paul Weiss' Prior Representation of Yelp and NMA was Substantially Related to This Case .................................................................................................................................. 7
    III.    Paul Weiss Cannot Skirt Ethical Obligations Based on Claimed Prejudice to Google or the Timing of this Motion ................................................................................................... 15
    CONCLUSION ......................................................................................................................... 17

**TABLE OF AUTHORITIES**

**CASES**

*Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563 (E.D. Va. 2016) ........................ 2, 7, 8, 15, 17

*Davis v. Nationwide Mut. Fire Ins. Co.*, 811 F. Supp. 2d 1240 (E.D. Va. 2011) ........................... 12

*In re Asbestos Cases*, 514 F. Supp. 914 (E.D. Va. 1981) ........................................................ 14, 15

*Redd v. Shell Oil Co.*, 518 F.2d 311 (10th Cir. 1975) .................................................................... 17

*Salmons, Inc. v. First Citizens Bank & Tr. Co.*, 2011 WL 4828838 (E.D. Va. Oct. 11, 2011) ........ 8

*Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591 (E.D. Va. 2009) .......................... 6, 17

*Simmons v. Clarke,* No. 2:14-CV-309, 2015 WL 11111058 (E.D. Va. June 17, 2015) ................... 8

*Siraj v. Bhatti*, 106 Va. Cir. 194, 2020 WL 10458178 (Loudoun Oct. 22, 2020) ........................... 6

*Stretchline Intell. Properties LTD. v. H&M Hennes & Mauritz LP*, No. 2:10-CV-371, 2015 WL 5175196, (E.D. Va. Sept. 3, 2015) ...................................................................................... 12

*Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469 (E.D. Va. 2010) ................................................................................................................7, 11, 15

*Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724 (E.D. Va. 1990) ............ 5, 6, 8, 14, 17

*United States v. Earley*, 2018 WL 4608497 (S.D.W. Va. Sept. 25, 2018) ....................................... 3

**INTRODUCTION**

Paul Weiss' Opposition Brief underscores why disqualification is necessary here. Paul Weiss invites the Court to invert the applicable legal standard for disqualification and rule that Google—which has access to many other lawyers—will be prejudiced if it is not allowed to be represented by a conflicted law firm. Paul Weiss must be disqualified because it failed to sufficiently vet its conflicts of interest obligations or obtain the conflicts waivers necessary before embarking—with specific, confidential information of adverse clients in tow—on its representation of Google.

Paul Weiss accuses Yelp and NMA of unreasonably delaying in filing the present Motion, but that is not the case. Yelp and NMA were not aware of Google's intention to attack their credibility using their own confidential information (which is in Paul Weiss' possession) until Google issued subpoenas to them at the close of fact discovery and then told this Court that Yelp and NMA were adverse, biased third parties that played a role in DOJ's decision to bring this case.

Just a few weeks ago, Google argued plainly and vociferously that Yelp's and NMA's advocacy in opposition to Google's monopolistic conduct is substantially related to this litigation and that Google's interests are materially adverse to Yelp, NMA, and others who have engaged in such advocacy. In its August 31, 2023 Opposition to the United States' Motion for Partial Judgment, Google told this Court that, "Yelp [and others] retained AAG Kanter … to persuade DOJ to" bring this case. Dkt. 453-1 at 7.

Now Google's counsel, Paul Weiss, directly contradicts Google's filings and statements it made to this Court. Paul Weiss argues that its representation of Yelp and NMA was somehow *not* adverse to Google and *not* substantially related to the matters in this case: "Paul, Weiss's work for these former clients involved only issues that are not part of this case." Dkt. 477 at 2 ("PW Opp.").

1

The truth is that Google's position is correct insofar as Yelp and NMA are materially adverse to Google in this case and Paul Weiss' representation of Yelp and NMA was substantially related to this case. Those facts did not support Affirmative Defenses related to Due Process or Selective Enforcement, but those facts require that Paul Weiss be disqualified as Google's counsel.

As Yelp and NMA demonstrated in their original memorandum and as Paul Weiss and Google have admitted in their filings, Paul Weiss' representation of Google creates a conflict of interest that "presents an inescapable appearance of impropriety" and "require[s] disqualification." *Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 575 (E.D. Va. 2016) (Morgan, J.). Google is materially adverse to Yelp and NMA in this litigation. Paul Weiss previously represented Yelp and NMA in the DOJ investigations that resulted in this litigation. Paul Weiss still possesses Yelp's and NMA's confidential information collected in connection with those investigations. Google seeks to obtain that information in this litigation. Attorneys that worked for Yelp and NMA concerning those investigations are still employed by Paul Weiss. Paul Weiss has even now revealed that some of those attorneys perform work for Google in this litigation.

## ARGUMENT

### I. Yelp and NMA are Materially Adverse to Google in this Case

Paul Weiss states in its Brief that "Google's interests in this case are not "materially adverse" to Yelp's or NMA's." PW Opp. at 1. This claim contradicts the facts and what Google previously represented to this Court.

#### a. Google Admits that Yelp and NMA are Adverse to Google

Paul Weiss mischaracterizes Yelp's and NMA's position to be that "Google, and any counsel it selected, would be "adverse" to thousands of other non-parties who may have a generalized financial interest in the outcome of the case." PW Opp. at 1. But Google did not refer

2

to "thousands of other non-parties" by name in its Opposition to DOJ's Motion for Partial Judgment on the Pleadings. Google named a set of companies that it alleged were adverse to Google *in this litigation*. Google included Yelp and NMA on that list.[1]

Google told this Court in its filing that Yelp is one of "Google's rivals" and that Yelp and NMA had "roles in orchestrating this lawsuit." Dkt 453-1 at 2-3. Google thus seeks to determine "the extent to which AAG Kanter maintains contact with […] News Media Alliance." Dkt. 453-1 at 11. Google seeks to inquire how long Yelp and NMA have "been lobbying the government to bring this case" and to explore their "motivations and biases" that go "to the heart of their credibility as witnesses in this case." Dkt 435 at 11. To challenge Yelp's and NMA's credibility plainly requires Google and its counsel to take a materially adverse position to Yelp and NMA. When counsel is required by their representation of a current client to challenge the credibility of a former client they must be disqualified. *United States v. Earley*, No. 5:18-CR-00026-09, 2018 WL 4608497, at *6 (S.D.W. Va. Sept. 25, 2018) (disqualifying defendant's counsel because the law firm previously represented "a potential [third-party] adverse witness whose credibility may be at stake.").

Paul Weiss cannot disclaim Google's admissions for purposes of opposing this Motion. If Paul Weiss' version of history were true it would mean Google had no basis for representing to this Court that Yelp attempted "to persuade DOJ to sue Google for alleged anticompetitive conduct affecting digital advertising." Dkt. 453-1 at 7.[2] In effect, Paul Weiss has chosen to defend its representation of Google by directly contradicting prior statements Google has made to this Court.

---

[1] Yelp and NMA note that AAG Kanter may have had many other clients that were involved in DOJ investigations surrounding Google, but Google specifically chose to name Yelp and NMA in its filing and to subpoena Yelp and NMA regarding their involvement in this case.

[2] Paul Weiss may attempt to argue that the use of "digital advertising" in Google's Opposition was not meant to cover the topic of this case, but such an argument would be fruitless. Google's Opposition cites depositions from this case where Paul Weiss attorneys use the same phrase "digital advertising" over 35 times to refer to the products at issue in this case. Dkt. 453-14, 15, 16, 17.

3

This alone would be a conflict of interest worthy of disqualification. Virginia Rule 1.7(a) ("[A] lawyer shall not represent a client if … the representation … will be materially limited by a personal interest of the lawyer.").

### b. Dismissal of Google's Affirmative Defenses has no Bearing on this Motion

That this Court granted DOJ's Motion for Partial Judgment does not change the analysis regarding Paul Weiss' conflict of interest. The Court did not grant DOJ's Motion because it concluded that AAG Kanter's prior clients were not adverse to Google. Yelp's and NMA's adversity to Google is irrelevant to whether Google may raise certain defenses of its conduct.

Moreover, dismissal of Google's Affirmative Defenses does not stop Google from arguing at trial that third-party witnesses are biased and motivated by their adverse posture to Google in this case. The Court expressly permitted Google to advance those arguments *after* dismissing the Affirmative Defenses. Dkt. 435 at 11 ("[T]o the extent that any competitor is envisioned to be a witness in the case, you have a right to probe aspects of that witness' possible bias or prejudice."). Google has stated that it continues to seek to obtain information that would "cast light upon the biases of AAG Kanter's former clients [including Yelp and NMA], many of which are percipient fact witnesses in this litigation given their status as industry participants." Dkt. 453-1 at 10. Nothing in the August Yelp Subpoena or the NMA Subpoena limits the requests to information relevant to Google's now-rejected 10th and 13th Affirmative Defenses. Those defenses are not mentioned in either subpoena.

Google itself told the Court that the information being sought by the August Yelp Subpoena and the NMA Subpoena was not intended to support its now-rejected Affirmative Defenses. Dkt. 435 at 10-11 ("We are still seeking discovery on these topics *quite apart from the affirmative defense* with *especially the third parties* going to their motivation, their bias. They are the third-

4

party complainants on whom the Department of Justice has based its complaint.") (emphasis added). Therefore, the dismissal of two of Google's Affirmative Defenses does not eliminate the risk that Paul Weiss and Google might use Yelp's and NMA's highly confidential and privileged information to bolster Google's attacks on Yelp's and NMA's credibility. Paul Weiss cannot be permitted to choose between "the use of confidences gained from a former client to the detriment of that client or the failure to use information favorable to the present client in order to protect the confidentiality of the former client." *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 728 (E.D. Va. 1990) (Clarke, J.).

### c. Third Parties can be Materially Adverse to Litigants

Paul Weiss claims that under the Virginia Rules of Professional Conduct non-parties to a case can never have "materially adverse" interests to the parties in that case. Paul Weiss offers no authority in support of that proposition because it is incorrect.[3] In reality, Virginia Rule 1.7 contemplates many scenarios where parties can be "materially adverse" but not direct opponents in litigation. Va. Rule 1.7, cmt. 23 (Clients' interests are materially adverse where a lawyer is "representing multiple defendants in a criminal case"); cmt. 24 (lawyers should not represent two "parties having antagonistic positions on a legal question that has arisen in different cases" if the "representation of either client would be materially limited."); cmt. 29 ("a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated."). In fact, the Virginia Rules make clear that even civil parties *on the same side of litigation* can be "materially adverse," prohibiting the lawyer from representing both

---

[3] Paul Weiss does cite to ABA Formal Opinion 99-415 for the proposition that "[O]nly direct adversity of interests meets the threshold 'material adversity'"), but Paul Weiss fails to recognize that ABA Formal Opinion 99-415 is based on outdated versions of the ABA Model Rule of Professional Conduct and has been discounted by more recent Formal Opinions.  ABA Formal Op. 497 (Feb. 10, 2021) ("The sentence relied upon in ABA Op. 99-415 was deleted" and accordingly "[w]hile material adverseness is present when a current client and former client are directly adverse, *material adverseness also can be present where direct adverseness is not*." (emphasis added).

5

clients. Va. Rule 1.7, cmt. 29 ("Common representation" may fail where a lawyer "represent[s] multiple clients in the same matter" but "potentially adverse interests cannot be reconciled."). Courts in this District have repeatedly held the same. *Tessier*, 731 F. Supp. 724 (granting Defendant's motion to disqualify counsel of another Defendant) *see also Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591, 603 (E.D. Va. 2009) (Payne, J.) (In a case where multiple defendants represented by the same counsel could seek to inculpate one another as a defense "the nature of the conflicts is such that disqualification is necessary to ensure and preserve trust in the integrity of the bar."). Virginia state courts have recognized that third parties to a litigation can be materially adverse to a party which can trigger the need to disqualify counsel if there is a conflict of interest under the Virginia Rules. *Siraj v. Bhatti*, 106 Va. Cir. 194, 2020 WL 10458178 (Loudoun Oct. 22, 2020) (finding that a third-party witness in a divorce proceeding had "interests [that] are materially adverse to" one of the parties and disqualifying counsel that had previously represented the third party).

Although ABA Formal Opinions "should not be binding in Virginia," they "can be helpful in understanding Virginia's Rules." Virginia Rules of Professional Conduct, Scope. ABA Formal Opinion 497 is particularly relevant to this case. In that opinion, the ABA concluded that "[w]hen a lawyer represents a current client challenging the lawyer's own prior work done for a former client on the same or a substantially related matter, the situation creates a materially adverse conflict." ABA Formal Opinion 497 (Feb. 10, 2021) (citing a case where "plaintiff's lawyer [was] disqualified because case "may require her to interpret" an agreement drafted by one of her partners *for a non-party to the litigation*.") (emphasis added). The ABA concluded that "Material Adverseness" exists even "when the former client is not a party or a witness in the current matter" when the former client has identified "some specific material legal, financial, or other identifiable

6

concrete detriment that would be caused by the current representation." *Id.*

To find in Paul Weiss' favor regarding material adversity the Court would have to conclude that when a client directs its outside counsel to encourage government enforcers to investigate an alleged monopolist on its behalf that the client is not adverse to the alleged monopolist in any resulting litigation and the outside counsel is not conflicted from representing the alleged monopolist. That would be a perverse result and contrary to the Rules' purpose, which is to prevent lawyers from switching sides against previous clients in related matters.

## II. Paul Weiss' Prior Representation of Yelp and NMA was Substantially Related to This Case

Paul Weiss makes several arguments as to why its prior representation of Yelp and NMA is not "substantially related" to this case. Each is belied by the facts and Google's own admissions.

### a. Paul Weiss Misconstrues the Substantially Related Test

The first argument Paul Weiss asserts in its Brief is that its prior representation of Yelp and NMA cannot meet the "substantially related" test because Yelp and NMA cannot prove that "any Paul, Weiss attorney provided Yelp or NMA legal advice concerning Google's Ad Tech business, or received confidential information from Yelp or NMA concerning Google's Ad Tech business." PW Opp. at 17. That claim is not only incorrect factually, but it also misconstrues the standard for determining if prior representation was "substantially related" to the current matter. As explained more fully in Yelp's and NMA's original memorandum, "substantially related" cases are those where "the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Audio MPEG, Inc.*, 219 F. Supp. 3d 563, 570; *Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469 at 473 (E.D. Va. 2010) (Payne, J.) ("the [substantially related] test encompasses more than situations in which the issues are indistinguishable … if the lawyer could have obtained confidential information in the first

7

representation that would have been relevant in the second ... then the matters are considered to be substantially related.")(citations omitted); *Tessier*, 731 F. Supp. at 730-1 (cases can be "substantially related" even if they involve "different time frames, different causes of action, different legal theories, and different parties" provided that the conflicted law firm "might have acquired information which may work to their former client's detriment."). Paul Weiss need not have obtained confidential information "concerning Google's Ad Tech business" for the information to be "relevant" to this case; information related to "witness[] credibility is 'highly relevant' to disputed issues" in a case. *Salmons, Inc. v. First Citizens Bank & Tr. Co.*, No. 2:10CV72, 2011 WL 4828838, at *2 (E.D. Va. Oct. 11, 2011) (Doumar, J.) *see also Simmons v. Clarke,* No. 2:14-CV-309, 2015 WL 11111058, at *11 (E.D. Va. June 17, 2015)*, report and recommendation adopted,* No. 2:14-CV-309, 2015 WL 11111059 (E.D. Va. Aug. 3, 2015) (Leonard, M.J.) (information is "relevant" if used "to assess the credibility of ... a witness."). Even if Paul Weiss could demonstrate that it never received confidential information related to the markets at issue in this case, its prior representation of Yelp and NMA would still be substantially related. Paul Weiss gained information from Yelp and NMA that its current client, Google, could use to attack Yelp's and NMA's credibility as witnesses. That is the exact information being sought by Google in the August Yelp Subpoena and the NMA Subpoena.[4]

### b. Yelp and NMA have Demonstrated a Substantial Relationship

Apart from applying the wrong legal standard, Paul Weiss' claims about the matters being unrelated are simply false. As stated in Yelp's and NMA's opening Memorandum, Yelp and NMA

---

[4] Paul Weiss notes in their Brief that the August Yelp Subpoena and the NMA Subpoena were issued by "Google counsel other than" Paul Weiss. PW Opp. at 18. The fact that the subpoenas were issued by other law firms has no bearing on the conflict of interest. The conflict exists because Paul Weiss "*possesses* confidential information which could harm" Yelp or NMA and does not require Paul Weiss to issue the subpoena to Yelp and NMA for that information. *Audio MPEG, Inc.*, 219 F. Supp. 3d at 575 (emphasis added).

8

provided Paul Weiss with data related to *their participation* in the digital advertising market at issue in this case, including "data pertaining to Yelp's digital advertising products" and "data breaking out revenue derived from advertising sold by NMA's member publications." Dkt. 460 at 5-6. That fact alone makes Paul Weiss' representation substantially related to this case.

Further, both Yelp and NMA stated that Paul Weiss represented them with respect to "government antitrust investigations into Google." Dkt 460 at 5-6. Paul Weiss admits that DOJ sought information regarding advertising technology in *both* DOJ investigations that prompted this case being filed. PW Opp. at 6. As part of DOJ's investigations, Paul Weiss responded on behalf of Yelp to a Civil Investigative Demand seeking "all documents or data relating to competition in …Digital Advertising," which the CID defined as "including but not limited to video Digital Advertising, display (desktop and mobile) Digital Advertising … and any other advertising categorized as Digital Advertising." *See* Ex. A at 2 ("Yelp CID"); Ex. B at 2 ("Kressin Reply Decl.").

As part of their representation of Yelp and NMA, Paul Weiss attorneys also advocated to state and federal enforcers, explaining how Google's digital advertising and ad tech conduct violates the antitrust laws. Kressin Reply Decl. at 1. Most of those advocacy efforts remain confidential, but there are some public documents showing that the subject matter of the advocacy is substantially identical to the subject matter of this litigation.[5] Most notably, on June 15, 2019 NMA submitted public comments *to the DOJ* regarding its Public Workshop on Competition in Television and Digital Advertising. Mr. Kressin, still employed at Paul Weiss at the time, advised NMA in drafting those comments.[6] EX. C; Kressin Reply Decl. at 2. In its comments, NMA

---

[5] Yelp and NMA can provide any privileged and confidential documents for the Court to review in camera.
[6] NMA has attached these comments as an Exhibit for the Court's convenience, but they can be found publicly online: *Comments of News Media Alliance Before the U.S. Department of Justice Regarding the Public Workshop on Competition in Television and Digital Advertising* (June 15, 2019), http://www.newsmediaalliance.org/wp-

9

alleged:

> The ad tech giants have been able to command a growing share of online advertising revenues because the intermediary layer is increasingly concentrated in the hands of a few dominant entities, and one entity in particular: Google.
>
> The term "ad tech" does not refer to any one technology product, but rather it is a group of interconnected software technologies that perform different functions. *But at each point in the "ad tech stack," Google controls the market-leading, if not dominant, product.* As a result, almost every digital ad that is bought-and-sold through the ad tech layer goes through one of Google's ad tech software products at some point, and Google is able to demand a cut of the revenue involved.

(emphasis added). NMA went on to argue that "[t]he Department of Justice should scrutinize Google's conduct and acquisitions" because "Google has not amassed its market power in the ad tech space through mere business acumen." *Id.* More specifically, NMA argued that "the Department should investigate specific acts of anticompetitive conduct, including *tying together different ad tech products*…." *Id.* (emphasis added). That is precisely the conduct at issue in this litigation.

Paul Weiss attorneys also helped NMA draft separate comments to the Federal Trade Commission almost a year earlier. Kressin Reply Decl. at 2. In those August 20, 2018 public comments to the Federal Trade Commission's Hearings on Competition and Consumer Protection in the 21st Century, NMA alleged that Google "forces publishers to adopt practices… that benefit Google's monopoly positions in search *and ad tech*." Ex. D[7] (emphasis added).

A third example of Paul Weiss' advocacy efforts involving Google's digital advertising

---

content/uploads/2019/07/News-Media-Alliance-Comment-to-DOJ-on-Competition-in-Television-and-Digital-Advertising.pdf.

[7] NMA has attached these comments as an Exhibit for the Court's convenience, but they can be found publicly online: News/Media Alliance, *Comments of News Media Alliance Before the Federal Trade Commission Regarding the Hearings on Competition and Consumer Protection in the 21st Century* (August 20, 2018), https://www.newsmediaalliance.org/wp-content/uploads/2018/08/vF_NMA-FTC-Hearings-Comments-FINAL.pdf

10

practices was relied upon by Google in its Opposition to the DOJ's Motion for Partial Judgment. In its Opposition, Google attached the cover letter to a Yelp white paper submitted to DOJ as an example of AAG Kanter advocating for the DOJ to investigate Google on behalf of Yelp. Paul Weiss even admits that an unnamed attorney on the Google trial team in this case actually worked on *the same white paper*.[8] See Dkt. 453-1 at 7-8, n.24, Ex. 9 (Citing Ex. 9 (cover email transmitting "white paper" on April 14, 2020) for the proposition that Yelp "retained AAG Kanter to persuade DOJ to sue Google."); Dkt. 477-1 (Unnamed Paul Weiss attorney's work related "to a white paper … Mr. Kanter transmitted on April 14, 2020."). If that white paper is irrelevant to this litigation, then there would have been no basis for Google to rely on it in its Opposition Brief to argue that Yelp was adverse to Google in this case.

Yelp and NMA transmitted confidential data and information to Paul Weiss in connection with Paul Weiss' advocacy efforts on their behalf. Paul Weiss has admitted that it still retains Yelp's and NMA's confidential documents. Dkt. 477-1 at 3. Because it cannot deny possessing these materials, Paul Weiss resorts to calling Yelp's and NMA's claims "unspecific" and "conclusory." PW Opp. at 18. Former clients supporting a motion to disqualify are not required to provide the Court with comprehensive, detailed inventories of every document or piece of data they sent to their attorneys or how that information may be used against them. *Sunbeam Prod., Inc.*, 727 F. Supp. 2d at 475 ("Because of the difficulty, if not impossibility, of proving what client confidences were made known to the lawyer, the law does not require a party moving for disqualification to make any showing of exchanged confidences, but *rather irrebuttably presumes such exchange of confidences in any attorney-client relationship*.") (emphasis added).

---

[8] This alone merits disqualification of Paul Weiss. Virginia Rule 1.10(a) clearly states "While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so."

11

### c. Paul Weiss Provides no Evidence to Support its Arguments

Paul Weiss offers nothing to rebut the fact that its prior representation was "substantially related" to this matter apart from the declaration of an attorney who never worked on Yelp or NMA matters. That Declaration claims that the work done by Paul Weiss "did not concern Google's Ad Tech business." Dkt. 477-1 at 4. First, this assertion is false, as proven by the publicly available documents discussed above which were drafted in part *by Paul Weiss*. Kressin Reply Decl. at 2. Second, the assertion is irrelevant to whether a conflict exists; Google can seek to (and expresses a desire to) impugn Yelp's and NMA's credibility through their actions that are unrelated to "Google's Ad Tech business," such as by showing they directed their counsel (Paul Weiss) to encourage DOJ to bring litigation against Google. Third, many of the assertions in the Declaration are inadmissible hearsay and Paul Weiss cannot rely on them here. Much of the Declaration relies on information allegedly derived from conversations with other Paul Weiss attorneys rather than the Declarant's personal knowledge. *Davis v. Nationwide Mut. Fire Ins. Co.*, 811 F. Supp. 2d 1240, 1252 (E.D. Va. 2011) (Stillman, M.J.) (holding that a declaration relaying what another person told the declarant was inadmissible hearsay); *see also Stretchline Intell. Properties LTD. v. H&M Hennes & Mauritz LP*, No. 2:10-CV-371, 2015 WL 5175196, at *7 (E.D. Va. Sept. 3, 2015) (Jackson, J.) (holding that statements in a Declaration regarding information another person "allegedly told" the Declarant are hearsay where Declarant "lacks personal knowledge of the matters allegedly" discussed). If the remaining Paul Weiss attorneys who worked on Yelp and NMA matters believe their work was not related to digital advertising or ad tech issues or do not "recall ever receiving any confidential information from Jonathan Kanter, Brandon Kressin, or anyone else concerning Yelp or NMA" then they should have filed declarations saying so.[9] Dkt.

---

[9] However, had Paul Weiss attorneys filed Declarations to that effect it still would not resolve the conflict of interest because Paul Weiss cannot deny that it possesses Yelp's and NMA's confidential information related to this case.

477-1 at 4-5.

Even if the Court could rely on the Declaration, it provides no description of the documents Paul Weiss still possesses and therefore provides the Court with no basis to determine whether Yelp's and NMA's confidential information in Paul Weiss' possession is relevant to this case. After the hearsay and baseless assertions from an uninvolved Declarant are removed Paul Weiss is left only with an admission that an attorney that currently performs work for Google previously worked on Yelp's advocacy to convince DOJ to bring litigation against Google. Notably absent from Paul Weiss' Brief and supporting Declaration is any explanation as to why an ethical screen was not in place to prevent lawyers who worked on Yelp's advocacy from being assigned to work on Google's trial team here.

Importantly, Yelp and NMA have no recourse to investigate the unsubstantiated claims made by Paul Weiss in its Brief and supporting Declaration. As third parties to this matter, Yelp and NMA cannot issue subpoenas to Paul Weiss or depose the relevant unnamed attorneys referenced. Nor can Yelp and NMA rely on their internal records to investigate these claims. The invoices issued by Paul Weiss to Yelp and NMA did not contain a complete list of attorneys that accessed Yelp's and NMA's confidential information or narratives describing all of the work performed by those attorneys. Nor do they reflect attorneys who may have not done work for Yelp or NMA but learned their confidential information through regular internal meetings of Paul Weiss' antitrust group. Only Paul Weiss could know the identity of all attorneys who have or had access to Yelp's and NMA's confidential information, but Paul Weiss has declined to provide that information here.

### d. Paul Weiss Possesses Materials Sought by the August Yelp and NMA Subpoenas

Finally, Paul Weiss argues that the information sought by the August Yelp Subpoena and

NMA Subpoena is not "substantially related" to this litigation and therefore no conflict of interest exists. Absent from Paul Weiss' Brief is any discussion of the fact that Google's subpoenas sought Paul Weiss's invoices, engagement letters, and privileged communications with Yelp and NMA. It remains undisputed that Google has shown a desire to gain access to these documents through their subpoenas because Google views these documents as "substantially related" to this case. Google has informed this Court that this desire survived the dismissal of their affirmative defenses. Dkt. 435 at 10-11. Paul Weiss cannot (and does not) dispute that its current client would benefit from peering into the privileged and confidential communications of its prior clients, Yelp and NMA. Paul Weiss cannot be allowed to continue to represent Google because to do so would require Paul Weiss to divulge the confidences of its past clients. That is exactly what the rules of professional conduct are in place to prevent. *Tessier*, 731 F. Supp. at 728.

Paul Weiss contends that there is no risk that Yelp's and NMA's confidential information will be disclosed to Google because "[n]either Yelp nor NMA produced any documents in response to the August Yelp or NMA Subpoenas; fact discovery is over, and Google is no longer seeking any documents from either of them in this case." PW Opp. at 11. But Paul Weiss omits the key fact that underscores why their representation of Google is a conflict of interest. Google does not need fact discovery to obtain the information sought in the August Yelp Subpoena or the NMA Subpoena. Google can obtain that information *from Paul Weiss* or instruct Paul Weiss to utilize that information to Google's benefit and the detriment of Yelp and NMA. Paul Weiss can claim that it would not obey any such instructions from Google, but clients should not have to rely on the promises of their former attorneys now working for an adverse party.[10] Yelp and NMA are

---

[10] Paul Weiss argues that no current Paul Weiss attorneys can access Yelp's and NMA's information because they are "screened from ever accessing those documents." PW Opp. at 19. Paul Weiss cannot cure its conflict by promising the Court no transfer of confidential information will take place. *See* Dkt. 460 at 12-13; *In re Asbestos Cases*, 514 F.

14

"justifiably uneasy about the potential breach of its confidences" and the Rules of Professional Conduct do not require them to suffer "the risk that confidential information would pass from" Paul Weiss to Google. *Audio MPEG, Inc.*, 219 F. Supp. 3d at 570, 575.

### III. Paul Weiss Cannot Skirt Ethical Obligations Based on Claimed Prejudice to Google or the Timing of this Motion

After admitting that Paul Weiss' representation of Google satisfies all elements of a conflict of interest that requires disqualification, Paul Weiss argues that disqualification is improper because it would prejudice Google. Paul Weiss claims "disqualification would materially harm Google's trial preparation and presentation of its case at trial" despite the fact that a trial date has not been set and will not commence for several months. PW Opp. at 22. Even if Paul Weiss' disqualification does impact Google's ability to prepare for trial, the fault lies with Paul Weiss, not Yelp and NMA. *Sunbeam Prod.*, 727 F. Supp. 2d at 476 ("any prejudice to" the party whose counsel is disqualified "is of its own counsels' making"); *In re Asbestos Cases*, 514 F. Supp. 914, 925–26 (E.D. Va. 1981) (Clarke, J.) (the "hardship quite properly rests with the firm which knowingly undertook the" conflicted representation).

After complaining of prejudice to Google that is their own making, Paul Weiss argues that Yelp and NMA must suffer the consequences of Paul Weiss' decision to switch sides without first seeking a waiver from Yelp and NMA because they "unreasonably delayed filing their motion." PW Opp. at 21. In fact, Yelp and NMA filed their Motion once it was confirmed that their positions were materially adverse to Google and they each were at risk of having Paul Weiss expose their privileged and confidential information to Google. It was not until Google issued the August Yelp Subpoena (August 1, 2023) and the NMA Subpoena (August 8, 2023) that Yelp and NMA became

---

Supp. at 922 ("[I]t is the possibility of the breach of confidence, not the fact of the breach that triggers disqualification.").

15

aware that Google intended to obtain Yelp's and NMA's privileged and confidential communications with Paul Weiss to show that Yelp and NMA were biased witnesses with ulterior motives. Yelp's and NMA's fears of a potential conflict were confirmed a few weeks later on August 31, 2023, when Google filed its Opposition to DOJ's Motion for Partial Judgment and identified Yelp and NMA by name as adverse third party witnesses.[11] It was not until the hearing on DOJ's Motion on September 15, 2023, when the Court confirmed that Google would be permitted to seek to obtain and use at trial information related to Yelp's and NMA's credibility. Dkt. 435 at 11. Yelp and NMA filed their Motion to Disqualify just seven days later. There was no undue delay.

Finally, Paul Weiss accuses Yelp and NMA of "gamesmanship," claiming they "tactically waited" until after the Court's decision on the DOJ's Motion for Partial Judgment. PW Opp. at 1, 21. But it is Google's conduct that has dictated the timing of this Motion. Fact discovery in this case began on March 27, 2023 (Dkt. 69). Google waited until early August to issue subpoenas to Yelp and NMA revealing their desire to obtain information relating to Paul Weiss' representation of Yelp and NMA. If Yelp and NMA had filed a Motion to Disqualify prior to the issuance of the August Yelp Subpoena and NMA Subpoena (or prior to Google's Opposition on August 31, 2023), no doubt Paul Weiss would simply have argued there was no evidence that Yelp and NMA were materially adverse to Google.

Even if the Court were to find that Yelp and NMA could have filed their Motion to Disqualify earlier in the process, there are no specific rules governing disqualification challenges

---

[11] It is worth noting that the original publicly available version of Google's Opposition filed on August 31, 2023 redacted key mentions of Yelp. Compare Dkt. 368 at 7-8 to Dkt. 453-1 at 7-8 (redacting Yelp's name in the sentence "Yelp [] retained AAG Kanter … to persuade DOJ to sue Google for alleged anticompetitive conduct affecting digital advertising). Yelp was not aware of the full extent of Google's invocation of Yelp until it received an unredacted version of the filing weeks later.

16

based on timeliness. *Audio MPEG, Inc.*, 219 F. Supp. 3d at 575. Indeed, even the out-of-Circuit cases Paul Weiss relies upon support the timeliness of *this Motion. Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975) (If movant "had filed the motion *some months prior to the date of trial* it would have merited serious attention and consideration.") (emphasis added). In fact, it is not necessary for Yelp and NMA to file the present Motion for Paul Weiss to be disqualified in this case because rules governing conflict of interest "are mandatory in character." *Tessier*, 731 F. Supp. at 729. It is even "appropriate for a court to raise the question" of disqualification without the affected clients filing a Motion. *Sanford*, 687 F. Supp. 2d at 602.

## CONCLUSION

WHEREFORE, for each of the reasons stated above and in their initial papers, Yelp and NMA respectfully request that this Honorable Court grant their Motion to Disqualify Paul Weiss and for such further relief as this Court deems just and proper.

_____/s/_____

Charles B. Molster III
Va. Bar No. 23613
The Law Offices of Charles B. Molster, III PLLC
2141 Wisconsin Avenue, N.W., Suite M
Washington, D.C. 20007
(703) 346-1505
cmolster@molsterlaw.com

Brandon Kressin (*admitted pro hac vice*)
Kressin Meador LLC
10650 Roe, Unit #137
Overland Park, KS 66207
brandon@kressinmeador.com

Counsel for Yelp, Inc. and News/Media Alliance

17