```
                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF VIRGINIA
                           ALEXANDRIA DIVISION

---------------------------x
UNITED STATES, et al.,     :    Civil Action No.:
                           :    1:23-cv-108
            Plaintiffs,    :
     versus                :    Friday, October 13, 2023
                           :    Alexandria, Virginia
GOOGLE LLC,                :
                           :    Pages 1-18
            Defendant.     :
---------------------------x

        The above-entitled motion to disqualify counsel was
heard before the Honorable Leonie M. Brinkema, United States
District Judge.  This proceeding commenced at 9:54 a.m.

                      A P P E A R A N C E S:

FOR THE PLAINTIFFS:    GERARD MENE, ESQUIRE
                       OFFICE OF THE UNITED STATES ATTORNEY
                       2100 Jamieson Avenue
                       Alexandria, Virginia  22314
                       (703) 299-3700

                       JULIA TARVER WOOD, ESQUIRE
                       UNITED STATES DEPARTMENT OF JUSTICE
                       ANTITRUST DIVISION
                       450 Fifth Street, NW
                       Washington, D.C.  20530
                       (202) 894-4266

                       TYLER HENRY, ESQUIRE
                       OFFICE OF THE ATTORNEY GENERAL
                       OFFICE OF THE SOLICITOR GENERAL
                       202 North Ninth Street
                       Richmond, Virginia  23219
                       (804) 786-7704
```

```
 1                    A P P E A R A N C E S:

 2   FOR THE THIRD-PARTY     CHARLES BENNETT MOLSTER, III, ESQUIRE
     PLAINTIFFS:             THE LAW OFFICES OF CHARLES B. MOLSTER,
 3                           III, PLLC
                             2141 Wisconsin Avenue, NW
 4                           Suite M
                             Washington, D.C.  20007
 5                           (703) 346-1505

 6                           BRANDON KRESSIN, ESQUIRE
                             KRESSIN MEADOR LLC
 7                           10650 Roe
                             Unit 137
 8                           Overland, Kansas  66207
                             (913) 374-0750
 9
     FOR THE DEFENDANT:      WHITNEY RUSSELL, ESQUIRE
10                           HOWARD SHAPIRO, ESQUIRE
                             BRUCE BERMAN, ESQUIRE
11                           WILMER CUTLER PICKERING
                             HALE AND DORR LLP
12                           2100 Pennsylvania Avenue, NW
                             Washington, D.C.  20037
13                           (202) 663-6510

14   COURT REPORTER:         STEPHANIE M. AUSTIN, RPR, CRR
                             Official Court Reporter
15                           United States District Court
                             401 Courthouse Square
16                           Alexandria, Virginia  22314
                             (571) 298-1649
17                           S.AustinReporting@gmail.com

18        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

19

20

21

22

23

24

25
                                                              2
```

```
 1                    P R O C E E D I N G S
 2              THE DEPUTY CLERK:  Civil Action 23-108, United
 3   States of America versus Google LLC.
 4              Would counsel please note their appearances for
 5   the record.
 6              MR. MENE:  Good morning, Your Honor.  Gerard Mene
 7   with the U.S. Attorney's Office.
 8              MS. WOOD:  Good morning, Your Honor.  Julia Wood
 9   from the Department of Justice.
10              MR. HENRY:  Good morning, Your Honor.  Ty Henry
11   from the Virginia Attorney General's Office on behalf of the
12   plaintiff states.
13              THE COURT:  Good morning.  There's so many lawyers
14   on this case, I'm not going to say good morning as each
15   lawyer introduces him or herself.  All right.
16              How about for the third parties.
17              MR. MOLSTER:  Good morning, Your Honor.
18   Charles Molster for the non-party movants.  With me at
19   counsel table is Brandon Kressin.  With the Court's
20   permission, he'll handle the motion.  He's admitted pro hac
21   vice.
22              THE COURT:  All right.
23              MR. MOLSTER:  Thank you, Your Honor.
24              THE COURT:  And he's going to -- you're going to
25   handle it for both of the non-parties?
```

3

```
 1              MR. KRESSIN:  For both News/Media Alliance and --
 2   yeah.
 3              THE COURT:  All right.  Mr. Kressin, good morning.
 4              And for Google.
 5              MS. RUSSELL:  Your Honor, Whitney Russell on
 6   behalf of Paul, Weiss.  With me is Howard Shapiro and
 7   Bruce Berman.  And Howard Shapiro will be arguing, with the
 8   Court's permission.  He's admitted pro hac vice.
 9              THE COURT:  I'm sorry.  Who will be arguing?
10              MS. RUSSELL:  Howard Shapiro.
11              THE COURT:  All right.  Good morning.
12              MR. SHAPIRO:  Good morning, Your Honor.
13              THE COURT:  Actually, Google is technically not
14   involved in this motion, nor really is the United States;
15   right?  None of the plaintiffs are involved.  So we probably
16   really should have you all switch tables.
17              All right.  Mr. Kressin, this is your motion.  And
18   we've gone through the 3 inches or so of papers that you all
19   submitted in supporting what is, in my view, a fairly
20   straightforward motion, so I don't need to hear you repeat
21   everything that's in the papers.
22              But what I'd like you to focus on is, explain to
23   me what specific prejudice you believe could occur as to
24   your two clients -- or the two people whom -- entities whom
25   you represent, if the Court were not to grant your motion.
```

4

1                MR. KRESSIN:  Yes, Your Honor.  Thank you, Your
2    Honor.  I'll talk about both clients in turn and then issues
3    that affect both of them.
4                First, for News/Media Alliance -- just as a
5    reminder, that's a trade association that represents
6    newspapers and digital publishers around the country -- this
7    has been a very significant issue for them for the past
8    decade now.  One of the main ways that publishers monetize
9    their content is through digital ads sold on their page
10   through ad tech, such as that provided by Google.
11               THE COURT:  Have they joined any of the multiple
12   cases involving the ad tech issues?
13               MR. KRESSIN:  Well, several of their members have,
14   Your Honor.  The News/Media Alliance itself, as a trade
15   association, has not filed the lawsuit itself, but while at
16   Paul, Weiss we engaged -- me and other Paul, Weiss attorneys
17   engaged advocacy on behalf of the association and its
18   members encouraging this very case to be brought.
19               And so the concrete detriment that they would
20   suffer from Paul, Weiss's representations -- successful
21   representation of Google in this case, is that they would
22   continue to have to pay what they view as super competitive
23   prices for ad tech services that they obtain from Google and
24   the markets alleged by the DOJ.
25               Yelp is in a similar position but with some slight

5

1   differences.  It's both a customer of ad tech, as well as a
2   horizontal competitor against Google.  They had to develop
3   their own ad server.  So they do not use Google's ad server,
4   formerly known as DFP, now GAM, but they had to
5   self-provide, in part, because the market had been
6   monopolized by the DFP, which is a competitor to them.
7           They have also developed their own products in the
8   ad tech intermediary space.  For example, they partnered
9   with DSPs beginning in 2021 to have a product called Yelp
10  Audiences, which tries to retarget ads to Yelp consumers on
11  the third-party sites.  So they're both a customer that
12  suffers from a monopolized ad tech market and a competitor
13  who suffers from being excluded from the market or prevented
14  from competing necessarily.
15          THE COURT:  But, again, has Yelp joined any of the
16  litigation involving this aspect of Google's --
17          MR. KRESSIN:  Yelp has not filed suit, no.
18          THE COURT:  All right.  So, I mean, basically what
19  you're saying is Yelp and the other entity could ultimately
20  be affected by the outcome of this case?
21          MR. KRESSIN:  I would say it's more than that,
22  Your Honor.
23          Yelp and News/Media Alliance have encouraged DOJ
24  to bring these cases and provided confidential information
25  to the DOJ and state AGs regarding their arguments of why

6

```
 1   they should bring this case.
 2              THE COURT:  All right.  Let me ask now
 3   Mr. Shapiro.
 4              As I understand it, discovery has closed except
 5   for experts; is that correct?
 6              MR. SHAPIRO:  Yes, Your Honor.
 7              THE COURT:  All right.  So the universe of
 8   discovery that would be available to be used in this
 9   litigation is now created?
10              MR. SHAPIRO:  That's correct, Your Honor.
11              THE COURT:  In that universe, is there any
12   information whatsoever, other than this White Paper, that
13   has come from either of these two nonparties?
14              MR. SHAPIRO:  Your Honor, Yelp did produce some
15   documents.  None of those documents relate to the request
16   that they objected to as irrelevant that they cited in their
17   papers as being substantially related to this matter.
18              THE COURT:  Give me a more concrete example of
19   what evidence you received from Yelp.
20              MR. SHAPIRO:  They produced some general strategy
21   papers, they produced -- I may need -- some general
22   advertising strategy.
23              I would like to add, Your Honor -- because Your
24   Honor put your finger on the issue -- they're not -- you
25   know, to disqualify Paul, Weiss in this, they would have to
```

7

1  be in a position of claiming material adversity.  And
2  they're not only not -- a generalized economic interest in
3  the outcome doesn't come close to that.  They are so far on
4  the periphery of this case, and going forward, they're not
5  going to be in it at all.  They're not -- as the Court
6  noted, discovery has closed.  They were never deposed.
7  They're not on the government's initial disclosures list,
8  they're not going to be called by Google.  They are
9  spectators to this matter.
10            There is no case, that we found at least, where a
11 party as an entity -- not a party, obviously -- as remote
12 from the matters at issue in a case has ever successfully
13 brought a motion to disqualify counsel.  They are very, very
14 far from material adversity.  And with no adversity, there,
15 as the Court well knows, there could be no conflict.  With
16 no conflict, there could be no violation of the Virginia
17 professional rules.  And, without that, there is no basis
18 for disqualification whatsoever.
19            THE COURT:  All right.  Now, let me ask you this,
20 though, because this does sort of make me wonder why this
21 happened this way.
22            This lawsuit was filed in January of this year,
23 and we had thought, because of the way most of the motions
24 were being presented, that Freshfields was the lead counsel
25 for Google.  Paul, Weiss, to my understanding, did not

8

1  notice its appearance in this litigation until May 6th of
2  this year.
3            I find it rather unusual that the lead counsel,
4  lead trial counsel, would not be on some of the original
5  pleadings, such as the answer, and actually not appear
6  officially in the case, so that, for example, these entities
7  would know that Paul, Weiss was in the case until several
8  months after the litigation had gotten started.
9            MR. SHAPIRO:  My understanding, Your Honor --
10 obviously from what I've learned from my clients here --
11 when the Court denied the motion to transfer to -- as part
12 of the MDL and admonished the parties that they should have
13 their running shoes on because this was going to go very
14 quickly -- as is the habit in this district, through the
15 process and to trial, if a trial is going to be had -- at
16 that point, Google, looking around, realizing that although
17 they had very competent counsel in Mr. Mahr and his
18 colleagues from Freshfields, they were also handling the MDL
19 in New York, they're now handling the remand of the Texas
20 AG, and that they were stretched too thinly to handle this
21 matter in the -- in a lead role.  Although they will
22 continue to be actively involved, but at the pace that the
23 Court made very clear it intended to go, and, at that point,
24 Google looked to add counsel here.  They knew that in Paul,
25 Weiss they had very experienced trial counsel who had

9

1    experience both in this district and experience with
2    antitrust trials, and they brought them in to be lead
3    counsel going forward.
4            You're absolutely right.  They entered their
5    appearance in May, but since then, they have been very
6    actively involved.  As Elizabeth McCabe -- who's here, the
7    deputy general counsel of Paul, Weiss -- made clear in her
8    declaration, they've already contributed more than
9    10,000 hours of work to this matter.  They're playing a lead
10   role on strategy, they're playing a very significant role on
11   deposition.
12           So that's how that all happened as a factual
13   matter.  Once it became clear that this was going to go as a
14   standalone case at a high rate of speed, they were brought
15   in to take the lead on that.
16           THE COURT:  All right.  Now, the only other
17   question I think I have for you at this point is, there
18   apparently is one attorney working on this litigation who
19   had done something like 35 or 36 hours of work when your
20   firm was representing those two entities.
21           For some reason, you haven't identified this
22   person.  Is there a reason why the name is not on the record
23   so everybody would know?
24           MR. SHAPIRO:  I'm happy to provide the name if the
25   Court would like me to.  The attorney is Dan Crane.

10

```
1                THE COURT:  Can you spell the last name?
2                MR. SHAPIRO:  C-R-A-N-E.
3                And, actually, it's helpful to identify him
4    because it makes clear his role.
5                Dan Crane is a full-time law professor at the
6    University of Michigan.  He is also a lawyer at Paul, Weiss.
7    He was brought in on the earlier White Paper to provide
8    high-level legal strategy, legal advice.  He wasn't
9    client-facing, he wasn't getting their confidences.  He's a
10   big-picture, big-think guy.  So that's what he had done
11   before.
12               He is now, as -- once this became an issue, in an
13   abundance of caution, he's been screened from this matter
14   entirely, so he is not, at present, at all part of the Paul,
15   Weiss team representing Google.
16               THE COURT:  Were there any paralegals or support
17   staff that were significantly involved in assisting
18   Mr. Kanter and Mr. Kressin when they were working on behalf
19   of these two entities?  Did anybody check that out?
20               MS. MCCABE:  Yes, Your Honor.
21               THE COURT:  Come up to the lectern, ma'am.
22               MR. SHAPIRO:  Ms. McCabe, who is the deputy
23   general counsel.
24               THE COURT:  Yes.
25               MS. MCCABE:  Hi, Your Honor.
                                                                  11
```

1               THE COURT:  Good morning.
2               MS. MCCABE:  Yes.  There certainly were paralegals
3    assisting Mr. Kanter while he was at Paul, Weiss.  We did
4    look at whether there was any overlap in those support staff
5    and the support staff working on the Google matter.  There's
6    one paralegal who billed I think an hour to the prior matter
7    who was working on the Google matter.
8               THE COURT:  All right.  All right.  Thank you.
9               MR. SHAPIRO:  Anything further, Your Honor?
10              THE COURT:  I don't think so.
11              MR. SHAPIRO:  Thank you.
12              THE COURT:  Mr. Kressin, is there anything you
13   want to add to your position?
14              MR. KRESSIN:  Yes, Your Honor.  Thank you.
15              There's a few things I'd like to address.  First
16   regarding your first question about whether NMA or Yelp have
17   produced anything in this case that relates to Paul, Weiss
18   that will be used.
19              The main point of our -- one of the key points of
20   our motion is that we didn't have to produce it in order for
21   Google to get access to it.  They didn't fight us very hard
22   to try to get access to those Paul, Weiss communications.
23   One possibility being that they already have access because
24   they could simply ask their counsel at Paul, Weiss to either
25   turn that information over to them or to use that

12

1  information for their own purposes.  So they didn't need
2  discovery to get at our documents.  So that was one of the
3  issues.  It's not about what we've turned over in discovery.
4           Second, although they have argued that Yelp and
5  News/Media Alliance have not yet been identified as
6  potential witnesses in this case or been deposed, Google did
7  say, during oral arguments relating to the partial judgment
8  motion, that they wanted these documents to challenge the
9  credibility of Yelp and News/Media Alliance.
10          And I'll also point out that News/Media Alliance,
11 once again, is a trade association that has many different
12 members who are involved in its activities and would appear
13 in those communications, and some of those members have
14 been -- or are on that witness list, and some of those
15 members have -- were also clients of Paul, Weiss during that
16 same time.
17          Third, the -- counsel for Paul, Weiss raised this
18 point that after the fact, they raised screens to screen out
19 at least Dan Crane and maybe some paralegals.  I'll point
20 out that under Virginia law, screens don't cure a conflict
21 of this sort, so that should be ignored.
22          But the final point I'll make is that simply
23 looking at the invoices to figure out which attorneys or
24 paralegals or support staff billed on a particular matter
25 does not give you full insight into the scope of the work

13

```
 1   that was done.  It's quite common not to include all of the
 2   time that attorneys work on a matter on invoices that
 3   eventually go to the client.  And even for attorneys who
 4   weren't directly working on the matter, it was common
 5   practice every week -- or almost every week, there would be
 6   weekly breakfasts where we talked about the work we were
 7   doing for our clients, we talked about the legal theories
 8   that we were planning to bring and advocacy that we were
 9   doing.  These were widely attended with, at least the
10   Washington, D.C. antitrust office, and attorneys there would
11   have very easily gained information about the positions that
12   Yelp and News/Media Alliance and News/Media Alliance's
13   members were taking with respect to ad tech.
14           THE COURT:  All right.
15           MR. SHAPIRO:  Your Honor, may I address one point
16   Mr. Kressin made, Your Honor?
17           THE COURT:  Yes, Mr. Shapiro.
18           MR. SHAPIRO:  I just like -- the idea that Paul,
19   Weiss could rifle through their files to find things was
20   addressed by Ms. McCabe, and Mr. Kressin, frankly, should
21   know better.  In the declaration of Ms. McCabe at
22   paragraphs 19 and 20, she points out that she confirmed,
23   through consultation with the firm's electronic information
24   governance department -- which maintains official records of
25   Paul, Weiss -- that none of the lawyers who billed time to
```

14

1   the firm's representation of Google in this action had
2   accessed any Yelp or NMA documents stored on Paul, Weiss's
3   document management system.  And that, in paragraph 20, that
4   they could not because they had established screens to
5   prevent such access.
6           So that's, frankly, with all respect, a red
7   herring.
8           THE COURT:  Well, I'm going to adhere to my normal
9   practice of ruling from the bench as much as possible,
10  although we'll follow this up with a written opinion with a
11  few more details.
12          But I'm satisfied, both on the basis of the
13  pleadings, which we've gone through in chambers, as well as
14  the oral arguments today, that the plaintiff has not
15  satisfied -- I'm sorry -- well, I'm going to call you the
16  plaintiff because you've got -- the movant has not met the
17  standards that are necessary to permit the Court to go ahead
18  and disqualify a law firm from representation.
19          Specifically, I'm not finding that Google is --
20  the issues in this case do not result in a finding that
21  there's a materially adverse situation going on here.  The
22  fact that the two nonparties could be, down the road,
23  affected by the resolution of this case, is not enough to
24  create, you know, the materiality that's required to show
25  that it's an adverse situation here.  If this kind of

```
 1   general approach were taken, it would probably disqualify
 2   most large firms from an awful lot of litigation, and that's
 3   just not what the ethical rules require.
 4          I also do not find that this case is substantially
 5   related to the nature of the representation that did go on
 6   for these two entities, because the ad technology is quite
 7   different from the technology that's involved in the
 8   Research case, which is the one that's going on right now in
 9   the District of Columbia.  And so also, that factor is not
10   met.
11          And, lastly, I just can't find, from either the
12   papers or even from the discussion here, that there's actual
13   prejudice to either of these two entities from allowing
14   Paul, Weiss to continue.
15          Now, having said that, however, I am going to put
16   in my order that Paul, Weiss will not be permitted, and
17   Google will not be permitted, to present any evidence
18   whatsoever involving Yelp or the other entity.  All right.
19   It's irrelevant to this case.  I mean, the case is whether
20   or not there's anticompetitive conduct going on.  This whole
21   issue -- this red herring that I mentioned before about, you
22   know, motivation of Mr. Kanter or the Department of Justice
23   in bringing this litigation, I really am going to warn
24   counsel right now.  Mr. Shapiro, I don't think you've been
25   before us before, but it looks look to me like you
```
16

1    understand how cases are tried, and, around here, there will
2    be time limits, and so you'll need to use your time wisely
3    in representing Google.  This is a red herring, in my view.
4    Our juries are smart, they pick up on that sort of thing as
5    well.  So I don't see any way in which there's going to be
6    any prejudice to Yelp or the other entity in terms of
7    allowing Paul, Weiss to continue.
8             Nevertheless, as an abundance of caution, my order
9    will also make it crystal clear that Mr. Crane cannot have
10   anything to do with this case.  All right.  And I will put
11   Paul, Weiss also under a constant admonition that it must
12   carefully make sure that if, at any point, you find that
13   something has leaked over that Chinese wall that has been
14   put in place, that you must immediately stop, all right, and
15   advise the Court that you've discovered there is a little
16   bit of leakage so that we can get it on the record and
17   address it.
18             Is that clear, Mr. Shapiro?
19             MR. SHAPIRO:  Yes, Your Honor.
20             THE COURT:  All right.  So the motion is denied.
21   We'll recess court for the day.  Thank you.
22             MR. SHAPIRO:  Thank you, Your Honor.
23             (Proceedings adjourned at 10:14 a.m.)
24             ------------------------------------
25   I certify that the foregoing is a true and accurate

17

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

```
 1  transcription of my stenographic notes.
 2                              _____
 3                                  Stephanie M. Austin, RPR, CRR
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

18