IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 1:23-cv-108 (LMB/JFA) |
| | ) |
| GOOGLE LLC, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Before the Court is a Motion to Disqualify Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") ("Motion to Disqualify") as counsel to defendant Google LLC ("Google") filed by non-parties Yelp, Inc. ("Yelp") and News/Media Alliance ("NMA") (collectively, "non-parties"). This dispute between Yelp, NMA, and Google's counsel Paul, Weiss is orthogonal to this litigation which focuses on Google's allegedly anticompetitive conduct in the market for "open web display advertising." [Dkt. No. 120]. After hearing oral argument in which only the non-parties and Google participated, the Court denied the Motion to Disqualify from the bench. This Memorandum Opinion further explains the basis for that decision.

I. BACKGROUND

A. **Paul, Weiss's Representation of Yelp and NMA**

In 2016, non-parties Yelp and NMA[1] retained Paul, Weiss to provide legal counsel on several antitrust matters. The representation included communications between counsel and

---

[1] Yelp owns and operates Yelp.com, a popular local search website, mobile website, and related mobile app for users to share information about their communities, including local businesses, services, and gatherings. NMA is a trade association representing approximately 2,000 newspapers in the United States, including large daily papers, non-daily and small market publications, as well as digital and multiplatform products. [Dkt. No. 460] 5-6.

federal antitrust enforcement officials regarding Google's business practices. [Dkt. No. 460] at 5. Jonathan Kanter ("Kanter"), formerly a Paul, Weiss partner and now the Assistant Attorney General for the Antitrust Division at the U.S. Department of Justice, and Brandon Kressin ("Kressin") were the primary Paul, Weiss attorneys who provided services to Yelp and NMA.

The full scope and details of the work performed for Yelp and NMA by Kanter and Kressin is disputed, but the parties essentially agree that Kanter and Kressin's representation focused on communications with the Department of Justice demonstrating Google's purported anticompetitive conduct and how that conduct impacted the business decisions and strategies of Yelp, NMA, and other technology companies. Id. As part of their representation, Kanter and Kressin drafted a White Paper titled "Google's Vertical Search Abuses[:] How Google's conduct in local search and other search verticals violates the U.S. antitrust laws," and sent it to the Department of Justice's Antitrust Division on April 14, 2020. Id. at 10 (citing [Dkt. No. 368] Ex. 9) (the "White Paper"). In their opening brief, the non-parties allege that "Yelp's past advocacy to DOJ [ ] focused on Internet search, not advertising technology," [Dkt. No. 460] at 6; however, in their reply, they expanded their characterization of the legal work performed, claiming that "Paul, Weiss attorneys also advocated to state and federal enforcers [ ] how Google's digital advertising and ad tech conduct violates antitrust laws." [Dkt. No. 479] at 9.

The non-parties support their Motion to Disqualify by arguing that "it was common practice for [] Kanter and [] Kressin to provide updates regarding their representation of clients, including Yelp and NMA, to other attorneys at Paul, Weiss (including attorneys that have now appeared for Google in this case) at regular meetings of the firm's antitrust practice group." [Dkt. No. 460] at 7. They also allege that Paul, Weiss "still possesses privileged and confidential information relating to its representation of" Yelp and NMA. Id. at 5-6. From these arguments,

the non-parties maintain that such information poses a risk that Paul, Weiss would use confidential information of their former clients to Google's advantage and to the detriment of Yelp and NMA. [Dkt. No. 479] at 14 ("Google can obtain that information from Paul, Weiss or instruct Paul, Weiss to utilize that information to Google's benefit and the detriment of Yelp and NMA.").

Paul, Weiss presents a narrower picture of the firm's representation of Yelp and NMA and of any risk of harm to either non-party from their continued representation of Google. First, Paul, Weiss points out that in September 2020, Yelp and NMA ceased being clients of the firm[2] when Kanter and Kressin left the firm to start their own antitrust litigation practice.[3] Along with Mark Meador ("Meador"), another former Paul, Weiss attorney, Kanter and Kressin "performed the overwhelming amount of work for both clients . . . [and] their time accounted for 94% of the attorney time billed to Yelp and 84% of the attorney time billed to NMA." [Dkt. No. 477] at 4. Paul, Weiss contends that only Kanter, Kressin, and Meador know the full scope of the work Paul, Weiss performed for Yelp and NMA. Moreover, none of the few lawyers who billed any time to Yelp or NMA ever did any work related to Google's Ad Tech business (as contrasted with Google's Internet search business), and with the exception of Daniel Crane ("Crane"),[4] no Paul, Weiss lawyer who worked for Yelp or NMA has worked on the Google litigation. Crane billed the non-parties a total of 36 hours over a three-week period in early 2020, and his work

---

[2] Yelp and NMA's engagement letters, which were signed by Kanter, provided that the attorney-client relationship terminated when the proposed work was completed. [Dkt. No. 477] Ex. 1 ¶ 5.

[3] At first, their firm was called "The Kanter Law Group." But when Kanter joined the U.S. Department of Justice, the firm was renamed "The Kressin Law Group." It has since changed to "Kressin Meador," which reflects Meador's joining of the firm. See www.kressinmeador.com/.

[4] Daniel Crane is a professor of law at the University of Michigan Law School and serves as counsel to Paul, Weiss on antitrust matters. See https://www.paulweiss.com/professionals/partners-and-counsel/daniel-a-crane.

was limited to contributions to the White Paper. [Dkt. No. 477] at 5. "None of the other lawyers at Paul, Weiss who represent Google in this matter has received or accessed any confidential information about Yelp or NMA. And none of the lawyers at Paul, Weiss who represent Google in this matter has received or accessed any confidential information of Yelp or NMA concerning Google's Ad Tech business." Id. It is undisputed that none of Paul, Weiss's attorneys has performed any work for Yelp or NMA for over three years.

### B. The Google Litigation

In October 2020, the United States Department of Justice and eleven state attorneys general filed a complaint against Google in the United States District Court for the District of Columbia, alleging that Google unlawfully maintained monopolies in general search services by entering into a series of exclusionary agreements that prohibited preinstallation of any competing search service and required Google to be the default search engine on mobile devices and computers. Thereafter, the attorneys general of thirty-eight states and territories filed a separate complaint, which was joined with the Department of Justice action in the District of Columbia litigation. In what is referred to as the "Search Litigation," Google is represented by Williams & Connolly, Ropes & Gray, and Wilson Sonsini Goodrich & Rosati.

On December 16, 2020, the Texas Attorney General, along with attorneys general from nine other states, filed an action against Google in the United States District Court for the Eastern District of Texas alleging that Google's advertising technology ("Ad Tech") business practices are anticompetitive in violation of federal law. Texas v. Google, LLC, No. 1:20-cv-00957 (E.D. Tex.). Multiple private parties have also filed antitrust cases against Google relating to Ad Tech, resulting in the consolidation of 19 separate actions in a multidistrict litigation proceeding ("MDL Proceeding") in the United States District Court for the Southern District of New York. In re Digital Advertising Antitrust Litig., 555 F. Supp. 3d 1372 (J.P.M.L. 2021).

Seventeen additional cases have been added to the MDL Proceeding. In re Google Digital Advertising Litig., No. 1:21-md-03010 (S.D.N.Y.). Lawyers from Freshfields Bruckhaus Deringer LLP ("Freshfields"), Axinn, Veltrop & Harkrider LLP ("Axinn"), and Wilson Sonsini have entered appearances on behalf of Google in the MDL Proceeding, where fact discovery is set to conclude on June 28, 2024.

On January 24, 2023, while Google was litigating Ad Tech-related issues in the MDL Proceeding, the United States and eight states commenced the action before this Court, seeking substantial damages on behalf of Federal Agency Advertisers, as well as equitable relief and divestiture of Google's digital advertising business. Plaintiffs in this action allege that Google "has eliminated or diminished any threat to its dominance in the ad tech industry by (a) neutralizing and eliminating ad tech competitors through acquisitions, and (b) using its market power and dominance in these three ad tech markets to force publishers and advertisers to use its products exclusively while disrupting their ability to use competing ad servers, ad exchanges, or ad-buying tools." [Dkt. No. 60] at 2; see also [Dkt. No. 120] ¶ 5. Freshfields and Axinn entered appearances in this civil action.

### C. Paul, Weiss's Representation of Google

On February 17, 2023, Google filed a motion seeking transfer of this action to the MDL Proceeding in New York, [Dkt. No. 44]; however, the Court denied the motion and emphasized that the parties should "have [their] running shoes on" because this is a "very significant antitrust case." [Dkt. No. 59]. On May 6, 2023, attorneys from Paul, Weiss filed notices of appearance and motions to appear pro hac vice on behalf of Google in this civil action. During oral argument on the Motion to Disqualify, Paul, Weiss explained that Google made the decision to retain Paul, Weiss to be lead trial counsel in this action both because Google's primary counsel Freshfields was devoting a significant amount of its time and resources to defending the MDL

5

Proceeding and the action in the Eastern District of Texas, and because Paul, Weiss has significant experience litigating antitrust trials and other matters in the Eastern District of Virginia.

Since May 6, 2023, "Paul, Weiss attorneys and personnel have devoted substantial time and resources—over 10,000 hours—to Google's defense." [Dkt. No. 477] at 10. The parties agree that Paul, Weiss has neither sought nor received waivers from Yelp or NMA relating to its prior or current representations. [Dkt. No. 460] at 8.

### D. Non-parties' Motion to Disqualify

On May 31, 2023, Axinn, another firm representing Google, served a Rule 45 subpoena for production of documents on Yelp relating to Yelp's advertising technology business, including its relationship with Google and other advertising technology providers and products. [Dkt. No. 460] at 6 ("May Yelp Subpoena"). Yelp made a production of responsive documents. Id. According to Yelp, it was unaware at that time that Google considered itself adverse to Yelp, "as Yelp's past advocacy to DOJ had focused on Internet Search, not advertising technology." Id.

On August 1, 2023, Axinn served a second Rule 45 subpoena on Yelp ("August Yelp Subpoena"), and on August 8, 2023, Freshfields served a Rule 45 subpoena on NMA ("NMA Subpoena") (collectively, the "August Subpoenas"). [Dkt. No. 460] at 7. The August Subpoenas "sought, among other things, [all] communications relating to the representation of Yelp and NMA by Jonathan Kanter and Brandon Kressin to the extent such communications 'concern[ed] Google.'" Id.

Both Yelp and NMA objected to the information sought by the August Subpoenas, stating "[n]one of these communications would be relevant to the claims and defenses in this litigation, which concern whether Google illegally monopolized various Ad Tech product

markets." [Dkt. No. 477] Ex. 3 at 5, 11; id. at 2 ("[T]he information sought by this Subpoena . . . is all irrelevant to the claims and defenses in this case. Based on the Plaintiffs' complaint, this case is about Google's conduct with respect to Ad Tech products."); id. Ex. 5 at 2. Neither Yelp nor NMA produced any documents in response to the August Subpoenas; fact discovery is now closed; and Google is no longer seeking any documents from Yelp or NMA in this civil action.

Google's Answer to the Complaint in this civil action included its Tenth and Thirteenth Affirmative Defenses, which alleged that the Department of Justice engaged in "improper selective enforcement of antitrust laws" and that the Department's "initiation and maintenance" of the investigation violated the Due Process Clause of the United States Constitution. [Dkt. No. 208] at 54-55. Plaintiffs filed a Motion for Partial Judgment on the Pleadings seeking to strike these two affirmative defenses. [Dkt. No. 368]. In its Opposition, Google alleged that the enforcement decision was—at least in part—encouraged and supported by Yelp and NMA through Kanter's advocacy while at Paul, Weiss. [Dkt. No. 368] at 3, 7-8. It was on this basis that Google sought information relating to Paul, Weiss's representation of the non-parties through the August Subpoenas. This Court granted plaintiffs' motion, finding that Google's Tenth and Thirteenth Affirmative Defenses "raise[d] irrelevant matters . . . and only detract[ed] from the core issue in this litigation—whether Googles' Ad Tech business violates antitrust laws." [Dkt. No. 455] at 16-17. On September 22, 2023, four-and-a-half months after Paul, Weiss attorneys entered their appearances as counsel for Google, Yelp and NMA filed the instant Motion to Disqualify.

## II. DISCUSSION

### A. Standard of Review

In considering a disqualification motion, the Court must engage in a two-step inquiry. First, it must determine whether the lawyer or firm has violated the Virginia Rules of

7

Professional Conduct. Reese v. Va. Int'l Terminals, Inc., 894 F. Supp. 2d 665, 673 (E.D. Va. 2012). Rule 1.9 of the Virginia Rules of Professional Conduct provides in part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

Id. Moreover, Rule 1.10(b) provides in part:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

Id.

Second, if there is a violation, a court must determine whether disqualification is the appropriate sanction. Id. at 673-674. Disqualification is never automatic. With "rare exceptions," "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, thus giving his present client an unfair advantage." Id. at 674 (ellipsis in original).

Because a "motion seeking to disqualify counsel can be used improperly 'for purely strategic purposes,'" the party seeking disqualification "bears a 'high standard of proof,'" Rd. King Dev., Inc. v. JTH Tax LLC, 540 F. Supp. 3d 554, 560 (E.D. Va. 2021), and the motion is

8

subject to "close inspection," Tattoo Art, Inc. v. TAT Int'l, LLC, 2010 WL 11469802, at *2 (E.D. Va. Oct. 18, 2010). The moving party's evidence "may not be rested on mere speculation." Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 145 (4th Cir. 1992). Conclusory allegations are not a sufficient basis on which to grant a motion to disqualify counsel.

Generally, when faced with a motion to disqualify counsel, "the trial court should prevent even the appearance of impropriety, and resolve all doubts in favor of disqualification." Lyons v. City of Alexandria, 2020 WL 2832492, at *2 (E.D. Va. Jan. 14, 2020). But, of course, "our justice system values the ability to retain counsel of one's choice, and the party moving to disqualify faces 'a high standard of proof to show that disqualification is warranted.'" Id. (quoting Sanford v. Commonwealth of Va., 687 F. Supp. 2d 591, 602 (E.D. Va. 2009). To achieve this balance, the application of the Virginia Rules of Professional Conduct should not be applied mechanistically, "and a Court should consider[] the unique facts and circumstances of [each] case in its disqualification determination." Id. at *3.

### B. Substantially Related

For a conflict of interest to arise under Rule 1.9(a), a lawyer's work on the matter for the current client must be "the same or substantially related" to the matter the lawyer handled for the former client. Rule 1.10(b) further provides that when a lawyer leaves a firm, the firm may represent a client even "with interests materially adverse to those of a [former] client represented by the formerly associated lawyer . . . unless (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client." "Substantially related" is understood to mean "identical" or "essentially the same." Gulf Coast Mktg. Grp., Inc. v. JTH Tax LLC, 2021 WL 1990175, at *5 (E.D. Va. May 18, 2021) (citations omitted). "The substantial relationship test requires a virtual congruence of issues, and the relationship between issues in the prior and present case must be patently clear." Id. (cleaned up).

9

Yelp and NMA allege that Paul, Weiss's representation of them was substantially related to the issues involved in the underlying civil action because it involves "common factual and legal issues and shared common evidence." [Dkt. No. 460] at 10. To support this claim, the non-parties allege that in August 2019, when the Department of Justice opened an antitrust investigation into Google's Ad Tech and Internet search businesses, the Department received "documents and advocacy materials from many third parties," including from Kanter and Kressin on behalf of Yelp and NMA. Id. (cleaned up). Yelp and NMA argue that Google conceded that the matters are substantially related when it sought Rule 45 subpoenas from Yelp and NMA relating to Paul, Weiss's previous representation and communications with the Department of Justice.

To support this allegation, Yelp and NMA point primarily to the White Paper drafted by Kanter and Kressin and submitted to federal antitrust enforcement officials. As previously discussed, the White Paper focused on Google's Internet search business, an aspect of the company's business that is the subject of a different civil action brought by the Department of Justice in a different jurisdiction. That action does not involve Google's Ad Tech business, and Paul, Weiss is not involved in the representation of Google in that litigation. On this record, the non-parties have failed to provide "patently clear" evidence that Paul, Weiss attorneys provided legal advice concerning Google's Ad Tech business, or received confidential information from Yelp or NMA concerning Google's Ad Tech business. See Gulf Coast Mktg., 2021 WL 1990175, at *5 (denying disqualification where movant did not show a "patently clear connection between the confidential information obtained during [former counsel's representation] and the issue at bar").

10

As to Google's subpoena requests of Yelp and NMA, the May Yelp Subpoena focused on Yelp's Ad Tech practices but did not seek any information related to Paul, Weiss's representation of Yelp. [Dkt. No. 460] Ex. D. at 28-32. The August Yelp and NMA Subpoenas did request such information; however, the non-parties objected to those subpoenas as "irrelevant to the claims and defenses in this case," and they did not turn over any materials related to those requests. In fact, the non-parties admit in their brief that "Yelp's past advocacy to DOJ had focused on Internet search, not advertising technology." [Dkt. No. 460] at 6. This admission undermines the argument that the underlying issues involved in Paul, Weiss's representation of Yelp and NMA are substantially related to the issues in the Ad Tech litigation, given that the non-parties took a different position when defending against the August Subpoena requests. Neither Yelp nor NMA produced documents responsive to the August Subpoenas and those subpoenas are no longer pending, as fact discovery has now closed.

Finally, Yelp and NMA posit—though without specificity—that Paul, Weiss has retained confidential data relating to their advertising technology businesses that the non-parties transmitted to Kressin while he was an attorney at the firm. Importantly, Yelp and NMA do not contend that any current Paul, Weiss attorney has access to or has used such information in their representation of Google in the underlying civil action. In response to this position, Paul, Weiss has provided a declaration by its Deputy General Counsel, Elizabeth McCabe, stating that the firm has screened each lawyer working on the Ad Tech litigation and prohibited them from ever accessing such documents from the firm's prior representation of Yelp and NMA that may exist in the firm's internal document management system. [Dkt. No. 477] at 18-19.

The purpose of the "substantial relationship" inquiry is to prevent an attorney from appearing against a former client when there is a "reasonable probability that confidences were

disclosed in prior representation which could be used against the former client in subsequent litigation." Gulf Coast Mktg., 2021 WL 1990175, at *5 (quoting In re Stokes, 156 B.R. 181 (Bankr. E.D. Va. 1993). Here, Paul, Weiss represented Yelp and NMA three years ago, primarily to communicate with federal antitrust officials regarding Google's purported anticompetitive conduct in the Internet search industry. That representation was led by lawyers who are longer at the firm—with one exception, Daniel Crane, who is no longer participating in the Ad Tech litigation.[5] This civil action focuses solely on whether Google's Ad Tech business violates federal antitrust laws, an issue that materially differs from Google's Internet search technology. Moreover, neither Yelp nor NMA are parties in this litigation. As such, Yelp and NMA have failed to provide "patently clear" evidence demonstrating how specific confidential information Paul, Weiss may have obtained during the previous representation is substantially related to the dispute in the instant litigation.

### C. Materially Adverse

A conflict of interest arises under Rule 1.9(a) if the interests of a lawyer's current client are "materially adverse" to those of a former client. The principles in Rule 1.7 determine whether the interests of the present and former client are adverse. See Va. Rule 1.9, cmt. 1. "As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." Va. Rule 1.7, cmt. 6; see also Atl. Diving Supply, Inc. v. Komornik, 108 Va. Cir. 154 (2021) ("'The principles in Rule 1.7 determine whether the interests of the present and former client are adverse.'" (quoting Va. Rule 1.9(a), cmt. 1)); ABA Formal Op. 497 (Feb. 10, 2021) ("While material adverseness is present when a current client

---

[5] See [Dkt. No. 484] at 11:12-15 (Crane has "been screened from this matter entirely, so he is not, at present, at all part of the Paul, Weiss team representing Google.").

and former client are directly adverse, material adverseness also can be present where direct adverseness is not."). The parties dispute whether Google's position in the underlying civil action is materially adverse to the non-parties' previous position in which they were represented by Paul, Weiss.

Paul, Weiss's representation of Google in the Ad Tech litigation presents neither a directly adverse conflict nor a significant risk that the firm's representation will be materially limited by its former representation of Yelp and NMA. To start, neither Yelp nor NMA is a party to the underlying litigation; the litigation will not impose any liabilities on Yelp or NMA; and neither Yelp nor NMA would be a party to any efforts to settle the litigation. Nothing in the Complaint brought by the United States and eight states mentions either Yelp or NMA or pits Google against either non-party. See Roberts v. Hewlett Packard Computing & Printing, Inc., 2021 WL 1985444, at *3 (E.D. Va. May 18, 2021). Faced with these uncontested facts, the non-parties suggest that the underlying litigation involves "an adverse alleged monopolist and one of the world's largest companies," which, depending on the outcome, could result in negative economic ramifications across the Ad Tech and Internet search industries. [Dkt. No. 460] at 13. But general economic interest in the outcome of a case does not meet the "material adversity" requirement of Rule 1.9(a). See Va. Rule 1.7, cmt. 6 ("[S]imultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients."); ABA Formal Op. 21-497 ("[G]eneral economic or financial adverseness alone does not constitute material adverseness."). Accordingly, the non-parties' generalized economic concerns—which are shared by nearly all entities that engage in Internet advertising—are not sufficient to satisfy the material adverseness requirement imposed by the Virginia Rules of Professional Conduct.

Moreover, the non-parties' receipt of Rule 45 subpoenas from Axinn and Freshfields (not Paul, Weiss) does not establish material adversity. Neither Yelp nor NMA complied with the August Subpoenas. Fact discovery has now closed, which shields the non-parties from having to provide such information in this civil action. On this record, the non-parties have failed to meet their burden of demonstrating material adversity, either direct or otherwise.

### D. Disqualification Sanction

Even if the Court were to agree with the non-parties that Paul, Weiss has taken a position that is materially adverse to them in a substantially related matter, disqualification would be an inappropriate sanction. A violation of Rules 1.9(a) or 1.10(b) does not automatically yield disqualification of counsel. The severe sanction of disqualification has, "with rare exceptions[,] . . . been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly[,] (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, thus giving his present client an unfair advantage." Reese v. Virginia Int'l Terminals, Inc., 894 F. Supp. 2d 665, 674 (E.D. Va. 2012) (quoting Bd. of Educ. of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).

First, the parties agree that there is nothing in the record to suggest that Paul, Weiss's previous representation of Yelp and NMA—which ended in 2020 and was almost entirely performed by lawyers who have since left the firm—has compromised its ability to represent Google in this civil action.

Instead, the parties dispute whether there is a credible risk of taint or a concern that Paul, Weiss could use the non-parties' confidential information in this civil action to injure the non-parties by aiding Google, or that such a risk creates an appearance of impropriety. The non-

parties argue that a mere possibility of breach of confidence is sufficient to trigger the extraordinary remedy of disqualification. To put the risk another way, since Google was unable to obtain such information through the subpoena process, it may resort to having Paul, Weiss provide the information through inappropriate internal channels.

But Paul, Weiss has averred that "[n]o one on the Paul, Weiss team representing Google ever did any work for Yelp or NMA related to Google's Ad Tech business or received any confidential information concerning Yelp or NMA relevant to Google's Ad Tech business." [Dkt. No. 477] at 20. Moreover, the firm has screened the trial team from accessing any documents related to the entirety of the Yelp and NMA representations. The mere "[s]peculation regarding the divulging of client confidences will not suffice to grant a motion to disqualify." See Calamar Enters., Inc. v. Blue Forest Land Grp. LLC, 222 F. Supp. 3d 257, 263 (W.D.N.Y. 2016). Out of an abundance of caution, the Court will require Paul, Weiss to continue to screen Daniel Crane, who participated in 36-hours of billable work on the 2020 White Paper, as well as any other attorneys and support staff who participated in previous representations of the non-parties, from the underlying Ad Tech civil action in this Court. This will result in the trial team having no attorneys who participated in any work for the non-parties, including work related to the Internet search litigation, which is the subject of a different civil action being tried in the District of Columbia.

Lastly, Yelp and NMA argue that disqualification of the entire firm is warranted because Paul, Weiss "is just one of many law firms that represent Google in this case," and although "Google may suffer some loss of time and money by losing Paul, Weiss as counsel," it is "not being compelled to retain new counsel," because it "will still have sufficient counsel representing its interests." [Dkt. No. 460] at 14 (cleaned up). This argument is not persuasive.

Disqualification of Google's lead trial counsel at this late stage in a complex, consequential, and fast-moving case would impose unnecessary expense, risk a delay in the trial, and waste both plaintiffs' and Google's resources.

### III. CONCLUSION

For the reasons articulated from the bench and as further explained by this Memorandum Opinion, Yelp and NMA's Motion to Disqualify will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 16th day of October, 2023.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge