```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3   ---------------------------x
     UNITED STATES, et al.,      :    Civil Action No.:
 4                               :    1:23-cv-108
                Plaintiff,       :
 5        versus                 :    Friday, October 27, 2023
                                 :    Alexandria, Virginia
 6   GOOGLE LLC,                 :
                                 :    Pages 1-15
 7              Defendant.       :
     ---------------------------x
 8
             The above-entitled motions hearing was heard before
 9   the Honorable John F. Anderson, United States Magistrate
     Judge.  This proceeding commenced at 11:12 a.m.
10
                         A P P E A R A N C E S:
11
     FOR THE PLAINTIFFS:    GERARD MENE, ESQUIRE
12                          OFFICE OF THE UNITED STATES ATTORNEY
                            2100 Jamieson Avenue
13                          Alexandria, Virginia  22314
                            (703) 299-3700
14
                            JULIA TARVER WOOD, ESQUIRE
15                          UNITED STATES DEPARTMENT OF JUSTICE
                            ANTITRUST DIVISION
16                          450 Fifth Street, NW
                            Washington, D.C.  20530
17                          (202) 894-4266

18                          MICHAEL FREEMAN, ESQUIRE
                            UNITED STATES DEPARTMENT OF JUSTICE
19                          801 West Superior Avenue
                            Suite 400
20                          Cleveland, Ohio  44113
                            (216) 622-3611
21
                            JONATHAN HARRISON, II, ESQUIRE
22                          OFFICE OF THE ATTORNEY GENERAL
                            OFFICE OF THE SOLICITOR GENERAL
23                          202 North Ninth Street
                            Richmond, Virginia  23219
24                          (804) 786-7704

25
                                                              1
```

```
 1                    A P P E A R A N C E S:

 2   FOR THE DEFENDANT:       CRAIG REILLY, ESQUIRE
                              LAW OFFICE OF CRAIG C. REILLY
 3                            209 Madison Street
                              Suite 501
 4                            Alexandria, Virginia  22314
                              (703) 549-5354
 5
                              JEANNIE RHEE, ESQUIRE
 6                            HEATHER MILLIGAN, ESQUIRE
                              PAUL, WEISS, RIFKIND,
 7                            WHARTON & GARRISON LLP
                              2001 K Street, NW
 8                            Washington, D.C.  20006
                              (202) 223-7300
 9
     COURT REPORTER:          STEPHANIE M. AUSTIN, RPR, CRR
10                            Official Court Reporter
                              United States District Court
11                            401 Courthouse Square
                              Alexandria, Virginia  22314
12                            (571) 298-1649
                              S.AustinReporting@gmail.com
13
            COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

2

|     |     |
| --- | --- |
| 1   | P R O C E E D I N G S |
| 2   | THE DEPUTY CLERK:  Calling Civil Action Matter Number 23-cv-108, United States, et al. versus Google LLC. |
| 4   | MR. MENE:  Good morning, Your Honor.  Gerard Mene with the U.S. Attorney's Office. |
| 6   | MS. WOOD:  Good morning, Your Honor.  Julia Wood from the DOJ.  With me, my colleague, Michael Freeman, who will be arguing today. |
| 9   | THE COURT:  Good morning. |
| 10  | MR. FREEMAN:  Good morning, Your Honor. |
| 11  | MR. HARRISON:  Good morning, Your Honor.  Jonathan Harrison from the Virginia Attorney General's Office on behalf of the plaintiff states. |
| 14  | THE COURT:  Thank you. |
| 15  | MR. REILLY:  Good morning, Your Honor.  Craig Reilly on behalf of defendant, Google, together with my co-counsel, Jeannie Rhee and Heather Milligan from the Paul, Weiss firm.  And with the Court's permission, Ms. Rhee will address the Court this morning. |
| 20  | THE COURT:  Okay.  Well, surprisingly, the briefs were small in this matter, so I've had plenty of time to review them fully and completely. |
| 23  | I'll hear from plaintiffs.  I've just got to say, I -- when I made my comments about coming back to the Court, it was not we just want these; it's, you have to show me |

3

```
 1   something as to why they're really needed.  And just
 2   providing me with lists of, you know, the numbers of
 3   documents, and that there are a lot of documents that this
 4   person is a custodian to, you know, really doesn't -- I'm
 5   not finding that persuasive.  And I suspect every document
 6   that got produced in this case could prompt one to want to
 7   ask somebody a question on it.  Okay.  So the idea that we
 8   got a lot of documents, and this person is a custodian, and
 9   we would like to ask them questions about it really isn't
10   good cause, at least in my view, of opening up discovery and
11   allowing two more depositions.
12           So, tell me, why isn't there more meat on the
13   bones here as to these two individuals and what it is that
14   these new documents -- and you've deposed one already in the
15   investigation --
16           MR. FREEMAN:  Yes.  Certainly, Your Honor.
17           THE COURT:  Go ahead.
18           MR. FREEMAN:  I think I can place some meat on the
19   bones of what we have found to date, but also why it's not
20   laid out in detail in the papers.
21           The first is, it's an ongoing process of discovery
22   review.  What we have marked as highly relevant of these two
23   custodians in the late productions, we have endeavored to
24   then go back and check if they had been produced before in
25   duplicates or near duplicates, meaning that the relevant
```

4

1  language had not been disclosed previously, or that
2  95 percent of the words are not not similar.  So it's an
3  automated process to determine that they're new.
4          But to answer your question about whether they
5  are -- about what's new about these particular things and
6  why they're not in the appropriate filings is, why should
7  Google, the defendant, have the advantage of seeing the
8  deposition strategy of the plaintiffs beforehand?  Because I
9  think it's important to know why we're here today, is that
10 we are here today because Google violated the discovery
11 order, and, quite frankly, gave more documents now than
12 before.
13         But to answer you question, Your Honor, we are
14 prepared today to, as we noted in our papers, to provide the
15 highly-relevant documents to the Court for review to show
16 and explain to you the relevance in what we didn't know and
17 what we want to ask them moving forward.
18         Also, we are prepared to forgo affirmative use of
19 two prior depositions that we took in this case to still
20 limit the number to the ten depositions, and we think that
21 will limit the prejudice to the plaintiffs by also not
22 giving us any sort of benefit of the 12 documents.
23         And the reason why these two particular people are
24 important, Your Honor, they were under serious consideration
25 prior to discovering the discovery violation.  In

```
1    particular, Mr. Sinaniyev is a current vice president of
2    engineering, and, therefore, can fill the gap from the close
3    of the investigation until present day.  And then
4    Mr. Bellack had always been on the plaintiffs' radar as a
5    potential deponent.  He was deposed in the investigation
6    phase, and, therefore when we were deciding --
7              THE COURT:  When was he deposed in the
8    investigation phase?
9              MR. FREEMAN:  I don't have the precise date for
10   Your Honor.  I could certainly get that to you.  But in the
11   year 2020.
12             What's important then is, while we looked at the
13   new documents, we were severely handicapped and thought
14   there were not that many new documents to ask him questions
15   about.  But that was before we knew that Google was sitting
16   on a trove of 83,000 new Bellack documents.  And because of
17   that late disclosure, that would have ultimately tipped the
18   scales in favor of deposing Mr. Bellack, had we known then
19   what we know now.
20             And, therefore, we don't think we should be
21   prejudiced further due to the discovery violation for an
22   occurrence that we had no part in and actually took an
23   affirmative step to try to avoid.  That Google should not be
24   rewarded by handicapping the plaintiffs of who we can depose
25   by their significant late disclosures.
```

```
 1              THE COURT:  I'm a little concerned about the
 2   government's position of, we can't tell you what's relevant
 3   because we don't want to tip the other side off about what
 4   we think is relevant.
 5              MR. FREEMAN:  Just to be clear --
 6              THE COURT:  I mean, that's, in essence -- what
 7   you're saying is you can't present evidence to me to support
 8   your motion to show good cause, because if you told me any
 9   of the specifics, they would know what you're going to want
10   to ask, you know, these two people.
11              MR. FREEMAN:  I think there's two things, Your
12   Honor.  We are prepared to show the Court, as we indicated
13   in an ex parte proceeding, but to what end would that have?
14              We would present a document to you to show the
15   evidence.  Inevitably, Google would challenge that or say it
16   was related to some previously produced document, and the
17   Court would not be further enlightened as to whether -- how
18   relevant this particular document is.
19              The substance of these documents are dense and
20   unique to this particular field, and, therefore, someone
21   coming in from the outside looking in, it would be very
22   difficult to determine the relevancy of that particular
23   document.  And I think it's clear that one document or one
24   email or one particular offhanded comment could actually
25   tilt the favor of deposing that particular person.
```

1          THE COURT:  Well, there are probably dozens of
2   people that you could make an identical argument about;
3   right?
4          MR. FREEMAN:  I'm not sure the number is that
5   high, but I understand your point, Your Honor.
6          THE COURT:  I mean, I'm -- the idea was that if
7   you were going to come in and ask for more depositions than
8   we had agreed and set and modified and all these things,
9   you're going to have to show me good cause for it.  And just
10  coming in and saying, you know, we got a lot of documents,
11  we got a lot more documents, I don't have any declarations
12  indicating that, you know, a decision maker would have made
13  this decision otherwise.  I mean, I'm a little at a loss as
14  to how you think the Court can find good cause based on, you
15  know, the number of documents and that, you know, they have
16  relevant information and you would like to ask somebody
17  about those documents.
18         MR. FREEMAN:  Well, I think the percentage, even
19  of all documents in this particular case, including the
20  investigation, more than half were disclosed after September
21  the 8th.
22         THE COURT:  Are they substantive?  Do they have
23  information in them?  You're just giving me numbers, and
24  you've said, you know, they've got relevant information that
25  you would like to ask somebody about.

8

```
 1              MR. FREEMAN:  We're happy to provide a declaration
 2   if that would enlighten the Court.
 3              THE COURT:  Well, it's your motion.  I mean, I
 4   don't tell you how to file a motion.  I don't tell you --
 5   you know, you brought this to the Court's attention.  You
 6   knew that you were going to have to establish good cause to
 7   do it.  And I have to decide the motion based on the records
 8   that's in front of me, and there's nothing here.
 9              MR. FREEMAN:  I understand, Your Honor.  I think
10   it's important, though, that -- to level the playing field.
11   That Google had the opportunity to make their decisions of
12   who to depose on timely and complete production, and we
13   don't believe that it's appropriate and that we are severely
14   prejudiced by the idea that 2 million documents were
15   disclosed after September 8th, but not just that,
16   particularly to these two defendants.  And as we had
17   indicated before, there are substantive information within
18   the late disclosed documents that are new and never seen
19   before, and we are prepared to show the Court and establish
20   the relevancy, but we don't think this should be a windfall
21   for Google in terms of getting documents prior to a
22   deposition that they wouldn't ordinarily have.
23              As we indicated in the papers, in the ordinary
24   course, we would not have to produce anything to Google to
25   establish who we want to depose and why we want to depose
```

```
 1  them.  The only reason why we're in here is because of the
 2  discovery violation, and, therefore, they shouldn't get an
 3  extra benefit or reward for their own discovery violation.
 4  We think that, therefore, it's fair and equitable to say
 5  that these two particular deponents we would have deposed if
 6  they did timely production, which they did not, and,
 7  therefore, we are just -- not a reward or windfall for the
 8  plaintiffs, but actually just putting us back on equal
 9  footing as if the discovery violation had not occurred.
10            THE COURT:  All right.  Let me hear from opposing
11  counsel.
12            MR. FREEMAN:  Thank you, Your Honor.
13            THE COURT:  I take it when you say you want to not
14  use -- I'm sorry.  I've got one -- two other depositions.
15  You want to permanently use two other depositions.  Which
16  two of those that you're saying you wouldn't use?
17            MR. FREEMAN:  That would be Mr. Timothy Craycroft
18  and Mr. Rahul Srinivasan, which was mentioned in Google's
19  response.
20            THE COURT:  All right.
21            MS. RHEE:  Your Honor, when the Court said back on
22  September 15th that plaintiffs' request for four additional
23  depositions for the four that have already been taken was
24  going to be denied and that there wasn't going to be a carte
25  blanche do-over, there needed to be good cause shown for any
```

1  additional deposition request, that was the standard that
2  needed to be met.  This pleading and this motion doesn't
3  meet that standard.
4        The measures that DOJ is now positing, that the
5  two depositions that have already been taken, that they have
6  decided now, after the fact, because those depositions they
7  have before them, and perhaps DOJ doesn't like what they
8  got, and so, therefore, they're going to not reopen them and
9  they're happy to walk away from them is beside the point.
10 At the time that they took them, they made the determination
11 that those individuals were relevant, that they were
12 important, and they took those.
13       More importantly, Your Honor, particularly with
14 respect to Mr. Craycroft, not only was he a Google witness,
15 but before he joined Google, he had been a senior Amazon
16 executive for 15 years prior.  And for the 170 pages of the
17 deposition that DOJ took, there were no less then 188
18 references to Amazon, and of the five documents that Google
19 introduced in that deposition, four of those five were
20 Amazon custodial documents, because Mr. Craycroft had been a
21 designated custodian for Amazon during that time.
22       And so what Google chose to -- or what DOJ chose
23 to do with respect to what they had available was to use
24 some of their time in order to ask Mr. Craycroft about his
25 prior time at Amazon.  And that was entirely their

11

1  prerogative, and that was entirely their determination. And
2  so that is something that has nothing to do with the
3  post-production documents, that has nothing to do with now
4  what they're seeking here in terms of the do-over or the
5  potential swap. Just taking their motion on its face, the
6  Court is right to just say that a recitation of the volume
7  of documents is insufficient.
8      What we set out in our opposition is that DOJ was
9  well aware of Mr. Bellack. DOJ had over 90,000 preexisting
10 documents, and then an additional -- and here we have a
11 dispute with respect to count. They say they only had 6,000
12 litigation production documents; we actually, by our count,
13 see that there were almost 15,000 additional documents. But
14 none of that is actually relevant, because, again, as the
15 Court rightly notes, it's not about the numbers; it's all
16 about what's relevant in them. And the standard should be
17 what is so new and material.
18     And what DOJ just told you today is, they're not
19 sure, because they are still running the analysis. They
20 don't know in the new post-produced documents what is new
21 and what is material because they are still trying to see
22 what the dupe looks like, and so they're not willing to
23 proffer, and they're not in a position to proffer what is it
24 about the post-ingestion site production that they didn't
25 know previously when the complaint, the press, Mr. Bellack's

12

1  preexisting documents well known to DOJ certainly at the
2  time of their investigation, at the time that they deposed
3  them, at the time that they drafted the complaint, they were
4  well, well aware.
5       And with that, Your Honor, unless there are
6  further questions, I think the record and the pleadings
7  speak for themselves.
8       THE COURT: Is there anything else from the
9  government?
10      MR. FREEMAN: The plaintiffs were severely
11 prejudiced by this late disclosure, and there are certain
12 things that cannot be undone. One of the few things that
13 the Court can do to limit that prejudice is to grant these
14 two particular motions.
15      And I believe it's unfair to suggest that we have
16 to go through all of the documents, including productions as
17 late as last night, to make that analysis before the Court.
18 And that there were key admissions, as we know, in those
19 documents already that ultimately would have tipped our
20 scale, and we think to eliminate the prejudice as much as
21 possible, we believe that the request for relief is
22 appropriate.
23      THE COURT: Well, you know, I think I have, in
24 earlier hearings, expressed my concern about the document
25 production by the defendant in this case. I addressed it

13

```
 1  initially, and, you know, I told the parties that I was open
 2  to considering allowing additional depositions if the record
 3  established good cause for doing that.
 4          You know, we all knew there were going to be a lot
 5  of new documents being produced at that time, and my
 6  intention, maybe not expressed as well as it probably should
 7  have been, was that if you were going to seek to take
 8  additional depositions, that you would have to show me who
 9  and why.  And I know the who, but I'm not -- I don't think
10  the record is sufficient for me to establish the why in this
11  case.
12          You know, I am positive that there were a lot of
13  new documents that had never been seen before that were
14  produced in the millions of documents that have been
15  produced, and I suspect that they are all relevant and that
16  a number of them have certain people as custodians.  But,
17  you know, there has to be more than just that to get to the
18  point of where I would allow you to reopen discovery and
19  take additional depositions as to, you know, what their job
20  duties are, what their responsibilities are, what the new
21  information is related to that makes it significant enough
22  for me to do this.  And the idea that the government somehow
23  wants to hide that information from the defendant is
24  concerning.
25          I mean, you know, the issues in this case ought to
```

1   be pretty well known by now, and the idea that, you know,

2   this -- you've got a lot of new documents about this issue

3   from this person in order to establish opening up a

4   discovery -- and, you know, you may argue about it, I may

5   not understand it, but I can at least decide it based on a

6   record as to, you know, whether it really has some substance

7   to it.

8         So based on the record that's in front of me, I

9   feel compelled to deny the motion to require these two

10  additional depositions.  Okay.

11        Thank you.  Court will be adjoined.

12         (Proceedings adjourned at 11:32 a.m.)

13        ----------------------------------

14  I certify that the foregoing is a true and accurate

15  transcription of my stenographic notes.

16         *Stephanie Austin* [signature]

17         Stephanie M. Austin, RPR, CRR

18

19

20

21

22

23

24

25

15