1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
2                  ALEXANDRIA DIVISION

3    --------------------------x
     UNITED STATES, et al.,      :    Civil Action No.:
4                                :    1:23-cv-108
               Plaintiffs,       :
5         versus                 :
                                 :    Friday, January 26, 2024
6    GOOGLE LLC,                 :    Alexandria, Virginia
                                 :    Pages 1-31
7              Defendant.        :
     --------------------------x
8

9         The above-entitled motions hearing was heard before
     the Honorable John F. Anderson, United States Magistrate
10   Judge.  This proceeding commenced at 10:06 a.m.

11                   A P P E A R A N C E S:

12   FOR THE PLAINTIFF:    AARON TEITELBAUM, ESQUIRE
                           UNITED STATES DEPARTMENT OF JUSTICE
13                         ANTITRUST DIVISION
                           450 Fifth Street, NW
14                         Washington, D.C.  20530
                           (202) 894-4266
15
                           JONATHAN HARRISON, II, ESQUIRE
16                         OFFICE OF THE ATTORNEY GENERAL
                           OFFICE OF THE SOLICITOR GENERAL
17                         202 North Ninth Street
                           Richmond, Virginia  23219
18                         (804) 786-7704

19                         WILLIAM HOCHUL, ESQUIRE
                           OFFICE OF THE UNITED STATES ATTORNEY
20                         2100 Jamieson Avenue
                           Alexandria, Virginia  22314
21                         (703) 299-3700

22

23

24

25
                                                              1

```
 1                    A P P E A R A N C E S:

 2   FOR THE MOVANTS:        CHARLES BENNETT MOLSTER, III, ESQUIRE
                             THE LAW OFFICES OF CHARLES B. MOLSTER,
 3                           III, PLLC
                             2141 Wisconsin Avenue, NW
 4                           Suite M
                             Washington, D.C.  20007
 5                           (703) 346-1505

 6                           JOHN THORNE, ESQUIRE
                             DANIEL BIRD, ESQUIRE
 7                           KELLOGG HANSEN TODD
                             FIGEL & FREDERICK PLLC
 8                           Summer Square
                             1615 M Street, NW
 9                           Suite 400
                             Washington, D.C.  20036
10                           (202) 326-7900

11   FOR THE DEFENDANT:      BRADLEY JUSTUS, ESQUIRE
                             JAMES HUNSBERGER, ESQUIRE
12                           AXINN VELTROP & HARKRIDER, LLP
                             1901 L Street, NW
13                           Washington, D.C.  20036
                             (202) 699-0950
14
                             BLAKE PESCATORE, ESQUIRE
15                           AXINN VELTROP & HARKRIDER, LLP
                             114 West 47th Street
16                           New York, New York  10036
                             (212) 782-3181
17
     COURT REPORTER:         STEPHANIE M. AUSTIN, RPR, CRR
18                           Official Court Reporter
                             United States District Court
19                           401 Courthouse Square
                             Alexandria, Virginia  22314
20                           (571) 298-1649
                             S.AustinReporting@gmail.com
21
         (PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING,
22       TRANSCRIPT PRODUCED BY COMPUTERIZED TRANSCRIPTION.)

23

24

25
                                                                2
```

```
1                    P R O C E E D I N G S
2            THE DEPUTY CLERK:  Calling Civil Action Matter
3   Number 23-cv-108, United States, et al. versus Google LLC.
4            THE COURT:  Good morning.  I'll have counsel
5   introduce themselves for the record, please.
6            MR. TEITELBAUM:  Good morning, Your Honor.  Aaron
7   Teitelbaum for the United States from the Antitrust
8   Division.
9            MR. HARRISON:  Jonathan Harrison from the Virginia
10  Attorneys General's Office.
11           MR. HOCHUL:  William Hochul for the United States.
12           THE COURT:  Thank you.
13           MR. MOLSTER:  Good morning, Your Honor.  Charles
14  Molster on behalf of the movants, Daily Mail and Gannett.
15  Also with me at counsel table is John Thorne and
16  Daniel Bird.  And with the Court's permission, Mr. Thorne
17  will argue our motion.
18           THE COURT:  Okay.  Thank you.
19           MR. JUSTUS:  Your Honor, Bradley Justus from Axinn
20  for Google.  I have my colleagues James Hunsberger and Blake
21  Pescatore, and I'll be arguing.
22           THE COURT:  Okay.  Thank you.
23           Well, good morning, everybody.  Happy new year.
24  It should be an interesting year for everyone, I suspect.
25           So, Mr. Thorne, the first question for you is, you
```

3

```
 1    know -- and I've read everything, so this won't take long, I
 2    don't think.
 3              The relief you're -- your clients are in the
 4    New York action; right?
 5              MR. THORNE:  That's correct, Your Honor.
 6              THE COURT:  Why are you involved at all in the
 7    Texas case?  You asked for relief that would apply to the
 8    Texas case.  What basis do you have to come into our court
 9    asking for something with the Texas Attorney General and
10    others?
11              MR. THORNE:  The MDL plaintiffs -- by the way,
12    Your Honor, John Thorne for Gannett and Daily Mail.  Those
13    are my two clients.
14              THE COURT:  All right.
15              MR. THORNE:  Gannett, the largest circulation U.S.
16    newspaper; Daily Mail, the most popular online --
17              THE COURT:  All right.
18              MR. THORNE:  Thanks.
19              The MDL plaintiffs have been coordinating with
20    Texas since we were ordered --
21              THE COURT:  Texas didn't want to be there, so they
22    left.  So why am I doing anything on your behalf that has to
23    do with Texas?
24              MR. THORNE:  Your Honor, I represent -- I'm on
25    behalf of the MDL plaintiff.  I carry no water for Texas
```

                                                              4

1    other than --

2           THE COURT:  Well, you're asking for relief for

3    Texas.

4           MR. THORNE:  Relief for the parties that are in

5    the MDL or were in the MDL.

6           When Congress passed the Venue Act, they wanted to

7    enhance state enforcement, and it seems odd that we would

8    somehow prejudice a state that has moved back to its home

9    forum by not giving them the same ability that other

10   plaintiffs would have in getting access to --

11          THE COURT:  They had the opportunity to be here.

12   They had the opportunity to be involved in the MDL action

13   here.  They had the opportunity to negotiate here under the

14   protective order and they didn't do it.  But, for some

15   reason, you, a non-party in this case, a party in the

16   New York case, are coming in and asking for relief that

17   would also apply to the Texas case.

18          I'm just -- I'm confused as to why you, on behalf

19   of your client that is in the New York case, apparently want

20   me to do something that would impact actions in Texas for

21   parties who were in the New York case but fought hard to get

22   out of the New York case to be able to go back to Texas.

23          MR. THORNE:  Your Honor, the only effect we're

24   looking for is relief from this Court for either the

25   Department of Justice and Virginia and other states, or

1    Google, if it changes its mind and wants to, to share expert
2    materials with the other people that have access to the same
3    raw factual underlying material.  It's a -- it just seemed
4    logical to include Texas and others who were in that same
5    group that were coordinated with the Virginia parties all
6    the way through the Virginia fact discovery.
7              Your Honor, I have no brief for Texas.  It seemed
8    like a logical piece of the relief to request here.
9              THE COURT:  And what is logical about the relief
10   that you're asking?  You have an expert schedule in New York
11   that the Court has entered; right?
12             MR. THORNE:  That's correct, Your Honor.
13             THE COURT:  Okay.  And what is that schedule?
14             MR. THORNE:  The schedule is our first expert
15   report is due in August, and then a rebuttal report and
16   depositions that all concludes by the end of this year.
17   That's our expert schedule.  This motion is not about our
18   expert schedule.  This is because --
19             THE COURT:  Oh, it is.  It is about the expert
20   schedule.  You want to see the experts' reports in our case
21   before you have to do your expert reports in New York.
22             MR. THORNE:  For the purpose of being efficient in
23   the fact discovery.  As you know, the amount of factual
24   material that's been produced here is huge.
25             THE COURT:  All right.  Well, let me ask you this,

6

1    in New York, is there fact discovery and then expert

2    discovery?

3              MR. THORNE:  That's correct, Your Honor.

4              THE COURT:  So what's more -- why is it going to

5    be any -- if we didn't have this case going on, why do

6    you -- what would be any different in the fact discovery and

7    the expert discovery in New York?

8              MR. THORNE:  If there were two plaintiffs in two

9    cases, wherever they're located -- and here we've got the

10   prior efficiency that they were coordinated, we have access

11   to literally the same --

12             THE COURT:  All the fact discovery.

13             MR. THORNE:  All the same fact discovery.

14             THE COURT:  Right.  So that got coordinated, you

15   know --

16             MR. THORNE:  Two --

17             THE COURT:  All the fact discovery in this case is

18   done.

19             MR. THORNE:  Two plaintiffs trying to figure out

20   what's the truth of the matter, what did Google do.  It's

21   hard to do the discovery that we have to do, given the

22   volume of materials.

23             If DOJ has identified here's where Project

24   Bernanke happened, these documents, look at these documents,

25   if that's in their expert reports, they will save us time.

                                                          7

1    That will help focus the discovery we're doing.  We're

2    headed towards something north of 100 more depositions, Your

3    Honor.  Texas is taking 40.  They're in the process --

4    they're dragging us into coordination with Texas.  Google is

5    taking another 40 Texas depositions, another 15 MDL

6    depositions.  We're looking at a large body of additional

7    fact discovery that can be done more efficiently if we have

8    access to -- only if people want to do it.  If the

9    Department of Justice had no interest in sharing its expert

10   reports, we wouldn't be here.  If Google changes its mind or

11   wants to share, what should stop them?

12          THE COURT:  So you're telling me if the United

13   States has got an expert that says X, you're not going to do

14   any discovery about whatever some expert that the United

15   States has in this case that says X?

16          MR. THORNE:  If the United States has got an

17   expert that says, here are the 20 documents that show where

18   Bernanke happened -- you know, I'll give you a very concrete

19   example.  We have -- we have a software source code expert

20   that has been in sort of a cramped room at the Axinn firm up

21   in New York trying to read the source code.  I assume DOJ's

22   got that, too.  It's literally where the crime scene is,

23   where the software was changed to manipulate the documents.

24   If they've identified locations in the software, that will

25   facilitate our getting to the heart of the matter as well.

                                                              8

```
 1              THE COURT:  Why do you need that in an expert

 2    report?  Why don't you just, you know, try and coordinate

 3    informally with the United States or whoever else about, you

 4    know, where is all this -- you know, where are the hot

 5    documents for Bernanke?  Is there anything that limits you

 6    from doing that other than seeing an expert report?

 7              MR. THORNE:  Your Honor, I believe nothing limits

 8    that sort of important issue.

 9              THE COURT:  So why do you need the expert report?

10              MR. THORNE:  The expert reports are an efficient

11    way to get at the -- you know, essentially the fact

12    discovery analysis that will aid the additional similar fact

13    discovery that's going on in our cases.

14              THE COURT:  And so the good cause is, you want

15    something to make it easy for you?

16              MR. THORNE:  The good cause is to be more

17    efficient in enforcing the antitrust laws.  And, you know,

18    the best case that Google had than the Texas case, which

19    said you can't compel a defendant, can't compel Google to

20    turn over DOJ's expert reports, but if DOJ wants to share

21    what Texas says, that's fine.

22              THE COURT:  DOJ isn't moving for this.

23              MR. THORNE:  DOJ --

24              THE COURT:  They haven't taken a position on it,

25    so, you know, they're not the ones coming in here asking me
```

                                                                    9

1   to change the order that we negotiated and signed and the

2   parties have lived under for an extended period of time.

3           MR. THORNE:  DOJ will speak for itself, Your

4   Honor.  They're willing to share their expert materials with

5   the plaintiffs that they have been coordinating with.  That

6   seems like an efficiency.  A lot of courts have recognized

7   that.

8           And if we were going first, if this was the U.S.

9   against AT&T case and I was MCI and I had filed my case

10  first and I got the 7 million documents from AT&T and I had

11  figured out the one and a half million that mattered and

12  wanted to convey that to DOJ in the form of an expert

13  report, that would be --

14          THE COURT:  Why in the form of an expert report?

15  That's what I'm trying to -- I still don't understand.  I've

16  given you multiple opportunities to explain to me why seeing

17  the expert report is what needs to be done for you to try

18  and have some coordination with the Department of Justice.

19          MR. THORNE:  I don't see coordination generally

20  being hampered by the coordination order.  And if -- to the

21  extent the goal of the coordination order is to enhance

22  coordination, then a party that wants to share its expert

23  materials should be permitted to do so after the meeting and

24  conferring, which has occurred here.

25          I'm sorry to -- I know I've got the burden, I'm

                                                          10

1    the movant.  But, on the flip side, Google hasn't identified

2    any prejudice to us seeing DOJ's expert materials.

3           Well, one other technical point, Your Honor, and

4    maybe it's in the weeds, but private plaintiffs are entitled

5    to collateral estoppel under the -- not just the common law,

6    but there's a part of the Clayton Act that says if the

7    United States establishes there's been any trust violation,

8    private parties don't have to re-prove that.  So it's in the

9    statute.

10          If we pick different market definitions or

11   different theories, that would be our choice to do.  If we

12   align closely with the markets that DOJ successfully proves

13   in a trial this spring or summer, that will make the effect

14   of the collateral estoppel easier.  That's a benefit that

15   Congress anticipated private plaintiffs should get under the

16   statute.

17          THE COURT:  Well, you know what the Department of

18   Justice is going to say the market is; right?

19          MR. THORNE:  The expert reports are sort of the

20   best way to understand markets, market power and the

21   documents that support the conduct.  And, as I say, I'm

22   mostly focused on identifying and being able to establish

23   the conduct without redoing the 6 million documents and the

24   80 gigabytes of source code, et cetera, with doing as

25   efficiently that work.

                                                              11

```
 1                THE COURT:  Well, again, I'm trying to understand

 2     why you were trying to bootstrap your case on what the

 3     United States is doing in our case.

 4                MR. THORNE:  We were required to coordinate with

 5     the United States, follow your Court's very efficient

 6     schedule in depositions and fact discovery.

 7                THE COURT:  Right.  And you negotiated all of that

 8     for fact, and expert discovery was not part of that; right?

 9                MR. THORNE:  Expert discovery is -- you know,

10     we're going to file an expert report, and Google will file

11     its rebuttal after us.  We're not jumping the gun getting

12     ahead of it.  We don't need to see Google's expert report or

13     anything that reflects their material.  I don't see the

14     concern with -- that Google has expressed applying to DOJ

15     sharing its expert materials with us based on the same fact

16     material.  I only see efficiencies for the parties.

17                THE COURT:  Okay.  As best I can, I think I

18     understand what you're trying to say.  Okay.  I'll hear from

19     Google.

20                All right.  Anybody from DOJ want to say anything

21     on this?

22                MR. TEITELBAUM:  I would just reiterate, Your

23     Honor, that we don't oppose the relief that's requested

24     here.  I'm not sure if the Court views that as being

25     identical to taking no position, but, beyond that, we don't
```

                                                                    12

```
 1   have anything substantive to add.
 2           THE COURT:  I mean, you're cooperating in other
 3   respects, I take it?
 4           MR. TEITELBAUM:  You know, when --
 5           THE COURT:  To the extent they, you know, they ask
 6   for it, you'll cooperate with them, right, providing
 7   information and other --
 8           MR. TEITELBAUM:  When it's consistent with our
 9   obligations under the various orders that the Court has
10   issued, including the coordination order, then yes.
11           THE COURT:  All right.  Let me hear from Google.
12   And explain why you think your -- and I understand you don't
13   want them to have your expert reports, and I think they have
14   clarified, and I think I understand now, or closely, you
15   know, this is a if-you-want-to, you-can-do-it.  And I'm sure
16   you're not going to want to, and I'm not going to order you
17   to do it, so don't be worried about that.
18           The question I do have, though, and I'm still not
19   sure that was fully fleshed out in your memorandum in
20   opposition, is what is the harm in letting the United States
21   give them their expert reports if they want to?
22           MR. JUSTUS:  Yes, Your Honor.  Two key points.
23   One is, the coordination order that's governed the MDL and
24   this case is a hard-struck bargain.  We negotiated certain
25   benefits to Google and certain things that Google gave up in
```

1    reaching a lawyer agreement with the DOJ, and the Court

2    resolved a few open issues.  It's also been resolved by the

3    SDNY.  And Judge Castel, importantly, actually rejected the

4    very relief that the plaintiffs are now trying to come to

5    this Court and get.

6            So the first reason why we're harmed is, we just

7    struck a bargain that had some benefits and some not

8    benefits from us, and that's what all the courts entered,

9    and now they just want to go and retrieve that bargain to

10   give them benefit, without additional benefit to Google.  So

11   it's just --

12           THE COURT:  Well, the order left open the

13   opportunities for the parties to come in and talk about

14   coordination of expert discovery.  So, you know, whatever

15   was -- whatever was negotiated was not a hard-and-fast you

16   can't do anything; it was, you need to come back once we get

17   to the expert discovery phase and talk about it, I guess.

18           MR. JUSTUS:  Yes, Your Honor.  I still think they

19   need good cause, even under that provision, and I don't

20   think making it easier to litigate a parallel case is good

21   cause.  But, in any event, there is a concrete prejudice to

22   Google.

23           To the extent that DOJ's expert opinion from this

24   case just gets shared into the MDL case, what's likely to

25   happen is the MDL plaintiffs will produce a superset of

                                                          14

1    expert opinions.  So everything the DOJ opined on here, and

2    everything they would otherwise opine in the MDL, and it's

3    going to leave Google to respond to this superset of expert

4    reports, which is an additional burden, and it would also

5    just hurt the litigation itself by making the whole thing

6    less focused and making it a mess.

7         THE COURT:  Well, why do you think it would be a

8    superset and not -- if not an identical -- at least close to

9    an identical set as to what you would have already responded

10   to in this case?

11        MR. JUSTUS:  So what the movants note in their

12   brief is that they've already retained experts who are

13   already working.  So presumably they're already developing

14   some opinions, Point 1.  Point 2 is, there are differences

15   between the MDL case and this case.  So, necessarily,

16   there's going to have to be some different take on those

17   expert reports.

18        So, in my view, the logical thing -- the most

19   likely thing to happen is, everything specific to that case

20   that would need to happen will still happen, plus the

21   uniquenesses of this EDVA case that might not otherwise be

22   part of the MDL will also become part of the MDL, and you'll

23   have just a mess of expert discovery and fighting.

24        So it's really -- it's really -- I mean, it's a

25   tough motion they've brought because it's asking you to

                                                          15

1    issue an order to not only interfere with the expert process

2    in another court, where that Court has already rejected

3    plaintiffs' attempt to order the sharing.

4            THE COURT:  And what -- tell me now Judge Castel

5    was faced with that issue and what did he do.

6            MR. JUSTUS:  Yes, Your Honor.  Would it be helpful

7    if I shared with you the plaintiffs' proposed coordination

8    order from the SDNY?

9            THE COURT:  Well, just tell me about it.  I mean,

10   I --

11           MR. JUSTUS:  Sure.

12           So in the SDNY, plaintiffs proposed their own

13   coordination order.  That coordination order required

14   mandatory -- mandatory sharing of expert reports from the

15   EDVA case into the SDNY case.  Not only did Judge Castel

16   reject that coordination order, he had really harsh words

17   for that --

18           THE COURT:  He called it -- I was just trying to

19   figure out procedurally how that came about.  And that was

20   back at the time that the orders were being negotiated; is

21   that right?

22           MR. JUSTUS:  Yes, Your Honor.

23           THE COURT:  Not anything recent now that fact

24   discovery has ended here and expert discovery has started?

25           MR. JUSTUS:  Yes, Your Honor.  Surely if he had

                                                            16

```
 1    wanted to have a provision when expert discovery just
 2    automatically comes out of EDVA and goes into the SDNY, he
 3    could have taken that piece of the plaintiffs' proposed
 4    coordination order, and he rejected the whole order out of
 5    hand.
 6              THE COURT:  Okay.  Well, again, let me just -- I'm
 7    trying to focus on the concerned burden that Google may
 8    have.  By the time you get the MDL plaintiffs' expert
 9    report, you will have completely responded to all the expert
10    opinions given by the experts in this case?
11              MR. JUSTUS:  Yes, Your Honor.
12              THE COURT:  So that's done.  I mean -- so if you
13    add that to what's going on in New York, why is there any
14    increase in the burden that Google would have if they just
15    have to provide the same response to whatever opinions you
16    did here up there, and then they'd have a couple others that
17    they'd throw in that you need to respond.
18              MR. JUSTUS:  Yes, Your Honor.  I don't anticipate
19    that when they receive the DOJ's expert reports -- if they
20    do receive the DOJ expert reports from this case -- that
21    what they'll do is they'll say, here, we'll have the same
22    DOJ expert and the exact same report.  Instead, they're
23    going to use the points from the DOJ expert reports to fill
24    into their existing experts or get new experts.  We know the
25    known experts have these ideas.  I do think that they will
```
                                                              17

1    reissue those opinions, but they're going to reissue them

2    with their own spin on it, right.  Because they're

3    independent experts, they'll have different evidence that

4    they focus on, so it will require Google to largely redo

5    these reports and also respond to the MDL reports that would

6    otherwise be there.

7              And there's really -- I mean, so there is a

8    prejudice, and there's really no reason that plaintiffs need

9    this expert -- these expert reports, given how many able

10   counsel are in that MDL, and the, you know, millions of

11   pages of documents and source code and data they already

12   have.

13             THE COURT:  Okay.  All right.  Thank you.

14             Mr. Throne, let me hear from you just a little bit

15   more on this.  Tell me again what you think the good cause

16   is that would justify changing the order that was negotiated

17   and entered by our court and the New York court.

18             MR. THORNE:  Your Honor, first to clarify one

19   thing that my friend said.  Judge Castel was confronted with

20   two proposed coordination orders.  One was the one that had

21   been negotiated between the Department of Justice and Google

22   and I think had the input of some of your early suggestions.

23   So it was pretty baked.  And then an MDL proposal that was

24   much more streamlined and would have imposed fewer burdens

25   of the MDL to try to rush -- the MDL is hard to work as a

                                                              18

1    group to keep up with the schedule here.

2           Judge Castel pretty much said we're going to go

3    with the Virginia order, and then, by exception, took a

4    couple of handwritten exceptions.  But those were few.  He

5    didn't focus on what's the standard for meeting and

6    conferring to have early expert disclosures by those who

7    want to disclose it.

8           I will note one thing, Your Honor, I'm not

9    fighting a good cause standard for your hearing this motion,

10   I'm not fighting that.  But the coordination order actually

11   has several places where it uses the word "good cause," such

12   as if you want to retake a third-party deposition and make

13   that person come in and sit a second time, you have to have

14   good cause for that.  The coordination order is clear in a

15   few places where there is a strong burden to show.  This is

16   not that.  This is meet and confer.  See if you can figure

17   it out.  If you can't, further court order.

18           THE COURT:  Well, what do you think the standard

19   is for me to change an order that has been negotiated and

20   signed by the Court?  It's not like I want to do it;

21   somebody's got to prove that it needs to be done for a

22   reason.

23           MR. THORNE:  Thank you.  That's an important

24   clarification that I need to make.

25           We are not asking you to change the order.  Please

                                                              19

1    don't change the coordination order.  We're asking you to

2    apply the order by issuing, as is the first sentence of, you

3    know, Section 7, expert discovery shall not be shared

4    pending further order.  We're asking for that further order;

5    we're not asking to change that standard.

6          Here, the relevant party, the Department of

7    Justice, is willing to give us what it has produced here.

8    Google has not articulated any prejudice of DOJ's sharing

9    with these parties.  So we're not asking you to change a

10   bargained-for order, just to apply.  To issue a further

11   order allowing DOJ to do what it's agreed to do.

12         THE COURT:  Well, I don't think you've really made

13   that point in your reply in opposition to their -- their

14   opposition talks about this is a good cause standard.

15         MR. THORNE:  I accept the burden of persuading you

16   that this is fully warranted.  I accept that burden.  And I

17   think the way that we meet that burden is because there will

18   be a large efficiency given the large amount of documents

19   and the -- something north of 100 depositions that are going

20   to be occurring in the next few months, being able to focus

21   better on those as a result of having access to the -- I'm

22   not going to call it work product, but Judge Wilkey in the

23   D.C. circuit case said the thing he was considering was very

24   much akin to an expert report, the work product that MCI

25   shared with DOJ was, in his mind, like an expert report.

                                                            20

1  There was no unfairness in that case even of not providing

2  it to AT&T.  Here, Google has DOJ's report, they know what

3  they're responding to, and they're working on it now.

4        THE COURT:  And what about Judge Castel's comments

5  when this was presented to him early on in the negotiation

6  phase?  It seemed like he was not interested in having this

7  done at the time.

8        MR. THORNE:  Your Honor, I'm going to answer that

9  question, but I'm going to answer it in a way you aren't

10 expecting.

11       Last time we had a hearing in front of Judge

12 Castel, he asked, when is that Virginia case going to trial.

13 And Mr. Mahr, who was speaking for Google, said, well, there

14 hasn't been a trial date set, Your Honor.  And I said people

15 have been watching the court here for a long time, you know,

16 we're guessing end of May or sometime, you know,

17 spring/summer.  Judge said, I hope that's true.  I take my

18 hat off in admiration to my colleagues in the Eastern

19 District of Virginia, and I've admired their work and recall

20 days as a practicing lawyer when I was -- trying to find the

21 right word -- maybe I was the subject of their work.  He did

22 not want -- he does not want to do anything to slow down

23 this court.

24       So in the choice of what makes sense for just an

25 MDL versus what makes sense to not interfere, he invited the

                                                            21

```
 1   Department of Justice to come up to his court when the
 2   coordination order was being discussed to make sure he
 3   didn't do anything to harm what this court was doing.
 4          I think that was -- his remarks about you're not
 5   trying hard enough to let the Virginia case go forward,
 6   that's the context for his remarks.  And that's across the
 7   board.  That was more related to the sequencing and timing
 8   of depositions rather than this meet and confer and you can
 9   share expert reports.
10          THE COURT:  I take it your experts are working on
11   their reports now; right?
12          MR. THORNE:  That's correct, Your Honor.
13          THE COURT:  Are any of your experts the same
14   experts that's being used by DOJ?
15          MR. THORNE:  I only know Gannett and Daily Mail's
16   details.  I don't know all of the other MDLs.  But I
17   believe -- I believe that no one is in common with DOJ, that
18   they're all disjoint.  Your Honor, I don't know who DOJ's
19   experts are because I haven't seen their expert reports, but
20   I believe there's nothing in common.
21          THE COURT:  It's no secret about knowing who their
22   experts are.
23          MR. THORNE:  Your Honor, I don't know.
24          THE COURT:  Have you asked?  I mean, you seem to
25   be so interested in their reports, you would at least want
```

```
 1   to know who they are.
 2            MR. THORNE:  I have been, and their suggestion,
 3   frankly, was, well, why don't you ask the judge if we can
 4   share them with you.
 5            THE COURT:  The names or the reports?
 6            MR. THORNE:  In response to a question about the
 7   names.  But my understanding is that there are no experts in
 8   common.
 9            THE COURT:  What issues are -- for the experts are
10   there that are different than the issues that are involved
11   in this case?  So Google has talked about, you know, a
12   supersized or whatever expert report that you're going to
13   just glob onto what the DOJ says here, and then, you know,
14   add your own bells and whistles to the New York case.  I'm
15   trying to figure out what the other issues are in New York
16   that an expert would have to opine on that wouldn't already
17   be probably done and litigated by the time the expert's
18   schedule goes in New York.
19            MR. THORNE:  There's a lot in common.  I think
20   everybody agrees with that point.  The differences relate to
21   particular services that particular MDL parties were
22   providing.  So there's an MDL party that was a direct
23   competitor to YouTube, and so there's some things that that
24   party will probably have in an expert report that are
25   different from what this case involves because this -- the
```

                                                                    23

 1   Virginia case does not include those claims against YouTube.

 2   Daily Mail and Gannett have claims about some of Google's

 3   search behavior that is not present in the DOJ/Virginia

 4   case.  But that's a function the MDL's collected and

 5   coordinated a bunch of different cases that had different

 6   clients and different issues.

 7          THE COURT:  All right.  So let's go back to the

 8   question of -- now that you say that you're willing to at

 9   least live with my view that you have to show good cause,

10   again, help me understand what you think the good cause is

11   for me modifying the order to allow the Department of

12   Justice to share its expert reports.

13          MR. THORNE:  If I could restate your question, the

14   good cause for you to issue, using the language of

15   Section 7, a further order permitting DOJ or Google

16   voluntarily, if they want to, to share expert materials with

17   the MDL participants, if that's the question, the good cause

18   is because there will be an efficiency in the other

19   plaintiffs' ability to conduct discovery.  They will save

20   resources and be able to -- and the judge -- in the words of

21   Nogglewalkie (phonetic), get to the truth better.

22          THE COURT:  And why does the efficiency of a party

23   not in my case matter to me?

24          MR. THORNE:  What I'm not going to say, Your

25   Honor, is -- for the same reasons that Judge Castel wanted

                                                              24

1  to take every effort possible to avoid interference with

2  this case, I think if there's an efficiency of allowing a

3  party in this case to share materials based on facts that

4  are already in common across all the plaintiffs, then

5  there's no reason not to do so.  And we've cited cases where

6  cross plaintiff in different cases, sharing is -- it's a

7  commonplace.  It's unusual to have a prohibition on

8  sharing -- or at least in the Texas case, sharing of opening

9  expert reports.  That's -- the courts say that may be done.

10  And after meeting and conferring with the Department of

11  Justice, they're willing to, and so, you know, we ask, and

12  they don't oppose, and if Google has no prejudice, I see no

13  reason not to -- not to permit.

14         THE COURT:  You haven't explained to me why you

15  don't think they have prejudice.  You just heard what he was

16  saying about the prejudice, is that your experts are likely

17  to just adopt everything that has happened here and give

18  their own spin on it and then add their own.  So why don't

19  we make them do their own work, honestly, and come up with

20  their own opinions independent of what the DOJ experts do?

21         MR. THORNE:  Your Honor, there's a very serious

22  investment going on with experts.  They are doing their own

23  work.  They're not going to parrot -- to use Google's word,

24  they're not going to parrot what DOJ's experts do.  But if

25  DOJ has found the particular documents that matter to

                                                    25

```
 1   different pieces of conduct, that's --

 2              THE COURT:  That's in their view, you know.

 3   They're not involved in the New York case.  You have your

 4   own independent duty to look at the documents and find the

 5   documents yourself.

 6              MR. THORNE:  Absolutely.

 7              THE COURT:  They may have missed something.  So

 8   you can't just rely on their expert report to say, okay,

 9   well, you know, they think these are the ten documents that

10   I should look at.

11              MR. THORNE:  Your Honor, we're not relying on --

12   we're not -- I don't hear any real argument here for -- that

13   we're not doing everything that we need to do in our

14   client's interest.

15              THE COURT:  And when is your expert report due?

16              MR. THORNE:  August 21st is the opening expert

17   report.

18              THE COURT:  So you've got another six months to do

19   an expert report?

20              MR. THORNE:  Between --

21              THE COURT:  Do you know how long the Department of

22   Justice had to do their expert report in this case?

23              MR. THORNE:  It was very rushed, Your Honor.  I

24   know that.

25              THE COURT:  And why is it that you think I need to
                                                               26
```

```
 1    give you a head start on your expert's report when they

 2    already have six more months to do it?

 3               MR. THORNE:  Your Honor, Google is taking -- or

 4    being a party to something north of 100 depositions in the

 5    next four -- roughly four months, and they're guided by what

 6    the department's theories are, what the department found in

 7    their documents, and they're using those depositions and

 8    additional discovery to try to build up a -- things to

 9    impeach DOJ's witnesses.  They're not done with -- Google's

10    not done with discovery.  They have access to this, and

11    DOJ's willing to give us that same access so that we can be

12    efficient in discovery just like Google's going to be more

13    efficient.

14               THE COURT:  How is this making Google more

15    efficient?

16               MR. THORNE:  Google now has -- with the benefit of

17    DOJ's expert reports -- knows what the common -- the common

18    things are to shoot at in a continued fact discovery, which

19    it's conducting.

20               THE COURT:  Google has the Department of Justice's

21    expert report and the claims being asserted by the

22    Department of Justice and the state attorney generals in our

23    case; right?

24               MR. THORNE:  That's correct.

25               THE COURT:  They don't know what your experts are
```
27

1   going to be saying in your case.

2           So, again, help me understand how you think they

3   are being more efficient in dealing with your case by having

4   the Department of Justice's expert reports in this case.

5           MR. THORNE:  The -- well, this is a bit in the

6   weeds, but the -- Google's conduct revealed in its

7   documents, buried in the trove of 6 million -- I mean,

8   6 million sounds like a benefit when Google says it's not a

9   benefit.  A more focused set of documents would be a

10  benefit, documents that included the links in them.  And the

11  document discovery here is -- it's huge and it's a mess.

12  You know, most of it here was produced after the close of

13  fact discovery, September 8th.  That's your issue, not mine.

14  But getting through that massive stuff, DOJ's done some of

15  that work.  It's reflected in their expert reports.  That

16  will benefit the fact discovery on both sides.

17          Google is saying what it has to confront and

18  giving the MDL plaintiffs a chance to see what's important.

19  We're -- we've gone through the documents, too.  We've found

20  lots of things.  It's normal to have multiple plaintiffs

21  collaborating in a way to be more efficient in finding the

22  truth.

23          THE COURT:  All right.  Let me just hear one last

24  time from Google just on the --

25          MR. JUSTUS:  Yes, Your Honor.

28

1              I think I have two points.  One is, most of what I

2    think we just heard as the reason for the sharing is to get

3    additional information from the Department of Justice

4    regarding the key documents they found.  I don't think that

5    anything in the current coordination order prevents a call

6    to the DOJ to the MDL plaintiffs to say, hey, on this topic

7    of our complaint, here's a list of 50 Bates numbers we found

8    that's especially relevant.  So I don't know how that

9    relates to sharing expert reports.  Point 1.

10             Point 2 is I think -- actually, let me stop there.

11             THE COURT:  Okay.  All right.  Well, you know,

12   I -- I do think, given the procedural posture of how this

13   has come before the Court, that an order was negotiated by

14   the parties and entered by the Court, that there has to be

15   good cause or good reason for me to modify that order, and

16   even though there may be a statement in there, you know, you

17   can't do something unless there's further order of the

18   Court, that's pretty much any order.  If I order something

19   or the District Judge orders something and you want to

20   modify it, you've got to have an order to modify it.

21             You know, this is somewhat of a close call in that

22   I didn't realize the prejudice that might -- Google might

23   have in coming in here if the Department of Justice wanted

24   to share its report with the parties, but I think they have

25   come in and established that there would be some prejudice

                                                              29

```
 1    involved here.

 2            The good cause -- you know, I'm -- I'm having a

 3    hard time understanding that just because you want someone

 4    to lead you the way in doing what you need to do on an

 5    independent basis and preparing your expert reports and

 6    coming up with your opinions really isn't good cause.  I

 7    mean, it may or may not be more efficient.

 8            The coordination order I don't think -- and if

 9    there needs to be some further discussions about that, then

10    I'm willing to hear it, but the coordination order I don't

11    think limits the parties from talking about, throughout the

12    fact discovery we found these documents to be significant on

13    this issue.  You know, that's coordination, that's giving

14    you what you want to an extent that you think your experts

15    need help in finding out what, you know, the Department of

16    Justice thinks important, you know, you can ask for it.

17    They don't have to give it to you, but, again, you can ask

18    for it through the coordination order.

19            But the idea that, you know, you're going to get

20    their expert reports, you know, six months before you have

21    to do your expert reports because you think it would be

22    helpful, I don't find is good cause.  I'm going to deny the

23    motion.  Okay.  Thank you.

24            MR. JUSTUS:  Thank you, Your Honor.

25            MR. THORNE:  Thank you, Your Honor.
```

                                                              30

```
1              THE COURT:  Thank you.

2              MR. MOLSTER:  Thank you.

3              THE COURT:  Thank you, Mr. Molster.

4                (Proceedings adjourned at 10:43 a.m.)

5              ----------------------------------

6    I certify that the foregoing is a true and accurate, to the
     best of my ability, transcription of proceedings recorded by
7    electronic sound recording (FTR system).

8

9                              Stephanie Austin
                               _____
10                             Stephanie M. Austin, RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

31