IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
GOOGLE TO PRODUCE ALL DATA AND INFORMATION
REFERRED TO AND/OR RELIED ON BY ITS TESTIFYING EXPERTS**

In their over 2,500 pages of expert reports served on January 23, 2024, Google's nine experts relied upon 299 documents that contain unidentified hyperlinks to other Google documents. Based on past experience, it is likely that many of the unidentified hyperlinks will lead to documents that Google has already produced in discovery, but without the appropriate metadata tying the hyperlinked documents to the documents cited by Google's experts, Plaintiffs are left operating in the dark. Google undeniably has this relevant information but nonetheless attempts to withhold it from Plaintiffs by (1) arbitrarily distinguishing hyperlinked documents from other types of attachments to documents; (2) inserting a sunset provision to the ESI Order that does not exist; (3) claiming prejudice from its own decision to provide its experts incomplete documents; and (4) making a vague assertion of burden with no supporting concrete evidence.

Accordingly, the Court should compel Google to provide Plaintiffs the information necessary to identify the hyperlinked documents referenced in the documents relied upon by Google's experts, as listed in Appendix A of Plaintiffs' January 26, 2024 letter, or if the underlying hyperlinked documents were not previously produced, to produce any such

documents promptly, and in all events before the deposition of the expert who relied upon the cited documents.

### A. Like any other form of attachment, hyperlinked documents are incorporated into, and integral to the understanding of, the cited documents.

At bottom, Google's argument related to the Expert Discovery Order comes down to whether hyperlinked documents constitute a materially different form of attachment in a given document "family." Arguments about document attachments and their discoverability have taken many forms over the years as technology has evolved, but the caselaw ultimately lands at the same result: attachments, in whatever form they take, are an integral part of a relevant communication. For that reason, the law generally considers a document, with its associated attachments, as a single complete document for discovery purposes. In this day and age, a litigant would not dare produce an email without its associated attachments, and for good reason. Without the contemporaneous attachments, necessary context is missing.

"[H]arkening back to the days of paper discovery, communications and documents that were attached contemporaneously (as with a staple through all pages)" were generally treated as single object or communication. *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc*., No. 08 CIV. 7508 SAS, 2011 WL 3738979, at *5 (S.D.N.Y. Aug. 18, 2011), report and recommendation adopted, No. 08 CIV. 7508 SAS, 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011).

As technology morphed and email came into widespread use, litigants attempted to differentiate email attachments from paper attachments, but ultimately were unsuccessful, with courts finding that email attachments are deemed one responsive "document" or "document family," i.e. a "message unit." *Pom Wonderful LLC v. Coca-Cola Co.,* No. CV 08- 6237 SJO, 2009 WL 10655335, at *2 (C.D. Cal. Nov. 30, 2009) (citing the Sedona Conference).

Google now asks the Court to upend this settled practice, relying solely on the change in the technological means of attachment, not on the substance or the import and relevance of the attachment itself. But there is no meaningful distinction between a hyperlinked document and a document "attached" to the communication through other means (by staple, email attachment or otherwise).[1] Indeed, most courts that have considered this question in other jurisdictions have extended the principles regarding paper and email attachments to equivalent documents attached by hyperlink.  See *Dunbar v. Google*, Inc., No. 5:12-cv-03305, ECF 244 (N.D. Cal. Jan. 8, 2013) (citing the parties' briefs, filed under seal as ECF 296 and 298, and ordering defendants to produce hyperlinked Google Docs); *Milgard Mfg. v. Liberty Mut. Ins. Co.,* No. C13-6024 BHS, 2015 U.S. Dist. LEXIS 54108, at *5-*6 (W.D. Wash. Apr. 24, 2015) (compelling defendant to "produce[] the documents in a format that allows [plaintiff] to match emails and documents with their associated attachments and hyperlinks"); *Shenwick v. Twitter, Inc.,* No. 16-CV-05314-JST (SK), 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (holding in the context of a request for hyperlinked documents that "if an electronic message refers to a document, then Plaintiffs should be able to access that document").[2]

Furthermore, it bears noting that Federal Rule of Evidence 106, which articulates a rule of "completeness" as it relates to documents, exists for good reason. And as one court explained

---

[1] The fact that Plaintiffs in connection with the ESI Order agreed to treat hyperlinked documents differently than email attachments given Google's complaints concerning the burdens associated with hyperlinked documents, should not be construed as an admission for all purposes that hyperlinked documents are any less important or relevant than any other attachment, or that hyperlinked documents should receive any different treatment under any other order of the court, including the Expert Discovery Order.

[2] One exception to this line of cases is *Nichols v. Noom, Inc.*, No. 20-CV-2677, 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021); however, even in that case the court stated the "[i]t will allow Plaintiffs to evaluate [defendant's] production and, if Plaintiffs determine there is a need for an additional targeted pull or production or clarifying information about a hyperlinked document's identity or Bates number, Plaintiffs can request it." *Nichols*, 2021 WL 948646 at *4.

in the context of extending that rule to email attachments, that rule justifies an obligation on parties to provide relevant attachments in discovery, as well:

> [T]he "completeness" standard of Fed.R.Evid. 106 states that when part of a document is introduced into evidence, the entire document may be required if it "ought in fairness" be considered contemporaneously. The logic of this evidentiary rule extends backwards to discovery which often leads to a conclusion (or at least a presumption) that if something was attached to a relevant e-mail, it is likely also relevant to the context of the communication. In addition, harkening back to the days of paper discovery, communications and documents that were attached contemporaneously (as with a staple through all pages) were often treated as a single object for relevance assessments. In addition, Fed.R.Civ.P. 34(b)(2)(E)(i) allows a responding party to "produce documents as they are kept in the usual course of business or ... organize and label them to correspond to the categories in the request." As some courts have found, there is some appeal to the notion that production of a parent e-mail along with its corresponding child attachment satisfies Rule 34's "usual course of business" requirement for parties who opt to produce documents in that manner.

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508 SAS, 2011 WL 3738979, at *5 (S.D.N.Y. Aug. 18, 2011).

For all of these reasons and to satisfy basic fairness, Google should be compelled to identify by Bates number all the hyperlinked documents within the cited documents or to otherwise produce the hyperlinked documents to Plaintiffs if they have not already been produced in discovery.

### B. There is no time limitation for requests for hyperlinked documents in the ESI Order.

Section K of the ESI Order explicitly authorizes a receiving party to "make reasonable and proportionate requests that the producing party conduct a reasonable search for relevant documents identified via hyperlinks." ESI Order, ECF No. 142. That provision contains no time limitation for such requests, not even a broad limitation that such request be made "during the discovery process" as suggested by Google. Google LLC's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel, ECF No. 526. That language is nowhere in the ESI Order, but

even if it was, the expert discovery period is part of the "discovery process" and that process does not close until March 8, 2024. Order Modifying Discovery Schedule, ECF No. 440. If Google had wanted to set a time limit to this provision of the ESI Order and limit it to the fact discovery period, it could have negotiated for such a position or moved the Court to enforce one. It chose to do neither, and therefore, it cannot impose its own post-hoc deadline to escape its existing obligations under the ESI Order.

Further, the timing of Google's document productions demonstrates the need for such requests to occur after the close of fact discovery. Google produced millions of documents after the original deadline for the close of fact discovery; indeed, Google has continued to make document productions as recently as last week. Therefore, Plaintiffs were not in possession of all documents, let alone provided with time to review and analyze the documents, by the close of fact discovery. Yet under Google's self-serving reading, the ESI Order would have allowed it to produce documents at the very end of fact discovery (or later), and then reject any subsequent request for hyperlinked documents on the grounds that fact discovery had closed. Thus, for the hyperlinks provision of the ESI Order to have any reasonable meaning, requests have to be permitted after the close of fact discovery.

Additionally, the timing and scope of Plaintiffs' request is reasonable. Plaintiffs made the request within 72 hours of receiving over 2,500 pages of expert reports from Google, having first identified which documents Google's experts cited that did not have appropriately-identified hyperlinks. The hyperlinked documents are a necessary and appropriate means of questioning and validating the extent of Google's experts' opinions and conclusions. And if the cited documents are sufficiently significant to be cited by Google's own experts, then surely the

hyperlinked documents contained therein meet the standard for reasonableness and proportionality outlined in the ESI Order.

Indeed, numerous courts have ordered the production of documents identified by hyperlinks, finding that such requests were both reasonable and proportionate. *See e.g. IQVIA, INC. v. Veeva Sys., Inc.*, No. 2:17-CV-00177-CCC-MF, 2019 WL 3069203, at *1 (D.N.J. July 11, 2019) (finding it is "not convinced that relinking these 2,200 documents is unduly burdensome in light of the issues at stake in this matter, the resources of the partis, and the amount in controversy"); *Shenwick v. Twitter, Inc.,* No. 16-CV-05314-JST (SK), 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (holding that "Plaintiffs have a right to determine if an electronic message refers to a document, then Plaintiffs should be able to access that document" and ordering Twitter to "produce documents referenced in a hyperlink for 200 documents that Plaintiffs choose"); *In re StubHub Refund Litig.,* No. 20MD02951HSGTSH, 2023 WL 3092972, at *2 (N.D. Cal. Apr. 25, 2023) (granting the plaintiffs' motion to compel and ordering the defendant to produce the linked documents as agreed to in the ESI protocol).

Accordingly, Plaintiffs' request, including the timing and scope, is authorized by the agreed-upon ESI Order and in line with similar or more burdensome requests granted by other courts.

### C. Google is not prejudiced by having to produce information it alone possesses.

In its response, Google argues that it would be prejudiced by giving Plaintiffs access to hyperlinked documents that Google's own experts apparently declined to review. If that is

6

indeed the case (and Plaintiffs doubt it), any such prejudice is of Google's own making.[3] Google has possessed, and continues to possess, the information necessary to link the cited documents to the hyperlinked documents. If Google decided not to make that information available to their own experts, that is a choice they made. But Google should not be allowed make that choice for Plaintiffs, who, unlike Google, have been denied the necessary information to link the cited documents to the hyperlinked documents.

Google's failure to produce metadata linking the cited documents to the hyperlinked documents (in at least these 299 instances), has prejudiced Plaintiffs and will continue to do so.

For example, attached is one of the cited documents, containing hyperlinks, in Google's expert reports and its accompanying metadata as produced by Google. Exh. 1. As the Court can see, there is a metadata field for "LinkedAttachmentsID" and "LinkedParentIDs" field, but neither of these metadata fields have been completed. This lack of information is what causes the problem for Plaintiffs. Google should not be rewarded for its deficient metadata by being able to gerrymander the scope of information available to Plaintiffs and their experts, particularly as to documents Google's own experts have identified as important to the merits of the case. As such, Plaintiffs, not Google, bear the risk of prejudice with an adverse ruling.

---

[3] To the extent expert reports fundamentally serve a discovery purpose under Federal Rule of Civil Procedure 26, Google will not be prejudiced by, but will instead receive the benefit of discovering, how Plaintiffs' experts respond to the content contained in the hyperlinked documents. And Plaintiffs likewise should be entitled to explore, at deposition at least, how Google's own experts react to the hyperlinked material.

7

### D. Google provided no specifics to its burden claim.

A party resisting discovery on the grounds of burden or expense bears the burden of showing specifically how the request is burdensome. *Singletary v. Sterling Transp. Co.,* 289 F.R.D. 237, 241 (E.D. Va. 2012).

The arguments Google advances about its burden are vague and speculative. Google's description of the "manual process" required to investigate hyperlinked documents is precisely what was contemplated by the ESI order that the parties negotiated. Plaintiffs seek to impose no burden greater than the one already contemplated by the ESI order itself. The purported fact that it may take "a few minutes per document to a few hours" to identify the hyperlinked documents is too vague a calculation of time, with an enormous variance, to meet Google's burden of persuasion. There was no information provided about the estimated cost or personnel involved. Even if Google did provide that information, it is not enough to overcome the issues at stake in this matter, the resources of the parties, and the amount in controversy. *See e.g. Shenwick v. Twitter, Inc.,* 2018 WL 5735176, at *1 (finding that six weeks and a cost of more than $100,000 was not a sufficient burden on defendants to avoid producing hyperlinked documents).

Accordingly, without such information, Google has failed to carry its burden and the Court should not entertain the expense to Google as a basis to deny the pending requests.

### CONCLUSION AND RELIEF REQUESTED

The plain language of both the Expert Discovery Order and the ESI Order entitles Plaintiffs to the information requested, as do the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Specifically, the hyperlinks contained within the cited documents of Google's expert reports are integral to understanding the cited documents, and therefore were referred to and relied on by Google's experts. Similarly, the parties negotiated and agreed that

8

Plaintiffs may make the current request.  The number of requested documents is reasonable given the issues at stakes in this matter, the resources of the parties, and the amount in controversy.

Accordingly, the Court should compel Google to produce a copy of all data or other information referred to and/or relied on by its experts, including those hyperlinked documents in cited documents as listed in Appendix A of Plaintiffs' January 26, 2024 letter, or if such data or information was produced previously, to identify that information by Bates number.

Dated: February 8, 2024

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Andrew N. Ferguson<br>ANDREW N. FERGUSON<br>Solicitor General<br>STEVEN G. POPPS<br>Deputy Attorney General<br>TYLER T. HENRY<br>Assistant Attorney General |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>/s/ Michael Freeman<br>MICHAEL FREEMAN<br>/s/ Brent Nakamura<br>BRENT NAKAMURA<br>/s/ Matthew E. Gold<br>MATTHEW E. GOLD | Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Michael.Freeman@usdoj.gov<br>Attorneys for the United States | Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |