```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION


 3    --------------------------x
      UNITED STATES, et al.,     :      Civil Action No.:
 4                               :      1:23-cv-108
                  Plaintiffs,    :
 5         versus                :
                                 :      Friday, February 9, 2024
 6    GOOGLE LLC,                :      Alexandria, Virginia
                                 :      Pages 1-28
 7                Defendant.     :
      --------------------------x
 8

 9         The above-entitled motions hearing was heard before
      the Honorable John F. Anderson, United States Magistrate
10    Judge.  This proceeding commenced at 10:07 a.m.

11                      A P P E A R A N C E S:

12    FOR THE PLAINTIFFS:    WILLIAM HOCHUL, ESQUIRE
                             OFFICE OF THE UNITED STATES ATTORNEY
13                           2100 Jamieson Avenue
                             Alexandria, Virginia  22314
14                           (703) 299-3700

15                           JULIA TARVER WOOD, ESQUIRE
                             AARON TEITELBAUM, ESQUIRE
16                           UNITED STATES DEPARTMENT OF JUSTICE
                             ANTITRUST DIVISION
17                           450 Fifth Street, NW
                             Washington, D.C.  20530
18                           (202) 894-4266

19                           TYLER HENRY, ESQUIRE
                             OFFICE OF THE ATTORNEY GENERAL
20                           OFFICE OF THE SOLICITOR GENERAL
                             202 North Ninth Street
21                           Richmond, Virginia  23219
                             (804) 786-7704

22

23

24

25
                                                              1
```

```
 1                  A P P E A R A N C E S:

 2  FOR THE DEFENDANT:     CRAIG REILLY, ESQUIRE
                           LAW OFFICE OF CRAIG C. REILLY
 3                         209 Madison Street
                           Suite 501
 4                         Alexandria, Virginia  22314
                           (703) 549-5354
 5
                           ANDREW EWALT, ESQUIRE
 6                         CLAIRE LEONARD, ESQUIRE
                           FRESHFIELDS BRUCKHAUS DERINGER, LLP
 7                         700 13th Street, NW
                           10th Floor
 8                         Washington, D.C.  20005
                           (202) 777-4500
 9
    TRANSCRIBER:           STEPHANIE M. AUSTIN, RPR, CRR
10                         Transcriber
                           United States District Court
11                         401 Courthouse Square
                           Alexandria, Virginia  22314
12                         (571) 298-1649
                           S.AustinReporting@gmail.com
13
        (TRANSCRIPT PROCEEDINGS RECORDED BY THE FTR SYSTEM)
14

15

16

17

18

19

20

21

22

23

24

25
                                                              2
```

```
 1                    P R O C E E D I N G S
 2              THE DEPUTY CLERK:  Calling civil action matter
 3    23-cv-108, United States, et al. versus Google LLC.
 4              THE COURT:  I'll have everyone introduce
 5    themselves once again, and tell me who's going to argue on
 6    behalf of each party.
 7              MR. HOCHUL:  Good morning, Your Honor.  William
 8    Hochul for the United States.
 9              MS. WOOD:  Good morning, Your Honor.  Nice to see
10    you.  Julia Wood for the United States.  I'll be arguing
11    today.
12              MR. HENRY:  Good morning, Your Honor.  Ty Henry
13    from the Office of the Attorney General of Virginia on
14    behalf of the plaintiff United States.
15              THE COURT:  Thank you.
16              MR. TEITELBAUM:  And Aaron Teitelbaum for the
17    United States.  Good morning, Your Honor.
18              THE COURT:  Good morning.
19              MR. EWALT:  Good morning, Your Honor.
20    Andrew Ewalt from Freshfields on behalf of Google.  I'm
21    joined by my colleague, Claire Leonard, and by Craig Reilly
22    as well.  I'll be arguing for Google.
23              THE COURT:  Okay.  Thank you.
24              Well, you all have your trial date now, and you
25    know what will happen then, and I know you're going to be
```

3

1    coming in and seeing Judge Brinkema in a couple weeks to

2    work out some other briefing and schedule orders --

3    scheduling issues as far as motions ago.

4            Mr. Ewalt, I want to just ask you a couple of

5    questions before I hear from Ms. Wood just to make sure I

6    understand what was said in the opposition.

7            You indicated that the expert did not refer to or

8    rely on the hyperlinks.  Help me understand what you mean by

9    that.  Okay.  So there --

10           MR. EWALT:  Yes, Your Honor.

11           THE COURT:  So there's several hundred documents

12   that they have identified that apparently your experts

13   identified as documents that they're relying on.

14           When you say -- what is it that you mean when you

15   say they didn't rely on the information in the hyperlinks?

16           MR. EWALT:  Yes, Your Honor.

17           So if I may back up one moment.  The issue

18   involves -- there are documents that were produced in this

19   litigation, both emails and non-email documents.  For the

20   non-email documents, when those documents contain a

21   hyperlink to another document, those sometimes -- sometimes

22   those documents could go to -- those links, rather, could go

23   to documents that were held within a custodian's file, they

24   could go to a centrally-stored file, they could go to a

25   publicly-accessible Internet site.  As Your Honor's probably

                                                              4

1   familiar with from just clicking on links throughout the

2   Web, they could go anywhere.

3          So when the non-email documents were collected,

4   and those non-email documents have links in them, by virtue

5   of the links, the linked-out documents are not necessarily

6   collected.  Those linked documents could be collected if

7   they would sort of independently fall within the

8   collection -- the parameter collections for the -- excuse

9   me, the collection parameters.

10          And so the documents that the experts relied on --

11   to answer Your Honor's question, the documents that the

12   experts relied upon are the ones that are cited in their

13   expert reports, and so those are the ones with the base

14   numbers that we provided, those were produced all in

15   discovery.

16          What the experts did not rely on was any linkage

17   between those documents and any of the other documents that

18   may or may not have been produced simply because they were

19   linked within the documents that the experts did rely upon.

20          THE COURT:  I'm trying to understand, and, again,

21   this is a technological issue that I just want to make sure

22   I understand and the plaintiffs understand when I hear their

23   argument.

24          The experts were given documents to review and

25   consider.  Let's just -- one of the examples -- and there

5

1    have been a couple that were attached to the pleadings.  The

2    expert, given that document and saying I'm relying on this

3    document, did not have access to the linked information?  Is

4    that what you're telling me?

5              MR. EWALT:  That's correct.  The expert did not

6    have access to any metadata indicating that that particular

7    document linked to other documents.

8              THE COURT:  Okay.  And --

9              MR. EWALT:  Excuse me.  Just one correction.

10             For non-email documents.  For email documents, the

11   link metadata was provided to the plaintiffs, and that would

12   have been available as well.

13             THE COURT:  All right.  Well, for the 299

14   documents that we're apparently talking about today.  Okay.

15             Have you confirmed that with your experts?  The

16   reason I want to know this is because, you know, there will

17   be consequences if, in fact, the expert, in his or her

18   deposition, is asked:  So you didn't look at this

19   information that says linked here or see there.  And if it

20   comes out in their expert -- in their deposition that they

21   did, in fact, look at that information and had access to

22   that information, then what you're telling the Court is not

23   right.  You understand what I'm trying to get at here?

24             MR. EWALT:  I do, Your Honor.

25             THE COURT:  And I just -- I don't want there to be

                                                              6

1    any confusion when you say the expert did not rely or refer

2    to the hyperlinks.

3              MR. EWALT:  Yes, Your Honor.

4              THE COURT:  And you're willing to live with that?

5              MR. EWALT:  Yes, Your Honor.  They were -- they

6    were -- the experts did not have access to this linkage

7    data.  It does not -- it is not known in the format that the

8    plaintiffs seem to believe it is known to Google right now.

9              Now, we could do it through manual process, we

10   could figure it out.  So, in that sense, the information is

11   known to Google, and through some manual effort, it could be

12   figured out.

13             THE COURT:  Known to Google and used by the

14   experts are two different things.  I mean -- and I think the

15   focus of this motion is information that was used by the

16   experts in preparing their reports.

17             MR. EWALT:  Yes, Your Honor.  This information was

18   not used by the experts in preparing their reports.

19             THE COURT:  And, again, you're confident of that,

20   and you're willing to live by any consequences if that is

21   not accurate?

22             MR. EWALT:  Yes, Your Honor.

23             THE COURT:  All right.  Ms. Wood, let me hear from

24   you.  I think you can understand what my -- asking Mr. Ewalt

25   about that.

1              There are a lot of things that get referred to in

2       expert reports.  You know, dictionary definitions, you know,

3       you have to produce a whole dictionary and that kind of

4       thing.

5              So what is it that you think you want in this

6       motion?  And help me understand how these 299 documents were

7       identified.

8              MS. WOOD:  So let me start with the second

9       question, how they were identified.

10             We are not asking for every document that their

11      experts relied on.  As we indicated, there were over 2,500

12      pages of expert report material.  We've -- I don't know the

13      number, but presumably thousands, if not tens of thousands

14      of documents that the experts relied upon.  We are asking

15      for a subset of those that have hyperlinks that are not

16      identified in the metadata.

17             Some documents do have the hyperlinks identified

18      in the metadata so that we can see when there's a hyperlink,

19      that hyperlink goes to this document, and we're on a level

20      playing field with Google when that happens; however, for

21      other documents, the 299 that we've identified in their

22      2,500 pages of expert reports, those are documents where

23      we're not on a level playing field with Google.

24             THE COURT:  Well, you're on a level playing field

25      with Google's experts.  And that is -- I mean, you've had

8

```
 1   these 299 documents throughout the discovery period, so --

 2              MS. WOOD:  Well --

 3              THE COURT:  -- there's no issue that these 299

 4   documents weren't produced during the fact discovery; right?

 5              MS. WOOD:  The 299 documents were produced, but,

 6   again, always with the understanding that under the ESI

 7   order, we have the ability to request reasonable and

 8   appropriate hyperlink data to be provided to us so that we

 9   have a full and complete picture.

10              Again, the analogy that we articulate in our

11   papers -- which we think is compelling -- is as if they

12   cited an email but refused to give us the attachments to the

13   email.  No one in their right mind in this day and age would

14   think you could cite an email and then withhold the

15   attachments to the email and have a complete presentation of

16   a document.  These hyperlinks are no different.

17              I was, you know, old enough to have practiced when

18   email was new, and we did have fights about this at the

19   time, whether an attachment was a part of a document or a

20   separate document because it was an attachment and not in

21   the context of the email itself.  We don't have those fights

22   anymore, because there's a recognition, through the Federal

23   Rules of Civil Procedure and the Federal Rules of Evidence,

24   that a document includes its attachments.

25              Google has access to the attachments.  Google has
                                                                 9
```

```
 1    access -- if they wanted to give their experts, they could

 2    choose which documents they wanted to give those experts the

 3    hyperlink to and which they didn't.  We want that choice.

 4    We want to be able to use the documents the experts relied

 5    upon to push and verify their opinions.  And to handicap us

 6    by not giving us the entire document, not giving us the

 7    hyperlink, will prejudice us, both in the context of the

 8    depositions, and ultimately the trial in this matter.

 9            You know, defendant tried to accuse us of doing a

10    dress rehearsal here.  We're doing nothing other than being

11    very transparent with them and with the Court, that this is

12    going to be a continuing problem.  We're going to have

13    summary judgment exhibits, we're going to have trial

14    exhibits.  And the United States cannot contemplate a regime

15    where we have incomplete documents, where Google gets to

16    rely on a cherry-picked portion of a document without giving

17    us the hyperlinks that may impeach that.  It is an

18    incomplete document, in our view, and we need to be able to

19    have the entire document for appropriate context.

20            There's no prejudice to Google from this motion.

21    They've already agreed in certain instances.  First of all,

22    they agreed in the ESI order to do this.  The ESI --

23            THE COURT:  That was during fact discovery; right?

24            MS. WOOD:  That was during discovery.

25            THE COURT:  Right.
```

1          MS. WOOD:  This is still discovery.  This is

2     expert discovery.  It's no less discovery than anything

3     else.

4          And as Your Honor is well aware, it's ironic that

5     they would raise the close of fact discovery as an argument

6     in this case, given that we're still receiving documents

7     from them as recently as last week.  So it's a little

8     specious to consider that the close of fact discovery

9     precludes us from asking for hyperlinks, when we just got

10    documents last week.  We couldn't ask for a hyperlink for

11    those documents?  Now, admittedly, I'm not saying that all

12    299 fall in that category, but I am saying we had a --

13         THE COURT:  None of them fall in that category.

14         MS. WOOD:  None of them fall in the category of

15    having been produced last week.

16         THE COURT:  Right.

17         MS. WOOD:  Many of them fall in the category of

18    having been produced after the fact discovery cutoff, to be

19    clear.  Let's remember that the majority of the documents

20    produced in this case were produced after the fact discovery

21    cutoff.

22         THE COURT:  Well, I extended the fact discovery

23    cutoff.

24         MS. WOOD:  Vis-a-vis Google alone, yes, that is

25    right, Your Honor.

                                                              11

1          But, again, if you read the text of the ESI order,

2   there is no time limitation to the request being made for

3   these hyperlinks.  This is information that Google has that

4   leaves us without complete context into what are, by

5   definition, important documents because they're being cited

6   by their experts.  And so to handicap us to not be able to

7   view an entire document that their expert has said supports

8   their opinions in this case by using hyperlinks in that

9   document that could very well impeach the expert's opinions,

10  is handicapping one side of the case merely because of the

11  manner in which Google decides to store its documents.

12          And, frankly, in all candor, Your Honor, the only

13  thing that we regret is being accommodating when we

14  initially agreed to the ESI order.  We thought the parties

15  would be able to work out this issue.  We were not

16  insisting -- though, in regret -- in retrospect, I now

17  regret it -- that they produce hyperlinks for all of the

18  millions of documents they've produced in this case.  We

19  agreed to be reasonable, and we think it is reasonable to

20  ask them to produce hyperlinks for documents they,

21  themselves, want this Court and the jury ultimately to rely

22  on.

23          Are we really going to have the jury presented

24  with exhibits at trial that contain hyperlinks that no one

25  in the courtroom but Google has seen?  They have this

                                                              12

```
 1    information.  The information is undeniably relevant, and we
 2    think it handicaps the United States to not be able to have
 3    it.
 4              THE COURT:  So every document that's referred to
 5    in an expert -- or an expert report that relies on a
 6    document, you're saying that every document in that document
 7    that the expert relies on you think you're entitled to
 8    get --
 9              MS. WOOD:  If the --
10              THE COURT:  -- in discovery because they
11    mention -- they're relying on a document, and if that
12    document refers to another document, you're saying they need
13    to produce that other document?
14              MS. WOOD:  Your Honor, would you have the same
15    question if we were talking about an email in an attachment?
16    If they cited an email and they had not given us the
17    attachments, I dare say Your Honor would not be asking me
18    why I needed the attachments to the email they cited.  The
19    attachment is essential to understanding the context of the
20    communication.  The attach- --
21              THE COURT:  Well, you don't know that, and that's
22    one of the problems with your motion.  You picked out 299;
23    you didn't pick out particular links.  This is important, I
24    need this link, or I need that link.  You said there are 299
25    documents, I want all the links in every one of those
```

                                                                13

1    documents, go fish.

2         MS. WOOD:  Your Honor, if that is what is

3    dispositive to the Court, we would be happy to go back and

4    isolate the links within the 299 that are most significant.

5         Again, it's a question of them -- once they pull

6    up the document, it's literally a question of them clicking

7    on it to find out what the Bates number is.  But if Your

8    Honor wants us to decrease that burden to them by simply

9    identifying the most important links within these 299

10   documents, we will take on that responsibility, and we will

11   do it expeditiously.

12        THE COURT:  Well, looking at what has happened in

13   the past as far as your requests relating to non-expert

14   documents --

15        MS. WOOD:  Yes, Your Honor.

16        THE COURT:  -- so you've asked them in the past to

17   do that.

18        MS. WOOD:  Yes, Your Honor.

19        THE COURT:  What have the results been that you've

20   had -- you have the documents, you just want to know where

21   they are.  Is that, for the most part, what happened?

22        MS. WOOD:  There's also been -- again, for the

23   largest sample that we've had, which is our recent

24   meet-and-confer about the 199, we understand that

25   approximately half of the linked documents are ones that are

                                                            14

1    already in our production, but we have no way of knowing

2    that.

3           You know, it can say, for a more detailed

4    explanation of the problems with this approach, see this.

5    And literally the word "this" is underlined with a

6    hyperlink.  And so we have the "this" with the more detailed

7    explanation or the problems associated with this issue, but

8    we have nowhere to find "this" as a document in our millions

9    of documents that Google's produced.  Google has that

10   ability, because Google can click on the link that says

11   "this" and see the Bates number and tell us what that is.

12          For some portion, Google has informed us that it

13   does link to public material.  Again, we don't know that.

14   The link doesn't say -- doesn't provide information to say,

15   if you want to see the public material at wwcnn.com [sic],

16   .whatever, we could do that on our own.  We're talking about

17   links that we can't identify.

18          So to the extent that -- and there have been

19   certain instances where, for whatever reason I don't fully

20   understand, Google has come back to us and said they can't

21   find the link at all.  And then obviously neither side has

22   it, it's a missing document, you know, both sides have to

23   live with that.  But, for the vast majority of the

24   documents, at least in the sample based on our recent

25   meet-and-confer, these are documents that are already in the

1   production.

2          And the reason why that troubles me so is that

3   that means that at some later point down the line we've got

4   a witness on the stand, the witness is, you know, responding

5   to a cross-examination about a given document that has a

6   hyperlink in it, and the witness insists on seeing that

7   hyperlink to give a fulsome answer.  Google could pull up

8   the hyperlink and put the document in front of the witness

9   because the document's been produced, but it's been hidden

10  from us.  Not on purpose; I'm not suggesting that.  But,

11  effectively, we have no way to have the information that

12  they have.  And that's the lack of parity that I think is

13  prejudicing the United States in its prosecution of this

14  action.

15         THE COURT:  So let me just -- referring to your

16  exhibit in the reply that you filed -- I'm just trying to

17  understand.  If you look at page 2 of that document.

18         MS. WOOD:  The Exhibit 1 to our reply?

19         THE COURT:  Yes.

20         MS. WOOD:  Yes, Your Honor.

21         THE COURT:  There is -- under the heading

22  contracting, okay, middle of the page.

23         MS. WOOD:  Yes.

24         THE COURT:  There are two underlined documents

25  that are there.

16

1          MS. WOOD:  Yes, Your Honor.

2          THE COURT:  I assume -- I mean, is that what

3    you're talking about as well as the -- so --

4          MS. WOOD:  Yes, Your Honor.

5          THE COURT:  -- you're telling me you don't know

6    what those are?

7          MS. WOOD:  Correct, Your Honor.  They have a title

8    here.  They don't always have a title.  This is an example

9    where --

10          THE COURT:  But I'm trying to get --

11          MS. WOOD:  Yes.

12          THE COURT:  There are other documents that say

13    paren link paren.

14          MS. WOOD:  Correct.

15          THE COURT:  That's why -- I understand that

16    doesn't tell you anything about what the paren link paren --

17          MS. WOOD:  Even for this one --

18          THE COURT:  -- other than if you take the time to

19    read the sentence that precedes that, it could tell you what

20    it is, but it doesn't necessarily name it in and of itself.

21          MS. WOOD:  It could give you search terms you

22    could enter into the search field to look through the

23    millions of documents to find it.  But there may be more

24    than one DBN manage terms -- well, I don't want to read from

25    the --

                                                                    17

1           THE COURT:  Right.

2           MS. WOOD:  There may be more than one document in

3   the production with that title.

4           So, again, even the title doesn't tell us what we

5   need to know because we can run that title through the

6   production and come back with 100 documents with different

7   dates, different forms of draft, different -- so it's

8   knowing what -- I mean, and where this often comes up is

9   you'll have the summary of a meeting, attached -- you know,

10  here is a summary of the meeting, we considered the

11  following options, we considered so-and-so's proposal link.

12          We don't have the proposal.  There's no way for

13  us -- we can do a date search for a document entitled

14  proposal at or around the date of the meeting.  But what if

15  the document wasn't actually called proposal?  What if the

16  document had the term, you know, options in the title?

17          We really have genuinely tried to work around this

18  and engage in self-help to try to find these documents.

19  Again, we're not asking for every document their expert

20  cited; we're asking for the ones where the hyperlinks are

21  important and where we don't have the ability to locate them

22  within the production, yet Google does.

23          THE COURT:  Okay.  Anything else?

24          MS. WOOD:  I'll just offer another example of

25  where, you know, we've taken our limited, you know, precious

                                                            18

1   ten depositions, you'll recall, and when we've had Google

2   witnesses on the -- on the stand -- in the deposition seat

3   and we've asked them questions about documents that contain

4   hyperlinks, the witnesses often say, I can't really answer

5   that question, it's referring to a document I can't see.

6   This has been a recurrent problem.  We wouldn't come to the

7   Court for something we didn't think was important.

8           THE COURT:  But if the expert says I never looked

9   at it, didn't rely on it --

10          MS. WOOD:  If it impeaches the expert's opinion in

11  the case, the fact that they chose not to look at it --

12          THE COURT:  Well, they never had it.  They didn't

13  have access to it.  That's the thing that I'm having a hard

14  time understanding.

15          MS. WOOD:  But that was Google's choice.  Google

16  can choose to give them the hyperlink any time that it

17  wants.  We want that choice.  We want the same choice that

18  Google has to give the document.

19          If the document doesn't exist and neither side has

20  it, that's one thing, but that's not the situation here.

21  The documents in the hyperlinks are available to Google, or

22  at least to the extent they are available to Google, we want

23  that, too.  If it's a circumstance where Google can't find

24  the hyperlink because it's broken or for any other reason,

25  then we understand that, and we think -- you know, that's

                                                        19

1   not what we're here to argue about today.

2          What we're here today is to ask to be put on equal

3   footing so that when a document contains a hyperlink, we,

4   too, have the choice to show our expert the hyperlink.  We,

5   too, have the choice to use that hyperlink when examining

6   the expert at their expert deposition.  That is the

7   fundamental nature of discovery.

8          And, again, the fact that the technological means

9   of attachment is a hyperlink as to whatever the

10  technological means is by which an attachment was originally

11  attached to an email, really makes no difference.

12         This is exactly like an email with a missing

13  attachment.  The attachment was part of the original

14  communication.  It is part of the context of the document

15  and the meaning of the communication.

16         If there are hyperlinks to phone numbers or

17  extraneous things, they're not interested in that.  And,

18  again, if Your Honor orders us to go back and focus on only

19  the hyperlinks that are substantive, we'll be more than

20  happy to do that.  But to say these hyperlinks aren't

21  relevant and shouldn't be produced -- again, it's not really

22  a question of whether they should be produced; it's a

23  question of whether they should be identified in the

24  metadata as having been associated with the original

25  document.  Because the people at Google who are exchanging

20

1     these documents, for them, it's exactly the same as an email

2     attachment.  They click on the link.  That's why the links

3     are there.

4            THE COURT:  Okay.  All right.  Mr. Ewalt, respond

5     to the it's just like an email attachment, or we need it to

6     make full context of what's contained in the document first.

7            MR. EWALT:  Yes, Your Honor.

8            And so I think a little context is in order here.

9     I'm sure Your Honor recalls that this case was brought after

10    a long investigation where many hundreds of thousands,

11    millions of documents were produced to the government.  They

12    were well aware of this link document issue before they ever

13    filed their complaint.

14           At the beginning of this case, we negotiated an

15    ESI order that Your Honor signed, and there's a provision of

16    that order that addresses precisely this issue.  It's in --

17    on page 13 of the ESI order in paragraph 6, the last

18    sentence, and it reads:  "For the avoidance of doubt,

19    documents that are linked are not part of the same family

20    for purposes of this order."

21           THE COURT:  Okay.  But there's also provisions for

22    asking for information.

23           MR. EWALT:  Correct, Your Honor.  But this

24    provision addresses head-on the argument that we should

25    treat these just like attachments to emails; this sentence

21

1    says we should not.

2         And Your Honor is exactly correct, there are other

3    provisions addressing how we should treat linked documents,

4    not like attachments to emails, but in a particular way.

5    And that provision for non-emails allows the plaintiffs to

6    make a reasonable and proportionate request for linked

7    documents.  And so, you know, our position is that that --

8    that made sense during fact discovery.  Fact discovery is

9    long since closed.

10        THE COURT:  Why do you think it's limited to fact

11   discovery?  I mean, you know, you produced a document the

12   last day of fact discovery, they don't get to ask for linked

13   information?  There's nothing that says explicitly that that

14   provision applies only during the fact discovery period.

15   The parties now are focusing the, you know, millions of

16   documents down to probably tens of thousands of documents

17   that they think are, you know, the most significant hot

18   documents.  And so your experts have obviously identified

19   certain documents that they think are significant in

20   supporting their opinions, and so the parties are now

21   focusing their attention on those documents.

22        And I'm having a hard time understanding why

23   allowing some information relating to the links in those

24   documents -- and, again, I don't know whether the 299 were

25   all of the documents that were identified that had links or

                                                          22

```
1    whether there was some filter put into place, you know, of
2    the 1,000 documents, we're picking 299, or they said every
3    document that had, you know, some link information in it, we
4    want everything in it.  I don't -- do you have any
5    understanding as to that?
6              MR. EWALT:  My understanding, Your Honor, is that
7    document started with the expert reports and saw all the
8    documents that were cited there.
9              THE COURT:  How many were cited in the six or
10   eight expert reports?
11             MR. EWALT:  I'm sorry, I don't know the answer to
12   that.
13             THE COURT:  More than 299?
14             MR. EWALT:  I would suspect so.
15             THE COURT:  Okay.
16             MR. EWALT:  So they started there.  I suspect then
17   they looked to see are these particular metadata fields
18   blank.  And if they were blank, then I think that's where
19   they got the 299.  And I think all three examples of the
20   documents they put in front of us are non-email documents,
21   where -- that was the agreement was that that metadata would
22   not be provided for those documents.  That was in the ESI
23   order.
24             And so my understanding of what the government has
25   done here is they've said any document that doesn't have a
```

23

1    link, without looking at how important that document is,

2    without articulating any need on a document-by-document

3    basis, they said we want them all, and for each one of those

4    documents, we want all the links in them.  And we know from

5    past experience that that could be many thousands of

6    documents.  That requires us to track down each and every

7    one.

8           And we have submitted a declaration to explain the

9    process that we would go through to check each and every one

10   of those.  Some of those are easy.  Some of them you can

11   find in a matter of minutes.  Some of them it can take

12   hours.  And we can't know for sure exactly the entire burden

13   without going through the whole exercise of that.

14          THE COURT:  All right.  I think I understand

15   Google's position.

16          Ms. Wood, I'll give you the last say on this.

17          MS. WOOD:  Again, Your Honor, we have attempted to

18   be judicious.  If you look at the entire scope of this case

19   and the number of documents that have been produced, we have

20   attempted to be very judicious.  These are documents that

21   Google has put into central issue by having their expert

22   cite them in the expert reports.  These are important

23   documents in the case by definition.  If there are certain

24   hyperlinks within the documents, you know, we are happy to

25   come back and be more specific about which hyperlinks that

                                                            24

```
 1   we need and which ones we don't need.  But the -- but the
 2   fundamental import is the documents themselves.  299
 3   documents out of 6 million documents is a very small sample.
 4   And this is exactly what we bargained for in the ESI order
 5   when we acceded to Google's concerns about the burden.
 6          The statement in the ESI order that it shall not
 7   be, for purposes of this order, treated as an attachment, is
 8   simply what gives them permission not to give it in the
 9   first place.  But that is what motivated us to ensure that
10   we had the ability to ask for them on a reasonable basis.
11          We never asked Google to find 600 million --
12   6 million documents and all the hyperlinks they're in.  We
13   probably should have, but we didn't.  We tried to be
14   reasonable and accommodating.  And now we're being punished
15   for that reasonable accommodation by being told that even
16   when we narrow our request to an infinitesimal percentage of
17   the entire production, that that, too, is unreasonable.
18          THE COURT:  All right.  Well, I think I understand
19   the issues and the needs and real desires from the parties,
20   and there is some I think support for having information
21   provided that was set out in our ESI order.  But the idea
22   that just because a document is being referred on by the
23   expert and that document may contain a hyperlink in some
24   part of the entire document, you know, I don't see that as
25   being something that is reasonable under the circumstances.
```

                                                              25

1              What I'm going to do is I'm going to grant the

2    motion in part.  I'm going to give the plaintiffs the

3    opportunity to start with 100 links, specific links.  Not

4    100 documents that have links.  So you need to take some

5    time and effort, look at the documents, see what links you

6    think might be significant to what your expert may or may

7    not want or what you may or may not need in questioning the

8    expert, looking at the document that's being referred to and

9    the opinion of the expert.  Because if the document has one

10   sentence that relates to what the expert is relying on and

11   the link is in a far separate part, it's not worth fighting

12   about.

13             So you'll get to do 100 to begin with.  You'll

14   need to provide them with the information as to the 100

15   specific links.  Again, I don't want to -- because I have no

16   idea how many there are.  I know there are 299 documents.

17   Some may have one link.  Some may have dozens of links.  It

18   may be the same link, I don't know.  But you'll start out

19   with that, we'll see how it goes from there; okay?

20             MS. WOOD:  Thank you, Your Honor.  Could I just

21   ask one question about the procedure?

22             THE COURT:  Sure.

23             MS. WOOD:  With respect to the timing, we would

24   ask -- given the links should be within minutes for these

25   100, we would ask that these be produced in time for each

                                                            26

```
 1    expert's deposition.
 2             MR. EWALT:  We don't know, Your Honor, if
 3    hyperlinks can be done within minutes because we don't know
 4    which links they're talking about.
 5             THE COURT:  How long is it going to take you to
 6    get them the links?
 7             MS. WOOD:  We'll get them by Monday.
 8             THE COURT:  Okay.  Well, the experts aren't being
 9    deposed until the final reports are done; right?  So we'll
10    have until sometime in March to do that, so ...
11             MS. WOOD:  The first expert deposition is on
12    February 16th, Your Honor.
13             THE COURT:  Okay.  So the rebuttal reports haven't
14    been done yet; have they?
15             MS. WOOD:  The rebuttal reports we're furiously
16    working on right now.  They're due February 13th, and the
17    first deposition is on the 16th.
18             THE COURT:  Okay.  Well, I guess is there a way
19    for you to structure the links as to which experts you need
20    to have them by?
21             MS. WOOD:  Yes, Your Honor.  We will do that.
22             THE COURT:  Okay.  Do that.  And you need to
23    provide them with that information.
24             I've read the declaration, the declaration talks
25    about what needs to be done.  Doing it 100 times over isn't
```

27

```
 1   going to be that difficult.  It will be modest compared to
 2   what other efforts Google has had to do in the discovery end
 3   of this case.  So I think under the circumstances, it is
 4   appropriate for me to go ahead and allow them to get
 5   additional information to at least 100, provide them with
 6   that list as quickly as you can, and to the extent that they
 7   need to be prioritized as to certain experts, just needs to
 8   be done and produced to them before the depositions begin;
 9   okay?
10              MS. WOOD:  Understood, Your Honor.  Thank you.
11              THE COURT:  Anything else in this case?
12              MR. EWALT:  No.  Thank you, Your Honor.
13              THE COURT:  Okay.  Thank you.
14              MS. WOOD:  Thank you.
15                   (Proceedings adjourned.)
16              ----------------------------------
17   I certify that the foregoing is a true and accurate, to the
18   best of my ability, transcription of proceedings recorded by
19   electronic sound recording (FTR system).
20                                    _Stephanie Austin_____
21                                    Stephanie M. Austin, RPR, CRR
22
23
24
25
                                                              28
```

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649