```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3   --------------------------x
     UNITED STATES, et al.,     :      Civil Action No.:
 4                              :      1:23-cv-108
                  Plaintiffs,   :
 5        versus                :      Friday, February 23, 2024
                                :      Alexandria, Virginia
 6   GOOGLE LLC,                :
                                :      Pages 1-26
 7                Defendant.    :
     --------------------------x
 8

 9        The above-entitled status hearing was heard before
     the Honorable Leonie M. Brinkema, United States District
10   Judge.  This proceeding commenced at 10:17 a.m.

11                    A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:   GERARD MENE, ESQUIRE
                           OFFICE OF THE UNITED STATES ATTORNEY
13                         2100 Jamieson Avenue
                           Alexandria, Virginia  22314
14                         (703) 299-3700

15                         JULIA TARVER WOOD, ESQUIRE
                           AARON TEITELBAUM, ESQUIRE
16                         UNITED STATES DEPARTMENT OF JUSTICE
                           ANTITRUST DIVISION
17                         450 Fifth Street, NW
                           Washington, D.C.  20530
18                         (202) 894-4266

19                         TYLER HENRY, ESQUIRE
                           OFFICE OF THE ATTORNEY GENERAL
20                         OFFICE OF THE SOLICITOR GENERAL
                           202 North Ninth Street
21                         Richmond, Virginia  23219
                           (804) 786-7704

22

23

24

25
                                                              1
```

```
 1                    A P P E A R A N C E S:

 2   FOR THE DEFENDANT:    KAREN DUNN, ESQUIRE
                           WILLIAM ISAACSON, ESQUIRE
 3                         JEANNIE RHEE, ESQUIRE
                           BRYON BECKER, ESQUIRE
 4                         PAUL, WEISS, RIFKIND,
                           WHARTON & GARRISON LLP
 5                         2001 K Street, NW
                           Washington, D.C.  20006
 6                         (202) 223-7300

 7                         CRAIG REILLY, ESQUIRE
                           LAW OFFICE OF CRAIG C. REILLY
 8                         209 Madison Street
                           Suite 501
 9                         Alexandria, Virginia  22314
                           (703) 549-5354
10
     COURT REPORTER:       STEPHANIE M. AUSTIN, RPR, CRR
11                         Official Court Reporter
                           United States District Court
12                         401 Courthouse Square
                           Alexandria, Virginia  22314
13                         (571) 298-1649
                           S.AustinReporting@gmail.com
14
          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
15

16

17

18

19

20

21

22

23

24

25
                                                              2
```

```
 1                    P R O C E E D I N G S

 2           THE DEPUTY CLERK:  The Court calls civil case

 3   United States of America, et al. versus Google LLC, Case

 4   Number 2023-cv-108.

 5           May I have appearances, please, first for the

 6   plaintiff.

 7           MR. MENE:  Good morning, Your Honor.  Gerard Mene

 8   with the U.S. Attorney's Office.

 9           THE COURT:  Good morning.

10           MS. TARVER WOOD:  Good morning, Your Honor.  Julia

11   Tarver Wood for the United States of America.

12           THE COURT:  Good morning.

13           MR. TEITELBAUM:  Good morning, Your Honor.

14    Aaron Teitelbaum for the United States.

15           THE COURT:  Good morning, Mr. Teitelbaum.

16           MR. HENRY:  Good morning, Your Honor.  Tyler Henry

17   on behalf of the plaintiff states.

18           THE COURT:  All right.  For the defense.

19           MS. DUNN:  Good morning, Your Honor.  Karen Dunn

20   on behalf of Google.

21           MR. ISAACSON:  Bill Isaacson, Your Honor, on

22   behalf of Google.

23           THE COURT:  Okay.

24           MS. RHEE:  Good morning, Your Honor.  Jeannie Rhee

25   on behalf of Google.
```

3

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

```
1              THE COURT:  Good morning.
2              MR. BECKER:  Good morning, Your Honor.
3   Bryon Becker on behalf of Google.
4              THE COURT:  All right.  And, Mr. Reilly, you made
5   it.
6              MR. REILLY:  I did.  Thank you, Your Honor.
7              Craig Reilly here on behalf of Google as well.
8   Thank you.
9              THE COURT:  All right.  Well, this is a status
10  hearing, and I'm frankly a little disappointed that I didn't
11  get a better agreement among you all on what are basically,
12  you know, housekeeping matters.  That does not bode well for
13  this case going forward, and I hope in the future when I ask
14  for you all to work something out, that there's a better
15  working out then what was done in this case.
16              A couple of important things that we need to get
17  resolved right off the bat.  I recognize that the setting of
18  the trial date for September 9th has created a problem for
19  Google, but I don't find that to be an insurmountable
20  problem.  There are enough lawyers, both -- just sitting in
21  the courtroom today, there are four counsel who identified
22  themselves, besides Mr. Reilly, as representing Google, and
23  a huge law firm as well behind them.  And, quite frankly,
24  that September 9th date is not going to change.  And I'm
25  sorry if it's creating some inconvenience for defense
```

4

```
1    counsel, but there are enough lawyers who can adequately
2    represent Google.
3            My concern is, there are several other major cases
4    that are on the various dockets within this courthouse that
5    I have to take into consideration.  Quite frankly, had there
6    not been the delay in the discovery, some of which was as a
7    result of Google not being able to turn everything over as
8    directed, it pushed this case further down the road.
9            The July date, which the government wanted, did
10   not work on the Court's calendar for multiple reasons, not
11   the least of which is I want a jury that can hear this case,
12   and the summertime is a terribly difficult time to get
13   people to commit to six or seven weeks of trial.  So, that
14   being the case, I am not changing the decision that the
15   trial will start on Monday, September 9.  And that's several
16   months down the road.
17           So, number one, the Delaware case may or may not
18   get changed.  I certainly don't like to interfere with
19   another judge's docket, but it certainly gives Google and
20   counsel enough time to rearrange -- and I don't mind
21   attorneys coming and going.  So if counsel want -- Ms. Dunn,
22   if you want to, you know, start this case, and if you have
23   to leave for a week, just arrange with one of your
24   colleagues that he or she would be handling the case while
25   you're not here.  Or you can split how you handle the case
```

                                                                 5

1    in Delaware.  But we are going to keep that trial date.  All

2    right.

3            So, having said that, just let me tell you quickly

4    how the trial will be conducted.  I'm going to seat ten

5    jurors because of the fact that the case is going to take a

6    while and we could lose a juror or two along the way.  As

7    you know under the federal rules, you only need six jurors

8    to reach a decision in a civil case.  So we have plenty of

9    extra jurors.  So ten will be the number.  Under the rules,

10   each side gets three peremptories, and so that's how we

11   work.

12           I want to make sure that if you are not familiar

13   with how we do backstriking in this court, you better make

14   sure you know how to do it, because that's one of the ways

15   we keep the case moving quickly.

16           The case will start -- the trial will start at

17   10:00 on Monday, September 9.  I run my trials until

18   approximately 6:00 in the evening.  We give the jury a

19   one-hour lunch break, it's almost always at 1:00.  Sometimes

20   it shifts a little bit depending upon other things that are

21   going on.  And I give a mid and -- a morning and a

22   mid-afternoon break of about 15 to 20 minutes, and that's

23   the normal schedule.

24           Day 2 and thereafter we will start at 9:30 and go

25   to 6:00.  And, again, 6:00 -- sometimes we end a little bit

6

1    early for the jury but not necessarily for counsel.  Because

2    at the end of each trial day, I will be having my courtroom

3    deputy read into the record, so there are no disputes, what

4    exhibits have been entered into evidence.  So there are

5    sometimes some administrative mop-up that occurs after the

6    trial day.

7           The trial will be conducted in this courtroom.  We

8    will make preliminary arrangements for an overflow courtroom

9    if, in fact, we need one so that there will be an in-house

10   broadcast to another courtroom -- I haven't decided which

11   courtroom that will be yet -- so that we can accommodate any

12   overflow.  And I will be monitoring the situation in terms

13   of media interest, and we want to make sure that the

14   public -- the general public will have access to the trial

15   as well.

16          I'm hoping we don't just have a courtroom full of

17   lawyers.  I don't know how many counsel are going to come

18   and try to watch this case.  And it may get to the point

19   where I'll actually reserve part of the courtroom just for

20   the public, for non-lawyers.  The lawyers can go and watch

21   from the overflow.  That will take some time, and we'll

22   figure out how we do that.

23          I do want any proposed voir dire questions to be

24   filed no later than one week before the start of trial.

25   Again, I prefer if you can set a -- submit a joint set of

                                                              7

1    proposed voir dire.  I don't necessarily give it, and don't

2    ask for contentions, because I don't give contention

3    questions.  And then if there are individual questions that

4    you all couldn't agree upon, I'll certainly look at those.

5    Ultimately, you know, I do the voir dire.  There's no

6    attorney voir dire in this courthouse.

7           Have you talked between and among yourselves about

8    the possibility of any kind of a juror tutorial about this

9    case?  Has anyone thought about that?

10          MS. TARVER WOOD:  Your Honor, we've not discussed

11   that, but the United States has certainly considered that

12   question, and, in that regard, also considered whether, for

13   example, jurors would be able to pass notes during the trial

14   indicating questions about things they might not be

15   following.

16          THE COURT:  Yeah.  Let me hear from you, Ms. Dunn.

17          MS. DUNN:  Your Honor, we would be happy to

18   discuss with the United States that possibility.  Another

19   thought that we've had is maybe a glossary for the jurors.

20   And we're happy to discuss that as well with the United

21   States.

22          THE COURT:  All right.  Now, I will tell you, I,

23   number one, would strongly favor a glossary; and,

24   number two, I have an open mind about a tutorial; however,

25   I'm not going to spend one second of my time working it out

8

1   between you all.  In other words, if you can't agree to what

2   you want to present, then it's not going to happen.  All

3   right.  Don't come to me with two different versions of the

4   tutorial.  I'm not going to spend my time on that.

5           And obviously that's going to be a huge advantage

6   to both sides, because I'm setting a half hour limit on

7   opening statements.  So to the extent you have a tutorial,

8   that's a general education of the jury, and you don't have

9   to spend time in your opening statements going through that.

10  All right.

11          The glossary is a great idea, and we would give

12  the glossary to each juror, which I think would help them

13  tremendously, and would help both sides in presenting a good

14  case.

15          The question about whether to let the jurors ask

16  questions is an interesting one.  I've done it once.  Quite

17  frankly, it didn't work that well, and it has a tendency to

18  the slow things down dramatically.  So I'm going to keep an

19  open mind about that issue.  All right.

20          The jurors in this jurisdiction are pretty sharp,

21  and as long as the lawyers are doing a good job in

22  presenting things, especially with a tutorial, I would think

23  that's not going to be necessary.  So I'll keep an open mind

24  about that issue.  I do let jurors take notes, so they'll be

25  able to take notes during the trial.

1           Now, it's going to be very important that you make

2    sure that your tech people who are going to be presenting

3    the evidence, that they've worked carefully with

4    Mr. Bachman, our IT person or AV person, in terms of the

5    equipment we have here in the building.

6           The audio and visual presentation system does have

7    the capability of just showing exhibits to the witness and

8    the Court without the jury or the public seeing it, which

9    means that if you're moving a piece of evidence in, we can

10   look at it before it's actually shown.  All right.  So make

11   sure that your tech people are 100 percent comfortable with

12   how that is done so that we can move things along.

13          I do not want to have a lot of issues come up

14   during the trial about exhibits, and so I'm not sure -- I

15   understand in the bench trial that went on in D.C., that

16   there was some degree of issues with proprietary or

17   confidential information from third parties, and I want to

18   make sure, to the extent possible, that that kind of issue

19   is reduced in this case.

20          So to the extent -- and, at this point, you

21   should -- both sides should have some sense of what your

22   physical exhibits look like.  The ones that you feel may

23   have sensitive third-party information, are they redactable

24   such that the document can be presented without having to go

25   through some complex sealing procedure?  At this point, does

                                                            10

```
1    the government have any sense of that yet?
2              MS. TARVER WOOD:  Your Honor, I think --
3              THE COURT:  At the lectern.
4              MS. TARVER WOOD:  -- it really does depend on the
5    documents and the third parties.  I think different third
6    parties have taken different positions in that regard.  And
7    that's part of why we wanted to include, in our proposed
8    schedule, time for the parties to -- attempt to resolve
9    those issues prior to trial so that trial can move
10   efficiently and there's no need to stop in the middle with
11   redactions and the like.
12             THE COURT:  Well, we're not going to.  I mean, I'm
13   definitely -- in the order that I get out to you sometime
14   early next week, we're going to have dates.
15             MS. TARVER WOOD:  Excellent.
16             THE COURT:  Much earlier dates than what you were
17   proposing, though.
18             MS. TARVER WOOD:  Thank you, Your Honor.
19             THE COURT:  I'm not going to be doing this one
20   week before trial.
21             MS. TARVER WOOD:  Thank you, Your Honor.
22             THE COURT:  All right.  So there's not going to be
23   an issue about that.
24             But you're going to need to talk to these third
25   parties as well, because just the fact that the information
```

                                                            11

```
 1    may be, you know, a little bit sensitive is not going to be
 2    enough.  It has to be genuinely of a proprietary nature.
 3              MS. TARVER WOOD:  Understood, Your Honor.
 4              THE COURT:  All right.  Both sides should start
 5    working on that as quickly as possible, because this is
 6    going to be as open a trial as is possible, and I want to
 7    make sure that that's not going to be an issue.
 8              There's been a request by the government to do a
 9    chess clock system.  I'm not going to impose that.  First of
10    all, to the extent the government is worried that they might
11    take 45 minutes to conduct a direct examination and the
12    defense might take two or three hours to cross, good trial
13    lawyers know that that's not a very effective way of
14    presenting a case.  It turns jurors off.  It shows, quite
15    frankly, anybody who's doing that type of cross is probably
16    defensive.  It probably helps the plaintiff.  And I think I
17    can police that kind of problem adequately.  There are some
18    witnesses where that will happen and it makes sense, but I
19    don't think that's going to be a major problem.
20              So what I'm going to do in that respect, because I
21    want to keep the case moving, is I'm not going to set a time
22    limit in that respect.  You will get time limits for opening
23    statement, and I'll decide how much time you get for closing
24    argument when I see where we are with the case and how it's
25    gone.
```

1          I'm going to certainly start by letting the

2    government put its case on.  We'll see how it's going.

3    Almost every day I'll be asking you where are we in your

4    estimate of your time.

5          As I understand, the 105 hours that you wanted

6    comes to about three trial weeks.

7          MS. TARVER WOOD:  Yes, Your Honor.

8          THE COURT:  And that would give -- even if Google

9    took the same amount of time, that's six weeks.  I'd be

10   shocked if this case, frankly the way we try cases, is going

11   to take that long, but I'm going to be having that sort of

12   in the back of my mind as I monitor how we're doing.

13         And so I am leaving open the possibility that if

14   the case really starts to bog down because there's just too

15   many administrative or whatever things are happening, I will

16   institute some sort of a chess clock system, but right now,

17   that's not the plan.  All right.  So hopefully we will not

18   need to do that.

19         Okay.  In terms of how you think about presenting

20   this case, the types of things that I don't allow in my

21   court, unless it is actually a material issue, don't spend

22   time on the expert qualifications.  Assuming your experts

23   have survived the *Daubert* hearings, they're experts, just

24   move them right in.  You can move in the CV.  I might let

25   you ask one or two questions about, you know, you've got a

                                                              13

1   Ph.D. in such-and-such, or you've been an expert in a number

2   of trials.  But I don't want to hear where they went to high

3   school or college or what their major was or how many

4   publications they've got.  All right.  The jury can read

5   that.  That saves, in many cases, a fair amount of time.

6   And that's my approach in trying cases.  So if I find that

7   either side is asking what I think are unnecessary or

8   extraneous questions, I'm not shy about stopping that.

9        I'm also a little bit concerned about the

10  government's representation that there may be multiple

11  witnesses that have to be called on a particular issue.  The

12  practice in this court is we don't allow for cumulative

13  evidence.  So I may allow one or two witnesses.  And that's

14  what rebuttal is about.  If the defense comes in and says,

15  well, these are sui generis issues for this particular

16  witness and it doesn't permeate the market, then that opens

17  the door for rebuttal.  All right.  That's a more elegant

18  way of doing it.  But, in any case, I just want you to

19  understand if you're bringing in the third or fourth witness

20  on basically the same issue, you're not going to be able to

21  do that in your case in chief.  All right.

22       Now, I also am concerned about the government's

23  request to have someone who is not from the U.S. Attorney's

24  Office being part of the plaintiffs' trial team.  The whole

25  point of requiring local counsel is an attorney who actually

                                                           14

```
 1    knows how we operate.  Mr. Mene's been around a long time.
 2    I don't -- he may have other things he needs to do and
 3    someone else from the U.S. Attorney's Office can certainly
 4    step in.  But you proceed at your own risk if you're not
 5    having an attorney who really knows how we do things.  I
 6    mean, Mr. Reilly is here with Google, and he certainly knows
 7    how this court operates.  And I don't think the man whose
 8    name you've requested become pro hac -- has he ever
 9    practiced over here?
10              MR. TEITELBAUM:  That's me, Your Honor.
11              THE COURT:  Oh, I'm sorry.
12              MR. TEITELBAUM:  And I have not other than this
13    case.
14              THE COURT:  Then we're going to keep Mr. Mene just
15    as he is.  He doesn't have to sit at counsel table as long
16    as he's in the courtroom available as a resource.  But I'm
17    not going to grant that request.  All right.
18              MS. TARVER WOOD:  And, Your Honor, just to
19    clarify, would that also apply to someone else from
20    Mr. Mene's office, or need it be Mr. Mene specifically?
21              THE COURT:  It needs to be an experienced
22    attorney.  This is a complex case, and it needs to be a
23    lawyer who knows how we try cases.  All right.
24              MS. TARVER WOOD:  Understood, Your Honor.
25              THE COURT:  Okay.  Now, in terms of deadlines --
```

                                                                 15

1    and I'm trying to find my chart here -- I'm going to just go

2    ahead and issue -- I'm looking at the various categories of

3    deadlines that you proposed, and I'm going to actually

4    change a significant number of them.

5         I liked the -- several of Google's later

6    deadlines, frankly, because the trial has been pushed.  So

7    in terms of the filing of summary judgment motions and that

8    sort of thing, you're going to get those from me later today

9    or Monday.  I'll give you a scheduling order.

10        The main thing I wanted you just to be aware of,

11   though, is that I am going to try, as I said earlier, to

12   push any third-party issues up much earlier so that we're

13   not doing them right on the eve of trial.  I'm not going to

14   take up trial time to address any of those issues.  So they

15   have to be worked out ahead of time.

16        Now, both sides have mentioned depositions.  Are

17   there any witnesses either side is planning to call who will

18   not be live in court?

19        MS. TARVER WOOD:  The United States has not made a

20   final decision, but we are considering very tightly edited

21   videotaped depositions.  That's one thing we are

22   considering, but we haven't made a final decision.

23        THE COURT:  They are highly ineffective in a case

24   that's complicated.

25        Is there a reason why those witnesses cannot be

                                                                16

```
 1   called in person?

 2            MS. TARVER WOOD:  I think again, Your Honor, it

 3   depends on the scheduling, but we will certainly take Your

 4   Honor's advice in that regard into account.

 5            THE COURT:  All right.  How about from Google?

 6            MS. DUNN:  Your Honor, there are people who may

 7   not be within the subpoena range, and if they would come, we

 8   would prefer that, obviously.  And so with Your Honor's

 9   guidance to the parties, maybe we'll be able to get people

10   here that we wouldn't otherwise be able to get.  And we

11   understand the Court's words about deposition designations.

12            THE COURT:  Well, both sides have to work

13   diligently on that.  I think, again, it's to your benefit to

14   have the witnesses here live in court.  The problem with

15   deposition testimony, number one, is you're at the mercy of

16   the tech system, and every now and then it goes down, and

17   we're not going to delay the trial.

18            Number two, I don't like it because I can't

19   control it.  You know, the same way if this witness is live

20   in court and you're asking a question that I'm not going to

21   permit, I can immediately stop it.  I don't have that

22   control over a deposition that's prerecorded.

23            And sometimes I have found also, depending upon

24   how the deposition was conducted, huge delays.  The witness

25   is, you know, scratching his head, looking at notes,
```

17

```
 1    consulting with counsel.  And if that starts to happen --
 2    I'm just alerting you, if you're planning to use deposition
 3    testimony, if I find that the pace of the deposition is too
 4    slow, then we switch to the old-fashioned method of my law
 5    clerk sitting in the witness box reading the witness's
 6    answers, and then whichever side was doing the questioning,
 7    you know, reads the question.  And that is really not
 8    effective, but, I mean, that is the way we do it if I find
 9    that the way in which the video is going is not going well.
10    All right.  So, again, I really hope that both sides work
11    diligently to reduce the number of depositions that you have
12    to rely upon.  Okay.
13            In terms of -- there was a request for an
14    extension of the page limit.  I will give each side an
15    additional five pages for the motion for summary judgment.
16    I'm not going to extend anything beyond -- and the five
17    pages will apply to the opening motion, the objection and
18    the reply brief.  All right.  But not more than that.  I
19    think you can get it down to that.
20            I think that covers just about everything.  Is
21    there anything in your joint proposal that you were
22    particularly concerned about that you want me to address in
23    court?
24            MS. DUNN:  Your Honor, may --
25            THE COURT:  Yes, ma'am.
```

                                                                    18

```
 1              MS. DUNN:  -- I just -- not about the joint

 2   proposal but with the trial length.

 3              THE COURT:  Yes.

 4              MS. DUNN:  I would say our estimate of how long

 5   this trial would take is something in the order of four

 6   weeks, accounting for the fact that the Court does not want

 7   cumulative evidence.

 8              So I know that the Court has said you're thinking

 9   at the outermost it could be six, but just because we --

10   Google did not put in a filing on trial length, and so I

11   want to make sure that we alert the Court that our estimate

12   is a lot closer to four weeks than it would be to six.

13              And I think the issue is, you know, there's a

14   certain number of experts, there's a certain number of

15   federal agency representatives that need to testify, but the

16   other witnesses are many, many, many third parties who

17   obviously are here to testify to facts, not opinion, and we

18   think that the more this goes on, the more cumulativeness we

19   will have.  So I just wanted to make sure the Court knew

20   about our estimate as well and understood that, you know, we

21   can't predict the future, but that's what we're thinking at

22   this time.

23              THE COURT:  Well, again, one of the concerns I

24   have -- and it may or may not become an issue -- we do run

25   into the Jewish holidays, all right, and I'm not insensitive
```

19

1    to that.  Rosh Hashanah begins the evening of October 2nd.

2    So when I estimate about six weeks, we may or may not have

3    to take a break.  I'm not sure how that's going to work with

4    the jury.  Quite frankly, if there are enough attorneys for

5    whom that is not an issue, we can continue with the trial.

6    But obviously if we have a juror who is observant, that's

7    going to change things.  I have to accommodate, obviously,

8    for that.

9            I doubt this case would still be going on, but

10   October 11th is the beginning of Yom Kippur, and, again,

11   that would be an early leave because the sun down by then is

12   probably around 6:00 or so.  So I'm not, you know, unaware

13   of those two potential, you know, delays in the trial.  And

14   then of course October 14 is a Federal holiday.  And so

15   there are some possible delays coming from that.

16           But, in any case, I like four weeks.  Again -- but

17   what I will do as an abundance of caution is I'm going to

18   get a jury that can sit for six --

19           MS. DUNN:  Understood, Your Honor.

20           THE COURT:  -- so we don't run into a problem.

21   All right.

22           MS. DUNN:  I also don't want to push my luck, but

23   on the summary judgment briefing, we do plan to move on

24   several grounds where we believe the issues are ripe for

25   summary adjudication, and as Your Honor well knows, the

                                                          20

1   facts need to be recited within the brief itself.  Obviously

2   there's an extensive record in this case.  I do think if

3   Your Honor had any flexibility, we would accept any

4   additional pages, but I understand what Your Honor has said.

5   But there are very concrete legal bases upon which that we

6   plan to move, and we think they may narrow the trial,

7   obviously, if the Court sees them meritorious.

8        THE COURT:  Well, again, if there were a joint

9   stipulation of facts that both sides completely agree about,

10  that reduces the number of pages you have to dedicate to

11  those facts that are still in contest, and that might be an

12  incentive to get you to work together a bit on that.  All

13  right.

14       MS. DUNN:  I am not optimistic on the summary

15  judgment facts on that score.  Of course we will try.  But

16  if Your Honor has any flexibility -- obviously if there's

17  not an agreement, you know, we would request leave maybe to

18  return to the Court, because the summary judgment legal

19  issues are -- there's, you know, controlling Supreme Court

20  precedent.  We want to make sure we thoroughly brief the

21  legal issues here that are going to bear on trial length and

22  everything that comes after.

23       THE COURT:  All right.  I'll keep an open mind on

24  that issue.

25       MS. DUNN:  Thank you, Your Honor.

21

```
 1              THE COURT:  All right.  Are there any other

 2    matters that you all want the Court to address?  I think --

 3    I'm sorry.  Go ahead.  Yes.

 4              MS. TARVER WOOD:  Nothing from the United States,

 5    Your Honor.

 6              THE COURT:  Mr. Reilly.

 7              MR. REILLY:  Just to -- the Court's normal

 8    practice is not to sit in a jury trial on Fridays, will that

 9    be the case?

10              THE COURT:  No.  No.  No.  No.  It's five days a

11    week.

12              MR. REILLY:  Five days a week.  Okay.

13              THE COURT:  I've changed that.

14              The one thing I do do, though, because I will have

15    other matters going on when this trial is happening, so I

16    will probably be doing some criminal and other civil matters

17    in this courtroom probably at 8 or 8:30 in the morning.  So

18    at the end of certain days, you may have to sort of clean

19    out.  We will give you -- I will see whether we can get you

20    access to one of the witness rooms on this floor where you

21    can store your stuff overnight on those days when we have to

22    clean the courtroom; okay?

23              MR. REILLY:  All right.  And the other one, with

24    the deposition designations, does the Court have a time

25    limit that you prefer on that in addition to the other
```

```
 1   limitations you described?
 2              THE COURT:  I'm going to put it in the final order
 3   that I give you.  I'm looking at this right now.
 4              The two dates that I want you to go home with
 5   tonight, though, so you can start planning accordingly, in
 6   terms of the deadline for filing summary judgment and
 7   Daubert motions, the government had proposed Friday,
 8   April 12, and Google had proposed the 26th.  I'm going to go
 9   with Google's dates on those.  All right.
10              MS. DUNN:  Thank you, Your Honor.
11              THE COURT:  So those deadlines will be April 26th.
12              The oppositions, I'm, again, going to go with
13   Google's dates, which are May 17, and the replies, May 31st.
14   All right.  And, at this point, I like having oral argument
15   on June 14.  So those you can go to the bank on.
16              What I am going to be changing so that you can
17   start preparing for this is that I think it shouldn't take
18   more than two weeks -- first of all, I may surprise you, and
19   I may rule from the bench depending upon how well things are
20   briefed.  Certainly within two weeks, I'll be able to give
21   you enough ruling.  So I don't see any reason why the
22   witness lists, pretrial exhibits, and depo designations
23   can't be filed by June 28.  That's two weeks after we would
24   have had the oral argument on the motions.
25              And then if you're filing on June 28th your
```

23

 1   witness lists, your pretrial exhibits and your deposition

 2   designations, at that point, you should also know what

 3   non-party confidential information you might be having to

 4   use, because that would have been part of your exhibits.  So

 5   I'm making June 28th the same date by which you must start

 6   to notify -- by which you must be notifying third parties as

 7   to that.

 8           And then any objections from third parties are

 9   going to be -- I'm giving them just two weeks to respond.

10   Any third party who has not, within that 14 days, indicated

11   an objection, they've lost it.  All right.  And so you need

12   to make sure that they all know that.  And so those dates I

13   can give you solid right now.  I'm going to look at the rest

14   of this calendar and decide what I'm going to do with the

15   rest of what you've recommended.

16           MS. TARVER WOOD:  Your Honor, may I ask a

17   clarification?  You know, one substantial source for

18   heavily-redacted and highly-confidential documents are

19   Google's own documents.  And so, in our proposal, that

20   request for sealing or confidentiality would apply to Google

21   or the United States if any of our documents are marked in

22   that fashion, and I don't think there will be many from us,

23   if any.  But we would ask that Google do the same, and that

24   for any documents that Google intends to have the United

25   States or itself use in a sealed or non-public fashion, that

                                                               24

1    they meet those same deadlines.

2              THE COURT:  Yes.  That would be the case.

3              MS. DUNN:  We understand, Your Honor.

4              The other thing I'd like to say is that Google

5    understands Your Honor's admonishment about transparency and

6    the importance of it, and so Google plans to be extremely

7    judicious in its designations.

8              THE COURT:  All right.  That's fine.

9              So I'm giving you those dates now, and then the

10   rest of what you had in your joint statement I'm going to

11   look at and make some fine-tuning to.

12             The only other thing I just want to alert you to

13   is, I don't want to have multiple motions in limine.  I

14   think there will be one motion in limine hearing.  So gather

15   them all together and we'll do them at one time.  It may be

16   a long day, but I don't want to have, you know, seriatim

17   hearings in that respect.  All right.

18             And I don't think I've mentioned this to you

19   before -- and don't laugh when I say it -- but in every

20   civil case that I have, I always throw out to the parties

21   whether there is any potential or interest in trying to see

22   whether the case can be worked out.  And it may or may not

23   be something that anybody's interested in, but I've got to

24   tell you, it wouldn't be the first time that a very complex

25   case ultimately became settleable.  I don't know because of

25

1    the other litigation whether that's refeasible or not, but

2    it's something that I just want both sides to at least be

3    thinking about.

4         Judge Anderson -- who certainly knows this case

5    well because he's been working with you, and he's still

6    here, he's on re-call in part because of this case -- would

7    certainly be a very experienced person who could work with

8    you if there were any interest in resolving this case.  So

9    I'll just let you know that that's an option that's always

10   out there.

11        All right.  Is there anything else we need to

12   address with this case right now?

13        MS. TARVER WOOD:  Nothing from the United States,

14   Your Honor.

15        THE COURT:  How about for the defense?

16        MS. DUNN:  No, Your Honor.  Thank you, Your Honor.

17        THE COURT:  We'll recess court until 2:00.

18            (Proceedings adjourned at 10:46 a.m.)

19        ----------------------------------

20   I certify that the foregoing is a true and accurate

21   transcription of my stenographic notes.

22

23                    *Stephanie Austin*

24                    Stephanie M. Austin, RPR, CRR

25

                                                        26