**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND ORDER REGARDING COORDINATION OF DISCOVERY**

At the outset of discovery in this case, both the Plaintiffs and Google agreed that coordination with the other lawsuits filed against Google alleging antitrust violations related to Google's ad tech business was in the interest of all parties to the actions, as well as the numerous non-parties whose documents and testimony would be sought in these actions. Plaintiffs and Google sought, and this Court entered, a Coordination Order (ECF No. 251), which at the time covered all the major related cases: this case brought by the United States and its state co-plaintiffs, the case brought by the State of Texas and its state co-plaintiffs, and the cases brought by various private parties and class actions. Because at the time all of those cases except this case were consolidated into a multi-district litigation pending in New York, coordination among all the cases could be effectuated through an order requiring coordination with the multi-district litigation in New York. Since that time, circumstances have changed—the case brought by Texas has been removed from the multi-district litigation and remanded for further proceedings in Texas. This change in circumstances requires an amendment to the Coordination Order to maintain the same level of coordination as previously agreed between the parties and ordered by this Court.

1

When Plaintiffs agreed to coordinate discovery in this action with discovery taking place in the multi-district litigation in New York, Plaintiffs did so with the understanding that after discovery in this action was complete, Plaintiffs would be entitled, pursuant to the terms of the negotiated Coordination Order, to documents and deposition testimony in the other related cases to which Google was a party so that Google would not have, by virtue of its participation in those cases, an informational advantage over Plaintiffs in this action. Plaintiffs negotiated for, and secured, an agreement and order requiring certain documents and testimony obtained in the multi-district litigation to be made available to Plaintiffs—even after the close of fact discovery here (as contained in paragraphs 2.e. and 6.b.-d. of the Coordination Order). Those provisions of the Coordination Order—which applied to the case brought by Texas at the time the Coordination Order was entered—were the fundamental "benefit of the bargain" that Plaintiffs sought in exchange for agreeing to coordinate discovery with the related cases in the first place. Yet now that the Texas case is proceeding with document and deposition discovery, Google seeks to deny Plaintiffs the benefit of that bargain.

For those reasons, Plaintiffs are moving for an order amending the Coordination Order to treat the Texas case identically to the cases still in the multi-district litigation for purposes of the Coordination Order. Plaintiffs have met-and-conferred with counsel for Google and for Texas and its co-plaintiffs regarding this motion. Google opposes the relief requested in this motion. Texas and its co-plaintiffs do not oppose the relief requested.

## BACKGROUND

### A. This Court Ordered Coordination with the Texas Case while Part of the MDL, Including Coordination After the Close of Fact Discovery.

At the start of discovery in this case, the Plaintiffs and Google agreed that coordinating aspects of this case with the pending multi-district litigation against Google, *In re Google Digital*

2

*Advertising Antitrust Litigation*, No. 1:21-md-03010 (S.D.N.Y.) (the "MDL"), would benefit all parties as well as the numerous third parties whose documents and testimony would be sought in these cases. *See* ECF Nos. 165 & 166 (Google's motion for entry of coordination order); ECF No. 174 (Plaintiffs' brief in support thereof). After resolving certain disputes between the parties as to the extent of the coordination (*see* ECF No. 201), the Court entered an Order Regarding Coordination of Discovery (ECF No. 251) (the "Coordination Order"), which has been in effect ever since. At the time the Coordination Order was entered, the lawsuit filed by Texas and its co-plaintiffs against Google, *State of Texas et al. v. Google LLC*, No. 4:20-cv-957 (E.D. Tex.) (the "Texas Case"), was consolidated with and part of the MDL.

Google obtained significant benefits from the Coordination Order: Google was freely able to use all documents produced in this case in the MDL without serving additional discovery in the MDL (*see* Coordination Order, ¶ 2.e.)—including the millions of documents produced by the United States and the State Plaintiffs from their own files, documents they collected from non-parties during their pre-suit investigations, and documents obtained from non-parties via subpoenas issued in this case. Google further benefitted from the coordination of depositions taken of Google witnesses, who, absent good cause, could only be deposed only once across this case and the MDL. *See* Coordination Order, ¶¶ 3.e., 4.b. Indeed, of the ten party depositions noticed by the Plaintiffs in this case, the MDL Plaintiffs cross-noticed four of them—meaning Google obtained the benefit of scheduling those depositions on two consecutive days, and for the remaining depositions of individual Google witnesses, the MDL Plaintiffs' choice not to cross-notice the depositions meant that those Google witnesses are no longer subject to deposition in the MDL, absent good cause shown.

While discovery is indisputably closed in this case, the Coordination Order expressly permitted limited additional coordination between this case and the MDL after the close of fact discovery. First, this Court ordered that transcripts and exhibits from Google and non-party depositions taken in the MDL could be obtained by counsel for the Plaintiffs and used for impeachment at trial. Coordination Order, ¶ 6.b.-d. Second, this Court ordered that documents obtained by Google in the MDL *after* the close of discovery in this case could be used for impeachment purposes in this case if they were promptly re-produced (within 14 days of receipt) to the Plaintiffs. *Id.*, ¶ 2.e. These provisions were the primary benefit Plaintiffs obtained from agreeing to the Coordination Order and consenting to allowing Google to re-use all materials collected by Plaintiffs in the MDL. And at the time, Google did not dispute that the Coordination Order should allow the use in this case of documents and depositions obtained in the MDL after the close of fact discovery in this case. Indeed, Google argued for a *broader* provision allowing unrestricted use in this case (i.e., not only for impeachment) for documents and depositions it obtained in the MDL after the close of fact discovery, asserting that doing so "advances the truth-seeking function of litigation," would "promote the just resolution of these matters," and lessen "the risk of inconsistent rulings." ECF No. 166, at 6.

### B. After its Remand, Texas Sought an Order from the Texas Court Effectuating Continued Coordination with this Case.

The Coordination Order entered here and in the MDL expressly contemplated the possibility that the Texas Case would become separated from the MDL, and that continued coordination between this case and the Texas Case may be appropriate in that event. *See* Coordination Order, ¶ 9 ("If any case(s) currently part of the MDL are transferred to other venue(s), the Parties in the Coordinated Cases shall meet and confer with the parties to the

4

transferred case(s) regarding whether, and on what conditions, the transferred case(s) should be coordinated with the MDL and the Virginia Case.").

On November 1, 2023, pursuant to orders from the Judicial Panel on Multidistrict Litigation and the United States Court of Appeals for the Second Circuit, the Texas Case was remanded from the MDL for further proceedings before the United States District Court for the Eastern District of Texas, where the case is currently proceeding. *See In re Google Digital Advertising Antitrust Litig.*, MDL No. 3010, ECF No. 250 (J.P.M.L. June 5, 2023); *In re Google LLC*, No. 23-910, ECF No. 101 (2d Cir. Oct. 4, 2023).

Upon remand, Texas and Google sought a coordination order in the Texas Case, and such an order was entered on February 26, 2024. *See* No. 4:20-cv-957, ECF No. 266 (E.D. Tex.). The focus of that order was coordination of fact discovery between the Texas Case and the MDL, as fact discovery is still open in both of those cases, but the order also effectuated some of the limited post-close-of-fact discovery coordination allowed in the Coordination Order. *See id*. ¶ 6.b. ("Counsel for any Party and Virginia Plaintiffs' Counsel may obtain Transcripts and exhibits of Google Depositions, Party Depositions, and Non-Party depositions in the Texas Case or the MDL after the Fact Discovery Cutoffs in the Virginia Case, the Texas Case, or the MDL directly from the court reporters."). That order was signed by the court in the Texas Case but never became effective because it was contingent on obtaining approval in the MDL (*see id*. ¶ 10), which has not occurred to date. But notwithstanding that fact, Google represented to the court in the Texas Case that Google was committed to coordination with this case:

> [Google's Counsel:] We've actually had productive discussions over the last two days where *Google has made it very clear to plaintiffs that as regards Virginia, we intend to do everything that we can to sort of continue the effectuation of the existing coordination order that was entered in Virginia and the MDL*. And we have made it very clear to plaintiffs that we are prepared to make Google --

5

continue to make Google's documents and data available and to otherwise coordinate with respect to that existing coordination order.

March 21, 2024 Hearing Transcript, No. 4:20-cv-957, ECF No. 320 (E.D. Tex.) (emphasis added).[1]

### C. A Further Order from this Court is Required to Continue the Previously-Ordered Coordination with the Texas Case.

While this Court previously ordered coordination with the Texas Case (when it was part of the MDL), and the presiding judge in the Texas Case has expressed support for coordination between the Texas Case and this case, a further order of this Court appears necessary to implement the coordination. Plaintiffs' proposed order filed herewith does so in the simplest way possible: amending the Coordination Order to treat the Texas Case as if it were still part of the MDL for purposes of the Coordination Order. This approach simply applies the current Coordination Order to the Texas Case without any changes, thereby preserving as much as possible both the agreements reached by the parties in negotiating the Coordination Order and the decisions of this Court in ruling on disputes between the parties and in entering the Coordination Order.

To be clear, Plaintiffs recognize that fact discovery in this case is closed, and therefore only the provisions of the Coordination Order that apply after fact discovery is closed would apply moving forward. But, importantly, amending the Coordination Order as Plaintiffs request would preserve the guidelines for use of fact discovery obtained in the Texas Case after the close of fact discovery in this case: (1) under paragraph 6.b., Plaintiffs would be able to obtain transcripts and exhibits from fact depositions taken in the Texas Case directly from the court

---

[1] Upon request, Plaintiffs will provide a copy of the complete transcript of this hearing to the Court.

6

reporters; (2) under paragraph 6.d., both Plaintiffs and Google would be permitted to use fact depositions taken in the Texas Case for impeachment at trial in this case; (3) under paragraph 2, Plaintiffs could share fact discovery with Texas and its co-plaintiffs in the Texas Case; and (4) under paragraph 2.e., fact discovery obtained in the Texas Case could be used in this case for impeachment at trial if it was produced to Plaintiffs within 14 days of receipt in the Texas Case—effectively giving Google the option to elect to use new documents obtained in the Texas Case for impeachment at trial in this case if Google promptly re-produces them to the Plaintiffs. As these exact same provisions are already in effect for fact discovery obtained in the MDL, Plaintiffs merely request that they be extended to the Texas Case.

## ARGUMENT

There is ample cause to amend the Coordination Order as Plaintiffs propose. Plaintiffs' amendment updates the Coordination Order to account for the change in circumstances for the Texas Case since the Coordination Order was entered in a way that preserves the Court's decisions and the parties' agreements. Doing so ensures a level playing field between the parties, benefits all of them, and does not prejudice Google.

### A. Extending the Existing Coordination Order to the Texas Case Ensures a Level Playing Field between the Plaintiffs and Google.

The Plaintiffs stand ready to proceed to trial on the record they have developed during discovery in this case, but ongoing discovery in the Texas Case is generating additional material that risks giving Google an asymmetrical informational advantage in this case. Because Google has at least one of the same law firms and several individual lawyers representing it in the Texas Case and in this case, there is a manifest and unavoidable risk that discovery in the Texas Case will inform Google's litigation of this case. Even assuming the best good faith on the part of Google and its counsel, they cannot unknow information they learn from discovery in the Texas

7

Case and will therefore inevitably rely on that information while litigating this case, even if that reliance is unintentional.[2] As the original Coordination Order implicitly acknowledged, the only practical way to protect against this risk is to make discovery from the Texas Case available to both sides in this case. Maintaining a level playing field among the parties was a key reason the Plaintiffs supported implementing the Coordination Order in the first place. *See* ECF No. 174, at 2 (Plaintiffs' brief in support of coordination order: "The Court should adopt plaintiffs' proposals on these disputed issues because they maintain a level playing field among all parties while still allowing for an appropriate degree of coordination …").

Sections 2 and 6 of the proposed amended Coordination Order would both place limits on the use of discovery obtained in the Texas Case (i.e., use for impeachment only) and ensure the Plaintiffs minimally fair access to the same discovery Google's counsel could access (i.e., allowing Plaintiffs to order deposition transcripts and requiring Google to promptly re-produce documents to Plaintiffs it wishes to use for impeachment at trial). Without those limits and assurances of fair access, an uneven playing field is unavoidable. For example, Google would be able to obtain documents and sworn testimony from non-parties in the Texas Case that would inevitably inform how they craft their examinations of witnesses from those same non-parties if they were called at trial by the Plaintiffs. In addition, if the Plaintiffs lack access to transcripts of the depositions of Google witnesses from the Texas Case, Google witnesses could color their trial testimony on key issues without being vulnerable to fair cross-examination based on their deposition testimony in the Texas case. Remedying this imbalance is an implicit reason the

---

[2] *See PepsiCo., Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (explaining that employee would "inevitably" rely on confidential information learned from prior employer, "whether or not [he] acts consciously or unconsciously" unless he "possessed an uncanny ability to compartmentalize information").

parties agreed to, and the Court entered, the current Coordination Order—and there is no reason to treat depositions and documents from the MDL differently than those from the Texas Case.

Plaintiffs seek a fair trial in which issues are decided on the merits. That cannot occur if Google were allowed to prepare its case with the benefit of multiple months of additional discovery from the Texas Case, but Plaintiffs were not afforded access to the additional information that Google has gathered.

### B. Extending the Existing Coordination Order to the Texas Case Benefits All Parties, Including Google and Non-Parties, and Minimizes the Risk of Inconsistent Judgments.

The existing Coordination Order benefits the parties in the MDL by allowing unrestricted use of all the discovery produced in this case and depositions taken in this case without the need to re-issue discovery requests or non-party subpoenas. This reduces the burden on the plaintiffs in the MDL, Google, and relevant non-parties by removing the need to issue or respond to discovery responses merely seeking the same discovery already assembled in this case. In particular, hundreds of non-parties have responded to document or deposition subpoenas issued by Plaintiffs or Google in this case, producing thousands of documents and sitting for dozens of depositions. The Coordination Order significantly reduces the burden those relevant non-parties would otherwise have to bear if Google or the plaintiffs in the MDL were forced to issue their own subpoenas to obtain those same materials. Google likely recognizes the value of these advantages—as a coordination order was initially jointly proposed by both Google and the Plaintiffs.

Plaintiffs' proposed amendment to the Coordination Order would extend those same benefits to the Texas Case. Both Google and Texas and its co-plaintiffs would reap the benefits of obtaining the discovery assembled in this case, and non-parties may not be burdened with responding to duplicative subpoenas. Google specifically would obtain the right to use all

discovery and depositions from this case in the Texas Case—amounting to millions of documents obtained by the Plaintiffs during their pre-suit investigation, documents obtained from non-parties in this case, and dozens of pre-suit and litigation deposition transcripts. This would be fully consistent with Google's pledge to the court in the Texas Case to "continue the effectuation of the existing coordination order that was entered in Virginia and the MDL." No. 4:20-cv-957, ECF No. 320 (E.D. Tex.).

Plaintiffs further understand that Google is actively seeking to re-use the discovery obtained in this case in the Texas Case—and therefore recognizes the benefit of doing so. Plaintiffs have learned that Google has attempted to serve subpoenas on various non-parties who provided documents to the Plaintiffs during their pre-suit investigations and that those subpoenas have referenced the fact that those non-parties provided documents to the Plaintiffs during their pre-suit investigation. This conduct shows that Google is already relying on discovery it obtained in this case to inform how it is litigating the Texas Case. It is inevitable that discovery in the Texas Case will similarly inform how Google tries this case. Amending the Coordination Order as Plaintiffs propose would allow Google (and Texas and its co-plaintiffs) to re-use discovery from this case in the Texas Case immediately, without pursuing individual subpoenas on hundreds of non-parties.

A further benefit to all parties, including Google, of Plaintiffs' proposal is reducing the risk of inconsistent judgments. Extending the Coordination Order to the Texas case provides at least some pathway for using any highly probative evidence uncovered in the Texas Case at trial in this case. That increases the likelihood that both cases are decided on a consistent set of facts and reach consistent results. As Google itself argued to the Court previously, allowing some use of discovery obtained in the Texas Case at trial in this case would "advance[] the truth-seeking

10

function of litigation," remove "obstacles to probative evidence being used," "promote the just resolution of these matters," and address "the risk of inconsistent rulings." ECF No. 166, at 6.

### C. Google is not Prejudiced by an Extension of the Existing Coordination Order to the Texas Case.

Amending the Coordination Order as Plaintiffs propose would cause no prejudice or burden on Google. Plaintiffs' amendment would not re-open discovery, force Google to produce additional documents or respond to additional discovery requests, or provide Plaintiffs with any information not already available to Google or its counsel. The provision on deposition transcripts and exhibits specifically states that Plaintiffs would obtain transcripts by ordering them directly from the court reporter (at their own expense), imposing no obligation or burden whatsoever on Google to re-produce any transcripts to the Plaintiffs. And the provision on documents gives Google the ability to decide whether to re-produce documents to the Plaintiffs promptly—giving Google the right to use them at trial in this case for impeachment—or to forego that burden. To the extent Google does argue that Plaintiffs' proposed amendment prejudices Google, that contention is belied by: (1) Google's arguments to this Court in April 2023 seeking broad ability to use information obtained in the MDL in this case, even if the information was obtained after the close of fact discovery (*see* ECF No. 166, at 6-7); (2) Google's agreement to these same provisions with respect to the MDL, and the Texas Case as well while it was part of the MDL, in the current Coordination Order; and (3) Google's recent apparent strategy to issue subpoenas which would allow it to re-use discovery from this case in the Texas Case.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectively request that the Court enter the proposed order amending the Coordination Order. Subsequently, Plaintiffs will work

11

expeditiously with counsel for Texas and its co-plaintiffs to request that the same order be entered in the Texas Case.

Dated: April 12, 2024

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Tyler T. Henry<br>STEVEN G. POPPS<br>Deputy Attorney General<br>TYLER T. HENRY<br>Assistant Attorney General<br><br>Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>MICHAEL E. WOLIN<br>AARON M. TEITELBAUM<br><br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Julia.Tarver.Wood@usdoj.gov<br>Attorneys for the United States | Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |