IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES,** *et al.*,<br><br>                 *Plaintiffs*,<br><br>   v.<br><br>**GOOGLE LLC,**<br><br>                *Defendant.* | **Civil Action No.**<br>**1:23-cv-00108-LMB-JFA** |

**GOOGLE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND ORDER REGARDING COORDINATION OF DISCOVERY**

Discovery "indisputably closed in this case" 7 months ago, and as the Court observed in October, "the universe of discovery . . . available to be used in this litigation is now created." Plaintiffs' Brief, ECF No. 551 ("Pl. Br.") at 4 (first quotation); Oct. 13, 2023 Hearing Transcript, ECF No. 484 at 7 (second quotation). Indeed, over the last several years, Plaintiffs have amassed a voluminous discovery record from Google and numerous third-parties. For example, during the Department of Justice's ("DOJ") more than 3-year pre-suit investigation, Google produced nearly 3 million documents and made available more than 30 witnesses for depositions. The DOJ also interviewed numerous third-parties and received nearly 5 million third-party documents. In this action, Plaintiffs have taken 10 Google depositions, 18 third-party depositions, and received over 3 million more documents from Google and third-parties. Now, mere months from trial, and after the MDL Court already declined to continue coordination with the Texas Case, Plaintiffs seek to reopen the record to gather up to 80 additional deposition transcripts and thousands more documents from the remanded Texas proceeding.

Plaintiffs' requested relief would allow them to use the Texas Case as a proxy to reopen discovery in this action, receiving numerous deposition transcripts of Google witnesses from the Texas Case. Plaintiffs insist that this discovery is necessary to maintain a "level playing field." Pl. Br. at 7. But the field is already level: discovery is closed and both sides have the same discovery materials. Moreover, Plaintiffs had nearly endless opportunities to take discovery from Google over the last several years. Rather than cure any information asymmetry, Plaintiffs' request would create one: under their proposal, Google obtains no right to access more discovery of Plaintiffs while Plaintiffs could use the new discovery to inform their trial strategy.

Despite their broad, eleventh hour request to inject voluminous discovery into these proceedings, Plaintiffs declare that they "stand ready to proceed to trial on the record they have developed during discovery in this case." Pl. Br. at 7. They should do so. Plaintiffs have failed to

demonstrate good cause for expanding the scope of discovery in this case by "amending" the existing Coordination Order, and the expansion of discovery Plaintiffs seek would cause Google significant prejudice. For these reasons and as explained below, Google asks this Court to deny Plaintiffs' Motion to Amend the Order Regarding Coordination of Discovery.

## I.  FACTUAL BACKGROUND

On June 5, 2023, the Court entered the Order Regarding Coordination of Discovery (ECF No. 251) (the "Coordination Order") which, among other things, allowed the sharing of discovery between this action and *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (S.D.N.Y.) (the "MDL"). When the Coordination Order was entered, *State of Texas et. al. v. Google LLC*, No. 4:20-cv-957 (E.D. Tex.) (the "Texas Case") was consolidated with the MDL, and the scope of discovery available in the MDL (and thus the Texas Case) was similar to the discovery permitted in this case. The MDL Scheduling Order, for example, provided for 15 total fact witness depositions "per side"—*i.e.*, meaning that the Texas plaintiffs and the private plaintiffs in the MDL collectively shared 15 total depositions of Google and third-party witnesses. MDL ECF No. 394 ¶ 6.5.

At the time of the negotiation and entry of the Coordination Order, Texas sought to exit the MDL and be remanded back to the United States District Court for the Eastern District of Texas. The Coordination Order makes clear that this possibility was known to the parties, but there was no agreement as to its consequence and what, if any, coordination should ensue upon that possible event. The Order states: "If any case(s) currently part of the MDL are transferred to other venue(s), the Parties in the Coordinated Cases shall meet and confer . . . regarding whether, and on what conditions, the transferred case(s) should be coordinated with the MDL and the Virginia Case." Coordination Order ¶ 9. In other words, the existing Coordination Order does not

3

provide for automatic continued coordination upon remand or transfer, instead leaving open the possibility that the circumstances of transfer may make continued coordination inappropriate.

Discovery in this case closed on September 8, 2023. On November 1, 2023, the Texas Case was remanded back to the United States District Court for the Eastern District of Texas. After remand, on January 2, 2024, the Court in the Texas Case entered a Scheduling Order setting out the scope of discovery. Texas Case ECF No. 194. Under that Scheduling Order, the Texas Plaintiffs and Google are *each* permitted to take 40 fact witness depositions—meaning the Texas Plaintiffs are now entitled to significantly more depositions than the Texas Plaintiffs had to share with the then-dozens of MDL Plaintiffs under the MDL Scheduling Order. *Id.* at 6.

Not only is discovery in the Texas Case post-remand broader than that permitted in the MDL, it is also focused on different issues than this case. The Texas Plaintiffs have a 71-paragraph "Deceptive Trade Practice Violations" section of their complaint alleging that certain Google conduct is false or misleading under the consumer protection laws of various states. *See* Fourth Am. Compl., MDL ECF No. 541 ¶¶ 526–97.

Recognizing that extended coordination would expand discovery, on March 6, 2024, the Court in the MDL declined to order continued coordination between the MDL and the Texas Case. *See* Pre-Trial Order No. 8, MDL ECF No. 708. Specifically, Judge Castel explained that with "80% of the fact discovery period having passed, discovery in this MDL should be winding down." *Id.* Since then, discovery in the Texas Case and the MDL has proceeded separately.

## II.  ARGUMENT

Plaintiffs must show good cause to amend the Coordination Order, as this Court recognized when MDL Plaintiffs previously tried to modify the Coordination Order to expand the scope of their record. *See* Jan. 26, 2024 Hearing Transcript, ECF No. 516 at 18 (explaining that "good cause" is needed to "justify changing the order that was negotiated and entered by our

court and the New York court"); *see also Morris v. Edmonds*, 2009 WL 1065859, at *2 (E.D.N.C. Apr. 17, 2009) ("Plaintiff must show good cause to expand the scope of discovery."). Plaintiffs have not made this showing.

Plaintiffs instead argue that "ample" cause exists because amendment would "ensure[] a level playing field between the parties [and] benefit[] all of them." Pl. Br. at 7. The DOJ had nearly unlimited opportunity for discovery during its over 3-year pre-suit investigation and has received voluminous discovery since. Moreover, contrary to the DOJ's suggestion of a "level" playing field, there would be very real prejudice to Google and this proceeding: Plaintiffs would be allowed additional discovery of Google without Google receiving any corresponding discovery of Plaintiffs, and use of that discovery—imported from a different case—would potentially confuse the issues in this case.

## A. There is No Good Cause to Amend the Coordination Order

Plaintiffs argue that they require (1) deposition testimony from Google witnesses in the Texas Case and (2) documents and deposition testimony from third parties in the Texas Case to use in this action "for impeachment only." Pl. Br. at 8. According to Plaintiffs, this voluminous discovery is necessary to allow "Plaintiffs minimally fair access to the same discovery Google's counsel could access." *Id*. But Plaintiffs and Google already have access to the same discovery record in this case. After filing suit in this forum with full awareness of its expedient scheduling practices, Plaintiffs should not take one-sided advantage of discovery proceedings in another forum after discovery in this matter has closed.[1]

---

[1] In seeking to access this discovery from the Texas Case, Plaintiffs essentially ask this Court to overrule the Protective Order in that case. *See* Plaintiffs' Motion, ECF No. 550 at 4 (Plaintiffs' Proposed Order suggesting shared discovery "[n]otwithstanding the Protective Orders entered in the Virginia Case or the Texas Case"). But courts appropriately decline to order production of discovery that would undermine a protective order in another case. *See, e.g.*, *State Auto. Mut. Ins. Co. v. Davis*, 2007 WL 2670262, at *2 (S.D.W.V. Sept. 7, 2007) (denying motion to compel

5

Unfettered by deposition limits during its wide-ranging pre-suit investigation, the DOJ chose to depose more than 30 Google witnesses, some more than once. Plaintiffs then took another 10 depositions of Google witnesses in this action, and Plaintiffs have access to over 6 million Google documents. Plaintiffs' purported information asymmetry boils down to a reality present in every case involving corporate litigants: corporate litigants always have more institutional access to and knowledge about their own employees. But that is an out-of-court asymmetry untethered from the evidence each side in this case has in the discovery record.

Granting Plaintiffs' request for Google deposition transcripts from the late-breaking Texas Case will only lead to an "unlevel playing field" for Google, which will be required to share numerous new Google deposition transcripts with Plaintiffs without benefitting from new depositions of Plaintiffs. And there are incremental depositions of Plaintiffs that Google was not able to take: Plaintiffs' Initial Disclosures alone list 35 employees of federal government agencies. Google was not able to depose most of these witnesses given this case's deposition limit. Both parties were, and should remain, bound by the appropriate discovery limitations in this case. Moreover, while discovery from the Texas Case may have limited impeachment value to Plaintiffs, it will be unlikely to have impeachment value for Google because it is unlikely to overlap with the testimony of Plaintiffs' trial witnesses such that impeachment would be possible.

Plaintiffs also do not explain why they need discovery from the third-parties involved in the Texas Case. Many of the third-party subpoenas issued in the Texas Case have been to entities identified by plaintiffs in the Texas Case as likely to have discoverable information related to the

---

production of discovery from a related case, "in the interests of fairness, preserving the reliability of protective orders, and upholding the principle of comity" as that discovery was covered by a protective order in the related case).

Texas Case claims and defenses, including regarding state-law claims not alleged in the instant case. Accordingly, many of the Texas third-parties bear little relevance to Plaintiffs' claims, and Plaintiffs have failed to identify what testimony would be used for impeachment purposes under their proposed amended Coordination Order. Moreover, Plaintiffs' strategic decisions in this action underscore that they already have access to more than enough third-party information. For example, DOJ's pre-suit investigation—which involved numerous interviews with third-parties and access to nearly 5 million third-party documents—was so extensive that Plaintiffs only chose to notice or cross-notice 18 third-party depositions in connection with this action, allowing 2 of their 20 third-party deposition slots to go unused.

None of Plaintiffs' other arguments support their attempt to get more discovery. Plaintiffs argue that extending the Coordination Order to allow "unrestricted use of all the discovery produced in this case" benefits third-parties because "[third]-parties [would] not be burdened with responding to duplicative subpoenas." Pl. Br. at 9. But Google has already addressed this concern. Specifically, Google's document subpoenas of third-parties in the Texas Case for documents produced in connection with this action seek those third-parties' consent to use the documents they produced in this action in the Texas Case. In other words, Google is not burdening third parties with "duplicative subpoenas" requiring two different substantive responses for the same requests.

Plaintiffs' argument that sharing discovery across cases would "reduc[e] the risk of inconsistent judgments," Pl. Br. at 10, also reveals their true motivation: they seek additional evidence from Google to shore up the manifest weakness in their own case. After all, if Plaintiffs believed they would prevail in this case but the plaintiffs in the Texas Case would not, Plaintiffs would have no need for evidence from the Texas Case.

At bottom, it is Plaintiffs who stand to benefit from their own proposal. Plaintiffs seek explicit permission to share discovery from *this case* with Texas, explaining that under the proposed amendment, "Plaintiffs could share fact discovery with Texas and its co-plaintiffs in the Texas case." Pl. Br. at 7. Plaintiffs could suggest specific documents and lines of deposition questioning to the Texas Plaintiffs and then receive the transcripts of the very depositions that they helped to orchestrate to inform their selection of witnesses and lines of cross-examination in this case. Plaintiffs' backdoor attempt to reopen and extend their own discovery through the introduction of further deposition testimony—7 months after the close of fact discovery in this case and less than 5 months away from trial—prejudices Google in this critical pre-trial period, especially with Google obtaining no corresponding right to access more discovery of Plaintiffs.

The MDL Court denied extended coordination between the Texas Case and the MDL—despite the greater overlap between those cases, which both include state law claims—because discovery in the MDL is nearing a close. *See* Pre-Trial Order No. 8, MDL ECF No. 708. Plaintiffs attempt to obscure and avoid the MDL Court's order rejecting further coordination, stating that coordination between the Texas Case and the MDL "was contingent on obtaining approval in the MDL, which has not occurred to date." Pl. Br. at 5. In truth, the MDL Court denied the request for coordination that Plaintiffs seek here, in an even more remote case for which discovery is not just 80%, but 100%, complete and has been for 7 months. The MDL Court's rejection of coordination with the Texas Case is critical: it would be a perverse result if in this case—where fact discovery closed 7 months ago—the Court agreed to extend coordination when the MDL Court has refused. Discovery is over, and the Court should not countenance Plaintiffs' attempt to reopen it solely for their own extended discovery purposes. *Mims v. City of Chicago*, 2021 WL 5006649, at *6 (N.D. Ill. Oct. 28, 2021) (denying motion to

reopen discovery for lack of good cause in a case where "[t]here was enough discovery here to choke a horse" (internal citation and quotations omitted)).

### B. Google Would Be Prejudiced by Amendment of the Coordination Order

Plaintiffs' desired relief would create a feedback loop with the Texas Case in which: 1) Plaintiffs could share discovery from this action with the Texas Plaintiffs to suggest lines of deposition questioning; 2) Texas Plaintiffs could tailor their depositions of Google witnesses based on Plaintiffs' feedback; and 3) the resulting depositions from the Texas Case could be used by Plaintiffs to inform their trial strategy in this action and to arm them with more ammunition for trial. This stands to confuse the issues and cause significant prejudice to Google, which will have no corresponding opportunity to access more discovery of Plaintiffs. *See, e.g.*, *Smith v. City of Greensboro*, 2021 WL 5772309, at *5 (M.D.N.C. Oct. 18, 2021) (denying motion to reopen discovery because, while plaintiff described the proposed additional discovery as "limited," allowing plaintiff to re-depose 7 individuals and take an "unspecified number" of further depositions "would be prejudicial").

In addition to creating an information asymmetry, introduction of discovery from the Texas Case—even if just for impeachment purposes—not only risks confusing the issues for the jury, but would require the Court and parties to parse through the extensive deposition testimony concerning facts and claims that are irrelevant to this proceeding for what is likely to be extremely limited impeachment value.

Finally, Plaintiffs argue that Google cannot claim prejudice because it previously supported coordination under very different circumstances.[2] *See* Pl. Br. at 4, 11 (citing Google's

---

[2] Plaintiffs also argue that Google will suffer no prejudice because extending the Coordination Order will impose no burden on Google. Plaintiffs' burden argument is a red herring: discovery can be prejudicial even if it is not burdensome. *See Wiles v. Black & Boone, P.A.*, 2022 WL 16836204, at *2 (M.D.N.C. Aug. 4, 2022) (finding prejudice without assessing burden).

Brief in Support of Coordination Order, ECF No. 166). While Google argued in favor of and ultimately complied with various levels of coordination, circumstances have materially changed: discovery in this action has closed, the Texas Case has been remanded and opened to significantly broader discovery than contemplated when it was part of the MDL, and the MDL Court declined to order coordination between the Texas Case and the MDL.[3] Given these developments, many of the reasons animating Google's support for coordination have become moot. As counsel for Google has explained: "[T]he key benefit to Google, in the context of the coordination order, was protection for Google's witnesses in terms of coordination of depositions." March 21, 2024 Hearing Transcript, Texas Case ECF No. 320 at 40.[4] Amending the Coordination Order now would provide little-to-no benefit to Google while allowing Plaintiffs to receive the windfall of additional discovery through the Texas Case for use in this action. As made clear from the express language of the original Coordination Order, in the event there was remand to Texas, all bets were off and there is ample reason to hold to that position.

### III.  CONCLUSION

For the reasons stated herein, Google respectfully requests that the Court deny Plaintiffs' Motion to Amend the Order Regarding Coordination of Discovery.

---

[3] Plaintiffs also attempt to emphasize Google's representation to the Texas Court that Google intends to abide by the existing Coordination Order as it relates to this action and the MDL. *See* Pl Br. at 5–6. Google's continued compliance with a court order does not bear on whether coordination should be extended to the Texas Case.

[4] Upon request, Google will provide a copy of the transcript of this hearing to the Court.

10

Dated: April 17, 2024

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
Andrew J. Ewalt (*pro hac vice*)
Justina Sessions *(pro hac vice)*
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com
julie.elmer@freshfields.com
andrew.ewalt@freshfields.com
justina.sessions@freshfields.com

Daniel S. Bitton (*pro hac vice*)
Bradley Justus (VSB # 80533)
David Pearl (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
dbitton@axinn.com
bjustus@axinn.com
dpearl@axinn.com

Respectfully submitted,

 */s/ Craig C. Reilly*
CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie Rhee (*pro hac vice*)
William Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
jrhee@paulweiss.com
wisaacson@paulweiss.com
amauser@paulweiss.com

*Counsel for Google LLC*