# EXHIBIT 63

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

UNITED STATES,           ) Case No.
et al.,                  ) 1:23-cv-00108-LMB-JFA
                         )
    Plaintiffs,          )
                         )
vs.                      )
                         )
GOOGLE LLC,              )
                         )
    Defendant.           )
_____)

- HIGHLY CONFIDENTIAL -

VIDEOTAPED 30(b)(6) DEPOSITION OF
UNITED STATES CENSUS BUREAU
through the testimony of
Kendall Oliphant
September 27, 2023
9:39 a.m.

Reported by:  Bonnie L. Russo
Job No. 6097939

HIGHLY CONFIDENTIAL

Page 2

1  Videotaped 30(b)(6) Deposition of
2  United States Census Bureau through the
3  testimony of Kendall Oliphant held at:
4
5
6  Paul, Weiss, Rifkind, Wharton & Garrison, LLP
7  2001 K Street, N.W.
8  Washington, D.C.
9
10
11
12
13
14
15
16
17
18  Pursuant to Notice, when were present on behalf
19  of the respective parties:
20
21
22

Page 3

1  APPEARANCES:
2
3  On behalf of the Plaintiffs:
4    VICTOR LIU, ESQUIRE
5    KATHERINE CLEMONS, ESQUIRE
6    ALVIN CHU, ESQUIRE
7    UNITED STATES DEPARTMENT OF JUSTICE
8    450 Fifth Street, N.W.
9    Washington, D.C. 20530
10   victor.liu@usdoj.gov
11   katherine.clemons@usdoj.gov
12   alvin.chu@usdoj.gov
13
14  On behalf of the Defendant:
15    MARTHA L. GOODMAN, ESQUIRE
16    ANNELISE CORRIVEAU, ESQUIRE
17    PAUL, WEISS, RIFKIND,
18    WHARTON & GARRISON, LLP
19    2001 K Street, N.W.
20    Washington, D.C. 20006
21    mgoodman@paulweiss.com
22    acorriveau@paulweiss.com

Page 4

1  APPEARANCES (CONTINUED):
2
3  Also Present:
4    Michael A. Cannon, United States Department of
5    Commerce, Chief Counsel for Economic Affairs
6    Sam Whitthorne, DOJ, Paralegal
7    Claire Cushman, DOJ, Paralegal
8    Orson Braithwaite, Videographer
9
10 Also Present Via Remotely:
11   Rachel Zwolinski, United States Department of
12   Justice

Page 5

1  I N D E X
2  EXAMINATION OF KENDALL OLIPHANT        PAGE
3  BY MS. GOODMAN            10
4  BY MR. LIU                109
5
6
7
8  EXHIBITS
9
10 Exhibit 145   Amendment of            22
              Solicitation/Modification
11            of Contract
              11-21-18
12            CENSUS-ADS-0000073778-786
13 Exhibit 146   E-Mail Chain            28
              dated 6-25-20
14            Attachment
              CENSUS-ADS-0000668928-941
15
   Exhibit 147   E-Mail Chain            36
16            dated 4-12-18
              Attachment
17            CENSUS-ADS-0000475977-018
18 Exhibit 148   2020 Census Paid        47
              Media Campaign
19            Fact Sheet
              CENSUS-ADS-0000052132-134
20
   Exhibit 149   Y&R Invoices            63
21            CENSUS-ADS-0000347549-692
22 Exhibit 150   Y&R Purchase Orders     78
              CENSUS-ADS-0000350928-963

2 (Pages 2 - 5)

Veritext Legal Solutions
800-567-8658                                    973-410-4098

HIGHLY CONFIDENTIAL

Page 54

1  THE WITNESS: There were requests
2  for additional funding as additional work was
3  added to the order.
4      BY MS. GOODMAN:
5   Q.  And were those requests for
6  additional funding approved via e-mail from Ms.
7  Vélez?
8      MR. LIU: Objection. Form.
9      THE WITNESS: The e-mail may not
10 have necessarily said approved. It would have
11 been a template request for additional funds
12 related to a new request or a new need outside
13 of the funding currently available.
14     BY MS. GOODMAN:
15  Q.  And Ms. Vélez made those requests
16 for additional funding to whom?
17     MR. LIU: Objection. Form and
18 foundation.
19     THE WITNESS: They would have been
20 made to the decennial division of the decennial
21 budget office.
22     BY MS. GOODMAN:

Page 55

1   Q.  Are they made to the contracting
2  officer under the master contract?
3   A.  The contracting officer -- so when
4  additional requests for funding -- once the
5  funding has been approved, then a requisition
6  is then submitted to the acquisitions division,
7  along with the request to modify the contract
8  to add additional work.
9       Once that is done, then the
10 contracting officer reviews all of that, looks
11 at a price in a technical proposal as provided
12 by Y&R, and then a new modification is drafted
13 and signed by acquisitions, the contracting
14 officer and a representative from Y&R.
15  Q.  The process which you just described
16 resulting in contract modifications for
17 Order 8, did that process happen each time that
18 the Order 8 -- the folks responsible for
19 Order 8 on a day-to-day basis requested
20 additional funds?
21     MR. LIU: Objection. Form.
22     THE WITNESS: That process --

Page 56

1  anytime additional funds were added, yes.
2      BY MS. GOODMAN:
3   Q.  Okay. And that differed from how
4  you dealt with it on Order 15 with these media
5  authorization forms; is that accurate?
6      MR. LIU: Objection. Form.
7      THE WITNESS: Two different things.
8  Media authorization forms can only be signed if
9  the funds are already on the order. If
10 additional funds were requested to be added to
11 the order, we would follow the process
12 previously described.
13     BY MS. GOODMAN:
14  Q.  Okay. And so with respect to
15 Order 8, what way was moneys -- strike that.
16     For when there are funds already on
17 Order 8, how, if at all, was the purchase of
18 media authorized?
19     MR. LIU: Objection. Form.
20     THE WITNESS: You'd have to look at
21 where the funds were. There are contract line
22 item numbers or CLINs, C-L-I-Ns, in the chart

Page 57

1  in every order -- in every modification on
2  Order 8. You have funds that are -- I have to
3  look at a model for Order 8, but you have funds
4  that are specific to labor, you have funds that
5  are specific to the web page. You have funds
6  that are -- development of creative materials
7  so Order 8 was -- they had a lot of optional
8  CLINs listed in the original contract for
9  Order 8.
10     Because at the time, the order was
11 initiated, originally signed, there were not
12 funds allocated for every CLIN which is why you
13 have modifications to enact a CLIN or to add
14 money to an existing CLIN.
15     BY MS. GOODMAN:
16  Q.  So for Order 8, once there was a
17 CLIN line item for the purchase of national
18 paid media, is that CLIN line item the thing
19 that provides the contractor with authority to
20 go out and purchase paid media for Order 8?
21     MR. LIU: Objection. Form.
22 Foundation.

15 (Pages 54 - 57)

Page 58

1   THE WITNESS: With Order 8, it would
2   have to be a signed modification based upon the
3   request to add funds for a specific activity
4   within that CLIN.
5       BY MS. GOODMAN:
6   Q.   And so once there is a signed
7   modification, I should look at the signed
8   modifications to figure out what authority was
9   given to the contractor to go out and purchase
10  media; is that accurate?
11      MR. LIU: Objection. Form and
12  foundation.
13      THE WITNESS: It would -- yes, to
14  some extent, yes.
15      BY MS. GOODMAN:
16  Q.   Okay. I am handing you what's been
17  previously marked as Exhibit 27,
18  CENSUS-ADS-710075.
19      This is an e-mail thread between
20  yourself and the Office of Inspector General at
21  the Department of Commerce, correct?
22  A.   Correct.

Page 59

1   Q.   And you attach in this e-mail, all
2   -- screen shots of all of the media
3   authorization forms that were signed in the
4   course of Order 15, correct?
5   A.   Correct.
6   Q.   And if you look at page ending in
7   76, under Item 2 at the top of the page, you
8   see where Ms. -- well, somebody from the OIG's
9   office poses the question to you in No. 2,
10  beginning in the pizza box MAF.
11      Do you see that?
12  A.   Yes.
13  Q.   And you write in response with the
14  bold text, just under that question; is that
15  accurate?
16  A.   That's accurate.
17  Q.   Okay. And you reported accurately
18  to the Office of Inspector General that: "The
19  MAF only provides authorization to spend the
20  total amount listed on the document and even
21  though there is funding listed for each media
22  type, the agency had authority to move that

Page 60

1   money between media types if opportunities
2   became available as long as the total spend did
3   not exceed the amount authorized on the actual
4   MAF."
5       That was an accurate statement,
6   correct?
7       MR. LIU: Objection. Form.
8       THE WITNESS: It's an accurate
9   statement but it's a little out of context.
10      So they did not have the authority
11  to just move money as they felt they needed --
12  they wanted to move money. They had to consult
13  with the census bureau, if they decided that it
14  was within the MAF, within a specific media
15  category, either they were unable to spend the
16  allocated amount or they felt a better
17  opportunity was -- was to reach that particular
18  audience was available.
19      Then they would discuss it with the
20  census bureau. At which point, the census
21  bureau would approve or disapprove and as long
22  as it was within the amount -- it did not

Page 61

1   exceed the amount of the MAF, then they could
2   go ahead and proceed with that purchase without
3   any further documentation.
4       BY MS. GOODMAN:
5   Q.   But you didn't write all of that in
6   your e-mail to the OIG, correct?
7   A.   No, because we spoke almost every
8   day.
9   Q.   And media authorization forms
10  provide an authorization to expend money in a
11  specific media category, correct?
12      MR. LIU: Objection. Form.
13      THE WITNESS: Media authorization
14  forms list a multitude of media categories for
15  a particular audience, and it -- based upon the
16  media plan that was approved, it provides the
17  authority to spend up to that amount for that
18  particular vendor.
19      BY MS. GOODMAN:
20  Q.   When you say "that particular
21  vendor," you mean that particular subcontractor
22  going out and purchasing media, correct?

HIGHLY CONFIDENTIAL

Page 62

1   A.   Yes.
2   Q.   And the media authorization forms do
3   not provide an authorization to spend money
4   with any specific vendor, correct?
5       MR. LIU:  Objection.  Form.
6       THE WITNESS:  Correct.
7       BY MS. GOODMAN:
8   Q.   And the census bureau does not
9   direct the subcontractors to use a specific
10  vendor, correct?
11      MR. LIU:  Objection.  Form.
12  Foundation.
13      THE WITNESS:  Correct.
14      BY MS. GOODMAN:
15  Q.   Okay.  And the census bureau does
16  not tie the subcontractors' hands specifically
17  by requiring the subcontractor to use Google,
18  correct?
19      MR. LIU:  Objection.  Form and
20  foundation.
21      THE WITNESS:  Correct.
22      MS. GOODMAN:  Let's take a break.

Page 63

1   That's okay?
2       THE VIDEOGRAPHER:  The time is
3   a.m.  This ends Unit 1.  We are off the record.
4       (A short recess was taken.)
5       THE VIDEOGRAPHER:  The time is
6   a.m.  This begins Unit 2.  We are on the
7   record.
8       BY MS. GOODMAN:
9   Q.   Ms. Oliphant, I am handing you
10  Exhibit 149, CENSUS-ADS-347549.
11      (Deposition Exhibit 149 was marked
12  for identification.)
13      BY MS. GOODMAN:
14  Q.   And this is an invoice for the
15  purchase of paid media for Order 15, correct?
16  A.   Correct.
17  Q.   Okay.  And you certified that to the
18  best of your knowledge and belief, the services
19  supplied shown on the invoice have been
20  performed/furnished and are accepted, correct?
21  A.   Correct.
22  Q.   And let's look at page ending in

Page 64

1   347583.
2       Well, before we get there, the
3   invoice is from Y&R to the bureau of census,
4   correct?
5   A.   Correct.
6   Q.   And it includes a variety of
7   invoices within it from WaveMaker to Y&R,
8   correct?
9       MR. LIU:  Objection to form.
10      THE WITNESS:  WaveMaker Puerto Rico,
11  yes.
12      BY MS. GOODMAN:
13  Q.   Okay.  Now looking at page ending in
14  583, this is a purchase order from Y&R to
15  WaveMaker Puerto Rico dated December 6 of 2019,
16  correct?
17  A.   Correct.
18      MR. LIU:  Objection.  Form.
19      THE WITNESS:  Correct.
20      BY MS. GOODMAN:
21  Q.   And this purchase order is for
22  2 point -- $2,278,130, correct?

Page 65

1   A.   Correct.
2   Q.   And if you turn to -- ending in 585,
3   just one other page, this includes Y&R's
4   additional contract terms for this purchase
5   order that it issued to WaveMaker Puerto Rico,
6   correct?
7       MR. LIU:  Objection.  Form.
8   Foundation.
9       THE WITNESS:  That's what it appears
10  to contain.
11      BY MS. GOODMAN:
12  Q.   And if you look in the column on the
13  left-hand side under:  "Assignment confirmation
14  and license," do you see where I am?
15  A.   Yes.
16  Q.   And it says:  "Y&R New York is
17  acting as agent for the above-named client."
18  The client -- client in quotations.
19      Then it says:  "You are acting as an
20  independent contractor and the works you submit
21  are specifically commissioned for, but not
22  limited to" including -- "inclusion in

17 (Pages 62 - 65)

Page 66

1  advertising and/or commercial materials."
2      Did I read that correctly?
3   A.  Correct.
4   Q.  And this contract term says that:
5  "WaveMaker is an independent contractor."
6      Is that how you -- how the census
7  bureau understands this term?
8      MR. LIU: Objection. Form.
9  Foundation. Calls for a legal conclusion.
10     THE WITNESS: The census bureau sees
11 WaveMaker and WaveMaker Puerto Rico as
12 subcontractors to Y&R. We have no privy into
13 their contracts with their subcontractors, and
14 if Y&R calls them independent contractors,
15 that's between Y&R and that particular vendor.
16     BY MS. GOODMAN:
17  Q.  And this is -- you understand that
18 this purchase order is a contract between Y&R
19 and WaveMaker Puerto Rico, correct?
20     MR. LIU: Objection. Form and
21 foundation.
22     THE WITNESS: Yes.

Page 67

1      BY MS. GOODMAN:
2   Q.  Okay. And if you look at the next
3  page ending in 586, this purchase order from
4  Y&R to WaveMaker Puerto Rico authorizes or asks
5  WaveMaker to purchase the categories of
6  advertising listed in Table 1 up to the amounts
7  listed in the second column; is that accurate?
8      MR. LIU: Objection. Form.
9      THE WITNESS: That is accurate.
10     BY MS. GOODMAN:
11  Q.  And then if we go to the next page
12 ending in 587, you see that this is an invoice
13 from WaveMaker Puerto Rico to Y&R, correct?
14  A.  Correct.
15  Q.  And this is an invoice for paid
16 search where you see campaign name, correct?
17  A.  Correct.
18  Q.  And the invoice total, the gross
19 total is $828.55, correct?
20  A.  Correct.
21  Q.  And then there is a "less agency
22 commission."

Page 68

1      What does that mean?
2      MR. LIU: Objection. Form.
3  Foundation.
4      THE WITNESS: So media purchases
5  were -- there was no markup on media. That
6  meant the agency could not earn any commission
7  and they would have to take out any commission
8  -- they could not bill the government for any
9  commission they earned or that was included,
10 period.
11     BY MS. GOODMAN:
12  Q.  And -- so does this invoice from
13 WaveMaker to Y&R for paid search in the amount
14 of -- in the gross amount of $828.55, does that
15 gross amount include a commission that Google
16 invoiced to WaveMaker?
17     MR. LIU: Objection. Form and
18 foundation.
19     THE WITNESS: It would be my
20 assumption, but I don't know. I do know that
21 the agency commission was removed and when you
22 go back to the page ending in 551 and you look

Page 69

1  at that particular invoice number, the amount
2  invoiced to the census bureau was the subtotal
3  of $704.27.
4      BY MS. GOODMAN:
5   Q.  And you are looking at the invoice
6  date 8-20-2020 for 704.27 on page ending 551?
7   A.  Yes, I am.
8   Q.  Okay. And that invoice date is the
9  date that WaveMaker invoiced Y&R, correct?
10  A.  That is the date that matches the --
11 the date on the invoice that we were discussing
12 on page number ending in 587.
13  Q.  And that's the date of the invoice
14 from WaveMaker to Y&R?
15  A.  Yes.
16  Q.  And the issue date from Google
17 vendor invoice is April 1 of 2020, correct?
18     MR. LIU: Objection. Form.
19 Foundation.
20     THE WITNESS: That is what it
21 appears, yes.
22     BY MS. GOODMAN:

Page 70

1  Q. And did you review the invoice --
2  strike that.
3     Did the census bureau review the
4  invoice from Google to WaveMaker in the amount
5  of $828.55?
6     MR. LIU: Objection. Form.
7     THE WITNESS: Yes, we did.
8     BY MS. GOODMAN:
9  Q. And was that part of the backup that
10 was posted on Y&R's Egnyte site?
11 A. Yes.
12 Q. Does the census bureau have copies
13 of the media -- of the media vendors invoices
14 that were posted by Y&R on their Egnyte site?
15    MR. LIU: Objection. Form.
16    THE WITNESS: No.
17    BY MS. GOODMAN:
18 Q. Why not?
19 A. Voluminous. It was a lot of backup.
20 We spoke with our acquisitions division to ask
21 if we needed to keep that, if we needed to
22 download it to our system and they said no.

Page 71

1  Q. So sitting here today, three years
2  after the 2020 census, do you have any way of
3  determining -- does the census bureau have any
4  way of determining what was invoiced, at least
5  on this invoice here, page ending in 587, from
6  Google to WaveMaker?
7     MR. LIU: Objection. Form.
8  Foundation.
9     THE WITNESS: No, we do not, but the
10 simple fact that I signed the invoice is a
11 clear indication that the backup documentation
12 was sufficient to justify the invoice.
13    BY MS. GOODMAN:
14 Q. And does the census bureau have a
15 way to determine how many clicks or impressions
16 were obtained through this $828.55 invoice
17 amount?
18    MR. LIU: Objection. Form.
19 Foundation.
20    THE WITNESS: Not using their own
21 documentation, no.
22    BY MS. GOODMAN:

Page 72

1  Q. Are you aware of any -- is the
2  census bureau aware of any way it can determine
3  how many clicks or impressions were obtained
4  through this particular invoice that we are
5  looking at on page ending 587, outside of the
6  census bureau's own documentation?
7     MR. LIU: Objection. Form.
8  Foundation.
9     THE WITNESS: We would have to go
10 back to WaveMaker and request that information.
11 That would be the only place -- it would be --
12 well, Y&R, it would be on their site.
13    BY MS. GOODMAN:
14 Q. To your -- has the census bureau
15 gone back and done, made that request of Y&R
16 for purposes of this lawsuit?
17    MR. LIU: Objection. Privileged.
18 Attorney-client communications and attorney
19 work product. To the extent that your answer
20 would not rely on -- I would not divulge
21 attorney-client communications or directions
22 from attorneys, you may answer, but if it would

Page 73

1  divulge those communications or directions, I
2  would instruct you not to answer.
3     THE WITNESS: I have no answer. I
4  am -- I am unaware.
5     BY MS. GOODMAN:
6  Q. You don't know if the census bureau
7  has gone to Y&R to request all the backup
8  documentation.
9     Am I understanding your testimony
10 correctly?
11    MR. LIU: Objection. Form.
12    THE WITNESS: The census bureau has
13 not specifically requested backup documentation
14 from Y&R, no.
15    BY MS. GOODMAN:
16 Q. Okay. Let's turn to the page ending
17 in 632.
18    This is an invoice from WaveMaker to
19 Y&R for a Google ad tech fee, correct?
20 A. Correct.
21 Q. What is a Google ad tech fee?
22    MR. LIU: Objection. Form.

HIGHLY CONFIDENTIAL

Page 110

1  they used anything other than that, it would be
2  in violation of that particular contract.
3          MR. LIU:  Thank you.  No further
4  questions.
5          MS. GOODMAN:  Off the record.
6          THE VIDEOGRAPHER:  The time is
7  a.m.  We are off the record.
8          (Pause.)
9          THE VIDEOGRAPHER:  The time is
10 a.m.  We're on the record.
11         MS. GOODMAN:  I think we were on the
12 record for 1 hour, 59 minutes, yes?
13         THE VIDEOGRAPHER:  Yes.
14         MS. GOODMAN:  Okay.  Off the record.
15         THE VIDEOGRAPHER:  The time is
16 a.m.  We're off the record.
17         (Whereupon, the proceeding was
18 concluded at 11:56 a.m.)
19
20
21
22

Page 111

1          CERTIFICATE OF NOTARY PUBLIC
2      I, Bonnie L. Russo, the officer before
3  whom the foregoing deposition was taken, do
4  hereby certify that the witness whose testimony
5  appears in the foregoing deposition was duly
6  sworn by me; that the testimony of said witness
7  was taken by me in shorthand and thereafter
8  reduced to computerized transcription under my
9  direction; that said deposition is a true
10 record of the testimony given by said witness;
11 that I am neither counsel for, related to, nor
12 employed by any of the parties to the action in
13 which this deposition was taken; and further,
14 that I am not a relative or employee of any
15 attorney or counsel employed by the parties
16 hereto, nor financially or otherwise interested
17 in the outcome of the action.
18
19
            *Bonnie L. Russo* (signature)
20     Notary Public in and for
21        the District of Columbia
22 My Commission expires:  August 14, 2025

Page 112

1  MARTHA L. GOODMAN, ESQUIRE
2  mgoodman@paulweiss.com
3                  September 28, 2023
4  RE:    United States, Et Al v. Google, LLC
5     9/27/2023, Kendall Oliphant  (#6097939)
6     The above-referenced transcript is available for
7  review.
8     Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12     The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 erratas-cs@veritext.com.
16
17  Return completed errata within 30 days from
18 receipt of testimony.
19    If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
21
22           Yours,
23           Veritext Legal Solutions
24
25

Page 113

1  United States, Et Al v. Google, LLC
2  Kendall Oliphant  (#6097939)
3          E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10 PAGE_____ LINE_____ CHANGE_____
11 _____
12 REASON_____
13 PAGE_____ LINE_____ CHANGE_____
14 _____
15 REASON_____
16 PAGE_____ LINE_____ CHANGE_____
17 _____
18 REASON_____
19 PAGE_____ LINE_____ CHANGE_____
20 _____
21 REASON_____
22
23 _____  _____
24 Kendall Oliphant                Date
25

29 (Pages 110 - 113)