# EXHIBIT 80

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION
-------------------------------------------X
UNITED STATES, et al.,

                                PLAINTIFF,

      -against-      Case No.:
                     1:23-CV-00108-LMB-JFA

GOOGLE, LLC,

                              DEFENDANT.
-------------------------------------------X

                 DATE: September 20, 2023
                 TIME: 9:30 A.M.

    VIDEOTAPED DEPOSITION of LARA STOTT,
taken by the Defendant, pursuant to a Court
Order, held via videoconference, before
Rivka Trop, a Notary Public of the State of
New York.

Job No. CS6097892

Page 2

APPEARANCES:

UNITED STATES DEPARTMENT OF JUSTICE
  Attorneys for the Plaintiff
  UNITED STATES, ET AL
  450 Fifth Street, N.W.
  Washington, D.C. 20530
  BY: KATHERINE CLEMONS, ESQ.
     -and-
     RACHEL ZWOLINSKI, ESQ.
     -and-
     ALVIN CHU, ESQ.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
  Attorneys for the Defendant
  GOOGLE, LLC
  2001 K Street, N.W.
  Washington, D.C. 20006
  BY: HEATHER MILLIGAN, ESQ.
     -and-
     MARTHA L. GOODMAN, ESQ.

ALSO PRESENT:
  ORSON BRAITHWAITE, Videographer

  CAPTAIN MICHAEL ELLIS
       *   *   *

Page 3

L. STOTT

THE VIDEOGRAPHER:  Good morning we are going on the record at 9:39 a.m., on September 20, 2023.  Please note that the microphones are sensitive and may pick up whispering, private conversations, please mute your phones at this time.  Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit 1 of the deposition Ms. Lara Stott in the matter of United States et al. versus Google, LLC, founded in the United States District Court, Eastern District of Virginia, Alexandria Division, Case No. 1:23-CV-00108-LMB-JFA.

My name is Orson Braithwaite from Veritext Legal Solutions, and I am the videographer.

The court reporter is Rivka Trop from the firm Veritext Legal Solutions.

Counsel will now state their appearances and affiliated for the

Page 4

L. STOTT

record.

MS. MILLIGAN:  Heather Milligan from Paul, Weiss, Rifkind, Wharton & Garrison on behalf of Google.  With me is my colleague, Martha Goodman.

MS. CLEMONS:  This is Katherine Clemons, with the Department of Justice, on behalf of the United States and the witness.

MS. ZWOLINSKI:  Rachel Zwolinski, on behalf of the United States.

MR. CHU:  Alvin Chu, on behalf of the United States.

MR. ELLIS: Captain Michael Ellis, Air Force Recruiting Service.

THE VIDEOGRAPHER:  Will the court reporter, please, swear in the witness.

L A R A   S T O T T, called as a witness, having been first duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY
MS. MILLIGAN:

Q. Please state your name for the

Page 5

L. STOTT

record.

A. Lara Stott.

Q. Good morning, Ms. Stott.  We met the other day.

Just for the record, my name is Heather Milligan, and I represent Google.  You are the senior strategic adviser for marketing to the commander at Air Force Recruiting Service, is that right?

A. Yes.

Q. Do you understand that you are testifying today as a corporate representative of the Air Force?

A. I do.

Q. In preparing for your testimony today, did you review the overarching contract between the Air Force and GSD&M?

A. Yes, I did.

MS. MILLIGAN:  Can we go off the record for just a minute.

THE VIDEOGRAPHER:  The time is 9:41 a.m.  We are off the record.

(Whereupon, an off-the-record discussion was held.)

| | Page 38 | | Page 40 |
|---|---|---|---|
| | L. STOTT | | L. STOTT |
| 1 | | 1 | |
| 2 | MS. CLEMONS:  Objection to form. | 2 | representative within RSM, Recruitment |
| 3 | A.  AIRS are saved and filed by each | 3 | Service Marketing, and he directly reports |
| 4 | one of the CORs.  They all have different | 4 | to Maj. Lane. |
| 5 | folders that they save those for each | 5 | Q.  Can you turn to the page ending in |
| 6 | contract. | 6 | 771759 underscore 0010.  Actually, if you |
| 7 | Q.  Are those folders in a centralized | 7 | look at the page right before that ending in |
| 8 | location or in the CORs own files? | 8 | 0009, do you see at the last header on that |
| 9 | A.  No, it is on the shared drive, | 9 | page is Google Programmatic and all right, |
| 10 | centralized location. | 10 | and then below that there are line items |
| 11 | Q.  How are they numbered? | 11 | from 2022 going through part of 2023? |
| 12 | MS. CLEMONS:  Objection to form. | 12 | A.  Yes, we are going onto the next |
| 13 | A.  I would have to reference the | 13 | page? |
| 14 | actual AIR procedures, which I don't have in | 14 | Q.  Yes. |
| 15 | front of me right now.  But there is an | 15 | And so when Air Force purchases |
| 16 | actual procedure of how they are supposed to | 16 | Google programmatic audio, what is it |
| 17 | number the AIR. | 17 | purchasing? |
| 18 | Q.  Is Air Force seeking to recover | 18 | MS. CLEMONS:  Objection to form. |
| 19 | any amount in this lawsuit for the Google | 19 | A.  I would actually need to see the |
| 20 | programmatic display expenses reflected on | 20 | corresponding media plan that goes with this |
| 21 | the invoice? | 21 | to answer that question. |
| 22 | MS. CLEMONS:  Objection to form. | 22 | Q.  Do you know what Air Force is |
| 23 | A.  Again, the recruitment service | 23 | purchasing when it purchases Google |
| 24 | marketing team has not been involved in | 24 | programmatic display? |
| 25 | determining what damages are being sought. | 25 | A.  Again, I would want to actually |

| | Page 39 | | Page 41 |
|---|---|---|---|
| | L. STOTT | | L. STOTT |
| 1 | | 1 | |
| 2 | Q.  But you understand that you are | 2 | see the media plan that this goes with in |
| 3 | here testifying not as a representative of | 3 | order to be able to give you a correct |
| 4 | the Air Force Recruiting Service, but | 4 | answer there or a complete answer. |
| 5 | actually as a representative of the Air | 5 | Q.  Do you know whether amounts |
| 6 | Force? | 6 | credited for audio programmatic are |
| 7 | A.  I do. | 7 | maintained separately from credits for |
| 8 | Q.  So is anyone at the Air Force | 8 | display programmatic? |
| 9 | involved in determining the damages that Air | 9 | MS. CLEMONS:  Objection to form, |
| 10 | Force is seeking? | 10 | foundation. |
| 11 | A.  I don't know. | 11 | A.  I am not sure I understand what |
| 12 | MS. MILLIGAN:  Marking as | 12 | you mean.  Can you rephrase that. |
| 13 | Exhibit 130, USAF-ADS-000077-1759. | 13 | Q.  Let me ask a different question -- |
| 14 | (Whereupon, a document bearing | 14 | strike that. |
| 15 | Bates  USAF-ADS-000077-1759 was marked | 15 | Is Air Force seeking to recover |
| 16 | Stott Exhibit 130 for identification as | 16 | damages for expenses paid to GSD&M for |
| 17 | of this date.) | 17 | Google programmatic audio? |
| 18 | | 18 | MS. CLEMONS:  Objection to form. |
| 19 | Q.  Ms. Stott, do you recognize this | 19 | A.  Again, we have not been involved |
| 20 | as an invoice sent from GSD&M to Sgt. | 20 | in the determination of what is being asked |
| 21 | Charvat? | 21 | for, for damages or damages sought. |
| 22 | A.  Yes. | 22 | Q.  Does Air Force have an amount in |
| 23 | Q.  Who does Sgt. Charvat work for? | 23 | mind that it believes would compensate Air |
| 24 | MS. CLEMONS:  Objection to form. | 24 | Force for any harm suffered by Google |
| 25 | A.  He is a contracting officer | 25 | relating to the allegations in this lawsuit? |

11 (Pages 38 - 41)

Page 42

L. STOTT

1  
2      MS. CLEMONS: Objection to form.
3      Is this related to a topic that is
4  one of the agreed upon topics for this
5  deposition?
6      MS. MILLIGAN: Topic 30.
7      MS. CLEMONS: I believe the United
8  States objected to that topic as
9  calling for expert discovery and expert
10 opinions, and the agreement was that
11 these depositions were subject to
12 counsel's objections.
13     MS. MILLIGAN: Can we go off the
14 record for a minute, please.
15     THE VIDEOGRAPHER: The time is
16 10:43 a.m. and we are off the record.
17     (Whereupon, an off-the-record
18 discussion was held.)
19
20     THE VIDEOGRAPHER: The time is
21 11:17 a.m. This begins unit number 2,
22 we are on the record.
23     Q. Does Air Force have an amount of
24 money in mind that it believes would
25 compensate Air Force for any harm suffered

Page 43

L. STOTT

1  
2  by Air Force from Google?
3      MS. CLEMONS: Objection. I think
4  this is outside of the scope of the
5  agreed upon topics of this deposition.
6  If you have personal knowledge, you
7  could answer.
8      A. I don't have any knowledge.
9      Q. Could you pull out Exhibit 129.
10 It is the first invoice we looked at.
11     Does Air Force receive the
12 underlying invoices from Google for the
13 amounts reflected in this invoice?
14     MS. CLEMONS: Objection to form.
15     A. Do you mean in addition to this
16 piece of paper do we get backup?
17     Q. Well, that wasn't my question
18 exactly, but does the Air Force get backup
19 from Google for the amounts reflected in
20 this invoice or Google purchases?
21     MS. CLEMONS: Objection to form.
22     A. Yes, the invoices always include
23 the actual backup that goes with each one of
24 the charges.
25     Q. And in that backup are the

Page 44

L. STOTT

1  
2  invoices from Google included?
3      MS. CLEMONS: Objection to form.
4      A. If there are Google charges in an
5  invoice, they would be provided in the
6  backup to the invoice, yes.
7      Q. And does that backup include
8  the -- so for instance, this invoice that we
9  are looking at here, Exhibit 129, has
10 purchases that reflects Google's purchases?
11     A. Yes, it is not included in the
12 exhibit that you gave me, but yes, there
13 would be backup that would show those
14 purchases.
15     Q. And in that backup, are there
16 invoices from Google?
17     MS. CLEMONS: Objection to form.
18     A. Since I don't have the backup in
19 front of me, I can't verify that it is here.
20 But yes, when GSD&M submits an invoice, they
21 submit backup all of the charges that are in
22 the invoice.
23     Q. In that backup, do they include
24 the invoices from vendors reflected on the
25 invoice that GSD&M sends to you?

Page 45

L. STOTT

1  
2      A. Yes, they would be required to
3  provide backup for all charges that are in
4  an invoice.
5      Q. Does the Air Force review the
6  amount that GSD&M pays to Google?
7      MS. CLEMONS: Objection to form.
8      A. The contracting officer
9  representative is required to review the
10 invoice in total, including all of the
11 backup, and they review that against the
12 approved media plan, the approved AIR and
13 then whatever the monthly status report to
14 MSR to ensure that the government has
15 received what it has paid for.
16     Q. So if I went and looked at the
17 backup that you are describing, I would be
18 able to determine whether or not GSD&M paid
19 to Google the gross amount, the net amount
20 or some other number for Google programmatic
21 display?
22     MS. CLEMONS: Objection to form.
23     A. The backup would show where all of
24 these numbers came from, yes.
25     (Whereupon, a document Bates No.

12 (Pages 42 - 45)

Page 46

```
 1      L. STOTT
 2   USAF-ADS-0000013224 was marked Stotto
 3   Exhibit 131 for identification as of
 4   this date.)
 5       Q.  Ms. Stott, I am handing you what
 6   has been marked as Exhibit 131 bearing Bates
 7   USAF-ADS-0000013224.
 8       Ms. Stott, what does AIR stand
 9   for?
10       A.  It is the advertising instruction
11   record.
12       Q.  Do you recognize the document that
13   I placed in front of you?
14       A.  Yes, this is an April 2022 version
15   of our AIR procedures that we use within
16   Recruiting Service Marketing.
17       Q.  And this says on the cover page,
18   it says that this is version 2?
19       A.  It does.  And it is from, again,
20   April of 2022.
21       Q.  Do you know whether there are
22   later versions of this document?
23       A.  Yes, this document gets updated
24   probably two to three times a year.
25       Q.  So if I wanted to look for the AIR
```

Page 47

```
 1      L. STOTT
 2   instruction record procedures that were in
 3   place for 2019 and 2020 and the first part
 4   of 2021, where would I find those?
 5       A.  If they are still in existence,
 6   they would be in the same shared drive as
 7   this version is.  The contracting officer
 8   who oversees the AIR procedures, the current
 9   one, came in mid 2021, I think maybe late
10   spring, early summer.  So she has only been
11   responsible for the ones since she came on
12   board.
13       Q.  Do you have reason to believe that
14   prior versions are no longer in existence?
15       A.  No, I have no reason to believe
16   that.
17       MS. MILLIGAN:  Ms. Stott, I am
18   marking for the record, Exhibit 133,
19   bearing Bates USAF-ADS-000084-8189.
20   And it has an attachment which we have
21   labeled Exhibit 133 B.  And that ends
22   in Bates 848193.  But I am just going
23   to ask you about the A portion.
24       (Whereupon, a document bearing
25   Bates  USAF-ADS-000084-8189 was marked
```

Page 48

```
 1      L. STOTT
 2   Stott Exhibit 133 for identification as
 3   of this date.)
 4       Q.  And my question is going to be
 5   about the email from Nora Rudyk, about
 6   two-thirds of the way down on page 848190
 7   that begins, ALCON, below is the official
 8   request for the upcoming FY '22, et cetera,
 9   et cetera?
10       A.  I am going to need a minute.
11       Okay.
12       Q.  Ms. Stott, is the email from Norma
13   Rudyk that I mentioned, which begins about
14   two-thirds of the way down on page ending
15   848190, an example of an AIR?
16       A.  Yes, it is.
17       Q.  If you turn to the following page
18   with ends in 8191, you could see there is a
19   section at the top, purpose description, it
20   says, "This AIR is for the TFFY '22 Engage
21   and Recruit ANG media plan attached.  There
22   are sufficient funds in this task order as
23   identified in the proposal under TF Inspired
24   media."  In that sentence -- strike that.
25       Is that sentence saying that the
```

Page 49

```
 1      L. STOTT
 2   AIR is for the total force fiscal year 2022
 3   Engage and Recruit Air Force National Guard
 4   media plan?
 5       MS. CLEMONS:  Objection to form.
 6       A.  Yes, it is, it is referencing the
 7   attachment there.
 8       Q.  And then below it says, "Breakdown
 9   per tactic is as follows," do you see that?
10       A.  I do.
11       Q.  And there is a line for Meta, a
12   line for Indeed, a line for Google and a
13   line for Ad Serving, do you see that?
14       A.  I do.
15       Q.  Which Google platforms are
16   represented in the $1,490,000 on the third
17   line?
18       MS. CLEMONS:  Objection to form,
19   foundation.
20       A.  I am going to need a minute to
21   look through the media plan for that.
22       So this should be referencing, it
23   is slide 40 in the accompanying deck, but
24   the number on the bottom ends in 848232.
25       Are you there?
```

Page 50

```
 1        L. STOTT
 2    Q.  Yes.
 3    A.  So they are asking for partial
 4  approval of this media plan here that
 5  includes, I don't know the breakout between
 6  the DV360 and the Google search.  But seeing
 7  as how she is explaining in the email that
 8  they didn't want search to go dark.
 9        It says at the bottom of the page
10  ending in 848190, "Please note that current
11  media plan under TO51 ends on 31 July, and
12  in order to not go dark and continue the
13  media, we will need approval on the current
14  media plan no later than 28 July.  There are
15  sufficient funds in this task order as
16  identified in the proposal under Total Force
17  Engage and Recruit Media."
18        So they are asking for funding not
19  to go dark.  And it would be between the
20  DV360 and the Google paid search at the
21  bottom.
22    Q.  And at the bottom, you are looking
23  at page 848232?
24    A.  Yes.
25    Q.  So the total for those two line
```

Page 51

```
 1        L. STOTT
 2  items would be $4,342,621; is that right?
 3    A.  Correct.
 4    Q.  And so it is the AIR requesting --
 5  strike that.
 6        Is the breakdown per tactic in the
 7  AIR for a specific time period?
 8    A.  It doesn't say.
 9    Q.  Do you know why the amounts don't
10  match?
11        MS. CLEMONS:  Objection to form.
12    A.  This would be the total for the
13  media plan and they are asking for partial
14  funding at this point.
15    Q.  For an unspecified time period?
16    A.  I don't see the time period listed
17  in the AIR.  Let's see, additional comments
18  requested for PCD to run through July 2023
19  and outside the POP in order for media plan
20  to support the recruiting needs, GSD&M is
21  requesting approval no later than 28 July to
22  allow time.
23        I am just reading to see if there
24  is any other reference to the dates.
25        No, the only reference to date I
```

Page 52

```
 1        L. STOTT
 2  see is when they need the approval by.
 3    Q.  And the breakdown per tactic in
 4  the AIR for line item Google does not break
 5  the $1,000,490 between Google platforms;
 6  correct?
 7    A.  It doesn't in this AIR, no.
 8    Q.  And it does not identify the
 9  breakdown per impression; correct?
10        MS. CLEMONS:  Objection to form.
11    A.  No, it does not.
12    Q.  And turning to the page where
13  Ms. Rudyk's email begins?
14    A.  8190?
15    Q.  8190, thank you, above that email,
16  Sgt. Steven China approves this AIR;
17  correct?
18    A.  The way that the AIR process works
19  is that the COR, which in this case is Sgt.
20  China, recommends to approval to the primary
21  COR, which at this point in time of Lt. Col.
22  Hawkins.  So he is sending that on to Lt.
23  Col. Hawkins to recommend approval.  And
24  then Lt. Col. Hawkins reviews it again and
25  makes the final approval and give it back to
```

Page 53

```
 1        L. STOTT
 2  MSgt. China.
 3    Q.  Lt. Col. Hawkins approval, is that
 4  at the top of page 8190?
 5    A.  Yes, and kind of bleeds onto 8189
 6  also.
 7    Q.  Okay, you could set that aside?
 8    A.  Both documents?
 9    Q.  Yes.
10        MS. MILLIGAN:  Marking as
11  Exhibit 132 a documents bearing Bates
12  USAF-ADS-0000771515.
13        (Whereupon, a document bearing
14        Bates  USAF-ADS-0000771515 was marked
15        Stott Exhibit 132 for identification as
16        of this date.)
17    Q.  Ms. Stott, is this a task order
18  created by the Air Force pursuant to the
19  overarching contract between Air Force and
20  GSD&M?
21    A.  Yes, it is.
22    Q.  And the task order number is on
23  the front page here, under delivery order,
24  FA300220F0009; is that right?
25    A.  That is the number, yes.  We refer
```

14 (Pages 50 - 53)

Page 54

1    L. STOTT
2    to that though as task order 28.
3       Q.  Could you clarify?
4       A.  So that is the call number of the
5    actual contract. But each individual task
6    order has a number that started with 1 and
7    continues to go up under the current
8    contract. And on page ending in 00003 you
9    will see at the top it says there FY20
10   special warfare combat support advertising
11   task order 0028.
12          I am just telling you that is how
13   we reference them.
14      Q.  You could set that aside.
15          How did the Air Force become
16   involved in this litigation?
17      A.  I would need to refer to my notes,
18   one second.
19          On December 23 of 2022, Michael
20   Wolin with the Department of Justice
21   e-mailed the Department of Defense Office of
22   General Counsel, Sivram Prasad. And then
23   Sivram Prasad then contacted the Air Force
24   on December 23. And then internally that
25   communication reached Mr. Barry Dickey at

Page 55

1    L. STOTT
2    Air Force Recruiting Service on January 12
3    of 2023.
4       Q.  Is Air Force involved in this
5    litigation -- strike that.
6           Prior to outreach by Michael
7    Wolin, did Air Force have any plans to sue
8    Google based on anything relating to the
9    subject matter of the complaint?
10          MS. CLEMONS: Objection to form.
11      A.  No, our first involvement or first
12   notification there was on December 23, 2022.
13      Q.  Did Air Force have a choice to
14   participate in this litigation?
15          MS. CLEMONS: Objection to form.
16      A.  That was directed by the
17   Department of Defense, Office of General
18   Counsel.
19      Q.  Are you saying that the decision
20   to participate in this litigation -- strike.
21          Are you saying that Air Force's
22   decision -- strike that.
23          Are you saying that Air Force's
24   participation in this litigation is due to a
25   decision made by the Office of General

Page 56

1    L. STOTT
2    Counsel for the Department of Defense?
3          MS. CLEMONS: Objection to form.
4       A.  Yes, the Air Force was directed by
5    the DOD Office of General Counsel.
6       Q.  Did Air Force conduct any
7    investigation before -- strike that.
8           Did Air Force conduct any
9    investigation into the claims and
10   allegations made in the complaint prior to
11   deciding to participate in this lawsuit?
12          MS. CLEMONS: Objection to form,
13   foundation.
14      A.  Our involvement by Air Force, Big
15   Air Force did not become involved until
16   December 23 and Air Force Recruiting Service
17   not until January 12 of 2023. That was the
18   beginning of our involvement.
19      Q.  What did Air Force tell its ad
20   agency, GSD&M, about this lawsuit?
21          MS. CLEMONS: Objection to form,
22   foundation.
23      A.  I did not have any conversations
24   with Ms. Dickey or with Ms. Hatch about how
25   GSD&M was notified or involved.

Page 57

1    L. STOTT
2           I can't really say if DOD reached
3    out to them directly or if that notification
4    came from Air Force Recruiting Service, but
5    I don't know.
6       Q.  What facts are Air Force aware of
7    regarding Google's alleged monopolization?
8           MS. CLEMONS: Object to the extent
9    that calls for privileged
10   communications with counsel. If you
11   could answer without referring to
12   privileged communications with counsel,
13   you may do so.
14      A.  That would all have been
15   conversations with counsel.
16      Q.  Ms. Stott, what did you do to
17   prepare for today's deposition?
18      A.  I had probably eight to ten
19   meetings with counsel. I reviewed multiple
20   documents and spent a total of about 60
21   hours either reviewing documents or having
22   conversations with people internal at
23   Recruitment Service Marketing including
24   Ms. Hatch, Mr. Dickey, Maj. Lane. I also
25   spoke with Maj. Brian Murray and Ms. Larisa

```
                                               Page 58                                              Page 60
 1              L. STOTT                                 1              L. STOTT
 2   Wright in that preparation.                         2   that GSD&M has sent to Air Force since 2019?
 3       Q.  Did you have any conversations              3       A.  No, I did not.
 4   with anyone at GSD&M in preparation for this        4       Q.  So are you aware of whether that
 5   deposition?                                         5   exact process was followed, as you described
 6       A.  No, I did not.                              6   it, in 100 percent of the invoices that were
 7           MS. MILLIGAN:  I am just going to           7   sent from GSD&M to Air Force?
 8   mark your notes.  So I am marking                   8           MS. MILLIGAN:  Objection to form.
 9   Ms. Stott's notes as Exhibit 134.                   9       A.  No, I can't confirm that for every
10           (Whereupon, notes was marked Stott         10   single invoice.  I can only speak to what
11   Exhibit 134 for identification as of               11   the process is supposed to be.  In fact, our
12   this date.)                                        12   current contracting officer, Ms. Hatch, only
13           MS. MILLIGAN:  Off the record for          13   came on, as I stated, I think it was late
14   one minute.                                        14   spring, early summer of 2021.  And she would
15           THE VIDEOGRAPHER:  The time is             15   not be able to confirm that either.
16   11:45 a.m., we are off the record.                 16           MS. CLEMONS:  That's all the
17           (Whereupon, an off-the-record              17   questions that we have.
18   discussion was held.).                             18           MS. MILLIGAN:  Nothing further.
19           THE VIDEOGRAPHER:  The time is             19           THE VIDEOGRAPHER:  The time is
20   11:46 a.m., we are on the record.                  20   12:06 p.m.  We are off the record.
21           MS. MILLIGAN:  I have no further           21           (Whereupon, an off-the-record
22   questions, Ms. Stott.  I want to thank             22   discussion was held.)
23   you and the Air Force for your time                23           THE VIDEOGRAPHER:  The time is
24   today.                                             24   12:07 p.m. we are on the record.
25           MS. CLEMONS:  We will just take a          25           MS. MILLIGAN:  What is the total

                                               Page 59                                              Page 61
 1              L. STOTT                                 1              L. STOTT
 2   quick break.                                        2   time on the record?
 3           THE VIDEOGRAPHER:  The time is              3           THE VIDEOGRAPHER:  One hour and 30
 4   11:46 a.m.  We are off the record.                  4   minutes.
 5           (Whereupon, a short recess was              5           MS. MILLIGAN:  And three minutes
 6   taken.)                                             6   of those counted for plaintiff?
 7           THE VIDEOGRAPHER:  The time is              7           MS. CLEMONS:  Yes, the United
 8   12:04 p.m.  We are on the record.                   8   States agrees that those three minutes
 9   EXAMINATION BY                                      9   will not count towards defendant's 14
10   MS. CLEMMONS:                                      10   hours of 30(b)(6) time.
11       Q.  Earlier you testified about backup         11           THE VIDEOGRAPHER:  The time is
12   information provided with invoices.  Do you        12   12:07 p.m.  We are off the record.
13   recall that testimony?                             13           (Whereupon, at 12:07 P.M., the
14       A.  I do, yes.                                 14   Examination of this witness was
15       Q.  When you were describing the kinds         15   concluded.)
16   of information that are attached to                16
17   invoices, were you describing the difficult        17            o   o   o   o
18   process or every invoice involved?                 18
19       A.  I was describing the process that          19
20   we typically follow within recruiting              20
21   service marketing.  And that process was           21
22   confirmed when I reviewed, I would estimate        22
23   somewhere between 10 and 15 various invoices       23
24   from throughout the period in question.            24
25       Q.  But did you review every invoice           25
```

```
                                              Page 62
 1         L. STOTT
 2         D E C L A R A T I O N
 3
 4      I hereby certify that having been first
 5   duly sworn to testify to the truth, I gave
 6   the above testimony.
 7
 8      I FURTHER CERTIFY that the foregoing
 9   transcript is a true and correct transcript
10   of the testimony given by me at the time and
11   place specified hereinbefore.
12
13
14
            _____
15              LARA STOTT
16
17
18   Subscribed and sworn to before me
19   this _____ day of _____ 20___.
20
21
         _____
22         NOTARY PUBLIC
23
24
25
```

```
                                              Page 63
 1         L. STOTT
 2
 3         I N D E X
 4
 5   EXAMINATION BY              PAGE
 6    MS. MILLIGAN                4
      MS. CLEMONS                59
 7         E X H I B I T S
 8
 9   STOTT EXHIBITS
     EXHIBIT      EXHIBIT
10   LETTER       DESCRIPTION    PAGE
11
12    126      Document bearing Bates   6
               USAF-ADS-000041-6385
13    127      Document bearing Bates   7
               USAF-ADS-000077-1834
14
      128      Document bearing Bates  12
15             USAF-ADS-000061-8109
16    129      Document bearing Bates  29
               USAF-ADS-000077-1565
17
      130      Document bearing Bates  39
18             USAF-ADS-000077-1759
19    131      Document Bates No.      46
               USAF-ADS-0000013224
20
      133      Document bearing Bates  47
21             USAF-ADS-000084-8189
22    132      Document bearing Bates  53
               USAF-ADS-000077-1515
23
      134      Notes                   58
24         (Exhibits retained by counsel.)
25
```

```
                                              Page 64
 1         L. STOTT
 2         C E R T I F I C A T E
 3
 4   STATE OF NEW YORK      )
                            : SS.:
 5   COUNTY OF QUEENS       )
 6
 7      I, RIVKA TROP, a Notary Public for and
 8   within the State of New York, do hereby
 9   certify:
10      That the witness whose examination is
11   hereinbefore set forth was duly sworn and
12   that such examination is a true record of
13   the testimony given by that witness.
14      I further certify that I am not related
15   to any of the parties to this action by
16   blood or by marriage and that I am in no way
17   interested in the outcome of this matter.
18      IN WITNESS WHEREOF, I have hereunto set
19   my hand this 20th day of September, 2023.
20
21
22         [signature: Rivka Trop]
23              RIVKA TROP
24
25
```