## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO EXCLUDE EXPERT TESTIMONY OF ANTHONY FERRANTE

Anthony Ferrante is a cybersecurity consultant and former FBI agent that defendant

Google, LLC ("Google") retained to " 

████████████████████████████████ " *See* Exhibit A, Expert Report of Anthony J. Ferrante

("Ferrante Rep.") ¶ 1. Specifically, Mr. Ferrante offers four opinions: ████████████████

██████████████████████████████████████████████████████████████████████

█████████████████████████████████ (ii) Google "████████████████████████████" in

██████████████████ (iii) the "██████████████" ████████████████████████████████

████████████████ "████████████████████████████████████████████████████████

████████████ " and (iv) Google's "████████████████████████████████████████████

██████████████████████████████████████████ ." *Id.* ¶ 8. All four of Mr. Ferrante's

opinions should be excluded.

*First*, in reaching all his opinions, Mr. Ferrante used no methodology at all, much less a

reliable one. Instead, he relied only on his "experience" without using or applying any principles,

methods, or process to translate his putative "experience" to the conclusions he reached. Nor did

he explain why his experience alone was sufficient to support his opinions. This kind of "I know

it when I see it" approach infects all of Mr. Ferrante's opinions and is contrary to the

1

methodological bounds of Rule 702. *See, e.g., United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007); *Copeland v. Bieber*, 2016 WL 7079569, at *5 (E.D. Va. Sept. 8, 2016) (excluding an expert from testifying because the expert did not explain how or why their experience was sufficient to make their opinions); *Robles v. United States*, 2020 WL 8254267, at *3 (E.D. Va. Oct. 15, 2020) (similar); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 814-15 (E.D. Va. 2011) (similar).

*Second*, Mr. Ferrante's opinions will not assist the trier of fact in this case because they are not relevant in this case and will tend to confuse, rather than help, the jury. The threat that cybersecurity risks present to the digital advertising industry and whatever effort Google has made to address those risks have no bearing on any issue the jury must decide. Any such efforts by Google have nothing to do with—and therefore cannot justify—any of the conduct Plaintiffs allege violate the antitrust laws. As such, Mr. Ferrante's opinions should be excluded as an unhelpful and confusing distraction. *See, e.g., Thomas M. Gilbert Architects, P.C. v. Accent Builders & Devs., LLC*, 2008 WL 5552323, at *1 (E.D. Va. June 4, 2008) (excluding expert testimony not relevant to issues in the case).

*Third*, Mr. Ferrante's opinions related to header bidding and Google's Open Bidding product should be excluded because Google and Mr. Ferrante failed to disclose sufficient and timely information about purported "field tests" that Mr. Ferrante claimed for the first time at his deposition were a basis for those opinions. Federal Rule of Civil Procedure 26(a)(2)(B) and the Expert Stipulation and Order, ECF No. 106, required timely disclosure of those tests as well as any backup material related to those "tests." No such disclosures were made. As a result, any opinion that Mr. Ferrante reached based on those "field tests" should be excluded. *See Disney*

2

*Enterprises, Inc. v. Kappos,* 923 F.Supp.2d 788 (E.D. Va. 2013) (Brinkema, J.); *Rambus, Inc. v. Infineon Tech. AG*, 145 F.Supp.2d 721, 724 (E.D. Va. 2001).

**BACKGROUND**

### A. Mr. Ferrante's Professional Experience

Mr. Ferrante is a Senior Managing Director and the Global Head of Cybersecurity at FTI Consulting, Inc. From 2005 until 2017, he held various positions within the federal government. *See* Exh. A, Ferrante Rep. at App'x A; Exhibit B, February 16, 2024, Deposition of Anthony Ferrante ("Ferrante Tr.") at 18:22-19:6; 63:21-64:11. He started in the FBI New York Field Office as a special agent in the National Security Cyber Squad, working counter terrorism and counterintelligence. Ferrante Tr. at 19:2-22. After 8 years in the field, he moved to FBI headquarters, holding various supervisory and liaison roles. *Id.* at 45:10-22. He could only recall one case involving digital advertising that he worked on or supervised. That case occurred in 2011, and Mr. Ferrante's role was to "support[] [his] colleagues." *Id.* at 26:1-30:5. Mr. Ferrante's report mentions ███████████, *see* Exh. A, Ferrante Rep. ¶¶ 16, 18, 53-65, but ███████ ██████████████████████ see Exh. B, Ferrante Tr. at 33:10-19; 35:11-24; 254:16-256:12. At the end of his FBI service, he worked with the National Security Council for 18 months, but that work also did not involve digital advertising. *Id.* at 63:21-64:11; Exh. A, Ferrante Rep. App'x A.

Since leaving government service in 2017, he has worked at FTI Consulting, a business advisory firm. *See* Exh. A, Ferrante Rep. App'x A. His report states that, at FTI, he provides "███████████████████████████████████████████████████. *Id.* Additionally, he has been retained six times as an expert and testified in court twice—once about "reasonable measures" a company took to "protect their intellectual property," Exh. B, Ferrante Tr. at 68:18-22, and once about how a car dealership "collected sensitive data" from users

3

visiting their website. *Id*. at 72:3-22. He has never been retained for a case involving digital advertising. He has also never presented or written articles or publications on digital advertising, nor has he researched or studied digital advertising. *See* Exh. A, Ferrante Rep. App'x A.

### B.  Mr. Ferrante's Four Opinions

Google retained Mr. Ferrante to opine on four topics related to "███████████████ ███████████████████████" *See* Exh. A, Ferrante Rep. ¶ 8.

First, Mr. Ferrante opined about the ████████████████████████ ███████████████████████████████████████" *Id*. Specifically, he opined that ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████. *Id*. ¶¶ 10-11. According to Mr. Ferrante, "████████████████ ████████████████████████████████████████ ██████████████████████ *Id*. ¶¶ 16, 24.

Second, Mr. Ferrante opined that ████████████████████████ ████████████████████████████████████████ *Id*. ¶¶ 39-49. He concluded that ████████████████████████████████ ████████████████████████████████████████ ██████████████████████ *Id*. ¶¶ 49, 53-65. For example, Mr. Ferrante cited to ████████████████████████████████████████ ██████████████████ *Id*. ¶¶ 53-65. ████████████████████████████████████. *Id*. ████████████████████████████████████████

 *See* Exh. B, Ferrante Tr. at 33:10-19; 35:11-24; 255:16-19.

Mr. Ferrante's third and fourth opinion are about

.

See Exh. A. Ferrante Rep. ¶¶ 66-67. *Id.*

¶ 66. Mr. Ferrante claims

*Id.* ¶¶ 66-75.

*Id.*

*Id.* ¶¶ 77-78.

### C. The Disclosed Bases for Mr. Ferrante's Opinions

Mr. Ferrante's report states that his opinions are based on his "experience" and his review of a small set of documents. *See* Exh. A, Ferrante Rep. ¶ 8; *id.* App'x. B (listing documents reviewed). Specifically,

*Id.* App'x. B.

*E.g.*, *id.* ¶ 69 n.71; ¶ 75, n. 80; *see* Exh. C, Ross Benes, *Unraveling header bidding's problem with user data*, Digiday (Mar. 20, 2017) (relying on anonymous sources who "did not share any first-hand experiences"). Other than trade press

articles, Mr. Ferrante referenced and relied on ████████████████████████████



██████████████████████████████████████████████████████████

████████████ *See* Exh. A, Ferrante Rep. App'x B. ██████████████████████████

██████████████████████████████████████████████████████████

██████████████

In addition to not reviewing any non-public documents other than the two internal Google documents, Mr. Ferrante did not review any deposition testimony, conducted no surveys or comparative analysis between Google's cybersecurity measures and those of other companies, and did not rely on any peer-reviewed information[1] or statistical data. *See* Exh. B, Ferrante Tr. at 94:20-95:7; 97:23-98:21; 98:22-99:16; 101:21-102:1; 104:9-11; 104:12-14; 104:15-105:5.

### D.  Mr. Ferrante's Deposition Testimony and Untimely Disclosure of "Field Tests"

On February 16, 2024, Plaintiffs deposed Mr. Ferrante. At his deposition, Mr. Ferrante was asked to describe the basis for his opinions and the process, he used to arrive at those opinions.

### 1.  Mr. Ferrante's Lack of Knowledge of Digital Advertising

Mr. Ferrante's lack of knowledge of the ad technology ("ad tech") industry was evident from his deposition testimony. He was either unable to answer or gave inaccurate answers to questions about participants and products in the digital advertising industry. For example, he was unable to identify any company that owns a publisher ad server, even though that is one of the

---

[1] Mr. Ferrante at times claimed that certain publications he relied on were "peer reviewed" or "academic publications," but they were not. For example, he considered "peer review" to mean review by one of his co-workers at FTI, and he considered news periodals like the New York Law Journal to be an "academic journal." Ex. B, Ferrante Tr. at 74:14-75:3; 77:22-78:25; *see also*, *e.g.*, Office of Mgmt. & Budget, *Final Information Quality Bulletin for Peer Review* 17 (2004) (peer review requires review by those "not involved in producing the draft" who "are generally not employed by the agency or office producing the document").

three types of digital advertising tools at the heart of this matter. *Id*. at 95:22-25 ("Q. What companies are you aware of that have publisher ad servers? A. Yeah. I can't – as I sit here right now."). Mr. Ferrante was also specifically unfamiliar with Google's ad tech products. For example, he testified that Google's Ad Manager ("GAM"), is "an advertising ad network," even though GAM is a combination of two other kinds of ad tech products—an ad exchange and a publisher ad server. *Id*. at 97:5-9; s*ee* Am. Compl. ¶ 282.

### 2.  Mr. Ferrante's Heavy Reliance on Unspecified "Experience"

When questioned about the basis for his opinions, Mr. Ferrante repeatedly stated that the source of the opinion was his "experience," but he described that "experience" in vague and generic terms and was unable to explain how his experience related to his opinions or how he used his experience to form those opinions. *Id*. at 287:20-289:7. For example, when asked what supported his opinion that Google is a leader in cybersecurity in the advertising ecosystem, he answered, "I made that opinion based on my professional experience of working in the security industry my entire life. I didn't need a peer review. I made that opinion based on my experience. . . . I am forming that opinion and writing that opinion based on my experience as a security professional for my entire life." *Id*. at 288:15-289:7. Mr. Ferrante similarly invoked only his "experience" as the metric he used to conclude that Google spent a substantial amount of time, money, and knowledge on cybersecurity. *Id*. at 281:6-12 ("Q.  Again, just to be clear you used the phrase 'substantial' without defining any particular metric or measurement, right? A. The measurement is my professional experience and my day-to-day work that I'm doing every single day compared to other big tech."). Such vague invocations of his "experience" recurred throughout Mr. Ferrante's deposition. *See*, *e.g.*, *id*. at 132:15-133:4; 149:8-150:1; 202:8-25; 214:3-14; 228:2-8; 242:15-20; 263:4-18; 264:4-265:15; 266:7-22; 272:17-273:7; 274:1-19; 277:5-13; 281:6-12; 288:15-289:7; 291:7-11.

7

### 3.   Mr. Ferrante's Unquestioned Reliance on Google-Provided Materials

Mr. Ferrante testified that he did not question or verify any information provided to him from Google because Google was his "client." Exh. B, Ferrante Tr. at 93:22-24; 138:1-13; 183:4-10; 209:13-17; 224:3-8; 224:3-19; 287:20-289:7. For example, Mr. Ferrante's report contains ████████████████████████████████████████████████████████ which he claims ████████████████████████████████████████████████████ *See* Exh. A, Ferrante Rep. App'x. C. But he testified that he ███████████████████████████████████ ████████████████████████████████████████████████████████████ Exh. B, Ferrante Tr. at 115:14-17; 155:14-21; *accord id*. at 127:10-18; 137:3-5; 152:24-153:1; 155:17-20; 171:5-8. Despite that lack of verification, he also testified that his opinions based on the reports would stay the same regardless "whether . . . [Google's] data was a hundred percent accurate or needed a correction." *Id*. at 140:2-10.

### 4.   Untimely Disclosure of "Field Tests" on Header Bidding and Open Bidding

Mr. Ferrante testified that he observed "data" during "field test[s]" of header bidding, *id*. at 183:5-14, and similarly claimed that he did field testing with Google's Open Bidding product to "ensure that you cannot capture encrypted communications," *id*. at 236:3-14. He described this testing as "sniffing the wire for a short period of time as a user visited a website and just watching the data traverse." *Id*. at 191:3-10. Although he claimed that the "results" of these tests were "in the report," and that "of course" the field test was one of the things that supported his claim about data leakage in header bidding, his report does not actually reference or cite any such "field testing." *Id*. at 183:11-14; 188:8-13; 189:10-14. Mr. Ferrante also stated that he documented the results of his field tests, but Plaintiffs have never received any such documentation. *Id*. at 188:8-191:13. To date, neither Mr. Ferrante nor Google has supplemented

or corrected his report or provided any materials or other information about the field testing he claims to have conducted.

## LEGAL STANDARD

"The proponent of [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); Fed. R. Evid. 702. Rule 702 permits an expert to offer opinion testimony when his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," so long as the expert's opinion is "based on sufficient facts or data," "is the product of reliable principles and methods," and the expert "has reliably applied the principles and methods to the facts of the case." *In re Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting Fed. R. Evid. 702). District courts have a gatekeeping responsibility to ensure that a "proffered expert opinion is 'sufficiently relevant and reliable,'" *Sardis v. Overhead Door Corp.,* 10 F.4th 268, 281 (4th Cir. 2021) (quoting N*ease v. Ford Motor Co.*, 848 F.3d 2019, 229 (4th Cir. 2017); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993).

The need to police expert testimony is heightened in a jury trial because "[t]he main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony." *Nease*, 848 F.3d at 231; *see also Sardis,* 10 F.4th at 282 (finding the court "abandoned its gatekeeping function" when it made conclusory statements of admissibility, in effect delegating the gatekeeping responsibility to the jury). Expert testimony has the potential to "be both powerful and quite misleading," and ultimately can sway a jury's verdict. *Westberry v. Gislaved Grummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). "[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten

should be excluded." *Id*. Subjecting an expert witness "to a thorough and extensive examination does not ensure the reliability of the expert's testimony [and] such testimony must still be assessed before it is presented to the jury." *Nease*, 848 F.3d at 231.

For expert witnesses a party seeks to qualify "solely or primarily on experience," Fed. R. Evid. 702 advisory committee's note (2000), "the district court must nonetheless require an experiential witness to 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). When an expert reaches conclusions "without explaining at all how" he arrived at them, "[t]hat is the quintessential *ipse dixit*," *i.e.*, "[i]t is so because I, the expert, say it is so," and "[i]t is precisely that kind of opinion that *Daubert*, *Kumho*, and *Joiner* require district courts to exclude." *ePlus*, 764 F. Supp. 2d at 814-15; *see also*, *e.g.*, *Erickson v. Baxter Healthcare, Inc.*, 131 F. Supp. 2d 995, 1000 (N.D. Ill. 2001) ("More than bald assertions of opinion without any support are required; this is no more than any rational person would require."). An expert has an "obligation to show his or her work by establishing legitimate bases for the testimony," and that obligation "may be higher when the expertise is of an experiential nature." *United States v. Rodriguez*, c, 1251 (D.N.M. 2015) (citing *Joiner*, 522 U.S. at 146); *see also Brasko v. First Nat'l Bank of Pa.*, 2023 WL 7191120, at *4 (D. Md. Nov. 1, 2023) (excluding opinion of experiential expert who used a "'because I say so' approach" that "does not meet the requirements of a reliable methodology").

## ARGUMENT

### A.  Mr. Ferrante Used No Methodology to Form His Opinions

Mr. Ferrante's opinions are inadmissible because he used no identifiable (let alone reliable) methodology to arrive at those opinions. It is axiomatic that experts must explain how they arrived at their opinions. *E.g.*, *Joiner*, 522 U.S. at 146. General reliance on an expert's experience, without disclosing and explaining how that experience was reliably applied to the facts in issue is not enough to meet *Daubert* and Rule 702 gatekeeping standards.

Mr. Ferrante's opinions fail to satisfy Rule 702 because they are "the quintessential *ipse dixit*." *ePlus*, 764 F. Supp. 2d at 815. He relies only on unspecified "experience" to justify all his conclusions, but he cannot "explain how [his] experience leads to the conclusion reached," which is fatal to his opinions' admissibility. *Wilson*, 484 F.3d at 274. An expert's process—whether "a scientific method" or "other standard principles attendant to the particular area of expertise"—must be explained and capable of scrutiny. Fed. R. Evid. 702 advisory committee's note (2000) ("The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."). Because Mr. Ferrante leaps from "experience" to conclusions with no identifiable steps in between, he lacks any "reliable principles and methods," Fed. R. Evid. 702(c), and therefore his opinions should be excluded in their entirety.

Courts in this District regularly exclude expert testimony when experts do not explain how their experience leads to their opinions. *See, e.g.*, *Andrews v. Woody,* No. 3:17CV167, 2018 WL 2452177, at *4 (E.D. Va. May 31, 2018); *Georges v. Dominion Payroll Servs., LLC*, No. 3:16CV777, 2018 WL 2088751, at *5 (E.D. Va. May 4, 2018); *Copeland,* 2016 WL 7079569, at *5; *Robles,* 2020 WL 8254267, at *3. *Copeland* and *Robles* are particularly instructive.

In *Copeland*, a copyright infringement case, the plaintiffs retained an expert to testify about whether the plaintiffs' and the defendants' songs were substantially similar. 2016 WL 7079569, at *1. The expert had "[o]ver 30 years of experience as a professional audio engineer; [and] participated in the production of records which have sold over 40 million copies." *Id*. The expert opined that the two songs were "strikingly similar," but "he did not explain at all" how he arrived at his conclusions, other than to assert that the similarity was "clear." *Id*. Despite the expert's reliance on his substantial "experience listening to songs as a recording engineer over a thirty year period to reach his conclusion," his opinions were inadmissible because he did "not explain why this experience provides sufficient basis to form a reliable expert opinion about the songs' objective similarities." *Id*. at *5. Mr. Ferrante's opinions present a similar lack of methodology. If anything, the witness's experiential expertise in *Copeland* was much more extensive than Mr. Ferrante's is here, but his opinions were nevertheless inadmissible because he adopted the same "I know it when I see it" approach that Mr. Ferrante used here.

Similarly, in *Robles*, the plaintiff claimed he was injured while on a U.S. Navy ship. 2020 WL 8254267, at *1. The plaintiff retained a captain in the Navy as an expert, who, according to the plaintiff, was "an expert in the field of vessel operations, seamanship, ship handling, marine safety, and training." *Id*. The Navy captain opined about "whether the task assigned to Plaintiff fell below the industry standard for this type of operation on a merchant vessel." *Id*. The court excluded the expert, finding that "[t]hroughout his report, [the expert] states that his conclusions are based on his 'experience, education, and training,' without any explanation as to how his experience allows him to apply the facts in this case to reach his conclusions." *Id*. at *3. As with the expert in *Robles*, Mr. Ferrante "mentions his . . . experience throughout his report" and deposition testimony, but he "has insufficiently explained how his experience" leads to his

12

opinions "beyond cursory statements that his experience supports his conclusions." *Id*.  And like the expert in *Robles*, Mr. Ferrante's opinions should be excluded.

Mr. Ferrante's inability to connect his experience to his opinions about digital advertising is unsurprising, given that he knows very little about digital advertising and has only minimal experience related to it. *See supra* at 6-7. His professional experience in the broader cybersecurity field may permit him to opine on certain topics, but it is far from clear that digital advertising is one of them. For example, he purports to opine on ███████████████

██████████████████████████████████████████████████

████████ Exh. A, Ferrante Rep. ¶ 8, but he has not worked on any digital advertising matter since 2011—even then, only in a "support" role—and stopped working on cybercrime at the FBI entirely in 2015. His lack of experience specific to digital advertising leaves a chasm between his experience and his opinions in this case that he does not attempt to bridge. That "analytical gap" is "simply too great" to make Mr. Ferrante's opinions admissible. *Joiner*, 522 U.S. at 146.

### B. Mr. Ferrante's Opinions Are Not Helpful to the Jury

In addition to being unreliable, Mr. Ferrante's opinions are inadmissible because they would not "help the trier of fact to understand the evidence or to determine a fact in issue" Fed. R. Evid. 702. "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. And "[a]n expert's opinion is relevant if it has a valid scientific connection to the pertinent inquiry." *Sardis*, 10 F.4th at 281.

Specifically, Mr. Ferrante's opinions are not helpful because they are not connected to Google's alleged anticompetitive conduct. Plaintiffs allege that Google has monopolized the markets for three kinds of technology products used to buy and sell digital advertising:

(i) publisher ad servers; (ii) ad exchanges; and (iii) advertiser ad networks. As such, the jury will be asked to determine (1) whether these are relevant product markets; and (2) whether Google willfully acquired or maintained monopoly power in these markets through anticompetitive actions. None of Mr. Ferrante's opinions would assist the jury in deciding these questions.

Mr. Ferrante's opinion that ███████████████████████████████████ ███████████████████ is irrelevant because it is not connected to any of Google's alleged anticompetitive conduct. Exh. A, Ferrante Rep. ¶¶ 8-78. The mere threat of cybersecurity risks does not and cannot serve as a blanket justification for the anticompetitive practices alleged.

Similarly, Mr. Ferrante's opinion that ██████████████████████████████ ████████████████████████████ is unhelpful because whatever Google's efforts may have been to combat nefarious online conduct, it is irrelevant to whether Google has monopolized digital advertising tools. None of the Google cybersecurity efforts Mr. Ferrante alludes to has any connection to the anticompetitive conduct that Plaintiffs allege, and therefore the former cannot justify the latter. Rather, Google seeks to offer this opinion by Mr. Ferrante only to impermissibly bolster Google's putative good character. Admitting such testimony risks a mini-trial on the ancillary, irrelevant question of whether Google generally is a good actor in the realm of cybersecurity. *See, e.g.,* Exh. A, Ferrante Rep. ¶¶ 53-65 ██████████████████████ ████████████████████████████████████

Mr. Ferrante's third and fourth opinions related to header bidding and Open Bidding are likewise untethered to any of the alleged anticompetitive conduct and are too vague and lacking in substance to be helpful to the jury. The crux of these opinions are that ███████████████ █████████████████████████████████████████. Even if that opinion were well supported, it would still be unhelpful because the jury will not be asked to compare

14

which method of auctioning impressions is better or more secure. Nor will the jury be asked to decide whether putative privacy and security benefits justify Open Bidding because Plaintiffs do not allege that Open Bidding itself is anticompetitive. And even if such a justification were in play, Mr. Ferrante's opinions about Open Bidding would remain unhelpful because he does not opine that data privacy and security require Open Bidding or that Google's products and platforms are more secure than others. *See*, *e.g.*, Ferrante Depo. at 131:4-6; 132:15-133:16.

### C.  Mr. Ferrante's Opinions Based On Late-Disclosed or Undisclosed "Field Testing" Should Be Excluded

Mr. Ferrante's opinions about header bidding and Google's Open Bidding product should be excluded because Google failed to make timely and complete disclosures about "field testing" that Mr. Ferrante claims to have conducted in support of these opinions. Exclusion is warranted because Google's failure violated Rule 26, the Expert Discovery Order, and the Court's past warning to Google that its experts will not be able to rely on information not disclosed. Feb. 9, 2024 H'rg Tr., at 6:15-23 (during which the Court cautioned Google that there would be "consequences" if an expert relied on information not disclosed).

The Court's scheduling order requires each party to produce:

> 4.1.1  A copy of the data or other information referred to in the Testifying Expert's report or declaration and/or relied on by the Testifying Expert in forming the Testifying Expert's opinions (to the extent not already produced in discovery), including, but not limited to, all data and programs underlying any calculations, including all computer programs or code necessary to recreate any data, intermediate data, calculations, estimations, tables, or graphics , and including the intermediate working- data files that are generated from any initial ("raw") data files and used in performing the calculations appearing in the report.

> 4.1.2 A list of all Documents referred to in the Testifying Expert's report or declaration and/or relied upon by the Testifying Expert in forming the Testifying Expert's opinions….

ECF Nos. 103, 106.

Under Rule 37(c)(1), when a party fails to adequately disclose expert opinions or information under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) provides an automatic preclusion sanction against the noncomplying party which prevents that party from offering non-disclosed evidence at trial if that failure to disclose was not substantially justified, unless the failure was harmless." *See Rambus, Inc. v. Infineon Tech. AG*, 145 F.Supp.2d 721, 724 (E.D. Va. 2001). Specifically, if an expert fails to disclose the information underlying an opinion, then the expert is precluded from offering that opinion at trial. *Disney*, 923 F.Supp.2d at 795-96.

"The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017). To assess whether a non-disclosure was justified or harmless, the courts consider: (1) "the surprise to the party against whom the evidence would be offered," (2) "the ability of that party to cure the surprise," (3) "the extent to which allowing the evidence would disrupt the trial," (4) "the importance of the evidence," and (5) "the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack and Fixt're, Inc. v. Sherwin-Williams Co.,* 318 F.3d 592, 597 (4th Cir. 2003); *see also Luma Corp. v. Stryker*, 226 F.R.D. 536, 541–42 (S.D. W.Va. 2005) (applying same factors in determining sanctions for expert discovery violations under Rule16(f)).[2]

This Court previously has weighed these factors and precluded an expert from testifying at trial on analogous but less egregious facts than here. In *Disney,* the plaintiff retained an expert

---

[2] As such, the same factors apply irrespective of whether the Court analyzes this violation under Rule 16(f) or Rule 37.

to testify about why the rejection of a patent was incorrect. 923 F.Supp.2d at 791-92. In neither the opening nor reply report did the plaintiff's expert discuss source code that he reviewed in forming his opinion. *Id*. at 792-93. However, the night before the expert's deposition, the plaintiff produced four pages of computer code, and later, served a supplemental expert report to reflect the expert's review of source code. *Id*. at 793. The expert was questioned about his review of the source code at the deposition, and Disney offered a further limited examination of the expert after defendant had an opportunity to review the supplemental report. *Id.* at 793-94.

Notwithstanding these attempts at remediation, this Court found that the failure to timely disclose the source code was a surprise to defendant and was neither substantially justified nor harmless. Accordingly, the Court precluded the expert from testifying about this opinion at trial. *Id*. at 795-96; *see also, E. W., LLC v. Rahman*, 2012 WL 4105129, at *7 (E.D. Va. Sept. 17, 2012) (rejecting a party's argument that the expert discovery surprise may be cured by a last-minute deposition of an expert witness, explaining that "[t]he Court will not place itself or the parties in such a position so close to the scheduled trial date").

Here, despite Mr. Ferrante's deposition testimony that he relied on certain "field testing" to form his opinions about the security of both header bidding and Open Bidding, Google has never provided any underlying documentation or data from such field tests nor supplemented Mr. Ferrante's report. Such failures have significantly disadvantaged Plaintiffs in at least two ways. First, Plaintiffs retained a cybersecurity expert, Dr. Wenke Lee, to analyze Mr. Ferrante's report. The failure to disclose the nature, method, and manner of Mr. Ferrante's purported field tests until after Plaintiffs' deadline to serve reply reports prevented Dr. Lee from analyzing, and if appropriate, critiquing such testing. Second, because Plaintiffs were unaware of the existence of

17

field tests prior to Mr. Ferrante's deposition, they were unable to prepare for and question Mr. Ferrante about such tests at his deposition.

Any attempt to cure Google's non-disclosure at this stage would likely jeopardize the Court's pretrial schedule. To place the parties in a position they would have been absent Google's non-disclosure, Google would need to make belated disclosures of the field-testing information, Plaintiffs would need the opportunity to file a supplemental expert report assessing any new information, and both sides would need the opportunity to reopen the depositions of Mr. Ferrante and Dr. Lee to explore this testing and related opinions. Such information and testimony may lead to further reasons to exclude Mr. Ferrante's testimony at trial, meaning that Plaintiffs potentially would be entitled to supplement this motion. Such extraordinary efforts and modifications are impracticable and unwarranted.

To date, Google has provided no explanation or justification for its non-disclosure. Accordingly, the Court should preclude Mr. Ferrante from testifying about his opinions related to header bidding and Google's Open Bidding product, both of which relied on Mr. Ferrante's field testing.

## CONCLUSION

The Court should exclude Mr. Ferrante's opinions in their entirety due to his lack of methodology and the irrelevant nature of his opinions. Moreover, Google's unjustified and prejudicial failure to timely disclose purported "field tests" underlying some of Mr. Ferrante's opinions is an independent reason to exclude those opinions.

Dated: April 26, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ Michael J. Freeman
MICHAEL J. FREEMAN
/s/ Amanda M. Strick
AMANDA M. STRICK
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Michael.Freeman@usdoj.gov
Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Tyler T. Henry
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of
Virginia and local counsel for the
States of Arizona, California,
Colorado, Connecticut, Illinois,
Michigan, Minnesota, Nebraska, New
Hampshire, New Jersey, New York,
North Carolina, Rhode Island,
Tennessee, Washington, and West
Virginia