Exhibit C

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

United States of America, *et al.*,

**Plaintiffs,**

**v**

Google LLC,

**Defendant.**

**Case No. 1:23-cv-00108**

**HON. LEONIE H. M. BRINKEMA**

EXPERT REBUTTAL REPORT OF

**WAYNE D. HOYER, PH.D.**

**FEBRUARY 13, 2023**

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

12. My findings are based on information available to me at the time this report was prepared. A list of documents I relied upon is listed in Appendix C. I reserve the right to supplement my opinions and conclusions should data, documents, testimony, or other materials become available after filing this report.

13. I am being compensated $850 per hour for my time in this matter. Part of the work in this matter was conducted under my direction by employees of The Brattle Group, an economic consulting firm. My compensation is not contingent on the nature of my findings, opinions, or conclusions, or on the outcome of this case.

## I.C. Summary of Opinions

14. Upon reviewing Prof. Simonson's report and surveys, I have concluded that the surveys conducted by Prof. Simonson contain serious flaws that make the survey results unreliable. In particular:

   a. ████████████████████████████████████████
   ███████████████████████

      i. ████████████████████████████████████████
      ████████████████████████████████████
      ███████████████████████████████████████
      ██████████████████████████████████
      ██████████████████████████████████
      ██████████████████████████████████████
      ██████████████

      ii. ██████████████████████████████████
      ████████████████████████████████
      ████████████████████████████████████████
      ████████████████████████████████
      ███████████████████████████████████████
      ████████████████████████████████████
      ███████████████

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████

ii.   █████████████████████████████████████████████ Rather,
what is relevant is the portion of those costs that corresponds to specific ad tech tools that
advertisers use to transact programmatic display advertising. Because the cost of a
particular ad buying tool comprises only one part of the total cost of programmatic
display advertising, a "small but significant" increase in the cost of a particular ad buying
tool would result in a much smaller increase than a small but significant increase in the
"cost of programmatic display advertising." ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████

f.   ████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER



### III.B. Professor Simonson's Key Survey Questions in His Main Questionnaires Are Likely to Result in Speculative and Unreliable Responses

71.    In designing a survey that can provide meaningful results, it is necessary for the questions to be clear and understood by respondents as intended. Several academic studies on survey design, including one that Prof. Simonson himself references, emphasize the need for survey questions to be clear and easily understood by respondents:

> Ambiguity should be avoided at all costs. If a question is ambiguous, the respondent may be presented with the dilemma of hearing or seeing two different questions and will not know which to answer.…With self-administered questionnaires, respondents have to make their own decision as to what the question means. Either way, the researcher does not know which way the respondent has understood the question.…[122]
>
> When unclear questions are included in a survey, they may threaten the validity of the survey by systematically distorting responses if respondents are misled in a particular direction, or by inflating random error if respondents guess because they do not understand the question. If the crucial question is

---

[122]    Ian Brace, *Questionnaire Design How to Plan, Structure, and Write Survey Material for Effective Market Research* 4th ed., (London: KoganPage, 2018): 161.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

> sufficiently ambiguous or unclear, it may be the basis for rejecting the survey.[123]
>
> The precise wording of questions plays a vital role in determining the answers given by respondents…[and]…[l]oaded words [p]roduce [l]oaded [r]esults…[and therefore]…a questionnaire writer can consciously or unconsciously word a question to obtain a desired answer.[124]

72. Ignoring the above best practices, Prof. Simonson's surveys include questions that are unclear.





---

[123] Shari Seidman Diamond, "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*, 3rd ed. (Washington, DC: The National Academies Press, 2011), 359–423, at 388. *See also*, Floyd Jackson Fowler, Jr., "How Unclear Terms Affect Survey Data," *The Public Opinion Quarterly* 56, (1992): 218–231.

[124] Norman M. Bradburn, Seymour Sudman, and Brian Wansink, *Asking Questions: The Definitive Guide to Questionnaire Design—For Market Research, Political Polls, and Social and Health Questionnaires*, Revised Ed. (San Francisco: Jossey-Bass, 2004): 3, 5.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER



105. I understand that with regard to advertisers, the relevant issue in this matter is the extent to which, and why, advertisers multi-home across different types of display *ad buying tools* and not across different types of *digital advertising* generally.[193]

---

[193] Lee Initial Report, Section III.C., ¶ 185 ("Publishers and advertisers may use multiple ad tech products for a given purpose. For example, an advertiser may choose to use multiple DSPs, and a publisher may similarly elect to sell its remnant display inventory through multiple exchanges. In economics, this type of behavior is referred to as 'multihoming.'"); Section IV., ¶ 245 ("Note that the relevant product markets do not contain the underlying display advertisements themselves, but rather the ad tech products used to serve and transact these ads."); Section IV.B., ¶ 262 ("Establishing the importance of open-web display advertising compared to other forms of advertising supports each of the relevant product markets that I discuss in Sections IV.C–IV.E below. This is because if open-web display advertising is distinct and valuable for open-web publishers and advertisers, then these customers would have limited ability to substitute away from *products used to transact such advertising* if those products were priced higher than competitive levels.") (emphasis in original).

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER



109.

Moreover, I understand that that ultimately advertisers bear approximately 20 percent of an increase in Google's fee[202]—the remainder being

---

[200]  *See* Lee Initial Report, Section IV.B., ¶ 262 ("Establishing the importance of open-web display advertising compared to other forms of advertising supports each of the relevant product markets that I discuss in Sections IV.C–IV.E below. This is because if open-web display advertising is distinct and valuable for open-web publishers and advertisers, then these customers would have limited ability to substitute away from *products used to transact such advertising* if those products were priced higher than competitive levels.") (emphasis in original); *See also*, Expert Rebuttal Report of Robin S. Lee, Ph.D., United States of America, et al., v. Google LLC, Civil Action No. 1:23-cv-0108, February 13, 2024, Section IV.B.

[202]  Simcoe Initial Report, Section I.C., ¶ 12.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER



Wayne D. Hoyer, Ph.D.

Date: February 13, 2024