Exhibit K

# HEINONLINE

DATE DOWNLOADED: Mon Feb 26 14:33:58 2024
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
Yvonne C. Schroeder, Pretesting Survey Questions: The Procedural and Ethical Ramifications, 11 AM. J. TRIAL ADVOC. 195 (1987).

ALWD 7th ed.
Yvonne C. Schroeder, Pretesting Survey Questions: The Procedural and Ethical Ramifications, 11 Am. J. Trial Advoc. 195 (1987).

APA 7th ed.
Schroeder, Y. C. (1987). Pretesting survey questions: the procedural and ethical ramifications. American Journal of Trial Advocacy, 11(2), 195-202.

Chicago 17th ed.
Yvonne C. Schroeder, "Pretesting Survey Questions: The Procedural and Ethical Ramifications," American Journal of Trial Advocacy 11, no. 2 (Fall 1987): 195-202

McGill Guide 9th ed.
Yvonne C. Schroeder, "Pretesting Survey Questions: The Procedural and Ethical Ramifications" (1987) 11:2 Am J Trial Advoc 195.

AGLC 4th ed.
Yvonne C. Schroeder, 'Pretesting Survey Questions: The Procedural and Ethical Ramifications' (1987) 11(2) American Journal of Trial Advocacy 195

MLA 9th ed.
Schroeder, Yvonne C. "Pretesting Survey Questions: The Procedural and Ethical Ramifications." American Journal of Trial Advocacy, vol. 11, no. 2, Fall 1987, pp. 195-202. HeinOnline.

OSCOLA 4th ed.
Yvonne C. Schroeder, 'Pretesting Survey Questions: The Procedural and Ethical Ramifications' (1987) 11 Am J Trial Advoc 195                Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Provided by:
DOJ Libraries

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.
-- To obtain permission to use this article beyond the scope of your license, please use:
  *Copyright Information*

# Pretesting Survey Questions: The Procedural and Ethical Ramifications

*Yvonne C. Schroeder*†

**Introduction**

Complex litigation involves the use of statistical information obtained through surveys.[1] Many attorneys and judges do not realize that the questions which appear in the surveys are often pretested.[2] While pretesting signals that a good statistician has been at work, pretesting may also indicate that the data obtained and presented before the court are slanted toward a particular point of view.[3] Accordingly, a wise attorney should discover all evidence of pretesting in order to cast doubt on the accuracy of statistical evidence presented by the opposing party. It is questionable whether one may discover materials that indicate that biased pretesting has taken place. Even if this material is not discoverable, biased pretesting may be a violation of ethical standards.

This Article first defines pretesting and shows how pretesting can distort the answers to survey questions. The Article then considers whether evidence of pretesting is discoverable matter under the Federal Rules of Civil Procedure. Third, the Article discusses whether pretesting is unethical when it distorts the truth, and whether such pretesting, even if not discoverable, may serve as the basis for disciplinary action

---

† B.A. (1985), Trinity College; J.D. (1988), Washington College of Law, American University. The author is an associate with the firm of Holland and Knight.

1. Professor Miller of the American University Law School proposes that the increase in the use of statistical evidence is due to the evolution of social sciences and the abrogation of the former hearsay objection to survey evidence. Miller, *Facts, Expert Facts and Statistics: Descriptive and Experimental Research Methods in Litigation*, 40 RUTGERS L. REV. 101, 105 (1987) (citing FED. R. EVID. 703, 803(24), 804(b)(5)).

2. *See infra* notes 4-11 and accompanying text (defining "pretest").

3. Statistics are often admitted as evidence that is neutral and non-biased. This author assumes that those not familiar with statistical methodologies may consider statistics completely neutral material.

195

against the attorney under the Model Rules of Professional Conduct and the Model Code of Professional Responsibility.

## I.  Pretesting Defined

Conducting a good survey is a difficult and burdensome task. This has led many scholars to publish material on the methodology of survey research.[4] Many statisticians express concern about the construction of survey questions because their construction is very important to the outcome of the survey. Even the smallest changes in wording can alter the answers of the respondents.[5] This is the reason for pretesting the questions. Pretesting is used to determine whether the question is not clear, concise, or generally understandable.

All survey questions should be pretested before using the question in a survey. Pretesting is administered by giving a survey with the same physical features of the questionnaire itself to the same type of respondents who will answer the survey in its final form.[6] After administering the survey, the surveyor should consult with the respondents in order to obtain their reactions to the survey. The debriefing of pretest respondents enhances the surveyor's knowledge of the effects of the questions upon the respondents and exposes difficulties within the survey.[7] A statistician can then revise the questions that caused

---

4. F. FOWLER, SURVEY RESEARCH METHODS (1984); V. CLOVER & H. BASLEY, BUSINESS RESEARCH METHODS (2d ed. 1979); A. FINK & J. KOSECOFF, HOW TO CONDUCT SURVEYS (1985); A. OPPENHEIM, QUESTIONNAIRE DESIGN AND ATTITUDE MEASUREMENT (1966).

5. Converse and Presser, *Survey Questions: Handcrafting the Standardized Questionnaire*, 63 QUANTITATIVE APPLICATIONS IN THE SOCIAL SCIENCES 41 (1986). One may obtain different answers by using biased language. For example: (1) "Would you vote for Roger Fields?" (2) "Would you vote for Dr. Roger Fields?" or (3) "Would you vote for Roger Fields, a liberal?" A. FINK & J. KOSECOFF, HOW TO CONDUCT SURVEYS: A STEP-BY-STEP GUIDE 30 (1985). As indicated by Fink and Kosecoff, incorporating the terms "Dr." or "liberal" may bias the responses obtained from the interviewers. *Id.*

6. V. CLOVER & H. BASLEY, BUSINESS RESEARCH METHODS 142 (2d ed. 1979) (stating pretesting should be done on people of the same type as the final survey); Kalton & Schuman, *The Effect of the Question on Survey Responses: A Review*, 145(A) ROYAL STATISTICAL SOC'Y J. 42, 43-44 (1982) (warning that responses are affected by physical location of question on questionnaire, the placement of instructions, the general layout, and the color of the print for questions). The pretest samples need not be drawn randomly as when selecting a sample for the final questionnaire. P. SHEATSLEY, HANDBOOK OF SURVEY RESEARCH 226 (1983). The pretest sample, however, "should be more than 'convenience' samples." *Id.*

7. P. SHEATSLEY, *supra* note 6, at 226.

difficulty for the pretest respondents.[8] This procedure should be conducted several times.[9] A statistician may also tabulate the responses.[10] This tabulation enables the statistician to obtain some knowledge of the responses which he is likely to receive at the final interview. By doing this, the surveyor can determine the question format that is most likely to solicit a predetermined answer. In other words, by pretesting survey questions, a surveyor can skew the final survey by manipulating the questions so that certain answers appear more often.[11]

As previously mentioned, surveys are often used in litigation. During litigation, certain statistical results obtained from a survey may be more favorable to one party than to the other. Thus, pretesting may theoretically be used to obtain a desired result. For example, an attorney could instruct his statistician to alter the questions to be used in a proposed survey in order to increase the probability that the respondents will choose an answer more favorable to the attorney's position.

## II. Procedural Ramifications of Pretesting

Rule 26(b) of the Federal Rules of Civil Procedure permits the discovery of "any matter, *not privileged*, that is relevant to the subject matter" of the pending litigation.[12] Subsections three and four of the Rule grant immunity from discovery when the materials to be discovered are prepared by counsel in anticipation of litigation,[13] or when the materials to be discovered are facts known or opinions held by experts.[14] The questions, then, are whether the results of pretesting are privileged and thus not subject to immunity to discovery, and whether the experts' opinions are discoverable.

---

8. S. SUDMAN & N. BRADBURN, ASKING QUESTIONS 282 (1983).
9. P. SHEATSLEY, *supra* note 6, at 225; S. SUDMAN & N. BRADBURN, *supra* note 8, at 282.
10. P. SHEATSLEY, *supra* note 6, at 225.
11. D. BERDIE, J. ANDERSON & M. NIEBUHR, QUESTIONNAIRES: DESIGN & USE 41-42 (2d ed. 1986).
12. FED. R. CIV. P. 26(b)(1) (emphasis added); *see also* Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2d Cir. 1943); Lever Bros. Co. v. Proctor & Gamble Mfg. Co., 38 F. Supp. 680 (D. Md. 1941).
13. FED. R. CIV. P. 26(b)(3).
14. FED. R. CIV. P. 26(b)(4).

The privilege which will most likely protect pretesting material is the work product immunity.[15] If material qualifies as work product, it is generally not discoverable.[16] Work product is defined as materials prepared in anticipation of litigation.[17] Examples of attorneys' work product include, but are not limited to, "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs" prepared or formed in the course of an attorney's legal duties.[18] Because material that is evidence of the pretesting of survey questions is prepared with an eye toward litigation, it may not be discoverable under the work product doctrine.

On the other hand, a party seeking to discover the material may argue that evidence of pretesting is not immune to discovery. The Federal Rules of Civil Procedure state that the work product immunity is absolute only when it "protect[s] against disclosure of mental impressions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."[19] Pretesting documentation and results are not necessarily the mental impressions or opinions of the attorney in the case.[20] If they are not, then the material would be discoverable.

The Rule states those circumstances under which work product is discoverable: "Only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means" may a party discover work product.[21] The immunity is qualified dependent upon a showing of hardship and of substantial need by the party seeking to discover evidence of pretesting.[22] The burden of showing that such materials

---

15. Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) (superseded by statute as stated in Hawkins v. District Court of Fourth Judicial District, 638 P.2d 1372 (Colo. 1982)) (This case spanned the "work product" immunity.). *See generally* Annotation, *Development, since Hickman v. Taylor, of Attorney's Work Product Doctrine*, 35 A.L.R.3d 412 (1971).
16. *Hickman*, 329 U.S. 495.
17. FED. R. CIV. P. 26(b)(3).
18. *Hickman*, 329 U.S. 495. It is a general policy that those materials prepared for litigation should be kept private, so that the attorney may better protect the interests of his clients. *Id.*
19. FED. R. CIV. P. 26(b)(3).
20. Bredice v. Doctors Hosp., 50 F.R.D. 249, 251 (D.D.C. 1970) (The presence of a lawyer is not a requirement; documents created and gathered by non-lawyers may be classified as work product.).
21. FED. R. CIV. P. 26(b)(3).
22. *Id.*

are crucial to the preparation of the case is on the party seeking their discovery.[23]

The party seeking to discover evidence of pretesting must also show that the equivalent materials are not obtainable without undue hardship.[24] In situations in which biased pretesting has occurred, the party seeking discovery can probably show that the material is crucial to the preparation of the case because it will show that the opposing party has been skewing the survey questions in order to produce biased statistics which would be introduced in court. In addition, evidence of pretesting is generally not obtainable from another source because the information is known only by the opposing counsel and his agent, the expert statistician who compiled the information.[25]

Because different standards for discovery of experts' opinions have evolved, courts treat some experts differently than others. Discovery of facts and opinions to which the expert is expected to testify in court is permitted under Federal Rule of Civil Procedure 26(b)(4)(A). Discovery of the pertinent facts and opinions of the expert, however, is preempted if it runs afoul of the work product immunity.[26] If the expert statistician is retained by counsel, but will not be called as a witness at trial, facts and opinions of the expert are discoverable only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[27] The only way to obtain a court order demanding discovery is in equity.[28] It is advisable, however, to serve a subpoena *duces tecum* upon the expert statistician in order to obtain documentation of the survey pretesting prior to seeking a court order to compel discovery. The party seeking the information must show that there is something more than mere speculation of

23. Rackers v. Siegfried, 54 F.R.D. 24, 26 (W.D. Mo. 1971).
24. *See, e.g.*, Bird v. Pennsylvania Cent. Co., 61 F.R.D. 43, 46-47 (E.D. Pa. 1973) (information in the exclusive control of the opposing party); Snead v. American Export-Isbrandsten Lines, Inc., 59 F.R.D. 148, 151 (E.D. Pa. 1973) (undue delay would result if disclosure not made); Hilton v. Contiship Corp., 16 F.R.D. 453 (S.D.N.Y. 1954) (A showing of undue hardship is met when witnesses become unavailable.); Naylor v. Isthmian S.S. Co., 10 F.R.D. 128, 129 (S.D.N.Y. 1950) (requesting party is financially unable to conduct an independent investigation).
25. Requests to produce documents illustrating the results of pretesting cannot be made of experts because they are not parties to the action. FED. R. CIV. P. 34. The only way to force a non-party to produce documents is to serve a subpoena *duces tecum* pursuant to Rule 45(b).
26. Bogasian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir. 1984).
27. FED. R. CIV. P. 26(b)(4)(B).
28. FED. R. CIV. P. 37.

biased pretesting.[29] Even when the survey's questions have been pretested, the statistics do not reveal any evidence of such pretesting. There is no way that an examination of the survey could reveal pretesting. Once biased pretesting has been shown, the party may argue that it is against public policy to disallow discovery of distorted information that may later be used at trial to mislead the court.

Discovering pretesting material is advantageous because it avoids spending time in court proving that the material submitted to the court as evidence is not authentic.[30] This Article does not discuss the evidentiary ramifications of biased pretesting of survey questions;[31] however, a discussion of the ethical ramifications is warranted.

### III. Ethical Ramifications of Pretested Surveys Used at Trial

The ABA Model Rules of Professional Conduct and the ABA Model Code of Professional Responsibility state that a lawyer shall not knowingly make a false statement of fact. The Model Rules provide that false statements shall not be made to a tribunal.[32] Similarly, the Code prohibits a lawyer from making any false statements in his representation of a client.[33] Under the Model Rules, if an attorney is aware of false evidence, he must inform the court.[34] At this point, the court may make a statement about the matter to the jury, order a mistrial, or do nothing.[35] Realistically, an attorney who needs an expert statistician to pretest survey questions is not going to inform the court. It is, therefore, up to other practicing attorneys to report such actions to the appropriate authorities.[36] This creates a problem

---

29. FED. R. CIV. P. 44(b).

30. *See* FED. R. EVID. 901(b)(8).

31. *See generally* C. MCCORMICK, MCCORMICK ON EVIDENCE ch. 22 (3d ed. 1984) (discussing authentication).

32. MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.3(a)(1), (4) (1983).

33. MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 7-102(A)(5) (1985); *see In re* Montrey, 511 S.W.2d 805, 806 (Mo. 1974) (misrepresenting facts to insured prohibited).

34. MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.3 comment (1983) (When false evidence is provided by a person who is not the client, such as an expert statistician, and the lawyer is aware that the evidence is false, the lawyer must refuse to use such evidence.).

35. *Id.*

36. LAWYERS MANUAL ON PROFESSIONAL CONDUCT (ABA/BNA) 101:201 (1984); *see also* Thode, *The Duty of Lawyers and Judges to Report Other Lawyers' Breaches of Standards of the Legal Profession*, 1976 UTAH L. REV. 95, 96; Marks & Cathcart, *Discipline Within the Legal Profession: Is it Self-Regulation?*, 1974 U. ILL. L.F. 193, 207; Note, *The Lawyer's Duty to Report Professional Misconduct*, 20 ARIZ. L. REV. 509, 515, 517 (1978).

when the attorneys aware of the ethical violation work in the same firm.

In *Attorney Grievance Commission v. Kahn*,[37] the Supreme Court of Maryland disbarred a lawyer who had knowledge of false and fraudulent documents that were filed with insurance companies by his firm.[38] The court held that the failure to report these actions constituted moral turpitude, and that misconduct involving moral turpitude warranted disbarment.[39] *Kahn* illustrates that there might be some incentive for reporting attorneys who violate the ethics codes by pretesting survey questions that skew the survey results. However, because biased pretesting is so difficult to detect, other attorneys who know of the pretesting may not report the lawyer violating the codes in this manner.

## Conclusion

Attorneys or their statisticians commonly pretest a survey in order to guarantee that the questions are understood by the survey's intended audience. Pretesting may also be used to guarantee a specific answer to a survey question, with the intent of altering the final results of the survey. Depending on the circumstances, evidence of pretesting may or may not be discoverable. If such material is not discoverable, the time and costs later expended in court will increase while trying to prove that such evidence is not authentic. Unfortunately, the courts have never dealt with this question, nor have they considered whether pretesting is unethical. Under the existing ethical rules, however, such actions may be reprimandable. The problem then becomes how to deter such actions and who should report such actions. Theoretically, all lawyers who have knowledge of such actions have the duty to report them. Realistically, many will not.

---

37. 290 Md. 654, 431 A.2d 1336 (1981).
38. *Id.* at 1350.
39. *Id.*