**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING MOTION TO AMEND COORDINATION ORDER

Plaintiffs respectfully object to the Magistrate Judge's Order[1] denying Plaintiffs' proposed amendment to the discovery coordination order originally entered in this case (the "Coordination Order").[2] That amendment would permit Plaintiffs to obtain copies of relevant deposition transcripts taken in a similar digital advertising technology lawsuit filed against Google by the State of Texas and its state co-plaintiffs (the "Texas Case"),[3] just as the Coordination Order already permits Plaintiffs to obtain deposition transcripts taken in the multidistrict litigation pending against Google in the United States District Court for the Southern District of New York (the "MDL"),[4] and just as the Coordination Order likewise permitted for the Texas Case before it was remanded from the MDL.[5]

Because fact discovery has already closed in this case, the proposed amendment would permit Plaintiffs to use those transcripts solely for the purpose of impeaching witnesses at trial,

---

[1] ECF No. 560; *see also* ECF No. 561 (4/19/2024 Hearing Tr.).

[2] Order Regarding Coordination of Discovery, ECF No. 251 (attached as Ex. 1).

[3] *State of Texas et al. v. Google LLC*, No. 4:20-cv-957 (E.D. Tex.) ("*Texas*").

[4] *In re Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (S.D.N.Y.) ("*MDL*").

[5] Plaintiffs have met and conferred with Google, and Google opposes the relief sought here.

1

just as the Coordination Order already allows for deposition transcripts obtained from the MDL.

Coordination Order, ¶ 6. The Coordination Order has always permitted this limited use of

deposition transcripts generated in coordinated cases after the close of fact discovery in this case.

Doing so permits equal access to impeachment material for all parties and avoids any party

gaining an unfair informational advantage by the happenstance of when discovery occurs. The

proposed amendment is needed to maintain this level playing field because although the Texas

Case was subject to the Coordination Order when it was originally entered—and throughout the

fact discovery period in this case—it ceased being subject to the Coordination Order once it was

remanded from the MDL in November 2023.[6] Thus, even though discovery has concluded in this

case, Google, represented by the same counsel, is currently engaged in extensive fact discovery

in both the Texas Case *and* the MDL that is relevant to testimony that will be offered in the trial

of this case in September.

      The Magistrate Judge's Order denying Plaintiffs' motion to amend the Coordination

Order was clearly erroneous. Principally, it failed to consider the prejudice to Plaintiffs of

allowing Google access to deposition testimony of up to 80 relevant witnesses—including third

parties who may be witnesses at trial in this case—without allowing Plaintiffs equivalent access

to such impeachment material. Such important information, currently available to Google but not

Plaintiffs, will necessarily inform Google's trial strategy in this case, such as which witnesses to

call and what topics to cover in their examination. The mere fact that the Texas Case was

---

[6] As explained further below, the Coordination Order contemplated but did not automatically
require coordination with a case remanded from the MDL because the timing of a remand
relative to this case might moot the need for coordination, such as a remand occurring after the
close of MDL discovery or a remand occurring after trial in this case has concluded.

remanded from the MDL after the Coordination Order was entered is not a justification for denying Plaintiffs equivalent access to such important impeachment material.

Further, the Magistrate Judge's Order failed to account for the inconsistent positions Google has taken regarding coordination of discovery between this case and the Texas Case. The Magistrate Judge was informed that while Google was opposing coordination in this Court, Google's counsel had only weeks earlier assured the court overseeing the Texas Case that Google "intend[s] to do everything that [it] can to . . . continue the effectuation of the existing coordination order that was entered in Virginia and the MDL." *Texas*, ECF No. 320, at 42:17-20. The Magistrate Judge was also aware that while Google was opposing coordination here it was seeking the benefits of such coordination in the Texas Case, issuing subpoenas for documents produced in this case in order use them in the Texas Case. The Magistrate Judge's Order failed to address the inherent inequity in allowing Google to reap the benefits of coordination when it serves their interests in the Texas Case while fighting to deny Plaintiffs the reciprocal benefits of coordination in this case.

This gamesmanship is still ongoing. Indeed, just two business days after the Magistrate Judge denied Plaintiffs' motion, Google, with no prior notice or conferral with Plaintiffs, filed a joint motion in the Texas Case asking that court to permit Google to reproduce in the Texas Case all third-party discovery materials obtained in this case, including documents gathered by the United States during its pre-complaint investigation of Google's conduct. *Texas*, ECF No. 402 (attached as Ex. 2). The material Google seeks permission to reproduce in the Texas Case is, of course, subject to this Court's Modified Protective Order. For the reasons stated in the United States' Statement of Interest filed in the Texas Case (*see Texas*, ECF No. 430, attached as Ex. 3), it is doubtful whether the text or spirit of this Court's Modified Protective Order permits Google

to use that material in the Texas Case without an amendment to the Coordination Order. Yet that fact did not stop Google from seeking the Texas Court's permission to use the discovery material obtained *in this case* to benefit Google *in the Texas Case*. For the same reason, there is little doubt that Google's counsel will similarly rely on information obtained *in the Texas Case* to structure their trial presentation *in this case*, despite the existence of a protective order in the Texas Case that might otherwise restrict their so doing. As explained below, it would be impossible for the same lawyers and law firms to put out of their mind the information learned from sworn testimony from the same witnesses in a related matter in crafting their trial strategy here. The Magistrate Judge's denial of Plaintiffs' motion to amend the Coordination Order failed to address the inherent prejudice to Plaintiffs in such asymmetrical coordination.

As detailed below, Plaintiffs are willing to accept modified relief in order to address the Magistrate Judge's stated concerns, including limiting the information obtained from the Texas Case to only depositions of witnesses on either side's initial disclosures in this case and agreeing not to share those deposition transcripts with the MDL Plaintiffs. Plaintiffs therefore respectfully request that the Court sustain these objections and grant their request, as modified if the Court deems appropriate.

## BACKGROUND

### A. The Coordination Order, Which Applied to the Texas Case at the Time It Was Entered, Struck an Appropriate Balance Between the Needs of All Parties.

To promote judicial efficiency between this case and related cases in other jurisdictions concerning Google's anticompetitive conduct in the digital advertising technology ("ad tech") industry, last year Plaintiffs and Google negotiated, and this Court ordered, a Coordination Order that provides for appropriate sharing and coordination of discovery between this case and the MDL. *See* ECF No. 251.

The Coordination Order is a thoughtful way to promote efficiency in taking discovery across the cases, address advantages and disadvantages to all parties from participating in different cases proceeding on different timelines, and ensure that cases with similar claims proceed to trial with a shared nucleus of consistent facts to minimize the risk of inconsistent judgments. The provisions of the Coordination Order (1) allow the sharing of documents produced in one case across all the cases; (2) require parties noticing depositions in one case to also serve the notices on counsel in the other cases that are still in a period of fact discovery; and (3) require that witnesses be deposed once (or during one two-day period) when their depositions are sought in multiple cases. Coordination Order, ¶¶ 2, 3.

The Coordination Order also provides that, even *after* the close of fact discovery in this action, Plaintiffs have the right to obtain directly from the court reporter the transcripts of depositions taken in the MDL so that Plaintiffs would not be disadvantaged by the fact that Google was still conducting discovery and taking depositions of relevant witnesses. Coordination Order, ¶ 6. This process does not require Google to do anything; the burden is entirely on Plaintiffs to obtain these transcripts. And because such depositions would be happening after the close of discovery here, the Coordination Order provides that neither Google nor Plaintiffs could use such deposition transcripts for any purpose other than impeachment. *Id.*

At the time the Coordination Order was negotiated and entered in this case, the Texas Case was part of the MDL and therefore subject to the terms of the Coordination Order.[7] It was

---

[7] Google has acknowledged that the Texas Case "will implicate the *same or similar documents, data, party witnesses, and third parties*" as this one. ECF No. 44-2, at 12 (emphasis added).

not until November 2023, after fact discovery was over in this case, that the Texas Case was

remanded, No. 23-910, ECF No. 101 (2d Cir.).[8]

**B.  During Fact Discovery in this Action, Google Benefited from the Coordination Order.**

The Coordination Order benefits all parties and non-parties. During fact discovery in this

case, Google benefited from the Coordination Order by streamlining depositions of its

employees and using discovery in this case to aid its defense in other cases. For example, the

Coordination Order allowed Google to schedule party depositions on consecutive days, avoid

party witnesses being deposed in multiple actions, and reproduce in the Texas Case and MDL

hundreds of thousands of documents from Plaintiffs' investigative materials, which Google now

can rely on in defending itself in both the Texas Case and the MDL.

**C.  The Coordination Order Expressly Contemplated the Potential Need for Future Amendment to Incorporate Remanded Cases.**

At the time the Coordination Order was being negotiated, the parties considered the

possibility that one or more cases from the MDL would be transferred out of the MDL. For that

reason, the final Coordination Order directed that: "If any case(s) currently part of the MDL are

transferred to other venue(s), the Parties in the Coordinated Cases *shall meet and confer* with the

parties to the transferred case(s) regarding *whether, and on what conditions*, the transferred

case(s) should be coordinated with the MDL and the Virginia Case." Coordination Order, ¶ 9

(emphasis added). This language was an acknowledgement that the practical necessity and

---

[8] Although the Judicial Panel on Multidistrict Litigation ordered remand of the Texas Case in June 2023, *see* MDL No. 3010, ECF No. 250 (J.P.M.L.), Google appealed that order to the Second Circuit. No. 23-910, ECF No. 1-2 (2d Cir.). After Google's appeal was denied, proceedings resumed in Texas on November 2, 2023. *See Texas*, ECF No. 151.

degree of coordination might depend on the posture of the case being remanded, not a suggestion that the benefits of coordinating cases in active discovery would be diminished by a remand.[9]

### D.  Plaintiffs' Diligent Efforts to Engage with Google and the Texas Plaintiffs Regarding Coordination Between this Case and the Texas Case.

In June 2023, the day after the Judicial Panel on Multidistrict Litigation issued its initial ruling remanding the Texas Case to the Eastern District of Texas, Plaintiffs emailed counsel for Google asking to meet and confer about coordination with the Texas Case upon remand. Ex. 4 (June 6, 2023 email from Ms. Wood to Google counsel). Google declined to meet and confer about coordination until after its appeal of the remand order was resolved.

On January 2, 2024 (after fact discovery was over in this case), the Texas Court issued a scheduling order in the Texas Case. *Texas*, ECF No. 194. That order set deadlines and discovery limits (including 40 fact depositions per side), and it ordered the Texas Plaintiffs and Google to meet and confer regarding coordination of discovery with the MDL and this case.

The Plaintiffs then worked with the Texas Plaintiffs and Google to develop a proposal for continuing appropriate coordination between this case and the Texas Case. Most importantly, the Texas Plaintiffs proposed to the Texas Court, at Plaintiffs' request, a provision stating:

> Notwithstanding the Protective Orders, Counsel for any Party and Virginia Plaintiffs' Counsel may obtain Transcripts and exhibits of Google Depositions, Party Depositions, and Non-Party Depositions taken in the States' Case or the MDL after the Fact Discovery Cutoff in the Virginia Case, the Fact Discovery Cutoff in the MDL, or the Fact Discovery Cutoff in the States' Case, directly from the court reporters for those depositions.

---

[9] The next sentence of the Coordination Order ("If all claims brought by an MDL Plaintiff are dismissed, transferred, or remanded, then that MDL Plaintiff shall be treated as a Non-Party for purposes of this Order after such dismissal, transfer, or remand.") explains how the plaintiff in the transferred case is treated in the interim—and also addresses how a plaintiff would be treated if all of its claims were dismissed (as opposed to remanded). Coordination Order, ¶ 9.

*Texas*, ECF No. 203-1, at 15. That provision was adopted in an order signed by Judge Sean D. Jordan, the presiding judge for the Texas Case, on February 26, 2024. *Texas*, ECF No. 266, at 14. However, by its terms, the order was to be effective only after it was entered in the MDL as well. *Id*. at 16.

> **E.   Judge Castel Declined to Order Coordination Between the Texas Case and the MDL but Said Nothing About Whether Plaintiffs Should Receive Deposition Transcripts from the Texas Case.**

The MDL Plaintiffs and Google both requested that Judge P. Kevin Castel, presiding over the MDL, enter this coordination order. *See MDL*, ECF Nos. 700, 706. On March 6, 2024, Judge Castel declined that request, stating concerns that coordinating deposition discovery with the Texas Case might slow down depositions in the MDL:

> Neither side has addressed the impact of the proposed Order on this Court's pre-existing and generous schedule for the completion of fact discovery. The Court does not anticipate extending the date for completion of fact discovery. With 80% of the fact discovery period having passed, discovery in this MDL should be winding down. *Now is not the time to start cross-notices of depositions in the action in the Eastern District of Texas*.

*MDL*, ECF No. 708 at 1 (emphasis added). Judge Castel did not express any concern with sharing discovery materials between the Texas Case and the MDL, much less between the Texas Case and this case.

In light of Judge Castel's ruling, which rendered the coordination order signed by Judge Jordan moot, the Plaintiffs asked the Texas Plaintiffs to convey to Judge Jordan the importance of implementing limited coordination between this case and the Texas Case. *See* Ex. 5 (March 20, 2024 email from Mr. Wolin to counsel for the Texas Plaintiffs). Counsel for the Texas Plaintiffs conveyed this statement to Judge Jordan during a March 21, 2024 hearing. *Texas*, ECF No. 320, at 38:2-39:1. In response, Google's counsel assured Judge Jordan that Google was committed to continued coordination with this case:

We've actually had productive discussions over the last two days where *Google has made it very clear to plaintiffs that as regards Virginia, we intend to do everything that we can to sort of continue the effectuation of the existing coordination order that was entered in Virginia and the MDL*. And we have made it very clear to plaintiffs that we are prepared to make Google -- continue to make Google's documents and data available and to otherwise coordinate with respect to that existing coordination order.

*Id*. at 42:15-23 (emphasis added).

### F.   Google Rebuffs Plaintiffs' Coordination Proposals But Attempts to Unilaterally Impose Sharing of Discovery from this Case with the Texas Case.

In light of Google's statements to the Texas Court about continued coordination, the Plaintiffs proposed on March 27, 2024 that the Plaintiffs, the Texas Plaintiffs, and Google agree to limited coordination between this case and the Texas Case that would permit the sharing of deposition transcripts originally permitted under the coordination order signed by Judge Jordan. Ex. 6 (March 27, 2024 email from Mr. Wolin to counsel for Google and the Texas Plaintiffs). Before meeting and conferring with Plaintiffs about that request, Google's counsel informed the Plaintiffs that Google intended to subpoena Plaintiffs "for their documents and depositions taken in the Virginia Action, to be reproduced in" the Texas Case. Ex. 7 (April 5, 2024 email from Ms. Xia to counsel for Plaintiffs). And in lieu of actual reproduction of those materials, Google sought "**only written permission to reproduce and use those materials from the Virginia Action in the Texas Action.**" *Id*. (emphasis in original).[10]

---

[10] Google has never explained how such "written permission" would allow them, under the Modified Protective Order entered in this case, to use Confidential and Highly Confidential information from this litigation in litigating other cases, absent the kind of amendment to the Coordination Order that Plaintiffs seek. *See, e.g.*, ECF No. 203, ¶ 24 (protected information "shall be used solely for the conduct of the Action").

### G.  Plaintiffs File the Instant Motion, Which Google Opposes, and the Magistrate Judge Denies.

Google did not accept Plaintiffs' proposal for limited coordination, and therefore Plaintiffs filed a motion with the Magistrate Judge on April 12, 2024 requesting to amend the Coordination Order. *See* ECF Nos. 550 & 551. Plaintiffs sought an amendment that would "treat the Texas case identically to the cases still in the [MDL] for purposes of the Coordination Order." ECF No. 551, at 2. Plaintiffs explained that good cause existed for extending the existing Coordination Order to the Texas Case because an extension would (1) provide Plaintiffs and Google equal access to the same deposition transcripts from the Texas Case, thereby maintaining the level playing field created by the original Coordination Order (*id*. at 7-9); (2) reduce the burden on Google, Plaintiffs, and third parties by eliminating the need to issue or respond to duplicative discovery requests; (*id*. at 9-10); (3) reduce the risk of inconsistent judgments by increasing the likelihood that both cases are decided on a consistent set of facts (*id*. at 10-11); and (4) not cause prejudice or burden to Google (*id*. at 11).

In response, Google argued primarily that Plaintiffs' motion sought to re-open discovery and would provide Plaintiffs with an asymmetric advantage by providing Plaintiffs with additional discovery materials obtained in the Texas Case while Google is unable to receive additional fact discovery in connection with this case. *See generally* ECF No. 553, at 5-10. Google's opposition did not dispute that Google has two law firms and at least ten individual attorneys who represent Google in both this case and the Texas Case. And it did not explain how Google's counsel could prevent themselves from inevitably considering information learned in depositions in the Texas Case to select their trial witnesses and craft their trial examinations in this case. Nor did Google dispute that its issuance of subpoenas in the Texas Case indicated that

Google was already applying information subject to the Modified Protective Order in this case to benefit Google in the Texas Case. *See generally* ECF No. 558 (Plaintiffs' reply brief).

On April 19, 2024, the Magistrate Judge denied Plaintiffs' motion after hearing argument from the parties. *See* 4/19/2024 Hearing Tr. at 22:14-15. As the basis for the ruling, the Magistrate Judge stated:

> First of all, you know, this coordination order was negotiated through a long and difficult process, and the parties agreed to certain provisions at that time. … The parties, you know, made an agreement at that point in time, and the agreement is specific, where it says that if a case gets transferred or remanded … the result of that was that the parties in that remanded case are going to be non-parties.
>
> …
>
> I'm not sure why, when this issue came up in November, we're now dealing with it in April on the eve of filing summary judgment motions and motions in limine and four months before the trial in this case.
>
> …
>
> I'm also concerned, to be honest with you – you know, the Texas case is a much different case now that it's in Texas than it was in the MDL.
>
> …
>
> And I'm concerned that the MDL Court has denied a similar request. … [F]or our Court to take a different position than the MDL Court, whether it could be used as a back door for the MDL plaintiffs or not, I think is an open issue.

*Id*. at 20:23-22:6; *see also* ECF No. 560 (ordering that "plaintiffs' motion is denied for the reasons stated from the bench").

### H.  After the Denial, Google Asks the Texas Court to Grant One-Way Coordination of Discovery Between This Case and the Texas Case.

After opposing Plaintiffs' request for coordination here, and two business days after the Magistrate Judge denied that request, Google filed a joint motion in the Texas Case seeking permission to reproduce all third-party documents obtained in this case—which are covered by the protective order in place in this action (ECF No. 203)—including materials from "the United

States's related pre-suit investigation into Google." *Texas*, ECF No. 402-1, at 1 (attached as Ex. 2). As justification for this approach, the motion cites "the absence of an operative coordination order" and that "the parties are currently unable to use in [the Texas Case] the relevant discovery materials produced by third parties in" this case. *Id*. at 1. In other words, Google sought in the Texas Case the same benefits it would have received from the amendment to the Coordination Order that Plaintiffs sought here, without providing Plaintiffs the reciprocal benefit of obtaining deposition transcripts from the Texas Case. With leave of the Texas Court, the United States filed a Statement of Interest requesting that Google be directed to raise its request for coordination relief in this Court, given that the proposed order in the Texas Case would result in the production of millions of documents covered by this Court's protective order. *See Texas*, ECF No. 430, at 2 (attached as Ex. 3). Google's joint motion remains pending in the Texas Case. A hearing on that motion will be heard in the Texas Case on Monday, May 6 at 10:00 am.

## LEGAL STANDARDS

When a non-dispositive matter is decided by a magistrate judge, "[a] party may serve and file objections to the order within 14 days," and the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under the "clearly erroneous" standard, a factual determination may be set aside "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Harman v. Levin*, 772 F.2d 1150, 1152-53 (4th Cir. 1985) (same); *Harrison v. Shanahan*, No. 1:18-cv-641, 2019 WL 2216474, at *4 (E.D. Va. May 22, 2019) (same). "Questions of law, on the other hand, are reviewed under the contrary-to-law standard, which is essentially synonymous with de novo review." *Harrison*, 2019 WL 2216474, at *4 (emphasis in original) (citing *U.S. Gypsum*, 333 U.S. at 594).

**ARGUMENT**

A core function of the Coordination Order was to mitigate the advantage Google enjoys by obtaining additional information relevant to this case through discovery in other, similar cases after discovery in this case has closed. The Coordination Order did so by guaranteeing Plaintiffs some limited access to discovery from those cases—most importantly, the ability to obtain deposition transcripts—and providing guidelines for how that discovery may be used in this case. This arrangement was ordered after careful negotiations and a balancing of the interests of the parties and court. And it is vital to ensuring a level playing field at trial in this case. Indeed, without it, Google's counsel would simply know more about what relevant witnesses, including third-party witnesses, will say under oath at trial due to Google's unique status as participant in all three cases while discovery has ended in this case.

Plaintiffs filed a motion to modify the Coordination Order simply to extend this arrangement—which applied to the Texas Case while it was part of the MDL—to the Texas Case now that it is proceeding separately. In contrast, Google seeks to take strategic advantage of the remand it spent months fighting by opposing amendment of the Coordination Order that would allow Plaintiffs' equal access to deposition discovery from the Texas Case while still seeking to compel the use in the Texas Case of extensive discovery materials obtained in this case. Simply put, Google seeks the benefits of coordination when it suits them, yet simultaneously seeks to deprive Plaintiffs of the equivalent protections it sought in connection with the Coordination Order in the first place. Plaintiffs respectfully submit that under these circumstances, the Magistrate Judge's order denying Plaintiffs' motion is clearly erroneous and contrary to law.

The Magistrate Judge's ruling erred by not addressing the core justification for Plaintiffs' motion: an uneven playing field at trial. That justification constituted good cause for entering the Coordination Order originally, and the remand of the Texas Case did not diminish its importance

to ensuring a fair trial here. Because the Magistrate Judge failed to consider this important issue, his ruling "provides no explanation" of why the Magistrate Judge believed this justification was insufficient good cause to amend the Coordination Order. *Wall v. Rasnick*, 42 F.4th 214, 221 (4th Cir. 2022) (remanding under clear error where, *inter alia*, "the magistrate judge's one-page order provides no explanation of how she reached this conclusion"); *see also Pennington v. Midland Credit Mgmt., Inc.*, No. 1:10-cv-112, 2010 WL 3187955, at *1-2 (E.D. Va. Aug. 9, 2010) (sustaining objections and reversing order compelling production of documents where the record demonstrated they were not "relevant or would lead to the discovery of relevant material" and the magistrate judge "did not elaborate on his reasoning" for finding otherwise); *United States v. Prokop*, No. 2:09-cv-22, 2012 WL 2375001, at *7 (D. Nev. June 22, 2012) ("The Magistrate Judge did not appear to consider the burden on the government of producing audit files of audits conducted before 2005. The Court therefore reverses the Magistrate Judge's Order with respect to production of the files of audits conducted before January 1, 2005."); *TransWorld Medical Devics, LLC v. Cleveland Clinic Foundation*, No. 3:18-cv-580, 2019 WL 6693704, at *2 (W.D.N.C. Dec. 6, 2019) (sustaining objections to Magistrate Judge's report and recommendation on motion to dismiss because the "the magistrate did not consider Plaintiffs' argument" that an alternative basis for a claim existed).

Instead, the Magistrate Judge's ruling was improperly based on an overly technical reading of the language of Coordination Order and whether it applied by its express terms to the Texas Case, rather than whether Plaintiffs had demonstrated good cause to amend it. In addition, the Magistrate Judge erroneously concluded that Plaintiffs' request to amend the Coordination Order was made too late, despite Plaintiffs' diligent efforts to protect their rights under the Coordination Order from the moment the Texas Case was remanded. Finally, the Magistrate

14

Judge's ruling rested on a misinterpretation of Judge Castel's order declining additional coordination between the MDL and the Texas Case. Judge Castel's order in no way supported the Magistrate Judge's concern that allowing Plaintiffs in this action to obtain deposition transcripts from the Texas Case might somehow thwart progress in the MDL. These fundamental errors, combined with the failure to consider properly the justification offered by Plaintiffs and the prejudice that would result from denying Plaintiffs' motion, make clear that the Magistrate Judge's ruling on this question was in error.

**A. The Magistrate Judge's Decision Ignores That Plaintiffs Will Be Prejudiced at Trial by Google Taking Additional Depositions in the Texas Case of Witnesses Who May Be Called at Trial in this Case.**

Several undisputed facts demonstrate that Plaintiffs will be prejudiced at trial unless limited coordination is extended to the Texas Case: First, Google is taking and participating in many additional depositions in the Texas Case. Second, at least some witnesses and entities have been noticed for deposition in the Texas Case that also appear on the parties' initial disclosures in this case, and therefore are potential witnesses at trial in this case. Third, Google's attorneys will be participating in those depositions, and two of Google's primary law firms in the Texas Case (Freshfields and Axinn) are also representing Google in this case (including at least ten individual attorneys who have appeared for Google in both cases). Fourth, due to the overlap in claims and issues, some of the information from the Texas Case depositions will be relevant to the issue presented at trial in this case. And fifth, Google's attorneys will inevitably have the opportunity to rely on the information they learn from the Texas Case in selecting trial witnesses and preparing trial examinations for this case. *See* ECF No. 551, at 7-8; ECF No. 558, at 6-7.

These undisputed facts lead to the unavoidable result that Google will have an undue advantage at trial because of the additional knowledge and impeachment material gained through conducting additional discovery in the Texas Case. That advantage is undue because it is based

only on the happenstance of the remand of the Texas Case. The Coordination Order was designed to eliminate that advantage, which is why deposition transcripts from the MDL must be shared with Plaintiffs, even after the close of fact discovery here. There is simply no basis in fairness or logic for applying a different rule to the Texas Case than currently applies to the MDL, especially given that the Texas Case was part of the MDL at the time that the Coordination Order was negotiated and entered. Without the amendment to the Coordination Order, Google's counsel will be permitted to choose party and third-party witnesses to call here based on information from the deposition transcripts obtained in the Texas Case. Google's counsel will also be able to structure their witness examinations at trial here to proffer, or avoid, the admissions contained in those deposition transcripts. In all, Google's counsel would be armed with significantly more information about the relevant witnesses and issues than Plaintiffs' counsel would be able to access. That advantage leads to an uneven playing field between the parties, which is inconsistent with the principle that a fair, adversarial system leads to a just result. *See In re BofI Holdings, Inc. Securities Litigation*, No. 15-cv-2324, 2021 WL 4460751, at *4 (S.D. Cal. Sep. 29, 2021) (holding that "asymmetrical access is unfair and contrary to the truth-seeking purpose of civil discovery" where defendants had "asymmetrical access" to deposition transcripts in related action because "[t]he same law firm, and some lawyers" represented defendant in both actions).

The solution to these challenges can be found in the balanced approach achieved by this Court's previous Coordination Order. Extending that order to cover (once again) the Texas Case is the only way to reliably ensure that Google cannot gain an unfair advantage from using discovery in the Texas Case to inform their trial strategy and examinations in this case. Such advantages cannot be balanced out by simply ordering Google's counsel not to make use of

information obtained through the Texas Case. *See id*. at \*5 (agreeing that because "Defendants and their counsel cannot unlearn what they already know," and thus reversing a magistrate judge's order because "allowing the June 15 Order to stand would give a 'tactical advantage' windfall to Defendants"). Doing so either invites sideshows at trial about the source of Google's knowledge or requires counsel to conveniently unlearn something, which is of course something that human beings cannot do. *See* ECF No. 551, at 8 n.2 (citing *PepsiCo., Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995), which recognized that an ex-employee would "inevitably" use his ex-employer's confidential information to inform work for a future employer, even when the ex-employee had signed a non-disclosure agreement). Nothing prevents Google from exercising its right as a litigant to ask questions at depositions in the Texas Case and the MDL, but at a bare minimum, Plaintiffs should be allowed access to the results of those undeniably relevant examinations. The safest and fairest course to achieve an equitable solution is to simply do what the Coordination Order already provides: give Plaintiffs equivalent access to the impeachment material obtained in related cases.

**B.  The Magistrate Judge's Decision Ignores the Burden Google is Placing on Plaintiffs and Third Parties of Responding to Duplicative Discovery Requests.**

In addition, the Magistrate Judge's decision erred by failing to remedy or account for the prejudice to third parties, Plaintiffs, and their constituent agencies of unnecessarily having to respond to duplicative discovery requests in the two cases. Reducing the burden of duplicative discovery on third parties was another key rationale for the Coordination Order, and the Magistrate Judge's decision does not address these burdens at all, let alone show how they are justified in light of any countervailing concerns. Again, the key facts are not in dispute: Google is actively seeking to re-use in the Texas Case discovery that was obtained through subpoenas issued in this case, including: (1) documents and depositions taken from third parties during

discovery in this case; (2) documents Plaintiffs produced to Google in this case which Plaintiffs had previously collected from third-parties in their pre-suit investigations of Google; (3) documents from Plaintiffs (including federal and state agencies) regarding their use of digital advertising; (4) depositions taken of witnesses from the same federal agencies seeking damages in this case; and (5) a deposition taken of the United States itself, as a plaintiff in this case.

Rather than consenting to an amendment of the Coordination Order that would permit the re-use of discovery from this case in the Texas Case without unnecessarily burdening third parties and the Plaintiffs, Google has instead resorted to "self-help" measures, such as duplicative subpoenas, in order to deny Plaintiffs the benefit of the discovery Google is conducting in the Texas Case (i.e., the deposition transcripts of relevant witnesses). In that regard, the Magistrate Judge's ruling also failed to consider the fundamental unfairness in allowing Google to obtain the benefit of one-way sharing of information from this case to the Texas Case by imposing additional burden on the Plaintiffs and third parties, while opposing Plaintiffs' proposal which would provide Google that same benefit in a manner that does not burden anyone, including third parties. *See Prokop*, 2012 WL 2375001, at \*7 (holding that a magistrate judge's decision was "clearly erroneous" because it failed to consider that complying with the order would be "unduly burdensome" for the government).

### C. The Magistrate Judge's Decision Is Premised on a Misinterpretation of Judge Castel's Order Denying Coordination Between the Texas Case and the MDL.

The Magistrate Judge also grounded his ruling on an illusory concern about discovery coordination that misconstrues Judge Castel's order and has no basis in the record. During the hearing, the Magistrate Judge voiced concern that granting Plaintiffs' motion would run counter to Judge Castel's order declining to allow further coordination between the MDL and the Texas Case. 4/19/2024 Hearing Tr. at 22:3-13. In particular, the Magistrate Judge expressed concern

18

that the proposed amendment to the Coordination Order would create "a back door" for MDL plaintiffs to obtain discovery materials from the Texas Case, which the Magistrate Judge erroneously concluded would be contrary to Judge Castel's denial of coordination between the MDL and the Texas Case. *Id.*

The only concern expressed in Judge Castel's order, however, was that further coordination of depositions between the MDL and Texas Case would slow down the depositions in the MDL and thereby jeopardize the ability of the MDL Plaintiffs and Google to complete discovery by June 28, 2024. *See MDL*, ECF No. 708, at 1. Nowhere in Judge Castel's order does he express any concern about the potential for coordination between the Texas Case and this case. Nor does Judge Castel suggest that discovery in the MDL would be slowed down by the production in this case of depositions transcripts in the Texas Case. The only concern expressed by Judge Castel was that: "Now is not the time [for the MDL Plaintiffs] to start cross-notices of depositions in [the Texas Case]." *Id.* at 1. Hence, there was no reasonable basis for the Magistrate Judge to conclude that granting Plaintiffs' motion would contravene Judge Castel's ruling. *See Wall*, 42 F.4th at 220 (ruling abuses discretion "when it relies on erroneous factual or legal premises").

### D. Concerns Expressed by Google and the Magistrate Judge Could Be Addressed by Minor Modifications to the Coordination Order.

The Magistrate Judge expressed concern about the differences between this case and the Texas Case and the possibility of discovery from the Texas Case being transferred to the MDL Plaintiffs through a "backdoor" channel. 4/19/2024 Hearing Tr. at 21:20-25, 22:2-13. And while the Magistrate Judge did not specifically refer to them, Google raised concerns in its opposition about the volume of new information potentially subject to sharing with this case. *See, e.g.*, ECF No. 553, at 2. Each of these concerns could be fully addressed by minor modifications to

Plaintiffs' proposed amendment of the Coordination Order, to which Plaintiffs are willing to consent. *See Dauel v. Bd. of Trustees of Elgin Cmty. Coll.*, No. 83-c-9370, 1986 WL 6097, at *3 (N.D. Ill. May 20, 1986) (sustaining "plaintiff's 'limited objection'" and modifying Magistrate Judge's recommendation "to the extent that plaintiff's limited objection has been sustained").

First, both Google and the Magistrate Judge questioned whether the Texas Case involves different issues than this case. ECF No. 553, at 4, 6-7; 4/19/2024 Hearing Tr. at 21:20-25. This suggestion is inaccurate, and contradicted by Google's own previous arguments to this Court.[11] But to the extent there are any substantive differences, that concern could be addressed by limiting the sharing of deposition transcripts from the Texas Case to witnesses or entities that already appear on either parties' initial disclosures.[12] Plaintiffs are amendable to this restriction and implementing it would ensure that only transcripts from relevant witnesses would be shared and that coordination would introduce no "new" witnesses or issues to this case.

Second, there is a simple remedy to any concern of deposition transcripts being shared from the Texas Case to the MDL through a "backdoor": expressly requiring that Plaintiffs *not* share any deposition transcripts or other materials obtained from the Texas Case with the MDL Plaintiffs. Again, Plaintiffs are amendable to this additional restriction.

---

[11] Google has asserted that this case is simply "DOJ['s] Own Version of the Texas Case" and that both cases "allege the same facts, relevant markets, and claims, and seek the same relief"; "share the same factual nucleus of shared documents"; "[a]nd they will implicate the *same or similar documents, data, party witnesses, and third parties as they progress through discovery*." ECF No. 44-2 at 10-12 (emphasis added).

[12] *See generally Britt v. Livanova Holding USA Inc.*, No. 6:18-cv-3117, 2022 WL 3053753, at *2 (D.S.C. Aug. 2, 2022) (granting "Plaintiffs' request for identification and production of deposition transcripts and exhibits from non-MDL cases related to [the device and medical treatment at issue]"); *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 608 (E.D. Ky. 2011) (ordering production of "deposition transcripts of Plaintiff's employees who have testified in similar litigation" where the "actions involv[e] similar claims").

Third, to limit the volume of information shared from the Texas Case into this case, Plaintiffs are willing to limit their request to just deposition transcripts and exhibits. The Coordination Order currently also allows the sharing of *documents* from the MDL with Plaintiffs notwithstanding the close of fact discovery in this case. But Plaintiffs are willing to forego this provision with respect to the Texas Case. Thus, at the very most, the volume of new information shared with this case is 80 deposition transcripts and exhibits—but in reality it will be less, given that at least some of the depositions in the Texas Case will likely be of witnesses or entities not previously listed in the parties' initial disclosures in this case.[13]

While extending the entire existing Coordination Order to the Texas Case was a simple approach that unquestionably preserved both the rights and responsibilities of all parties, Plaintiffs now propose narrowing their request to address the concerns of the Magistrate Judge and Google, such that (1) it would apply only to depositions transcripts, not documents; (2) would apply only to witnesses or entities which already appear on either parties' initial disclosures in this case (including all supplements thereto); and (2) Plaintiffs would be prohibited from sharing any such deposition transcripts or exhibits with the MDL Plaintiffs.

## CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court sustain their objections to the Magistrate Judge's order of April 19, 2024 and grant their motion, with the modifications described above to address the concerns expressed in the Magistrate Judge's ruling.

---

[13] While the parties in the Texas Case can take up to 40 depositions per side, the actual number of depositions taken may be materially less because both sides can cross notice the same witness.

Dated: May 3, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
MICHAEL E. WOLIN
AARON M. TEITELBAUM

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov
Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Tyler T. Henry
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of
Virginia and local counsel for the
States of Arizona, California,
Colorado, Connecticut, Illinois,
Michigan, Minnesota, Nebraska, New
Hampshire, New Jersey, New York,
North Carolina, Rhode Island,
Tennessee, Washington, and West
Virginia