UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES, *et al.*,

    *Plaintiffs*,

vs.

GOOGLE LLC,

    *Defendant*.

No. 1:23-cv-00108-LMB-JFA

# GOOGLE LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE UNITED STATES' DAMAGES CLAIM AS MOOT AND TO STRIKE THE JURY DEMAND

## INTRODUCTION

Civil antitrust cases brought by the United States have historically been tried to the bench—not to a jury. Yet in this case, the Department of Justice ("DOJ") is asking the Court for a jury trial, breaking with all historical precedent, even though the relief it seeks is overwhelmingly equitable and even though its allegations are, in DOJ's words, "highly technical, often abstract, and outside the everyday knowledge of most prospective jurors." Pls.' Mot. for Status Conference, ECF No. 517 at 7-8 (quoting DOJ counsel). To secure this unusual posture, several weeks before filing the Complaint, on the eve of Christmas 2022, DOJ attorneys scrambled around looking for agencies on whose behalf they could seek damages. And while its Complaint initially referenced agency purchases of $100 million, First Am. Complaint, ECF No. 120 ("FAC") ¶ 278, DOJ has only been able to muster a damages estimate of between ▬▬▬▬▬▬▬▬▬—substantially less than Plaintiffs have spent on expert fees alone. *See* Ex. 14, App. E, Fig. 19. These tactics to avoid a bench trial will not work because the law precludes a jury trial in this case for two reasons: first, a sovereign such as the United States has no right to a jury trial under the Seventh Amendment, even for its damages claim;

1

and second, although Google continues to vigorously contest liability, its tender of full monetary relief moots the damages claim and streamlines the litigation.[1]

**Seventh Amendment**: The Sherman Act does not accord parties a right to a jury trial, and so the DOJ must find a jury-trial right in the Seventh Amendment. But the Seventh Amendment, enshrined in the Bill of Rights, protects *citizens* against the federal government, not the other way around. To determine whether the Seventh Amendment guarantees a party the right to a jury, courts must evaluate how comparable claims would have been tried under English common law when the Bill of Rights was ratified. *Tull* v. *United States*, 481 U.S. 412, 417 (1987). Blackstone's Commentaries and other historical sources indicate that comparable damages suits brought by the English Crown in 1791 would have been heard by a judge not a jury. At the very least, there is "no established jury practice sufficient to support an argument by analogy" that antitrust damages actions brought by the United States should be tried to a jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 380 (1996). Google is aware of no case in American history where a civil suit brought by the United States pressing only antitrust claims was tried to a jury. The unprecedented nature of DOJ's jury demand weighs heavily against extending the Seventh Amendment jury trial right to the government here.

**Mootness**: To prevent the tail from wagging the dog, Google has tendered the United States a cashier's check for the full monetary damages it seeks.[2] This actual payment has mooted any claim for damages based on the Supreme Court's decision in *Campbell-Ewald Co.* v. *Gomez*, 577 U.S. 153 (2016). *See id.* at 166 (holding that the defendant's *offer* to pay did not moot the case, but reserving the question whether *actual payment* would have); *id.* at 683 (Roberts, C.J., dissenting) ("this case is limited to its facts" because "payment of complete

---

[1] The United States' claim for damages separately and independently fails for the reasons stated in Google's Motion for Summary Judgment. Google files this motion now to ensure that the Court is aware of each of the reasons that DOJ's demand for a jury fails.

[2] Mootness is a jurisdictional issue and must be considered by the Court before other damages-related arguments are considered.

relief" requires dismissal of a claim as moot); *accord id.* at 186 (Alito, J., dissenting). As a unanimous Sixth Circuit panel recently held, the tender of complete relief requires dismissal of a damages claim as moot because there is no longer any case or controversy as to damages, a prerequisite for Article III jurisdiction. *Jarrett* v. *United States*, 79 F.4th 675, 679-80 (6th Cir. 2023). The party urging mootness in the Sixth Circuit was none other than the United States, which argued emphatically that the tender of complete relief moots a damages claim, and the United States assured the court that the same mootness rule would apply if the parties' positions were reversed. *Id.* at 682 (noting the government's representation that "full, unconditional payment" would moot the dispute "regardless of whether it comes from the taxpayer or from the government").

Google continues to dispute liability and welcomes a full resolution by this Court of all remaining claims in the Complaint. While the tender moots the claim for damages, questions of liability and equitable relief on the United States' remaining claims should be fully considered and decided by the Court, either through dispositive motion practice or at trial.

Accordingly, Google respectfully moves to strike the United States' jury demand under Federal Rule of Civil Procedure 39(a)(2) and to dismiss Count V of the Complaint—the sole claim for damages—as moot pursuant to Federal Rule of Civil Procedure 12(h)(3).

## **BACKGROUND**

The eighteen Plaintiffs started this case with ambitious allegations requesting sweeping injunctive relief, including "the divestiture of, at minimum, the Google Ad Manager suite" as well as "additional structural relief." FAC ¶ 342. In addition to seeking this equitable relief, the United States tacked onto its complaint a fifth and final claim for damages. Without identifying any particular violation that caused damages, DOJ alleged that "Google's violations of the Sherman Act have caused the United States to incur monetary damages." *Id.* ¶ 341. DOJ argued that certain federal agencies—although not all were identified in the complaint and have

3

REDACTED VERSION

since been referred to as the Federal Agency Advertisers ("FAAs")—"had incurred monetary damages" from "purchas[ing] in excess of $100 million in open web display advertising." *Id.* ¶ 278. Only DOJ has asserted a claim for damages; the seventeen State Attorneys General who have joined this suit have not asserted claims for damages and therefore are not seeking a jury trial.

DOJ's damages case has fallen well short of its original description. Through discovery, Google learned that DOJ's damages claim was an afterthought. Despite conducting a three-year investigation, DOJ first inquired about federal agencies' " ▌ ▌ through a flurry of emails the month before filing suit. Ex. 1 (listing emails dating at the earliest to December 23, 2022).[3] Several of the FAAs testified that these emails, right before Christmas, were the first involvement they had in the litigation. *See, e.g.*, Ex. 2 at 9:10-21 (dating the Army's involvement to "late winter" 2022); Ex. 15 at 54:15-55:18 (describing the December exchange as the beginnings of the Air Force's involvement); Ex. 3 at 249:15-250:2 (dating involvement of CMS to winter 2023). The remainder of the FAAs were unaware that DOJ would seek damages on their behalf until the Complaint was filed or later.[4] And none of the FAAs reached out to DOJ expressing concerns about anticompetitive conduct.[5] With respect to Google products, the FAAs testified that: "the combination of Google and all of our advertisers helped us obtain our goals," Ex. 4 at 298:20-299:3; they "found lots of value in many of the Google buys that we have done," Ex. 18 at 212:11-12; and "the efficiency of that

---

[3] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

[4] *See* Ex. 4 at 61:6-62:8 (dating awareness to "when [DOJ] actually filed the suit"); Ex. 5 at 18:10-14 (dating awareness to "after the filing of the complaint"); Ex. 6 at 74:4-17 (dating involvement to "most likely early January of 2023"); Ex. 16 at 74:15-20, 81:1-19 (dating awareness to February 2023); Ex. 7 at 81:7-82:4 (dating awareness to February or early March).

[5] Ex. 4 at 63:5-11, 64:3-9 (Census); Ex. 8 at 108:15-21 (Census); Ex. 17 at 139:3-8 (USPS); Ex. 3 at 221:30-222:3 (CMS); Ex. 18 at 210:22-211:23 (Navy); Ex. 2 at 17:2-18:9 (Army); Ex. 9 at 319:19-320:2 (NHTSA); Ex. 10 at 267:16-268:5 (VA); Ex. 19 at 255:6-13 (Air Force).

platform was more beneficial to the Army than other channels . . . than other platforms," Ex. 11 at 206:17-207:5. NHTSA recommended ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 12 at -223.

Similarly, through discovery, DOJ's claimed amount of damages has gradually disintegrated. DOJ's Complaint originally referenced purchases of $100 million, and its initial disclosures reported it would calculate damages based on an "estimat[e]" that the FAAs "have spent over $300 million on open web display advertising during the relevant time period." Ex. 2 to Def.'s Mot. to Compel, ECF No. 408-2 at 28-29. After Google moved to compel a calculation of damages, Def.'s Mot. to Compel, ECF No. 406, and the Magistrate Judge ordered DOJ to provide supplemental interrogatory responses explaining its calculation, 09/15/23 Hearing Tr., ECF No. 447 at 23:25-25:1, DOJ finally served interrogatory responses attaching a specific number to its damages request, estimating damages between ▮▮▮ and ▮▮▮▮▮▮ (before trebling and pre-judgment interest). *See* Ex. 13 at 9. Following expert discovery, that number shrank considerably. DOJ presented two experts related to damages—Dr. Timothy Simcoe, who calculated the alleged overcharge percentage rate allegedly paid by the FAAs, and Ms. Adoria Lim, who calculated that the United States has suffered damages of only between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (before trebling and pre-judgment interest). Ex. 14, App. E, Fig. 19.[6]

Although Google continues to vigorously contest liability, including the damages claim that the United States added at the eleventh hour to secure a jury trial, Google has voluntarily tendered to the United States payment for the full amount of monetary relief it could receive in

---

[6] As Google explained in its Motion to Exclude the Testimony of Dr. Timothy Simcoe, Dr. Simcoe's opinions should be excluded as unreliable under *Daubert*. If Google's *Daubert* motion against Dr. Simcoe is granted, then DOJ has no evidence in support of its damages claims, and the Court should strike DOJ's jury demand on this independent basis.

this case in order to streamline the issues at trial. A copy of the check, and the accompanying letter to Mr. Walt Cain, Executive Officer of the Antitrust Division, United States Department of Justice, explaining the tender of the check are attached. *See* Exs. 20, 21. On May 16, 2024, the check and the letter were delivered to the Department of Justice. *See* Declaration of Nick Alvarez.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 39(a)(2) permits a party to move to strike a counter-party's jury demand when the party demanding a jury trial has no such right. Fed. R. Civ. P. 39(a)(2); *Francis* v. *Dietrick*, 682 F.2d 485, 487 (4th Cir. 1982). Rule 39 "does not include a time limit," and "nothing prevents the court from granting a Motion to Strike brought pursuant to [Rule] 39(a) where, as here, the parties are months away from trial." *Fluor Enters., Inc.* v. *Mitsubishi Hitachi Power Sys. Ams., Inc.*, 2019 WL 1620755, at *5 (E.D. Va. Apr. 16, 2019); *see also FN Herstal SA* v. *Clyde Armory, Inc.*, 838 F.3d 1071, 1090 (11th Cir. 2016) (noting that there is no time limit to a motion to strike a jury demand under Rule 39(a)(2)).

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Carter* v. *Fleming*, 879 F.3d 132, 136-37 (4th Cir. 2018). A case is moot when "the parties lack a legally cognizable interest in the outcome." *Id.* at 137 (quoting *Chafin* v. *Chafin*, 568 U.S. 165, 172 (2013)). "If the court determines at any time that it lacks subject-matter jurisdiction" over a claim, including because the claim is moot, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3). "Because the requirement of a live controversy applies independently to each form of relief sought, it is appropriate to address each form of relief separately." *McArthur* v. *Braband*, 610 F. Supp. 3d 822, 835 (E.D. Va. 2022) (Brinkema, J.). Challenges to subject-matter jurisdiction may be heard "at any time." Fed. R. Civ. P. 12(h)(3).

REDACTED VERSION

# ARGUMENT

## I. The Court Should Strike the United States' Demand for a Jury Trial Because the Seventh Amendment Does Not Entitle the United States to a Jury in This Case.

Entitlement to a jury trial must derive from a statute or from the Seventh Amendment. *See Lehman* v. *Nakshian*, 453 U.S. 156, 165 n.13 (1981). No statute provides the right to a jury in Sherman Act cases. Therefore, any right to a jury trial must be derived from the Seventh Amendment.

The Seventh Amendment undisputedly provides no constitutional jury-trial right for the DOJ's equitable claims. *See Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33, 41 (1989) (jury-trial right does not attach to claims "where equitable rights alone were recognized, and equitable remedies were administered"). The question, therefore, is whether the Seventh Amendment accords the United States a right to a jury trial on its damages claim (Count V in the First Amended Complaint). It does not.

### A. The Historical Record Indicates that the United States Has No Jury-Trial Right in this Case.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Amendment does not create a jury-trial right, but instead preserves "the right which existed under the English common law when the Amendment was adopted." *Balt. & Carolina Line, Inc.* v. *Redman*, 295 U.S. 654, 657 (1935). "To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought." *Tull* v. *United States*, 481 U.S. 412, 417 (1987). "There is no jury trial right if historically the issue would have been heard in an equity court or otherwise would have been tried without a jury." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2302 (4th ed. Apr. 2023 update) ("Wright &

Miller"). The ultimate question is whether a jury is necessary "to preserve the substance of the common-law right as it existed in 1791." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996).

In 1791 when the Bill of Rights was ratified, the historical record suggests that suits by the English Crown (the analogue to the United States) seeking damages would have been decided by a judge. As explained in the accompanying declaration of Professor John Hudson, a distinguished expert in English legal history at the University of St. Andrews in Scotland, submitted pursuant to Federal Rule of Civil Procedure 44.1, a damages suit by the Crown would not ordinarily have been heard by a jury at common law. Declaration of Professor John G.H. Hudson ("Hudson Decl.") ¶ 16 ("[T]here is good reason to conclude that claims brought by the Crown for damages against a subject in a complex case in the eighteenth century would have been heard by a judge and not by a jury.").

In reaching that conclusion, Professor Hudson looks to the authoritative 18th-century treatise on English law—William Blackstone's Commentaries on the Law of England, which was published less than two decades before the ratification of the Seventh Amendment and which the Supreme Court has repeatedly cited in evaluating the Seventh Amendment's scope. *See, e.g.*, *Tull*, 481 U.S. at 420; *Ross* v. *Bernhard*, 396 U.S. 531, 534 n.2 (1970); *Cap. Traction Co.* v. *Hof*, 174 U.S. 1, 17 (1899).[7] As Professor Hudson explains, an action by the Crown would have been adjudicated through a procedure called "information" in the Court of Exchequer. Hudson Decl. ¶ 12. Reviewing the reported cases from the Court of the Exchequer, Professor Hudson found "no indication that cases brought by the Crown against a private individual for damages would have gone to a jury." *Id.* ¶ 14. To the contrary, given the

---

[7] *Accord Jarkesy* v. *SEC*, 34 F.4th 446, 453 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023); *Full Spectrum Software, Inc.* v. *Forte Auto. Sys., Inc.*, 858 F.3d 666, 676 (1st Cir. 2017); *United States* v. *Stanfill El*, 714 F.3d 1150, 1154-55 (2d Cir. 2013); *Johansen* v. *Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999); *United States* v. *One 1976 Mercedes Benz 280S*, 618 F.2d 453, 468-69 (7th Cir. 1980).

8

"significant range of activities" within the equitable jurisdiction of the Court of Exchequer and the "evidence that complex cases for damages would have been tried by a single judge rather than a jury," Professor Hudson concludes that complex damages actions brought by the Crown against a subject would likely be heard by a judge. *Id.* ¶¶ 14-16. At the very least, this history shows there is "no established jury practice sufficient to support an argument by analogy" that damages actions brought by the United States should be tried to a jury. *Markman*, 517 U.S. at 380.

Nor can DOJ credibly maintain that its damages claim must be tried to a jury to retain the "substance of the common-law right as it existed in 1791" that the Seventh Amendment sought to "preserve." *Id.* at 376. The Seventh Amendment is part of the Bill of Rights, adopted to protect "<u>personal</u> rights against <u>federal</u> encroachment." *McDonald* v. *City of Chicago*, 561 U.S. 742, 765 (2010) (quoting *Malloy* v. *Hogan*, 378 U.S. 1, 10 (1964)). Interpreting the Bill of Rights to grant the United States rights <u>against</u> private parties would get things exactly backwards. What is more, "it has long been settled that the Seventh Amendment right to trial by jury" does not apply to plaintiffs suing the United States for damages. *Lehman*, 453 U.S. at 160; *see also Williams* v. *Shipping Corp. of India*, 653 F.2d 875, 882-83 (4th Cir. 1981). Given the purpose of the Bill of Rights, it would be especially problematic to interpret the Seventh Amendment to subject private parties to a jury trial when they are sued by the federal government, even though they would not be entitled to a jury trial if the roles were reversed. If the Seventh Amendment entitled the United States to a jury trial, it would mean DOJ could demand a jury in its trial against Google, but, if Google filed counterclaims in the same case, Google could not demand a jury trial on those counterclaims. *See Galloway v. United States*, 319 U.S. 372, 388 (1943) ("It hardly can be maintained that under the common law in 1791 jury trial was a matter of right for persons asserting claims against the sovereign."); *cf. Okla.*

*Tax Comm'n* v. *Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991) (governments retain sovereign immunity as to counterclaims even where they bring suit).

For these reasons, a district court in the Fourth Circuit long ago rejected the argument that the Seventh Amendment entitles the United States to a jury trial. The court explained that the "first ten amendments were intended to protect the people from governmental aggressions" and it would be "a mere perversion of the purpose and intent of the Seventh Amendment to contend that it gives the government a right to a jury trial in any case." *United States* v. *Griffin*, 14 F.2d 326, 326-27 (W.D. Va. 1926). The Seventh Amendment "imposes an <u>obligation</u> on the government as plaintiff to submit to a trial by jury in certain classes of cases at common law," but it does not grant the United States the right to force a defendant to submit to a jury trial where the jury trial right belongs to the defendant. *Id*.

### B. Practical Considerations Weigh Against a Jury-Trial Right.

Even if the historical inquiry were inconclusive, practical considerations strongly militate against extending the Seventh Amendment to give the government a right to a jury trial in this suit. *See Markman*, 517 U.S. at 388 ("Where history and precedent provide no clear answers, functional considerations also play their part in the choice between judge and jury."). The Supreme Court has explained that "the practical abilities and limitations of juries" are relevant in evaluating whether a particular claim should be tried to a jury. *Ross*, 396 U.S. at 538 n.10. One such consideration is whether "one judicial actor is better positioned than another to decide the issue in question." *Markman*, 517 U.S. at 388.

The Fourth Circuit has made clear that the "complexity" of a suit weighs in favor of resolution by a judge rather than a jury. *Malbon* v. *Pa. Millers Mut. Ins. Co.*, 636 F.2d 936, 940 n.11 (4th Cir. 1980); *accord Gen. Tire & Rubber Co.* v. *Watkins*, 331 F.2d 192, 197 (4th Cir. 1964) (holding that "the technicalities involved in determining the issues of patent validity" "militate against . . . trial by jury" in the context of a Rule 39(b) motion); *see also In*

10

REDACTED VERSION

*re Japanese Elec. Prods. Antitrust Litig.*, 631 F.2d 1069, 1084-85 (3d Cir. 1980) (noting due process concerns of "fundamental importance" that are relevant in evaluating entitlement to a jury given that the "possibility of an erroneous and erratic jury verdict" in highly "complex" cases is "anything but remote").

Accounting for complexity in determining a party's entitlement to a jury comports with English common law. When the Seventh Amendment was ratified, the common law recognized that particularly complex cases should be resolved by judges rather than juries. *See* Patrick Devlin, *Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment*, 80 Colum. L. Rev. 43, 68 (1980) (discussing this history of judges hearing legal claims in equity and offering as an example that "it is unquestionable that by 1791 [writs of] accounts were being taken in equity simply because they were complicated"); James Oldham, *Trial by Jury: The Seventh Amendment and Anglo-American Special Juries* 24 (2006). Alexander Hamilton alluded to this practice in The Federalist Papers, noting the existence of "questions too complicated for a decision" by a "trial by jury." Federalist No. 83 at 528 (A. Hamilton) (B. Wright ed. 1961). Professor Hudson likewise explains that, at common law, the complexity of a suit would have been relevant to whether the suit was brought before a judge or jury. *See* Hudson Decl. ¶ 15.

Practical considerations confirm that this case should be tried to the Court. The 151-page complaint describes a complicated, intricate technology ecosystem, which DOJ has acknowledged to this Court is "highly technical, often abstract, and outside the everyday knowledge of most prospective jurors." Pls.' Mot. for Status Conference, ECF No. 517 at 7-8 ("even by the standards of an antitrust action, this case is unusually complex"). It alleges a sprawling course of conduct, much of which consists of highly technical auction designs that allegedly contribute to antitrust violations—all of which will require the factfinder to review economic analyses and apply nuanced legal standards to technically complex facts. DOJ has

previewed that a "meaningful portion of [its] trial time will necessarily be spent educating the jury." *Id*. at 6. These facts militate strongly in favor of trying this case to the Court rather than a jury.

### C. Precedent Reinforces that No Jury-Trial Right Attaches Here.

As far as Google has been able to determine, this would be the first time in American history the United States would be deemed to have the right to a jury in a case alleging only civil antitrust claims. The "longstanding practice of the government" in declining to seek a jury trial in Sherman Act cases weighs heavily against the DOJ's novel jury demand here. *NLRB* v. *Noel Canning*, 573 U.S. 513, 525 (2014); *see also Free Enter. Fund* v. *Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010) (noting that "lack of historical precedent" is a "telling indication" that the authority asserted does not exist).

## II. The Court Should Dismiss Plaintiff United States' Damages Claim as Moot.

DOJ's damages claim must be dismissed for the reasons explained above and in Google's motion for summary judgment. But rather than require the court to wade into DOJ's uncharted and unwarranted demand for a jury trial, and to prevent the waste of resources that would result from defending against a damages claim worth far less than a fraction of the cost of litigation, Google has tendered the United States payment of the full amount of damages it seeks, trebled, plus prejudgment interest. Google has done so even though it emphatically disputes its liability, as is the norm in comparable cases mooting damages claims upon the tendering of complete monetary relief. Since the tender of complete relief means DOJ no longer has any cognizable interest in its damages claim, the claim must be dismissed as moot, and DOJ's jury demand must be stricken.

Because a "court is deprived of jurisdiction over a case when the case becomes moot," the Court must dismiss DOJ's damages claim on this basis before reaching the other reasons it is deficient. *Williams* v. *Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013); *see also Tolle* v. *Northam*,

REDACTED VERSION

2021 WL 3216467, at *5 (E.D. Va. July 29, 2021) (dismissing an action that had become moot for lack of subject-matter jurisdiction "without considering whether the complaint would have survived a motion to dismiss").

**A. The Tender of Actual Payment Moots a Claim For Damages.**

A party's unconditional tender of complete relief moots a claim for damages because "it makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology* v. *United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *see also McArthur*, 610 F. Supp. 3d at 835 (noting mootness "can happen when the facts or law underlying the case change, including 'when the claimant receives the relief he or she sought to obtain through the claim'" (quoting *Simmons* v. *United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011))).

*Jarrett* v. *United States*, 79 F.4th 675 (6th Cir. 2023), is instructive. There, the plaintiffs filed suit seeking a tax refund, and during the suit, the government issued the plaintiffs a check for the full amount of damages sought plus interest. *Id.* at 677. The government's payment mooted the case because granting the plaintiff "the full sum without stipulation or condition" "gives the plaintiff all the relief she could receive, and as a result moots any claim for damages." *Id.* at 678. Unlike an offer alone, which leaves a claim "live," when a plaintiff "receives the relief [it] requested," its "cause of action has ceased to exist." *Id.* at 679. The Sixth Circuit reached this conclusion at the urging of the United States, which argued that "full payment of a claim moots a suit for the recovery of the claimed amount." Brief for Appellee United States, *Jarrett* v. *United States*, 2023 WL 2825353, at *26-*30 (6th Cir. Mar. 30, 2023) (No. 22-6023). The United States further insisted that a "plaintiff may not prolong a case merely by refusing to accept a valid tender." *Id.* at *30.

"Numerous" other courts, including district courts in the Fourth Circuit, agree "that tender of complete relief moots a claim for damages." *Jarrett*, 79 F.4th at 679 (collecting

cases); *see also Kuntze* v. *Josh Enters., Inc.*, 365 F. Supp. 3d 630, 642 (E.D. Va. 2019) (tendering check to plaintiff mooted Fair Labor Standards Act claim because "when an individual plaintiff receives complete relief for her claims, that plaintiff no longer has a live case or controversy"); *Price* v. *Berman's Auto., Inc.*, 2016 WL 1089417, at *2 (D. Md. March 21, 2016) (tender of full statutory recovery mooted claim); *Gray* v. *Kern*, 143 F. Supp. 3d 363, 367 (D. Md. 2016) (similar), *vacated on other grounds*, 702 F. App'x 132 (4th Cir. 2017).[8]

The conclusion of these courts follows from a question left open by the Supreme Court in *Campbell-Ewald Co.* v. *Gomez*, 577 U.S. 153 (2016). There, the Court held that an "offer" of complete relief does not moot a claim for damages if the offer is "unaccepted." *Id.* at 156. The Court, however, reserved the question whether a defendant may moot a claim by "depositing the full amount of the plaintiff's individual claim in an account payable to the plaintiff" or by otherwise tendering complete relief to the plaintiff. *Id.* at 166. In dissent, the Chief Justice, joined by Justices Scalia and Alito, explained that the case was "limited to its facts" because "*payment* of complete relief"—such as by "deposit[ing] the offered funds with the District Court" or otherwise guaranteeing payment—requires dismissal of a claim as moot. *Id.* at 184 (Roberts, C.J., dissenting); *see also id.* at 188 (Alito, J., dissenting) ("Today's decision thus does not prevent a defendant who actually pays complete relief—either directly to the plaintiff or to a trusted intermediary—from seeking dismissal on mootness grounds."). The majority did not dispute that actual payment of complete relief would moot a case, but

---

[8] *Bennett* v. *Office of Federal Employee's Group Life Insurance*, 683 F. App'x 186 (4th Cir. 2017) (per curiam), does not provide otherwise and, in any event, is not binding precedent because it is unpublished. District courts in the Fourth Circuit have expressly recognized as much. In *Kuntze* v. *Josh Enterprises, Inc.*, 365 F. Supp. 3d 630 (E.D. Va. 2019), for example, the court explained that the *Bennett* court "did not comment on what would happen if the check were not returned or if the defendant had made a more guaranteed form of payment, such as a cashier's check or a deposit in any account payable to the plaintiff." *Id.* at 641; *see also Grimes* v. *Brunson Grp., Inc.*, 2021 WL 328239, at *2 (E.D.N.C. Feb. 1, 2021) (discussing *Bennett* and explaining the Fourth Circuit "has not addressed whether actual payment of full relief moots a claim or whether payment of full relief through a cashier's check, like defendants tendered here, moots a claim").

instead deemed the question "appropriately reserved for a case in which it is not hypothetical." *Id.* at 166.

### B. Google Has Tendered the United States Complete Relief.

Google has tendered a cashier's check, payable to the United States, for ▇▇▇, which is the maximum amount of damages the United States claims in this case, trebled, plus prejudgment interest accrued based on a "hypothetical judgment date" of June 30, 2024. *See* Ex. 14, App. E, Fig. 20. Google has not merely made an unaccepted offer of relief. It has in fact paid the United States every dollar the United States could conceivably hope to recover under the damages calculation of the United States' own expert. Accordingly, the United States' damages claim is moot, and this Court should dismiss that claim for lack of subject-matter jurisdiction. *See Price*, 2016 WL 1089417, at *2 (tender in the form of a cashier's check mooted claim because there was "no legitimate risk of non-payment").

DOJ may not keep its claim alive by "spurn[ing]" Google's check as a "mere offer." *Jarrett*, 79 F.4th at 680. As the Sixth Circuit held and the United States has previously argued, mootness should not turn on what the plaintiff "does with a check any more than it should turn on whether he burns a full cash payment on the spot." *Id.* Nor may DOJ rely on the possibility of obtaining attorneys' fees and costs to preserve an Article III case or controversy. An "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *accord Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 107 (1998). It is settled that a "claim for costs and attorney's fees" cannot "avert mootness of the underlying action." *S-1 v. Spangler*, 832 F.2d 294, 297 n.1 (4th Cir. 1987). Moreover, attorneys' fees pursuant to statutory grant is equitable, not legal, relief, and thus does not afford the DOJ a jury-trial right. *AIA Am., Inc. v. Avid Radiopharmaceuticals*, 866 F.3d 1369, 1373 (Fed. Cir. 2017) ("When attorney's fees are awarded pursuant to a statutory prevailing party provision,

they are regarded as an 'equitable' remedy because they raise 'issues collateral to and separate from the decision on the merits.'" (quoting *Budinich* v. *Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988))); *Quinn* v. *Bowmar Publ'g Co.*, 445 F. Supp. 780, 789 (D. Md. 1978) (no entitlement to jury trial on attorneys' fees).

DOJ is especially poorly situated to dispute mootness given that the United States mooted the claim in *Jarrett* in similar circumstances. As the Sixth Circuit noted, the United States represented both in "its brief and at oral argument" in *Jarrett* "that full, unconditional payment" moots a dispute "regardless of whether it comes from the taxpayer or from the government." *Jarrett*, 79 F.4th at 682.

Because the United States' claim for damages is moot, the Court should dismiss that claim and strike the jury demand that depends on it. The Supreme Court has held that the proper disposition of a claim that has become moot by a grant of complete relief is dismissal; it has not required entry of judgment for the plaintiff. *See Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 89-90, 93, 102 (2013) (affirming dismissal where party granted its opponent complete relief). The Sixth Circuit in *Jarrett* followed that practice, explaining that the admission of liability or the entry of a judgment are not prerequisites to mootness. 79 F.4th at 681. District courts in the Fourth Circuit have reached the same conclusion. *E.g.*, *Kuntze*, 365 F. Supp. 3d at 642 ("a judgment may be unnecessary to moot a claim if payment is assured in another way, such as through a duly issued cashier's check which . . . is guaranteed by a bank"); *Price*, 2016 WL 1089417, at *2 (holding a judgment is "of no additional value to Plaintiffs" when "there is no legitimate risk of non-payment"). This is true even where, as here, Google moots a case while still contesting liability. *See Already*, 568 U.S. at 93, 102 (unilateral grant of relief mooted claim without concession of liability); *Alvarez* v. *Smith*, 558 U. S. 87, 93, 97 (2009) (same).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the United States' damages claim as moot and strike its demand for a jury trial.

Dated: May 16, 2024

Respectfully submitted,

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Scott A. Eisman (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

/s/ *Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Kannon K. Shanmugam (*pro hac vice forthcoming*)
Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB # 93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
kdunn@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3387
Facsimile: (212) 492-0387
ejmorgan@paulweiss.com

*Counsel for Defendant Google LLC*