# EXHIBIT 2

Page 1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
 2                     ALEXANDRIA DIVISION
 3
      _____
 4                                    :
      UNITED STATES OF AMERICA,       :
 5    et al.,                         :
                                      :
 6          Plaintiffs                :
                                      :
 7         v.                         : No.  1:23-cv-00108
                                      :
 8    GOOGLE, LLC,                    :
                                      :
 9          Defendants.               :
      _____ :
10
11                   Friday, August 18, 2023
12
                Video Deposition of COL. JOHN HORNING,
13
      taken at the Law Offices of Paul, Weiss,
14
      Rifkind, Wharton & Garrison LLP, 2001 K St NW,
15
      Washington, DC, beginning at 9:34 a.m. Eastern
16
      Standard Time, before Ryan K. Black, Registered
17
      Professional Reporter, Certified Livenote
18
      Reporter and Notary Public in and for the
19
      District of Columbia
20
21
22
23
24
25    Job No. CS6060378
```

Page 2

```
 1   A P P E A R A N C E S:
 2
 3   UNITED STATES DEPARTMENT OF JUSTICE
     ANTITRUST DIVISION
 4   BY:  JIMMY MCBIRNEY, ESQ.
          CHASE PRITCHETT, ESQ.
 5        ALVIN CHU, ESQ.
          MARK SOSNOWSKY, ESQ. - Via Zoom
 6        KATHERINE CLEMONS, ESQ - Via Zoom
     450 5th Street, N.W
 7   Washington, DC 20530
     202.514.2414
 8   jimmy.mcbirney@usdoj.gov
     chase.pritchett@usdoj.gov
 9   alvin.chu@usdoj.gov
     mark.sosnowsky@usdoj.gov
10   katherine.clemons@usdoj.gov
11   Representing - The United States of America
12
13   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,
     BY:  MARTHA L. GOODMAN, ESQ.
14        LEAH HIBBLER, ESQ.
     2001 K St NW,
15   Washington, DC
     202.223.7341
16   mgoodman@paulweiss.com
     lhibbler@paulweiss.com
17
     Representing - Google LLC
18
19
20
21
22
23   ALSO PRESENT:
24   Glenn Fortner - Legal Videographer
     Major Mohamed Al-Darsani - United States Army
25   Edwin Farley - USDOJ Intern
```

Page 3

```
 1              I N D E X
 2   TESTIMONY OF:  COL. JOHN HORNING         PAGE
 3   By Ms. Goodman.............................6, 244
 4   By Mr. McBirney..............................245
 5              E X H I B I T S
 6   EXHIBIT        DESCRIPTION              PAGE
 7   Exhibit 61    a privilege log dated June 26th,
                   2023, provided by the United
 8                 States DOJ.......................11
 9   Exhibit 62    a document Bates Numbered
                   ARMY-ADS336340 through 336638...154
10
     Exhibit 63    a document Bates Numbered
11                 ARMY-ADS329948 through 329970...165
12   Exhibit 64    a document Bates Numbered
                   ARMY-ADS187047 through 187077...211
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

 1   THE VIDEOGRAPHER:  Good morning.
 2   We're going on the record at 9:34 on August 18th,
 3   2023.  Please note that the microphones are
 4   sensitive and may pick up whispering and private
 5   conversations.  Please mute your phones at this
 6   time.  Audio and video recording will continue to
 7   take place unless all parties agree to go
 8   off the record.
 9          This is Media Unit 1 of the
10   video-recorded deposition of Colonel John Horning
11   in the matter of United States, et al., v. Google
12   LLC.  The location of the deposition is Paul
13   Weiss.
14          My name is Glenn Fortner, representing
15   Veritext, and I'm the videographer.  The court
16   reporter is Ryan Black from the firm Veritext.
17   I'm not related to any party in this action, nor
18   am I financially interested in the outcome.
19          If there are any objections to
20   proceeding, please state them at the time of your
21   appearance.  Counsel and all present, including
22   remotely, will now state their appearances and
23   affiliations for the record beginning with the
24   noticing attorney.
25          MS. GOODMAN:  Martha Goodman, from the

Page 5

 1   law firm Paul Weiss, on behalf of Google LLC.
 2   I'm joined by my colleague Leah Hibbler.
 3          MR. MCBIRNEY:  Jimmy McBirney, with the
 4   Unites Staes Department of Justice, on behalf of
 5   the United States and the witness.
 6          MR. PRITCHETT:  Chase Pritchett, on
 7   behalf of the United States.
 8          MR. CHU:  Alvin Chu on behalf of the
 9   United States.
10          MR. SOSNOWSKY:  Mark Sosnowsky on behalf
11   of the United States.
12          MAJOR AL-DARSANI:  Moe Al-Darsani,
13   United States Army.
14          MR. FARLEY:  Edwin Farley, United
15   States.
16          THE VIDEOGRAPHER:  Okay.  Will the court
17   reporter please swear in the witness and then
18   counsel may proceed.
19          MR. CHU:  Oh, also, just to let you
20   know, I have Katherine Clemons -- she'll be --
21   from the DOJ that will also joining in and out.
22             *   *   *
23   Whereupon --
24          COL. JOHN HORNING,
25   called to testify, having been first duly sworn

Page 6

1  or affirmed, was examined and testified as
2  follows:
3           *   *   *
4             EXAMINATION
5  BY MS. GOODMAN:
6      Q.  Good morning, Colonel Horning.
7      A.  Good morning.
8      Q.  Have you been deposed before?
9      A.  I have not.
10     Q.  Do you understand your purpose here
11 today is to provide truthful and accurate
12 testimony to the best of your testimony and
13 knowledge?
14     A.  I do.
15     Q.  Is there any reason you cannot do that
16 today?
17     A.  No.
18     Q.  Okay.  Because the court reporter is
19 writing everything down, it's important that we
20 not talk over one another, so please let me
21 finish my question before you begin your answer.
22 Okay?
23     A.  Okay.
24     Q.  And because he's again taking a written
25 transcript, the -- you have to speak verbally as

Page 7

1  opposed to with sounds like uh-huh or huh-uh
2  so that it can be accurately reflected in the
3  transcript.  Okay?
4      A.  I understand.
5      Q.  If you don't understand my question,
6  please let me know.  Okay?
7      A.  Yes.
8      Q.  Otherwise I assume you'll understand.
9  Okay?
10     A.  Yes.
11     Q.  In the normal course of your work, do
12 you consider the Department of Justice Antitrust
13 Division to be your counsel?
14     A.  I'm not sure that I'm qualified to
15 answer, within the legal constructs of the U.S.
16 government, who our actual counsel is or is not.
17     Q.  I'm not asking for you to provide a
18 legal opinion.  I'm asking for your personal
19 understanding and your considerations, your
20 personal opinions.  So do you consider the
21 Department of Justice Antitrust Division to be
22 your counsel in the normal course of your work?
23     A.  I don't believe that I have a personal
24 opinion on who our counsel is.  I only know
25 what's -- yeah.  I -- I don't have an opinion on

Page 8

1  that.
2      Q.  Have you ever requested legal advice
3  from the Department of Justice Antitrust
4  Division?
5          MR. MCBIRNEY:  Objection.  Calls for
6  privileged information.  Instruct the witness not
7  to answer.
8          MS. GOODMAN:  You're asking him -- the
9  information that would appear on a privilege log
10 with a request for legal advice that's required
11 for you as the privilege -- the party asserting a
12 privilege to establish the proprietary of the
13 privilege and meet your burden of proof and
14 persuasion that the privilege applies, you're
15 instructing him not to answer that question?
16         MR. MCBIRNEY:  You are asking the
17 witness whether he has requested legal advice
18 from the Department of Justice Antitrust
19 Division?
20         MS. GOODMAN:  Yeah.
21         MR. MCBIRNEY:  You can answer that yes
22 or no.
23         THE WITNESS:  No.
24 BY MS. GOODMAN:
25     Q.  To what extent has anybody at the

Page 9

1  Department of Justice ever asked you to provide
2  information about the Army's advertising
3  business?
4          MR. MCBIRNEY:  Objection.  Privileged.
5  Instruct the witness not to answer.
6  BY MS. GOODMAN:
7      Q.  Are you going to follow that
8  instruction, sir?
9      A.  Yes.
10     Q.  Okay.  When did you first have any
11 conversations with anybody at the Department of
12 Justice Antitrust Division?
13     A.  As best that I can recall, our first
14 interaction would have been in early spring of
15 2023 or late winter.  I -- I can't recall the
16 specific date.
17     Q.  So sometime between late winter of what
18 year?
19     A.  2023.
20     Q.  Okay.  And early spring of 2023?
21     A.  Correct.
22     Q.  Okay.  What was your understanding
23 of the reason for your conversations with the
24 Department of Justice Antitrust Division?
25         MR. MCBIRNEY:  Objection.  Calls for

3 (Pages 6 - 9)

Page 10

1  privileged information. Instruct the witness not
2  to answer.
3  BY MS. GOODMAN:
4      Q. Are you following that instruction?
5      A. Yes.
6      Q. Has the Department of Justice ever
7  requested information about digital advertising
8  purchases by the United States Army?
9          MR. MCBIRNEY: Objection. Calls for
10 privileged information. Instruct the witness not
11 to answer.
12 BY MS. GOODMAN:
13     Q. Are you following that instruction?
14     A. Yes.
15     Q. Do you -- in the course of your work,
16 do you routine -- do you field requests for
17 information from the Department of Justice on
18 an ordinary basis?
19     A. I do not.
20     Q. Are you aware of anybody else within
21 the AEMO who re -- regularly fields requests for
22 information from the Department of Justice?
23     A. I'm not personally aware of anything
24 like that.
25         MS. GOODMAN: I'm marking Exhibit 61, a

Page 11

1  privilege log dated June 26th, 2023, provided by
2  the United States in this litigation. I'm
3  handing it to the witness.
4          (Exhibit No. 61, a privilege log dated
5  June 26th, 2023, provided by the United States
6  DOJ, was introduced.)
7  BY MS. GOODMAN:
8      Q. Now, Colonel Horning, this is not a
9  document I would normally show a percipient
10 witness, but I'm essentially hamstrung and must
11 do so here today for reasons that don't pertain
12 to you, per se. But I would like you to turn to
13 Page 11 of this document.
14         Let me know when you're there.
15     A. Okay. I am on Page 11.
16     Q. Okay. And if you look back at Page 1,
17 actually, you see there is a heading at the top
18 that indicate what each of the columns are.
19     A. Okay.
20     Q. Okay. So you see that in the, one, two,
21 three, four, five -- fifth column over on Page
22 23, which is the To column, your name is
23 listed --
24     A. On? I'm sorry. Could you say what page
25 again? I thought you said Page 23.

Page 12

1      Q. I'm sorry. I meant Page 11.
2      A. Okay.
3      Q. It's line entry 23 on Page 11.
4      A. Okay.
5      Q. So one, two, three, four, five columns
6  over, you're listed in the To column. Do you see
7  that?
8      A. I do.
9      Q. And do you see the date in the few-more
10 columns over of January 5th, 2023?
11     A. Okay.
12     Q. Does that refresh your recollection of
13 the time period where you first had conversations
14 with the Department of Justice Antitrust
15 Division?
16     A. Can you help me understand what it is
17 I'm actually looking at here?
18     Q. Yeah. So this is what's called a
19 privilege log.
20     A. I'm not familiar with what one of those
21 are.
22     Q. Okay. A privilege log is a
23 document that parties are required to provide
24 to the opposing side when they're asserting
25 attorney-client or attorney work product or other

Page 13

1  privilege over communications --
2      A. Okay.
3      Q. -- that they are not providing to
4  the other side in litigation. So that's what a
5  privilege log is. And so by virtue of this
6  entry, on Line 23 the United States is asserting
7  a privilege, as described in the last column, --
8      A. Okay.
9      Q. -- over your communication with
10 Mr. Wessels and others --
11     A. Okay.
12     Q. -- listed on this page.
13     A. Okay.
14     Q. Do you understand now?
15         MR. MCBIRNEY: Objection. Assumes facts
16 not in evidence. Form of the question.
17 BY MS. GOODMAN:
18     Q. Do you understand -- do you have an
19 appropriate understanding now of what a privilege
20 log is?
21     A. I do understand what this document is
22 now.
23     Q. Okay. So having now looked at this
24 document and understanding what it is, does it
25 refresh your memory at all that -- as to the

Page 14

1  timing of your conversations with the Antitrust
2  Division?
3      MR. MCBIRNEY: Objection; foundation,
4  and to form.
5      THE WITNESS: It does not refresh my
6  recollection, but I have no reason to believe
7  this is not true.
8  BY MS. GOODMAN:
9      Q. Okay. And you see in the column next to
10  the date, which is the subject -- if you look
11  back at Page 1, you can see that that is the
12  subject column.
13      A. Yes.
14      Q. Okay. Can you read the subject to me
15  here?
16      A. The subject on Item 23 of the privilege
17  log says, brackets, "external DOJ-Army interview
18  on Google-Meta advertising products used by DOD."
19      Q. Okay. Do you recall who was interviewed
20  -- who at the Army was interviewed on Google-Meta
21  advertising products used by DOD on or around
22  this date of January 5th, 2023?
23      MR. MCBIRNEY: You can answer that yes
24  or no.
25      THE WITNESS: I do not recall.

Page 15

1  BY MS. GOODMAN:
2      Q. Okay. Do you recall yourself being
3  interviewed on this topic?
4      A. I recall being interviewed, but I do not
5  recall that this was the date for it.
6      Q. Okay. Do you recall who interviewed
7  you?
8      A. I only recall -- I didn't -- there was
9  likely more than one person. I only recall one
10  by name.
11      Q. Who do you recall by name?
12      A. Mr. Chase Pritchett.
13      Q. Okay. How long did the interview last?
14      A. I can't be certain. I think it was,
15  likely, 60 to 90 minutes, perhaps.
16      Q. And this is a yes or no question: Did
17  the United States Antitrust Division lawyers
18  present explain to you the purpose of the
19  interview?
20      MR. MCBIRNEY: Objection. Calls for
21  privileged communication. Instruct the witness
22  not to answer.
23  BY MS. GOODMAN:
24      Q. Are you following that instruction?
25      A. Yes.

Page 16

1      Q. What was your understanding of the
2  purpose of the interview?
3      MR. MCBIRNEY: Objection. Calls for
4  privileged information. Instruct the witness not
5  to answer.
6  BY MS. GOODMAN:
7      Q. Are you following that instruction?
8      A. Yes.
9      Q. What facts -- strike that.
10      At the time reflected here on this
11  log, --
12      A. Mm-hmm.
13      Q. -- January 5th, 2023, were you aware of
14  any anticompetitive conduct on the part of Google
15  affecting the Army's advertising --
16      MR. MCBIRNEY: Objection.
17  BY MS. GOODMAN:
18      Q. -- practices?
19      MR. MCBIRNEY: Objection. Calls for a
20  legal conclusion.
21  BY MS. GOODMAN:
22      Q. You may answer.
23      A. I'm not sure that I have -- am
24  qualified to know or would have been made
25  available any infor -- or would have had any

Page 17

1  information available to me on that topic.
2      Q. Around this time of January 5th, 2023,
3  were you aware of any conduct on the part of
4  Google that was causing the Army to pay prices
5  for advertising that were too high?
6      A. I had not been made aware of anything
7  like that at the time frame that you're asking.
8      Q. Okay. How about prior to the time frame
9  that I'm asking?
10      A. Not that I can recall, no.
11      Q. Okay. What's your understanding of the
12  word anticompetitive?
13      MR. MCBIRNEY: Objection. Calls for
14  legal conclusion, and foundation.
15      THE WITNESS: I only know the common
16  language terminology. I don't understand the
17  actual legal definitions or implications.
18  Anticompetitive: Not competitive.
19  BY MS. GOODMAN:
20      Q. So what is your common language
21  understanding of the word anticompetitive?
22      A. I understand it in the context of
23  business practices meaning not adhering to a
24  competitive, fair practice.
25      Q. Okay. So using your definition of

| | |
|---|---|
| Page 246 | Page 248 |

Page 246
1  for information relevant to this lawsuit?
2    A.  I did not.
3       MS. GOODMAN:  I reserve the remainder of
4  my time for this deposition based on the improper
5  privilege assertions made at the outset of the
6  deposition.  So I close the dep -- I'm holding
7  the deposition open.
8       MR. MCBIRNEY:  Can I get a time check?
9       THE VIDEOGRAPHER:  We are at 5:55
10 minutes.
11      MR. MCBIRNEY:  Okay.  The government
12 does not agree with your position that the
13 deposition should remain open, but we understand
14 your position.
15      MS. GOODMAN:  Okay.
16      MR. MCBIRNEY:  Off the record.
17      THE VIDEOGRAPHER:  Anything else for the
18 record?
19      MS. GOODMAN:  Thank you, Colonel.
20      THE WITNESS:  Thank you very much.
21      THE VIDEOGRAPHER:  This marks the end of
22 the deposition of Colonel John Horning.  We're
23 going off the record at 1753.
24      (Deposition concluded -- 5:53 p.m.)
25

Page 247

        C E R T I F I C A T E

    I do hereby certify that I am a Notary
Public in good standing, that the aforesaid
testimony was taken before me, pursuant to
notice, at the time and place indicated; that
said deponent was by me duly sworn to tell the
truth, the whole truth, and nothing but the
truth; that the testimony of said deponent was
correctly recorded in machine shorthand by me and
thereafter transcribed under my supervision with
computer-aided transcription; that the deposition
is a true and correct record of the testimony
given by the witness; and that I am neither of
counsel nor kin to any party in said action, nor
interested in the outcome thereof.

    WITNESS my hand and official seal this
21st day of

                    _____
                           Notary Public

Page 248
1  Jimmy McBirney, Esq.
2  jimmy.mcbirney@usdoj.gov
3         August 21, 2023
4  RE:   United States, Et Al v. Google, LLC
5    8/18/2023, John Horning (#6060378)
6     The above-referenced transcript is available for
7  review.
8     Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12    The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 erratas-cs@veritext.com
16
17  Return completed errata within 30 days from
18 receipt of testimony.
19   If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
21
22        Yours,
23        Veritext Legal Solutions
24
25

Page 249
1  United States, Et Al v. Google, LLC
2  John Horning (#6060378)
3        E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10 PAGE_____ LINE_____ CHANGE_____
11 _____
12 REASON_____
13 PAGE_____ LINE_____ CHANGE_____
14 _____
15 REASON_____
16 PAGE_____ LINE_____ CHANGE_____
17 _____
18 REASON_____
19 PAGE_____ LINE_____ CHANGE_____
20 _____
21 REASON_____
22
23 _____   _____
24 John Horning              Date
25