# EXHIBIT 4

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

UNITED STATES, et al.,        ) 1:23-cv-00108-LMB-JFA
                              )
    Plaintiffs,               )
                              )
vs.                           )
                              )
GOOGLE LLC,                   )
                              )
    Defendants.               )
_____)

VIDEOTAPED DEPOSITION OF

KENDALL OLIPHANT

August 9, 2023

9:32 a.m.

Reported by:  Bonnie L. Russo
Job No. 6031956

HIGHLY CONFIDENTIAL

Page 2

1  Videotaped Deposition of Kendall Oliphant
2  held at:
3
4
5
6   Paul, Weiss, Rifkind, Wharton & Garrison, LLP
7        2001 K Street, N.W.
8           Washington, D.C.
9
10
11
12
13
14
15
16
17
18  Pursuant to Notice, when were present on behalf
19  of the respective parties:
20
21
22

Page 3

1  APPEARANCES:
2
3  On behalf of the Plaintiffs:
4     RACHEL ZWOLINSKI, ESQUIRE
5     VICTOR LIU, ESQUIRE
6     ALVIN CHU, ESQUIRE
7     UNITED STATES DEPARTMENT OF JUSTICE
8     1331 Pennsylvania Avenue, N.W.
9     Washington, D.C. 20005
10    rachel.zwolinski@usdoj.gov
11
12 On behalf of the Defendant:
13    MARTHA L. GOODMAN, ESQUIRE
14    ANNELISE CORRIVEAU, ESQUIRE
15    PAUL, WEISS, RIFKIND, WHARTON &
16    GARRISON, LLP
17    2001 K Street, N.W.
18    Washington, D.C. 20006
19    mgoodman@paulweiss.com
20    acorriveau@paulweiss.com
21
22

Page 4

1  APPEARANCES (CONTINUED):
2
3
4  Also Present:
5    Glen Fortner, Videographer
6    Michael A. Cannon, Chief Counsel for Economic
7    Affairs, United States Department of Commerce
8
9  Also Present Via Remotely:
10   Julia Wood, DOJ
11   Jeannie S. Rhea, Paul, Weiss, Rifkind, Wharton
12   & Garrison, LLP
13
14
15
16
17
18
19
20
21
22

Page 5

1           I N D E X
2  EXAMINATION OF KENDALL OLIPHANT        PAGE
3  BY MS. GOODMAN                  12
4
5
6
7
                EXHIBITS
8
9  Exhibit 13  E-Mail Chain dated 1-17-23    48
10       CENSUS-ADS-0000244816-818
11
12 Exhibit 14  Integrated Communications    79
13      Contract
14      Version 2
15      10-5-18
16      CENSUS-ADS-0000387420-490
17
18 Exhibit 15  E-Mail dated 9-14-22       90
19      Attachment
20      CENSUS-ADS-0000248031-186
21
22

2 (Pages 2 - 5)

Page 10

PROCEEDINGS

(9:32 a.m.)

THE VIDEOGRAPHER: Good morning. We are going on the record at 9:32 on August 9, 2024 -- 2023.

Please note that the microphones are sensitive and may pick up whispering and private conversations. Please mute your phones at this time. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit 1 of the video-recorded deposition of Kendall Oliphant in the matter of United States, et al. v. Google LLC. The location of the deposition is Paul Weiss.

My name is Glen Fortner representing Veritext, and I am the videographer. The court reporter is Bonnie Russo from the firm Veritext.

I am not related to any party in

Page 11

this action, nor am I financially interested in the outcome. If there are any objections to proceeding, please state them at the time of your appearance.

Counsel and all present, including remotely, will now state their appearances and affiliations for the record beginning with the noticing attorney.

MS. GOODMAN: Martha Goodman of Paul Weiss on behalf of the defendant, Google LLC, and I am joined colleague Annelise Corriveau.

MS. ZWOLINSKI: Rachel Zwolinski on behalf of the United States.

MR. LIU: Victor Liu on behalf of the United States.

MR. CHU: Alvin Chu on behalf of the United States.

MR. CANNON: Michael Cannon on behalf of the United States.

MS. GOODMAN: And do we have any remote attendees?

MS. RHEE: This is Jeannie Rhee from

Page 12

Paul Weiss.

MS. WOOD: And Julia Wood from DOJ. I will be in and out throughout the day.

THE VIDEOGRAPHER: Will the court reporter please swear in the witness, and then counsel may proceed.

KENDALL OLIPHANT,
being first duly sworn, to tell the truth, the whole truth and nothing but the truth,
    testified as follows:
EXAMINATION BY COUNSEL FOR DEFENDANT
    BY MS. GOODMAN:
    Q.  Good morning, Ms. Oliphant.
    A.  Good morning.
    Q.  Was your last name previously Johnson?
    A.  Yes, it was.
    Q.  Okay. So if we look at documents here today that refer to Kendall Johnson, that is yourself, correct?
    A.  That is myself, yes.

Page 13

    Q.  Have you been deposed before?
    A.  Once.
    Q.  And was that in connection with your work at the census bureau?
    A.  No, it was not.
    Q.  Okay. When was that deposition?
    A.  Thinking. Maybe 2002, 2001, 2002.
    Q.  So it's been 20-some odd years?
    A.  Yes.
    Q.  Okay. Just some basic rules of the road.
    Your counsel may object. Unless they instruct you not to answer the question, you should permit your counsel to object and then proceed to answer the question. Okay?
    A.  Okay.
    Q.  And to help Bonnie, our court reporter, please wait for me to finish my question, wait for your counsel to object, if any, and then proceed with your answer so that we're not talking over each other. Sound good?
    A.  Sounds good.

Page 58

1  Q. Is that because you only have an
2  understanding based on privileged
3  communications?
4  A. Yes.
5  Q. Okay. And with whom are those --
6  did those privileged communications take place?
7  A. Commerce lawyer, Mike Cannon.
8  Q. Any lawyers from the Department of
9  Justice?
10  A. No.
11  Q. Okay. Do you know what date this
12  lawsuit was filed?
13  A. Honestly, no.
14  Q. It was filed on January 24, 2023.
15  A. Okay.
16  Q. I will state that for the record.
17     So with that sort of time period in
18  mind, do you recall any conversations prior to
19  January 24, 2023, with any lawyers for the
20  Department of Justice with respect to using
21  Google in the census's digital advertising paid
22  media for the 2020 census?

Page 59

1     MS. ZWOLINSKI: Objection. Form.
2     THE WITNESS: I don't recall.
3     BY MS. GOODMAN:
4  Q. Is it typical in your day-to-day
5  work to speak with lawyers from the Department
6  of Justice?
7     MS. ZWOLINSKI: Objection. Form.
8     THE WITNESS: I do not speak to
9  anybody from Justice that -- I don't -- no, it
10  is not.
11     BY MS. GOODMAN:
12  Q. And so if you did speak with lawyers
13  from the Department of Justice, is that
14  something you might remember because it is not
15  usual in the course of your work?
16     MS. ZWOLINSKI: Objection. Form.
17     THE WITNESS: I may remember
18  speaking to them. I may not necessarily
19  remember timing.
20     BY MS. GOODMAN:
21  Q. Okay. And do you have any
22  recollection of a timing -- the timing during

Page 60

1  -- strike that.
2     What is your best recollection of
3  when, if at all, you spoke with lawyers from
4  the Department of Justice about the census
5  bureau's use of Google in the 2020 census?
6     MS. ZWOLINSKI: Objection. Form.
7     THE WITNESS: It would have had to
8  have been somewhere in the time frame of when
9  the -- when the suit was filed.
10     BY MS. GOODMAN:
11  Q. Do you recall any conversations
12  prior to January of 2023?
13     MS. ZWOLINSKI: Objection. Form.
14     THE WITNESS: I don't recall.
15     BY MS. GOODMAN:
16  Q. I will represent to you that the
17  United States Department of Justice has been
18  investigating Google's advertising practices
19  for the last three years. So over that --
20  meaning the '21 -- 2021, 2022, 2023.
21     In the years 2021 or 2022, do you
22  recall any conversation with any lawyer from

Page 61

1  the Department of Justice about census bureau's
2  use of Google for the 2020 census?
3  A. No.
4     MS. ZWOLINSKI: Objection. Form.
5     BY MS. GOODMAN:
6  Q. So as of January 17, 2023, that we
7  -- that you sent this e-mail to Mr. Benson, at
8  this time, did you anticipate participating in
9  litigation on behalf of the United States
10  against Google?
11     MS. ZWOLINSKI: Objection. Form.
12     THE WITNESS: I did not.
13     BY MS. GOODMAN:
14  Q. At this time in January of 2023, did
15  you have any knowledge or awareness of any
16  investigation by the Department of Justice of
17  -- of Google with respect to its advertising
18  businesses?
19     MS. ZWOLINSKI: Objection. Form.
20     THE WITNESS: Can you be more
21  specific?
22     BY MS. GOODMAN:

Page 62

1  Q.  Have you ever -- strike that.
2      To what extent, if any, were you
3  aware in January of 2023, that the Department
4  of Justice Antitrust Division was investigating
5  Google?
6      MS. ZWOLINSKI:  Objection.  Form.
7      THE WITNESS:  I guess when they
8  actually filed the suit.
9      BY MS. GOODMAN:
10  Q.  And so prior to January 24, 2023,
11  when the Department of Justice filed the
12  lawsuit, you were not aware of any
13  investigation that the antitrust division was
14  doing of Google, correct?
15     MS. ZWOLINSKI:  Objection.  Form.
16     THE WITNESS:  I honestly -- I don't
17  recall.
18     BY MS. GOODMAN:
19  Q.  You don't recall any awareness of an
20  investigation; is that right?
21     MS. ZWOLINSKI:  Objection.  Form.
22     THE WITNESS:  I didn't recall when

Page 63

1  the lawsuit was filed, so the timing, I can't
2  -- no.  I don't recall.  I don't -- I'm not
3  aware.
4      BY MS. GOODMAN:
5  Q.  Prior to -- strike that.
6      In the course of your work as the
7  COR for Order 15, did you ever form a view that
8  Google's -- Google was engaging in
9  anticompetitive conduct?
10     MS. ZWOLINSKI:  Objection.  Form.
11     THE WITNESS:  No, I did not.
12     BY MS. GOODMAN:
13  Q.  And did you ever seek the legal
14  advice of the antitrust division with respect
15  to any anticompetitive conduct on the part of
16  Google?
17     MS. ZWOLINSKI:  Objection.  Form and
18  privileged.
19     MS. GOODMAN:  It's a yes or no
20  question.  It's not privileged.  I am asking
21  whether she sought legal advice.
22     MS. ZWOLINSKI:  Objection.  Form.

Page 64

1  THE WITNESS:  No.
2  BY MS. GOODMAN:
3  Q.  So for the record, your testimony is
4  that you never sought the legal advice of the
5  antitrust division with respect to
6  anticompetitive on the part of --
7  anticompetitive conduct on the part of Google;
8  is that correct?
9  A.  That is correct.
10  Q.  Have you received a litigation hold
11  in this case?
12  A.  Yes.
13  Q.  And approximately when did you
14  receive that hold?
15  A.  For context.  We have a lot going
16  on.  I can't honestly tell you when I first
17  started hearing about it or when I first
18  started -- when I got the litigation hold.
19     If I go through my e-mail, I can
20  tell you, but off the top of my head, we have
21  way too many deadlines that we are trying to
22  meet for this to be -- until it became a big

Page 65

1  thing, a real thing, for it -- it just -- it
2  just seemed like it was information seeking, so
3  I don't know.
4      MS. ZWOLINSKI:  Counsel, we've been
5  going over -- we've been going for over an
6  hour.  Can we take a break.
7      MS. GOODMAN:  Yeah, once I finish
8  this line of questioning, I am happy to break.
9      MS. ZWOLINSKI:  How much time do you
10  anticipate that line of questioning taking?
11     MS. GOODMAN:  A few more minutes.
12     MS. ZWOLINSKI:  Okay.
13     BY MS. GOODMAN:
14  Q.  You -- in your prior answer, you
15  said that it seemed like it was just
16  information seeking.
17     What did you mean by that?
18     MS. ZWOLINSKI:  Objection.  Form.
19     THE WITNESS:  We get asked questions
20  all the time.  It was just responding to a
21  request.
22     BY MS. GOODMAN:

17 (Pages 62 - 65)

Page 298

1  document, do you have an understanding now of
2  what DV360 is?
3      MS. ZWOLINSKI: Objection. Form.
4      THE WITNESS: My understanding would
5  be it's used to serve ads.
6      BY MS. GOODMAN:
7   Q.  Okay.
8   A.  Google uses it to serve ads.
9   Q.  Okay. And so do you see in this
10 document then that the reach for the census --
11 strike that.
12     What is your reaction to the news
13 that Google is saying you have reached 214
14 million unique users as of March 3, 2020?
15     MS. ZWOLINSKI: Objection. Form.
16     THE WITNESS: That's a good thing.
17     BY MS. GOODMAN:
18  Q.  I'm sorry?
19  A.  That's a good thing.
20  Q.  And did Google help the census
21 bureau obtain its advertising goals?
22     MS. ZWOLINSKI: Objection. Form.

Page 299

1      THE WITNESS: The combination of
2  Google and all of our advertisers helped us
3  obtain our goals.
4      BY MS. GOODMAN:
5   Q.  Okay. And was there any one digital
6  tool in your toolkit from your point of view
7  that particularly aided in the meeting of the
8  goals?
9      MS. ZWOLINSKI: Objection. Form.
10     THE WITNESS: They all had a part in
11 helping us reach our goals.
12     BY MS. GOODMAN:
13  Q.  Did any one of them have a greater
14 role than others?
15     MS. ZWOLINSKI: Objection. Form.
16     THE WITNESS: Well, at this point in
17 time, it is clearly Google, but this is just a
18 snapshot in time so -- and this is before
19 pandemic, so no, I have no -- I can't speak to
20 any time later without a similar type of
21 report.
22     BY MS. GOODMAN:

Page 300

1   Q.  Okay. But just in terms of the
2  course of your experience working on Order 15,
3  does any one particular advertising mechanism
4  stand out to you as one that was particularly
5  effective in helping the census bureau obtain
6  its goals?
7      MS. ZWOLINSKI: Objection. Form.
8      THE WITNESS: They really all -- if
9  they didn't work together, because they all
10 bring something different to the table to reach
11 audiences in a different way, and each audience
12 receives or utilizes different media. It is --
13 it is hard to point to one particular vendor
14 and say, you know, they are responsible or they
15 had the greatest impact because while it may
16 have an impact here, it may not have, overall,
17 it may not have had as high of an impact.
18     BY MS. GOODMAN:
19  Q.  If you needed to figure out how much
20 money was paid to Google through funds
21 allocated under the Order 15 contract, how
22 would you go about doing that?

Page 301

1      MS. ZWOLINSKI: Objection. Form.
2      THE WITNESS: I would contact the
3  buying agency. I would call Reingold.
4      BY MS. GOODMAN:
5   Q.  Have you had to call Reingold in the
6  course of this litigation to figure out how
7  much money has been paid to Google?
8      MS. ZWOLINSKI: Objection.
9      THE WITNESS: No.
10     BY MS. GOODMAN:
11  Q.  And to your knowledge, is there a
12 way to figure out how much money was paid to
13 Google for programmatic advertising?
14     MS. ZWOLINSKI: Objection. Form.
15     THE WITNESS: I don't have those
16 means. Census doesn't have that. We would go
17 directly to Reingold.
18     BY MS. GOODMAN:
19  Q.  So sitting here today, if you could
20 only rely on the census bureau to figure out
21 how much money was paid to Google through funds
22 allocated in Order 15, how would you do that?

Page 334

1 provided you legal advice?
2 　　　MS. ZWOLINSKI: Objection. Form.
3 　　　THE WITNESS: No.
4 　　　BY MS. GOODMAN:
5 　Q. Okay. And is your answer the same
6 in January of 2023?
7 　　　MS. ZWOLINSKI: Objection. Form.
8 　　　THE WITNESS: Yes.
9 　　　BY MS. GOODMAN:
10 　Q. Okay. And in the course of your
11 participation in this lawsuit if you've had
12 questions about your participation in this
13 lawsuit, have you turned to the attorneys at
14 the antitrust division with your questions?
15 　　　MS. ZWOLINSKI: Objection. Form.
16 　　　THE WITNESS: No.
17 　　　BY MS. GOODMAN:
18 　Q. To whom have you turned, if anyone?
19 　A. Commerce.
20 　Q. And is that Mr. Cannon?
21 　A. That's Mr. Cannon, yes.
22 　Q. Do you consider the lawyers for the

Page 335

1 antitrust division to be lawyers for the census
2 bureau?
3 　　　MS. ZWOLINSKI: Objection. Form.
4 Foundation.
5 　　　THE WITNESS: I do not.
6 　　　BY MS. GOODMAN:
7 　Q. Why not?
8 　　　MS. ZWOLINSKI: Objection. Form.
9 Foundation.
10 　　　THE WITNESS: Since census has their
11 own lawyers and we have commerce lawyers, and I
12 believe the commerce lawyers would be more --
13 more sort of categorized in that way versus
14 DOJ.
15 　　　BY MS. GOODMAN:
16 　Q. Okay. And is your answer the same
17 with respect to your participation in this
18 lawsuit as a representative of the census
19 bureau?
20 　　　MS. ZWOLINSKI: Objection. Form.
21 Foundation.
22 　　　THE WITNESS: Yes.

Page 336

1 　　　MS. GOODMAN: I have no further
2 questions. I'll pass the witness.
3 　　　MS. ZWOLINSKI: We have no
4 questions.
5 　　　MS. GOODMAN: Okay. Thank you so
6 much for your time, Ms. Oliphant. I very much
7 appreciate it.
8 　　　THE WITNESS: You're welcome. Thank
9 you.
10 　　　THE VIDEOGRAPHER: Off the record.
11 　　　MS. GOODMAN: Yes.
12 　　　THE VIDEOGRAPHER: This marks the
13 end of the deposition of Kendall Oliphant. We
14 are going off the record at 18:24.
15 　　　(Whereupon, the proceeding was
16 concluded at 6:24 p.m.)

Page 337

1 　　　CERTIFICATE OF NOTARY PUBLIC
2 　　　I, Bonnie L. Russo, the officer before
3 whom the foregoing deposition was taken, do
4 hereby certify that the witness whose testimony
5 appears in the foregoing deposition was duly
6 sworn by me; that the testimony of said witness
7 was taken by me in shorthand and thereafter
8 reduced to computerized transcription under my
9 direction; that said deposition is a true
10 record of the testimony given by said witness;
11 that I am neither counsel for, related to, nor
12 employed by any of the parties to the action in
13 which this deposition was taken; and further,
14 that I am not a relative or employee of any
15 attorney or counsel employed by the parties
16 hereto, nor financially or otherwise interested
17 in the outcome of the action.
18
19 　　　_Bonnie L. Russo_
20 　　　Notary Public in and for
21 　　　the District of Columbia
22 My Commission expires: August 14, 2025