# EXHIBIT 7

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION
_____

| | |
|---|---|
| UNITED STATES, et al., | ) Case No.<br>) 1:23-cv-00108-LMB-JFA |
| Plaintiffs, | ) |
| vs. | ) |
| GOOGLE LLC, | ) |
| Defendant. | ) |

_____)

- HIGHLY CONFIDENTIAL -

VIDEOTAPED 30(b)(6) DEPOSITION OF
NATIONAL HIGHWAY TRAFFIC SAFETY ASSOCIATION
through the testimony of
SUSAN A. McMEEN
September 26, 2023
2:55 p.m.

Reported by: Bonnie L. Russo
Job No. 6105353

HIGHLY CONFIDENTIAL

Page 2

1  Videotaped 30(b)(6) Deposition of
2  National Highway Traffic Safety Association
3  through the testimony of Susan A. McMeen held
4  at:
5
6
7
8
9  Paul, Weiss, Rifkind, Wharton & Garrison, LLP
10     2001 K Street, N.W.
11     Washington, D.C.
12
13
14
15
16
17
18  Pursuant to Notice, when were present on behalf
19  of the respective parties:
20
21
22

Page 4

1            I N D E X
2  EXAMINATION OF SUSAN A. McMEEN          PAGE
3  BY MR. GREENBAUM                  7
4
5
6            EXHIBITS
7
8  Exhibit 140 Plaintiff United States      17
            of America's Response to
9           Defendant Google LLC's
            Second Set of Interrogatories
10           to the United States
11  Exhibit 141 E-Mail dated 11-19-20       57
            NHTSA-ADS-0000500223-233
12
         Exhibit 142 2022 NHTSA ADAS Campaign   74
13
         Exhibit 143 Google Display            75
14           Observations
15  Exhibit 144 E-Mail Chain dated 8-10-22   86
            Attachment
16           NHTSA-ADS-00002252582-648
17
18
19
20
21
22  (Exhibits bound separately.)

Page 3

1  APPEARANCES:
2
3  On behalf of the Plaintiffs:
4     DAVID GROSSMAN, ESQUIRE
      MARK H.M. SOSNOWSKY, ESQUIRE
5     SEAN CARMAN, ESQUIRE
      ALVIN CHU, ESQUIRE
6     VINNIE SIDHU, ESQUIRE
      UNITED STATES DEPARTMENT OF JUSTICE
7     450 Fifth Street, N.W.
      Washington, D.C. 20530
8     david.grossman@usdoj.gov
      mark.sosnowsky@usdoj.gov
9     sean.carman@usdoj.gov
      alvin.chu@usdoj.gov
10     vinnie.sidhu@usdoj.gov
11  On behalf of the Defendant:
12     CARTER E. GREENBAUM, ESQUIRE
      PAUL, WEISS, RIFKIND,
13     WHARTON & GARRISON, LLP
      1285 Avenue of the Americas
14     New York, New York 10019
      cgreenbaum@paulweiss.com
15        -and-
      ANNELISE CORRIVEAU, ESQUIRE
16     PAUL, WEISS, RIFKIND,
      WHARTON & GARRISON, LLP
17     2001 K Street, N.W.
      Washington, D.C. 20006
18     acorriveau@paulweiss.com
19
    Also Present:
20     Jonathan Perry, Videographer
      Erin Hendrixson, Department of Transportation
21  Also Present Via Remotely:
      Steve Hench, National Highway Traffic Safety
22     Administration

Page 5

1            P R O C E E D I N G S
2            (2:55 p.m.)
3
4            THE VIDEOGRAPHER:  We are now on
5  the record.
6            This begins the testimony of Susan
7  A. McMeen taken in the matter of the United
8  States versus -- the United States, et al.
9  versus Google LLC, case filed in the U.S.
10  District Court for the Eastern District of
11  Virginia, Alexandria Division.
12            The time is currently 2:55 p.m., and
13  the date is September 26, 2023.  We are at the
14  offices of Paul Weiss, 2001 K Street,
15  Northwest, in Washington, D.C.
16            The videographer is Jonathan Perry
17  and the court reporter is Bonnie Russo both
18  here on behalf of Veritext.
19            Will counsel present please
20  introduce themselves and state whom they
21  represent.
22            MR. GREENBAUM:  My name is Carter

2 (Pages 2 - 5)

|  | Page 78 |
|---|---|
| 1 | A. I do see that. |
| 2 | Q. What do you understand that to mean? |
| 3 | A. That they shifted the remaining |
| 4 | Google display budget to Facebook display in |
| 5 | September, which was much stronger click -- |
| 6 | CTRs, which is click-through rates. |
| 7 | Q. I think you might be going ahead -- |
| 8 | A. Oh, sorry. |
| 9 | Q. -- to the next sentence -- |
| 10 | A. Oops. Sorry. |
| 11 | Q. -- but I was reading the first one. |
| 12 | But we will get there in just a moment. |
| 13 | A. Okay. |
| 14 | Q. So the first sentence was: "The |
| 15 | display campaign launched on July 22nd and was |
| 16 | added as a complement in tandem with Google |
| 17 | Search to increase the reach of the campaign." |
| 18 | What does that mean, to increase the |
| 19 | reach of the campaign? |
| 20 | A. Reach is how many people you can |
| 21 | reach. How many people you can reach in a |
| 22 | campaign. |

|  | Page 79 |
|---|---|
| 1 | Q. So this display campaign was |
| 2 | launched to increase the reach of the campaign? |
| 3 | A. It was added as a component to reach |
| 4 | the campaign in tandem. |
| 5 | Q. The next sentence says: "The |
| 6 | highest performing display unit was the 580 by |
| 7 | 400 at 0.08." |
| 8 | Do you see that? |
| 9 | A. Yes. |
| 10 | Q. And the next line says: |
| 11 | "Unfortunately, the average CTR for this |
| 12 | campaign was at 0.06 percent, which is much |
| 13 | lower than other tactics on the plan. |
| 14 | Recognizing this, we shifted the remaining |
| 15 | Google display budget to Facebook display in |
| 16 | September, which has much stronger CTRs." |
| 17 | Did I read that correctly? |
| 18 | A. That's correct. |
| 19 | Q. What does CTRs stand for? |
| 20 | A. Click-through rate. |
| 21 | Q. And what do you understand to be |
| 22 | conveyed here in this report about shifting |

|  | Page 80 |
|---|---|
| 1 | spend from Google display to Facebook display? |
| 2 | MR. GROSSMAN: Objection to form. |
| 3 | THE WITNESS: That they shifted the |
| 4 | remaining Google display budget to Facebook |
| 5 | display in September. |
| 6 | BY MR. GREENBAUM: |
| 7 | Q. So your media agency is recommending |
| 8 | shifting spend from purchasing display |
| 9 | advertising using Google to purchasing display |
| 10 | advertising using Facebook here -- |
| 11 | MR. GROSSMAN: Objection to form. |
| 12 | BY MR. GREENBAUM: |
| 13 | Q. -- is that right? |
| 14 | MR. GROSSMAN: Objection to form and |
| 15 | foundation. |
| 16 | THE WITNESS: That is what it says. |
| 17 | BY MR. GREENBAUM: |
| 18 | Q. Do you recall telling your media |
| 19 | agency not to shift spend from Google to |
| 20 | Facebook? |
| 21 | A. I do not recall that. |
| 22 | Q. Okay. You can put this document |

|  | Page 81 |
|---|---|
| 1 | aside. |
| 2 | So we talked in your last deposition |
| 3 | about when you personally learned about this |
| 4 | lawsuit. |
| 5 | Do you recall that? |
| 6 | A. I'm sorry. What's the question? |
| 7 | Q. I want to talk to you about -- in |
| 8 | your role as a representative of NHTSA about |
| 9 | when NHTSA first learned of this lawsuit. |
| 10 | Do you know when that was? |
| 11 | A. Sometime in the end of February, |
| 12 | beginning of March. |
| 13 | Q. So was that after the Department of |
| 14 | Justice filed suit? |
| 15 | MR. GROSSMAN: I just want to |
| 16 | caution the witness not to reveal the content |
| 17 | of any attorney-client communications related |
| 18 | to this case. You can answer with regard to |
| 19 | when certain communications happened. |
| 20 | THE WITNESS: It's my understanding |
| 21 | from NHTSA that it was the end of February, |
| 22 | beginning of March. |

Page 82

1    BY MR. GREENBAUM:
2    Q.    And that's after the Department of
3    Justice filed this lawsuit?
4    A.    That's my understanding.
5    Q.    Prior to the Department of Justice
6    reaching out in connection with this lawsuit,
7    did any of NHTSA's media agencies raise any
8    concern that NHTSA had suffered damage as a
9    result of any anticompetitive action by Google?
10         MR. GROSSMAN:  Objection to form and
11   foundation.
12         THE WITNESS:  Can you repeat the
13   question.
14         BY MR. GREENBAUM:
15   Q.    Prior to the Department of Justice
16   reaching out in connection with this lawsuit,
17   did any of NHTSA's media agencies raise any
18   concern that NHTSA had suffered damages as a
19   result of any anticompetitive action on the
20   part of Google?
21         MR. GROSSMAN:  Objection to form and
22   foundation.

Page 83

1          THE WITNESS:  No, I don't remember.
2    No.
3          BY MR. GREENBAUM:
4    Q.    Prior to February of 2023, did
5    anyone at NHTSA raise any concern that NHTSA
6    had suffered damages as a result of any
7    anticompetitive action by Google?
8          MR. GROSSMAN:  Objection to form and
9    foundation.
10         THE WITNESS:  Not -- I do not
11   recall.
12         BY MR. GREENBAUM:
13   Q.    Am I correct that Stratacomm or its
14   subcontractors purchase media on behalf of
15   NHTSA in connection with their campaigns that
16   they run?
17         MR. GROSSMAN:  Objection to form.
18         THE WITNESS:  Can you repeat the
19   question.
20         BY MR. GREENBAUM:
21   Q.    It was a poorly worded question, so
22   let me try again.

Page 84

1    A.    Yes.  Thank you.
2    Q.    Am I correct that Stratacomm
3    purchases were on behalf of NHTSA?
4    A.    Yes.
5    Q.    Does Stratacomm have a contract with
6    Google to purchase media on behalf of NHTSA?
7          MR. GROSSMAN:  Objection to form.
8          THE WITNESS:  So we have several
9    Stratacomm contracts.  So I guess it would
10   depend on which one you're referring to.
11         BY MR. GREENBAUM:
12   Q.    I am trying to ask a different
13   question which is:  Who has the contract with
14   Google?  Do you know if Stratacomm has a
15   contract with Google to purchase advertising?
16   A.    So, again, you need to be a little
17   bit more specific because we have multiple
18   Stratacomm contracts.
19   Q.    I am not talking about NHTSA's
20   contracts with Stratacomm.  I am asking a
21   separate question.
22         Does Stratacomm have a contract with

Page 85

1    Google to purchase advertising?
2    A.    So I don't and my -- my COR --
3    actually, not myself.  But our CORs do not --
4    we don't see that information because that
5    would be almost considered a subcontractor
6    really in the sense of contract law.  And we --
7    we don't -- we just work with our contractor.
8    Q.    Understood.  Do you review invoices
9    from Google?
10   A.    Again --
11         MR. GROSSMAN:  Objection to form.
12         THE WITNESS:  Again, so if it was
13   within the paid media buy, NHTSA does receive
14   invoices from the contractor being Stratacomm
15   or Ad Council or our other -- other
16   contractors, and, you know, if that's proof of
17   showing payment, then they would have that
18   included.
19         BY MR. GREENBAUM:
20   Q.    And in connection with your
21   preparation today.  Did you review any invoices
22   from Google?

22 (Pages 82 - 85)

Page 94

1  BY MR. GREENBAUM:
2  Q. In connection with today's
3  deposition, did you ask your COR about the
4  process by which Google's -- gets paid for the
5  services it provides to your ad agencies?
6       MR. GROSSMAN: Objection to form.
7       THE WITNESS: I didn't specifically
8  ask Google. I just -- I was asking in general
9  how they do it and how they use -- you know,
10 the process they go through to do approvals of
11 invoices.
12      BY MR. GREENBAUM:
13 Q. And are the -- putting aside that
14 you don't know who the invoices are billed
15 to --
16 A. Uh-huh.
17 Q. -- is the invoice for Google
18 services on the vehicle campaigns billed to
19 NHTSA?
20 A. No. It gets billed to our ad -- you
21 know, whomever is doing the -- the buy.
22 Q. And that whomever could be one of

Page 95

1  Stratacomm's subcontractors?
2       MR. GROSSMAN: Objection to form and
3  foundation.
4       THE WITNESS: Yes. Like, as I
5  explained, and they do it on behalf of NHTSA.
6       MR. GREENBAUM: Okay. You can put
7  this to the side.
8       I think -- can we take a break, and
9  if we take a break now, I might be able to wrap
10 up quickly.
11      MR. GROSSMAN: Sure.
12      THE WITNESS: Great.
13      MR. GREENBAUM: Let's go off the
14 record.
15      THE VIDEOGRAPHER: Off the record at
16 4:34. This ends Media Unit No. 1. We are off
17 the record.
18      (A short recess was taken.)
19      THE VIDEOGRAPHER: On the record at
20 4:44. This begins Media Unit 2 in the
21 testimony of Susan McMeen.
22      MR. GREENBAUM: Ms. McMeen, thank

Page 96

1  you very much for your time. I have no further
2  questions, but appreciate all the time we spent
3  together over two days. So thank you.
4       THE WITNESS: Thank you.
5       MR. GROSSMAN: Nothing further.
6       Can we get a read-out of the final
7  time spent on the record.
8       THE VIDEOGRAPHER: Final time was 80
9  minutes.
10      MR. GROSSMAN: I just want to -- I
11 just want to --
12      MR. GREENBAUM: Can we go off the
13 record.
14      MR. GROSSMAN: Can we go off.
15      THE VIDEOGRAPHER: Yes.
16      Going off the record at 4:44. This
17 ends the deposition.
18      (Whereupon, the proceeding was
19 concluded at 4:44 p.m.)

Page 97

1       CERTIFICATE OF NOTARY PUBLIC
2       I, Bonnie L. Russo, the officer before
3  whom the foregoing deposition was taken, do
4  hereby certify that the witness whose testimony
5  appears in the foregoing deposition was duly
6  sworn by me; that the testimony of said witness
7  was taken by me in shorthand and thereafter
8  reduced to computerized transcription under my
9  direction; that said deposition is a true
10 record of the testimony given by said witness;
11 that I am neither counsel for, related to, nor
12 employed by any of the parties to the action in
13 which this deposition was taken; and further,
14 that I am not a relative or employee of any
15 attorney or counsel employed by the parties
16 hereto, nor financially or otherwise interested
17 in the outcome of the action.

_Bonnie L. Russo_
20      Notary Public in and for
21        the District of Columbia
22 My Commission expires: August 14, 2025

25 (Pages 94 - 97)