# EXHIBIT 10

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

UNITED STATES, et al.,   ) 1:23-cv-00108-LMB-JFA
)
)
   Plaintiffs,   )
)
vs.   )
)
GOOGLE LLC,   )
)
   Defendants.   )
_____)

- HIGHLY CONFIDENTIAL -

VIDEOTAPED DEPOSITION OF
KOBY SOUTH
August 31, 2023
9:06 a.m.

Reported by:  Bonnie L. Russo
Job No. CS6074125

HIGHLY CONFIDENTIAL

Page 2

1  Videotaped Deposition of Koby South held at:
2
3
4
5
6    Paul Weiss Rifkind Wharton & Garrison, LLP
7    2001 K Street, N.W.
8    Washington, D.C.
9
10
11
12
13
14
15
16
17
18   Pursuant to Notice, when were present on behalf
19   of the respective parties:
20
21
22

Page 4

1              I N D E X
2  EXAMINATION OF KOBY SOUTH                PAGE
3  BY MS. MORGAN                              7
4
5
6
              EXHIBITS
7
8  Exhibit 82  Solicitation/Contract/Order   75
             for Commercial Items
9            VET-AF-ADS-0000461239-287
10 Exhibit 83  E-Mail dated 6-16-21          151
             VET-AF-ADS-0000-122732-742
11
   Exhibit 84  E-Mail dated 11-1-19          210
12           Attachment
             VET-AF-ADS-0000126694-697
13
   Exhibit 85  E-Mail dated 6-13-22          227
14           Attachment
             VET-AF-ADS-0000027906-909
15
   Exhibit 86  E-Mail dated 6-14-21          242
16           Attachment
             VET-AF-ADS-0000027459-467
17
18
19
20
21
22

Page 3

1  APPEARANCES:
2  On behalf of the Plaintiffs:
3    SEAN CARMAN, ESQUIRE
     VICTOR LIU, ESQUIRE
4    ALVIN CHU, ESQUIRE
     KATHERINE E. CLEMONS, ESQUIRE
5    UNITED STATES DEPARTMENT OF JUSTICE
     450 Fifth Street, N.W., Suite 700
6    Washington, D.C. 20530
     sean.carman@usdoj.gov
7    victor.liu@usdoj.gov
     alvin.chu@usdoj.gov
8    katherine.clemons@usdoj.gov
9
   On behalf of the Defendant:
10
     ERIN J. MORGAN, ESQUIRE
11   PAUL, WEISS, RIFKIND,
     WHARTON & GARRISON, LLP
12   1285 Avenue of the Americas
     New York, New York 10019
13   ejmorgan@paulweiss.com
14    -and-
15   HEATHER MILLIGAN, ESQUIRE
     ANNELISE CORRIVEAU, ESQUIRE
16   MARTHA L. GOODMAN, ESQUIRE (Via Remote)
     PAUL, WEISS, RIFKIND,
17   WHARTON & GARRISON, LLP
     2001 K Street, N.W.
18   Washington, D.C. 20006
     hmilligan@paulweiss.com
19   acorriveau@paulweiss.com
     mgoodman@paulweiss.com
20
21 Also Present:
     Orson Braithwaite, Videographer
22   Laura Reass, Department of Veterans Affairs

Page 5

1            P R O C E E D I N G S
2              (9:06 a.m.)
3
4            THE VIDEOGRAPHER:  Good morning.
5  We are going on the record at
6  a.m. on August 31, 2023.
7            Please note that the microphones are
8  sensitive and may pick up whispering and
9  private conversations.  Please mute your phones
10 at this time.
11           Audio and video recording will
12 continue to take place unless all parties agree
13 to go off the record.
14           This is Media Unit 1 of the
15 video-recorded deposition of Mr. Koby South in
16 the matter of United States, et al., versus
17 Google LLC filed in the United States District
18 Court, Eastern District of Virginia, Alexandria
19 Division.  Case No. 1:23-cv-00108-LMB-JFA.
20           My name is Orson Braithwaite
21 representing Veritext Legal Solutions.  I am
22 the videographer.  The court reporter is Bonnie

2 (Pages 2 - 5)

Page 266

1    Q.  Do you know whether -- prior to DOJ
2  filing the lawsuit in January of 2023 against
3  Google, if anyone from DOJ notified the
4  Department of Veterans Affairs that it
5  suspected that the Department of Veterans
6  Affairs might be suffering financial damages as
7  a result of its contracts with Google?
8       MR. CARMAN:  Objection, and I will
9  instruct the witness not to answer.
10      MS. MORGAN:  I'm just asking if he
11 knows before he ever spoke to DOJ.
12      MR. CARMAN:  Yes, but then you went
13 on to ask whether anyone from DOJ notified the
14 Department of Veterans Affairs and then you
15 went on to describe the substance of a
16 conversation.
17      BY MS. MORGAN:
18   Q.  You never had any communication with
19 the Department of Justice prior to March of
20 2023 on any subject, correct?
21      MR. CARMAN:  I think I will also
22 instruct you not to answer that question.

Page 267

1       MS. MORGAN:  He's already answered
2  that question.
3       MR. CARMAN:  Then it is asked and
4  answered.
5       BY MS. MORGAN:
6    Q.  Prior to this lawsuit being filed,
7  were you aware of any anticompetitive conduct
8  on the part of Google that would affect the
9  Department of Veterans Affairs' advertising?
10      MR. CARMAN:  Objection.  Calls for a
11 legal conclusion.
12      You can answer.
13      THE WITNESS:  Can you ask that
14 question again, please.
15      BY MS. MORGAN:
16   Q.  Yeah.  Prior to this lawsuit being
17 filed, were you aware of any anticompetitive
18 conduct on the part of Google that would affect
19 the Department of Veterans Affairs'
20 advertising?
21      MR. CARMAN:  Same objection.
22      THE WITNESS:  We have received

Page 268

1  refunds from Google before for advertising, but
2  I'm not sure if it was ever really discussed in
3  a broader sense that it was specifically
4  related to anticompetitive practices, so I
5  think I would answer that with no.
6       BY MS. MORGAN:
7    Q.  How did you receive the refunds that
8  you just referenced?
9    A.  Electronic fund transfer.
10   Q.  From where?
11   A.  Google.
12   Q.  From Google directly?
13   A.  Not to me.
14   Q.  How do you know that they came from
15 Google?
16   A.  They -- we frequently get refunds
17 from ad tech providers and they end up going on
18 an invoice and then they get reallocated back
19 into paid media.
20   Q.  Was that from Google to the VA?
21      MR. CARMAN:  Object to form.
22      THE WITNESS:  In a broad sense, yes.

Page 269

1       BY MS. MORGAN:
2    Q.  What do you mean, "in a broad
3  sense"?
4    A.  Because that money will be spent on
5  advertises -- advertisements, that have been
6  authorized by the Department of Veterans
7  Affairs to its broker Reingold.
8    Q.  Does the refund come to you from
9  Reingold?
10      MR. CARMAN:  Object to form.
11      THE WITNESS:  No.  The refund comes
12 to Reingold.
13      BY MS. MORGAN:
14   Q.  The refund comes from Google to
15 Reingold?
16   A.  Correct.  Or another ad provider.
17 And it gets tracked on invoices and put back
18 into funding, that then gets spent on paid
19 media according to an approved plan or, you
20 know, budget allocation.
21   Q.  When you say "it gets tracked on
22 invoices," are you talking about invoices from

HIGHLY CONFIDENTIAL

Page 290

1 THE WITNESS: Yeah, I am
2 generalizing that I think most record retention
3 policies are somewhere in the neighborhood of
4 seven years. That would include most records.
5 I highly doubt that they are deleting patient
6 records every seven years though, but most
7 business operational documents I think are
8 seven years.
9     BY MS. MORGAN:
10    Q.   Do you use any kind of chat platform
11 to communicate at work?
12    A.   We use Teams, yes.
13    Q.   And you use the chat function inside
14 Teams?
15    A.   Yes.
16         MS. MORGAN: Okay. I think we can
17 go off the record. I think I am done on the
18 30(b)(1), but I want to just talk to my team.
19         Does anyone object to taking a
20 break?
21         MR. CARMAN: No.
22         THE VIDEOGRAPHER: The time is

Page 291

1 p.m. This ends Unit 5. Off the record.
2         (A short recess was taken.)
3         THE VIDEOGRAPHER: The time is
4 -- 4:08 p.m. We are on the record.
5         MS. MORGAN: Mr. South, I am not
6 going to have further questions for you as a
7 fact witness.
8         And before we go off the record in
9 this deposition, I do want to just reserve
10 rights -- my understanding is that last night
11 the Department of Justice informed Google that
12 there were some -- like several thousand
13 documents of Mr. South's that had not been
14 produced yet. We proceeded with the deposition
15 anyways. It was scheduled. I'll just reserve
16 the right to reopen the deposition should that
17 become necessary when we look at the documents.
18         And I have no further questions on
19 this -- in this deposition.
20         MR. CARMAN: We have no questions.
21         THE VIDEOGRAPHER: The time is
22 p.m. We are off the record.

Page 292

1     (Whereupon, the proceeding was
2 concluded at 4:08 p.m.)

Page 293

1         CERTIFICATE OF NOTARY PUBLIC
2     I, Bonnie L. Russo, the officer before
3 whom the foregoing deposition was taken, do
4 hereby certify that the witness whose testimony
5 appears in the foregoing deposition was duly
6 sworn by me; that the testimony of said witness
7 was taken by me in shorthand and thereafter
8 reduced to computerized transcription under my
9 direction; that said deposition is a true
10 record of the testimony given by said witness;
11 that I am neither counsel for, related to, nor
12 employed by any of the parties to the action in
13 which this deposition was taken; and further,
14 that I am not a relative or employee of any
15 attorney or counsel employed by the parties
16 hereto, nor financially or otherwise interested
17 in the outcome of the action.

*Bonnie L. Russo*

19 _____
20     Notary Public in and for
21     the District of Columbia
22 My Commission expires: August 14, 2025.

74 (Pages 290 - 293)