## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>     *Plaintiffs*,<br><br> vs.<br><br>GOOGLE LLC,<br><br>     *Defendant.* | No. 1:23-cv-00108-LMB-JFA |

## GOOGLE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING MOTION TO AMEND COORDINATION ORDER

Plaintiffs do not and cannot show that Magistrate Judge Anderson's order denying their motion to amend the Coordination Order was clearly erroneous or contrary to law. Google submits that Judge Anderson's order is not clearly erroneous but clearly correct and, under Rule 72(a), the Court should overrule Plaintiffs' objections and uphold Judge Anderson's well-reasoned discovery ruling.

If ever antitrust plaintiffs have had an opportunity to develop their claims in discovery, it is the Plaintiffs in this case. During the Department of Justice's ("DOJ") more than 3-year pre-suit investigation, Google produced nearly 3 million documents and made available more than 30 witnesses for depositions. The DOJ also interviewed numerous third-parties and received nearly 5 million third-party documents. In this action, Plaintiffs have taken 10 Google depositions, 20 third-party depositions, and received over 3 million more documents from Google and third-parties. But despite this voluminous record, Plaintiffs now complain that Judge Anderson's well-reasoned refusal to inject into this proceeding numerous deposition transcripts from a different

case—7 months after the close of fact discovery in this case—was somehow clearly erroneous and will result in "an uneven playing field at trial." Plaintiffs' Objection to Order, ECF No. 623 ("Pl. Obj.") at 13. Judge Anderson carefully considered and rejected this argument.

The record as a whole demonstrates that, consistent with the opinion of the MDL Court, Judge Anderson correctly recognized that the existing Coordination Order between this case and the MDL does not provide for ongoing sharing of discovery with a case that has been remanded. And against the backdrop of all the discovery Plaintiffs have already received in this action and Plaintiffs' delay in seeking to modify the Coordination Order, Judge Anderson further concluded that any purported prejudice to Plaintiffs does not justify deviating from its carefully negotiated terms. But rather than contending with Judge Anderson's sound reasoning, Plaintiffs selectively quote the hearing transcript and argue that Judge Anderson's decision "ignores" or "misconstrues" the arguments they presented before him. Plaintiffs' efforts to rearticulate before this Court the same points they raised before Judge Anderson fall far short of demonstrating that Judge Anderson's conclusions were clearly erroneous.

In fact, overruling Judge Anderson and granting Plaintiffs' motion would give Plaintiffs an unfair advantage by allowing them access to additional depositions of Google employees to inform their trial strategy while Google receives no benefit at all—and certainly no corresponding right to additional discovery of Plaintiffs. It would also prejudice the proceeding by injecting into this case depositions rife with irrelevant testimony, well after the close of fact and expert discovery and while summary judgment briefing is nearly complete. Plaintiffs and Google already have access to the same discovery record in this case. After filing suit in this forum with awareness of its expedient scheduling practices, Plaintiffs should not take one-sided advantage of discovery proceedings in another forum after discovery in this matter has closed.

The consequences under the modified proposal Plaintiffs now advance would be no different. Limiting the sharing of deposition transcripts from the Texas Case to witnesses or entities that already appear on the parties' extensive initial disclosures in this matter would still unfairly inject many deposition transcripts into this proceeding, all of which would be from either Google or third-parties that Plaintiffs deposed or could have deposed here or during the DOJ's investigation or that the DOJ interviewed or could have interviewed during its pre-suit investigation. Still, Google would receive no corresponding additional discovery of Plaintiffs.

For these reasons and as explained below, Plaintiffs' objections to Judge Anderson's order should be overruled. Plaintiffs previously represented that they "stand ready to proceed to trial on the record they have developed during discovery in this case." Plaintiffs' Opening Brief, ECF No. 551 ("Pl. Op. Br.") at 7. They should do so.

## I.   FACTUAL BACKGROUND

### A.  Plaintiffs Have Received Voluminous Discovery Related To This Action

Because of its pre-suit investigation, the DOJ had more than 3 years to develop its factual record before even initiating this proceeding. During its investigation, the DOJ deposed more than 30 Google witnesses, some more than once. Plaintiffs then took another 10 depositions of Google in this action, and Plaintiffs have access to over 6 million Google documents. Similarly, the DOJ interviewed numerous third-parties during its pre-suit investigation. The DOJ also received nearly 5 million documents from third-parties during its pre-suit investigation, and Plaintiffs deposed 20 third-parties in connection with this action. As Plaintiffs acknowledged in their briefing before Judge Anderson, discovery "indisputably closed in this case" 8 months ago, Pl. Op. Br. at 4, and the discovery record in this case is now complete. *See also* Oct. 13, 2023 Hearing Transcript, ECF No. 484 at 7:7-7:9 ("[T]he universe of discovery . . . available to be

used in this litigation is now created.").

**B. The Parties Negotiated The Coordination Order With Awareness Of The Possibility Of Remand Of The Texas Case**

In February 2023, the plaintiffs in *State of Texas et. al. v. Google LLC*, No. 4:20-cv-957 (E.D. Tex.) (the "Texas Case"), which was then consolidated with *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (S.D.N.Y.) (the "MDL"), moved for their case to be remanded to the Eastern District of Texas. *See* MDL No. 3010, ECF. No. 229 (J.P.M.L.). While the Texas Plaintiffs' remand request was pending, the parties in this case and the MDL (including Texas Plaintiffs) negotiated a coordination order allowing the sharing of discovery between those two proceedings. Google supported coordination at the time because, among other things, it offered "protection for Google's witnesses in terms of coordination of depositions." March 21, 2024 Hearing Transcript at 40:24-40:25, Texas Case ECF No. 320. And as Plaintiffs acknowledge, the parties were fully aware that remand of the Texas Case was a possibility when they negotiated the Coordination Order. *See* Pl. Obj. at 6 ("At the time the Coordination Order was being negotiated, the parties considered the possibility that one or more cases from the MDL would be transferred out of the MDL."); April 19, 2024 Hearing Transcript, ECF No. 561 ("Hearing Tr.") at 4:21-5:1 ("THE COURT: And when the coordination order was negotiated in the MDL and in this court, at that time . . . the request to transfer the case back to Texas was pending, so the parties knew that that was something that was on the horizon or could happen; is that right? MR. WOLIN: Yes, that's correct, Your Honor.").

This Court entered the Order Regarding Coordination of Discovery on June 5, 2023. *See* ECF No. 251 (the "Coordination Order"). By its terms, the Coordination Order accounts for the possibility of a Texas remand by specifically excluding parties in remanded cases from its benefits and burdens. Paragraph 9 states that "[i]f all claims brought by an MDL Plaintiff are . . .

remanded, then that MDL Plaintiff shall be treated as a Non-Party for purposes of this Order."

Paragraph 1.bb further states that "an individual or entity ceases to be a 'Party' if all the claims

that it asserts . . . have been . . . transferred" to a court other than the Eastern District of Virginia

or the Southern District of New York. As Judge Anderson recognized, nowhere does the

Coordination Order provide that coordination should take place in the event of remand, requiring

only that the parties meet and confer "regarding *whether*, and on what conditions, the transferred

case(s) should be coordinated with the MDL and the Virginia Case." Coordination Order ¶ 9

(emphasis added).

### C. The Texas Case Has Changed Substantively And Discovery Has Expanded Since Remand

Since remand, the Texas Plaintiffs have increasingly focused their case on state deceptive

trade practice act claims with little relevance to the antitrust claims at the heart of this case. For

example, the Texas Plaintiffs have a 71-paragraph "Deceptive Trade Practice Violations" section

of their complaint alleging that certain Google conduct is false or misleading under the consumer

protection laws of various states. *See* Fourth Am. Compl., MDL ECF No. 541 ¶¶ 526-97.

Moreover, when the Texas Case was consolidated with the MDL, the scope of discovery

available in the MDL (and thus the Texas Case) was similar to the discovery permitted in this

case. The MDL Scheduling Order, for example, provided for 15 total fact witness depositions

"per side"—meaning that the Texas Plaintiffs and the private plaintiffs in the MDL collectively

shared 15 total depositions of Google and third-party witnesses. MDL ECF No. 394 ¶ 6.5. But

after remand, on January 2, 2024, the Court in the Texas Case entered a Scheduling Order setting

out the scope of discovery. Texas Case ECF No. 194. Under that Scheduling Order, the Texas

Plaintiffs and Google were *each* permitted to take 40 fact witness depositions—meaning the

Texas Plaintiffs are now entitled to significantly more depositions than the Texas Plaintiffs had to share with the then-dozens of MDL Plaintiffs under the MDL Scheduling Order. *Id.* at 6.

**D. After Remand, Plaintiffs Did Not Immediately Seek To Coordinate This Case With The Texas Case**

In June 2023—after the Judicial Panel on Multidistrict Litigation ("JPML") had ordered remand, but before the Texas Case had actually been remanded—Plaintiffs emailed counsel for Google asking to meet and confer on how to handle the Coordination Order in light of remand. *See* ECF No. 623-4 (June 6, 2023 email). Following an initial discussion, the Parties deferred further discussion until the Texas Case had been transferred and the Texas court had entered a new schedule. The appeal was resolved and remand was effectuated in November 2023. Thereafter, both the Texas Court and Google recognized that continued coordination between the Texas Case and this case was unlikely. *See, e.g.*, Dec. 14, 2023 Hearing Transcript, Texas Case ECF No. 189 at 19:1-19:4 ("THE COURT: [. . . ] But it does certainly look to me like from – for the E.D.V.A., there's not really any potential for any kind of coordination at this point."); *id.* at 32:12-32:13 (counsel for Google explaining that "[t]he chances for discovery coordination with the E.D.V.A. are almost gone"). Plaintiffs also appear to have had limited expectations for continued coordination between this proceeding and the Texas Case after remand. Accordingly, and as Judge Anderson recognized, in January 2024 Plaintiffs instead pursued efforts related to coordination between *the MDL* and the Texas Case. Pl. Obj. at 7; *see also* Pl. Opening Br. at 5 (acknowledging that the parties were focused on coordinating discovery between the MDL and Texas Case). Plaintiffs do not contend that they otherwise engaged with Google regarding coordination between this case and the Texas Case until March 27, 2024, nearly 5 months after remand had been effectuated. *See* ECF No. 623-6 (Mar. 27, 2024 email). Plaintiffs then filed their motion before Judge Anderson on April 12, 2024—more than 5 months after remand had

6

been effectuated and more than a month after the MDL Court declined to enter a coordination order between the MDL and the Texas Case. *See* Pre-Trial Order No. 8 (March 6, 2024), MDL ECF No. 708.

### E.  The MDL Court Denied Coordination Between The MDL And The Texas Case

Although the MDL Court's March 6, 2024 order denying continued coordination between the MDL and the Texas Case referenced the provisions allowing for "cross-notices of depositions," the MDL Court emphasized the importance of the fact that "80% of the fact discovery period" had passed. S*ee id.* at 1. Accordingly, the MDL Court denied coordination between the MDL and the Texas Case wholesale—including provisions that would have applied both before and after the close of fact discovery.[1] *See* MDL ECF No. 700-1 ("Denied Proposed Coordination Order"). In fact, the Denied Proposed Coordination Order included the very provisions regarding sharing of depositions across cases that Plaintiffs now seek to extend to the Texas Case. *Compare* Denied Proposed Coordination Order ¶¶ 6.b & 6.d *with* Coordination Order 6.b & 6.d.[2]

---

[1] Relatedly, on April 26, 2024, representatives from the MDL Plaintiffs' Discovery Steering Committee notified Google that they intended to serve a subpoena on Texas seeking the production of deposition transcripts from Google's depositions, deposition notices, and sealed filings from the Texas Case (the "Subpoena"). Because the Subpoena contravenes the MDL Court's order denying coordination with the Texas Case and seeks confidential information Google has designated pursuant to the confidentiality order in the Texas Case, on May 7, Google sought before the MDL Court a protective order prohibiting the MDL Plaintiffs from enforcing the subpoena. *See* MDL ECF No. 782 (Google opening letter seeking a protective order); MDL ECF No. 784 (MDL Court order treating Google's letter as a motion for protective order); MDL ECF No. 789 (MDL Plaintiffs' response); MDL ECF No. 790 (Google's reply). Google explained to the MDL Court that, among other issues, "enforcing the Subpoena raises the risk that discovery from the Texas Case seeps into the Virginia Case in contravention of Judge Anderson's order denying coordination." MDL ECF No. 790 at 3. The MDL Court has not yet ruled, and a hearing on the matter is scheduled for May 21.

[2] In their opening brief before Judge Anderson, Plaintiffs sought to extend Paragraphs 2, 2.e, 6.b, and 6.d from the Coordination Order to the Texas Case. *See* Pl. Op. Br. at 6-7.

**F.  Judge Anderson Considered And Rejected Plaintiffs' Attempt To Obtain Discovery From Texas After Discovery Has Concluded**

Only after the MDL Court denied coordination between the Texas Case and the MDL did Plaintiffs here seek to extend the Coordination Order to the Texas Case. Specifically, Plaintiffs filed their motion on April 12—more than 5 months after the Texas Case was remanded and more than a month after the MDL Court's ruling. Plaintiffs' Mot. to Amend Order, ECF. No. 550.

After oral argument, Judge Anderson denied Plaintiffs' motion to extend coordination to the Texas Case from the bench. In doing so, Judge Anderson explained that his decision was based on "review[] [of] the materials that the parties submitted" and "the argument that's been presented here today." Hearing Tr. at 20:19-20:21; *see also* Order Denying Plaintiffs' Mot. to Amend Coordination Order, ECF No. 560. The record as a whole—including the full transcript, attached hereto as Exhibit A—reflects that:

- Approximately a quarter of Plaintiffs' briefing before Judge Anderson was dedicated to Plaintiffs' argument that denying coordination would purportedly create an information asymmetry favoring Google, *see* Pl. Op. Br. at 2, 7-9; Plaintiffs' Reply Brief, ECF No. 558 at 5-7, as was a significant portion of Plaintiffs' oral argument, Hearing Tr. at 6:10-6:18; 12:19-13:16; 17:5-17:14. Judge Anderson considered Plaintiffs' arguments about the importance of receiving their requested discovery from the Texas Case, questioning why, if the matter was so important, Plaintiffs had waited several months after the Texas remand in order to bring this issue before the Court. *Id.* at 8:1-8:20.

- Judge Anderson confirmed with Plaintiffs that, at the time the Coordination Order was negotiated, the parties were aware that the Texas Plaintiffs were seeking remand and nonetheless negotiated an order providing that upon transfer, the "party whose case gets transferred is considered to be a non-party." *Id.* at 4:10-5:24.

- Judge Anderson recognized that the Texas Case had procedurally and substantively diverged from the MDL upon remand, *id.* at 14:7-14:16, as Google's briefing explained, Google's Opposition Brief, ECF No. 553 ("Google Opp.") at 4.

- Google explained to Judge Anderson that it had obviated any potential burden to third-parties it had subpoenaed in the Texas Case for documents and deposition transcripts from this action by merely asking those third-parties to consent to reproduction of that discovery. *See id.* at 7.

- Although Plaintiffs' briefing had described coordination between the Texas Case and the MDL as "not occur[ring] to date," Pl. Op. Br. at 5, Judge Anderson confirmed with Plaintiffs that the MDL Court in fact denied coordination, Hearing Tr. at 6:19-7:8. Judge Anderson then further confirmed the contours of the MDL Court's denial with Google. *Id.* at 15:21-16:6.

Judge Anderson made a well-considered ruling in light of all these facts.

### G. Dissatisfied With Judge Anderson's Ruling, Plaintiffs Interject Themselves Into The Texas Proceedings

On April 23, 2024, Google and the Texas Plaintiffs filed a Joint Motion for an Order for Reproduction of Discovery in Texas seeking the entry of a Proposed Order that would enable parties in the Texas Case to use relevant third-party discovery materials produced by third-parties in this case. Texas Case ECF No. 402. Consistent with Google's prior representations, the Joint Motion sought only those materials produced by third-parties and did not seek the use of materials produced by Plaintiffs in this case. *See* Google Opp. at 7.

The Texas Court then held a hearing on May 6 regarding Google and the Texas Plaintiffs' Joint Motion. During that hearing, counsel for the DOJ intervened and requested an amendment to the Texas Protective Order that would "provide the ability of the plaintiffs in the EDVA action to obtain . . . deposition transcripts [from the Texas Case]." May 6, 2024 Hearing Transcript, Texas Case ECF No. 475 at 9:24-10:1. In other words, Plaintiffs have made a request of the Texas Court that this Court has specifically denied. The judge shopping should stop.

### II.   LEGAL STANDARD

Under Rule 72(a), a Magistrate Judge's nondispositive ruling should stand unless it is "clearly erroneous or contrary to law," *see* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A), and a

Magistrate Judge's decision in discovery matters "should be afforded 'great deference,'" *Malibu Media, LLC v. John Does 1-23*, 878 F. Supp. 2d 628, 629 (E.D. Va. 2012) (Hilton, J.) (affirming Magistrate Judge's order). A ruling is "clearly erroneous" only when the District Judge has "the definite and firm conviction that a mistake has been committed" with respect to its factual underpinnings. *Tafas v. Dudas*, 530 F. Supp. 2d 786, 792 (E.D. Va. 2008) (internal quotation and citation omitted). A ruling is "contrary to law" only when "it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Attard Indus. v. United States Fire Ins. Co.*, 2010 WL 3069799, at *1 (E.D. Va. Aug. 5, 2010) (citations omitted) (affirming Magistrate Judge's order). It is "extremely difficult to justify" the modification or alteration of the Magistrate Judge's nondispositive rulings. *Malibu Media*, 878 F. Supp. 2d at 629 (citation omitted).

## III.   ARGUMENT

Because Plaintiffs identify no statutes, case law, or procedural rules misapplied by Judge Anderson, the only relevant question is whether Judge Anderson's ruling was so clearly erroneous as to meet the "extremely difficult" hurdle of overturning a nondispositive ruling. It was not.

*First,* the record as a whole (including the transcript of the hearing before Judge Anderson) demonstrates that Judge Anderson did not ignore or misinterpret any of Plaintiffs' arguments. *Second*, Plaintiffs' attempt to relitigate the same factual arguments that failed to persuade Judge Anderson is just as unavailing now as it was then: on the merits, the record demonstrates that extended coordination is both unnecessary in light of Plaintiffs' wide-ranging access to discovery and prejudicial to Google and the proceeding. *Third*, Plaintiffs' last-ditch effort to modify the contours of proposed coordination with the Texas Case not only validates

Judge Anderson's reasoning for denying coordination in the first place, but also fails to remedy the disarray and unfairness that amending the Coordination Order would cause.

### A. Judge Anderson Was Aware Of And Considered Each Of The Facts Plaintiffs Argue He Ignored

Rather than identify any factual missteps by Judge Anderson that could plausibly satisfy the demanding "clearly erroneous" standard, Plaintiffs instead relitigate the arguments they raised in their initial briefing and at oral argument. Plaintiffs' bald assertion that Judge Anderson ignored the facts and arguments they repeatedly put before him is both squarely refuted by the record and an insufficient basis to overrule Judge Anderson's order in any event. *See DNCSI Sols., LLC v. Landmore Inc.*, 2020 WL 6252346, at *3 (W.D. Va. Oct. 23, 2020) ("An order is not clearly erroneous or contrary to law merely because it does not address one of the parties' arguments."); *Marley v. Univ. of S.C.*, 2010 WL 3852175, at *2 (D.S.C. Sept. 27, 2010) (declining to find error when a plaintiff objected to Magistrate Judge's report and recommendation on the basis that the report erred by failing to address every argument presented).[3]

Plaintiffs argue that Judge Anderson: (1) ignored the alleged prejudice to them arising from a denial of coordination with the Texas Case; (2) ignored the burden Google is purportedly placing on third-parties and others; and (3) misinterpreted the MDL Court's order denying

---

[3] Plaintiffs cite *TransWorld Medical Devices, LLC v. Cleveland Clinic Foundation*, 2019 WL 6693704 (W.D.N.C. Dec. 6, 2019), to suggest that a court may sustain objections to a Magistrate Judge's ruling if the Magistrate Judge did not consider all their arguments. That case is inapposite because it involved review of a recommendation subject to *de novo* review, *id*. at *1—a standard that, as Plaintiffs admit, *see* Pl. Obj. at 12, has no bearing on whether Judge Anderson's ruling in this case was "clearly erroneous." *Compare* Fed. R. Civ. P. 72(b)(3) *with* Fed. R. Civ. P. 72(a).

coordination between the Texas Case and the MDL. None of these assertions are borne out by the record.

> **1. Judge Anderson Confirmed That Plaintiffs' Prejudice Arguments Are Overstated Given The Text Of The Coordination Order And Plaintiffs' Delay**

Rather than ignoring Plaintiffs' arguments about prejudice, Judge Anderson confirmed that, when negotiating the Coordination Order, Plaintiffs were unconcerned about prejudice arising from a potential remand of the Texas Case. *See, e.g.*, Hearing Tr. at 4:10-6:1. As they did before Judge Anderson, Plaintiffs attempt to argue otherwise, asserting that "[t]he Coordination Order was designed to eliminate [the] advantage" Google would have "because of the additional knowledge and impeachment material gained through conducting additional discovery in the Texas Case." Pl. Obj. at 15-16. But as Judge Anderson repeatedly confirmed, the Coordination Order was designed to do no such thing. Instead, Judge Anderson clarified that Plaintiffs agreed to provisions in the existing Coordination Order providing that, upon transfer, "the party will be a non-party." Hearing Tr. at 5:7-5:10; 5:21-5:23; *see also id.* at 17:25-18:17 (Judge Anderson demonstrating a close reading of the Coordination Order by directly quoting Paragraphs 1.bb and 9). That Plaintiffs agreed to such provisions is unsurprising—as Google argued before Judge Anderson, *see, e.g.*, Google Opp. at 2, remand of the Texas Case will not cause Plaintiffs prejudice given the voluminous discovery record from the DOJ's investigation and developed throughout this proceeding when discovery was still open.[4] *See also supra* at 1, 3. Indeed, as

---

[4] Moreover, Plaintiffs' extensive discovery record in this case and the substantive divergence of the Texas Case upon remand render Plaintiffs' reliance on the out-of-circuit case *In re BofI Holdings, Inc. Securities Litigation*, 2021 WL 4460751 (S.D. Cal. Sept. 29, 2021) inapposite. There, the Court ordered defendants to produce deposition transcripts from a related proceeding because, among other things, the plaintiff had "pointed to specific portions of the publicly-filed excerpts of the depositions" demonstrating their relevance, defendants "seemingly" agreed that the testimony was relevant, and there were already "substantial information asymmetries" in the

Judge Anderson further observed, Plaintiffs' delay in bringing this issue before the Court confirms Plaintiffs do not suffer actual prejudice. *See* Hearing Tr. at 8:1-8:20.

### 2. There Is No Burden To Third-Parties That Judge Anderson Should Have Considered

Plaintiffs fault Judge Anderson for ignoring a burden to third-parties that does not exist.[5] As Plaintiffs concede, Judge Anderson was aware that Google issued subpoenas to third-parties in the Texas Case for documents and deposition transcripts from this action, *see* Pl. Obj. at 3, and Judge Anderson was further aware that those subpoenas sought only those third-parties' consent to use in the Texas Case the materials they produced in this action. *See supra* at 9; Google Opp. at 7. Rather than addressing Google's existing efforts to minimize any purported burden, Plaintiffs instead insist that third-parties "unnecessarily hav[e] to respond to duplicative discovery requests in the two cases." Pl. Obj. at 17. Plaintiffs further claim that seeking consent from third-parties to use the discovery from this action in the Texas Case somehow provides Google with the benefit of "one-way sharing of information" from this case to the Texas Case. *Id.* at 18. But the information Google seeks to use from third-parties in the Texas Case is the very same information that Plaintiffs have access to in this case. And given that all but a handful of the third-parties subpoenaed in the Texas Case have already taken the simple step of consenting to reproduction of their documents and deposition transcripts from this action, there is no "burden" that Judge Anderson ought to have addressed. Accordingly, Plaintiffs' reliance on

---

case in which the deposition transcripts were ordered to be produced. *Id.* at *3-5. Plaintiffs established none of the foregoing before Judge Anderson, nor do they do so here.

[5] For the avoidance of doubt—and although at various points Plaintiffs refer to Google seeking in the Texas Case materials from Plaintiffs or federal agencies in this action, *see, e.g.*, Pl. Obj. at 9, 17—the only materials from this action that Google is currently seeking in the Texas Case are third-party materials. *See* Texas Case ECF No. 402 (Joint Motion for an Order for Reproduction of Discovery filed in the Texas Case seeking only materials from non-parties in the Virginia Case).

*United States v. Prokop*, 2012 WL 2375001 (D. Nev. Jun. 22, 2012) is misplaced because, unlike in that case, Plaintiffs have failed to articulate a legitimate burden that Judge Anderson ought to have considered.

### 3. Judge Anderson Understood And Was Unpersuaded By Plaintiffs' Tortured Interpretation Of The MDL Court's Denial Of Coordination

In their opening brief before Judge Anderson, Plaintiffs attempted to obscure and avoid the MDL Court's order rejecting further coordination with the Texas Case, stating that coordination between the Texas Case and the MDL "was contingent on obtaining approval in the MDL, which has not occurred to date." Pl. Op. Br. at 5. In truth, the MDL Court denied the request for coordination (which would have given Plaintiffs access to the transcripts that they seek here). Judge Castel's reasoning—that discovery in the MDL was roughly 80% complete, *see* Pre-Trial Order No. 8, MDL ECF No. 708 at 1, applies with even greater force here, where discovery is 100% complete and has been for 8 months. Despite Plaintiffs' intentional mischaracterization of the MDL Court's order in their briefing, Judge Anderson clarified the scope of the MDL Court's order during oral argument and ruled based on the correct understanding that the MDL Court denied coordination between the MDL and the Texas Case wholesale:

> THE COURT: Well, your brief says that the New York court has not -- that the approval of the New York court has not occurred to date.
> MR. WOLIN: Yes. That's correct, Your Honor.
> THE COURT: It was denied; right?
> MR. WOLIN: It was denied.
>
> . . .
>
> THE COURT: . . . And that is -- that is troublesome that you would write a brief and present it to the Court in a matter that has been presented to a district judge in the MDL and decided and tell me that it has not -- that nothing has occurred to date.

Hearing Tr. at 6:19-6:24; 9:11-9:15. Accordingly, there can be no meaningful dispute that Judge Anderson considered—and was ultimately unpersuaded by—Plaintiffs' characterization of the MDL Court's order as anything less than a denial of discovery coordination. *See also id.* at 22:6-22:13 (Judge Anderson explaining that the MDL Court denied a request for discovery); *id.* at 15:21-15:24 (Judge Anderson pressing for additional detail regarding the MDL Court's "decision not to coordinate between Texas and the MDL proceeding").

Undeterred by Judge Anderson's caution, Plaintiffs continue to press their tortured reading of the MDL Court's order. Specifically, they argue without support that the MDL Court was "only concern[ed]" with "the ability of MDL Plaintiffs and Google to complete discovery by June 28, 2024," and they imply that the MDL Court did not and would not oppose injection of discovery materials from the Texas Case into the MDL. Pl. Obj. at 18-19. Such an argument puts form over substance. While the MDL Court's order expressed concerns about the impending fact discovery deadline in the MDL, its impact was to deny all coordination between the MDL and the Texas Case, including provisions applicable after the close of fact discovery. *See supra* at 7.

Plaintiffs resist the clear implication of the MDL Court's order because it alone proves that Judge Anderson's ruling cannot be clearly erroneous. Indeed, courts within this circuit have held that a Magistrate Judge's decision is not clearly erroneous or contrary to law when the Magistrate reached the same decision as another court. *See, e.g.*, *Bruce v. Hartford*, 21 F. Supp. 3d 590, 596-97 (E.D. Va. 2014) (holding Magistrate Judge's decision not clearly erroneous where the Magistrate followed the logic of another district court decision); *Morrison v. Astrue*, 2011 WL 1303651, at *3 (W.D.N.C. Mar. 31, 2011) (adopting Magistrate Judge ruling following persuasive out-of-circuit case law as "[t]he court fully concurs in such application of persuasive precedent as such opinions appear to be well reasoned").

Finally, none of the remaining cases cited by Plaintiffs suggest that Judge Anderson's ruling is clearly erroneous. Specifically, Plaintiffs cite to *Wall v. Rasnick*, 42 F.4th 214 (4th Cir. 2022) and *Pennington v. Midland Credit Mgmt., Inc.*, 2010 WL 3187955 (E.D. Va. Aug. 9, 2010) to suggest that Judge Anderson's "one-page order provide[d] no explanation of how []he reached []his conclusion" and that Judge Anderson "did not elaborate on his reasoning" for finding that the requested discovery materials were not relevant. Pl. Obj. at 14. But Judge Anderson's reasoning was not limited to a "one-page order" but instead reflected the entire record, and it incorporated "the reasons stated from the bench," ECF No. 560, including an assessment that "the Texas case is a much different case now that it's in Texas than it was in the MDL." Hearing Tr. at 21:20-21:22. Indeed, this Court has previously affirmed similarly brief orders on discovery motions from the Magistrate incorporating reasoning "stated from the bench." *See, e.g.*, Order, *Roundabousch v. MTD Prods., Inc.*, No. 1:09-cv-00235-LMB-JFA (E.D. Va. Jul. 16, 2009) (Brinkema, J.), ECF Nos. 71, 126 (overruling objection to Magistrate Judge Anderson's Order where that Order simply stated "upon consideration of the motion, the memorandum in support, the defendants' opposition, the plaintiff's reply and the arguments of counsel, and for the reasons stated from the bench, it is hereby ordered . . . ." (internal citations omitted)).

**B. There Is No Good Cause To Amend The Coordination Order, And Doing So Would Prejudice Google And The Proceeding**

The DOJ had nearly unlimited opportunity for discovery during its over 3-year pre-suit investigation, and Plaintiffs have received voluminous discovery since. After filing suit in this forum with full awareness of its expedient scheduling practices, Plaintiffs should not take one-sided advantage of discovery proceedings in another forum after discovery in this matter has closed. Contrary to Plaintiffs' suggestion of a "level" playing field, extending coordination

would cause very real prejudice to Google and this proceeding: Plaintiffs would be allowed additional discovery of Google, without Google receiving any corresponding discovery of Plaintiffs. Moreover, use of that discovery—imported from a different case—would potentially confuse the issues here. Finally, Google has not taken inconsistent positions regarding coordination.

> ### 1.   Extending Coordination To The Texas Case Is Not Necessary To Cure An Information Asymmetry And Would Instead Create One

To cure an alleged asymmetry that does not exist, Plaintiffs' proposed modification would disrupt the proceedings in this case, where fact discovery has now been closed for 8 months, summary judgment briefing is nearly complete, and trial begins in just a few months.

Unfettered by deposition limits during its wide-ranging pre-suit investigation, the DOJ chose to depose more than 30 Google witnesses, some more than once. Plaintiffs then took another 10 depositions of Google in this action, and Plaintiffs have access to over 6 million Google documents. Plaintiffs' purported information asymmetry boils down to a reality present in every case involving corporate litigants: corporate litigants always have more institutional access to and knowledge about their own employees. But that is an out-of-court asymmetry untethered from the evidence each side in this case has in the discovery record.

Moreover, the DOJ's pre-suit investigation involved numerous interviews with third-parties and access to nearly 5 million third-party documents—before this litigation even began. And unlike the situation in *BofI*, where the Defendant "maintain[ed] complete control" over the introduction of deposition transcripts from a related case, *In re BofI*, 2021 WL 4460751 at *4, Google opposes the use of *all* deposition transcripts from the Texas Case in this case. Thus, by its own terms, Google would not be able to use additional deposition transcripts from the Texas Case in this case either.

Rather than cure an information asymmetry, Plaintiffs' request would create one: Plaintiffs would receive additional depositions of Google witnesses that they could use to structure their trial presentations, without providing Google any corresponding additional discovery of Plaintiffs. There remain dozens of potential federal government employee witnesses on Plaintiffs' initial disclosures list that Google would have liked to depose but could not, and will not be able to now that discovery in this case is closed. Plaintiffs' initial disclosures alone list 35 employees of federal government agencies. Google was not able to depose most of these witnesses given the 10-deposition limit. Both parties were, and should remain, bound by the appropriate discovery limitations in this case. *See Wiles v. Black & Boone, P.A.*, 2022 WL 16836204, at *1 (M.D.N.C. Aug. 4, 2022) (denying motion to reopen discovery to allow plaintiffs to take more depositions after close of fact discovery without corresponding discovery for defendants).

Plaintiffs' requested modification to the Coordination Order also risks confusing the antitrust issues at the heart of this case with tangential state-law specific issues relevant to the Texas Case, and it will generate a large amount of additional discovery material for the parties and the Court to sort through. *Mims v. City of Chicago*, 2021 WL 5006649, at *6 (N.D. Ill. Oct. 28, 2021) (denying motion to reopen discovery for lack of good cause in a case where "[t]here was enough discovery here to choke a horse" (internal citation and quotations omitted)). As highlighted by Judge Anderson, this case and the Texas Case concern different sets of claims. Hearing Tr. 21:20-21:25; *see also supra* at 8.[6]

---

[6] Plaintiffs cannot obscure the obvious differences between this case and the Texas Case by pointing to an out-of-context Google statement discussing similarities between the cases. *See* Pl. Obj. at 20 n.11 (citing ECF. No. 44-2). This statement made by Google was followed by Texas Plaintiffs' Fourth Amended Complaint on May 5, 2023, in which the Texas Plaintiffs introduced 71 paragraphs of substantive, state-specific deception allegations. MDL ECF No. 541 at

## 2. Google Has Not Taken Inconsistent Positions

While irrelevant to the merits question before the court, Plaintiffs take certain actions and statements out of context in an attempt to paint Google as taking inconsistent positions regarding Plaintiffs' request to modify the Coordination Order. But although Google previously argued in favor of and ultimately complied with various levels of coordination, circumstances have materially changed: discovery in this action has closed, the Texas Case has been remanded and has changed from when it was part of the MDL, and the MDL Court declined to order coordination between the Texas Case and the MDL. Given these developments, many of the reasons animating Google's support for coordination have become moot. As counsel for Google has explained: "[T]he key benefit to Google, in the context of the coordination order, was protection for Google's witnesses in terms of coordination of depositions." March 21, 2024 Hearing Transcript, Texas Case ECF No. 320 at 40. Amending the Coordination Order now would provide no benefit to Google while allowing Plaintiffs to receive the windfall of additional discovery.

Plaintiffs cite to a general statement on coordination that Google's counsel made during a March 21, 2024 hearing in Texas, after the MDL Court declined to extend coordination between Texas and the MDL. The statement that Google intended to continue "effectuation of the existing coordination order that was entered in Virginia and the MDL" says nothing about the relief sought by Plaintiffs here, but rather, referred only to joint efforts by Google and the Texas Plaintiffs to ensure the Texas Plaintiffs continued to receive access to both Google and third-party materials that Texas Plaintiffs previously had access to prior to remand. In fact, when taken

---

¶¶ 526-97. Thus, the Google statement cited by Plaintiffs occurred under different circumstances, and the focus of the Texas case has since shifted away from the issues centered in this case.

in context of the representations Google had been making to the Texas Court since the Texas

Case had been remanded, including that "[t]he chances for discovery coordination with the

E.D.V.A. are almost gone," it is clear that Google was not anticipating nor seeking continued

coordination with the Virginia Case. *See supra* at 6. The Texas Court likewise understood as

early as December 2023 that "there's not really any potential for any kind of coordination" with

the Virginia Case. *See id*.

      Second, that Google subpoenaed third-parties and sought their consent to use materials

produced in this case reflects only Google's attempt to minimize any potential burden on third-

parties and obviate their need to substantively respond to two separate subpoenas. Because the

subpoenas imposed no additional burden on them, almost all of the third-parties have consented

to reproduction of their materials in the Texas case. *See supra* at 13. The Joint Motion for an

Order for Reproduction of Discovery only seeks to allow reproduction of a few parties' materials

where consent has thus far not been obtained.

      Third, Plaintiffs cite statements that Google made about the similarity of this case and the

MDL (which then included the Texas Case) in its motion transfer from February 2023. Pl. Obj.

at 5 n.7; *id.* at 20 n.11 (citing ECF No. 44-2). But these statements were made *before* the Texas

Plaintiffs amended their complaint to add 71 paragraphs of state-law deceptive trade practices

claims in their May 5, 2023 Fourth Amended Complaint and *before* the Texas Plaintiffs focused

much of their discovery on bolstering those non-antitrust claims. *See supra* at 18 n.6.

      Ultimately, it is not Google that has acted inappropriately with respect to coordination,

but Plaintiffs, who have attempted to engage in improper judge shopping. After having first tried,

and lost, before the MDL Court to get the outcome they seek, Plaintiffs appeared before Judge

Anderson and were less than fully forthright about the loss before the MDL Court. And once

they lost before Judge Anderson, Plaintiffs interjected themselves into proceedings in Texas to seek from the Texas Court the same relief that Judge Anderson specifically denied. *See supra* at 9.

### C.   Plaintiffs' Modified Proposal Should Be Rejected For All The Same Reasons

On appeal, Plaintiffs claim that "minor modifications" to their proposed amendment to the Coordination Order would cure the concerns raised by Google and Judge Anderson. Pl. Obj. at 19-21. For example, Plaintiffs propose a modification that would limit the sharing of deposition transcripts and exhibits from the Texas Case to witnesses or entities that appear on either party's initial disclosures. *Id.* at 20-21. But Judge Anderson was concerned about injecting more discovery into this case, and Plaintiffs' proposal to limit the additional discovery to depositions of witnesses and entities on the initial disclosures does not fix that. The parties' initial disclosures are extensive and include over 90 current or former Google employees and 250 third-party witnesses or entities. And while several current or former Google employees identified in the parties' initial disclosures have already been deposed in the Texas Case, none of *the Plaintiffs'* witnesses will be deposed in Texas.

Plaintiffs' proposed modification also does nothing to address Judge Anderson's concern that Plaintiffs are attempting to inject more discovery material into this case "on the eve of filing summary judgment motions and motions *in limine* and four months before the trial in this case." Hearing Tr. 21:17-21:19. Plaintiffs cite two cases—both inapposite—to support their argument that the sharing of Texas deposition transcripts of witnesses on the parties' initial disclosures is appropriate.[7] Neither case involved an existing coordination order, and, importantly, fact

---

[7] Pl. Obj. at 20 n.12 (*citing Britt v. Livanova Holding USA Inc.*, No. 6:18-cv-3117, 2022 WL 3053753 (D.S.C. Aug. 2, 2022) and *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602 (E.D. Ky. 2011)).

discovery was still open in each case. Courts routinely reject proposals for even limited extensions of discovery for lack of good cause when fact discovery is closed. *See, e.g.*, *Smith v. City of Greensboro*, 2021 WL 5772309, at *5 (M.D.N.C. Oct. 18, 2021) (denying motion to reopen discovery because, while plaintiff described the proposed additional discovery as "limited," allowing plaintiff to re-depose 7 individuals and take an "unspecified number" of further depositions "would be prejudicial").

Plaintiffs also propose a modification that would prohibit them from sharing deposition transcripts and exhibits from the Texas Case with the MDL Plaintiffs. Pl. Obj. at 20. An agreement from Plaintiffs not to produce the depositions in the MDL does not prevent Plaintiffs from using what is in the transcripts to coordinate strategy with MDL Plaintiffs, circumventing the MDL Court's order.

Accordingly, even with the further modifications proposed by Plaintiffs, the requested modification to the Coordination Order would provide Plaintiffs additional discovery of Google to use to guide their trial strategy, while Google would receive no corresponding additional discovery of Plaintiffs' witnesses.

## CONCLUSION

For the reasons argued above, the Court should overrule Plaintiffs' objections to Judge Anderson's April 19, 2024 Order. Judge Anderson's ruling should stand because it is not clearly erroneous but clearly correct.

Dated: May 17, 2024

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
Andrew J. Ewalt (*pro hac vice*)
Justina Sessions (*pro hac vice*)
Lauren Kaplin *(pro hac vice)*
Scott A. Eisman *(pro hac vice)*
Jeanette Bayoumi *(pro hac vice)*
Claire Leonard (*pro hac vice*)
Sara Salem *(pro hac vice)*
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Daniel S. Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
David Pearl (*pro hac vice*)
James Hunsberger (*pro hac vice*)
Allison Vissichelli (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

Respectfully submitted,

 */s/ Craig C. Reilly*
CRAIG C. REILLY (VSB # 20942)
THE LAW OFFICE OF
CRAIG C. REILLY, ESQ.
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie Rhee (*pro hac vice*)
William Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB # 93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3387
Facsimile: (212) 492-0387
ejmorgan@paulweiss.com

*Counsel for Google LLC*