# Plaintiffs' Exhibit 67

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

UNITED STATES, et al.,            ) 1:23-cv-00108-LMB-JFA
                                  )
    Plaintiffs,                   )
                                  )
vs.                               )
                                  )
GOOGLE LLC,                       )
                                  )
    Defendants.                   )
_____)

VIDEOTAPED 30(b)(6) DEPOSITION OF
CENTERS FOR MEDICARE & MEDICAID SERVICES
through the testimony of
CHRISTOPHER KOEPKE
August 25, 2023
9:00 a.m.

Reported by: Bonnie L. Russo
Job No. CS6075382

Page 62

1  reflected here, that in the course of its
2  advertising work in the 2019 to '23 time period
3  that CMS has found that a media mix approach
4  that includes television, radio, and digital
5  media is the most efficient and effective way
6  to reach a target audience?
7      MR. SOSNOWSKY:  Objection to form.
8      THE WITNESS:  In the context of this
9  document that is making preplanning arguments,
10 that is correct.
11     BY MS. GOODMAN:
12     Q.  Okay.  Is it accurate -- setting
13 aside the context of the document, has CMS in
14 the course of its advertising work over the
15 2019 to '23 time period found that a media mix
16 approach that includes television, radio, and
17 digital media to be the most efficient and
18 effective way to reach the target audience?
19     MR. SOSNOWSKY:  Objection.  Form.
20     THE WITNESS:  It's such a broad
21 statement.  I believe it depends on the target
22 audience and on the project itself.

Page 63

1      BY MS. GOODMAN:
2      Q.  How about for this particular
3  project, health insurance exchange public
4  education and outreach?
5      A.  I think the key here is the word
6  "mix."  Those channels have been demonstrated
7  to each one have an impact, independent of each
8  other --
9      Q.  Well, it's accurate --
10     A.  -- or with each other.
11     Q.  It's accurate, sir, that CMS has
12 found the analytics to demonstrate a
13 correlation between the level of broadcast
14 advertising, digital search volume, innovative
15 digital tactics, and the size of the media buy,
16 correct?
17     MR. SOSNOWSKY:  Objection.  Form.
18     THE WITNESS:  Impacts the reach and
19 success of the campaign.  That is correct.
20     BY MS. GOODMAN:
21     Q.  So there's a -- there's a
22 correlative relationship among broadcast

Page 64

1  advertising, digital search volume, and
2  innovative digital tactics, and the size of the
3  media buy for the success of the campaign,
4  correct?
5      MR. SOSNOWSKY:  Objection.  Form.
6      THE WITNESS:  When you said among,
7  that suggests that the correlative relationship
8  is among all of those, and I don't think that's
9  the purpose of the statement.
10     A correlation can be done among
11 multiple variables or between a couple, and the
12 purpose here is to say that each one of these,
13 when planned out appropriately -- and so they
14 need to be put into a plan to decide what we're
15 going to do -- have correlations with reach,
16 how many people we can reach, and success,
17 which is the impact, the ROI.
18     And that's just slightly different.
19 The word among -- I'm sorry.  It just --
20 because I wasn't sure where you were going to
21 go, so I just had to clarify that point.  I'm a
22 statistical nerd.

Page 65

1      BY MS. GOODMAN:
2      Q.  So the level of broadcast
3  advertising relative to the level of digital
4  search volume have an impact on the reach and
5  success of the campaign; is that accurate?
6      MR. SOSNOWSKY:  Objection.  Form.
7      THE WITNESS:  The relative
8  broadcasting as it's related to the digital
9  search volume has an impact on the campaign?
10     BY MS. GOODMAN:
11     Q.  Okay.  How about the --
12     A.  I'm sorry.  I meant that as a
13 question to make sure I understood your
14 question.
15     Q.  Yes, that's my question.
16     A.  All right.  In this case we have
17 some evidence that top of funnel, including
18 broadcasting, can increase digital search
19 volume.
20     Q.  Okay.  And so they have a
21 correlative relationship relative to the
22 success of the campaign?

17 (Pages 62 - 65)

Page 66

1  MR. SOSNOWSKY: Objection to form.
2  THE WITNESS: I would agree with
3  that statement.
4  BY MS. GOODMAN:
5  Q. Okay. And does -- and CMS would
6  agree with that statement?
7  A. Yes. I very much represent CMS on
8  that statement.
9  Q. Sometimes CMS signs authorizations
10 to buy, correct?
11 MR. SOSNOWSKY: Objection. Form.
12 THE WITNESS: Correct.
13 BY MS. GOODMAN:
14 Q. What is the purpose of an
15 authorization to buy?
16 A. The purpose of an organization to
17 buy, it is communication between the COR, who
18 is providing technical direction, and the
19 contractor as to what media we are buying --
20 Q. Okay.
21 A. -- and with dollar amounts to begin
22 a campaign.

Page 67

1  Q. Authorizations to buy are not
2  required by CMS, correct?
3  MR. SOSNOWSKY: Objection. Form.
4  THE WITNESS: CMS requires that
5  there is an understanding of our direction for
6  how to purchase media, and an authorization to
7  buy is one mechanism for that understanding.
8  BY MS. GOODMAN:
9  Q. Okay. But it's the contracting
10 agencies, advertising agencies, who sometimes
11 request an authorization to buy, correct?
12 MR. SOSNOWSKY: Objection to form.
13 THE WITNESS: There are agencies who
14 prefer to take direction from us through an
15 authorization to buy.
16 BY MS. GOODMAN:
17 Q. And some who do not; is that
18 accurate?
19 A. That is true --
20 MR. SOSNOWSKY: Objection.
21 Foundation.
22 THE WITNESS: -- they would use an

Page 68

1  e-mail.
2  (Deposition Exhibit 78 was marked
3  for identification.)
4  MS. GOODMAN: So I am handing you
5  Exhibit 78, CMS-ADS-380931 through 380932.
6  BY MS. GOODMAN:
7  Q. This Exhibit 78 is an example of an
8  ad agency contractor requesting an
9  authorization to buy, correct?
10 A. I'm sorry. I am just taking a
11 minute here to read through it.
12 It has a slightly different look
13 than most ATBs, so that's why it's just taking
14 me a minute.
15 Q. Okay. My question is simply: As
16 reflected in the first e-mail from Erin Blazar
17 at Weber Shandwick, is this an example of a
18 contractor asking for an authorization to buy?
19 MR. SOSNOWSKY: Objection. Form.
20 THE WITNESS: I would actually say
21 no.
22 BY MS. GOODMAN:

Page 69

1  Q. Okay. And it says: "Similar to the
2  initiative AOR letter, we are requesting one
3  for Resolute, approved subcontractor on the SEP
4  and OE9, and the Weber Shandwick company."
5  That's still your testimony?
6  MR. SOSNOWSKY: Objection. Form.
7  THE WITNESS: Because this is an
8  AOR, not an ATB.
9  BY MS. GOODMAN:
10 Q. Okay.
11 A. Our authorizations to buy are
12 generally -- will follow this and will have
13 very clear direction as to what is being
14 purchased.
15 Q. Okay. And the person who signed
16 this AOR is Seth Edlavitch, yes?
17 MR. SOSNOWSKY: Objection. Form.
18 THE WITNESS: The signature I see on
19 the piece of paper that you gave me is Seth's.
20 BY MS. GOODMAN:
21 Q. And Seth is a contracting officer
22 representative?

Page 70

1  MR. SOSNOWSKY: Objection to form.
2  THE WITNESS: Seth is a COR.
3  BY MS. GOODMAN:
4  Q. And nothing in this letter, AOR
5  letter, indicates how much media to buy,
6  correct?
7  A. That is correct. This is not an
8  ATB, which would have been signed after this.
9  Q. Okay. And it doesn't say the
10 quantity -- the price to pay for any media,
11 correct?
12 A. That will come later.
13     MS. GOODMAN: Okay. Exhibit 79,
14 CMS-ADS-1139301 through 1139 -- strike that.
15     Exhibit 79, CMS-ADS-1139301 through
16 02.
17     (Deposition Exhibit 79 was marked
18 for identification.)
19     THE WITNESS: The print is getting
20 smaller.
21     BY MS. GOODMAN:
22 Q. This is an example of an

Page 71

1 authorization to buy, correct?
2 A. Yes, it is.
3 Q. And this authorization to buy does
4 not indicate the quantity of advertising to buy
5 correct, like the number of ads?
6     MR. SOSNOWSKY: Objection. Form.
7     THE WITNESS: On the second page, it
8 indicates the amount of reach that we expect to
9 get from what is being purchased.
10     BY MS. GOODMAN:
11 Q. But it's an expectation, not an
12 actual, correct?
13     MR. SOSNOWSKY: Objection. Form.
14     THE WITNESS: We will be assessing
15 actuals through the course of the campaign and
16 make shifts appropriate at that point --
17     BY MS. GOODMAN:
18 Q. Okay.
19 A. -- so this is a very strong
20 guideline as to what is expected --
21 Q. Okay. And --
22 A. -- actuals will come in the final

Page 72

1 report.
2 Q. This authorization to buy does not
3 state any particular vendor of advertising to
4 use, correct?
5 A. Specific vendors are listed in the
6 actual plan, not always the ATB.
7 Q. This one does not list any vendor,
8 correct?
9 A. This one does not list vendors.
10 They will be in the specific plan that we would
11 work to.
12 Q. Okay. And Seth Edlavitch signed
13 this authorization to buy, correct?
14 A. Seth's signature is on this
15 document.
16 Q. And he's a -- he's a COR?
17 A. He is a COR.
18 Q. Not a CO?
19 A. He is not a CO.
20     MS. GOODMAN: Okay. Let's take a
21 break.
22     THE VIDEOGRAPHER: The time is

Page 73

1 10:24. We are off the record.
2     (A short recess was taken.)
3     THE VIDEOGRAPHER: The time is
4 a.m. This begins Media Unit No. 3. We are on
5 the record.
6     MS. MILLIGAN: I will note that
7 Martha Goodman is no longer asking questions,
8 and as stated at the beginning of this
9 transcript, my name is Heather Milligan from
10 Paul Weiss on behalf of Google. And I will be
11 asking the rest of the questions for this
12 deposition.
13     And with me is -- who has joined the
14 room is my colleague, Amy Mauser.
15     MS. MAUSER: Also from Paul Weiss on
16 behalf of Google.
17     MS. MILLIGAN: I'm going to mark for
18 the record Exhibit 80, CMS-ADS-0001153897
19 through 1153923.
20     (Deposition Exhibit 80 was marked
21 for identification.)
22     THE WITNESS: Thank you.

19 (Pages 70 - 73)

Page 74

1  BY MS. MILLIGAN:
2  Q. All right. Mr. Koepke, does this
3  appear to be an invoice inventory for CMS?
4  A. It doesn't have a cover page which
5  is unique. It should usually be an e-mail
6  and/or cover page. That being said, the
7  invoices attached do look familiar as something
8  that would come from a contractor to CMS.
9  Q. All right. I will just represent to
10 you that this was produced to us out of CMS's
11 central files.
12     And could you just looking at the
13 first page ending in 897. Do you see where it
14 says: "CMS OE November 2020 invoice
15 inventory"?
16 A. Yes, I do.
17 Q. Okay. What does that mean to you?
18 A. This is a high-level listing of
19 media purchased in November for CMS at CMS's
20 direction.
21 Q. And OE stands for open enrollment?
22 A. Yes, it does --

Page 75

1  Q. Okay.
2  A. -- for Medicare in particular on
3  this one.
4  Q. Thank you. Okay.
5     Could you turn to page ending 3901.
6  And do you see that this is pages 1, 2, and 3
7  of a Google invoice?
8  A. It has an invoice number, and it has
9  Google's logo on it.
10 Q. Okay. And this was -- do you
11 understand that this was produced from CMS's
12 files?
13     MR. SOSNOWSKY: Objection. Form.
14 Foundation.
15     THE WITNESS: As you have told me it
16 was --
17     BY MS. MILLIGAN:
18 Q. Okay.
19 A. -- then I trust you, Heather.
20 Q. In preparation for this deposition,
21 did you ask to speak with anybody at CMS
22 about -- about payment and invoicing with

Page 76

1  regards to the advertising campaigns between
2  2019 and 2023?
3  A. Yes.
4  Q. All right. So turning to Page 2 of
5  3, you see listed here a series of descriptions
6  of invoiced amounts?
7  A. Yes, I do see that.
8  Q. Okay. Which, if any, of these
9  are -- were paid for open-web display
10 advertising?
11     MR. SOSNOWSKY: Objection.
12 Foundation.
13     THE WITNESS: I see two in
14 particular. One is the second line. The other
15 is the second line from the bottom.
16     BY MS. MILLIGAN:
17 Q. Okay. And which -- what purchases
18 are represented by the line items you just
19 identified?
20     MR. SOSNOWSKY: Objection. Form.
21     THE WITNESS: The second line that
22 says 2020 open enrollment display, Hispanic

Page 77

1  means that these were display ads run by Google
2  in Spanish, and we have a variety of ads that
3  they will look on.
4     And then the last one, open
5  enrollment display retargeting is similar, but
6  that it has this retargeting aspect to it --
7     BY MS. MILLIGAN:
8  Q. Okay.
9  A. -- which allows us to remind people
10 who have come to Medicare.gov that they may
11 want to complete the action they have done
12 because there is a time line coming up, a
13 deadline.
14 Q. And do you -- the last item on this
15 invoice, invalid activity, what does that apply
16 to, which one of these purchases?
17     MR. SOSNOWSKY: Objection. Form.
18     THE WITNESS: That applies across
19 the purchases. And to the specifics of that
20 $220 across a $528,000 expenditure, I cannot
21 exactly say exactly how that is spread.
22     BY MS. MILLIGAN:

20 (Pages 74 - 77)

Page 114

1 wrongful instructions to -- with regard to
2 answering questions based on the outcome of
3 today's hearing before Judge Anderson.
4     MR. SOSNOWSKY:  Okay.  We obviously
5 object to that.  You've had full cooperation
6 from Mr. Koepke, and we do not have further
7 questions.  We will read and sign.  It is our
8 position that CMS is done.
9     MS. MILLIGAN:  Thank you for your
10 time today.
11     THE WITNESS:  Thank you.  As I said,
12 this was fascinating.
13     THE VIDEOGRAPHER:  Going off the
14 record.  The time is 11:44.
15     (Whereupon, the proceeding was
16 concluded at 11:44 a.m.)
17
18
19
20
21
22

Page 115

1         CERTIFICATE OF NOTARY PUBLIC
2     I, Bonnie L. Russo, the officer before
3 whom the foregoing deposition was taken, do
4 hereby certify that the witness whose testimony
5 appears in the foregoing deposition was duly
6 sworn by me; that the testimony of said witness
7 was taken by me in shorthand and thereafter
8 reduced to computerized transcription under my
9 direction; that said deposition is a true
10 record of the testimony given by said witness;
11 that I am neither counsel for, related to, nor
12 employed by any of the parties to the action in
13 which this deposition was taken; and further,
14 that I am not a relative or employee of any
15 attorney or counsel employed by the parties
16 hereto, nor financially or otherwise interested
17 in the outcome of the action.
18
19
            _Bonnie L. Russo_
20         Notary Public in and for
21            the District of Columbia
22 My Commission expires:  August 14, 2025

Page 116

1 Victor Liu Esq
2 victor.liu@usdoj.gov
3         August 28th, 2023
4 RE:    United States, Et Al v. Google, LLC
5    8/25/2023, Christopher Koepke (#6075382)
6     The above-referenced transcript is available for
7 review.
8     Within the applicable timeframe, the witness should
9 read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12     The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 (erratas-cs@veritext.com).
16
17  Return completed errata within 30 days from
18 receipt of testimony.
19  If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
21
22        Yours,
23        Veritext Legal Solutions
24
25

Page 117

1 United States, Et Al v. Google, LLC
2 Christopher Koepke (#6075382)
3         E R R A T A  S H E E T
4 PAGE_____ LINE_____ CHANGE_____
5 _____
6 REASON_____
7 PAGE_____ LINE_____ CHANGE_____
8 _____
9 REASON_____
10 PAGE_____ LINE_____ CHANGE_____
11 _____
12 REASON_____
13 PAGE_____ LINE_____ CHANGE_____
14 _____
15 REASON_____
16 PAGE_____ LINE_____ CHANGE_____
17 _____
18 REASON_____
19 PAGE_____ LINE_____ CHANGE_____
20 _____
21 REASON_____
22
23  _____    _____
24 Christopher Koepke             Date
25

30 (Pages 114 - 117)

```
                                              Page 118
 1  United States, Et Al v. Google, LLC
 2  Christopher Koepke (#6075382)
 3          ACKNOWLEDGEMENT OF DEPONENT
 4     I, Christopher Koepke, do hereby declare that I
 5  have read the foregoing transcript, I have made any
 6  corrections, additions, or changes I deemed necessary as
 7  noted above to be appended hereto, and that the same is
 8  a true, correct and complete transcript of the testimony
 9  given by me.
10
11  _____  _____
12  Christopher Koepke          Date
13  *If notary is required
14          SUBSCRIBED AND SWORN TO BEFORE ME THIS
15          _____ DAY OF _____, 20___.
16
17
18          _____
19          NOTARY PUBLIC
20
21
22
23
24
25
```

31 (Page 118)