# Exhibit L

# In the Matter Of:

*United States vs*

*Google*

## MARK ISRAEL, PH.D.

## March 14, 2024



Page 94

```
 1    Q.    And how do you determine what ad --
 2   what types of advertising should be included in
 3   the relevant market?
 4    A.    Well, the burden, as I understand
 5   it, that would be on Plaintiffs' experts would be
 6   to show that they include enough to capture
 7   enough substitution to satisfy a hypothetical
 8   monopolist test.
 9          BY ATTORNEY NAKAMURA:
10    Q.    And do you agree that the
11   hypothetical monopolist test is the right
12   theoretical framework to use in this matter to
13   determine the boundaries of a relevant product
14   market?
15          ATTORNEY EWALT:  Objection to
16      form.
17          THE WITNESS:  I think it's part
18      of it.  It's not all of it.  It's -- but
19      it's a piece of how you analyze markets.
20          BY ATTORNEY NAKAMURA:
21    Q.    And what, then, are the other parts
22   of what you would use to determine the boundaries
```

Page 95

```
 1   of a relevant product market?
 2    A.    I mean, for me, the overarching
 3   rule of all of it is you define the market that
 4   best captures the competitive alternatives and
 5   the competitive constraints relative to the
 6   conduct at issue.  The -- so you need a -- a
 7   market definition that lets you analyze, in this
 8   case, what it -- what are the constraints on
 9   Google and the behavior described in the case.
10          That's a broad economic framework
11   but -- but one that I think guides everything.
12   Hypothetical monopolist test is, then, a piece.
13   Other pieces would include what I've called "the
14   circle principle" in other cases, that you don't
15   skip over a closer competition to include more
16   distant competition.
17          It would also -- I think that's --
18   those are the ones I can think of.  There may be
19   more.  But I think you -- the key is that it
20   explains competition, and within that, you'd want
21   to make sure it satisfies a hypothetical
22   monopolist test and make sure that it includes
```

Page 96

```
 1   the most important constraints, not skipping over
 2   any to get to more distant constraints.
 3    Q.    And what role, if any, does
 4   substitution in purchases make in helping you
 5   determine whether or not the Plaintiffs have
 6   proposed a proper relevant market for this case?
 7    A.    I mean, things that are potential
 8   substitutes for advertisers or for publishers,
 9   probably to some degree for users -- although we
10   can talk about that more -- are potentially
11   products that should be in the market.  And so if
12   you find that there -- there's evidence of
13   substitution by those -- one of the -- one or
14   more of those parties and you find that the
15   decision whether or not to include that product
16   in your market matters to your conclusions, then
17   my opinion is Plaintiffs would need to do the
18   work to determine whether that product should be
19   in or out based on the hypothetical monopolist
20   test.  And they have not done that work.
21    Q.    And when you say -- I want to --
22   strike that.
```

Page 97

```
 1          I want to understand more about
 2   what you mean by "potential substitutes for
 3   advertisers" first.
 4          Is it the case, in your
 5   opinion, that any substitution whatsoever, even
 6   one unit, would satisfy the criteria for -- for
 7   inclusion in the proper relevant market, in your
 8   opinion?
 9          ATTORNEY EWALT:  Objection to
10      form.
11          THE WITNESS:  No, I'm not saying
12      any substitution means it's in the
13      market.  I'm saying if there's reasonable
14      evidence in the record that it is a
15      substitute, then -- and it matters to
16      your conclusions, then it's Plaintiffs'
17      job to decide if it's in or it's out.
18      And they have not done that for a large
19      number of products for which there is
20      clear evidence in the record of
21      substitution.
22
```

Page 98

```
 1         BY ATTORNEY NAKAMURA:
 2     Q.   I appreciate your further
 3  commentary on what you believe Plaintiffs have
 4  done, but that was not my question.  My
 5  question -- well, I guess I'll move to another
 6  question.
 7             My question is, What degree of
 8  substitution would be sufficient, in your view,
 9  by advertisers to lead you to the conclusion that
10  a particular type of advertising should be
11  included in a relevant proper market in this
12  case?
13         ATTORNEY EWALT:  Objection to
14     form.
15         THE WITNESS:  I mean, I can't
16     answer these without referring to
17     Plaintiffs because it's -- what I'm
18     commenting on is whether Plaintiffs have
19     met their burden to define a market.
20             The degree of substitution would
21     be to show that one can omit that
22     product -- demonstrate one can omit that
```

Page 99

```
 1     product and still satisfy the
 2     hypothetical monopolist test and the
 3     circle principle and still adequately
 4     capture the set of products that are
 5     important competitive constraints on
 6     Google.
 7         BY ATTORNEY NAKAMURA:
13         ATTORNEY EWALT:  Objection to
14     form.
15
```

Page 100

```
 1
 9         BY ATTORNEY NAKAMURA:
10
21     Q.   Do you believe it would have been
22  possible, given the data and documents in this
```

Page 101

```
 1  case, to have tested for whether audio
 2  advertisements could have been properly included
 3  in a relevant market in this case?
 4         ATTORNEY EWALT:  Objection to
 5     form and foundation.
 6         THE WITNESS:  I mean, I leave it
 7     some to Plaintiffs for how they would go
 8     about doing tests they haven't done.
 9     But, in general, you -- you -- the
10     hypothetical monopolist test doesn't
11     require you to have data on every
12     possible product.  It requires you to
13     actually test that the products you've
14     included are enough.
15         BY ATTORNEY NAKAMURA:
16     Q.   At a minimum, how would you
17  describe what the -- what the hypothetical
18  monopolist test requires with respect to data?
19         ATTORNEY EWALT:  Objection to
20     form.
21         THE WITNESS:  Oh, I don't -- I
22     don't think there's any specific rule
```

Page 102

```
 1       about what data you need that you can --
 2       I mean, there are a variety of ways to do
 3       the test: by looking at evidence on
 4       what's actually happened to prices, by
 5       looking on whatever evidence you have of
 6       substitution.
 7              Economists are certainly in the
 8       business of trying to predict price
 9       effects based on the best data that we
10       can have.  Hypothetical monopolist test
11       is basically saying Plaintiffs would need
12       to do something to show that they have a
13       reliable prediction of a price increase
14       for a hypothetical monopolist of some
15       market that they have defined.  And
16       Plaintiffs haven't done that.
17              BY ATTORNEY NAKAMURA:
18       Q.     And is it your opinion that
19   Plaintiffs have done nothing to provide a
20   reliable prediction of a price increase for
21   hypothetical market -- for a -- I'm sorry.
22              Is it your opinion that
```

Page 103

```
 1   Plaintiffs' experts have done nothing to show
 2   that there would be a reliable prediction of a
 3   change in purchases as a result of a price
 4   increase?
 5              ATTORNEY EWALT:  Objection to
 6       form.
 7              THE WITNESS:  I'm sorry.  I don't
 8       understand the question.
 9              BY ATTORNEY NAKAMURA:
10       Q.     Sure.
11              What, if anything, have
12   Plaintiffs done, in your opinion, that would
13   satisfy any part of a hypo -- hypothetical
14   monopolist test?
15       A.     I mean, I -- I'm happy to look at
16   specific things.  As I sit here, I -- I -- I
17   can't see anything that they have done to show
18   that, for example, there could be a SSNIP that
19   doesn't include in-app or doesn't include social.
20              The specific things you like me to
21   comment on, the report probably does, and I'm
22   happy to, but I certainly see nothing that would
```

Page 104

```
 1       let me conclude that there could be -- that there
 2       would be a SSNIP in the absence of these other
 3       products.
```

(lines 4-11 redacted)

```
12              ATTORNEY EWALT:  Objection to
13       form.
```

(lines 14 redacted)

(lines 15-16 header, then:)

```
15              ATTORNEY EWALT:  Objection to
16       form and foundation.
```

(remaining lines redacted)

Page 106

11          BY ATTORNEY NAKAMURA:

17          ATTORNEY EWALT:  Objection to
18     form.
19

Page 108

Page 109

15          Q.     And so I understand that you were
16     retained by Google as a testifying economic
17     expert in the search litigation that went on in
18     the District of Columbia Federal Court; is that
19     correct?
20          A.     Yes.
21          Q.     And is all the testimony that you
22     provided in that case fully and completely

PRIVILEGED & CONFIDENTIAL

| Page | Line | Change | Reason |
|---|---|---|---|
| 417 | 22 | "make up the" should be "makeup, the" | Transcription error. |
| 418 | 1 | "the respondents looks" should be "the respondents, looks" | Transcription error |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Clarification. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| ■ | ■ | ■ | Transcription error. |
| 477 | 12 | "a ad server" should be "an ad server" | Clarification. |
| ■ | ■ | ■ | Transcription error. |

I have inspected and read my deposition and have listed all changes and corrections above, along with my reasons therefor.

Date: 4/10/2024       Signature: Mark A. ___