# Plaintiffs' Exhibit 85

Page 1

```
 1      IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
 2      ALEXANDRIA DIVISION
 3      -------------------------------------X
        UNITED STATES, et al.,
 4
                                    PLAINTIFF,
 5
                  -against-          Case No.:
 6                          1:23-CV-00108-LMB-JFA
 7
        GOOGLE, LLC,
 8
                                    DEFENDANT.
 9      -------------------------------------X
10
11                  DATE: September 20, 2023
12                  TIME: 9:30 A.M.
13
14          VIDEOTAPED DEPOSITION of LARA STOTT,
15      taken by the Defendant, pursuant to a Court
16      Order, held via videoconference, before
17      Rivka Trop, a Notary Public of the State of
18      New York.
19
20
21
22
23
24
25   Job No. CS6097892
```

Page 2

1  A P P E A R A N C E S:
2
3  UNITED STATES DEPARTMENT OF JUSTICE
    Attorneys for the Plaintiff
4   UNITED STATES, ET AL
    450 Fifth Street, N.W.
5   Washington, D.C. 20530
    BY: KATHERINE CLEMONS, ESQ.
6        -and-
7       RACHEL ZWOLINSKI, ESQ.
8        -and-
9       ALVIN CHU, ESQ.
10
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON,
11  LLP
    Attorneys for the Defendant
12  GOOGLE, LLC
    2001 K Street, N.W.
13  Washington, D.C. 20006
    BY: HEATHER MILLIGAN, ESQ.
14       -and-
15      MARTHA L. GOODMAN, ESQ.
16
17  ALSO PRESENT:
       ORSON BRAITHWAITE, Videographer
18
19      CAPTAIN MICHAEL ELLIS
20           *   *   *
21
22
23
24
25

Page 3

1       THE VIDEOGRAPHER: Good morning we
2  are going on the record at 9:39 a.m.,
3  on September 20, 2023. Please note
4  that the microphones are sensitive and
5  may pick up whispering, private
6  conversations, please mute your phones
7  at this time. Audio and video
8  recording will continue to take place
9  unless all parties agree to go off the
10 record.
11      This is media unit 1 of the
12 deposition Ms. Lara Stott in the matter
13 of United States et al. versus Google,
14 LLC, founded in the United States
15 District Court, Eastern District of
16 Virginia, Alexandria Division, Case No.
17 1:23-CV-00108-LMB-JFA.
18      My name is Orson Braithwaite from
19 Veritext Legal Solutions, and I am the
20 videographer.
21      The court reporter is Rivka Trop
22 from the firm Veritext Legal Solutions.
23      Counsel will now state their
24 appearances and affiliated for the
25 record.

Page 4

1       MS. MILLIGAN: Heather Milligan
2  from Paul, Weiss, Rifkind, Wharton &
3  Garrison on behalf of Google. With me
4  is my colleague, Martha Goodman.
5       MS. CLEMONS: This is Katherine
6  Clemons, with the Department of
7  Justice, on behalf of the United States
8  and the witness.
9       MS. ZWOLINSKI: Rachel Zwolinski,
10 on behalf of the United States.
11      MR. CHU: Alvin Chu, on behalf of
12 the United States.
13      MR. ELLIS: Captain Michael Ellis,
14 Air Force Recruiting Service.
15      THE VIDEOGRAPHER: Will the court
16 reporter, please, swear in the witness.
17 L A R A   S T O T T, called as a witness,
18 having been first duly sworn by a Notary
19 Public of the State of New York, was
20 examined and testified as follows:
21 EXAMINATION BY
22 MS. MILLIGAN:
23      Q.  Please state your name for the
24 record.
25      A.  Lara Stott.

Page 5

1       Q.  Good morning, Ms. Stott. We met
2  the other day.
3       Just for the record, my name is
4  Heather Milligan, and I represent Google.
5  You are the senior strategic adviser for
6  marketing to the commander at Air Force
7  Recruiting Service, is that right?
8       A.  Yes.
9       Q.  Do you understand that you are
10 testifying today as a corporate
11 representative of the Air Force?
12      A.  I do.
13      Q.  In preparing for your testimony
14 today, did you review the overarching
15 contract between the Air Force and GSD&M?
16      A.  Yes, I did.
17      MS. MILLIGAN: Can we go off the
18 record for just a minute.
19      THE VIDEOGRAPHER: The time is
20 9:41 a.m. We are off the record.
21      (Whereupon, an off-the-record
22 discussion was held.)
23      THE VIDEOGRAPHER: The time is
24 9:43 a.m., we are on the record.
25      Q.  Ms. Stott, what is GSD&M?

L. STOTT

Page 14

1  they are referring to all of the various
2  components that are covered under this task
3  order, which include regular Air Force, Air
4  Force Reserve, International Guard and Space
5  Force.
6      Q.  And in the second sentence that
7  begins, "Upon approval of the plan," who
8  approved the plans?
9      A.  GSD&M presents those plans to not
10 only the contracting officer representative,
11 but the program manager, Mr. Dickey.  And
12 Air Force Recruiting Service, the marketing
13 division, will provide approval of the plan.
14     Q.  And then once the plan has been
15 approved it says, "The contractor shall
16 execute the buy and traffic advertising
17 materials."
18         What does it mean "to execute the
19 buy"?
20     A.  It means exactly what it says.
21 Once the Air Force has directed the
22 contractor to execute a buy on behalf of the
23 Air Force, then the contractor will actually
24 purchase the advertising, whatever channel
25 or platform was approved and then actually

Page 15

1  send the advertising materials to the
2  platform or the vendor, I guess in this
3  instance, that need to be used for those
4  specific ad placements.
5      Q.  And in the answer you just gave,
6  you used the term "channel."What are
7  examples of channels?
8         MS. CLEMONS:  Objection to form.
9      A.  We refer to channels as everything
10 from a paid social, on-line video, basically
11 the type of media that it is as opposed to
12 the specific platform that it is going to be
13 on.
14     Q.  Okay.
15        And when you say specific
16 platform, what are examples of a specific
17 platform?
18     A.  That would be more like Hulu or
19 Google or Facebook, you know, the actual
20 platforms we were executing the buys with.
21     Q.  When you mentioned Google, do you
22 consider Google a single platform?
23        MS. CLEMONS:  Objection to form.
24     A.  There are multiple platforms
25 within Google that we use.  So I would say

Page 16

1  Google is a single vendor, but Google offers
2  multiple platforms for advertising.
3      Q.  Is DV360 an example of a Google
4  platform?
5      A.  Yes.
6      Q.  Just going back to your answer on
7  what happens after the plan is approved, so
8  after the plan is approved, if purchases
9  were made on DV360 -- sorry, strike that.
10        After the plan is approved,
11 pursuant to your answer, GSD&M would
12 purchase advertising via DV360?
13        MS. CLEMONS:  Objection to form.
14     A.  If DV360 was in a plan and that
15 plan was approved, then what would happen is
16 GSD&M would submit what is called an AIR
17 which is an advertising and instruction
18 record.  That AIR would list out DV360 as
19 one of the platforms that they would be
20 purchasing as well as include the cost of
21 it.  Then once they have approval on that
22 AIR from the primary COR, which is Carl
23 Taylor, then they would execute that buy,
24 yes.
25     Q.  So GSD&M would execute that buy

Page 17

1  directly with DV360 in that instance?
2         MS. CLEMONS:  Objection to form.
3      A.  They would execute the buy at the
4  approval of the Air Force and on behalf of
5  the Air Force, yes.
6      Q.  With DV360?
7      A.  They would execute whatever media
8  buys had been approved in that media plan,
9  approved in the AIR, and then they would
10 execute that with whichever vendor it was,
11 DV360 included, on behalf of the U.S. Air
12 Force, yes.
13     Q.  Does GSD&M do the purchasing or
14 does a subcontractor do the purchasing?
15        MS. CLEMONS:  Objection to form.
16     A.  If in the approved media plan it
17 says DV360, then GSD&M is authorized by the
18 Air Force to go purchase from DV360.  If
19 they were going to use a different vendor
20 for that, then the different vendor would be
21 in the plan, would have to be approved in
22 the plan, would then have to be AIRed and
23 approved in the AIR.
24     Q.  But in my example, it was DV360?
25     A.  DV360 is a media platform.  And if

Page 18

1   DV360 is approved in the media plan by the
2   COR and by the marketing division, then
3   GSD&M would submit an AIR, we would approve
4   the AIR.  And if it says DV360 in the AIR,
5   then GSD&M would be authorized on behalf of
6   the Air Force to go purchase media with
7   DV360.
8       Q.   But is it GSD&M who makes the
9   purchase or is it a subcontractor of GSD&M
10  who makes the purchase?
11          MS. CLEMONS:  Objection to form.
12      A.   So it is in the media plan --
13      Q.   I understand?
14      A.   Well, but that is the answer.  So
15  if it is in the approved media plan that it
16  is going to be DV360, then GSD&M puts in the
17  AIR that says it is going to be DV360.  Then
18  the Air Force is approving for GSD&M to go
19  spend with DV360 on behalf of the Air Force.
20  If GSD&M was going to be using a different
21  vendor to do something else, then GSD&M
22  would have to have that other vendor in the
23  plans, it would have to be approved, it
24  would have to be approved in the AIR and
25  then the Air Force would direct them to use

Page 19

1   that other vendor on behalf of the Air
2   Force.
3       Q.   Does the Air Force know whether
4   GSD&M uses a subcontractor to purchase
5   DV360?
6           MS. CLEMONS:  Objection to form.
7       A.   I really don't know how to say
8   this any more clearly.  GSD&M puts in a
9   media plan, what they are going to purchase.
10  That would include who they are purchasing
11  it from.  So if GSD&M was using a different
12  vendor to purchase any kind of media, that
13  vendor would be in the media plan.  That
14  vendor would also be in the AIR.  It would
15  have to be approved in the media plan and in
16  the AIR for GSD&M then to work with that
17  vendor on behalf of the Air Force.
18      Q.   I understand.
19          So if GSD&M does not identify
20  another vendor or contractor in that
21  instance, that means that GSD&M is not using
22  another vendor or subcontractor to purchase
23  DV360, they are purchasing DV360 from
24  Google?
25          MS. CLEMONS:  Objection to form.

Page 20

1       A.   If GSD&M has DV360 in the plan and
2   DV360 in the AIR, and that's what the Air
3   Force has approved, then that is what GSD&M
4   is authorized to purchase on behalf of the
5   Air Force.
6       Q.   Turning to section 2.7.  It says
7   "The contractor shall execute post-buy
8   analyses to compare actual delivery with
9   pre-buy estimates.  In the case of under
10  delivery, the contractor shall negotiate the
11  strongest possible make-good positions for
12  AFRS with media owners."
13          Do you see that?
14      A.   I do.
15      Q.   What does it mean to negotiate a
16  make-good position?
17      A.   So when the contractor is
18  negotiating with any media buy, typically
19  they are going and buying a certain number
20  of impressions or certain number of clicks
21  or certain number of fill-in-the-blanks.
22          When the vendor under delivers on
23  that number, then the contractor will work
24  with that vendor to come up with a
25  recommendation as to how the vendor makes

Page 21

1   good on the rest of the delivery that has
2   been guaranteed in the original purchase.
3   That make-good plan will then be presented
4   back to the Air Force.  The Air Force will
5   approve or disapprove of that plan.
6           But assuming that they approve it,
7   then GSD&M is then authorized to go execute
8   that make-good on behalf of the Air Force.
9           That would probably also require a
10  revised AIR be submitted with that.  And
11  then they would have that second level
12  approval also through the primary
13  contracting officer -- I am sorry,
14  contracting officer representative, COR.
15      Q.   You said that would probably also
16  require a revised AIR, do you know sitting
17  here today whether it would?
18      A.   I didn't actually ask that
19  question of the contracting officer, but I
20  am assuming that it would, yes.
21      Q.   What is that assumption based on?
22      A.   Because we have to give GSD&M
23  permission basically to execute anything on
24  our behalf.  And a make-good, even though no
25  additional funding is involved, it does

Page 22

1  change the delivery of that already
2  purchased number of impressions or number of
3  clicks or, again, whatever it is that we
4  have purchased for that particular ad buy.
5  Therefore that is changing the contract
6  terms of the delivery, and therefore it
7  needs approval of the Air Force before it is
8  executed.
9      Q.  If you turn to section 5, it is on
10  the next page.
11      Sort of the fourth line down says,
12  "The contractor shall clarify scheduled
13  media actually ran and obtain make-goods on
14  media that did not run or did not run with
15  proper placement.  The contractor shall
16  produce monthly cost variance reports (ETC
17  reporting) between estimated costs and
18  actual costs and provide to the government
19  program manager (PM) and/or the COR."
20      Do you see that?
21      A.  I do.
22      Q.  What is that monthly cost variance
23  report?
24      A.  So ETC means estimated to
25  completion.  And that is basically -- well,

Page 23

1  a cost variance report is we estimated we
2  were going to spend X amount, but in reality
3  we spent this amount.  It would coincide
4  with the actual delivery of the media.  So
5  we estimated we would get a million
6  impressions, the actual delivery was a
7  million 1,000 impressions.
8      Q.  So in that example GSD&M is
9  telling you that it spent more than it had
10  estimated?
11      MS. CLEMONS:  Objection to form.
12      A.  Not necessarily.  It would say in
13  the actual report what they spent versus
14  what -- I am sorry, what they estimated they
15  would spend versus what was actually spent.
16      There are multiple reasons as to
17  why they would spend slightly less or
18  slightly more.
19      Q.  Has the Air Force ever received a
20  monthly cost variance report from GSD&M?
21      MS. CLEMONS:  Objection to form.
22      A.  The Air Force receives monthly
23  cost variance reports on a monthly basis.
24      Q.  From GSD&M?
25      A.  Yes.

Page 24

1      Q.  Did you review any of those
2  reports in preparation for this deposition?
3      A.  I did not, no.
4      Q.  Do you know whether those were
5  collected and produced to Google as part of
6  this litigation?
7      MS. CLEMONS:  Objection to form.
8      A.  I don't, no.
9      Q.  Turning to the next page, under
10  section 6.2, about halfway down there is a
11  sentence that starts with "should any
12  benchmark"?
13      A.  Okay.
14      Q.  And it reads "Should any benchmark
15  or KPI not be achieved during any reporting
16  period, the contractor shall provide
17  recommended optimalizations as well as the
18  rational for the recommendations."
19      What is a recommended
20  optimization?
21      A.  I actually kind of referenced this
22  before.  So if for some reason they are
23  below a benchmark or below that number of
24  impressions, this kind of goes back to
25  make-goods.  So if for example, if we are

Page 25

1  running television advertising and for some
2  reason an ad didn't run because there was a
3  weather break-in or something like that,
4  what we are saying is that the contractor
5  needs to go back and provide recommendations
6  as to how that make-good would happen, or it
7  in the case of an optimization, they might
8  slightly change the targeting or the -- the
9  audience targeting or something along those
10  lines or maybe one of the affinities that we
11  are trying to reach for in order to achieve
12  whatever that specific KPI is.
13      Q.  Why is it important for the
14  contractor to recommend optimalizations?
15      MS. CLEMONS:  Objection to form,
16      foundation.
17      A.  As part of the contract, once the
18  contractor presents an approved media plan
19  and says how many estimated impressions,
20  let's use in this example, that they are
21  going to achieve, they are then
22  contractually required to deliver that
23  number of impressions.  So if for some
24  reason, whatever targeting parameters that
25  we are using or if a channel is

Page 26

1  underperforming, the contractor still owes
2  the government that number of impressions.
3  So they will recommend optimizations in
4  order to achieve those contracted number of
5  impressions.  But again, all of that has to
6  be approved within a media plan by the COR
7  and by the marketing division in order for
8  the contractor to then execute that on
9  behalf of the Air Force.
10     Q.  If the channel is underperforming,
11  what kind of optimization recommendation
12  would you want to see from GSD&M?
13         MS. CLEMONS:  Objection to form,
14     foundation.
15     A.  It would really depend on what the
16  explanation is for the underperformance.  If
17  it is something as simple as we need to
18  tweak the targeting, that would be one route
19  to go.  You know, they could also recommend
20  a change to the creative that is running in
21  the channel.  I think they have a lot of
22  options.  But based off of their experience,
23  they will make that recommendation.  But
24  again, that's only at the approval of the
25  COR and the marketing division that they are

Page 27

1  actually allowed to make those changes on
2  behalf of the Air Force.
3     Q.  Has GSD&M ever recommended as an
4  optimization shifting spend from one channel
5  to another?
6         MS. CLEMONS:  Objection to form.
7     A.  I am trying to think of some
8  examples of when that has happened.  I am
9  sure over the course of the contract that
10  they have, but no specific example is coming
11  to my mind right at this moment.
12         I just came up with one, sorry.
13         When we were looking to place an
14  ad in front of the Top Gun Maverick movie,
15  the Top Gun Maverick movie kept getting
16  delayed and getting delayed in its release
17  day, so we had to reallocate those funds to
18  a different channel in order to spend the
19  money in the current fiscal year.
20     Q.  Was the AIR process that you
21  described earlier in place the entire time
22  period of January of 2019 to 2023?
23         MS. CLEMONS:  Objection to form.
24     A.  Yes, it is.  And I know that
25  because it was held up in the audit as being

Page 28

1  a best practice.
2         MS. MILLIGAN:  I am marking as
3     Exhibit 129 a document bearing Bates
4     USAF-ADS-000077-1565.
5         (Whereupon, a document bearing
6     Bates  USAF-ADS-000077-1565 was marked
7     Stott Exhibit 129 for identification as
8     of this date.)
9     Q.  Ms. Stott, in preparation for this
10  deposition, did you have the occasion to
11  review any invoices from GSD&M to Air Force?
12     A.  Yes, I did.
13     Q.  Is Exhibit 49 such an invoice,
14  sorry, Exhibit 129?
15     A.  Yes, this is the cover of an
16  invoice, yes.
17     Q.  So this is an invoice sent from
18  GSD&M, just I am looking at the first page
19  here, to AFRS, Air Force Recruiting Service,
20  RSM, which is Recruiting Service Marketing,
21  to the attention of Captain Rico Lane; is
22  that right?
23     A.  Correct.
24     Q.  GSD&M is seeking payments for the
25  amount $21,058 and 54 cents; is that right?

Page 29

1     A.  That's what it says, yes.
2     Q.  You could just turn to the second
3  page, please.  Do you see where it says
4  Google double click?
5     A.  I do.
6     Q.  And there are a series of fees
7  under that, do you see that?
8     A.  Yes.
9     Q.  What are the fees for?
10     A.  That is the actual, those are the
11  costs of the actual media buy is my
12  understanding.
13     Q.  Under Google programmatic, there
14  are line items for display.
15         What are those costs and credits
16  for?
17     A.  That would be the cost of the
18  programmatic display that was placed for
19  those months.
20     Q.  And then there is Google search,
21  and under Google search on the next page
22  there is Google ad serving and a series of
23  fees.
24         What are those fees for?
25         MS. CLEMONS:  Objection to form.

Page 58

1  A.  No, I can't confirm that for every
2  single invoice.  I can only speak to what
3  the process is supposed to be.  In fact, our
4  current contracting officer, Ms. Hatch, only
5  came on, as I stated, I think it was late
6  spring, early summer of 2021.  And she would
7  not be able to confirm that either.
8      MS. CLEMONS:  That's all the
9  questions that we have.
10     MS. MILLIGAN:  Nothing further.
11     THE VIDEOGRAPHER:  The time is
12  12:06 p.m.  We are off the record.
13     (Whereupon, an off-the-record
14  discussion was held.)
15     THE VIDEOGRAPHER:  The time is
16  12:07 p.m. we are on the record.
17     MS. MILLIGAN:  What is the total
18  time on the record?
19     THE VIDEOGRAPHER:  One hour and 30
20  minutes.
21     MS. MILLIGAN:  And three minutes
22  of those counted for plaintiff?
23     MS. CLEMONS:  Yes, the United
24  States agrees that those three minutes
25  will not count towards defendant's 14

Page 59

1  hours of 30(b)(6) time.
2      THE VIDEOGRAPHER:  The time is
3  12:07 p.m.  We are off the record.
4      (Whereupon, at 12:07 P.M., the
5  Examination of this witness was
6  concluded.)
7
8         o   o   o   o

Page 60

1         D E C L A R A T I O N
2
3    I hereby certify that having been first
4  duly sworn to testify to the truth, I gave
5  the above testimony.
6
7    I FURTHER CERTIFY that the foregoing
8  transcript is a true and correct transcript
9  of the testimony given by me at the time and
10 place specified hereinbefore.
11
12
13
                _____
14                    LARA STOTT
15
16
17  Subscribed and sworn to before me
18  this _____ day of _____ 20___.
19
20
                _____
21      NOTARY PUBLIC
22
23
24
25

Page 61

1         I N D E X
2
3  EXAMINATION BY                PAGE
4    MS. MILLIGAN              4
     MS. CLEMMONS              57
5       E X H I B I T S
6
7  STOTT EXHIBITS
8
9  EXHIBIT     EXHIBIT
10 LETTER      DESCRIPTION    PAGE
11
12  126     Document bearing Bates  6
            USAF-ADS-000041-6385
13
    127     Document bearing Bates  7
14          USAF-ADS-000077-1834
15  128     Document bearing Bates  12
            USAF-ADS-000061-8109
16
    129     Document bearing Bates  28
17          USAF-ADS-000077-1565
18  130     Document bearing Bates  38
            USAF-ADS-000077-1759
19
    131     Document Bates No.    44
20          USAF-ADS-0000013224
21  133     Document bearing Bates  46
            USAF-ADS-000084-8189
22
    132     Document bearing Bates  51
23          USAF-ADS-0000771515
24  134     Notes            56
25

L. STOTT

|  |  |  |
|---|---|---|
| | Page 62 | |
| 1 |     C E R T I F I C A T E | |
| 2 | | |
| 3 | STATE OF NEW YORK    ) | |
| |          : SS.: | |
| 4 | COUNTY OF QUEENS    ) | |
| 5 | | |
| 6 |     I, RIVKA TROP, a Notary Public for and | |
| 7 | within the State of New York, do hereby | |
| 8 | certify: | |
| 9 |     That the witness whose examination is | |
| 10 | hereinbefore set forth was duly sworn and | |
| 11 | that such examination is a true record of | |
| 12 | the testimony given by that witness. | |
| 13 |     I further certify that I am not related | |
| 14 | to any of the parties to this action by | |
| 15 | blood or by marriage and that I am in no way | |
| 16 | interested in the outcome of this matter. | |
| 17 |     IN WITNESS WHEREOF, I have hereunto set | |
| 18 | my hand this 20th day of September, 2023. | |
| 19 | | |
| 20 | | |
| 21 |  | |
| 22 |         RIVKA TROP | |
| 23 | | |
| 24 | | |
| 25 | | |