# Plaintiffs' Exhibit 90

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

UNITED STATES, et al.,  ) Case No.
                        ) 1:23-cv-00108-LMB-JFA
                        )
     Plaintiffs,        )
                        )
vs.                     )
                        )
GOOGLE LLC,             )
                        )
     Defendant.         )
_____)

- HIGHLY CONFIDENTIAL -

VIDEOTAPED 30(b)(6) DEPOSITION OF
UNITED STATES POSTAL SERVICE
through the testimony of
CHRISTOPHER KARPENKO
September 26, 2023
12:37 p.m.


Reported by:  Bonnie L. Russo
Job No. 6105353

HIGHLY CONFIDENTIAL

Page 6

1  Weiss.
2       MR. GROSSMAN:  David Grossman with
3  the Department of Justice on behalf of the
4  witness, the U.S. Postal Service, and the
5  United States.
6       MS. CLEMONS:  Katherine Clemons,
7  Department of Justice.
8       MR. RYAN:  James Ryan, Department of
9  Justice.
10      MR. CHU:  Alvin Chu, Department of
11 Justice.
12      MR. SIDHU:  Vinnie Sidhu, DOJ.
13      MR. WEAVER:  Michael Weaver, United
14 States Postal Service.
15      THE VIDEOGRAPHER:  And will the
16 reporter swear in the witness, please.
17
18      CHRISTOPHER KARPENKO,
19 being first duly sworn, to tell the truth, the
20   whole truth and nothing but the truth,
21      testified as follows:
22   EXAMINATION BY COUNSEL FOR DEFENDANT

Page 7

1       BY MS. MILLIGAN:
2    Q.   Good afternoon, Mr. Karpenko.
3         We met briefly off the record, but
4  for the record, I am Heather Milligan, and I
5  represent Google in this case.
6         Could you state your name for the
7  record.
8    A.   Sure, Christopher Karpenko.
9    Q.   Okay.  And, Mr. Karpenko, are you
10 the senior director for customer marketing at
11 the United States post service?
12   A.   Yes.
13   Q.   And prior to your current role, were
14 you the executive director of brand marketing
15 during the 2019 to 2023 time period?
16   A.   Yes.
17   Q.   And is it -- as executive director
18 of brand marketing, your role included
19 developing advertising campaigns for USPS,
20 correct?
21   A.   Yes.
22   Q.   It also involved executing those

Page 8

1  campaigns in collaboration with USPS's ad
2  agency Universal McCann, correct?
3    A.   Yes.
4    Q.   All right.  And, Mr. Karpenko, you
5  understand that you're testifying here today as
6  the corporate representative of United States
7  Postal Service?
8    A.   Yes.
9    Q.   Great.  In preparing for your
10 30(b)(6) deposition today, did you review
11 contracts between USPS and Universal McCann?
12   A.   Yes.
13   Q.   All right.
14        (Deposition Exhibit 135 was marked
15 for identification.)
16        MS. MILLIGAN:  I am marking, for the
17 record, Exhibit 135 bearing Bates
18 USPS-ADS-0000631770.
19        THE WITNESS:  Would you like them
20 separate or together for this purpose? because
21 they are --
22        BY MS. MILLIGAN:

Page 9

1    Q.   Understood.  For the record, the
2  document that I handed you separately is an
3  attachment.  So we can just staple it together
4  at the end.
5    A.   Okay.
6    Q.   But we'll start with the -- the
7  document beginning with Bates 1770, which the
8  cover page is an e-mail.
9    A.   Uh-huh.
10   Q.   All right.  Mr. Karpenko, do you see
11 that this is an e-mail from a Brian Pasco to
12 Mike Laraway and others sent October 1, 2019
13 subject: "DG2 Follow-Up Items" with a few
14 attachments?
15   A.   Yes.
16   Q.   All right.  And at the top of the --
17 at the top of the page, Mr. Pasco writes:  "As
18 follow-up to yesterday's meeting, please find
19 attached UM master contract, UM scope of work,
20 terms and conditions of the contract, final
21 FY18 media flow chart."
22        Do you see that?

Veritext Legal Solutions
800-567-8658                                973-410-4098

Page 18

 1  first of those responsibilities is to recommend
 2  a media strategy for the postal service
 3  advertising by combining cost efficiency with
 4  smart positioning for maximum effectiveness; is
 5  that right?
 6          MR. GROSSMAN: Objection to form.
 7          THE WITNESS: Yes.
 8          BY MS. MILLIGAN:
 9      Q.  Okay. And then if you go to the
10  next column over, there is the scope of work
11  and it lists some questions here that
12  Universal -- Universal McCann will answer
13  through its work.
14          And could you just read the first of
15  those.
16      A.  Number 1, all of it or --
17      Q.  1A.
18      A.  1A.
19      Q.  Yeah. Just A.
20      A.  Just A specifically?
21      Q.  Yeah.
22      A.  Aloud? Aloud or --

Page 19

 1      Q.  Yes. Yes. Sorry.
 2      A.  Okay. "What is the optimal channel
 3  mix in flighting to achieve key business
 4  objectives (sales, brand equity, shifts, et
 5  cetera)? For example, direct mail, TV,
 6  newspaper, et cetera?"
 7      Q.  Okay. If you could turn to the next
 8  page, the fourth row down lists as one of
 9  Universal McCann's responsibilities to provide
10  media management support as needed, including
11  trafficking and administrative tasks.
12          Do you see that?
13      A.  I do.
14      Q.  And next to it, the scope of work
15  description says that UM will provide media
16  management support, including trafficking
17  across all channels, management of digital
18  campaigns, et cetera.
19          In the context of -- of this
20  description of scope of work, what does it mean
21  to include trafficking across all channels?
22          MR. GROSSMAN: Objection to form.

Page 20

 1          THE WITNESS: This section refers to
 2  UM helping manage the placement of the media
 3  and the content for us. In this particular
 4  case, it says all channels as well as the
 5  digital campaigns.
 6          BY MS. MILLIGAN:
 7      Q.  And what does Universal McCann do to
 8  manage the placement of media for USPS?
 9          MR. GROSSMAN: Objection to form.
10          THE WITNESS: Could you -- it seems
11  to be a broad ask. Could you help me
12  understand what -- what you're trying to ask.
13          BY MS. MILLIGAN:
14      Q.  I could ask a different question.
15          Do you -- I guess do you know how
16  Universal McCann manages the placement of media
17  and media content for USPS?
18          MR. GROSSMAN: Objection to form.
19          THE WITNESS: I would step back and
20  say as -- as a supplier for the postal service,
21  UM is a -- our media agency of record. Their
22  role is to place media for the postal service

Page 21

 1  regardless of our -- what campaign may or may
 2  not be going on.
 3          We look at the campaigns that we're
 4  running. We get strategic feedback from
 5  Universal McCann on how we might utilize our
 6  investment on our dollars in the right way to
 7  reach the audience and reach them in a way
 8  that's effective for that media placement.
 9          And UM then has a variety of
10  different processes within their organization
11  that works to then place that media once we
12  approve our plan.
13          BY MS. MILLIGAN:
14      Q.  Okay. Once USPS approves the plan,
15  is Universal McCann able to -- able to, I
16  suppose, make changes to how the budget in the
17  plan was initially allocated?
18          MR. GROSSMAN: Objection to form.
19          THE WITNESS: So we do have the
20  ability to change the media allocation and
21  investment during our marketing efforts to
22  better optimize what media channel may be

Page 22

1  performing better or not as well as some
2  others.
3       BY MS. MILLIGAN:
4     Q.   And just to make sure we are
5  using -- we're talking -- we're using the same
6  terms, when you say "better optimize what media
7  channel may be performing better or not," what
8  do you mean by that?
9     A.   So when we look at our media
10 placement, it could be in a number of different
11 channels or a number of different -- I may use
12 the term in some ways that maybe not everybody
13 else will use, but in some arenas or platforms
14 or areas where it may perform better or worse
15 than others.
16      So a bad example would be if we were
17 using advertising in a movie theater during
18 COVID, probably wouldn't -- or even the mall,
19 out-of-home, OOH environment, probably not the
20 best use of our advertising dollars because the
21 traffic wouldn't be there.  At the same time,
22 we would also be optimizing in other areas that

Page 23

1  would -- say if we saw a particular area
2  performing really well and we saw some
3  responses coming from that for our legion
4  campaigns, we might take from areas that were
5  not responding well and move them into higher
6  performing media efforts.
7     Q.   Okay.  And managing that process is
8  part of Universal McCann's responsibilities
9  under the operative contract?
10    A.   It's a combination of Universal
11 McCann doing the analytics, running the
12 reports, and then coming back to us and
13 advising the postal service on this seems to be
14 working well, this might not be working as
15 well, we would like to make a shift.
16      And then someone on my team
17 historically will go over and give the okay to
18 shift something from one place to another.
19    Q.   Thank you.
20      If you could turn to the page ending
21 in 368.  And this appears to be a specialty
22 services addendum to invoicing attachment

Page 24

1  that's on the prior page, and I am interested
2  in Section 5 which says:  "Terms applicable to
3  Orion savings program."
4       And the first paragraph reads:
5  "USPS agrees to participate in the Orion
6  savings program (the program) under which USPS
7  may take advantage of certain savings
8  opportunities that agency affiliate Orion
9  Worldwide LLC (Orion) has negotiated with media
10 and related vendors."
11      What is the Orion savings program?
12      MR. GROSSMAN:  Objection to
13 foundation.  Objection to form.
14      THE WITNESS:  So Orion is an entity
15 that UM uses to help buy and place media.
16      The postal service has looked at
17 Orion over the years to see what types of buy
18 or better value we could acquire for media.  In
19 this case they're referring to their --
20 their -- their credits.
21      One example that we have looked at
22 with Orion was to consider if the postal

Page 25

1  service had any assets that we were looking to
2  get rid of.  Might be in excess of -- of X
3  number of items, whatever that might be, tables
4  or metal.  If we were -- we had looked at, for
5  example, our LLV fleet, so our long-life
6  vehicle fleet.  We were putting in new
7  vehicles.  Those vehicles are made of aluminum,
8  and one of the considerations that we looked at
9  was if we were to provide Orion with these
10 vehicles, the aluminum, they take that aluminum
11 and they either recycle it or resell it or
12 something.  And in return we, the postal
13 service, would get credit or a discounted rate
14 for media.
15      In many cases Orion's media
16 placement tends to leverage cable TV and
17 discounted rates for cable TV.  So it could
18 either be a credit or a discount for the postal
19 service to place media on in many cases cable
20 TV in this case.
21      BY MS. MILLIGAN:
22    Q.   Thank you.

HIGHLY CONFIDENTIAL

Page 82

1  MR. GROSSMAN: Thank you.
2  Nothing else.
3  THE VIDEOGRAPHER: Off the record at
4  2:37. That ends the deposition.
5  (Whereupon, the proceeding was
6  concluded at 2:37 p.m.)

Page 83

1  CERTIFICATE OF NOTARY PUBLIC
2  I, Bonnie L. Russo, the officer before
3  whom the foregoing deposition was taken, do
4  hereby certify that the witness whose testimony
5  appears in the foregoing deposition was duly
6  sworn by me; that the testimony of said witness
7  was taken by me in shorthand and thereafter
8  reduced to computerized transcription under my
9  direction; that said deposition is a true
10 record of the testimony given by said witness;
11 that I am neither counsel for, related to, nor
12 employed by any of the parties to the action in
13 which this deposition was taken; and further,
14 that I am not a relative or employee of any
15 attorney or counsel employed by the parties
16 hereto, nor financially or otherwise interested
17 in the outcome of the action.

20  Notary Public in and for
21  the District of Columbia
22  My Commission expires: August 14, 2025

Page 84

1  David Grossman Esq
2  David.grossman@usdoj.gov
3          September 27th, 2023
4  RE:  United States, Et Al v. Google, LLC
5  9/26/2023, Karpenko , USPS 30(b)(6) (#6105353)
6  The above-referenced transcript is available for
7  review.
8  Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12 The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 (erratas-cs@veritext.com).

17  Return completed errata within 30 days from
18 receipt of testimony.
19  If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.

22       Yours,
23       Veritext Legal Solutions

Page 85

1  United States, Et Al v. Google, LLC
2  Karpenko , USPS 30(b)(6) (#6105353)
3        E R R A T A  S H E E T
4  PAGed____ LINE____ CHANGE_____
5  _____
6  REASON_____
7  PAGE____ LINE____ CHANGE_____
8  _____
9  REASON_____
10 PAGE____ LINE____ CHANGE_____
11 _____
12 REASON_____
13 PAGE____ LINE____ CHANGE_____
14 _____
15 REASON_____
16 PAGE____ LINE____ CHANGE_____
17 _____
18 REASON_____
19 PAGE____ LINE____ CHANGE_____
20 _____
21 REASON_____
22
23 _____  _____
24 Karpenko , USPS 30(b)(6)           Date

22 (Pages 82 - 85)

HIGHLY CONFIDENTIAL

1  United States, Et Al v. Google, LLC
2  Karpenko , USPS 30(b)(6) (#6105353)
3                E R R A T A   S H E E T
4  PAGE_13__ LINE__21_ CHANGE__Add "Are you" before
5  "Going back to it at all?"_____
6  REASON_____
7  PAGE__23_ LINE__3___ CHANGE___Change "legion" to
8  "lead-gen"_____
9  REASON_____
10 PAGE__23_ LINE_13___ CHANGE____Change "advising the
11 postal service on this" to "advising the postal
12 service that this"_____
13 REASON_____
14 PAGE_27__ LINE__2___ CHANGE_Change "the brands" to
15 "other brands"_____
16 REASON_____
17 PAGE__31_ LINE__9___ CHANGE__Change "underspent" to
18 "underspend"_____
19 REASON_____
20 PAGE__34_ LINE__19_ CHANGE___Change "5 to 10,000" to
21 "5,000 to 10,000"_____
22 REASON_____
23 _____   _____
24  Karpenko , USPS 30(b)(6)                    Date
25

HIGHLY CONFIDENTIAL

Page 86

1  United States, Et Al v. Google, LLC
2  Karpenko , USPS 30(b)(6) (#6105353)
3              ACKNOWLEDGEMENT OF DEPONENT
4     I, Karpenko , USPS 30(b)(6), do hereby declare that I
5  have read the foregoing transcript, I have made any
6  corrections, additions, or changes I deemed necessary as
7  noted above to be appended hereto, and that the same is
8  a true, correct and complete transcript of the testimony
9  given by me.
10
11  _____         __11/9/23_____
12  Karpenko , USPS 30(b)(6)                Date
13  *If notary is required
14                     SUBSCRIBED AND SWORN TO BEFORE ME THIS
15                     __9th__ DAY OF __November__, 20_23_.
16
17
18  _____
19            NOTARY PUBLIC
20                           TERRY-ANN MONIQUE SCOTT
                             NOTARY PUBLIC DISTRICT OF COLUMBIA
                             My Commission Expires January 1, 2028