IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER
DENYING MOTION TO AMEND COORDINATION ORDER**

In its opposition, Google argues that "Plaintiffs should not take one-sided advantage of discovery proceedings in another forum after discovery in this matter has closed." ECF No. 636 ("Opp."), at 2, 16. Yet that is *precisely* the one-sided advantage that the status quo currently affords Google, and Google alone. Google suggests that under the status quo, the parties "already have access to the same discovery record in this case" (Opp. at 2), but that is simply not true. Google has access to a separate discovery record based on its participation in the State of Texas's related ad tech antitrust case against Google, where Google is represented by two of the same law firms and ten of the same attorneys. In the Texas Case,[1] potential trial witnesses from *this case* have been, or imminently will be, deposed.[2] As a party to that case, Google and its attorneys will

---

[1] All shorthand references used herein (*e.g.*, "Texas Case" and "MDL") have the same meaning as in Plaintiffs' memorandum in support of its objections. *See* ECF No. 623 ("Memo.").

[2] As nonparties, Plaintiffs do not have full insight into the depositions noticed and taken in the Texas Case. That said, based on public docket entries, it appears that at least the following witnesses from this case (witnesses who were included on one or both parties' initial disclosures in *this case*) have been, or will be, deposed in the Texas Case: Neal Mohan (a senior Google executive deposed by Plaintiffs both during their pre-suit investigation and this litigation); Sam Temes (a member of Google's sales organization who has not been deposed here); Max Loubser (a product manager for Google's sellside products who was deposed during Plaintiffs' pre-suit investigation); a Rule 30(b)(6) deposition of Google on "sell side market share"; Microsoft (a

1

have access to those witnesses' sworn testimony. Google does not deny that it will rely on discovery from the Texas Case to influence its trial strategy here, nor could it because attorneys cannot be expected to put out of their mind evidence they learn in one case in defending that same client in a different matter. To that end, Google will be able to use the information learned in those depositions as a roadmap for decisions about whether to call witnesses at this trial and, if those witnesses are called by either side, to assist in the preparation of direct or cross examinations of those witnesses, regardless of whether Google actually uses the transcripts themselves to impeach the witnesses. It is this prejudice that the Magistrate Judge failed to address in his ruling, and Google compounds that failure by not addressing the relevant prejudice at issue in its opposition.

Plaintiffs seek nothing more than to be on equal footing with Google with respect to access to sworn testimony given by relevant witnesses. Plaintiffs do not seek an extension of discovery or permission to take additional discovery in this case; they do not seek to participate in the depositions in the Texas Case, to control who is deposed there, or to determine the topics of examination at those depositions. All Plaintiffs seek is the bare minimum necessary to ensure equal access, *after the fact*, to sworn statements of relevant witnesses for impeachment purposes only. This is precisely the relief the Court *already ordered* with respect to equivalent depositions that are now occurring in the multidistrict litigation against Google. *See* Coordination Order,

---

participant in the exchange market that was deposed in this litigation); PreBid (an organization that sponsors header bidding, which was not deposed); PubMatic (a participant in the exchange market, which was not deposed here); The Trade Desk (a demand side platform that was deposed in this litigation); Yahoo (a demand side platform that was not deposed here); and Broadstreet Ads (a company offering a small publisher ad server that was not deposed here). *See Texas*, ECF No. 450, at 1; ECF No. 488, at 4; ECF No. 496, at 3, 4, 6.

¶ 6.[3] Because Plaintiffs would obtain these depositions directly from the court reporters themselves, there would be no burden on Google.

To respond to Plaintiffs' allegations of prejudice, Google suggests that Plaintiffs are fighting a "reality present in every case involving corporate litigants" because "corporate litigants always have more institutional access to and knowledge about their own employees." Opp. at 17. But that is not the nature of the prejudice that Plaintiffs have alleged here. To start, Plaintiffs seek access not only to the depositions of Google employees but also of third parties as to whom Google cannot claim preferential access and knowledge. And though Google has superior access to its own current and former employees, that does not mean Google should be afforded preferential access to sworn *testimony* from those witnesses. There is a fundamental difference between access to individuals for purposes of voluntary, unsworn interviews and copies of those individuals' prior sworn statements on related matters. Nor can Google credibly argue any prejudice arising from Plaintiffs' request for equal access to these prior sworn statements. Google complains that that it would be disadvantaged because it would have "no corresponding right to additional discovery of Plaintiffs" (Opp. at 2), but that is a false equivalency. Plaintiffs do not seek to enlarge the amount of discovery taking place in this case; Plaintiffs merely seek fair access to the relevant portions of discovery that is already taking place in another case in which Google is already a participant, so the specter of "additional discovery" is a red herring.

Google's arguments against Plaintiffs' objections are also internally inconsistent. On one hand, Google argues that deposition transcripts from the Texas Case would not be relevant. Opp. at 2. But in the same brief, Google argues that allowing Plaintiffs access to deposition transcripts

---

[3] Order Regarding Coordination of Discovery, ECF No. 251.

from the Texas Case would be inequitable because Google would not be able to obtain additional discovery from Plaintiffs here. Opp. at 2-3. Both cannot be true. If the deposition transcripts from the Texas Case were irrelevant, there would be no prejudice to Google of allowing Plaintiffs access to such irrelevant materials. Furthermore, if the cases were actually unrelated, that begs the question why Google would be asking the court in the Texas Case to permit the wholesale reproduction of third-party discovery materials from this case to be used in the Texas Case.

In sum, there is no sound basis on which to treat deposition transcripts from the Texas Case differently from deposition transcripts taken in the MDL, especially given that the Texas Case was part of the MDL at the time the Coordination Order was negotiated and entered. The Magistrate Judge's ruling doing so was therefore clearly erroneous. All the arguments Google makes against Plaintiffs' motion would apply with equal force to the MDL deposition transcripts being taken over the next month. In advocating for the Coordination Order, Google affirmatively sought the ability to use deposition transcripts from the MDL in this case, and there is no reason to treat the Texas Case differently. For reasons of fundamental fairness, and to promote efficiency and the search for truth, Plaintiffs should be allowed to obtain, directly from the court reporter, copies of deposition transcripts taken in the Texas Case that relate to individuals or entities on the parties' initial disclosures in this case. "[A]symmetrical access [to deposition testimony] is unfair and contrary to the truth-seeking purpose of civil discovery." *In re BofI Holdings, Inc. Securities Litigation*, No. 15-cv-2324, 2021 WL 4460751, at *4 (S.D. Cal. Sep. 29, 2021).

**ARGUMENT**

Google summarizes at length the briefing before the Magistrate Judge and his statements during the hearing. *E.g.*, Opp. at 8-9. But Google merely shows that Plaintiffs' arguments were *before* the Magistrate Judge; Google does not demonstrate that the Magistrate Judge *addressed*

4

the core justifications for Plaintiffs' motion, which is the crux of the clear error at issue. *See* Memo. at 13-15. Plaintiffs do not contend that the length or form of the Magistrate Judge's order were in error. Rather, Plaintiffs' objection is that the record before the Magistrate Judge evinced clear prejudice to Plaintiffs, yet the Magistrate Judge failed to remedy that prejudice or to explain why that prejudice was not a proper basis for the relief Plaintiffs sought.[4] Memo. at 13-15.

### A. The Magistrate Judge's Decision Fails to Account for Prejudice to Plaintiffs from Google's One-Sided Ability to Obtain Additional Relevant Deposition Testimony in Another Matter And to Use That Testimony To Inform Its Trial Strategy Here.

The Magistrate Judge's decision failed to address or remediate the ongoing prejudice to Plaintiffs from Google's unilateral ability to obtain relevant deposition testimony in the Texas Case that it can use to litigate this case. Nothing in Google's opposition changes, or even challenges, that basic fact.

#### 1. Google Does Not Dispute that its Counsel May Access and Benefit from Newly-Obtained Deposition Transcripts.

In their opening memorandum, Plaintiffs posited that five facts "lead to the unavoidable result that Google will have an undue advantage at trial." Memo. at 15. Google's opposition only addresses one of those five facts, leaving the other four uncontested. Thus, there is no dispute that: (1) Google is taking and participating in additional depositions in the Texas Case; (2) at least some witnesses and entities noticed for deposition are also potential trial witnesses in this case; (3) Google's attorneys will participate in those depositions, including two law firms and at least ten individual attorneys that represent Google in both cases; and (4) Google's attorneys will inevitably have the opportunity to rely on the information they learn from the Texas Case in

---

[4] Thus, Google's citation to *Roundabousch v. MTD Prods., Inc.*, No. 1:09-cv-00235-LMB-JFA (E.D. Va. Jul. 16, 2009) (Opp. at 16) is unavailing, and the cases cited by Plaintiff on page 14 of their memorandum are applicable.

selecting trial witnesses and preparing trial examinations for this case. *See* Memo. at 15 (listing same). All of these points were presented to the Magistrate Judge more than once. *See* ECF No. 551, at 7-8; ECF No. 558, at 6-7; 4/19/2023 Hearing Tr., at 6:2-9, 12:19-13:16, 17:5-14. Google has never disputed that it is using the same attorneys in both cases and applying information from one case to benefit itself in others. Nor has Google ever explained how it will avoid taking undue advantage of the information it obtains in the Texas Case to its benefit in this case. Google's silence is telling.

        2.   <u>Deposition Transcripts from the Texas Case are Relevant to this Case.</u>

Google disputes whether information contained in deposition transcripts in the Texas Case will be relevant to trial in this case. *Compare* Memo. at 15 ("due to the overlap in claims and issues, some of the information from the Texas Case depositions will be relevant to the issue[s] presented at trial in this case") *with* Opp. at 2, 5, 18 (arguing to the contrary). At the outset, the Court is more than capable of policing the admissibility of evidence, and it does not need Google's help to ensure that questioning at trial is both efficient and probative. But Google is also incorrect about the relevance of the transcripts at issue for several reasons.

*First*, Google took the opposite position when requesting this case be transferred to the MDL. At that time, Google contended that this case is simply "DOJ['s] Own Version of the Texas Case" with "the same facts, relevant markets, and claims" implicating "the same or similar documents, data, party witnesses, and third parties." ECF No. 44-2, at 10-12; *see also* Memo. at 20 n.11; ECF No. 558, at 2 (explaining Google's past arguments that this case and the Texas Case are identical).

*Second*, Google attempts to justify its inconsistency by claiming the Texas Case changed character when the "Texas Plaintiffs amended their complaint to add 71 paragraphs of state-law deceptive trade practices claims" in May 2023. Opp. at 20; *see also id*. at 18 n.6. But those 71

paragraphs merely supplemented the over 700 paragraphs setting out their Federal and state antitrust law claims, leaving 90% of the Texas Case complaint the same.[5] *See MDL*, ECF No. 541. Indeed, when permitting the amendment, Judge Castel explained that the amendment "*does not relate to the federal antitrust claims*." *MDL*, ECF No. 495, at 1 (emphasis added). The Texas Case has always resembled this case in fundamental ways, such that the vast majority of the evidence developed there is likely to be probative of the issues presented here. It alleges markets related to web display advertising for publisher ad servers, exchanges, and advertiser ad-buying tools and claims for monopolization, attempting monopolization, and tying related to much of the same specific Google conduct at issue here. *MDL*, ECF No. 541, ¶¶ 92-195, 598-613.

*Third*, Google's argument that the Texas Case diverged from this case is inconsistent with the course of discovery in the Texas Case, where both Google and the Texas Court have acknowledged the similarities and overlap in relevant information. As examples: The Special Master ordered that Google produce copies of the expert reports from this case, finding that the Texas Case and this case include the same legal theories and allegations. *Texas*, ECF No. 418, at 3, 5. Google argued that the deposition of a Google executive was "duplicative" because the executive was already deposed by Plaintiffs in this case "on a broad range of topics that underlie the key allegations" in the Texas Plaintiffs' complaint. *Texas*, ECF No. 349-1, at 12; *see also Texas*, ECF No. 450 (limiting additional deposition time based on Google's arguments). Google is seeking an order requiring reproduction of all third-party documents from this case in the Texas Case, calling them "relevant discovery materials" to the Texas Case. *Texas*, ECF No. 402, at 1. And in support of that request, Google's counsel stated to Judge Jordan, presiding over the

---

[5] Those additions were also not entirely new. At the time Google argued the similarities between this case and the Texas Case, the operative Texas complaint included "Supplemental State Law Deceptive Trade Practices Claims" just as it does now. *MDL*, ECF No. 195, ¶¶ 603-682.

7

Texas Case, just this month: "The parties actually agree here that the documents that we're seeking reproduction of [i.e., documents from *this* case], they are relevant to this lawsuit." *Texas*, ECF No. 475, at 6:15-17.[6]

The clear similarity between this case and the Texas Case leaves no basis to distinguish *In re BofI Holdings, Inc. Securities Litigation*, No. 15-cv-2324, 2021 WL 4460751 (S.D. Cal. Sep. 29, 2021), which is instructive to this situation. Google concedes that in *BofI* the basis for requiring defendants to provide the deposition transcripts from the related case was that "publicly-filed excerpts" demonstrated their relevance, defendants "seemingly" agreed, and there were "substantial information asymmetries" including because defendants had "complete control" over the transcripts. Opp. at 12 n.4, 17 (quoting *BofI*, 2021 WL 4460751, at *3-5) *see also* Memo. at 16. The situation is similar here: Google's statements and the publicly-available docket demonstrate that the issues in the Texas Case are similar to this case. Google has admitted that discovery in this case is relevant to the Texas Case (meaning the reverse is true too). Google has control and one-sided access to the transcripts now, leading to an information asymmetry.

Google's statements that discovery in the Texas Case is "focused" on state-law claims are unsupported. *See* Opp. at 5, 18 n.6. Google's prior statements and publicly-available information show otherwise, leaving no record—for either the Magistrate Judge or the Court—to justify the conclusion that depositions in the Texas Case are "rife with irrelevant testimony."[7] *Id*. at 2.

---

[6] The Special Master in the Texas Case has also recognized the substantive similarities between the Texas Case and MDL, ordering Google to produce to the Texas Plaintiffs copies of all depositions taken in the MDL as "clearly relevant." *Texas*, ECF No. 476, at 3, 6.

[7] To the extent Google interprets the Magistrate Judge's ruling as concluding, as a factual matter, that "this case and the Texas Case concern different sets of claims" (Opp. at 18), the full evidentiary record confirms this is a mistake, and therefore sufficient basis, alone, to sustain Plaintiffs' objections. *See Harrison v. Shanahan*, No. 1:18-cv-641, 2019 WL 2216474, at *4 (E.D. Va. May 22, 2019) ("[F]actual portions of the magistrate judge's ruling may be set aside

### 3. The Prejudice Arises from Google's Ongoing Actions; Neither Past Discovery nor the Timing of this Motion Address or Mitigate It.

Plaintiffs' motion and objections aptly explained the information asymmetry resulting from Google's ability to take, shape, and access additional relevant depositions from the Texas Case without affording Plaintiffs' any access to the same materials. Memo. at 2, 15-17; ECF No. 551, at 7-9; ECF No. 558, at 5-7. The asymmetry arises not just from Google merely obtaining more information, but the *timing* of the additional discovery. Google's counsel have reviewed Plaintiffs' initial disclosures (listing their likely witnesses), expert reports and depositions (disclosing their theories and supporting evidence), and, now, summary judgment brief (citing key evidence on disputed issues). Armed with that information, Google's counsel may—either consciously or unconsciously—rely on depositions in the Texas Case to obtain additional information tailored to addressing Plaintiffs' theories.

For that reason, several of Google's arguments regarding the prejudice to Plaintiffs miss the mark. Plaintiffs' motion would not give Plaintiffs access to more discovery without providing Google with more discovery from Plaintiffs. *See* Opp. at 2, 3, 18. It would merely allow Plaintiffs access to the same information Google is already obtaining. Plaintiffs' requested relief would not give Plaintiffs more depositions or any opportunity to participate in additional depositions. There is no request for an "extension[] of discovery," as Google alleges. *See* Opp. at 22 (citing *Smith v. City of Greensboro*, No. 1:19-cv-3862021 WL 5772309 (M.D.N.C. Oct. 18, 2021), which is inapposite for this reason); *see also* ECF No. 558, at 3-4. The volume of discovery that already occurred (including information provided in Plaintiffs' pre-suit investigations) does not mitigate Google's clear advantage in obtaining more information now,

---

where … the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (quotation omitted)).

9

months before trial—armed with detailed knowledge of Plaintiffs' theories—while Plaintiffs are prevented from doing so. And the Federal Rules limit discovery not in absolute terms (such as the number of documents produced—*cf.* Opp. at 1, 3, 17) but by whether it is "proportional to the needs of the case, considering the importance of the issue at stake." Fed. R. Civ. P. 26(b)(1); *see also* ECF No. 208, at 3 (Google stressing the importance of this case by calling Plaintiffs' claims "extreme," "unprecedented," and seeking the "'break up' [of] a successful American company"). This is not a question of Plaintiffs taking more depositions of Google party witnesses than Google is able to take of Plaintiffs' party witnesses; this is a question of equal access to relevant sworn testimony that will occur with or without the relief Plaintiffs seek.[8]

Further, the timing of Plaintiffs' motion does not address, let alone disprove, the prejudice to Plaintiffs. Plaintiffs did not fail to "immediately seek to coordination this case with the Texas Case." Opp. at 6. Plaintiffs sought to meet-and-confer with Google on continued coordination between this case and the Texas Case on the day immediately after the Judicial Panel on Multidistrict Litigation issued its initial remand order. Memo. at 7 (citing and attaching email from Ms. Wood to Google counsel from June 6, 2023 as Exhibit 4). It is likewise incorrect that Plaintiffs did not engage on coordination for "nearly 5 months after remand had been effectuated." Opp. at 6. Plaintiffs' memorandum explains their diligent efforts to effectuate appropriate coordination with the Texas Case through working with Google and the Texas

---

[8] In any event, Google is not prejudiced by its inability to get additional depositions of Plaintiffs' witnesses because Google (1) sought the limit of 10 party depositions per side and resisted Plaintiffs request for more (ECF No. 87, at 3); (2) took individual depositions and Rule 30(b)(6) testimony from *each* of the eight federal agencies whose advertising purchases are at issue; (3) never sought leave to take more party depositions, whereas Plaintiffs did (ECF No. 489); and (4) has recently filed a motion to dismiss the United States' damages claim as moot, which, if granted, would render most, if not all, testimony of Plaintiffs' party witnesses *irrelevant* (ECF No. 628).

10

Plaintiffs. *See* Memo. at 7-9 & Exs. 4-6. Google cites statements from Judge Jordan expressing skepticism for coordination with this case (Opp. at 6, 20), but ignores that those statements were about other aspects of the coordination order and, in any event, Judge Jordan afterwards *ordered* the sharing of deposition testimony from the Texas Case with Plaintiffs in this case. *Texas*, ECF No. 266, ¶ 6.b.-c.

      4.   The Prejudice to Plaintiffs Is Not Diminished Because the Coordination Order Did not Preemptively Address the Sharing of Transcripts Upon a Remand.

Google claims that the prejudice to Plaintiffs is "overstated" or "unconcern[ing]" because the Coordination Order did not *automatically* extend to the Texas Case in the event of a remand. Opp. at 12. At the time the Coordination Order was negotiated and entered, there was a possibility the Texas Case would be remanded from the MDL, but whether that would occur and, if so, when were unclear. For that reason, the Coordination Order expressly contemplated the possibility that future coordination with a remanded case would be appropriate: "If any case(s) currently part of the MDL are transferred to other venue(s), the Parties in the Coordinated Cases *shall meet and confer* with the parties to the transferred case(s) regarding *whether, and on what conditions*, the transferred case(s) should be coordinated with the MDL and the Virginia Case." Coordination Order, ¶ 9 (emphasis added); *see also* Memo. at 6-7.

The Coordination Order does not preclude coordination with remanded cases. Instead, Plaintiffs' motion follows the process required in the Coordination Order—and Google's refusal to meet-and-confer on this issue for several months largely dictated the timing of this motion. *See* Memo. at 7. Google argues that the Magistrate Judge determined that there would be no prejudice to Plaintiffs because the Coordination Order stated that a party whose case was remanded or dismissed would no longer be covered by the Coordination Order as written. Opp. at 12. But that fact is the *cause* of the prejudice at issue, not its solution. Google's argument thus

11

highlights that the Magistrate Judge failed to engage with Plaintiffs' principal argument, instead focusing on an overly technical reading of the Coordination Order. *See* Memo. at 14. As Google portrays it, the reasoning underlying the Magistrate Judge's decision is that once an order is entered, it cannot be modified to include a new provision, even where the order itself contemplates such a potential amendment. To the extent that flawed reasoning underlies the Magistrate Judge's decision here, that reasoning conflicts with the court's inherent judicial authority to issue amended orders based on good cause shown. *See* Memo. at 12 ("Questions of law . . . are reviewed under the contrary-to-law standard, which is essentially synonymous with de novo review" (quoting *Harrison v. Shanahan*, No. 1:18-cv-641, 2019 WL 2216474, at *4 (E.D. Va. May 22, 2019)).

Contrary to Google's suggestion, the provision of the Coordination Order requiring the parties to meet-and-confer regarding extending coordination to a remanded case was not contingent on the scope of deposition discovery available in any individual case, and the remand of the Texas Case involved no "material[] change[]" in any relevant respect. *See* Opp. at 19. The number of depositions allowed by any court was always subject to change—and it has changed in the MDL now too. *See MDL*, ECF No. 777 (granting plaintiffs additional depositions). If anything, increasing the number of depositions in the Texas Case only heightened the need for coordination because it made the prejudice to Plaintiffs of non-coordination more acute, where Google has unilateral access to an even greater number of prior sworn statements of relevant trial witnesses. Google obtained the benefits of coordination before the Texas Case was remanded, and Google should not be allowed to shirk its reciprocal responsibilities. There is no "windfall" to Plaintiffs in holding Google to the contours of its original bargain (*see* Opp. at 19)— particularly where Google has *already* obtained the benefit of coordinating depositions with the

12

Texas Case throughout the discovery period in this case. *See* Memo. at 6; *see also* Opp. at 19 (admitting that coordination of depositions was the "key benefit to Google" of coordination).

### B. By Google's Own Acknowledgement, the Magistrate Judge Relied on an Assumed "Implication" of Judge Castel's Order, not the Order Itself.

Nothing in Judge Castel's order explaining his decision to decline to enter a coordination order covering the MDL and the Texas Case[9] indicates that he would oppose a separate district court exercising its own authority to allow sharing of deposition transcripts between this case and the Texas Case. *See* Memo. at 8 (quoting in full the relevant portion of Judge Castel's order).[10] Google tacitly acknowledges this, conceding that it is merely the "implication" of Judge Castel's order that Plaintiffs "resist." Opp. at 15. Judge Castel denied the order, but Judge Jordan entered it in the Texas Case, including ordering the sharing of deposition transcripts from the Texas Case with this case. *Texas*, ECF No. 266, ¶ 6.b.-c.; *see also* Memo. at 7-9. It was error for the Magistrate Judge to rely on an "implication" of another court's order in reaching a decision (*see* Memo. at 18-19). But even if that was proper, Judge Jordan's view—expressed clearly in his order allowing sharing of deposition transcripts from the Texas Case to this case—should weigh more heavily. Google argues that Judge Castel's opinion shows that the Magistrate Judge's decision is not clearly erroneous. Opp. at 15. But Plaintiffs proposed a different order than that

---

[9] Google claims that Plaintiffs "tried, and lost, before the MDL Court to get the outcome they seek" (Opp. at 20), but Plaintiffs were not involved in submitting the proposed coordination order to Judge Castel. Instead, Google itself "request[ed]" that Judge Castel enter a coordination order with the Texas Case, thereby itself requesting the same relief Plaintiffs seek here. *See MDL*, ECF No. 706, at 1.

[10] Plaintiffs made no intentional mischaracterization regarding Judge Castel's order. *See* Opp. at 14. Plaintiffs cited the text of the order in their briefing (*see* ECF No. 558, at 10) and openly explained Judge Castel's ruling and reasoning during the hearing (*see* 4/19/2024 Hearing Tr., at 6:23-7:8).

which was before Judge Castel, and to the extent that Google is arguing that Judge Castel should have the last word on how this Court conducts the trial in this case, that is clearly mistaken.

As Google acknowledges in a footnote, the plaintiffs in the MDL have since sought to obtain copies of deposition transcripts from the Texas Case via their own discovery requests, and Google has opposed those requests. *See* Opp. at 7, n.1. Judge Castel held a hearing on the issue on May 21, 2024.[11] At the hearing, Judge Castel reserved his ruling, but stated that he "vividly" remembered the "connection" and "correlation" between the Texas Case and the MDL. *MDL*, 5/21/2024 Hearing Tr., at 33:4-8. Google's counsel at the hearing did not argue that the Texas Case transcripts are irrelevant to the issues in the MDL, instead he asserted that allowing the sharing of deposition transcripts with the plaintiffs in the MDL would "defeat[]" a "ruling of the EDVA" (or "the Court [] in Virginia"), without also disclosing that Plaintiffs' present objections to that order are pending.[12] *Id*. at 35:13-21.

Even if Judge Castel does determine that the deposition transcripts from the Texas Case should not be shared with the plaintiffs in the MDL, Plaintiffs have proposed to modify their requested relief to prohibit the sharing of any deposition transcripts from the Texas Case with the plaintiffs in the MDL. Memo. at 20. That resolves this concern fully. Google half-heartedly argues that this modification "does not prevent Plaintiffs from using what is in the transcripts to coordinate strategy with MDL Plaintiffs" (Opp. at 22), but it is unclear what Google is positing will occur, and coordinating "strategy" is not a concern expressed by Judge Castel, by "implication" or otherwise.

---

[11] *See MDL*, 5/21/2024 Hearing Tr., attached hereto as Ex. 1.

[12] Google's attempt to use the Magistrate Judge's order offensively to block requests for relevant discovery in another court is the only "judge shopping" occurring in this situation.

14

### C. The Magistrate Judge's Decision Ignored Burdens on Plaintiffs and Third Parties who were Forced to Respond to Duplicative Subpoenas.

Google is incorrect in saying there was no burden of responding to duplicative discovery that the Magistrate Judge ignored. *See* Opp. at 13. As recounted in Plaintiffs' briefing, Google sought to serve subpoenas from the Texas Case on the United States, its constituent agencies, the State Plaintiffs, and third-party companies seeking re-production of documents and deposition testimony obtained through discovery in this case. ECF No. 551, at 10; Memo. at 9, 18. As of the filing of Google's opposition, Plaintiffs understand that at least four federal agencies received such subpoenas (with one having fully responded) and at least fourteen states received such subpoenas and provided responses and objections. Google asserted to the Court that "the only materials from this action that Google is currently seeking in the Texas Case are third-party materials" (Opp. at 13 n.5), but that statement carefully obscures that Google previously took a different position and that Google does not appear to have informed any of these subpoena recipients that it was no longer seeking compliance.

Google's opposition also concedes that, of the hundreds of relevant third parties, "all but a handful" have responded to its subpoenas. Opp. at 13. Google calls this a "simple step" (Opp. at 13), but for many third parties (for example, those lacking the size or resources of Google) receiving a subpoena, engaging counsel, obtaining legal advice, weighing the protective order protections, and responding one way or the other *are* burdensome activities that involve legal fees and distract personnel from their regular duties. Google does not deny that its subpoenas are, in fact, duplicative. *See* Memo. at 17. And the fact that Google has taken advantage of the intervening time to force the Plaintiffs and third parties to respond is not a justification for the Magistrate Judge ignoring the burden.

### D. Plaintiffs have been Consistent and Transparent with Their Positions Across Related Cases.

Plaintiffs have consistently stated their position regarding coordination and sharing of discovery between the three related cases. The United States' appearance at a recent hearing in the Texas Case illustrates the consistency of Plaintiffs' position (and was not inappropriate "judge shopping"). When these objections were filed, Plaintiffs informed the Court that Google had already filed a joint motion in the Texas Case seeking reproduction of documents from this case (and attached a copy of that motion). Memo. at 12 & Ex. 2. Plaintiffs likewise explained that the United States filed a Statement of Interest in the Texas Case related to Google's motion, requesting that Google be directed to raise this request—squarely impacting this Court's protective order—in this Court in the first instance (and attached a copy of that Statement of Interest). Memo. at 12 & Ex. 3. Plaintiffs explained that a hearing would occur. Memo. at 12. And, then, once the hearing had occurred, Plaintiffs provided the Court with a copy of the full transcript as a supplement to Plaintiffs' initial objections filing. *See* ECF No. 629 & Ex. A thereto. During that hearing, counsel for the United States explained:

> We have no opposition to coordination of documents and discovery between this case and the EDVA action. What we do oppose, however, is one-sided gamesmanship where one party is seeking to take the benefits of that coordinated discovery without providing the reciprocal benefit to the other side.
>
> …
>
> We would not oppose [discovery from this case] being reproduced here, provided that this Court, which has jurisdiction of its own protective order, carves out a provision in that protective order to provide the ability of the plaintiffs in the EDVA action to obtain deposition transcripts. That would leave for the Court [in] Virginia to decide how and whether those deposition transcripts could be used at trial.

ECF No. 629-1, at 8:12-17, 9:6-13. That is the same position Plaintiffs have taken here and is entirely consistent with the relief requested in Plaintiffs' motion.

16

### E. Plaintiffs' Proposed Modifications to the Coordination Order Properly Calibrate the Scope of Proposed Coordination.

Plaintiffs have proposed modifications to the Coordination Order to address the concerns of the Magistrate Judge about the volume of information shared. Memo. at 19-21. These modifications properly limit the scope of materials that would be shared to include only deposition transcripts and exhibits and only for witnesses (or entities) that appear on either parties' initial disclosures in this case. Google argues that these initial disclosures are "extensive" with "over 90" Google witnesses and "250 third-party witnesses or entities" (Opp. at 21), but that is not the relevant question. Because the Texas Case deposition transcripts would only be used for impeachment of live trial witnesses, their use here is inherently limited to the number of witnesses deposed in the Texas Case who are also testifying live at this trial—a subset of witnesses of unquestionable relevance and import to this case.[13] In comparison to the millions of documents already produced in this case (*see* Opp. at 1, 3, 17), the injection of a limited number of prior sworn statements from potential trial witnesses seems a small price to pay to ensure a fair playing field between the parties.

Google argues that sharing the deposition transcripts would "disrupt the proceedings in this case" and quotes the Magistrate Judge's statement that the case is in the midst of summary judgment and only "four months before the trial." Opp. at 17, 21. Again, this argument fundamentally misconstrues the nature of the relief sought by Plaintiffs. By its terms, these deposition transcripts could not be used by either party in any affirmative fashion, whether at summary judgment, or in any other motion or at trial. The only use for these additional

---

[13] Google has argued to Judge Castel that the MDL Plaintiffs' request for transcripts from the Texas Case involves "roughly 20" transcripts that at are issue. *MDL*, 5/21/2024 Hearing Tr., at 33:20-25; *see also id*. at 35:5 (Google's counsel referring to "two dozen more transcripts").

transcripts would be to impeach a live witness at trial. For that reason, providing Plaintiffs equivalent access to relevant witnesses' prior sworn statements, for impeachment use only, would not disrupt the proceedings in any fashion. Indeed, Plaintiffs are already entitled under the Coordination Order to obtain copies of the MDL deposition transcripts—which will be completed *after* the Texas Case depositions—yet Google has never argued that Plaintiffs' access to the MDL transcripts would "disrupt" any proceedings. Because Google's counsel is undoubtedly already reviewing the transcripts in their dual role representing Google both cases, and whereas Plaintiffs do not object to any "burden" of reviewing additional transcripts, it is difficult to imagine the precise "disruption" Google imagines. The Court will be fully able to determine at trial whether the attempted use of these materials for impeachment purposes is proper. Thus, it strains credulity to suggest that Plaintiffs are proposing to "inject" voluminous new discovery into the case. *See* Opp. at 21.

## CONCLUSION

For the reasons discussed above and in Plaintiffs' initial memorandum, Plaintiffs respectfully request that the Court sustain their objections.

Dated: May 23, 2024

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Tyler T. Henry<br>STEVEN G. POPPS<br>Deputy Attorney General<br>TYLER T. HENRY<br>Assistant Attorney General<br><br>Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>MICHAEL E. WOLIN<br>AARON M. TEITELBAUM<br><br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Julia.Tarver.Wood@usdoj.gov<br>Attorneys for the United States | Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |