# Exhibit 1
# To Reply Brief

O5LAGooC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE GOOGLE DIGITAL
     ADVERTISING ANTITRUST
4    LITIGATION,

5                                        21 md 3010 (PKC)

6                                        Conference

7    ------------------------------x
                                         New York, N.Y.
8                                        May 21, 2024
                                         3:12 p.m.
9
     Before:
10
                       HON. P. KEVIN CASTEL,
11
                                         District Judge
12
                            APPEARANCES
13
     BOIES, SCHILLER & FLEXNER LLP
14        Attorneys for Publisher Class
     BY:  PHILIP KOROLOGOS
15        IZAAK EARNHARDT

16
     GIRARD SHARP LLP
17        Attorneys for Advertiser Class
     BY:  SCOTT M. GRZENCZYK
18
     KELLOG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
19        Attorneys for Daily Mail & Gannett
     BY:  JOHN THORNE
20        DANIEL G. BIRD

21   HERMAN JONES
          Attorneys for Plaintiff Inform
22   BY:  JOHN C. HERMAN

23
     AHDOOT & WOLFSON, PC
24        Attorneys for Advertiser Class
     BY:  HENRY J. KELSTON

25
```

O5LAGooC

1                       APPEARANCES (continued)

2    KOREIN TILLERY, PC
          Attorneys for Publisher Class
3    BY:  CHRISTOPHER M. BURKE

4

5    UNITED STATES DEPARTMENT OF JUSTICE
          Attorneys for United States
     BY:  JULIA TARVER WOOD
6

7    AXINN, VELTROP & HARKRIDER LLP
          Attorneys for Defendant Google
     BY:  CRAIG M. REISER
8         BRADLEY JUSTUS
          EVA YUNG
9         CAROLINE BOISVERT

10   FRESHFIELDS BRUCKHAUS DERINGER US LLP
          Attorneys for Defendant Google
11   BY:  SEAN MURRAY
          ROBERT J. McCALLUM
12

13

14

15

16

17

18

19

20

21

22

23

24

25

O5LAGooC

```
 1              (Case called)

 2              MR. KOROLOGOS:  Good afternoon, your Honor.  Philip

 3     Korologos with Boies, Schiller & Flexner for the publisher

 4     class.

 5              THE COURT:  Good afternoon, Mr. Korologos.

 6              MR. GRZENCZYK:  Good afternoon, your Honor.  Scott

 7     Grzencyzk with Girard Sharp for the advertiser class.

 8              THE COURT:  Good afternoon.

 9              MR. THORNE:  Good afternoon, your Honor.  John Thorne

10     for Daily Mail and Gannett.

11              THE COURT:  Thank you.

12              MR. HERMAN:  Good afternoon, your Honor.  John Herman

13     from Herman Jones for plaintiff Inform.

14              THE COURT:  Thank you.

15              MR. KELSTON:  Good afternoon, Henry Kelston of Ahdoot

16     & Wolfson for the advertiser class.

17              THE COURT:  All right.

18              MR. EARNHARDT:  And Izaak Earnhardt, from Boies,

19     Schiller & Flexner for the publisher class.

20              THE COURT:  Okay.

21              MR. BIRD:  Good afternoon, your Honor.  Daniel Bird

22     from Kellogg Hansen for Daily Mail and Gannett.

23              THE COURT:  All right.

24              MR. BURKE:  Good afternoon, your Honor.  Chris Burke

25     of Korein Tillery for the publisher class.
```

O5LAGooC

```
 1              THE COURT:  Good afternoon.

 2              MR. REISER:  Good afternoon, your Honor.  Craig Reiser

 3    Axinn, Veltrop & Harkrider, LLP, for the Google defendants.

 4              MR. JUSTUS:  Good afternoon, your Honor.  Bradley

 5    Justus from Axinn for Google.  We also have our colleagues

 6    Caroline Boisvert and Eva Yung.

 7              MR. McCALLUM:  Good afternoon, your Honor.  Robert

 8    McCallum, Freshfields, for Google.

 9              MR. MURRAY:  Good afternoon, your Honor.  Sean Murry,

10    Freshfields, for Google.

11              THE COURT:  Good afternoon to you all.  I hope all is

12    well with Ms. Vash.  Her absence is noted.

13              MR. HERMAN:  Your Honor, she's out of town and

14    couldn't attend today.

15              THE COURT:  All right.  Good.

16              MR. HERMAN:  I will try to do her justice.

17              THE COURT:  All right.  Do your best.  So speaking of

18    doing your best, let's take up the Inform interrogatory

19    situation to begin with.  So what do you want to tell me?  Or I

20    could just give you my questions and you can respond to those.

21              MR. HERMAN:  I would be happy to do it however your

22    Honor wishes.  I can just give you very quickly our view.

23              THE COURT:  Okay.

24              MR. HERMAN:  Is we have had very little case specific

25    discovery.
```

O5LAGooC

| | |
|---|---|
| 1 | THE DEPUTY CLERK:  Speak into the microphone, please. |
| 2 | MR. HERMAN:  Yes.  We've had some documents, but we've |
| 3 | had no interrogatory, no chance to ask case specific |
| 4 | interrogatories at this point.  We did respond to 30 case |
| 5 | specific interrogatories that Google served on us.  Our concern |
| 6 | is while there has been voluminous discovery in the case, there |
| 7 | hasn't been voluminous case specific discovery in the Inform |
| 8 | case with the exception of the discovery that Inform has |
| 9 | provided to Google.  And let me give you an example.  We have |
| 10 | produced over 17,000 communications between Inform and Google. |
| 11 | Google has produced few, if any, communications between Inform |
| 12 | and Google.  And that's of great concern to us.  So when we're |
| 13 | asking -- |
| 14 | THE COURT:  So what you're suggesting is though you |
| 15 | have proof positive that the communication in written form |
| 16 | transpired, Google's copy of the corresponding e-mail has not |
| 17 | been produced? |
| 18 | MR. HERMAN:  That's correct, your Honor. |
| 19 | THE COURT:  Okay. |
| 20 | MR. HERMAN:  And that gives us concern about what the |
| 21 | level of the case specific discovery that Google has provided |
| 22 | to us is.  We've obviously gone through what documents they've |
| 23 | provided to us. |
| 24 | THE COURT:  Well, how about this, you said 17,000 you |
| 25 | produced.  And you said something about little from Google. |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O5LAGooC

1       What's little?

2              MR. HERMAN:  So we have not identified a single e-mail

3       that transpired between Inform and Google in the Google

4       document production.  We have seen a handful of e-mails, and by

5       a handful I mean maybe 100 or so where --

6              THE COURT:  Handful has gotten bigger in recent years.

7       Go ahead.

8              MR. HERMAN:  Where Inform sent an e-mail to Google and

9       it got circulated within Google to various Google teams and

10      popped up in the discovery.  But the actual e-mail itself, the

11      first initial communication, doesn't appear in the document

12      production.

13             THE COURT:  Let me turn to Google.  How can this be?

14             MR. McCALLUM:  Your Honor, Robert McCallum for Google.

15      If I could just address briefly the background to this.  And

16      obviously it's been --

17             THE COURT:  You may be seated, sir.

18             MR. HERMAN:  Thank you, your Honor.

19             MR. McCALLUM:  There have been obviously some very

20      substantial production by Google, some 6 million documents and

21      your Honor may recall the context to the protracted search term

22      and custodian negotiations in this case, where last year there

23      were a series of those meetings starting in the spring going

24      all the way to November, and then there was a hearing before

25      your Honor on November the 2nd, where your Honor ruled on the

O5LAGooC

1    outstanding search term and custodian issues.  And on that day

2    Inform effectively carved themselves out of your Honor's ruling

3    and went on a separate track to negotiate their own custodians

4    and search terms with Google.

5         That process has played out and taken it has taken

6    several months and after I would say bumps in the road in the

7    beginning, I am pleased to report the more recent interactions

8    between the parties have been collaborative and cordial, and I

9    think we made a lot of progress.  To the point where we made

10   our first production of Inform specific documents was made last

11   month, and that was a product of Google agreeing to all ten of

12   Inform's proposed Inform specific custodians, and we ran

13   preexisting search terms, the already agreed 200 plus search

14   terms over that population.

15        Since then, there have been continuing search term

16   negotiations where we reached agreement two weeks ago on an

17   additional category of 35 search terms.  Those documents have

18   been pulled and are being reviewed now, and overnight I think

19   we got confirmation this morning from Inform that the final

20   tranche of six terms the parties have reached agreement on

21   those, and obviously that's going to take a little time to make

22   its way through the system.

23        So I would respectfully submit that the arguments

24   being made by Inform are somewhat premature at this time

25   because as a result of them taking themselves out of the

O5LAGooC

1   November 2 process that applied to all other plaintiffs, it has

2   taken a little extra time to get the Inform specific documents

3   produced.  But that of course comes again to the backdrop of

4   the 6 million plus documents that we've produced.

5           THE COURT:  Thank you.  So I understand that in the

6   case of Inform there's more to come.  I was greatly relieved to

7   receive the letter reporting that there had been a breakthrough

8   and that I was not going to have to sit there and rule on

9   search terms and custodians in undoubtedly a very imperfect

10  way.

11          So here's a question I have for Inform.  Thank you.

12  You're free to respond if you want to respond in any respect,

13  but I understand there's more coming by way of document

14  production.

15          MR. HERMAN:  I think Mr. McCallum presented a fair

16  picture of what's going on.

17          THE COURT:  All right.  So let's look at interrogatory

18  number five.  Ballpark, how many instances does Inform think

19  would fall within interrogatory number five?  That handful of

20  100, ten handfuls, 100 handfuls, a thousand handfuls, a

21  trillion handfuls?

22          MR. HERMAN:  This is wildly speculative, but it would

23  probably be in the hundreds and millions if not billions of

24  transactions.

25          THE COURT:  Okay.  All right.  That's what I thought.

O5LAGooC

1    And in each instance, Google should respond.  I hope nobody

2    prints that out, that response.  It would have an impact on the

3    world supply of paper.  And I have a similar question as to

4    interrogatory number 7.

5            No, I think I have that wrong.  I have that wrong.

6    Interrogatory number 6.  Yes.

7            MR. HERMAN:  Yeah.  So if I may, your Honor.

8            THE COURT:  Yes.

9            MR. HERMAN:  Hopefully this will help address your

10   concerns.  And fair concerns.  I agree.  Our hope was to get --

11   Google has made available some transaction level data that

12   encompasses the entirety of the auctions over a week period of

13   time.  What we're looking for is that same data where you strip

14   out every other participant except for Inform, and to get that

15   data produced.  It would show, you know, the bids, the winning

16   bid, the time, etc., for those various transactions.  We're not

17   looking for four years' worth of data.  We're looking for

18   finite set in the event we get to the damages phase and your

19   Honor gets presented with a *Daubert* motion, we want to make

20   sure we at least ask for it.  In the event that we get it and

21   we can analyze and incorporate in our expert reports, it can be

22   beneficial.  If on the other hand we don't get it, then

23   hopefully that would get used against us when the *Daubert*

24   motion gets filed.

25           THE COURT:  Well, here's a question.  Sounds to me

O5LAGooC

1    like what you're looking for is the production of data, right?

2               MR. HERMAN:  Fair, yes, your Honor.

3               THE COURT:  That sounds to me like a Rule 34 request,

4    not an interrogatory.

5               MR. HERMAN:  Our assumption would be Google would have

6    a 33(d) objection and produce the data in lieu of interrogatory

7    response.

8               THE COURT:  I understand.  I understand.  But that's

9    the problem looking at the interrogatory.  And you're going to

10   get the 33(d) objection.  They're going to say we've produced

11   6 million.  Now with what we're producing you, all in, it's

12   7 million.  It's in there.

13              That's not very helpful either.

14              MR. HERMAN:  Correct.

15              THE COURT:  So that's why I'm not inclined to give you

16   5 or 6.  We can talk about other things, but 5 and 6 give me

17   pause.

18              Now, I'll hear from Google on this, but my inclination

19   is to allow Inform to serve interrogatory 1, 3, 4, 7, A through

20   C, and E.  But not D and F.  And then on interrogatory 2, it

21   would depend on the -- I would not allow -- well, the second

22   sentence of interrogatory 2 you're only looking for contracts

23   or agreements not other documents; is that correct?

24              MR. HERMAN:  That's correct, your Honor.  I'm looking

25   at 2 is our affirmative -- that would be number 1 I believe,

O5LAGooC

```
 1    unless I'm mistaken.

 2              THE COURT:  No, no.  Look at the second sentence of

 3    interrogatory 2.

 4              MR. HERMAN:  Oh, I see that.

 5              THE COURT:  You're only looking for contracts or

 6    agreements there; is that right?

 7              MR. HERMAN:  That's correct, your Honor.

 8              THE COURT:  Okay.  So with regard to interrogatory 2,

 9    it looks to me that I would allow it as to at least stating the

10    legal and factual basis of the affirmative defense.  As to the

11    second, third, fifth, tenth affirmative defenses, not the

12    first, fourth, sixth, seventh, eighth, or ninth.  And as to the

13    thirteenth -- not allow the eleventh, twelfth, but as to the

14    thirteenth, not only require the factual and legal basis, but

15    also the documents.  The fourteenth, just the legal and factual

16    basis, but not the documents.  The sixteenth, the legal and

17    factual basis, not the documents.  Seventeenth, the legal and

18    factual basis and the documents.  The eighteenth, the legal and

19    factual basis and the documents.  And the twentieth, the legal

20    and factual basis, but not documents.

21              So that's what I'm inclined to do.  I'll give Inform

22    the first shot at taking issue with that and then I'll give

23    Google the last shot at it.

24              MR. HERMAN:  No issue with your Honor's ruling.  I do

25    have a question for clarification.
```

O5LAGooC

```
 1              THE COURT:  Yes.

 2              MR. HERMAN:  You had mentioned numbers 5 and 6.

 3              THE COURT:  Yes.

 4              MR. HERMAN:  Seeming more like Rule 34 requests.

 5              THE COURT:  Yes.

 6              MR. HERMAN:  Would it be agreeable to your Honor if we

 7    served those as Rule 34 requests?

 8              THE COURT:  All right.  That sounds reasonable.  I'm

 9    going to find out if there is an objection to that.  That

10    sounds reasonable to me.  Okay.  Thank you.

11              MR. HERMAN:  Thank you, your Honor.

12              THE COURT:  So now I'll hear from Google.  You can

13    start with a Rule 34 request relating to the two

14    interrogatories.  I guess it's 5 and 6.  Any objection?

15              MR. McCALLUM:  Your Honor, we would object to

16    reserving those in the form of a Rule 34 request.  We do agree

17    that they are not proper interrogatories and out are in fact

18    data RFPs and data RFPs layering on also an additional request

19    for a narrative response in certain places.  What has happened

20    here is that we've --

21              THE COURT:  Well, listen, it's been reformatted here.

22              MR. McCALLUM:  Sure.

23              THE COURT:  I presumptively ruled in your favor that

24    they're not proper interrogatories.  You don't have to tell me

25    why I'm right, but appreciate that sometimes.  But what's the
```

O5LAGooC

1   problem with it being a Rule 34 demand?

2          MR. McCALLUM:  The problem, your Honor, is that it's

3   duplicative of data requests that were served during the course

4   of the MDL -- I'm sorry, by the common MDL requests, if you

5   will, served by the discovery steering committee.  We think we

6   have properly responded to the data requests.

7          With respect to the specific requests that Mr. Herman

8   made for a week of transactional log level sample data, we have

9   provided seven of those similar samples to the MDL plaintiffs

10  as a group.  And the amount of burden involved in preparing one

11  of the samples that Mr. Herman is referring to takes several

12  months of engineering work by Google.  Those are bespoke

13  collections that do not exist in the ordinary course of

14  business.

15         So we've explained this to Inform during the course of

16  our meet and confers with them, so as an alternative, we

17  pointed Inform to four different data sets that Google has

18  already produced, which we think contain material specifically

19  relevant to Inform.  Those data sets date back to 2005, 2006,

20  2007, and one of the data sets goes back to 2012, which we

21  think are appropriate relevant time periods for Inform.  We've

22  provided them information from Google data dictionaries to try

23  and walk them through how those data requests are responsive to

24  their specific issues.  And we thought, your Honor, that as of

25  around middle of March, we had actually resolved these data

O5LAGooC

1    requests.  So we were a little surprised to see that data

2    request be resuscitated in the form of this interrogatory

3    request.

4           So for those reasons, we would respectfully submit

5    that whether as an interrogatory or now as reformatted as a

6    Rule 34 request, it's duplicative of data requests that Google

7    has already responded to.

8           THE COURT:  All right.  Well, what's the response --

9    what's the harm in the Rule 34 request being served, and your

10   responding you have this.  We've given it to you.  Period.

11          MR. McCALLUM:  There's no prejudice to Google in that

12   scenario.

13          THE COURT:  Okay.  If that's your position, then the

14   plaintiff is protected in the sense that you have made a

15   representation that you have produced them.  And if you have,

16   you have.  If you haven't, you have a problem.

17          Let me hear from Inform.  Does that work for you?

18          MR. HERMAN:  That would work, your Honor.

19          THE COURT:  Okay.  And I will just shorten the time on

20   the response to the Rule 34 request to 14 days.  It shouldn't

21   take you very long -- well first of all, you're going to serve

22   this in seven days.  Can you serve this in seven days?

23          MR. HERMAN:  We'll serve it by Friday.

24          THE COURT:  Yeah.  Okay.  And you can respond in 14

25   days?

O5LAGooC

 1          MR. McCALLUM:  Responses and objections in 14 days?

 2          THE COURT:  Yes, but the responses and objections

 3     you're representing to me, I don't want to find out I got

 4     snookered here.  You're going to say in your response we object

 5     because we've produced this already.  Not we object, it's

 6     burdensome.  We haven't advanced the ball and I've wasted my

 7     time.

 8          MR. McCALLUM:  There would be the two different data

 9     sets that I just referenced, your Honor, I think would be

10     treated differently.  One pointing Inform to the materials that

11     we have already pointed them to, which is the four data sets

12     that I referenced, which we thought had resolved the dispute.

13     We would be pointing in our R&O's to those datasets but we

14     would preserve our burden objections with respect to Inform's

15     request to creating any kind of new custom bespoke dataset that

16     does not exist in the ordinary course of business because those

17     could take months.

18          THE COURT:  All right.  I can rule on that.  That's

19     fine.  Fourteen days.

20          And with regard to the other interrogatories, you have

21     my tentative ruling.  Is there anything you wanted to say on

22     any of the others?

23          MR. McCALLUM:  I would just say, your Honor, with

24     respect to interrogatory number 1 and interrogatory number 4, I

25     think those will fall into the category of matters that are

O5LAGooC

1    covered by the current discussions as to search terms and

2    custodians.  So when it comes to identifying contracts,

3    invoices, billing, or account statements, we think that those

4    would be in Inform's position --

5            THE COURT:  Swept up in the -- yes.

6            MR. McCALLUM:  But also swept up, so we would reserve

7    the right to not go through and identify those contracts,

8    specifically as opposed to referring to the production I think

9    the same would apply with respect to interrogatory number 4.

10           THE COURT:  All right.  So it may be that otherwise --

11   well, I'll tell you what, you can have three weeks to respond

12   to the full set of interrogatories.  Some of them are going to

13   require you to identify the legal and factual basis for a

14   claim, and I think that's fine when you have something

15   reasonably specific like plaintiff's claims are barred in whole

16   or in part because they were relinquished by plaintiff through

17   contract with Google.

18           And there's another, relating to contractual agreement

19   including a provision that provides disputes will be resolved

20   through arbitration.  I don't think it's burdensome to require

21   you -- I'm using those two examples but applies elsewhere -- to

22   respond with the legal and factual basis, and in those

23   instances and in several other I mentioned, the documents that

24   support it.  That shouldn't be a treasure hunt through

25   6 million documents for the plaintiff.

O5LAGooC

1        MR. McCALLUM:  Understood, your Honor.

2        THE COURT:  Good.

3        MR. McCALLUM:  I would just say with respect to

4   interrogatory number 9, we did view that as calling for a

5   longer narrative response, which was the basis of our

6   objections in our papers.  I'm hearing your Honor's preliminary

7   findings.

8        THE COURT:  Yes.

9        MR. McCALLUM:  That it would be A, B, C, and E in

10  scope, but not D and F; is that correct?

11        THE COURT:  That's correct.

12        MR. McCALLUM:  Okay.

13        THE COURT:  That's correct.

14        MR. McCALLUM:  I understand the Court's position.

15  Thank you, your Honor.

16        THE COURT:  Okay.  So that's going to be my ruling on

17  the interrogatories.  And the responses to the interrogatories

18  are going to be due 21 days from today.

19        All right.  And I'm going to mark the motion for

20  additional search terms and custodians as withdrawn without

21  prejudice.  So if you're negotiations fall apart, you'll have

22  the opportunity to come back.  All right?

23        MR. HERMAN:  Thank you, your Honor.

24        THE COURT:  Okay.  Now let me find out what is

25  outstanding with regard to the advertiser class request to

O5LAGooC

 1    serve interrogatories.  I think it's limited now to

 2    interrogatories 14 and 15; is that correct?

 3              MR. GRZENCZYK:  Yes, your Honor.  That's correct.  I

 4    think all the other ones Google represented that they don't

 5    have an objection to.

 6              THE COURT:  Okay.  So tell me the magic in 14 and 15?

 7              MR. GRZENCZYK:  Well, I can give you a brief overview

 8    of those, your Honor, but I also think that I haven't had a

 9    chance to confer with defendants, obviously, about this.  Some

10    meeting and conferring might be helpful.

11              THE COURT:  Some what?

12              MR. GRZENCZYK:  Meeting and conferring might be

13    helpful further because of some of the guidance you've provided

14    today.

15              THE COURT:  All right.  So how does that sound to

16    Google?

17              MR. McCALLUM:  We're happy to continue to meet and

18    confer.

19              THE COURT:  Okay.  So you'll be back to me let me know

20    if that can be withdrawn or withdrawn without prejudice, or

21    whether it needs to be ruled on.

22              MR. GRZENCZYK:  Sure.  And I think we can do that

23    promptly enough to keep whatever the current schedule would be

24    for oppositions and replies for that.

25              THE COURT:  Right.

O5LAGooC

1          MR. GRZENCZYK:  And, yeah, we're willing to do that

2     and report to you what the outcome is.

3          THE COURT:  All right.  Now, let me hear the bid and

4     the ask on answering the state law claim.  So I think I

5     indicated that with regard to the state law claims, the

6     defendants' assertion that the state law claim fails to state a

7     claim for relief can be preserved for the summary judgment

8     stage, and my recollection is there was no objection by anyone

9     to that proposal.  Correct so far?

10          MR. THORNE:  Yes, your Honor.  For Gannett, Daily

11     Mail, that is correct.

12          MR. REISER:  Craig Reiser for Google.  We did object

13     to the proposed amended complaint on the basis of it not

14     containing any new allegations that supported a claim and also

15     prejudice to Google by virtue of the fact that we've seen Daily

16     Mail in particular play fast and loose with which allegations

17     it's actually pursuing in support of its state law claims.

18          THE COURT:  But I did allow the filing.

19          MR. REISER:  You did allow the filing, correct.

20          THE COURT:  I did allow the filing and I suggested

21     that your legal objections would be deferred to the summary

22     judgment phase.  And you have no objection to that?

23          MR. REISER:  That was your ruling and certainly we

24     respect your Honor's ruling.

25          THE COURT:  Okay.  So now the question is why require

O5LAGooC

1    an answer?

2           MR. THORNE:  So, your Honor, Google did answer the

3    antitrust claims after your prior decision.

4           THE COURT:  Okay.

5           MR. THORNE:  They have not answered the state law.

6           THE COURT:  Okay.  That's what we're talking about.

7           MR. THORNE:  So the burden is admit, deny, admit,

8    deny.  And the burdens seem pretty small.  And it's possible if

9    Google admits anything that that would reduce what we have to

10   still finish discovery using the new depositions that you

11   granted us a little while back.  But the one thing that

12   actually worries me, that I think is important, is if Google

13   has a really important new defense, new affirmative defense

14   that they want to assert, they're waiting until summary

15   judgment to do that and preventing us getting discovery of

16   that.

17          For example, they had an affirmative defense against

18   the DOJ case down in Virginia related to publishers.  Judge

19   Brinkema struck that, but if there's a surprise defense, I

20   think we should know about that before discovery and I don't

21   think it's that hard to say affirm, deny to the allegations.

22   There are not that many allegations.

23          MR. REISER:  Your Honor, the problem we have is we

24   don't know exactly what is within their state law claims, which

25   is why we wanted to file motions to dismiss under Rule 12 to

O5LAGooC

1    clarify what's in and out.  One example I can provide your

2    Honor, which I think was in our papers about that --

3          THE COURT:  Well, if I grant the motion under Rule 12,

4    12(b)(6) or 12(c), it's out.  The claim is out.

5          MR. REISER:  No, that's right.  And we don't get to

6    file that motion until the summary judgment stage at this point

7    based on your Honor's ruling.  And the point I was trying to

8    make --

9          THE COURT:  Did you file an objection to the proposal?

10   Because it was put as a proposal is my recollection that it be

11   deferred to the summary judgment stage.

12         MR. REISER:  We did.  We did assert that we believed

13   we would be prejudiced in part for the reason I was about to

14   posit, which is --

15         THE COURT:  Go ahead.

16         MR. REISER:  We do not understand exactly what they

17   are claiming in their state law claims.  In response to your

18   Honor's March 1 ruling, they made a production to us and told

19   us that they were withholding, this is Daily Mail specifically,

20   they were withholding documents that were relevant only to the

21   search related claims that your Honor dismissed.  We've

22   followed up with them for two months to try to understand what

23   that means.  Are they claiming, for example, in aid of their

24   state law claims under GBL 349 or common law fraud that the

25   search allegations your Honor dismissed under federal law are

O5LAGOoC

1  part of their case, and we haven't gotten an answer.  They did

2  finally on Friday, this past Friday, agree to produce those

3  documents but we don't -- the reason we can't answer and we

4  can't tell -- we can't say whether we have additional defenses

5  is we don't know what's in or out and that's the bargain that I

6  think they struck when they asked your Honor to defer until the

7  summary judgment stage any briefing under Rule 12.

8        THE COURT:  The reason that doesn't make any sense to

9  me is if I say right now you can move to dismiss, I'm going to

10  reverse myself.  Can you move to dismiss?  How does that help

11  you?  Because I'm not staying discovery.

12        MR. REISER:  Well, we would move to dismiss any state

13  law claims to the extent they were predicated on anything your

14  Honor dismissed as improper to state a claim under the federal

15  antitrust laws.

16        THE COURT:  Yeah.  And how would that help you?

17        MR. REISER:  We would have your Honor's ruling and

18  we'd continue discovery on the assumption --

19        THE COURT:  No, you wouldn't.

20        MR. REISER:  We would continue discovery on the

21  assumption that everything in their state law claims, as we

22  understand them, which based on their representation would not

23  include anything pertaining to search is out, and we would

24  proceed to summary judgment and get a ruling from your Honor

25  whenever your Honor was ready to rule.

O5LAGooC

```
 1          THE COURT:  Right.  All right.  So what I'm going to
 2   direct you to do is file an answer without prejudice.  It's
 3   without prejudice your position that the claims do not state a
 4   claim for relief or are otherwise barred from my ruling.  I'm
 5   just not staying discovery.
 6          MR. REISER:  Understood, your Honor.
 7          THE COURT:  So would it be convenient to get that
 8   answer in within 21 days?
 9          MR. REISER:  Yes, your Honor.
10          THE COURT:  Okay.  That's great.  That's fine.  Thank
11   you very much.  I think that resolves that issue.
12          MR. THORNE:  Thank you, your Honor.
13          THE COURT:  So let me move up the question of the
14   application to serve interrogatories filed I think it might
15   have been at midnight or right before midnight.  Which was it?
16          MR. McCALLUM:  I believe it was about a minute before
17   midnight, your Honor.
18          THE COURT:  All right.  I'm not going to address that.
19   You have some guidance here.  And, in fact, in this district,
20   as reflected in the Local Civil Rules, interrogatories rarely
21   are the key to anything.  I once had a judge tell me when I was
22   in private practice that nobody ever won a case on an
23   interrogatory response.  And what I should have done was just
24   agreed with him.  But I was young and foolish and I pointed out
25   that I had a case where it was a breach of contract action, we
```

O5LAGooC

1    asked the other side to set forth the circumstances under which

2    this contract could be terminated.  It was allegedly a contract

3    in perpetuity.  And they responded there were no circumstances

4    under which it could be terminated.  We promptly moved under

5    the statute of frauds and won the case.

6           But those examples are few and far between with

7    interrogatory responses.  And usually the information can be

8    obtained otherwise.

9           There are some instances, like I've pointed out with

10   some, not all of the affirmative defenses, but some, if you're

11   going to say oh, this is barred by an arbitration agreement,

12   well, do tell us more.  What arbitration agreement are you

13   talking about?  It's fair to require certain explication and

14   that's true even with market definition.  Well, okay, you know,

15   what market are you in, and who else is in that market?  An

16   interrogatory can be useful in that sort of a thing.  But just

17   to play games with dualing interrogatories, you're going to

18   find I'm going to swat it down as well I should.

19          But negotiate.  Get to the things that can't be

20   obtained, unless there's an interrogatory, where you're in the

21   dark, your client is in the dark and you're entitled to know,

22   and that's going to be the kind of interrogatory that I'm

23   likely to allow.

24          MR. McCALLUM:  If I may respond very briefly, your

25   Honor.

O5LAGooC

1          THE COURT:  Yeah.

2          MR. McCALLUM:  The request made by Google last night,

3     the timing was not driven by this hearing this morning.  The

4     timing was driven because we have to file -- these are

5     exclusively contention interrogatories that are due at least 30

6     days prior to the discovery cutoff date, and we had met and

7     conferred with the plaintiffs and we understood that there may

8     be a dispute as to whether they would consent to these.  And

9     we're happy to continue to meet and confer with them, but we

10    would like the opportunity to submit exclusively contention

11    interrogatories similar to nature to those that the Court has

12    approved for the plaintiffs.

13         THE COURT:  Well, it sounds like I'm going to be

14    allowing that, but I want you to hammer it out and send it to

15    me if there are any remaining disagreements on it, and let's

16    see what I do with it.  I'll try to get to it promptly.

17         MR. McCALLUM:  Thank you, your Honor.

18         THE COURT:  And I guess the next item on the agenda is

19    the request -- this one has been pending much longer.  It was

20    filed at 10:00 last night, so I've had it for an additional two

21    hours to study.  This was plaintiff's request to extend the

22    expert discovery dates by 43 days, a modest proposal, because

23    when I look at it, it looks like it's an extension request

24    to -- I haven't studied it, I think it was April 2025.

25         So I'm going to take that under advisement and I'm

O5LAGooC

1   going to get you a ruling on or about July 1.

2              MR. KOROLOGOS:  On or about July 1 you'll rule on the

3   scheduling?

4              THE COURT:  Extension request.

5              MR. KOROLOGOS:  Well --

6              THE COURT:  You know why?

7              MR. KOROLOGOS:  That would require us to do a bunch of

8   the work in advance, your Honor.  But on a schedule that I

9   assume your Honor is basing on the first business day after the

10  close of fact discovery.

11             THE COURT:  That's exactly what I'm basing it on

12  because, not you Mr. Korologos, I know you better than that,

13  but there are some lawyers who might be tempted to use it as a

14  nose under the tent.  And might say, well, your Honor has

15  extended the expert discovery, we'll run this fact discovery

16  concurrently and it won't extend the extended schedule any

17  further.  So I'll wait until July 1 and then I'll function on

18  it.

19             MR. KOROLOGOS:  Understood, your Honor.

20             THE COURT:  So that's that.  And what else?

21             MR. KOROLOGOS:  Your Honor, I believe the remaining

22  issue is the motion for protective order by Google with respect

23  to our Texas subpoena.

24             THE COURT:  Yes, it is.  Yes, it is.  So here's what I

25  want to hear about is are any of the deponents that were taken

O5LAGooC

1    in the Texas action deponents that the plaintiffs have

2    requested to take in this action but have not yet taken?

3              MR. KOROLOGOS:  Yes, your Honor.

4              THE COURT:  Okay.

5              MR. KOROLOGOS:  There are I believe three or four such

6    witnesses.

7              THE COURT:  All right.

8              MR. KOROLOGOS:  That are yet to be taken, but have

9    been noticed.  That our understanding, even though we don't

10   have all of the notices in the Texas case, our understanding is

11   they either have been deposed or very shortly will be deposed

12   in the Texas matter.

13             THE COURT:  All right.  Let me ask you the next

14   question.  Do you anticipate economies in maybe a shorter

15   deposition by getting the transcript of the deposition in the

16   Texas action?

17             MR. KOROLOGOS:  I think that it would certainly assist

18   us in being more efficient with the deposition.  However, I'm

19   not sure that we can reduce the amount of time we would take

20   with the witness given that that deposition and its usefulness

21   in this case as a deposition in this case is different.  That

22   will be a document.  It's prior testimony in a different

23   action.  But it is not the same as taking the deposition in our

24   case.

25             So we may know better, for instance, what we expect

O5LAGooC

1  the answers to questions to be and be able to therefore

2  anticipate that, but we're still going to have to ask those

3  questions in order to be able to use them the same way in this

4  case as though it's a deposition taken in this matter.

5          THE COURT:  Well, let's talk about that.  If it's a

6  Google witness, then Google is going to have to bring the

7  witness to trial or the transcript is going to be usable,

8  right?

9          MR. KOROLOGOS:  It should be if it's still -- if it

10 was a current --

11         THE COURT:  If it's a current employee.  If it's a

12 current employee.  Very good point.  And that would be true

13 whether it was taken in this action or in the Texas action.

14         MR. KOROLOGOS:  I believe that's correct, your Honor.

15         THE COURT:  Yeah.  And the deposition in the Texas

16 action could be used for cross-examination purposes, just as

17 the deposition taken in this action could be used.

18         MR. KOROLOGOS:  Yes.

19         THE COURT:  So I'm disappointed to hear that you would

20 expect it to permit certain efficiencies, but not really.

21 There would be efficiencies, but you would want to ask the

22 identical questions over again.

23         MR. KOROLOGOS:  Well, I do believe it would be more

24 efficient.  Lawyers being lawyers, and we have multiple parties

25 taking one day of deposition of these three or four witnesses,

O5LAGooC

1   I think it is difficult before seeing the transcript in the

2   Texas case to understand just how much we might be able to save

3   with that.  One of our issues is we have difficulty even

4   knowing who has been deposed in Texas, let alone what they have

5   said.  And so I think that it's very difficult in a vacuum to

6   limit ourselves just based on transcripts that we completely --

7        THE COURT:  I understand, and I don't have a clear

8   path to how you would articulate a limitation anyway.  But I

9   wanted to find out, I do want to from Google why they wouldn't

10  say, Judge, we would be delighted to have the plaintiffs have

11  this deposition and be able to use it as if it were taken in

12  this action if it means that we won't have non-duplicative

13  questioning at the deposition.  But I haven't heard them say

14  that yet.  So, so far, there's been nothing said on that.  So

15  let me hear from Google.

16       MR. JUSTUS:  Thank you, your Honor.  I think it's

17  important to level set on what this request is.  So we are near

18  the end of fact discovery.

19       THE COURT:  They've asked for this.

20       MR. JUSTUS:  They've asked for this.

21       THE COURT:  I'm having a conversation now on this.

22       MR. JUSTUS:  Yeah.  So talking only about the four,

23  where someone has been deposed in the Texas case and has also

24  been the subject of a deposition notice in this case, we think

25  that the cleanest way is just to deny this production entirely

O5LAGooC

 1    and tell them to go take a new depo.  But if the Court said,

 2    you know what I'm going to deny -- I'm going to issue a

 3    protective order, preclude all of those subpoenas from coming

 4    in, except for these four, then I think we can work with the

 5    plaintiffs to come up with guardrails on those four.

 6         THE COURT:  You know what, it's a very interesting

 7    position you take.  It's a little bit unusual in my experience.

 8    You can be seated.  Because most of the time, I've seen a

 9    defendant doesn't want to have his witnesses examined on

10    multiple occasions.  Human nature being what it is, there are

11    different versions.  They're not identical.  They're argued to

12    be contradictions and anything a counsel can do to prevent his

13    client from being deposed twice on similar subjects, there's

14    usually a desire to do cartwheels to avoid that.

15         MR. JUSTUS:  If I --

16         THE COURT:  But I don't hear that here.

17         MR. JUSTUS:  If I may, your Honor.  So we certainly

18    agree that if these four deposition transcripts are produced in

19    this case, that they should not have any right to depose those

20    folks again, because they have been deposed in Texas and they

21    shouldn't be burdened again.  We certainly agree with that.

22         My point was only that if the Court is considering

23    ruling that only these four depositions are in dispute for

24    potential cross production, we'd be willing to talk about

25    something around those four depos with the plaintiffs.  But of

O5LAGooC

1    course ex ante, we don't want our folks to sit twice.

2              THE COURT:  Okay.  I'm glad you clarified that because

3    I didn't get that the first go round at all.  But that's all

4    right.  Thank you.

5              Mr. Korologos, I guess the question is what's your

6    best case for basically arguing, I don't know who these people

7    are, I don't know what they do for a living, but if somebody in

8    Texas thought they should have their deposition taken, I want

9    to see what the questions were and what the answers were.

10   What's your best pitch for that?  Because I certainly already

11   I'm not inclined to allow wholesale piggybacking on somebody

12   else's discovery requests.  You're free to take any deposition

13   you want within the limitations that have been set and ask what

14   you want.  And if you get the answers, that's it.  But saying

15   that the deposition of X -- I don't even know who X is, I don't

16   know who he works for -- is relevant to this action because the

17   guy in Texas thought it was relevant doesn't sound to me very

18   persuasive.

19             MR. KOROLOGOS:  Let me address that, your Honor.

20             I think there are a few different categories we can

21   talk about.  One, a category that I think we could carve out

22   from this case are depositions of Google employees who were

23   deposed because their principal role was to interact with a

24   state agency that engages in advertising with Google.

25   Essentially client representatives, not a legal client, the

O5LAGooC

1        customer representatives.  Those we care a lot less about.

2               Somebody who was deposed, however, in the topics that

3        overlap between this case and the Texas case, we think is fair

4        game for this case because at this time certainly relevant to

5        the extent there's overlap -- and I'll come back to that, and

6        it is a party admission as to what they have said about this in

7        another proceeding.  Now, what is that overlap?  Google says

8        that the Texas case now focuses on other things.  It focuses on

9        the Deceptive Trade Practices Act claim, and less so on the

10       antitrust claim.

11              First of all, none of the claims have been dismissed

12       in Texas.  It's the same complaint that was before your Honor.

13       And in fact, that's at ECF Docket Number 541.  But if you look

14       at the Deceptive Trade Practices Act portion of that complaint,

15       and I'm reading from the page 5 of 260, which is the Table of

16       Contents of that complaint, which has a Section IX, Deceptive

17       Trade Practice Violations:

18              A. Google misled and deceived advertisers regarding

19       Reserve Price Optimization.

20              B. is about dynamic revenue share.

21              C. is about Project Bernanke.

22              D. is about header bidding.

23              These are all things that are already in our antitrust

24       claims as anticompetitive acts.

25              THE COURT:  And what are you reading from?

O5LAGooC

1          MR. KOROLOGOS:  I'm reading from the table of contents

2     of the Texas complaint, which was filed here, but it's still

3     the operative case in Texas.

4          THE COURT:  I understand the correlation between the

5     complaint in this action and the complaint in the Texas action.

6          MR. KOROLOGOS:  Right.

7          THE COURT:  I vividly recall the connection between

8     the two.

9          MR. KOROLOGOS:  And as a result, your Honor,

10    depositions other than I think this category I've carved off of

11    the customer representatives, that is going to relate to the

12    same factual basis in this case.  Those are statements by

13    Google about facts in this case that we do not have but Google

14    has.  It's the same counsel in that case.  We deserve a fair

15    understanding of the same facts that they have before trial, so

16    that we can understand -- including before summary judgment and

17    class certification -- the facts that they have in their minds

18    preparing their case, so that we can likewise prepare our case.

19    That's what discovery is about and that's what we want.

20         THE COURT:  All right.  So let me hear from Google.

21    First of all, the burden doesn't sound great.  How many

22    depositions are there?

23         MR. JUSTUS:  I think it would be roughly 20.

24         THE COURT:  Twenty?

25         MR. JUSTUS:  Yes.  Roughly.

O5LAGooC

1          THE COURT:  And now with the carve out of anyone who

2    principally dealt with states as customers?

3          MR. JUSTUS:  I'm not sure that reduces the number at

4    all.

5          THE COURT:  Yeah.  I got it.  Okay.  Not surprised.

6    All right.  So now what's your pitch on why I should not allow

7    this?

8          MR. JUSTUS:  Yeah, so there's no -- the plaintiffs in

9    this case have no need for additional deposition discovery of

10   Google.  I know it's probably clear to the Court, but it's

11   worth pointing out, in this case, the plaintiffs have access to

12   more than 30 Google depositions taken by the DOJ as part of

13   their investigation.  Ten depositions taken by the DOJ in the

14   EDVA litigation, and then 24 more depositions that they will

15   take in this litigation.

16         On the other side of the ledger, Google currently has

17   the right to take 15 depositions of the plaintiffs in this

18   case.  So there's already a big asymmetry here in terms of them

19   having more access to information.  And so granting this relief

20   is going to cause even more asymmetry between the parties, and

21   also, really violate the discovery limits that have been set in

22   this case that sought to give each side an equal number of

23   depositions.  That's kind of point one.

24         Point two is this case is pretty close to closing

25   discovery.  I mean, we're within about a month at this point.

O5LAGooC

1   We think that the most orderly way for this case to go forward

2   is for the parties to start narrowing their focus, take the

3   discovery that really matters, and take an orderly case into

4   this expert discovery.  And dumping almost two dozen more

5   experts -- two dozen more transcripts in the case at this point

6   is going to have the exact opposite effect.

7           I would note that the EDVA in particular was concerned

8   about the effect of dumping just a huge number of Texas

9   transcripts into that case.  That case is closer to trial of

10  course.  But on that consideration and some others, has already

11  denied this basically same relief when the DOJ sought it in

12  Virginia.

13          I would also point out to the Court that in Virginia,

14  the Court was very concerned that if it had granted the similar

15  relief requested by the DOJ, those transcripts would then be in

16  the EDVA and they could be shared into the MDL by operation of

17  the existing coordination order.  That respect for this Court's

18  discovery record kind of naturally goes the other way.  So if

19  this court does order that big production into this case, in

20  addition to all the other problems, it's also possibly

21  defeating the ruling of the EDVA.

22          THE COURT:  Thank you.  Mr. Korologos, a question is

23  how does the production of these transcripts effect the

24  discovery cutoff in this case?

25          MR. KOROLOGOS:  Doesn't.

O5LAGooC

```
 1              THE COURT:  Is it going to lead to "ah, ha" now I need
 2     an extension because I found out something I didn't know
 3     yesterday and now I want to pursue it.
 4              MR. KOROLOGOS:  It will not, your Honor.  With the
 5     only possible exception a truly good cause that somebody has
 6     said something entirely consistent -- inconsistent, your Honor,
 7     on the Google side than some position they've taken in this
 8     case.  I suspect with the good lawyering on the other side,
 9     that's not likely to occur.  So I don't see any threat to your
10     Honor's fact discovery cutoff.
11              THE COURT:  All right.  Go ahead.
12              MR. JUSTUS:  I was just going to say, your Honor, I
13     think that non-statement is noteworthy, is they're not even
14     willing to say here now that this won't lead to discovery being
15     kicked out further.  And this case is really close to being
16     able to go to expert discovery neatly.
17              THE COURT:  No.  Dually noted on both sides.  So this
18     is what I'm going to do, I'm going to reserve on that.  Let me
19     think about it a little bit more.
20              Yes?
21              MS. WOOD:  Your Honor, Julia Wood for the Department
22     of Justice on behalf of EDVA.
23              THE COURT:  Yes.
24              MS. WOOD:  I wanted to clarify.  Google's papers did
25     make this clear, but I wanted to clarify for the Court.
```

O5LAGooC

1    Obviously the plaintiffs in the EDVA action are appealing the

2    magistrate judge's ruling.  A date will be heard I believe on

3    May 31st.  It is currently set for argument in front of Judge

4    Brinkema.  So that is not -- that is still a live issue very

5    much in the Eastern District of Virginia.  A primary basis for

6    the Court's ruling was some concern about how this Court might

7    view the production of Southern District of Texas transcripts

8    to the EDVA.

9             It has always been our position of course that those

10   transcripts were contemplated as part of the original

11   coordination order that was entered.  It was the bargain for

12   piece of that coordination order.  We agreed to make sure the

13   depositions were consolidated.  Witnesses sat for consecutive

14   days rather than totally different time periods to benefit

15   Google in exchange for an agreement from Google to produce --

16   to allow us access to transcripts that were taken even after

17   our fact discovery was closed.

18            So I just rise to make clear that I didn't want to

19   have the counsel's presentation today leave you with the

20   impression that that was a done issue in the Eastern District

21   of Virginia.  We are appealing that decision by the magistrate

22   judge there.  That will be heard by Judge Brinkema in due

23   course.  And we do feel it is very important to the United

24   States' interest in the level playing field that we have --

25   even though fact discovery is closed -- we have access to the

O5LAGooC

1    same impeachment material.  Relevant third parties, for

2    example.  It's not just an example of Google witnesses.  It's a

3    question of third parties who are on the United States' initial

4    disclosures, who are on Google's disclosures in the EDVA

5    action, who Google, using the same lawyers, are deposing in

6    Texas and then somehow going to put everything out of their

7    mind that they heard in those Texas depositions when they're

8    both strategizing about who to call and how to cross-examine

9    those witnesses at trial.

10        So I don't mean to involve your Honor in EDVA matters,

11   but I did want to make sure the record was clear about the

12   status of that motion and the timing for a decision on that

13   issue.

14        THE COURT:  I very much appreciate that.  And I have

15   the utmost respect for my colleagues, both in the ED Virginia

16   action and in the Texas action.  And have tried, as they have

17   succeeded, in promoting a spirit of noninterference and

18   coordination when coordination is appropriate.  So I will say

19   nothing more.  And I thank you for that update.

20        MR. JUSTUS:  Your Honor, can I press my luck with just

21   two final points?

22        THE COURT:  Yes.

23        MR. JUSTUS:  One is to respond to one comment from

24   Ms. Wood is she talked about the bargain for benefit of

25   coordination.  I think it's important to note, as the Eastern

O5LAGooC

1    District of Virginia magistrate found, the coordination order

2    entered by this Court specifically considered the situation

3    where Texas got remanded, and specifically provided that if

4    Texas gets remanded, all bets for coordination were off.  So

5    there's no expectation in the current document that

6    coordination would be ongoing.  That's kind of point one I

7    wanted to make.

8            Point two is, and just so I can go home tonight and

9    sleep well, I wanted to make sure I made this point cheer.

10   We're not creating any discovery asymmetry.  We're not going to

11   use any deposition transcript in this case that they don't

12   have.  So this isn't going to mean Google sitting on a stack of

13   30 transcripts that the plaintiffs don't have.  The discovery

14   record in this case will be the same for everyone if your Honor

15   denies this relief, or grants our relief and denies their

16   subpoena.

17           THE COURT:  Thank you.  All right.  Is there anything

18   else?

19           MR. KOROLOGOS:  Your Honor, given the Court's clear

20   desire to make sure that June 28 is the close of fact

21   discovery, I want to raise one issue that's not before your

22   Honor yet.

23           On May 2, your Honor granted us an additional nine

24   depositions.  On May 3, we noticed thirteen depositions to fill

25   out the nine and the ones we still had remaining.  We have yet

O5LAGooC

1    to have received a date back from Google to schedule any of

2    those depositions.  And I am concerned, given the lateness in

3    the fact discovery period, that we'd be able to do so.  And

4    perhaps my colleagues will have an answer to this now.  Perhaps

5    they can give us one soon.  But I don't want to be before your

6    Honor without giving your Honor a heads up while we're here

7    today that I see this as a potential issue with respect to the

8    fact discovery cutoff.

9              MR. JUSTUS:  Your Honor, we're doing all we can to get

10   dates for these depositions and we will continue to move as

11   quick as possible.

12             THE COURT:  You'll have them by Friday.

13             MR. JUSTUS:  We'll do our absolute best.  Yes, your

14   Honor.

15             THE COURT:  You'll have them Friday.

16             MR. JUSTUS:  Yes, your Honor.

17             THE COURT:  Thank you.

18             MR. KOROLOGOS:  Thank you, your Honor.

19             THE COURT:  Unless there is anything else, we are

20   adjourned.

21             (Adjourned)

22

23

24

25