UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>                     *Plaintiffs,*<br><br>vs.<br><br>GOOGLE LLC,<br><br>                     *Defendant.* | No: 1:23-cv-00108-LMB-JFA |

**NON-PARTY SOVRN HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO SEAL**

Pursuant to Local Civil Rule 5(C), non-party Sovrn Holdings, Inc. ("Sovrn") submits this Memorandum of Law in Support of Defendant Google LLC's ("Google's") Motion to Seal (ECF No. 605). More specifically, Sovrn submits this memorandum in support of the request contained within Section III of Google's Motion to Seal, which requests that the Court maintain certain non-party documents that were designated as "Confidential" or "Highly Confidential" under seal. Google filed its exhibits to both its Motion for Summary Judgment (ECF No. 570) and its Motions to Exclude (ECF Nos. 573, 576, and 579) as one set of Exhibits at ECF Nos. 581-585. Sovrn seeks to have the following portions of Exhibits 1, 2, 3, 5, 8, 36, and 93 remain under seal:

- Exhibit 1: Prof. Robin S. Lee Opening Report, pp. 199 (Figure 47), 200 (Figure 48), 203 (Figure 49), 204 (Figure 50), 205 (Figure 51), 214 (Figure 54), D-3 (Figure 90), D-4 (Figure 91), D-5 (Figure 92), D-6 (Figure 93), D-7 (Figure 94), D-8 (Figure 95), E-2 (Figure 110), G-1 (Figure 122), G-2 (Figure 123), G-3 (Figure 124), G-4 (Figure 125).

- Exhibit 2: Metz Report, p. 242 (Figure 30).

- Exhibit 3: Prof. Robin S. Lee Rebuttal Report, p. B-26 (Figure 88).

1

- Exhibit 5: Dr. Timothy Simcoe Opening Report, p. 11 (Figure 4), p. 16 (Figure 7), p. 17 (Figure 8), and p. 89.

- Exhibit 8: Prof. Robin S. Lee Deposition, 240:8-241:22, 242:8-18, and 242:20-243:13.

- Exhibit 36: Sovrn Confidential Income Statement from January 2013 to December 2022.

- Exhibit 93: Dr. Timothy Simcoe Reply Report, p. 11 (Figure 3).

For the reasons stated below, Sovrn respectfully requests that the Court grant Google's Motion to Seal with respect to the aforementioned materials contained within the above-described Exhibits (ECF Nos. 581-585) which implicate Sovrn's highly sensitive and competitive financial information.

## **LEGAL STANDARD**

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police* v. *Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Substantively, the Court "must determine the source of the right of access with respect to each document." *Stone* v. *Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police*, 386 F.3d at 575. "While the common law presumption in favor of access attaches to all judicial records and documents, the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone*, 855 F.2d at 180.

Even so, public access to civil trial records "is not absolute," and restrictions can be justified by concerns that such records "might . . . become a vehicle for improper purposes," such as where the records serve "as sources of business information that might harm a litigant's competitive standing." *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). A corporation's

"strong interest in preserving the confidentiality of its proprietary and trade-secret information . . . . may justify partial sealing of court records." *Doe* v. *Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).

Nonparties, such as Sovrn, are afforded extra protections in relation to the burdens imposed by third-party subpoenas, and as such, Sovrn should be afforded increased protections in relation to the confidential documents it produced in response to such a subpoena. *See In re: Am. Med. Sys., Inc.,* No. 2325, 2016 WL 6666890, at *5 (S.D.W. Va. Nov. 10, 2016) (citing *Med. Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. Sept. 27, 2002) (particular consideration given to unwanted burden imposed on non-parties who are producing documents pursuant to subpoena). Sovrn, as a nonparty, should not be forced to have its confidential business information thrust into the public spotlight in a case in which it has no direct interest. *See Jeune v. Westport Axle Corp.,* No. 7:14-CV-617, 2016 WL 1430065, at *2 (W.D. Va. Apr. 8, 2016) (party's interest in litigation considered when determining burdens imposed via third-party subpoenas).

Procedurally, before allowing documents to be filed under seal, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object,[1] (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft* v. *Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).

A memorandum supporting a request to seal shall include:

(1) A non-confidential description of what material has been filed under seal;

---

[1] Google LLC filed a public Notice of Motion to Seal (ECF. No. 607). This Court extended the deadline for responses to June 7, 2024 to allow interested parties a reasonable opportunity to respond (ECF. No. 621).

(2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request;

(3) References to the governing case law, an analysis of the appropriate standard to be applied for that specific filing, and a description of how that standard has been satisfied; and

(4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and how the matter is to be handled upon unsealing.[2]

U.S.D.C. E.D. Va. Local Civil Rule 5(C).

## **DISCUSSION**

Sovrn seeks to permanently seal relatively small portions of Exhibits 1, 2, 3, 5, 8, and 93, and the entirety of Exhibit 36, all of which contain its confidential and commercially sensitive information. Sovrn is a non-party that produced documents in response to subpoenas from Google and the Department of Justice. Pursuant to the Protective Order (ECF No. 203) entered in this case, Sovrn marked some of the documents "Confidential." The documents marked confidential contain confidential financial information that, if disclosed, would cause irreparable harm to Sovrn, including but not limited to financial losses and loss of competitive advantage.

Some of this confidential financial information is contained in certain Exhibits used by Google in the Exhibits filed at ECF Nos. 581-585, which Sovrn seeks to keep sealed. The sensitive nature of the information necessitates its protection from public disclosure. The harm that would result from the disclosure of the confidential document outweighs any public interest in access to the information. The public interest in transparency must be balanced against the legitimate interests of the parties involved. In this case, the harm to Sovrn from disclosure far outweighs any public interest in accessing the documents, as the documents contain sensitive financial

---

[2] Sovrn seeks the permanent sealing of portions of Exhibits 1, 2, 3, 5, 8, 93 and the entirety of Exhibit 36 found at ECF Nos. 581-585.

information that would provide no benefit to the public but cause great harm to Sovrn if unsealed. Thus, sealing is appropriate under both the First Amendment and common-law standards. Sovrn takes no position on whether the remaining materials that are the subject of Google's Motion to Seal should remain sealed.

I. **SOVRN HAS FULFILLED THE REQUIREMENTS UNDER LOCAL CIVIL RULE 5(c) AND THE PROTECTIVE ORDER.**

   a. **Sovrn Has Provided A Non-Confidential Description Of What Material Has Been Filed Under Seal.**

Sovrn submits the following non-confidential descriptions of the materials it requests remain sealed.

- Exhibit 1: Robin Opening Report
  - P. 199 (Figure 47): share of worldwide indirect open-web display impressions transacted through ad exchanges (2018-2022);
  - P. 200 (Figure 48): shares of worldwide indirect open-web display impressions among ad exchanges (2022);
  - P. 203 (Figure 49): net revenues from the sale of worldwide indirect open-web display impressions (2018-2022);
  - P. 204 (Figure 50): share of ad exchange fees from worldwide indirect open-web display transactions (2018-2022);
  - P. 205 (Figure 51): ad exchanges' shares of ad exchange fees from worldwide indirect open-web display transactions (2022);
  - P. 214 (Figure 54): worldwide open-web indirect display take rates for ad exchanges (2018-2022);
  - P. D-3 (Figure 90): share of US indirect open-web display impressions transacted through ad exchanges (2018-2022);

5

- o    P. D-4, Figure 91: shares of US indirect open-web display impressions among ad exchanges (2022);
- o    P. D-5, Figure 92: net revenues from the sale of US indirect open-web display impressions (2018-2022);
- o    P. D-6, Figure 93: share of ad exchange fees from US in indirect open-web display impressions (2018-2022);
- o    P. D-7, Figure 94: shares of ad exchange fees from US indirect open-web display transactions (2022);
- o    P. D-8, Figure 95: share of worldwide indirect open-web display through ad exchanges (2018-2022);
- o    P. E-2, Figure 110: summary of worldwide open-web indirect display take rates among ad exchanges;
- o    P. G-1, Figure 122: share of worldwide indirect open-web display impressions transacted through ad exchanges (2018-2022);
- o    P. G-2, Figure 123: share of ad exchange fees from worldwide indirect open-web display transactions (2018-2022);
- o    P. G-3, Figure 124: share of US indirect open-web display impressions transacted through ad exchanges (2018-2022); and
- o    P. G-4, Figure 125: revenues from the sale of US indirect open-web display impressions (2018-2022).

- Exhibit 2: Metz Report, p. 242 (Figure 30): ad exchange take rates from January 2018 to November 2022 from Lee Report backup materials.

- Exhibit 3: Robin Rebuttal Report, p. B-26 (Figure 88): worldwide spending and impressions on GAM open bidding (2022).

- Exhibit 5: Simcoe Opening Report

    o   P. 11 (Figure 4): Effective Take Rate for Worldwide Open Web Display + Video Outstream Impressions;

    o   P. 16 (Figure 7): Average Spend per 1,000 Worldwide Impressions, 2018-2021;

    o   P. 17 (Figure 8): Average CPM Versus Average Take Rate, By Exchange; and

    o   P. 89: AdX and Market-wide Average Comparable Take Rates.

- Exhibit 8: Lee Deposition

    o   240:8-241:22: Discussion of open-rate indirect display take rates charged by Sovrn, among others, in 2018.

    o   242:8-18: Discussion of open-rate indirect display take rates charged by Sovrn, among others, in 2018 and whether they were competitive.

    o   242:20-243:13: Discussion of open-rate indirect display take rates charged by Sovrn, among others, and how they compared to Google's rates.

- Exhibit 36: Sovrn Confidential Income Statement from January 2013 to December 2022.

- Exhibit 93: Simcoe Reply Report, p. 11 (Figure 3): Comparables But-for Take Rate Estimates Excluding One Third-Party Exchange, Worldwide Impressions.

   **b.   Sovrn Has Provided A Statement Regarding Why Sealing Is Necessary, And Why Another Procedure Will Not Suffice, As Well As Appropriate Evidentiary Support For The Sealing Request.**

Portions of Exhibits 1, 2, 3, 5, 8, and 93 and the entirety of Exhibit 36 contain Sovrn's highly confidential financial information that, if disclosed, would cause irreparable harm to Sovrn. Disclosure of this information to the public or competitors would result in significant harm to

Sovrn, including but not limited to financial losses and loss of competitive advantage, as the documents contain non-public financial and proprietary information that could be utilized by its competitors. In short, this is core financial information for Sovrn's business. It reveals how Sovrn charges for its services and the market penetration and success of its exchange. It also shows how Sovrn's rates compare to those charged by others in the industry. This information is not available to the public and would be of tremendous benefit to competitors looking for ways to undercut Sovrn or otherwise take market share.

Exhibits 1, 2, 3, 5, 8, and 93 may be redacted to conceal the confidential information described in detail with references to specific page and/or figure numbers in Section I.a above. The portions of Exhibits 1, 2, 3, 5, 8, 93, described above, list rates charged by Sovrn, analyze them in comparison to rates charged by their competitors, or provide total exchange revenues and the exchange publisher shares for each quarter of several years, information that would harm Sovrn if disclosed to competitors. Exhibit 36 must be sealed in its entirety, as it does not contain superfluous non-confidential information that can be made public; thus, redactions would not adequately protect the information contained within the spreadsheet.

    **c.**    **Sovrn Has Provided References To The Governing Case Law, An Analysis Of The Appropriate Standard To Be Applied For That Specific Filing, And A Description Of How That Standard Has Been Satisfied.**

The Fourth Circuit has made clear, there is a "presumption of access accorded to judicial records." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Nixon*, 435 U.S. at 597. "[A] First Amendment right of access attaches to documents filed in connection with a summary judgment motion." *ACLU v. Holder*, 652 F. Supp. 2d 654, 661 (E.D. Va. 2009) (citing *Rushford*, 846 F.2d at 253). However, the Fourth Circuit has explained that "there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion." *Rushford*, 846 F.2d at 253.

8

The Fourth Circuit has recognized that corporations could have a strong interest in preserving the confidentiality of proprietary or trade secret information, which may justify the sealing of court records. *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).; *see also Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (district court did not abuse its discretion in refusing to unseal documents containing confidential and proprietary business information filed in connection with summary judgment motion); *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 766 (E.D. Va. 2018) (businesses may have a "compelling interest under the First Amendment test" in "protecting proprietary commercial information"); *In re Knight Pub. Co.*, 743 F.2d 231 (4th Cir. 1984) (court may seal documents to prevent others from gaining a business advantage).

Here, Sovrn, a third-party, seeks the sealing of portions of Exhibits 1, 2, 3, 5, 8, and 93 and the entirety of Exhibit 36 containing highly sensitive, non-public financial information. These documents would severely harm Sovrn's competitive standing if made public. District courts in the Fourth Circuit have sealed similar categories of information where the First Amendment right of access attaches. *See, e.g., Abu-Eid v. Discover Prod., Inc.,* No. 1:20-CV-1450, 2021 WL 9969142 (E.D. Va. June 2, 2021) (court sealed two documents marked as "confidential" by third parties who provided the information pursuant to a subpoena); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 577 (E.D. Va. 2009) (stating that courts may refuse "to permit their files to serve ... as sources of business information that might harm a litigant's competitive standing") (quoting *Nixon*, 435 U.S. at 598); *E. W., LLC* v. *Rahman*, 2012 WL 3843657, at *3 (E.D. Va. Sept. 4, 2012) ("sensitive financial data, including gross profit data, the disclosure of which would be highly likely to cause significant harm to the [company's] business competitive position"); *Intelligent Verification Sys., LLC* v. *Microsoft Corp.*, 2014 WL 12659953, at *1 (E.D.

Va. Dec. 22, 2014) (sealing "sensitive business information" attached to summary judgment motion); *HiQ Materials AG* v. *ICP Indus., Inc.* 2023 WL 4842783, at *2 (M.D.N.C. June 28, 2023) (defendant "seeks to redact only proprietary business and customer information and trade secrets in the form of financial analyses"); *360 Mortg. Grp., LLC* v. *Stonegate Mortg. Corp.*, 2016 WL 4939308, at *1-2 (E.D.N.C. Sept. 14, 2016) ("finances" are "the type of confidential business information properly subject to protection"); *SMD Software, Inc.* v. *EMove, Inc.*, 2013 WL 1091054, at *2-*3 (E.D.N.C. Mar. 15, 2013) (profit and loss statements, pricing, marketing strategies, expense information, market share, and customer information).

For these same reasons, the above-described portions of Exhibits 1, 2, 3, 5, 8, and 93 and the entirety of Exhibit 36 found at ECF Nos. 581-585 should be sealed in the present case, as these documents contain sensitive proprietary information that could harm Sovrn by providing its competitors with non-public financial information and cause financial losses.

## CONCLUSION

For the reasons above, Sovrn respectfully requests that this Court grant the Motion to Seal with respect to the portions of Exhibits 1, 2, 3, 5, 8, 93 described in detail in Section I.a above, and the entirety of Exhibit 36 filed by Google at ECF Nos. 581-585. A proposed order is submitted herewith.

Dated: May 31, 2024                              Respectfully submitted,

                                                 */s/ Stan M. Doerrer*
                                                 Stan M. Doerrer, VSB No. 88857
                                                 THE LAW OFFICE OF STAN M.
                                                 DOERRER PLLC
                                                 950 N. Washington Street,
                                                 Alexandria, VA 22314
                                                 Telephone: (703) 348-4646
                                                 Facsimile: (703) 348-0048
                                                 Email: stan@doerrerlaw.com

**CERTIFICATE OF SERVICE**

I certify that on this 31st day of May, 2024, I filed the foregoing document and served all counsel of record in this action via the Court's ECF filing system.

*/s/ Stan M. Doerrer*