IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF ANTHONY FERRANTE**

Google attempts to use Mr. Ferrante as a mouthpiece for testimony about an abstract set of "security concerns" that Google suggests will somehow serve as procompetitive justifications for its years-long scheme to suppress competition in the markets for digital advertising technology. That effort should fail. Mr. Ferrante's generic opinions about cybersecurity are inadmissible because they are (a) not tied to any contested factual or legal question in the case; (b) not based on reliable principles or methods; and (c) based in part on "field tests" the non-disclosure of which prejudiced Plaintiffs' efforts to scrutinize Mr. Ferrante's opinions during discovery.

Google makes sweeping assertions about the "critical" and "central" importance of cybersecurity to this case but Mr. Ferrante's opinions do not address, much less provide procompetitive justifications for, *any* of the behavior Plaintiffs allege is unlawful. Because the only proffered relevance of Mr. Ferrante's opinions is to justify Google's anticompetitive conduct, the fact that Mr. Ferrante does not address that conduct *anywhere* in his report is alone sufficient to exclude his opinions. His opinions lack any proper evidentiary purpose, and they

1

will not assist the trier of fact in determining whether the conduct alleged in the Amended Complaint violated the Sherman Act.

Furthermore, experts such as Mr. Ferrante who purport to base their opinions on experience are not excused from the basic requirement of Rule 702 to reach their opinions based on reliable principles and methods. This is for good reason because, otherwise, the opinions of experiential experts would devolve into an inscrutable black box, "connected to [the facts] only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Even experiential experts must "explain how [their] experience leads to the conclusion reached, why [their] experience is a sufficient basis for the opinion, and how [their] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note to (2000) amendments). The disclosures Mr. Ferrante made in his report and deposition collectively fail to meet these basic requirements, and Google's opposition brief does not show otherwise. Indeed, Google proposes to rewrite Rule 702, contending that "[a]n expert does not need a methodology—beyond his experience—for his opinions to be admissible." Def.'s Opp. Mot. to Exclude Anthony Ferrante ("Opp.") 17, ECF No. 637. Although such a foundational change to the rules of evidence may suit Mr. Ferrante's take-my-word-for-it approach, it is not the law, and his failure to explain how his experience led him to his conclusions is fatal to the admissibility of his testimony.

Finally, Google does not dispute that Mr. Ferrante conducted "field tests" as part of his work on this case and that neither the field tests nor any supporting data were properly disclosed to Plaintiffs. Opp. at 25. Google attempts to excuse this clear violation of the Expert Discovery Stipulation and Order by claiming that Mr. Ferrante's "field tests" merely "confirmed 'what he already knew'" and were done for the benefit of younger staff. *Id*. at 26. This argument is no

2

excuse for the discovery violation and, in any event, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[1] As

such, Google's violation of the expert discovery stipulation is an additional reason to exclude his

opinions on header bidding and Google's Open Bidding product. *See* Fed. R. Civ. P. 37(c)(1);

*Disney Enter., Inc. v. Kappos*, 923 F. Supp. 2d 788, 791, 795-96 (E.D. Va. 2013).

## ARGUMENT

### I. Mr. Ferrante's Generalized Observations About Cybersecurity Are Not Linked to Any Procompetitive Justifications for Google's Anticompetitive Conduct

Mr. Ferrante's general opinions ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ are unconnected to the specific

anticompetitive conduct Plaintiffs have alleged and therefore would not be helpful to the

factfinder in determining whether that conduct is unlawful. Ex. D, Expert Report of Anthony J.

Ferrante ("Ferrante Rep.") ¶ 6-7[2]. It is not enough to claim that: (a) "security issues" are

"relevant" to "competition among ad tech providers" generally, Opp. at 1; (b) "[s]ecurity is a

critical issue for digital advertising," *Id.* at 8; or even the blanket assertion that (c) "[i]nternet

security is a core issue in this case"—which it is not, *Id.* at 1. Rather, to be relevant for the trier

of fact, the proffered expert opinion must relate to the anticompetitive conduct alleged in the

---

[1] Deposition of Anthony Ferrante ("Ferrante Tr."), Feb. 16, 2024 at 186:16-25; 188:8-13; 189:10-14, ECF No. 589, Ex. B ("Ex. B") ("Q. But one of the things that you said supported the claim that you said in paragraph 75 [regarding data leakage in header bidding] was that you did your own independent field test, right? A. Of course.").

[2] Excerpts of this report were filed under seal as Exhibit A in Plaintiffs' opening motion to exclude Mr. Ferrante; however, for completeness, Plaintiffs attach Mr. Ferrante's report in its entirety. As such, any references to this report in the opening motion also correspond with Exhibit D of this reply and shown in full context.

3

complaint, not to product features that have nothing to do with that anticompetitive conduct.[3] *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) (en banc); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 478-9 (1992) (distinguishing between Kodak's proffered generalized procompetitive justifications regarding "innovative marketing plans" and "the procompetitive effect of the specific conduct challenged here"). Indeed, Google itself admits in passing that, to qualify as a procompetitive justification, any "valid business reason or concern for efficiency" must be tethered to "the challenged conduct" itself. Opp. at 8 (quoting *Oksanen v. Page Mem. Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991)).

Thus, for example, in determining whether a "product redesign is anticompetitive," "courts look for evidence of exclusionary or anticompetitive effects in order to distinguish between conduct that defeats a competitor because of efficiency and consumer satisfaction and conduct that impedes competition through means other than competition on the merits." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 652 (2d Cir. 2015). In other words, the analysis is appropriately targeted at specific forms of conduct, and it does not allow a defendant

---

[3] Google wrongly claims that Plaintiffs bear the burden of proving "that Google had 'no valid business reason or concern for efficiency' when engaged in the challenged conduct." Opp. at 8 (quoting *Oksanen v. Page Mem. Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991)). That is incorrect. Under Section 2 of the Sherman Act, the plaintiff "must demonstrate that the monopolist's conduct indeed has the requisite anticompetitive effect." *United States v. Microsoft Corp.*, 253 F.3d 34, 58–59 (D.C. Cir. 2001) (en banc). "[I]f a plaintiff successfully establishes a *prima facie* case under § 2 by demonstrating anticompetitive effect, then the monopolist may proffer a 'procompetitive justification' for its conduct." *Id.* at 59. The burden then "shifts back to the plaintiff to rebut that claim" or "demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit." *Id.*; *accord New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 652 (2d Cir. 2015); *Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 438 (3d Cir. 2016); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 463–64 (7th Cir. 2020). The cases Google cites, Opp. at 8, are inapposite because they stem from cases involving unilateral refusals to deal with rivals, but as Plaintiffs explained in their Opposition to Google's Motion for Summary Judgment, the challenged conduct at issue cannot properly be characterized as such refusals. Pls.' Opp. Def.'s Mot. Summ. J. 20–25, ECF No. 669.

to point to purported benefits of unchallenged conduct to justify the harm of challenged conduct. Yet nowhere in Mr. Ferrante's report or deposition does he specify how any of his opinions relate to the anticompetitive conduct alleged in this case. Indeed, if anything, his deposition revealed that Mr. Ferrante knows and understands very little about the digital ad tech industry, much less about the allegations raised by Plaintiffs. *See* Mem. Supp. Mot. to Exclude Anthony Ferrante ("Opening Brief") 6-7, ECF No. 589.

In its opposition brief, Google attempts to remedy this fundamental defect by positing how Mr. Ferrante's opinions might be relevant to the anticompetitive conduct at issue. However, nowhere in Google's discussion of four of the anticompetitive forms of conduct at issue (restriction of Google Ads advertiser demand to AdX, provision of AdX's real-time bids exclusively to DFP, third-party exchange access to AdMeld, and Last Look), Opp. at 12-15, does it cite Mr. Ferrante's opinions. Google's *post hoc* attempts to provide a nexus between Mr. Ferrante's opinions and the alleged anticompetitive conduct are unavailing. *See Sardis v. Overhead Door Corp.*, 10 F. 4th 268, 281 (4th Cir. 2021) ("[I]f an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded.").

### A. Mr. Ferrante's Opinions Are Not Relevant as Procompetitive Justifications for Conduct He Never Addresses in His Report.

Google suggests that "[p]roduct quality through safety and security features is at the forefront of the product design decisions that Plaintiffs challenge" and then lists five separate pieces of conduct to which Mr. Ferrante's opinions purportedly relate. Opp. at 12-15. For four of those forms of conduct (alleged in the Amended Complaint to be anticompetitive), Google's brief is just a supplement to its summary judgment motion, not a case for admitting Mr. Ferrante's opinions, because it fails to cite any connection between those opinions and the conduct at issue. The fifth form of conduct—Google's introduction of Open Bidding, the only conduct that is

5

actually addressed in Mr. Ferrante's report—is not alleged by Plaintiffs to be anticompetitive in the first place.

*First*, Google claims that Mr. Ferrante's cybersecurity opinions relate to Google's decision to restrict Google Ads' advertiser demand exclusively to Google's ad exchange, AdX. *Id.* at 12-13. Google asserts this conduct was necessary to avoid "major security issues" and "security risks," but Google tellingly fails to cite Mr. Ferrante's opinions (or much else, for that matter) to support either of these claims. *Id*. The reason is simple: Mr. Ferrante's opinions do not address Google's restriction of Google Ads' demand, or its use of AWBid, and so his opinions cannot be relevant to justify that conduct.

*Second,* Google suggests that "[p]roviding comparable AdX access to third-party publisher ad servers presents security risks," *id*. at 13, but again Google fails to cite Mr. Ferrante's opinions to support that claim. Nor could it, because Mr. Ferrante never addressed Google's practice of restricting third parties' access to AdX.

*Third*, Google similarly claims that its decision to shut down a real-time bidding feature of AdMeld's ad exchange when Google acquired AdMeld was justified by "important security issues" and "valid business reasons, such as security concerns." *Id*. at 13-14. But, again, Google fails to cite Mr. Ferrante's opinions to support this claim because Mr. Ferrante nowhere addressed Google's acquisition of AdMeld, let alone whatever specific "security concerns" purportedly required Google to remove a popular product feature of AdMeld that posed a threat to Google's publisher ad server monopoly.

*Fourth*, Google claims that giving itself a "last look" on advertising auctions, rather than allowing rival exchanges to bid against Google's ad exchange in real time would have "introduced the concerns described above because header bidding would be bidding alongside

6

AdX bidders." *Id*. at 15. Here, again, Mr. Ferrante's opinions are noticeably absent. Google fails to reference any place in his report or deposition where Mr. Ferrante discusses the topic of "last look," much less where he discusses how "last look" would introduce cybersecurity concerns.

*Fifth,* the only conduct for which Google actually cites Mr. Ferrante's report and deposition is "Google's decision not to participate in header bidding and instead develop a competing product known as Open Bidding." *Id*. at 14. Google claims that Mr. Ferrante's opinions address the entirety of Section IV.D of the Amended Complaint by "help[ing] the fact finder understand the security risks posed by header bidding as well as the security benefits of Google's Open Bidding." *Id*. 16–17. However, Plaintiffs do not allege that Google should have participated in header bidding or that Google should not have developed Open Bidding. Nor do Plaintiffs allege that either decision was inherently anticompetitive. Instead, the Amended Complaint explains that header bidding was the industry's response to Google's anticompetitive practices and then outlines specific conduct Google employed to thwart that response. *See* Am. Compl. § IV.D. Mr. Ferrante's header bidding and Open Bidding opinions thus have no bearing on those allegations. *See In re Broiler Chicken Grower Antitrust Litig.*, 2024 WL 2194349, at *14 (E.D. Okla. May 15, 2024) (excluding an expert's opinion because the opinion related to unchallenged conduct); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (citation omitted)); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 813–14 (E.D. Va. 2011) (expert's opinions concerning patent royalty rates were irrelevant because they were predicated on irrelevant settlement license agreements); *Atl. Coast Pipeline, LLC v. 0.07 Acre, More or Less, in Nelson Cty., Va.*, 396 F. Supp. 3d 628, 640–42 (W.D. Va. 2019) (excluding

7

expert's opinions regarding a pipeline's impact on a property's value because they were not specific to that property).

To demonstrate the procompetitive nature of Google's security practices would at a minimum require Mr. Ferrante to compare Google to its competitors, but he failed to perform any such inquiry. *See, e.g.*, Ex. B, Ferrante Tr. at 121:24-123:3 (did not compare how Google's rate of blocked or restricted ads compared to its ad tech rivals), 125:5-125:19 (did not compare Google's data to other companies), 119:5-121:23 (unable to recall ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), 130:14-133 (could not compare Google's ability to block inappropriate ads to other competitors), 134:1-137:25 (unable to say how Google compares to competitors regarding screening of adult content). As Google concedes in its brief, Mr. Ferrante is "not offering a direct comparison of the security of Google's products with that of others." Opp. at 16-17.

Ultimately, Mr. Ferrante's opinions are wholly unconnected to the alleged anticompetitive conduct except by virtue of *ipse dixit*, not even of Mr. Ferrante, but of Google's counsel. Courts routinely reject such arguments. *See Gramercy Holdings I, LLC v. Matec S.R.L.*, 2023 WL 5917624, at *13 (S.D.N.Y. Sept. 11, 2023) ("[A]s with the *ipse dixit* of the expert, a district court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit*' of counsel'." (citation omitted)); *DeWolff, Boberg & Assocs., Inc. v. Pethick*, 2024 WL 1396267, at *10 (N.D. Tex. Mar. 31, 2024) (rejecting counsel's attempts "to fill the gaps in [the expert's] testimony based on argument unsupported by his report"); *Sardis*, 10 F. 4th at 288 (rejecting

counsel's attempt to connect expert's opinion based on an irrelevant standard to the correct standard).[4]

### B. Plaintiffs Do Not Allege that Ad Tech Stack Integration Is Necessarily Anticompetitive, and Mr. Ferrante Never Opines on the Subject.

Without reference to any opinion expressed by Mr. Ferrante, Google also argues that "[a]d tech providers such as Google who own multiple products in the ad tech stack can deliver more secure and higher-quality services and products" because of the "procompetitive incentives generated by [such] integration." Opp. at 11. This is a red herring. Plaintiffs do not challenge the independent legality of Google's ownership of "multiple products in the ad tech stack" or any changes Google made to its products to compete on the merits. Indeed, Mr. Ferrante does not offer any opinion on the cybersecurity impact of an integrated ad tech stack, so any purported benefits of such integration are no basis to admit his opinions in any event.

Google also cites Mr. Ferrante's testimony to support the strawman that "Plaintiffs' theory as to why certain conduct is anti-competitive rests on Google's decision not to establish innumerable technical connections to countless exchanges and servers." *Id*. at 11-12. As explained in Plaintiffs' Opposition to Google's Motion for Summary Judgment, Plaintiffs' experts cited by Google do not opine that Google's products should have interoperated with their rivals, but rather, noting that the alleged "innumerable technical connections" were often already in place, offered interoperability at most as less-restrictive alternatives to Google's alleged

---

[4] *See also Hoffman v. Ford Motor Co.*, 493 F. App'x 962, 979 (10th Cir. 2012) (rejecting "argument" linking expert's opinions to the allegedly defective product as "the 'ipse dixit' of [plaintiff's] counsel"); *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. June 10, 2011) (rejecting counsel's arguments that "merely substitutes the *ipse dixit* of counsel for the *ipse dixit* of the expert"); *Jones v. Anderson*, 2018 WL 2717221, at *10 (S.D. Ga. June 6, 2018) ("The *ipse dixit* of the lawyer is no better than the *ipse dixit* of the expert in establishing the foundation for admissibility of expert testimony.").

anticompetitive conduct. Pls.' Opp. Def.'s Mot. Summ. J., Resp. to Def.'s "Statement of Undisputed Facts" ¶¶ 42-43, 49, 65, 84. Mr. Ferrante, however, does not connect his generalized opinions to any of those alternatives.

### C. Mr. Ferrante's Vague and Unverified Characterizations of Google as a Leader in Cybersecurity Are Irrelevant.

Opining at a higher level of generality does not alter the relevance of Mr. Ferrante's opinions. Google vaguely invokes the "importance of security, privacy, and fraud issues to this case," and it claims that Mr. Ferrante's opinions "will be helpful to the fact finder's evaluation of the security concerns influencing Google's product design and business decisions."[5] Opp. at 15. But, as explained above, Mr. Ferrante does not offer any opinions about Google's conduct (whether or not characterized as "product design and business decisions") that Plaintiffs allege was unlawful. At bottom, Google is improperly attempting to use Mr. Ferrante's generic cybersecurity opinions as a smokescreen for its argument that, because security concerns sometimes exist in digital advertising, all of Google's conduct harming competition in digital ad tech is justified on the basis of such concerns. For example, Mr. Ferrante's opinions about "organized crime's role in proliferating digital advertising fraud and malvertising," *Id*. at 15, cannot possibly justify a course of conduct that Mr. Ferrante does not connect to such general concerns.

Likewise, Mr. Ferrante's self-serving and unverified description of Google as a "leader" on security issues would not assist the trier of fact because that purported "leadership" is unconnected to (and thus no justification for) the conduct Plaintiffs allege violated the Sherman

---

[5] Google claims Mr. Ferrante's opinions are needed to educate the "jury," Opp. at 15, which is curious given that Google's brief was filed one day after Google filed a motion to strike Plaintiffs' jury demand on grounds of, among other things, mootness. Def.'s Mem. Supp. Mot to Dismiss United States' Damages Claims as Moot and to Strike Jury Demand, ECF No. 630.

Act. For example, Mr. Ferrante cites "ads.txt" as one such instance of Google's leadership. Opp. at 16. Yet ads.txt was not solely attributable to Google; it was an industry-wide effort involving multiple other industry participants. Ex. D, Ferrante Rep. ¶ 50; Ex. E, Expert Report of Dr. Wenke Lee ("W. Lee Rep.") ¶ 84.[6] In any event, Google's purported leadership in adopting that standard cannot justify Google's anticompetitive conduct because it was unconnected to that conduct. "True or not, these opinions have no bearing on the claims and defenses in this case[,]" and the Court should exclude them. *Broiler Chicken*, 2024 WL 2194349, at *14; *see also Orbital Eng'g, Inc. v. Buchko*, 578 F. Supp. 3d 736, 743 (W.D. Pa. 2022) (excluding in part cybersecurity expert's opinions that were not "based on the specific facts of [the] case"); *Fair Fight Action, Inc. v. Raffensperger*, 2020 WL 13561792, at *6 (N.D. Ga. Dec. 8, 2020) (excluding election cybersecurity expert because his opinions related "mostly to a new voting system that [was] not challenged or directly at issue" and failed to "connect how [his opinions] relate[d] to the claims in the lawsuit").

Courts have rejected generalized expert testimony, similar to that of Mr. Ferrante's, when they have "no bearing on the claims and defenses" of a case. *Broiler Chicken*, 2024 WL 2194349, at *14. *In re: Broiler Chicken* is especially instructive. There, the plaintiffs alleged, among other things, that certain poultry companies engaged in a conspiracy to suppress the pay of broiler chicken growers through an information exchange. *Id.* at *1. A defendant retained "an industry expert" to opine, in part, "about efficiencies flowing from exchanges of information." *Id.* at *1, *12. Although the expert opined generally about such efficiencies, he could not

---

[6] As Dr. Wenke Lee noted, "[Ads.txt] files are open for use by *all* parties in the digital advertising ecosystem" but it is just one standard among many "widely used on the Internet including most HTTPS websites [and] Mr. Ferrante has [] failed to take these considerations into account." Ex. E, W. Lee Rep. ¶¶ 84, 69-70.

11

"identify any efficiencies tied to the exchanges" of the pay information at issue. *Id.* at *12. The court held that the industry expert's "opinions about efficiencies resulting from exchanges of information unrelated to Grower pay are irrelevant and inadmissible" because "Plaintiffs do not challenge information sharing broadly." *Id.* at *14. The same is true here. Mr. Ferrante opines generally about security threats that may affect digital advertising and ways to address them, but Plaintiffs do not challenge the conduct Mr. Ferrante endorses.

The cases Google cites show precisely why Mr. Ferrante's opinions should be excluded: in each of those cases, the expert opinions offered were related directly to the claims and defenses alleged. Opp. at 9, 15–16. For example, in *In re Dealer Management Systems Antitrust Litigation*, plaintiff "third-party data integrators" alleged that the defendants were selectively blocking them from accessing car-dealer data. 581 F. Supp. 3d 1029, 1042–43 (N.D. Ill. 2022). The defendant had proffered procompetitive justifications for "securing its [data management systems] against unauthorized access by third-party data integrators that were unrelated to reducing competition." *Id.* at 1068. The defendant's cybersecurity expert's opinions, which supported those procompetitive justifications for the *specific conduct* of blocking data access to the third-party data integrators, were therefore relevant. *Id.* at 1084–85.[7] Google finds no support in such cases because Mr. Ferrante has not attempted to connect his generic cybersecurity

---

[7] *See also United States v. Gasperini*, 2017 WL 3140366, at *1-2 (E.D.N.Y. July 21, 2017) (cybersecurity expert's testimony that was "sometimes tenuous" was nonetheless allowed because it was "limit[ed] to the actual capabilities of the botnet at issue"); *E. Claiborne Robins Co., Inc. v. Teva Pharm. Indus., Ltd.*, 2022 WL 3710758, at *1, 3-4 (E.D. Va. Feb. 23, 2022) (refusing to allow expert's industry-based interpretation of contract provision but allowing the expert to opine on an issue directly related to the claim alleged); *United States v. Tejeda-Ramirez*, 259 F. App'x 535, 537 (4th Cir. 2007) (police officer allowed to provide expert testimony on the "methods and techniques of drug trafficking" in a drug-trafficking case); *Sines v. Kessler*, 2021 WL 1431296, at *1, 5, 7-8 (W.D. Va. Apr. 15, 2021) (expert permitted to testify on "white supremacist groups' strategy of utilizing 'double-speak'" because the testimony would assist the jury in understanding the language used to plan and perpetrate the alleged conspiracy at issue).

opinions to the conduct at issue, though the proffered purpose for his opinions is to justify such conduct.

### D. Mr. Ferrante's Description of Google's "Collaboration with Law Enforcement to Take Down Criminals" Is Irrelevant.

Perhaps the most self-serving and irrelevant of Mr. Ferrante's opinions is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Ex. D, Ferrante Rep. ¶¶ 8, 53-65, ▮▮▮▮▮▮▮▮▮▮▮▮▮. By Mr. Ferrante's own admission, Google's products were equally as vulnerable as those of other industry participants to the malicious conduct from 3ve, and Google was one of many industry participants that cooperated with this investigation. *See* Ex. B, Ferrante Tr. at 259:7-18. In addition to being irrelevant, Mr. Ferrante's opinions on ▮▮▮▮▮▮▮▮▮▮▮▮ as well as all his other irrelevant opinions concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. D, Ferrante Rep. ¶¶ 8, 17–65, should be excluded as improper character evidence. Google seeks to offer Mr. Ferrante's opinions to establish that Google generally has a good character for security and privacy and to suggest that Google was acting in conformity with that good character, and not to harm competition, when it engaged in the conduct Plaintiffs challenge. But that is clearly improper. *See* Fed. R. Evid. 404(a)(1); *id.* advisory committee's note to 2006 amendments ("[I]n a civil case evidence of a person's character is never admissible to prove that the person acted in conformity with the character trait."); *see also Feighan v. Res. Sys. Grp., Inc.*, 2023 WL 4623123, at *9 (D.D.C. July 19, 2023) ("Rule 404 is regularly applied to corporations.") (collecting cases). Accordingly, the Court should exclude Mr. Ferrante's opinions concerning Google's actions unrelated to this case as an improper attempt to circumvent the prohibition in Rule 404(a).

## II. Mr. Ferrante Fails to Reliably Tether His Opinions to His Experience

Mr. Ferrante's opinions are also inadmissible because his generalized "experience in Internet security," Opp. at 18, does not offer a reliable basis for the specific opinions he seeks to offer in this case. It is a foundational premise of *Daubert* and Federal Rule of Evidence 702 that experience alone is insufficient to offer expert opinions unless that experience is tethered in a reliable way to the opinions offered. Experts can only offer opinions into evidence if they are "the product of reliable principles and methods." Fed. R. Evid. 702. Merely having experience is not a principle or method. In order for opinions grounded in an expert's "experience" to be admissible, courts require "an experiential witness to explain [1] how his experience leads to the conclusion reached, [2] why his experience is a sufficient basis for the opinion, and [3] how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (cleaned up). This kind of scrutiny is needed to prevent experiential experts from testifying with no more basis for their opinions than their own *ipse dixit*. *See Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791–92 (7th Cir. 2008) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.") (citation omitted).

Google asserts that "Mr. Ferrante Explained How His Experience in Internet Security Informed His Opinions," but it offers little to support that top-line claim. Opp. at 18. Mr. Ferrante failed to explain how or why his experience reliably supports the four opinions he offers in this case, and Google's brief presents only *post hoc* rationalizations about how—at the highest level of generality—Mr. Ferrante's actual experience might have informed his opinions.[8]

---

[8] Google argues that Mr. Ferrante's opinions should not be excluded solely because he is not an expert in digital advertising, and he could not identify the relevant technologies or industry players. *See* Opp. at 21. It is true that digital advertising expertise *per se* is not required to offer relevant opinions in this case. But an expert relying on experience as the basis for his or her

14

*First*, Mr. Ferrante fails to bridge the gap between the opinions he offers about the current state of the world and the vintage of his limited experience relating to cybersecurity issues in digital advertising. He opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D, Ferrante Rep. ¶ 8 (emphasis added). But his only experience involving digital advertising (and even then, only in a support role) ended in 2011. *See* Ex. B, Ferrante Tr. at 26:1-30:5; Ex. D, Ferrante Rep. ¶ 17. Even assuming that Mr. Ferrante's limited exposure to ad fraud could have reliably informed an opinion relevant to this case, it is well over a decade old, in a dynamic technology industry marked by constant change. It is not a reliable basis for an opinion about how "persistent" and "substantial" ad fraud and organized crime "are now."

*Second*, Mr. Ferrante seeks to opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. D, Ferrante Rep. ¶ 8. Google's brief attempts to backfill linkages between Mr. Ferrante's experience and Google's purported status as an "early industry leader," *see* Opp. at 19, falls short because all of Mr. Ferrante's knowledge in support of this opinion comes from reading public sources—not personal experience. For example, Mr. Ferrante opines Google was an industry leader because of its role in the "takedown" of 3ve, an organized ad-fraud scheme. *Id*. But Mr. Ferrante had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. B, Ferrante Tr. at 33:10-19; 35:11-24; 255:16-19; 262:16-263:3. Mr. Ferrante also points to Google's role in the development of the ads.txt standard, but Mr. Ferrante does not claim any firsthand experience of ads.txt's development or adoption. Finally, Mr. Ferrante

---

opinions would still need to explain how and why his or her experience was reliably applied to the facts. *See Wilson*, 484 F.3d at 274. Mr. Ferrante has failed to do so.

15

identifies Google's development of Open Bidding, but once more he fails to identify any experience with Open Bidding that allows him to conclude that Google "stood out as an early industry leader." Accordingly, his opinions about "industry leadership" are indistinguishable from lawyer arguments in summation; they are not expert opinions admissible under Rule 702.

*Finally*, Mr. Ferrante fails to explain how his experience supports his opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D, Ferrante Rep. ¶ 8. Once more, Mr. Ferrante describes no personal experience with either header bidding or Open Bidding prior to his engagement on this case. *See* Ex. B, Ferrante Tr. at 213:13-14 ("And so it's very easy to – to read about [header bidding] and to understand it as a technology expert."). Google points to his purported familiarity with "clear text communication" being "susceptible to eavesdropping." Opp. at 20 (quoting Ex. B, Ferrante Tr. at 218:16-219:1). Not only does Mr. Ferrante fail to identify what experience informed his view about clear text communication (or why), but he also fails to explain what experience allowed him to reliably go the additional step of opining about header bidding and Open Bidding. *See Wilson*. 484 F.3d at 274. This is a classic example of a party asking the Court to "tak[e] the expert's word for it." *Sardis*, 10 F.4th at 290 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

Google attempts to compensate for Mr. Ferrante's failure to explain how his experience reliably supports his opinions by claiming that *other* experts and industry participants agree or hold similar opinions.[9] *See* Opp. at 20-21, 23-24. But the fact that *other* potential witnesses

---

[9] Google invokes Plaintiffs' expert, Prof. Wenke Lee, s*ee* Opp. at 23, but Prof. Lee did not agree with Mr. Ferrante's opinion that Google "stood out as an early industry leader." To the contrary, Prof. Lee explains that ads.txt is one of only multiple similar industry-wide files, *see* W. Lee Rep. ¶ 69 n.46, and ads.txt and similar files "are open, available, and encouraged to be utilized by independent parties to increase ecosystem cybersecurity." *Id*. ¶¶ 69-70.

16

might agree with Mr. Ferrante on some issues does not demonstrate the reliability of his opinions. The Rule 702 inquiry focuses not on "the ultimate correctness of the expert's conclusions," but rather on "the soundness and care with which the expert arrived at [his] opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). Because Mr. Ferrante has failed to explain how *his* experience has been reliably applied, his opinions should be excluded.

### III. Mr. Ferrante Relied on Undisclosed "Field Testing" to Support His Opinions About Header Bidding and Open Bidding

"Rule 37(c)(1) provides an automatic preclusion sanction" when a party fails to adequately disclose expert opinions or information, so long as the "failure to disclose was not substantially justified" or "harmless." *Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721, 724 (E.D. Va. 2001). Google does not contest that Mr. Ferrante conducted undisclosed field tests in which he "looked at code" and "looked at [] data" from websites to compare the purported security risks of header bidding and Google's Open Bidding service. Ex. B, Ferrante Tr. at 183:17-25; Opp. at 25. Nor does Google argue that his failure to timely disclose those tests or the materials underlying them was substantially justified or harmless. Plaintiffs were prejudiced by Mr. Ferrante's untimely disclosure of these field tests at his deposition, which left Plaintiffs unable to fully examine him or replicate and explore the field tests with their own experts.

Google's only defense is to assert that Mr. Ferrante "did not *rely on* these so-called 'field tests' in forming his opinion" because "[t]he 'field test' simply confirmed what he already knew." Opp. at 25-26 (emphasis added). But Mr. Ferrante never disclaimed reliance on these field tests, and the deposition testimony Google cites does not say otherwise. *See id*. (quoting Ex. B, Ferrante Tr. at 239:13-240:8). On the contrary, Mr. Ferrante testified that his field test contributed to his opinions about "data leakage" in header bidding, contained in Paragraph 75 of his report:

17

> Q. But one of the things that you said supported the claim that you said in paragraph 75 was that you did your own independent field rest, right?
>
> **A. Of course.**

Ex. B, Ferrante Tr. at 189:10-14 (emphasis added). He also used field tests to examine Open Bidding. *See, e.g.*, *id*. at 236:3-5; 238:8-239:1. Mr. Ferrante testified that the field test *results* are incorporated in his report, *id*. at 188:8-13, 190:13-18, but his report discloses no facts about how he conducted those tests.

Mr. Ferrante also testified that his field tests played a significant role in how he formulated his opinions. For example, he explained that he "didn't need to review any statistical data" to support his opinions about "data leakage" in header bidding "[b]ecause I field tested it and saw it." *Id*. at 183:11-14. He also testified that his field tests served to "verify" and "validate" information about header bidding. *Id*. at 188:8-13. Indeed, Mr. Ferrante viewed field testing as so important to verifying his opinions that he suggested he might not even have *signed his report* without having conducted field tests. See *id*. at 189:21-24.

Because Mr. Ferrante relied on field tests in forming his opinions, Google's unexcused and prejudicial failure to timely disclose the field tests triggers Rule 37(c)(1)'s automatic preclusion sanction and bars Mr. Ferrante from testifying at trial about header bidding or Open Bidding. *See Rambus,* 145 F. Supp.2d at 724; *Disney*, 923 F.Supp.2d at 796.

## CONCLUSION

Google fails to establish that Mr. Ferrante's opinions are sufficiently relevant and reliable, and therefore they should be excluded in their entirety. Moreover, Google's unjustified and prejudicial failure to timely disclose purported "field tests" underlying Mr. Ferrante's opinions about header bidding and Open Bidding is an independent reason to exclude those opinions.

Dated: May 31, 2024

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Tyler T. Henry<br>STEVEN G. POPPS<br>Deputy Attorney General<br>TYLER T. HENRY<br>Assistant Attorney General<br><br>Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>/s/ Michael J. Freeman<br>MICHAEL J. FREEMAN<br>/s/ James Ryan<br>JAMES RYAN<br>/s/ Victor K. Liu<br>VICTOR K. LIU<br><br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Michael.Freeman@usdoj.gov<br>Attorneys for the United States | Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia |