# EXHIBIT 160

# In the Matter Of:

*United States vs*

*Google*

## MARK ISRAEL, PH.D.

## March 14, 2024



```
                                                                      1
 1                  UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3   United States of America,  )
     et al.,                    ) Case No.
 4                              )
              Plaintiffs,       ) 1:23-cv-00108-LMB-JFA
 5                              )
     v.                         )
 6                              ) HON. LEONIE H.M. BRINKEMA
     Google, LLC,               )
 7                              )
              Defendant.        )
 8   _____)

 9

10

11                         *  *  *  *  *

12                       HIGHLY CONFIDENTIAL

13                         *  *  *  *  *

14

15      VIDEOTAPED DEPOSITION OF MARK A. ISRAEL, PH.D.

16          Thursday, March 14, 2024; 9:41 a.m. EDT

17

18
     Reported by:  Cindy L. Sebo, RMR, CRR, CLR, RPR, CCR,
19   CSR, RSA, CA CSR 14409, NJ Certified CR 30XI0024460,
     NJ Certified RT 30XR00019500, NM CSR 589, NY Realtime
20   Court Reporter, NY Association Certified Reporter, OR
     CSR 230105, TN CSR 998, TX CSR 12778, WA CSR 23005926,
21   Notary Public

22   Job No. 2024-933018
```

## Page 10

```
                         Page
 1                       --oOo--
 2            INDEX TO EXHIBITS (Continued)
 3                  MARK A. ISRAEL, PH.D.
 4            United States, et al. vs. Google, LLC
 5                    Thursday, March 14, 2024
 6                       --oOo--
 7   ISRAEL
     DEPOSITION
 8   EXHIBIT NUMBER     DESCRIPTION                    PAGE
 9   Exhibit 4     E-mail string, Bates stamped
10                 GOOG-AT-MDL-14368357 through
11                 GOOG-AT-MDL-14368357              309
12
     Exhibit 5     Segmentation of Google's Ads
13
                   Clients, Bates stamped
14
                   GOOG-AT-MDL-00312340 through
15
                   GOOG-AT-MDL-00312344              452
16
17   Exhibit 6     PowerPoint presentation, AdMeld
18                 Publisher Growth, Bates stamped
19                 GOOG-AT-MDL-03607096 through
20                 GOOG-AT-MDL-03607102              471
21
22
```

## Page 11

```
                         Page
 1                       --oOo--
 2                P R O C E E D I N G S
 3                       --oOo--
 4                       --oOo--
 5                    Washington, D.C.
 6         Thursday, March 14, 2024; 9:41 a.m.
 7                       --oOo--
 8
 9         THE VIDEOGRAPHER:  We are now on
10   the record.
11         My name is Jonathan Perry.  I am
12   a videographer retained by Lexitas.
13         This is a video deposition for
14   the U.S. District Court, Eastern District
15   of Virginia, Alexandria Division,
16   1:23-cv-00108-LMB-JFA.
17         The date is March 14th, 2024.
18   The time is approximately 9:41 a.m.
19         We are at the offices of
20   Freshfields Bruckhaus Deringer 700 13th
21   Street, Northwest in Washington, D.C.
22         This is being taken in the matter
```

## Page 12

```
                         Page
 1   of the United States of America, et al.
 2   versus Google LLC.  The name of the
 3   witness is Mark A. Israel, Ph.D.
 4         All counsel will be noted on the
 5   stenographic record.
 6         The court reporter is Cindy Sebo,
 7   also with Lexitas.
 8         And would you please swear in the
 9   witness?
10                       --oOo--
11         MARK A. ISRAEL, PH.D.
12   after having been first duly sworn under
13   penalty of perjury by the certified stenographer
14   to tell the truth, the whole truth, and nothing
15   but the truth, was examined and testified as
16   follows:
17                       --oOo--
18         CERTIFIED STENOGRAPHER:  Thank
19   you very much.
20         And the witness is sworn.
21         ATTORNEY NAKAMURA:  Thank you.
22
```

## Page 13

```
                         Page
 1                       --oOo--
 2         EXAMINATION BY COUNSEL FOR PLAINTIFFS
 3                       --oOo--
 4         BY ATTORNEY NAKAMURA:
 5    Q.   Good morning, Dr. Israel.
 6    A.   Good morning.
 7    Q.   My name is Brent Nakamura, and I'm
 8   a trial attorney at the U.S. Department of
 9   Justice here on behalf of the Plaintiffs.
10         I'm joined by my colleagues at
11   the Division, senior litigation counsel
12   Julia Wood, economist Zachary Mozenter and
13   paralegals Sophia Casten and Colleen Dugan.
14         Dave Barth from Bates White is
15   also present, and we will be later joined by
16   trial attorney Victor Liu.
17         Could you please state your
18   full name for the record?
19    A.   Yes.  It's Mark, M-A-R-K, A.
20   Israel, I-S-R-A-E-L.
21    Q.   And do you understand that you're
22   under oath today and sworn to tell the truth,
```

Page 238

1 its exchange take rate in that scenario?
2      A.   Again, increase at all is not
3 relevant to my opinion.  I mean, it would have
4 been a good thing for him to provide some
5 analysis of, if he wanted to satisfy a SSNIP.  He
6 hasn't done it.
7           I -- my opinion is they would still
8 face substantial competition that would greatly
9 constrain the price.  If Professor Lee wanted to
10 argue that competition would be small enough such
11 that they could impose a SSNIP, he should have
12 shown that, but he didn't.
13      Q.   So you don't know whether, if using
14 Professor Lee's market definition, all exchanges
15 were purchased by Google, all exchange
16 competitors in this competitive set -- you don't
17 know whether or not it would be likely that
18 Google would be able to increase its exchange
19 take rate; is that correct?
20           ATTORNEY EWALT:  Objection to
21      form.
22           THE WITNESS:  My opinion is -- I

Page 239

1      don't -- I don't know whether there would
2      be a zero change in price.  My opinion,
3      as I've tried to be clear, is there would
4      still be substantial competitive
5      pressure.  I think that competitive
6      pressure makes it unlikely there would be
7      a SSNIP.
8           I think, at minimum, somebody
9      would need to show that that's enough to
10     get to a SSNIP, and my number one opinion
11     is that he has not done that.
12           BY ATTORNEY NAKAMURA:
13     Q.   So returning to the example where
14 only Google and Meta were around in the digital
15 advertising market, as you -- as you've
16 conceptually suggested on Page 261, would that
17 duopoly be good for consumers --
18           ATTORNEY EWALT:  Objection to
19     form --
20           BY ATTORNEY NAKAMURA:
21     Q.   -- in your opinion?
22           ATTORNEY EWALT:  -- objection to

Page 240

1     form.
2           THE WITNESS:  Good relative to
3     what?
4           BY ATTORNEY NAKAMURA:
5     Q.   Whatever is in your opinion.
6           Would it be good, as you
7 understand the term "good," for consumers, in
8 your opinion?
9           ATTORNEY EWALT:  Objection to
10    form.
11          THE WITNESS:  I don't know how to
12    answer "good" relative to some
13    alternative.
14          BY ATTORNEY NAKAMURA:
15    Q.   When you were looking to define a
16 market in your expertise, as an economist, what
17 evidence related to con -- to customers do you
18 examine to assist you in properly defining that
19 relevant market?
20          ATTORNEY EWALT:  Objection to
21    form.
22          THE WITNESS:  Above and beyond

Page 241

1    all others, substitution -- in a
2    two-sided market, substitution from
3    customers on both sides of the market.
4          BY ATTORNEY NAKAMURA:
5    Q.   And how do you determine whether,
6 if at all, you should weight substitution for one
7 side of the market more than the other, or how do
8 you think about the two-sidedness when thinking
9 about substitution?
10         ATTORNEY EWALT:  Objection to
11   form.
12         THE WITNESS:  I mean, again, this
13   is an experiment that Professor Lee could
14   have done but didn't.  I mean, what
15   matters is the interplay between the two
16   sides and what -- what new equilibrium
17   price that it leads.
18         Now, it's complicated in a
19   two-sided market because it's not just in
20   a sort of simple -- simpler transactions
21   market where there's, like, a tax
22   imposed.  Professor Lee talks about that.

Page 494

1  academic textbooks, journals, well-accepted
2  concepts in the field.
3         So I just want to make sure
4  that you have the opportunity to tell me if there
5  are any citations you can provide at all
6  regarding the economic understanding of a duty to
7  deal.
8     A.  There's lots of citations in this
9  report in other sections, and there are more
10 beyond that.  This is an introduction that has
11 literally no footnotes because it's introducing
12 the rest of the report.
13        If you want to look in the rest of
14 the report, there's whole sections on the harms
15 that come -- that would come from behavior like
16 this.
17    Q.  And last question:  Can you give me
18 an example, as an economist, of any situation in
19 which a duty to deal would not, in your opinion,
20 be harmful to competition and consumers?
21        ATTORNEY EWALT:  Objection to
22   form.

Page 495

1      THE WITNESS:  I think a duty to
2  deal -- an actual requirement to deal is
3  harmful.  I can't think of an example
4  where the duty is not harmful.
5         There might be situations where
6  firms work together in some way that's
7  beneficial, but I think requiring firms
8  to work with their competitors is harmful
9  to the essence of the competitive
10 process.
11        ATTORNEY NAKAMURA:  All right.
12 See, we're at time.
13        Thank you very much, Dr. Israel.
14        And we'll go off the record.
15        ATTORNEY EWALT:  Not quite.  I
16 want to designate the transcript as
17 highly confidential under the protective
18 order in this case.
19        Now we can go off the record.
20        ATTORNEY NAKAMURA:  Thank you.
21        THE VIDEOGRAPHER:  Off the record
22 at 6:36.  And this ends today's

Page 496

1  deposition.
2
3         (Witness excused.)
4
5         (Deposition concluded at 6:36 p.m.
6  EDT)

Page 497

C E R T I F I C A T E

1    I, Cindy L. Sebo, Nationally Certified Court
2  Reporter herein, do hereby certify that the foregoing
3  deposition of MARK A. ISRAEL, PH.D. was taken before
4  me pursuant to notice at the time and place indicated;
5  that said witness duly swore to tell the truth, the
6  whole truth, and nothing but the truth under penalties
7  of perjury; that said testimony of witness was
8  correctly recorded to the best of my abilities in
9  machine shorthand, thereafter transcribed under my
10 supervision with computer-aided transcription; that
11 deposition is a true and accurate record of the
12 testimony given by the witness; that I am neither
13 counsel, nor kin to any party in said action, nor
14 interested in the outcome; and that a copy of this
15 transcript obtained from a source other than the court
16 reporting firm, including an adversary or co-counsel
17 in the matter, is uncertified and may not be used at
18 trial.
19 _____
   CINDY L. SEBO, RMR, CRR, CLR, RPR, CCR, CSR,
20 RSA, CA CSR 14409, NJ Certified CR 30XI0024460,
   NJ Certified RT 30XR00019500, NM CSR 589, NY
21 Realtime Court Reporter, NY Association Certified
   Reporter, OR CSR 230105, TN CSR 998, TX CSR 12778,
22 WA CSR 23005926, Notary Public