# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

UNITED STATES, *et al.*,

          *Plaintiffs*,

   v.

GOOGLE LLC,

          *Defendant*.

No. 1:23-cv-00108-LMB-JFA

## GOOGLE LLC'S REPLY IN SUPPORT OF ITS
## MOTION TO EXCLUDE THE TESTIMONY OF ADORIA LIM

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

    I.    Plaintiff's Opposition Confirms That Lim's FAA Damages Opinions Should Be Excluded. ...................................................................................................... 4

        A.    There Is No Basis Whatsoever for Lim's Damages Calculations to Be Based On a 5 Percent (or 1 Percent) But-For Revenue Share. .................. 5

        B.    The Opposition Confirms There Is No Evidence Supporting A 10 Percent "But-For" Revenue Share. ........................................................... 7

        C.    By Lim's Own Admission, Her CMS and NHTSA Damages Opinions Are Unreliable and Must Be Excluded. .................................................... 10

    II.    Lim's Damages Opinions Must Be Excluded If the Court Grants Summary Judgment or Google's *Daubert* Motion as to Simcoe. ......................................... 13

    III.    Lim's Non-Party Overcharge Opinions Are Irrelevant, Unreliable, and Unhelpful to the Trier of Fact; Admitting Them at Trial Risks Unduly Prejudicing Google. .............................................................................................. 14

    IV.    Plaintiff's Opposition Confirms That Lim's Profitability Opinions Should Be Excluded as Irrelevant and Unreliable. ................................................................. 17

        A.    Plaintiff Concedes Lim's Profitability Analysis Is Irrelevant.................. 17

        B.    Lim's Opinion That Google "Could" Treat Itself as an Agent Is Unreliable................................................................................................... 18

CONCLUSION.................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AB Staffing Sols., LLC* v. *Asefi Capital, Inc.*,
   2022 WL 16555707 (E.D. Va. Oct. 31, 2022) ........................................................................15

*Brittney Gobble Photography, LLC* v. *Sinclair Broadcast Grp.*, *Inc.*,
   2021 WL 5359671 (D. Md. Nov. 17, 2021) ..............................................................................7

*Burlington Indus.* v. *Milliken & Co.*,
   690 F.2d 380 (4th Cir. 1982) ...................................................................................................12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2017 WL 10434367 (N.D. Cal. Jan. 23, 2017) ........................................................................14

*Children's Broad. Corp.* v. *The Walt Disney Co.*,
   245 F.3d 1008 (8th Cir. 2011) .................................................................................................15

*Crockett* v. *Blackwood*,
   2020 WL 1144710 (M.D. N.C. Mar. 9, 2020) ..........................................................................15

*Daubert* v. *Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .................................................................................................................15

*Eastern Auto Distribs., Inc.* v. *Peugeot Motors of Am., Inc.*,
   795 F.2d 329 (4th Cir.1986) ......................................................................................................5

*Garlinger* v. *Hardee's Food Sys., Inc.*,
   16 F. App'x 232 (4th Cir. 2001) .........................................................................................15, 16

*Geneva Pharms. Tech. Corp.* v. *Barr Labs. Inc.*,
   386 F.3d 485 (2d Cir. 2004) ....................................................................................................17

*Illinois Brick* v. *Illinois*,
   431 U.S. 720 (1977) ..............................................................................................................3, 12

*Kumho Tire Co., Ltd.* v. *Carmichael*,
   526 U.S. 137 (1999) .................................................................................................................19

*Lake* v. *Adams*,
   2020 WL 1016352 (W.D. Va. Mar. 2, 2020) ..........................................................................17

*Micro Chemical, Inc.* v. *Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003) ...............................................................................................10

*United States* v. *Microsoft*,
    253 F.3d 34 (D.C. Cir. 2001) ......................................................................17

*Moore* v. *Equitrans, L.P.*,
    27 F.4th 211 (4th Cir. 2022) ......................................................................14

*Nease* v. *Ford Motor Co.*,
    848 F.3d 219 (4th Cir. 2017) ........................................................................2

*Newman* v. *Hy-Way Heat Sys., Inc.*,
    789 F.2d 269 (4th Cir. 1986) ........................................................................5

*Pipitone* v. *Viomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ......................................................................10

*Sardis* v. *Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) ......................................................................14

*T.H.E. Ins. Co.* v. *Davis*,
    54 F.4th 805 (4th Cir. 2022) ..................................................................4, 11

*Trigon Ins. Co.* v. *United States*,
    204 F.R.D. 277 (E.D. Va. 2001) ..................................................................7

*Tyger Const. Co.* v. *Pensacola Const. Co.*,
    29 F.3d 137 (4th Cir. 1994) ....................................................................2, 13

*Uniloc USA, Inc.* v. *Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..................................................................15

*Va. Vermiculite, Ltd.* v. *W.R. Grace & Co. Conn.*,
    108 F. Supp. 2d 549 (W.D. Va. 2000) .........................................................9

*In re Western Liquid Asphalt Cases*,
    487 F.2d 191 (9th Cir. 1973) ......................................................................12

*United States* v. *Wilson*,
    484 F.3d 267 (4th Cir. 2007) ......................................................................20

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    2022 WL 3337796 (E.D. Va. Aug. 3, 2022) ..............................................10

**Rules**

Federal Rule of Evidence 702.....................................................2, 7, 14, 17

Federal Rule of Civil Procedure 26 ...........................................................1, 2, 6

**Other Authorities**

Barry Kanczuker, *Remarks before the 2017 AICPA Conference* (Dec. 4, 2017) ..........................19

Wesley R. Bricker, *Remarks before the Annual Life Sciences Accounting &*
    *Reporting Congress: "Advancing Effective Internal Control and Credible*
    *Financial Reporting"* (March 21, 2017) ................................................................................19

# INTRODUCTION[1]

Plaintiff's[2] damages expert, Adoria Lim, should be excluded under *Daubert* because her opinion is unreliable and would be unhelpful to the trier of fact.  Google has now also mooted Plaintiff's damages claim by tendering a check for the maximum amount of damages, trebled and with prejudgment interest, which further warrants exclusion under *Daubert*.

It is an undisputed fact that Google has tendered a check for the maximum damages amount claimed by Plaintiff.  ECF 630 at 2; Mem. of Law ISO Mot. For S.J. at 16 (SUF 85); S.J. Opp. at 2.  Having already conceded this, Plaintiff now seeks to make up a new damages figure, ████████, ECF No. 690 at 4, introduced for the first time in its opposition to Google's mootness motion.  This figure is unsupported by any record facts or expert testimony, is found nowhere in Lim's report, and importantly, was never disclosed as Rule 26 requires.  This Court should reject Plaintiff's last gasp to salvage the part of its case that Judge Anderson said was "in jeopardy" nine months ago.  9/15/23 Hearing Tr. at 23:25-25:8.  At that hearing, Judge Anderson instructed the government, "you need to tell the defendant in this case how much money the government is seeking in this case and what—how you compute those damages." *Id.* at 12:15-24.  Plaintiff has failed to meet that obligation through Lim (or otherwise).  At this stage, it is clear that Plaintiff

---

[1] All references to Ex. 1 through 161 refer to the Declaration of Bryon Becker in Support of Google LLC's Motion for Summary Judgment and Motions to Exclude, ECF No. 581, Declaration of Bryon Becker in Support of Google LLC's Oppositions to Plaintiffs' Motions to Exclude, ECF No. 646, and Declaration of Bryon Becker in Support of Google LLC's Replies in Support of Google LLC's Motion for Summary Judgment and Motions to Exclude.  With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

[2] The opposition brief to which this brief replies was signed by Plaintiff United States as well as Plaintiff States.  But Plaintiff States did not retain Lim, Ex. 62, App. E ¶¶ 15, 18, and she is not providing expert testimony or services on the States' behalf.  That makes good sense, as no State seeks damages.

contrived a damages case at the last minute, struggled for months to support it, and now, after expansive fact and expert discovery and the very likely prospect of Plaintiff's claims becoming moot, Plaintiff has grown so desperate as to put before the Court a new figure without any proper, disclosed support.

To the extent the Court does not find Plaintiff's damages claim moot, it should not accept Plaintiff's defense of Lim's infirm opinions, which are based solely on attorney say-so, speculation about random emails that do not say what Plaintiff claims, and non-credible argument. To permit such efforts would violate *Daubert* and Federal Rule of Evidence 702, under which courts must "protect juries from being swayed by dubious" expert testimony—exactly what Lim offers. *Nease* v. *Ford Motor Co*., 848 F.3d 219, 231 (4th Cir. 2017). This mandate is all the more important with respect to damages estimates—"an area where a jury's common sense is less available than usual to protect it." *Tyger Const. Co.* v. *Pensacola Const. Co.*, 29 F.3d 137, 145 (4th Cir. 1994).

*First*, Plaintiff has no proper factual or expert support for an AdX 10 percent but-for revenue share, which is one but-for revenue share Lim uses to calculate damages. Nor can Plaintiff offer any factual support for a 5 percent but-for revenue share, as it claimed for the first time in last night's filing. ECF No. 690 at 4. That revenue share was never part of Plaintiff's disclosures required under Rule 26, nor ever provided in response to discovery for which Google was forced to fight tooth and nail over vociferous Plaintiff objection and resistance. No expert offers an opinion that a 10 (or 5) percent revenue share would exist in the but-for world. Lim does not know the factual basis for a 10 percent but-for revenue share; <u>she applied that figure at the instruction of the United States</u>. Yet unbelievably, Plaintiff makes the unsubstantiated assertion that it could present evidence of damages premised on these but-for revenue shares as well as but-for revenue shares as low as 5, 2, or even <u>1 percent</u>. No expert analysis supports doing so, and such efforts

should be dismissed out of hand.

Plaintiff argues that two Google emails support a 10 percent but-for revenue share (and throws in a third email in their brief opposing Google's mootness motion to contend these documents collectively support an even lower percent option) and show that figure is "plausible." Opp. at 2.  But none of these emails purports to predict what Google would charge absent certain alleged anticompetitive conduct, which Plaintiff acknowledges—as it must—is the appropriate standard for determining a but-for price.  Lim cannot testify to alleged damages based on a 10 percent but-for revenue share, or any other hypothetical but-for revenue share Plaintiff has pulled out of thin air.

*Second*, none of Plaintiff's arguments in opposition can overcome Lim's own admission that there are insufficient documents or data in the record to support damages for two Federal Agency Advertisers ("FAAs"), the Centers for Medicare & Medicaid Services ("CMS") and National Highway Traffic Safety Administration ("NHTSA").   Again, at this late stage, Plaintiff still has no evidentiary support for its claim that both CMS and NHTSA suffered damages by paying an overcharge to Google, and Lim's testimony regarding the same is speculation.

*Third*, Plaintiff does not—because it cannot—assert real opposition to Google's argument that Lim's damages opinion must be excluded if the Court grants summary judgment to Google regarding its arguments under *Illinois Brick* v. *Illinois*, 431 U.S. 720 (1977).  The FAAs are indirect purchasers barred from seeking to recover alleged damages under federal antitrust laws, and Lim's FAA damages opinion is contrary to controlling law and legally irrelevant.  The same principle would apply if the Court rightly concludes that Plaintiff's damages claim is moot.  Similarly, if the Court grants Google's *Daubert* motion to exclude Simcoe's opinions, then Lim's damages opinions premised upon the same must also be excluded.

3

*Fourth*, Lim's non-party overcharge opinions are irrelevant and unhelpful to the trier of fact in assessing the FAAs' asserted damages. Just last night, Plaintiff reiterated its damages claim is "confined" to the eight FAAs. Alleged overcharges for advertisers and publishers who are not parties and for whom Plaintiff is not and cannot pursue a damages claim stray far beyond the facts and legal claims at issue, and serve no helpful purpose for the trier of fact in assessing Plaintiff's alleged damages. Lim's opinions are also unreliable. Lim bases these calculations on Simcoe's flawed methodology that treats FAAs as the average worldwide advertiser. FAAs are not representative of the world—nor has Lim done any analysis to show worldwide overcharges could be extrapolated from alleged FAA overcharges. None of Plaintiff's experts relies on these opinions to support their own analyses and Plaintiff offers no justification for its desire to present these sums to a jury. Again, Plaintiff appears to be attempting to confuse and overwhelm the jury with irrelevant and large sums to distract from the much smaller damages it actually seeks on behalf of the FAAs. Permitting this testimony at trial before a jury risks irreparably prejudicing Google and tainting the jury's damages award by giving the jury an unrealistic idea of the appropriate measure of damages.

*Last*, Plaintiff grasps at straws in urging the admission of Lim's profitability opinions despite its experts' unequivocal testimony that those opinions are irrelevant to any issue in the case. They are also unreliable because they have no precedent in real-world accounting practices.

## ARGUMENT

### I.      Plaintiff's Opposition Confirms That Lim's FAA Damages Opinions Should Be Excluded.

Plaintiff does not—because it cannot—dispute that experts may not testify to opinions unsupported by the evidence in the case. *E.g.*, *T.H.E. Ins. Co.* v. *Davis*, 54 F.4th 805, 822-23 (4th Cir. 2022); *Newman* v. *Hy-Way Heat Sys., Inc.*, 789 F.2d 269, 270 (4th Cir. 1986); *Eastern Auto*

*Distribs., Inc.* v. *Peugeot Motors of Am.*, *Inc.*, 795 F.2d 329, 337 (4th Cir.1986); Br. at 17-18. Plaintiff also does not dispute that Lim calculates damages using a 10 percent but-for revenue share <u>only because Plaintiff told her to,</u> and expressly states she was instructed by Plaintiff to calculate damages based only on hypothetical but-for AdX revenue shares of 10, 16.2, and 16.6 percent, and no others.  Ex. 62, App. E ¶¶ 60, 68, Fig. 19.[3]  Notwithstanding these undisputed principles, Plaintiff still attempts to put this unsupported but-for revenue share before the jury, because only with a 10 percent but-for revenue share can DOJ put forward a bloated damages figure of █████, rather than ██████ or ██████—damages amounts that are computed using but-for revenue shares actually endorsed by expert analysis (albeit unreliable analysis).  Ex. 62, App. E Fig. 19.  Lim's damage calculations based on a hypothetical 10 percent (or 5 percent, or 1 percent) but-for revenue share must be excluded.

### A.    There Is No Basis Whatsoever for Lim's Damages Calculations to Be Based On a 5 Percent (or 1 Percent) But-For Revenue Share.

Google must address at the outset Plaintiff's desperate effort to save its damages claim from being moot because it is an additional ground for excluding Lim's opinions under *Daubert*. Plaintiff suddenly argues that Google's tender of the full amount of damages Plaintiff seeks (trebled with prejudgment interest) does not moot its damages claim  because the jury could award damages based on a 5 percent (or even 1 percent) but-for revenue share.  ECF 690 at 7-11; Opp. at 11.  This tactic is nothing short of flabbergasting.

First, Plaintiff never disclosed a computation of damages based on a 5 (or 1 or 2) percent but-for revenue share as Rule 26 requires.  Google had to fight tooth and nail for proper Rule 26 disclosures and discovery regarding damages, which Plaintiff obstructed at every turn.  When the

---

[3] In her rebuttal report, Lim adopts Respess's initial report and includes it as Appendix E, corrected for errata, Ex. 62, ¶ 5; Google cites to Appendix E in this brief.

parties brought their dispute before Judge Anderson, he told Plaintiff that its damages claim was "in jeopardy," and instructed Plaintiff, "you need to tell the defendant in this case how much money the government is seeking in this case and what—how you compute those damages." 9/15/23 Hearing Tr. at 12:15-24; 23:25-25:8. Plaintiff told the Court that its expert would provide the required computation of damages, saying "complex expert calculations" were needed "in order to come up with a total." *Id*. at 21:4-7; 16:12-13. After that hearing, Plaintiff served written discovery responses regarding damages; those responses did not disclose any but-for revenue share underlying damages calculations of any percentage, and certainly not 1 or 5 percent, or even 10, 16.2 or 16.6 percent. Plaintiff instead put forward Lim to satisfy its obligation.

Second, Plaintiff <u>has agreed</u> that it seeks damages of "less than a million dollars—by their calculations as little as ████████ or ***at most*** ████████ (before trebling and pre-judgment interest)— on behalf of eight federal advertising agencies," in filings before this Court a mere two weeks ago. Mem. of Law ISO Mot. For S.J. at 16 (SUF 85) (emphasis added); S.J. Opp. at 2 ("Plaintiffs do not dispute" SUF 85). It is not surprising that Plaintiffs agreed this was undisputed because these are the very amounts Lim calculated based on 10, 16.2 or 16.6 percent but-for revenue shares, and no others. That alone is dispositive. What's more, Plaintiff puts forward <u>no evidence</u> to support bigger damages amounts in opposing summary judgment.

Third, nothing in Lim's report supports a but-for revenue share of 5, 2 or 1 percent. Plaintiff cites to Lim's Figure 38, which purports to be a "████████████" that is buried deep in an appendix, showing different calculations using different but-for revenue shares as well as different apportionment figures (i.e, the share of an alleged AdX overcharge born by the advertiser). Ex. 62, App. E fig. 38. Figure 38 is for alleged AdX overcharges only; it does not include platform fee overcharges, which are otherwise part of Lim's damages calculations. The

footnote in Lim's report that has a passing mention of Figure 38, says only that Figure 38 is "█████████████████████████████████████████████████████████." But Simcoe Figure 22 reveals there are no alleged but-for take rates lower than 15.6 percent, and certainly not 1, 2, 3, 4 or 5 percent and so on, as Figure 38 includes. Ex. 5, Simcoe Fig. 22. Figure 38 is not based on any facts or data; it is not a basis for calculating damages; it is not a basis for the jury to award damages; and it is not a basis from which to determine the amount Google had to pay to moot Plaintiff's claim.

Last, and as explained below, all of the reasons that a 10 percent but-for revenue share must be excluded apply equally to a but-for revenue share of 5, 2, or 1 percent.

## B.   The Opposition Confirms There Is No Evidence Supporting A 10 Percent "But-For" Revenue Share.

There is no expert analysis supporting a 10 percent but-for revenue share. Lim did not do the required analysis. Nor did Simcoe; he completely disavowed it as an opinion of what the but-for world would look like. Ex. 91 at 179:4-12 (testifying a 10 percent but-for revenue share is not a "basis for any conclusion about the take rates in the but-for world"); *see also* Simcoe Reply Br. at 2-4. The complete lack of expert support for this figure alone requires exclusion. *See Brittney Gobble Photography, LLC* v. *Sinclair Broadcast Grp., Inc.*, 2021 WL 5359671, at *7 (D. Md. Nov. 17, 2021) (damages expert must "verify the assumptions" given to her by counsel when they have a "monumental impact" on a damages calculation); *Trigon Ins. Co.* v. *United States*, 204 F.R.D. 277, 294 (E.D. Va. 2001) ("if opinions expressed in an expert report are not the opinions of the expert, the expert will not be able to satisfy the requirements of Fed. R. Evid. 702 and *Daubert* that the report be based on the expert's own valid reasoning and methodology").

Nevertheless, Plaintiff contends that Lim can calculate damages for the jury based on a 10

percent but-for revenue share because there are a mere two emails (from 2017 and 2018)[4]—among hundreds of thousands that Google produced—which, according to Plaintiff, show "that in a more competitive ad tech market, a lower take rate is plausible." Opp. at 2. Plaintiff could not be more wrong—wrong that these documents could support what needs to be an expert analysis predicting a but-for world, and wrong because these documents do not even say what Plaintiff claims.

Plaintiff concedes that to calculate an antitrust "overcharge in this case, it is necessary to determine what fee AdX would have charged in a counterfactual 'but-for' world in which Google's allegedly anticompetitive conduct had not occurred." Simcoe Opp. at 4; *see also* ECF 688 at 10 (in opposing Google's jury motion to dismiss damages claim, acknowledging same). Plaintiff also concedes that "to construct the but-for world," it must "evaluate how competition would have presented itself" absent the alleged anticompetitive conduct, "which in turn requires analysis of the firms, technologies, products, relevant markets, and alleged conduct at issue in this case." Simcoe Opp. at 4; *see also* Phillip E. Areeda & Herbert Hovenkamp*, Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 340b (5th ed. 2023) ("to find the damages attributable to an antitrust violation, we must compare the plaintiff's actual situation with the hypothetical situation that would have existed in the absence of the violation," and noting that "estimating this hypothetical situation is <u>exceedingly difficult</u>"). This is <u>not</u> the work done by the authors of the two cherry-picked emails. *Cf.* Areeda & Hovenkamp, *supra*, ¶ 340a2 (explaining that estimating a but-for price "nearly always requires the use of an expert economist or

---

[4] Opp. Exs. J, K. In opposing Google's mooting motion, Plaintiff cites a third email from 2017, ECF No. 673-18, purportedly supporting a 5 percent but-for revenue share. While it does not point to this email in opposing this motion, this email, like the other two, is not estimating a hypothetical AdX revenue share in a but-for world and does not reflect any opinion that a 5 percent AdX revenue share is feasible in a "more competitive" market despite Plaintiff's say-so. No deponent testified about this document, and Lim did not cite it in her report.

statistician").  Simcoe considered and quoted both of these emails in his report, Ex. 5, ¶ 147 n.202, only to expressly disclaim offering an opinion that "the but-for take rate is 10 percent,"  Ex. 91 at 180:5-12.  In other words, these emails were not sufficient facts or data upon which the expert whose task it was to estimate a but-for revenue share could rely.  Ex. 5, ¶ 6.

Lim likewise did not rely on (or even cite to) these emails to support application of a 10 percent but-for revenue share, and they do not appear in her "materials relied on" sections of her reports.  Rather, Lim testified that <u>she did not know</u> what facts or data the United States would rely on to support its baseless 10 percent figure.  Ex. 68 at 231:3-232:11 (conceding she is not "personally aware of any facts that would support application" of a 10 percent but-for revenue share and has not "performed an independent analysis of that 10 percent" but-for revenue share, either).

Next, the emails do not show that a 10 percent but-for revenue share is remotely "plausible."  Opp. at 2.  "Plausibility" is not the standard at trial for proving damages, *see Va. Vermiculite, Ltd.* v. *W.R. Grace & Co. Conn.*, 108 F. Supp. 2d 549, 596-97 (W.D. Va. 2000).  Nothing in these emails actually shows Google employees considering a world in which certain alleged anticompetitive conduct is absent, as is required to predict a but-for world.  Google employees were asked about the emails, and none of them testified they were estimating a world absent certain anticompetitive conduct.  All that the emails show, and deposition testimony confirms, is brainstorming and discussion about hypothetical changes to Google's AdX revenue share and any possible impact of such theoretical changes.  *See* Ex. 147 at 404:22-406:14 (discussing emails in Opp. Ex. J, explaining pricing is a "nuanced topic" and that he disagreed with the proposal to lower AdX revenue to 5% because AdX need not be "the cheapest product in the market"); Opp. Ex. J at -259 (Google employee stating belief that competitors could not "█

██████████████████████");[5] Ex. 148 at 251:12-19 (Google employee explaining

her lowered revenue email was simply a "stab" at a new idea); Opp. Ex. K at -896 (same Google

employee agreeing data was "███████████████████" pricing ideas).[6]  *Cf.* Areeda &

Hovenkamp, *supra*, ¶ 392a ("the damage estimate" cannot "be a stab in the dark").

Finally, Plaintiff's cited authority is inapposite.  This is not a circumstance in which, as in

the cases Plaintiff cites, the parties are quibbling over the appropriate weight to accord to disputed

evidence underlying expert analysis.  *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 3337796,

at *6-7, 12-13 (E.D. Va. Aug. 3, 2022) (*Daubert* challenge related to "disputed facts and experts'

reliance on Plaintiff's expected evidence at trial"); *Micro Chemical, Inc.* v. *Lextron, Inc*., 317 F.3d

1387, 1392 (Fed. Cir. 2003) (in a patent litigation, dispute about "many of the facts relevant in

determining a reasonable royalty"); *Pipitone* v. *Viomatrix, Inc*., 288 F.3d 239, 249 (5th Cir. 2002)

(expert's opinion hinged on factual dispute of whether a syringe was contaminated or not).  Unlike

those cases, here, Plaintiff has no evidence whatsoever supporting a 10 percent but-for revenue

share that could remotely support a corresponding damages calculation.

### C.   By Lim's Own Admission, Her CMS and NHTSA Damages Opinions Are Unreliable and Must Be Excluded.

Plaintiff advances several haphazard arguments, contending that: (1) Google's efforts to

exclude CMS and NHTSA damages is more appropriate for summary judgment; (2) "there is no

question about the sufficiency of the evidence of CMS and NHTSA's purchases and payments";

(3) proof of payment is not necessary to recover under the antitrust laws; and (4) Lim's damages

---

[5] Other participants in this email conversation disagreed with altering prices.  Opp. Ex. J at -259, - 262.

[6] Another participant in this email conversation questioned how Google could be competitive with such a low proposed revenue share, which is the comment triggering the response that data was needed.  Opp. Ex. K at -896.

opinion as to CMS and NHTSA cannot be excluded because "Lim's assignment was not to verify payments." Opp. at 9-11. Each argument fails.

As to the first and second points, Google seeks exclusion of Lim's CMS and NHTSA damages opinions because the methodology underlying them is unreliable, a quintessential *Daubert*, not summary judgment, argument. Lim included CMS and NHTSA damages again ██████████████████████████████ Ex. 62, App. E ¶ 56. She did so even though she admits "there was insufficient data/documents in the record" to verify that either CMS or NHTSA actually paid the amounts Google charged for the "open-web display" transactions underlying these damages. Ex. 68 at 233:1-16; 242:8-244:11. An expert methodology that is based solely on instruction from the client, and has "insufficient data/documents in the record" to support it, is not reliable and must be excluded under *Daubert*. *See Davis*, 54 F.4th at 822-23. It is Plaintiff's expert, not Google, who submits that her damages opinion is reliable only where it is possible to "verify that CMS and NHTSA paid Google for digital ads." *Compare* Opp. at 9 (attributing "this argument" to Google), *with* Ex. 68 at 137:9-14; 243:10-19 (Lim agreeing she excluded "unknown ad agency purchase pathways" because she "could not confirm that the FAA paid amounts that Google charged for ad tech services" and testifying that through her "walk-through" "process," she "confirmed that the FAAs paid for amounts invoiced by Google").

Plaintiff cites two FAA-produced documents claiming they show records of payment. Opp. at 10 n.7. It is impossible to discern from the face of these documents (there is no witness testimony about them) that they show payment for CMS or NHTSA's purchases of "open-web display advertising" made through AdX and included in Lim's damages calculations.[7] Lim did

---

[7] ████████████████████████████████████████████████
██████████████████████████████████████████████████████

not consider nor rely upon those documents; they are nowhere in her documents relied on list.  Lim reviewed "hundreds, maybe thousands of invoices" and documents, and agreed that her report nowhere identifies "payment data which shows CMS or NHTSA paid for the transactions included within the CMS and NHTSA purchase pathways."  Ex. 68 at 237:4-20, 238:11-18.

As to the third point, Plaintiff's contention that "proof of payment" is not required to recover ignores the realities of the "complex" purchasing chain underlying Plaintiff's claim for damages, and Lim's own acknowledgement of the importance of confirming FAA payment where invoices from ad agencies alone do not provide sufficient proof.  Ex. 68 at 20:16-21:3, 90:19-91:11, 237:4-20.  As Google has already pointed out, the record reflects there are no invoices between the FAAs and Google, and Lim is reviewing invoices between ad agencies and Google, and ad agencies and the FAAs.  The record for the invoices show instances in which the FAAs dispute ad agency invoices, and instances of ad agencies providing discounts to the FAAs on vendor charges.  Br. at 15 (citing Ex. 79 at 83:16-88:1; Ex. 99 at -979; Ex. 65 at 78:9-79:4).  Plaintiff does not respond to this factual point.

Plaintiff's cases are inapposite.  *In re Western Liquid Asphalt Cases*, 487 F.2d 191, 200-201 (9th Cir. 1973), which permitted a pass-on theory of damages under federal antitrust law, has been expressly abrogated by *Illinois Brick*.  431 U.S. at 728 & n.8.  *Burlington Indus.* v. *Milliken & Co.*, 690 F.2d 380, 385 (4th Cir. 1982), supports Google.  That case describes antitrust overcharge as "the difference between the prices <u>actually paid</u> and the prices that would have been paid absent" the alleged anticompetitive conduct.  *Id.*  Plaintiff acknowledges this is the law when

it defines an "overcharge" in the "context of an antitrust claim" as "the difference between what a customer actually paid and what a customer would have paid in a market untainted by the monopolist's anticompetitive conduct."  Simcoe Opp. at 4.  So does Lim.  Ex. 68 at 174:6-11.

Fourth, it does not matter that Lim's assignment "was not to verify payments."  Opp. at 10.  Plaintiff has provided no witness testimony other than from Lim to show payments by CMS and NHTSA.  The fact is, Lim did undertake the task to confirm that each FAA "paid for those transactions" for which they are seeking damages, Ex. 62, App. E ¶ 56; Ex. 68 at 243:10-19, recognizing it was a necessary step to show that her opinion was reliable and supported.  Plaintiff mischaracterizes Lim's own explanation of this exercise.  Lim did not perform these walk-throughs simply as an "extra spot-check" to confirm "the mechanics of how the FAAs paid for their purchases."  Opp. at 10-11.  Rather, she did the walk-throughs to confirm "that the FAAs paid" for the transactions for which they claim damages.  Ex. 62, App. E ¶ 56 n.36 (explaining the walk-throughs "link a Google invoice to the FAA's payment"); Ex. 68 at 243:10-19.  Lim's inability to confirm any payments for CMS and NHTSA because of "insufficient data/documents in the record," Ex. 68 at 233:1-16; 242:8-244:11, 248:12-249:1, renders her opinions regarding these agencies' damages unreliable; they must be excluded.  *Tyger Const.*, 29 F.3d at 143.

## II.     Lim's Damages Opinions Must Be Excluded If the Court Grants Summary Judgment or Google's *Daubert* Motion as to Simcoe.

*FAAs' Indirect Purchaser Status*: The FAAs are not direct purchasers under *Illinois Brick*, and they do not satisfy any exception to the rule that only those who purchase directly from an alleged violator of the Sherman Act may recover overcharge damages.  *See* Mem. of Law ISO Mot. for S.J. at 32-35; S.J. Reply at 22-25.  Because the FAAs are barred from recovering damages, Lim's FAA damages opinion is contrary to controlling law, legally irrelevant, and must be excluded.  *See, e.g.*, *Moore* v. *Equitrans, L.P.*, 27 F.4th 211, 223 (4th Cir. 2022); *Sardis* v.

*Overhead Door Corp.*, 10 F.4th 268, 294-95 (4th Cir. 2021). Plaintiff dismisses this argument as better suited for summary judgment. Opp. at 8-9. Plaintiff ignores well-settled and binding authority in which irrelevant expert damages testimony premised upon legally invalid theories is excluded under *Daubert* and Rule 702. Br. at 12-14 (citing cases). Separately, Google's jury motion to dismiss Plaintiff's damages claim also requires that Lim's opinions be excluded should the Court grant that motion. *See* ECF No. 628.

**Simcoe's Opinions**: Plaintiff does not dispute that Lim's damages opinions rely on Simcoe's AdX but-for revenue share estimates of 16.2 and 16.6 percent, as well his apportionment estimate of ▮▮▮▮▮, and that Lim did not independently asses these figures before using them as inputs in her own calculations. Ex. 62 App. E ¶¶ 17, 60-61; Ex. 68 at 46:5-48:1. Plaintiff also does not dispute that an expert whose proffered testimony relies on another expert's excluded theories should also be excluded. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017). If the Court grants Google's motion to exclude Simcoe's opinions or any aspect thereof that renders inadmissible the 16.2 and 16.6 but-for revenue share estimates or 19.3 apportionment estimates that Lim incorporates as inputs into her own calculations, then Lim's damages opinions premised upon the same must also be excluded.

### III. Lim's Non-Party Overcharge Opinions Are Irrelevant, Unreliable, and Unhelpful to the Trier of Fact; Admitting Them at Trial Risks Unduly Prejudicing Google.

Lim purports to calculate AdX overcharges born by all publishers and advertisers worldwide, all advertisers and publishers "▮▮▮▮▮▮▮▮▮," and all U.S. government agencies and their publishers. Ex. 62, App. E ¶¶ 22-23, 68-71, Figs. 13, 14, 15. Unreliable alleged overcharges for advertisers and publishers who are not parties and for whom Plaintiff is not pursuing and cannot pursue a damages claim stray far beyond the facts and legal claims at issue, and serve no helpful purpose for the trier of fact in assessing Plaintiff's alleged damages. *Daubert*

14

v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful"); *Garlinger* v. *Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001) (requiring a valid "connection between the expert's testimony and the pertinent inquiry before the court as a precondition to admissibility").

The true purpose of Lim's non-party overcharge estimates is patently clear.  Plaintiff is trying to buttress the much smaller damages amount that it could develop expert opinion to support, with much larger irrelevant, highly prejudicial worldwide overcharge figures.  Permitting Plaintiff to do so risks confusing the jury and tainting the trial.  *See Uniloc USA, Inc.* v. *Microsoft Corp*., 632 F.3d 1292, 1320 (Fed. Cir. 2011); *Children's Broad. Corp.* v. *The Walt Disney Co*., 245 F.3d 1008, 1017-19 (8th Cir. 2011).  Plaintiff does not address the extreme prejudice to Google should these unreliable estimates be put to the jury in its opposition, indicating its concession of the point.  *Cf. AB Staffing Sols., LLC* v. *Asefi Capital, Inc*., 2022 WL 16555707, at *14 (E.D. Va. Oct. 31, 2022) (plaintiff's failure to address defendant's argument "conceded that issue"); *Crockett* v. *Blackwood*, 2020 WL 1144710, at *11 (M.D. N.C. Mar. 9, 2020) (same).

Plaintiff contends that Lim's non-party overcharge estimates are admissible to show the economic impact of Google's conduct and Google's market power through its ability to sustain overcharges.  This argument fails.

First, Lim's figures are unreliable.  Lim calculates these amounts using Simcoe's flawed apportionment analysis that treats FAAs as the average worldwide advertiser, but they are not representative of the worldwide advertiser, as explained in Google's motion to exclude Simcoe.  Nor has Lim done any expert work to show worldwide overcharges could be extrapolated from alleged FAA overcharges.

Second, none of Plaintiff's economic experts rely on Lim's non-party overcharge figures

to support proof of economic harm.

Third, alleged overcharges to advertisers and publishers <u>worldwide</u> is irrelevant to a case brought on behalf of the American public, as Plaintiff claims it is doing here.  Opp. at 13 ("the Amended Complaint is brought on behalf of the people of the United States as well as by the Attorneys General of 17 States <u>on behalf of their own citizens</u>").  And Plaintiff cannot back-door a damages figure for the entire U.S. government when at the outset of this case, Plaintiff represented to the Court that it "<u>does not seek damages on behalf of the entire federal government writ large</u>."  ECF No. 92 at 2.  In resolving a dispute about the scope of federal government discovery, the Court instructed Plaintiff "that this is not going to be a revolving door," required Plaintiff to stick with the eight FAAs "that you have set out here today," and cautioned that if "one or two of them fall by the wayside, they fall by the wayside," because "they're the ones that you decided to pursue" and "<u>represented</u> they're the ones you're seeking damages on."  3/31/2023 Hearing Tr., ECF No. 95 at 8:14-9:21.  Just last night, Plaintiff states its damages claim are "confined" to the eight FAAs.  ECF No. 690 at 3.  Plaintiff cannot explain how alleged overcharges to all "██████████████████████████," including the likes of the Internal Revenue Service and the National Park Service, Ex. 62, App. E ¶ 67, has any valid connection to an inquiry at issue. *Garlinger*, 16 F. App'x at 235.

Fourth, Plaintiff's contention that Lim's overcharge opinions show market power or monopoly power because they demonstrate Google's "ability to impose sustained overcharges" also fails.  Opp. at 14.  Lim's non-party overcharge opinions purport to show the <u>amount</u> of overcharges sustained by advertisers or publishers, not the fact of an overcharge; amounts of alleged overcharge are not necessary to show that.  Neither of Plaintiff's cited cases—which do not address the issue of the admissibility of non-party overcharge figures as evidence of market

power—supports its position.  In both cases, the court declined to consider price in its assessment of the defendant's market power.  *See United States* v. *Microsoft*, 253 F.3d 34, 51-58 (D.C. Cir. 2001) (relying on indirect evidence for market power and finding Microsoft's pricing "equivocal" on the issue of direct proof of monopoly power, or absence thereof); *Geneva Pharms. Tech. Corp.* v. *Barr Labs. Inc*., 386 F.3d 485, 500 (2d Cir. 2004) (rejecting plaintiff's attempt to prove direct evidence of monopoly power through market price given flaws in expert's methodology).

Last, Lim's worldwide overcharge calculations are unreliable.  Lim uses the same inputs and methodology she used for the FAA damages estimates to arrive at her non-party overcharge estimates, including the baseless 10 percent but-for revenue share input and the unreliable 16.2 and 16.6 percent but-for revenue share and 19.3 percent apportionment estimates from Simcoe. Ex. 62, App. E ¶¶ 22, 58-59, 69-71, Fig. 15.  These unreliable inputs are independent grounds for the exclusion of Lim's non-party overcharge estimates.

### IV.   Plaintiff's Opposition Confirms That Lim's Profitability Opinions Should Be Excluded as Irrelevant and Unreliable.

#### A.   Plaintiff Concedes Lim's Profitability Analysis Is Irrelevant.

Lim's profitability opinions—which include her assessment of Google's display business's operating profit margins excluding AdMob on a "booked" revenue basis and her "alternative" measure of profit margins on a "net" revenue basis—have no connection to this case and therefore fail to satisfy "the touchstone" of Federal Rule of Evidence 702: helpfulness to the trier of fact. *Lake* v. *Adams*, 2020 WL 1016352, at *1 (W.D. Va. Mar. 2, 2020).  All of Lim's profitability opinions are grounded in profit and loss statements excluding AdMob that she created— hypothetical financial statements that were never used by Google in the ordinary course of business and serve no real-world use.  And, after excluding AdMob, Lim observes that almost half of the revenues reflected in the P&Ls—41 percent—"████████████████████████████

███████████" as defined by Plaintiffs' expert, Lee.  Ex. 62, ¶¶ 17, 56.  None of Plaintiffs'

experts rely on Lim's profitability opinions.  *See* Ex. 1, ¶ 419 (Plaintiffs' expert Lee concluding

he will not rely on Lim's analysis given "████████████████████████████

████████████████████████████████████████").  Lim also disavows them,

stating she would "██████" her accounting profitability opinions "██████████████████

████████████████████████████████."  Ex. 62, ¶ 17; *see also* Ex. 68 at

281:7-283:3 (Lim reiterating this point at deposition).

Nowhere in its opposition does Plaintiff address—let alone credibly defend—these two

fundamental problems: (1) that even the expert it is trying to admit these opinions through

concedes they are irrelevant; and (2) that a P&L excluding AdMob still contains products that are

not within the relevant antitrust markets as Plaintiff defines them.  Plaintiff's cited cases stand for

the unremarkable proposition that profitability <u>can</u> be evidence of market power.  Opp. at 14-15.

None address the circumstances present here, where Plaintiff's own experts contend it is not.

Recognizing these problems, Plaintiff tries to save Lim's opinions by arguing they are

proper rebuttal opinions, "to the extent that Google intends to contend at trial that its ████████

██████ suggest it lacks monopoly power in the relevant markets."  Opp. at 15.  But Lim conceded

in her own reply report, that is, <u>on rebuttal</u>, that her specific profitability opinions were not helpful.

Ex. 62, ¶ 17.  In any event, whether offered as rebuttal or affirmative testimony, Plaintiff does not

dispute that Lim's opinions are not grounded in Google's actual financial statements regarding its

display business, so they are not a useful metric.  As such, they must be excluded.

## B.      Lim's Opinion That Google "Could" Treat Itself as an Agent Is Unreliable.

Lim's accounting profitability opinion that Google ██████ considered an agent rather

than a principal under the accounting guidelines is unreliable and must be excluded because it rests

on a perfunctory analysis performed without any basis or precedent in real-world accounting

practices.  *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 152 (1999) (experts must employ "the same level of intellectual rigor that characterizes the practice of an expert" in the field).

Plaintiff claims that Lim applied Accounting Standards Codification ("ASC") 606 to conclude that Google "could" have made different determinations, Opp. at 16, but ignores that ASC 606 does not permit "optionality," Barry Kanczuker, *Remarks before the 2017 AICPA Conference* (Dec. 4, 2017), tinyurl.com/kanczukerspeech. The non-committal nature of Lim's conclusion refutes its reliability.  Plaintiff has no response to the well-accepted guidance, standard in the field, that no "optionality" is permitted.

Further, no precedent or real-world practice supports Lim's comparison to the accounting determinations reported in five other companies' selected SEC filings, including one business outside of ad tech.  Br. at 25; Opp. at 17.  ASC 606 does not instruct companies to look at what other companies do in order to make a principal/agent determination.  Br. at 24-25.  Similarly, the SEC cautions against making ASC 606 determinations based on an "overreliance on benchmarking" to a company's "peers' accounting policies.'"  Wesley R. Bricker, *Remarks before the Annual Life Sciences Accounting & Reporting Congress: "Advancing Effective Internal Control and Credible Financial Reporting"* (March 21, 2017), tinyurl.com/brickerspeech ("the principal versus agent assessment is often fact specific and judgment-based, I caution companies against any overreliance on benchmarking to their peers' accounting policies").  This is additional well-accepted guidance, standard in the field, that Plaintiff and Lim ignore.

Nor can Lim's opinion be salvaged by Plaintiff's vague references to her "accounting experience."  Opp. at 16.  The law is clear that expert testimony grounded in experience is admissible so long as the expert explains how her "experience leads to the conclusions reached," why her "experience is a sufficient basis for the opinion," and how her "experience is reliable

19

applied to the facts." *United States* v. *Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). Lim provided

no such explanation here.

## **CONCLUSION**

Google respectfully requests that the Court grant its motion and exclude the testimony of

Adoria Lim.

Dated: May 31, 2024

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Scott A. Eisman (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
 CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB #93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
mdearborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3387
Facsimile:  (212) 492-0387
ejmorgan@paulweiss.com

*Counsel for Defendant Google LLC*