**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>     *Plaintiffs*,<br><br> vs.<br><br>GOOGLE LLC,<br><br>     *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION**
**TO DISMISS THE UNITED STATES' DAMAGES CLAIM**
**AND TO STRIKE THE JURY DEMAND**

## INTRODUCTION

On May 17, the Department of Justice ("DOJ") agreed it is an undisputed fact that it "claims less than a million dollars in damages"[1] (before trebling and pre-judgment interest), and that the amount it claims is at most ███████. Pls.' Opp. to Def.'s Mot. for S.J., ECF No. 656 ("S.J. Opp.") at 2. This admission came the day after Google tendered to DOJ a cashier's check for that exact amount (███████, post-trebling and pre-judgment interest). Accordingly, the United States' damages claim is moot and this case must be tried to the Court. Perhaps out of disappointment over the gradual collapse of its contrived damages claim, DOJ now ignores this undisputed fact, offering up a brand new figure, previously uncalculated by any DOJ expert, unsupported by the record, and never disclosed. The law does not permit this. And, as the Court made clear, DOJ "can't have it both ways," and "will be held to [its] position" "taken at summary judgment." May 31, 2024 Conference Tr. ("May 31 Tr.") at 22:13-24.

DOJ has struggled for months with its damages claim. After scrambling around over Christmas 2022 to find agencies it could claim were harmed (none have said they were), DOJ resisted providing a calculation or amount of damages. This led Judge Anderson to warn DOJ that its claim was "in jeopardy" and that it needed to tell him and Google "how much money the government is seeking in this case and what—how you compute those damages." *See* ECF No.

---

[1] All references to Ex. 1 through Ex. 21 refer to the exhibits filed as attachments in support of Google LLC's Motion to Dismiss the United States' Damages Claim as Moot and to Strike the Jury Demand, ECF No. 630. All references to Ex. 22 refer to the exhibit filed as an attachment in support of Google LLC's Reply In Support of Its Motion to Dismiss the United States' Damages Claim and to Strike the Jury Demand. All references to Exs. 62, 68, and 91 refer to the Declaration of Bryon Becker in Support of Google LLC's Motion for Summary Judgment and Motions to Exclude, ECF No. 581. All references to Ex. B refer to DOJ's Corrected Exhibit B, filed in support of DOJ's Opposition to Google LLC's Motion to Exclude the Testimony of Adoria Lim, ECF No. 647-2. With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

447 at 23:25-25:8.  Even so, DOJ tried to avoid Google's written discovery, providing instead expert Adoria Lim.  Lim, for her part, offered three calculations only—based on a 10% but-for revenue share (*based on DOJ's express instructions to use that number*) along with the 16.2% and 16.6% but-for revenue shares calculated by DOJ's other expert, Dr. Timothy Simcoe.  ECF No. 710 at 5; Ex. 62, App. E ¶¶ 60, 68, Fig. 19; Ex. 68 at 231:3-232:1.  Simcoe calculated only the 16.2% and 16.6% and disavowed the 10% during his deposition.  Ex. 91 at 179:4-12.  No expert offered a damages calculation based on a 5% but-for revenue share.

DOJ's claim that a jury could award damages on an alternative calculation was first mentioned during a meet and confer on May 30, the day DOJ's opposition to Google's mootness motion was due—well after DOJ's admission in its summary judgment opposition, well after Lim and Simcoe's calculations and depositions, and well after the federal rules and Judge Anderson required a computation of damages to be disclosed.  No number was proffered on the meet and confer but instead was included in DOJ's opposition, filed later that day.  ECF No. 690 ("Opp.") at 4.  But even this new number did not last.  After the Court hearing on May 31, while DOJ said it would send information on how this new number was calculated, it explained that evening it would take longer because "one of the key people who assisted" was out, suggesting this new calculation was not even easily accessible to DOJ.  Ex. 22.  Then, on June 1, just a few days before this reply brief was due, DOJ sent another new number, conceding that the number disclosed for the first time in its mootness opposition brief was inaccurate and wrongly computed.  *Id.*  Again, DOJ is scrambling to salvage a damages claim—now with a moving target—but it cannot escape what it has already admitted as an undisputed fact with these last-minute tactics.

With respect to mootness, DOJ grasps at one more straw: Google's letter accompanying the certified check, which states that Google's voluntary tender "should not be construed either as

an admission that Google is liable in this action, or that the United States has suffered any damages." ECF 632-5. It is not remotely clear why this would be a problem and, in any event, DOJ acknowledges (as it must) that for mootness, "Google need not confess liability." Opp. at 12. And to be clear, in a bench trial, the Court will know why Google made this payment; not to concede liability but, rather, to promote efficiency, streamline the trial, and avoid the continuing cost of litigating claimed damages of less than one million dollars. *See also* May 31 Tr. at 17:9-12.[2] Far from conceding liability, Google is confident that the rest of DOJ's case will collapse under scrutiny, much as its damages claim has.

Finally, while the Court need not reach the Seventh Amendment question if DOJ's damages claim is moot, DOJ has not identified a single civil antitrust case brought by the United States that was tried to a jury. Nor does it dispute that the Seventh Amendment, and the other provisions of the Bill of Rights, were adopted to protect the People—not the Government. DOJ's position that it has a Seventh Amendment right to a jury trial in this case would lead to a perverse result where a provision of the Bill of Rights—adopted to protect the citizens against the Government—affords the Government, but not citizens due to sovereign immunity, a jury trial right.

For these reasons, DOJ's damages claim is moot and its jury demand should be stricken.[3]

## **ARGUMENT**

### **I.   DOJ Has Received Complete Relief and Accordingly its Damages Claim Should Be Dismissed as Moot.**

---

[2] DOJ says what it values "above all else" is maintaining the Court's schedule for "resolution of these claims." Opp. at 1. So does Google. Dismissing DOJ's damages case as moot and striking the jury demand facilitates efficient resolution by reducing the claims to be tried, eliminating the impaneling of a jury and jury instructions, and streamlining motions in limine practice.

[3] That Google demanded a jury trial on "all issues so triable" is no obstacle to striking the jury demand because, at a minimum, the equitable claims remaining are not "so triable."

A claim is moot when "the claimant receives the relief he or she <u>sought to obtain</u> through the claim." *Simmons* v. *United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011). Here, the undisputed maximum amount of damages "Plaintiff claims" is "$█████." Def.'s Mem. ISO Mot. for S.J., ECF No. 571 ("S.J. Br.") at 16 (SUF 85); S.J. Opp. at 2. Having received tender for that amount, trebled and with prejudgment interest, DOJ can receive no further relief on its damages. *See* Ex. 20; Ex. 21. The claim is therefore moot and must be dismissed. *See SAS Inst., Inc.* v. *World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017) ("A claim is moot when" "there is no effective relief available in federal court that the plaintiff has not already received.").[4]

A.  <u>The Damages the United States Is Seeking on Behalf of the FAAs Are Undisputed.</u>

Following DOJ's admission "taken at summary judgment," this motion is simple: DOJ must be "held to [its] position." May 31 Tr. at 22:13-24. In Google's opening summary judgment brief, consistent with Local Rule 56(B), Google listed facts as to which "there is no genuine issue." Among those was Statement of Undisputed Fact ("SUF") 85, about the minimum and maximum range of DOJ's damages claim, under a heading titled "**F. Plaintiffs' Damages Claim**." S.J. Br. at 16. The day <u>after</u> it received Google's voluntary tender and motion to dismiss the damages claim as moot, DOJ filed its summary judgment opposition, where it expressly stated that it did not dispute SUF 85, S.J. Opp. at 2, as quoted below:

---

[4] Without citation, DOJ questions whether a motion to dismiss is the proper vehicle for adjudicating mootness because an overall "case or controversy remains." Opp. at 6 n.3. What DOJ misses is that "because the requirement of a live controversy applies 'independently to each form of relief sought,' it is appropriate to address each form of relief separately." *McArthur* v. *Brabrand*, 610 F. Supp. 3d 822, 835 (E.D. Va. 2022) (quoting *Carter* v. *Fleming*, 879 F.3d 132, 137 (4th Cir. 2018)). Courts hear mootness by tender issues through motions to dismiss (even where other claims remain live) because mootness goes to their subject matter jurisdiction. *E.g.*, *Price* v. *Berman's Automotive, Inc.*, 2016 WL 1089417 (D. Md. 2016) (dismissing federal claims as moot while proceeding to bench trial on pendent state law claims).

| Google's Motion for Summary Judgment | DOJ's Opposition to Google's Motion for Summary Judgment |
|---|---|
| 85. Plaintiffs claim less than a million dollars in damages—by their calculations as little as $███ or at most $████ (before trebling and pre-judgment interest)—on behalf of eight federal advertising agencies ("FAAs") who allegedly suffered injury between January 2019 and January 2023 when advertising agencies purchased "open-web display ads" on the FAAs' behalf. | Plaintiffs **do not dispute** the following Statements of Undisputed Fact ("SUFs"): 1, 3, 5-6, 8, 14, 18-21, 29, 31-32, 38, 40, 50, 52-53, 58, 61, 64, 67-68, 70, 80, 82, **85**, 88, 92, 93, and 94. |

DOJ's admission was no accident.  DOJ *did* dispute the factual accuracy of 66 of Google's remaining SUFs.  *Id.* at 2-13.  But it did not dispute the damages range set forth in Google's SUF 85, or provide any alternate damages amount or computation in response to SUF 85.[5]

DOJ's affirmative agreement, "without qualification," to the factual statement that it claims a maximum of $████ in damages is a binding judicial admission.  *Zander* v. *Cont'l Cas. Co.*, 61 F. App'x 963, 965 (7th Cir. 2003) (stipulation in statement of undisputed facts in opposition to a motion for summary judgment is a judicial admission); *see also VIA Design Architects, PC* v. *U.S. Dev. Co.*, 2014 WL 5685550, at *7 (E.D. Va. Nov. 4, 2014) (in this Circuit, a "clear and unequivocal" statement in a brief is a judicial admission).  Under this Circuit's law, a judicial admission, "unless allowed by the Court to be withdrawn, is conclusive in the case."  *Meyer* v. *Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004).

Moreover, when damages are a jurisdictional issue, "deliberate, clear, and unambiguous" admissions of the amount of damages sought are conclusive of jurisdiction.  *Baptist* v. *Zurich Am. Ins. Co.*, 2019 WL 13251258, at *1-2 (E.D. Va. July 9, 2019) (court lacked diversity jurisdiction when a plaintiff made a "representation" that "his damages are" below $75,000); *see also Singer*

---

[5] In a footnote, DOJ disputed "the vague, subjective, and self-serving terminology included in many SUFs . . . including the phrases 'as little as' or 'at most' in **SUF 85**," but did not in any way dispute the computed amounts set forth in SUF 85.  S.J. Opp. at 2 n.1.

v. *State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) ("the plaintiff's formal judicial admission that the amount in controversy exceeds $50,000 has the effect of defeating the plaintiff's choice of forum").  DOJ's own cited case, *Warren* v. *Sessoms & Rogers*, 676 F.3d 365, 372 (4th Cir. 2012), recognized that a plaintiff's representations before the Court about its damages demand—including "a specific demand in the amended complaint for actual damages" or quantifying "alleged damages in response to a discovery request"—would be conclusive of the amount of payment required to grant the plaintiff full relief.

"Considered in the context of [its] prior express admissions," DOJ's argument now falls far short of the very high threshold required to withdraw a judicial admission (which DOJ is not even seeking).  *See New Amsterdam Cas. Co.* v. *Waller*, 323 F.2d 20, 24 (4th Cir. 1963) (withdrawal requires "a showing of exceptional circumstances," if "the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission").  At a May 31, 2024 hearing before the Court, DOJ stated it does not "recall paragraph 85," but believes it "made clear in our argument in the summary judgment brief that the [revenue share] for AdX could be between 5 and 15 percent."  Tr. at 25:17-26:12.  But nowhere in its summary judgment brief, including in the four-page section about the United States' standing to seek damages, *see* S.J. Opp. at 31-35, did DOJ ever qualify or contradict its damages admission.[6]  Nor did DOJ advance in expert discovery or *at any point in this case* a disclosure that it is seeking damages based on a 5%

---

[6] DOJ cited one email between Google employees who purportedly "suggested that the AdX take rate should be between 5% and 15% to reflect the market."  S.J. Opp. at 15.  The email was not addressing the appropriate revenue share assuming a competitive market; moreover, DOJ has never advanced the position in its expert disclosures or otherwise that 5% would have been the revenue share in a competitive market.  Estimating a but-for price "nearly always requires the use of an expert economist or statistician" and "estimating this hypothetical situation is <u>exceedingly difficult</u>."  Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 340a2, 340b (5th ed. 2023).  Here, DOJ has no supporting expert opinions for its brand new and evolving damages figure.

but-for revenue share; nor did it provide the calculation underlying such damages.  *See infra* § I.B;

ECF No. 710 at 5-7.  DOJ "may now regret [its] judicial admission, but an admission it was."

*Zander*, 61 F. App'x at 965.

> B.  <u>DOJ Has Offered No Explanation for Why It Should Be Able to Advance a Never Disclosed Damages Theory and Number Inconsistent with Its Expert Disclosures.</u>

Even absent DOJ's binding admission, DOJ has no grounds to argue that it may recover

additional damages for a previously undisclosed amount.  DOJ's obligation to disclose *during*

*discovery* the amount of its claimed damages—and how those damages were computed—could

not be clearer.  Rule 26(a)(1)(iii) requires DOJ to provide:

> A computation of each category of damages by the disclosing party—who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(iii).  "[A] party's Rule 26(a)(1)(A)(iii) disclosure must state the types of

damages that the party seeks, must contain a specific computation of each category, and must

include documents to support the computation." *Silicon Knights, Inc.* v. *Epic Games, Inc.*, 2012

WL 1596722, at *1 (E.D.N.C. 2012).  "District courts have therefore correctly held that, where a

party only discloses a lump sum or merely refers to documents from which the opposing party can

presume damages, the disclosing party has not met its obligation." *Adv. Training Grp. Worldwide,*

*Inc.* v. *Proactive Techs. Inc.*, 2020 WL 4574493, at *5 (E.D. Va. 2020).  DOJ also has "a

continuing duty to supplement and correct its damages computation 'in a timely manner,'

including to update the materials on which the party relies in assessing damages." *Duke Energy*

*Carolinas LLC* v. *NTE Carolinas II LLC*, 2022 WL 884275, at *2 (W.D.N.C. 2022) (quoting Fed.

R. Civ. P. 26(e)).

"In other words, a plaintiff must disclose to the defendant a computation of each category of damages claimed pursuant to Rule 26(a), and if a plaintiff fails to provide that damages computation, Rule 37(c) provides that exclusion of such evidence is the appropriate remedy, unless the failure to disclose is harmless or was substantially justified." *Advanced Training*, 2020 WL 4574493, at *4.  The failure to meet these disclosure obligations results in exclusion unless the failure was "substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).

Courts in this Circuit apply multiple factors in determining whether a party's non-disclosure was "substantially justified or harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*S. States Rock & Fixture, Inc.* v. *Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).  Based on these factors, DOJ's failure to disclose a new damages theory and number—not disclosed in discovery—is neither harmless nor substantially justified.

Google was surprised by DOJ's position, which is inconsistent with the calculations it had provided through its own retained experts.  In expert reports and depositions, DOJ provided precise damages figures premised upon three clearly delineated but-for revenue shares—10%, 16.2%, or 16.6%, yielding a damages range of $█████ to $█████.  These figures are summarized in Figure 19 of the Lim report:



**Figure 19: Summary of Damages to FAAs**
**January 25, 2019 – January 24, 2023**

| But-For Take Rate | AdX Overcharge to FAAs [A] | Platform Fees Overcharge to FAAs [B] | Total Damages to FAAs [C] = [A] + [B] |
|---|---|---|---|
| 10.0% | | | |
| 16.2% | | | |
| 16.6% | | | |

*Sources*: [A]: **Figure 17**, row [5]. [B]: **Figure 18**, row [4]. *Note*: USPS pathways only include amounts from January 2021 onward.

As the chart shows, the only revenue shares used for calculating damages were 10%, 16.2% and 16.6%.  Lim relied on Simcoe's analysis when calculating damages based on 16.2% and 16.6%, and DOJ instructed Lim to use a 10% revenue share.  ECF No. 577 at 6; Ex. 62, App. E ¶¶ 60, 68, Fig. 19; Ex. 68 at 231:3-232:1.

Google reasonably relied on DOJ's own disclosures when providing the cashier's check for the purpose of streamlining this litigation, given that the expense of litigating the damages claim would by far exceed DOJ's meager claimed damages.  Upon receipt of the check on May 16, 2024, DOJ did not say that the amount was in error and instead, on May 17, 2024, in responding to Google's summary judgment motion, stated that it did not dispute that the damages amount ranged from $██████ to $██████.  *See* S.J. Opp. at 2 (conceding SUF 85) & 31 n.15 (acknowledging receipt of Google's mootness motion and tender of check).

Then, the backpedaling started.  On May 28, 2024, DOJ requested a meet and confer concerning Google's mooting motion.  During that meet and confer, which took place on May 30, DOJ told Google for the first time that the check did not reflect the full damages DOJ could recover, but did not provide the amount it was suggesting it could recover.  Later on May 30, DOJ filed its opposition to Google's mootness motion, stating that "Plaintiffs' damages expert, Adoria Lim, calculated pre-treble damages for the FAAs much higher than the $██████ Google cites in its motion, and record evidence would support a damages award to the FAAs at trial, before trebling or prejudgment interest of $██████."  Opp. at 9.  Following the May 31 hearing with the Court, Google met and conferred with DOJ; during that meet and confer DOJ agreed that its new damages number was not calculated in any expert report and agreed to follow-up with the calculation.  While DOJ said it would send the calculation that day, it later emailed to say it would take longer because "one of the key people who assisted" was out, Ex. 22, suggesting that this new

calculation was not just previously undisclosed, it was not even easily accessible.  It was not until the evening of June 1 that DOJ provided Google with its never-before disclosed calculation based on a 5% revenue share, and acknowledged that the damages figure in its opposition to Google's mootness motion was incorrect and needed to be amended.  *Id.*

The saga of Google's pursuit of what DOJ at least for now claims to be its highest possible damages figure only serves to highlight why this new number cannot survive: it was a) previously undisclosed; b) nowhere in the record, including expert reports and depositions, and summary judgment briefing; c) not so easily calculated since DOJ erred in computing it and had to revise the total amount; and d) not so accessible or replicable that it could be shared without the help of a "key" person, presumably at DOJ's expert firm.[7]

DOJ was well on notice about its obligations.  Nine months ago, Judge Anderson warned that "the government's claim for damages is in jeopardy in this case given the lack of responsiveness in discovery."  ECF No. 447 at 23:25-25:8.  DOJ resisted, insisting instead that the computation would be provided during expert discovery because "there is a need for complex expert calculations in order to come up with a total" and "the only way to calculate how much those were—those prices were overcharged is through economic modeling."  *Id.* at 16:1-13, 21:4-7.  Judge Anderson further warned that delaying disclosure of the claimed damages until expert reports was "not fair.  And I want to make sure this case is tried on a fair basis, and hiding the ball

---

[7] Figure 38 of Lim's (corrected) report, upon which DOJ partially relies, does not provide a computation of damages.  Ex. B, Fig. 38.  Figure 38 is ███████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ All of the other figures in Appendix D where Figure 38 can be found all show calculations using 10%, 16.2%. or 16.6% but-for revenue shares, never a 5% revenue share.

as to how you're going to calculate the damages or what the damages are, you know, what the elements are going to be, you know, if the model isn't complete." *Id.* at 23:25-25:8.

It would be highly prejudicial to Google—after Judge Anderson's warnings, after fact and expert discovery, after summary judgment (including DOJ's admission on damages) and *Daubert* briefing—for DOJ to advance a new damages theory and number.  There is no way to cure the surprise, and the associated prejudice, without reopening discovery to understand the basis for the calculation, including the support DOJ now claims for a 5% revenue share—especially because no expert or fact witness has provided support that 5% is a revenue share that would be charged in a but-for world, i.e., absent alleged anticompetitive conduct.  None of the three documents DOJ could muster in its opposition purport to calculate a but-for revenue; all that the emails show, and deposition testimony confirms, is brainstorming and discussion about hypothetical changes to Google's AdX revenue share and any possible impact of such theoretical changes.  ECF No. 711 (Lim Reply) at 9-10.  Lim does not rely on any of the three emails in her materials relied on, while Simcoe cites the documents, ECF No. 597-5, ¶ 236 n.253, but never uses them as a basis for a but-for revenue share.

To allow damages calculations based on an unsupported, undisclosed, and uncalculated revenue share would run counter to the purpose of Rule 26(a), which is to allow litigants "to adequately prepare their cases for trial and to avoid unfair surprise."  *Bresler* v. *Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017); *Advance Training*, 2020 WL 4574493, at *9 (excluding new lost profits damages calculation offered after close of discovery); *Ruddy* v. *Bluestream Prof. Serv., LLC*, 2020 WL 13694227, at *4 (E.D. Va. 2020) ("It is also clear that the exclusion of damages evidence pursuant to Rule 37(c) is the appropriate sanction for plaintiff's failure to disclose a proper computation of her economic damages in this case.").

DOJ's desperate and fumbling effort to come up with a new damages figure on the fly is barred by its binding admission, and allowing it at this late date would be fundamentally unfair. It is another example of the lengths DOJ is willing to go to have this case heard by a jury despite its acknowledgment that the issues involved are "highly technical, often abstract, and outside the everyday knowledge of most jurors." ECF No. 517 at 7-8 (quoting DOJ counsel). That is not the sign of a strong case. Nor is it a good reason to disregard all of the above.

C.  DOJ Has No Remaining Basis for Attempting to Reject an Unconditional Tender of Complete Relief.

Having received guaranteed tender for the complete amount of its claimed damages, DOJ's damages claim is moot. *See Jarrett* v. *United States*, 79 F.4th 675, 680 (6th Cir. 2023) ("We see no reason that mootness should turn on what a [defendant] does with a check any more than it should turn on whether he burns a full cash payment on the spot."). The cases DOJ cites for refusing tender are irrelevant here. *See* Opp. at 7-8, 10.[8]

Several of the cases DOJ invokes concern the particular situation of a defendant "'picking off' named plaintiffs to deny a would-be class representative a fair opportunity to seek class relief"—a concern obviously not present here, or even relevant given all parties' eagerness to proceed to final adjudication of the remaining liability claims. *Chen* v. *Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016); *see also Fulton Dental, LLC* v. *Bisco, Inc.*, 860 F.3d 541, 545 (7th Cir.

---

[8] DOJ describes the Fourth Circuit's unpublished, non-binding opinion in *Bennett* as standing for the general proposition that "refusal of a tendered check forestalls mootness." Opp. at 11. The few sentences *Bennett* devotes to the issue say nothing so sweeping. The court simply notes that the defendant's "offer of settlement" in that case (which was not a cashier's check), where "the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated," did not result in mootness after the ruling in *Campbell-Ewald Co.* v. *Gomez*, 577 U.S. 153 (2016). *Bennett v. Off. of Fed. Emp.'s Grp. Life Ins.*, 683 F. App'x 186, 188 (4th Cir. 2017). And, as explained in Google's opening brief, courts in the Fourth Circuit have distinguished *Bennett* from tenders involving guaranteed payment like a cashier's check. *See* ECF No. 688 at 14 n.8.

2017) ("suit is about more than the statutory damages . . . it is also about the additional reward that it hopes to earn by serving as the lead plaintiff for a class action"); *Krumm* v. *Kittrich Corp.*, 2019 WL 6876059, at *3 (E.D. Mo. 2019) (concerned with "defendant attempts to pick off" class claimants); *Ung* v. *Universal Acceptance Corp.*, 190 F. Supp. 3d 855, 862 (D. Minn. 2016) ("critical that [Plaintiff] brought this case as a putative class action"); *Pankowski* v. *Bluenrgy Grp. Ltd.*, 2016 WL 7179122, at *3 (S.D. Tex. Dec. 9, 2016) (similar); *Fam. Med. Pharmacy, LLC* v. *Perfumania Holdings, Inc.*, 2016 WL 3676601, at *5-6 (S.D. Ala. 2016) (similar).

DOJ also cites a handful of cases where the scope of complete relief was genuinely in dispute.  *See, e.g., Warren*, 676 F.3d at 371-72 (noting that "defendants can point to no evidentiary record" to support their view of the maximum actual damages "nor has any discovery been taken as to the amount"); *Naranjo* v. *Nick's Mgmt., Inc.*, 652 F. Supp. 3d 737, 743 (N.D. Tex. 2023) (dispute over whether "fees and tips" could be deducted from defendant's tender of claimed wages); *Cline* v. *Sunoco, Inc.* 2019 WL 7759052, at *5 (E.D. Okla. 2019) (disputes about availability and amount of "punitive damages, injunctive relief, accounting, and disgorgement"); *Carter* v. *Stewart Title & Guar. Co.*, 2013 WL 436517, at *5 (D. Md. 2013) (disputes about "additional damages" from "civil RICO and common law claims").  These cases, too, are irrelevant given that the maximum amount of actual damages is an undisputed fact here.

Finally, DOJ suggests that the tender in this case is invalid because it is "conditional."  DOJ never expressly identifies why it contends there is a condition.  Google provided DOJ a guaranteed form of payment, which DOJ is free to deposit or cash without any conditions attached.  As a general matter, DOJ would presumably prefer that Google concede liability, but even DOJ acknowledges that for the damages claim to become moot, "Google need not confess liability." Opp. at 12.  None of DOJ's cited cases requires a liability concession.  In *Simmons*, for instance,

13

the court identified a number of "conditions" that prevented tender from mooting an employer's overtime claim but expressly missing from the list was "no admission of liability." 634 F.3d at 763-64 & n.6 (noting that Rule 68 also does not "require an admission of liability by the defendant")[9]; *see also Chen*, 819 F.3d at 1142 (Plaintiff "has not explained why . . . an admission of liability is necessary to afford him complete relief on his non-class claims"). Likewise, *Jarrett* could not be clearer that the "measure of mootness" is not whether a party has "admitted liability or agreed to an entry of a judgment." 79 F.4th at 681.[10]

All that remains is DOJ's assertion that Google is "unilaterally precluding Plaintiffs from arguing at trial that Google's payment is evidence of both damages and liability." Opp. at 12. While it is unclear why this would matter in a bench trial, Google's statement that the voluntary tender "is not and should not be construed . . . as an admission" is just that—an unequivocal statement about <u>Google's</u> position that it is not affirmatively admitting liability or damages by making the payment. ECF No. 632-5. This case will still proceed to a full resolution of the remaining claims in the Complaint whether by summary judgment or trial. And, at the appropriate time, the Court can determine what evidence and arguments are admissible.[11] *See* May 31 Tr. at

---

[9] For a full comparison, the conditions that the court found relevant were a truncated window for reviewing the offer (5 days), requiring plaintiffs to file an affidavit calculating and justifying their overtime claims, requiring plaintiffs to enter an agreement that "all claims will be waived and released," and requiring plaintiffs to keep the settlement confidential. *Simmons*, 634 F.3d at 764, 766-67. There are no comparable conditions here.

[10] DOJ's other bases for distinguishing *Jarrett* are equally unavailing. Google's tender provides "full and unconditional" payment and DOJ's receipt of a cashier's check "constituted actual payment." Opp. at 12-13; *see, e.g.*, *Kuntze* v. *Josh Enters., Inc.*, 365 F. Supp. 3d 630, 642 (E.D. Va. 2019) ("payment is assured" with "a duly issued cashier's check"); *Price* v. *Berman's Auto., Inc.*, 2016 WL 1089417, at *2 (D. Md. 2016) ("no legitimate risk of non-payment" when cashier's check was tendered).

[11] Google disagrees that its voluntary tender of payment is admissible evidence under the Federal Rules of Evidence. *E.g.*, Fed. R. Evid. 408; *Macsherry* v. *Sparrows Point, LLC*, 973 F.3d 212, 222-23 (4th Cir. 2020); *Silicon Knights*, 2011 WL 5439156, at *2. DOJ's argument that an adverse "inference" based on tender "is permissible," Opp. at 12, cites to a concurring opinion that itself

17:3-12 (the Court noting that DOJ can "make that type of argument to the Court" after resolving whether there is "a basis for the jury").

DOJ has received tender for the full amount of its claimed damages.  It can cash that tender as it pleases and can seek no further relief from this Court on that count.  Accordingly, the Court should disregard DOJ's reasons for forestalling mootness and dismiss the damages claim.

## II.   The Seventh Amendment Does Not Entitle the United States to a Jury Trial.

As DOJ agrees, *see* Opp. at 15 n.7, the Court need not and should not address whether DOJ has a jury-trial right if it concludes DOJ's damages claim is moot.  If the Court addresses the question, it should hold that the Seventh Amendment does not entitle DOJ to a jury trial.

*First*, and most important, DOJ identifies no precedent in American history where a case like this—where the federal government brings only civil antitrust claims—was tried to a jury. DOJ comes close to conceding that no such case exists, and its attempt to justify the glaring absence of precedent on the ground that most cases brought by the United States "seek only injunctive relief" only highlights how extraordinary DOJ's jury demand is here.  Opp. at 21 n.10. The "lack of historical precedent" for DOJ's jury demand is powerful evidence that the right DOJ invokes does not exist.  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010).

*Second*, DOJ dedicates much of its brief to the undisputed proposition that the Seventh Amendment entitles *private parties* to a jury trial in antitrust cases seeking treble damages.  *See* Opp. at 15-18.  But the relevant question is whether the Seventh Amendment entitles the *sovereign*

---

explicitly declined to decide whether "an admission of liability" is required to moot a case.  *See Campbell-Ewald*, 577 U.S. at 174 (Thomas, J., concurring).  Regardless, this evidentiary dispute about what if anything the Court should infer from Google's tender has no bearing on whether DOJ has received full payment for its claimed damages, thereby mooting that claim, and can be briefed at the appropriate time if DOJ wishes to raise it.

to a jury trial in such cases.  On that question, DOJ does not dispute that the Bill of Rights was adopted to protect "*personal* rights against *federal* encroachment."  *McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010) (quoting *Malloy v. Hogan*, 378 U.S. 1, 10 (1964)).  DOJ fails to identify any other provision of the Bill of Rights that grants the federal government rights against private parties.  And DOJ concedes that its claim to a jury trial would lead to a startling asymmetry whereby the government has a jury-trial right against private parties but private parties have no comparable right against the government.  *See* Opp. at 19.  DOJ justifies this asymmetry on sovereign-immunity grounds, but sovereign immunity's place in the "fabric of American law," *see id.*, again only underscores the novelty of DOJ's jury claim here.

*Third*, DOJ's appeal to case law is unpersuasive.  DOJ cites precedent generally stating that the Seventh Amendment applies in cases brought by the United States.  Most of these cases involved a *defendant* that sought a jury trial in an action brought by the government.  *See Tull* v. *United States*, 481 U.S. 412, 417 (1987) (defendant sought jury trial); *Austin v. Shalala*, 994 F.2d 1170, 1173 (5th Cir. 1993) (same); *Damsky* v. *Zavatt*, 289 F.2d 46, 48 (2d Cir. 1961) (Friendly, J.) (same); *cf.* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2314 (4th ed. 2023).  These cases neither hold nor imply that the same Seventh Amendment right extends to the United States.  And while some courts have incorrectly held that the Seventh Amendment gives the United States a jury trial right, DOJ does not contend that the Supreme Court or Fourth Circuit has addressed the issue, leaving it an open question for this Court.

DOJ erroneously contends that "Google does not cite any authority" holding that the Seventh Amendment does not entitle the United States to a jury.  To the contrary, Google's motion extensively discussed *United States* v. *Griffin*, 14 F.2d 326 (W.D. Va. 1926), which rejected the argument DOJ makes here.  *Griffin* explained that it would be a "perversion of the purpose and

intent of the Seventh Amendment to contend that it gives the government a right to a jury trial in any case," and that while the Seventh Amendment "imposes an obligation on the government as plaintiff to submit to a trial by jury in certain classes of cases at common law," it does not grant the United States a right to force a defendant to submit to a jury trial. *Id.* at 326-27. DOJ has no answer to *Griffin*, and therefore ignores it.

*Fourth*, DOJ cannot show that similar actions by the Crown would have been tried to juries in 1791, and barely attempts to do so. DOJ denigrates the importance of history, citing *Tull*'s statement that characterizing the relief sought is "more important" than finding a historical analogue. Opp. at 15-16 (citing *Tull*, 481 U.S. at 421). *Tull*'s statement is difficult to reconcile with the text of the Seventh Amendment, with early Supreme Court precedent holding that the Seventh Amendment preserves "the right which existed under the English common law when the Amendment was adopted," *Balt. & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657 (1935), and with more recent precedent confirming the Court's "longstanding adherence to this historical test," *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996). Regardless, DOJ does not dispute that history is at least highly relevant, and Google has shown, with support from a declaration from Professor Hudson, that in 1791 "complex damages actions brought by the Crown against a subject would likely be heard by a judge." ECF No. 688 at 9.

DOJ concedes that "perhaps no 18th-century action is 'precisely analogous.'" Opp. at 22. This underscores the absence of any "established jury practice sufficient to support an argument by analogy" that damages actions brought by the United States should be tried to a jury. *Markman*, 517 U.S. at 380. DOJ also does not dispute Prof. Hudson's conclusion that actions by the Crown through a procedure called an "information" would have been tried to judges rather than juries at common law. DOJ distinguishes cases tried through an information on the ground that they

involve "recovery of royal property or revenues." Opp. at 22. But that is exactly what DOJ's damages claim seeks as well—DOJ claims that Google's conduct "caused the United States to incur monetary damages" which DOJ now seeks to recover to protect the government's pecuniary interests. ECF No. 120, ¶ 341. And while DOJ notes that actions for "forestalling, regrating, and engrossing" were tried to juries, Opp. at 22-23, those offenses were "crimes" subject to punishment up to "death"—and different jury-trial rules apply in the criminal context. William Letwin, *The English Common Law Concerning Monopolies*, 21 U. Chi. L. Rev. 355, 368 (1954); *see* Edward A. Adler, *Monopolizing at Common Law and Under Section Two of the Sherman Act*, 31 Harv. L. Rev. 246, 254 (1917) ("forestalling, regrating, and engrossing" was "a criminal offence").

DOJ's attempts to discredit Prof. Hudson's analysis are unpersuasive. DOJ claims that the "Hudson Declaration is contrary to the analysis of the Ninth Circuit in *Standard Oil* and the Third Circuit in *Corry Jamestown*." Opp. at 21. But *Corry Jamestown* was an EEOC suit brought under the Age Discrimination in Employment Act, which gives private parties a jury right and which also allows the EEOC "to bring suit on behalf of an individual in a representative capacity." *EEOC* v. *Corry Jamestown Corp.*, 719 F.2d 1219, 1223 (3d Cir. 1983). Applying the statute, the court merely held that "since the Commission is suing as surrogate or in a representative capacity, the Commission must have the same rights that are possessed by the individual." *Id.* at 1225. And *Standard Oil*'s holding that "the states are guaranteed the right to jury trial" under the Seventh Amendment, *Standard Oil Co. of Calif.* v. *Arizona*, 738 F.2d 1021, 1026 (9th Cir. 1984), is likewise inapplicable given that states and the federal government are differently situated under the Bill of Rights. *See* U.S. Const. amdt. X. While DOJ cites the Judiciary Act of 1789, *see* Opp. at 20-21, that early statute undermines rather than supports DOJ's argument because it confers a

*statutory* jury-trial right to the United States.  DOJ does not dispute that no such statutory right exists here.[12]

 *Finally*, this Court can easily reject DOJ's claim that this case's complexity is irrelevant to the Seventh Amendment question.  The Supreme Court itself has held that "the practical abilities and limitations of juries" bear on whether a Seventh Amendment right attaches.  *Ross* v. *Bernhard*, 396 U.S. 531, 538 n.10 (1970).  DOJ claims that this statement in *Ross* was relevant only to the question whether a claim was legal or equitable, but that is wrong—*Ross* made this statement in addressing whether "the nature of the issue to be tried" subjects it to the Seventh Amendment.  *Id.* at 538.  In any event, DOJ does not address the "unquestionable" evidence that a case's complexity was relevant to whether it would be tried to jury at common law, Patrick Devlin, *Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment*, 80 Colum. L. Rev. 43, 68 (1980), and does not address Hamilton's reference in Federalist 83 to the existence of "questions too complicated for a decision" by a "trial by jury," Federalist No. 83 at 528 (A. Hamilton) (B. Wright ed. 1961).  DOJ also does not and cannot dispute that this is an exceptionally complex case.  The novelty of DOJ's jury demand makes this a particularly appropriate case to consider complexity in evaluating whether to extend the Seventh Amendment here.

### III.  DOJ's Arguments About Consent to A Jury Trial Are Misplaced And Irrelevant.

 DOJ claims that Google "consented to a jury trial in this matter."  Opp. at 13.  But, as DOJ elsewhere acknowledges, Google demanded a jury trial only "on all issues so triable."  Opp. at 5

---

[12] DOJ's procedural objections to Prof. Hudson's declaration are similarly meritless.  Rule 44.1 applies where a party seeks to raise "an issue about a foreign country's law," Fed. R. Civ. P. 44.1, which is exactly what Google does here.  And courts have applied Rule 44.1, as here, where a foreign country's law informs the application of U.S. law.  *See ElcomSoft, Ltd.* v. *Passcovery Co.*, 958 F. Supp. 2d 616, 619 (E.D. Va. 2013) (applying Rule 44.1 to evaluate *forum non conveniens* question).

(quoting ECF No. 208 at 55-56).  And Google may unilaterally withdraw that consent given that DOJ lacks an underlying jury-trial right.  *See Kramer* v. *Banc of Am. Sec., LLC*, 355 F.3d 961, 968 (7th Cir. 2004) (defendant did not need consent to withdraw jury demand because the plaintiff "had no right to a jury trial"); *see also FN Herstal SA* v. *Clyde Armory Inc.*, 838 F.3d 1071, 1089 (11th Cir. 2016) ("When no right to a jury trial exists and where no prejudice will result, a party may unilaterally withdraw its consent to a jury trial."); *Martin v. Bimbo Foods Bakeries Distrib., Inc.*, 2016 WL 6459609, at *1 (E.D.N.C. 2016) (similar); *Morgan* v. *Ocean Warrior Fisheries, LLC*, 537 F. Supp. 3d 30, 34 (D. Me. 2021) (similar).  DOJ therefore errs in suggesting that this Court could "proceed to a jury trial in the absence of a damages claim" by relying on Google's consent.  Opp. at 13.

Moreover, DOJ acknowledges that this Court has discretion to allow withdrawal of consent and "defer[s] to the Court as to whether to proceed to a jury or bench trial,"  Opp. at 14, and concedes that it would suffer no prejudice from a bench trial.  DOJ appears to argue that Google must formally withdraw its consent, but the Seventh Circuit has explained that a party may "withdr[a]w that consent" by filing a "motion to strike [plaintiff's] jury demand," *Kramer*, 355 F.3d at 968, exactly as Google did here.

## CONCLUSION

For the foregoing reasons, and those in Google's opening brief, Google's Motion to Dismiss the United States' Damages Claim and to Strike the Jury Demand should be granted.

Dated: June 5, 2024

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Julie Elmer (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Scott A. Eisman (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Claire Leonard (*pro hac vice*)
Sara Salem (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*Counsel for Defendant Google LLC*

Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
 CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Kannon K. Shanmugam (*pro hac vice*)
Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB #93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
kdunn@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (202) 330-5908
mdearborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3387
Facsimile:  (212) 492-0387
ejmorgan@paulweiss.com

21