# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **United States of America, *et al.*,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No. 1:23cv00108 (LMB-JFA) |
| ) | |
| **Google LLC,** ) | |
| **Defendant.** ) | |

**DECLARATION OF JOHN GENTRY IN SUPPORT OF OPENX'S
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AND
DEFENDANT'S MOTIONS TO SEAL**

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. The evidence set out in this Declaration is based on my personal knowledge.

2. I am the current Chief Executive Officer (CEO) of OpenX Technologies, Inc. ("OpenX").

3. In my role as CEO, I am responsible for all aspects of OpenX's business.

4. In my role as CEO, I am generally aware of what information OpenX considers a trade secret or confidential information and the steps that OpenX takes to protect that information from disclosure to competitors and customers.

5. In my experience as CEO, OpenX has suffered competitive harm when its competitively sensitive information or trade secrets have been made available to its competitors or customers.

6. Because of this, OpenX, like many privately held companies, generally does not make its confidential information or trade secrets available to the public.

1

7. I have reviewed the information that has been made available to OpenX regarding what confidential OpenX information has been cited by the parties in their filings before this Court.

8. In my opinion as CEO of OpenX, the information included in these filings does contain OpenX's confidential information and trade secrets.

9. I understand that some of the information included in these filings was derived from OpenX's highly confidential internal data which OpenX does not make public but did provide to the parties pursuant to subpoenas and the Protective Order in this case.

10. I understand that some of the information included in these filings discusses OpenX's take rates, which OpenX considers extremely sensitive and does not make publicly available.

11. I understand that OpenX's confidential information is currently filed under seal and is the subject of Motions by the Plaintiffs and Defendants to keep this information under seal.

12. In the event OpenX's confidential information were no longer under seal and were made available to the public, OpenX would suffer substantial commercial harm.

13. If information about OpenX's take rates, revenues, spending, and business strategy were made available to OpenX's competitors, those competitors could use the information to encourage OpenX's customers to end their relationships with OpenX and work with OpenX's competitors instead.

14. Specifically, OpenX's competitors could use the revenue and spending data in the sealed materials to gain insight into OpenX's internal corporate strategies and operations. Public disclosure of such information could give competitors insight into how OpenX operates its ad exchange, allowing them to adapt their own exchanges to capture a larger share of the market.

15. Our competitors may also choose to alter the take rates they offer customers, or the features they provide to customers, in response to the confidential OpenX take rates contained in the sealed materials in an attempt to convince OpenX's customers to switch away from OpenX.

16. If information about OpenX's take rates, revenues, spending, and business strategy were made available to OpenX's customers, then OpenX's customers could demand new commercial terms in their relationships with OpenX that would be less favorable to OpenX.

17. For instance, if an OpenX customer became aware that OpenX was currently charging them a take rate above OpenX's average take rate for customers, they might demand OpenX decrease its take rate or cease their relationship with OpenX.

18. OpenX's take rate varies among customers based on a number of complex business considerations, so disclosure of our historical take rate could lead to consumer confusion and damage our relationships with customers who were charged a higher rate.

19. In all such cases, the public release of OpenX's confidential information would create an asynchronous environment where OpenX's customers and competitors would gain access to OpenX's confidential information, but OpenX would not have the same access to other parties' confidential information.

20. Even in the event where OpenX's confidential information included in the parties' filings is historical, OpenX still stands to suffer competitive harm if the information were made available to the public.

21. Take rate information is considered highly confidential and commercially sensitive throughout the ad tech industry. As such, OpenX and its competitors closely guard such information, and disclosure of any take rate data—historical or otherwise—would result in a significant competitive disadvantage for the disclosing party.

22. In my experience as CEO, historical information about sensitive business aspects like take rates, revenues, and spending can still be used to gain a competitive advantage because competitors may claim to OpenX customers that such historical data can be used to more accurately predict current information on take rates, revenues, and spending and encourage OpenX customers to switch away from OpenX.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 13, 2024.

*John Gentry*

John Gentry