**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

UNITED STATES OF AMERICA, et al.,

                   Plaintiffs,

     v.                                    No. 1:23-cv-00108-LMB-JFA

GOOGLE LLC,

                   Defendant.

---

**NON-PARTY PUBMATIC, INC.'S MEMORANDUM IN SUPPORT OF CONTINUED SEALING OF LIMITED PORTIONS OF SUMMARY JUDGMENT AND DAUBERT SUBMISSIONS**

Pursuant to Local Civil Rule 5 and the Court's scheduling order (Dkt. No. 728), non-party PubMatic, Inc. ("PubMatic") hereby requests that the Court continue to protect from public view:

> (1) a highly confidential one-page excerpt from a PubMatic board presentation that Defendant Google, LLC filed on the docket (Dkt. No. 599-3); and

> (2) citations to and descriptions of highly confidential and commercially sensitive PubMatic data in briefs, expert reports, and expert deposition transcripts that the parties filed in connection with summary judgment and/or Daubert motion practice.

In making this submission, PubMatic relies entirely on the parties' descriptions and disclosures of their use of PubMatic documents and information because PubMatic and its counsel are unable to view sealed filings in this case. Hence, PubMatic also reserves the right to seek sealing of additional references to confidential information or documents it has provided, once it has had an opportunity to review any un-sealed materials filed after the Court renders its decision on the sealing applications before it.

## I.     **FACTUAL BACKGROUND**

PubMatic participates in the digital advertising market in a variety of ways, principally by operating a supply-side platform. As such, PubMatic both competes with Google and relies on Google as a counter-party and business partner. PubMatic is not a party to any litigation—with Google or otherwise—concerning alleged monopolization in the digital advertising market. PubMatic has, however, received and complied with multiple subpoenas and a civil investigative demand in this and other related proceedings. PubMatic has always taken care to ensure the maximum possible confidentiality protection in this context, because much of the material it has produced is of the greatest competitive sensitivity. Most sensitive of all are "take rates," which measure the share of a publisher's revenue that a supply-side platform "takes" in exchange for its services. This price information is among the most highly confidential and carefully protected pieces of information in the digital advertising market. PubMatic does not disclose its take rates, which are specifically negotiated and agreed with individual publisher partners. Disclosure of PubMatic's take rates to its competitors would cause acute competitive harm by allowing those competitors profoundly asymmetrical information on PubMatic's pricing.

This application concerns (1) a one-page excerpt from a board presentation dated January 29, 2019 ("Board Presentation Excerpt"), that PubMatic understands Google to have filed in support of its motion for summary judgment, its Daubert motions, or both (*see* Dkt. No. 599-3), and (2) certain specific passages in briefs, expert reports, and expert deposition transcripts filed by the parties that quote, cite, or otherwise refer to highly confidential PubMatic data and documents ("Highly Confidential References").

(1) <u>With respect to the Board Presentation Excerpt</u>: PubMatic produced the document from which this excerpt was extracted to the Department of Justice in August 2020, in

compliance with a civil investigative demand. When it did so, PubMatic requested (and stamped on every produced page) that the produced documents be treated as confidential and afforded confidential treatment under FOIA—*i.e.*, maximum confidentiality protection. PubMatic understands that the Government subsequently produced this document (with the rest of PubMatic's production in response to that CID) to Google in connection with this lawsuit in a way that preserved PubMatic's Bates-stamped requests for confidentiality and FOIA protection.

The Board Presentation Excerpt contains confidential information intended for high-level strategic discussion by PubMatic's board in the context of a complex and fast-evolving market. The specific page filed by Google at Docket Number 599-3 compares PubMatic's "take rates" over a two-and-a-half-year period with that of a specific competitor, across different geographic areas. The sensitivity of this information is not materially diminished by the fact that the take rates in the Board Presentation Excerpt are from 2019, because many take rates are contractually negotiated and remain unchanged for years. Nor is the sensitivity materially diminished when take rates are presented in the aggregate, because other market participants can still glean competitively significant information from such data to PubMatic's disadvantage.

Accordingly, publication of PubMatic's take rates, including at the aggregate and regional level, would impose a significant competitive disadvantage on the Company.

(2) With respect to Highly Confidential References in briefs, expert reports, and depositions: PubMatic has been informed by Google and the Department of Justice of numerous references to information reflecting or derived from documents and data produced by PubMatic and marked "Highly Confidential," in the various briefs, expert reports, and exhibits filed in connection with Google's summary judgment and Daubert motions. (Just as it did for materials produced to the Department of Justice in response to the CID, PubMatic designated the materials

produced in response to subpoenas in this action as "Highly Confidential" both in its production correspondence and in the labeling of documents for production.) Based on the descriptions of those references provided by the parties, PubMatic asks the Court to maintain sealing of a subset of those passages reflected in the list below at pages 9 to 19.

The references for which PubMatic seeks continued sealing fall generally into three categories. Some disclose information about PubMatic's take rates, which are highly sensitive for the reasons described above. Some disclose other features of PubMatic's competitive performance, including the number of ad impressions transacted in particular regions and time-periods, specific revenues generated by those sales, and market shares vis-à-vis competitors in those regions and time-periods. And, some references disclose aspects of PubMatic's financial performance that are not otherwise public, including from the period before it became a public company.

PubMatic does not seek sealing of references to generalized descriptions of the market's structure, or to certain financial information that has been made public in other venues or that is of limited competitive sensitivity (such as aggregate historical revenue or profit).

The specific references for which PubMatic seeks continued sealing are set forth in Part III.A.2 below.

*     *     *

Because PubMatic cannot view sealed filings on the docket, the descriptions herein—and hence the scope of the sealing requested—are guided entirely by disclosures made by the parties. PubMatic relies on the completeness of those disclosures in this submission. In light of the number and complexity of the parties' recent filings, however, PubMatic plans to review whatever materials are unsealed following the Court's determination of the sealing motions

4

before it. PubMatic hopes that the Court will consider any renewed request for sealing that may become necessary if it emerges that additional references to competitively sensitive PubMatic documents or information have been omitted from the parties' guidance to PubMatic and hence from this submission.

## II.   <u>LEGAL STANDARD</u>

The public has a qualified right of access to judicial documents and records, springing from both the common-law right of access to court proceedings and the First Amendment. *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). Sealing of selected records is nevertheless appropriate upon a "showing that countervailing interests heavily outweigh the public interests in access" (with respect to the common-law right of access) or a showing that a "compelling government interest" outweighs access (with respect to the First Amendment right of access). *Id.* at 265–66 (quotation marks omitted).

A court called upon to adjudicate a sealing request must "first [] determine the source of the right of access with respect to each document." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) (quotation marks omitted). In general, documents filed in connection with summary judgment briefing are analyzed under the stricter First Amendment standard, *id.* at 578, whereas those filed in connection with Daubert motions are analyzed under the more lenient common-law standard, *see, e.g.*, *Kadel v. Folwell*, 620 F. Supp. 3d 339, 391 (M.D.N.C. 2022); *Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, 1:20CV472, 2023 WL 1069744, at *1–2 (M.D.N.C. Jan. 27, 2023).

Here, PubMatic in many cases does not know whether the Board Presentation Excerpt or the Highly Confidential References were submitted in connection with summary judgment or Daubert briefing. (*See, e.g.*, Dkt. No. 581 ¶¶ 1, 36 (Google attorney declaration identifying

Board Presentation Excerpt as among documents filed in support of either "Google's Motion for Summary Judgment" or "Google's Motion[s] to Exclude" testimony, but not specifying which).) The applicable standard makes no difference, however, because the circumstances here plainly support sealing under either one.

### III.   ARGUMENT

#### A.   THE SUBSTANTIVE REQUIREMENTS FOR SEALING HAVE BEEN SATISFIED

##### (1)   The Board Presentation Excerpt Should Remain Sealed

The Board Presentation Excerpt should remain sealed because PubMatic's strong interest in protecting its highly sensitive commercial information—and the Government's interest in encouraging cooperation with its investigations, including through compliance with civil investigative demands—outweighs any *de minimis* interest the public may have in a single page in a single document created to facilitate strategic deliberation within a private, non-party company.[1]

To the extent that Google filed the Board Presentation Excerpt in connection with summary judgment briefing—such that the First Amendment presumption of access is the applicable standard—the public's interest in access may nevertheless give way in the face of "a person or corporate entity's property interest in" valuable confidential information. *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 581 (E.D. Va. 2009) (protecting trade secrets); *see also Doe*, 749 F.3d at 269 (recognizing, in context of evaluating scope of First Amendment right of access, that "corporation may possess a strong interest in

---

[1] PubMatic conducted its initial public offering of shares on December 9, 2020. The Board Presentation Excerpt was created prior to that date, during the period when PubMatic was privately held.

preserving the confidentiality of its proprietary and trade-secret information"); *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 766 (E.D. Va. 2018) ("protecting proprietary commercial information can be a compelling interest under the First Amendment test").

The Board Presentation Excerpt was prepared for internal strategic purposes and contains highly sensitive business data, information, and strategy. This sensitive information includes take rates, which are among PubMatic's absolutely most sensitive information. It would be acutely unfair—and deeply ironic—for litigation aimed at protecting competition in the market for digital advertising to result in disclosure of competitively sensitive information to the detriment of the very market participants the government may argue were disadvantaged by Google's conduct. Hence, the content of the Board Presentation Excerpt is precisely the sort of confidential business information courts in this District regularly leave sealed notwithstanding any First Amendment right of access. *See, e.g.*, *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2014 WL 12659953, at *1 (E.D. Va. Dec. 22, 2014) ("sensitive business information" appended to summary judgment motion could remain under seal where, *inter alia*, defendant's "competitive position might be impaired if this information [were] disclosed to the public at large"); *see also* Dkt. No. 606 at 6–7 (Google's memorandum; collecting cases).

Because sealing would be appropriate even under a First Amendment analysis, it follows *a fortiori* that sealing would be appropriate if the Board Presentation Excerpt were filed in connection with Google's Daubert motions and thus the more forgiving common-law analysis applied. *See Level 3 Commc'ns*, 611 F. Supp. 2d at 577 (common-law presumption may be outweighed where court files would otherwise "serve as sources of business information that might harm a [company's] competitive standing" (quotation marks and alterations omitted)); *see generally In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

### (2)   The Highly Confidential References Should Remain Sealed

As set forth above, portions of the briefs, expert reports, and deposition transcripts that
the parties submitted in connection with their summary judgment or Daubert submissions rely
on, reflect, and reproduce PubMatic's sensitive documents and data. The legal basis for sealing
these Highly Confidential References is essentially the same as for sealing the Board
Presentation Excerpt: they contain or reflect non-public information whose disclosure would be
likely to cause PubMatic competitive harm. *See, e.g.*, *Intelligent Verification Sys.*, 2014 WL
12659953, at *1 (E.D. Va. Dec. 22, 2014) (First Amendment presumption of access overcome
where, *inter alia*, defendant's "competitive position might be impaired if this information [were]
disclosed to the public at large"); *Lifenet Health v. Lifecell Corp.*, Civil Action No. 2:13cv486,
2015 WL 12157430, at *4 (E.D. Va. Feb. 12, 2015) (First Amendment presumption of access
"overc[o]me," where, *inter alia*, "document contain[ed] confidential and proprietary commercial
information . . . belonging to the parties *as well as nonparties* . . ." (emphasis added) (quotation
marks omitted)).[2]

The Highly Confidential References are quintessentially protectible information. They
contain, analyze, or summarize not only the take rates described above (which amount to
PubMatic's most sensitive pricing information) but also volume, revenue, profit, and (at least
impliedly) cost data, much of it broken out into specific regions and time-periods. As noted
above, disclosure to PubMatic's competitors would cause acute competitive harm by putting
PubMatic in a position where its competitors have unjustified and asymmetrical information on

---

[2] From the information provided to PubMatic by the parties, it appears that many or most of the
Highly Confidential References occur in filings made in connection with Google's Daubert
motions. Public access to such filings is governed by the less stringent, common-law standard.
*See Kadel*, 620 F. Supp. 3d at 391. However, like the Board Presentation Excerpt, the Highly
Confidential References are eligible for continued sealing under either standard.

PubMatic's pricing, costs, and auction results.

The specific quotations, citations, and references for which PubMatic seeks continued sealing are listed below, along with the reasons justifying continued sealing of those references, based on descriptions provided by the parties. (For purposes of this filing, which PubMatic is making publicly, we have avoided direct quotation of the specific confidential information even in the handful of instances where the parties have provided the text of the filings themselves. We respectfully refer the Court to that text, which—at the risk of repetition—PubMatic is not able to access from the docket.)

| Filing | Citation | Description and Basis for Sealing of PubMatic Information |
|---|---|---|
| Google LLC's Memorandum of Law in Support of its Motion for Summary Judgment (Dkt. No. 571)[3] | Page 7 ¶ 26 | Discloses PubMatic's relative "fee" (i.e., its relative take rate) for the period 2015–22 |
| Memorandum of Law in Support of Google LLC's Motion to Exclude Testimony of Dr. Timothy Simcoe (Dkt. No. 580) ("Simcoe Motion") | Page 6 n.4 | Discloses PubMatic's prices relative to other ad exchanges |
| Simcoe Motion | Page 18 n.8 | Discloses PubMatic's weighted average "revenue share"[4] |
| Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 597-1) ("Lee Report, as Filed by Google"), Exhibit 1 to Declaration of Bryon Becker ("Becker Declaration") in Support of Google LLC's Motion for | Page 199, Figure 47 | Discloses PubMatic's share of worldwide indirect open-web display impressions transacted through ad exchanges for the period 2018–22

*Note: This citation is one of four instances in which the parties cited this page/figure. See infra.* |

---

[3] Unless otherwise specified, all citations in this table are to the sealed docket entries, not to the redacted or slip-sheeted versions filed on the docket.

[4] "Revenue share" is often used synonymously with "take rate."

| Summary Judgment and Motions to Exclude[5] | | |
|---|---|---|
| Lee Report, as Filed by Google | Page 200, Figure 48 | Discloses PubMatic's share of worldwide indirect open-web display impressions among ad exchanges in 2022<br><br>*Note: This citation is one of three instances in which the parties cited this page/figure. See infra.* |
| Lee Report, as Filed by Google | Page 201 n.703 | Discloses number of indirect open-web display impressions served by PubMatic to U.S. users<br><br>*Note: This citation is one of three instances in which the parties cited this page/figure. See infra.* |
| Lee Report, as Filed by Google | Page 203, Figure 49 | Discloses PubMatic net revenue[6] from sale of worldwide indirect open-web display impressions for the period 2018–22<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
| Lee Report, as Filed by Google | Page 203 | Discloses ratio of PubMatic net revenue[7] to that of Google AdX |
| Lee Report, as Filed by Google | Page 204, Figure 50 | Discloses PubMatic's share of ad exchange fees from worldwide indirect open-web display transactions for the period 2018–22 |

---

[5] Where citations to expert reports and/or deposition transcripts are listed in multiple places in this chart, with an identification of the party that filed that report or transcript, one party or the parties both filed that report or transcript in connection with *multiple* submissions, sometimes attaching different excerpts thereof.

[6] "Net revenue" is often used synonymously with "take rate."

[7] "Net revenue" is often used synonymously with "take rate."

|  |  | *Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
| --- | --- | --- |
| Lee Report, as Filed by Google | Page 205, Figure 51 | Discloses PubMatic's share of ad exchange fees from worldwide indirect open-web display transactions in 2022<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
| Lee Report, as Filed by Google | Page 214, Figure 54 | Discloses PubMatic take rates for worldwide open-web indirect display transactions |
| Lee Report, as Filed by Google | Page D-3, Figure 90 | Discloses PubMatic's share of U.S. indirect open-web display impressions transacted through ad exchanges for the period 2018–22 |
| Lee Report, as Filed by Google | Page D-4, Figure 91 | Discloses PubMatic's share of U.S. indirect open-web display impressions in 2022 |
| Lee Report, as Filed by Google | Page D-5, Figure 92 | Discloses PubMatic net revenues[8] from sale of U.S. indirect open-web display impressions for the period 2018–22 |
| Lee Report, as Filed by Google | Page D-6, Figure 93 | Discloses PubMatic's share of ad exchange fees from United States in indirect open-web display impressions for the period 2018–22 |
| Lee Report, as Filed by Google | Page D-7, Figure 94 | Discloses PubMatic's share of ad exchange fees from U.S. indirect open-web display transactions in 2022 |
| Lee Report, as Filed by Google | Page D-8, Figure 95 | Discloses PubMatic's share of worldwide indirect open-web display through ad exchanges for the period 2018–22 |
| Lee Report, as Filed by Google | Page D-9, Figure 96 | Discloses PubMatic's share of U.S. indirect open-web display spend |

---

[8] "Net revenue" is often used synonymously with "take rate."

| | | |
|---|---|---|
| Lee Report, as Filed by Google | Page E-2, Figure 110 | Discloses PubMatic's open-web indirect display take rates, in comparison to other ad exchanges<br><br>*Note: This citation is one of three instances in which the parties cited this page/figure. See infra.* |
| Lee Report, as Filed by Google | Page G-1, Figure 122 | Discloses PubMatic's share of worldwide indirect open-web display impressions transacted through ad exchanges, for the period 2018–22 |
| Lee Report, as Filed by Google | Page G-2, Figure 123 | Discloses PubMatic's share of ad exchange fees from worldwide indirect open-web display transactions for the period 2018–22 |
| Lee Report, as Filed by Google | Page G-3, Figure 124 | Discloses PubMatic's share of U.S. indirect open-web display impressions transacted through ad exchanges for the period 2018–22 |
| Lee Report, as Filed by Google | Page G-4, Figure 125 | Discloses PubMatic's net revenues[9] from the sale of U.S. indirect open-web display impressions for the period 2018–22 |
| Report of Plaintiffs' Expert Rosa M. Abrantes-Metz (Dkt. No. 597-2), Exhibit 2 to Becker Declaration | Page 242, Figure 30 | Discloses PubMatic's take rates for specific dates |
| Rebuttal Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 597-3), Exhibit 3 to Becker Declaration | Page B-26, Figure 88 | Discloses PubMatic's worldwide spending and impressions on GAM open bidding in 2022 |
| Report of Plaintiffs' Expert Timothy Simcoe (Dkt. No. 597-5) ("Simcoe Report, as Filed by Google"), Exhibit 5 to Becker Declaration | Page 39 | Discloses PubMatic's CPM and its relative place among exchanges of average price per worldwide open web display impression sold for the period 2018–21 (discussing Figure 7, *infra*) |

[9] "Net revenue" is often used synonymously with "take rate."

| | | |
|---|---|---|
| Simcoe Report, as Filed by Google | Figure 4 | Discloses PubMatic's effective take rates for worldwide open web display and video outstream impressions<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
| Simcoe Report, as Filed by Google | Figure 7 | Discloses PubMatic's average spend per 1,000 worldwide impressions for the period 2018–21<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
| Simcoe Report, as Filed by Google | Figure 8 | Discloses average take rates and CPM for PubMatic and other exchanges<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
| Transcript of Deposition of Plaintiffs' Expert Robin S. Lee (Dkt. No. 597-7) ("Lee Deposition, as Filed by Google"), Exhibit 8 to Becker Declaration | Pages 240:10–241:11 | Discloses and characterizes PubMatic take rates |
| Lee Deposition, as Filed by Google | Pages 242:8–243:13 | Discloses and characterizes PubMatic take rates, including by citing a specific take rate and describing changes in PubMatic's take rates over time |
| Board Presentation Excerpt (Dkt. No. 599-3) | --- | *Listed for completeness here, but discussed elsewhere in this submission. See supra.* |

| Report of Google's Expert Judith A. Chevalier (Dkt. No. 599-6) ("Chevalier Report, as Filed by Google"), Exhibit 38 to Becker Declaration | Page 46, Figure 10 | Discloses PubMatic's worldwide average revenue share[10] for the period January 2019 – March 2023 |
|---|---|---|
| Chevalier Report, as Filed by Google | Page 73, Figure 17 | Discloses PubMatic's data among set of worldwide "[c]ompeting [e]xchanges['] gross revenue" |
| Rebuttal Report of Plaintiffs' Expert Timothy Simcoe (Dkt. No. 604-2), Exhibit 93 to Becker Declaration | Figure 3 | Discloses PubMatic take rates in comparison of actual and hypothetical, but-for markets |
| Report of Plaintiffs' Expert Timothy Simcoe (Dkt. No. 644-1) ("Simcoe Report, as Filed by Plaintiffs re Simcoe Motion"), Exhibit A to Plaintiffs' Opposition to Google's Motion to Exclude Testimony of Dr. Timothy Simcoe ("Plaintiffs' Opposition re Simcoe Motion") | Figure 4 | Discloses PubMatic's effective take rates for worldwide open web display and video outstream impressions<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
| Simcoe Report, as Filed by Plaintiffs re Simcoe Motion | Figure 5 | Discloses PubMatic's worldwide open web display impressions |
| Simcoe Report, as Filed by Plaintiffs re Simcoe Motion | Figure 7 | Discloses PubMatic's average spend per 1,000 worldwide impressions for the period 2018–21<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
| Simcoe Report, as Filed by Plaintiffs re Simcoe Motion | Figure 8 | Discloses average take rates and CPM for PubMatic and other exchanges |

---

[10] "Revenue share" is often used synonymously with "take rate."

| | | |
|---|---|---|
| | | *Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
| Simcoe Report, as Filed by Plaintiffs re Simcoe Motion | Paragraphs 223–24 & Figure 15 | Discloses PubMatic's take rates in actual and hypothetical, but-for worlds<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
| Simcoe Report, as Filed by Plaintiffs re Simcoe Motion | Figure 54 | Discloses PubMatic's worldwide open-web indirect display take rates and relative market share for the period 2018–22 |
| Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 644-4) ("Lee Report, as Filed by Plaintiffs re Simcoe Motion"), Exhibit D to Plaintiffs' Opposition re Simcoe Motion | Page 199, Figure 47 | Discloses PubMatic's share of worldwide indirect open-web display impressions transacted through ad exchanges for the period 2018–22<br><br>*Note: This citation is one of four instances in which the parties cited this page/figure. See supra, infra.* |
| Lee Report, as Filed by Plaintiffs re Simcoe Motion | Paragraph 519 | Discloses comparisons between PubMatic and competitor technology, capabilities, and price |
| Lee Report, as Filed by Plaintiffs re Simcoe Motion | Page E-2, Figure 110 | Discloses PubMatic's open-web indirect display take rates, in comparison to other ad exchanges<br><br>*Note: This citation is one of three instances in which the parties cited this page/figure. See supra, infra.* |
| Rebuttal Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 644-6) ("Lee Rebuttal Report, as Filed by Plaintiffs re Simcoe Motion"), Exhibit G to Plaintiffs' Opposition re Simcoe Motion | n.723 | Discloses discussion of analysis of PubMatic's worldwide average CPM of transactions and comparison to other market participants |

| Lee Rebuttal Report, as Filed by Plaintiffs re Simcoe Motion | Figure 29 | Discloses information regarding PubMatic's U.S. ad exchange fees for indirect web non-video advertising for the period 2020–22 *Note: This citation is one of two instances in which the parties cited this page/figure. See infra.* |
|---|---|---|
| Report of Expert Mark Israel (Dkt. No. 644-7) ("Israel Report"), Exhibit H to Plaintiffs' Opposition re Simcoe Motion | Paragraph 272, Figure 40 | Discloses PubMatic's share of U.S. DFP indirect web display (non-video) impressions, for the period 2019–22 |
| Israel Report | Figure 41 (and related discussion) | Discloses PubMatic's share of U.S. indirect open web display (non-video) exchange spending, for the period 2019–22 |
| Report of Google's Expert Judith A. Chevalier (Dkt. No. 644-13), Exhibit O to Plaintiffs' Opposition re Simcoe Motion | Page 48, Figure 11 | Discloses PubMatic's worldwide average revenue share[11] for the period January 2016 – March 2023 |
| Report of Plaintiffs' Expert Timothy Simcoe (Dkt. No. 652-12), Exhibit L to Plaintiffs' Opposition to Google's Motion to Exclude Testimony of Lim | Paragraphs 223–24 & Figure 15 | Discloses PubMatic's take rates in actual and hypothetical, but-for worlds *Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
| Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 663-1) ("Lee Report, as Filed by Plaintiffs re Lee Motion"), Exhibit A to Plaintiffs' Opposition to Google's Motion to Exclude Testimony of Lee ("Plaintiffs' Opposition re Lee Motion") | Page 199, Figure 47 | Discloses PubMatic's share of worldwide indirect open-web display impressions transacted through ad exchanges for the period 2018–22 *Note: This citation is one of four instances in which the parties cited this page/figure. See supra, infra.* |

---

[11] "Revenue share" is often used synonymously with "take rate."

| Lee Report, as Filed by Plaintiffs re Lee Motion | Page 200, Figure 48 | Discloses PubMatic's share of worldwide indirect open-web display impressions among ad exchanges in 2022<br><br>*Note: This citation is one of three instances in which the parties cited this page/figure. See supra, infra.* |
|---|---|---|
| Lee Report, as Filed by Plaintiffs re Lee Motion | Page 201 n.703 | Discloses number of indirect open-web display impressions served by PubMatic to U.S. users<br><br>*Note: This citation is one of three instances in which the parties cited this page/figure. See supra, infra.* |
| Lee Report, as Filed by Plaintiffs re Lee Motion | Page 203, Figure 49 | Discloses PubMatic net revenue[12] from sale of worldwide indirect open-web display impressions for the period 2018–22<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
| Lee Report, as Filed by Plaintiffs re Lee Motion | Paragraph 494 | Discloses PubMatic's relative net revenue shares[13] |
| Lee Report, as Filed by Plaintiffs re Lee Motion | Page 204, Figure 50 | Discloses PubMatic's share of ad exchange fees from worldwide indirect open-web display transactions for the period 2018–22<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
| Lee Report, as Filed by Plaintiffs re Lee Motion | Page 205, Figure 51 | Discloses PubMatic's share of ad exchange fees from worldwide indirect open-web display transactions in 2022 |

---

[12] "Net revenue" is often used synonymously with "take rate."

[13] "Revenue share" is often used synonymously with "take rate."

| | | *Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
|---|---|---|
| Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Opposition re MFSJ") (Dkt. No. 669) | Page 10 | Discloses PubMatic's market share and characterization of PubMatic's relative capabilities to competitors |
| Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 670-7) ("Lee Report, as Filed by Plaintiffs re MFSJ"), Exhibit 8 to Plaintiffs' Opposition re MFSJ | Page 199, Figure 47 | Discloses PubMatic's share of worldwide indirect open-web display impressions transacted through ad exchanges for the period 2018–22 <br><br> *Note: This citation is one of four instances in which the parties cited this page/figure. See supra.* |
| Lee Report, as Filed by Plaintiffs re MFSJ | Page 200, Figure 48 | Discloses PubMatic's share of worldwide indirect open-web display impressions among ad exchanges in 2022 <br><br> *Note: This citation is one of three instances in which the parties cited this page/figure. See supra.* |
| Lee Report, as Filed by Plaintiffs re MFSJ | Page 201 n.703 | Discloses number of indirect open-web display impressions served by PubMatic to U.S. users <br><br> *Note: This citation is one of three instances in which the parties cited this page/figure. See supra.* |
| Lee Report, as Filed by Plaintiffs re MFSJ | Page E-2, Figure 110 | Discloses PubMatic's open-web indirect display take rates, in comparison to other ad exchanges <br><br> *Note: This citation is one of three instances in which the parties cited this page/figure. See supra.* |
| Transcript of Deposition of Plaintiffs' Expert Robin S. Lee (Dkt. No. 670-25) ("Lee Deposition, as Filed | Pages 298:6–299:14 | Discloses PubMatic's relative market share and sensitive corporate technological innovations and information |

| by Plaintiffs re MFSJ"), Exhibit 26 to Plaintiffs' Opposition re MFSJ | | |
|---|---|---|
| Rebuttal Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 673-16) ("Lee Rebuttal Report, as Filed by Plaintiffs re MFSJ"), Exhibit 116 to Plaintiffs' Opposition re MFSJ | Figure 29 | Discloses information regarding PubMatic's U.S. ad exchange fees for indirect web non-video advertising for the period 2020–22<br><br>*Note: This citation is one of two instances in which the parties cited this page/figure. See supra.* |
| Lee Rebuttal Report, as Filed by Plaintiffs re MFSJ | Figure 30 | Discloses information regarding PubMatic's U.S. indirect web non-video take rates for the period 2020–22 |
| Google LLC's Reply in Support of its Motion to Exclude Testimony of Dr. Timothy Simcoe (Dkt. No. 707) | Page 13 n.10 | Discloses PubMatic's weighted average revenue share[14] |
| Report of Plaintiffs' Expert Robin S. Lee (Dkt. No. 709-1), Exhibit 127 to Declaration of Bryon Becker in Support of Google LLC's Replies in Support of Google LLC's Motion for Summary Judgment and Motions to Exclude | Appendix H.1 | Discloses identifier of PubMatic's data for purposes of expert analysis |

## B.   THE PROCEDURAL REQUIREMENTS FOR SEALING HAVE BEEN SATISFIED

In an abundance of caution, PubMatic also notes that, as the parties have set forth in their own motions to seal, the procedural requirements for sealing are satisfied here. (*See, e.g.*, Dkt. No. 606 at 3–4.)

---

[14] "Revenue share" is often used synonymously with "take rate."

*First*, the parties have provided "public notice of the request[s] to seal" (Dkt. Nos. 607, 645, 653, 664, 676, 714, 716, 741) and the Court has provided "a reasonable opportunity to challenge the request" (Dkt. Nos. 621, 728). *Va. Dep't of State Police*, 386 F.3d at 576; *see* E.D. Va. Local Civ. R. 5(C).

*Second*, sealing the Board Presentation Excerpt and the portions of expert reports and deposition transcripts that invoke PubMatic's ad data—and any related discussions in the motion papers—would not shield more than is necessary to safeguard PubMatic's interests. *See supra* Part III.A; *Va. Dep't of State Police*, 386 F.3d at 576; E.D. Va. Local Civ. R. 5(C).

*Third*, PubMatic has filed a proposed order herewith. *Va. Dep't of State Police*, 386 F.3d at 576; E.D. Va. Local Civ. R. 5(C).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, PubMatic respectfully submits that the Court should maintain the seal over (1) the Board Presentation Excerpt (Dkt. No. 599-3), (2) any portions of filed expert reports and/or deposition transcripts that cite, describe, analyze, or discuss PubMatic's ad data, including those cited above, and (3) any portions of currently redacted motion papers that reference (1)–(2). A proposed order is submitted herewith.

**[Remainder of Page Intentionally Blank]**

Dated:  Alexandria, Virginia
      June 14, 2024

CARMICHAEL ELLIS & BROCK, PLLC      CLARICK GUERON REISBAUM LLP

By:  /s/William Wirt Brock, IV
      William Wirt Brock, IV
      (VSB# 67985)
      108 N. Alfred Street, 1st Floor
      Alexandria, Virginia 22314
      (703) 684-7908
      703-649-6360 (fax)
      wirt@carmichaellegal.com

By:  /s/Issac B. Zaur
      Isaac B. Zaur (*pro hac vice* forthcoming)
      Nicole Gueron (*pro hac vice* forthcoming)
      Alexander D. Bernstein (*pro hac vice* forthcoming)
      220 Fifth Avenue, 14th Floor
      New York, New York 10001
      (212) 633-4310
      izaur@cgr-law.com
      ngueron@cgr-law.com
      abernstein@cgr-law.com

*Attorneys for PubMatic, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2024, I electronically filed the foregoing Memorandum in Support of Continued Sealing of Limited Portions of Summary Judgment and Daubert Submissions with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for the other parties who have appeared in the case.

      s/William Wirt Brock, IV
      (VSB #67985)
      CARMICHAEL ELLIS & BROCK, PLLC
      108 N. Alfred Street, 1st Floor
      Alexandria, Virginia 22314
      703-684-7908
      703-649-6360 (fax)
      wirt@carmichaellegal.com
      *Attorney for PubMatic, Inc.*