UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>    *Plaintiff*,<br><br>v.<br><br>GOOGLE LLC,<br><br>    *Defendant*. | No: 1:23-cv-00108-LMB-JFA |

**NON-PARTY THE INTERPUBLIC GROUP OF COMPANIES, INC.'S
MEMORANDUM OF LAW IN RESPONSE TO GOOGLE'S AND PLAINTIFFS'
MOTIONS TO SEAL**

Pursuant to Local Civil Rule 5(C), non-party The Interpublic Group of Companies, Inc. ("IPG") submits this Memorandum of Law in response to Defendant Google's and Plaintiffs' Motions to Seal Exhibits for Briefing on Summary Judgment and Motions to Exclude Expert Testimony. Pursuant to this Court's Order (ECF No. 728) regarding responses to the Motions to Seal Exhibits for Briefing on Summary Judgment and Motions to Exclude Expert Testimony at ECF Nos. 592, 605, 612, 642, 648, 651, 661, 667, 698, 712, 715, and 719, IPG responds in support of these Motions to Seal. IPG seeks to permanently seal limited portions of Defendant's Exhibits 67, 71, 74, and 142, and of Plaintiffs' Exhibits 68, 76, 78, 93, 170, and Lim Exhibit F containing IPG's confidential information as denoted by blue and brown highlighted redactions submitted herewith as Attachments A-J[1] to Declaration of William H. Crosby (hereafter Declaration or Decl.).

---

[1] IPG understands that Plaintiffs are filing identical redacted exhibits with the Court (with the exception of Lim Exhibit F) and is following this approach pursuant to the request of Plaintiffs made to IPG on June 12, 2024. IPG also request the opportunity to respond further if any party moves to unseal any information IPG has sought be permanently sealed.

1

For the reasons stated below, IPG respectfully requests that the Court permanently seal the redactions proposed by IPG as reflected in Attachments A-J submitted herewith, which are necessary to protect the competitively sensitive financial terms of IPG's client contracts; other non-public and sensitive contractual or commercial terms; performance metrics and key-performance indicators; commercially sensitive strategies of IPG or which IPG has designed for its clients; and personal information for IPG employees, including names and email addresses.

## LEGAL STANDARD

With respect to a request to seal documents the Court "must determine the source of the right of access with respect to each document." *Stone* v. *Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police* v. *Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). "While the common law presumption in favor of access attaches to all judicial records and documents, the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone*, 855 F.2d at 180.

Despite a presumption to public access, a company's "strong interest in preserving the confidentiality of its proprietary and trade-secret information . . . may justify partial sealing of court records." *Doe* v. *Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). A non-party, such as IPG, should not have its confidential information, which was produced pursuant to a third-party subpoena, disclosed to the public. Procedurally, before allowing documents to be filed under seal, the Court must "(1) provide public notice of the request to seal and allow interested parties

a reasonable opportunity to object,[2] (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft* v. *Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). A memorandum supporting a request to seal shall include:

> (1) A non-confidential description of what material has been filed under seal;
> (2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request;
> (3) References to the governing case law, an analysis of the appropriate standard to be applied for that specific filing, and a description of how that standard has been satisfied; and
> (4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and how the matter is to be handled upon unsealing.
>
> U.S.D.C. E.D. Va. Local Civil Rule 5(C).

## DISCUSSION

IPG seeks to permanently seal information redacted with blue and brown highlighting in Attachments A-J, which include IPG's competitively sensitive financial terms of IPG's client contracts; other non-public and sensitive contractual or commercial terms; performance metrics and key-performance indicators; commercially sensitive strategies of IPG or which IPG has designed for its clients; and personal information of IPG employees that is not relevant to the subject matter of this litigation.

Public disclosure of the non-public financial terms of IPG commercial agreements with its clients, including rates, pricing, volume commitments, discounts, invoice amounts, and other sensitive contractual terms would put IPG at a disadvantage in future negotiations with other

---

[2] Google and Plaintiffs each filed a public Notice for each Motion to Seal. This Court extended the deadline for responses to June 14, 2024, to allow interested parties a reasonable opportunity to respond (ECF. No. 728).

clients. Disclosure would also provide competitors of IPG with an advantage competing with IPG for future business opportunities and could harm competition and clients. (Decl. at 4).

Public disclosure of other non-public negotiated contractual terms and conditions, including the end dates of contracts and any extension terms, could harm IPG because this information would reveal the timing of future contract negotiations with IPG's customers, allowing competitors of IPG a competitive advantage in future contract negotiations. (Decl. at 5).

Public disclosure of other non-public, sensitive information about IPG's work on behalf of its clients, including performance benchmarks and criteria, key performance indicators, media buying campaigns costs, and other financial metrics would be harmful to IPG, its clients and to competition because it would reveal IPG's costs of services and sensitive information on the performance of IPG's ad campaigns for customers. (Decl. at 6).

IPG's confidential business strategies, including details of advertising strategies and campaign tactics set forth in presentations and statements of work or other campaign documents, whether designed for or proposed to customers, are commercially sensitive and reflect IPG's proprietary intellectual property and constitute IPG's trade secrets. Public disclosure of such information would put IPG at a competitive disadvantage because it would provide competitors with insights into IPG's proprietary and sensitive commercial and campaign strategies. (Decl. at 7). Where IPG's denoted confidential information includes personal information for IPG employees, including names and email addresses, this is information that is not normally available to the public and has no bearing on the merits of the case, public disclosure of which could be disruptive to IPG's business activities. (Decl. at 8).

The harm that would result from the disclosure of the confidential and commercially sensitive information outweighs any public interest in access to the information. The public

interest in transparency must be balanced against the legitimate interests of the parties involved. In this case, the harm to IPG from disclosure far outweighs any public interest in accessing the documents, as the documents contain competitively sensitive information, and the public is still able to discern the meaning of the redacted exhibits. Thus, permanent sealing of these limited portions of the exhibits in the form of Attachments A-J is appropriate under both the First Amendment and common-law standards. IPG takes no position on whether the remaining materials that are the subject of the Motions to Seal should remain sealed.

A. **Non-Confidential Description of IPG's Material to be Sealed.**

IPG submits the following non-confidential descriptions of the information that it seeks to protect pursuant to the proposed redactions.

| Exhibit | Relevant Motion | Description of Document | Description of Confidential Information |
|---|---|---|---|
| PX68 CMS-ADS-1139301 | 5.17 DOJ Oppositions | CMS authorization to Weber Shandwick to make ad buys in 2021. | p. 2-3 - competitively sensitive financial terms of IPG's client contracts; p. 2 - contact information for IPG employees, including names and email addresses. |
| PX76 CMS-ADS-041988 | 5.17 DOJ Oppositions | 2019-2020 Paid Media Plan for HealthCare.gov Open Enrollment Campaign. | p. 3-4, 8-10 - commercially sensitive strategies of IPG or which IPG has designed for its client; p. 5-7, 9, and 11 - competitively sensitive financial terms of IPG's client contract. |
| PX 78 USPS-ADS-064864 | 5.17 DOJ Oppositions | FY'22 Holiday Media Recommendation for USPS. | p. 5, 8, 13, 16-17 - competitively sensitive financial information; p. 7, 9- 10, 12, 16-17 - commercially sensitive strategies of IPG or which IPG has designed for its clients. |
| PX 93 CMS-ADS-11868 | 5.17 DOJ Oppositions | Attachment 1 – Task Order Document; exhibit to Umbrella IDIQ Contract. | p. 2-3, 8-9 - competitively sensitive financial terms of IPG's client contracts; other non-public and sensitive contractual or commercial terms; performance metrics and key-performance indicators. |
| PX170 CMS-ADS-380931 | 5.17 DOJ Oppositions | Email exchange between CMS and Universal McCann | p. 2 - contact information for IPG's employees, including names and email addresses. |

| Exhibit | Relevant Motion | Description of Document | Description of Confidential Information |
|---|---|---|---|
| | | with a signed Letter of Agency. | |
| Lim Ex. F. | 5.17 DOJ Oppositions | Daubert exhibit (Lim Exhibit F). | p. 42-67 - competitively sensitive financial terms of IPG's client contracts. |
| DX 67 CMS-ADS-0000373744 | 4.26 Google MSJ & Daubert | Email Exchange between CMS and Universal McCann. | p. 2-3 - contact information for IPG employees, including names and email addresses; p. 2 - performance metrics and key-performance indicators. |
| DX 71 USPS-ADS-902290 | 4.26 Google MSJ & Daubert  5.17 DOJ Oppositions | Internal USPS email attaching T&Cs, Master Contract with Universal McCann. | p. 3, 18-20 personal information for IPG employees, including names and email addresses; p. 3-6, 9, 12-17 - other non-public and sensitive contractual or commercial terms; p. 4, 17 - competitively sensitive financial terms of IPG's client contracts. |
| DX 74 CMS-ADS-0000018746 | 4.26 Google MSJ & Daubert | Task Order Award email from CMS. Summary of award amounts and a conflict of information form and statement of work. | p. 2-3 - contact information for IPG employees, including names and email addresses; p. 2-6 - competitively sensitive financial terms of IPG's client contracts; other non-public and sensitive contractual or commercial terms. |
| DX 142 USPS-ADS-0000669681 | 4.26 Google MSJ & Daubert | UM Bill to USPS Feb. 2022. | p. 2-35 - competitively sensitive financial terms of IPG's client contracts. |

**B. Sealing Is Necessary, Another Procedure Will Not Suffice, As IPG Provides Appropriate Evidentiary Support For The Sealing Request.**

The exhibits redacted with blue and brown highlighting in Attachments A-J to the Declaration submitted herewith contain IPG's highly confidential financial information that, if disclosed, would cause irreparable harm to IPG. Disclosure of this information to the public or competitors would result in significant harm to IPG, including but not limited to financial losses and loss of competitive advantage, as the documents contain non-public financial and proprietary information that could be utilized by its competitors. This information is not available to the

public and would be of benefit to competitors that could unfairly compete with IPG utilizing this non-public confidential information. Portions of these exhibits also contain contact information for IPG's employees, which is information that is not normally available to the public and has no bearing on the merits of the case.

### C. Sealing Is Appropriate Under Applicable Caselaw.

There is a "presumption of access accorded to judicial records." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Nixon*, 435 U.S. at 597). However, the Fourth Circuit has recognized that corporations have a strong interest in protecting confidential information, including trade secrets, and that the partial sealing of court records may be justified. *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).; *see also Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (district court did not abuse its discretion in refusing to unseal documents containing confidential and proprietary business information filed in connection with summary judgment motion); *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 766 (E.D. Va. 2018) (businesses may have a "compelling interest under the First Amendment test" in "protecting proprietary commercial information"); *In re Knight Pub. Co.*, 743 F.2d 231 (4th Cir. 1984) (court may seal documents to prevent others from gaining a business advantage).

Here, IPG, a third-party, seeks the sealing of portions of exhibits for highly sensitive, non-public financial and commercial strategy information and limited personal details of IPG employees. These documents would severely harm IPG's competitive standing if made public. District courts in the Fourth Circuit have sealed similar categories of information where the First Amendment right of access attaches. *See, e.g., Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 577 (E.D. Va. 2009) (stating that courts may refuse "to permit their files to serve ... as sources of business information that might harm a litigant's competitive

standing") (quoting *Nixon*, 435 U.S. at 598); *E. W., LLC* v. *Rahman*, 2012 WL 3843657, at *3 (E.D. Va. Sept. 4, 2012) ("sensitive financial data, including gross profit data, the disclosure of which would be highly likely to cause significant harm to the [company's] business competitive position"); *Intelligent Verification Sys., LLC* v. *Microsoft Corp.*, 2014 WL 12659953, at *1 (E.D. Va. Dec. 22, 2014) (sealing "sensitive business information" attached to summary judgment motion); *HiQ Materials AG* v. *ICP Indus., Inc.* 2023 WL 4842783, at *2 (M.D.N.C. June 28, 2023) (defendant "seeks to redact only proprietary business and customer information and trade secrets in the form of financial analyses"); *360 Mortg. Grp., LLC* v. *Stonegate Mortg. Corp.*, 2016 WL 4939308, at *1-2 (E.D.N.C. Sept. 14, 2016) ("finances" are "the type of confidential business information properly subject to protection"); *SMD Software, Inc.* v. *EMove, Inc.*, 2013 WL 1091054, at *2-*3 (E.D.N.C. Mar. 15, 2013) (profit and loss statements, pricing, marketing strategies, expense information, market share, and customer information).

## CONCLUSION

For the reasons above, IPG respectfully requests that this Court grant the Motions to Seal with respect to the redacted portions of the exhibits in Attachments A-J submitted herewith. A proposed order is submitted herewith.

Dated: June 14, 2024

Respectfully submitted,
*/s/ Kellen S. Dwyer*
Kellen S. Dwyer, VSB No. 97625
Alston & Bird, LLP
950 F Street NW
Washington, DC 20004-1404
Telephone: (202) 239-3300
Facsimile: (202) 239-3333
Email: kellen.dwyer@alston.com

**CERTIFICATE OF SERVICE**

I certify that on this 14ʰ day of June, 2024, I filed the foregoing document and served all counsel of record in this action via the Court's ECF filing system.

*/s/ Kellen S. Dwyer*
Kellen S. Dwyer, VSB No. 97625
Alston & Bird, LLP
950 F Street NW
Washington, DC 20004-1404
Telephone: (202) 239-3300
Facsimile: (202) 239-3333
Email: kellen.dwyer@alston.com
