# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

UNITED STATES, *et al.*,

        *Plaintiffs,*

    v.

GOOGLE LLC,

        *Defendant.*

No. 1:23-cv-00108-LMB-JFA

## NON-PARTY INDEX EXCHANGE INC.'S MEMORANDUM OF LAW IN RESPONSE TO THE PARTIES' MOTIONS TO SEAL

Pursuant to Local Rule 5(c), non-party Index Exchange Inc. ("Index"), through its undersigned counsel, respectfully submits this Memorandum of Law in Response to: (i) Defendant Google LLC's ("Google's") Motion to Seal Motion for Summary Judgment and Daubert Motion Filings (ECF No. 605), (ii) Plaintiffs' Motion to Seal Opposition to Exclude Dr. Simcoe (ECF No. 642), (iii) Plaintiffs' Motion to Seal Opposition to Exclude Professor Robin Lee (ECF No. 661), (iv) Plaintiffs' Motion to Seal re Portions of Brief and Certain Exhibits to Opposition to Summary Judgment (ECF No. 667), (v) Google's Motion to Seal re Doc. 702 to 711 (ECF No. 712), (vi) Google's Amended Motion to Seal re Doc. 605 (ECF No. 715), and (vii) Plaintiffs' Motion to Seal Portions and Exhibits to Plaintiffs Proposed Sur-Reply in Opposition to Google's Motion to Strike Jury Demand and to Dismiss (ECF No. 738) (collectively, the parties' "Motions to Seal"); and pursuant to the Court's Order extending the time for third parties to respond to the foregoing motions to seal (ECF No. 728).

Index, a non-party, respectfully requests that the Court maintain the confidentiality of a limited set of highly sensitive proprietary data points about Index's business contained within the

voluminous documents that the parties have filed under seal.  These data points include specific facts and numbers regarding Index's customer pricing, financial results, transactional data, and technical capabilities.  As set forth in the accompanying declaration of Index's Chief Executive Officer, Andrew Casale, Index submits that the public disclosure of this highly sensitive proprietary information would cause significant, irreparable harm to Index and put it at a disadvantage against its competitors, including by equipping Index's competitors to undercut or acquire Index.

Index is not seeking to maintain under seal the majority of the confidential information contained in the thousands of pages of documents and data that Index has produced in response to third-party subpoenas issued by Google and Plaintiffs (the "Parties") in this action.  Nor is Index seeking to maintain under seal the vast majority of the transcript of the deposition of its CEO, Mr. Casale.  Moreover, Index is not seeking to seal any documents or exhibits in their entirety.  Index does not believe that the balance of the references to Index's confidential information need to remain sealed and consents to disclosure of information that is not highly sensitive or proprietary.  Instead, Index respectfully requests that the Court maintain the confidentiality of a limited set of highly sensitive proprietary data points through narrow, targeted redactions.

In particular, Index seeks to maintain under seal references to (1) Index's "take rates" (the fees that Index has negotiated with its publisher customers); (2) the number of integrations Index has achieved with demand-side platforms; (3) breakdowns of Index's transactional data, including the number or percentage of transactions that fall within certain categories; (4) Index's revenues, including gross revenues, net revenues, and revenue share; (5) Index's shares of ad exchange fees and impressions among ad exchanges; and (6) Index's spending per impression.

Index takes great care to maintain the confidentiality of this highly sensitive proprietary information, including through the use of confidentiality agreements. The information Index seeks to maintain under seal is limited. However, because of the nature of this case, that limited information is repeated extensively in various forms throughout the Parties' filings.

As a non-party to this action, Index has cooperated with extensive requests for its documents and data, including producing its CEO for a deposition. Disclosing Index's proprietary non-public information as a consequence of that cooperation would profoundly adversely impact Index. Indeed, the disclosure of this information, including Index's non-public fees and the volume of its transactions in certain markets, could cause more harm to Index than the alleged anti-competitive behavior that is the focus of this lawsuit.

For the reasons stated below, Index respectfully requests that the Court grant the Parties' Motions to Seal in part, and maintain under seal (through redaction) portions of the following memorandum of law and limited portions of fourteen exhibits, all of which include Index's highly sensitive proprietary information, as specified in further detail in Section I below:

- Portions of Exhibits 1, 2, 3, 5, 32, and 38 to the Declaration of Bryon Becker in Support of Google LLC's Motion for Summary Judgment and Motions to Exclude ("Becker Declaration") (ECF Nos. 581-1, 581-2, 581-3, 581-5, 583-2, and 583-8);

- Portions of Google's Memorandum of Law in Support of Google LLC's Motion to Exclude the Testimony of Dr. Timothy Simcoe (ECF No. 579);

- Portions of Exhibits 8, 27, and 116 to Plaintiffs' Opposition to Google's Motion for Summary Judgment ("MSJ Opp.") (ECF Nos. 656-9, 657-5, 665-20, and 673-16);

- Portions of Exhibits A, D, G and O to Plaintiffs' Opposition to Google LLC's Motion to Exclude the Testimony of Dr. Timothy Simcoe ("Simcoe *Daubert* Opp.") (ECF

Nos. 640-1, 640-4, 640-7, 640-15, 644-1, 644-4, 644-6, and 644-13); and

- Portions of Exhibit A to Plaintiffs' Opposition to Defendant Google LLC's Motion to Exclude the Testimony of Prof. Robin S. Lee ("Lee *Daubert* Opp.") (ECF Nos. 660-1 and 663-1).

## **BACKGROUND**

In March 2023, Plaintiffs and Google issued separate subpoenas to Index in this matter pursuant to Federal Rule of Civil Procedure 45.  In response to those subpoenas, Index has produced thousands of pages of documents and terabytes of data.  Index designated certain material in its productions as "confidential" or "highly confidential" pursuant to the Modified Protective Order (ECF No. 203).  The Parties served Index with deposition subpoenas in August 2023, resulting in Index's Chief Executive Officer, Andrew Casale, providing extensive testimony.  Index designated portions of the transcript of Mr. Casale's deposition as confidential or highly confidential pursuant to the Modified Protective Order.  Index also expects that Mr. Casale will be called as a witness at trial.

On May 23, 2024, Plaintiffs' counsel notified counsel for Index that Google's motion for summary judgment and accompanying exhibits, filed on April 26, 2024, contained material that Index had produced and designated as confidential or highly confidential.  In the following weeks, counsel for the Parties notified Index's counsel that the Parties had included material that Index had produced and designated as confidential or highly confidential within the briefing and exhibits filed in connection with Plaintiffs' opposition and Google's reply in support of Google's motion for summary judgment, Google's motions to exclude the testimony of Plaintiff's expert witnesses and Plaintiffs' opposition thereto, and Plaintiffs' sur-reply to Google's motion to dismiss.  The Parties filed all of these materials conditionally under seal or with redactions in

accordance with the Modified Protective Order, together with motions to seal and notices of the materials filed under seal.  Pursuant to the Court's Order dated June 4, 2024, Index's deadline to respond to the Parties' motions to seal is June 14, 2024.  ECF No. 728.

As a non-party to this action, Index is not privy to the Parties' under seal filings or the unredacted versions of documents filed with redactions.  With the exception of three figures contained within Google's exhibits, the Parties did not provide Index with any of the underlying documents containing references to Index's confidential or highly confidential information because the filings contain highly confidential and sensitive data of other third-parties.  Instead, counsel for the Parties went through a process of identifying each reference to Index's confidential or highly confidential information, and prepared summaries of the references to Index's confidential and highly confidential information contained in each document and exhibit filed by the Parties.

Counsel for Index and Index's CEO, Andrew Casale, carefully reviewed the summaries prepared by the Parties to determine whether public disclosure of Index's confidential information contained in the documents would cause Index competitive harm.  *See* Declaration of Andrew Casale in Support of Non-Party Index Exchange Inc.'s Response to Motions to Seal ("Casale Decl.") ¶ 5.  Based on the Parties' summaries, some of the references to Index contained in the filings reflect Index's confidential, highly sensitive proprietary information, including confidential financial information.  *Id.*  As the disclosure of this information would damage Index's competitive standing, Index now submits this Response to the Parties' Motions to Seal respectfully requesting that the Court maintain the confidentiality of limited portions of one brief and fourteen exhibits submitted in connection with the Parties' filings.

## **LEGAL STANDARD**

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't. of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because 'only then can it accurately weigh the competing interests at stake.'" *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Id.* "In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Id.* at 575 (quoting *Stone*, 855 F.2d at 180).

Although the Fourth Circuit has held that "the more rigorous First Amendment standard" applies to "documents filed in connection with a summary judgment motion in a civil case," it has also "recognized that 'there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion.'" *Id.* at 576 (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.3d 249, 253 (4th Cir. 1988)). For example, with respect to corporate entities, a corporation's "strong interest in preserving the confidentiality of its proprietary and trade-secret information . . . may justify partial sealing of court records." *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). Restrictions on public access to judicial records may also be imposed when such records "might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). In particular, "[s]ealing is appropriate where the document at issue contains consists of information that could be used to competitive advantage against an organization if it became public." *Globus Med. Inc. v. Jamison*, 2023 WL 4937386, at *2 (E.D. Va. Jan. 12, 2023) (granting motion to seal document containing "highly

confidential" information of third parties that "could be used for competitive purposes by other businesses in the industry").

Courts in the Fourth Circuit also consider the privacy interests of third parties, and routinely grant motions to seal judicial records containing the confidential information of third parties. *See, e.g.*, *Accordius Health LLC v. Marshall*, 2020 WL 7774401, at *11 (M.D.N.C. Dec. 30, 2020) (granting motion to seal document containing confidential information pertaining to businesses not party to the present litigation); *Robinson v. Bowser*, 2013 WL 3791770, at *4 (M.D.N.C. July 19, 2013) (granting motion to seal documents containing third-party information because "the interest in keeping such information (and other sensitive personal material regarding third-parties) private outweighs the First Amendment right of access"); *Tustin v. Motorists Mut. Ins. Co.*, 668 F. Supp. 2d 755, 761, 762 (N.D.W. Va. 2009) (granting motion to seal document that had "the potential to prejudice other third parties if disclosed").

After determining the source of the right of access, a district court in the Fourth Circuit "must then weigh the appropriate competing interests" through the following procedure: "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." *Va. Dep't. of State Police*, 386 F.3d at 576.

Pursuant to Local Civil Rule 5(C), a motion to file under seal must be accompanied by a non-confidential supporting memorandum, which shall include:

> (1) A non-confidential description of what material has been filed under seal;
>
> (2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request;

> (3) References to the governing case law, an analysis of the
> appropriate standard to be applied for that specific filing, and a
> description of how that standard has been satisfied;
>
> (4) Unless permanent sealing is sought, a statement as to the period
> of time the party seeks to have the matter maintained under seal
> and how the matter is to be handled upon unsealing.

E.D. Va. Local Civ. R. 5(C).

Further, under Local Civil Rule 5(C), when a party moves to file material under seal because another party has designated that material as confidential, the party designating the material as confidential must file a response to the motion complying with requirements (2), (3), and (4) above along with a proposed order.  *See id.*

## ARGUMENT

Index respectfully requests that the Court maintain under seal very narrow, limited portions of the Parties' papers that reference confidential, highly sensitive proprietary data points about Index's customer pricing, financial results, transactional data, and technical capabilities. The disclosure of this information would cause significant, irreparable harm to Index's competitive standing.  Given the harm to Index that would result if these data points became public, Index seeks to have these data points maintained under seal permanently.

## I.   INDEX HAS PROVIDED A NON-CONFIDENTIAL DESCRIPTION OF THE MATERIAL FILED UNDER SEAL

Index seeks to seal discrete portions of fourteen exhibits and limited excerpts in one memorandum of law filed by the Parties in connection with Google's motion for summary judgment and motions to exclude Plaintiffs' experts.  As a non-party, Index is not privy to the underlying documents filed under seal or with redactions.  Accordingly, Index bases its sealing request and its descriptions of the materials at issue on summaries prepared by the Parties and provided to Index's counsel.  Index submits the following non-confidential descriptions of the

portions of the materials that Index requests remain under seal:

- Becker Declaration Exhibit 1:  Excerpts from the Expert Report of Robin S. Lee on behalf of Plaintiffs (ECF No. 581-1)

    - Page 160 n.552 (reference to quantified share of Index's transactions consisting of indirect open-web display impressions);

    - Page 199, Figure 47 (share of worldwide indirect open-web display impressions transacted (2018-2022));

    - Page 200, Figure 48 (shares of worldwide indirect open-web display impressions (2022));

    - Page 203, Figure 49 (net revenues from the sale of worldwide indirect open-web display impressions (2018-2022));

    - Page 204, Figure 50 (share of ad exchange fees from worldwide indirect open-web display transactions (2018-2022));

    - Page 205, Figure 51 (shares of ad exchange fees from worldwide indirect open-web display transactions (2022));

    - Page 206 n.710 at 136:13-15 (number of demand-side platform integrations supported by Index);

    - Page 210 n.724 GOOG-DOJ-11772703, at tab "Notes" (reference to Index's take rate);

    - Page 211 n.725 (reference to Index's take rate);

    - Page 214, Figure 54 (Worldwide open-web indirect display take rates (2018-2022);

    - Page 229 (reference to Index's reductions in publisher payouts);

- o Page 230 n.796 (reference to quantified impact on publisher revenue);

- o Page D-4, Figure 91 (share of US indirect open-web display impressions transacted (2018-2022); shares of US indirect open-web display impressions among ad exchanges (2022));

- o Page D-5, Figure 92 (net revenues from the sale of US indirect open-web display impressions (2018-2022));

- o Page D-7, Figure 94 (shares of ad exchange fees from US indirect open-web display transactions (2022));

- o Page D-8, Figure 95 (worldwide indirect open-web display through ad exchanges (2018-2022));

- o Page D-9, Figure 96 (significant share of US indirect open-web display spend);

- o Page E-2, Figure 110 (Summary of worldwide open-web indirect display take rates);

- o Page G-1, Figure 122 (share of worldwide indirect open-web display impressions transacted (2018-2022));

- o Page G-2, Figure 123 (share of ad exchange fees from worldwide indirect open-web display transactions (2018-2022));

- o Page G-3, Figure 124 (share of US indirect open-web display impressions transacted (2018-2022)); and

- o Page G-4, Figure 125 (net revenues from the sale of US indirect open-web display impressions (2018-2022)).

- Becker Declaration Exhibit 2: Excerpts from the Expert Report of Rosa Abrantes-Metz on behalf of Plaintiffs (ECF No. 581-2)

- Page 242, Figure 30 (Ad Exchange Take Rates: Exchange rates from Jan 18 to Nov 22).

- Becker Declaration Exhibit 3:  Excerpts from the Expert Rebuttal Report of Robin S. Lee on behalf of Plaintiffs (ECF No. 581-3)

    - Page B-26, Figure 88 (Worldwide spending and impressions on GAM open bidding (2022)).

- Becker Declaration Exhibit 5:  Excerpts from the Expert Report of Timothy Simcoe on behalf of Plaintiffs (ECF No. 581-5)

    - Figure 4 (Effective Take Rate for Worldwide Open Web Display + Video Outstream Impressions);

    - Figure 7 (Average Spend per 1,000 Worldwide Impressions, 2018-2021); and

    - Figure 8 (Average CPM Versus Average Take Rate, By Exchange).

- Becker Declaration Exhibit 32: Excerpts from the transcript of the deposition of Ramamoorthi Ravi, expert witness on behalf of Plaintiffs (ECF No. 583-2):

    - 193:25 (discussing Index's capabilities).

- Becker Declaration Exhibit 38:  Expert Report of Judith A. Chevalier on behalf of Google (ECF No. 583-8)

    - Figure 10 (Worldwide Average Revenue Shares of Competing Exchanges Considered by Prof. Simcoe (Jan. 2019 – Mar. 2023), listing Index revenue share percentage); and

    - Figure 17 (Worldwide AdX and Competing Exchanges Gross Revenue (Oct. 2018 – Sep. 2021) – Monthly Gross Revenue ($ Millions)).

- Google's Memorandum of Law in Support of Google LLC's Motion to Exclude the

Testimony of Dr. Timothy Simcoe (ECF No. 579)

- o Page 6 n.4 (reference to Index's take rate); and

- o Page 18 n.8 (reference to Index's take rate).

- MSJ Opp. Exhibit 8:  Expert Report of Robin S. Lee, Ph.D. (ECF No. 656-9)

  - o Figure 47 (Index's share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022));

  - o Figure 48 (Index's shares of worldwide indirect open-web display impressions among ad exchange (2022)); and

  - o Figure 110 (Index worldwide open-web indirect display take rates from 2018 to 2022).

- MSJ Opp. Exhibit 27:  Expert Report of Rosa M. Abrantes-Metz, Ph.D. (ECF No. 657-5)

  - o Paragraph 434 (describing Index's technological capabilities).

- MSJ Opp. Exhibit 116:  Expert Rebuttal Report of Robin S. Lee, Ph.D. (ECF Nos. 665-20, 673-16)

  - o Figure 29 (Dr. Israel's estimate of US ad exchange fees for indirect web non-video advertising (2020-2022), showing Index fees and share of US indirect open web display impressions for 2022)); and

  - o Figure 30 (Index's US indirect web non-video take rates relative to AdX take rate (2020-2022)).

- Simcoe *Daubert* Opp. Exhibit A:  Expert Report of Timothy Simcoe, Ph.D. (ECF Nos. 640-1, 644-1)

  - o Figure 4 (Line graph indicating Index's Effective Take Rate For Worldwide Open Web Display + Video Outstream Impressions from 2014 to 2022);

- o Figure 5 (Line graph indicating Index's Worldwide Open Web Display Impressions (billions) from 2014 to 2022);

- o Figure 7 (Bar Graph showing Index's Average Spend Per 1,000 Worldwide Impressions, 2018-2021 ("Average CPM")); and

- o Figure 8 (Scatter Plot of Average CPM Versus Average Take Rate, By Exchange).

- Simcoe *Daubert* Opp. Exhibit D:  Expert Report of Robin S. Lee, Ph.D. (ECF Nos. 640-4, 644-6)

  - o Figure 47 (Index's share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022));

  - o Paragraph 754 n.1114 at 212:2-18 (assessment of competitor's capabilities); and

  - o Figure 110 (Index worldwide open-web indirect display take rates from 2018 to 2022).

- Simcoe *Daubert* Opp. Exhibit G:  Expert Rebuttal Report of Robin S. Lee, Ph.D. (ECF Nos. 640-7, 644-13)

  - o n.723 (citing and quantifying worldwide weighted average CPM of transactions on Index and citing ECF No. 640-4 at Fig. 110); and

  - o Figure 29 (Dr. Israel's estimate of US ad exchange fees for indirect web non-video advertising (2020-2022) showing Index's fees and share of US indirect open web display impressions for 2022).

- Simcoe *Daubert* Opp. Exhibit O:  Expert Report of Judith A. Chevalier (ECF Nos. 640-15, 644-13)

  - o Figure 11 (Worldwide Monthly Average Revenue Shares (Jan. 2016 – Mar. 2023)

displaying Index's monthly average revenue shares).

- Lee *Daubert* Opp. Exhibit A:  Expert Report of Robin S. Lee, Ph.D. (ECF Nos. 660-1 and 663-1).

  - o Paragraph 345 n.498 (describing Index's HHIs across bidding sources in 2022);

  - o Paragraph 396 n.552 (describing proportions of non-US user indirect open-web display impressions transacted by Index);

  - o Figure 47 (displaying Index's share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022));

  - o Figure 48 (displaying Index's shares of worldwide indirect open-web display impressions among ad exchange (2022));

  - o Figure 49 (Index net revenues from the sale of worldwide indirect openweb display impressions (2018–2022));

  - o Figure 50 (Index's share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022));

  - o Figure 51 (Index's shares of ad exchange fees from worldwide indirect openweb display transactions (2022));

  - o Paragraph 405 n.567 (percentage of 2022 indirect open-web display impressions transacted by Index attributable to US publishers);

  - o Paragraph 548 (reference to Index publisher payouts);

  - o n.796 (reference to impact on Index publisher revenue);

  - o Figure 54 (Index's take rates and share of worldwide open-web indirect display market (2018–2022));

  - o Figure 84 (Index impressions and spend by user and publisher location (2022));

- o Figure 86 (Index's shares of indirect open-web display impressions by user and publisher location);

- o Figure 87 (relative shares of indirect open-web display fees by user geography (US v. Non-US) and publisher location (US v. Non-US)); and

- o Paragraph 496 n.710 at 136:13-15 (number of demand-side platform integrations supported by Index).

## II. REDACTION OF INDEX'S HIGHLY SENSITIVE PROPRIETARY INFORMATION IS NECESSARY AND ALTERNATIVES WILL NOT SUFFICE

The information that Index seeks to keep confidential includes highly sensitive strategic and proprietary information about Index's customer pricing, financial results, transactional data, and technical capabilities. *See* Casale Decl. ¶ 5. In particular, according to the summaries provided by the Parties, these references include highly sensitive proprietary information regarding: (1) Index's "take rates" (the fees that Index has negotiated with its publisher customers); (2) the number of integrations Index has achieved with demand-side platforms; (3) breakdowns of Index's transactional data, including the number or percentage of transactions within certain categories; (4) Index's revenues, including gross revenues, net revenues, and revenue share; (5) Index's shares of ad exchange fees and impressions among ad exchanges; and (6) Index's spending per impression. *Id.* ¶ 7. As set forth in the accompanying declaration of Index's CEO, Andrew Casale, the public disclosure of these highly sensitive detailed, specific, proprietary data points about Index's business – none of which are public – would cause significant, irreparable harm to Index's competitive standing, including reducing Index's ability to succeed against its competitors and making Index vulnerable to acquisition. *Id.* Accordingly, maintaining the confidentiality of this highly sensitive proprietary information is necessary.

Index is a privately held company and does not publicly release proprietary financial and

business information concerning its customer pricing, financial results, transactional data, or technical capabilities.  *See id.* ¶ 6.  Index takes create great care to maintain the confidentiality of this highly sensitive proprietary information, including through the use of confidentiality agreements.  *Id.*  Disclosure of this highly sensitive information would cause significant injury to Index and put it at a disadvantage against competitors, who would be armed with non-public knowledge of Index's business and financial status.  *Id.*  Further, the public disclosure of Index's take rates would also injure Index's critical and long-fostered relationships with publishers.  *Id.* ¶ 9.  If Index's take rates became public as a result of this lawsuit, every publisher with a negotiated take rate higher than Index's disclosed average take rate would ask to renegotiate its current take rate with Index, essentially seeking a discount.  *Id.*  This result would directly harm Index's business and competitive standing.  *Id.*

As a non-party, Index has cooperated with extensive requests for its documents and data.  *Id.* ¶ 8.  Disclosing Index's proprietary non-public information as a consequence of that cooperation would profoundly adversely impact Index.  *Id.*  If the purpose of this lawsuit is to preserve (or even increase) competition in the advertising technology market, disclosing Index's proprietary information, equipping competitors to either undercut or acquire Index, would have the opposite effect.  *Id.*  Indeed, the disclosure of this information, including Index's non-public take rates and the volume of its transactions in certain markets, could cause more harm to Index than the alleged anti-competitive behavior that is the focus of this lawsuit.  *Id.*

With respect to alternatives to sealing, *see* Local Civil Rule 5(C), Index does not seek to seal any of the referenced documents or exhibits in their entirety.  Instead, as an alternative to the sealing of entire documents and exhibits, Index proposes narrow, targeted redactions of the limited information specified in Section I, above, which consists of specific paragraphs,

16

footnotes, figures, and individual lines of the transcript of Mr. Casale's deposition.  Any alternative other than Index's proposed limited redactions would not preserve the confidentiality of Index's highly sensitive proprietary information.

### III.   GOVERNING CASE LAW SUPPORTS INDEX'S REQUEST TO MAINTAIN ITS HIGHLY SENSITIVE PROPRIETARY INFORMATION UNDER SEAL

The Fourth Circuit has recognized that a corporation's "strong interest in preserving the confidentiality of its proprietary and trade-secret information . . . may justify partial sealing of court records." *Pub. Citizen*, 749 F.3d at 269.  In particular, courts in the Fourth Circuit will grant motions to seal commercially-sensitive documents when "[t]he public's interest in accessing this information is outweighed by a party's interest in 'preserving confidentiality' of commercially sensitive information that is 'normally unavailable to the public.'" *Glob. Tel\*Link Corp. v. JACS Sols., Inc.*, 2023 WL 9197897, at \*2 (E.D. Va. Oct. 4, 2023) (quoting *Flexible Benefits Council v. Feltman*, 2008 WL 4924711, at \*1 (E.D. Va. Nov. 13, 2008)) (granting motion to seal).  This is true where, for example, "there is no legitimate public interest in disclosing the proprietary and confidential information of [the defendant] . . . and disclosure to the public could result in significant damage to the company." *Adams v. Object Innovation, Inc.*, 2011 WL 7042224, at \*4 (E.D. Va. Dec. 5, 2011) (granting motion to seal); *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 901958, at \*2 (E.D.N.C. Mar. 15, 2011) (granting motion to seal documents containing "confidential and proprietary commercial information, including . . . highly sensitive financial and business information belonging to the parties as well as third-parties, information which is of utmost importance to them but not generally available to the public or bearing importance to any public matters").

Here, revealing specific numbers and figures about Index's business and commercial arrangements with its customers, including the fees Index charges its customers, Index's

revenues, and Index's market share, could cause significant, irreparable harm to Index.  *See* Casale Decl. ¶¶ 5-9.  With this information, any of Index's competitors could undercut Index, and Index could become vulnerable to acquisition.  *Id.* ¶ 7.  Further, although some of the information Index seeks to maintain under seal appears in papers submitted in connection with a dispositive motion, the information itself has little bearing on matters of significant public importance, given that Index is not seeking to seal any of the *aggregated* references to ad exchange data across the market.  Instead, Index is seeking to maintain under seal only the relatively small percentage of footnotes, figures, and other references within the Parties' papers and expert reports that specifically reveal Index's individual data points.  *See* Section I, *supra*.

This is precisely the type of information that courts in this District routinely maintain under seal, particularly where the information belongs to a third party.  *See, e.g.*, *Glob. Tel*Link Corp.*, 2023 WL 9197897, at *2 (granting motion to seal "commercially sensitive information that is 'normally unavailable to the public'"); *Adams*, 2011 WL 7042224, at *4 (granting motion to seal where "there is no legitimate public interest in disclosing the proprietary and confidential information . . . and disclosure to the public could result in significant damage to the company"); *Biedermann Techs. GmbH KG v. K2M, Inc.*, 2021 WL 8445264, at *2 (E.D. Va. Sept. 1, 2021) (granting motion to seal documents where they disclose "highly confidential information and should remain sealed because they are not generally known and are of competitive value"); *Vir2Us, Inc. v. Sophos Inc.*, 2019 WL 13398985, at *1 (E.D. Va. Aug. 6, 2019) (granting motion to seal where information "is not generally known, has economic value, and the disclosure of it would cause competitive harm if made widely public"); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 13036877, at *1 (E.D. Va. Feb. 6, 2015) (granting motion to seal "sensitive business information" where the parties' "competitive positions might be impaired if

this information is disclosed to the public at large").

In addition to the general considerations relating to Index's proprietary business and financial data, the information regarding Index's "take rates" is particularly sensitive.  *See* Casale Decl. ¶¶ 8-9.  Knowledge of Index's take rates could allow Index's competitors to undercut Index's fees, and public disclosure of this data would injure Index's critical and long-fostered relationships with publishers, encouraging Index's publisher customers to seek discounts from their current rates.  *Id.* ¶ 9.  Courts in this District have granted motions to seal documents containing the terms of agreements between businesses where such terms are "highly confidential and could be used for competitive purposes by other businesses in the industry if they are not protected from public disclosure."  *See, e.g.*, *Globus Med.*, 2023 WL 4937386 at *2-3 (granting motion to seal).  In *Globus Medical*, the court granted a motion to seal the proposed terms of a distributorship agreement between two third parties to the litigation, one of the plaintiff's competitors and a distributor.  *Id.*  The court explained that sealing was appropriate because the document contained "confidential information that could potentially be used by competitors to the detriment of these non-parties."  *Id.* at *2.  The same is true of Index's take rates, which represent negotiations between Index and its individual customers.

## CONCLUSION

For the reasons set forth above, Index respectively requests that the Court grant the Parties' Motions to Seal in part, with respect to the portions of the following documents specified in detail in Section I of this memorandum:  Exhibits 1, 2, 3, 5, 32, and 38 to the Becker Declaration (ECF Nos. 581-1, 581-2, 581-3, 581-5, 583-2, and 583-8); Google's Memorandum of Law in Support of Google LLC's Motion to Exclude the Testimony of Dr. Timothy Simcoe (ECF No. 579); Exhibits 8, 27, and 116 to Plaintiffs' Opposition to Google's Motion for

Summary Judgment (ECF Nos. 656-9, 657-5, 665-20, and 673-16); Exhibits A, D, G and O to

Plaintiffs' Opposition to Google LLC's Motion to Exclude the Testimony of Dr. Timothy

Simcoe (ECF Nos. 640-1, 640-4, 640-7, 640-15, 644-1, 644-4, 644-6, and 644-13); and Exhibit

A to Plaintiffs' Opposition to Defendant Google LLC's Motion to Exclude the Testimony of

Prof. Robin S. Lee (ECF Nos. 660-1 and 663-1).  A proposed order is attached.


Dated:   June 14, 2024                      Respectfully submitted,


_____

Mary C. Zinsner (VSB No. 31397)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com

Laura Anne Kuykendall (VSB No. 82318)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax: (804) 697-1339
la.kuykendall@troutman.com

*Attorneys for Non-Party*
*Index Exchange Inc.*