UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>　　　　　*Plaintiffs,*<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　　*Defendant.* | No. 1:23-cv-00108-LMB-JFA |

**DECLARATION OF ANDREW CASALE IN SUPPORT OF NON-PARTY INDEX EXCHANGE INC.'S RESPONSE TO MOTIONS TO SEAL**

I, Andrew Casale, hereby declare:

1.　　I am the President and Chief Executive Officer of non-party Index Exchange Inc. ("Index"). I make this declaration on my own personal knowledge pursuant to Local Civil Rule 5(C) in support of Index's Memorandum of Law in Response to the Motions to Seal filed by Plaintiffs and Defendant Google LLC ("Google" and together with Plaintiffs, the "Parties") (ECF Nos. 605, 642, 661, 667, 712, 715, 738) (collectively, the "Motions to Seal"). I have personal knowledge of the facts in this declaration or base them on business records which I have reviewed or descriptions provided by the Parties' counsel regarding the sealed filings. If called as a witness, I could and would competently testify to the facts stated herein.

2.　　Through my role as the President and CEO of Index, I am personally familiar with Index's business and financial records and Index's recordkeeping, including the sensitive and confidential nature of Index's information. I am also familiar with Index's business operations and strategies. Index keeps its financial and business information confidential in order to protect itself from competitive harm.

1

3. Index has produced thousands of pages of documents and data in the above-captioned matter in response to multiple subpoenas that the Parties issued to Index. Index designated certain material in its productions as "confidential" or "highly confidential" pursuant to the Modified Protective Order (ECF No. 203). In addition, I provided deposition testimony in this matter on behalf of Index in response to deposition subpoenas that the Parties issued to Index. Index designated portions of the deposition testimony as confidential or highly confidential pursuant to the Modified Protective Order.

4. I understand that the Parties have filed conditionally under seal documents that contain information that Index produced and that Index designated as "confidential" or "highly confidential" pursuant to the Modified Protective Order in this action. As a non-party to the case, Index is not privy to the actual filings and I am not able to review them. Instead, I understand that counsel for the Parties went through a process of identifying each reference to Index's confidential or highly confidential information, and prepared summaries of the references to Index's confidential and highly confidential information contained in each document and exhibit filed by the Parties.

5. I have carefully reviewed the summaries prepared by the Parties to determine whether public disclosure of Index's confidential information contained in the documents would cause Index competitive harm. Based on these summaries, I have concluded that some of the references to Index contained in the filings reflect Index's confidential, highly sensitive proprietary information, including confidential financial information, and that the disclosure of this information would damage Index's competitive standing. These references include confidential, highly sensitive strategic and proprietary information about Index's customer pricing, financial results, transactional data, and technical capabilities. Index is not seeking to

maintain under seal the vast majority of the Parties' references to Index's confidential documents, data, and deposition testimony. Index does not believe that the balance of the references need to remain sealed and consents to disclosure of information that is not confidential or proprietary. Instead, Index is only seeking to maintain under seal this limited set of specific, highly sensitive proprietary data points.

6. Index is a privately held company and does not publicly release proprietary financial and business information concerning its customer pricing, financial results, transactional data, or technical capabilities. Index takes create great care to maintain the confidentiality of this highly sensitive proprietary information, including through the use of confidentiality agreements. Disclosure of this highly sensitive information would cause significant injury to Index and put it at a disadvantage against competitors, who would be armed with non-public knowledge of Index's business and financial status.

7. In particular, according to the summaries that I have reviewed, the references to Index contained in the documents filed by the Parties include highly sensitive proprietary information regarding: (1) Index's "take rates" (the fees that Index has negotiated with its publisher customers); (2) the number of integrations Index has achieved with demand-side platforms; (3) breakdowns of Index's transactional data, including the number or percentage of transactions within certain categories; (4) Index's revenues, including gross revenues, net revenues, and revenue share; (5) Index's shares of ad exchange fees and impressions among ad exchanges; and (6) Index's spending per impression. The disclosure of these highly sensitive detailed, specific, proprietary data points about Index's business – none of which are public – would cause significant harm to Index's competitive standing, including reducing Index's ability to succeed against its competitors and making Index vulnerable to acquisition.

3

8.      As a non-party to this action, Index has cooperated with extensive requests for its documents and data. Disclosing Index's proprietary non-public information as a consequence of that cooperation would profoundly adversely impact Index. Indeed, the disclosure of this information, including Index's non-public fees and the volume of its transactions in certain markets, could cause more harm to Index than the alleged anti-competitive behavior that is the focus of this lawsuit. If the purpose of this lawsuit is to preserve (or even increase) competition in the advertising technology market, disclosing Index's proprietary information, equipping competitors to either undercut or acquire Index, would have the opposite effect. Indeed, the disclosure of this information, including Index's non-public take rates and the volume of its transactions in certain markets, could cause more harm to Index than the alleged anti-competitive behavior that is the focus of this lawsuit.

9.      Further, the public disclosure of Index's take rates would also injure Index's critical and long-fostered relationships with publishers. If Index's take rates became public as a result of this lawsuit, every publisher with a negotiated take rate higher than Index's disclosed average take rate would ask to renegotiate its current take rate with Index, essentially seeking a discount. This result would directly harm Index's business and competitive standing.

10.     Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 1 to the Declaration of Bryon Becker in Support of Google LLC's Motion for Summary Judgment and Motions to Exclude (the "Becker Declaration"), Excerpts from the Expert Report of Robin S. Lee on behalf of Plaintiffs in this case, dated December 22, 2023, **ECF No. 581-1**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

      a.      Page 160 n.552 (reference to quantified share of Index's transactions

        consisting of indirect open-web display impressions);

b.     Page 199, Figure 47 (share of worldwide indirect open-web display impressions transacted (2018-2022);

c.     Page 200, Figure 48 (shares of worldwide indirect open-web display impressions (2022);

d.     Page 203, Figure 49 (net revenues from the sale of worldwide indirect open-web display impressions (2018-2022);

e.     Page 204, Figure 50 (share of ad exchange fees from worldwide indirect open-web display transactions (2018-2022);

f.     Page 205, Figure 51 (shares of ad exchange fees from worldwide indirect open-web display transactions (2022);

g.     Page 206 n.710 at 136:13-15 (number of demand-side platform integrations supported by Index);

h.     Page 210 n.724 GOOG-DOJ-11772703, at tab "Notes" (reference to Index's take rate);

i.     Page 211 n.725 (reference to Index's take rate);

j.     Page 214, Figure 54 (Worldwide open-web indirect display take rates (2018-2022);

k.     Page 229 (reference to Index's reductions in publisher payouts);

l.     Page 230 n.796 (reference to quantified impact on publisher revenue);

m.     D-4, Figure 91 (share of US indirect open-web display impressions transacted (2018-2022); shares of US indirect open-web display impressions among ad exchanges (2022);

    n.    D-5, Figure 92 (net revenues from the sale of US indirect open-web display impressions (2018-2022);

    o.    D-7, Figure 94 (shares of ad exchange fees from US indirect open-web display transactions (2022);

    p.    D-8, Figure 95 (worldwide indirect open-web display through ad exchanges (2018-2022);

    q.    D-9, Figure 96 (significant share of US indirect open-web display spend);

    r.    E-2, Figure 110 (Summary of worldwide open-web indirect display take rates);

    s.    G-1, Figure 122 (share of worldwide indirect open-web display impressions transacted (2018-2022);

    t.    G-2, Figure 123 (share of ad exchange fees from worldwide indirect open-web display transactions (2018-2022);

    u.    G-3, Figure 124 (share of US indirect open-web display impressions transacted (2018-2022); and

    v.    G-4, Figure 125 (net revenues from the sale of US indirect open-web display impressions (2018-2022).

11.    Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 2 to the Becker Declaration, Excerpts from the Expert Report of Rosa M. Abrantes-Metz on behalf of Plaintiffs in this case, dated December 22, 2023, **ECF No. 581-2**, contains the following reference to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a.    Page 242, Figure 30 (Ad Exchange Take Rates: Exchange rates from Jan

18 to Nov 22).

12. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 3 to the Becker Declaration, Excerpts from the Expert Rebuttal Report of Robin S. Lee on behalf of Plaintiffs in this case, dated February 13, 2024, **ECF No. 581-3**, contains the following reference to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a.    B-26, Figure 88 (Worldwide spending and impressions on GAM open bidding (2022).

13. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 5 to the Becker Declaration, Excerpts from the Expert Report of Timothy Simcoe on behalf of Plaintiffs in this case, dated December 22, 2023, **ECF No. 581-5**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a.    Figure 4 (Effective Take Rate for Worldwide Open Web Display + Video Outstream Impressions);

    b.    Figure 7 (Average Spend per 1,000 Worldwide Impressions, 2018-2021);

    c.    Figure 8 (Average CPM Versus Average Take Rate, By Exchange).

14. Based on the summaries prepared by the Parties that I have reviewed, I understand that the Memorandum of Law in Support of Google LLC's Motion to Exclude the Testimony of Dr. Timothy Simcoe, **ECF No. 579**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a.    Page 6 n.4 (reference to Index's take rate); and

      b.      Page 18 n.8 (reference to Index's take rate).

15. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 32 to the Becker Declaration, Excerpts from the transcript of the deposition of Ramamoorthi Ravi, expert witness on behalf of Plaintiffs in this case, taken February 20, 2024, **ECF No. 583-2**, contains a reference to Index's highly sensitive proprietary technical capabilities, the public disclosure of which would harm Index's competitive standing:

      a.      193:25 (discussing Index's capabilities).

16. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 38 to the Becker Declaration, Expert Report of Judith A. Chevalier on behalf of Google in this case, dated January 23, 2024, **ECF No. 583-8**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

      a.      Figure 10 (Worldwide Average Revenue Shares of Competing Exchanges Considered by Prof. Simcoe (Jan. 2019 – Mar. 2023), listing Index revenue share percentage); and

      b.      Figure 17 (Worldwide AdX and Competing Exchanges Gross Revenue (Oct. 2018 – Sep. 2021) – Monthly Gross Revenue ($ Millions)).

17. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 8 to Plaintiffs' Opposition to Google's Motion for Summary Judgment, Expert Report of Robin S. Lee, Ph.D., **ECF No. 656-9**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

      a.      Figure 47 (Index's share of worldwide indirect open-web display

     impressions transacted through ad exchanges (2018–2022);

  b. Figure 48 (Index's shares of worldwide indirect open-web display impressions among ad exchange (2022)); and

  c. Figure 110 (Index worldwide open-web indirect display take rates from 2018 to 2022).

18. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 27 to Plaintiffs' Opposition to Google's Motion for Summary Judgment, Expert Report of Rosa M. Abrantes-Metz, Ph.D., dated December 22, 2023, **ECF No. 657-5**, contains the following reference to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

  a. Paragraph 434 (describing Index's technological capabilities).

19. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit 116 to Plaintiffs' Opposition to Google's Motion for Summary Judgment, Expert Rebuttal Report of Robin S. Lee, Ph.D., dated February 13, 2024, **ECF Nos. 665-20** and **673-16**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

  a. Figure 29 (Dr. Israel's estimate of US ad exchange fees for indirect web non-video advertising (2020-2022), showing Index fees and share of US indirect open web display impressions for 2022); and

  b. Figure 30 (Index's US indirect web non-video take rates relative to AdX take rate (2020-2022)).

20. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit A to Plaintiffs' Opposition to Google LLC's Motion to Exclude the

Testimony of Dr. Timothy Simcoe, Expert Report of Timothy Simcoe, Ph.D., dated December 22, 2023, **ECF Nos. 640-1 and 644-1**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a.    Figure 4 (Line graph indicating Index's Effective Take Rate For Worldwide Open Web Display + Video Outstream Impressions from 2014 to 2022);

    b.    Figure 5 (Line graph indicating Index's Worldwide Open Web Display Impressions (billions) from 2014 to 2022);

    c.    Figure 7 (Bar Graph showing Index's Average Spend Per 1,000 Worldwide Impressions, 2018-2021 ("Average CPM")); and

    d.    Figure 8 (Scatter Plot of Average CPM Versus Average Take Rate, By Exchange).

21.    Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit D to Plaintiffs' Opposition to Google LLC's Motion to Exclude the Testimony of Dr. Timothy Simcoe, Expert Report of Robin S. Lee, Ph.D., dated December 22, 2023, **ECF Nos. 640-4 and 644-4**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a.    Figure 47 (Index's share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022));

    b.    Paragraph 754 n.1114 at 212:2-18 (assessment of competitor's capabilities); and

   c. Figure 110 (Index worldwide open-web indirect display take rates from 2018 to 2022).

22. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit G to Plaintiffs' Opposition to Google LLC's Motion to Exclude the Testimony of Dr. Timothy Simcoe, Expert Rebuttal Report of Robin S. Lee, Ph.D., dated February 13, 2024, **ECF Nos. 640-7 and 644-6**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

   a. n.723 (citing and quantifying worldwide weighted average CPM of transactions on Index and citing ECF No. 640-4 at Fig. 110); and

   b. Figure 29 (Dr. Israel's estimate of US ad exchange fees for indirect web non-video advertising (2020-2022) showing Index's fees and share of US indirect open web display impressions for 2022).

23. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit O to Plaintiffs' Opposition to Google LLC's Motion to Exclude the Testimony of Dr. Timothy Simcoe, Expert Report of Judith A. Chevalier January 23, 2024, **ECF Nos. 640-15 and 644-13**, contains the following reference to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

   a. Figure 11 (Worldwide Monthly Average Revenue Shares (Jan. 2016 – Mar. 2023) displaying Index's monthly average revenue shares).

24. Based on the summaries prepared by the Parties that I have reviewed, I understand that Exhibit A to Plaintiffs' Opposition to Defendant Google LLC's Motion to Exclude the Testimony of Prof. Robin S. Lee, Expert Report of Robin S. Lee, Ph.D. dated

December 22, 2023, **ECF Nos. 660-1 and 663-1**, contains the following references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

a. Paragraph 345 n.498 (describing Index's HHIs across bidding sources in 2022);

b. Paragraph 396 n.552 (describing proportions of non-US user indirect open-web display impressions transacted by Index);

c. Figure 47 (displaying Index's share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022));

d. Figure 48 (displaying Index's shares of worldwide indirect open-web display impressions among ad exchange (2022));

e. Figure 49 (Index net revenues from the sale of worldwide indirect open-web display impressions (2018–2022));

f. Figure 50 (Index's share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022));

g. Figure 51 (Index's shares of ad exchange fees from worldwide indirect openweb display transactions (2022));

h. Paragraph 405 n.567 (percentage of 2022 indirect open-web display impressions transacted by Index attributable to US publishers);

i. Paragraph 548 (reference to Index publisher payouts);

j. n.796 (reference to impact on Index publisher revenue);

k. Figure 54 (Index's take rates and share of worldwide open-web indirect display market (2018–2022));

   l. Figure 84 (Index impressions and spend by user and publisher location (2022));

   m. Figure 86 (Index's shares of indirect open-web display impressions by user and publisher location);

   n. Figure 87 (relative shares of indirect open-web display fees by user geography (US v. Non-US) and publisher location (US v. Non-US)); and

   o. Paragraph 496 n.710 at 136:13-15 (number of demand-side platform integrations supported by Index).

  25. The Parties have not provided the underlying documents containing these references to Index, and the documents were filed under seal or with redactions. As a result, Index has not had the opportunity to review the documents itself and locate every reference to Index's highly sensitive proprietary information. As stated above, I have relied on the Parties' summaries to identify references to Index's highly sensitive proprietary information. Accordingly, the designations contained herein may not be an exhaustive list of all instances of references to Index's highly sensitive proprietary information contained within the filings.

  26. Index requests that any references to its highly sensitive proprietary information (specifically, Index's take rates, breakdowns of Index's transaction data, Index's revenues, shares of ad exchange fees, shares of impressions, Index's spending per impression, and the number of integrations Index has achieved) contained within the Parties' filings continue to remain under seal and that any such references be redacted in any public filings. The public disclosure of any of this highly sensitive proprietary information would cause significant harm to Index's competitive standing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 12, 2024

By: _____
Andrew Casale
President and Chief Executive Officer
Index Exchange Inc.