UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| United States of America, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> Google LLC <br><br> Defendant. | Case No. 1:23-cv-00108-LMB-JFA <br><br> The Honorable Leonie M. Brinkema <br><br> Related File: <br> Case No. 1:21-MD-03010-(PKC) |

**THE TRADE DESK, INC.'S MEMORANDUM IN RESPONSE TO, AND IN SUPPORT OF, PARTIES' MOTIONS TO SEAL (DKT. NOS. 605, 648, 661, 667, and 712)**

Pursuant to Federal Rules of Civil Procedure 5.2(d), and the Civil Local Rule 5(C) for the Eastern District of Virginia, The Trade Desk, Inc. ("The Trade Desk") respectfully submits this memorandum in response to, and in support of the following motions to seal ("Sealing Motions") filed by the parties:

- Plaintiffs' Motion for Leave to File Under Seal (Dkt. 605)
- Plaintiffs' Motion for Leave to File Under Seal (Dkt. 648)
- Plaintiffs' Motion for Leave to File Under Seal (Dkt. 661)
- Plaintiffs' Motion for Leave to File Under Seal (Dkt. 667)
- Plaintiffs' Motion for Leave to File Under Seal (Dkt. 712)

The parties have filed the materials at issue conditionally under seal consistent with the local rules and this Court's Electronic Case Filing Policies and Procedures (Dkt. Nos. 605, 648, 661, 667 and 712). The proposed sealed materials identified in the above sealing motions include non-party The Trade Desk's confidential, financial, proprietary, and competitively sensitive business information. Public disclosure of these materials would prejudice and cause harm to The Trade Desk. Accordingly, The Trade Desk respectfully requests that these confidential materials remain under seal.

## I.    LEGAL STANDARD

When a party moves to file material under seal that has been designated as confidential by another party, "the party designating the material as confidential must file a response to the motion complying with requirements (2), (3), and (4) above along with a proposed order" that "shall recite the findings required by governing case law to support the proposed sealing." Loc. R. Civ. P. 5(C). The requirements that the party must comply with are: "(2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request; (3) References to the governing case law, an analysis of the appropriate standard to be applied for that specific filing, and a description of how that standard has been satisfied;

[and] (4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and how the matter is to be handled upon unsealing." *Id.*

The Supreme Court has held that "the right [of the public] to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). For example, access to court records has been denied where "court files might have become a vehicle for improper purposes," such as where the records serve "as sources of business information that might harm a litigant's competitive standing." *Id.* In particular, a corporation's "strong interest in preserving the confidentiality of its proprietary and trade-secret information … may justify partial sealing of court records." *Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). As the Fourth Circuit has explained, a court has the authority to seal court documents "if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000)*; see also Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011).

## II.   DESCRIPTION OF MATERIALS SOUGHT TO BE SEALED

The Trade Desk seeks to seal, and to redact from the publicly filed versions, the following materials, set forth below.

### A.   Exhibits Filed in Support of Defendant's Motion for Summary Judgment (Sealing Motion at ECF No. 605)

1. <u>Exhibit 3 to the Declaration of Bryon Becker (ECF No. 581-3).</u>

This exhibit includes excerpts from the Expert Rebuttal Report of Robin S. Lee on behalf of Plaintiffs, which contains certain figures (Figures 69-72, 89) that represent financial information relating to the open-web display spending of The Trade Desk's clients. *See* Declaration of Prashant Sahita in Support of Non-party The Trade Desk's Memorandum in Response to, and in Support of, the Parties' Motions to Seal (Dkt. Nos. 605, 648, 661, 667 and 712) ¶ 5 ("Sahita Decl."). Such figures and unique data are highly confidential, business

sensitive proprietary information of The Trade Desk's clients.  *Id.*  If made public, this information and data may be leveraged by The Trade Desk's competitors to undercut The Trade Desk's pricing and disadvantage its competitive position in the marketplace.  *Id.*

        2.    <u>Footnote 93 to Exhibit 5 of the Declaration of Bryon Becker (ECF No. 581-5).</u>

This is a copy of excerpts of The Trade Desk's response to the European Commission's Questionnaire For Demand-Side Platforms relating to Google's integration of its publisher ad server DoubleClick for Publishers and its SSP/ad exchange AdX into Google Ad Manager ("GAM").  Sahita Decl. ¶ 6.  This information represents The Trade Desk's evaluative analysis of GAM and the advantages of Google's media platform strategy that The Trade Desk has analyzed after expending considerable resources, which inform The Trade Desk's positional strategies within the marketplace and are highly sensitive, non-public, business information developed over years of experience.  *Id*.  The information provided in these responses is highly confidential and contains competitively sensitive information and trade secrets of The Trade Desk and its business.  *Id.*

        3.    <u>Exhibit 10 to the Declaration of Bryon Becker (ECF No. 581-10).</u>

This exhibit includes a copy of the deposition testimony of The Trade Desk's Chief Revenue Officer regarding the potential impact of changes made to HTTP cookies (also known as browser cookies) on programmatic advertising as well as The Trade Desk's corporate strategy.  Sahita Decl. ¶ 7.  This information represents The Trade Desk's proprietary and highly confidential market analyses which informs its DSP strategy and future plans.  *Id*.  If made public, The Trade Desk's competitors may leverage this information to undermine The Trade Desk's DSP strategy and market position.  *Id*.  And notably, any presumption of public

disclosure is further lessened by the fact that the parties only cite to a limited portion of the transcripts (*i.e.*, 18:2-21:25, 313:18-21).

    4. <u>Exhibit 62 to the Declaration of Bryon Becker (ECF No. 586-2).</u>

This exhibit includes a copy of excerpts from the Expert Rebuttal Report of Adoria Lim on behalf of Plaintiffs in this case. The excerpts contain certain data gathered by The Trade Desk related to advertiser transactions through ad exchanges, including the revenues retained by The Trade Desk as a portion of such transactions. Sahita Decl. ¶ 8. This information represents The Trade Desk's proprietary and confidential trade secrets relating to The Trade Desk's pricing strategy and its customers. *Id.* The Trade Desk's pricing is amongst the business's most sensitive and confidential secrets. *Id.*

    5. <u>Figure 11 in Exhibit 97 to the Declaration of Byron Becker (ECF Nos. 595-7, 604-4).</u>

This exhibit includes data from The Trade Desk relating to purchases made by the Federal Aviation Administration and United States Postal Service. Sahita Decl. ¶ 9. This data breaks down exact revenue amounts for distinct media purchases made by the Federal Aviation Administration and the United States Postal Service using The Trade Desk's services and platform. *Id.* This information represents The Trade Desk's proprietary and confidential business information regarding The Trade Desk's pricing strategy and its customers. Disclosure of this information would cause competitive harm to the Trade Desk's position in the marketplace. *Id.*

  **B.** **Exhibits Filed in Support of Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Adoria Lim (Sealing Motion at ECF No. 648) and in Support of Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee (Sealing Motion at ECF No. 661)**

    1. <u>Figures 6 & 7, Exhibit B to Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee (ECF No. 647-2) and to Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee (ECF No. 660-2).</u>

  These figures include data relating to The Trade Desk's product market filters and open web display ad purchases made by the Federal Aviation Administration through The Trade Desk's platform. Sahita Decl. ¶ 11, This information represents The Trade Desk's proprietary and confidential business information regarding The Trade Desk's pricing strategy and its customers. *Id.* Disclosure of this information would cause competitive harm to the Trade Desk's position in the marketplace. *Id.*

  **C.** **Exhibits Filed in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (Sealing Motion at ECF No. 667)**

    1. <u>Figure 10, Exhibit 97 (ECF No. 665-15).</u>

  This figure contains data from The Trade Desk relating to purchases made by the Federal Aviation Administration using The Trade Desk platform and services. Such data breaks down exact revenue amounts for distinct media purchases and represents The Trade Desk's proprietary and confidential trade secret approach for pricing its services, which provides The Trade Desk with a competitive advantage in the marketplace. *See* Sahita Decl. ¶ 10.

    **D.**    **Exhibits Filed to the Declaration of Bryon Becker in Support of Defendant's Replies In Support of Defendant's Motion for Summary Judgment and Motions to Exclude (Sealing Motion at ECF No. 712)**

    1.  <u>Exhibits 144 and 145 (ECF Nos. 708-18 and 708-29).</u>

These exhibits contain certain data related to The Trade Desk's offered services to the U.S. Navy, such as the total spend by the U.S. Navy of The Trade Desk's programmatic advertising and an issued invoice—outlining costs and charged fees for The Trade Desk's rendered services. *See* Sahita Decl. ¶ 12. Such data breaks down costs and revenue amounts for distinct media purchases and represents The Trade Desk's proprietary and confidential trade secret approach for pricing its services. *Id.* Disclosure of this information would cause competitive harm to the Trade Desk's position in the marketplace. *Id.*

**III.**    **ARGUMENT**

To determine whether the interests in sealing the records outweigh the public's right of access, a court must follow a three-step process: "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft*, 218 F.3d at 302; *see also Adams v. Object Innovation, Inc.*, No. 11-cv-272, 2011 WL 7042224, at *4 (Dec. 5, 2011), *report & recommendation adopted*, 2012 WL 135428 (E.D. Va. Jan. 17, 2012). All three requirements are met here.

First, the public has been provided public notice of the request to seal and has had reasonable opportunity to object to this information being sealed. On April 26, 2024 (ECF No. 605) and May 17, 2024 (ECF Nos. 648, 661, 667), the Sealing Motions were filed publicly in accordance with Local Civil Rule 5. Additionally, The Trade Desk now files this memorandum in support of sealing. Considering "the Court has received no objections" to the sealing motions

during which time the "public has had ample opportunity to object," the first requirement under Ashcraft is met. 218 F.3d at 302; U.S. ex rel Carter v. Halliburton Co., No. 10-cv-864, 2011 WL 2077799, at *3 (E.D. Va. May 24, 2011) ("[T]he parties provided public notice of the request to seal that allowed interested parties a reasonable opportunity to object—nearly two weeks."); see also GTSI Corp. v. Wildflower Int'l, Inc., No. 09-cv-123, 2009 WL 1248114, at *9 (E.D. Va. Apr. 30, 2009).

Second, The Trade Desk is requesting less drastic alternatives to sealing the documents, and seeks to seal and redact only information that, pursuant to the Protective Order, the parties and third parties must keep confidential.  The parties filed a publicly redacted version of their briefs and exhibits thereto, in addition to a sealed version, and redacted only the limited portions that the parties seek to seal.  The parties have only sealed selected exhibits and redacted relevant excerpts, which constitutes "the least drastic method of shielding the information at issue." *Adams*, 2011 WL 7042224, at *4 ("[The] proposal to redact only the proprietary and confidential information, rather than seal the entirety of his declaration, constitutes the least drastic method of shielding the information at issue.").  The public has no legitimate interest in this information, which is confidential to The Trade Desk and does not provide pertinent information for this case.  The information that the parties seek to seal includes confidential, proprietary, and competitively sensitive business information belonging to The Trade Desk and such other parties that could face harm if such information were to be released publicly.  *See supra* Section II.A-D.  For example, certain of the materials sought to be sealed include The Trade Desk's proprietary and confidential trade secrets and pricing strategy for its services that, if disclosed, would harm and prejudice The Trade Desk by allowing its competitors to leverage the information to undercut The Trade Desk's pricing strategy and harm its position in the marketplace.  *See* Sahita Decl. ¶ 9.  Similarly, certain

of the materials sought to be sealed include highly confidential Demand Side Platform planning that, if disclosed, would allow competitors to gain an unfair advantage over The Trade Desk in the market. Sahita Decl. ¶ 11; *see also supra* Section II.A-D. Further, other materials sought to be sealed describe The Trade Desk's highly confidential future plans in the market which, if disclosed, would harm The Trade Desk by allowing competitors to position themselves such that they may more effectively compete against The Trade Desk. *See* Sahita Decl. ¶ 4; *see also supra* Section II.A. Other materials sought to be sealed also include information that third parties have designated confidential, which the parties are required to keep confidential. Filing this information under seal is the only procedure sufficient to preserve the confidential and sensitive nature of the information.

Third, there is support for filing portions of the parties' unredacted briefings, and exhibits thereto, under seal, with a publicly filed version containing strictly limited redactions. Such briefings, and exhibits thereto, contain material that falls within the scope of the Protective Order which requires that this information remain confidential. Moreover, The Trade Desk, along with other third parties, have designated such confidential information as competitively sensitive business information, the disclosure of which would cause harm. Placing these materials under seal is proper because the public's interest in access is outweighed by a party's interest in "preserving confidentiality" of the limited amount of confidential information that is "normally unavailable to the public." *Flexible Benefits Council v. Feltman*, No. 08-cv-371, 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008); *see also U.S. ex rel. Carter*, 2011 WL 2077799, at *3. As discussed, the portions of the parties' briefs, and exhibits thereto, sealed contain confidential information of The Trade Desk and other third parties.

## IV. CONCLUSION

The Trade Desk respectfully requests that the parties' Sealing Motion (Dkt. Nos. 605, 648, 661, 667, and 712) be granted and that such sealing be maintained under further Order of this Court.

Date: June 14, 2024

/s/ David L. Johnson
David L. Johnson
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-1061
david.johnson@lw.com

Elizabeth Prewitt (*pro hac vice* forthcoming)
Lauren Sun (*pro hac vice* forthcoming)
Ryan Maamoun (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1354
Facsimile: (212) 751-4864
elizabeth.prewitt@lw.com

Aaron T. Chiu (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
aaron.chiu@lw.com

*Attorneys for The Trade Desk, Inc.*

## CERTIFICATE OF SERVICE

I, David Johnson, hereby certify that on June 14, 2024, a true and correct copy of the foregoing document was served upon the following counsel of record in the manners, and at the email address, set forth below:

Eric Mahr
Freshfields Bruckhaus Deringer US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
*eric.mahr@freshfields.com*

Jeanette Bayoumi, Esq.
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
*Jeanette.Bayoumi@freshfields.com*

Matthew D. Statchel, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
*mstachel@paulweiss.com*

Erica Spevack
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Washington, DC 20006-1047
*espevach@paulweiss.com*

Karen L. Dunn, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Washington, DC 20006-1047
*kdunn@paulweiss.com*

Daniel Bitton
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
*dbitton@axinn.com*

Date: June 14, 2024

/s/ David L. Johnson
David L. Johnson
Elizabeth Prewitt
Aaron T. Chiu
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-1061
david.johnson@lw.com
elizabeth.prewitt@lw.com
aaron.chiu@lw.com

1