UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Google LLC<br><br>　　　　　Defendant. | Case No. 1:23-cv-00108-LMB-JFA<br><br>The Honorable Leonie M. Brinkema |

**DECLARATION OF PRASHANT SAHITA IN SUPPORT OF NON-PARTY THE TRADE DESK, INC.'S MOTION TO SEAL**

## DECLARATION OF PRASHANT SAHITA

I, Prashant Sahita, declare as follows:

1.      I am the Lead Senior Business Intelligence Analyst at The Trade Desk, Inc. ("The Trade Desk").  I have personal knowledge of the facts set forth herein and if called as a witness could and would testify competently to them.

2.      The Trade Desk is a self-service ad buying platform known as a demand-side platform ("DSP") and is headquartered in Ventura, California with offices in various cities in North America, Europe, Asia, and Australia.  The Trade Desk offers programmatic marketing operated by real-time decisions based on user identity, device information and other data points.  The Trade Desk enables highly personalized consumer experiences, and improves return-on-investment for companies and advertisers.

3.      I have worked at The Trade Desk since October 2021 and have extensive experience collaborating with various teams at The Trade Desk, including Sales, Client Services, Finance, Product, Technology, and Marketing to design and develop insights and capabilities to help guide strategic decision making at The Trade Desk.  In my current role as Lead Senior Business Intelligence Analyst at The Trade Desk, I, among other things, surface insights from multiple data sources to support complex operational decision making and competitive strategy; execute and/or coordinate critical advanced analytics initiatives on behalf of The Trade Desk; lead cross-functional teams to develop data-driven insights and decision metrics; and provide analysis of key performance indicators and success metrics across various business areas and develop actionable insights for leadership.  As part of my responsibilities, I regularly analyze competitively sensitive financial and performance data of The Trade Desk.

4.      By operating a DSP platform, The Trade Desk provides its clients access to digital

ad inventory and works with ad exchanges to deliver tailored digital experiences.  Each DSP offers a different mix of inventory options and products to choose from, making the choice of which DSPs to use a strategic choice.  The Trade Desk spends considerable resources to compete against other DSP platforms and provide the best performance for its clients' campaigns in terms of targeting, reach, cost-efficiency, and return-on-investment.  The Trade Desk's financials, knowledge and understanding of DSP strategies make part of the valuable service it provides to its clients and can be seen as a competitive advantage.

5.      Exhibit 3 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment (ECF No. 581-3) at figures 69-72 and 89 contain certain financial information relating to the open-web display spending of The Trade Desk's clients.  Such figures and unique data are highly confidential, business sensitive proprietary information of The Trade Desk and its clients.  If made public, this information and data may be leveraged by The Trade Desk's competitors to undercut The Trade Desk's pricing and disadvantage its competitive position in the marketplace.

6.      Footnote 93 to Exhibit 5 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment (ECF No. 581-5) contains an excerpt of The Trade Desk's response to the European Commission's Questionnaire For Demand-Side Platforms relating to Google's integration of its publisher ad server DoubleClick for Publishers and its SSP/ad exchange AdX into Google Ad Manager ("GAM").  This information represents The Trade Desk's evaluative analysis of GAM and the advantages of Google's media platform strategy that The Trade Desk has analyzed after expending considerable resources.  These analyses inform The Trade Desk's positional strategies within the marketplace and are highly sensitive, non-public, business information developed over years of experience. Public disclosure of this information

would cause harm to The Trade Desk's competitive position in the market.

7. Exhibit 10 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment (ECF 581-10) contains deposition testimony by The Trade Desk's Chief Revenue Officer regarding the potential impact of changes made to HTTP cookies (also known as browser cookies) on programmatic advertising as well as The Trade Desk's corporate strategy. This information represents The Trade Desk's proprietary and highly confidential market analyses which informs its DSP strategy and future plans. If made public, The Trade Desk's competitors may leverage this information to undermine The Trade Desk's DSP strategy and market position.

8. Exhibit 62 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment (ECF No. 586-2) contains certain data gathered by The Trade Desk related to advertiser transactions through ad exchanges, including the revenues retained by The Trade Desk as a portion of such transactions. Specifically, paragraphs 39, 42, and 48—including figures 6, 8, 9 and 10—discuss monthly financial information for advertiser transactions that flow through the AdX exchange—produced by The Trade Desk—which delineate certain of the Trade Desk's customers' highly sensitive and confidential web display purchases through The Trade Desk platform. Additionally, Footnote 50 contains certain of The Trade Desk's clients' ad exchange spend as well as invoices depicting the fees charged by The Trade Desk delineating the revenue retained by The Trade Desk in certain ad exchange purchases. This information represents The Trade Desk's proprietary and confidential trade secrets for how it prices its services. The Trade Desk's pricing is amongst the business's most sensitive and confidential secrets.

9. Exhibit 97, including Figure 11, to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment (ECF No. 595-7, 604-4) includes data from The Trade Desk relating to purchases made by the Federal Aviation Administration and United States Postal

Service.  This data breaks down exact revenue amount for distinct media purchases made by Federal Aviation Administration and the United States Postal Service using The Trade Desk's services and platform.  This information represents The Trade Desk's proprietary and confidential trade secret approach for pricing its services, which provides The Trade Desk with a competitive advantage in the marketplace. If made public, The Trade Desk would be harmed and prejudiced since its competitors may leverage the information to undercut The Trade Desk's pricing strategy and disadvantage its competitive position in the marketplace.

10. Figure 10 in Exhibit 97 of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (ECF No. 665-15) contains data from The Trade Desk relating to purchases made by the Federal Aviation Administration using The Trade Desk platform and services.  Such data breaks down exact revenue amount for distinct media purchases and represent The Trade Desk's proprietary and confidential trade secret approach for pricing its services, which provides The Trade Desk with a competitive advantage in the marketplace.

11. Figures 6 and 7 in Exhibit B to Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee (ECF No. 660-2) and Figures 6 and 7 in Exhibit B to Plaintiff's Opposition to Motion to Exclude the Testimony of Adoria Lim (ECF No. 647-2) include certain figures relating to The Trade Desk's product market filters and open web display ad purchases made by the Federal Aviation Administration through The Trade Desk's platform. This information represents The Trade Desk's proprietary and confidential trade secrets for deriving its DSP strategy and pricing, which provide The Trade Desk with a competitive advantage in the marketplace.

12. Exhibits 144 and 155 to the Declaration of Bryon Becker in Support of Defendant's Replies In Support of Defendant's Motion for Summary Judgment and Motions to Exclude (ECF

Nos. 708-18 and 708-29, respectively) include certain data related to The Trade Desk's offered services to the U.S. Navy, such as the total spend by the U.S. Navy of The Trade Desk programmatic advertising and an issued invoice—outlining costs and charged fees for The Trade Desk's rendered services. Such data breaks down costs and revenue amounts for distinct media purchases and represent The Trade Desk's proprietary and confidential trade secret approach for pricing its services, which provides The Trade Desk with a competitive advantage in the marketplace.

13. The financial figures and innovative approaches to pricing and DSP planning that are addressed in these exhibits are what differentiate The Trade Desk from other DSPs. Revealing these details could expose these creative elements to competitors, who might then replicate or undermine The Trade Desk's innovative strategies and competitive edge. The Trade Desk's discussions, analyses, and pricing have substantial economic and competitive value. The Trade Desk spends a significant amount of money and resources to develop such specialized knowledge and strategies in programmatic advertising to provide a commercially competitive DSP offering to its clients.

14. Public disclosure of The Trade Desk's discussions, analyses, and strategic considerations would cause The Trade Desk significant commercial and competitive harm and prejudice. Accordingly, disclosure would compromise The Trade Desk's position in the marketplace by giving its competitors an inside look into the proprietary practices that give The Trade Desk a competitive advantage in the programmatic advertising space and grant such competitors a valuable and inequitable shortcut to their own development efforts.

I declare under penalty of perjury under the laws of Virginia that the foregoing is true and correct and that this declaration was executed on June 14, 2024, in New York, New York.

_____
Prashant Sahita