UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiff, | Case No. 1:23-cv-00108-LMB-JFA |
| v. | The Honorable Leonie M. Brinkema |
| Google LLC | |
| Defendant. | |

**NON-PARTIES OMNICOM GROUP INC., DDB WORLDWIDE COMMUNICATIONS GROUP LLC, GSD&M LLC, AND OMD USA LLC'S MEMORANDUM IN RESPONSE TO, AND IN SUPPORT OF, THE PARTIES' MOTIONS TO SEAL (ECF NOS. 605, 612, 651, 661, 667, and 712)**

Pursuant to Rule 5.2(d) of the Federal Rules of Civil Procedure, Local Civil Rule 5(C), and the Court Order dated May 1, 2024 (ECF Nos. 621, 728), Non-Parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, and OMD USA LLC (collectively the "Omnicom Entities"), respectfully submits this memorandum in response to, and in support of the following motions to seal filed by the parties:

- Defendant Google LLC's Motion to Seal (ECF No. 605)
- Plaintiffs United States et al.'s Motion to Seal (ECF No. 612)
- Defendant Google LLC's Motion to Seal (ECF No. 651)
- Plaintiffs United States et al.'s Motion to Seal (ECF No. 661)
- Plaintiffs United States et al.'s Motion to Seal (ECF No. 667)
- Defendant Google LLC's Motion to Seal (ECF No. 712)

Consistent with the local rule and this Court's Electronic Case Filing Policies and Procedures, the parties have filed the materials at issue conditionally under seal, (ECF Nos. 605, 612, 651, 661, 667, and 712). As set forth further below, various of the materials that the Parties filed provisionally under seal contain confidential, financial, proprietary, and competitively sensitive business information belonging to the Omnicom Entities, which could cause significant harm to the business of the Omnicom Entities and their respective clients if released publicly. This material and information all satisfy the requisite sealing standards. The Omnicom Entities respectfully submit that they should remain under seal.

I.     **LEGAL STANDARD**

Local Civil Rule 5(C) requires that, when a party moves to file material under seal that another party has designated as confidential, "the party designating the material as confidential must file a response to the motion complying with requirements (2), (3), and (4) above along with a proposed order" that "shall recite the findings required by governing case law to support the

proposed sealing." Loc. R. Civ. P. 5(C).  These requirements are: "(2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request; (3) References to the governing case law, an analysis of the appropriate standard to be applied for that specific filing, and a description of how that standard has been satisfied; [and] (4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and how the matter is to be handled upon unsealing." *Id.*

"[T]he right [of the public] to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  Denial of access to court records is appropriate where "court files might have become a vehicle for improper purposes." *Id.*  A business's "strong interest in preserving the confidentiality of its proprietary and trade-secret information" may justify sealing of court records.  *Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).  Indeed, a court may seal court documents "if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).

## II.     DESCRIPTION OF MATERIALS SOUGHT TO BE SEALED

The Omnicom Entities seek to seal, and to redact from the publicly filed versions, the following materials, set forth below.  This response addresses all of the various exhibits filed provisionally under seal with Plaintiffs' Motion to Seal exhibits filed in support of Plaintiffs' Motions to Exclude Opinions of Itamar Simonson and Related Opinions of Mark Israel (ECF No. 612), Motion to Seal exhibits filed in support of Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee (ECF No. 661), and Motion to Seal exhibits filed in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (ECF No. 667) and Google's Motion to Seal exhibits filed in support of Defendant's Motion for Summary

Judgment (ECF No. 605); Motion to Seal exhibits filed in support of Defendant's Opposition to Plaintiffs' Motions to Exclude (ECF No. 651), and Motion to Seal exhibits filed in support of Defendant's Reply in Support of its Motion for Summary Judgment (ECF No. 712).  Attached to this response as Appendix A is an in-depth breakdown of each exhibit, or portion of exhibit, the Omnicom Entities support sealing alongside the exhibits' associated docket numbers and citations to support for sealing the information included in the Omnicom Entities' accompanied declarations discussed below.

      A.    **Exhibits Filed in Support of Defendant's Motion for Summary Judgment (Sealing Motion at ECF No. 605)**

      1.    <u>Exhibit 11 to the Declaration of Bryon Becker (ECF No. 597-10)</u>.  This is an excerpt of the deposition testimony of Omnicom Group Inc.'s Rule 30(b)(6) designee in this litigation.  The excerpted testimony discusses Omnicom's relationships with past and current DSP partners and the considerations of Omnicom's agencies when it comes to recommend one DSP partner over another to a client.  *See* Declaration of Luke Lambert in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, and OMD USA LLC's Memorandum in Response to, and in Support of, the Parties' Motions to Seal (ECF Nos. 605, 612, 651, 661, 667, and 712) ¶ 5 ("Lambert Decl.").  Omnicom's selection of DSP partners, including how it leverages those partnerships and the agencies' views on the relative benefits and disadvantages of each, is highly sensitive business information upon which Omnicom agencies' rely on to remain competitive in the market.  Lambert Decl. ¶¶ 4-5.  Public disclosure of this information would cause these agencies significant commercial and competitive harm or prejudice by giving their competitors an inside look at the Omnicom Entities' decades of intimate industry knowledge and proprietary practices that clients come to Omnicom's agencies precisely for.  *See* Lambert Decl. ¶ 13.

        2.       <u>Exhibit 75 to the Declaration of Byron Becker (ECF Nos. 588-5, 602-5)</u>. This exhibit is an email thread between GSD&M and the Air Force from 2022 that includes notes from GSD&M's media, advertising and marketing recommendations to the Air Force. *See* Declaration of Bo Bradbury in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, and OMD USA LLC's Memorandum in Response to, and in Support of, the Parties' Motions to Seal (ECF Nos. 605, 612, 651, 661, 667, and 712) ¶ 5 ("Bradbury Decl."). It consists of GSD&M's recommended investment amounts across media tactics, channels and platforms based on the Air Force's goals and objectives. *See* Bradbury Decl. ¶ 5. This information represents GSD&M's proprietary and confidential trade secret approach for deriving media strategy, which provides GSD&M with a competitive advantage in the marketplace while helping the Air Force compete in a contested recruiting landscape. *See* Bradbury Decl. ¶ 5.

        3.       <u>Exhibit 77 to the Declaration of Byron Becker (ECF No. 602-6)</u>. This is a DDB presentation prepared 2022 for the Army that provides an in-depth, step-by-step outline of DBB's optimization strategy, including the data sources that DDB proposes utilizing to track performance as well as specific actions that DDB recommends taking to optimize performance based on the data results. *See* Declaration of Maria Stuckel in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, and OMD USA LLC's Memorandum in Response to, and in Support of, the Parties' Motions to Seal (ECF Nos. 605, 612, 651, 661, 667, and 712) ¶ 4 ("Stuckel Decl."). The contents of this presentation represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace. *See* Stuckel Decl. ¶ 4.

Public disclosure of the information and this document would cause both DDB and the Army significant competitive harm.  *See* Stuckel Decl. ¶¶ 7-8.

        4.      <u>Exhibit 97 to the Declaration of Byron Becker (ECF Nos. 595-7, 604-4)</u>. This exhibit includes data from two Google platforms, DV360 and Google Ads, relating to purchases made by GSD&M on behalf of the Air Force and DDB on behalf of the Army.  *See* Bradbury Decl. ¶ 6; *see also* Declaration of Ron Davis in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, and OMD USA LLC's Memorandum in Response to, and in Support of, the Parties' Motions to Seal (ECF Nos. 605, 612, 651, 661, 667, and 712) ¶ 5 ("Davis Decl.").  The data provides Google's exact revenue amount for distinct media purchases which reflect the exact investment amounts that GSD&M and DDB were authorized to execute on behalf of the Air Force and Army, respectively, pursuant to the scope of work.  *See* Bradbury Decl. ¶ 6; Davis Decl. ¶ 5.  This information represents GSD&M's and DDB's confidential investment strategy in relation to their media, advertising and marketing plan devised for the Air Force and Army.  *See* Bradbury Decl. ¶ 6; Davis Decl. ¶ 5.

    **B.**    **Exhibits Filed in Support of Plaintiffs' Motions to Exclude Opinions of Itamar Simonson and Related Opinions of Mark Israel (Sealing Motion at ECF No. 612)**

        1.      <u>Exhibit H (ECF No. 614-4)</u>.  This portion of the Expert Report of Mark A. Israel is an in-depth breakdown of Omnicom's top twenty-five clients' spending across selected ad tech tools and social media advertising from 2019 through 2022 which reflects Omnicom's recommended investment amounts across media tactics and channels based on each client's goals and objectives.  See Lambert Decl. ¶ 9.  This information represents Omnicom's proprietary and confidential trade secret approach for deriving media strategy, which provides Omnicom with a competitive advantage in the marketplace.  *See* Lambert Decl. ¶ 9.  Public

5

disclosure of this information would cause competitive harm to Omnicom as well as its clients, given that information regarding Omnicom's recommended spending on various types of advertising and their actual spend could easily reveal proprietary and business sensitive insights into the Omnicom's proprietary and trade secrets regarding how to derive and drive media strategy, and the marketing strategies of Omnicom's clients. *See* Lambert Decl. ¶¶ 12-13.

    **C.**    **Exhibits Filed in Support of Defendant's Opposition to Plaintiffs' Motions to Exclude (Sealing Motion at ECF No. 651)**

        1.    Exhibit 107 to the Declaration of Bryon Becker (ECF No. 650-5). This exhibit is an excerpt of Omnicom's 30(b)(6) deposition testimony that discusses Omnicom and its agencies' media optimization strategies. This information is essentially a step-by-step outline of the creative concepts and innovative approaches to media buying and planning that differentiate Omnicom agencies from other agencies. *See* Lambert Decl. ¶¶ 8, 12. This information represents the agencies' proprietary and confidential trade secret approach for deriving media strategy, which provides them with a competitive advantage in the marketplace. *See* Lambert Decl. ¶ 8.

    **D.**    **Exhibits Filed in Support of Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee (Sealing Motion at ECF No. 661)**

        1.    Exhibit E, Footnote 193 (ECF No. 663-3). This portion of the Expert Rebuttal Report of Robin S. Lee, PhD includes references to a presentation prepared by Omnicom agency Resolution Media for client DXL that includes an analysis of DXL's campaign performance targets and actual results across media channels for the previous quarter. *See* Lambert Decl. ¶ 10. This information represents Resolution Media's proprietary and confidential trade secret approach for deriving media strategy, which provides Resolution Media with a competitive advantage in the marketplace. *See* Lambert Decl. ¶¶ 10, 12.

2. <u>Exhibit E, Footnote 315 (ECF No. 663-3)</u>. This portion of the Expert Rebuttal Report of Robin S. Lee, PhD includes portions of a presentation prepared by OMD that was created to provide OMD client McDonald's with in-depth analysis and discussion of how to best leverage programmatic buying to further its media and marketing goals. *See* Lambert Decl. ¶ 11. This information represents OMD's proprietary and confidential trade secret approach for deriving media strategy, which provides OMD with a competitive advantage in the marketplace. *See* Lambert Decl. ¶¶ 11-12.

    **E.**    **Exhibits Filed in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (Sealing Motion at ECF No. 667)**

1. <u>Exhibit 6 (ECF No. 670-5)</u>. This is an excerpt of Omnicom's 30(b)(6) deposition testimony that relates to Omnicom's business structure and Omnicom agencies' relationships with both clients and media platforms. *See* Lambert Decl. ¶ 6. This discussion includes Mr. Lambert's evaluative analysis of Google's media platforms which is sensitive business information based on his years of experience in the industry and is leveraged on behalf of Omnicom to provide it with a competitive advantage in the marketplace. *See* Lambert Decl. ¶ 6.

2. <u>Exhibit 12 (ECF No. 670-11)</u>. This is an excerpt of Bo Bradbury's deposition testimony that discusses the types of advertising and related services that GSD&M has been authorized to execute on behalf of the Air Force pursuant to the scope of work. *See* Bradbury Decl. ¶ 7. This excerpt represents GSD&M's proprietary and confidential trade secret approach to media, advertising and marketing strategy, in particular GSD&M's investment priorities and confidential billing practices. *See* Bradbury Decl. ¶ 7. Public disclosure of the Air Force's unique marketing strategy would provide competing recruiting entities and GSD&M's competitors an inside look into how GSD&M operationalizes a full service media, advertising

and marketing account plan for specific clients, which is the exact sort of analysis and planning upon which GSD&M competes to remain competitive in the market. *See* Bradbury Decl. ¶ 12.

        3.      <u>Exhibit 70 (ECF No. 659-8)</u>. This is a DDB presentation to the Army that provides in-depth analysis and discussion on the types of media channels DDB recommends that the Army invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and DBB's recommended partners, publishers, and platforms for which to implement each aspect of the media plan. *See* Stuckel Decl. ¶ 5. The contents of this presentation represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace. *See* Stuckel Decl. ¶¶ 5, 7.

        4.      <u>Exhibit 91 (ECF No. 665-11)</u>. This is a procurement contract from the Air Force authorizing a four-year contract with GSD&M for its advertising and marketing services which includes itemized pricing that represents GSD&M's proprietary, confidential and competitively sensitive winning bid for the Air Force's business. *See* Bradbury Decl. ¶ 8. Public disclosure of this information would reveal confidential Air Force information and provide insight into their marketing priorities, objectives, and goals, all of which is shaped by the work of GSD&M. *See* Bradbury Decl. ¶ 12. The disclosure of Air Force's unique marketing strategy would provide competing recruiting entities and GSD&M's competitors an inside look into how GSD&M operationalizes a full service media, advertising and marketing account plan for specific clients, which is the exact sort of analysis and planning upon which GSD&M competes to remain competitive in the market. *See* Bradbury Decl. ¶ 12.

        5.      <u>Exhibit 92 (ECF No. 665-11)</u>. This is a procurement contract from the Army authorizing a five-year contract with DDB for its media, advertising and marketing

services which includes itemized pricing that represents DDB's proprietary, confidential, and competitively sensitive winning bid for the Army's business. *See* Davis Decl. ¶ 6. Public disclosure of this information would reveal confidential Army information and provide insight into their recruitment strategies and objectives, which are shaped by the work of DDB. *See* Davis Decl. ¶ 9. The disclosure of the Army's specific mix of media, advertising and marketing personnel investments would provide competing recruiting entities and DDB's competitors an inside look into how DDB operationalizes a full service media, advertising and marketing account plan for specific clients, which is the exact sort of analysis and planning upon which DDB competes to remain competitive in the market. *See* Davis Decl. ¶ 9.

      **F.**      **Exhibits Filed in Support of Defendant's Reply in Support of its Motion for Summary Judgment (Sealing Motion at ECF No. 712)**

            1.      <u>Exhibit 138 to the Declaration of Bryon Becker (ECF No. 709-6)</u>. This is an excerpt of Omnicom's 30(b)(6) deposition testimony discussing the level of autonomy that Omnicom agencies have when making investments on behalf of the Army, including Team DDB's ability to act on media strategy without Army approval and in what instances such action is taken. *See* Lambert Decl. ¶ 7. This information represents Team DDB's confidential and proprietary approach to operationalizing a full-service media, advertising and marketing account for specific clients. *See* Lambert Decl. ¶ 7.

            2.      <u>Exhibit 139 to the Declaration of Bryon Becker (ECF No. 709-7)</u>. This is an invoice from GSD&M to the Air Force for services that provides the exact investment amounts that GSD&M was authorized to execute on behalf of the Air Force across media tactics, channels and platforms pursuant to the scope of work. *See* Bradbury Decl. ¶ 9. This information represents GSD&M's confidential investment strategy in relation to its media, advertising and marketing plan devised for the Air Force. *See* Bradbury Decl. ¶ 9. Public disclosure of this

information would reveal confidential Air Force information and provide insight into their marketing priorities, objectives, and goals, all of which is shaped by the work of GSD&M.  *See* Bradbury Decl. ¶ 12.  The disclosure of Air Force's unique marketing strategy would provide competing recruiting entities and GSD&M's competitors an inside look into how GSD&M operationalizes a full service media, advertising and marketing account plan for specific clients, which is the exact sort of analysis and planning upon which GSD&M competes to remain competitive in the market.  *See* Bradbury Decl. ¶ 12.

    3. <u>Exhibit 140 to the Declaration of Bryon Becker (ECF No. 709-8)</u>.  This is a collection of vouchers and invoices tracking a national media investment made by DDB through Google on the Army's behalf that provide the exact investment amount that DDB was authorized to execute through Google on behalf of the Army.  *See* Davis Decl. ¶ 7.  This information represents DDB's confidential investment strategy in relation to DDB's media, advertising and marketing plan devised for the Army.  *See* Davis Decl. ¶ 7.

    4. <u>Exhibit 154 to the Declaration of Bryon Becker (ECF No. 709-19)</u>.  This is a DDB presentation prepared for the Army regarding DDB's national paid media utilization assessments for the fourth quarter of the 2021 fiscal year.  *See* Stuckel Decl. ¶ 6.  The portion of the presentation included in Exhibit 154 also includes an in-depth breakdown of the marketing mix that DDB recommended to the Army for the fourth quarter of the 2021 fiscal year, including recommended investment amounts based on the Army's goals and objectives.  *See* Stuckel Decl. ¶ 6.  The contents of this presentation represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.  *See* Stuckel Decl. ¶¶ 6-7.

**III.     ARGUMENT**

Although there is a general presumption that the public has the right to access documents in the files of the courts, this presumption may be overcome "if the public's right of access is outweighed by competing interests." *Ashcraft*, 218 F.3d at 302 (citation omitted); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). To determine whether the interests in sealing the records outweigh the public's right of access, a court must follow a three-step process: "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft*, 218 F.3d at 302; *see also Adams v. Object Innovation, Inc.*, No. 11-cv-272, 2011 WL 7042224, at *4 (Dec. 5, 2011), *report & recommendation adopted*, 2012 WL 135428 (E.D. Va. Jan. 17, 2012). Here, the three requirements are met.

First, the public has received notice of the requests to seal and has had reasonable opportunity to object. The Sealing Motions were publicly docketed in accordance with Local Civil Rule 5 on April 26, 2024 (ECF Nos. 605, 612), May 17, 2024 (ECF Nos. 651, 661, 667), and May 31, 2024 (ECF No. 712). Since the "public has had ample opportunity to object" to all Sealing Motions and "the Court has received no objections," the first requirement under *Ashcraft* is met. 218 F.3d at 302; *see also GTSI Corp. v. Wildflower Int'l, Inc.*, No. 09-cv-123, 2009 WL 1248114, at *9 (E.D. Va. Apr. 30, 2009); *U.S. ex rel Carter v. Halliburton Co.*, No. 10-cv-864, 2011 WL 2077799, at *3 (E.D. Va. May 24, 2011) ("[T]he parties provided public notice of the request to seal that allowed interested parties a reasonable opportunity to object—nearly two weeks.").

Second, the Omnicom Entities seek only to seal and redact from the public record a narrow set of exhibits and testimony that involve or discuss proprietary commercial information, such as

11

current pricing and media strategy, disclosure of which would harm not only the Omnicom Entities, but their clients as well.  *See generally supra* Section II.A-F.  This selective and narrow protection of confidential material constitutes "the least drastic method of shielding the information at issue."  *Adams*, 2011 WL 7042224, at *4 ("[The] proposal to redact only the proprietary and confidential information, rather than seal the entirety of his declaration, constitutes the least drastic method of shielding the information at issue.").  While the public may have an interest in the fact that FAAs purchase display advertising and their general process for doing so, the details of their current strategy and specific prices paid may remain under seal.  *See Bayer CropScience Inc. v. Syngenta Crop Protection, LLC*, 979 F. Supp. 2d 653, 656-57 (M.D.N.C. 2013) (ordering sealing to prevent disclosure of "confidential marketing and sales information"); *Ultra-Mek, Inc. v. United Furniture Indus., Inc.*, No. 18-CV-281, 2021 WL 8533815, at *5 (M.D.N.C. Mar. 22, 2021) ("Where the information involved is sensitive business information, particularly such information with little to no value for public dissemination, the presumption of access is overcome.").  For example, certain of the materials sought to be sealed include highly confidential pricing data that, if disclosed, would allow competitors to gain an unfair advantage over Omnicom's agencies in the market.  Further, other materials sought to be sealed describe the Omnicom Entities and their respective agencies' commercially competitive strategy recommendations and guidance for clients which, if disclosed, could harm the various Omnicom Entities by, for example, allowing competitors replicate or undermine a particular agency's innovative strategies and competitive edge.  No procedure other than filing this information under seal is sufficient to preserve the confidential and sensitive nature of the information.

Third, there is ample support for filing these portions of the parties' briefings and exhibits under seal.  *See generally supra* Sections II.A-F.  The materials that the Omnicom Entities seek to

keep sealed contain information that the Omnicom Entities or other third parties (specifically, their clients) have designated as competitively sensitive business information, the disclosure of which would cause significant business and competitive harm to the Omnicom Entities and/or their respective clients.  Placing these materials under seal is proper because the public's interest in access is outweighed by the interest of the Omnicom Entities and their clients in "preserving confidentiality" of the limited amount of confidential information that is "normally unavailable to the public." *Flexible Benefits Council v. Feltman*, No. 08-cv-371, 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008); *see also U.S. ex rel. Carter*, 2011 WL 2077799, at *3.  As discussed above, the public disclosure of these materials and the information contained within would be detrimental to both the Omnicom Entities and their FAA clients.  *See generally supra* Sections II.A-F.  It would reveal the FAA clients' confidential marketing priorities, objectives, and goals, while also giving Omnicom's competitors an inside look into how the agencies operationalize a full service media, advertising and marketing account for specific clients.  This is the exactly the sort of information, analysis and planning upon which the Omnicom Entities compete to remain competitive in the marketplace.

## IV.     CONCLUSION

The Omnicom Entities respectfully request that the parties' Sealing Motions (ECF Nos. 605, 612, 651, 661, 667, and 712) be granted in regards to the above discussed materials and that such sealing be maintained until further Order of this Court.


Dated:  June 14, 2024                                         Respectfully  submitted,

                                                           */s/ David L. Johnson*
                                                           David L. Johson (VSB No. 89289)
                                                           david.johnson@lw.com
                                                           LATHAM & WATKINS LLP

555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
Tel: (202) 637-2200; Fax: (202) 637-2201

Niall E. Lynch (*pro hac vice*)
niall.lynch@lw.com
Aaron T. Chiu (*pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600; Fax: (415) 395-8095

*Counsel for Non-Parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, and OMD USA LLC*

**APPENDIX A TO MEMORANDUM IN SUPPORT OF MOTION TO SEAL**

| Defendant Google LLC's Motion to Seal (ECF No. 605) | | |
|---|---|---|
| **Exhibit** | **ECF No.** | **Basis for Sealing** |
| Exhibit 11 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment | 597-10 | Lambert Decl. ¶ 5 |
| Exhibit 75 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment | 588-5 <br> 602-5 | Bradbury Decl. ¶ 5 |
| Exhibit 77 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment | 602-6 | Stuckel Decl. ¶ 4 |
| Exhibit 97 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment | 595-7 <br> 604-4 | Bradbury Decl. ¶ 6; Davis Decl. ¶ 5. |
| **Plaintiffs United States et al.'s Motion to Seal (ECF 612)** | | |
| **Exhibit** | **ECF No.** | **Basis for Sealing** |
| Page 181 of Exhibit H to Plaintiffs' Motion to Exclude Opinions of Itamar Simonson and Related Opinions of Mark Israel | 614-4 | Lambert Decl. ¶ 9. |
| **Defendant Google LLC's Motion to Seal (ECF No. 651)** | | |
| **Exhibit** | **ECF No.** | **Basis for Sealing** |
| Exhibit 107 to the Declaration of Bryon Becker in Support of Defendant's Oppositions to Plaintiffs' Motions to Exclude | 650-5 | Lambert Decl. ¶ 8. |
| **Plaintiffs United States et al.'s Motion to Seal (ECF No. 661)** | | |
| **Exhibit** | **ECF No.** | **Basis for Sealing** |
| Exhibit E to Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee, PhD. | 663-5 | Lambert Decl. ¶ 10. |
| | | Lambert Decl. ¶ 11. |
| **Plaintiffs United States et al.'s Motion to Seal (ECF No. 667)** | | |
| **Exhibit** | **ECF No.** | **Basis for Sealing** |
| Exhibit 6 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment | 670-5 | Lambert Decl. ¶ 6. |

## APPENDIX TO MEMORANDUM IN SUPPORT OF MOTION TO SEAL

| Exhibit | ECF No. | Basis for Sealing |
|---|---|---|
| Exhibit 12 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment | **670-11** | Bradbury Decl. ¶ 7. |
| Exhibit 70 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment | **659-8** | Stuckel Decl. ¶ 5. |
| Exhibit 91 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment | **665-11** | Bradbury Decl. ¶ 8. |
| Exhibit 92 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment | **665-11** | Davis Decl. ¶ 8. |
| **Defendant Google LLC's Motion to Seal (ECF No. 712)** | | |
| **Exhibit** | **ECF No.** | **Basis for Sealing** |
| Exhibit 138 to the Declaration of Bryon Becker in Support of Defendant's Reply in Support of its Motion for Summary Judgment | **709-6** | Lambert Decl. ¶ 7. |
| Exhibit 139 to the Declaration of Bryon Becker in Support of Defendant's Reply in Support of its Motion for Summary Judgment | **709-7** | Bradbury Decl. ¶ 9. |
| Exhibit 140 to the Declaration of Bryon Becker in Support of Defendant's Reply in Support of its Motion for Summary Judgment | **709-8** | Davis Decl. ¶ 7. |
| Exhibit 154 to the Declaration of Bryon Becker in Support of Defendant's Reply in Support of its Motion for Summary Judgment | **709-19** | Stuckel Decl. ¶ 6. |