# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| United States of America, *et al.*,<br><br>       Plaintiff,<br><br>   v.<br><br>Google LLC<br><br>       Defendant. | Case No. 1:23-cv-00108-LMB-JFA<br><br>The Honorable Leonie M. Brinkema |

**DECLARATION OF LUKE LAMBERT IN SUPPORT OF NON-PARTIES OMNICOM GROUP INC., DDB WORLDWIDE COMMUNICATIONS GROUP LLC, GSD&M LLC, AND OMD USA LLC'S MEMORANDUM IN RESPONSE TO, AND IN SUPPORT OF, THE PARTIES' MOTIONS TO SEAL (ECF NOS. 605, 612, 651, 661, 667, and 712)**

**DECLARATION OF LUKE LAMBERT**

I, Luke Lambert, declare as follows:

1. I am the Chief Innovation Officer at OMD USA ("OMD"), a subsidiary company of Omnicom Group Inc. ("Omnicom"). I have personal knowledge of the facts set forth herein and if called as a witness could and would testify competently to them. I previously testified at deposition as non-party Omnicom's Rule 30(b)(6) designee in this litigation. I make this declaration in support of Omnicom's Motion to Seal Portions of the Parties' Briefing on Summary Judgment.

2. OMD is an integrated media communications agency that provides strategic media planning and buying guidance to clients. These media plans are designed to meet each client's specific business or awareness goals and are a product of extensive client input, market research, and creative brainstorming. As a subject matter expert in the media advertising space, OMD is intimately familiar with the platforms, products, and tools available to advertising clients.

3. I have worked at OMD for over eight years and have extensive experience with every side of the media transaction. In my current role as Chief Innovation Officer at OMD, I lead a team of channel, format, and capability experts dedicated to creating products across the media ecosystem that can deliver holistic tactical planning capabilities. I also host OMD's company podcast, OMD Red Talks, which focuses on exploring what's new and what's next in marketing and media. My experience in the digital media industry generally, and within OMD specifically, gives me an intimate comprehensive understanding of the types of strategies, mixes of media, and recommendations that an agency like OMD or others would make to clients. These proprietary strategies that OMD and Omnicom's other agencies have developed are based on extensive industry knowledge and these are what their clients pay for.

4. One particular platform type that OMD has extensive institutional knowledge of is the demand-side platform or DSP. A DSP is an advertising platform that provides OMD and its clients access to the digital ad inventory. Each DSP offers a different mix of inventory options and products to choose from, making the choice of which DSPs to use a strategic choice that OMD's clients look to OMD for guidance on. OMD spends considerable time testing and analyzing different DSPs to determine which ones provide the best performance for its clients' campaigns in terms of targeting, reach, cost-efficiency, and return on investment (ROI). OMD's knowledge and understanding of how to best leverage DSP options for each client's individual goal is a valuable service that OMD and other Omnicom agencies provide to their clients and can be seen as a competitive advantage.

5. Exhibit 11 to the Declaration of Bryon Becker in Support of Defendant's Motion for Summary Judgment (ECF No. 597-10) is an excerpt of my deposition testimony relating to Omnicom agencies' relationships with past and current DSP partners and the agencies' considerations when recommending one DSP partner over another to a client. DSP partners are DSPs that an Omnicom agency has a recognized contractual relationship with for media buying. These strategic partnerships provide Omnicom agencies' clients with unique features, services, or access to specific types of inventory and are part of the agencies' strategic assets and offerings to clients. Omnicom's partners are selected based on evaluation by Omnicom's agencies of the uniqueness of the platform itself, including whether the DSP offers unique data access, inventory access, format access, development capabilities, or some combination therein. This evaluation is premised on the expertise and experience of the agencies and clients pay for access to the end-result, a curated network of DSPs. Omnicom's selection of DSP partners, including how it leverages those partnerships and the agencies' views on the relative benefits and disadvantages of

each, is highly sensitive business information upon which Omnicom agencies' rely on to remain competitive in the market. Specifically, my testimony at 119:13-122:17 discusses an internal email titled "Programmatic Updates, Digital Center of Excellence" that was sent to Omnicom's Team DDB, a collection of Omnicom agencies of which OMD is a member. This email provides updates regarding the various DSP partners that work with Omnicom's agencies and client considerations. The remaining portion of my testimony included in Exhibit 11 is a series of questions from Defendant's counsel, and my corresponding response, requesting insight into the strategy behind why, and in what situations, an Omnicom agency may recommend one DSP or its related products to a client over another DSP. Accordingly, this excerpt represents Omnicom's proprietary and confidential trade secret approach to media strategy, in particular Omnicom agencies' development of DSP partner relationships which are designed to provide the agencies with a competitive advantage in the marketplace.

6. Exhibit 6 of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (ECF No. 670-5) is an excerpt of my deposition testimony that relates to Omnicom's business structure and Omnicom agencies' relationships with both clients and media platforms. Specifically, my testimony at 241:01-242:24 explains the frequency and substance of meetings between OMD and the United States Army relating to OMD's media plan and investment recommendations for the Army. Additionally, at 250:2-251:18, Plaintiffs' counsel asks me about any concerns I might have with Google platforms, including Google's DSP, DV360. This discussion includes my evaluative analysis of Google's media platforms which is sensitive business information based on my years of experience in the industry that I leverage on behalf of OMD to provide it, and Omnicom generally, with a competitive advantage in the marketplace.

7. Exhibit 138 to Defendant's Reply in Support of its Motion for Summary Judgment

(ECF No. 709-6) is an excerpt of my deposition testimony that relates to the level of autonomy that Omnicom agencies have when making investments on behalf of the Army. Specifically, portions at 106:1-109:25 discuss the scope of Team DDB's work for the Army, including Team DDB's ability to act on media strategy without Army approval and in what instances such action is taken. This information represents Team DDB's confidential and proprietary approach to operationalizing a full-service media, advertising and marketing account for specific clients.

8. Exhibit 107 to the Declaration of Bryon Becker in Support of Defendant's Oppositions to Plaintiffs' Motions to Exclude (ECF No. 650-5) is an excerpt of my deposition testimony that discusses Omnicom and its agencies' media optimization strategies. Specifically, my testimony at 114:1-117:25 discusses the circumstances under which an Omnicom agency may recommend a shift in a client's investment dollars from one media channel to another. This information is essentially a step-by-step outline of an Omnicom agency's optimization strategy. An agency's approach to optimization represents a proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.

9. Exhibit H to Plaintiffs' Motion to Exclude Opinions of Itamar Simonson and Related Opinions of Mark Israel (ECF No. 614-4) includes an in-depth breakdown of Omnicom's top twenty-five clients spending across selected ad tech tools and social media advertising from 2019 through 2022. This information shows Omnicom's recommended investment amounts across media tactics and channels based on each client's goals and objectives. This information represents Omnicom's proprietary and confidential trade secret approach for deriving media strategy, which provides Omnicom with a competitive advantage in the marketplace.

10. Footnote 193 in Exhibit E to Plaintiffs' Opposition to Defendant's Motion to

Exclude the Testimony of Professor Robin S. Lee, PhD. (ECF No. 663-5) includes references to a presentation prepared by Omnicom agency Resolution Media for client DXL regarding Resolution Media's national paid media utilization assessments for the first quarter of the 2019 fiscal year. The purpose of this presentation is to provide DXL with a comprehensive review of DXL's media plan for the last quarter, including analysis on the effectiveness of different media channels and the performance of the partners, publishers, and platforms that Resolution Media used to implement the media plan. The portion specifically referenced in footnote 193 is an in-depth breakdown of DXL's return on ad spend, a key performance indicator that tracks the amount of revenue that is earned for every dollar spent on a campaign. The referenced portion provides an analysis of DXL's ROAS targets and actual results across media channels for the previous quarter. This information and the other information contained in this presentation represent Resolution Media's proprietary and confidential trade secret approach for deriving media strategy, which provides Resolution Media with a competitive advantage in the marketplace.

11. Footnote 315 in Exhibit E to Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Professor Robin S. Lee, PhD. (ECF No. 663-5) includes portions of a presentation prepared by OMD entitled "Evolving the Role of Programmatic" for OMD's client McDonald's. This presentation was created to provide McDonald's with in-depth analysis and discussion of how to best leverage programmatic buying to further its media and marketing goals. The portions specifically referenced in footnote 315 show OMD's recommendations on how to optimize McDonald's premium inventory for better pricing and performance. This information represents OMD's proprietary and confidential trade secret approach for deriving media strategy, which provides OMD with a competitive advantage in the marketplace.

12. The creative concepts and innovative approaches to media buying and planning that are addressed in these exhibits are what differentiate Omnicom agencies from other agencies. Revealing these details could expose these creative elements to competitors, who might then replicate or undermine Omnicom, OMD and other Omnicom agencies' innovative strategies and competitive edge. Omnicom and its agencies' discussions, analyses, and strategic recommendations to a client regarding its media marketing have substantial economic and competitive value. They spend a significant amount of money and resources to develop the specialized knowledge of the media, advertising and marketing marketplace required to create commercially competitive strategy recommendations and guidance for clients.

13. Public disclosure of Omnicom agencies' discussions, analyses, and considerations regarding the advantages and drawbacks of various media partners, channels and investment approaches would cause Omnicom, OMD and other Omnicom agencies significant commercial and competitive harm or prejudice. Disclosure would compromise these agencies' positions in the marketplace by destroying the decades of intimate industry knowledge and the resulting network of industry partners that clients come to Omnicom's agencies precisely for. In essence, divulging this information would give Omnicom's competitors an inside look into the proprietary practices that give Omnicom's agencies their competitive advantage in the marketplace. To the extent other companies within the advertising space obtained detailed information regarding Omnicom's proprietary evaluations of the media, they would gain a valuable and inequitable shortcut to their own development efforts.

I declare under penalty of perjury under the laws of Virginia that the foregoing is true and correct and that this declaration was executed on June 13, 2024, in Chicago, Illinois.

_____
Luke Lambert