UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>    *Plaintiffs*,<br><br>vs.<br><br>GOOGLE LLC,<br><br>    *Defendant*. | No: 1:23-cv-00108-LMB-JFA |

**NON-PARTY SOVRN HOLDINGS, INC.'S OBJECTIONS TO PUBLIC USE OF
<u>CONFIDENTIAL INFORMATION AT TRIAL</u>**

Pursuant to Local Civil Rule 5(H), and the Court's June 24, 2024 Order (Dkt. 871), non-party Sovrn Holdings, Inc. ("Sovrn") hereby provides its objections to the public use of its Confidential proprietary information contained in exhibits or testimony at trial.[1] In particular, and for the reasons stated herein, Sovrn objects to the public use of its Confidential and/or Highly Confidential competitively-sensitive proprietary information in public at trial ("Highly Confidential Information"). Sovrn objects to the public use of portions of the following exhibits, as specified and fully set forth below in Section I(A):

---

[1] Sovrn necessarily relies on the parties to disclose which of its Confidential and/or Highly Confidential information has been used in its trial exhibits. Sovrn files this memorandum based on having received notification the Parties of the use at trial of exhibits containing charts and figures created, in part, from Sovrn's confidential information marked Confidential and/or Highly Confidential pursuant to the protective order. While the parties notified Sovrn that its Confidential Information is included in their exhibits, Sovrn has not been provided unredacted copies of said exhibits. Sovrn, through Counsel, has discussed each exhibit with its party proponent in effort to determine what information is in each document, and hereby only objects to use of documents containing the most sensitive data.

1

**Plaintiff's Exhibits:** PTX1199, PTX1202, PTX1203, PTX1205, PTX1213, PTX1239, PTX1240, PTX1241, PTX1262, PTX1280, PTX1295, PTX1310, PTX1311, PTX1315, PTX1318, PTX1396, and PTX1364.

**Defendant's Exhibits:** DTX 1651, DTX 1892, DTX 1893, DTX 1956, DTX 2051, DTX 2053, DTX 2054, DTX 2065, DTX 2066, DTX 2067, and DTX 2069.

Sovrn has discussed all exhibits containing its confidential data with the parties, but only objects to portions of the limited set of documents, above, based on their inclusion of specific, sensitive competitive and financial information that is not public and which release could cause Sovrn competitive and financial harm. This Highly Confidential information includes Sovrn's granular, non-public competitively-sensitive metrics from Sovrn's confidential data production regarding impressions, take rate, revenue, spend, and other important non-public financial data. For these reasons, and as argued below, Sovrn respectfully submits these Objections, and requests that the Court order that the parties redact Sovrn's name from each of the aforementioned exhibits because these exhibits implicate Sovrn's non-public, highly sensitive and competitive financial information.

These Objections are filed in response to the Court's instruction in the June 24, 2024 Order (Dkt. 871) requiring that any non-party who objects to the public use of confidential documents or testimony file a specific objection by July 26, 2024. To the extent that this Court requires a motion to seal and supporting documents be filed pursuant to this Court's local rules, Sovrn stands ready and able to file such a motion on a schedule determined by the Court.

## LEGAL STANDARD

"Trial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." Local

R. of Civ. P. 5(H). While there is a general common law right of public access to judicial proceedings, the United States Supreme Court has recognized that such right is "not absolute." *LifeNet Health v. LifeCell Corp.*, 2015 U.S. Dist. LEXIS 181256 (E.D.V.A. Feb. 12, 2015) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). One of the recognized exceptions is when a party seeks to protective commercially sensitive information, such as trade secrets, from public disclosure. *Id.* The Fourth Circuit has approved of partial sealing of court proceedings when trade secrets will be disclosed, but such sealing should be limited to "only those portions necessary to prevent the disclosure of trade secrets." *Id.* The First Amendment right to access governs trial transcripts. *Level 3 Communs., LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 579 (E.D. Va. 2009). To overcome this right of access there must be a compelling interest, and the sealing request must be narrowly tailored to serve the compelling interest. *See id.* at 580.

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Substantively, the Court "must determine the source of the right of access with respect to each document." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police*, 386 F.3d at 575. "While the common law presumption in favor of access attaches to all judicial records and documents, the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone*, 855 F.2d at 180.

Even so, public access to civil trial records "is not absolute," and restrictions can be justified by concerns that such records "might . . . become a vehicle for improper purposes," such as where the records serve "as sources of business information that might harm a litigant's

3

competitive standing." *Nixon*, 435 U.S. at 598. A corporation's "strong interest in preserving the confidentiality of its proprietary and trade-secret information . . . may justify partial sealing of court records." *Doe* v. *Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).

Sovrn is privately held and not a party to this action. Nonparties, such as Sovrn, are afforded extra protections in relation to the burdens imposed by third-party subpoenas, and as such, Sovrn should be afforded increased protections in relation to the confidential documents it produced in response to such a subpoena. *See In re: Am. Med. Sys., Inc.,* No. 2325, 2016 WL 6666890, at *5 (S.D.W. Va. Nov. 10, 2016) (citing *Med. Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. Sept. 27, 2002) (particular consideration given to unwanted burden imposed on non-parties who are producing documents pursuant to subpoena).  Sovrn cooperated with the parties and produced its confidential data with the absolute expectation that its confidential data would remain confidential. Sovrn, as a nonparty, should not be forced to have its Highly Confidential Information thrust into the public spotlight in a case in which it has no direct interest.  *See Jeune v. Westport Axle Corp.,* No. 7:14-CV-617, 2016 WL 1430065, at *2 (W.D. Va. Apr. 8, 2016) (party's interest in litigation considered when determining burdens imposed via third-party subpoenas).

Procedurally, before allowing documents to be filed under seal, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft* v. *Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).

A memorandum supporting a request to seal shall include:

(1) A non-confidential description of what material has been filed under seal;

4

(2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request;

(3) References to the governing case law, an analysis of the appropriate standard to be applied for that specific filing, and a description of how that standard has been satisfied; and

(4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and how the matter is to be handled upon unsealing.[2]

U.S.D.C. E.D. Va. Local Civil Rule 5(C).

While this filing is not itself a motion to seal, Sovrn remains willing to file such a motion if requested by the Court and submits that the above requirements are met in this case as follows.

## DISCUSSION

Sovrn is a non-party that produced documents in response to subpoenas from Google and the Department of Justice. Pursuant to the Protective Order (ECF No. 203) entered in this case, Sovrn marked some of the documents "Confidential" or "Highly Confidential." The documents so-marked contain confidential trade secrets and financial information that, if disclosed, would cause irreparable harm to Sovrn, including but not limited to financial losses and loss of competitive advantage.

Pursuant to this Court's June 24, 2024 Order (ECF 871), the Parties notified Sovrn on July 5, 2024 that each proposed to use Sovrn's confidential information, which had been incorporated into documents, at trial.

Plaintiff's list included 43 of Plaintiff's proposed exhibits which included Sovrn's confidential information, as taken from two spreadsheets which contained Sovrn's financial data

---

[2] Sovrn seeks the permanent sealing of the relevant portions of these exhibits in this case.

and which had been marked Confidential pursuant to the Protective Order in this case. While Plaintiff provided a list of exhibits, actual copies were not provided. Counsel for Sovrn discussed these exhibits with Plaintiff's counsel, on July 23, 2024. Defendant's list included 38 of Defendant's proposed exhibits which also contained information marked Confidential by Sovrn pursuant to the protective order. Redacted exhibits were provided—but these were redacted in a way that prevents Sovrn from knowing exactly which of its Highly Confidential Information is included. Counsel for Sovrn discussed these exhibits with Defendant's counsel, on July 25, 2024. In many cases, the exhibit names make clear that Sovrn's confidential financial data has been included in a way that would reveal Sovrn's non-public financial data and damage its competitive standing.

Sovrn's objections are due July 26, 2024, and were mandated to include "a specific objection with a proposed acceptable redaction of the information." Based on Counsel's review of the materials provided, and based further on conversations with the parties, Sovrn objects to the use of portions of certain exhibits which contain non-public, competitively sensitive data that could harm Sovrn with its competitors and customers. The sensitive nature of the information necessitates its protection from public disclosure.  The harm that would result from the disclosure of the confidential document outweighs any public interest in access to the information.  The public interest in transparency must be balanced against the legitimate interests of the parties involved. In this case, the harm to Sovrn from disclosure far outweighs any public interest in accessing the documents, as the documents contain sensitive financial information that would provide no benefit to the public but cause great harm to Sovrn if made public.  Thus, keeping this information private via sealing is appropriate under both the First Amendment and common-law standards.

I.  **SOVRN IS ABLE TO FULFILL THE REQUIREMENTS UNDER LOCAL CIVIL RULE 5(c) AND THE PROTECTIVE ORDER.**

   a.  **Sovrn Has Provided A Non-Confidential Description Of What Material Must be Kept Private**

Sovrn requests that the following exhibits, if they be used at trial, be redacted as specified in the Proposed Redaction column, so that Sovrn's confidential information not be disclosed, and provides the following non-confidential descriptions of said information set forth in Title/Description.

**Plaintiff's Exhibits**

| PTX | Figure Number and Expert Report | Title/Description | Proposed Redaction | Position |
|---|---|---|---|---|
| PTX1199 | Figure 4, Initial Expert Report of Timothy Simcoe | Effective Take Rate for Worldwide Open Web Display + Video Outstream Impressions | Redact so Sovrn's specific information, including take rate cannot be determined | OBJECTION |
| PTX1202 | Figure 7, Initial Expert Report of Timothy Simcoe | Average Spend Per 1,000 Worldwide Impressions, 2018-2021 | Redact so Sovrn's information, including spend cannot be determined | OBJECTION |
| PTX1203 | Figure 8, Initial Expert Report of Timothy Simcoe | Average CPM Versus Average Take Rate, By Exchange | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1205 | Figure 15, Initial Expert Report of Timothy Simcoe | But-for Comparable Take Rates, Worldwide Impressions | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1213 | Figure 25, Initial Expert Report of Timothy Simcoe | But-for Comparable Take Rates, US Impressions | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1239 | Figure 49, Initial Expert Report of Robin S. Lee | AdX earns consistently high net revenues from the sale of worldwide indirect open-web display impressions (2018–2022) | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1240 | Figure 50, Initial Expert Report of Robin S. Lee | AdX maintains a significant share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022) | Redact so Sovrn's specific data cannot be determined | OBJECTION |

| PTX | Figure Number and Expert Report | Title/Description | Proposed Redaction | Position |
|---|---|---|---|---|
| PTX1241 | Figure 54, Initial Expert Report of Robin S. Lee | Worldwide open-web indirect display take rates for ad exchanges, and AdX's worldwide indirect open-web display market share (2018–2022) | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1262 | Figure 92, Initial Expert Report of Robin S. Lee | AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022) | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1280 | Figure 110, Initial Expert Report of Robin S. Lee | Summary of worldwide open-web indirect display take rates among ad exchanges | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1295 | Figure 125, Initial Expert Report of Robin S. Lee | AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022) | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1310 | Figure 30, Initial Expert Report of Rosa Abrantes-Metz | Ad Exchange Take Rates | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1311 | Figure 31, Initial Expert Report of Rosa Abrantes-Metz | Ad Exchange Take Rate Coeffcients of Variation | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1315 | Figure 7, Initial Expert Report of Gabriel Weintraub | Share of Impressions Won Among Bids Submitted (Win Rate) for AdX and Rival Exchanges | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1318 | Figure 10, Initial Expert Report of Gabriel Weintraub | Monthly Net Revenue for AdX and Rival Exchanges | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1396 | Figure 29, Rebuttal Expert Report of Robin Lee | Dr. Israel's estimate of US ad exchange fees for indirect web non-video advertising (2020–2022) | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| PTX1364 | Figure 3, Rebuttal Expert Report of Timothy Simcoe | COMPARABLES BUT-FOR TAKE RATE ESTIMATES EXCLUDING ONE THIRD-PARTY EXCHANGE, | Redact so Sovrn's specific data cannot be determined | OBJECTION |

| PTX | Figure Number and Expert Report | Title/Description | Proposed Redaction | Position |
|---|---|---|---|---|
| | | WORLDWIDE IMPRESSIONS | | |

**Defendant's Exhibits**

| EXHIBIT | Figure Number/ Description | Description | Proposed Redaction | POSITION |
|---|---|---|---|---|
| DTX 1651 | Figure 75: Ad Exchange Average Fees, 2020-2022 | Average Fees by Year in comparison to competitors | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 1892 | Figure 75- see also DTX 1651 | Average Fees by Year FOR Sovrn included as compared to listed competitors | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 1893 | Figure 76 Combined Advertising Buying Tool and Exchange Fees, 2020-2022 | Chart that shows average fee when you combine a buying tool and an exchange, Sovrn's plus a tool plus b tool, and other exchange | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 1956 | Figure 143: Selected Non-Google Ad Exchange US Indirect Open Web Display (Non-Video) Spending, 2019-2022 | Sovrn as a competitor, shows total non-video web display spending; shows sovrn's gross revenue | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 2051 | Exhibit 3 Illustrative Adjustment to Simcoe Figure 8 Average Revenue share and CPM | Left side vertical includes specific take rate | Redact so Sovrn's specific data cannot be determined | OBJECTION |

| EXHIBIT | Figure Number/ Description | Description | Proposed Redaction | POSITION |
|---|---|---|---|---|
| DTX 2053 | Exhibit 16 Adx and competing exchanges annual average revenue share compared to all competing exchanges weighted average revenue share… | This includes the weighted average revenue share year over year, weighted average take rate; Sovrn's average take-rate during any given year; Revenue share = take rate | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 2054 | Exhibit 13 ADX and competing Exchanges Annual Average Revenue Share Compared to All Competing Exchanges Weighted Average Revenue Share | This includes the weighted average revenue share year over year, weighted average take rate; Sovrn's average take-rate during any given year; Revenue share = take rate | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 2065 | Figure 9 US Average Revenue Share and CPM by Exchange Jan 2019-March 2023 | Bubble chart take rate versus CPM compares competitors | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 2066 | Figure 10 Worldwide Average Revenue Shares of Competing Exchanges Considered by Prof. Simcoe (Jan 2019-March 2023) | Sovrn and competitors take rate | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 2067 | Figure 11 Worldwide Monthly Average Revenue Shares by Exchange (Jan 2016-March 2023) | Depicts take rate line graph over time; Average take rate of Sovrn v comp; standard deviation | Redact so Sovrn's specific data cannot be determined | OBJECTION |
| DTX 2069 | Figure 13 US Monthly Average Revenue Shares by Exchange (Jan 2016-March 2023) | Line tracking various competitors take rates over time | Redact so Sovrn's specific data cannot be determined | OBJECTION |

The above-described portions of each listed exhibit contain Sovrn's Highly Confidential Information that, if disclosed, would cause irreparable harm to Sovrn.

      **b.      Sovrn Has Provided A Statement Regarding Why Redaction Is Necessary, And Why Another Procedure Will Not Suffice, As Well As Appropriate Evidentiary Support For The Request.**

Disclosure of Sovrn's Highly Confidential Information to the public or competitors would result in significant harm to Sovrn, including but not limited to financial losses and loss of competitive advantage, as the documents contain non-public financial and proprietary information that could be utilized by its competitors. In short, this is core financial information for Sovrn's business. Sovrn is a private company that is not publicly traded. This information reveals confidential information about Sovrn's take-rate, revenue, spending, fee level, spend level, and competitive position. This information was produced under the absolute expectation that it would remain private. This information is not available to the public and would be of tremendous benefit to competitors looking for ways to undercut Sovrn. It also could be used by customers to determine the relative fees of competitors in the industry which could damage competitors. Sovrn's Highly Confidential Information may be redacted and comprises just a small portion of the relevant documents.

      **c.      Sovrn Has Provided References To The Governing Case Law, An Analysis Of The Appropriate Standard To Be Applied For That Specific Filing, And A Description Of How That Standard Has Been Satisfied.**

The Fourth Circuit has made clear, there is a "presumption of access accorded to judicial records." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Nixon*, 435 U.S. at 597. "[A] First Amendment right of access attaches to documents filed in connection with a summary judgment motion." *ACLU v. Holder*, 652 F. Supp. 2d 654, 661 (E.D. Va. 2009) (citing *Rushford*, 846 F.2d at 253). However, the Fourth Circuit has explained that "there may be instances

11

in which discovery materials should be kept under seal even after they are made part of a dispositive motion." *Rushford*, 846 F.2d at 253.

The Fourth Circuit has recognized that corporations could have a strong interest in preserving the confidentiality of proprietary or trade secret information, which may justify the sealing of court records. *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).; *see also Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (district court did not abuse its discretion in refusing to unseal documents containing confidential and proprietary business information filed in connection with summary judgment motion); *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 766 (E.D. Va. 2018) (businesses may have a "compelling interest under the First Amendment test" in "protecting proprietary commercial information"); *In re Knight Pub. Co.*, 743 F.2d 231 (4th Cir. 1984) (court may seal documents to prevent others from gaining a business advantage).

Here, Sovrn, a third-party, seeks the sealing of Sovrn's Highly Confidential Information described above. This material would severely harm Sovrn's competitive standing if made public. District courts in the Fourth Circuit have sealed similar categories of information where the First Amendment right of access attaches. *See, e.g., Abu-Eid v. Discover Prod., Inc.,* No. 1:20-CV-1450, 2021 WL 9969142 (E.D. Va. June 2, 2021) (court sealed two documents marked as "confidential" by third parties who provided the information pursuant to a subpoena); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 577 (E.D. Va. 2009) (stating that courts may refuse "to permit their files to serve ... as sources of business information that might harm a litigant's competitive standing") (quoting *Nixon*, 435 U.S. at 598); *E. W., LLC* v. *Rahman*, 2012 WL 3843657, at *3 (E.D. Va. Sept. 4, 2012) ("sensitive financial data, including gross profit data, the disclosure of which would be highly likely to cause significant harm to the [company's] business

12

competitive position"); *Intelligent Verification Sys., LLC* v. *Microsoft Corp.*, 2014 WL 12659953, at *1 (E.D. Va. Dec. 22, 2014) (sealing "sensitive business information" attached to summary judgment motion); *HiQ Materials AG* v. *ICP Indus., Inc.* 2023 WL 4842783, at *2 (M.D.N.C. June 28, 2023) (defendant "seeks to redact only proprietary business and customer information and trade secrets in the form of financial analyses"); *360 Mortg. Grp., LLC* v. *Stonegate Mortg. Corp.*, 2016 WL 4939308, at *1-2 (E.D.N.C. Sept. 14, 2016) ("finances" are "the type of confidential business information properly subject to protection"); *SMD Software, Inc.* v. *EMove, Inc.*, 2013 WL 1091054, at *2-*3 (E.D.N.C. Mar. 15, 2013) (profit and loss statements, pricing, marketing strategies, expense information, market share, and customer information).

For these same reasons, Sovrn objects to the public use of the above-described portions of the exhibits at trial and requests that, if they are used, they should be redacted as they contain sensitive proprietary information that could harm Sovrn by providing its competitors with non-public financial information and cause financial losses.

## CONCLUSION

For the reasons above, Sovrn respectfully objects to the public use of the above confidential information, and requests that this Court seal said materials, as described herein.

Dated: July 26, 2024                                              Respectfully submitted,

*/s/ Stan M. Doerrer*
Stan M. Doerrer, VSB No. 88857
THE LAW OFFICE OF STAN M.
DOERRER PLLC
950 N. Washington Street,
Alexandria, VA 22314
Telephone: (703) 348-4646
Facsimile: (703) 348-0048
Email: stan@doerrerlaw.com

13

## CERTIFICATE OF SERVICE

I certify that on this 26th day of July, 2024, I filed the foregoing document and served all counsel of record in this action via the Court's ECF filing system.

*/s/ Stan M. Doerrer*