# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | No. 1:23-cv-00108-LMB-JFA |

**NON-PARTY PUBMATIC, INC.'S OBJECTION TO THE PUBLIC USE AT TRIAL OF CONFIDENTIAL PUBMATIC BOARD PRESENTATION AND DATA**

Pursuant to Local Civil Rule 5, Federal Rule of Civil Procedure 26, and the Court's Amended Pre-Trial Scheduling Orders (Dkt. Nos. 871, 913), non-party PubMatic, Inc. respectfully objects to the public use at trial of: (1) a single PubMatic board presentation deck, dated January 29, 2019, unless used with the redactions proposed herein; and (2) any chart, diagram, demonstrative, or composite exhibit in a form that discloses PubMatic-specific take rates, revenue shares, market share, or financial metrics. PubMatic also requests that the Court enter an order establishing protocols for the treatment of confidential exhibits, information, and testimony at trial, with provisions sufficient to protect the compelling commercial interests of those, like PubMatic, that produced extremely sensitive documents and data to the parties.

## PRELIMINARY STATEMENT

PubMatic produced tens of thousands of pages of confidential and highly confidential documents and many petabytes of confidential and highly confidential data in connection with this matter. At every stage, PubMatic has sought to provide information reasonably needed by the parties (and, now, the Court) while also protecting the confidentiality of its pricing and other sensitive business information.

The parties have indicated their intention to use several PubMatic documents at trial and to use charts, figures, or tables that include PubMatic data. PubMatic has reviewed with care the lists of documents and figures that the parties seek to introduce, and—mindful of the Court's obligation to promote public access to trial proceedings—seeks to seal from public view only: (1) certain pages of a single, highly confidential presentation deck created for a PubMatic board meeting, which Defendant Google, LLC has identified as a potential trial exhibit (*see* Dkt. No. 894 (DTX 665)), and (2) any portion of the 74 graphs, charts, and figures identified by the parties as exhibits that shows highly confidential PubMatic-specific data or information (rather than, for example, information about multiple market participants presented in the aggregate). PubMatic submits that these requests are narrowly tailored and conform both with applicable law and with Magistrate Judge Anderson's rulings on the sealing of pre-trial submissions.

## **FACTUAL BACKGROUND**

PubMatic participates in the digital advertising market in a variety of ways, principally by operating a supply-side platform. As such, PubMatic both competes with Google and relies on Google as a counterparty and business partner. PubMatic is not a party to any litigation—with Google or otherwise—concerning alleged monopolization in the digital advertising market and is not a party to the present suit. PubMatic has, however, received and complied with multiple non-party subpoenas and a civil investigative demand in this and related proceedings.

PubMatic has always taken care to ensure the maximum possible confidentiality protection when producing documents or information, because much of the material it has produced is of the greatest competitive sensitivity. Most sensitive of all are "take rates," which measure the share of a publisher's revenue that a supply-side platform "takes" in exchange for its services. This price information is among the most highly confidential and carefully guarded pieces of information in the digital advertising market. PubMatic does not disclose its take rates,

which are specifically negotiated and agreed with individual publisher partners. Disclosure of PubMatic's take rates to its competitors will cause acute competitive harm by allowing those competitors profoundly asymmetrical information on PubMatic's pricing.

### A. The Board Presentation

On July 5, 2024, the parties gave notice of their proposed trial exhibits, including seven documents that PubMatic designated as highly confidential when it produced them. (*See* Dkt. Nos. 892-1, 894.) Having reviewed those documents with care, PubMatic seeks sealing from public disclosure at trial only discrete portions of a single document: a January 29, 2019, PowerPoint deck with Bates-numbers PUBMATIC_DOJ-00000132 to PUBMATIC_DOJ-00000203, containing a presentation for an internal PubMatic board meeting concerning—among other things—the company's strategic and financial performance and outlook (DTX 665 ("Board Presentation")). The Board Presentation contains highly confidential information intended for high-level strategic discussion by PubMatic's board in the context of a complex and fast-evolving market, including detailed discussions of PubMatic's take rates and of strategic risks and opportunities facing the Company.

PubMatic produced this document to the Department of Justice in August 2020, in compliance with a civil investigative demand. When it did so, PubMatic requested (and stamped on every produced page) that the produced documents be treated as confidential and afforded confidential treatment under FOIA—*i.e.*, maximum confidentiality protection. PubMatic understands that the Government subsequently produced this document (with the rest of PubMatic's production in response to that CID) to Google in connection with this lawsuit, subject to the governing confidentiality order in this matter. The sensitivity of the information in the Board Presentation is not materially diminished by the fact that the take rates in the Board

Presentation are from 2019, because many take rates are contractually negotiated and remain unchanged for years. Nor is the sensitivity materially diminished when take rates are averaged across time periods or geographic regions, because other market participants can still glean competitively significant information from such data to PubMatic's disadvantage.

While PubMatic expected that the entire Board Presentation would be maintained in confidence both when it was created and when it was produced, PubMatic believes that its most critical competitive information can be protected by redacting only the following pages (in their entirety) to restrict them from public view: 21, 23, 27–28, 32, 35–36, 42, 45–49, 53–54, 57–58, 74, and 78–81 (PUBMATIC_DOJ-00000134, 136, 140–41, 145, 148–49, 155, 158–62, 166–67, 170–71, 187, and 191–94). These pages contain highly confidential information concerning take rates (at 23, 27–28, 53, 57–58, 74, and 78–79), divergences between planned and actual financial and business performance (at 21, 23, 27–28, 32, 35–36, 42, 45–47, 49, 53–54, and 80–81), and a never-disclosed strategic proposal (at 48).

### B. PubMatic Data in Exhibits, Demonstratives, or Composite Exhibits Consisting of Proposed Graphs, Charts, and Tables

In response to the Government's subpoena, PubMatic produced a detailed spreadsheet reflecting and summarizing its takes rates and transaction volume (among other things) over the period from January 2017 through March 2023. PubMatic also produced—after extensive consultation and at considerable financial cost—a very large sample of transaction-level data about auctions conducted in June 2023. Similar to the Board Presentation, PubMatic designated both of these productions as "Highly Confidential." (*See* Dkt. No. 203 ¶ 1(h) (Protective Order).)

On July 5 and July 12, respectively, DOJ and Google provided notice of their intent to use at trial certain exhibits that appear to be charts, graphs, and tables that reflect or summarize data drawn from—among other sources—PubMatic's highly confidential data. DOJ indicated its

intention to use 34 such charts, graphs, and tables, and provided only the minimally descriptive titles given to those items in expert reports. Google identified 40 such charts, graphs, and tables, and provided them for PubMatic's review in redacted form only, obscuring both their actual content and also, in most cases, the labels for the data presented. The exhibits that the parties identified to PubMatic are listed in the footnote below and in the Proposed Order attached hereto as Exhibit A.[1]

Hence, PubMatic has been unable to review the complete charts, graphs, and tables that the parties propose to use at trial. However, based on PubMatic's review of the information provided, it appears that at least some of these proposed exhibits contain the following types of highly confidential information:

- PubMatic's take rates, which are highly sensitive for the reasons already described;

- Other features of PubMatic's competitive performance, such as business strategy and planning information, spending information, win rates, the number of ad impressions transacted in particular regions and time-periods, specific revenues generated by those sales, and market shares vis-à-vis competitors in those regions and time-periods; and

- Aspects of PubMatic's financial performance that are not otherwise public, including information from the period before it became a public company.

To the extent that these proposed exhibits disclose take rates or other data specifically identified with PubMatic, PubMatic strongly objects to their public use at trial other than in a form redacted to obscure such PubMatic-specific information. PubMatic does not object to the public use at trial of exhibits containing data aggregated across sources—for example, those

---

[1] The exhibits identified by DOJ are: PTX 1199, 1200, 1202, 1203, 1205, 1213, 1233, 1237, 1238, 1239, 1240, 1241, 1260, 1261, 1262, 1263, 1265, 1266, 1280, 1292, 1293, 1294, 1295, 1306, 1307, 1310, 1311, 1314, 1317, 1318, 1364, 1365, 1396, and 1397.
The exhibits identified by Google are: DTX 1651, 1839, 1862, 1891, 1892, 1893, 1943, 1948, 1949, 1950, 1955, 1956, 1959, 1989, 1991, 2043, 2044, 2045, 2046, 2047, 2048, 2051, 2053, 2054, 2056, 2057, 2058, 2064, 2065, 2066, 2067, 2068, 2069, 2070, 2071, 2072, 2073, 2074, 2075, and 2076.

showing industry-wide average take rates. Because PubMatic has been unable to review the actual, unredacted charts, graphs, and figures proposed for use by the parties, PubMatic must rely on the Court and the parties to identify which proposed exhibits contain specifically PubMatic-identifiable data.

## ARGUMENT

### I.  SEALING IS APPROPRIATE BECAUSE COMPELLING INTERESTS OUTWEIGH THE PUBLIC'S INTEREST IN ACCESS AT TRIAL

PubMatic's proposed redactions are appropriate because they are narrowly tailored to serve the compelling interest in the privacy of PubMatic's most competitively sensitive business information, which outweighs any public interest in access to this subset of the PubMatic-specific information.

A court called upon to adjudicate a sealing request must "first [] determine the source of the right of access with respect to each document." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) (quotation marks omitted). "The stronger First Amendment guarantee of public access, with its attendant requirement to weigh competing interests, applies where efforts are made to seal documents offered into evidence before a court in the course of a public jury trial." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 579 (E.D. Va. 2009). Under the First Amendment, the public's right to access is not absolute, and may be superseded by a showing that a "compelling government interest" outweighs the right to access and that the denial of access is narrowly tailored to serve that interest. *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014); *see United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024) (same).

For example, the public's interest in access may give way in the face of "a person or corporate entity's property interest in" valuable confidential information. *Level 3 Commc'ns*, 611

6

F. Supp. 2d at 581 (protecting trade secrets); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[T]he right to inspect and copy judicial records is not absolute . . . courts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing"); *Doe*, 749 F.3d at 269 (recognizing, in context of evaluating scope of First Amendment right of access, that "[a] corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information" that justifies sealing); *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 766 (E.D. Va. 2018) ("protecting proprietary commercial information can be a compelling interest under the First Amendment test").

      Here, the requested pages from the Board Presentation and any PubMatic-specific data in the parties' proposed exhibits should be sealed from public view because PubMatic has a strong interest in protecting its take rates and other highly sensitive commercial information created to facilitate strategic deliberation within a private, non-party company or in PubMatic-specific pricing and related data. Moreover, the Government has an aligned interest in encouraging private cooperation with its investigations, including through compliance with civil investigative demands. These two interests outweigh any *de minimis* interest the public may have in a relative handful of pages from a single board presentation or the PubMatic-specific pricing and related financial data to the public use of which PubMatic hereby objects.

      The Board Presentation was prepared for internal strategic purposes and contains highly sensitive business data, information, and strategy. This sensitive information includes take rates, which are among PubMatic's most sensitive information, as well as non-public analysis of divergence between PubMatic's projected and actual business and financial performance (before it became a public company).

7

The parties' other proposed exhibits that use PubMatic's information very likely also reflect granular, PubMatic-specific information drawn from PubMatic's highly confidential data productions. Again, PubMatic cannot see these exhibits in unredacted form (and cannot see some at all), but based on the parties' descriptions many or all of the charts or graphs likely include PubMatic-specific data regarding take rates and even PubMatic take rates broken down by time-period and geographic region. PubMatic's sealing request, however, is narrow: the data and analysis reflected in these exhibits would remain unobstructed, except for those limited portions identifying PubMatic as the origin of specific confidential and sensitive data. Because PubMatic does not have unredacted copies of these documents to review itself, it must rely on the parties and the Court to police the disclosure of its most sensitive corporate secrets.

As noted, disclosure to PubMatic's competitors would cause acute competitive harm by putting PubMatic in a position where its competitors have unjustified and asymmetrical information on PubMatic's pricing, costs, and auction results. It would be deeply unfair—and ironic—for litigation aimed at protecting competition in the digital advertising market to result in disclosure of competitively sensitive information to the detriment of one of the very market participants the Government may argue was disadvantaged by Google's conduct. Faced with this reality, Judge Anderson has correctly (and repeatedly) held that take rates and other similar information should remain sealed. (*E.g.*, Dkt. No. 902 at 3 ("specific information relating to individual take rates or revenue shares by non-parties should remain under seal and [sealing] is appropriate under the compelling governmental interest standard" (emphases omitted)).) Those rulings are in keeping with those of other courts in this District, which similarly have left sealed this sort of competitive information, notwithstanding any First Amendment right of access. *See, e.g.*, *Lifenet Health v. Lifecell Corp.*, Civil Action No. 2:13cv486, 2015 WL 12517430, at *4

(E.D. Va. Feb. 12, 2015) (sealing trial transcript and holding First Amendment presumption of access "overc[o]me," where, *inter alia*, "document contain[ed] confidential and proprietary commercial information . . . belonging to the parties *as well as nonparties* . . ." (emphasis added) (quotation marks omitted)); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2014 WL 12659953, at *1 (E.D. Va. Dec. 22, 2014) (ruling "sensitive business information" appended to summary judgment motion could remain under seal where, *inter alia*, defendant's "competitive position might be impaired if this information [were] disclosed to the public at large"); *E. W., LLC v. Rahman*, No. 1:11CV1380 JCC/TCB, 2012 WL 3841401, at *3 (E.D. Va. Sept. 4, 2012) (sealing expert reports containing "sensitive financial data, including gross profit data, the disclosure of which would be highly likely to cause significant harm to the business competitive position of both parties").

## II.    THE PROCEDURAL REQUIREMENTS FOR SEALING HAVE BEEN SATISFIED

PubMatic notes that the procedural requirements for sealing are satisfied here.

*First*, the Court's Amended Scheduling Order (*see* Dkt. Nos. 871, 913) has provided public notice that "any party or non-party who objects to the public use of confidential documents or testimony *must file a specific objection with a proposed acceptable redaction of the information*." With this filing, PubMatic's objection and proposed redactions are now public. Furthermore, the Amended Scheduling Order permits "objections to a party's or non-party's proposed redactions or to the use of confidential information in any respect" to be filed by August 2, 2024. Accordingly, any person wishing to challenge PubMatic's requests has or will have "a reasonable opportunity" to do so. *Va. Dep't of State Police*, 386 F.3d at 576; *see also* E.D. Va. Local Civ. R. 5(C).

*Second*, the sealing requests above are narrowly tailored and would not shield more than

9

is necessary to safeguard PubMatic's entirely legitimate interests. *See supra* Argument Part I; *Va. Dep't of State Police*, 386 F.3d at 576; E.D. Va. Local Civ. R. 5(C).

*Third*, PubMatic has filed a proposed order attached as Exhibit A. *Va. Dep't of State Police*, 386 F.3d at 576; E.D. Va. Local Civ. R. 5(C).

\*   \*   \*

For all the above reasons, PubMatic objects to the public use at trial of the Board Presentation and of the parties' proposed exhibits that are graphs and charts—except as redacted to protect PubMatic-specific information from public disclosure.

### III.   THE CONFIDENTIALITY ORDER CONTEMPLATES A FURTHER ORDER GOVERNING TREATMENT OF CONFIDENTIAL INFORMATION

PubMatic appreciates that the existing protective order in this action contemplates "a separate court order" to govern the protection or disclosure at trial of any material marked "Confidential" or "Highly Confidential." (Dkt. No. 203 ¶ 23.) With that in mind, we respectfully submit that an order recently entered by the District Court for the District of Columbia may be a useful reference point for the drafting and content of such an order. In hopes it may be helpful to the Court, we attach as Exhibit B the "Stipulated Order on the Use of Confidential Information at Trial," recently used in *United States v. Google LLC*, No. 20-cv-3010 (D.D.C.) (the "DDC Order").

PubMatic submits that entry of an order similar or analogous to the DDC Order is appropriate here, especially in light of non-parties' (including PubMatic's) reliance on the protective order and confidentiality designations in producing documents and information of the highest commercial sensitivity. And, specifically, just as PubMatic's highly confidential information thus far has been shielded from competitors by the protective order, so too should a corresponding trial order in this case protect against the disclosure of PubMatic's highly

confidential information (including take rates) in unredacted form to non-party witnesses.

The DDC Order also includes, among other provisions that PubMatic would urge the Court to consider here: (i) an instruction that the parties consider using a "key assigning a generic label" (or "Rosetta Stone") to named individuals and corporations or confidential information, to promote the ability to leave the courtroom open (¶ 2), and (ii) a suggestion that the parties consider using redacted versions of exhibits in open court (and, though not stated explicitly, perhaps unredacted versions with witnesses), where doing so would promote the Court's ability to leave the proceedings open to the public (*id.*).

We appreciate the Court's careful attention to these issues and would welcome an opportunity to participate in the crafting of a final order governing the treatment of confidential materials at trial.

## **CONCLUSION**

For the foregoing reasons, PubMatic requests that the Court (1) seal the Board Presentation from public view except in a form with the redactions set out above, and (2) seal the proposed graphical and chart exhibits from public view except in a form redacting portions that identify PubMatic as the source of specific data or figures.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

Dated: Alexandria, Virginia
       July 26, 2024

| CARMICHAEL ELLIS & BROCK, PLLC | CLARICK GUERON REISBAUM LLP |
|---|---|
| By: /s/William Wirt Brock, IV<br>William Wirt Brock, IV<br>(VSB# 67985)<br>108 N. Alfred Street, 1st Floor<br>Alexandria, Virginia 22314<br>(703) 684-7908<br>703-649-6360 (fax)<br>wirt@carmichaellegal.com | By: /s/Isaac B. Zaur<br>Isaac B. Zaur (*pro hac vice*)<br>Nicole Gueron (*pro hac vice*)<br>Alexander D. Bernstein (*pro hac vice*)<br>220 Fifth Avenue, 14th Floor<br>New York, New York 10001<br>(212) 633-4310<br>izaur@cgr-law.com<br>ngueron@cgr-law.com<br>abernstein@cgr-law.com |

*Attorneys for PubMatic, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of July 2024, I electronically filed the foregoing Objection to the Public Use at Trial of Confidential PubMatic Board Presentation and Data with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for the other parties who have appeared in the case.

/s/ William Wirt Brock, IV
William Wirt Brock, IV (VSB #67985)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st Floor
Alexandria, Virginia 22314
703-684-7908
703-649-6360 (fax)
wirt@carmichaellegal.com
*Attorney for PubMatic, Inc.*