UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiff, | Case No. 1:23-cv-00108-LMB-JFA |
| v. | |
| Google LLC | The Honorable Leonie M. Brinkema |
| Defendant. | |

**THE TRADE DESK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEAL**

Pursuant to Local Rules 5(C) and 5(H) of the Rules of the United States District Court for the Eastern District of Virginia, The Trade Desk, Inc. ("The Trade Desk") respectfully submits this memorandum of law in support of its contemporaneously filed Motion to Seal ("Motion"). For the reasons that follow, The Trade Desk requests that the following documents be sealed and redacted from public use at the upcoming trial:

- Certain exhibits identified in Plaintiffs' Trial Exhibit List (Dkt. No. 892-1) and Defendant Google LLC's Trial Exhibit List (Dkt. No. 894) which are identified in Appendix A to this motion.

- Excerpts of the deposition testimony of The Trade Desk's Chief Revenue Officer, Jed Dederick, designated as highly confidential pursuant to the Modified Protective Order, and identified in Appendices B and C to this motion.

Public disclosure of this material would prejudice and cause harm to The Trade Desk's competitive position in the industry. The Trade Desk respectfully requests that these confidential materials remain under seal.

## I.     LEGAL STANDARD

"[T]he right [of the public] to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). A court has the authority to seal court documents "if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000); *see also Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011). The Court must determine the nature of the information and the public's right to access. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988). In particular, a corporation's "strong interest in preserving the confidentiality of its proprietary and trade-secret information … may justify partial sealing of court records." *Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).

1

The Supreme Court has suggested factors to be weighed include (1) whether the records are sought for improper purposes, such as unfairly gaining a business advantage; (2) whether release would enhance the public's understanding of an important historical event; and (3) whether the public has already had access to the information contained in the records. *Nixon*, 435 U.S. at 597-608; *In re Knight Publ'g Co.*, 743 F.2d 231,235 (4th Cir. 1984). For example, "courts have refused to permit their files to serve … as sources of business information that might harm a litigant's competitive standing" and have sealed such information from the public. *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 577 (E.D. Va. 2009) (quoting *Nixon*, 435 U.S. at 598).

## II. DESCRIPTIONS OF MATERIALS SOUGHT TO BE SEALED

Public disclosure of the exhibits set forth below which have been identified in Plaintiffs' Trial Exhibit List (Dkt. No. 892) and Defendant Google LLC's Trial Exhibit List (Dkt. No. 894) would unduly harm The Trade Desk's business.

### A. Financial and Customer Data.

Data related to The Trade Desk's financials and customers is highly confidential, sensitive, proprietary information that The Trade Desk uses to develop its competitive strategy and complex operational decision-making. *See* Declaration of Prashant Sahita in Support of Non-party The Trade Desk, Inc.'s Motion to Seal ¶ 5 ("Sahita Decl."). Data, including performance indicators and success metrics, are used to provide insights and analyses to a number of teams across The Trade Desk's business so that they can execute on their roles and strategic decisions. *Id.* Information related to (i) The Trade Desk's inventory costs, bid counts, impressions, and partner costs, and (ii) The Trade Desk's spend, billings, and revenue, are highly sensitive and only accessible to a limited subset of employees at The Trade Desk. *Id.*

1. <u>Exhibit 1 [DTX 1444]</u>:  This exhibit contains data related to The Trade Desk's customers, and exact breakdowns of impressions, partner costs, and other competitively sensitive information, such as brands, advertisers, campaigns, partners, inventory type, media type, and bids.  *See* Sahita Decl. ¶ 6.

2. <u>Exhibit 2 [DTX 1799]</u>:  This exhibit contains data related to The Trade Desk's inventory, media, advertisements, and suppliers, and provides detailed breakdowns of bids, impressions, and partner costs.  *See* Sahita Decl. ¶ 7.

3. <u>Exhibit 3 [DTX 1800]</u>:  This exhibit contains data related to The Trade Desk's customers and their brands, advertisers, partners, inventory type, media type, advertisements, and suppliers, and provides detailed breakdowns of bids, impressions, and partner costs.  *See* Sahita Decl. ¶ 8.

4. <u>Exhibit 4 [DTX 1801]</u>:  This exhibit contains financial data of The Trade Desk and exact breakdowns of The Trade Desk's spend, billing and revenue.  *See* Sahita Decl. ¶ 8.

Public disclosure of this data could be leveraged by The Trade Desk's competitors to undercut The Trade Desk's services with its clients, its pricing, and its business strategy.  The data in each of these exhibits contains highly confidential, proprietary and competitively sensitive information that The Trade Desk uses to develop its business.  Having access to this data would provide The Trade Desk's competitors an unfair business advantage over The Trade Desk and provide nominal benefit to the public.

B. <u>Government Submissions</u>

In response to questionnaires issued by a government agency in connection with a confidential inquiry, The Trade Desk provided highly sensitive information related to its go-to-market strategy, client pricing, functionalities, investments, approaches to the development of its products, its transactions, its costs, and its knowledge of DSP strategies. Prior to providing its responses, The Trade Desk notified the government agency that The Trade Desk's reply to the government's questionnaires contained business secrets and other confidential information. *See* Dederick Decl. ¶ 5.

1. <u>Exhibit 5 [PTX 1714]</u>: This exhibit contains The Trade Desk's response to questionnaires issued by a government agency in connection with a confidential inquiry, which have been identified as containing business secrets, for information related to DSPs including The Trade Desk's undertakings, functionalities, market position, competitive analyses, and business strategies. *See* Declaration of Jed Dederick In Support of Non-party The Trade Desk, Inc.'s Motion to Seal ¶ 5 ("Dederick Decl.").

2. <u>Exhibit 6 [PTX 1715]</u>: This exhibit contains The Trade Desk's response, to questionnaires issued by a government agency in connection with a confidential inquiry, which have been identified as containing business secrets, for information related to online advertising intermediaries, including The Trade Desk's analyses of the industry, bidding process, undertakings, and capabilities. *See* Dederick Decl. ¶ 5.

These exhibits contain information The Trade Desk provided in response to a government agency's confidential inquiry and constitute The Trade Desk's proprietary and highly confidential competitive strategies, which inform its DSP strategy and future plans. *See* Dederick Decl. ¶ 5. If

made public, The Trade Desk's competitors may use this information to gain competitive insight into The Trade Desk's DSP strategy and use this information to undermine The Trade Desk's market position. *Id.*

    **C.**    <u>Internal Communications Regarding The Trade Desk's Customers and Partnerships</u>

Internal communications between The Trade Desk's employees that the parties have identified in their exhibits lists include confidential information regarding The Trade Desk's (i) auction dynamic analysis, AdX inventory approach, predictive clearing performance, auction presentations, supply-side-platform clearing rates, price optimization strategy, (ii) cost, performance, and scale evaluation, and fee structures of its clients, and its proposed strategy to develop client relationships. This information is highly confidential, non-public information that is used by the Trade Desk to build its customer base, and based on years of work and experience. *See* Dederick Decl. ¶ 6. Similarly, communications and presentations detailing The Trade Desk's joint business plan agreements (including client-specific terms and commercial agreements) and strategy, the status of The Trade Desk's clients and business partnerships, its strategy for maintaining these relationships, and its product opportunities all constitute highly confidential, non-public information. This information would provide the Trade Desk's competitors with unwarranted insight into the Trade Desk's DSP strategy and an undue advantage over The Trade Desk in the marketplace. *Id.*

        1.    <u>Exhibit 7A [DTX 737]</u>: This exhibit contains detailed emails and a presentation regarding The Trade Desk's business with a client, the development of that relationship, future business strategy, and outline of The Trade Desk's auction dynamics analysis. *See* Dederick Decl. ¶ 6.

2. <u>Exhibit 7B [DTX 319]</u>: This exhibit contains detailed summaries regarding The Trade Desk's business with a client, the development of that relationship, future business strategy, and the client's fee structure. *See* Dederick Decl. ¶ 6.

3. <u>Exhibit 8 [DTX 523]</u>: This exhibit contains a Master Services Agreement with one of The Trade Desk's clients, and details the terms and fee structure of their agreement. *See* Dederick Decl. ¶ 6

4. <u>Exhibit 9 [DTX 823]</u>: This exhibit contains an internal communication among The Trade Desk's employees regarding a cost, performance, and scale evaluation of a client, and future strategy and development. *See* Dederick Decl. ¶ 6.

5. <u>Exhibit 10 [DTX 1022]</u>: This exhibit contains the strategy and development of The Trade Desk's approach to joint business plans, their specifications, guidance in implementation, incentives, and other strategic considerations. *See* Dederick Decl. ¶ 6.

6. <u>Exhibit 11 [DTX 1051]</u>: This exhibit contains The Trade Desk's internal notes and preparation material for a client meeting. It includes the Trade Desk's analyses, approach, and future strategy with the client. *See* Dederick Decl. ¶ 6.

7. <u>Exhibit 12 [DTX 1456]</u>: This exhibit contains an internal communication among The Trade Desk's employees describing its competitive strategy, business model, product opportunities, and a detailed breakdown of the status proposed strategy for a number of its publishers. *See* Dederick Decl. ¶ 6.

These exhibits, certain of which detail The Trade Desk's relationships with its clients, are highly confidential and non-public. *See* Dederick Decl. ¶ 6. Public disclosure of these internal communications and presentations would cause harm to The Trade Desk's competitive position in the marketplace.

D. <u>Competitive Strategy and Competitor Analyses</u>

The Trade Desk maintains highly confidential, non-public business strategy that it has developed through years of experience, investment in resources and personnel, and analyses of the market. The Trade Desk uses this to build its customer base and increase its competitive advantage in the market. *See* Dederick Decl. ¶ 7. This information, which the parties have identified in their exhibits lists, includes (i) memoranda and communications regarding The Trade Desk's audience and client strategy, analysis of strengths, weaknesses, opportunities, and competitive threats (SWOT), and market and client feedback, and (ii) presentations detailing The Trade Desk's business strategy, in which The Trade Desk has invested significant resources to develop, and in some cases, prepared specifically for its clients, who have signed non-disclosure agreements. *Id*. Similarly, presentations that The Trade Desk has prepared internally and for its clients related to its partnerships, offerings, and competitive strategy are non-public, competitively sensitive, proprietary business information that The Trade Desk uses to build and improve its platform and provides The Trade Desk a competitive advantage. *Id.*

1. <u>Exhibit 13 [DTX 1084]</u>: This exhibit contains an internal communication among The Trade Desk employees regarding its competitive strategy and plans for a client development meeting and client conversations. *See* Dederick Decl. ¶ 7.

2. <u>Exhibit 14 [DTX 1254]</u>: This exhibit contains an internal communication among The Trade Desk employees related to two presentations. The first presentation was prepared, with parts for internal purposes only, and parts for limited client purposes. The second presentation was also prepared for a limited audience of The Trade Desk's clients with non-disclosure agreements. Both discuss The Trade Desk's confidential analyses of the industry which The Trade Desk invested significant resources in compiling. *See* Dederick Decl. ¶ 7.

3. <u>Exhibit 15 [DTX 122 and DTX 1798]</u>: This exhibit (identified twice) contains an internal analysis of The Trade Desk's business and position in the industry, including The Trade Desk's sales' approach, SWOT analysis, and framework for positioning itself in the market. *See* Dederick Decl. ¶ 7.

4. <u>Exhibit 16 [DTX 1139]</u>: This exhibit contains communications with The Trade Desk's client and includes deal identification information and the processes of The Trade Desk's products. *See* Dederick Decl. ¶ 7.

Public disclosure of these exhibits would provide The Trade Desk's competitors with the Trade Desk's confidential business strategy and strategic analyses, and cause harm to The Trade Desk's competitive position in the market. *See* Dederick Decl. ¶ 7.

**E.**   <u>Product Development and Specifications</u>

The Trade Desk has expended significant resources to develop its products and offerings

to clients. *See* Dederick Decl. ¶ 8. Communications and presentations that the parties have identified in their exhibit lists that discuss in detail the development, benefits, strategy, and future plans and considerations for The Trade Desk's products including OpenPath and Unified ID 2.0 are highly confidential, non-public information that, in the ordinary course, is provided only to The Trade Desk's employees and, in certain limited instances, its clients or business partners. *Id.* Additionally, the agreements and terms and conditions that The Trade Desk enters into with publishers and clients are non-public and proprietary. *Id.*

    1.    <u>Exhibit 17 [DTX 520]</u>: This exhibit contains a presentation for The Trade Desk's programmatic private market place training and details the development and functionalities of The Trade Desk's offerings, the evolution of auctions, and business strategies. *See* Dederick Decl. ¶ 8.

    2.    <u>Exhibit 18 [DTX 1162]</u>: This exhibit contains terms and conditions for OpenPath that The Trade Desk enters into with its publishers, which are non-public and proprietary. *See* Dederick Decl. ¶ 8.

    3.    <u>Exhibit 19 [DTX 1198]</u>: This exhibit contains a draft presentation prepared by The Trade Desk regarding OpenPath and The Trade Desk's analyses of the industry, business strategy, developments and timelines of The Trade Desk's offerings, its considerations, and its future strategy. *See* Dederick Decl. ¶ 8.

4. <u>Exhibit 20 [DTX 1447]</u>: This exhibit contains a presentation prepared by The Trade Desk detailing the offerings it provides for its publishers, the capabilities and development of Unified ID 2.0, notes on The Trade Desk's approach for customers, and its future business for developing the product strategy. *See* Dederick Decl. ¶ 8.

5. <u>Exhibit 21 [DTX 1170]</u>: This exhibit contains a presentation prepared for the Trade Desk's OpenPath strategy meeting, including internal discussion points, customer feedback, development of The Trade Desk's products, customer pitches, considerations in development, and future strategy for developing the product. *See* Dederick Decl. ¶ 8.

6. <u>Exhibit 22 [DTX 1794]</u>: This exhibit contains a presentation prepared by The Trade Desk for trainings for OpenPath, and details the development of OpenPath, its offerings, its partners, its competitive strategy, and The Trade Desk's future strategy for developing the product. *See* Dederick Decl. ¶ 8.

7. <u>Exhibit 23 [DTX 1795]</u>: This exhibit contains the proof of concept agreement that The Trade Desk enters into with its customers for Unified ID 2.0, which is non-public and proprietary. *See* Dederick Decl. ¶ 8.

8. <u>Exhibit 24 [DTX 1797]</u>: This exhibit contains a presentation prepared by The Trade Desk detailing the development of OpenPath and Open Pass, its offerings, and internal notes for customer approach. *See* Dederick Decl. ¶ 8.

Each of these exhibits contain non-public highly confidential information that is the product of The Trade Desk's analyses of the market and development of its products over years of

experience and investment in resources. *See* Dederick Decl. ¶ 8. The Trade Desk uses this information for its strategic decision-making and to develop its relationships with its clients. *Id.* Public disclosure of these exhibits would subject The Trade Desk to undue competitive disadvantage and harm its position in the industry.

F.  Future Business Strategy

Internal communications regarding The Trade Desk's future business strategies discussed internally among The Trade Desk's employees are highly confidential, non-public information that involve creative strategy and analyses of The Trade Desk. *See* Dederick Decl. ¶ 9. Specifically, communications and presentations regarding The Trade Desk's target addressable market and three-year plan, and its publisher development plans, contain competitively sensitive and proprietary information. *Id.*

1. Exhibit 25 [DTX 1205]: This exhibit contains an internal communication among The Trade Desk's employees for the development of its strategy with publishers, and preparation for upcoming client conversations. *See* Dederick Decl. ¶ 9.

2. Exhibit 26 [DTX 1398]: This exhibit contains an internal communication among The Trade Desk's employees providing detailed specifications for The Trade Desk's three year plan, including modifications and transitions in strategy, comprehensive spend and revenue forecasts, and product initiatives. *See* Dederick Decl. ¶ 9.

These exhibits which detail The Trade Desk's future business strategy would provide The Trade Desk's competitors with insight into The Trade Desk's business that is not publicly available and highly confidential. *See* Dederick Decl. ¶ 9. This information would provide The Trade Desk's competitors with an unfair advantage over The Trade Desk, and public disclosure of this

11

information would cause harm to The Trade Desk's business and its competitive position.

### G. Deposition Testimony

The Trade Desk has provided, through its 30(b)(6) witness, deposition testimony related to the topics in Sections C-G, including its customers and partnerships, competitive strategy and competitor analyses, product development and specifications, future business strategy, and other highly confidential topics regarding The Trade Desk's products, its business strategy, and its financial information. *See* Dederick Decl. ¶ 10. The deposition designations identified in Appendix B and Appendix C contain non-public information related to The Trade Desk's business which would (i) provide The Trade Desk's competitors with insight into The Trade Desk's confidential business strategy and an unfair advantage over The Trade Desk, and (ii) harm The Trade Desk's competitive position in the market. *Id.*

## III. ARGUMENT

To determine whether the interests in sealing the records outweigh the public's right of access, a court must follow a three-step process: "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft*, 218 F.3d at 302; *see also Adams v. Object Innovation, Inc.*, No. 11-cv-272, 2011 WL 7042224, at *4 (Dec. 5, 2011), *report & recommendation adopted*, 2012 WL 135428 (E.D. Va. Jan. 17, 2012). All three requirements are met here.

First, the public has been provided public notice of the request to seal and will have reasonable opportunity to object to the information being sealed. On April 26, 2024 (Dkt. No. 605) and May 17, 2024 (Dkt. Nos. 648, 661, 667), Sealing Motions were filed publicly in accordance with Local Civil Rule 5 of exhibits related to similar aspects of The Trade Desk's

business. The Trade Desk also filed a memorandum in support of sealing on June 14, 2024 (Dkt. No. 838). Additionally, this motion is filed publicly and there will be six-weeks before the time of this filing and the scheduled trial. Thus, the first requirement under *Ashcraft* is met and "interested parties [will have] a reasonable opportunity to object[.]" 218 F.3d at 302.

Second, The Trade Desk is requesting less drastic alternatives to sealing the documents, and seeks to seal and redact only a limited number of the almost 50 exhibits, totaling 72 documents, and over 250 deposition designations that the parties' have identified in their exhibit lists. Pursuant to the Protective Order, the parties and third parties must keep this information confidential. The parties have only sealed selected exhibits and redacted relevant excerpts, which constitutes "the least drastic method of shielding the information at issue." *Adams*, 2011 WL 7042224 at *4 ("[The] proposal to redact only the proprietary and confidential information, rather than seal the entirety of his declaration, constitutes the least drastic method of shielding the information at issue."). The public has no legitimate interest in this information, which is confidential to The Trade Desk and does not provide pertinent information for this case. The information that the parties seek to seal includes highly confidential, proprietary, and competitively sensitive business information belonging to The Trade Desk and such other parties that could face harm if such information were to be released publicly. *See supra* Section II.A-F.

Third, there is support for filing certain of the parties' exhibits and deposition designations under seal and with redactions. These materials fall within briefings, and exhibits thereto, contain material that falls within the scope of the Protective Order which requires that this information remain confidential. Moreover, The Trade Desk previously designated such confidential information as highly confidential, competitively sensitive business information, the disclosure of which would cause harm. Placing these materials under seal is proper because the public's interest

13

in access is outweighed by a party's interest in "preserving confidentiality" of the limited amount of confidential information that is "normally unavailable to the public." *Flexible Benefits Council v. Feltman*, No. 08-cv-371, 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008); *see also U.S. ex rel. Carter*, 2011 WL 2077799, at *3.  The portions of the parties' exhibits lists and deposition designations sealed and redacted contain confidential information of The Trade Desk and other third parties.

IV.     **CONCLUSION**

For the foregoing reasons, The Trade Desk respectfully requests that its Motion to seal the exhibits and deposition designations cited above, and in Appendices A, B, and C be granted and that such sealing be maintained under further Order of this Court.

Date: July 26, 2024

/s/ David L. Johnson
David L. Johnson (VSB 89289)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
david.johnson@lw.com

Elizabeth Prewitt (*pro hac vice*)
Lauren Sun (*pro hac vice forthcoming*)
Ryan Maamoun (*pro hac vice forthcoming*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1354
Facsimile: (212) 751-4864
elizabeth.prewitt@lw.com
lauren.sun@lw.com
ryan.maamoun@lw.com

Aaron T. Chiu (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
aaron.chiu@lw.com

*Attorneys for The Trade Desk, Inc.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                  Plaintiff,<br><br>   v.<br><br>Google LLC<br><br>                  Defendant. | Case No. 1:23-cv-00108-LMB-JFA<br><br>The Honorable Leonie M. Brinkema |

**THE TRADE DESK, INC.'S CERTIFICATE OF SERVICE FOR DOCUMENTS FILED UNDER SEAL**

    I hereby certify that I will cause the trial exhibits filed under seal in connection with The Trade Desk's Motion to Seal to be forwarded electronically to counsel of record for Plaintiff United States of America, et al. and Defendant Google LLC.

Date: July 26, 2024

                                            */s/ David L. Johnson*
                                            David L. Johnson

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 26, 2024, I caused a copy of the foregoing to be electronically filed using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

Date: July 26, 2024

                                                       */s/ David L. Johnson*
                                                       David L. Johnson