# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>        Plaintiff,<br><br>   v.<br><br>Google LLC<br><br>        Defendant. | Case No. 1:23-cv-00108-LMB-JFA<br><br>The Honorable Leonie M. Brinkema |

**DECLARATION OF PRASHANT SAHITA IN SUPPORT OF NON-PARTY THE TRADE DESK, INC.'S MOTION TO SEAL**

## DECLARATION OF PRASHANT SAHITA

I, Prashant Sahita, declare as follows:

1. I am the Lead Senior Business Intelligence Analyst at The Trade Desk, Inc. ("The Trade Desk"). I have personal knowledge of the facts set forth herein and if called as a witness could and would testify competently to them.

2. The Trade Desk is a self-service ad buying platform known as a demand-side platform ("DSP") and is headquartered in Ventura, California with offices in various cities in North America, Europe, Asia, and Australia. Our platform empowers our clients to plan, manage, and optimize data-driven advertising campaigns.

3. I have worked at The Trade Desk since October 2021 and have extensive experience collaborating with various teams at The Trade Desk, including Sales, Client Services, Finance, Product, Technology, and Marketing to design and develop insights and capabilities to help guide strategic decision making at The Trade Desk. In my current role as Lead Senior Business Intelligence Analyst at The Trade Desk, I, among other things, surface insights from multiple data sources to support complex operational decision making and competitive strategy; execute and/or coordinate critical advanced analytics initiatives on behalf of The Trade Desk; lead cross-functional teams to develop data-driven insights and decision metrics; and provide analysis of key performance indicators and success metrics across various business areas and develop actionable insights for leadership. As part of my responsibilities, I regularly analyze competitively sensitive financial and performance data of The Trade Desk.

4. By operating a DSP platform, The Trade Desk enables its clients – advertisers and ad agencies – to purchase digital ad inventory on various media exchanges and sell-side platforms as part of their digital advertising campaigns. Each DSP offers a different mix of inventory options

and products to choose from, making the choice of which DSPs to use a strategic choice. The Trade Desk spends considerable resources to compete against other DSP platforms and provide the best performance for its clients' campaigns in terms of targeting, reach, cost-efficiency, and return-on-investment. The Trade Desk's financial strategies and knowledge and understanding of DSP strategies make part of the valuable service it provides to its clients and can be seen as a competitive advantage.

5. Data related to The Trade Desk's financials and customers is highly confidential, sensitive, proprietary information that The Trade Desk uses to develop its competitive strategy and complex operational decision-making. Data, including performance indicators and success metrics, are used to provide insights and analyses to a number of teams across The Trade Desk's business so that they can execute on their roles and strategic decisions. Information related to (i) The Trade Desk's inventory costs, bid counts, impressions, and partner costs, and (ii) The Trade Desk's spend, billings, and revenue, are highly sensitive and only accessible to a limited subset of employees at The Trade Desk. Public disclosure of this data could be leveraged by The Trade Desk's competitors to undercut The Trade Desk's services with its clients, its pricing, and its business strategy. Public disclosure of these exhibits would unfairly disadvantage and harm The Trade Desk's competitive position in the marketplace.

6. <u>DTX1444:</u> This exhibit contains data related to The Trade Desk's customers, and provides exact breakdowns of impressions, partner costs, and other competitively sensitive information, such as brands, advertisers, campaigns, partners, inventory type, media type, and bids. This data is highly confidential and proprietary, and public disclosure of this information would provide The Trade Desk's competitors with competitively sensitive information that would unfairly disadvantage and harm The Trade Desk's position in the industry.

7. <u>DTX1799</u>: This exhibit contains data regarding The Trade Desk's inventory, media, advertisements, and suppliers, and provides detailed breakdowns of bids, impressions, and partner costs, which is highly confidential, non-public, and competitively sensitive information that The Trade Desk uses to execute its competitive strategy. Public disclosure of this information would provide The Trade Desk's competitors with competitively sensitive information and insights into The Trade Desk's business that would unfairly disadvantage and harm The Trade Desk's position in the industry.

8. <u>DTX1800</u>: This exhibit contains data regarding the Trade Desk's customers and their brands, advertisers, partners, inventory type, media type, advertisements, and suppliers, and provides detailed breakdowns of bids, impressions, and partner costs, which is highly confidential, non-public, and competitively sensitive information that The Trade Desk uses to execute its competitive strategy. Public disclosure of this information would provide The Trade Desk's competitors with competitively sensitive information and insights into The Trade Desk's business that would unfairly disadvantage and harm The Trade Desk's position in the industry.

9. <u>DTX 1801</u>: This exhibit contains information related to The Trade Desk's spend, billing, and revenue. This financial data is highly confidential and contains competitively sensitive information that could be leveraged by The Trade Desk's competitors to undercut The Trade Desk's services and its client strategy, pricing, and business strategy. Public disclosure of this information would provide The Trade Desk's competitors with competitively sensitive information and insights into The Trade Desk's business that would unfairly disadvantage and harm The Trade Desk's position in the industry.

10. The Trade Desk's customer data and financial data that are broken down in these exhibits in detail would expose the Trade Desk's highly confidential customer approach and

pricing strategy. The Trade Desk's data and analyses, which it has invested significant resources in compiling, have substantial economic and competitive value. The Trade Desk spends a significant amount of money and resources to develop such specialized knowledge and information in programmatic advertising to provide a commercially competitive DSP offering to its clients.

11. Public disclosure of this information would compromise The Trade Desk's position in the marketplace by giving its competitors an inside look into the proprietary practices that give The Trade Desk a competitive advantage in the programmatic advertising space and grant such competitors a valuable and inequitable shortcut to their own development efforts. This data would provide The Trade Desk's competitors with insight into The Trade Desk's confidential analyses which would allow them to undermine The Trade Desk's strategies and competitive edge.

I declare under penalty of perjury under the laws of Virginia that the foregoing is true and correct and that this declaration was executed on July 25, 2024, in New York, New York.

*Prashant Sahita*
_____
Prashant Sahita