UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Google LLC<br><br>　　　　　Defendant. | Case No. 1:23-cv-00108-LMB-JFA<br><br>The Honorable Leonie M. Brinkema |

**DECLARATION OF JED DEDERICK IN SUPPORT OF NON-PARTY THE TRADE DESK, INC.'S MOTION TO SEAL**

**DECLARATION OF JED DEDERICK**

I, Jed Dederick, declare as follows:

1. I am the Chief Revenue Officer at The Trade Desk, Inc. ("The Trade Desk"). I have personal knowledge of the facts set forth herein. I previously testified at deposition as non-party The Trade Desk's Rule 30(b)(6) designee in this litigation. I make this declaration in support of The Trade Desk's Motion to Seal Portions of the Parties' Exhibits and Deposition Designations.

2. The Trade Desk is a self-service ad buying platform known as a demand-side platform ("DSP") and is headquartered in Ventura, California with offices in various cities in North America, Europe, Asia, and Australia. Our platform empowers our clients to plan, manage, and optimize data-driven advertising campaigns.

3. I have worked at The Trade Desk for twelve years and have extensive experience with sales, marketing, and business development. My current role at The Trade Desk is the Chief Revenue Officer. I am also the former Chief Client Officer at The Trade Desk. As the Chief Revenue Officer, I direct The Trade Desk's revenue generation and new client acquisition globally. I oversee The Trade Desk's most substantial brand and agency relationships. From my roles, I have in-depth knowledge of The Trade Desk's go-to-market strategy, client messaging, and various organizational functions.

4. By operating a DSP platform, The Trade Desk enables its clients – advertisers and ad agencies – to purchase digital ad inventory on various media exchanges, content publishers and sell-side platforms as part of their digital advertising campaigns. Each DSP offers a different mix of inventory and data options, and other products to choose from, making the choice of which DSPs to use a strategic choice for any ad agency, advertiser or ad campaign. The Trade Desk spends considerable resources to compete against other DSP platforms and provide the optimal

performance for its clients' campaigns, including in terms of targeting, reach, cost-efficiency, and return-on-investment. The Trade Desk's competitive strategy, research and development of its products, and knowledge and understanding of performant advertising campaigns comprise the unique service it provides to its clients, and provide The Trade Desk with a competitive advantage.

     5.     <u>Government Requests (PTX1714; PTX1715).</u>  In response to questionnaires issued by a government agency in connection with a confidential inquiry, The Trade Desk provided highly sensitive information related to its go-to-market strategy, client pricing, functionalities, investments, approaches to the development of its products, its transactions, its costs, and its knowledge of DSP strategies. Prior to providing its responses, The Trade Desk notified the government agency that The Trade Desk's reply to the government's questionnaires contained business secrets and other confidential information. Such information is proprietary to the Trade Desk and constitutes highly confidential competitive strategy of the company informing its DSP strategy and future plans. If made public, The Trade Desk's competitors could use this information to gain competitive insight into The Trade Desk's DSP strategy and use this information to undermine The Trade Desk's market position.

     6.     <u>Internal Communications Regarding The Trade Desk's Customers and Partnerships (DTX319; DTX523; DTX737; DTX823; DTX1022; DTX1051; DTX1456).</u>  Internal communications between The Trade Desk's employees that the parties have identified in their exhibits lists includes information regarding The Trade Desk's (i) auction dynamic analysis, AdX inventory approach, predictive clearing performance, auction presentations, supply-side-platform clearing rates, price optimization strategy, (ii) cost, performance, and scale evaluation, and fee structures of its clients, and its proposed strategy to develop client relationships. This information is highly confidential, non-public information that was used by the Trade Desk to build its

customer base based on years of work and experience.. Similarly, communications and presentations detailing The Trade Desk's joint business plan agreements (including client-specific terms and commercial agreements) and strategy, the status of The Trade Desk's clients and business partnerships, its strategy for maintaining these relationships, and its product opportunities, all constitute highly confidential, non-public information that would provide the Trade Desk's competitors with unwarranted insight into the Trade Desk;s DSP strategy and an undue advantage The Trade Desk in the marketplace.. Accordingly, public disclosure of these communications and presentations would cause harm to The Trade Desk's competitive position in the marketplace.

7. <u>Competitive Strategy and Competitor Analyses (DTX 1084; DTX1254; DTX1798; DTX1139).</u> The Trade Desk maintains highly confidential, non-public business strategies that it has developed through years of experience, investment in resources and personnel, and analyses of the market, and uses the same to build its customer base and increase its competitive advantage in the market. This information, which the parties have identified in their exhibits lists, includes (i) memoranda and communications regarding The Trade Desk's audience and client strategy, analyses of strengths, weaknesses, opportunities, and competitive threats (SWOT), and market and client feedback, and (ii) presentations detailing The Trade Desk's business strategy, in which The Trade Desk has invested significant resources to develop and, in some cases, prepared specifically for its clients, who have signed non-disclosure agreements. Similarly, presentations that The Trade Desk has prepared internally and for its clients related to its partnerships, offerings, and competitive strategy are non-public, competitively sensitive, proprietary business information that The Trade Desk uses to build and improve its platform and provides The Trade Deska competitive advantage. Public disclosure of this information would provide The Trade Desk's competitors

4

with the Trade Desk's confidential business strategy and cause harm to The Trade Desk's competitive position in the market.

8. <u>Product Development and Specifications (DTX520; DTX1162; DTX1198; DTX1447; DTX1170; DTX1794; DTX1795; DTX1797).</u>  The Trade Desk has expended significant resources to develop its products and offerings to clients. Communications and presentations that the parties have identified in their exhibit lists that discuss in detail the development, benefits, strategy, and future plans and considerations for The Trade Desk's products including OpenPath and Unified ID 2.0 are highly confidential, non-public information that, in the ordinary course, is provided only to The Trade Desk's employees and, in certain limited instances, its clients or business partners. Additionally, the agreements and terms and conditions that The Trade Desk enters into with publishers and clients are non-public and proprietary. Public disclosure of the-above referenced information would subject The Trade Desk to undue competitive disadvantage and harm its position in the industry.

9. <u>Future Business Strategy (DTX1205; DTX1800).</u>  Internal communications regarding The Trade Desk's future business strategies discussed internally among The Trade Desk's employees are highly confidential, non-public information that involves creative strategy and analyses of The Trade Desk. Specifically, communications and presentations regarding The Trade Desk's target addressable market and three-year plan, and its publisher development plans, contain competitively sensitive and proprietary information. This type of information would provide The Trade Desk's competitors with insight into The Trade Desk's business strategy that is not publicly available and provide The Trade Desk's competitors with an unfair advantage over The Trade Desk. Public disclosure of this information would cause harm to The Trade Desk's business and its competitive position.

10. Additionally, I have provided deposition testimony related to the above topics, and other highly confidential topics regarding The Trade Desk's products, its business strategy, and its financial information. This information is contained at the following pages of the transcript: 41:7-41:10; 44:2-44:4; 44:12-44:25; 44:21-45:22; 45:2-45:4; 60:14-60:23; 60:25-60:25; 61:2-61:24; 62:10-62:15; 62:20-63:19; 64:16-65:6; 69:20 – 70:15; 72:17-73:24; 98:2-99:7; 99:23-100:7; 100:22-101:2; 102:12-103:3; 105:2-105:13; 108:4-108:12; 120:19-120:23; 122:25-123:10; 126:5-127:25; 128:16-129:3; 130:20-134:4; 134:18-20; 134:22-137:15; 144:15-145:18; 163:11-13; 163:16-165:20; 167:14-170:4; 170:13-174:24; 179:19-180:2; 180:25-182:20; 191:24-195:25; 196:12-198:18; 198:21-202:5; 202:22-203:8; 217:10-223:23; 224:25-230:24; 231:14-20; 231:24-232:15; 232:18-234:3; 235:17-22; 236:3-238:18; 243:12-24; 244:6-245:4; 245:8-246:11; 247:18-248:19; 249:3-15; 249:18-252:20; 253:5-254:10; 254:15-18; 254:21-255:22; 255:25-257:6; 257:11-266:21; 267:11-269:17; 270:10-271:3; 271:20-280:14; 281:2-281:14; 282:11-285:4; 285:11-286:1; 286:15-288:13; 293:9-293:24; 294:5-294:7; and 295:6-295:10. This is non-public information related to The Trade Desk's business which would (i) provide The Trade Desk's competitors with insight into The Trade Desk's confidential business strategy and an unfair advantage over The Trade Desk, and (ii) harm The Trade Desk's competitive position in the market.

11. The information related to the topics above and that are addressed in the parties' exhibits and deposition designations would expose creative elements of The Trade Desk's business to competitors, who might then replicate or undermine the Trade Desk's innovative strategies and competitive value. The Trade Desk's products, business strategy, and approach to and terms of service with its customers and business partners, are factors that differentiate The Trade Desk from other DSPs. To provide a commercially competitive DSP offering to its clients, The Trade

6

Desk has spent and spends a significant amount of money and devotes and has devoted substantial resources to develop this specialized knowledge and its strategies in programmatic advertising..

12. Public disclosure of The Trade Desk's discussions, analyses, and strategic considerations would cause The Trade Desk significant commercial and competitive harm and prejudice. Accordingly, disclosure would compromise The Trade Desk's position in the marketplace by giving its competitors an unwarranted inside look into the proprietary practices that give The Trade Desk a competitive advantage in the programmatic advertising space and improperly grant such competitors a valuable and inequitable subsidy to their own business and development efforts.

I declare under penalty of perjury under the laws of Virginia that the foregoing is true and correct and that this declaration was executed on July 25, 2024, in New York, New York.

_____
Jed Dederick