**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| UNITED STATES, *et al.*,<br><br>      *Plaintiffs*,<br><br> v.<br><br>GOOGLE LLC,<br><br>      *Defendant*. | Civil Action No. 1:23-CV-00108-LMB-JFA |

## NON-PARTY NEXXEN INTERNATIONAL LTD.'S OBJECTION TO PUBLIC USE OF HIGHLY CONFIDENTIAL DOCUMENT ON GOOGLE LLC'S EXHIBIT LIST

Pursuant to this Court's June 24, 2024 Order (Dkt. 49) directing that a party who objects to the public use of confidential documents file a specific objection with the Court, non-party Nexxen International Ltd. ("Nexxen") hereby objects to the public use of its Highly Confidential document bearing the Bates number TREM00002600, a spreadsheet consisting of five sheets containing approximately 24,000 lines of data concerning financial performance of Nexxen's demand-side platform. Nexxen requests that the spreadsheet be kept from public disclosure in its entirety. In the alternative, if a redacted version is deemed to be absolutely necessary, Nexxen requests redaction of all data included in the spreadsheet.[1] Nexxen also objects to the public disclosure of the information contained in the spreadsheet, including in Google's expert reports,

---

[1] Exhibit A includes examples, by spreadsheet tab, of what those redactions would look like. Because the spreadsheet is comprised of approximately 1,500 pages containing more than 24,000 lines of data (enough pages to fill more than half a bankers box), it would be impractical to attach as an exhibit in its entirety. If the Court is inclined to require production of a complete redacted version, Nexxen will promptly produce the spreadsheet with its proposed redactions.

to the extent that the data is unanonymized and unredacted.  Nexxen requests that such information

continue to be redacted to the extent the information can be traced to Nexxen.[2]

## BACKGROUND

1.      Nexxen is a data-driven advertising technology company comprised of (i) a

demand-side platform (DSP), which assists advertisers with buying ad inventory and media, (ii) a

supply-side platform (SSP), which assists publishers with selling ad inventory, and (iii) an ad

server and data management platform (DMP), which stores and leverages user data.  (*See* Niri

Decl. ¶ 2).

2.      Tremor Video was a DSP encompassed within the Tremor International brand, now

known as Nexxen International Ltd.  (Niri Decl. ¶ 3).  Although Tremor Video has been

consolidated and rebranded under the Nexxen brand, Nexxen still uses the same technology, now

with different branding.  (Niri Decl. ¶ 3).  Tremor Video's (now Nexxen's) technology allows

customers to buy ad space on a per-impression basis, or in other words, based on the number of

times the ad is viewed or engaged with by a user.  (Niri Decl. ¶ 3).

3.      On September 8, 2023, in response to non-party subpoenas served by Google LLC

("Google") in the above-captioned matter, Tremor Video produced a spreadsheet to Google

bearing the Bates number TREM00002600.  The information in the spreadsheet included non-

public, commercially sensitive information.  As such, it was marked as Highly Confidential

pursuant to the protective order in this case (ECF No. 203).  (*See* Niri Decl. ¶ 5).

4.      On July 5, 2024, Google filed its exhibit list with the Court (ECF No. 894).  On the

same day, Nexxen was informed by Google's counsel that Google's exhibit list included multiple

documents produced by Tremor Video or other brands formerly included in the Tremor

---

[2] Google's expert reports were only produced to Nexxen in redacted form, and thus, Nexxen cannot provide more detail regarding the specific information it proposes should be redacted.

International brand.  The Highly Confidential document produced by Tremor Video bearing the Bates number TREM00002600 was among those included on the list.[3]

5.      This lengthy spreadsheet includes extremely granular, non-public information about Nexxen's costs, revenue, pricing, and operations.  Specifically, it includes Nexxen's direct impressions through demand-side platforms and impressions and gross revenue by month and year, broken down by format (display advertising, instream video, and outstream video) for each Ad Format (Desktop/Web, Mobile/Web, Mobile/App, and Connected TV).  (Niri Decl. ¶ 6).

6.      Nexxen was also informed by Google's counsel that documents produced by brands now encompassed within Nexxen (presumably including the document bearing the Bates number TREM00002600), or information contained therein, are reflected in charts, figures, or tables prepared by Google's experts in this action, which are also included on Google's exhibit list. Nexxen was only provided with a redacted version of Google's expert reports, and therefore is unable to conclude what confidential Nexxen information might be disclosed if the reports are made public without these redactions.

7.      Nexxen is a public company with an established process for determining the financials it reports externally.  The data contained in the document bearing the Bates number TREM00002600 is highly sensitive information that is not disclosed publicly.  The Company does not publicly report gross revenue or impression level data by format.  (Niri Decl. ¶ 7).

8.      Counsel for Nexxen has contacted Google's counsel regarding a potential agreement with respect to potential redactions of particularly sensitive information but Google's counsel declined to engage with Nexxen's counsel or to otherwise explain why the entire spreadsheet needs to be disclosed.  (*See* Ex. A.)

---

[3] Nexxen does not object to public disclosure of the other documents produced by Tremor International brands included on Google's exhibit list or the information contained therein.

## ARGUMENT

9.      Confidential documents should not be made available to the public where "the potential harm from disclosure of this information outweighs the public's right to access to judicial proceedings." *Globus Med. Inc. v. Jamison*, 2023 WL 4937386, at *3 (E.D. Va. Jan. 12, 2023). Such is the case where, as here, a document includes "confidential business information" and "there is risk that the disclosure of this information will cause competitive harm" or allow others to "'gain[] a business advantage' from materials filed with the court." *NVR, Inc. v. Nelson*, 2016 WL 11669370, at *1 (E.D. Va. Nov. 4, 2016) (granting motion to seal for these reasons) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).[4]

10.     The accompanying Declaration of Sagi Niri, Nexxen's Chief Financial Officer, details some of the "substantial commercial harm" that Nexxen would suffer if the information contained in the relevant spreadsheet is made available to the public. (Niri Decl. ¶ 8). For instance, "[t]he information would give Nexxen's competitors significant insight into Nexxen's revenue streams, and Nexxen's competitors would be able to use this information to undercut Nexxen's pricing for each Ad Format." (Niri Decl. ¶ 8). Moreover, the information about impressions would allow Nexxen's competitors insight into Nexxen's operations, which in turn would enable them to adapt their own operations and strategies accordingly. (Niri Decl. ¶ 8).

11.     Ironically, this action is about Google using alleged "anticompetitive, exclusionary, and unlawful means to eliminate or severely diminish any threat to its dominance over digital advertising technologies." (Amended Complaint ¶ 4.) In the course of defending the action,

---

[4] *See also Mars, Inc. v. J. M. Smucker Co.*, 2017 WL 11499735, at *1 (E.D. Va. Aug. 9, 2017) (concluding that the documents at issue "contain confidential business information that is appropriate for filing under seal"); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2014 WL 12659872, at *1 (E.D. Va. Oct. 14, 2014) (granting motion to seal because "the information Microsoft seeks to file under seal is sensitive business information and Microsoft's competitive position might be impaired if this information is disclosed to the public at large"); *E. W., LLC v. Rahman*, 2012 WL 3841401, at *2 (E.D. Va. Sept. 4, 2012) (same).

Google should not be allowed to further threaten those competing advertising technologies by obtaining, and then publicly disclosing, their most sensitive commercial data.

12.     Nexxen is also a non-party to this action whose confidential information should be afforded increased protections.  *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 194 (4th Cir. 2019) (noting the "special solicitude" owed to discovery from non-parties, who "have 'no dog in [the] fight" (internal citation omitted); *Sagewater, LLC v. Hossfeld*, 2024 WL 3466475, at *1 (E.D. Va. June 7, 2024) (noting the "more demanding" analysis required for third party discovery).

13.     With respect to the public's interest, where a document contains "confidential financial data" that is "normally unavailable to the public," "[t]he public's interest in access is outweighed [] by the [company's] interest in preserving confidentiality." *Flexible Benefits Council v. Feltman*, 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008).  Such is the case here.  (*see* Niri Decl. ¶ 7).  As Nexxen's CFO has declared under penalty of perjury, the information contained in the spreadsheet at issue "is highly sensitive information that is not disclosed publicly."  (Niri Decl. ¶ 7).  As such, the balance of interests weighs in favor of non-disclosure.

14.     Non-disclosure also "does not impair the public's interest in having access to information about the dispute," *Globus Med. Inc. v. Jamison*, 2023 WL 4937386, at *3 (E.D. Va. Jan. 12, 2023), because the data included in the confidential document at issue has already been incorporated into Google's expert reports.  The marginal, if any, utility of the data itself pales in comparison to the "substantial commercial harm" Nexxen would suffer in the event that this information is made available to the public.  (Niri Decl. ¶ 8).

## CONCLUSION

For the foregoing reasons, Nexxen objects to the public use of its Highly Confidential document bearing the Bates number TREM00002600, and requests (i) that it be withheld from public disclosure in its entirely, or alternatively, that the data contained therein be redacted, and

(ii) that all other documents incorporating such information be redacted such that the source of the information cannot be traced to Nexxen.

Dated: July 26, 2024                          Respectfully submitted,

                                              */s/ Matthew J. MacLean*
                                              Matthew J. MacLean (VSB # 44304)
                                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                                              1200 Seventeenth Street, NW
                                              Washington, DC 20036
                                              Phone: 202.663.8183
                                              Fax: 202.663.8007
                                              Email: matthew.maclean@pillsburylaw.com

                                              *Counsel for Non-Party Nexxen International Ltd.*