**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

United States of America, *et al.*,

        Plaintiff,

  v.

Google LLC

        Defendant.

Case No. 1:23-cv-00108-LMB-JFA

The Honorable Leonie M. Brinkema

**NON-PARTIES OMNICOM GROUP INC., DDB WORLDWIDE
COMMUNICATIONS GROUP LLC, GSD&M LLC, PORTER NOVELLI INC., AND
OMD USA LLC'S MEMORANDUM IN SUPPORT OF OBJECTIONS TO THE
<u>PUBLIC USE OF AND MOTION TO SEAL CERTAIN TRIAL EXHIBITS</u>**

Pursuant to Rule 5.2(d) of the Federal Rules of Civil Procedure, Local Civil Rule 5(C), and the Court Order dated June 24, 2024 (ECF Nos. 871), Non-Parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Inc., and OMD USA LLC (collectively the "Omnicom Entities"), objects to the public use of the following trial exhibits and respectfully requests that the Court seal either portions of or the entirety of the following trial exhibits:

1. Defendant's Trial Exhibit No. 378 (DTX 378)
2. Defendant's Trial Exhibit No. 630 (DTX 630)
3. Defendant's Trial Exhibit No. 631 (DTX 631)
4. Defendant's Trial Exhibit No. 835 (DTX 835)
5. Defendant's Trial Exhibit No. 878 (DTX 878)
6. Defendant's Trial Exhibit No. 940 (DTX 940)
7. Defendant's Trial Exhibit No. 1107 (DTX 1107)
8. Defendant's Trial Exhibit No. 1113 (DTX 1113)
9. Defendant's Trial Exhibit No. 1140 (DTX 1140)
10. Defendant's Trial Exhibit No. 1151 (DTX 1151)
11. Defendant's Trial Exhibit No. 1152 (DTX 1152)
12. Defendant's Trial Exhibit No. 1163 (DTX 1163)
13. Defendant's Trial Exhibit No. 1172 (DTX 1172)
14. Defendant's Trial Exhibit No. 1228 (DTX 1228)
15. Defendant's Trial Exhibit No. 1242 (DTX 1242)
16. Defendant's Trial Exhibit No. 1249 (DTX 1249)
17. Defendant's Trial Exhibit No. 1267 (DTX 1267)

18. Defendant's Trial Exhibit No. 1280 (DTX 1280)

19. Defendant's Trial Exhibit No. 1294 (DTX 1294)

20. Defendant's Trial Exhibit No. 1299 (DTX 1299)

21. Defendant's Trial Exhibit No. 1318 (DTX 1318)

22. Defendant's Trial Exhibit No. 1327 (DTX 1327)

23. Defendant's Trial Exhibit No. 1333 (DTX 1333)

24. Defendant's Trial Exhibit No. 1336 (DTX 1336)

25. Defendant's Trial Exhibit No. 1347 (DTX 1347)

26. Defendant's Trial Exhibit No. 1373 (DTX 1373)

27. Defendant's Trial Exhibit No. 1381 (DTX 1381)

28. Defendant's Trial Exhibit No. 1394 (DTX 1394)

29. Defendant's Trial Exhibit No. 1399 (DTX 1399)

30. Defendant's Trial Exhibit No. 1400 (DTX 1400)

31. Defendant's Trial Exhibit No. 1461 (DTX 1461)

As set forth further below, these materials contain confidential, financial, proprietary, and competitively sensitive business information belonging to the Omnicom Entities, which could cause significant harm to the business of the Omnicom Entities and their respective clients if released publicly. This material and information all satisfy the requisite sealing standards. The Omnicom Entities respectfully submit that they should remain under seal.

I.      LEGAL STANDARD

Local Civil Rule 5(C) requires that, when a party moves to file material under seal that another party has designated as confidential, "the party designating the material as confidential must file a response to the motion complying with requirements (2), (3), and (4) above along with

a proposed order" that "shall recite the findings required by governing case law to support the proposed sealing." Loc. R. Civ. P. 5(C). These requirements are: "(2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request; (3) References to the governing case law, an analysis of the appropriate standard to be applied for that specific filing, and a description of how that standard has been satisfied; [and] (4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and how the matter is to be handled upon unsealing." *Id.*

"[T]he right [of the public] to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Denial of access to court records is appropriate where "court files might have become a vehicle for improper purposes." *Id.* A business's "strong interest in preserving the confidentiality of its proprietary and trade-secret information" may justify sealing of court records. *Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). Indeed, a court may seal court documents "if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).

## II.     DESCRIPTION OF MATERIALS SOUGHT TO BE SEALED

The Omnicom Entities seek to seal and redact the following materials, set forth below. This response addresses all of the various exhibits noticed for trial by the parties. Attached to this response as Appendix A is an in-depth breakdown of each exhibit, or portion of exhibit, the Omnicom Entities seek to seal alongside citations to support for sealing the information included in the Omnicom Entities' accompanied declarations discussed below.

    1.     <u>Defendant's Trial Exhibit No. 378 (DTX 378)</u>. This is a procurement contract from the Army authorizing a five-year contract with DDB for its advertising and

3

marketing services which includes itemized pricing that represents DDB's proprietary, confidential and competitively sensitive winning bid for the Air Force's business. *See* Declaration of Ron Davis in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Public Services Inc., and OMD USA LLC's Motion to Seal Certain Trial Exhibits ¶ 5 ("Davis Decl."). Public disclosure of this information would reveal confidential Army information and provide insight into their marketing priorities, objectives, and goals, all of which is shaped by the work of DDB. *See* Davis Decl. ¶ 10. The disclosure of Army's unique marketing strategy would provide competing recruiting entities and DDB's competitors an inside look into how DDB operationalizes a full service media, advertising and marketing account plan for specific clients, which is the exact sort of analysis and planning upon which DDB competes to remain competitive in the market. *See* Davis Decl. ¶ 10.

      2.    <u>Defendant's Trial Exhibit No. 630 (DTX 630)</u>. This exhibit is an email thread that discusses optimization strategies and recommendations for CMS's Spanish Enrollment Campaign. *See* Declaration of Jill Herzog in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Public Services Inc., and OMD USA LLC's Motion to Seal Certain Trial Exhibits ¶ 4 ("Herzog Decl."). It identifies the names of ten (10) Porter Novelli employees who are private individuals with no connection or relevance to the present litigation. *See* Herzog Decl. ¶ 4.

      3.    <u>Defendant's Trial Exhibit No. 631 (DTX 631)</u>. This exhibit is an email thread that discusses optimization strategies and recommendations for CMS's Spanish Enrollment Campaign. *See* Herzog Decl. ¶ 5. It identifies the names of ten (10) Porter Novelli

employees who are private individuals with no connection or relevance to the present litigation. *See* Herzog Decl. ¶ 5.

        4.       <u>Defendant's Trial Exhibit No. 835 (DTX 835)</u>. This exhibit includes an analytics report prepared by GSD&M for the Air Force. *See* Declaration of Bo Bradbury in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Public Services Inc., and OMD USA LLC's Motion to Seal Certain Trial Exhibits ¶ 5 ("Bradbury Decl."). It provides top-line metrics regarding the efficacy of GSD&M's media, advertising and marketing recommendations as they relate to engagement with the Air Force's website, airforce.com. *See* Bradbury Decl. ¶ 5. This information represents GSD&M's proprietary and confidential trade secret approach for deriving media strategy, which provides GSD&M with a competitive advantage in the marketplace while helping the Air Force compete in a contested recruiting landscape. *See* Bradbury Decl. ¶ 5.

        5.       <u>Defendant's Trial Exhibit No. 878 (DTX 878)</u>. This exhibit is a monthly invoice from GSD&M to the Air Force that identifies a number of GSD&M employees by their full name, job title, and employee identification number along with a breakdown of each employee's hourly billing rate. *See* Bradbury Decl. ¶ 6. These employees are private individuals with no connection or relevance to the present litigation. *See* Bradbury Decl. ¶ 6.

        6.       <u>Defendant's Trial Exhibit No. 940 (DTX 940)</u>. This is an OMD presentation to OMD client McDonald's that provides in-depth analysis and discussion on how to leverage programmatic buying to optimize McDonald's campaign performance. *See* Declaration of Luke Lambert in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Public Services Inc., and OMD USA LLC's Motion to Seal Certain Trial Exhibits ¶ 4 ("Lambert Decl."). This information

represents OMD's proprietary and confidential trade secret approach for deriving media strategy, which provides OMD with a competitive advantage in the marketplace. *See* Lambert Decl. ¶ 4.

    7. <u>Defendant's Trial Exhibit No. 1107 (DTX 1107)</u>. This is a procurement contract from the Air Force authorizing a nine-year contract with GSD&M for its advertising and marketing services which includes itemized pricing that represents GSD&M's proprietary, confidential and competitively sensitive winning bid for the Air Force's business. *See* Bradbury Decl. ¶ 7. Public disclosure of this information would reveal confidential Air Force information and provide insight into their marketing priorities, objectives, and goals, all of which is shaped by the work of GSD&M. *See* Bradbury Decl. ¶ 15. The disclosure of Air Force's unique marketing strategy would provide competing recruiting entities and GSD&M's competitors an inside look into how GSD&M operationalizes a full service media, advertising and marketing account plan for specific clients, which is the exact sort of analysis and planning upon which GSD&M competes to remain competitive in the market. *See* Bradbury Decl. ¶ 15.

    8. <u>Defendant's Trial Exhibit No. 1113 (DTX 1113)</u>. This exhibit includes a DDB report that seeks an equitable adjustment to the Army's approved budget for a specific campaign. *See* Davis Decl. ¶ 6. This report provides an in-depth explanation of the technical aspects relating to how DDB executes a media, advertising, and marketing plan for the Army, including budget considerations and spend patterns, that represent DDB's confidential investment strategy. *See* Davis Decl. ¶ 6.

    9. <u>Defendant's Trial Exhibit No. 1140 (DTX 1140)</u>. This exhibit includes several slides of a DDB marketing mix modeling report prepared for the Army that provide an analysis of DDB's model output and an in-depth look at DBB's optimization strategy, including the data sources that DDB proposes utilizing to track performance and the specific actions that

DDB recommends taking to optimize performance based on the data results. *See* Declaration of Maria Stuckel in Support of Non-parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Public Services Inc., and OMD USA LLC's Motion to Seal Certain Trial Exhibits ¶ 4 ("Stuckel Decl."). The contents of this presentation represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace. *See* Stuckel Decl. ¶ 4.

10. <u>Defendant's Trial Exhibit No. 1151 (DTX 1151)</u>. This is a DDB presentation to the Army that provides in-depth analysis and discussion on the types of media channels DDB is recommending that the Army invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and DBB's recommended partners, publishers, and platforms for which to implement each aspect of the media plan. *See* Stuckel Decl. ¶ 5. The contents of this presentation and the collective presentation as a whole represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace. *See* Stuckel Decl. ¶ 5.

11. <u>Defendant's Trial Exhibit No. 1152 (DTX 1152)</u>. This is a GSD&M presentation to the Air Force that provides in-depth analysis and discussion on the types of media channels GSD&M recommends that the Air Force invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and GSD&M's recommended partners, publishers, and platforms for which to implement each aspect of the media plan. *See* Bradbury Decl. ¶ 9. The contents of this presentation represent GSD&M's proprietary and confidential trade secret approach for deriving media strategy, which provides GSD&M with a competitive advantage in the marketplace. *See* Bradbury Decl. ¶ 9.

7

12.     <u>Defendant's Trial Exhibit No. 1163 (DTX 1163)</u>.  This exhibit includes five (5) DDB presentations to the Army as well as two (2) strategy documents that discuss optimization metrics and insights and one (1) separate spreadsheet that reflects DDB's estimated media and labor costs from 2021 through 2028.  *See* Stuckel Decl. ¶ 6.  This information provides in-depth analysis and discussion on the types of media channels DDB is recommending that the Army invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and DBB's recommended partners, publishers, and platforms for which to implement each aspect of the media plan.  *See* Stuckel Decl. ¶ 6.  This information represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.  *See* Stuckel Decl. ¶ 6.

13.     <u>Defendant's Trial Exhibit No. 1172 (DTX 1172)</u>.  This is a DDB marketing mix modeling report prepared for the Army that provide an analysis of DDB's model output and an in-depth look at DBB's optimization strategy, including the data sources that DDB proposes utilizing to track performance and the specific actions that DDB recommends taking to optimize performance based on the data results.  *See* Stuckel Decl. ¶ 7.  The contents of this presentation represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.  *See* Stuckel Decl. ¶ 7.

14.     <u>Defendant's Trial Exhibit No. 1228 (DTX 1228)</u>.  This exhibit includes portions of a GSD&M presentation to the Air Force that provides in-depth analysis and discussion on the types of media channels GSD&M recommends that the Air Force invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and GSD&M's recommended partners, publishers, and platforms for which to

implement each aspect of the media plan.  *See* Bradbury Decl. ¶ 10.  The contents of this presentation represent GSD&M's proprietary and confidential trade secret approach for deriving media strategy, which provides GSD&M with a competitive advantage in the marketplace.  *See* Bradbury Decl. ¶ 10.

15. Defendant's Trial Exhibit No. 1242 (DTX 1242).  This exhibit includes a slide from a DDB presentation to the Army that outlines proposed updates to DDB's process for optimizing the performance of the Army's national media campaign across media channels.  *See* Stuckel Decl. ¶ 8.  This slide provides in-depth look at DBB's optimization strategy, information that represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.  *See* Stuckel Decl. ¶ 8.

16. Defendant's Trial Exhibit No. 1249 (DTX 1249).  This is a DDB marketing mix modeling report prepared for the Army that provide an analysis of DDB's model output and an in-depth look at DBB's optimization strategy, including the data sources that DDB proposes utilizing to track performance and the specific actions that DDB recommends taking to optimize performance based on the data results.  *See* Stuckel Decl. ¶ 9.  The contents of this presentation represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.  *See* Stuckel Decl. ¶ 9.

17. Defendant's Trial Exhibit No. 1267 (DTX 1267).  This is a DDB presentation to the Army that provides in-depth analysis and discussion on the types of media channels DDB is recommending that the Army invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and DBB's recommended

9

partners, publishers, and platforms for which to implement each aspect of the media plan. *See* Stuckel Decl. ¶ 10. The contents of this presentation and the collective presentation as a whole represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace. *See* Stuckel Decl. ¶ 10.

18. <u>Defendant's Trial Exhibit No. 1280 (DTX 1280)</u>. This exhibit includes a Porter Novelli presentation to CMS that provides in-depth analysis and discussion on the types of media channels Porter Novelli recommends that CMS invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and Porter Novelli's recommended partners, publishers, and platforms for which to implement each aspect of the media plan. *See* Herzog Decl. ¶ 6. The contents of this presentation represent Porter Novelli's proprietary and confidential trade secret approach for deriving media strategy, which provides Porter Novelli with a competitive advantage in the marketplace. *See* Herzog Decl. ¶ 6.

19. <u>Defendant's Trial Exhibit No. 1294 (DTX 1294)</u>. This is a GSD&M presentation to the Air Force that provides in-depth analysis and discussion on the types of media channels GSD&M recommends that the Air Force invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and GSD&M's recommended partners, publishers, and platforms for which to implement each aspect of the media plan. *See* Bradbury Decl. ¶ 11. The contents of this presentation represent GSD&M's proprietary and confidential trade secret approach for deriving media strategy, which provides GSD&M with a competitive advantage in the marketplace. *See* Bradbury Decl. ¶ 11.

20. <u>Defendant's Trial Exhibit No. 1299 (DTX 1299)</u>. This exhibit includes a letter from DDB relating to DDB's request for an equitable adjustment to the Army's approved budget for a specific campaign. *See* Davis Decl. ¶ 7. This letter provides an in-depth

explanation of the technical aspects relating to how DDB executes a media, advertising, and marketing plan for the Army, including budget considerations and spend patterns, that represent DDB's confidential investment strategy. *See* Davis Decl. ¶ 7.

21. <u>Defendant's Trial Exhibit No. 1318 (DTX 1318)</u>. This exhibit includes a presentation made in coordination between GSD&M and the Air Force that includes an in-depth analysis of GSD&M's media, advertising and marketing recommendations to the Air Force. Bradbury Decl. ¶ 12. This presentation provides an in-depth analysis of the effectiveness of GSD&M's execution of the Air Force's media, advertising, and marketing campaigns. *See* Bradbury Decl. ¶ 12. The contents of this presentation represent GSD&M's proprietary and confidential trade secret approach for deriving media strategy, which provides GSD&M with a competitive advantage in the marketplace. *See* Bradbury Decl. ¶ 12.

22. <u>Defendant's Trial Exhibit No. 1327 (DTX 1327)</u>. This is a DDB presentation to the Army that provides in-depth analysis and discussion on the types of media channels DDB is recommending that the Army invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and DBB's recommended partners, publishers, and platforms for which to implement each aspect of the media plan. *See* Stuckel Decl. ¶ 11. The contents of this presentation and the collective presentation as a whole represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace. *See* Stuckel Decl. ¶ 11.

23. <u>Defendant's Trial Exhibit No. 1333 (DTX 1333)</u>. This exhibit includes an amended procurement contract from the Army authorizing an increase in DDB's approved budget for the Army's national media talent and furnishings campaign. *See* Davis Decl. ¶ 8. Public disclosure of this information would reveal confidential Army information and provide

11

insight into their marketing priorities, objectives, and goals, all of which is shaped by the work of DDB.  *See* Davis Decl. ¶ 10.  The disclosure of Army's unique marketing strategy would provide competing recruiting entities and DDB's competitors an inside look into how DDB operationalizes a full service media, advertising and marketing account plan for specific clients, which is the exact sort of analysis and planning upon which DDB competes to remain competitive in the market.  *See* Davis Decl. ¶ 10.

24. <u>Defendant's Trial Exhibit No. 1336 (DTX 1336)</u>.  This is a DDB presentation to the Army that provides in-depth analysis and discussion on the types of media channels DDB is recommending that the Army invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and DBB's recommended partners, publishers, and platforms for which to implement each aspect of the media plan.  *See* Stuckel Decl. ¶ 12.  The contents of this presentation and the collective presentation as a whole represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.  *See* Stuckel Decl. ¶ 12.

25. <u>Defendant's Trial Exhibit No. 1347 (DTX 1347)</u>.  This is a GSD&M presentation to the Air Force that provides in-depth analysis and discussion on the types of media channels GSD&M recommends that the Air Force invest in, including the purpose of each media channel, the specific content to be shared via the media channels, and GSD&M's recommended partners, publishers, and platforms for which to implement each aspect of the media plan.  *See* Bradbury Decl. ¶ 13.  The contents of this presentation represent GSD&M's proprietary and confidential trade secret approach for deriving media strategy, which provides GSD&M with a competitive advantage in the marketplace.  *See* Bradbury Decl. ¶ 13.

26. <u>Defendant's Trial Exhibit No. 1373 (DTX 1373)</u>. This is an email summarizing and attaching six (6) separate monthly media flowcharts that provide an analysis of the effectiveness of DDB's execution of the Army's media, advertising, and marketing campaigns for the prior month as compared to prior months. *See* Stuckel Decl. ¶ 13. This information represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace. *See* Stuckel Decl. ¶ 13.

27. <u>Defendant's Trial Exhibit No. 1381 (DTX 1381)</u>. This exhibit includes a summary of the weekly results from CMS' Open Enrollment Campaign that provides in-depth analysis on the effectiveness of different media channels and the performance of the partners, publishers, and platforms that Porter Novelli used to implement the media plan across various demographics as well as recommended optimization strategies and updated investment amounts. Herzog Decl. ¶ 7. This information represents Porter Novelli's proprietary and confidential trade secret approach for deriving media strategy, which provides Porter Novelli with a competitive advantage in the marketplace. *See* Herzog Decl. ¶ 7.

28. <u>Defendant's Trial Exhibit No. 1394 (DTX 1394)</u>. This exhibit includes a summary of the weekly results from CMS' Open Enrollment Campaign and a monthly media flowchart that provides in-depth analysis on the effectiveness of different media channels and the performance of the partners, publishers, and platforms that Porter Novelli used to implement the media plan across various demographics as well as recommended optimization strategies and updated investment amounts. Herzog Decl. ¶ 8. This information represents Porter Novelli's proprietary and confidential trade secret approach for deriving media strategy, which provides Porter Novelli with a competitive advantage in the marketplace. *See* Herzog Decl. ¶ 8.

29. <u>Defendant's Trial Exhibit No. 1399 (DTX 1399)</u>.  This exhibit includes a summary of the weekly results from CMS' Open Enrollment Campaign and a monthly media flowchart that provides in-depth analysis on the effectiveness of different media channels and the performance of the partners, publishers, and platforms that Porter Novelli used to implement the media plan across various demographics as well as recommended optimization strategies and updated investment amounts.  Herzog Decl. ¶ 9.  This information represents Porter Novelli's proprietary and confidential trade secret approach for deriving media strategy, which provides Porter Novelli with a competitive advantage in the marketplace.  *See* Herzog Decl. ¶ 9.

30. <u>Defendant's Trial Exhibit No. 1400 (DTX 1400)</u>.  This is an email summarizing and attaching twelve (12) separate monthly media flowcharts that provide an analysis of the effectiveness of DDB's execution of the Army's media, advertising, and marketing campaigns for the prior month as compared to prior months.  *See* Stuckel Decl. ¶ 14.  This information represent DDB's proprietary and confidential trade secret approach for deriving media strategy, which provides DDB with a competitive advantage in the marketplace.  *See* Stuckel Decl. ¶ 14.

31. <u>Defendant's Trial Exhibit No. 1461 (DTX 1461)</u>.  This is a procurement contract and task order from CMS authorizing a one-year contract with Porter Novelli for its public relations and marketing services which outlines Porter Novelli's winning bid for CMS' business, and further breaks down in a detailed, itemized list the various kinds of public relations and related services that Porter Novelli has been authorized to execute on behalf of CMS.  *See* Herzog Decl. ¶ 11.  The substance of these recommendations make up the proposed full-service media, public relations and marketing plan which is proprietary information and plays a significant sole in Porter Novelli's success in the industry.  *See* Herzog Decl. ¶ 11.

**III.     ARGUMENT**

Although there is a general presumption that the public has the right to access documents in the files of the courts, this presumption may be overcome "if the public's right of access is outweighed by competing interests." *Ashcraft*, 218 F.3d at 302 (citation omitted); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988).  To determine whether the interests in sealing the records outweigh the public's right of access, a court must follow a three-step process: "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives."  *Ashcraft*, 218 F.3d at 302; *see also Adams v. Object Innovation, Inc.*, No. 11-cv-272, 2011 WL 7042224, at *4 (Dec. 5, 2011), *report & recommendation adopted*, 2012 WL 135428 (E.D. Va. Jan. 17, 2012).  Here, the three requirements are met.

First, the Omnicom Entities have filed a notice of their motion to be docketed by the Clerk, which will provide the public with an opportunity to bring objections, if any, to filing the documents at issue under seal.

Second, the Omnicom Entities seek only to redact limited portions from thirty-one (31) exhibits out of fifty-four (54) total exhibits that were either produced by or contain information relating to the Omnicom Entities.  This narrow set of information represents the Omnicom Entities' proprietary and competitively sensitive business information, such as current pricing and media strategy, disclosure of which would harm not only the Omnicom Entities, but their clients as well.  *See generally supra* Section II.  This selective and narrow protection of confidential material constitutes "the least drastic method of shielding the information at issue." *Adams*, 2011 WL 7042224, at *4 ("[The] proposal to redact only the proprietary and confidential

15

information, rather than seal the entirety of his declaration, constitutes the least drastic method of shielding the information at issue."). While the public may have an interest in the fact that FAAs purchase display advertising and their general process for doing so, the details of their current strategy and specific prices paid may remain under seal. *See Bayer CropScience Inc. v. Syngenta Crop Protection, LLC*, 979 F. Supp. 2d 653, 656-57 (M.D.N.C. 2013) (ordering sealing to prevent disclosure of "confidential marketing and sales information"); *Ultra-Mek, Inc. v. United Furniture Indus., Inc.*, No. 18-CV-281, 2021 WL 8533815, at *5 (M.D.N.C. Mar. 22, 2021) ("Where the information involved is sensitive business information, particularly such information with little to no value for public dissemination, the presumption of access is overcome."). For example, certain of the materials sought to be sealed include highly confidential pricing data that, if disclosed, would allow competitors to gain an unfair advantage over Omnicom's agencies in the market. Further, other materials sought to be sealed describe the Omnicom Entities and their respective agencies' commercially competitive strategy recommendations and guidance for clients which, if disclosed, could harm the various Omnicom Entities by, for example, allowing competitors replicate or undermine a particular agency's innovative strategies and competitive edge. No procedure other than filing this information under seal is sufficient to preserve the confidential and sensitive nature of the information.

  Third, there is ample support for filing these portions of the parties' briefings and exhibits under seal. *See generally supra* Section II. The materials that the Omnicom Entities seek to keep sealed contain information that the Omnicom Entities or other third parties (specifically, their clients) have designated as competitively sensitive business information, the disclosure of which would cause significant business and competitive harm to the Omnicom Entities and/or their respective clients. Placing these materials under seal is proper because the public's interest in

16

access is outweighed by the interest of the Omnicom Entities and their clients in "preserving confidentiality" of the limited amount of confidential information that is "normally unavailable to the public." *Flexible Benefits Council v. Feltman*, No. 08-cv-371, 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008); *see also U.S. ex rel. Carter*, 2011 WL 2077799, at *3.  As discussed above, the public disclosure of these materials and the information contained within would be greatly detrimental to the Omnicom Entities.  *See generally supra* Section II.  It would give Omnicom's competitors an inside look into how the agencies operationalize a full service media, advertising and marketing account for specific clients.  This is the exactly the sort of information, analysis and planning upon which the Omnicom Entities compete to remain competitive in the marketplace.

## IV.    CONCLUSION

The Omnicom Entities respectfully request that the Court grant their motion to seal in regards to the above discussed materials.

Dated:  July 26, 2024

Respectfully  submitted,

*/s/ David L. Johnson*
David L. Johson (VSB No. 89289)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
Tel: (202) 637-2200; Fax: (202) 637-2201

Niall E. Lynch (*pro hac vice*)
niall.lynch@lw.com
Aaron T. Chiu (*pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600; Fax: (415) 395-8095

*Counsel for Non-Parties Omnicom Group*

17

*Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Public Services Inc., and OMD USA LLC*

**CERTIFICATE OF SERVICE FOR DOCUMENTS FILED UNDER SEAL**

I hereby certify that I will cause the trial exhibits filed under seal in connection with Non-Parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Public Services Inc., and OMD USA LLC (collectively the "Omnicom Entities") Motion to Seal to be forwarded electronically to counsel of record for Plaintiff United States of America, et al. and Defendant Google LLC.

Dated:  July 26, 2024

Respectfully  submitted,

*/s/ David L. Johnson*
David L. Johson (VSB No. 89289)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
Tel: (202) 637-2200; Fax: (202) 637-2201

*Counsel for Non-Parties Omnicom Group Inc., DDB Worldwide Communications Group LLC, GSD&M LLC, Porter Novelli Inc., and OMD USA LLC*