UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| UNITED STATES, *et al.*,<br><br>    *Plaintiffs*,<br><br> v.<br><br>GOOGLE LLC,<br><br>    *Defendant.* | No. 1:23-cv-00108-LMB-JFA |

**DECLARATION OF ANDREW CASALE IN SUPPORT OF NON-PARTY INDEX EXCHANGE INC.'S OBJECTIONS TO THE PUBLIC USE OF INDEX'S CONFIDENTIAL INFORMATION AT TRIAL**

I, Andrew Casale, hereby declare:

 1. I am the President and Chief Executive Officer of non-party Index Exchange Inc. ("Index"). I make this declaration on my own personal knowledge pursuant to Local Civil Rules 5(C) and 5(H) in support of Index's Objections to the Public Use of Index's Confidential Information at Trial ("Index's Objections"). I have personal knowledge of the facts in this declaration or base them on business records which I have reviewed or descriptions provided by counsel for Plaintiffs or Defendant Google LLC ("the Parties") regarding the content of their trial exhibits. If called as a witness, I could and would competently testify to the facts stated herein.

 2. Through my role as the President and CEO of Index, I am personally familiar with Index's business and financial records and Index's recordkeeping, including the sensitive and confidential nature of Index's information. I am also familiar with Index's business operations and strategies. Index keeps its financial and business information confidential in order to protect itself from competitive harm.

 3. Index has produced thousands of pages of documents and terabytes of data in the

above-captioned matter in response to multiple subpoenas that the Parties issued to Index. Index designated certain material in its productions as "confidential" or "highly confidential" pursuant to the Modified Protective Order (ECF No. 203). In addition, I provided deposition testimony in this matter on behalf of Index in response to deposition subpoenas that the Parties issued to Index ("Casale Testimony"). Index designated portions of the Casale Testimony as confidential or highly confidential pursuant to the Modified Protective Order.

4. I understand that the Parties filed deposition testimony designations for the trial of this action that include excerpts of the Casale Testimony, and that those excerpts include portions of the Casale Testimony that Index previously designated as highly confidential pursuant to the Modified Protective Order. Further, I understand that the Parties filed trial exhibit lists that include exhibits referencing and/or containing information that Index produced and designated as confidential or highly confidential pursuant to the Modified Protective Order. Two of the exhibits on Google's trial exhibit list are detailed spreadsheets that Index produced and designated as highly confidential pursuant to the Modified Protective Order. With respect to the remainder of the trial exhibits, I understand that counsel for the Parties went through a process of identifying each exhibit that contained a reference to Index's confidential or highly confidential information, prepared summaries of those exhibits, and provided the summaries to Index's counsel. Counsel for Google also provided a set of heavily redacted trial exhibits, which they represented refer to information produced by Index and designated as confidential or highly confidential. Plaintiffs' counsel did not provide Plaintiffs' trial exhibits to Index.

5. I have carefully reviewed the deposition designations, exhibit lists, exhibit summaries, and heavily redacted exhibits provided by the Parties to determine whether public disclosure of Index's confidential information contained in the documents would cause Index

competitive harm. Based on the foregoing materials, I have concluded that some of the references to Index contained in the Parties' deposition designations and trial exhibits reflect Index's confidential, highly sensitive proprietary information, including confidential financial information, and that the disclosure of this information would damage Index's competitive standing. These references include confidential, highly sensitive strategic and proprietary information about Index's customer pricing, financial results, transactional data, and technical capabilities. Index is not seeking to maintain under seal the vast majority of the Parties' references to Index's confidential documents, data, and deposition testimony. Index does not believe that the balance of the references need to remain sealed and consents to disclosure of information that is not confidential or proprietary. Instead, Index is only seeking to maintain under seal a limited set of specific, highly sensitive proprietary data points described herein.

6.      Index is a privately held company and does not publicly release proprietary financial and business information concerning its customer pricing, financial results, transactional data, or technical capabilities. Index takes great care to maintain the confidentiality of this highly sensitive proprietary information, including through the use of confidentiality agreements. Disclosure of this highly sensitive information would cause significant injury to Index and put it at a disadvantage against competitors, who would be armed with non-public knowledge of Index's business and financial status.

7.      In particular, according to the deposition designations and exhibit summaries that I have reviewed, the references to Index contained in the proposed deposition designations and exhibits include highly sensitive proprietary information regarding: (1) Index's "take rates" (the fees that Index has negotiated with its publisher customers); (2) the number of integrations Index has achieved with demand-side platforms; (3) breakdowns of Index's transactional data,

including the number or percentage of transactions within certain categories; (4) Index's revenues, including gross revenues, net revenues, and revenue share; (5) Index's shares of ad exchange fees, spending, and impressions among ad exchanges; and (6) Index's spending per impression.  The disclosure of these highly sensitive detailed, specific, proprietary data points about Index's business – none of which are public – would cause significant harm to Index's competitive standing, including reducing Index's ability to succeed against its competitors and making Index vulnerable to acquisition.

8. As a non-party to this action, Index has cooperated with extensive requests for its documents and data.  Disclosing Index's proprietary non-public information as a consequence of that cooperation would profoundly adversely impact Index.  Indeed, the disclosure of this information, including Index's non-public take rates and the volume of its transactions in certain markets, could cause more harm to Index than the alleged anti-competitive behavior that is the focus of this lawsuit.  If the purpose of this lawsuit is to preserve (or even increase) competition in the advertising technology market, disclosing Index's proprietary information, equipping competitors to either undercut or acquire Index, would have the opposite effect.

9. Further, the public disclosure of Index's take rates would also injure Index's critical and long-fostered relationships with publishers.  If Index's take rates became public as a result of this lawsuit, every publisher with a negotiated take rate higher than Index's disclosed average take rate would ask to renegotiate its current take rate with Index, essentially seeking a discount.  This result would directly harm Index's business and competitive standing.

10. I understand that Defendant Google LLC's Deposition Testimony Designations, ECF No. 893, Plaintiffs' Notice of Intent to Present Deposition Testimony, ECF No. 895, and Plaintiffs' Identification of Counter Designated Deposition Testimony, ECF No. 917-2, contain

the following designations from the Casale Testimony that include references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing: page 32, lines 16-24; page 33, lines 6-25; page 34, lines 2-16; page 36, lines 2-17; page 81, lines 10-18; page 121, lines 15-25; page 122, lines 2-7; page 136, lines 11-21; page 189, lines 7-15 and 18-25; page 250, line 9-25; page 251, lines 3-17 and 18-25; and page 252, lines 2-10 and 11-18.

11. Based on the summaries prepared by Google's counsel and the heavily redacted exhibits that I have reviewed, I understand that Google's Trial Exhibit List, ECF No. 894, includes the following exhibits that contain references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a. DTX 1551 (IX_00000001, Index Exchange - Data Requests);

    b. DTX 1651 (Israel Report Snippet of Figure 75 [DTX #1892]);

    c. DTX 1892 (Figure 75, Israel Expert Report, Ad Exchange Average Fees, 2020-2022);

    d. DTX 1893 (Figure 76, Israel Expert Report, Combined Advertiser Buying Tool and Exchange Fees, 2020-2022);

    e. DTX 1949 (Figure 136, Israel Expert Report, Shares Among Ad Exchanges for All U.S. Display Advertising, 2022);

    f. DTX 1956 (Figure 143, Israel Expert Report, Selected Non-Google Ad Exchanges U.S. Indirect Open Web Display (Non-Video) Spending, 2019-2022);

    g. DTX 1989 (Table 22, Israel Expert Report, U.S. Indirect Open Web Display (Non-Video) Exchange Spending Shares, 2019-2022);

h.      DTX 1991 (Table 24, Israel Expert Report, Shares Among Advertiser Buying Tools, Ad Exchanges, and Publisher Ad Servers for All U.S. Display Advertising, 2022);

i.      DTX 2220 (IX-INV-00000002, REG_US DOJ_CID_Index Exchange Inc._Additional Response_FINAL_01Jun2021);

j.      DTX 2043 (Exhibit 3, Chevalier Expert Report Appendix, Monthly Gross Revenue by AdX and Competing Exchanges Based on the Simcoe Report | U.S. Transactions October 2018 - September 2021);

k.      DTX 2044 (Exhibit 4, Chevalier Expert Report Appendix, Monthly Net Revenue By AdX And Competing Exchanges Based On The Simcoe Report I U.S. Transactions October 2018 - September 2021);

l.      DTX 2047 (Exhibit 7, Chevalier Expert Report Appendix, Summary Statistics Of Average Monthly Impressions, Gross Revenue, And Net Revenue By AdX And Competing Exchanges (Excluding Openx) Based On The Simcoe Report | Worldwide & U.S. Transactions);

m.      DTX 2049 (Exhibit 9, Chevalier Expert Report Appendix, Ad Buying Toolexchange Combinations Average Full-Stack Revenue Share AdX Sell-Side, Xbridge Buy-Side & Third-Party Data |Worldwide Transactions January 2019 - March 2023);

n.      DTX 2051 (Exhibit 3, Chevalier Expert Report, Illustrative Adjustment To Simcoe Figure 8 Average Revenue Share And Cpm | U.S. Transactions January 2019 - March 2023);

o.      DTX 2053 (Exhibit 10, Chevalier Expert Report, AdX And Competing

        Exchanges Annual Average Revenue Share Compared To All Competing Exchanges Weighted Average Revenue Share Based On The Simcoe Report | AdX Data & Third-Party Data | Worldwide Transactions);

p.     DTX 2054 (Exhibit 13, Chevalier Expert Report, AdX And Competing Exchanges Annual Average Revenue Share Compared To All Competing Exchanges Weighted Average Revenue Share Based On The Simcoe Report | AdX Data & Third-Party Data | U.S. Transactions);

q.     DTX 2056 (Exhibit 20, Chevalier Expert Report, Upr Event Study Regressions Dependent Variables: Log(Gross Revenue) And Log(Net Revenue) Based On The Simcoe Report | Worldwide Transactions October 2018 – September 2021);

r.     DTX 2057 (Exhibit 21, Chevalier Expert Report, Summary Statistics Of Average Monthly Impressions, Gross Revenue, And Net Revenue By AdX And Competing Exchanges Based On The Simcoe Report | Worldwide & U. S. Transactions);

s.     DTX 2058 (Exhibit 22, Chevalier Expert Report, Regression Analysis Of Post-Upr Changes AdX Vs Aggregate Competing Exchanges Based On The Simcoe Report | Worldwide Transactions October 2018 – September 2021);

t.     DTX 2064 (Figure 8, Chevalier Expert Report, U.S. Average Full-Stack Revenue Share by Ad Buying Tool – Exchange Combinations (Jan. 2019 – Mar. 2023));

u.     DTX 2065 (Figure 9, Chevalier Expert Report, U.S. Average Revenue

Share and CPM by Exchange (Jan. 2019 – Mar. 2023));

v. DTX 2066 (Figure 10, Chevalier Expert Report, Worldwide Average Revenue Shares of Competing Exchanges Considered by Prof. Simcoe (Jan. 2019 – Mar. 2023));

w. DTX 2067 (Figure 11, Chevalier Expert Report, Worldwide Monthly Average Revenue Shares by Exchange (Jan. 2016 – Mar. 2023));

x. DTX 2068 (Figure 12, Chevalier Expert Report, Worldwide Comparison of AdX Revenue Share to Competing Exchanges Weighted Average Revenue Share (Jan. 2016 – Mar. 2023));

y. DTX 2069 (Figure 13, Chevalier Expert Report, U.S. Monthly Average Revenue Shares by Exchange (Jan. 2016 – Mar. 2023));

z. DTX 2070 (Figure 14, Chevalier Expert Report, U.S. Comparison of AdX Revenue Share to Competing Exchanges Weighted Average Revenue Share (Jan. 2016 – Mar. 2023));

aa. DTX 2071 (Figure 15, Chevalier Expert Report, U.S. Comparison of Google Full-Stack Revenue Shares to Competitors Full-Stack Revenue Shares (Jan. 2019 – Mar. 2023));

bb. DTX 2072 (Figure 17, Chevalier Expert Report, Worldwide AdX and Competing Exchanges Gross Revenue (Oct. 2018 – Sep. 2021));

cc. DTX 2073 (Figure 18, Chevalier Expert Report, Worldwide AdX and Competing Exchanges Net Revenue (Oct. 2018 – Sep. 2021)); and

dd. DTX 2076 (Figure 21, Chevalier Expert Report, Worldwide Change in AdX and Competing Exchanges Impressions Post-UPR (Oct. 2018 – Sep.

2021)).

12. Based on the summaries prepared by Plaintiffs' counsel that I have reviewed, I understand that Plaintiffs' Trial Exhibit List, ECF No. 892, includes the following exhibits that contain references to Index's highly sensitive proprietary information, the public disclosure of which would harm Index's competitive standing:

    a. PTX 1199 (Figure 4, Initial Expert Report of Timothy Simcoe, Effective Take Rate for Worldwide Open Web Display + Video Outstream Impressions);

    b. PTX 1200 (Figure 5, Initial Expert Report of Timothy Simcoe, Worldwide Open Web Display Impressions);

    c. PTX 1203 (Figure 8, Initial Expert Report of Timothy Simcoe, Average CPM Versus Average Take Rate, By Exchange);

    d. PTX 1205 (Figure 15, Initial Expert Report of Timothy Simcoe, But-for Comparable Take Rates, Worldwide Impressions);

    e. PTX 1213 (Figure 25, Initial Expert Report of Timothy Simcoe, But-for Comparable Take Rates, US Impressions);

    f. PTX 1233 (Figure 51, Initial Expert Report of Robin S. Lee, AdX and third-party ad exchanges' shares of ad exchange fees from worldwide indirect open-web display transactions (2022));

    g. PTX 1238 (Figure 48, Initial Expert Report of Robin S. Lee, AdX and third-party ad exchanges' shares of worldwide indirect open-web display impressions among ad exchange (2022));

    h. PTX 1241 (Figure 54, Initial Expert Report of Robin S. Lee, Worldwide

    open-web indirect display take rates for ad exchanges, and AdX's worldwide indirect open-web display market share (2018–2022));

i.  PTX 1254 (Figure 84, Initial Expert Report of Robin S. Lee, Exchange impressions and spend by user and publisher location (2022));

j.  PTX 1256 (Figure 86, Initial Expert Report of Robin S. Lee, Relative shares of indirect open-web display impressions by user and publisher location);

k.  PTX 1257 (Figure 87, Initial Expert Report of Robin S. Lee, Relative shares of indirect open-web display fees by user and publisher location);

l.  PTX 1260 (Figure 90, Initial Expert Report of Robin S. Lee, AdX maintains a substantial share of US indirect open-web display impressions transacted through ad exchanges (2018–2022));

m.  PTX 1261 (Figure 91, Initial Expert Report of Robin S. Lee, AdX and third-party exchanges' shares of US indirect open-web display impressions among ad exchanges (2022));

n.  PTX 1262 (Figure 92, Initial Expert Report of Robin S. Lee, AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022));

o.  PTX 1263 (Figure 93, Initial Expert Report of Robin S. Lee, AdX maintains a substantial share of ad exchange fees from US indirect open-web display impressions (2018–2022));

p.  PTX 1264 (Figure 94, Initial Expert Report of Robin S. Lee, AdX and third-party exchanges' shares of ad exchange fees from US indirect open-

|     |     |
| --- | --- |
|     | web display transactions (2022)); |
| q.  | PTX 1265 (Figure 95, Initial Expert Report of Robin S. Lee, AdX maintains a substantial share of worldwide indirect open-web display spend transacted through ad exchanges (2018–2022)); |
| r.  | PTX 1266 (Figure 96, Initial Expert Report of Robin S. Lee, AdX maintains a significant share of US indirect open-web display spend); |
| s.  | PTX 1280 (Figure 110, Initial Expert Report of Robin S. Lee, Summary of worldwide open-web indirect display take rates among ad exchanges); |
| t.  | PTX 1292 (Figure 122, Initial Expert Report of Robin S. Lee, AdX maintains a substantial share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022)); |
| u.  | PTX 1293 (Figure 123, Initial Expert Report of Robin S. Lee, AdX maintains a significant share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022)); |
| v.  | PTX 1294 (Figure 124, Initial Expert Report of Robin S. Lee, AdX maintains a substantial share of US indirect open-web display impressions transacted through ad exchanges (2018–2022)); |
| w.  | PTX 1295 (Figure 125, Initial Expert Report of Robin S. Lee, AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022)); |
| x.  | PTX 1306 (Figure 137, Initial Expert Report of Robin S. Lee, Monthly coverage of exchanges that produced data (impressions)); |
| y.  | PTX 1307 (Figure 138, Initial Expert Report of Robin S. Lee, Monthly |

        coverage of exchanges that produced data (spend));

z.    PTX 1310 (Figure 30, Initial Expert Report of Rosa Abrantes-Metz, Ad Exchange Take Rates);

aa.    PTX 1311 (Figure 31, Initial Expert Report of Rosa Abrantes-Metz, Ad Exchange Take Rate Coeffcients of Variation);

bb.    PTX 1312 (Figure 4, Initial Expert Report of Gabriel Weintraub, Monthly Number of Publisher with at Least One Impression Transacted on AdX and Rival Exchanges);

cc.    PTX 1313 (Figure 5, Initial Expert Report of Gabriel Weintraub, Monthly Number of Demand Sources that Served at Least One Impression Through AdX and Rival Exchanges);

dd.    PTX 1314 (Figure 6, Initial Expert Report of Gabriel Weintraub, Monthly Volume of Impressions Won for AdX and Rival Exchanges);

ee.    PTX 1315 (Figure 7, Initial Expert Report of Gabriel Weintraub, Share of Impressions Won Among Bids Submitted (Win Rate) for AdX and Rival Exchanges);

ff.    PTX 1316 (Figure 8, Initial Expert Report of Gabriel Weintraub, Number of Queries Where the Exchange Submitted at Least One Bid);

gg.    PTX 1317 (Figure 9, Initial Expert Report of Gabriel Weintraub, Monthly Advertiser Spend for AdX and Rival Exchanges);

hh.    PTX 1318 (Figure 10, Initial Expert Report of Gabriel Weintraub, Monthly Net Revenue for AdX and Rival Exchanges);

ii.    PTX 1324 (Figure 16, Initial Expert Report of Gabriel Weintraub, Rival

|     | |
|-----|---|
|     | Exchanges Would Need to Dedicate a Substantial Share of their Queries to Experimentation in Order to Run as Many Web Display Experiments as Google in 2018); |
| jj. | PTX 1364 (Figure 3, Rebuttal Expert Report of Timothy Simcoe, Comparables But-For Take Rate Estimates Excluding One Third- Party Exchange, Worldwide Impressions); |
| kk. | PTX 1365 (Figure 4, Rebuttal Expert Report of Timothy Simcoe, Event Study But-For Take Rate Estimates Controlling For Adx And Third-Party Exchange Trends, Worldwide Impressions); |
| ll. | PTX 1366 (Figure 5, Rebuttal Expert Report of Timothy Simcoe, Event Study But-For Take Rate Estimates Controlling For Exchange-Specific Trends, Worldwide Impressions); |
| mm. | PTX 1367 (Figure 6, Rebuttal Expert Report of Timothy Simcoe, Event Study But-For Take Rate Estimates With Alternative Windows); |
| nn. | PTX 1368 (Figure 7, Rebuttal Expert Report of Timothy Simcoe, Event Study First Stage Results Using Alternative Ivs); |
| oo. | PTX 1369 (Figure 8, Rebuttal Expert Report of Timothy Simcoe, Histogram Of But-For Take Rate Estimates From 216 Combinations Of Event Study Specification Alterations); |
| pp. | PTX 1390 (Figure 22, Rebuttal Expert Report of Robin Lee, Ad exchanges with the highest DV360 spend, by user location (2022)); |
| qq. | PTX 1393 (Figure 26, Rebuttal Expert Report of Robin Lee, Number of worldwide auctions won by the top 10 exchanges in GAM, with and |

|     | without competition, June 28, 2023); |
| --- | --- |
| rr. | PTX 1394 (Figure 27, Rebuttal Expert Report of Robin Lee, Share of worldwide auctions won by the top 10 exchanges in GAM, with and without competition); |
| ss. | PTX 1395 (Figure 28, Rebuttal Expert Report of Robin Lee, Percent decrease in worldwide publisher payout if exchange was removed); |
| tt. | PTX 1396 (Figure 29, Rebuttal Expert Report of Robin Lee, Dr. Israel's estimate of US ad exchange fees for indirect web non-video advertising (2020–2022)); |
| uu. | PTX 1397 (Figure 30, Rebuttal Expert Report of Robin Lee, AdX and third-party exchange US indirect web non-video take rates relative to AdX take rate (2020–2022)); |
| vv. | PTX 1408 (Figure 42, Rebuttal Expert Report of Robin Lee, Scale of AdX in comparison to that of non-Google exchanges participating in open bidding, measured by spending on GAM (2022), extension of Israel Report, Table 16, right panel); |
| ww. | PTX 1409 (Figure 43, Rebuttal Expert Report of Robin Lee, Scale of AdX in comparison to that of non-Google exchanges participating in open bidding, measured by impressions purchased on GAM (2022), extension of Israel Report, Table 16, right panel); |
| xx. | PTX 1417 (Figure 53, Rebuttal Expert Report of Robin Lee, Average US publisher RPM on AdX as compared to rival exchanges (2017–2022)); |
| yy. | PTX 1436 (Figure 73, Rebuttal Expert Report of Robin Lee, Number of |

|      |      |
|------|------|
|      | auctions won by the top 10 exchanges in GAM, with and without competition, after attributing Reservation bids to exchanges using targeted_custom_criteria1384); |
| zz.  | PTX 1437 (Figure 74, Rebuttal Expert Report of Robin Lee, Share of auctions won with and without competition by the top 10 exchanges in GAM, after attributing Reservation bids to exchanges using targeted_custom_criteria); |
| aaa. | PTX 1438 (Figure 75, Rebuttal Expert Report of Robin Lee, Percent decrease in publisher payout if exchange was removed, after attributing Reservation bids to exchanges using targeted_custom_criteria); |
| bbb. | PTX 1440 (Figure 77, Rebuttal Expert Report of Robin Lee, Percent decrease in publisher payout if exchange was removed, US users (June 28, 2023)); |
| ccc. | PTX 1444 (Figure 82, Rebuttal Expert Report of Robin Lee, Percent drop in publisher payout from removing bidding tool, worldwide (June 28, 2023)); |
| ddd. | PTX 1445 (Figure 83, Rebuttal Expert Report of Robin Lee, Percent drop in publisher payout from removing bidding tool, US users (June 28, 2023)); |
| eee. | PTX 1448 (Figure 86, Rebuttal Expert Report of Robin Lee, Extension of Israel Report, Table 16, for AdX and exchanges participating in open bidding on GAM, US (2022)); |
| fff. | PTX 1450 (Figure 88, Rebuttal Expert Report of Robin Lee, Extension of |

        Israel Report, Table 16, for AdX and exchanges participating in open bidding on GAM, worldwide (2022));

ggg.   PTX 1453 (Figure 91, Rebuttal Expert Report of Robin Lee, Scale of AdX in comparison to that of non-Google exchanges participating in open bidding, measured by spending on GAM, worldwide (2022), extension of Israel Report, Table 16, right panel);

hhh.   PTX 1454 (Figure 92, Rebuttal Expert Report of Robin Lee, Scale of AdX in comparison to that of non-Google exchanges participating in open bidding, measured by impressions purchased on GAM, worldwide (2022), extension of Israel Report, Table 16, right panel);

iii.   PTX 1455 (Figure 93, Rebuttal Expert Report of Robin Lee, Average worldwide publisher RPM on AdX as compared to rival exchanges (2017–2022));

jjj.   PTX 1464 (Figure 1, Rebuttal Expert Report of Gabriel Weintraub, Google Ads And DV360 Win More Impressions Than Non-Google Bidders In GAM (June 2023 Bid- Level Data));

kkk.   PTX 1468 (Table 1, Rebuttal Expert Report of Gabriel Weintraub, DR. Israel's Table 16 Omits That Google's Products Are Multiples Larger Than "Small" And "Large" Firms That "Successfully Compete");

lll.   PTX 1470 (Table 3, Rebuttal Expert Report of Gabriel Weintraub, The Percent Change Across Exchanges Decreases From 12.5 Percent To 2.4 Percent After Separating Out Google From Non- Google Exchanges In Dr. Israel's Table 18); and

    mmm. PTX 1471 (Table 4, Rebuttal Expert Report of Gabriel Weintraub, Non-Google Exchanges Saw A Decrease In Ad Spend On DV360 By 20 Percent Following The Implementation Of Poirot V2 In September 2018.

  13. Plaintiffs have not provided the underlying exhibits containing these references to Index, and the set of exhibits provided by Google was heavily redacted.  As a result, Index has not had the opportunity to review the unredacted exhibits itself and locate every reference to Index's highly sensitive proprietary information.  As stated above, I have relied on the Parties' summaries to identify references to Index's highly sensitive proprietary information.  Accordingly, the lists of exhibits contained herein may not be an exhaustive list of all instances of references to Index's highly sensitive proprietary information contained within the Parties' lists of trial exhibits.

  14. Index requests that any references to its highly sensitive proprietary information (specifically, Index's take rates, breakdowns of Index's transaction data, Index's revenues, shares of ad exchange fees, shares of impressions, Index's spending per impression, and the number of integrations Index has achieved) contained within the Parties' exhibits be redacted in any version of the exhibits displayed publicly at trial.  The public disclosure of any of this highly sensitive proprietary information would cause significant harm to Index's competitive standing.

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

  Executed on  7/25/2024

          By: _____
            Andrew Casale
            President and Chief Executive Officer
            Index Exchange Inc.