Message

| | |
|---|---|
| **From:** | Russ Freyman [rfreyman@google.com] |
| **Sent:** | 8/3/2021 5:03:51 PM |
| **To:** | Sean Harrison [seanharrison@google.com] |
| **Subject:** | Fwd: Weber contract |
| **Attachments:** | PEG_IPG_GMP2021_Signed_-2272021 (1).pdf; FESA_IPG_DoubleClick_AAA_February2015 12.01.24 PM.pdf |

---------- Forwarded message ---------
From: **Jeff Cezo** <jcezo@google.com>
Date: Tue, Aug 3, 2021 at 12:35 PM
Subject: Weber contract
To: Russ Freyman <rfreyman@google.com>

Hi Russ,

Here are PDF versions of the 2021 contract. I've also attached the AAA which lists Weber as an affiliate of IPG.

Thanks,
Jeff

--

Jeff Cezo
Account Executive, Platforms
jcezo@google.com
212-565-7493

--
Russ Freyman
Head of Industry, GMP
Google
M:
rfreyman@google.com

'This email may be confidential or privileged. If you received this communication by mistake, please don't forward it to anyone else, please erase all copies and attachments, and please let me know that it went to the wrong person. Thanks.'

'The above terms reflect a potential business arrangement, are provided solely as a basis for further discussion, and are not intended to be and do not constitute a legally binding obligation. No legally binding obligations will be created, implied, or inferred until an agreement in final form is executed in writing by all parties involved.'

GOOG-AT-MDL-008734667

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

This Agreement consists of:
Part 1: Cover Sheet
Part 2: Signature Page
Part 3: General Terms and Conditions
Exhibit I: Platform Services Terms and Conditions
Exhibit II: Service Specific Terms

## Part 1: Cover Sheet

| Company Information | |
|---|---|
| Company Full Legal Name ("**Company**" or "**Parent**") | Kinesso, LLC |
| Principal Place of Business/Registered Office Address | 100 W 33rd St.<br>New York, NY 10001<br>United States |
| **Deal Information** | |
| Effective Date | March 1, 2021 |
| Initial Term | 12 MONTHS |
| GMP Advertising Services | Display & Video 360<br>Search Ads 360<br>Campaign Manager<br>- RFP Module<br>- Remarketing Service |
| Auto-Renewal | No |
| **Pricing Information** | |
| Default Billing Currency ("**Default Billing Currency**") | USD |
| Display & Video 360 Service | |
| Exchange Rate | ███ |
| Non-Exchange Rate | ███ |
| Search Ads 360 Service | |
| SA360 Monthly Service Fee Percentage | ███ |
| SA360 Minimum Service Fee Start Date | NA |
| SA360 Minimum Service Fee Amount & Currency | NA |
| SA360 Minimum Service Fee Period | NA |
| Campaign Manager | Please see separate Pricing Sheet for these services. |



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

## Campaign Manager Pricing Sheet

| Campaign Manager Minimum Service Fee Start Date | March  1, 2021 |
|---|---|
| Campaign Manager Minimum Service Fee Amount & Currency | |
| Campaign Manager Minimum Service Fee Period | Yearly |

**Campaign Manager Rates:**

| For Parent and AAA Affiliates incorporated in: | United States |
|---|---|
| **Currency:** | USD |
| <u>Campaign Manager Service</u> | |
| Display CPM | |
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

| For AAA Affiliates incorporated in: | Any country not expressly set out below. |
|---|---|
| **Currency:** | USD |
| <u>Campaign Manager Service</u> | |
| Display CPM | |
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

| For AAA Affiliates incorporated in: | Argentina |
|---|---|
| **Currency:** | ARS |
| <u>Campaign Manager Service</u> | |
| Display CPM | |
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

| For AAA Affiliates incorporated in: | Australia |
|---|---|
| **Currency:** | AUD |
| <u>Campaign Manager Service</u> | |
| Display CPM | |
| Video CPM | |



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Advanced Display Upcharge | ▮ |
|---|---|
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | Brazil |
|---|---|
| **Currency:** | BRL |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | Canada |
|---|---|
| **Currency:** | CAD |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | China |
|---|---|
| **Currency:** | CNY |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | Egypt |
|---|---|
| Currency: | EGP |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| **For AAA Affiliates incorporated in:** | Any countries in European economic zone |
|---|---|


CONFIDENTIAL

GOOG-AT-MDL-008734670

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Currency: | EUR |
|---|---|
| Campaign Manager Service | |
| Display CPM | ▉ |
| Video CPM | ▉ |
| Advanced Display Upcharge | ▉ |
| Display CPC | ▉ |

| For AAA Affiliates incorporated in: | Hong Kong |
|---|---|
| Currency: | HKD |
| Campaign Manager Service | |
| Display CPM | ▉ |
| Video CPM | ▉ |
| Advanced Display Upcharge | ▉ |
| Display CPC | ▉ |

| For AAA Affiliates incorporated in: | Indonesia |
|---|---|
| Currency: | IDR |
| Campaign Manager Service | |
| Display CPM | ▉ |
| Video CPM | ▉ |
| Advanced Display Upcharge | ▉ |
| Display CPC | ▉ |

| For AAA Affiliates incorporated in: | India |
|---|---|
| Currency: | INR |
| Campaign Manager Service | |
| Display CPM | ▉ |
| Video CPM | ▉ |
| Advanced Display Upcharge | ▉ |
| Display CPC | ▉ |

| For AAA Affiliates incorporated in: | Israel |
|---|---|
| Currency: | ILS |
| Campaign Manager Service | |
| Display CPM | ▉ |
| Video CPM | ▉ |
| Advanced Display Upcharge | ▉ |

 CONFIDENTIAL

GOOG-AT-MDL-008734671

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Display CPC | ███████ |
|---|---|

| For AAA Affiliates incorporated in: | Japan |
|---|---|
| **Currency:** | JPY |
| Campaign Manager Service | |
| Display CPM | ████ |
| Video CPM | █████ |
| Advanced Display Upcharge | █████ |
| Display CPC | ████ |

| For AAA Affiliates incorporated in: | South Korea |
|---|---|
| **Currency:** | KRW |
| Campaign Manager Service | |
| Display CPM | ████ |
| Video CPM | █████ |
| Advanced Display Upcharge | █████ |
| Display CPC | ████ |

| For AAA Affiliates incorporated in: | Malaysia |
|---|---|
| **Currency:** | MYR |
| Campaign Manager Service | |
| Display CPM | ███ |
| Video CPM | ███ |
| Advanced Display Upcharge | ███ |
| Display CPC | ███ |

| For AAA Affiliates incorporated in: | Mexico |
|---|---|
| **Currency:** | MXN |
| Campaign Manager Service | |
| Display CPM | ████ |
| Video CPM | ████ |
| Advanced Display Upcharge | █████ |
| Display CPC | ███ |

| For AAA Affiliates incorporated in: | New Zealand |
|---|---|
| **Currency:** | NZD |
| Campaign Manager Service | |



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Display CPM | |
|---|---|
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

| For AAA Affiliates incorporated in: | Nigeria |
|---|---|
| **Currency:** | NGN |
| Campaign Manager Service | |
| Display CPM | |
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

| For AAA Affiliates incorporated in: | Poland |
|---|---|
| **Currency:** | PLN |
| Campaign Manager Service | |
| Display CPM | |
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

| For AAA Affiliates incorporated in: | Russian |
|---|---|
| **Currency:** | RUB |
| Campaign Manager Service | |
| Display CPM | |
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

| For AAA Affiliates incorporated in: | Singapore |
|---|---|
| **Currency:** | SGD |
| Campaign Manager Service | |
| Display CPM | |
| Video CPM | |
| Advanced Display Upcharge | |
| Display CPC | |

 CONFIDENTIAL

GOOG-AT-MDL-008734673

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| For AAA Affiliates incorporated in: | South Africa |
|---|---|
| **Currency:** | ZAR |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | Switzerland |
|---|---|
| **Currency:** | CHF |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | Taiwan |
|---|---|
| **Currency:** | TWD |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | Thailand |
|---|---|
| **Currency:** | THB |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |
| Advanced Display Upcharge | ▮ |
| Display CPC | ▮ |

| For AAA Affiliates incorporated in: | Turkey |
|---|---|
| **Currency:** | TRY |
| Campaign Manager Service | |
| Display CPM | ▮ |
| Video CPM | ▮ |



CONFIDENTIAL

GOOG-AT-MDL-008734674

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Advanced Display Upcharge | ■ |
|---|---|
| Display CPC | ■ |

| For AAA Affiliates incorporated in: | United Kingdom |
|---|---|
| **Currency:** | GBP |
| Campaign Manager Service | |
| Display CPM | ■ |
| Video CPM | ■ |
| Advanced Display Upcharge | ■ |
| Display CPC | ■ |

| For AAA Affiliates incorporated in: | Philippines or Vietnam |
|---|---|
| **Currency:** | USD |
| Campaign Manager Service | |
| Display CPM | ■ |
| Video CPM | ■ |
| Advanced Display Upcharge | ■ |
| Display CPC | ■ |



CONFIDENTIAL

GOOG-AT-MDL-008734675

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

**Part 2: Signature Page**

AGREED AND ACCEPTED BY:

| Kinesso, LLC | | GOOGLE LLC | |
|---|---|---|---|
| By: _DocuSigned by:_ *Tom Dawson* 82A0E9099F484C5... | | By: _Philipp Schindler_ Philipp Schindler Authorized Signatory | 2021.02.28 21:28:34 -08'00' |
| Name: Tom Dawson | | Name: | |
| Title: CCO | | Title: | |
| Date: 27-Feb-2021 | | Date: | |

**GOOGLE ASIA PACIFIC PTE. LTD.:**

| By: _S. Lavanya_ | 2021.02.28 21:12:52 +08'00' |
|---|---|
| Print Nar Lavanya Swetharanyan Director Google Asia Pacific Pte. Ltd | |
| Title: | |
| Date: | |

CONFIDENTIAL

GOOG-AT-MDL-008734676

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

**GOOGLE IRELAND LTD.:**

| By: |
| :--- |
| Print Name: |
| Title:   *Iia Ribakova*   2021.02.28 21:22:55 Z   For, Nick Leeder (Director) |
| Date: |

**GOOGLE JAPAN G.K.:**

| By: |
| :--- |
| Print Name: |
| Title: |
| Date: |

**GOOGLE AUSTRALIA PTY. LTD.:**

| By: |
| :--- |

CONFIDENTIAL

HIGHLY CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

Print Name:

_____

2021.02.28
21:13:27
+08'00'

Authorized Signatory

Google Australia Pty Ltd

Title:

Date:

**GOOGLE NEW ZEALAND LIMITED:**

By:

_____

2021.02.28
21:13:46
+08'00'

Print Name:

Caroline Rainsford, Authorized Signatory
Google New Zealand Limited

Title:

Date:


CONFIDENTIAL

DocuSign Envelope ID: 87930QA6-A2E1-4508-ABD7-A9AE41818F02

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

### Part 3: General Terms and Conditions

1. **Services**. This Google Marketing Platform Order Form – Advertising Services (this "**Order Form**"), is by and between Company and Google (as defined below), and is effective as of the Effective Date. This Order Form governs Company's access to the services available under the Google Marketing Platform (as rebranded by Google from time to time) selected on the Cover Sheet (collectively, the services subject to this Order Form are the "**Google Marketing Platform Advertising Services**" or "**Services**"), and supersedes any prior Order Form or agreement between the parties for, and solely as it relates to, the relevant Google Marketing Platform Advertising Services.

2. **Definitions**. The following terms are defined as:

    a.    "**AAA Affiliate**" means an Affiliate of Company party to an Affiliate Adopting Agreement.

    b.    "**CPM**" means cost per 1,000 impressions.

    c.    "**Google**" means Google LLC.

    d.    Company's "**Monthly Service Fees**" for a Service are the Service Fees payable with respect to that Service in a certain month.

    e.    "**Quarter**" means the three month period following a Minimum Service Fee Start Date, and each three month period thereafter.

    f.    "**Year**" means the twelve month period following a Minimum Service Fee Start Date, and each twelve month period thereafter.

3. **Applicable Terms**. This Order Form incorporates by reference and is subject to the general Google Platform Services Terms and Conditions attached hereto as <u>Exhibit I</u> and the Google Marketing Platform Advertising Service Specific Terms attached hereto as <u>Exhibit II</u> (collectively, the "**Terms**"). This Order Form together with the Terms are referred to as the "**Agreement**." Company should read the Terms carefully before entering into this Order Form.  Google may amend the Terms from time to time and Company will check the Terms regularly for updates.  Unless otherwise noted, all terms defined in the Terms and used in this Order Form will have the meanings given to them in the Terms. This Order Form may be amended in writing or by Company's acceptance of additional terms in the user interface of the applicable Google Marketing Platform Advertising Service.

4. **Term and Termination**. The "**Initial Term**" of the Order Form is the period beginning on the Effective Date and continuing for the Initial Term as set out on the Cover Sheet. If the field for "Auto-Renewal" is marked "Yes" on the Cover Sheet, this Order Form will automatically renew for additional 12 month periods following the end of the Initial Term (each, a "**Renewal Term**") unless either party notifies the other of its intent not to renew this Agreement at least 60 days prior to the end of the Initial Term or then-current Renewal Term (the Initial Term and all Renewal Terms are, collectively, the "**Term**").

5. **Minimum Service Fees**. The conversion rate used to determine if any applicable Minimum Service Fee is met will be the most recent spot rate resident in Google's financial systems at the time of the transactions, unless otherwise agreed by the parties in writing. Following the applicable Minimum Service Fee Start Date:

    a.    <u>For Yearly or Quarterly Minimum Service Fees (any product)</u>: If, in a particular Year or Quarter (as applicable), the sum of the Monthly Service Fees paid with respect to a particular Service for Company (including Affiliate Customers) and all AAA Affiliates is less than the Minimum Service Fee for such Service, Company will pay Google the difference between the Minimum Service Fee for such Service and that sum (in addition to any Monthly Service Fees then payable for such Service).

    b.    <u>For Campaign Manager Minimum Service Fees</u>: For purposes of clarification, in addition to Company's Monthly Service Fee as described herein, impressions served on behalf of Company by a publisher using Google's proprietary Publisher-Paid service constitute "Ad impressions served hereunder by Standard Ad Serving" for purposes of determining whether the Campaign Manager Minimum Service Fee, if any, has been met.

6. **Billing Currencies**. The following terms and conditions and Service Fees will apply based on Company's usage of the Services.  Company will be billed in the Default Billing Currency unless



CONFIDENTIAL

GOOG-AT-MDL-008734679

DocuSign Envelope ID: 97930QA6-A3E1-4508-ABD7-A8AE14818F02

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

another currency is specified herein or otherwise approved by Google.

    a.    <u>Display & Video 360 and Search Ads 360</u>. All Monthly Service Fees and costs for Display & Video 360 and Search Ads 360 will be invoiced to Company and AAA Affiliates in the currencies selected by Company (i) in the online interface of the Display & Video 360 Service; or (ii) through Company's Google Marketing Platform account team for Search Ads 360, as applicable. If required, currency conversion will be performed using the currency conversion rates utilised by the applicable Service from time to time (as determined by Google).

    b.    <u>Campaign Manager</u>. All Monthly Service Fees and costs for Campaign Manager will be invoiced to Company and AAA Affiliates in the currencies and applicable rates specified on the <u>Campaign Manager Pricing Sheet.</u>

7. **Display & Video 360 Service Fees**. Company's Monthly Service Fee for the Display & Video 360 Service is the sum of:



8. **Search Ads 360 Service Fees**. Company's Monthly Service Fee for the Search Ads 360 Service is equal

9. **Campaign Manager Service Fees**. Company's Monthly Service Fee for the Campaign Manager Service is the sum of:





CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES





CONFIDENTIAL

GOOG-AT-MDL-008734681

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

## EXHIBIT I

### GOOGLE PLATFORM SERVICES TERMS AND CONDITIONS

These GOOGLE PLATFORM SERVICES TERMS AND CONDITIONS and any Service Specific Terms (the "**Terms**") govern, in conjunction with the terms and conditions of the applicable Order Form(s) and, if applicable, addendums (collectively with the Terms, the "**Agreement**") Company's use of the platform services ("**Services**") provided by Google LLC or the Google Affiliate stated in the applicable Order Form(s) and, if applicable, addendums ("**Google**"). Each Order Form that incorporates these Terms will be a separate Agreement. Any use of the term "including" in the Agreement will mean "including, but not limited to."

1.    **Definitions.** The following capitalized terms will have the associated meanings for purposes of the Agreement. Any definitions included in these Terms or any related Order Form(s) will have the same meaning throughout the Agreement.

**1.1**    "**Ad(s)**" means advertising content.

**1.2**    "**Affiliate**" means, with respect to a party, an entity that directly or indirectly controls, is controlled by or is under common control with such party or which is licensed by one party in writing to use the brand(s) of that party for specific services and a specific period.

**1.3**    "**Beta Feature**" means any Service feature that is identified by Google, including via the applicable Service user interface or via other communications to Company, as "Beta", "Alpha", "Experimental", "Limited Release" or "Pre-Release" or that is otherwise identified by Google as unsupported. For purposes of clarification, to the extent a Beta Feature replaces a production (i.e., non-Beta) version of a feature, the Beta Feature will thereafter be treated as the production version of the feature and not as a Beta Feature.

**1.4**    "**Brand Features**" means each party's trade names, trademarks, logos and other distinctive brand features.

**1.5**    "**Client**" means an advertiser, network publisher or other third party, if any, on whose behalf Company utilizes a Service.

**1.6**    "**Company Content**" means any content served to End Users through the Target Properties that is not provided by Google (including the content of all Ads served via the Services).

**1.7**    "**Company Partner**" means, for Target Properties, the owner (if not Company) of those Target Properties.

**1.8**    "**Confidential Information**" means information that one party (or an Affiliate) discloses to the other party under the Agreement, and that is marked as confidential or would normally be considered confidential information under the circumstances. It does not include information that is independently developed by the recipient without reference to the discloser's confidential information, is lawfully given to the recipient by a third party without confidentiality obligations, or becomes public through no fault of the recipient.

**1.9**    "**Data**" means data derived from Company's use of the Services.

**1.10**    "**Effective Date**" has the meaning set forth in the Order Form.

**1.11**    "**End Users**" means individual human end users of a Target Property.

**1.12**    "**Intellectual Property Rights**" means all copyrights, moral rights, patent rights, trademarks, rights in or relating to Confidential Information and any other intellectual property or similar rights (registered or unregistered) throughout the world.

**1.13**    "**Order Form**" means an order form, schedule or other agreement that is subject to these Terms and sets forth pricing and other terms with respect to a particular Service. All Order Forms incorporate and are governed by the terms and conditions contained herein.



CONFIDENTIAL

GOOG-AT-MDL-008734682

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

**1.14** "**Policies**" means the (i) Google Platforms Program Policies available at https://support.google.com/platformspolicy?hl=en; (ii) the Google Ad Manager Partner Guidelines available at https://support.google.com/admanager/answer/9059370 (if applicable); (iii) the EU user consent policy available at https://www.google.com/about/company/user-consent-policy.html; and (iv) any other policy and implementation guidelines identified in an applicable Order Form or provided by Google to Company (in each case, as modified from time to time).

**1.15** "**Service Fees**" mean the service, transaction, product and other fees set forth in the Order Form(s) or in an applicable user interface for a Service.

**1.16** "**Service Specific Terms**" means, for each Service, the additional terms and conditions that apply to such Service that are available at the link provided in the applicable Order Form for the Service.

**1.17** "**Subcontractor**" means a subcontractor, consultant, third-party service provider or agent engaged by either party (or a Client of such party) in connection with its use or provision of Services.

**1.18** "**Tag**" means code (e.g., HTML) or a web beacon (e.g., pixel tag, clear GIF) that requests the delivery of an Ad or tracks an Ad impression or click.

**1.19** "**Target Properties**" means properties on which an Ad is served via the Services (i.e., web sites, consent-based e-mail publications, approved software applications or other properties as approved by Google, which may include Search Engine Sites).

**2.** **Changes to the Services or the Agreement.** Google may modify URLs referenced in these Terms and the content within such URLs from time to time. Google may also modify URLs referenced in an Order Form and the content within such URLs from time to time. Any modifications to the URLs referred to in this Agreement will be available at the relevant URL (or a different URL that Google may provide from time to time). Changes to the content within URLs will not apply retroactively and will become effective 30 days after they are posted, except that changes to URL references will be effective immediately, unless otherwise specified by Google for Policies where in Google's reasonable opinion more immediate application of a change to Policies ("**Policy Change**") is required to 1) meet legal, regulatory, or industry standards/requirements; 2) maintain the integrity of Services or 3) address matters of public interest. Google will use commercially reasonable efforts to inform Company of immediate Policy Changes by alerting Company via the user interface, posting changes to the applicable change log relating to the Services, or by other suitable means (e.g. via email) where in Google's reasonable opinion, Company is impacted by such Policy Change.

**3.** **The Parties' Obligations; Prohibited Acts.**

**3.1** **Google will:**

a. provide the applicable Services described in the Order Form(s) entered into by Company, and obtain all rights necessary to provide such Services under the Agreement;

b. deliver Ads according to the trafficking criteria selected by Company;

c. provide Company access to web-based training and support if and where available for any particular Service;

d. use current industry-standard security measures in connection with its provision of Services;

e. promptly notify Company of any breach of Google security resulting in unauthorized third party access to any Company account or the Data;

f. provide the Services in compliance with all applicable privacy and export laws, rules, regulations and sanctions programs, including applicable Internet advertising industry guidelines (e.g., the self-regulatory principles/code of conduct of the Network Advertising Initiative, the Interactive Advertising Bureau and the Digital Advertising Alliance); and



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

g.    upon Company's written request during the Term, for as long as Google elects to undergo an annual certification review for the applicable report, make available to Company a SOC 1 Type 2 report, ISO 27001 certification, or similar report with comparable data (each a "**Security Report**") from a reputable, independent certified public accounting firm covering the key controls and validation mechanisms in place to meet the revenue reporting obligations under this Agreement. Company may request each type of Security Report no more than once per calendar year during the Term.  Such Security Report will be considered Google's Confidential Information under this Agreement.

**3.2    Company will:**

a.    use the Services in compliance with all applicable Policies (as such Policies may be updated from time to time) and at all times the burden of proof in establishing such compliance remains with Company;

b.    be solely responsible for all use of Services (including trafficking Ads, implementing Tags, the acts and omissions of all Company Affiliates that have not entered into an Affiliate Adopting Agreement directly with Google, and Clients);

c.    use commercially reasonable efforts to obtain all rights necessary for the parties to use, and necessary to permit Company or Google, as the case may be, to use the Data under the terms of the Agreement, including (if applicable) from Company Partners, Target Property owners (if not Company), End Users and Clients;

d.    use the Services in compliance with all applicable privacy and export laws, rules, regulations and sanctions programs, including applicable Internet advertising industry guidelines (e.g., the self-regulatory principles/code of conduct of the Network Advertising Initiative, the Interactive Advertising Bureau and the Digital Advertising Alliance) and Company's applicable agreements with third parties; provided, however, that in the event of a conflict between the Policies and the terms of this Agreement, the terms of this Agreement will govern; and

e.    ensure that each of the Target Properties owned or controlled by Company contains a privacy policy that discloses (i) the usage of third-party technology and (ii) the data collection and usage resulting from the Services, provided that those privacy policies need not expressly identify Google or any Service, unless otherwise required by law, rule or regulation; and advise its Clients in writing that each of their web sites must comply with the foregoing.

**3.3    Company Prohibited Acts.** Company will not, and will not assist or knowingly permit any third party to:

a.    pass information to Google that Google could use or recognize as personally identifiable information;

b.    Misappropriate, misuse, or abuse any part of a Service or modify, disassemble, decompile, reverse engineer, copy, reproduce or create derivative works from or in respect to Services or any part of a Service;

c.    damage or tamper with any part of a Service;

d.    knowingly breach any Service security measure; or

e.    provide Google any Ad that (x) when viewed or clicked on by an End User's computer, causes such End User's computer to download any software application, or (y) is illegal.

**3.4    Google Prohibited Acts.** Google will not, and will not assist or permit any third party to, collect personally identifiable information through Company's use of the Services. Google will use commercially reasonable efforts to provide up to date information to Company to help Company understand the data collection and usage resulting from use of the Services, including via publicly



CONFIDENTIAL

GOOG-AT-MDL-008734684

posted materials, currently available at http://www.google.com/doubleclick/support.html and as modified from time to time.

**4. Payments.**

**4.1 Google Payments to Company.** [INTENTIONALLY OMITTED]

**4.2 Company Payments to Google.**

a. For each applicable Service, Google will invoice (or send a statement of financial activity to) Company for Service Fees, if applicable, in the month following the calendar month in which the Service Fees are incurred, unless there is an unforeseen circumstance where billing may be delayed. Company will pay Google the Service Fees (other than any Service Fees disputed in good faith) and other invoiced amounts (if any) within 45 days of the invoice date ("**Payment Due Date**"), in the currency and at the exchange rate (if any) specified in the applicable Order Form and by check or electronic transfer to the account notified to it by Google or such other means expressly agreed to in writing by the parties. Unless otherwise expressly agreed, Service Fees payable under an Order Form are additional to Service Fees payable under other Order Forms. For purposes of clarification, if a Company Affiliate is subject to a valid Affiliate Adopting Agreement, Google will (upon request) invoice such Company Affiliate and not Company, provided that any mislabeling or misaddressing of an invoice made in good faith will not affect Company or a Company Affiliate's responsibility to pay fees owed to Google.

b. Sequential Liability

i. Notwithstanding anything to the contrary that may be contained herein regarding payment terms, Google agrees to (1) hold Company liable for payments of each United States incorporated Client ("**US Client**") solely to the extent proceeds have been received by Company for payment of the applicable Service Fees ("**Sequential Liability**"); provided, however, in the event that Company makes voluntary payments of any Service Fees to Google before Company receives the corresponding payments from the applicable US Client(s), Company (A) will bear the sole risk of non-payment from the applicable US Client(s) with respect to such corresponding payments due from the applicable US Client(s); and (B) may retain such corresponding payment that it subsequently receives from such US Client(s); and (2) hold US Clients liable for US Clients' payments solely to the extent proceeds have not been received by Company for payment of the applicable Service Fees. Promptly at the request of Google from time to time, Company shall provide Google with (i) signed credit applications or equivalent information with respect to Company so as to enable Google to conduct a credit check on Company, (ii) signed credit applications or equivalent information in its possession from each US Client so as to enable Google to conduct a credit check on each US Client (and in the event Company does not possess such information, it will, at the request of Google, promptly seek such information), (iii) confirmation of whether a US Client has paid Company in advance funds sufficient to make payments pursuant to the Terms and (iv) for each US Client, confirmation that Company's payment terms with the US Client require payment of all charges incurred in connection with the Program within 45 days from the date of Google's invoice to Company (the "**US Client Due Date**").

ii. Any Client payment term information provided by Company to Google shall be deemed Confidential Information under this Agreement and such payment information shall be used by Google solely for internal credit analysis. If Company would like to extend a US Client's payment terms beyond the US Client Due Date ("**Non-Standard Payment Terms**"), Company must make such a request to Google with 30 days' prior written notice (which may be via e-mail) to a Google finance manager, someone more senior in finance at Google or such other person as Google may designate from time to time (the "**Google Finance Contact**"). Google will review the request and, in its sole discretion, may approve the Non-Standard Payment Terms for the US Client. Non-Standard Payment Terms will only apply to new orders and not existing orders.



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

     iii.    If Google in its sole discretion does not approve the Non-Standard Payment Terms, or determines, at any time, to not extend or to cease extending credit and/or Sequential Liability to a US Client (e.g., due to US Client's poor payment history, US Client having invoices that have not been paid within 30 days after the US Client Due Date or the occurrence of a material change in the financial condition of US Client) then (a) Google may, in its sole discretion, (x) immediately upon notice to Company revoke credit or Sequential Liability with respect to such US Client, if Google has determined that such US Client does not have a high quality of creditworthiness; (y) terminate the Terms with respect to such US Client; or (z) suspend any or all current orders for such US Client, in each case pending receipt by Google from Company or such US Client of funds sufficient to make payments under such orders for future Ads, (b) Company or US Client must pay Google, in advance of running new orders, funds sufficient to make payments under such new orders and (c) Company must promptly advise such US Client of Google's above decisions. Company agrees to make best efforts to collect and clear payment from each US Client to Google by the US Client Due Date. Where Company has not paid to Google charges incurred in connection with the Program within 45 days of Google's invoice to Company, Company will pay to Google proceeds that it thereafter receives for those charges within 10 days from receipt (if Google has not already been paid those charges). Company will use commercially reasonable efforts to assist Google in the event Google attempts to collect payment directly from a US Client. Google will notify Company at least two business days in advance if it intends in good faith to seek payment directly from Client. Company will make available to Google upon request written confirmation of the relationship between Company and a US Client. This confirmation may include, for example, such US Client's acknowledgement that Company is its agent and is authorized to act on its behalf in connection with these Terms. Company will promptly (but in any event within 2 business days) notify Google, through its primary account contact, if it has reason to believe, other than through publicly-available information, that a US Client's credit is or may become impaired or that the US Client will not pay for applicable Service Fees by the US Client Due Date. If US Client becomes a debtor in a bankruptcy case under the United States Bankruptcy Code or another insolvency proceeding, Company agrees to file a proof of claim for the full amount due. Company also authorizes Google to file a proof of claim on behalf of and in the name of Company, and Company agrees to cooperate with Google and provide Google all information necessary to prepare such proof of claim.

    c.    Where Company is liable for payment under the terms set out herein, Google may charge interest at a rate of 1.0% per month (or the highest rate permitted by law, if less) from the due date 15 days after the date payment is due until the date of actual payment on any Service Fees which are overdue (other than Service Fees disputed in good faith) . Company will pay reasonable expenses and attorneys' fees Google incurs in collecting late payments not disputed in good faith.

    d.    The Service Fees are exclusive of taxes. Company will pay all taxes and other government charges related to or arising from use of the Services (except for taxes on Google's net income). When Google has the legal obligation to collect any applicable VAT, GST or similar consumption tax in respect of the Services, the appropriate amount shall be invoiced to and, provided Company receives an appropriate tax invoice from Google issued at the time the invoice for related Services is issued, paid by Company unless Company provides Google with a valid tax exemption certificate authorized by the appropriate taxing authority. If any amounts payable under this Agreement are or become subject to withholding taxes under applicable laws of any state, federal, provincial or foreign government within the Americas, Company shall be authorized to withhold such amounts as are required under applicable law, pay such taxes to the appropriate government authority, and remit the balance due to Google net of such taxes.

    e.    If Company fails to pay Service Fees invoiced by Google (other than Service Fees disputed in good faith) within 10 days following the Payment Due Date, Google may suspend each applicable Service (for which the Service Fees are overdue) after 10 days' notice to Company;



CONFIDENTIAL

provided, however, that (1) to the extent that Company assigns and maintains a unique or multiple unique "Advertiser ID(s)" to each Client within Company's applicable networks, Google will suspend each applicable Service solely with respect to the Client(s) for which payments are late.  Google may, in its sole discretion, extend, revise or revoke credit at any time.

   f.  If applicable, Company will not exceed its aggregate credit line as determined by Google in its sole discretion (and made available if requested) and Google will not be obligated to provide any Services in excess of such credit line. Google reserves the right to change or retract any credit line at any time in its sole discretion.

**5.**  **Intellectual Property.** Except to the extent expressly stated otherwise in the Agreement, neither party will acquire any right, title or interest in any Intellectual Property Rights owned or licensed by the other party.

**6.**  **Brand Features.** Google may use Company's Brand Features as necessary for Google to provide the Services (e.g., if Company makes its inventory available on a transparent basis via the Services, Google may display Company's Brand Features to advertisers). Other than the limited license set forth in the preceding sentence, Google will not use Company's Brand Features (including for marketing and promotional purposes) without Company's prior written approval.

**7.**  **Confidentiality.** The receiving party will not disclose the Confidential Information of the disclosing party, except to Affiliates, employees, agents or professional advisors (and in the case of Company, Clients) of the receiving party who need to know it to provide, access, receive, or use the Services hereunder and who have agreed in writing (or in the case of professional advisors are otherwise bound) to keep it confidential. The receiving party will ensure that those people and entities use the Confidential Information of the disclosing party only to exercise rights and fulfill obligations under the Agreement, and that they keep it confidential. The receiving party may also disclose Confidential Information when required by law after giving reasonable notice to the disclosing party, if permitted by law. For purposes of clarification, Data and the terms and conditions of this Agreement are considered Confidential Information under the Agreement; provided, however, that Company may disclose such terms to its Affiliates and Clients to the extent necessary for their use and receipt of the Services contemplated hereby. A recipient shall be liable for any breach of this Section 7 by its Subcontractors. No party may make any public statement regarding the relationship contemplated by this APA to a third party without prior written consent of the other party.

**8.**  **Representations and Warranties.** Each party represents and warrants that it has all necessary rights and authority to (i) enter into the Terms and each Order Form, and (ii) perform its obligations hereunder and thereunder. Company further represents and warrants that it has all necessary rights and authority to act on behalf of any Clients.

**9.**  **Disclaimers.** Except as expressly provided for in the Agreement and to the maximum extent permitted by applicable law, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND, WHETHER IMPLIED, STATUTORY, OR OTHERWISE, AND EACH PARTY DISCLAIMS, WITHOUT LIMITATION, ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR USE, AND NONINFRINGEMENT (BUT THE FOREGOING WILL NOT LIMIT EITHER PARTY'S IP INFRINGEMENT INDEMNIFICATION OBLIGATIONS SET FORTH IN SECTION 11 OF THESE TERMS).

**10.**  **Beta Features.** Google will have no liability under the Agreement (including any indemnification obligations) arising out of or related to any use of Beta Features by Company, its Affiliates, or its or their Clients. Any use of Beta Features will be solely at Company's own risk and may be subject to additional requirements as specified by Google. Google is not obligated to provide support for Beta Features and Google may, at its sole discretion, cease providing Beta Features as part of any Services.

**11.**  **Indemnification.**



CONFIDENTIAL

GOOG-AT-MDL-008734687

DocuSign Envelope ID: 87930QA6-A2E1-4503-ABD7-A9AE41818F02

Case 1:23-cv-00108-LMB-JFA   Document 1017-13   Filed 07/26/24   Page 22 of 40 PageID#
75044
GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

**11.1** Each party (the "**Indemnifying Party**") will defend and indemnify the other party and its officers, directors, employees and agents (each, an "**Indemnified Party**") from all third-party claims or liabilities in relation to a claim filed by an unaffiliated third party before a court or government tribunal (including reimbursement for reasonable outside attorneys' fees and disbursements) arising out of or related to the Indemnifying Party's (i) breach or alleged breach of the Agreement (including any Order Form) or (ii) infringement of a third party's U.S. patent, trademark, trade secret or copyright in connection with (x) with respect to Google, the software and other technology used by Google to provide the Services hereunder, and (y) with respect to Company, the creative, technology, data or other materials provided by Company to Google or otherwise provided and utilized by Company in connection with the Services hereunder (the indemnification obligation of each party described in this clause (ii), the "**IP Infringement Obligation**").

**11.2** In addition, Company will defend and indemnify Google and its Indemnified Parties from all third-party claims or liabilities (including reimbursement for reasonable outside attorneys' fees and disbursements) arising out of or related to Company Content, Indemnifiable Target Properties (except, with respect to the Display & Video 360 Service, those Target Properties on which Company's Ad is served via programmatic means and the identity of which Company does not know in advance of Ad serving), or Company's Brand Features. "**Indemnifiable Target Properties**," as used herein, means (a) any Target Property utilizing a Service that is owned or operated by Company (or which Company is managing on behalf of a third party), (b) the landing page of any Ads utilizing a Service, (c) any Target Property where an Ad utilizing a Service appears and Company has a contractual relationship with the third-party owner or operator of such Target Property, and (d) any Target Property where an Ad utilizing a Service appears only if Google does not have a direct contractual relationship with the provider of such Target Property (e.g., publisher, third-party exchange). For clarity, if Google has a direct contractual relationship with the provider of a Target Property where an Ad utilizing a Service appears, such Target Property is excluded from the definition of "Indemnifiable Target Property."

**11.3** Google's IP Infringement Obligation will not apply to claims to the extent arising from (i) Company's use of the Service in violation of the Agreement; or (ii) the combination, operation or use of the Service(s) with any product or service not provided or authorized in writing by Google. Company's IP Infringement Obligation will not apply to claims to the extent arising from Google's provision of the Service(s) in violation of the Agreement. Without affecting either party's termination rights and to the maximum extent permitted by law, Sections 11.1 and 11.2 of these Terms state the sole liability of the Indemnifying Party, and the sole remedy of the Indemnified Party, with respect to any third-party claim arising out of the Indemnifying Party's breach of the Agreement or intellectual property infringement.

**11.4** The Indemnified Party must (i) promptly notify the Indemnifying Party in writing of the third-party claims (except that failure of the Indemnified Party to promptly notify the Indemnifying Party will not relieve the Indemnifying Party of its indemnification obligations, except to the extent it has been damaged by the failure); (ii) reasonably cooperate with the Indemnifying Party in the defense of the matter and (iii) give the Indemnifying Party primary control of the defense of the matter and negotiations for its settlement. The Indemnified Party may at its expense join in the defense with counsel of its choice. Any settlement requiring the indemnified party to admit liability, pay money, or take (or refrain from taking) any action, will require the indemnified party's prior written consent, not to be unreasonably withheld, conditioned, or delayed.

**11.5** If a Service becomes, or in Google's reasonable opinion is likely to become, the subject of an intellectual property infringement claim, then Google, at its sole option and expense and upon notice to Company, may suspend provision of the applicable Service and either: (x) procure the right to continue providing the Service as contemplated by the Terms; (y) modify the Service to render it non-infringing without adversely affecting use of such Service; or (z) replace the Service with a functionally equivalent, non-infringing service. If the above options are not commercially practicable, either party may terminate the Order Form(s) for the Services impacted.

**12.** **Limitation of Liability.**



CONFIDENTIAL

**12.1** EXCEPT FOR (A) INDEMNIFICATION AMOUNTS PAYABLE TO THIRD PARTIES UNDER THE AGREEMENT AND (B) BREACHES OF SECTION 7 (CONFIDENTIALITY) OF THESE TERMS, NEITHER PARTY WILL BE LIABLE UNDER THE AGREEMENT FOR LOST REVENUES, LOSSES, OR EXPENSES RELATED TO SUCH LOST REVENUES, OR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, EVEN IF THE PARTY KNEW OR SHOULD HAVE KNOWN THAT SUCH DAMAGES WERE POSSIBLE AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY.

**12.2** EXCEPT FOR (I) INDEMNIFICATION AMOUNTS PAYABLE TO THIRD PARTIES UNDER THE AGREEMENT OR (II) AMOUNTS OWED AND PAYABLE UNDER THIS AGREEMENT , NEITHER PARTY WILL BE LIABLE UNDER THE AGREEMENT FOR MORE THAN THE SUM OF (A) SERVICE FEES PAID TO SUCH PARTY UNDER THE AGREEMENT AND (B) AD REVENUES (IF APPLICABLE) RECEIVED AND RETAINED BY SUCH PARTY, IN EACH CASE, DURING THE 12 MONTHS BEFORE THE CLAIM ARISES.

**13. Term; Termination; and Suspension.**

**13.1 Term.** The term of the Agreement shall be as set out in the Order Form unless earlier terminated in accordance with the Agreement.

**13.2 Termination.**

a. Either party may terminate an Order Form upon notice with immediate effect if the other party is in material breach of these Terms or the applicable Order Form (which includes any breach by Company of Sections 3.2(a), 3.2(d) or 3.3 of these Terms):

  i. where the breach is incapable of remedy;

  ii. where the breach is capable of remedy and the party in breach fails to remedy that breach within 30 days after receiving notice from the other party; or

  iii. more than twice even if the previous breaches were remedied.

b. Google may terminate the Agreement immediately upon notice if pornographic content that is illegal under U.S. law is displayed on any Target Property.

c. If Google is unable to provide a Service due to any changes in law or regulations, Google may terminate the applicable Order Form related to such Service upon notice to Company.

d. Upon the expiration or termination of the Agreement for any reason:

  i. all rights and licenses granted by each party will cease immediately; and

  ii. if requested, each party will use commercially reasonable efforts to promptly return to the other party, or destroy and certify the destruction of, all Confidential Information (excluding Data) disclosed to it by the other party.

**13.3 Suspension.** If Company is in material violation (or if Google reasonably suspects a material violation) of these Terms, then Google may, subject to the requirements below, immediately suspend or deactivate Company's use of all or any part of the applicable Services. Following any such suspension, the parties will use commercially reasonable efforts to discuss options for cure or reinstatement of the applicable portion of the affected Service.

**14. Miscellaneous.**

**14.1 Assignment.** Neither party may assign any part of the Agreement without the written consent of the other, except to an Affiliate where: (a) the assignee has agreed in writing to be bound by the terms of the Agreement; (b) the assigning party remains liable for obligations under the Agreement if the assignee defaults on them; and (c) the assignor has notified the other party of the assignment. Any other attempt to assign is void.

**14.2 Change of Control.** If a party experiences a change of control (for example, through a stock purchase or sale, merger, by operation of law, or other form of corporate transaction): (i) that party will



CONFIDENTIAL

GOOG-AT-MDL-008734689

give written notice to the other party within 30 days after the change of control; and (ii) the other party may immediately terminate the Agreement any time between the change of control and 30 days after it receives that written notice.

**14.3    Conflicting Terms.**  If there is a conflict between the Terms and a term of an Order Form, the term of the Order Form will govern.

**14.4    Entire Agreement.**  The Agreement sets out all terms agreed between the parties and supersedes all other agreements between the parties relating to its subject matter. In entering into the Agreement neither party has relied on, and neither party will have any right or remedy based on, any statement, representation or warranty (whether made negligently or innocently), except those expressly set out in the Agreement.

**14.5    Force Majeure.**  Neither party will be liable for failure or delay in performance to the extent caused by circumstances beyond its reasonable control.

**14.6    Governing Law.**  ALL CLAIMS ARISING OUT OF OR RELATING TO THE AGREEMENT OR ANY RELATED GOOGLE PRODUCTS OR SERVICES WILL BE GOVERNED BY NEW YORK LAW, EXCLUDING NEW YORK'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF NEW YORK COUNTY, NEW YORK, USA. THE PARTIES CONSENT TO PERSONAL JURISDICTION AND WAIVE ALL OBJECTIONS TO PROPER VENUE IN THOSE COURTS.

**14.7    Notices.**  All notices of termination or breach must be in English, in writing and addressed to the other party's Legal Department. The address for such notices to Google's Legal Department is legal-notices@google.com. All other notices must be in English, in writing and addressed to the other party's primary contact. Notice will be treated as given on receipt, as verified by written or automated receipt or by electronic log (as applicable).

**14.8    No Agency.**  The Agreement does not create any agency, partnership, or joint venture between the parties.

**14.9    No Waiver.**  Neither party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under the Agreement.

**14.10   No Third-Party Beneficiaries.**  The Agreement does not confer any benefits on any third party unless it expressly states that it does.

**14.11   No reselling unless expressly permitted.**  Except as expressly set forth in an Order Form, Company may not resell any of the Services.

**14.12   Severability.**  If any term (or part of a term) of the Agreement is invalid, illegal or unenforceable, the rest of the Agreement will remain in effect.

**14.13   Subcontractors.**

    a.    Either party may subcontract any of its obligations under the Agreement, without the written consent of the other party. Each party is liable for the acts and omissions of its Subcontractors.

    b.    If Company (or its Clients) engage a Subcontractor that is recommended by Google or is a Google partner:

        i.    Company acknowledges and agrees that the products and services provided by such Subcontractor are not provided by Google and Google makes no representations or warranties about such Subcontractor's performance; and

        ii.   Company is liable for the acts and omissions of such Subcontractor.

**14.14   Approvals.**  The parties agree that whenever the Agreement calls for written request or written approval to be provided by either party, unless otherwise expressly stated that e-mail is not acceptable, such request or approval may be provided via e-mail.

 CONFIDENTIAL

**14.15   Equitable Relief.**  Nothing in the Agreement will limit a party's ability to seek equitable relief; except that Company will not seek, in a proceeding filed during the term or for six months after the term, an injunction or an exclusion order of any of the Services or any portion of the Services based on patent infringement.

**14.16   Survival.**  Notwithstanding termination or expiration of the Agreement, any provisions of the Agreement that by their nature are intended to survive, will survive termination including, but not limited to: Sections 4 (Payments), 5 (Intellectual Property), 7 (Confidentiality), 9 (Disclaimers), 10 (Beta Features), 11 (Indemnification), 12 (Limitation of Liability), and 14 (Miscellaneous).

 CONFIDENTIAL

DocuSign Envelope ID: 87930DA6-A2E3-4503-ABD7-A9AE1818F02

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

## EXHIBIT II

### GOOGLE MARKETING PLATFORM ADVERTISING PRODUCTS - SERVICE SPECIFIC TERMS

By entering into an Order Form for the Google LLC ("**Google**") Google Marketing Platform Advertising Services described in such Order Form (including the Display & Video 360 Service, f/k/a the DoubleClick Bid Manager Service (as such term is defined in the Order Form), the Campaign Manager Service f/k/a the DoubleClick Campaign Manager Service (as such term is defined in the Order Form), the Search Ads 360 Service f/k/a the DoubleClick Search Service (as such term is defined in the Order Form), collectively the "**Google Marketing Platform Advertising Services**"), Company agrees to the following additional terms for the Google Marketing Platform Advertising Services (the "**Service Specific Terms**"). Capitalized terms that are undefined in these Service Specific Terms have the meanings set forth in the Google Platform Services Terms and Conditions (the "**Platform Terms**") or the applicable Order Form. To the extent there is any conflict or inconsistency between an Order Form, these Service Specific Terms, and the Platform Terms, the following order of precedence will apply in respect of the Google Marketing Platform Advertising Services: (1) the Order Form; (2) the Service Specific Terms; and (3) the Platform Terms.

1.     **Service Specific Definitions.**

   a.   "**Ad Specifications**" means the features of an Ad that determine its compatibility with the criteria set by a Media Provider with respect to particular Media.

   b.   "**Campaign Manager UI**" means the Campaign Manager Service user interface.

   c.   "**Data Provider**" means a provider of Third-Party Data. Subject to Company's limited right to use Third-Party Data under an Order Form, each Data Provider will retain all proprietary rights in and to its respective Third-Party Data.

   d.   "**Display & Video 360 UI**" means the Display & Video 360 Service user interface.

   e.   "**Exchange Spend**" means the sum of the cost of all purchased Media offered via: (i) open or private auctions (i.e., multiple bidders for non-reserved Media); (ii) preferred deals (i.e., first-look options and other non-guaranteed deals); and (iii) any other deal type supported in the Display & Video 360 Service which does not qualify for Non-Exchange Spend.

   f.   "**Group Spend**" means the aggregate Spend of the Company Group (as defined in an Order Form).

   g.   "**Media**" means online advertising inventory made available for purchase to Company via the Display & Video 360 Service.

   h.   "**Media Provider**" means an advertising exchange, network, web publisher or other provider of Media.

   i.   "**Non-Exchange Spend**" means the sum of the cost of all purchased Media: (i) offered via API integrations; (ii) utilizing TrueView functionality and/or other YouTube formats; (iii) offered via guaranteed or reserved deals; and (iv) trafficked via third-party Tags.

   j.   "**Spend**" means the sum of Company's Exchange Spend and Non-Exchange Spend as reported by the Display & Video 360 Service.

   k.   "**Third-Party Data**" means the cookie-level information of a third party that is made available to Company via the Display & Video 360 Service to target its purchases of Media.

   l.   "**Third-Party Fees**" mean the sum of the cost of all Media, Third-Party Data, and any other third-party services which Company utilizes via the Display & Video 360 Service.

2.     **License Grant.** Upon Company's execution of an Order Form and acceptance of these Service Specific Terms, Google grants to Company the non-exclusive right to access and use the Google Marketing Platform Advertising Services subject to the Order Form and all terms incorporated therein.

3.     **Display & Video 360 Service.** With respect to the Display & Video 360 Service:

   a.   Company hereby represents, warrants, and covenants that:



CONFIDENTIAL

GOOG-AT-MDL-008734692

DocuSign Envelope ID: 87930QA6-A351-4503-ABD7-A9AE41818F02

Case 1:23-cv-00108-LMB-JFA   Document 1017-13   Filed 07/26/24   Page 27 of 40 PageID#
75049
GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

i.    each of its Ad Specifications and other information entered into the Display & Video 360 Service are true and correct in all material respects; and

ii.    it will not, and will not assist or knowingly permit any third party to analyze, decompile, track, or otherwise determine the source or location of any Third-Party Data.

b.  If Company's Order Form for the Display & Video 360 Service includes the Managed Display & Video 360 Service (as defined in the Order Form), during the Term of such Order Form, Company will indicate to Google in advance and in writing (including, if supported, through the Display & Video 360 UI) whether it wishes to manage a particular Ad campaign itself using the Self Service Display & Video 360 Service (as defined in the Order Form) or have Google manage such campaign on Company's behalf using the Managed Display & Video 360 Service. For clarification, (i) Company may not use the Managed Display & Video 360 Service unless approved in advance by Google; and (ii) Google offers the Managed Display & Video 360 Service at its sole discretion.

**4.**    **Campaign Manager Service.** With respect to the Campaign Manager Service:

a.  Company will remove, or cause the Target Properties to remove, all applicable Tags from the Target Properties at the completion of each Ad campaign and upon termination of Company's access to the Campaign Manager Service subject to an Order Form (it being understood and agreed that, notwithstanding any termination of Company's access to the Campaign Manager Service, Company will be liable for all use of Tags until they are removed from the Target Properties).

b.  Use of Dynamic Floodlight may include without limitation the redirecting of requests from a user's browser to entities other than Google, Company or the applicable Client. In order for a privacy policy to comply with the Platform Terms, it must cover the collection of data through those redirects.

c.  If Company elects to use RFP Module, the following terms will apply:

i.    The proprietary RFP module (the "**RFP Module**") is designed to facilitate media planning and buying, including without limitation selection of the Target Properties, management of the request for proposal ("**RFP**") process with Target Properties, and generation of Insertion Orders and Media Plans. "**Media Plan**" means the selection of Target Properties where a campaign will be executed. "**Insertion Order**" means the written contract which governs the terms of placement on a Target Property. The RFP Module is part of the Campaign Manager Service.

**5.**    **Search Ads 360 Service.** With respect to the Search Ads 360 Service:

a.  Company will remove, or cause the search engine sites to remove, all applicable tracking URLs at the completion of each Ad campaign and upon the termination of Company's access to the Search Ads 360 Service (it being understood and agreed that, notwithstanding any termination of Company's access to the Search Ads 360 Service, Company will be liable for all use of tracking URLs until they are removed from the search engine sites).

**6.**    **Google Marketing Platform Advertising Services.** With respect to each of the Google Marketing Platform Advertising Services:

a.  Google may restrict, in whole or in part, the use of Tags on Company's behalf in consent-based email publications if Google receives "spam" complaints about any of those email publications; provided that Google will notify Company promptly following each such restriction.

b.  Company will not, directly or indirectly, allow any third party, other than Affiliate Customers or Subcontractors that Company engages to use the Service(s) as contemplated hereunder, to access or have information about the user interface of any Service(s).

**7.**    **Confidentiality.** Notwithstanding Section 7 (Confidentiality) of the Platform Terms and Section 8 (Data) below:

a.  With respect to the Display & Video 360 Service, Google may share Company's Spend data and Company's identity (and the identity of any Clients that purchase Media or utilize Third-Party Data) with applicable Media Providers and Data Providers solely for reporting and billing purposes.

b.  Subject to Section 8 (Data) below, Data is Confidential Information of Company.



CONFIDENTIAL

GOOG-AT-MDL-008734693

DocuSign Envelope ID: 87930OA6-A3E1-4508-ABD7-A9AE41818F02

Case 1:23-cv-00108-LMB-JFA   Document 1017-13   Filed 07/26/24   Page 28 of 40 PageID#
75050
GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

**8.     Data.**

a.   As between Company and Google, Company will own all Data and Google will not use such Data for any purpose including but not limited to the purpose of assisting other Google clients; provided that Google may use and disclose such Data solely:

i.        as aggregate Service statistics, which will not include personally identifiable information or information that identifies or would reasonably be expected to identify Company, its Affiliates or any of its Clients or Target Properties;

ii.       to provide the Services and enforce its rights under this Agreement (it being understood and agreed that Company's non-aggregated data will not be sold, used or disclosed to any third party by Google (except as otherwise expressly permitted by the Agreement) without Company's written consent); and

iii.      if and as required by court order, law, or governmental or regulatory agency (after, if permitted, giving reasonable notice to Company and using commercially reasonable efforts to provide Company with the opportunity to seek a protective order or the equivalent (at Company's expense)).

b.   Google's retrieval and/or provision to Company of event-level data or archived reporting data derived from Company's use of Services beyond a period of 3 years may result in additional fees based on storage and service costs, but no such fees shall be charged without Company's written agreement prior to the retrieval and/or provision of such data.

**9.     Service Level Agreement.**

a.   For the Display & Video 360 Service only: Google will use commercially reasonable efforts to ensure that the Display & Video 360 UI is available for Company's use at least 99.5% of the time calculated on a calendar monthly basis, it being understood that Display & Video 360 UI "down" time will exclude time (i) required for routine system maintenance (it being understood that Google will notify Company at least 2 business days prior to any such routine maintenance); and/or (ii) resulting from technical malfunctions in the systems of Company or of any Media Provider or Data Provider, or any other circumstances beyond Google's reasonable control (including, without limitation, Internet delays, network congestion, and ISP malfunctions). In the event that unscheduled down time exceeds 0.5% in any 3 consecutive months or in any 4 months in any 12 consecutive month period (each, a "**Display & Video 360 UI Downtime Period**"), Company will have the one-time right to terminate its contract for the Display & Video 360 Service upon 30 days' prior written notice to Google, subject to such notice being received by Google within 30 days of the end of the Display & Video 360 UI Downtime Period. The remedy set forth in this paragraph is Company's sole remedy for any and all unavailability of the Display & Video 360 UI.

b.   For the Campaign Manager Service only: Google will use commercially reasonable efforts to ensure that the Campaign Manager Service processes Ad requests at least 99% of the time, calculated on a calendar monthly basis as measured by Google from the data center used by Google to serve Ads on Company's behalf, it being understood that Ad Delivery Service "down" time (calculated as the difference between 100% of time in a calendar month and the actual percentage of time during that month that Ad requests are processed) will exclude time resulting from technical malfunctions in the Target Properties' systems, or any other circumstances beyond Google's reasonable control (including, without limitation, Internet delays, network congestion, and ISP malfunctions). Notwithstanding anything to the contrary in the Platform Terms, these Service Specific Terms, or the Order Form, in the event that down time exceeds 1% in any month during the Campaign Manager Term, Company will receive a reduction in fees, credited to the next month's invoice, calculated by multiplying (i) the Average Impressions Per Hour; by (ii) the down time (rounded to the nearest hour); and by (iii) the effective CPM rate charged by Google for Ads served by Google during that month. The "**Average Impressions Per Hour**" is determined by dividing the total number of Ads served in the previous month by the total number of hours in that month. The remedy set forth above in this paragraph is Company's sole remedy for any and all unavailability of the Campaign Manager Service.

**10.    Affiliates.**



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

a. Company's Affiliates may receive Services under the Agreement (i) by entering into an Affiliate Adopting Agreement (as defined below); or (ii) if Company uses the Services on behalf of its Affiliates listed in Appendix B to this Exhibit II (each an "**Affiliate Customer**").

b. An Affiliate may adopt the terms of an Order Form (which incorporate the Platform Terms and these terms by reference) by entering into an Affiliate Adopting Agreement. If an Affiliate enters into an Affiliate Adopting Agreement to this Agreement, Company will provide a copy of this Agreement (including the applicable Order Form) to such Affiliate. "**Affiliate Adopting Agreement**" means a written agreement that incorporates the Agreement by reference and is entered into by Google (or an Affiliate of Google) and an Affiliate of Company, creating a direct relationship between them.

c. If Company uses the Services on behalf of an Affiliate Customer, Company will be liable for the acts and omissions of each such Affiliate Customer in connection with Services provided under the Agreement (to the extent any such acts or omissions, if performed by Company, would be a breach of, or otherwise give rise to liability under, the Agreement) and Company will pay directly to Google all Service Fees and other costs for the Services incurred by such Affiliate Customer.

d. If Services are provided to an Affiliate of Company that is organized in Europe, the Middle East, or Africa, Google Ireland Limited will be deemed to be the entity that provides such Services. If Services are provided to an Affiliate of Company that is organized in North America or in another region outside Europe, the Middle East, Africa, Asia, and Oceania, Google LLC will be deemed to be the entity that provides such Services. If Services are provided to an Affiliate of Company that is organized in Asia (other than China) or Oceania, Google Asia Pacific Pte. Ltd. or its reseller (i) to Affiliates of Company organized in Australia, Google Australia Pty Ltd, or (ii) to Affiliates of Company organized in New Zealand, Google New Zealand Limited will be the entity that provides such Services. Google will be liable for each such entity's acts and omissions in connection with the Services provided. Services will not be provided to or utilized by any Affiliate of Company that is organized in China unless such Affiliate enters into an Affiliate Adopting Agreement or other agreement with the applicable Google Affiliate.

e. If an Affiliate of Company that is party to an Advertising Platform Agreement (or another substantially similar agreement) (the "**APA**") with Google subsequently enters into an Affiliate Adopting Agreement to this Agreement, then, as of the "**Adopting Effective Date**" of that Affiliate Adopting Agreement, this Agreement will supersede that Affiliate's APA and all order forms (or another substantially similar agreement), schedules, and statements of work to it (as applicable) with respect only to the Google Marketing Platform Advertising Services (individually and/or collectively, as applicable).

f. Company shall not be liable for the acts and omissions of any Affiliate that is (or at the time of such acts and/or omissions was) an AAA Affiliate, and in no event shall any AAA Affiliate or Affiliate Customer be liable for the acts and omissions of any other AAA Affiliate or Affiliate Customer under this Agreement; provided, that an AAA Affiliate or Affiliate Customer shall be responsible for all use of the Services through its account hereunder, including to the extent used by another Affiliate Customer or AAA Affiliate.

 CONFIDENTIAL

HIGHLY CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

## Appendix A to Exhibit II

With respect to the Display & Video 360 Service, the parties agree that the following additional terms shall apply:

**Fraudulent Traffic**. Google will use commercially reasonable efforts to detect and eliminate Fraudulent Traffic from impression, click and action counts reports, including without limitation by including appropriate contractual provisions to address Fraudulent Traffic in its agreements with exchanges and other inventory sources. Agency will not be responsible for payment of any impressions deemed fraudulent. "**Fraudulent Traffic**" means ad clicks and impressions or similar billing events that are determined by Google to be fraudulent, suspect in quality, or unusable according to Google's advertising standards and records, including anything other than natural persons in the normal course of using any device, including, without limitation, browsing through online, mobile or any other technology or platform. For the avoidance of ambiguity, Fraudulent Traffic includes, without limitation, the inclusion of counting of views: (i) by non-human visitors; and (ii) that are not actually capable of being visible to the human eye, discernible to human senses, or perceived by a human being.



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

### Appendix B to Exhibit II
### Scheduled Affiliates

Dated as of March 1, 2021

This Appendix B to Exhibit II supersedes any Exhibit to the Advertising Platform Agreement dated prior to the date set forth above which governs the same subject matter.

A.    Affiliates organized in North America or in another region outside of Europe, the Middle East, Africa, Asia and Oceania:

| Country | Affiliate Name |
| --- | --- |
| United States | BPN Worldwide, Inc. |
| United States | Brand Programming Network LLC |
| Colombia | Brandconnection S.A.S. |
| United States | Kinesso, LLC d/b/a Matterkind, a division of Kinesso, LLC |
| United States | Geomentum, Inc. |
| United States | ID Media, Inc. |
| Chile | I-Group Comunicacion Publicitaria Ltda |
| Venezuela | Initiative Media Colombia S.A. Sucursal Venezuela BRANCH |
| United States | Initiative Media, LLC |
| Argentina, Mexico | IPG Media Brands Communication S.A. de C.V. |
| Argentina, Chile, Mexico | IPG Media Brands S.A. |
| Uruguay | IPG Media Brands S.A. BRANCH |
| Colombia | IPG Mediabrands S.A. |
| Bolivia | IPG Mediabrands S.A. Sucursal Bolivia BRANCH |
| Ecuador | IPG Mediabrands S.A. Sucursal Ecuador BRANCH |
| Peru | IPG Mediabrands S.A. Sucursal Peru BRANCH |
| United States | Magna Global USA, Inc. |
| United States | Media Partnership Corporation |
| Canada | Mediabrands Worldwide, Inc. - Canadian BRANCH |
| United States | MediaBrands Worldwide, Inc. dba Ansible |



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| United States | NSA Media, INC |
| United States | Orion Trading Canada Inc |
| United States | Orion Trading Worldwide LLC |
| United States | Outdoor Advertising Group |
| United States | Reprise Media, Inc |
| United States | Spring Creek Group, L.L.C. |
| Canada | True North - Wahlstrom Canada BRANCH |
| Chile | Universal McCann Servicos de Medios Ltda |
| Colombia | Universal McCann Servicos de Medios Ltda BRANCH |
| United States | Universal McCann Worldwide |
| United States | Wahlstrom Group LLC |
| United States | WIM Traffic, Inc. |
| United States | Solved Health (part of FCB WORLDWIDE, INC) |
| United States | Universal McCann USA |
| United States | Universal McCann NY |

B.  Affiliates organized in Europe (other than Russia), Africa or the Middle East:

| Country | Affiliate Name |
| --- | --- |
| Poland | Brand Connection Sp. z.o.o. |
| Portugal | Brand Connection, Actividades Publicitarias, Lda. |
| Netherlands | Brandconnection B. V. |
| France | Kinesso France SAS |
| Germany | Kinesso GmbH & Co. KG |
| Germany | Cadreon Verwaltungs-GmbH |
| Hungary | CMS Brand Connection Budapest Kft. |
| Germany | Creative Media Services GmbH |
| Czech Republic | Czech Media Club, spol. s.r.o. |
| Netherlands | digilogue B.V. |


CONFIDENTIAL

DocuSign Envelope ID: 97930QA6 A2E1 4509 ABD7 A9AE 1818F02

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Hungary | Fastbridge Hungary Marketing-kommunikacios Ugynokseg Kft. |
|---|---|
| Portugal | Inciativas de Meios, Actividades Publicitarias, Lda. |
| Germany | Initiative Group GmbH |
| France | Initiative International SAS |
| Saudia Arabia, United Kingdom | Initiative Media |
| Netherlands | Initiative Media B.V. |
| Hungary | Initiative Media Hungary Kft. |
| United Arab Emirates | Initiative Media Middle East |
| Italy | Initiative Media Milano S.r.l. |
| Czech Republic | Initiative Media Prague s.r.o. |
| Greece, Romania | Initiative Media S.A. |
| Poland | Initiative Media Warszawa Sp. z.o.o. |
| Austria | Initiative Media Werbemittlung GesmbH |
| Austria | IPG Mediabrands GmbH |
| Denmark | IUM A/S |
| Norway | IUM AS |
| United Arab Emirates | Magna Global FZ LLC |
| Germany | Magna Global Germany GmbH |
| Hungary | Magna Global Hungary Mediaugynokseg Szolgaltato Kft. |
| Poland | Magna Global Polska Sp. z.o.o. |
| Spain | Magna Global S.A. |
| Czech Republic | Magna Global s.r.o. |
| Slovakia | Magna Global Slovakia, s.r.o. |
| Switzerland | Magna Global Switzerland AG |
| Netherlands | Magna Global V.O.F. |
| Ireland | Magna Ireland Media Limited |
| Greece | Mediabrands Advertising S.A. |



CONFIDENTIAL

GOOG-AT-MDL-008734699

DocuSign Envelope ID: 87930OA6-A3E1-4503-ABD7-A9AE41818F02

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| | |
|---|---|
| Switzerland | Mediabrands AG |
| Belgium | Mediabrands Belgium S.A. |
| United Kingdom | Mediabrands EMEA Limited |
| United Kingdom | Mediabrands International Limited |
| United Kingdom | Mediabrands Limited |
| Ireland | Mediabrands Limited BRANCH |
| Netherlands | Mediabrands Netherlands B.V. |
| France | Mediabrands S.A.S. |
| Denmark | MediaPrint ApS |
| Portugal | Megameios - Publicidade E Meios, A.C.E. |
| Germany | MGMP Magna Global Media Plus GmbH |
| France | Orion Trading France S.A.S. |
| Germany | Orion Trading GmbH |
| United Kingdom | Orion Trading EMEA Limited |
| Belgium | Outdoor Services SA |
| Austria | Panmedia Holding AG |
| Austria | PanMedia Western Werbeplanung GmbH |
| Sweden | PMI Initiative/Universal Media AB |
| United Kingdom | Rapport Outdoor Limited |
| Netherlands | Reprise Media Netherlands B.V. |
| Poland | Reprise Media Sp. z.o.o. |
| Netherlands | Traffic4U B.V. |
| Netherlands | Traffic4U International B.V. |
| Poland | U2 Media Sp. z.o.o. |
| Turkey | Universal / McCann- Media Planlama ve Dagitim A.S. |
| Portugal | Universal McCann Connections, Actividades Publicitarias, Lda. |
| United Kingdom | Universal McCann EMEA |
| Germany | Universal McCann GmbH |



CONFIDENTIAL

GOOG-AT-MDL-008734700

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Hungary | Universal McCann Magyarorszag Reklamugynokseg Kft. |
|---|---|
| United Kingdom | Universal McCann Manchester |
| Czech Republic | Universal McCann s.r.o. |
| Poland | Universal McCann Sp. z.o.o. |
| Austria | Universal McCann Werbeberatungs GmbH |
| Spain | Universal McCann, S.A. |
| Greece | Universal Media Advertising (Hellas) S.A. |
| Netherlands | Universal Media B.V. |
| Ireland | Universal Media Ireland Limited |
| Qatar | Universal Media LLC |
| Italy | Universal-McCann S.r.l. |
| Austria | You Two Media GmbH |
| Egypt | UM Egypt |
| Slovakia | Universal McCann Bratislava |
| Austria | Matterkind Austria |

C.     Affiliates organized in Asia (other than China) or Oceania:

| Country | Affiliate Name |
|---|---|
| Australia | Kinesso Pty Ltd |
| Malaysia | Fastbridge Malaysia Sdn Bhd |
| Thailand | I Dissolution Two Limited (In liq) |
| Australia | Initiative Media Australia Pty Ltd |
| India | Interactive Avenues Marketing Solutions Private Limited |
| Indonesia | Interface.bpn |
| Australia | Interpublic Australia Pty Limited |
| Thailand | IPG Advertising (Thailand) Limited |
| Hong Kong | IPG Mediabrands (HK) Limited |
| Singapore | IPG Mediabrands (SIngapore) Pte. Ltd |



CONFIDENTIAL

GOOGLE MARKETING PLATFORM ORDER FORM – ADVERTISING SERVICES

| Malaysia | IPG Mediabrands Sdn Bhd |
| --- | --- |
| Japan | McCann Worldgroup Holdings Japan Inc |
| Japan | Kinesso Japan, Inc. |
| Australia | Mediabrands Australia Pty Ltd |
| Malaysia | Mediabrands Global Technology Solutions Sdn. Bhd. |
| India | Mediabrands India Private Limited |
| Taiwan | Mediabrands Worldwide, Inc. - Taiwan BRANCH |
| Australia | Merchant & Partners Australia Pty Ltd |
| Australia | Orion Trading Australia Pty Ltd |
| Japan | Orion Trading Japan KK |
| Indonesia | PT Inpurema Konsultama |
| India | Reprise Media Media India Private Limited |
| Australia | Universal McCann<br>(a division of Mediabrands Australia Pty Ltd) |
| Korea, Republic of | Universal McCann Inc Korea |



CONFIDENTIAL

**AFFILIATE ADOPTING AGREEMENT**
**(NON-MEDIABRANDS AFFILIATES, AMERICAS)**

This AFFILIATE ADOPTING AGREEMENT (this "Agreement"), dated as of February 1, 2015 (the "Adopting Effective Date"), is between:

(a)    The Interpublic Group of Companies, Inc. ("IPG"), for and on behalf of each of the entities listed in Exhibit I to this Agreement, with offices as listed in Exhibit I to this Agreement (each a "Company Affiliate"); and

(b)    DoubleClick, a division of Google Inc., with offices at 76 Ninth Avenue, 4th Floor, New York, New York 10011, U.S.A. ("DoubleClick").

Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Mediabrands Agreement.

WHEREAS, DoubleClick and Mediabrands Worldwide, Inc. ("Mediabrands") have entered into that certain DoubleClick Advertising Platform Agreement (including any and all Order Forms, schedules or addendums thereto), dated as of January 1, 2015, that governs DoubleClick's provision of, and Mediabrands' utilization of, the DoubleClick Services (such agreement, the "Mediabrands Agreement"); and

WHEREAS, the parties' intent in entering this Agreement is that it constitute separate and independent agreements between DoubleClick and each Company Affiliate pursuant to which DoubleClick will provide services to each Company Affiliate on substantially the same terms and conditions (except as revised pursuant to this Agreement) as the terms and conditions of the Mediabrands Agreement; and

WHEREAS, IPG is authorized to bind each Company Affiliate to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and mutual covenants contained herein, DoubleClick and IPG hereby agree as follows:

1.    **Affiliate Agreement**

    (a)    IPG hereby represents and warrants that each Company Affiliate is an Affiliate (as defined in the Mediabrands Agreement) of Mediabrands, it being understood and agreed that, at such time (if any) as a Company Affiliate ceases to be an Affiliate of Mediabrands, this Agreement shall terminate with respect to such Company Affiliate.

    (b)    Subject to the terms and conditions herein, DoubleClick and IPG, on behalf of each Company Affiliate, hereby enter into this Agreement, under which all the terms and conditions of the Mediabrands Agreement applicable to Adopting Affiliates are incorporated herein by reference, mutatis mutandis, and apply separately and independently to each Company Affiliate, in each case as revised pursuant hereto.

    (c)    IPG will provide a copy of the Mediabrands Agreement to each Company Affiliate, including updates and amendments, from time to time.

2.    **Amendments**

    (a)    The provisions of the Mediabrands Agreement, each as applied only to the provision of services by DoubleClick to each Company Affiliate pursuant to the arrangement contemplated hereby, are hereby revised as follows (as so revised, such Mediabrands Agreement as applied separately to each Company Affiliate shall be referred to as the "Company Affiliate Agreement"):

GOOG-AT-MDL-008734703

(i)  The term "Company" shall refer to the applicable Company Affiliate;

(ii)  The "Effective Date" of the applicable Company Affiliate Agreement is the Adopting Effective Date;

(iii) The "Term" of the applicable Company Affiliate Agreement will commence on the Adopting Effective Date and continue in effect until the earlier of (1) expiration or earlier termination of the Mediabrands Agreement or (2) such Company Affiliate ceasing to be a Mediabrands Affiliate;

(iv) The contact and address information for each Company Affiliate is as set forth on Exhibit I hereto; and

(v)  All fees under such Company Affiliate Agreement shall be paid in the currency specified in Exhibit I for such Company Affiliate.

(b)  Each amendment, supplement or other modification to, or renewal of, the Mediabrands Agreement (each, a "Mediabrands Modification") after the date hereof shall be incorporated into, and shall amend, supplement, modify or renew, the corresponding Company Affiliate Agreement unless DoubleClick and such Company Affiliate (or IPG on such Company Affiliates' behalf) agree in writing not to incorporate such Mediabrands Modification into, and not to amend, supplement, modify or renew, such Company Affiliate Agreement.

3.   **General**

(a)  DoubleClick and IPG, on behalf of each Company Affiliate, hereby ratify and agree to the terms and conditions of the Company Affiliate Agreement (i.e., the terms and conditions of the Mediabrands Agreement applicable to Adopting Affiliates, as incorporated herein, mutatis mutandis, and amended hereby).

(b)  Each Company Affiliate Agreement constitutes the entire agreement between DoubleClick and such Company Affiliate with respect to the subject matter hereof and supersedes all prior understandings, representations and agreements, whether written or oral, between DoubleClick and Company Affiliate with respect to such subject matter.

(c)  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement. Signed facsimile copies of this Agreement will legally bind the parties to the same extent as original documents.

(d)  IPG hereby represents and warrants that it has, and will have throughout the term of the Mediabrands Agreement and this Agreement (whichever is later), all necessary rights and authority to enter this Agreement on behalf of each Company Affiliate and incorporate into each Company Affiliate Agreement any change, revision, amendment or addition to the Mediabrands Agreement pursuant to Section 2(b). DoubleClick acknowledges that IPG is entering into this Agreement solely for the benefit of each Company Affiliate, and except as expressly provided in Sections 3(e) and 3(f) below, IPG shall have no liability or performance obligations under this Agreement or any Company Affiliate Agreement, and DoubleClick will hold each Company Affiliate solely liable. Any breach of this Agreement by a Company Affiliate will not constitute a breach by IPG or any other Company Affiliate.

(e)  IPG will indemnify DoubleClick and DoubleClick's Affiliates against all damages, liabilities and costs (including settlement costs and reasonable legal fees and disbursements) necessarily incurred by DoubleClick or any of its Affiliates arising from a third party claim or allegation that IPG lacked the authority to and/or failed to bind a Company Affiliate to the terms of this Agreement.

(f)  Without limiting any other duties and obligations under this Agreement or the Mediabrands Agreement, to the extent that IPG has failed to bind a Company Affiliate, the applicable

Company Affiliate Agreement will immediately terminate and IPG will be fully and solely liable for the acts and omissions of such Company Affiliate under the applicable Company Affiliate Agreement prior to the date of such termination (for avoidance of doubt, IPG will be fully and solely liable for any duties and obligations that survive such termination of the applicable Company Affiliate Agreement).

IN WITNESS WHEREOF, each of the parties hereto has caused this Affiliate Adopting Agreement to be executed by its duly authorized officer as of the date first above written.

**DOUBLECLICK, a division of Google Inc.**

By:____
Na
Tit

Omid Kordestani
Authorized Signatory

2015.03.03
08:18:13
-08'00'

**The Interpublic Group of Companies, Inc., on behalf of each Company Affiliate**

By: _Brau In for Eliseo Rojas_
Name: Diane Masson For Eliseo Roja
Title: CPO
February 28, 2015

HIGHLY CONFIDENTIAL

**EXHIBIT I**
**Company Affiliates**

Dated as of Feburary 1, 2015

| Country | Affiliate Name | Currency | Address | Contact and Billing Address (if different) |
|---|---|---|---|---|
| Canada | MacLaren McCann Canada Inc | CAD | 10 Bay Street, Suite 1000 Toronto, ON M5J 2S3 Canada | Peter Vaz (Peter.vaz@maclaren.com) |
| United States | Campbell Ewald Company d/b/a Lowe Campbell Ewald | USD | 2000 Brush Street Suite 601 Detroit, MI 48226 | Pam Kisel (Pam.Kisel@lowe-ce.com) |
| United States | Carmichael Lynch, Inc. | USD | 110 N 5th Street Minneapolis, MN 55403 | Brandon Miller (Brandon.miller@CLYNCH.com) |
| United States | CMGRP, Inc. d/b/a Weber Shandwick | USD | 919 909 3RD AVE FL 15 New York, NY 10022 | Leah Gellis (lgellis@cmgrp.com) Damien LaManna (dlamanna@webershandwick.com) |
| United States | Compass Point Media | USD | 510 Marquette Ave. 12th Floor Minneapolis, MN 55402 | Andi Felix (odigital@mithun.com) |
| United States | Deutsch LA, Inc. | USD | 5454 Beethoven St. Los Angeles, CA 90066 | Tina Teodorescu (tina.teodorescu@deutschinc.com) |
| United States | McCann Relationship Marketing dba MRM//McCann | USD | 105 Carnegie Center, Princeton, NJ08540 | Debbie Trink (Debbie.Trink@mrm-mccann.com) |
| United States | Hill Holliday LLC | USD | 53 State St. Boston, MA 02109 | Stacey Shepatin (stacey.shepatin@hhcc.com) Kate Thompson (kate.thompson@hhcc.com) |
| United States | HUGE, LLC | USD | 45 Main St, Suite 220, Brooklyn, NY, 11201 | Michelle Burnham (mburnham@hugeinc.com) |
| United States | MRM McCann | USD | 60 E South Temple Ste 1400 Salt Lake City, Utah 84111 | Stephanie Mace (Stephanie.Mace@mrm-mccann.com) |
| United States | Mullen Advertising, INC. | USD | PO Box 5627, Winston Salem, NC27113 | Dominic Forte (emotyl@mediahubmullen.com) |
| United States | R/GA Media Group, Inc | USD | 350 W 39Th St New York, NY 10018 | Liz Hart (mediabilling@rga.com) |
| United States | Fitzgerald & Co, | USD | 3333 Piedmont Road, Suite 1100, Atlanta, GA 30305 | Jessica Fergen (Jessica.Fergen@fitzco.com) |
| United States | The Martin Agency | USD | One Shockoe Plaza Richmond, VA 23219 | Lorri Riddle (mathias.veremakis@martinagency.com) |

GOOG-AT-MDL-008734706