**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES, *et al.,* | |
| *Plaintiffs,* | |
| v. | No. 1:23-cv-00108-LMB-JFA |
| GOOGLE LLC, | |
| *Defendant.* | |

**NON-PARTY ADOBE INC.'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION AND SPECIFIC OBJECTIONS WITH PROPOSED**
**REDACTIONS TO THE PARTIES' TRIAL EXHIBITS**

Non-party Adobe Inc. ("Adobe"), by and through counsel, objects to the parties' public

use of Adobe's highly confidential information at trial, as provided under the Court's June 24,

2024 Pretrial Scheduling Order providing that "[a]ny party or non-party who objects to the

public use of confidential documents or testimony must file a specific objection with a proposed

acceptable redaction of the information," ECF No. 871. Adobe respectfully submits this

memorandum detailing its specific objections to the public use of the parties' proposed exhibits

specified below. To address the confidentiality concerns presented by these materials, Adobe

proposes narrowly tailored redactions and sealing of certain information to protect Adobe's

competitively sensitive information while preserving the public right of access.

**I.       BACKGROUND**

Adobe is a company that designs and provides a range of digital products and services.

One of these products, Adobe Advertising is a cross-channel platform which offers customers the

ability to: (1) plan, buy, manage, measure, analyze, and optimize display, video, native, mobile,

1

audio, and other advertising campaigns, and (2) leverage dynamic ad templates to deliver relevant ad content to end users.[1]

On March 27, 2023, and April 7, 2023, the Department of Justice ("DOJ") and Google, respectively, each served Adobe with a subpoena to produce documents. In response, Adobe produced documents, marked with Confidential and Highly Confidential designations as provided under the Protective Order. ECF No. 203. As required by the Court's Pretrial Scheduling Order, ECF No. 871, Google notified Adobe on July 5, 2024, that it had filed its exhibit list, ECF No. 894, which included some of Adobe's documents previously designated as Highly Confidential under the Protective Order. Google's exhibit list also includes exhibits that incorporate information from Adobe's Highly Confidential documents. Also on July 5, 2024, DOJ notified Adobe that it filed its exhibit list, ECF No. 892-1, including some of Adobe's Confidential and Highly Confidential documents and documents based on highly confidential data produced by Adobe. Upon review of the noticed materials, Adobe objects to the public use of some of these exhibits and proposes narrowly tailored redactions and sealing of certain information to remedy the potential competitive harm to Adobe if these materials are introduced at trial.

## II.     LEGAL STANDARD

Local Civil Rule 5(C) requires that parties moving to seal comply with certain requirements: "(1) a non-confidential description of the material sought to be filed under seal, (2) A statement why sealing is necessary, and why another procedure will not suffice, as well as appropriate evidentiary support for the sealing request; (3) References to the governing case law, an analysis of the appropriate standard to be applied for that specific filing, and a description of

---

[1] Adobe Advertising Cloud | Product Description, https://helpx.adobe.com/legal/product-descriptions/adobe-advertising-cloud.html (last updated Aug. 2, 2021).

how that standard has been satisfied; [and] (4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and how the matter is to be handled upon unsealing." Local Civ. R. 5(C). Rule 5(C) also provides that "[a]nyone seeking to file a document or other material under seal must make a good faith effort to redact or seal only as much as necessary to protect legitimate interests." *Id.*

This Court ordered that "[a]ny party or non-party who objects to the public use of confidential documents or testimony must file a specific objection with a proposed acceptable redaction of the information." ECF No. 871. Consistent with this order, Adobe objects to the public use of the parties' proposed trial exhibits that contain its highly confidential and competitively sensitive business information. To remedy any potential competitive harm to Adobe, while also protecting the public right of access to judicial records, Adobe proposes narrowly tailored redactions and sealing of certain information for a subset of documents to protect its legitimate business interests and competitively sensitive information.

## III.   DESCRIPTION OF ADOBE'S OBJECTIONS TO THE PARTIES' TRIAL EXHIBITS

Adobe objects to the public use of Google's exhibits: DTX 386, DTX 506, DTX 1015, DTX 1839, DTX 1891, DTX 1892, DTX 1893, DTX 1943, DTX 1955, DTX 1982, DTX 1991, DTX 2122, DTX 2123, DTX 2124, and Appendix Sections X.A. and X.B to the Expert Report of Mark Israel. In addition, Adobe objects to the public use of DOJ's exhibits: PTX 1308, PTX 1309, PTX 1388, PTX 1389, PTX 1432, PTX 1433, PTX 1434, and PTX 1435. As explained below, these exhibits contain Adobe's competitively sensitive information, and Adobe proposes targeted redactions of these documents and sealing of certain information to protect Adobe's confidential information.

*Google Exhibits*

Google's DTX 386, DTX 508, DTX 1015, DTX 2122, DTX 2123, and DTX 2124 are spreadsheets containing extensive amounts of Adobe's highly confidential and competitively sensitive business data. Collison Decl. ¶ 6. All of these documents were produced by Adobe in response to Google's subpoena and designated as Highly Confidential under the Protective Order. *Id.* DTX 1015, DTX 2123, and DTX 2124 are also listed as materials considered in the Appendix Sections X.A and X.B to the Expert Report of Mark Israel (Google) ("Israel Report"). *Id*. These documents were designated as Highly Confidential because they contain Adobe's competitively sensitive information.

DTX 386 lists Adobe customers by name and their year-on-year change in advertising spending from January/February 2016 to January/February 2017. DTX 508 contains month-by-month data for Adobe's customers, including values for the number of advertising impressions and spend, and Adobe's fees, from September 2018 to September 2020. DTX 1015 contains month-by-month data for Adobe's customers, including values for the number of advertising impressions and spend, from September 2018 to September 2020. DTX 2122 contains month-by-month data for Adobe's customers, including values for the number of advertising impressions and spend, and Adobe's fees, from October 2020 to March 2021. DTX 2123 contains month-by-month data for Adobe's customers, including values for the number of advertising impressions and spend, from October 2020 to March 2021. DTX 2124 contains month-by-month data for Adobe's customers, including values for the number of advertising impressions and spend, by supply-side platform, from May 2021 to April 2023. Collison Decl. ¶ 7.

Public use of the information contained in DTX 386, DTX 508, DTX 1015, DTX 2122, DTX 2123, and DTX 2124 would cause Adobe significant competitive harm because, among

other reasons, it would allow for its competitors and customers to (1) conduct month-by-month and/or year-over-year analyses using Adobe's and its customers' highly sensitive data concerning advertising impressions and spend, and (2) get an inside look at Adobe's confidential practices surrounding how it conducts business with its customers, including Adobe's fees and specific customer information. Collison Decl. ¶ 8. Public use of this data would also place Adobe at a competitive disadvantage in future negotiations with customers. *Id.* In addition, public use of this data would provide Adobe's competitors with an advantage in competing with Adobe for future business opportunities, harming competition. *Id.* For these reasons, Adobe requests that the Court order Google to keep the entirety of DTX 386, DTX 508, DTX 1015, DTX 2122, DTX 2123, and DTX 2124 under seal.

Google also noticed trial exhibits, DTX 1839, DTX 1891, DTX 1892, DTX 1893, DTX 1943, DTX 1955, DTX 1982, DTX 1991, and Appendix Sections X.A. and X.B. to the Expert Report of Mark Israel ("Israel Report"), containing and citing to highly confidential information derived from the Adobe spreadsheets DTX 1015, DTX 2123, and DTX 2124, described above.

- DTX 1839 contains Figure 18 from the Israel Report, titled "Google Ads and DV360 Share of U.S. Indirect Open Web Display (Non-Video) Advertiser Buying Tool Spending, 2019-2022." Collison Decl. Ex. A. Through communications with counsel for Google, Adobe understands that DTX 1839 in part illustrates some of the data from Adobe's highly confidential spreadsheets and identifies Adobe as a source for this information. Adobe requests that the Court order Google to redact all references to Adobe in the chart and "Sources" section of Figure 18 such that Adobe's data is anonymized.

- DTX 1891 contains Figure 74 from the Israel Report, titled "Advertiser Buying Tool

Average Fees, 2020, 2022." Collison Decl. Ex. B. Through communications with counsel for Google, Adobe understands that DTX 1891 in part illustrates some of the data from Adobe's highly confidential spreadsheets and identifies Adobe as a source for this information. Figure 74 also refers to Adobe in the chart itself. Adobe requests that the Court order Google to redact all references to Adobe in the chart and "Sources" section of Figure 74 such that Adobe's data is anonymized.

- DTX 1892 contains Figure 75 from the Israel Report, titled "Ad Exchange Average Fees, 2020-2022." Collison Decl. Ex. C. Through communications with counsel for Google, Adobe understands that DTX 1892 in part illustrates some of the data from Adobe's highly confidential spreadsheets and identifies Adobe as a source for this information. Adobe requests that the Court order Google to redact all references to Adobe in the chart and "Sources" section of Figure 75 such that Adobe's data is anonymized.

- DTX 1893 contains Figure 76 from the Israel Report, titled "Combined Advertiser Buying Tool and Exchange Fees, 2020-2022." Collison Decl. Ex. D. Through communications with counsel for Google, Adobe understands that DTX 1893 in part illustrates some of the data from Adobe's highly confidential spreadsheets and identifies Adobe as a source for this information. Figure 76 also refers to Adobe in the chart itself. Adobe requests that the Court order Google to redact all references to Adobe in Figure 76 such that Adobe's data is anonymized.

- DTX 1943 contains Figure 130 from the Israel Report, titled "Google Ads and DV360 Combined Shares of U.S. Indirect Open Web Display (Non-Video) Advertiser Buying Tool Spending, 2019-2022." Collison Decl. Ex. E. Through

communications with counsel for Google, Adobe understands that DTX 1943 in part

illustrates some of the data from Adobe's highly confidential spreadsheets and

identifies Adobe as a source for this information. Adobe requests that the Court order

Google to redact all references to Adobe in the chart and "Sources" section of Figure

130 such that Adobe's data is anonymized.

- DTX 1955 contains Figure 142 from the Israel Report, titled "Selected Non-Google

  Advertiser Buying Tool U.S. Indirect Open Web Display (Non-Video) Spending,

  2019-2022." Collison Decl. Ex. F. Through communications with counsel for Google,

  Adobe understands that DTX 1955 in part illustrates some of the data from Adobe's

  highly confidential spreadsheets and identifies Adobe as a source for this information.

  Figure 142 also refers to Adobe in the chart itself. Adobe requests that the Court order

  Google to redact all references to Adobe in the chart and "Sources" section of Figure

  142 such that Adobe's data is anonymized.

- DTX 1982 contains Table 15 from the Israel Report, titled "Adobe U.S. Web Non-

  Video Display Ad Spending by Exchange, 2022." Collison Decl. Ex. G. DTX 1982,

  as described in its title, contains Adobe's advertising spending information by

  exchange for the year 2022. DTX 1982 illustrates data from Adobe's highly

  confidential spreadsheets and identifies Adobe as a source for this information.

  Adobe requests that the Court order Google to redact the information in the

  "Spending" and "% of spending" columns, as well as all references to Adobe in the

  title and "Sources" section of Table 15. In the alternative, Adobe requests that the

  Court order Google to redact all references to Adobe in the table and the "Sources"

  section such that Adobe's data is anonymized.

- DTX 1991 contains Table 24 from the Israel Report, titled "Shares Among Advertiser Buying Tools, Ad Exchanges, and Publisher Ad Servers for All U.S. Display Advertising, 2022." Collision Decl. Ex. H. Through communications with counsel for Google, Adobe understands that DTX 1991 in part illustrates some of the data from Adobe's highly confidential spreadsheets and identifies Adobe as a source for this information. Table 24 also refers to Adobe in the chart itself. Adobe requests that the Court order Google to redact all references to Adobe in the table and the "Sources" section of Table 24, as well as the values in the "Spending" and "%" columns associated with Adobe. In the alternative, Adobe requests that the Court order Google to redact all references to Adobe in the table and "Sources" section of Table 24 such that Adobe's data is anonymized.

- Google's Appendix Sections X.A. and X.B to the Israel Report list the Bates numbers for DTX 1015, DTX 2123, and DTX 2124 as materials considered by that expert. To preserve confidentiality of the parties' and non-parties' non-public information, Google has not shared redacted versions of these Appendix Sections with Adobe. Through communications with counsel for Google, Adobe understands that the Appendix Sections cite data from the highly confidential Adobe spreadsheets listed earlier and that Adobe is listed as a source of confidential information. Adobe requests that the Court order Google to redact all references to Adobe in Appendix Sections X.A. and X.B such that Adobe's data is anonymized.

*DOJ Exhibits*

DOJ did not provide Adobe with redacted or unredacted versions of its exhibits, but did inform Adobe that exhibits PTX 1308, PTX 1309, PTX 1388, PTX 1389, PTX 1432, PTX 1433,

PTX 1434, and PTX 1435 refer to Adobe and cite data from two highly confidential Adobe data spreadsheets, Adobe – Google Ad Tech – 00001004 and Adobe – Google Ad Tech – 00001005. Adobe produced these data spreadsheets as Highly Confidential under the Protective Order, and these spreadsheets contain the same type of highly confidential information as contained in DTX 2124. Collison Decl. ¶ 20. Disclosure of highly confidential information from these spreadsheets through the identified exhibits would significantly harm Adobe for the same reasons detailed above.

PTX 1308 contains Figure 139 from the Initial Expert Report of Robin S. Lee ("Initial Lee Report"), which depicts the monthly coverage of bidding tools that produced data, by advertising impressions. PTX 1309 contains Figure 140 from the Initial Lee Report, which depicts the monthly coverage of bidding tools that produced data, by advertising spend. PTX 1388 contains Figure 17 from the Rebuttal Expert Report of Robin S. Lee ("Rebuttal Lee Report"), which depicts the share of worldwide indirect open-web display impressions among all advertiser bidding tools from 2018-2022. PTX 1389 contains Figure 18 from the Rebuttal Lee Report, which depicts Google's and third-party bidding tools' shares of worldwide indirect open-web display impressions for 2022. PTX 1432 contains Figure 69 from the Rebuttal Lee Report, which depicts the share of US indirect open-web display impressions among all advertiser bidding tools from 2018-2022. PTX 1433 contains Figure 70 from the Rebuttal Lee Report, which depicts Google's and third-party bidding tools' shares of US indirect open-web display impressions for 2022. PTX 1434 contains Figure 71 from the Rebuttal Lee Report, which depicts the share of worldwide indirect open-web display spending among all advertiser bidding tools from 2018-2022. PTX 1435 contains Figure 72 from the Rebuttal Lee Report, which depicts Google's and third-party bidding tools' shares of worldwide indirect open-web display spending

for 2022.

DOJ did not provide Adobe with redacted or unredacted versions of its exhibits. But based on DOJ's explanations of how these exhibits use the information from the spreadsheets Adobe – Google Ad Tech – 00001004 and Adobe – Google Ad Tech – 00001005, disclosure of highly confidential information from these spreadsheets through the identified exhibits would significantly harm Adobe. Consequently, Adobe requests that the Court order DOJ to redact all references to Adobe in PTX 1308, PTX 1309, PTX 1388, PTX 1389, PTX 1432, PTX 1433, PTX 1434, and PTX 1435 such that Adobe's data is anonymized.

## IV. PROTECTION OF ADOBE'S HIGHLY SENSITIVE INFORMATION IS NECESSARY TO SHIELD ADOBE FROM COMPETITIVE HARM AND OUTWEIGHS THE PUBLIC'S RIGHT OF ACCESS.

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't. of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). "In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Id.* (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). After determining the source of the right of access, a district court in the Fourth Circuit "must then weigh the appropriate competing interests" through the following procedure: "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." *Id.* at 576.

Under the First Amendment standard, the public's access may be restricted "'only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly

tailored to serve that interest.'" *See id.* at 575 (quoting *Stone*, 855 F.2d at 180); *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). Indeed, a court may seal court documents "'if the public's right of access is outweighed by competing interests.'" *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The "competing interests" that justify protection from public disclosure may include the need to prevent court proceedings from serving as "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978). Further, a business's "strong interest in preserving the confidentiality of its proprietary and trade-secret information" may justify sealing of court records. *Doe*, 749 F.3d at 269.

In other words, "[s]ealing is appropriate where the document at issue contains [or] consists of information that could be used to competitive advantage against an organization if it became public." *Globus Med. Inc. v. Jamison*, 2023 WL 4937386, at *2 (E.D. Va. Jan. 12, 2023) (granting motion to seal document containing non-parties' highly confidential information that "could be used for competitive purposes by other businesses in the industry"); *see also Glob. Tel*Link Corp. v. JACS Sols., Inc.*, 2023 WL 9197897, at *2 (E.D. Va. Oct. 4, 2023) (granting motion to seal upon finding that "[t]he public's interest in accessing this information is outweighed by a party's interest in 'preserving confidentiality' of commercially sensitive information that is 'normally unavailable to the public.'").

Here, Adobe seeks to seal and redact from the public record materials that Google and DOJ listed on their proposed exhibit lists and notified Adobe that they may use at trial. These documents include Adobe's highly sensitive competitive information, including data about advertising impressions and advertising spend by customer. The exhibits also reveal Adobe's monthly revenue and impression data by supply-side platform. Public use of this information

11

contained in the parties' exhibits detailed above would cause Adobe significant competitive

harm. Customers and competitors would be able to conduct month-by-month and/or year-over-

year analyses using Adobe's and its customers' highly sensitive data. In addition, customers and

competitors would get an inside-look at Adobe's confidential practices surrounding how it

conducts business with its advertising customers, including Adobe's fees. Public use of this data

would therefore place Adobe at a significant competitive disadvantage in future negotiations

with customers by giving data on spending amounts and fees. In addition, public use of this data

would provide Adobe's competitors with an advantage in competing with Adobe for future

business opportunities, harming competition. Adobe's proposed redactions and sealing of certain

information shield only the information necessary to redress these concerns. *See* Local Civ. R.

5(C).

The public's interest in access is outweighed by Adobe's interest in "preserving

confidentiality" of a narrowly tailored amount of highly confidential information that is

"normally unavailable to the public." *Flexible Benefits Council v. Feltman*, No. 08-cv-371, 2008

WL 4924711, at *1 (E.D. Va. Nov. 13, 2008). Adobe's proposed redactions and sealing of

certain information will allow the Court and the public to have the benefit of information about

the market without compromising Adobe's interest in keeping its information confidential. The

redacted and sealed information from Adobe is not important to the public's understanding of the

contentions of the parties in this case, nor will it affect the Court's ability to reach its ultimate

decision. For example, Adobe is not named in any of the parties' pleadings and does not play any

major role in the resolution of this case. Additionally, unlike some non-parties, no Adobe

employee will be called to testify at trial. Preserving non-party Adobe's confidentiality

surrounding this data will not affect the Court's nor the public's ability to understand the issues

in this case or the information provided through Google's and DOJ's tables and figures if they are entered into the record. Therefore, Adobe's interest in protecting the confidentiality of its competitively sensitive information from public use outweighs the public's right of access.

## CONCLUSION

Adobe respectfully requests that the Court grant its objections and proposed redactions and sealing of certain information, and order Google to keep under seal DTX 386, DTX 508, DTX 1015, DTX 2122, DTX 2123, and DTX 2124, and redact DTX 1839, DTX 1891, DTX 1892, DTX 1893, DTX 1943, DTX 1955, DTX 1982, DTX 1991, and Appendix Sections X.A and X.B to the Israel Report, as described above. Adobe further requests that the Court order DOJ to redact PTX 1308, PTX 1309, PTX 1388, PTX 1389, PTX 1432, PTX 1433, PTX 1434, and PTX 1435, as described above.


Dated:     July 26, 2024                                    Respectfully submitted,


                                                            */s/ Dorothea R. Allocca*
                                                            Peter J. Mucchetti (*pro hac vice pending*)
                                                            Dorothea R. Allocca (VSB No. 96855)
                                                            *Attorneys for Non-Party Adobe Inc.*
                                                            CLIFFORD CHANCE US LLP
                                                            2001 K Street NW
                                                            Washington, DC 20006
                                                            Tel: 202-912-5000
                                                            Fax: 202-912-6000
                                                            peter.mucchetti@cliffordchance.com
                                                            dodi.allocca@cliffordchance.com