UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>          *Plaintiffs*,<br><br>     v.<br><br>GOOGLE LLC,<br><br>          *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**SPECIFIC OBJECTIONS OF NON-PARTY ZEDO, INC. TO USE OF CONFIDENTIAL DOCUMENTS OR INFORMATION AT TRIAL**

Pursuant to this Court's Order (Dkt. 871) and Local Rule 5(H), Non-Party Zedo, Inc. ("Zedo") respectfully files these specific objections to the use of Zedo confidential documents or information at the trial of this case, and in support thereof, states as follows:

**BACKGROUND**

Zedo is a privately held company. *See* July 26, 2024 Declaration of Roy de Souza, attached hereto as Exhibit 1. On May 23, 2024, Mr. de Souza, the CEO of Zedo, received an email from the U.S. Department of Justice ("DOJ") informing him about Confidential Zedo information that was being maintained under seal in the above-captioned case, but also informing him that unless Zedo took steps to request the Court to continue to maintain that Confidential Information under seal, there was a possibility that the Confidential Zedo Information would not stay under seal and instead would be made public. A Copy of the email was attached as Exhibit 2 to Non-Party Zedo's Response In Support Of Plaintiffs' And Defendant's Motions To Seal. Dkt. 842.

1

Plaintiffs have now identified to counsel for Zedo 13 potential trial exhibits relating to Zedo, and Google has indicated that it does not intend to introduce any information at trial regarding Zedo.[1] Plaintiffs proposed exhibits are all documents that include information from documents produced by Zedo in response to federal subpoenas that were marked as Confidential or Highly Confidential.

The Zedo proposed trial exhibits include take rates, market share, ad spend, competitive trending information, and competitive position and other highly confidential, proprietary and competitively sensitive financial and other information. *Id.* ¶ 4. This information constitutes confidential financial and business information that, if disclosed, would likely cause irreparable harm to Zedo, including but not limited to loss of competitive advantage and financial harm. *Id.* ¶ 5.

This information is not available to the public and would be of significant benefit to competitors of Zedo. *Id.* ¶ 6.

Although Plaintiffs have declined to provide unredacted versions to counsel for Zedo of the documents that Plaintiffs say they may use at trial, Zedo has attempted as best it can to carefully review these proposed exhibits and made good faith efforts to identify narrowly tailored redactions that protect Zedo's commercially sensitive business information, while also permitting public disclosure of the vast majority of the documents and the information contained therein.[2]

---

[1] Both Plaintiffs and Google reserved the right to amend their exhibit list and use additional exhibits at trial, including for impeachment. *See* Plaintiffs' Trial Exhibit List at 1, Dkt. 892; Defendant Google LLC's Trial Exhibit List at 1, Dkt. 894.  Zedo accordingly reserves the right to object to any new or additional proposed use of its confidential information at trial. Zedo also reserves the right to object to the use of any of its documents or information at trial.

[2] Because Zedo does not have access to the unredacted trial exhibits, and is thus unable to provide such documents to the Court, Zedo respectfully requests that Plaintiffs and Google be

After conferring with the parties, and consistent with this Court's instruction, Zedo now respectfully requests very limited redactions to the exhibits that Plaintiffs and Google say they will use at trial, specifically to ***only include the redaction of any identification of Zedo as a referenced exchange in any of the proposed exhibits (or the use of a surrogate name, such as ABC, Inc.).***

Zedo respectfully submits that this is very reasonable procedure to avoid the significant harm, prejudice and competitive disadvantage that Zedo (and other non-parties) will suffer if such redaction is not required, and is completely consistent with Judge Anderson's ruling of July 11, 2024 in Dkt. 903, which stated: "In order to protect the interest of non-parties, the portions of figures 4, 5, 7 and 8 indicating the names of the companies corresponding to those figures shall remain under seal," and "the names of the non-parties are to be redacted" from the public versions of the documents. *See* Order at Dkt. 903, ¶ 2; *see also Id.* ¶¶ 4, 6, 8, 11, and 15.  *See also* July 26, 2024 Declaration of Roy de Souza (incorporated herein by reference) (Exhibit 1) that articulates the specific harm, prejudice and competitive disadvantage that Zedo would suffer, on a document by document basis, should Zedo's confidential and proprietary business information and competitively sensitive information become public, and available to its competitors.

Zedo also notes that it would indeed be a perverse result if a governmental antitrust enforcement action was to cause harm, prejudice and competitive disadvantage to the innocent

---

ordered to provide unredacted copies of all such exhibits to the Court in camera if the Court believes that having unredacted versions of the proposed exhibits would aid the Court in evaluating Zedo's Specific Objections. In addition, should the Court believe that Zedo has failed to meet its burden regarding the relief requested, Zedo respectfully requests that Plaintiff's and Google be ordered to provide unredacted copies of all such exhibits to Zedo and its counsel, so that additional arguments and information may be provided to the Court.

competitors (here, the non-parties) of the targeted enterprise (here, Google) in the very industry that the enforcement action is designed to protect (here, the ad tech business).

## LEGAL STANDARDS

"Trial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." Local Civ. R. 5(H). When "efforts are made to seal documents offered into evidence before a court in the course of a public jury trial," the "First Amendment guarantee of public access, with its attendant requirement to weigh competing interests, applies." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 579 (E.D. Va. 2009). The district court must give "the public notice of the request to seal and a reasonable opportunity to challenge the request,"[3] "consider less drastic alternatives to sealing," and, "if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (citing *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988)). "When the First Amendment provides a right of access, a district court may restrict access only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* at 575 (internal quotation markets and citation omitted). "One exception to the public's right of access" to judicial proceedings, including trials, applies when "such access to judicial records could provide 'a source[] of business information that might harm a litigant's competitive standing.'" *Woven Elecs. Corp. v. Advance Grp., Inc.*, 930 F.2d 913 (4th Cir. 1991) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598, (1978)).

---

[3] "Here, public notice of filing the exhibits under seal [is] achieved by [Zedo's] public filing of [this request to seal] and [its] memorand[um] in support." *Abu-Eid v. Discover Prod., Inc.*, No. 1:20-CV-1450, 2021 WL 9969142, at *1 (E.D. Va. June 2, 2021).

4

## ARGUMENT

I. **The Court Should Permit Very Limited Redactions to the Exhibits that Relate to Zedo to Prevent the Disclosure of Zedo's Confidential Information**

Zedo only requests the redaction of Zedo's name from the proposed trial exhibits of Plaintiffs, or alternatively that a surrogate name be used, such as ABC, Inc. There is absolutely no need for Zedo's name to be used in these documents, and this very simple redaction will spare Zedo the significant harm, prejudice and competitive disadvantage that will occur if Zedo's confidential and proprietary competitive business information is disclosed to its competitors, and the public. As explained in more detail below with respect to each document, Zedo would be put at a competitive disadvantage if this internal data were exposed. *See East West, LLC v. Rahman*, 2012 WL 3841401, at *3 (E.D. Va. Sept. 4, 2012) (granting motion to seal expert reports containing "confidential business information and other trade secret protected information," including "sensitive financial data . . . the disclosure of which would be highly likely to cause significant harm to the business competitive position of [the] part[y]"); *Rxd Media, LLC v. IP Application Dev. LLC*, 2019 WL 8112894, at *1 (E.D. Va. June 10, 2019) (allowing redaction of "confidential and proprietary information, including Apple's branding processes, trademark search strategies, and steps it takes to protect intellectual property when launching new products and services") (internal quotation omitted).

**Plaintiffs Trial Exhibits Regarding Zedo**

Counsel for Plaintiffs has indicted to counsel for Zedo that Plaintiffs may use the exhibits identified below at trial that reference Zedo, and/or Zedo's commercially sensitive business information. For each such proposed exhibit, Zedo states the following specific objections, incorporates Mr. de Souza's July 26, 2024 Declaration by reference, and asserts that Zedo's proposal to redact Zedo's name is the most narrowly tailored procedure to avoid the harm,

prejudice and competitive disadvantage to Zedo if the materials were made public without redacting Zedo's name (or using a surrogate name, like ABC, Inc.):

PTX1239 Figure 49, Initial Expert Report of Robin S. Lee AdX earns consistently high net revenues from the sale of worldwide indirect open-web display impressions (2018–2022). This document includes information regarding Zedo's net revenues, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 8).

PTX1240 Figure 50, Initial Expert Report of Robin S. Lee AdX maintains a significant share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022). This document includes information regarding Zedo's ad exchange fees (revenues), which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 9).

PTX1262 Figure 92, Initial Expert Report of Robin S. Lee AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022). This document includes information regarding Zedo's net revenues, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 10).

PTX1263 Figure 93, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of ad exchange fees from US indirect open-web display impressions(2018–2022). This document includes information regarding Zedo's market share of ad exchange fees (revenue), which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 11).

PTX1265 Figure 95, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of worldwide indirect open-web display spend transacted through ad exchanges (2018–2022). This document includes information regarding Zedo's market share of ad spend, which constitutes - highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 12).

PTX1266 Figure 96, Initial Expert Report of Robin S. Lee AdX maintains a significant share of US indirect open-web display spend. This document includes information regarding Zedo's market share of ad spend, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 13).

PTX1280 Figure 110, Initial Expert Report of Robin S. Lee Summary of worldwide open-web indirect display take rates among ad exchanges. This document includes information regarding Zedo's "take rates," which constitute highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 14).

PTX1293 Figure 123, Initial Expert Report of Robin S. Lee AdX maintains a significant share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022). This document includes information regarding Zedo's market share of revenues, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 15).

PTX1295 Figure 125, Initial Expert Report of Robin S. Lee AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022). This document includes information regarding Zedo's market share of revenues, which constitutes - highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 16).

PTX1306 Figure 137, Initial Expert Report of Robin S. Lee Monthly coverage of exchanges that produced data (impressions). Zedo is unable to determine the substance of the document based on the description provided, and requests that an unredacted version be produced by Plaintiffs for evaluation and objection as necessary. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 17).

PTX1307 Figure 138, Initial Expert Report of Robin S. Lee Monthly coverage of exchanges that produced data (spend). Zedo is unable to determine the substance of the document based on the description provided, and requests that an unredacted version be produced by Plaintiffs for evaluation and objection as necessary. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 18).

PTX1317 Figure 9, Initial Expert Report of Gabriel Weintraub Monthly Advertiser Spend for AdX and Rival Exchanges. This document includes information regarding Zedo's impressions

trends, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 19).

PTX1318 Figure 10, Initial Expert Report of Gabriel Weintraub Monthly Net Revenue for AdX and Rival Exchanges. This document includes information regarding Zedo's revenue trends, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Zedo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Roy de Souza (Exhibit 1 ¶ 20).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Zedo, Inc. respectfully requests that this Honorable Court grant Zedo's request to redact Zedo's name in the trial exhibits proposed by Plaintiffs, or alternatively to use a surrogate name, such as ABC, Inc. A proposed Order is attached as Exhibit 2.

Dated: July 26, 2024

Respectfully submitted,

/s/
Charles B. Molster, III (Va. Bar No. 23613)
Law Offices of Charles B. Molster, III PLLC
2141 Wisconsin Avenue, N.W.
Suite M
Washington, D.C. 20007
Office: (202) 787-1312
Cell: (703) 346-1505
Email: cmolster@molsterlaw.com


*Counsel for Zedo, Inc.*