UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>GOOGLE LLC,<br><br>    *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**SPECIFIC OBJECTIONS OF NON-PARTY YIELDMO, INC. TO USE OF <u>CONFIDENTIAL DOCUMENTS OR INFORMATION AT TRIAL</u>**

Pursuant to this Court's Order (Dkt. 871) and Local Rule 5(H), Non-Party Yieldmo, Inc. ("Yieldmo") respectfully files these specific objections to the use of Yieldmo confidential documents or information at the trial of this case, and in support thereof, states as follows:

**BACKGROUND**

Yieldmo is a privately held company that employs approximately 135 people in the U.S., the U.K and India. *See* July 26, 2024 Declaration of Richard Eaton, attached hereto as Exhibit 1. Between May 23, 2024 and June 6, 2024, Mr. Eaton received five (5) emails from the U.S. Department of Justice ("DOJ") informing him about Confidential Yieldmo information that was being maintained under seal in the above-captioned case, but also informing him that unless Yieldmo took steps to request the Court to continue to maintain that Confidential Information under seal, there was a possibility that the Confidential Yieldmo Information would not stay under seal and instead would be made public. Copies of these emails were attached as Exhibit 2 to Non-Party Yieldmo's Response In Support Of Plaintiffs' And Defendant's Motions To Seal. Dkt. 840.

1

In their Exhibit Lists (Dkts. 892 (as amended by 923) and 894), Plaintiffs identified to Yieldmo 30 potential trial exhibits relating to Yieldmo, and Google identified 25 such documents.[1] These are all documents that include information from documents produced by Yieldmo in response to federal subpoenas that were marked as Confidential or Highly Confidential.

The Yieldmo proposed trial exhibits include take rates, market share, ad spend, competitive trending information, and competitive position and other highly confidential, proprietary and competitively sensitive financial and other information. *Id.* ¶ 5. This information constitutes confidential financial and business information that, if disclosed, would likely cause irreparable harm to Yieldmo, including but not limited to loss of competitive advantage and financial harm. *Id.* ¶ 7.

In fact, if information regarding take rates and spend is disclosed, then competitors can derive revenue numbers (also referred to as "ad exchange fees"). Similarly, if spend and revenue numbers are disclosed, then take rates can be derived – again, very highly confidential and proprietary information the disclosure of which would cause irreparable injury to Yieldmo, as well as other competitors in the industry. *Id.* ¶ 6.

Further, the public disclosure of the information contained in these proposed exhibits would also be of very substantial concern to other competitors in this industry. *Id.* ¶ 10.

---

[1] Both Plaintiffs and Google reserved the right to amend their exhibit list and use additional exhibits at trial, including for impeachment. *See* Plaintiffs' Trial Exhibit List at 1, Dkt. 892; Defendant Google LLC's Trial Exhibit List at 1, Dkt. 894. Yieldmo accordingly reserves the right to object to any new or additional proposed use of its confidential information at trial. Yieldmo also reserves the right to object to the use of any of its documents or information at trial.

These concerns also apply with equal force to trends in the industry regarding market share, take rates, gross ad spend and the like, even with respect to public companies where such information has not previously been exposed to the public. *Id.* ¶ 11.

The Yieldmo information at issue also constitutes core financial information for Yieldmo's business. It reveals how Yieldmo charges for its services, as well as the market penetration and success of its exchange, and shows how Yieldmo's rates compare to those charged by others in the industry. This information is not available to the public and would be of significant benefit to competitors looking for ways to undercut Yieldmo, or otherwise take market share. *Id.* ¶ 8. Portions of the documents at issue list rates charged by Yieldmo and analyze them in comparison to rates charged by Yieldmo's competitors, information that would cause significant harm to Yieldmo if disclosed to its competitors. *Id.* ¶ 9.

In addition, portions of the documents would enable competitors, Wall Street analysts and others to derive rates charged by Yieldmo and analyze them in comparison to rates charged by other competitors, information that would harm Yieldmo if disclosed to such competitors. *Id.* ¶ 10.

Although Plaintiffs and Google have declined to provide unredacted versions to counsel for Yieldmo of the documents that Plaintiffs and Google say they may use at trial, Yieldmo has attempted as best it can to carefully review these proposed exhibits and made good faith efforts to identify narrowly tailored redactions that protect Yieldmo's commercially sensitive business information, while also permitting public disclosure of the vast majority of the documents and the information contained therein.[2]

---

[2] Because Yieldmo does not have access to the unredacted trial exhibits, and is thus unable to provide such documents to the Court, Yieldmo respectfully requests that Plaintiffs and Google be ordered to provide unredacted copies of all such exhibits to the Court *in camera* if the Court

After conferring with the parties, and consistent with this Court's instruction, Yieldmo now respectfully requests very limited redactions to the exhibits that Plaintiffs and Google say they will use at trial, specifically to *only include the redaction of any identification of Yieldmo as a referenced exchange in any of the proposed exhibits (or the use of a surrogate name, such as XZY, Inc.).*

Yieldmo respectfully submits that this is very reasonable procedure to avoid the significant harm, prejudice and competitive disadvantage that Yieldmo (and other non-parties) will suffer if such redaction is not required, and is completely consistent with Judge Anderson's ruling of July 11, 2024 in Dkt. 903, which stated: "In order to protect the interest of non-parties, the portions of figures 4, 5, 7 and 8 indicating the names of the companies corresponding to those figures shall remain under seal," and "the names of the non-parties are to be redacted" from the public versions of the documents. *See* Order at Dkt. 903, ¶ 2; *see also Id.* at ¶¶ 4, 6, 8, 11, and 15.  *See also* July 26, 2024 Declaration of Richard Eaton (incorporated herein by reference) (Exhibit 1) that articulates the specific harm, prejudice and competitive disadvantage that Yieldmo would suffer, on a document by document basis, should Yieldmo's confidential and proprietary business information and competitively sensitive information become public, and available to its competitors.

Yieldmo also notes that it would indeed be a perverse result if a governmental antitrust enforcement action was to cause harm, prejudice and competitive disadvantage to the innocent

---

believes that having unredacted versions of the proposed exhibits would aid the Court in evaluating Yieldmo's Specific Objections. In addition, should the Court believe that Yieldmo has failed to meet its burden regarding the relief requested, Yieldmo respectfully requests that Plaintiff's and Google be ordered to provide unredacted copies of all such exhibits to Yieldmo and its counsel, so that additional arguments and information may be provided to the Court.

competitors (here, the non-parties) of the targeted enterprise (here, Google) in the very industry that the enforcement action is designed to protect (here, the ad tech business).

## LEGAL STANDARDS

"Trial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." Local Civ. R. 5(H). When "efforts are made to seal documents offered into evidence before a court in the course of a public jury trial," the "First Amendment guarantee of public access, with its attendant requirement to weigh competing interests, applies." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 579 (E.D. Va. 2009). The district court must give "the public notice of the request to seal and a reasonable opportunity to challenge the request,"[3] "consider less drastic alternatives to sealing," and, "if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (citing *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988)). "When the First Amendment provides a right of access, a district court may restrict access only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* at 575 (internal quotation markets and citation omitted). " One exception to the public's right of access" to judicial proceedings, including trials, applies when "such access to judicial records could provide 'a source[] of business information that might harm a litigant's competitive standing.'" *Woven Elecs. Corp. v. Advance Grp., Inc.*, 930 F.2d 913 (4th Cir. 1991) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598, (1978)).

---

[3] "Here, public notice of filing the exhibits under seal [is] achieved by [Yieldmo's] public filing of [this request to seal] and [its] memorand[um] in support." *Abu-Eid v. Discover Prod., Inc.*, No. 1:20-CV-1450, 2021 WL 9969142, at *1 (E.D. Va. June 2, 2021).

**ARGUMENT**

I. **The Court Should Permit Very Limited Redactions to the Exhibits that Relate to Yieldmo to Prevent the Disclosure of Yieldmo's Confidential Information**

Yieldmo only requests the redaction of Yieldmo's name from the proposed trial exhibits of Plaintiffs and Google, or alternatively that a surrogate name be used, such as XYZ, Inc. There is absolutely no need for Yieldmo's name to be used in these documents, and this very simple redaction will spare Yieldmo the significant harm, prejudice and competitive disadvantage that will occur if Yieldmo's confidential and proprietary competitive business information is disclosed to its competitors, and the public. As explained in more detail below with respect to each document, Yieldmo would be put at a competitive disadvantage if this internal data were exposed. *See East West, LLC v. Rahman*, 2012 WL 3841401, at *3 (E.D. Va. Sept. 4, 2012) (granting motion to seal expert reports containing "confidential business information and other trade secret protected information," including "sensitive financial data . . . the disclosure of which would be highly likely to cause significant harm to the business competitive position of [the] part[y]"); *Rxd Media, LLC v. IP Application Dev. LLC*, 2019 WL 8112894, at *1 (E.D. Va. June 10, 2019) (allowing redaction of "confidential and proprietary information, including Apple's branding processes, trademark search strategies, and steps it takes to protect intellectual property when launching new products and services") (internal quotation omitted).

**Plaintiffs Trial Exhibits Regarding Yieldmo**

Counsel for Plaintiffs has indicted to counsel for Yieldmo that Plaintiffs may use the exhibits identified below at trial that reference Yieldmo, and/or Yieldmo's commercially sensitive business information. For each such proposed exhibit, Yieldmo states the following specific objections, incorporates Mr. Eaton's July 26, 2024 Declaration by reference (which provides more detail regarding the likely harm to Yieldmo if the information was to be made

6

public without the very limited redaction requested by Yieldmo), and asserts that Yieldmo's proposal to redact Yieldmo's name is the most narrowly tailored procedure to avoid the harm, prejudice and competitive disadvantage to Yieldmo if the materials were made public without redacting Yieldmo's name (or using a surrogate name, like XYZ, Inc.):

PTX1199 Figure 4, Initial Expert Report of Timothy Simcoe Effective Take Rate for Worldwide Open Web Display + Video Outstream Impressions. This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 13).

PTX1200 Figure 5, Initial Expert Report of Timothy Simcoe Worldwide Open Web Display Impressions. This document includes information regarding Yieldmo's worldwide impressions, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 14).

PTX1202 Figure 7, Initial Expert Report of Timothy Simcoe Average Spend Per 1,000 Worldwide Impressions, 2018-2021. This document includes information regarding Yieldmo's average dollar spend which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 15).

PTX1205 Figure 15, Initial Expert Report of Timothy Simcoe But-for Comparable Take Rates, Worldwide Impressions. This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 16).

PTX1213 Figure 25, Initial Expert Report of Timothy SimcoeBut-for Comparable Take Rates, US Impressions. This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 17).

PTX1233 Figure 51, Initial Expert Report of Robin S. Lee AdX and third-party ad exchanges' shares of ad exchange fees from worldwide indirect open-web display transactions (2022). This document includes information regarding Yieldmo's ad exchange fees (revenues) which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 18).

PTX1237 Figure 47, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022). This document includes information regarding Yieldmo's market share of impressions, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 19).

PTX1238 Figure 48, Initial Expert Report of Robin S. Lee AdX and third-party ad exchanges' shares of worldwide indirect open web display impressions among ad exchange (2022). This document includes information regarding Yieldmo's market share of impressions, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 20).

PTX1239 Figure 49, Initial Expert Report of Robin S. Lee AdX earns consistently high net revenues from the sale of worldwide indirect open-web display impressions (2018–2022). This document includes information regarding Yieldmo's net revenues, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 21).

PTX1240 Figure 50, Initial Expert Report of Robin S. Lee AdX maintains a significant share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022). This document includes information regarding Yieldmo's ad exchange fees (revenues), which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 22).

PTX1260 Figure 90, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of

US indirect open-web display impressions transacted through ad exchanges (2018–2022) PTX1261 Figure 91, Initial Expert Report of Robin S. Lee AdX and third-party exchanges' shares of US indirect open-web display impressions among ad exchanges (2022). This document includes information regarding Yieldmo's market share of impressions, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 23).

PTX1261 Figure 91, Initial Expert Report of Robin S. Lee AdX and third-party exchanges' shares of US indirect open-web display impressions among ad exchanges (2022). This document includes information regarding Yieldmo's market share of impressions, which constitutes highly confidential and competitively sensitive Yieldmo information that is not public. Disclosure of this information would likely cause irreparable harm to Yieldmo, including but not limited loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 24).

PTX1262 Figure 92, Initial Expert Report of Robin S. Lee AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022). This document includes information regarding Yieldmo's net revenues, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 25).

PTX1263 Figure 93, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of ad exchange fees from US indirect open-web display impressions(2018–2022). This document includes information regarding Yieldmo's market share of revenue, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 26).

PTX1265 Figure 95, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of worldwide indirect open-web display spend transacted through ad exchanges (2018–2022). This document includes information regarding Yieldmo's market share of ad spend, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 27).

PTX1266 Figure 96, Initial Expert Report of Robin S. Lee AdX maintains a significant share of US indirect open-web display spend. This document includes information regarding Yieldmo's add spend, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the

loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 28).

PTX1280 Figure 110, Initial Expert Report of Robin S. Lee Summary of worldwide open-web indirect display take rates among ad exchanges. This document includes information regarding Yieldmo's "take rates," which constitute highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 29).

PTX1292 Figure 122, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of worldwide indirect open-web display impressions transacted through ad exchanges (2018–2022). This document includes information regarding Yieldmo's market share of impressions, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 30).

PTX1293 Figure 123, Initial Expert Report of Robin S. Lee AdX maintains a significant share of ad exchange fees from worldwide indirect open-web display transactions (2018–2022). This document includes information regarding Yieldmo's market share of revenues, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 31).

PTX1294 Figure 124, Initial Expert Report of Robin S. Lee AdX maintains a substantial share of US indirect open-web display impressions transacted through ad exchanges (2018–2022). This document includes information regarding Yieldmo's market share of impressions, which constitute highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 32).

PTX1295 Figure 125, Initial Expert Report of Robin S. Lee AdX earns consistently high net revenues from the sale of US indirect open-web display impressions (2018–2022). This document includes information regarding Yieldmo's market share of revenues, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 33).

PTX1306 Figure 137, Initial Expert Report of Robin S. Lee Monthly coverage of exchanges that produced data (impressions). Yieldmo is unable to determine the substance of the document based on the description provided, and requests that an unredacted version be produced by Plaintiffs for evaluation and objection as necessary. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 34).

PTX1307 Figure 138, Initial Expert Report of Robin S. Lee Monthly coverage of exchanges that produced data (spend). Yieldmo is unable to determine the substance of the document based on the description provided, and requests that an unredacted version be produced by Plaintiffs for evaluation and objection as necessary. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 35).

PTX1313 Figure 5, Initial Expert Report of Gabriel Weintraub Monthly Number of Demand Sources that Served at Least One Impression Through AdX and Rival Exchanges. This document includes information regarding Yieldmo's number of demand sources, which constitutes - confidential and competitively sensitive information that is not public, the disclosure of which could cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 36).

PTX1314 Figure 6, Initial Expert Report of Gabriel Weintraub Monthly Volume of Impressions Won for AdX and Rival Exchanges. This document includes information regarding Yieldmo's impressions trends, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 37).

PTX1317 Figure 9, Initial Expert Report of Gabriel Weintraub Monthly Advertiser Spend for AdX and Rival Exchanges. This document includes information regarding Yieldmo's impression trends, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 38).

PTX1318 Figure 10, Initial Expert Report of Gabriel Weintraub Monthly Net Revenue for AdX and Rival Exchanges. This document includes information regarding Yieldmo's revenue trends, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 39).

PTX1396 Figure 29, Rebuttal Expert Report of Robin Lee Dr. Israel's estimate of US ad

exchange fees for indirect web nonvideo advertising (2020–2022). This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 40).

PTX1364 Figure 3, Rebuttal Expert Report of Timothy Simcoe Comparables But-For Take Rate Estimates Excluding One Third Party Exchange, Worldwide, Impressions. This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 41).

PTX1365 Figure 4, Rebuttal Expert Report of Timothy Simcoe EVENT STUDY BUT-FOR TAKE RATE ESTIMATES CONTROLLING FOR ADX AND THIRD-PARTY EXCHANGE TRENDS, WORLDWIDE IMPRESSIONS. This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 42).

### Google's Trial Exhibits Regarding Yieldmo

Google asserts that it may use the following exhibits at trial that reference Yieldmo, or Yieldmo's commercially sensitive business information, and Google has provided the descriptions below of the proposed exhibits. Yieldmo's specific objections to each such document are also provided below, with reference to Mr. Eaton's Declaration of July 26, 2024:

**DTX 1893, DTX 2049,** and **DTX 2064** show combined revenue shares for various combinations of one buying tool and one exchange. Yieldmo is named as the exchange in several of the combinations. These documents include information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 44).

**DTX 1956** shows individual amounts of ad spending on Yieldmo and other ad exchanges for 2019 and 2022. This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of

competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 45).

**DTX 1989** and **DTX 1991** aggregate data from Google and numerous third parties. Market shares calculated from that aggregated data are listed individually for each included company, including Yieldmo. These documents include information regarding Yieldmo's market share, which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 46).

**DTX 1651** and **DTX 1892** show individual revenue shares for Yieldmo and other ad exchanges for 2020, 2021, and 2022. These documents include information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 47).

**DTX 2051** and **DTX 2065** show individual exchanges' (including Yieldmo's) average revenue share, average CPM, and number of impressions between January 2019 and March 2023. These documents include information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 48).

**DTX 2053** and **DTX 2054** show individual revenue shares for Yieldmo and other ad exchanges. Yieldmo's revenue share is shown individually for 2018, 2019, 2020, 2021, 2022, and 2023. These documents include information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 49).

**DTX 2066** shows individual revenue shares for Yieldmo and other ad exchanges from January 2019 through March 2023. This document includes information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 50).

**DTX 2067** and **DTX 2069** show individual revenue shares for Yieldmo and other ad exchanges from 2016 through 2023. These documents include information regarding Yieldmo's "take rates," which constitutes highly confidential and competitively sensitive information that is not public, the disclosure of which would likely cause irreparable harm to Yieldmo, including the loss of competitive advantage and financial harm. *See* July 26 Declaration of Richard Eaton (Exhibit 1 ¶ 51).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Yieldmo, Inc. respectfully requests that this Honorable Court grant Yieldmo's request to redact Yieldmo's name in the trial exhibits proposed by Plaintiffs and Google, or alternatively to use a surrogate name, such as XYZ, Inc. A proposed Order is attached as Exhibit 2.

Dated:  July 26, 2024                         Respectfully submitted,

/s/
Charles B. Molster, III (Va. Bar No. 23613)
Law Offices of Charles B. Molster, III PLLC
2141 Wisconsin Avenue, N.W.
Suite M
Washington, D.C. 20007
Office:  (202) 787-1312
Cell:  (703) 346-1505
Email:  cmolster@molsterlaw.com


*Counsel for Yieldmo, Inc.*