**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR AN ADVERSE INFERENCE**

## INTRODUCTION

Aware of the risk of "several significant legal and regulatory matters," Google—from the highest levels of the organization—trained its employees to channel discussion of "hot topics" that "may be used against [Google]" and were ████████████ to Google's internal instant-message chat tools.[1] Ex. 2 at -619-20; Ex. 4H. Google also instituted a policy that, absent manual intervention by business employees on a chat-by-chat basis, all internal chat communications would be automatically destroyed after 24 hours. Google adopted this auto-delete policy knowing that its employees' communications could someday be scrutinized by a Court such as this one. Unsurprisingly, many Google employees subject to litigation holds, including current and former employees designated to testify at this trial, either did not take the affirmative steps required to rescue those relevant chats from deletion or, worse, took affirmative steps to ensure such chats would be deleted 24 hours later. That contemporaneous evidence is now lost forever.

Google's spoliation is the predictable and intended result of the intersection of Google's broader policies and culture with its specific litigation choices here. Google's stated goal in implementing these policies and practices was to avoid having its "sensitive" communications "discovered by an adversary and used against . . . Google." Ex. 1 at 13. To that end, Google trained its employees to "communicate with care," which may sound harmless but was, in reality, a roadmap for employees to communicate in ways that would not be discoverable. With respect to this litigation, in particular, not only did Google choose to continue its policy of auto-deletion of chats after 24 hours, Google also chose to delay placing many of its employees on a

---

[1] Exhibit 4 is a compendium of all chats submitted with this motion, organized by topic. Individual chats are cited in this motion by letter within Exhibit 4.

litigation hold in this case until months (or even years) after Google was required to preserve their documents. *See* Appendix A. As a result, even for those employees who managed to overcome the auto-delete default, their chats were nevertheless deleted because they were not timely placed on litigation holds so even "history on" chats were not preserved under Google's normal document retention polices.

Google's policies and conduct achieved their desired goal: litigants, including the United States and its co-Plaintiffs were deprived of valuable, likely irreplaceable, discovery. While neither Plaintiffs nor the Court can know the volume of chats destroyed because of Google's conduct, there are some facts that Plaintiffs do know. Until February 2023 (after this litigation was filed), Google maintained its auto-deletion policy for instant message chats. The total volume of chats produced by Google in this case is remarkably low in proportion to the volume of other communications (*e.g.*, emails) produced from the same employees. The limited chats that were produced illustrate that even after Google employees were placed under litigation hold (in many cases, belatedly), those very employees still chose to make chats "history off" (and therefore subject to auto-deletion after 24 hours), including for the express purpose of evading discovery. Indeed, Google has now admitted that at least eight document custodians, including ***at least five trial witnesses***, in this case ███████████████████████. Ex. 3 at 2-3.

Google, like any company, has discretion to manage the legal risks associated with operating its business. It can set reasonable document retention policies, train employees, and more. But that discretion is not unbounded. Specifically, Google—no less than any other litigant before this Court—must play by the rules. It too is subject to the Federal Rules of Civil Procedure and the laws governing "the judicial process . . . to uncover the truth." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). As described in detail below, Google's

conduct, especially when viewed in the context of its policies and stated goals, is deeply troubling. Google has stretched and weaponized the attorney-client privilege and its protections; it has intentionally spoliated evidence; and, despite branding itself as a world-class technology innovator, it has engaged in a series of repeated errors and delays in production of discovery, all of which have served Google's broader, strategic ends of impeding its adversaries' access to information to which they are entitled.

To be sure, notwithstanding Google's goals and resulting conduct, Plaintiffs will still adduce extensive evidence at trial that will prove Google violated antitrust laws. But after Plaintiffs' careful evaluation of the factual record, including its impact on witnesses that both sides have indicated may testify at this trial, Plaintiffs are compelled to bring this motion to hold Google accountable for conduct that subverts the truth-finding purpose of the judicial process. Specifically, Plaintiffs request that the Court, pursuant to either Federal Rule of Civil Procedure 37(e) or its inherent power, presume at trial that the spoliated chats contained information unfavorable to Google with respect to the issues in dispute. In the alternative, Plaintiffs request that the Court take other appropriate steps, some of which are outlined below, to level the evidentiary playing field and hold Google accountable for its improper conduct.

## FACTUAL BACKGROUND

### A.    Google's "Instant-Messaging Culture" and Decision to Auto-Delete Chats

Throughout the discovery period in this case, Google employees regularly communicated about business matters through internal "chat" functions on their computers and mobile devices. Since at least 2008, Google has acknowledged the pervasive "instant messaging culture" of its business, which results in Google employees "rely[ing] pretty heavily on chat history for day-to-day work" and using the chat function "interchangeably with email." Ex. 2 at -619. Consistent with this culture, Google employees have interchangeably used both chats and email to discuss

Google's ad tech products since at least April 2009. *See*, *e.g.*, Ex. 4LL. For example, in late 2023, the Court ordered Google's counsel to conduct interviews of 35 current or former Google employees about chat preservation policies. Hr'g Tr. 16:4-18 (Sept. 1, 2023), ECF No. 398. Based on Google's counsel's own interviews (Plaintiffs were not invited to participate), 16 of 35 interviewees—including 11 of 18 interviewees who appear on a trial witness list in this ███████

███████████████████████████████████████████████████████

███████████████████████████ Ex. 3 at 2-3. Moreover, at least seven additional individuals (1) testified at deposition that ████████████████████████████████████[2] (2) had a dramatic increase in the volume of substantive chats produced after Google suspended automatic deletion in February 2023, *see* Appendix B, or (3) participated in dozens of substantive chats produced by Google, despite ████████████████████████████████████████████

███████████, *id.*; *see also* Ex. 4MM; Ex. 4NN; Ex. 4OO; Ex. 4PP; Ex. 4QQ.

In September 2008, Google's chief legal officer, Kent Walker, established a new document preservation policy for chat messages. His memo setting forth this policy (the "Walker Memo") observed that written communications, especially those "about hot topics" (*e.g.*, "whether something . . . might violate a law") "may be used against . . . us," including "in legal discovery." Ex. 2 at -619. The Walker Memo explained that the new chat retention policy was therefore designed to "help avoid inadvertent retention of instant messages" in light of "several significant legal and regulatory matters," including an ongoing antitrust investigation by the Department of Justice. *Id.*; *see* Ex. 5 at -487.

The 2008 policy change affected the "history" setting of chats, which is a term used by Google that dictates the length of time a chat is available to participants and maintained by

---

[2] Ex. 8 ███████ at 36:3-38:8; Ex. 9 ███████ at 386:7-390:5; Ex. 10 ███████ at 212:20-213:11.

Google in the ordinary course of business. Pursuant to the Walker Memo, Google changed the default history setting for all employee chats from what Google named "history on" to "history off" (or "off the record" chats). Ex. 2 at 619. This meant Google permanently deleted such messages, by default, after 24 hours, ████████████████████████████████████ ████████████████████. *See, e.g.*, Ex. 6; Ex. 7. For chats with "history on" (or "on the record" chats), Google ████████████████████████████████████████████ ████████████████████████████████████. Ex. 6; Ex. 7. Most Google employees were ████████████████████ making "history off" the default for chat messages because it was ████████████████████████████████ Ex. 5 at 484-87; *see also* Ex. 2 at 619 (new policy will ████████████████████████); Ex. 11 at 204 (Google employees ████████████████████████████████ ████████████████).



### B.   Google Acknowledges a Duty to Preserve Relevant Evidence

On October 7, 2019, the Antitrust Division of the Department of Justice (the "Division") issued a civil investigative demand ("CID") to Google seeking information about Google's ad tech business as part of an investigation of violations of Section 2 of the Sherman Act, which culminated in Plaintiffs' Complaint. Ex. 12. That CID sought, among other things, "chats, instant messages, text messages, [and] messaging applications" about the products and much of the conduct at issue in this case, such as Dynamic Allocation, Unified Pricing, and interoperability of third-party ad tech products with Google's ad tech products. *Id*. at 10-13; *see* Appendix D (timeline of events related to spoliation).[3]

---

[3] In addition to ad tech documents, the October 2019 CID also sought documents related to other Google business units. *See*. Ex. 12. On October 20, 2020, the date the Division filed an enforcement action against Google relating to its Search business, the Division issued a separate

Google assured the Division multiple times that it was preserving documents responsive to these CIDs, specifically including chats. *See* Ex. 15 at 11 (Nov. 20, 2019) (claiming it has ██████████████████████ and has ██████████████████████████████████ Ex. 16 at 4 (Nov. 19, 2020) (stating ██████████████████████████████ and such ██████████████████ ). The Division later reminded Google of its preservation obligations, including specifically its duty to preserve chats as "on the record." Ex. 17 (Dec. 13, 2020). Google responded by ██████████████████ ██████████████████████████████████ and reassuring the Division that ████████████████████████████████████ ████████████████████ Ex. 18 at 1-2 (Jan. 28, 2021) (emphasis added).

Google anticipated litigation arising from the Division's CIDs almost immediately. As reflected in the privilege log Google disclosed in this case, its lawyers began preparing ██████ ██████████ that were ████████████████ in ████████ Ex. 19. On June 2, 2023, Google again confirmed to this Court that Google anticipated litigation arising from the Division's ad tech investigation in December 2019. *See* ECF No. 245, at 10 & n.4; ECF No. 284-30 ¶ 5. On May 27, 2020, Google was sued by private plaintiffs alleging monopolization claims similar to those at issue here. *See Grand Atlas Tours v. Google LLC*, No. 20-cv-3556 (N.D. Cal.).

As the Division's investigation progressed, the Division and Google agreed upon more than 150 custodians from whose files Google would collect and produce documents, 107 of whom continued as custodians in the litigation. In litigation, that number grew to a total of 171

---

CID similar in substance to the October 2019 CID but dedicated only to Google's ad tech business. Ex. 13. Google also received a subpoena from Plaintiffs State of California (June 2020) and State of New York (March 2021), which triggered an identical, independent duty to preserve relevant documents, including chats. Ex. 14.

agreed-upon custodians. Appendix A provides lists those custodians, when each was designated a custodian, and when Google reports that each was sent a litigation hold notice. Appendix B provides the same information for the 36 Google employees listed on either side's trial witness list, along with the total number of chat messages produced from each witness's files.

### C.   Google Failed to Preserve Document Custodians' Chat Messages

Despite Google's anticipation of litigation on these subjects by at least ███████████ the Division's express warnings to preserve relevant chats in 2020, and Google's agreement to produce relevant documents from specific Google employees' files, Google continued its policy of automatically deleting chats unless employees subject to litigation holds manually turned "history on" for chats that needed to be preserved. It persisted with the history-off default and resulting auto-deletion for all chats and all employees, including those under legal hold, until February 8, 2023, fifteen days after this action was filed and two days before the United States filed, following months of conferral, a motion for spoliation sanctions against Google in the *Search* monopolization case pending in the U.S. District Court for the District of Columbia.

Manually overriding the default setting on a chat-by-chat basis was a cumbersome and complicated process. *See In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 988 (N.D. Cal. 2023) ("*Epic*") (Google employee testifying that "the thought process that he might need to save something that was said because he was subject to a legal hold simply 'doesn't occur because . . . it's impossible to think that way'").[4] At least four separate requirements had to coalesce for Google employees to successfully preserve chats, and thereby, for Google to meet its obligations. *First*, if business employees were even aware of the default setting for chats, they also needed to know how to manually change from history "off" to history "on." *Second*, these

---

[4] For further discussion of the chat-spoliation sanctions in the *Epic* litigation, see *infra* at 14-15.

non-lawyer employees had to understand and remember, on a daily basis, which topics were the subject of actual or anticipated litigation and thus needed to be preserved. *Third*, simultaneous with conducting their business, employees needed to assess in real time when a chat conversation had begun to touch one of those topics. *Fourth*, employees had to remember to turn "history on" at or right before that moment. Google employees were asked to make that calculus for every spontaneous chat interaction with their colleagues day in, day out, for years.

Even if an employee changed their default setting to "history on," however, their chats were not necessarily preserved. For example, Google employee and trial witness ███████



Ex. 4Y, at -121. Likewise, ████████ ████████████████████████████████████. *See* Ex. 7 at 1.

The evidence we now have demonstrates that Google destroyed a significant volume of relevant chats after the United States issued the 2019 CID. For example, in late 2023, when the Court instructed Google to interview 35 of its current and former employees about Google's chat retention policies, ████████████████████████████ Ex. 3 at 3. It makes sense, then, that Google produced far more chats from █████████ files than any other trial witness. *See* Appendix B. Moreover, ████████████████████████████ ████████████████████████████████████████████████. Ex. 3 at 3. These ████ employees are not outliers. Google's document production contains numerous examples of

employees seeking to make chats "history off" to ensure they were not discoverable. *See*

Appendix C (collecting examples); Exs. 4A-4X. For example,



Ex. 4H.

Also,

.[5]

The United States first raised questions in June 2021 about whether Google custodians

may not be complying with Google's litigation hold after a Google employee

Ex. 20

at 2 (June 21, 2021). In response to that testimony, the United States notified Google that its

"custodians may have failed to record responsive chats as 'on the record.'" *Id.* The United States

also requested additional information from Google about the volume of history-on chats it had

preserved and collected, *id.* and it reiterated that request after discovering in Google's document

production examples of Google employees subject to litigation hold requesting to turn chat

history off. Ex. 21 (July 23, 2021). Plaintiffs have never authorized or ratified Google's chat

retention conduct, nor could they have done so at that time, given their incomplete picture of

such conduct. Thus, Plaintiffs continued to investigate this issue in litigation, including by

insisting on search terms that would capture detectable examples of spoliation, using document

---

[5] Ex. 4Z (



); Ex. 4AA (
); Ex. 4BB

); Ex. 4CC

.

requests to discover potential witnesses' efforts to evade preservation obligations, and pursuing corporate testimony about Google's efforts to preserve (or avoid preserving) relevant documents.

Despite Google's repeated assurances that it was preserving documents, it failed to ensure that employees under legal hold were sufficiently aware of and complying with their chat preservation obligations. For example, despite the clunkiness of the thought process required of a non-lawyer employee to turn history from "off" to "on" to preserve relevant chats, *see supra* at 7-8, Google made no attempt to audit whether employees subject to litigation holds were, in fact, doing so. Hr'g Tr. 46:8-17, 121:7-20, *Epic*, 21:-md-2981 (N.D. Cal.), ECF No. 418 ("*Epic* Sanctions Tr."); *see Epic*, 664 F. Supp. 3d at 993 (finding Google "intentionally decid[ed] not to check up on employee decisions to ensure that relevant evidence was being preserved," evincing "a 'don't ask, don't tell' policy for Chat preservation"). Google failed to take even basic steps, such as informal interviews or sampling chats, to ascertain whether custodians using chats for substantive discussions were preserving those discussions or understood how to do so.

Google could have easily complied with its preservation obligations by changing the default chat setting to "history on" or otherwise automating the preservation of relevant messages. *See Epic* Sanctions Tr. 43:22-44:4, 58:19-24. Google even commercialized an e-discovery product called Google Vault that facilitates automatic preservation of chats and other communications.[6] Rather than increase preservation, Google instead ███████████████ ████████████████████████████████████. Ex. 22. Google also chose to outsource its preservation obligations to its non-legal employees. Foreseeably, those employees either did not understand the need to preserve relevant chats, did not remember to override

---

[6] *See* Vault, Google Workspace Admin Help, https://support.google.com/a/answer/2462365.

Google's technological defaults of automatic deletion, or deliberately chose not to preserve chats. As a result, an untold volume of relevant chats, going back years, has been lost forever.

### D.     <u>Google Failed to Issue Timely Legal Holds</u>

Google also delayed issuing litigation holds, which resulted in Google deleting even "history on" chats. In the normal course, absent a litigation hold, Google only ███████████ ███████████████████████████████████████████████. *See* Ex. 23 at 508. But Google ████████████████████████████████████████████████. *Id.*

In sworn responses in November 2023 to discovery concerning its chat deletion policies, Google revealed that ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████. *See* Ex. 3 at app. B; Appendix A. Similarly, of the ███████████████████████████████████████████████████████████ ███████████████████████████████████. *Id.*

### E.     <u>Google Trained Employees to Avoid Creating Discoverable Communications</u>

In addition to its document retention policies, Google used a mandatory training program known as "Communicate with Care" to teach its employees various ways to ensure that "sensitive" information about the business would be "less likely . . . [to] be discovered by an adversary and used against . . . Google," especially in antitrust litigation. *See* Ex. 1 (training employees how "to ensure you are communicating with care").[7] Two aspects of "Communicate with Care" are most salient to the present motion.

---

[7] Google's Communicate with Care training materials focus specifically on how to help the company avoid *antitrust* liability. *See, e.g.*, Ex. 24, at 663 (providing detailed antitrust-focused guidance on document creation: "Words matter. Especially in antitrust law.").

*First*, after the Walker Memo was in place, "Communicate with Care" advised Google employees that discussing sensitive topics via "off the record" chats was "[b]etter than sending [an] email" because such chats "are not retained by Google as emails are." *Id*. at 13. That training fostered a culture whereby Google employees viewed auto-deleted, "history-off" chats as safe from scrutiny and discovery, with one remarking ████████████ that such chats were ████████—an apparent reference to the slogan, ██████████████████████████ Ex. 4DD. Acting on that training, multiple employees subject to litigation holds, including five trial witnesses, diverted relevant discussions away from formats that would be preserved, like email, to formats that would be deleted, like history-off chats. *See* Appendix C. For example, in ████ ████, trial witness ██████████ asked a colleague to start an █████████████████ with ████ and trial witness ██████████ to discuss a substantive ad tech issue, despite ████ and ██████ having been added as custodians six months prior. Ex. 4G at 624; *see* Appendix B. Similarly, in ██████████, after trial witness ██████████ had said he was ██████████ during a discussion about an investigation by ████████████████████████████████, one of his colleagues ██████████████████████████████████████████████ ██████████████████████████████. Ex. 4EE at 261.

Google employees consciously channeled communications to "history-off" chats in order to prevent litigation adversaries from being able to discover relevant information. For example, trial witness ██████████ referred to ██████████ chats as ██████████ and history off chats as ██████████. *See* Ex. 4FF at 565. Another employee under legal hold told her colleague that she was ██████████████████████ because ██████████████████████████████ Ex. 4GG. And in a third illustrative example, a custodian who had been under litigation hold for

nine months told her colleagues, ███████████████ after her colleague asked ███████████

███████████████████████ Ex. 4HH.

Google's in-house counsel also encouraged or directed employees to move discussion of

████████ topics to history-off chats that would be automatically deleted. *See*, *e.g.*, Ex. 4II (in-

house counsel asking employees in ████████████, ████████████████████); Ex. 4JJ

(████████████████████████████████████████████████████████

████████ in a group chat with trial witness ████████████). Employees acted upon this advice

when communicating with their colleagues, even after employees were placed on litigation hold.

For example, in ████████████, a Google employed stated that ████████████████████

████████████████████ Ex. 4KK (emphasis added). A few months after

receiving a litigation hold, trial witness ████████████ wrote to a colleague, ████████████

████████████████████ Ex. 4B.

*Second*, "Communicate with Care" cultivated a corporate culture of hiding documents

from discovery by training Google employees to leverage pretextual claims of privilege,

including detailed instructions on how to craft an email that will appear to be subject to the

attorney-client privilege. *See*, *e.g.*, Ex. 1 at 30; Ex. 25 (providing ████████████████

████████████████████████████). Google employees acted

on this training by reflexively adding a lawyer ████████████████████ Ex. 4KK) and a

generic ████████ or ████████ such as ████████████ to the top of non-legal email discussions to

make them appear like genuine requests for legal advice. *See*, *e.g.*, Ex. 26; Ex. 27; Ex. 28; Ex.

29. However, Google lawyers rarely responded to these ostensible requests to ████████ Only

after litigation in a different matter did Google eventually produce many such "silent lawyer"

communications because they are not, in fact, privileged. Indeed, Google withheld dozens of

non-privileged documents from Plaintiffs for months or years under claims of privilege likely facilitated by "Communicate with Care" training, in some cases only producing them when faced with the prospect of a motion to compel. *See*, *e.g.*, Ex. 30; Ex. 31; Ex. 32 (all produced on June 17, 2024). For example, in a document the United States obtained only after challenging a privilege claim, Google's ███████████ marked an email ███████████ referring to Google ███████████████████, in an email to a non-attorney about a press-related messaging issue. Ex. 33. Mr. Pichai testified in *Epic* that he sometimes "marked e-mails privileged, not because [he was] seeking legal advice but just to indicate that they were confidential." *Epic*, Trial Tr. (Vol. 7) at 1321:17-24, 1323:5-17, ECF No. 840.

In addition to artificially withholding evidence from the record available to this Court, Google's casual invocation of the attorney-client privilege has also created administrative chaos. As of this filing, nearly a year after document discovery was set to be completed, Google's privilege claims remain in flux, with Google continuing to both withdraw privilege claims and claw back putatively privileged documents. This includes Google's June 17, 2024 production of over 40,000 documents as privilege "downgrades," and, remarkably, its July 21, 2024 claw back of 27 documents, including documents on both Plaintiffs' and Google's own trial exhibit lists and documents used in depositions conducted months ago. Also, some of Google's more-than 10,000 claw backs in this case have been produced and then clawed back multiple times.

### F.    Google Has Previously Been Found to Have Intentionally Spoliated Chats

In early 2023, Google's deletion of relevant chats came before the Honorable James Donato in the U.S. District Court for the Northern District of California. *See Epic*, 664 F. Supp. 3d 981 (N.D. Cal. 2023). Based on "a thorough and highly detailed record with respect to Google's chat preservation conduct," including an evidentiary hearing, the *Epic* court found:

- "Google employees routinely used Chat to discuss substantive business topics,"

14

- "Google has the technical ability to set Chat history to 'on' as the default for all employees who are subject to a legal hold, but it chooses not to,"

- "Google did not check to see if custodians were actually preserving relevant Chats as directed by the [legal] hold notice, and did nothing in the way of auditing or monitoring Chat preservation,"

- "Google employees who received a litigation hold in this case were unable or unwilling to follow the Chat preservation instructions, and sometimes disregarded the instructions altogether,"

- "Google left employees largely on their own to determine what Chat communications might be relevant to the many critical legal and factual issues in this complex antitrust litigation," and

- Google "intentionality manifested at every level within Google to hide the ball with respect to Chat."

*Id*. at 986-993. The *Epic* court ultimately held:

- "Google did not take reasonable steps to preserve electronically stored information that should have been preserved in the anticipation or conduct of litigation,"

- "[T]he deleted Chat evidence cannot be restored or replaced through additional discovery," and

- "Google intended to subvert the discovery process, and . . . Chat evidence was lost with the intent to prevent its use in litigation and with the intent to deprive another party of the information's use in the litigation."

*Id*. at 993-94 (cleaned up). The *Epic* court also instructed the jury that it could conclude that the

spoliated chats contained information harmful to Google's case, noting that ample evidence

would have supported a mandatory adverse inference.[8] *Epic*, Tr. 3229:19-3230:3, ECF No. 849.[9]

---

[8] Judge Donato commented on the "egregious" nature of Google's conduct, finding it to be "the most serious and disturbing evidence I have ever seen in my decade on the bench with respect to a party intentionally suppressing potentially relevant evidence in litigation," calling it "a frontal assault on the fair administration of justice." *Epic*, Trial Tr. (Vol. 16), 3228:19-23, ECF No. 849.

[9] The United States and co-plaintiffs filed a motion seeking sanctions for Google's chat spoliation conduct in the *Search* litigation, and that motion remains pending.

## LEGAL STANDARD

Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri*, 271 F.3d at 590. "A court's power to sanction spoliation derives from two sources: (1) Fed. R. Civ. P. 37(e); and (2) its inherent power to redress conduct which abuses the judicial process." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018) (cleaned up). The "analysis is similar" under both sources of authority. *Id*. at 104; Fed. R. Civ. P. 37(e).

To impose sanctions for spoliation under the Court's inherent power, the movant must show (1) "the adverse party had a duty to preserve documents or materials that may be relevant to the litigation or pending litigation," and (2) "the party breached this obligation, either by failing to preserve, or by destroying or altering, relevant materials or documents with a culpable state of mind." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011); *accord Silvestri*, 271 F.3d at 591-92. As to the requirement of "a culpable state of mind," *Kolon Indus.*, 803 F. Supp. 2d at 497, a party's conduct must be "willful[]" or "intentional," as opposed to merely "negligent," but "the party seeking sanctions need not prove bad faith." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). "[W]hen a proponent's intentional conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct," including "unfavorable inferences against the party responsible for the loss or destruction of the original evidence." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

The Court may also separately impose sanctions under Rule 37(e), which applies a two-step process. At the first step, one must establish spoliation of ESI by satisfying "four threshold requirements": (1) "ESI should have been preserved," (2) "ESI was lost," (3) "the loss was due

to a party's failure to take reasonable steps to preserve the ESI," and (4) "the ESI cannot be restored or replaced through additional discovery." *Steves & Sons*, 327 F.R.D. at 104. If a party establishes those elements, then the Court may proceed to the second step and determine what sanction, if any, is appropriate. *See GMS Indus. Supply, Inc. v. G&S Supply, LLC*, 2022 WL 853626, at *6 (E.D. Va. Mar. 22, 2022).

Two kinds of sanctions are available under Rule 37(e). *First*, if the spoliation resulted in "prejudice to another party," then the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "The range of such measures is quite broad," and "[m]uch is entrusted to the court's discretion." *Id*. advisory committee's note (2015). *Second*, if the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," then the Court may impose more severe sanctions, including the Court, as factfinder, "presum[ing] that the lost information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2). In other words, if a party establishes spoliation and prejudice, it may pursue "not-greater-than-necessary sanctions" under Rule 37(e)(1), without any showing of intent. *Wall v. Rasnick*, 42 F.4th 214, 222 (4th Cir. 2022). And if a party establishes spoliation and intent to deprive, it may pursue more serious sanctions, including an adverse presumption, without any showing of prejudice. This is because an intent to deprive "support[s] . . . an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37 advisory committee's note (2015).

## ARGUMENT

Google should be held accountable for depriving Plaintiffs of key evidence in this case by intentionally deleting employee chats. This spoliation of evidence was a direct result of Google's deliberate choices to automatically delete such chats by default and to foster a corporate culture in which Google encourages its employees to conduct relevant conversations using methods that

would not be discoverable. Google's policies and practices about chats were designed to deprive litigants—including government enforcement agencies—of valuable evidence, evidence that is now lost. Google's intentional spoliation of chats has prejudiced Plaintiffs and compromised the full and fair telling of the facts at trial. The Court should sanction Google's conduct by presuming that the spoliated chats were unfavorable to Google on all issues disputed at trial, including market definition, monopoly power, the anticompetitive nature of Google's conduct, and the harm from Google's conduct. In the alternative, if the Court is disinclined to impose an adverse presumption, it should at least impose an alternative sanction that, in the Court's judgment, cures the prejudice that Google's conduct has caused.

## I.  Google Had an Ongoing Duty to Preserve Relevant Chats Since 2019

Google had a duty to begin preserving relevant chats once it "reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (inherent power standard); *see Steves & Sons*, 327 F.R.D. at 107 (identical standard under Rule 37, satisfying requirement ESI "should have been preserved"). A governmental investigation that seeks evidence from a party triggers a duty for that party to preserve such evidence. *See Gerlich v. U.S. Dept. of Justice*, 711 F.3d 161, 171 (D.C. Cir. 2013) (holding that duty to preserve was "triggered . . . by a reasonably foreseeable [DOJ] investigation"); *United States v. Johnson*, 122 F. Supp. 3d 272, 344 (M.D.N.C. 2015) (government request for information that "the Government believed" was relevant "trigger[ed] a duty to preserve" that information). This means Google had a duty to preserve communications responsive to the ad-tech-focused CID the Division issued in October 2019 as of the time Google received that CID. Google affirmed that duty when it agreed to produce documents from the files of specific employees likely to possess relevant documents and issued litigation holds to them related to the Division's investigation.

At a minimum, Google had a duty to preserve chats responsive to the Division's CID ██████ ██████████████████████████, when Google first ██████████████████████████ in preparing documents in response to the Division's ad tech investigation. *See*, *e.g.*, *Kettler Int'l, Inc. v. Starbucks Corp.*, 81 F. Supp. 3d 495, 501 (E.D. Va. 2015) (duty to preserve triggered by party's invocation of work-product doctrine because it is limited to "documents prepared in anticipation of litigation"); *LendingTree, LLC v. Zillow, Inc.*, 2014 WL 1309305, at *10 (W.D.N.C. Mar. 31, 2014) ("LendingTree's duty to preserve evidence arose no later than its assertion of the attorney work product privilege."); *see also supra* at 6.

## II.   Google Destroyed Relevant Chats Because It Failed to Take Reasonable Steps to Preserve Them

Google destroyed relevant chats because of Google's failure to take reasonable steps to preserve them. This meets the second and third "threshold" requirements of Rule 37(e), *see supra* at 16-17, and the requirement under the inherent power that a party "breach" its duty to preserve by "failing to preserve . . . relevant materials," *Kolon Indus.*, 803 F. Supp. 2d at 497.

### A.   <u>Google Failed to Preserve Relevant Chats</u>

Google deleted countless relevant chats generated during or after December 2019, and thus they are now "lost." Fed. R. Civ. P. 37(e). This is apparent for three primary reasons.

*First*, at least eight current and former Google employees who performed duties relevant to Plaintiffs' claims and possessed relevant documents both (1) ██████████████████ ██████████, and (2) ██████████████████████████████████. *See supra* at 4, 8. Those eight employees include five trial witnesses: ██████████████████ ████████████████████████

*Second*, in at least 20 relevant chats involving document custodians, many of whom are on a witness list, Google employees ██████████████████████████████████



 *See* Appendix C. All chats exchanged ██████████████

██████ were lost.[10] This was likely a more widespread practice than Appendix C reflects

because these are only instances when a Google employee *wrote down* that ████████████

████████. Given Google's default setting to "history off" and its pervasive "Communicate with

Care" culture that instructed employees it was "better" to communicate via history-off chat, *see*

*supra* at 12, it is likely that many more relevant chats were deleted in the same manner.

*Third*, an untold number of chats and other documents were lost between when Google

had a duty to preserve them and when Google issued litigation holds to preserve them. For 65 of

these custodians (including 16 trial witnesses), this period lasted at least five months, for 40

custodians (including two trial witnesses), it lasted more than eleven months, and in one case

(trial witness and ████████████████████) it lasted more than three years. *See* Appendix

A; Ex. 37. Without a litigation hold in place, Google's normal ████████████████████████

██████████████████████ applied, resulting in hundreds or potentially thousands of relevant

chats being lost as they continued to automatically roll off Google's system.

**B.      Google Unreasonably Failed to Preserve Chats**

Once a party has a duty to preserve, it must take affirmative, reasonable steps to fulfill

that duty. *See Steves & Sons*, 327 F.R.D. at 104. Generally, such steps involve some kind of

intervention in how the party normally maintains ESI. *See, e.g., Sines v. Kessler*, 2021 WL

4943742, at *9 (W.D. Va. Oct. 22, 2021) (reasonableness "turns on" whether party "changed

[their] routine practices . . . to reasonably ensure protection from loss").

---

[10] Because it is not always possible to ascertain the purpose or topic of a chat from the brief
interactions before history is turned off, Appendix C also includes chats for which the relevance
to specific ad tech topics can never be known for certain (since the chats were deleted).
However, given the roles of the custodians involved in such chats, it is highly likely that relevant
topics were discussed after history was turned off.

As the *Epic* court found, "Google did not take reasonable steps to preserve [ESI] that should have been preserved in the anticipation or conduct of litigation." *Epic*, 664 F. Supp. 3d at 993. Plaintiffs respectfully suggest the Court should accord Judge Donato's findings significant weight because they were based on the same companywide chat misconduct and corporate culture of shielding evidence from discovery at issue here. *See id*. at 983-84 (considering same "Communicate with Care" training); *id*. at 984-86 (considering same chat usage practices and same default retention policies); *id*. at 986-87 (considering same chat retention practices); *id*. at 987-91 (considering similar employee admissions of turning history off).

As in *Epic*, Google failed to take even minimally reasonable steps to preserve chats here. First, Google's decision to continue auto-deletion of "history off" chats and to continue "history off" as the default chat setting for all employees, even those on litigation hold, was unreasonable because "disabling an autodelete function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI." *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 977-79 (N.D. Ill. 2021). Likewise, Google's delay in issuing litigation holds was unreasonable because "the standard reasonableness framework" for preservation includes "suspend[ing] . . . routine document retention/destruction polic[ies] and put[ting] in place a 'litigation hold.'" *Steves & Sons*, 327 F.R.D. at 108; *see also*, *e.g.*, *Allied Prop. v. Zenith Aviation, Inc.*, 2019 WL 10960568, at *2 (E.D. Va. Feb. 8, 2019) (party breached duty to preserve by delaying issuance of litigation hold for three months, finding even an eighteen-day delay warranted sanctions).

Another hallmark of reasonable preservation efforts that Google failed to implement is to "take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341

F.R.D. 474, 495 (S.D.N.Y. 2022); *see also*, *e.g.*, *NuVasive, Inc. v. Kormanis*, 2019 WL 1171486, at *8 (M.D.N.C. Mar. 13, 2019) (party "should have checked to see if his text messages were actually being uploaded" for preservation); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 62 (S.D.N.Y. 2020) (failure to take reasonable steps by "fail[ing] to oversee compliance with the litigation hold notices" or "monitor . . . efforts to retain the documents subject to the hold"). Rather than confirm compliance, Google failed to audit its employees' use of "history off" chats while on litigation hold or even to interview its employees about their chat hygiene practices, even when reminded of the importance of such obligations by the United States. *See supra* at 6, 10, 15; *see also Keurig*, 341 F.R.D. at 504 (failure to "timely interview" custodians was breach of duty to preserve). These failures continued for years, despite Google's knowledge that its employees use chat for substantiative discussions and despite indications that custodians under litigation hold may be chatting with history off, including questions raised by the United States on that point. *See supra* at 6.

Google's failure to ensure its employees' compliance was all the more unreasonable given that Google placed near-impossible expectations on its employees of which it either knew or should have known they would fall short. Google required its employees to engage in constant assessments of relevance and make snap judgments about when to manually override the cumbersome "history off" default setting. *See supra* at 7-8. Rather than train employees how to accomplish this, Google taught them they should communicate in non-preservable ways if the discussion could harm Google in litigation. *See supra* at 11-13.

Moreover, although reasonableness depends to some degree on "the party's sophistication with regard to litigation" and its "resources," Fed. R. Civ. P. 37 advisory committees note (2015), those considerations only underscore the inadequacy of the steps

Google took to preserve chats. Google is among the most sophisticated and prolific litigants in the world. *See, e.g., Epic*, 664 F. Supp. 3d at 982-83 (Google "is a frequent and sophisticated litigation party" whose "employees are no strangers to document production and discovery obligations"). And Google's resources, especially its "access to accomplished counsel," *id*. at 993, and to technology tools that ensure preservation of ESI, *see supra* at 10, are virtually unlimited. In short, Google knew better and could have done better but chose not to.

## III.    The Deleted Chats Cannot Be Restored or Replaced.

Plaintiffs have met the fourth requirement of Rule 37 because there is no replacement for the spontaneous and informal conversations embodied in the spoliated chats. The chats at issue have been deleted and cannot be recovered. *See supra* at 8-9, 11; *Epic*, 664 F. Supp. 3d at 993 ("[T]he deleted Chat evidence cannot be restored or replaced through additional discovery."). Google's counsel have certified to this Court that they have produced all responsive documents that exist. ECF No. 492.

## IV.    Google's Spoliation of Chats Is Sanctionable

Google's spoliation conduct is sanctionable under both the Federal Rules of Civil Procedure and the Court's inherent power because Google acted with a culpable state of mind, and its spoliation conduct caused prejudice. Under Rule 37(e)(2), sanctions are appropriate if the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Under the Court's inherent authority, sanctions are appropriate when the spoliating party's conduct was "intentional," "willful," or "deliberate." *See Turner*, 736 F.3d at 282; *Vodusek*, 71 F.3d at 156. Alternatively, under Rule 37(e)(1), sanctions are appropriate as long as the spoliation resulted in "prejudice." Plaintiffs have satisfied the requirements for sanctions under each of these standards.

### A.   Google Spoliated Chats with the Intent to Deprive Plaintiffs of Evidence

The record clearly shows that Google acted with the intent to deprive Plaintiffs of relevant evidence. Because one cannot know exactly what a party was thinking at the time of spoliation, "courts look to circumstantial evidence to determine intent," *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475 (E.D. Pa. 2020), and intent to deprive can be inferred from a variety of factors. For example, "a party's conscious dereliction of a known duty to preserve electronic data—whether passive or active" establishes such an intent. *GMS Indus. Supply*, 2022 WL 853626, at *7. Likewise, a party's "dismissive" conduct that "demonstrates a contempt for [its] discovery obligations," supports an inference of intent. *Sines*, 2021 WL 4943742, at *11; *see also Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022) (intent "can be inferred when a party has significantly failed in its obligation to preserve and collect documents"). Similarly, deletion resulting from "affirmative" actions, deletion "in violation of an internal policy," or a party "preserv[ing] helpful or neutral information while deleting harmful information," all support an inference of intent. *Bistrian*, 448 F. Supp. 3d at 475-76.

The Walker Memo, issued in 2008, was an early hallmark of Google's intent to deprive litigants of evidence. Google's choice, set forth in that memo, to shift the default setting of chats to automatically delete in 24 hours was a manifestation of Google's "ingrained systemic culture of suppression of relevant evidence within Google," *Epic*, Trial Tr. (Vol. 6) at 1044:15-17, ECF No. 581. The memo also expressly connected the change in Google's chat retention policy to the fact that "Google continues to be in the midst of several significant legal and regulatory matters," and that therefore "anything you write can become subject to review in legal discovery . . . and may be used against you or us." Ex. 2. The Walker Memo raises the clear inference that Google was "avoid[ing] inadvertent retention" of chats via auto-deletion to prevent written communications from being "used against" Google in litigations such as this one. *Id*.

24

Mirroring the objectives of the Walker Memo, Google employees on litigation hold knew they were supposed to preserve relevant chats by turning history on. Yet those employees chose the opposite path, routinely deciding to ███████████ sometimes expressly writing that they were doing so ████████████████████████ *See supra* at 12-13; Appendix C. Several trial witnesses in this case engaged in such conduct, five of whom admitted ████████████████████████████████. *See supra* at 8-9. This pervasive practice satisfies several factors courts examine to infer intent to deprive, including: (1) conscious dereliction of a known duty to preserve, (2) "affirmative" actions causing deletion, (3) contempt for discovery obligations, (4) violating internal preservation policies, and (5) selectively deleting unhelpful communications. *See supra* at 24.

This result was neither the result of isolated "bad apples" nor the product of legitimate business needs. Google did not need to set "history off" as a default (or have "history off" as an available setting at all), and Google employees had no business reason to take written communications "off the record." Indeed, automatically deleting substantive chat conversations ██████████████████████. *See supra* at 5. All of this was a choice by Google—from the C-suite down—to take a calculated risk that a "systemic culture of suppression of relevant evidence," *Epic*, Trial Tr. (Vol. 6) at 1044:15-17, ECF No. 581, would pay off in litigation. That choice is reflected not only in the Walker Memo but in Google's Communicate with Care training program, which encouraged employees to select "off the record" methods of communication and taught them how to make sensitive business communications appear privileged, all with the express purpose to avoid relevant information from being available to litigation adversaries. *See supra* at 11-14. There is no credible explanation for Google's conduct other than an intent to deprive adversaries of evidence.

Google's calculated risk of prioritizing suppression of unfavorable evidence over complying with its discovery obligation is reflected in its other litigation conduct as well. Namely, Google's repeated inexcusable failure to meet basic standards of reasonableness in collecting and producing documents, and its careless approach to asserting the attorney-client privilege, *see supra* at 13-14, both underscore that Google, a sophisticated and well-resourced litigant, has "contempt for [its] discovery obligations," which supports the inference that Google was destroying chats by design. *Sines*, 2021 WL 4943742, at \*11.

**B.      Google Spoliation of Chats Was Deliberate**

Although a more specific "intent to deprive" is required for certain sanctions under Rule 37, this Court may sanction spoliation under its inherent powers as long as the spoliation conduct was "deliberate." *Vodusek*, 71 F.3d at 155-56 (expert witness's destruction of evidence, not intended to deprive anyone of evidence, was still sanctionable because it was "part of [the expert's] deliberate investigative efforts"); *accord Turner*, 736 F.3d at 282. Even if the Court does not find that Google intended to deprive Plaintiffs of evidence, its conduct was clearly "deliberate." It chose—after the *Epic* plaintiffs had sought chat spoliation sanctions and the United States was conferring with Google to seek similar sanctions—to keep auto-deleting its employees chats as a default, even for employees on litigation hold. *See supra* at 7. Google's employees likewise chose both to ignore company policies about turning chat history on and to affirmatively turn history off for "sensitive" conversations. *See supra* at 8-10; Appendix C. Even if that conduct were done for some purpose other than suppression of evidence in litigation, it was, at a minimum, no accident. Therefore, it is sanctionable. *Vodusek*, 71 F.3d at 156. Further, even if there was some other reason motivating Google's delay in sending litigation holds to employees who served as agreed-upon document custodians, those decisions were sufficiently deliberate to warrant imposition of sanctions.

### C.    Google's Spoliation of Chats Prejudiced Plaintiffs

Google's conduct has wrought prejudice here. *See* Fed. R. Civ. P. 37(e)(1). Chats are an important window into the candid thought processes, intentions, and observations of those responsible for managing and operating Google's ad tech products. Because Google trained its employees to ████████████████████████████████████████████████████████, *see*, *e.g.*, Ex. 34 (███████████████████████████████████), chats were, by design, one of the only places in which employees were free to write down candid observations or opinions relating to the core issues in this case. *See*, *e.g.*, Ex. 35 at 310 (███████ ███████████████████████████████████████████████████████); Ex. 36 at 814. History-off chats were all the more likely to contain uniquely probative evidence because Google ████████████████████████████████████████████████████ ████████████. Therefore, the loss of these chat communications prejudiced Plaintiffs by depriving them of information that was not only relevant, but uniquely so. *See Kolon Indus.*, 803 F. Supp. 2d at 498-99. In addition, if Plaintiffs had access to the spoliated chats, they would have been "reasonably calculated to lead to the discovery of [other] admissible evidence." *Id*. at 498. That is no small matter because that additional evidence may have allowed Plaintiffs to identify additional trial witnesses or uncover additional trial exhibits. It is also clear that this prejudice will spill over into trial, *see supra* at 8-9, which is why Plaintiffs seek sanctions now, to ensure the trial record is not skewed in Google's favor.

## V.    The Court Should Sanction Google for Its Spoliation of Chats

Because the requirements for spoliation sanctions under both Rule 37 and the Court's inherent power are satisfied here, *see supra* Parts I-IV, the Court should sanction Google's spoliation of chats. The Court has both "broad discretion" and several options for fashioning an "appropriate sanction." *See Silvestri*, 271 F.3d at 590.

## A.    The Court Should Presume the Spoliated Chats Were Unfavorable to Google

Because Google acted "with the intent to deprive" Plaintiffs of the use of chats in this litigation, *see supra* Part IV(A), the Court should "presume that the lost information was unfavorable" to Google. *See* Fed. R. Civ. P. 37(e)(2)(A). Specifically, the Court could reasonably infer that intentionally deleted chats about "sensitive" topics relevant to the claims in this case would have been unfavorable to Google on essentially all issues that will be disputed at trial, including market definition, monopoly power, Google's intent, the anticompetitive nature of Google's conduct, and the harm Google's conduct caused its competitors and customers.[11] This would be a sanction tailored not only to Google's conduct but to the trial setting, in which the Court will be drawing inferences from competing evidence and making credibility determinations.

Plaintiffs contend that an adverse presumption is the appropriate sanction to address Google's conduct, which "partially compromise[s], and thus limit[s]," a party's ability to present its case. *See Collins v. Tri-State Zoological Park of W. Md., Inc.*, 2021 WL 5416533, at *4 (D. Md. Nov. 19, 2021) (recommending adverse inference in bench trial); *see also Epic*, Trial Tr. (Vol. 16), 3226:19-3230:12, ECF No. 849; *Kolon Indus*, 803 F. Supp. 2d at 509; *GMS Indus. Supply*, 2022 WL 853626, at *9. The Court should exercise its discretion to apply this presumption under Rule 37(e)(2) in light of Google's repeated and persistent efforts to ensure its employees' chats were deleted despite its known discovery obligations. *See Jackson v. Murphy*, 468 F. App'x 616, 619 (7th Cir. 2012); *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1074-75 (6th Cir. 2014).

---

[11] Apart from sanctions, Plaintiffs intend to present evidence and argument at trial about Google's spoliation conduct because it is probative of Google's awareness of its wrongdoing, credibility of witnesses, and the appropriate weight to be accorded to non-chat internal documents introduced by Google, among other issues.

### B.     <u>The Court Would Be Warranted in Imposing a Variety of Other Sanctions</u>

An adverse presumption under Rule 37(e)(2) is well supported and would best fit Google's spoliation conduct here. Other sanctions would not fully "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590. However, the Court has discretion to sanction Google's conduct in a variety of other ways under either Rule 37 or the Court's inherent power. For example:

- The Court may limit the testimony of witnesses who participated in the spoliation conduct at issue by precluding them from offering testimony supportive of Google on issues such as intent, procompetitive justifications, and the effect of Google's challenged conduct on competition. *See, e.g., id.* at 594-95; *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010).

- The Court may preclude Google from arguing that a paucity of direct, contemporaneous evidence supports an inference that no additional evidence exists.

- The Court may sanction Google by admonishing, censuring, or otherwise publicly reprimanding it. *See, e.g., Redwood v. Dobson*, 476 F.3d 462, 470 (7th Cir. 2007) (admonishment); *Myers v. Sessoms & Rogers, P.A.*, 781 F. Supp. 2d 264, 266 (E.D.N.C. 2011) (same); *Clay v. Consol Pa. Coal Co.*, 2013 WL 5408064, at *6 (N.D. W. Va. Sept. 25, 2013) (public reprimand); *Harrell v. United States*, 117 F.R.D. 86, 92 (E.D.N.C. 1987) (censure).

\* \* \*

Every day, in courts across America, litigants resolve disputes that are important and consequential to them. They do so with the faith that all involved are complying with their obligations. When, as here, a litigant violates those obligations in ways that compromise or undercut the truth-seeking function of the judicial process, they must be held accountable. If not, Google and other companies aware of this litigation will continue to encourage employees to adopt careless or evasive discovery-related practices, particularly when faced with similar high-stakes litigation. As such, Plaintiffs ask the Court to apply an adverse presumption to deleted chats in this case, not only to ameliorate prejudice to Plaintiffs, but also to restore the public's faith in the integrity of the judicial process, and deter Google's and others conduct in this and

future litigations. Alternatively, Plaintiffs ask the Court to impose a different sanction that would

"cure the prejudice" to Plaintiffs, Fed. R. Civ. P. 37(e)(1), and would "serve the prophylactic,

punitive, and remedial rationales underlying the spoliation doctrine," *Silvestri*, 271 F.3d at 590.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court sanction Google's

spoliation of chats by presuming at trial that deleted chats were unfavorable to Google.

Dated: August 2, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ Matthew R. Huppert
MATTHEW R. HUPPERT
/s/ Katherine E. Clemons
KATHERINE E. CLEMONS

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Tyler T. Henry
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of Virginia and
local counsel for the States of Arizona, California,
Colorado, Connecticut, Illinois, Michigan,
Minnesota, Nebraska, New Hampshire, New
Jersey, New York, North Carolina, Rhode Island,
Tennessee, Washington, and West Virginia