# Exhibit 14
# Public

1  XAVIER BECERRA
   Attorney General of California
2  KATHLEEN FOOTE
   Senior Assistant Attorney General
3  PAULA BLIZZARD
   Supervising Deputy Attorney General
4  ADAM MILLER (SBN 168254)
   BRIAN WANG (SBN 284490)
5  RYAN MCCAULEY (SBN 264913)
   Deputy Attorneys General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102
7    Telephone: (415) 510-3883
     E-mail:  Adam.Miller@doj.ca.gov
8
   *Attorneys for the Attorney General*
9  *State of California*

10
                           BEFORE THE
11
                    DEPARTMENT OF JUSTICE
12
                     STATE OF CALIFORNIA
13

14

15
   In the Matter of the Investigation of:      **SUBPOENA TO PRODUCE**
16                                              **DOCUMENTS AND TANGIBLE THINGS**

17 **POTENTIAL ANTICOMPETITIVE**
   **ACTIVITY BY GOOGLE IN RELATION**          (Calif. Gov. Code § 11180 *et. seq.)*
   **TO SEARCH, ANDROID, AND**
18 **ADVERTISING**

19

20 TO:    The Custodian of Records for

21        ALPHABET, INC.
          1600 AMPHITHEATRE PARKWAY
22        MOUNTAIN VIEW, CA 94043

23 NOTICE:

24     (   )     You are served as an individual.

25     (   )     You are served as the person doing business under the fictitious name of

26     ( X )     You are served on behalf of ALPHABET, INC.

27

28          Pursuant to the powers conferred by California Government Code section 11180 *et seq.*

                                      1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

upon the Attorney General of the State of California as head of the Department of Justice, which the Attorney General has delegated, in connection with the above-entitled investigation to Deputy Attorney General Adam Miller, among others:

ALPHABET, INC., is commanded to produce for inspection and copying all documents and tangible items, as described in Schedule C, that are in its possession, custody or control, in accordance with the Definitions and Instructions set forth in Schedules A and B, to Deputy Attorney General Adam Miller, at 455 Golden Gate Avenue, Suite 11000, San Francisco California, on the 6th day of July, 2020 at 5:00 P.M. **Failure to comply with the requirements of this subpoena may subject you to liability for proceedings and penalties provided by law.**

Given under my hand this 19th day of June, 2020.

/s/ Adam Miller

_____
ADAM MILLER
Deputy Attorney General
Telephone: (415) 510-3883

TO THE PERSON SERVED: You may seek the advice of an attorney in any matter connected with this subpoena.  You should consult your attorney promptly so that any problems concerning the production of documents and tangible things may be resolved within the time required by this subpoena.  You are further advised that you are hereby served this subpoena on behalf of ALPHABET, INC., as a person upon whom a copy of this subpoena may be delivered to effect service on said party under the provisions of California Code of Civil Procedure section 416.10.  Failure to comply with the requirements of this subpoena may subject you to proceedings and penalties provided by law.

//

//

//

2
SUBPOENA TO PRODUCE DOCUMENTS AND TANGIBLE THINGS

**Preliminary Statement**

The Office of the Attorney General is investigating potential anticompetitive activity by ALPHABET, INC., in relation to Search, Android, and Advertising.  The Attorney General has reason to believe that you may have information relevant to this investigation.  Pursuant to section 11181 of the California Government Code, the Attorney General has issued this subpoena which requires you to produce documents and tangible items, in accordance with the instructions set forth below.

**SCHEDULE A**

**DEFINITIONS**

1. "You," "Your," "GOOGLE," "Alphabet," and the "Company" refers to ALPHABET, INC., Google, Inc., Google, LLC, and any affiliate, sister, subsidiary, predecessor, successor or assignee of any of the companies, and their principals, operating divisions, present or former employees, servants, officers, directors, agents, consultants, representatives, attorneys, accountants, and other persons acting on behalf of or under the direction, authorization, or control of ALPHABET, INC., or its principals.

2. "Documents" means, without limitation, "writing" (as defined in Evidence Code[1] section 250) and includes originals (as defined in Evidence Code section 255) or duplicates (as defined in Evidence Code section 260)[2] or copies of the writings, and non-identical copies,

---

[1] All statutory references are to California code sections unless otherwise indicated.
[2] Evidence Code section 250: "Writing" means handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.
  Evidence Code section 255: "Original" means the writing itself or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original."
  Evidence Code section 260: A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic rerecording, or by chemical

3

bearing or having any attachments, notes or marks which distinguish them from the originals and any information that is stored in an electronic medium as defined in California Code of Civil Procedure, section 2016.020. Without limiting the generality of the above, but to illustrate only, the term "Document" includes any written, printed, electronically generated/retained or recorded material or electronic data of writings of every kind and description that are fixed on any tangible thing, including, but not limited to: typed or handwritten papers; books; drafts; reports; letters; envelopes; post-its; electronic mail; telephone messages; voice mail; appointment calendars; address lists; drawings; photographs; correspondence; marketing materials; business cards; sales pitch books; newspaper clippings; memoranda; notes; agenda of meetings; summaries; outlines; calendars; diaries; transcripts or notes of telephone conversations, meetings or interviews; tape recordings; drafts of agreements and contracts; agreements; contracts; supplements, amendments and modifications of contracts; files; results of investigations; court papers; bank records; minutes; accounting work papers and reports; ledgers; business records; financial reports; facsimile transmissions; invoices; charts; graphs; directories; file folders, file tabs and labels appended to or containing any documents; logs; and transcriptions. Without limiting the generality of the above, but to illustrate only, a tangible thing on which documents may be fixed includes, but is not limited to: paper; audio tapes or cassettes; phono graphic media; photographic media (including, but not limited to, prints, films, slides, videos, microfilm, and digitally recorded photographs); computer media (including, but not limited to, hard disks, floppy disks, compact disks and magnetic tapes of any kind); and optical media. For the avoidance of any doubt, documents include any electronically transmitted communication, including cell phone texts, or messages using WhatsApp, Facebook Messenger, Telegram, Slack, or any similar technology.

3.      The term "and" means and/or.

4.      The term "or" means and/or.

---

reproduction, or by other equivalent technique which accurately reproduces the original.

SUBPOENA TO PRODUCE DOCUMENTS AND TANGIBLE THINGS

5.     All references to the singular form should be deemed to include the plural form, and all references to the plural form should be deemed to include the singular form.

6.     "Relate" or "relating" means analyze, contain, concern, deal with, discuss, describe, embody, identify, pertain to, refer to, reflect, or relate, to the subject of the document request, in whole or in part, and in any manner.

7.     "Person" includes any natural person, corporate entity, partnership, association, joint venture, government entity or trust, and any other legal entity.

8.     The "EU Android Matter" refers to the proceeding under Article 102 of the Treaty on the Functioning of the European Union and Article 54 of the EEA Agreement (Case AT.40099 — Google Android).

9.     The "EU AdSense Matter" refers to case AT.40411 - Google Search (AdSense), within the meaning of Article 11(6) of Council Regulation No 1/2003 and Article 2(1) of Commission Regulation No 773/2004.

10.    The "EU Google Search Matter" refers to the proceeding under Article 102 of the Treaty on the Functioning of the European Union and Article 54 of the EEA Agreement (Case AT.39740 — Google Search (Shopping)).

11.    The "USDOJ Investigation" refers to the USDOJ investigation into Google's potential antitrust violations as reported in, inter alia, the Washington Post article by Tony Romm dated September 6, 2019, entitled "Google Receives Demand for Documents from Justice Dept., Acknowledging Federal Antitrust Scrutiny," available at https://www.washingtonpost.com/technology/2019/09/06/google-receives-demand-documents-doj-acknowledging-federal-antitrust-scrutiny/, and also referenced in Alphabet SEC filings, including ones dated August 20, 2019, Form 8-K (19563662) and September 6, 2019 (191080294), that state that on "August 30, 2019, Alphabet received a civil investigative demand from the [US]DOJ requesting information and documents relating to our prior antitrust investigations in the United States and elsewhere."

12.    The "Multistate Investigations" refers to the investigations by state attorneys general into Google's potential antitrust violations as reported in, inter alia, the New York Times article

5

by Steve Lohr dated September 9, 2019, entitled "Google Antitrust Investigation Outlined by State Attorneys General," available at https://www.nytimes.com/2019/09/09/technology/google-antitrust-investigation.html, and also referenced in Alphabet SEC filings, including one dated October 29, 2019. Form 10-Q (191174141), that states that "[t]he House Judiciary Committee and attorneys general from 51 States and Territories have also opened antitrust investigations into certain of our business practices."

13.     The "Congressional Investigations" refers to any investigation by any body, committee or subcommittee of the United States House of Representatives or United States Senate concerning the topics and matters identified in definitions 8 through 12, above, including but not limited to, the investigation into competition in digital markets by the United States House of Representatives Judiciary Committee, as described in a letter dated September 13, 2019, from Chairman Jerrold Nadler et al., to Alphabet CEO Larry Page, available at https://judiciary.house.gov/news/documentsingle.aspx?DocumentID=2209, and also referenced in Alphabet SEC filings, including one dated October 29, 2019. Form 10-Q (191174141), that states that "[t]he House Judiciary Committee and attorneys general from 51 States and Territories have also opened antitrust investigations into certain of our business practices."

## SCHEDULE B
## INSTRUCTIONS

1.     This subpoena is for production of the original of each writing unless there is in your possession or under your control only a copy or photographic record thereof, in which case this request is for a true and legible copy of each such item.

2.     In producing these documents, you are required to furnish all documents in your possession, custody or control regardless of the physical location of such documents or whether these documents are possessed directly by you or your agents, employees, representatives, investigators, or by your attorneys or their agents, employees, representatives or investigators.

3.     All documents should be produced as maintained in the ordinary course of business. Documents produced and labeled in response to these requests shall be organized and labeled as

they are kept or maintained in the ordinary course of business, including, but not limited to, any file folders or binders and any labels affixed on such file folders or binders.

4.      At the date, time and location for production of the documents and tangible items requested, you should produce all documents and tangible items described in this subpoena.  You must provide a declaration or affidavit which states that a diligent search for all requested documents has been conducted and that the affiant or declarant was in charge of the search or otherwise monitored and reviewed the search sufficiently to be able to represent under oath that such a search was conducted.  It should also provide, or incorporate by referenced attachments, all information required by these requests for production, in accordance with these instructions and definitions and shall state that all such information about the documents has been provided. If there are no documents responsive to one or more of the requests, the declaration or affidavit should so indicate.  It should be signed under oath by the person most knowledgeable about the documents and your efforts to comply with the subpoena.  If different people are the most knowledgeable about portions of the search (e.g., one person is most knowledgeable about documents contained in computer media and a different person is most knowledge about documents contained on paper) each should sign an affidavit or declaration identifying the matters about which that person is the most knowledgeable.

5.      If any portion of a document is responsive to a request, the entire document must be provided.

6.      It shall be clearly designated, for each document produced pursuant to this investigative subpoena, which items listed in Schedule C such document is responsive to.

7.      Any documents that are withheld in whole or in part from production based on a claim of privilege shall be assigned document control numbers (with unique consecutive numbers for each page of each document); for purposes of this instruction, each attachment to a document shall be treated as a separate document and separately logged, if withheld, and cross referenced, if produced.  The Company shall also provide a statement of the claim of privilege and all facts relied upon in support of the decision to withhold each document, in the form of a log that conforms with the requirements set forth below in Schedule B.7 (A) & (B).  The Company is

SUBPOENA TO PRODUCE DOCUMENTS AND TANGIBLE THINGS

encouraged to propose categorical limitations to exclude certain classes of privileged documents from its log.

(A)  For each document identified on the Company's privilege log, state:

    (1)  the document's control numbers;

    (2)  all authors of the document;

    (3)  all addressees of the document;

    (4)  all recipients of the document or of any copies of the document, to the extent not included among the document's addressees;

    (5)  the date of the document;

    (6)  a description of the subject matter of the document;

    (7)  the nature or type of the privilege that the Company is asserting for the document (*e.g.*, "attorney-client privilege");

    (8)  the Specification(s) of this Request to which the document is responsive;

    (9)  the document control number(s) of any attachments to the document, regardless of whether any privilege is being asserted for such attachment(s); and

    (10)  whether the document has been produced in redacted form.

(B)  The Company's privilege log shall also conform with all of the following requirements:

    (1)  Provide a separate legend containing the full name, title(s), and employer or Company affiliation of each author, addressee, and recipient identified on the Company's privilege log.

    (2)  All attorneys acting in a legal capacity with respect to the withheld document or communication, and only such attorneys, shall be identified on the privilege log with an asterisk.

    (3)  The description of the subject matter of each document shall describe the nature of the document in a manner that, though not revealing information that is itself privileged, provides sufficiently detailed information to enable the Attorney General to assess the applicability of the privilege claimed.

SUBPOENA TO PRODUCE DOCUMENTS AND TANGIBLE THINGS

(4)   For each document withheld under a claim that it constitutes or contains attorney work product, also state whether the Company asserts that the document was prepared in anticipation of litigation or for trial and, if so, identify the anticipated litigation or trial upon which the assertion is based.

(5)   Produce all non-privileged portions of any responsive document (including non-privileged or redactable attachments) for which a claim of privilege is asserted, except where the only non-privileged information in the document has already been produced.  Note where any redactions in the document have been made.

(6)   The privilege log shall be produced in electronic form directly to the requesting Deputy Attorney General, which shall be both searchable and sortable.

8.    If any document responsive to this subpoena is in a language other than English, the English translation of that document must also be produced.

9.    If documents responsive to a particular Document Request no longer exist for reasons other than the ordinary course of business or the implementation of the Company's document retention policy, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the Document Request(s) to which they are responsive, and identify persons having knowledge of the content of such documents.

10.   Unless otherwise specified, the time period governing the scope of responsive documents is as set forth in the underlying requests made in the EU Android Matter, the EU AdSense Matter, the EU Google Search Matter, the USDOJ Investigation, the Multistate Investigations, and the Congressional Investigations.

11.   Unless otherwise requested by a Deputy Attorney General, electronic documents (*e.g.*, e-mail) and data shall be produced in its original electronic format only.  Documents produced electronically must comply with the Specifications for Production of Electronically Stored Information (ESI), attached hereto as Attachment A.

SUBPOENA TO PRODUCE DOCUMENTS AND TANGIBLE THINGS

12.   Mark each page of each document submitted – whether in hard-copy or electronic format – with corporate identification and consecutive document control numbers.  Place all documents produced in hard-copy format in file folders.  Mark each file folder with the Company's corporate identification, the name of the person whose documents are in the folder and how the original file was labeled.

13.   In lieu of searching backup tapes or other media that are not reasonably accessible, but that may contain information responsive to this request, the Company may elect to identify and preserve for the duration of the Attorney General's investigation a select subset of such backup and other media, such subset to be approved in writing by the Attorney General's representatives.  In the event that the Attorney General's representatives determine in their sole discretion that a search of the select subset of backup tapes is necessary, they shall so inform the Company, which will be required to conduct a review of the subset and produce any responsive information contained therein.

14.   Hard-copy documents shall be submitted in sturdy boxes not larger than 1.5 cubic feet.  Number each box and mark each box with corporate identification and the name(s) of the person(s) whose files are contained in that box.

15.   Provide a master list showing: (a) the name of each person from whom responsive documents are submitted; and (b) the corresponding consecutive document control number(s) used to identify that person's documents.  If the master list exists in electronic form, provide the master list both as a printed hard copy and in electronic form (provided the master list can be produced in a format that allows the Attorney General to use it).  The Attorney General's representatives will provide a sample master list upon request.

16.   If you intend to utilize any de-duplication software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media in response to this Request, or if the Company's computer systems contain or utilize such software, you must contact the attorneys for the Attorney General's Office to determine, with the assistance of the appropriate government technical staff, whether and in what manner the Company may use such software or services.

10

17.     Before you prepare documents or information for production in electronic form (for example, before you attempt to copy, for your response to this Request, documents or information from an electronically stored source onto a disk or other electronic storage medium), you must contact a Deputy Attorney General to arrange a meeting or conference call with the Company's personnel who are familiar with the electronic files in which the documents or information are stored, to explain to a Deputy Attorney General the manner in which the documents or information are stored, and the types of information that are available on the electronic source. Attorney General Office representatives must approve the format and production method for electronic data in advance of the submission by the Company of its response to this Request.

18.     If search terms were used to conduct all or any part of the search, provide a list of search terms used, along with a glossary of industry and Company terminology. In addition, describe the search methodologies and the applications used to execute the search.

19.     The company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off company premises together with all metadata. If the company believes the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way consistent with the Attorney General's need for documents and information, you are encouraged to discuss a possible modification to this instruction with the Attorney General's representatives identified on the first page of this Request. The Attorney General's representative will consider modifying this instruction to:

> (A) exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from files that exist in personal computers, portable computers, workstations, minicomputers, mainframes and servers searched by the company;

> (B) limit the portion of backup disks and tapes and archive disks and

SUBPOENA TO PRODUCE DOCUMENTS AND TANGIBLE THINGS

tapes that need to be searched and produced for certain key individuals, or certain time periods or certain specifications identified by Attorney General's representatives; or

(C) apply other proposals consistent with the State of California Attorney General's policy and the facts of the case.

20.     This Request is a continuing request for all responsive documents and information. You should discuss with the Attorney General's representatives how to continue compliance with this request, such as when new documents are produced in related matters.

21.     To the extent this Request seeks documents previously produced to state, federal, or foreign government agencies that have already been labeled with Bates numbers, You must include all previously used Bates numbers as part of the electronic metadata for said documents, and ensure any new Bates number labels do not obscure or render illegible previous Bates numbers.

## SCHEDULE C
## REQUESTS FOR DOCUMENTS AND INFORMATION

1.     Produce unredacted copies of all documents that You submitted since January of 2017, to any governmental entity, either voluntarily or in response to legal process, including but not limited to the Federal Trade Commission (FTC), the United States Department of Justice (USDOJ),  any state attorney general, or the United States Congress, relating to the EU Android Matter, the EU AdSense Matter, the EU Google Search Matter, the USDOJ Investigation, the Multistate Investigations, or the Congressional Investigations.  This request includes all produced documents, as well as responses to questions or interrogatories, any white papers, presentations, economic or legal analyses, substantive emails and any other written analyses of any kind or length submitted or presented by You to any such governmental entities.

2.     Produce unredacted copies of any voluntary production requests and any subpoenas, civil investigative demands, or other compulsory process documents received by Google since

January of 2017, from any of the governmental entities identified in Item 1, above, that resulted in production of documents responsive to Item 1, above.

3.    Produce copies of any agreements, memoranda of understanding, or communications (including substantive emails) between Google and any of the governmental entities identified in Items 1 and 2, above, relating to the confidentiality of Your documents responsive to Items 1 and 2, above.

4.    Produce copies of any agreements, memoranda of understanding, or communications (including substantive emails) between Google and any of the governmental entities involved in Items 1 and 2, above, relating to the scope of any legal process or subpoenas, civil investigative demands or other compulsory process responsive to Items 1 and 2, above.

5.    Provide copies of all transcripts of depositions, testimony, or investigative hearings, including exhibits, taken by, or presented to, any governmental entity relating to the USDOJ Investigation, the Multistate Investigations, or the Congressional Investigations.  To the extent official deposition transcripts are not available, provide copies of informal transcriptions of any such depositions or testimony.

Dated:  June 19, 2020

STATE OF CALIFORNIA

XAVIER BECERRA
Attorney General of California

/s/ Adam Miller

By:    _____
ADAM MILLER
Deputy Attorney General
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102
Telephone: (415) 510-3883
E-mail:  Adam.Miller@doj.ca.gov

1

## **<u>DECLARATION OF ADAM MILLER</u>**

2

3       1.      I am a Deputy Attorney General for the State of California.  The Attorney General

4   for the State of California has authorized an investigation into potential anticompetitive activity

5   by Google in relation to Search, Android, and Advertising.

6       2.      I have issued a subpoena for documents held by You to be produced to the

7   Attorney General.

8       3.      Based upon the investigation conducted to date, and the nature of the information

9   sought, I believe that ALPHABET, INC., has documents which contain information relevant to

10  this investigation, and that it is in a position to provide the information.

11      4.      I have issued this subpoena for production of documents in connection with this

12  investigation because I believe the documents are relevant to the investigation.

13      5.      I have first-hand knowledge of the facts set forth in this declaration, except as to

14  those alleged on information and belief, and as to those, I believe them to be true.  If called upon

15  as a witness, I could and would competently testify under oath.

16      I declare under penalty of perjury under the laws of the State of California that the

17  foregoing is true and correct.

18      Dated this 19th day of June, 2020, at Oakland, California.

19                                                  /s/ Adam Miller

20                                                  ADAM MILLER

21

22

23

24

25

26

27

28

SUBPOENA TO PRODUCE DOCUMENTS AND TANGIBLE THINGS



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

**SUBPOENA DUCES TECUM**
**THE PEOPLE OF THE STATE OF NEW YORK**
<u>**GREETINGS**</u>

**TO**:   Alphabet Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043

**YOU ARE HEREBY COMMANDED**, pursuant to Section 343 of the General Business Law, Section 63(12) of the Executive Law, and Section 2302(a) of the New York Civil Practice Law and Rules, to deliver and turn over to Letitia James, the Attorney General of the State of New York, or a designated Assistant Attorney General, on ***the 23rd day of April, 2021, by 10:00 a.m***., or any agreed upon adjourned date or time, at 28 Liberty Street, New York, New York, 10005, all documents and information requested in the attached Schedule in accordance with the instructions and definitions contained therein.

**TAKE NOTICE** that the Attorney General deems the documents and information requested by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to deliver the documents and information requested in the attached Schedule on the date, time and place stated above or on any agreed upon adjourned date or time, ***may subject You to prosecution for a misdemeanor or civil remedies under*** Section 343 of the General Business Law, Section 2308 of the New York Civil Practice Law and Rules, and/or other statutes.

**WITNESS, The Honorable Letitia James,** Attorney General of the State of New York, this 26th day of March, 2021.

By:   ___/s/ Elinor Hoffman___          By:   ___/s Morgan J. Feder___
    Elinor Hoffmann                                  Morgan J. Feder
    Bureau Chief                                       Assistant Attorney General
    Antitrust Bureau                                  Antitrust Bureau
    28 Liberty Street                                 28 Liberty Street
    New York, New York 10005                          New York, New York 10005
                                                      (212) 416-8288

                                                      John D. Castiglione
                                                      Senior Enforcement Counsel
                                                      (212) 416-8516

## <u>SCHEDULE</u>

### A.  General Definitions and Rules of Construction

1.      "All" means each and every.

2.      "Any" means any and all.

3.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Subpoena all information or Documents that might otherwise be construed to be outside of its scope.

4.      "Collaborative Work Environment" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include Microsoft Sharepoint sites, Salesforce.com sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems (CMS) (e.g., Drupal), wikis, and blogs.

5.      "Communication" means any message, conversation, discussion, letter, email, memorandum, meeting, note, text message, or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing.

6.      "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing, or constituting.

7.      "Custodian" means any Person or Entity that, as of the date of this Subpoena, maintained, possessed, or otherwise kept or controlled such Document.

8.      "Data Dictionary" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the New York Office of the Attorney General ("NYOAG"), including, for each table of information: (a) the size (number of records and overall volume); (b) a general description; (c) a list of field names; (d) a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values; (e) the format, including variable type and length, of each field; and (f) the primary key in a given table that defines a unique observation.

9.      "Document" is used herein in the broadest sense of the term and means all

written, printed or electronically stored information of whatever nature, however and wherever created, produced or stored, manually, mechanically, electronically or otherwise, including without limitation, information stored on social media accounts like Twitter or Facebook and documents contained in Collaborative Work Environments and other document databases. "Document" includes all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, chats, text messages, Blackberry or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices and summaries.  Any non-identical version of a Document constitutes a separate Document within this definition, including without limitation, drafts or copies bearing any notation, edit, comment, track changes, marginalia, underscoring, highlighting, marking, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents.  In the case of Documents bearing any notation or other marking made by highlighting ink, the term Document means the original version bearing the highlighting ink, which original must be produced as opposed to any copy thereof.  In the case of Documents containing track changes, all Documents must be produced in the program it was created (e.g., Microsoft Word, Powerpoint, etc.).  Unless otherwise specified, "Documents" excludes bills of lading, invoices in non-electronic form, purchase orders, and other similar documents of a purely transactional nature; architectural plans and engineering blueprints; and documents solely relating to tax, human resources, environmental, OSHA, or ERISA issues.

10.    "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

11.    "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to request the Document's production through subpoena or otherwise, including but not limited to: (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; and (d) Document author(s), addressee(s) and recipient(s).  In lieu of Identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and Identification of each Person You believe to have received a copy of the Document.

3

12.     "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

13.     "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) of employment, telephone number(s), e-mail address(es), mailing addresses, and physical address(es).

14.     "Identify" or "Identity," as applied to any Request for Information, means and includes, without limitation, dates, Person, or Entity.

15.     "Person" means any natural person, or any Entity.

16.     "Sent" or "Received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

17.     "Subpoena" means this subpoena and any schedules or attachments thereto.

18.     The use of the singular form of any word used herein this Subpoena shall include the plural and vice versa.  The use of any tense of any verb includes all other tenses of the verb.

### B.  Particular Definitions

1.      "Alphabet," "Respondent," "You," or "Your" means Alphabet Inc. and all subsidiaries and affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

2.      "Advertising Technology" means, without limitation, any and all aspects of the buying, selling, exchange, auction, routing, or display of digital advertising, in any location, forum or platform, of whatever kind or description, and any and all business or technological processes associated therewith.

### C.  Instructions

1.      <u>Preservation of Relevant Documents and Information; Spoliation.</u>  You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this Subpoena from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence.  No agreement, written or

4

otherwise, purporting to modify, limit or otherwise vary the terms of this Subpoena, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations.  Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law.  No agreement purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

2.   <u>Possession, Custody, and Control.</u>  The Subpoena calls for all responsive Documents or information in Your possession, custody or control.  This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, employees, agents, representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information.  If Documents or information responsive to a request in this Subpoena are in Your control, but not in Your possession or custody, You shall promptly Identify the Person with possession or custody.

3.   <u>Documents No Longer in Your Possession.</u>  If any Document requested herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that:  (a) describes in detail the nature of such Document and its contents; (b) Identifies the Person(s) who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the date(s) on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed or transferred; and if such Document has been destroyed or transferred, the conditions of and reasons for such destruction or transfer and the Identity of the Person(s) requesting and performing such destruction or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

4.   <u>No Documents Responsive to Subpoena Requests.</u>  If there are no Documents responsive to any particular Subpoena request, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the Subpoena request concerned. If documents, data, or other information responsive to a particular request no longer exists for reasons other than Your document retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost, list the specifications to which it was responsive, and list persons with knowledge of such documents, data, or other information.

5.   <u>Incomplete Responses</u>. If You are unable to answer a question fully, You must supply all

5

available information; explain why such answer is incomplete; describe the efforts made by You to obtain the information; and list the sources from which the complete answer may be obtained. If the information that allows for accurate answers is not available, submit best estimates and describe how the estimates were derived. Estimated data should be followed by the notation "est." If there is no reasonable way for You to estimate, provide an explanation.

6.   <u>Format of Production.</u>  You shall produce Documents and information responsive to this Subpoena in the format requested by the Office of the New York State Attorney General. Productions in electronic format shall meet the specifications set out in Attachments 1 and 2 hereof. NYOAG representatives must approve the format and production method of any documents, data, or other information before You make an electronic production in response to this Subpoena. Before preparing Your production, You must contact the NYOAG to explain what materials are available and how they are stored. This discussion must include Company personnel who are familiar with the Company's electronically stored information and databases/data sets.

7.   <u>Use of Search Terms or Predictive Coding.</u> Before using software or technology (including search terms, predictive coding, de-duplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this Request, You must submit a written description of the method(s) proposed to conduct any part of Your search and obtain the prior consent of the NYOAG to the use of such methods. In addition, for any process that relies on search terms to identify or eliminate documents, the Company must submit: (a) a list of proposed terms; (b) a tally of all the terms that appear in the collection and the frequency of each term; (c) a list of stop words and operators for the platform being used; and (d) a glossary of industry and company terminology. For any process that instead relies on predictive coding to identify or eliminate documents, you must include (a) confirmation that subject-matter experts will be reviewing the seed set and training rounds; (b) recall, precision, and confidence-level statistics (or an equivalent); and (c) a validation process that allows NYOAG representatives to review statistically-significant samples of documents categorized as non-responsive documents by the algorithm.

8.   <u>Data Production.</u>  Data called for by this Subpoena must be submitted electronically in a reasonably useable compilation that will allow the NYOAG to access the information it contains. Producing a database or data set in its entirety often does not satisfy this requirement. For the NYOAG to be able to access and interpret data, You must provide, for each database, a Data Dictionary that includes, for each table in the database:

      1.     the name of the table;

      2.     a general description of the information contained;

      3.     the size in both number of records and megabytes;

6

4.      a list of fields;

5.      the format, including variable type and length, of each field;

6.      a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values;

7.      the fields that are primary keys for the purpose of identifying a unique observation;

8.      the fields that are foreign keys for the purpose of joining tables; and

9.      an indication of which fields are populated.

It may be that only a subset or compilation of the contents of any particular database or data set will need to be produced. After providing the information above, You should discuss with NYOAG representatives what constitutes a sufficient production from the database or data set in a reasonably useable format.

9.      <u>Existing Organization of Documents to be Preserved.</u>  Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization.  Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document.  Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

10.     <u>Document Numbering.</u>  All Documents responsive to this Subpoena, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production.  Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

11.     <u>Privilege Placeholders.</u>  For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

7

12. <u>Privilege.</u>  If You withhold or redact any Document responsive to this Subpoena on ground of privilege or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating in separate fields:  (a) the document control number(s) of the Document withheld or redacted, including beginning and end numbers; (b) parent document control numbers; (c) attachments document control numbers (d) family range; (e) number of pages (f) the type of Document; (g) the date of the Document; (h) the author(s) and recipient(s) of the Document; (i) the title of the Document; (j) the general subject matter of the Document; and (k) an indication of whether it is redacted; the legal ground for withholding or redacting the Document, with sufficient detail to assess a claim of privilege.  If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.  If the legal ground or withhold or redacting the Document is Attorney Work Product, You shall indicate (m) whether the Document was prepared in anticipation of litigation or for trial; (n) the other parties or expected other parties to the litigation and whether that party is adverse; (o) case number; (p) complaint filing date; and (q) court name.   For each person listed, the log shall include the person's full name, address, job title, and employer or firm; for each non-Company recipient, include such additional description sufficient to show that individual's need to know the information in the Document.  Denote all attorneys with an asterisk ("*").  Produce the log in Microsoft Excel format that is both searchable and sortable.  Privilege logs must be produced on a rolling basis with the submission of each production if any document or information is withheld or redacted in response to this Subpoena.

13. <u>Your Production Instructions to be Produced.</u>  You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this Subpoena.  For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

14. <u>Cover Letter.</u>  Accompanying any production(s) made pursuant to this Subpoena, You shall include a cover letter that shall at a minimum provide an index containing the following: (a) a description of the type and content of each Document produced therewith; (b) the paragraph number(s) of the Subpoena request to which each such Document is responsive; (c) the Identity of the Custodian(s) of each such Document; and (d) the document control number(s) of each such Document.

15. <u>Affidavit of Compliance.</u>  A copy of the Affidavit of Compliance provided herewith shall be completed and executed by all natural persons supervising or participating in compliance with this Subpoena, and You shall submit such executed Affidavit(s) of Compliance with Your response to this Subpoena.

16.     <u>Identification of Persons Preparing Production.</u>  In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this Subpoena.  You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this Subpoena occurred.  You shall further Identify all other natural person(s) able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

17.     <u>Continuing Obligation to Produce.</u>  This Subpoena imposes a continuing obligation to produce the Documents and information requested.  Documents located, and information learned or acquired, at any time after Your response is due shall be promptly produced at the place specified in this Subpoena.  Your continuing obligation includes the obligation to produce responsive Documents that may be created after the date of this subpoena.

18.     <u>Initial Meeting or Telephone Call.</u>  You must contact John D. Castiglione, Senior Enforcement Counsel, (212) 416-8513 as soon as possible to schedule a meeting (telephonic or in person) to be held within five (5) days after receipt of this subpoena in order to discuss Your production of documents and information.


## D. Documents to Be Produced

1.      All Documents, Communications, or other materials previously produced to the United States Department of Justice in connection with any investigation of competition or antitrust issues Concerning Advertising Technology.

2.      All Documents, Communications, or other materials previously produced to the State of Texas pursuant to a Civil Investigative Demand dated September 9, 2019, or otherwise in connection with any investigation or litigation by the State of Texas Concerning Advertising Technology.

3.      All Documents, Communications, or other materials previously produced to any other State in connection with any investigation of competition or antitrust issues Concerning Advertising Technology.

## ATTACHMENT 1

### Electronic Document Production Specifications

Unless otherwise specified and agreed to by the Office of Attorney General, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions.  Any questions regarding electronic document production should be directed to the Assistant Attorney General whose telephone number appears on the subpoena.

1.   Concordance Production Components.  A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

    A.   ***Metadata Load File.***  A delimited text file that lists in columnar format the required metadata for each produced document.

    B.   ***Extracted or OCR Text Files.***  Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

    C.   ***Single-Page Image Files.***  Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

    D.   ***Opticon Load File.***  A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

    E.   ***Native Files.***  Native format versions of non-printable or non–print friendly produced documents.

2.   Production Folder Structure.  The production must be organized according to the following standard folder structure:
- data\ (contains production load files)
- images\ (contains single-page TIF files, with subfolder organization) \0001, \0002, \0003…
- native_files\ (contains native files, with subfolder organization) \0001, \0002, \0003…
- text\ (contains text files, with subfolder organization) \0001, \0002, \0003…

3.   De-Duplication.  You must perform global de-duplication of stand-alone documents and

10

email families against any prior productions pursuant to this or previously related subpoenas.

4. <u>Paper or Scanned Documents</u>.  Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd.  The resulting electronic files should be pursued in Concordance format pursuant to these instructions.  You must contact the Assistant Attorney General whose telephone number appears on the subpoena to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

5. <u>Structured Data</u>.  Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to the Assistant Attorney General whose telephone number appears on the subpoena.  Spreadsheets are not considered structured data.

6. <u>Media and Encryption</u>.  All documents must be produced on CD, DVD, or hard-drive media.  All production media must be encrypted with a strong password, which must be delivered independently from the production media.

7. <u>Production File Requirements</u>.

    A.    ***Metadata Load File***
- Required file format:
  - ASCII or UTF-8
  - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
  - .dat file extension
  - Field delimiter: (ASCII decimal character 20)
  - Text Qualifier: þ (ASCII decimal character 254).  Date and pure numeric value fields do not require qualifiers.
  - Multiple value field delimiter: ; (ASCII decimal character 59)
- The first line of the metadata load file must list all included fields.  All required fields are listed in Attachment 2.
- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
- ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number).  The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.  For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the Bates range of the entire document family (ATTACHRANGE), beginning with the first Bates number (BEGDOC) of the

11

"parent" document and ending with the last Bates number (ENDDOC) assigned to the last "child" in the document family.
- Date and Time metadata must be provided in separate columns.
- Accepted date formats:
  - mm/dd/yyyy
  - yyyy/mm/dd
  - yyyymmdd
- Accepted time formats:
  - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
  - hh:mm:ss:mmm

B.    ***Extracted or OCR Text Files***
- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.
- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C.    ***Single-Page Image Files (Petrified Page Images)***
- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files.  See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files.  The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 500 to 1000 files.  Where possible documents should not span multiple subfolders.

12

D.   ***Opticon Load File***
- Required file format:
    - ○ ASCII
    - ○ Windows formatted CR + LF end of line characters
    - ○ Field delimiter: , (ASCII decimal character 44)
    - ○ No Text Qualifier
    - ○ .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
    - ○ ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
    - ○ VOLUME – this value is optional and may be left blank.
    - ○ RELATIVE PATH – the filepath to each single-page image file on the production media.
    - ○ DOCUMENT BREAK – defines the first page of a document.  The only possible values for this field are "Y" or blank.
    - ○ FOLDER BREAK – defines the first page of a folder.  The only possible values for this field are "Y" or blank.
    - ○ BOX BREAK – defines the first page of a box.  The only possible values for this field are "Y" or blank.
    - ○ PAGE COUNT – this value is optional and may be left blank.
- ***Example***:
    ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
    ABC00002,,IMAGES\0001\ABC00002.tif,,,,
    ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
    ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E.   ***Native Files***
- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.  In cases where this cannot be achieved the

13

document's password must be listed in the metadata load file.  The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.

- You may be required to supply a software license for proprietary documents produced only in native format.

14

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE |
|---|---|---|
| DOCID | Unique document reference (can be used for de-duplication). | ABC0001 or ###.######.### |
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| ATTACHRANGE | Bates range of entire document family. | ABC0001 - ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |

15

| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
|---|---|---|
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |

16

| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5… |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;… |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4…. |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel,  Corel WordPerfect… |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |

17

| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024… |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100… |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| TIFFSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | Y, C, E, W, N, P |
| DUPSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | P |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FEE144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA3584BAD7ECF111B8044F8631 |
| MSGINDEX | Email message ID | |
| DOCREQ | List of Particular Requests for Documents to be Produced in Part E. of the Subpoena | 1; 2; 3 … |
| INTERROG | List of Particular Requests for Information in Part D. of the Subpoena | 1; 2; 3 … |

## AFFIDAVIT OF COMPLIANCE WITH SUBPOENA

State of _____  ⎫
County of _____  ⎬
                      ⎭

I, _____, being duly sworn, state as follows:

1.      I am employed by Respondent in the position of _____;

2.      Respondent's productions and responses to the Subpoena of the Attorney General of the State of New York, dated March 22, 2021 ("Subpoena") were prepared and assembled under my personal supervision;

3.      I made or caused to be made a diligent, complete and comprehensive search for all Documents and information requested by such Subpoena, in full accordance with the instructions and definitions set forth in such Subpoena;

4.      Respondent's productions and responses to such Subpoena are complete and correct to the best of my knowledge and belief;

5.      No Documents or information responsive to such Subpoena, other than responsive Documents or information withheld on the basis of a legal privilege, have been withheld from Respondent's production and response;

6.      The Documents contained in Respondent's productions and responses to such Subpoena are authentic, genuine and what they purport to be;

7.      Attached is a true and accurate record of all persons who prepared and assembled any productions and responses to such Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to such Subpoena occurred, and all persons able competently to testify:  (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be; and

1

8.      Attached is a true and accurate statement of those requests under such Subpoena as to which no responsive Documents were located in the course of the aforementioned search.

_____        _____
Signature of Affiant                                           Date

_____
Printed Name of Affiant

\*     \*     \*

Subscribed and sworn to before me this _____ day of _____, 20____.

_____, Notary Public

My commission expires: _____

2