# Exhibit L
# (previously filed as Dkt. 660-12)

**In the Matter Of:**

*United States vs*

*Google*

MARK ISRAEL, PH.D.

March 14, 2024



Case 1:23-cv-00108-LMB-JFA   Document 1132-12   Filed 08/06/24   Page 3 of 7 PageID# 82631

United States vs. Google — Highly Confidential — Mark Israel, Ph.D. — March 14, 2024

## Page 94

1  Q. And how do you determine what ad --
2  what types of advertising should be included in
3  the relevant market?
4  A. Well, the burden, as I understand
5  it, that would be on Plaintiffs' experts would be
6  to show that they include enough to capture
7  enough substitution to satisfy a hypothetical
8  monopolist test.
9      BY ATTORNEY NAKAMURA:
10  Q. And do you agree that the
11  hypothetical monopolist test is the right
12  theoretical framework to use in this matter to
13  determine the boundaries of a relevant product
14  market?
15      ATTORNEY EWALT: Objection to
16    form.
17      THE WITNESS: I think it's part
18    of it. It's not all of it. It's -- but
19    it's a piece of how you analyze markets.
20      BY ATTORNEY NAKAMURA:
21  Q. And what, then, are the other parts
22  of what you would use to determine the boundaries

## Page 95

1  of a relevant product market?
2  A. I mean, for me, the overarching
3  rule of all of it is you define the market that
4  best captures the competitive alternatives and
5  the competitive constraints relative to the
6  conduct at issue. The -- so you need a -- a
7  market definition that lets you analyze, in this
8  case, what it -- what are the constraints on
9  Google and the behavior described in the case.
10      That's a broad economic framework
11  but -- but one that I think guides everything.
12  Hypothetical monopolist test is, then, a piece.
13  Other pieces would include what I've called "the
14  circle principle" in other cases, that you don't
15  skip over a closer competition to include more
16  distant competition.
17      It would also -- I think that's --
18  those are the ones I can think of. There may be
19  more. But I think you -- the key is that it
20  explains competition, and within that, you'd want
21  to make sure it satisfies a hypothetical
22  monopolist test and make sure that it includes

## Page 96

1  the most important constraints, not skipping over
2  any to get to more distant constraints.
3  Q. And what role, if any, does
4  substitution in purchases make in helping you
5  determine whether or not the Plaintiffs have
6  proposed a proper relevant market for this case?
7  A. I mean, things that are potential
8  substitutes for advertisers or for publishers,
9  probably to some degree for users -- although we
10  can talk about that more -- are potentially
11  products that should be in the market. And so if
12  you find that there -- there's evidence of
13  substitution by those -- one of the -- one or
14  more of those parties and you find that the
15  decision whether or not to include that product
16  in your market matters to your conclusions, then
17  my opinion is Plaintiffs would need to do the
18  work to determine whether that product should be
19  in or out based on the hypothetical monopolist
20  test. And they have not done that work.
21  Q. And when you say -- I want to --
22  strike that.

## Page 97

1      I want to understand more about
2  what you mean by "potential substitutes for
3  advertisers" first.
4      Is it the case, in your
5  opinion, that any substitution whatsoever, even
6  one unit, would satisfy the criteria for -- for
7  inclusion in the proper relevant market, in your
8  opinion?
9      ATTORNEY EWALT: Objection to
10    form.
11      THE WITNESS: No, I'm not saying
12    any substitution means it's in the
13    market. I'm saying if there's reasonable
14    evidence in the record that it is a
15    substitute, then -- and it matters to
16    your conclusions, then it's Plaintiffs'
17    job to decide if it's in or it's out.
18    And they have not done that for a large
19    number of products for which there is
20    clear evidence in the record of
21    substitution.
22

Case 1:23-cv-00108-LMB-JFA   Document 1132-12   Filed 08/06/24   Page 4 of 7 PageID# 82632

United States vs.
Google

Highly Confidential

Mark Israel, Ph.D.
March 14, 2024

Page 98

1  BY ATTORNEY NAKAMURA:
2     Q.    I appreciate your further
3  commentary on what you believe Plaintiffs have
4  done, but that was not my question.  My
5  question -- well, I guess I'll move to another
6  question.
7           My question is, What degree of
8  substitution would be sufficient, in your view,
9  by advertisers to lead you to the conclusion that
10 a particular type of advertising should be
11 included in a relevant proper market in this
12 case?
13          ATTORNEY EWALT:  Objection to
14    form.
15          THE WITNESS:  I mean, I can't
16    answer these without referring to
17    Plaintiffs because it's -- what I'm
18    commenting on is whether Plaintiffs have
19    met their burden to define a market.
20          The degree of substitution would
21    be to show that one can omit that
22    product -- demonstrate one can omit that

Page 99

1     product and still satisfy the
2     hypothetical monopolist test and the
3     circle principle and still adequately
4     capture the set of products that are
5     important competitive constraints on
6     Google.
7  BY ATTORNEY NAKAMURA:
8     Q.    Are there products for which you
9  offer an opinion that you believe that these
10 advertising products should at least be included
11 in Plaintiffs' relevant market that are currently
12 not part of that market definition?
13          ATTORNEY EWALT:  Objection to
14    form.
15          THE WITNESS:  Again, I -- I
16    haven't gone and done the hypothetical
17    monopolist test on each of those because
18    Plaintiffs haven't and I have nothing to
19    respond to.
20          I think the report speaks for
21    itself and will do better than I.  The
22    report says strongly that I think it's

Page 100

1     very likely that you would need to
2     include social media and that you would
3     need to include in-app, for example.
4           But, again, my main point is that
5     those are strong substitutes, whether you
6     include them or not makes a big
7     difference, and Plaintiffs have done
8     nothing to justify leaving them out.
9  BY ATTORNEY NAKAMURA:
10    Q.    Do you believe that audio
11 advertisements that play on a Web page should
12 have been included in Plaintiffs' market?
13    A.    Audio advertisements?  The report
14 comments on audio particularly, so I don't think
15 I have an opinion one way or the other, not one
16 that I advance.  It's in the category of ones I
17 think should be tested to make sure that you've
18 -- the Plaintiffs have included enough, but I --
19 I haven't offered an affirmative opinion about
20 audio.
21    Q.    Do you believe it would have been
22 possible, given the data and documents in this

Page 101

1  case, to have tested for whether audio
2  advertisements could have been properly included
3  in a relevant market in this case?
4           ATTORNEY EWALT:  Objection to
5     form and foundation.
6           THE WITNESS:  I mean, I leave it
7     some to Plaintiffs for how they would go
8     about doing tests they haven't done.
9     But, in general, you -- you -- the
10    hypothetical monopolist test doesn't
11    require you to have data on every
12    possible product.  It requires you to
13    actually test that the products you've
14    included are enough.
15 BY ATTORNEY NAKAMURA:
16    Q.    At a minimum, how would you
17 describe what the -- what the hypothetical
18 monopolist test requires with respect to data?
19          ATTORNEY EWALT:  Objection to
20    form.
21          THE WITNESS:  Oh, I don't -- I
22    don't think there's any specific rule

Case 1:23-cv-00108-LMB-JFA   Document 1132-12   Filed 08/06/24   Page 5 of 7 PageID# 82633

United States vs. Google — Highly Confidential — Mark Israel, Ph.D. — March 14, 2024

Page 102

```
 1   about what data you need that you can --
 2   I mean, there are a variety of ways to do
 3   the test: by looking at evidence on
 4   what's actually happened to prices, by
 5   looking on whatever evidence you have of
 6   substitution.
 7           Economists are certainly in the
 8   business of trying to predict price
 9   effects based on the best data that we
10   can have.  Hypothetical monopolist test
11   is basically saying Plaintiffs would need
12   to do something to show that they have a
13   reliable prediction of a price increase
14   for a hypothetical monopolist of some
15   market that they have defined.  And
16   Plaintiffs haven't done that.
17           BY ATTORNEY NAKAMURA:
18       Q.   And is it your opinion that
19   Plaintiffs have done nothing to provide a
20   reliable prediction of a price increase for
21   hypothetical market -- for a -- I'm sorry.
22           Is it your opinion that
```

Page 103

```
 1   Plaintiffs' experts have done nothing to show
 2   that there would be a reliable prediction of a
 3   change in purchases as a result of a price
 4   increase?
 5           ATTORNEY EWALT:  Objection to
 6      form.
 7           THE WITNESS:  I'm sorry.  I don't
 8      understand the question.
 9           BY ATTORNEY NAKAMURA:
10       Q.   Sure.
11           What, if anything, have
12   Plaintiffs done, in your opinion, that would
13   satisfy any part of a hypo -- hypothetical
14   monopolist test?
15       A.   I mean, I -- I'm happy to look at
16   specific things.  As I sit here, I -- I -- I
17   can't see anything that they have done to show
18   that, for example, there could be a SSNIP that
19   doesn't include in-app or doesn't include social.
20           The specific things you like me to
21   comment on, the report probably does, and I'm
22   happy to, but I certainly see nothing that would
```

Page 104

```
 1   let me conclude that there could be -- that there
 2   would be a SSNIP in the absence of these other
 3   products.
 4       Q.   And let me turn again to one type
 5   of advertising that you have said in your reports
 6   ought to have been included in Plaintiffs'
 7   market, and let me talk now about search
 8   advertising.
 9           Is it your opinion that search
10   advertising should have been included in
11   Plaintiffs' relevant markets in this case?
12           ATTORNEY EWALT:  Objection to
13      form.
14           THE WITNESS:  I mean, I haven't
15      done the test in this case for whether
16      there would be a market around the
17      products here that does or does not
18      include search.
19           My opinion, as I've stated
20      elsewhere, is that search is a substitute
21      for social, at least, and for parts of
22      display, so I think the -- the most
```

Page 105

```
 1      likely market that I would arrive at
 2      would be -- would include search and
 3      would include all digital advertising.
 4           But as we know about market
 5      definition, it's specific to the conduct
 6      in a case and the set of products in the
 7      case, and you build out from those
 8      products, and I haven't tested here
 9      whether search would need to be in or out
10      of the market that applies to this case.
11           BY ATTORNEY NAKAMURA:
12       Q.   So what is your basis for your
13   opinion that search should have been included by
14   Plaintiffs' experts in the relevant market?
15           ATTORNEY EWALT:  Objection to
16      form and foundation.
17           THE WITNESS:  I mean, search has
18      been somewhat less the focus of this case
19      just because the case starts from, you
20      know, Google's display advertising and --
21      and builds out; but, certainly, I've
22      testified openly in public that search
```

Case 1:23-cv-00108-LMB-JFA   Document 1132-12   Filed 08/06/24   Page 6 of 7 PageID# 82634

United States vs. Google | Highly Confidential | Mark Israel, Ph.D. March 14, 2024

Page 106

1  substitutes with other forms of digital
2  advertising, so my opinion that --
3  therefore, that leads me to the opinion
4  that it's -- it's an important
5  substitute.
6          Certainly, somebody would have
7  to -- you know, in proposing a market,
8  it's an example of a form of digital
9  advertising that Plaintiffs, you know,
10 should have looked at.
11     BY ATTORNEY NAKAMURA:
12     Q.   So the basis in this case for your
13 opinion that search advertising is properly
14 included in Plaintiffs' relevant market is your
15 open public testimony in another case; is that
16 correct?
17     ATTORNEY EWALT:  Objection to
18 form.
19     THE WITNESS:  Again, to be clear,
20 I'm not offering an opinion in this case,
21 and I explicitly said I have not tested
22 whether search needs to be in or any

Page 107

1  specific other form needs to be in.  I
2  said they matter; they're a strong
3  substitution; Plaintiffs haven't done the
4  work.
5          So I'm not testifying as my
6  opinion in this case that you have to
7  include search.  I'm telling you, based
8  on what I've said elsewhere, I think
9  search is a substitute for other digital
10 advertising, so if you -- if you ask me
11 should it be in, it's likely a substitute
12 that at least needed to be considered.
13         But I'm not offering an
14 affirmative opinion in this case,
15 starting from the products in this case,
16 that says search does or doesn't need to
17 be in this case.
18     BY ATTORNEY NAKAMURA:
19     Q.   And so in your report, do you have
20 any graphs, tables, figures or analyses that
21 includes search advertising in the calculation of
22 a potential market share that includes search

Page 108

1  advertising?
2      A.   Yeah, I believe so.  There's
3  bunches of them.  I mean, they're -- they're in
4  the appendix because they -- in the body.  I work
5  from display to the ones I mentioned, app and
6  social.  But I think in multiple paragraphs and
7  footnotes and then in charts and tables that are
8  in the appendix to the report, I add search.
9      Q.   And you add search for illustrative
10 purposes only; is that correct?
11     A.   I mean, I -- I show a variety of
12 shares throughout the report to demonstrate the
13 point I've been making to you, which is that
14 whether or not you include products is
15 consequential, and Plaintiffs haven't considered
16 them.  So I include search in the same way I
17 include everything, as -- as a calculation of a
18 share for a market that Plaintiffs should have
19 considered and did not.
20     Q.   So why, in your opinion, is search
21 relevant if you have done no work to show that it
22 is a meaningful substitute -- I'm sorry -- to

Page 109

1  show that it is a substitute for display
2  advertising, as Plaintiffs have defined it?
3      A.   It's a form of digital advertising
4  that, you know, I have discussed openly, as I
5  said, substitutes for at least some other forms
6  of display advertising.  So I -- I tried to be
7  complete here by including the various forms of
8  digital advertising.
9          Again, I haven't done just -- I
10 haven't done one that just includes video or just
11 includes direct.  I've tried to say that each of
12 these categories of advertising that Plaintiffs
13 have not shown can be left out matter, and search
14 is an example.
15     Q.   And so I understand that you were
16 retained by Google as a testifying economic
17 expert in the search litigation that went on in
18 the District of Columbia Federal Court; is that
19 correct?
20     A.   Yes.
21     Q.   And is all the testimony that you
22 provided in that case fully and completely

PRIVILEGED & CONFIDENTIAL

| Page | Line | Change | Reason |
|---|---|---|---|
| 417 | 22 | "make up the" should be "makeup, the" | Transcription error. |
| 418 | 1 | "the respondents looks" should be "the respondents, looks" | Transcription error |
| 420 | 8 | "Demand" should be "demand" | Transcription error. |
| 446 | 13 | "features   including" should be "features—including" | Transcription error. |
| 446 | 14 | "auctions   into" should be "auctions—into" | Transcription error. |
| 453 | 4 | "DFP -- DSPs" should be "DSPs" | Clarification. |
| 453 | 9 | "mil" should be "mille" | Transcription error. |
| 453 | 11 | "rate.  So" should be "rate, so" | Transcription error. |
| 456 | 7 | "DF360" should be "DV360" | Transcription error. |
| 456 | 18 | "DFP360" should be "DV360" | Transcription error. |
| 456 | 21 | "advertising Google Ads" should be "advertising, Google Ads" | Transcription error. |
| 468 | 17 | "ads clients (e.g., agency" should be "Ads clients (e.g., Agency" | Transcription error. |
| 468 | 18 | "direct advertiser" should be "Direct Advertiser" | Transcription error. |
| 469 | 1 | "ads" should be "Ads" | Transcription error. |
| 470 | 22 | "ads" should be "Ads" | Transcription error. |
| 477 | 12 | "a ad server" should be "an ad server" | Clarification. |
| 482 | 13 | "Demand" should be "demand" | Transcription error. |

I have inspected and read my deposition and have listed all changes and corrections above, along with my reasons therefor.

Date: 4/10/2024          Signature: Mark A. Sl