Highly Confidential

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 1:23-cv-00108-LMB-JFA |

**DEFENDANT GOOGLE LLC'S AMENDED SUPPLEMENTAL RESPONSE TO INTERROGATORY 3 OF PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Rules of the United States District Court for the Eastern District of Virginia (the "Local Rules"), Defendant Google LLC ("Google"), by its undersigned counsel, submits its amended supplemental response to Plaintiffs' First Set of Interrogatories (No. 3).

Google amends **Exhibit B** to its Supplemental Response to Interrogatory 3, served on August 16, 2023, to provide updated information for 2021 and 2022. Since Google served its Response to Interrogatory 3 on April 26, 2023, ordinary course adjustments and allocation methodology changes have resulted in updated amounts for the categories of financial information sought by Interrogatory 3 for 2021 and 2022. The information provided for 2020 remains unchanged because the numbers reflect the most-recent adjustments and allocation changes.

**Interrogatory 3:**

For each Relevant Product, state its booked revenue, net revenue, gross margin, and operating profit, on a United States-only and worldwide basis, for each year from 2008 to the present, and explain Google's methodology for allocating expenses to each Relevant Product.

PTX1772
1:23-cv-00108

1

**Highly Confidential**

## Google's Objections to Interrogatory 3:

Google objects to Interrogatory 3 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information on its revenues, margins, and profit by Relevant Product going back 15 years.

Google further objects to Interrogatory 3 as vague and ambiguous because it fails to define the phrases "booked revenue," "net revenue," "gross margin," and "operating profit." Google will interpret these terms consistent with its general business understanding of their meaning.

Google further objects to Interrogatory 3 as overbroad, unduly burdensome and disproportionate to the needs of the case because it seeks to require Google to describe "methodologies for allocating expenses" for "each Relevant Product" over a 15-year time period.

Google further objects to Interrogatory 3 because it seeks information on a "United States-only" basis and Google does not maintain the requested data on a geographically-segmented basis.

Google further objects to Interrogatory 3 as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks data concerning products other than Google Ad Manager, AdSense for Content, Google Ads, and DV360.

If Interrogatory 3 seeks data about advertising purchased through Google Ads other than display advertising (e.g., search advertising), Google objects to the Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case.

Subject to and without waiving any of Google's objections, Google will provide the following information, on a worldwide basis, for the years 2021 and 2022, separately for Google Ad Manager, AdSense for Content, Google Ads (limited to display advertising), and DV360: (a) booked revenue; (b) net revenue; (c) gross margin; and (d) operating profit. Google is additionally continuing to investigate what product-level data can be reliably produced for years prior to 2021

2

**Highly Confidential**

(when Google's current product-level P&L system was put in place), and will supplement its response as appropriate.

### Google's Response to Interrogatory 3:

Google has gathered and reviewed financial data (booked revenue, net revenue, gross margin, and operating profit) by product (including Google Ad Manager, AdSense for Content, DV360, and Google Ads (limited to Display Network)) for the years 2021 and 2022. These data are attached as Exhibit B.

Google has also conducted an investigation into the availability of product-level financial data for years before 2021. Google's assessment is that it can only provide consistent product-level financial metrics for 2021 and 2022.

Until recently, Google's Finance group had not developed ordinary-course methodologies to account for the independent financial performance of Google's Ad Tech Products (including methods to allocate revenue, expenses, and profits across products) and therefore did not systematically maintain product-level financial metrics. Additionally, Google is limited in its ability to retroactively apply the current methodology, as the data used by the current methodology may not be available for earlier years, and the assumptions supporting the methodology may not be appropriate in light of the many changes to Google's business over fifteen years.

Google has made extensive productions to the Division of documents concerning various financial metrics. While some documents created prior to 2021 might appear to reflect product-level financial metrics on an ad hoc basis, Google cannot confirm that those documents were created using accurate and consistent methodologies to allocate revenues, profits, and costs across the various products. Some of these documents reflect Google's iterative efforts to develop ordinary course product-level financial metrics and therefore may only reflect parts of the

REDACTED VERSION

**Highly Confidential**

methodology Google uses today to create those metrics. Moreover, Google understands that the apparent product-level data reflected in pre-2021 documents were based on imperfect approximations of how revenue, profit, and/or cost could be allocated across products. The data reflected in such documents therefore may differ significantly from the data Google provides in Exhibit B.

**Google's Supplemental Response to Interrogatory 3:**

During an August 2, 2023 meet and confer between counsel for Plaintiffs and Google, Plaintiffs requested that Google supplement or otherwise amend its response to Interrogatory 3 to include booked revenue, net revenue, gross margin, and operating profit for the requested products for the 2014-2021 time period, and explain its methodology for allocating expenses to each DVAA (N/K/A Apps, Video, and Display ("AViD")) product. On August 3, 2023, Google agreed to supplement its response to Interrogatory 3.

In addition to the years 2021 and 2022, Google has provided financial data (booked revenue, net revenue, gross margin, and operating profit) by product (including Google Ad Manager, AdSense for Content, DV360, and Google Ads (limited to Display Network)) for the year 2020. An updated Exhibit B reflecting the 2020 data is attached hereto. In 2021, Google developed and implemented a MECE (mutually exclusive, collectively exhaustive) view for determining the financial metrics for DVAA products, which Google subsequently applied to 2020 product-level data in the ordinary course. A MECE view reflects revenues and costs that are directly attributable to the specific product. Prior to MECE, costs and revenue were allocated to DVAA products based on a buyside or sellside view rather than the specific product. Google cannot provide MECE financial metrics for the 2014-2019 period.

REDACTED VERSION

**Highly Confidential**

In response to Plaintiffs' request to "explain Google's methodology for allocating expenses" to the aforementioned DVAA products, Google provides the following explanation of the allocation methodology applicable to the MECE data.

As a general matter, there are two overarching categories of expenses directly attributable to the DVAA business: (i) Cost of Sales and (ii) Operating Expenses. Cost of Sales include TAC (traffic acquisition costs), CAC (content acquisition costs), Other Costs of Sales, and Machine/Network costs. TAC represents revenue share payments to publishers and is directly allocated to DVAA products based on Google's internal data. CAC, which constitutes a very small cost for DVAA, typically represents data licensing fees and is allocated to DVAA products pursuant to an agreed on methodology. Other Costs of Sales include costs such as credit card fees, gTech customer support costs, and certain taxes, and are allocated either directly to DVAA products–for example, credit card fees–or pursuant to an agreed on methodology. Machine/Network costs follow a two-step allocation process. First, machine costs are composed of "Anchors." Each Anchor owner determines an allocation share to each Product Area, including DVAA, based on cost drivers. The allocation share percentages are refreshed quarterly. Once allocated to DVAA, the costs are further allocated to individual DVAA products pursuant to either a specific or general allocation rate and based upon whether the costs are attributable to buyside or sellside products, or both.

Operating Expenses include costs associated with EngPM (Product Engineering), GBO (Global Business Organization), Marketing, G&A (General and Administrative, such as HR and REWs), and TI (Technical Infrastructure). EngPM is split between direct (DVAA-controlled) and allocated spend. Direct spend is managed by DVAA or the buying platforms team. Allocated spend is spending by non-DVAA engineering organizations on behalf of DVAA, which is then

REDACTED VERSION

allocated to DVAA. EngPM is further allocated to DVAA products following two different allocation methodologies: known allocation rate and a general DVAA rate. The DVAA team manages product-based allocation rates for certain Cost Centers (mostly DVAA-controlled). For those Cost Centers with defined DVAA rates, those percentages are applied to each Cost Center's total EngPM and split across products. For cost centers where there is no known or defined rate, the General DVAA rate is applied to split among products. The General DVAA rate is a weighted percentage of the EngPM total for only the DVAA-controlled cost centers, which have known or defined rates. GBO likewise follows two different allocation methodologies: known allocation rate and a general GBO split rate. The rates are determined from an annual survey of GBO teams. Marketing costs are attributed to DVAA products directly or proportionally based on survey results. G&A costs are allocated to DVAA and then further allocated to DVAA products by applying each product's G&A rate, which is based upon the percentage of that product's EngPM and GBO costs, to the total DVAA G&A costs. Technical Infrastructure costs are similarly allocated to DVAA and then further allocated to DVAA products by applying each product's TI rate, which is based upon the percentage of that product's EngPM and GBO costs, to the total DVAA TI costs. (Beginning in January 2023, TI costs have been moved under the Machine/Network line item in the P&L.)

In 2018, Google Finance began an effort known as "Project Slice," to develop profit and loss statements at the product level for certain DVAA products. (The effort continues to the present under the MECE view.) The product-level financial metrics generated as a result of this effort are present in documents already produced to Plaintiffs, and cover the period from 2017 to 2019. In response to Interrogatory 3, Google lists those documents here:

GOOG-DOJ-AT-02642831
GOOG-DOJ-AT-02643078

GOOG-DOJ-AT-02643172
GOOG-DOJ-AT-02643174
GOOG-DOJ-AT-02643175
GOOG-DOJ-AT-02647850
GOOG-DOJ-AT-02647851
GOOG-DOJ-AT-02643055
GOOG-DOJ-AT-02643056
GOOG-DOJ-AT-02643171
GOOG-DOJ-AT-02649854
GOOG-DOJ-AT-02649855
GOOG-DOJ-AT-02649856
GOOG-DOJ-AT-02649857

These P&Ls were prepared following the general allocation methodology outlined above. Additionally, where and when available, these documents also contain information related to the applicable cost allocation methodology. Therefore, Plaintiffs can likely determine the costs and allocation methodology by examining the documents themselves or by analyzing other documents produced in this case such as GOOG-AT-MDL-004326981.

Prior to 2018, current Google Finance personnel are unaware of a centralized effort to examine or create product-level P&Ls. As Google has indicated previously, there are documents in Google's productions containing product-level financial metrics pre-2018:

GOOG-AT-MDL-004010113
GOOG-DOJ-AT-02642406
GOOG-AT-MDL-004039971
GOOG-DOJ-AT-02645012

Google has not been able to identify current Google Finance personnel with first-hand knowledge of these documents or otherwise identify the process and methodology used in preparing these documents.

**Highly Confidential**

Dated: September 8, 2023

Respectfully submitted,

/s/ Joseph Bial
Karen L. Dunn (*pro hac vice*)
Jeannie Rhee (*pro hac vice*)
William Isaacson (*pro hac vice*)
Joseph Bial (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB # 93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
jrhee@paulweiss.com
wisaacson@paulweiss.com
jbial@paulweiss.com
amauser@paulweiss.com
mgoodman@paulweiss.com
bpbecker@paulweiss.com
espevack@paulweiss.com

Meredith Dearborn (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (646) 432-5100
Facsimile: (202) 330-5908
mdearnborn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3387
Facsimile: (212) 492-0387
ejmorgan@paulweiss.com

**Highly Confidential**

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
Andrew J. Ewalt (*pro hac vice*)
Lauren Kaplin (*pro hac vice*)
Jeanette Bayoumi (*pro hac vice*)
Sara Salem (*pro hac vice*)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: eric.mahr@freshfields.com

Daniel S. Bitton (*pro hac vice*)
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
David Pearl (*pro hac vice*)
Allison Vissichelli (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com
dpearl@axinn.com
avissichelli@axinn.com

CRAIG C. REILLY (VSB # 20942)
209 Madison Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
Email: Craig.reilly@ccreillylaw.com

*Counsel for Google LLC*

**HIGHLY CONFIDENTIAL**

## Amended Interrogatory 3 - Booked and Net Revenues, Gross Margin, and Operating Profit by Product

| $ in millions | 2021 Actuals | | | | 2022 Actuals | | | |
|---|---|---|---|---|---|---|---|---|
| | Google Ad Manager | AFC | DV360 | Google Ads | Google Ad Manager | AFC | DV360 | Google Ads |
| Booked Revenue | | | | | | | | |
| Net Revenue | | | | | | | | |
| Gross Margin | | | | | | | | |
| Operating Profit | | | | | | | | |
| Op Profit % of Booked Revenue | | | | | | | | |

**HIGHLY CONFIDENTIAL**

## Interrogatory 3 - Booked and Net Revenues, Gross Margin, and Operating Profit by Product

|  | 2020 Actuals | | | |
|---|---|---|---|---|
| *$ in millions* | **Google Ad Manager** | **AFC** | **DV360** | **Google Ads** |
| Booked Revenue | $7,358 | $2,712 | $2,247 | $2,550 |
| Net Revenue | $1,500 | $545 | $438 | $2,199 |
| Gross Margin | $1,397 | $518 | -$5 | $1,248 |
| Operating Profit | $368 | $345 | -$585 | $127 |
| *Op Profit % of Booked Revenue* | *5%* | *13%* | *-26%* | *5%* |

## Verification of Interrogatory Responses

I, Jessica Mok, declare:

1. I am a Finance Director employed by Google LLC (the "Company").

2. I have knowledge of the facts and circumstances relating to the preparation of Google's amended supplemental response to Interrogatory 3 of Plaintiffs' First Set of Interrogatories.

3. Based on this knowledge, I am authorized to verify on behalf of the Company that the requested information in the possession, custody, control, or knowledge of the Company has been set forth fully and accurately in the amended supplemental response to Interrogatory 3, subject to the Company's written objections. If the Company becomes aware of the need to supplement or amend any answers to the interrogatories, we will do so promptly

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in London, UK on September 7, 2023

_____
Jessica Mok
Finance Director, Ads
Google LLC

1