**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

UNITED STATES, *et al.*,

        *Plaintiffs*,

        v.

GOOGLE LLC,

        *Defendant*.

No. 1:23-cv-00108-LMB-JFA

**GOOGLE LLC'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR AN ADVERSE INFERENCE**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ........................................................................................................ 3

ARGUMENT ..................................................................................................................... 4

   I.    Plaintiffs' Motion Is Barred Because It Is Untimely. ..................................................... 4

      A.   Google Disclosed Its Chat Preservation Processes to DOJ Almost Five Years Ago. 5

      B.   The Factors Courts in the Fourth Circuit Apply to Assess the Timeliness of a
Sanctions Motion All Demonstrate Plaintiffs' Motion Is Untimely ................................ 7

   II.   Plaintiffs Have Not Demonstrated, by Clear and Convincing Evidence, That Google
Acted with the Specific Intent to Deprive Them of Evidence. .......................................... 11

      A.   Google's Disclosures to Plaintiffs—and the Volume of Documents It Produced—
Are Inconsistent with an Intent to Deprive Plaintiffs of Evidence ................................ 12

      B.   The Information That Plaintiffs Cite Does Not Establish an Intent to Deprive
Plaintiffs of Evidence in This Case. ................................................................................ 13

   III.   Plaintiffs Have Not Demonstrated Prejudice, a Prerequisite to Any Form of
Sanctions Under Rule 37(e)(1) ........................................................................................... 16

   IV.   Plaintiffs Have Not Demonstrated That Any ESI—Much Less ESI Relevant to
Their Claims—Was Lost ..................................................................................................... 21

      A.   The Number of Chat Messages Google Produced Compared to Emails Does Not
Establish the Loss of Relevant Chat Messages. .............................................................. 21

      B.   The 40 Chat Conversations Cited by Plaintiffs Do Not Demonstrate the Loss of
Relevant Chat Messages. ................................................................................................ 23

      C.   The Timing of Google's Issuance of Legal Holds Does Not Establish the Loss of
Relevant Chat Messages. ................................................................................................ 24

      D.   Decisions by Courts in Other Matters Do Not Establish the Loss of Relevant ESI in
This Case. ......................................................................................................................... 25

   V.   Plaintiffs' Request for Sanctions Pursuant to the Court's Inherent Authority Should Be
Denied Because Rule 37 Controls ...................................................................................... 26

## INTRODUCTION

Plaintiffs' motion is untethered to the law and the relevant facts of this case.  In order to obtain the extraordinary relief that they seek—a finding of spoliation and an adverse inference from that finding—Plaintiffs bear the burden of demonstrating by clear and convincing evidence that Google acted with the specific intent to deprive Plaintiffs of crucial information *in this litigation*.  Plaintiffs' request, in the alternative, for an unspecified lesser sanction still requires Plaintiffs to establish that they were prejudiced because of the loss of electronically-stored information ("ESI") that is *crucial* to their case.  Plaintiffs fail to establish specific intent or prejudice.

As a threshold matter, Plaintiffs' motion fails because it is untimely.  Plaintiffs' motion is focused on a single category of ESI:  Google Chat messages created during the time period of late October 2019 to February 8, 2023.  For that time period, legal hold custodians were instructed not to use Google Chat to discuss the subjects of the legal hold but, if they had to use Chat for such subjects, to turn "history on" so the message would be preserved.  Plaintiffs now claim Chat messages could have been destroyed.

What the Court should be aware of is that Google promptly disclosed that very retention process to DOJ upon the launch of DOJ's investigation.  On November 20, 2019, one month after it received DOJ's civil investigative demand ("CID"), Google fully and accurately disclosed its Chat retention processes; Google then responded promptly and accurately to follow-up questions DOJ had concerning those processes in 2020 and 2021.  And then, when DOJ asked Google to revisit its processes in February 2023, Google immediately did so (within five days of receiving the request), disabling "history off" messaging for any employee subject to a legal hold.  By every metric that courts in the Fourth Circuit consider for the timeliness of a Rule 37(e) motion, Plaintiffs' motion—filed after the close of fact discovery, after the briefing and decision on summary judgment, and on the eve of trial—is untimely.  Plaintiffs have

offered no explanation for their delay, and there could be none because there has been no material change in the record relating to Chat messages since the start of the litigation. That is reason alone to deny their motion.

On the merits, Plaintiffs have not met their burden of demonstrating entitlement to relief under Rule 37(e) of the Federal Rules of Civil Procedure.

As a prerequisite to Plaintiffs' request for an adverse inference under Rule 37(e)(2), Plaintiffs must demonstrate by clear and convincing evidence that Google acted with the intent to deprive Plaintiffs of information crucial to their claims in this litigation. Plaintiffs cannot meet that burden. From the outset of DOJ's investigation in this case, Google disclosed how it was preserving Chat messages. Plaintiffs do not cite a single case—and Google is not aware of one—where a party disclosed its processes for preserving a category of documents to its adversary; its adversary did not object to or request a change in those processes for over three years; and then over four years after the disclosure, that adversary claimed (let alone a court found) those processes constituted the willful and intentional spoliation of evidence. The transparent disclosures that Google made to Plaintiffs concerning its Chat retention processes are inconsistent with and refute that there was any specific intent to destroy evidence and to deprive Plaintiffs of crucial information.

Plaintiffs' fallback request for unspecified lesser sanctions under Rule 37(e)(1) likewise fails. A prerequisite to any sanctions under Rule 37(e)(1) is a showing of prejudice. Plaintiffs have not—and cannot—demonstrate prejudice in this case. All of the product innovation and design decisions that form the basis for Plaintiffs' complaint took place *well before* DOJ notified Google of its ad tech investigation. The ordinary course retention period for one-on-one, "history on" Chat messages was 30 days. And so, it is unlikely that many relevant Chat messages existed for the distant time periods in which the product innovation and design decisions Plaintiffs challenge took place.

To establish prejudice, it is insufficient to argue, as Plaintiffs do, only that missing information could have been relevant. They must demonstrate that there was destruction of "crucial" ESI, *Marshall* v. *Dentfirst, P.C.*, 313 F.R.D. 691, 697 (N.D. Ga. 2016), such as ESI that would have a "unique and vital role" in the case, *Steves & Sons Inc.* v. *Jeld-Wen, Inc.*, 327 F.R.D. 96, 110 (E.D. Va. 2018).[1]  As Plaintiffs are aware, Google has produced an extraordinary amount of ESI in this case, including more than 6 million documents, Ex. 20, ¶ 4, 80 gigabytes of source code related to the innovations and product design decisions at issue, and 260 terabytes of ad bidding and serving transaction data.  Given the volume of ESI Google has produced, Plaintiffs have not sufficiently established that the allegedly missing information would have been "crucial" and served a "unique and vital role."

Google respectfully requests that the Court deny Plaintiffs' motion.

## LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure governs requests for sanctions involving electronically-stored information.  Any request for sanctions under Rule 37 must be timely filed.  *Guo* v. *Xia*, 2019 WL 13295855, at *1 (E.D. Va. June 26, 2019).

As a prerequisite to severe sanctions, such as Plaintiffs' request for an adverse inference, Plaintiffs have the burden of demonstrating that Google "acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2).

As a prerequisite to Plaintiffs' alternate request for relief, Plaintiffs have the burden of demonstrating that they were "prejudiced" from the loss of information.  Fed. R. Civ. P. 37(e)(1).

---

[1] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.  All references to "Ex." refer to the exhibits submitted herewith in support of Google's Opposition to Plaintiffs' Motion for an Adverse Inference.  All references to "Pls.' Br. Ex." refer to Plaintiffs' exhibits submitted in support of their Motion for an Adverse Inference.

3

Furthermore, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing standard, especially where a relatively harsh standard like an adverse inference is sought." *Steves & Sons*, 327 F.R.D. at 104.

## ARGUMENT

### I.   **Plaintiffs' Motion Is Barred Because It Is Untimely.**

Plaintiffs' motion, filed on the eve of trial, comes nearly *five years* after Google fully and accurately disclosed its Chat preservation processes to DOJ; over *three years* after DOJ wrote a letter to Google confirming its understanding of those processes while investigating this case; and almost *nine months* after the close of fact discovery.

By any measure, Plaintiffs' motion is untimely.  It is well established in this Circuit and others that "unreasonable delay may render [a motion for sanctions] untimely." *Guo*, 2019 WL 13295855, at *1; *see also Brandt* v. *Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994) (same); *Bush* v. *Dep't of Human Servs.*, 714 F. App'x 180, 183 (3d Cir. 2017) (same).  Because "resolution of spoliation motions are fact intensive," "there is a particular need for these motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman* v. *Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009).  To determine the timeliness of a sanctions motion, courts consider both "when the movant learned of the discovery violation" and "how long he waited before bringing it to the court's attention."[2]  *Guo*, 2019 WL 13295855, at *1.  Applying these factors, Plaintiffs' motion is untimely and should be denied on that basis alone.

---

[2] These requirements apply to motions for sanctions pursuant to Rule 37(e), as well as to motions for sanctions pursuant to the inherent authority of the Court.  *See Al-Sabah* v. *Agbodjogbe*, 2019 WL 4447235, at *4 (D. Md. Sept. 17, 2019) (Rule 37(e)); *Promier Products, Inc.* v. *Orion Capital LLC*, 2023 WL 11809987, at *4-*5 (N.D. Ill. Dec. 22, 2023) (Rule 37(e)); *Goodman*, 632 F. Supp. 2d at 505-06 (inherent authority).  As explained below, because Plaintiffs' motion involves ESI, only Rule 37—not the Court's inherent authority—applies.  *See infra* Part V.

A.     **Google Disclosed Its Chat Preservation Processes to DOJ Almost Five Years Ago.**

From the outset of DOJ's investigation in this case, Google has been transparent about its Chat retention processes.  On November 20, 2019, Google first informed DOJ in its ESI Questionnaire that Chat "messages are generally retained for a period of 30 days *if they have been marked on-the-record*, and potentially longer if *on-the-record messages* are on legal hold."  Pls.' Ex. 15 at 5.  Google also provided DOJ with the "Gmail Retention Policy" in effect at the time, which stated that "*on the record Chats, and Hangouts with 'History' checked on*,[3] will be retained for 30 days," while "Email, *on the record Chats, and Hangouts with 'History' checked on*, that are subject to a Legal Hold, will be preserved for the duration of the Legal Hold."  Ex. 1 (emphasis added).[4]  DOJ has therefore had Google's written retention processes for Chat messages since November 20, 2019.

At DOJ's request, Google further explained its Chat retention processes multiple times.  On November 19, 2020, Google replied to an email from DOJ sent two days earlier on November 17:  "Google's retention policy, provided to the Division last year, states that 'on the record' chats will be preserved as part of the legal hold.  *Those on a hold notice are instructed* to mark relevant discussions as 'on the record."  Pls.' Ex. 16 (emphasis added).  On January 28, 2021, Google replied to a letter from DOJ:  "For chats, *employees are instructed* to keep all potentially responsive conversations as 'on the record,' and are sent a reminder approximately every six months."  Pls.' Ex. 18 (emphasis added).

DOJ affirmatively acknowledged that it understood Google's Chat retention processes.

---

[3] "Hangouts" was the predecessor application to Google Chat.  "On-the-record" was an earlier terminology for "history on."

[4] Disclosures of the type that Google made are what are expected under the Federal Rules of Civil Procedure in litigation to allow the parties to reach agreement on the scope of preservation or, where there is a dispute, to raise such dispute with the Court.  At the outset of the investigation, when Google made the disclosures that it did, DOJ did not request—or seek to negotiate—that Google use different preservation processes than those that Google disclosed.

In a June 1, 2021 letter, DOJ wrote: "Relevant 'on the record' chats are collected and produced as part of Alphabet's document productions, but . . . chats not marked 'on the record' are not collected and produced to the Division." Pls'. Ex. 20. DOJ's letter also demonstrated that it understood the policy's implications: some "custodians may have failed to record responsive chats as 'on the record.'" *Id*.

In addition, on July 23, 2021, DOJ wrote to Google: "In the course of reviewing chats that Alphabet has produced to the Division, we have encountered several instances where a chat participant requests to have a conversation with history off." Pls.' Ex. 21 at 2. DOJ requested "the number of 'on the record' chats collected from each custodian." *Id.* Google replied that it had "collected a total of 57,739 chats" (the count referring to Chat conversations, and not individual Chat messages) from the 73 custodians whom DOJ had then identified and provided a breakdown of the number of Chat conversations produced by each custodian. Ex. 2. Following this correspondence, DOJ continued to investigate Google's ad tech business for another 18 months before filing suit. Not once in those 18 months did DOJ ask Google to change its Chat retention processes.

On February 3, 2023, DOJ for the first time requested that Google change its Chat retention processes. Ex. 3. Just five days later, on February 8, 2023, Google promptly revised its processes. Google wrote to DOJ: "Although Google does not believe it is obligated to do so, out of an abundance of caution, Google implemented an additional process on February 8" (of 2023) "whereby all Google Chats, regardless of the subject matter of the discussion, have been permanently set to 'history on' and automatically preserved." Ex. 4.

Finally, as further proof of Plaintiffs' clear notice and knowledge of Google's Chat retention processes, they sought and obtained discovery pursuant to a Rule 30(b)(6) deposition of Google *in this case* regarding the Chat retention processes of specified Google employees. The parties agreed that Google could address Plaintiffs' 30(b)(6) topics in a written response.

Dkt. No. 373 at 4.  In letters dated November 8 and 15, 2023, Google provided DOJ with detailed information about how 34 current and former employees, who Plaintiffs identified as relevant to this case, used Google Chat.  Pls.' Ex. 3; Ex. 5.  Then, radio silence.  In the intervening eight months, Plaintiffs have appeared before Magistrate Judge Anderson or this Court at least seven times, including hearings where scheduling of dispositive motions, pre-trial briefing, and other deadlines were discussed.  Not once did Plaintiffs notify the Court, or Google, that they believed the factual record demonstrated spoliation, or that they would seek sanctions on the basis of alleged spoliation.

Instead, Plaintiffs waited—all told, nearly five years—to file the present sanctions motion alleging spoliation.  Plaintiffs' argument that they had an "incomplete picture" of Google's Chat retention processes until August 2024, Pls.' Br. at 9, is belied by DOJ's express acknowledgments more than three years ago of Google's disclosures and the additional discovery it took many months ago.  To the extent Plaintiffs truly sought clarity, they had ample opportunity during discovery; yet they chose not to pursue it, making no meaningful effort to investigate the issue at depositions.  Courts deny motions for sanctions that are untimely because of a party's own lack of diligent investigation.  *E.g.*, *Equate Media, Inc.* v. *Suthar*, 2022 WL 2101710, at *3 (C.D. Cal. Feb. 2 2022) ("Plaintiffs' own lack of diligence caused their dilemma"); *Emery* v. *Harris*, 2014 WL 710957, at *6 (E.D. Cal. Feb. 21, 2014) (movant "fails to demonstrate any degree of diligence").

### B.  The Factors Courts in the Fourth Circuit Apply to Assess the Timeliness of a Sanctions Motion All Demonstrate Plaintiffs' Motion Is Untimely.

This motion comes far too late.  *Guo*, 2019 WL 13295857, at *1.  To evaluate the length of a movant's delay in bringing a sanctions motion to the Court's attention, "courts in the

Fourth Circuit consider multiple factors":

> (1) the time between the filing of the motion and the close of discovery; (2) the time between the filing of the motion and the filing of summary judgment motions; (3) the filing of the motion and trial; (4) whether the court imposed a deadline for filing spoliation motions; and (5) the moving party's justification for not filing sooner.

*Nat'l Fair Hous. All.* v. *Bank of Am., N.A.*, 2023 WL 4669560, at *3 (D. Md. Jan. 23, 2023). The Court did not impose a deadline for filing spoliation motions, nor did Plaintiffs ever indicate a need for such a motion and a concomitant deadline. Every single other factor weighs against Plaintiffs' motion.

*First*, fact discovery completely closed in November 2023. Dkt. No. 440. Plaintiffs waited over eight months after the close of fact discovery to file this motion. *See Guo*, 2019 WL 13295855, at *2 (motion denied where discovery had been closed for over five weeks); *Am. Nat'l Prop. & Cas. Co.* v. *Campbell Ins., Inc.*, 2011 WL 3021399, at *3 (M.D. Tenn. July 22, 2011) (motion denied because it was brought four months after the close of discovery), *order set aside on other grounds*, 2011 WL 6259473 (M.D. Tenn. Oct. 14, 2011); *Glenn* v. *Scott Paper Co.*, 1993 WL 431161, at *10 n.3 (D.N.J. Oct. 20, 1993) (sanctions denied because spoliation was raised for the first time to defend a summary judgment motion after close of discovery). This factor should weigh especially heavily against Plaintiffs in the context of this case because Google disclosed its Chat retention processes to DOJ at the start of its investigation, and DOJ had three years to investigate even before it commenced this action.

*Second*, summary judgment motions were filed on April 26, 2024, Dkt. No. 569, and the Court ruled on summary judgment on June 14, 2024, Dkt. No. 773. Plaintiffs waited over three months after Google filed its summary judgment motion and over a month after the Court made its ruling to file this motion.[5] *See Morse Diesel Int'l, Inc.* v. *United States*, 81 Fed. Cl.

---

[5] As a result, Google had no opportunity to address this argument during summary judgment briefing. *Compare Membreno* v. *Atlanta Restaurant Partners, LLC*, 338 F.R.D. 66, 75-76 (D.

220, 222 (2008) (motion denied because it was filed after ruling on summary judgment); *Navedo* v. *Nalco Chem., Inc.*, 848 F. Supp. 2d 171, 204 (D.P.R. 2012) (same); *Scalia* v. *County of Kern*, 576 F. Supp. 3d 703, 715 (E.D. Cal. 2021) (same); *Atanassova* v. *General Motors LLC*, 2023 WL 2674383, at *4 (D.S.C. Mar. 28, 2023) (same).

*Third*, trial is scheduled to begin in less than a month.  Plaintiffs filed this motion just five weeks in advance of the trial date, and two weeks before the due date for the filing of motions *in limine* and proposed findings of fact and conclusions of law.  "Courts should be wary of any spoliation motion made on the eve of trial."  *Atanassova*, 2023 WL 2674383, at *3 (motion denied because it was filed the month before trial); *see also Weber Mfg. Techs., Inc.* v. *Plasan Carbon Composites, Inc.*, 2016 WL 8114507, at *3 (E.D. Mich. July 26, 2016) (motion filed "less than two months before trial . . . is simply too late").[6]

*Finally*, Plaintiffs offer no justification for their long delay except that they have conducted a "careful evaluation of the factual record, including its impact on witnesses that both sides have indicated may testify at this trial."  Pls.' Br. at 3.  The factual record has been the same for months.  They have not identified a single change in circumstance between—on the timeline most generous to Plaintiffs—November 2023, when Google sent letters totaling 14 pages reporting the results of its survey of employees on Chat retention processes, and August 2, 2024.  Pls.' Br. Ex. 3; Ex. 5.  Nor have Plaintiffs explained what "careful evaluation" of the factual record they needed to do for months, after an investigation that spanned years, before reaching the conclusion that they needed to file a sanctions motion.

There is "no reason why Plaintiff[s] required so much time to file a relatively basic Rule 37 motion," or why Plaintiffs never raised their spoliation concern before the Court after years

---

Md. 2021) (motion timely because other party could "address the issue of spoliation sanctions in their reply brief").

[6] *Compare Goodman*, 632 F. Supp. 2d at 509 ("dilatory" motion was not untimely because "dispositive motions had not yet been ruled on," and "it was not filed on the eve of trial").

of knowing about Google's processes and many months of receiving Google's November 2023 letters. *Guo*, 2019 WL 13295855, at *2 (denying as untimely sanctions motion delayed for three months before filing). Despite many opportunities to raise the issue, Plaintiffs made a "tactical decision to not alert the Court," and "instead raise the issue of spoliation for the first time" now in order to distract from pre-trial briefing and an adjudication of this case on the merits. *Scalia*, 576 F. Supp. 3d at 714. Plaintiffs' failure to justify their substantial delay in filing renders their motion untimely. *E.g.*, *Al-Sabah*, 2019 WL 4447235, at *4-5 ("denying sanctions motion as untimely because movant "was fully apprised of the issue long before they brought it to the Court's attention" and "gave no explanation for their tardiness").[7] As another district court in this Circuit observed:

> ***The timing of [Plaintiffs'] motion therefore belies [their] true intention.*** Presumably frustrated by a lack of evidence to support [their] claims . . . in the days winding down to trial, [Plaintiffs] accuse [Defendant] of destroying relevant evidence, the destruction of which was known to [Plaintiffs] nearly four years prior to the filing of [this] motion. Whether the delay is the result of inattention, neglect, or purposeful intent, the court does not know—but the timing of [Plaintiffs'] motion undermines [their] claim for relief.

*Travelers Prop. Cas. Co. of Am.* v. *Mountaineer Gas Co.*, 2018 WL 1370862, at *6 (S.D. W. Va. Mar. 16, 2018).

---

[7] Plaintiffs may argue that, even though their motion is dilatory, the Court should nonetheless reach the merits of the motion because they are not seeking to reopen discovery or otherwise delay trial. That argument fails for multiple reasons.

*First*, the resolution of any spoliation motion, including this one, is still "fact intensive, requiring the court to assess" any number of complex factual questions. *Goodman*, 632 F. Supp. 2d at 508. "The least disruptive time to undertake this is *during* the discovery phase, not after it has closed." *Id.* (emphasis in original). *Second*, the fact that Plaintiffs already sought discovery on Chat retention processes so are not seeking it again cuts in Google's favor, not Plaintiffs'. Plaintiffs have no good reason for waiting between that discovery and August 2, 2024, to file a motion. This is not a case in which Plaintiffs could not file before they obtained some factual evidence. *Cf. Doe* v. *Fairfax Cnty. Sch. Bd.*, 2019 WL 8887763, at *4 (E.D. Va. June 28, 2019) (delay proper because Plaintiff needed to wait to receive a 30(b)(6) deposition transcript). *Third*, courts deny sanctions motions as untimely on the basis of unreasonable delay alone—even if the movant is seeking an adverse inference, and not to delay trial. *E.g.*, *Weber*, 2016 WL 8114507, at *3-*4; *Atanassova*, 2023 WL 2674383, at *5; *Scalia*, 576 F. Supp. 3d at 715.

10

## II.   Plaintiffs Have Not Demonstrated, by Clear and Convincing Evidence, That Google Acted with the Specific Intent to Deprive Them of Evidence.

Plaintiffs cannot carry their heavy burden under Rule 37(e)(2) of showing that the severe remedy of an adverse inference is appropriate in this case.   Plaintiffs must—but cannot—demonstrate by clear and convincing evidence that Google "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *Steves & Sons, Inc.*, 327 F.R.D. at 104.

"Negligent or even grossly negligent behavior" does not suffice for an award of sanctions under Rule 37(e)(2).   Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.   Nor does "a 'lack of reasonable steps' to preserve equate with an 'intent to deprive.'"   *Gov't Emps. Health Ass'n* v. *Actelion Pharms. Ltd.*, 343 F.R.D. 474, 483-84 (D. Md. 2023) (finding insufficient evidence of intent where ESI was destroyed after a duty to preserve arose); *Auer* v. *City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018) (holding an adverse inference instruction was "unavailable as a matter of law" where there was no evidence that defendant "consciously permitted" relevant evidence to be destroyed); *Barbera* v. *Pearson Educ., Inc.*, 906 F.3d 621, 627-28 (7th Cir. 2018) (affirming finding of no intent under Rule 37(e)(2), where no litigation hold was issued); *Brittney Gobble Photography* v. *Sinclair Broad. Grp., Inc.*, 2020 WL 1809191, at *9-*10 (D. Md. Apr. 9, 2020) (no Rule 37(e)(2) violation, even though defendant failed to issue a litigation hold).

"The Rule itself makes clear that the party must do more than intend to destroy the evidence; it must do so with an intent to deprive another party of the information's use in litigation." *Brittney Gobble Photography*, 2020 WL 1809191, at *9; *Haysbert* v. *Bloomin' Brands, Inc.*, 2021 WL 5003284, at *4 (E.D. Va. July 9, 2021) ("And for severe sanctions— including any adverse inference—Plaintiff here must establish the loss resulted from an intent to deprive the party of its use at trial."); *Borum v. Brentwood Village, LLC*, 332 F.R.D. 38, 48 (D.D.C. 2019) (emphasizing that the "intent standard is stringent and does not parallel other

discovery standards").[8]

### A. Google's Disclosures to Plaintiffs—and the Volume of Documents It Produced—Are Inconsistent with an Intent to Deprive Plaintiffs of Evidence.

Plaintiffs do not (and cannot) dispute that Google issued legal hold notices and instructed employees subject to those holds to preserve Chat messages about the covered topics. The sole basis for Plaintiffs' motion is the sufficiency of the process Google employed to preserve Chat messages between late October 2019, the earliest that Google could possibly have been under a duty to preserve, and February 8, 2023, when Google changed its Chat retention processes. Google disclosed its Chat retention processes as early as November 20, 2019 (though the Division was aware of them even prior) and then responded to every follow-on inquiry about those processes made by DOJ. This conduct by Google is wholly inconsistent with an intent to destroy evidence or with an intent to deprive Plaintiffs of its use in litigation.

Google furthermore produced for this litigation 6 million documents, 260 terabytes of data, and over 80 gigabytes of source code reflecting its technological innovations and product design decisions. The scope and size of the ESI that Google produced to Plaintiffs "belies an intentional plan to deprive Plaintiff[s] of relevant ESI in this litigation." *Actelion*, 343 F.R.D. at 483-84 (defendant produced "hundreds of thousands of other ESI 'documents,' amounting to approximately 1.6 million pages, including from fifteen other . . . custodians"). This is a far cry from the facts of cases such as *Vodusek* v. *Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995), which Plaintiffs repeatedly cite: there, the Fourth Circuit concluded that it was not an abuse of discretion for the District Court to issue a permissive adverse inference instruction

---

[8] *See also In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 520-21 (S.D.W. Va. 2014) (noting that defendant's preservation process was "riddled with holes[,]" yet finding insufficient evidence of intention to deprive); *Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 860-61 (S.D.W. Va. 2018) (finding no intent to deprive although emails were lost in "transition from one legal hold system to a different legal hold system" because remedial measures by the parties resulted in at least some of that lost ESI being produced by other data custodians who were the senders or receivers of those emails).

after plaintiffs and their expert destroyed the remaining portions of a boat in a product liability case involving the boat's explosion, which "rendered many portions of the boat useless for examination by the defendants and their expert," *id.* at 155.

### B. The Information That Plaintiffs Cite Does Not Establish an Intent to Deprive Plaintiffs of Evidence in This Case.

Plaintiffs feature a memo, written in 2008, to purportedly show an intent to suppress evidence in 2019 for a case that would not exist for another eleven years. Pls.' Br. at 24 (citing Pls.' Br. Ex. 2). Putting aside the temporal disconnect of that argument, that memo in fact shows an intent to preserve relevant evidence. Significantly, Plaintiffs fail to bring to the Court's attention the most relevant portion of the memo, which states: "If you've received notice that you're subject to a litigation hold, and you must chat regarding matters covered by that hold, *please make sure that those chats are 'on the record.'*" Pls.' Br. Ex. 2 at -619 (emphasis added). Accordingly, the memo was not only written 11 years before DOJ opened its investigation or any duty to preserve existed, but also instructs employees to take steps to preserve relevant Chat messages if they are subject to a litigation hold. That is the opposite of an intent to destroy evidence.

Plaintiffs also point to the results of a survey of 34 current or former Google employees—selected by Plaintiffs—regarding their Google Chat usage.[9] Pls.' Br. at 8, 25. Based on the survey, Plaintiffs assert that fewer than a quarter of the surveyed employees (eight out of 34) "failed to heed instructions to preserve relevant chats."[10] Pls.' Br. at 8. Even if it

---

[9] Plaintiffs include in their motion discussion of Google's assertions of privilege. Pls.' Br. at 13-14. Setting aside that Plaintiffs' statements are not accurate representations, none of their allegations about privilege bear any relevance to the present motion, which is based on whether relevant substantive Chat conversations were retained.

[10] For one of the eight custodians, in their motion Plaintiffs cite to a deposition taken of the custodian on June 19, 2024—long after fact discovery in this case and the Coordinated Discovery Period closed—in the Southern District of New York ad tech-related litigation. *See* Pls. Br. at 4 n.2; Pls.' Br. Ex. 10. Plaintiffs' citation to this deposition transcript, and inclusion of an excerpt as an exhibit attached to their motion, violates the coordination order entered by this Court. *See* Dkt. No. 251 ¶ 6(d) ("Subject to the Protective Orders, absent an order of the

were accurate that employees failed to fully comply with the Chat retention-related instructions, that alone is not evidence demonstrating any intent to deprive Plaintiffs of relevant material.  For one, Google collected more than 790,000 individual Chat messages from these eight custodians, and it produced almost one million documents from the custodial files of these eight custodians, including more than 36,000 individual Chat messages. Ex. 20, ¶ 12.  Google's production of other evidence, including emails and Chat messages that were retained for the very same custodians, "undercuts the argument that defendants acted with the intent to deprive." *Europe* v. *Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 179 (S.D.N.Y. 2022) ("if there were an intent to deprive, presumably [other evidence] also would have been destroyed").

To act with deliberate intent, a party must "act willfully or intentionally to delete, discard, or hide evidence"—in other words, "destroy evidence *specifically for the purpose of preventing its disclosure* in this litigation." *In re Ethicon*, 299 F.R.D. at 521.  It is not enough to show a company did not perfectly execute its retention obligations.  Even where additional steps could have been taken to "implement and monitor" employees' compliance with litigation holds, more is required to show intent.  *Id.* at 520-21 (no intent where litigation hold system was "riddled with holes").  A company also does not "act unreasonably in assuming that its employees complied with [a] policy." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 520 (S.D.N.Y. 2022): *see also Jennings* v. *Frostburg State Univ.*, 679 F. Supp. 3d 240, 296 (D. Md. 2023) ("in general," "failure to implement a proper litigation hold" is not "intentional destruction of evidence").

Even the cases Plaintiffs cite demonstrate that the deliberate intent showing is a high bar—one that requires clear and convincing evidence of an intent to deprive the other party of relevant materials.  The cases cited by Plaintiffs found no intent where, for example, some, but

---

Court in the Virginia Case, Transcripts and exhibits from depositions taken outside the Coordinated Discovery Period may not be used in the Virginia Case *for any purpose other than impeachment at trial*.").

14

not all, relevant materials were produced, *Europe*, 592 F. Supp. 3d at 179-80, or there was a "disturbing" loss of evidence, but the "circumstantial evidence" of intent was weak, *Bistrian* v. *Levi*, 448 F. Supp. 3d 454, 476 (E.D. Pa. 2020).  On the other hand, the cases cited by Plaintiffs finding the requisite intent involved extreme circumstances, such as the defendant downloading a desktop application called "File Shredder" after receiving a litigation hold and running the application to destroy all documentation on a laptop, *GMS Indus. Supply, Inc.* v. *G&S Supply, LLC*, 2022 WL 853626, at *7-*8 (E.D. Va. Mar. 22, 2022), and a defendant providing "occasionally flippant or dismissive answers to opposing counsel's questions . . . demonstrating a contempt for his discovery obligations," *Sines* v. *Kessler*, 2021 WL 4943742, at *11 (W.D. Va. Oct. 22, 2021).

In contrast, here, Plaintiffs have not presented any evidence that demonstrates that Google—despite the voluminous discovery it did produce—had a specific intent to deprive them of relevant material.[11]  Plaintiffs had the opportunity to ask *every* Google witness they deposed about the witness's usage of Google Chat, and whether the witness complied with the preservation instructions that they received.  It is telling that, in their motion, Plaintiffs cite *no* deposition testimony that establishes a specific intent to deprive Plaintiffs of evidence in this case.  Plaintiffs have also identified no Chat conversation that shows a Google employee, after receiving a legal hold, seeking to turn history off for purposes of a substantive conversation about ad tech topics that are relevant to the allegations in this case.  The small number of witnesses who were asked directly about their Chat retention processes after the post-October 2019 legal holds testified that they followed Google's instructions.[12]  *See In re Ethicon*, 299

---

[11] For the reasons explained below, *see infra* § IV.B, the 40 Chat conversations cited by Plaintiffs also do not demonstrate a deliberate intent to deprive Plaintiffs of relevant material.

[12] *E.g.*, Ex. 6 at 12:3-20 ("Q. Did you take steps to preserve chats after receiving the instruction to preserve documents related to Google's digital advertising business? A. Yes.  Q. What steps did you take?  A.  I would turn chat history on to preserve the record of the chat.  Q.  Could you tell me one way or the other whether for every chat that related to Google's digital advertising business, you turned the history on?  A. After receiving the [litigation hold] Notice

F.R.D. at 521 (no deliberate intent where "many of the employees confirmed under oath that they never deleted or discarded any materials subject to preservation notices").

Plaintiffs have failed to demonstrate by clear and convincing evidence that there was any intent by Google to deprive them of ESI in this case.

## III.   Plaintiffs Have Not Demonstrated Prejudice, a Prerequisite to Any Form of Sanctions Under Rule 37(e)(1).

Plaintiffs' fallback request for sanctions under Rule 37(e)(1) also fails because Plaintiffs have provided no evidence that their ability to litigate this case has been prejudiced by the absence of any history-off Chat messages between October 2019 and February 2023.

Rule 37(e)(1) requires a specific "finding" of "prejudice . . . from loss of the information" before any sanction may be issued. Fed. R. Civ. P. 37(e)(1). Any "evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The information alleged to be missing must be more than simply relevant; instead, the information should be "crucial" to the case, *Marshall*, 313 F.R.D. at 697-98, such as by serving a "unique and vital role." *Steves & Sons Inc.*, 327 F.R.D. at 110 ("The record here does not indicate that the ESI lost because of Pierce's deletion policy would have significantly improved JELD-WEN's ability to prove trade secret misappropriation, if at all."); *see also In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 1299, 1310 (N.D. Ga. 2011)

---

or the guidance to preserve the record, I did turn on chat history for all relevant communications."); Ex. 7 at 124:7-16 ("Q. Did you receive a litigation hold at any point since you've been at Google? A. Yes. Q. And whatever advice it has been, have you followed that advice? A. Yes."); Ex. 8 at 71:16-24 ("My legal team has told me if there is a situation where I was discussing ad tech at this stage in my career, I would have to be on an on-the-record chat."); Ex. 9 at 17:10-16 ("Q. But you have [turned the history on in the chat function] in certain instances? A. I have in certain instances as I have been advised to, yes."); Ex. 10 at 172:25-173:9, 173:16-20 ("If I thought I was having a substantive conversation about a topic that was the subject of a litigation hold or that I received an instruction on a litigation hold [I would be prompted to turn history on]."); *see also* Pls.' Br. Ex. 3 at 3 (custodian "regularly toggled the Chat history setting to 'history on' when discussing matters related to a legal hold").

(Where "the moving party is not able to establish that the allegedly destroyed evidence is critical to the case, courts have consistently refused to impose spoliation sanctions."); *Pugh-Ozua* v. *Springhill Suites*, 2020 WL 6562376, at *4 (S.D.N.Y. Nov. 9, 2020) ("The mere fact that deleted materials were relevant does not itself establish prejudice.").

Plaintiffs contend that post-October 2019 Chat conversations would have been "an important window into the candid thought processes, intentions, and observations of those responsible for managing and operating Google's ad tech products." Pls.' Br. at 27. But mere speculation about the value of any messages alleged to be lost does not demonstrate prejudice. A "finding" of prejudice requires "concrete evidence" of prejudice, *In re Ethicon*, 299 F.R.D. at 524, not "speculative" argument, *Steves & Sons, Inc.*, 327 F.R.D. at 110; *see also, e.g.*, *Eisenband* v. *Pine Belt Auto., Inc.*, 2020 WL 1486045, at *9 (D.N.J. Mar. 27, 2020) (no prejudice where movant offered "no specifics about what" the evidence "might show"); *Simon* v. *City of New York*, 2017 WL 57860, at *7 (S.D.N.Y. Jan. 5, 2017) (no prejudice based on "pure speculation"). A movant cannot simply present "blanket and conclusory statements about what could have existed"; the mere possibility that the destroyed evidence could have been a "message containing some type of 'smoking gun'" is not enough. *Burns* v. *Medtronic, Inc.*, 2017 WL 11633260, at *6 (M.D. Fla. Aug. 9, 2017).

Plaintiffs particularly cannot show the loss of information critical to their case—and therefore demonstrate prejudice—for the following reasons:

*First,* any Chat messages that Google might have failed to preserve after DOJ initiated its investigation would have likely had little material relevance—much less been "critical" or "crucial"—to the key allegations in this case. Rule 37(e) "does not apply when information is lost *before* a duty to preserve arises." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Plaintiffs cannot dispute that the earliest Google could have been under a duty to preserve ad tech-related Chats was in October 2019, when it first received a CID from DOJ.

Indeed, DOJ starts its clock as of December 2019.  Pls.' Br. at 7.  Yet Plaintiffs' case centers on product innovation and design decisions made years before then.[13]  As a chart prepared by Plaintiffs' economics expert Professor Robin Lee indicates, every single product innovation and design that he opines is anticompetitive was launched before October 2019.  Ex. 11, Fig. 62.



Of the five acts Plaintiffs' expert opines were anticompetitive in his chart, the first three began in September 2009 when Google launched AdX on its own ad tech infrastructure with Dynamic Allocation.[14]  The fourth, variable floor restrictions (referring to Google's adoption of Unified Pricing Rules), was announced in March 2019 and rolled out in an extended launch, becoming

---

[13] One of the five acts challenged by Plaintiffs is Google's acquisition of AdMeld in 2011. Plaintiffs' experts do not opine that the acquisition itself was anticompetitive, but rather that Google's decision not to rebuild an AdMeld feature into its own ad tech tools was anticompetitive.

[14] Google disagrees with Plaintiffs' expert's characterization of the third act as "First/Last Look."  For purposes of this motion, both parties agree that the challenged conduct had ended by October 2019.  Google also disagrees with Plaintiffs' expert's characterization of the end date of the first act ("Google Ads-AdX exclusivity"), including for the reasons noted in footnote 1 of the expert's chart.

fully available by September 2019. The final act, Google's acquisition of AdMeld, was completed in 2011. The four acts Plaintiffs identified as anticompetitive in their complaint, but their experts do not opine were anticompetitive, also began before October 2019. The DoubleClick acquisition took place in 2008, Sell-Side Dynamic Revenue Sharing started in 2015, Project Bell in 2016, and Project Poirot in 2017. Ex. 11, ¶¶ 573, 685, App. L ¶ 58, 82.

It is therefore unlikely that Chat conversations that occurred between October 2019 and February 8, 2023 could have contained critical information about Google employees' "candid thought processes, intentions, and observations," Pls.' Br. at 27, about product design decisions and acquisitions that significantly predate that time period. For example, the possibility that a Chat conversation in October 2019 (or later) related to Google's decision not to rebuild an AdMeld feature in 2011 seems remote, at best. Plaintiffs' own exhibit list demonstrates how relatively unimportant evidence is from after October 2019: from their entire exhibit list, at most 16% of the Google-produced documents post-date October 1, 2019 and are relevant to the anticompetitive conduct alleged in this case.[15]

*Second*, Plaintiffs' claim of prejudice rests on a very narrow set of possible documents: Chat messages between October 2019 and February 2023 in which Google employees, who were subject to a legal hold, engaged in substantive conversations about the conduct challenged in this case but did not turn "history on." However, the record does not support that this limited set of Chat messages that Plaintiffs allege exists was the "only evidence available to prove" Plaintiffs' claims. *Pugh-Ozua*, 2020 WL 6562376, at *4. Plaintiffs cannot demonstrate prejudice unless the information that *has* been produced "is inadequate for its purposes." *FTC*

---

[15] There are approximately 1,273 Google-produced documents on Plaintiffs' exhibit list. Of those, at most around 200 are Google-produced documents that post-date October 1, 2019 and arguably constitute the "thought processes, intentions, and observations" of Google employees regarding anticompetitive conduct alleged in this case. (This figure excludes documents that relate only to Google's retention policies, documents that relate to services performed for the federal agency advertisers, documents that relate to Google's profits and losses, and other documents that are not relevant to the alleged conduct.)

v. *DirectTV, Inc.*, 2016 WL 7386133, at \*4 (N.D. Cal. Dec. 21, 2016); *see also Does 1-5* v. *City of Chicago*, 2019 WL 2994532, at \*8 (N.D. Ill. July 9, 2019) (no prejudice where spoliated information "provides limited value compared to other evidence in the record").

In this action, this Court observed that—*before the case had even been filed*—"a ton of discovery" had already occurred, including "more depositions" than "[the court] would normally allow" and around 2 million documents produced.  Mar. 10, 2023 Hearing Tr. at 22:4-14.  In total, Google produced 4 million more documents to Plaintiffs during litigation (bringing the total number produced to over 6 million, Ex. 20, ¶ 4).  Those documents include millions of Google emails, as well as discussion threads left as comments on documents, between the same Google custodians for whom Plaintiffs have requested Chat productions.  In that evidence, Google employees discuss in great—and candid—detail their "thought processes, intentions, and observations" about the conduct alleged to be anticompetitive in this case, including during the time periods when the relevant decisions were first made.  Google also produced 80 gigabytes of source code relating to the innovations and product design decisions that are the subject of Plaintiffs' claims, and  Plaintiffs have approximately 50 transcripts of deposition testimony by current and former Google employees.[16]

The voluminous discovery in this case and Plaintiffs' ample opportunity during the investigative phase and in discovery to ask questions about Google Chat and the conduct on the merits undercut any claim of prejudice.  *E.g.*, *Fowler* v. *Tenth Planet, Inc.*, 673 F. Supp. 3d 763, 769-770 (D. Md. 2023) (denying sanctions where movant argued that "the lost text messages are 'unique and relevant evidence' that is a 'truth serum' to Plaintiff's shifting narrative"); *Burns*, 2017 WL 11633269, at \*6 (no prejudice from deleted messages given that

---

[16] In addition to the 30(b)(1) and 30(b)(6) depositions of current and former Google employees taken in this litigation since January 2023, Plaintiffs also took 34 depositions during its pre-suit investigation.  And Plaintiffs have five deposition transcripts from the Texas litigation (to be used solely for impeachment purposes).

"Plaintiff has had ample opportunity to depose the custodians and the decision-makers in this case about their motivations"). Moreover, Plaintiffs do "not seem to have needed [the allegedly spoliated] information to prosecute this case": they "waited for months (and the close of discovery) to complain about the spoliation." *DirecTV*, 2016 WL 7386133, at *5. Notwithstanding their years-long knowledge of Google's Chat retention policies, Plaintiffs have investigated litigated this case without ever before arguing, or trying to establish, that they were missing critical evidence. Nor have Plaintiffs "offered evidence that" their "experts believe they needed different or additional information to render their opinions." *Id.*

There is no evidence that, despite the massive record available to Plaintiffs, the narrow universe of history-off Chat messages between October 2019 to February 8, 2023 would have altered the course of this case. Plaintiffs never concretely explain what details they are missing, other than to speculate that deleted Chat messages might have contained substantive conversations and may have led to additional discovery. Pls.' Br. at 27. Rule 37(e)(1) requires far more. Plaintiffs' motion for sanctions pursuant to Rule 37(e)(1) should therefore be denied because they have not carried their burden of showing prejudice.

## IV.   Plaintiffs Have Not Demonstrated That Any ESI—Much Less ESI Relevant to Their Claims—Was Lost.

While the Court need not reach this point, because Plaintiffs cannot establish either intent or prejudice to justify the sanctions they seek, Plaintiffs have also failed to demonstrate any Chat messages relevant to their claims were actually lost.

### A.   The Number of Chat Messages Google Produced Compared to Emails Does Not Establish the Loss of Relevant Chat Messages.

The number of Chat messages that Google produced does not demonstrate that relevant Chat messages were lost. Google collected over 8.6 million Chat messages. Ex. 20, ¶ 8. Only 543,341, or 6 percent, of the messages hit on search terms and contained responsive information. Ex. 20, ¶ 9. That number is consistent with Google's instruction to employees

that they should not use Chat messages for substantive communications relating to the topics covered by the legal hold they received.  If they did, they were instructed to *enable "history on,"* until February 2023 when "history on" was automatically enabled for all hold custodians. As explained above, *see* note 12 *supra*, Plaintiffs elicited testimony from Google employees who reported they complied with Google's legal hold instruction relating to Chat messages.

While Plaintiffs compare the number of Chat messages produced to the number of emails produced to infer that employees did not follow Google's instructions, Pls.' Br. at 2, that is not a valid comparison for two reasons:  First, the ordinary course retention periods of emails and Chat messages differed, with the normal retention period absent a legal hold for read emails being 18 months and unread emails being six months, compared to thirty days for on-the-record one-on-one Chat messages. Ex. 1 at 1.  When DOJ commenced its investigation, based on these differing retention periods available emails would have gone further back in time than available Chat messages.  Accordingly, it is no surprise that more emails were produced, as emails were retained in the normal course of business for a much longer period of time.  Second, as some employees testified, it was not their general practice to use Chat for substantive communications, using emails and other modes of communication instead,[17] and

---

[17] *E.g.*, Ex. 12 at 308:17-18 ("did not use Chat much for anything work-related"); Pls.' Br. Ex. 4N (Chat participants noting that they were turning history off but would "note it down somewhere" if they "see something important"); Pls.' Br. Ex. 8 at 37:4-19 (describing chats as "ad hoc" and "informal, kind of, not super relevant in some sense" and stating it was a "force of habit, usually, to have substantive, kind of, conversations over e-mail and Chat was more chitchat"); Ex. 7 at 124:4-6 (did not remember "having any history-off conversations about substantive matters"); Ex. 13 at 108:12-17 ("I occasionally use Chats.  Oftentimes to schedule meetings or check in on an employee, that kind of thing."); Ex. 14 at 227:9-229:14 ("I use chat for the situation that I described, that, okay, I'm late in the meeting, or where should we go for lunch, and those things."); Ex. 15 at 283:5-14 ("Q. Do you recall whether you ever received substantive updates by chat?  A. I could have received a chat that says, hey, we closed the deal . . . but anything that required greater communication . . . I would say it would be on the e-mail or meeting one-on-one or through the GPx process."); Ex. 16 at 23:24-24:13 ("When I communicate over chat, it's mostly, hey, can you jump into this meeting, or are you going to make it on time to the next meeting, or something like that.  So I don't recall talking about business issues via chat.  That's something that we do in either a live Hangout or via e-mail or

others testified that, once they received a legal hold, they ceased using Chat for substantive

purposes as much as possible, consistent with the hold instructions.[18]

**B.    The 40 Chat Conversations Cited by Plaintiffs Do Not Demonstrate the Loss of Relevant Chat Messages.**

Plaintiffs point to a compilation of 40 Chat conversations that they claim demonstrate

Google "employees seeking to make chats 'history off' to ensure they were not discoverable."

Pls.' Br. at 8-9; Pls.' Br. Ex. 4 (compilation of Chat conversations).[19]  Not one of the 40 Chat

conversations establishes what is relevant here for purposes of Plaintiffs' motion: whether, after

receiving a legal hold, a Google employee sought to use a history-off Chat to have a substantive

conversation *relating to the conduct alleged in this case*:

- Most (27) of the Chat conversations do not, on their face, contain any substantive discussion that is related to ad tech.  Pls.' Br. Ex. 4A, 4B, 4C, 4D, 4E, 4F, 4I, 4K, 4L, 4M, 4N, 4O, 4P, 4Q, 4R, 4S, 4T, 4U, 4V, 4W, 4X, 4Y, 4Z, 4AA, 4BB, 4CC, 4DD.  Nor do Plaintiffs assert otherwise.  These conversations were produced because Google agreed to review and produce all responsive, non-privileged Chat conversations from agreed-upon custodians that met certain preservation-related search terms agreed to by Plaintiffs (such as "history off"), *regardless of the relevance to any party's claims or defenses*.  These documents are therefore not proof that relevant ESI was lost.

- Four of the Chat conversations contain a substantive discussion that relates to ad tech, but the topics are not relevant to the conduct that Plaintiffs challenge in this case.[20] Pls.' Ex. 4G, 4H, 4J, 4JJ.

- Eight of the Chat conversations contain substantive discussion relating to ad tech that

---

[18] via documents or something like that."); Ex. 17. at 143:13-14 (explaining "I use" Chat "for figuring out meetings.").

[18] Pls.' Br. Ex. 9 at 387:16-389:3 ("So once I got guidance from counsel, I just changed my behavior.  And then Chat became, like, meeting schedules or it was more just admin work.  Q: When did you receive this training from counsel?  A: Consistent with when we were getting litigation holds."); Ex. 8 at 72:4-6 ("Q. Have you ever had any chats regarding ad tech since you rejoined?  A. No, I have not.").

[19] Plaintiffs' exhibit numbering includes 43 exhibits, but three (4GG, 4HH, and 4II) are duplicates of other exhibits already included (respectively, 4S, 4J, and 4A).

[20] Ad tech topics discussed in these Chat conversations that do not relate to the conduct alleged in this case include IDFA identifiers (Pls.' Br. Ex. 4H, 4J) and Project Hoover (Pls.' Br. Ex. 4G, discussing the same product launch that is described in Ex. 18), both of which are relevant only to advertising on mobile apps, as well as data uploaded by advertisers (Pls.' Br. Ex. 4JJ). None of Plaintiffs' allegations relate to conduct that was directed exclusively at app ads or to tools used exclusively for app ads.

is arguably relevant to the claims in this case.  These discussions are "on the record" and demonstrate the opposite of what Plaintiffs are asserting.  In five of the Chat conversations, employees held substantive conversations without any reference to turning history off.  Pls.' Br. Ex. 4MM, 4NN, 4OO, 4PP, 4QQ.  The other three show that Google employees subject to a legal hold knew that they were obligated to turn history on if they still held relevant substantive conversations over Chat.  Pls.' Br. Ex. 4EE, 4FF, 4KK.[21]  Together, these eight conversations demonstrate that, in the limited circumstances when relevant substantive conversations were held over Chat, they were preserved, collected, and produced to Plaintiffs.

- Finally, one exhibit contains an email a Google employee sent to himself in *April 2009*—over a decade before any duty to preserve in this case—containing the contents of a Chat conversation.  Pls.' Ex. 4LL.  This 2009 document cannot show that relevant ESI was lost between October 2019 and February 8, 2023.

Of those 40 Chat conversations produced by Google, ***Plaintiffs asked about only one of them in a deposition***, Pls.' Br. Ex. 4H, not performing any due diligence concerning the other Chat messages on which they base their motion.  The one Chat conversation that DOJ asked about concerned IDFA identifiers, which, as the deponent explained, are relevant only to app ads, which Plaintiffs contend are outside of their relevant markets.  Ex. 19 at 820:6-9.  None of the conduct that Plaintiffs challenge in this case involves tools or conduct that relate exclusively to app ads.  The 40 Chat conversations do not, on their face, demonstrate the loss of ESI relevant to this case.

### C.    The Timing of Google's Issuance of Legal Holds Does Not Establish the Loss of Relevant Chat Messages.

Plaintiffs never raised concerns about the timing of when custodians received legal hold notices until this motion, including during the meet and confer to discuss this motion.[22]  Most custodians in this matter received multiple legal holds.  After receiving Plaintiffs' motion,

---

[21] Pls.' Br. Ex. 4EE ("Refraining  from comments because I'm [on] lit hold, but happy to rant in person"), 4FF ("also, I need to remember that all my chats are now saved/discoverable by default, FYI"), 4KK (continuing conversation after realizing history was on and employee refraining from substantive discussion in Chat).

[22] On August 2, 2024 at 12:06 p.m., Plaintiffs' counsel sent Google's counsel an email advising of their intent to file the motion and stating that it was their "assumption that Google opposes this motion," offering a meet and confer "if desired."  No specifics were provided in the meet and confer beyond the fact that the motion applied to Chat messages.  At no time did Plaintiffs mention legal holds.

Google determined that the legal hold dates provided for some custodians during discovery mistakenly were not the *earliest* legal holds the custodians received for this matter.   For example, Plaintiffs emphasize in their motion that Neal Mohan received a legal hold notice in 2023.  Pls.' Br. at 20.  Mr. Mohan did receive a legal hold or reminder notice in 2023 after this case was filed, but he also received a legal hold in 2019 after DOJ issued its CID.   Google did not catch this mistake until Plaintiffs' motion.

Based on Google's review of all of the legal holds that each agreed-to custodian in this case received, set forth in Appendix A are the earliest dates when each of those custodians received a legal hold relevant to this matter.[23]  As demonstrated in Appendix A, there is nothing in the timing of Google's legal holds to support an inference that Google deliberately sought to deprive Plaintiffs of evidence in this case.

## D.   Decisions by Courts in Other Matters Do Not Establish the Loss of Relevant ESI in This Case.

In the absence of sound evidence from the record in this case, Plaintiffs discuss at length Judge Donato's decision in the *Google Play* litigation over a year ago.  However, Google's early disclosure of its retention processes—and Plaintiffs' acknowledgement of those processes in writing—distinguishes this case from *Play*, where Judge Donato found that Google "should have advised plaintiffs about its preservation approach early in the litigation."  *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023).[24]

Plaintiffs must base their motion on the facts and circumstances in this case—not

---

[23] Google is not waiving attorney-client privilege by providing information as to the timing of its issuance of legal hold notices for the limited purpose of responding to Plaintiffs' motion. Google has provided this information in other matters without courts finding a privilege waiver.

[24] After Plaintiffs filed their motion, Judge Mehta issued his decision in *United States* v. *Google LLC*, 2024 WL 3647498 (D.D.C. Aug. 5, 2024).  Although Judge Mehta criticized Google's Chat retention processes prior to February 8, 2023, he did not grant DOJ's request for an adverse inference or otherwise sanction Google.  *Id.* at *133-*134.  The question Plaintiffs' motion raises is not whether Google's Chat retention processes were perfect—or even whether they were negligent or grossly negligent; "negligent or even grossly negligent behavior" does not suffice for purposes of Rule 37(e) sanctions. Fed. R. Civ. P. 37(e) advisory committee's

another case—as due process requires.  *E.g.*, *Serra Chevrolet, Inc.* v. *Gen. Motors Corp.*, 446 F.3d 1137, 1152 (11th Cir. 2006) (holding discovery sanction violated due process where it was not "specifically related to the particular claim which was at issue" in discovery); *Gen. Ins. Co. of Am.* v. *E. Consol. Utils., Inc.*, 126 F.3d 215, 220 (3d Cir. 1997) (due process requires that sanctions be specifically related to claim at issue in discovery).

### V.   Plaintiffs' Request for Sanctions Pursuant to the Court's Inherent Authority Should Be Denied Because Rule 37 Controls.

"Rule 37(e) governs the spoliation analysis for electronically stored information ('ESI')."  *Steves & Sons Inc.*, 327 F.R.D. at 103.  As the Advisory Committee Notes to the 2015 amendments to Rule 37(e) state:  "New Rule 37(e) replaces the 2006 rule.  It authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures.  *It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used.*"  In any event, Plaintiffs' burden for establishing its entitlement to sanctions pursuant to the Court's inherent authority are similar to those under Rule 37(e).  *Steves & Sons Inc.*, 327 F.R.D. at 104.  For the reasons explained above, Plaintiffs have not met their burden of establishing those requirements, and their motion should therefore be denied.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for an adverse inference should be denied.

---

note to 2015 amendment.  For the sanctions sought, Plaintiffs must establish that Google acted with the intent to deprive Plaintiffs of information critical to their case.  Google's disclosure of its Chat retention processes on November 20, 2019—at the outset of DOJ's investigation—and extensive preservation and production of ESI materials are inconsistent with any intent by Google to deprive Plaintiffs of information critical to their case, and Plaintiffs have not demonstrated any prejudice in this case.

Dated: August 16, 2024

Respectfully submitted,

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Justina K. Sessions (*pro hac vice*)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
CRAIG C. REILLY, ESQ:
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Bryon P. Becker (VSB #93384)
Erica Spevack (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
kdunn@paulweiss.com

Erin J. Morgan (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3387
Facsimile:  (212) 492-0387
ejmorgan@paulweiss.com

*Counsel for Defendant Google LLC*

27