# EXHIBIT 10

**In the Matter Of:**

*In Re: Google Antitrust Investigation*

*DONALD HARRISON*

*October 19, 2021*



                                                                              1

```
------------------------------------------X

In Re:  Google Antitrust Investigation


1:20-cv-03010-APM

------------------------------------------X

        ***HIGHLY CONFIDENTIAL***


        DEPOSITION OF DONALD HARRISON






DATE:  October 19, 2021

TIME:  12:18 p.m.

PLACE:   ***REMOTE***

BEFORE:  Rebecca Schaumloffel, RPR, CCR-NJ

JOB NO:  2021-814957
```

Case 1:23-cv-00108-LMB-JFA   Document 1169-11   Filed 08/16/24   Page 4 of 8 PageID# 85011
In Re: Google Antitrust Investigation
Highly Confidential
Donald Harrison
October 19, 2021

4

1           D. HARRISON

2      THE VIDEOGRAPHER:  Good

3 afternoon.  We are now on the record.

4 Today's date is October 19, 2021, and

5 the time is 12:19 p.m. Eastern Time.

6 This is the video deposition of Donald

7 Harrison in the matter of Google

8 60-51611-0009 filed in the United

9 States Department of Justice, case

10 number 30758.

11      This deposition is taking place

12 via web video conference with all

13 participants attending remotely.  My

14 name is Jose Reyes, I'm the

15 videographer representing Lexitas.

16      Will counsel on the conference

17 please identify yourself and state

18 whom you represent, beginning with the

19 questioning attorney.

20      MR. NIERLICH:  Good morning.  My

21 name is Chuck Nierlich with the

22 Antitrust Division of the Department

23 of Justice.  I'm joined by my

24 colleagues Michael Wolin, Sue Majewski

25 and Dawid Skalkowski.

Case 1:23-cv-00108-LMB-JFA   Document 1169-11   Filed 08/16/24   Page 5 of 8 PageID# 85012
In Re: Google Antitrust Investigation                                    Donald Harrison
                        Highly Confidential                              October 19, 2021

172

1                     D. HARRISON
2    role in the past?
3         A.    Yes.  We generally -- so when I
4    managed corporate development, so now we're
5    going back to 2015, I would generally rotate
6    people in and out so there would be a number
7    of corporate development professionals that
8    would have worked with our ads teams.
9               Under Sanjay Kapoor, you know, I
10   would be guessing.  I mean, I know who his
11   senior leads are and know them pretty
12   closely, but I couldn't say specifically who
13   is covering advertisements right now.
14   Advertising.
15        Q.    Do you know what an on-the-record
16   chat is in Hangouts?
17        A.    I do.
18        Q.    And what is it?
19        A.    It's when you click on
20   on-the-record when you are -- when you're in
21   the chat.  You have a chat, you have an
22   option to be off the record or on the record.
23   It's when you click it on the record and that
24   means that the chat is being recorded.
25        Q.    Have you ever marked a chat as on

173

1          D. HARRISON
2   the record?
3        A.   I believe I have over time.  I'm
4   subject to a number of litigation holds and
5   require, if I talk about substantive matters
6   in connection with those litigation holds, to
7   click on the record.  Sometimes it's another
8   person that clicks it on the record, which
9   puts you, your chat on the record as well.
10       Q.   Can you think of any specific
11  examples of marking a chat on the record?
12       A.   No.  I mean -- no.
13       Q.   What are the circumstances that
14  would prompt you to mark a chat on the
15  record?
16       A.   If I thought I was having a
17  substantive conversation about a topic that
18  was the subject of a litigation hold or that
19  I received an instruction on a litigation
20  hold.
21       Q.   But otherwise, the default for you
22  would be to have it off the record?
23       A.   It would be.
24       Q.   Do you ever ask someone to ping
25  something to you?

174

1                    D. HARRISON
2      A.   Yes, yes.
3      Q.   And what is -- when you use the
4  word "ping" in that way, what do you mean?
5      A.   Similar to how the exhibits are
6  appearing in the context of this
7  conversation.  If I wanted to review a
8  document, then I would ask someone to send it
9  to me, ping it to me, chat it to me.
10     Q.   There isn't a separate chat
11 program called Ping that you use?
12     A.   No.
13     Q.   What steps, if any, have you taken
14 to identify or collect documents on your
15 devices in connection with this
16 investigation?
17     A.   I have followed all of the
18 instructions I have received from my lawyers.
19 I think -- I know that they are on the back
20 end pulling my emails.  On the front end,
21 I've been asked to collect all of my written
22 notes and provide them to counsel, which I
23 have done.  And I know that they have made,
24 you know, flash copies of my mobile devices.
25     Q.   When did you provide your written

Case 1:23-cv-00108-LMB-JFA   Document 1169-11   Filed 08/16/24   Page 8 of 8 PageID# 85015
In Re: Google Antitrust Investigation  Donald Harrison
Highly Confidential  October 19, 2021

248

C E R T I F I C A T E

STATE OF NEW YORK    )
                     : SS.:
COUNTY OF NASSAU     )

I, REBECCA SCHAUMLOFFEL, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn and that such examination is a true record of the testimony given by that witness.

I further certify that I am not related to any of the parties to this action by blood or by marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 20th day of October, 2021.

_____

REBECCA SCHAUMLOFFEL