# EXHIBIT 51

# PUBLIC

Page 1

H I G H L Y   C O N F I D E N T I A L

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION
-------------------------------x
UNITED STATES, et al.,

        Plaintiffs,

    vs.            Case No.
                          1:23-cv-000108

GOOGLE LLC,

        Defendant.
-------------------------------x

HIGHLY CONFIDENTIAL
REMOTE/ORAL/WEB VIDEOCONFERENCE
VIDEOTAPED DEPOSITION OF JAMES GLOGOVSKY
Friday, August 25, 2023
9:11 a.m.

Reported by:
Jennifer Ocampo-Guzman, CRR, CLR

Job No. CS6072653

Page 2

August 25, 2023
9:11 a.m.

HIGHLY CONFIDENTIAL
Remote/Oral/Web Videoconference Videotaped Deposition of JAMES GLOGOVSKY, held via Zoom Web Videoconference, pursuant to subpoena, before Jennifer Ocampo-Guzman, a Certified Realtime Shorthand Reporter and Notary Public of the State of New Jersey.

Page 3

A P P E A R A N C E S:

UNITED STATES DEPARTMENT OF JUSTICE
Attorneys for Plaintiff United States
  325 7th Street, Suite 300
  Washington, DC 20004
BY:  JEFFREY VERNON, ESQ.
    DIANA HENRY, ESQ.
    RACHEL HANSEN, ESQ.
    LEVI MARKS, ESQ.

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
Attorney for Plaintiff State of New York
  28 Liberty Street
  New York, New York 10005
BY:  MORGAN FEDER, ESQ.

Page 4

APPEARANCES (Continued):

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Attorneys for Defendant Google LLC
  1285 Avenue of the Americas
  New York, New York 10019
BY:  ERIN J. MORGAN, ESQ.
    ELIZABETH NORFORD, ESQ.

THE NEW YORK TIMES
Attorney for The New York Times and the Deponent
  620 Eighth Avenue
  New York, New York 10018
BY:  DEMETRI BLAISDELL, ESQ.

ALSO PRESENT:
  MARC FRIEDMAN, Videographer

Page 5

HIGHLY CONFIDENTIAL
          THE VIDEOGRAPHER:  Good morning.
We are going on the record at 9:11 a.m.
on Friday, August 25, 2023.  Please note
this deposition is being conducted
virtually.  Quality of recording depends
on the quality of the camera and
internet connection of all participants.
What is heard from the witness and seen
on screen is what will be recorded.
Audio and video recording will continue
to take place unless all parties agree
to go off the record.  This is media
unit number 1 of the video-recorded
deposition of James Glogovsky in the
matter of United States, et al., versus
Google LLC.  This case is filed in the
United States District Court, Eastern
District of Virginia, Alexandria
division, case number 1:23-CV-00108.
     My name is Marc Friedman.  I'm the
certified video legal specialist and
your court reporter today is Jennifer
Guzman and we are both from the firm of
Veritext Legal Solutions.  I'm not

2 (Pages 2 - 5)

Page 138

GLOGOVSKY - HIGHLY CONFIDENTIAL

1  through that, that's fine, if you want
2  to not do that, that's also fine.
3      MS. MORGAN:  I mean I don't think
4  that there is a foundation issue.  If
5  you want to explain your issue, I'm
6  happy to try to cure it.  I just don't
7  understand what it is.
8      MR. VERNON:  Sure.  I will try to
9  be brief.  So as I read the e-mail,
10 Google conducted an experiment and so my
11 objection, you know, it wasn't
12 Mr. Glogovsky or The New York Times that
13 conducted the experiment.  So my
14 objection in general, at least the
15 foundation part of it before, was that
16 you haven't shown to Mr. Glogovsky he
17 knows about the reason why the
18 experiment was conducted or how it was
19 conducted or what it was shown, a lot of
20 his answers were phrased as, you know,
21 based on this e-mail, I think X, which
22 suggested to me that he may not have
23 been personally involved.  Again, I'm
24 happy -- you may be able to walk through

Page 139

GLOGOVSKY - HIGHLY CONFIDENTIAL

1  it and show it, but that was the basis
2  for the objection.
3      MS. MORGAN:  I guess we can go off
4  the record and I can reread the record
5  again and see if I agree with you.  So
6  let's do that.
7      THE VIDEOGRAPHER:  Standby, please.
8  The time is 12:35.  We are going off the
9  record.  One second.
10     (Lunch recess taken at 12:35 p.m.)

Page 140

GLOGOVSKY - HIGHLY CONFIDENTIAL

1      A F T E R N O O N   S E S S I O N
2      (Time noted:  1:17 p.m.)
3      THE VIDEOGRAPHER:  The time is 1:17
4  and we are back on the record.
5      MS. MORGAN:  I am going to reserve
6  the rest of my time.  So for now,
7  Mr. Glogovsky, thank you, and I'm going
8  to pass you to Mr. Vernon for continued
9  questioning.
10     MR. VERNON:  Okay.  Thank, you
11 Mr. Glogovsky, for bearing with us.
12 J A M E S   G L O G O V S K Y, resumed.
13 EXAMINATION BY
14 MR. VERNON:
15     Q.  Let me first ask you about the
16 publisher ad servers that The New York Times
17 has used.  Does that make sense?
18     A.  Yes.
19     MS. MORGAN:  Object to form.
20     Q.  Today, The New York Times uses DFP
21 from Google as its publisher ad server; is
22 that right?
23     MS. MORGAN:  Object to form.
24     A.  No, we use multiple ad servers

Page 141

GLOGOVSKY - HIGHLY CONFIDENTIAL

1  across our overall business.
2      Q.  Today for display The New York
3  Times uses Google's DFP as its publisher ad
4  server; is that right?
5      MS. MORGAN:  Object to the form.
6      A.  Yes.
7      Q.  Prior to using DFP as The New York
8  Times' publisher ad server, The New York
9  Times used a publisher ad server that it had
10 built and operated itself; is that right?
11     MS. MORGAN:  Object to the form,
12 leading.
13     A.  Yes, that's correct.
14     Q.  I am going to reask.
15     Before using DFP as its publisher
16 ad server, what did The New York Times use as
17 its publisher ad server?
18     A.  The New York Times used a
19 proprietary ad server to fulfill our ads
20 across our properties before Google Ad
21 Manager or DFP.
22     Q.  And who built and operated that
23 proprietary ad server?
24     A.  The New York Times resources and

Page 146

GLOGOVSKY - HIGHLY CONFIDENTIAL

    MS. MORGAN: Objection to form.

    A. Sorry. Can you clarify the question?

    Q. Sure.

    When The New York Times switched from using its proprietary publisher ad server for display to using Google's DFP as its publisher ad server for display, what impact, if any, did it have on the amount of revenue that The New York Times received from Google's AdX?

    A. Switching to Google Ad Manager allowed us to operate with programmatic partners more effectively in the now modern space of programmatic, historically programmatic was at the beginning of the programmatic lifespan, it was a tag-based solution which was in efficient and ineffective and switching to Google Ad Manager allowed us to work with more partners more effectively and utilize features that were not available within our own proprietary ad server.

    Q. When you mentioned a tag-based

Page 147

GLOGOVSKY - HIGHLY CONFIDENTIAL

system, what were you referring to?

    A. In the past, early days in programmatic, the programmatic partner, whether that be a network or a specific advertiser that wanted to create a programmatic-ish relationship, they would send us a creative tag that would be placed into the ad server and then submit bids within that tag, but that did not mean that that programmatic bid would win, and ultimately making that impression unfilled and not being monetized for the publisher, which would then put the revenue at a deficit. The modern programmatic space now allows for more bids to be submitted, and then fill when something chooses not to win the bid, or that's not the right audience for it, that they did not compete, compete to win the CPM.

    MR. BLAISDELL: I'll just object to the form of the last question.

    Q. Under tagged-based bidding for display in multiple exchanges submit realtime bids for the same impression?

Page 148

GLOGOVSKY - HIGHLY CONFIDENTIAL

    MS. MORGAN: Objection to form, lacks foundation.

    A. A tagged-based solution is not an exchange and it would be -- it would not be as effective.

    Q. Why is a tagged-based system for display not as effective in your opinion?

    MS. MORGAN: Objection, form.

    MR. BLAISDELL: Object to the form.

    A. The tagged-based solution is not as effective because when the specific tag is entered into the ad server, it will be called by the ad server and it may win, but a bid may not be returned or the bid may not be won, within the tag, and then it would go unfilled and there would be essentially a blank space and the publisher would not earn revenue on that.

    Q. Let me go back to another question.

    When The New York Times switched from using its proprietary publisher ad server for display to using Google's publisher ad server, what effect, if any, did that have on the amount of revenue The New

Page 149

GLOGOVSKY - HIGHLY CONFIDENTIAL

York Times got from Google's AdX?

    MS. MORGAN: Objection to form.

    A. I cannot speak to the specific numbers off the top of my head, but switching to Google Ad Manager allowed us to incorporate programmatic more fully into our advertising business, and resulted in an increase in programmatic revenue and the overall revenue to the bottom line.

    Q. Let me turn back to The New York Times' proprietary publisher ad server.

    What disadvantages, if any, are there to The New York Times using a publisher ad server for display that it has built and operated itself?

    MR. BLAISDELL: Object to form.

    MS. MORGAN: Objection to the form.

    A. Just to clarify, disadvantages?

    Q. Right.

    A. Maintaining ad technology that is homegrown, built internally, whether that be an ad server, has several disadvantages. One, the operational support and infrastructure in capital resources required

Page 298

1  GLOGOVSKY - HIGHLY CONFIDENTIAL
2  will reserve the rest of my time to use
3  then.
4      MR. VERNON:  Thank you
5  Mr. Glogovsky, to Demetri and the court
6  reporter, Google's counsel and
7  everybody.  Definitely appreciate it.
8  It's been a long day and we thank you
9  for your time.
10     MS. MORGAN:  I second that.  Thank
11 you.  I know it's painful to sit for a
12 deposition, especially on a summer
13 Friday, and we really appreciate the
14 time.
15     MR. BLAISDELL:  Sorry.  Just before
16 we go off the record, I will also note
17 that The Times also objects to
18 Ms. Morgan's attempt to reserve time for
19 some subsequent deposition.  We've made
20 the witness available now for the time
21 that the parties were permitted to
22 examine him, and it's our position that
23 there will be no further deposition for
24 no further questioning by either party
25 to this case.

Page 299

1  GLOGOVSKY - HIGHLY CONFIDENTIAL
2      THE VIDEOGRAPHER:  Okay to close
3  the record?
4      MS. MORGAN:  Yes, we can close it.
5      THE VIDEOGRAPHER:  Standby.  This
6  concludes today's deposition given by
7  James Glogovsky.  The number of media
8  units used is six and will be retained
9  by Veritext Legal Solutions.  We are
10 going off the record at 5:26 p.m.,
11 Eastern Daylight Time.  Thank you,
12 everybody.  Have a great weekend.  Nice
13 working with you.
14     (Time noted:  5:26 p.m.)

Page 300

1
2  STATE OF _____)
3                         ) :ss
4  COUNTY OF _____)
5
6
7      I, JAMES GLOGOVSKY, the witness
8  herein, having read the foregoing
9  testimony of the pages of this
10 deposition, do hereby certify it to be a
11 true and correct transcript, subject to
12 the corrections, if any, shown on the
13 attached page.
14
15     _____
16         JAMES GLOGOVSKY
17
18 Sworn and subscribed to before
19 me, this        day of
20       , 2023.
21 _____
22 Notary Public
23
24
25 Job No. CS6072653

Page 301

1
2         C E R T I F I C A T E
3  STATE OF NEW JERSEY  )
4                       : ss.
5  COUNTY OF MIDDLESEX  )
6      I, Jennifer Ocampo-Guzman, a
7  Certified Realtime Shorthand Reporter and
8  Notary Public within and for the State of New
9  Jersey, do hereby certify:
10     That JAMES GLOGOVSKY, the witness
11 whose deposition is hereinbefore set forth,
12 was duly sworn, via remote/oral/web
13 videoconference, and that such deposition is
14 a true record of the testimony given by the
15 witness.
16     I further certify that I am not
17 related to any of the parties to this action
18 by blood or marriage, and that I am in no
19 way interested in the outcome of this
20 matter.
21     IN WITNESS WHEREOF, I have
22 hereunto set my hand this 27th day of August
23 2023.
24
              *J. Ocampo-Guzman*
25     JENNIFER OCAMPO-GUZMAN, CRR, CLR

Veritext Legal Solutions
800-567-8658                                        973-410-4098