# EXHIBIT 105

# PUBLIC

Page 1

```
  1           IN THE UNITED STATES DISTRICT COURT
  2          FOR THE EASTERN DISTRICT OF VIRGINIA
  3                   ALEXANDRIA DIVISION
  4
         UNITED STATES OF AMERICA,    )
  5      et al.,                      )
                                      )
  6              Plaintiffs,          )  Case No.
                                      )  1:23-cv-
  7         vs.                       )  000108-LMB-
                                      )  JFA
  8      GOOGLE LLC,                  )
                                      )
  9              Defendant.           )
         ---------------------------
 10
 11
 12                            Wednesday, September 6, 2023
 13                            9:59 a.m.
 14
 15
 16           Remote Zoom Videotaped Deposition of
 17      KRISTY KOZLOWSKI, held before Stacey L.
 18      Daywalt, a Court Reporter and Notary Public of
 19      the District of Columbia.
 20
 21
 22
 23
 24
 25      Job No. CS6078882
```

## Page 2

1  A P P E A R A N C E S:
2  (All appearances via remote Zoom)
3
4  Attorneys for United States:
5      DEPARTMENT OF JUSTICE ANTITRUST DIVISION
6      BY:  DAVID GEIGER, ESQ.
7          MATTHEW GOLD, ESQ.
8          ELIZABETH ARAMAYO, ESQ.
9          JEFF QUI, ESQ.
10     5th Street NW, Suite 7100
11     Washington, DC 20530
12     david.geiger@usdoj.gov
13     matthew.gold@usdoj.gov
14     elizabeth.aramayo@usdoj.gov
15     yinjiaqiu@usdoj.gov
16
17 Attorneys for Comcast and The Witness:
18     DAVIS POLK & WARDWELL LLP
19     BY:  CHRISTOPHER LYNCH, ESQ.
20         MICHAEL KUCHARSKI, ESQ.
21     450 Lexington Avenue
22     New York, New York 10017
23     (212) 450-4034
24     christopher.lynch@davispolk.com
25     michael.kucharski@davispolk.com

## Page 3

1  A P P E A R A N C E S (CONTINUED):
2
3  Attorneys for Defendant Google LLC:
4      PAUL WEISS RIFKIND WHARTON & GARRISON
5      BY:  MEREDITH R. DEARBORN, ESQ.
6          CARTER GREENBAUM, ESQ.
7      535 Mission Street, 24th Floor
8      San Francisco, California 94105
9      (650) 208-22788
10     mdearborn@paulweiss.com
11     cgreenbaum@paulweiss.com
12
13
14
15
16
17
18
19
20
21 ALSO PRESENT:
22
23     CHARLES SHIOLENO, ESQ., Comcast
24     JULIA PUDLIN, ESQ., Comcast
25     CHRIS MCWILLIAMS, Videographer

## Page 4

```
--------------------I N D E X------------------

WITNESS           EXAMINATION BY      PAGE

KRISTY KOZLOWSKI   BY MS. DEARBORN       7
                   BY MR. GEIGER       156
                   BY MS. DEARBORN     235

--------------------EXHIBITS------------------

EXHIBITS                            PAGE  LINE
Exhibit 1
Comcast's Responses and Objections
to Google's Rule 30(b)(6)
Deposition Notice                    13    19

Exhibit 2
E-mail dated 5/16/18
COM-00062160-61                      30    3

Exhibit 3
Competition in Television and
Digital Advertising, May 2-3, 2019   51    8

Exhibit 4
Q2 2023 HQ Product Diff Tactical
Review dated 2/2/23
COM-00000104-232                     69    2

Exhibit 5
CB NED Q1 2023 Performance QBR,
May 2023
COM-00000415-435                    101    9

Exhibit 6
E-mail dated 9/20/18
COM-00035829                        111   20

Exhibit 7
Comcast 2017 JBP Update
COM-00035830-858                    112    1
```

## Page 5

```
EXHIBITS (CONTINUED)               PAGE
Exhibit 8
CTV Programmatic Head-to-Head
Test, Google vs. The Trade Desk,
January 2023
COM-00001141-1153                   116   25

Exhibit 9
Comcast About Google Marketing
Platform, February 26, 2020
COM-00059612-669                    126   18

Exhibit 10
cookie-less Future Preparation,
Comcast Divisional Overview, June
22, 2021
COM-00000236-269                    144    4

Exhibit 11
E-mail chain dated 9/17/19
COM-00136496-499                    149    6

Exhibit 12
Exhibit 11 remarked
COM-00136496-499                    152   25

Exhibit 13
E-mail with attachment dated
3/15/20
COM-00297094-104                    202    6

Exhibit 14
2019 Joint Business Plan,
May 10, 2019
COM-00059523-537                    215    7
```

**Page 6**

1    THE VIDEOGRAPHER: Good morning. We
2 are going on the record at 9:59 a.m. on
3 September 6th, 2023.
4       Please note that this deposition is
5 being conducted virtually. Quality of
6 recording depends on quality of camera and
7 Internet connection of participants. What is
8 seen from the witness and heard on screen is
9 what will be recorded.
10      This is Media Unit 1 of the video
11 recorded deposition of Kristy Kozlowski taken
12 by counsel in the matter of United Sates, et
13 al. v. Google LLC, filed in the United States
14 District Court for the Eastern District of
15 Virginia, Alexandria Division, Case
16 No. 1:23-cv-000108.
17      My name is Chris McWilliams
18 representing Veritext Legal Solutions, and I'm
19 the videographer.
20      The court reporter is Stacey
21 Daywalt, also from Veritext.
22      I am not authorized to administer an
23 oath, I am not related to any party in this
24 action, nor am I financially interested in the
25 outcome.

**Page 7**

1       If there are any objections to
2 proceeding, please state them at the time of
3 your appearance.
4       Counsel will now state their
5 appearances and affiliations for the record,
6 beginning with the noticing attorney.
7       (Counsel identify themselves on the
8 record.)
9       THE VIDEOGRAPHER: Will the court
10 reporter please swear in the witness, and then
11 counsel may proceed.
12
13          KRISTY KOZLOWSKI,
14 called as a witness, having been duly sworn by
15 a Notary Public, was examined and testified as
16 follows:
17
18 EXAMINATION BY
19 MS. DEARBORN:
20    Q.   Good morning, Ms. Kozlowski.
21    A.   Morning.
22    Q.   Am I pronouncing your name
23 correctly?
24    A.   Yes, you are.
25    Q.   Fantastic.

**Page 8**

1       My first question is: Have you ever
2 been deposed before?
3    A.   I have, many years ago.
4    Q.   How long ago?
5    A.   When I was 15.
6    Q.   Okay.
7    A.   It was a long time ago.
8    Q.   I'm sure --
9       (Simultaneous crosstalk.)
10   Q.   I'm sorry. I interrupted you.
11   A.   No, I was going to say on personal
12 injury, not related professionally.
13   Q.   Great.
14      Well, I'm sure your counsel has gone
15 over the rules of the road, but I'll just
16 briefly identify a few things that will make
17 our proceedings today go a bit smoother.
18      The first is you have to give verbal
19 answers, no nods or uh-huh or uh-uh.
20      Do you understand that?
21   A.   I do.
22   Q.   Perfect.
23      The second is, in order to help the
24 videographer get a clean transcript, you'll
25 need to let me finish my question before you

**Page 9**

1 start your answer.
2       Is that all right?
3    A.   Yes.
4    Q.   We will take a few breaks today.
5       The -- you're welcome to ask for a
6 break at any time. This is not a marathon --
7 or I guess this is not a sprint, it's a
8 marathon.
9       But my only question is that you
10 would refrain from taking a break while a
11 question is pending.
12      Is that all right?
13   A.   Yes, that is.
14   Q.   Okay. I will endeavor to ask clear
15 questions today.
16      But if at any time my question is
17 confusing, please just ask me to rephrase and
18 I'll do my best.
19      If I don't -- if you don't ask me to
20 rephrase, I'll just understand -- or I'll
21 assume that you have understood the question.
22      Is that okay?
23   A.   Yes.
24   Q.   Is there any reason you can't give
25 complete and honest testimony today?

Page 138

1  1:38 p.m.)
2      THE VIDEOGRAPHER: We are back on
3  the video record at 1:38.
4      This begins Media Unit four.
5      MR. LYNCH: Just a note for the
6  record that Julia Pudlin from Comcast's legal
7  department has joined us in the room here.
8      MS. DEARBORN: Great.
9  BY MS. DEARBORN:
10     Q.   Welcome back from lunch,
11 Ms. Kozlowski.
12     A.   Thank you.
13     Q.   Great.
14         So we've talked about various
15 metrics on which Comcast evaluates the
16 performance of the channels that it uses to
17 purchase advertories and inventory, such as
18 cost per click, cost per media, cost per lead,
19 et cetera.
20         Is there a term that you would use
21 to describe those metrics?
22     A.   I would probably use KPI, key
23 performance indicators.
24     Q.   Okay. So do you also -- does
25 Comcast also evaluate social media spend along

Page 139

1  those same metrics, those same KPI metrics?
2      MR. GEIGER: Object to form.
3      THE WITNESS: Yes, some of them,
4  where relevant.
5      Q.   Can you explain.
6      A.   We -- cost per acquisition, CPA, as
7  I keep mentioning, is one of our primary
8  object- -- KPIs, just given our business.
9         Not all partners in the social space
10 can measure against CPA. They have been making
11 some strides in some cases, but not every KPI
12 is necessarily measurable in the same
13 platforms.
14     Q.   Okay. Now, to what extent, if at
15 all, would Comcast consider shifting its
16 spending from display to social if display was
17 underperforming along key KPIs?
18     A.   That would be likely --
19         MR. GEIGER: Form, vague.
20         THE WITNESS: It would be a likely
21 optimization across probably digital in
22 general, and I think we would open it up to
23 beyond just social.
24 BY MS. DEARBORN:
25     Q.   Can you please explain how Comcast

Page 140

1  would consider shifting its spending between
2  the various digital channels if display was
3  underperforming along key KPIs.
4      A.   Yes.
5         If one of our key KPIs is CPA and
6  display is becoming more expensive to deliver a
7  CPA goal and other digital tactics like video
8  or digital channels like social or online audio
9  are showing a more efficient CPA, then there
10 could potentially be an optimization of
11 investment that would move our money out of
12 display into other digital areas.
13     Q.   I was just going to ask what you
14 meant by "an optimization of investment."
15         Do you mean shifting spending or
16 something else?
17     A.   Yeah, shifting spending.
18     Q.   Okay. And when we talk about
19 social, I believe we spoke about this before,
20 but that includes platforms like TikTok.
21 Right?
22     A.   Yes.
23     Q.   And Facebook?
24     A.   Yes.
25     Q.   And Instagram?

Page 141

1      A.   Yes.
2      Q.   And are those platforms what are
3  known as walled gardens?
4      A.   Yes.
5      Q.   And can Comcast purchase advertising
6  inventory across any of those platforms using
7  Google's tools?
8      A.   No.
9      Q.   Does the social category include any
10 other platforms -- sorry. You mentioned Reddit
11 also and some others.
12         Can you just list again for the
13 record what social platforms Comcast considers.
14     A.   Yeah.
15         Our primary partners that we work
16 with from an investment standpoint would be
17 Meta, Twitter, Snapchat, TikTok.
18         But we also do spend with partners
19 like Nextdoor and Reddit and Pinterest, but
20 they do have a lower level of spend compared to
21 the others.
22     Q.   Are all of those platforms walled
23 gardens?
24     A.   I'm not entirely sure.
25     Q.   Can Comcast purchase advertising

Veritext Legal Solutions
800-567-8658                                                         973-410-4098

```
                                                              Page 142
 1   inventory on any of those platforms through
 2   DV360?
 3       A.   No, not to my knowledge.
 4       Q.   Now, to what extent, if at all,
 5   would Comcast consider shifting its spending
 6   from display to connected TV if display was
 7   underperforming along Comcast's key KPIs?
 8       A.   If the key KPI is underperforming
 9   and connected TV can deliver a better
10   performance against that same KPI, then yes, it
11   would be considered an optimization.
12       Q.   And to what extent, if at all, would
13   Comcast consider shifting its spending from
14   display to online video if display was
15   underperforming on Comcast's key KPIs?
16       A.   The same as connected TV.
17            We would look at other areas in
18   which we can measure the same KPI to see if an
19   optimization would be needed.
20       Q.   To what extent, if at all, would
21   Comcast consider shifting its spending from
22   display to broadcast television if display was
23   underperforming along Comcast's key KPIs?
24       A.   It would be considered but nuanced,
25   as we can't measure the same KPI in television
```

```
                                                              Page 143
 1   in the same fashion.
 2       Q.   If display was underperforming on
 3   Comcast's key KPIs, what other platforms would
 4   Comcast consider shifting its spending to?
 5       A.   Can you define "platform" in this
 6   instance.
 7       Q.   Maybe I should rephrase and say
 8   channel.
 9            Would that be better?
10            So if display was underperforming on
11   Comcast's key KPIs, what other channels would
12   Comcast consider spending -- shifting its
13   spending to?
14       A.   We would assess all channels.
15       Q.   Are there any channels that Comcast
16   would exclude if display was underperforming
17   along key KPIs?
18       A.   I don't think we would exclude.
19            But we would rely on historical
20   performance and media contribution to at least
21   narrow the list.
22       Q.   Great.  Thank you.
23            MS. DEARBORN:  So Mr. Greenbaum, can
24   you please put Tab 3 in the chat and remind me
25   what exhibit number we're on.
```

```
                                                              Page 144
 1            MR. GREENBAUM:  Sure.
 2            We're on Comcast 10, and it is now
 3   in exhibit share.
 4            (Exhibit 10, Cookieless Future
 5   Preparation, Comcast Divisional Overview, June
 6   22, 2021, COM-00000236-269, marked for
 7   identification.)
 8   BY MS. DEARBORN:
 9       Q.   Excellent.
10            So for the record, I've marked as
11   Comcast Exhibit 10 a document bearing Bates
12   No. COM-00000236.
13            Let me know when you have this,
14   Ms. Kozlowski.
15       A.   I have it.
16       Q.   Do you recognize this document?
17       A.   I do.
18       Q.   What is it?
19       A.   This is a document in which we were
20   giving an update to our divisional media
21   partners around the changes in the privacy and
22   regulatory space as cookies go away.
23       Q.   And who prepared this presentation?
24       A.   This would have been prepared by
25   folks on my team that oversees measurement and
```

```
                                                              Page 145
 1   analytics in partnership with the measurement
 2   and analytics team at Spark, our agency of
 3   record.
 4       Q.   And would the individuals who
 5   prepared this document have prepared it in the
 6   ordinary course of Comcast's business?
 7       A.   Yes, related to our work to prepare
 8   for the cookie-less future.
 9       Q.   And it was prepared on or about
10   June 22nd, 2021?
11       A.   Yes, that's correct.
12       Q.   And can you describe what a
13   cookie-less future is.
14            You touched on this a little bit
15   earlier, but please give me your understanding.
16       A.   Yes.
17            It's essentially cookies are the
18   signals in which we are able to sort of target
19   today, leveraging cookies to target in
20   programmatic media, as well as track and
21   measure the performance of our media.
22            So cookies are a heavily reliant
23   area in the programmatic space for us to
24   execute and invest our dollars to make them
25   targeting -- targetable and trackable.
```

Page 250

1  Ms. Kozlowski, I would like to thank you very
2  much for your time today.
3      THE WITNESS:  Of course.
4      MR. GEIGER:  Thank you,
5  Ms. Kozlowski.
6      THE WITNESS:  Thank you.
7      THE VIDEOGRAPHER:  We are going off
8  the record at 4:12.
9      This concludes today's testimony of
10 Kristy Kozlowski.
11     Total number of media used was five
12 and will be retained by Veritext Legal
13 Solutions.
14     (Deposition adjourned at 4:13 p.m.)

Page 251

1  District of Columbia, to wit:
2      I, Stacey L. Daywalt, a Notary
3  Public of the District of Columbia, do hereby
4  certify that the within-named witness remotely
5  appeared before me at the time and place herein
6  set out, and after having been duly sworn by
7  me, according to law, was examined by Counsel.
8      I further certify that the
9  examination was recorded stenographically by me
10 and this transcript is a true record of the
11 proceedings.
12     I further certify that I am not of
13 counsel to any of the parties, nor an employee
14 of counsel, nor related to any of the parties,
15 nor in any way interested in the outcome of
16 this action.
17     As witness my hand and Notarial Seal
18 this 8th day of September, 2023.

22 Stacey L. Daywalt, Notary Public
23 My Commission Expires:  4/14/2026

Page 252

1  Christopher Lynch Esq
2  Christopher.Lynch@davispolk.com
3      September 8th, 2023
4  RE:   United States, Et Al v. Google, LLC
5    9/6/2023, Kristy Kozlowski (#6078882)
6    The above-referenced transcript is available for
7  review.
8    Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12    The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 (erratas-cs@veritext.com).
17  Return completed errata within 30 days from
18 receipt of testimony.
19  If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
22     Yours,
23     Veritext Legal Solutions

Page 253

1  United States, Et Al v. Google, LLC
2  Kristy Kozlowski (#6078882)
3      E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10 PAGE_____ LINE_____ CHANGE_____
11 _____
12 REASON_____
13 PAGE_____ LINE_____ CHANGE_____
14 _____
15 REASON_____
16 PAGE_____ LINE_____ CHANGE_____
17 _____
18 REASON_____
19 PAGE_____ LINE_____ CHANGE_____
20 _____
21 REASON_____
23 _____  _____
24 Kristy Kozlowski            Date