# Plaintiffs' Exhibit 26

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF VIRGINIA
 3                       Alexandria Division
 4      - - - - - - - - - - - - - -+
                                    |
 5      UNITED STATES OF AMERICA,   |
        et al,                      |
 6                                  |
                   Plaintiffs,      |   Case Number:
 7                                  |
           vs.                      |   1:23-cv-00108-
 8                                  |   LMB-JFA
                                    |
 9      GOOGLE, LLC,                |
                                    |
10                 Defendant.       |
                                    |
11      - - - - - - - - - - - - - -+
12
13                    Video Deposition of
14                    ROBIN E. LEE, Ph.D.
15                  Friday, March 15, 2024
16                        9:39 a.m.
17
18
19
20      Veritext Job 6456904
21      Reported by:  Laurie Donovan, RPR, CRR, CLR
22
```

Page 166

1  In item 4, you're talking about pricing
2  floors that are submitted by DoubleClick for
3  Publishers into AdX, correct?
4      MR. NAKAMURA: Objection to form.
5      THE WITNESS: That's not accurate.
6  BY MR. ISAACSON:
7   Q  Okay. Why don't you describe it?
8   A  So paragraph 12, bullet 3, item (4)
9  refers to the elimination of variable price floors
10 within DFP, which represents different reserve
11 prices a publisher using DFP could use for the
12 different ad exchanges that are used to sell
13 impressions.
14  Q  And the price floors you are referring
15 to are submitted into AdX, correct?
16     MR. NAKAMURA: Objection to form.
17     THE WITNESS: So within DFP, AdX
18     receives a floor, but the variable pricing
19     floor restriction refers to whether or not a
20     publisher could use a different price floor
21     with a different exchange.
22

Page 167

1  BY MR. ISAACSON:
2   Q  All right. The price floors submitted
3  by publishers are submitted into DFP for any ad
4  exchange, correct?
5   A  Prior to the removal of the ability to
6  set variable floors, a publisher could specify a
7  different price floor into DFP --
8   Q  I'm not -- I'm just talking about at any
9  time, just a price floor, whether they're variable
10 or uniform.
11     The price floor is submitted by
12 publishers into DFP for any ad exchange, correct?
13  A  I guess it's the modifier "for any ad
14 exchange" that I'm, I'm confused by.
15  Q  For any ad exchange that DFP is going to
16 submit a price floor --
17     THE REPORTER: I'm sorry. Say it again.
18 BY MR. ISAACSON:
19  Q  Do you know, when DFP gets a price floor
20 from a publisher, who does it submit that price
21 floor to?
22     MR. NAKAMURA: Objection to form.

Page 168

1      THE WITNESS: So exchanges being called
2      within DFP can receive a floor when they're
3      called from DFP.
4  BY MR. ISAACSON:
5   Q  The -- all right, and in order to be
6  less exclusionary, Google would have to permit
7  publishers to submit variable price floors that
8  could be submitted to Google's rivals; is that
9  right?
10     MR. NAKAMURA: Objection to form.
11     THE WITNESS: So prior to 2019,
12     publishers could submit or use variable price
13     floors within DFP across exchanges. Post
14     2019, that ability was removed. An example
15     of less exclusionary conduct would be not
16     removing that functionality.
17 BY MR. ISAACSON:
18  Q  And that means that Google would have to
19 permit publishers to submit variable price floors
20 to Google's rivals, correct?
21     MR. NAKAMURA: Objection to form.
22     THE WITNESS: So less exclusionary

Page 169

1  conduct would have been Google continuing to
2  allow publishers to use variable price
3  floors, as is my understanding, they continue
4  to do in certain subsets in, in France, for
5  example.
6  BY MR. ISAACSON:
7   Q  And so what you're talking about,
8  though, is when you're saying "using variable
9  price floors," that means Google submits a price,
10 a variable price chosen by a publisher to one of
11 its rivals, correct?
12     MR. NAKAMURA: Objection to form.
13     THE WITNESS: So DFP, as a publisher ad
14     server, is a software product that publishers
15     can use to do many things, but one of which
16     is to facilitate the sale of indirect
17     open-web display transactions.
18     Publishers using DFP can specify, prior
19 to 2019, different floors for different ad
20 exchanges. So then when the publisher used
21 DFP, those floors the publisher could provide
22 would then be provided to the different

Page 170

1  exchanges.
2  BY MR. ISAACSON:
3  Q   DFP is -- you and I know this, but the
4  whole world doesn't know it.  "DFP" is DoubleClick
5  for Publishers, a Google product, correct?
6      THE REPORTER:  DoubleClick for what?
7  BY MR. ISAACSON:
8  Q   Publishers.  It's a Google product,
9  correct?
10  A   Google owns DFP, yeah.
11  Q   And so what you're saying is that prior
12  to 2019, DoubleClick for Publishers could submit
13  different price floors to different ad -- to, to,
14  to rival ad exchanges of Google's AdX, correct?
15      MR. NAKAMURA:  Objection to form.
16      THE WITNESS:  I think I answered that
17      customers using -- publishers using DFP prior
18      to 2019 were able to specify variable price
19      floors for different exchanges.
20  BY MR. ISAACSON:
21  Q   And if you were to return to that, what
22  that would mean is that Google's DFP product would

Page 171

1  be submitting variable price floors to rivals,
2  rival exchanges of Google?
3      MR. NAKAMURA:  Objection to form.
4      THE WITNESS:  So are you, are you
5      characterizing what --
6  BY MR. ISAACSON:
7  Q   I'm just trying to understand --
8  A   -- happened prior to 2019?
9  Q   No, I'm saying -- I'm just trying to
10  understand what, what needs to be implemented
11  here.
12      So at a high level, in order to be not
13  exclusionary, Google's DFP product would have to,
14  have to be able to submit variable price floors to
15  rival exchanges of Google?
16      MR. NAKAMURA:  Objection to form.
17      THE WITNESS:  I'm not expressing an
18      opinion on what it would have to do in order
19      for some conduct to not be exclusionary.  My
20      opinion is that this removal of a feature
21      functionality that publishers were able to
22      use within DFP harmed competition.

Page 172

1  BY MR. ISAACSON:
2  Q   And in order to eliminate that harm to
3  competition from removal of the feature
4  functionality, would you have to reinstate that
5  feature functionality and, and have Google's DFP
6  product submit, be able to submit variable price
7  floors to rival exchanges at Google?
8      MR. NAKAMURA:  Objection to form.
9      THE WITNESS:  So again, I'm not opining
10      on what must be done or what has to be done.
11      My opinion is that this action, removing this
12      ability to set variable pricing floors within
13      DFP, harmed competition.
14      MR. ISAACSON:  All right.  You can mark
15      this as Exhibit 6.
16      (Exhibit 6 was marked for
17      identification.)
18  BY MR. ISAACSON:
19  Q   Exhibit 6 is the Complaint that was
20  filed in this action.
21      I assume you've had the chance to review
22  this before?

Page 173

1  A   I have read that Complaint.
2  Q   If you could look at page 132, there's a
3  list of ten items of conduct that begin at the
4  bottom of page 132 and continue onto page 133.
5      Do you see that?  There's a list of ten.
6  They're numbered, too.
7  A   I see paragraph 312 which lists ten
8  actions.
9  Q   So item 1 there is "Google's acquisition
10  of DoubleClick to obtain not only a dominant
11  publisher ad server, DFP, but also a nascent ad
12  exchange, AdX, in order to pursue its goal of
13  dominance across the entire ad tech stack."
14      Have you, have you expressed an opinion
15  about whether the conduct in item 1 relating to
16  Google's acquisition of DoubleClick was
17  anticompetitive?
18      MR. NAKAMURA:  Objection to form.
19      THE WITNESS:  I'm not expressing an
20      opinion that Google's acquisition of
21      DoubleClick alone harmed competition.
22

Page 174

1  BY MR. ISAACSON:
2  Q   Looking at item 7, which refers to
3  Project Bell, are you expressing an opinion about
4  whether Google's Project Bell was anticompetitive?
5      MR. NAKAMURA:  Objection to form.
6      THE WITNESS:  So with respect to Bell, I
7  express the opinion that it demonstrates
8  Google Ads' substantial market power, but I
9  do not express the opinion that Project Bell
10  did or did not harm competition.
11 BY MR. ISAACSON:
12 Q   Item 8 refers to "sell-side Dynamic
13 Revenue Share."
14     Have you expressed an opinion in this
15 case as to whether sell-side dynamic revenue share
16 harmed accommodation?
17     MR. NAKAMURA:  Objection to form.
18     THE WITNESS:  So with respect to
19 sell-side dynamic revenue share, I express
20 the opinions that it represents an example of
21 AdX's market power, that it is a way in which
22 AdX was able to take advantage of the

Page 175

1  last-look within DFP, but I do not express an
2  opinion whether sell-side dynamic revenue
3  share alone did or did not harm competition.
4  BY MR. ISAACSON:
5  Q   And with respect to item 9, Project
6  Poirot, have you, have you expressed an opinion in
7  this case as to whether Project Poirot was
8  anti-competitive?
9      MR. NAKAMURA:  Objection to form.
10     THE WITNESS:  So I opine that Project
11 Poirot demonstrates Google's ability to
12 affect competition among ad exchanges through
13 behavior of its bidding tools, but I do not
14 opine that Project Poirot alone did or did
15 not harm competition.
16 BY MR. ISAACSON:
17 Q   The -- we're done with the Complaint.
18     If you can look go back to your
19 paragraph 12(3) on page 3 of your opening report.
20 A   Paragraph 12(3).
21 Q   With regards to item (1), "Providing
22 unrestricted access to Google Ads' advertiser

Page 176

1  demand exclusively to its Google -- exclusively to
2  its AdX ad exchange, and denying comparable access
3  to rival ad exchanges," you have given the opinion
4  in this case about effects on an ad exchange
5  market.
6      Am I correct you have not given any
7  opinions in this case about any effect of this
8  conduct on an ad server -- on a publisher ad
9  server market?
10     MR. NAKAMURA:  Objection to form.
11     THE WITNESS:  That is not correct.
12 BY MR. ISAACSON:
13 Q   The -- have you given opinions that item
14 1 had a competitive effect on the advertiser ad
15 network market?
16     MR. NAKAMURA:  Objection to form.
17     THE WITNESS:  So I opine that Google's
18 conduct that harmed the competitiveness of
19 rival ad exchanges harmed the competitiveness
20 of rivals in the publisher ad server market
21 and the advertiser ad network market, because
22 products in those latter two markets rely

Page 177

1  upon ad exchanges to transact open-web
2  display advertising.
3  BY MR. ISAACSON:
4  Q   The -- can you identify in the work that
5  you have done -- I'll start that over.
6      Can you identify where in your reports
7  you have quantified any anticompetitive effects on
8  publishers from the conduct in your item number 1,
9  the unrestricted access to Google -- referring to
10 "unrestricted access to Google Ads' advertisers"?
11     MR. NAKAMURA:  Objection to form.
12     THE WITNESS:  So the harm to
13 customers -- in this case, publishers -- from
14 the conduct that I examine in my reports
15 comes from Google's conduct harming the
16 competitiveness of its rivals in the relevant
17 product markets, in doing so, that sustain
18 and enhance Google's market power over the
19 products in the relevant product markets, and
20 that, in turn, harms publishers through three
21 different channels.
22

Page 290

1  bidding into third-party publishers ad servers,
2  were not brought over or incorporated with
3  Google's products.
4      Q   Were there any functions of Admeld that
5  you're aware of that were not brought over into
6  Google's products other than realtime bidding into
7  third-party publisher ad servers?
8      A   There may also have been restrictions
9  imposed on customers' ability to use what
10 previously was Admeld with other exchanges or
11 yield managers.  I discuss this here in my report,
12 but the main feature that I describe that was not
13 incorporated was this provision of realtime bids
14 into rival publisher ad servers.
15     Q   So I just want make sure we're -- I
16 understand what you're talking about is your main
17 point.  I'm going to come to that.  I just want to
18 make sure there's no other points here.
19         The -- are you saying that, to your
20 knowledge, Google failed to incorporate Admeld
21 yield management functionality in any respect?
22     A   Can you repeat your question, please.

Page 291

1      Q   Sure.
2          Are you saying that, to your knowledge,
3  Google failed to incorporate any, any part of
4  Admeld's yield management functionality?
5          MR. NAKAMURA:  Objection to form.
6          THE WITNESS:  That is not what I am
7      saying.
8  BY MR. ISAACSON:
9      Q   Is the only Admeld technology that you
10 are aware of that wasn't incorporated into Google
11 products was, was the provision of realtime bids
12 into rival publisher ad servers?
13     A   So one other thing that I describe in my
14 reports is an exchange-like product that Admeld
15 had offered post-acquisition.  My understanding,
16 Admeld's product was shut down, but AdX remained.
17 So insofar as there was a separate ad exchange
18 operated by Admeld, that was not something that
19 continued to be in operation --
20     Q   Right, but referring to functionality,
21 exchange functionality was fully incorporated into
22 AdX following the Admeld acquisition?

Page 292

1          MR. NAKAMURA:  Objection to form.
2          THE WITNESS:  So AdX was allowed for
3      realtime auctions.
4  BY MR. ISAACSON:
5      Q   The only functionality from Admeld that
6  you would -- that you could identify that was not
7  incorporated into a Google product was the
8  provision of realtime bids in the rival publisher
9  ad servers; is that correct?
10     A   So sitting here today, that's the, the
11 primary one I can recall.
12     Q   Right, and so would you have an -- do
13 you have an opinion as to whether the acquisition
14 of Admeld was anticompetitive, separate from the
15 fact that Google did not incorporate realtime bids
16 into rival publisher ad servers?
17         MR. NAKAMURA:  Objection to form.
18         THE WITNESS:  So my opinion regarding
19     the harm to competition arising from the
20     Admeld acquisition includes the actions that
21     Google took subsequent to that acquisition,
22     including the removal of the realtime bidding

Page 293

1      feature.
2  BY MR. ISAACSON:
3      Q   Have you identified in your reports any
4  harm to competition from the Admeld acquisition
5  separate from Google not incorporating the
6  provision of realtime bids into rival publisher ad
7  servers?
8          MR. NAKAMURA:  Objection to form.
9          THE WITNESS:  So one, one of the other
10     sources through which competition was
11     impacted was the elimination of this other ad
12     exchange product that Admeld offered.  It
13     also eliminated an option that customers had
14     to receive realtime bids from a different
15     yield manager.
16         So it's that elimination of a competitor
17     that also harmed competition.
18 BY MR. ISAACSON:
19     Q   Do you -- you've used, I believe, a
20 four-part test to analyze whether there's
21 exclusionary conduct that affects competition
22 adversely in this case?

Page 294

1  A   So I, I articulate a four-step
2  framework --
3  Q   Right.
4  A   -- for evaluating the competitive
5  effects --
6  Q   Applying that four --
7  A   -- of Google's conduct.
8  Q   Applying your four-step framework, if
9  the Admeld acquisition went forward and Google had
10 incorporated realtime bidding into third-party
11 exchanges, would you have an opinion whether the
12 acquisition was anticompetitive?
13      MR. NAKAMURA:  Objection to form.
14      THE WITNESS:  So my evaluation of that,
15   the conduct related to Admeld, evaluates the
16   complete, the total -- the totality of
17   acquisition and behavior surrounding it,
18   including the, the removal of, of that
19   feature.  I did not conduct a separate
20   analysis.
21 BY MR. ISAACSON:
22 Q   You did not conduct a separate analysis

Page 295

1  of the acquisition of Admeld apart from Google's
2  failure to incorporate realtime bids into rival
3  publisher ad servers; is that correct?
4      MR. NAKAMURA:  Objection to form.
5      THE WITNESS:  So my analysis
6   incorporated the removal of the realtime bids
7   into rival publisher ad servers as part of,
8   of my analysis.
9  BY MR. ISAACSON:
10 Q   And so returning to my question, if the
11 Admeld acquisition went forward and Google had
12 incorporated realtime bidding into third-party
13 exchanges, am I correct you would not have an
14 opinion whether the acquisition was
15 anticompetitive?
16      MR. NAKAMURA:  Objection to form.
17      THE WITNESS:  I did not conduct that
18   analysis, and I'm not expressing an opinion
19   whether it would be or would not harm
20   competition.
21      MR. ISAACSON:  If we can mark this as
22   Exhibit 11.

Page 296

1      (Exhibit 11 was marked for
2       identification.)
3  BY MR. ISAACSON:
4  Q   Exhibit 11 has previously been marked as
5  Abrontes-Metz Exhibit 17.
6      Did you review the Abrontes-Metz
7  deposition?
8  A   I did not.
9  Q   The -- and you cite this document at
10 note -- Footnote 1069 of your report.  It's
11 Bates-stamped GOOG-DOJ-03606441 to 451.
12     And in your report, you say in paragraph
13 731, you say, "For example, a 2012 client
14 migration document following the acquisition noted
15 that Google did not plan to integrate Admeld's API
16 features that, if allowed, would 'pass realtime
17 AdX pricing into a non-DFP ad server,'" and then
18 do you see you cite this document for that?
19 A   I see that.
20 Q   And in that footnote, you accurately
21 quote that "Admeld can be called via API to serve
22 an ad.  There are a small handful of Admeld

Page 297

1  sellers that currently have API integrations in
2  place at the ad server level."
3      At the time of the acquisition, there
4  was only a small handful, and I'm not sure what
5  that is, two fingers, only a small handful of ad
6  sellers that were using these API integrations to
7  talk to third-party -- to connect to third-party
8  advertisers, correct?
9      MR. NAKAMURA:  Objection to form.
10     THE WITNESS:  That is what this
11   document, as quoted here, states.  Not the
12   two fingers part but the, the small handful
13   part.
14 BY MR. ISAACSON:
15 Q   Right.  The -- and then at 442 of the
16 document, 442, the transition document says in
17 section 2.1 in the first bullet, "Almost all the
18 great Admeld functionality is moving into AdX."
19     That was -- was it your understanding
20 that the Admeld functionality following the
21 acquisition was moving into AdX, with the
22 exception of these APIs that were being used by a

Page 298

1  small handful of Admeld sellers?
2     A   So it's my understanding that the Admeld
3  integration did not include these APIs which would
4  allow for realtime bids to be provided to
5  third-party ad servers.
6     Q   And did -- was it your understanding
7  that that was only being -- that technology that
8  was not being integrated was only being used by a
9  small handful of sellers?
10        MR. NAKAMURA:  Objection to form.
11        THE WITNESS:  So that's consistent with,
12   at the time, realtime bidding emerging, which
13   is really only a decade.  Notably, the other
14   two yield managers identified by Google as
15   potential merging partners, PubMatic and
16   Rubicon started to integrate realtime
17   bidding, and so usage was smaller early on
18   but grew, and it's telling that PubMatic and
19   Rubicon are two of the largest but still very
20   distant ad exchange competitors to AdX today.
21   This API is used by exchanges to provide
22   realtime bids.

Page 299

1  BY MR. ISAACSON:
2     Q   And in what years do you think PubMatic,
3  Rubicon, and Google launched realtime bidding?
4     A   So I know at the -- in paragraph 727 of
5  my initial report, I note that a 2011 Google slide
6  deck noted that PubMatic has less RTV and that
7  Rubicon may not at the time, but since then,
8  Rubicon is an ad exchange and has incorporated
9  realtime bidding.
10    Q   Right.  Do you know which ad exchanges
11 launched realtime bidding and when?
12    A   Sitting here today, I can't give you the
13 start dates for every exchange.  I don't recall
14 right now off the top of my head.
15        MR. ISAACSON:  All right.  This will be
16   marked as Exhibit 12.
17        (Exhibit 12 was marked for
18         identification.)
19 BY MR. ISAACSON:
20    Q   The, the -- Exhibit 12 has also been
21 previously marked as Abrontes-Metz Exhibit 19,
22 Bates stamp GOOG-DOJ-03610002 through 4.

Page 300

1        In the overview, you will see it's
2  discussing "an outstanding request from publishers
3  has been to support server-side integration, such
4  that a publisher's first- or third-party ad server
5  would invoke AdX," and then there's a business
6  analysis that follows.
7     A   I don't see a date for this document.
8     Q   The date of the document is February 5,
9  2014.  That may come from the metadata.
10    A   Do you have the metadata for this
11 document?
12    Q   I didn't bring it with me, no.  I have
13 recorded that it's February, February 5, 2014.
14        The -- and you see there's a business
15 analysis of the APIs that would connect to
16 third-party exchanges?
17    A   I see the words "Business Analysis" on
18 page 003.
19    Q   And on 003 under "Costs/Risks," the
20 first thing it says is, "The development for this
21 feature is not easy, and this was proved by
22 Admeld.  From Brian Adams: 'We did several

Page 301

1  server-side integrations at Admeld (including with
2  Criteo), and they were plagued with ongoing
3  issues.'"
4        Did you do any investigation of
5  technical problems with the functionality that
6  Admeld had for connecting to third-party
7  exchanges?
8        MR. NAKAMURA:  Objection to form.
9  BY MR. ISAACSON:
10    Q   Third-party ad servers.
11        MR. NAKAMURA:  Same objection.
12        THE WITNESS:  So you're saying this is a
13   2014 document?
14 BY MR. ISAACSON:
15    Q   Yes.
16    A   This is around the time, my
17 understanding, that Header Bidding was emerging,
18 which allowed exchanges to provide realtime bids
19 into publisher ad servers, so I noted that it
20 appeared as though this technology was becoming
21 adopted by ad exchanges.
22    Q   So I'll move to strike that.  That's not

Page 331

ACKNOWLEDGEMENT OF WITNESS

I, Robin S. Lee, Ph.D., do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any corrections appear on the attached Errata sheet signed by me.

_____  _____

(DATE)                (SIGNATURE)

Job No. CS6456904

```
                                                    Page 332
 1                   E R R A T A   S H E E T

 2     IN RE:  United States vs. Google, Inc.

 3     RETURN BY:

 4     PAGE     LINE                CORRECTION AND REASON

 5     ____    ____   _____

 6     ____    ____   _____

 7     ____    ____   _____

 8     ____    ____   _____

 9     ____    ____   _____

10     ____    ____   _____

11     ____    ____   _____

12     ____    ____   _____

13     ____    ____   _____

14     ____    ____   _____

15     ____    ____   _____

16     ____    ____   _____

17     ____    ____   _____

18     ____    ____   _____

19     ____    ____   _____

20     ____    ____   _____

21     _____       _____

22     (DATE)         (SIGNATURE)

       Job No. CS6456904
```

Page 333

CERTIFICATE OF SHORTHAND REPORTER -- NOTARY PUBLIC

I, Laurie Donovan, Registered Professional Reporter, Certified Realtime Reporter, and notary public for the District of Columbia, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my supervision; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 23rdh day of March 2024.

My commission expires: July 14, 2027

_____
LAURIE DONOVAN
NOTARY PUBLIC IN AND FOR
THE DISTRICT OF COLUMBIA

# HIGHLY CONFIDENTIAL

## ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name: *United States et al. v. Google LLC*, No. 1:23-cv-00108 (E.D. Va.)

Deposition Date: 03/15/2024

Deponent: Robin Lee

### CORRECTIONS

| Page | Line | Change | Reason |
|---|---|---|---|
| 23 | 11 | The name "Weintrop" should read "Weintraub" | Transcription error |
| 35 | 16 | The word "developed" should read "defined" | Transcription error |
| 62 | 5 | The word "valid" should read "valuable" | Transcription error |
| 108 | 1 | The words "advertising curtailed" should read "advertising, Criteo" | Transcription error; clarification |
| 129 | 5 | The word "DC360" should read "DV360" | Transcription error |
| 143 | 16 | The words "paragraphs 12 and 3" should read "paragraph 12(3)" | Transcription error |
| 174 | 16 | The word "accommodation" should read "competition" | Transcription error |
| 247 | 3 | The word "Bernicky" should read "Bernanke" | Transcription error |
| 265 | 9 | The word "conditionally" should read "conditional" | Transcription error |
| 266 | 15 | The words "market A tying product" should read "market A (tying product)" | Clarification |
| 298 | 13 | The words "really only a decade" should read "really only this part of the decade" | Transcription error |
| 299 | 6 | The word "RTV" should be "RTB" | Transcription error |
| 311 | 16 | The word "we" should read "who we" | Transcription error |

**Errata Sheet for the Deposition Transcript of Professor Robin S. Lee**

**Case Name**: *United States et al v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va.)

**Depo. Date**: March 15, 2024

**Deponent**: Robin Lee

| Page | Line | Correction | Reason for Correction |
|---|---|---|---|
| 10 | 10 | Change "White?" to "pretty wide?" | Transcription error |
| 17 | 6 | Change "9:48 pm" to "9:49 am" | Transcription error |
| 23 | 11 | Change "Dr. Weintrop" to "Dr. Weintraub" | Transcription error |
| 33 | 19 | Change "in" to "for" | Transcription error |
| 38 | 2 | Change "I note" to "noted" | Transcription error |
| 38 | 7 | Change "or" to "are" | Transcription error |
| 38 | 11 | Change "for" to "or" | Transcription error |
| 44 | 13 | Change "different" to "for" | Transcription error – glitch in audio |
| 58 | 20 | Add "display advertising" after "open-web" | Transcription error |
| 59 | 3 | Change "customer" to "customers" | Transcription error |
| 59 | 4 | Add "product" before "markets" | Transcription error |
| 65 | 13 | Change "advertise bits" to "advertisements" | Transcription error |
| 69 | 4 – 5 | Change "So for publishers, open-web display advertising is significant evidence" to "So for publishers, open-web display advertising -- there is significant evidence" | Transcription error |
| 69 | 12 | Change "valuating" to "evaluating" | Transcription error |
| 73 | 20 | Add "the" before "term" | Transcription error |
| 74 | 1 | Change "you use" to "I use" | Transcription error |
| 80 | 6 | Change "p.m." to "a.m." | Transcription error |
| 80 | 12 | Change "GOOG-DOJ-AT-OO855803 to" to "GOOG-DOJ-AT-00855803 through" | Transcription error and spelling for clarity |
| 94 | 13 | Change "(indecipherable) -- elsewhere" to "as I noted earlier elsewhere --" | Transcription error |
| 107 | 9 | Change "ad networks I provided data" to "ad networks that provided data" | Transcription error |
| 108 | 1 | Change "curtailed, as you noted," to "; Criteo, as you noted;" | Transcription error |
| 109 | 8 | Change "them are of these" to "them -- or of these --" | Transcription error |

| | | | |
|---|---|---|---|
| 112 | 4 | Change "this application" to "its applications" | Transcription error |
| 112 | 5 | Change "those were present" to "it was present" | Transcription error |
| 115 | 16 | Change "the web and ad property" to "a web and an app property" | Transcription error |
| 117 | 14 | Change "display, with regards" to "display. With regards" | Transcription error |
| 126 | 8 – 9 | Change "this app component" to "there was an app component" | Transcription error |
| 127 | 14 | Change "Google display network" to "Google Display Network" | Capitalization for clarity |
| 128 | 1 | Change "DFPs" to "DFP" | Transcription error |
| 129 | 5 | Change "DC360" to "DV360" | Transcription error |
| 129 | 13 | Add double quotation mark after "rivals." | Transcription error |
| 129 | 21 | Change "methods to monopolization" to "methods of monopolization" | Transcription error |
| 130 | 2 | Change "to rivals" to "of rivals" | Transcription error |
| 132 | 7 | Change "firm" to "firm's" | Transcription error |
| 143 | 1 | Add "of this figure" after "unaddressable part." | Transcription error |
| 143 | 16 | Change "In paragraphs 12 and 3" to "In paragraph 12 on page 3" | Transcription error |
| 146 | 14 | Change "advertisers side" to "advertiser side" | Transcription error |
| 162 | 8 | Change "open bidding" to "Open Bidding" | Capitalization for clarity |
| 174 | 16 | Change "accommodation" to "competition" | Transcription error |
| 180 | 2 – 3 | Change "experience in" to "experiments and" | Transcription error |
| 180 | 21 | Change "AdX's" to "Ads-AdX" | Transcription error |
| 181 | 20 | Change "Ads, AdX's" to "Ads-AdX" | Transcription error |
| 184 | 8 | Remove extra space before "de minimus" | Formatting for clarity |
| 189 | 15 | Change "anyone can have last-look over" to "any one to have last-look over" | Transcription error |
| 196 | 8 | Change "shares" to "share" | Transcription error |
| 196 | 21 – 22 | Change "computed for –" to "computed for – users"; delete "By Mr. Isaacson: Q Users?" | Lee added "users," not Isaacson; Isaacson wasn't questioning |
| 199 | 9 | Change "Exhibit 7" to "Lee Exhibit 7" | Transcription error |
| 200 | 9 – 10 | Change "whether – the value of whether" to "whether he's evaluated" | Transcription error |
| 200 | 11 | Change "antrust" to "antitrust" | Transcription error |
| 201 | 11 | Change "the" to "this" | Transcription error |

| | | | |
|---|---|---|---|
| 202 | 3 | Change "it as" to "as a" | Transcription error |
| 203 | 1 | Change "advertiser ad network --" to "advertiser ad network product --" | Transcription error |
| 206 | 7 | Change "average than a disproportionate" to "average, and a disproportionate" | Transcription error |
| 207 | 3 | Change "advertisers, the highest" to "advertisers with the highest" | Transcription error |
| 207 | 18 | Change "zero zero" to "zero-zero" | Punctuation for clarity |
| 208 | 6 | Change "zero zero" to "zero-zero" | Punctuation for clarity |
| 208 | 16 – 17 | Change "Could I inspect that real briefly before I hand it back to you?" to "And, Professor Lee, could I just inspect that briefly before you take a look and I'll hand it back to you?" | Transcription error |
| 208 | 18 | Change "Okay" to "Here you go" | Transcription error |
| 208 | 20 | Change "I've given you Figure 1 [sic] and drawn" to "In Figure -- I've given you Figure 1 [sic] and drawn -- and drawn" | Transcription error |
| 209 | 17 | Remove "then" before "an increase" | Transcription error |
| 211 | 1 – 2 | Change "are we referring to Figure 16 instead of Figure 1?" to "I'd like to note that we're referring to Figure 16 and I think you said Figure 1, so I just want to make that clear." | Transcription error |
| 212 | 9 | Change "Like none of my reports -- " to "So, as I said in my reports," | Transcription error |
| 213 | 12 | Insert "in" before "the main text" | Transcription error |
| 214 | 16 | Change "declines to" to "declines from" | Transcription error |
| 215 | 17 | Change "between 15 and 20, maybe halfway" to "between 15—maybe halfway" | Transcription error |
| 216 | 9 | Change "is the end" to "is either the end" | Transcription error |
| 219 | 7 | Change "It's" to "If it's" | Transcription error |
| 220 | 14 | Insert "for" after "difficult" | Transcription error |
| 227 | 19 | Insert "Which paragraph" after "Counsel?" | Transcription error |
| 227 | 22 | Change "Actually, the heading." to "Actually, the heading—won't even go to the paragraph." | Transcription error |
| 229 | 7 | Change "Let me pause there" to "The -- let me pause there" | Transcription error |
| 234 | 7 | Change "analysis" to "analyses" | Transcription error |
| 236 | 2 | Change "AdX's" to "Ads-AdX" | Transcription error |
| 236 | 22 | Insert "to" before "DFP" | Transcription error |

| | | | |
|---|---|---|---|
| 239 | 2 | Change "controlling" to "after controlling" | Transcription error |
| 242 | 1 – 2 | Change "could stop for a break" to "could stop soon, that'd be great." | Transcription error |
| 242 | 6 | Change "Make it quick" to "I mean, if it's quick that would be fine." | Transcription error |
| 242 | 18 | Insert "at" after "transacted" | Transcription error |
| 243 | 8 | Change "had not opined" to "am not opining" | Transcription error |
| 244 | 1 | Insert quotations around "quality-adjusted." | Punctuation for clarity |
| 247 | 3 | Change "Bernicky" to "Bernanke" | Transcription error |
| 247 | 3 – 4 | Change "CPC, CPM" to "CPC-CPM" | Transcription error |
| 252 | 8 | Change "AW bidding program" to "AWBid program" | Transcription error |
| 255 | 19 | Change "all bid" to "AWBid" | Transcription error |
| 256 | 10 | Change "AdSense in third-party exchanges" to "AdSense, in third-party exchanges," | Transcription error |
| 261 | 17 | Change "AW bid" to "AWBid" | Transcription error |
| 263 | 2 | Change "they" to "I" | Transcription error |
| 264 | 11 | Change "E10" to "B-10" | Transcription error |
| 264 | 19 – 20 | Change "relevant product market among advertiser ad networks" to "relevant product market. Among advertiser ad networks" | Transcription error |
| 267 | 2 | Change "is" to "has" | Transcription error |
| 288 | 20 | Change "yield" to "yield," | Transcription error |
| 292 | 2 | Change "AdX was allowed" to "AdX -- was -- allowed" | Transcription error |
| 292 | 8 | Change "in the" to "into" | Transcription error |
| 296 | 5 | Change "Abrontes" to "Abrantes" | Transcription error |
| 296 | 6 | Change "Abrontes" to "Abrantes" | Transcription error |
| 296 | 11 | Change "to" to "through" | Transcription error |
| 298 | 13 | Change ", which is really only a decade" to "-- which was really only at the start of the decade" | Transcription error |
| 299 | 6 | Change "RTV" to "RTB" | Transcription error |
| 299 | 21 | Change "Abrontes" to "Abrantes" | Transcription error |
| 303 | 1 | Change "it is cited? I mean this" to "is it cited? I mean is this" | Transcription error |
| 305 | 13 | Replace "?" with "." | Transcription error |
| 307 | 5 | Change "I don't recall." to "Sitting here today, I don't recall." | Transcription error |

| 307 | 8 – 9 | Change "which is discussing unified pricing," to "which is discussing unified pricing rules," | Transcription error |
| --- | --- | --- | --- |
| 307 | 15 | Add a single quotation mark in front of "raises" | Lee Report quotes Jonathan Bellack starting at "raises" |
| 307 | 16 | Change "publics, referring pubs are" to "pubs', referring to publishers, 'are" | Transcription error |
| 307 | 17 | Add a single quotation mark after "harder." | End of Jonathan Bellack quote |
| 309 | 11 | Change "buyer-specifically" to "buyer-specific" | Transcription error |
| 309 | 22 | Change "Abrontes" to "Abrantes" | Transcription error |
| 311 | 3 | Change "a changes" to "changes" | Transcription error |
| 313 | 12 | Add "It's not isolated." After answer. | Transcription error – missed in crosstalk |
| 319 | 7 | Change "unfeasible" to "infeasible" | Transcription error |
| 320 | 2 | Change "exchanges" to "changes" | Transcription error |
| 323 | 22 | Change "which you discuss" to "which -- you -- discuss" | Transcription error |

I have inspected and read my deposition and have listed all changes and corrections above, along with my reasons therefor.

Date: 4/22/24   Signature: _____