# Plaintiffs' Exhibit 139

## DOUBLECLICK ADVERTISING PLATFORM AGREEMENT

This DOUBLECLICK ADVERTISING PLATFORM AGREEMENT (including any terms set forth in an Order Form, schedule or addendum hereto, "APA"), dated as of January 1, 2015 ("Effective Date"), is entered into by DoubleClick, a division of Google Inc. ("DoubleClick"), and the entity executing this APA ("Company"). This APA governs DoubleClick's provision to Company of products and services, each subject to a separate Order Form ("Services"). In consideration of the foregoing, the parties agree as follows:

1. Definitions. (a) "Ads" means advertising content. (b) "Affiliate" means, with respect to a party, an entity that directly or indirectly controls, is controlled by or is under common control with such party or is a third party which is licensed by one party in writing to use the brand(s) of that party for specific services and a specific period. (c) "Beta Feature" means any Service feature that is expressly identified as "Beta", "Alpha", "Experimental" or "Pre-Release" or that is otherwise expressly identified as unsupported. For purposes of clarification, to the extent a Beta Feature replaces a production (i.e., non-Beta) version of a feature, the Beta Feature will thereafter be treated as the production version of the feature and not as a Beta Feature. Notwithstanding anything to the contrary in this APA, DoubleClick will have no liability (except in respect of indemnification obligations) under this APA arising out of or related to any Beta Features. (d) [Intentionally omitted.] (e) "Client" means an advertiser or other third party, if any, on whose behalf Company utilizes a Service. (f) "Confidential Information" means information disclosed by one party to the other party under this APA that is marked as confidential or would normally be considered confidential (e.g., product or business plans), but does not include information that the recipient already knew, becomes public through no fault of the recipient, or was independently developed by the recipient without reference to the discloser's confidential information. (g) "Order Form" means an order form or schedule to this APA that sets forth pricing and other terms with respect to a particular Service. (h) "Scheduled Affiliate" means an Affiliate of Company set forth on Exhibit I attached hereto (i.e., that is not party to an effective Affiliate Adopting Agreement). (i) "Search Engine Site" means a web site of a search engine. (j) "Subcontractor" means, with respect to a party, a subcontractor, consultant, third-party service provider or agent engaged by such party (or a Client of such party) in connection with its use or provision of Services (k) "Tag" means code (e.g., HTML) or a web beacon (e.g., pixel tag, clear GIF) that requests the delivery of an Ad or tracks an Ad impression or click. (l) "Target Sites" means properties (which may include Search Engine Sites) on which an Ad is served (i.e., web sites, consent-based email publications and software applications; provided that such software applications (A) provide clear and conspicuous notice about functionality of importance to the user, (B) obtain informed consent from the user prior to download, (C) provide an easy-to-use uninstall mechanism to the user and (D) allow the users to maintain control over their computing environment). Ads may be served hereunder only to Target Sites. (m) "Visitor" means a visitor to a Target Site, as applicable. (n) "Affiliate Adopting Agreement" means a written agreement incorporating the terms of this APA and entered into by DoubleClick (or an Affiliate of DoubleClick) and an Affiliate of Company, creating a direct relationship between them, substantially in the form set out in Exhibit III, IV or V of this Agreement.

2. Services and Obligations.

(a) DoubleClick will: (i) provide Services to Company, and obtain all rights necessary to provide Services hereunder; (ii) deliver Ads according to the trafficking criteria selected by Company; (iii) provide Company access to web-based training and support; (iv) use Internet Ad serving industry-standard security measures in connection with its provision of Services hereunder; and (v) promptly notify Company of any breach of DoubleClick security resulting in unauthorized access to any Company account or the data derived from Company's use of Services. DoubleClick currently undergoes a SSAE 16 audit review on an annual basis. For so long as DoubleClick elects to undergo an annual SSAE 16 audit review, DoubleClick will provide Company with a copy of its most current SSAE 16 audit report, upon request, and such report will be considered Confidential Information of DoubleClick under this APA. DoubleClick is solely responsible for its provision of Services hereunder. DoubleClick shall not use any Subcontractor to provide Services under this APA or any Order Form without Company's prior written consent; provided that no consent is required for Subcontractors that are engaged to provide services to its platform generally and do not have access to Company's account or Company Materials.

(b) Company will: (i) be solely responsible for all use of Services hereunder (including without limitation trafficking Ads and implementing Tags), soliciting Target Sites, all inquiries relating to Ads, and the content of all Ads and each of its properties utilizing a Service (it being understood that nothing in this clause (i) will be deemed to limit DoubleClick's obligations with respect to the provision of Services hereunder); (ii) obtain all rights necessary for the parties to use the data derived from the use of Services hereunder as permitted by this APA; and (iii) use Services in compliance with Company's applicable agreements with third parties (including, without limitation, Target Site owners and advertisers, as applicable). Company's use of Services hereunder is subject to applicable Google Platforms Program Policies available at http://support.google.com/platformspolicy (as modified from time to time, "Policies"); provided, however, that in the event of a conflict between the Policies and the terms and conditions of this APA, Affiliate Adopting Agreement or any Order Form, the terms and conditions of the APA, Affiliate Adopting Agreement or applicable Order Form will govern. Company warrants that it is authorized to act on behalf of each of its Clients and, except with respect to the payment obligations of U.S. Clients as set forth in Section 3, will be liable for its Clients' acts and omissions, in connection with the Services provided under this APA. A "U.S. Client" means a Client both (A) organized in the United States, and (B) for which the payments to Company in respect of the advertising services received from Company are invoiced to, or authorized in and made from, the United States.

(c) Company's Affiliates may receive Services under this APA; provided that either: (x) such Affiliate has entered into an Affiliate Adopting Agreement to this APA; or (y) if such Affiliate of Company receiving Services under this APA has not entered into an Affiliate Adopting Agreement, such Affiliate is set forth on Exhibit I attached hereto as a Scheduled Affiliate. Company will be liable for the acts and omissions of its Scheduled Affiliates in connection with Services provided under this APA to the extent any of such acts or omissions, if performed by Company, would constitute a breach of, or otherwise give rise to liability under this APA. Company shall not be liable for the acts and omissions of any Affiliate that is (or at the time of such acts and/or omissions was) a party to an effective Affiliate Adopting Agreement (such an Affiliate is an "Adopting Affiliate"), and in no event shall any Adopting Affiliate or Scheduled Affiliate be liable for the acts and omissions of any other Adopting Affiliate or Scheduled Affiliate under this APA or any Order Form; provided, that an Adopting Affiliate or Scheduled Affiliate shall be responsible for all use of the Services through its account hereunder, including to the extent used by another Scheduled Affiliate or Adopting Affiliate. Company may amend that Exhibit I to add or remove Scheduled Affiliates, effective as of

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758565

the first day of a month, upon 30 days' prior notice to DoubleClick, provided that any addition shall be subject to DoubleClick's standard credit review and approval process, which DoubleClick will commence promptly upon the request of any of any of Company's Affiliates. If an Affiliate enters into an Affiliate Adopting Agreement to this APA, Company will provide a copy of this APA (including all Order Forms) to such Affiliate. In the event that Services are provided to a Company Affiliate that is organized in Europe (other than Russia), Africa or the Middle East, DoubleClick, a division of Google Ireland Limited, will be the entity that provides such Services. In the event that Services are provided to a Company Affiliate that is organized in Asia (other than China) or Oceania, DoubleClick, a division of Google Asia Pacific Pte. Ltd will be the entity that provides such Services. Services will not be provided to or utilized by any Company Affiliate that is organized in Russia or China unless such Company Affiliate enters into an Affiliate Adopting Agreement with the applicable DoubleClick Affiliate. DoubleClick warrants that it is authorized to act on behalf of each such DoubleClick entity and will be liable for each such entity's acts and omissions in connection with the Services provided under this APA.

3. Payment.

(a) DoubleClick shall invoice Company or the applicable Company Affiliate monthly for Services utilized in the preceding calendar month. For purposes of clarification, if a Company Affiliate is subject to a valid Affiliate Adopting Agreement, DoubleClick will invoice such Company Affiliate and not Company, provided that any mislabeling or misaddressing of an invoice made in good faith will not affect Company or a Company Affiliate's responsibility to fees owed to DoubleClick. All invoices shall be in accordance with the criteria set forth in Exhibit II. Subject to Section 3(b) below, the invoiced entity will pay DoubleClick the fees (other than fees disputed in good faith) listed in the Order Forms within the number of days of the invoice date set forth on Exhibit II attached hereto (based on the country in which such Affiliate is organized) ("Payment Due Date"), in U.S. dollars or another currency/ies as set out in Exhibit II or as expressly agreed to in writing by the parties ("Invoicing Currencies"), and by check, wire transfer or other means expressly agreed to in writing by the parties; provided, however, that if Company, not more than 2 years prior to the date of this APA, (a) was adjudged insolvent or bankrupt, (b) instituted or had instituted against it any case, proceeding or other action (x) seeking relief, reorganization or arrangement under any existing or future law of any jurisdiction, whether foreign or domestic, relating to bankruptcy, insolvency, reorganization or relief of debtors or (y) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets (and, in the case of any such proceeding instituted against it in accordance with this clause (b), the proceeding (i) resulted in the entry of an order for relief or any such adjudication or appointment or (ii) was not dismissed within 60 days after filing), (c) made any assignment for the benefit of creditors or (d) appointed a receiver, liquidator or trustee of any of its property or assets, DoubleClick may require Company to prepay DoubleClick an amount equal to not more than 2 months of reasonably anticipated or actual fees under all then-effective Order Forms in the aggregate. Charges are exclusive of taxes. When DoubleClick has the legal obligation to collect any applicable VAT, GST or similar consumption tax in respect of the Services, the appropriate amount shall be invoiced to and, provided Company receives an appropriate tax invoice from Doubleclick issued at the time the invoice for related Services is issued, paid by Company unless Company provides DoubleClick with a valid tax exemption certificate authorized by the appropriate taxing authority. If any amounts payable under this APA are or become subject to withholding taxes under applicable laws of any state, federal, provincial or foreign government, Company shall be authorized to withhold such amounts as are required under applicable law, pay such taxes to the appropriate government authority, and remit the balance due to DoubleClick net of such taxes. Company will pay all taxes and other government charges (except for taxes on DoubleClick's or its Affiliates' income), and reasonable expenses and outside attorneys' fees DoubleClick incurs in collecting late payments that are not disputed in good faith. For purposes of clarification, unless otherwise expressly set forth therein, fees payable under an Order Form are in addition to fees payable under each other Order Form.

(b)

(i) Notwithstanding anything to the contrary that may be contained herein, Sequential Liability Terms (as defined below) shall apply solely with respect to U.S. Clients where the following conditions are met: (A) Company is authorized to act on behalf of each such U.S. Client and authorized to bind, and shall be deemed to have hereby bound, each such U.S. Client to the terms and conditions of this APA and any Order Form(s) and addenda hereto; and the authorization and obligation described in this clause (A) is not contingent upon any further action required to be taken by Company; and (B) Company creates and maintains a unique or multiple unique "Advertiser ID(s)" for each such U.S. Client within Company's applicable DoubleClick network(s). "Sequential Liability Terms" mean that DoubleClick, subject to the terms and conditions of this Section 3(b), agrees to (1) hold Company liable for each U.S. Client's payments solely to the extent proceeds have been received by Company within forty-five (45) days of the date of DoubleClick's invoice to Company and (2) hold each U.S. Client liable for such U.S. Client's payments solely to the extent proceeds have not been received by Company within forty-five (45) days of the date of DoubleClick's invoice to Company.

(ii) Promptly at the request of DoubleClick, from time to time during the term of this APA, Company shall provide DoubleClick with (x) signed credit applications or equivalent information in its possession from U.S. Clients so as to enable DoubleClick to conduct a credit check on the U.S. Clients (and in the event Company does not possess such information, it will, at the request of DoubleClick, promptly seek such information, it being understood that Company's inability to obtain such information for DoubleClick may impact DoubleClick's willingness to extend credit to a particular U.S. Client), (y) confirmation of whether a U.S. Client not on Pre-Payment Terms (as defined below) has paid Company in advance funds sufficient to pay all fees then payable that are attributable to such U.S. Client and (z) for each U.S. Client, either confirmation that Company's payment terms with the U.S. Client require payment of all charges incurred within thirty (30) days from the date of DoubleClick's invoice to Company (the "U.S. Client Due Date") or Company's actual payment terms with the U.S. Client ("U.S. Client Payment Terms"). Company will give DoubleClick five (5) business days prior written notice (which for purposes hereof may be via e-mail) if U.S. Client Payment Terms are going to be extended for any U.S. Client.

(iii) If DoubleClick in its sole discretion determines, at any time, to not extend, or to cease extending, credit to a U.S. Client (e.g., due to a U.S. Client's poor payment history or the occurrence of a material change in the financial condition of a U.S. Client) then DoubleClick may, in its sole discretion, suspend any or all Services provided to Company solely for the relevant U.S. Client, until such time as DoubleClick receives, from Company or the U.S. Client, a deposit equal to two (2) times such U.S. Client's Average Monthly Service Fees

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758566

(such deposit, the "Deposit"; such terms, "Pre-Payment Terms"). DoubleClick may (x) apply all or a portion of the Deposit against delinquent payments, if any, for Services provided by DoubleClick to Company for such U.S. Client and (y) require the replenishment of any portion of the Deposit that has been so applied. If such portion of the Deposit is not replenished within ten (10) business days after notice from DoubleClick, DoubleClick may immediately suspend any or all Services provided to Company solely for the relevant U.S. Client, such Services not to be reinstated until all overdue amounts with respect to such U.S. Client are paid and its Deposit is replenished. If DoubleClick is still maintaining any portion of the Deposit upon either (A) the expiration or the termination of this APA or (B) such date when the relevant U.S. Client ceases to be a U.S. Client, DoubleClick shall apply the remaining portion of the Deposit, if any, against any fees then payable for Services provided by DoubleClick to Company for such U.S. Client and return any excess to Company or the relevant U.S. Client, as the case may be. A U.S. Client's "Average Monthly Service Fees" shall equal the average aggregate monthly fees payable to DoubleClick for all Services provided by DoubleClick to Company for such U.S. Client during the immediately preceding twelve (12) month period, or in the event that Services have been provided by DoubleClick to Company for such U.S. Client for less than twelve (12) months, during the entire period in which Services have been provided by DoubleClick to Company for such U.S. Client. Company must promptly advise Client in the event that DoubleClick exercises its rights under this Section 3(b)(iii).

(iv) Company agrees to make best efforts to collect and clear payment from U.S. Clients to DoubleClick by the U.S. Client Due Date. Where Company has not paid all payable fees to DoubleClick within forty-five (45) days of DoubleClick's invoice to Company, Company will pay to DoubleClick proceeds that it thereafter receives from the applicable U.S. Client for those fees within ten (10) days after receipt (if DoubleClick has not already been paid for those fees). Company will use commercially reasonable efforts to assist DoubleClick in the event DoubleClick attempts to collect payment directly from a U.S. Client. DoubleClick will notify Company at least two (2) business days in advance if it intends in good faith to seek payment directly from a U.S. Client. Company will make available to DoubleClick upon request written confirmation of its status as agent of any U.S. Client to which Sequential Liability Terms apply. Company will promptly (but in any event within two (2) business days) provide written notice (which for purposes hereof may be via e-mail) to DoubleClick, if it has reason to believe, other than through publicly-available information, that a U.S. Client's credit is or may become impaired or that the U.S. Client will not pay all payable fees by the U.S. Client Due Date.

4. **Data.** As between Company and DoubleClick, Company will own all data derived from its use of Services, and, subject to the provisos in this Section 4, such data shall be deemed Confidential Information of Company and DoubleClick shall not use such data for any purpose including but not limited to the purpose of assisting other DoubleClick clients; provided that DoubleClick may use and disclose such data solely (i) as aggregate Service statistics, which will not include personally identifiable information or information that identifies or would reasonably be expected to identify Company, any of its Affiliates, or any Target Sites or Clients, (ii) to provide Services and enforce its rights under this APA (it being understood and agreed that Company's data in any form will not be sold, used or disclosed to any third party by DoubleClick (except as otherwise expressly permitted by this APA or the applicable Order Form) without Company's written consent) and (iii) if and as required by court order, law or governmental or regulatory agency (after, if permitted, giving reasonable notice to Company, and using commercially reasonable efforts to provide Company with the opportunity to seek a protective order or the equivalent (at Company's expense)); provided further, however, that DoubleClick's retrieval and/or provision to Company of event-level data or archived reporting data derived from Company's use of Services may result in additional fees hereunder based on storage and service costs, but no such fees will be charged without Company's written agreement prior to the retrieval and/or provision of such data.

5. **Confidentiality.** The recipient may use Confidential Information only to exercise its rights and fulfill its obligations under this APA and must use reasonable care to protect Confidential Information. The recipient will not disclose Confidential Information, except to employees and Subcontractors (and in the case of Company, to its Affiliates and Clients) who need to know it to provide, access, receive or use the Services hereunder and who are obligated to keep it confidential. A recipient shall be liable for any breach of this Section 5 by its Subcontractors. No party may disclose the terms of this APA (including, for purposes of clarification, the pricing terms of any Order Form) or make any public statement regarding the relationship contemplated by this APA to a third party without prior written consent of the other party, except (a) to its professional advisors under a strict duty of confidentiality, (b) for purposes of enforcing its rights under this APA, and (c) if and as required by court order, law or governmental or regulatory agency (after, if permitted, giving reasonable notice to the discloser and using commercially reasonable efforts to provide the discloser with the opportunity to seek a protective order or the equivalent (at the discloser's expense)); provided, however, that Company may disclose such terms to its Affiliates and Clients to the extent necessary for their use and receipt of the Services contemplated hereby.

6. **Compliance With Laws; Prohibited Acts.** DoubleClick will provide and Company will use Services under this APA in compliance with all applicable laws, rules, regulations and sanctions programs, including without limitation applicable Internet advertising industry guidelines. Company will use commercially reasonable efforts to ensure that a Visitor is provided with clear and comprehensive information about, and consents to, the storing and accessing of cookies or other information on the Visitor's device where such activity occurs in connection with the Services and where providing such information and obtaining such consent is required by law. By way of example, and not limitation, DoubleClick acknowledges and agrees that requiring such disclosures and consents in its applicable third-party agreements currently constitutes commercially reasonable efforts. Company will ensure that each of its web sites utilizing the Service contains, and will advise each of its Clients that each of their web sites utilizing a Service is required to contain, a privacy policy that, (a) discloses (i) the usage of third-party technology and (ii) the data collection and usage resulting from the Service (it being understood that this clause (a) will not be deemed to require those privacy policies to expressly identify DoubleClick or any Service, unless otherwise required by law, rule or regulation) and (b) complies with all applicable privacy laws, rules and regulations. Notwithstanding anything to the contrary in this APA, Company will ensure that each Target Site that is a consent-based email publication owned or controlled by Company contains, and will advise each of its Clients that each Target Site that is a consent-based email publication owned or controlled by such Client is required to contain, a conspicuous link to a privacy policy that (I) discloses (A) the usage of third-party technology and (B) the data collection and usage resulting from the Service (it being understood that this clause (I) will not be deemed to require those privacy policies to expressly identify DoubleClick or any Service, unless otherwise required by law, rule or regulation) and (II) complies with all applicable laws, rules and regulations. For purposes of clarification, if a Target Site (x) is not a consent-based email publication and (y) is not owned or controlled by Company or any Client, except as required by applicable law, rule or regulation, neither Company nor any Client will be subject to the

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758567

privacy policy obligations described in this Section 6 with respect to such Target Site. Company will not, and will not assist or knowingly permit any third party to, (i) pass information to DoubleClick that DoubleClick could use or recognize as personally identifiable information; (ii) misappropriate any part of a Service or modify, disassemble, decompile, reverse engineer, copy, reproduce or create derivative works from or in respect of Services or any part of a Service; (iii) damage or tamper with any part of a Service; (iv) knowingly breach any DoubleClick security measure; or (v) provide DoubleClick any Ad that (x) when viewed or clicked on by a Visitor(s), causes such Visitor(s)'s computer to download any software application, or (y) is illegal. DoubleClick shall not, and shall not assist or permit any third party to, collect personally identifiable information through Company's use of the Services. DoubleClick will use commercially reasonable efforts to provide up to date information to Company to help Company understand the data collection and usage resulting from use of the Services, including via publicly posted materials, currently available at http://www.google.com/doubleclick/support.html and as modified from time to time.

6A. **Representations and Warranties.** Each party represents and warrants that it has the authority to enter into, and perform its obligations under, this APA.

7. **Disclaimers and Limitation of Liability.** EACH PARTY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION FOR NON-INFRINGEMENT (IT BEING UNDERSTOOD THAT, FOR PURPOSES OF CLARIFICATION, THE FOREGOING WILL NOT LIMIT EITHER PARTY'S IP INFRINGEMENT OBLIGATION SET FORTH IN SECTION 8 OF THIS APA), MERCHANTABILITY AND FITNESS FOR ANY PURPOSE. TO THE FULLEST EXTENT PERMITTED BY LAW REGARDLESS OF THE THEORY OR TYPE OF CLAIM: (a) EXCEPT (i) FOR INDEMNIFICATION AMOUNTS PAYABLE TO THIRD PARTIES UNDER THIS APA AND (ii) WITH RESPECT TO BREACHES OF SECTION 5 OF THIS APA, NO PARTY MAY BE HELD LIABLE UNDER THIS APA OR ARISING OUT OF OR RELATED TO PERFORMANCE OF THIS APA FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES, EVEN IF THE PARTY IS AWARE OR SHOULD KNOW THAT SUCH DAMAGES ARE POSSIBLE; AND (b) EXCEPT WITH RESPECT TO (i) EACH PARTY'S INDEMNIFICATION OBLIGATIONS UNDER THIS APA, (ii) EACH PARTY'S INTENTIONAL MISCONDUCT AND (iii) COMPANY'S PAYMENT OBLIGATIONS UNDER THIS APA, EACH PARTY'S MAXIMUM AGGREGATE LIABILITY WITH RESPECT TO A PARTICULAR ORDER FORM WILL NOT EXCEED THE TOTAL AMOUNT OF FEES PAID TO DOUBLECLICK (IN THE CASE OF DOUBLECLICK'S LIABILITY) OR PAYABLE (IN THE CASE OF COMPANY'S LIABILITY) TO DOUBLECLICK (WHICH, FOR PURPOSES OF CLARIFICATION, SHALL NOT INCLUDE FEES COLLECTED BY DOUBLECLICK ON BEHALF OF ANY THIRD PARTY IN THE CASE OF EITHER PARTY'S LIABILITY) WITH RESPECT TO SUCH ORDER FORM DURING THE 12 MONTHS BEFORE THE DATE WHEN THE LIABILITY AROSE.

8. **Indemnification.** Each party (the "**Indemnifying Party**") will defend, indemnify and hold harmless the other party (and, with respect to DoubleClick's indemnification obligations hereunder, each Scheduled Affiliate) and its and their officers, directors, employees and agents (each, an "**Indemnified Party**") from all third-party claims or liabilities (including without limitation reimbursement for reasonable outside attorneys' fees and disbursements) arising out of or related to the Indemnifying Party's (i) breach or alleged breach of this APA (including, for purposes of clarification, any Order Form), or (ii) infringement of a third party's patent, trademark, trade secret or copyright in connection with (a) with respect to DoubleClick, the Services, including the software and other technology, data or materials used by DoubleClick to provide the Services hereunder, and (b) with respect to Company, the creative, technology, data or other materials provided by Company to DoubleClick or otherwise provided and utilized by Company in connection with the Services hereunder ("**Company Materials**") (the indemnification obligation of each party described in this clause (ii), the "**IP Infringement Obligation**"). The previous sentence states the sole liability of the Indemnifying Party, and the sole remedy of the Indemnified Party, with respect to any third-party claim arising out of the Indemnifying Party's breach of this APA or intellectual property infringement. The Indemnified Party must (i) promptly notify the Indemnifying Party in writing of the third-party claims (provided that failure of the Indemnified Party to promptly notify the Indemnifying Party will not relieve the Indemnifying Party of its indemnification obligations, except to the extent it has been damaged by the failure); (ii) reasonably cooperate with the Indemnifying Party in the defense of the matter and (iii) give the Indemnifying Party primary control of the defense of the matter and negotiations for its settlement. The Indemnified Party may at its expense join in the defense with counsel of its choice. The Indemnifying Party may enter into a settlement only if it (A) involves only the payment of money damages by the Indemnifying Party and (B) includes a complete release of the Indemnified Party; any other settlement will be subject to written consent of the Indemnified Party (not to be unreasonably withheld or delayed). DoubleClick's IP Infringement Obligation will not apply to claims to the extent arising from (i) Company's use of the Service if the use violates this APA; or (ii) the combination, operation or use of the Service with any product or service not provided or authorized in writing by DoubleClick other than a product or service that is necessary for the operation and use of the Service as contemplated by this APA. Company's IP Infringement Obligation will not apply to claims to the extent arising from DoubleClick's provision of the Service in violation of this APA or any use of Company Materials to DoubleClick for any purpose other than to perform the Services as requested by Company or otherwise in violation of any mutually agreed written terms concerning use of such Company Materials. If a Service becomes, or in DoubleClick's reasonable opinion is likely to become, the subject of an intellectual property infringement claim, then DoubleClick will promptly notify Company and, at its sole option and expense, may either: (x) procure the right to continue providing the Service as contemplated by this APA; (y) modify the Service to render it non-infringing (provided that modification does not adversely affect use of the Service); or (z) replace the Service with a functionally equivalent, non-infringing service. If none of the foregoing options is commercially practicable, then each party will have the right to terminate this APA and/or each affected Order Form. In such case, DoubleClick shall refund within 10 days of termination any fees that have been advanced by Company (e.g., any deposits).

9. **Term.** Unless earlier terminated, this APA will remain in effect until all Order Forms have terminated. Company may terminate any or all Order Form(s) without cause, effective as of the last day of a calendar month, by providing DoubleClick 45 days' prior written notice of the effective termination date; provided, however, that Company shall remain subject to any Minimum Service Fee under that Service Order Form(s) through the last day of the then-current term of the Service Order Form as if that Service Order Form(s) were still in effect unless Company terminates the Minimum Service Fee pursuant to the express termination rights, if any, set forth on the applicable Order Form. A party may terminate an Order Form immediately on notice to the other party that it is in material breach of this APA with respect to such Service; provided that (x) if the breach is capable of cure, the breaching party will have 30 days from the notice date to cure the breach to the

non-breaching party's reasonable satisfaction; and (y) DoubleClick may immediately suspend the provision and use of any or all Services under the Order Forms on notice to Company if Company breaches any of clauses (iii) through (v) of the sixth sentence of Section 6 of this APA, provided, however, that in the event of a suspension pursuant to this clause (y), if Company cures the breach pursuant to which the Services were suspended, then, without limiting any of DoubleClick's rights and remedies with respect to such breach, DoubleClick will reinstate the provision and use of the suspended Services promptly following such cure. With respect to all Clients other than U.S. Clients for which Company acts as an agent, if Company fails to pay fees invoiced by DoubleClick (other than fees disputed in good faith) within 20 days following the Payment Due Date, DoubleClick may suspend each applicable Service on 20 days' prior notice to Company; provided, however, that (1) to the extent that Company assigns and maintains a unique or multiple unique "Advertiser ID(s)" to each Client within Company's applicable networks, DoubleClick will suspend each applicable Service solely with respect to the Client(s) for which payments are late. For purposes of clarification, U.S. Clients for which Company acts as an agent are subject to suspension pursuant to Section 3(b) hereof. DoubleClick may, in its sole discretion, extend, revise or revoke credit at any time. Notwithstanding termination of this APA, any provisions of this APA that by their nature are intended to survive, will survive termination.

10. **Miscellaneous.** (a) This APA is governed by New York law, excluding its choice of law rules. (b) No party may assign or transfer any part of this APA without the written consent of the other party. Any other attempt to transfer or assign is void. (c) Nothing in this APA will limit a party's ability to seek equitable relief. (d) Subject to the following sentence, this APA is the parties' entire agreement relating to its subject and supersedes any prior or contemporaneous agreements on that subject with respect to Order Forms entered into after the Effective Date. Notwithstanding the foregoing, if an Affiliate of Company is party to an effective DoubleClick Master Services Agreement (or another substantially similar agreement with DoubleClick), such pre-existing agreement shall remain in full force an effect unless and until such time as such Affiliate enters into an Affiliate Adopting Agreement to this APA or is or becomes a Scheduled Affiliate. As of the "Adopting Effective Date" of that Affiliate Adopting Agreement or the date that Affiliate becomes a Scheduled Affiliate, that Affiliate Adopting Agreement (in the event of an Affiliate that enters into an Affiliate Adopting Agreement) or this APA (in the event of an Affiliate set forth on Exhibit I attached hereto) (together with all Order Forms covered by that Affiliate Adopting Agreement and all other Order Forms entered into by that Affiliate contemporaneously with that Affiliate Adopting Agreement (in the event of an Affiliate that enters into an Affiliate Adopting Agreement) or all Order Forms (in the event of a Scheduled Affiliate)) will supersede that Affiliate's DoubleClick Master Services Agreement and Attachments thereto in accordance with the terms of the second sentence of this Section 10(d). (e) All notices must be in writing (including without limitation email) and sent to the attention of the other party's Legal Department and primary point of contact. Notice will be deemed given when delivered. (f) All amendments hereto must be executed by both parties and expressly state that they are amending this APA. Failure to enforce any provision will not constitute a waiver. If any provision is found unenforceable, it and any related provisions will be interpreted to best accomplish the unenforceable provision's essential purpose. (g) Each party is liable for the acts and omissions of its Subcontractors. (h) There are no third-party beneficiaries to this APA. (i) The parties are independent contractors, and this APA does not create an agency, partnership or joint venture. (j) In the event of a conflict between the terms and conditions of this APA and the terms and conditions of an Order Form, the terms and conditions of the Order Form will govern. (k) Neither party will be liable for any acts or omissions resulting from circumstances or causes beyond its reasonable control. (l) The parties may execute this APA in counterparts, including facsimile, PDF and other electronic copies, which taken together will constitute one instrument. (m) DoubleClick currently undergoes a SSAE 16 audit review on an annual basis. For so long as DoubleClick elects to undergo an annual SSAE 16 audit review, DoubleClick will provide Company with a copy of its most current SSAE 16 audit report, upon request, and such report will be considered Confidential Information of DoubleClick under this APA. (n) The parties agree to meet after the first calendar year of the term to discuss (i) Company's performance under this APA and (ii) potential amendments to this APA, which must be in writing and mutually agreed to.

AGREED AND ACCEPTED BY:

DOUBLECLICK, a division of Google Inc.

*[signature]*
Omid Kordestani
Authorized Signatory

2015.01.30
10:20:53
-08'00'

COMPANY: Medinbrands Worldwide, Inc.

By: *[signature]*
Name: Greg Walsh
Title: CFO

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758569

EXHIBIT I
Scheduled Affiliates

Dated as of January 1, 2015

This Exhibit I supersedes any Exhibit I to the APA dated prior to the date set forth above.

A. Affiliates organized in North America or in another region outside of Europe, the Middle East, Africa, Asia and Oceania:

| Country | Affiliate Name |
|---|---|
| United States | BPN Worldwide, Inc. |
| United States | Brand Programming Network LLC |
| Colombia | Brandconnection S.A.S. |
| United States | Cadreon, LLC |
| United States | Geomentum, Inc. |
| United States | ID Media, Inc. |
| Chile | I-Group Comunicacion Publicitaria Ltda |
| Venezuela | Initiative Media Colombia S.A. Sucursal Venezuela BRANCH |
| United States | Initiative Media, LLC |
| Argentina, Mexico | IPG Media Brands Communication S.A. de C.V. |
| Argentina, Chile, Mexico | IPG Media Brands S.A. |
| Uruguay | IPG Media Brands S.A. BRANCH |
| Colombia | IPG Mediabrands S.A. |
| Bolivia | IPG Mediabrands S.A. Sucursal Bolivia BRANCH |
| Ecuador | IPG Mediabrands S.A. Sucursal Ecuador BRANCH |
| Peru | IPG Mediabrands S.A. Sucursal Peru BRANCH |
| United States | Magna Global USA, Inc. |
| United States | Media Partnership Corporation |
| Canada | Mediabrands Worldwide, Inc. - Canadian BRANCH |
| United States | MediaBrands Worldwide, Inc. dba Ansible |
| United States | NSA Media, INC |
| Canada | Orion Trading Canada Inc |
| United States | Orion Trading Worldwide LLC |
| United States | Outdoor Advertising Group |
| United States | Reprise Media, Inc |
| United States | Spring Creek Group, L.L.C. |
| Canada | True North - Wahlstrom Canada BRANCH |
| Chile | Universal McCann Servicos de Medios Ltda |
| Colombia | Universal McCann Servicos de Medios Ltda BRANCH |
| United States | Universal McCann Worldwide, Inc. |

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758570

| | |
|---|---|
| United States | Wahlstrom Group LLC |
| United States | WIM Traffic, Inc. |

B. Affiliates organized in Europe (other than Russia), Africa or the Middle East:

| Country | Affiliate Name |
|---|---|
| Poland | Brand Connection Sp. z.o.o. |
| Portugal | Brand Connection, Actividades Publicitarias, Lda. |
| Netherlands | Brandconnection B. V. |
| France | Cadreon France SAS |
| Germany | Cadreon GmbH & Co. KG |
| Germany | Cadreon Verwaltungs-GmbH |
| Hungary | CMS Brand Connection Budapest Kft. |
| Germany | Creative Media Services GmbH |
| Czech Republic | Czech Media Club, spol. s.r.o. |
| Netherlands | digilogue B.V. |
| Hungary | Fastbridge Hungary Marketing-kommunikacios Ugynokseg Kft. |
| Portugal | Inciativas de Meios, Actividades Publicitarias, Lda. |
| Germany | Initiative Group GmbH |
| France | Initiative International SAS |
| Saudia Arabia, United Kingdom | Initiative Media |
| Netherlands | Initiative Media B.V. |
| Hungary | Initiative Media Hungary Kft. |
| United Arab Emirates | Initiative Media Middle East |
| Italy | Initiative Media Milano S.r.l. |
| Czech Republic | Initiative Media Prague s.r.o. |
| Greece, Romania | Initiative Media S.A. |
| Poland | Initiative Media Warszawa Sp. z.o.o. |
| Austria | Initiative Media Werbemittlung GesmbH |
| Austria | IPG Mediabrands GmbH |
| Denmark | IUM A/S |
| Norway | IUM AS |
| United Arab Emirates | Magna Global FZ LLC |
| Germany | Magna Global Germany GmbH |
| Hungary | Magna Global Hungary Mediaugynokseg Szolgaltato Kft. |
| Poland | Magna Global Polska Sp. z.o.o. |
| Spain | Magna Global S.A. |
| Czech Republic | Magna Global s.r.o. |
| Slovakia | Magna Global Slovakia, s.r.o. |

HIGHLY CONFIDENTIAL

| Country | Company |
|---|---|
| Switzerland | Magna Global Switzerland AG |
| Netherlands | Magna Global V.O.F. |
| Ireland | Magna Ireland Media Limited |
| Greece | Mediabrands Advertising S.A. |
| Switzerland | Mediabrands AG |
| Belgium | Mediabrands Belgium S.A. |
| United Kingdom | Mediabrands EMEA Limited |
| United Kingdom | Mediabrands International Limited |
| United Kingdom | Mediabrands Limited |
| Ireland | Mediabrands Limited BRANCH |
| Netherlands | Mediabrands Netherlands B.V. |
| France | Mediabrands S.A.S. |
| Denmark | MediaPrint ApS |
| Portugal | Megameios - Publicidade E Meios, A.C.E. |
| Germany | MGMP Magna Global Media Plus GmbH |
| France | Orion Trading France S.A.S. |
| Germany | Orion Trading GmbH |
| United Kingdom | Orion Trading EMEA Limited |
| Belgium | Outdoor Services SA |
| Austria | Panmedia Holding AG |
| Austria | PanMedia Western Werbeplanung GmbH |
| Sweden | PMI Initiative/Universal Media AB |
| United Kingdom | Rapport Outdoor Limited |
| Netherlands | Reprise Media Netherlands B.V. |
| Poland | Reprise Media Sp. z.o.o. |
| Netherlands | Traffic4U B.V. |
| Netherlands | Traffic4U International B.V. |
| Poland | U2 Media Sp. z.o.o. |
| Turkey | Universal / McCann- Media Planlama ve Dagitim A.S. |
| Portugal | Universal McCann Connections, Actividades Publicitarias, Lda. |
| United Kingdom | Universal McCann EMEA |
| Germany | Universal McCann GmbH |
| Hungary | Universal McCann Magyarorszag Reklamugynokseg Kft. |
| United Kingdom | Universal McCann Manchester |
| Czech Republic | Universal McCann s.r.o. |
| Poland | Universal McCann Sp. z.o.o. |
| Austria | Universal McCann Werbeberatungs GmbH |
| Spain | Universal McCann, S.A. |
| Greece | Universal Media Advertising (Hellas) S.A. |

HIGHLY CONFIDENTIAL
GOOG-AT-MDL-010758572

| Netherlands | Universal Media B.V. |
|---|---|
| Ireland | Universal Media Ireland Limited |
| Qatar | Universal Media LLC |
| Italy | Universal-McCann S.r.l. |
| Austria | You Two Media GmbH |

C. **Affiliates organized in Asia (other than China) or Oceania:**

| Country | Affiliate Name |
|---|---|
| Australia | Cadreon Pty Ltd |
| Malaysia | Fastbridge Malaysia Sdn Bhd |
| Thailand | I Dissolution Two Limited (in liq) |
| Australia | Initiative Media Australia Pty Ltd |
| India | Interactive Avenues Marketing Solutions Private Limited |
| Indonesia | Interface.bpn |
| Australia | Interpublic Australia Pty Limited |
| Thailand | IPG Advertising (Thailand) Limited |
| Hong Kong | IPG Mediabrands (HK) Limited |
| Singapore | IPG Mediabrands (Singapore) Pte. Ltd |
| Malaysia | IPG Mediabrands Sdn Bhd |
| Japan | McCann Worldgroup Holdings Japan Inc |
| Japan | Mediabrands Audience Platform Japan |
| Australia | Mediabrands Australia Pty Ltd |
| Malaysia | Mediabrands Global Technology Solutions Sdn. Bhd. |
| India | Mediabrands India Private Limited |
| Taiwan | Mediabrands Worldwide, Inc. - Taiwan BRANCH |
| Australia | Merchant & Partners Australia Pty Ltd |
| Australia | Orion Trading Australia Pty Ltd |
| Japan | Orion Trading Japan KK |
| Indonesia | PT Inpurema Konsultama |
| India | Reprise Media Media India Private Limited |
| Australia | Universal McCann (a division of Mediabrands Australia Pty Ltd) |
| Korea, Republic of | Universal McCann Inc Korea |

AGREED AND ACCEPTED WITH RESPECT TO THE AFFILIATES SET FORTH UNDER ITEM B ABOVE:

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758573

**DOUBLECLICK, a division of Google Ireland Limited**

By: _____
   Name:
   Title:

AGREED AND ACCEPTED WITH RESPECT TO THE AFFILIATES SET FORTH UNDER ITEM C ABOVE:

**DOUBLECLICK, a division of Google Asia Pacific Pte. Ltd**

By: _____
   Name:
   Title:

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758574

## EXHIBIT II
## Applicable Payment Terms

| COUNTRY OF ORGANIZATION | DAYS FROM INVOICE DATE |
|---|---|
| **North America** | |
| United States | 45 days |
| Canada | 45 days |
| | |
| **South America/Central America** | |
| All countries in region | 45 days |
| | |
| **Asia/Oceania** | |
| Australia | 45 days |
| China | 30 days |
| Taiwan | 45 days |
| Hong Kong | 30 days |
| India | 60 days |
| Malaysia | 45 days |
| New Zealand | 45 days |
| South Korea | 30 days |
| Singapore | 45 days |
| Thailand | 45 days |
| | |
| **Europe/Middle East/Africa** | |
| Austria | 30 days |
| Belgium | 30 days |
| Cyprus | 30 days |
| France | 60 days |
| Germany | 30 days |
| Greece | 60 days |
| Israel | 45 days |
| Italy | 60 days |
| Luxembourg | 30 days |
| Netherlands | 30 days |
| Nordic Region | 30 days |
| Poland | 30 days |
| Portugal | 60 days |
| South Africa | 30 days |
| Spain | 60 days |
| Switzerland | 30 days |
| Turkey | 45 days |
| United Kingdom | 60 days |
| | |
| All countries not listed above | 30 days |

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758575

### EXHIBIT III
#### Form of Affiliate Adopting Agreement (North America and South America)

### AFFILIATE ADOPTING AGREEMENT

This AFFILIATE ADOPTING AGREEMENT (this "Agreement"), dated as of [INSERT DATE BEING EXECUTED] (the "Adopting Effective Date"), is between

(a) [INSERT FULL LEGAL ENTITY NAME OF COMPANY AFFILIATE], with offices at [ADDRESS] ("Company Affiliate"); and

(b) DoubleClick, a division of Google Inc., with offices at 76 Ninth Avenue, 4th Floor, New York, New York 10011, U.S.A. ("DoubleClick").

WHEREAS, DoubleClick and Mediabrands Worldwide, Inc. ("Mediabrands") have entered into that certain DoubleClick Advertising Platform Agreement (including any and all Order Forms, schedules or addendums thereto), dated as of [DATE], that governs DoubleClick's provision of, and Mediabrands's utilization of, the DoubleClick Services (such agreement, the "Mediabrands Agreement"); and

WHEREAS, DoubleClick and Company Affiliate wish to enter into an agreement pursuant to which DoubleClick will provide services to Company Affiliate on substantially the same terms and conditions (except as revised pursuant to this Agreement) as the terms and conditions of the Mediabrands Agreement; and

WHEREAS, DoubleClick and Mediabrands have acknowledged and consented in the Mediabrands Agreement to the arrangement contemplated hereby.

NOW, THEREFORE, in consideration of the foregoing premises and mutual covenants contained herein, DoubleClick and Company Affiliate hereby agree as follows:

1. **Affiliate Agreement**

   (a) Company Affiliate hereby represents and warrants that it is, and agrees that at all times during the term of this Agreement it shall be, an Affiliate (as defined in the Mediabrands Agreement) of Mediabrands, it being understood and agreed that, at such time (if any) as Company Affiliate ceases to be an Affiliate of Mediabrands, this Agreement shall terminate.

   (b) Subject to the terms and conditions herein, DoubleClick and Company Affiliate hereby enter into this Agreement, under which all the terms and conditions of the Mediabrands Agreement are incorporated herein by reference, mutatis mutandis, and apply separately to Company Affiliate, renamed as set forth below, in each case as revised pursuant hereto.

   (c) In the event of any inconsistency or conflict between the provisions of this Agreement and the provisions in the Company Affiliate Agreement (as defined in Section 2(a) hereof), the provisions herein shall prevail.

   (d) Company Affiliate hereby acknowledges that it has received a copy of the Mediabrands Agreement from Mediabrands

2. **Amendments**

   (a) The provisions of the Mediabrands Agreement, each as applied only to the provision of services by DoubleClick to Company Affiliate pursuant to the arrangement contemplated hereby, are hereby revised as follows (as so revised, such Mediabrands Agreement shall be referred to as the "Company Affiliate Agreement"):

      (i) The term "Company" shall refer to Company Affiliate;

      (ii) The "Effective Date" of the Company Affiliate Agreement shall be the Adopting Effective Date;

      (iii) The contact and address information for Company Affiliate shall be as set forth on the signature page hereto; and

      (iv) Notwithstanding anything to the contrary in the Company Affiliate Agreement, all fees under the Company Affiliate Agreement shall be paid in [insert local currency type (e.g., "Canadian dollars, Euros, British Pounds, Australian dollars, etc.)].

    (b) Each amendment, supplement or other modification to, or renewal of, the Mediabrands Agreement (each, a "Mediabrands Modification") after the date hereof shall be deemed to be incorporated into, and to amend, supplement, modify or renew, the corresponding Company Affiliate Agreement unless DoubleClick and Company Affiliate agree in writing not to incorporate such Mediabrands Modification into, and not to amend, supplement, modify or renew, such Company Affiliate Agreement.

3. **General**

    (a) DoubleClick and Company Affiliate hereby ratify and agree to the terms and conditions of the Company Affiliate Agreement (i.e., the terms and conditions of the Mediabrands Agreement, as incorporated herein, mutatis mutandis, and amended hereby).

    (b) This Agreement (including the terms and conditions of the Company Affiliate Agreement) constitutes the entire agreement between DoubleClick and Company Affiliate with respect to the subject matter hereof and supersedes all prior understandings, representations and agreements, whether written or oral, between DoubleClick and Company Affiliate with respect to such subject matter.

    (c) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement. Signed facsimile copies of this Agreement will legally bind the parties to the same extent as original documents.

IN WITNESS WHEREOF, each of the parties hereto has caused this Affiliate Adopting Agreement to be executed by its duly authorized officer as of the date first above written.

| DOUBLECLICK, a division of Google Inc. | Company Affiliate: [INSERT FULL LEGAL ENTITY NAME OF COMPANY AFFILIATE] |
|---|---|
| By:_____<br>  Name:<br>  Title: | By:_____<br>  Name:<br>  Title: |
| Company Affiliate Name and Address: _____ | Contact:<br>Name: _____<br>Fax: _____<br>E-Mail: _____ |
| Payment Address, if Different: _____ | Contact:<br>Name: _____<br>Fax: _____<br>E-Mail: _____ |

EXHIBIT IV
Form of Affiliate Adopting Agreement (Europe, Africa and the Middle East)

AFFILIATE ADOPTING AGREEMENT

This AFFILIATE ADOPTING AGREEMENT (this "Agreement"), dated as of [INSERT DATE BEING EXECUTED] (the "Adopting Effective Date"), is between:

(a) [INSERT FULL LEGAL ENTITY NAME OF COMPANY AFFILIATE], with offices at [ADDRESS] ("Company Affiliate"); and

(b) DoubleClick, a division of Google Ireland Limited, with offices at Gordon House, Barrow Street, Dublin 4, Ireland ("DC Ireland").

WHEREAS, DoubleClick, a division of Google Inc. ("DC US") and Mediabrands Worldwide, Inc. ("Mediabrands") have entered into that certain DoubleClick Advertising Platform Agreement (including any and all Order Forms, schedules or addendums thereto), dated as of [DATE], that governs DC US's provision of, and Mediabrands's utilization of, the DoubleClick Services (such agreement, the "Mediabrands Agreement");

WHEREAS, DC Ireland and Company Affiliate wish to enter into an agreement pursuant to which DC Ireland will provide services to Company Affiliate on substantially the same terms and conditions (except as revised pursuant to this Agreement) as the terms and conditions of the Mediabrands Agreement; and

WHEREAS, DC US and Mediabrands have acknowledged and consented in the Mediabrands Agreement to the arrangement contemplated hereby.

NOW, THEREFORE, in consideration of the foregoing premises and mutual covenants contained herein, DC Ireland and Company Affiliate hereby agree as follows:

1. **Affiliate Agreement**

    (a) Company Affiliate hereby represents and warrants that it is, and agrees that at all times during the term of this Agreement it shall be, an Affiliate (as defined in the Mediabrands Agreement) of Mediabrands, it being understood and agreed that, at such time (if any) as Company Affiliate ceases to be an Affiliate of Mediabrands, this Agreement shall terminate.

    (b) DC Ireland hereby represents and warrants that it is, and agrees that at all times during the term of this Agreement it shall be, an Affiliate of DC US, it being understood and agreed that, at such time (if any) as DC Ireland ceases to be an Affiliate of DC US, this Agreement shall terminate.

    (c) Subject to the terms and conditions herein, DC Ireland and Company Affiliate hereby enter into this Agreement, under which all the terms and conditions of the Mediabrands Agreement are incorporated herein by reference, mutatis mutandis, and apply separately to DC Ireland and Company Affiliate, renamed as set forth below, in each case as revised pursuant hereto.

    (d) In the event of any inconsistency or conflict between the provisions of this Agreement and the provisions in the Company Affiliate Agreement (as defined in Section 2(a) hereof), the provisions herein shall prevail.

    (e) Company Affiliate hereby acknowledges that it has received a copy of the Mediabrands Agreement from Mediabrands

    (f) DC Ireland hereby acknowledges that it has received a copy of the Mediabrands Agreement from DC US.

2. **Amendments**

    (a) The provisions of the Mediabrands Agreement, each as applied only to the provision of services by DC Ireland to Company Affiliate pursuant to the arrangement contemplated hereby, are hereby revised as follows (as so revised, such Mediabrands Agreement shall be referred to as the "Company Affiliate Agreement"):

    (i) The term "Company" shall refer to Company Affiliate;

HIGHLY CONFIDENTIAL

GOOG-AT-MDL-010758578

(ii) The term "DoubleClick" shall refer to DC Ireland;

(iii) The "Effective Date" of the Company Affiliate Agreement shall be the Adopting Effective Date;

(iv) The contact and address information for Company Affiliate shall be as set forth on the signature page hereto; and

(v) Notwithstanding anything to the contrary in the Company Affiliate Agreement, all fees under the Company Affiliate Agreement shall be paid in [insert local currency type (e.g., "Canadian dollars, Euros, British Pounds, Australian dollars, etc.)].

(b) Each amendment, supplement or other modification to, or renewal of, the Mediabrands Agreement (each, a "Mediabrands Modification") after the date hereof shall be deemed to be incorporated into, and to amend, supplement, modify or renew, the corresponding Company Affiliate Agreement unless DC Ireland and Company Affiliate agree in writing not to incorporate such Mediabrands Modification into, and not to amend, supplement, modify or renew, such Company Affiliate Agreement.

3. General

(a) DC Ireland and Company Affiliate hereby ratify and agree to the terms and conditions of the Company Affiliate Agreement (i.e., the terms and conditions of the Mediabrands Agreement, as incorporated herein, mutatis mutandis, and amended hereby).

(b) This Agreement (including the terms and conditions of the Company Affiliate Agreement) constitutes the entire agreement between DC Ireland and Company Affiliate with respect to the subject matter hereof and supersedes all prior understandings, representations and agreements, whether written or oral, between DC Ireland and Company Affiliate with respect to such subject matter.

(c) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement. Signed facsimile copies of this Agreement will legally bind the parties to the same extent as original documents.

IN WITNESS WHEREOF, each of the parties hereto has caused this Affiliate Adopting Agreement to be executed by its duly authorized officer as of the date first above written.

| DOUBLECLICK, a division of Google Ireland Limited | Company Affiliate: [INSERT FULL LEGAL ENTITY NAME OF COMPANY AFFILIATE] |
|---|---|
| By:_____<br>Name:<br>Title: | By:_____<br>Name:<br>Title: |
| | Company Affiliate VAT Number: _____ |
| Company Affiliate Name and Address: _____ | Contact:<br>Name:<br>E-Mail: _____ |
| Payment Address, if Different: _____ | Contact:<br>Name:<br>E-Mail: _____ |

EXHIBIT V
Form of Affiliate Adopting Agreement (Asia and Oceania, except China)

AFFILIATE ADOPTING AGREEMENT

This AFFILIATE ADOPTING AGREEMENT (this "Agreement"), dated as of [INSERT DATE BEING EXECUTED] (the "Adopting Effective Date"), is between

(a) [INSERT FULL LEGAL ENTITY NAME OF COMPANY AFFILIATE], with offices at [ADDRESS] ("Company Affiliate"); and

(b) DoubleClick, a division of Google Asia Pacific Pte. Ltd, whose principal place of business is at 8 Marina View, Asia Square 1 #30-01 Singapore 018960 ("DC Singapore").

WHEREAS, DoubleClick, a division of Google Inc. ("DC US") and Mediabrands Worldwide, Inc. ("Mediabrands") have entered into that certain DoubleClick Advertising Platform Agreement (including any and all Order Forms, schedules or addenda thereto), dated as of [DATE], that governs DC US's provision of, and Mediabrands's utilization of, the DoubleClick Services (such agreement, the "Mediabrands Agreement");

WHEREAS, DC Singapore and Company Affiliate wish to enter into an agreement pursuant to which DC Singapore will provide services to Company Affiliate on substantially the same terms and conditions (except as revised pursuant to this Agreement) as the terms and conditions of the Mediabrands Agreement; and

WHEREAS, DC US and Mediabrands have acknowledged and consented in the Mediabrands Agreement to the arrangement contemplated hereby.

NOW, THEREFORE, in consideration of the foregoing premises and mutual covenants contained herein, DC Singapore and Company Affiliate hereby agree as follows:

1.  **Affiliate Agreement**

    (a) Company Affiliate hereby represents and warrants that it is, and agrees that at all times during the term of this Agreement it shall be, an Affiliate (as defined in the Mediabrands Agreement) of Mediabrands, it being understood and agreed that, at such time (if any) as Company Affiliate ceases to be an Affiliate of Mediabrands, this Agreement shall terminate.

    (b) DC Singapore hereby represents and warrants that it is, and agrees that at all times during the term of this Agreement it shall be, an Affiliate of DC US, it being understood and agreed that, at such time (if any) as DC Singapore ceases to be an Affiliate of DC US, this Agreement shall terminate.

    (c) Subject to the terms and conditions herein, DC Singapore and Company Affiliate hereby enter into this Agreement, under which all the terms and conditions of the Mediabrands Agreement are incorporated herein by reference, mutatis mutandis, and apply separately to DC Singapore and Company Affiliate, renamed as set forth below, in each case as revised pursuant hereto.

    (d) In the event of any inconsistency or conflict between the provisions of this Agreement and the provisions in the Company Affiliate Agreement (as defined in Section 2(a) hereof), the provisions herein shall prevail.

    (e) Company Affiliate hereby acknowledges that it has received a copy of the Mediabrands Agreement from Mediabrands

    (f) DC Singapore hereby acknowledges that it has received a copy of the Mediabrands Agreement from DC US.

2.  **Amendments**

    (a) The provisions of the Mediabrands Agreement, each as applied only to the provision of services by DC Singapore to Company Affiliate pursuant to the arrangement contemplated hereby, are hereby revised as follows (as so revised, such Mediabrands Agreement shall be referred to as the "Company Affiliate Agreement"):

        (i) The term "Company" shall refer to Company Affiliate;

        (ii) The term "DoubleClick" shall refer to DC Singapore;

HIGHLY CONFIDENTIAL                                                                                                       GOOG-AT-MDL-010758580

(iii) The "Effective Date" of the Company Affiliate Agreement shall be the Adopting Effective Date;

(iv) The contact and address information for Company Affiliate shall be as set forth on the signature page hereto; and

(v) Notwithstanding anything to the contrary in the Company Affiliate Agreement, all fees under the Company Affiliate Agreement shall be paid in [insert local currency type (e.g., "Canadian dollars, Euros, British Pounds, Australian dollars, etc.)].

(b) Each amendment, supplement or other modification to, or renewal of, the Mediabrands Agreement (each, a "Mediabrands Modification") after the date hereof shall be deemed to be incorporated into, and to amend, supplement, modify or renew, the corresponding Company Affiliate Agreement unless DC Singapore and Company Affiliate agree in writing not to incorporate such Mediabrands Modification into, and not to amend, supplement, modify or renew, such Company Affiliate Agreement.

3.  General

(a) DC Singapore and Company Affiliate hereby ratify and agree to the terms and conditions of the Company Affiliate Agreement (i.e., the terms and conditions of the Mediabrands Agreement, as incorporated herein, mutatis mutandis, and amended hereby).

(b) This Agreement (including the terms and conditions of the Company Affiliate Agreement) constitutes the entire agreement between DC Singapore and Company Affiliate with respect to the subject matter hereof and supersedes all prior understandings, representations and agreements, whether written or oral, between DC Singapore and Company Affiliate with respect to such subject matter.

(c) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement. Signed facsimile copies of this Agreement will legally bind the parties to the same extent as original documents.

IN WITNESS WHEREOF, each of the parties hereto has caused this Affiliate Adopting Agreement to be executed by its duly authorized officer as of the date first above written.

**DOUBLECLICK, a division of Google**

Asia Pacific Pte. Ltd

By:_____
    Name:
    Title:


Company Affiliate Name and Address: _____

Payment Address, if Different: _____

Company Affiliate: [INSERT FULL LEGAL ENTITY NAME OF COMPANY AFFILIATE]

By:_____
    Name:
    Title:

Company Affiliate VAT Number: _____

Contact:
    Name:
    E-Mail:

Contact:
    Name:
    E-Mail:

HIGHLY CONFIDENTIAL