# Plaintiffs' Exhibit 144 (Redacted)

CONFIDENTIAL

# Google LLC Advertising Program Terms for Agencies

These Google LLC Advertising Program Terms for Agencies ("**Terms**") are entered into by Google LLC ("**Google**") and the entity executing these Terms or that accepts these Terms electronically ("**Customer**") on behalf of third parties for which Customer advertises in connection with these Terms ("**Advertiser**"). These Terms govern Customer's participation in Google's advertising programs and services (i) that are accessible through the account(s) given to Customer in connection with these Terms or (ii) that incorporate by reference these Terms (collectively, "**Programs**").

1      **Programs**. Customer authorizes Google and its affiliates to place Advertiser's advertising materials, feed data, and technology (collectively "**Ads**" or "**Creative**") on any content or property (each a "**Property**") provided by Google or its affiliates on behalf of Google or, as applicable, a third party ("**Partner**"). Advertiser is solely responsible for all: (i) Ads, (ii) Ads trafficking or targeting decisions (e.g., keywords) ("**Targets**"), (iii) destinations to which Ads direct viewers (e.g., landing pages, mobile applications) along with the related URLs, waypoints and redirects ("**Destinations**"), and (iv) services and products advertised on Destinations (collectively, "**Services**"). The Program is an advertising platform on which Customer authorizes Google and its affiliates to use automated tools to format Ads. Google and its affiliates may also make available to Customer certain optional Program features to assist Customer with the selection or generation of Targets, Ads, or Destinations. Customer is not required to authorize use of these optional features and, as applicable, may opt-in to or opt-out of usage of these features. However, if Customer uses these features, then Customer will be solely responsible for the Targets, Ads and Destinations. Google and its affiliates or Partners may reject or remove a specific Target, Ad, or Destination at any time for any or no reason. Google and its affiliates may modify or cancel Programs at any time. Customer acknowledges that Google or its affiliates may participate in Program auctions in support of its own services and products. Some Program features are identified as "**Beta**," or as otherwise unsupported or confidential ("**Beta Features**"). Customer and Advertiser may not disclose any information from Beta Features or the terms or existence of any non-public Beta Features.

2      **Policies**. Customer and Advertiser are each solely responsible for their respective use of the Programs (e.g., access to and use of Program accounts and safeguarding usernames and passwords) ("**Use**"). Program Use is subject to applicable Google policies available at www.google.com/ads/policies and all other policies made available by Google to Customer, including any applicable Partner policies, and to the extent applicable, the Google EU User Consent Policy at google.com/about/company/user-consent-policy (in each case, as modified from time to time, "**Policies**"). Customer and Advertiser will have a 10 business day cure opportunity (during which Customer will not be considered in breach of the Terms) after notification of a Policy violation if the violated Policy has not been provided to Customer at least 10 business days prior to the violation giving rise to the claim, provided that no such cure period will be provided to the extent a Policy violation arises from a modification to an existing Policy. The foregoing does not in any manner limit Google's right to take immediate action based on then-current Policies in effect at any time, including for any Policies that have not been previously provided to Customer. In connection with the Program, Google will comply with the Google Privacy Policy available at google.com/policies/privacy (as modified from time to time). To the extent Program Use is within scope, Customer on behalf of Advertiser agrees, as applicable, to the (i) Google Ads Controller-Controller Data Protection Terms at privacy.google.com/businesses/controllerterms; or (ii) Google Ads Data Processing Terms at privacy.google.com/businesses/processorterms (collectively the "**Data Terms**"). Google will not modify the Data Terms, except as expressly permitted under the Data Terms. Customer and Advertiser also authorize Google to modify Ads as described in Policies. Customer and Advertiser will not, and will not authorize any third party to, (i) generate automated, fraudulent or otherwise invalid impressions, inquiries, clicks or conversions, (ii) conceal conversions for Programs where they are required to be disclosed, (iii) use any automated means or form of scraping or data extraction to access, query or otherwise collect Google advertising related information from any Property except as expressly permitted by Google, or (iv) attempt to interfere with the functioning of the Programs. Google will not, and will not authorize any third party to, generate automated, fraudulent or otherwise invalid impressions, inquiries or clicks that result in increased charges by Google to Customer. Customer and Advertiser will direct communications regarding Ads on Partner Properties under these Terms only to Google; provided that if Google does not promptly attempt to resolve any issue regarding Ads on Partner Properties such that Customer's or Advertiser's legal rights or remedies is likely to be prejudiced, then Customer or Advertiser may directly communicate with Partner to enforce or preserve their legal rights; provided, however, that Customer or Advertiser has first provided notice to Google of its or their intent to communicate with a Partner regarding the Ads on the Partner Property and a reasonable opportunity for Google to facilitate a resolution of such matter.

3      **Ad Serving**. (a) Customer and Advertiser will not provide Ads that contain or connect to malware, spyware, unwanted software or any other malicious code or knowingly breach or circumvent any Program security measure. (b) Customer may utilize an Ad server solely for serving or tracking Ads under Programs that permit third party Ad serving and only if the Ad server has been authorized by Google to participate in the Program. Google will implement Customer's Ad server tags so that they are functional. (c) For online display Ad impressions billed on a CPM or vCPM basis ("**Display Ads**"), if Google's applicable impression count ("**IC**") for a Program is higher than Customer's third party Ad server ("**3PAS**") IC by more than 10% over the invoice period, Customer will facilitate reconciliation efforts between Google and 3PAS. If this discrepancy is not resolved, Customer's sole remedy is to make a bonafide claim within 60 days after the invoice date ("**Claim Period**"). If Google determines that the claim is valid, then Google will

Google LLC Advertising Program Terms for Agencies

Highly Confidential

GOOG-AT-MDL-019567386

issue to Customer advertising credits for an amount equal to (90% of Google's IC minus 3PAS's IC), multiplied by Google's reported campaign average CPM or vCPM, as applicable, over the invoice period. Any advertising credits issued must be used by Customer within 60 days of issuance ("**Use By Date**") and Google may suspend Customer's permission to utilize that 3PAS provider (although the parties understand that Advertiser campaigns may still be run through a different 3PAS) and may suspend or void the effectiveness of the discrepancy resolution provisions of this Section for that 3PAS provider. Metrics from 3PAS whose Ad server tags are provided to Google will be used in the above discrepancy resolution calculations. Google may require that discrepancy records be provided directly by 3PAS to Google. Customer will not be credited for discrepancies caused by 3PAS's inability to serve Ads.

**4      Testing.** Customer authorizes Google and its affiliates to periodically conduct tests that may affect Customer's Use of Programs, including Ad formatting, Targets, Destinations, quality, ranking, performance, pricing, and auction-time bid adjustments. To ensure the timeliness and validity of test results, Customer authorizes Google to conduct such tests without notice or compensation to Customer, provided, however, that any such change or limitation will not have a material adverse effect on Customer's rights under these Terms.

**5      Ad Cancellation.** Unless a Policy, the Program user interface or an agreement referencing these Terms (an "**IO**") provides otherwise, either party may cancel any Ad at any time before the earlier of Ad auction or placement, but if Customer cancels an Ad after a commitment date provided by Google (e.g., a reservation-based campaign), then Customer is responsible for any cancellation fees communicated by Google to Customer (if any) in advance (e.g., in the IO) and the Ad may still be published. Cancelled Ads will generally cease serving within 8 business hours or as described in a Policy or IO (provided that a Policy will not change such timing for AdWords auction Ads), and Customer remains obligated to pay all charges resulting from served Ads (e.g., fees based on conversion). Customer must effect cancellation of Ads (i) online through Customer's account if the functionality is available, (ii) if this functionality is not available, with notice to Google via email to Customer's account representative or (iii) if Customer does not have an account representative, and if this functionality is not available with notice to Google via email to ads-support@google.com. Customer will not be relieved of any payment obligations for Ads not submitted or submitted by Customer after the due date provided by Google. Google will not be bound by a Customer provided IO.

**6      Warranty, Rights, and Obligations.** Advertiser warrants that (a) Advertiser holds, and hereby grants Google, its affiliates and Partners, the rights in Ads, Destinations and Targets for Google, its affiliates and Partners to operate the Google Programs (including, in some cases, after Advertiser ceases to use the Programs (e.g. feed data), and (b) all information and authorizations provided by Advertiser are complete, correct and current. Customer warrants that all information provided by Customer is complete, correct and current. Customer and Advertiser authorize Google and its affiliates to automate retrieval and analysis of, and create test credentials to access, Destinations for the purposes of the Programs. By providing any mobile or other telephone number to Google in connection with the Programs, Advertiser and Customer authorize Google, its affiliates and their agents to call and send text messages (for which standard message and data rates may apply) to the provided telephone numbers, including by an automatic telephone dialing system, for purposes of the Programs. However, Google will not rely on this permission to initiate autodialed calls or text messages for marketing purposes. Advertiser and Customer further authorize Google, its affiliates and their agents to send electronic mail to Advertiser and Customer for purposes of the Programs. Customer warrants that it is authorized to act on behalf of, and, unless Customer is liable under the following sentence, has bound to these Terms, Advertiser. If for any reason Customer has not bound an Advertiser to these Terms, Customer will be liable for performing any obligation Advertiser would have had under these Terms had Advertiser been bound. Customer will provide Advertiser with reporting data no less than on a monthly basis that discloses absolute dollars spent on Google and performance (at a minimum cost, clicks and impressions of users on the account of that Advertiser) in a reasonably prominent location and in accordance with the Policies. Google may, upon request of an Advertiser, share Advertiser-specific information with Advertiser. If Customer is using a Program on its own behalf to advertise and not on behalf of an Advertiser, for that use Customer will be deemed to be both Customer and Advertiser.

**7      Make-Goods.** For reservation-based Display Ads, Google will deliver any agreed on aggregate number of Display Ads by the end of the campaign, but if Google fails to do so, then Customer's sole remedy is to make a claim during the Claim Period. If the parties confirm the accuracy of the claim, then Google will not charge Customer for the undelivered Display Ads or, if Customer has already paid, at Google's reasonable discretion, Google will provide for (i) advertising credits, which must be used by the Use-By Date, (ii) placement of the Display Ads in a position Google deems comparable within 60 days of Google's confirmation of the accuracy of the claim or (iii) an extension of the term of the campaign. Google cannot assure that any auction-based Ads will be delivered and therefore make-goods do not apply to auction-based Ads.

**8 (a)      Payment.** Customer, or Advertiser (as applicable under and defined in Section 8(b) below), will pay all charges incurred in connection with a Program, using a payment method approved by Google for that Customer (as modified from time to time), (A) within 90 days from the date of the invoice, if the invoice is delivered to Customer within 5 business days of the date of invoice, or (B) within 90 days from the date of delivery of the invoice, if the invoice is delivered to Customer after more than 5 business days of the

CONFIDENTIAL

date of invoice, unless otherwise agreed by the parties (e.g., in the Program user interface or IO). Any charges or other payments incurred in connection with the Program ("**Program Charges**") that are not paid when due Google will bear interest at the rate of 1.5% per month (or the highest rate permitted by law, if less) (the "**Contract Rate**"), commencing on the first day after the date such charge or other payment is due until paid in full, including the period after entry of any judgment for such unpaid charges and other payments. Charges are exclusive of taxes and applicable regulatory operating or jurisdiction-specific fees or costs, as determined by Google, and Customer, or Advertiser (as applicable under and defined in Section 8(b) below) will pay (i) all such taxes, fees or costs and (ii) reasonable expenses and legal fees Google incurs in collecting any unpaid Program Charges that are not disputed in good faith solely on the basis of Google's measurements and interest due Google, including without limitation in any bankruptcy proceeding filed by or against the Customer or any Advertiser; and (iii) all accrued and unpaid interest at the Contract Rate due Google. Charges are solely based on the applicable billing criteria (e.g., clicks, impressions, conversions). Any portion of a charge not disputed in good faith must be paid in full. Google will not be bound by any terms on a Customer online invoicing portal. No party may offset any payment due under these Terms against any other payment to be made under these Terms (e.g., payments due from different Advertisers or Advertiser campaigns). Google may, in its sole discretion, extend, revise or revoke credit at any time. For the avoidance of doubt, credit with respect to Advertisers operating under Sequential Liability Terms (as defined below) is established on an Advertiser-by-Advertiser basis as described in Section 8(b), however this clarification creates no obligation for Google to continue extending credit to any Advertiser for any reason. Google is not obligated to deliver any Ads in excess of any credit limit. If Google does not deliver Ads to the selected Targets or Destinations, then Customer's sole remedy is to make a claim for advertising credits within the Claim Period, after which Google will issue the credits following claim validation which must be used by the Use-By Date. Customer understands that third parties may generate impressions or clicks on Advertiser's Ads for prohibited or improper purposes and if that happens, Customer's sole remedy is to make a claim for advertising credits within the Claim Period, after which Google will issue the credits following claim validation which must be used by the Use-By Date. Google will use commercially reasonable efforts to identify and filter from billing automated, fraudulent or otherwise invalid impressions, inquiries or clicks. TO THE FULLEST EXTENT PERMITTED BY LAW, (A) CUSTOMER WAIVES ALL CLAIMS, DEFENSES, DISPUTES OR OBJECTIONS RELATING TO ANY PROGRAM CHARGES UNLESS A CLAIM IS MADE IN WRITING TO GOOGLE WITHIN THE CLAIM PERIOD AND (B) THE ISSUANCE OF ADVERTISING CREDITS (IF ANY) IS AT GOOGLE'S REASONABLE DISCRETION AND IF ISSUED MUST BE USED BY THE USE BY DATE.

**8 (b)** **Sequential Liability.** Notwithstanding anything to the contrary that may be contained herein, Google agrees to grant Customer "sequential liability" under these Terms, meaning Google will (1) hold Customer liable for each United States-incorporated or United States-registered and -domiciled Advertiser ("**US Advertiser**")'s payments solely to the extent proceeds have been received by Customer for payment of the applicable Program charges; provided, however, in the event that Customer makes voluntary payments of any Program Charges to Google before Customer receives the corresponding payments from the applicable US Advertiser(s), Customer (A) will bear the sole risk of non-payment from the applicable US Advertiser(s) with respect to such corresponding payments due from the applicable US Advertiser(s); (B) may retain such corresponding payments that it subsequently receives from such US Advertiser(s); and (C) waives any claims or rights against Google to recover such voluntary payments, regardless of whether Customer has received such corresponding payments from the applicable US Advertiser(s); and (2) hold US Advertiser liable for US Advertiser's payments solely to the extent proceeds have not been received by Customer for payment of the applicable Program charges (with (1) and (2) collectively, subject to all other terms of this Section 8(b) (Sequential Liability), being referred to as "**Sequential Liability Terms**"). Promptly at the request of Google, from time to time during the term of these Terms, Customer shall provide Google with (i) signed credit applications or equivalent information with respect to Customer (including Customer's tax registration or identification number) so as to enable Google to conduct a credit check on Customer, (ii) signed credit applications or equivalent information in its possession from US Advertisers (including a tax registration or identification number for each US Advertiser) so as to enable Google to conduct a credit check on the US Advertisers (and in the event Customer does not possess such information, it will, at the request of Google, seek such information, it being understood that Customer's inability to obtain such information for Google may impact Google's willingness to extend credit to a particular US Advertiser or permit such US Advertiser to participate in a Program), and (iii) confirmation that Customer's payment terms with each US Advertiser require payment of all charges incurred in connection with the Program within 60 days from the date of Google's invoice to Customer. If any US Advertiser's payment terms with Customer exceed 60 days from the date of Google's invoice to Customer, then sequential liability will not apply for such US Advertiser. For the avoidance of doubt, Google will remain entitled to receive payment by Customer as specified by Google (e.g., in the Program user interface or IO), regardless of the payment terms that Customer has extended to any US Advertiser, subject to any sequential liability that may apply for US Advertisers. Customer will give Google 5 business days prior written notice (which may be via e-mail) to a Google finance manager, someone more senior in finance at Google or such other person at Google that Google may designate from time to time (the "**Google Finance Contact**"), if US Advertiser Payment Terms are going to be extended for any US Advertiser, provided that: (x) after such notice, Google will notify Customer whether such extended US Advertiser Payment Terms are approved or not approved. If Google in its sole discretion determines, at any time, to not extend, or to cease extending, credit and/or sequential liability to a US Advertiser (e.g., due to US Advertiser's poor payment history, US Advertiser having invoices that have not been paid within 60 days from the date of Google's invoice to Customer, or the occurrence of a material change in the financial condition of US Advertiser) then (x) Google may, in its sole discretion, revoke credit or sequential liability on a go-forward basis with respect to such US Advertiser or suspend any or all current orders of such US Advertiser, pending receipt by Google from Customer or such US Advertiser of funds sufficient to make payments under such orders for future Ads, (y) Customer or US Advertiser must pay Google, in advance of running new orders, funds sufficient to make payments under such orders

Google LLC Advertising Program Terms for Agencies



Highly Confidential

GOOG-AT-MDL-019567388

CONFIDENTIAL

("**Pre-Payment Terms**"), (z) Customer must promptly advise US Advertiser of Google's above decisions. Customer agrees to make reasonable efforts to collect and clear payment from the US Advertiser to Google in accordance with the payment terms Customer has granted to Advertiser. Where Customer has not paid to Google charges incurred in connection with the Program within 60 days of Google's invoice to Customer due to a US Advertiser's failure to pay Customer in a timely manner, Customer will pay to Google proceeds that it thereafter receives for those charges within 10 days after receipt (if Google has not already been paid for those charges). Customer will use commercially reasonable efforts to assist Google in the event Google attempts to collect payment directly from a US Advertiser, including providing up-to-date contact information of such US Advertiser to Google within 5 business days of Google's request. Google will notify Customer at least two business days in advance if it intends in good faith to seek payment directly from US Advertiser. Customer will make available to Google upon request written confirmation of the relationship between Customer and US Advertiser. This confirmation may include, for example, US Advertiser's acknowledgement that Customer is its agent and is authorized to act on its behalf in connection with these Terms. Customer will promptly (but in any event within 2 business days) notify Google, if it has reason to believe, other than through publicly-available information, that a US Advertiser's credit is or may become impaired or that the US Advertiser will not pay for applicable Program charges within 60 days from the date of Google's invoice to Customer. Except as required by applicable law or court order or after the filing of any legal action against Customer demanding that Customer return or repay any payments for Program charges received by Customer ("**Clawback Suit**"), Customer agrees and acknowledges that it has no right whatsoever under the Terms, at law or in equity, including due to an Advertiser Insolvency Threat or Event (as defined below), to cease, withhold or defer any payments to Google for Program charges received by Customer. Customer agrees: (a) as promptly as reasonably possible, but in no event later than 15 days after receipt by Customer of a complaint or other legal process commencing any Clawback Suit ("**Clawback Receipt Date**"), to send Google copies thereof (and thereafter to provide Google copies of all material filings and notices in the Clawback Suit); (b) within 30 days after the Clawback Receipt Date, to provide Google an accounting of, and to hold in trust for Google in a separate interest-bearing account that is not commingled with any other funds, all payments for Program charges received by Customer that have not yet been paid over to Google; (c) to defend any Clawback Suit with legal counsel selected by Customer, at its own cost and expense, and to not settle or compromise any Clawback Suit without Google's prior written consent, which consent Google may withhold or condition in its reasonable discretion; and (d) that Google, in its sole discretion, may participate in the defense of, or intervene in, any Clawback Suit with legal counsel selected by Google, at its own cost and expense. Customer and Google agree to cooperate with each other in any Clawback Suit. The term "Advertiser Insolvency Threat or Event" means the filing, or potential or threatened filing, by or against any Advertiser of any insolvency, bankruptcy or similar proceeding under federal or state law ("**Insolvency Proceeding**"), or the potential or threatened filing of any Clawback Suit against Customer. If any Advertiser becomes a debtor in any Insolvency Proceeding, Customer agrees to file before any applicable bar date or deadline in such Insolvency Proceeding a proof or proofs of claim for the full amount of any unpaid Program charges ("**Customer POC**"), to send Google a copy of any Customer POC within 15 days after the filing thereof, and to pay Google any distributions or payments attributable to Program charges included in any Customer POC within 15 days after Customer's receipt thereof. As promptly as reasonably possible, but in no event later than 10 days after receipt by Customer of a complaint, objection or other legal process objecting to or challenging any Customer POC ("**Claim Objection**"), Customer agrees to send Google copies thereof (and thereafter to provide Google copies of all material filings and notices related to the Claim Objection). Customer also agrees to defend the Claim Objection and will not withdraw any Customer POC or settle or compromise any Claim Objection without Google's prior written consent, which consent Google may withhold or condition in its reasonable discretion. Google agrees to reasonably cooperate with Customer in preparing any Customer POC. In the event that Google decides to file in such Insolvency Proceeding a proof or proofs of claim for any unpaid Program charges ("**Google POC**"), Customer agrees to reasonably cooperate with Google in preparing any Google POC. If Customer ceases conducting business or becomes a debtor in any Insolvency Proceeding, Customer agrees: (a) to promptly provide Google an accounting of, and to hold in trust for Google in a separate interest-bearing account that is not commingled with any other funds, all payments for Program charges received by Customer that have not yet been paid over to Google or which are thereafter received by Customer; (b) upon written request from Google, to provide Google copies of Customer's invoice and payment records related to any Program charges that have not yet been paid over to Google, along with contact information of any Advertisers who have not paid Customer for any such Program charges; and (c) to not settle or compromise any claims against any Advertisers relating to any Program charges that have not yet been paid to Customer without Google's prior written consent, which consent Google may withhold or condition in its reasonable discretion. All notices to Google under this Section 8(b) must be sent to credit@google.com.

**9      Disclaimers.** TO THE FULLEST EXTENT PERMITTED BY LAW, GOOGLE, ON BEHALF OF ITSELF, ITS AFFILIATES PERFORMING OR RECEIVING SERVICES HEREUNDER, AND ITS PARTNERS DISCLAIMS ALL WARRANTIES, WHETHER IMPLIED, STATUTORY OR OTHERWISE, INCLUDING FOR NON-INFRINGEMENT, SATISFACTORY QUALITY, MERCHANTABILITY AND FITNESS FOR ANY PURPOSE, AS WELL AS ANY WARRANTIES ARISING OUT OF ANY COURSE OF DEALING OR USAGE OF TRADE. TO THE FULLEST EXTENT PERMITTED BY LAW, THE PROGRAMS AND GOOGLE AND PARTNER PROPERTIES ARE PROVIDED "AS IS", "AS AVAILABLE," AND "WITH ALL FAULTS," AND CUSTOMER AND ADVERTISER USES THEM AT THEIR OWN RISK. GOOGLE, ITS AFFILIATES AND ITS PARTNERS DO NOT MAKE ANY GUARANTEE IN CONNECTION WITH THE PROGRAMS OR PROGRAM RESULTS. GOOGLE MAKES NO PROMISE TO INFORM CUSTOMER OR ADVERTISER OF DEFECTS OR ERRORS.

CONFIDENTIAL

10   **Limitation of Liability.**
   a) <u>Liability</u>. IN THIS SECTION 10 (LIMITATION OF LIABILITY), "LIABILITY" MEANS ANY LIABILITY, WHETHER UNDER CONTRACT, TORT OR OTHERWISE, INCLUDING FOR NEGLIGENCE.
   b) <u>Limitations</u>. SUBJECT TO SUBSECTION (C) (EXCEPTIONS TO LIMITATIONS):
      1) NEITHER CUSTOMER, ADVERTISER NOR GOOGLE, NOR ANY OF THEIR AFFILIATES WILL HAVE ANY LIABILITY ARISING OUT OF OR RELATING TO THESE TERMS FOR:
         i. THE OTHER PARTIES' LOST REVENUES;
         ii. INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL LOSSES (WHETHER OR NOT FORESEEABLE OR CONTEMPLATED BY THE PARTIES AT THE EFFECTIVE DATE); OR
         iii. EXEMPLARY OR PUNITIVE DAMAGES; AND
      2) EXCEPT AS SET FORTH IN SUBSECTION (C) (EXCEPTIONS TO LIMITATIONS), AND OTHER THAN INDEMNIFICATION AMOUNTS UNDER SECTION 11 (DEFENSE AND INDEMNIFICATION), EACH OF CUSTOMER, ADVERTISER AND GOOGLE, AND THEIR AFFILIATES' TOTAL LIABILITY FOR ANY GIVEN EVENT OR SERIES OF CONNECTED EVENTS IN THE AGGREGATE IS LIMITED TO THE AMOUNT PAYABLE TO GOOGLE BY CUSTOMER AND ADVERTISER UNDER THE TERMS IN THE THIRTY DAYS BEFORE THE DATE OF THE ACTIVITY FIRST GIVING RISE TO THE CLAIM; AND
      3) EACH OF CUSTOMER, ADVERTISER AND GOOGLE'S TOTAL AGGREGATE LIABILITY UNDER SECTION 11 (DEFENSE AND INDEMNIFICATION) IS LIMITED TO THE GREATER OF (I) $1,000,000 OR (II) CHARGES PAID BY CUSTOMER AND ADVERTISER TO GOOGLE DURING THE TWELVE MONTHS PRIOR TO THE DATE ON WHICH THE SERVICES GIVING RISE TO THE CLAIM WERE PERFORMED, PROVIDED THAT IN NO CASE WILL EITHER PARTY'S TOTAL AGGREGATE LIABILITY UNDER SECTION 11 (DEFENSE AND INDEMNIFICATION) EXCEED $50,000,000.
   c) <u>Exceptions to Limitations</u>. NOTHING IN THESE TERMS EXCLUDES OR LIMITS NEITHER CUSTOMER, ADVERTISER NOR GOOGLE'S LIABILITY FOR:
      1) DEATH OR PERSONAL INJURY RESULTING FROM ITS NEGLIGENCE OR THE NEGLIGENCE OF ITS EMPLOYEES OR AGENTS;
      2) FRAUD OR FRAUDULENT MISREPRESENTATION;
      3) BREACH OF THE LAST SENTENCE OF SECTION 1, SECTION 3(A), SECTION 13(D) OR SECTION 14 (CONFIDENTIALITY);
      4) INFRINGEMENT OF THE OTHER PARTIES' INTELLECTUAL PROPERTY RIGHTS;
      5) PAYMENT OBLIGATIONS; OR
      6) MATTERS FOR WHICH LIABILITY CANNOT BE EXCLUDED OR LIMITED UNDER APPLICABLE LAW.

11   **Defense and Indemnification.**   Subject to subsection (c) ("Conditions"),
   a) <u>Definitions</u>.
      1) "**Indemnified Liabilities**" means any (i) settlement amounts approved by the indemnifying party; and (ii) damages and costs in a final judgement awarded against the indemnified parties by a competent court.
      2) "**Intellectual Property Rights**" means all copyright, trade secret or US patent or trademark rights.
      3) "**Third-Party Legal Proceeding**" means any formal legal proceeding filed by an unaffiliated third party before a court or government tribunal (including any appellate proceeding).
   b) <u>Obligations</u>. Subject to Subsection (c) (Conditions)
      1) Advertiser will defend Google, its Partners, agents, affiliates, and licensors, and indemnify them against Indemnified Liabilities, in any Third Party Legal Proceeding to the extent arising from: Targets, Creative, Destinations, Services, its Use or breach of these Terms by Advertiser.
      2) Customer will defend Google, its Partners, agents, affiliates, and licensors, and indemnify them against Indemnified Liabilities, in any Third Party Legal Proceeding to the extent arising from Targets, Creative, Destinations, Services, its Use or breach of these Terms by Customer.
      3) Google will defend Customer, Advertiser, its agents and affiliates and indemnify them against Indemnified Liabilities, in any Third Party Legal Proceeding to the extent arising from (a) breach of these Terms by Google, (b) a claim that Customer's use of Google's (x) software or other technology used to provide the Program (excluding Targets, Creative, or any content provided by a third party, Customer or Advertiser) or (y) brand features infringes that third party's Intellectual Property Rights, or (c) violation by Customer of an applicable law, to the extent the violation is attributable to compliance with a relevant Policy.

Google LLC Advertising Program Terms for Agencies

Highly Confidential

GOOG-AT-MDL-019567390

c) <u>Conditions</u>. Subsection (b) (Obligations) is conditioned on:
  1) In the event Advertiser, Customer or Google seeks indemnification under Section 11(b), (the "**Indemnified Party**") such party must promptly notify the party with the indemnification obligation (the "**Indemnifying Party**") of any allegations that preceded the Third-Party Legal Proceeding and cooperate reasonably with the Indemnifying Party to resolve the allegation(s) and Third-Party Legal Proceeding, provided the Indemnifying Party will be responsible for the Indemnified Party's reasonable out-of-pocket expenses. If a breach of this Subsection (1) prejudices the defense of the Third-Party Legal Proceeding, the Indemnifying Party's obligations under this Section 10 (Defense and Indemnification) will be reduced in proportion to the prejudice; however, if there is no prejudice, then the Indemnifying Party will not be relieved of any liability due to the Indemnifying Party's failure to provide notice.
  2) The Indemnified Party must tender sole control of the indemnified portion of the Third Party Legal Proceeding to the Indemnifying Party, subject to the following: (x) the Indemnified Party may appoint its own non-controlling counsel, at its own expense; and (y) any settlement requiring the Indemnified Party to admit liability, pay money, or take (or refrain from taking) any action, will require the Indemnified Party's prior written consent. THIS SECTION STATES THE INDEMNIFIED PARTY'S SOLE REMEDY, TO THE EXCLUSION OF ALL OTHER REMEDIES (IN CONTRACT, TORT OR OTHERWISE), AND THE INDEMNIFYING PARTY'S TOTAL LIABILITY, WITH RESPECT TO THE THIRD PARTY CLAIMS AND LIABILITIES ADDRESSED BY THIS SECTION.

d) <u>Exclusions</u>. This Section 11 (Defense and Indemnification) will not apply to the extent the underlying allegation arises from:
  1) the Indemnified Party's breach of these Terms;
  2) modifications or combinations to the Indemnifying Party's technology or brand features that were provided by the Indemnified Party or made at the Indemnified Party's direction;
  3) failure to use the most current supported version of the Indemnifying Party's technology or software provided under these Terms; or
  4) compliance with the Indemnified Party's design or request for customized features.

e) <u>Remedies</u>. If the Indemnifying Party's technology is subject to an Intellectual Property Rights allegation or Third-Party Legal Proceeding, the Indemnifying Party may do the following at its sole option and expense:
  1) procure the right to continue providing the Indemnifying Party's technology in compliance with this Agreement; or
  2) modify the Indemnifying Party's technology without materially reducing its functionality; or
  3) replace the Indemnifying Party's technology with a functionally-equivalent alternative.

f) <u>Sole Rights and Obligations</u>. Without affecting either party's termination rights, this Section 11 (Defense and Indemnification) states the parties' only rights and obligations under this Agreement for third-party Intellectual Property Rights-related allegations and Third Party Legal Proceedings.

g) Partners are intended third party beneficiaries of this Section 11 (Defense and Indemnification).

**12   Term**. These Terms expire on the first anniversary of the Effective Date (as defined below). Either party may terminate these Terms at any time with notice to the other party, but if these Terms expire or terminate, (i) campaigns not cancelled under Section 5 and new campaigns may be run and reserved and (ii) continued Program Use is, and reservations will remain in effect subject to these Terms for 1 month, but, after such one 1 month period, campaigns will be run and reserved subject to Google's terms and conditions then in effect for the Programs available at www.google.com/ads/terms. Google may suspend Customer's ability to participate in the Programs at any time with prompt notice thereafter to Customer. In all cases, the running of any Customer campaigns after expiration or termination is in Google's sole discretion.

**13   Miscellaneous**. (a) THESE TERMS MUST BE CONSTRUED AS IF THE PARTIES JOINTLY WROTE THEM. ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE GOVERNED BY NEW YORK LAW, EXCLUDING NEW YORK'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE UNITED STATES FEDERAL OR STATE COURTS IN THE SOUTHERN DISTRICT OF NEW YORK, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS. (b) Nothing in these Terms will limit a party's ability to seek equitable relief, except that neither Customer nor Advertiser will seek, in a proceeding filed during the term or one year after the term, an injunction of any of the Programs based on patent infringement. (c) These Terms are the parties' entire agreement relating to their subject matter and supersede all other agreements. (d) Neither party may (I) disclose the terms or conditions of these Terms (except to its professional advisors who are subject to confidentiality obligations at least as strict as those in Section 14) or (II) make any public statement regarding the relationship contemplated by these Terms, in each case except to (i) meet any applicable law, regulation, legal process, or enforceable governmental request, or (ii) protect against harm to the rights, property or safety of that party or the public as required or permitted by law; provided that Customer may disclose these Terms to Advertisers who have been bound to these Terms or are otherwise bound to confidentiality terms substantially similar to those contained in Section 14. (e) All notices of termination or breach must be in writing and addressed to the other party's Legal Department (or if it is not known if the other party

has a Legal Department then to the other party's primary contact or other address on file). Emails are written notices. The email address for notices being sent to Google's Legal Department is legal-notices@google.com. All other notices to Customer will be in writing and sent to an email address associated with Customer's account. All other notices to Google will be in writing and addressed to Customer's primary contact at Google or other method made available by Google. Notice will be treated as given on receipt, as confirmed by written or electronic means . These notice requirements do not apply to legal service of process, which is instead governed by applicable law. (f) Any amendment must be agreed to by both parties and must expressly state that it is amending these Terms. Neither party will be treated as having waived any rights by not exercising (or by delaying the exercise of) any rights under these Terms. If any provision of these Terms is found unenforceable, that provision will be severed and the balance of the Terms will remain in full force and effect. (g) Neither party may assign any of its rights or obligations under these Terms without the written consent of the other party, except to an affiliate but only where (I) the assignee agrees in writing to be bound by these Terms, (II) the assigning party remains liable for obligations under these Terms if the assignee defaults on them, and (III) the assigning party has notified the other party of the assignment. Any other attempt to assign is void. (h) Except as provided in Section 11, there are no third-party beneficiaries to these Terms. (i) These Terms do not create any agency, partnership, joint venture or employment relationship among the parties. (j) Sections 1 (last sentence only) and 8 through 14 will survive expiration or termination of these Terms. (k) Except for payment obligations, no party or its affiliates are liable for failure or delay in performance to the extent caused by circumstances beyond its reasonable control. (m) The parties may execute these Terms in counterparts, including facsimile, PDF and other electronic copies, which taken together will constitute one instrument.

**14      Confidentiality.** "**Confidential Information**" is information disclosed by one party to the other party under these Terms that is marked as confidential or would normally under the circumstances be considered confidential information of the disclosing party. Confidential Information does not include information that (a) the recipient already knew, (b) that becomes public through no fault of the recipient, (c) that was independently developed by the recipient, or (d) that was rightfully given to the recipient by another party. Google will not knowingly disclose Advertiser's Targets list(s) to any competitor of Advertiser (except that Google may offer the same Targets to more than one advertiser). For the avoidance of doubt, Google may not disclose to the public or Partners (other than as required by law or for operation of the Programs) such Creative, Targets, placement, pricing or performance information in a manner that allows the public or Partners to derive such information solely, exclusively and directly from Google's disclosure; provided, however, that this restriction is not intended to prevent Google from disclosing such information in an aggregated manner that is not attributable (to Customer or Advertiser). The recipient will not disclose the Confidential Information, except to affiliates, employees, and agents who need to know it and who have agreed in writing to keep it confidential. The recipient, its affiliates, employees, and agents may use Confidential Information only to exercise rights and fulfill obligations under these Terms, while using reasonable care to protect it. The recipient may also disclose Confidential Information when required by law after giving reasonable notice to discloser.

**15      Flighting.** Google will use commercially reasonable efforts to comply with any agreed upon IO requirements to create a reasonably balanced delivery schedule for impression inventory for reservation-based Display Ads that are reservation-based on www.YouTube.com, taking into account exceptions for user-driven and content-driven Ad delivery.



CONFIDENTIAL

Agreed and accepted as of the latest of the signature dates below (the "**Effective Date**") by:

|  | **GOOGLE LLC** |
|---|---|
| By: ▮ | By: *Philipp Schindler* |
| Name: ▮ | Name: Philipp Schindler, Authorized Signatory |
| Title: CFO | Title: |
| Date: November 30th, 2023 | Date: 2023.12.01 08:10:28 -08'00' |

Google LLC Advertising Program Terms for Agencies

Highly Confidential

GOOG-AT-MDL-019567393