**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR AN ADVERSE INFERENCE</u>**

## INTRODUCTION

Just like any other litigant, Google has obligations to the Court and the parties to preserve relevant documents. Google does not dispute that it failed to meet that obligation and destroyed relevant chats. Google does not deny that witnesses, including senior executives, used chats to discuss their work, including work relevant to this case. Nor does Google deny that it: (i) made "history off" the default setting for chats, such that they would be deleted automatically after 24 hours; (ii) required individual employees to make cumbersome, in-the-moment decisions about a chat's relevance to a litigation hold in order to preserve them; and, most concerning, (iii) trained employees to discuss "sensitive" matters in "history off" chats so they would not be "discovered by an adversary," all of which facilitated and encouraged destruction of work-related chats. Google does not dispute that this conduct went on for years, stopping only after this case was filed. In light of Google's conduct in this case and others, it is not surprising that other courts have been "taken aback" by Google's spoliation, *United States v. Google*, -- F. Supp. 3d --, 2024 WL 3647498 (D.D.C. Aug. 5, 2024) ("*Search*"), and have found Google "intentionally manifested at every level" a desire to "subvert the discovery process" by destroying chats, *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 984, 988 (N.D. Cal. 2023) ("*Epic*").

In the face of this record, Google tries to defend itself with technical arguments, none of which pass muster. *First*, Google seeks to distract from the merits, for which it has no defense, by focusing on the timing of Plaintiffs' motion. Yet Google identifies no prejudice from the motion's timing, nor could it, as Plaintiffs filed this motion before the relevant deadline for trial-related motions, and the motion does not seek further discovery or a delay in trial. And, in any event, where, as here, a motion addresses "serious misconduct," that factor weighs strongly against allowing the offender to escape judicial scrutiny merely due to procedural complaints.

Google can hardly complain about timeliness when it continues to disclose evidence of

its wrongdoing, even as this motion is briefed. On Friday, hours before Google filed its opposition, it admitted that its binding statements about the timing of litigation holds for 90 of its custodians—22 of them trial witnesses—were "mistake[n]." As discussed below, this "correction" does not improve Google's position. More fundamentally, Google's shifting factual positions, lack of transparency, and failure to honor basic discovery obligations show why this is a textbook circumstance warranting the imposition of sanctions.

*Second*, Google insists Plaintiffs failed to prove what was in the deleted chats or how the now-destroyed evidence would have been important to Plaintiffs' trial presentation. This red herring turns the law on its head. Plaintiffs are not required, in the face of Google's misconduct, to prove what Google destroyed—and for good reason. Allowing bad actors like Google to shift the burden to Plaintiffs would immunize spoliators in almost every case because the contents of spoliated evidence is, by its nature, unknowable. Plaintiffs' burden is simply to show that the destroyed chats were relevant, and that is clear from Google's own admissions, the roles of the individuals who destroyed chats, and the "Communicate with Care" protocols about the kinds of messages that employees were told to take "history off." No further showing is required to obtain an adverse presumption. Plaintiffs have nonetheless presented compelling circumstantial evidence—unrebutted by Google—suggesting that the spoliated chats likely would have been uniquely favorable to Plaintiffs' case given that they occurred in the one forum where Google encouraged employees to communicate freely about "sensitive" topics like "competition."

*Third*, Google argues there is insufficient evidence of Google's intent to deprive Plaintiffs of evidence, an argument belied by the record and Google's own concessions. When Google was faced with increasing exposure from litigation by government enforcement agencies, it took a calculated risk to create a system that would deprive its litigation adversaries of

evidence. The Court need not guess or make an inference about that goal; the Walker Memo expressly stated it. Over time, Google (including witnesses here) consistently underscored and reinforced the messages from the Walker Memo with mandatory corporate trainings about avoiding "discoverable" communications. Consistent with that corporate training, Google employees, including witnesses here, deliberately turned to "off the record" chats to discuss sensitive material they did not want preserved and turned over in litigation.

In short, Google's refusal to acknowledge the clear import of the evidence, coupled with its retreat to anemic procedural defenses, speaks volumes. Google's conduct demands accountability. Plaintiffs therefore request that the Court impose an appropriate sanction to vindicate the judicial truth-seeking process and level the evidentiary playing field.

## **ARGUMENT**

### I.    **Google Destroyed Relevant Chats**

To warrant an adverse inference, five elements must be shown. Mot. 16-17. Google does not dispute—and therefore concedes—at least two of them: (1) Google had a duty to preserve chats as early as October 2019, and (2) Google failed to take reasonable steps to satisfy that duty. *See, e.g.*, *E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 728 (E.D. Va. 2012) (party "concede[s]" a point it "do[es] not contest"); *Amazon, Inc. v. WDC Holdings LLC*, 2023 WL 2815140, at *11 (E.D. Va. Apr. 6, 2023) (failure to respond in opposition "concede[s] [the] point").

Google also does not appear to dispute two other elements: that (3) "ESI was lost," and (4) "cannot be restored." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018). Google's own employees wrote down that they were destroying ESI, *see* ECF No. 1119-1 at App. C, and at least eight of them later admitted that they both (1) used chats for substantive discussions, and (2) did not preserve those chats by regularly turning "history on" for them, *see* Mot. 4, 8. The ESI that Google destroyed also included "relevant materials." *E.I. du Pont de*

3

*Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011). In this context, "relevant materials" broadly encompasses any documents "made by [or for] individuals likely to have discoverable information," "information that is relevant to the claims or defenses of any party, or which is relevant to the subject matter involved in the action," and information "reasonably calculated to lead to the discovery of admissible evidence." *Id*. at 496-97. The ESI Google destroyed easily satisfies this requirement. Google employees who worked day-to-day on the products and conduct that will be the focus of trial destroyed chats about the substance of their work. *See* Mot. 4, 8; *id*. at App. C.[1] Given that evidence, "the burden to show otherwise falls on" Google, "the party charged with spoliation." *Kolon Indus.*, 803 F. Supp. 2d at 499.

The requirement to show that "relevant" ESI was "lost" is distinct from the requirement, for some forms of relief, to show "prejudice." *See infra* Part V (addressing prejudice); Mot. 16-17. Google's brief repeatedly conflates these two requirements, claiming that Plaintiffs must prove that Google destroyed "crucial" evidence. Opp'n 1-2. That is incorrect. A party seeking spoliation sanctions "cannot be expected to demonstrate with certainty the content of destroyed documents," and instead "that responsibility falls on the party charged with spoliation." *Kolon Indus.*, 803 F. Supp. 2d at 498-99. Moreover, to obtain an adverse evidentiary presumption, Plaintiffs need not prove that the destroyed chats were "crucial" or that their destruction was otherwise prejudicial to Plaintiffs.[2] The intent to deprive required to obtain an adverse

---

[1] Google suggests that Plaintiffs pointed to all the chat conversations in Plaintiffs' Ex. 4 as examples of "employees seeking to make chats 'history off' to ensure they were not discoverable." Opp'n 23-24. However, Plaintiffs only made that claim as to the chats contained in Plaintiffs' Appendix C and Exhibits 4A-4X. *See* Opening Br. at 9. The other chats in Exhibit 4 were cited for other purposes, such as Google employees treating history-off chat like "Vegas," and their consciousness that "history on" chats were "discoverable." *See* Exs. 4DD, 4FF.

[2] Google relies on an out-of-circuit district court decision for its repeated use of the word "crucial." *See* Opp'n 3, 16 (citing *Marshall* v. *Dentfirst, P.C.*, 313 F.R.D. 691, 697 (N.D. Ga. 2016)). That is not the governing legal standard in the Fourth Circuit. *See* Mot. 16-17.

presumption "support[s] . . . an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37 advisory committee's note (2015); *see* Mot. 17. Hence, when a party destroys evidence with an intent to deprive an adversary of it, materiality and prejudice are presumed, and that presumption can only be overcome with "clear and convincing evidence demonstrating that the spoliated material or documents were of minimal or little import." *Kolon Indus.*, 803 F. Supp. 2d at 499.

Rather than provide a defense, Google's opposition underscores that it destroyed relevant chats. Google submitted a declaration that provides statistics about Google's production of emails and chats, including from the files of the eight Google employees who admitted that they used chats for substance but did not preserve them. ECF No. 1169-21. The declaration shows that those eight custodians were disproportionately important; they were 4.7% of custodians but accounted for about 17% of produced documents. *See id.* ¶¶ 4, 8, 11. Despite accounting for 17% of produced documents, however, they accounted for less than 7% of produced chats. *Id.* ¶¶ 9, 12. If these custodians, who used both chat and email to communicate about substance, had accounted for a similar proportion of produced chats and produced documents, then Google should have produced tens of thousands more chat messages for them than it did.

## II.     Plaintiffs' Motion Is Timely, and Google Has No Credible Claim of Prejudice

Plaintiffs' motion is timely because: (a) its timing creates no prejudice to Google, and Google claims none; (b) it was filed before the most relevant deadline (the due dates for motions *in limine* and motions regarding any other pre-trial matters); and (c) the spoliation at issue is so serious that it outweighs any concern Defendant seeks to raise about Plaintiffs' purported delay.

Neither Federal Rule of Civil Procedure 37(e) nor the Court's inherent power imposes a time limit for seeking spoliation sanctions, and the Fourth Circuit has not addressed that question. In the comparable context of Rule 11 sanctions, the Fourth Circuit has held that

considerations of timeliness "are equitable, and must be resolved on a case by case analysis." *In re Kunstler*, 914 F.2d 505, 513 (4th Cir. 1990); *accord Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1027 (7th Cir. 1999) (timeliness of sanctions motion "dictated by the specific facts and circumstances in a given case" (cleaned up)).

That same case-specific approach applies here. Courts within the Fourth Circuit "have identified a number of factors that can be used to assess the timeliness of spoliation motions." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009) (collecting cases). These factors can include (1) whether the timing would prejudice the non-moving party, (2) whether there was any deadline for filing spoliation motions, (3) the moving party's explanation for the motion's timing, (4) the seriousness of the misconduct, and (5) the timing of the motion relative to the close of discovery, briefing of summary judgment, and trial. *See id*. at 506-08; *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 2023 WL 4669560, at *4 (D. Md. Jan. 23, 2023). The Court should also evaluate timeliness in light of the specific relief it seeks and the purposes that relief serves. *See, e.g.*, *Goodman*, 632 F. Supp. 2d at 509 (sanctions motion timely in part because relief sought "will not entail reopening discovery or delaying the upcoming trial"). These factors demonstrate the timeliness of Plaintiffs' motion.

A.     **The Timing of Plaintiffs' Motion Creates No Prejudice to Defendant**

Plaintiffs' motion is timely and creates no prejudice to Google because it seeks no additional discovery and no delay of trial. Google does not claim otherwise. The passage of time since the close of discovery has not eroded any defenses or potential remedies to Google's misconduct, and Google has not claimed any disadvantage from the timing of Plaintiffs' motion that it would not have faced in November 2023. The undisputed absence of prejudice supports the motion's timeliness, as courts in the Fourth Circuit have recognized. *See, e.g.*, *Membreno v. Atlanta Rest. Partners, LLC*, 338 F.R.D. 66, 75-76 (D. Md. 2021) (motion timely because

"Defendants are not significantly prejudiced because of the delayed filing"); *Nat'l Fair Hous. All.*, 2023 WL 4669560, at *4 (similar); *McDonald v. Wal-Mart Stores East, LP*, 2008 WL 153783, at *1 n.1 (E.D. Va. Jan. 14, 2008) (similar); *GMS Indus. Supply, Inc. v. G&S Supply LLC*, 2022 WL 853626, at *6 (E.D. Va. Mar. 22, 2022) (motion timely where "relief sought will not entail reopening discovery or delaying trial"); *Goodman*, 632 F. Supp. 2d at 509 (similar).

### B.    Plaintiffs Timely Filed This Trial Motion Before the Relevant Deadline

Here, Plaintiffs' motion was timely filed because it is a trial motion, filed two weeks before the Court's deadline for filing "motions *in limine*" and motions raising "any other pretrial matter." ECF No. 871 at 2. It seeks trial-related evidentiary relief and is tailored to address the effect Google's conduct would have on the presentation of evidence at trial. Such a motion is appropriately brought and considered close to trial, with the benefit of a concrete understanding of the evidence, witnesses, and issues to be presented. *See, e.g.*, *Owens v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 761 (M.D. La. 2023) (deferring request for adverse inference until trial to "have the benefit of the entire record and any developments on this issue that may have arisen in the intervening time"); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 237 (D. Minn. 2019) (similar). Plaintiffs sought to understand how Google's spoliation would impact trial before bringing this motion, which is informed by the parties' witness and exhibit lists.[3] Thus, the timing of Plaintiffs' motion was a pragmatic choice, not a "tactical" one. *See* Opp'n 10.

Courts routinely decide (and grant) requests for trial-related evidentiary sanctions, such as an adverse inference, when presented as a motion *in limine* prior to trial. *See, e.g.*, *Fortress*

---

[3] Cases Google cites about the timing of trial, *see* Opp'n 9 (citing *Atanassova* and *Weber*), are inapposite because they did not involve spoliation by trial witnesses.

*Bible Church v. Feiner*, 734 F. Supp. 2d 409, 413, 496 (S.D.N.Y. 2010) (granting adverse inference motion *in limine*); *Bordegaray v. Cnty. of Santa Barbara*, 2016 WL 7260920, at *6 (C.D. Cal. Dec. 13, 2016) (same); *Promier Prods., Inc. v. Orion Cap. LLC*, -- F. Supp. 3d --, 2023 WL 11809987, at *8 n.10 (N.D. Ill. Dec. 22, 2023) (permitting plaintiff "to pursue the adverse inference issue *in limine*" despite untimely discovery motion); *see also Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 376-77 (E.D. Va. 2015) (Brinkema, J.) (deciding adverse inference motion *in limine* on the merits); *Doe v. Fairfax Cnty. Sch. Bd.*, 2019 WL 8887763, at *4 (E.D. Va. June 28, 2019) (granting motion for adverse inference filed two months before trial). Motions *in limine* are "pursuant to the district court's inherent authority to manage the course of trials," *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), and an adverse presumption in a bench trial is similarly part of the Court's discretion to oversee trial evidence.

### C.     <u>Plaintiffs' Motion Seeks Trial Relief for Spoliation, Not Further Discovery</u>

While Plaintiffs' "motion is governed by Rule 37," at least in part, "it is not a discovery motion." *GMS Indus.*, 2022 WL 853626, at *4 (spoliation motion seeking adverse inference at trial). Many of Google's arguments and cited authorities are inapposite because they treat this as a discovery motion. No further discovery can remedy Google's spoliation because the chats at issue no longer exist. For example, several cases cited by Google concern sanctions for failure to comply with discovery orders under Rule 37(b), which is neither the rule nor the circumstance presented here.[4] Google's focus on the timing of Plaintiffs' motion relative to discovery and

---

[4] *Bush v. Dep't of Hum. Servs.*, 714 F. App'x 180 (3d Cir. 2017); *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006); *Gen. Ins. Co. of Am.* v. *E. Consol. Utils., Inc.*, 126 F.3d 215 (3d Cir. 1997); *Brandt v. Vulcan, Inc.*, 30 F.3d 752 (7th Cir. 1994); *Guo* v. *Xia*, 2019 WL 13295855 (E.D. Va. June 26, 2019). *Glenn* v. *Scott Paper Co.*, 1993 WL 431161 (D.N.J. Oct. 20, 1993) involved a motion for summary judgment, not sanctions. *Id*. at *10 n.3.

summary judgment, *see* Opp'n 8-9,[5] is similarly misplaced because Plaintiffs' motion relates only to trial, not to discovery or summary judgment.[6] *See Goodman*, 632 F. Supp. 2d at 509.

Even if discovery were a marker for the timeliness of Plaintiffs' motion (it is not), the equities of how discovery unfolded do not help Google. The original deadline for fact discovery was September 8, 2023, but Google's own discovery failures required that deadline to extend only for Google until November 17, 2023. And Google has continued to produce large quantities of documents well after that November 2023 deadline. Indeed, it produced more than 40,000 documents in June 2024, including three that Plaintiffs cited in support of this motion. *See* Exs. 30-32. Additionally, Google revealed only six days ago—just hours before it filed its opposition to this motion—that its Rule 30(b)(6) deposition responses about the timing of its litigation holds were inaccurate, apparently because Google's counsel did not "review[] the legal holds provided to each custodian" before Google provided those responses. Ex. 38 at 1.[7] To address this widespread failure, affecting Google's statements about 90 custodians—including ***22 trial witnesses***[8]—Google has now attempted to "correct" its corporate deposition responses nine months after the close of fact discovery. *Id*.

Google's belated corrections to its deposition responses undercut Google's position in two ways. First, the earlier issuance of litigation holds means that Google's spoliation conduct

---

[5] Although Google refers multiple times to *Scalia v. County. of Kern*, 576 F. Supp. 3d 703 (E.D. Cal. 2021), it cites only withdrawn portions of a magistrate judge's recommendation on the timeliness of a sanctions motion, Opp'n 9-10, which the district court declined to adopt, instead ruling the motion "timely" and granting it in part. *Scalia*, 576 F. Supp. 3d at 706-08.

[6] Therefore, it is unclear (Google does not say) how Google would have "address[ed] this argument during summary judgment briefing." Opp'n 8 n.5.

[7] Plaintiffs have continued exhibit numbering from the opening brief. Exhibits 1-37 were attached to the opening brief, and Exhibits 38-51 are attached to this reply brief.

[8] "Trial witnesses" refers to custodians whose testimony Plaintiffs intend to offer at trial or who are on Google's witness list.

was more widespread than Plaintiffs previously knew. Second, the "corrections" show the shifting nature of the evidentiary record underlying Google's spoliation, undermining Google's claim that "[t]he factual record has been the same for months." Opp'n 9.

Google's corrections—revealed for the first time last week—show that **four additional Google custodians** deliberately diverted business discussions to "history off" chats while under litigation hold (Chetna Bindra, Jason Washing, Haskell Garon, and trial witness Jerry Dischler). That is in addition to 16 such custodians identified in the opening brief,[9] seven others who admitted to not preserving substantive chats while under litigation hold,[10] and at least two trial witnesses whose volume of substantive chats dramatically increased (eight times over) when Google suspended auto-deletion (Nirmal Jayaram and George Levitte), *see* Appendix E. For example, Ms. Bindra, whom Plaintiffs now know was on litigation hold in December 2019, proposed the next month that a group discussing Google's ad targeting policies, including trial witness Nitish Korula, "do a ping thread with history off and without Nitish" because Mr. Korula was on litigation hold. Ex. 4EE at -262. Google's "corrections" have shown this to be yet another example of a Google employee under litigation hold proposing to move relevant discussions to a chat that would be auto-deleted.

Based on Google's recent disclosure, Plaintiffs have now identified evidence of spoliation involving Bindra, Washing, Garon, and Dischler and further evidence of spoliation for trial witnesses Aparna Pappu, Chris LaSala, and Duke Dukellis:

- Ex. 39 (Bindra in Feb. 2020: "The thread has history on. Using the other one.");

---

[9] Nitish Korula; Aparna Pappu; Chris LaSala; Sissie Hsiao; Martin Pal; Bonita Stewart; Woojin Kim; Danielle Romain; Adam Juda; Roshan Khan; Sundar Pichai; Prabhakar Raghavan; Vip Andleigh; Amin Charaniya; Anthony Chavez; Vidhya Srinivasan.

[10] Brad Bender; Vlad Sinaniyev; Scott Spencer; Duke Dukellis; Sam Temes; Tobias Maurer; Debbie Weinstein. Jerry Dischler is the eighth custodian in this group. *See* Ex. 3 at 2-3.

- Ex. 4E at -441 (Washing turning "history off" while on litigation hold);

- Ex. 40 at -388, -395 (relevant history-off chats from Garon in 2020, copied into email by another custodian but not found in Garon's files);

- Ex. 41 (trial witness and then-head of ads business Dischler successfully proposing "a group chat that disappears after 24h" for business discussion in 2020);

- Ex. 42 (Pappu's efforts in 2020 to turn history off); Ex. 43 at -551-552 (same); Ex. 44 (same);

- Ex. 45 at -794 (Pappu in 2020 participating in a chat that abruptly ends when colleague states, "I could see this being done in a way that leads to law suits . . . Omfg . . . History is on, jesus . . . Sigh");

- Ex. 46 (Pappu in Oct. 2019: "so weird I realized this one random topic is history on!" [end of chat]);

- Ex. 47 at -618 (LaSala in Dec. 2020: "Jeff turned history on! . . . I should be careful now"); *see also* Exs. 4G & 4H (LaSala proposing "history off" chats for sensitive business discussions with trial witness Duke Dukellis months *after* new lit hold dates).

### D.     The Seriousness of Google's Spoliation Outweighs Any Timing Concerns

The seriousness of spoliation conduct can outweigh any concerns about purported delay.

*See Membreno*, 338 F.R.D. at 75-76; *Nat'l Fair Hous. All.*, 2023 WL 4669560, at *4; *Promier Prods.*, 2023 WL 11809987, at *8. This motion deals with Google's widespread, intentional destruction of relevant chat messages, involving at least 14 trial witnesses,[11] pursuant to Google's efforts to encourage such destruction. If this conduct does not constitute "serious" misconduct, it is hard to imagine what would.

### III.     Google's Prior Incomplete Disclosures to the United States About Its Chat Retention Policies Are Not a Defense

Google's prior, incomplete disclosures to the United States about its chat-retention policies show no lack of diligence and are not a defense. *See* Opp'n 5-7. It is the duty of Google

---

[11] Brad Bender, Vlad Sinaniyev, Scott Spencer, Jerry Dischler, Duke Dukellis, Nitish Korula, Aparna Pappu, Chris LaSala, Sissie Hsiao, Martin Pal, Bonita Stewart, Woojin Kim, Nirmal Jayaram, and George Levitte.

alone to comply with its preservation obligations. It cannot shift that duty to Plaintiffs or expect Plaintiffs to backstop Google's preservation failures. Because it was not Plaintiffs' responsibility to "object" or "request a change" to Google's policies, *id*. at 2, the existence or timing of such actions do not determine whether Google should be held accountable for its conduct.

Moreover, Google's representations to the United States about its retention of chats were incomplete and ambiguous rather than "transparent," "full[]," or "accurate[]," as Google claims. *Id*. at 2, 4-5. Google repeatedly reassured the United States that it was *preserving* chats rather than deleting them. Mot. 6. Its disclosures also omitted material information about Google's policies and the conduct of its employees, making those disclosures misleading at best. Namely, Google failed to disclose, among other things:

- "History off" chats (an undefined term) were automatically deleted after 24 hours;
- "History off" was the default chat setting, absent manual intervention;
- Google employees were asked to manually override this default on a chat-by-chat basis;
- Google conducted no oversight of whether employees were manually preserving chats;
- Google trained its employees to use "history-off" chats as preferable to email to discuss "sensitive" topics, so that such discissions would not be discoverable; and
- Google's in-house lawyers instructed employees to keep their chats "history off" so that they would be automatically deleted.

Plaintiffs had to discover that evidence for themselves, over Google's objections and obstruction.

Google's contention that "Plaintiffs waited . . . nearly five years" to file this motion, Opp'n 7, is inaccurate and misleading. First, sanctions derive from the Court's inherent authority and the Federal Rules, *see* Mot. 16, and therefore the United States was limited in its ability to seek sanctions during its pre-suit investigation even if it had known at that time about Google's spoliation, which it did not. Second, much of the evidence underlying this motion was not disclosed until discovery in this case in 2023, and some in 2024—including as recently as last

week. *See supra* p. 9. Third, Google dumped nearly two million new documents on Plaintiffs in September and October 2023, requiring Plaintiffs to review most of them after discovery closed and after most depositions had occurred. ECF No. 428 at 1. Among those new documents were 32 that Plaintiffs attached as exhibits to their motion.[12] Fourth, Google did not acknowledge until November 2023 that it had been destroying its employees' substantive chats. Mot. 11.

Google's contrary arguments fail to grapple with the factual record or Plaintiffs' basis for bringing this motion. Namely, Google incorrectly asserts that "[t]he sole basis for Plaintiffs' motion is the sufficiency of the process Google employed to preserve Chat messages." Opp'n 12. Not so. Plaintiffs' motion is also based on (1) Google's corporate culture—imposed through formal trainings like "Communicate with Care" and policies like the Walker Memo—of facilitating and encouraging destruction of "sensitive" chats to prevent them from being discoverable, (2) the intentional deletion of such chats by custodians and trial witnesses in this case as a natural consequence of that culture, and (3) Google's failure to issue timely litigation holds. *See, e.g.*, Mot. 1-3. Moreover, if this motion were only about "the sufficiency of [Google's] process," Google concedes that process was unreasonable. *See supra* Part I.

## IV.   Google Destroyed Chats with the Intent to Deprive Plaintiffs of Evidence

Google's conduct satisfies several indicia that courts use to infer an intent to deprive an adversary of evidence. *See* Mot. 24-26. Google built a system of policies and practices, starting with the Walker Memo in 2008, that facilitated and encouraged the suppression of relevant evidence to adversaries, including especially government enforcement agencies. *See id*. That system made it difficult for employees to comply with their preservation obligations and affirmatively encouraged them to communicate through "history off" chats, in violation of those

---

[12] *See* Exs. 4A/4II, 4B, 4C, 4D, 4E, 4G, 4I, 4J/4HH, 4K, 4L, 4M, 4N, 4O, 4P, 4Q, 4S/4GG, 4T, 4U, 4V, 4Y, 4Z, 4CC, 4DD, 4FF, 4JJ, 4LL, 4OO, 4QQ, 6, 7, 29, 34.

obligations. *See id*. at 7-9, 11-14, 24-26. And that "don't ask, don't tell" system worked as intended. Google employees, including document custodians and trial witnesses in this case, repeatedly chose to make their substantive chats subject to auto-deletion, sometimes writing that they were doing so to avoid the chats from being "discoverable." *See id*. at 8-9, 24-26.

Google's opposition fails to challenge much of that evidence and legal authority, including Plaintiffs' Appendix C, which catalogued dozens of examples of Google employees deciding to turn chat "history off," sometimes expressly to avoid chats being "discoverable." Google does not contest that it trained its employees to channel "sensitive" discussions to "history-off" chats that would be automatically deleted or that the reason for this training was to deprive litigation adversaries, including Plaintiffs, of discoverable evidence. *See* Ex. 48 at -188 (Google employee explaining why he avoids "discoverable medium[s]" for "especially sensitive" topics, including "competitive landscape (monopoly, crushing competition, etc.)" and instead uses "off-the-record chats" to avoid messages "ending up in court"). Google does not contest that several of its employees, some of them trial witnesses, followed that training by intentionally moving substantive discussions to automatically deleted chats. Google does not contest that it put the onus on its employees to override a default of auto-deletion, that doing so was difficult or impossible, or that employees often did not do so. And Google does not meaningfully dispute that the case law Plaintiffs cited supports an inference of intent to deprive in these circumstances. *See* Mot. 24-25. For example, Google does not contest that a "conscious dereliction of a known duty to preserve electronic data—whether passive or active" establishes intent, *GMS Indus.*, 2022 WL 853626, at *7, or that Plaintiffs' evidence clearly shows such dereliction. Nor does Google contest that "affirmative" actions or destruction of ESI "in violation of an internal policy" show intent, *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475-76 (E.D. Pa. 2020), or that

Plaintiffs' evidence likewise clearly establishes both kinds of conduct by Google employees.[13]

Rather than oppose the core of Plaintiffs' evidence and legal authority, Google makes three points, each of which fails to overcome the weight of evidence about intent.

*First*, Google contends that its issuance of legal holds, instructions to preserve relevant chats, and disclosures about "Chat retention processes" are "wholly inconsistent" with an intent to deprive. Opp'n 12. Although Google's inference from this conduct is not self-evident, this point ignores the weight of Google's contrary conduct and instructions. For example, while Google issued litigation holds and nominally instructed its employees to preserve chats, it *also* trained its employees to use history-off chats instead of email for "sensitive" discussions, and set "history off" by default, making it "impossible" to comply easily with Google's instructions.[14] *See Epic*, 664 F. Supp. 3d at 984, 988. And although Google disclosed some information to the United States, those disclosures were incomplete and misleading, as discussed *infra* p. 12. Thus, in context, Google's conduct is more consistent with an intent to deprive than otherwise.

*Second*, Google contends that the raw volume of chats and other ESI that it *did* manage to preserve and produce demonstrates that it had no intent to deprive Plaintiffs of evidence. Opp'n 12-14. In substance, Google suggests that because it did not destroy *all* chats, the Court should conclude that what Google did destroy was not done with an intent to deprive. That argument is unavailing for at least two reasons. First, Google did not train its employees to delete all chats; it trained them to delete "sensitive" chats so that they would not be "discovered by an adversary."

---

[13] The courts in *Bistrian* and *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022), did not find intent to deprive because they did not involve the kind of facts presented here. *See Bistrian*, 448 F. Supp. 3d at 476-77 (no affirmative conduct, no subjective awareness of litigation, "clear alternative explanation" of selective preservation); *Europe*, 592 F. Supp. 3d at 179 (no intentional destruction, no selective preservation, attempts to recover ESI).

[14] For these same reasons, it rings hollow for Google to point to the Walker Memo's statement to "make sure that [relevant] chats are 'on the record.'" Opp'n 13.

*See* Mot. 1, 4-5, 11-13. Therefore, Google's production of some chats is consistent with other evidence of intent. Second, "[c]ommon sense suggests that when a party preserves helpful or neutral information while deleting harmful information," that supports, rather than refutes, an intent to deprive. *Bistrian*, 448 F. Supp. 3d at 475-76.

*Third*, Google argues that Plaintiffs could have gathered more evidence of intent but did not. Opp'n 15. Specifically, it contends Plaintiffs could have asked more witnesses at deposition whether they complied with their preservation obligations, and it posits that the absence of any Google employee admitting under oath that they intended to deprive Plaintiffs of evidence is "telling." *Id*. Plaintiffs are unaware of any case involving this kind of smoking-gun evidence of intent—Google cites none—which is precisely why "courts look to circumstantial evidence to determine intent." *Bistrian*, 448 F. Supp. 3d at 475. Plaintiffs' evidence is more than sufficient to warrant an adverse inference. The possibility that even more evidence could have existed proves nothing, especially because Google's own discovery failures resulted in most of Google's documents being produced well after most Google witnesses were deposed.[15]

## V.    Plaintiffs Have Shown Prejudice from Google's Spoliation of Relevant Chats

As discussed *supra* pp. 4-5, Plaintiffs need not show prejudice to obtain an adverse inference, and therefore the Court need not reach the issue of prejudice to impose that sanction. Given Google's intent to deprive Plaintiffs of evidence, *see supra* Part IV, the "heavy burden" is on Google "to present clear and convincing evidence demonstrating that the spoliated material or documents were of minimal or little import." *Kolon Indus.*, 803 F. Supp. 2d at 499. Nevertheless, Plaintiffs have demonstrated that Google's destruction of years of relevant chats caused

---

[15] Google's claim that Plaintiffs had over 50 depositions to explore custodian intent, *see* Opp'n 20, is incorrect. Plaintiffs were permitted only ten Google employee depositions during litigation and had completed four of those before Google produced the majority of its chats.

prejudice because of the uniquely valuable nature of chats. *See* Mot. 27. Plaintiffs already have ample evidence to prove their claims at trial, but the destroyed chats would have meaningfully added to that already-robust body of proof. As the only written forum in which Google employees could "speak freely" about sensitive subjects, such as competition, Google's "history off" chats would be direct evidence of the true thoughts and intentions of employees best positioned to understand Google's conduct and its effects. *See* Ex. 49; Ex. 50 at -113; Ex. 48. To show prejudice, Plaintiffs need not "demonstrate with certainty the content of destroyed documents," but need only show "that the spoliated matter was likely to have been favorable to [their] case." *Kolon Indus*, 803 F. Supp. 2d at 498-99; *see also Butler v. Kroger Ltd. P'ship I*, 2020 WL 7483447, at *8 (E.D. Va. Nov. 30, 2020) (finding prejudice from deletion of video even though "determining what the video would have shown is entirely speculative" and "it might have offered nothing else of value"). Plaintiffs did so here. *See* Mot. 3-4, 27.

Google's three arguments against prejudice do not hold water. *First*, Google contends that Plaintiffs' argument about the unique value of chats is "mere speculation." Opp'n 17. That is incorrect. Plaintiffs cited substantial evidence from Google's own documents to support its argument about the unique value of chats. *See* Mot. 3-4, 27. That evidence, which Google does not address, elevates Plaintiffs' arguments well above "mere speculation."

*Second*, Google contends that the spoliated chats occurred after some of the Google conduct at issue in this case, such as Google's 2011 acquisition of AdMeld. Opp'n 17-19. This argument fails for two reasons. First, Google's spoliation coincided with much of the conduct at issue, including Google's *ongoing* anticompetitive ties between Google Ads (ad network) and AdX (ad exchange) and between AdX and DoubleClick for Publishers (publisher ad server). *See* Opp'n 18. Second, based on the day-to-day roles and responsibilities of the personnel involved in

those chats, it is reasonable to infer that, but for Google's spoliation, chats involving these individuals would have captured candid discussions of the ongoing *effects* of Google's prior conduct, sources of Google's dominance, and Google's ability to maintain its monopolies.

*Third*, Google contends Plaintiffs already have enough evidence of what Google employees think about the conduct at issue. Opp'n 19-21. However, that ample evidence of Google's liability survived Google's spoliation does not foreclose prejudice. Prejudice occurs if the spoliated evidence "was likely to have been favorable to [Plaintiffs'] case," *Kolon Indus.*, 803 F. Supp. 2d at 498, regardless of whether Plaintiffs needed the evidence. Plaintiffs agree with Google that there is significant evidence of Google's conduct. But the fact that Plaintiffs' case is already strong does not vitiate, suspend, or otherwise excuse Google's dereliction of duty.

## VI.    Evidence of Google's Larger Corporate Intent and Practices Is Probative

This is not the first time that Google's spoliation conduct has come before a federal court. The courts in *Epic* and *Search* have also reviewed evidence of the same companywide culture of shielding relevant evidence from discovery. Google does not dispute that those cases involved the same basic conduct, and Google identifies no "facts and circumstances" (other than the timing of Google's incomplete disclosures) to distinguish those cases from this one. Opp'n 25. For those reasons, the Court should give significant weight to those courts' prior factual findings based on the same spoliation conduct. *See* Mot. 7, 10, 14-15, 21, 23-25, 28.

Indeed, after Plaintiffs filed their opening brief, the *Search* court issued its ruling finding Google liable for violating Section 2 of the Sherman Act. *See* 2024 WL 3647498, at *3 ("Google is a monopolist, and it has acted as one to maintain its monopoly. It has violated Section 2 of the Sherman Act."). In doing so, the court indicated that it was "taken aback by the lengths to which Google goes to avoid creating a paper trail for regulators and litigants," concluding that "[i]t is no wonder then that this case has lacked the kind of nakedly anticompetitive communications

18

seen in" *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), "and other Section 2 cases." *Search*, 2024 WL 3647498, at *134. It further concluded that "Google clearly took to heart the lessons from these cases" by "train[ing] its employees, rather effectively, not to create 'bad' evidence." *Id*. Ultimately, the court declined to impose sanctions purely "because the sanctions Plaintiffs request do not move the needle on the court's assessment of Google's liability." *Id*. The court cautioned, however, that "[a]ny company that puts the onus on its employees to identify and preserve relevant evidence does so at its own peril," and that, although "Google avoided sanctions in this case," "[i]t may not be so lucky in the next one." *Id*.

Nor does due process bar the Court's consideration of evidence of the same conduct from other cases. *See* Opp'n 25-26. Google cites out-of-circuit cases applying the Supreme Court's decision in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). *Insurance Corp*. and the two cases Google cites to support its due process argument were decided under the pre-2007 amendment version of Rule 37(b), not Rule 37(e). *See Ins. Corp.*, 456 U.S. at 695 (deciding "whether [Rule 37(b)] is applicable to facts that form the basis for personal jurisdiction over a defendant"); *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006); *Gen. Ins. Co. of Am.* v. *E. Consol. Utils., Inc.*, 126 F.3d 215, 220 (3d Cir. 1997). That now-defunct version of a different rule, governing violations of discovery orders rather than spoliation, required that a sanction deeming certain facts as true needed to "be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp.*, 456 U.S. at 707. Rule 37(e) contains no similar requirement. But even if there were a requirement for a Rule 37(e) sanction to be "specifically related" to the misconduct, *see, e.g.*, *Serra*, 446 F.3d at 1152, that requirement is easily satisfied here because the sanctions Plaintiffs seek are connected directly to Google's spoliation conduct in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'

motion and sanction Google's spoliation of chats.

Dated: August 22, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
/s/ Matthew R. Huppert
MATTHEW R. HUPPERT
/s/ Katherine E. Clemons
KATHERINE E. CLEMONS

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Tyler T. Henry
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of Virginia and
local counsel for the States of Arizona, California,
Colorado, Connecticut, Illinois, Michigan,
Minnesota, Nebraska, New Hampshire, New
Jersey, New York, North Carolina, Rhode Island,
Tennessee, Washington, and West Virginia