# Exhibit 24

# Five Rules of Thumb

Words matter. Especially in antitrust law. Courts and regulators often focus on the intent behind a decision, and they typically determine that intent based on email, notes, and Post-it's. Exaggerations, sarcasm, and terms loaded with unintended legal meaning can create an issue, even where our intent was perfectly legitimate.

To help ensure that what we write accurately reflects our intent, here are a few quick guidelines:

**1. We're out to help users, not hurt competitors.**

**2. Our users should always be free to switch, and we don't lock anyone in.**

**3. We've got lots of competitors, so don't assume we control or dominate any market.**

**4. Don't try and define a market or estimate our market share.**

**5. Assume every document you generate, including email, will be seen by regulators.**

Here is some more background on why these lawyer cat rules exist:

**1. We're out to help users.** Focusing on our users and partners – how we're going to keep them happy and how we're going to get more folks to use us – is the best way to stay true to our intent. Don't focus on what impact we might have on our competition. We are not out to "crush," "kill," "hurt," "block" or do anything else that might be perceived as evil or unfair. (Microsoft famously got into trouble when one of their employees threatened to "cut off Netscape's air supply.") We operate in a competitive and dynamic marketplace, but our focus should always be on our users.

**2. Our users should always be free to switch.** It's a point of pride for us that we don't lock users in. Users choose our products and services because our products and services are great, not because we force or coerce them to. While we may integrate different products, don't use language that incorrectly suggests that we "bundle" or "tie" them together such that people have to take one product or service if they want to use another. We like consumer choice, and one aspect of consumer choice is that switching among products should be easy. Users can always drop us in favor of a competitor, and that's good – it forces us to keep innovating. Our goal is to make our products so helpful that people will want to use them – not to make them "sticky" in a way that makes it hard to switch. We don't "lock up" or "lock in" our users. Likewise, we don't "leverage" markets, products, or resources. Using the word "leverage" may make you sound like you went to business school, but it implies exploitation and an absence of consumer choice, which is not what we're about. Other phrases that have taken on special meanings in the world of antitrust are "network effect" and "scale effect." While lots of things become more useful as more people use them, these phrases carry an economic meaning that doesn't really apply to what we do.

**3. We've got lots of competitors.** Google competes with every company that lets users access information and every company that sells advertising. Think of Yahoo, Microsoft, Ask, Amazon, MapQuest, Facebook, Twitter, Apple, Kayak, just to name a few. And don't forget local competitors, like Baidu in China, Seznam in the Czech Republic and Yandex in Russia, each of which effectively compete with us for users in their respective countries. As we continue to expand beyond our core search business, we also compete with companies like Apple, Amazon, PayPal, Mozilla, and even traditional

HIGHLY CONFIDENTIAL

cable companies. The list goes on and on.  On top of the big names, there are lots of start-ups out there doing cool things. Don't exaggerate the barriers to their success, or be too confident that they'll require specific resources or technologies to compete with us. This is an unpredictable industry, and the folks working out of a garage today could become a force to be reckoned with tomorrow. We should be confident that users will choose our products and services based on their quality, but not so arrogant to assert that they have no alternatives to choose from. If you really need to list a group of competitors in a particular area, list as many as possible (or at least make clear that it's a partial list). It's just wrong to say that we're dominant in or control any line of business, or that we have "market power" – which, in the antitrust world, means that we can arbitrarily raise prices without losing customers.

**4. Don't define markets and estimate shares**. For lawyers and economists, "market" is a loaded concept based on whether changing the price for one thing would lead people to buy a different thing. Getting this right is tricky and is often the key question during antitrust litigation or regulatory review. For example, a field like advertising sweeps worldwide, and includes lots of different products and services.  Defining a "market" more narrowly, or even defining one at all, can create issues if economists aren't involved. There's no problem with referring to a "market segment," "sector," "business," etc., but just try and avoid defining the "market" for what we offer.  Similarly, estimating "market share" is complicated, and it implies a defined market, so guessing or approximating isn't very reliable.

**5. Assume every document will become public**. Assume that every document you generate, including email and chats, could be made public and scrutinized by our competitors and antitrust regulators.  We're often legally required to produce internal business records, including email and stuff that was intended for "internal use only." And we're pretty good at finding things, even if a person has deleted it. So please, be careful what you write, and don't write anything that could be misconstrued.

Got questions about whether a document may raise competition issues? Go to goto/competition for more information, email Competition Counsel (competition-questions@) or find one of us: Matthew Bye, Sara Walsh, Oliver Bethell, Renee DuPree (San Francisco) Michael Lawrence, Rosie Lipscomb (Mountain View), Kevin Yingling (Washington DC), Julia Holtz, Munesh Mahtani, Miguel Perez Guerra, Ella van den Brink (London), Auraellia Wang (Hong Kong), Tero Louko (Stockholm), or Jenny Coombes (Brussels). We're here to help!

HIGHLY CONFIDENTIAL