# Exhibit 30

Message

| | |
|---|---|
| **From:** | Sissie Hsiao [sissie@google.com] |
| **Sent:** | 6/5/2020 7:42:25 PM |
| **To:** | Mike Schulman [mschulman@google.com] |
| **CC:** | Ted Lazarus [tlazarus@google.com]; Vidhya Srinivasan [vids@google.com]; Jerry Dischler [jdischler@google.com] |
| **Subject:** | Re: Jason (Google) / Dave (TTD) |
| **Attachments:** | image001.png |

Privileged

I'm getting time yah. As well as Criteo. Will probe. You'll notice that a lot of what he sketched is in some ways similar to Anning...

I'll fwd Deepak the fdbk, don't believe he's seen it.


On Fri, Jun 5, 2020 at 12:35 PM Mike Schulman <mschulman@google.com> wrote:
PRIVILEGED

Thanks. You are talking to him soon right? One big question would be what regime of T&C, opt-in, etc would they be okay on. I worry the gulf will be large, but would be curious.

His critiques on Turtledove/floc are actually good ones. The KOF/Parentalism story on both is stronger than the user T&C as we know. Sissie, I'd be curious to push deepak and the turtledove folks to think about a federated learning similar audience thing. Sounds pipe dreamy, but has a really nice property for users. Has he seen this feedback?

thanks...


On Fri, Jun 5, 2020 at 3:14 PM Sissie Hsiao <sissie@google.com> wrote:
Privileged - Ted, please advise

Relevant to the other thread. TTD CTO essentially proposes the browser/deviceID.

---------- Forwarded message ---------
From: **Jason Spero** <jspero@google.com>
Date: Mon, Mar 16, 2020 at 10:23 AM
Subject: Fwd: Jason (Google) / Dave (TTD)
To: Anil Sabharwal <anilsa@google.com>
Cc: Dan Taylor <dantaylor@google.com>, Neha Khanna <nkhanna@google.com>, Sissie Hsiao <sissie@google.com>, Anthony Chavez <aschavez@google.com>

FYI on The Trade Desk pov on our API proposal. TLDR - they want a persistent ID. J

GOOG-DOJ-AT-01304250

---------- Forwarded message ---------
From: **Jason Spero** <jspero@google.com>
Date: Mon, Mar 16, 2020 at 10:21 AM
Subject: Fwd: Jason (Google) / Dave (TTD)
To: Dan Taylor <dantaylor@google.com>, Sam Temes <temes@google.com>, Sarah Gale
<sarahgale@google.com>, Neha Khanna <nkhanna@google.com>, Jennifer Schindler
<jschindler@google.com>, Chris LaSala <chrisl@google.com>


I did another call with Dave Pickles, CTO @ TTD. Below find his follow up email with pov on our privacy
proposals on GitHub. He noted that he will post their pov to Github as well. Below that find my note from the
call.

@Sam and all interested - Can we please get time to talk about dynamics around this? Thx. J


-------

Background:
I asked for the follow up call to understand how a deviceID type solution would work in the browser

Notes:

+ TTD proposes using device ID to build what consumers want. Sees as win for consumers + pubs +
advertisers. System that helps companies find new custs / share new ideas.

**TTD proposal**
+ Pass Device ID in browser. Consumer privacy / preferences attached by default. Optional way for consumer
to define PII - allow control.
+ DevID handling is like certs (ssl warnings), Likes SSL model.
+ Implement transparency framework. can interrogate every adtech co. they have to tell you what they are
doing.
+ Get rid of "weirdness" today - hard to manage at cookie level.

**I asked - how do you restrict?**
+ He feels IAB / NAI and Codes of Conduct handle. If you are not a member in good standing of IAB / NAI /
etc - you can't do business in this industry.
+ Feels code of conduct @ industry orgs (lawyers and tech) are smart ppl. They should debate sharing rules.
+ Feels stds orgs can change and police - new rules. preferences. if companies violate, they lose standing.
+ Pull SSL if violate. and for anyone that deals with them (??)

**I asked: Do you have reason to believe that industry orgs can be policing + punishing**
+ Suggesting punishment is warning in the browser. Avoid a czar who kills companies.
+ Pointed to FTC as enforcement.
+ Feels we haven't seen stds orgs governance because cookies rules too confusing. IDs are clear. have / dont
have permission. FTC can enforce.

But he went further...
+ Industry can design a software system. Ask customers what they want.
+ Could be parallel on email and spam.
+ Collect permissions + respect choices.

He then offered feedback on our GitHub proposals. I took notes but his email summarizes. J

GOOG-DOJ-AT-01304250-0001

---------- Forwarded message ---------
From: **Dave Pickles** <dave.pickles@thetradedesk.com>
Date: Thu, Mar 12, 2020 at 2:19 PM
Subject: RE: Jason (Google) / Dave (TTD)
To: Jason Spero <jspero@google.com>
Cc: Dave Pickles <dave.pickles@thetradedesk.com>


Hey Jason, thanks again for taking the time to talk this through. The following should capture the case I presented and includes some details on why the sandbox proposals are not workable. We plan to post these same comments (and more) to the Github sites for the projects to see if those teams can solve the problems. But in my option, these flaws are fundamental to their approaches.

# By way of premise

The highest purpose of search is to connect a consumer with the content they are looking for. Its most profitable purpose is to allow competitors to interfere with that connection.

The highest purpose of display and video advertising is to help companies find new customers, and to expose consumers to products and ideas that are new to them, that interest them, in a way that respects consumer privacy.

The next generation of identification tech should put the consumer first, while preserving the vital value exchange of the internet – relevant advertising that drives value for advertisers, revenue for publishers, and a better, privacy-safe and free experience for consumers.

# 3^(rd) party cookie replacement candidates

## Turtledove

1 - Supports the two most annoying and inefficient forms of advertising:

   "the shoes follow me around the internet"
And

   "broad targeted, low CPM, high repetition prospecting" – effectively replicating the user experience of cable TV on the internet

This is the opposite of what we should support. We should be trying to preserve sophisticated lookalike targeting, that leverages a brand's valuable first party data to find the next 100k users most likely to be interested in a product, show it to them with reasonable frequency, and pay a strong price. Lookalike modeling helps consumers discover new products, and it allows small brands to get traction and cut through the noise with the consumers that are likely to be interested in their new products.

GOOG-DOJ-AT-01304250-0002

2 - Budgeting and pacing don't work (can't work) on retargeting. If advertisers can't plan and predict what they can spend, they will simply spend less.

3 - Does little to improve the consumers ability to understand what's happening with their data - the proposed UX is all possible (and mostly exists now) with deviceId or 3rd party cookies ...

Without 3rd party cookies, we estimate publisher revenue falls by ~60% (Google research came up with 50%, we think its more like 70%). Turtledove can claw back perhaps half of that gap.

# FLOC

1 - Totally opaque and impossible for consumers to understand.

2 - Very difficult to support the needs of SMBs and the wide variety of niche/vertical advertisers.

3 - Unsupervised learning has never been shown to drive good advertising results.

4 - Impossible for adtech companies to innovate and optimize.

5 - All solutions that are workable (e.g. a focus on advertiser-driven differential privacy rather than unsupervised learning) require a server-side component to work correctly. You can't have a browser that requires a server-side component to operate at its most basic level.

Could actually work for demographic, but that's about it.

## A note on measurement in privacy sandbox

None of the privacy sandbox proposals so far support brand lift attribution, or any causal analysis. If advertisers can't measure, they'll move budget to where they can. Google's research paper that shows pub revenue falling in half without cookies ignores the concept of "CPA blend", where lower-performing strategies are effectively "funded" by the highest performing strategies a brand uses to achieve an overall blended result. That means the reality is meaningfully worse than the paper predicts.

The reason retargeting and high-frequency bombardment have become so prevelent in the first place is because of last-touch attribution models, where retargeting at high frequency allows a vendor to "take credit" for conversions that were going to happen anyway, and ignores arguably more meaningful brand and advertising programs that led to that point. Supporting causal analysis leads to improved consumer UX.

## The case for deviceId

All of the experiences and practices that consumers find annoying, and that regulators find troubling,  only exist because there's currently no direct way to implement the optimal solution. With a few upgrades, a DeviceId solution can do exactly that.

GOOG-DOJ-AT-01304250-0003

The common refrain against passing a deviceId, is that we have to trust companies (website owners, adtech) to "do the right thing" and/or abide by the law. I believe that's a reasonable position for the vast majority of companies. It is currently not possible to win any significant amount of business without being an IAB+DAA+NAI+IABE member. And through the NAI Opt Out and Privacy Choices programs we made as much progress as we could without the engagement of the platforms. Now with the platforms engaged, we can build something much better. Regulation can work.

The design of a new paradigm in Chrome should be centered around Transparency, Choice, and Control. DeviceID can be deployed so that the consumer has control, and has a very clear view about what's happening with their deviceID.

It's much less clear to the consumer what is happening in the various sandbox proposals. And that won't solve the problem that regulators have encountered – they have struggled to regulate because the cookie world is confusing.

When we create a clear way to express consumer choices, with reasonable defaults, it is possible for regulators to understand what's happening and indefensible for companies to take action that doesn't honor that preference.

In this world it is also simple for publishers to *ask* for a preference change so they can monetize effectively. The email/spam lesson is a great analogy: everyone was upset because they kept getting email, didn't know why, and couldn't control it. We built controls, set clear and standardized expectations, and created regulation. Companies started asking for permission to market by email, defaulted to "yes", but easy to say "no". It worked there and it will work here.

The most basic form of this proposal is:

- Pass OS level deviceId in browser so you have one experience on the phone. Replicate that experience in the desktop browser.

- Consumer privacy preferences are attached to the deviceId by default. A way to supply anonymized PII that preferences are attached to, so you have a consistent experience across your devices, should be optional.

- Make deviceId handling like SSL certs – if you're not certified, there's a warning.

- Implement the transparency framework that Chrome already announced. The owner of a deviceId or anonymized PII has a standardized way to interrogate all of the companies that have their data. Companies have to register, again just like SSL, so the list of possible data destinations is known.

- Companies can transact amongst each other using the deviceId without technical friction as long as they have permission in the user's preference settings.

The registration/membership/compliance piece should be as light weight and simple as possible. Domain owner responds to calls from the transparency framework and adheres to the code of conduct. Otherwise warnings get popped up when you access the domain (like SSL cert problems). The purpose is to inform a consumer that their preferences might not be honored, there's no domain blocking or heavy handed "policing".

With this solution we create transparency, choice, control, technical efficiency, and limited disruption to the parts of the ecosystem users love: low friction e-commerce, lower ad load through strong CPMs, and easy access to free content and services alongside a choice to pay for an ad-free version of those services.

CONFIDENTIAL

**Dave Pickles** CTO & Founder
dave.pickles@thetradedesk.com
@TheTradeDesk // Facebook // LinkedIn // TheTradeDesk.com

## ⟨⟩ theTradeDesk

-----Original Appointment-----
**From:** Bekkie Macartney **On Behalf Of** Dave Pickles
**Sent:** Friday, February 28, 2020 9:57 AM
**To:** Dave Pickles; Jason Spero
**Cc:** Kena Peay
**Subject:** Jason (Google) / Dave (TTD)
**When:** Thursday, March 12, 2020 9:30 AM-10:00 AM (UTC-08:00) Pacific Time (US & Canada).
**Where:** https://thetradedesk.zoom.us/j/141363227


Setting the date/time for Jason and Dave to discuss deviceID travelling, etc.

Please feel free to reach out to me with any scheduling issues.

Thanks!


**Bekkie Macartney, Executive Assistant**

**To: Dave Pickles – CTO & Founder, Zak Stengel – SVP Engineering, Gruia Pitigoi-Aron – VP, Product**

bekkie.macartney@thetradedesk.com

US: 101 S. Chestnut St., Ventura, CA 93001

Mobile: +1 818 489 0058

---

https://thetradedesk.zoom.us/j/141363227


Or mobile one-tap :
US: +16699006833;141363227# or +16465588656,,141363227#
Or Telephone:
Dial(for higher quality, dial a number based on your current location) :
US: +1 669 900 6833 or +1 646 558 8656 or 877 853 5257 (Toll Free)
Meeting ID: 141 363 227

CONFIDENTIAL

--

- **Jason Spero**
- Vice President
  Google, Inc.
- **jspero@google.com**
  650.253.1859

--

- **Jason Spero**
- Vice President
  Google, Inc.
- **jspero@google.com**
  650.253.1859

CONFIDENTIAL