**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

---

UNITED STATES OF AMERICA, et al.,

             Plaintiff,

    v.

GOOGLE LLC,

             Defendant.

No. 1:23-cv-00108-LMB-JFA

---

**NON-PARTY CHRISTOPHER LASALA'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' TRIAL SUBPOENA
AND MOTION FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT .................................................................................................................................... 5

I.      LEGAL STANDARD.......................................................................................................... 5

II.     THE SUBPOENA MUST BE QUASHED BECAUSE IT WAS ISSUED
        WITHOUT COURT PERMISSION, PROPER APPLICATION, OR CAUSE
        SHOWN .................................................................................................................................. 6

III.    ENFORCING THE SUBPOENA WOULD IMPOSE AN UNDUE BURDEN.............. 11

IV.     THE COURT SHOULD ENTER A PROTECTIVE UNDER RULE 26(C) ................... 16

CONCLUSION................................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
 No. 15 Civ. 478 (RGD), 2017 WL 11455319 (E.D. Va. Apr. 13, 2017) ........................ 10, 11

*Burlington N. & Santa Fe Ry. Co. v. White,*
 548 U.S. 53 (2006) ......................................................................................................... 8

*Chestnut v. Kincaid,*
 No. 20 Civ. 2342 (LKG), 2022 WL 358170 (D. Md. Feb. 7, 2022) .................................... 12

*Cook v. Howard,*
 484 F. App'x 805 (4th Cir. 2012) ......................................................................................... 15

*Expansion Cap. Grp., LLC v. Patterson,*
 No. 18 Civ. 04135 (RAL), 2020 WL 42786 (D. Del. Jan. 3, 2020) ...................................... 11

*First Nat'l Bank of Princeton v. Cincinnati Ins.,*
 178 F.3d 943 (7th Cir. 1999) ................................................................................................. 8

*Gilliam v. Bertie Cnty. Bd. of Educ.,*
 No. 20 Civ. 00016 (RTN), 2022 WL 6251966 (E.D.N.C. Oct. 7, 2022) ............................... 13

*Hibbs v. Winn,*
 542 U.S. 88 (2004) ................................................................................................................. 8

*In re Adair,*
 965 F.2d 777 (9th Cir. 1992) ................................................................................................. 10

*In re Amended Subpoena to Testify at a Deposition in a Civ. Action,* No. 22 Civ. 1308
 (LPA), 2024 WL 3400397 (M.D.N.C. July 12, 2024) ........................................................... 14

*In re Federal-Mogul Glob. Inc.,*
 684 F.3d 355 (3d Cir. 2012) ................................................................................................... 8

*In re Polyester Staple Antitrust Litig.,*
 No. 03 Civ. 1516 (RV), 2007 WL 1232223 (W.D.N.C. Apr. 25, 2007) ................................ 16

*In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.,*
 No. 16 Misc. 1 (REP), 2016 WL 1071016 (E.D. Va. Mar. 17, 2016) ................................... 16

*In re Sulfuric Acid Antitrust Litig.,*
 230 F.R.D. 527 (N.D. Ill. 2005) ............................................................................................ 15

*Lara-Aguilar v. Sessions*,
   889 F.3d 134 (4th Cir. 2018) ................................................................. 8

*Maxtena, Inc. v. Marks*,
   289 F.R.D. 427 (D. Md. 2012) ............................................................. 14

*Morton v. Mancari*,
   417 U.S. 535 (1974) ........................................................................... 11

*People for Ethical Treatment of Animals, Inc. v. Vital Farms, Inc*., No. 22 Misc. 0024
   (EWH) (RJK), 2023 WL 5506028 (E.D. Va. Aug. 14, 2023) ............................... 12

*Tatman v. Collins*,
   938 F.2d 509 (4th Cir. 1991) ............................................................... 10

*United States v. Anthem, Inc.*,
   No. 16 Civ. 1493 (ABJ), 2016 WL 11164033 (D.D.C. Dec. 7, 2016) .................... 8

*United States v. First Data*,
   287 F. Supp. 2d 69 (D.D.C. 2003) ......................................................... 8

*Va. Dep't of Corr. v. Jordan*,
   921 F.3d 180 (4th Cir. 2019) .......................................... 12, 13, 14, 15

*Wagner v. Simpson Performance Prod., Inc.*,
   No. 18 Civ. 00123 (KDB) (DCK), 2021 WL 724608 (W.D.N.C. Feb. 24, 2021) ............... 7, 8

## **Statutes**

15 U.S.C. § 23 ............................................................................... passim

28 U.S.C. § 2072(b) ......................................................................... 11

31 U.S.C. § 3731(a) ......................................................................... 8

## **Rules**

Fed. R. Civ. P. 26(c) ................................................................. 1, 5, 16, 17

Fed. R. Civ. P. 30(d)(1)................................................................. 15

Fed. R. Civ. P. 32(a)(4).................................................................. 10

Fed. R. Civ. P. 45(c)-(d) ........................................................... passim

**<u>Other Authorities</u>**

9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed. 2024) . 10, 12, 13

2B Sutherland Statutes and Statutory Construction § 51.2 ........................................................... 9

Nonparty Christopher LaSala, through counsel, moves under Federal Rule of Procedure 45(d)(3) for an order quashing Plaintiffs' subpoena for testimony at trial beginning on September 9, 2024—attached, along with Plaintiffs' counsel's cover letter, as Exhibit A (the "Subpoena")—and for a protective order under Federal Rule of Civil Procedure 26(c).  Pursuant to Local Rule 7(E), we have conferred with counsel for Plaintiffs in an effort to resolve the motions without court action, and they object to the motions.

## PRELIMINARY STATEMENT

The challenged subpoena is improper under the Clayton Act and misuses the subpoena power by imposing unnecessary costs and burdens on a non-party witness who has already voluntarily contributed more than fifty hours of his valuable time on this case, including over thirty hours of deposition testimony during the course of four full days of examination under oath.  Christopher LaSala is a former Google employee who now teaches full-time at Columbia Business School and resides in Connecticut.  He has already gone above and beyond what is expected of him as a nonparty witness with no dog in this fight.  Plaintiffs have had every opportunity to question him about the relevant topics and contemporaneous emails—which in any event speak for themselves and about which he has very little independent recollection.  Any and all of Mr. LaSala's thirty-hours of deposition testimony—all of which was transcribed and nearly all of which was video recorded—can be admitted into evidence and played (or simply reviewed by the Court) at the upcoming bench trial.

Notwithstanding the availability of Mr. LaSala's recorded and admissible testimony, and just one month before trial is scheduled to begin, Plaintiffs served Mr. LaSala with the Subpoena demanding his in-person testimony at trial.  The Subpoena must be quashed for the following reasons.

1

First, the Subpoena fails to meet the prerequisites for nationwide service under the Clayton Act, namely, permission by the Court upon proper application with cause shown. 15 U.S.C. § 23. Prior to issuing the Subpoena, Plaintiffs proffered no good cause for Mr. LaSala's live testimony whatsoever. And there is none, especially in light of Plaintiffs' ability to make use of Mr. LaSala's deposition testimony.

Second, the Subpoena imposes an undue burden on Mr. LaSala, who will begin teaching a full courseload in September, just as the trial is scheduled to begin. Compliance would impair Mr. LaSala's ability to prepare for and teach his courses, evaluate and provide feedback to his students, and hold office hours. In addition to burdening his own professional, personal, and family obligations, compliance with the Subpoena would also deprive Columbia Business School and the 160 students enrolled in his courses of his valuable time and energy. The burden is multiplied when considered in light of the four days of deposition testimony that Mr. LaSala has already provided and the availability of those recordings for trial.

## BACKGROUND

Mr. LaSala is a non-party former Google employee who has not worked for the company for nearly three years. LaSala Aff. ¶¶ 1, 3.[1] He resides in Connecticut, approximately 300 miles from Alexandria, Virginia. *Id.* ¶ 2. Mr. LaSala is a full-time professor at Columbia Business School, where he teaches graduate-level courses for students seeking their Masters in Business Administration. *Id.* ¶ 4. The Fall 2024 semester is scheduled to begin on September 3, 2024, and approximately 160 students have enrolled in his three courses. *Id.* ¶ 7. He teaches two sections of "Product Management," an introductory lecture course teaching students about the

---

[1]    Mr. LaSala's affidavit ("LaSala Aff.") is attached as Exhibit B.

product development cycle.  *Id.* ¶ 5 & n.1.  He also teaches "Digital Product Management Lab," an experiential course teaching students to put product management practices to use through simulation.  *Id.* ¶ 6 & nn.2–3.  On the days he is not teaching in the classroom, he is preparing course material for the following week, holding office hours for his students, and providing feedback to his students in connection with their various projects.  *Id.* ¶ 8.  He expects attendance, preparation, and active participation from his students, and his students and the University expect the same of him.

Mr. LaSala also has upcoming commitments outside of the classroom.  He serves as the Elective Course Coordinator for Columbia Business School's Product Management program, and in that capacity is responsible for coordinating several adjunct professors in delivery of the product management course.  *Id.* ¶ 10.  Mr. LaSala will also be launching a new program at Columbia called "Product Executives in Residence" this fall, where experienced product leaders will guest lecture, mentor students, and aid in curriculum development.  *Id.* ¶ 11 & n.4.  Mr. LaSala also serves as a faculty advisor to a student-run technology club, on the faculty advisory board for the Columbia Business School Digital Future Initiative, and as a member of the Communications Committee for the Columbia Business School Marketing Division— responsibilities that, collectively, consume additional time and attention.  *Id.* ¶ 12.  And, independent of his faculty role at Columbia Business School, Mr. LaSala advises four companies.  *Id.* ¶ 13.  For two of these companies, equity contracts obligate him to invest time as an advisor.  *Id.*

Mr. LaSala's previous, voluntary involvement as a nonparty to this litigation has been extensive.  He has provided over thirty hours of deposition testimony over the course of four days, and spent an additional twenty hours or so preparing for them.  *Id.* ¶¶ 14–15.  He first

testified on October 20, 2020, remotely, for nine hours, from 10 a.m. to 7 p.m., after receiving a

Civil Investigative Demand.  *Id.* ¶ 16.  He testified again, in-person, over the course of two full

days, on August 16, 2023 (for ten hours, from 7 a.m. to 5 p.m.) and on August 17, 2023 (for

seven hours, from 7 a.m. to 2 p.m.), in connection with the multi-district litigation.  *Id.* ¶ 17.

And he testified yet again, in-person, for an additional six-and-a-half hours, on November 7,

2023 (from 9 a.m. to 3:30 p.m.), in connection with the instant litigation.  *Id.* ¶ 18.  The three

days of in-person testimony were all video recorded.[2]  *Id.* ¶ 19.  He was not compensated for any

of his time spent preparing for or attending these depositions.  *Id.* ¶ 20.

Throughout Mr. LaSala's four days of deposition testimony, he was completely honest

and forthcoming, and provided explanations about a wide range of topics, including but not

limited to definitions of various terms in the ad tech industry, and his understanding of Google's

suite of ad tech-related products and how various industry-wide bidding practices had evolved.

The deposition questioning was frequently repetitive and covered topics and technical details that

Mr. LaSala could not recall or, as he repeatedly made clear to Plaintiffs' counsel, were outside

the scope of his knowledge and role at Google.[3]

On August 13, 2024, through counsel, Mr. LaSala accepted service of the instant

Subpoena subject to and without waiving his objections.  The Subpoena commands Mr. LaSala

to appear at the United States Courthouse in Alexandria, Virginia, on September 9, 2024 at "9:00

a.m. and continuing day to day afterwards."  Ex. A.  In a cover letter accompanying the

Subpoena, counsel for Plaintiffs stated that "[t]he subpoena bears the placeholder date of the first

---

[2]    Contrary to the government's deposition designation chart suggesting otherwise, ECF
No. 895-1 at 70–71, the August 16, 2023 deposition was video recorded.  *See* LaSala Aff. ¶ 19.

[3]    At the Court's request, and considering the parties' privacy interests, Mr. LaSala is
prepared to provide specific examples of deposition testimony illustrating as much.

day of trial (September 9, 2024), but we will work with you to schedule the actual date for your client's testimony." *Id.*

## ARGUMENT

The Subpoena must be quashed because it is improper under the Clayton Act and Federal Rule of Civil Procedure 45. Either statute provides an independent basis to quash the Subpoena—and indeed, requires doing so. For similar reasons, the Court should enter a protective order under Federal Rule of Civil Procedure 26(c), to protect Mr. LaSala from future annoyance and harassment.

## I.   LEGAL STANDARD

Under Rule 45, a subpoena may command a person to attend a trial only as follows:

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>
>> (i) is a party or a party's officer; or
>>
>> (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1). If a subpoena requires a person to comply beyond these geographical limits, the court is required to quash the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii) ("On timely motion, the court for the district where compliance is required *must quash* or modify a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c) . . . ." (emphasis added)).

In addition, the Clayton Act provides for nationwide service in civil antitrust cases, but only if certain preconditions are established. 15 U.S.C. § 23 provides as follows:

> In any suit, action, or proceeding brought by or on behalf of the United States subpoenas for witnesses who are required to attend a court of the United States in any judicial district in any case, civil

> or criminal, arising under the antitrust laws may run into any other
> district: *Provided*, That in civil cases no writ of subpoena shall
> issue for witnesses living out of the district in which the court is
> held at a greater distance than one hundred miles from the place of
> holding the same without the permission of the trial court being
> first had upon proper application and cause shown.

In other words, Section 23 permits the issuance of subpoenas requiring witnesses to testify beyond the 100-mile boundary set in Rule 45(c), provided that a court permits such issuance "*upon proper application and cause shown*." *Id.* (emphasis added).

## II.     THE SUBPOENA MUST BE QUASHED BECAUSE IT WAS ISSUED WITHOUT COURT PERMISSION, PROPER APPLICATION, OR CAUSE SHOWN

The Subpoena is improper, and must be quashed, because it compels Mr. LaSala to attend a trial more than 100 miles from his home and employment, without court permission after "proper application and cause shown."  15 U.S.C. § 23.

On March 28, 2023, the parties proposed a joint discovery plan that, among other things, asserted the following:  "Pursuant to 15 U.S.C. § 23, the parties are permitted to issue nationwide discovery and trial subpoenas from this Court."  ECF No. 87 at § 6.D. ("Proposed Discovery Plan").  On March 30, 2023, the parties also submitted briefs in support of the joint Proposed Discovery Plan, but neither side's brief even referenced, let alone attempted to show cause, as to why nationwide service should be permitted.  ECF Nos. 89 (brief of Google), 92 (brief of Government).  A day later, on March 31, 2023, the Court issued a scheduling order, stating that the parties' discovery plan "is approved in part as set forth below and shall control discovery to the extent of its application unless further modified by the court."  ECF No. 94 at 1 ("Scheduling Order").  The Scheduling Order did not refer to the parties' proposal regarding nationwide service, let alone explicitly permit nationwide service of trial subpoenas or the issuance of any subpoena in particular.

6

As an initial matter, the Court's Scheduling Order is expressly limited to its contents, which do not grant the parties' requested permission for the issuance of nationwide subpoenas, and thus cannot serve as a valid basis upon which to serve them under Section 23.  It would be inappropriate for a party to grant itself permission to issue nationwide subpoenas where the Court did not grant that permission when it was requested.

More fundamentally, however, the Proposed Discovery Plan is not a "proper application" because it fails to proffer "cause," as required by Section 23.  While 15 U.S.C. § 23 does not define what "cause" is required, here, the parties provided none whatsoever.  The Proposed Discovery Plan does not set forth any reason for issuing nationwide subpoenas as a general matter, let alone a basis for issuing this Subpoena to Mr. LaSala in particular.  The Proposed Discovery Plan cannot, therefore, serve as a valid subpoena application under 15 U.S.C. § 23.

Nor can a party stipulation waive the necessity of a finding of cause under the circumstances.  While such stipulations are frequently used to confirm agreements between parties, they are ill-suited to issues implicating the rights of third-parties, like Section 23.  Indeed, the "cause" and prior application requirements in the Clayton Act exist precisely for the purpose of protecting the rights of nonparties.  Because a nationwide service order implicates the rights of third-parties, the requirements of Section 23 cannot be satisfied simply by virtue of the parties' consent.  For this reason, courts hold that when making a good cause determination involving a third-party, the district court may not "rubber stamp a stipulation." *Wagner v. Simpson Performance Prod., Inc.*, No. 18 Civ. 00123 (KDB) (DCK), 2021 WL 724608, at *4

(W.D.N.C. Feb. 24, 2021) (quoting *First Nat'l Bank of Princeton v. Cincinnati Ins.*, 178 F.3d

943, 945 (7th Cir. 1999)).[4]  Rather, a more searching inquiry is required.

 To endorse any other view would read the "cause" requirement out of the statute entirely

and contradict courts' "interpretive duty to give effect, whenever possible, to a statute's every

clause and word." *Lara-Aguilar v. Sessions*, 889 F.3d 134, 143 (4th Cir. 2018) (internal

quotation marks omitted); *see Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be

construed so that effect is given to all its provisions, so that no part will be inoperative or

superfluous, void or insignificant." (internal quotation marks omitted)).  That other federal

enactments providing for nationwide service, such as Section 3731(a) of the False Claims Act,

require no inquiry into the parties' need whatsoever heightens the obligation to give force to

Section 23's "cause" requirement here.  *See* 31 U.S.C. § 3731(a) ("A subp[o]ena requiring the

attendance of a witness at a trial or hearing conducted under section 3730 of this title may be

served at any place in the United States.").  In interpreting statutes, courts presume that

"Congress acts intentionally and purposely in the disparate inclusion or exclusion" of words in

statutory text—particularly where those provisions deal with similar subjects.  *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006); *see also In re Federal-Mogul Glob. Inc.*, 684

F.3d 355, 373 (3d Cir. 2012) ("[W]here the legislature has inserted a provision in only one of

two statutes that deal with closely related subject matter, it is reasonable to infer that the failure

---

[4] Where courts authorized subpoenas under 15 U.S.C. § 23, they did so without any
analysis whatsoever.  In any event, the applications in those cases are readily distinguishable.
*See, e.g.*, *Fed. Trade Comm'n v. Kroger Co.*, 24 Civ. 00347 (AN), ECF No. 88, at ¶ 26 (D. Or.
July 12, 2024) (authorizing nationwide service under 15 U.S.C. § 23, citing "geographic
dispersion of potential witnesses in this action"); *United States v. Anthem, Inc.*, No. 16 Civ. 1493
(ABJ), 2016 WL 11164033, at *2 n.1 (D.D.C. Dec. 7, 2016) (same); *United States v. First Data*,
287 F. Supp. 2d 69, 72 (D.D.C. 2003) (same).

to include that provision in the other statute was deliberate rather than inadvertent." (quoting 2B *Sutherland Statutes and Statutory Construction* § 51.2)).

Nor could the parties show cause for the subpoenaed testimony here.  Indeed, Plaintiffs' recent filings demonstrate how gratuitous Mr. LaSala's testimony would be.  According to Plaintiffs' own witness list, Mr. LaSala is not considered a crucial live witness.  Plaintiffs designated at least 17 witnesses as live witnesses, and an additional 41 witnesses as *either* live *or* by deposition.  Mr. LaSala was included only in the latter category.  ECF No. 896 at 3.  By designating Mr. LaSala as only a possible live witness, Plaintiffs have effectively conceded that Mr. LaSala's live testimony is not necessary to the effective presentation of their case.

In addition, throughout Plaintiffs' extensive Proposed Findings of Fact and Conclusions of Law (spanning 235 pages), ECF No. 1172, Mr. LaSala's name is mentioned just three times.  First, he is listed as a potential witness alongside twenty-eight other current and former Google employees.  *Id.* at 10–11.  Second, a line from his deposition testimony is listed in a string cite— along with citations to document exhibits and another former employee's testimony.  *Id.* at 50.  Finally, a line from his deposition testimony is cited for the relatively uncontroversial statement that "[y]ield managers better predicted the prices publishers could expect to receive from advertiser ad networks and other demand sources as compared to using average historical prices to order the sequence of the waterfall."  *Id.* at 66.  Live testimony from Mr. LaSala on this point is not needed.

Moreover, Plaintiffs' deposition designations also make clear that Mr. LaSala's testimony is not necessary.  The overwhelming majority of deposition designations relate to Mr. LaSala's qualifications and employment history at Google, *see, e.g.*, ECF No. 895-1 at 68 (numbered in descending order, designations 1–2, 9–17, 31), or defining industry terms or explaining the

development and functionality of certain Google products, *see, e.g.*, *id.* (same, designations 3–8, 18–21, 24–25, 27–30, 33–38, 42–46).  *See supra* note 3.  None of these subjects requires live testimony, and there are numerous other witnesses who could cover the same topics.[5]

Of course, even if any of Mr. LaSala's testimony is relevant, it can be easily admitted and played at trial.  Indeed, Federal Rule of Civil Procedure 32(a)(4) specifically contemplates the admission of deposition testimony "for any purpose" in exactly this scenario, where the "witness is more than 100 miles from the place of hearing or trial," and the Fourth Circuit has long-admitted deposition testimony at trial on that basis.  *See* Fed. R. Civ. P. 32(a)(4)(B); *Tatman v. Collins*, 938 F.2d 509, 511–12 (4th Cir. 1991) (reversing exclusion of deposition testimony because "the place of trial" for purposes of calculating 100 miles under Rule 32 is the specific courthouse, not the judicial district, governing the lawsuit).  Additional live testimony is entirely superfluous under the circumstances.  This is especially true in light of the fact that the trial will be a bench trial rather than heard by a jury.  Unlike a jury, the Court is uniquely positioned to read and synthesize abstract concepts from text, and review select portions of deposition questioning.  *Cf. In re Adair*, 965 F.2d 777, 779 (9th Cir. 1992) (use of written testimony "is an accepted and encouraged technique for shortening bench trials").  Nor does Mr. LaSala's testimony involve the sort of credibility determinations that make live testimony valuable.  *Cf. Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 15 Civ. 478 (RGD), 2017 WL 11455319, at

---

[5]     Moreover, to the extent Plaintiffs seek to elicit Mr. LaSala's expert opinions, the Subpoena is improper.  *See* Fed. R. Civ. P. 45(d)(3)(B)(ii) ("To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: . . . disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."); *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2463.1 (3d ed. 2024) ("Rule 45(d)(3)(B) identifies circumstances in which a subpoena should be quashed" including "when a subpoena requires . . . requires the disclosure of an unretained expert's opinion.").

*2 (E.D. Va. Apr. 13, 2017) (denying motion to quash trial subpoena where subject's "specific intent" was implicated by case and, therefore, "issues of [his] credibility may also be implicated").  In fact, given the passage of time, the deposition videos and transcript will be more helpful to the Court than Mr. LaSala's live testimony.  Mr. LaSala was deposed in 2020 and 2023 about events that occurred several years ago.  He remembered little about these materials by the time of his deposition in 2023, and remembers still less now—nearly a year later, and nearly three years after he last worked at Google.  *See supra* note 3.

Under the circumstances and in light of the available deposition recordings, there is no good cause—and certainly no good cause shown—to compel Mr. LaSala's live testimony, the Clayton Act's nationwide service provision does not apply, and Rule 45(c)'s geographic limitation controls.  Accordingly, because the Subpoena is improper under the Clayton Act and would require Mr. LaSala's compliance beyond the 100-mile geographic limitation specified in Rule 45(c), it must be quashed.  *Cf. Expansion Cap. Grp., LLC v. Patterson*, No. 18 Civ. 04135 (RAL), 2020 WL 42786, at *2–3 (D. Del. Jan. 3, 2020) (quashing deposition subpoena seeking non-party's testimony where non-party did not reside or work within 100 miles of deposition location).

### III.   ENFORCING THE SUBPOENA WOULD IMPOSE AN UNDUE BURDEN

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) independently requires the Court to quash or modify a subpoena that "subjects a person to undue burden."[6]  Undue burden "usually

---

[6]      The Clayton Act and the Federal Rules of Civil Procedure should be read as complementing, not conflicting.  *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").  Rule 45's requirement that courts "*must* quash or modify a subpoena that . . . subjects a person to undue burden" does not conflict with the Clayton Act and therefore still applies.  Fed. R. Civ. P. 45(d)(3)(A)(iv); *cf.* 28 U.S.C. § 2072(b).

raises a question of the reasonableness of the subpoena," which "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it."  9A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 2463.1 (3d ed. 2024).

For the proportionality analysis under Rule 45 "the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient."  *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).  However, because "[n]onparties are strangers to the litigation, and since they have no dog in the fight," courts should not draw them "into the parties' dispute without some good reason."  *Id.* (internal quotation marks and alterations omitted).  Thus, where a subpoena seeks to compel a non-party's testimony, "[a] more demanding variant of the proportionality analysis . . . applies when determining whether, under Rule 45, a subpoena . . . 'subjects a person to undue burden' and must be quashed or modified," and "courts must give the recipients' nonparty status special weight."  *Id*. (internal quotation marks omitted); *People for Ethical Treatment of Animals, Inc. v. Vital Farms, Inc*., No. 22 Misc. 0024 (EWH) (RJK), 2023 WL 5506028, at *3 (E.D. Va. Aug. 14, 2023) (affirming application of "more demanding" proportionality analysis where deposition subpoena directed at a non-party); *Chestnut v. Kincaid*, No. 20 Civ. 2342 (LKG), 2022 WL 358170, at *2 (D. Md. Feb. 7, 2022) (quashing subpoena as unduly burdensome, "specifically when considering the more demanding analysis applicable for a non-party witness.").  Although the moving party bears the burden of entitlement to relief, they are "not terribly difficult burdens to meet if the requesting party cannot articulate its need for the information and address obvious alternative sources."  *Jordan*, 921 F.3d at 189 n.2.

The Fourth Circuit provides a list of considerations when weighing a subpoena's benefits and burdens.  *Id*. at 189–90.  It instructs courts to consider "not just the relevance of information sought, but the requesting party's need for it."  *Id*. at 189.  "The information sought must likely (not just theoretically) have marginal benefit in litigating important issues."  *Id*.  Courts are instructed to also consider "what information is available to the requesting party from other sources."  *Id*.  "To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs."  *Id.*

With respect to burdens on non-parties, courts should consider the economic cost as well as any other privacy or confidentiality interests.  *Id*.  In addition, courts may also consider the interests of "others who might be affected" by the subpoena.  *Id*. at 190 ("For example, if a subpoena seeks information from a business about its customers, it may implicate the business's interest in protecting competitively sensitive information, as well as the customers' interest in protecting their privacy.").[7]

As explained above, Plaintiffs have not articulated any need for additional live testimony from Mr. LaSala.  Nor have they shown that further testimony from Mr. LaSala "likely (not just theoretically) ha[s] marginal benefit in litigating important issues."  *Id.* at 189 ("We mean 'marginal' in the economic sense that the information must offer some value over and above what the requesting party already has, not in the sense that a mere *de minimis* benefit will

---

[7]     While the Fourth Circuit considered these factors in the context of discovery subpoenas, the same analysis applies to subpoenas for trial testimony.  *See Gilliam v. Bertie Cnty. Bd. of Educ*., No. 20 Civ. 00016 (RTN), 2022 WL 6251966, at *2 n.2 (E.D.N.C. Oct. 7, 2022) (concluding that the *Jordan* analysis "is the same" with respect to trial subpoenas); *see also* 9A Wright & Miller, Federal Practice and Procedure § 2455 ("The protections provided by Rule 45(d) for witnesses subject to subpoenas have today for the most part been generalized to apply to both subpoenas ad testificandum and duces tecum, whether they pertain to a deposition, hearing, or trial.").

suffice.").  To the contrary, by designating Mr. LaSala's testimony as *either* live *or* by deposition, Plaintiffs have effectively conceded that his additional live testimony is not necessary.  *See* ECF No. 896 at 3.

Plaintiffs also have not shown—as they must—that that other witnesses, or Mr. LaSala's extensive deposition testimony, would not provide the same or comparable trial evidence. *Jordan*, 921 F.3d at 189 ("[T]he requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena.").  Indeed, courts in this Circuit have repeatedly quashed subpoenas as unduly burdensome where they sought testimony available from an alternative source.  *See, e.g.*, *In re Amended Subpoena to Testify at a Deposition in a Civ. Action*, No. 22 Civ. 1308 (LPA), 2024 WL 3400397, at *5 (M.D.N.C. July 12, 2024) (quashing deposition subpoena as burdensome where, among other reasons, requesting party "has to yet to articulate why it cannot obtain the information it needs from [the recipient's] document production" (alterations omitted)); *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439, 441 (D. Md. 2012) (same, where most pertinent information as to one non-party could be gleaned from documents already in requesting party's possession and, as to another non-party, where requesting party "fails to show that the information he seeks . . . is not available from any other source").

On the other side of the ledger, the burden on Mr. LaSala is great—particularly given the more demanding proportionality standard applied to non-party subpoenas.  *See Jordan*, 921 F.3d at 189.  Mr. LaSala is a full-time professor at Columbia Business School responsible for teaching a full courseload to approximately 160 students across three classes, coordinating the Program Management faculty's course materials, launching an entirely new programmatic effort by

Columbia, and serving in numerous advisory positions to students, faculty, the Columbia

Business School administration, as well as for four independent companies.  Requiring him to

appear for live testimony would require significant time and expense.  Not only would he have to

travel from Connecticut to Virginia and back, but such time and travel—on top of however long

his testimony would last—would deprive his students, colleagues, employer, and family of his

valuable time and contributions.  *See id.* at 190 ("Courts may consider the interests of the

recipient of the subpoena, as well as others who might be affected.").

       This burden is particularly excessive in light of the significant uncompensated time and

effort Mr. LaSala has already contributed to this case voluntarily.  *See Cook v. Howard*, 484 F.

App'x 805, 812 n.7 (4th Cir. 2012) (concept of "burden" under Rule 45 "encompasses situations

. . . that would require a non-party to incur excessive expenditure of time or money").  Mr.

LaSala has already been subjected to more depositions than usually required for a nonparty—the

equivalent of nearly a full week's worth of testimony.  *See* ECF No. 87 at § 6.H ("Each

deposition of a party, non-party, or expert witness will be limited to one seven-hour day of actual

testimony, unless extended by agreement of the parties and the witness, or order of the Court.");

*cf.* Fed. R. Civ. P. 30(d)(1) (presumptive deposition length is seven hours); *cf. In re Sulfuric Acid*

*Antitrust Litig.*, 230 F.R.D. 527, 532 (N.D. Ill. 2005) (additional deposition of witness already

deposed for nearly 17 hours in antitrust action, for purpose of obtaining witness's help in

deciphering notes furnished before first deposition, unwarranted).  As the Court noted at one

pretrial conference: "Frankly, I think there have been more depositions taken in this case than we

would normally allow."  ECF No. 59 (transcript of March 10, 2023 conference) at 22.  To

require Mr. LaSala to appear and answer questions about issues that have already been covered

by the previous days of deposition would be unfairly onerous.  *See In re Polyester Staple*

*Antitrust Litig.*, No. 03 Civ. 1516 (RV), 2007 WL 1232223, at *2 (W.D.N.C. Apr. 25, 2007) ("Directing [the witness] to appear and submit to examination once more, for the sole purpose of allowing [defendants] to inquire about a topic that has already been fully exhausted, would amount to undue burden.").

## IV.     THE COURT SHOULD ENTER A PROTECTIVE UNDER RULE 26(C)

The Court should enter a protective order under Rule 26(c) to protect Mr. LaSala from continued "annoyance, embarrassment, oppression, undue burden or expense." Fed. R. Civ. P. 26(c)(1). For the reasons detailed above, and because the Subpoena imposes an undue burden and seeks information that could be obtained more easily from another source, a protective order is appropriate here. *See, e.g.*, *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. 16 Misc. 1 (REP), 2016 WL 1071016, at *9 (E.D. Va. Mar. 17, 2016) (entering protective order as to non-party, where subpoena imposed undue burden).

## CONCLUSION

For the foregoing reasons, the Court should grant nonparty witness LaSala's motion to quash the Subpoena and enter a protective order under Rule 26(c).

Dated: August 23, 2024

Respectfully submitted

*/s/ Andrew George*

Andrew T. George (Va. Bar No. 88389)
BOURELLY, GEORGE + BRODEY PLLC
1050 30th Street, NW
Washington, DC 20007
Tel.: 202-341-8805
Fax: 703-465-8104
andrew.george@bgblawyers.com

*/s/ Michael Tremonte*

Michael Tremonte (*pro hac vice* pending)
Anna Estevao (*pro hac vice* pending)
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, NY 10004
Tel: 212.202.2600
Fax: 212.202.4156
mtremonte@shertremonte.com

*Counsel for Nonparty Christopher LaSala*