# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TECSEC, INC.,                               )
                                            )
                    Plaintiff,              )
                                            )   Case No. 1:10-cv-115-LO/TCB
v.                                          )
                                            )
INTERNATIONAL BUSINESS                      )
MACHINES CORPORATION, et al.,               )
                                            )
                    Defendants.             )
_____         )

**TECSEC, INC.'S OPPOSITION TO ADOBE'S OMNIBUS MOTION *IN LIMINE***

# TABLE OF CONTENTS

I.     MIL #1: The Court Should Not Allow Adobe to Rely Upon Court Decisions That Have Been Reversed ...................................................................................................................1

II.    MIL #2: The Court Should Not Preclude TecSec From Introducing Evidence Regarding Its Agreements With Third Parties Related To The Patents-In-Suit .................5

III.   MIL #3: The Court Should Not Preclude TecSec From Presenting Argument, Evidence Or Testimony Regarding Damages Based On Direct Infringement By Adobe ..........................................................................................................................................7

IV.   MIL #4: The Court Should Not Preclude TecSec From Presenting Argument, Evidence, Or Testimony Regarding Adobe's Lack Of Opinion Of Counsel ....................9

V.    MIL #5: The Court Should Not Preclude TecSec From Presenting Argument, Evidence, Or Testimony Regarding Secondary Considerations ........................................11

VI.   MIL #6: The Court Should Not Preclude TecSec From Referencing Pre-Suit Damages During Opening ...........................................................................................................15

VII.  MIL #7:  The Court Should Not Preclude TecSec From Rebutting Improper Arguments That ▮▮▮▮▮ Products Practice The DCOM Patents ...............................16

VIII. MIL #8: The Court Should Not Preclude TecSec From Presenting Testimony From Witnesses Disclosed During Discovery ...............................................................................17

      A.     Adobe Has No Valid Ground For Its Requests Concerning The Two Former Adobe Employees ................................................................................................18

      B.     Adobe Has No Justification For Seeking To Preclude Testimony From TecSec's Chief Financial Officer.................................................................................20

      C.     Adobe Has No Valid Ground For Seeking To Exclude Testimony Provided By Its Own Director of Finance ...............................................................................21

IX.   MIL #9: The Court Should Not Preclude TecSec From Presenting Evidence On The Value Of The Accused Features of Acrobat ...............................................................23

X.    MIL #10: The Court Should Not Preclude TecSec From Referencing Metrics Relevant To Damages ...................................................................................................................25

XI.   MIL #11: The Court Should Not Preclude TecSec From Offering Argument, Evidence, Or Testimony On Adobe's Specific Intent To Induce Or Willfully Infringe Based On Conduct After Patent Expiration ..........................................................26

XII.  Conclusion ...................................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Electronics Co. Ltd.*,
No. 11-cv-1846, slip. op. (Dkt. No. 1267) (N.D. Cal. July 19, 2012) ..................................... 1

*Arctic Cat Inc. v. Bombardier Recreations Prods.*,
876 F.3d 1350 (Fed. Cir. 2017) ................................................................................. 17

*Audio MPEG, Inc. v. Dell, Inc.*,
No. 2:15CV73, 2017 WL 4460759 (E.D. Va. Oct. 6, 2017) .......................................... 28

*AVM Techs. LLC v. Intel Corp.*,
CV 15-33-RGA, 2017 WL 2938191 (D. Del. Apr. 19, 2017) ....................................... 6

*Broadcom Corp. v. Qualcomm, Inc.*,
543 F.3d 683 (Fed. Cir. 2008) ................................................................................. 10

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*,
229 F.3d 1120 (Fed. Cir. 2000) ............................................................................... 13

*Carnegie Mellon Univ. v. Marvell Tech. Grp.*,
906 F. Supp. 2d 399 (W.D. Pa. 2012) ....................................................................... 17

*Cellular Commc'ns Equip. LLC v. Apple Inc.*,
No. 14-cv-00251, 2016 WL 1146010 (E.D. Tex. Sept. 2, 2016) .................................. 25

*Chaffin v. Braden*,
No. 14-cv-00027, 2018 WL 1794766 (S.D. Tex. Apr. 16, 2018) ................................. 4

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) ............................................................................... 13

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
424 F.3d 1168 (Fed. Cir. 2005) ................................................................................. 3

*Digital Reg. of Tex., LLC v. Adobe Sys., Inc.*,
No. 12-cv-1971, 2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) ........................... 20, 26

*Disney Enters., Inc. v. Kappos*,
923 F. Supp. 2d 788 (E.D. Va. 2013) ......................................................................... 9

*ePlus, Inc. v. Lawson Software, Inc.*,
764 F. Supp. 2d 807 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012) ............. 6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
13-CV-03999-BLF, 2015 WL 4129193 (N.D. Cal. July 8, 2015) .............................. 7

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
No. 12-cv-04967-WHO, 2014 WL 4272771 (N.D. Cal. Aug. 28, 2014) ................................1

*Geo M. Martin Co. v. Alliance Machine Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010)....................................................................................................5

*Georgetown Rail Equip. Co. v. Holland L.P.*,
No. 13-cv-00366, 2014 WL 6467782 (E.D. Tex. Nov. 17, 2014)...........................................11

*Global–Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011)................................................................................................................10

*Graham v. John Deere Co. of Kansas City*,
86 S. Ct. 684 (1966)....................................................................................................................12

*In re Huai–Hung Kao*,
639 F.3d 1057 (Fed. Cir. 2011).............................................................................................12, 13

*I/P Engine, Inc. v. AOL Inc.*,
No. 2:11CV512, 2012 WL 12068846 (E.D. Va. Oct. 12, 2012) ...............................................6

*IMX, Inc. v. Lendingtree, LLC*,
No. Civ. 03-1067-SLR, 2006 WL 38918 (D. Del. Jan. 6, 2006).............................................10

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
106 F.3d 1563 (Fed. Cir. 1997)..................................................................................................13

*Laitram Corp. v. NEC Corp.*,
No. 89-cv-01571, 1996 WL 365663 (E.D. La. July 1, 1996) ...................................................17

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)...................................................................................................27

*Lucent Techs., Inc. v. Microsoft Corp.*,
No. 07-CV-2000 H (CAB), 2011 WL 13101230 (S.D. Cal. Feb. 4, 2011) ......................27, 28

*McKesson Info. Sol., Inc. v. Bridge Med., Inc.*,
434 F. Supp. 2d 810 (E.D. Cal. 2006)........................................................................................11

*Mendenhall v. Cedarapids, Inc.*,
5 F.3d 1557 (Fed. Cir. 1993)........................................................................................................2

*Morpho Detection, Inc. v. Smiths Detection, Inc.*,
957 F. Supp. 2d 655 (E.D. Va. 2013) .........................................................................................12

*Move, Inc. v. Real Estate All. Lrd.*,
221 F. Supp 3d 1149 (C.D. Cal. 2016) ....................................................................................4, 6

*Pro–Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.*,
    75 F.3d 1568 (Fed. Cir. 1996)...................................................................12, 15

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
    989 F. Supp. 547 (Fed. Cir. 1997) ...................................................................8

*So. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*,
    318 F.3d 592 (4th Cir. 2003) ...........................................................................9

*Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co, Inc.*,
    No. 10-cv-159, 2016 WL 7473422 (W.D. N.C. Dec. 28, 2016)........................4

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
    CV 12-1013-RGA, 2015 WL 456154 (D. Del. Jan. 30, 2015) ..........................6

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983)......................................................................5, 6

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2009)........................................................................3

*Suprema, Inc. v. Int'l Trade Comm'n*,
    626 F. App'x 273 (Fed. Cir. 2015) .................................................................10

*TecSec, Inc. v. Int'l Bus. Mach. Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013)......................................................................2, 3

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015) .......................................................................................3

*Third Wave Tech. v. Stratagene Corp.*,
    405 F. Supp. 2d 991 (W.D. Wis. 2005) .........................................................10

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)........................................................................2

*Toshiba Corp. v. Imation Corp.*,
    Case No. 3:09-cv-00305-slc, slip op. (Dkt. No. 417) (W.D. Wis. Mar. 26, 2013)...............1, 2

*TracBeam L.L.C. v. AT & T Inc.*,
    No. 6:11-CV-96, 2013 WL 6175372 (E.D. Tex. Nov. 25, 2013) ............................6

*Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*,
    597 F. Supp. 2d 897 (N.D. Iowa 2009)..........................................................27

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011).....................................................................24, 25

*Vir2us, Inc. v. Invincea, Inc.*,
    235 F. Supp. 3d 766 (E.D. Va. 2017) ................................................................9

*Virginia Innovation Sci., Inc. v. Samsung Elecs. Co. Ltd.*,
    No. 12-cv-00548, 2014 WL 12603188 (E.D. Va. Apr. 11, 2014) ...........................9

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014).........................................................................7

*Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*
    No. 10-cv-10578, 2016 WL 4396085 (E.D. Mich. Aug. 18, 2016).........................11

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016).........................................................................15

**Statutes**

35 U.S.C. § 271(b) ..................................................................................................9

35 U.S.C. § 284 .......................................................................................................9

35 U.S.C. § 287 .....................................................................................................16

35 U.S.C. § 298 .....................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(a)(1) ..........................................................................................21

Fed. R. Civ. P. 26(e) .........................................................................................19, 21

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................19, 21

Fed. R. Civ. P. 30(b)(6) ..........................................................................................21

Fed. R. Civ. P. 403 .................................................................................................28

# I.     MIL #1: The Court Should Not Allow Adobe to Rely Upon Court Decisions That Have Been Reversed

Adobe's MIL #1 suggests that TecSec faces a false dilemma, either: (1) refrain from presenting argument, evidence or testimony on Adobe's intent to induce or willfully infringe between March 3, 2011 and October 18, 2013, or (2) concede the admissibility of this Court's March 3, 2011 claim construction order (DX-28), stipulation of non-infringement (DX-29), and judgment (DX-30).[1]

But this is not a binary decision for TecSec or the Court.  Adobe has presented no basis for preventing TecSec from presenting evidence regarding Adobe's intent to infringe or willful behavior March 3, 2011 and October 18, 2013, and, indeed, no basis exists.  It would be plain error to prevent TecSec from presenting any evidence on a core infringement issue in this case.

That does not mean, however, that Adobe should be permitted to confuse the jury by presenting argument about the impact of prior Court decisions that were later reversed by the Federal Circuit.  Courts routinely hold that the relevance of prior court rulings is substantially outweighed by the risk of unfair prejudice or jury confusion.  *See, e.g.,* Ex. 1 (*Toshiba Corp. v. Imation Corp.*, Case No. 3:09-cv-00305-slc, slip op. (Dkt. No. 417) at 17-18 (W.D. Wis. Mar. 26, 2013) (exclude summary judgment ruling as potentially confusing to the jury)); Ex. 2 (*Apple Inc. v. Samsung Electronics Co. Ltd.*, No. 11-cv-1846, slip. op. (Dkt. No. 1267) at *4-5 (N.D. Cal. July 19, 2012) (granting in part motion *in limine* to exclude prior rulings which "could be somewhat probative of [defendant's] willfulness" because of risk of prejudice and confusion)); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2014 WL

---

[1] The Court's March 3, 2011 claim construction order and subsequent stipulation and judgment came at a time when the case was not proceeding against Adobe.  On June 4, 2010, this Court had ordered "that this litigation proceed solely against defendants International Business Machines Corporation and eBay, Inc. and that the claims against all other defendants be and are STAYED until further order of this Court."  Dkt. No. 161.

4272771, at *1 (N.D. Cal. Aug. 28, 2014) ("Introduction of the Court's reasoning to support the reasonableness of [the defendant's] actions and its subjective belief that it did not infringe would be more prejudicial than probative and will be excluded."); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1574-75 (Fed. Cir. 1993) ("the possibility of prejudice to the defendant and confusion of the jury was very high if Judge Hull's opinion were admitted inasmuch as the opinion was not fact evidence on the myriad issues in the second case . . . Confusion could well have arisen by exposing the jury to another judge's statements on the law").

In fact, in *Toshiba*—the centerpiece of Adobe's motion—the district court **excluded** a prior summary judgment ruling of non-infringement that was offered by the accused infringer to show lack of intent to induce infringement or willfulness:

> Second, defendants assert they intend to use this court's summary judgment ruling to show that they lacked intent to induce infringement and that any such infringement was not willful. Although I agree with defendants that such evidence is relevant, I find that its relevance is substantially outweighed by the danger that the jury would give undue weight to the rulings of this court and would be confused by the competing explanations of the weight and relevance the jury should accord to this court's vacated non-infringement holdings (and the dissent on appeal). That said, defendants are free to refer to these matters to the extent they become relevant to any motions made **outside the jury's presence.**

Ex. 2 (Order re: Motions in Limine, *Toshiba Corp. v. Imation Corp.*, Case No. 3:09-cv-00305-slc, Dkt. No. 417 at 17-18) (emphasis added).

The case for exclusion is even stronger here. In *Toshiba*, the alleged "lack of intent" was based on the accused infringer's reliance on the court's finding of non-infringement that was subsequently vacated on appeal. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012). Here, however, this Court did not find that Adobe's products do not infringe based on the flawed claim construction decision that was ultimately overturned on appeal. *TecSec, Inc. v. Int'l Bus. Mach. Corp..*, 731 F.3d 1336, 1346 (Fed. Cir. 2013). Adobe did not even argue that it

did not infringe based on the construction, TecSec simply stipulated to no infringement as a means to have the improper construction reviewed.[2] But while TecSec's reason for the stipulation was made clear, there is a real danger that the jury would take the stipulation at face value and that TecSec would be unfairly prejudiced by TecSec's desire to obtain a reversal at the outset rather than proceed to trial on an erroneous construction.

There is also a danger that the jury would be confused by Adobe presenting competing positions the term "multimedia" and its impact on claim scope. Claim construction is, of course, ultimately a question of law that must be left to the court, not the jury. *Teva Pharm. USA, Inc. v. Sandoz, Inc*., 135 S. Ct. 831, 837 (2015). The Federal Circuit has held that it is improper for juries to hear conflicting positions on the correctness of a claim construction, given the risk of confusion. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *see also Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356, 1364 n.6 (Fed. Cir. 2009). The risk of confusion is particularly high in this case because the Court's construction of "multimedia" and its impact on claim scope is not controlling and has been flatly rejected by the Federal Circuit.[3]

Finally, Adobe makes the incorrect assertion that it "had a good-faith belief of non-infringement" and that "Judge Brinkema agreed with Adobe when she issued her [claim

---

[2] TecSec informed the Court on March 15, 2011 that "it intends to pursue a prompt appeal of this Court's judgment in favor of IBM, and that in light of significant overlap in the issues, it will not pursue its claims against any of the remaining defendants in this civil action until the conclusion of that appeal." Dkt. No. 575.

[3] Indeed, in reversing the Court's improper construction of the term "multimedia," the Federal Circuit observed that the "claims and specification convey that any type of data may be encrypted, not just multimedia," and that the prosecution history did not "limit the claims to encrypting multimedia objects." *TecSec*, 731 F.3d at 1346. The Federal Circuit concluded that "[b]ased on the parties' stipulation, TecSec may be able to prove infringement against every defendant except PayPal." *Id.*

construction ruling] on March 3, 2011." Adobe Mem. at 3. However, Adobe was not involved with the claim construction proceedings at the time of the March 3, 2011 order and did not advance that construction, so the Court could not have agreed with Adobe. Nor has Adobe, at any time since the onset of this litigation, presented or relied upon any opinion of counsel that would substantiate a good-faith belief that its accused products did not infringe the asserted claims based on that flawed construction.[4] Adobe's infringing conduct has remained unchanged from the first act of infringement through the expiration of the patents in 2013. Thus, with trial looming and no credible basis for defending against TecSec's inducement and willfulness claims, Adobe is attempting to manufacture a "good-faith" argument by presenting a flawed claim construction ruling, which no witness can testify Adobe relied upon, as a proxy for its failure to obtain an opinion of counsel or otherwise demonstrate a reasonable non-infringement position. It would be confusing and prejudicial for Adobe to somehow argue that it changed its state of mind during the pendency of the litigation, even though its infringing conduct did not change at all.

---

[4] The cases cited by Adobe are distinguishable because they involve a district court agreeing with the accused infringer's asserted non-infringement position. *See Chaffin v. Braden*, No. 14-cv-00027, 2018 WL 1794766, at *5 (S.D. Tex. Apr. 16, 2018) ("Defendants believed that the Accused Devices did not meet this limitation of a "continuous draw of chlorine" and, therefore, there could be no infringement. This Court agreed."); *Move, Inc. v. Real Estate All. Lrd.*, 221 F. Supp. 3d 1149, n.14 (C.D. Cal. 2016) ("Move understood Step (c)—'selecting a first area having boundaries'—as requiring the *user* to define the area to be selected. We initially agreed (Doc. 419 at 12), and REAL stipulated to a finding of non-infringement based on this reasonable, but erroneous, construction") (citations omitted); *Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co., Inc.*, No. 10-cv-159, 2016 WL 7473422, at *8 (W.D.N.C. Dec. 28, 2016) ("Defendants presented evidence that they conducted a reasonable investigation of Sedecal's patent claims and made a good faith determination that the patent was not infringed by their activities and that the patent was likely invalid. Indeed, DRGEM's head engineer reached exactly the same conclusions in July 2007 that this Court later reached in its summary judgment opinion"). Adobe did not advance a non-infringement position here, the Court did not agree with Adobe, and Adobe has presented no evidence that it relied on the Court's construction.

Accordingly, Adobe's MIL #1 should be denied, and Adobe should be barred from presenting this Court's March 3, 2011 claim construction order (DX-28), stipulation of non-infringement (DX-29), and judgment (DX-30) at trial or making any arguments based on those documents.

## II. MIL #2: The Court Should Not Preclude TecSec From Introducing Evidence Regarding Its Agreements With Third Parties Related To The Patents-In-Suit

Adobe's MIL #2 seeks the extraordinary remedy of precluding TecSec from mentioning any agreement between TecSec and any third party for any purpose. Adobe Mem. at 4-8. Adobe's argument is based on the false premise that evidence of any type of agreement with a third party could only be relevant with respect to a reasonable royalty analysis, and if the agreements are not comparable licensing agreement pertinent to the hypothetical negotiation they must be excluded. The agreements have relevance far beyond just establishing a reasonable royalty, and it would be error to exclude evidence of these agreements.

Critically, TecSec's agreements are relevant with respect to secondary considerations of non-obviousness. Adobe has indicated, despite TecSec's objections, that it intends to argue at trial that the patents-in-suit are invalid as obvious.[5] The Federal Circuit has held that agreements related to the technology at issue, even if not in the form of a comparable license, can constitute relevant evidence as to secondary considerations of non-obviousness, and "secondary considerations of non-obviousness must be considered when present." *Geo M. Martin Co. v. Alliance Machine Sys. Int'l LLC*, 618 F.3d 1294, (Fed. Cir. 2010); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983) ("evidence rising out of the so-called 'secondary considerations' must always be considered en route to a determination of obviousness."). "[A]

---

[5] TecSec has moved to preclude any obviousness discussion at trial because Adobe did not timely disclose any viable obviousness, violated the Court's order striking references to TISPEM, reintroduced dropped invalidity references, and failed to cure Adobe's "obvious discovery abuse." *See* Dkt. No. 1199 at 1-6 (TecSec MIL #1).

court must not stop until *all* pieces of evidence on [obviousness] have been fully considered and each has been given its appropriate weight." *Stratoflex*, 713 F.2d at 1529.   TecSec's rebuttal expert report on validity specifically relied upon these agreements as evidence of non-obviousness.   Ex. 4 at 132-138 (Excerpt of Rebuttal Expert Report of Dr. Mark T. Jones on Validity).   Thus, it would be error to exclude any relevant evidence of secondary considerations from trial here.   *Stratoflex*, 713 F.2d at 1529.   The cases cited by Adobe do not address agreements as evidence of secondary considerations of non-obviousness, and thus are readily distinguishable.[6]

Even if the Court excludes evidence on Adobe's obviousness defense, and it should, the agreements are still necessary to establish the history of TecSec and the success of the DCOM technology.   For example, *Georgia Pacific* Factor No. 8 relates to the commercial success of products made under the patents and Factor No. 10 requires consideration of the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

At trial, Adobe has made it clear that it intends to portray TecSec as a failed business with worthless technology that has never drawn interest in the technology community.   Adobe

---

[6] *See AVM Techs. LLC v. Intel Corp.*, CV 15-33-RGA, 2017 WL 2938191, at *3 (D. Del. Apr. 19, 2017) ("A non-comparable license is irrelevant to prove a reasonable royalty, but it is hard to say that it is irrelevant for all cross-examination purposes before the relevant direct examination has actually occurred."); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 815 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012) (holding damages expert's opinion were "speculative and not based in sound economic precepts"); *I/P Engine, Inc. v. AOL Inc.*, No. 2:11CV512, 2012 WL 12068846, at *2 (E.D. Va. Oct. 12, 2012) (licensing agreements were offered as evidence to show the party's preference toward lump sum royalty payments); *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, CV 12-1013-RGA, 2015 WL 456154, at *1 (D. Del. Jan. 30, 2015) (settlement agreements offered to show the rates paid by the licensee for the use of other patents comparable to the patent in suit) *TracBeam L.L.C. v. AT & T Inc.*, No. 6:11-CV-96, 2013 WL 6175372, at *5 (E.D. Tex. Nov. 25, 2013) (revenue-generating service and purchase contracts offered as a "check" that the royalty rate itself was realistic).

understandably does not want the jury to hear that . But the fact that Adobe does not want the jury to hear about TecSec's successes does not make evidence about TecSec's agreements inadmissible. Adobe should not be able to paint a inaccurate picture of TecSec while preventing TecSec from providing the full story.

Adobe's concern that the jury might be deceived into thinking that TecSec's agreements with third parties are comparable licenses for purposes of a damages analysis are unfounded. Both parties' damages experts explained in their expert reports that the agreements in question were not comparable licenses with respect to the hypothetical negotiation, so there is no risk of them providing conflicting testimony at trial. Adobe admits as much. Adobe Mem. at 6. "So long as the jury is provided evidence of these similarities and differences so that they may consider the relevance of the challenged settlement agreements for themselves, the agreements may properly be admitted into evidence." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 13-CV-03999-BLF, 2015 WL 4129193, at *5 (N.D. Cal. July 8, 2015) (citing *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1331 (Fed. Cir. 2014)). Therefore, Adobe's MIL #2 should be denied.

## III. MIL #3: The Court Should Not Preclude TecSec From Presenting Argument, Evidence Or Testimony Regarding Damages Based On Direct Infringement By Adobe

Adobe has already admitted that it has directly infringed the claims of the asserted patents, including both the system and the method claims. Dkt. No. 1178 (Notice of Streamlining of Issues for Trial). As set forth in TecSec's infringement expert's report, every installation of Acrobat on Adobe's employees computers, and every instance where Adobe

7

installed Acrobat for its customers, also is an act of direct infringement by Adobe.  Ex. 3 at 76-
80 (Excerpt from Expert Report of Dr. Mark T. Jones, Jan. 30, 2018).  █████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ is an act of direct infringement by Adobe.  *Id.* at

76-77.  In addition, Adobe witnesses testified that ███████████████████████████████

███████████████████.  *Id.* at 78-80.

Adobe argues that because TecSec's damages expert did not distinguish between

damages for direct and indirect infringement in his report, he should be precluded from testifying

about direct damages altogether at trial.  Adobe's argument is premised on the idea that Mr.

Wagner should have assumed that the patents were directly infringed, but not indirectly

infringed, and then based his hypothetical negotiation on Adobe's presumed non-infringement.

But the Federal Circuit requires that experts constructing a hypothetical negotiation must assume

that the patents are valid and infringed, and both damages experts applied this framework when

conducting their analyses.  *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F.

Supp. 547, 606 (Fed. Cir. 1997).  There was no need for Mr. Wagner to assume that Adobe

would be liable only for direct infringement when conducting his damages report, or broken out

his damages calculations based on various infringement-related findings that the jury might

make.  Mr. Wagner identified a reasonable royalty rate based on that hypothetical negotiation,

and the jury must decide based on the evidence presented the damages to award TecSec for

Adobe's infringement based on the totality of the evidence.

Adobe next argued that any testimony from Mr. Wagner on direct infringement damages

would be untimely.  Adobe Mem. at 8.  However, this is not the case, as Mr. Wagner disclosed

his opinions in his reports which were submitted according to the schedule established by the

Parties and approved by this Court.  There was no delayed or withheld disclosure and, as such, the cases relied upon by Adobe do not provide relevant analogies.[7]  And although Adobe cites to *So. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592 (4th Cir. 2003), Adobe fails to address any of the five factors to be considered by a court in determining whether to exclude untimely expert disclosures to support its argument that Mr. Wagner's opinions should be excluded.

Adobe does not get a free pass and the ability to use TecSec's technology without a license and without compensation, especially not after admitting infringement.  By statute, TecSec is entitled to an award of "no less than a reasonable royalty" for all of Adobe's infringement, whether it be direct or indirect.  35 U.S.C. § 284.  The jury must decide how much to award TecSec, and TecSec must be permitted to present evidence in support of its request for damages.  Adobe's MIL #3 should be denied.

## IV.  MIL #4: The Court Should Not Preclude TecSec From Presenting Argument, Evidence, Or Testimony Regarding Adobe's Lack Of Opinion Of Counsel

Adobe seeks to preclude TecSec from presenting argument, evidence, or testimony regarding Adobe's decision not to obtain an opinion of counsel.  Adobe Mem. at 9.  This request should be denied—court's routinely hold that the failure to obtain an opinion of counsel is relevant to the issues of both the infringer's state of mind for induced infringement and to willful infringement.

TecSec has alleged that Adobe has induced infringement of the asserted patents.  A party who "actively induces infringement of a patent" under 35 U.S.C. § 271(b) is liable for patent

---

[7] *See Virginia Innovation Sci., Inc. v. Samsung Elecs. Co. Ltd.*, No. 12-cv-00548, 2014 WL 12603188, at *2 (E.D. Va. Apr. 11, 2014) (excluding doctrine of equivalents theory submitting after the close of expert discovery); *Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 796 (E.D. Va. 2013) (excluding expert analysis of source code not produced in discovery); *Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 778 (E.D. Va. 2017) (applying *So. States* factors to documents withheld by defendant during discovery).

infringement if the party knows that the induced acts constitute patent infringement. *Global–Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2063 (2011). A defendant can be found liable for induced infringement if it has actual knowledge of the infringement, or if it is willfully blind to the infringement. *Id.* The doctrine of willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 2070. "The requisite intent to induce infringement may be inferred from all of the circumstances," and "may be established through circumstantial evidence." *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683, 699 (Fed. Cir. 2008).

The Federal Circuit has held that the failure to obtain counsel opinion goes to the "state of mind" inducement requirement, and "such evidence remains relevant to the . . . intent analysis" for inducement.[8] *Broadcom,* 543 F.3d at 699. The Federal Circuit has also held that while *Global–Tech* changed the standard of intent for establishing induced infringement, *Global–Tech* did not displace this Court's holding in *Broadcom* that failure to obtain an opinion of counsel can be considered in determining whether the intent standard for induced infringement has been met. *Suprema, Inc. v. Int'l Trade Comm'n*, 626 F. App'x 273, 282 (Fed. Cir. 2015) (citing *Global–Tech,* 131 S. Ct. at 2069–70); *see also IMX, Inc. v. Lendingtree, LLC*, No. Civ. 03-1067-SLR, 2006 WL 38918, *1 (D. Del. Jan. 6, 2006) (holding that that "fact that no opinion of counsel on the issue of infringement was acquired by defendant may be considered by the trier of fact in its willful infringement analysis"); *Third Wave Tech. v. Stratagene Corp.,* 405 F. Supp. 2d 991, 1016-17 (W.D. Wis. 2005) (holding that *Knorr* "did not say that it was

---

[8] As Adobe acknowledges, Congress expressly indicated the America Invents Act (AIA) was not retroactive, and applies only to civil actions commenced on or after January 14, 2013. 35 U.S.C. § 298.

improper for a jury to infer from infringer's failure to consult counsel that that the infringer had no prior knowledge of its opponent's patents or that it had not acted properly in other respects."). The cases cited by Adobe are distinguishable or support admissibility because this is not a situation where there is potentially an adverse inference because Adobe obtained an opinion of counsel and decided not to waive privilege—Adobe simply never obtained an opinion of counsel.[9]

Thus, Adobe's decision not to obtain an opinion of counsel is relevant to Adobe's "state of mind" prior to and since the onset of this litigation. Such argument, evidence and testimony cannot be precluded simply because the law does not obligate Adobe to obtain an opinion of counsel or otherwise impose on Adobe an affirmative duty to seek one. Adobe's MIL #4 should be denied.

## V. MIL #5: The Court Should Not Preclude TecSec From Presenting Argument, Evidence, Or Testimony Regarding Secondary Considerations

Secondary considerations are relevant to an obviousness analysis. As detailed in TecSec's first motion *in limine*, Adobe has not identified any viable obviousness positions to which secondary considerations can be applied, and it should be precluded from presenting an obviousness defense at trial. Dkt. No. 1199 at 1-6. Should this Court grant TecSec's MIL #1

---

[9] *See Visteon Global Techs., Inc. v. Garmin Int'l, Inc.* No. 10-cv-10578, 2016 WL 4396085, at *5 (E.D. Mich. Aug. 18, 2016) (permitting Visteon to submit evidence of Garmin's failure to obtain an opinion of counsel, but prohibiting Visteon from submitting evidence that Garmin did in fact procure such an opinion but elected to maintain the attorney client privilege and not produce the opinion at trial); *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 13-cv-00366, 2014 WL 6467782, at *2 (E.D. Tex. Nov. 17, 2014) (permitting Georgetown to introduce evidence or arguments regarding the absence of an opinion of counsel at trial, but prohibiting Georgetown from indicating that Holland had an affirmative duty to seek an opinion of counsel or from indicating that an any adverse inference should be drawn as to what the content of an opinion of counsel would have been.); *McKesson Info. Sol., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 811-12 (E.D. Cal. 2006) (precluding introduction of evidence or testimony pertaining to Bridge's assertion of the attorney client privilege over the opinion of counsel it received regarding the asserted patent.).

and exclude TISPEM and PKZIP or otherwise limit Adobe to an anticipation theory, Adobe's MIL #5 is irrelevant and should be denied.

In determining obviousness, "secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Graham v. John Deere Co. of Kansas City*, 86 S. Ct. 684 (1966). A district court is obligated to consider evidence of secondary considerations when presented in an obviousness analysis. *See In re Huai–Hung Kao*, 639 F.3d 1057, 1067 (Fed. Cir. 2011) (("[W]hen secondary considerations are present, though they are not always dispositive, it is error not to consider them.").

Adobe contends that three secondary considerations of non-obviousness—commercial success, industry praise, and licensing—should be excluded before trial because "each lacks a nexus to the merits of the claimed invention." Adobe Mem. at 11. Specifically, Adobe specifically seeks to exclude (1) the TecSec Licenses/Agreements; (2) ▮▮▮▮▮▮▮▮▮▮▮; and (3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on the basis that the evidence is not tied to "multi-level encryption." *Id.* at 12. But it is the role of the jury, and not the Court on a motion in limine, to decide whether a sufficient nexus exists. *See Pro–Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568, 1574 (Fed. Cir. 1996) ("It is within the province of the fact-finder to resolve these factual disputes regarding whether a nexus exists between the commercial success of the product and its patented features...."); *Morpho Detection, Inc. v. Smiths Detection, Inc.*, 957 F. Supp. 2d 655, 679 (E.D. Va. 2013) (holding nexus is a factual issue for the jury).

Here, there is ample evidence of a proper nexus, and the jury must be permitted to consider the evidence. Dr. Jones provided cited to supporting evidence of secondary considerations that establish a nexus to the DCOM patents that cover "its client-based object-

level encryption and role-based access environment addressing the short comings of the prevalent Public Key Infrastructure (PKI) approach." Ex. 4 at 136 (Excerpt of Rebuttal Expert Report of Dr. Mark T. Jones on Validity ("Jones Validity Report")). The object level encryption and role-based access relate directly to the merits of the DCOM patents. Objective evidence of a nexus need only be "reasonably commensurate with the scope of the claims." *In re Huai–Hung Kao*, 639 F.3d at 1068. Here, Dr. Jones connected the secondary considerations to the merits of the claimed invention as a whole—namely, object-level encryption and role-based access— making the evidence relevant and useful.

There is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product "is the invention disclosed and claimed in the patent." *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310-11 (Fed. Cir. 2010); *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("[I]f the marketed product embodies the claimed features, and is coextensive with them, then a nexus is presumed and the burden shifts to the party asserting obviousness to present evidence to rebut the presumed nexus."). As evidenced below, TecSec has satisfied this initial burden while Adobe responds with argument alone which is insufficient to rebut the presumption. *Brown & Williamson*, 229 F.3d at 1130.

(1) TecSec Licenses/Agreements. As explained by Dr. Jones and acknowledged by Dr. Sullivan, ███████████████████████████████████████████████ ██████████████████████████████████████ licenses to the DCOM patents or TecSec technology and further developed products based on that technology. Ex. 4 at 133 (Excerpt of Jones Validity Report) (citing Opening Expert Report of Re Secondary Considerations of Ryan

Sullivan ("Sullivan Report"), Ph.D.at 18-26). Because each of the licenses relate directly to the DCOM patents or TecSec technology tied to the DCOM patents, this evidence is relevant to the issue of non-obviousness.

(2) ██████████. Mr. Shanton, the inventor of the DCOM patents, testified that the ████████ product "was way ahead of its time, and it was successful from a professional services point of view." Ex. 4 at 132 (Excerpt of Jones Validity Report); Ex. 5 at 15:21-16:11 (Excerpt of Shanton Dep. Tr.). According to Mr. Shanton, "█████ made a good amount of money with professional services on it." Ex. 5 (Excerpt of Shanton Dep. Tr.). Mr. Shanton further connected the █████████ product to the encryption and key management features of the DCOM patents. *Id.* at 10:24-13:1 (Shanton Dep. Tr.). This evidence of commercial success of the claimed invention is relevant to whether the DCOM patents are non-obviousness.

(3) ████████████. These reports are of particular significance ██████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████ Ex. 4 at 135 (Excerpt of Jones Validity Report) (citing TEC-IBM-000055345); Ex. 6 at 618 (Excerpt of Opening Expert Report of Dr. Paul Clark on Invalidity) (citing TecSec's Response to Adobe's Interrogatory No. 1). The due diligence resulted in a license to, as well as an investment in, TecSec's DCOM technology. Ex. 4 at 137 (Excerpt of Jones Validity Report). ███████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████ Ex. 4 at 138 (Jones

Validity Report) (citing TEC-IBM-000151394-151403).   Moreover, Dr. Sullivan and Mr. Wagner's reports provide evidence that ███████████████████████████████████████, analyzed the DCOM technology, obtained rights to the DCOM patents or used TecSec's patented technology in commercial products.   Ex. 4 at 137 (Excerpt of Jones Validity Report) (citing Sullivan Report, at ¶¶45-72, 85-94 and Expert Report of Michael J. Wagner, Schedule 1.1).

Any concerns that Adobe has about the evidence goes to weight and not admissibility. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1331 (Fed. Cir. 2016) ("Questions of nexus are highly fact-dependent and, as such are not resolvable by appellate-created categorical rules and hierarchies as to the relative weight or significance of proffered evidence.").   Adobe can use cross examination to attempt to establish an insufficient nexus, but whether the challenged secondary considerations are evidence of success and praise of the DCOM patents is a question for the jury.  *See Pro–Mold*, 75 F.3d at 1574.  Adobe's MIL #5 should be denied.

## VI.   MIL #6: The Court Should Not Preclude TecSec From Referencing Pre-Suit Damages During Opening

Adobe's MIL #6 is an attempt by Adobe to re-litigate an issue that it already argued and that the Court rejected.  At the summary judgment phase, Adobe moved for summary judgment claiming that TecSec could not prove that it marked every product that TecSec and its licensees sold that practiced the DCOM Patents.  *See* Dkt. No. 1020 at 1.  The Court not only denied Adobe's motion (Dkt. No. 1151 at 1), but granted TecSec's motion precluding Adobe's expert, Mr. Nebel from offering any testimony that any third party products practiced the DCOM Patents' claims and were unmarked, because he failed to conduct any analysis of these third party products (Dkt. No. 1152 at 3).  Adobe is now not bringing Mr. Nebel to trial.  *See* Dkt. No. 1193 at Ex. A (Adobe's Trial Witness List).

Now, through a motion *in limine*, Adobe again asks the Court to decide in advance whether TecSec at trial will meet its burden of demonstrating compliance with the marking requirement of 35 U.S.C. § 287, before the evidence is ever presented. Adobe Mem. at 15-19. Adobe cites no case that requires a patent owner to make a *prima facie* showing of marking before damages can be addressed with the jury. If Adobe's position were correct, there likely could be no opening statements at all on any contested issue, because the parties presumably do not agree on what the evidence will show regarding infringement or invalidity either.

In any event, TecSec has already demonstrated through the evidence submitted with its summary judgment opposition that it will be able to make a prima facie showing of marking, and that evidence now cannot be rebutted by Adobe's expert, Mr. Nebel. For example, with respect to the marking of TecSec's own products, Mr. Wack, TecSec's President, testified that "all or substantially all TecSec products that have ever that have ever been sold from the mid-1990s until the present have been marked with the DCOM patent numbers." Dkt. No. 1102, ¶ 5 (Decl. of Carl Joseph Wack III). With respect to the marking of licensees' products, Mr. Wack testified that he was unaware of any product licensed under the DCOM patents that was sold by any third party during the relevant damages period that was not marked with the DCOM patent numbers. *Id.* at ¶ 11. Adobe cannot present any evidence that any third party product was sold that practiced the DCOM patents and was unmarked. As a result, there is no reason to prevent TecSec from mentioning pre-suit damages during opening statements or at any other time, and Adobe's MIL #6 should be denied.

## VII.    MIL #7:   The Court Should Not Preclude TecSec From Rebutting Improper Arguments That ▇▇▇▇▇▇ Products Practice The DCOM Patents

Adobe raised the issue of marking in the first grounds of its summary judgment motion alleging that Mr. Nebel's testimony shifted the burden to TecSec to prove that ▇▇▇▇

products were marked.  Dkt. No. 1020 at 8.  TecSec, on the other hand, moved in its *Daubert* motion to exclude Nebel's testimony asserting that third party products practiced the DCOM patents and were unmarked.  Dkt. No. 1015 at 10-12.  The Court denied Adobe's Motion for Summary Judgment (Dkt. No. 1151) and granted TecSec's *Daubert* motion, finding that Mr. Nebel's cursory analysis failed to shift the burden, Dkt. No. 1152 at 3, so there is now no basis for Adobe to argue that ███████ products practice the DCOM patents.  In fact, it is Adobe that should be precluded from arguing at trial that ███████ products practice the DCOM patents with no evidence.

TecSec, therefore, has no need to rebut Adobe's argument regarding third party products, because the Court has already found that Adobe did not shift the burden as required by *Arctic Cat Inc. v. Bombardier Recreations Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017).  The cases to which Adobe cites are distinguishable because the defendant had either shifted the burden or the patent owner conceded that the third party products practiced the asserted patents.  *See Laitram Corp. v. NEC Corp.*, No. 89-cv-01571, 1996 WL 365663, at *2 (E.D. La. July 1, 1996) (licensee sold unmarked products covered by the patents and paid royalties on those sales); *Carnegie Mellon Univ. v. Marvell Tech. Grp.*, 906 F. Supp. 2d 399 (W.D. Pa. 2012) (patent owner agreed that a third party sold products to third parties that allegedly embody the patent and that the products were not marked).  If Adobe raises the issue improperly at trial without evidence, TecSec cannot be precluded from responding by pointing out Adobe's lack of evidence.  Adobe's MIL #7 should be denied.

## VIII.  MIL #8: The Court Should Not Preclude TecSec From Presenting Testimony From Witnesses Disclosed During Discovery

Adobe's MIL #8 asks the Court to impose three different restrictions on fact witnesses identified in TecSec's witness list.  Adobe Mem. at 21-24.  First, Adobe asks the Court to

preclude TecSec from either calling or making any reference to two former Adobe employees who it contends are outside the subpoena power of the Court. *Id.* at 22. Second, Adobe asks the Court to preclude TecSec from introducing any testimony from TecSec's Chief Financial Officer, whom Adobe has already deposed and included on its own initial disclosures. *Id.* at 23. Finally, Adobe asks the Court to preclude TecSec from introducing portions of the deposition testimony provided by Adobe's Director of Finance and 30(b)(6) designee. *Id.* at 23-24. Adobe has provided no valid justification for these requests, and none exists. Adobe's requests should be denied.

### A. Adobe Has No Valid Ground For Its Requests Concerning The Two Former Adobe Employees

TecSec's witness list includes Mark Bartel and Dr. Charles Geschke as witnesses it may call live at trial. *See* Dkt. No. 1192 at Ex. A. Mr. Bartel is a former Adobe Senior Computer Scientist who served as Adobe's representative to an industry working group—W3C—that received notice of TecSec's patents. Dr. Geschke was a co-founder of Adobe, formerly served as Adobe's Chief Operating Officer and then its President, and is still a member of Adobe's Board of Directors. Dr. Geschke was also a member of a Computer Science and Telecommunications Board that published a May 30, 1996 report identifying TecSec's VEIL as a product that provided "file (and object) encryption." Adobe is asking the Court to preclude TecSec from either calling or making any reference to Mr. Bartel and Dr. Geschke at trial. None of the assertions Adobe has made in support of its request has any merit.

First, Adobe implies (but does not specifically assert) that TecSec should be precluded from calling Mr. Bartel and Dr. Geschke because they were not identified in TecSec's initial disclosures. Adobe Mem. at 22. But TecSec disclosed both witnesses, and described their significance, in its responses to Adobe's interrogatories, provided one month prior to the close of

fact discovery. Ex. 7 (TecSec's Supp. Resp. to Adobe's Interrogatory No. 15 (Aug. 22, 2017)). Those interrogatory responses fully satisfied TecSec's disclosure obligations as to Mr. Bartel and Dr. Geschke. *See* Fed. R. Civ. P. 26(e)(1)(A) (initial disclosures need to be supplemented with additional information only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). *See also* Advisory Comm. Notes to 1993 Amendment to Fed. R. Civ. P. 26(e) ("There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process . . . .").

Second, Adobe asserts that neither Mr. Bartel nor Dr. Geschke are within the Court's subpoena power. Adobe Mem. at 21-22. If Adobe is correct, that will obviously present a practical impediment to TecSec calling them as witnesses at trial. But it provides no justification for an order prohibiting TecSec from calling them if it is able to obtain their appearance.

Third, Adobe asserts that TecSec did not depose Mr. Bartel or Dr. Geschke. *Id.* But there is no requirement that witnesses be deposed in advance of trial.

Finally, Adobe asserts that TecSec should be precluded from making ***any reference*** to Mr. Bartel or Dr. Geschke at trial, apparently out of concern that they will not appear at trial and the jury will wonder why. *Id.* But that is no reason to preclude references to them. As previously noted, Mr. Bartel and Dr. Geschke were both Adobe employees who served on groups that were given notice of TecSec's patents. Regardless of whether they do or do not appear at trial, Mr. Bartel's and Dr. Geschke's positions with Adobe and their involvement in groups that received notice of TecSec's patents are directly relevant to the issues in this case, including Adobe's defense that it knew nothing about TecSec's patents before this case was filed. TecSec should not be precluded from providing that information to the jury.

## B. Adobe Has No Justification For Seeking To Preclude Testimony From TecSec's Chief Financial Officer

TecSec's trial witness list identifies John R. Petty as one of the witnesses it may call live at trial. *See* Dkt. No. 1192 at Ex. A. Mr. Petty is TecSec's Chief Financial Officer and Chairman of its Board. Adobe contends that TecSec should be precluded from introducing any testimony from Mr. Petty[10] because Mr. Petty was not identified in TecSec's initial disclosures.[11] Adobe Mem. at 21-23. But *Adobe* repeatedly identified Mr. Petty as a person with relevant knowledge in its own disclosures. Exs. 8-10 (Adobe's Second, Third and Fourth Updated Initial Disclosures). Moreover, TecSec witnesses identified Mr. Petty as the person most knowledgeable about certain topics during the depositions taken by Adobe. *See, e.g.*, Ex. 11 (Dep. Tr. of E. Scheidt (Aug. 22, 2017) at 56:16-57:12)). Indeed, Adobe took a day-long deposition of Mr. Petty in September 2017 (which produced *308* pages of transcript), and was also given the *305* page transcript of a day-long deposition that IBM's counsel had previously taken of Mr. Petty in this case in 2010. Further, Adobe has not only identified Mr. Petty as a witness that *it* may call live at trial, it has also designated for introduction at trial portions of both the deposition that it took of Mr. Petty and the deposition that IBM's counsel took of Mr. Petty. *See* Dkt. No. 1193 at Exs. A and B. Thus, Adobe has long known about Mr. Petty, Adobe has

---

[10] Adobe's Motion does not refer to Mr. Petty by name, but merely refers to him as "TecSec's Chief Financial Officer ("CFO") and Chairman."

[11] Citing an email from TecSec's counsel, Adobe also asserts that TecSec may use Mr. Petty to testify "on a host of topics disclosed for the first time on October 11, 2018." Adobe Mem. at 21-23 (emphasis added). That assertion is highly disingenuous. The cited email was a response to an email that Adobe's counsel sent at 10:34pm the night before, asking TecSec to describe the "subject matter for which John Petty has relevant knowledge . . . ." Adobe Mem., Exh. 36. TecSec responded by describing three topics. *Id.* Not only were those topics far fewer than a "host," Adobe's counsel had already deposed Mr. Petty for hours—and possesses over 600 pages of deposition testimony from Mr. Petty—on those topics. Further, the topics comport with those listed on Adobe's own initial disclosures, such as ownership of the patents-in-suit and TecSec business operations and finances, which are within Mr. Petty's personal knowledge. *See* Exs. 8-10 (Adobe's Second, Third and Fourth Updated Initial Disclosures).

long known what Mr. Petty has to say about the facts and issues in this case, and Adobe itself intends to introduce testimony from Mr. Petty.

Adobe appears to assume that TecSec was under an obligation to supplement its Rule 26(a)(1) disclosures to identify Mr. Petty as a person with knowledge. But there is no obligation to supplement initial disclosures with additional information if the additional information has been made known to the other party during the discovery process. Fed. R. Civ. P. 26(e)(1)(A). *See also* Advisory Comm. Notes to 1993 Amendment to Fed. R. Civ. P. 26(e) ("There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties . . . during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . . ."). Mr. Petty was made known to Adobe during the discovery process, through TecSec's production of Mr. Petty's prior deposition transcript, during the depositions that Adobe took of other witnesses, and during Adobe's day-long deposition of Mr. Petty. There is no legal or logical reason why TecSec should not similarly be allowed to introduce testimony from Mr. Petty.

**C. Adobe Has No Valid Ground For Seeking To Exclude Testimony Provided By Its Own Director of Finance**

TecSec's witness list identifies specific deposition testimony by Eunha Ranft, Adobe's Director of Finance, that it may introduce at trial. TecSec had noticed Ms. Ranft for deposition in her individual capacity, and Adobe subsequently informed TecSec that Ms. Ranft would be appearing as Adobe's corporate representative on five Rule 30(b)(6) topics as well. *See* Ex. 12 (Deposition Notice (Ranft Dep. Ex. 1)); Ex. 13 (Sept. 15, 2017 email from J. Ware to S. Wood (Ranft Dep. Ex. 3)). During her ensuing deposition, most of Ms. Ranft's testimony was provided in her individual capacity, and only a small portion of her testimony was provided in her capacity as one of Adobe's 30(b)(6) representatives. In fact, according to Adobe's prior counsel, only

fifteen minutes of Ms. Ranft's five-hour deposition was provided in her capacity as a corporate representative. Ex. 14 (Sept. 28, 2017 letter from P. Haack to M. Oakes & excerpts of rough transcript cited in Mr. Haack's letter).

Adobe is now asking the Court to preclude TecSec from using some, but not all, of the deposition testimony TecSec designated for Ms. Ranft,[12] claiming that Ms. Ranft and another Adobe representative (Julie Morgan) provided "cumulative 30(b)(6)" testimony on the same topics. *See* Adobe Mem. at 24. Adobe's request is unfounded and should be rejected for the following reasons.

First, much of the testimony highlighted in Adobe's Exhibit 23, which purportedly identifies "cumulative 30(b)(6)" testimony that Adobe wants to exclude, was provided by Ms. Ranft in her individual capacity, rather than in her capacity as a 30(b)(6) witness. *Compare* Adobe Ex. 23 and Oakes Ex. 14 (Sept. 28, 2017 letter from P. Haack to M. Oakes & excerpts of rough transcript cited in Mr. Haack's letter) (showing the following testimony highlighted in Ex. 23 was provided in Ms. Ranft's individual capacity: pp. 106:18 – 108:25, 125:1 – 126:7, 126:22 – 127:2, 181:13 – 182:9, 182:25 -- 184:11, 186:10 – 187:24, 189:11 – 193:13, 195:4-21). Adobe's arguments about excluding "cumulative 30(b)(6)" testimony therefore have no applicability to those portions of Ms. Ranft's testimony.

Second, Adobe's assertions about the purported "cumulative" nature of Ms. Ranft's 30(b)(6) testimony is based entirely on the fact that, following Ms. Ranft's deposition, Adobe provided another corporate representative (Julie Morgan) for deposition on four of the five

---

[12] Adobe is apparently seeking to exclude the testimony highlighted in Exhibit 23 to its Memorandum. *See* Adobe Mem. at 24.

30(b)(6) topics that had been assigned to Mr. Ranft.[13] *See* Adobe Ex. 25. But Adobe has made no attempt to show that anything Ms. Ranft said in her capacity as a 30(b)(6) representative is cumulative of anything Ms. Morgan said in her deposition. Moreover, Adobe has made no attempt to show that anything in TecSec's deposition designations for Ms. Ranft is cumulative of anything in TecSec's deposition designations for Ms. Morgan. Indeed, Adobe's argument seems to be based on nothing more than its belief that Ms. Morgan's deposition was a "do over" that somehow gave Adobe the right to walk away from anything Ms. Ranft said in her deposition. Adobe has provided no support for that position. Ms. Ranft is Adobe's Director of Finance, she was properly deposed on financial topics, and TecSec has the right to use her deposition testimony at trial.

Finally, Adobe's professed concerns that Ms. Ranft's testimony might somehow "impugn Adobe" or lead the jury to conclude that Ms. Ranft was "evasive during discovery" is no reason to exclude the testimony. Ms. Ranft is an Adobe official who, as Adobe's Director of Finance, should have knowledge of relevant financial issues. Moreover, Adobe chose to designate Ms. Ranft as someone who could speak on behalf of the company concerning certain topics. To the extent Adobe has concerns about what Ms. Ranft said in her deposition, it can call a witness at trial to address those concerns.

## IX. MIL #9: The Court Should Not Preclude TecSec From Presenting Evidence On The Value Of The Accused Features of Acrobat

Adobe's MIL #9 appears to be yet another attempt to re-litigate the arguments made in its *Daubert* motion seeking to exclude the testimony of TecSec's expert, Dr. Jones, which the Court

---

[13] Ms. Ranft was designated as a corporate representative on the topics designated A3, E1, E2, E3 and E5 in TecSec's 30(b)(6) deposition notice. Ex. 15 at 36:12-22 (extract of Ms. Ranft's deposition transcript). Ms. Morgan was designated as a corporate representative on the topics designated A3, E1, E2 and E5. Ex. 16 at 20:12 – 21:2 (extract of Ms. Morgan's deposition transcript).

already rejected.  *See* Adobe Mem. at 24-27.   In its *Daubert* Motion, Adobe argued that Dr. Jones did not apportion properly the value of the features covered by the asserted claims of the patents-in-suit from the broader set of features in Acrobat or from the value of the security features more generally.   In its Order denying Adobe's motion, the Court found Dr. Jones' opinions to be based on "sound scientific principles, permissible data sets, and proper expert analyses," and indicated that any concerns that Adobe had could be addressed through cross-examination.  Dkt. No. 1156 at 2.

Adobe's second bite at the apple should be similarly rejected.  TecSec does not intend to argue that the value of the patented technology is "comparable to, and coextensive with, the benefits an importance of 'security' and 'encryption' generally," as alleged in Adobe's MIL #9. In fact, as set forth in TecSec's expert reports, TecSec has gone to great pains to apportion the value of the accused features down from the value of Acrobat generally, and from Acrobat's security features more specifically.   Adobe's motion is a back-door attempt to undermine TecSec's ability to put on the evidence necessary to prove its damages case.  Documents and testimony regarding the security features of Acrobat are necessarily relevant because the accused features are a subset of the broader security features, and the witnesses must be permitted to discuss Adobe's documents and the importance of the security functionality in order to reach the ultimate valuation of the accused functionality.  As the Court already decided, to the extent that Adobe believes that the witnesses have not tied any testimony or valuation specifically to the accused functionality, Adobe's counsel can address those concerns through effective cross-examination, but Adobe's request to exclude all such evidence should be denied.[14]

---

[14] The cases cited by Adobe do not support the relief sought.  *Uniloc* is cited for the general proposition that the Federal Circuit has "cautioned" district courts against admitting evidence that "skew[s] the damages horizon for the jury."  Adobe Mem. at 26.  But that

## X.  MIL #10: The Court Should Not Preclude TecSec From Referencing Metrics Relevant To Damages

Adobe's MIL #10 appears to be an attempt to back out of the parties' stipulation, and another effort to re-argue issues already raised in Adobe's *Daubert* motion, which the Court rejected.  During the meet and confer process, Adobe raised concerns that testimony regarding worldwide revenue or worldwide employees would be potentially confusing to the jury and prejudicial because those metrics were not tied directly to TecSec's damages analysis.  Although TecSec did not share Adobe's concerns or believe that a motion was warranted, TecSec agreed to the Parties' Joint Stipulation No. 1, which states that the parties will not present evidence, argument or testimony regarding, as to Adobe, "the total number of employees worldwide, market capitalization, overall revenue, overall profits, or references to Adobe's overall wealth." Dkt. No. 1196.

Despite the stipulation, Adobe now argues that TecSec should be precluded from "presenting argument, evidence or testimony regarding Adobe's size and total employees." Adobe Mem. at 27.  To the extent that Adobe's reference to "size and total employees" is intended to address worldwide employees, the issue is moot because the parties' stipulation addressed this issue prior to Adobe filing MIL #10.

If that is not Adobe's concern, it is unclear exactly what relief Adobe is seeking.  If Adobe is attempting to exclude all testimony regarding the number of Adobe direct infringers,

---

particular holding of *Uniloc* pertained to overall revenue of a company from a product.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011).  Additionally, *Cellular Communications Equipment* involved conflation of a standard with an asserted patent, a different situation than presented here, and there, the court allowed presentation of the standard "to contextualize" the asserted patent.  *Cellular Commc'ns Equip. LLC v. Apple Inc.*, No. 14-cv-00251, 2016 WL 1146010, at *2 (E.D. Tex. Sept. 2, 2016).

then for the reasons set forth in response to MIL #3 above, that evidence is directly relevant to infringement and damages issues and should be allowed.[15]

If Adobe is attempting to exclude evidence of the royalty base for the accused products, then Adobe is once again attempting to re-argue an issue related to the Entire Market Value Rule that it already argued in a *Daubert* motion and that this Court already rejected. Dkt. 1156 at 2. This seems to be the most logical explanation for the motion, and while Adobe indicates that it is "mindful of the Court's *Daubert* ruling" (Adobe Mem. at 28 n.16), it apparently has no concerns with raising the same issue over and over again, needlessly driving up litigation costs and burdening the Court. The Court has already determined that Mr. Wagner's damages analysis was based on "sound scientific principles, permissible data sets, and proper expert analyses" (Dkt. 1156 at 2), and the Court should reject Adobe's attempt to exclude evidence that this Court has already determined was properly considered.

## XI. MIL #11: The Court Should Not Preclude TecSec From Offering Argument, Evidence, Or Testimony On Adobe's Specific Intent To Induce Or Willfully Infringe Based On Conduct After Patent Expiration

Adobe's MIL #11 seeks to preclude TecSec from presenting argument, evidence, or testimony on Adobe's alleged specific intent to induce or willfully infringe based on conduct after patent expiration. Adobe Mem. at 29-30. At issue is the February 15, 2009 blog post through which Adobe has for almost a decade been instructing its customers and the public at large on how to encrypt documents in a manner that infringes the asserted patent claims. *See* Adobe Ex. 34 (Blog posting: Packaging options for encrypted PDFs (PX-0069)).[16] Specifically,

---

[15] *See Digital Reg. of Tex., LLC v. Adobe Sys., Inc.*, No. 12-cv-1971, 2014 WL 4090550, at *6 (N.D. Cal. Aug. 19, 2014) (allowing plaintiff use of "global figures" to the extent necessary to establish the foundation for damages calculations and requesting redactions of figures "if practicable").

[16] The blog post can still be accessed at: http://blogs.adobe.com/security/2009/02/packaging_options_for_encrypte.html.

Adobe seeks to preclude TecSec from mentioning at trial that the blog post is still accessible following expiration of the asserted patents on October 18, 2013, or from referring to or introducing as evidence the copies of the blog post that are in TecSec's exhibit list and reflect access dates of September 26, 2014 and May 1, 2018.

TecSec has no intention of basing its infringement or damages case on conduct **after** the expiration of the asserted patents. However, to the extent Adobe argues at trial that the claimed systems and methods lack value, TecSec should be permitted to present argument, evidence or testimony of how long the blog post has been publicly available. For example, in assessing the value of the claimed technology to Adobe, TecSec's **damages expert** noted that the blog post has been available to the public since its creation in 2009 through this very day. Ex. 17 (Excerpt of Expert Report of Michael J. Wagner, January 30, 2018, at ¶152). Presumably, had the technology lacked value, Adobe would have never created or posted the blog in the first place, and certainly would not have made it available to its customers and the public for so long. The blog post at issue has been up for almost a decade is certainly relevant to show that the technology described in the blog post is valuable to Adobe and its customers. *Lucent Techs., Inc. v. Microsoft Corp.*, No. 07-CV-2000 H (CAB), 2011 WL 13101230, at *2 (S.D. Cal. Feb. 4, 2011) (denying motion to exclude evidence of products that practice the patented technology after the expiration date finding that the later products can be relevant to show commercial value) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009) ("Consideration of evidence of usage after infringement started can, under appropriate circumstances, be helpful to the jury and the court.")); *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 597 F. Supp. 2d 897, 926 (N.D. Iowa 2009) (denying motion *in limine* to exclude

evidence relating to activities that were not performed in which the asserted patent was or will be in force).

Adobe has never contested (nor is there any evidence to the contrary) that the copies of the blog post in TecSec's exhibit list are the same blog post that has been publicly available since February 15, 2009 and throughout the entirety of this litigation. To the extent there are any concerns with the jury being told that the blog post has been publicly available following expiration of the patents, the jury will undoubtedly be instructed that a patent can only be infringed during its term, and that TecSec is not entitled to recover damages for any post-expiration activity. *See Audio MPEG, Inc. v. Dell, Inc.*, No. 2:15CV73, 2017 WL 4460759, at *9 (E.D. Va. Oct. 6, 2017) (placing limitations on the manner of introduction of evidence, rather than precluding admission of evidence, to address Rule 403 concerns, including unfair prejudice. A potential limiting instruction "will ensure that the jury will decide the question of infringement on proper grounds based on the evidence presented."); *Lucent*, 2011 WL 13101230, at *2 (denying motion to exclude products that practice the patented technology after the expiration date, concluding that a limiting instruction is appropriate to make clear to the jury that these products practice the patent technology after the patent expired and cannot be considered for damages.).

There is no other reason to exclude this evidence, and Adobe's MIL #11 should be denied.

## XII. Conclusion

In view of the preceding arguments, Adobe's motion *in limine* should be denied in its entirety.

Dated:  October 26, 2018

Respectfully submitted,

/s/ Michael A. Oakes
Michael A. Oakes (VSB #47245)
Ozzie Farres *(pro hac vice)*
Kevin E. Gaunt (*pro hac vice*)
Steven L. Wood (*pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201
moakes@huntonak.com
ofarres@huntonak.com
kgaunt@huntonak.com
swood@huntonak.com

Service Email: tecsec@huntonak.com

*Counsel for Plaintiff TecSec, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2018, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

/s/ Michael A. Oakes
Michael A. Oakes (VSB #47245)
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
moakes@huntonak.com

*Counsel for Plaintiff TecSec, Inc.*