# EXHIBIT 4

```
1                   IN THE UNITED STATES DISTRICT COURT

2                FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                          SAN JOSE DIVISION

4
    IN RE GOOGLE DIGITAL                 )  CV-20-3556-BLF
5   ADVERTISING ANTITRUST               )  CV-20-8984-BLF
    LITIGATION                          )  CV-20-9092-BLF
6                                       )  CV-20-9321-BLF
                                        )  CV-21-0022-BLF
7                                       )  CV-21-0748-NC
                                        )
8                                       )  SAN JOSE, CALIFORNIA
                                        )
9                                       )  FEBRUARY 4, 2021
                                        )
10  _____     )  PAGES 1-39

11                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE BETH LABSON FREEMAN
12                 UNITED STATES DISTRICT JUDGE

13                    A P P E A R A N C E S

14

15      FOR THE PLAINTIFF:       BY:  DENA SHARP
        CV-21-0022-BLF           GIRARD SHARP LLP
16      CV-20-3556-BLF           601 CALIFORNIA STREET, SUITE 1400
                                 SAN FRANCISCO, CA 94108
17

18

19      FOR THE DEFENDANT:       BY:  JOHN EDWARD SCHMIDTLEIN
                                 WILLIAMS & CONNOLLY LLP
20                               725 12TH STREET, N.W.
                                 WASHINGTON, DC 20005
21

22              APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:        SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1          APPEARANCES CONTINUED:

 2          FOR THE PLAINTIFF:      BY:  TINA WOLFSON
            CV-20-3556-BLF          AHDOOT & WOLFSON, PC
 3                                  2600 WEST OLIVE AVENUE, SUITE 500
                                    BURBANK, CA 91505
 4

 5          FOR THE PLAINTIFF:      BY:  DAVID W. MITCHELL
            CV-20-8984-BLF          ROBBINS GELLER RUDMAN & DOWD LLP
 6                                  655 WEST BROADWAY, SUITE 1900
                                    SAN DIEGO, CA 92101
 7

 8          FOR THE PLAINTIFF:      BY:   PHILIP C. KOROLOGOS
            CV-20-9092-BLF          BOIES SCHILLER FLEXNER LLP
 9                                  575 LEXINGTON AVENUE
                                    NEW YORK, NY 10022
10

11          FOR THE PLAINTIFF:      BY:  CAROL L. O'KEEFE
            CV-20-9092-BLF          KOREIN TILLERY
12                                  505 NO 7TH ST., SUITE 3600
                                    ST. LOUIS, MO 63101
13

14          FOR THE PLAINTIFF:      BY:  ERIC L. CRAMER
            CV-20-9321-BLF          BERGER MONTAGUE PC
15                                  1818 MARKET STREET, SUITE 3600
                                    PHILADELPHIA, PA 19103
16

17          FOR THE PLAINTIFF:      BY:  ROBERT J. GRALEWSKI, JR.
            CV-21-00748-NC          KIRBY MCINERNEY LLP
18                                  600 B STREET, SUITE 2110
                                    SAN DIEGO, CA 92101
19

20          ALSO PRESENT:           DENNIS STEWART

21          ALSO PRESENT:           FRED ISQUITH

22

23

24

25
```

```
 1              SAN JOSE, CALIFORNIA              FEBRUARY 4, 2021

 2                     P R O C E E D I N G S

 3         (COURT CONVENED AT 10:23 A.M.)

 4              THE CLERK:  CALLING CASE 20-3556.  IN RE GOOGLE

 5    DIGITAL ADVERTISING ANTITRUST LITIGATION.

 6              COUNSEL, PLEASE STATE YOUR APPEARANCES.

 7              MS. SHARP:  GOOD MORNING, YOUR HONOR.

 8         DENA SHARP FROM GIRARD SHARP ON BEHALF OF THE PLAINTIFFS.

 9         AND JUST SO WE ARE CLEAR ABOUT WHICH PLAINTIFFS ARE IN

10    THAT CASE, BECAUSE I THINK THAT WILL BE RELEVANT FOR TODAY'S

11    PROCEEDINGS --

12              THE COURT:  YES.

13              MS. SHARP:  THAT IS THE HANSON LAW FIRM, YOUR HONOR,

14    SURE FREIGHT GLOBAL, DOING BUSINESS AS PRANA PETS, VITOR LINDO.

15         AND SEPARATELY, WE WILL TALK ABOUT THE  ASTARITA ACTION IN

16    A MOMENT, WHICH MY FIRM ALSO REPRESENTS, MR. ASTARITA, HE'S A

17    PUBLISHER CLIENT.

18              THE COURT:  OKAY.

19              MS. SHARP:  THANK YOU FOR HAVING US, YOUR HONOR.

20              MS. WOLFSON:  GOOD MORNING, YOUR HONOR.

21         TINA WOLFSON, AHDOOT & WOLFSON, ON BEHALF OF THE

22    PLAINTIFFS IN THE CONSOLIDATED COMPLAINT.

23              THE COURT:  GOOD MORNING.

24              MR. SCHMIDTLEIN:  THIS IS JOHN SCHMIDTLEIN FROM

25    WILLIAMS & CONNOLLY FOR DEFENDANT GOOGLE.
```

```
 1                 THE COURT:  GOOD MORNING.

 2                 THE CLERK:  OKAY, YOUR HONOR.

 3           MOVING ON TO CASE 20-8984 SWEEPSTAKES TODAY VERSUS GOOGLE,

 4     ET AL.

 5           COUNSEL, PLEASE STATE YOUR APPEARANCES.

 6                 MR. MITCHELL:  GOOD MORNING, YOUR HONOR.

 7           DAVID W. MITCHELL FROM ROBBINS GELLER RUDMAN & DOWD ON

 8     BEHALF OF PLAINTIFF SWEEPSTAKES TODAY.

 9                 THE COURT:  GOOD MORNING.

10                 MR. SCHMIDTLEIN:  AND THIS IS JOHN SCHMIDTLEIN AGAIN

11     FOR GOOGLE.

12                 THE CLERK:  AND MOVING ON TO 20-9092.

13           GENIUS MEDIA GROUP, ET AL. VERSUS ALPHABET, INC., ET AL.

14           COUNSEL, AGAIN, PLEASE STATE YOUR APPEARANCES.

15                 MR. KOROLOGOS:  GOOD MORNING, YOUR HONOR.

16           PHIL KOROLOGOS WITH BOIES SCHILLER FLEXNER FOR THE

17     PLAINTIFFS.

18                 THE COURT:  GOOD MORNING.

19                 MS. O'KEEFE:  AND GOOD MORNING, YOUR HONOR.

20           THIS IS CAROL O'KEEFE FROM KOREIN TILLERY FOR THE

21     PLAINTIFFS.

22                 MR. SCHMIDTLEIN:  AND JOHN SCHMIDTLEIN FOR THE

23     DEFENDANTS.

24                 THE CLERK:  CALLING CASE 20-9321.

25           STERLING INTERNATIONAL CONSULTING GROUP VERSUS GOOGLE.
```

```
1              COUNSEL, PLEASE STATE YOUR APPEARANCES.

2              MR. CRAMER:  GOOD MORNING, YOUR HONOR.

3         ERIC CRAMER FROM BERGER MONTAGUE FOR STERLING.

4              THE COURT:  OKAY.

5              MR. SCHMIDTLEIN:  JOHN SCHMIDTLEIN FOR DEFENDANT.

6              THE CLERK:  AND CALLING 21-0022.

7         ASTARITA VERSUS GOOGLE, ET AL.

8         COUNSEL, PLEASE STATE YOUR APPEARANCES.

9              MS. SHARP:  GOOD MORNING AGAIN, YOUR HONOR.

10        DENA SHARP FROM GIRARD SHARP ON BEHALF OF MR. ASTARITA.

11             MR. SCHMIDTLEIN:  AND JOHN SCHMIDTLEIN AGAIN FOR

12   DEFENDANTS.

13             THE CLERK:  AND LASTLY, CALLING CASE 21-0748.

14        JLASALLE ENTERPRISES VERSUS GOOGLE.

15        COUNSEL, PLEASE STATE YOUR APPEARANCES.

16             MR. GRALEWSKI:  GOOD MORNING, YOUR HONOR.

17        BOB GRALEWSKI FROM KIRBY MCINERNEY FOR THE PLAINTIFF

18   JLASALLE ENTERPRISES, LLC.

19             THE COURT:  AND MR. GRALEWSKI, THANK YOU FOR

20   RESPONDING SO QUICKLY.  WHEN I SAW YOUR REQUEST TO RELATE THE

21   CASES, I DIDN'T WANT TO MISS THE OPPORTUNITY TO HAVE YOU HERE

22   BECAUSE WE PROBABLY WON'T GET EVERYONE TOGETHER LIKE THIS

23   AGAIN.  SO THANK YOU FOR MAKING YOURSELF AVAILABLE.

24             MR. GRALEWSKI:  AND THANK YOU FOR YOUR INVITATION AND

25   ORDER, YOUR HONOR.
```

```
 1              MR. SCHMIDTLEIN:  AND JOHN SCHMIDTLEIN FOR DEFENDANT.

 2              MR. STEWART:  GOOD MORNING, YOUR HONOR.

 3         THIS IS DENNIS STEWART.  I JUST WANTED TO NOTE MY

 4    PRESENCE.

 5         ALTHOUGH THE CASE IS NOT YET BEFORE YOU, I'M PLAINTIFF'S

 6    COUNSEL IN A CASE CALLED MIKULA WEB SOLUTIONS, WHICH WAS FILED

 7    AND ASSIGNED TO JUDGE RYU.

 8         WE HAVE MET AND CONFERRED WITH DEFENDANTS, WHO AGREED TO

 9    OUR ADMINISTRATIVE MOTION TO RELATE THAT CASE, IT'S ANOTHER

10    PUBLISHER CASE, AND WE WILL BE FILING THAT MOTION TODAY.

11         I JUST WANTED TO BE PRESENT IN CASE I COULD BE HELPFUL OR

12    IF THE COURT WOULD LIKE US TO BE HERE.

13              THE COURT:  THANK YOU, MR. STEWART.

14         AND ALTHOUGH I CAN CATCH SOMETHING FILED DURING THE DAY, I

15    AM NOT CLAIRVOYANT AND KNOW THAT YOURS IS COMING, SO I'M GLAD

16    YOU STEPPED UP.

17         AND THEN I HAVE SOMEONE ELSE WHO IS HERE.

18              MR. ISQUITH:  GOOD AFTERNOON, OR GOOD MORNING,

19    YOUR HONOR, FRED ISQUITH.

20         I'M IN A VERY SIMILAR SITUATION AS MR. STEWART.  I

21    REPRESENT THE PLAINTIFFS IN THE NEGRON V. GOOGLE MATTER,

22    21-CV-801.  WE ARE RECENTLY ON FILE, AND WE JUST LEARNED OF

23    THIS CONFERENCE ABOUT LESS THAN 24 HOURS AGO.  AND WE ARE

24    REVIEWING, BUT WE ANTICIPATE BEING IN FRONT OF YOUR HONOR AS

25    WELL AND WE APPRECIATE BEING INVITED TO ATTEND TODAY.
```

```
 1              THE COURT:  AND MR. ISQUITH, WHAT FIRM ARE YOU WITH?

 2              MR. ISQUITH:  I AM WITH THE ISQUITH LAW GROUP.

 3         MY PRO HAC MOTION, YOUR HONOR, WILL ALSO BE COMING

 4    SHORTLY.

 5              THE COURT:  I ONLY ASK BECAUSE SOMEONE WITH THAT NAME

 6    WAS ASSOCIATED WITH MY FATHER-IN-LAW'S FIRM MANY YEARS AGO,

 7    MAYBE IT WAS YOUR FATHER.

 8              MR. ISQUITH:  FRED ISQUITH, SENIOR.

 9         HE WAS WITH WOLF HALDENSTEIN A YEAR AGO AND NOW IT'S --

10              THE COURT:  OKAY.  ALL RIGHT.

11         ANYWAY, MY FATHER, REST IN PEACE, HAS BEEN GONE MANY

12    YEARS, BUT IT'S AN UNUSUAL NAME, SO IT'S NICE TO HAVE YOU HERE.

13              MR. ISQUITH:  THANK YOU, YOUR HONOR.

14              THE COURT:  OKAY.  LET ME MAKE A COUPLE COMMENTS.

15         I'M SORRY WE GOT OFF TO A LATE START WITH THE OTHER

16    MATTERS.  AFTER I SET THIS, I GOT A TRO, SO OF COURSE THAT TOOK

17    A LITTLE TIME THIS MORNING.

18         I AM TRYING -- MY GOAL TODAY IS TO START THE CONVERSATION

19    ABOUT HOW WE CAN MOST EFFICIENTLY PROCEED WITH THESE CASES.

20         CLEARLY, MORE WILL BE FILED, THAT'S NOT A SURPRISE.  AND

21    IT DOES APPEAR THAT THE WEIGHT OF THE CASES IS TOWARD THE

22    PUBLISHER SIDE, ALTHOUGH I DON'T KNOW WHY THAT IS.  AND MAYBE

23    THAT'S TEMPORARY, AND IT DOES APPEAR THAT THERE IS AGREEMENT

24    THAT THE PUBLISHERS CASE SHOULD BE CONSOLIDATED AND A

25    CONSOLIDATED COMPLAINT FILED, AND I APPRECIATE THAT, BUT TO ME,
```

```
 1        THAT'S NOT NECESSARILY WHERE I WANT TO END UP.

 2            SO I ORIGINALLY WAS WORKING ON THE INITIAL CASE, WHICH WE

 3     NOW CALL IN RE GOOGLE DIGITAL ADVERTISING.  AND THAT CASE

 4     ALLEGES CLASSES -- AND MS. SHARP, YOU CAN HELP ME OUT HERE,

 5     IT'S YOUR CASE, BUT IT IS BOTH ON THE PUBLISHER SIDE AND THE

 6     ADVERTISER SIDE.

 7            AND THAT DOESN'T SURPRISE ME, BECAUSE FRANKLY, OVER THE

 8     YEARS, I'VE HAD CASES THAT ARE NOT ANTITRUST BUT THAT ARE

 9     CONTRACT CASES WHERE I GET ADVERTISERS AND PUBLISHERS AND THE

10     AD WORDS PROGRAMS, AND I KNOW IT'S TWO SIDES PUSHING AGAINST

11     THE MIDDLE, GOOGLE BEING THE MIDDLE IN THAT, MR. SCHMIDTLEIN,

12     BUT I RELATED THESE CASES BECAUSE I HAD BOTH PUBLISHERS AND

13     ADVERTISERS.

14            AND I CERTAINLY RECOGNIZE THERE WOULD BE DIFFERENT

15     CLASSES, BUT I DON'T THINK THE CLAIMS ARE SIGNIFICANTLY

16     DIFFERENT.  THE MEASURE OF DAMAGES WOULD BE CLEARLY DIFFERENT,

17     AND I DON'T LOOK AT IT AS A SINGLE POT, AND EACH SIDE IS VYING

18     FOR ITS SHARE OF THAT POT, IF THERE'S LIABILITY.

19            BUT I'M NOT CONVINCED THAT IT IS EFFICIENT FOR THE COURT

20     TO BREAK THIS INTO TWO CASES, BECAUSE MS. SHARP STILL HAS WHAT

21     ARE NOW TWO SEPARATE CASES, ASTARITA, AND THE ORIGINAL CASE,

22     THAT ARE BOTH PUBLISHER AND ADVERTISER.

23            AND SO I'M GOING TO MAKE ONE MORE COMMENT THEN I WANT TO

24     HEAR YOUR RESPONSES.  WHAT I'M INCLINED TO DO IS TO ALLOW THE

25     PUBLISHERS TO INITIALLY DEVELOP A CONSOLIDATED PUBLISHER
```

1    COMPLAINT ON WHICH I CAN HEAR A SINGLE MOTION TO DISMISS, WHICH

2    I'M SURE THERE WILL BE, AND MAYBE THERE WILL BE MULTIPLE

3    ROUNDS, BUT ONE MOTION TO DISMISS, AND TO CLEAN UP THE

4    PLEADINGS.

5         AND SINCE MS. SHARP IS REPRESENTING MR. ASTARITA, I

6    PRESUME THAT THE ADVERTISER CASES ARE -- THAT HIS CASE WILL BE

7    CONSOLIDATED INTO THE INITIAL CASE, WHICH I THINK THERE'S A

8    MOTION TO DISMISS PENDING ON.

9              MS. SHARP:  YES, YOUR HONOR.

10             THE COURT:  AND MS. SHARP, THAT ONLY WOULD LEAVE OPEN

11   HOW I HANDLE THE MOTION TO DISMISS ON THE PUBLISHER ASPECT OF

12   THAT PENDING MOTION, IF THERE'S GOING TO BE A CONSOLIDATED

13   COMPLAINT.

14        BUT LET ME BE REALLY CLEAR, ONCE I HAVE THE PLEADINGS

15   CLEARED, IT WOULD BE MY INTENTION TO CONSOLIDATE ALL OF THESE

16   CASES INTO A SINGLE ACTION.

17        AND TO THE EXTENT THAT THERE IS LEAD COUNSEL AND WE NEED

18   TO HAVE A DIFFERENT LEAD COUNSEL FOR THE ADVERTISER SIDE OF IT,

19   I'M GLAD TO DO ALL OF THAT.  YOU ALL ARE USED TO WORKING ON

20   PLAINTIFF COMMITTEES OF LEAD COUNSEL AND DIVIDING UP THE WORK.

21   BUT I ALSO -- YOU KNOW, AND I WANT TO HAVE A GOOD PROTOCOL FOR

22   DISCOVERY SO THAT YOU CAN MOVE ALONG, BUT I RELATED THESE CASES

23   BECAUSE I SAW IT AS ONE CASE.  AND I SAW IT AS ONE CASE BECAUSE

24   MS. SHARP INITIALLY DEFINED IT AS BOTH PUBLISHER AND

25   ADVERTISER, AND SO THAT MERGING HAS BEEN DONE NOW, FOR ALMOST

```
 1        TWO YEARS I'VE BEEN DEALING WITH A CASE WITH BOTH.

 2              THOSE ARE MY COMMENTS.  LET ME START WITH MS. SHARP, YOU

 3        HAVE THE SENIORITY HERE AT THE TABLE, I THINK.

 4              MS. SHARP:  THANK YOU, YOUR HONOR.

 5              GOOD MORNING.  WE APPRECIATE THE COURT'S COMMENTS.

 6              NEEDLESS TO SAY, WE AGREE WITH YOUR ASSESSMENT OF THE

 7        CASE.  WE WOULDN'T HAVE PLED IT THE WAY WE DID UNLESS WE

 8        THOUGHT THAT IT MADE SENSE TO DO THAT.

 9              WE ALSO AGREE WITH YOUR HONOR'S ASSESSMENT ABOUT WHAT HAS

10        BEEN CHARACTERIZED AS A TENSION BETWEEN THE PLAINTIFFS.  WE

11        DEAL WITH CASES, COMPLEX CASES, ALL THE TIME IN WHICH THERE ARE

12        VARIOUS GROUPS OF PLAINTIFFS THAT MAY BE POSITIONED SOMEWHAT

13        DIFFERENTLY, RELATIVE TO ONE ANOTHER, AND YET THE EFFICIENCIES

14        TO BE GARNERED BY PROCEEDING ON A TRULY COORDINATED OR

15        CONSOLIDATED, IF THE COURT THINKS THAT'S THE APPROPRIATE WAY TO

16        PROCEED, CERTAINLY REBALANCES THE BENEFIT OF THE CLASS OR

17        CLASSES BECAUSE THEY RECEIVE MUCH MORE EFFICIENT REPRESENTATION

18        FROM LEAD COUNSEL.  SO ALL AGREEMENT THERE.

19              FROM WHAT YOUR HONOR IS SAYING, IT SOUNDS LIKE THERE IS AT

20        LEAST AGREEMENT, AND ALSO THAT THERE OUGHT TO BE A CONSOLIDATED

21        COMPLAINT ON THE PUBLISHER SIDE.

22              AS I SAID, WE SAW FIT TO PLEAD IT ONE WAY, WE ALSO

23        RECOGNIZE THERE ARE A LOT OF COMPETENT, EXPERIENCED LAWYERS WHO

24        ARE LOOKING AT A CASE.  WE LIKE TO THINK WE ARE REASONABLE

25        PEOPLE AND WE ARE PREPARED TO PROCEED ON TWO SEPARATE
```

```
1    COMPLAINTS, IF THAT MAKES SENSE.

2         ONE CASE MANAGEMENT POINT I WOULD LIKE TO MAKE SINCE I

3    HAVE THE FLOOR NOW, YOUR HONOR, WOULD BE AS FOLLOWS.

4         IF THE COURT IS INCLINED TO DO TWO SEPARATE COMPLAINTS, IT

5    MAY MAKE SENSE, FOR PURPOSES OF ORDERLY CASE MANAGEMENT, FOR US

6    TO TAKE ANOTHER LOOK AT THE WAY THE COMPLAINT THAT WE CURRENTLY

7    HAVE WITH A MOTION TO DISMISS PENDING, TO ASSESS WHETHER IT

8    WOULDN'T BE BETTER IF WE ARE GOING TO BE ASSERTING CLAIMS ON

9    BEHALF OF PUBLISHER PLAINTIFFS ANYWAY IN A SEPARATE COMPLAINT,

10   TO TAKE STOCK.

11        WE UNDERSTAND WE ARE NOT THE ONLY LAWYERS WHO ARE

12   INTERESTED IN THE CASE NOW, AND WE ARE PREPARED TO WORK

13   COLLABORATIVELY WITH OUR COLLEAGUES HERE, IT MAY MAKE SENSE FOR

14   US TO HIT THE PAUSE BUTTON FOR A MOMENT ON THE PLEADINGS, WHERE

15   THEY STAND, AND FOR US TO MAKE A DETERMINATION OF WHETHER WE

16   OUGHT TO REFINE THE WAY THAT WE HAVE PLEAD THE COMPLAINT THAT'S

17   CURRENTLY THE OPERATIVE COMPLAINT.

18        LARGELY BECAUSE, AS YOUR HONOR NOTED, WE DID DEFINE BOTH

19   ADVERTISERS AND PUBLISHERS WITHIN THAT CLASS, AND IT'S NO

20   SECRET THAT GOOGLE'S MOTION TO DISMISS, THE LEADING ARGUMENT IS

21   THAT THE RELEVANT MARKET IS NOT DEFINED THE WAY THAT THEY THINK

22   IT OUGHT TO BE.  AND MY COLLEAGUES ON THE PUBLISHER SIDE, I

23   THINK WOULD ALSO SAY, LOOK, WE HAVE SOME, PERHAPS, DIFFERING

24   OPINIONS ABOUT HOW TO DEFINE THAT MARKET.

25        AGAIN, REASONABLE MINDS CAN DIFFER ON THESE THINGS.  WE
```

1    ARE PREPARED TO WORK THROUGH IT, BUT FROM A CASE MANAGEMENT

2    PERSPECTIVE, THAT WOULD BE THE ONE SUGGESTION WE MIGHT MAKE.

3          WE SPOKE WITH GOOGLE'S COUNSEL ABOUT IT YESTERDAY, AND TO

4    BE FAIR, WE KNOW EVERYBODY IS BUSY, SO WE HAVEN'T RECEIVED A

5    RESPONSE FROM THEM.  WE UNDERSTAND THAT.

6          BUT THAT WOULD BE THE ONE POINT THAT WE WOULD MAKE,

7    YOUR HONOR.  OTHER THAN THAT, EVERYTHING THAT THE COURT IS

8    THINKING, MAKES A WHOLE LOT OF SENSE TO US, FROM MY

9    PERSPECTIVE, SUBJECT TO ANY OF THE VIEWS OF MY COLLEAGUES HERE.

10         THE COURT:  JUST TO FINISH UP, BEFORE I MOVE ON.

11         SO MS. SHARP, YOU WOULD BE SUGGESTING THAT MR. SCHMIDTLEIN

12   AGREE TO ESSENTIALLY TERMINATE HIS MOTION TO DISMISS WITHOUT

13   PREJUDICE TO RE-NOTICING IT AFTER WE GET THE CONSOLIDATED

14   PUBLISHER'S COMPLAINT ON FILE.

15         MS. SHARP:  THAT'S RIGHT, YOUR HONOR.

16         AND I WOULD ALSO PROPOSE THAT IT MAY MAKE SENSE FOR THOSE

17   OF US THAT PLEAD WHAT'S KNOWN AS THE DIGITAL ADS COMPLAINT,

18   TAKE ANOTHER LOOK AT THAT, IN LIGHT OF THE FACT THAT WHAT IS

19   GOING TO HAPPEN IS THAT WE ARE GOING TO HAVE A SEPARATE

20   COMPLAINT THAT WILL BE CHALLENGED, THAT IN ALL CANDOR AND

21   FAIRNESS, PROBABLY INCLUDING AT LEAST SOME OF THE IDEAS AND

22   CONCEPTS THAT ARE CURRENTLY SET OUT IN THE OPERATIVE COMPLAINT.

23         THE COURT:  OKAY.  THAT'S HELPFUL.

24         ALL RIGHT.  THEN MR. SCHMIDTLEIN, I'M GOING TO LET YOU

25   FINISH UP HERE, BECAUSE YOU ARE GOING TO BE COMMENTING ON ALL

```
 1        OF THESE.

 2             IN TERMS OF THE -- I DON'T KNOW WHETHER -- WELL, LET ME

 3        JUST START AT THE TOP HERE.

 4             MR. MITCHELL, ON BEHALF OF SWEEPSTAKES, WOULD YOU LIKE TO

 5        MAKE ANY COMMENTS?

 6                  MR. MITCHELL:  YOUR HONOR, THANK YOU.

 7             DAVID MITCHELL.  THE SWEEPSTAKES CASE, THE GENIUS CASE AND

 8        THE STERLING CASE, AS YOU SAW, FILED NEARLY IDENTICAL

 9        SUBMISSIONS.

10             AND WE HUDDLED, AND FOR THE SAKE OF EFFICIENCY, WE WOULD

11        SUGGEST THAT MR. KOROLOGOS FROM THE BOIS SCHILLER FIRM ADDRESS

12        THE COURT ON OUR BEHALF.

13                  THE COURT:  OKAY.  MR. KOROLOGOS.

14                  MR. KOROLOGOS:  THANK YOU, YOUR HONOR.

15             FIRST, I THINK WE ARE ALL IN AGREEMENT THAT THERE OUGHT TO

16        BE A SEPARATE PUBLISHERS COMPLAINT.

17             IN TERMS OF THE EXISTING CONSOLIDATED COMPLAINT, ON WHAT I

18        WILL CALL THE ADVERTISER SIDE, I WOULD NOTE THAT NONE OF THE

19        CLASS REPRESENTATIVES IN THAT ACTION ARE PUBLISHERS.  AND THERE

20        WERE NONE BRINGING THOSE KINDS OF CLAIMS UNTIL MR. ASTARITA

21        FILED HIS CASE THIS YEAR, ON JANUARY 4TH I THINK IT WAS, WHICH

22        IS AFTER EACH OF SWEEPSTAKES, GENIUS MEDIA AND STERLING

23        INTERNATIONAL.

24             SO WHILE THAT CASE DOES TALK ABOUT THE SAME AD TECH

25        MARKETPLACE, IT IS FROM THE ADVERTISER'S PERSPECTIVE
```

1    NECESSARILY, BASED ON WHO THOSE CLASS REPRESENTATIVES ARE.

2         OUR CLIENTS ARE PUBLISHERS, IF YOU WILL, THEY ARE THE

3    OPPOSITE SIDE OF THE TRANSACTIONS THAT OCCUR WITH GOOGLE IN THE

4    MIDDLE.  AND OUR PERSPECTIVE, AND OUR ALLEGATIONS OF THE

5    WRONGDOING THAT GOOGLE ENGAGED IN, ARE DIFFERENT FOR PUBLISHERS

6    THAN THEY ARE FOR ADVERTISERS.

7         I THINK THAT THAT AT LEAST REQUIRES, AS SEEMS TO BE

8    AGREEMENT, THAT THERE WOULD BE A SEPARATE COMPLAINT AND

9    SEPARATE MOTIONS DIRECTED TO THAT COMPLAINT, IF THERE ARE GOING

10   TO BE SUCH MOTIONS.  WE THINK THAT THAT OUGHT TO RESULT IN

11   SEPARATE CONSOLIDATION OF THE CASES AND SEPARATE CLASS COUNSEL,

12   INCLUDING TO AVOID CONFLICTS.

13        WHILE I THINK YOUR HONOR IS RIGHT THAT IT'S NOT

14   NECESSARILY THE CASE THAT THERE IS A SINGLE POOL OF CASH, THAT

15   BOTH SIDES WILL BE FIGHTING OVER, THERE HOWEVER, ARE ECONOMIC

16   ANALYSIS THAT THERE IS ESSENTIALLY AN OVER CHARGE OF GOOGLE TO

17   THE MIDDLE FROM WHAT IT TAKES FROM ADVERTISERS AND WHAT IT

18   GIVES OFF TO PUBLISHERS.  AND AS A RESULT, THERE WILL BE

19   COMPETING INTERESTS THERE WHICH WILL REQUIRE, WE BELIEVE,

20   SEPARATE CLASSES AND SEPARATE COUNSEL IN ORDER TO PRESERVE THE

21   EFFICACY OF THOSE TWO CLASSES.

22        SO PERHAPS THIS MAY BE CLEARER UPON THE FILING OF A

23   CONSOLIDATED COMPLAINT ON BEHALF OF PUBLISHERS AND WHATEVER

24   MS. SHARP DECIDES TO ADJUST WITH RESPECT TO THE ADVERTISER

25   SIDE.

```
 1              SO WE WOULD LIKE TO LEAVE OPEN THE POSSIBILITY OF --

 2                   THE COURT:  SURE.

 3              WHAT I'M HEARING FROM YOU IS THAT, ULTIMATELY, THERE MAY

 4         BE -- IT MAY BE APPROPRIATE FOR ME TO SEVER MS. SHARP'S

 5         PUBLISHER CLAIMS AND PUT THEM INTO YOUR PUBLISHER CASE SO

 6         THAT -- BECAUSE I'M NOT GOING TO HAVE TWO CASES ON PUBLISHERS

 7         GOING TO TRIAL SEPARATELY.

 8                   MR. KOROLOGOS:  WE THINK THAT'S EXACTLY RIGHT.  AND

 9         WE THINK THERE OUGHT TO BE A SEPARATE GROUP OF ADVERTISERS WITH

10         ADVERTISER CLAIMS AND A SEPARATE GROUP OF PUBLISHERS WITH

11         PUBLISHER CLAIMS.

12              THERE WILL BE SOME OVERLAP, CERTAINLY, IN DISCOVERY, SAME

13         DEFENDANTS, SAME MARKETPLACE, SO COORDINATION, WE THINK, IS

14         PARAMOUNT AND ABSOLUTELY NECESSARY.  BUT WE THINK THAT THE

15         THEORIES, THE COMPETING INTERESTS, ON AT LEAST DAMAGES AND THE

16         COMPETING HARMS ON OPPOSITE ENDS OF THIS SPECTRUM OF

17         TRANSACTIONS, WILL REQUIRE SEPARATE ACTIONS PARTICULARLY FOR

18         TRIAL, AND THEREFORE FURTHER PROCEDURES THAT PREDATE TRIAL.

19                   THE COURT:  ALL RIGHT.  THANK YOU.  THAT'S HELPFUL.

20              AND SO -- AND MR. CRAMER, WAS THERE ANYTHING YOU WANTED TO

21         ADD FOR STERLING?

22                   MR. CRAMER:  NO.  WE OBVIOUSLY AGREE WITH

23         MR. KOROLOGOS.

24              AND I WOULD JUST EMPHASIZE TO YOUR HONOR, IN TERMS OF THE

25         DUTY OF LOYALTY REQUIRED, ESPECIALLY WITH CLASS COUNSEL, THAT
```

1     THERE NEEDS TO BE, IN OUR VIEW, SEPARATE CLASS COUNSEL FOR

2     ADVERTISERS AND PUBLISHERS.  I DON'T HEAR A DISAGREEMENT HERE

3     AMONGST MY COLLEAGUES, BUT I JUST WANTED TO EMPHASIZE THAT TO

4     YOUR HONOR.

5          I THINK GOOGLE MIGHT EXPLOIT PROBLEMS OF ADEQUACY OF

6     COUNSEL OR ADEQUACY OF CLASS REPRESENTATIVES, IF THERE WERE

7     DUAL LOYALTIES IN THAT RESPECT.

8          THE COURT:  OKAY.

9          WELL, I MEAN, I CAN CERTAINLY ADDRESS SEPARATE CLASSES

10    WITHIN THE SAME CASE, THE DUTY OF LOYALTY BECOMES, REALLY --

11    IT'S ALWAYS IMPORTANT IN CLASS ACTIONS, THERE IS SOME BENDING

12    OF THE STRICT CONCERNS ABOUT THESE CONFLICTS, AND -- BUT I HEAR

13    YOU ON THAT.

14         LET ME JUST ASK THEN, I'VE GOT MR. GRALEWSKI, YOU ARE NOT

15    ACTUALLY PART OF THIS YET, BUT I THINK YOU SAID IT WAS

16    UNOPPOSED AND I WILL PROBABLY BE BRINGING YOU IN UNDER THIS

17    TENT WITHIN A DAY.

18         ANY COMMENTS YOU WANTED TO MAKE?

19         MR. GRALEWSKI:  THANK YOU, YOUR HONOR.

20    BOB GRALEWSKI.  THANK YOU FOR THE OPPORTUNITY.

21         NO.  WE ALSO HAD AN OPPORTUNITY TO COORDINATE WITH

22    MR. KOROLOGOS AND OTHERS, AND HE HAS ARTICULATED OUR POSITION.

23    THANK YOU.  AND MR. CRAMER.

24         THE COURT:  OKAY.  THANK YOU.

25         AND MR. STEWART?

```
 1              MR. STEWART:  THANK YOU, YOUR HONOR.

 2         YES.  OUR VIEWS COINCIDE WITH MR. KOROLOGOS AND

 3    MR. CRAMER.

 4              THE COURT:  GREAT.  OKAY.

 5         ALL RIGHT.  MR. SCHMIDTLEIN, LET ME RETURN TO YOU, AND

 6    THEN I THINK I WILL PROBABLY ULTIMATELY TURN BACK TO MS. SHARP,

 7    BECAUSE SOME ISSUES HAVE BEEN RAISED WHICH SHE DID NOT ADDRESS.

 8              MR. SCHMIDTLEIN:  GOOD MORNING.

 9         THANK YOU, YOUR HONOR.

10         I THINK FROM GOOGLE'S PERSPECTIVE, WE ARE IN AGREEMENT

11    THAT ALL OF THE SORT OF NEWLY FILED PUBLISHER CASES SHOULD BE

12    SUBJECT TO AN AMENDED CONSOLIDATED COMPLAINT, AND I THINK

13    EVERYBODY IS IN AGREEMENT AS TO THAT.

14         THE QUESTION OF WHETHER MS. SHARP'S CASE SORT OF

15    ADEQUATELY SORT OF PLEADS A PUBLISHER CLAIM, IS I THINK ONE OF

16    THE ISSUES WE HIGHLIGHTED IN OUR MOTION TO DISMISS.

17              THE COURT:  YEAH.

18              MR. SCHMIDTLEIN:  THAT SHE DOESN'T HAVE A PUBLISHER

19    PLAINTIFF.

20         AND MR. ASTARITA, I THINK MR. KOROLOGOS MAY HAVE BEEN

21    MISTAKEN, MR. ASTARITA IS NOT AN ADVERTISER EITHER.  HE IS

22    SEEKING TO REPRESENT THE SAME TYPE OF DUAL CLASS, I BELIEVE,

23    BUT HE'S A PUBLISHER AS WELL.

24         SO FROM OUR PERSPECTIVE, YOU KNOW, ALL OF THE PEOPLE WHO

25    HAVE PUBLISHER CLAIMS NOW, WHETHER IT'S MR. ASTARITA OR WHETHER
```

```
 1    IT'S SWEEPSTAKES TODAY AND THE OTHERS WHO HAVE FILED, THEY

 2    SHOULD ALL BE FORCED TO FILE A CONSOLIDATED AMENDED COMPLAINT

 3    SO THEY WILL BE ON A SEPARATE COMPLAINT, SEPARATE FROM THE

 4    DIGITAL ADS COMPLAINT.

 5         BUT WE DO AGREE WITH YOUR HONOR THAT BECAUSE THE SUBJECT

 6    MATTER OF THE CASES DOES OVERLAP, THEY MAY BE DIFFERENT GROUPS

 7    OF PARTIES, BUT THE NATURE OF THE CLAIMS, WHEN YOU READ THE

 8    COMPLAINTS, ARE NEARLY IDENTICAL, OR THERE'S A LOT OF OVERLAP

 9    BETWEEN THEM.

10         AND SO WE THINK THE CASES SHOULD BE CONSOLIDATED INTO ONE

11    CASE, TWO COMPLAINTS, IF THAT MAKES SENSE, AND THAT IF WE EVER

12    GET PAST THE PLEADING STAGE AND THE CASES GO INTO DISCOVERY,

13    THE CASES SHOULD BE SUBJECT TO THE TYPE OF TIGHT,

14    SINGLE-SCHEDULE COORDINATION THAT CONSOLIDATION AFFORDS.  SO I

15    THINK WE ARE IN AGREEMENT THERE.

16         THE COURT:  OKAY.

17         MR. SCHMIDTLEIN:  BUT THE POINT THAT I DON'T AGREE

18    WITH THAT'S BEEN RAISED THUS FAR, AND I REALLY DON'T THINK

19    IS -- I HAVEN'T REALLY HEARD A GOOD JUSTIFICATION FOR IT, IS

20    MS. SHARP'S SUGGESTION THAT SHE SHOULD GET TO AMEND HER

21    COMPLAINT, THAT'S WHAT SHE'S REALLY ASKING FOR, NOT TO FILE A

22    CONSOLIDATED COMPLAINT, SHE'S ALREADY GOT A CONSOLIDATED

23    COMPLAINT.

24         AS YOUR HONOR WELL KNOWS, THE GRAND ATLAS AND THE DEVANEY

25    PLAINTIFFS, THEY FILED THEIR CASE, I THINK LAST MAY AND LAST
```

19

1    JUNE.  WE AGREED TO CONSOLIDATE THOSE WITH YOUR HONOR LAST

2    SUMMER.  THEY FILED AN AMENDED COMPLAINT IN SEPTEMBER, WE MOVED

3    TO DISMISS THAT COMPLAINT LAST FALL, AND THEY RESPONDED TO THAT

4    WITH AN AMENDMENT.

5         SO THEY HAVE NOW FILED THREE COMPLAINTS IN THIS CASE THUS

6    FAR.  AND WHAT I GUESS I'M HEARING NOW IS, CAN WE FILE ANOTHER

7    ONE.

8         WELL, MY CLIENT HAS NOW FILED TWO MOTIONS TO DISMISS

9    DIRECTED AGAINST THAT COMPLAINT.  AND BECAUSE I THINK WE NOW

10   SEEM TO HAVE -- WE MAY BE IN HEATED AGREEMENT THAT THE

11   PUBLISHERS REALLY DON'T BELONG IN HER COMPLAINT, OR TO THE

12   EXTENT SHE HAD SOME PUBLISHER CLAIM, I DON'T SEE HOW ANY OF

13   THOSE PLAINTIFFS WHO ARE ADVERTISERS CAN BRING THAT CLAIM,

14   THAT'S ALL GOING TO GET MOVED OVER TO THIS NEW CONSOLIDATED

15   AMENDED COMPLAINT THAT I THINK WE ALL AGREE NEEDS TO BE FILED.

16        AND SO FROM OUR PERSPECTIVE, YOU KNOW, THEY HAVE AN

17   OPPOSITION BRIEF DUE IN THE MIDDLE OF FEBRUARY HERE, IN ABOUT

18   11 DAYS, WE'VE GOT A HEARING DATE IN APRIL.  GOOGLE IS PREPARED

19   TO MOVE FORWARD AND HAVE THAT MOTION TO DISMISS PRACTICE PLAY

20   OUT ON THE ADVERTISER COMPLAINT THAT IS BEFORE YOUR HONOR.  AND

21   IN THE MEANTIME, THE PUBLISHER SIDE CAN SORT OF GET THEIR HOUSE

22   IN ORDER, GET CLASS COUNSEL ESTABLISHED, HOWEVER THAT'S GOING

23   TO PLAY OUT, WE DON'T TAKE A POSITION ON THAT, GET THEIR

24   CONSOLIDATED COMPLAINT.

25        AND ONCE WE SEE THAT, AS YOUR HONOR NOTED, WE MAY WELL

```
 1    DECIDE TO MOVE AGAINST THAT AS WELL.  BUT WE DON'T SEE A REASON
 2    WHY THE DIGITAL ADS FOLKS NEED TO FILE WHAT, FROM OUR
 3    PERSPECTIVE, WOULD BE A FOURTH COMPLAINT, AND START YET ANOTHER
 4    BRIEFING CYCLE.
 5            THE COURT:  MR. SCHMIDTLEIN, LET ME JUST ASK YOU A
 6    QUESTION.  I DON'T READ OPENING BRIEFS UNTIL A CASE IS FULLY
 7    BRIEFED, SO I HAVE NOT LOOKED AT YOUR MOTION TO DISMISS, BUT
 8    DOES IT MAKE SENSE WHEN I HAVE THE -- WHEN THE OPPOSITION IS
 9    FILED, TO SIMPLY TABLE ANY ARGUMENTS YOU MAKE ABOUT PUBLISHERS?
10    BECAUSE THERE WILL BE A CONSOLIDATED COMPLAINT FOR PUBLISHERS,
11    AND TO THE EXTENT MS. SHARP HAS CLIENTS SHE REPRESENTS WHO
12    WOULD CLAIM TO BE PUBLISHERS, THAT I SEVER THAT PART OF HER
13    CASE AND MOVE IT TO THE PUBLISHER SIDE?
14            MR. SCHMIDTLEIN:  I ACTUALLY THINK, YOUR HONOR,
15    THAT'S OBVIOUSLY A FAIR POINT.  I ACTUALLY DON'T THINK THAT
16    MS. SHARP HAS ANY PUBLISHERS WHO ARE PART OF THE DIGITAL ADS
17    AMENDED COMPLAINT RIGHT NOW.
18        YOU KNOW, I THINK WHAT I'M HEARING, AND MAYBE MS. SHARP --
19    I DON'T KNOW IF SHE'S PREPARED TO ADDRESS IT TODAY, BUT WHAT
20    SHE MAY DECIDE TO DO IN THAT OPPOSITION IS TO SAY IN LIGHT OF
21    THESE OTHER DEVELOPMENTS, WE WILL BASICALLY DROP CLAIMS, TO THE
22    EXTENT THAT MY ADVERTISERS WERE TRYING TO BRING CLAIMS ON
23    BEHALF OF ADVERTISERS AND PUBLISHERS, WE WILL DROP KIND OF THE
24    PUBLISHER SIDE OF IT.
25            AND IF THAT'S THE CASE, OBVIOUSLY THAT TAKES AWAY ONE OF
```

```
 1    OUR ARGUMENTS AND THAT SOLVES FOR THAT ISSUE.

 2           THE COURT:  ESSENTIALLY YOU WOULD BE WINNING THAT

 3    ARGUMENT, WOULDN'T YOU, MR. SCHMIDTLEIN.

 4           MR. SCHMIDTLEIN:  WELL, WE WOULDN'T, BUT I'VE GOT TO

 5    FIGHT THOSE FOLKS IN ANOTHER COMPLAINT, I UNDERSTAND.

 6           THE COURT:  YOU DO.

 7      OKAY.  ALL RIGHT.  AND MS. SHARP, I SAID I WAS GOING TO

 8    LET YOU FINISH UP BECAUSE SOME ISSUES HAVE BEEN RAISED --

 9           MR. ISQUITH:  SORRY, YOUR HONOR.  FRED ISQUITH.

10           THE COURT:  YES.

11           MR. ISQUITH:  I WANTED TO KIND OF TOUCH ON WHAT

12    MR. SCHMIDTLEIN SAID, AS IT MAY BE SOMEWHAT RELEVANT, BECAUSE

13    WE ALSO REPRESENT A SUBSET OF ADVERTISERS.  SO OUR CASE IS NOT

14    LUMPED IN WITH THE SET OF PUBLISHERS, WE REPRESENT INDIVIDUALS

15    WHO PLACED ADVERTISEMENTS ON FACEBOOK.

16      AND SO TO THE EXTENT THAT AN ADVERTISER CASE IS GOING TO

17    BE GOING FORWARD, YOU KNOW, WE WOULD LIKE TO BE INVOLVED IN

18    THAT, AND THINK THAT -- DON'T WANT TO BE LUMPED IN HERE WITH

19    THE PUBLISHERS, AND WE ARE HAPPY TO WORK WITH THE ADVERTISERS.

20           THE COURT:  SO OF COURSE, MR. ISQUITH, AND I'M SORRY

21    I DIDN'T GIVE YOU AN OPPORTUNITY BEFORE.

22      I DON'T KNOW THAT YOUR CASE WILL BE RELATED BECAUSE I

23    HAVEN'T SEEN IT.  YOU MENTIONED FACEBOOK, AND THAT COMES --

24    THAT'S DIFFERENT THAN THESE OTHER CASES IN TERMS OF THEIR

25    ALLEGATIONS, SO I'M A LITTLE CONCERNED.
```

```
 1          MR. ISQUITH:  SO YOUR HONOR, IT IS AGAINST GOOGLE,

 2    AND A LOT OF THE ALLEGATIONS ARE SIMILAR.  THE REASON WHY WE

 3    DIDN'T PUT THEM AS RELATED IS I NEEDED TO READ EVERYONE'S

 4    COMPLAINT TO MAKE SURE I KNEW WHAT EVERYONE'S ALLEGATIONS WERE,

 5    BUT WE DO THINK THAT THERE IS GOING TO BE SOME OVERLAP, AND

 6    FAIRLY SIGNIFICANT OVERLAP THAT WOULD HELP WITH COORDINATION IN

 7    OUR PARTICULAR MATTER.

 8       AND THAT'S WHY WE WILL MOST LIKELY PUT A RELATED MOTION IN

 9    FRONT OF YOUR HONOR.  BUT WE WANTED TO DO OUR DUE DILIGENCE

10    FIRST, DUE TO THE SLIGHT DIFFERENCES IN OUR CLASS AND THE

11    DAMAGES ISSUE, BUT WE DO REPRESENT ADVERTISERS AND I WANTED TO

12    MAKE THAT CLEAR.

13          THE COURT:  ALL RIGHT.  AND I APPRECIATE THAT.

14       I'M GOING TO LOOK AT EACH OF THE RELATION MOTIONS

15    SEPARATELY, AND IT WOULD RELATE TO THE DIGITAL AD CASE, BECAUSE

16    THAT'S THE MOTHER SHIP HERE, AND DETERMINE.  BUT ONCE YOU

17    MENTIONED FACEBOOK, I'M NOT -- YOU KNOW, I'M GOING TO BE

18    LOOKING AT THAT CAREFULLY.  I'M NOT SURE I'M GOING DOWN THAT

19    ROAD.

20          MR. ISQUITH:  UNDERSTOOD, YOUR HONOR.

21          THE COURT:  AND OF COURSE YOU FILED YOUR CASE

22    PREPARED TO LITIGATE IT SEPARATE FROM OTHER CASES, AND SO YOU

23    MAY GET THAT OPPORTUNITY, OR FACEBOOK MAY BE AT THE HEART OF

24    IT.  YOU DIDN'T NAME FACEBOOK THOUGH; IS THAT CORRECT?

25          MR. ISQUITH:  NO, YOUR HONOR.
```

```
 1              THE COURT:  OKAY.  I HEAR YOU ON THAT.

 2         WELL, I WILL JUST HAVE TO DECIDE ON THAT.

 3         AND THANK YOU, MR. ISQUITH.

 4              MR. ISQUITH:  THANK YOU.

 5              THE COURT:  AND MS. SHARP?

 6              MS. SHARP:  THANK YOU, YOUR HONOR.

 7         I WOULD HOPE THAT THE DISCUSSION THAT YOUR HONOR JUST

 8    HEARD LAYS BARE WHAT WE ARE PROPOSING, IN THE SENSE THAT THERE

 9    ARE A COUPLE OF THINGS THAT I THINK NEED TO HAPPEN HERE, AGAIN,

10    FOR THE ORDERLY PROSECUTION OF THE CASE.

11         THE FIRST IS APPOINTMENT OF LEADERSHIP.  AND AS YOUR HONOR

12    NOTED, WE HAVE BEEN BEFORE YOUR HONOR ON THIS CASE FOR QUITE

13    SOME TIME.  WE DIDN'T SEE THE NEED FOR 23(G) COUNSEL UNTIL THE

14    CLASS NEEDED IT, AND IT SEEMS LIKE THE CLASS IS NOW IN NEED OF

15    A BIT OF ORGANIZATION.  THAT'S POINT ONE.

16              THE COURT:  YEAH.

17              MS. SHARP:  AS WE SAID IN FRONT OF YOUR HONOR SEVERAL

18    MONTHS AGO, WE KNEW THAT THE SHAPE OF THIS TABLE WOULD CHANGE.

19         THE ONE THING THAT'S CERTAIN ABOUT A LARGE ANTITRUST CASE

20    AGAINST GOOGLE THAT INVOLVES STATE AND FEDERAL ENFORCERS IS

21    THAT THERE ARE GOING TO BE BOTH EXTRINSIC AND INTRINSIC FACTORS

22    THAT ARE GOING TO AFFECT THE ABILITY TO EXECUTE THE CASE IN AN

23    ORDERLY FASHION, SO WE UNDERSTAND THAT WE DON'T CONTROL

24    EVERYTHING.

25         TO THAT POINT, AND TO MR. SCHMIDTLEIN'S POINT ABOUT THE
```

1    PENDING MOTION TO DISMISS, WE CAN'T BLAME GOOGLE FOR WANTING TO

2    TAKE THIS SHOT AND THEN GETTING ANOTHER SHOT THEREAFTER.  AND

3    WE ALSO, OF COURSE, PLED THE COMPLAINT PREPARED TO PROCEED ON

4    IT.  BUT AS YOUR HONOR HEARD, THERE ARE ADDITIONAL CASES BEING

5    FILED.

6         A COUPLE OF POINTS I WOULD MAKE.  WHEN WE FILED OUR

7    COMPLAINT, OF COURSE THE PUBLISHER CASES WERE NOT HERE, THEY

8    WERE NOT IN FRONT OF YOUR HONOR.  AND WE -- AS I SAID, WE MADE

9    OUR JUDGMENTS ABOUT HOW TO PLEAD THE CLASS.  WE UNDERSTAND OUR

10   COLLEAGUES HAVE SOME DIFFERENT VIEWS, AND FROM OUR PERSPECTIVE,

11   WHILE GOOGLE, AS YOU SAY, MIGHT WIN THE PUBLISHER ARGUMENT, IN

12   THE ADVERTISER COMPLAINT, IF IT'S LITIGATED AS IT CURRENTLY

13   SITS, THAT REALLY PROBABLY WOULDN'T BE THE ULTIMATE DISPOSITION

14   OR A COMPLETE DISPOSITION OF THE ISSUES THAT THE COURT IS GOING

15   TO NEED TO REACH.

16        AND SITTING IN THE SHOES OF SOMEONE WHO DOES REPRESENT A

17   PUBLISHER, AS MR. ASTARITA IS OUR CLIENT, JUST TO CLARIFY THAT,

18   AND WE ARE PREPARED TO INCLUDE HIM IN A CONSOLIDATED PUBLISHER

19   COMPLAINT IF THAT IS WHAT THE COURT CONCLUDES IS THE

20   APPROPRIATE WAY TO PROCEED, IT WOULD SUGGEST TO US THAT IF WE

21   ARE GOING TO COORDINATE THESE CASES ON TWO SEPARATE TRACKS, THE

22   EXTENT OF COORDINATION OR CONSOLIDATION TO BE DETERMINED BY

23   THIS COURT, BUT IF WE ARE GOING TO DO THAT, IT DOES SEEM TO

24   MAKE SENSE TO DO THAT START TO FINISH, AS BEST WE CAN, AGAIN

25   WITH THE UNDERSTANDING THAT THERE ARE STILL SHOES THAT MAY

```
1    DROP.

2         AS YOUR HONOR IS AWARE, GOOGLE HAS FILED A 1404 MOTION TO

3    TRY TO BRING THE EASTERN -- THE TEXAS AG CASE, WHICH IS PENDING

4    IN THE EASTERN DISTRICT OF TEXAS HERE.  WE WILL SEE WHAT

5    HAPPENS THERE.

6         THE COURT:  LAST TIME E.D. TEX GAVE UP A CASE

7    VOLUNTARILY WITHOUT A MANDATE FROM THE FEDERAL CIRCUIT OR

8    ANOTHER CIRCUIT, I JUST WOULD LIKE TO KNOW IF YOU HAVE ANY

9    EXAMPLE, MS. SHARP.

10        MS. SHARP:  IT'S NOT MY MOTION, YOUR HONOR, AND

11   THERE'S A REASON FOR THAT, YEAH.

12        THE COURT:  AND YOU KNOW, I KNOW THOSE JUDGES WELL,

13   WE ALL KNOW THEM BY REPUTATION, BUT I WILL WAIT AND SEE WHAT

14   THEY DECIDE.

15        I WAS WAITING TO SEE WHETHER THERE WOULD BE ANY MOTION TO

16   MOVE THESE CASES TO TEXAS IF THE GOOGLE MOTION TO BRING THEM

17   HERE FAILS, BUT IT'S OUT OF MY HANDS.  I'M GLAD TO HANDLE THIS

18   HERE AS LONG AS IT'S HERE.

19        MS. SHARP:  IF I MAY, YOUR HONOR, WE ARE PLEASED TO

20   BE HERE.

21        IF I MAY, JUST ON LEADERSHIP, IT DOES SEEM TO ME THAT THE

22   TWO THINGS WE DO NEED TO DO NOW IS SET A PROCESS FOR

23   LEADERSHIP.

24        AND IT SEEMS THAT THE FOLKS ON THE PLAINTIFFS SIDE WOULD

25   PROBABLY BENEFIT FROM A BIT MORE DISCUSSION ABOUT HOW THAT
```

1    OUGHT TO BE STRUCTURED.

2         I WILL SAY WITH REGARD TO MR. CRAMER'S COMMENTS ABOUT THE

3    DUTY OF LOYALTY, AS THE COURT NOTED EARLIER IN THE PROCEEDINGS

4    HERE TODAY, WE VIEW THE PURPORTED TENSION OR CONFLICT ISSUES A

5    BIT DIFFERENTLY.  I DON'T SEE A MANIFEST OBVIOUS PROBLEM WITH

6    THERE BEING COUNSEL THAT REPRESENT BOTH TYPES OF CLIENTS.

7         OBVIOUSLY, THAT IS A STATEMENT THAT IS BENEFICIAL TO ME

8    AND MY FIRM SINCE WE REPRESENT BOTH KINDS, BUT THE POINT BEING

9    THAT I DON'T THINK THERE'S A CLEAR CUT CONFLICT OR DUTY OF

10   LOYALTY ISSUE HERE THAT WE SHOULD DECIDE ON THE FLY, AS IT

11   WERE.  TO ME, THE ORDERLY MANAGEMENT, ONCE AGAIN, WOULD SUGGEST

12   THAT WE TAKE A MOMENT HERE TO ASSESS HOW THESE COMPLAINTS OUGHT

13   TO BE PLEAD, THE EXTENT TO WHICH THEY SHOULD BE CONSOLIDATED

14   BEFORE YOUR HONOR, INCLUDING WHETHER ANY CONSOLIDATION UNDER

15   RULE 42(A) OUGHT TO BE FOR PRETRIAL PURPOSES OR FOR TRIAL

16   PURPOSES.

17        I HEARD ONE OF MY COLLEAGUES SAYING THERE OUGHT TO BE

18   SEPARATE TRIALS, BUT THAT, TO ME, WOULD SUGGEST SOME PRETTY

19   SIGNIFICANT INEFFICIENCIES, ALL OTHER THINGS EQUAL, GIVEN THE

20   FACT THAT GOOGLE IS RIGHT IN THE MIDDLE OF THIS CASE, AND AS

21   YOUR HONOR HAS NOTED, ITS CONDUCT AS THE MIDDLE MAN IN THIS AD

22   TECH THAT REALLY FORMS THE FOUNDATION OF THE ANTITRUST

23   VIOLATIONS HERE, FROM OUR PERSPECTIVE.

24        SO THERE'S A LOT TO BE DECIDED, AND FROM MY PERSPECTIVE,

25   THE THING TO DO IS TO SET A PROCESS.  WE ARE HAPPY TO FILE A

1    MOTION WITH YOUR HONOR CONCERNING THE PENDING MOTION TO DISMISS

2    RIGHT NOW, BUT AS I SAY, WE HAVE BEEN PREPARED TO GO FORWARD ON

3    THAT, BUT GIVEN THE EVENTS HERE AND GIVEN THE LIKELIHOOD THAT

4    ADDITIONAL CASES WILL BE FILED, IT MAY BE A BIT MORE JUDICIOUS

5    TO JUST HIT THE PAUSE BUTTON FOR A MOMENT, LET OURSELVES GET

6    ORGANIZED, AND THEN DECIDE HOW TO PROCEED.

7            THE COURT:  ALL RIGHT.

8      SO OF COURSE I WANT TO WORK TOWARD GETTING THE PLEADINGS

9    SETTLED SO THAT YOU REALLY KNOW WHAT YOU'RE LITIGATING.

10      AND IT SEEMS, MS. SHARP, THAT YOU REPRESENT ALL THE

11    ADVERTISERS THAT HAVE COME FORWARD SO FAR.  AND IT ALSO SEEMS

12    TO ME THAT EITHER ALL THE PUBLISHERS WILL BE CONSOLIDATED INTO

13    ONE CASE, OR YOUR ATTEMPT TO REPRESENT PUBLISHERS, YOUR

14    REPRESENTATION OF MR. ASTARITA, WHO IS A PUBLISHER, IS GOING TO

15    BE SEVERED AND GO INTO THE PUBLISHER CASE.

16      SO IT SEEMS LIKE THE REALM OF POSSIBILITY IS PRETTY SMALL

17    HERE, MY CHOICES ARE SMALL.  I DON'T THINK I CAN -- I WOULD

18    ACTUALLY LIKE TO PROCEED ON TWO SEPARATE COMPLAINTS UNTIL WE

19    SATISFY THE PLEADING.  AND THEN WHEN I CAN LOOK AT THE

20    PLEADING, I CAN DECIDE IF FURTHER CONSOLIDATION IS NEEDED.

21      AND I RECOGNIZE RIGHT NOW I'VE GOT A PENDING MOTION TO

22    DISMISS, WHERE I GATHER FROM MR. SCHMIDTLEIN, HE IS SEEKING TO

23    DISMISS YOUR PUBLISHER CLAIMS BECAUSE THERE IS NO PLAINTIFF

24    WITH STANDING TO REPRESENT, OR WHETHER -- MAYBE IT'S A

25    TYPICALITY ARGUMENT, I DON'T KNOW WHICH YOU'VE MADE ON THAT.

```
1          AND, I MEAN, IT DOESN'T MAKE SENSE FOR ME TO HAVE TO

2     DECIDE THAT IF I'VE GOT PUBLISHERS.  I MEAN, I'VE GOT AN

3     ABUNDANCE OF PUBLISHERS GOING FORWARD, SO IT JUST DOESN'T SEEM

4     TO MAKE SENSE TO HAVE TO LITIGATE THAT FOR NOTHING.  BUT IT

5     DOES MAKE SENSE FOR ME TO LOOK AT THE ADVERTISER CLAIMS BECAUSE

6     YOU'VE GOT THEM ALL.

7          AND YOU THE REPRESENT MR. ASTARITA, IS HE AN ADVERTISER OR

8     ONLY -- HE IS BOTH, ISN'T HE?

9               MS. SHARP:  HE'S A PUBLISHER, YOUR HONOR.

10              THE COURT:  HE'S A PUBLISHER.

11              MS. SHARP:  THAT'S RIGHT.

12              THE COURT:  SO THE ADVERTISING PART OF THIS CASE, WE

13    SHOULD FINISH THAT UP.

14         AND I WOULD URGE YOU TO CONSIDER EITHER MR. SCHMIDTLEIN'S

15    RECOMMENDATION THAT YOU SIMPLY DISMISS YOUR PUBLISHER CLAIM, OR

16    I SUPPOSE YOU COULD -- I MEAN, IT DOESN'T MAKE ANY SENSE TO

17    SEVER.  WHEREVER YOUR CLIENT IS, IS GOING TO BE THE MEMBER OF A

18    CLASS.  I DON'T KNOW THAT THEY WOULD BE A MEMBER OF A CLASS OF

19    PUBLISHERS.

20         SO I WOULD GO FORWARD WITH MR. SCHMIDTLEIN'S MOTION TO

21    DISMISS.  I PREFER TO ONLY GO FORWARD AS TO THE ADVERTISERS AND

22    LET ME LOOK AT THAT.

23         AND I DO -- WE DO NEED -- WE DO NEED TO HAVE A LEADERSHIP

24    COMMITTEE DEVELOPED.  AND TYPICALLY I WOULD ASK ALL OF THE

25    PLAINTIFFS'S COUNSEL TO MEET AND MAKE A RECOMMENDATION.  AND I
```

```
 1    NEED A LEAD COUNSEL, I NEED A COMMITTEE, I NEED -- YOU KNOW, I

 2    AM SURE YOU WILL ALL BE SENSITIVE TO THE NEED OF HAVING A

 3    DIVERSE GROUP OF ATTORNEYS ON THE LEADERSHIP COMMITTEE THAT

 4    WILL PROVIDE THE OPPORTUNITY FOR NEWER ATTORNEYS TO PARTICIPATE

 5    FOR FIRMS THAT ARE VERY EXPERIENCED, TO BE IN LEADERSHIP, AND

 6    FOR FIRMS THAT ARE UP AND COMING AS WELL.  BUT THAT'S WHAT

 7    EVERY JUDGE TELLS YOU, I DON'T NEED TO GO THROUGH THAT.

 8         WHAT I REALLY NEED IS A TIMELINE AS TO WHEN YOU WOULD

 9    EITHER SUBMIT TO ME A PROPOSAL, OR A MOTION FOR APPOINTMENT OF

10    LEAD COUNSEL.

11         AND SO LET ME GO BACK.  I WAS HEARING FROM MR. KOROLOGOS,

12    AS THE SPOKESPERSON, WHAT IS YOUR THINKING ON THAT?

13              MR. KOROLOGOS:  YOUR HONOR, WE HAD SUGGESTED THAT

14    SUCH APPLICATIONS BE PUT IN IN TWO WEEKS, ON FEBRUARY 18TH,

15    SUBJECT TO PEOPLE'S AVAILABILITY TO HAVE THE NECESSARY

16    DISCUSSIONS FOR HOPEFULLY REACHING AN AGREEMENT SO THAT A

17    STIPULATION COULD BE PUT IN.

18         WE WOULD PROPOSE THAT DATE, OR PERHAPS A WEEK LATER, JUST

19    TO GIVE PEOPLE SOME TIME.

20              THE COURT:  I THINK THAT MAKES SENSE, AND THAT

21    WOULD -- LET ME LOOK AT MY CALENDAR.  THAT WOULD BRING US RIGHT

22    TOWARD THE END OF FEBRUARY, SO I THINK THREE WEEKS MAKES SENSE.

23    FEBRUARY 25TH.

24              MR. KOROLOGOS:  THANK YOU, YOUR HONOR.

25              MR. CRAMER:  YOUR HONOR, THIS IS ERIC CRAMER.
```

```
1            MAY I ASK A POINT OF CLARIFICATION?

2            SO ONE QUESTION IS WHETHER YOUR HONOR IS ASKING FOR A

3    LEADERSHIP COMMITTEE FOR ADVERTISERS AND PUBLISHERS TOGETHER,

4    OR SIMPLY A LEADERSHIP COMMITTEE FOR PUBLISHERS SO THAT THE

5    PUBLISHER COUNSEL CAN GET TOGETHER AND HAVE PEOPLE IN CHARGE OF

6    FILING AND DECIDING ON AN AMENDED COMPLAINT?

7            THE COURT:  THANK YOU FOR THAT CLARIFICATION, I THINK

8    THAT'S IMPORTANT.

9            FOR NOW, I'M GOING TO LIMIT IT TO PUBLISHERS.  AND YOU

10   ALL -- BECAUSE MS. SHARP REPRESENTS THE ONLY ADVERTISER, SHE

11   DOESN'T NEED A COMMITTEE FOR ADVERTISERS.

12           I WANT TO MOVE FORWARD, INITIALLY, ON TWO SEPARATE

13   COMPLAINTS.  I THINK IT WILL HELP ME TO FOCUS ON THE ISSUES

14   THAT ARISE.  IT MAY BE SHORT LIVED, I WANT TO BE CLEAR ON THAT,

15   AND I EXPECT CONSOLIDATION OF DISCOVERY, SO I'M NOT --

16           MR. ISQUITH:  YOUR HONOR, SORRY FOR INTERRUPTING.

17           FRED ISQUITH AGAIN, YOUR HONOR.

18           I KNOW WE ARE NOT RELATED YET, BUT AS A POINT OF

19   CLARIFICATION, WE DO HAVE ADVERTISERS AS WELL.  SO I KNOW WE

20   ARE NOT RELATED AND WE ARE GOING TO GET THAT MOTION IN, BUT TO

21   THE POINT THAT, YOU KNOW, SOME COORDINATION, I'M HAPPY TO WORK

22   WITH MS. SHARP ON THE ADVERTISERS, I'VE WORKED WITH HER BEFORE,

23   BUT I JUST WANTED TO -- IF YOU WOULD LIKE -- WE WOULD LIKE TO

24   BE PART OF THAT CONVERSATION AS WELL.

25           THE COURT:  SO I'M IN A DIFFICULT POSITION BECAUSE I
```

```
1     HAVE CONCERNS ABOUT WHETHER I'M GOING TO RELATE YOUR CASE.

2          AND I WANT TO GIVE EVERYONE THE OPPORTUNITY TO -- WELL, IT

3     WOULD REALLY BE MS. SHARP, BECAUSE YOU WILL BE SEEKING TO

4     RELATE TO HER CASE, BECAUSE THAT'S THE LOW NUMBER CASE AND NOT

5     THE OTHERS.  I'M NOT SEVERING THE PUBLISHER CLAIMS THAT

6     MS. SHARP HAS AT THIS POINT.

7          AND SO -- AND I'M IN A QUANDARY AS TO WHAT TO DO,

8     MR. ISQUITH, TO BE FAIR TO YOUR CLIENTS, IN JOINING AT THE

9     PROPER TIME.  AND, YOU KNOW, I THINK YOU UNDERSTAND THAT WHERE

10    I'M HEADED IS SEPARATE COMPLAINTS, AND MAYBE YOU END UP

11    SEVERING -- I END UP SEVERING YOUR CLAIMS AS TO ADVERTISERS AND

12    PUBLISHERS, BECAUSE I'M NOT GOING TO -- I'M NOT GOING TO HAVE

13    ONE LONE PUBLISHER COMPLAINT HANGING OUT THERE.

14          MR. SCHMIDTLEIN:  YOUR HONOR, THIS IS JOHN

15    SCHMIDTLEIN.  IF I MAY, JUST FOR A MOMENT.

16         THE WORK -- AND I THINK THE PLAN THAT YOU ARE IN THE

17    PROCESS OF LAYING OUT HERE, QUITE FRANKLY, HAS NOTHING TO DO

18    WITH MR. ISQUITH'S CASE.

19          THE COURT:  YEAH, YEAH.

20          MR. SCHMIDTLEIN:  AND WE WILL DEAL WITH -- WE,

21    FRANKLY, HAVE JUST SEEN IT.  HE ALLEGES SOME VERY -- HE FOCUSES

22    ON SOME VERY SPECIFIC CONDUCT THAT IS GERMANE TO GOOGLE AND

23    FACEBOOK.

24          THE COURT:  YEAH.

25          MR. SCHMIDTLEIN:  IT IS -- I THINK WE ARE IN
```

```
 1   AGREEMENT THAT IT IS RELATED, BUT HE IS REPRESENTING A

 2   DIFFERENT CLASS THAT ARE FOCUSED ON A VERY NARROW SET OF ISSUES

 3   WITHIN THE BROADER SET OF ISSUES HERE.  AND HOW YOU EVENTUALLY

 4   DECIDE TO SORT OF CONSOLIDATE THAT, I DON'T THINK THERE'S GOING

 5   TO BE A --

 6           THE COURT:  I MAY NOT RELATE IT.  I MAY NOT RELATE

 7   IT.

 8           MR. SCHMIDTLEIN:  UNDERSTOOD.

 9      AND I UNDERSTAND YOU HAVEN'T SEEN THAT COMPLAINT, AND WE

10   HAVEN'T ALL WEIGHED IN, BUT I RESPECTFULLY -- I THINK YOU

11   SHOULD PLOW AHEAD HERE TODAY AND GET US ALL ON TRACK, AND WE

12   CAN ALL DEAL WITH MR. ISQUITH'S COMPLAINT IN DUE COURSE.

13           THE COURT:  OKAY.

14      AND SO I WILL LOOK FORWARD TO THE RELATION MOTION AND WAIT

15   FOR ALL OF THE RESPONSES ON THAT.

16      AND TO THE EXTENT THERE ARE DEADLINES THAT ARE LOOMING,

17   YOU WILL GO TO THE JUDGE WHO CURRENTLY HAS THE CASE AND SEEK

18   SOME EXTENSIONS, AND I KNOW THEY ARE GENERALLY GRANTED.

19      WHO HAS THE CASE NOW, MR. ISQUITH?

20           MR. ISQUITH:  YOUR HONOR, THE LAST TIME I CHECKED, IT

21   WAS NOT -- IT HADN'T BEEN ASSIGNED YET, BUT THAT WAS YESTERDAY,

22   SO IT MAY HAVE BEEN ASSIGNED ALREADY.

23           THE COURT:  MAYBE IT WILL BE ASSIGNED TO ME, WHO

24   KNOWS, ALTHOUGH I THINK MY PLATE IS FULL ON ANTITRUST, SO

25   PROBABLY NOT.
```

```
 1              MS. SHARP:  YOUR HONOR, IF IT'S HELPFUL, IT'S

 2     ASSIGNED TO JUDGE HIXON, IT APPEARS.

 3              THE COURT:  OKAY.  THAT'S GREAT.

 4         SO BY FEBRUARY 25TH, I WILL HAVE APPLICATIONS OR A

 5     STIPULATION FOR A LEADERSHIP COMMITTEE AND LEAD INTERIM COUNSEL

 6     BY THE PUBLISHERS.  IT'S NOT NECESSARY FOR THE ADVERTISERS.

 7         I WILL THEN -- AND THEN I WILL ASK FOR A CONSOLIDATED

 8     PUBLISHERS COMPLAINT.  IN THE APPLICATION, I WOULD ASK YOU TO

 9     IDENTIFY THE DATE BY WHICH THE CONSOLIDATED COMPLAINT WOULD BE

10     FILED.

11         AND YOU'VE HEARD ME THIS MORNING, I'M TRYING TO BE

12     GENEROUS, RECOGNIZING HOW SLOW THINGS ARE, EVEN THOUGH WE THINK

13     WE ARE MOVING AT OUR NORMAL SPEED, WHICH WE REALLY AREN'T.  SO

14     IF YOU'RE STILL DELUSIONAL ABOUT THAT, IT'S BEEN A YEAR, SO GET

15     OVER IT.  BUT I'M NOT HERE TO MAKE YOUR LIVES MISERABLE, SO IF

16     YOU ASK FOR 60 DAYS, I WOULD CONSIDER THAT REASONABLE.

17         THE ATTORNEY IN THE LAST CASE, I ASKED HER TO BE GENEROUS

18     AND SHE SAID TWO WEEKS, AND I THOUGHT WOW, A PUNITIVE JUDGE

19     MIGHT SAY TWO WEEKS, AND SO I JUST WANTED TO MAKE SURE YOU

20     UNDERSTOOD THAT.

21         IN TERMS OF THE CURRENT PENDING MOTION TO DISMISS IN THE

22     ORIGINAL CASE, THE DIGITAL AD CASE, I WANTED TO KEEP THAT ON

23     TRACK AND GO FORWARD WITH THE BRIEFING.

24         MS. SHARP, YOU AND MR. SCHMIDTLEIN SHOULD CONTINUE TO

25     DISCUSS THE ISSUE WITH YOUR CLAIMS FOR PUBLISHERS, AND I THINK
```

```
 1     YOU WILL PROBABLY HAVE A SOLUTION ON THAT, YOU'VE HEARD MY

 2     COMMENTS ON IT.

 3          IN THE SWEEPSTAKES CASE, I NOTICE THAT THERE WAS A PENDING

 4     MOTION TO CONSOLIDATE WITH THE OTHER PUBLISHERS, AND NOW THAT

 5     THAT'S MY CASE, I WOULD LIKE TO TERMINATE IT AS MOOT.

 6          IS THERE ANY OBJECTION ON THAT, MR. MITCHELL?

 7               MR. MITCHELL:  NO OBJECTION, YOUR HONOR.  THANK YOU.

 8               THE COURT:  GREAT.  I JUST LIKE TO KEEP MY DOCKET

 9      CLEAN BEFORE I FORGET WHAT'S GOING ON.

10          LET'S SEE, WHAT OTHER NOTES DID I MAKE -- SO I WILL GO

11      AHEAD AND TAKE CARE OF THAT.

12          I WILL REQUIRE THAT THERE BE -- I WILL -- I THINK I CAN DO

13      THIS NOW.  YOU ARE GOING TO START DISCOVERY, ALTHOUGH MAYBE NOT

14      IN THE NEW CASES.  WE ACTUALLY NEED A CASE MANAGEMENT

15      CONFERENCE WHERE WE REALLY DEAL WITH YOUR INITIAL DISCLOSURES.

16      I DON'T KNOW WHERE YOU ARE IN THE NEW CASES, WHETHER ANYTHING

17      HAS HAPPENED.

18               MR. KOROLOGOS:  NOT YET, YOUR HONOR.

19               THE COURT:  OKAY.  SO WE NEED TO SET A CASE

20      MANAGEMENT CONFERENCE, BUT YOU PROBABLY WANT THAT AT LEAST

21       90 DAYS OUT FROM NOW, DON'T YOU?

22               MR. KOROLOGOS:  I THINK IT WILL HELP BOTH SIDES TO

23      HAVE SETTLED ON A CONSOLIDATED AMENDED COMPLAINT, SO PERHAPS WE

24      SET IT FOR 30 OR 45 DAYS AFTER THAT GETS FILED.

25               THE COURT:  OKAY.
```

```
1              IT JUST TAKES SOME TIME, I KNOW, I'M JUST TRYING TO --

2        THAT'S FINE.

3              THEN IN LOOKING AT MY NOTES, THEN WE DON'T NEED A JOINT

4        PROTECTIVE ORDER YET; IS THAT CORRECT?

5                   MR. SCHMIDTLEIN:  CORRECT.

6                   MR. KOROLOGOS:  I THINK THAT'S PRIOR TO INITIAL

7        DISCLOSURES BEING MADE.

8                   THE COURT:  AND I THINK THAT WRAPS UP WHAT WE NEED.

9              I'M CERTAINLY GOING TO BE LOOKING AT MAKING SURE THAT THE

10       DISCOVERY IS ORDERLY AND COORDINATED, OR CONSOLIDATED HERE.

11             SO THE NEXT THING THAT WILL HAPPEN IS THAT I WILL RECEIVE

12       THE APPLICATION FOR APPOINTMENT OF INTERIM LEAD COUNSEL BY THE

13       25TH.  I WILL HAVE FULLY BRIEFED MOTIONS TO RELATE IN THESE NEW

14       CASES, THE THREE NEW CASES.  SO MR. ISQUITH, YOU WILL BE FILING

15       YOURS.  MR. STEWART, YOU WILL FILE YOURS.  AND MR. GRALEWSKI,

16       YOURS IS FILED, AND I WILL BE LOOKING FOR THE RESPONSES TO

17       THAT.  SO I WILL MOVE THOSE ALONG.  OF COURSE THERE ARE NO

18       HEARINGS IN THOSE, SO I WILL JUST BE KEEPING AN EYE ON THEM.

19             AND I'M NOT GOING TO HOLD MY BREATH ON THE TEXAS ACTION

20       COMING HERE, AND SO WE WILL JUST MOVE ON.

21             I'M INCLINED TO SET A FURTHER CASE MANAGEMENT CONFERENCE,

22       BUT I DON'T WANT TO WASTE ALL YOUR TIME.  I WANTED TO GET YOU

23       ALL HERE NOW BECAUSE WE HAD SOME ISSUES, BUT DOES IT MAKE SENSE

24       TO SET SOMETHING 60 DAYS FROM NOW, OR IS THAT PREMATURE?

25                   MS. SHARP:  YOUR HONOR, DENA SHARP.
```

1        I THINK IT WOULD BE HELPFUL.

2            MR. KOROLOGOS:  IT NEVER HURTS TO CHECK IN, AND IF WE

3    DON'T HAVE MUCH TO SAY, WE DON'T HAVE MUCH TO SAY.

4            MR. SCHMIDTLEIN:  YOUR HONOR, IF I MAY.

5        WE DO HAVE -- I THINK, AS YOU KNOW, WE HAVE A HEARING ON

6    THE MOTION TO DISMISS ON APRIL 8TH.  THAT'S, I GUESS, A LITTLE

7    MORE THAN 60 DAYS FROM NOW.  AND I AGREE WITH MY COLLEAGUE THAT

8    AT LEAST IN TERMS OF THE CMC THAT WOULD ADDRESS THE PUBLISHER'S

9    SIDE, I THINK IT WOULD CERTAINLY BE HELPFUL FOR GOOGLE TO HAVE

10    SEEN THE CONSOLIDATED AMENDED COMPLAINT.

11        SO MAYBE AT OR AROUND THE SAME TIME AS THE APRIL 8TH

12    MOTION TO DISMISS HEARING.  I KNOW YOUR HONOR SOMETIMES SORT OF

13    DOES THOSE IN CONJUNCTION WITH MOTION HEARINGS, SO I JUST OFFER

14    THAT FOR YOUR CONSIDERATION, IF THAT WOULD BE EFFICIENT.

15            THE COURT:  WELL -- AND THAT'S A GOOD IDEA,

16    MR. SCHMIDTLEIN.

17        I DON'T THINK YOU WILL BE HOPPING ON AN AIRPLANE, EVEN IN

18    APRIL, BECAUSE I CERTAINLY AM CONCERNED ABOUT THE WEAR AND TEAR

19    ON ATTORNEYS.

20            BUT TIFFANY, HOW CROWDED IS THE 8TH FOR CASE MANAGEMENT?

21            THE CLERK:  YOUR HONOR, WE CURRENTLY HAVE THREE CMC'S

22    SET, SO I BELIEVE THERE'S ROOM FOR THIS.

23            THE COURT:  OKAY.

24        LET ME SET CASE MANAGEMENT ON APRIL 8TH AT 11:00.  IF THE

25    CONSOLIDATED PUBLISHER'S COMPLAINT IS NOT ON FILE, PLEASE DON'T

```
 1    HESITATE TO ASK TO EXTEND THAT TIME.  I WON'T BE LOOKING FOR

 2    IT, BUT YOU WILL.  AND SO JUST ALL YOU NEED TO DO IS TO SUBMIT

 3    A REQUEST TO EXTEND IT, AND YOU WILL KNOW BY THEN WHEN IT'S

 4    COMING.

 5         IN TERMS OF ANY STATEMENTS FOR THE CMC, I'M NOT -- I DON'T

 6    SEE THAT AS THE TIME FOR INITIAL DISCLOSURES, DO YOU?  I THINK

 7    THAT'S PREMATURE.

 8         MR. KOROLOGOS:  I THINK THAT WILL BE A LITTLE EARLY,

 9    YOUR HONOR.

10         MR. SCHMIDTLEIN:  AGREED, YOUR HONOR.

11         THE COURT:  THEN I DON'T WANT YOUR NORMAL JOINT CASE

12    MANAGEMENT STATEMENT UNDER OUR LOCAL RULES, THAT WOULD BE

13    PREMATURE.  WHAT I WOULD LIKE IS FOR YOU TO MEET AND CONFER IN

14    ADVANCE AND SUBMIT A SINGLE SUBMISSION BY ALL OF YOU THAT

15    IDENTIFIES AN AGENDA OF ISSUES YOU WOULD LIKE TO COVER AND ANY

16    POSITION OF THE PARTIES THAT YOU WOULD LIKE TO ADVISE ME OF IN

17    ADVANCE OF IT, AND IF YOU WOULD FILE THAT ONE WEEK BEFORE THE

18    APRIL 8TH CASE MANAGEMENT CONFERENCE, BUT YOU ARE NOT COMPLYING

19    WITH OUR COURT STANDING ORDER ON JOINT CASE MANAGEMENT

20    STATEMENT.

21         ALL RIGHT.  I THINK WE'VE COVERED EVERYTHING.  YOU'VE ALL

22    HELPED ME OUT TREMENDOUSLY TO GET MY ARMS AROUND THIS, AND I

23    THINK AT LEAST IN THE NEAR TERM, I WANT TO TRY TO KEEP A CLOSE

24    WATCH ON THIS AND DO THESE CASE MANAGEMENT CONFERENCES WITH

25    SOME REGULARITY.
```

1       SO I WILL -- OVER THE NEXT THREE WEEKS, I WILL BE GETTING

2    A FEW THINGS AND WE WILL MOVE TOWARD PUTTING THIS IN ORDER.

3       OKAY.  ANYTHING ELSE?

4           MR. SCHMIDTLEIN:  THANK YOU, YOUR HONOR.

5           MS. SHARP:  THANK YOU, YOUR HONOR.

6           THE COURT:  ALL RIGHT.  THANK YOU ALL.

7       (THE PROCEEDINGS WERE CONCLUDED AT 11:15 A.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4 **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 2/8/21