```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
 2                  ALEXANDRIA DIVISION

 3    --------------------------x
      UNITED STATES, et al.,     :    Civil Action No.:
 4                               :    1:23-cv-108
                 Plaintiffs,     :
 5        versus                 :    Wednesday, September 4, 2024
                                 :    Alexandria, Virginia
 6    GOOGLE LLC,                :
                                 :    Pages 1-37
 7               Defendant.      :
      --------------------------x
 8

 9         The above-entitled motion to quash hearing was heard
      before the Honorable Leonie M. Brinkema, United States
10    District Judge.  This proceeding commenced at 10:04 a.m.

11              A P P E A R A N C E S:

12    FOR THE PLAINTIFFS:    GERARD MENE, ESQUIRE
                             OFFICE OF THE UNITED STATES ATTORNEY
13                           2100 Jamieson Avenue
                             Alexandria, Virginia  22314
14                           (703) 299-3700

15                           JULIA TARVER WOOD, ESQUIRE
                             MICHAEL WOLIN, ESQUIRE
16                           AARON TEITELBAUM, ESQUIRE
                             UNITED STATES DEPARTMENT OF JUSTICE
17                           ANTITRUST DIVISION
                             450 Fifth Street, NW
18                           Washington, D.C.  20530
                             (202) 894-4266
19
                             MICHAEL FREEMAN, ESQUIRE
20                           UNITED STATES DEPARTMENT OF JUSTICE
                             801 West Superior Avenue
21                           Suite 400
                             Cleveland, Ohio  44113
22                           (216) 622-3611

23                           VICTOR LIU, ESQUIRE
                             UNITED STATES DEPARTMENT OF JUSTICE
24                           450 Fifth Street, NW
                             Washington, D.C.  20001
25                           (202) 805-8657

                                                         1
```

```
 1                    A P P E A R A N C E S:

 2   FOR THE PLAINTIFFS:    TYLER HENRY, ESQUIRE
                            OFFICE OF THE ATTORNEY GENERAL
 3                          OFFICE OF THE SOLICITOR GENERAL
                            202 North Ninth Street
 4                          Richmond, Virginia  23219
                            (804) 786-7704
 5
     FOR THE DEFENDANT:     CRAIG REILLY, ESQUIRE
 6                          LAW OFFICE OF CRAIG C. REILLY
                            209 Madison Street
 7                          Suite 501
                            Alexandria, Virginia  22314
 8                          (703) 549-5354

 9                          JEANNIE RHEE, ESQUIRE
                            AMY MAUSER, ESQUIRE
10                          WILLIAM ISAACSON, ESQUIRE
                            PAUL, WEISS, RIFKIND,
11                          WHARTON & GARRISON LLP
                            2001 K Street, NW
12                          Washington, D.C.  20006
                            (202) 223-7300
13
                            BRADLEY JUSTUS, ESQUIRE
14                          ALLISON VISSICHELLI, ESQUIRE
                            AXINN VELTROP & HARKRIDER, LLP
15                          1901 L Street, NW
                            Washington, D.C.  20036
16                          (202) 699-0950

17   FOR THE NON-PARTIES:   JULIET CLARK, ESQUIRE
                            MCGUIREWOODS LLP
18                          Gateway Plaza
                            800 East Canal Street
19                          Richmond, Virginia  23219
                            (804) 775-4773
20
                            AMY MANNING, ESQUIRE
21                          MCGUIREWOODS LLP
                            77 West Wacker Drive
22                          Suite 4100
                            Chicago, Illinois  60601
23                          (312) 849-8100

24

25
                                                             2
```

```
 1   COURT REPORTER:          STEPHANIE M. AUSTIN, RPR, CRR
                              Official Court Reporter
 2                            United States District Court
                              401 Courthouse Square
 3                            Alexandria, Virginia  22314
                              (607) 743-1894
 4                            S.AustinReporting@gmail.com

 5           COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                            3
```

```
 1              P R O C E E D I N G S

 2         THE DEPUTY CLERK:  Civil Action Number

 3  1:23-cv-108, United States of America, et al. versus Google

 4  LLC.

 5         Will counsel please note their appearance for the

 6  record, first for the plaintiff.

 7         MR. MENE:  Good morning, Your Honor.  Gerard Mene

 8  with the U.S. Attorney's Office.

 9         THE COURT:  Good morning.

10         MS. WOOD:  Good morning.  Julia Tarver Wood from

11  the Department of Justice for the United States.  With me

12  are my colleagues, Aaron Teitelbaum, Michael Wolin,

13  Michael Freeman, and Victor Liu.  Thank you, Your Honor.

14         THE COURT:  Good morning.

15         MR. HENRY:  And good morning, Your Honor.

16  Ty Henry from the Virginia Attorney General's Office on

17  behalf of the plaintiff states.

18         THE COURT:  Good morning.

19         MS. RHEE:  Good morning, Your Honor.  Jeannie Rhee

20  for Google, and I am -- with me here is Bill Isaacson,

21  Amy Mauser, of course you know Craig Reilly, and we're also

22  joined by Bradley Justus and Allison Vissichelli.

23         THE COURT:  Good morning.  And Mr. Henry, are you

24  going to be presenting any part of the case?

25         MR. HENRY:  No, Your Honor.
```

4

1              THE COURT:  No.  You may find it more comfortable

2    to sit in the jury box.  Is that your plan for the trial?

3              MR. HENRY:  Yes, it is, Your Honor.

4              THE COURT:  All right.  And, again, you're sort of

5    coordinating -- why don't you come up to the lectern for a

6    second.

7              You're sort of coordinating the other state

8    attorney generals; is that correct?

9              MR. HENRY:  That is correct.

10             THE COURT:  And we talked last time, you estimated

11   approximately four to five would probably be attending the

12   trial; is that still your understanding?

13             MR. HENRY:  That's still my understanding.  I

14   think on the opening day of trial, we'll have four offices

15   represented and five attorneys present.

16             THE COURT:  All right.  That's fine.  Again, as we

17   said, they will be sitting in the witness box -- in the jury

18   box, so they have comfortable seats and a good view of the

19   court proceedings.  And then we're going to have, I suspect,

20   overflow for other Department of Justice attorneys in that

21   box as well.

22             I think -- I don't want to waste a lot of space,

23   but I'm not going to have any public sitting inside the

24   well.  But that's how we're going to do things.  All right.

25   Thank you.

                                                              5

```
 1              MR. HENRY:  Thank you, Your Honor.

 2              THE COURT:  All right.  Before I get started on

 3    any of these motions, have any of the issues been resolved

 4    so we don't have to waste time discussing them?  No.

 5              MS. WOOD:  No, Your Honor.  There were some offers

 6    in the papers about the motion to quash about a few

 7    proposals, but other than that, no, Your Honor.

 8              THE COURT:  Right.  All right.  That's fine.  All

 9    right.  Then let's get started.

10              Again, I've read the papers, and I've made my

11    decision.  I don't think I'm going to hear -- need to hear

12    any argument.

13              So I first want to address the motion in limine or

14    motions in limine.  And they're going to be sort of a mixed

15    result.

16              In terms of the government's motion in limine,

17    there are three issues that you've raised.  The first one is

18    whether or not Google should be judicially estopped from

19    arguing basically the nature of the market that we're

20    dealing with here.  I'm denying that motion because that's a

21    key issue in the case.  I think Google has the right to make

22    its argument.

23              Now, I will say that the issue of judicial

24    estoppel is interesting, it got my attention.  It may be a

25    problem for Google down the road, I'll have to see how the
```

6

1    evidence comes in, but I think they have a right to present

2    that argument.  So that part of the motion is denied.

3           On the other hand, I am granting the second

4    request of the past decision by enforcers.  The DoubleClick

5    and AdMeld acquisitions occurred more than ten years ago.

6    The world has changed dramatically in ten years.  For

7    whatever reasons at that time, the reviewing agencies, the

8    FTC and the Department of Justice, did not oppose those

9    acquisitions, and any finding that they make at that time,

10   in my view, are actually irrelevant.  The issue is whether

11   or not, during the time frame that's been alleged in the

12   complaint, the way in which the ad tech has been structured

13   has resulted in a monopoly, basically.  And so I'm going to

14   grant that motion.

15          I will take judicial notice of the fact -- because

16   it's a fact -- that those two acquisitions were approved by

17   regulators at that time.  That's an appropriate fact in this

18   record.  But, beyond that, the rest of it, in my view, is

19   irrelevant, and so I'm granting that part of the motion.

20          The third issue that is raised by the government

21   is to keep out the various surveys produced by the

22   Advertiser Perception group.  I'm going to allow those in

23   with some caveats that, as the trial gets going, if I find

24   that there really is a terrible foundation for them -- I

25   mean, I was intrigued by the fact that many of the Google

7

```
 1   people thought they weren't very valuable, but I think to

 2   the extent that they show an effort on Google's part, if I

 3   find this is the case, to be mindful of what's going on in

 4   the industry and the impact that these various technologies

 5   have.  Again, intent is part of the issue in this case.  I

 6   think they're sufficiently relevant; the question is how

 7   reliable they will be, and that's a matter that we determine

 8   at the trial itself.  So the motion is denied in that

 9   respect.

10           Google then has a motion in limine to exclude

11   various what you describe as non-party opinions.  And I've

12   gone through the response of the government.  I certainly

13   find that those witnesses can fully testify to all facts,

14   that is their experience in the industry, and they can,

15   based upon their experience, give their lay opinion as to

16   the impact of Google's ad technology on their ability to get

17   competitive pricing, et cetera.

18           The only thing they can't do -- and, again, it's a

19   bench trial, so I'm perfectly able to, you know, sensor

20   witnesses.  If they try to say they're monopolists or they

21   try to, you know, draw the ultimate legal conclusion, I have

22   to do that.  And so I'm going to deny Google's motion in

23   limine.  And so I think that resolves those issues.

24           Ms. Wood.

25           MS. WOOD:  Just one question, Your Honor.
```

8

```
 1              It has been our experience then in certain
 2    instances, the lay witnesses use the term "monopoly" in
 3    their normal course documents for a business reason, not for
 4    binding legal judgment.
 5              THE COURT:  And, again, if this were a jury trial,
 6    we would have other issues we have to worry about.  I can
 7    bypass that.  I make the decision ultimately.  No matter
 8    what your people say, I make the decision.
 9              MS. WOOD:  Understood.  That's what I thought,
10    Your Honor, I just wanted to clarify.
11              THE COURT:  All right.  Ms. Rhee, was there
12    anything you wanted to -- I've ruled; so ...
13              MS. RHEE:  No.  Not on the motions in limine, Your
14    Honor.  That was quite efficient, and we have nothing to
15    say.
16              THE COURT:  Okay.  All right.  That's fine.  That
17    takes care of that first set.
18              Now, the next thing is the joint motion for a
19    status conference.  Obviously I'm granting that because
20    we're going to discuss those issues right now.  And the
21    first one has to do about how we are going to handle the
22    submission of exhibits without a sponsoring witness.
23              I'm not going to impose upon myself, my law clerk,
24    or the Court of Appeals an unnecessary amount of
25    information.  So you can't just dump a bunch of exhibits
```

9

```
 1    into the record.  The exhibits have to make sense.  And the
 2    way in which cases are traditionally tried is, as a witness
 3    is testifying, if there are exhibits related to that
 4    witness's testimony, you would admit them at that time.  So
 5    I would expect then, you know, during the course of
 6    testimony, or after a witness has testified if there are
 7    some exhibits that buttress or elucidate what the witness
 8    said, that would be the appropriate time.  But simply
 9    putting them all in at the end of the government's case in
10    chief -- which is Google's suggestion -- doesn't make good
11    sense to me.  All right.  So there has to be some context in
12    which you're admitting these exhibits.  All right.
13              Ms. Rhee, since that was sort of your -- you
14    wanted them -- or suggested that they be at the end of the
15    case in chief, you understand what I'm saying?
16              MS. RHEE:  Yes.  Actually, Your Honor, I think
17    that the Court's remarks right now are consistent with the
18    reason why we were a little bit concerned.  Because,
19    frankly, it was a concern about a document dump at the
20    beginning of the government's case rather than, you know, to
21    have at least an opportunity to talk about which documents
22    actually made sense and were tied to and consistent with the
23    testimony and the evidence as it had come in.
24              What we didn't want was to waive the standing
25    objections that we have with respect to the otherwise
```

10

```
 1  agreed-upon documents where certain foundational, right, and
 2  custodial objections had been worked out by the parties, but
 3  Google had reserved whether or not, for example, the
 4  documents were double hearsay or whether or not the
 5  documents were cumulative or whether or not the documents
 6  had anything to do with the rest of the testimony that had
 7  come in.
 8            THE COURT:  All right.  Ms. Wood.
 9            MS. WOOD:  Yeah.  What Your Honor has contemplated
10  is exactly the guidance we appreciated.  We just wanted to
11  make sure that when we have a witness on the stand, the fact
12  that the witness may be examined on a topic that's relevant
13  to a document, but maybe the witness's name is not on that
14  document, how we proceed in that instance.  And I think Your
15  Honor's given the clarity we needed, and we appreciate that.
16            THE COURT:  All right.  That's fine.  Then the
17  second issue was depositions.  All right.
18            Now, the way we're going to try this case is no
19  different from the way I would try any other case.  And that
20  is, if a deposition is going to be used -- and my preference
21  is always for live testimony.  And "live" means in the
22  courtroom live.  That is the platinum standard for
23  testimony.  But if we are using depositions, if there are
24  video versions of the deposition, I want to start with the
25  video so I can have seen the witness in person as best as I
```

11

```
 1   can.
 2           If the deposition is taking an unreasonably long
 3   period of time -- many times I have found video depositions
 4   are just painfully slow.  Either the way the questions are
 5   being formulated are just too slow or the witness is sitting
 6   there looking at the sky having to think, it's just too
 7   slow.  In which case we would then shift to having whichever
 8   law clerk I have available in the box, and your reading --
 9   you know, the appropriate lawyer, whether it was, you know,
10   plaintiff or defendant, reading the questions, and that's
11   it.
12           But that is the extent of the deposition evidence
13   that's going to go into the record.  I'm not going to accept
14   the entire deposition transcript at the end of the trial.
15   So whatever portions of the depositions you're using, you
16   use them during the four corners of the trial.
17           And just so everyone is clear, the standard
18   practice among the court reporters I work with is, they do
19   not take down the deposition testimony if it's fully
20   recorded.  If it's being read into the record, because
21   that's happening sort of live in the courtroom, there will
22   be a transcript of that.  But if you're just playing the
23   audio version of the deposition, that audio is not being
24   taken down by the court reporter.  So everyone is clear
25   about that.
```

12

1          Now, that creates sort of an interesting problem,

2    or just thought, and I just want you to be thinking about

3    this.  The rule that we have in terms of evidence is that

4    the parties are required to make the evidence that's been

5    entered into evidence available to the public by 10:00 the

6    next morning.  I'm making an exception to that for video

7    depositions.  Only the audio portion or the printed portion

8    of that is what I want you to post.  I think it would be

9    inappropriate to have the visual -- the pictures of the

10   person who's testifying.  Am I clear about that?  I just

11   thought about that this morning, but it is a problem,

12   because we don't allow video broadcasts of the trial.  So

13   that would allow certain trial witnesses to be out there,

14   and that's not appropriate.

15          MS. WOOD:  Yes, Your Honor.  That's exactly the

16   clarity we were thinking of.

17          So just the transcript -- the excerpts of the

18   transcripts that were played in court would be made

19   available on the website.  Yes, Your Honor.

20          THE COURT:  Right.  Because that is the evidence

21   that's coming in.

22          MS. WOOD:  Yes.

23          THE COURT:  All right.  Does Google have any

24   objection to that?

25          MS. RHEE:  No, Your Honor.

13

```
 1                THE COURT:  Okay.  Now, I think you're both on the

 2     same time frame in terms of how you're going to exchange

 3     designations.  I was actually a little bit worried because I

 4     guess the technology that you both have available to you can

 5     make these corrections this quickly, but you both are

 6     agreeing to four days, at least, advance notice as to what

 7     your proposed designations are.

 8                MS. WOOD:  So as part of the pretrial process,

 9     Your Honor, both sides have already submitted designations,

10     counter-designations, fairness designations.  And so what

11     remains ahead of us is trying to distill that even further

12     by a meet-and-confer process to make it as tight as possible

13     for the presentation to the Court.  And so I think we are

14     absolutely prepared to take on that obligation to whittle

15     them down so we are as efficient as possible.

16                THE COURT:  You've worked very well together, so

17     I'm not expecting a problem there.  But if I read this

18     correctly, I think you both have the exact same time frame

19     for this.

20                MS. WOOD:  Yes, Your Honor.

21                MS. RHEE:  We do.

22                MS. WOOD:  We met and conferred, yes.

23                THE COURT:  Great.

24                MS. RHEE:  There's been a lot of meeting and

25     conferring, as I think the Court is well aware.
```

                                                                    14

```
 1              THE COURT:  And we see the results of that, so I
 2     appreciate that very much.
 3              All right.  And then in terms of post-trial
 4     submissions, again, I'm going to sort of leave that open.
 5     It depends on how the trial goes.  I mean, we've got the
 6     advantage of the pretrial filings, and we're able to also
 7     determine whether there have been a significant shift in the
 8     case as the case develops.
 9              I have an open mind about whether I'll request
10     post-trial revisions of the proposed findings.  All right.
11     So I'm going to leave that issue open.  I don't think anyone
12     needs that answer right away; do you?  No, because you won't
13     know what they are until we've got the trial going.  All
14     right.
15              I think that took care of everything.  Was there
16     anything else in your joint motion for status conference?  I
17     think I addressed everything.
18              MS. WOOD:  That's it for the joint motion.
19              I think the parties are still working on a
20     glossary, and we will meet and confer on a glossary that
21     could hopefully assist the Court as the trial develops, and
22     we may want to mark that as, you know, an exhibit that can
23     also be publicly put on the website.
24              THE COURT:  That would be a good idea, yeah.
25              MS. RHEE:  Yeah.  And I think, as the Court is
```

15

1    well aware and Ms. Wood alluded to, the parties are still

2    actually talking through the proposal that DOJ put forward

3    with respect to two of the Xooglers, or the ex-Google

4    employees, with respect to possibly reaching an agreement on

5    a stipulation about documents.

6              MS. WOOD:  With respect to the motion to quash,

7    Your Honor, I think that's what Ms. Rhee is referring to.

8              THE COURT:  Right.  All right.

9              MS. RHEE:  As a housekeeping matter, Your Honor,

10   there's also pending before this Court a request on the

11   Google side for certain electronics, and so that's --

12             THE COURT:  I was going to address that.

13             MS. RHEE:  Okay.  Thank you.

14             THE COURT:  I have a bunch of sort of housekeeping

15   matters before we get to the motions to quash.

16             All right.  First of all, I'm trying to maintain

17   as even a playing field for the lawyers and parties as I

18   can.  Now, the government has an advantage because they are

19   able to get into the courthouse through the U.S. Attorney's

20   Office.  Google doesn't have that advantage.  And I will

21   share with you, I am concerned, at least on the early days

22   of trial, about a lot -- a problem -- a traffic control

23   problem at the front door to the courthouse.

24             The courthouse opens at 8:00 in the morning.  We

25   start trial at 9:00.  I've got to be able to be sure that

                                                            16

1    the lawyers are here in the courtroom early enough to set

2    themselves up, et cetera.  What we have done -- and we're

3    not doing it for the government because they don't need it.

4    But for Google, we have ID cards that we've made up.  All

5    right.  We have instructed the court security officers at

6    the front that anybody who has one of these badges should

7    get wanded ahead of anybody who's in line.

8            So for Google people -- and I think we have enough

9    for all of you.  Mr. Reilly, I contacted him Friday, to get

10   the names of everybody who could possibly be working on

11   behalf of Google during the course of the trial.  So you'll

12   each have one of these badges.  That badge will get you

13   through -- it should get you through faster.

14           On Thursday -- where is it -- Thursday,

15   September 19th, is naturalization day here at the

16   courthouse.  The crush of people, both in the morning and

17   the afternoon, is very high, and we've had problems in

18   trials before of not getting everybody in on time because of

19   that.  So, again, you'll have to do a little bit of, you

20   know, New York subway-style pushing, perhaps, to get past

21   folks in line.  But the CSOs know at the front desk, you

22   show them the badge, they'll do a faster wand and get you up

23   here sooner.  So there shouldn't be any problem with Google

24   having easy access to the courtroom.  All right.

25           I'm also going to have a similar type of badge

17

```
 1    made up for witnesses.  One of my other concerns is, you
 2    know, we have a witness, we break for the lunch hour break,
 3    at 2:00, the witness can't get in because -- or can't get in
 4    on time.  And, you know, that one-hour break is not all that
 5    long if they go out to get lunch, and they have to be back
 6    here at 2.  I don't want to have to wait until 2:20 to be
 7    able to start the afternoon session.
 8            So when you have a witness who's going to have a
 9    lunch break before they leave, we're going to give them a
10    card, and that card should also get them a quick
11    pass-through.  But they'll have to know to get past the
12    line, if there is a line, just excuse me, excuse me, use the
13    elbows and get through, and then the CSOs will wand them up
14    and they can get up here.  So hopefully that will avoid that
15    logistical problem.
16            MS. WOOD:  We appreciate that, Your Honor.  I
17    think that's a great suggestion.
18            THE COURT:  All right.
19            MS. RHEE:  Yes.  We're quite thankful.
20            THE COURT:  All right.  So don't leave before you
21    Google people get those things.  All right.
22            MS. RHEE:  Oh, we certainly will not.
23            THE COURT:  Okay.  Let's see.  We've had at least
24    two requests so far for -- because of medical issues to
25    bring some electronic devices in.  We've taken care of the
```

                                                              18

```
1    two requests that we've had.  If there are any others, we
2    need an advance on that, otherwise there's a problem with
3    the CSOs down front.  So you need to make sure witnesses let
4    you know if they have an issue, all right, and then you have
5    to let us know.
6             I think you've met my new law clerk, Chris Gorman.
7    He replaced Mark.  He's the new clerk on this case, primary
8    clerk.  You've met the two new court security officers,
9    correct, who will be working?  Now, one officer is going to
10   be over in 701 for the overflow courtroom, and then while my
11   current CSO is on vacation for the first two weeks, we'll
12   have a substitute, and then you'll see a shift.  But you
13   need to get to know the CSOs because they're here to help
14   you get comfortable in the courtroom.
15            I'm going to repeat what I said last week, and it
16   is going to go out in an order hopefully today because we've
17   had a lot of requests from the media folks.  I'm going to
18   reserve -- and I've changed my mind now.  I'm going to
19   reserve the first three rows on the right side of the
20   courtroom, my right, your left, for media people.  If there
21   are more people than can fit there, they sit just like
22   anybody else, wherever they can find a seat.  But the first
23   15 or so media folk who get in here will be able to sit
24   there.  There will be some kind of media badge that can be
25   picked up at the clerk's office.  That will be announced on
```

1    our website hopefully sometime today.  And so that's how

2    we're going to handle the media folks.

3            We've taken care of the government people, and the

4    first row will be reserved for Google.  If you're not using

5    the entire first row, we may only give you one half.  Again,

6    I want to accommodate as many people as we can in this

7    courtroom.  All right.

8            Let me see if there's anything else.

9            All right.  For next week, I can give you a solid

10   schedule, all right, because we've cleared some things on

11   the docket.  So, for next week, we are going to be able to

12   start at 9:00 Monday, Tuesday, Wednesday, and Thursday.  And

13   we will be able to start by 9:30 on Friday.  So you can go

14   to the bank on that starting schedule for next week.

15           It looks as though, at least Monday through

16   Wednesday of the following week, we can also start on time.

17   But I'm going to wait and just see whether we pick up some

18   stuff that has to be done.  So that's good because that

19   means you're not going to have to unset your tables and

20   stuff.

21           I think I told you we do have the two witness

22   rooms across the hall.  If you want to check that space out,

23   I think maybe on Friday when your exhibits are presented to

24   the Court, it would be a good chance to see that, because

25   you'll probably want to set things up.  Those rooms will be

20

```
 1    locked, and we'll unlock them in the morning so that your

 2    folks have access to them.

 3              I gave you an order a few days ago about how

 4    you're going to handle the exhibits.  I hope that was clear.

 5    Again, I don't see any reason for overloading the clerk's

 6    office with thousands of pieces of paper.  So the main thing

 7    we have to watch, though, is the electronic version of the

 8    exhibits will, itself, have to be edited down the road if

 9    some of the exhibits that are on that master disk do not

10    ultimately get entered into evidence.  All right.

11              Now, I am curious, is there any reason that the

12    exhibits that are not entered into evidence have to be kept?

13    I mean, I think I sort of questioned that in that order that

14    I gave you all.  The normal practice here is the only

15    exhibits that the clerk's office holds onto are the ones

16    that have actually been admitted into evidence.

17              MS. WOOD:  We agree with that approach, Your

18    Honor.  The only thing we might want to keep for purposes of

19    the record might be certain demonstrative exhibits.  But

20    regular exhibits that are not actually moved into evidence

21    during the trial, I see no --

22              THE COURT:  Or if I don't permit them in.

23              MS. WOOD:  Exactly.

24              THE COURT:  Or you've move them in and I've

25    sustained the objection.
```

1          MS. WOOD:  Excluded them, yes.

2          THE COURT:  Yes, I've excluded them.

3          MS. RHEE:  We're in complete agreement with the

4    Court.

5          THE COURT:  That's fine.  Again, there will be

6    some editing of that down the road.  All right.

7          Now, I love the idea of witness books.  That makes

8    things much easier.  But my question is this:  Let's say

9    you -- during the testimony of Witness Number 1 you use

10   Exhibit 13.  So 13 comes into evidence through Witness

11   Number 1.  Down the road, Witness 17, you also want to show

12   that exhibit to that person.  Are you putting that exhibit

13   in that witness's book?

14         MS. WOOD:  Yes, Your Honor.

15         MS. RHEE:  Yes, Your Honor.

16         THE COURT:  Fantastic.  That's fantastic.  Okay.

17         And then my plan is at the end of each trial

18   day -- so we actually may stop testimony at ten of 6 --

19   we're going to read into the record those exhibits which my

20   courtroom deputies believe have been entered into evidence,

21   and that will be your opportunity to, number one, say, no,

22   that exhibit was not entered; or, two, you forgot exhibit

23   such-and-such.  So at the end of each day, we should have

24   definitively on the record what's been entered into

25   evidence, and then your tech people will do the necessary

                                                          22

```
 1    whatever they have to do to get them on the website.
 2              Is there any problem with doing it that way?  That
 3    means at the end of the trial, we don't have to sit for a
 4    day and go through the exhibits.
 5              MS. WOOD:  I think it's wonderfully efficient,
 6    Your Honor.  Thank you.
 7              THE COURT:  All right.  Ms. Rhee, does that create
 8    a problem for Google?
 9              MS. RHEE:  We don't object to the process.
10              THE COURT:  At the lectern.
11              MS. RHEE:  We don't object to the process, Your
12    Honor.
13              THE COURT:  Okay.
14              MS. RHEE:  I think we just want to get a
15    clarification that, consistent with what the Court said
16    earlier this morning, for exhibits that either party seeks
17    to admit after the witness in order to do cleanup with
18    respect to the admission of exhibits, all of that will also
19    then be taken into account at the end-of-the-day
20    reconciliation?
21              THE COURT:  I'm sorry.  Let me hear the last part
22    of that.
23              MS. RHEE:  So there are --
24              THE COURT:  I'm sorry.  So you're saying Witness
25    Number 1 testifies, 17 exhibits are entered formally as that
```

23

```
 1    witness testifies.

 2              MS. RHEE:  Correct.

 3              THE COURT:  At the end of the full testimony,

 4    there are four other exhibits that are relevant to that

 5    testimony without there being somebody to propose them.  All

 6    right.

 7              So the attorney is going to say:  Judge, we would

 8    like to add at this time exhibits such-and-such and

 9    such-and-such and such-and-such because they do whatever.

10    And, at that point, that's fine.  That's fine.  That would

11    still be read into the record at that point.

12              The only trick will be if you're then going to use

13    one of those exhibits down the road to question a witness

14    the next day -- I'm trying to avoid having 20 books up here

15    and having to run back and forth.  Okay.  So to the extent

16    you can avoid that, that's --

17              MS. RHEE:  Yeah.  I think the parties are

18    committed to facilitating the convenience of the Court to

19    make sure that for every subsequent witness, even if there

20    are duplicates of documents, they will be contained within

21    that witness's exhibit book.

22              We just wanted to be assured that at the end of

23    the day, a counting and reconciliation of what exhibits, in

24    fact, have been entered into evidence, that it will take

25    into account these interregnum periods --
```

24

```
 1              THE COURT:  Absolutely.

 2              MS. RHEE:  -- between the parties so that we can

 3    make sure that it's pretty clear about which exhibits have

 4    been introduced.

 5              THE COURT:  Absolutely.  That's not going to be a

 6    problem.

 7              MS. RHEE:  Okay.  Great.

 8              THE COURT:  And I'm assuming that multi-page

 9    exhibits all have good clear Bates stamp numbers on them?

10              MS. RHEE:  Yes, Your Honor.

11              THE COURT:  Excellent.  Okay.  Let me see if

12    there's anything else.

13              Also --

14              MS. RHEE:  Oh, Your Honor.

15              THE COURT:  Yes.

16              MS. RHEE:  I should just put as an asterisk to

17    that, there are a small set of exhibits that are in native

18    format, in which case they do not have individual Bates

19    numbers.  It's just one Bates number for the native document

20    or the native exhibit.

21              THE COURT:  All right.  That always becomes pretty

22    problematic if you have to refer to a particular page.

23              MS. RHEE:  And we understand that, and I think

24    just speaking for Google, we will endeavor to be very clear

25    and also to direct both the witness, the Court and the clerk
```

                                                          25

```
 1    about, for those exhibits, where we're directing the
 2    questioning.
 3              THE COURT:  That's fine.  Great.
 4              The only other thing I wanted to mention to you,
 5    for planning purposes is, on Tuesday, September 24 -- I want
 6    to make sure I've got the right date -- I think that's the
 7    day we have to stop a little bit early.  Yeah.  That day
 8    we're going to stop the trial at 4:30 in the afternoon.
 9    There's an event that I have to attend.  I think,
10    Mr. Reilly, you'll be at that as well.
11              All right.  Those were my housekeeping issues.
12    Are there any other purely housekeeping matters that we need
13    to discuss?
14              MS. WOOD:  No, Your Honor.  Thank you.
15              THE COURT:  All right.  There is something from
16    Google.
17              Mr. Reilly had submitted a request for
18    authorization for electronic devices that I entered on
19    August 28.  And then we got what I guess is a supplemental
20    one that was filed, I believe, yesterday.  I have previously
21    allowed the government two laptops.  I'm sticking,
22    Mr. Reilly, with the original one that I did, which is two
23    laptops.  As long as whoever brings them into the courthouse
24    has a copy of the order that I've entered, or, you know, the
25    form, we don't need the names of the people.  All right.
```

26

```
 1              MR. REILLY:  If I could explain.

 2              The first request including the two laptops, Your

 3      Honor, was for the hookup to the electronic presentation

 4      system, a primary one and a backup.  I've had them fail.

 5      That was the purpose of bringing them in.

 6              THE COURT:  Right.

 7              MR. REILLY:  Our second request which we've

 8      submitted was for attorneys or a paralegal to be able to

 9      keep track of admitted exhibits and for quick access to the

10      exhibits.  We will be seeing the witness notebooks each side

11      in real time, and we would need to quickly access the

12      objections so that there isn't a delay.  When Ms. Wood says

13      please take a look at Exhibit Number 13, we would be able to

14      quickly find whether we had objected to that or not and then

15      make the objection quickly.  So the purpose of the

16      additional laptops we've requested was for lawyers or

17      paralegals in the gallery to keep track of admitted

18      exhibits.

19              THE COURT:  That's too much electronics.

20              MR. REILLY:  Okay.

21              THE COURT:  This is an old-fashioned courtroom.

22      Each side's got two.  All right.

23              MR. REILLY:  All right.  So we'll have the two,

24      and the second one we can use for those other purposes.

25              THE COURT:  Correct.
```

27

```
 1                 MR. REILLY:  Thank you, Your Honor.

 2                 THE COURT:  In the well.

 3                 MR. REILLY:  In the well.

 4                 THE COURT:  Yes.

 5                 MR. REILLY:  Thank you.

 6                 THE COURT:  Because the government is comfortable

 7     with two; Google will have to work with two.

 8                 All right.  So that I'm denying the one that was

 9     filed yesterday.

10                 All right.  That's it for me with housekeeping

11     matters.

12                 Was there anything further, first for the

13     government?

14                 MS. WOOD:  No, Your Honor.

15                 THE COURT:  All right.  Ms. Rhee, is there

16     anything further from Google?

17                 MS. RHEE:  No, Your Honor.

18                 THE COURT:  All right.  And as I said, sometime on

19     Friday, you'll make arrangements to bring everything into

20     the courthouse so we're set up to go on Monday.  And, in

21     fact, I don't mind if you start bringing it into the

22     courtroom.  I think that would be better so that we have

23     everything ready to start.  Okay.

24                 Then I believe the last issue we have to address

25     are these motions to quash.  And I'm going to move quickly
```

                                                              28

1    on those as well.  I don't think I need to hear any

2    argument.

3           While I recognize that the standard rule for most

4    civil cases is that outside of the 100-mile reach of the

5    Court, subpoenas cannot, you know, be enforced unless the

6    parties agree to appear.  This is a Clayton Act case, and

7    there is an exception.

8           I do not agree with the position that

9    Judge Anderson did not approve this.  I recognize there may

10   not have been the degree of clarity that perhaps Judge Mehta

11   had in his standing order, but I've talked with

12   Judge Anderson, and I, myself, have reviewed your arguments

13   and papers.

14          I think frankly one could reasonably read into the

15   discovery order that was issued that he had approved this.

16   In any case, I think in this case -- because as I've said

17   before, live testimony is always preferable, and this is a

18   serious case, and we need to have the best possible way of

19   presenting the evidence.  So I'm overruling the motions to

20   quash to that degree.

21          Now, what I am more concerned about, though, is

22   trying to accommodate the witnesses, because we have at

23   least two coming from California, and so I want to make sure

24   that there has been a reasonable accommodation of their

25   concerns.  And for the one witness, Mr. LaSala, he is a

                                                          29

1  professor at Columbia Business School, and obviously his

2  appearance needs to be worked out so that he does not create

3  prejudice for his students who will miss class.  But in

4  terms of the argument that he needs to prepare, he can

5  comfortably prepare, you know, if he's sitting over at the

6  Westin or whatever.

7          But I also don't feel it's appropriate to have

8  these witnesses have to sit around and wait.  And so the --

9  you know, the alternative in several of these motions was

10 for a protective order, to some degree.  That is requiring

11 the government to make a more certain time frame for when

12 these witnesses would be needed.  And so each one of the

13 witnesses, I believe, has given a time frame during which

14 they are -- you know, if they must testify, when they would

15 be available.  And so I was surprised, Ms. Wood, that you've

16 not been able to work out more specifically when these

17 witnesses would be called.

18         MS. WOOD:  Your Honor, we're happy to work out

19 timing.  I think we had done that with respect to many

20 witnesses that are appearing.  We're more than happy to work

21 about -- you know, obviously we're not in complete control

22 of when the prior witness gets off the stand, that depends

23 in part on the length of the cross-examination by Google's

24 counsel.  But we're more than willing to work with these

25 witnesses and have -- with these and others, assured them

                                                          30

```
1    that we will work with the time constraints and give them as

2    much notice as possible.

3              THE COURT:  And sometimes what has to happen --

4    especially people coming from California, I mean, they're

5    going to lose almost a day in just transit and then

6    whatever -- we can always break into testimony, too.

7              MS. WOOD:  Excellent.

8              THE COURT:  So, I mean, if you've got Mr. Bender

9    coming in on -- let's say he's coming in for testimony on

10   the 13th of September, if the witness who's testifying on

11   the 12th hasn't finished, we just delay finishing and we

12   have Mr. Bender start at 9:00 on the 13th.

13             MS. WOOD:  Absolutely, Your Honor.  We have no

14   problem with that.

15             THE COURT:  All right.  So I expect you all to --

16   you've worked so well together -- to be able to work that

17   out.  When I say "you," I know we have different counsel

18   here for these different witnesses.  But I really don't have

19   to hear argument on that.  I expect you all to be able to

20   work this out in a reasonable fashion.

21             Now, the government has indicated that as to

22   Mr. Lipkovitz and Mr. Cox, you're pulling back from

23   requiring or wanting them to be here in person?

24             MS. WOOD:  I think the two issues with

25   Mr. Lipkovitz and Mr. Cox are, one, with respect to
```

31

```
1    Mr. Lipkovitz, it depends in part on discussions about the
2    videos, and now we have clarity on that.  I think with that
3    understanding that we'll be able to work with Google to
4    present Mr. Lipkovitz's testimony by video, we'll do that.
5    His investigation deposition is -- was not videotaped, so
6    that would be one -- portions of which we would read in the
7    old-fashioned way with the clerk on the stand.
8            With respect to Mr. Cox, I think the issue is that
9    he has given testimony recently in June in the MDL, and
10   pursuant to the coordination order with the MDL, that is not
11   to be used affirmatively.  So if we call him live, we could
12   explore subjects.  And to the extent we could agree with
13   opposing counsel and the Court were willing to allow for
14   that one witness alone to be able to use the MDL testimony
15   at this trial, I think that would obviate the need for
16   calling him live.  And, again, just very targeted portions
17   of that MDL deposition, just like the others.
18           THE COURT:  I don't know who's representing
19   Mr. Cox.  Why don't you all come up.
20           MS. CLARK:  Juliet Clark and Amy Manning from
21   McGuireWoods.  Ms. Manning will cover argument.
22           THE COURT:  Good morning.
23           MS. MANNING:  Good morning, Your Honor.
24           THE COURT:  Have you talked with the government
25   about that possibility of the MDL testimony being used?
```

```
 1              MS. MANNING:  No.  They have not contacted me at
 2    all about Mr. Cox.  This is the very first conversation.
 3              THE COURT:  Offhand, do you have a position on
 4    that?
 5              MS. MANNING:  I think that might be between Google
 6    and the government, what they want to do on his MDL
 7    testimony.  So I don't think I have a position on it.
 8              THE COURT:  You don't object?
 9              MS. MANNING:  I don't.
10              THE COURT:  All right.  Well, then -- thank you.
11              I think then you all need to see if you can work
12    that out; all right?
13              MS. WOOD:  Yes, Your Honor.
14              MS. RHEE:  Yes.  So the --
15              THE COURT:  I'm sorry?
16              MS. RHEE:  The parties here, Your Honor, Google
17    and the government, have been talking about what Ms. Wood is
18    proposing.  I think we just -- speaking for Google here, we
19    are talking to the government about exactly what they have
20    in mind, and we are very hopeful that we can reach a
21    resolution and come to the Court.
22              THE COURT:  Would we need to have an order in the
23    Texas case getting leave to use that testimony?  There's no
24    court order that would restrict this?
25              MS. RHEE:  It's not the Texas case, Your Honor;
```

33

```
 1   it's the MDL.

 2               THE COURT:  Oh, okay.

 3               MS. RHEE:  So again --

 4               THE COURT:  I mean, I could call Judge Castel if

 5   you wanted me to.  Is that necessary?

 6               MS. RHEE:  We don't think that that's going to be

 7   an issue; it's really just about what the clips are, what

 8   the excerpts are.  And we just ran out of time, frankly, to

 9   be able to do that back-and-forth exchange.

10               THE COURT:  All right.  But it does sound then as

11   though those two witnesses will not need to be here.

12               MS. WOOD:  Yes, Your Honor.  With those

13   understandings, absolutely.

14               THE COURT:  All right.  As to the other four,

15   that's Mr. Bender, Mr. Spencer, Mr. Srinivassan and

16   Mr. LaSala, those witnesses would be coming live?

17               MS. WOOD:  Yes, Your Honor.

18               THE COURT:  But the government does need to work

19   out a reasonable time frame.

20               MS. WOOD:  Absolutely, Your Honor.

21               THE COURT:  All right.  The attorneys representing

22   those witnesses, I mean, you've entered your appearances on

23   paper.  I don't need to really hear any argument, but I'm

24   going to assume, since I think all of you, possibly with the

25   exception of Mr. LaSala, did have the caveat or the request,
```

34

 1    you know, in lieu of quashing the subpoena, could we work

 2    out an arrangement.

 3             Do you have any objection if we can work out the

 4    time frame that your clients have talked about?  No.  Okay.

 5             So the burden is on you all to work it out.  But,

 6    as I said, I think the smart thing would be to have a time

 7    certain for these witnesses.  All right.  So if it's 9:00,

 8    no matter where we were the day before, at 9:00 we start

 9    fresh with that witness.  I can keep track of, you know,

10    prior witnesses' testimony.  All right.

11             All right.  I think that takes care of everything

12    I had.

13             Is there anything further that you want to raise?

14             MS. WOOD:  Nothing, Your Honor.

15             THE COURT:  Ms. Rhee, what about from Google?

16             MS. RHEE:  No, Your Honor.  And we do appreciate

17    the Court's observation about the accommodation.

18             THE COURT:  All right.  And, again, we have the --

19    don't leave without your badges.  All right.

20             MS. RHEE:  I can assure you, we're absolutely not

21    leaving without those badges.

22             THE COURT:  Have your tech people all worked with

23    Mr. Bachman in terms of the technology?

24             MS. WOOD:  Yes, Your Honor.

25             MS. RHEE:  For Google, it's scheduled for

                                                              35

```
 1    tomorrow.
 2            THE COURT:  For tomorrow.  All right.  That's
 3    fine.  All right.  Some of your folks will be here with
 4    that.  And, as I said, the space will be available to you.
 5            You should probably check with my court security
 6    officer, Mr. Hendrick, about when you're going to come in on
 7    Friday.  I have a docket in the morning.  I have a docket in
 8    the morning at 10, and I have a plea at 2.  So you'll have
 9    to work around that schedule.  But we want to get everything
10    in the courthouse, in the clerk's office, in those rooms so
11    we're all set to go; all right?
12            MS. RHEE:  Absolutely, Your Honor.
13            THE COURT:  All right.  And even though
14    technically the government could get access to space in this
15    building sooner, you have to play by the same rules as
16    Google.
17            MS. WOOD:  We're more than happy to play by the
18    same rules.
19            THE COURT:  You can't come in on Saturday and play
20    around with the stuff; all right?
21            MS. WOOD:  Of course not.
22            THE COURT:  Okay.  Very good.  Well, we'll see you
23    all on Monday.
24            Again, I'll just remind you all, there's still
25    time to settle.
```

                                                              36

1          MS. WOOD:  Thank you, Your Honor.

2          THE COURT:  All right.

3          MS. WOOD:  Much appreciated.

4          THE COURT:  We'll recess court.

5             (Proceedings adjourned at 10:45 a.m.)

6          ----------------------------------

7   I certify that the foregoing is a true and accurate

8   transcription of my stenographic notes.

9

10                          *Stephanie Austin*

11                          Stephanie M. Austin, RPR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    37