# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| COMMONWEALTH OF VIRGINIA, | ) |
| STATE OF ARIZONA, | ) |
| STATE OF CALIFORNIA, | ) |
| STATE OF COLORADO, | ) |
| STATE OF CONNECTICUT, | ) |
| STATE OF ILLINOIS, | ) |
| STATE OF MICHIGAN, | ) |
| STATE OF MINNESOTA, | ) |
| STATE OF NEBRASKA, | ) |
| STATE OF NEW HAMPSHIRE, | ) |
| STATE OF NEW JERSEY, | ) |
| STATE OF NEW YORK, | ) |
| STATE OF NORTH CAROLINA, | ) |
| STATE OF RHODE ISLAND, | ) |
| STATE OF TENNESSEE, | ) |
| STATE OF WASHINGTON, | ) |
| and | ) |
| STATE OF WEST VIRGINIA, | ) |
| | ) |
| Plaintiffs, | ) |
| | )   No.: 1:23-cv-108-LMB-JFA |
| v. | ) |
| | ) |
| Google, LLC, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
(REMEDIES PHASE)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs United States of America, the Commonwealth of Virginia, and the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington and West Virginia hereby request that Defendant Google LLC produce the documents requested below, in accordance with the Stipulation and Order Regarding Discovery Procedure ("ESI Order") (ECF No. 142),

1

and Local Civil Rule 26(d), as soon as possible and no later than 30 days after service of this request. Documents shall be produced at the office of the U.S. Department of Justice, Antitrust Division, 450 Fifth Street NW, Washington, DC 20530, or at any other place counsel for the parties may agree.

## DEFINITIONS

1. The terms "Google" or "Defendant" mean Google LLC, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control.

2. The term "Action" means the above-captioned action, *United States of America et al. v. Google LLC*, No. 1:23-cv-108-LMB-JFA, pending in the United States District Court for the Eastern District of Virginia.

3. The term "Documents" means all written, printed, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on social media accounts like Twitter or Facebook, chats, instant messages, text messages, other Messaging Applications, and documents contained in Collaborative Work Environments and other document databases. "Documents" includes metadata, formulas, and other embedded information whether hidden or visible, including but not limited to comment, protocomment, and linked to documents including but not limited to "go/" linked documents, and bibliographic or historical data describing or relating to any document. Unless otherwise specified, "documents" excludes bills of lading, invoices in non-electronic form, purchase orders, customs declarations, and other similar documents of a purely transactional nature; architectural plans and engineering blueprints; and documents

solely relating to environmental, tax, human resources, OSHA, or ERISA issues.

4. The term "Foreign Competition Authority" means any foreign regulatory, competition, or antitrust authority including but not limited to: the Directorate-General for Competition (European Commission); the Competition and Markets Authority (United Kingdom), the Competition Bureau Canada, the French Competition Authority (Autorité de la concurrence), and the Australian Competition and Consumer Commission.

5. The term "GAM" refers to Google Ad Manager, including both AdX and DFP.

6. The term "Person" means any natural person, corporate entity, business entity, partnership, association, joint venture, governmental entity, or trust.

7. The term "Related Action" means *The State of Texas et al. v. Google LLC*, No. 4:20-cv-00957-SDJ (E.D. Tex.) and *In re: Google Digital Advertising Antitrust Litigation*, No. 21-md-3010 (PKC) (S.D.N.Y.) including all individual cases consolidated therein.

8. The term "Relevant Product" means Google's AdWords, AdX, and DFP products (as referred to in Section V.C. (pages 28-29) of the Court's Memorandum Opinion dated April 17, 2025), including any prior or subsequent name used to designate these products or any offering containing these products. For the avoidance of doubt, this term expressly includes Google Ads, Google Display Network (GDN), and Google Ad Manager (or GAM), including Google Ad Manager 360.

9. The term "OKR" means "objectives and key results."

## INSTRUCTIONS

1. Each request for production shall be answered in accordance with the Federal Rules of Civil Procedure and shall be continuing to the extent permitted under Rule 26(e).

3

Google must supplement or amend Google's responses to this request as appropriate pursuant to Rule 26(e).  Pursuant to E.D.V.A. Local Rule 26(c), any objections to this request must be served on plaintiffs' counsel within 15 days of service of this request.

2. Unless otherwise noted, these requests seek all responsive Documents created, modified, sent, or received from January 1, 2019 through the present.

3. Each request shall apply to Documents or materials in Google's possession, custody, or control, regardless of whether such Documents or materials are possessed by Google or Google's present or former domestic or foreign parents, subsidiaries, divisions, subdivisions, affiliates; Google's predecessor and successor entities; or by any of Google's employees, agents, representatives, attorneys, officers, directors, consultants, lobbyists, or any other Person acting or purporting to act on Google's behalf, including, unless privileged and such privilege has not been waived, your attorneys, and regardless of where such Documents are located.

4. In producing Documents, Google must produce a legible copy of each Document requested together with all non-identical copies and drafts of that Document. All metadata of electronic Documents must also be produced. Google must retain all of the original Documents for inspection or copying throughout the pendency of this action, any appeal(s), and any related proceedings.

5. Any responsive Document that has been altered, including by the addition of marginal notes, handwritten notes, underlining, date stamps, received stamps, or endorsed or filed stamps, and any draft, revision, modification or other version of a responsive Document, is a responsive Document in its own right and must be produced.

6. If any portion of any Document is responsive to any request, then the entire Document must be produced, including all attachments and enclosures.

7.   Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Documents must be produced either (a) as they are kept in the usual course of business (in which case, they must be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural Person in whose possession they were found or the server or central file in which they were found); or (b) identified as responsive to a specific request enumerated in this request, with such specific request identified.

8.   Subject to any protocols concerning electronically stored information agreed to by the Parties or ordered by the Court, electronically stored information and hard copy Documents must be produced in the form of production agreed to with the United States in relation to the Investigation of Google's conduct. Do not alter the format from that used during the Investigation without first discussing it with the United States.

9.   All Documents must be produced in the file folder, envelope, or other container in which the Documents are kept or maintained. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

10.  Documents attached to each other should not be separated.

11.  If identical copies of a Document are in the possession, custody, or control of more than one natural Person or other Document custodian, a copy of that Document must be produced from each such natural Person or other Document custodian.

12.  The fact that a Document is in the possession of the United States, or is produced by another Person, does not relieve Google of the obligation to produce all of Google's copies of the same Document, even if Google's copies are identical in all respects to a Document produced or held by another Person. Any Documents Google already produced to the United States during its Investigation of Google's conduct need not be reproduced unless required to comply with any protocols concerning electronically stored information agreed to

5

by the Parties or ordered by the Court.

13. If any Document is withheld based on an objection to any request, all Documents covered by that request but not subject to the objection must be produced.

14. To the extent Google contends that responsive Documents in Google's possession, custody, or control cannot be produced pursuant to the notice and consent requirements contained in a protective order or agreement, the written response to this request must identify the specific provisions of the protective order or agreement on which Google is relying and the efforts that Google has and will undertake to provide notice and obtain consents.

15. If Google is unable to produce a Document that is responsive to a request, describe the Document, state why it cannot be produced, and, if applicable, state the whereabouts of such Document when last in Google's possession.

16. Any Documents that Google deems to be Confidential or Highly Confidential as defined in the Parties' Modified Protective Order (ECF No. 203) must be produced in accordance with the terms of that Order.

17. Other than redactions of information withheld under a claim of privilege or other legal protection, Documents are to be produced in full. If any requested Document cannot be produced in full, or if Google withholds production of any Document or portion of any Document responsive to the requests based upon any privilege or other legal protection, produce it to the extent possible and provide a description in accordance with the ESI Order.

18. The use of the singular form of any word includes the plural and vice versa.

19. Any reference to a Person that is a business entity and is not otherwise defined includes: that Person's predecessors (including any pre-existing Person that at any time became part of that entity after merger or acquisition), successors, parents, divisions,

subsidiaries, affiliates, franchisors and franchisees; each other Person, directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

20. Documents responsive to this request shall be produced at the offices of the U.S. Dept. of Justice, Antitrust Division, 450 Fifth Street, NW, Washington, DC 20530.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1**

Produce all internal and external-facing business, financial, or technical analyses, projections, and/or forecasts concerning (a) any actual or potential remedy for alleged anticompetitive conduct by Google related to its digital advertising business, (b) any potential sale or divestiture of any Relevant Product, including all data underlying all such analyses; (c) any cost, burden, challenge, complication, and/or difficulty related to the divestiture of any Relevant Product, including all data underlying such analyses. For the avoidance of doubt, this includes all documents related to Project Sunday and/or Project Monday, even to the extent they were previously withheld from production.

**REQUEST NO. 2**

Produce all communications, briefs, white papers, presentations, expert declarations, expert reports, and any other advocacy or analysis submitted or referenced by Google to any Foreign Competition Authority concerning any actual or potential remedy for alleged anticompetitive conduct by Google related to its digital advertising business, including all data and/or documents cited or relied upon therein.

7

**REQUEST NO. 3**

Produce documents sufficient to show any changes made to Google's products and services as a result of Google's agreement with the French Competition Authority related to Google's digital advertising business and all documents concerning any subsequent effect(s) thereof.

**REQUEST NO. 4**

Produce all discovery responses, declarations, expert reports, fact or expert deposition transcripts (including exhibits thereto), trial testimony, briefs, pleadings, or filings from any Related Action concerning (a) any actual or potential remedy for alleged anticompetitive conduct by Google related to its digital advertising business, (b) the feasibility or possibility of Google divesting any Relevant Product, and/or (c) the financial viability of any business operating any divested Relevant Product.

**REQUEST NO. 5**

Produce all discovery responses, declarations, expert reports, fact or expert deposition transcripts (including exhibits thereto), trial testimony, briefs, pleadings, and filings from the cases *United States of America, et al., v. Google LLC*, No. 1:20-cv-03010-APM and *State of Colorado, et al., v. Google LLC*, No. 1:20-cv-03715-APM (both currently pending in the U.S. District Court for the District of Columbia) concerning the feasibility or possibility of Google divesting any software or software product.

**REQUEST NO. 6**

For each software system within in the most recently deployed version of GAM, including both front-end and back-end software, produce documents sufficient to show how each system currently communicates with other software systems within GAM and the nature of those communications, including but not limited to software design documents, internal and external

8

dependency maps, architecture diagrams, presentations, data flow diagrams, API and RPC payloads, and communication protocols. For the avoidance of doubt, this includes such documents developed for prior versions of GAM, but which describe communications between systems in the most recently deployed version.

**REQUEST NO. 7**

From 2020 to the present, produce documents sufficient to show the flow of data, including but not limited to user data, advertiser bidding data, ads data, and bid request data, through all GAM systems, including documents such data flow diagrams, system interaction documentation, data processing workflows or presentations (e.g., "lifecycle of a bid request" walkthroughs), logging systems, and relevant engineering documentation (e.g., "go/" documentation pages) describing how data is collected, stored, processed, anonymized, protected with respect to privacy and/or fraud detection, and transmitted across GAM systems, and the schemas describing all such data.

**REQUEST NO. 8**

From 2016 to the present, produce Application Programming Interface (API) and Remote Procedure Call (RPC) specification documentation for all internal and external GAM, AdX, and DFP API and RPC endpoints, including documentation sufficient to show the access and use of each function and data transfer, including relevant data schemas, for each API and RPC endpoint.

**REQUEST NO. 9**

From 2020 to present, for each external service, partner, or platform integrated with GAM, produce documents sufficient to show all third-party integrations with GAM, including technical specifications, cost and licensing agreements, API documentation, data-sharing policies, and security assessments.

**REQUEST NO. 10**

From 2020 to the present, produce documentation sufficient to show the server and deployment infrastructure for systems of GAM, including but not limited to deployment maps and configurations for all GAM systems, system or infrastructure architecture diagrams, deployment configurations and deployment scripts, server locations, redundancy procedures, network integration plans, load balancing configurations, failover mechanisms, storage and database architectures, cloud services, scaling strategies, and future development or product plans for software or server infrastructure changes.

**REQUEST NO. 11**

From March 2024 to present, produce all live deployment reports, including but not limited to records, logs, schedules, and documentation relating to the deployment of GAM, DFP, and AdX into live production environments.

**REQUEST NO. 12**

Produce or make available for inspection the most recent source code for GAM, DFP, and AdX and produce, from 2020 to the present, the commit histories and change logs for GAM, DFP, and AdX, including but not limited to:

1) the code bases for GAM, AdX, and DFP application source code, including front-end and back-end systems;

2) any relevant infrastructure and deployment source code, such as deployment scripts, project build or configuration files;

3) a written or diagrammatic description of the provided folder structure as it pertains to the location of files or folders relevant to the core features, systems, sub-systems, or modules within GAM, DFP, and AdX, for both application and deployment code; and

4) documents sufficient to identify any external dependencies of the aforementioned

10

files/folders to any modules, services, databases, and code bases that fall outside of these code bases.

**REQUEST NO. 13**

From 2020 to the present, produce all plans, roadmaps, and OKR documents for all GAM software systems, including future product and feature plans, strategy documents, engineering memos, and system integration documentation, as well as detailed OKRs for each system outlining objectives, key results, and progress tracking.

**REQUEST NO. 14**

From 2020 to the present, produce comprehensive change logs sufficient to show all modifications to the GAM system over time, including feature updates, bug fixes, architectural changes, API modifications, and any other system changes.

**REQUEST NO. 15**

Produce the latest versions of all organizational charts and/or similar documents that include reporting structures, personnel biographies and job function descriptions, physical and business product allocation of personnel, and physical and engineering resources across teams within GAM, including but not limited to teams responsible for frontend and backend software development of GAM systems, teams responsible for deploying and monitoring GAM performance, and teams responsible for server architecture and infrastructure used to distribute GAM instances.

**REQUEST NO. 16**

Produce documentation sufficient to show Google's current software engineering coding standards, including without limitation guidelines, best practices, presentations, handbooks, and requirements for code development, review, testing, and deployment for engineering components and onboarding documents for new engineers, related to GAM, AdX, DFP, and/or

11

related services that are required for their functions.

**REQUEST NO. 17**

From 2020 to present, produce all documents used to explain to Google employees, including but not limited to software and service or site reliability engineers, the software architecture and deployment of microservices within or used by GAM, AdX, or DFP, including but not limited to presentations, diagrams, architecture walkthroughs, "go/" or other internal documentation pages, onboarding documents, and design documents that describe the general architecture of GAM, AdX, or DFP and interactions between the microservices that are used by GAM, AdX, or DFP. For the avoidance of doubt, this pertains to documents that are relevant to or descriptive of the most recently deployed version of GAM.

**REQUEST NO. 18**

From 2020 to the present, produce documents sufficient to show the metrics, scale, performance, audits, and engineering and financial cost analyses of operating GAM systems at scale, including system performance reports, benchmark analyses, cost analyses of operating GAM systems at scale, infrastructure and scalability documentation, internal audit reports, latency and efficiency evaluations, and any related engineering documentation tracking system performance over time.

**REQUEST NO. 19**

From 2020 to present, produce technical "service level agreement" (or "SLA") contracts, including original, modified, and renewed contracts referenced in such contracts, with the three largest customers of GAM that include uptime, availability, and resolution time and other SLA-pertinent information.

**REQUEST NO. 20**

From 2015 to the present, to the extent not previously produced, produce documents

sufficient to show profits and losses statements for GAM, including any component or system within GAM, documents should include projected revenues, costs, growth assumptions and forecasts, any supporting financial analyses or planning documents and documents sufficient to show the methods of accounting used to develop such forecasts, for each year should they differ from year to year, and any planning documents and internal reporting decks (e.g., quarterly financial and business operations update packages delivered to GAM or Google leadership). For the avoidance of doubt, for the years when AdX and DFP profit and losses statements including projected revenues, costs, growth assumptions and forecasts were recorded separately, produce documents sufficient show how these were recorded within Google.

**REQUEST NO. 21**

From 2018 to the present, produce documents sufficient to show how Google categorizes GAM customers, including but not limited to demographics, industry, geography, product pricing schedule (e.g., by ad volume, publisher page count, discounts), company size, whether the customer is an enterprise, SMB, or consumer, or any other factors Google uses to internally categorize customers.

**REQUEST NO. 22**

From 2018 to the present, produce documents sufficient to show, on a quarterly basis, all key business health metrics tracked for GAM (including a breakdown of DFP and AdX), including but not limited to growth rate, churn rate, percent premium, customer lifetime value (CLTV), and gross margins.

**REQUEST NO. 23**

Produce all documents, data, and/or source code files on which Google or its experts intend to rely in remedy proceedings in this Action.

Dated: May 2, 2025

Respectfully submitted,

FOR THE UNITED STATES:

/s/ *Julia Tarver Wood*
JULIA TARVER WOOD
MICHAEL E. WOLIN
CRAIG L. BRISKIN
ALVIN H. CHU

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Email:
Julia.Tarver.Wood@usdoj.gov

FOR THE PLAINTIFF STATES:

JASON S. MIYARES
Attorney General of Virginia

/s/ *Tyler T. Henry*
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email:
thenry@oag.state.va.us

Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington and West Virginia