# EXHIBIT 5

1

------------------------------------------

IN RE:

GOOGLE ANTITRUST INVESTIGATION

60-516110-0009

------------------------------------------

**HIGHLY CONFIDENTIAL **

REMOTE VIDEOTAPED DEPOSITION OF

PHILIPP SCHINDLER

Wednesday, October 6, 2021

8:36 a.m. (PT)

Reported by:

Joan Ferrara, RMR, FCRR

Job No. 2021-813493

Page 229

**P. SCHINDLER - HIGHLY CONFIDENTIAL**
**whatever you want to do.**
     MR. NIERLICH:  Whatever is most
convenient for you, that's just fine.
     **THE WITNESS:  Let's take a short**
**break and I'll be back in 5 to 10.**
     THE VIDEOGRAPHER:  Off the record
at 2:51 p.m.
     (Recess taken from 2:51 p.m. to
3:02 p.m.)
     THE VIDEOGRAPHER:  Back on the
record at 3:02 p.m.
     MR. NIERLICH:  Seumas, could you
upload Document W, please.
     (Schindler Exhibit 17, E-mail,
Bates GOOG-DOJ-09442889 to 890,
remotely introduced and provided
electronically to the reporter.)
BY MR. NIERLICH:
     Q.    We'll mark as Exhibit 17 a
document with Document Control Nos.
GOOG-DOJ-09442889 to 890.
     Have you received that document,
Mr. Schindler?
     **A.    It starts with -- from Philipp,**

Page 230

**P. SCHINDLER - HIGHLY CONFIDENTIAL**
**from me to Sundar, right, on 5/6/2019?**
     Q.    That is the document, yes.
     **A.    Yes.**
     Q.    And Mr. Schindler, is this a true
and correct copy of an e-mail you will sent
Mr. Pichai on or around May 6, 2019?
     **A.    So just reading the header of it,**
**it seems like it.**
     Q.    Please take whatever time you
need to review the document, but my
question will be, why did you send this
document on to Mr. Pichai?
     **A.    Yeah, I would need to have to**
**read it.  So give me a minute, please.**
     **Okay.  Sorry it look a little**
**long.  It's a long article.  Okay, so**
**what's your question, please?**
     Q.    To restate the question, why did
you send this article on to Mr. Pichai?
     **A.    Because -- not that I remember**
**the reason -- it's not that I remember the**
**reason at the time.  My guess at the**
**moment -- can I guess?**
     Q.    I'd like your best recollection.

Page 231

P. SCHINDLER - HIGHLY CONFIDENTIAL
     **A.    Well, I don't have a recollection**
**of what motivated me to send something to**
**Mr. -- to Sundar over two years ago.  Like**
**I really don't have that level of memory or**
**capacity.  But it touches a lot of the PAs**
**he's responsible for, especially Chrome.**
**So I can only guess that I assume that this**
**is relevant for him.**
     Q.    And you understand that at least
in part this article is identifying
potential difficulties for Google Ad Tech,
certain Google Ad Tech competitors as a
result of privacy changes, is that right?
     **A.    That seems to be what the article**
**is implying somewhere towards the end, I**
**think.**
     Q.    And do you believe those concerns
are accurate?
     **A.    Can you describe what those**
**concerns are a bit more precisely, please?**
     Q.    Sure.
     This article says that -- and I'm
referring now towards the end of the
article -- that changes could be damaging

Page 232

P. SCHINDLER - HIGHLY CONFIDENTIAL
to Google competitors that use cookies or
resell data collected via cookies to
companies hoping to better target ads.
     Do you see that?
     **A.    Yes, at the end, I see that.**
     Q.    And I'm asking if you agree with
that assessment from this article?
     **A.    I'm not sure I would agree with**
**that.**
     Q.    In what way do you disagree?
     **A.    Because there is a -- if we**
**step -- if we step back a little bit, there**
**is a strong push by privacy regulators**
**across the world, from what I understand,**
**to basically get to a more privacy friendly**
**ecosystem, or however you want to describe**
**it.  And they are very -- they're looking**
**very closely or have closely signaled, from**
**what I understand, that cookies is not part**
**of a privacy friendly ecosystem, or their**
**understanding of a privacy friendly**
**ecosystem.**
     **So if you think about the**
**long-term and you think about an ecosystem**

Page 233

**P. SCHINDLER - HIGHLY CONFIDENTIAL**
**that is healthy over many, many years to**
**come and privacy regulators are going**
**against the notion of cookies, then you**
**probably have to think about other means**
**that are more privacy safe to replace**
**partially or fully some of the**
**functionality of cookies for players in the**
**ecosystem.**
**So I feel the privacy advocates**
**have a very, very strong voice here.  So if**
**privacy regulators exert that level of**
**pressure on the ecosystem over time, I**
**don't think the ecosystem can successfully**
**resist or maybe even should successfully**
**resist that pressure.  And you could make**
**the case that in the long run in the**
**ecosystem is better off by finding**
**solutions that are more privacy safe and**
**work with the approval of the privacy**
**regulators.**
    Q.    Are there any more privacy safe
methods that you're specifically thinking
of when you say that?
    **A.    Well, we have -- we have**

Page 234

**P. SCHINDLER - HIGHLY CONFIDENTIAL**
**introduced technology recently.  I'm not**
**exactly sure the timing, the date -- that**
**is trying to take a first stab at some of**
**those things, right.  We called it publicly**
**privacy sandbox, and there is a bunch of**
**technologies underneath that I can't**
**explain in all the details,**



    Q.    Okay.  You can set aside Exhibit
17.  Thank you, Mr. Schindler.

Page 235

P. SCHINDLER - HIGHLY CONFIDENTIAL
We talked briefly earlier about
potential acquisitions.  Is Google
currently considering any potential
divestitures with respect to any of
Google's Ad Tech products or services?
    MR. MAHR:  And again, I'll
  instruct the witness not to respond to
  the question to the extent it requires
  you to reveal anything you've learned
  as a result of attorney-client
  communications or attorney work
  product.
    **A.    So this is something, like this**
**overall topic that you're raising, I've**
**only discussed under privilege.  So I**
**wouldn't be comfortable sharing.**
    Q.    Okay.
So to be clear on the record, are
you declining to answer the question on the
basis of privilege?
    **A.    I guess that's the legal way of**
**saying this, yes.**
    MR. MAHR:  You're allowed to
  decline on the basis of my instruction

Page 236

P. SCHINDLER - HIGHLY CONFIDENTIAL
  not to respond to the extent it would
  require you to divulge privileged
  information.
    He's asking you if you will be
  following my instruction.
    **A.    Yeah, I will follower Rick's**
**instructions, yeah.**
    Q.    Okay.  Then I anticipate that
Mr. Mahr may have other objections to raise
as to questions I will be asking.  So I
will ask the questions.  And please pause
for a moment before you respond, in case he
wishes to do so.  And if he doesn't, then I
would look forward to your answer.  And if
he does, then please let us know whether
you're following his instruction or not.
Okay?
    **A.    Yes, I'll do that.**
    Q.    Has Google considered any
divestitures with respect to any of
Google's Ad Tech products or services
within the LaSala three years?
    MR. MAHR:  Same objection and
  same instruction.  To the extent you

Page 237

P. SCHINDLER - HIGHLY CONFIDENTIAL
can answer without divulging privileged information, you're welcome to do so. But to the extent responding would require you to divulge privileged information, the instruction is not to do so.

**A. Yeah, I would follow Eric's advice on this one.**

Q. What is Project Sunday?

MR. MAHR: Same objection and same instruction.

**A. I would follow his instructions here as well.**

Q. Who initiated Project Sunday?

MR. MAHR: I think you can answer who initiated the project, if you know.

**A. I'm actually not quite sure about this.**

Q. Was Project Sunday initiated by someone in the legal department, or in a business unit, or otherwise?

**A. Again, I'm not quite sure about it. I'm not -- I'm not sure exactly.**

Page 238

P. SCHINDLER - HIGHLY CONFIDENTIAL

Q. When did you first learn of Project Sunday?

**A. I'm not sure I can pinpoint a specific date. I don't remember a specific date. I mean, it wasn't many, many years ago, but I don't remember exactly, sorry.**

Q. Okay.

Can you estimate generally when you first learned of Project Sunday?

**A. No, no, I couldn't. I couldn't come very close.**

Q. Who is in charge of Project Sunday on the executive level?

**A. In charge or participating in it? It's very difficult to define what "in charge" means at Google.**

Q. Well, to the extent that anyone had ultimate responsibility for Project Sunday on the executive level, was ultimately in charge, I'm asking who that person was?

**A. I would not be able to identify that person. That's not how Google operates.**

Page 239

P. SCHINDLER - HIGHLY CONFIDENTIAL

Q. Can you expand on that? What do you mean "that's not how Google operates"?

**A. Would you include on the executive level our CEO -- just excuse me for the question, but would you include our CEO, Sundar Pichai?**

Q. Let's say anyone in the Google leads group.

**A. Yeah, I don't think there is a specific person that is in charge. This is not our operating structure.**

**So it's very difficult to say who is actually in charge of something in the sense of how you defined it.**

Q. Who was responsible for Project Sunday on a day-to-day basis?

MR. MAHR: I'm going to object again and instruct the witness not to answer to the extent it requires him

Page 240

P. SCHINDLER - HIGHLY CONFIDENTIAL
to divulge privileged information.

I just note for the record that the Department has asked us a lot of these questions and we've provided answers in writing. The Department is also pursuing, I understand, a 30(b)(6) type deposition on this. And because the company is engaging with the Department on these issues, in that context I don't think it makes sense for Mr. Schindler to be put on the spot in answering these questions when we can't do the kind of careful privileged analysis with each question that we can do and are doing in response to those written requests that you've made.

MR. NIERLICH: Respectfully, Mr. Mahr, Mr. Schindler is here for his deposition. We're going to ask him questions. We do appreciate that you may instruct him not to answer and that he may not answer, and if he does so, then we will proceed accordingly.

*Privileged and Confidential*
*Attorney-Client Communication*

HIGHLY CONFIDENTIAL

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:     In Re: Google Antitrust litigation

Dep. Date:     October 6, 2021

Deponent:     Philipp Schindler

CORRECTIONS:

| Page Line | Changes or Corrections and Reasons |
| --- | --- |
| 16:5, 28:11, 28:14, 28:17, 28:21, 41:18, 41:20, 41:24, 73:18-19, 74:18, 76:2, 80:25-81:2, 84:6, 107:16, 108:24, 115:19, 115:24-25, 116:9-10, 116:13, 116:18, 116:19, 116:21-22, 145:7, 145:10, 156:10, 156:11, 156:13, 159:2, 159:4, 208:18, 209:2, 209:7, 219:5, 219:18, 220:16, 220:21, 221:24-25, 222:18, 224:7, 224:22, 225:2, 225:12, 227:10, 227:18, 227:24, 231:12, 231:13, 235:6, 236:22, 251:20, 252:12, 254:8, 255:8, 256:5 | The words "Ad Tech" should read "ad tech" (Transcription Error) |
| 22:14, 22:16, 22:19, 23:6, 24:9 | The words "Google AdManager" should read "Google Ad Manager" (Transcription Error) |
| 123:15, 123:25, 133:2, 133:13 | The word "AdManager" should read "Ad Manager" (Transcription Error) |

*Privileged and Confidential*
*Attorney-Client Communication*

| | |
|---|---|
| 221:21-23 | The sentence "We first resolved it to what I mentioned before on slow tech or bad tech, right." should read "We -- what I mentioned before on slow tech or bad tech, right." (Transcription Error) |
| 222:6 | The word "can" should read "can't" (Transcription Error) |
| 222:12 | The word "used" should read "use" (Transcription Error) |
| 222:25 | The word "I" should read "you" (Transcription Error) |
| 226:21 | The word "for" should read "on" (Clarity) |
| 227:5 | The words "forced our product folks --" should be inserted after "basically --" and before "basically like do some changes." (Transcription Error) |
| 230:6 | The word "will" should be removed (Transcription Error) |
| 233:17 | The words "in the long run in the ecosystem" should read "in the long run the ecosystem" (Transcription Error) |
| 236:7 | The word "Rick's" should read "Eric's" (Transcription Error) |
| 257:25 | A period should be inserted at the end of the words "This concludes today's deposition" (Transcription Error) |

I have inspected and read my deposition and have listed all changes and corrections above, along with my reasons therefor.

Date: January 4, 2022     Signature: _____