# EXHIBIT 6

1

1      UNITED STATES DEPARTMENT OF JUSTICE
       ANTITRUST DIVISION, WASHINGTON, D.C.
2

3   PURSUANT TO CIVIL INVESTIGATION DEMAND NO. 30762

4

5              "HIGHLY CONFIDENTIAL"

6

7           ORAL VIDEOTAPED DEPOSITION

8                 JERRY DISCHLER

9               FEBRUARY 3, 2022

10

11     ORAL VIDEOTAPED DEPOSITION OF JERRY DISCHLER,

12 produced as a witness at the instance of the United

13 States Department of Justice and duly sworn, was taken

14 in the above-styled and numbered cause on the 3rd day of

15 February, 2022, from 9:02 a.m. to 2:48 p.m. PST, before

16 Melinda Barre, Certified Shorthand Reporter in and for

17 the State of Texas, reported by computerized stenotype

18 machine, all parties appearing remotely via web

19 videoconference, pursuant to the rules of procedure and

20 the provisions stated on the record or attached hereto.

21

22

23

24

25

Page 97

1  Q.  Underneath that there is some text in normal
2 type and some in italics.  Does this indicate anything
3 about who authored particular texts as between you and
4 Ms. Romain?
5  A.  I believe so.
6  Q.  And what does it indicate?
7  A.  I believe the italicized text comes from
8 Danielle Romain, and the normal text is from me.
9  Q.  You see there's a line that states, "A few
10 quick thoughts on strategic value."  And that's in
11 italics, so that's from _____.  Is that right?
12  A.  That is correct.
13  Q.  And under that first dash, "Obvious but
14 important point.  The buy-side platforms have been
15 critical compliments to our sell-side businesses."
16      Do you see that?
17  A.  I do.
18  Q.  Did you have any understanding of what that
19 meant when you received this e-mail?
20  A.  My understanding is limited to the statement
21 that ____ -- or that ____ -- apologies -- makes
22 here after the colon in the sentence.
23  Q.  Do you have any other understanding of how
24 Google's buy-side and sell-side platforms are critical
25 complements for one another?

Page 98

1  A.  Yes.
2  Q.  And what is that?
3  A.  That the sell side, our sell-side technology
4 serves publishers.  Those publishers primarily are on
5 the open internet and use the advertising revenue from
6 their publishing platform to provide free access to
7 content in exchange for advertising revenue and that
8 that is beneficial both to advertisers and to consumers.
9  Q.  And in what way are the buy-side platforms
10 critical complements to that effort on the sell side?
11  A.  The buy-side platform is employed by the
12 advertiser and, therefore, having healthy publishers
13 gives them something to buy.
14  Q.  Is there any other way in which you're aware of
15 the buy-side and sell-side platforms being complements
16 for one another?
17  A.  No.
18  Q.  Is Google currently considering any potential
19 acquisitions in the ad tech space?
20  A.  Not to my knowledge, no.
21  Q.  Has Google considered any potential
22 acquisitions in the ad tech space in the past three
23 years?
24  A.  I'm not sure.
25  Q.  To your knowledge?

Page 99

1  A.  To my knowledge, no.
2  Q.  Is Google currently considering any potential
3 divestitures with respect to any of Google's ad tech
4 products or services?
5      MS. ELMER:  Instruct the witness not to
6 answer to the extent that the answer would call for
7 information that may be protected by the attorney/client
8 privilege or the work product doctrine.
9  A.  So, I mean, any information on that topic would
10 be protected by attorney/client privilege.
11  Q  (By Mr. Nierlich)  To clarify, I'm not asking
12 for legal advice concerning potential divestitures but
13 simply asking as a matter of Google's business if you're
14 aware of Google considering -- currently considering any
15 potential divestitures with respect to Google's ad tech
16 products or services?
17      MS. ELMER:  And I give the same
18 instruction.
19  A.  My previous answer stands.
20  Q.  (By Mr. Nierlich)  And that is that you are
21 declining to answer the question on the basis of
22 assertion of privilege?
23  A.  That is correct.
24      MS. ELMER:  And the work product doctrine.
25  Q.  (By Mr. Nierlich)  Has Google considered any

Page 100

1 divestitures with respect to any of Google's ad tech
2 products or services within the past three years?
3      MS. ELMER:  Same instruction.
4  A.  Same answer.
5  Q.  (By Mr. Nierlich)  And, again, you're taking
6 your counsel's advice not to answer the question?
7  A.  That is correct.
8  Q.  What is the future of display review?
9  A.  I'm not sure what the future of display review
10 is.
11  Q.  Are you familiar with something called the
12 future of display review that was conducted in
13 connection with Mr. Pichai?
14  A.  Possibly.  I would have to see a document or
15 meeting notes in order to understand given the very
16 high-level description of the topic.
17      MR. NIERLICH:  Kacey, can you upload
18 Exhibit 8, please.
19  Q.  (By Mr. Nierlich)  Mr. Dischler, we will ask
20 the court reporter to mark as Exhibit 8 a document that
21 the document control number is beginning at
22 GOOG-DOJ-AT-00048018.  Please let me know when you've
23 received Exhibit 8.
24      (Exhibit 8 marked)
25  A.  I have received it.  I am currently reviewing

*Privileged and Confidential*
*Attorney-Client Communication*

HIGHLY CONFIDENTIAL

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:   In Re: Google Antitrust Investigation

Dep. Date:   February 3, 2022

Deponent:    Jerry Dischler

CORRECTIONS:

| Page | Line | Changes or Corrections and Reasons |
|---|---|---|
| 5 | 16 | Add "today" after "joined" (transcription error) |
| 20 | 15 | The word "principal" should read "principle" (transcription error) |
| 22 | 17 | The name "Srini" should read "Sridhar" (transcription error) |
| 23 | 20 | The word "frequent" should read "frequently" (transcription error) |
| 24 | 1 | The name "Christina Sue" should read "Christina Hsu" (transcription error) |
| 36 | 24 | The word "TAC" should read "take" (transcription error) |
| 37 | 12 | The word "TAC" should read "take" (transcription error) |
| 46 | 7 | The word "Spiro" should read "Spero" (transcription error) |
| 46 | 7 | The name "Alan" should read "Allan" (transcription error) |
| 66 | 2 | The word "DB360" should read "DV360" (transcription error) |
| 66 | 4 | The word "DB360" should read "DV360" (transcription error) |
| 66 | 11 | The word "DB360" should read "DV360" (transcription error) |
| 69 | 24 | The word "DB360" should read "DV360" (transcription error) |
| 70 | 7 | The word "DB360" should read "DV360" (transcription error) |
| 71 | 3 | The word "supply" should read "provide" (transcription error) |
| 81 | 2 | The word "DB360" should read "DV360" (transcription error) |
| 92 | 7 | Add comma between the words "Search" and "in" (clarity) |

*Privileged and Confidential*
*Attorney-Client Communication*

I have inspected and read my deposition and have listed all changes and corrections above, along with my reasons therefor.

Date: _____03/03/2022_____    Signature: _____