UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) | Case 1:23-cv-108 |
| Plaintiffs, | ) | |
| v. | ) | Alexandria, Virginia |
| | ) | June 10, 2025 |
| GOOGLE LLC, | ) | 10:31 a.m. |
| Defendant. | ) | |
| | ) | Pages 1 - 16 |

# TRANSCRIPT OF GOOGLE LLC'S EMERGENCY MOTION FOR DISCOVERY RELIEF

BEFORE THE HONORABLE JOHN F. ANDERSON

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

DAVID TESLICKO, JR., ESQUIRE
JULIA TARVER WOOD, ESQUIRE
UNITED STATES DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 Fifth Street, N.W.
Washington, D.C. 20530
(202) 894-4266

GERARD J. MENE, ESQUIRE
OFFICE OF THE UNITED STATES ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

APPEARANCES CONTINUED:

FOR THE PLAINTIFFS:

TYLER T. HENRY, ESQUIRE
OFFICE OF THE ATTORNEY GENERAL
OFFICE OF THE SOLICITOR GENERAL
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704

FOR THE DEFENDANT:

JESSICA E. PHILLIPS, ESQUIRE, *PRO HAC VICE*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, D.C. 20006
(202) 223-7300

CRAIG C. REILLY, ESQUIRE
LAW OFFICE OF CRAIG C. REILLY
209 Madison Street, Suite 501
Alexandria, Virginia 22314
(703) 549-5354

P R O C E E D I N G S

THE COURTROOM DEPUTY: Civil Action No. 23-cv-108, *United States, et al. v. Google LLC*.

Will counsel please come to the podium and state your name for the record.

MR. HENRY: Good morning, Your Honor. Tyler Henry from the Attorney General's Office on behalf of the plaintiff states.

THE COURT: Good morning.

MS. WOOD: Good morning, Your Honor. Julia Tarver Wood on behalf of the plaintiffs from the Department of Justice. My colleague, David Teslicko, will be arguing today. With us is also Mr. Mene from the U.S. Attorney's Office.

THE COURT: Thank you. Good morning.

MR. REILLY: Good morning, Your Honor. Craig Reilly here for Defendant Google together with my cocounsel, Justina Sessions. And with the Court's permission, Ms. Sessions will be addressing the Court.

THE COURT: Thank you.

Okay. Ms. Sessions, I'll hear from you.

MS. PHILLIPS: Yes.

THE COURT: I'm going to ask a question about the practice of the law firms in this case about marking documents privileged and confidential.

MS. PHILLIPS: I'm so sorry, Your Honor, but my name is Jessica Phillips.

THE COURT: I'm sorry.

MS. PHILLIPS: It wasn't your fault, Your Honor, but I did just want to make it clear for the record.

THE COURT: Okay. Sorry.

MS. PHILLIPS: That's okay.

THE COURT: Well, I'm not sure --

Thank you, Ms. Phillips.

You know, Judge Brinkema, I think, warned Google in her recent opinion on pages 113 and 114 about the Court's concerns of the misuse of privileges and the systematic disregard of certain requirements. Is it the practice of the law firms involved here to automatically stamp or put headers on anything that is being prepared in this case?

MS. PHILLIPS: Thank you, Your Honor.

It is the practice of the law firms -- and you have correctly noted that there are, in fact, multiple law firms at issue because we cocounsel with different law firms -- when we are passing drafts around that will ultimately be filed, because those drafts are changing and in case something goes wrong in ultimately the transmittal across different law firms,

we would like to ensure, right, that the markings for privileged are maintained. Obviously --

THE COURT: So in a notice of hearing when you're picking a date -- I want to notice this motion for a hearing on Friday at so-and-so -- it is automatically marked privileged and confidential attorney work product?

MS. PHILLIPS: If it is a draft that will ultimately transporting over e-mail across multiple law firms, in that circumstance, yes. And it was obviously an error to ultimately file that because it was no longer a draft at that point, absolutely an oversight and one that we will take absolute sure not to ever happen again.

THE COURT: Well, it is somewhat concerning to the Court that no thought is put into the content of what is being submitted back and forth between the lawyers. You know, I understand that a -- and I'm taking a simplistic example of a notice of a hearing where it's either Friday this day or that day. That would automatically be designated privileged and confidential. But it is what it is. I mean, unfortunately, those got filed with the Court.

MS. PHILLIPS: Understood.

THE COURT: The motion and the notice, which

has highlighted this -- you know, this is a case in which the defendant -- or the Court clearly has serious concerns about the defendant's application of either work product or attorney-client privilege, and this is certainly something the Court will have to keep in mind in reviewing that going forward.

So let's get to the motion. As I understand it, the deponent that is appearing tomorrow is appearing voluntarily. Is that right?

MS. PHILLIPS: That is correct.

THE COURT: Either party wouldn't be able to subpoena this person because he is beyond the subpoena power of the Court and lives in France and all of these other kinds of things. So he has voluntarily agreed to be deposed for four hours, and you're asking for three-and-a-half of those four hours.

Is that, in essence, what this motion is about?

MS. PHILLIPS: Well, if I may take a step back. In essence, what this motion is about is ensuring that Google has a full and fair opportunity to cross-examine a witness who has reached out to the plaintiffs, who has coordinated with the plaintiffs in order to provide beneficial testimony to the plaintiffs.

THE COURT: What evidence do you have that he reached out as opposed to the plaintiffs reaching out to him?

MS. PHILLIPS: He testified in the liability phase that he affirmatively reached out to DOJ. That was the first thing.

The second thing is that DOJ themselves represented that he volunteered to sit for this deposition. He did not require the plaintiffs to go through the Hague Convention in order to give testimony in this case. He is willingly -- he is willingly and voluntarily going to provide testimony for the plaintiffs in this case.

All we are asking for is a full and fair opportunity to cross-examine somebody who we believe there are a number of issues that we need to depose him about. And what he has limited us to ultimately is two hours -- not even two hours on the record, which will be limited further by the fact that this is a French national who needs a translator. So questions will have to be asked at least twice, once by the questioner and then once by the translator. Obviously, there may be technical issues because this is a remote deposition and there -- you know, the two hours ultimately is exclusive of -- or is inclusive of breaks as well to

the extent that the witness may need breaks, which of course both parties would accommodate.

So what we're really talking about is even less time for cross-examination of this witness, again, who is voluntarily, willingly coming to testify for plaintiffs in the remedy phase.

THE COURT: Why would you need more for cross-examination than the examination of the witness?

MS. PHILLIPS: Ultimately, there are a number of -- well, so first of all, we affirmatively also listed this individual on our witness list, and there are a number of topics that we -- well, there are a number of topics that we believe are necessary to the remedies phase in addition to responding to whatever the plaintiffs ask of him in their portion.

THE COURT: Well, what efforts, if any, did you make to subpoena him if you think he is required to be a witness and get him so that you could have him testify as your witness?

MS. PHILLIPS: We hadn't taken any when we understood from DOJ on June 3 that they had already arranged for a deposition. The fact --

THE COURT: June 3, you're four weeks away -- less than four weeks away from the conclusion of fact discovery.

MS. PHILLIPS: Correct.

THE COURT: What did you do from the time Judge Brinkema allowed you to start your fact discovery until June 3 to get this witness?

MS. PHILLIPS: Nothing.

THE COURT: Nothing. Okay.

MS. PHILLIPS: If I may, Your Honor, I do think because of -- I just want to take issue and explain a little bit further about the topics that we need to cover with this individual on his cross-examination.

Mr. Creput is the CEO of Equativ and is a full-stack ad tech provider operating a publisher ad server, an ad exchange, and a demand-side platform. He is one of only two rival ad tech providers that plaintiffs specifically named at the May 2 hearing in front of Judge Brinkema as somebody able to operate a third-party ad server, like DSP, which is Google's product.

So ultimately -- and Your Honor is aware that the remedies issues and the proposals, both from Google and from the plaintiffs, are incredibly technically complex. So that just takes additional time to understand the technical complexity of the systems. And in particular, understanding how Equativ has

structured its infrastructure, both hardware and software, how it has worked on integrations, how it may facilitate future integrations with Google's product, how it has approached prior integrations with other open source standards -- because part of the plaintiff's proposal is to make a piece of the ad tech at Google open source -- as well as understanding whatever distinctions may exist between Equativ's business and others who are in the ad tech business so that we can understand how each of the remedies proposals, both from Google and from the plaintiffs, may benefit Equativ in order to -- in order to elicit that testimony.

And then, as I said, we also need to respond to whatever plaintiffs do on their cross-examination -- or excuse me, on their examination. I apologize.

THE COURT: Why would your cross-examination go beyond what they have asked for in their direct examination of a witness that you have not subpoenaed or agreed to have testify?

MS. PHILLIPS: Well, we have -- like I said, we put Mr. Creput on our witness list. So --

THE COURT: And did nothing.

MS. PHILLIPS: Well, we did cross-notice the deposition after they noticed the deposition. So we

did not take any steps because the DOJ -- excuse me, the plaintiffs have already taken steps. So we reached out to understand what the arrangement was. And because he gave seven hours of deposition testimony in the liability phase, we obviously assumed that that would be the same here and then have come to learn that that is not the case.

THE COURT: Okay.

MS. PHILLIPS: Ultimately, as I said, we do think that the time limitation will also impact Google far more than it will plaintiffs because, ultimately, they have the ability to reach out to him ahead of time and coordinate that testimony. We do not have that opportunity.

THE COURT: Okay. Anything else?

MS. PHILLIPS: No, Your Honor.

THE COURT: Thank you, Ms. Phillips.

MS. PHILLIPS: Thank you.

MR. TESLICKO: Good morning, Your Honor.

THE COURT: Good morning.

MR. TESLICKO: Google claims that proceeding as planned with the deposition tomorrow of Mr. Creput, the parties will equally split time, somehow upends the principle of parity, and we believe Google's proposed order is actually what would do exactly that.

As Your Honor noted, Google has asked to be able to use 3.5 hours either on the record or total -- or four total hours of time, which would leave plaintiffs with effectively no time to question Mr. Creput.

And that's even though, as you heard, Google agrees that Mr. Creput has relevant testimony to offer. They've put him on the witness list just as we've put him on the witness list. And yet, the proposed order here is that if Mr. Creput doesn't voluntarily sit for more than the four hours he's offered to both sides, then we should just exclude his testimony entirely from this case. That seems both inequitable and not supported by any rule or precedent.

I want to correct the record about the context surrounding this deposition. Mr. Creput previously testified in the liability phase. He did so voluntarily. That deposition, likewise, was time limited to six actual hours of testimony, only five hours on the record, and nothing has changed since that time.

We proactively reached out to Mr. Creput before we put him on the witness list, recognizing how short discovery was, to see if he would sit for a voluntary deposition. He didn't volunteer. We reached

out and asked if he would sit for a voluntary deposition. He agreed to four hours, and we offered to split that time equally with Google.

THE COURT: Did he testify at all about remedies in the liability phase? Were questions raised in that deposition about, you know, what would happen if, in fact, divestiture was presented? I'm just trying to get a sense as to whether there's anything in the earlier deposition that would be useful to the parties in the liability phase -- I mean in the remedies phase.

MR. TESLICKO: Certainly, Your Honor, his testimony covered a variety of topics, including competitive conditions as they exist today, impediments to competition, in part, caused by Google's conduct. So to that extent, yes, his testimony is relevant to the issues that we are trying to solve with our remedy proposals. Obviously, he couldn't have testified about the particular remedies proposals we've put forward, but certainly, that testimony overall is still relevant to the issues before the Court during the remedies phase.

I also wanted to clarify one other point, which is that, as we put in our papers, the standard here is 804(b)(1) in terms of whether Mr. Creput's

testimony would be admissible at the end of the day. The proper test there is whether his deposition would be lawful under the laws applicable in France. We believe they would, and we believe that Google would have a meaningful opportunity to cross-examine. As long as those standards are met, his testimony should be admissible at trial.

But more importantly, the Court need not even reach that issue today, certainly not on an emergency basis, because other courts, like the court in *Wellin* in the District of South Carolina, have recognized that questions about whether defendants had substantial opportunity to cross-examine a deponent go to questions about weight rather than admissibility.

THE COURT: Thank you.

MR. TESLICKO: Thank you.

THE COURT: Ms. Phillips, anything else?

MS. PHILLIPS: The only thing I will add is that the DOJ in an interrogatory response noted that in communications with regard to the remedies -- its specific remedies proposal, had indeed spoken to Mr. Creput to understand what they should put forward as a remedies proposal.

So again, we think he is obviously incredibly relevant, and all we're asking is for a full and fair

opportunity to cross-examine him at deposition.

Thank you.

THE COURT: All right. Thank you.

The issue before the Court is what to do with a witness who is appearing voluntarily for four hours of his deposition. The parties, you know, not taking many efforts or not being able to subpoena him to testify under the Federal Rules of Civil Procedure, but he's voluntarily appearing for four hours. I think it's appropriate to split the time that he is appearing to testify.

You know, the deposition should not rehash what he testified about before. I mean, I think whatever he testified before is still going to be useful or can be used in the remedies phase. And his testimony should be limited to the remedies involved in this case, so not going beyond that under the facts and circumstances.

But splitting the four hours is appropriate. If issues come up and you want to try and, you know, deal with this in a motion in limine in front of the district judge in the remedies phase in a bench trial, you're welcome to do so. But you know, equal time seems appropriate to me under the facts and circumstances.

They get two hours. You get two hours, and you get what you can from him.

Okay. Thank you.

Court will be adjourned.

----------------------------------

Time: 10:48 a.m.

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

/s/

Rhonda F. Montgomery, CCR, RPR