IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> GOOGLE LLC, <br><br> *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**GOOGLE LLC'S OPPOSITION TO**
**DAILY MAIL'S MOTION FOR PROTECTIVE ORDER**

Daily Mail's motion for protective order should be denied. Daily Mail has not—as it acknowledges it must, Mot. at 3—made any showing of good cause for a protective order. Daily Mail seeks to limit Google's deposition of its Chief Digital Officer, Matthew Wheatland, both in duration and in scope. Daily Mail argues that Mr. Wheatland's deposition should be limited because Google's request for testimony is cumulative or disproportionate. Neither is true. Mr. Wheatland has never been deposed in this case, his trial testimony was limited to issues related to liability and not remedies, and Google has already agreed to proceed through the deposition expeditiously focusing on issues relevant to the remedies proceeding. Instead of showing good cause to limit Mr. Wheatland's testimony, Daily Mail is part of a troubling pattern of third-party witnesses eager to assist Plaintiffs in developing trial testimony against Google but unwilling to subject themselves to a full and fair cross examination provided for by the Federal Rules. That is prejudicial to Google, and should not be permitted.

1

**BACKGROUND**

On May 2, 2025, at an initial hearing to schedule the remedies phase of this action, the Court entered the discovery schedule jointly requested by the parties, which explicitly contemplated additional fact and expert discovery specific to remedies. The Court did not limit factual discovery relating to remedies.[1] As Google explained to the Court, after which the Court entered the parties' proposed discovery schedule, the inability to present significant factual evidence in an antitrust remedies case in which Plaintiffs demand divestiture is a basis for reversal on appeal. 5/2/25 Hr'g Tr. 40:6-41:7; *see also United States* v. *Microsoft*, 253 F.3d 34, 103 (2001) (en banc) (reversing divestiture order where district court failed to accommodate Microsoft's request for "substantial discovery, adequate time for preparation and a full trial on relief").

After the Court entered the scheduling order, the parties agreed to streamline and appropriately target fact discovery by exchanging preliminary witness lists. On May 30, Plaintiffs listed eight fact witnesses who they intend to call at the remedies trial.[2] Of those eight witnesses, the only individual who is still active in a publisher role is Mr. Wheatland. On June 5, Plaintiffs disclosed in response to a Google interrogatory that they also conducted an interview with Mr. Wheatland about the remedies in this case.

It is clear that, as one of Plaintiffs' only active publisher witnesses, Plaintiffs plan to feature Mr. Wheatland as part of their trial presentation, just as they did in the liability trial. The perspective of publishers was a component of the liability determination and will also be a focus

---

[1] Daily Mail notes that the Court previously expressed doubt about the need for "much factual evidence." Hr'g Tr. 40:1-5. But, as Daily Mail does not dispute, nothing in the Court's scheduling order or statements at the hearing placed limits on the scope of remedies-related discovery.

[2] On June 6, Plaintiffs amended their witness list to add four additional fact witnesses who they intend to call at the remedies trial. Of those four witnesses, only one is in an active publisher role: Jason Taylor of Gannett.

in the remedies presentation given Plaintiffs' proposed remedies. Dkt. 1410 (Mem. Op.) at 48, 102-03. At a trial that spanned three weeks and involved more than 50 witnesses, Mr. Wheatland was the *only* rebuttal witness—fact or expert—who Plaintiffs called.

In the Court's only hearing to date on the scope of remedies, it stated: "Any proposals that you have in terms of divestiture is going to have to address that reality . . . and ***the impact that requiring the divestiture of the publisher ad server would have on publishers***." 5/2/25 Hr'g Tr. 6:1-7 (emphasis added). At that same remedies hearing, Plaintiffs argued in favor of their divestiture remedies (and against Google's conduct proposals) by contending the latter "is not the opinion or the testimony that we heard from the publisher witnesses about what they want and what they feel is needed in their industry." *Id.* at 7:20-23. Plaintiffs will certainly invoke Mr. Wheatland, the Chief Digital Officer of the publishing company Daily Mail, in their assertions about what publishers "want and what they feel is needed." *Id.* (statement at 5/2 remedies hearing).

Accordingly, when Plaintiffs disclosed Mr. Wheatland on their witness list, Google served on Mr. Wheatland one of its deposition subpoenas pursuant to the Federal Rules of Civil Procedure. Plaintiffs did not cross-notice Mr. Wheatland's deposition, suggesting that they intend to offer live testimony from Mr. Wheatland at trial.

After Google noticed Mr. Wheatland's deposition, Mr. Wheatland's counsel accepted service but made four separate demands. First, Mr. Wheatland asked Google to move the deposition from Washington, D.C. (as noticed) to New York. Google agreed. Second, Mr. Wheatland asked to move his deposition from June 19 (as noticed) to June 24. Google agreed to the change of date. Third, Mr. Wheatland demanded that Google preemptively agree to limit his deposition to 3.5 hours, rather than the 7 hours provided for under the Federal Rules. This demand was made even though Mr. Wheatland has ***never been deposed*** in this case, and has ***never testified***

3

*in any case at the remedies stage*. Finally, Mr. Wheatland noted that Daily Mail is a plaintiff in two civil lawsuits against Google–one in New York and one in the UK. Mr. Wheatland demanded that Google commit in advance not to ask Mr. Wheatland any questions related to Daily Mail's claims or Mr. Wheatland's testimony in those cases—*even if those questions would directly pertain to the remedies at issue in this case.*

As memorialized in Google's email following the June 4 meet and confer, Mot. Ex. A, Google attempted to address Mr. Wheatland's concerns while preserving its rights under the Court's scheduling order and the Federal Rules of Civil Procedure. Google agreed to "focus on remedies topics relevant to the current phase of this case," and assured Mr. Wheatland's counsel it was not interested in "duplicating material covered in other depositions or digging into claims in other cases." Google also confirmed that it would be "efficient with Mr. Wheatland's time and not rehash his prior depositions" from the New York case, but could not commit in advance to a shorter deposition than it was entitled to under the Federal Rules given the need to assess the impact of the proposed remedies on publishers.

Dissatisfied with Google's reasonable accommodations and the Court's scheduling order, Daily Mail moved for a protective order. It should be denied.

## ARGUMENT

**I.   Daily Mail Seeks to Deprive Google of Its Right to a Full and Fair Cross-Examination of Mr. Wheatland on Topics Relevant to the Remedies Trial.**

Plaintiffs may of course choose the witnesses they wish to call in their case at trial, but by that same measure Google must be permitted "to fairly examine the deponent." Fed. R. Civ. P. 30(d)(1). As courts in the Fourth Circuit have routinely remarked: "For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." *Morris* v. *Mingo Logan Coal LLC*, 2024 WL 2330037, at *2 (S.D.W. Va. May 22, 2024)

4

(quoting *Thibeault* v. *Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992)); *United States* v. *Cochran*, 2014 WL 347426, at *2 (E.D.N.C. Jan. 30, 2014) (same). Before Daily Mail's tactics "degenerate" discovery in just this way, this Court should deny Daily Mail's motion and make clear that depositions will proceed in accordance with the timing limits of the federal rules and the parties' agreement to date.

Under the Federal Rules, Mr. Wheatland's deposition is "limited to 1 day of 7 hours" and may even be extended "if needed to fairly examine the deponent." Fed. R. Civ. P. 30(d)(1). Further, consistent with the coordination agreement entered into by the parties, the split for non-party depositions where only one party notices the deposition would be 6 hours for the noticing party and 1 hour for any other parties. Dkt. 251 at 11 (Order Regarding Coordination of Discovery). By contrast, were Daily Mail's proposed order granted, pursuant to the coordination agreement, Google might be limited to just 2.5 hours of deposition time with Mr. Wheatland rather than the 6 hours to which it is entitled.

Moreover, the Federal Rules guarantee Google the right fully and fairly to depose a witness who Plaintiffs will likely put forward as presenting a publisher perspective at the remedies trial. *Newsome* v. *Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) ("The federal rules promote broad disclosure during discovery so that each party can evaluate the strength of its evidence and chances of success. This makes trial 'less of a game of blind man's bluff and more of a fair contest.'") (quoting *United States* v. *Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)); *Butler* v. *Kroger Ltd. P'ship I*, 2020 WL 7483447, at *11 (E.D. Va. Nov. 30, 2020) ("Courts have been encouraging fair and open discovery for generations.").

Consistent with Google's statements to Mr. Wheatland's counsel, Google assures this Court it has no interest in asking questions that are not relevant to the remedies proposals in this

5

case, does not intend to retread irrelevant ground, and has no interest in circumventing the applicable scope of discovery in this case or any other one. But Daily Mail's request to prevent Google from asking about questions Mr. Wheatland answered during past depositions at the liabilities stage in different cases would prevent Google from asking questions directly relevant to both parties' arguments concerning remedies. Daily Mail's request ignores that the same topics can take on new and different significance at the remedies phase. As just one example, Google has proposed, among other things, that it will—as uniformly requested by Plaintiffs' witnesses at the liability trial—make AdX real-time bids available to rival publisher ad servers. Plaintiffs dispute whether that proposal would be sufficient to restore competition for publisher business. Google is entitled to probe Mr. Wheatland's opinion on this important question, including to examine whether he has previously testified that Google's proposal would introduce competition. The Court should reject Daily Mail's attempt to impose an artificial, overly restrictive limit on the scope of Google's deposition and allow Google to proceed with the "fair examination of the deponent" guaranteed by the Federal Rules without unnecessary topic limits. Fed. R. Civ. P. 30(d)(2).

**II.    Daily Mail Has Failed to Show Good Cause to Enter a Protective Order.**

Daily Mail acknowledges in its brief that, to circumvent Google's rights under the Federal Rules, Daily Mail must show "good cause" for the Court to issue its requested protective order limiting the scope of Mr. Wheatland's deposition. Mot. at 3 (quoting Fed. R. Civ. P. 26(c)(1)). Good cause requires "some plainly adequate reason" based on "a particular and specific demonstration of fact," not "conclusory statements." *Minter* v. *Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009). And the good cause standard is a "high" bar. *Id.* at 125. According to Daily Mail, good cause exists here because Google's request for deposition

testimony is "cumulative or disproportionate." Mot. at 3. But Google's request is neither cumulative nor disproportionate.

Google requests that Mr. Wheatland provide testimony relevant to the *remedies* phase of this trial. Mr. Wheatland has never been deposed in this case. He sat for two depositions in the New York case in which Daily Mail is a plaintiff. Mr. Wheatland testified twice at trial in this case–once in Plaintiffs' case in chief and once in Plaintiffs' rebuttal case–but he never testified about the remedies at issue in this case.[3] Even if he has previously testified about the same general topics, asking Mr. Wheatland about those topics in the context of specific proposed remedies is not cumulative.[4] As the Court is aware, the legal standards and factual disputes bearing on the remedies phase are different than at the liability phase. The parties have already submitted over 80 pages of briefing with competing theories of what would restore competition to the marketplace and how certain remedies would impact publishers among other market participants. Plaintiffs, for their part, have proposed a three-phase remedy process with multiple sub-components and add-on behavioral restrictions. It may matter to the Court how publishers like Mr. Wheatland would react to either side's proposals—concerning which Mr. Wheatland has never specifically testified. This is what Google will focus on. No party is served by ambiguous topic restrictions that invite

---

[3] Daily Mail also protests that it already made substantial productions in the New York lawsuit in which Mr. Wheatland was deposed. But Daily Mail *itself* initiated that lawsuit and so of course it was obliged to submit to discovery. *See Otis* v. *City of Chicago*, 29 F.3d 1159, 1168 (7th Cir. 1994) ("Plaintiffs must submit to discovery in litigation they initiate, and failure to do so leads straight to dismissal."). Moreover, the discovery and depositions in that case were taken well before the parties in this case laid out competing theories of remedies.

[4] Further, Mr. Wheatland's depositions in the New York matter were conducted on June 11 and 12, 2024, after the Coordinated Discovery Period in the instant matter, and thus "may not be admitted into evidence at trial" or "used affirmatively by any Party" absent further Court order. Dkt. 251 (Order Regarding Coordination of Discovery) ¶ 6(d).

ancillary disputes about whether prior testimony in a different stage of a different case suffices to answer the relevant questions for the remedies dispute in this case.

Nor is Google's request disproportionate. As explained above, both sides agree (as does the Court) that the Court should have the opportunity to hear during the remedies phase from a range of industry participants about how the proposed remedies will impact them. *Supra* at 3. Mr. Wheatland is one of just two active publishers on Plaintiffs' witness list and one that has already featured prominently in Plaintiffs' case. Asking that Mr. Wheatland sit for the full deposition time expressly contemplated by the Federal Rules of Civil Procedure is hardly excessive relative to Mr. Wheatland's role as one of a small number of witnesses Plaintiffs will be calling to testify live.

Finally, Daily Mail references a handful of cases cautioning against repetitive depositions or permitting parties to abuse discovery to harass "apex" executives. Those cases offer little guidance here. For instance, in *Folwell* v. *Hernandez*, 210 F.R.D. 169 (M.D.N.C. 2002), the noticing party had taken eight depositions of other executives at a company before noticing an "apex" deposition where the apex executive had "no knowledge about the accident [at issue] and was not connected with the [relevant] division at the time of the accident," *id.* at 171. Here, Mr. Wheatland (who is apparently willing to testify live for a third time for Plaintiffs) is the only Daily Mail executive being deposed, and Plaintiffs have made clear by listing him on their witness list for the remedies hearing and calling him *twice* at the liability trial that he has relevant testimony to offer. Daily Mail also cites *LeBlanc* v. *Broyhill*, 123 F.R.D. 527, 534 (W.D.N.C. 1988), as cautioning against "needless repetition" when a deponent was deposed in a related litigation but in *LeBlanc* the court ultimately *denied* the protective order because (as here) there were issues particular to the new case to explore in the deposition. Daily Mail also points to *Virginia Dep't of Corr.* v. *Jordan*, 921 F.3d 180 (4th Cir. 2019), as counseling more limited discovery when it comes

8

to nonparties. But the *Jordan* court accepted that discovery of nonparties was appropriate where "[t]he information sought" likely had "marginal benefit in litigating important issues" or "comparable information" was not available elsewhere. *Id.* at 189. Mr. Wheatland's perception of competition in the marketplace was such a key part of DOJ's presentation that he was the only witness they called for rebuttal, and his perception of the remedies may have similar relevance to their evidence presentation at remedies; there is no comparable source.[5]

\* \* \*

Google appreciates Mr. Wheatland is busy and, out of respect for that, has agreed to meet at the date and place of his choosing and provided assurances that it will proceed through the deposition expeditiously and focusing on issues relevant to the remedies proceeding. But if Plaintiffs want to rely on Mr. Wheatland's testimony at trial, Mr. Wheatland must submit to the full examination that the Federal Rules and the parties' agreement guarantees Google.

---

[5] It is worth noting that the *Jordan* court prefaced its discussion by explaining that "[n]onparties are 'strangers' to the litigation, and since they have 'no dog in [the] fight,' they have 'a different set of expectations' from the parties themselves." 921 F.3d at 189. That seems an inapt description of Daily Mail, which, by its own account, is pursuing closely related claims against Google in another forum and has made itself available to Plaintiffs throughout these proceedings to testify in support of their positions.

Dated: June 11, 2025                                         Respectfully submitted,

| | |
|---|---|
| Eric Mahr (*pro hac vice*) <br> Andrew Ewalt (*pro hac vice*) <br> Tyler Garrett (VSB # 94759) <br> FRESHFIELDS US LLP <br> 700 13th Street, NW, 10th Floor <br> Washington, DC 20005 <br> Telephone: (202) 777-4500 <br> Facsimile: (202) 777-4555 <br> eric.mahr@freshfields.com <br><br> Justina K. Sessions (*pro hac vice*) <br> FRESHFIELDS US LLP <br> 855 Main Street <br> Redwood City, CA 94063 <br> Telephone: (650) 618-9250 <br> Fax: (650) 461-8276 <br> justina.sessions@freshfields.com <br><br> Daniel Bitton (*pro hac vice*) <br> AXINN, VELTROP & HARKRIDER LLP <br> 55 2nd Street <br> San Francisco, CA 94105 <br> Telephone: (415) 490-2000 <br> Facsimile: (415) 490-2001 <br> dbitton@axinn.com <br><br> Bradley Justus (VSB # 80533) <br> AXINN, VELTROP & HARKRIDER LLP <br> 1901 L Street, NW <br> Washington, DC 20036 <br> Telephone: (202) 912-4700 <br> Facsimile: (202) 912-4701 <br> bjustus@axinn.com <br><br><br><br> *Counsel for Defendant Google LLC* | */s/ Craig C. Reilly* <br><br> Craig C. Reilly (VSB # 20942) <br> THE LAW OFFICE OF <br> CRAIG C. REILLY, ESQ <br> 209 Madison Street, Suite 501 <br> Alexandria, VA 22314 <br> Telephone: (703) 549-5354 <br> Facsimile: (703) 549-5355 <br> craig.reilly@ccreillylaw.com <br><br> Karen L. Dunn (*pro hac vice*) <br> Jeannie S. Rhee (*pro hac vice*) <br> William A. Isaacson (*pro hac vice*) <br> Jessica E. Phillips (*pro hac vice*) <br> Erica Spevack (*pro hac vice*) <br> DUNN ISAACSON RHEE LLP <br> 401 Ninth Street, NW <br> Washington, DC 20004-2637 <br> Telephone: (202) 240-2900 <br> kdunn@dirllp.com <br><br> Amy J. Mauser (*pro hac vice*) <br> Martha L. Goodman (*pro hac vice*) <br> Bryon P. Becker (VSB #93384) <br> PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP <br> 2001 K Street, NW <br> Washington, DC 20006-1047 <br> Telephone: (202) 223-7300 <br> Facsimile (202) 223-7420 <br> amauser@paulweiss.com <br><br> Erin J. Morgan (*pro hac vice*) <br> PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP <br> 1285 Avenue of the Americas <br> New York, NY 10019-6064 <br> Telephone:  (212) 373-3387 <br> Facsimile:  (212) 492-0387 <br> ejmorgan@paulweiss.com |