# EXHIBIT 8

# Redacted Version



                                                                1

1        UNITED STATES DEPARTMENT OF JUSTICE
         ANTITRUST DIVISION, WASHINGTON, D.C.
2

3     PURSUANT TO CIVIL INVESTIGATION DEMAND NO. 30762

4

5                    "HIGHLY CONFIDENTIAL"

6

7                   30(b)(6) DEPOSITION OF

8                   ███████████████

9              ON BEHALF OF ALPHABET, INC.

10                    FEBRUARY 28, 2022

11

12    ORAL VIDEOTAPED DEPOSITION OF ███████████,

13 produced as a witness at the instance of the United

14 States Department of Justice and duly sworn, was taken

15 in the above-styled and numbered cause on the 28th day

16 of February, 2022, from 8:36 a.m. to 5:59 p.m. PST,

17 before Melinda Barre, Certified Shorthand Reporter in

18 and for the State of Texas, reported by computerized

19 stenotype machine, all parties appearing remotely via

20 web videoconference, pursuant to the rules of procedure

21 and the provisions stated on the record or attached

22 hereto.

23

24

25

```
                                                                    2
 1                      APPEARANCES
           (ALL APPEARED VIA ZOOM VIDEO CONFERENCE.)
 2

 3  FOR GOOGLE:

 4       Ms. Julie Elmer
         Ms. Daphne Lin
 5       FRESHFIELDS BRUCKHAUS DERINGER
         701 Pennsylvania Avenue NW
 6       Washington, D.C. 20004

 7       Telephone: 202.777.4500
         E-mail: julie.elmer@freshfields.com
 8

 9  FOR U.S. DEPARTMENT OF JUSTICE ANTITRUST DIVISION:

10       Mr. Brent Nakamura
         Mr. Arshia Najafi
11       Attorney at Law
         450 5th Northwest, Suite 8700
12       Washington, D.C. 20001

13       Telephone: 202.307.0924
         E-mail: brent.nakamura@usdoj.gov
14

15  ALSO PRESENT:   Ryan LaFond, Videographer;
                    Mara Boundy; Seumas Macneil;
16                  Alex Bergersen; Daniel Bitton

17

18

19

20

21

22

23

24

25
```

```
                                                              5
 1                THE VIDEOGRAPHER:  Good morning.  We are
 2   now on the record.  Today's date is February 28th, 2022.
 3   The time is 8:36 a.m. Pacific Time.  This is the video
 4   deposition of the 30(b)(6) for Alphabet, Inc., ▇▇▇▇
     ▇▇▇▇▇▇▇.  This is in the Google matter, Case
 6   No. 60-516110-0009.
 7                This deposition is taking place via web
 8   video conference with all participants attending
 9   remotely.  My name is Ryan LaFond.  I am videographer.
10   Our court reporter today is Melinda Barre.  We represent
11   Lexitas.
12                Would counsel please identify yourself,
13   state whom you represent beginning with the questioning
14   attorney.
15                MR. NAKAMURA:  Good morning.  This is
16   Brent Nakamura from the U.S. Department of Justice
17   Antitrust Division.  I'm a trial attorney with the
18   Division, and I'm joined by my colleagues, Arshia
19   Najafi, a trial attorney with the Division, and Seumas
20   Macneil, also who is a paralegal with the Division.
21   Additional personnel may join the deposition later.
22                MS. ELMER:  I'm Julie Elmer with
23   Freshfields.  I'm here for Google and the witness.  With
24   me today is Mara Boundy and Alex Bergersen, in-house
25   counsel at Google; Daniel Bitton from the Axinn law
```

93

1  counsel with respect to Project Sunday?
2      A.   No, I did not.
3      Q.   How many Alphabet employee hours have been
4  spent on Project Sunday?
5      A.   That's impossible to answer because we don't
6  track time internally.
7      Q.   Did you do anything to attempt to form a
8  reasonable estimate of the amount of Alphabet employee
9  hours that have been spent on Project Sunday?
10     A.   That I could, you know, answer with full
11 surety, no.
12     Q.   My question is about a reasonable estimate.
13 Did you do any work to attempt to form a reasonable
14 estimate with respect to the number of Alphabet employee
15 hours spent on Project Sunday?
16     A.   So I could give a ballpark estimate, but that's
17 about as good as we could do.  If you find that
18 informative, great; but it would be with the caveat that
19 it is impossible to know the amount of time individuals
20 spend on a specific project that's not part of a
21 meeting.
22     Q.   I appreciate your explanation.  What is the
23 ballpark estimate?
24     A.   30 hours.
25     Q.   Okay.  And how did you come to make that

131

1  A. So I don't believe there's any dollars that I
2 would note explicitly here that could be, like, easily
3 disentangled. This was a smaller project, so I think
4 the hours would be, you know, a small fraction of those
5 that I had noted on Project Sunday.
6  Q. And sitting here today as Alphabet's corporate
7 designee, what is your reasonable estimate as to the
8 number of employee hours spent on Project Monday?
9  A. Ten.
10  Q. And that is across the company or just for you
11 personally?
12  A. Across the company.
13  Q. And sitting here today as Alphabet's corporate
14 designee, how much has Alphabet spent on outside counsel
15 with respect to Project Monday?
16  A. This is hard to answer. I would say not a lot,
17 but I don't know how to get into -- like even if I
18 looked at timelines, I don't think that could be
19 determined. So a small amount.
20  Q. Okay. And what, translated into dollars, if
21 you have any reasonable estimate, does "a small amount"
22 mean?
23  A. I don't know.
24  Q. Okay.
25  A. Yeah. I don't know.

```
                                                              152
 1  of outside counsel.
 2      Q.   Okay.  I appreciate that.  Thank you.
 3           What was the cost to Alphabet associated
 4  with Project SingleClick specified in dollars or hours?
 5      A.   Again, hard to measure internally because we
 6  don't track that.  And the outside pieces also are
 7  entangled in a number of other projects.  So it's just
 8  very hard to give an estimate.
 9      Q.   And what other projects are the outside pieces
10  entangled with?
11           MS. ELMER:  And I instruct the witness not
12  to answer because that invades the attorney/client
13  privilege and the work product doctrine.
14      Q.   (By Mr. Nakamura)  Will you follow Ms. Elmer's
15  instruction?
16      A.   Yes.
17      Q.   How many employee hours to a reasonable
18  estimate as Alphabet's corporate designee were spent on
19  Project SingleClick?
20      A.   SingleClick, or are we on Stonehenge?
21      Q.   SingleClick.
22      A.   45 hours.
23      Q.   And to be clear, that 45-hour estimate is for
24  all Alphabet employees.  Is that correct?
25      A.   Yes.
```

```
                                                              189
 1  which point we decided to investigate a particular line
 2  of remedies.  And that prior project was precipitated by
 3  the seven investigations that were noted on page 2 of
 4  Exhibit 7.
 5       Q.    Thank you.  I appreciate the precision.
 6             And did Project Stonehenge evolve into
 7  Project Banksy as listed on the CID specification
 8  schedule?
 9       A.    No.
10       Q.    Okay.  When did Project Stonehenge end?
11       A.    June 2020.
12       Q.    Was there any event or occurrence that marked
13  the end of Project Stonehenge in Alphabet's view?
14       A.    This was more of a completion of analysis to
15  our satisfaction.
16       Q.    Okay.  How many meetings in total occurred at
17  Alphabet for Project Stonehenge?
18       A.    I'd say on the order of 25.
19       Q.    And of those 25 meetings, how many were
20  attended by Alphabet's attorneys?
21       A.    The majority, large majority.
22       Q.    How many Alphabet employee hours have been
23  spent on Project Stonehenge?
24       A.    About 50.
25       Q.    And how much did Alphabet spend on outside
```

```
                                                              248
 1           UNITED STATES DEPARTMENT OF JUSTICE
             ANTITRUST DIVISION, WASHINGTON, D.C.
 2

 3      PURSUANT TO CIVIL INVESTIGATION DEMAND NO. 30762

 4

 5                    REPORTER'S CERTIFICATE

 6              ORAL DEPOSITION OF  ████████████

 7                     February 28, 2022

 8

 9      I, Melinda Barre, Certified Shorthand Reporter in
10 and for the State of Texas, hereby certify to the
11 following:
12      That the witness, ████████████, was duly sworn by
13 the officer and that the transcript of the oral
14 deposition is a true record of the testimony given by
15 the witness;
16      That the original deposition was delivered to
17 Brent Nakamura.
18      That a copy of this certificate was served on all
19 parties and/or the witness shown herein
20 on _____.
21      I further certify that pursuant to FRCP Rule
22 30(f)(1), that the signature of the deponent:
23      ____ was requested by the deponent or a party before
24 the completion of the deposition and that the signature is
25 to be before any notary public and returned within 30 days
```

```
                                                               249
 1  from date of receipt of the transcript.  If returned,
 2  the attached Changes and Signature Page contains any
 3  changes and the reasons therefor:
 4       ____was not requested by the deponent or a
 5  party before the completion of the deposition.
 6       I further certify that I am neither counsel for,
 7  related to, nor employed by any of the parties or
 8  attorneys in the action in which this proceeding was
 9  taken, and further that I am not financially or
10  otherwise interested in the outcome of the action.
11       Certified to by me on this, the _____ day
12  of _____, 2022.
13
14
15                              _____
16                              Melinda Barre
                                Texas CSR 2192
17                              Expiration:  12/31/23
18
19
20
21
22
23
24
25
```