# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-21551-CIV-ALTONAGA/LOUIS

In re:

FARM-RAISED SALMON
AND SALMON PRODUCTS
ANTITRUST LITIGATION

_____/

### *AMICUS CURIAE* BRIEF OF EUROPEAN COMMISSION

John K. Shubin, Esq. (Fla. Bar No. 771899)
jshubin@shubinbass.com
SHUBIN & BASS, P.A.
46 S.W. 1st Street, Third Floor
Miami, Florida 33130
Telephone: (305) 381-6060
Facsimile: (305) 381-9457

Carter G. Phillips (*pro hac vice* pending)
Michele L. Aronson (*pro hac vice* pending)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
cphillips@sidley.com
maronson@sidley.com

*Attorneys for Proposed Amicus Curiae European Commission*

July 13, 2021

# TABLE OF CONTENTS

Page

REQUEST TO PARTICIPATE IN HEARING ........................................................................ 1

INTRODUCTION AND INTEREST OF *AMICUS CURIAE* ........................................................ 1

STATEMENT OF THE CASE ................................................................................................... 3

    I.     Commission Competition Law Procedures .................................................... 3

    II.    EU Legal Framework Regarding Disclosure of Commission Documents .................... 5

          A.    "Black-listed" Evidence in Article 6(6)(a) and (b) ........................................ 6

          B.    "Grey-listed" Evidence in Article 6(5)(a), (b), and (c) .................................... 6

          C.    "White-listed" Evidence in Article 6(9) ........................................ 7

    III.   The Commission's *Farmed Atlantic Salmon* Cartel Investigation ................................. 8

    IV.   Civil Proceedings Respecting *Salmon Products* in the United States .......................... 8

ARGUMENT ............................................................................................................................. 9

    I.     International Comity Requires Preserving the Nondisclosure Dictated By EU Law .... 9

          A.    The EU's Interest in Preserving Nondisclosure Is Clearly Important, Advances the U.S. Government's Interest, and Only Marginally Impairs the Interests of Private Litigants ........................................................................ 12

          B.    Nondisclosure Is Narrowly Tailored .......................................................... 17

          C.    The Document Request Was Not Sufficiently Narrow .................................... 18

          D.    The Information Did Not Originate in the United States ................................ 18

          E.    There Are Alternative Means of Securing Relevant Information .................... 18

    II.    The Act of State Doctrine Prohibits Judicial Challenge to the Commission's Promise of Strict Nondisclosure in Exchange for Cooperation ................................................. 19

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banco Nacional de Cuba v. Sabbatino,*
    376 U.S. 398 (1964)................................................................................19

*Consejo de Defensa del Estado de la Republica de Chile v. Espirito Santo Bank,*
    No. 09-20613-CIV, 2010 WL 2162868 (S.D. Fla. May 26, 2010)..........................................15

*GDG Acquisitions, LLC v. Gov't of Belize,*
    749 F.3d 1024 (11th Cir. 2014) ................................................................10

*Glen v. Club Méditerranée, S.A.,*
    450 F.3d 1251 (11th Cir. 2006) ................................................................19

*Hilton v. Guyot,*
    159 U.S. 113 (1895)................................................................................9

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004)................................................................................3

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975)................................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    No. 05-md-1720, 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010)............................9, 10, 11, 13

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat,*
    902 F.2d 1275 (7th Cir. 1990) ................................................................14

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) ................................................................12, 17, 18

*In re Rubber Chems. Antitrust Litig.,*
    486 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................11, 17, 18, 19

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa,*
    482 U.S. 522 (1987)................................................................................10, 11

*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) ................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    618 F. Supp. 2d 1194 (N.D. Cal. 2009) ................................................................16

*United States v. Bank of Nova Scotia (In re Grand Jury Proc.)*,
    691 F.2d 1384 (11th Cir. 1982) ...................................................................10

*United States v. First Nat'l Bank of Chi.*,
    699 F.2d 341 (7th Cir. 1983) .....................................................................14

*White v. Kenneth Warren & Son, Ltd.*,
    203 F.R.D. 369 (N.D. Ill. 2001)................................................................17

*Yukos Capital S.A.R.L. v. Oao Samaraneftegaz*,
    592 F. App'x 28 (2d Cir. 2015) .................................................................10

**Court Filings in Other Cases**

Letter from European Commission, *Laydon v. Mizuho Bank, Ltd.*,
    No. 12-cv-3419 (S.D.N.Y. Oct. 10, 2014) [ECF No. 396] .......................1

Letter of Scott D. Hammond, Deputy Assistant Att'y Gen. for Crim. Enf't,
    Antitrust Div., Dep't of Just., *In re Flat Glass Antitrust Litig. (II)*,
    No. 08-mc-180 (W.D. Pa. Oct. 8, 2009) [ECF No. 200-6].......................16

Letter from Alexander Italianer, Dir. Gen., Eur. Comm'n, to Hon. Viktor V.
    Pohorelsky, *In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-md-1775 (E.D.N.Y. Oct. 10, 2011) [ECF No. 1587] .....................2

Memorandum of Law of Amicus Curiae the European Commission in Support of
    Defendants' Objections to Magistrate Judge Orenstein's February 12, 2010
    Order, *In re Payment Card Interchange Fee & Merchant Discount Antitrust
    Litig.*,
    No. 05-md-1720 (E.D.N.Y. Mar. 19, 2010) [ECF No. 1372]....................2

Memorandum of Law in Support of Motion by Intervenor-Applicant European
    Commission to Reconsider in Part the Court's Order Compelling Discovery of
    Confidential Materials, *In re Flat Glass Antitrust Litig. (II)*,
    No. 08-mc-180 (W.D. Pa. Oct. 8, 2009) [ECF No. 200-1]........................2

Notice of Filing Letter from the European Commission (Redacted), *In re Rubber
    Chems. Antitrust Litig.*,
    No. 04-md-1648 (N.D. Cal. Apr. 18, 2007) [ECF No. 504-1] ..................2

Submission of European Commission, *In re Methionine Antitrust Litig.*,
    No. 00-md-1311 (N.D. Cal.)........................................................................2

Submission of European Commission, *In re Vitamins Antitrust Litig.*,
    No. 99-mc-197 (D.D.C.)..............................................................................2

**Regulation and Rules**

28 C.F.R. § 16.26 ................................................................................................................15

Fed. R. Civ. P. 26 .............................................................................................................17

Fed. R. Evid. 501 .............................................................................................................17

**International Material**

Commission Directive 2014/104/EU of the European Parliament and of the
    Council of 26 November 2014 on Certain Rules Governing Actions for
    Damages Under National Law for Infringements of the Competition Law
    Provisions of the Member States and of the European Union, 2014 O.J.
    (L 349) 1, *at* https://eur-lex.europa.eu/legal-
    content/EN/TXT/PDF/?uri=CELEX:32014L0104&from=EN ................................5

Commission Notice on Immunity from Fines and Reduction of Fines in Cartel
    Cases, 2006 O.J. (C 298) 17 ("Leniency Notice"), as amended by the
    Communication from the Commission — Amendments to the Commission
    Notice on Immunity from fines and reduction of fines in cartel cases, 2015
    O.J. (C 256) 1, *at* EUR-Lex - 02006XC1208(04)-20150805 - EN - EUR-Lex
    (europa.eu) ...................................................................................................6, 13, 19

Commission Notice on the Conduct of Settlement Procedures in View of the
    Adoption of Decisions Pursuant to Article 7 and Article 23 of Council
    Regulation (EC) No 1/2003 in Cartel Cases, 2008 O.J. (C 167) 1 ("Settlement
    Notice"), as amended by the Communication from the Commission —
    Amendments to the Commission Notice on the conduct of settlement
    procedures in view of the adoption of Decisions pursuant to Article 7 and
    Article 23 of Council Regulation (EC) No 1/2003 in cartel cases, 2015 O.J.
    (C 256) 2, *at* EUR-Lex - 02008XC0702(01)-20150805 - EN - EUR-Lex
    (europa.eu) ...................................................................................................6, 13, 19

Commission Notice on the Rules for Access to the Commission File in Cases
    Pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the
    EEA Agreement and Council Regulation (EC) No 139/2004, 2005 O.J. (C
    325) 7, as amended by the Communication from the Commission
    Amendments to the Commission Notice on the rules for access to the
    Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty,
    Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC)
    No 139/2004, 2015 O.J. (C 256) 3, *at* CL2005X1222EN0010010.0001.3bi_cp
    1..1 (europa.eu) ......................................................................................................5

Directorate Gen. for Competition of the Eur. Comm'n, Submission to the
    Antitrust Modernization Commission (4 April 2006), *at*
    https://govinfo.library.unt.edu/amc/public_studies_fr28902/international_pdf/
    060406_DGComp_Intl.pdf ......................................................................................2

EC Commission Regulation 773/2004 relating to the conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty, 2004 O.J. (L 123) 18, as amended, *at* [CL2004R0773EN0040010.0001_cp 1..1 (europa.eu)](europa.eu)...............4, 6, 7

EU, Treaty on the Functioning of the European Union (TFEU), consolidated version, 2016 O.J. (C 202) 1, *at* [EUR-Lex - 12016E/TXT - EN - EUR-Lex (europa.eu)](europa.eu) ....................................................................................................3, 4

**Other Authorities**

Restatement (Third) of Foreign Relations Law (Am. L. Inst. 1987) ................................11, 17, 19

U.S. Dep't of Justice, Antitrust Division Manual (5th ed. 2012), *at* [https://www.justice.gov/atr/file/761166/download](https://www.justice.gov/atr/file/761166/download)................................................................15

**REQUEST TO PARTICIPATE IN HEARING**

The European Commission (the "Commission") respectfully requests leave to participate in the teleconference hearing scheduled to take place via Zoom before Magistrate Judge Louis on July 15, 2021, at 4:00 p.m. *See* Pls.' Notice of Hr'g [ECF No. 329]. The hearing will address several discovery disputes pertaining to Plaintiffs' Amended First Set of Requests for Production to All Defendants, including the dispute regarding the scope of production upon Plaintiffs' request for certain documents contained in the Commission's file relating to an ongoing cartel investigation.

As explained more fully below, the Commission seeks to prevent the discovery of investigatory materials whose continued nondisclosure is critical to the ability of the European Union ("EU") as a sovereign to investigate and deter unlawful cartel activities. The Commission is uniquely positioned to address these sovereign concerns, so its participation and ability to answer the Court's questions during the hearing will enable the Court to address fully the issues raised in this *amicus* brief.

**INTRODUCTION AND INTEREST OF *AMICUS CURIAE***

The Commission seeks to protect the EU's sovereign interest in maintaining the confidentiality of certain documents included in the administrative file of its ongoing cartel investigation of possible competition law infringements in the salmon industry. The Commission is not supporting any of the parties to this action, and seeks to file this *amicus* brief for the limited purpose of preventing the discovery of certain investigatory materials whose continued nondisclosure is critical to the EU's ability as a sovereign to investigate and deter unlawful cartel activities. The Commission also seeks to participate in the teleconference hearing scheduled to take place before Magistrate Judge Louis on July 15, 2021, in order to address the disputes regarding the scope of production pursuant to Plaintiffs' request for certain documents contained in the Commission's file and to answer any questions the Court might have about the Commission's position.

The Commission has in the past intervened or filed *amicus* briefs in several other matters before United States courts to present the Commission's position with respect to the discovery of the Commission's investigative materials. *See* Letter from European Commission, *Laydon v.*

1

*Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y. Oct. 10, 2014) [ECF No. 396]; Memorandum of Law of Amicus Curiae the European Commission in Support of Defendants' Objections to Magistrate Judge Orenstein's February 12, 2010 Order, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y. Mar. 19, 2010) [ECF No. 1372]; Memorandum of Law in Support of Motion by Intervenor-Applicant European Commission to Reconsider in Part the Court's Order Compelling Discovery of Confidential Materials, *In re Flat Glass Antitrust Litig. (II)*, No. 08-mc-180 (W.D. Pa. Oct. 8, 2009) [ECF No. 200-1]; *In re Methionine Antitrust Litig.*, No. 00-md-1311 (N.D. Cal.); *In re Vitamins Antitrust Litig.*, No. 99-mc-197 (D.D.C.). The Directorate General for Competition ("DG Competition") of the Commission has also provided letters for the Court's consideration outlining the DG's position on the nondisclosure of materials in this case, *see* Letter from Olivier Guersent, Dir. Gen., Eur. Comm'n, to Hon. Cecilia M. Altonaga (May 18, 2020) [ECF No. 227-1]; as well as in other cases, *see* Letter from Alexander Italianer, Dir. Gen., Eur. Comm'n, to Hon. Viktor V. Pohorelsky, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y. Oct. 10, 2011) [ECF No. 1587]; Notice of Filing Letter from the European Commission (Redacted), *In re Rubber Chems. Antitrust Litig.*, No. 04-md-1648 (N.D. Cal. Apr. 18, 2007) [ECF No. 504-1].

DG Competition has also expressed its concerns regarding discovery of its investigative materials in a submission to the United States Antitrust Modernization Commission. *See* Directorate Gen. for Competition of the Eur. Comm'n, Submission to the Antitrust Modernisation Commission (4 April 2006) ("Antitrust Modernization Commission Submission"). In that submission, DG Competition expressed its longstanding concern that "disclosure of information submitted on a voluntary basis during our investigations can seriously undermine the effectiveness of the European Commission's and other authorities' antitrust enforcement actions." *Id.* at 6.

Preserving the nondisclosure of investigative materials is vital to the Commission's ongoing ability to detect, investigate, and take effective enforcement action against potentially unlawful cartel activity and would require a limited restriction on Plaintiffs' access to discovery because the nondisclosure attaches to only some of the documents in Defendants' possession. Therefore, based on the principles of international comity and the act of state doctrine, the Court should decline to compel the discovery of material that is exempted from disclosure under EU law.

**STATEMENT OF THE CASE**

## I.  Commission Competition Law Procedures

The Commission is an institution representing the sovereign interests of the EU.  The Commission "exercises responsibility over the wide range of subject areas covered by the European Union treaty" including laws "governing competition."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 250 (2004).  Investigations into cartels are based on extensive investigative powers aimed at allowing the Commission to uncover documents and information relating to the most serious violations of competition law.  Equally important is the Leniency Program, which "allows 'cartel participants [to] confess their own wrongdoing' in return for prosecutorial leniency."  *Id.* at 266 n.18 (alteration in original) (quoting and citing Commission *amicus* briefs).  The Leniency Program is closely related to the United States Department of Justice's Amnesty Program. *See infra* Section I.A.2.  The decisions of the Commission applying European competition rules are subject to judicial review by the General Court (formerly the Court of First Instance), and on appeal by the Court of Justice of the European Union.

In investigating potentially unlawful cartel activities, the Commission collects sensitive material from suspects generally in two principal ways: by voluntary submissions through the Leniency Program or Settlement Procedure and by compulsory process.  The Commission collects the documents and information into an administrative file.  As its investigation proceeds, the Commission submits a "Statement of Objections" (which details the Commission's competition concerns) to entities suspected of illegal activity.  The Statement of Objections often directly quotes from corporate statements and other confidential replies to information requests made by the Commission.  Recipients may submit replies to the Statement of Objections.

Targets of a Commission investigation for a suspected infringement of competition rules get access to the Commission's file when the Commission issues a Statement of Objections to them, as described in Article 15(1) of Regulation 773/2004.  However, they are strictly prohibited by law from using information obtained in this way for any reason other than responding to or otherwise participating in judicial and administrative proceedings for the application of Articles

101 and 102 of the Treaty on the Functioning of the European Union (TFEU).[1]  Article 16a of

Regulation 773/2004 provides:

> 1. Information obtained pursuant to this Regulation shall only be used for the purposes of judicial or administrative proceedings for the application of Articles 101 and 102 of the Treaty.
>
> 2. Access to leniency corporate statements within the meaning of Article 4a(2) or to settlement submissions within the meaning of Article 10a(2) shall be granted only for the purposes of exercising the rights of defence in proceedings before the Commission. Information taken from such statements and submissions may be used by the party having obtained access to the file only where necessary for the exercise of its rights of defence in proceedings:
>
>> (a) before the European Union courts reviewing Commission decisions; or
>>
>> (b) before the courts of the Member States in cases that are directly related to the case in which access has been granted, and which concern:
>>
>>> (i) the allocation between cartel participants of a fine imposed jointly and severally on them by the Commission; or
>>>
>>> (ii) the review of a decision by which a competition authority of a Member State has found an infringement of Article 101 TFEU.
>
> 3. The following categories of information obtained pursuant to this Regulation shall not be used in proceedings before national courts until the Commission has closed its proceedings against all parties under investigation by adopting a decision pursuant to Article 7, 9 or 10 of Regulation (EC) No 1/2003 or has otherwise terminated its proceedings:
>
>> (a) information that was prepared by other natural or legal persons specifically for the proceedings of the Commission; and
>>
>> (b) information that the Commission has drawn up and sent to the parties in the course of its proceedings.

EC Commission Regulation 773/2004, 2004 O.J. (L 123) 18, art. 16a, as amended by Commission

Regulation (EU) 2015/1348, 2015, O.J. (L 208) 3.  These rules are also explained in the

Commission Notice on the Rules for Access to the Commission File in Cases Pursuant to Articles

---

[1] Article 101 of the TFEU (formerly Article 81 of the EC Treaty) sets forth the prohibition of anticompetitive agreements, including cartels. Article 102 of the TFEU (formerly Article 82 of the EC Treaty) sets forth the prohibition of an abuse of a dominant position.

81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC) No 139/2004 ¶ 48, 2005 O.J. (C 325) 7, as amended by 2015 O.J. (256) 3:

> Access to the file in accordance with this notice is granted on the condition that the information thereby obtained may only be used for the purposes of judicial or administrative proceedings for the application of the Union competition rules. The use of this information in breach of the limitations set out in Article 16a of Regulation (EC) No 773/2004 is in certain situations subject to penalties under national law. If the use for a different purpose or the breach of the said limitations occurred with the involvement of an outside counsel, the Commission
> may report the incident to the bar of that counsel, with a view to disciplinary action.

*Id.* (footnotes omitted).

## II.     EU Legal Framework Regarding Disclosure of Commission Documents

The EU legal framework for the disclosure of evidence in the EU is set forth in the EU Directive 2014/104/EU on Antitrust Damages Actions (the "Damages Directive"), which entered into force in 2014 and had to be transposed by EU Member States into their national legal orders by the end of 2016.  *See* Commission Directive 2014/104/EU of the European Parliament and of the Council of 26 November 2014 on Certain Rules Governing Actions for Damages Under National Law for Infringements of the Competition Law Provisions of the Member States and of the European Union, 2014 O.J. (L 349) 1.   Chapter II (Articles 5-8) of the Damages Directive addresses the disclosure of evidence, including the rules and principles that apply when parties appear in courts of EU member States ("national courts").  Those rules and principles balance the interests of antitrust damages claimants in obtaining evidence relevant to their claims and the interest of the competition authority in protecting the effectiveness of its law enforcement procedures, particularly if an enforcement procedure is still ongoing.  *See, e.g.*, Damages Directive recital 6 and art. 1(2).  As described below, the rules ensuring the nondisclosure of "black-listed" documents at any time and of "grey-listed" documents during an ongoing investigation are of the utmost importance to the work of the Commission in detecting, fully investigating, and properly sanctioning unlawful cartel activities.  They constitute essential safeguards for the effectiveness of the public enforcement of EU competition law.

The Damages Directive distinguishes between three categories of evidence with regard to disclosure of documents included in the file of a competition authority: "black-listed," "grey-listed," and "white-listed" evidence.

5

**A.      "Black-listed" Evidence in Article 6(6)(a) and (b)**

The Damages Directive provides: "Member States shall ensure that, for the purpose of actions for damages, national courts cannot at any time order a party or a third party to disclose any of the following categories of evidence: (a) leniency statements; and (b) settlement submissions." Damages Directive, art. 6(6). Thus, a national court may not order the disclosure of leniency statements or settlement submissions, even after the Commission's proceedings have concluded. The promise of strict nondisclosure of leniency statements and settlement submissions is crucial for the Commission's ability to gain cooperation from undertakings and successfully investigate potential cartel activity.

The Commission's "Leniency Notice" and "Settlement Notice" further explain the Commission's respective protections for leniency statements and settlement submissions. The Commission uses oral procedures for leniency applications made pursuant to its Leniency Policy. *See* Commission Notice on Immunity from Fines and Reduction of Fines in Cartel Cases, §§ 31–35a, 2008 O.J. (C 298) 17, as amended by 2015 O.J. (C 256) 1  ("Leniency Notice"). Access to leniency statements is only granted to the addressees of a statement of objections, provided that they commit not to make any copy by mechanical or electronic means of any information in the corporate statement to which access is being granted only for the purpose stated. *Id.* § 33. Equivalent safeguards exist for settlement submissions. *See* Commission Notice on the Conduct of Settlement Procedures in View of the Adoption of Decisions Pursuant to Article 7 and Article 23 of Council Regulation (EC) No 1/2003 in Cartel Cases, §§ 35–40, 2008 O.J. (C 167) 1, 5–6, as amended by 2015 O.J. (C 256) 2, ("Settlement Notice"). Access to such statements is granted only to the addressees of the Statement of Objections, provided they commit not to make any copies by mechanical or electronic means of any information contained therein and to use information obtained from such statements only for the purpose stated. *Id.* § 35; *see also* EC Commission Regulation 773/2004, art. 15(1b).

**B.      "Grey-listed" Evidence in Article 6(5)(a), (b), and (c)**

Article 6(5) of the Damages Directive provides:

National courts may order the disclosure of the following categories of evidence only after a competition authority, by adopting a decision or otherwise, has closed its proceedings:

(a) information that was prepared by a natural or legal person specifically for the proceedings of a competition authority;

(b) information that the competition authority has drawn up and sent to the parties in the course of its proceedings; and

(c) settlement submissions that have been withdrawn.

Damages Directive, art. 6(5). The documents that constitute "grey-listed" evidence often form the core documents in the Commission's file and include, *inter alia*, Requests for Information ("RFIs"), responses to RFIs, Statements of Objections, and inspection decisions by the Commission.

Because "grey-listed" documents were created specifically for the investigation, they must not be disclosed while the investigation is ongoing. The main reason for this protection is that the disclosure of such evidence during the investigation's pendency "would unduly interfere with an ongoing investigation by a competition authority concerning an infringement of Union or national competition law." Damages Directive, recital 25. This is further confirmed by Article 16a(3) of Regulation 773/2004, which provides that "the following categories of evidence [*i.e.*, "grey-listed" evidence] obtained pursuant to the Regulation shall not be used in proceedings before national courts until the Commission has closed its proceedings." EC Commission Regulation 773/2004, art. 16a(3). In sum, Article 6(6) of the Damages Directive and Article 16a(3) of Regulation 773/2004 ensure the unequivocal protection of "grey-listed" documents against discovery until the Commission's proceedings are closed.

### C.    "White-listed" Evidence in Article 6(9)

The Damages Directive provides: "The disclosure of evidence in the file of a competition authority that does not fall into any of the categories listed in this Article may be ordered in actions for damages at any time, without prejudice to this Article." Damages Directive, art. 6(9). Thus, "white-listed" documents are those documents that are neither "black-listed" nor "grey-listed." These are pre-existing documents that exist independently from competition authorities' proceedings and are contemporaneous with the behavior that the competition authority is investigating. "White-listed" documents may be disclosed at any time, even while the investigation is ongoing, as long as the other conditions for disclosure as set out in the Damages Directive are met.

7

## III.     The Commission's *Farmed Atlantic Salmon* Cartel Investigation

The Commission is currently investigating several Atlantic salmon farming companies, including Defendants in this litigation, for suspected violations of EU rules prohibiting cartels and other anticompetitive business practices.  In February 2019, the Commission carried out unannounced inspections at the facilities of several companies operating in the farmed Atlantic salmon sector over concerns about potential cartel activity.  The Commission's proceedings in case AT.40606, *Farmed Atlantic Salmon*, remain ongoing.

## IV.     Civil Proceedings Respecting *Salmon Products* in the United States

In April 2019, the first proposed antitrust class action against salmon farms was filed in the Southern District of Florida.  Similar suits soon followed, which were consolidated into the instant case before this Court.  Plaintiffs in this case seek redress from Atlantic salmon producers for alleged price fixing.

Discovery in this case has continued after the Court denied Defendants' motion to dismiss in March 2021.  Plaintiffs have already obtained several documents relating to the Commission's ongoing investigation, including pre-existing documents, such as business records that existed independently from the Commission's investigation.  *See* Pls.' Mot. to Compel the Produc. of Docs. in Accordance with the Court's Order [ECF No. 217].  In May 2020, Director General Guersent of DG Competition submitted a letter to the Court setting out concerns about the disclosure of certain categories of documents.  Letter from O. Guersent to Judge Altonaga dated May 18, 2020 [ECF No. 227-1].  Soon thereafter, Plaintiffs limited their disclosure request to "white-listed" pre-existing documents submitted by Defendants to the Commission.  In June 2020, the Court ordered those documents produced.  *See* Order [ECF No. 233].  Defendants continue to disclose those "white-listed" pre-existing documents upon Plaintiffs' request.

On April 9, 2021, Plaintiffs served their Amended First Set of Requests for Production to All Defendants, which included multiple requests for production that could harm the Commission's interests.  Pls.' Am. First Set of Req. for Produc. to All Defs. [ECF No. 329-1].[2]

---

[2] Those requests are:

On June 29, 2021, Plaintiffs filed a Notice of Hearing to take place on July 15, 2021, pertaining to several discovery disputes. *See* Pls.' Notice of Hr'g [ECF No. 329].[3] This prompted the Commission to seek leave to participate as *amicus curiae*.

## ARGUMENT

This Court should apply the well-established rules of international comity and the act of state doctrine and thereby preserve the nondisclosure of certain documents that are exempted from discovery under EU law.

## I.    International Comity Requires Preserving the Nondisclosure Dictated By EU Law

Documents that are protected from discovery in the EU should not be subject to discovery in the United States, particularly where entities may have provided information to the Commission in detrimental reliance on sovereign guarantees of permanent or temporary nondisclosure under EU law. EU competition law requires that certain documents related to the Commission's investigations not be disclosed under certain circumstances, and this Court should respect this under international comity. The Commission's competition enforcement depends on legal guarantees that certain types of information exchanged during the investigation ("black-listed" and "grey-listed" evidence) will be accorded absolute and legally binding protection from disclosure orders. For "black-listed" documents, such nondisclosure is permanent, while for "grey-listed" documents it is limited until the closure of the Commission's proceedings.

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895). "Though traditional

---

- **Request for Production No. 44.** All Documents relating to non-privileged Communications regarding the antitrust investigations of the Salmon industry, Including the dawn raids carried out at facilities operated or owned by any Defendant in 2019 and the European Commission electronic questionnaire sent to European market participants.
- **Request for Production No. 45.** Any Statement of Objections issued by the European Commission, and all Documents produced by You to the European Commission, or provided to You by the European Commission in connection with its Statement of Objections
- **Request for Production No. 46.** All draft and final responses provided to the European Commission's questionnaire(s) sent to participants in the Salmon industry.

[3] One of the discovery disputes is the scope of production pursuant to Plaintiffs' Request for Production No. 46.

formulations of the doctrine typically refer to the interests of other nations, the policies underlying international comity apply with equal force to a supranational body like the EU." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2010 WL 3420517, at *6 (citing *In re Rubber Chems.* 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007)). "Comity is 'a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws.'" *United States v. Bank of Nova Scotia (In re Grand Jury Proceedings)*, 691 F.2d 1384, 1390 (11th Cir. 1982) (citation omitted). "Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1030 (11th Cir. 2014) (citation omitted).

International discovery is one of the core conflicts in cross-border disputes that comity addresses. Courts must "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position," and "[j]udicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("*Aérospatiale*"). Thus, "[w]hen it is necessary to seek evidence abroad, . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.*

Where, as here, there is a true conflict between EU law and Plaintiffs' discovery requests, comity requires courts to balance competing interests in a manner akin to a conflicts of law analysis. "A district court only reaches the issue of comity if it finds a true conflict exists, that is, when the laws of one country 'require conduct that violates [the laws of the other].'" *Yukos Capital S.A.R.L. v. Oao Samaraneftegaz*, 592 F. App'x 28, 29 (2d Cir. 2015) (alteration in original) (citation omitted).

Comity is particularly appropriate here, where the Damages Directive follows a well-balanced approach to ensure effective private enforcement of competition law on one side and the public interest in an effective public enforcement of competition law on the other. For example, recital 6 provides: "It is necessary to regulate the coordination of those two forms of enforcement in a coherent manner, for instance in relation to the arrangements for access to documents held by

10

competition authorities." Damages Directive, recital 6. The Court should defer to the reasonable balance struck in the Damages Directive, which prohibits the disclosure of "black-listed" documents (leniency statements and settlement submissions), as well as premature disclosure of "grey-listed" documents (documents created for purposes of the Commission's proceedings and information that the Commission has drawn up and sent to the parties in the course of its proceedings). Not doing so would unduly interfere with ongoing Commission proceedings. It could undermine the Commission's enforcement strategy by making accessible highly sensitive information that could reveal, *e.g.*, the investigation's next steps, the theory of harm pursued by the Commission, or entities that are not yet—but could in the future—become subject to the proceedings. Likewise, disclosure of replies to Commission requests for information would tend to reveal the Commission's investigative strategy by indicating which questions the Commission asked in the course of its investigation, which documents it requested, and which documents are contained in the Commission's file while the Commission's investigation is ongoing.

The Court therefore, like other U.S. courts presented with similar disputes, should recognize the nondisclosure requirements for documents related to Commission investigations. *See In re Interest Rate Swaps Antitrust Litig.* No. 16-md-2704, 2018 WL 5919515, at *3 (S.D. Fla. Nov. 13, 2018) (protecting a Statement of Objections from disclosure); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2010 WL 3420517, at *1, *3 (denying a motion to compel documents from Commission investigations against Visa and MasterCard); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d at 1084 (declining to compel the production of Commission investigative documents).

As *Aérospatiale* indicated, 482 U.S. at 544 n.28, the Restatement (Third) of Foreign Relations Law articulates a well-established set of five factors to consider:

1. the importance to the investigation of litigation or the documents or other information requested;

2. the degree of specificity of the request;

3. whether the information originated in the United States;

4. the availability of alternative means of securing the information; and

5. the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Restatement (Third) of Foreign Relations Law § 442(1)(c) (Am. L. Inst. 1987). The last factor is considered "the most important." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992). Beginning with the last factor and examining all of the other factors in turn, each mandates respect for the EU's strong interest in preserving the nondisclosure of certain documents closely related to the Commission's anti-cartel investigations.

## A. The EU's Interest in Preserving Nondisclosure Is Clearly Important, Advances the U.S. Government's Interest, and Only Marginally Impairs the Interests of Private Litigants

Preserving the nondisclosure of investigatory materials is strongly supported by balancing the relative interests of the litigants, the United States, and the EU. This "most important" factor requires courts to "assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would 'affect important substantive policies or interests' of either the United States or [the EU]. In assessing the strength of [the EU's] interests, [courts] will consider 'expressions of interest by the foreign state,' 'the significance of disclosure in the regulation . . . of the activity in question,' and 'indications of the foreign state's concern for confidentiality *prior to the controversy*.'" *Richmark Corp.*, 959 F.2d at 1476 (omission in original) (citation omitted). These considerations favor the application of comity here in at least three ways: (1) the EU's longstanding and robust sovereign interest in preserving its successful regime for combating unlawful cartels clearly outweighs any interest private litigants may have in obtaining marginal discovery; (2) the United States government shares the Commission's strong interest in effectively punishing improper cartel activity and in preserving the nondisclosure of certain documents relating to the two sovereigns' leniency or amnesty programs; and (3) the documents are privileged and not discoverable under comity and the Federal Rules.

## 1. The EU Has a Strong Interest in Preserving the Nondisclosure of Certain Investigatory Materials Guaranteed by Its Laws

The Commission's policies and laws respecting the nondisclosure of certain investigatory documents are longstanding and represent important sovereign interests. EU law prohibits disclosure of certain documents that are obtained or created during the course of the Commission's anti-cartel investigations, particularly where the investigations are ongoing .

The creation and exchange of investigatory material is central to EU legal procedures and depends on responses and cooperation from private parties, which in turn arises from the protection against disclosure under EU law. The Leniency Program—the most successful instrument for detecting and punishing unlawful cartels in the EU—relies on voluntary submissions of sensitive material by applicants, but applicants would not participate if they were put in a worse position for having volunteered this information, which is considered "black-listed" evidence under EU law.[4] As the district court in a similar case concluded:

> The confidentiality the Commission promises is particularly important in encouraging voluntary cooperation by third parties. But even when the Commission compels third parties' participation, the assurance of confidentiality tends to make their participation fuller and more open. Moreover, the confidentiality of the investigative and adjudicative process is also important to encourage candor by the targets of the investigation. That the proceedings are secret encourages free and open participation by the parties under investigation, which in turn serves the Commission's interest in detecting and punishing violations of its laws. The Commission's interests would be significantly undermined if its confidentiality rules were disregarded by American courts in this case and others like it.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2010 WL 3420517, at *9. As such, even a protective order put in place in this litigation would be inadequate because, by its terms, entities who were not parties to the Commission's investigation may be granted access to confidential material to use in entirely separate proceedings.

Preserving the protection from discovery of investigative materials is critical to the EU's sovereign interests. The Commission's investigation procedures are designed to encourage private parties to provide sensitive material in complete reliance on the Commission's legally binding assurance of nondisclosure. For example, the Leniency Notice and the Settlement Notice provide protection for leniency statements and settlement submissions. *See* Leniency Notice §§ 32–35a; Settlement Notice §§ 35–40; *see also supra* Section II.A. Furthermore, undertakings that provide information to the Commission outside of the Leniency Notice and the Settlement Notice, for

---

[4] The existence or nonexistence of any leniency applications is not public, and the Commission does not provide any information about this to parties to the proceedings or third parties at this stage.

example by replying to the Commission's requests for information, can rely on the fact that, according to the rules set forth in the Damages Directive, the information will not be disclosed before the Commission has closed its investigation.

In the present case, Plaintiffs have broadly sought several types of information relating to the Commission's investigation, including "[a]ll draft and final responses provided to the European Commission's questionnaire(s) sent to participants in the Salmon industry." Pls.' Am. First Set of Req. for Produc. to All Defs., Request No. 46 [ECF No. 329-1]. It follows that destroying the nondisclosure promise after the fact creates an unfair and unexpected harm to companies who cooperated with or otherwise provided information to the Commission, reduces confidence in the Commission's sovereign promises, and, in turn, makes it more difficult for the Commission to secure future cooperation and to obtain information from parties suspected of engaging in anticompetitive acts. Such a result could have a corresponding negative impact on the U.S. Department of Justice Antitrust Division's amnesty program and its international anti-cartel enforcement program. *See infra* Section I.A.2 (discussing the U.S. Department of Justice Amnesty Program). In short, the guarantee of nondisclosure lies at the heart of the Commission's ability to detect and punish unlawful cartels, and anything that damages that guarantee undermines the EU's sovereign interest in preventing and punishing cartels and risks serious economic harm to consumers in the EU. In light of the global nature of much cartel activity, impeding the Commission's ability to combat unlawful cartels would likely have negative effects on consumers in other places—including the United States.[5]

### 2. The United States Government Has an Interest in Preserving the Nondisclosure of Documents Generated Pursuant to an Antitrust Amnesty Program, Including the Commission's Program

The United States has an equally strong interest in enforcing antitrust laws and in protecting the nondisclosure of materials obtained through their respective antitrust amnesty programs or otherwise through their anti-cartel investigations. Enforcement of competition laws benefits both the EU and the U.S. their antitrust enforcement, and the U.S. Government (often working with the

---

[5] The EU laws at issue are longstanding, have broad application in the EU, and cannot be characterized as mere blocking statutes designed to frustrate foreign judicial proceedings. *See Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1282-83 (7th Cir. 1990) (Romanian secrecy law respected where it applied to domestic and foreign litigants with equal force); *United States v. First Nat'l Bank of Chi.*, 699 F.2d 341, 345-46 (7th Cir. 1983) (Greek bank secrecy laws outweighed U.S. interest in collecting taxes).

Commission) has recognized that antitrust enforcement depends on the continued nondisclosure of materials such as those at issue here—"black-listed" leniency statements and settlement submissions and "grey-listed" documents created as part of the Commission's efforts.[6]

"When balancing national interests, the federal interest in full development of the facts should be given material weight." *Consejo de Defensa del Estado de la Republica De Chile*, No. 09-20613-CIV, 2010 WL 2162868, at *2 (S.D. Fla. May 26, 2010) (citing *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 139 F.R.D. 295, 298–99 (S.D.N.Y. 1991)). While the U.S. Government certainly has an interest in developing the factual record regarding allegations of foreign companies conspiring to fix prices paid by U.S. purchasers for a product in violation of U.S. antitrust laws, the U.S. Government also recognizes the importance of foreign nondisclosure in global enforcement efforts.

In a program that is very similar to that administered by the Commission, the U.S. Department of Justice offers leniency to cartel participants who inform on their fellow cartel participants and then continue cooperating with the subsequent investigation. *See* U.S. Dep't of Justice, Antitrust Division Manual, at III-92 to III-102 (5th ed. 2012). The U.S. Department of Justice's Amnesty Program has been described as "the primary engine of the government's anti-cartel enforcement." Brief for the United States and the Federal Trade Commission as *Amici Curiae* at 19, *Empagran, S.A. v. F. Hoffman-Laroche, Ltd.*, No. 01-7115, 2005 WL 388672, at *19 (D.C. Cir. Feb. 16, 2005). Like the Commission's Leniency Program, the Amnesty Program's success depends on obtaining the cooperation of would-be informants by "offer[ing] incentives to cartel members who voluntarily disclose their criminal conduct and cooperate with prosecutors." *Id.*

The Justice Department believes that ongoing confidentiality is a critical element of any leniency or amnesty program around the globe. As the Antitrust Division has explained:

> Confidentiality is one of the hallmarks of leniency programs, and a lack of confidentiality is a major disincentive for leniency applications. . . . Many leading members of the private antitrust bar who represent leniency applicants have advised . . . that the Division's promise of confidentiality is a critical, and in some cases

---

[6] Indeed, DOJ regulations prohibit the disclosure of internal agency documents that would "reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings." 28 C.F.R. 16.26(b)(5). Moreover, the deliberative process privilege in the U.S. exempts from disclosure documents that are "predecisional" and "deliberative." *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-149 (1975); *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997).

determinative, factor that companies rely upon in making the decision to self-report pursuant to the Division's leniency program.

Letter of Scott D. Hammond, Deputy Assistant Att'y Gen. for Crim. Enf't, Antitrust Div., Dep't of Just. at 3, *In re Flat Glass Antitrust Litig. (II)*, No. 08-mc-180 (W.D. Pa. Oct. 8, 2009) [ECF No. 200-6] at 2 ("DOJ Flat Glass Letter"). Thus, "[t]he Division holds the identity of amnesty applicants in strict confidence" based on "the common-sense understanding that corporations or individuals will be unwilling to step forward unilaterally to admit their guilt if their request and the information they supply is made public." Brief for the United States as *Amicus Curiae* Opposing Discovery of Amnesty-Related Materials at 5-6, *In re Flat Glass Antitrust Litig. (I)*, MDL No. 1200, Misc. No. 97-550, (W.D. Pa. Mar. 26, 1998). In fact, "the Division will not publicly disclose the identity of an amnesty applicant" because "both the Division and any applicant for amnesty rely on and expect their discussions to remain confidential." *Id.* at 6. Materials "that may have been specially created – or statements that may have been specifically made – in connection with an amnesty application," *id.* at 7, are protected from discovery under the law enforcement investigatory privilege. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 618 F. Supp. 2d 1194, 1194-95 (N.D. Cal. 2009) (analyzing applicant's duties under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004).

The DOJ recognizes the importance of foreign confidentiality in U.S. anti-cartel enforcement efforts:

> The [Antitrust] Division has advised a number of foreign governments in the drafting and implementation of effective leniency policies. The emergence of leniency polices of different governments with similar requirements has made it much easier and far more attractive for companies to develop a global strategy for reporting international cartel offenses and has led leniency applicants to report their conduct to multiple jurisdictions simultaneously.

DOJ Flat Glass Letter at 3. If companies with dual exposure in the U.S. and the EU are dissuaded from applying for leniency with the Commission, then they may also choose to forgo applying for leniency in the United States. This would have serious ramifications for enforcement efforts in the United States: "Due to the critical role of the Division's leniency program in its international anti-cartel enforcement program as described above, harm to the EC leniency program could result in harm to the Division's ability to detect and successfully prosecute international cartels that target U.S. businesses and consumers." *Id.*

16

Although the two programs are structured somewhat differently, both the DOJ and the Commission have determined that preserving the strict confidentiality of material that is closely related to their respective leniency programs is an important and necessary element of the programs' continued success, and to protect consumers in the EU and in the U.S..

### 3. The EU and United States Share an Interest in Maintaining Privilege

Targets rely on the fact that the Commission and national courts respect EU law, which limits the disclosure of certain documents. EU law ensures unequivocal protection of "black-listed" and "grey-listed" evidence from disclosure. The protection for "black-listed" documents is permanent, and the protection for "grey-listed documents" extends until the competition authority closes its investigation. As documents privileged from discovery, those at issue here are entitled to the highest level of protection under comity principles. *See* Fed. R. Civ. P. 26(b)(1) (discovery extends only to matters that are "nonprivileged"); Fed. R. Evid. 501 ("The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege . . ."). Discovery privileges are not restricted to those specifically established within the United States. Indeed, the Restatement (Third) explains that "a communication privileged where made—for instance, *confidential testimony given to a foreign government investigation under assurance of privilege*—is not subject to discovery in a United States court." Restatement (Third) of Foreign Relations Law § 442 cmt. d (emphasis added); *see also White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369, 372 (N.D. Ill. 2001) ("[I]f a privilege is recognized in a foreign country, then comity requires us to apply that country's law to the documents at issue.") (citation omitted).

### B. Nondisclosure Is Narrowly Tailored

Only a limited number of documents—the "black-listed" and "grey-listed" documents—are at issue here, and their nondisclosure should have no material effect on this litigation. In addition, the strict prohibition of disclosure of grey-listed evidence applies only temporarily, until the Commission closes its investigation. These facts weigh heavily in favor of respecting EU law. "[C]ourts are less inclined to ignore a foreign state's concerns where the outcome of litigation 'does not stand or fall on the present discovery order,' or where the evidence sought is cumulative of existing evidence." *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d at 1082 (quoting

17

*Richmark Corp.*, 959 F.2d at 1475) (denying motion to compel discovery of Commission competition enforcement materials).

That is the case here. Many of the documents that are potentially responsive to Plaintiffs' various requests for production are permitted to be disclosed under EU law, even if the Commission's motion is granted. For instance, the Court already has ordered all "white-listed" independently created documents to be turned over to Plaintiffs.

### C.    The Document Request Was Not Sufficiently Narrow

This factor also favors non-disclosure. "[G]eneralized searches for information whose disclosure is prohibited under foreign law are discouraged." *In re Rubber Chems.*, 486 F. Supp. 2d at 1083 (citing *Richmark Corp.*, 959 F.2d at 1475). Plaintiffs here elected to demand production of a wide and poorly-defined range of documents, such as all responses to Commission questionnaires—materials that could be so broad as to include any of the materials prepared in response to Commission RFIs (and which are not disclosable under EU law while the Commission's investigation is still open). The lack of specificity and limitation in the discovery motion—the Damages Directive (recital 23) refers to such motions as "fishing expeditions"—fails to provide the level of precision that might better enable the Court and the parties to properly limit the proposed document production.

### D.    The Information Did Not Originate in the United States

Documents created abroad are more widely protected under principles of international comity, and most, if not all, of the documents at issue here either were prepared by European companies or subsidiaries for the purpose of responding to or cooperating with the Commission's investigation, or else they were prepared by the Commission itself for the purpose of its investigation. Even if any of Defendants may have these materials in their possession, "[t]he fact that [any of Defendants] has access to these documents in the U.S. is not dispositive [because t]he documents were created, transmitted, and used only in Europe and in conjunction with the European enforcement proceedings." *In re Rubber Chems.*, 486 F. Supp. 2d at 1083.

### E.    There Are Alternative Means of Securing Relevant Information

Finally, there are alternative means of securing most of the information sought in the discovery motion, which also weighs in the Commission's favor. "If the information sought can

easily be obtained elsewhere, there is little or no reason to offend foreign law." *In re Rubber Chems.*, 486 F. Supp. 2d at 1083. Some of the documents Plaintiffs seek may already be permitted to be disclosed under EU law, or at least are discoverable with appropriate redactions. Moreover, information relating to Defendants' practices in the United States "is likely to be more relevant to [Plaintiffs]" than the Commission documents. *Id.*

## II. The Act of State Doctrine Prohibits Judicial Challenge to the Commission's Promise of Strict Nondisclosure in Exchange for Cooperation

The Court should also prohibit the disclosure of certain documents under the act of state doctrine. This doctrine does not allow courts to "inquir[e] into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964), *superseded by statute on other grounds*, Foreign Assistance Act of 1965, Pub. L. No. 89-171, 79 Stat. 653; *see also* Restatement (Third) of Foreign Relations Law § 443(1) (courts should not invalidate the "acts of a governmental character done by a foreign state within its own territory and applicable there"). As the Eleventh Circuit explained, "[t]he doctrine prevents any court in the United States from declaring that an official act of a foreign sovereign performed within its own territory is invalid." *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1253 (11th Cir. 2006) (citing *W.S. Kirkpatrick & Co. v. Env't. Tectonics Corp.*, 493 U.S. 400, 405–06 (1990)). "It 'requires that "the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid."'" *Id.* (quoting *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1293 (11th Cir. 2001) (quoting *Kirkpatrick*, 493 U.S. at 409)).

The act of state doctrine bars discovery of certain documents in this case. EU law ensures unequivocal nondisclosure of "black-listed" evidence permanently and "grey-listed" evidence until the competition authority closes its investigation. In addition, as regards "black-listed" evidence (leniency statements and settlement submissions), the Commission, acting under sovereign authority, provides private parties with assurances of nondisclosure that are legally binding under EU law. *See* Leniency Notice §§ 32–35a; Settlement Notice §§ 35–40; *see also supra* Section II.A. Each of the exchanges of information between the Commission and the private parties occurs under the aegis of binding nondisclosure created by the EU's rules.

Therefore, judicial orders countermanding the nondisclosure binding under EU law necessarily call into question the validity of public acts by a sovereign authority within its own

borders. That is, this Court cannot compel the discovery of documents that are protected under EU law without simultaneously declaring invalid and ineffective the official acts of a foreign sovereign—in the context of the applicable EU Directives and Regulations whose legal quality is akin to statutes in the US—which extended the nondisclosure status to the evidence. Accordingly, the Court should not authorize the discovery of documents or information that cannot be disclosed under EU law.

## CONCLUSION

For these reasons, the Court should not order the disclosure of "black-listed" or "grey-listed" evidence whose nondisclosure is protected by EU law or would interfere with the Commission's ongoing anti-cartel investigation and Leniency Program.

Date: July 13, 2021

Respectfully submitted,

*/s/John K. Shubin*
John K. Shubin, Esq. (Fla. Bar No. 771899)
jshubin@shubinbass.com
SHUBIN & BASS, P.A.
46 S.W. 1st Street, Third Floor
Miami, Florida 33130
Telephone: (305) 381-6060
Facsimile: (305) 381-9457

*/s/Carter G. Phillips*
Carter G. Phillips (*pro hac vice* pending)
Michele L. Aronson (*pro hac vice* pending)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
cphillips@sidley.com
maronson@sidley.com

*Attorneys for Proposed Amicus Curiae*
*European Commission*

20

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on July 13, 2021, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                       */s/John K. Shubin*                     
                                       John K. Shubin