IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MAY 30 ORDER AND TO COMPEL PRODUCTION OF GOOGLE'S REMEDY FEASIBILITY SUBMISSIONS TO THE EUROPEAN COMMISSION**

Google is continuing to withhold relevant, non-privileged material behind improper and unsupported claims of privilege and confidentiality. This has become a pattern: Google pays lip service to its discovery obligations, only to frustrate those obligations from being satisfied. So too here. Google claims to comply with this Court's May 30 Order, requiring Google to produce internal reports and analyses about AdX and DFP divestitures, but it produces only a limited set of documents and frustrates any meaningful review or analysis of those documents by redacting most of their contents. Plaintiffs' renewed motion seeks immediate relief for two instances of Google's non-compliance that are most pressing because they impact depositions happening daily. First, Google has produced only 37 documents in response to the Court's May 30 order, and even those few documents are heavily redacted. Despite multiple meet-and-confers, Google refuses to commit to a production schedule or a date by which it might submit a privilege log. Second, Google has refused to produce its submissions to the European Commission ("EC") about remedy feasibility, based on claims of confidentiality that the EC has already rejected.

For the internal divestiture analyses, Google is slow-rolling its production and making overbroad redactions that are inconsistent with the Court's May 30 Order. Accordingly, Plaintiffs

1

ask the Court to require Google to (1) remove redactions from any material "prepared by non-lawyers at Google," in compliance with the Court's May 30 Order, *see* ECF No. 1450, and (2) produce, within three days of the Court ruling on this motion, all remaining documents responsive to the Court's May 30 Order and a privilege log for any documents responsive to that Order. Plaintiffs also ask that, once Google has produced a privilege log, the Court conduct an *in camera* review of a sample of redacted documents (selected by Plaintiffs) to evaluate whether Google's redactions comply with the Court's ruling.

For the EC documents, Google hides behind various provisions of European Union ("EU") confidentiality law, seeking to shield Google's own statements and submissions to the EC that reflect non-lawyer analyses of remedies, including ▬▬▬▬▬▬▬▬▬▬ But the EC has definitively communicated that the materials Plaintiffs seek may be produced in this case, and that Google's objections are unsupported. Such documents, which can have no plausible claims of privilege or work product, are probative to this remedies phase for many of the same reasons as the material the Court ordered produced on May 30, and therefore Plaintiffs ask the Court to require Google to produce them as well.

## BACKGROUND

### I. Google's Failures to Comply with the Court's May 30 Order

On May 30, 2025, the Court ordered Google to "produce internal reports and analyses prepared by non-lawyers at Google describing the nature and scope of work that would be required to modify Google's ad exchange (AdX) and Google's publisher ad server (DFP) to facilitate divestiture as requested by plaintiffs, including the burden, cost, and potential difficulties of implementing those changes." ECF No. 1450. As the Court explained at the hearing preceding its order, these documents are discoverable because (1) "reports and analyses prepared by nonlegal Google employees relating to the scope of work required to divest either

2

AdX or DFP is really fact work product and not opinion work product," and (2) Plaintiffs "ha[ve] established that there is a substantial need for the materials," which "could not be obtained by other means." Hr'g Tr. at 39:11–14, 39:18–21 (May 30, 2025). The Court asked the parties to confer about when Google would produce these documents and any accompanying privilege log, and it stated that if the parties could not agree, the Court would "set a schedule." *Id*. at 45:3–6.

The parties have met and conferred about the timing and content of Google's document production multiple times, including telephonic meetings on June 2, June 10, and June 12. During the June 2 conferral, Google's counsel declined to confirm that Google would comply at all with the Court's May 30 Order, let alone when it would do so. On June 4, Google's counsel via email again declined to provide any concrete timeline for compliance, stating only that it would comply "as expeditiously as possible," and that Google would "endeavor[]" to produce documents "relevant to" each upcoming deposition "sufficiently in advance." Ex. 1 at 17. Google provided a similar email response on June 9, stating only that Google would comply "on a reasonable time frame," and would produce privilege logs "prior to the close of fact discovery." Ex. 1 at 12. And again on June 12, Google's counsel reiterated that Google was "doing its best" but could not commit to any specific timetable for production. Earlier today (June 13), Google committed to produce a complete privilege log by 5 pm on June 17, but it then withdrew that commitment two hours later. Google has not provided any estimate of the volume of documents it plans to produce in response to the May 30 Order or when it will complete that production.

Google has made only two productions thus far in response to the Court's May 30 Order. These productions, made on June 5 and June 11, totaled 37 documents that Google said related to depositions of Google witnesses Nitish Korula, Per Bjorke, and George Levitte that took place on June 9 and June 13. Ex. 2 at 1; Ex. 3. Google's redactions to these documents are extreme.

3

More than 60% of the pages in these productions are redacted in full, and dozens of other pages are redacted except for a few words. These redactions eliminate so much information that they often leave unclear what many of the documents are about, when they were created, or what the small number of unredacted snippets mean. *See*, *e.g.*, Ex. 4 (illustrative examples); Ex. 7 (same). During the June 10 conferral, Google claimed that these redactions are supported by a combination of (1) attorney-client privilege, (2) opinion work product, and (3) fact work product for which Google believes Plaintiffs have not shown a substantial need. For the third category, Google's position is that the Court's May 30 ruling on substantial need is narrowly limited to information about technical work (*e.g.*, software coding) and does not include information about any other kind of work required to divest AdX and DFP, including information that would provide necessary context for snippets of unredacted text.

On June 11, Google stated that it was continuing to withhold fact work product about even technical work, such as "discussion of the technical scope of [remedy] proposals that were under consideration" in the documents, but it offered to produce such information. Ex. 1 at 8. Google's counsel then rescinded that offer the next day (June 12), claiming that, after looking at the documents again, Google now thinks that all "discussions of technical scope" in the documents are protected by the attorney-client privilege and opinion work product. Google then pivoted to offering to unredact fact work product "that pertains to any burdens, costs, or difficulties as to Google of divestiture," but only if that material does not fall within Google's broad view of "other applicable privileges or protections." Ex. 1 at 1 (emphasis omitted).

Because Google originally withheld 23 of the documents at issue in prior phases of this case, Google previously provided a privilege log for them. Each relevant privilege log entry, with cross-references to the redacted documents, is attached as Appendix A. Google asserted *only* the

4

attorney-client privilege as to 11 of the previously withheld documents, and it asserted both the attorney-client privilege and attorney work product as to the remaining 12.

## II. Google's Refusal to Produce Factual Materials About Remedy Feasibility That It Submitted to the European Commission

On May 2, 2025, Plaintiffs served RFP No. 2, which sought the other category of documents at issue in this motion:

> **REQUEST NO. 2**: Produce all communications, briefs, white papers, presentations, expert declarations, expert reports, and any other advocacy or analysis submitted or referenced by Google to any Foreign Competition Authority concerning any actual or potential remedy for alleged anticompetitive conduct by Google related to its digital advertising business, including all data and/or documents cited or relied upon therein.

Plaintiffs met and conferred with Google on May 21 and June 10 (and exchanged correspondence with Google in between those dates) to determine whether Google intended to withhold documents responsive to this request. During those discussions, Plaintiffs clarified that RFP No. 2 seeks only statements or submissions to foreign competition authorities that reflect analysis of the cost, burden, or difficulty of actual or potential remedies.

Google has refused to produce any documents responsive to RFP No. 2, primarily citing EC confidentiality laws. The EC, however, has clarified that the provisions of EU law that Google relies on "do not prohibit" Google "from producing documents responsive to" RFP No. 2, so long as any "third party material" Google may have obtained through EC proceedings is redacted. Ex. 5 at 2. Google is unwilling to accept this determination and instead claims that it is seeking "reconsideration" of the EC's decision and "guidance" about what it means, in lieu of producing responsive documents. Ex. 6 at 2. Although Plaintiffs have assured Google otherwise, Google also continues to assert, as they have before, *see* ECF No. 1445 at 18–21, that Plaintiffs are seeking documents "in connection with pre-settlement negotiations," which Google contends are subject to a heightened showing of relevancy. See Ex. 6 at 2.

5

## LEGAL STANDARDS

The relevant legal standards relating to the attorney-client privilege and attorney work product doctrine are set forth in Plaintiffs' memorandum of law in support of its May 23, 2025 motion to compel Google's internal analyses of remedy feasibility. *See* ECF No. 1441 at 5–8.

"[C]ourts are generally thought to have broad discretion to determine whether a privilege is properly asserted." *FEC v. Christian Coalition*, 178 F.R.D. 456, 461 (E.D. Va. 1998). The party asserting a privilege bears the burden of demonstrating its applicability. *See*, *e.g.*, *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (attorney-client privilege); *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988) (attorney work product).

The withholding party's burden has both "procedural and substantive criteria," meaning that party must (1) "describe" the withheld material "in a manner that . . . will enable other parties to assess the claim," and (2) "set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011); *see also Martin Marietta*, 856 F.2d at 626 (party "must provide specific and detailed indications of where [opinion] work product is located in the documents"); *Harrison v. Shanahan*, 2019 WL 2216474, at *5 (E.D. Va. May 22, 2019) (Brinkema, J.) (withholding party "must articulate specific facts demonstrating that the privilege applies, and a conclusory assertion of privilege is insufficient to establish a privilege's applicability to a particular document" (cleaned up)). Withholding parties must "tailor their assertion of the privilege," and may not assert a privilege in an "overbroad" or "undifferentiated and untailored manner." *Harrison*, 2019 WL 2216474, at *5.

If the withholding party makes an initial showing that a privilege or other protection applies, "an opposing party can justify *in camera* inspection of the documents by advancing a factual basis sufficient to support a reasonable, good-faith belief that *in camera* inspection may

6

reveal evidence that information in the materials is not privileged." *Interbake Foods*, 637 F.3d at 502; *see also Brown Univ. v. Tharpe*, 2012 WL 12894480, at * 4 (E.D. Va. Mar. 30, 2012) ("adequate factual showing that at least some of the information contained in the documents may be subject to disclosure"). This "factual basis" may be circumstantial, such as when "[t]he timing of [disputed] correspondence suggests that it might include purely factual information." *Tharpe*, 2012 WL 12894480, at * 4. To avoid "substantial delays in the administration of justice," when a court conducts *in camera* review, it "may rely on the parties to identify a reasonable subset of documents for careful scrutiny and may extrapolate from that subset." *Harrison*, 2019 WL 2216474, at *6 n.15.

## ARGUMENT

### I.   Google Cannot Demonstrate That Its Overbroad Redactions Are Warranted

Google cannot make even a preliminary showing that the extensive redactions it has applied to the documents at issue are warranted. None of the three bases Google has cited for these redactions—(1) attorney-client privilege, (2) opinion work product, and (3) fact work product for which Plaintiffs lack a substantial need—is plausible, let alone supported by "specific facts" rather than "conclusory assertion[s]." *Harrison*, 2019 WL 2216474, at *5.

*First*, although Google relies primarily (and, for 11 the documents, solely)[1] on the attorney-client privilege, Google cannot present any specific facts that would justify redacting

---

[1] Although Google withheld these 11 documents in or before October 2023 only on the basis of attorney-client privilege, Google belatedly attempted to assert attorney work product over them via email on June 11, 2025. *See* Ex. 1 at 7–9. Because Google failed to "provide a privilege log of the claimed [attorney work-product protection] at the time that an objection [was] made and documents [we]re withheld" in or before October 2023, that claimed privilege is "deemed[] a waiver . . . due to unjustified delay." *Williams v. Big Picture Loans, LLC*, 2019 WL 8107922, at *4 (E.D. Va. May 28, 2019). The same is true for any other documents Google withheld in whole or in a prior phase of this proceeding but over which it did not previously assert a claim of privilege or work product.

7

large swaths of "reports and analyses prepared by non-lawyers" as attorney-client communications. None of the documents at issue is itself an attorney-client communication, and so Google appears to rely on its expansive view that all documents "created at the request" of a lawyer are privileged. *See*, *e.g.*, Appendix A at 4 (GOOG-AT-MDL-B-009828355, "prepared at the direction of and for" attorney). But that view is incorrect because the attorney-privilege only protects attorney-client communications, not the facts that underlie them. *See* ECF No. 1447 at 15–16. It is not plausible that entire pages of presentations and reports created by non-lawyers "reveal" or "contain" legal advice, such that they could properly be redacted following the Court's prior ruling. *See* Appendix A. Google's sweeping and conclusory claims of privilege are especially suspect given Google's track record of abusing the attorney-client privilege, ECF No. 1410 at 113–14, and the Court's "serious concerns about [Google's] application of either work product or attorney-client privilege." Hr'g Tr. at 6:2–4 (June 10, 2025).

GOOG-AT-MDL-B-009828429 is an illustrative example of Google's "overbroad" and "untailored" assertions of attorney-client privilege. *See Harrison*, 2019 WL 2216474, at *5. That document is a presentation prepared by non-lawyers that Google claims "contain[s] and reveal[s] legal advice . . . regarding legal aspects of product development," *see* Appendix A at 1, but every word of the 14-page document is redacted except for a portion of one page labeled "Engineering details." Ex. 7. Indeed, that Google previously withheld this *entire* document, including a discussion of "Engineering details," under the attorney-client privilege is revealing of Google's blunderbuss assertions of privilege in this case. GOOG-AT-MDL-B-009828764 is similar. It is a presentation prepared by non-lawyers that Google claims "contain[s] legal advice of counsel regarding policy compliance," *see* Appendix A at 2, but every word on 52 of its 65 pages is redacted, and at least 6 other pages contain only snippets of text. Ex. 8. Google cannot justify

8

wholesale redacting 80% or more of the contents of presentations prepared by non-lawyers as somehow disclosing legal advice.

*Second*, Google likewise cannot justify its redactions of information in documents prepared by non-lawyers as opinion work product. Only one of the relevant privilege log entries even mentions (in a conclusory fashion) "opinion work product," *see* Appendix A at 3 (GOOG-AT-MDL-B-009828450), and Google has never attempted, as it "must," to "provide specific and detailed indications of where [opinion] work product is located in the[se] documents." *Martin Marietta*, 856 F.2d at 626. It is unlikely that documents prepared by non-lawyers "represent[] the actual thoughts and impressions of [an] attorney," *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994), because opinion work product is usually "written by an attorney to convey his own mental impressions or thoughts," *Martin Marietta*, 856 F.2d at 625 n.1, rather than written by non-lawyers. And even if engineers, businesspeople, and other non-lawyers happened for some reason to repeat the legal impressions of attorneys in analyses of divestiture feasibility, such instances are probably rare. That remote possibility cannot justify the extensive, wholesale redactions to non-lawyer documents that Google has made here.

*Third*, Google cannot rely on fact work product to withhold portions of documents the Court has ordered to be produced because the Court has already determined that Plaintiffs have a substantial need for those documents. The Court concluded broadly that "reports and analyses prepared by nonlegal Google employees relating to the scope of work required to divest either AdX or DFP is really fact work product," and that "plaintiff[s] ha[ve] established that there is a substantial need for the materials." Hr'g Tr. at 39:11–13, 39:18–20 (May 30, 2025). The Court did not distinguish among different categories of "work required to divest" AdX or DFP or suggest that Plaintiffs have "substantial need" for only some of those categories. Nor did the

9

Court empower Google to parse which portions of documents it believes Plaintiffs have "substantial need" for. For example, Google is selectively withholding some ▓▓▓ that Google non-lawyers prepared ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ while producing others. *Compare* Ex. 9 (GOOG-AT-MDL-B-009832248) at -298, -303, -308, *with id.* at -307. But there is no basis in the Court's order for such redactions and no basis for Google to make that determination unilaterally.

Moreover, even if Google were correct that it may redact portions of documents that do not describe "technical" work, as opposed to other kinds of work, needed to divest AdX or DFP, that hair-splitting cannot justify Google's broad redactions. AdX and DFP are software tools, and although divesting them may involve financial or other considerations, such divestitures would fundamentally be a "technical project," as Google has acknowledged. ECF No. 1431 at 11. Google therefore cannot justify its claim that page after page of documents about divesting AdX or DFP do not even "relat[e] to" the technical work required to facilitate such divestitures. *See* Hr'g Tr. at 39:12 (May 30, 2025). For example, Google claims that it "properly withheld" information about "discussion" by Google non-lawyers "of the technical scope of [remedy] proposals that were under consideration," Ex. 1 at 7–8, even though such information is clearly covered by the Court's May 30 Order.

## II. *In Camera* Review of a Subset of Disputed Documents Is Warranted

Although Google has not made even a preliminary showing that its redactions are justified by any privilege, there is nevertheless ample "factual basis . . . to support a reasonable, good-faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Interbake Foods*, 637 F.3d at 502.

*First*, the facial overbreadth of Google's redactions alone indicates that "at least some of the information contained in the documents may be subject to disclosure." *Tharpe*, 2012 WL

10

12894480, at * 4. As discussed above, the factual context of Google's privilege assertions juxtaposed against the remarkable breadth of Google's redactions is enough to form a "reasonable, good-faith belief" that something less—likely significantly less—than 60% of the pages in the documents at issue are privileged. That belief justifies *in camera* review.

    *Second*, there is also direct evidence that at least some of Google's specific redactions are unwarranted. Two of the presentations at issue each contain what appears to be the same slide, but Google made inconsistent redactions to the two copies of that slide, which reveal improper claims of privilege. The slide describes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮" Ex. 10 at -639; Ex. 11 at -498. In one copy of the slide Google redacted a statement at the bottom that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 10 at -639; *see* Fig. 1 (below). And in the other copy of the slide Google redacted, under the heading "▮▮▮" for ▮▮ ▮▮▮▮▮▮ the statement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 11 at -498; *see* Fig. 2 (below). Both redacted statements are clearly not privileged and instead are factual assessments of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. These redactions call to mind Google's related practice of labeling emails attorney-client privileged "even though [they] clearly did not involve privileged communications." ECF No. 1410 at 114. Google likely made similarly unwarranted redactions throughout the documents at issue, and only *in camera* review would be able to discern the extent of Google's overreach.

11

Figure 1. Excerpt of Ex. 10 (GOOG-AT-MDL-B-009828599)



Figure 2. Excerpt of Ex. 11 (GOOG-AT-MDL-B-009828460)



If the Court is inclined to order *in camera* review, Plaintiffs would propose that they select a "reasonable subset" of the documents at issue. *See Harrison*, 2019 WL 2216474, at *6 n.15. To enable Plaintiffs to make an informed selection of that subset, Plaintiffs propose that this selection occur promptly after Google produces an expedited privilege log for all the documents produced in response to the Court's May 30 Order, as proposed *infra* Part III.

12

**III.     The Court Should Set an Expedited Schedule for Google's Production of Remaining Documents and Any Accompanying Privilege Logs**

Google's production of documents and privilege logs in response to the Court's May 30 Order has not kept pace with the velocity of this remedies discovery period, and that production should be expedited accordingly. Google has been trickling out documents responsive to the May 30 Order one or two business days before the custodian of those documents is to be deposed, leaving Plaintiffs with an unreasonably short time to prepare for and conduct fair depositions. And despite being one of the world's leading technology companies with at least four well-resourced law firms at its disposal, Google has only managed to produce 37 documents responsive to the May 30 Order in 14 days.

Google can and must do better. Plaintiffs ask the Court to order Google to produce, within three days of its ruling on this motion, all remaining documents responsive to the Court's May 30 Order and a complete privilege log for those documents. *See, e.g., Williams*, 2019 WL 8107922, at *4 (requiring party to produce privilege log on the day "documents are withheld"). Also, for any Google witness whose documents are not produced at least three business days before the noticed date of the deposition, or whom Plaintiffs have already deposed with improperly redacted documents, Plaintiffs request the Court's permission to reopen such witness's deposition, including after the June 30 fact discovery cutoff if necessary, to question the witness on the topics addressed in the late-produced or improperly redacted documents.

**IV.     Google Should Produce Factual Materials It Shared with the European Commission About the Cost, Burden, or Difficulty of Remedies**

Google should be required to produce its own statements or submissions to the EC that reflect analysis of the cost, burden, or difficulty of actual or potential remedies. Google has declined to produce those materials, claiming that, (1) the laws of the European Commission

13

prohibit disclosure of these materials, and (2) Federal Rule of Evidence 408 would apply to them, triggering a heightened burden for discovery. Neither argument is correct.

*First*, the EC has definitively advised that Google's view of EU law, as applied to specific facts and circumstances of this case, is incorrect. *See* Ex. 5. Specifically, it has advised that the provisions of EU law Google relies on "do not prohibit" Google from producing the documents Plaintiffs seek in this situation. *Id*. at 2. The EC is a foreign sovereign, and this Court should accord the EC's interpretation of its own laws significant deference under principles of international comity. *Cf. Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001) ("American courts will normally accord considerable deference to foreign adjudications as a matter of comity."). Of course, the Court is not bound by the EC's submission and "may consider any relevant material or source" in determining foreign law, *see* Fed. R. Civ. P. 44.1, but the EC's determination is tailored to "the specific circumstance[s]" presented here, Ex. 5 at 2, making it unusually authoritative. Google has not shown that its purported efforts to seek "reconsideration" or "clarification" of the EC's determination is anything other than a stalling tactic.

*Second*, as discussed above and as Plaintiffs have informed Google, Plaintiffs seek in response to RFP No. 2 only factual statements or submissions by Google about the cost, burden, or difficulty of remedies; we do not seek any settlement proposals or negotiations about such proposals. Thus, Google's arguments based on purported disclosure of "pre-settlement negotiations" are inapposite. Ex. 6 at 2. Plaintiffs have also already established why Google is incorrect that all documents "in connection with" settlement discussions are subject to a heightened standard of relevancy. *See* ECF No. 1447 at 13–14. In any event, the documents Plaintiffs seek in response to RFP No. 2 would satisfy a "particularized showing of relevance," even if such a heightened standard did apply. *See id*. at 14 –15. Like the documents Plaintiffs

14

sought in their May 23 motion, the documents at issue here—Google's submissions to the EC about the purported cost, burden, or difficulty of implementing various remedies—are highly relevant to Google's contention that Plaintiffs' proposed remedies would be "cumbersome, disruptive, and unpredictable."

## CONCLUSION

For the foregoing reasons, the Court should order Google to (1) remove redactions from any material "prepared by non-lawyers at Google," in compliance with the Court's May 30 Order, *see* ECF No. 1450, (2) produce, within three days of the Court ruling on this motion, all remaining documents responsive to the May 30 Order and a privilege log for all documents responsive to that Order, and (3) produce all Google statements or submissions to the EC that reflect analysis of the cost, burden, or difficulty of actual or potential remedies. The Court should also review *in camera* a subset of the documents Google produces in response to the May 30 Order to ensure that Google's redactions comply with that order.

Dated: June 13, 2025

Respectfully submitted,

| | |
|---|---|
| ERIK S. SIEBERT<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Tyler T. Henry<br>TYLER T. HENRY<br>Assistant Attorney General<br><br>Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>MATTHEW R. HUPPERT<br>DAVID M. TESLICKO<br>MICHAEL E. WOLIN<br><br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Julia.Tarver.Wood@usdoj.gov<br><br>*Attorneys for the United States* | *Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia* |