IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MAY 30 ORDER AND TO COMPEL PRODUCTION OF GOOGLE'S REMEDY FEASIBILITY SUBMISSIONS TO THE EUROPEAN COMMISSION**

Google's overbroad assertions of privilege and work product have ongoing, serious impacts on discovery. To date, Plaintiffs have taken depositions of four Google employees as part of discovery for the remedies hearing. Google has forced Plaintiffs to take these depositions with an incomplete documentary record and with extensive redactions that undermine Plaintiffs' ability to examine, and impeach as required, Google's employees on Google's internal divestiture analyses. Three more depositions of Google employees will occur by June 25, the date by which Google now proposes to produce documents responsive to the Court's May 30 Order. ECF No. 1494 (Opp.) at 20.

Google's attempts to minimize the impact of its redactions are misleading. For example, Google points to portions of a June 13 deposition transcript to suggest that Plaintiffs "extensively examined" Google employees and had a "full opportunity to examine those witnesses on the documents Google products." Opp. at 7. That is wrong. Google's assertion strains credulity in light of the extensive redactions that Google made to the documents in question, including a recent questionable request to claw back information. *See* ECF No. 1477 (Mem.), Exs. 8, 9, & 10. Just yesterday, Google produced a document that has a single bullet under ▬▬▬▬

1

 asking ████████████████████████████████████████

████████████████████████, surrounded by five pages of redactions.

This problem is now compounded by overbroad instructions not to answer at depositions of Google witnesses. For example, Google counsel instructed the Google employee in question not to "reveal the scope of any project," not to disclose "responsibilities" they had in conducting the analyses, and not to testify about any internal Google discussions of divestiture "where counsel was present." Ex. 1 at 45:4–46:21; 49:21–53:8; 58:18–59:4. These sweeping assertions of privilege, through both redaction and shutting down deposition testimony, are an improper attempt to shroud in privilege the substance and foundation of the analyses the Court has ordered to be disclosed. As the Court recognized, access to contemporaneous documents is important "for impeachment purposes" when deposing a witness. Hr'g Tr. at 26:24-27:7 (May 30, 2025). The Court's ruling and the record of Google's conduct demonstrate that merely having an opportunity to question a deponent about divestiture analyses is not a substitute for the fact work product that the Court ordered disclosed. It instead heightens the need for these documents to assess whether the "hundreds of pages of testimony," Opp. at 8, offered by Google's witnesses is credible and complete.

In the face of Google's persistence in maintaining these overbroad redactions, Plaintiffs request that the Court order Google to remove redactions from any material "prepared by non-lawyers at Google" to comply with the Court's May 30 Order and produce within three days all remaining responsive documents and a privilege log, followed by an *in camera* review.[1]

---

[1] Google states that it offered an "efficient and productive way to proceed" by means of a joint motion. Opp. at 10. As Plaintiffs explained to Google, Google's proposal was not efficient because it would not resolve the entire scope of disagreement between the parties, thereby leading to additional delay. Opp., Ex. 2 at 2.

Additionally, Google continues to assert that European Union ("EU") confidentiality law bars production of certain Google statements and submissions to the European Commission ("EC") regarding remedies. But Google's opposition makes clear that the EC, despite recent conversations with Google, has not budged from its position that the documents may be produced in this proceeding, and production is not barred by EU law. Google's continued refusal to provide the EC remedies documents has a serious and ongoing impact on fact discovery, which ends in 11 days. Plaintiffs request that the Court order Google to produce the requested EC remedy documents.

## I.     Google Fails to Justify Its Overbroad Redactions

Google's opposition does not justify its extensive redactions to the documents the Court ordered to be produced. It relies on an indecipherable web of attorney-client privilege, fact work product, and opinion work product to justify its extensive redactions, but its opposition only tries to defend one of these categories—fact work product—by offering a narrow interpretation of the Court's May 30 Order. That interpretation is incorrect for the reasons discussed below. But even if Google is correctly interpreting the Court's order, Google has made no plausible showing that such an interpretation would justify redacting more than 60% of the documents' contents, including discussion of the "technical scope" of the remedies projects or similar context that is needed to understand the analyses in question. It is clear from Google's submission and its conduct at recent depositions that its understanding of privilege and work product is untethered from the law, and its overbroad redactions are a product of that flawed understanding. These circumstances warrant *in camera* review of a reasonable subset of Google's redacted documents to determine the appropriateness of the redactions Google has made.

A.  **Google Has Not Justified Redactions Purportedly Based on Attorney-Client Privilege or Opinion Work Product**

Google fails to explain why any significant portion of the documents at issue, let alone 60% or more of their content, is properly redacted based on attorney-client privilege or opinion work product. It claims those assertions are "narrow," Opp. at 12, but Google's redactions and its articulation of the scope of these protections in briefing and at depositions are overbroad. For example, Google has asserted at depositions that any information originating in any way from a lawyer or any information uttered in the mere presence of a lawyer is privileged. *See* Ex. 1 at 45:4–46:21 (Google counsel instructing the witness not to "reveal the scope of any project"); 49:21–53:8 (Google counsel instructing the witness to refuse to provide factual information on his responsibilities related to an internal analysis); 58:18–59:4 (Google counsel instructing the witness not to reveal conversations with non-lawyers "where counsel was present"); .86:2–86:19 (Google counsel instructing the witness ███████████████████████████████████████████████████).

This approach is wrong for the reasons Plaintiffs have previously explained, including that the attorney-client privilege only protects confidential communications with an attorney for the purpose of seeking legal advice and does not protect facts. Mem. at 7–9; ECF No. 1441 at 5–6; ECF No. 1447 at 15–16. The Court has observed that Google's practice of labeling communications privileged merely because a lawyer was included is a "misuse" of that privilege. ECF No. 1410 at 113–14 (citing several examples). Yet Google persists in claiming that the presence of a lawyer is enough.

As another illustrative example, Google's brief suggests that the mere fact that a divestiture was "presented to a regulator" is properly protected as both an attorney-client communication and work product, Opp. at 15, but it offers no legal basis for that remarkable

4

claim. Communications with a third-party adversary are a paradigmatic example of a *non-privileged* communications as to which any work product protection would be waived. *See, e.g.*, *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988) (waiver arising from disclosure to "adversaries" extends to any "material actually disclosed" and "all non-opinion work-product on the same subject matter as that disclosed").

      **B.**      **Google's Interpretation of the Court's May 30 Order Is Incorrectly Narrow**

The Court's May 30 Order was clear: Google is to produce "internal reports and analyses prepared by non-lawyers at Google describing the nature and scope of work that would be required to modify Google's ad exchange (AdX) and Google's publisher ad server (DFP) to facilitate divestiture as requested by plaintiffs, *including* the burden, cost, and potential difficulties of implementing those changes." ECF No. 1450 (emphasis added); Hr'g Tr. at 40:21–41:2 (May 30, 2025). The Court explained that "the reports and analyses prepared by nonlegal Google employees relating to the *scope of work required to divest* either AdX or DFP is really fact work product" and concluded that Plaintiffs established a substantial need for them. Hr'g Tr. at 39:11–14, 18–20 (May 30, 2025) (emphasis added). The nature and scope of work required to modify and divest AdX or DFP includes, for example, finding a buyer with sufficient technical ability to implement the divestitures. *See* Mem. at 10.

Google attempts to transform the Court's use of "including" to "limited to." Opp. at 13–14. Its reasoning is flawed. Google points to language where the Court said, "So for those reasons, I am going to grant the motion in part and require Google to provide any internal reports and analyses prepared by nonlawyers." Opp. at 11 (quoting Hr'g Tr. at 40:16–18). But Google ignores the next line where the Court explained that this meant "legal opinions and . . . analysis from lawyers and those kinds of things" would be excluded—not all fact work product. Hr'g Tr. at 40:19–21 (May 30, 2025). These are the only exceptions the Court identified, and Plaintiffs do

5

not seek those legal opinions or legal analyses. Google also relies on the Court's colloquy with counsel earlier in the hearing, Opp. at 13–14, but the new exception that Google creates would swallow the Court's written order, which did not limit the required disclosure of fact work product to only the "burden, cost, and potential difficulties" of divestitures, ECF No. 1450.[2]

Google's interpretation of the Court's order deprives Plaintiffs of the context needed to understand the "nature and scope of work" required to modify AdX and DFP for divestiture and defeats the purpose of the May 30 Order. The Court should reject Google's interpretation.

C.   **Google's Implementation of Its Understanding of the Court's Order Is Facially Flawed**

Even assuming arguendo that Google's interpretation were correct—which it is not—Google's implementation of that interpretation is facially flawed and demonstrates the need for *in camera* review. Notably, Google itself suggests that it is not opposed to *in camera* review here. Opp. at 20.

Plaintiffs provided multiple reasons why *in camera* review is warranted. Mem. at 10–12. Since Plaintiffs filed the motion, Google has acted in ways that substantiate Plaintiffs' serious concern over Google's redactions and further demonstrate the need for *in camera* review. Plaintiffs' memorandum provided an example of inconsistent redactions between two documents that revealed improper claims of privilege or work product. Mem. at 11–12. On June 17, Google asked to claw back the cited content of one of those documents, GOOG-AT-MDL-B-009828460, to add *further* redactions, without an explanation as to why the content is appropriately withheld. Ex. 2 at 1. Google also acknowledged that other redactions it made to that page of the document were improper, and then claimed additional content was privileged. *Id.*

---

[2] As explained in I.B, Google also attempts to ignore the Court's clear direction to disclose fact work product related to the costs or difficulties of divestiture.

6

Google's actions are problematic for at least two reasons. First, Google itself belatedly recognized that some of its redactions went too far—but only in response to a motion to compel that highlighted the content in question on a specific page of a specific document. Google has indicated that it will not review its other redactions to ensure they are appropriate unless the Court orders. Opp. at 20. Given this latest example of Google removing redactions only in response to a motion to compel, *see* ECF No. 257 at 2–5 & n.4, Plaintiffs continue to be concerned about likely other instances of content that is improperly redacted, *see* ECF No. 1410 at 114 (noting Google's "misuse of the attorney-client privilege"); Hr'g Tr. at 5:25–6:6 (June 10, 2025) ("[T]he Court clearly has serious concerns about the defendant's application of either work product or attorney-client privilege . . . .").[3]

Second, Google's request to claw back additional information in the same document demonstrates the problematic nature of its overly narrow interpretation of the Court's May 30 Order. The Court ordered Google to produce "internal reports and analyses prepared by non-lawyers at Google describing the nature and scope of work that would be required to modify Google's ad exchange (AdX) and Google's publisher ad server (DFP) . . . including the burden, ***cost, and potential difficulties*** of implementing those changes." ECF No. 1450 (emphasis added). But Google clawed back content *precisely* to redact such information for changes to AdX and/or DFP. *See* Mem. at 12 & Ex. 11.

In addition, on June 18, Google produced 20 documents in advance of upcoming deposition, again with heavy redactions. One document highlights Google's continued questionable redactions. The document, GOOG-AT-MDL-B-009832633, contains sections that

---

[3] Plaintiffs additionally reiterate their request that the Court set an expedited schedule for Google's production of remaining documents and accompanying privilege logs, including producing all documents and logs within three business days of the Court's ruling. Mem. at 13.

7

address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3. These sections are surrounded by redactions removing what is almost certainly factual information speaking to the nature and scope of work needed to divest these products. For example, on the fifth page of this document there is a section titled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is immediately surrounded by five pages of redactions. *Id.* at 5–9.

Google is operating with a trust deficit because of its own actions. Google knows it, and the Court has recognized it. Hr'g Tr. at 29:9–30:7 ("[T]here's a great deal of distrust based upon the track record of Google, not the least of which is . . . the concern about, you know, the policy about hiding e-mails and that sort of thing.") (May 2, 2025); Hr'g Tr. 5:25–6:6 (June 10, 2025). Google has not made a preliminary showing that its redactions are justified, and there is ample "factual basis . . . to support a reasonable, good-faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011). If the Court does not presently order Google to remove redactions from any material "prepared by non-lawyers at Google," Mem. at 2, Plaintiffs respectfully ask the Court to order an *in camera* review.[4]

## II.  Google Must Produce Factual Statements or Submissions Shared with the European Commission

In an effort to avoid producing relevant statements about divestiture feasibility that Google made to the EC, Google ignores guidance from the EC specific to this very case and instead relies on factually inapt circumstances to argue against production. Google further

---

[4] Plaintiffs reiterate their request for the Court's permission to reopen the depositions of Google witnesses for whom Google does not properly produce documents (including with proper, rather than overbroad redactions) at least three business days before the deposition. *See* Mem. at 13. The request includes witnesses that Plaintiffs have already deposed with improperly redacted documents. *See id.* Such permission should extend past the June 30 discovery cutoff, if necessary, to question any such witness on late-produced or unredacted documents.

8

ignores the narrow scope of Plaintiffs' document request to argue that it intrudes on a settlement privilege that the Fourth Circuit does not recognize. The Court should reject Google's arguments and order production of the documents responsive to Plaintiffs' RFP No. 2.

    **A.    The Court Should Defer to the European Commission's Informed Interpretation of its Own Laws**

Google's opposition confirms what Plaintiffs already argued: that the EC has "definitively advised" that EU law does not prohibit Google from producing the requested remedies analyses at issue in this proceeding. Mem. at 14. The Court should compel production because (1) courts give significant deference to foreign sovereign's interpretations of foreign laws, and (2) the EC made an informed, specific determination that EU law does not bar the specific discovery requested by Plaintiffs.

Courts typically give deference to a foreign sovereign's interpretations of foreign law. Mem. at 14. Indeed, Google's own cited cases illustrate this principle. *See* Opp. at 22 (citing *In re Int. Rate Swaps Antitrust Litig.*, 2018 WL 5919515, at *2 (S.D.N.Y. Nov. 13, 2018) (An EC letter in a related case stating that a document could not be disclosed under EU law, along with an EC request that the relevant party claw back the document at issue, were two of the factors that "persuasively demonstrate[d] that" the relevant document "remain[ed] prohibited from disclosure.") and *In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078, 1084 (N.D. Cal. 2007) (holding that "the principles of comity outweigh the policies underlying discovery," and declining to order production of certain documents, where the EC stated that discovery of the documents would conflict with EU law)). And the deference to foreign law, and foreign interpretations of foreign law, can be strong. In the cases cited by Google, documents that would normally be discoverable under American law were not discoverable in part because the EC said

9

such an outcome would conflict with EU law. *See*, *e.g., In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d at 1084.

In this case, however, the EC has examined the "specific circumstance" of Plaintiffs' document request and come to the opposite conclusion: that the EU law provisions cited by Google "do not prohibit" production of the relevant documents. *See* Mem, Ex. 5 at 2. Google argues in its opposition that "[b]ecause counsel for Google was not copied on Plaintiffs' communications with the EC case team, Google had no understanding of what, if any, context Plaintiffs provided to the case team." Opp. at 24. But the letter itself makes clear that the EC understood the context properly: it contains the language of Plaintiffs' document request and shows an accurate understanding of the limitations of the scope of Plaintiffs' request. *See* Mem. Ex. 5 at 1.[5] And Google's opposition makes clear that the EC case team had the appropriate context because Google spoke with them. Opp. at 24 (explaining that "Counsel for Google spoke with the [EC] case team on June 5 and sent a follow-up letter on June 6," and "spoke with the case team again" on June 16). In response, the case team advised that it would not respond to Google's letter. *Id.* In other words, the EU case team heard any additional context Google thought was important, and the team did not change its mind.

The EC's rejection of Google's arguments differentiates this case from each of Google's cited cases that purportedly weigh against production of the relevant documents. In those cases, *see* Opp. at 21-22, the EC opposed production because the disclosure involved information relating to leniency applications or admissions of liability, or information of third parties. *See* ECF No. 1493-10 at 11–14 (*Amicus Curiae* Brief of the European Commission, *In re Farm-Raised Salmon & Salmon Prods Antitrust Litig.*, Case No. 1:19-cv-21551-CMA (S.D. Fla.))

---

[5] Google also does not suggest, for example, that the EC case team analyzed the wrong provisions of EU law.

10

(opposing production of documents that related to the EC's leniency program and emphasizing that the "Leniency Program—the most successful instrument for detecting and punishing unlawful cartels in the EU—relies on voluntary submissions of sensitive material by applicants, but applicants would not participate if they were put in a worse position for having volunteered this information"); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d at 1080, 1084 (declining to compel production where the EC stated that production of the relevant documents that were generated under the EC's leniency program "would conflict with [the party's] obligations under E.C. law").[6] Neither circumstance applies here.

Google also claims that the issue "remains unsettled" because Google has now sought clarification from another EC entity, the Hearing Officer. But Google's eleventh-hour effort to get another opinion should not delay production of the requested documents. Plaintiffs requested the EC documents on May 2. *See* Mem. at 5. Plaintiffs then sought, and received, EC guidance on the issue in May. *See* Mem., Ex. 5. Google, on the other hand, withheld the documents based on its interpretation of EU law but did not contact the EC until June 5, more than a month after Plaintiffs requested the documents. *See* Opp. at 24. Plaintiffs continue to be prejudiced by Google's delays in production. Five depositions of Google employees have already been taken, and fact discovery closes in only 11 days. Further delays may entirely prevent Plaintiffs from using the EC documents during fact discovery. The Court should not permit Google to further delay production based on its tardy outreach to the EC.

---

[6] Google also cites to *In re Interest Rate Swaps Antitrust Litig.*, 2018 WL 5919515 (S.D.N.Y. Nov. 13, 2018). But *Interest Rate Swaps* is far afield from the present situation. In that case, the document at issue was a statement from the EC informing parties of a "preliminary view" of violations, and EU law specifically prohibited the use of such statements for anything other than EC judicial or administrative proceedings. *See id.* at *1–2. The EU then asked the relevant defendant to claw back the EC's preliminary view statement, and the court allowed the defendant to do so. *See id.* at *2–3.

**B.     Google's Myopic Focus on Settlement Discussions Ignores Plaintiffs' Request**

As explained in their memorandum, Plaintiffs seek factual statements or submissions Google made to the EC about the cost, burden, or difficulty of remedies. Mem. at 14. Such statements might include declarations or submissions by Google employees or experts about the feasibility of a divestiture of AdX or DFP. Plaintiffs do not seek settlement proposals or negotiations about such proposals.[7]

Google relies primarily on one district court case, *CHS Inc. v. ABM Healthcare Support Servs., Inc.*, 2021 WL 149861 (W.D. Va. 2021). Opp. at 26. The *CHS* court declined to compel production of documents regarding ongoing settlement negotiations. 2021 WL 149861, at *3. Because Plaintiffs are not seeking those documents, but instead factual statements Google made to the EC—including statements outside of any potential settlement context—*CHS* is inapt. And Google implicitly concedes that these documents exist when it notes that "the EC-related materials [Plaintiffs] seek *include* exactly that." Opp. at 4.

Google claims that providing these factual statements might chill settlement negotiations if these documents could potentially be disclosed in discovery. Opp. at 26. However, Google immediately goes on to say that it ███████████████████████████████████████████████████████████████████████████████████████████████████ Google's own actions show that it was not chilled by ████████████████████████████████████████████████████████████.

---

[7] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[8] ████████ *See* Ex. 4 at 2 ████████████████████████████████████████████████████████████████████████████████████).

Google's invocation of Rule 408 is procedurally misplaced and a red herring. Rule 408 governs admissibility of evidence, not discoverability. *See David v. En Pointe Prods., LLC*, 2023 WL 5867424, at *5 (E.D. Va. Sept. 11, 2023) (Rule 408 is "merely a Rule of Evidence and determines what evidence is admissible"); *Swimways Corp. v. Zuru, Inc.*, 2014 WL 12603189, at *1 (E.D. Va. July 1, 2014) ("The Fourth Circuit has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents."); *Nat'l Union Fire Ins. Co. v. Porter Hayden Co.*, 2012 WL 628493, at *3 (D. Md. Feb. 24, 2012) ("[C]ourts in [the Fourth Circuit] have found that 'relevance not admissibility, is the appropriate inquiry with regard to whether or not the information sought is discoverable" (cleaned)). It is premature for the Court to make a ruling on admissibility, let alone bar discovery based on potential admissibility questions.

Dated: June 19, 2025

Respectfully submitted,

| | |
|---|---|
| ERIK S. SIEBERT<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |
| /s/ Gerard Mene<br>GERARD MENE<br>Assistant U.S. Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314<br>Telephone: (703) 299-3777<br>Facsimile: (703) 299-3983<br>Email: Gerard.Mene@usdoj.gov | /s/ Tyler T. Henry<br>TYLER T. HENRY<br>Assistant Attorney General<br><br>Office of the Attorney General of Virginia<br>202 North Ninth Street<br>Richmond, VA 23219<br>Telephone: (804) 692-0485<br>Facsimile: (804) 786-0122<br>Email: thenry@oag.state.va.us |
| /s/ Julia Tarver Wood<br>JULIA TARVER WOOD<br>KYLE BRIGHT<br>DAVID A. GEIGER<br>MATTHEW R. HUPPERT<br>DAVID M. TESLICKO<br>MICHAEL E. WOLIN<br><br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 7100<br>Washington, DC 20530<br>Telephone: (202) 307-0077<br>Fax: (202) 616-8544<br>Email: Julia.Tarver.Wood@usdoj.gov<br><br>*Attorneys for the United States* | *Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia* |