**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES, *et al.*, | |
| *Plaintiffs*, | |
| vs. | No: 1:23-cv-00108-LMB-JFA |
| GOOGLE LLC, | |
| *Defendant*. | |

**DEFENDANT GOOGLE LLC'S SUPPLEMENTAL MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' REQUEST FOR**
**SETTLEMENT MATERIALS PROVIDED TO THE EUROPEAN COMMISSION**

Plaintiffs must satisfy a heightened showing of relevance and need to obtain Google's confidential settlement negotiations with the European Commission ("EC"), including materials relating to the feasibility of remedies. *See Wyeth v. Lupin Ltd.*, 2008 WL 11509482, at \*3 (D. Md. Mar. 28, 2008); *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, 2020 WL 6947921, at \*3-4 (M.D.N.C. Sept. 29, 2020); *CHS Inc. v. ABM Healthcare Support Servs., Inc.*, 2021 WL 149861, at \*2-3 (W.D. Va. Jan. 15, 2021).

While the Fourth Circuit has not yet squarely addressed the specific issue before the Court, it has—in a related context concerning whether confidential communications made during mediation should be disclosed—held that courts must "balance the public interest in protecting the confidentiality of the settlement process and countervailing interests, such as the right to every person's evidence" because the "assurance of confidentiality is essential to the integrity" of mediation as it "serves to protect" those discussions "from being used as a discovery tool for creative attorneys." *In re Anonymous*, 283 F.3d 627, 636 (4th Cir. 2002). Multiple district courts have applied that reasoning from the Fourth Circuit to afford "enhanced protections to settlement documents and communications sought in discovery." *Wyeth*, 2008 WL 11509482, at \*3 (discussing *Anonymous*); *Food Lion*, 2020 WL 6947921, at \*3-4 ("Although *Anonymous* arose in a different context (a mediation conference governed by additional confidentiality provisions), this Court agrees that public policy warrants judicial caution in exposing communications made during the negotiations leading up to a final settlement."); *CHS*, 2021 WL 149861, at \*2 (citing *Food Lion*'s discussion of *Anonymous* favorably).

Plaintiffs have not come close to "demonstrating that injustice will result from non-disclosure," much less that they have any material need for the requested materials. *Wyeth*,

1

2008 WL 11509482, at *4; *see also In re Anonymous*, 283 F.3d at 637 (requiring party seeking disclosure of settlement materials to "demonstrate that 'manifest injustice' will result from non-disclosure"). The materials sought cannot be used for impeachment and have no unique evidentiary value, and important public policy considerations weigh heavily against disclosure in this case.

I.    **Settlement Negotiations Are Not Discoverable for Impeachment Purposes.**

Plaintiffs' principal argument for why these materials are relevant and discoverable is that they want Google's ***representations in the course of settlement negotiations with a foreign regulator*** for so-called "impeachment purposes." 6/20/25 Hr'g Tr. 22:23-23:10.

But the courts in *Wyeth* and *CHS* squarely rejected the discoverability of settlement materials requested for the purpose of impeachment. *See Wyeth*, 2008 WL 11509482, at *4 (denying motion to compel when party sought settlement documents and communications to determine whether opposing party "took any factual positions concerning" one of its products that were "inconsistent with those taken in this litigation"); *CHS*, 2021 WL 149861, at *2 (rejecting party's argument that the opposing party had "taken inconsistent positions" on a certain topic and it "suspects that [opposing party] may take a position in a settlement agreement . . . that is contrary to its defenses in this case"). Moreover, Plaintiffs cannot use these settlement materials for impeachment purposes because Rule 408 is clear that evidence from settlement negotiations is "not admissible . . . to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a); *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) (FRE 408 "excludes from evidence all statements made in the course of settlement negotiations," i.e., any "statements or conduct" that "were intended to be part of the negotiations for compromise").

## II.    The EC Settlement Materials Do Not Have Any Unique Evidentiary Value.

Plaintiffs' claim that they also seek this information for its "independent evidentiary value" to "understand factually whether these divestitures are feasible" also falls short of the heightened standard. 6/20/25 Hr'g Tr. 22:23-23:10.

As an initial matter, any relevant information in the materials would at best be cumulative. *See CHS*, 2021 WL 149861, at *3 (denying motion to compel because the party could "obtain any relevant information it would glean from reviewing ongoing settlement communications . . . through other, less concerning or burdensome, means"). Plaintiffs already have access to a wide swath of discovery regarding the workability of divesting AdX and DFP, including, pursuant to the Court's May 30, 2025 Order, Dkt. 1450, internal analyses and reports prepared by Google non-lawyers regarding the work required to facilitate divestiture as requested by Plaintiffs. ███████████████████████████████████████

███████████████████████████████████████████████████

███ . *See* 6/20/25 Hr'g Tr. 21:4-8.

What is more, ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ , *see* Dkt. 1499-4, ████



---

Finally, Google would suffer real prejudice—and the presentation of evidence in the remedies hearing would be unnecessarily complicated—if it were forced to spend time explaining and contextualizing statements made in the context of settlement negotiations regarding particular remedy proposals, which vary from what Plaintiffs seek in this action, in a foreign jurisdiction. Even where settlement negotiations regard the same remedy at issue, "[b]ecause parties engaging in settlement negotiations may be 'motivated by a desire for peace rather than from a concession of the merits of the claim . . . [they] may assume disputed facts to be true for the unique purposes of settlement negotiations,' the discovery of which would be highly misleading if used for" purposes other than settlement. *Food Lion*, 2020 WL 6947921, at *3 (citation omitted). And since settlement negotiations are "typically punctuated with numerous instances of puffing and posturing" what is "stated as fact on the record could very well not be the sort of evidence which the parties would otherwise actually contend to be wholly true." *Wyeth*, 2008 WL 11509482, at *4 (citation omitted).

Accordingly, requests for documents related to settlement *negotiations* are entitled to greater protection than requests for executed settlement *agreements*, and generally viewed as having limited relevance. *See Food Lion*, 2020 WL 6947921, at *3-4 (explaining that "once an agreement has been reached, there is a lesser interest in protecting the settlement agreement as opposed to the negotiations themselves" (citation omitted)); *Wyeth*, 2008 WL 11509482, at *4 ("a number of courts have recognized the lack of reliability or veracity of statements made in

settlement, to the point of undermining their relevance"). Indeed, all cases Plaintiffs have cited thus far concern discovery (i) relating to an executed settlement agreement[3] or (ii) documents that would not reveal the existence of settlement negotiations.[4] Dkt. 1447 at 14.[5]

Plaintiffs, therefore, cannot support their claim that the EC materials have any added "independent evidentiary value," much less that they satisfy the heightened need and relevancy standard at issue here. *See Food Lion*, 2020 WL 6947921, at *4 (denying motion to compel production of "pre-settlement communications and compromise offers between" defendant and "DOJ and state Attorney Generals" because plaintiff had not made a "particularized showing of relevance").

## III.    Public Policy Favors Maintaining the Confidentiality of Settlement Negotiations.

"[P]ublic policy warrants judicial caution in exposing communications made during the negotiations leading up to a final settlement." *Food Lion*, 2020 WL 6947921, at *3. As discussed above, Plaintiffs cannot show any prejudice or injustice that would sufficiently justify setting that principle aside and compelling disclosure of Google's confidential settlement negotiations—regardless of whether the materials at issue are subject to a

---

[3] *In re Camp Lejeune Water Litig.*, 2024 WL 2874287, at *2 (E.D.N.C. June 6, 2024) (consent motion to compel testimony about a "confidential settlement agreement"); *Swimways Corp. v. Zuru, Inc.*, 2014 WL 12603189, at *1 (E.D. Va. July 1, 2014) (motion to compel production of a "confidential settlement agreement"); *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, 2011 WL 2470460, at *1, *4-5 (M.D.N.C. June 20, 2011) (motion to compel production of "settlement agreements with former Defendants in this case"); *Polston v. Eli Lilly & Co.*, 2010 WL 2926159, at *1 (D.S.C. July 23, 2010) (motion to compel production of a "confidential settlement agreement").

[4] *Nat'l Union Fire Ins. Co. v. Porter Hayden Co.*, 2012 WL 628493, at *4 (D. Md. Feb. 24, 2012) (permitting discovery where requested information did not "include settlement figures or evidence of negotiations or compromise"). Unlike in *Hayden*, even with redactions, the documents requested by Plaintiffs will constitute, at a minimum, "evidence of negotiations."

[5] As previously briefed, the Court's May 30 Order did not address the discoverability of settlement materials exchanged between parties. *See* Dkt. 1493 at 25 n.10.

heightened standard of protection or Rule 26(b) proportionality analysis. *See Celgene Corp. v. Mylan Pharms.*, 2021 WL 9563337, at *4 (N.D.W. Va. Feb. 10, 2021) (finding Defendants had "failed to show that manifest injustice would occur if past settlement agreements . . . remained confidential" and, alternatively, had not made "the necessary showing . . . to warrant production" "even if the higher standard . . . does not apply").

As the Sixth Circuit observed, in recognizing the existence of a settlement privilege, parties "are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of 'impeachment evidence,' by some future third party." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). The Fourth Circuit has likewise identified important policy considerations that protect confidential settlement materials from disclosure. *See In re Anonymous*, 283 F.3d at 636 (the "assurance of confidentiality is essential to the integrity" of settlement discussions because it "encourages candor between the parties" and "serves to protect" those discussions "from being used as a discovery tool for creative attorneys"); *see also Fiberglass*, 856 F.2d at 654 ("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions.").

The possibility that representations made in settlement negotiations would be later weaponized in litigation would have a consequential chilling effect on settlement negotiations. ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████ If the precedent is set in this action that Plaintiffs can obtain discovery of these materials, then parties would be disincentivized from offering similar materials in any

future settlement negotiations. That would certainly chill most (if not all) effective settlement negotiations.

Due to these policy considerations recognized by the Fourth Circuit and others, even if no heightened standard for discovery applied to Google's EC settlement submissions, discovery would still be inappropriate under Rule 26(b). Because Plaintiffs have already obtained multiple forms of discovery on this issue, it would not be "proportional to the needs of this case" to force Google to turn over materials from its confidential settlement negotiations with a foreign regulator. *See Celgene*, 2021 WL 9563337, at *4 (denying motion to compel settlement agreements even "if the higher standard" did not apply because "it is not proportional to the needs of the case to require Plaintiff to produce confidential settlement agreements").

Therefore, the Court should deny Plaintiffs' request for discovery of Google's pre-settlement submissions to the EC, as well as any other discovery into settlement negotiations. *CHS*, 2021 WL 149861, at *3 (denying request for discovery into "settlement negotiations and discussions," noting that granting the request "would open the door to asking deposition questions about . . . specific settlement discussions and negotiations"). Plaintiffs can and should litigate whether their proposed remedies are workable on the merits based on the numerous depositions; document productions (including Google's own internal analyses of workability and source code); interrogatory responses; and their own experts' analyses, including those of their *two* technical feasibility experts. At bottom, Plaintiffs have failed to articulate any heightened need or relevance for Google's sensitive, confidential settlement materials

Dated: July 9, 2025

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Justina K. Sessions (*pro hac vice*)
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*Counsel for Defendant Google LLC*

Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
CRAIG C. REILLY, ESQ
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Erica Spevack (*pro hac vice*)
Bryon P. Becker (VSB #93384)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004-2637
Telephone: (202) 240-2900
kdunn@dirllp.com