UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES, *et al.*,

    *Plaintiffs*,

vs.

GOOGLE LLC,

    *Defendant*.

No. 1:23-cv-00108-LMB-JFA

**MEMORANDUM IN SUPPORT OF GOOGLE LLC'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE PROTECTED BY FEDERAL RULE OF EVIDENCE 408**

I.  **INTRODUCTION**

Federal Rule of Evidence 408 makes inadmissible offers, conduct, and statements made in connection with settlement negotiations. As the Fourth Circuit has recognized, evidence of settlement negotiations and offers are inadmissible in light of the "public policy favoring the compromise and settlement of disputes," *Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 222 (4th Cir. 2020), which is embedded in Federal Rule of Evidence 408, *Fiberglass Insulators v. Dupuy*, 856 F.2d 652, 655 (4th Cir. 1988) (recognizing Rule 408's "strong public policy").[1] By "preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement." *Fiberglass Insulators*, 856 F.2d at 654. To promote the public policy of favoring settlements, the Fourth Circuit, in other circumstances, has taken a "broader view" of Rule 408. *Macsherry,* 973 F.3d at 222. Other courts have likewise applied this broader view of Rule 408 to exclude a party's internal work product, memoranda, or analyses prepared to assist with ongoing or potential settlement negotiations. *E.g.*, *Xcoal Energy & Res., LP v. Smith*, 635 F. Supp. 2d 453, 455 (W.D. Va. 2009) (excluding internal settlement documents under Rule 408). Therefore, Google seeks to exclude all evidence (including testimony) and argument pertaining to settlement offers and negotiations, including its internal analyses prepared to assist with potential settlement.

Since 2019, Google's ad tech business has been the subject of investigations, legal proceedings, and litigation commenced by multiple government regulators, including the Antitrust Division of the United States Department of Justice and the European Commission. Over the course of these matters, Google evaluated potential settlements and entered into

---

[1] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

1

settlement negotiations with certain regulators in an effort to resolve those proceedings. To assist with those efforts, Google employees–at the direction of counsel–prepared various analyses as part of ongoing settlement negotiations as well as to prepare potential settlement offers. Judge Anderson has now ruled on two separate occasions that those internal analyses are protected by the attorney work product doctrine. Dkts. 274, 1450. Judge Anderson also concluded that Plaintiffs had a substantial need for a subset of this protected work product and ordered Google to produce its internal analyses pertaining to "the nature and scope of work that would be required to modify [AdX and DFP] to facilitate divestiture as requested by plaintiffs." Dkt. 1450.

Plaintiffs have now added twenty-two of Google's internal analyses to their exhibit list for the upcoming remedies trial.[2] The use of such evidence will certainly chill or hamper any future settlement negotiations, and preparation for those negotiations, by Google and other companies, thereby running afoul of the "public policy favoring the compromise and settlement of disputes." *Macsherry*, 973 F.3d at 222. Moreover, presentation of this evidence will certainly confuse the issues for the upcoming remedies trial as the parties fight over the significance and meaning of these internal settlement analyses. Therefore, Google requests that the Court exclude all evidence (including testimony) and argument regarding Google's settlement offers and negotiations, including Google's internal analyses prepared to assist with ongoing and potential settlement negotiations.[3]

---

[2] Plaintiffs have marked these internal analyses as exhibits PRX039 through PRX060.

[3] Google objects to the admissibility of all twenty-two exhibits, including on the basis that they are inadmissible under Federal Rule of Evidence 408. *See* Dkt. 1574. However, for purposes of this motion *in limine*, and in an effort to streamline resolution of this issue pre-trial, Google seeks exclusion of a subset of exhibits: PRX044, PRX045, PRX048, PRX049, PRX050, PRX051, PRX052, PRX055, PRX056, PRX059, and PRX060. By making this motion, Google does not waive its Rule 408 objections to the other internal analyses, and reserves the right to object to the

## II.     BACKGROUND

Google's ad tech business has been the subject of regulatory investigations since 2019.[4] Several of those investigations have resulted in subsequent enforcement actions or litigation, including this proceeding.[5] At various points in time following the commencement of both the investigations and litigations, Google considered potential options to resolve and settle those matters. Accordingly, and at the direction of counsel, Google initiated several internal projects and analyses to develop, assess, and prepare for potential settlement. *See* Declaration of Theodore Lazarus ¶¶ 5-9 ("Lazarus Decl."), Dkt. 284-30; Declaration of Mara Boundy ¶¶ 6, 8-9, 11 ("Boundy Decl."), Dkt. 1445-1. These analyses fall into two general categories: (i) analyses prepared to assist with potential resolution of pre-suit investigations (the "Remedy Projects") and (ii) analyses prepared to assist with resolution of ongoing litigation and legal proceedings. *Id.* Those efforts informed and led to settlement negotiations with multiple regulators; some of which led to executed settlements,[6] while others did not.

---

remaining analyses on Rule 408 grounds at trial should it become necessary, and upon due consideration of the Court's ruling and guidance on this issue.

[4] These include investigations by the French Competition Authority (initiated July 2019); the U.K. Competition and Markets Authority (initiated July 2019); the State of Texas, leading a coalition of state attorneys general (initiated September 2019); the Antitrust Division of the United States Department of Justice (initiated October 2019); and the European Commission (initiated November 2019). *See* Lazarus Decl. ¶ 5, Dkt. 284-30.

[5] Other instances of litigation or formal legal proceedings include the European Commission's issuance to Google of its Statement of Objections, U.K. Competition and Markets Authority issuance to Google of its Statement of Objections, and the lawsuit brought by the State of Texas on behalf of a coalition of state attorneys general.

[6] *See, e.g.*, *The Autorité de la Concurrence Hands Out a €220 Millions Fine to Google for Favouring Its Own Services in the Online Advertising Sector*, Autorité de la Concurrence (June 7, 2021), https://tinyurl.com/5fvzfvnd.

3

Beginning approximately in 2019, Google employees, at the direction of counsel, prepared analyses to inform potential remedies to resolve ongoing investigations and avoid litigation. In 2021 and continuing into 2022, Google undertook several different Remedy Projects to assess "the potential for resolution" of certain regulatory investigations. *See* Boundy Decl. ¶ 6, Dkt. 1445-1 ("[I]n response to certain of the ongoing investigations by the Competition Authorities, Google employees, at the direction of counsel, prepared analyses to assist Google's in-house and outside counsel in assessing the potential for resolution of those investigations."). Those Remedy Projects formed the basis for pre-suit settlement negotiations with various regulators. *E.g.* Boundy Decl. ¶ 9 (the analyses "were prepared for the purpose of analyzing the potential for a possible resolution of the Competition Authorities' investigations and litigation"). In 2023 and 2024, Google engaged in further settlement negotiations with regulators to resolve ongoing litigation and legal proceedings. As part of those negotiations, Google employees, at the direction of counsel, prepared analyses to "assist Google's in-house counsel and outside counsel in assessing the potential for resolution." *See* Boundy Decl. ¶ 8; *see also* Boundy Decl. ¶ 9.

Plaintiffs have twice sought discovery of Google's internal analyses. First, in May 2023, Plaintiffs filed a motion challenging Google's privilege assertion over a subset of these analyses. Dkt. 215 at 3-4. Judge Anderson denied Plaintiffs' motion, finding that the materials were protected by the attorney work product doctrine. Dkts. 271, 274. In reaching his decision, Judge Anderson noted that the internal documents were connected "to particular issues having to do with ***trying to resolve***, address some concerns with ***ongoing investigations*** or remedies," and that "lawyers were involved, thoughts were being made about how can we [Google] ***resolve certain things***." June 15, 2023 Hr'g Tr. at 46:3-49:11, Dkt. 272.

4

Two years later, in May of this year, Plaintiffs again sought discovery of Google's internal analyses. Dkt. 1439. This time, Plaintiffs sought analyses related to Google's Remedy Projects as well as those prepared to resolve active litigation. In ruling on Plaintiffs' motion, Judge Anderson affirmed his earlier ruling that Google's internal analyses "fall within the broad umbrella of work product." May 30, 2025 Hr'g Tr. 38:15-17, Dkt. 1468. Judge Anderson found, however, that Plaintiffs had established a "substantial need" for a subset of the protected materials "describing the nature and scope of work that would be required to modify Google's ad exchange (AdX) and Google's publisher ad server (DFP) to facilitate divestiture as requested by plaintiffs, including the burden, cost, and potential difficulties of implementing those changes." Dkt. 1450.

Plaintiffs also sought discovery of materials Google provided to the European Commission during settlement negotiations relating to the feasibility of remedies. Dkt. 1474. Plaintiffs argued that they were entitled to discovery of those settlement materials for so-called "impeachment purposes." 6/20/25 Hr'g Tr. 22:23-23:10. Judge Anderson denied Plaintiffs' request, following the weight of authority from the Fourth Circuit that documents relating to "pre-settlement negotiations" are entitled to "enhanced protections." Dkt. 1548 at 2; *see also id.* at 2-3 (summarizing case law from the Fourth Circuit that pre-settlement negotiations are not discoverable for "the purposes of determining whether [a party] took any factual positions in settlement discussions that were inconsistent with those taken in the pending case").

Google produced numerous internal analyses in response to Judge Anderson's order. Plaintiffs have added twenty-two (22) of those documents to their exhibit list, indicating their intent to at least admit evidence of Google's internal settlement analyses and materials, and potentially to elicit testimony regarding Google's settlement offers and negotiations. Dkt. 1565.

5

### III. LEGAL STANDARD

In jury trials and bench trials alike, courts grant motions *in limine* to exclude irrelevant evidence and eliminate unnecessary argument or delay to streamline a trial. *E.g.*, *Moke Am. LLC v. Am. Custom Golf Cars, Inc.*, 2023 WL 3686963, at *1, 5 (E.D. Va. Jan. 11, 2023); *Floyd v. City of Spartanburg S.C.*, 2023 WL 7385716, at *11 (D.S.C. Aug. 29, 2023).

### IV. ARGUMENT

#### A. The Court should exclude all argument and evidence regarding settlement offers and negotiations.

Google has, at several points in time, engaged in settlement negotiations with regulators to resolve their investigations and lawsuits pertaining to Google's ad tech business. Plaintiffs should be prohibited from introducing any evidence or making any arguments regarding Google's settlement offers or negotiations.

Because parties would be reluctant to commence settlement talks if their negotiation positions could influence the finder of fact, Federal Rule of Evidence 408 makes inadmissible offers, conduct, and statements made in connection with settlement negotiations. *See Fiberglass Insulators*, 856 F.2d at 654 ("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions."). Applying Rule 408, courts consistently exclude offers of settlement, *United States v. Quality Built Const.*, 358 F. Supp. 2d 487, 490 (E.D.N.C. 2005) ("under Fed. R. Evid. 408, evidence of offers of settlement is inadmissible, even those settlements between a party and a non-party"), as well as any evidence of settlement negotiations, *see Fiberglass*, 856 F.2d at 654 (Rule 408 "excludes from evidence all statements made in the course of settlement negotiations").

6

Here, Plaintiffs should likewise be prevented from introducing into evidence or making any argument regarding Google's settlement offers or statements and conduct made during settlement negotiations.

### B.     The Court should exclude all argument and evidence regarding Google's internal settlement analyses.

To prepare for settlement negotiations, and during the course of those negotiations, Google employees–at the direction of counsel–prepared various analyses to assist with those negotiations. Plaintiffs should also be prohibited from introducing any evidence, including eliciting any testimony, or making any arguments regarding Google's internal analyses prepared for settlement purposes.

"The purposes of [Rule 408] are to foster open discussions and out-of-court settlements and to guard against the admission of evidence that may not fairly represent the actual value or merits of a claim." *Xcoal Energy*, 635 F. Supp. 2d at 455. The Fourth Circuit has taken a "broader view" of Rule 408 in order to promote the public policy favoring settlement. *Macsherry,* 973 F.3d at 222 (Rule 408 applies "so long as there is an actual dispute or difference of opinion regarding a party's liability for or the amount of the claim at issue").

In accordance with the public policy favoring settlement and underlying Rule 408, multiple courts have excluded a party's internal analyses relating to ongoing settlement negotiations as well as preparations for those negotiations. *E.g.*, *E.E.O.C. v. UMB Bank Fin. Corp.*, 558 F.3d 784, 791 (8th Cir. 2009) ("The spirit of the Rule [408], as recognized by several circuits and as set forth in the commentary to the Rule, supports the exclusion of certain work product, internal memos, and other materials created specifically for the purpose of conciliation, even if not communicated to the other party."); *see also* C. Mueller & L. Kirkpatrick, 2 Federal Evidence § 4:57 (4th ed. 2025) ("Not only does Rule 408 apply to statements actually made and

7

communicated to other parties in attempts to settle disputes, but it applies as well to internal statements and discussions, and to background memoranda prepared in attempts to settle disputes."). Applying Rule 408 beyond actual communications with an opposing side "is important because the question whether to settle can itself be complicated, and is approached with seriousness and care, and particularly in the case of organizational parties, settlement talks could not normally go forward without undertaking internal reviews and discussions, and Rule 408 could not achieve its intended purpose in this setting if coverage were limited to statements actually made or forwarded to the other side." 2 Federal Evidence § 4:57.

*First*, internal documents prepared as part of ongoing settlement negotiations are properly excluded under Rule 408. For example, in *Xcoal*, a decision from the Western District of Virginia, the court excluded purely internal documents related to settlement negotiations. 635 F. Supp. 2d at 454. There, in advance of trial, plaintiff sought to exclude emails "between an officer of the plaintiff company and the company's outside attorneys" concerning settlement negotiations. *Id.* The court rejected the defendant's argument that Rule 408 did not apply because "the documents were internal to the plaintiff and were not communications to the opposing side." *Id.* Instead, the court excluded the emails, relying on the Eighth Circuit's decision in *UMB Bank*. *Id.* at 455 ("Considering the policy objectives of Rule 408, the broad language of the Rule, and the majority case law, the Eighth Circuit's reasoning is convincing.").

Rule 408 also extends to documents created during "pre-suit settlement negotiations" that were prepared to "hopefully to promote settlement." *Blu-J, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 642 (11th Cir. 1990) (affirming exclusion of an accountant's report); *see also UMB*, 558 F.3d at 791 (applying Rule 408 in a "broader manner to preclude the admission of documents supporting the settlement process" and holding trial court erred in admitting a "handwritten

8

memo" prepared by a job counselor during discussions with the plaintiff about his settlement position).

*Second*, internal documents created in preparation for settlement negotiations are also properly excluded under Rule 408. *E.g.*, *Applebaum v. Target Corp.,* 2015 WL 13036873, at *1 (E.D. Mich. Feb. 11, 2015) ("Rule 408 covers statements made as part of preparations for compromise negotiations, not only those made during the actual negotiations themselves."). For example, in *Ramada* the Fifth Circuit affirmed the district court's exclusion of a report prepared by an architect hired by the defendant for the purposes of future settlement negotiations. *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106-07 (5th Cir. 1981); *see also id.* at 1107 n.8 (report commissioned in 1974 to inform a future settlement offer in January 1975). The Fifth Circuit agreed with the trial court that the report was "inadmissible under Federal Rule of Evidence 408 because the report was a tool used in an unsuccessful settlement attempt." *Id.* at 1107. In *Affiliated Manufacturers*, the Third Circuit held that Rule 408 applied to, and affirmed the exclusion of, an internal memoranda created by one of the defendant's engineers to prepare for an upcoming settlement meeting. *Affiliated Mfrs., Inc. v. Alum. Co. of Am.*, 56 F.3d 521, 528-30 (3d Cir. 1995).

Here, Google produced two general categories of internal settlement analyses. The first set involves internal analyses that were prepared both during and for active settlement negotiations. As in *Xcoal*, "the policy objectives of Rule 408, the broad language of the Rule, and the majority case law," 635 F. Supp. 2d at 455, all support the exclusion of these analyses even though the specific document itself might not have been shared with an opposing party. That rationale applies even more so here when parts of these documents reflect information directly communicated to regulators as part of those settlement negotiations.

9

The second set involves analyses which were prepared for future settlement negotiations. Google commenced those analyses to assess potential settlement offers. In other words, the analyses were "tools" to be used in a future settlement attempt, *Ramada*, 644 F.2d at 1106, and prepared "hopefully to promote settlement," *Blu-J*, 916 F.2d at 642; *see also Affiliated Mfrs.*, 56 F.3d at 530 (excluding internal memoranda prepared for use in opening settlement discussions). As multiple courts recognize, the policy and plain language underlying Rule 408 supports the exclusion of evidence reflecting preparations for potential settlement offers and negotiations.

Permitting the introduction of these internal analyses into evidence, including eliciting testimony about the documents, would contradict Rule 408's purpose as well as the public policy of encouraging settlement of disputes. Introducing these materials into evidence, or permitting any testimony about the analyses, would discourage open settlement discussions or preparation for settlement by Google in the future, and potentially other litigants who know their internal settlement materials may later be used in evidence.[7] Therefore, in accordance with Rule 408, Plaintiffs should be precluded from using Google's internal settlement analyses at trial.

## V.   CONCLUSION

For the foregoing reasons, the Court should exclude all evidence (including testimony) and argument pertaining to settlement offers and negotiations, including the specifically identified documents and internal analyses prepared to assist with ongoing and potential settlement negotiations.

---

[7] Moreover, introducing evidence of Google's internal settlement analyses will result in a mini-trial on the meaning, context, and specifics of Google's settlement offers and negotiations with regulators. For example, Google produced analyses pertaining to several potential remedies that are not among the remedial frameworks either party has put forth. Litigating these distinctions at trial will necessarily distract from the core issues the Court must decide in fashioning an appropriate remedy and ultimately prolong the trial. *See* Federal Rule of Evidence 403.

Dated: August 29, 2025

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Justina K. Sessions (*pro hac vice*)
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*Counsel for Defendant Google LLC*

Respectfully submitted,

*/s/ Bryon P. Becker*
Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Erica Spevack (*pro hac vice*)
Bryon P. Becker (VSB #93384)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004-2637
Telephone: (202) 240-2900
kdunn@dirllp.com

Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
 CRAIG C. REILLY, ESQ
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com