UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>    Plaintiffs,<br> v.<br><br>GOOGLE LLC,<br><br>    Defendant. | No. 1:23-cv-00108-LMB-JFA |

**NON-PARTY PUBMATIC, INC.'S OBJECTION TO THE PUBLIC USE AT
REMEDIES-PHASE TRIAL OF CONFIDENTIAL DATA AND DOCUMENTS**

Pursuant to Local Civil Rule 5, Federal Rule of Civil Procedure 26, and the Court's Order Regarding Pre-Trial Schedule and Procedures (Dkt. No. 1560), non-party PubMatic, Inc. respectfully objects to the public use at trial of: (1) any chart, diagram, demonstrative, or composite exhibit in a form that discloses PubMatic-specific take rates, revenue shares, market share, or financial metrics; and (2) any document or chart with respect to which the Court already has approved redactions, other than with all of those redactions.[1]

**PRELIMINARY STATEMENT**

PubMatic produced tens of thousands of pages of confidential and highly confidential documents and many petabytes of confidential and highly confidential data in connection with this matter. At every stage, PubMatic has sought to provide information reasonably needed by the parties while also protecting the confidentiality of its pricing and other sensitive business information.

---

[1] For simplicity, this submission refers to Plaintiffs together as the "Government" or as "DOJ."

The Court repeatedly has recognized and accommodated the sensitivity of PubMatic's data and documents. In connection with dispositive and related motion practice, the Court repeatedly ordered that pricing and other market data belonging to non-parties like PubMatic (including references from which such data could be inferred) should remain sealed. Likewise, ahead of the liability-phase trial, PubMatic raised objections only to the public use of its most sensitive documents or data in unredacted form—and the Court *sustained* those objections.

Now, the parties have indicated their intention to use at the remedies-phase trial various charts, figures, or tables that include PubMatic data—much like they did in advance of the liability-phase trial. PubMatic has reviewed with care the lists of documents and figures that the parties seek to introduce, and—mindful of the Court's obligation to promote public access to trial proceedings—asks the Court to provide substantially the same relief it did in advance of the liability-phase trial, namely to seal from public view only: (1) any portions of the graphs, charts, and figures identified by the parties as trial exhibits that disclose highly confidential PubMatic-specific data or information, and (2) any document, chart, or figure (or portion thereof) with respect to which the Court already has ordered redactions in any format that omits those court-approved redactions. PubMatic submits that these requests, like its substantially identical requests in advance of the liability-phase trial, are narrowly tailored and conform with applicable law.[2]

## FACTUAL BACKGROUND

As the Court may recall, PubMatic participates in the digital advertising market in a variety of ways, principally by operating a supply-side platform. As such, PubMatic both

---

[2] PubMatic is not asking the Court to keep sealed any of the parties' designations, counter-designations, or reply designations of the August 20, 2025 deposition of Rajeev Goel, PubMatic's CEO.

2

competes with Google and relies on Google as a counterparty and business partner. PubMatic has received and complied with multiple non-party subpoenas and a civil investigative demand in this and related proceedings.

PubMatic has always taken care to ensure the maximum possible confidentiality protection when producing documents or information, because much of the material it has produced is of the greatest competitive sensitivity. Most sensitive of all are "take rates," which measure the share of a publisher's revenue that a supply-side platform "takes" in exchange for its services. This price information is among the most highly confidential and carefully guarded pieces of information in the digital advertising market. PubMatic does not disclose its take rates, which are specifically negotiated and agreed with individual publisher partners. Disclosure of PubMatic's take rates to its competitors will cause acute competitive harm by providing those competitors profoundly asymmetrical information on PubMatic's pricing.

> **A.    The Liability-Phase Trial—The Court Sustains PubMatic's Limited Objections to Public Disclosure**
>
> **1.    The Board Presentation**

On July 5, 2024, the parties gave notice of their proposed liability-phase trial exhibits, including seven documents that PubMatic designated as highly confidential when it produced them. (*See* Dkt. Nos. 892-1, 894.) After reviewing those documents with care, PubMatic sought sealing only of discrete portions of *one* of those documents: certain slides in a January 29, 2019 PowerPoint deck with Bates-numbers PUBMATIC_DOJ-00000132 to PUBMATIC_DOJ-00000203 (DTX 665 ("Board Presentation")). (*See* Dkt. No. 957 (PubMatic's Liability-Phase Objection to Public Use at Trial) ("Liability Mem.") at 3–4 (describing Board Presentation).)

The Court sustained PubMatic's objection to unsealing the Board Presentation and granted PubMatic's limited redaction requests. (Dkt. No. 1147 at 2.)

### 2. PubMatic Data in Exhibits, Demonstratives, or Composite Exhibits Consisting of Proposed Graphs, Charts, and Tables

In response to the Government's subpoena in this matter during liability-phase discovery, PubMatic produced a detailed spreadsheet reflecting and summarizing its take rates and transaction volume (among other things) over the period from January 2017 through March 2023. PubMatic also produced—after extensive consultation and at considerable financial cost—a very large sample of transaction-level data about auctions conducted in June 2023. Similar to the Board Presentation, PubMatic designated both of these productions as "Highly Confidential." (*See* Dkt. No. 203 ¶ 1(h) (Protective Order).)

In advance of the liability-phase trial, DOJ and Google provided notice of their intent to use as trial exhibits charts, graphs, and tables that reflect or summarize data drawn from—among other sources—PubMatic's highly confidential data. DOJ indicated its intention to use 34 such charts, graphs, and tables, and Google identified 40 such charts, graphs, and tables. The exhibits that the parties identified to PubMatic are listed in the footnote below.[3]

PubMatic identified several categories of highly confidential information that appeared to be included in the proposed exhibits:

- PubMatic's take rates, which are highly sensitive for the reasons already described;

- Other features of PubMatic's competitive performance, such as business strategy and planning information, spending information, win rates, the number of ad impressions transacted in particular regions and time-periods, specific revenues generated by

---

[3] These liability-phase exhibits identified by DOJ were: PTX 1199, 1200, 1202, 1203, 1205, 1213, 1233, 1237, 1238, 1239, 1240, 1241, 1260, 1261, 1262, 1263, 1265, 1266, 1280, 1292, 1293, 1294, 1295, 1306, 1307, 1310, 1311, 1314, 1317, 1318, 1364, 1365, 1396, and 1397.

These liability-phase exhibits identified by Google were: DTX 1651, 1839, 1862, 1891, 1892, 1893, 1943, 1948, 1949, 1950, 1955, 1956, 1959, 1989, 1991, 2043, 2044, 2045, 2046, 2047, 2048, 2051, 2053, 2054, 2056, 2057, 2058, 2064, 2065, 2066, 2067, 2068, 2069, 2070, 2071, 2072, 2073, 2074, 2075, and 2076.

- those sales, and market shares vis-à-vis competitors in those regions and time-periods; and

- Aspects of PubMatic's financial performance that are not otherwise public, including information from the period before it became a public company.

Given the sensitivity of the data PubMatic had produced and the sensitivity of the information the parties' proposed exhibits appeared to include, PubMatic sought sealing of those portions of the exhibits identifying PubMatic as the origin of specific confidential and sensitive data. (Liability Mem. at 8.)

The Court sustained PubMatic's objection to unsealing the identified exhibits and granted PubMatic's limited redaction requests. (Dkt. No. 1147 at 2.)

### B. The Remedies-Phase Trial—The Parties' Exhibit Lists

On August 11, 2025, the parties filed their proposed exhibit lists for the remedies-phase trial. (Dkt. Nos. 1564, 1565.) The parties have advised PubMatic that they again have listed certain documents and/or figures on their exhibit list that include or incorporate PubMatic's data or information.

#### 1. The Government's Proposed Exhibits

The Government has identified five exhibits that use or rely on PubMatic's highly confidential data production: PRX135, PRX139, PRX145, PRX154, and PRX167. The Government also has relisted five exhibits that appeared on its liability-phase trial exhibit list that incorporate PubMatic's highly confidential data: PTX1237, PTX1238, PTX1265, PTX1280, and PTX1292.

With respect to PRX135, PRX139, PRX145, and PRX154, the Government has orally described these charts to PubMatic's counsel, but has not provided PubMatic with copies, even in redacted form. The Government has provided only the titles of and certain basic information about the exhibits (*e.g.*, x- and y-axis titles). Based on this information, PubMatic believes that

5

the proposed exhibits likely include or reflect significant, sensitive information about PubMatic's (and others') take rates, market share, and business practices.

PRX167 was previously marked as a proposed exhibit in advance of the liability-phase trial as PTX1397. Accordingly, it and the five other liability-phase exhibits on the Government's list already have been the subject of the Court's ruling sustaining PubMatic's objection to unsealing these (and other) figures in advance of the liability-phase trial. (*See* Liability Mem. at 5 n.1, 11; Dkt. No. 1147 at 3 (order).) The Government has confirmed that it contemplates using PRX167 publicly as an exhibit during the remedies trial, if at all, only in the redacted form approved by the Court (as reflected at Dkt. No. 1195-3 at 163); and it has confirmed that it contemplates using PTX1237, PTX1238, PTX1265, PTX1280, and PTX1292 publicly only with the redactions the Court previously ordered and with which those exhibits were displayed publicly during the liability-phase trial.

### 2. Google's Proposed Exhibits

In its exhibit list, Google identified PubMatic's large, highly sensitive data production as an exhibit (RDTX1038), listed 11 charts or figures that rely on or incorporate that highly confidential data,[4] and relisted a number of exhibits from the parties' liability-phase trial exhibit lists that the Court previously ordered must be redacted in part.[5]

---

[4] These exhibits are: RDTX900, RDTX904, RDTX906, RDTX907, RDTX908, RDTX911, RDTX912, RDTX926, RDTX957, RDTX969, and RDTX970.

[5] These exhibits are: DTX665 (the Board Presentation), PTX1199, PTX1199B, PTX1237, PTX1238, PTX1239, PTX1260, PTX1261, PTX1262, PTX1265, PTX1266, PTX1280, PTX1292, PTX1294, PTX1314, PTX1317, DTX1839, DTX1891, DTX1892, DTX1893, DTX1949, DTX2043, DTX2066, DTX2069, and DTX2071.  Google also has relisted PTX1621 and PTX1677, both of which were produced by PubMatic and appeared on the parties' liability-phase exhibit lists. However, PubMatic already has elected not to raise any objection to the introduction and public display of these documents.

Given the format in which the competitively sensitive data in RDTX1038 had to be produced, PubMatic is not aware of any manner in which Google could comprehensibly exhibit the data (or any portion thereof). It must be synthesized and analyzed further to be of any potential aid to the factfinder—as Google's listing of numerous other charts and figures relying on the data reflects. Nonetheless, to the extent Google might attempt to exhibit this data (or any excerpt thereof), PubMatic objects to its doing so unless under seal.

With respect to the 11 newly listed, remedies-phase charts and figures, Google has provided copies for PubMatic's review in heavily redacted form only, obscuring many of the most important labels for the data presented. Like the charts the Government listed on its exhibit list, it appears clear that Google's charts incorporate PubMatic's most highly confidential, most commercially sensitive data regarding take rates, market share, and business practices.

Finally, Google has confirmed that it intends to use the exhibits relisted from the parties' liability-phase exhibit list only, if at all, with the redactions that the Court already has granted. (*See* Dkt. No. 1147 at 2 (sustaining PubMatic's objection to public disclosure and granting its redaction requests).)

## **ARGUMENT**

### **I.  SEALING IS APPROPRIATE BECAUSE COMPELLING INTERESTS OUTWEIGH THE PUBLIC'S INTEREST IN ACCESS AT TRIAL**

PubMatic's proposed redactions are appropriate because they are narrowly tailored to serve the compelling interest in the privacy of PubMatic's most competitively sensitive business information, which outweighs any public interest in access to this subset of the PubMatic-specific information. And the proposed redactions track precisely the approach to sealing that the Court adopted during the liability-phase trial.

A court called upon to adjudicate a sealing request must "first [] determine the source of the right of access with respect to each document." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) (quotation marks omitted). "[T]he stronger First Amendment guarantee of public access, with its attendant requirement to weigh competing interests, applies where efforts are made to seal documents offered into evidence before a court in the course of a public jury trial." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 579 (E.D. Va. 2009). Under the First Amendment, the public's right to access is not absolute, and may be superseded by a showing that a "compelling government interest" outweighs the right to access and that the denial of access is narrowly tailored to serve that interest. *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014); *see United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024) (same).

For example, the public's interest in access may give way in the face of "a person or corporate entity's property interest in" valuable confidential information. *Level 3 Commc'ns*, 611 F. Supp. 2d at 581 (protecting trade secrets); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[T]he right to inspect and copy judicial records is not absolute . . . courts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing"); *Doe*, 749 F.3d at 269 (recognizing, in context of evaluating scope of First Amendment right of access, that "[a] corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information" that justifies sealing); *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 766 (E.D. Va. 2018) ("protecting proprietary commercial information can be a compelling interest under the First Amendment test").

### A. PubMatic's Voluminous Data Production and the Parties' Figures Relying Thereon Should Remain Sealed

Here, PubMatic's enormous data production and any PubMatic-specific data reflected in the parties' proposed exhibits should be sealed from public view because PubMatic has a strong interest in preserving the confidentiality of its take rates and other highly sensitive commercial information. As the Court recognized when it sustained PubMatic's and other non-parties' objections to unsealing these data and figures and providing them in unredacted form before the liability-phase trial, this interest outweighs any *de minimis* interest the public may have in the PubMatic-specific pricing and related financial data to the public use of which PubMatic hereby objects.

*First*, PubMatic's massive data production, listed by Google as RDTX1038, includes PubMatic's most sensitive information about pricing, impressions, market share, and other matters. Accordingly, permitting the public and PubMatic's competitors access to this data would subject PubMatic to severe competitive harm. Moreover, the data production is incomprehensible in the form in which it was produced—and PubMatic does not understand Google (or the Government) to contemplate using it in that form. Rather, if the data is to aid the factfinder, it must be analyzed and/or summarized, like the parties do in the charts and figures that they propose as trial exhibits. Accordingly, the Court should maintain PubMatic's "Highly Confidential" data production (RDTX1038) fully under seal.

*Second*, based on the limited information provided by the parties, it appears exceedingly likely that the parties' proposed remedies-phase exhibits identified to PubMatic reflect highly sensitive, granular, PubMatic-specific information drawn from PubMatic's highly confidential data productions—just as their proposed liability-phase trial exhibits did. Again, PubMatic cannot see these exhibits in unredacted form (and cannot see some at all), but based on the

9

parties' descriptions, many or all of the charts or graphs likely include PubMatic-specific data regarding take rates and even possibly PubMatic's take rates broken down by time-period and geographic region.[6]

PubMatic's sealing request with respect to these figures, however, is narrow: the data and analysis reflected in these exhibits would remain unobstructed, except for those limited portions identifying PubMatic as the origin of specific confidential and sensitive data. Because PubMatic does not have unredacted copies of these documents to review itself, it must rely on the parties and the Court to police the disclosure of its most sensitive corporate secrets. And likewise, because PubMatic does not have unredacted copies of these figures, it cannot provide the Court with a proposed acceptable redaction of them. (*See* Dkt. No. 1560 at 3.)

As noted, disclosure to PubMatic's competitors would cause acute competitive harm by putting PubMatic in a position where its competitors have unjustified and asymmetrical information on PubMatic's pricing, costs, and auction results. It would be deeply unfair—and ironic—for litigation aimed at remedying monopolistic conduct in the digital advertising market to result in disclosure of competitively sensitive information to the detriment of one of the participants in the market(s) in which the Court has found Google maintained a monopoly. Faced with this argument in the liability-phase of the case, with respect to dispositive and other pretrial motions, Judge Anderson correctly (and repeatedly) held that take rates and other similar information should remain sealed. (*E.g.*, Dkt. No. 902 at 3 ("specific information relating to individual take rates or revenue shares by non-parties should remain under seal and [sealing] is

---

[6] And, for example, to the extent that some of the charts add PubMatic's fee or take rate to another entity's, *e.g.*, DV360, public disclosure of this combined figure is equally problematic. Because those entities' pricing information may be, and in the case of DV360 is, publicly known, public disclosure of this combined figure would permit interested industry actors to determine PubMatic's presently confidential, highly sensitive pricing information too.

appropriate under the compelling governmental interest standard" (emphases omitted)).) So too did the Court rule that liability-phase trial exhibits—including those that appear to be materially similar to those proposed for the remedies-phase trial—should be publicly available only in a form that redacts and/or anonymizes the third parties (like PubMatic) that provided the competitively sensitive information reflected therein. (Dkt. No. 1147.)

Those rulings are in keeping with those of other courts in this District, which similarly have left sealed this sort of competitive information, notwithstanding any First Amendment right of access. *See, e.g.*, *Lifenet Health v. Lifecell Corp.*, Civil Action No. 2:13cv486, 2015 WL 12517430, at *4 (E.D. Va. Feb. 12, 2015) (sealing trial transcript and holding First Amendment presumption of access "overc[o]me," where, *inter alia*, "document contain[ed] confidential and proprietary commercial information . . . belonging to the parties *as well as nonparties* . . ." (emphasis added) (quotation marks omitted)); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12cv525, 2014 WL 12659953, at *1 (E.D. Va. Dec. 22, 2014) (ruling "sensitive business information" appended to summary judgment motion could remain under seal where, *inter alia*, defendant's "competitive position might be impaired if this information [were] disclosed to the public at large"); *E. W., LLC v. Rahman*, No. 1:11cv1380 JCC/TCB, 2012 WL 3841401, at *3 (E.D. Va. Sept. 4, 2012) (sealing expert reports containing "sensitive financial data, including gross profit data, the disclosure of which would be highly likely to cause significant harm to the business competitive position of both parties").

> **B.    The Parties Should Be Permitted to Use Any Relisted Exhibits from Liability-Phase Exhibit Lists and Trial Only with the Redactions the Court Previously Has Endorsed**

As noted above, the Government listed six exhibits on its exhibit list (PRX167, PTX1237, PTX1238, PTX1265, PTX1280, and PTX1292) with respect to which the Court

already has approved narrow redactions requested by PubMatic and other non-parties; and Google has relisted 25 exhibits on its exhibit list from the liability-phase exhibit lists and/or trial that likewise have been the subject of PubMatic's and other non-parties' objections to unsealing and the Court's endorsement of targeted redactions (*see supra* n.4), including the Board Presentation referenced above.

PubMatic appreciates that the parties have confirmed they intend to display each of these proposed exhibits publicly only, if at all, with the redactions the Court has approved. Nevertheless, in an abundance of caution, PubMatic explicitly restates here its objection to exhibiting any of them in unredacted (or less redacted) form. (*See generally* Liability Mem; Dkt. No. 1147 (granting requested relief).) PubMatic does not want to burden the Court unnecessarily with further submissions on these already-litigated issues, but to the extent it would assist the Court, PubMatic respectfully refers the Court to Docket Number 957 which sets out PubMatic's prior successful arguments as to those proposed exhibits.

## II.    THE PROCEDURAL REQUIREMENTS FOR SEALING HAVE BEEN SATISFIED

PubMatic notes that the procedural requirements for sealing are satisfied here.

*First*, the Court's Order Regarding Pre-Trial Schedule and Procedures (*see* Dkt. No. 1560 at 3) has provided public notice that "[a]ny party or third party who objects to the public use of confidential documents or testimony *must file a request to seal* pursuant to Local Civil Rule 5 that includes a proposed acceptable redaction of the information from the relevant document or transcript." With this filing, PubMatic's objection is now public; and, as explained above, because PubMatic does not have unredacted copies of the parties' exhibits that it seeks to keep sealed in part, it cannot include proposed redacted versions thereof. Furthermore, the Order Regarding Pre-Trial Schedule and Procedures permits "objections or responses to any party's or

third party's proposed redactions or requests to seal confidential information" to be filed by September 12, 2025. Accordingly, any person wishing to challenge PubMatic's requests has or will have "a reasonable opportunity" to do so. *See* E.D. Va. Local Civ. R. 5(C).

*Second*, the sealing requests above are narrowly tailored and would not shield more than is necessary to safeguard PubMatic's entirely legitimate interests. *See supra* Argument Part I; *Va. Dep't of State Police*, 386 F.3d at 576; E.D. Va. Local Civ. R. 5(C). Indeed, the sealing requests mirror the narrow sealing of confidential non-party information that the Court previously and repeatedly has endorsed, including for the liability-phase trial.

*Third*, PubMatic has filed a proposed order attached as Exhibit A. *Va. Dep't of State Police*, 386 F.3d at 576; E.D. Va. Local Civ. R. 5(C).

## CONCLUSION

For the foregoing reasons, PubMatic requests that the Court (1) seal PubMatic's voluminous data production (RDTX1038), (2) seal the proposed graphical and chart remedies-phase trial exhibits from public view except in a form redacting portions that identify PubMatic as the source of specific data or figures, and (3) confirm that proposed trial exhibits with respect to which the Court already has approved redactions shall be publicly disclosed or displayed only, if at all, with those court-approved redactions.

Dated: Alexandria, Virginia
       September 5, 2025

| | |
|---|---|
| CARMICHAEL ELLIS & BROCK, PLLC | CLARICK GUERON REISBAUM LLP |
| By: */s/ William Wirt Brock, IV* <br> William Wirt Brock, IV <br> (VSB# 67985) <br> 108 N. Alfred Street, 1st Floor <br> Alexandria, Virginia 22314 <br> (703) 684-7908 <br> 703-649-6360 (fax) <br> wirt@carmichaellegal.com | By: */s/ Isaac B. Zaur* <br> Isaac B. Zaur (*pro hac vice*) <br> Nicole Gueron (*pro hac vice*) <br> Alexander D. Bernstein (*pro hac vice*) <br> 41 Madison Avenue, 23rd Floor <br> New York, New York 10010 <br> (212) 633-4310 <br> izaur@cgr-law.com <br> ngueron@cgr-law.com <br> abernstein@cgr-law.com |

*Attorneys for PubMatic, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the fifth day of September, 2025, I electronically filed the foregoing Objection to the Public Use at Remedies-Phase Trial of Confidential Data and Documents with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for the other parties who have appeared in the case.

s/ *William Wirt Brock, IV*
(VSB #67985)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st Floor
Alexandria, Virginia 22314
703-684-7908
703-649-6360 (fax)
wirt@carmichaellegal.com
*Attorney for PubMatic, Inc.*
