IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **GOOGLE LLC,** <br><br> Defendant. | Case No. 1:23-cv-108 (LMB/JFA) |

### DEFENDANT GOOGLE LLC'S PROPOSED ORDER

WHEREAS, Plaintiffs United States of America, the Commonwealth of Virginia, and the States of California, Colorado, Connecticut, New Jersey, New York, Rhode Island, and Tennessee, by and through their respective Attorneys General, filed their Complaint on January 24, 2023, and those Plaintiffs, joined by the States of Arizona, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, North Carolina, Washington, and West Virginia, filed their Amended Complaint on April 17, 2023;

AND WHEREAS, the Court conducted a trial and entered Findings of Fact and Conclusions of Law in this action on April 17, 2025, finding in favor of Plaintiffs with regards to parts of certain claims and dismissing certain claims of Plaintiffs;

NOW THEREFORE, upon the record at trial and all prior and subsequent proceedings, it is hereby ORDERED, ADJUDGED, AND DECREED:

1

**I.   JURISDICTION**

This Court has jurisdiction over the subject matter of this action and over Google LLC ("Google").

**II.   APPLICABILITY**

1. This Final Judgment applies to Google and to each of its officers, directors, agents, employees, subsidiaries, successors, and assigns.

2. Nothing in this Final Judgment applies to AdSense, AdMob, Google Ads, DV360, or any other Google advertising technology tool besides Google Ad Manager, or applies to any Inventory other than Open Web Display Inventory.

**III.   MANDATED RELIEF**

1. Google shall, no later than 12 months from the Effective Date, make Real Time Bids from AdX for Qualifying Open Web Display Inventory available to non-Google Publisher Ad Servers.  To effectuate the obligation set forth in this paragraph, it is ordered that:

    a) Google shall, no later than 12 months from the Effective Date, enable Qualified Publisher Ad Servers to submit RTB Requests to AdX for Qualifying Open Web Display Inventory and receive Real Time Bids from AdX in response.

    b) Google shall, no later than 12 months from the Effective Date, enable Qualified Prebid Instances to submit RTB Requests to AdX for Qualifying Open Web Display Inventory and receive Real Time Bids from AdX in response.

    c) When a Publisher submits an RTB Request to AdX for Qualifying Open Web Display Inventory via a Qualified Publisher Ad Server or Qualified Prebid Instance, Google

shall not charge such Publisher a greater AdX revenue share than it would have charged had such Publisher submitted the same request via DFP.

    d)  Google shall, no later than 3 months from the Effective Date, enable Publishers to export their Publisher DFP Data and to pass on their Publisher DFP Data to any non-Google Publisher Ad Server. To effectuate the obligation set forth in this paragraph, it is ordered that:

    (1)  Google shall, no later than 3 months from the Effective Date, enable Publishers using DFP to export, without charge, their Publisher Configuration Data and Publisher Historical Data from DFP in a structured data format, via an API or otherwise.

    (2)  Google shall, no later than 3 months from the Effective Date, publish sufficient documentation to reasonably enable Publisher Ad Servers to understand and import the data in provision III.1(d)(1) into their systems.

    e)  Google shall, no later than 12 months from the Effective Date, enable Publishers choosing to use AdX with a non-Google Qualified Publisher Ad Server to designate one or more Qualified Publisher Ad Servers to receive such Publisher's AdX Bid Data, provided that nothing in this paragraph shall require a Publisher to make such a designation or require Google to disclose a Publisher's AdX Bid Data absent such designation or consent.

  2.  From and after the Effective Date, Google shall not enforce any policies or contract terms that restrict the sharing of Real Time Bids for Qualifying Open Web Display Inventory from AdX with a non-Google Qualified Publisher Ad Server. To effectuate the prohibition contained in this paragraph, it is ordered that:

        a)        No later than 3 months from the Effective Date, Google shall ensure that any agreement, contract terms, or policy restricting Publishers from passing an AdX Real Time Bid for Qualifying Open Web Display Inventory through another system (including the Publisher's own system) that dynamically or programmatically allocates ad calls based on actual or estimated real-time pricing information is formally rescinded, including by removing it from Google's public-facing documentation of policies applicable to the use of Google Ad Manager.

        b)        From and after the Effective Date, Google shall not enter into, maintain, or enforce any agreement that conditions a Publisher's ability to sell Qualifying Open Web Display Inventory using AdX on the Publisher's use of DFP.  To effectuate the obligation set forth in this paragraph, it is ordered that:

        (1)        No later than 3 months from the Effective Date, Google shall provide written notice to any Publisher then-contracted to use DFP and AdX that they are not required as a condition of their use of AdX to sell Qualifying Open Web Display Inventory to use DFP, or vice versa, and Google shall not enforce any such contractual requirement.

        (2)        Beginning no later than 6 months from the Effective Date, Google shall not enter into or renew any agreement permitting a Publisher to sell Qualifying Open Web Display Inventory using AdX or to serve Qualifying Open Web Display Inventory using DFP, unless such agreement is a Separate Contract, provided that nothing in this Final Judgment shall require Google to offer DFP or AdX services to any Publisher.

        3.        Google shall not reimplement either First Look or Last Look functionality within DFP or AdX with respect to Qualifying Open Web Display Inventory.  To further effectuate this commitment, it is ordered that:

      a)      Google shall, no later than 6 months from the Effective Date, make Header Bidding Trafficking available to all DFP Publisher customers for Qualifying Open Web Display Inventory.  For the avoidance of doubt, Google shall not restrict the availability of Header Bidding Trafficking to DFP Publisher customers based on a publisher's size, usage, or subscription to the Google Ad Manager 360 service.

      b)      Google shall, no later than 12 months from the Effective Date, provide a server-to-server connection between DFP and Qualified Prebid Server Instances through which Qualified Prebid Server Instances can submit Bids to DFP for Qualifying Open Web Display Inventory via a DFP-Prebid Integration.

4.      Google shall deprecate and not reimplement Unified Pricing Rules in DFP for Qualifying Open Web Display Inventory.  To effectuate the obligation set forth in this paragraph, it is ordered that:

      a)      Beginning not later than 6 months from the Effective Date, Google shall not require Publishers setting Floor Prices within Google Ad Manager for Qualifying Open Web Display Inventory to do so on a uniform basis across multiple Buying Tools or Ad Exchanges.

      b)      Google shall not provide a discount on fees charged for the use of DFP in exchange for the Publisher's agreement to set Floor Prices within Google Ad Manager for Qualifying Open Web Display Inventory on a uniform basis across multiple Buying Tools or Ad Exchanges.

## IV.  APPOINTMENT OF MONITORING TRUSTEE

### A.  Appointment of State Enforcement Committee

1. Without limiting the sovereign enforcement authority of each of the Plaintiff States, the Plaintiff States shall form a committee to coordinate their enforcement of this Final Judgment ("State Enforcement Committee").

2. No Plaintiff State shall take any action to enforce this Final Judgment without first consulting with the United States and with the State Enforcement Committee.

### B.  Appointment and Powers of Monitoring Trustee

1. No later than 120 days from the entry of this Final Judgment, the United States, the State Enforcement Committee, and Google shall agree on the appointment of a non-party Monitoring Trustee, subject to approval by the Court.

2. The Monitoring Trustee shall monitor Google's compliance with its obligations under this Final Judgment, and shall be bound by an appropriate confidentiality agreement in connection therewith as more fully set forth below in Section IV.D.

3. Subject to the provisions of such confidentiality agreement, the Monitoring Trustee shall have the power to do any of the following, as reasonably necessary to ascertain Google's compliance with its obligations under this Final Judgment, on reasonable notice to Google's designated representative:

   a) Interview, either informally or on the record, any current Google employee, who may have counsel present; any such interview will be subject to the reasonable convenience of such employee and without restraint or interference by Google;

        b)        Inspect and copy any document in the possession, custody, or control of Google;

        c)        Obtain reasonable access to, study, or interact with Google's source code or algorithms;

        d)        Obtain reasonable access to any system or equipment to which Google personnel have access;

        e)        Obtain reasonable access to, and inspect, any physical facility, building or other premises to which Google personnel have access; and

        f)        Require current Google employees to provide documents, data, and other information, and to submit reports to the Monitoring Trustee containing such material, in such form as the Monitoring Trustee may reasonably direct.

        4.        The Monitoring Trustee shall report to the United States, the State Enforcement Committee, and Google in writing, on a quarterly basis from the entry of this Final Judgment until the third anniversary of the Effective Date, the actions the Monitoring Trustee has undertaken in performing its duties pursuant to this Final Judgment, including the identification of each business practice reviewed and any recommendations made by the Monitoring Trustee.

        5.        Regardless of when reports are due, if the Monitoring Trustee has reason to believe that there may have been a failure by Google to comply with any term of this Final Judgment, the Monitoring Trustee shall promptly notify the United States, the State Enforcement Committee, and Google in writing setting forth the relevant details. Google shall be allowed a reasonable period (which shall ordinarily be not less than 30 days) to respond to the Monitoring

Trustee's concerns before any party discloses the matter to the Court or takes other enforcement action.

6. The Monitoring Trustee will communicate with Google about how potential or actual complaints or inquiries may be resolved. Google shall be allowed a reasonable period (which shall ordinarily be not less than 30 days) to respond to any complaint before the Monitoring Trustee discloses the matter to the Court or Plaintiffs or takes any enforcement action.

7. The Monitoring Trustee may communicate with third parties about how potential or actual complaints or inquiries might be resolved with Google, so long as the confidentiality of information obtained from Google is maintained.

8. Google shall provide reasonable assistance to the Monitoring Trustee and shall take no action to interfere with or impede the Monitoring Trustee's monitoring of its compliance with the terms of this Final Judgment.

**C.  Fees and Costs**

1. Google and the Monitoring Trustee shall enter into a written agreement, the terms of which shall be approved by Plaintiffs and the Court, providing for the Monitoring Trustee's service in accordance with this Final Judgment. Such agreement shall provide for a reasonable fee to be paid by Google to the Monitoring Trustee for its services.

2. The Monitoring Trustee may hire, at the cost and expense of Google, with prior notice to Google and subject to approval by Plaintiffs and the Court, such staff or consultants as are reasonably necessary for the Monitoring Trustee to carry out its duties and responsibilities under this Final Judgment. The compensation of any person retained by the Monitoring Trustee

8

will be based on reasonable and customary terms commensurate with the individual's experience and responsibilities.

### D. Confidentiality

1. The Monitoring Trustee, and all consultants or staff hired by the Monitoring Trustee, shall sign a confidentiality agreement prohibiting disclosure of any information obtained in the course of performing his or her duties as a Monitoring Trustee, or as a person assisting the Monitoring Trustee, to anyone other than the Monitoring Trustee, a consultant or staff hired by the Monitoring Trustee, the parties, or the Court.  All information gathered by the Monitoring Trustee in connection with this Final Judgment and any report and recommendations prepared by the Monitoring Trustee shall further be treated as Highly Confidential under the Modified Protective Order in this case, and shall not be disclosed to any person except as permitted therein or by further order of this Court.  Neither the Monitoring Trustee, nor any consultant or staff hired by the Monitoring Trustee, may make any public statements relating to the Monitoring Trustee's activities.

2. If, at the time information or documents are furnished by Google to the Monitoring Trustee, the United States, or Plaintiff States, Google identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Google marks each pertinent page of such material, "Confidential and Sensitive Commercial Information Subject to Rule 26(c)(1)(G)," then the United States, Plaintiff States, or Monitoring Trustee shall be required to file such material under seal in any filing to the Court pursuant to the relevant provisions of the Modified Protective Order.

9

3. Google shall have the right to claim protection from public disclosure, under the Freedom of Information Act, 5 U.S.C. § 552, or any other applicable law or regulation (including state laws or regulations applicable to any of the Plaintiff States), for any material it submits to the Monitoring Trustee, the United States, or Plaintiff States under this Final Judgment. After appropriate consideration of such claim of protection, the United States or Plaintiff States will either assert that the material is protected from disclosure under law or give Google 10 business days' notice of their intent to disclose the material.

## V. EFFECTIVE DATE; TERMINATION

1. Subject to the outcome of any motion to stay this Final Judgment pending appeal, this Final Judgment shall take effect on the Effective Date, i.e., 120 days after the date on which such Final Judgment is entered.

2. Unless this Court grants an extension, this Final Judgment will expire on the sixth anniversary of the Effective Date, provided that the provisions relating to the Monitoring Trustee shall expire on the third anniversary of the Effective Date.

## VI. DEFINITIONS

**A.** "Ad Exchange" means a product or service through which two or more Buying Tools can place Open Auction Bids in real-time auctions for Open Web Display Inventory offered for Purchase by or on behalf of two or more Publishers. For the avoidance of doubt, AdX is an example of an Ad Exchange.

**B.** "Advertiser" means a person or entity that, directly or through one or more intermediaries, places one or more Open Web Display Ads intended to advertise or promote a good or service offered by that person or entity, or otherwise convey such person or entity's

desired message, on a Publisher's website so that it is viewed by at least one User visiting such Property.

     **C.**    "AdX" means the Open Auction Ad Exchange functionality of Google Ad Manager, Google Ad Manager 360, or a successor to either product that offers Ad Exchange functionality.  For the avoidance of doubt, AdX does not include DFP, AdSense, AdMob, or any other Google product, regardless of any similarity in features or implementation such product may share with the Ad Exchange functionality of Google Ad Manager.

     **D.**    "AdX Bid Data" shall mean, for any given Publisher, data, in a structured data format, showing the bid values for any winning and losing Bids received by AdX from Google and non-Google Buying Tools for Qualifying Open Web Display Inventory.

     **E.**    "AdX-Prebid Integration" shall mean one or more software components, modules, or other units of code released, published, or contributed by Google from time-to-time that, when integrated with the existing code for Prebid.js (as published by Prebid.org at https://github.com/prebid/prebid.js or a successor location) or Prebid Server (as published by Prebid.org at https://github.com/prebid/prebid-server or a successor location), collects relevant signals for, formats, and transmits RTB Requests to AdX and receives Bids sent by AdX in response.  For the avoidance of doubt, although the AdX-Prebid Integration is designed to interface with AdX (or specific API endpoints provided by AdX), only the code compiled into (or otherwise designed to be distributed with) Prebid.js or Prebid Server, and not any code compiled into (or otherwise designed to be run together with) AdX or any of its components, shall be included in the definition of "AdX-Prebid Integration."

F. "Bid" or "Real Time Bid" means an offer, made in response to an Open Auction Query, to pay a specified amount in exchange for the right to render an Open Web Display Ad in a unit of Inventory. Unless the context indicates otherwise, or otherwise agreed, such Bid shall be conveyed in a Bid response object formatted in accordance with the OpenRTB specification.

G. "Buying Tool" shall mean a program or service that submits Bids to purchase Open Web Display Inventory on behalf of one or more Advertisers on an automated basis.

H. "DFP" means the Publisher Ad Server functionality of Google Ad Manager, Google Ad Manager 360, or a successor to either product that offers Publisher Ad Server functionality. For the avoidance of doubt, DFP does not include AdX, AdSense, AdMob, or any other Google product, regardless of any similarity in Features or implementation such product may share with the Publisher Ad Server functionality of Google Ad Manager.

I. "DFP-Prebid Integration" shall mean one or more software components, modules, or other units of code released, published, or contributed by Google from time-to-time that, when integrated with the existing code for Prebid.js (as published by Prebid.org at https://github.com/prebid/prebid.js or a successor location) or Prebid Server (as published by Prebid.org at https://github.com/prebid/prebid-server or a successor location), allows Prebid Server to submit one or more Bids directly to DFP over a server-to-server connection, including the collection and transmission of all relevant signals. For the avoidance of doubt, although the DFP-Prebid Integration is designed to interface with DFP (or specific API endpoints provided by DFP), only the code compiled into (or otherwise designed to be distributed with) Prebid.js or Prebid Server, and not any code compiled into (or otherwise designed to be run together with) DFP or any of its components, shall be included in the definition of "DFP-Prebid Integration."

**J.** "Effective Date" shall mean, with respect to this Final Judgment or any provision thereof, the date that is 120 days after the Final Judgment is entered, provided that, when calculating any deadline specified in this Final Judgment with reference to the Effective Date, such date shall be tolled, day-for-day, for so long as the relevant provision of this Final Judgment (or the Final Judgment as a whole) is or was stayed pursuant to an order of this Court, the United States Court of Appeals for the Fourth Circuit, or the United States Supreme Court (regardless of whether such stay is subsequently vacated).

**K.** "First Look" means the DFP feature found by the Court to require a Publisher to offer AdX a right-of-first refusal on Qualifying Open Web Display Inventory before offering other Ad Exchanges an opportunity to bid on such Qualifying Open Web Display Inventory.

**L.** "Floor Price" means the limitation on how low an Advertiser or Buying Tool can Bid for Open Web Display Inventory while still being eligible to win the Impression.

**M.** "Google Ad Manager" or "Google Ad Manager 360" means Google's tool that offers Publishers the functionality of a Publisher Ad Server and an Ad Exchange, including any successor products.

**N.** "Header Bidding Trafficking" means the Google feature by the same name that enables the Google Publisher Tag on a Publisher's website to collect Bid data for Open Web Display Ads from the Prebid.js header bidding wrapper running on the Publisher's website and allow the collected Bids to compete for Impressions on the basis of the collected price, as described at https://support.google.com/admanager/answer/12273163.

**O.** "Impression" means the service of a single Open Web Display Ad to a single User.

P.      "In-House" means created for a Publisher's, Advertiser's, or advertising agency's internal use.

Q.      "Inventory" means space on a Publishers' Property offered for the sale or placement of digital advertising.

R.      "Last Look" means the DFP feature found by the Court to require a Publisher to provide AdX a right-of-last-refusal on Qualifying Open Web Display Inventory, including by passing the highest Bid from another demand source as a Floor Price for AdX or otherwise allowing AdX to see a competing Bid from another Ad Exchange before AdX submits its Bid for such Qualifying Open Web Display Inventory.

S.      "Open Auction" means an auction for Inventory that is made available to all buyers otherwise eligible to Bid on AdX and excludes private auctions, preferred deals, programmatic guaranteed, and similar transactions for which only a subset of buyers are eligible to compete.

T.      "Open Web Display Advertising" or "Open Web Display Ad(s)" means image- or text-based digital advertisements ("ads") on websites that are Purchased using a third-party (rather than In-House) ad tech tool.  For the avoidance of doubt, Open Web Display Advertising, as found by the Court, does not include native ads, in-stream video ads, or search ads, and does not include digital ads appearing on social media platforms, search engines, mobile apps, embedded video players, video streaming services, and connected televisions.

U.      "Open Web Display Inventory" means Inventory offered by a Publisher for the sale or placement of Open Web Display Advertising.

V. "Property" means a website containing space that is Purchased or offered for Purchase for the placement of Open Web Display Advertising.

W. "Publisher" means a person or entity in the United States operating a website.

X. "Publisher Ad Server" means a product, service, or system that is responsible for selecting (or attempting to select), on behalf of a Publisher, the Open Web Display Ad (or source from which such Open Web Display Ad shall be obtained) for a unit of Inventory.

Y. "Publisher Configuration Data" shall mean data reflecting the Publisher's then-existing Open Web Display Ad units, orders, line items, and creatives, as are otherwise maintained by Google in the ordinary course of business and made available to Publishers via Google Ad Manager's interfaces.

Z. "Publisher DFP Data" shall refer collectively to a Publisher's then-existing Publisher Configuration Data and then-existing Publisher Historical Data.

AA. "Publisher Historical Data" shall mean data reflecting the Publisher's then-existing historical data regarding the number of Queries received and Impressions served for each of the Publisher's configured Open Web Display Ad units, provided that Publisher Historical Data shall only include data otherwise maintained by Google in the ordinary course of business and made available to Publishers via Google Ad Manager's interfaces.

BB. "Purchase," when used in connection with Open Web Display Inventory or Impressions, means to obtain, directly or indirectly through one or more intermediaries, the right to render or display an Open Web Display Ad in a unit of Inventory, typically but not necessarily in exchange for a monetary payment.

**CC.** "Qualified Prebid Client Instance" means an instance of Prebid.js into which an AdX-Prebid Integration or DFP-Prebid Integration, in each case in the form most recently released, published, or contributed by Google, has been compiled, linked, or otherwise incorporated. For the avoidance of doubt, an instance is not a Qualified Prebid Client Instance if its AdX-Prebid Integration or DFP-Prebid Integration has been modified in a manner that would require Google to modify the DFP or AdX side of the integration, or that would degrade the quality or availability of signals or other data passed between the Prebid.js instance and DFP or AdX.

**DD.** "Qualified Prebid Instance" means a Qualified Prebid Client Instance or a Qualified Prebid Server Instance.

**EE.** "Qualified Prebid Server Instance" means an instance of Prebid Server into which an AdX-Prebid Integration or DFP-Prebid Integration, in each case in the form most recently released, published, or contributed by Google, has been compiled, linked, or otherwise incorporated. For the avoidance of doubt, an instance is not a Qualified Prebid Server Instance if its AdX-Prebid Integration or DFP-Prebid Integration has been modified in a manner that would require Google to modify the DFP or AdX side of the integration, or that would degrade the quality or availability of signals or other data passed between the Prebid Server instance and DFP or AdX.

**FF.** "Qualified Publisher Ad Server" means a Publisher Ad Server (or, where the context requires, the provider or operator of such Publisher Ad Server) that serves Open Web Display Ads for one or more Publishers unaffiliated with the provider or operator of such Publisher Ad Server.

**GG.** "Qualifying Open Web Display Inventory" means Open Web Display Inventory offered for sale via Open Auction by a Google Ad Manager Publisher customer in good standing and otherwise complying with the terms and conditions of the Publisher's relevant contractual agreement(s) with Google.

**HH.** "Query" means a request to provide a Bid for an Open Web Display Ad to be rendered in a unit of Inventory, whether denominated as an "ad request," "bid request," or otherwise.

**II.** "Real Time Bid" shall have the same meaning as "Bid" (above).

**JJ.** "RTB Request" shall mean an Open Auction Bid request formatted in accordance with the published OpenRTB standard, or a successor standard thereto, or such other format as has been published by Google in connection with a particular provision of this Final Judgment.

**KK.** "Separate Contract" means an independent agreement between the Publisher and Google for the use of the Ad Exchange functionality or the Publisher Ad Server functionality of Google Ad Manager. For the avoidance of doubt, if there is a primary contract specifying terms generally applicable to a Publisher's use of Google Ad Manager appending both an addendum or schedule stating terms applicable to the Ad Exchange functionality and a separate addendum or schedule stating terms applicable to the Publisher Ad Server functionality, each addendum or schedule would constitute a Separate Contract under the meaning of this provision.

**LL.** "Unified Pricing Rules" means the DFP policy that the Court found prohibited Publishers using DFP from setting higher price floors for AdX than for other exchanges and prohibited DFP Publishers from setting higher price floors for Google AdWords demand than for demand from other Buying Tools.

**MM.** "User" means an end user visiting or using a website.

## VII. THIRD-PARTY RIGHTS

Nothing in this Final Judgment is intended to confer upon any person other than a party to this action any rights or remedies of any nature.

## VIII. RETENTION OF JURISDICTION

This Court retains jurisdiction for the purpose of enabling any of the parties to this Final Judgment to apply for such further orders or directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, and to enforce compliance.

Date: _____                    _____

                                                Leonie M. Brinkema
                                                United States District Judge