IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:23-cv-00108-LMB-JFA |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF GOOGLE'S ANALYSIS OF REMEDY FEASIBILITY**

Google seeks to exclude from evidence its own internal analyses, which show Google's candid assessment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* ECF No. 1431 at 11–12. Rule 408 does not bar the admission of this highly relevant evidence because internal assessments of technological feasibility—assessments of what *can* be done—are not settlement material at all, let alone settlement material offered to show what relief the Court *should* implement. Furthermore, Google has invited admission of these analyses by claiming Plaintiffs' proposed remedies are "unworkable." *Id*. at 11. In furtherance of that claim, Google plans to elicit testimony from multiple Google employees who created, and a technical expert who affirmatively relies on, the very analyses Google now seeks to preclude. In these circumstances, both the Federal Rules of Evidence and principles of fundamental fairness counsel in favor of admitting all these analyses into evidence, not just analyses that Google cherry-picks to support its litigation position.

Moreover, Magistrate Judge Anderson has already policed the line between "settlement material" and non-settlement material in rulings that Google did not timely appeal but now seeks to overturn, long after discovery has closed and both sides have relied on them. Magistrate Judge

1

Anderson ruled both that Plaintiffs have a "substantial need" for the internal analyses at issue and that Plaintiffs are precluded from discovering actual settlement communications, even ones that discuss technical feasibility. *See* infra pp. 3–4. That distinction between internal technical analysis and external settlement communication has fundamentally shaped the discovery record, and it should govern the shape of the trial record as well.

Google's motion, which seeks to expunge the detailed factual record regarding technical feasibility that Plaintiffs have developed, is yet another example of Google trying to hide evidence that goes against its litigation positions. Just as Google has tried to use the attorney-client privilege, the attorney work-product doctrine, and outright destruction of evidence to avoid disclosing facts that are unfavorable to its position, Google now tries to use Rule 408 to the same end. In doing so, Google seeks to expand Rule 408 beyond any recognizable boundaries, claiming that any internal analysis on any topic that may someday be the subject of a settlement discussion, is categorically inadmissible. Unsurprisingly, that is not the law.

Despite Google's rhetoric, it has failed to meet its burden on this motion. Google has not shown that any of the internal technical assessments at issue constitute settlement materials under Rule 408. Even if it had, Rule 408 would still permit the analyses' admission because the fact that a remedy *can be* ordered is not proof about whether that remedy *should be* ordered. And in any event, Google has opened the door to the analyses' admission by affirmatively putting them at issue through its arguments, its own employees, and its principal technical expert. Any residual doubts about the analyses' admissibility can be resolved by the Court sitting as the finder of fact because the Court can be trusted not to draw any impermissible inference from the evidence. For all these reasons, Google's motion should be denied.

# BACKGROUND

### A. Magistrate Judge Anderson Allowed Discovery of a Narrow Category of Internal Technical Feasibility Analyses but Not "Settlement Materials"

Since at least 2020, nonlawyers at Google have analyzed the feasibility of changing how Google operates its ad tech business, including analyses of the timeline and work required to implement two actions that Plaintiffs now propose as remedies: divesting Google's ad exchange (AdX) and separating the final auction logic of Google's publisher ad server (DFP) to make it available under an open-source license. *See* ECF No. 1482 at 8–11. Now, as part of this remedy proceeding, Google questions whether those proposals can, as a technical matter, be implemented. *See* Hr'g Tr. at 21:19 (May 2, 2025) (claiming Plaintiffs' proposals are "very likely completely impossible"); ECF No. 1431 at 11 (claiming "the technical project of divesting" would be "unworkable"). Accordingly, Plaintiffs have spent the past four months developing a discovery record regarding the timeline and purported costs, burdens, risks, or difficulties associated with certain of Plaintiffs' remedy proposals. Four Google fact witnesses have been deposed on those topics, and four separate technical experts (two for Google and two for Plaintiffs) have rendered almost 700 pages of expert analysis about technical feasibility.

A key part of the factual record relating to the technical feasibility of Plaintiffs' remedy proposals are Google's own internal technical analyses, which Plaintiffs immediately sought when discovery began on May 2. Plaintiffs promptly moved to compel production of those analyses on May 23. *See* ECF Nos. 1438, 1441. Google opposed that motion in part on the same ground they raise now: the analyses were "created in connection with settlement negotiations." ECF No. 1445 at 4, 9; *see also id.* at 18–21.

On May 30, Magistrate Judge Anderson overruled Google's objections and granted Plaintiffs' motion, *see* ECF No. 1450, but only narrowly as to "technically-related work," and not

3

as to preparation of settlement proposals, or legal or commercial analyses, such as "marketplace analyses." Hr'g Tr. at 11:4–16 (June 20, 2025). Magistrate Judge Anderson required Google to produce the internal analyses of technical feasibility in part because he recognized that Plaintiffs have a "substantial need" for them. Magistrate Judge Anderson concluded that Plaintiffs needed to be able to rely on these internal analyses because Google's "very aggressive argument" about technical feasibility is at the heart of the remedies case, and without the analyses Plaintiffs "would not be in the same position that Google's technical people who have worked with [Google's technological] system for years."[1] See Hr'g Tr. at 40:3–12 (May 30, 2025).

In contrast, Magistrate Judge Anderson has kept out of the record documents "related to settlement discussions." See ECF No. 1548. Plaintiffs separately sought to compel production of documents reflecting statements Google made to the European Commission ("EC") about the feasibility of various proposed remedies, including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. See ECF Nos. 1474, 1477. This time, Magistrate Judge Anderson denied the motion, relying exclusively on Google's settlement-related arguments, which were the same as those Google raised in opposing Plaintiffs' motion to compel the internal analyses, except that Google distinguished the EC documents as being "materials exchanged between parties." See ECF No. 1494 at 25 n.10. Magistrate Judge Anderson held that "documents that discuss the feasibility of proposed remedies during any ongoing settlement discussions" were not discoverable. ECF No. 1548 at 3. Thus, Magistrate Judge Anderson's rulings created a clear distinction between internal technical analyses and external statements "during any ongoing settlement discussions." Google did not object to either of Magistrate Judge Anderson's rulings.

---

[1] Google's motion emphasizes that the analyses were created "at the direction of counsel," ECF No 1579 ("Mot.") at 2–4, 7, but Magistrate Judge Anderson ruled that Plaintiffs' need for the technical analyses at issue overcame those privilege claims. Hr'g Tr. at 39–42 (May 30, 2025).

4

B. **Google's Internal Analyses Show** ███████████████████
███████████

Between June 5 and June 25, 2025, Google produced to Plaintiffs its internal analyses concerning a potential divestiture of AdX and open-sourcing of DFP's final auction logic. Those documents reveal that ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████[2] Ex. 1 (PRX050) at 298, 308, 325; *see also* Ex. 2 (PRX060) at 501, 503–05, 511, 513 (████████████████████████████████████████

████████████████████████████████████████). Google applied extensive redactions to disclose only internal "technical" analysis and withhold all other information, including any information relating to settlement discussions. *See* ECF No. 1494 at 13–15 (listing categories of information Google redacted, including "any information that would reveal that a proposal had been made or what the substance of the proposal was").

The record confirms that the internal analyses at issue were not guesswork or back-of-the-envelope surmise. ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[2] Consistent with Plaintiffs' remedy proposal, Google's internal analysis also contemplated ███████████████████ *See* Ex. 1 (PRX050) at 298, 303.

5

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ *see also* Mot. at 9 ("parts of these documents reflect information directly communicated to regulators"). Google employees, including the employee Google designated to testify on its behalf about the internal analyses, confirmed that ████████████████████████████████████████████████

████████████████████████████████. Ex. 4 (Levitte Dep.) at 129–33, 144–45; Ex. 5 (Wolf Dep.) at 229, 233, 307–08; Ex. 3 (Craycroft Dep.) at 348:9–14.

### C. Google Proposes to Eliminate Large Swaths of the Factual Record

Google's internal technical analyses permeate the remedies record. Of the 23 documents to which Google objects,[3] 19 were marked as deposition exhibits and/or relied upon by experts, including Google's experts, Dr. Jason Nieh and David Maymudes. Dr. Nieh relied on five such documents in forming his opinions about the technical feasibility of Plaintiffs' proposed remedies (PRX044, PRX048, PRX050, PRX059, and PRX060), and Mr. Maymudes relied on one of them (PRX044), all of which Google highlights, *see* Mot. at 2 n.3. Fourteen of the 23 documents were marked as deposition exhibits, and Plaintiffs' experts relied on 11 of them.

---

[3] Google's motion refers to 22 exhibits (PRX039 to PRX060), *see* Mot. at 2, but Google also objected to PRX099 on the basis of "408" and "MIL." *See* ECF No. 1574 Ex. A at 2–4. Google's motion also states that it objects to all these exhibits on the same grounds but only "seeks exclusion of a subset" of 11 documents. Mot. at 2 n.3. Because Google does not differentiate its arguments as to those 11 documents from the others in the same category, Plaintiffs address all 23 documents as being at issue.

The documents at issue in the present motion were the subject of extensive examination during the depositions of four Google employees who personally worked on the analyses, two of whom Google "expects to present" live testimony from at trial (Glenn Berntson and George Levitte), and one of whom Google "may present" live testimony from at trial (Tim Craycroft). *See* ECF No. 1562; *see also* ECF No. 1494 at 7–8 ("Plaintiffs extensively examined" Messrs. Berntson and Levitte about internal analyses). During these depositions, Google counsel instructed at least one of these witnesses not to answer certain questions on the basis of ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *see* Ex. _3_ (Craycroft Dep.) at 57:5–59:21, 349:20–356:18, but Google nevertheless permitted these witnesses to testify extensively about the contents of the documents at issue, covering hundreds of pages of deposition testimony. *See, e.g.*, *id*. at 92–146, 173–97, 227–42, 270–357; Ex. 4 (Levitte Dep.) at 173–319; Ex. 5 (Wolf Dep.) at 247–90, 295–316; Ex. 6 (Berntson 30(b)(6) Dep.) at 283–333.

## LEGAL STANDARDS

The Court should grant a motion *in limine* "only when the evidence is clearly inadmissible on all potential grounds." *United States v. Verges*, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014). Moreover, "the exclusion of evidence is generally disfavored in a bench trial," *Moke Am. LLC v. Am. Custom Golf Cars, Inc.*, 2023 WL 3686963, at *1 (E.D. Va. Jan. 11, 2023) (cleaned up), in large part because, "[f]or a bench trial, [the Court of Appeals is] confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences," *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994); *see also*, *e.g.*, *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1077 (1991) ("[T]rial judges often have access to inadmissible and highly prejudicial information and are presumed to be able to discount or disregard it."). The Court enjoys "broad discretion" in granting or denying motions *in limine*. *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012).

For "a disputed claim," evidence of (1) "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim," or (2) "conduct or a statement made during compromise negotiations about the claim," are not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Such evidence is admissible, however, "for another purpose." Fed. R. Evid. 408(b); *see also United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 391 (4th Cir. 2015) (Wynn, J., concurring) (if evidence is "admissible for a purpose beyond the validity or amount of a disputed claim, Rule 408 would provide no basis for barring it wholesale from trial"). "Whether to admit evidence for another purpose is within the discretion of the trial court," and "the court's decision will not be reversed in the absence of an abuse of discretion amounting to manifest error." *Bituminous Constr., Inc. v. Rucker Enters., Inc.*, 816 F.2d 965, 968 (4th Cir. 1987) (cleaned up).

## ARGUMENT

Google's motion should be denied for at least four reasons: (1) Rule 408 does not apply to the internal analyses at issue, (2) even if Rule 408 applies, it permits admission of evidence for the purpose of showing a remedy is feasible, (3) Google has invited admission of the disputed evidence, and (4) Google improperly tries to re-litigate Magistrate Judge Anderson's rulings. Moreover, even if the Court were to exclude the analyses themselves, Plaintiffs' experts should still be permitted to rely on them under Rule 703.

## I.      Rule 408 Does Not Apply to the Documents Google Seeks to Exclude

Rule 408 does not apply to the internal analyses at issue because they are neither (1) "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration," nor (2) "conduct or a statement made during compromise negotiations." Fed. R. Evid. 408(a). Rule 408 "does not apply to internal memoranda unless

8

communicated to the other side in an attempt at settlement." *Blue Circle Atl., Inc. v. Falcon Materials, Inc.*, 760 F. Supp. 516, 522 (D. Md. 1991), *aff'd*, 960 F.2d 145 (4th Cir. 1992). The documents at issue were indisputably not "communicated to the other side in an attempt at settlement," *Blue Circle*, 760 F. Supp. at 522, because Google has previously conceded that it "has never disclosed its internal analyses to Plaintiffs or anyone else." ECF No. 1445 at 22 n.6.

Nonetheless, Google's motion invites the Court to expand Rule 408 well beyond its text to exclude these internal analyses. Google contends that Rule 408 applies to any document so much as "pertaining to" or "regarding" an eventual settlement communication, Mot. at. 1–2, or even any evidence "reflecting preparations for *potential* settlement offers and negotiations," even if no actual offer or negotiation ever occurs, *id*. at 10 (emphasis added). That is an incorrect statement of the law because documents must, as the text of Rule 408 indicates, still "demonstrate evidence of conduct in compromise negotiations." *Affiliated Mfrs., Inc. v. Alum. Co. of Am.*, 56 F.3d 521, 529 (3d Cir. 1995) (cleaned up). And thus a party seeking to apply Rule 408 must at least show that the documents at issue "were intended to be part of the negotiations for compromise." *Fiberglass Insulators v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) (cleaned up).

None of the cases Google cites support its sweeping view of Rule 408. All those cases dealt with documents that, although internal to one party, either reflected the substance of settlement negotiations or were intended to be "part of" such discussions. For example, *Xcoal Energy & Res., LP v. Smith*, 635 F. Supp. 2d 453 (W.D. Va. 2009) involved emails describing "then-current negotiations" relating to settlement. *Id*. at 454. The other cases involved similar, settlement-specific documents. *See EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 791 (8th Cir. 2009) (discussing handwritten note reflecting party's statement "about his damages as part of the

9

conciliation process")[4]; *Affiliated Mfrs*, 56 F.3d at 530 ("internal memoranda prepared for use in discussion of settlement"); *Blu-J, Inc. v. Kemper CPA Grp.*, 916 F.2d 637, 641 (11th Cir. 1990) (evaluation "prepared by mutual agreement of [the parties] as part of their settlement negotiations"); *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981) (internal report "to identify arguable defects that could then be discussed in monetary terms in the negotiations"); *Applebaum v. Target Corp.*, 2015 WL 13036873, at *2 (E.D. Mich. Feb. 11, 2015) (document "request[ing] authority to make a settlement offer of $35,000").

Google's argument should be rejected because it has no limiting principle. Google seeks to create a new category of Rule 408 documents: internal analyses prepared for "potential" settlement discussions, regardless whether those discussions occur. Mot. at 10 (emphasis added). As discussed above, the cases on which Google relies do not support that novel position, and for good reason, because such an expansive approach to Rule 408 would be fodder for abuse. By Google's reasoning, a party could cloak any ordinary-course, internal document under the protections of Rule 408 if the party claims to have prepared it for a hypothetical future settlement negotiation. Exemplifying these shortcomings, Google does not identify which of the documents it seeks to exclude involved "preparation" for settlement discussions, nor does it identify when they were prepared or in connection with which proposed settlement discussion.

In any event, Google has not established that any of the documents at issue "were intended to be part of the negotiations for compromise." *Fiberglass Insulators*, 856 F.2d at 654 (cleaned up). Unlike the documents at issue in the cases Google cites, pursuant to the scope of

---

[4] Contrary to Google's mischaracterization (Mot. at 8), the *UMB* court did not "exclude[] a party's internal analyses." Rather, the court affirmed the trial court, which had *admitted* the internal note that was at issue. *See* 558 F.3d at 791–92. The court also declined to decide whether "exceptions to Rule 408" applied to the document. *Id.* at 791. *UMB* thus provides no basis for excluding the specific documents and testimony that Google seeks to block.

10

Magistrate Judge Anderson's ruling, Google redacted all settlement-specific information from the analyses at issue, leaving only purely technical assessments. *See* ECF No. 1494 at 13–15. Google claims that the unredacted portions "formed the basis for pre-suit settlement negotiations," and were "part of those negotiations," but Google's motion fails to substantiate those claims. Mot. at 4; *see also id*. at 8 ("part of ongoing settlement negotiations"); *id*. at 9 ("prepared both during and for active settlement negotiations"). Google's only basis for these claims are declarations from Google lawyers, which for the analyses at issue do not mention settlement negotiations and instead state only that the analyses were "to assist Google's in-house and outside counsel in assessing the potential for resolution" of ongoing investigations and litigation. ECF No. 1445-1 (Boundy Decl.) ¶ 8; *see id*. ¶ 6 (similar); ECF No. 284-30 (Lazarus Decl.) ¶¶ 5–8 ("because of and in response to" investigations and litigation). Notably, one declaration states that an internal analysis not at issue here, code-named "Project Banksy," was "for the purpose of preparing a settlement proposal," Lazarus Decl. ¶ 9, but neither declaration makes that same claim for any of the analyses at issue. Google's motion likewise fails to substantiate when the settlement negotiations at issue occurred, which matters because Rule 408 does not apply to documents "written before settlement discussions began" if those documents were never communicated to the other side. *Wall Data Inc. v. L.A. Cnty. Sheriff's Dept.*, 447 F.3d 769, 784 (9th Cir. 2006).

## II.  Rule 408 Permits Admission of Evidence About the Feasibility of a Remedy

Even if the evidence at issue were within the scope of Rule 408 (it is not), the evidence is admissible because Plaintiffs intend to use it for a purpose permitted by Rule 408. Evidence is only inadmissible under Rule 408 if it is offered for the improper purpose to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Evidence offered "for another purpose" is admissible. Fed.

11

R. Evid. 408(b); *see, e.g.*, *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) (Rule 408 "permits evidence that is otherwise discoverable or that is offered for a purpose other than establishing liability"). Google's motion does not address the purpose for which this evidence would be offered at trial, let alone show that the evidence would necessarily be offered for the one purpose that Rule 408 forbids. Because Google has not shown that the evidence at issue "is clearly inadmissible on all potential grounds," *Verges*, 2014 WL 559573, at *3, its motion should be denied on that basis alone.[5]

Plaintiffs seek to admit evidence relating to Google's internal technical analyses for "another purpose," Fed. R. Evid. 408(b), namely to demonstrate the technical feasibility of Plaintiffs' remedies, and to rebut Google's arguments on that issue. Courts have recognized in analogous circumstances that evidence of a party's ability to implement a remedy is not barred by Rule 408. *See Mission Viejo Florist, Inc. v. Orchard Supply Co.*, 2016 WL 9275407, at *8 (C.D. Cal. Nov. 17, 2016) (plaintiff's "willingness to offer Defendant a 'license' . . . in exchange for upfront, lump-sum payment" during settlement discussions was admissible under Rule 408 to "demonstrate[] Plaintiff's *ability* to quantify its potential harm," contrary to its contention that "its damages will be 'incalculable'"); *Ball v. LeBlanc*, 881 F.3d 346, 349, 354–55 (5th Cir. 2018) (evidence of defendant's implementation of remedy "in connection with . . . settlement discussions" was admissible under Rule 408 to determine whether that remedy "was more efficient" than the one defendant proposed in litigation).

---

[5] Google may not address this issue for the first time in its reply brief. *See, e.g., Clendening v. United States*, 19 F.4th 421, 430 n.7 (4th Cir. 2021) ("A party waives an argument by raising it for the first time in its reply brief." (cleaned up)); *M.B. v. Fairfax Cnty. Sch. Bd.*, 660 F. Supp. 3d 508, 526 (E.D. Va. 2023) ("[I]t is well-established that an argument raised for the first time in a reply brief is waived and will not be considered.").

Evidence is only offered to "prove or disprove the validity or amount of a disputed claim" when "offered to prove liability or damages." *Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992). Even assuming this concept extends to non-monetary relief, the feasibility of a remedy does not "prove liability or damages," *i.e.*, in this case, the quantum and nature of relief that is "effective to restore competition." *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961). In other words, Plaintiffs do not seek to admit the disputed evidence for the purpose of proving that divesting AdX or open-sourcing DFP's final auction logic are measures the Court *should* take to remedy Google's conduct, but only for the purpose of showing that these measures *can* be taken.

Plaintiffs also do not seek to introduce evidence of a remedy's feasibility "to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Plaintiffs intend to admit the analyses, at least in part, as affirmative evidence of technical feasibility in their case-in-chief. Moreover, Plaintiffs presenting evidence of technical feasibility to "rebut" or "negate" Google's contrary arguments or evidence is proper under Rule 408. *See United Prop. & Cas. Ins. v. Couture*, 639 F. Supp. 3d 590, 604 (D.S.C. 2022); *see also Stack v. Abbott Labs., Inc.*, 2016 WL 6304729, at *5 (M.D.N.C. Oct. 27, 2016) (evidence may be admitted under Rule 408 "to prove or rebut some other point unrelated to" validity of claim); *United States v. Patel*, 485 F. App'x 702, 718 (5th Cir. 2012) (evidence of settlement permissible for a non-liability purpose on "rebuttal"); *infra* Part III.

### III. Google Has Invited the Court to Consider Its Internal Analyses by Putting at Issue Technical Feasibility and Seeking to Admit Evidence Contrary to Its Own Analyses

The Court should see Google's internal ███████ about technical feasibility because Google itself has put technical feasibility at issue. It would mislead the Court and be fundamentally unfair to allow Google to inject technical feasibility as an issue and then make a

13

sanitized, one-sided presentation about it, just as it would be improper to allow a party to raise an advice-of-counsel defense but only disclose the advice that supports its position. *See Drakeford*, 792 F.3d at 392 (Wynn, J., concurring) (district court should have admitted evidence that "otherwise might have been excludable under Rule 408" to provide "the full picture of what advice [defendant] had gotten"). In this situation, Google has "opened the door" to admission of its internal analyses. *See id*. at 392; *id*. at 378 n.9 (majority op.); *see also Fisk Elec. Co. v. Solo Constr. Corp.*, 417 F. App'x 898, 902 (11th Cir. 2011) (defendant "raising" an affirmative defense that implicated whether defendant had received settlement payment "invited evidence rebutting that defense"); *Couture*, 639 F. Supp. 3d at 604 (compromise offers and negotiations admissible to "rebut claims" and "negate allegations" of adversary). This result stems from principles of fairness. *See*, *e.g.*, *United States v. Blake*, 571 F.3d 331, 348 (4th Cir. 2009) (court has clear discretion to admit previously excluded evidence when other side "opened the door" because "[t]o allow such an attack to go unanswered would have been unfair").

Google has further opened the door by listing as trial witnesses three employees (Messrs. Berntson, Craycroft, and Levitte) who personally worked on the analyses at issue. Because Google will put into evidence those lay witnesses' assessments of technical infeasibility to support Google's defense, the topic should be fair game for Plaintiffs to address in their case-in-chief, and Plaintiffs should be permitted to examine those same witnesses about *other* assessments they have been involved in that came to the opposite conclusion. Moreover, Google's primary technical expert, Dr. Nieh, affirmatively relied on three of the documents at issue (and two others on rebuttal), including the two that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (PRX050 and PRX060, *see supra* pp. 5–6). Because Google has made clear it will present testimony analyzing the feasibility of divesting AdX or open-sourcing the DFP

14

final auction logic, the Court should be permitted to hear about *all* such analyses, not just the ones that favor Google.

Indeed, because technical feasibility will be a disputed issue at trial regardless, excluding the internal analyses would not "exclude irrelevant evidence and eliminate unnecessary argument or delay," as Google contends. Mot. at 6. The internal analyses evaluating AdX divestiture and open-sourcing DFP's auction logic are plainly relevant (Google does not contend otherwise). And excluding them would not "eliminate unnecessary argument," but would instead make those arguments one-sided. Although Google worries about this evidence being "confus[ing]" or distract[ing]" to the Court, *id*. at 2, 10 n.7, the Court "can hear relevant evidence, weigh its probative value and reject any improper inferences." *Schultz*, 24 F.3d at 632; *see* Hr'g Tr. at 6:8-13 (June 14, 2024) (denying motions *in limine* on this basis).

### IV.    Google's Motion Seeks to Belatedly Relitigate Magistrate Judge Anderson's Rulings

Google's motion also fails because it seeks to relitigate issues Magistrate Judge Anderson has already decided, and that Google chose not to appeal. Those rulings, prompted by Google's position that discoverability and admissibility of "settlement materials" are governed by the same standard, carefully drew lines around what materials would be available to litigate this case. Now that those rulings have fashioned the boundaries of the factual record on the issue of technical feasibility, and now that Google's own experts have chosen to rely on some of the documents at issue, Google cannot now get a second bite at the apple.

It is especially difficult to reconcile the result Google seeks with Magistrate Judge Anderson's conclusion that Plaintiffs have a "substantial need" for the internal analyses at issue. To respond to Google's "very aggressive argument" about technical feasibility, Magistrate Judge Anderson specifically found that there was no way for Plaintiffs "to be in the same position" as Google to address the technical feasibility of divesting AdX or open-sourcing DFP's final

15

auction logic without being able to rely on the analyses Google now seeks to exclude. *See* Hr'g Tr. at 40:3–15 (May 30, 2025). Google's motion seeks to wipe away that finding by effectively placing Plaintiffs back in the position they would have been had they never obtained these analyses in the first place.

### V. Plaintiffs' Experts Should Be Permitted to Rely on the Analyses at Issue Regardless of Whether They Are Admissible

Even if the analyses at issue were not admissible (they are), Plaintiffs' experts should be able to continue to rely upon them and testify based on them. Expert witnesses are permitted to base their opinions on "facts or data" that "experts in the particular field would reasonably rely on," and such material "need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. "Rule 703 creates a shield by which a party may enjoy the benefit of inadmissible evidence by wrapping it in an expert's opinion." *United States v. A&S Council Oil Co.*, 947 F.2d 1128, 1135 (4th Cir. 1991). Here, that "shield" should, at the very least, permit Plaintiffs' technical experts, Prof. John Weissman and Dr. Goranka Bjedov, to rely upon Google's internal analyses as one of multiple bases for their opinions about technical feasibility. *See Pioneer Corp. v. Samsung SDI Co.*, 2008 WL 11344761, at *6 (E.D. Tex. Oct. 2, 2008) (holding that expert may rely on settlement materials to form an opinion "when considered as one factor among many").

## CONCLUSION

For the reasons stated above, the Court should deny Google's motion to exclude all evidence (including testimony) and argument pertaining to settlement offers and negotiations, including Google's internal analyses of the technical feasibility of divesting AdX or open-sourcing DFP's final auction logic.

16

Dated: September 5, 2025

Respectfully submitted,

| | |
|---|---|
| ERIK S. SIEBERT<br>United States Attorney | JASON S. MIYARES<br>Attorney General of Virginia |

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
DAVID A. GEIGER
MATTHEW R. HUPPERT
DAVID M. TESLICKO
MICHAEL E. WOLIN

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

*Attorneys for the United States*

/s/ Tyler T. Henry
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

*Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia*