**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>     *Plaintiffs*,<br><br> vs.<br><br>GOOGLE LLC,<br><br>     *Defendant*. | No. 1:23-cv-00108-LMB-JFA |

**REPLY IN SUPPORT OF GOOGLE LLC'S MOTION *IN LIMINE* TO**
**<u>EXCLUDE EVIDENCE PROTECTED BY FEDERAL RULE OF EVIDENCE 408</u>**

## I.    INTRODUCTION

Plaintiffs' opposition sends the unmistakably clear message that settlement negotiations can be weaponized against a party, undermining the policy goal of Rule 408. As Google explained in its Motion, Rule 408 sets the default rule that offers, conduct, and statements made in connection with settlement negotiations are inadmissible. By "preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement." *Fiberglass Insulators v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988).

Google, in an effort to resolve various investigations and legal proceedings pertaining to its ad tech business, created internal analyses to assist with those settlement negotiations and offers. Mot. at 3-4. By Plaintiffs' own admission, Google's ad tech business and the relevant markets involve "sophisticated technological tools" handling a "complex series of transactions," which have "evolved" over time, Am. Compl. ¶¶ 3, 42, Dkt. 120. Google could not have seriously entered into, and continued, settlement negotiations without performing internal analyses. *See* C. Mueller & L. Kirkpatrick, 2 Federal Evidence § 4:57 (4th ed. 2025) (explaining that "particularly in the case of organizational parties, settlement talks could not normally go forward without undertaking internal reviews and discussions"). Nor should Plaintiffs be surprised by Google's Rule 408 argument given that Google has consistently represented that these internal settlement analyses relate to settlement negotiations, including in prior briefing. *See* Pls' Opposition ("Opp.") at 3-5. Indeed, Plaintiffs themselves have represented the same to this Court. The "public policy favoring the compromise and settlement of disputes," therefore, protects these analyses under Rule 408 to the same extent as any offer of compromise they informed, *Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 222 (4th Cir. 2020), as recognized by numerous courts, Mot. at 7-10.

Implicitly recognizing the weight of authority holding that Rule 408 applies to internal analyses, Plaintiffs offer a smattering of alternative arguments to try to override Rule 408's protections. Opp. 11-16. All of Plaintiffs' arguments should be rejected.

*First*, evidence is inadmissible under Rule 408(a) if it is offered for the improper purpose of proving or disproving the "the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Plaintiffs claim Rule 408(b)'s exceptions permit them, however, to offer Google's internal analyses for "another purpose"—i.e., to demonstrate technical feasibility. However, the Fourth Circuit construes "Rule 408(b) to exclude purposes ***inseparable*** from proving or disproving the validity or amount of the disputed claim." *Macsherry*, 973 F.3d at 225. Rule 408(b), therefore, does not apply here given that technical feasibility is "inseparable from the underlying validity" of Plaintiffs' requested relief. *Id.* And while Plaintiffs use buzzwords like "rebut" and "negate," Opp. at 13, their briefing, and prior arguments, demonstrate that they intend to try to use these materials for impeachment purposes.

*Second*, Plaintiffs argue that principles of "fundamental fairness" require the admission of Google's internal analyses because Google has put technical infeasibility at issue. Plaintiffs' argument presents a party with an impossible choice: put on a complete defense or protect settlement communications. Such an interpretation would "eviscerate Rule 408's protection and undermine its clear purpose." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 798 (6th Cir. 2007).

*Third*, Plaintiffs claim that Google's Motion *in limine*, requesting that the Court rule that settlement evidence is ***inadmissible***, is somehow foreclosed by Judge Anderson's ***discovery*** orders. Plaintiffs' reading finds no support in Judge Anderson's orders and is inconsistent with

his statements from the Bench. *E.g.* 6/20/25 Hr'g Tr. 29:20-23 ("Well, we are at a discovery phase now, not a use-at-trial phase. So we have to focus on the discoverability of the information, not the use of that information."). Google complied with Judge Anderson's order and permitted discovery, both fact and expert, of the internal analyses because discoverability does not dictate admissibility. Now, at the appropriate time before trial, Google is seeking a determination that these materials are inadmissible under the Federal Rules of Evidence.

*Lastly*, Plaintiffs argue that even if the Court determines that Rule 408 applies to the internal analyses, its experts should still be permitted to rely on this inadmissible evidence pursuant to Rule 703. However, allowing an expert to use settlement evidence through the back door of Rule 703 would render Rule 408 a nullity.

Therefore, the Court should grant Google's Motion because (1) Plaintiffs offer no argument or rebuttal to Google's request to exclude evidence of settlement offers and negotiations and (2) Google's internal analyses are entitled to Rule 408's protections.

## II.  ARGUMENT

### A.  Plaintiffs offer no response to Google's request that all argument and evidence regarding settlement offers and negotiations should be excluded.

Google's Motion sought exclusion of all evidence or argument regarding Google's settlement offers and negotiations. Mot. at 6-7. While Plaintiffs request that the Court deny Google's motion in full, they offer no argument in response to Google's request relating to settlement offers and negotiations. Plaintiffs' opposition instead focuses entirely on Google's internal analyses. Google requests that the Court grant this portion of Google's motion as uncontested, and prohibit Plaintiffs from introducing any evidence (including eliciting any testimony) or making any argument about Google's settlement offers or statements directly communicated to an adversary as part of those settlement negotiations. *E.g. Snodgrass v.*

*Richardson*, 2024 WL 1260571, at *7 (E.D. Va. Mar. 25, 2024) ("As an initial matter, by failing to respond to all but one of the defendants' arguments for dismissal, plaintiff has waived the uncontested grounds.").

### B.    Google's internal analyses are protected by Rule 408.

As explained in Google's Motion, the overwhelming weight of authority holds that Rule 408 excludes "work product, internal memos, and other materials created specifically for the purpose of conciliation, even if not communicated to the other party." *E.E.O.C. v. UMB Bank Fin. Corp.*, 558 F.3d 784, 791 (8th Cir. 2009); *see also Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010) (Rule 408's "protection extends to legal conclusions, factual statements, internal memoranda, and the work of non-lawyers and lawyers alike").

In response, Plaintiffs offer a single district court case expressing the minority view that Rule 408 only applies to statements and conduct "communicated to the other side."  *Blue Circle Atlantic, Inc. v. Falcon Materials, Inc.*, 760 F. Supp. 516, 522 (D. Md. 1991). *Blue Circle*'s holding rests on a single treatise published 45 years ago. *Id.* (citing Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5303 (1980)). The current version of that treatise now acknowledges that Rule 408 extends to "circumstantial evidence of compromise," including "internal records that reflect the calculations and evaluations that were behind the decision to enter into [a settlement] agreement." Wright & Miller, 23 *Federal Practice and Procedure: Evidence* § 5303 (2d. ed. 2025) (citing *UMB Bank*, 558 F.3d at 791 and *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1106-07 (5th Cir. 1981), which Google discusses in its Motion). Moreover, courts have since rejected *Blue Circle*'s interpretation of Rule 408. *See Affiliated Mfrs., Inc. v. Alum. Co. of Am.*, 56 F.3d 521, 529-30 (3d Cir. 1995) (rejecting *Blue Circle*'s "interpretation of Rule 408 as too broad" and finding that "*Blue Circle* overstated the meaning

of the treatise citation"); *Xcoal Energy & Res., LP v. Smith*, 635 F. Supp. 2d 453, 455, 455 n.2 (W.D. Va. 2009) (declining to follow *Blue Circle* by extending Rule 408 to internal documents).

In the alternative, Plaintiffs argue that Rule 408 cannot extend to Google's internal analyses because Google has not demonstrated that those analyses were "intended to be part of the negotiations for compromise." Opp. at 10 (quoting *Fiberglass*, 856 F.2d at 654). As an initial matter, Plaintiffs are wrong to suggest that applying Rule 408 to Google's internal settlement analyses "would be fodder for abuse." Opp at 10. Google is not seeking to "cloak any ordinary-course, internal document[s]" under Rule 408. *Id.* As Judge Anderson's rulings make clear, the internal analyses are ***not*** ordinary-course, internal documents; they are protected work product. *E.g.*, 6/15/23 Hr'g Tr. at 46:3-49:11 (Google's internal analyses connected "to particular issues having to do with ***trying to resolve***, address some concerns with ***ongoing investigations*** or remedies"); 5/30/25 Hr'g Tr. at 38:15-39:14 (holding that the internal analyses "fall within the broad umbrella of work product"). The fact that Google referred to these analyses as "remedy projects" and submitted evidence in the record that they were prepared for the purpose of assessing a "resolution" of the investigations and legal proceedings demonstrates that these were settlement documents. Mot. at 3-4.

Furthermore, Plaintiffs' argument is at odds with what they have previously represented to the Court. 6/20/25 Hr'g Tr. 21:4-7 (counsel for Plaintiffs arguing that the EC settlement materials are "essentially ***the cousin*** of the documents [internal analyses] Your Honor ordered to be produced three weeks ago");[1] Dkt. 1534 at 3 ("Google's factual statements to the EC about

---

[1] Judge Anderson also recognized that Plaintiffs were seeking the internal analyses Google used to prepare settlement proposals to the EC. 6/20/25 Hr'g Tr. 21:17-22 ("But, you know, the idea that you're now asking for the actual proposal that they have submitted to the European authority ***as opposed to any analysis that they did in order to come up with that proposal***, it's a different situation than I dealt with on the substantial need work product issue.").

divestiture feasibility, *presumably based in whole or in part on Google's internal analyses*.").[2] Plaintiffs' own brief demonstrates the direct connection between settlement negotiations and the internal analyses, including one of the exhibits that Plaintiffs argue ████████████████████████ ██████████████████████████ Opp at 14; *id.* at 6 (citing deposition testimony from Google witness explaining that information ████████████████████████████████ ██████.

Moreover, as disclosed in prior briefing, Google engaged in settlement negotiations with the European Commission and Plaintiffs.[3] Those negotiations with regulators occurred at various points in time over a ██████████████████████████████ The exhibits Google seeks to exclude with its motion[4] were all prepared during that period. And the evidence in the record confirms that the purposes of these analyses were to analyze a "possible resolution" of these investigations and legal proceedings. Declaration of Mara Boundy ¶¶ 6, 8, 9, 11 ("Boundy Decl."), Dkt. 1445-1. Therefore, these exhibits were "intended to be part of the negotiations for compromise." *Fiberglass*, 856 F.2d at 654.

Plaintiffs are also incorrect as a matter of law that Rule 408 does not apply to materials prepared before settlement discussions formally begin. As explained in Google's Motion, numerous courts apply Rule 408 to materials created "as part of preparations for compromise negotiations." Mot. at 9 (collecting cases). For example, in *Ramada*, the Fifth Circuit extended

---

[2] Plaintiffs' prior representations were not an educated guess or mere surmise. ████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

[3] *E.g.* Dkt. 1445 at 18; Dkt. 1539.

[4] Mot. at 2 n.2.

Rule 408 to a report prepared before settlement negotiations began and was intended to "function as a basis of settlement negotiations." 644 F.2d at 1106-07 ("because the report was a tool used in an unsuccessful settlement attempt" it was "inadmissible under Federal Rule of Evidence 408"); *see also Affiliated Mfrs*, 56 F.3d at 528-30 (extending Rule 408 to memorandum written before first settlement meeting). Moreover, Plaintiffs' single case, *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 784 (9th Cir. 2006), does not stand for the proposition that Rule 408 never applies to materials prepared before settlement discussions. There, the Ninth Circuit merely held that the admission of a memorandum prepared before settlement discussions "crystallize[d]" was not "reversible error." *Id.*

Therefore, considering the full record on these analyses and weight of authority, Google requests that the Court apply Rule 408 and exclude Google's internal settlement analyses.[5]

### C.    Plaintiffs intend to offer Google's internal analyses for improper purposes.

Plaintiffs do not seriously contest that Rule 408 extends to equitable relief. Opp. at 13. Moreover, Plaintiffs agree that evidence is inadmissible under Rule 408 if it is offered for the "improper purpose," Opp. at 11, of proving or disproving the "the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Despite this acknowledgement, Plaintiffs' motion makes clear that they intend to use Google's internal analyses in ways explicitly prohibited by Rule 408: (1) to prove that their remedy is feasible and thus able to effectively "restore competition" and (2) for impeachment.[6]

---

[5] As explained in its Motion, Google's motion in *limine* seeks exclusion of a subset of exhibits: PRX044, PRX045, PRX048, PRX049, PRX050, PRX051, PRX052, PRX055, PRX056, PRX059, and PRX060. Mot. at 2 n.3.

[6] Plaintiffs purport to claim that Google has somehow waived responding to their argument that Google's internal analyses are admissible pursuant to Rule 408(b). Opp. at 12 n.5. But waiver does not apply here for several reasons, including the fact that Google is not introducing a new legal argument (e.g. claiming the internal analyses are inadmissible under a separate Federal Rule of Evidence) and is in fact responding to the Rule 408(b) arguments raised by Plaintiffs. *E.g.*

1.    *Rule 408 extends to requests for equitable relief.*

"Rule 408 not only excludes offers of compromise used to disprove the validity of a claim but also excludes the same evidence used to disprove the availability of a remedy for a claim." *See Atmosphere Hospitality Mgmt. v. Shiba Investments*, 158 F. Supp. 3d 837, 848 (D.S.D. 2016). Even one of Plaintiffs' own cases extended Rule 408 to settlement negotiations related to an injunction. *Ball v. LeBlanc*, 881 F.3d 346, 354 (5th Cir. 2018) (observing the district excluded settlement negotiations "which would have formed the basis for the state to move to modify the injunction or enter a consent decree"). Moreover, reading Rule 408 so narrowly would result in the perverse outcome where a party seeking to settle both claims for damages and equitable relief would effectively forfeit its right to contest the claim for equitable relief. *See Atmosphere*, 158 F. Supp. 3d at 848 ("A contrary rule would discourage settlement negotiations if doing so would result in the inability to assert [a party's] full rights during trial if the dispute could not be resolved through those negotiations.").

2.    *Plaintiffs seek to offer Google's internal analyses to prove the validity of their claim that divestitures will "restore competition."*

Plaintiffs claim they seek to introduce Google's internal analyses "for the purpose of showing that" divesting AdX or open-sourcing DFP's final auction logic "*can* be taken" and not for the purpose of proving that the Court "*should*" take these measures. Opp. at 13. Plaintiffs' framing is a distinction without a difference. The dispute here is not whether divestiture of AdX

---

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 n.8 (D. Md. 2009) (noting courts have discretion to decline to consider arguments first raised in a reply brief where party did not have a "chance" or "opportunity" to respond).

or the "de facto" divestiture of open-sourcing DFP's final auction logic are literally impossible. Google has never made such a claim.[7]

Instead, the dispute is whether Plaintiffs' proposed remedies will restore competition and not harm competition and consumers in the relevant markets. And it is Plaintiffs who have the "heavy burden to warrant the radical structural remedy of a forced divestiture." *United States v. Google LLC ("Search")*, 2025 WL 2523010, at *57 (D.D.C. Sept. 2, 2025). In deciding whether Plaintiffs have met their heavy burden, the Court will likely weigh multiple factors, including the "logistical difficulty" of Plaintiffs' proposed remedies. *United States v. Microsoft*, 253 F.3d 34, 106 (D.C. Cir. 2001) ("One apparent reason why courts have not ordered the dissolution of unitary companies is logistical difficulty."); *Search*, 2025 WL 2523010, at *56 (denying plaintiffs' request for a divestiture of Google Chrome because it "would be incredibly messy and highly risky").

By their own admission, Plaintiffs seek to introduce Google's internal settlement analyses to "demonstrate the technical feasibility of Plaintiffs' remedies." Opp. at 12. In other words, Plaintiffs intend to introduce Google's internal analyses, in part, to meet their heavy burden that structural relief is warranted by showing that their remedies are not "highly risky," *Search*, 2025 WL 2523010, at *56, and do not present "logistical difficult[ies]," *Microsoft*, 253 F.3d at 106. In crafting the appropriate remedy, the Court "must be sensitive to remedies that risk substantially stifling technological innovation or impairing consumer welfare." *Search*, 2025 WL 2523010, at *31; *see also id.* at *56 (observing that even if Chrome "could somehow be re-created or made

---

[7] Plaintiffs' opposition omits the full quote from Google counsel at the May 2 hearing: "It is very likely completely impossible what they were talking about **without extreme devastation to everybody that interacts with the Internet**." 5/02/25 Hr'g Tr. 21:19-21. Counsel was not claiming that divestiture was literally impossible.

available to a new owner . . . the court is highly skeptical that a Chrome divestiture would not come at the expense of substantial product degradation and a loss of consumer welfare"). The Court here will necessarily have to weigh those risks, including whether Plaintiffs' proposed divestitures, including a proposed open-sourcing, will take a lengthy amount of time to implement, causing massive customer disruption and decreased innovation.

Courts, including the Fourth Circuit, recognize that "care should be taken that an indiscriminate and mechanistic application of Rule 408(b)'s exception doesn't eviscerate Rule 408(a)'s protection and undermine its clear purpose." *Macsherry*, 973 F.3d at 225. Therefore, the Fourth Circuit, following multiple circuit courts, construes "Rule 408(b) to exclude purposes ***inseparable*** from proving or disproving the validity or amount of the disputed claim." *Id.*; *see also Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966-67 (8th Cir. 2011) (the "policy concerns underlying Rule 408 are strongly implicated where an offer of compromise is used to prove an element of the claim the compromise offer was meant to settle"). In *Macsherry*, the Fourth Circuit reversed the trial court and remanded the case for a new trial where the district court admitted settlement evidence that was "inseparable from the underlying validity of that same claim." 973 F.3d at 225; *see also Weems*, 665 F.3d at 967-68 (remanding case for new trial where the "district court violated the policy and exclusionary provision of Rule 408 by" admitting evidence that was "inseparable from the issue of liability").

Here, the technical feasibility of divesting AdX and open-sourcing DFP's final auction logic is "inseparable" from the underlying "validity" of Plaintiffs' requested remedies. *See Stockman*, 480 F.3d at 798 (evidence of a compromise offer to show a failure to mitigate damages was inadmissible under Rule 408(b)because such a purpose "goes to the amount of the claim"); *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989)

(affirming exclusion pursuant to Rule 408 of settlement documents offered to satisfy statute of frauds since that "was the necessary first step to proving, ultimately, the validity of [plaintiffs'] claims of breach of contract" since the two issues "were so closely intertwined").

Moreover, Plaintiffs offer no legal authority for the proposition that "feasibility" is a permitted use carved out by Rule 408. It is not one of the enumerated purposes spelled out in the rule. *See Macsherry*, 973 F.3d at 224-25 ("After all, the other purposes mentioned thereunder, 'such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution,' Fed. R. Evid. 408(b), are far removed from the purposes barred under Rule 408(a)."). And the rules are clear when feasibility is an exception. *See* Fed. R. Evid. 407 (court may admit evidence of subsequent remedial measures for another purpose, including "the feasibility of precautionary measures"). Nor have courts identified feasibility as constituting "another purpose" under Rule 408(b). *See Indus. Communications & Elecs., Inc. v. Alton*, 2012 WL 4343759, at *15 n.19 (D.N.H. Sept. 21, 2012) (excluding drawing that "amounted to evidence of compromise offers or negotiations," holding that party "cannot use evidence that the parties began carrying out the settlement" to prove the existence of "feasible alternative").

Plaintiffs' cases also offer little and ultimately ineffectual support for their broad expansion of Rule 408(b). *Ball v. LeBlanc*, 881 F.3d 346, 354 (5th Cir. 2018) is limited to its specific facts. There, the district court—as part of its "ongoing supervisory power over its injunction" to prevent constitutional violations—only admitted a narrow subset of settlement-related evidence: "relief measures" implemented by the state that affected the constitutional rights of prisoners. *Id.* (noting that the district court excluded any evidence of settlement negotiations). *Mission Viejo*, a decision from the Central District of California involving a commercial lease, is

likewise inapposite as Google is not contending that Plaintiffs' proposed divestitures are literally impossible. *Mission Viejo Florist, Inc. v. Orchard Supply Co.*, 2016 WL 9275407, at *8 (C.D. Cal. Nov. 17, 2016) (settlement offer used to show that plaintiff's damages were not "incalculable"). Furthermore, *Mission Viejo* affirms the general principle that settlement evidence "may not be used to prove or disprove" the validity of a claim as Plaintiffs seek to do here. *Id.*

Because Plaintiffs are offering Google's internal analyses to prove that their proposed remedies are technically feasible, the internal analyses are inadmissible because they are inseparable from the purposes prohibited by Rule 408(a).

3. *Plaintiffs seek to offer Google's internal analyses for "impeachment purposes."*

The plain language of Rule 408(a) bars the use of settlement materials to "impeach by a prior inconsistent statement or a contradiction." Plaintiffs' argument that they do not seek to use Google's internal analyses to "impeach by a prior inconsistent statement or a contradiction" is undermined by the opening sentence of their brief. Opp. at 1 (arguing, incorrectly, that Google's internal analyses show that Plaintiffs' proposed remedies ████████████████████████ ██████████████████████████). As an initial matter, these materials do not even constitute impeachment evidence. For example, as several Google witnesses made clear,

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

Nonetheless, Plaintiffs make plain, they intend to examine (and try to impeach) Google witnesses about internal analyses that, according to Plaintiffs (again, incorrectly) "came to the opposite conclusion" regarding technical feasibility. Opp. at 14. Plaintiffs' intention to try to impeach Google witnesses with internal analyses is further supported by arguments Plaintiffs made during discovery. For instance, Plaintiffs argued that the "likely impeachment value" of the internal analyses justified discovery of Google's work product. Dkt. 1447 at 8.[9]

Indeed, per their own Opposition, Plaintiffs will try to use the internal analyses to impeach testimony of Google witnesses regarding ██████████████████████████████████████ ██████████████████████████████ for purposes of settlement negotiations. Rule 408(a) clearly forbids using these materials in this way. *See* 23 Fed. Prac. & Proc. Evid. § 5305 (2d ed.) ("To clarify the application of [Rule 408(a)], language was added in 2006 to make compromise evidence inadmissible 'to impeach through a prior inconsistent statement or contradiction.' This means that a party can say 'X' in settlement negotiations and testify 'not-X' at trial without fear of contradiction.").

---

[8] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[9] Relatedly, Plaintiffs made a similar argument while seeking Google's settlement communications with the European Commission, arguing they needed the materials for "impeachment purposes." 6/20/25 Hr'g Tr. 23:7-9.

The cases cited by Plaintiffs do not support their intended use of Google's internal analyses. As discussed, *supra*, Plaintiffs are intending to use Google's internal analyses to rebut a point related to the validity of the claim, i.e., whether their proposed remedies should be entered. *See Stack v. Abbott Labs., Inc.*, 2016 WL 6304729, at *5 (M.D.N.C. Oct. 27, 2016) (standing for the unremarkable position that evidence may be admitted under Rule 408 "to prove or rebut some other point unrelated to" the validity of a claim). Google does not plan to elicit any impeachment testimony at trial pertaining to bias and relating to the internal settlement analyses. *United States v. Patel*, 485 F. App'x 702, 718 (5th Cir. 2012) (holding evidence of settlement agreements admissible where defendant introduced evidence of "bias impeachment"). Nor is Google making any arguments about Plaintiffs or their conduct during settlement negotiations. *United Prop. & Cas. Ins. v. Couture*, 639 F. Supp. 3d 590, 604 (D.S.C. 2022) (permitting evidence of a settlement demand where plaintiff argued it was "necessary to rebut claims that UPC breached a duty under its insurance contract, as well as to negate allegations that UPC filed the declaratory judgment action 'for nefarious reasons'").

Accordingly, Plaintiffs' attempt to skirt around Rule 408(a)'s clear prohibition on impeachment by claiming they intend to use the evidence to "rebut" or "negate" Google's claims of technical infeasibility should be rejected. *E.g.*, *Oster v. Huntington Bancshares Inc.*, 2017 WL 3208620, at *6 (S.D. Ohio July 28, 2017 (granting motion *in limine* where defendant sought to use statement from settlement material to "contradict Plaintiff's, and her expert's, expected contrary statements" because offering that statement "as 'rebuttal evidence' expressly contradicts Rule 408's prohibition on admitting settlement discussions 'to impeach by a prior inconsistent statement or a contradiction'"); *Hammer v. Residential Credit Sols., Inc.*, 2015 WL 7776807, at *28 (N.D. Ill. Dec. 3, 2015) (rejecting defendant's argument "that it needed the [settlement] evidence to rebut plaintiff's argument").

In sum, although claiming to intend to use Google's internal analyses for "another purpose" pursuant to Rule 408(b), Plaintiffs' own statements show that they intend to try to use those analyses for improper purposes. Plaintiffs' reading of Rule 408(b), if accepted, would "eviscerate Rule 408(a)'s protection and undermine its clear purpose." *Macsherry*, 973 F.3d at 225. As a result, Rule 408 bars admission of Google's internal analyses.

### D.    Judge Anderson's orders do not address admissibility, only discoverability, of Google's internal analyses.

Plaintiffs incorrectly try to stretch Judge Anderson's discovery rulings to reach the issue of admissibility. Judge Anderson made clear from the Bench that he was not addressing admissibility: "Well, we are at a discovery phase now, not a use-at-trial phase. So we have to focus on the discoverability of the information, not the use of that information." 6/20/25 Hr'g Tr. 29:20-23. And as Plaintiffs themselves argued, "Rule 408 is 'merely a Rule of Evidence' that does not govern discoverability." Dkt. 1447 at 14 (quoting *David v. En Pointe Prods., LLC*, 2023 WL 5867424, at *5 (E.D. Va. Sept. 11, 2023)); Dkt. 1498 at 13 ("Rule 408 governs admissibility of evidence, not discoverability." (collecting cases)). Despite Plaintiffs' argument to the contrary, Google also never argued that Rule 408 barred discovery,[10] only pointing out that Plaintiffs dogged pursuit of these materials seemed misplaced given that Rule 408 would likely bar their admission into evidence at trial.[11] The cases Google relied on in opposing discovery of both the

---

[10] While Plaintiffs purport to claim Google relied on Rule 408 in the deposition of Mr. Tim Craycroft, the record demonstrates the attorney was referencing "the heightened burden that the plaintiffs carry [] for discovery," and referenced the ongoing discovery dispute before Judge Anderson. Pls' Ex. 3 at 59:7-13.

[11] Dkt. 1445 at 20 ("Plaintiffs also fail to explain how they would even be able to use any such 'contrary' testimony (to the extent that it exists) at trial, because Rule 408 is clear that evidence from settlement negotiations is 'not admissible . . . to impeach by a prior inconsistent statement or a contradiction.'"); Dkt. 1494 ("Plaintiffs' reasons for continuing to pursue these materials are unclear, especially when Federal Rule of Evidence 408 bars their admission into evidence.").

internal analyses and EC settlement materials likewise acknowledged that Rule 408 did not apply to discovery. *E.g.*, *CHS Inc. v. ABM Healthcare Support Servs., Inc.*, 2021 WL 149861, at *1 (W.D. Va. Jan. 15, 2021) ("Courts within the Fourth Circuit decline to apply Rule of Evidence 408 to discovery requests, finding that relevance, not admissibility, is the proper standard."). Therefore, to obtain discovery of these materials Plaintiffs did not need to show materials related to settlement negotiations were admissible; instead, they had to meet a "heightened *relevancy* standard for discovery." *Id.* at *2.

With this context, it is unsurprising that Judge Anderson's orders in this case are not based on Rule 408 and do not purport to make any admissibility decisions. Dkts. 1450, 1548. As Judge Anderson made clear at the June 20th hearing addressing Plaintiffs' motion to compel the EC settlement materials, the issue was whether settlement materials were *discoverable*, leaving it for this Court to decide whether those materials were ultimately admissible at trial. *See* 6/20/25 Hr'g Tr. 29:20-23. Nor was Judge Anderson's finding of a "substantial need" equivalent to an admissibility determination. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party *may not discover* documents and tangible things that are prepared in anticipation of litigation . . . . those materials *may be discovered* if: . . . . the party shows that it has *substantial need* for the materials."). Because Judge Anderson addressed only the discoverability, not admissibility, of the internal analyses, the Court's rulings did not draw "lines around what materials would be available" at trial. Opp. at 15.

Recognizing that Judge Anderson permitted *discovery* of a subset of Google's work product, Google appropriately allowed Plaintiffs to question Google witnesses about the documents during depositions. Opp. at 7. Plaintiffs provide no support for their argument that Google somehow waived its right to object to admissibility by complying with Judge Anderson's

discovery orders. *See* Rule 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Plaintiffs strangely accuse Google of failing to appeal Judge Anderson's order, implicitly arguing that Google has now somehow forfeited its right to object to the admissibility of the internal analyses. But since Judge Anderson did not rule that the internal analyses were admissible, Plaintiffs' argument that Google did not timely appeal Judge Anderson's order is a non sequitur. Google cannot appeal "a defect in the order" that does not exist. *See* Fed R. Civ. P. 72(a). It is Plaintiffs who made the strategic decision to rely on these internal settlement analyses despite Google's explicit statements that it would argue that these analyses are inadmissible under Rule 408. Google is not relitigating Judge Anderson's orders; it is raising its Rule 408 objections at the appropriate time.

### E.     Google's technical feasibility arguments have not "opened the door" to its internal settlement analyses.

As an argument of last resort for admissibility, Plaintiffs attempt to read a "fundamental fairness" exception into Rule 408. Plaintiffs argue Google has forfeited Rule 408's protections and "opened the door" to the admission of its internal analyses because it contests the technical feasibility of Plaintiffs' proposed divestitures. Plaintiffs' "fundamental fairness" argument would result in a party losing Rule 408's protection anytime it raised an argument in litigation that was related to a party's settlement offers and negotiations.

As the Sixth Circuit explained in *Stockman*, where "a party has raised an issue going to the validity or amount of a claim, that is insufficient for admitting settlement offers that go to the same issue because to do so violates Rule 408 on its face." *Stockman*, 480 F.3d at 798. In *Stockman*, the district court erred in finding that the defendants "'opened the door' to the inclusion of the settlement evidence by offering evidence of" plaintiff's "failure to mitigate." *Id.* The Sixth

Circuit reversed and remanded for a new trial, reasoning that any different interpretation would "eviscerate Rule 408's protection and undermine its clear purpose" as it "would be unreasonable to expect a party to ever make a settlement offer if doing so forced it into choosing between conceding one or more elements of liability or damages or having the offer admitted against it." *Id.* at 798-99.

Here, it would likewise be unreasonable for Google, or any other party, to prepare analyses for settlement purposes if doing so would force it to choose between admission of its settlement analyses or conceding an element of the opposing side's claim. Plaintiffs' argument sends the unmistakable message that Google would have been better off never preparing for, or entering into, settlement negotiations in order to avoid its settlement efforts being weaponized against it in litigation. That message directly undermines the "public policy favoring the compromise and settlement of disputes." *Macsherry*, 973 F.3d at 222.

Plaintiffs' attempt to argue that technical infeasibility arguments are akin to raising an "advice-of-counsel defense" is unpersuasive and should be rejected. Opp. at 14. An advice-of-counsel defense is an explicit affirmative defense that can be used, in Plaintiffs' example, to "avoid liability under the" False Claims Act. *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 381 (4th Cir. 2015). "When a party raises an advice of counsel defense, however, all advice on the pertinent topic becomes fair game." *Id.* (Wynn, J., concurring). That is a special circumstance and far removed from the posture of this case.

Plaintiffs' vitriolic language aside, Google is not making this motion to eliminate large swaths of the factual record. Opp. at 6-7. Rule 408's promised protections encouraged Google to prepare for and enter into settlement negotiations. It is unfair to now criticize Google for trying to avail itself of those protections. As discussed, *supra*, Google complied with Judge Anderson's

order and permitted discovery, both fact and expert, of the internal analyses because discoverability does not dictate admissibility. Now, at the appropriate time before trial, Google is seeking a determination that these materials are inadmissible under the Federal Rules of Evidence.

Finally, for the avoidance of any doubt, Google is not seeking a one-sided ruling. Google is not seeking to selectively rely on portions of these internal analyses; rather Google requests that the Court find that the internal analyses are completely inadmissible for either side. None of the internal analyses are on Google's exhibit list for trial. And during the examination of any witness, if the Court precludes Plaintiffs from admitting the internal analyses, Google will not introduce, reference, or in any way allude to these internal analyses.

The Court should deny Plaintiffs' request to read in a "fundamental fairness" exception into Rule 408.

### F.    Plaintiffs' experts should not be permitted to rely on Google's internal settlement analyses as that would "effectively vitiate Rule 408's protections."

Plaintiffs' argument that its experts should be permitted to continue to rely on Google's internal settlement analyses can quickly be rejected. As multiple courts recognize, a party cannot be permitted to use Rule 703 as a backdoor to admit evidence barred by Rule 408. *E.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL 794328, at *9 (N.D. Cal. Feb. 25, 2014) ("Allowing a party to circumvent Rule 408 by admitting a damages number based on a settlement offer through an expert contravenes this central public policy of favoring settlement of disputes.").

In *Lyondell*, the Fifth Circuit rejected the argument that a party's expert was "entitled to rely" on a report prepared for settlement negotiations because they failed to "explain how an expert's use of settlement evidence would not effectively vitiate Rule 408's protections altogether." 608 F.3d at 300. So too is the case here as Plaintiffs fail to demonstrate how their experts' use of these settlement materials would not contravene the protections and policy of Rule

408. Therefore, Plaintiffs' experts should not be permitted to rely on Google's internal settlement analyses.

## III.    CONCLUSION

Google's internal analyses, which were prepared for settlement purposes, should be protected under Rule 408 in accordance with the "public policy favoring the compromise and settlement of disputes." *Macsherry*, 973 F.3d at 222.

Dated: September 10, 2025

Eric Mahr (*pro hac vice*)
Andrew Ewalt (*pro hac vice*)
Tyler Garrett (VSB # 94759)
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

Justina K. Sessions (*pro hac vice*)
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Daniel Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
55 2nd Street
San Francisco, CA 94105
Telephone: (415) 490-2000
Facsimile: (415) 490-2001
dbitton@axinn.com

Bradley Justus (VSB # 80533)
AXINN, VELTROP & HARKRIDER
LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
bjustus@axinn.com

*Counsel for Defendant Google LLC*

Respectfully submitted,

*/s/ Craig C. Reilly*
Craig C. Reilly (VSB # 20942)
THE LAW OFFICE OF
 CRAIG C. REILLY, ESQ
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-5355
craig.reilly@ccreillylaw.com

Karen L. Dunn (*pro hac vice*)
Jeannie S. Rhee (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Erica Spevack (*pro hac vice*)
Bryon P. Becker (VSB #93384)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004-2637
Telephone: (202) 240-2900
kdunn@dirllp.com