# EXHIBIT 9

# REDACTED

```
                                                          1
 1      IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
 2              ALEXANDRIA DIVISION
                     - - -
 3

     UNITED STATES, et al.,   :
 4                            :   NO.
          Plaintiffs,          :  1:23-cv-00108
 5                            :   -LMB-JFA
          v.                  :
 6                            :
     GOOGLE LLC,              :
 7                            :
          Defendants.         :
 8

 9          - HIGHLY CONFIDENTIAL -

10                  - - -

11              August 28, 2025

12                  - - -

13              Videotaped deposition of
     JASON NIEH, Ph.D., taken pursuant to
14   notice, was held at the office of Dunn
     Isaacson Rhee, 401 9th Street NW, 8th
15   Floor, Washington, D.C., beginning at
     9:03 a.m., on the above date, before
16   Michelle L. Ridgway, a Registered
     Professional Reporter, Certified
17   Shorthand Reporter, Certified Realtime
     Reporter, Certified Court Reporter, and
18   Notary Public.

19
                     - - -
20

21

22
```

Case 1:23-cv-00108-LMB-JFA   Document 1733-5   Filed 09/12/25   Page 3 of 9 PageID# 110818

United States vs.  Highly Confidential  Jason Nieh, Ph.D.
Google                                   August 28, 2025

Page 174

1  Q.  Okay.  In addition to those
2  hourly billing rates, do you charge
3  anything else in connection with your
4  work on Google matters, such as work
5  performed by support staff?
6  A.  I don't charge for work
7  performed by support staff.
8  Q.  Okay.  And do you receive
9  any compensation in connection with work
10 performed by others in connection with
11 your work for Google?
12 A.  Not that I'm aware of.  I
13 don't think so.
14 Q.  Okay.  You described
15 yourself in the opening pages of your
16 first expert report, which we've marked
17 as Exhibit 1, as an independent expert.
18      What did you mean by the
19 word "independent" in your report, in
20 that context?
21 A.  Sorry.  Where are you
22 referring to?

Page 175

1  Q.  If you look under --
2  Exhibit 1, Page 3, Paragraph 8.  You
3  say, "I have been asked by counsel for
4  Google to provide my opinions as an
5  independent technical expert."
6       Then on Page 4,
7  Paragraph 12, you write, "I understand
8  my duty as an independent expert," and
9  you refer to "expertise in an
10 independent matter."
11      You refer to the duty as
12 overriding any obligation to any party
13 retaining you as an independent expert.
14 And then you say this report reflects
15 your own independent views.
16      So by my count, you used
17 the phrase "independent" five times in
18 those opening pages of your report.  I'm
19 just asking what you mean by
20 "independent" in that context.
21 A.  Sure.
22      So, "independent,"

Page 176

1  generally, in this context, means I'm
2  speaking as my -- in my role as my --
3  as -- as -- in offering my expertise
4  from my independent perspective.
5  Q.  Independent from what?
6  A.  Independent from the
7  opinions, if you will -- whatever
8  anybody else's opinion is, if you will.
9  I try to offer it from my own
10 perspective, independent of -- and do my
11 own evaluation, if you will, of the --
12 of the materials that I consider and
13 provide my own views, as opposed to if
14 somebody else were to tell me, well,
15 this is what you should say, then I
16 won't necessarily -- then I would have
17 to evaluate whether or not that makes
18 sense.  And if it doesn't make sense to
19 me, then that's not something that I'm
20 going to do.
21      But I want to be able to
22 provide my expertise and my opinions in

Page 177

1  a way that I'm able to stand behind them
2  because that's my view, my own view.
3  Q.  So when you write that you
4  have a duty as an independent expert,
5  you mean your duty as an expert that's
6  offering your own opinions and not
7  someone else's opinions; is that right?
8  A.  Yeah.  Loosely speaking,
9  that's what I'm intending.  That's
10 correct.
11 Q.  You also write, "I confirm
12 that I have no conflict of interest."
13      How are you defining
14 "conflict of interest" in that sentence?
15 A.  I think the conflict of
16 interest is sort of broadly speaking.
17 But, for example, there's no -- say, for
18 example, my compensation on the
19 assignment is not contingent on any --
20 on any specific outcome or view that I
21 express with respect to the work that
22 I'm doing.

Page 178

1        So that's what I mean by --
2   my wife is not a director, board
3   director at Google, for example.  At
4   least not as far as I know of.
5        So, generally speaking,
6   that's what I'm referring to as conflict
7   of interest.
8        Q.   Okay.  But obviously you
9   are being compensated for Google for
10  your time on this matter, correct?
11       A.   Correct.
12            MR. BITTON:  Objection to
13       form.
14            THE WITNESS:  I am -- I am
15       being compensated for my -- for
16       the time that I spend on this
17       matter, as is generally the case
18       when I do work.
19  BY MS. WOOD:
20       Q.   Okay.  Now, Exhibit 1,
21  Appendix B, you have a list of materials
22  relied upon.  And different folks do

Page 179

1   this differently.
2        I want to understand how
3   you understand the material that's
4   reflected in Appendix B.
5        When you say, "Materials
6   Relied Upon," are these all the
7   materials that you considered or just
8   the ones that you relied on for purposes
9   of reaching your opinions in this case?
10       A.   Appendix B, which refers to
11  materials relied upon, are -- are the
12  materials that I relied upon for the
13  opinions that I have expressed in my
14  reports.
15       Q.   Okay.  And Appendix B to
16  Exhibits 1, 2, and 3, collectively,
17  retain -- contain a reference, all the
18  materials that you relied upon to reach
19  your opinions in this case, correct?
20       A.   I'm sorry.  I don't follow
21  your question.  So maybe you can --
22       Q.   So each of your reports

Page 180

1   have been marked as Exhibits 1, 2, and
2   3.
3        A.   Okay.
4        Q.   Each of them has an
5   Appendix B, Materials Relied Upon,
6   correct?
7        A.   Correct.
8        Q.   And I'm asking is it the
9   case that every material that you relied
10  upon for purposes of rendering your
11  opinions in this case are listed in
12  either Appendix B of Exhibit 1,
13  Appendix B of Exhibit 2, or Appendix B
14  of Exhibit 3?
15       A.   That was certainly the
16  goal.  That's what I tried to do.
17       Q.   And did you separately --
18  strike that.
19       On Page 11 of Appendix B in
20  Exhibit 1, you have a note that's in
21  bold and italics and with two asterisks
22  that says, "I also relied on any other

Page 181

1   documents and materials cited in this
2   Report, but not mentioned in this
3   Appendix B."
4        What was the distinction
5   between those materials that got the
6   vaulted status of being included in
7   Appendix B -- I'm being a little
8   cheeky -- versus just otherwise being
9   cited in your report?
10       How did you decide which
11  was which?
12            MR. BITTON:  Objection to
13       form.
14            THE WITNESS:  I'm not sure
15       about vaulted status, per se;
16       however, my goal was to have all
17       the materials that I relied upon
18       listed in Appendix B.
19            But in some -- in a few
20       cases there may have been errors
21       of omission.  And, as a result
22       of that, I didn't want to -- and

Page 182

1        in those cases, I just wanted to
2        indicate that there -- there may
3        have been, you know, citations
4        that are described in the rest
5        of the report, and clearly those
6        citations also indicate things
7        that I relied upon.
8   BY MS. WOOD:
9        Q.   Okay.  So it's sort of a
10  catchall.  That if you didn't otherwise
11  include it, certainly, if it's cited in
12  your report, you're relying on it; is
13  that fair?
14       A.   That's correct.  Yes.
15       Q.   Okay.  How did you
16  determine -- strike that.
17            I assumed that you reviewed
18  a broader set of materials than the
19  materials that you ended up relying on
20  for purposes of reaching your opinion.
21            Is that a fair assumption?
22       A.   That is correct.

Page 183

1        Q.   And, first, let's start
2   with what materials did you have access
3   to review in connection with your work
4   on this matter?  What materials were you
5   provided?
6        A.   Well, I mean, if we turn
7   to, I think, the beginning of my report,
8   I discussed in the methodology
9   section --
10       Q.   What page are you on?
11       A.   Page 4.
12       Q.   Yes.
13       A.   So that I reviewed, for
14  example, you know, the notice of
15  proposed remedies, technical
16  documentation and source code produced
17  in this case, interrogatory responses,
18  testimony taken at depositions, and
19  other documents produced in this
20  litigation, as well as a wide variety of
21  public documentation that was available.
22       Q.   Well, this doesn't quite

Page 184

1   answer my question.  Let me -- let me
2   try it this way.
3            You refer to testimony
4   provided at depositions taken in this
5   case.  Were you given access to all
6   depositions taken in this case, whether
7   it was liability phase or remedies
8   phase?
9        A.   So as far as I know, I was
10  given access to everything that I needed
11  to -- to render the opinions that I
12  provided in my reports.
13       Q.   Who decided whether you
14  needed something for purposes of
15  rendering an opinion?
16            MR. BITTON:  Just as a
17       caution, I'm just going to
18       instruct the witness not to
19       reveal communications with
20       counsel or support.
21            Otherwise, you can answer
22       that question.

Page 185

1   BY MS. WOOD:
2        Q.   Well, I don't want you to
3   reveal anything you said to your
4   lawyers.  I'm not trying to -- to invade
5   that privilege.
6            What I'm asking -- or the
7   stipulation between the parties on that
8   subject.
9            What I'm asking is how did
10  you get the materials?  Did the lawyers
11  give you the materials?  You can just
12  answer that yes/no, without saying
13  anything about your communications with
14  them.
15       A.   So in some cases lawyers
16  provided me with materials but not in
17  all cases.
18       Q.   Okay.  And with respect to
19  the depositions that you reviewed, were
20  there any depositions that -- other than
21  the ones listed in Appendix B, or
22  otherwise referenced in the reports,

Page 186

1  that you did review but didn't rely on?
2        A.    I reviewed a lot of
3  material in this case.  I don't remember
4  every deposition that I reviewed.  It is
5  certainly possible, and likely, that I
6  reviewed depositions that may not be
7  listed here, because I considered them
8  but ended up not relying on them.
9        Q.    Do you -- in terms of order
10 of magnitude, there are 15 deposition
11 transcripts referenced -- there are 14
12 on -- in Exhibit 1.  And I think
13 Mr. Wolf is listed in one of the
14 subsequent reports.
15             So by my count, you
16 reviewed 15 deposition transcripts.
17 There were many multiples of that
18 depositions taken.
19             So what I'm trying to
20 understand is were you given access to
21 all of the depositions that were taken
22 in the liability phase and the remedies

Page 187

1  phase of this matter, or were you only
2  given access to those that someone else
3  thought were relevant to your opinions?
4        A.    I was not only given access
5  to depositions that someone else thought
6  was relevant to my opinions.
7              But with respect to the
8  other question, you're asking me was I
9  given access to all depositions.  I
10 don't even know how to -- I don't know
11 how to say -- how do I -- how do I
12 phrase this?
13       Q.    It's usually best if you
14 just say it.
15       A.    I don't know if I -- I
16 suspect it's not all, but I don't know
17 what "all" is.  I guess that's my
18 answer, right?
19       Q.    Okay.
20       A.    I was given access to
21 whatever -- whatever was produced for
22 sure that -- that -- I don't know how to

Page 188

1  do this, given all the instructions.  My
2  apologies.
3              But it was not just
4  whatever else somebody told me, here
5  is -- here is stuff, and you can see
6  them only.
7        Q.    Okay.  So, for example,
8  this list of deposition transcripts
9  is -- consists of two-thirds of the
10 deposition transcripts you reviewed were
11 of Google employees.  I can just
12 represent that math to you, because
13 there were 10 out of 15 that were Google
14 employees.
15             Do you know how many third
16 parties were deposed in connection with
17 this case, and do you know why -- how
18 many third-party deposition transcripts
19 you reviewed?
20             MR. BITTON:  Objection to
21       form.
22 BY MS. WOOD:

Page 189

1        Q.    Meaning, parties not --
2  individuals not employed by Google.
3              MR. BITTON:  Objection to
4        form.
5              THE WITNESS:  I do not
6        know how many third parties were
7        deposed in this case.
8  BY MS. WOOD:
9        Q.    Okay.  And did you ask to
10 see the deposition transcripts of all
11 the third parties that were deposed in
12 this case?
13             MR. BITTON:  I'm going to
14       instruct the witness not to
15       reveal any communications with
16       counsel or support.
17             MS. WOOD:  Well, I'm not
18       asking about the communication
19       itself.
20 BY MS. WOOD:
21       Q.    I'm asking about the
22 materials you had access to for purposes

Page 190

1  of arriving at your opinion.
2         And I just want to know if
3  you had access -- maybe you can answer
4  it. But if you had access to all the
5  depositions or only some.
6         MR. BITTON: Just to
7     clarify the instruction. You
8     can't reveal communications, but
9     you can answer what you had
10    access to.
11    I think that's the
12    distinction I'm trying to draw
13    here.
14    THE WITNESS: I had access
15    to what was -- what I needed to
16    for doing my reports. I don't
17    know if I can represent --
18    I'm -- if I had to guess, I
19    certainly didn't read all the
20    depositions. I don't know if
21    there were some that I didn't
22    have access to.

Page 191

1     So I hope that answers
2     your question.
3  BY MS. WOOD:
4     Q.   Well, I guess I'm not clear
5  on how you know you had access to what
6  you needed if you don't know what you
7  didn't get.
8         MR. BITTON: Objection to
9     form.
10 BY MS. WOOD:
11    Q.   How do you know you had
12 access to what you needed if you don't
13 know whether you got all the material
14 that was available?
15    A.   Because I produced three
16 reports, and I expressed the opinions
17 that I had in the three reports.
18 Certainly, that is based on the material
19 that I relied upon.
20        I certainly had access to
21 more material than what I relied upon,
22 because there were other materials that

Page 192

1  I also considered. And that was
2  sufficient for me to substantiate the
3  opinions that I expressed in my three
4  reports.
5         And so that's what I mean
6  by I had access to what was necessary
7  for me to write my reports.
8     Q.   Okay. So your
9  definition --
10        MR. BITTON: Counsel,
11    we're more -- we're well over an
12    hour, so let's take a break.
13 BY MS. WOOD:
14    Q.   Your definition of what you
15 needed is --
16        MR. BITTON: Counsel, I
17    asked -- I requested a break,
18    and you're just ignoring me.
19        MS. WOOD: We are in the
20    middle of a -- I can ask one
21    more question. Can you wait for
22    a break for me to ask one more

Page 193

1  question?
2         MR. BITTON: I asked for a
3  break. I guess you're not
4  accommodating that courtesy.
5         MS. WOOD: Of course I'm
6  accommodating the break, but I
7  think you're interrupting --
8         MR. BITTON: Second time
9  you ignored me when I asked
10 that, counsel.
11        MS. WOOD: That is not
12 true. I asked the witness last
13 time, and when the witness said
14 yes, I said absolutely.
15        I'd like to finish this
16 line of examination. I don't
17 think that's in any way
18 unorthodox or inappropriate.
19        MR. BITTON: Counsel, last
20 time and this time when I asked
21 the question, you kept on asking
22 your questions, and you

Page 286

1  opinions in this matter, correct?
2       A.   Exhibit 4 is material that
3  I relied on as part of the opinions that
4  I've expressed in my reports.
5       Q.   Okay.  And Exhibit 4 has a
6  title at the top, Slaughter and May.
7            Do you see that?
8       A.   I see Slaughter and May at
9  the top of Exhibit 4.
10      Q.   And Slaughter and May is
11 the law firm that retained you in
12 connection with the European Commission
13 matter, correct?
14      A.   Slaughter and May is one of
15 the law firms that retained me as part
16 of my work in the European Commission
17 matter.
18      Q.   And for what purpose did
19 you rely -- what aspects of this
20 document did you rely upon in reaching
21 your opinions in this case?
22      A.   My recollection is that

Page 287

1  Dr. Bjedov presented some discussion of
2  timeframes in relationship to this
3  document, and as part of that, given
4  that she presented that relation to the
5  document, my report responds to some of
6  her claims.
7       Q.   Well, you understand that
8  you relied on this document and listed
9  this document in your Materials Relied
10 Upon before -- on or before July 7,
11 2025; isn't that right?
12      A.   Correct.
13      Q.   And as of July 7, 2025, you
14 weren't aware of Dr. Bjedov's report,
15 correct?
16      A.   That is correct.
17      Q.   So you relied on this
18 document, in your own report, to reach
19 your own conclusions as of July 7, 2025,
20 correct?
21      A.   So it was certainly the
22 case that I tried to list my -- the

Page 288

1  materials that I relied upon, a variety
2  of materials that I relied upon.
3            I, in some cases, may have
4  been conservative in terms of the list
5  of documents that I provided, but it is
6  something that I certainly considered as
7  part of my analysis, prior to July 7th.
8       Q.   Well, we talked earlier
9  today, and I asked you specifically what
10 you meant by "materials relied upon,"
11 and you explained those were materials
12 that you relied upon as distinct from
13 materials that you considered, right?
14           MR. BITTON:  Objection to
15      form.
16 BY MS. WOOD:
17      Q.   Do you recall that?
18      A.   Yes, I do.  And I would say
19 that that is certainly generally the
20 case.
21           But what I try to do in
22 terms of my practice in -- in writing

Page 289

1  the reports is, for the various opinions
2  and in various sections of the report
3  that I wrote, that there are a variety
4  of citations that you may find
5  throughout the reports.
6            And what I'm indicating is
7  there may be some materials that are
8  listed in the Materials Relied Upon
9  portion of the appendix for which I
10 provide no direct citation in the other
11 portion of the report.
12           So it's certainly something
13 that I read and, in that sense, relied
14 on, but I don't recall whether or not
15 there was a direct opinion expressed in
16 my report, based on this specific
17 document.  So that's all I'm trying to
18 represent to you.
19      Q.   What do you understand
20 Exhibit 4 to be?
21      A.   Do you mind if I take a
22 moment to review?

Page 290

1      Q.    Sure.
2      A.    Thank you.
3      Q.    And while you're reviewing
4   it, let me just ask one other question,
5   and then I'll repeat my last question.
6           When you reviewed Exhibit 4
7   in connection with this matter, were
8   portions of it redacted, the same
9   portions redacted as I've just shown you
10  in Exhibit 4, or did you have a version
11  of this document with no redactions?
12     A.    I don't recall ever seeing
13  this document without redactions.
14     Q.    Okay.  And in connection
15  with your work with the European
16  Commission matter, did you ever see this
17  document without redactions at the time
18  you were working for Slaughter and May?
19     A.    In connection with the work
20  on the European Commission matter, I
21  don't recall ever seeing this document.
22     Q.    When was the first time you

Page 291

1   recall ever seeing the document?
2      A.    In my work on this case.
3      Q.    When?
4      A.    Sometime within the last
5   couple months, I think.
6      Q.    And how confident are you
7   that at the time that you were working
8   on the European Commission matter with
9   Slaughter and May, you never saw any
10  version of this document, Exhibit 4?
11          MR. BITTON:  Objection to
12     form.  Asked and answered.
13          THE WITNESS:  I would say
14     I'm highly confident.  I don't
15     recall anything -- reviewing
16     anything in the context that --
17     that looked like this, with the
18     heading and everything that
19     you've described.
20  BY MS. WOOD:
21     Q.    Putting aside the format or
22  the heading, as a substantive matter in

Page 292



1   connection with your work on the
2   European Commission matter with
3   Slaughter and May, did you recall
4   reviewing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6   ▮▮▮▮▮▮▮▮▮▮▮▮▮?
7           MR. BITTON:  Objection to
8      form.
9           THE WITNESS:  I'm sorry.
10     Can you repeat the question,
11     please.
12  BY MS. WOOD:
13     Q.    Putting aside the format or
14  the heading, as a substantive matter in
15  connection with your work in the
16  European Commission matter with
17  Slaughter and May, do you recall
18  reviewing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮▮▮▮▮▮▮▮?
21     A.    Outside of the -- just to
22  be clear, outside of the context of the

Page 293

1   reports that I myself wrote, I don't
2   recall such documents.
3      Q.    Okay.  And sorry.  Take
4   your time to look at the document.
5      A.    Okay.  Thank you.
6      Q.    Just to refresh, my
7   question that was pending before I
8   interrupted myself and you was what do
9   you understand Exhibit 4 to be?
10          Can you answer my question?
11     A.    Yeah.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19     Q.    And do you see ▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, for example?
21          MR. BITTON:  Objection to
22     form.