**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OMNIBUS MEMORANDUM RESPONDING TO**
**MOTIONS BY GOOGLE AND THIRD PARTIES**
**TO SEAL DOCUMENTS AND TESTIMONY**

Guided by the strong presumption for public access to trial exhibits and testimony,

Plaintiffs submit this omnibus memorandum responding to the motions to seal certain documents

and testimony filed by Defendant Google, LLC ("Google") and certain third parties in this case.

*See* ECF Nos. 1633–34 (Google); ECF Nos. 1608, 1612 (Adobe); ECF Nos. 1616, 1620

(Amazon); ECF Nos. 1603–04 (Disney); ECF Nos. 1621, 1625 (Equativ); ECF Nos. 1630–31

(Index Exchange); ECF Nos. 1649–50 (Kevel); ECF Nos. 1611, 1615 (LinkedIn); ECF No. 1595

(Magnite); ECF Nos. 1636–37 (Meta); ECF Nos. 1643, 1646 (Microsoft and Xandr); ECF Nos.

1657, 1659 (Omnicom); ECF No. 1624 (OpenX); ECF No. 1594 (Prebid); ECF No. 1607

(PubMatic); ECF Nos. 1596, 1598 (Sovrn); ECF Nos. 1648, 1652 (The Trade Desk); ECF Nos.

1677–78 (Verizon); ECF Nos. 1600–01 (Yahoo); ECF Nos. 1660–61 (YieldMo); *Stone v. Univ. of*

*Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988) ("The public's right of access to judicial

records and documents may be abrogated only in unusual circumstances.").

For the reasons explained below, Google's submission fails in numerous instances to

marshal any compelling interest that overcomes the public's right to access trial exhibits and

testimony, demonstrate that its requests are narrowly tailored, and make particularized showings of why the documents, testimony, or portions thereof, should be sealed from public view.

With respect to the various motions filed by third parties, Plaintiffs engaged with each third party and their counsel in order to narrow any disputed requests. Through this process, Plaintiffs were able to reach agreement with all but one of the third parties to narrow the scope of the proposed sealed material, and Plaintiffs do not oppose those narrowed redactions. The one exception is Meta's continued request to seal the courtroom for the duration of Plaintiffs' expert Dr. Goranka Bjedov's live testimony, which Plaintiffs oppose.

For ease of reference, the chart below summarizes Plaintiffs' positions on the various motions to seal before the Court.

| PARTY | PLAINTIFFS' POSITION | FOR MOTIONS THAT PLAINTIFFS OPPOSE IN PART | |
|---|---|---|---|
| | | Plaintiffs Oppose | Plaintiffs Do Not Oppose |
| **Google** (ECF Nos. 1633–34) | Oppose in part. | Google's request to seal 22 internal technical feasibility analyses (PRX039–060), redact Noam Wolf's deposition designations, and seal the courtroom for any live testimony related to these analyses.<br><br>Google's request to seal or redact 48 dated, non-source-code exhibits,[1] including PRX030 and PRX071. | Google's request to seal or redact PRX009, PRX021, PRX022, PRX023, PRX025, PRX033, PRX038, PRX063, PRX088, PRX089, PRX091, PRX092, PRX093, PRX094, PRX098, RDTX235, RDTX273, RDTX274, RDTX341, RDTX343, RDTX424, RDTX433, RDTX438, RDTX458, RDTX487, RDTX533, RDTX549, RDTX565, RDTX575, RDTX584, RDTX586, RDTX59, RDTX593, RDTX594, RDTX595, RDTX607, RDTX608, |

---

[1] *See infra* 16 n.3.

| PARTY | PLAINTIFFS' POSITION | FOR MOTIONS THAT PLAINTIFFS OPPOSE IN PART | |
| --- | --- | --- | --- |
| | | Plaintiffs Oppose | Plaintiffs Do Not Oppose |
| **Google** (ECF Nos. 1633–34) | Oppose in part. | Google's request to seal PRX108 RDTX575, and RDTX869, and redact PRX019. | RDTX615, RDTX616, RDTX620, RDTX625, RDTX627, RDTX635, RDTX643, RDTX649, RDTX652, RDTX67, RDTX671, RDTX674, RDTX675, RDTX677, RDTX684, RDTX691, RDTX693, RDTX696, RDTX699, RDTX701, RDTX707, RDTX722, RDTX734, RDTX736, RDTX743, RDTX744, RDTX746, RDTX756, RDTX769, RDTX783, RDTX792, RDTX800, RDTX804, RDTX806, RDTX807, RDTX810, RDTX813, RDTX834, RDTX841, RDTX843, RDTX852, RDTX862, RDTX867, RDTX869, RDTX878, RDTX881, RDTX887, RDTX888, RDTX889, RDTX930, RDTX931, RDTX943, RDTX944, RDTX948, RDTX950, RDTX951, RDTX984, RDTX985, RDTX997, RDTX1004, RDTX1005, RDTX1006, RDTX1007, RDTX1008, RDTX1009, RDTX1011, RDTX1012, RDTX1013, RDTX1014, RDTX1015, RDTX1016, RDTX1017, RDTX1018, RDTX1019, RDTX1020, RDTX1021, RDTX1022, RDTX1023, RDTX1024, RDTX1025, RDTX1026, RDTX1027, RDTX1028, RDTX1029, |

| PARTY | PLAINTIFFS' POSITION | FOR MOTIONS THAT PLAINTIFFS OPPOSE IN PART | |
|---|---|---|---|
| | | Plaintiffs Oppose | Plaintiffs Do Not Oppose |
| **Google** (ECF Nos. 1633–34) | Oppose in part. | | RDTX1048, RDTX1049, RDTX1050, RDTX1051, RDTX1052,RDTX1053, RDTX1054, RDTX1055, RDTX1056, RDTX1057, RDTX1058, RDTX1059, RDTX1060, RDTX1061, RDTX1062, RDTX1063, RDTX1064, RDTX1065, RDTX1066, RDTX1067, RDTX1068, RDTX1069, RDTX1070, RDTX1071, RDTX1072, RDTX1073, RDTX1074, RDTX1075, RDTX1076, RDTX1077, RDTX1078, RDTX1079, RDTX1080, RDTX1081, RDTX1082, RDTX1083, RDTX1084, RDTX1085, RDTX1086, RDTX1087, RDTX1088, RDTX1089, RDTX1090, RDTX1091, RDTX1092, RDTX1093, RDTX1094, RDTX1095, RDTX1096, RDTX1097, RDTX1098, RDTX1099, RDTX1100, RDTX1101, RDTX1102, RDTX1103, RDTX1104, RDTX1105, RDTX1106, and RDTX1107. |
| **Meta** (ECF Nos. 1636–37) | Oppose in part. | Meta's request to seal the courtroom for all of Dr. Bjedov's live testimony. | Meta's revised request for Plaintiffs to remove all information identifying Meta and use anonymized identifiers on PRX136 and PTX1388, in lieu of sealing these two exhibits. |

| PARTY | PLAINTIFFS' POSITION | FOR MOTIONS THAT PLAINTIFFS OPPOSE IN PART | |
|---|---|---|---|
| | | **Plaintiffs Oppose** | **Plaintiffs Do Not Oppose** |
| **Meta** (ECF Nos. 1636–37) | Oppose in part. | | Meta's request to seal or redact PTX0581, PTX1572, PTX1577, PTX1709, DTX642, and DTX1853. |
| **Index Exchange** (ECF Nos. 1630–31) | Oppose in part, only as to certain of Index Exchange's initial requests made in its motion. | | Index Exchange's revised request for Plaintiffs to remove all information identifying Index Exchange and use anonymized identifiers on PRX135, PRX139, PRX145, PRX 154, PRX167, PTX1238, PTX1265, PTX1280, PTX1292, PTX1393, PTX1395, and PTX1444, in lieu of sealing these exhibits.<br><br>Index Exchange's request to seal RDTX 619, RDTX 682, RDTX 900, RDTX 904, RDTX 906, RDTX 907, RDTX 908, RDTX 911, RDTX 912, RDTX 926, RDTX 957, RDTX 969, RDTX 970, and RDTX 1030. |
| **OpenX** (ECF No. 1624) | Oppose in part, only as to certain of OpenX's initial requests made in its motion. | | OpenX's revised request to more selectively redact PRX172 (OPENX-00009582), PRX173 (OPENX-00010828), and PRX174 (OPENX-00011071), instead of requesting that these documents be sealed in full. PRX172–74, as OpenX currently proposes to redact, are |

| PARTY | PLAINTIFFS' POSITION | FOR MOTIONS THAT PLAINTIFFS OPPOSE IN PART | |
|---|---|---|---|
| | | Plaintiffs Oppose | Plaintiffs Do Not Oppose |
| **OpenX** (ECF No. 1624) | Oppose in part, only as to certain of OpenX's initial requests made in its motion. | | attached to Plaintiffs' instant Memorandum.<br><br>OpenX's request to seal OPENX-AGG-LIT-00000001.001 and OPENX-AGG-LIT-00000001.002. |
| **Prebid** (ECF No. 1594) | Oppose in part, only as to Prebid's initial requests made in its motion. | | Prebid's revised request for narrower redactions to Michael Racic's deposition designations:<br>• 167:3–5 (specific companies named only)<br>• 247:21 (last word only)<br>• 343:9 (last word only)<br>• 343:11 (third word only) |
| **The Trade Desk** (ECF Nos. 1648, 1652) | Oppose in part, only as to certain of The Trade Desk's initial requests made in its motion. | | The Trade Desk's revised request for Plaintiffs to remove all information identifying The Trade Desk and use anonymized identifiers on PRX0136, PRX0146, and PRX0147, in lieu of sealing these exhibits.<br><br>The Trade Desk's requests to seal PRX069, RDTX524, RDTX1042, and RDTX1043. |
| **Adobe** (ECF Nos. 1608, 1612) | No opposition. | | |
| **Amazon** (ECF Nos. 1616, 1620) | No opposition. | | |
| **Disney** (ECF Nos. 1603–04) | No opposition. | | |

| PARTY | PLAINTIFFS' POSITION | FOR MOTIONS THAT PLAINTIFFS OPPOSE IN PART | |
| --- | --- | --- | --- |
| | | Plaintiffs Oppose | Plaintiffs Do Not Oppose |
| **Equativ** (ECF Nos. 1621, 1625) | No opposition. | | |
| **Kevel** (ECF Nos. 1649–50) | No opposition. | | |
| **LinkedIn** (ECF Nos. 1611, 1615) | No opposition. | | |
| **Magnite** (ECF No. 1595) | No opposition. | | |
| **Microsoft and Xandr** (ECF Nos. 1643, 1646) | No opposition. | | |
| **Omnicom** (ECF Nos. 1657, 1659) | No opposition. | | |
| **PubMatic** (ECF No. 1607) | No opposition. | | |
| **Sovrn** (ECF Nos. 1596, 1598) | No opposition. | | |
| **Verizon** (ECF Nos. 1677–78) | No opposition. | | |
| **Yahoo** (ECF Nos. 1600–01) | No opposition. | | |
| **YieldMo** (ECF Nos. 1660–61) | No opposition. | | |

## LEGAL STANDARD

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (cleaned up). The right of public access to judicial records stems from both the First Amendment and the common law. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (citing *Stone*, 855 F.2d at 180).

When deciding a request to seal judicial records, the district court "must determine the source of the right of access with respect to each document"—whether from the First Amendment or the common law—because "[o]nly then can it accurately weigh the competing

interests at stake." *Id.* at 576 (quoting *Stone*, 855 F.2d at 181). The district court must then evaluate the competing interests at stake by "(1) provid[ing] public notice of the request to seal and allow[ing] interested parties a reasonable opportunity to object, (2) consider[ing] less drastic alternatives to sealing the documents, and (3) provid[ing] specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (cleaned up); *accord* Local Civ. R. 5(C) (requiring notice and opportunity to object to motions to seal).

"The distinction between the rights afforded by the [F]irst [A]mendment and those afforded by the common law is significant." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989). The common-law presumption that the public can inspect and copy all judicial records can be rebutted "if countervailing interests heavily outweigh the public interests in access." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d at 575 (cleaned up). The party seeking to restrict access bears the burden of rebutting the common-law presumption of public access. *Id.* (citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

Compared to the common law, the First Amendment affords greater substantive protection to the rights of the press and public. *See Rushford*, 846 F.2d at 253. The First Amendment's right of access extends to particular kinds of judicial records and can be restricted "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180. The party seeking to restrict access bears the burden to overcome the First Amendment right of access and must provide specific reasons in support of its motion. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d at 575 (citing *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986)).

## ARGUMENT

**I.      The First Amendment Provides a Public Right of Access to Trial Exhibits and Testimony.**

The public's right to access trial exhibits and testimony derives from the First Amendment. "The First Amendment provides a right of access to a judicial proceeding or record: (1) that 'ha[s] historically been open to the press and general public;' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (quoting *Press-Enterprise*, 478 U.S. at 8–10). Stemming from the Fourth Circuit's holding that the First Amendment standard applies when a party moves to seal documents filed in connection with civil summary judgment motions, *Rushford*, 846 F.2d at 253, courts in this district have found that the right of public access to documents offered into evidence at a trial is rooted in the First Amendment, as well. *See Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 579 (E.D. Va. 2009); *see also Pittston Co. v. United States*, No. 3:97-cv-294, 2002 WL 32158052, at *2 (E.D. Va. Oct. 2, 2002), *aff'd*, 368 F.3d 385, 406 (4th Cir. 2004) ("Analytically, materials filed in conjunction with a summary [judgment] motion are no different than materials actually mentioned in court or entered into evidence."). Indeed, "the resolution of a dispute on the merits . . . by trial . . . is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (cleaned up).

Given that the motions here concern trial exhibits and trial testimony, the public's right to access them originates from the First Amendment. As a result, the more rigorous First Amendment standard applies to the instant motions to seal.

## II.    Defendant Google's Motion to Seal Documents and Testimony

As a preliminary matter, Google cannot rely on the previous sealing of documents in the liability phase of this trial to justify sealing documents in the remedies phase. *See* Google's Br. in Support of Its Mot. to Seal, ECF No. 1634 ("Google Mot.") at 7–8, 10. Local Civil Rule 5(H) provides, "Trial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." Indeed, "the mere fact that a court document was previously sealed does not suggest that it should remain sealed permanently." *Topiwala v. Wessell*, No. 11-cv-0543, 2014 WL 2574504, at *3 (D. Md. June 5, 2014) (citing *Columbus–America Discovery Group v. Atlantic Mutual Insurance Co.*, 203 F.3d 291, 303 (4th Cir. 2000)). Google must demonstrate that its requests to seal and redact are necessary, even if the Court previously allowed Google to file those same documents—or similar documents—under seal.

### A.    *Google's Internal Technical Feasibility Analyses Should Not Be Sealed.*

Google moves to seal the same 22 internal analyses that are the subject of its pending motion in limine.[2] *See* Google Mot. at 10. Although Google has already used a broad brush to heavily redact those analyses when it was ordered to produce them in discovery, Google now asks the Court to seal the documents in their entirety. *See* App'x A to Google Mot., ECF No. 1633-1 ("App'x A") at 3–6. Further, Google seeks to seal the designated deposition testimony of Noam Wolf, who leads the engineering team for Google Ad Manager products, and Google requests that any live testimony about these internal technical feasibility analyses be conducted in closed session. *See* Google Mot. at 11.

---

[2] PRX039–060.

Google must show that a compelling governmental interest overcomes the public's interest in accessing at trial the company's internal technical feasibility analyses—and testimony related to these analyses by deposition and by live witnesses—and that sealing Google's already heavily redacted internal analyses is narrowly tailored to serve that compelling governmental interest. *Stone*, 855 F.2d at 180. Google fails to carry its burden. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d at 575.

> i.  *Public Access to Google's Internal Technical Feasibility Analyses Is Critical to the Public's Understanding of the Remedies Trial Outcome.*

Google has made technical feasibility a central issue in the remedies phase of this litigation, as it contends that Plaintiffs' remedies are "unworkable and harmful." Google's Resp. to Pls.' Notice of Proposed Remedies, ECF No. 1434, at 12; *see also id.* at 14–15, 19 (challenging the "workability" of Plaintiffs' proposed remedies). Throughout its briefing, Google has questioned the technical feasibility of Plaintiffs' proposed remedies. *See, e.g.*, Google's Initial Proposal for Appropriate Remedies, ECF No. 1431, at 11–14; Google's Mem. Addressing the Legal Framework Applicable to Remedies, ECF No. 1664 ("Google PFJ") at 2–4, 13–15. Moreover, Google has listed multiple experts on its witness list to testify on technical feasibility, as well as several fact witnesses whom Plaintiffs expect to testify on technical feasibility. *See* Google's Witness List/Rule 26(a)(3) Disclosures, ECF No. 1562, at 1–2.

Because Google has featured technical feasibility prominently in its publicly filed oppositions to Plaintiffs' proposed remedies, the public has a substantial interest in viewing and hearing testimony about Google's internal technical feasibility analyses to "ensur[e] the public's understanding of the judicial process." *Kamakana*, 447 F.3d at 1179 (cleaned up).

ii.    *Attorney Work-Product Protection That Has Already Been Overcome Is Not a "Compelling Interest" That Supports Sealing Google's Internal Technical Feasibility Analyses.*

Google's argument that its alleged attorney work-product protection supplies a compelling interest flies in the face of the very purpose of the attorney work-product doctrine— "to protect information against opposing parties"—which can no longer be served, as Google has long since provided these analyses to its adversaries in this case. *Fed. Election Comm'n v. Christian Coalition*, 178 F.R.D. 61, 76 (E.D. Va. 1998) (quoting *United States v. American Telephone and Telegraph Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

The attorney work-product doctrine is not an impenetrable shield against public disclosure, as Google contends. Rather, it confers only a qualified privilege, which reflects how courts have balanced the competing policy interests of fairly deciding civil disputes with fostering the effective assistance of counsel. *Nat. Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 510–11 (1947)). Plaintiffs have already overcome Google's qualified privilege for these internal technical feasibility analyses. Magistrate Judge Anderson previously determined that Plaintiffs have a substantial need for them because Google's "very aggressive argument" about technical feasibility is at the center of the remedies case, and without these analyses, Plaintiffs "would not be in the same position that Google's technical people who have worked with [Google's technological] system for years" are in. *See* Hr'g Tr. at 40:3–12 (May 30, 2025). Magistrate Judge Anderson then ordered Google to produce its internal technical feasibility analyses—prepared by non-lawyers, having adjudicated the competing policy interests inherent in the work-product doctrine in Plaintiffs' favor. *See* Order of May 30, 2025, ECF No. 1450, at 1.

Still, Google contends that not sealing these heavily redacted internal technical feasibility analyses would prejudice it in related pending cases, and litigants in other cases should not see

these materials because they have not shown a specific "substantial need" for them. *See* Google

Mot. at 11–13. Again, the attorney work-product doctrine is qualified, not absolute. Google

offers no support for the proposition that protecting a private litigant's prospects in other pending

litigation—after its work-product protection has been overcome—is recognized as a compelling

governmental interest sufficient to justify restricting the public's right to access key trial exhibits

and testimony.

The out-of-circuit cases Google cites for the general proposition that "privileged

information is a compelling interest outweighing the public's interest in access to court records"

are inapposite, as those cases were decided under the lower common-law standard (not the more

stringent First Amendment standard at issue here) and do not involve work product whose

protection has already been overcome. *See* Google Mot. at 13–14; *Foltz v. State Farm Mut. Auto.*

*Ins. Co.*, 331 F.3d 1122, 1134–35, 1138 (9th Cir. 2003) (holding that State Farm's documents

produced in discovery related to its motion to disqualify the plaintiff's counsel should be sealed

under the lower common-law standard); *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 460–

62 (10th Cir. 1980) (assuming documents produced in a since-settled case were privileged and

ordering that they be retained under seal "for a limited time," under the lower common-law

standard); *see also Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9, 11 (1st Cir. 1998) (holding that

attorney-client privilege merited sealing under the lower common-law standard, in a dispute

between an attorney and his former client).

Moreover, the cases Google cites in support of its claim that the attorney work-product

doctrine overcomes the public's interest to access trial exhibits are inapt. *See* Google Mot. at 13.

The district court in *Wolfe v. Green*, No. 2:08-cv-1023, 2010 WL 5175165, at *2 (S.D.W. Va.

Dec. 15, 2010), granted only "limited redactions," which "primarily concern[ed] the content of

discussions between plaintiff and his counsel," in response to a "narrowly tailored request" to seal. In *Powers v. Braun*, No. 13-cv-1622, 2013 WL 6623193, at *2 (D. Md. Dec. 16, 2013), the district court denied the defendant's motion "to seal entirely all of the documents" included in the motion and relied on non-binding authorities when it stated that under the lower common-law standard, "[c]ourts generally accept a claim of privilege as capable of overriding the presumption of public access and thereby justifying *redaction* of documents" (emphasis added). These cases do not apply to Google's present request to seal its internal technical feasibility analyses in full, where the heightened First Amendment standard applies and where Google's qualified work-product protection has already been overcome in the doctrine's balance of competing policy interests.

> iii.    *Supporting Settlement Negotiations Is Not a "Compelling Interest" Here, As Google's Internal Technical Feasibility Analyses Were Never Used in External Settlement Negotiations.*

Google also argues that its internal technical feasibility analyses should be sealed in full because they are purportedly part of Google's settlement negotiations. *See* Google Mot. at 14. First, for all the reasons set forth in Plaintiffs' opposition to Google's motion in limine, *see* ECF No. 1665, Google's internal feasibility analyses are not covered by Rule 408. Yet even if Rule 408 were to apply to these documents, it would not justify restricting the public's right to access key trial exhibits and related testimony. *See David v. En Pointe Prods., LLC*, No. 1:22-cv-287, 2023 WL 5867424, at *5 (E.D. Va. Sept. 11, 2023) ("Rule 408 could not provide the sole basis on which to seal the disputed documents, because it is merely a Rule of Evidence and determines what evidence is admissible—not how documents are filed on the docket.").

The cases cited by Google are inapposite, as they concern the sealing of actual settlement agreements, not analyses internal to a party. *See Duke Univ. v. Endurance Risk Sols. Assurance Co.*, No. 5:20-cv-672-BO, 2022 WL 3636601, at *3–4, 8 (E.D.N.C. Aug. 23, 2022) (granting

motion to seal in a case where Duke University had engaged and actually settled with two sets of class plaintiffs); *Wudi Indus. (Shanghai) Co., Ltd. v. Wong*, No. 1:20-cv-908-CMH-TCB, 2022 WL 18586386, at *2 (E.D. Va. Apr. 25, 2022) (granting motion to seal information in the parties' "confidential Settlement Agreement"); *see also M.G.M. ex rel. Mabe v. Keurig Green Mountain, Inc.*, No. 1:22-cv-36, 2022 WL 6170557, at *3 (M.D.N.C. Oct. 7, 2022) (granting motion to seal to "protect[] the private financial information of [a] minor," while acknowledging "the public's right of access to the settlement agreement").

      iv.    *Google's Request to Seal in Full Its Internal Technical Feasibility Analyses Is Not "Narrowly Tailored" to Any Compelling Interest.*

Google never explains why sealing its internal analyses in full is narrowly tailored to its claimed interests. *Stone*, 855 F.2d at 180. These internal technical feasibility analyses are already heavily redacted, including under the attorney work-product doctrine. Plaintiffs believe that these ample redactions are sufficient to protect Google's interests, setting aside whether its interests are compelling.

      v.    *Google's Request to Seal Its Internal Technical Feasibility Analyses Fails Even Under the Common-Law Standard.*

Even under the common-law standard, Google fails to show that its countervailing interests heavily outweigh the public's interest in access to these internal analyses offered as trial exhibits and related testimony. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d at 575. Google's already defeated claim that these internal technical feasibility analyses are protected under the attorney work-product doctrine, and the fact that these analyses were never used in any external settlement negotiations, do not "heavily outweigh" the public's vibrant interest in accessing information central to an issue that Google itself has put at issue in this public forum.

**B.**    ***Google Has Failed to Meet Its Burden to Show That Outdated, Non-Source-Code Exhibits Should Be Sealed or Redacted.***

Plaintiffs further object to Google's over-broad and insufficiently tailored requests to seal or redact 48 proposed trial exhibits (the majority of which come from Defendant's own trial exhibit list).[3] Each of these trial exhibits is more than three years old, and none appear to contain any proprietary source code or other highly confidential information that would justify keeping them under seal. Google has simply failed to meet its burden to show the compelling interest necessary to overcome the public's right to access these exhibits. To the extent that Google is prepared to offer more narrowly tailored proposals to redact only its trade secrets or other proprietary information, Plaintiffs would be prepared to reconsider their objections. However, Google's current blunderbuss approach, in which multiple pages of documents are entirely redacted, simply cannot meet the exacting standard required to keep trial documents out of the public realm.

At the very same time that Google is expounding on the rapid pace of technological change in the ad tech ecosystem, *see* Def. PFJ, at 4–5, Google's request to seal exhibits created years earlier falls flat, particularly without a more particularized showing of how the information that it seeks to keep sealed is still relevant or commercially sensitive today. "[T]he older the information is, the less appropriate it is to seal that information, particularly when the party does not explain with specificity why, despite the passage of time, the information should still be

---

[3] PRX005, PRX008, PRX011, PRX013, PRX016, PRX027, PRX028, PRX030, PRX064, PRX071, RDTX122, RDTX162, RDTX197, RDTX213, RDTX234, RDTX252, RDTX277, RDTX278, RDTX284, RDTX289, RDTX305, RDTX309, RDTX310, RDTX327, RDTX335, RDTX347, RDTX351, RDTX356, RDTX370, RDTX376, RDTX377, RDTX410, RDTX434, RDTX440, RDTX442, RDTX443, RDTX452, RDTX469, RDTX476, RDTX477, RDTX485, RDTX516, RDTX517, RDTX54, RDTX544, RDTX555, RDTX86, DTX172.

sealed." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542, 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023) (collecting cases).

Google fails to carry its burden to provide "specific reasons" demonstrating that sealing or redacting these 48 dated exhibits is necessary to protect any compelling interest. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d at 575. The "specific bas[e]s" Google purports to provide for each of its objections are nothing more than boilerplate categorizations wanting for particulars. *See* Google Mot. at 2; *see, e.g.*, App'x A at 1, 9 (offering bases such as "[r]edacted material pertains to nonpublic commercial and technical information regarding a Google product and/or products," without any mention of an exhibit's date).

Although Google asserts that some of these exhibits "concern[] the design and functioning of current Google products, product features, and systems," none of its "specific bas[e]s for each of its objections" state that these exhibits include information on how Google's products on the market currently work. *See* Google Mot. at 2, 6; *e.g.,* App'x A, at 1 (referencing repeatedly "a Google product and/or products," without indicating which product, whether that product still exists, and whether the information requested to be redacted or sealed relates to the product's current features or functionality). Nor do Google's declarants supply these necessary details. *See* ECF No. 1634-1 ("Amini Decl."); ECF No. 1634-2 ("Berntson Decl."); ECF No. 1634-3 ("Taylor Decl."); ECF No. 1634-4 ("Zember Decl."). In short, Google has not provided the information necessary to establish that all of the information it seeks to seal or redact in these 48 exhibits is still competitively sensitive.

C.    ***Google's Request to Redact PRX030 and PRX071 Should Be Denied Because These Exhibits Lack Any Proprietary Information.***

Plaintiffs lodge additional objections specifically to Google's requests to redact PRX030 and PRX071, as these exhibits do not contain proprietary information worthy of redaction.

Google seeks to redact the last two pages of PRX030 for "material pertain[ing] to non-public commercial and technical information regarding a Google product and/or products." App'x A at 2. Its redactions, however, do not target any proprietary information. Instead, the information Google seeks to redact simply tallies the lines of code in certain of Google's ad tech functionalities, without providing any information on how Google's code functions. Such bare facts—especially from September 27, 2019—are not proprietary information and should not be redacted.

Further, Google's proposed redactions for PRX071 are similarly meritless. Google claims that PRX071 should be redacted because it "contains customer-specific pricing or other sensitive non-pricing contractual terms." App'x A at 6. The pricing and terms that Google seeks to redact, however, are from a contract that was signed in March 2021 and that expired in March 2023. Google does not explain how prices and contractual terms that have been stale for over two years "would provide Google's competitors with unfair access to Google's business strategy and confidential customer terms and could harm Google's customers as well as Google's competitive position in the marketplace." Google Mot. at 8; *see also* Taylor Decl., ¶ 8 (stating that PRX071 contains "recent or current" pricing and contractual terms, despite PRX071 being signed in March 2021 and having expired as of March 2023). The outdated prices and terms in PRX071 are not proprietary and should not be redacted.

### D.    *Google's Requests to Seal PRX108, RDTX575, and RDTX869, as Well as Redact PRX019 Are Not Narrowly Tailored.*

Plaintiffs further object to Google's requests to seal PRX108, RDTX575, and RDTX869, and redact swaths of PRX019, as they are not narrowly tailored to any compelling interest that Google identifies.

Google asserts that PRX108 should be sealed in full because it "contains Google's proprietary and commercially sensitive business information, including product development strategy." App'x A at 7. Google does not explain why PRX108 still represents one of Google's "forward-looking strategic plans," given Google created this document nearly three years ago in November 2022. *See* Google Mot. at 9 & n.22; Berntson Decl., ¶ 11. Further, Google's request to seal in totality all four pages of PRX108 is not narrowly tailored to protect whatever proprietary information may still exist in the exhibit. More limited redactions to this high-level strategic proposal from nearly three years ago may be appropriate, but wholesale sealing is certainly not. *See* Local Civ. Rule 5(C) ("Blanket sealing of entire briefs, documents, or other papers is rarely appropriate.").

Similarly, Plaintiffs oppose Google's requests to seal RDTX575 and RDTX869. Google seeks to keep from public view all 10 pages of RDTX575, a nearly three-year-old document related to a transaction that closed in 2023. Google also asks the Court to seal all 317 presentation slides of RDTX869—including the presenter's notes introducing himself to his audience. Google's undiscerning request to seal these exhibits in their entirety is not narrowly tailored to protect whatever "proprietary and commercially sensitive business information" still exists in them. *See* App'x A at 16, 24.

As for PRX019, Google argues that it should be redacted for "material pertain[ing] to non-public commercial and technical information regarding a Google product and/or products." *See* App'x A at 2. To begin, PRX019 discusses a July 23, 2020 incident that affected Google's ad products. Google does not provide any specific reasons why its discussion of an incident that occurred over five years ago remains proprietary and serves as a compelling reason to justify overcoming the public's right to access a trial exhibit. To the extent that Google seeks to keep

PRX019 out of public view to protect its reputation, concern about reputational harm does not outweigh the public's right to access even under the common-law standard, let alone the heightened First Amendment standard. *See Doe v. Pub. Citizen*, 749 F.3d 246, 269–70 (4th Cir. 2014).

Moreover, despite calling its redactions "[l]imited," Google proposes significant redactions to nearly every one of the 32 pages of PRX019. *See* App'x A at 2. Google even seeks to redact the entire chat room log associated with the July 23, 2020 incident, which comprises over 22 full pages of communications. Such a broad-scale request is not narrowly tailored to protect whatever information may be proprietary in PRX019. Google's redactions to PRX019 must be more restrained than its current request for sweeping redactions that engulf 22 full pages of a 32-page document.

## III.    Meta's Motion to Seal the Courtroom for Dr. Goranka Bjedov's Trial Testimony[4]

Plaintiffs object to Meta's request that the Court seal the courtroom during the live testimony of Dr. Goranka Bjedov, one of Plaintiffs' technical experts. *See* Meta Platforms, Inc.'s Mem. of Law in Support of Mot. to Seal, ECF No. 1637 ("Meta Mot.") at 2–3. Meta has not identified a compelling interest sufficient to overcome the public's right to access judicial proceedings.

Meta claims that Dr. Bjedov's testimony is likely to implicate its competitively sensitive information. *Id.* at 6. Despite Dr. Bjedov departing Meta in February 2019, Meta still contends that the parties' dispute regarding her experience will likely entangle Meta's competitively sensitive information. *See* ECF No. 1637-1 ("McKenna Decl."), ¶ 3(b); Meta Mot. at 7–8. That

---

[4] As noted above, Plaintiffs engaged in good faith with the various third parties that filed motions to seal in attempts to narrow the scope of the material requested to be kept under seal. In all but one instance, Plaintiffs were able to reach resolution with the third parties, as reflected in the chart presented above. *See supra* 2–7.

dispute, however, is fully briefed and will have already been decided before trial by the Court's ruling on Google's *Daubert* motion. *See* Google LLC's Mot. to Exclude the Testimony of Dr. Goranka Bjedov, ECF No. 1580; Pls.' Opp. to Google's Motion to Exclude the Testimony of Dr. Goranka Bjedov, ECF No. 1666; Def.'s Reply Mem. of Law in Support of Google's Mot. to Exclude the Testimony of Dr. Goranka Bjedov, ECF No. 1708.

Plaintiffs have assured Meta that they are unaware of any competitively sensitive information that Dr. Bjedov would testify to on direct examination. Under such circumstances, Meta's concern regarding the entirety of Dr. Bjedov's trial testimony is not sufficiently particular or concrete to overcome either the First Amendment or common-law right of access to judicial proceedings. *Cf. Doe v. Pub. Citizen*, 749 F.3d at 270 ("This Court has never permitted wholesale sealing of documents based upon unsubstantiated or speculative claims of harm . . . ."). Sealing the courtroom for the entirety of Dr. Bjedov's testimony, therefore, is not justified by any compelling interest.

Nor is Meta's request narrowly tailored. *See Stone*, 855 F.2d at 180. Plaintiffs have offered for Meta's counsel to be present at trial to object if Dr. Bjedov's testimony steers into Meta's competitively sensitive territory. Meta, however, maintains that nothing less than closing the courtroom for the entirety of Dr. Bjedov's testimony will do. *See* Meta Mot. at 8–9. It contends that its proposal would lead to less courtroom disruption than Plaintiffs' offered alternative, without establishing that courtroom disruption is a compelling interest that can justify overcoming the public's right to access trial testimony regarding central issues in the remedies phase of this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Google's motion as to its requests to seal its internal technical feasibility analyses, redact Noam Wolf's deposition designations, and seal the courtroom for any testimony related to its internal technical feasibility analyses. Plaintiffs also request that the Court deny Google's requests to seal or redact information in the 48 dated, non-source-code exhibits identified in footnote 3 of this brief. In addition, Plaintiffs ask the Court to deny Google's requests to seal PRX108, RDTX575, and RDTX869, as well as its request to redact PRX019.

Finally, Plaintiffs request that the Court deny Meta's motion to seal the courtroom for the entirety of Dr. Bjedov's trial testimony.

Dated: September 12, 2025


Respectfully submitted,


ERIK S. SIEBERT
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
KERRIE J. FREEBORN
DAVID GEIGER
MILOSZ GUDZOWSKI
MATTHEW R. HUPPERT
DAVID TESLICKO
MICHAEL E. WOLIN
MELODY WANG
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington DC 20530
Telephone: (202) 307-0077
Facsimile: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov

*Attorneys for the United States*

JASON S. MIYARES
Attorney General of Virginia

/s/ Tyler T. Henry
TYLER T. HENRY
Assistant Attorney General
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

*Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia*