```
1                 UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
2                     ALEXANDRIA DIVISION

3     --------------------------x
      UNITED STATES, et al.,     :    Civil Action No.:
4                                :    1:23-cv-108
                  Plaintiffs,    :
5          versus                :    Monday, September 15, 2025
                                 :    Alexandria, Virginia
6     GOOGLE LLC,                :
                                 :    Pages 1-32
7                 Defendant.     :
      --------------------------x
8

9          The above-entitled pretrial conference was heard
      before the Honorable Leonie M. Brinkema, United States
      District Judge.  This proceeding commenced at 9:56 a.m.
10
                  A P P E A R A N C E S:
11
      FOR THE PLAINTIFFS:    JULIA TARVER WOOD, ESQUIRE
12                           MATTHEW HUPPERT, ESQUIRE
                             DAVID TESLICKO, ESQUIRE
13                           UNITED STATES DEPARTMENT OF JUSTICE
                             ANTITRUST DIVISION
14                           950 Pennsylvania Avenue, NW
                             Washington, D.C.  20530
15                           (202) 894-4266

16    (State of VA)          TYLER HENRY, ESQUIRE
                             OFFICE OF THE ATTORNEY GENERAL
17                           OFFICE OF THE SOLICITOR GENERAL
                             202 North Ninth Street
18                           Richmond, Virginia  23219
                             (804) 786-7704
19
      FOR THE DEFENDANT:     CRAIG REILLY, ESQUIRE
20                           LAW OFFICE OF CRAIG C. REILLY
                             209 Madison Street
21                           Suite 501
                             Alexandria, Virginia  22314
22                           (703) 549-5354

23

24

25
                                                          1
```

```
 1                    A P P E A R A N C E S:

 2   FOR THE DEFENDANT:    KAREN DUNN, ESQUIRE
                           JEANNIE RHEE, ESQUIRE
 3                         WILLIAM ISAACSON, ESQUIRE
                           BRYON BECKER, ESQUIRE
 4                         DUNN ISAACSON RHEE LLP
                           401 Ninth Street, NW
 5                         Washington, D.C.  20004
                           (202) 240-2912
 6
                           DANIEL BITTON, ESQUIRE
 7                         NEELESH MOORTHY, ESQUIRE
                           AXINN, VELTROP & HARKRIDER LLP
 8                         55 Second Street
                           Suite 200
 9                         San Francisco, California  94105
                           (415) 490-2000
10
                           DAVID PEARL, ESQUIRE
11                         AXINN VELTROP & HARKRIDER, LLP
                           1901 L Street, NW
12                         Washington, D.C.  20036
                           (202) 699-0950
13
     (Meta Platforms Inc.) CONNOR KELLEY, ESQUIRE
14                         COVINGTON & BURLING LLP
                           One City Center
15                         850 Tenth Street, NW
                           Washington, D.C.  20001
16                         (202) 662-6000

17                         ELIEKA KATE PATCHEN, ESQUIRE
                           COVINGTON & BURLING LLP
18                         Salesforce Tower
                           415 Mission Street
19                         Suite 5400
                           San Francisco, California  94105
20                         (202) 662-6000

21   COURT REPORTER:       STEPHANIE M. AUSTIN, RPR, CRR
                           Official Court Reporter
22                         United States District Court
                           401 Courthouse Square
23                         Alexandria, Virginia  22314
                           (607) 743-1894
24                         S.AustinReporting@gmail.com

25        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

2

1                    P R O C E E D I N G S

2            THE DEPUTY CLERK:  Civil Action Number

3    1:23-cv-108, United States, et al. versus Google LLC.

4            Will counsel please note their appearance for the

5    record, first for the plaintiffs.

6            MR. HENRY:  Good morning, Your Honor.  Ty Henry

7    from the Office of the Attorney General of Virginia on

8    behalf of the Commonwealth of Virginia and the state

9    plaintiffs.

10           THE COURT:  You got on first this time.

11           MR. HENRY:  Yes, ma'am.

12           THE COURT:  Okay.

13           MS. WOOD:  Good morning, Your Honor.  Julia Tarver

14   Wood from the Department of Justice for the United States,

15   plaintiffs.

16           MR. HUPPERT:  Good morning, Your Honor.  Matthew

17   Huppert from the Department of Justice on behalf of the

18   plaintiffs.

19           THE COURT:  Good morning.

20           MR. TESLICKO:  Good morning, Your Honor.  David

21   Teslicko from the Department of Justice on behalf of the

22   United States.

23           THE COURT:  All right.  I've got you on board.

24           MS. DUNN:  Good morning, Your Honor.  Karen Dunn

25   with Dunn Isaacson Rhee on behalf of Google.  And with me

                                                              3

```
 1   today are Jeannie Rhee, Bill Isaacson, Bryon Becker, Dan

 2   Bitton, David Pearl and Neel Moorthy, and, of course, Craig

 3   Reilly.

 4          THE COURT:  Very good.  All right.  Well, we have

 5   a bunch of motions to address, many of them are what I call

 6   housekeeping motions.

 7          First of all, I don't know if you all have had a

 8   chance to see the order Judge Anderson entered this morning,

 9   in which I believe he resolved just about all of the

10   third-party motions to seal.

11          MS. WOOD:  Yes, Your Honor.  There's one piece

12   remaining of Meta's motion to seal the courtroom for the

13   testimony of --

14          THE COURT:  That's not going to happen.

15          MS. WOOD:  Right.

16          THE COURT:  This is an open courtroom.

17          MS. WOOD:  Understood, Your Honor.

18          THE COURT:  So that motion's denied.  I don't need

19   to hear any argument on that at all.

20          MS. WOOD:  Thank you, Your Honor.

21          THE COURT:  Okay.  Very good.  Then the other -- a

22   couple of things that I don't need to hear argument about is

23   that the joint motion to modify the order regarding pretrial

24   schedule, I believe that had to do with the deposition

25   designations.
```

1          And the reason I never resolved that order was I

2     was drafting a response to it.  I need to put both sides on

3     notice, I don't want testimony coming in by deposition.

4     I've found that very difficult to absorb complex technical

5     evidence by deposition.  It reads in so quickly.  I want

6     witnesses live, either physically in the courtroom or if

7     they cannot be brought here physically, then by a live

8     video.  All right.  Because with this portion of the trial,

9     I need to be able, if I have questions, to directly pose

10    them to the witness.  I cannot do that if the testimony is

11    coming in on a cold record.  All right.

12         So that may mess up some of your plans, but it's

13    early enough and we have enough time scheduled for this case

14    that you should be able to rearrange things.  That's why I

15    didn't resolve that issue.

16         I mean, to the extent that you have depositions

17    that you want to use, you can certainly ask the questions

18    that you asked during the deposition.  If the witness who is

19    physically available gives you a different answer, then you

20    can play with that.  So I'm not saying you can't use the

21    depositions to the extent it gives you a script to read, but

22    I am going to insist that all testimony be live.  All right.

23         Does that create any major obstacle for either

24    side?

25         MS. WOOD:  Your Honor, there were some witnesses

                                                              5

1   who were unavailable, and that was part of the reason -- not

2   for all the witnesses that we were going to have testimony

3   from via depo designations, so I will have to check on the

4   availability of certain witnesses.  But I very much

5   appreciate the Court's willingness to accommodate virtual

6   appearances in those very limited instances where the

7   witness is otherwise unavailable.

8           THE COURT:  And where that has to be done, I mean,

9   we have the technology.  I've taken live testimony from

10  Iraq.  So, I mean, I know we can do it, all right.  And I

11  don't think we have any of the witnesses in this case that

12  far away.

13          MS. WOOD:  We do not, Your Honor.

14          THE COURT:  Okay.  But it does require a little

15  bit of coordination with our IT people, especially because

16  we may have the overflow courtroom running, and, therefore,

17  let us know as quickly, and that applies to Google as well.

18  All right.

19          MS. WOOD:  We will reach out to those witnesses

20  immediately after the hearing today and start making plans.

21  Thank you, Your Honor, for the notice.

22          THE COURT:  All right.  And if it should result in

23  a situation where you can't get the witness until let's say

24  the latter part of the second week, it may be we'll have to

25  call him out of order.  In other words, the defense might

6

```
 1    have started the defense case.  That's going to be all
 2    right.  It's a bench trial, so we have a lot of flexibility
 3    in that respect.
 4              MS. WOOD:  Much appreciated, Your Honor.
 5              THE COURT:  Yes, Ms. Dunn.
 6              MS. DUNN:  Your Honor, understood.  And that makes
 7    sense to us as well.
 8              There may be one or two witnesses who were on
 9    DOJ's witness list that we would call even if they didn't,
10    and so we will coordinate with the DOJ to see if they will
11    help us get those third-party witnesses to come to court.
12              THE COURT:  That's fine.  All right.  So that
13    takes care of that.
14              So, in essence, the joint motion that's still
15    showing as an open motion, I'm basically denying, all right,
16    just for the record.  Okay.
17              I want to take care of the other sort of
18    housekeeping, because the two key motions I have to address
19    are Google's motion to strike one of the plaintiffs'
20    experts, and also this very interesting issue about the 408
21    evidence.  Those, I think, are the two core motions I need
22    to resolve today.
23              Was there anything else?  The others, I think, are
24    all window dressing.
25              MS. WOOD:  The only other is I don't believe
```

7

```
 1   Judge Anderson has, as of yet, resolved Google's motion for
 2   confidentiality.  And so that's the only other
 3   confidentiality sealing motion that I believe is still
 4   outstanding.
 5           THE COURT:  But I think most of that dovetails
 6   with the 408 issues; does it not?
 7           MS. WOOD:  408 was one category, but there were
 8   multiple other categories that are not implicated by the 408
 9   documents.  So there is overlap in one area, but there are
10   other documents that don't relate to 408 for which they've
11   also sought confidentiality.  And our position is that they
12   didn't make a fully particularized showing.  In other words,
13   they overdesignated what needed to be kept confidential.
14           THE COURT:  Well, I may talk to Judge Anderson
15   about that.  I mean, I have found that a lot of the -- I was
16   very, very annoyed by the number of materials I had to read
17   with redactions that made absolutely no sense.  None
18   whatsoever.  In fact, Judge Anderson may have been a bit
19   generous, but I'm not going to redo what he did.
20           But this redaction business is really -- has been
21   overused in this case, and it makes it extremely difficult,
22   first of all, for the public to have a complete
23   understanding of what's going on here.  And, secondly, it
24   makes it difficult for a Court to draft an opinion.  You
25   know, I think even the last time we had to submit the
```

```
 1    opinion to you all first before we could publish it to make

 2    sure that we didn't have, within the opinion, anything that

 3    you all had agreed to seal.  Anyway, it makes it very

 4    difficult, but doable.  Okay.  I'm going to leave that with

 5    him, although I may take a look at what's left of that

 6    motion.

 7              All right.  Then I want to, I think -- why don't

 8    we clear out the Meta issue.  Is there counsel here for

 9    Meta?

10              MR. KELLEY:  Yes, Your Honor.

11              THE COURT:  Come forward.  And you folks need to

12    put your names on the record.

13              MR. KELLEY:  Good morning, Your Honor.  Connor

14    Kelley on behalf of Meta.  Joined by my colleague, Kate

15    Patchen, who will be handling this matter.

16              THE COURT:  All right.  That's fine.

17              Yes, ma'am.

18              MS. PATCHEN:  Your Honor, I think you've already

19    decided the issue.  This was how to treat the confidential

20    materials that might come out in the testimony of

21    Dr. Bjedov.

22              If the Court wants to hear more from me on the

23    matter --

24              THE COURT:  I mean, are you still arguing that,

25    you know, her discussion of her background is something that
```

9

1    should be sealed?

2            MS. PATCHEN:  No, Your Honor, not her discussion

3    of the background.

4            In the parties' -- in the three expert reports

5    that I've had the opportunity to review, there are nine

6    separate programs, infrastructure- and software-related

7    programs that Dr. Bjedov worked on, and it's testimony about

8    those programs that is the heart of our concern.

9            THE COURT:  Yeah, but it looked like fairly

10   generic discussions of those programs.  The fact that a

11   program has a title and it involved moving X to Y or from

12   one platform to another, that's not revealing anything.

13   She's not giving out source code.

14           MS. PATCHEN:  So I agree with Your Honor.  I think

15   a lot of what she's going to say is going to be -- you know,

16   and it's cited in the expert reports that I saw to a public

17   source.

18           The issue is that she knows a lot more about those

19   programs than is cited in that source itself.  And she's in

20   a unique position because she's a former employee.  She was

21   one of the most senior engineers in the company, and she

22   doesn't have I think a really good ability to distinguish

23   between what's public and what isn't based on her work

24   experience.  And because it's so many of the programs, so

25   many separate infrastructure programs, that's the area of

                                                          10

```
 1    concern.

 2              THE COURT:  Well, what we'll do with you is what

 3    we've done in the past, and that is you'll need to be

 4    present, or somebody should be here during her testimony.

 5    If a question is asked or she begins to answer and your

 6    sense of it is that she's about to reveal something she

 7    should not be revealing -- all right?

 8              MS. PATCHEN:  All right.

 9              THE COURT:  -- you need to stand up.  And we've

10    done this with government counsel when there's a state

11    secrets issue floating around in the case.  And, at that

12    point, we have a little bench conference, and we decide

13    whether or not that can go forward.

14              I also think the government needs to allow you to

15    talk to this witness and just make sure she understands the

16    line between what is appropriate and inappropriate in terms

17    of the level of detail.

18              I doubt she needs to get into much detail.  I

19    mean, Meta and Facebook are not the issues in this case yet.

20    They might be down the road if they were to be an acquirer.

21    That's a different issue.  But they are not at this point in

22    the case.  All right?

23              MS. PATCHEN:  Understood, Your Honor.  Thank you.

24              THE COURT:  And then that will mean that whoever

25    is calling -- well, when the government chooses to call that
```

11

```
 1   witness, if the witness is called, you need to know about

 2   it.  And we'll give you a prime seat over here in the

 3   witness box for that portion of the trial.  All right?

 4              MS. PATCHEN:  All right.  Thank you, Your Honor.

 5              THE COURT:  Otherwise, we're not sealing the

 6   courtroom.  So that motion is denied.

 7              All right.  So let's then turn to the two big

 8   ones.  And the first one is the -- Google's motion to

 9   exclude the testimony of -- how do we pronounce the name of

10   this expert?

11              MS. WOOD:  Dr. Bjedov.  The BJ is like a BY.

12              THE COURT:  Bjedov?

13              MS. WOOD:  Yes.

14              THE COURT:  That's fine.  All right.  We've got

15   it.

16              MS. WOOD:  And Mr. Teslicko will be arguing this

17   motion on behalf of the plaintiffs.

18              THE COURT:  All right.  Well, it's Ms. Dunn's

19   motion, or Google's motion, and so we'll hear it first.

20              MS. DUNN:  I understand.

21              THE COURT:  And, again, I've read the papers.

22   There is no need to repeat.

23              MS. DUNN:  Your Honor, before we start, Mr. Bitton

24   will be handling this motion.

25              THE COURT:  All right.  Good morning.
```

                                                              12

```
1              MR. BITTON:  Good morning, Your Honor.

2              THE COURT:  Good morning.

3              MR. BITTON:  Daniel Bitton, counsel for Google.

4              Your Honor, I don't know if the Court has specific

5    questions or whether you'd --

6              THE COURT:  I've read the papers, so I can already

7    tell you how I'm thinking about this.

8              I think there's a lot of merit to your motion.  I

9    think there are a lot of issues in the testimony of this

10   witness that give the Court real concern.  But it is a bench

11   trial, as I've said many times before.  And I appreciate the

12   Daubert decision of the Supreme Court and the fact that as

13   the gatekeeper of the evidence that comes into a trial, it's

14   my job to decide what should or shouldn't come in.  But

15   that's especially important with a jury trial where a jury

16   can be misled.  I'm not saying a judge can't be misled as

17   well; of course we can be, we're all human.  But the types

18   of concerns that you have about this witness's testimony are

19   legitimate.  They go to the weight.  I don't think that her

20   testimony is so marred that it is inappropriate to allow her

21   to testify.  Quite frankly, as you know, the government's

22   primary focus in the case is divestiture, and her testimony

23   is critical to that evaluation.

24              If the Court were to strike that testimony

25   prematurely at this point without having the ability to get
```

                                                              13

1    it completely fleshed out, I think could create problems

2    down the road depending upon what the decision ultimately is

3    in the case.  But I am not unsympathetic with many of the

4    issues that you raise, and I don't mind, you know, pointing

5    a few of them out right now which I just think are

6    problematic.

7            I'm not convinced, from what I've seen, that this

8    witness has as much hands-on experience with coding,

9    programming.  And certainly, you know, that is I think a

10   core issue in this case.  You can't -- this thing doesn't

11   work if you can't get the code to work on a different type

12   of platform.  And the magnitude of the effort, you know,

13   involves both the complexity and the volume of the code.

14   The other government expert has talked about that to some

15   extent, but Dr. Bjedov doesn't seem, in my view, to have

16   that much hands-on experience writing code that I think is

17   important.  But she can, as all experts can, rely on the

18   testimony of other experts to make their decision.

19           I mean, some of her background -- like, she talks

20   about seven data migrations, but I don't -- but they all

21   appear to have occurred within Facebook, and I don't know if

22   any of those data migrations involve going from one

23   corporation to another, which is of course what we've been

24   talking about here if the Court were to order a divestiture.

25           So there are multiple questions and issues that I

14

```
 1    have about her testimony, but I am going to deny the motion.

 2    I think it is a safer approach just to allow it to come in.

 3    But I do strongly recommend, when it does come in, that you

 4    don't beat too many horses to their end.

 5           You know, I read the deposition testimony, and

 6    some of the questions that were asked five, six, seven

 7    times, you can't do when she's here live in court.  You know

 8    that.  I hear it the first time.  I still have the same

 9    hearing I had a year ago.  And so just make sure you've

10    tailored the examination -- the cross-examination when she

11    does testify.

12           MR. BITTON:  Thank you, Your Honor.

13           THE COURT:  So I don't need to hear any argument

14    on this one.

15           MR. BITTON:  Okay.

16           THE COURT:  I mean, I've read the papers.  Both

17    sides write wonderful briefs.  A little bit on the long

18    side, and too much stuff is redacted.  But, nevertheless,

19    I've got a good sense of what's going on with this witness.

20    All right.

21           MR. BITTON:  All right.  Thank you, Your Honor.

22           THE COURT:  Thank you.

23           MR. BITTON:  Then I will sit down.  Thank you.

24           THE COURT:  All right.  The last issue, and the

25    one that is absolutely fascinating, is this issue about the
```

15

 1    408 evidence.  And as you know, Judge Anderson has already

 2    done a preliminary take on that in the sense that he did

 3    allow a significant, not total, but a significant amount of

 4    discovery into the feasibility analyses that various Google

 5    employees have made over the last couple of years.  And he

 6    drew, I thought, a very sane and careful line between

 7    information that was presented at various settlement

 8    negotiations versus background data collection and analyses

 9    that was not directly presented in those contexts.  And I

10    think that that line is appropriate.

11            One of the concerns that I have is let's say

12    Google calls -- I'm sorry, that the government calls

13    Engineer X, and Engineer X was involved in doing one of

14    these feasibility studies, and Ms. Wood asks the witness:

15    Have you ever considered the feasibility of, you know, doing

16    this with AdX?  And he says no.  And Ms. Wood knows from

17    discovery that he wrote or was a major player in putting

18    together a feasibility report.  Now, that report would be

19    direct evidence contradicting a witness's testimony made

20    under oath in court.  Absolutely that can be used to impeach

21    him.  Isn't it a fact on November 1st of 2020, you presented

22    this report?  Okay.  Or you created this report?  So there

23    has to be some ability to use that information.

24            Now, you're lucky.  I haven't read it.  I don't

25    know what we're talking about.  I can suspect I know what

                                                              16

```
 1    you're talking about because it's been so hotly contested.
 2              But, in any case, I'm going to do what we often
 3    used to do as prosecutors in criminal cases.  An FBI agent
 4    gets telephone records with a grand jury subpoena.  Grand
 5    jury proceedings are absolutely a secret.  It doesn't mean
 6    he can't use the telephone records or testify about them
 7    publicly without getting a 6(e) order.  But he can't say I
 8    got these records through the grand jury process.  So the
 9    same way in which there can't be any discussion about these
10    were used at the settlement proceeding, all right.
11              I mean, anything that was used in any settlement
12    proceedings or presentation is not coming into evidence.
13    But the information that was developed as background
14    information is going to come in.
15              All right.  So, Ms. Dunn, I assume this is your
16    motion, or Ms. Rhee?
17              MS. DUNN:  It's Ms. Rhee's motion.
18              THE COURT:  Ms. Rhee, I'll give you a brief
19    opportunity to see if you understand the line that I'm
20    drawing here.  Okay.
21              MS. RHEE:  Yes, Your Honor.
22              THE COURT:  Go ahead.
23              MS. RHEE:  I do understand.  But here's the
24    complication that I would just like to raise for the Court.
25              THE COURT:  All right.
```

17

1              MS. RHEE:  Because it is not a simple X/not X, and

2   this is the concern which is in your hypothetical where an

3   engineer is on the stand talking about the feasibility of

4   DOJ's proposal and why DOJ's proposal is not workable, if

5   Ms. Wood or anybody else on the DOJ team then says:  Have

6   you ever considered the feasibility of whatever component or

7   aspect of DOJ's proposal?  And then that engineer answers:

8   No, we did not.  And then DOJ wants to impeach, essentially,

9   or test the credibility with the actual feasibility that was

10  done, that gets into then a mini trial about the feasibility

11  studies that were done that are at issue here are not

12  aligned with and are not coterminous with DOJ's remedy

13  proposal.

14              For example, Your Honor, just to give a very

15  specific example because this came out in reams and reams

16  and reams of deposition testimony, that what Google studied

17  internally was a possible business divestiture.  And a

18  business divestiture is not at all what DOJ is asking for

19  here.  And there is a great amount of back-and-forth cross

20  testimony about what it is that Google actually studied, the

21  confines of what Google studied, the parameters of what

22  Google studied them, right, and the depth at which Google

23  studied them.  And that is all going to end up being a mini

24  trial under the guise of impeachment when, in fact, the

25  witness is credibly answering that is not what we studied.

18

1   Because what DOJ is proposing here, as this Court full well

2   knows in 60-plus pages of proposed remedies, is a full

3   technical separation and divestiture of not just what they

4   call "AdX code" but all of its dependencies and utilities

5   that it relies upon in order to be used in the same way as

6   it presently runs.  That is a very significant request, and

7   that is not identical, in any way, shape or form, to what

8   those feasibility studies were.

9           And that is the reason why we go back to first

10  principles, which is under 408, what is not allowed to

11  happen is to have essentially a mini trial about what were

12  those discussions and what informed those discussions.

13          THE COURT:  Well, I doubt that engineers would be

14  the people who would be discussing business feasibility.

15  Engineers are going to discuss technical feasibility.  And

16  it's the technical feasibility that's the issue here.

17          In her expert deposition, it was quite obvious

18  that one of the issues you were trying to get at was the

19  degree to which Dr. Bjedov was relying upon the expert --

20  I'm sorry, the technical work that was done in those -- some

21  of those reports.  I mean, it was obvious.  And, again, I

22  didn't read the reports, so I don't know what it was, but

23  you can tell from how the deposition was going that that was

24  a major concern for you all.  That's got to be technical;

25  she wasn't looking at business issues.

                                                            19

1          MS. RHEE:  Actually, Your Honor, that's where,

2     again, there are further complications.  Because even to

3     offer a business divestiture requires technical work, and it

4     requires technical time, and it requires the involvement of

5     the engineers.

6          For example -- I mean, just to give a very simple

7     example.  When you talk about custom migration -- customer

8     migration, which is core to a business divestiture, that

9     still requires a lot of engineering support to figure out

10     how do you coalesce from within the current systems where

11     all of that customer data lives and then port it over and

12     have the technical capability of creating that interface for

13     the ease of migration and portability.

14          So even though it is absolutely within the four

15     corners of a business divestiture, you still need

16     engineering assessment about the timeline, right, about the

17     ease, about what the head count would be and what actually

18     needs to get built.

19          Again, in the Court's hypothetical of the engineer

20     on the stand when asked a perfectly reasonable and

21     legitimate question:  Have you actually studied this, "this"

22     being DOJ's divestiture proposal, and that engineer answers

23     truthfully:  No, not this, then insofar as the Court is

24     inclined to allow the introduction of the underlying

25     materials and a whole extended Q and A about what it is that

                                                              20

1    the engineer actually studied, you're getting into these

2    complications and distinctions about, again, why is it that

3    Google was studying a business divestiture?  Why were those

4    engineers looking at the time frames that were at issue?

5    And that has nothing to do with what DOJ is asking for

6    today.

7           THE COURT:  All right.  Well, I'm not going to

8    permit the government or DOJ to argue why you were doing the

9    report.  So the why is not a question you may ask.

10          The question is:  Did you do a report?  What did

11   you find?  They can ask non-leading, appropriate questions,

12   which is the better way of doing it, frankly.  I often

13   distrust the answers to leading questions.  And, again,

14   because I don't have a jury to worry about, I can control,

15   to some degree, how you all interrogate the witnesses.

16          But I do think, as I said, that the line that was

17   drawn for purposes of discovery, while I recognize there's a

18   difference between allowing materials to be discovered --

19   and that doesn't necessarily mean they are admissible --

20   with the appropriate controls, which I think I can exercise,

21   and I'll give you opportunities when the issues come up

22   during the actual trial to renew a specific objection.  I'm

23   going to permit that the background data, the background

24   reports that these witnesses produced -- not necessarily the

25   final report itself, I don't know whether the document

                                                              21

```
1    itself goes into evidence, but questions about it, so that I
2    have an understanding of what Google has believed and its
3    own internal people have talked about in terms of
4    feasibility of making changes that would get around these
5    problems that we have right now; all right?
6            MS. RHEE:  Understood, Your Honor.
7            THE COURT:  All right.  So, again, it may be a
8    slightly messy trial, we'll have to see.  But I am, again,
9    denying the overall objection so that the background
10   information cannot come in.  All right.
11           But anything that was actually presented to either
12   the EU, or if there have been any discussions with DOJ or
13   any of the state attorney generals, or even in the other
14   litigation, that does not come in.  All right.  Okay.
15           Yes, Ms. Wood.
16           MS. WOOD:  Understood, Your Honor.
17           I think that only leaves the remaining question of
18   the sealing of those documents.  To the extent we show those
19   documents to the witness, the underlying feasibility
20   analysis to the witness, Google has asked that all internal
21   analysis be completely sealed.  And the government has taken
22   the position that there's no basis for the sealing of those
23   documents.
24           THE COURT:  No, I think those have to be sealed at
25   this point.  We'll have to see how we talk about them in
```

                                                                    22

 1   court.  So there may be some portions of -- you should try

 2   to -- you should try to ask your questions in such a way

 3   that we don't have to get involved in sealing.

 4          MS. WOOD:  Understood, Your Honor.  We will always

 5   endeavor never to have to seal the courtroom at all.

 6          THE COURT:  Yes.

 7          MS. WOOD:  But it is Your Honor's ruling that all

 8   of the Rule 408 material -- what Google has classified as

 9   Rule 408, we disagree, that all of those materials can be

10   sealed?

11          THE COURT:  At this point, yes.

12          MS. WOOD:  Okay.

13          THE COURT:  All right.

14          MS. WOOD:  Understood, Your Honor.

15          THE COURT:  All right.  And speaking about

16   exhibits, we're going to follow the same protocol we did

17   during the liability portion of the trial.  That is, the

18   burden's on counsel to make sure that the exhibits are

19   publicly uploaded so that the public can get access to them

20   by, what, 10:00 the following day of trial, that's what we

21   decided?

22          MS. WOOD:  Yes, Your Honor.

23          THE COURT:  All right.  Now, I don't know whether

24   we'll have any last-minute emergency motions, but obviously

25   those would be on Friday.  All right.  The trial starts

                                                           23

```
 1   Monday.  We're starting at 9:30.  I'm going to try to keep
 2   to the 9:30 to 6:00 schedule as much as possible.  There are
 3   a couple of things floating around within the court that may
 4   require occasional changes of the schedule.
 5           We're having issues, among other things, as you
 6   know, with ECF that have crossed some issues, and there are
 7   a couple of other minor things.  I am still running a
 8   docket.  I'm going to start several mornings with
 9   non-related matters at 8:30.  So you may not always be able
10   to get in here early.
11           We're going to do the same thing that we did last
12   time giving you access to the witness courtrooms across the
13   hall.  I think they will be labeled for you all, so you can
14   do what you did last time.  And then the two witnesses rooms
15   that are closer to this courtroom will be for your
16   witnesses.  All right.
17           So I'm going to issue a slightly revised, you
18   know, schedule in terms of we're giving Google the full two
19   rows in the center section for the trial.
20           We found last time that many of the media
21   preferred being in the overflow courtroom so they could go
22   back and forth.  So I'm still going to have two or three
23   rows for the media on the right side as we did last time,
24   but 701, which is actually open this morning as well, will
25   be available.
```

24

```
1              I cannot guarantee that the technology will always
2    work.  And, again, as we said last time, we're not going to
3    slow the trial down or pause it just because the
4    communications across the hall are not working.  We will
5    make every effort to keep that going.  And that is another
6    reason why, if we can get the witnesses here live, that's
7    preferable than doing it by video, which increases the
8    chance that it may not be as accessible in the other
9    courtroom.
10             Are there any other issues that either side is
11   thinking about at this point that we need to address?
12             MS. WOOD:  Your Honor, just two as far as the
13   government is concerned that I'm aware of.
14             One is whether -- the remainder of Google's motion
15   to seal, I think that still needs to be adjudicated.
16             THE COURT:  Right.
17             MS. WOOD:  And then the last issue is if we could
18   understand the Court's preferences with respect to either
19   closing arguments or post-trial briefings just so we can be
20   prepared for those when or if the need arise.
21             THE COURT:  Well, I think last time I gave you,
22   what, 30 days after that trial closed?
23             MS. WOOD:  Last time we -- there was a short
24   period of time before the post-trial briefs were submitted
25   and then a short period of time after that before we had
```

25

```
 1    closings.  I would think it was like maybe 30 days or three
 2    weeks in between each of those.
 3            THE COURT:  All right.  We can follow a similar
 4    schedule unless there's a problem for Google.
 5            MS. DUNN:  Thirty days sounds good to us, Your
 6    Honor.  We can also look back at what happened last time,
 7    but that sounds ...
 8            THE COURT:  Why don't you all get together and
 9    submit a proposed order to me.  So that way we would not
10    have closing argument at the end of the evidence portion of
11    the trial.  You would do the follow-up briefing and then
12    come back and do an oral argument at that point.  So it's
13    very close to the schedule we did last year.
14            MS. DUNN:  That makes sense, Your Honor.
15            MS. WOOD:  Your Honor, the plaintiffs would only
16    ask that, you know, as expeditiously as possible given, you
17    know, the stakes at issue.
18            THE COURT:  All right.  And the only other thing
19    is, I think it's going to be useful to give careful
20    attention to what happened in the Search case.  I think that
21    has potential impact on the outcome of the remedies here.
22    And so I'm hoping that both sides are prepared and have
23    prepared to significantly address that.
24            MS. WOOD:  We will be addressing the Court's
25    opinion in the briefs that are due this Friday.  In the
```

```
 1    Search matter.

 2           With respect to the plaintiffs' case in chief, I

 3    don't believe the actual evidence will have a tremendous

 4    amount of overlap on the ad tech market.  The Court can

 5    certainly explore that, but I don't believe any of the

 6    remedies that were imposed in the Search case have a direct

 7    and immediate effect on the ad tech markets, per se.

 8    Obviously to the extent Google believes differently, they

 9    can elicit that on cross-examination.

10           THE COURT:  Well, I would be interested in getting

11    your positions on that.

12           MS. DUNN:  Yes.  Your Honor, Google does plan to

13    address that, and we do think that the Search opinion and

14    what happened in that case does bear on this case, so we

15    will elucidate that and address it in the briefs and in

16    argument.

17           THE COURT:  All right.  Again, do you anticipate

18    any other issues coming up before Monday?

19           MS. WOOD:  The one -- one issue raised by Your

20    Honor's notification today about deposition designations is

21    whether we would be able to have permission to modify the

22    14-day advance notice of subpoenas under the local rules.

23    As I understand, most subpoenas require 14 days advance

24    notice.  You know, we will certainly endeavor to secure the

25    cooperation of any witnesses that we can, but we may not be
```

27

```
 1    able to timely subpoena them under the local rules.

 2              Furthermore, there is at least one witness,

 3    potentially two, who reside outside of the United States and

 4    for whom subpoenas do not compel their testimony.  We,

 5    again, will make every effort to secure their cooperation,

 6    and we've been able to do that in the past, and I'm hopeful

 7    that we'll be able to do it again, but I just wanted to

 8    alert the Court to that possibility.

 9              THE COURT:  Well, I assume it's the fellow from

10    the UK?

11              MS. WOOD:  Correct.  From France, actually.  But

12    yes, Your Honor.

13              THE COURT:  Didn't we have one from the UK as

14    well?

15              MS. WOOD:  He has a British accent, but he

16    actually lives here.

17              THE COURT:  Okay.  All right.

18              MS. WOOD:  We have one from Canada and one from

19    France.  But the one from France was going to be submitted

20    through deposition designation, and so now we'll attempt to

21    secure him either live, if we can get him to come, or

22    through video conference.  But I don't believe we have the

23    ability to legally subpoena him outside of the jurisdiction

24    of the United States.

25              And then with respect to the other witnesses that
```

                                                                28

 1  were going to testify via deposition designation, we would

 2  just ask for some modification of that local rule if

 3  permissible so that we can issue subpoenas to that effect.

 4          THE COURT:  Any objection from Google?

 5          MS. DUNN:  No objection.

 6          THE COURT:  All right.  So this works for both

 7  sides.  I'll reduce it to one week, seven days.  It gives

 8  you plenty of time.

 9          MS. WOOD:  Thank you, Your Honor.  And there were

10  also some Google witnesses that were subject to that, and

11  we'll work that out with counsel.  I assume they'll make

12  their witnesses available.

13          THE COURT:  You can produce them.

14          MS. DUNN:  Yes, Your Honor.  We will work on that.

15          THE COURT:  All right.  That's fine.  All right.

16          Is there anything further?

17          MS. WOOD:  Not for plaintiffs, Your Honor.

18          THE COURT:  And I don't know, I'll just invite --

19  oh, yes.  There was a motion from -- to file an amicus

20  brief.  I'm denying that.  We're not an appellate court, and

21  I think that there's been enough paper written in this case

22  or submitted.

23          Yeah.

24          MS. DUNN:  Your Honor, let me see if I can take a

25  shot at reversing your mindset on that, which is that there

                                                            29

```
 1    are individuals who would like to file amicus briefs, some
 2    of whom also filed in the *Search* case and do have valuable
 3    opinions and analyses to offer the Court.
 4              So I don't -- I'm not asking Your Honor to make
 5    any blanket ruling at this time, but we would ask the Court,
 6    for example, to just evaluate as these come in and see if
 7    the Court is interested in the briefing.
 8              THE COURT:  Well, I mean, if you have people -- if
 9    you have users out there who have -- obviously they favor
10    the Google side of the case to some degree, or at least some
11    type of remedy, you would be much better off having them
12    come in court and testify.  That's the type of evidence I
13    would find very valuable.  But submitting a brief -- I mean,
14    the law is the law.  I don't want to hear any argument about
15    divestiture versus non-divestiture and all that.  I mean,
16    that's been fully briefed already, and it's going to get
17    briefed more by very good counsel who are in court.  But the
18    facts are very interesting to the Court.  So if there are
19    amici out there who have factual information they want to
20    present, the best way is to have them come in and testify.
21              MS. DUNN:  Your Honor, two things with regard to
22    that.
23              First of all, there are individuals with such
24    facts that would be interesting to the Court.  Two issues.
25    One is, there are people who were not on the witness lists
```

```
 1    of the parties.  And even though we're loosening up the

 2    local rules with respect to subpoena, that is a challenge

 3    for some people.

 4            Also, some of the people we're talking about are

 5    small business people who, with no disrespect, it's not top

 6    on their list to come to court and testify against the

 7    government is one issue.  And also it's just difficult for

 8    them.  They're normal people running businesses, small

 9    businesses often.

10            So I do think there are people who would like the

11    Court to consider their views as amici to the case, but I

12    don't know that we are going to be able to get them here to

13    testify in this particular proceeding.

14            THE COURT:  Well, that would be the same way of

15    having them come in to testify.  That, in my view, would not

16    be an appropriate amicus brief anyway.

17            No.  If somebody has facts that they want the

18    Court to consider, they should be listed as a witness or

19    possibly a rebuttal or surrebuttal if we have to go that

20    route, but they can't come in by amici.

21            MS. DUNN:  Okay.  Your Honor, we will revisit this

22    and see if there are individuals who can come in potentially

23    as rebuttal witnesses.

24            THE COURT:  All right.  That's fine.  Very good.

25            MS. DUNN:  Thank you, Your Honor.
```

1          THE COURT:  We'll see you all on Monday unless you

2    settle.  All right.  And, you know, you're going to hear

3    that word a lot.

4              (Proceedings adjourned at 10:32 a.m.)

5              ----------------------------------

6    I certify that the foregoing is a true and accurate

7    transcription of my stenographic notes.

8

9                              *Stephanie Austin*

10                         Stephanie M. Austin, RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                                32