**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

UNITED STATES, et al.,         )
                                )
           Plaintiffs,      )
      v.                   )     No. 1:23-cv-00108-LMB-JFA
                                )
GOOGLE LLC,            )
                                )
           Defendant.     )

## <u>PLAINTIFFS' PROPOSED FINAL JUDGMENT</u>

WHEREAS, Plaintiff United States of America and Plaintiffs Commonwealth of Virginia and States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia (together, the "Plaintiff States," and together with the United States, the "Plaintiffs"), filed their Complaint on January 24, 2023;

AND WHEREAS, the Court conducted a bench trial in September 2024 and entered a Memorandum Opinion on April 17, 2025;

AND WHEREAS, the Court found Defendant Google LLC liable for violating Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully acquiring and maintaining monopoly power in the Open-Web Display Publisher Ad Server market and the Open-Web Display Ad Exchange market;

AND WHEREAS, the Court found Google liable for violating Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, by unlawfully tying its Open-Web Display Publisher Ad Server (DFP) and its Open-Web Display Ad Exchange (AdX);

NOW THEREFORE, upon the record at trial and all prior and subsequent proceedings, it is hereby ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this action and over Google.

## II. PURPOSES AND EFFECTS OF THIS FINAL JUDGMENT

The purposes and intended effects of this Final Judgment are to end Google's unlawful conduct, remedy the anticompetitive effects of that conduct, restore effective competition in the markets for Open-Web Display Publisher Ad Servers and Open-Web Display Ad Exchanges, terminate Google's unlawfully acquired monopolies, deny Google the fruits of its unlawful conduct, and prohibit practices likely to result in monopolization in the future.

To achieve these purposes, this Final Judgment requires Google, among other things, to (1) divest AdX; (2) refrain from reentering the market for Open-Web Display Ad Exchanges during the Supervision Period; (3) separate and provide via an open-source license DFP's Final Auction Logic; (4) refrain from controlling or unduly influencing the Open-Source Auction during the Supervision Period; (5) if determined to be necessary, divest DFP Remainder and refrain from reentering the market for Open-Web Display Publisher Ad Servers during the Supervision Period; (6) refrain from engaging in certain conduct that distorts the competitive process in the relevant markets; (7) provide certain data and APIs that foster transparency, customer choice, and competition; and (8) disgorge certain profits Google receives from its unlawfully acquired monopolies. This Final Judgment also requires the appointment of both a Divestiture Trustee to oversee the divestitures contemplated herein and a Monitor to ensure that Google complies with all its obligations under this Final Judgment.

### III. APPLICABILITY AND ASSET PRESERVATION

A.     This Final Judgment applies to Google and all other persons in active concert or participation with Google who receive actual notice of this Final Judgment.

B.     Google retains the obligation to operate all businesses affected by this Final Judgment and use best efforts to preserve the assets of such businesses and operate them in the ordinary course except as modified by the terms of this Final Judgment, and also to perform any services necessary to effectuate the purposes and intended effects of this Final Judgment.

### IV. DEFINITIONS

1.     "Ad Buying Tool" means a tool that provides advertisers the opportunity to purchase Ad Inventory.

2.     "Ad Candidate" means a digital advertisement that an advertiser seeks to place in Ad Inventory.

3.     "Ad Exchange" means a tool that connects Publishers who have Ad Inventory to sell with advertisers looking to place ads, often directly and in real time through an auction system via an Ad Buying Tool.

4.     "Ad Impression" or "Impression" means a single digital advertisement shown (or to be shown) for a single user on a single occasion.

5.     "Ad Inventory" or "Inventory" means the space accompanying Publishers' digital content in which an advertiser's ad can be placed.

6.     "AdWords" means Google's Ad Buying Tool, now known as Google Ads, through which advertisers can buy, *inter alia*, Open-Web Display Ad Inventory.

7.     "AdX" means Google's Ad Exchange capable of transacting, *inter alia*, Open-Web Display Ad Impressions, and which consists of the AdX Divestiture Assets.

8.      "AdX Acquirer" means an entity, approved in writing by Plaintiffs in their sole discretion, to which Google divests the AdX Divestiture Assets.

9.      "AdX Agreement Date" means the date on which Google executes a contract for the sale of AdX to the AdX Acquirer.

10.      "AdX Closing Date" means the date on which the closing of the transaction between Google and the AdX Acquirer occurs.

11.      "AdX Divestiture Assets" means (a) all of Google's rights, titles, and interests in and to, or a perpetual, assignable and royalty-free license to, all intellectual property (including the AdX Reference Source Code) and any brand names relating to or used in connection with AdX; (b) all customer contracts and relationships for the supply of services by AdX, including contracts and relationships between Google and (i) Publishers in relation to the AdX auction, and (ii) Ad Buying Tools in relation to the AdX auction; (c) all customer and other records associated with AdX; (d) at the election of the AdX Acquirer, all historic bidding data used by AdX that Google retains in the ordinary course of business; (e) all cookie matching tables and other types of advertising targeting data used or retained by AdX; and (f) all other assets reasonably necessary for the AdX Acquirer to operate AdX as it exists when this Final Judgment is entered. Any dispute about what assets are reasonably necessary to operate AdX as it exists when this Final Judgment is entered will be resolved by the Divestiture Trustee, subject to written approval by Plaintiffs in their sole discretion.

12.      "AdX Migration Date" means the date on which AdX has been fully migrated from Google to the AdX Acquirer.

13.    "AdX Reference Source Code" means the source code used by Google to operate AdX (including all utilities on which AdX relies) in a format readable and useable by the AdX Acquirer.

14.    "AdX Relevant Personnel" means all full-time, part-time, or contract employees of Google, wherever located, primarily involved in the AdX Divestiture Assets, at any time between January 24, 2023, and the AdX Closing Date. Plaintiffs, in their sole discretion, will resolve any disagreement relating to which employees are AdX Relevant Personnel.

15.    "API" means application programming interface.

16.    "Bid Request" means a request to bid on an Impression.

17.    "Configurations" means the settings, inputs, and rules selected by Publishers to govern the monetization of Ad Inventory.

18.    "Data Portability API" has the meaning provided in Section IX(D).

19.    "Data Signals" means any information that an Ad Buying Tool uses to evaluate the value of an Impression.

20.    "DFP" or "DoubleClick for Publishers" means Google's Publisher Ad Server capable of serving, *inter alia*, Open-Web Display Ads.

21.    "DFP Remainder" means the Publisher Ad Server functionality of DFP remaining after the creation of the Open-Source Auction, which consists of the DFP Remainder Divestiture Assets.

22.    "DFP Remainder Acquirer" means an entity, approved in writing by Plaintiffs in their sole discretion, to which Google divests the DFP Remainder Divestiture Assets.

23.    "DFP Remainder Agreement Date" means the date on which Google executes a contract for the sale of DFP Remainder to a DFP Remainder Acquirer.

24.     "DFP Remainder Closing Date" means the date on which the closing of the transaction between Google and a DFP Remainder Acquirer occurs.

25.     "DFP Remainder Divestiture Assets" means (a) all of Google's rights, titles, and interests in and to, or a perpetual, assignable and royalty-free license to, all intellectual property (including the DFP Remainder Reference Source Code) and any related brand names relating to or used in connection with DFP Remainder; (b) all customer contracts and relationships for the supply of services by DFP Remainder; (c) all customer and other records associated with DFP Remainder; (d) at the election of a DFP Remainder Acquirer, all historic Publisher data used by DFP Remainder that Google retains in the ordinary course of business; and (e) all other assets reasonably necessary to operate DFP Remainder as it exists at the time of a determination that the divestiture of DFP Remainder is necessary. Any dispute about what assets are reasonably necessary to operate DFP Remainder as it exists at the time of a determination that the divestiture of DFP Remainder is necessary will be resolved by the Divestiture Trustee, subject to written approval by Plaintiffs in their sole discretion.

26.     "DFP Remainder Reference Source Code" means the source code used by Google to operate DFP Remainder (including all utilities on which DFP Remainder relies) in a format readable and useable by DFP Remainder Acquirer(s).

27.     "DFP Remainder Migration Date" means the date on which DFP Remainder has been fully migrated from Google to a DFP Remainder Acquirer.

28.     "DFP Remainder Relevant Personnel" means all full-time, part-time, or contract employees of Google, wherever located, primarily involved in the DFP Remainder Divestiture Assets, at any time between January 24, 2023, and the latest DFP Remainder Closing Date.

Plaintiffs, in their sole discretion, will resolve any disagreement relating to which employees are DFP Remainder Relevant Personnel.

29.    "Direct Demand" means demand to purchase Ad Inventory directly from a Publisher.

30.    "Divestiture Trustee" has the meaning provided in Section XIII(B).

31.    "Divestiture Trustee Staff" means any staff, agents, experts, consultants, personnel, or advisors hired, contracted, appointed, or retained by the Divestiture Trustee under the terms of this Final Judgment.

32.    "DV360" means Google's demand-side platform, also known as Display & Video 360 and formerly known as DoubleClick Bid Manager or DBM.

33.    "Final Auction Logic" means any mechanism, functionality, computation, or logical process used by DFP to determine concurrently which advertisement(s) will serve (or "win") an Impression or Impressions and at what price, including functionalities that adjust bids (*e.g.*, Enhanced Dynamic Allocation, Billable Event Rate adjustments), functionalities that decide between Direct Demand and Indirect Demand (*e.g.*, Enhanced Dynamic Allocation), functionalities that calculate or optimize Publisher reserve prices (*e.g.*, Reserve Price Optimization, Optimized Pricing Rules), and functionalities that optimize Multi-Slot Auctions (*e.g.*, filtering candidate ads, performing competitive exclusions, and optimizing bids across ad slots), and related functionalities.

34.    "Floor" means the minimum price that a Publisher is willing to accept for an Impression or group of Impressions.

35.    "Google" means Defendant Google LLC, a limited liability company organized and existing under the laws of the State of Delaware with its headquarters in Mountain View,

California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

36.    "Google First-Party Data" means data generated from use of Google's properties (including YouTube, Gmail, and Google Search) or data obtained via Google's ownership of Chrome or Android.

37.    "including" and "include" mean including, but not limited to.

38.    "Indirect Demand" means demand to purchase Ad Inventory through an intermediary, such as an Ad Exchange.

39.    "Malfeasance" means conduct wholly outside the bounds of the law or reasonable disagreement.

40.    "Minimum Bid to Win" means historical information about the minimum bid that an advertiser or Ad Buying Tool would have needed to offer to win an Impression.

41.    "Monitor" has the meaning provided in Section XIII (A).

42.    "Monitor Staff" means any staff, agents, experts, consultants, personnel, or advisors hired, contracted, appointed, or retained by the Monitor under the terms of this Final Judgment, as well as members of the Technical Committee.

43.    "Monitored Escrow Account" has the meaning provided in Section XII(A).

44.    "Multi-Slot Auction" means an auction that determines the advertisements that will serve (or "win"), and at what prices, for multiple slots or positions for Ad Inventory on a page.

45.    "Net Revenues" means the amount of revenue remaining after deducting variable costs associated with the operation of AdX or DFP, as applicable.

8

46.    "Open-Source Auction" means an instance of the Final Auction Logic that is made available under an open-source license, as described in Section VII.

47.    "Open-Source Auction Administrator" means the neutral, third-party entity identified by Plaintiffs pursuant to Section VII(B) that has authority and responsibility to administer the Open-Source Auction.

48.    "Open-Source Auction API" means an API that standardizes communication between the Open-Source Auction and parties integrating with it, as described in Section IX(F).

49.    "Open-Web Display Ad" means a display ad that runs on websites that use third-party ad tech infrastructure to match advertisers' ads to Publishers' Inventory.

50.    "Open-Web Display Ad Exchange" has the same meaning as "ad exchanges for open-web display advertising," as set forth at pages 50–54 of the Court's April 17, 2025, Memorandum Opinion.

51.    "Open-Web Display Ad Impression" means a single Open-Web Display Ad shown (or to be shown) for a single user on a single occasion.

52.    "Open-Web Display Ad Inventory" means the space accompanying Publishers' digital content in which an advertiser's Open-Web Display Ad can be placed.

53.    "Open-Web Display Publisher Ad Server" has the same meaning as "publisher ad servers for open-web display advertising," as set forth at pages 43–50 of the Court's April 17, 2025, Memorandum Opinion.

54.    "Post-Migration AdX Transitional Period" has the meaning provided in Section VI(O).

55.    "Post-Migration DFP Remainder Transitional Period" has the meaning provided in Section VII(O).

56.    "Prebid Server" means the open-source solution for server-to-server header bidding developed by Prebid.org, including any implementations thereof.

57.    "Programmatic Demand" means demand to purchase Ad Inventory through an automated auction process.

58.    "Publisher" means an owner of digital content where advertisements are displayed.

59.    "Publisher Ad Server" means a tool that helps Publishers manage and sell their Ad Inventory, including deciding which ad to show to a specific user and then displaying that ad on the Publisher's digital property.

60.    "Supervision Period" has the meaning provided in Section V(E).

61.    "Technical Committee" has the meaning provided in Section XIII(A).

61.62.  "Transition Period" has the meaning provided in Section V(B).

## V. TERM, EXTENSIONS, AND PENALTIES FOR NON-COMPLIANCE

A.    ***Term of Final Judgment.*** The term of this Final Judgment begins on the date the Court enters this Final Judgment and ends five years after the expiration of the Supervision Period, unless the Court grants an extension.

B.    ***Term of Transition Period.*** The Transition Period begins on the date the Court enters this Final Judgment and ends upon application by Plaintiffs and further order of this Court once all the following conditions are met:

1.    The Divestiture Trustee certifies to Plaintiffs that AdX has been fully and successfully divested pursuant to Section VI;

2.    The Monitor certifies to Plaintiffs that

a.    The Open-Source Auction has been published pursuant to Section VII; and

     b.     Google is in compliance with all other terms of this Final Judgment; and

   3.     Plaintiffs, in their sole discretion, approve the foregoing certifications by the
Divestiture Trustee and the Monitor.

C.     ***Court Approval of the End of the Transition Period.*** Once Plaintiffs have
approved the foregoing certifications by the Divestiture Trustee and the Monitor, Plaintiffs must
apply to the Court for an order declaring the end of the Transition Period. The Transition Period
will not end unless and until the certifications and approvals set forth in Section V(B) are made.
It remains the Court's ultimate determination, accounting for the views of the Plaintiffs, Monitor,
and Divestiture Trustee, whether the conditions set forth in Section V(B) have been met and
whether the Transition Period has ended.

D.     ***Extension of Transition Period.*** The Transition Period may be extended by up to
one year according to the terms of Section V(F).

E.     ***Term of Supervision Period.*** The Supervision Period begins on the date the Court
enters this Final Judgment and lasts for ten years, unless the Court grants an extension pursuant
to Section V(F).

F.     ***Extension of Supervision Period.*** The Supervision Period may be extended by
order of the Court upon a request from Plaintiffs or the Monitor, though the Monitor may not
seek any extension of the Supervision Period without prior written approval from Plaintiffs, in
their sole discretion.

G.     ***Penalties for Google Delaying the End of the Transition Period.*** If the
Transition Period extends more than five years past the date of entry of this Final Judgment, the
Monitor or the Divestiture Trustee may recommend to Plaintiffs, and Plaintiffs may seek
penalties, including fines, against Google pursuant to Section XIX.

## VI. DIVESTITURE OF ADX

A.    ***Obligation to Divest AdX.*** Google must promptly and fully divest AdX, to a

buyer approved in writing by the Plaintiffs in their sole discretion (the AdX Acquirer), subject to

terms that the Court and Plaintiffs approve.

B.    ***Google Preparation for AdX Divestiture Process*.** Upon entry of this Final

Judgment, Google must begin collecting and preparing all information and documents relating to

AdX that are customarily provided in a due diligence process. Google must complete the

collection and preparation of such information and documents within 90 calendar days of entry

of this Final Judgment. No later than the entry of this Final Judgment, Google must begin to

identify the source code files to be divested, all dependencies that require replacement, and

potential candidates for replacement dependencies to present to the AdX Acquirer. Google must

complete this work and provide the results to Plaintiffs and the Divestiture Trustee within 180

calendar days of entry of this Final Judgment.

C.    ***Publicizing the Availability of AdX Divestiture Assets.*** Google must promptly

make known, by means approved by the Divestiture Trustee, the availability of AdX for sale.

Google must inform any person making an inquiry relating to a possible purchase of AdX that

AdX is being divested in accordance with this Final Judgment and must provide that person with

a copy of this Final Judgment. Google must offer to promptly furnish to all prospective AdX

Acquirers, subject to confidentiality assurances approved by the Divestiture Trustee all

information and documents relating to AdX ~~that~~ that are customarily provided in a due diligence

process and any other information and documents relating to AdX that the Divestiture Trustee

concludes are necessary to facilitate an orderly and fully informed sale of AdX. Google must

make all such information and documents available to the Plaintiffs, the Monitor, and the

Divestiture Trustee at the same time that the information and documents are made available to any prospective AdX Acquirer.

D.    ***Timing of AdX Agreement Date.*** Within 180 calendar days of Google identifying the source code files to be divested, all dependencies that require replacement, and potential candidates for replacement dependencies pursuant to Section VI(B), Google must secure and provide to the Divestiture Trustee and Plaintiffs proof of an executed contract for the sale of AdX to the AdX Acquirer, consistent with the terms of this Final Judgment, including that the AdX Acquirer must be acceptable to Plaintiffs in their sole discretion.

E.    ***Adequacy of AdX Acquirer.*** The AdX Acquirer must, in Plaintiffs' sole judgment, (1) be independent of and unconnected to Google, and (2) have the intent and capability (or be likely to have the capability as of the AdX Migration Date)—including the necessary managerial, operational, technical, and financial capability—to compete effectively in the market for Open-Web Display Ad Exchanges. In evaluating the adequacy of the AdX Acquirer, Plaintiffs may also consider whether the sale of AdX to the AdX Acquirer may substantially lessen competition.

F.    ***AdX Divestiture Specific Performance.*** The contract between Google and the AdX Acquirer for the sale of AdX must provide the AdX Acquirer with the ability to seek specific performance of the sale and successful transfer of the AdX Divestiture Assets.

G.    ***Timing of AdX Closing Date.*** Within 90 calendar days after the AdX Agreement Date, Google must complete the sale of AdX, consistent with the terms of this Final Judgment.

H.    ***Transfer of AdX Ancillary Agreements and Customer Relationships.*** For all contracts, agreements, and customer relationships (or portions thereof) included in the AdX Divestiture Assets, Google must assign or otherwise transfer all contracts, agreements, and

customer relationships to the AdX Acquirer no later than the AdX Closing Date, *provided,*
*however,* that for any contract or agreement that requires the consent of another party to assign or
otherwise transfer, Google must use best efforts to accomplish the assignment or transfer.
Google must not interfere with any negotiations between the AdX Acquirer and a contracting
party.

        I.      ***Google Cooperation with AdX Acquirer Regarding AdX Relevant Personnel.***
Google must cooperate with and assist the AdX Acquirer in identifying and, at the option of the
AdX Acquirer, hiring AdX Relevant Personnel, including:

        1.   Within 10 business days following receipt of a request by the AdX Acquirer,
Plaintiffs, or the Divestiture Trustee, Google must identify all AdX Relevant Personnel to the
AdX Acquirer, Plaintiffs, and the Divestiture Trustee, including by providing organization charts
covering all AdX Relevant Personnel.

        2.   Google must not interfere with any effort by the AdX Acquirer to employ any
AdX Relevant Personnel. Interference includes offering to increase the compensation or improve
the benefits and/or employment terms of AdX Relevant Personnel unless (a) the offer is part of a
company-wide increase in compensation or improvement in benefits and/or employment terms
that was announced prior to entry of this Final Judgment or (b) the offer is approved in writing
by Plaintiffs in their sole discretion. Google's obligations under this Section VI(I)(2) expire 180
calendar days after the AdX Closing Date.

        3.   For AdX Relevant Personnel who elect employment with the AdX Acquirer
within 180 calendar days after the AdX Closing Date, Google must waive all non-compete and
non-disclosure agreements; vest and pay to the AdX Relevant Personnel (or to the AdX Acquirer
for payment to such personnel) on a prorated basis any bonuses, incentives, other salary, benefits

or other compensation fully or partially accrued at the time of the transfer of the AdX Relevant

Personnel to the AdX Acquirer; vest any unvested pension and other equity rights; and provide

all other benefits that those AdX Relevant Personnel otherwise would have been provided had

the AdX Relevant Personnel continued employment with Google, including any retention

bonuses or payments. Google may maintain reasonable restrictions on disclosure by AdX

Relevant Personnel of Google's proprietary non-public information that is unrelated to AdX and

not otherwise required to be disclosed pursuant to this Final Judgment.

4.   For a period of two years after the AdX Closing Date, Google may not solicit to

rehire AdX Relevant Personnel who were hired by the AdX Acquirer within 180 calendar days

after the AdX Closing Date unless (a) an individual is terminated or laid off by the AdX

Acquirer, or (b) the AdX Acquirer agrees in writing that Google may solicit to rehire that

individual. Nothing in this Section VI(I)(4) prohibits Google from advertising employment

openings using general solicitations or advertisements and rehiring AdX Relevant Personnel who

apply for an employment opening through such a general solicitation or advertisement.

J.     ***Timing of AdX Migration Date.*** Within 540 calendar days after the AdX

Agreement Date, Google must complete the migration of AdX to the AdX Acquirer, consistent

with the terms of this Final Judgment. Google must use its best efforts to migrate AdX as

expeditiously as possible. Google must not take any action that would jeopardize or impede the

completion of the migration of AdX.

K.     ***Extension of Time.*** If the Divestiture Trustee determines that Google is using best

efforts, Google may seek an extension of the deadlines in Sections VI(B), VI(D), VI(G), or VI(J)

by no more than a total of one additional year (cumulatively across all deadlines). Any such

extension is subject to written approval by Plaintiffs in their sole discretion.

15

L.      ***AdX Migration Services.*** At the AdX Acquirer's option, and subject to written approval by Plaintiffs in their sole discretion, on or before the AdX Agreement Date, Google must execute a contract with the AdX Acquirer to provide services that the AdX Acquirer needs to migrate AdX from Google's technological infrastructure to the AdX Acquirer's technological infrastructure, at a reasonable cost-based fee, until the AdX Migration Date. Such migration services may, at the AdX Acquirer's option include: (1) providing infrastructure services; (2) updating technical and customer-facing documents and AdX design elements and branding; and (3) providing technical support to the AdX Acquirer, including with respect to using the AdX Reference Source Code. Any amendment to or modification of any provision of a contract between Google and the AdX Acquirer to provide migration services is subject to written approval by Plaintiffs in their sole discretion. The AdX Acquirer may terminate a contract with Google (including an extension) for migration services, or any portion of a contract (including an extension) for migration services, without cost or penalty at any time upon 30 calendar days' written notice to Google and Plaintiffs. Any dispute about the terms or implementation of any migration services agreement will be resolved by the Divestiture Trustee, and the Divestiture Trustee's resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. The employees of Google tasked with providing migration services to the AdX Acquirer must not share any competitively sensitive information of the AdX Acquirer with any other employee of Google.

M.      ***AdX Cloud Computing Services.*** At the AdX Acquirer's option, and subject to written approval by Plaintiffs in their sole discretion, on or before the AdX Agreement Date, Google must execute a contract with the AdX Acquirer to provide any cloud computing services that the AdX Acquirer needs to operate AdX, at a reasonable cost-based fee, for at least five

years. Any amendment to or modification of any provision of a contract between Google and the AdX Acquirer to provide cloud computing services is subject to written approval by Plaintiffs in their sole discretion. The AdX Acquirer may terminate a contract with Google (including an extension) for cloud computing services, or any portion of a contract (including an extension) for cloud computing services, without cost or penalty at any time upon 30 calendar days' written notice to Google and Plaintiffs. If Google elects not to provide cloud computing services to the AdX Acquirer beyond the time period required by this Final Judgment, Google must provide notice to the AdX Acquirer at least two years before the cloud computing services agreement expires. Any dispute about the terms or implementation of any cloud computing services agreement will be resolved by the Divestiture Trustee, and the Divestiture Trustee's resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. The employees of Google tasked with providing cloud computing services to the AdX Acquirer must not share any competitively sensitive information of the AdX Acquirer with any other employee of Google.

N.    ***AdX Operation Services.*** At the AdX Acquirer's option, and subject to written approval by Plaintiffs in their sole discretion, on or before the AdX Closing Date, Google must execute a contract with the AdX Acquirer to provide post-closing operation services to the AdX Acquirer at a reasonable cost-based fee until the AdX Migration Date. Such post-closing operation services may, at the AdX Acquirer's option, include all services needed to operate AdX while the migration of AdX to the AdX Acquirer takes place. Any amendment to or modification of any provision of a contract between Google and the AdX Acquirer to provide operation services is subject to written approval by Plaintiffs in their sole discretion. The AdX Acquirer may terminate a contract with Google (including an extension) for operation services,

or any portion of a contract (including an extension) for operation services, without cost or penalty at any time upon 30 calendar days' written notice to Google and Plaintiffs. Any dispute about the terms or implementation of any post-closing operation services agreement must be resolved by the Divestiture Trustee, and the resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. The employees of Google tasked with providing operation services must not share any competitively sensitive information of the AdX Acquirer with any other employee of Google.

O.      ***Post-Migration AdX Transitional Period.*** The Post-Migration AdX Transitional Period begins on the AdX Migration Date and will last only as long as reasonably necessary for the AdX Acquirer to migrate AdX customers from Google to the AdX Acquirer. The Post-Migration AdX Transitional Period will not last longer than one year after the AdX Migration Date, except that, at the AdX Acquirer's option, the Post-Migration AdX Transitional Period may be extended up to one additional year if the Divestiture Trustee concludes an extension is reasonably necessary to accomplish the purposes of this Final Judgment, and if approved in writing by Plaintiffs in their sole discretion.

P.      ***AdX Transition Services.*** At the AdX Acquirer's option, and subject to written approval by Plaintiffs in their sole discretion, on or before the AdX Migration Date, Google must execute a contract with the AdX Acquirer to provide post-migration transition services to the AdX Acquirer at a reasonable cost-based fee during the Post-Migration AdX Transitional Period. Such post-migration transition services may, at the AdX Acquirer's option include: (1) providing infrastructure services; (2) updating technical and customer-facing documents and AdX design elements and branding; and (3) providing technical support to the AdX Acquirer, including with respect to using the AdX Reference Source Code. Any amendment to or modification of any

provision of a contract between Google and the AdX Acquirer to provide transition services is subject to written approval by Plaintiffs in their sole discretion. The AdX Acquirer may terminate a contract with Google (including an extension) for transition services, or any portion of a contract (including an extension) for transition services, without cost or penalty at any time upon 30 calendar days' written notice to Google and Plaintiffs. Any dispute about the terms or implementation of any post-migration transitional services agreement must be resolved by the Divestiture Trustee, and the resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. The employees of Google tasked with providing transition services must not share any competitively sensitive information of the AdX Acquirer with any other employee of Google.

Q.      ***AdX Disablement.*** Within 90 calendar days of the ~~AdX~~ end of the latest Post-Migration ~~Date~~ AdX Transitional Period, Google must disable on its own servers AdX's technological ability to transact Open-Web Display Ad Impressions.

R.      ***Contents of AdX Divestiture Agreements.*** None of the terms of any agreement between the AdX Acquirer and Google may give Google the ability unreasonably to raise the AdX Acquirer's costs, to lower the AdX Acquirer's efficiency, or otherwise interfere in the ability of the AdX Acquirer to compete effectively in the market for Open-Web Display Ad Exchanges.

S.      ***Google's Warranties to AdX Acquirer.*** Google must warrant to the AdX Acquirer that (1) the AdX Divestiture Assets will be operational and without material defect on the date of their transfer to the AdX Acquirer; and (2) Google has disclosed all encumbrances on any part of the AdX Divestiture Assets, including on intangible property.

T.    ***Final Judgment Governs.*** If any provision of an agreement between Google and the AdX Acquirer varies from a provision of this Final Judgment, to the extent that Google cannot fully comply with both, this Final Judgment determines Google's obligations.

## VII. OPEN-SOURCE AUCTION

A.    ***Obligation to Separate the Final Auction Logic.*** Upon entry of this Final Judgment, Google must begin to identify the contents of the Final Auction Logic. Google must identify the contents of the Final Auction Logic within 30 calendar days of entry of this Final Judgment. Any dispute about the contents of the Final Auction Logic must be resolved by the Monitor, and the resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. Google must create an instance of the Final Auction Logic that is separate from DFP within two years of entry of this Final Judgment.

B.    ***Open-Source Auction Administrator.*** Plaintiffs must identify the Open-Source Auction Administrator within 180 calendar days of entry of this Final Judgment. The Open-Source Auction Administrator must, in Plaintiffs' sole judgment, (1) be independent of and unconnected to Google, and (2) have the intent and capability—including the necessary managerial, operational, technical, and financial capability—to administer the Open-Source Auction. If, during the term of this Final Judgment, the Open-Source Auction Administrator fails to satisfy either of these requirements, the Plaintiffs may identify a replacement Open-Source Auction Administrator that satisfies the requirements set forth in this paragraph.

C.    ***Obligation to Publish and Timing of Publication.*** Google must publish the Open-Source Auction within two years of the identification of the Open-Source Auction Administrator. Google must publish the Open-Source Auction as expeditiously as possible. Google must not take any action that would jeopardize or impede the publication of the Open-

Source Auction. Google must cause the Open-Source Auction to be publicly available in a web-based open-source repository, and that publication must at least include for the Open-Source Auction (1) an overview of logic and requirements guiding implementation, (2) working code, (3) documentation regarding testing, and (4) documentation regarding operationalizing the code.

D.    ***Initial Implementation.*** Google must ensure that the initial implementation of the Open-Source Auction substantially replicates the Final Auction Logic as it exists as of the date of the entry of this Final Judgment.

E.    ***Extension of Time.*** If the Monitor determines that Google is using best efforts, Google may seek an extension of the deadline for publication of the Open-Source Auction by no more than one additional year. Any such extension is subject to written approval by Plaintiffs in their sole discretion.

F.    ***Licensing.*** Google must ensure that the Open-Source Auction is available through an Apache 2.0 license, which must provide for a perpetual, worldwide, non-exclusive, no-charge, royalty-free, and irrevocable license that would allow any user to, among other things, reproduce, distribute, display, sell, and create derivative works of the Open-Source Auction.

G.    ***Obligation to Provide Technical Assistance.*** Google must provide any technical assistance to the Open-Source Auction Administrator that the Monitor concludes is reasonably necessary for the orderly and efficient operation of the Open-Source Auction.

H.    ***Final Auction Logic Disablement.*** Within 30 calendar days of publication of the Open-Source Auction, Google must disable the Final Auction Logic on its servers. Thereafter, Google may use the Open-Source Auction, but only in accordance with this Final Judgment.

I.    ***Operation of DFP Remainder.*** Following publication of the Open-Source Auction, Publisher customers of DFP Remainder must retain the ability to freely select the

version or implementation of the Open-Source Auction that is used for their Open-Web Display

Ad Inventory. Google must ensure that DFP Remainder sends any demand it receives for an

Open-Web Display Ad Impression—including both Direct Demand and Indirect Demand—to

the version or implementation of the Open-Source Auction that the Publisher of that Impression

selects.

## VIII. CONTINGENT DIVESTITURE OF DFP REMAINDER

A.    ***Contingent Obligation to Divest DFP Remainder.*** If a divestiture of DFP

Remainder is determined to be necessary pursuant to Section XIII(A)(67), then Google must

promptly and fully divest DFP Remainder to one or more DFP Remainder Acquirer(s) approved

in writing by the Plaintiffs in their sole discretion, subject to terms that the Court and Plaintiffs

approve.

B.    ***Google Preparation for DFP Remainder Divestiture Process.*** Upon a final

determination regarding the need for a divestiture of DFP Remainder pursuant to Section

XIII(A)(67), Google must begin collecting and preparing all information and documents relating

to DFP Remainder that ~~that~~ are customarily provided in a due diligence process and any other

information and documents relating to DFP Remainder that the Divestiture Trustee concludes are

necessary to facilitate an orderly and fully informed sale of DFP Remainder. Google must

complete the collection and preparation of such information and documents within 90 calendar

days of a final determination regarding the need for a divestiture of DFP Remainder pursuant to

Section XIII(A)(67). No later than upon a final determination regarding the need for a divestiture

of DFP Remainder pursuant to Section XIII(A)(67), Google must begin to identify the source

code files to be divested, all dependencies that require replacement, and potential candidates for

replacement dependencies to present to DFP Remainder Acquirer(s). Google must complete this

work and provide the results to Plaintiffs and the Divestiture Trustee within 180 calendar days of

a final determination regarding the need for a divestiture of DFP Remainder.

        C.     ***Publicizing the Availability of DFP Remainder Divestiture Assets.*** Upon a final

determination regarding the need for a divestiture of DFP Remainder pursuant to Section

XIII(A)(67), Google must promptly make known, by means approved by the Divestiture Trustee,

the availability of DFP Remainder for sale. Google must inform any person making an inquiry

relating to a possible purchase of DFP Remainder that DFP Remainder is being divested in

accordance with this Final Judgment and must provide that person with a copy of this Final

Judgment. Google must offer to promptly furnish to all prospective DFP Remainder Acquirers,

subject to confidentiality assurances approved by the Divestiture Trustee, all information and

documents relating to DFP Remainder that that are customarily provided in a due diligence

process and any other information and documents relating to DFP Remainder that the Divestiture

Trustee concludes are necessary to facilitate an orderly and fully informed sale of DFP

Remainder. Google must make all such information and documents available to the Plaintiffs,

the Monitor, and the Divestiture Trustee at the same time that the information and documents are

made available to any prospective DFP Remainder Acquirer.

        D.     ***Timing of DFP Remainder Agreement Date.*** Within 180 calendar days of

Google identifying the source code files to be divested, all dependencies that require

replacement, and potential candidates for replacement dependencies pursuant to Section VIII(B),

Google must secure and provide to the Divestiture Trustee and Plaintiffs proof of an executed

contract for the sale of DFP Remainder to each DFP Remainder Acquirer, consistent with the

terms of this Final Judgment, including that the DFP Remainder Acquirer(s) must be acceptable

to Plaintiffs in their sole discretion.

E.     ***Adequacy of DFP Remainder Acquirer(s).*** The DFP Remainder Acquirer(s)
must, in Plaintiffs' sole judgment, (1) be independent of and unconnected to Google, and
(2) have the intent and capability (or be likely to have the capability as of its DFP Remainder
Migration Date)—including the necessary managerial, operational, technical, and financial
capability—to compete effectively in the market for Open-Web Display Publisher Ad Servers. A
DFP Remainder Acquirer may not be the AdX Acquirer or otherwise have a beneficial interest in
the AdX Divestiture Assets. In evaluating the adequacy of any DFP Remainder Acquirer,
Plaintiffs may also consider whether the sale of DFP Remainder to that DFP Remainder Acquirer
may substantially lessen competition.

F.     ***DFP Remainder Divestiture Specific Performance.*** A contract between Google
and a DFP Remainder Acquirer(s) for the sale of DFP Remainder must provide the DFP
Remainder Acquirer(s) with the ability to seek specific performance of the sale and successful
transfer of DFP Remainder.

G.     ***Timing of DFP Remainder Closing Date(s).*** Within 90 calendar days after a DFP
Remainder Agreement Date, Google must complete the sale of DFP Remainder, consistent with
the terms of this Final Judgment.

H.     ***Transfer of DFP Remainder Ancillary Agreements and Customer
Relationships.*** For all contracts, agreements, and customer relationships (or portions thereof)
included in the DFP Remainder Divestiture Assets, Google must assign or otherwise transfer all
contracts, agreements, and customer relationships to the appropriate DFP Remainder Acquirer no
later than that DFP Remainder Acquirer's DFP Remainder Closing Date, *provided, however*, that
for any contract or agreement that requires the consent of another party to assign or otherwise
transfer, Google must use best efforts to accomplish the assignment or transfer. If there are

24

multiple DFP Remainder Acquirers, the Divestiture Trustee must allocate contracts, agreements, and customer relationships among DFP Remainder Acquirers. Google must not interfere with any negotiations between a DFP Remainder Acquirer and any contracting party.

I. ***Google Cooperation with DFP Remainder Acquirer Regarding DFP Remainder Relevant Personnel.*** Google must cooperate with and assist the DFP Remainder Acquirer(s) in identifying and, at the option of the DFP Remainder Acquirer(s), hiring DFP Remainder Relevant Personnel, including:

1. Within 10 business days following receipt of a request by a DFP Remainder Acquirer, Plaintiffs, or the Divestiture Trustee, Google must identify all DFP Remainder Relevant Personnel to that DFP Remainder Acquirer, Plaintiffs, and the Divestiture Trustee, including by providing organization charts covering all DFP Remainder Relevant Personnel.

2. Google must not interfere with any effort by a DFP Remainder Acquirer to employ any DFP Remainder Relevant Personnel. Interference includes offering to increase the compensation or improve the benefits and/or employment terms of DFP Remainder Relevant Personnel unless (a) the offer is part of a company-wide increase in compensation or improvement in benefits and/or employment terms that was announced prior to entry of this Final Judgment or (b) the offer is approved in writing by Plaintiffs in their sole discretion. Google's obligations under this Section VIII(I)(2) will expire 180 calendar days after the latest DFP Remainder Closing Date.

3. For DFP Remainder Relevant Personnel who elect employment with a DFP Remainder Acquirer within 180 calendar days after that DFP Remainder Acquirer's DFP Remainder Closing Date, Google must waive all non-compete and non-disclosure agreements;

vest and pay to the DFP Remainder Relevant Personnel (or to the DFP Remainder Acquirer for payment to the employee) on a prorated basis any bonuses, incentives, other salary, benefits or other compensation fully or partially accrued at the time of the transfer of the employee to the DFP Remainder Acquirer; vest any unvested pension and other equity rights; and provide all other benefits that those DFP Remainder Relevant Personnel otherwise would have been provided had the DFP Remainder Relevant Personnel continued employment with Google, including any retention bonuses or payments. Google may maintain reasonable restrictions on disclosure by DFP Remainder Relevant Personnel of Google's proprietary non-public information that is unrelated to DFP Remainder and not otherwise required to be disclosed by this Final Judgment.

4.      For a period of two years after a DFP Remainder Acquirer's DFP Remainder Closing Date, Google may not solicit to rehire DFP Remainder Relevant Personnel who were hired by that DFP Remainder Acquirer within 180 calendar days after its DFP Remainder Closing Date unless (a) an individual is terminated or laid off by that DFP Remainder Acquirer, or (b) the DFP Remainder Acquirer agrees in writing that Google may solicit to re-hire that individual. Nothing in this Section VIII(I)(4) prohibits Google from advertising employment openings using general solicitations or advertisements and re-hiring DFP Remainder Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

J.      ***Timing of DFP Remainder Migration Date(s).*** Within two years after a DFP Remainder Acquirer's DFP Remainder Agreement Date, Google must complete the migration of DFP Remainder to that DFP Remainder Acquirer, consistent with the terms of this Final Judgment. Google must use its best efforts to migrate DFP Remainder as expeditiously as

possible. Google must not take any action that would jeopardize or impede the completion of the migration of DFP Remainder.

K.    ***Extension of Time.*** If the Divestiture Trustee determines that Google is using best efforts, Google may seek an extension of the deadlines in Sections VIII(B), VIII(D), VIII(G), or VIII(J) by no more than a total of one additional year (cumulatively across all deadlines). Any such extension is subject to written approval by Plaintiffs in their sole discretion.

L.    ***DFP Remainder Migration Services.*** At a DFP Remainder Acquirer's option, and subject to written approval by Plaintiffs in their sole discretion, on or before that DFP Remainder Acquirer's DFP Remainder Agreement Date, Google must execute a contract with the DFP Remainder Acquirer to provide services that the DFP Remainder Acquirer needs to migrate DFP Remainder from Google's technological infrastructure to the DFP Remainder Acquirer's technological infrastructure, at a reasonable cost-based fee, until the DFP Remainder Migration Date for that DFP Remainder Acquirer. Such migration services may, at a DFP Remainder Acquirer's option include: (1) providing infrastructure services; (2) updating technical and customer-facing documents and DFP Remainder design elements and branding; and (3) providing technical support to a DFP Remainder Acquirer, including with respect to using the DFP Remainder Reference Source Code. Any amendment to or modification of any provision of a contract between Google and a DFP Remainder Acquirer to provide migration services is subject to written approval by Plaintiffs in their sole discretion. A DFP Remainder Acquirer may terminate a contract with Google (including an extension) for migration services, or any portion of a contract (including an extension) for migration services, without cost or penalty at any time upon 30 calendar days' written notice to Google and Plaintiffs. Any dispute about the terms or implementation of any migration services agreement will be resolved by the

27

Divestiture Trustee, and the Divestiture Trustee's resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. The employees of Google tasked with providing migration services must not share any competitively sensitive information of any DFP Remainder Acquirer with any other employee of Google.

M.    ***DFP Remainder Cloud Computing Services.*** At a DFP Remainder Acquirer's option, and subject to written approval by Plaintiffs in their sole discretion, on or before that DFP Remainder Acquirer's DFP Remainder Agreement Date, Google must execute a contract with that DFP Remainder Acquirer to provide any cloud computing services that the DFP Remainder Acquirer needs to operate DFP Remainder, at a reasonable cost-based fee, for at least five years. Any amendment to or modification of any provision of a contract between Google and a DFP Remainder Acquirer to provide cloud computing services is subject to written approval by Plaintiffs in their sole discretion. A DFP Remainder Acquirer may terminate a contract with Google (including an extension) for cloud computing services, or any portion of a contract (including an extension) for cloud computing services, without cost or penalty at any time upon 30 calendar days' written notice to Google and Plaintiffs. If Google elects not to provide cloud computing services to a DFP Remainder Acquirer beyond the time period required by this Final Judgment, Google must provide notice to that DFP Remainder Acquirer at least two years before the cloud computing services agreement expires. Any dispute about the terms or implementation of any cloud computing services agreement will be resolved by the Divestiture Trustee, and the Divestiture Trustee's resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. The employees of Google tasked with providing cloud computing services must not share any competitively sensitive information of any DFP Remainder Acquirer with any other employee of Google.

28

N.    ***DFP Remainder Operation Services.*** At a DFP Remainder Acquirer's option, and subject to written approval by Plaintiffs in their sole discretion, on or before that DFP Remainder Acquirer's DFP Remainder Closing Date, Google must execute a contract with the DFP Remainder Acquirer to provide post-closing operation services to the DFP Remainder Acquirer at a reasonable cost-based fee until the DFP Remainder Migration Date for that DFP Remainder Acquirer. Such post-closing operation services may, at the DFP Remainder Acquirer's option include all services needed to operate DFP Remainder while the migration of DFP Remainder to the DFP Remainder Acquirer takes place. Any amendment to or modification of any provision of a contract between Google and a DFP Remainder Acquirer to provide operation services is subject to written approval by Plaintiffs in their sole discretion. A DFP Remainder Acquirer may terminate a contract with Google (including an extension) for operation services, or any portion of a contract (including an extension) for operation services, without cost or penalty at any time upon 30 calendar days' written notice to Google and Plaintiffs. Any dispute about the terms or implementation of any post-closing operation services agreement must be resolved by the Divestiture Trustee, and the resolution of any such dispute is subject to written approval by Plaintiffs in their sole discretion. The employees of Google tasked with providing operation services must not share any competitively sensitive information of any DFP Remainder Acquirer with any other employee of Google.

O.    ***Post-Migration DFP Remainder Transitional Period.*** The Post-Migration DFP Remainder Transitional Period begins on a DFP Remainder Acquirer's DFP Remainder Migration Date and will last only as long as reasonably necessary for that DFP Remainder Acquirer to migrate DFP Remainder customers from Google to the DFP Remainder Acquirer. A Post-Migration DFP Remainder Transitional Period will not last longer than one year, except

29

that, at a DFP Remainder Acquirer's option, a Post-Migration DFP Remainder Transitional

Period may be extended up to one additional year if the Divestiture Trustee concludes an

extension is reasonably necessary to accomplish the purposes of this Final Judgment, and if

approved in writing by Plaintiffs in their sole discretion.

        P.     ***DFP Remainder Transition Services.*** At a DFP Remainder Acquirer's option,

and subject to written approval by Plaintiffs in their sole discretion, on or before the DFP

Remainder Migration Date for that DFP Remainder Acquirer, Google must enter into a contract

with that DFP Remainder Acquirer to provide post-migration transition services to that DFP

Remainder Acquirer at a reasonable cost-based fee during the Post-Migration DFP Remainder

Transitional Period for that DFP Remainder Acquirer. Such post-migration transition services

may, at a DFP Remainder Acquirer's option, include (1) providing infrastructure services;

(2) updating technical and customer-facing documents and the DFP Remainder design elements

and branding; and (3) providing technical support to the DFP Remainder Acquirer, including

with respect to using the DFP Remainder Reference Source Code. Any amendment to or

modification of any provision of a contract to provide transition services is subject to written

approval by Plaintiffs in their sole discretion. Any DFP Remainder Acquirer may terminate a

contract with Google (including an extension) for transition services, or any portion of a contract

(including an extension) for transition services, without cost or penalty at any time upon 30

calendar days' written notice to Google and Plaintiffs. Any dispute over the terms and

implementation of any post-migration transitional services agreement will be resolved by the

Divestiture Trustee, and the resolution of any such disputes is subject to written approval by

Plaintiffs in their sole discretion. The employees of Google tasked with providing transition

services must not share any competitively sensitive information of any DFP Remainder Acquirer with any other employee of Google.

Q.      ***DFP Remainder Disablement.*** Within 90 calendar days of the end of the latest Post-Migration DFP Remainder ~~Migration Date~~Transitional Period, Google must disable on its own servers DFP Remainder's technological ability to serve Open-Web Display Ads.

R.      ***Contents of DFP Remainder Divestiture Agreements.*** None of the terms of any agreement between a DFP Remainder Acquirer and Google may give Google the ability unreasonably to raise any DFP Remainder Acquirer's costs, to lower any DFP Remainder Acquirer's efficiency, or otherwise interfere in the ability of any DFP Remainder Acquirer to compete effectively in the market for Open-Web Display Publisher Ad Servers.

S.      ***Google's Warranties to DFP Remainder Acquirer(s).*** Google must warrant to any DFP Remainder Acquirer that (1) the DFP Remainder Divestiture Assets will be operational and without material defect on the date of their transfer to the DFP Remainder Acquirer; and (2) Google has disclosed all encumbrances on any part of the DFP Remainder Divestiture Assets, including on intangible property.

T.      ***Final Judgment Governs.*** If any provision of an agreement between Google and any DFP Remainder Acquirer varies from a provision of this Final Judgment, to the extent that Google cannot fully comply with both, this Final Judgment determines Google's obligations.

## IX. INTEROPERABILITY AND DATA SHARING

A.      ***AdX-Prebid Interoperability.*** Within 180 calendar days of the entry of this Final Judgement, Google must create and implement an API between AdX and Prebid Servers and an API between AdX and Publisher client-side implementations of header bidding software.

B.      ***AdX-Publisher Ad Server Interoperability***. Within 180 calendar days of the entry of this Final Judgment, AdX must submit real-time bids to non-Google Open-Web Display Publisher Ad Servers in the same manner it currently submits real-time bids to DFP.

C.      ***DFP-Prebid Interoperability.*** Within 540 calendar days of the entry of this Final Judgement, Google must create and implement an API and server-to-server integration between DFP (or DFP Remainder, following the publication of the Open-Source Auction) and Prebid Servers pursuant to which DFP (or DFP Remainder) will interoperate with and solicit bids from Prebid Servers in a functionally equivalent manner and on materially identical terms as DFP currently interoperates with and solicits bids from AdX. The API and server-to-server integration required by this Section IX(C) must operate as follows: For any given Impression, (1) DFP (or DFP Remainder) sends Floors, Data Signals, and Publisher first-party data to Prebid Servers; (2) Prebid Servers send Bid Requests to all sources of Programmatic Demand specified by the Publisher; and (3) Prebid Servers return bids and related data about Ad Candidates to DFP (or DFP Remainder).

D.      ***Publisher Data Portability.*** Within 90 calendar days of entry of this Final Judgment, Google must create and make available to its Publisher customers an API that enables Publisher customers of DFP (or DFP Remainder, following the publication of the Open-Source Auction) to export and migrate their DFP (or DFP Remainder) data and Configurations to another Open-Web Display Publisher Ad Server (hereinafter the "Data Portability API"). Google must promptly make any reasonable modifications to its Data Portability API that the Monitor concludes, in consultation with Plaintiffs, are necessary to achieve the purposes of this Final Judgment.

E.    ***Publisher Data Access.*** Google must allow any Publisher customer of DFP (or

DFP Remainder, following the publication of the Open-Source Auction) or AdX to access and

export data generated in DFP (or DFP Remainder) or AdX from that Publisher's Ad Inventory in

the same format as Google can access such data.

F.    ***Open-Source Auction Interoperability.*** On or before the date Google publishes

the Open-Source Auction, Google must create and implement an API that facilitates

interoperability with the Open-Source Auction. Such API must provide the standard protocol for

communicating all bids and Bid Requests to the Open-Source Auction, whether associated with

Direct Demand or Indirect Demand, and for the Open-Source Auction to communicate the

outcome of the Open-Source Auction, including information about winning bid(s) and

information about the Minimum Bid to Win.

G.    ***Obligation to Share Logic-Improvement Data.*** Subject to Publisher preferences,

user privacy opt-outs, and applicable laws, Google must share with the Open-Source Auction

Administrator any data generated by DFP (or DFP Remainder) that improves the Open-Source

Auction. Any dispute about which data generated by DFP (or DFP Remainder) improves the

Open-Source Auction must be resolved by the Monitor, and the resolution of any such dispute is

subject to written approval by Plaintiffs in their sole discretion.

## X. PROHIBITIONS ON DISTORTING THE COMPETITIVE PROCESS

A.    ***Direct Bidding.*** Following implementation of the API and server-to-server

integration required by Section IX(C) and until the end of the Supervision Period, DFP (or DFP

Remainder, following the publication of the Open-Source Auction) must not directly receive bids

from or directly provide Bid Requests to AdWords or DV360. For the avoidance of doubt, this

Section X(A) requires DFP (or DFP Remainder) to receive bids from or provide Bid Requests to

33

AdWords or DV360 only through an Ad Exchange. This Section X(A) does not apply to any

DFP Remainder Acquirer.

       B.       ***Non-Discriminatory Bidding Behavior.*** Subject to the express instructions of

advertisers, Google must ensure until the end of the Supervision Period that AdWords and

DV360 determine when and how to submit bids, how much to bid, and what information to

transmit with bids without regard to whether a Publisher is using any of Google's products,

including DFP (or DFP Remainder).

       C.       ***Preferential Routing.*** Subject to the express instructions of advertisers, Google

must ensure until the end of the Supervision Period that AdWords and DV360 route any Indirect

Demand for Open-Web Display Ad Inventory to any Open-Web Display Ad Exchange or any

Open-Web Display Publisher Ad Server without regard to whether the Open-Web Display Ad

Exchange or Open-Web Display Publisher Ad Server is owned by or affiliated with Google.

       D.       Until the end of the Supervision Period, Google must not seek, offer, or accept

any compensation or other remuneration for preferentially routing any Indirect Demand for

Open-Web Display Ad Inventory to any Open-Web Display Ad Exchange or any Open-Web

Display Publisher Ad Server.

       E.       ***Non-Discriminatory Use of Data Signals.*** Until the end of the Supervision

Period—and subject to Publisher preferences and applicable laws—insofar as Google uses or

disseminates Data Signals generated by virtue of its ownership and control of DFP (or DFP

Remainder while owned by Google), including any data generated by virtue of Google's

ownership of the DoubleClick domain, Google must do so without regard to whether a Publisher

or advertiser is using any of Google's products, including DFP (or DFP Remainder while owned

by Google), and without regard to whether an ad tech tool receiving or processing the Data

Signals is owned by or affiliated with Google.

F.       ***Non-Discriminatory Ad Serving.*** Until the end of the Supervision Period, DFP

(or DFP Remainder while owned by Google) must serve ads according to Publishers'

preferences and directions and without regard to whether the winning bid is from a Google

product (Ad Words, DV360, or otherwise). For the avoidance of doubt, this Section X(F) does

not apply to Google owned-and-operated Ad Inventory (*i.e.*, Ad Inventory for Google products,

such as YouTube).

G.       ***Non-Discriminatory Ad Exchange.*** Until the AdX Closing Date, AdX must pass

bids to Open-Web Display Publisher Ad Servers and header bidding auctions without regard to

whether such ad tech tool is owned by or affiliated with Google.

H.       ***Non-Discriminatory Use of Google First-Party Data.*** Until the end of the

Supervision Period—and subject to Publisher preferences and applicable laws—insofar as

Google uses or disseminates Google First-Party Data in connection with buying or evaluating

Open-Web Display Ad Inventory, Google must do so without regard to whether a Publisher or

advertiser is using any of Google's products, including DFP (or DFP Remainder), and without

regard to whether a tool receiving or processing the Google First-Party Data is owned by or

affiliated with Google.

I.       ***Tying and Similar Conduct.*** Until the end of the Supervision Period, Google

must not coerce any purchase or use of services from DFP (or DFP Remainder), AdX, AdWords,

or DV360 or otherwise condition (in whole or in part) the sale or use of services from any of

these products on the purchase or use of services from another of these products. For the

avoidance of doubt, a "purchase" or "sale," as those terms are used in this Section X(I), includes

services provided at no cost to the customer, and the prohibition in this Section X(I) includes any restriction on the sale or use of services from any of these products that explicitly or practically requires a buyer of that product also to purchase or use services from a separate one of these products.

J.      ***Conduct Already Found Anticompetitive.*** Until the end of the Supervision Period, Google must not engage in any conduct that the Court concluded in its Memorandum Opinion dated April 17, 2025, is or was anticompetitive.

## XI. OTHER PROHIBITIONS

A.      ***Ad Exchange Re-Entry.*** Google must not create, acquire, or otherwise obtain the use of an Open-Web Display Ad Exchange until after the end of the Supervision Period, and in no event sooner than five years after the end of the Post-Closing AdX Transitional Period. For the avoidance of doubt, following the AdX Closing Date, Google must not operate any product or service with functionality similar to an Open-Web Display Ad Exchange (*i.e.*, the selection of winning bids for Impressions that include Open-Web Display Ad Impressions from among Ad Buying Tools) until after the end of the Supervision Period, and in no event sooner than five years after the end of the Post-Closing AdX Transitional Period.

B.      ***Modification of the Open-Source Auction.*** Google must not modify or exercise any influence (directly or indirectly) over the contents or operation of the Open-Source Auction until after the end of the Supervision Period, except that Google may make written requests to the Open-Source Auction Administrator to modify the Open-Source Auction, and such modifications may be implemented only following express, written approval by the Open-Source Auction Administrator.

36

C.    ***Final Auction Logic Re-Entry.*** Google must not recreate, reacquire, or otherwise re-obtain the ownership or control of the Final Auction Logic or any component thereof as it relates to Open-Web Display Ad Impressions until after the end of the Supervision Period.

D.    ***Publisher Ad Server Re-Entry.*** If the divestiture of DFP Remainder is determined to be necessary pursuant to Section XIII(A)(67), Google must not create, acquire, or otherwise obtain the use of an Open-Web Display Publisher Ad Server until after the end of the Supervision Period, and in no event sooner than five years after the latest Post-Closing DFP Remainder Transitional Period. For the avoidance of doubt, following the divestiture of DFP Remainder as set forth in Section VIII, Google must not operate any product or service with functionality similar to an Open-Web Display Publisher Ad Server until after the end of the Supervision Period, and in no event sooner than five years after the latest Post-Closing DFP Remainder Transitional Period.

## XII. ESCROW FUNDS AND DISGORGEMENT

A.    ***Creation of Monitored Escrow Account.*** Within 30 calendar days of entry of this Final Judgment, Google must create an escrow account (hereinafter the "Monitored Escrow Account"), which it must hold jointly with and subject to supervision by the Monitor. The Monitor must have full access and joint control of the Monitored Escrow Account, including the ability to deposit and withdraw funds, stop payment of funds, and obtain books, records, and other account information.

B.    ***Disgorgement of AdX Profits.*** Within 30 calendar days of entry of this Final Judgment and every 90 calendar days thereafter, Google must deposit into the Monitored Escrow Account fifty percent (50%) of the Net Revenues that Google obtains from its ownership or operation of AdX from April 17, 2025, until the AdX Closing Date.

C.      ***Disgorgement of DFP/DFP Remainder Profits.*** Within 30 calendar days of entry
of this Final Judgment and every 90 calendar days thereafter, Google must deposit into the
Monitored Escrow Account fifty percent (50%) of the Net Revenues that Google obtains from its
ownership or operation of DFP or DFP Remainder from April 17, 2025, until the later of (1) the
date of a final determination regarding the need for a DFP Remainder divestiture pursuant to
Section XIII(A)(~~6~~7); or (2) the latest-in-time DFP Remainder Closing Date.

D.      ***Use of Funds.*** Funds in the Monitored Escrow Account may only be used with
express authorization of the Monitor, and at the discretion of the Monitor, (1) to defray the costs
incurred by the Open-Source Auction Administrator in administering the Open-Source Auction,
(2) to defray the costs incurred by Publishers in switching from DFP (or DFP Remainder) to
another Open-Web Display Publisher Ad Server, or (3) for any other remedial purpose ordered
by the Court.

E.      ***Remaining Funds***. If any funds remain in the Monitored Escrow Account at the
end of the Supervision Period, they must be deposited into the U.S. Treasury.

## XIII. MONITORING, ADMINISTRATION, AND COMPLIANCE

A.      <u>Monitor</u>

1.      ***Appointment.*** ~~Upon application of Plaintiffs, which Defendant may not oppose,
the Court will appoint a Monitor selected by Plaintiffs in their sole discretion and approved by the
Court.~~ Plaintiffs will propose a slate of three monitor candidates from which Google may choose,
subject to Court approval. All monitor candidates must have (a) substantial experience as a
judicial officer, mediator, arbitrator, or antitrust lawyer, and (b) experience with technology,
cybersecurity, IP, or similar cases. No monitor candidate may be a current employee of Google or
a Google ad tech competitor. No monitor candidate may have a current non-de minimis financial

interest in Google or a Google ad tech competitor. No monitor candidate may have served as a testifying expert (or worked on behalf of a testifying expert) or as a fact witness in the liability or remedies phase of this case or any substantially-related ad tech case. If Google objects that one of the monitor candidates proposed by Plaintiffs is unqualified or conflicted, Google must provide a written explanation within seven days of receiving Plaintiffs' proposed candidates, and the Parties shall meet and confer within two days of receiving Google's explanation.

The Monitor will serve from appointment until the end of the Supervision Period, unless Plaintiffs determine a different period is appropriate. Once appointed, the Monitor will be an arm and representative of the Court. Google must cooperate fully with the Monitor and assist the Monitor in exercising his or her duties and powers under this Final Judgment. Google must promptly (i.e. within 72 hours) provide the Monitor and Monitor Staff with full and complete access to all personnel (current and former), agents, consultants, books, records, source code, and facilities.

The Monitor may not perform any work for Google or any Google ad tech competitor during their tenure as Monitor and for one year after ceasing to serve as Monitor.

2.    *Technical Committee.* There will be a three-member Technical Committee to provide technical advice and support to the Monitor, and the members will report to the Monitor and be treated as part of the Monitor Staff. The Technical Committee will be composed of three members selected as follows: (i) each side shall select one member; and (ii) the two members selected by the Parties will jointly select a third member of the committee. No member of the Technical Committee may be a current employee of Google or a Google ad tech competitor or have a current non-de minimis financial interest in Google or a Google ad tech competitor. No member of the Technical Committee may have served as a testifying expert (or worked on behalf

of a testifying expert) or as a fact witness in the liability or remedies phase of this case or any substantially-related ad tech case.

If any Party determines that a member of the Technical Committee has failed to act diligently and consistently with the purposes of this Final Judgment, they may petition the Court for removal of that member. If a member of the Technical Committee is removed by the Court, resigns, or for any other reason ceases to serve in their capacity as a member of the Technical Committee, the person or persons that originally selected the Technical Committee member will select a replacement member in the same manner as provided for in this section.

Any member of the Technical Committee may provide input and advice to the Monitor, Plaintiffs, Divestiture Trustee, and (if requested) the Court.

No member of the Technical Committee may perform any work for Google or any Google ad tech competitor during their tenure as a member of the Technical Committee and for one year after ceasing to serve as a member of the Technical Committee.

1.3.    ***Work Plans.*** Within 30 calendar days after appointment by the Court, and on a yearly basis thereafter, the Monitor must provide Plaintiffs a proposed written work plan, approved by the United States in its sole discretion, after consultation with Plaintiff States. The United States, after consultation with Plaintiff States, retains the right and sole discretion to change or add to the Monitor's work plan at any time.

2.4.    ***Duties and Powers.*** The Monitor has all powers and authorities necessary to carry out his or her duties. The Monitor's duties, powers, and authorities include:

    a.    the duty to oversee and ensure Google's compliance with its obligations under this Final Judgment;

    b.    the duty to certify the end of the Transition Period pursuant to Section V(B);

c.      the duty to make a thorough assessment of competition pursuant to Section

XIII(A)(67) and make a corresponding recommendation regarding the need

for a divestiture of DFP Remainder;

d.      the duty to investigate and report on Google's compliance with this Final

Judgment, including by providing periodic reports to Plaintiffs, at intervals

and in a form specified by Plaintiffs, regarding the Monitor's activities

pursuant to this Final Judgment, Google's efforts to comply with its

obligations under this Final Judgment, and any recommendations the Monitor

makes;

e.      the duty to notify Plaintiffs immediately if the Monitor becomes aware of any

facts that the Monitor concludes may constitute a violation of this Final

Judgment;

f.      the duty to receive and investigate any complaints regarding Google's

compliance with this Final Judgment;

g.      the duty to account for all reasonable costs and expenses incurred, including

agreed-upon fees for the services of the Monitor and Monitor Staff, subject to

the written approval of Plaintiffs;

h.      the authority to communicate with and interview non-parties;

i.      the authority to interview, either informally or on the record, any Google

personnel, who may have their individual counsel present, *provided that* any

such interview must be subject to the reasonable convenience of such

personnel and without restraint or interference by Google;

j.      the power to compel Google to produce documents, data, and other information in the possession, custody, or control of Google;

k.      the power to inspect, study, interrogate, and interact with any relevant source code or algorithms, including the AdX Reference Source Code and the DFP Remainder Reference Source Code;

l.      the power to compel Google to provide complete written responses to interrogatories;

m.      the authority to obtain reasonable access to any system or equipment to which Google personnel have access;

n.      the authority to obtain reasonable access to, and inspect, any physical facility, building, or other premises to which Google personnel have access;

o.      the authority to hire Monitor Staff, at the cost and expense of Google, with prior notice to Google and subject to written approval by the Plaintiffs; and

p.      any other powers the Court deems appropriate.

3.5.    The Monitor must exercise his or her powers under this Final Judgment solely for the purpose of fulfilling the Monitor's duties under this Final Judgment.

4.6.    The Monitor may delegate any of his or her powers under this Final Judgment to Monitor Staff.

5.7.    ***Assessment of Competition.*** No sooner than two years after but no later than four years after the later of (1) publication of the Open-Source Auction or (2) the AdX Migration Date, the Monitor must determine, based on investigation, whether a divestiture of DFP Remainder is necessary to achieve the purposes of this Final Judgment as set forth in Section II. Notwithstanding the timing of the Monitor's determination under this Section XIII(A)(67), the

Monitor may begin his or her investigation of competition at any time following his or her appointment, in accordance with a work plan approved by the United States. The Monitor must promptly convey his or her determination to Plaintiffs and Google in writing, along with any factual findings and final analysis underlying such determination. Within 30 calendar days of the Monitor conveying his or her determination under this Section XIII(A)(67), Plaintiffs or Google may appeal the Monitor's determination to the Court. The Court will resolve any timely appeal of the Monitor's determination under the standards set forth in Federal Rule of Civil Procedure 72(b).

6.8.    ***Hiring Monitor Staff.*** Within three business days of hiring any member of the Monitor Staff, the Monitor must provide written notice to Google and Plaintiffs of the identity of the hired individual and the rate of his or her compensation or reimbursement. Monitor Staff will be directed by and solely accountable to the Monitor and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved in writing by the United States in its sole discretion, after consultation with Plaintiff States.

7.9.    ***Objections to the Monitor's Work.*** Google may not object to any action already taken by the Monitor in fulfillment of his or her duties under this Final Judgment on any ground other than Malfeasance by the Monitor. Disagreements between the Monitor and Google related to the nature or scope of the Monitor's duties, powers, or authorities do not constitute Malfeasance. Objections by Google must be conveyed in writing to Plaintiffs and the Monitor within 10 calendar days of the action that gives rise to Google's objection, or the objection is waived. Any timely objection must be resolved in the first instance by the United States in its sole discretion, after consultation with Plaintiff States. If Google makes a timely objection on the ground of Malfeasance, Google will have the burden to show Malfeasance by clear and

43

convincing evidence. Following a determination by the United States relating to an allegation of

Malfeasance, Google or the Monitor may subsequently seek relief by motion to the Court, and

Plaintiffs, Google, and the Monitor may participate fully in such a proceeding. If Google makes a

timely objection in writing to Plaintiffs on the grounds of Malfeasance, Google must deposit any

disputed costs and expenses into an escrow account (separate from the Monitored Escrow

Account) until the dispute is resolved.

8.10.    ***Disputes About the Monitor's Duties or Powers.*** Any dispute between Google

and the Monitor regarding whether an action is in fulfillment of the Monitor's duties under this

Final Judgment must be conveyed in writing to Plaintiffs within 10 calendar days of the dispute

arising, or the objection is waived. Any timely dispute must be resolved in the first instance by the

United States in its sole discretion, after consultation with Plaintiff States. Google or the Monitor

may thereafter seek prospective clarification of the Monitor's duties or powers by motion to the

Court, and Plaintiffs, Google, and the Monitor may participate fully in such a proceeding. Google

may not seek retrospective relief in connection with a dispute about the nature or scope of the

Monitor's duties or powers under this Final Judgment, and such a dispute is not a basis for

Google to withhold or refuse payment for accounted-for costs and expenses of the Monitor or the

Monitor Staff. Google must pay the Monitor's costs associated with resolving any dispute about

the nature or scope of the Monitor's duties or powers under this Final Judgment.

9.11.    No attorney-client relationship will be formed between Google and the Monitor,

and the Monitor has no responsibility or obligation for operation of Google's business.

10.12.   ***Google's Duty to Pay the Monitor.*** Google must pay all accounted-for costs and

expenses of the Monitor and the Monitor Staff, except for costs and expenses that are determined

to be the result of Malfeasance pursuant to Section XIII(A)(89). Google and the Monitor must


enter into a written agreement governing Google's payment obligations, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved in writing by Plaintiffs in their sole discretion. The compensation of the Monitor and the Monitor Staff must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities. If Google and the Monitor are unable to execute such a written agreement within 14 calendar days of the Monitor's appointment, or if Plaintiffs, in their sole discretion, decline to approve the proposed written agreement, Plaintiffs, in their sole discretion, may take appropriate action, including making a recommendation to the Court, and the Court may set the terms and conditions for Google's payment of the Monitor's costs and expenses.

11.13.  Any failure by Google to pay accounted-for costs and expenses of the Monitor or the Monitor Staff within the time permitted by Google's agreement with the Monitor, constitutes a violation of this Final Judgment and may result in sanctions imposed by the Court.

12.14.  Any failure by Google to meet a deadline imposed by the Monitor or to comply with requests or orders made by the Monitor constitutes a violation of this Final Judgment and may result in sanctions imposed by the Court.

13.15.  **Ex Parte Communication.** The Monitor may communicate *ex parte* with the Court, the Divestiture Trustee, Plaintiffs, or Google when, in the Monitor's sole discretion, such communication is reasonably necessary to fulfill his or her duties under this Final Judgment, including if Google fails to comply with its payment obligations or otherwise violates this Final Judgment.

14.16.  **Substitution.** If Plaintiffs determine, in their sole discretion, that the Monitor is not acting diligently or in a reasonably cost-effective manner, or if the Monitor resigns or

45

becomes unable to accomplish his or her duties, Plaintiffs may recommend that the Court appoint a substitute Monitor.

      15.17.  ***Confidential Information.*** To facilitate the Monitor's work, the Court's Amended Protective Order, ECF No. 203, is hereby amended as follows:

      a.      Paragraph 1(*l*) is amended to clarify that any non-privileged documents, testimony, or other materials provided to or generated by the Monitor or Monitor Staff while this Final Judgment is in effect constitute "Litigation Materials";

      b.      Paragraph 14 is amended to add the Monitor and Monitor Staff as persons authorized to receive Highly Confidential Information;

      c.      Paragraph 15 is amended to add the Monitor and Monitor Staff as persons authorized to receive Confidential Information;

      d.      Paragraph 24 is amended to clarify that implementing this Final Judgment, including the conduct of the Monitor's and Monitor Staff's work, is considered "for the conduct of the Action" and is a permitted use of Highly Confidential Information and Confidential Information;

      e.      Paragraphs 25 and 26 are amended to clarify that the Monitor and Monitor Staff must comply with the procedures set forth in those paragraphs as if they were Parties.

      **B.**      <u>**Divestiture Trustee**</u>

      1.      ***Appointment.*** Upon application of Plaintiffs, which Defendant may not oppose, the Court will appoint a Divestiture Trustee selected by Plaintiffs in their sole discretion and approved by the Court. The Divestiture Trustee will serve from appointment until the later of

46

(1) the end of the Transition Period, or (2) the end of the latest Post-Migration DFP Remainder

Transitional Period. Once appointed, the Divestiture Trustee will be an arm and representative of

the Court. Google must cooperate fully with the Divestiture Trustee and assist the Divestiture

Trustee in exercising his or her powers and duties under this Final Judgment. Google must

provide the Divestiture Trustee and Divestiture Trustee Staff with full and complete access to all

personnel (current and former), agents, consultants, books, records, source code, and facilities.

    2.    ***Work Plans.*** Within 30 calendar days after appointment by the Court, and on a

yearly basis thereafter, the Divestiture Trustee must provide Plaintiffs a proposed written work

plan, approved in writing by the United States in its sole discretion, after consultation with

Plaintiff States. Plaintiffs retain the right and sole discretion to make changes or additions to the

Divestiture Trustee's work plan at any time.

    3.    ***Duties and Powers.*** The Divestiture Trustee has all powers and authorities

necessary to carry out his or her duties. The Divestiture Trustee's duties, powers, and authorities

include:

        a.    the duty to oversee and facilitate the expeditious divestiture of AdX pursuant

            to Section VI and, if necessary, the expeditious divestiture of DFP Remainder

            pursuant to Section VIII;

        b.    the duty to oversee the specific performance of any divestiture agreement

            contemplated by this Final Judgment;

        c.    the duty to certify the end of the Transition Period pursuant to Section V(B);

        d.    the duty to conduct customary due diligence on potential AdX Acquirers and,

            if necessary, potential DFP Remainder Acquirers;

47

e.    the duty to provide periodic reports to Plaintiffs, at intervals and in a form specified by Plaintiffs, regarding the Divestiture Trustee's activities pursuant to this Final Judgment and any recommendations the Divestiture Trustee makes;

f.    the duty to maintain complete records of all efforts to sell the AdX Divestiture Assets (and, if necessary, the DFP Remainder Divestiture Assets), including (1) the name, address, and telephone number of each person who makes an offer to acquire, expresses an interest in acquiring, enters into negotiations to acquire, or is contacted about acquiring the AdX Divestiture Assets (and, if necessary, the DFP Remainder Divestiture Assets) and (2) the substance of each such interaction;

g.    the duty to account for all reasonable costs and expenses incurred, including agreed-upon fees for the services of the Divestiture Trustee and Divestiture Trustee Staff, subject to the written approval of Plaintiffs;

h.    the authority to communicate with and interview non-parties;

i.    the authority to interview, either informally or on the record, any Google personnel, who may have their individual counsel present, *provided that* any such interview must be subject to the reasonable convenience of such personnel and without restraint or interference by Google;

j.    the authority to access all books, records, source code, and facilities of the AdX Divestiture Assets and, if necessary, all books, records, source code, and facilities of the DFP Remainder Divestiture Assets;

48

k.       the authority to hire Divestiture Trustee Staff, at the cost and expense of

Google, with prior notice to Google and subject to written approval by the

Plaintiffs; and

l.       any other powers the Court deems appropriate.

4.       ***Contingent Control of AdX Divestiture.*** If (1) Google does not secure and

provide to the Divestiture Trustee and Plaintiffs proof of an executed contract for the sale of

AdX to the AdX Acquirer, consistent with the terms of this Final Judgment, within one year of

entry of this Final Judgment, or (2) the AdX Migration Date does not occur within 540 calendar

days after the AdX Agreement Date, then the Divestiture Trustee must assume the exclusive

right to control the divestiture and/or migration of the AdX Divestiture Assets. If this occurs, the

Divestiture Trustee must, as expeditiously as possible, divest and/or migrate the AdX Divestiture

Assets in accordance with the terms of this Final Judgment at such price and on such terms as are

then obtainable upon reasonable and diligent effort by the Divestiture Trustee.

5.       If the AdX Migration Date has not occurred within two years of the AdX

Agreement Date, the Divestiture Trustee must promptly provide Plaintiffs with a report setting

forth: (1) the Divestiture Trustee's efforts to accomplish the divestiture of AdX; (2) the reasons,

in the Divestiture Trustee's judgment, why the divestiture of AdX has not occurred; and (3) the

Divestiture Trustee's recommendations for completing the divestiture of AdX. Following receipt

of that report, Plaintiffs may make additional recommendations to the Court, and the Court may

enter such further orders as it deems necessary and appropriate to carry out the purposes of this

Final Judgment.

6.       ***Contingent Control of DFP Remainder Divestiture.*** If a divestiture of DFP

Remainder is determined to be necessary pursuant to Section XIII(A)(67), and if either

49

(1) Google does not secure and provide to the Divestiture Trustee and Plaintiffs proof of an executed contract for the sale of DFP Remainder to a DFP Remainder Acquirer, consistent with the terms of this Final Judgment, within one year of a final determination that a divestiture of DFP Remainder is necessary, or (2) the earliest DFP Remainder Migration Date does not occur within two years after the earliest DFP Remainder Agreement Date, then the Divestiture Trustee must assume the exclusive right to control the divestiture and/or migration of the DFP Remainder Divestiture Assets. If this occurs, the Divestiture Trustee must, as expeditiously as possible, divest and/or migrate the DFP Remainder Divestiture Assets in accordance with the terms of this Final Judgment at such price and on such terms as are then obtainable upon reasonable and diligent effort by the Divestiture Trustee.

7.    If a DFP Migration Date has not occurred within three years of the earliest DFP Remainder Agreement Date, the Divestiture Trustee must promptly provide Plaintiffs with a report setting forth: (1) the Divestiture Trustee's efforts to accomplish the divestiture of DFP Remainder; (2) the reasons, in the Divestiture Trustee's judgment, why the divestiture of DFP Remainder has not occurred; and (3) the Divestiture Trustee's recommendations for completing the divestiture of DFP Remainder. Following receipt of that report, Plaintiffs may make additional recommendations to the Court, and the Court may enter such further orders as it deems necessary and appropriate to carry out the purposes of this Final Judgment.

8.    ***Accounting.*** The Divestiture Trustee must account for all monies derived from the sale of any assets sold by the Divestiture Trustee under this Final Judgment and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for its services yet unpaid and those of the Divestiture Trustee Staff, all remaining proceeds from the divestiture sale must be paid to Google.

9.      The Divestiture Trustee must exercise his or her powers under this Final Judgment solely for the purpose of fulfilling the Divestiture Trustee's duties under this Final Judgment.

10.     The Divestiture Trustee may delegate any of his or her powers under this Final Judgment to Divestiture Trustee Staff.

11.     ***Hiring Divestiture Trustee Staff.*** Within three business days of hiring any member of the Divestiture Trustee Staff, the Divestiture Trustee must provide written notice to Google and Plaintiffs of the identity of the hired individual and the rate of his or her compensation or reimbursement. Divestiture Trustee Staff will be directed by and solely accountable to the Divestiture Trustee and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved in writing by Plaintiffs in their sole discretion.

12.     ***Objections to the Divestiture Trustee's Work.*** Google may not object to any action already taken by the Divestiture Trustee in fulfillment of his or her duties under this Final Judgment on any ground other than Malfeasance by the Divestiture Trustee. Disagreements between the Divestiture Trustee and Google related to the nature or scope of the Divestiture Trustee's duties, powers, or authorities do not constitute Malfeasance. Objections by Google must be conveyed in writing to Plaintiffs and the Divestiture Trustee within 10 calendar days of the action that gives rise to Google's objection, or the objection is waived. Any timely objection must be resolved in the first instance by the United States in its sole discretion, after consultation with Plaintiff States. If Google makes a timely objection on the ground of Malfeasance, Google will have the burden to show Malfeasance by clear and convincing evidence. Following a determination by the United States relating to an allegation of Malfeasance, Google or the

Divestiture Trustee may subsequently seek relief by motion to the Court, and Plaintiffs, Google, and the Divestiture Trustee may participate fully in such a proceeding. If Google makes a timely objection in writing to Plaintiffs on the grounds of Malfeasance, Google must deposit any disputed costs and expenses into an escrow account (separate from the Monitored Escrow Account) until the dispute is resolved.

13.    ***Disputes About the Divestiture Trustee's Duties or Powers.*** Any dispute between Google and the Divestiture Trustee regarding whether an action is in fulfillment of the Divestiture Trustee's duties under this Final Judgment must be conveyed in writing to Plaintiffs within 10 calendar days of the dispute arising, or the objection is waived. Any timely dispute must be resolved in the first instance by the United States in its sole discretion, after consultation with Plaintiff States. Google or the Divestiture Trustee may subsequently seek prospective clarification of the Divestiture Trustee's duties or powers by motion to the Court, and Plaintiffs, Google, and the Divestiture Trustee may participate fully in such a proceeding. Google may not seek retrospective relief in connection with a dispute about the nature or scope of the Divestiture Trustee's duties or powers under this Final Judgment, and such a dispute is not a basis for Google to withhold or refuse payment for accounted-for costs and expenses of the Divestiture Trustee or the Divestiture Trustee Staff. Google must pay the Divestiture Trustee's costs associated with resolving disputes about the nature or scope of the Divestiture Trustee's duties or powers under this Final Judgment.

14.    No attorney-client relationship will be formed between Google and the Divestiture Trustee, and the Divestiture Trustee has no responsibility or obligation for operation of Google's business.

15.     ***Google's Duty to Pay the Divestiture Trustee.*** Google must pay all accounted-for costs and expenses of the Divestiture Trustee and the Divestiture Trustee Staff, except for costs and expenses that are determined to be the result of Malfeasance pursuant to Section XIII(B)(12). Google and the Divestiture Trustee must enter into a written agreement governing Google's payment obligations, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved in writing by Plaintiffs in their sole discretion. The compensation of the Divestiture Trustee and the Divestiture Trustee Staff must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestitures contemplated by this Final Judgment and the speed with which they are accomplished. If Google and the Divestiture Trustee are unable to execute such a written agreement within 14 calendar days of the Divestiture Trustee's appointment, or if Plaintiffs, in their sole discretion, decline to approve the proposed written agreement, Plaintiffs, in their sole discretion, may take appropriate action, including making a recommendation to the Court, and the Court may set the terms and conditions for Google's payment of the Divestiture Trustee's costs and expenses.

16.     Any failure by Google to pay the accounted-for costs and expenses of the Divestiture Trustee or the Divestiture Trustee Staff within the time permitted by Google's agreement with the Divestiture Trustee, constitutes a violation of this Final Judgment and may result in sanctions imposed by the Court.

17.     Any failure by Google to meet a deadline imposed by the Divestiture Trustee or to comply with requests or orders made by the Divestiture Trustee constitutes a violation of this Final Judgment and may result in sanctions imposed by the Court.

18.    ***Ex Parte Communication.*** The Divestiture Trustee may communicate *ex parte* with the Court, the Monitor, the Monitor Staff, Plaintiffs, or Google when, in the Divestiture Trustee's sole discretion, such communication is reasonably necessary to fulfill his or her duties under this Final Judgment.

19.    ***Substitution.*** If Plaintiffs determine, in their sole discretion, that the Divestiture Trustee is not acting diligently or in a reasonably cost-effective manner, or if the Divestiture Trustee resigns or becomes unable to accomplish his or her duties, Plaintiffs may recommend that the Court appoint a substitute Divestiture Trustee.

20.    ***Confidential Information.*** To facilitate the Divestiture Trustee's work, the Court's Amended Protective Order, ECF No. 203, is hereby amended as follows:

a.    Paragraph 1(*l*) is amended to clarify that any non-privileged documents, testimony, or other materials provided to or generated by the Divestiture Trustee or Divestiture Trustee Staff while this Final Judgment is in effect constitute "Litigation Materials";

b.    Paragraph 14 is amended to add the Divestiture Trustee and Divestiture Trustee Staff as persons authorized to receive Highly Confidential Information;

c.    Paragraph 15 is amended to add the Divestiture Trustee and Divestiture Trustee Staff as persons authorized to receive Confidential Information;

d.    Paragraph 24 is amended to clarify that implementing this Final Judgment, including the conduct of the Divestiture Trustee's and Divestiture Trustee Staff's work, is considered "for the conduct of the Action" and is a permitted use of Highly Confidential Information and Confidential Information;

e.      Paragraphs 25 and 26 are amended to clarify that the Divestiture Trustee and

Divestiture Trustee Staff must comply with the procedures set forth in those

paragraphs as if they were Parties.

**C.      Internal Compliance Officer**

1.      *Appointment.* Within 30 calendar days of entry of this Final Judgment, Google

must designate an employee of Google as the internal Compliance Officer who is responsible for

administering the legal and ethical compliance program set forth in Section XIII(E) and ensuring

Google's compliance with this Final Judgment. The Compliance Offer must be an officer,

director, or executive of Google with sufficient authority to facilitate Google's cooperation with

the Monitor and Divestiture Trustee and Google's compliance with this Final Judgment. Within

15 calendar days of any vacancy in the Compliance Officer position, Google must appoint a

replacement. Any appointment of a Compliance Officer is subject to Plaintiffs' written approval

in their sole discretion. Within seven calendar days of a Compliance Officer's appointment,

Google must identify to Plaintiffs the Compliance Officer's name, business address, telephone

number, and email address.

2.      *Duties.* The Compliance Officer has the following duties:

a.      within 30 calendar days after entry of this Final Judgment, distributing a copy

of this Final Judgment to all officers and employees of Google;

b.      distributing a copy of this Final Judgment to any person who becomes an

officer or employee of Google within 30 calendar days of the date the person

starts that position;

c.      ensuring that officers and employees of Google are trained in accordance with

Section XIII(E);

    d.      making periodic reports to the Monitor, Plaintiffs, and an independent committee of Alphabet Inc.'s Board of Directors regarding Google's reform of its practices concerning (1) its obligations to preserve and produce materials for use in investigations, litigations, or regulatory filings, and (2) the appropriate use of the attorney-client privilege and attorney work product doctrine;

    e.      informing officers and employees of Google that Google's legal advisors are available to confer with them regarding any question concerning compliance with this Final Judgment, U.S. antitrust laws, or obligations to preserve and produce materials for use in investigations, litigations, or regulatory filings;

    f.      obtaining from each officer and employee of Google an annual written certification that he or she: (i) has read and agrees to abide by the terms of this Final Judgment; and (ii) has been advised and understands that his or her failure to comply with this Final Judgment may result in a finding of contempt of court;

    g.      maintaining a record of all current and former officers and employees of Google to whom a copy of this Final Judgment has been distributed and from whom the certification described in Section XIII(C)(2)(F) has been obtained;

    h.      annually communicating to all employees pursuant to Section XIII(D)(2) that they may disclose to the Plaintiffs, Compliance Officer, Monitor, or Divestiture Trustee, without reprisal for such disclosure, information concerning any violation or potential violation of this Final Judgment or the

U.S. antitrust laws by Google, and establishing a confidential means for any

Google employee to report potential violations;

i.     ensuring Google employees retain all relevant documents and electronically

stored information, regardless of medium or form, related to this Final

Judgement.

### D.     Anti-Retaliation, Non-Interference, and Non-Circumvention

1.     Google must not retaliate in any form against any person, including any employee

or third party, because the person has taken any action to bring to light Google's conduct

determined in this action to be unlawful or because the person is or is contemplating: (a) filing a

complaint related to Google's compliance with this Final Judgment; (b) disclosing information to

Plaintiffs, the Monitor, Divestiture Trustee, or Compliance Officer; or (c) testifying, assisting,

cooperating with, or participating in any manner in an investigation, proceeding, hearing, or

litigation related to Google's compliance with this Final Judgment.

2.     Google must establish a policy, annually communicated to all of its employees,

that Google employees may disclose any information to the Plaintiffs, Compliance Officer,

Monitor, or Divestiture Trustee without reprisal for such disclosure.

3.     Google must not take any action to interfere with or impede implementation of

this Final Judgment, including the accomplishment of the Monitor's or Divestiture Trustee's

responsibilities under this Final Judgment. Any action by Google that interferes with or impedes

implementation of this Final Judgment, including any action that interferes with or impedes

meeting any deadline imposed by this Final Judgment, constitutes a violation of this Final

Judgment and may result in sanctions imposed by the Court.

57

4.      Nothing herein limits Plaintiffs' ability to request, either independently or on behalf of the Monitor or Divestiture Trustee, or the Court's authority to order, other, additional, or alternative relief or penalties or to modify this Final Judgment, including as otherwise provided in this Final Judgment.

5.      Google must not (a) engage in any conduct designed to replicate the effect of any behavior found by the Court to violate the Sherman Act; (b) engage in any conduct substantially similar to conduct prohibited by another Section of this Final Judgment or designed to evade any obligation imposed by this Final Judgment; or (c) engage in any conduct with the purpose or effect of evading or frustrating the purposes of this Final Judgment.

### E.      Legal and Ethical Compliance Program

1.      Beginning within 90 calendar days of the entry of this Final Judgment, lasting until the end of the Supervision Period, and subject to the approval of the Monitor as to form, content, and frequency, Google must train its officers and employees regarding:

    a.      the meaning and requirements of this Final Judgment;

    b.      U.S. antitrust laws;

    c.      obligations to preserve and produce materials for use in investigations, litigations, or regulatory filings; and

    d.      the appropriate use of the attorney-client privilege and the attorney work product doctrine.

2.      Google must report to the Monitor and Plaintiffs within 30 calendar days any judgment, determination, or finding, whether interim or final, by a court or agency that Google failed to comply with the Sherman Act or Clayton Act, or with its obligations to preserve or produce materials for use in investigations, litigations, or regulatory filings.

58

## XIV. AFFIDAVITS

A.     ***Compliance Affidavits.*** Every 30 calendar days after the entry of this Final

Judgment until the Monitor and Divestiture Trustee have both executed agreements with Google,

Google must deliver to Plaintiffs an affidavit, signed by Google's Chief Financial Officer and

General Counsel, describing in reasonable detail the fact and manner of Google's efforts to

comply with this Final Judgment. Plaintiffs, in their sole discretion, may approve different

signatories for such affidavits.

B.     ***Retention of Records.*** Google must retain all records of any efforts made to divest

the AdX Divestiture Assets (and, if necessary, any efforts made to divest the DFP Remainder

Divestiture Assets) and to comply with Sections VI and VIII until one year after the AdX

Migration Date (and, if necessary, the latest DFP Remainder Migration Date).

## XV. COMPLIANCE INSPECTION

For the purposes of determining or securing compliance with this Final Judgment or

related orders or of determining whether this Final Judgment should be modified, upon written

request of an authorized representative of the United States, including the Assistant Attorney

General for the Antitrust Division of the Department of Justice, and/or a Plaintiff State, and

reasonable notice to Google, Google must permit authorized representatives, including agents

retained by Plaintiffs:

1.     to have access during Google's business hours to inspect and copy, or at the

option of Plaintiffs, to require Google to provide electronic copies of all books,

ledgers, accounts, records, data, and documents, wherever located, in Google's

possession, custody, or control relating to any matters contained in this Final

Judgment;

2.      to interview, either informally or on the record, any Google officers, employees,

or agents, wherever located, who may have their individual counsel present,

relating to any matters contained in this Final Judgment, and *provided that* any

such interview will be subject to the reasonable convenience of such personnel

and without restraint or interference by Google; and

3.      to require Google to provide written reports to Plaintiffs or to respond to written

interrogatories from Plaintiffs, under oath if requested, relating to any matters

contained in this Final Judgment.

## XVI. FEES AND COSTS

Plaintiffs are substantially prevailing parties in this litigation. Google must pay Plaintiff

States' reasonable attorneys' fees and costs.

## XVII. PUBLIC DISCLOSURE

A.      No information or documents obtained pursuant to any provision of this Final

Judgment, including reports the Monitor or Divestiture Trustee provides to Plaintiffs pursuant to

Sections XIII(A)(34)(d) or XIII(B)(3)(e), may be divulged by Plaintiffs, the Monitor, or the

Divestiture Trustee to any person other than an authorized representative of the executive branch

of the United States or an authorized representative of the Plaintiff States, except (1) in the

course of legal proceedings to which a Plaintiff is a party, including grand-jury proceedings,

(2) for the purpose of evaluating a proposed AdX Acquirer or DFP Remainder Acquirer, (3) for

the purpose of securing compliance with this Final Judgment, (4) for law enforcement purposes,

or (5) as otherwise required by law.

B.      In the event of a request by a third party, pursuant to the Freedom of Information

Act, 5 U.S.C. § 552, or analogous Plaintiff State disclosure laws, for disclosure of information

obtained pursuant to any provision of this Final Judgment, the United States will act in

accordance with that statute and the Department of Justice regulations at 28 C.F.R. part 16,

including the provision on confidential commercial information at 28 C.F.R. § 16.7, and the

Plaintiff States will act in accordance with their applicable disclosure laws. When Google

submits information to any Plaintiff, the Monitor, or the Divestiture Trustee, it should designate

the confidential commercial information portions of all applicable documents and information

under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless

the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R.

§ 16.7(b).

      C.     If, at the time Google furnishes information or documents to any Plaintiff, the

Monitor, or the Divestiture Trustee pursuant to any provision of this Final Judgment, Google

represents and identifies in writing information or documents for which a claim of protection

may be asserted under Federal Rule of Civil Procedure 26(c)(1)(G), and Google marks each

pertinent page of such material, "Subject to claim of protection under Federal Rule of Civil

Procedure 26(c)(1)(G)," Plaintiffs must give Google 10 calendar days' notice before divulging

such material in any legal proceeding (other than a grand jury proceeding).

## XVIII. RETENTION OF JURISDICTION

The Court retains jurisdiction:

1.     to enable Plaintiffs, the Monitor, or the Divestiture Trustee to enforce compliance,
   or to punish violations of its provisions;

2.     to enable any party to this Final Judgment to apply to the Court at any time for
   further orders and directions as may be necessary or appropriate to carry out or

construe this Final Judgment, modify any of this Final Judgment's provisions, or
to object if any such modifications are sought;

3.      to enable any party to this Final Judgment, the Monitor, or the Divestiture Trustee
to pursue any Court-supervised procedure expressly set forth in this Final
Judgment.

### XIX. ENFORCEMENT OF FINAL JUDGMENT

A.      Plaintiffs retain and reserve all rights to enforce the provisions of this Final
Judgment, including the right to seek an order of contempt from the Court.

B.      This Final Judgment should be interpreted to give full effect to its purposes, as set
forth in Section II. Google may be held in contempt of, and the Court may enforce, any provision
of this Final Judgment that, as interpreted by the Court in light of this Final Judgment's purposes
and applying ordinary tools of interpretation, is stated specifically and in reasonable detail,
whether or not it is clear and unambiguous on its face.

C.      If the Court finds that Google has violated this Final Judgment, Plaintiffs may
apply to the Court for an extension of this Final Judgment, together with other relief that may be
appropriate. In connection with any successful effort by Plaintiffs to enforce this Final Judgment
against Google, whether litigated or resolved before litigation, Google must reimburse Plaintiffs
for all their costs, including the fees and expenses of Plaintiffs' attorneys and experts, incurred in
connection with enforcing this Final Judgment, including in the investigation of the potential
violation.

D.      For a period of four years following the expiration of this Final Judgment, if
Plaintiffs discover evidence that Google violated this Final Judgment before it expired, Plaintiffs
may file an action against Google in this Court requesting that the Court order: (1) Google to

comply with the terms of this Final Judgment for an additional term of at least four years

following the filing of the enforcement action; (2) any appropriate contempt remedies;

(3) additional relief needed to ensure Google complies with the terms of this Final Judgment; and

(4) fees or expenses.

## XX. RESERVATION OF RIGHTS

This Final Judgment terminates only the claims stated in the Complaint against Google

and does not affect other charges or claims Plaintiffs may file.


Date: _____                    _____

                                                  Hon. Leonie M. Brinkema
                                                  United States District Judge